IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,                )
  a Delaware corporation; and          )
QUALCOMM TECHNOLOGIES, INC.,          )
  a Delaware corporation,              )   C.A. No. 24-490 (MN)
                                      )
           Plaintiffs,          )   **REDACTED – PUBLIC VERSION**
                                      )   **Original Filing Date: July 17, 2024**
      v.                              )   **Redacted Filing Date: July 24, 2024**
                                      )
ARM HOLDINGS PLC., f/k/a ARM LTD.,    )
  a U.K. corporation,                  )
                                      )
           Defendant.           )

## PLAINTIFFS' ANSWERING BRIEF IN
## OPPOSITION TO DEFENDANT ARM'S MOTION TO DISMISS

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Madalyn G. Vaughn
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

July 17, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

SUMMARY OF ARGUMENTS ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

    I.      The Qualcomm Action ...................................................................................... 2

        A.     Arm Breached The Qualcomm ALA ..................................................... 2

        B.     Qualcomm Brings This Action Against Arm ........................................ 5

    II.     The Arm Action ............................................................................................... 5

        A.     Factual Background ............................................................................... 5

        B.     The Arm Proceeding ............................................................................. 6

    III.    Qualcomm's Motion To Add New Counterclaims In The Arm Action ................. 7

LEGAL STANDARD ...................................................................................................... 9

ARGUMENT ................................................................................................................. 10

    I.      Arm's Motion To Dismiss Should Be Denied Because Arm Acquiesced In Qualcomm Filing The ▇▇▇▇▇▇ ........................................................... 10

        A.     Arm Acquiesced To Qualcomm Bringing This Action ........................ 10

        B.     Arm Should Be Judicially Estopped From Arguing The ▇▇▇▇▇ Claims Are Compulsory Counterclaims ..................................... 12

    II.     Arm's Motion Fails On The Merits Because Qualcomm's ▇▇▇▇ Claims Are Not Compulsory Counterclaims ..................................................... 13

        A.     There Is No Logical Relationship Between The ▇▇▇▇ Claims And Arm's Claims In The Arm Action ................................................. 14

        B.     Collateral Estoppel And Res Judicata Do Not Bar The ▇▇▇▇ Claims ................................................................................................. 17

        C.     Qualcomm's Attempt To Assert Its ▇▇▇▇ Counterclaims In The Arm Action Does Not Render Them Compulsory Counterclaims ........... 19

CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

*Arizona* v. *California*,
    530 U.S. 392 (2000)..................................................................................................18

*Azurity Pharms., Inc.* v. *Bionpharma Inc.*,
    650 F. Supp. 3d 269 (D. Del. 2023)......................................................................9, 15

*Bradley* v. *Pittsburgh Bd. of Educ.*,
    913 F.2d 1064 (3d Cir. 1990)...........................................................................10, 11

*Brady* v. *C.F. Schwartz Motor Co.*,
    723 F. Supp. 1045 (D. Del. 1989).....................................................................14, 19

*Doe* v. *Hesketh*,
    828 F.3d 159 (3d Cir. 2016)......................................................................................18

*General Life Ins.* v. *Goldstein*,
    741 F. Supp. 2d 604 (D. Del. 2010)...........................................................................9

*Haines & Kibblehouse, Inc.* v. *Balfour Beatty Constr., Inc.*,
    553 F. App'x 246 (3d Cir. 2014) ..............................................................................13

*Home Depot USA, Inc.* v. *Lafarge N. Am., Inc.*,
    59 F. 4th 55 (3d Cir. 2023) ......................................................................................18

*Howmedica Osteonics Corp.* v. *Schilling*,
    No. 20-CV-9621, 2022 WL 17887226 (D.N.J. Dec. 23, 2022).................................18

*IMEG Corp.* v. *Patel*,
    No. 20-CV-111, 2021 WL 184407 (D. Del. Jan. 19, 2021)......................................12

*In re Burlington Coat Factory*,
    114 F.3d 1410 (3d Cir. 1997).....................................................................................3

*In re Mullarkey*,
    536 F.3d 215 (3d Cir. 2008)......................................................................................18

*M.R.* v. *Ridley Sch. Dist.*,
    744 F.3d 112 (3d Cir. 2014)......................................................................................17

*McKenna* v. *City of Philadelphia*,
    304 F. App'x 89 (3d Cir. 2008) ................................................................................19

*Metallgesellschaft AG* v. *Foster Wheeler Energy Corp.*,
    143 F.R.D. 553 (D. Del. 1992) .................................................................................14

*NRT Tech. Corp.* v. *Everi Holdings Inc.*,
    No. 19-CV-804, 2020 WL 3403091 (D. Del. June 19, 2020)...................................................17

*Paine, Webber, Jackson & Curtis, Inc.* v. *Merrill Lynch, Pierce, Fenner & Smith,*
    *Inc.*, 587 F. Supp. 1112 (D. Del. 1984)....................................................................................14

*Perfect Plastics Indus., Inc.* v. *Cars & Concepts, Inc.*,
    758 F. Supp. 1080 (W.D. Pa. 1991)...........................................................................................12

*Perrigo Co.* v. *Int'l Vitamin Corp.*,
    No. 1:17-CV-1778, 2018 WL 4290387 (D. Del. Sep. 7, 2018)....................................................3

*PHL Variable Ins. Co.* v. *Helene Small Ins. Tr. ex rel. Wilmington Sav. Fund Soc.,*
    *FSB*, No. 12-CV-00312, 2012 WL 5382905 (D. Del. Nov. 1, 2012) ...............................16, 19

*Post* v. *Hartford Ins. Co.*,
    501 F.3d 154 (3d Cir. 2007).........................................................................................................18

