**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Qualcomm INCORPORATION, a Delaware corporation, Qualcomm TECHNOLOGIES, INC., a Delaware corporation, | |
| | C.A. No. 24-490-MN |
| Plaintiffs, | |
| v. | |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | |
| Defendant. | |

**ARM'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS QUALCOMM'S FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, <u>STAY THE CASE</u>**

Dated: January 31, 2025

OF COUNSEL:

Daralyn J. Durie
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
gregg.locascio@kirkland.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    A.    The 2022 Arm-Qualcomm Litigation ................................................. 3

    B.    Qualcomm Initiates This Litigation ................................................... 5

    C.    Qualcomm's First Amended Complaint .............................................. 6

ARGUMENT ...................................................................................................................... 6

I.    QUALCOMM'S CONTRACT CLAIMS ARE BARRED UNDER THE COMPULSORY COUNTERCLAIM DOCTRINE (COUNTS I-III) .............................. 6

    A.    Qualcomm's Breach of Contract and Declaratory Judgment Claims Were Compulsory Counterclaims .................................................... 7

    B.    Qualcomm's Implied Covenant Claim Was Also A Compulsory Counterclaim ................................................................................. 10

    C.    If The Court Does Not Dismiss Counts I-III, It Should Stay This Case While The Original Action Remains Pending. .................................. 11

II.    QUALCOMM'S IMPLIED COVENANT CLAIM FAILS TO STATE A CLAIM ........................................................................................................ 12

III.    QUALCOMM FAILS TO PLEAD TORTIOUS INTERERENCE CLAIMS ............... 13

    A.    Qualcomm's Intentional Interference Claim Fails (Count IV). ........... 13

    B.    Qualcomm's Negligent Tortious Interference Claim Fails (Count V) .............. 15

IV.    QUALCOMM'S CALIFORNIA UCL CLAIM FAILS (COUNT VI) ......................... 16

V.    ALLEGATIONS BASED ON THE OCTOBER 22, 2024 LETTER ARE BARRED BY *NOERR-PENNINGTON* AND RELATED DOCTRINES (COUNTS III-VI) .................................................................................... 18

CONCLUSION ................................................................................................................. 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AgroFresh Inc. v. Essentiv LLC*,
  C.A. No. 16-662 (MN), 2019 WL 2327654 (D. Del. May 31, 2019).....................................11

*Amoco Oil Co. v. McMahon*,
  C.A. No. 98-1625, 1999 WL 116290 (E.D. Pa. Mar. 1, 1999)............................................7, 8

*Avaya Inc., RP v. Telecom Labs, Inc.*,
  838 F.3d 354 (3d Cir. 2016)...................................................................................................18

*Bard v. GSV Asset Management, LLC*,
  No. 3:23-cv-00488-WHO, 2023 WL 8852756 (N.D. Cal. Dec. 21, 2023).............................13

*Block v. eBay, Inc.*,
  No. C 11-06718 CRB, 2012 WL 1601471 (N.D. Cal. May 7, 2012), *aff'd*, 747
  F.3d 1135 (9th Cir. 2014) ......................................................................................................14

*Cal. Expanded Metal Prods. Co. v. ClarkWestern Dietrich Bldg. Sys. LLC*,
  No. 12-10791 DDP (MRWx), 2014 WL 5475214 (C.D. Cal. Oct. 29, 2014)........................15

*Cargill v. Progressive Dairy Sols., Inc.*,
  No. CV-F-07-0349-LJO-SMS, 2008 WL 2235354 (E.D. Cal. May 29, 2008) ................19, 20

*Cel-Tech Comm'cns, Inc. v. Los Angeles Cell. Tel. Co.*,
  20 Cal.4th 163 (1999) ............................................................................................................17

*Cerciello v. Sebelius*,
  C.A. No. 13-3249, 2016 WL 792505 (E.D. Pa. Mar. 1, 2016)..................................................7

*Designing Health, Inc. v. Erasmus*,
  No. CV-98-4758 LGB (CWx), 2001 WL 36239748 (C.D. Cal. Apr. 24, 2001) ....................19

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
  54 Cal. Rptr. 2d 830 (Ct. App. 1996).....................................................................................20

*Drum v. San Fernando Valley Bar Ass'n*,
  182 Cal. App. 4th 247 (2010) ................................................................................................17

*Evanger's Dog & Cat Food Co. v. Env't Democracy Project*,
  No. CV 21-08489, 2022 WL 180205 (C.D. Cal. Jan. 20, 2022) ......................................18, 19

*Fitbit, Inc. v. Laguna 2, LLC*,
  No. 17-cv-00079-EMC, 2018 WL 306724 (N.D. Cal. Jan. 5, 2018)......................................19

*FTC v. Qualcomm, Inc.*,
  969 F.3d 974 (9th Cir. 2020) ...................................................................................17

*Gilead Scis., Inc. v. Abbott Lab'ys, Inc.*,
  C.A. No. 13-2034-GMS, 2015 WL 1191129 (D. Del. Mar. 13, 2015)....................................20

*Golden v. Sound Inpatient Physicians Med. Grp., Inc.*,
  93 F. Supp. 3d 1171 (E.D. Cal. 2015).......................................................................14

*Goodman Mfg. Co., L.P. v. Carrier Corp.*,
  No. 13-2014-SLR, 2014 WL 4954281 (D. Del. Sept. 23, 2014).............................................9

*Guz v. Bechtel Nat. Inc.*,
  24 Cal. 4th 317 (2000) ...........................................................................................12

*HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*,
  No. 22-cv-04109-TSH, 2023 WL 1768120 (N.D. Cal. Feb. 3, 2023) ....................................13

*In the Black Resources, LLC v. Blitz Design, Inc.*,
  No. 3:22-cv-04227-WHO, 2022 WL 17082372 (N.D. Cal. Nov. 17, 2022) .....................2, 12

*Insignia Disposal Services, LLC v. Hrebenar*,
  697 F.Supp.3d 370 (E.D. Pa. 2023) ........................................................................6, 7

*Just in Time Supplier, Inc. v. Sioux Honey Ass'n Coop.*,
  No. 18cv856-MMA (JLB), 2018 WL 2981179 (S.D. Cal. June 14, 2018) ...........................10

*Korea Supply Co. v. Lockheed Martin Corp.*,
  19 Cal. 4th 1134 (2003) ...........................................................................................14

*Lamke v. Sunstate Equipment Co., LLC*,
  387 F. Supp. 2d 1044 (N.D. Cal. 2004) .................................................................2, 12

