IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED, )
  a Delaware corporation; and )
QUALCOMM TECHNOLOGIES, INC., )
  a Delaware corporation, )
                     )
        Plaintiffs, )    C.A. No. 24-490 (MN)
                     )
      v. )    **REDACTED – PUBLIC VERSION**
                     )    **Original Filing Date: February 28, 2025**
ARM HOLDINGS PLC., f/k/a ARM LTD., )    **Redacted Filing Date: March 5, 2025**
  a U.K. corporation, )
                     )
        Defendant. )

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT
ARM HOLDINGS PLC'S MOTION TO DISMISS**

Morris, Nichols, Arsht & Tunnell LLP

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Paul, Weiss, Rifkind, Wharton
  & Garrison LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
Paul, Weiss, Rifkind, Wharton
  & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

February 28, 2025

**TABLE OF CONTENTS**

**Page**

I.    NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II.   INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

III.  STATEMENT OF FACTS ............................................................................................... 2

      A.    Factual Background ............................................................................................. 2

      B.    Procedural History .............................................................................................. 3

IV.   ARGUMENT ................................................................................................................... 4

      A.    As This Court Already Held, Qualcomm's Claims Based on Breaches of
            Section ▮ of the Qualcomm ALA Are Not Compulsory Counterclaims. ........... 4

            1.    Arm's Effort to Relitigate This Question Is Barred. ................................ 4

            2.    As This Court Previously Concluded, Arm's Arguments for Dismissing
                  Qualcomm's ▮ Claims Are Meritless. ...................................................... 6

            3.    Qualcomm's Implied-Covenant Claim Is Not a Compulsory
                  Counterclaim. ............................................................................................ 8

      B.    Arm Offers No Valid Reason for Dismissing Any of Qualcomm's Newly
            Pleaded Claims. ................................................................................................... 9

            1.    Qualcomm Has Stated a Claim for Breach of the Implied Covenant of
                  Good Faith and Fair Dealing. .................................................................... 9

            2.    Qualcomm Has Stated a Claim for Intentional Interference with
                  Prospective Economic Advantage. ......................................................... 11

            3.    Qualcomm Has Stated a Claim for Negligent Interference with
                  Prospective Economic Advantage. ......................................................... 13

            4.    Qualcomm Has Stated a Claim Under the California Unfair
                  Competition Law. .................................................................................... 14

            5.    Arm Cannot Shield Its Misconduct Behind Any of the Privileges It
                  Invokes. ................................................................................................... 16

            6.    Any Dismissal Should Be with Leave to Amend. ................................... 19

      C.    Arm's Motion for a Stay Should Be Denied. ..................................................... 19

V.    CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AgroFresh Inc.* v. *Essentiv LLC*,
2019 WL 2327654 (D. Del. May 31, 2019)...........................................................................20

*Argentieri* v. *Zuckerberg*,
214 Cal. Rptr. 3d 358 (Ct. App. 2017) ................................................................................18

*Arizona* v. *California*,
460 U.S. 605 (1983)..............................................................................................................4

*Bard* v. *GSV Asset Mgmt., LLC*,
2023 WL 8852756 (N.D. Cal. Dec. 21, 2023) .....................................................................11

*Brehm* v. *21st Cent. Ins. Co.*,
83 Cal. Rptr. 3d 410 (Ct. App. 2008) ..................................................................................11

*Broughty* v. *Bouzy*,
2023 WL 5013654 (D.N.J. Aug. 7, 2023) ............................................................................19

*Cal. Expanded Metal Prods. Co.* v. *ClarkWestern Dietrich Bldg. Sys. LLC*,
2014 WL 5475214 (C.D. Cal. Oct. 29, 2014).......................................................................13

*Cel-Tech Commc'ns, Inc.* v. *L.A. Cell. Tel. Co.*,
973 P.2d 527 (Cal. 1999) ...............................................................................................13, 15

*Celador Int'l Ltd.* v. *Walt Disney Co.*,
347 F. Supp. 2d 846 (C.D. Cal. 2004) .................................................................................10

*Code Rebel, LLC* v. *Aqua Connect, Inc.*,
2013 WL 5405706 (C.D. Cal. Sept. 24, 2013) .....................................................................14

*Comunale* v. *Traders & Gen. Ins. Co.*,
328 P.2d 198 (Cal. 1958) .......................................................................................................9

*Constr. Cost Data, LLC* v. *Gordian Grp., Inc.*,
2017 WL 2266993 (S.D. Tex. Apr. 24, 2017) .................................................................17, 18

*ConsumerDirect, Inc.* v. *Pentius, LLC*,
2022 WL 16949657 (C.D. Cal. Aug. 25, 2022).....................................................................15

*CRST Van Expedited, Inc.* v. *Werner Enters.*,
479 F.3d 1099 (9th Cir. 2007) .............................................................................................13

*CTF Hotel Holdings, Inc.* v. *Marriott Int'l, Inc.*,
381 F.3d 131 (3d Cir. 2004).................................................................................................19

*Daly* v. *United Healthcare Ins. Co.*,
    2010 WL 4510911 (N.D. Cal. Nov. 2010) ............................................................................11

*Epic Games, Inc.* v. *Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023) ...............................................................................................15

*Ernst* v. *Union Cnty. Conserv. Dist.*,
    2023 WL 6276698 (M.D. Pa. Sept. 26, 2023) ........................................................................5

*Falcon* v. *City Univ. of N.Y.*,
    2016 WL 3920223 (E.D.N.Y. July 15, 2016)..........................................................................6

*GCL, LLC* v. *Schwab*,
    2012 WL 4321972 (E.D. Pa. 2012) ......................................................................................6

*GetFugu, Inc.* v. *Patton Boggs LLP*,
    162 Cal. Rptr. 3d 831 (Ct. App. 2013) ...............................................................................18

*Gold* v. *Johns-Manville Sales Corp.*,
    723 F.2d 1068 (3d Cir. 1983)...............................................................................................19

*Grayson* v. *Mayview State Hosp.*,
    293 F.3d 103 (3d Cir. 2002)................................................................................................19

*Harm* v. *Frahser*,
    5 Cal. Rptr. 367 (Ct. App. 1960)..........................................................................................9

*HotSpot Therapeutics, Inc.* v. *Nurix Therapeutics, Inc.*,
    2023 WL 1768120 (Feb. 3, 2023).......................................................................................11

*IMEG Corp.* v. *Patel*,
    2021 WL 184407 (D. Del. Jan. 19, 2021)..............................................................................8

*In re Pharm. Benefit Mgrs. Antitrust Litig.*,
    582 F.3d 432 (3d Cir. 2009)..................................................................................................5

*In re Subaru Battery Litig.*,
    2021 WL 1207791 (D.N.J. Mar. 31, 2021)..........................................................................16

*In re Univ. Health Servs., Inc.*,
    2018 WL 8758704 (E.D. Pa. Dec. 10, 2018).......................................................................20

