IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) C.A. No. 24-490 (MN) ) ) ) ) ) |

## NONPARTY BROADCOM INC.'S MOTION FOR A PROTECTIVE ORDER

Nonparty Broadcom Inc. ("Broadcom") moves, under Federal Rule of Civil Procedure 26 and Paragraphs 48-49 of the Stipulated Protective Order (D.I. 38), in the above-captioned action (the "Action"), for the entry of a protective order preventing ARM Holdings PLC, f/k/a ARM Ltd. ("ARM") from producing to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (together "Qualcomm") competitively sensitive communications and terms of agreements between ARM and Broadcom that have no relevance to this Action.

Qualcomm is one of Broadcom's direct competitors, with both companies operating in many of the same markets in the semiconductor space, including WiFi/Bluetooth digital radios and AI datacenter products. Both Qualcomm and Broadcom have licensing arrangements with ARM, but Broadcom is not a party to this litigation. Qualcomm has sued ARM for alleged breach of *its* licensing agreement with ARM. Notably, Qualcomm has redacted substantial portions of its pleading that reveal the terms of its licensing agreement with ARM. Yet Qualcomm seeks disclosure of similar information in Broadcom's

agreement, even though that information has no connection to ARM's performance of its duties to Qualcomm under Qualcomm's agreement.

ARM has already produced redacted versions of Broadcom's Technology Licensing Agreement ("TLA") and Annexes in a related litigation between ARM and Qualcomm, and Broadcom understands that the parties have agreed that such redacted versions will be produced in this Action. Qualcomm is now seeking discovery of the redacted information, which constitutes trade secrets of Broadcom. Specifically, the redacted information includes the royalty rates that Broadcom pays ARM and Broadcom's payment structure and lists of Broadcom's customers and suppliers (including design software licensors, foundries and contract manufacturers) who may also gain access to information regarding the architecture and technology that Broadcom licenses from ARM and the terms under which they may gain access. Qualcomm has also served document requests on ARM seeking sweeping categories of communications between Broadcom and ARM relating to the negotiation and performance of Broadcom's TLA.

The Court should grant a protective order preventing disclosure of Broadcom's unredacted agreements or any of its communications with ARM. Anticipating that sensitive information and trade secrets of third parties might be sought in discovery in this Action, the Court approved a specific procedure for third parties like Broadcom to seek relief. Broadcom invokes that procedure to prevent its competitor from accessing its trade secrets and other information that would harm's Broadcom's competitive position. As this Court held in the related action between ARM and Qualcomm, "[a] court may issue an order under Rule 26(c) to protect information from disclosure for good cause, which requires a movant to show that, absent the protective order, it will suffer a clearly defined and serious injury … balancing

relevance, need, confidentiality, and harm." (*See ARM Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146 (MN) (D. Del.) (D.I. 207))  Broadcom has shown good cause here.

First, the documents and information Qualcomm seeks are not relevant and are not discoverable at all.  Qualcomm has filed breach of contract claims against ARM, alleging that ARM breached *Qualcomm's* licensing agreement.  The terms of ARM's separate licensing agreements with third parties, and communications related to those third-party relationships, have no bearing on Qualcomm's claims.

Second, even if the documents and information Qualcomm seeks were marginally relevant, that is far outweighed by the harm to Broadcom in disclosing trade secrets and highly sensitive information to its direct competitor.  Qualcomm could use the pricing information that was redacted from Broadcom's TLA to reverse engineer other details about Broadcom's business, such as how much Broadcom must charge its customers to remain profitable.  Qualcomm could use the customer lists in the Annexes to more effectively compete for those customers' business, and supplier identities (including design software licensors, foundries and contract manufacturers) to better understand how Broadcom manages it supply chain.  And Qualcomm could exploit communications between Broadcom and ARM to learn more about Broadcom's strategic use of ARM technology.

Broadcom does not have access to *Qualcomm*'s pricing terms with ARM, presumably because Qualcomm agrees that knowledge of those terms would give Broadcom a competitive edge.  Broadcom also does not have access to Qualcomm's communications with ARM.  Turning one-sided information over to Qualcomm simply because Qualcomm has sued ARM would create information asymmetry severely impairing Broadcom's ability to compete.

