REDACTED - PUBLIC VERSION
(Filed June 12, 2025)

YOUNG CONAWAY

**WILMINGTON**
RODNEY SQUARE

**Anne Shea Gaza**
P 302.571.6727
F 302.576.3439
agaza@ycst.com

**BY E-FILE AND HAND DELIVERY**
[redacted]

The Honorable Maryellen Noreika
United States District Court for the District of Delaware
844 North King Street Wilmington DE 19801

June 5, 2025

Re: *Qualcomm Inc., et al. v. Arm Holdings Plc.*, C.A. No. 24-490 (MN)

Dear Judge Noreika:

Qualcomm's letter distorts the nature of its overbroad discovery requests and Arm's discovery responses. Arm has produced more than 300,000 documents, including communications with third parties, technical documentation, and competitive analyses. And Arm will promptly provide updated discovery responses and produce documents for requests relating to the allegations in Qualcomm's Second Amended Complaint ("SAC"), filed only two days ago. Qualcomm's requests for further overbroad and irrelevant discovery should be denied.

## I. Requests Relating to Third Parties

**RFPs 4, 26, 28, 32, 66, 67, 75, 76, 84, 159, 160, and 163; Rog. No. 1.** Arm has produced over a hundred thousand documents showing materials made available to its ALA licensees, including Qualcomm. Qualcomm's contention that it also needs Arm's communications with all Arm customers (many of whom are Qualcomm's competitors) to determine any "Arm technology withheld from Qualcomm" stretches Qualcomm's allegations in the SAC. The SAC is limited to two specific types of files that Arm allegedly withheld: (1) the Arm compliance kit ("ACK"), a set of tests Arm makes generally available to Arm partners, including Qualcomm, and patches thereto (2) the "OOB," which is list identifying a subset of ACK tests specific to an individual CPU submitted by a specific partner (*e.g.*, Qualcomm's Nuvia-based CPUs). (*See, e.g.*, D.I. 137 ¶¶ 78, 175.) Qualcomm contends that the ACK is "not centrally distributed," (D.I. 158 at 2), but that is incorrect; Qualcomm received the ACK (including patch content) on the same schedule as other partners, and Arm has produced the ACK documents. In contrast, no Arm partner receives the design-specific OOB for a particular CPU submitted by another partner (for whom it would be irrelevant in any event). (*See, e.g.,* Arm's Rog. No. 1 Resp. at 5, 8.) There is no basis for Qualcomm's disproportionate requests for *all* materials provided to *any* of Arm's licensees involving *any* of their custom CPU designs, let alone any materials beyond the ACK and CPU-specific OOB. Qualcomm's SAC does not identify any other materials allegedly withheld.

For similar reasons, Qualcomm's requests for communications between Arm and Arm's customers and partners regarding Arm materials generally (RFPs 4, 26, 28, 32, 75, 76, 84, 159, 160, 163) have no relevance to what Qualcomm may have been entitled to or received under the Qualcomm ALA, and are also overbroad, unduly burdensome, and disproportionate. Arm's ALA licenses are tailored to the specific circumstances and needs of a licensee. Arm's communications with other licensees about other Arm materials are irrelevant to Qualcomm's separately

negotiated ALA and its specifically alleged claim involving the ACK and OOB. Likewise, Qualcomm's requests for Arm materials provided to third-party licensees (RFPs 66, 67; Rog. No. 1) are overbroad, unduly burdensome, and disproportionate because they go beyond the Nuvia-specific OOB (which no licensee received) and the ACK (which Qualcomm and others received via Arm's repository). (*See, e.g.*, Arm's Rog. No. 1 Resp. at 5, 8.) Qualcomm fails to demonstrate why discovery into what Arm provided to third parties under their licenses is relevant to whether Qualcomm received the materials to which it was entitled under its license, particularly where such discovery might reveal confidential implementation details of other Arm licensees.

**RFPs 9, 27, 68, and 69.** As discussed above, the terms of Arm's agreements with third parties are irrelevant to Arm's dispute with Qualcomm. Qualcomm's contention that "[i]t is likely that third-party ALAs have language comparable to Qualcomm's ALA" ignores that Qualcomm already has access to Arm's third-party ALAs and annexes in *Arm v. Qualcomm*, which Arm produced consistent with the Court's order on Ampere's and Apple's protective order motions. Arm's narrow redactions to the ALAs and annexes were described in a redaction log and were largely made to protect competitively sensitive third-party royalty and fee arrangements. That information bears no relationship to whether Arm provided the ACK and OOB for Nuvia-based CPUs, and the sensitivity of this information is underscored by Broadcom's motion to intervene (D.I. 126) and Ampere's and Apple's prior motions.

