IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>a U.K. corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 24-490 (MN)<br><br>**REDACTED – PUBLIC VERSION**<br>**Original Filing Date: June 4, 2025**<br>**Redacted Filing Date: June 12, 2025** |

**PLAINTIFFS' LETTER TO THE HONORABLE MARYELLEN NOREIKA
REGARDING OUTSTANDING DISCOVERY DISPUTES**

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

Melissa F. Zappala
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

June 4, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Dear Judge Noreika:

Qualcomm alleges that Arm breached (a) its Architecture License Agreement (ALA) by withholding technology to which Qualcomm is entitled, (b) its Technology License Agreement (TLA) by failing to provide Qualcomm with commercially reasonable licensing proposals for Arm cores (including by failing to provide Qualcomm with reasonable core prices and improperly modifying non-financial terms of the proposals), (c) the covenant of good faith and fair dealing by, in addition to the actions listed above, leaking a notice of breach to create marketplace uncertainty about Qualcomm's license, and (d) California Unfair Competition Law by, among other things, making misleading statements to Qualcomm customers and threatening Qualcomm's access to the ubiquitous Arm ISA.

Following numerous meet and confers, Arm has refused to produce documents and/or respond to interrogatories regarding (1) the specific technology Arm withheld from Qualcomm (2) the decision to withhold such technology; (3) Arm communications with third parties, including communications about technology made available under other ALAs and licensing proposals for Arm cores made under other TLAs; (4) Qualcomm's election to extend the term of its ALA and license future versions of the Arm Architecture; (5) Arm's October 22 notice of breach; and (6) Qualcomm's Unfair Competition Law claim. These documents and information go to the heart of Qualcomm's claims and Arm should not be permitted to withhold them, particularly in light of the rapidly-approaching close of fact discovery on July 11 and upcoming depositions.[1]

## I.   Documents and Information Related to Third Parties

**RFPs 4, 26, 28, 32, 66, 67, 75, 76, 84, 159, 160, 163; Rog. No. 1.** The Qualcomm ALA requires Arm to provide technology ███████ to Qualcomm once they ███████████ ████████ Qualcomm asked Arm to produce third-party communications regarding the Arm technology withheld from Qualcomm, and documents related to delivery of the same to third parties, as well as an identification of the technology provided to licensees. These documents and information will, among other things, show whether the withheld technology was ███████ ███████████████████████ and whether Arm was treating Qualcomm differently from third parties with the same or similar rights. Arm refused to perform a search for such documents, instead producing only "documents sufficient to show the centralized distribution of documents," and such documents made available by such distributions, to all third-party ALA licensees." This is insufficient for Qualcomm to determine which third parties received technology withheld from Qualcomm, when, and under what terms, or the technology's substance or value.

**RFPs 9, 27, 68, and 69.**[2] Qualcomm asked Arm to produce its ALAs and related agreements with third parties[3], including Annexes, documents interpreting the relevant sections of the ALAs, and certain royalty reports. Arm has argued that Qualcomm was not entitled to certain

---

[1] The parties continue to meet and confer on additional topics, including Arm's overly narrow search terms and improper choice of custodians.

[2] Qualcomm's motion with respect to RFPs 9 and 27 is submitted only by Morris Nichols.

[3] Arm produced a subset of heavily-redacted ALAs in the prior case. At the pretrial conference, the Court precluded Arm witness testimony that could not be "fairly cross-examine[d]" without the unredacted ALAs. C.A. 22-1146 (MN), D.I. 530 (Nov. 20, 2024 Hr'g Tr.) at 40:7-22.

technology under its ALA.  *See* SAC ¶ 94.  It is likely that third-party ALAs have language comparable to Qualcomm's ALA, and that those third parties received technology that Qualcomm was denied.  Qualcomm should be permitted to examine third-party ALAs and documents interpreting them to determine if Arm is treating Qualcomm differently than other licensees with similar license terms.  These documents are also highly relevant to damages, including any damages ████████████████████████████████████████████████████████████████████████.

