IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 24-490 (MN) |
| v. | ) ) | **REDACTED – PUBLIC VERSION** |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) ) | **Original Filing Date: June 5, 2025** **Redacted Filing Date: June 12, 2025** |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE LETTER TO THE HONORABLE MARYELLEN NOREIKA REGARDING DEFENDANT'S OUTSTANDING DISCOVERY DISPUTES (D.I. 159)**

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

Melissa F. Zappala
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

June 5, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Dear Judge Noreika:

Arm's submission postures discovery disputes on scores of its document requests[1], many of which it fails to connect to a specific topic or is raising now for the first time. Arm's arguments should be rejected because the categories it seeks are not relevant to the claims at issue, Qualcomm has sufficiently responded, and/or Arm's complaints have been resolved.[2]

**Arm Seeks Numerous Categories of Irrelevant Documents.** Many of Arm's RFPs have no bearing on the claims or anticipated defenses in the case.[3] Qualcomm's objections are proper. For others, Arm misstates Qualcomm's position and/or Qualcomm has already produced responsive documents.

Arm contends RFPs 8, 6, 37, and 57 quote the Complaint and are therefore relevant. Qualcomm's position on each is easily explained: **RFP 8** requests documents related to contentions in the Complaint concerning Arm's leak of the October 22 notice and interference with Qualcomm's customers. Qualcomm did not object to this request on relevance grounds, has produced responsive documents, and believes there is no dispute. **RFP 6** seeks documents concerning Qualcomm's efforts to "reduce its reliance on Arm." But the quoted statement comes from Qualcomm's opposition brief to Arm's first motion to dismiss the original complaint (D.I. 22), and is a description of the facts from the prior litigation that is not the subject of a claim or any Arm defense. Arm has articulated no basis for needing discovery on this topic beyond that it appears in that opposition brief. **RFP 37** requests documents regarding Qualcomm's entitlement to ALA deliverables for "Nuvia-based technology," which Qualcomm produced in the prior litigation where this issue was litigated and resolved in Qualcomm's favor by a jury. *Arm* v. *Qualcomm*, C.A. No. 22-1146 (MN), D.I. 572 at 1. It is unclear what additional materials Arm seeks. **RFP 57** seeks documents concerning the potential termination of the Qualcomm ALA. Arm appears to seek information about whether Qualcomm thought its ALA would be terminated as a result of the parties' Nuvia-related dispute. A fishing expedition for any such document is not relevant to Qualcomm's contract and tort claims that Arm leaked a letter threatening to terminate the ALA to harm Qualcomm's business. Qualcomm has already produced internal documents about the impact of that leak in response to other RFPs.

Arm also disputes Qualcomm's responses to RFPs concerning Qualcomm's licensing practices. Qualcomm has alleged unfair business practices by Arm arising from Arm's failure to honor its contracts with Qualcomm and Arm's interference with Qualcomm's customer relationships by, among other things, leaking Arm's October 2024 notice letter to Bloomberg News. Qualcomm's licensing business—which is managed by a non-party Qualcomm entity and licenses technologies (*e.g* cellular standards-essential patents) distinct from what Arm licenses under its ALAs or TLAs—has no bearing on those claims. Unlike Arm, Qualcomm does not license its CPUs, CPU designs[4], or an architecture, and its cellular SEP licensing practices have nothing to do with Arm

---

[1] Arm cites a string of 77 RFPs without connecting them to a specific topic and half of those RFPs are not discussed outside of the initial string cite.

[2] Arm also overstates the quality of its production. While Arm dumped nearly 300,000 documents in the week prior to substantial completion, it has only produced 2,906 emails and six Teams chats. The vast majority of the remaining documents are technical documents in HTML and XML format that are either unresponsive or partially responsive to a single RFP.

[3] Arm has not yet answered the Second Amended Complaint ("SAC"); its deadline is June 17.

[4] Qualcomm cannot license a CPU or CPU design for an Arm compatible CPU under its ALA.

or this dispute. Requests about Qualcomm's other licensing relationships are simply not relevant.[5]

Qualcomm is uncertain of Arm's position regarding Interrogatories 2, 4, and 6. Qualcomm has not contested the relevance of Arm's Interrogatories. Arm confirmed on an April 15 meet and confer that it was satisfied by Qualcomm's representation that its response to Interrogatory 2 provided the complete legal basis for its ALA breach claim and that it would supplement its response to Interrogatory 4. On April 22, Arm backtracked on that agreement without explanation and raised issues with Qualcomm's response to Interrogatory 6 for the first time. On April 24, Qualcomm requested an additional meet and confer to clarify. Arm did not respond.

