OIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED,<br>   a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>   a Delaware corporation,<br><br>                Plaintiffs,<br><br>   v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>   a U.K. corporation,<br><br>                Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 24-490 (MN) <br> ) <br> ) **REDACTED – PUBLIC VERSION** <br> ) **Original Filing Date: June 6, 2025** <br> ) **Redacted Filing Date: June 13, 2025** <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO NON-PARTY
BROADCOM'S MOTION FOR A PROTECTIVE ORDER (D.I. 127)**

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

Melissa F. Zappala
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

June 6, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 4
II. RELEVANT FACTUAL BACKGROUND AND NATURE AND STAGE OF
    THE PROCEEDINGS ................................................................................................. 4
    A. Qualcomm's Allegations and Discovery Requests................................................ 4
    B. Broadcom's Motion for a Protective Order ........................................................... 6
IV. ARGUMENT............................................................................................................... 7
    A. The Materials That Qualcomm Seeks Are Relevant To Qualcomm's
       Claims ................................................................................................................... 7
       1. Broadcom's TLA And Related Communications Are Relevant................. 8
       2. Broadcom's ALA And Related Communications Are Relevant ................ 8
       3. Broadcom's Contrary Arguments Fail......................................................... 9
    B. Broadcom Has Not Demonstrated Any Specific Risk of Harm ........................... 11
    C. Broadcom's Motion Is Neither Ripe Nor Timely ................................................. 13
V. CONCLUSION........................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                               **Page(s)**

*AdTrader, Inc* v. *Google LLC,*
  No. 17-7082, 2021 WL 937559 (N.D. Cal. Mar. 12, 2021) ..................................................12

*Cipollone* v. *Liggett Grp., Inc.*,
  785 F.2d 1108 (3d Cir. 1986)..............................................................................8, 12, 13, 14

*Mannington Mills Inc.* v. *Armstrong World Industries, Inc.*
  206 F.R.D. 525 (D. Del. 2002) ............................................................................................13

*Procter & Gamble Co.* v. *Boyle-Midway, Inc.*,
  Civ. No. 82-671, 1983 WL 830080 (D. Del. Apr. 11, 1983)....................................................13

*Signode Indus. Grp, LLC* v. *Polychem, LLC*,
  C.A. No. 22-519, D.I. 94 (D. Del. Aug. 10, 2022) ...................................................................8

*United States* v. *Dentsply Intern., Inc.*,
  187 F.R.D. 152 (D. Del. 1999) ............................................................................................13

*United States* v. *Garett*,
  571 F.2d 1323 (5th Cir. 1978) ..............................................................................................8

*Zenith Radio Corp* v. *Matushita Elec. Indus. Co.*,
  529 F. Supp. 866 (E.D. Pa. 1981) .......................................................................................12

**Rules**

Fed. R. Civ. P. 26.............................................................................................................8, 10

**I.      INTRODUCTION**

Non-Party Broadcom Inc. ("Broadcom") has moved for a protective order to preclude Defendant Arm from producing materials Qualcomm seeks in discovery related to contracts between Broadcom and Arm. D.I. 127. Broadcom argues that the requested documents are irrelevant to this litigation and that they contain Broadcom confidential information and trade secrets, the disclosure of which would be harmful to Broadcom. Broadcom's arguments are without force: the documents are relevant to Qualcomm's breach claims against Arm and, to the extent they contain confidential information or trade secrets, they are adequately protected by the safeguards already in place in this case. Broadcom fails to make a showing of good cause necessary to secure the relief it seeks. Moreover, Broadcom's motion is neither ripe nor timely. For these reasons, as explained more fully below, the motion should be denied.

**II.     RELEVANT FACTUAL BACKGROUND AND NATURE AND STAGE OF THE PROCEEDINGS**

   **A.      Qualcomm's Allegations and Discovery Requests**

Arm develops and licenses technology for CPUs compatible with its instruction-set architecture ("ISA")—instructions that allow hardware to interface with Arm-compliant software. D.I. 137 ¶ 43. Arm's historic business model revolves around two types of licenses: Architecture License Agreements ("ALAs") and Technology License Agreements ("TLAs"). A TLA grants the licensee the right to license from Arm and use Arm-designed CPUs or other Arm-designed IP in a System-on-a-Chip. *Id.* ¶ 51. An ALA grants the licensee a right to commercialize products with a custom CPU that the licensee designs itself. *Id.* ¶¶ 44–50. Qualcomm develops microprocessors and has both an ALA and a TLA. *Id.* ¶ 3.

