# EXHIBIT 1

```
                                                    1
13:12:40         IN THE UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF DELAWARE

          ARM LTD.,                    )
          a U.K. corporation,          )
                                       )
                      Plaintiff,       )
                                       ) C.A. No. 22-1146(MN)
          v.                           )
                                       )
          QUALCOMM, INC.,              )
          a Delaware corporation,      )
          et al.,                      )
                      Defendants.      )


                      Thursday, March 7, 2024
                      2:13 p.m.
                      Oral Argument


                      844 King Street
                      Wilmington, Delaware

          BEFORE:  THE HONORABLE MARYELLEN NOREIKA
                   United States District Court Judge


          APPEARANCES:

                   YOUNG CONAWAY STARGATT & TAYLOR
                   BY:  ANNE SHEA GAZA, ESQ.
                   BY:  ROBERT M. VRANA, ESQ.

                   -and-

                   MORRISON FOERSTER, LLP
                   BY:  KYLE W.K. MOONEY, ESQ.
                   BY:  NICHOLAS R. FUNG, ESQ.
                   BY:  DANIEL MACKNIDES, ESQ.

                              Counsel for the Plaintiff
```

---

```
                                                    2
 1   APPEARANCES CONTINUED:

 2
         MORRIS NICHOLS ARSHT & TUNNELL LLP
 3       BY:  JACK BLUMENFELD, ESQ.

 4       -and-

 5       PAUL WEISS
         BY:  KAREN L. DUNN, ESQ.
 6       BY:  ERIN MORGAN, ESQ.

 7             Counsel for the Defendants

 8
         FISH & RICHARDSON
 9       BY:  NITIKA GUPTA FIORELLA, ESQ.

10       -and-

11       WALKER STEVENS CANNOM, LLP
12       BY:  HANNAH L. CANNOM, ESQ.

13             Counsel for Apple, Inc.

14
15       WILSON SONSINI GOODRICH & ROSATI
         BY:  BRAD SORRELS, ESQ.
16
               Counsel for Ampere Computing
17

18
              _ _ _ _ _ _ _ _ _ _ _ _ _ _
19

20
13:37:07
13:37:07  21     THE COURT:  All right.  Good afternoon everyone.
14:13:23  22   Please be seated.
14:13:28  23        Ms. Gaza.
14:13:29  24        MS. GAZA:  Good afternoon, Your Honor.  Anne
14:13:31  25   Gaza on behalf of plaintiff, ARM.  I'm joined today by Kyle
```

---

```
                                                    3
14:13:35   1   Mooney and Nicholas Fung of Morrison & Foerster as well as
14:13:38   2   my colleague, Robert Vrana and Daniel Macknides.
14:13:45   3        MR. BLUMENFELD:  Good afternoon, Your Honor.
14:13:48   4   Jack Blumenfeld from Morris Nichols for the Qualcomm
14:13:52   5   defendants.  And with me is Karen Dunn and Erin Morgan from
14:13:56   6   Paul Weiss.
14:13:56   7        THE COURT:  Great.
14:13:58   8        MS. GAZA:  Your Honor, if I may, I'm sorry, I
14:14:01   9   meant to mention also that third-party counsel for Ampere
14:14:06  10   and Apple are in attendance as well if you would like their
14:14:09  11   introduction.
14:14:10  12        THE COURT:  Sure.  You guys can give me your
14:14:12  13   input if you need to.
14:14:15  14        All right.  Let's start with -- so we have a
14:14:19  15   couple of objections and we have the trial date issue.  I
14:14:25  16   saw there was another order from Judge Hatcher yesterday.
14:14:28  17   Am I going to be getting objections for that, anyone?
14:14:35  18        MR. MOONEY:  No, Your Honor.
14:14:35  19        THE COURT:  I didn't get a yes or no.  And when
14:14:38  20   you speak, could you stand.
14:14:39  21        MS. DUNN:  Not from us, Your Honor.
14:14:41  22        MR. MOONEY:  No, Your Honor.
14:14:42  23        THE COURT:  Okay.  Great.  All right.
14:14:45  24        Okay.  Let's start with Mr., is it Son or Son?
14:14:53  25        MS. DUNN:  Yes, Your Honor.  Karen Dunn for
```

