# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
Delaware corporation,

        Plaintiffs,

    v.

ARM HOLDINGS PLC, a U.K. corporation,

        Defendant.

C.A. No. 24-490-MN

**REDACTED VERSION**
**Filed: June 24, 2025**

## ARM'S OPENING BRIEF IN SUPPORT OF ITS PARTIAL
## MOTION TO DISMISS QUALCOMM'S SECOND AMENDED COMPLAINT

33290850.2

Dated: June 17, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
gregg.locascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

33290850.2

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

    A.    The Original Arm-Qualcomm Nuvia Litigation .................................................... 2

    B.    Qualcomm's Second Amended Complaint In This Action. ................................... 3

ARGUMENT ...................................................................................................................... 4

I.    QUALCOMM'S CLAIMS ARE BARRED BY *NOERR-PENNINGTON* AND RELATED DOCTRINES (COUNTS III-VI)....................................................... 4

    A.    The *Noerr-Pennington* Doctrine Bars Claims Based On Arm's Speech And Petitioning Activity. ......................................................................... 5

    B.    The California Litigation Privilege And Anti-SLAPP Law Also Apply To Qualcomm's Claims........................................................................ 8

II.    QUALCOMM'S TORT CLAIMS SHOULD BE DISMISSED FOR ADDITIONAL REASONS. ............................................................................... 9

    A.    Qualcomm's UCL Claim Fails (Count VI)............................................................ 9

    B.    Qualcomm's Intentional And Negligent Tortious Interference Claims Fail (Count IV-V)........................................................................... 14

III.    QUALCOMM'S TLA CONTRACT CLAIMS SHOULD BE DISMISSED. ................ 15

    A.    Qualcomm Fails To Allege A Breach Of ███ (Count VII)............................ 16

    B.    Qualcomm Fails To Allege A Breach Of ███ (Count VIII). .......................... 18

IV.    QUALCOMM'S IMPLIED COVENANT CLAIM SHOULD BE DISMISSED (COUNT III). ............................................................................................... 19

CONCLUSION................................................................................................................. 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Cole Haan, LLC,*
   2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) .......................................................................10

*Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.,*
   182 F. App'x 994 (Fed. Cir. 2006) .....................................................................................20

*Aircapital Cablevision, Inc. v. Starlink Commc'ns Grp., Inc.,*
   634 F. Supp. 316 (D. Kan. 1986) ..........................................................................................6

*All. Atlantis Releasing Ltd. v. Bob Yari Prods.,*
   2010 WL 1525687 (C.D. Cal. Apr. 12, 2010) .....................................................................18

*Ancestry.com Operations, Inc. v. DNA Diagnostics Ctr., Inc.,*
   2016 WL 3999315 (S.D. Ohio July 26, 2016) ............................................................1, 5, 7, 8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).....................................................................................................16, 19

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...........................................................................................................13

*Beverage v. Apple Inc.,*
   101 Cal. App. 5th 736 (2024) .............................................................................................13

*Block v. eBay, Inc.,*
   2012 WL 1601471 (N.D. Cal. May 7, 2012) .......................................................................14

*In re BPS Direct, LLC,*
   705 F. Supp. 3d 333 (E.D. Pa. 2023) ..................................................................................11

*In re Burlington Coat Factory Sec. Litig.,*
   114 F.3d 1410 (3d Cir. 1997)..............................................................................................15

*Cap. Health Sys., Inc. v. Veznedaroglu,*
   2017 WL 751855 (D.N.J. Feb. 27, 2017) .......................................................................6, 7, 8

*Cargill Inc. v. Progressive Dairy Sols.,*
   2008 WL 2235354 (E.D. Cal. May 29, 2008) ....................................................................8, 9

*Cel-Tech Commc'ns, Inc. v. L.A. Cell. Tel. Co.,*
   20 Cal. 4th 163 (1999) ........................................................................................................11

*Chavez v. Whirlpool Corp.*,
   93 Cal. App. 4th 363 (2001) .................................................................................12

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983)...............................................................................................11

*Clark v. Am. Honda Motor Co.*,
   528 F. Supp. 3d 1108 (C.D. Cal. 2021) ..............................................................10

*Coastal States Mktg., Inc. v. Hunt*,
   694 F.2d 1358 (5th Cir. 1983) ..............................................................................7

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
   345 F. Supp. 3d 1207 (E.D. Cal. 2018).................................................................20

*Designing Health, Inc. v. Erasmus*,
   2001 WL 36239748 (C.D. Cal. Apr. 24, 2001) .....................................................8

*Dollar Tree Stores Inc. v. Toyama Partners LLC*,
   875 F. Supp. 2d 1058 (N.D. Cal. 2012) ...............................................................12

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
   47 Cal. App. 4th 777 (1996) ..................................................................................9

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247 (2010) ..............................................................................12

*Eminence Healthcare, Inc. v. Centuri Health Ventures, LLC*,
   74 Cal. App. 5th 869 (2022) ................................................................................17

*Erlich v. Menezes*,
   21 Cal. 4th 543 (1999) .........................................................................................18

*Evanger's Dog & Cat Food Co. v. Env't Democracy Project*,
   2022 WL 180205 (C.D. Cal. Jan. 20, 2022) .........................................................6

*Fitbit, Inc. v. Laguna 2, LLC*,
   2018 WL 306724 (N.D. Cal. Jan. 5, 2018) ...........................................................7

*Gilead Sciences, Inc. v. Abbott Laboratories, Inc.*,
   2015 WL 1191129 (D. Del. Mar. 13, 2015) ..........................................................9

*Giles v. Town of Elsmere*,
   2022 WL 17826005 (Del. Super. Ct. Dec. 20, 2022) ..........................................20

*Golden v. Sound Inpatient Physicians Med. Grp., Inc.*,
   93 F. Supp. 3d 1171 (E.D. Cal. 2015)..................................................................14

*Gregory v. Albertson's, Inc.*,
   104 Cal. App. 4th 845 (2002) ..........................................................................................13

*Guz v. Bechtel Nat'l, Inc.*,
   24 Cal. 4th 317 (2000) ...............................................................................................17, 18

*In re Innovatio IP Ventures, LLC*,
   921 F. Supp. 2d 903 (N.D. Ill. 2013) ...............................................................................7

*JJD-HOV Elk Grove, LLC v. Jo-Ann Stores, LLC*,
   17 Cal.5th 256 (2024) ......................................................................................................18

*Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*,
   384 F. Supp. 2d 1334 (S.D. Iowa 2005) ...........................................................................6

*Key v. Qualcomm*,
   129 F.4th 1129 (9th Cir. 2025) ..............................................................................1, 10, 11

*Key v. Qualcomm Inc.*,
   No. 23-3354, D.I. 22.1 (9th Cir. Apr. 26, 2024) .............................................................12

*Kirchner v. Wyndham Vacation Resorts, Inc.*,
   580 F. Supp. 3d 57 (D. Del. 2022)...................................................................................20

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ...................................................................................................14

*Lamke v. Sunstate Equipment Co.*,
   387 F. Supp. 2d 1044 (N.D. Cal. 2004) .......................................................................2, 19

*Lite-Netics, LLC v. Nu Tsai Cap. LLC*,
   60 F.4th 1335 (Fed. Cir. 2023) ........................................................................................11

*Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*,
   2011 WL 678707 (D. Del. Feb. 18, 2011) .....................................................................5, 8

*Mariana v. Fisher*,
   338 F.3d 189 (3d Cir. 2003)................................................................................................5

*Martin Saturn of Ontario Inc. v. Subaru of Am. Inc.*,
   2023 WL 9417499 (C.D. Cal. July 21, 2023)...................................................................12

*Matsushita Elecs. Corp. v. Loral Corp.*,
   974 F. Supp. 345 (S.D.N.Y. 1997) .................................................................................5, 7

*Melea Ltd. v. Quality Models Ltd.*,
   345 F. Supp. 2d 743 (E.D. Mich. 2004)..............................................................................7

*Mooney v. Fife*,
    118 F.4th 1081 (9th Cir. 2024) ...................................................................................17

*Nationwide Biweekly Admin., Inc. v. Super. Ct.*,
    9 Cal. 5th 279 (2020) ...............................................................................................10

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
    190 F.3d 963 (9th Cir. 1999) .......................................................................................9

*Norcom Rsch., LLC v. Net2Phone Glob. Servs. LLC*,
    2023 WL 1098188 (3d Cir. 2023) ...............................................................................16

*Ocimum Biosolutions (India) Ltd. v. LG Chem. Ltd.*,
    2022 WL 3354708 (D. Del. July 31, 2022) ................................................................16

*Ohio v. Am. Express Co.*,
    585 U.S. 529 (2018) ...................................................................................................14

*Phila. Taxi Ass'n, Inc. v. Uber Techs., Inc.*,
    886 F.3d 332 (3d Cir. 2018) .......................................................................................13

*Pivotal Payments Direct Corp. v. Planet Payment, Inc.*,
    2015 WL 11120934 (Del. Super. Ct. Dec. 29, 2015) ................................................20

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)......................................................................................................8

*In re Qualcomm Litig.*,
    2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) .............................................................11

*Racine & Laramie, Ltd. v. Dep't of Parks & Rec.*,
    11 Cal. App. 4th 1026 (1992) .....................................................................................17

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
    732 F. Supp. 3d 1101 (N.D. Cal. 2024) .......................................................................6

*Reese v. Wal-Mart Assocs., Inc.*,
    2025 WL 472721 (E.D. Cal. Feb. 12, 2025)..............................................................10

*Reilly v. Apple Inc.*,
    578 F.Supp.3d 1098 (N.D. Cal. 2022) .......................................................................13

*Republican Nat'l Comm. v. Google LLC*,
    2024 WL 3595538 (E.D. Cal. July 31, 2024)............................................................14

*In re Revlimid & Thalomid Purchaser Antitrust Litig.*,
    2024 WL 2861865 (D.N.J. June 6, 2024) ....................................................................8

*Roberson v. Pocker,*
    2024 WL 2984026 (C.D. Cal. Apr. 3, 2024) .................................................................13

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.,*
    2 Cal. 5th 505 (2017) ....................................................................................................14

*Select Comfort Corp. v. The Sleep Better Store,*
    838 F. Supp. 2d 889 (D. Minn. 2012).............................................................................7

*Silberg v. Anderson,*
    50 Cal. 3d 205 (1990) ....................................................................................................8

*Simon & Simon, PC v. Align Tech., Inc.,*
    2020 WL 1975139 (D. Del. Apr. 24, 2020)...................................................................12

*Sonner v. Premier Nutrition Corp.,*
    971 F.3d 834 (9th Cir. 2020) .........................................................................................10

*Sosa v. DIRECTV, Inc.,*
    437 F.3d 923 (9th Cir. 2006) ...........................................................................................5

*In re Subpoena 2018R00776,*
    947 F.3d 148 (3d Cir. 2020)...........................................................................................11

*Sun Microsystems, Inc. v. Microsoft Corp.,*
    87 F. Supp. 2d 992 (N.D. Cal. 2000) ............................................................................13

*Sunrise Pharm., Inc. v. Vision Pharma, LLC,*
    2018 WL 11476075 (D.N.J. June 20, 2018)...............................................................6, 7

*Sweet St. Desserts, Inc. v. Chudleigh's Ltd.,*
    655 F. App'x 103 (3d Cir. 2016) .............................................................................1, 5, 7

*The Comedy Store v. Moss Adams LLP,*
    106 Cal. App. 5th 784 (2024) ........................................................................................17

*TriCoast Builders, Inc. v. Lakeview Loan Servicing, LLC,*
    2021 WL 248316 (Cal. App. Jan. 26, 2021)..................................................................15

*Trs. of Univ. of Pa. v. St. Jude Child.'s Rsch. Hosp.,*
    940 F. Supp. 2d 233 (E.D. Pa. 2013) ..............................................................................5

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.,*
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) ...........................................................................5

*United States v. Colgate & Co.,*
    250 U.S. 300 (1919).......................................................................................................12

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP,*
    540 U.S. 398 (2004) ..................................................................................................12

*Vox Network Sols., Inc. v. Gage Techs., Inc.,*
    2025 WL 929939 (N.D. Cal. Mar. 27, 2025) ..........................................................13

*Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.,*
    1997 WL 685334 (S.D.N.Y. Nov. 4, 1997) ..............................................................18

*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC,*
    814 F. Supp. 2d 1033 (S.D. Cal. 2011) ......................................................................8

*Williams v. Apple, Inc.,*
    2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) ........................................................10

