IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED,<br>a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>a Delaware corporation, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) C.A. No. 24-490 (MN) |
| v. | )<br>)<br>) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br>) ▮▮ |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>a U.K. corporation, | )<br>) REDACTED - PUBLIC VERSION |
| Defendant. | )<br>) |

**PLAINTIFFS' NOTICE OF RULE 30(b)(6) DEPOSITION OF DEFENDANT**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm") by and through their undersigned counsel, will take the deposition upon oral examination of Defendant Arm Holdings PLC, formerly known as Arm Ltd. ("Arm"), on the topics set forth in the attached Schedule A, through one or more of its officers, directors, or managing agents, or other persons designated by Arm to testify on its behalf. The deposition will commence at 9:00 AM Eastern Time on July 11, 2025, at the law offices of PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, 1285 Avenue of the Americas, New York, NY 10019-6064, or at such other place, date, or time as shall be agreed upon by the parties or ordered by the Court.

The deposition shall be taken upon oral examination before a notary public or other person authorized by law to administer oaths and shall be recorded stenographically and by audio or video tape, and will be conducted pursuant to the provisions of the Federal Rules of Civil Procedure for purposes of discovery, trial, and any other use allowed by law. The deposition will continue from day to day until completed. Some or all of the deposition testimony may involve real-time

computer connection between the deposition taker and court reporter using software such as "LiveNote."

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Arm shall designate one or more officers, directors, managing agents, employees, or other representatives to testify on its behalf to matters known or reasonably available to Arm regarding the topics listed herein. Qualcomm requests that Arm provide the name(s) of the deponent(s) and the topic(s) for which each deponent is designated no later than seven (7) days before the deposition.

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
S. Conrad Scott
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

June 13, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

2

## SCHEDULE A

## DEFINITIONS

Unless otherwise indicated, the following definitions shall apply.

1. "Action" means the above-captioned action.

2. "ACK" means Arm's Architecture Compliance Kit or Arm's Architecture Validation Suite or Arm's Architecture Compliance Suite.

3. "ALA" means Architecture License Agreement, including all amendments and annexes to any such agreement.

4. "Answer" means any answer filed by Arm in response to Qualcomm's Second Amended Complaint, D.I. 137.

5. "ARM Architecture Reference Manual" means the ARM Architecture Reference Manual for A-profile architecture released by ARM.

6. "█████████" means "█████████" as defined in █████████ of the Qualcomm ALA, █████████ of the Qualcomm █████████, or █████████ of the Qualcomm █████████.

7. "Concerning" is used in the broadest sense of the term and shall mean concerning, relating to, referring to, in connection with, describing, evidencing, constituting, containing, reflecting, constituting a basis for, commenting upon, mentioning, supporting, modifying, contradicting, disproving or criticizing.

8. "CPU" means the central processing unit that functions as the primary component of a computer and other electronics and serves as the core component of the device.

9. "Plaintiffs" means, collectively, Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc., and their principals, employees, representatives, agents, and officers.

10. ███████ means the definition of ███████ as set forth in ███████ of the Qualcomm ALA.

11. "ISA" means Arm's A-Profile Instruction Set Architecture.

12. "OOB" means Arm's Out of Box tests.

13. "Defendant," "ARM," "you," and "your" mean Defendant Arm Holdings PLC and its predecessors, successors, affiliates, subsidiaries, parents, assignees, joint venturers, partners, principals, employees, representatives, agents, officers, trustees, directors, attorneys, and all other persons or entities acting or purporting to act on their behalf.

14. "SoC" means "Systems-on-a-Chip," which are integrated circuits used in computers and other electronics that combine many elements of a computer system into a single chip.

15. "TLA" means Technology License Agreement, including all amendments and annexes to any such agreement.

16. "Third Party" or "Third Parties" means any Person other than Plaintiffs and Defendant, as defined in the foregoing paragraphs.

17. ███████ means the definition of ███████ as set forth in ███████ of the Qualcomm ALA.

18. "Linaro" means Linaro Ltd., Linaro Inc., Linaro Sweden, and their predecessors, successors, affiliates, subsidiaries, parents, assignees, joint venturers, partners, principals, employees, representatives, agents, officers, trustees, directors, attorneys, and all other Persons or entities acting or purporting to act on their behalf.

