# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
———
(302) 658-9200
(302) 658-3989 FAX

Jennifer Ying
(302) 351-9243
(302) 225-2570 FAX
jying@morrisnichols.com

Original filing date: June 18, 2025
Redacted filing date: June 25, 2025

**BY E-FILE AND HAND DELIVERY**

REDACTED - PUBLIC VERSION

The Honorable Maryellen Noreika
United States District Court
for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re: *Qualcomm Inc. v. Arm Holdings Plc.*, C.A. No. 24-490 (MN)

Dear Judge Noreika:

Pursuant to D. Del. LR 7.1.2(b), Qualcomm writes to provide the Court notice of subsequent events that have occurred since the parties filed their discovery letters on June 4 and 5. D.I. 158, 162.

In its June 5 letter, Arm stated that it would supplement its document production to include documents responsive to RFPs relating to Qualcomm's Second Amended Complaint (D.I. 162 at 3), and the parties further met and conferred on these RFPs on June 16. At that meet and confer, Arm would not commit to a date certain when it would provide responses and objections to those RFPs (or a date when it would produce responsive documents). Qualcomm expressed urgency, stating:

> I mean, I think the concern is depositions are starting tomorrow, and then there are also two depositions on Friday. And the longer that this takes, the more it prejudices us where we don't have your documents, and we don't even know what your responses are to these RFPs. Ex. 1 (June 16, 2025, Meet and Confer Tr. 18:13-18).

Qualcomm then asked that Arm's responses and objections be served immediately and that the parties put a meet and confer on the calendar preemptively.

The Honorable Maryellen Noreika
June 18, 2025
Page 2

In response, Arm stated:

First of all, on the prejudice point. You know, you guys chose to move when you moved for – to amend the complaint, and that was your prerogative. That has nothing to do with us. And Court took time to rule on that. And you know, I understand that the Court obviously rejected the party's proposed schedule extension, but that's not our problem. That's your problem. To be clear. *Id.* at 19:10-17.

Yesterday afternoon—11 days after representing to the Court that it would produce documents responsive to the SAC RFPs—Arm served supplemental responses and objections to those requests, refusing to produce several categories of requested documents. Later in the evening, Arm produced a group of documents it represents are related to the TLA and ALA extension claims. While Qualcomm has not yet been able to view the production, the metadata shows that it is 99 documents totaling only 1,047 pages.

While Qualcomm is making every effort to secure and assess Arm's production, the continued delay and unwillingness to resolve—or even identify—disputes is significantly prejudicing Qualcomm's ability to prosecute its case. Depositions have now started and Qualcomm needs immediate discovery to obtain testimony relevant to its claims. We respectfully ask that the Court order Arm to fully supplement its document production immediately, so that Qualcomm can adequately prepare for and conduct depositions.

Counsel is available should the Court have questions.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

Enclosure
cc: Clerk of the Court (via hand delivery)
All Counsel of Record (via CM/ECF and e-mail)

# Exhibit 1

```
                                                              Page 1
 1            IN THE UNITED STATES DISTRICT COURT
 2               FOR THE DISTRICT OF DELAWARE
 3  _____
 4  QUALCOMM INCORPORATED, a
 5  Delaware corporation; QUALCOMM
 6  TECHNOLOGIES, INC., a Delaware
 7  corporation,
 8         Plaintiffs,
 9      v.                                   Docket No.
10  ARM HOLDINGS PLC, f/k/a, ARM             24-490-MN
11  LTD., a U.K. corporation.
12         Defendant.
13  _____
14                 MEET AND CONFER
15  DATE:        Monday, June 16, 2025
16  TIME:        11:05 a.m.
17  LOCATION:    Remote Proceeding
18               Paul, Weiss, Rifkind, Wharton &
19               Garrison LLP
20               1285 Avenue of the Americas
21               New York, NY 10019
22  REPORTED BY: Alida Green
23  JOB NO.:     7434514
24
25
```

