# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,

    Plaintiffs,

v.

ARM HOLDINGS PLC, a U.K. corporation,

    Defendant.

C.A. No. 24-490-MN

**REDACTED - PUBLIC VERSION**
(Filed July 15, 2025)

**ARM'S REPLY BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS QUALCOMM'S SECOND AMENDED COMPLAINT**

Dated: July 8, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
gregg.locascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

# **TABLE OF CONTENTS**

                                                                                                                       **Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 1

I.      *NOERR-PENNINGTON* AND RELATED DOCTRINES BAR COUNTS III-VI. ............ 1

        A.      The *Noerr-Pennington* Doctrine Bars Several Of Qualcomm's Claims. ................ 1

        B.      The California Litigation Privilege And Anti-SLAPP Law Also Apply. ................ 3

II.     QUALCOMM'S TORT CLAIMS FAIL FOR ADDITIONAL REASONS. ....................... 4

        A.      Qualcomm's UCL Claim Fails (Count VI)................................................................ 4

        B.      Qualcomm's Tortious Interference Claims Fail (Count IV-V).............................. 7

III.    QUALCOMM'S TLA CONTRACT CLAIMS SHOULD BE DISMISSED. ................... 7

        A.      Qualcomm Fails To Allege A Breach Of ███████ (Count VII)................................ 7

        B.      Qualcomm Fails To Allege A Breach Of ███████ (Count VIII). ............................ 9

IV.   THE IMPLIED COVENANT CLAIM SHOULD BE DISMISSED (COUNT III)........... 9

CONCLUSION............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*10x Genomics v. Vizgen*,
　681 F. Supp. 3d 252 (D. Del. 2023) .................................................................................. 6

*Accenture v. Guidewire Software*,
　581 F. Supp. 2d 654 (D. Del. 2008) .................................................................................. 8

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ................................................................................................ 7, 8, 9

*Bell Atl. v. Twombly*,
　550 U.S. 544 (2007) ................................................................................................ 1, 7, 8

*Bocock v. Innovate*,
　2022 WL 15800273 (Del. Ch. Oct. 28, 2022) ................................................................. 10

*Cheminor Drugs v. Ethyl Corp.*,
　168 F.3d 119 (3d Cir. 1999) ........................................................................................ 2, 3

*City of L.A. v. Lyons*,
　461 U.S. 95 (1983) ........................................................................................................... 5

*Costa v. Whirlpool*,
　2025 WL 885245 (D. Del. Mar. 21, 2025) ....................................................................... 7

*Dove Audio v. Rosenfeld, Meyer, & Susman*,
　54 Cal. Rptr. 2d 830 (Cal. App. 1996) ............................................................................. 4

*Eastman Kodak v. Image Tech. Servs.*,
　504 U.S. 451 (1992) ......................................................................................................... 6

*In re Green Field Energy Servs.*,
　834 F. App'x 695 (3d Cir. 2020) ...................................................................................... 4

*Guz v. Bechtel Nat'l*,
　24 Cal. 4th 317 (2000) ................................................................................................ 9, 10

*Key v. Qualcomm*,
　129 F.4th 1129 (9th Cir. 2025) ........................................................................................ 5

*Lamke v. Sunstate Equip.*,
　387 F. Supp. 2d 1044 (N.D. Cal. 2004) ...................................................................... 9, 10

*Matsushita Elecs. v. Loral*,
 974 F. Supp. 345 (S.D.N.Y. 1997)......................................................................................2

*Mylan Pharms. v. Teva Pharms.*,
 2025 WL 756793 (D.N.J. Feb. 27, 2025) ...........................................................................3

*Novell v. Microsoft*,
 731 F.3d 1064 (10th Cir. 2013) ..........................................................................................6

*In re Qualcomm Litig.*,
 2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) ......................................................................6

*Racine & Laramie v. Dep't of Parks & Rec.*,
 11 Cal. App. 4th 1026 (1992) .............................................................................................8

*Reese v. Wal-Mart Assocs.*,
 2025 WL 472721 (E.D. Cal. Feb. 12, 2025)........................................................................5

*In re Revlimid & Thalomid Purchaser Antitrust Litig.*,
 2024 WL 2861865 (D.N.J. June 6, 2024) ...........................................................................2

*Six4Three v. Facebook*,
 109 Cal. App. 5th 635 (2025) .............................................................................................4

*SolidFX v. Jeppesen Sanderson*,
 841 F.3d 827 (10th Cir. 2016) ............................................................................................6

