IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>                Plaintiffs,<br><br>    v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation,<br><br>                Defendant. | C.A. No. 24-490-MN<br><br>PUBLIC VERSION - FILED JULY 22, 2025 |

**NONPARTY MEDIATEK INC.'S MOTION FOR A PROTECTIVE ORDER**

Nonparty MediaTek Inc. ("MediaTek") moves for the entry of a protective order preventing Defendant Arm Holdings plc, f/k/a ARM Ltd. ("ARM") from producing agreements between ARM and MediaTek to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. ("Qualcomm"). This motion is brought under Federal Rule of Civil Procedure 26 and Paragraphs 48-49 of the Stipulated Protective Order (D.I. 38).

Plaintiff Qualcomm—one of Nonparty MediaTek's closest competitors—seeks confidential, unredacted copies of ████████████████████████████ ████████████████████████████████████████ ████████████ These highly sensitive contracts between MediaTek and ARM have little relevance to this litigation, which is a dispute between Qualcomm and ARM that does not involve MediaTek.

The risks associated with production are high. Qualcomm is one of the closest direct competitors to MediaTek, if not the closest, with both companies operating in many of the same markets in the semiconductor space. *See* Declaration of Lucia Sun ("Decl."), ¶ 3.

1

Qualcomm and MediaTek are both leaders in producing smartphone systems on chips ("SoCs") for use with the Android operating system, where both MediaTek and Qualcomm incorporate ARM-licensed central processing unit ("CPU") technology into their SoCs. *Id*. Competition between the two is fierce.[1] MediaTek and Qualcomm also compete in laptop SoCs, automotive SoCs and AI products, many of which incorporate licensed ARM technology, as well as other products like 5G modems.[2]

The MediaTek/ARM agreements contain MediaTek's trade secrets and highly sensitive competitive information. Decl. ¶ 4. Specifically, the information in ▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[1] *See, e.g.*, James Peckham, *New Qualcomm, MediaTek Chips Could Power Some of 2025's Best New Phones*, PCMag, May 15, 2025, https://www.pcmag.com/news/new-qualcomm-mediatek-chips-could-power-some-of-2025s-best-new-phones ("Qualcomm and MediaTek keep most of our mobile gadgets running, and each has a new chipset that will power midrange to high-end Android phones."); Daniel R. Deakin, *MediaTek leapfrogs Qualcomm as the world's largest smartphone chipset vendor thanks to huge growth in India and Latin America*, Notebookcheck, Dec. 24, 2020, https://www.notebookcheck.net/MediaTek-leapfrogs-Qualcomm-as-the-world-s-largest-smartphone-chipset-vendor-thanks-to-huge-growth-in-India-and-Latin-America.512177.0.html ("MediaTek has overtaken Qualcomm to become the world's largest smartphone chipset vendor in terms of market share.").

[2] *See, e.g.*, *MediaTek, Qualcomm Push into AI Markets Beyond Mobile*, Nasdaq, May 20, 2025, https://www.nasdaq.com/articles/mediatek-qualcomm-push-ai-markets-beyond-mobile ("MediaTek and Qualcomm are increasingly battling in the PC market, particularly for laptops."); Ansehl Sag, *Next- Gen 5G Modems From MediaTek And Qualcomm Debut At MWC 2025*, Forbes, Mar. 31, 2025, https://www.forbes.com/sites/moorinsights/2025/03/31/next-gen-5g-modems-from-mediatek-and-qualcomm-debut-at-mwc-2025/ ("[T]he two biggest providers of 5G modems, MediaTek and Qualcomm[,] have been shipping 5G modems across multiple generations for years.").

███████████████ The Court should grant a protective order preventing disclosure of MediaTek's agreements with ARM, as this information is not usable to prove or disprove Qualcomm's claims, but would be exceptionally useful in commercial negotiations with ARM and head-to-head competition against MediaTek.

Good cause therefore exists for an order preventing production. As this Court held in the prior, related action between ARM and Qualcomm, "[a] court may issue an order under Rule 26(c) to protect information from disclosure for good cause, which requires a movant to show that, absent the protective order, it will suffer a clearly defined and serious injury … balancing relevance, need, confidentiality, and harm." *See ARM Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146 (MN) (D. Del.) (D.I. 207) (the "NUVIA litigation").

First, the documents and information Qualcomm seeks are not relevant and are not discoverable at all. Qualcomm has filed breach of contract claims against ARM, alleging that ARM breached *Qualcomm's* licensing agreement. The terms of ARM's separate agreements with third parties have minimal if any bearing on Qualcomm's claims.

