## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>                Plaintiffs,<br><br>    v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation,<br><br>                Defendant. | C.A. No. 24-490-MN<br><br>**PUBLIC VERSION**<br>**Filed August 8, 2025** |

**NONPARTY MEDIATEK INC.'S CONSOLIDATED REPLY IN FURTHER SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER**

## **TABLE OF CONTENTS**

                                                                                                       **Page**

I.    ARGUMENT ...................................................................................................................1

II.   CONCLUSION ..............................................................................................................7

## **TABLE OF AUTHORITIES**

**Cases**                                                               **Page(s)**

*Blackbird Tech LCC v. Serv. Lighting & Elec. Supplies, Inc.*,
    2016 WL 2904592 (D. Del. 2016) ...................................................................................... 6

*Cipollone v. Liggett Grp., Inc.*,
    785 F.2d 1108 (3d Cir. 1986) .............................................................................................. 4

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.*,
    206 F.R.D. 525 (D. Del. 2002) ..................................................................................... 2, 6-7

*Procter & Gamble Co. v. Boyle-Midway, Inc.*,
    1983 WL 830080 (D. Del. 1983) ........................................................................................ 6

## **ARGUMENT**

Nonparty MediaTek Inc has moved for entry of a protective order preventing Defendant ARM from producing unredacted copies of highly sensitive technology and licensing agreements between ARM and MediaTek to MediaTek's closest competitor, Plaintiff Qualcomm. D.I. 323. The parties' oppositions (ARM Opposition at D.I. 343 and Qualcomm Opposition at D.I. 346) only confirm that MediaTek's motion for a protective order should be granted.

The agreements at issue are not important to this litigation, which is a contract dispute between ARM and Qualcomm that has nothing to do with MediaTek. ARM and Qualcomm argue that ARM's terms with MediaTek are potentially relevant to whether the terms of the licenses that ARM offered to Qualcomm were commercially unreasonable. ARM Opp'n D.I. 343 at 1; Qualcomm Opp'n D.I. 346 at 3.

1

███████████████████████████████████████████████████

███████████████████████████████████████████████████

That should be the end of the story.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████ ████████████████████ ██

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████████████

████████████████. And discovery of irrelevant, highly sensitive third party material is simply not appropriate. *Cf., e.g., Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (cited by this Court in *ARM Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146 (MN) (D. Del.), D.I. 207).

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████ Qualcomm Opp'n D.I. 346 at 4.  But this does not make MediaTek's agreements themselves "uniquely relevant to Qualcomm's claims" as Qualcomm argues. █

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

2



Qualcomm tries to distinguish this Court's prior decision in *ARM Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146 (MN) (D. Del.) (the "NUVIA litigation"), in which this Court did not order production of a non-party's licensing agreements with ARM. Qualcomm notes that there were further proceedings in the NUVIA litigation, and argues that the Court ultimately rejected arguments about the lack of relevance of the non-party agreements. Opp'n D.I. 346 at 5. Specifically, the Court held that ARM could not put on arguments that Qualcomm's conduct harmed its ability to negotiate other agreements that it had avoided producing in the first place, as Qualcomm recognizes. Opp'n D.I. 346 at 2, citing Opp'n D.I. 346 Ex. 3, 26:20–40:22. To be clear, the Court did *not* order production of the nonparty agreements there at issue.

ARM makes different arguments that are also unavailing. It asserts that there is no feasible alternative to producing MediaTek's agreements with ARM, though it says redactions would be appropriate. ARM Opp'n D.I. 343 at 1 ("Turning over MediaTek-Arm agreements with no redactions would needlessly expose highly sensitive commercial terms that have no relevance to the issues in the case."). But producing even redacted copies of MediaTek's highly

3

confidential agreements to MediaTek's closest competitor would be the wrong outcome: The more appropriate alternative would be for ARM to ████████████████████ ████████████████████████████████████████████████████████.

To the extent the Court determines that anything other than production ████████ ████████ is necessary, Qualcomm's outside counsel could examine anonymized or averaged pricing of ARM's various licensees rather than receiving MediaTek's specific agreements. More generalized information about ARM's other licensee agreements ████████ ████████ would be reflect commercial reasonableness more than any one party's particular (and highly confidential) agreement. Further, internal documents and witness testimony would sufficiently describe ARM's general pricing and ████████████.

The oppositions not only fail to show relevance of the confidential MediaTek agreements at issue, the filings also confirm the seriousness of MediaTek's confidentiality concerns. MediaTek has demonstrated a "particular need for protection." *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121, 1114 (3d Cir. 1986) (finding good cause for a protective order where "revelation of technical information [] might hurt one of the [producing company's] competitive positions"). These concerns include a need to protect trade secrets and highly sensitive information regarding ████ ██ ████ ██ ████ ██ ████ ████, as detailed in MediaTek's motion and supporting declaration. *See* D.I. 323. The risk of these harms still exists even if, as ARM suggested, information unrelated to the products at issue was redacted, because the information the Parties want—████████████████ ████████████████████████████—is also the information most competitively sensitive to MediaTek. *See* D.I. 323, Ex. 1 ¶ 3 (MediaTek's Declaration stating that "MediaTek routinely pitches against Qualcomm for significant business opportunities in these markets and competes with Qualcomm across many industry sectors to develop the best chips to meet end customers'

4

needs.  MediaTek's ARM-licensed CPU technology is a key component in many of these competitive products.").