*R & J Holding Co.* v. *Redevelopment Auth. of Cnty. of Montgomery*,
    670 F.3d 420 (3d Cir. 2011).........................................................................................................11

*RLI Ins. Co.* v. *Ceradyne, Inc.*,
    No. 20-CV-1777, 2021 WL 4860709 (D. Del. Oct. 19, 2021) .....................................................5

*S. Megga Telecomms. Ltd.* v. *Lucent Techs., Inc.*,
    No. 96-CV-357, 1997 WL 86413 (D. Del. Feb. 14, 1997).........................................14, 16, 17

*StairMaster Sports/Medical Products, Inc.* v. *Groupe Procycle, Inc.*,
    25 F. Supp. 2d 270 (D. Del. 1998)..............................................................................................13

*Venuto* v. *Witco Corp.*,
    117 F.3d 754 (3d Cir. 1997).........................................................................................................11

*Washam* v. *J. C. Penney Co.*,
    519 F. Supp. 554 (D. Del. 1981)..................................................................................................10

*Williams* v. *Litton Loan Servs.*,
    788 F. App'x 819 (3d Cir. 2019) .................................................................................................18

*Xerox Corp.* v. *SCM Corp.*,
    576 F.2d 1057 (3d Cir. 1978)..........................................................................................9, 13, 14, 16

*Yeransian* v. *B. Riley & Co., LLC*,
    No. 18-CV-304, 2019 WL 252029 (D. Neb. Jan. 17, 2019).....................................................19

*Yeransian* v. *Markel Corporation*,
    No. 20-CV-762 MN, 2021 WL 979604 (D. Del. Mar. 16, 2021).............................................19

*Zero Techs., LLC* v. *Clorox Co.*,
 No. 22-CV-3989, 2024 WL 343169 (E.D. Pa. Jan. 30, 2024) ...............................................15

**Statutes**

15 U.S.C. § 1114 .................................................................................................................6, 17

15 U.S.C. § 1125 .................................................................................................................6, 17

**Rules**

Fed. R. Civ. P. 13 ............................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) .............................................................................................................5, 9

Fed. R. Civ. P. 72 .........................................................................................................................9

**Other Authorities**

Restatement (Second) of Judgments ....................................................................................10, 11

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm") filed this action against Defendant Arm Holdings PLC ("Arm") on April 18, 2024 asserting claims for breach of contract and declaratory relief.  D.I. 2.  On June 12, 2024, Arm moved to dismiss the claims.  D.I. 15.  Qualcomm opposes the Motion.

## SUMMARY OF ARGUMENTS

Arm's Motion to Dismiss the Complaint as compulsory counterclaims should be denied for three reasons.  First, in the lawsuit involving Arm's claim against Nuvia and Qualcomm for alleged breach of Arm's contract with Nuvia (C.A. No. 22-1146, the "Arm Action"), Arm's counsel consented to Qualcomm bringing the ███████ claims as a separate lawsuit.  Thus, under Third Circuit law, the compulsory counterclaim rule is no longer available to Arm as a ground for dismissal.  Second, Arm is estopped from arguing that the ███████ claims are compulsory counterclaims because in convincing Judge Hatcher to deny-in-part Qualcomm's motion for leave to amend in the Arm Action, Arm's counsel previously took an inconsistent position in the prior proceeding, successfully advocating that these claims should be brought in a different proceeding.  Third, Arm's Motion fails on the merits, because a correct application of Federal Rules of Civil Procedure 13(a) demonstrates that the at-issue ███████ claims do not share a logical relationship to the main claims in the Arm Action.  The Arm Action involves Nuvia's and Qualcomm's alleged breach arising from the termination of Arm's 2019 Architecture License Agreement with Nuvia (the "Nuvia ALA"), whereas this action involves Arm's breach of Arm's 2013 license with Qualcomm—*an entirely different contract*—based on Arm's conduct in failing to provide technology deliverables to Qualcomm.  Because this ███████ action involves a different license agreement and wholly different conduct arising from different transactions or occurrences, these claims were permissive in the Arm Action not compulsory, and dismissal here is unwarranted.

1

**STATEMENT OF FACTS**

Qualcomm is a leading wireless technology innovator and the driving force behind the development, launch, and expansion of 5G technology. D.I. 2 ¶ 18. Qualcomm's foundational technologies enable the mobile ecosystem and are ubiquitous in every 3G, 4G, and 5G smartphone. *Id.* Qualcomm also brings the benefits of mobile technologies to new industries, including automotive and computing, where Qualcomm has driven the convergence of PC and mobile technology to increase productivity, connectivity, and security in portable laptops. *Id.* This technology, enabled by Qualcomm's custom-designed, high-performance, low-power central processing units ("CPUs"), utilizes a novel Qualcomm-created microarchitecture that is delivering the next era of computing innovation. *Id.* ¶ 1.

Arm develops certain processor technology that Qualcomm licenses for use in its CPU (also referred to as cores). *Id.* ¶¶ 23–24, 37. Cores perform processing within Qualcomm's microchips, including the Snapdragon X Elite System-On-a-Chip ("SOC"). *Id.* ¶ 1. Qualcomm's license is known as an Architecture License Agreement ("Qualcomm ALA"). *Id.* ¶ 36. Under the Qualcomm ALA, Arm ████████████████████████████████████████████ ████████████████████████████████. Nyarady Decl., Ex. 1 (Qualcomm ALA)████. Yet Arm has, and continues to, willfully withhold ████████████████████████. D.I. 2 ¶¶ 63, 67.