*LiMandri v. Judkins*,
  60 Cal. Rptr. 2d 539 (Ct. App. 1997)........................................................................15

*Livewirecyber, Inc. v. Lee*,
  No. CV 17-00645-AB (ASx), 2017 WL 4786087 (C.D. Cal. Aug. 3, 2017) ........................15

*In re MacBook Keyboard Litig.*,
  No. 5:18-cv-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)...............................16

*Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*,
  C.A. No. 07-127-LPS, 2011 WL 678707 (D. Del. Feb. 18, 2011)........................................18

*Morgan v. Scott*,
  83 F. Supp. 3d 616 (D. Del. 2015)........................................................................1, 6, 7

*Nationwide Biweekly Admin., Inc. v. Super. Ct.*,
9 Cal. 5th 279 (2020) ...........................................................................................16

*Olson v. World Fin. Grp. Ins. Agency, LLC*,
No. 24-cv-00477-EJD, 2024 WL 3498572 (N.D. Cal. July 19, 2024) ....................15

*PDF Print Commc'ns Inc. v. Federated Mut. Ins. Co.*,
No. CV 21-9896-MWF (AGRx), 2022 WL 2189631 (C.D. Cal. Mar. 29,
2022) ..............................................................................................................16, 17

*Republican Nat'l Comm. v. Google LLC*,
No. 2:22-cv-01904-DJC-JDP, 2024 WL 3595538 (E.D. Cal. July 31, 2024) .........14

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt South, Inc.*,
2 Cal. 5th 505 ( 2017) ....................................................................................13, 14

*Sendi v. NCR Comten, Inc.*,
624 F. Supp. 1205 (E.D. Pa. 1986) ...........................................................................9

*Sharma v. Volkswagen AG*,
524 F. Supp. 3d 891 (N.D. Cal. 2021) .....................................................................17

*Silberg v. Anderson*,
50 Cal.3d 205 (1990) ...............................................................................................19

*Singman v. NBA Props., Inc.*,
No. CV 13-05675 ABC, 2014 WL 7892049 (C.D. Cal. Jan. 17, 2014), *aff'd*,
656 F. App'x 371 (9th Cir. 2016) ............................................................................16

*Song v. Drenberg*,
No. 18-CV-06283-LHK, 2019 WL 1998944 (N.D. Cal. May 6, 2019) ...................15

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) ...................................................................................18

*Stolz v. Wong Commc'ns Ltd. P'ship*,
31 Cal. Rptr. 2d 229 (Ct. App. 1994).......................................................................16

*Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*,
655 F. App'x 103 (3d Cir. 2016) ..............................................................................18

*Synopsys, Inc. v. ATopTech, Inc.*,
No. C 13-2965 MMC, 2015 WL 4719048 (N.D. Cal. Aug. 7, 2015).....................18

*Tahiti v. Oceandless Design, Inc.*,
No. 2:22-cv-03363-RGK-GJS, 2023 WL 3321751 (C.D. Cal. Nov. 17, 2023) .......13

32827595.1

*Transamerica Occidental Life Ins. Co. v. Aviation Office of Am.*,
  292 F.3d 384 (3d Cir. 2002)...........................................................................1, 7, 8

*TriCoast Builders, Inc. v. Lakeview Loan Servicing, LLC*,
  No. B297960, 2021 WL 248316 (Cal. Ct. App. Jan. 26, 2021)................................15

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015) .................................................................18

*United States v. Elias*,
  921 F.2d 870 (9th Cir. 1990) ................................................................................17

*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*,
  814 F. Supp. 2d 1033 (S.D. Cal. Aug. 29, 2011)...................................................19

*Weintraub Financial Servs., Inc. v. Boeing Co.*,
  No. CV 20-3484-MWF (GJSx), 2020 WL 6162801 (C.D. Cal. Aug. 7, 2020).....................14

*Williams v. Apple, Inc.*,
  No. 19-CV-04799-LHK, 2020 WL 6743911 (N.D. Cal. Nov. 17, 2020)...............................16

*Yeransian v. Markel Corp.*,
  C.A. No. 20-762 (MN), 2021 WL 979604 (D. Del. Mar. 16, 2021) ...................................9, 11

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
  601 F. Supp. 3d 625 (C.D. Cal. 2022) ....................................................................2, 16

## Statutes

Cal. Civ. Proc. Code § 425.16 ...............................................................................20

Cal. Civ. Proc. Code § 425.16(b)(1) .......................................................................20

Cal. Civ. Proc. Code § 425.16(e)(2), (3), (4) ...........................................................20

## Other Authorities

Fed. R. Civ. P. 12(b)(6).........................................................................................20

Fed. R. Civ. P. 13(a) ..............................................................................................7

Fed. R. Civ. P. 16.................................................................................................20

Ian King, Arm to Cancel Qualcomm Chip Design License in Feud Escalation,
  Bloomberg, https://www.bloomberg.com/news/articles/2024-10-23/arm-to-
  cancelqualcomm-chip-design-license-in-escalation-of-feud ....................................5

## INTRODUCTION

The Court should dismiss all claims in Qualcomm's amended complaint, which are either barred as compulsory counterclaims or fail under black-letter law. Qualcomm's breach of contract claim (Count II), as well as its tag-a-long declaratory judgment and implied covenant claims (Counts I and III), are barred by the compulsory-counterclaim rule. Those contract claims are based on years-old allegations regarding support and verification for Nuvia-based products under the Qualcomm ALA, which Magistrate Judge Hatcher correctly found were known to Qualcomm "in the fall of 2022" and should have been brought "before the April 28, 2023 deadline to amend" in the ongoing original litigation. *See* No. 1146 D.I. 303, Ex. A (March 20, 2024 Order) at 4.[1] Qualcomm cannot sidestep Judge Hatcher's decision by filing those compulsory counterclaims in a new case. *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am.*, 292 F.3d 384, 389-90 (3d Cir. 2002); *Morgan v. Scott*, 83 F. Supp. 3d 616, 624 (D. Del. 2015) (granting dismissal).

Qualcomm will likely argue that this case differs from the old one based on Arm's October 22, 2024, letter. But that letter at most supports an argument that Qualcomm's tortious interference and California's Unfair Competition Law ("UCL") claims are not barred by the compulsory counterclaim doctrine (these are the only "new" claims in the amended complaint and fail for other reasons). The letter cannot revive Qualcomm's breach of contract claims, which Qualcomm knew about and failed to bring for years. The Court should streamline the parties' dispute by dismissing the breach claims. If the Court does not dismiss, however, it should at a minimum, stay this action pending resolution of the post-trial motions pending in the original litigation, given how closely related Qualcomm's claims here are to its pending counterclaim in

---

[1] Citations to docket entries from the prior original action are denoted with references to "No. 1146 D.I. __." Citations to docket entries in the instant action are denoted via references to "D.I. __."

the original action.