*In the Black Resources, LLC* v. *Blitz Design, Inc.*,
    2022 WL 17082372 (N.D. Cal. Nov. 17, 2022) ..................................................................10

*J'Aire Corp.* v. *Gregory*,
    598 P.2d 60 (Cal. 1979) ......................................................................................................14

*Jones* v. *Bock*,
 549 U.S. 199 (2007)................................................................................................17

*Joseph Schlitz Brewing Co.* v. *Downey Distrib.*,
 167 Cal. Rptr. 510 (Ct. App. 1980)........................................................................12

*Kasilingam* v. *Tilray, Inc.*,
 2024 WL 4350118 (S.D.N.Y. Sept. 30, 2024).........................................................5

*Korea Supply Co.* v. *Lockheed Martin Corp.*,
 63 P.3d 937 (Cal. 2003)..........................................................................................13

*La Liberte* v. *Reid*,
 966 F.3d 79 (2d Cir. 2020).......................................................................................19

*Laitram Mach., Inc.* v. *Carnitech A/S*,
 901 F. Supp. 1155 (E.D. La. 1995)..........................................................................18

*Landis* v. *N. Am. Co.*,
 299 U.S. 248 (1936).................................................................................................19

*Leyse* v. *Bank of Am., N.A.*,
 804 F.3d 316 (3d Cir. 2015).......................................................................................6

*Lowell* v. *Mother's Cake & Cookie Co.*,
 144 Cal. Rptr. 664 (Ct. App. 1978)........................................................................12

*McDonald-Witherspoon* v. *City of Philadelphia*,
 2018 WL 4030702 (E.D. Pa. Aug. 23, 2018) ...........................................................5

*Microsoft* v. *Motorola, Inc.*,
 795 F.3d 1024 (9th Cir. 2015) .................................................................................17

*Navellier* v. *Sletten*,
 52 P.3d 703 (Cal. 2002) ...........................................................................................19

*Ogunkoya* v. *City of Monroe*,
 2020 WL 3791850 (E.D.N.Y. July 7, 2020)..............................................................6

*Pasadena Live* v. *City of Pasadena*,
 8 Cal. Rptr. 3d 233 (Ct. App. 2004) ..........................................................................9

*Prof. Real Est. Invs., Inc.* v. *Columbia Pictures Indus., Inc.*,
 508 U.S. 49 (1993)...................................................................................................17

*R Power Biofuels, LLC* v. *Chemex LLC*,
 2016 WL 6663002 (N.D. Cal. Nov. 11, 2016) ........................................................13

*RideShare Displays, Inc.* v. *Lyft, Inc.*,
  2021 WL 7286931 (D. Del. Dec. 17, 2021)................................................................20

*Rogers* v. *Experian Info. Sols., Inc.*,
  2024 WL 894857 (D. Del. Mar. 1, 2024) ..................................................................20

*S. Megga Telecomms. Ltd.* v. *Lucent Techs., Inc.*,
  1997 WL 86413 (D. Del. Feb. 14, 1997) .....................................................................7

*Schwartz* v. *State Farm Fire & Cas. Co.*,
  106 Cal. Rptr. 2d 523 (Ct. App. 2001) ......................................................................11

*SEC* v. *Lucent*,
  2006 WL 2168789 (D.N.J. June 20, 2006).............................................................5, 6

*Song* v. *Drenberg*,
  2019 WL 1998944 (N.D. Cal. May 6, 2019) .............................................................12

*Stewart* v. *Screen Gems-EMI Music, Inc.*,
  81 F. Supp. 3d 938 (N.D. Cal. 2015) .........................................................................10

*Susan A.* v. *County of Sonoma*,
  3 Cal. Rptr. 2d 27 (Ct. App. 1991)............................................................................18

*Sweet St. Desserts, Inc.* v. *Chudleigh's Ltd.*,
  655 F. App'x 103 (3d Cir. 2016) ...............................................................................17

*Tahiti* v. *Oceandless Design, Inc.*,
  2023 WL 3321751 (C.D. Cal. Mar. 1, 2023) ............................................................10

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)....................................................................................................15

*Tri-Growth Ctr. City, Ltd.* v. *Silldorf, Burdman, Duignan & Eisenberg*,
  265 Cal. Rptr. 330 (Ct. App. 1989)...........................................................................12

*United States ex rel. Ralph G. Degli Obizzi & Sons* v. *Dobco, Inc.*,
  2024 WL 2208947 (D. Del. May 15, 2024)...............................................................20

*W. Sugar Coop.* v. *Archer-Daniels-Midland Co.*,
  2015 WL 12683192 (C.D. Cal. Aug. 21, 2015).........................................................17

*Wentland* v. *Wass*,
  25 Cal. Rptr. 109 (Ct. App. 2005).............................................................................18

*Williams* v. *Apple, Inc.*,
  2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) ..........................................................16

*Xerox Corp.* v. *SCM Corp.*,
    576 F.2d 1057 (3d Cir. 1978) ................................................................6, 7

**Statutes**

California Unfair Competition Law ................................................................ *passim*

California Anti-SLAPP Law ................................................................2, 16, 18, 19

Sherman Act ................................................................................................15

**Rules**

Fed. R. Civ. P. 12 ............................................................................................6

Fed. R. Civ. P. 12(b)(6) ..................................................................................15

Fed. R. Civ. P. 12(g) ........................................................................................6

Fed. R. Civ. P. 13(a) ................................................................................7, 8, 9

Fed. R. Civ. P. 15(a)(2) ..................................................................................19

**Other Authorities**

6 Wright & Miller § 1430 (3d ed. 1998) ................................................................8

Restatement (Second) of Judgments § 26 ................................................................8

Restatement (Second) of Contracts § 205, nn. d ....................................................10

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiffs ("Qualcomm") brought this action asserting breach of contract claims and seeking a declaratory judgment after Defendant ("Arm") deliberately withheld deliverables it was required to provide under Section ■ of the parties' Architecture License Agreement ("ALA"). Arm moved to dismiss, and this Court denied that motion.  D.I. 13, 30.[1]  Qualcomm filed an amended complaint adding allegations based on Arm's ongoing interference with Qualcomm's business and with competition.  D.I. 36 (the "FAC").  Arm again moved to dismiss.  D.I. 47, 48.

## II.    INTRODUCTION AND SUMMARY OF ARGUMENT

This Court has already denied Arm's motion to dismiss Qualcomm's claims under Section ■ of the Qualcomm ALA (D.I. 1, Counts I & II).  No. 1146, D.I. 513 at 39:5–6, 44:20–24; Order, D.I. 30.  Arm's attempt to relitigate this issue is barred by the law of the case.  It also fails for the same reasons as the last time:  Having kept Qualcomm's claims based on Arm's breaches of Section ■ (the "■ Claims") out of the Arm Action by arguing they must be brought in a new case, Arm cannot object to defending against those claims here.  In any event, the ■ Claims are not compulsory counterclaims because they involve different conduct and a different contract than Arm's claims in the Arm Action.