Having demonstrated good cause, Broadcom requests that the Court enter its proposed protective order, filed herewith.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.      Broadcom's Agreement With ARM**

Broadcom is a global leader in infrastructure technology and chip design. (*See* Declaration of Aric Kinney ("Kinney Decl."), filed herewith, ¶ 3) Key to its business, Broadcom has several long-standing agreements with ARM to license architecture and technology that ARM develops. These agreements are highly negotiated and contain terms that are unique to Broadcom and that reveal sensitive information about Broadcom's business model, engineering activities, and supply chain partners. (Kinney Decl. ¶ 5) Qualcomm, a major direct competitor of Broadcom in the semiconductor space (*id.* ¶ 3), also contracts with ARM for technology that Qualcomm then integrates into its products (D.I. 6 ("Compl.") ¶ 5).

Broadcom's TLA and Annexes contain highly confidential and commercially sensitive terms, including royalty rates and lists of Broadcom's customers and suppliers (including design software licensors, foundries and contract manufacturers) who may also gain access to information regarding the architecture and technology Broadcom licenses from ARM and the terms under which they may gain access. (Kinney Decl. ¶ 5) The terms of the TLA were negotiated under highly confidential conditions. (*Id.*) Broadcom does not distribute information regarding the architecture and technology that it licenses from ARM or the pricing structure for its license outside of Broadcom. (*Id.* ¶ 8) Even within Broadcom, access to the TLA is proscribed. (*Id.*)

The TLA itself defines "Confidential Information" to include, among other things, "the terms and conditions of th[e] TLA." (Kinney Decl. ¶ 6 (alternation in original)) And Section 3.1 of the TLA prevents disclosure of Confidential Information:

4

> **Restricted Disclosure**. Except as expressly provided by Clauses 3.2, 3.3, 3.4, 3.5, 3.6 and 3.7, each party shall maintain in confidence the Confidential Information disclosed by the other party and apply security measures no less stringent than the measures that such party applies to its own like information, but not less than a reasonable degree of care, to prevent unauthorised disclosure and use of the Confidential Information.

(*Id.*) Section 3.6 of the TLA further provides that any party required to make disclosure of Confidential Information pursuant to a court order must "promptly notif[y] the other party" and "give[] the other party a reasonable opportunity to contest or limit the scope of such required disclosure (including but not limited to making an application for a protective order)[.]" (*Id.* ¶ 7)

**B.    ARM Produces Broadcom's Redacted TLA To Qualcomm In Related Litigation, And The Court Issues Protective Orders For Similar Third-Party Agreements.**

Recognizing the sensitivity of the terms of Broadcom's TLA, when Qualcomm sought production of the TLA in related litigation between Qualcomm and ARM – *ARM Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146 (MN) (D. Del.) (the "*NUVIA* Litigation") – ARM produced the TLA in redacted form. From that production, Qualcomm has access to most of the terms of Broadcom's TLA and Annexes. Broadcom understands that ARM has agreed to produce those same redacted versions to Qualcomm in this Action.

Although Qualcomm did not challenge the redactions to Broadcom's TLA or Annexes in the *NUVIA* Litigation, it sought to compel unredacted versions of other third-party licensing agreements with ARM. The Court rejected those arguments and granted a protective order to another third-party ARM licensee who sought to maintain redaction of the royalty terms in its agreement with ARM. The Court ruled in the third party's favor because "Qualcomm…could obtain unfair competitive advantages by accessing information contained in the 2023 Apple ALA" even if that information were provided only to Qualcomm's outside counsel, and not Qualcomm itself. (*NUVIA* Litigation D.I. 207; *see also NUVIA* Litigation D.I.

5

252 (denying Qualcomm's motion to compel unredacted licensing agreements between ARM and other third parties))

### C.  The Court Establishes A Procedure For Addressing Third-Party Objections To Discovery In This Action.

When Qualcomm filed this Action against ARM, the parties understood that the same confidentiality concerns over third party information could arise as they did in the *NUVIA* Litigation. Therefore, Qualcomm and ARM stipulated to a procedure for resolving such disputes. The Stipulated Protective Order (which the Court entered) permits nonparties whose competitively sensitive information is being sought in discovery to move the Court to protect that information from disclosure. (*See* D.I. 84) Under the Stipulated Protective Order, when a party is required to produce a third party's confidential information that is subject to a confidentiality agreement, it must promptly notify the requesting party and the third party in writing, provide the third party with a copy of the discovery requests, and make the requested information available for the third party's inspection. (*Id.* ¶ 51) The third party then has 21 days to file a motion for a protective order. (*Id.* ¶ 52)

### D.  ARM Notifies Broadcom That Qualcomm Was Seeking Broadcom's Confidential Information.

On April 23, 2025, ARM sent Broadcom a letter notifying Broadcom that Qualcomm was seeking discovery in this Action that could include the highly sensitive pricing terms in Broadcom's TLA and Annexes as well as other communications and documents related to Broadcom and ARM's licensing arrangement. (*See* Ex. 1) On May 5, 2025, ARM's counsel provided Broadcom's counsel with (1) redacted copies of Broadcom's TLA and Annexes that had been produced in the *NUVIA* Litigation and (2) a list of requests that Qualcomm had served that are directed to information concerning other ARM licensees. (Ex. 2) On May 8, 2025,

ARM's counsel provided Broadcom's counsel with unredacted versions of the TLA and Annexes.