Similarly, what Arm may have provided to third-party licensees relating to v10 under their respective licenses has no bearing on *Arm's* interactions with *Qualcomm* regarding v10, which have not yet resulted in a license. Qualcomm's SAC makes clear that Qualcomm's allegations center around Arm's v10 interactions with Qualcomm, rather than how terms Qualcomm may ultimately receive compare to the terms of third-party agreements. (*See* D.I. 137 ¶¶ 131-133, 181-188.)

**RFPs 20–22 and 128.** Arm has met its discovery obligations relating to Qualcomm's tort claims. Arm has produced its formal communications with licensees regarding the decision to bring the *Arm v. Qualcomm* action. Arm has also produced its communications with Bloomberg regarding the October 22, 2024, letter notifying Qualcomm of its breaches, and subsequent communications with other media outlets regarding the Bloomberg article. The communications with Bloomberg are the sole basis for Qualcomm's allegations regarding purported interference with Qualcomm's customer relationships. Qualcomm ignores the distinction between formal communications with third parties regarding Arm's position on its dispute with Qualcomm and stray communications that may have occurred between any of Arm's thousands of employees worldwide and third parties, for which collection and production would be unduly burdensome and disproportionate. Qualcomm's complaints regarding informal communications are resolved by Arm's ESI searches, which include the terms "QC or Qualcomm or QCom"; and Arm has not withheld production of non-privileged and responsive communications that hit on its searches.

**II. Materials Provided to ALA Licensees (RFPs 4, 6, 26, 31, 33, 73–77, 84, 139, and 141)**

Arm has met its discovery obligations for requests relating to Qualcomm's ALA breach claim. Arm has produced documents relating to the alleged withholding of the ACK and OOB materials from Qualcomm. (*See, e.g.*, ARMQC_02627302, ARMQC_02627303, ARMQC_02627305,

ARMQC_02627312, ARMQC_02602502.) Qualcomm's requests seeking broad discovery into Arm materials generally are not only overbroad, unduly burdensome, and disproportionate, but also irrelevant for the reasons described above: the SAC limits its claim of withholding to the Qualcomm-specific OOB and the ACK materials, rather than Arm materials generally.

Qualcomm is also wrong that "Arm has refused to produce anything beyond master lists of technology and certain technical documents in relation to the ACK and OOBs." Arm used search terms related to ACK and OOBs to produce responsive documents, such as documents discussing the ACK materials provided to Qualcomm and Arm's other licensees. (*See, e.g.*, ARMQC_02602267–2295; ARMQC_02602094–2097; ARM_00103710.)

**III. Requests Relating to Qualcomm's Breach of Implied Covenant and TLA Claims**

Arm previously objected to Qualcomm's requests on issues relevant only to claims for which Qualcomm sought leave to amend over Arm's opposition. Now that the SAC is operative, Arm will promptly supplement its responses to these requests and produce documents.

**RFPs 14, 15, 37, 42–44, 48, 102, 144, and 162; Rog. No. 3.** Arm will conduct a reasonable search using appropriate search terms and custodians and produce responsive, non-privileged documents regarding Qualcomm's requests for a v10 license. (RFPs 14, 37.) Arm is also supplementing its interrogatory response and will produce documents sufficient to show its current plans for developing the v10 architecture, including contemplated differences between v9 and v10. (RFPs 43, 144; Rog. No. 3.) Arm has already agreed to produce and has produced documents relating to Arm's TAB meetings since January 1, 2022, in response to RFP 48.

Qualcomm's requests for further discovery, including "[a]ll Documents and Communications" relating to development of all Arm ISAs, not just v10 (RFP 15) and documents relating to v9 (RFPs 42, 44, 102), are not proportional and are irrelevant to Qualcomm's allegations, which concern Arm's and Qualcomm's interactions regarding v10. Arm's v10 licenses with third parties (RFP 162) are similarly irrelevant to the issues in this case, which concern the negotiation process for a v10 license Qualcomm does not yet have, for a product not yet released.