**RFPs 20-22, 128.**  The SAC alleges tort claims arising from Arm's campaign to interfere with Qualcomm's actual and prospective customer relationships.  Qualcomm seeks documents regarding Arm's discussions with third parties about Qualcomm.  In addition to only agreeing to limited custodial searches,[4] Arm also seeks to limit production to only its "formal" communications with third parties.  Following a meet and confer, Arm clarified that "formal" communications are "communications that convey Arm's formal position on an issue."  This artificial limitation is unacceptable.  "Non-formal" communications that disparage Qualcomm or misrepresent its rights can equally interfere with Qualcomm's customer relationships, and Arm has no justification for this vague distinction.  In the prior litigation, some of the most important Arm documents were "informal" internal emails, chats and instant messages, including, for example, a message from Arm's CEO expressing a desire to "hose" competitors through a shift in business model.  C.A. 22-1146 (MN), D.I. 588 (Trial Tr.) at 342:18-343:11.  Arm should not be permitted to limit its production in this manner: if a formal communication says one thing but non-formal communications say something different, both sorts of documents should be produced.

## II.    Withheld ██████████████ and ████████ (RFPs 4, 6, 26, 31, 33, 73-77, 84, 139, 141):

In support of its ALA breach claim, Qualcomm requested documents regarding technology Arm provided to other ALA licensees but not to Qualcomm, including, for example, Arm's communications about the technology, any relevant Arm manuals or presentations, and documents regarding the building of such technology.  Arm has refused to produce anything on this topic beyond master lists of technology made centrally available for licensee download and technical documents it claims are "sufficient to show" the development process and timeline.  These documents are insufficient.  The Architecture Compliance Kit ("ACK") or out-of-box tests ("OOBs"), the specific withheld technology referenced in Qualcomm's complaint (SAC ¶ 175), are not centrally distributed (and Qualcomm has not found any documents in Arm's production regarding the actual engineering of ACK patches and OOBs).  Arm's production also does not include documents related to the development process for the technology in question and instead describes how similar technology functions.  It cannot be disputed that the technology forming the basis of Qualcomm's claims existed and was made available to other ALA licensees because all licensees must use the ACK to verify compliance with the Arm Architecture.  Qualcomm suspects that Arm's third-party communications, which are also being withheld, would confirm that Arm made this technology available to third parties.  It is evident that Arm's production is incomplete.

---

[4] Arm has not confirmed that its custodians would have the relevant information in their custodial files.  In its disclosures, Arm listed only Phil Hughes as having knowledge regarding "communications with the press regarding Arm's October 22, 2024 notice."

### III.    Documents Relevant to Breach of Implied Covenant of Good Faith and Fair Dealing and Qualcomm's TLA Claims

Qualcomm alleges that Arm breached the implied covenant of good faith and fair dealing by failing to abide by its contractual obligations with Qualcomm, including obligations to negotiate an extension to its ALA and TLA annexes ████████. SAC ¶¶ 181-188. Arm unilaterally limited discovery to only the specific allegations listed in Paragraph 136 of the First Amended Complaint,[5] unless and until Qualcomm was permitted to file its SAC. Now, the Court has permitted Qualcomm's SAC, D.I. 134. Arm has not indicated it will engage in discovery on this or the TLA breach claim. Even if it does, it is not clear whether Arm has even begun collecting and reviewing these documents (as it refused to answer that question on meet and confers)—or if it will produce them as requested without a need for further meet and confer. This delay prejudices Qualcomm's ability to prepare for depositions by the close of fact discovery on July 11.

**RFPs 14, 15, 37, 42-44, 48, 102, 144, 162; Rog. No. 3.** In 2020, Qualcomm elected, as permitted by its ALA, to extend the term of its ALA to license "future versions of ██ ████████," and Arm failed to respond. SAC ¶¶ 128-134. Arm has refused to (1) produce documents regarding this election and its failure to respond, (2) answer an interrogatory regarding the development of the v10 ISA and whether it has been licensed to other licensees, (3) produce documents or answer an interrogatory concerning the development and pricing of the future versions of ████████ Qualcomm elected to license, and (4) produce minutes and records of Arm's Technology Advisory Board ("TAB") from January 1, 2019, forward (limiting to January 1, 2022 forward instead). The TAB discusses advances in the Arm architecture, which is the technology Qualcomm sought to license, including when to adopt a new version and what features to add. Qualcomm had been shut out of TAB meetings. Arm's failure to negotiate an extension of the ALA to cover Armv10 is now expressly incorporated into Count III. SAC ¶ 184.