**Qualcomm Has Provided Substantial Discovery on Its ALA Breach Claim.** Qualcomm has provided substantial discovery on its ALA breach claim, in addition to providing Arm with sufficient information regarding the basis of the claim. In 2022, when Qualcomm discovered that Arm had breached the ALA by withholding OOBs and ACK patches, Qualcomm immediately informed Arm of the breach and identified the improperly withheld technology of which it was aware. D.I. 137 ("SAC"), ¶¶ 81-83. Qualcomm has further explained that Arm continued to withhold OOBs and ACK patches through the filing of the SAC. *Id*. ¶ 95. It is Arm, not Qualcomm, that knows what other technologies it improperly withheld. Nonetheless, Qualcomm has produced 30,000 documents related to its requests to Arm for the withheld technology and its verification efforts, which provide information regarding the time and effort required to work around Arm's withholding. There were also numerous verification documents produced in the last litigation, which the parties agree carry over to this case. D.I. 84 ¶¶ 34-36. And Qualcomm agreed to produce documents in response to RFPs 149 and 160 cited in Arm's letter. To the extent Arm's raises Qualcomm's responses to Interrogatories 6 and 13, which the parties have not discussed, Qualcomm believes those requests are addressed through its production as well.

**There Are No Deficiencies in Qualcomm's Tortious Interference Discovery.** Qualcomm has substantially completed its production regarding its tortious interference claims. Arm's concerns about deficiencies are addressed in Qualcomm's production. Qualcomm produced communications with customers following the leak of the October 22, 2024 notice, including a public statement issued by the company. Qualcomm's production encompasses its response to third parties concerning Arm's leak of the October 22 letter, including documents exchanged with the Smartphone Company and the AI and Ecosystem Company in the aftermath of the leak, as well as additional communications concerning the scope of the business relationships that were impacted, including those preceding the leak.[6] Arm's concerns regarding Qualcomm's responses to RFPs related to SEC filings and press communications are misplaced. Documents regarding

---

[5] Arm appears to have mistakenly cited RFPs unrelated to Arm's licensing business. RFPs 108 and 109 concern Qualcomm's SEC filings and communications with investors concerning Arm, Arm-designed cores, the October 22 notice, or this action. Responsive documents are publicly available. Qualcomm has produced documents and communications regarding the October 22 notice, which respond to an appropriately narrowed version of Arm's request. RFP 116 seeks prior testimony and declarations for individuals listed in Qualcomm's initial disclosures. As Qualcomm told Arm, this request is overbroad, but Qualcomm is amenable to producing documents if Arm agrees to narrow the request to prior cases with relevant subject matter.

[6] Arm complains that the Smartphone Company and AI and Ecosystem Company's identities have been sealed from in-house counsel. Arm has not articulated a justification to reveal this business-sensitive information about Qualcomm's customers to in-house counsel.

the decision to make a disclosure in SEC filings are privileged and have been logged on Qualcomm's privilege log. And communications with a reporter concerning an article unrelated to the claims in this action are irrelevant. Qualcomm has represented to Arm that it was not responsible for leaking information or prompting the article in question to be drafted or published and in fact believed that Arm had done so, considering that Arm previously leaked the October 22 notice to one of the article's authors. Qualcomm is willing to make a formal representation to that effect, if necessary.

**Qualcomm's UCL Claim.** Arm is acting as if Qualcomm is pursuing a Sherman Act claim, and demands that Qualcomm state facts supporting contentions Qualcomm is not making. At this point, no such claim is in the case, and the UCL does not require Qualcomm (or the Court) to define or analyze a market, as Arm seeks in its Interrogatory 8. *Epic Games, Inc.* v. *Apple, Inc.*, 67 F.4th 946, 1002 (9th Cir. 2023).[7] Arm cites no case saying otherwise. In *Gamboa* v. *Apple*, discussion of market definition was in the context of a Sherman Act, not a UCL, claim. 2025 WL 660190, at *6 (N.D. Cal. Feb. 28, 2025). In *Racek* v. *Rady Children's Hospital of San Diego*, cited by Arm, plaintiff's UCL claim was rejected due to a failure to plead an injury to competition, not a failure to identify a relevant market. 2012 WL 2947881, at *6 (Cal. App. Jul. 20, 2012).[8] And *Sun Microsystems, Inc.* v. *Microsoft Corp.* is similarly a case about defendant's *conduct*, not whether plaintiff adequately defined a market. 87 F. Supp. 2d 992, 1001-02 (N.D. Cal. 2000).

Interrogatories 5 and 7 seek information on how Arm's actions "harm or threaten to harm competition" and ask Qualcomm to identify each of Arm's "unlawful and unfair business acts and practices."[9] Qualcomm has responded to both interrogatories. Now, Arm alleges that Qualcomm's responses are insufficient because Qualcomm does not "identify the antitrust laws supposedly implicated by Arm's conduct." D.I. 159 at 3. There is no such obligation. *See Epic Games*, 67 F.4th at 1002 (UCL does not import Sherman Act principles); *PeopleBrowsr, Inc.* v. *Twitter, Inc.*, 2013 WL 843032, at *4 (N.D. Cal. Mar. 6, 2013) (because "a violation of the unfair prong may be based on conduct that 'significantly threatens or harms competition,' . . . a violation of the unfair prong of the UCL does not necessarily require establishing a violation of the Sherman Act").