In the prior litigation between the parties, Arm alleged that Qualcomm and Nuvia breached the Nuvia ALA by not destroying certain technology after Arm terminated the Nuvia ALA. *Arm*

*Ltd. Inc.* v. *Qualcomm et al.*, C.A. No. 22-1146 (MN) (the "Prior Litigation"), D.I. 1. To test whether Arm suffered any harm from this alleged breach, Qualcomm sought production of the ALAs and TLAs that Arm has with third parties. Prior Litigation, D.I. 27, RFPs. No. 27, 71. Arm produced heavily redacted versions of third-party ALAs. As part of that production, Arm produced an agreement with Broadcom that Arm described as an ALA, but which Broadcom has referred to as a TLA. *Compare* D.I. 127–1 at 2 (Arm noting that it produced Broadcom's "ALAs and other agreements" in the prior litigation) *with* D.I. 127 at 2 (Broadcom stating that "ARM has already produced redacted versions of Broadcom's Technology Licensing Agreement").

This litigation arises from Arm's conduct under the Qualcomm ALA and TLA and Arm's related tortious misconduct and unfair competition. Qualcomm asserts that Arm breached the Qualcomm ALA by failing to provide certain deliverables that Arm is required to give to Qualcomm. D.I. 137 ¶¶ 12–19, 78–94. These include materials to configure and update Arm test kits Qualcomm uses to ensure that its custom CPUs are compliant with the Arm ISA (the "ALA Deliverables"). D.I. 137 ¶ 78. The ALA Deliverables that Arm failed to provide to Qualcomm are information that Arm provides to other Arm partners under their own respective ALAs. *See id.* These allegations relate to Qualcomm's claim for declaratory judgment, breach of the ALA, breach of the implied covenant of ▮▮▮▮, and violation of the California Unfair Competition Law ("UCL"). *Id.* ¶¶ 167–168, 173–180, 181–188, 204–212. Qualcomm has also asserted claims for a breach of the covenant of ▮▮▮▮ and Arm's violation of the California UCL based on Arm's refusal to negotiate in ▮▮▮ regarding an extension of the ▮▮▮▮ to future versions of ▮▮▮. *Id.* ¶¶ 128–134, 181–188, 204–212. Qualcomm also alleges that Arm breached the Qualcomm TLA by refusing to provide licensing offers at commercially reasonable prices for various TLA cores and peripheral

products. *Id.* ¶¶ 20–28, 102–120, 213–226.[1]

Qualcomm served Arm with requests for production back on January 21, 2025. D.I. 42. In these requests, Qualcomm seeks production of several categories of documents related to third parties (including Broadcom). *First*, Qualcomm seeks Arm's ALAs and ALA annexes with third parties, as well as communications and materials related to Arm's delivery of ALA deliverables to other ALA licensees. D.I. 127-1 at 45.[2] These documents are relevant to Qualcomm's claim that Arm provided these materials to other ALA licensees but withheld them from Qualcomm, despite ▮▮▮▮▮▮. They are also relevant to Qualcomm's claim based on Arm's refusal to make a ▮▮▮ licensing offer for ▮▮▮▮▮, to the extent that Broadcom has such a license. *Second*, Qualcomm seeks documents and communications relating to negotiations for Arm's licensing offers for TLA products. *Id.*[3] These documents are relevant to Qualcomm's claims that Arm has refused to offer licenses to these products on commercially reasonable terms.

B.     **Broadcom's Motion for a Protective Order**

On April 23, 2025, Arm sent a letter to Broadcom notifying it that Arm might produce documents implicating Broadcom's confidential information in response to Qualcomm's

---

[1] The Court granted Qualcomm's motion for leave to file the Second Amended Complaint on June 3, 2025. D.I. 134. Nonetheless, these allegations were also relevant to Qualcomm's claim for the breach of the covenant of ▮▮▮▮▮ in the First Amended Complaint.