---

```
                                                    4
14:14:56   1   Qualcomm.
14:14:57   2        THE COURT:  So I need you to really focus me on
14:15:01   3   the standard here because I'm not looking at this de novo,
14:15:07   4   and so I need you to focus on why this was clearly erroneous
14:15:14   5   or contrary to law.
14:15:16   6        MS. DUNN:  I'm happy to do that, Your Honor.  We
14:15:19   7   have slides as to this argument that we can hand up if it
14:15:24   8   pleases the Court.  Thank you.
14:15:25   9        THE COURT:  Let me ask you this before I start.
14:15:27  10   Is there really a dispute as to whether he told Samsung or
14:15:39  11   others that Qualcomm's license was going to expire?  Is that
14:15:45  12   in dispute?
14:15:46  13        MS. DUNN:  There is a dispute about his
14:15:48  14   statements.  We know he -- there is no dispute that he made
14:15:52  15   statements.  I don't know, perhaps counsel for Arm can tell
14:15:55  16   us whether they dispute that he said the license would
14:15:58  17   expire.  I don't think that's in the record.
14:16:02  18        THE COURT:  Why don't you guys talk about that
14:16:04  19   because I need to understand what there is a dispute about
14:16:06  20   so I can decide if he has superior or unique knowledge.  If
14:16:10  21   nobody disputes what you say he said, then I'm not sure I
14:16:14  22   care as much.  Why don't you guys talk about it.  I can't
14:16:19  23   believe you haven't done that already.
14:16:23  24        (Discussion off the record.)
14:16:25  25        MR. MOONEY:  Your Honor, Rene Haas, the current
```

45

```
15:13:10  1  is clear that the protective order isn't sufficient to
15:13:13  2  require parties to produce information that's not relevant
15:13:16  3  in the case.
15:13:17  4          THE COURT:  Let's say I'm not convinced that
15:13:19  5  it's not relevant.
15:13:20  6          MR. MOONEY:  Your Honor is right, we are not
15:13:21  7  suggesting that Qualcomm outside counsel is going to
15:13:25  8  deliberately disclose this information to anybody, that's
15:13:28  9  not the concern.  The concern is that this is highly
15:13:30 10  confidential competitive information that goes to the very
15:13:34 11  core of our business and to the very core of our
15:13:38 12  competitor's business and this is information that could be
15:13:40 13  misused by our competitors and our customers.  And that any
15:13:45 14  risk that this information is inadvertently specifically or
15:13:50 15  generally used or disclosed by any counsel or anyone else
15:13:54 16  involved in the case who might have access to this
15:13:56 17  information under the protective order, which certainly
15:14:00 18  isn't just counsel sitting at the table is enough of a risk
15:14:03 19  that we worked very carefully with our customers, Apple
15:14:08 20  here, to remove as many --
15:14:11 21          THE COURT:  You haven't worked at all with
15:14:12 22  anyone on the 2023 Apple agreement, that's just a big fat
15:14:17 23  no, right?  You don't even have the first page of it that
15:14:20 24  says agreement.
15:14:21 25          MR. MOONEY:  It is true that the Apple agreement
```