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.,*
    601 F. Supp. 3d 625 (C.D. Cal. 2022) ......................................................................10

**Statutes**

10 Del. C. § 8106 ....................................................................................................................20

Cal. Civ. Code § 1638 ............................................................................................................17

Cal. Civ. Proc. Code § 425.16 ................................................................................................9

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

The Court should dismiss six of Qualcomm's eight asserted claims in the Second Amended Complaint ("SAC"), which would trim this case to the focused contract dispute the Court envisions. Qualcomm's tortious interference, California UCL, and implied covenant claims seek to punish Arm for asserting that Qualcomm breached its contractual promises, filing suit to enforce those promises, and speaking publicly about the litigation. These claims attack petitioning activity and speech protected by the *Noerr-Pennington* doctrine and the First Amendment: "[N]on-sham, pre-litigation threats of suit, demand letters, and communications about pending suits" are no basis for any valid cause of action. *Ancestry.com Operations, Inc. v. DNA Diagnostics Ctr., Inc.*, 2016 WL 3999315, at *5 (S.D. Ohio July 26, 2016); *see also Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 655 F. App'x 103, 110-11 (3d Cir. 2016); Part I. Yet Qualcomm seeks to hold Arm liable for precisely such conduct in an effort to bully Arm and others into silence when legitimate contract disputes arise and efforts to resolve the dispute short of litigation have failed.

Qualcomm's claims fail for additional reasons as well. Despite amending its complaint after Arm filed its previous motion to dismiss, Qualcomm's UCL claim still fails to explain why it needs the equitable remedies the UCL affords—the same ground on which Qualcomm successfully dismissed UCL claims earlier this year in *Key v. Qualcomm*, 129 F.4th 1129 (9th Cir. 2025)—and fails to allege Arm's conduct threatened an incipient antitrust violation or violated the spirit of any antitrust law. Part II.A. Qualcomm still alleges no independently "wrongful act" (meaning something actually barred by statute or other law), as required to bring tortious interference claims. Part II.B. As for the implied covenant claim, Arm seeks to dismiss only Qualcomm's new allegations that Arm supposedly failed to negotiate in good faith for a license to v10 of Arm's architecture and did not comply with its obligations under the parties' separate Technology License Agreement ("TLA"). Both allegations improperly seek to impose additional

contractual obligations "to which the parties did not agree," *Lamke v. Sunstate Equipment Co.*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004), and must be dismissed for that reason. Part IV.

That leaves Qualcomm's two new counts that Arm breached two express provisions of the TLA. Part III. One of those provisions, ███, requires Arm ███████████████████████ ████████████████████████████████████████████████ ██████████████████. The other provision, ████████████████████ ████████████████████. Qualcomm offers only conclusory allegations and legal conclusions in support of those breach claims, neither of which is enough to state a claim. Worse still, Qualcomm invents a made-up "constructive failure to license" theory that recasts licensing offers Qualcomm found too expensive into a complete failure to make an offer at all. This is a transparent attempt to rewrite the parties' agreed-upon ███████████████████ ████████████████████████████████████. Qualcomm cannot fundamentally change the parties' bargain more than a decade after the TLA was signed, and this Court should reject its attempt to do so as a matter of law now ██████████████████ ████████████████████████.

Counts III-VIII should be dismissed.

### NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF FACTS

**A.    The Original Arm-Qualcomm Nuvia Litigation**

Litigation between Arm and Qualcomm began almost three years ago: On August 31, 2022, Arm filed a complaint alleging that Qualcomm and its recently acquired subsidiary Nuvia breached certain provisions in the Architecture License Agreement ("ALA") Nuvia signed to gain access to Arm's proprietary instruction set architecture (the "Nuvia ALA"). *See generally* No. 1146 D.I. 1. The Nuvia ALA specified that Nuvia would not assign the ALA without Arm's prior consent. *Id.* Absent such consent, Nuvia could not transfer the ALA as part of any transaction in which a third

party acquired control of Nuvia. *Id.* Upon termination, Nuvia had an obligation to return or destroy any aspects of its CPU designs that were derived from the licensed Arm architecture, an obligation Arm contends Qualcomm assumed through its conduct. *Id.*

On October 30, 2024, the Court denied Qualcomm's and Arm's motions for summary judgment, holding that genuine issues of material fact remained for the jury. 10/30/2024 Hr'g Tr. 26:14-27:17. The Court held a four-day jury trial beginning on December 16, 2024, and the jury entered a verdict on December 20, 2024, in Qualcomm's favor on two questions but deadlocked on the remaining question. No. 1146 D.I. 571. The Court accepted the verdict as to these two questions and declared a mistrial on the remaining question. The Court is currently considering the parties' post-trial motions addressing the jury's verdict, No. 1146 D.I. 595, 597, as well as Qualcomm and Nuvia's post-trial brief regarding equitable defenses, D.I. 602.

## B.    Qualcomm's Second Amended Complaint In This Action.

This motion addresses Qualcomm's SAC in parallel litigation, which began April 18, 2024. Qualcomm originally filed this litigation on April 18, 2024, alleging additional claims related to its own asset license agreement with Arm (the "Qualcomm ALA"). On June 12, 2024, Arm moved to dismiss. On October 22, 2024, Arm sent Qualcomm a written notice re-asserting that Qualcomm materially breached its ALA by developing unlicensed products, and notifying Qualcomm that Arm would be entitled to terminate the Qualcomm ALA if Qualcomm did not cure this material breach. SAC ¶ 29. The letter was the subject of an article written by Bloomberg, which noted that the letter was part of the parties' ongoing "legal fight that began when Arm sued San Diego-based Qualcomm . . . for breach of contract and trademark infringement in 2022." *See* Ian King, Arm to Cancel Qualcomm Chip Design License in Feud Escalation, Bloomberg, https://www.bloomberg.com/news/articles/2024-10-23/arm-to-cancel-qualcomm-chip-design-license-in-escalation-of-feud (cited at SAC ¶ 33 n.11). The Court denied Arm's motion to dismiss

based on the assumption Qualcomm was "presumably going to amend [its complaint]." 10/30/2024 Hr'g Tr. at 40:10-12.