19. "Linaro Core Member" means any member organization of Linaro, as defined in ███████.

4

20. "Linaro Next" means your proposal discussed at the April 3, 2025 Linaro Limited board meeting regarding the restructuring of Linaro, or any drafts or other versions of that proposal, whether or not they were given the same name.

21. As used in these requests, the singular shall include the plural, and the past tense shall include the present tense, and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the word "all" shall mean "any and all"; the word "including" shall mean "including, without limitation," so as to be most inclusive.

## TOPICS

Plaintiffs will take the recorded deposition of Defendant by a person or persons designated pursuant to Federal Rule of Civil Procedure 30(b)(6), concerning the following matters:

1. Arm's Answer and any defenses or counterclaims asserted by Arm;

2. Arm's negotiations of any license agreements, including ALAs, TLAs, and any annexes or amendments thereto, since January 1, 2019, including Arm's negotiation of any such license agreement regardless of whether such license agreement was ultimately executed;

3. The Qualcomm ALA, including, without limitation:

    a. The drafting, negotiation, interpretation, and construction of the Qualcomm ALA and any amendments or annexes thereto,

    b. Arm's understanding of the technologies covered or intended to be covered by the term "████████," as defined at ████████████ of the Qualcomm ALA,

    c. Discussion of the term "████████" as defined at ████████████ of the Qualcomm ALA at Arm, including discussions regarding whether future architecture versions beyond ██ are encompassed by the definition,

    d. Arm "▇▇▇▇," including the technology and deliverables included therein, as that term is used in Arm's ALAs, and sections governing verification, delivery, support, and any remedies for failure to deliver ▇▇▇▇▇▇ in any Third Party ALAs,

    e. ▇▇▇▇▇▇ licensed under the Qualcomm ALA, including but not limited to the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, including development timelines, responsible individuals, related documentation, items included in packages available for download, and decisions related to the ▇▇▇▇▇▇ design and delivery,

    f. Support provided by Arm to Qualcomm ▇▇▇▇▇▇▇▇.

4. Arm's withholding from Qualcomm, including without limitation,

    a. Arm's withholding of ACK patches or OOBs, and

    b. Arm's withholding from Qualcomm of any technology, documentation, support, verification, products, or "▇▇▇▇" or "▇▇▇▇▇▇," as those terms are defined in the Qualcomm ALA and Annexes.

5. Arm's efforts to terminate the Qualcomm ALA, including without limitation,

    a. Arm's decision to assert that Qualcomm was in breach of the ALA, including the timing and circumstances of that decision, and

    b. Arm's communications with and retention of any public relations firms in relation to the Qualcomm ALA.

6. The Qualcomm TLA, including, without limitation, the drafting, negotiation, interpretation, and construction of the Qualcomm TLA and any amendments or annexes thereto;

7. Arm's ALAs with third parties, including, without limitation:

   a. The drafting, negotiation, interpretation, and construction of Arm's ALAs with third parties and any amendments or annexes thereto,

   b. Negotiations or discussions with third-party ALA licensees regarding Arm v9, and

   c. Negotiations or discussions with third-party ALA licensees regarding Arm v10, including any agreements to license v10 by any Third Party;

8. Arm's TLAs with third parties, including, without limitation:

   a. The drafting, negotiation, interpretation, and construction of the TLAs and any amendments or annexes thereto, and the pricing of those TLAs,

   b. Complaints or other feedback from Arm's customers relating to the licensing or pricing of ▮▮▮▮▮▮▮ offered under its TLAs or the peripheral IP offered under the same, or the support provided under those TLAs, and

   c. Arm's policies and practices regarding TLA licensing offers and annex renewal offers, including the timing and pricing considerations thereof;

9. Arm licenses, other than TLAs, whereby Arm licenses ▮▮▮▮▮▮▮, including:

   a. Arm's evaluation licenses or "Limited Use Licenses," including how Arm determines whether to provide those licenses and Qualcomm's request for an evaluation license for CPUs codenamed "▮▮▮▮" and "▮▮▮▮";

      b. Agreements licensing ▮▮▮▮▮▮ codenamed ▮▮▮▮▮▮ and/or ▮▮▮, including licensing fee and royalty information;