Page 2

```
 1        A P P E A R A N C E S
 2  ON BEHALF OF PLAINTIFFS QUALCOMM INCORPORATED;
 3  QUALCOMM TECHNOLOGIES, INC.:
 4      ERIN MORGAN, ESQUIRE
 5      JAKE BRALY, ESQUIRE
 6      ADAM BASNER, ESQUIRE
 7      Paul, Weiss, Rifkind, Wharton & Garrison LLP
 8      1285 Avenue of the Americas
 9      New York, NY 100190
10
11  ON BEHALF OF DEFENDANT ARM HOLDINGS PLC:
12      PETER EVANGELATOS, ESQUIRE
13      MEREDITH POHL, ESQUIRE
14      ADAM JANES, ESQUIRE
15      Kirkland & Ellis
16      601 Lexington Avenue
17      New York, NY 10022
18
19  ALSO PRESENT:
20      Jennifer Ying, Esquire, Morris, Nicholas, Arsht &
21      Tunnell LLP
22      Anne Gaza, Esquire, Young, Conaway, Stargatt &
23      Taylor LLP
24      Henry Huttinger, Esquire, Morrison Foerster LLP
25
```

Page 3

```
 1          E X H I B I T S
 2  NO.     DESCRIPTION              ID/EVD
 3       (None marked.)
```

Page 4

```
 1          P R O C E E D I N G S
 2          THE REPORTER:  On the record, the time
 3  is 11:05 a.m.
 4          MR. BRALY:  All right.  So why don't we
 5  get started.  This is Jake from Paul, Weiss.
 6          I think, Peter, we're going to start
 7  with the TLA-related RFPs.  And I don't know kind of
 8  the easiest way to go through this, but we can just go
 9  through the RFPs that you have said that you were not
10  going to produce for and waiting for the second
11  amended complaint.  And just tell us whether you
12  intend to produce for those RFPs, if there are
13  limitations, or if you still are refusing to produce.
14          MR. EVANGELATOS:  Yeah, look -- this is
15  Peter from Kirkland.  I think we can actually cut
16  through a lot of this.  And I, frankly, do think 30
17  minutes is enough for the list you sent, because I
18  will tell you, we intend to supplement our responses
19  for the TLA-related RFPs.  You should have that today
20  or tomorrow.  It's just with the client right now.
21          So after that, I think it's probably
22  more, you know, worth -- if you guys still have any
23  disputes or you want to talk, I think after you have a
24  chance to review that, that'll probably be more
25  efficient than rather walking through everything now.
```

Page 5

```
 1          MR. BRALY:  Well, when you say that you
 2  intend to supplement your production for the TLA RFPs,
 3  does that mean that you intend for all of the ones
 4  that were raised in our letter related to the TLA,
 5  that you said you were not going to produce for, you
 6  intend to fully produce for all of those?  There
 7  aren't any objections or limitations that you're
 8  placing on those RFPs?
 9          MR. EVANGELATOS:  Well, so two things.
10  So what I said was, we intend to supplement the RFP
11  responses within the next day or so.  I do think we're
12  also -- we have a production cooking that should be to
13  you pretty soon, too.  What I said was, if you want to
14  walk through the RFP responses, I'm saying I think it
15  would be more efficient to just wait until you guys
16  have those supplements than walking through each one
17  individually.
18          MR. BRALY:  Got it.  I misunderstood
19  what you were saying.  I thought you were saying you
20  were supplementing the production.  You're saying
21  you're supplementing the responses and objections.
22          MR. EVANGELATOS:  Yes.  And we also do
23  have a production coming as well.
24          MR. BRALY:  Do you have an idea of when
25  that production will come?  I mean, given that the
```