*Sonner v. Premier Nutrition*,
 971 F.3d 834 (9th Cir. 2020) ..........................................................................................4, 5

*Stephens v. Clash*,
 796 F.3d 281 (3d Cir. 2015)................................................................................................9

*Sweet St. Desserts v. Chudleigh's*,
 655 F. App'x 103 (3d Cir. 2016) ........................................................................................2

*Thomas v. Hous. Auth. of L.A.*,
 2006 WL 5670938 (C.D. Cal. Feb. 28, 2006).....................................................................1

*United States v. Colgate*,
 250 U.S. 300 (1919)............................................................................................................5

*Verizon Commc'ns v. Trinko*,
 540 U.S. 398 (2004)............................................................................................................5

*Warner Theatre Assocs. v. Metro. Life Ins.*,
 1997 WL 685334 (S.D.N.Y. Nov. 4, 1997).........................................................................8

*Wentland v. Wass*,
    126 Cal. App. 4th 1484 (2005) ............................................................................................3, 4

*Yokohama Rubber v. S. China Tire & Rubber*,
    2005 WL 6124310 (C.D. Cal. Jan. 19, 2005) ............................................................................3

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
    601 F. Supp. 3d 625 (C.D. Cal. 2022) ..................................................................................4, 5

**Statutes**

10 Del. C. § 8106 ............................................................................................................................10

Cal. Civ. P. Code § 425.16................................................................................................................4

Cal. Civ. P. Code § 425.17................................................................................................................4

**Rules**

Fed. R. Civ. P. 8(a)(2).................................................................................................................7, 8

**INTRODUCTION**

Qualcomm's opposition highlights the fundamental flaws in the Second Amended Complaint ("SAC"). Qualcomm barely quotes the allegations in the SAC at all, and instead makes claims that appear nowhere in the SAC, while applying an approach to pleading that the Supreme Court repudiated in *Twombly*. Throughout its opposition, Qualcomm also ignores precedent that it finds inconvenient. For example, Qualcomm does not address the many cases Arm cited that applied *Noerr-Pennington* and other speech-related privileges to claims indistinguishable from Qualcomm's. The same is true for the many cases that rejected flawed and underdeveloped UCL theories like those Qualcomm asserts here. As for Qualcomm's implied covenant and TLA claims, Qualcomm can allege a breach and request draconian remedies only by rewriting the parties' agreements to impose new terms Arm never accepted. That too is improper as a matter of law.

**ARGUMENT**

**I.    *NOERR-PENNINGTON* AND RELATED DOCTRINES BAR COUNTS III-VI.**

    **A.    The *Noerr-Pennington* Doctrine Bars Several Of Qualcomm's Claims.**

The *Noerr-Pennington* doctrine forecloses Qualcomm's implied covenant, tortious interference, and UCL claims based on allegations that Arm: (1) "wrongfully assert[ed] that it has the right to terminate the QC ALA," (2) allegedly "leak[ed] the Breach Letter to the media," and (3) made "misleading and threatening statements to Qualcomm's customers" about the original lawsuit and Qualcomm's alleged breaches of the ALA. SAC ¶¶ 184, 192, 199, 201, 206; *see id.* ¶¶ 136-155. Those claims attack Arm for speaking about its case and legal rights. Qualcomm's suggestion that the doctrine rarely applies on a motion to dismiss is wrong. Courts often apply *Noerr-Pennington* at the pleading stage—Arm cited half a dozen cases granting motions to dismiss—because even the "pendency" of claims attacking petitioning activity could "chill the exercise of First Amendment rights." *Thomas v. Hous. Auth. of L.A.*, 2006 WL 5670938, at *10

1

n.51 (C.D. Cal. Feb. 28, 2006). As in those cases, the SAC on its face attacks protected conduct.

That protected conduct starts with the Breach Letter itself. The Letter echoes allegations Arm made in the first case (22-1146 D.I. 21 at 23, 37, 39, 41-42) and is indistinguishable from the demand letters, cease-and-desist letters, and threats of suit courts routinely protect under *Noerr-Pennington* (D.I. 233 ("Mot.") 5-6), which may explain why Qualcomm does not attempt to distinguish those cases. Qualcomm likewise leaves unaddressed the multiple cases extending *Noerr-Pennington* immunity to press releases about pending litigation. *See* Mot. 6. Qualcomm cannot evade *Noerr-Pennington*'s protections for statements made in public court filings by challenging Arm's decision to repeat those statements in litigation-related communications.