Second, any marginal relevance is far outweighed by the harm to MediaTek that would be caused by disclosing trade secrets and highly sensitive information to its direct competitor. Qualcomm could use information from MediaTek's agreements ███████ ████████████████████████████████████████████████████████████████████ to its advantage, at a heavy cost to MediaTek and its business, particularly when MediaTek does not have access to the same information relating to Qualcomm's agreements with ARM. Decl. ¶ 7.

Finally, the Court should reject any Qualcomm arguments similar to those made in its opposition to Broadcom's motion, D.I. 180, redacted at D.I. 211, that MediaTek's agreements with ARM are relevant to Qualcomm's claim that ARM has acted in bad faith by

3

"failing to provide licensing offers for certain TLA cores and peripherals at commercially reasonable rates." Providing agreements with only licensing and royalty terms received *by MediaTek specifically* for those products purchased *by MediaTek specifically* is neither necessary nor sufficient to discern overall commercially reasonable rates for ARM licenses, which are utilized by hundreds of firms worldwide.

Having demonstrated good cause, MediaTek requests that the Court enter its proposed protective order, filed herewith.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    MediaTek's Agreement With ARM**

MediaTek is a leading innovator in semiconductor solutions, including for mobile devices, smart home appliances, home entertainment, connectivity, and automotive. MediaTek has several long-standing agreements with ARM to license important technology that ARM develops. Decl. ¶ 3. These agreements are highly negotiated and contain terms that are unique to MediaTek and that reveal ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id*. ¶¶ 6-7. These are among MediaTek's most important commercial agreements, as MediaTek relies on licensed ARM intellectual property for the computation function in many of its finished semiconductor products. *Id*. ¶ 3. Qualcomm, a major, direct competitor of MediaTek in the semiconductor space, also contracts with ARM for technology that Qualcomm then integrates into its products. *Id.*

MediaTek's agreements contain highly confidential and commercially sensitive terms related to MediaTek's fees, royalties, and products. *Id*. ¶ 4. Therefore, these agreements are not externally distributed, and even internal access within MediaTek is limited. *Id*. ¶ 6. Negotiation of these terms are made by specific members of a dedicated team from both

4

MediaTek and ARM and sometimes directly between specific executives. *Id.* The agreements are maintained by MediaTek internally on a recordkeeping platform on the company's intranet with limited access only for those employees who have a need to know as part of their role and responsibilities. *Id.* Access is controlled by security measures such as user authentication and regular security reviews. *Id.*

The TLA's definition of "Confidential Information" includes, among other things "terms and conditions of this TLA." *Id.* ¶ 5. Further, Section 3.1 of the TLA restricts disclosure of "Confidential Information:"

> **Restricted Disclosure**. Except as expressly provided by Clauses 3.2, 3.3, 3.4, 3.5, 3.6 and 3.7, each party shall maintain in confidence the Confidential Information disclosed by the other party and apply security measures no less stringent than the measures that such party applies to its own like information, but not less than a reasonable degree of care, to prevent unauthorised disclosure and use of the Confidential Information. The period of confidentiality shall be indefinite with respect to each party's Confidential Information.

Section 3.6 of the TLA further provides that any party required to make disclosure of Confidential Information pursuant to a court order must "promptly notif[y] the other party" and "give[] the other party a reasonable opportunity to contest or limit the scope of such required disclosure (including but not limited to making an application for a protective order)[.]" Decl. ¶ 5.

[REDACTED]

**B.      The Court Establishes A Procedure For Addressing Third-Party Objections To Discovery In This Action.**

Qualcomm and ARM have stipulated to a controlling procedure for resolving disputes over producing a third party's protected materials. The Stipulated Protective Order

entered by this Court permits nonparties whose competitively sensitive information is being sought in discovery to move the Court to protect that information from disclosure. *See* D.I. 84. Under the Stipulated Protective Order, when a party is required to produce a third party's confidential information that is subject to a confidentiality agreement, it must promptly notify the requesting party and the third party in writing, provide the third party with a copy of the discovery requests, and make the requested information available for the third party's inspection. *Id.* ¶ 51. The third party then has 21 days to file a motion for a protective order. *Id.* ¶ 52.

C.  **ARM Notifies MediaTek That Qualcomm Was Seeking MediaTek's Confidential Information.**

On June 24, 2025, ARM sent MediaTek a letter notifying MediaTek that Qualcomm was seeking confidential information related to ARM's agreements with MediaTek, including requests for copies of ███████████████████████████████████████ ███████████████████████ This motion is timely made under the Court's Stipulated Protective Order, D.I. 84, ¶ 52.