This particular need for protection is not remedied by an outside-counsel-eyes-only provision.  As Judge Hatcher recognized when issuing a protective order preventing production of nonparty Apple's licensing agreement in the NUVIA litigation, Qualcomm could use nonparties' information from licensing agreements to "obtain unfair competitive advantages." NUVIA litigation, D.I. 207.  This "harm of disclosure" existed "given that Qualcomm's outside counsel will necessarily need to communicate generalized information about the [licensing agreement] to its client, all of which remains true even given the Protective Order in this case." *Id*.  Though both ARM and Qualcomm attempt to distinguish this order, the Court's previous decisions in the NUVIA litigation remain highly relevant and show the importance of protecting sensitive information and avoiding risks of disclosure even to outside counsel.  ARM Opp'n D.I. 343 at 4-5; Qualcomm Opp'n D.I. 346 at 2; NUVIA litigation, D.I. 207.  That the claims are different here does not impact the sensitivity of the licensing agreements' terms.

In fact, MediaTek's agreements here are even more sensitive than the third party agreements that the Court protected from disclosure in the NUVIA litigation.  While in that case the Court noted that Qualcomm was Apple's "indirect competitor and customer," here Qualcomm is MediaTek's *most direct and closest* competitor.  NUVIA litigation, D.I. 207. Indeed, among the many third parties whose interests might be implicated in this litigation, MediaTek has the highest risk of commercial harm.  *See* D.I. 323, Ex. 1 ¶¶ 3, 7 (MediaTek's Declaration stating that Qualcomm "directly compete[s] with MediaTek in the semiconductor space. For instance, both companies are leaders in producing smartphone systems on chips ('SoCs') for use with the Android operating system. . . .  MediaTek would suffer serious competitive injury if the ▮▮▮▮▮▮▮▮▮▮ were produced to Qualcomm, its exceptionally

5

close direct competitor."). The potential informational asymmetry between MediaTek and Qualcomm, should MediaTek's sensitive information be produced to Qualcomm, heightens the danger. Qualcomm could, for example, point to selective and out of context terms of MediaTek agreements with ARM to argue that Qualcomm can provide cheaper or more complete products than MediaTek can deliver.

Finally, as this Court noted in the NUVIA litigation, a protective order is appropriate notwithstanding an outside counsel eyes only provision because meaningful representation would require client consultation, which in turn could compromise confidentiality in a way that cannot be rectified.[1] For all the same reasons, a protective order is appropriate here. *See also, e.g., Blackbird Tech LCC v. Serv. Lighting & Elec. Supplies, Inc.*, 2016 WL 2904592, at *5 (D. Del. 2016) (ordering a protective order limiting plaintiff's counsel use of confidential information, because even when "presum[ing] the good faith of [plaintiff's] counsel, once such confidential information is disclosed, the bell cannot be unrung"); *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 530-32 (D. Del. 2002) (finding potential harm to a nonparty if required to disclose confidential information to a party-competitor, despite an attorney's eyes only limitation).

---

[1] Qualcomm's citation to *Blackbird Tech LLC v. Serv. Lighting and Electrical Supplies, Inc.*, Qualcomm Opp'n D.I. 346 at 6-7, does not support its argument that outside counsel will not necessarily need to communicate sensitive information to in-house attorneys. 2016 WL 2904592, at *5 (D. Del. 2016). Rather, *Blackbird Tech* recognizes that disclosure of sensitive information to an attorney who "work[ed] closely" with the competitive decision-making in-house attorneys "exacerbate[d] the potential for inadvertent misuse or disclosure." *Id.* at *4. Similarly, Qualcomm's citation to *Procter & Gamble Co. v. Boyle-Midway, Inc.*, is inapposite because, there, the concern regarding disclosure was that in-house legal counsel may reveal sensitive information to in-house patent staff was more speculative, in contrast to the obvious necessity of communications between outside counsel and in-house attorneys about a defense in an active litigation. 1983 WL 830080, at *1 (D. Del. 1983)

## CONCLUSION

For the foregoing reasons and those set forth in MediaTek's Motion, MediaTek respectfully requests that the Court issue a protective order prohibiting ARM from producing or otherwise disclosing to Qualcomm ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ between ARM and MediaTek.

DATED: August 1, 2025

By: */s/ Geoffrey G. Grivner*

    Geoffrey G. Grivner (#4711)
    Buchanan Ingersoll & Rooney PC
    500 Delaware Avenue, Suite 720
    Wilmington, DE 19801-7047
    302-552-4200
    geoffrey.grivner@bipc.com

    *Attorney for Nonparty MediaTek Inc.*