## I.     The Qualcomm Action

### A.     Arm Breached The Qualcomm ALA

In this action, Qualcomm asserted a breach of contract claim against Arm. ████████ ████████████████████████ are at issue. ████████ of the Qualcomm ALA requires Arm to ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

2

███████████████████████████████████ Nyarady Decl., Ex. 1 █████.[1]

Arm is required to deliver updates ████████████████████████████████████

███████████████████ *Id.*

    Under ████████ of the Qualcomm ALA, if Arm fails to ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ D.I. 2 ¶ 49. ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████ *Id.*

    In fall 2022, Qualcomm began to suspect Arm was withholding ARM Technology[2] under the Qualcomm ALA, in particular aspects of the Arm architecture compliance kit ("ACK") that Qualcomm sought to use in the verification process for its ██████ SOC.  D.I. 2 ¶¶ 50–52. Qualcomm provided Arm with details about its ██████ CPU and, by doing so, Arm should have provided Qualcomm with a formal list of agreed Arm ACK tests for which Arm would expect to see verification data.  *Id.* ¶ 50.  Instead, Arm withheld the formal list of tests (known as the

---

[1] The court may consider "a document integral to or explicitly relied upon in the complaint" even if it is not cited or referred to in the complaint.  *In re Burlington Coat Factory*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation omitted); *see also Perrigo Co.* v. *Int'l Vitamin Corp.*, No. 1:17-CV-1778, 2018 WL 4290387, at *2 (D. Del. Sept. 7, 2018).  Because Qualcomm relied on the terms and effects of the Qualcomm ALA in its Complaint, it is integral to the Complaint. *See* D.I. 2 ¶¶ 15, 16, 40, 46–50, 54–55, 57, 60, 63–65, 69–73, 78–88.

[2] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████

"OOB"), ███████████████████████████████████████████████

████  *Id.*  When Qualcomm requested the OOBs and various patches (e.g., bug fixes) from Arm, Arm engineer Vivek Agrawal, Arm Senior Principal Engineer, responded on October 10, 2022, stating "I'll be able to share OOB and various patches after my management has given their approval."  *Id.* ¶ 52.  But Arm failed to deliver the OOB.  *Id.* ¶ 53.  Qualcomm notified Arm in writing of its failure to provide the OOB and other deliverables, stating that its letter serves as "Qualcomm's required notice under ████████ that ARM is not in compliance with its obligations under ████████ and that ARM must cure this breach in accordance with the time and procedures set forth therein."  *Id.*  Arm's response, which came after █████████████████████ asserted that "[n]o additional delivery is required," and "[n]o breach of ████████ has occurred."  *Id.* ¶¶ 55–56, 59.  Because Arm alone is able to verify whether any additional delivery is required, Qualcomm had no way to know whether Arm was correct, and had to take Arm at its word.  *Id.* ¶ 59.

Despite Arm's representations, Qualcomm's outside counsel began to investigate, and became aware of, Arm's breaches of ████████ in November 2023.  *Id.* ¶¶ 13, 62.  During discovery in the Arm Action, Arm produced a document contradicting Arm's prior representations about its compliance with its obligations, and describing Arm's intentional withholding of deliverables—the OOBs and patches—from Qualcomm.  *Id.* ¶ 62.  On December 12, 2023, Mr. Agrawal testified that Arm had withheld ACK "patches," updates to the ACK that are created and provided solely by Arm, even though those patches were supposed to be delivered to Qualcomm. *Id.* ¶ 63.  It was not until Mr. Agrawal's deposition that Qualcomm (through its outside counsel) was able to confirm whether the patches even existed, let alone that they were improperly withheld in violation of ████████ of the Qualcomm ALA.  *Id.*

B.    <u>Qualcomm Brings This Action Against Arm</u>

Qualcomm commenced this action on April 18, 2024 (the "Qualcomm Action"). Qualcomm seeks declaratory judgment that (1) Arm breached the Qualcomm ALA by withholding ARM Technology that Arm was obligated to make ████████████ to deliver under ████ ██ of the Qualcomm ALA, and by withholding updates Arm was required to deliver ████ ████████████████████████ of the Qualcomm ALA; (2) as a result of Arm's breach of ████████ of the Qualcomm ALA, Qualcomm is entitled to █ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████    *Id.* ¶ 78.  Qualcomm is also seeking damages for breach of ████████  *Id.* ¶¶ 81– 88.

## II.    The Arm Action

A.    <u>Factual Background</u>

Nuvia, founded in 2019 and acquired by Qualcomm in 2021, comprised a proven world-class CPU and technology design team, with industry-leading expertise in high-performance processors, SOCs, and power management for compute-intensive devices and applications.  D.I. 16, Ex. 1 (Defendants' Redacted Answer and Defenses to Plaintiff's Complaint and Jury Demand and Defendants' Amended Counterclaim) ¶ 178.[3]  Qualcomm acquired Nuvia to enable Qualcomm

---

[3] To resolve a Rule 12(b)(6) motion, a court may properly look at public records, including judicial proceedings.  *RLI Ins. Co.* v. *Ceradyne, Inc.*, No. 20-CV-1777, 2021 WL 4860709, at *3 n.2 (D. Del. Oct. 19, 2021).  Thus, the Court may rely on the Arm Complaint (C.A. No. 22-1146, D.I. 1); the redacted version of Defendants' Answer and Defenses to Plaintiff's Complaint and Jury Demand and Defendants' Amended Counterclaim, filed October 26, 2022 (C.A. No. 22-1146, D.I. 19); Exhibit 2 to the Nyarady Declaration, which is the proposed redacted version of the March 5, 2024 Transcript of the Hearing on Qualcomm's Motion for Leave to Amend (C.A. No. 22-1146, D.I. 312-1); and the redacted version of Defendants' Letter Requesting Leave to Amend Answer and Counterclaim in deciding Arm's Motion to Dismiss (C.A. No. 22-1146, D.I. 279).

to reduce its reliance on Arm by maintaining an in-house team capable of building its own "custom cores." D.I. 2 ¶¶ 38, 41–43.