Qualcomm's claims fail for several additional reasons, regardless. Qualcomm cannot state a claim for breach of the implied covenant of good faith and fair dealing because its allegations either duplicate its breach of contract claims, such that its implied-covenant claim is "superfluous" and "may be disregarded," *In the Black Res., LLC v. Blitz Design, Inc.*, No. 3:22-cv-04227-WHO, 2022 WL 17082372, at *5 (N.D. Cal. Nov. 17, 2022) (dismissing claims), or seek to impose additional contractual obligations "to which the parties did not agree." *Lamke v. Sunstate Equip. Co.,* 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004) (same). The tortious interference claims fail because Qualcomm has not alleged a "wrongful act," has not alleged an economic relationship with the anonymous "AI and Ecosystem Company," and has not alleged Arm owed Qualcomm a duty of care—a necessary element for a negligent interference claim. *See* Part III, *infra*. As for the California UCL claim, Qualcomm has not offered the necessary affirmative allegations to "explain why" it needs the equitable remedies the UCL affords, *see In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625 (2022) (granting dismissal), and has not plausibly alleged a violation of the "unfair prong" of that statute, in any event.

Qualcomm's allegations that Arm acted in "bad faith" by asserting Qualcomm materially breached its license agreement and then supposedly "leak[ing] the Breach Letter" face a final insurmountable problem. Those allegations cut across Qualcomm's implied-covenant, tortious interference, and California UCL claims, but Arm's alleged conduct is protected by the *Noerr-Pennington* doctrine and the California litigation privilege. Both of those doctrines shield litigation conduct (including the sending of demand letters like Arm's October 22, 2024, letter) from claims like those that Qualcomm asserts here. For similar reasons, those claims run afoul of California's anti-SLAPP laws and must be dismissed for that reason as well. The Court should

dismiss the complaint with prejudice.

**BACKGROUND**

A.    **The 2022 Arm-Qualcomm Litigation**

Litigation between Arm and Qualcomm began over two years ago: On August 31, 2022, Arm filed a complaint alleging that Qualcomm and its recently-acquired subsidiary Nuvia breached certain provisions in the Architecture License Agreement ("ALA") Nuvia signed to gain access to Arm's proprietary instruction set architecture (the "Nuvia ALA"). *See generally* No. 1146 D.I. 1. The Nuvia ALA specified that Nuvia would not assign the ALA without Arm's prior consent. *Id.* Absent such consent, Nuvia could not transfer the ALA as part of any transaction in which a third party acquired control of Nuvia. *Id.* Upon termination, Nuvia had an obligation to return or destroy any aspects of its CPU designs that were derived from the licensed Arm architecture, an obligation Arm contends Qualcomm assumed through its conduct. *Id.*

Qualcomm's Answer and Counterclaims and subsequent conduct confirmed that the parties' dispute regarding Arm's obligations turned not only on the Nuvia ALA, but also on the parties' rights under a separate ALA Qualcomm had signed with Arm (the "Qualcomm ALA"). On October 6, 2022 (not long after Arm filed its original complaint), Qualcomm asked Arm to verify and support the Nuvia-based CPU designs under the Qualcomm ALA. D.I. 36 ("FAC") ¶ 69. Arm responded that it would not verify or support those designs—designs Nuvia should have destroyed after Arm terminated the Nuvia ALA for breach—because they were unlicensed. *See* FAC ¶ 77; No. 1146 D.I. 303 Ex. A at 4-5; No. 1146 D.I. 21 at 2, 41, ¶¶ 38, 259, 261.

Qualcomm then brought counterclaims putting its own ALA at issue. Qualcomm asserted that its "design, activities, and work on the Phoenix Core and associated SoCs are fully licensed pursuant to Qualcomm's license agreements with ARM," and demanded a declaratory judgment that those technologies "are fully licensed under Qualcomm's ALA." No. 1146 D.I. 19 at ¶¶ 175,

259. Additionally, as Qualcomm admits in this action, Qualcomm sent written correspondence asserting that Arm had an obligation to verify and support Qualcomm's Nuvia-based CPU designs. FAC ¶ 70. Arm, however, denied that it had such a duty, and on November 15, 2022, filed its own Answer to Qualcomm's counterclaims, asserting that it "ha[d] no obligation to support Qualcomm's further attempts to continue developing" the Nuvia designs. *See* No. 1146 D.I. 21 at 2. Arm also denied that the Qualcomm ALA changed that conclusion: "Qualcomm's ALA with Arm expressly excludes any license to Arm technology that was not developed under that specific ALA." *Id.* Thus, as early as November 2022, the parties had articulated their dispute regarding the Qualcomm ALA. The parties' answers, counterclaims, and correspondence all made clear that the Qualcomm ALA was at issue early on in the original litigation.[2]

It was not until February 2024, however, ten months after the deadline to amend, that Qualcomm finally sought to add a counterclaim specifically alleging that Arm breached the Qualcomm ALA by refusing to verify and support Nuvia-based products. *See* No. 1146 D.I. 279 at 1-2; FAC at 28 n. 34. Arm opposed the motion, and Magistrate Judge Hatcher denied it, noting that Qualcomm's theory of liability "was evident … in late 2022—well before the April 28, 2023 deadline to amend." No. 1146 D.I. 303 Ex. A at 4 (March 20, 2024, Order). Indeed:

> Defendants' own proposed amendment pleads that 'Qualcomm first discovered that ARM was withholding ARM Technology under the Qualcomm ALA in the fall of 2022 …. On November 3, 2022 and December 5, 2022, Qualcomm notified Arm that Arm's [purported] 'failure to provide certain deliverables, including the OOB' rendered Arm 'not in compliance with its obligations' …. Defendants possessed sufficient information to assert their [redacted] counterclaim before the April 28, 2023 deadline for amendments. Because they did not act diligently in seeking

---

[2] The parties also exchanged correspondence laying out their disputes regarding the Qualcomm ALA in December 2022, shortly after Arm's answer to Qualcomm's counterclaim was filed. As Qualcomm admits in the amended complaint filed in this action, Qualcomm wrote to Arm to assert that Arm had not complied with the Qualcomm ALA. FAC ¶ 71. Arm responded (consistent with its Answer) that Qualcomm did not have the right to seek "verification, delivery, or support" for "Nuvia-based technology" under the Qualcomm ALA. *Id.* ¶¶ 73, 77, No. 1146 D.I. 31 at 2.

amendment, Defendants cannot show good cause under Rule 16(b)(4).