Arm's arguments for dismissing the rest of the FAC are similarly meritless.  Arm attempts to controvert Qualcomm's allegations or to recast them in the light most favorable to itself.  But the FAC details Arm's systematic attempts to undermine Qualcomm's business by cutting off access to development tools and interfering with Qualcomm's customer relationships.  And it explains how Arm has thereby deprived Qualcomm of key benefits of the Qualcomm ALA, prevented Qualcomm from obtaining new business opportunities, and undermined competition for

---

[1] Citations to "D.I." refer to docket entries in this case.  Citations to "No. 1146, D.I." refer to docket entries in the "Arm Action," Civil Action No. 22-1146-MN.

computer chips. Accepting Qualcomm's well-pleaded allegations as true, viewing them in the light most favorable to Qualcomm, and drawing reasonable inferences in Qualcomm's favor, the FAC readily states implied-covenant, tortious-interference, and Unfair Competition Law ("UCL") claims. *Noerr-Pennington*, litigation privilege, or California Anti-SLAPP law cannot immunize Arm for bad-faith, out-of-court conduct that violated Arm's contractual obligations and was not a legitimate effort to further Arm's interests in the Arm Action.

Lastly, in moving for an indefinite stay while it attacks the jury verdict in the Arm Action, Arm comes nowhere near satisfying the applicable legal standard. Arm's claim that a stay would simplify the issues in this case is speculative, and Arm fails to show it would suffer hardship if this case were to move forward. By contrast, Qualcomm would be prejudiced by such a stay, which would allow Arm's misconduct to continue unchecked.

## III.    STATEMENT OF FACTS

### A.    Factual Background

Qualcomm designs computer chips that enable products including smartphones and laptops. FAC ¶¶ 6, 27. For chips containing CPUs, Qualcomm licenses technology from Arm under the ALA, which allows Qualcomm to incorporate central processing units ("CPUs") compatible with Arm's instruction set architecture ("ISA") into its products, and a TLA that licenses Qualcomm's use of Arm's off-the-shelf CPU designs. *Id.* ¶¶ 1–2, 32–41. Qualcomm has been an Arm licensee for almost 30 years. *Id.* ¶ 44.

Following a 2016 acquisition by SoftBank, Arm increased fees and attempted to renegotiate contracts even as performance of Arm's CPUs lagged. FAC ¶¶ 6, 57–61. In 2021, Qualcomm acquired startup Nuvia Inc. and formed a team of engineers to create innovative, high-performance custom CPUs. *Id.* ¶¶ 6, 47–51. This acquisition allowed Qualcomm to develop better products and not rely on Arm's inadequate CPU designs. *Id.* ¶¶ 6, 48–50.

Arm viewed Qualcomm as a serious obstacle to its market ambitions and sought to prevent competition by any means it could think of.  FAC ¶¶ 5, 62.  One such means was by filing the Arm Action, in which Arm alleged that Qualcomm and Nuvia violated Nuvia's ALA, and sought destruction of all products incorporating Nuvia technology.  As set forth in the FAC, Arm also deliberately withheld tests and other deliverables that Qualcomm needed to develop its custom cores, while misrepresenting to Qualcomm that it was not withholding any required deliverables. *Id.* ¶¶ 11–18, 67–83.  In addition to attempting to hobble Qualcomm's development efforts, Arm also blitzed Qualcomm's customers with what Arm's CEO has admitted were "misleading" and "confusing" letters misrepresenting the Arm Action and hinting that customers could face legal jeopardy from using Qualcomm products.  Trial Tr. 328:18–23, 329:12–330:9.  Then, less than two months before trial began in the Arm Action, Arm wrote to Qualcomm, threatening to terminate the Qualcomm ALA and claiming that Qualcomm had breached the agreement by, among other things, marketing and seeking support for products that contain Nuvia technology. D.I. 36-1 (the "Breach Letter").  Although the Qualcomm ALA requires the parties to keep confidential the ██████████████ of the ALA, Arm leaked that letter to Bloomberg, and did so during Qualcomm's key product launch summit to maximize the harm that news would cause to Qualcomm.  FAC ¶¶ 110–12.

### B.     Procedural History

In late 2023, Qualcomm learned through discovery in the Arm Action that Arm had been withholding deliverables.  No. 1146, D.I. 272 at 1.  Qualcomm promptly sought to add counterclaims to the Arm Action based on this improper withholding.  *Id.*  Arm opposed the request, arguing that adding the counterclaims would cause a "fundamental change to the nature of the claim" and the "nature of the proceeding."  No. 1146, D.I. 294 at 38:20–39:8, 39:13–14.  It argued that Qualcomm's withholding-related allegations "really should be then dealt with as a

separate proceeding or separate process," "whether [in] this Court or whatever Court [Qualcomm] choose[s]." *Id.* 39:13–20, 40:2–5, 14–18.  After Judge Hatcher denied leave to amend, No. 1146, D.I. 295, Qualcomm filed this suit, as Arm had proposed, on April 18, 2024.  D.I. 1.

In an abrupt reversal, Arm moved to dismiss this action, arguing that Qualcomm's claim should have been raised in the Arm Action.  D.I. 15.  This Court denied that motion, stating that it was "not going to say that that was a compulsory counterclaim that they could have brought, especially now that [Arm] ha[s] taken more action."  No. 1146, D.I. 513, at 39:2–8; *accord* D.I. 30. This Court recognized that in light of Arm's threat to terminate the Qualcomm ALA and Arm's leak of the Breach Letter, Plaintiffs were likely to amend their Complaint, including potentially to add business-interference tort claims.  No. 1146, D.I. 513, at 40:10-12.

Qualcomm then amended its complaint to add new claims based on, among other things, Arm's improper leaking of the Breach Letter, while leaving the ▋ Claims substantially untouched.  *See generally* FAC.  Arm moved to dismiss the Amended Complaint in full, including by seeking dismissal of the ▋ Claims for reasons this Court previously rejected.  D.I. 47–48.

## IV.    ARGUMENT

### A.    As This Court Already Held, Qualcomm's Claims Based on Breaches of Section ▋ of the Qualcomm ALA Are Not Compulsory Counterclaims.

Because Qualcomm's ▋ Claims are substantively identical to the ones this Court already allowed to proceed, the law of the case bars Arm's attempt to relitigate that question.  Arm scarcely acknowledges this Court's denial of its prior motion.  But even if Arm's motion is considered on the merits, Arm has offered no reason its renewed motion should succeed when the first failed.