Based on the information provided by ARM's counsel, Broadcom understands that Qualcomm has propounded at least ten (10) document requests on ARM that could require production of Broadcom's competitively sensitive information:

- "All ALAs and Annexes with Third Parties (i.e., parties other than Qualcomm)";

- "All Documents and Communications concerning delivery of ARM Technology, Updates, or bug fixes, updates, corrections, or any other technical improvement licensed under ALAs to third parties (i.e., parties other than Qualcomm), including documents sufficient to show the licensee, the date of delivery, and the terms of any such delivery for any delivery that was not provided to Qualcomm";

- "All Documents and Communications related to or concerning the delivery of ACK patches to any ALA partner other than Qualcomm";

- "All Documents and Communications concerning any negotiations that ARM had with TLA licensees (including Third Parties) for the Generic Interrupt Controller 700, the Memory Management Unit 700, the Embedded Logic Analyzer 600, software test libraries for the Cortex78AE and Cortex A55 cores, and CPUs codenamed 'Hunter,' 'Hayes,' 'Yamin,' and 'Blackhawk', including but not limited to price quotes, license fees, licensing term limits, or other language to include in TLA Annexes"';

- "All Documents and Communications concerning Updates to the ARM Technology or bug fixes, updates, corrections, or any other technical improvement or information licensed under the Qualcomm ALA that was, after June 1, 2022, delivered to any other ARM licensee but not to Qualcomm."

- "All versions of the ACK released after June 1, 2022, and any patches thereto."

- "All Documents and Communications concerning or interpreting the definition of 'Updates', and sections governing verification, delivery, support, and any remedies for failure to deliver ARM Technology in any Third Party ALAs."

- "All Documents and Communications concerning deliverables included as ARM Technology licensed under the Qualcomm ALA, including the ARMv8-A Architecture Reference Manual, ETMv4 Architecture Specification, AVS, ACK, ETMv4 Instr Trace Checker Module Source, NTBSS ARMv8-A Crypto Extension, ETE Instr Trace Chkr Module Src Armv9-A, System MMU Architecture Specifications, and System MMU Compliance Kit, that was, after June 1, 2022, delivered to any other ARM licensee but not to Qualcomm."

- "All Documents and Communications related to or concerning each ACK patch released since June 1, 2022, including documents related to the development process for each patch, the timeline for development, and each version of the ARM Architecture that the patch corresponds to."

- "All Documents and Communications concerning OOB tests, including the development process for OOB tests, the timeline to configure the ACK through the use of OOB tests, and any manuals or presentations describing the use of OOB tests with the ACK."

(*Id.*)

Broadcom understands that ARM has objected to producing communications between ARM and Broadcom and that the scope of ARM's ultimate production to Qualcomm remains subject to negotiation and potential motion practice. (*See* D.I. 105 (seeking schedule on a motion to compel))[1]

## ARGUMENT

Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery of any non-privileged information that is relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The party seeking discovery bears the burden of demonstrating relevance. *See Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, 2017 WL 4310221, at *4 (M.D. Pa. Sept. 28, 2017). The existence of a protective order in an action "is not a substitute for establishing relevance or need[;]" rather, a protective order's purpose is to "prevent harm by limiting disclosure of *relevant* and *necessary* information." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990) (emphasis in original).

Rule 26 limits the scope of discovery by providing that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression,

---

[1] Broadcom also understands that ARM has not yet identified specific communications that would be subject to production. In the event that the Court does not issue a general order precluding production of all communications between Broadcom and ARM, Broadcom reserves the right to renew its motion to address any specific documents that are identified for production.