**RFPs 34, 40, 49–51, 53, 55–63, 70-72, 85, 86, 89, 90, 93–95, 100, 120, 123–125, 140, 151, 152, 156–158, 161, and 164–165.** Arm will conduct a reasonable search using appropriate search terms, custodians, and date limitations and produce responsive, non-privileged documents relating to Arm's discussions with Qualcomm regarding the terms of the Qualcomm TLA (RFPs 40, 49–51, 78, 95), including documents sufficient to show Arm's offers to Qualcomm for the licensing of three specific products under the TLA during the relevant time period (RFP 57); Arm's evaluation licenses with Qualcomm (RFP 63); and Arm's discussions with Qualcomm regarding [REDACTED] (RFP 124). Arm has already agreed to produce documents relating to Arm's handling of Partner Meeting Invitations with Qualcomm (RFP 62), Qualcomm's CPUs (RFP 86), the impact to Arm's revenue or profits from Qualcomm's ALA and TLA royalties (RFP 93), IP downloaded by Qualcomm (RFP 120), and Arm's decisions regarding deliverables and license offers to Qualcomm following *Arm v. Qualcomm* (RFP 152).

Qualcomm's requests for discovery into CPUs and designs not identified in the SAC and information concerning Arm's licensing discussions with third parties generally (RFPs 34, 53,

55, 56, 58–62, 70–72, 85, 89, 90, 94, 100, 123, 125, 140, 157, 158, 161, 164, 165), are overly broad and irrelevant to Qualcomm's claims, particularly given the thousands of Arm licenses.

**IV. Requests Relating to Qualcomm's Tortious Interference Claim**

Arm has met its discovery obligations for requests relating to Qualcomm's tortious interference claims. Arm agreed to produce non-privileged documents relating to its October 22, 2024 notice of breach, Arm's communications with Bloomberg regarding the notice, and follow up communications in response to media inquiries following the Bloomberg article. (*See* Arm's Responses to RFPs 16, 17, 25, 35, 36, 38, 51, 145–150.)

While the ESI Order excludes documents that post-date the filing of the complaint from privilege logging obligations, Arm will nonetheless supplement its privilege log to include privileged documents relating to Arm's communications with Bloomberg regarding the notice and follow up communications with the media regarding the Bloomberg article. Qualcomm's requests for broader discovery ignore that the single Bloomberg article on which Qualcomm bases its claims accurately describes Arm's notice of breach, without any suggestion that Arm provided information beyond the contents of the notice. Qualcomm in turn not only received the notice directly, but disclosed the contents of the notice publicly in its own SEC filings shortly thereafter.

Qualcomm nonetheless asserts that it is entitled to documents relating to Arm's "decision" to write the October 22, 2024, notice of breach, discuss it with Bloomberg, and then withdraw the notice in January 2025. But Qualcomm's tortious interference claim focuses on the publication of the Bloomberg article, rather than the contents of the notice itself, which Qualcomm made public. As discussed above, Arm has agreed to conduct a reasonable search of agreed custodians to locate documents relating to the communications with Bloomberg regarding the notice.

**V. Requests Relating to Qualcomm's California Unfair Competition Law Claim (RFPs 83, 103–110, 117–119, 121-122, 126–133, 138, 143, 166-167)**

Qualcomm's characterization of its UCL claim as relating to "vertical integration" and "gaining market share as a chip designer" is news to Arm. Neither phrase appears in the SAC, nor did Qualcomm use that framing in its discovery responses, instead disclaiming any need for discovery regarding antitrust or monopoly-like theories and refusing to identify a relevant market, competitors, or products. None of the RFPs listed by Qualcomm seek relevant information to which it is entitled in discovery. Similarly, RFP 105 seeks documents "concerning Arm's intentions, plans, and strategy to acquire Ampere Computing." But the SAC contains no allegations regarding Ampere, nor has Qualcomm alleged interference with respect to Ampere.

Arm has met its discovery obligations with respect to RISC-V by producing competitive analysis documents. (*See, e.g.*, ARMQC_02726530–547.) Qualcomm fails to articulate why Arm's communications with third parties regarding RISC-V are relevant or proportional.

For RFPs 122 and 137, Arm has also already agreed to produce documents sufficient to show Arm's knowledge regarding whether any third party for whom Qualcomm alleges interference is or has been a Qualcomm CPU customer. Qualcomm has not shown that its broader requests are proportional or relevant.

Respectfully submitted,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

cc: All Counsel of Record (by email)