**RFPs 34, 40, 49-51, 53, 55-63, 70-72, 85, 86, 89, 90, 93-95, 100, 120, 123-125, 140, 151, 152, 156-158, 161, 164-165.** Arm refused to produce documents related to the listed RFPs that concern Arm's conduct with respect to the TLA unless or until the SAC was allowed. Qualcomm needs immediate document discovery on the reasonable value of the products that form the basis of the standalone TLA breach claim in the SAC, as well as Arm's licensing offers for those products to third parties. SAC ¶¶ 213-226. Qualcomm expects continued disputes regarding these RFPs. For example, Arm has indicated it will not produce third-party TLAs absent a court order, despite Qualcomm's TLA claim being premised on Arm's refusal to provide "commercially reasonable" licensing offers to Qualcomm. SAC ¶¶ 20, 28. Qualcomm requests Arm be ordered to produce the requested documents promptly given that fact discovery closes July 11.

### IV.    Documents Relevant to Arm's Tortious Interference

**RFPs 16, 17, 25, 35, 36, 38, 51, 145-150.** On October 22, 2024, less than two months

---

[5] Paragraph 136 provided a non-exhaustive list of Arm's breaches of the implied covenant, including by "*among other things*, withholding deliverables that it was required to provide Qualcomm under the QC ALA; asserting, without valid basis under the QC ALA, that Qualcomm was supposedly in material breach of that agreement; and leaking that Breach Letter to the media." D.I. 36 ¶ 136 (emphasis added).

before the first trial between the parties, Arm sent Qualcomm a notice letter alleging breach of the ALA and threatening to terminate that agreement. Information from that letter was published in Bloomberg News on the same day. Arm admitted in an interrogatory response that it leaked this information to a reporter at Bloomberg News through ████████████████████████████ ████████████████████████████████ On January 8, 2025, Arm withdrew its October 22 notice following the jury verdict in *Arm Ltd.* v. *Qualcomm Inc.*

Qualcomm seeks discovery on the letter and the leak, but Arm's production contains no documents about the decision to write or leak the letter, the decision to withdraw the notice on January 8, 2025, and does not even include the letter itself. Arm's initial disclosures list only Phil Hughes, Arm's former VP of External Communications, as knowledgeable about the letter and leak. Yet Arm produced only 26 documents from Hughes in the relevant time period; none preceding the leak. The deficiencies in Arm's production are glaring: either a proper search was not done; potentially improper privilege calls were made; or that Hughes is not the right custodian.

**Arm's Privilege Log.** Adding to the prejudice to Qualcomm, Arm failed to log any privileged documents related to this leak. Thus, Qualcomm has no means of reviewing whether, and to what extent, Arm has withheld documents on the basis of privilege. Arm claims it was obligated to log only communications from before the original complaint in this case (April 18, 2024), relying on the use of the word "complaint" in the ESI Order. But the operative complaint when the ESI Order was negotiated and entered is the First Amended Complaint (December 16, 2024). In any event, cutting off log entries at April 2024 necessarily excludes any documents related to Qualcomm's tortious interference and California Unfair Competition Law claims.

## V. Documents Relevant to Qualcomm's California Unfair Competition Law Claim

Qualcomm alleges that Arm's unlawful and unfair conduct is driven by a recent shift in Arm's business model towards building and selling silicon chips, as opposed to licensing its architecture or CPU designs. To vertically integrate and gain market share as a chip designer, Arm must first displace Qualcomm and other long-time partners in the semiconductor business—which it is trying to do thanks to its control of the Arm ISA. *See, e.g.*, SAC ¶¶ 68-72, 164, 207-210.

**RFPs 103-110, 117-119, 121, 126-133, 138, 143, 166.** Arm refused to produce discovery into the steps it has taken to vertically integrate or regarding Arm's intentions, plans, and strategy to build chips. Arm likewise has refused to produce competitive intelligence analysis reports.

**RFPs 83 and 167.** Arm refuses to produce documents related to its strategy to limit competition to its architecture. For example, Arm refused to produce communications with third parties concerning RISC-V, a growing competitor to the Arm Architecture.

**RFPs 122 and 137.** Qualcomm asked Arm for documents regarding Arm's "knowledge since January 1, 2022 that any Third Party is or has been a customer for Qualcomm CPUs or other products." Arm's response is limited to third parties identified in Qualcomm's complaint, *e.g.*, only the tortious interference that Qualcomm has uncovered and not further communications Arm is having with Qualcomm customers that have not yet surfaced. Arm also refuses to produce documents in its customer relationship management databases that reference Qualcomm.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

cc:     Clerk of the Court (via hand delivery)
        All Counsel of Record (via CM/ECF and e-mail)