**Harm to Qualcomm.** Arm complains that Qualcomm has not provided "meaningful" responses to discovery requests concerning its harm and expected damages. It is unclear what that means. Qualcomm's breach claims are tied to specific remedies set forth in the ALA and TLA, of which Arm is already aware. And Qualcomm has produced documents and provided Interrogatory responses regarding its tort harms and associated damages, even though Arm has not produced necessary information for Qualcomm's harm and damages calculations, such as third party TLAs and ALAs. If Arm wants Qualcomm to supplement its responses to Interrogatories 1, 3 and 9, Qualcomm previously proposed that it would do so and identify relevant documents under Federal

---

[7] It is unsurprising that *Epic Games* included extensive antitrust discovery, D.I. 159 at 3: unlike here, that case also included standalone antitrust claims.

[8] According to California rules, unpublished state-court opinions like *Racek* "must not be cited or relied on by a court or a party." Cal. R. of Ct. 8.1115(a); *id.* cmt. to (e)(3).

[9] Arm's demand for information is premature, as evidenced by Arm's own case. *Novanta Corp.* v. *Iradion Laser, Inc.*, 2016 WL 4987110, at *7 (D. Del. Sept. 16, 2016) ("a court may defer [contention] interrogatories until the end of discovery"). Qualcomm will supplement its response when it receives the documents and information Arm is presently withholding.

Rule 33(d), which Arm represented at the time would satisfy its concerns. Arm subsequently changed its mind but has not responded to Qualcomm's request to meet and confer.[10]

**Search Terms and Custodians.** To date, Arm has proposed four additional search terms—two of which Qualcomm accepted—and has identified no actual gaps in Qualcomm's production. Arm now alleges two supposed deficiencies with Qualcomm's terms, but neither is meaningful. *First*, as Qualcomm has already confirmed, "RISC" hits on any use of the formal name "RISC-V," and Arm's own RISC-V-related terms also do not use a "RISC*" root expander. *Second*, Arm objects to two of Qualcomm's broadly written terms (one for unfair competition and one for OOBs and ACK patches) but does not explain why a broad term is automatically insufficient. In any event, Qualcomm already agreed to expand its OOB and patches term. Arm's other complaints are no more persuasive. Arm states that it "should receive discovery" on Qualcomm's SAC. Qualcomm already produced relevant material, given its position that Armv10 and the Qualcomm TLA were relevant to the First Amended Complaint, and disclosed some of its relevant search terms to Arm.[11] Finally, Arm claims that "Qualcomm refuses to run its terms against even witnesses it has identified as knowledgeable about the key issues." D.I. 159 at 4. Qualcomm has collected documents from individuals knowledgeable about issues in the case and has produced discovery accordingly.

Qualcomm's behavior stands in stark contrast to that of Arm. Qualcomm challenged Arm's search terms on April 9, and proposed revisions on May 1. Arm responded three weeks later to state that its search terms were "more than sufficient," and refused to respond or discuss the 10 terms Qualcomm proposed adding. Likewise, Arm demanded a hit report from Qualcomm after refusing to provide its own, and still has not provided one, though Qualcomm did.

**Qualcomm's Date Range Objection.** Arm misstates Qualcomm's date range objection. Arm's withholding of technology licensed by Qualcomm and its refusal to provide commercially reasonable licensing offers began in fall 2022. SAC ¶¶ 13, 78. Qualcomm, therefore, generally limited document discovery to June 1, 2022 through the present. In an effort to create a dispute where there is none, Arm references just three paragraphs from the SAC that predate June 1, 2022, but omits that, in April, Qualcomm agreed to search for and produce documents related to those allegations, then did so. *E.g.*, QCVARM_1024020 (email thread referenced in Paragraphs 131-133). In total, Qualcomm has already produced nearly *ten thousand* documents dated prior to June 1, 2022. Arm's reference to Qualcomm's customers gives away the game. Arm wants access to all of Qualcomm's documents regarding the Smartphone Company and AI and Ecosystem Company, for all time, regardless of whether those documents relate to the specific business relationships at issue. Qualcomm has produced documents more than sufficient to show Qualcomm's relationship with both customers regarding the deals with which Arm tortiously interfered.

---

[10] Arm cites to a number of RFPs but does not provide any further explanation as to why they are cited. Qualcomm agreed to produce documents for many of these RFPs, and has done so.

[11] The ESI Order requires disclosure of "search terms to locate potentially *responsive* ESI". D.I. 85 ¶ 2(b)(i)

4

                                                            Respectfully,

                                                            */s/ Jennifer Ying*

                                                            Jennifer Ying (#5550)

cc:     Clerk of the Court (via hand delivery)
         All Counsel of Record (via CM/ECF and e-mail)