[2] Specifically, Qualcomm seeks production of documents and communications concerning delivery of OOB tests, ▮▮▮▮▮, bug fixes, corrections, or other technical improvements. *Id.*

[3] Specifically, Qualcomm seeks production of documents and communications regarding any negotiations Arm had with TLA licensees for various TLA products, including ▮▮▮▮▮▮▮▮▮▮▮▮▮.

document requests. D.I. 127–1 at 2. The letter purported to inform Broadcom that Arm "may be required to produce" "confidential information relating to Arm's relationship with Broadcom, including copies of the unredacted ALA and TLA between Arm and Broadcom, and amendments, exhibits, and annexes thereto." *Id*. It also provided a copy of the Protective Order and an email listing ten of Qualcomm's RFPs.

On May 23, 2025, Broadcom moved for a protective order and to intervene in this case. D.I. 127; D.I. 126.[4]

## III. LEGAL STANDARD

A court may issue a protective order upon a showing of good cause. Fed. R. Civ. P. 26(c). The burden is on the non-party seeking a protective order to "show good cause by demonstrating a particular need for protection." *Cipollone* v. *Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* (citing *United States* v. *Garett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). *See also Signode Indus. Grp, LLC* v. *Polychem, LLC*, C.A. No. 22-519, D.I. 94 at 1-2 (D. Del. Aug. 10, 2022) (noting "specificity" requirement for granting protective order).

## IV. ARGUMENT

### A. The Materials That Qualcomm Seeks Are Relevant To Qualcomm's Claims

Broadcom contends that the Court should grant its motion for a protective order on the ground that the materials Qualcomm seeks are irrelevant and thus not discoverable under Rule 26. D.I. 127 at 10. Broadcom is wrong; each category of documents is relevant to Qualcomm's claims.

---

[4] Broadcom did not request a meet and confer or otherwise communicate with Qualcomm prior to filing its motions. Perhaps this is because Arm failed to provide Broadcom with the relevant materials, as discussed below. Nevertheless, it was not until Broadcom's May 23 filings that Qualcomm even learned that Broadcom had been contacted by Arm and that it was seeking a protective order.

### 1. Broadcom's TLA And Related Communications Are Relevant

Broadcom's unredacted TLA and annexes with Arm, as well as communications regarding its TLA licensing offers, are relevant to Arm's conduct and Qualcomm's claims. Qualcomm alleges that Arm has failed to provide licensing offers for certain TLA cores and peripherals at commercially reasonable rates, ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ ▊▊▊▊▊▊▊▊▊▊ *See* D.I. 137 ¶¶ 20–28, 102–120, 213–226. These claims necessarily involve comparing licensing offers provided to Qualcomm to those provided to third parties. The pricing at which Arm licensed these cores and peripherals under the Broadcom TLA will thus provide relevant evidence of the commercially reasonable value of these materials. The pricing terms of Broadcom's TLA are particularly relevant given that the ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊. D.I. 137 ¶¶ 104–105. In light of the Court's grant of Qualcomm's motion to amend the complaint to include these TLA claims (D.I. 134), there can be no doubt that third party TLAs and related communications are relevant.

### 2. Broadcom's ALA And Related Communications Are Relevant

Broadcom's unredacted ALA with Arm and Arm's communications with Broadcom regarding ALA deliverables—to the extent either exist—are relevant to Qualcomm's claims. Several of Qualcomm's claims are premised on Arm's withholding of certain deliverables that ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊. D.I. 137 ¶¶ 167–168, 173–180, 181– 188, 204–212. Communications showing whether Arm has provided deliverables to other ALA licensees (but not Qualcomm) are directly relevant to Qualcomm's claim that Arm breached its obligations to Qualcomm and that Arm has acted in bad faith by withholding these deliverables. First, these documents and communications are relevant to Qualcomm's claims that these deliverables exist, yet were denied to Qualcomm. Second, because the ▊▊▊▊▊▊▊▊▊▊▊

8

███████████████ (D.I. 137 ¶ 176), communications showing when Arm provided these deliverables are necessarily relevant to Qualcomm's claims. Moreover, the unredacted terms of Broadcom's ALA are relevant to confirm that Arm's provision of deliverables to Broadcom but not Qualcomm are not the result of ███████████████ ███████████████ that could potentially justify why Arm has withheld from Qualcomm deliverables it has provided to Broadcom. Thus, these materials are highly relevant to Qualcomm's claims and should be produced.