46

```
15:14:24  1  2023 has not been produced and on that, I would let Apple
15:14:29  2  speak further.
15:14:29  3          If you have any other further questions for me,
15:14:32  4  I'm happy to address them.
15:14:34  5          THE COURT:  All right.  Apple.
15:14:37  6          MS. CANNOM:  Thank you, Your Honor.  Hannah
15:14:40  7  Cannom on behalf of Apple, Inc.  A couple of points that I
15:14:43  8  think we need to look at.  First of all, it's from Judge
15:14:46  9  Hatcher's order where she says that balancing the minimal
15:14:50 10  relevance when combined with the harm of disclosure --
15:14:53 11          THE COURT:  I might think it's a little bit more
15:14:55 12  relevant than she does.
15:14:58 13          MS. CANNOM:  What she then goes on to say it
15:15:01 14  will necessarily need to generate generalized information
15:15:03 15  from the ARM clients.  This is different than a source code
15:15:05 16  situation where the source code is in a room and what we're
15:15:07 17  worried about is inadvertent disclosure of large swaths of
15:15:11 18  code.  Here we have information that once it's heard --
15:15:15 19          THE COURT:  Tell me what exactly that means,
15:15:18 20  necessarily -- I don't know why that is, so why is it
15:15:23 21  different than you have source code and you say we can't
15:15:30 22  make out an infringement case because, you know, the source
15:15:34 23  code doesn't have this, or we can make out an infringement
15:15:38 24  case so that, therefore, they are, you know, confirming that
15:15:41 25  the source code shows that something works.  Why -- like,
```

47

```
15:15:45  1  why is that different from this?  Why do you think that if
15:15:52  2  someone, outside counsel for Qualcomm gets it, like what is
15:15:56  3  -- give me an example, what necessarily would they have to
15:15:59  4  disclose that's so -- that's so secret that it would be
15:16:04  5  harmful.
15:16:05  6          MS. CANNOM:  Right.  So speaking generally about
15:16:06  7  the termination provision, if they were entitled to see the
15:16:10  8  termination provision, then they would have to tell their
15:16:15  9  client whether the termination provision was similar or
15:16:17 10  different and that's why that mattered to the specific issue
15:16:20 11  here.
15:16:21 12          There are also other, you know, certain
15:16:23 13  licensing terms --
15:16:25 14          THE COURT:  Well, I mean the termination
15:16:26 15  provision, that wasn't even something -- that was redacted
15:16:29 16  in the Google one, so I'm not sure why I understand that's
15:16:33 17  so secretive.
15:16:35 18          MS. CANNOM:  And Apple's position is that
15:16:38 19  everything that's within the 2023 ALA is very highly
15:16:41 20  protected even within Apple.
15:16:44 21          THE COURT:  That assumes a bit much to me.
15:16:47 22  You're telling me the very first words that say this ALA
15:16:51 23  between Apple and ARM, that's super secret.  Come on, right
15:16:54 24  then you're losing a little bit of credibility because
15:16:57 25  you're not even -- I mean, that's not -- let's put it this
```

48

```
15:17:00  1  way.  The Third Circuit test for confidentiality, you didn't
15:17:05  2  meet it when you're telling me that.  I'm supposed to go
15:17:09  3  line by line in things according to the Third Circuit.  So
15:17:13  4  you just saying there is an agreement, but you can't even
15:17:17  5  see who signed it tells me right then that you're being
15:17:21  6  overly inclusive and you're not encouraging me to follow the
15:17:26  7  Third Circuit's guidance on confidentiality.
15:17:30  8          MS. CANNOM:  Understood, Your Honor.  Your
15:17:33  9  Honor, and if you were to order that Apple would have to
15:17:36 10  produce a redacted version in line with the other ALAs, that
15:17:40 11  would be certainly something we would do.  Our concern here,
15:17:43 12  however, is that the clearly defined serious injury that
15:17:47 13  Apple has vis-a-vis its competitor and more broadly --
15:17:50 14          THE COURT:  I'm still not getting it.  You're
15:17:52 15  telling me it's so harmful to you if the example you gave
15:17:57 16  me, the termination provisions were disclosed, yet other
15:18:02 17  competitors, termination provisions are disclosed, and maybe
15:18:08 18  there is something super secret in Apple's termination
15:18:12 19  provision, but the fact that it sort of undermines your
15:18:18 20  argument when other competitors are like okay, you can't see
15:18:21 21  how much we pay, but you can see what happens if we
15:18:24 22  terminate or how we terminate.
15:18:26 23          MS. CANNOM:  To be clear, there are multiple
15:18:28 24  other ALAs that have been produced in redacted material
15:18:32 25  here.  What we're concerned is the most recent one which has
```