Qualcomm filed a First Amended Complaint ("FAC") on December 16, 2024. The FAC brought claims related to Arm's purported breach of the Qualcomm ALA, including claims for declaratory judgment (Count I), breach of contract (Count II), and breach of the implied covenant of good faith and fair dealing (Count III). The FAC also added tort claims for intentional interference with prospective economic advantage (Count IV), and negligent interference with prospective economic advantage (Count V), as well as a claim for violation of California's Unfair Competition Law (Count VI). Arm again moved to dismiss. *See* D.I. 47-48.

Qualcomm then moved for leave to file the SAC on March 27, 2025, after the parties had fully briefed Arm's motion to dismiss the FAC. D.I. 91. The Court granted leave on June 3, 2025. D.I. 134. In addition to the same six counts that were at issue in the FAC, the SAC added claims for "Breach of Section ██ of the QC TLA" (Count VII) and "Breach of Section ██ of the QC TLA" (Count VIII). These claims concern a TLA between Arm and Qualcomm, which Qualcomm says "authoriz[es] Qualcomm to make and sell products, including systems-on-a-chip ('SoCs') that use Arm's ready-made CPU designs." SAC ¶ 3.

## **ARGUMENT**

### I.     QUALCOMM'S CLAIMS ARE BARRED BY *NOERR-PENNINGTON* AND RELATED DOCTRINES (COUNTS III-VI).

Qualcomm's implied covenant, tortious interference, and UCL claims (Counts III-VI) attack Arm's speech about its claims in the original litigation and so should be dismissed under the *Noerr-Pennington* doctrine and related California litigation privileges. Each of those claims rest on the allegations that Arm "wrongfully assert[ed] that it has the right to terminate the QC ALA," allegedly "leak[ed] the Breach Letter to the media," and made "misleading and threatening

statements to Qualcomm's customers" about the original lawsuit and Qualcomm's alleged breaches of the ALA. SAC ¶¶ 184, 192, 206; *see generally id.* ¶¶ 136-155. Even if Qualcomm's allegations were true, such litigation-related conduct is not actionable.

A.    **The *Noerr-Pennington* Doctrine Bars Claims Based On Arm's Speech And Petitioning Activity.**

The *Noerr-Pennington* doctrine arises from "dual principles," including "the constitutional right to petition under the First Amendment and the importance of open communication in representative democracies." *Mariana v. Fisher*, 338 F.3d 189, 197 (3d Cir. 2003). The doctrine arose as a protection for "parties who petition governments for redress from claims arising in response to that petitioning," and has since been "extended … to include protection for citizens who petition for relief through the courts." *Trs. of Univ. of Pa. v. St. Jude Child.'s Rsch. Hosp.*, 940 F. Supp. 2d 233, 239-40 (E.D. Pa. 2013). The doctrine has been applied to bar numerous types of claims arising from litigation activity, including state-law tortious interference claims. *Id.*

*Noerr-Pennington* and the First Amendment protect not just litigation conduct, but also conduct "incidental" to protected litigation activity. *Sweet St. Desserts*, 655 F. App'x at 110-11. "[A]cts incidental to protected litigation—acts that are reasonably and normally attendant upon protected litigation, such as sending letters threatening court action—are entitled to immunity to the same extent as the related litigation." *Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997). Thus, courts routinely dismiss claims premised on speech related to litigation, including claims related to "demand letter[s]," "cease-and-desist letter[s]," and threats of suit. *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015); *Sweet St. Desserts*, 655 F. App'x at 111; *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934-38 (9th Cir. 2006); *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, 2011 WL 678707, at *2 (D. Del. Feb. 18, 2011); *Ancestry.com*, 2016 WL 3999315, at *5 ("threats of suit"). Qualcomm's

claims based on Arm sending Qualcomm the Breach Letter consequently fail as a matter of law.

Qualcomm's claims based on Arm sharing that letter with the media likewise challenge protected conduct. Attaching liability to steps to publicize legitimate legal claims risks chilling litigation conduct. Courts have thus extended *Noerr-Pennington* immunity to press releases about pending litigation. *Sunrise Pharm., Inc. v. Vision Pharma, LLC*, 2018 WL 11476075, at *3 (D.N.J. June 20, 2018); *Cap. Health Sys., Inc. v. Veznedaroglu*, 2017 WL 751855, at *13 (D.N.J. Feb. 27, 2017); *Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 384 F. Supp. 2d 1334, 1349 (S.D. Iowa 2005); *Aircapital Cablevision, Inc. v. Starlink Commc'ns Grp., Inc.*, 634 F. Supp. 316, 326 (D. Kan. 1986). Allegedly sharing a breach notice with the media is indistinguishable from issuing a press release for *Noerr-Pennington* purposes. And protecting those alleged communications is essential here, where the assertions in the letter Qualcomm finds objectionable—that Qualcomm breached the Qualcomm ALA so Arm has the right to terminate that agreement—repeat positions Arm staked out in public court filings the year before. *Compare* SAC Ex. A (Breach Letter), *with* No. 1146 D.I. 21 ¶ 250 (alleging "Qualcomm is materially breaching its ALA, giving Arm the right to terminate"); *see generally* No. 1146 D.I. 21 at 2, 37, 39, 41-42. Qualcomm cannot evade *Noerr-Pennington*'s protections for statements made in court filings by challenging Arm's decision to allegedly publicize its litigating position.

*Noerr-Pennington* equally protects Arm's letters to Qualcomm's customers. As a matter of law, parties cannot hold their litigation adversaries liable for tortious interference and similar claims merely for providing their view of the case to the party's customers. *See*, *e.g.*, *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1112-14 (N.D. Cal. 2024) (dismissing claims premised on communications to plaintiff's customers); *Evanger's Dog & Cat Food Co. v. Env't Democracy Project,* 2022 WL 180205, at *1, *4 (C.D. Cal. Jan. 20, 2022);

*Fitbit, Inc. v. Laguna 2, LLC*, 2018 WL 306724, at *10 (N.D. Cal. Jan. 5, 2018); *Sunrise*, 2018 WL 11476075, at *1; *Cap. Health Sys.*, 2017 WL 751855, at *13; *Ancestry.com*, 2016 WL 3999315, at *5; *In re Innovatio IP Ventures, LLC*, 921 F. Supp. 2d 903, 917-22 (N.D. Ill. 2013); *Select Comfort Corp. v. The Sleep Better Store*, 838 F. Supp. 2d 889, 891 (D. Minn. 2012); *Melea Ltd. v. Quality Models Ltd.*, 345 F. Supp. 2d 743, 758 (E.D. Mich. 2004) (same).