10. Delivery of architecture errata for ▮▮▮▮▮▮ to Arm partners, including whether it was withheld from partners;

11. Error corrections, bug fixes, ▮▮▮ to the ▮▮▮▮▮▮, ▮▮▮▮▮▮, modifications, maintenance releases, updates, corrections, bug fixes, and improvements or enhancements to the ▮▮▮▮▮▮ licensed by Qualcomm that was released or distributed (internally or otherwise) since June 1, 2022;

12. Complaints or other feedback from Arm customers regarding Arm's delivery or withholding of deliverables (including ACK patches), or support and maintenance, as those terms are defined in Arm's ALAs;

13. Qualcomm's ACK and OOB tests, and any patches thereto;

14. ACKs, ACK patches, and OOB tests provided to partners other than Qualcomm on or after June 1, 2022, including dates of delivery, identity of partners, and information or documentation contained in the packages provided to the partners;

15. The release and delivery of the ACK, OOB tests, and patches generally to ALA partners, including but not limited to how Arm determines when a partner should receive the aforementioned items and Arm's development efforts and the resources devoted to those efforts;

16. Arm's licensing and pricing for (a) its ▮▮▮▮▮▮, and (b) peripheral IP offered under TLAs, including but not limited to ▮▮▮▮▮▮ ▮▮▮;

17. Arm's decision not to participate in the verification of Qualcomm's custom CPUs, including:

    a. Arm's decision to withhold any and all licenses, information, documentation, deliverables, technology, and support from Qualcomm on or after June 1, 2022, including, who was responsible for that decision (or decisions), and

    b. Qualcomm's notices of failure to deliver, sent to Arm on November 3, 2022, and December 5, 2022, and Arm's responses thereto;

18. Qualcomm's April 2024 requests to renew its licenses for ▮▮▮ codenamed "▮▮▮" and ▮▮▮ codenamed "▮▮▮," including Arm's decision not to respond to those requests;

19. Qualcomm's August 2024 request to renew its license for ▮▮▮ codenamed "▮▮▮," including Arm's response and actions taken in response, and Arm's decision not to respond to Qualcomm's request;

20. Arm's offers to Qualcomm for ▮▮▮ codenamed "▮▮▮," ▮▮▮ codenamed "▮▮▮," and ▮▮▮ codenamed "▮▮▮," including but not limited to efforts to ▮▮▮, Arm's analysis of impact to Arm revenues if Qualcomm accepted those offers and Arm's analysis of impact to Qualcomm if Qualcomm accepted those offers;

21. Qualcomm's notices of Arm's breach of ▮▮▮ and ▮ of the Qualcomm TLA, sent to Arm on September 20, 2024, and September 27, 2024, and Arm's responses thereto;

22. Arm's offers to Qualcomm to license ▮▮▮ codenamed "▮▮▮," ▮▮▮ codenamed "▮▮▮," and ▮▮▮ codenamed "▮▮▮," post-dating Arm's October 23, 2024 letter to Qualcomm, including but not limited to the pricing and non-financial terms of the offers;

23. Arm's Technical Advisory Board Meetings and Arm Partner Meetings, including topics discussed, attendees, materials distributed, and any improvements Qualcomm suggested for Arm's off-the-shelf TLA cores or the Arm Architecture, and Arm's actions;

24. Arm's response or any action taken in response to Qualcomm's May 20, 2020 email electing to extend the ▮▮▮▮ of the Qualcomm ALA and to negotiate the terms of the extension, including any decision not to respond;

25. Arm's current and future business plans for licensing Arm's architecture, technology, and other intellectual property;

26. Arm's development of and pricing strategy for v9 of the Arm ISA or Arm-developed cores containing ▮▮▮▮, including but not limited to the rationale for any price increase over prior versions of the Arm ISA;

27. Arm's development of and pricing strategy for v10 of the Arm ISA or Arm-developed cores containing ▮▮▮▮, including but not limited to the rationale for any price increase over prior versions of the Arm ISA;

28. Inquiries or requests made by Qualcomm to Arm regarding the Arm's development of v10 of the Arm ISA;

29. Arm's  products, including but not limited to Arm's negotiations with Qualcomm concerning

those products, Arm's pricing strategy for its those products, and Arm's licensing of those products to third parties;