Page 6
1  depositions are starting this week?
2           MR. EVANGELATOS:  Yeah, off the top of
3  my head, I don't know exactly; but it should be pretty
4  soon, maybe in the next day or so.
5           MR. BRALY:  Okay.  And in terms of the
6  supplemented responses and objections, are you saying
7  that we'll get that today?
8           MR. EVANGELATOS:  Same timeline.
9  Should be today or tomorrow, but we do intend to
10 supplement those responses.
11          MR. BRALY:  Okay.  And is that just for
12 the TLA, or is that for the TLA and the other, you
13 know, things related to the extension of the ALA and
14 V10 that you also had said you were not going to
15 produce until there was a second amended complaint?
16          MR. EVANGELATOS:  Yeah, so the
17 supplement is intended to cover both topics.  And I
18 know you guys raised RFP 168, so that should resolve
19 that as well.  But, yes, it should cover both.
20          MR. BRALY:  Okay.  And does that also
21 cover 167?
22          MR. EVANGELATOS:  I guess, if you could
23 just sort of comment on 167, because I know you guys
24 moved on that in your letter brief.  What were you --
25 was there something else you were looking for on that?

Page 7
1  Or were you envisioning that's part of the TLA V10
2  issues?  I mean, RISC-V is a little different I
3  thought.  So what were you looking for there exactly?
4           MR. BRALY:  Yeah, I don't think that
5  that's part of the TLA issue.  I think that's
6  separate.  We just wanted to see if you had changed
7  your position on that.
8           MR. EVANGELATOS:  Just a sec.
9           MS. POHL:  Hey everyone, it's Meredith
10 Pohl at Kirkland.  I can take the 167 issue.  So I
11 think my question is, you know, we have produced some
12 internal docs related to RISC-V.  This RFP
13 specifically calls for communications with third
14 parties about RISC-V.  I think this raises a couple of
15 questions for me.
16          You know, I think on the one hand I
17 think y'all have refused to produce communications
18 with third parties about RISC-V, including
19 communications about your RISE project, which would
20 obviously contemplate RISC-V and third parties like
21 ▓▓▓▓.  But, specifically, with respect to this
22 request, you know, what kind of communications are you
23 looking for?  Like, is there a way we could narrow the
24 scope?  Just communications with third parties by
25 RISC-V is quite broad.

Page 8
1           So can you just give me a little bit of
2  more information about what it is you're looking for
3  and why it's relevant?  What it's responsive to?
4           MR. BRALY:  Yeah.  So this is Jake at
5  Paul, Weiss.  So first of all, I think we actually
6  have produced RISE documents.  I mean, I can go
7  double-check in the production, but I believe we have
8  produced those.
9           In terms of the -- what 167 is asking
10 for, and, you know, communications with third parties,
11 communications with regulators or regulatory bodies --
12 we're looking to see, are there communications by ARM
13 with third parties, particularly regulators or
14 regulatory bodies, where ARM is making comments or
15 seeking to have regulators or regulatory bodies take a
16 negative view or action towards RISC-V.  You know,
17 basically does ARM, in viewing RISC-V as a competitor,
18 has ARM tried to disparage RISC-V, or in other ways
19 take an action to limit the growth or expansion of
20 RISC-V.
21          MS. POHL:  I see.  And this is related
22 to what claim in your complaint?  I'm guessing the
23 UCL, but.
24          MR. BRALY:  Yes.
25          MS. POHL:  So I guess I understand your

Page 9
1  ask, but I just don't totally see how I think that's
2  responsive or relevant to anything that you've
3  pleaded.  Because it sounds to me like more of a
4  fishing expedition about something that, heretofore, I
5  understand that Qualcomm has kind of taken the
6  position that RISC-V is not a competitor in the
7  market; it's not an alternative.  No one's ever
8  identified it to us as a substitute or that there's
9  sort of an inelasticity of demand issue.  Right?
10          I mean, no one's ever said that to us
11 about the relevant market.  So it's our view that,
12 based on your answers to us about, you know, requests
13 that we've served about RISC-V and things like that,
14 that you don't consider it relevant.  But now it
15 sounds like what you want is documents just where ARM
16 has ever talked about RISC-V.  And that, to me, seems
17 a little bit outside the bounds of Rule 26.
18          MR. BRALY:  I don't think it's any time
19 that ARM has ever talked about RISC-V.  I think it's a
20 question of how does ARM view RISC-V.  Not how do we
21 view RISC-V, but how does ARM view RISC-V.  Is ARM
22 trying to kill RISC-V or prevent RISC-V from taking
23 off?
24          I mean, as you just said, you asked for
25 documents about RISE.  I believe we've produced