The First Amendment also protects Arm's challenged communications with customers. Parties cannot hold a litigation adversary liable for providing its view of the case to its customers. Mot. 6-7. Qualcomm again grapples with none of the precedent Arm cited for this well-established principle, and each of Qualcomm's cases is distinguishable. In *Golden Eye*, *Thimes*, *LY Berditchev*, and the other cases Qualcomm cites, *Noerr-Pennington* did not apply to letters sent to third parties when there was no pending or threatened litigation. D.I. 287 ("Opp.") 7-8 & nn.4-5. Here, Arm sent the supposedly misleading letters during litigation to update customers about the suit, updates the SAC alleges were sent to "threaten" customers and "suggest that customers could face legal jeopardy from using Qualcomm products." SAC ¶¶ 1, 135, 138. The doctrine protects letters to third parties that allegedly "threaten litigation." *Matsushita Elecs. v. Loral*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997); *Sweet St. Desserts v. Chudleigh's*, 655 F. App'x 103, 110-11 (3d Cir. 2016).

Qualcomm is wrong that courts cannot resolve whether the sham litigation exception applies on a motion to dismiss. Courts have done so in the past. *See Cheminor Drugs v. Ethyl Corp.*, 168 F.3d 119, 127-28 (3d Cir. 1999); *In re Revlimid & Thalomid Purchaser Antitrust Litig.*,

2

2024 WL 2861865, at *86 (D.N.J. June 6, 2024). No "factual inquir[ies]" are necessary. Opp. 9. The central assertion in the challenged communications is that Qualcomm would breach its ALA by selling Nuvia-based cores. One of the issues sent to the jury in the previous case was whether Qualcomm's ALA covered those Nuvia-based designs; the Court denied Qualcomm's summary judgment motion on that issue. 22-1146 10/30/2024 Minute Entry; 22-1146 D.I. 572. That establishes Arm's assertions were not objectively baseless, even if Qualcomm wrongly believes Arm also made misrepresentations in its communications. *See Cheminor*, 168 F.3d at 122-24; *Mylan Pharms. v. Teva Pharms.*, 2025 WL 756793, at *31 (D.N.J. Feb. 27, 2025).

It is irrelevant that *Noerr-Pennington* does not apply to contract claims. The SAC does not assert that "█████████████████████████████" (Opp. 6), and Arm is not seeking to dismiss that unasserted claim. Qualcomm does not cite a single example of a court holding that a hypothetical, unasserted contract claim eliminates *Noerr-Pennington* protections for the allegedly tortious conduct asserted in a complaint. Similarly, the fact Qualcomm believes it could prove its claims based on other conduct does not vitiate Arm's First Amendment protections for conduct that implicates *Noerr-Pennington*. At least Qualcomm's tortious interference claim turns exclusively on Arm's protected conduct regardless. *See* SAC ¶¶ 189-203.

    **B.**  **The California Litigation Privilege And Anti-SLAPP Law Also Apply.**

California's litigation privilege independently protects the conduct at issue here. Qualcomm contends the privilege "protects only statements that are 'necessary or useful step[s] in the litigation process'" (Opp. 10), but leaves unaddressed the numerous cases holding out-of-court statements to nonparties who have a substantial interest in the litigation meet that standard. Mot. 8-9. Statements to customers and statements to Bloomberg that Arm allegedly intended members of the industry to see are therefore protected. *Yokohama Rubber v. S. China Tire & Rubber*, 2005 WL 6124310, at *3 (C.D. Cal. Jan. 19, 2005). *Wentland v. Wass*, 126 Cal. App. 4th 1484 (2005)

3

is inapposite; that case held the privilege does not bar claims for breach of a contract's confidentiality provisions, *id.* at 1492, but Qualcomm again has not asserted such a breach.

California's anti-SLAPP law also bars Qualcomm's claims. Qualcomm does not attempt to distinguish *Dove Audio v. Rosenfeld, Meyer, & Susman*, 54 Cal. Rptr. 2d 830, 834-35 (Cal. App. 1996). Nor does it grapple with Arm's argument that Arm's conduct is protected by Cal. Civ. P. Code §§ 425.16(e)(2)-(4). Qualcomm's footnote argument that the commercial-speech exception applies is both waived and wrong. *See In re Green Field Energy Servs.*, 834 F. App'x 695, 699 (3d Cir. 2020). Arm did not make the alleged statements while delivering its goods or services or for the purposes of securing sales of any goods or services, essential elements for invoking this "narrowly construed" exception. *Six4Three v. Facebook*, 109 Cal. App. 5th 635, 647-53 (2025); Cal. Civ. P. Code § 425.17(c)(1). The burden therefore falls to Qualcomm to show "a probability [of] prevail[ing]," Cal. Civ. P. Code § 425.16(b)(1), and its assertion that this burden-shifting framework "does not apply in federal court" (Opp. 10-11) is wrong. *See* Mot. 9.