D.  **Prior, Similar Motions Have Been Granted By The Court.**

This is not the first dispute between Qualcomm and ARM that has drawn in third parties concerned about production of highly sensitive information. In the *NUVIA* Litigation, *ARM Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146 (MN), D.I. 207 (D. Del. Nov. 27, 2023), this Court applied this same standard applicable here to prevent production of competitively sensitive third-party information related to licensing technology from ARM. *See*, *Id.* D.I. 207 (issuing protective order preventing production of Architecture License Agreement ("ALA") between Apple Inc. and ARM because of the sensitivity of the information, "considering the 2023 Apple ALA's minimal relevance when combined with the harm of disclosure given that Qualcomm's outside counsel will necessarily need to communicate

6

generalized information about the ALA to its client, all of which remains true even given the [preexisting] Protective Order in this case").

## ARGUMENT

Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery of any non-privileged information that is relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The party seeking discovery bears the burden of demonstrating relevance. *See Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, 2017 WL 4310221, at *4 (M.D. Pa. Sept. 28, 2017). The existence of a protective order in an action "is not a substitute for establishing relevance or need[;]" rather, a protective order's purpose is to "prevent harm by limiting disclosure of *relevant* and *necessary* information." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990) (emphasis in original).

Rule 26 limits the scope of discovery by providing that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense" by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). "[G]ood cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984). "[I]t is clear that a court may issue a protective order restricting disclosure of discovery materials to protect a party from being put at a competitive disadvantage." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 890 (E.D. Pa. 1981). In determining whether good cause exists to preclude discovery, the Court considers whether the movant has "show[n] that, absent the protective order, it will suffer a clearly defined and serious injury … balancing relevance, need, confidentiality, and harm." *NUVIA* Litigation, D.I. 207. Indeed, "even if the information sought is relevant, discovery is

not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (cited in *NUVIA* Litigation, D.I. 207).

As it did with Apple's similar motion in the *NUVIA* Litigation, the Court should enter MediaTek's proposed protective order preventing production of its competitively sensitive information because: (1) the information is minimally relevant to Qualcomm's claims; and (2) any need for that information is far outweighed by the harm MediaTek would incur in having its confidential information disclosed to its closest direct competitor. As explained below, MediaTek's motion for protective order should be granted.

## I. THE INFORMATION QUALCOMM SEEKS IS IRRELEVANT TO ITS CLAIMS IN THIS ACTION.

As an initial matter, the Court should grant MediaTek's motion because the information Qualcomm seeks is not relevant to proving Qualcomm's claims. Qualcomm's claims are fundamentally about what Qualcomm alleges are ARM's specific contractual breaches of ARM and *Qualcomm's* agreement, particularly that ARM failed to deliver certain technology it owed to *Qualcomm* under the *Qualcomm-ARM* agreements. *See generally* Second Am. Compl. MediaTek's agreements and annexes will not lead to the discovery of admissible evidence as to whether ARM breached its delivery obligations under *Qualcomm's* licensing agreement. Rather, this case is grounded in ARM's contractual duties to Qualcomm and ARM's conduct fulfilling those duties or not.

In the *NUVIA* Litigation, the Court granted a protective order for similar materials. *See NUVIA* Litigation, *ARM Ltd. v. Qualcomm Inc., et al.,* C.A. No. 22-1146 (MN), D.I. 207 (D. Del. Nov. 27, 2023) ("[b]alancing marginal relevance [of the agreement at issue] against clearly articulated harm" of producing nonparty's "highly bespoke" agreement containing "trade

secrets" to Qualcomm, notwithstanding the protective order already entered in the case). There, Qualcomm argued that the pricing terms in nonparty licensing agreements were "directly relevant" to its defense to *ARM's* claim for specific performance because Qualcomm said those terms could help demonstrate that monetary damages would be sufficient to compensate *ARM* for *its* alleged harm. See *NUVIA* Litigation D.I. 201 & 243. The Court disagreed, and granted a protective order against production of the terms. See *NUVIA* Litigation D.I. 207 & 252.

Qualcomm cannot show that ARM's fulfillment of obligations to third parties has any bearing on whether ARM fulfilled its obligations to Qualcomm. *See, e.g., AdTrader, Inc. v. Google LLC*, 2021 WL 937559, at *2 (N.D. Cal. Mar. 12, 2021) (holding that Google's policies toward nonparty advertisers were not discoverable because they revealed nothing about its performance or compliance with contractual obligations owed to plaintiff advertisers under a separate agreement).

Qualcomm has previously argued that its "claims necessarily involve comparing licensing offers provided to Qualcomm to those provided to third parties" and therefore "[t]he pricing at which Arm licensed these cores and peripherals" to non-parties " will thus provide relevant evidence of the commercially reasonable value of these materials.". *See* Opposition to Broadcom's Motion for Protective Order, D.I. 180, redacted at D.I. 211, p. 8. But none of Qualcomm's claims in its Second Amended Complaint appear to turn on purported commercially reasonable prices. And, in any case, a contract with a single counterparty like MediaTek does not establish general commercially reasonable terms amidst the sea of ARM licensees.