Nuvia also had an architecture license agreement with Arm—the Nuvia ALA. D.I. 16, Ex. 1 ¶ 185. Before Qualcomm completed the acquisition of Nuvia, Arm was notified of the impending transaction, but Arm refused to "consent" to assign the agreement to Qualcomm. *Id.* ¶¶ 188–206. Instead, Arm demanded that Qualcomm ████████████████████ to secure Arm's consent, which was not required under either the Nuvia ALA or Qualcomm ALA. D.I. 2 ¶ 5. Qualcomm and Nuvia closed their transaction, and Qualcomm informed Arm that all Nuvia employees would become Qualcomm employees, and Qualcomm's ALA would govern the parties' relationship going forward. D.I. 16, Ex. 4 (Arm Compl. ¶ 43). While Qualcomm and Nuvia each had distinct and separate ALAs with Arm, Qualcomm's ALA provided ██ ████████████████████ rendering Nuvia's ALA unnecessary. D.I. 16, Ex. 1 ¶ 13. Qualcomm then began the design of several custom CPU products. D.I. 2 ¶¶ 41–43. Almost a year after Qualcomm acquired Nuvia, Arm terminated Nuvia's ALA. D.I. 16, Ex. 1 ¶ 31.

B.    The Arm Proceeding

On August 31, 2022, Arm filed its Complaint against Qualcomm and Nuvia alleging that (i) Nuvia breached the termination provisions of the Nuvia ALA and that Qualcomm, as Nuvia's acquirer, shares Nuvia's obligations; and (ii) Qualcomm and Nuvia infringed Arm's trademarks under 15 U.S.C. § 1114 and falsely designated origin under 15 U.S.C. § 1125 in connection with marketing their semiconductor chips incorporating relevant Nuvia technology developed under Nuvia's now-terminated licenses (the "Arm Complaint"). D. I. 16, Ex. 4 ¶¶ 58–94. Arm is seeking specific performance for its contract claim, demanding that Qualcomm cease using and destroy any technology developed by Nuvia. *Id.* ¶ 68. In connection with its two trademark-related claims,

Arm is seeking declaratory relief and an injunction to prevent Qualcomm from using Arm's trademarks. *Id.* ¶¶ 79–82, 91–94.

The crux of the Arm Action is the alleged breach of the Nuvia ALA. *See id.* ¶¶ 58–69. Arm argues that after Nuvia's licenses were terminated, Qualcomm and Nuvia were required to stop using and destroy technology Nuvia received under the Nuvia ALA and certify in writing that it had done so. *Id.* ¶¶ 39–42. Despite Nuvia's certification, Arm believes that Qualcomm continued to use certain technology obtained under the Nuvia ALA, and that doing so is causing Arm "irreparable harm," therefore entitling Arm to specific performance. *Id.* ¶¶ 45–57. Arm's claims in the Arm Action arise only from the Nuvia ALA; Arm made no claim involving the Qualcomm ALA. *See id.* ¶¶ 58–69.

Qualcomm answered Arm's complaint and counterclaimed, seeking a declaratory judgment that (i) Defendants did not breach the Nuvia ALA or TLA as Arm alleged; (ii) following the Nuvia acquisition, Qualcomm's architected cores, Server SOC, and Compute SOC, are licensed under Qualcomm's ALA and TLA for the full terms of those licenses; (iii) Arm's public statements that Qualcomm's ALA expires in 2024 and that Qualcomm will be unable to deliver Arm-compliant products after 2024 are false, considering the ALA specifically licenses Qualcomm for several years past 2025, and provides Qualcomm with the unilateral right to further extend the contract; and (iv) Arm has no right to prevent Qualcomm from shipping its licensed products. D.I. 16, Ex. 1 ¶ 259.

### III.    Qualcomm's Motion To Add New Counterclaims In The Arm Action

On February 21, 2024, two months after Agrawal's deposition that revealed the existence and extent of Arm's purposeful withholding of both patches and the OOB, Qualcomm sought leave to amend its Answer and Counterclaims to allege additional counterclaims. *See* D.I. 16, Ex. 6 (Feb. 29, 2024 Redacted Ltr. Mot. Requesting Leave to Amend Answer and Counterclaim).

Qualcomm noted that after the deadline to amend Arm produced the vast majority of its 60,000 documents, and only after that was Qualcomm able to depose key Arm witnesses, both of which revealed the existence and extent to which Arm was withholding patches and OOBs.  *Id.* at 11. Qualcomm sought leave to add two counterclaims concerning (i) Arm's failure to comply with ████████ of the Nuvia ALA and TLA; and (ii) Arm's failure to comply with ████████ of the Qualcomm ALA.  *See id.* at 1–2.  In its Motion, Qualcomm noted that to "the extent the [c]ourt does not grant Qualcomm's [M]otion to [A]mend, Qualcomm respectfully requests that the [c]ourt amend Paragraph 34 of the Protective Order . . . so [that] Qualcomm can use discovery from this litigation to pursue . . . a separate action."  *Id.* at 3.