*Id.* at 4-5. Qualcomm did not file any objections to or otherwise appeal Judge Hatcher's order.

### B.    Qualcomm Initiates This Litigation

This litigation began as an end-run around Judge Hatcher's order. On April 18, 2024, Qualcomm filed its original complaint in this action, re-asserting the same claims that Judge Hatcher had disallowed scarcely a month earlier. Qualcomm brought two claims: one requesting a declaratory judgment that Arm had breached the Qualcomm ALA (Count I), and another for breach of contract on account of that same ALA (Count II). *See* D.I. 2 at ¶¶ 77-88. Arm filed a motion to dismiss, and the parties' briefing was completed on July 31, 2024. D.I. 27.

On October 22, 2024, Arm sent Qualcomm a written notice re-asserting that Qualcomm materially breached its ALA by developing unlicensed products, and notifying Qualcomm that Arm would be entitled to terminate the Qualcomm ALA if Qualcomm did not cure this material breach. FAC ¶ 19. The letter was the subject of an article written by Bloomberg, which noted that the letter was part of the parties' ongoing "legal fight that began when Arm sued San Diego-based Qualcomm …. for breach of contract and trademark infringement in 2022."[3]

The Court held a hearing on October 30, 2024, and denied Arm's motion to dismiss based on the assumption Qualcomm was "presumably going to amend [its complaint], maybe add in a couple of tort claims for interfering with their business." *See* 10/30/2024 Hr'g Tr. at 40:10-12. The Court noted that the letter and Bloomberg article might constitute "new stuff" that Qualcomm "could not … have addressed" earlier. *Id.* at 44:19-25. The Court did not, however, preclude Arm from moving to dismiss an amended complaint, instead subsequently approving a stipulation that

---

[3] *See* Ian King, Arm to Cancel Qualcomm Chip Design License in Feud Escalation, Bloomberg, https://www.bloomberg.com/news/articles/2024-10-23/arm-to-cancelqualcomm-chip-design-license-in-escalation-of-feud (cited at FAC ¶ 23 n.11).

Arm could "answer, move, or otherwise respond" to any "First Amended Complaint [by] January 31, 2025." D.I. 34.

### C. Qualcomm's First Amended Complaint

Qualcomm filed its First Amended Complaint on December 16, 2024. The FAC brings claims related to Arm's purported breach of the Qualcomm ALA, including claims for declaratory judgment (Count I), breach of contract (Count II), and breach of the implied covenant of good faith and fair dealing (Count III). The FAC also (as the Court predicted) adds tort claims for intentional interference with prospective economic advantage (Count IV), and negligent interference with prospective economic advantage (Count V), as well as a claim for violation of California's Unfair Competition Law (Count VI).

### ARGUMENT

The Court should dismiss all claims in the FAC with prejudice. Qualcomm's allegations regarding the October 22, 2024, letter are irrelevant to whether Qualcomm's declaratory judgment, breach of contract, and implied-covenant claims were known to Qualcomm during the original action, and are thus now barred under the well-established compulsory counterclaim rule. These claims should be dismissed for this reason alone. (Counts I-III). At the very least, the Court should stay this case until final resolution of the ongoing original litigation.

Qualcomm's implied-covenant, tortious interference, and UCL claims, meanwhile, fail for numerous additional reasons. The Court should dismiss all claims and permit the parties to resolve their remaining disputes in the original case.

### I. QUALCOMM'S CONTRACT CLAIMS ARE BARRED UNDER THE COMPULSORY COUNTERCLAIM DOCTRINE (COUNTS I-III).

It is black-letter law that "[a] compulsory counterclaim not raised in the first action is barred in subsequent litigation." *Morgan*, 83 F. Supp. 3d at 624 (granting dismissal); *Insignia*

*Disposal Servs., LLC v. Hrebenar*, 697 F. Supp. 3d 370, 375 (E.D. Pa. 2023) (same); *Cerciello v. Sebelius*, C.A. No. 13-3249, 2016 WL 792505, at *4 (E.D. Pa. Mar. 1, 2016) (same); *see also* Fed. R. Civ. P. 13(a)(1) (compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim"). The Third Circuit has held that this compulsory counterclaim doctrine should be applied "liberally," and that "there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is [merely] whether the counter claim 'bears a logical relationship to an opposing party's claim.'" *Cerciello*, 2016 WL 792505, at *5 (quoting *Transamerica*, 292 F.3d at 389-90). Such a "logical relationship" is particularly likely where a claim raises "the same subject matter [as] an earlier action," *Morgan*, 83 F. Supp. 3d at 624, or is only an "offshoot[] of the same basic controversy between the parties," *Transamerica*, 292 F.3d at 390.

## A. Qualcomm's Breach of Contract and Declaratory Judgment Claims Were Compulsory Counterclaims.

Qualcomm's declaratory judgment and breach of contract claims were compulsory counterclaims in the original action. These claims (regarding Arm's support and verification obligations) are logically related to Qualcomm's declaratory judgment counterclaim brought in the original action. *Compare* No. 1146 D.I. 15 ¶¶ 235, 246, Prayer for Relief (a), (c); D.I. 306, Prayer for Relief (a), (c) *with* FAC ¶¶ 119-124. Just like Qualcomm's prior counterclaims, which asserted that "Qualcomm's architected cores … are fully licensed under Qualcomm's ALA and TLA for the full terms of those licenses," No. 1146 D.I. 19 at ¶ 259(b), Qualcomm's claims here refer to the same Qualcomm ALA, seeking to determine "Qualcomm's rights and obligations under [that] QC ALA." FAC ¶ 123. This alone is enough to apply the compulsory counterclaim bar: "[w]hen the same contract serves as the basis for both the claims and the counterclaims, the logical relationship standard ... has been satisfied." *Amoco Oil Co. v. McMahon*, C.A. No. 98-1625, 1999

WL 116290, at *7 (E.D. Pa. Mar. 1, 1999) (quoting Wright & Miller).

Qualcomm may argue that the FAC's claims are more specific than the counterclaims it brought in October 2022, theorizing that the FAC (unlike those claims) adds additional allegations related to Arm's "verification, delivery or support rights" under the Qualcomm ALA. FAC ¶¶ 13, 120; No. 1146 D.I. 21 at 41. But that argument has no merit. There need not be "precise identity" between Qualcomm's prior contract arguments and those here; this case is plainly still an "offshoot" of the prior one. *Transamerica*, 292 F.3d at 390.