### 1.    Arm's Effort to Relitigate This Question Is Barred.

***Law of the case***:  Once "a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *Arizona* v. *California*, 460 U.S.

605, 618 (1983). That doctrine exists "to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *In re Pharm. Benefit Mgrs. Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) ("*PBM*") (quotation marks omitted). Courts thus will not consider arguments rejected on a motion to dismiss and then re-raised on a subsequent motion to dismiss a similar complaint. *E.g.*, *SEC* v. *Lucent*, 2006 WL 2168789, at *5 (D.N.J. June 20, 2006).[2] Because this Court already rejected Arm's argument that Qualcomm's ▮ Claims had to be raised in the Arm Action, No. 1146, D.I. 513, at 39:2–7; D.I. 30, the law of the case bars Arm from presenting the same argument. *Compare* D.I. 15 at 8–15, *with* D.I. 48 at 1, 6–10.

The law of the case doctrine permits a court to revisit its decisions when there is new evidence or new law, *PBM*, 582 F.3d at 439, but Arm identifies no change in the law, and Qualcomm's withholding-related allegations are substantively unchanged from the prior complaint, D.I. 36-2. Likewise, although the court can revisit a "clearly erroneous" decision to avoid "manifest injustice," *PBM*, 582 F.3d at 439, Arm identifies no error in this Court's prior decision. Arm's only reference to that decision misstates the Court's rationale, erroneously claiming this Court deferred ruling "based on the assumption Qualcomm was presumably going to amend its complaint," *see* D.I. 48 at 5, while omitting this Court's statement that Qualcomm's ▮ Claims were *not* compulsory counterclaims, No. 1146, D.I. 513 at 39:2–7. To the extent Arm suggests Qualcomm consented to relitigating this issue by entering into a scheduling stipulation, D.I. 48 at 5–6, that stipulation (D.I. 34) merely extended Arm's deadline to respond to the FAC; it said nothing about reviving previously rejected arguments.

---

[2] *See also Kasilingam* v. *Tilray, Inc.*, 2024 WL 4350118, at *9 (S.D.N.Y. Sept. 30, 2024); *Ernst* v. *Union Cnty. Conserv. Dist.*, 2023 WL 6276698, at *9 (M.D. Pa. Sept. 26, 2023); *McDonald-Witherspoon* v. *City of Philadelphia*, 2018 WL 4030702, at *4–5 (E.D. Pa. Aug. 23, 2018).

**Fed. R. Civ. P. 12(g)**:  New arguments for dismissing the ▮ Claims are also barred by Rule 12(g).  That Rule "imposes restrictions on the filing of successive motions to dismiss," *Leyse* v. *Bank of Am., N.A.*, 804 F.3d 316, 319–20 (3d Cir. 2015), including by prohibiting a party from making a Rule 12 motion "raising a defense or objection that was available to [it] but omitted from its earlier motion," Fed. R. Civ. P. 12(g)(2).  Courts have routinely held that this Rule bars a party from challenging the sufficiency of an amended complaint on grounds that could have been raised (but were not) on a motion to dismiss an earlier version of the complaint.  *E.g.*, *GCL, LLC* v. *Schwab*, 2012 WL 4321972, at *3 (E.D. Pa. 2012).[3]  Accordingly, even if Arm's motion to dismiss advanced any new arguments for dismissing the ▮ Claims—and it does not—those arguments would also be barred because they were not raised in Arm's first motion to dismiss.

        **2.**        **As This Court Previously Concluded, Arm's Arguments for Dismissing Qualcomm's ▮ Claims Are Meritless.**

In any event, Arm's renewed motion to dismiss the ▮ Claims fails for the same reasons stated in Qualcomm's opposition to Arm's first motion to dismiss, D.I. 22, which was denied.

*First*, the ▮ Claims are not compulsory counterclaims because there is not a sufficient logical relationship between those claims and Arm's claims in the first action.  D.I. 22 at 13–17.  Although Arm argues that any "logical relationship" suffices, D.I. 48 at 7–8, the law sets forth a fact-intensive inquiry that considers whether the claims share many of the same factual issues or the same factual and legal issues, or represent different offshoots of the same basic controversy, and ultimately turns on whether separate trials "would involve a substantial duplication of effort," *Xerox Corp.* v. *SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978) (quotation marks omitted).  Arm comes nowhere near meeting that standard.  Qualcomm's ▮ Claims and Arm's claims in the Arm

---

[3] *See also, e.g.*, *Falcon* v. *City Univ. of N.Y.*, 2016 WL 3920223, at *14 (E.D.N.Y. July 15, 2016); *Lucent*, 2006 WL 2168789, at *5–6; *Ogunkoya* v. *City of Monroe*, 2020 WL 3791850, at *4 (E.D.N.Y. July 7, 2020).

Action arise from wholly different contractual obligations (Qualcomm ALA ■ vs. Nuvia ALA § 15.1) and wholly different conduct (Qualcomm's claim that Arm withheld contractually mandated deliverables vs. Arm's claim that Qualcomm and Nuvia refused to destroy Nuvia technology following Arm's termination of the Nuvia ALA).  Moreover, Arm protested that adding the ■ Claims to the Arm Action would "complicate the trial," "upend the discovery schedule," and effect a "fundamental change of the nature of the proceeding," No. 1146, D.I. 294 at 35:3–5, 39:3–5, arguments that by themselves show that the ■ Claims lack an adequate logical relationship to Arm's claims in the Arm Action, *see Xerox*, 576 F.2d at 1061.

Arm tries to fit this case into Rule 13(a) by claiming that Qualcomm's ■ Claims overlap with *Qualcomm's* counterclaim in the Arm Action for a declaratory judgment that its products are licensed.  D.I. 48 at 7–8.  Arm ignores that Rule 13(a) considers the relationship between a claim and "the *opposing party's* claim"—i.e., Arm's breach claims—and not with the counterclaimant's other counterclaims.  Fed. R. Civ. P. 13(a)(1) (emphasis added).  Any overlap between the ■ Claims and Qualcomm's *counterclaim* in the Arm Action cannot make the ■ Claims compulsory counterclaims.  But even if Arm were correct on the law, Qualcomm's declaratory judgment counterclaim (that its products were licensed under its ALA) and the ■ Claims here involve entirely different contract provisions, theories of liabilities, and conduct, meaning that these claims are both legally and factually distinct.  *See* D.I. 22 at 14–17, 19; *S. Mega Telecomms. Ltd.* v. *Lucent Techs., Inc.*, 1997 WL 86413, at *10 (D. Del. Feb. 14, 1997) (counterclaim not compulsory where it arose from different aspect of business relationship than plaintiff's claims).

*Second*, even if the ■ Claims would otherwise be considered compulsory, Arm's conduct in the Arm Action bars it from objecting to Qualcomm's litigating those claims in this case.  The compulsory-counterclaim rule does not apply when the defendant consents to a plaintiff's splitting

its claim.  Restatement (Second) of Judgments § 26.  Arm did just that, arguing that Qualcomm's

▮ Claims "should be left for a future Court, if at all" and that new allegations "should be then

dealt with as a separate proceeding."  No. 1146, D.I. 294 at 40:2–4, 14–16; *see* D.I. 22 at 10–11.