8

or undue burden or expense" by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). "[G]ood cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984). "[I]t is clear that a court may issue a protective order restricting disclosure of discovery materials to protect a party from being put at a competitive disadvantage." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 890 (E.D. Pa. 1981); *see also United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 158-62 (D. Del. 1999) (granting protective order shielding nonparty's confidential information from discovery by competitor's in-house attorney to mitigate risk of harm). In determining whether good cause exists to preclude discovery, the Court considers whether the movant has "show[n] that, absent the protective order, it will suffer a clearly defined and serious injury … balancing relevance, need, confidentiality, and harm." (*See NUVIA* Litigation, D.I. 207) Indeed, "even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (cited in *NUVIA* Litigation, D.I. 207).

    This Court has applied this same standard to competitively sensitive information of other third parties who license technology from ARM. (*See NUVIA* Litigation D.I. 207) For similar reasons, the Court should enter Broadcom's proposed protective order preventing production of its competitively sensitive information regarding its licensing arrangements with ARM because: (1) the information Qualcomm seeks is not relevant to its claims at all; and (2) even if the information were relevant, any need for that information is far outweighed by the

harm Broadcom would incur in having its confidential information disclosed to its direct competitor. As explained below, Broadcom's motion for protective order should be granted.

## I. THE INFORMATION QUALCOMM SEEKS IS IRRELEVANT TO ITS CLAIMS IN THIS ACTION.

As an initial matter, the Court should grant Broadcom's motion because the information Qualcomm seeks will not lead to the discovery of admissible evidence. Qualcomm has sued ARM for breach of *Qualcomm's* licensing agreement with ARM, alleging that ARM failed to deliver certain technology it owed to *Qualcomm* under *Qualcomm's* agreement. (*See generally* Compl.) The redacted terms in Broadcom's TLA and Annexes regarding the payment structure, royalties and customer lists will not lead to the discovery of admissible evidence that ARM breached its delivery obligations under *Qualcomm's* licensing agreement.

Although Qualcomm argued relevance in the *NUVIA* Litigation, that argument does not apply here. There, Qualcomm argued that the pricing terms in other licensing agreements were "directly relevant" to its defense to *ARM's* claim for specific performance because those terms could help demonstrate that monetary damages would be sufficient to compensate *ARM* for *its* alleged harm. (*See NUVIA* Litigation D.I. 201 & 243) The Court expressed skepticism as to that argument in the *NUVIA* Litigation and ultimately did not require production of the pricing terms. (*See NUVIA* Litigation D.I. 207 & 252) Qualcomm cannot even assert that argument here because ARM has not alleged any claims against Qualcomm in this Action.

The communications that Qualcomm seeks between Broadcom and ARM are also irrelevant. Qualcomm's requests relate to ARM's delivery of certain technology to third parties. But Qualcomm cannot show that ARM's fulfillment of those obligations to third parties has any bearing on whether ARM fulfilled its delivery obligations to Qualcomm. At

10

least one federal district court has noted that a defendant's performance under an agreement with a third party is irrelevant to claims that the defendant breached its duties under a similar, separate agreement with the plaintiff. *See AdTrader, Inc. v. Google LLC*, 2021 WL 937559, at *2 (N.D. Cal. Mar. 12, 2021) (holding that Google's policies toward nonparty AdX advertisers were not discoverable because they revealed nothing about its performance or compliance with contractual obligations owed to AdWords advertisers under a separate agreement, making that information irrelevant). So too here.

## II. DISCLOSURE OF THE PROPRIETARY INFORMATION POSES A SUBSTANTIAL RISK OF COMPETITIVE HARM TO BROADCOM.

Even if the information Qualcomm seeks were relevant, there is good cause to prevent disclosure because the harm to Broadcom far outweighs any marginal benefit to Qualcomm. *See Mannington Mills*, 206 F.R.D. at 529 ("[E]ven if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit"). Indeed, Qualcomm itself redacted similar information from its own complaint in this Action regarding what it pays to license technology from ARM (*see* Compl. ¶ 40), recognizing that such information is sensitive and should not be disclosed. Broadcom is seeking to prevent Qualcomm from accessing the same type of information, which is also the same type of information that the Court protected in the *NUVIA* Litigation.