### 3. Broadcom's Contrary Arguments Fail

Broadcom appears to make three broad arguments as to why these materials are not relevant, none of which are specific to any one category of materials sought by Qualcomm.[5] None have merit.

*First,* Broadcom says that "the information Qualcomm seeks" is not relevant to whether "ARM failed to deliver certain technology it owed to *Qualcomm* under *Qualcomm's* agreement." D.I. 127 at 10 (emphasis in original). Broadcom's argument is so broad that it is difficult to assess which materials Broadcom is referring to. To the extent Broadcom is referring to its ALA and its communications with Arm related to its ALA, as explained above, whether Arm has provided ALA deliverables to Broadcom that it has not provided to Qualcomm despite ███████ ███████████████ is highly relevant, including because such documents may show that

---

[5] In addition to the arguments below, Broadcom's suggestion that the Court should grant the motion because *Broadcom* does not have access to *Qualcomm*'s agreements with Arm is nonsensical. D.I. 127 at 3. Qualcomm is a plaintiff in a lawsuit and is entitled to discovery of nonprivileged documents relevant to its claims. Fed. R. Civ. P. 26(b)(1). Qualcomm redacted confidential information from its publicly-filed complaint. What information Broadcom—a non-party asserting no claims—or the public does or does not have is irrelevant.

such deliverables exist and Arm's conduct in isolating Qualcomm from delivery. To the extent Broadcom is referring to its TLA and its communications with Arm related to its TLA, it battles a strawman: Broadcom's TLA is related to—and relevant to—Qualcomm's claims that Arm has breached the implied covenant of ▅▅▅▅▅▅▅▅▅ and the Qualcomm TLA by failing to provide licensing offers at commercially reasonable rates.

*Second*, Broadcom contends that the Court in the Prior Litigation "expressed skepticism" that pricing terms in other agreements were relevant and "ultimately did not require production of the pricing terms." D.I. 127 at 10. That argument is incomplete, at best, and irrelevant in any event. To begin, as Qualcomm has explained previously, although Arm was not initially required to produce the unredacted ALAs, Arm was ultimately precluded from using certain evidence and advancing certain theories of harm in light of Arm's refusal to provide these materials. D.I. 70 at 3–4; Ex. 1 (Prior Litigation, Mar. 7, 2024 Tr.) at 46:6–12. In any event, the Court's prior rulings on relevance are inapplicable here as this case involves different claims and Qualcomm seeks production of third-party agreements for different reasons.

*Third*, as to "[t]he communications that Qualcomm seeks," Broadcom contends that Arm's "fulfillment of" its obligations to Broadcom has no "bearing on whether ARM fulfilled its delivery obligations to Qualcomm." D.I. 127 at 10–11. Again, Broadcom fails to distinguish whether it is referring to delivery of ALA Deliverables or TLA licensing offers. In any event, Broadcom's argument fails as to both. As explained above, Arm's communications with Broadcom regarding TLA licensing offers are relevant to Qualcomm's claims that Arm offered commercially unreasonable licensing offers for those same TLA cores and peripherals to Qualcomm. As to Arm's communications with Broadcom regarding ALA Deliverables, those communications are relevant to proving that Arm engaged in the development and delivery of various deliverables to

10

third parties, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, that were nonetheless withheld from Qualcomm.