It makes no difference that Qualcomm views those customer communications as veiled threats. Qualcomm alleges that by "blitz[ing] Qualcomm's major customers with letters," Arm was "threatening" those customers with litigation if they used Qualcomm's products based on pre-acquisition Nuvia designs. SAC ¶ 1. Qualcomm elsewhere asserts Arm "suggest[ed] that customers could face legal jeopardy from using Qualcomm products," and stated that Arm would "protect what is rightfully [Arm's]." *Id.* ¶¶ 1, 135, 138. But, importantly, "threaten[ing] litigation" and "sending letters threatening court action" is protected under *Noerr-Pennington*. *Matsushita*, 974 F. Supp. at 359. As another court put it when dismissing tortious interference claims based upon Ancestry.com's cease-and-desist letter sent to the plaintiff's customer (Groupon), "*Noerr-Pennington* immunity has been extended to non-sham, pre-litigation threats of suit, demand letters, and communications about pending suits," and so Ancestry.com's "pre-litigation filing of a complaint with Groupon is protected by the *Noerr-Pennington* doctrine." *Ancestry.com*, 2016 WL 3999315, at *5; *see also Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983); *Select Comfort*, 838 F. Supp. 2d at 891, 900. So too here. Even if Arm *was* threatening Qualcomm's customers for using products incorporating pre-acquisition Nuvia designs, those threats would be an "objectively plausible effort to enforce rights" that are "protected under *Noerr–Pennington*." *Sweet St. Desserts*, 655 F. App'x at 110. Such speech could not form the basis for valid tortious interference, UCL, or other claims.

Qualcomm with good reason has not pled that Arm's conduct falls within *Noerr*'s narrow "sham" exception. That exception strips immunity from litigation conduct only when a lawsuit is "objectively baseless." *In re Revlimid & Thalomid Purchaser Antitrust Litig.*, 2024 WL 2861865, at *86 (D.N.J. June 6, 2024); *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993); *Cap. Health Sys.*, 2017 WL 751855, at *13 (extending "sham" exception to litigation-related press releases); *Ancestry.com*, 2016 WL 3999315, at *5 ("*Noerr-Pennington* covers a party's actions in sending cease-and-desist letters unless the threatened suit is a sham."). Plaintiffs seeking to invoke the exception "face[] 'an uphill battle,'" *In re Revlimid*, 2024 WL 2861865, at *86, and must "assert … facts demonstrating" that "th[e] litigation is objectively baseless," meaning that "no reasonable litigant could realistically expect success," *Magnetar*, 2011 WL 678707, at *2-3. Qualcomm cannot satisfy this high bar, particularly where Arm's claims in the prior suit survived summary judgment. No. 1146 10/30/2024 Minute Entry. Because Arm's alleged statements to Qualcomm, its customers, and the media fall well within *Noerr-Pennington*'s protections, they cannot form the basis for implied covenant, tortious interference, or UCL claims.

## B. The California Litigation Privilege And Anti-SLAPP Law Also Apply To Qualcomm's Claims.

California's litigation privilege also shields Arm's letter, the alleged publicizing of that letter, as well as any other letters to Arm's customers alerting them of the lawsuit. The "litigation privilege is … absolute in nature," *Silberg v. Anderson*, 50 Cal. 3d 205, 215 (1990), and protects not only statements made in litigation, but also "out-of-court statements 'to nonparties who have a substantial interest in the outcome of the pending litigation.'" *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1040-41 (S.D. Cal. 2011); *Cargill Inc. v. Progressive Dairy Sols.*, 2008 WL 2235354, at *6 (E.D. Cal. May 29, 2008) ("news release" "inform[ing] the recipients of the … claims asserted" protected); *Designing Health, Inc.*

*v. Erasmus*, 2001 WL 36239748, at *3-4 (C.D. Cal. Apr. 24, 2001) (similar). Both Arm's letter shared with Qualcomm and Arm's letters to customers were made during litigation. And even if Arm publicized the Breach Letter, that letter still accurately described Arm's litigation position. Such publications are protected under California law. *Cargill*, 2008 WL 2235354, at *6.

For many of the same reasons, California's Anti-SLAPP statute (Cal. Civ. Proc. Code § 425.16) forecloses Qualcomm's claims. California courts have confirmed that the protections of the Anti-SLAPP law overlap with those of the litigation privilege. *See Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 784 (1996). Here, the Anti-SLAPP law protects: (1) Arm's letters as writings regarding an issue subject to judicial review, (2) the related publication of the Breach Letter as a writing in connection with an issue of public interest, and (3) both the letter and publication as conduct in furtherance of the constitutional rights of petition and free speech. *See* Cal. Civ. Proc. Code §§ 425.16(e)(2), (3), (4).

As a court in this District has confirmed, California's Anti-SLAPP law permits defendants to bring a special motion to dismiss claims falling within its scope, *see Gilead Sciences, Inc. v. Abbott Laboratories, Inc.*, 2015 WL 1191129, at *3 (D. Del. Mar. 13, 2015), shifting the burden to the plaintiff to establish a probability it will prevail on its claims. Cal. Civ. Proc. Code § 425.16(b)(1); *see U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999). Given Qualcomm's failure to state a claim (discussed above), it cannot satisfy the higher burden imposed by the Anti-SLAPP law. *See Gilead Scis., Inc.*, 2015 WL 1191129, at *3.

## II.    QUALCOMM'S TORT CLAIMS SHOULD BE DISMISSED FOR ADDITIONAL REASONS.

### A.    Qualcomm's UCL Claim Fails (Count VI).

Qualcomm's UCL claim faces two other insurmountable problems. *First,* the UCL claim is procedurally improper. The UCL is an equitable statute, so Qualcomm "must establish that [it]

lacks an adequate remedy at law" in "the operative complaint." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Nationwide Biweekly Admin., Inc. v. Super. Ct.*, 9 Cal. 5th 279, 299 (2020). UCL claims therefore fail where plaintiffs do not "plead 'the basic requisites of … equitable relief' including 'the inadequacy of remedies at law.'" *Williams v. Apple, Inc.*, 2020 WL 6743911, at *10 (N.D. Cal. Nov. 17, 2020). The SAC does not include those necessary allegations.