30. Arm's relationship with Qualcomm or Qualcomm's licensees, including Qualcomm's ALA;

31. Arm's analysis of potential competition with Qualcomm, including:

    a. Arm's analyses of Qualcomm's CPUs and systems-on chips, including discussions with third parties regarding the same;

    b. Arm's communications with and retention of any public relations firms in relation to Qualcomm's reputation and ability to compete in the market,

    c. Arm's analysis of Qualcomm customers, including which customers could become Arm customers, and

    d. Arm's efforts to impede Qualcomm's ability to develop custom CPUs, including but not limited to the cessation of support of deliverables and changes made to the pricing and terms of Arm's agreements with Qualcomm for peripheral TLA products that are used in Qualcomm's custom CPUs;

32. Arm's October 22, 2024 letter to Qualcomm alleging that Qualcomm is in material breach of the QC ALA, including:

    a. the reasons for the sending of that letter and the facts and circumstances surrounding any investigation performed relating to the allegations in the letter;

    b. the reasons for the timing of that letter,

    c. all third parties that Arm shared the letter with or otherwise informed of Qualcomm's purported breach,

    d. the circumstances surrounding the sharing of the letter,

11

e. Arm's communications with third parties concerning the claims in its October 22, 2024 letter,

f. Arm's communications with the press, including but not limited to communications with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ concerning Arm's October 22, 2024 letter,

g. Discussions with Morrison & Foerster concerning Arm's October 22, 2024 letter ▇▇▇▇▇▇▇▇▇▇▇▇,

h. Arm's decision to speak to Bloomberg about Arm's October 22, 2024 letter, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇,

i. Arm's statement in its response to Qualcomm's Second Interrogatory that it "did not send its October 22 Notice to any third-party companies or customers," and

j. Arm's communications with all Third Parties, including but not limited to ▇▇▇▇▇▇▇▇, regarding the Breach Letter or this Action;

33. Arm's communications with third parties regarding the claims in Qualcomm's Complaint, including:

12

a. Arm's communications with third parties concerning Qualcomm's future business relationship with Arm, including but not limited to Qualcomm's ability to license Arm technology,

b. SoftBank Group Corp.'s communications with Arm concerning Qualcomm since January 1, 2021, including but not limited to communications regarding the subject matter of Qualcomm's claims in the Complaint,

c. Communications with Masayoshi Son or Arm's Board of Directors regarding Qualcomm, including but not limited to withholding licenses, documentation, or other information from Qualcomm or sharing the October 22, 2024 notice with Third Parties,

d. Arm's outreach to Qualcomm's customers since October 2023, concerning Qualcomm's agreements with Arm, Qualcomm's rights under its agreements with Arm, potential termination of Qualcomm's agreements with Arm, Qualcomm's acquisition of Nuvia, or this Action,

e. Arm's communications with ▆▆▆ regarding Arm's and ▆▆▆'s agreement for Arm to supply silicon chips for ▆▆▆ or this Action,

f. Arm's communications with ▆▆▆ regarding Arm's and ▆▆▆ agreement for Arm to supply chips for ▆▆▆ or this Action,

g. Arm's communications with Third Parties regarding its plans to develop systems-on-a-chip,

h. Any directives issued by Arm to Linux code maintainers relating to Qualcomm-uploaded patches and code,

      i. Arm's communications with governmental entities regarding its plans to develop systems-on-a-chip, and

      j. Arm's public disclosures regarding this Action and its business relationship with Qualcomm;

34. Projected or forecasted impact to Arm's revenue or profits ███████ ███████ ███████ ███████████████ ████████;

35. RISC-V, including Arm's analysis of the competitive threat by posed by RISC-V, RISC-V's potential impact on Arm's revenue or profits, and communications with Third Parties regarding RISC-V;

36. Arm's relationship with the semiconductor industry generally, including entities that manufacturer systems-on-chips and entities that are large purchasers of systems-on-chips;