Page 10

1  documents about RISE.  We're looking to see what is
2  ARM's positioning with respect to RISC-V and any kind
3  of stifling action that it's taking, or is it trying
4  to, again, you know, disparage RISC-V.  That's what
5  we're looking for.
6          MS. POHL:  Yeah, but why is that
7  relevant to your claims under the competition?  You
8  said it's under the UCL; right?  But, I mean, I don't
9  understand you to have any RISC-V-based predicate act
10 or theory under the UCL that's related to RISC-V.  If
11 there is, we've never heard it before.
12         MR. BRALY:  Right.  And, I mean, I
13 don't think we're getting into, like, the, you know,
14 details of our analysis of the claim.  I think we're
15 saying we believe that ARM has taken actions, and
16 we're looking to see what actions ARM has taken to
17 prevent RISC-V from becoming competitive or, you know,
18 taking a place as something that ARM would view as a
19 threat or a competitor.
20         MS. POHL:  And a competitor relevant in
21 what market?  I mean, I guess I still don't understand
22 the relevance to your UCL claim.  Because I've
23 understood your UCL claim to be that Qualcomm suffered
24 harm as a competitor in some unidentified market,
25 based on a series of predicate acts, and then sort of

Page 11

1  the catchall, like, you know, incipient violations or
2  UCL theory.
3          I don't understand where RISC-V fits in
4  because, you know, we've been asking you, like, if
5  there are other competitors, can you identify them?
6  If there are alternatives, can you identify them?  And
7  you haven't.  And so that leads us to believe that
8  they're not relevant.  And so I guess I don't
9  understand -- I hear what you're saying, but I don't
10 understand how it's relevant to your complaint.
11         MR. BRALY:  Right.  And we're not
12 saying it's a competitor.  We're trying to look at
13 ARM's actions against RISC-V and potentially trying to
14 stifle RISC-V's growth or development.  I mean, I
15 think you know our position on this.  If you're saying
16 that you will not produce documents on that, then
17 understood.
18         MS. POHL:  I don't know.  I mean, I
19 could take it back.  I think this has been a helpful
20 exchange on what you are looking for, but I don't
21 understand on the relevance piece what the -- I don't
22 understand on the relevance piece, like, where this
23 fits into your current complaint as pleaded.
24         It's -- I mean, it truly, the way
25 you're articulating it, I understand what you're

Page 12

1  saying, but it does seem to me like this is kind of a
2  fishing expedition into just a bunch of other things
3  that you've never disclosed before that you think are
4  relevant, and that when we've asked for them, you've
5  actually said are not relevant or outside the scope.
6          And so it just -- I just don't
7  understand the scope of the request vis-a-vis the
8  relevance to your complaint.  So I think this is
9  already -- you know, I think this is already before
10 the Court, frankly.  I think you guys tee this up in
11 your letter, so I'm not sure that there's much more to
12 say.  But I -- so I guess it'll get resolved.
13         But in terms of the scope and in terms
14 of the relevance, I just don't understand where this
15 relates to things that you've pleaded, and I frankly
16 don't understand the relationship.  If you're going to
17 say it's not a competitor, but you're interested in
18 whether there's anti-competitive conduct related to
19 it, like, those things to me seem inherently
20 contradictory.  So I just -- I don't think this is
21 within the scope of Rule 26, and I don't think it's
22 relevant to your complaint.
23         MR. BRALY:  Okay.  I mean, I think you
24 have our position.  You know that we disagree with
25 that.  And, as I said, we've produced documents