## II. QUALCOMM'S TORT CLAIMS FAIL FOR ADDITIONAL REASONS.

### A. Qualcomm's UCL Claim Fails (Count VI).

None of Qualcomm's arguments overcome the two other insurmountable problems with its UCL claim. For starters, the UCL is an equitable statute, so Qualcomm "must establish that [it] lacks an adequate remedy at law" in "the operative complaint." *Sonner v. Premier Nutrition*, 971 F.3d 834, 844 (9th Cir. 2020). Yet Qualcomm says not a word in the SAC or in its brief about why it needs the equitable remedy of restitution on top of its request for money damages. *See* SAC ¶¶ 64-65. As for Qualcomm's request for an injunction, it contends it provided "detailed allegations" of "persistent, systematic," and "ongoing" conduct, but none of the paragraphs it cites say anything about persistent or ongoing conduct. Opp. 11 (citing SAC ¶¶ 137, 139, 144, 207). Even if they had, the SAC does not "*explain why* money damages are not [] adequate." *In re ZF-*

4

*TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 769 (C.D. Cal. 2022) (emp. added); *Reese v. Wal-Mart Assocs.*, 2025 WL 472721, at *8 (E.D. Cal. Feb. 12, 2025). Qualcomm does not address *ZF-TRW* or *Reese* in its brief, instead relying on two cases that do not address the *Sonner* standard or a plaintiff's obligation to plead no adequate remedy exists. *See* Opp. 11. Nor does Qualcomm make any effort to distinguish this case from the arguments it successfully advanced to dismiss the UCL claim in *Key v. Qualcomm*, 129 F.4th 1129, 1142 (9th Cir. 2025).

Qualcomm's representation that it seeks "tailored relief" that enjoins only the unfair acts described in the SAC concedes away its Article III standing to pursue an injunction based on Arm sending the Breach Letter to Qualcomm, allegedly sharing that letter with the media, or Arm's alleged communications with Qualcomm's customers. Opp. 12. Those are backward-looking allegations unsupported by "any real or immediate threat that [Qualcomm] will be wronged again" by similar communications. *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). This is not a "breadth of a potential remedy" (Opp. 12) problem, but a failure to allege an Article III injury-in-fact.

The second problem with Qualcomm's UCL theory is that it does not allege any conduct that "violate[s] the letter, policy, or spirit of federal or state antitrust law." *Key*, 129 F.4th at 1141. Qualcomm in several places asserts that Arm breached its contracts with Qualcomm (SAC ¶¶ 204, 206-207), but Qualcomm does not contest that corporate plaintiffs may not turn contract claims into UCL violations. *See* Mot. 11-12. Those allegations must be dismissed for that reason alone.

Qualcomm's assertion that Arm "has cut off or threatened to cut off Qualcomm's access to necessary IP" fails to state an actionable refusal to deal. Opp. 14. Qualcomm admits it has not alleged Arm is a monopolist, yet there is no refusal-to-deal liability "in the absence of any purpose to create or maintain a monopoly." *United States v. Colgate*, 250 U.S. 300, 307 (1919); *Verizon Commc'ns v. Trinko*, 540 U.S. 398, 408 (2004). That is reason enough to dismiss the UCL claim,

5

but even if Qualcomm plausibly alleged Arm has monopoly power, a monopolist "as a general matter … can refuse to deal with" others. *Eastman Kodak v. Image Tech. Servs.*, 504 U.S. 451, 482-83 n.32 (1992). A rare exception exists where ending a course of dealing would "forsake short-term profits" and is "irrational but for its anticompetitive effect." *Novell v. Microsoft*, 731 F.3d 1064, 1075 (10th Cir. 2013). Qualcomm alleges the opposite, asserting that Arm seeks to maximize its profits. SAC ¶¶ 68-72. The alleged decision to change the licensing terms for "intellectual property rights" or to no longer license those rights "is a presumptively rational business justification for a unilateral refusal to deal" anyway. *SolidFX v. Jeppesen Sanderson*, 841 F.3d 827, 841-42 (10th Cir. 2016). This case is thus indistinguishable from *Novell*, which held Microsoft's decision to no longer give Novell access to its protocols "is protected by the antitrust laws." 731 F.3d at 1074. Such protected conduct is not actionable under the UCL. Mot. 12.