## II. DISCLOSURE OF THE PROPRIETARY INFORMATION POSES A SUBSTANTIAL RISK OF COMPETITIVE HARM TO MEDIATEK.

MediaTek's motion for a protective order should also be granted because the

harm to MediaTek of disclosure far outweighs any marginal benefit to Qualcomm from the additional discovery. *See Mannington Mills*, 206 F.R.D. at 529. Indeed, Qualcomm itself redacted similar information from its own complaint in this Action regarding its architecture license agreement ("ALA") and TLA (*see* Second Am. Compl. ¶ 181), recognizing that such information is sensitive and should not be disclosed to competitors. MediaTek is seeking to prevent Qualcomm from accessing the same type of information, which is also the same type of information that the Court protected for other nonparties in the *NUVIA* Litigation. *NUVIA* Litigation, *ARM Ltd. v. Qualcomm Inc., et al.,* C.A. No. 22-1146 (MN), D.I. 207 (D. Del. Nov. 27, 2023).

The licensing, fees, and royalty information in MediaTek's agreements with ARM are trade secrets. Decl. ¶ 4. A trade secret is information that both "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and is subject to reasonable efforts "to maintain its secrecy.'" *Syngenta Crop Prot., LLC v. Willowood, LLC*, 2016 WL 4925099, at *3 (D. Del. Sept. 14, 2016) (quoting 6 *Del. C.* § 2001(4)(a)-(b)). Information revealing a company's particular cost factors has also been held to constitute a trade secret. *See, e.g.*, *Am. Totalisator Co. v. Autotote Ltd.*, 1983 WL 21374, at *3 (Del. Ch. Aug. 18, 1983) (stating that "information on prices and costs" was considered a trade secret). However, even if these terms were not trade secrets, they are still highly sensitive confidential information.

MediaTek has also demonstrated risk of serious injury if its trade secrets were to be disclosed to Qualcomm, its direct competitor. ███████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

10

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████

      This competitive harm to MediaTek cannot be remedied through a confidentiality agreement that designates the agreements as "attorneys' eyes only." In the *NUVIA* Litigation, this Court recognized "the harm of disclosure given that Qualcomm's outside counsel will necessarily need to communicate generalized information about the ALA to its client, all of which remains true even given the Protective Order in this case." (*NUVIA* Litigation n D.I. 207 (citation omitted)).  The same concerns exist here; Qualcomm's outside counsel will need to communicate to some extent with Qualcomm about the information and documents it receives. *See also Mannington Mills*, 206 F.R.D. at 530-32 (rejecting party's argument that attorney's-eyes-only clause in protective order prevented nonparty competitor from showing that disclosure of its confidential information would be harmful and ultimately quashing subpoena on relevance grounds). For example, if Qualcomm's counsel truly intends to use MediaTek's agreements with Arm to parse whether Qualcomm received commercially reasonable terms, discussions about MediaTek's terms relative to Qualcomm's are inevitable. *See also Realtime Data, LLC v. MetroPCS Texas, LLC*, No. 12CV1048-BTM MDD, 2012 WL 1905080, at *3 (S.D. Cal. May 25, 2012) (denying motion to compel, noting a nonparty's "concerns regarding the security of its [produced information], despite the protective order, cannot be ignored").

      Finally, as discussed above, there is no reason Qualcomm could not discover all of the facts it needs to prove its claims from its own communications with ARM or from ARM's internal communications and documents. Its claims appear to relate to ARM's

breach of Qualcomm's own agreement, where MediaTek's documents are not pertinent. To the extent Qualcomm seeks to establish facts about ARM's dealings with third parties, it is still not appropriate to focus on discovery of contracts with a single counterparty like MediaTek. To the extent that it is relevant, aggregated data is already surely available from ARM. *Cf., e.g., Amgen Inc. v. Samsung Bioepis Co.*, 2025 WL 1207594, at *6 (D.N.J. Apr. 25, 2025) (granting protective order to nonparty competitor, in part, because attorney's-eyes-only provision was not "less restrictive means" to adequately protect nonparty's interests).

Because disclosure of MediaTek's ▮▮▮▮▮▮▮▮▮▮ would cause serious risk of competitive harm, and that harm is not outweighed by any substantial need, the Court should enter a protective order.

## **CONCLUSION**

For all of the foregoing reasons, MediaTek respectfully requests that the Court issue a protective order prohibiting ARM from producing or otherwise disclosing to Qualcomm ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

DATED: July 11, 2025

By: */s/ Geoffrey G. Grivner*
    Geoffrey G. Grivner (#4711)
    Buchanan Ingersoll & Rooney PC
    500 Delaware Avenue, Suite 720
    Wilmington, DE 19801-7047
    302-552-4200
    geoffrey.grivner@bipc.com

    *Attorney for Nonparty MediaTek Inc.*