At the March 5, 2024 hearing before Judge Hatcher, Arm's counsel argued that Qualcomm should file its claims in a separate action rather than being able to amend its counterclaims in the Arm Action.  In particular, Arm's counsel stated, "[w]e really think [Qualcomm's additional counterclaims are] a topic that should be left for a future [c]ourt, if at all," and "[i]f there were to be any way [an additional counterclaim] gets added, it really should be then dealt with as a separate proceeding or separate process."  Nyarady Decl., Ex. 2 (Redacted Mar. 5, 2024 Hr'g Tr.) at 40:3–4; 14–16.  Arm's counsel further emphasized that allowing the ████████ claims to proceed would delay the trial and upend discovery because the counterclaims would change the nature of the claims in the Arm Action.  *Id.* at 35:1–7 (asserting that Arm will be prejudiced by Qualcomm's motion to amend its counterclaims because it could complicate trial and "upend[] the discovery schedule with . . . a very substantial amount of discovery"); 38:15–19 (claiming that "the amount of discovery that would be associated with [Qualcomm's proposed counterclaims] would be much broader and the issues involved much more significant and would certainly put things out and beyond"); 38:20–39:8 (arguing that Qualcomm's counterclaims would work "a fundamental

change to the nature of the claim because . . . what we have presently are equitable claims, declaratory relief claims, and specific performance claims" and "[a]dding these new claims would turn it into a jury trial").

Judge Hatcher granted Qualcomm's motion with respect to its ██████████ claims, but not its ██████ claims.  *See* D.I. 16, Ex. 3-B (Order dated Mar. 6, 2024); *see also* Nyarady Decl., Ex. 1 ████.  Based on Arm's assertion that the ██████ claims should be dealt with in a separate proceeding, and because the ██████ claims involve a separate agreement and Arm's separate conduct, which has never been at issue in the Arm Action, Qualcomm did not object to Judge Hatcher's ruling pursuant to Rule 72 of the Federal Rules of Civil Procedure, and instead filed this separate action.

## LEGAL STANDARD

The inquiry under Rule 12(b)(6) is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiff, the complaint states a claim for which relief can be granted.  *General Life Ins.* v. *Goldstein,* 741 F. Supp. 2d 604, 610 (D. Del. 2010).  Under Rule 13(a) "[a] pleading must state as a counterclaim any claim that—at the time of its service——the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."  Fed. R. Civ. P. 13(a)(1).  Under Third Circuit law, "a claim is a compulsory counterclaim [if] it bears a logical relationship to an opposing party's claim."  *Xerox Corp.* v. *SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978); *see also Azurity Pharms., Inc.* v. *Bionpharma Inc.*, 650 F. Supp. 3d 269, 276 (D. Del. 2023) ("A counterclaim is compulsory if it 'bears a logical relationship' to the *primary claim*." (emphasis added) (citation omitted)).  Despite the compulsory counterclaim rule, courts will allow a party to split its claims between two separate lawsuits when "[t]he parties have agreed in terms or in effect

that the plaintiff may split his claim, or the defendant has acquiesced therein."  Restatement (Second) of Judgments § 26(1)(a)[4]; *Bradley* v. *Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1073 (3d Cir. 1990).

## ARGUMENT

**I.     Arm's Motion To Dismiss Should Be Denied Because Arm Acquiesced In Qualcomm Filing The ▮▮▮▮▮ Case**

Even assuming that Qualcomm's ▮▮▮▮ claims are compulsory counterclaims, which they are not, *see infra* at 13–20, Arm's counsel made statements to Judge Hatcher in the Arm Action that indicated that Arm acquiesced to Qualcomm asserting its ▮▮▮▮ claims in a separate lawsuit.  Now, after Qualcomm did exactly as Arm's counsel argued it should, Arm is taking an inconsistent position.  As a matter of Third Circuit law, Arm's Motion should be denied.

### A.     Arm Acquiesced To Qualcomm Bringing This Action

The general requirement that a party must raise its compulsory counterclaims in one action "is to protect the defendant from being harassed by repetitive actions based on the same claim. The rule is thus not applicable when the defendant consents, in express words or otherwise, to the splitting of the claim."  Restatement (Second) of Judgments § 26 cmt. a.  *Bradley* v. *Pittsburgh Board of Education*, 913 F.2d 1064 (3d Cir. 1990) is instructive.  There, the Third Circuit reversed a District Court dismissal relying on Bradley's reservation of a federal claim in the state proceedings, noting the defendant should have objected to this reservation.  *Id.* at 1073.  By failing to do so, the court found that defendants had acquiesced in the reservation of a federal claim.  *Id.* The Third Circuit endorsed the Restatement (Second) of Judgments § 26(1)(a), quoting from comment (a) that "[t]he failure of the defendant to object to the splitting of the plaintiff's claim is

---

[4] Delaware has adopted the Restatement (Second) of Judgments approach to preclusion.  *See, e.g.*, *Washam* v. *J. C. Penney Co.*, 519 F. Supp. 554, 558–59 (D. Del. 1981).

effective as an acquiescence in the splitting of the claim." *Id.* at 1072; *see also R & J Holding Co.*

v. *Redevelopment Auth. of Cnty. of Montgomery*, 670 F.3d 420, 428 (3d Cir. 2011) (applying

Pennsylvania state law, also following Restatement (Second) of Judgments) ("Defendants uttered

not a word about the reserved federal claims while Plaintiffs prosecuted their state claims all the

way to the Pennsylvania Supreme Court. They cannot now benefit from their silence.").

Here too Arm's counsel acquiesced in Qualcomm filing this lawsuit. Arm's counsel stated

at oral argument that: (1) Qualcomm's ▇ claims "should be left for a future Court, if at all,"

Nyarady Decl., Ex. 2 at 40:4; (2) "[i]f there were to be any way something gets added, it really

should be then dealt with as a separate proceeding or separate process and not interfere with that,"

*id.* at 40:14–16; and (3) these claims "may be better suited elsewhere," *id.* at 40:18. Accordingly,

Arm's acquiescence to Qualcomm's right to separately file its ▇▇▇ claims insulates these

claims from Rule 13.