Qualcomm also attempted to assert the same "verification" and "support rights" claims as a belated amendment in the prior case, seeking the same relief as here. *Compare* No. 1146 D.I. 279-1 ¶¶ 291-293, 299(e), 300, 307 *with* FAC ¶¶ 86, 120 (a), 121, 132 (both seeking a declaration that Arm breached the Qualcomm ALA based on account of Arm's purported verification obligations, and both seeking damages under the same section of the Qualcomm ALA). Qualcomm also relies on the same underlying allegations here as it did when it tried to add claims in the original action, including: (1) Qualcomm's purchase of Nuvia (*compare* No. 1146 D.I. 279-1 ¶¶ 188-189 *with* FAC ¶ 48); (2) Arm's termination of the Nuvia ALA (*compare* No. 1146 D.I. 279-1 ¶¶ 217, 224-225, *with* FAC ¶ 98); (3) Arm's refusal to verify and support Nuvia-based products (*compare* No. 1146 D.I. 279-1 ¶¶ 271, 274-280 *with* FAC ¶¶ 63, 67, 69-78); and (4) Qualcomm's expenditure of resources to remedy harm allegedly caused by Arm's decision. (*compare* No. 1146 D.I. 279-1 ¶¶ 291-293 *with* FAC ¶¶ 86, 132). Indeed, at the pre-trial conference in the original action, Qualcomm's counsel admitted that Arm's alleged breach of the Qualcomm ALA "*has been in the [original action] since the very beginning.*" No. 1146 D.I. 578 at 13:23-14:24 (emphasis added).

This, too, dooms Qualcomm's declaratory judgment and breach of contract claims.

Qualcomm does not dispute that Magistrate Judge Hatcher rejected Qualcomm's belated amendment because Qualcomm's claims were "evident … in late 2022" and Qualcomm "did not act diligently." No. 1146 D.I. 303 Ex. A at 4-5. It is well-established that a party "may not circumvent the court's denial of its motion for leave to amend by filing a separate action for the same claims." *See Goodman Mfg. Co., L.P. v. Carrier Corp.*, No. 13-2014-SLR, 2014 WL 4954281, at *2 (D. Del. Sept. 23, 2014); *Sendi v. NCR Comten, Inc*., 624 F. Supp. 1205, 1207 (E.D. Pa. 1986) (denial of leave to amend does not grant leave to file second lawsuit). Instead, "denial of a motion to amend a complaint in one action is a final judgment on the merits barring the same complaint in a later action." *Yeransian v. Markel Corp.*, C.A. No. 20-762 (MN), 2021 WL 979604, at *5 (D. Del. Mar. 16, 2021).

In an apparent attempt to avoid the compulsory counterclaim rule, Qualcomm asserts that Arm previously "advocated against adding [its withholding deliverables] claim to the case" and "instead … advocated for Qualcomm to bring a separate lawsuit." FAC ¶ 79 n.34 (citing 3/5/2024 Hr'g Tr. at 39:13-20). But Arm did not concede that a follow-on lawsuit would be proper, stating that "[w]e really think it's a topic that should be left for a future Court, *if at all*." No. 1146 D.I. 312-1 (3/5/2024 Hr'g Tr.) at 40:2-4 (emphasis added). While Arm noted that "[i]f there were to be any way something gets added, it really should be then dealt with as a separate proceeding," it also made clear that its primary argument was simply that "they were on inquiry notice … before the deadline," *id.* at 40:6-13, 31:6-8, and "the law here isn't in debate. … they failed to act before the deadline, Rule 16 applies and good cause is required, and good cause, among other things, requires they show that they could not have reasonably sought these claims in a timely manner," *id.* at 24:15-20. Magistrate Judge Hatcher followed this same reasoning in rejecting the belated amendments under Rule 16. *See* No. 1146 D.I. 303 at Ex. A. Qualcomm's failure to timely bring

its logically related Qualcomm ALA claims in the original case bars those claims under the compulsory counterclaim doctrine in this action.

**B.     Qualcomm's Implied Covenant Claim Was Also A Compulsory Counterclaim.**

The same result should apply to Qualcomm's implied covenant claim (Count III) to the extent it focuses on the same support and verification obligations Qualcomm sought to raise before Magistrate Judge Hatcher. Qualcomm asserts that Arm breached the implied covenant by "withholding deliverables that it was required to provide Qualcomm under the [Qualcomm] ALA." FAC ¶ 136. But this is the same obligation and purported breach that Qualcomm alleges to support its contract claim. (*Compare* FAC ¶ 136 ("Arm breached this implied covenant…by…withholding deliverables under the Qualcomm ALA") *with* FAC ¶ 120 (a) ("Arm breached the [Qualcomm] ALA by withholding ARM technology that Arm was obligated …to deliver under…the Qualcomm ALA") *and* No. 1146 D.I. 279-1, ¶ 299 (e) ("Arm breached the Qualcomm ALA by withholding deliverables Arm was obligated" to "deliver under…the Qualcomm ALA").) Accordingly, Qualcomm's claim for breach of the implied covenant is barred as a compulsory counterclaim to the extent that it is based on these delivery obligations. *See Just in Time Supplier, Inc. v. Sioux Honey Ass'n Coop.*, No. 18cv856-MMA (JLB), 2018 WL 2981179, at *4 (S.D. Cal. June 14, 2018) (dismissing claim for breach of implied covenant based on same contract and duty at issue in earlier action).

Qualcomm may argue that the implied covenant claim is also, in part, based on allegations related to "leaking th[e] Breach Letter" in October 2024. *See* FAC ¶ 136. But even if such allegations could save Count III in part, they provide no basis for permitting Qualcomm to *also* end-run Magistrate Judge Hatcher's order by including the same "withholding deliverables" allegation Qualcomm failed to timely bring earlier. *Id.* At least to the extent Count III is based on that allegation, Count III is "logically related to" the earlier action and should be dismissed.