Arm now tries to walk back that concession by arguing that it consented to Qualcomm

bringing a new action only as a fallback to its primary argument that the claim was untimely,

D.I. 48 at 9, but the record shows otherwise.  Arm argued that it was too late to add the ▮ Claims

*to the Arm Action* but said nothing about compulsory counterclaims.  Had it done so, it would have

needed to justify denial of leave to amend in light of the severe prejudice to Qualcomm from denial

of leave to amend—i.e., total loss of the claim.  *See* 6 Wright & Miller § 1430 (3d ed. 1998) (courts

are "more willing to grant leave to amend when a Rule 13(a) counterclaim is involved").  While

emphasizing its statement that the ▮ Claims "should be left for a future Court, if at all," Arm

omits the following sentence, which made clear that Arm was referring to uncertainty about

whether Qualcomm would bring such claims, not whether they were compulsory counterclaims.

No. 1146, D.I. 294 at 40:4–5 ("I don't know if they'll bring the claim.").[4]

### 3.    Qualcomm's Implied-Covenant Claim Is Not a Compulsory Counterclaim.

Arm is also mistaken in contending that Rule 13(a) requires dismissal of Qualcomm's

---

[4] Moreover, Arm's Rule 13(a) argument is barred by the doctrine of judicial estoppel. D.I. 22 at 12–13.  Judicial estoppel bars a party from asserting a claim or argument if "(1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity." *IMEG Corp.* v. *Patel*, 2021 WL 184407, at *7 (D. Del. Jan. 19, 2021) (quotation omitted).  All three requirements are met:  Arm has taken an inconsistent position; its opportunistic reversal—arguing in one proceeding that the claims should be brought in a new case, then arguing in the new case that the claims should have been brought in the first action—strongly suggests bad faith; and absent that change in position, the Court would have had to consider the prejudice to Qualcomm from denying leave to amend and thus causing it to lose these claims forever.

claim for breach of the implied covenant of good faith and fair dealing, insofar as the claim is based on Arm's withholding of deliverables.  D.I. 48 at 10.  That argument retreads the same arguments for why Qualcomm's ▮ Claims were compulsory counterclaims, and thus fails for the same reasons as Arm's first motion to dismiss.  *See* D.I. 22 at 13–17; *supra* pp. 6–8.  In any event, Arm does not (nor can it) argue that its Rule 13(a) arguments apply to the implied-covenant claim to the extent the claim is premised on new allegations of bad-faith misconduct, such as Arm's assertion that Qualcomm breached the ALA and Arm's leak of the Breach Letter.  *Cf.* D.I. 48 at 10.

**B.    Arm Offers No Valid Reason for Dismissing Any of Qualcomm's Newly Pleaded Claims.**

Arm offers no good reason this Court should dismiss Qualcomm's additional claims based on Arm's campaign to undercut Qualcomm's business and competition.

**1.    Qualcomm Has Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.**

In California, "every contract imposes upon each party a duty of good faith and fair dealing in each performance and its enforcement."  *Pasadena Live* v. *City of Pasadena*, 8 Cal. Rptr. 3d 233, 234 (Ct. App. 2004).  That duty requires a party both to "do everything that the contract presupposes that he will do to accomplish its purpose," *Harm* v. *Frahser*, 5 Cal. Rptr. 367, 374 (Ct. App. 1960), and not to "do anything which will injure the right of the other to receive the benefits of the agreement," *Comunale* v. *Traders & Gen. Ins. Co.*, 328 P.2d 198, 200 (Cal. 1958).

The FAC states a claim for breach of the implied covenant. Qualcomm alleges that, to extract unearned fees and to impede Qualcomm's ability to compete, Arm not only "withh[eld] deliverables that it was required to provide Qualcomm under the [Qualcomm] ALA," but also lied to Qualcomm that it was not withholding deliverables, "assert[ed], without valid basis under the [Qualcomm] ALA, that Qualcomm was supposedly in material breach of that agreement; []

leak[ed] that Breach Letter to the media to create uncertainty about Qualcomm's ability to provide its customers with products containing custom CPUs" and undermine Qualcomm's standing in the market; and refused to negotiate a license to the latest version of the ISA.  FAC ¶¶ 1, 5, 26, 91–96, 108–12, 136–38.  By doing so, Arm "prevented Qualcomm from obtaining the reasonably and justifiably intended and expected benefit of its bargain with Arm, including the right to produce and sell custom CPUs that are compatible with the Arm ISA."  *Id.* ¶ 138.  Arm thereby breached the implied covenant.  *See Stewart* v. *Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 965 (N.D. Cal. 2015).

Arm contends that the implied-covenant claim is "superfluous" in light of the ▮ Claims, but ignores that even implied-covenant claims that rely on similar allegations as breach of contract claims are not duplicative where (as here) the plaintiff "alleges that the defendant acted in bad faith to frustrate the contract's benefits."  *See* FAC ¶¶ 136–38; *Celador Int'l Ltd.* v. *Walt Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004).[5]  Nor is Qualcomm's implied-covenant claim premised "wholly on the facts underlying [the plaintiff's] breach of contract claim," *cf. Tahiti* v. *Oceandless Design, Inc.*, 2023 WL 3321751, at *3 (C.D. Cal. Mar. 1, 2023); it encompasses Arm's broader, intentional campaign to prevent Qualcomm from reaping the benefits of its ALA, *cf.* D.I. 48 at 12–13.

Although Arm claims its conduct was "expressly permitted by the contract," Qualcomm is not suing simply because Arm sent a notice of termination, but rather because Arm manufactured bad-faith claims of breach and improperly leaked them to the press to harm Qualcomm's business.  That is hornbook bad faith.  *See* Restatement (Second) of Contracts § 205, nn.d, e (bad faith

---

[5] The principal case on which Arm relies specifically notes this rule.  *See In the Black Resources, LLC* v. *Blitz Design, Inc.*, 2022 WL 17082372, *5 (N.D. Cal. Nov. 17, 2022).

includes "interference with or failure to cooperate in the other party's performance" and "dishonest conduct such as conjuring up a pretended dispute [or] asserting an interpretation contrary to one's own understanding").  Moreover, Sections █ and █ of the ALA expressly require the parties █ ███████████████████████████████, and nothing in the ALA permits Arm to *misrepresent* the contract's terms to third parties.  Although Arm argues that it cannot be liable for conduct *not* expressly "proscribed by the contract," D.I. 48 at 13, California courts have rejected Arm's argument that "no breach of the implied covenant can occur if there is no breach of an express contractual provision," *Brehm* v. *21st Cent. Ins. Co.*, 83 Cal. Rptr. 3d 410, 417 (Ct. App. 2008); *see also Schwartz* v. *State Farm Fire & Cas. Co.*, 106 Cal. Rptr. 2d 523, 531 (Ct. App. 2001) ("It is well established … that breach of a specific provision of the contract is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing.").  If Arm were correct, "the entire concept of an implied covenant would be superfluous," *Daly* v. *United Healthcare Ins. Co.*, 2010 WL 4510911, at *5 (N.D. Cal. Nov. 2010), and every implied-covenant claim would duplicate a contract claim, because "any breach thereof would necessarily involve breach of some other term of the contract," *Brehm*, 83 Cal. Rptr. 3d at 417.  Arm's duty to act in good faith was implied in the ALA by California law, not an additional term that Qualcomm needed to contract for.[6]