The pricing structure, royalties and customer lists redacted from Broadcom's TLA are trade secrets. A trade secret is information that both "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and is subject to reasonable efforts "to maintain its secrecy.'" *Syngenta*

11

*Crop Prot., LLC v. Willowood, LLC*, 2016 WL 4925099, at *3 (D. Del. Sept. 14, 2016) (quoting 6 *Del. C.* § 2001(4)(a)-(b)).  Customer lists are consistently held to meet this definition of a trade secret.  *See, e.g.*, *id.* at *3; *Liveware Publ'g, Inc. v. Best Software, Inc.*, 252 F. Supp. 2d 74, 85 (D. Del. 2003) (holding that a customer list "is precisely the type of business information which is regularly accorded trade secret status").  Information revealing a company's particular cost factors has also been held to constitute a trade secret.  *See, e.g.*, *Am. Totalisator Co. v. Autotote Ltd.*, 1983 WL 21374, at *3 (Del. Ch. Aug. 18, 1983) (stating that "information on prices and costs" was considered a trade secret).  However, even if these terms were not trade secrets, they are still highly sensitive confidential information.  Broadcom has submitted evidence that the TLA and the specific redacted terms are not disclosed publicly and access is even restricted internally at Broadcom.  (Kinney Decl. ¶ 8)

Broadcom has also demonstrated risk of serious injury if its trade secrets and confidential communications were to be disclosed to Qualcomm, its direct competitor.  Indeed, the employee in Broadcom's central engineering organization who is primarily responsible for the maintenance of the relationships between Broadcom and its EDA (electronic design automation) and third party IP suppliers, including ARM, has explained that, if Qualcomm were permitted to access information regarding the royalties Broadcom pays to license ARM technology, Qualcomm could use that to reverse engineer pricing levels that Broadcom must achieve from its own products to remain profitable.  (*See* Kinney Decl. ¶ 9)  Similarly, revealing the identity of Broadcom's customers who have access to ARM technology through Broadcom's TLA would give Qualcomm insight into how it might compete for those customers' business.  (*Id.*)  Details about what technology ARM has delivered to Broadcom, its disclosure rules, and when it delivered that technology would reveal information about

Broadcom's strategic use of ARM technology in its products. (*Id.* ¶ 10) As explained above, Broadcom does not have access to similar information about Qualcomm. Thus, disclosure of Broadcom's information would create an asymmetry and hurt Broadcom's ability to effectively compete with Qualcomm.

This competitive harm to Broadcom cannot be remedied through a confidentiality agreement that designates the TLA, Annexes or other communications as "attorneys' eyes only." In the *NUVIA* Litigation, this Court recognized "the harm of disclosure given that Qualcomm's outside counsel will necessarily need to communicate generalized information about the ALA to its client, all of which remains true even given the Protective Order in this case." (*NUVIA* Litigation n D.I. 207 (citation omitted)) The same concerns exist here; Qualcomm's outside counsel will need to communicate to some extent with Qualcomm about the information and documents it receives. *See also Mannington Mills*, 206 F.R.D. at 530-32 (rejecting party's argument that attorney's-eyes-only clause in protective order prevented nonparty competitor from showing that disclosure of its confidential information would be harmful and ultimately quashing subpoena on relevance grounds).

Moreover, the competitive harm facing Broadcom from disclosure is not outweighed by any need for the information and documents Qualcomm is seeking about Broadcom's relationship with ARM. As explained above, the redacted terms and communications Qualcomm seeks are not even relevant much less necessary to prove Qualcomm's claims. Qualcomm is seeking relief because of supposed breaches of ARM's obligations to Qualcomm under Qualcomm's licensing agreement. There is no reason Qualcomm could not discover all of the facts it needs to prove those claims from its own communications with ARM or from ARM's internal communications. Thus, there are less

restrictive means for Qualcomm to obtain the discovery it needs without harming Broadcom. *See Amgen Inc. v. Samsung Bioepis Co.*, 2025 WL 1207594, at *6 (D.N.J. Apr. 25, 2025) (granting protective order to nonparty competitor, in part, because attorney's-eyes-only provision was not "less restrictive means" to adequately protect nonparty's interests). Moreover, Qualcomm has the unredacted TLA and Annexes and cannot demonstrate why anything further is needed.

Because disclosure of the redacted information in Broadcom's TLA and its communications with ARM would cause serious risk of competitive harm, and that harm is not outweighed by any substantial need, the Court should enter a protective order.

## CONCLUSION

For all of the foregoing reasons, Broadcom respectfully requests that the Court issue a protective order prohibiting ARM from producing or otherwise disclosing to Qualcomm any of the redacted terms of the TLA or Annexes or any of its communications with Broadcom or documents discussing ARM's licensing arrangement with Broadcom.

DATED: May 23, 2025

By: */s/ Jenness E. Parker*
Jenness E. Parker (ID No. 4659)
Elisa M.C. Klein (ID No. 5411)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel.: (302) 651-3000
jenness.parker@skadden.com
elisa.klein@skadden.com

*Attorneys for Nonparty Broadcom Inc.*