The Court's decision in *AdTrader, Inc* v. *Google LLC* is no bar. There, the plaintiff sought production of Google's policies regarding an agreement for one advertising platform on the ground that they were relevant to "Google's understanding" of its obligations under a similar agreement relating to a different advertising platform. No. 17-7082, 2021 WL 937559 at *2 (N.D. Cal. Mar. 12, 2021). But the Court "did not understand" how Google's adoption of certain policies relating to one agreement had "any bearing whatsoever on Google's performance of its obligations" under a different agreement. *Id*. As the Court put it, "Google either breached [the relevant] agreement or it did not." *Id.* Here, by contrast, Qualcomm is not seeking these materials solely as relevant to Arm's "understanding" of its duties under similar agreements. Instead, the terms of third-party agreements themselves, and Arm's performance of those obligations, are directly relevant to showing whether Arm failed to perform under the Qualcomm agreements. *See* D.I. 137 ¶ 76. As explained above, Arm's ALA with Broadcom and communications regarding ALA deliverables are relevant to showing whether such deliverables exist but were denied to Qualcomm. Arm's TLA with Broadcom and communications regarding TLA licensing offers are relevant to whether the offers made to Qualcomm for the same or similar products were commercially reasonable.

### B. Broadcom Has Not Demonstrated Any Specific Risk of Harm

To establish good cause for a protective order, Broadcom had the burden to show a "particular need for protection" rather than merely "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Cipollone* v. *Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). The authorities Broadcom relies on make the same point. *Zenith Radio Corp* v. *Matushita Elec. Indus. Co.*, 529 F. Supp. 866, 890–91 (E.D. Pa. 1981) (noting that a party

seeking a protective order must show "with specificity" that disclosure will "work a clearly defined and serious injury," and that "conclusory statements" of harm are insufficient); *United States* v. *Dentsply Intern., Inc.*, 187 F.R.D. 152, 158 (D. Del. 1999) (similar). Broadcom has not met its burden.

Broadcom's assertion of harm is entirely hypothetical and non-specific. Broadcom contends that it will suffer harm "if its trade secrets and confidential communications were to be disclosed to Qualcomm, its direct competitor." D.I. 127 at 12. But the Protective Order entered by this Court protects against precisely this concern by permitting Arm to designate sensitive information as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," thus limiting access to outside counsel of record and experts while prohibiting access to anyone else (including in-house counsel). D.I. 84. This designation provides strong protection from disclosure of confidential information. *See* D.I. 70, Ex. 1 at 44:14–23 (noting that it was "quite an accusation" to suggest that this designation wouldn't sufficiently protect sensitive information); *Procter & Gamble Co.* v. *Boyle-Midway, Inc.*, Civ. No. 82-671, 1983 WL 830080, at *1 (D. Del. Apr. 11, 1983) ("The Court simply will not indulge in the speculation that attorneys will violate a protective order issued by a court.").[6]

Broadcom merely speculates as to why an appropriate confidentiality designation does not provide sufficient protection. Broadcom contends that "Qualcomm's outside counsel will need to communicate to some extent with Qualcomm about the information and documents it receives."

---

[6] The court's decision in *Mannington Mills Inc.* v. *Armstrong World Industries, Inc.* is inapposite. 206 F.R.D. 525 (D. Del. 2002). There, the court quashed a subpoena primarily because the materials sought were irrelevant. *Id.* at 532. Here, Qualcomm has not subpoenaed Broadcom. In any event, the *Mannington Mills* court was relying on Federal Circuit precedent and its speculation as to potential harm despite a confidentiality designation does not override the Third Circuit's specificity requirement. *Cipollone*, 785 F.2d at 1121.

D.I. 127 at 13. But Broadcom does not explain why Qualcomm's outside counsel would need to communicate this "information" to Qualcomm's in-house counsel or Qualcomm employees in violation of the Protective Order. It merely parrots a ruling from Judge Hatcher involving a different third party, different claims, and different relevance considerations, and which was later effectively overruled by the Court's exclusion of certain of Arm's theories of harm. D.I. 70 at 3–4. Moreover, Broadcom does not, and cannot, contend that Qualcomm's outside counsel improperly shared information from the redacted version of the Broadcom agreement that Arm produced in the Prior Litigation. Thus, Broadcom's assertion of harm is precisely the type of broad, non-specific allegations that are insufficient to justify a protective order. *Cipollone*, 785 F.2d at 1121.