Qualcomm instead offers conclusory platitudes. Qualcomm asserts that it "requires equitable relief … because it lacks adequate remedies at law to address Arm's anticompetitive and unfair actions, which are ongoing and which have caused or threaten to cause Qualcomm to suffer significant harm." SAC ¶ 212. But a "conclusory allegation" that a plaintiff "do[es] not have an adequate remedy" is "insufficient." *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 769 (C.D. Cal. 2022). Parties must instead "*explain why* money damages are not [] adequate." *Id.* (emphasis added); *Reese v. Wal-Mart Assocs., Inc.*, 2025 WL 472721, at *8 (E.D. Cal. Feb. 12, 2025). Qualcomm says not a word about why the damages it demands are insufficient such that it also needs restitution or an injunction.

To the extent that Qualcomm asserts equitable relief is necessary because Arm's actions are "ongoing," that too is insufficient without more explanation. Courts routinely dismiss UCL claims seeking prospective injunctive relief in similarly conclusory terms, holding "that Plaintiffs seek prospective injunctive relief … does not exempt this case from *Sonner*," particularly where "none of [*Sonner*'s] reasoning suggests that it is limited to claims for restitution for past harms and not to purported future or ongoing harms." *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1121 (C.D. Cal. 2021); *Adams v. Cole Haan, LLC*, 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020). These requirements cannot have taken Qualcomm by surprise. It successfully dismissed UCL claims that did not adequately allege irreparable harm in *Key*, 129 F.4th at 1142. The same

pleading problems that required dismissal in *Key* require dismissal here.

The procedural problems with Qualcomm's UCL claim do not end there. Qualcomm does not even have Article III standing to seek injunctive relief based on Arm sending the Breach Letter, purportedly sharing that letter with the media, or Arm's alleged communications with Qualcomm's customers. Those are all backward-looking allegations unsupported by any claim of "any real or immediate threat that [Qualcomm] will be wronged again" by similar communications. *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983); *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 365 (E.D. Pa. 2023) (granting dismissal where future harm was "wholly conjectural"). A more sweeping injunction against all media or customer communications about the litigation would be an unconstitutional prior restraint. *See In re Subpoena 2018R00776*, 947 F.3d 148, 155-56 (3d Cir. 2020); *see also Lite-Netics, LLC v. Nu Tsai Cap. LLC*, 60 F.4th 1335, 1343 (Fed. Cir. 2023) (vacating prior restraint against "communicating with others concerning one's patent rights").

*Second*, Qualcomm does not plausibly allege a substantive UCL violation. Qualcomm primarily bases its UCL count under the statute's "unfair" prong. *See* SAC ¶ 206. But to plead an "unfair" UCL claim in a dispute between sophisticated corporations, Qualcomm must allege that Arm's conduct, "[1] threatens an incipient violation of an antitrust law, or [2] violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [3] otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cell. Tel. Co.*, 20 Cal. 4th 163, 187 (1999); *In re Qualcomm Litig.*, 2017 WL 5985598, at *7 (S.D. Cal. Nov. 8, 2017). None of Qualcomm's laundry list of supposedly unfair acts amounts to an incipient antitrust violation, violates the "spirit" of the laws, or threatens competition.

For example, Qualcomm alleges that Arm acted unfairly by "withholding deliverables" it must provide ███████████████████ by "refusing to negotiate license terms with

Qualcomm ██████████," and by "wrongfully asserting that it has the right to terminate the QC ALA." SAC ¶ 206. Those allegations assert that Arm breached its contracts with Qualcomm, but corporate plaintiffs may not bootstrap contract claims into UCL violations. *See, e.g.*, *Martin Saturn of Ontario Inc. v. Subaru of Am. Inc.*, 2023 WL 9417499, at *8 (C.D. Cal. July 21, 2023); *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012).

It does not matter that Arm supposedly took those steps as part of an "attempt[] to cut off Qualcomm's access to the ubiquitous Arm ISA." SAC ¶ 207; *see also id.* ¶ 208 (alleging natural consequence of a refusal to deal). As Qualcomm itself has argued, "an antitrust duty to deal with" or license others is "far outside the mainstream of antitrust law." Qualcomm Answering Br., *Key v. Qualcomm Inc.*, No. 23-3354, D.I. 22.1 at 30 (9th Cir. Apr. 26, 2024); *see also Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407-411 (2004); *Simon & Simon, PC v. Align Tech., Inc.*, 2020 WL 1975139, at *3-6 (D. Del. Apr. 24, 2020). It is completely beyond the reach of antitrust law here given Qualcomm has disclaimed any argument that Arm is attempting to exercise monopoly power. *See* SAC ¶ 207 (striking monopoly allegation). "[I]n the absence of any purpose to create or maintain a monopoly," antitrust law "does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919); *Trinko*, 540 U.S. at 408. For that reason, California courts have consistently held a purported refusal to deal "is neither unlawful nor 'unfair'" as a matter of law for purposes of the UCL. *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 367 (2001); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 254 (2010); *Beverage v. Apple Inc.*, 101 Cal. App. 5th 736, 749-50, 753-56 (2024).

Arm's other alleged acts likewise do not violate the spirit of the antitrust laws. Allegedly

"leaking the Breach Letter to the media" and making statements about ongoing litigation "to Qualcomm's customers" does not implicate the antitrust laws. SAC ¶¶ 206-207. The policy and spirit behind the antitrust laws is "to protect *competition*, not *competitors*." *Phila. Taxi Ass'n, Inc. v. Uber Techs., Inc.*, 886 F.3d 332, 338 (3d Cir. 2018) (emphasis in original). Qualcomm nowhere explains how this conduct broadly undermines a competitive market or harms any alleged competitor other than Qualcomm. Qualcomm's remaining allegations, including almost every allegation of harm in ¶ 208, offer conclusions divorced from any factual allegations that make those conclusions plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

All of Qualcomm's allegations about allegedly unfair conduct suffer from two other fatal flaws. Qualcomm "does not identify an antitrust law or a policy or spirit of such a law." *Roberson v. Pocker*, 2024 WL 2984026, at *10 (C.D. Cal. Apr. 3, 2024) (granting dismissal); *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 856 (2002) (affirming dismissal where "complaint allege[d] that Albertson's acted with a motive to secure an advantage over competitors" but did "not state a theory of unfair practice based on violation of specific anti trust statutes or policies of anti trust legislation"). Separately, Qualcomm fails to plead facts establishing the relevant market in which Arm's conduct allegedly threatens competition. Courts have dismissed UCL claims in the past for not offering a market definition. *See, e.g.*, *Racek v. Rady Child.'s Hosp. of S.D.*, 2012 WL 2947881, at *6 (Cal. App. July 20, 2012); *Sun Microsystems, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 992 (N.D. Cal. 2000); *Vox Network Sols., Inc. v. Gage Techs., Inc.*, 2025 WL 929939, at *5 (N.D. Cal. Mar. 27, 2025); *Reilly v. Apple Inc.*, 578 F.Supp.3d 1098, 1106-11 (N.D. Cal. 2022) (same where plaintiff alleged only implausible market). After all, "without a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy competition." *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018).