37. Arm's intentions, plans, and strategy to design, build, and distribute its own semiconductor chips or sell its own silicon, including:

      a. Arm's potential or target customers for Arm's systems-on-a-chip,

      b. Arm's analysis of competitors in the chip market, including any potential competition with Qualcomm by Arm,

      c. Arm's development of its own SoC, including but not limited to its intention to enter the SoC market, the process of preparing to develop any SoC, work undertaken in connection with developing the SoC, and analysis of the effect of Arm producing its own SoC, including but not limited to, on competition with any ALA or TLA licensee,

      d. Arm's efforts to convince existing TLA licensees to transition to licensing a completed chip from Arm,

  e. Any agreements (or prospective agreements) Arm has entered into for the licensing or sale of semiconductor chips or silicon designed and built by Arm, and any personnel Arm has hired or has tried to hire in pursuit of that goal, including personnel currently employed by Arm's customers,

  f. Arm's analyses of the projected or forecasted impact to Arm's revenue, market share, or profits resulting from Arm's plan to design, build, and distribute semiconductor chips or sell its own silicon,

  g. Arm's analysis of market share or competition with respect to CPUs, chips, and designs thereof,

  h. Arm's analysis of the systems-on-a-chip server market, including market share, competitors, and potential customers,

  i. The relationship, if any, between Arm's introduction of v10 and its plans to expand into developing systems-on-chips,

  j. Softbank's planned acquisition of Ampere, including any discussions with Ampere related to Qualcomm and any discussions of changes or modifications to the Ampere ALA and Annexes and the Ampere TLA and Annexes,

  k. How the acquisition of Ampere by Arm's parent company, Softbank, would impact Arm's business and projected revenues or profits or competition in the market for Arm-compatible CPUs, including any discussions at Arm among employees or the Board of Directors concerning the acquisition or any communications with Softbank personnel regarding the acquisition, and

  l. ▮▮▮▮▮▮▮▮▮ ;

38.  Arm's customer relationship management system ("CRM"), including

15

    a. External CRM software used, including, but not limited to Salesforce, Salesforce CPQ and Salesforce Sales Cloud, and any internal CRM systems or software,

    b. Any notes, comments, or other any information maintained in Arm's CRM or other systems containing information related to communications with customers relating in any to Qualcomm, and

    c. Any notes, comments, or other any information maintained in Arm's CRM or other systems containing information related to communications with customers relating in Arm manufacturing and selling its own SoCs in competition with ALA and TLA licensees;

39. The article written by Financial Times on February 13, 2025, titled "Arm to launch its own chip in move that could upend semiconductor industry," including communications with the authors of that article and any public relations firm or personnel retained in connection with that article;

40. ████████████ Board of Directors of Softbank;

41. Changes in Arm's behavior towards Qualcomm as a result of the jury verdict in *Arm* v. *Qualcomm* (22-1146-MN);

42. Communications or discussions between Arm and non-Qualcomm Linaro Core Members about Qualcomm or Linaro Next;

43. Communications or discussions between Linaro or Li Gong regarding Qualcomm or Linaro Next;

16

44. ███████████████████████████████████████

███████████████████████████████████████

███

45. Any Qualcomm confidential documents shared with Nvidia during the due diligence process of the proposed acquisition of Arm by Nvidia, including documents shared in a data room;

46. Arm's document retention and destruction policies and practices;

47. Arm's collection and production of documents in this Action.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 13, 2025, upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Samantha G. Wilson, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Karen E. Keller, Esquire<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO 80202<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Nicholas R. Fung, Esquire<br>Henry Huttinger, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd., Suite 6000<br>Los Angeles, CA 90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

| | |
|---|---|
| Kyle W.K. Mooney, Esquire<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, NY  10019<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Erik J. Olson, Esquire<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, CA 94304<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Gregg F. LoCascio, P.C.<br>Jason M. Wilcox, P.C.<br>Meredith Pohl, Esquire<br>Matthew J. McIntee, Esquire<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20004<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Jay Emerick, Esquire<br>Adam M. Janes, Esquire<br>Reid McEllrath, Esquire<br>KIRKLAND & ELLIS LLP<br>333 West Wolf Point Plaza<br>Chicago, IL  60654<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Peter Evangelatos, Esquire<br>Nathaniel Louis DeLucia, Esquire<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY  10022<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

*/s/ Jennifer Ying*

Jennifer Ying (#5550)