Page 13

1  related to RISC-V.
2          MS. POHL:  Understood.  I don't -- I
3  think I've seen some, but I understand also that
4  you've refused to produce, or you've narrowed the
5  scope of our request in relation to RISC-V.  So I
6  don't think it's as unqualified as you've just made it
7  sound, just for the record.
8          MR. BRALY:  Okay.  So I think the next
9  thing that we asked to meet and confer about are hit
10 counts for Qualcomm's proposed modifications to ARM's
11 search terms, which we've been asking for, for weeks
12 now, as well as to the ten additional search terms.
13         MR. EVANGELATOS:  This is Peter from
14 Kirkland.  So we also intend to send you that
15 information on short order, as well.
16         MR. BRALY:  And when you say, "short
17 order" -- sorry.
18         MR. EVANGELATOS:  Yeah.  Again, similar
19 timeline to what I was saying before, the TLA stuff,
20 in another day or so.  We should have that to you
21 pretty soon.
22         I'll tell you this offhand, I think the
23 numbers are still too high.  I don't have specific
24 numbers in front of me, but the -- some of the hit
25 counts are still really high.  So maybe we could

Page 14

```
 1  continue discussing those after you have a chance to
 2  review.
 3          MR. BRALY:  Okay.  And just to be clear
 4  on what you'll be sending, it's the proposed
 5  modifications to ARM's search terms, it's the ten
 6  additional search terms showing unique hits, and then
 7  are you also providing a hit count of your search
 8  terms run against your own document collection to
 9  mirror what we sent to you?
10          MR. EVANGELATOS:  So we can also send
11  that to you, yes.  I think you guys sent that in late
12  May.  We'll send that to you as well.  That's fine.
13          MR. BRALY:  Okay.  So you'll send all
14  three of those?
15          MR. EVANGELATOS:  Yes.
16          MR. BRALY:  Got it.  And you said,
17  again, that will be later today?
18          MR. EVANGELATOS:  Either today or
19  tomorrow.  I'm not sure offhand.  But, yeah, it should
20  be in short order, yes.
21          MR. BRALY:  Okay.  It's just, we've
22  been waiting for this, so would appreciate the
23  earlier, the better.
24          MR. EVANGELATOS:  Sure.  Understood.
25          MR. BRALY:  And then the other thing
```

Page 15

```
 1  that we asked to meet and confer about was
 2  reproduction of documents that ARM produced with
 3  nonresponsive slip sheets, particularly documents that
 4  are [redacted] custodial documents.  I know that you
 5  made a production on Friday.
 6          And I know that, Henry, I think you
 7  just sent over PDFs of documents today.  And I believe
 8  those are documents that you're saying are relevant to
 9  the depositions this week, which would include
10  [redacted].
11          I just want to check; am I correct that
12  you have reproduced the documents that were originally
13  produced with nonresponsive slip sheets?
14          MR. JANES:  Hey, this is Adam Janes
15  from Kirkland.  I can take this one.  So we think the
16  production should resolve this issue.  But just out of
17  curiosity, we want to understand what the tech issue
18  was on your side so we can try to resolve that or make
19  sure that doesn't happen again going forward.
20          MR. BRALY:  I honestly am not 100
21  percent sure.  It was an issue with the vendor trying
22  to upload to Relativity.  So I'm not 100 percent sure
23  what the issue is.
24          MR. JANES:  Got it.  Okay.  That hasn't
25  happened before; right?
```

Page 16

```
 1          MR. BRALY:  Correct.
 2          MR. JANES:  Okay.  Well, in any event,
 3  you should have gotten Henry's email.  If there's any
 4  issues with that, let us know.
 5          MR. BRALY:  Okay.  And so, Adam, you're
 6  saying that this does include the reproduction of the
 7  documents that were marked as nonresponsive?
 8          MR. JANES:  The slip-sheeted documents,
 9  is that what you're referring to?
10          MR. BRALY:  Yes.
11          MR. JANES:  Yeah.  It'll resolve that.
12          MR. BRALY:  When you say it'll -- are
13  you saying, yes, it includes the nonresponsive slip
14  sheets?
15          MR. JANES:  Yes, I think there might
16  be -- and, again, I don't have them in front of me.
17  There might be issues that are subject to an
18  outstanding protective order motion.  I got to
19  double-check that.  But for the vast majority of the
20  slip-sheeted documents, those will be in there.
21          MR. BRALY:  Okay.  And that will
22  include [redacted] documents?
23          MR. JANES:  So I don't think
24  [redacted] documents were the slip-sheeted
25  documents, but my understanding is the production that
```