Neither is Qualcomm's "open early, closed late" theory. Opp. 13. As Qualcomm's cases acknowledge, that theory again requires establishing Arm's "monopoly power." *10x Genomics v. Vizgen*, 681 F. Supp. 3d 252, 267-68 (D. Del. 2023). But Qualcomm deleted from the SAC the allegation that Arm "leverage[d] its monopoly" and has not plead facts necessary to show Arm has monopoly power in a properly defined market. *Compare* FAC ¶ 156, *with* SAC ¶ 207. Regardless of whether the UCL always requires establishing the relevant market in which Arm's conduct allegedly threatens competition (and it does, *see* Mot. 13), such allegations are necessary when the theory of unfair competition depends on Arm exercising monopoly power.

Qualcomm cannot sidestep these pleading problems by asserting that the more forgiving balancing test also applies. It is Qualcomm—not Arm—that "confuses the legal standards that govern UCL claims." Opp. 13. In suits between sophisticated companies, the tethering test applies regardless of whether the companies are "direct competitors." *In re Qualcomm Litig.*, 2017 WL

6

5985598, at *7 (S.D. Cal. Nov. 8, 2017). The balancing test thus has no role to play here, and Qualcomm cannot use that test to defend its UCL claim that Arm "leaked the Breach Letter to the media" and made statements about ongoing litigation "to Qualcomm's customers." SAC ¶¶ 206-207. Qualcomm has no argument this implicates the antitrust laws as the tethering test requires.

### B. Qualcomm's Tortious Interference Claims Fail (Count IV-V).

It is now common ground that Qualcomm's tortious interference claims depend on Qualcomm plausibly alleging that Arm's conduct "violates the UCL's 'unfair' prong." Opp. 16. Because Qualcomm has no viable UCL claim, its tortious interference claims must be dismissed.

### III. QUALCOMM'S TLA CONTRACT CLAIMS SHOULD BE DISMISSED.

#### A. Qualcomm Fails To Allege A Breach Of ▌▌▌▌ (Count VII).

Qualcomm justifies the threadbare allegations supporting its claim that Arm breached ▌▌▌▌ of the TLA based on a watered-down pleading standard that *Twombly* and *Iqbal* eliminated. The SAC offers a one-sentence allegation that the terms Arm offered to renew the license for the ▌▌▌▌▌▌▌▌▌▌ in 2024 ▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌ (SAC ¶¶ 117, 215), but offers no factual allegations to support that conclusion. Qualcomm does not even explain how ▌▌▌▌ could apply ▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ Regardless, the allegation that Arm supposedly requested "fees and royalty rates nearly five times as high as those" the parties "agreed to in 2019" (Opp. 17) is no substitute for allegations that Arm offered Qualcomm fees and rates ▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. D.I. 233 Ex. 1 ("TLA") ▌▌▌▌ It is no answer that the terms of Arm's licenses with third parties "are confidential." Opp. 17. Rule 8 has no exception for facts a plaintiff cannot access, *see Costa v. Whirlpool*, 2025

WL 885245, at *11 (D. Del. Mar. 21, 2025); *Accenture v. Guidewire Software*, 581 F. Supp. 2d 654, 665 (D. Del. 2008), which is why Qualcomm does not cite a single case supporting its position. The threshold requirement of "a short and plain statement … showing that the pleader is entitled to relief" requires more than conclusions. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Qualcomm needed to allege "enough facts to state a claim to relief that is plausible on its face," yet it failed to do so. *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007).

Qualcomm cannot overcome this pleading problem by labeling Arm's offer "exorbitant." SAC ¶¶ 118, 216. Although Qualcomm contends California law reads into every contract an implied duty to exercise discretionary power in good faith (Opp. 17), ███████████ ███████████ ███████████ . Nothing more. And ███████████ ███████████ ███████████ ███████████ . *See* TLA ███.