Moreover, Qualcomm specifically preserved its right to bring a separate action in the event

that its Motion to Amend was denied, expressly stating that to "the extent the [c]ourt does not grant

Qualcomm's [M]otion to [A]mend, Qualcomm respectfully requests that the [c]ourt amend

Paragraph 34 of the Protective Order . . . so [that] Qualcomm can use discovery from this *litigation*

to pursue . . . a separate action." D.I. 16, Ex. 6 at 3. *See, e.g., Bradley*, 913 F.2d at 1072–73; *see*

*also Venuto* v. *Witco Corp.*, 117 F.3d 754 (3d Cir. 1997) (permitting the second lawsuit to go

forward based on the court's preservation of the claim in a prior action).

Arm not only failed to object to Qualcomm asserting ▇▇▇ claims in a separate suit,

it argued that a new case was the better course. Because Qualcomm's claims were preserved by

its express reservation—which Arm embraced—Arm is barred from arguing that they are

compulsory counterclaims.

B.    <u>Arm Should Be Judicially Estopped From Arguing The ████████ Claims Are
     Compulsory Counterclaims</u>

A court may exercise its discretion to apply judicial estoppel to preclude assertion of a

claim or legal argument when it finds the following three factors are present: "(1) the party to be

estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a

prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner

threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to

address the affront to the court's authority or integrity." *IMEG Corp.* v. *Patel*, No. 20-CV-111,

2021 WL 184407, at *7 (D. Del. Jan. 19, 2021) (quotation omitted).

Here, Arm has taken an inconsistent position.  In the Arm Action, Arm told Judge Hatcher

that "[i]f there were to be any way something gets added, it really should be then dealt with as a

separate proceeding or separate process and not interfere with that," Nyarady Decl., Ex. 2 at 40:14–

16, and that these claims "may be better suited elsewhere," *id.* at 40:18.  Now Arm contends that

the ████████ claims are compulsory counterclaims barred by Rule 13 and principles of claim

preclusion.  D.I. 15 at 1, 9–12.  Arm's actions suggest the bad faith prong has been met.

In addition, but for Arm's counsel's statement to the Court, Judge Hatcher would have

been required to consider the impact of denying Qualcomm's Motion to Amend and the resulting

prejudice to Qualcomm should the ruling result in Qualcomm losing "the opportunity to litigate

their counterclaims if they are not brought in the present action." *Perfect Plastics Indus., Inc*. v.

*Cars & Concepts, Inc.*, 758 F. Supp. 1080, 1082 (W.D. Pa. 1991) (citing 6 Wright Miller & Kane,

*Federal Practice and Procedure* § 1430 at 223 (3d ed. 1990)).  Because Judge Hatcher relied on

Arm's statements that Qualcomm could bring the ████████ claims in a separate lawsuit, the court

did not consider that denying the Motion to Amend based on its untimeliness would bar Qualcomm

from bringing the ████████ claims entirely or the resulting prejudice to Qualcomm.

Arm cannot have it both ways. Arm previously urged the Court to deal with the counterclaims in a new suit, and the Court adopted this position. *See Haines & Kibblehouse, Inc.* v. *Balfour Beatty Constr., Inc.*, 553 F. App'x 246, 251 (3d Cir. 2014) (affirming application of judicial estoppel because "the record was sufficient for the District Court to conclude that H & K affirmatively misrepresented its procedural position and played fast and loose with the courts" (internal quotation marks omitted)); *StairMaster Sports/Medical Products, Inc.* v. *Groupe Procycle, Inc.*, 25 F. Supp. 2d 270, 279–80 (D. Del. 1998) (applying judicial estoppel to prevent inconsistent construction of a phrase at issue in the litigation).

## II.    Arm's Motion Fails On The Merits Because Qualcomm's ▮▮▮▮ Claims Are Not Compulsory Counterclaims

Even if Arm had not acquiesced to filing the ▮▮▮▮ claims in a separate case, its motion should be denied because these claims are not compulsory counterclaims. Arm incorrectly argues that the ▮▮▮▮ claims should be dismissed as compulsory counterclaims because "Qualcomm's claims" in the Arm Action share a logical relationship with the ▮▮▮▮ claims. D.I. 15 at 9–11. But this argument fails because Arm mischaracterizes the nature of the Arm Action, which involves a different contract altogether, unrelated provisions of the respective contracts, and centers on Nuvia's and Qualcomm's conduct, not Arm's.

A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). A precise identity of issues and facts between the claim and the counterclaim is not required; rather, the relevant inquiry is whether the counterclaim "bears a logical relationship to an opposing party's claim." *Xerox Corp.*, 576 F.2d at 1059. "[A] counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort

and time by the parties and the courts." *Id.* (quotation omitted).

A logical relationship necessitates a fact-intensive inquiry that "militate[s] against the use of any general rule." *Id.* at 1060. A "detailed analysis must be made to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties." *Brady* v. *C.F. Schwartz Motor Co.*, 723 F. Supp. 1045, 1048 (D. Del. 1989) (quoting *Xerox Corp.*, 576 F.2d at 1059); *see, e.g., S. Megga Telecomms. Ltd.* v. *Lucent Techs., Inc.*, No. 96-CV-357, 1997 WL 86413, at *10 (D. Del. Feb. 14, 1997) (finding no "logical relationship" between claims where telephones at issue in subsequent complaint were not at issue in complaint for main action); *Metallgesellschaft AG* v. *Foster Wheeler Energy Corp.*, 143 F.R.D. 553, 558 (D. Del. 1992) (finding counterclaim permissive despite "some logical relationship" involving "common issues of fact and law, supported or refuted by some overlapping evidence"); *Paine, Webber, Jackson & Curtis, Inc.* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112, 1114 (D. Del. 1984) (concluding that trade secret counterclaim bore "no logical relationship" to patent claims even though both claims involved similar cash management technology).