**C.    If The Court Does Not Dismiss Counts I-III, It Should Stay This Case While The Original Action Remains Pending.**

If the Court does not dismiss the first three counts in Qualcomm's complaint, it should stay the case. Litigating Qualcomm's new breach-related claims in this case *after* the Court definitively resolves Qualcomm's counterclaim in the original action is the most efficient path forward. Both Qualcomm's counterclaim in the original action and its contract claims here turn on whether Qualcomm has a license to the Nuvia-based designs. *See* No. 1146 D.I. 300; D.I. 36. Arm has a pending motion for judgment as a matter of law that Qualcomm does not have a license to those designs. No. 1146 D.I. 595. If the Court grants that motion, Qualcomm's breach-related allegations would fail here as well—including Qualcomm's repeated allegation that Arm asserted breach in bad faith. *See* D.I. 36 at ¶¶ 137, 150, 151 (bad faith allegations). Any effort the parties spent litigating those breach-related issues in the interim would have been a waste. Additionally, Arm separately moved for a new trial on Qualcomm's counterclaim given how closely connected that claim is to the breach-of-contract claim the jury left unresolved. No. 1146 D.I. 595, 596. If that motion is granted, the parties would be litigating overlapping licensing issues in parallel cases. That is not an efficient use of the Court's time or the parties' resources. *See*, *e.g.*, *AgroFresh Inc. v. Essentiv LLC*,  C.A. No. 16-662 (MN), 2019 WL 2327654, at *2 (D. Del. May 31, 2019) (granting stay where pending litigation could "clarify issues" and "simplify the case"); *Yeransian*, 2021 WL 979604, at *7.

Qualcomm would not be prejudiced by a stay. It waited over fourteen months to assert its breach-related claims after those claims became apparent in November 2022. *See supra* at 1-3. Qualcomm cannot claim to be in a hurry now, especially when it raised no objection to keeping this case largely dormant until after the December 2024 trial in the original action. The parties' contract dispute also does not appear to pose any practical problems for Qualcomm's business.

Arm is currently supporting Qualcomm's Nuvia-based designs and has assured Qualcomm it will continue to support those designs unless the jury's verdict in the original action is overturned. There is simply no urgency that justifies pressing forward with duplicative litigation.

## II.    QUALCOMM'S IMPLIED COVENANT CLAIM FAILS TO STATE A CLAIM.

"The California Supreme Court has held that where breach of an actual term [of the contract] is alleged, a separate implied covenant claim, based on the same breach, is superfluous." *In re Black Res., LLC,* 2022 WL 17082372, at *5 (granting dismissal); *see also Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 327 (2000)).[4] And "[t]o the extent an implied covenant cause of action seeks to impose limits beyond those to which the parties actually agreed, the claim is invalid." *Lamke*, 387 F.Supp. 2d at 1047 (same). "The central teaching of *Guz* is that in most cases, a claim for breach of the implied covenant can add nothing to a claim for breach of contract." *Id.*

Qualcomm asserts Arm violated the implied covenant of good faith and fair dealing by (i) "withholding deliverables that it was required to provide under the [Qualcomm] ALA," (ii) asserting without basis "that Qualcomm was supposedly in material breach," and (iii) "leaking that Breach Letter to the media." FAC ¶ 136. These allegations either duplicate Qualcomm's breach of contract claim, or seek to impose liability on the basis of obligations not found in that contract. *Lamke*, 372 F. Supp. 2d at 1047.

The claim that Arm withheld deliverables required by the contract is duplicative of Qualcomm's contract claims, and thus "may be disregarded as superfluous as no additional claim is actually stated." *In the Black Res., LLC*, 2022 WL 17082372, at *5-6 (granting dismissal); *see also Tahiti v. Oceandless Design, Inc.*, No. 2:22-cv-03363-RGK-GJS, 2023 WL 3321751, at *4 (C.D. Cal. Nov. 17, 2023) (granting judgment on the pleadings). Qualcomm's breach of contract

---

[4] The Qualcomm ALA is governed by California law. *See* No. 1146 D.I. 601 at 5.

claim, like its implied covenant claim, turns on these same allegations. *Compare* FAC ¶¶ 127-130 *with* ¶¶ 134-136. Because the "deliverables" allegation adds nothing to Qualcomm's existing contract claims, it should be dismissed.

Qualcomm's remaining allegations are based on conduct either expressly permitted by the contract (sending a notice letter, D.I. 39 ¶¶ 101-104), or conduct not proscribed by the contract or otherwise made subject to obligations in the contract. Qualcomm's ALA does not impose confidentiality obligations specific to assertions of breach or the right to terminate, or otherwise restrict Arm's right to make related public statements. Qualcomm's attempt to "impose obligations beyond those contemplated by the parties" for purposes of an implied covenant claim is foreclosed by California law. *HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, No. 22-cv-04109-TSH, 2023 WL 1768120, at *4 (N.D. Cal. Feb. 3, 2023); s*ee also Bard v. GSV Asset Mmgt., LLC*, No. 3:23-cv-00488-WHO, 2023 WL 8852756, at *4 (N.D. Cal. Dec. 21, 2023) (dismissing implied-covenant claim where there was "no contractual basis for the obligations" plaintiff asserted were violated).

## III.    QUALCOMM FAILS TO PLEAD TORTIOUS INTERERENCE CLAIMS.

### A.    Qualcomm's Intentional Interference Claim Fails (Count IV).

To plead intentional interference with prospective economic advantage, Qualcomm must allege: "(1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful act(s) designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." *See Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017). Qualcomm fails to plead these elements.

*First*, Qualcomm fails to plead that Arm committed any intentional wrongful acts. The

California Supreme Court has held that this element requires "independently wrongful" conduct, defined as conduct "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 19 Cal. 4th 1134, 1159 (2003). Even if a plaintiff alleges some sort of interference with economic advantage, courts dismiss intentional interference claims where, as here, the plaintiff still does not allege (1) conduct otherwise "wrongful by some legal measure," *Golden v. Sound Inpatient Physicians Med. Grp., Inc.*, 93 F. Supp. 3d 1171, 1178 (E.D. Cal. 2015) (granting dismissal), or (2) that the defendant's conduct "violated any other law, which is a necessary element of intentional interference with economic relations," *Republican Nat'l Comm. v. Google LLC*, No. 2:22-cv-01904-DJC-JDP, 2024 WL 3595538, at *1 (E.D. Cal. July 31, 2024) (same); *Weintraub Fin. Servs., Inc. v. Boeing Co.*, No. CV 20-3484-MWF (GJSx), 2020 WL 6162801, at *8 (C.D. Cal. Aug. 7, 2020) (similar). "California law does not recognize a breach of contract as a 'wrongful act' predicate." *Block v. eBay, Inc.*, No. C 11-06718 CRB, 2012 WL 1601471, at *5 (N.D. Cal. May 7, 2012), *aff'd*, 747 F.3d 1135 (9th Cir. 2014). That leaves Qualcomm's allegation that Arm leaked the October 22, 2024, letter. FAC ¶ 144. But Qualcomm does not (and cannot) allege this alleged leak violated any statute or "other law." *Google*, 2024 WL 3595538 at *1. Indeed, no law prohibits Arm from making the statements in the letter publicly or via press release. Arm has a constitutional right to make public statements regarding its view of the case. *See* Part V, *infra*.