### 2.    Qualcomm Has Stated a Claim for Intentional Interference with Prospective Economic Advantage.

The FAC pleads a plausible claim for intentional interference with prospective economic advantage.  Arm does not dispute that Qualcomm adequately alleged that it knew about the

---

[6] Arm's cited cases, which decline to impose duties *inconsistent* with contracts, are inapposite here, where Qualcomm objects to Arm's bad-faith conduct intended to deprive it of a contract's benefits.  *See Bard* v. *GSV Asset Mgmt., LLC*, 2023 WL 8852756, at *4–5 (N.D. Cal. Dec. 21, 2023); *HotSpot Therapeutics, Inc.* v. *Nurix Therapeutics, Inc.*, 2023 WL 1768120, at *4–5 (Feb. 3, 2023).

relationships with which it interfered; that its acts were designed to disrupt the relationships; or that this disruption proximately caused Qualcomm economic harm. D.I. 48 at 13–15. Arm's arguments for dismissal are limited to disputing two remaining elements of the tort, but the Amended Complaint is more than sufficient on both.

*Arm disrupted a significant economic relationship:* Qualcomm alleged that Arm interfered with its relationships with two companies—a Smartphone Company and an AI and Ecosystem Company. Arm does not dispute that Qualcomm's relationship with the Smartphone Company was economically significant. With respect to the AI and Ecosystem Company (FAC ¶ 116), Arm argues that Qualcomm failed to plead that Arm disrupted a sufficiently concrete economic relationship. D.I. 14 at 14–15. The FAC states, however, that Qualcomm was close to executing a term sheet for a major contract with the AI and Ecosystem Company before those negotiations stalled due to Arm's interference. That is easily a "prospective economic advantage" supporting this claim. *See, e.g.*, *Joseph Schlitz Brewing Co.* v. *Downey Distrib.*, 167 Cal. Rptr. 510, 515 (Ct. App. 1980) (unconsummated negotiations sufficient); *Lowell* v. *Mother's Cake & Cookie Co.*, 144 Cal. Rptr. 664, 669 (Ct. App. 1978) (offers from potential purchasers).

Arm contends that interference with contract negotiations is insufficient, D.I. 48 at 15, but California courts have repeatedly held that interference with a potential business relationship is actionable even if the relationship has not "ripened into a contract" so long as it "has such a potential" to do so. *Tri-Growth Ctr. City, Ltd.* v. *Silldorf, Burdman, Duignan & Eisenberg*, 265 Cal. Rptr. 330, 337 (Ct. App. 1989); *Schlitz*, 167 Cal. Rptr. at 515 (advantage "not necessarily one which is already matured into binding contract"). Arm cites cases involving speculative claims of future profits, but these cases are inapt because Qualcomm was on the cusp of reaching an agreement with a major potential customer. *See* FAC ¶ 116; *Song* v. *Drenberg*, 2019 WL 1998944,

12

at *8 (N.D. Cal. May 6, 2019) (plaintiff "fail[ed] to name a single entity or person with whom Plaintiffs might have had a prospective business relationship"); *Cal. Expanded Metal Prods. Co.* v. *ClarkWestern Dietrich Bldg. Sys. LLC*, 2014 WL 5475214, at *4 (C.D. Cal. Oct. 29, 2014) (vague allegation of interference at unspecified point in a two-year period of exploratory discussions).  Nor did that Qualcomm have to identify the AI and Ecosystem Company by name. *See R Power Biofuels, LLC* v. *Chemex LLC,* 2016 WL 6663002, at *16 (N.D. Cal. Nov. 11, 2016).

*Arm's acts were wrongful*:  The FAC alleges Arm engaged in "independently wrongful" conduct, i.e., conduct "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  *Korea Supply Co.* v. *Lockheed Martin Corp.*, 63 P.3d 937, 954 (Cal. 2003); *cf.* D.I. 48 at 13–14.  Arm contends the FAC is deficient because breaches of contract are not "independently wrongful," but that misstates the FAC, which does not rely only on breaches of contract but also alleges violations of the UCL.  The FAC describes in detail how Arm has engaged in a campaign of misconduct to interfere with Qualcomm's business relationships and suppress competition.  *See supra* pp. 2–3; *infra* pp.  14–15.  Those allegations readily satisfy the UCL and thus the "independently wrongful act" requirement.  *See Cel-Tech Commc'ns, Inc.* v. *L.A. Cell. Tel. Co.*, 973 P.2d 527, 546 (Cal. 1999) (UCL prohibits "destroy[ing] the competitiveness of the [] market"); *see also CRST Van Expedited, Inc.* v. *Werner Enters.*, 479 F.3d 1099, 1110–11 (9th Cir. 2007) (violation of UCL is "independently wrongful").  Although Arm gestures vaguely at the First Amendment, it cannot seriously contend that it has a constitutional right to leak the Breach Letter in violation of the ALA and in a bad-faith effort to harm its customer's business.

### 3.    Qualcomm Has Stated a Claim for Negligent Interference with Prospective Economic Advantage.

Arm's efforts to dismiss Qualcomm's negligent-interference claim mostly retread its

arguments about the intentional-interference claim and fail for the same reasons. D.I. 48 at 15–16; *supra* pp. 11–13.[7] Its challenge to this claim otherwise reduces to the argument that it owed Qualcomm no duty of care because the companies are competitors. D.I. 48 at 15–16. That is wrong on the facts and on the law. The FAC alleges that Qualcomm is a "longtime business partner" of Arm, one of Arm's largest customers, and a party to contracts with Arm. *E.g.*, FAC ¶¶ 1–3.[8] Arm does not argue that it owes no duty of care to its customer and counterparty. Moreover, even if Arm and Qualcomm were competitors, that would not absolve Arm of any duty of care. The California Supreme Court "has repeatedly eschewed overly rigid common law formulations of duty in favor of allowing compensation for foreseeable injuries caused by a defendant's want of ordinary care," *J'Aire Corp.* v. *Gregory*, 598 P.2d 60, 64 (Cal. 1979), and Arm does not dispute that it was foreseeable that its conduct would harm Qualcomm or addresses the six *J'Aire* factors California courts consider when deciding when a company owes another a duty of care, *id.* at 63; *see, e.g.*, *Code Rebel, LLC* v. *Aqua Connect, Inc.*, 2013 WL 5405706, at *6 (C.D. Cal. Sept. 24, 2013) (denying motion to dismiss tortious interference claim where "direct competitor" of plaintiff "knew, or should have known of [the] economic relationships" with which it interfered).

### 4. Qualcomm Has Stated a Claim Under the California Unfair Competition Law.

Qualcomm has substantively alleged a UCL claim and the need for equitable relief. Arm's arguments to the contrary are meritless.