Finally, Broadcom contends that its TLA and annexes contain "customer lists" and "supplier identities." D.I. 127 at 3, 4, 10, 11. Qualcomm has no need for such information and will agree that Arm can produce a version of the TLA and annexes with narrow redactions covering the identities of any such customers or suppliers. But the TLA and annexes as previously produced are so heavily redacted that Qualcomm cannot even understand what Arm is redacting. At a minimum, Arm should be ordered to reproduce these materials with narrow redactions obscuring only the identities of customers and suppliers, and provide a corresponding redaction log.

### C.     Broadcom's Motion Is Neither Ripe Nor Timely

Given Arm's failure to provide Broadcom with all of the relevant materials to be produced, Broadcom's motion is not ripe to the extent it seeks to prevent production of any materials beyond its TLA, including its ALA, any communications regarding ALA deliverables, and any communications relating to TLA licensing offers. The Protective Order requires that, prior to a third party moving for a protective order to prevent the production of confidential information,

Arm "make the information requested available for inspection by the Third Party." *See* D.I. 84 ¶ 51(c). Arm's letter to Broadcom attaches only the protective order and an email containing ten of Qualcomm's RFPs, D.I. 127, Exs. 1–2, and Broadcom's motion confirms that Arm provided only the redacted TLA and related annexes previously produced in the Prior Litigation, as well as unredacted copies of those documents. D.I. 127 at 6–7, 8 n.1. Thus, Broadcom's motion for a protective order as to any materials other than the TLA and its annexes is premature and improper.[7] Moreover, Broadcom's assertion that all materials to be produced would pose competitive harm, including communications Broadcom has not reviewed, is without merit.

Alternatively, Broadcom's motion is untimely under the Protective Order, which provides that if a third party "fails to seek a protective order or other relief from this Court within twenty-one (21) days of receiving the notice and accompanying information, the Third Party's confidential information responsive to the discovery request shall be produced, with an appropriate confidentiality designation." D.I. 84 ¶ 52. If Arm was not required to provide the relevant materials to Broadcom, then Broadcom's protective order was due no later than 21 days after Arm's April 23 letter. Arm's letter to Broadcom appears to take that position. D.I. 127, Ex. 1 at 2 (informing Broadcom that it "has 21 days from the receipt of this notice to seek a protective order or other relief from the court"). But Broadcom did not move for a protective order until May 23—more than 21 days later. D.I. 127. Thus, Broadcom's motion is untimely and should be denied.

---

[7] Broadcom's motion does not mention its ALA at all. Although it at times refers to preventing production of "agreements," D.I. 127 at 1, 2, 4, it refers specifically only to a TLA and TLA annexes, *id.* at 2. Broadcom's motion does not even acknowledge whether it has an ALA. So too, Broadcom asks the Court to prevent disclosure of "any of its communications with Arm," D.I. 127 at 2, without having reviewed any such communications related to the ALA or TLA, and without even acknowledging that the ALA and related communications exist.

## V. CONCLUSION

For the foregoing reasons, Broadcom's motion for a protective order should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

Melissa F. Zappala
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

June 6, 2025

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 6, 2025, upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Samantha G. Wilson, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Karen E. Keller, Esquire<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO 80202<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Nicholas R. Fung, Esquire<br>Henry Huttinger, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd., Suite 6000<br>Los Angeles, CA 90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

| | |
|---|---|
| Kyle W.K. Mooney, Esquire<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, NY 10019<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Erik J. Olson, Esquire<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, CA 94304<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Gregg F. LoCascio, P.C.<br>Jason M. Wilcox, P.C.<br>Meredith Pohl, Esquire<br>Matthew J. McIntee, Esquire<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Jay Emerick, Esquire<br>Adam M. Janes, Esquire<br>KIRKLAND & ELLIS LLP<br>333 West Wolf Point Plaza<br>Chicago, IL 60654<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Peter Evangelatos, Esquire<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Jenness E. Parker<br>Elisa M.C. Klein<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>*Attorneys for Nonparty Broadcom Inc.* | *VIA ELECTRONIC MAIL* |

*/s/ Jennifer Ying*

Jennifer Ying (#5550)