Qualcomm separately alleges that Arm's conduct violates the UCL's "unlawful" prong, but its argument is circular. SAC ¶ 209. Qualcomm contends Arm's conduct is unlawful because it tortiously interfered with Qualcomm's economic advantage, *id.*, and simultaneously contends Arm's conduct is wrongful for purposes of that tort because the conduct violates the UCL. Such circular reasoning cannot satisfy the elements of either claim. Qualcomm's UCL claim—and its tort claims—thus rises and falls with the allegations that Arm acted unfairly. Those allegations, as discussed above, are insufficient as a matter of law.

### B. Qualcomm's Intentional And Negligent Tortious Interference Claims Fail (Count IV-V).

To plead intentional interference with prospective economic advantage, Qualcomm must allege "intentionally wrongful acts designed to disrupt the relationship." *See Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017). This element requires "independently wrongful" conduct, defined as conduct "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1159 (2003). Even if a plaintiff alleges some sort of interference with economic advantage, courts dismiss intentional interference claims where the plaintiff still does not allege conduct "wrongful by some legal measure," *Golden v. Sound Inpatient Physicians Med. Grp., Inc.*, 93 F. Supp. 3d 1171, 1178 (E.D. Cal. 2015), or that the conduct "violated any other law, which is a necessary element of intentional interference with economic relations," *Republican Nat'l Comm. v. Google LLC*, 2024 WL 3595538, at *1 (E.D. Cal. July 31, 2024).

Qualcomm has already conceded that breach-of-contract does *not* satisfy the independently wrongful-acts requirement. D.I. 64 at 13; *Block v. eBay, Inc.,* 2012 WL 1601471, at *5 (N.D. Cal. May 7, 2012). Allegations that Arm leaked the Breach Letter or made statements to customers, SAC ¶ 192, do not show violations of "other law," particularly where Qualcomm fails to plead

14

UCL claims and where that conduct is protected by *Noerr-Pennington*. Qualcomm's negligent tortious interference claim fails for the same reason: Qualcomm fails to allege the required "act that is wrongful apart from the interference itself." *See TriCoast Builders, Inc. v. Lakeview Loan Servicing, LLC*, 2021 WL 248316, at *6 (Cal. App. Jan. 26, 2021).

## III.    QUALCOMM'S TLA CONTRACT CLAIMS SHOULD BE DISMISSED.

The SAC adds two new counts alleging that Arm breached its 2013 Technology License Agreement ("TLA") with Qualcomm. This agreement governs licenses to "Arm's off-the-shelf cores, referred to as Arm Implementation Cores." SAC ¶ 103. Section ▮ of the TLA includes ▮



Ex. 1 (TLA) ▮ SAC ¶ 104.[1] Arm must then ▮

SAC ¶ 105. A separate provision of the TLA provides ▮

. TLA ▮ ; SAC ¶ 106.

Qualcomm contends that Arm breached ▮ when Qualcomm asked to renew its license to three Arm implementation cores. Neither theory states a plausible claim that

---

[1]    The Court may consider the text of the Qualcomm TLA because the TLA is "*integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Arm breached the TLA.

### A.    Qualcomm Fails To Allege A Breach Of ████ (Count VII).

Qualcomm fails to plausibly allege that Arm breached ███████████ ████████████████████. Qualcomm acknowledges Arm made an offer to license the ████████████████, SAC ¶¶ 117, 215, but in several places offers a one-sentence allegation that the terms Arm offered ███████████████ █████████ SAC ¶¶ 119, 215. This is precisely the type of "conclusory" allegation that Rule 8 does not allow, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ocimum Biosolutions (India) Ltd. v. LG Chem. Ltd.*, 2022 WL 3354708, at *6 (D. Del. July 31, 2022). The allegation recites the conclusion Qualcomm wants a jury to reach "devoid of further factual enhancement" that makes its accusation plausible. *Iqbal*, 556 U.S. at 678 (quotations omitted); *Norcom Rsch., LLC v. Net2Phone Glob. Servs. LLC*, 2023 WL 1098188, at *3-4 (3d Cir. 2023). Qualcomm does not identify ███████████████████████████████. Qualcomm does not describe ████████████. Qualcomm does not offer any other factual allegations ████████████████████████████████████████ ████████████████████████████████. Rule 8 "does not unlock the doors of discovery" based on such threadbare allegations that Arm breached its contractual obligations. *Iqbal*, 556 U.S. at 678-79.

Qualcomm cannot overcome this pleading problem by labeling Arm's offer "so unreasonable" that it amounted to "a constructive failure to license." SAC ¶ 117. ██████ ████████████████████████████ ███████████████████ ████████████████████████████████████ ████████████████████. TLA ████. Qualcomm received what it bargained for if Arm's offer complies with those terms, no matter how "commercially non

feasible," "unrealistic," or "exorbitant" Qualcomm finds Arm's offer. SAC ¶¶ 118, 216. A viable claim that Arm's offer breached ███ thus requires a plausible allegation that Arm's offer ████████████████████████—an allegation missing from Qualcomm's complaint.

There is no basis for reading an additional requirement that an offer must satisfy an amorphous "commercially reasonable" or ████████ standard regardless of whether ████████ ████████. The clear contractual language in ████ imposes no such requirement, and "a court may not alter a contract, rewrite its clear terms, or make a new contract for the parties." *The Comedy Store v. Moss Adams LLP*, 106 Cal. App. 5th 784, 793-94 (2024) (cleaned up). Rather, courts must "enforce [an] unambiguous agreement as written rather than rewriting it to contain limitations the parties did not express," like the "commercially reasonable" term Qualcomm tries to read into ████ of the TLA. *Eminence Healthcare, Inc. v. Centuri Health Ventures, LLC*, 74 Cal. App. 5th 869, 880 (2022); *see* Cal. Civ. Code § 1638; *Mooney v. Fife*, 118 F.4th 1081, 1099 (9th Cir. 2024). Moreover, Arm is not aware of any California case recognizing a "constructive failure to license" theory of breach in a commercial contract between two companies.