Page 17

```
 1  went out on Friday included [redacted] documents.
 2          MR. BRALY:  Okay.  We may be talking
 3  past each other.  I think when we looked at custodial
 4  documents from [redacted], there were attachments to
 5  emails that had been withheld as nonresponsive.  And
 6  so those are the ones that we really want to make sure
 7  have been reproduced in advance of his deposition.
 8          MR. JANES:  I see.  Yes, I believe
 9  those should be included.
10          MR. BRALY:  Okay.  Okay.  So I think
11  based on what you've represented today, it sounds like
12  we should be expecting, in short order, the hit count
13  results, as well as supplemental responses and
14  objections relating to the TLA claim and to the
15  extension of the ALA V10, issues that you refused to
16  produce for because they were not in the second
17  amended complaint.
18          If that is the case, can we set up time
19  to do a meet-and-confer tomorrow?  You know, in case
20  we want to go over the responses and objections and
21  the supplemental responses.
22          MR. EVANGELATOS:  So this is Peter from
23  Kirkland.  So look, I'm saying to you that I didn't
24  commit to providing them today, any of those items.  I
25  said that we should have them to you pretty shortly.
```

```
                                                          Page 18                                                             Page 20
 1  I don't think that that's right.  I mean, again, we're         1  second amended complaint was entered on the 3rd, so
 2  not -- we're happy to meet and confer on those issues          2  it's been almost two weeks
 3  and I, you know, don't intend to drag this out like            3          MR. EVANGELATOS:  Tomorrow doesn't
 4  another week to stall on that.  That's not our goal            4  necessarily work for me.  Again, Wednesday would be a
 5  here.                                                          5  little bit better.
 6          But why don't you guys -- we -- I don't                6          MR. BRALY:  How does tomorrow work for
 7  know when they're coming to you, so why don't you, you         7  anyone on the Kirkland and Mo-Fo teams?
 8  know, just have a chance to look at them first.  And           8          MR. EVANGELATOS:  I don't think that's
 9  if we need to talk on Wednesday, let's say, at that            9  a fair request.  Look, I'm trying to give you a time
10  time it -- better, then we're happy to do that.  But         10  in good faith here and, like, that's not an
11  let's -- like, I don't think it necessarily makes            11  appropriate request.  Like, you know how these
12  sense to commit to a time right now.                         12  meet-and-confers have been going.  We have to get the
13          MR. BRALY:  Okay.  I mean, I think the               13  relevant people on.  I'm trying to do this live for
14  concern is depositions are starting tomorrow, and then       14  you, but, like, that's not -- let's not go there.
15  there are also two depositions on Friday.  And the           15  Just a second.
16  longer that this takes, the more that it prejudices us       16          Look, between twelve and two on
17  where we don't have your documents, and we don't even        17  Wednesday would be the best time for us, you know,
18  know what your responses are to these RFPs.                  18  particularly if you're going to try to raise TLA
19          So I mean, I would say first, you know,              19  problems.  If that doesn't work, then we can circle
20  we would appreciate if you could get us these                20  back online, but I can't give you time tomorrow.
21  supplemental responses immediately, or as soon as            21          MR. BRALY:  Okay.  Well then, let's
22  possible.  And I think putting on the calendar a time        22  pencil in between twelve and two.  Who knows?  Maybe
23  for a meet-and-confer would be helpful.  That way we         23  we'll see your supplemental responses and objections,
24  don't have to go through scheduling and figuring out         24  and it will resolve outstanding disputes.  Or we won't
25  time and pushing it further in the week.  I mean, just       25  need to take the full time.  But just in the sake of

                                                          Page 19                                                             Page 21
 1  the earliest that we could possibly resolve any                1  efficiency, why don't we pencil in twelve to two on
 2  outstanding disputes, the better.                              2  Wednesday?
 3          Similarly, you know, if you can get us                 3          MR. EVANGELATOS:  Sure.  And why don't
 4  the production that you have for the TLA materials or          4  you send us a meeting invite as usual.  That's fine.
 5  the second amended complaint materials, we would also          5          And then, if no other else questions on
 6  appreciate that, again, given the fact that                    6  your side, one thing I just wanted to follow up on.
 7  depositions start tomorrow, and we have the two                7  It's been a while since the last meet-and-confers that
 8  depositions on Friday.                                         8  we had.  I think we had three or four in a row where
 9          MR. EVANGELATOS:  So this is Peter.                    9  there was a court reporter on.  I know you sent us the
10  Just a few points.  First of all, on the prejudice            10  roughs, but did you receive a final?
11  point.  You know, you guys chose to move when you             11          MR. BRALY:  I honestly don't know.  I
12  moved for -- to amend the complaint, and that was your        12  will ask if they have a final.
13  prerogative.  That has nothing to do with us.  And            13          MR. EVANGELATOS:  Yes, and please send
14  Court took time to rule on that.  And you know, I             14  those to us.  I think it's been more than ten days;
15  understand that the Court obviously rejected the              15  it's just the usual timeline.  So if you could send
16  party's proposed schedule extension, but that's not           16  those to us, if you have them, please do that.
17  our problem.  That's your problem.  To be clear.              17          MR. BRALY:  Okay.  You have the roughs
18          Now, with respect to a follow                         18  for all of them; right?
19  meet-and-confer, look, I could make some time on              19          MR. EVANGELATOS:  Far as I know, we did
20  Wednesday if that would work, you know.  How about            20  receive the roughs.  But we should receive the finals
21  maybe noon on Wednesday or something around that time?        21  as well.  There's no reason you should withhold those.
22          MR. BRALY:  Well, what times do you               22          MR. BRALY:  No, absolutely.  I agree.
23  have tomorrow?  I mean, again, yes, it's true, the            23          MR. EVANGELATOS:  Okay.  If nothing
24  Court took a while to rule on the second amended              24  else then, I think that's it for today.
25  complaint, and we did not get an extension; but the           25          MR. BRALY:  Okay.  We'll look for the
```