The implied covenant and implied duties thus have no role to play here. "Nothing in the duty of good faith requires that parties to a negotiation propose only such terms as the other party is happy with." *Warner Theatre Assocs. v. Metro. Life Ins.*, 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997). Moreover, accepting a constructive-refusal-to-offer theory under the implied covenant would rewrite the agreement to ███████████ ███████████ . *See* TLA ███; SAC ¶¶ 118, 125-127, 219. The implied covenant does not exist to "create obligations" or remedies "not contemplated in the contract." *Racine & Laramie v. Dep't of Parks & Rec.*, 11 Cal.

8

App. 4th 1026, 1032 (1992). Qualcomm has no response to this well-established principle.

### B. Qualcomm Fails To Allege A Breach Of ▇▇▇ (Count VIII).

Qualcomm similarly defends its claim that Arm breached ▇▇▇ of the Qualcomm ALA by asserting it is not required to plead any facts in support of that claim. The Supreme Court rejected that argument in *Ashcroft v. Iqbal*, holding that "naked assertions devoid of further factual enhancement" fail to state a claim. 556 U.S. at 678 (cleaned up). Qualcomm's only response is that identifying the material non-financial terms Arm supposedly changed is a "superfluous detail." Opp. 18. The facts necessary to make a claim plausible are not superfluous.

## IV. THE IMPLIED COVENANT CLAIM SHOULD BE DISMISSED (COUNT III).

Qualcomm's defense of its new implied covenant theories underscores why those theories fail under *Lamke v. Sunstate Equip.*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004), and *Guz v. Bechtel Nat'l*, 24 Cal. 4th 317, 327 (2000). Start with Qualcomm's theory that Arm breached the implied covenant by not offering Qualcomm a license to the v10 architecture. *See* SAC ¶¶ 128-133, 184. Qualcomm concedes it does not allege that Arm breached ▇▇▇ of the ALA, ▇▇▇

▇▇▇ It instead asserts there is nothing wrong with stacking an implied good-faith obligation ▇▇▇

▇▇▇. Neither of the cases it cites endorse that view. Qualcomm's v10 allegations are instead governed by the rule that "where an implied covenant claim alleges a breach of obligations beyond the agreement's actual terms, it is invalid." *Guz*, 24 Cal. 4th at 327.

Qualcomm waited too long to assert that Arm failed to negotiate in good faith. Contrary to Qualcomm's arguments, the "face of the complaint" shows Qualcomm's v10 allegations "ha[ve] not been brought within the statute of limitations." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015). Qualcomm alleges Arm breached the implied covenant by not responding to a May 20,

9

2020, email requesting a license to v10, but Qualcomm did not assert its claim until March 2025. That is far outside the three-year statute of limitations. *See* 10 Del. C. § 8106. It makes no difference that "the SAC does not allege when that failure to respond ripened into bad faith." Opp. 20. If that fact is necessary to determine when the statute of limitations applies, it is equally necessary to plead a viable claim to survive a motion to dismiss. Nor can Qualcomm hide behind its unpled fraudulent concealment argument. Opp. 20. The SAC nowhere alleges that Arm "lied to Qualcomm in April 2020" (*id.*), and even if Qualcomm had included that allegation, the alleged lack of response to the May 2020 email would have put it on inquiry notice. *See Bocock v. Innovate*, 2022 WL 15800273, at *11-12 (Del. Ch. Oct. 28, 2022). Qualcomm's v10-related theories under the implied covenant and UCL are time-barred.

That leaves the allegation that Arm breached the implied covenant by "fail[ing] to provide licensing proposals for ▇▇▇▇▇▇▇▇ to Qualcomm in violation of provisions of the QC TLA." SAC ¶ 184. Qualcomm does not say a word in defense of that allegation, which is duplicative of its breach claims. *See* SAC ¶¶ 213-226. Instead, Qualcomm invents two new theories that it did not plead: (1) that Arm allegedly "▇▇▇▇▇▇▇▇▇▇▇▇," and (2) that Arm sought to deprive Qualcomm of the benefits of the TLA. Opp. 20. But Qualcomm admits there is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*id.*); Qualcomm cannot impose that duty through the implied covenant. *Lamke*, 387 F. Supp. 2d at 1047. It likewise cannot fit this case within the narrow exception for a bad-faith exercise of a contractual right as a pretext to deny Qualcomm an expressly contemplated benefit under the contract. *Guz*, 24 Cal. 4th at 353 n.18. There is no allegation that Arm did the licensing equivalent of firing an at-will employee to avoid paying a bonus. *See id.*

## CONCLUSION

The Court should dismiss with prejudice Counts III-VIII.

Dated: July 8, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
gregg.locascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650)813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 8, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*