A.    There Is No Logical Relationship Between The ▇▇▇▇▇ Claims And Arm's Claims In The Arm Action

Arm argues that Qualcomm's "claims in this new action involve the same underlying facts and contractual issues as the original action, as the pleadings in the original action make clear." D.I. 15 at 10. This contention is wrong.

*First*, Arm's argument relies on its fundamental mischaracterization of the nature of Qualcomm's counterclaims by characterizing Qualcomm's counterclaims, that its products were licensed under Qualcomm's ALA, as affirmative claims. *See id.* at 9–11. *See supra* at 7–9. Thus, Arm is arguing that Qualcomm's ▇▇▇▇▇ claims in this action are compulsory to Qualcomm's

14

own counterclaims in the Arm Action.  D.I. 15 at 9–11.  That is not the correct inquiry.  Rule 13(a) states that a compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the ***opposing party's claim***," not a party's own counterclaim.  Fed. R. Civ. P. 13(a)(1) (emphasis added); *see, e.g., Azurity Pharms.*, 650 F. Supp. 3d at 276 ("A counterclaim is compulsory if it 'bears a logical relationship' to the *primary claim*." (emphasis added) (quotation omitted)); *Zero Techs., LLC* v. *Clorox Co.*, No. 22-CV-3989, 2024 WL 343169, at *10 (E.D. Pa. Jan. 30, 2024) ("Whether a counterclaim is compulsory under Rule 13(a) turns on whether it arises out of the 'transaction or occurrence' that is the subject matter of the opposing party's claim, and this standard is met when there is a 'logical relationship' between the counterclaim and ***the main claim***." (emphasis added) (quotation omitted)).  Applying Rule 13(a) correctly, there is no overlap of factual or legal issues between the ███████ claims and Arm's claims in the Arm Action.

Moreover, the ███████ claims in this case and the claims asserted in the Arm Action do not share factual issues.  In this ███████ case, Qualcomm is seeking relief because Arm has breached its obligations under the Qualcomm ALA.  *See supra at* 7–9; D.I. 2 ¶¶ 2–17.  Arm withheld the OOB and patches, which Arm is obligated to deliver under ███████ and the applicable Annex 1 to the Qualcomm ALA.  *Id.* ¶¶ 50, 63.  Arm is also withholding various patches that Qualcomm is entitled to under the Qualcomm ALA.  *Id.* ¶ 52.  Arm's conduct in withholding these deliverables forms the basis for these ███████ claims.

In contrast, the transaction or occurrence in the Arm Action concerns the alleged breach of Nuvia's ALA and alleged trademark infringement.  *See* D.I. 16, Ex. 4.  Arm's breach claim involves its contention that Nuvia and Qualcomm did not comply with their alleged obligation to destroy Arm Technology, and its trademark claim involves Qualcomm's purported use of the Arm word mark in marketing its custom-designed CPUs.  *Id.* ¶¶ 39, 62, 64.  Neither claim involves the

Qualcomm ALA, and it is based on Qualcomm's and Nuvia's conduct rather than actions by Arm. *See id.* Simply put, the ████████ claims and Arm's claims are asserted pursuant to different contracts between different parties concerning unrelated provisions. As such, the issues asserted in the Qualcomm Complaint are not logically related to the Arm Complaint. *See, e.g., PHL Variable Ins. Co.* v. *Helene Small Ins. Tr. ex rel. Wilmington Sav. Fund Soc., FSB*, No. 12-CV-00312, 2012 WL 5382905, at *2 (D. Del. Nov. 1, 2012) ("Although the cost of insurance adjustment arose from the underlying policy, the legal and factual issues surrounding the alleged breach of contract concern contract and insurance matters ***unrelated*** to the 'insurable interest' dispute that is at the heart of the complaint.") (emphasis added); *S. Megga Telecomms. Ltd.*, 1997 WL 86413, at *10 (finding "no significant overlap of facts or law" despite "both . . . claims involv[ing] the interpretation of" the same contract).

Indeed, in the Arm Action, Arm's counsel argued to the Court that if the ████████ claims were permitted to go forward in the Arm Action, it would "complicat[e] [the] trial," "upend[] the discovery schedule," and require a "very substantial amount of discovery." Nyarady Decl., Ex. 2 at 35:3–7. These arguments establish that these ████████ claims do not share a logical relationship. *See Xerox Corp.*, 576 F.2d at 1061.

Even assuming *arguendo* that there is some logical relationship, *see* D.I. 15 at 9–11, that alone is insufficient to establish that the factual issues between the claims are the same. *S. Megga Telecommunications Ltd.* illustrates this point. There, the parties entered into a contract to produce consumer electronics, with defendant Lucent providing a license for the technology and plaintiff S. Megga manufacturing the products. 1997 WL 86413, at *1. The relationship was terminated by Lucent, and S. Megga sued for breach of contract and other claims. *Id.* at *2. Lucent asserted counterclaims alleging, *inter alia*, that S. Megga had sold phones without Lucent's permission. *Id.*

at *2–3.  The court concluded that although both claims involve the interpretation of the same contract, Lucent's counterclaims were not compulsory under Rule 13(a) because "[t]he factual issues involved in Lucent's counterclaims concern telephones," which were "not at issue in plaintiffs' complaint."  *Id.* at *10.  Likewise, because Qualcomm's ███████ claims involve wholly different conduct than that alleged by Arm in the Arm Action, the two claims cannot share a logical relationship.