*Second*, Qualcomm fails to plead the first (existence of a relationship) and fourth (disruption of relationship) elements of an intentional tortious interference claim, at least for its purportedly interrupted relationship with the anonymous "AI and Ecosystem Company." FAC ¶¶ 116, 142, 146. Qualcomm describes this unspecified entity as only "a potential customer," whom Qualcomm hoped would finalize an agreement for Qualcomm's chips. *Id.* ¶ 116. But courts

are wary of extending tort liability to mere potential customer relationships and have dismissed tortious interference claims based on hypothetical or potential future customer profits. *See*, *e.g.*, *Olson v. World Fin. Grp. Ins. Agency, LLC*, No. 24-cv-00477-EJD, 2024 WL 3498572, at *4 (N.D. Cal. July 19, 2024) (granting dismissal); *Song v. Drenberg*, No. 18-CV-06283-LHK, 2019 WL 1998944, at *8 (N.D. Cal. May 6, 2019) (same). Indeed, California law requires dismissal even where, as here, a plaintiff may allege that the potential customer is "actively engage[d] in business negotiations." *Song*, 2019 WL 1998944 at *8 (discussing *Cal. Expanded Metal Prods. Co. v. ClarkWestern Dietrich Bldg. Sys. LLC*, No. 12-10791 DDP (MRWx), 2014 WL 5475214, at *1 (C.D. Cal. Oct. 29, 2014)). Such negotiations are not the same as existing economic relationships, and so are "not enough." *Id.*

### B.    Qualcomm's Negligent Tortious Interference Claim Fails (Count V).

Qualcomm's negligent tortious interference claim fails for the same reasons the intentional interference with prospective economic advantage fails: Arm's conduct was not wrongful, the supposed relationships were speculative, and Arm's conduct did not disrupt these relationships. *See TriCoast Builders, Inc. v. Lakeview Loan Servicing, LLC*, No. B297960, 2021 WL 248316, at *5 (Cal. Ct. App. Jan. 26, 2021) (negligent tort also requires these elements); *Livewirecyber, Inc. v. Lee*, No. CV 17-00645-AB (ASx), 2017 WL 4786087, at *4 (C.D. Cal. Aug. 3, 2017). In addition, Qualcomm's negligent interference claim fails because Arm owed no duty to Qualcomm.

"The tort of *negligent* interference with economic relationship arises only when the defendant owes the plaintiff a duty of care." *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 551 (Ct. App. 1997). Although all parties must generally refrain from "*intentionally* tortious conduct," a "*negligent* cause of action" requires this additional allegation. *Id.* And, importantly for present purposes, "[t]here is no duty of care between competitors under California law." *Singman v. NBA Props., Inc.*, No. CV 13-05675 ABC (SHx), 2014 WL 7892049, at *5 (C.D. Cal. Jan. 17, 2014),

*aff'd*, 656 F. App'x 371 (9th Cir. 2016) (granting dismissal); *Stolz v. Wong Commc'ns Ltd. P'ship*, 31 Cal. Rptr. 2d 229, 238 (Ct. App. 1994) (plaintiff could not allege a duty, "since it was plain that plaintiff and defendants were competitors"). Here, Qualcomm inadequately alleges that Qualcomm and Arm are competitors, *see* FAC ¶¶ 60, 118, but alleges no other source of a duty of care (in fact, the word "duty" does not even appear in Qualcomm's complaint), *see generally* FAC.

## IV. QUALCOMM'S CALIFORNIA UCL CLAIM FAILS (COUNT VI)

UCL claims must be dismissed where plaintiffs "fail to include any substantive allegations that they lack an adequate legal remedy." *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d at 769. The California Legislature, "in enacting the UCL, intended to create an equitable, rather than a legal, cause of action." *Nationwide Biweekly Admin., Inc. v. Super. Ct.*, 9 Cal. 5th 279, 299 (2020); *Williams v. Apple, Inc.*, No. 19-CV-04799-LHK, 2020 WL 6743911, at *9 (N.D. Cal. Nov. 17, 2020) (the "civil causes of action authorized by the UCL … must properly be considered equitable"). Courts accordingly dismiss UCL claims where parties fail to "explain why money damages are not an adequate remedy." *In re ZF-TRW*, 601 F. Supp. 3d at 669; *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020). Here, Qualcomm does not include even a boilerplate allegation that it lacks adequate legal remedies, much less substantively "explain why" legal remedies are inadequate.

Dismissal is particularly appropriate where Qualcomm's legal and UCL claims are "based on the same factual predicate"—in such cases, "duplicative" UCL claims should be "dismiss[ed] … with prejudice," *Williams*, 2020 WL 6743911, at *10. Further, the need to allege the inadequacy of legal harm remains even if a party pleads legal and UCL claims in the alternative. *Cf. PDF Print Commc'ns Inc. v. Federated Mut. Ins. Co.*, No. CV 21-9896-MWF (AGRx), 2022 WL 2189631, at *3 (C.D. Cal. Mar. 29, 2022) ("It is [] unclear how Plaintiff could plead a UCL claim as an alternative when there is no right to relief, whether in the alternative or otherwise."). While

Qualcomm may ultimately lose on its claims for damages, that does not make those remedies inadequate for purposes of alternatively pleading a UCL claim. *United States v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990); *see also Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021) ("prayer for equitable relief" must "demonstrate the inadequacy of a legal remedy").

Qualcomm also does not substantively allege any UCL claim. Qualcomm bases its UCL count under the statute's "unfair" prong. *See* FAC ¶ 155 (alleging "unfair" practices). But to plead an "unfair" UCL claim, Qualcomm must allege that Arm's conduct "[1] threatens an incipient violation of an antitrust law, or [2] violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [3] otherwise significantly threatens or harms competition." *Cel-Tech Comm'cns, Inc. v. Los Angeles Cell. Tel. Co.*, 20 Cal.4th 163, 187 (1999). Here, Qualcomm alleges that Arm "wrongfully assert[ed] that it has the right to terminate the [Qualcomm] ALA" and "leak[ed] the Breach Letter to the media." FAC ¶ 155.