---

[7] Arm claims Qualcomm's "supposed relationships were speculative" and that Arm's "conduct did not disrupt those relationships," D.I. 48 at 15, but nowhere argues that the allegations about the Smartphone Company (FAC ¶¶ 115, 117, 142, 146, 149) are insufficient. *Supra* pp. 11–13.
[8] Arm's CEO denied under oath that Qualcomm is a competitor. *E.g.*, Trial Tr. 330:12–15.

***Qualcomm has alleged that Arm engaged and engages in unfair practices:*** As Arm recognizes, Qualcomm can state a UCL claim by alleging that Arm's conduct "[1] threatens an incipient violation of an antitrust law, or [2] violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [3] otherwise significantly threatens or harms competition." D.I. 48 at 17 (quoting *Cel-Tech*, 973 P.2d at 565). Qualcomm has done just that, alleging that Arm is engaging in a series of unfair practices to substantially harm "competition in the markets for CPUs and SoCs" and force Arm's inferior CPUs on consumers. FAC ¶¶ 155–57.

Arm identifies two acts—its wrongful accusation that Qualcomm breached the Qualcomm ALA and its leak of the Breach Letter to the media—that it argues do not violate the "spirit" of the antitrust laws. D.I. 48 at 17. Under Rule 12(b)(6), however, this Court "must consider the complaint in its entirety" and draw inferences in favor of Qualcomm, not view Arm's cherry-picked allegations in a light favorable to Arm. *See Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Viewed in the entirety, the FAC alleges that Arm is flouting the "spirit" of antitrust laws by leveraging its ISA to force customers to use its CPU designs and to obstruct Qualcomm's development of custom CPUs. *E.g.*, FAC ¶¶ 2, 156; *see ConsumerDirect, Inc.* v. *Pentius, LLC*, 2022 WL 16949657, at \*9 (C.D. Cal. Aug. 25, 2022) (defendant "spread lies" about plaintiff to deprive consumers of better alternatives). Moreover, Arm cannot justify why its conduct does not threaten an "incipient violation" of antitrust law or pose "significant threat to competition." *See Cel-Tech*, 973 P.2d at 544. To the extent Arm protests that Qualcomm has not pleaded a relevant market or other elements of a Sherman Act claim, the UCL does not require such allegations. *Epic Games, Inc.* v. *Apple, Inc.*, 67 F.4th 946, 1002 (9th Cir. 2023).

***Qualcomm has pleaded facts showing that legal remedies would be inadequate:*** Arm's contention that Qualcomm has not pleaded the need for equitable relief for Arm's UCL violations is similarly meritless. The FAC seeks only equitable relief for its UCL claim, and nothing in the FAC suggests that the equitable relief is merely a substitute for damages. FAC at 46–47. The FAC also seeks redress for an ongoing "campaign to stifle competition and technology innovation," FAC ¶ 1, which will continue to harm Qualcomm if it is not enjoined, *id.* ¶ 158, which sufficiently alleges the need for equitable relief, *see In re Subaru Battery Litig.*, 2021 WL 1207791, at *29 (D.N.J. Mar. 31, 2021). And unlike the case on which Arm principally relies, *Williams* v. *Apple, Inc.*, 2020 WL 6743911 (N.D. Cal. Nov. 17, 2020), Qualcomm's contract and UCL claims do not share "the same factual predicate": The ▮ Claims are predicated on Arm's withholding of deliverables, whereas the other claims allege a broader pattern of efforts to interfere in Qualcomm's business (including by leaking the Breach Letter). *See id.* at *9; *Subaru*, 2021 WL 1207791, at *29 (denying motion to dismiss UCL claim where "requested injunction … is distinct from the legal damages that Plaintiffs seek elsewhere"). The UCL claim cannot be dismissed on these grounds.

### 5. Arm Cannot Shield Its Misconduct Behind Any of the Privileges It Invokes.

Arm's bad-faith leak of the Breach Letter is not immunized by *Noerr-Pennington* doctrine, litigation privilege, or California's Anti-SLAPP statute. Although Arm recasts the Breach Letter as "publiciz[ing] legitimate lawsuits," D.I. 48 at 18, the Breach Letter mentioned the litigation only in passing, and focused instead on unsupported claims that Qualcomm had breached *its* ALA (including by bringing this action to enforce its rights under that agreement), claims that Arm has not pursued in any litigation and which no court or jury has ever endorsed.

*Noerr-Pennington:*  Arm claims immunity from liability for the Breach Letter under *Noerr-Pennington*, a doctrine under which parties are not liable under federal antitrust law for acts aimed at influencing government action.  But *Noerr-Pennington* is an affirmative defense, so dismissal is inappropriate unless the defense appears on the face of the complaint.  *See Jones* v. *Bock*, 549 U.S. 199, 215–16 (2007).  It does not.  The FAC alleges that Arm's actions were bad-faith efforts to harm Qualcomm, FAC ¶¶ 106, 108–12, and *Noerr-Pennington* does not protect purported petitioning that is merely a "sham" for harming another party, *see Prof. Real Est. Invs., Inc.* v. *Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).  At this stage, Arm cannot controvert those allegations by claiming that the Breach Letter was reasonable and asserted in good faith.  *Cf.* D.I. 48 at 18–19.  Because the FAC does not establish the *Noerr-Pennington* defense on its face, its claims based on the Breach Letter cannot be dismissed on that ground.  *See Constr. Cost Data, LLC* v. *Gordian Grp., Inc.*, 2017 WL 2266993, at *5–13 (S.D. Tex. Apr. 24, 2017).

In any event, *Noerr-Pennington* "does not … immunize a party for actions that amount to a breach of contract," *Microsoft* v. *Motorola, Inc.*, 795 F.3d 1024, 1047 (9th Cir. 2015), and Arm's leak flouted Section 3 of the Qualcomm ALA.  Moreover, even assuming *Noerr-Pennington* can bar California state-law claims, it applies only insofar as those claims are based on conduct "incidental to valid efforts" to influence the government or to "prosecut[e] [a] lawsuit."  *W. Sugar Coop.* v. *Archer-Daniels-Midland Co.*, 2015 WL 12683192, at *6 (C.D. Cal. Aug. 21, 2015) (cleaned up).  The Breach Letter accused Qualcomm of breaching its ALA—an accusation not at issue in the Arm Action—and alluded to the parties' litigation only in passing.  Arm has not explained how leaking that letter to the press was "incidental" to Arm's prosecution of the Arm Action or to any other effort "to petition the government."  *See Sweet St. Desserts, Inc.* v.