The implied covenant of good faith cannot fill that gap. The implied covenant "assure[s] compliance with the express terms of the contract" and "cannot be extended to create obligations not contemplated in the contract." *Racine & Laramie, Ltd. v. Dep't of Parks & Rec.*, 11 Cal. App. 4th 1026, 1032 (1992). It "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000) (emphasis in original). Assuming ████ even applies, unless Arm ████████████████████████████████████, an accusation Qualcomm has not sufficiently alleged in the complaint, Qualcomm again received the benefits it contracted for even if it strongly dislikes the licensing terms Arm offered. "Nothing in the duty of good faith

requires that parties to a negotiation propose only such terms as the other party is happy with." *Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*, 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997); *see also All. Atlantis Releasing Ltd. v. Bob Yari Prods.*, 2010 WL 1525687, at *12 (C.D. Cal. Apr. 12, 2010). Imposing this additional duty to offer what Qualcomm views as reasonable or good faith terms on top of the protections ███ already provides would impermissibly "impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz*, 24 Cal. 4th at 350.

Imposing the implied duties Qualcomm asserts would be especially problematic here because Qualcomm intends to use those duties to alter the parties' agreed-upon remedies. If a court determines Arm charged excessive royalties, ████████████████████████████████ ████████████████████████████████████████████████████████████. TLA ███. Qualcomm agreed this would be ████████████████████████████ ████████████████████████. TLA ███. By framing Arm's supposedly "exorbitant" licensing proposal as a constructive failure to make an offer, Qualcomm wants ██████████ ████████████████████████████████, SAC ¶¶ 118, 125-127, 219—█████████████████████████████. *See* TLA ██████ (████████████████████████████████████████); ████ ████████████████████████████████████████ ██████████████ Nothing in principle or precedent permits Qualcomm to use the implied covenant or a made-up "constructive failure to license" theory to fundamentally alter the parties' carefully crafted remedial framework. *See, e.g., JJD-HOV Elk Grove, LLC v. Jo-Ann Stores, LLC*, 17 Cal.5th 256, 267 (2024); *Erlich v. Menezes*, 21 Cal. 4th 543, 553 (1999).

**B.    Qualcomm Fails To Allege A Breach Of ████ (Count VIII).**

The Court should similarly dismiss Qualcomm's claim that Arm breached ████ of the

Qualcomm ALA, which Qualcomm asserts obligated Arm ███████████████ ███████████████████████████████████████ SAC ¶ 120. Qualcomm asserts in half a sentence that Arm ██████████████████████████████████ SAC ¶ 223, but does not allege what this means—Qualcomm nowhere describes what ████████ ████████ ██████████████████████████████████████████ █████████████████ Qualcomm's conclusory breach allegations are again "devoid of [] factual enhancement" and should be dismissed. *Iqbal*, 556 U.S. at 678 (quotations omitted).



## IV.    THE IMPLIED COVENANT CLAIM SHOULD BE DISMISSED (COUNT III).

Qualcomm offers a grab-bag of theories for how Arm breached the implied covenant of good faith and fair dealing. All of those theories are flawed, but Arm seeks to dismiss only Qualcomm's new allegations in the SAC that: (1) Arm violated the implied covenant of good faith and fair dealing by not offering Qualcomm a license to the v10 architecture and (2) failed to provide licensing proposals required under the TLA. SAC ¶¶ 128-133, 184. California courts hold that, "[t]o the extent an implied covenant cause of action seeks to impose limits beyond those to which the parties actually agreed, the claim is invalid." *Lamke v. Sunstate Equip. Co.*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004). That is precisely what Qualcomm attempts to do here.

The Qualcomm ALA expressly spells out ██████████████████████ ███████████████████. If Qualcomm ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ALA ████████. Qualcomm does not allege that Arm breached that provision (*see* SAC ¶¶ 173-180), so it apparently seeks to impose obligations beyond those the contract expressly requires. But the implied covenant does not permit Qualcomm to stack an implied good-faith obligation on top of ██████████████████████ the Qualcomm ALA already imposes. *See, e.g., Deerpoint Grp.,*



*Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1237 (E.D. Cal. 2018).

Qualcomm in any event waited too long to assert that Arm failed to negotiate in good faith. Delaware supplies the statute of limitations here. *See Kirchner v. Wyndham Vacation Resorts, Inc.*, 580 F. Supp. 3d 57, 63 (D. Del. 2022); *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2015 WL 11120934, at *3 (Del. Super. Ct. Dec. 29, 2015). It imposes a three-year statute of limitations for both contract and implied covenant claims. *See* 10 Del. C. § 8106; *Giles v. Town of Elsmere*, 2022 WL 17826005, at *11 (Del. Super. Ct. Dec. 20, 2022). Here, Qualcomm alleges Arm breached the implied covenant by not responding to a May 20, 2020, email requesting a license to v10 of the Arm architecture. SAC ¶¶ 132-33, 184. Qualcomm then waited until April 2024—far outside the three-year limitations period—to sue Arm and did not assert Arm's silence breached the implied covenant until its SAC filed almost a year later, in March 2025. *See* D.I. 1. Qualcomm's UCL allegations based on this same conduct are time-barred for the same reason. *See Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 182 F. App'x 994, 996, 999-1000 (Fed. Cir. 2006) (applying 10 Del. C. § 8106 to unfair competition claims).

That leaves Qualcomm's allegation that Arm breached the implied covenant by "fail[ing] to provide licensing proposals … in violation of provisions of the QC TLA." SAC ¶ 184. This alleged violation of the implied covenant is on its face duplicative of Qualcomm's TLA breach claims. *See* SAC ¶¶ 213-226 (Counts VII and VIII). That is reason enough to dismiss, but this implied covenant claim also fails as a matter of law for the reasons discussed on pp. 17-18.

## CONCLUSION

For the reasons discussed above, the Court should dismiss Counts III-VIII with prejudice.

Dated: June 17, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
gregg.locascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650)813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

 */s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

# Exhibit 1
## Redacted in Its Entirety

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 17, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
ejmorgan@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*