6 (Pages 18 - 21)

Page 22

1  hit counts and the responses and objections.
2           MR. EVANGELATOS:  All right.
3           Thanks, everyone.
4           THE REPORTER:  The date is 6/16/2025.
5  Off the record, 11:28 a.m.
6           (Whereupon, at 11:28 a.m., the
7           proceeding was concluded.)

Page 23

1           CERTIFICATE
2       I, ALIDA GREEN, the officer before whom the
3  foregoing proceedings were taken, do hereby certify
4  that any witness(es) in the foregoing proceedings,
5  prior to testifying, were duly sworn; that the
6  proceedings were recorded by me and thereafter reduced
7  to typewriting by a qualified transcriptionist; that
8  said digital audio recording of said proceedings are a
9  true and accurate record to the best of my knowledge,
10 skills, and ability; that I am neither counsel for,
11 related to, nor employed by any of the parties to the
12 action in which this was taken; and, further, that I
13 am not a relative or employee of any counsel or
14 attorney employed by the parties hereto, nor
15 financially or otherwise interested in the outcome of
16 this action.
17
18           ALIDA GREEN
19        Notary Public in and for the
20           State of New York

Page 24

1           CERTIFICATE OF TRANSCRIBER
2       I, DENNISE VARNEY, do hereby certify that
3  this transcript was prepared from the digital audio
4  recording of the foregoing proceeding, that said
5  transcript is a true and accurate record of the
6  proceedings to the best of my knowledge, skills, and
7  ability; that I am neither counsel for, related to,
8  nor employed by any of the parties to the action in
9  which this was taken; and, further, that I am not a
10 relative or employee of any counsel or attorney
11 employed by the parties hereto, nor financially or
12 otherwise interested in the outcome of this action.
13
14
15           DENNISE VARNEY