*Second*, there is no overlap of legal issues because Arm is seeking specific performance, under the Nuvia ALA, declaratory judgment for trademark infringement pursuant to 15 U.S.C. § 1114, and declaratory judgment for false designations pursuant to 15 U.S.C. § 1125 *et seq*.  D.I. 16, Ex 4 ¶¶ 58–94.  In this action, Qualcomm is seeking damages for breach of the Qualcomm ALA, which is a different contract between different parties.  *See, e.g., M.R.* v. *Ridley Sch. Dist.*, 744 F.3d 112, 121 (3d Cir. 2014) (second case not barred by Rule 13(a) where "despite a relationship between the two lawsuits, there [was] no meaningful overlap between the facts and law underlying the different claims at issue"); *S. Megga Telecomms. Ltd.*, 1997 WL 86413, at *10 (finding no logical relationship where no overlap of legal issue because claims arose from different aspects of business relationship); *see also NRT Tech. Corp.* v. *Everi Holdings Inc.*, No. 19-CV-804, 2020 WL 3403091, at *5 (D. Del. June 19, 2020), *report and recommendation adopted*, 2020 WL 5742792 (D. Del. Sept. 25, 2020).

Thus, Qualcomm's ██████ claims are not compulsory counterclaims.

B.    Collateral Estoppel And Res Judicata Do Not Bar The ██████ Claims

Arm argues that "courts have held that the claim preclusion doctrines of collateral estoppel and res judicata bar an attempt to bring compulsory counterclaims in a new action following the denial of leave to amend, even if the original action remains pending."  D.I. 15 at 13.  This argument misses the point.  Res judicata and collateral estoppel cannot be invoked here.

Collateral estoppel "prevents the re-litigation of a factual or legal issue that was litigated in an earlier proceeding." *Doe* v. *Hesketh*, 828 F.3d 159, 171 (3d Cir. 2016). To assert collateral estoppel Arm must show that "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." *Id.* (quotation omitted). "[F]ederal law appl[ies] res judicata or claim preclusion when three circumstances are present: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (quoting *Post* v. *Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007)).

Collateral estoppel cannot apply here because Arm cannot establish that the merits of the ▉▉▉▉▉ claims were "actually litigated." *Home Depot USA, Inc.* v. *Lafarge N. Am., Inc.*, 59 F. 4th 55, 63 (3d Cir. 2023) (quoting *Arizona* v. *California*, 530 U.S. 392, 414 (2000)); *see also Williams* v. *Litton Loan Servs.*, 788 F. App'x 819, 823 (3d Cir. 2019) (finding claims not barred by collateral estoppel because they were "not final"). The Court in the Arm Action did not reach the merits of Qualcomm's claims, it only passed on the procedural question of whether amendment was proper. In fact, as discussed in further detail above, *supra* at 10–13, Arm indicated to the Court in the Arm Action that the ▉▉▉▉▉ claims should be adjudicated in a subsequent lawsuit. *See* Nyarady Decl., Ex. 2 at 40:4, 40:14–16, 40:18. Thus, according to Arm's own counsel, the merits of the ▉▉▉▉▉ claims were not actually litigated. *See, e.g.*, *Howmedica Osteonics Corp.* v. *Schilling*, No. 20-CV-9621, 2022 WL 17887226, at *4 (D.N.J. Dec. 23, 2022) (rejecting application of collateral estoppel where defendant's personal breach of contract was not "actually litigated" in a prior action between his former and subsequent employers).

Res judicata cannot bar the ▮▮▮▮▮ claims because there was no final judgment on the merits in the Arm Action.  The court's only finding was that Qualcomm possessed sufficient information to assert the ▮▮▮▮▮ claims before the deadline to amend, which is a strictly procedural question.  D.I. 16, Ex. 3-B at 5; *see also* Nyarady Decl., Ex. 1 ▮▮▮.  Arm incorrectly argues that a denial of the motion to amend a complaint in the Arm Action is sufficient to bar the claims for purposes of res judicata and collateral estoppel.  D.I. 15 at 13–14.  Arm relies on *Yeransian* v. *Markel Corporation*, No. 20-CV-762, 2021 WL 979604 (D. Del. Mar. 16, 2021), *see* D.I. 15 at 13, but Arm's reliance is misplaced.  In *Yeransian*, the earlier court denied the motion to amend on the merits.  *See Yeransian* v. *B. Riley & Co., LLC*, No. 18-CV-304, 2019 WL 252029, at *1 (D. Neb. Jan. 17, 2019).  Here, Qualcomm's motion to amend was denied on timeliness grounds—the court did not engage in substantive arguments required for an adjudication on the merits.  *See* D.I. 16, Ex. 3-B; *McKenna* v. *City of Philadelphia*, 304 F. App'x 89, 93 (3d Cir. 2008) (denial of leave to amend has preclusive effect only when based on the merits).

C.    <u>Qualcomm's Attempt To Assert Its ▮▮▮▮▮ Counterclaims In The Arm Action</u>
      <u>Does Not Render Them Compulsory Counterclaims</u>

Arm argues that Qualcomm's attempt to amend its Answer in the Arm Action is confirmation that the ▮▮▮▮▮ claims are compulsory counterclaims.  D.I. 15 at 11–12.  This argument also fails.  As discussed above, *see supra* at 14–17, the ▮▮▮▮▮ claims do not bear a logical relationship to Arm's claims in the Arm Action; they do not arise from the same transaction or occurrence, and therefore, may be brought as permissive counterclaims.  *See PHL Variable Ins. Co.*, 2012 WL 5382905, at *2 (finding claims permissive counterclaims despite some overlap of factual issues); *Brady*, 723 F. Supp. at 1048 ("Unlike Rule 13(a), however, permissive counterclaims under Federal Rule of Civil Procedure 13(b) are not barred when omitted from an original action.").

## CONCLUSION

For the reasons discussed above, Arm's Motion to Dismiss should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Madalyn G. Vaughn
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

July 17, 2024

_____
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 17, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 17, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Samantha G. Wilson, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO 80202<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Nicholas R. Fung, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd., Suite 6000<br>Los Angeles, CA 90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

*/s/ Jennifer Ying*

Jennifer Ying (#5550)