Neither of Arm's alleged acts violate the "spirit" of antitrust laws. Asserting a contractual right to terminate is not an antitrust violation, nor is allegedly discussing contractual rights with the press, particularly where Arm has no duty to deal with Qualcomm, much less on Qualcomm's preferred terms. *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 993 (9th Cir. 2020); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 254 (2010) (refusal to deal not actionable under the UCL). Qualcomm also makes no plausible allegations supporting a claim based on alleged monopoly power, such as clear indication of the relevant markets, allegations of market shares in any such markets, or any other indicia tending to establish the existence of an antitrust claim. Nor are there allegations making the "unusual" showing that Arm somehow "violate[d] the 'policy and spirit' of the antitrust laws without violating the actual laws themselves." *Synopsys,*

*Inc. v. ATopTech, Inc.*, No. C 13-2965 MMC, 2015 WL 4719048, at *10 (N.D. Cal. Aug. 7, 2015) (granting dismissal).

## V.    ALLEGATIONS BASED ON THE OCTOBER 22, 2024 LETTER ARE BARRED BY *NOERR-PENNINGTON* AND RELATED DOCTRINES (COUNTS III-VI).

Qualcomm's implied covenant, tortious interference, and UCL claims all rest on the allegations that Arm "wrongfully assert[ed] that it has the right to terminate the QC ALA" and allegedly "leak[ed] the Breach Letter to the media." FAC ¶ 155; *see also id.* ¶¶ 136, 144, 150. Even if Qualcomm's allegations were true, such litigation-related conduct is not actionable.

*Noerr-Pennington* immunizes parties from liability "for engaging in conduct (including litigation) aimed at influencing decision making by the government." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 413 (3d Cir. 2016). The doctrine protects "conduct incidental to the prosecution of [a] suit," *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934-35 (9th Cir. 2006), including "demand letter[s] or cease-and-desist letter[s]." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015); *Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 655 F. App'x 103, 111 (3d Cir. 2016) ("cease-and-desist letter" "protected under *Noerr-Pennington*"); *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, C.A. No. 07-127-LPS, 2011 WL 678707, at *2 (D. Del. Feb. 18, 2011) (similar). There is a "sham exception" to this rule, but it applies only to suits that are "objectively baseless in the sense that no reasonable litigant could realistically expect success." *Sweet St. Desserts, Inc.*, 655 F. App'x at 110. Qualcomm's claims based on sending the October 22, 2024, letter consequently fail as a matter of law.

Claims based on publicizing that letter fail, too. Attaching liability to steps to publicize legitimate lawsuits risks chilling litigation conduct. Courts thus apply *Noerr-Pennington* immunity when plaintiffs bring tortious interference and other claims based on purported communications about litigation to customers. *See*, *e.g.*, *Evanger's Dog & Cat Food Co. v. Env't Democracy*

*Project*, No. CV 21-08489, 2022 WL 180205, at *1, *4 (C.D. Cal. Jan. 20, 2022) (dismissing claims arising out of letter to plaintiff's customer); *Fitbit, Inc. v. Laguna 2, LLC*, No. 17-cv-00079-EMC, 2018 WL 306724, at *10 (N.D. Cal. Jan. 5, 2018) (claims based on contacting customers regarding pre-suit demand letter barred by *Noerr-Pennington*). In *Evanger's*, a defendant notified the plaintiff's customer that plaintiff's products were mislabeled and should not be sold. 2022 WL 180205, at *1. The court dismissed resulting tortious interference claims, reasoning that the defendant communicated "with the intent to engage with the courts and procure a favorable ruling to enforce [statutory] requirements." *Id.* at *4. Here, even if Arm had forwarded its demand letter directly to Qualcomm customers, informing them Arm believes Nuvia designs to be unlicensed, that communication would be protected by *Noerr-Pennington*, as would an alleged leak conveying the same demand.

California's litigation privilege also shields Arm's letter (and alleged publicizing of that letter) from Qualcomm's claims. The "litigation privilege is … absolute in nature," *Silberg v. Anderson*, 50 Cal.3d 205, 215 (1990), and protects not only statements made in litigation, but also "out-of-court statements 'to nonparties who have a substantial interest in the outcome of the pending litigation.'" *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1040-41 (S.D. Cal. Aug. 29, 2011); *see also Cargill v. Progressive Dairy Sols., Inc.*, No. CV-F-07-0349-LJO-SMS, 2008 WL 2235354, at *6 (E.D. Cal. May 29, 2008) ("news release" "inform[ing] the recipients of the … claims asserted" protected by the privilege); *Designing Health, Inc. v. Erasmus*, No. CV-98-4758 LGB (CWx), 2001 WL 36239748, at *3-4 (C.D. Cal. Apr. 24, 2001) (similar). Arm's letter was made during litigation with Qualcomm regarding the relevant issues; even if Arm allegedly publicized the letter, it described Arm's claims and litigation position accurately. Such publications are protected under California law. *Cargill*,

32827595.1

19

2008 WL 2235354, at *6.

For many of the same reasons, California's Anti-SLAPP statute (Cal. Civ. Proc. Code § 425.16) provides protections against Qualcomm's claims. California courts have confirmed that the protections of the Anti-SLAPP law overlap with those of the litigation privilege. *See Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 54 Cal. Rptr. 2d 830, 834-35 (Ct. App. 1996) (communications relating to an action "within the protection of the litigation privilege" are "equally entitled to the benefits of section 425.16"). Here, the Anti-SLAPP law protects (1) Arm's letter as a writing regarding an issue subject to judicial review, (2) the related publication as a writing in connection with an issue of public interest, and (3) both the letter and publication as conduct in furtherance of the constitutional rights of petition and free speech. *See* Cal. Civ. Proc. Code § 425.16(e)(2), (3), (4).

As a Court in this District has confirmed, California's Anti-SLAPP law permits defendants to bring a special motion to dismiss claims falling within its scope, *see Gilead Scis., Inc. v. Abbott Lab'ys, Inc.*, C.A. No. 13-2034-GMS, 2015 WL 1191129, at *3 (D. Del. Mar. 13, 2015), shifting the burden to the plaintiff to establish a probability it will prevail on its claims. Cal. Civ. Proc. Code § 425.16(b)(1). Given Qualcomm's failure to state a claim (discussed above), it cannot satisfy the higher burden imposed by the Anti-SLAPP law. *See Gilead Scis., Inc.*, 2015 WL 1191129, at *3 (applying Rule 12(b)(6) analysis in granting motion under Anti-SLAPP law).

## CONCLUSION

For the reasons discussed above, the Court should dismiss this action with prejudice.

Dated: January 31, 2025

OF COUNSEL:

Daralyn J. Durie
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


 */s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

21

gregg.locascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 31, 2025, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
Erin J. Morgan
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
rjgarrett@paulweis.com
ejmorgan@paulweiss.com

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com


YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

swilson@ycst.com

*Attorneys for Arm Holdings PLC f/k/a Arm Ltd.*