17

*Chudleigh's Ltd.*, 655 F. App'x 103, 110 (3d Cir. 2016).[9]

**Litigation privilege:**  Arm also cannot hide behind the California litigation privilege.  That privilege does not protect conduct, like Arm's leak of the Breach Letter, that violates confidentiality agreements.  *Wentland* v. *Wass*, 25 Cal. Rptr. 109, 116 (Ct. App. 2005).  Nor does it shield Arm from liability for press leaks intended to harm Qualcomm's business.  That privilege protects statements made in "quasi-judicial proceedings" that "have some connection or logical relation to the action" and "achieve the objects of the litigation," but only when those statements are a "necessary or useful step in the litigation process."  *Argentieri* v. *Zuckerberg*, 214 Cal. Rptr. 3d 358, 367–368, 371–372 (Ct. App. 2017).  The litigation privilege thus does not apply to communications to the press or public, which are "persons in no way connected with the proceeding."  *Susan A.* v. *County of Sonoma*, 3 Cal. Rptr. 2d 27, 30–31 (Ct. App. 1991) (privilege did not cover comments made to the press by psychologist hired by defendant's counsel).[10] Leaking the Breach Letter was not a "necessary or useful step" in any litigation and is therefore unprotected by California litigation privilege.

**California Anti-SLAPP:**  California's Anti-SLAPP law has no bearing on this case.  Arm does not argue that the Anti-SLAPP law provides any protections beyond those of the litigation

---

[9] This case is unlike *Sweet Street* because Arm did not send a cease-and-desist letter, but accused Qualcomm of breach and then disseminated it to the public to harm Qualcomm's business.  *Noerr-Pennington* does not protect such conduct.  *See Constr. Cost Data*, 2017 WL 2266993, at *7 n.5 (disparaging statements not obviously "reasonably and normally attendant upon effective litigation, at least insofar as they were directed to Plaintiffs' customers and business partners or other third parties and were not sufficiently tied to the threatened litigation" (cleaned up)); *Laitram Mach., Inc.* v. *Carnitech A/S*, 901 F. Supp. 1155, 1161 (E.D. La. 1995) (letters to customers not protected).

[10] *See also Argentieri*, 214 Cal. Rptr. at 370–372 (privilege did not protect press statement accusing opposing counsel of misconduct, lacking a "substantial interest" in the litigation and statement made to "vindicate a client" and apprise public of one party's view did not "further the objects of the litigation"); *GetFugu, Inc.* v. *Patton Boggs LLP*, 162 Cal. Rptr. 3d 831, 839–840 (Ct. App. 2013) (litigation privilege does not cover publication to public through the press).

18

privilege, which, as discussed, does not immunize Arm's conduct. *Cf.* D.I. 48 at 20. Moreover, California Anti-SLAPP law protects only against claims that "arise[] from protected speech or petitioning and lack[] even minimal merit." *Navellier* v. *Sletten*, 52 P.3d 703, 708 (Cal. 2002). By agreeing to keep the terms of the Qualcomm ALA confidential, Arm waived any Anti-SLAPP defense against claims alleging unauthorized disclosures to third parties. *See id.* at 712. Although Arm claims that the Anti-SLAPP law requires Qualcomm to "establish a probability it will prevail" on its claims, D.I. 48 at 20, California Anti-SLAPP procedure does not apply in federal court.[11]

### 6. Any Dismissal Should Be with Leave to Amend.

Arm offers no support for dismissal with prejudice. Leave to amend should be "freely give[n]," Fed. R. Civ. P. 15(a)(2), and may be denied only if "amendment would be inequitable or futile," *Grayson* v. *Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002). Arm identifies no flaws inherent in Qualcomm's claims but merely points to a series of purported pleadings defects that Qualcomm would be entitled to cure. Dismissal with prejudice would be unwarranted.

### C. Arm's Motion for a Stay Should Be Denied.

Arm briefly argues for a stay of this proceeding in the interest of "efficiency" while it challenges the jury's verdict in the Arm Action. D.I. 48 at 11–12. But "it is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party." *Gold* v. *Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075–76 (3d Cir. 1983) (quoting *Landis* v. *N. Am. Co.*, 299 U.S. 248, 255 (1936)). Arm does not attempt to show how it would suffer clear hardship absent a stay, and the Third Circuit has held this requirement not met simply from litigating in parallel. *CTF Hotel Holdings, Inc.* v. *Marriott Int'l, Inc.*, 381 F.3d 131, 140–41 (3d Cir. 2004).

---

[11] *See e.g.*, *La Liberte* v. *Reid*, 966 F.3d 79, 87-88 (2d Cir. 2020); *Broughty* v. *Bouzy***,** 2023 WL 5013654, at *3 n.3 (D.N.J. Aug. 7, 2023).

Moreover, Arm exaggerates the purported efficiency benefits of a stay. Arm's request for a stay is premised on the notion that a jury verdict for Arm on Question 3 would provide a complete defense to Qualcomm's ▮ Claims in this case. D.I. 48 at 11. Not so. Even if Arm were to prevail in the Arm Action, the Qualcomm ALA did not authorize it to engage in self-help by withholding deliverables (and lying about doing so). Further, unlike in *AgroFresh Inc.* v. *Essentiv LLC*, 2019 WL 2327654, at *2 (D. Del. May 31, 2019), where "substantial simplification [was] almost certain" as a result of the other proceeding, no such certainty exists here, where Arm is unlikely to concede that affirmance of the jury verdict establishes its liability under Section ▮.

Arm also neglects the *costs* of a stay. A scheduling order has been entered, discovery has already commenced on an expedited schedule, and a trial date has been set. D.I. 44; *see Rogers* v. *Experian Info. Sols., Inc.*, 2024 WL 894857, at *2 (D. Del. Mar. 1, 2024). A stay pending potential retrial and appeals would be inconsistent with this Court's efforts to promptly resolve this case and risk "irrevocably impeding the discovery process" by allowing evidence to grow stale. *In re Univ. Health Servs., Inc.*, 2018 WL 8758704, at *1 n.1 (E.D. Pa. Dec. 10, 2018).

Importantly, a stay would also prejudice Qualcomm "by prolonging resolution of the dispute." *See RideShare Displays, Inc.* v. *Lyft, Inc.*, 2021 WL 7286931, at *2 (D. Del. Dec. 17, 2021). Arm's ongoing misconduct continues to impair Qualcomm's business and customer relationships, and a stay would embolden Arm to continue that conduct. Were a stay granted, Qualcomm will continue to pay royalties and cannot exercise the royalty-withholding remedy the parties agreed to in the ALA. Arm thus cannot show that a stay would not "unduly prejudice or present a clear tactical disadvantage to" Qualcomm. *See United States ex rel. Ralph G. Degli Obizzi & Sons* v. *Dobco, Inc.*, 2024 WL 2208947, at *1 (D. Del. May 15, 2024) (denying stay).

## V.    CONCLUSION

Arm's motion to dismiss or for a stay should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

February 28, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 28, 2025, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                   *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                               *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                                 *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Kyle W.K. Mooney, Esquire                                 *VIA ELECTRONIC MAIL*
Kyle D. Friedland, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                          *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                             *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*


                                   */s/ Jennifer Ying*
                                   _____
                                   Jennifer Ying (#5550)