**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

QUALCOMM INC., a Delaware corporation,
and QUALCOMM TECHNOLOGIES, INC.,
a Delaware corporation,

               Plaintiffs,

     v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a
U.K. corporation,

               Defendant.

REDACTED - PUBLIC VERSION
(Filed November 21, 2025)

C.A. No. 24-490-MN



---

**VOLUME 2 OF 2 (EXHIBITS 20-71) TO THE
DECLARATION OF MATTHEW J. MCINTEE IN SUPPORT OF ARM HOLDINGS
PLC'S CONCISE STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT UNDER *NOERR-PENNINGTON* AND FOR LACK OF
CAUSATION WITH RESPECT TO QUALCOMM'S GOOD FAITH AND FAIR
DEALING, TORTIOUS INTERFERENCE, AND UCL CLAIMS (COUNTS III-VI); AND
FOR PARTIAL SUMMARY JUDGMENT ON QUALCOMM'S BREACH OF THE
IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT III)**

Dated: October 24, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

I, Matthew J. McIntee, declare as follows:

I am an attorney with the law firm of Kirkland & Ellis LLP, counsel for Arm Holdings PLC ("Arm") in the above referenced action. I submit this declaration in support of Arm's Concise Statement Facts in Support of its Motion for Summary Judgment on Qualcomm's Tortious Interference Claims (Counts III-V) ("TI SOF).

1.    Attached as **Exhibit 1** is a true and correct excerpted copy of D.I. 21 in C.A. No. 1:22-cv-01146-MN, dated November 15, 2022.

2.    Attached as **Exhibit 2** is a true and correct excerpted copy of D.I. 322 in C.A. No. 1:22-cv-01146-MN, dated April 11, 2024.

3.    Attached as **Exhibit 3** is a true and correct copy of D.I. 137 in C.A. No. 1:24-cv-00490-MN, Qualcomm's Second Amended Complaint, dated June 3, 2025. ████████████ ████

4.    Attached as **Exhibit 4** is a true and correct copy of an October 22, 2024 letter from Spencer Collins to Ann Chaplin, bearing Bates stamp ARMQC_02749015. ████████ ████

5.    Attached as **Exhibit 5** is a true and correct copy of an October 28, 2024 letter from Ann Chaplin to Spencer Collins, bearing Bates number QCVARM_0573354. ████████ ████

6.    Attached as **Exhibit 6** is a true and correct excerpted copy of a U.S. Securities and Exchange Commission Form 10-K Annual Report for Qualcomm Incorporated for the fiscal year ended September 29, 2024, bearing Bates stamp ARMQC_02793451.

7.    Attached as **Exhibit 7** is a true and correct copy of an October 22, 2024 Bloomberg article by Ian King, bearing Bates stamp ARMQC_02794057.

8.      Attached as **Exhibit 8** is a true and correct excerpted copy of the November 20, 2024 Pre-Trial Conference transcript in C.A. No. 1:22-cv-01146-MN.

9.      Attached as **Exhibit 9** is a true and correct copy of a January 8, 2025 letter from Spencer Collins to Ann Chaplin, bearing Bates stamp QCVARM_0847182. ███████████

███

10.     Attached as **Exhibit 10** is a true and correct copy of a January 22, 2025 letter from Ann Chaplin to Spencer Collins, bearing Bates stamp QCVARM_0573675. ███████████

███

11.     Attached as **Exhibit 11** is a true and correct copy of a January 30, 2025 letter from Spencer Collins to Ann Chaplin, bearing Bates stamp QCVARM_0847184. ███████████

███

12.     Attached as **Exhibit 12** is a true and correct excerpted copy of the July 11, 2025 deposition transcript of Jonathan Weiser. ███████████

13.     Attached as **Exhibit 13** is a true and correct excerpted copy of the September 5, 2025 Rebuttal Report of Steven Richards, CPA. ███████████

14.     Attached as **Exhibit 14** is a true and correct copy of the July 3, 2025 deposition transcript of Cristiano Amon. ███████████

15.     Attached as **Exhibit 15** is a true and correct copy of the September 19, 2025 Expert Reply Report of Eric A. Posner. ███████████

16.     Attached as **Exhibit 16** is a true and correct copy of the October 2, 2025 deposition transcript of Eric Posner. ███████████

17.     Attached as **Exhibit 17** is a true and correct copy of the August 8, 2025 Expert Report of Eric A. Posner. ███████████

18.     Attached as **Exhibit 18** is a true and correct excerpted copy of the July 11, 2025 deposition transcript of Ann Chaplin. ███████████████

19.     Attached as **Exhibit 19** is a true and correct copy of Qualcomm's Third Supplemental Responses and Objections to Arm's First Set of Interrogatories (Nos. 1-9), dated August 8, 2025. ███████████

20.     Attached as **Exhibit 20** is a true and correct copy of a June 6, 2024 email, bearing Bates stamp QCVARM_0856270. ███████████████

21.     Attached as **Exhibit 21** is a true and correct excerpted copy of the September 5, 2025 Expert Report of Thomas W. Britven. ████████████

22.     Attached as **Exhibit 22** is a true and correct copy of an October 2, 2024 email, bearing Bates stamp QCVARM_1151620. ████████████

23.     Attached as **Exhibit 23** is a true and correct copy of an October 21, 2024 email thread, bearing Bates stamp QCVARM_0865022. █████████████

24.     Attached as **Exhibit 24** is a true and correct copy of an October 25, 2024 email thread, bearing Bates stamp QCVARM_1070034. ███████████

25.     Attached as **Exhibit 25** is a true and correct copy of an October 30, 2024 email thread, bearing Bates stamp QCVARM_0855474. ███████████

26.     Attached as **Exhibit 26** is a true and correct copy of an October 31, 2024 email thread and attachment, bearing Bates stamp QCVARM_0863641. ████████████

27.     Attached as **Exhibit 27** is a true and correct copy of a November 9, 2024 email thread and attachment, bearing Bates stamp QCVARM_0864833. ████████████

28.     Attached as **Exhibit 28** is a true and correct copy of a November 11, 2024 email thread and attachment, bearing Bates stamp QCVARM_0864967. ████████████

29.     Attached as **Exhibit 29** is a true and correct copy of a ████████████

█████████████████████████████, bearing Bates stamp QCVARM_0855434.

████████████████

30.     Attached as **Exhibit 30** is a true and correct copy of a ████████████

█████████████████████████████, bearing Bates stamp QCVARM_0855460.

████████████████

31.     Attached as **Exhibit 31** is a true and correct copy of a ████████████

█████████████████████████████, bearing Bates stamp QCVARM_0855466.

████████████████

32.     Attached as **Exhibit 32** is a true and correct copy of a ████████████

█████████████████████████████, bearing Bates stamp QCVARM_0855471.

████████████████

33.     Attached as **Exhibit 33** is a true and correct copy of a ████████████

█████████████████████████████, bearing Bates stamp QCVARM_0855483.

████████████████

34.     Attached as **Exhibit 34** is a true and correct copy of a ████████████

█████████████████████████████, bearing Bates stamp QCVARM_0855488.

████████████████

35.     Attached as **Exhibit 35** is a true and correct copy of a ████████████

█████████████████████████████, bearing Bates stamp QCVARM_0855495.

████████████████

36.     Attached as **Exhibit 36** is a true and correct copy of a ███████████████████

███████████████████████████████████, bearing Bates stamp QCVARM_0855501.

███████████████████

37.     Attached as **Exhibit 37** is a true and correct copy of a ███████████████████

███████████████████████████████████, bearing Bates stamp QCVARM_0855508.

███████████████████

38.     Attached as **Exhibit 38** is a true and correct copy of a ███████████████████

███████████████████████████████████, bearing Bates stamp QCVARM_0863626.

███████████████████

39.     Attached as **Exhibit 39** is a true and correct copy of a ███████████████████

███████████████████████████████████, bearing Bates stamp QCVARM_0863681.

███████████████████

40.     Attached as **Exhibit 40** is a true and correct copy of a ███████████████████

███████████████████████████████████, bearing Bates stamp QCVARM_0863685.

███████████████████

41.     Attached as **Exhibit 41** is a true and correct copy of a ███████████████████

███████████████████████████████████, bearing Bates stamp QCVARM_0863688.

███████████████████

42.     Attached as **Exhibit 42** is a true and correct copy of a ███████████████████

███████████████████████████████████, bearing Bates stamp QCVARM_0865045.

███████████████████

43.     Attached as **Exhibit 43** is a true and correct copy of a ███████████, bearing Bates stamp QCVARM_0865345.
████████████

44.     Attached as **Exhibit 44** is a true and correct copy of a ███████████, bearing Bates stamp QCVARM_0865376.
████████████

45.     Attached as **Exhibit 45** is a true and correct copy of a ███████████, bearing Bates stamp QCVARM_1016154.
████████████

46.     Attached as **Exhibit 46** is a true and correct copy of a ███████████, bearing Bates stamp QCVARM_1024793.
████████████

47.     Attached as **Exhibit 47** is a true and correct copy of a ███████████, bearing Bates stamp QCVARM_1024821.
████████████

48.     Attached as **Exhibit 48** is a true and correct copy of a ███████████, bearing Bates stamp QCVARM_1024868.
████████████

49.     Attached as **Exhibit 49** is a true and correct copy of a ███████████, bearing Bates stamp QCVARM_1029063.
████████████

50.    Attached as **Exhibit 50** is a true and correct copy of a ███████████████████ ████████████████████████████████████, bearing Bates stamp QCVARM_1120812. ████████████████████

51.    Attached as **Exhibit 51** is a true and correct copy of a ███████████████████ ████████████████████████████████████, bearing Bates stamp QCVARM_1120839. ████████████████

52.    Attached as **Exhibit 52** is a true and correct copy of a ███████████████████ ████████████████████████████████████, bearing Bates stamp QCVARM_1120974. ████████████████

53.    Attached as **Exhibit 53** is a true and correct copy of a ███████████████████ ████████████████████████████████████, bearing Bates stamp QCVARM_1120983. ████████████████

54.    Attached as **Exhibit 54** is a true and correct copy of a ███████████████████ ████████████████████████████████████, bearing Bates stamp QCVARM_1121004. ████████████████

55.    Attached as **Exhibit 55** is a true and correct copy of a ███████████████████ ████████████████████████████████████, bearing Bates stamp QCVARM_1121029. ████████████████

56.    Attached as **Exhibit 56** is a true and correct copy of a ███████████████████ ████████████████████████████████████, bearing Bates stamp QCVARM_1121156. ████████████████

57.    Attached as **Exhibit 57** is a true and correct copy of a ███████████████ ████████████████████████████████████, bearing Bates stamp QCVARM_1121163. ██████████████████

58.    Attached as **Exhibit 58** is a true and correct copy of a ███████████████ ████████████████████████████████████, bearing Bates stamp QCVARM_1121203. █████████████████

59.    Attached as **Exhibit 59** is a true and correct copy of a ███████████████ ████████████████████████████████████, bearing Bates stamp QCVARM_1121207. ████████████████

60.    Attached as **Exhibit 60** is a true and correct copy of a ███████████████ ████████████████████████████████████, bearing Bates stamp QCVARM_1121244. █████████████████

61.    Attached as **Exhibit 61** is a true and correct copy of a February 5, 2025 email thread, bearing Bates stamp QCVARM_0864713. █████████████████

62.    Attached as **Exhibit 62** is a true and correct copy of a March 7, 2025 email thread, bearing Bates stamp QCVARM_1069705. ████████████████

63.    Attached as **Exhibit 63** is a true and correct copy of a May 29, 2025 email thread, bearing Bates stamp QCVARM_1120994. ████████████████

64.    Attached as **Exhibit 64** is a true and correct copy of the July 21, 2025 ████████ ████████████████████████████████████, bearing Bates stamp QCVARM_1151573. ██████████████████

65.    Attached as **Exhibit 65** is a true and correct copy of a May 23, 2025 email thread and attachment, bearing Bates stamp QCVARM_1120971. ████████████████████

66.    Attached as **Exhibit 66** is a true and correct copy of a May 28, 2025 email thread, bearing Bates stamp QCVARM_1120979. ██████████████████

67.    Attached as **Exhibit 67** is a true and correct excerpted copy of the July 1, 2025 deposition transcript of Pavankumar Mulabagal. ██████████████████

68.    Attached as **Exhibit 68** is a true and correct copy of a June 11, 2024 email thread, bearing Bates stamp QCVARM_1069945. ██████████████████

69.    Attached as **Exhibit 69** is a true and correct copy of the August 8, 2025 Expert Report of Patrick F. Kennedy, Ph.D. ██████████████████

70.    Attached as **Exhibit 70** is a true and correct excerpted copy of the July 17, 2025 deposition transcript of Paul Kranhold. ██████████████████

71.    Attached as **Exhibit 71** is a true and correct excerpted copy of the September 26, 2025 deposition transcript of Timothy S. Simcoe, Ph.D. ██████████████████


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 24th day of October 2025 at Washington, D.C.

*/s/ Matthew J. McIntee*
Matthew J. McIntee

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 24, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

John Poulos
NORTON ROSE FULBRIGHT US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

# TI SOF

# Exhibit 20
## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 21

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 22

# (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 23

# (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 24

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 25
## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 26

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 27

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 28

**(REDACTED IN ITS ENTIRETY)**

# TI SOF

# Exhibit 29

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 30

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 31

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 32

**(REDACTED IN ITS ENTIRETY)**

# TI SOF

# Exhibit 33
**(REDACTED IN ITS ENTIRETY)**

# TI SOF

# Exhibit 34

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 35

# (REDACTED IN ITS ENTIRETY)

TI SOF

# Exhibit 36
**(REDACTED IN ITS ENTIRETY)**

# TI SOF

# Exhibit 37
## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 38

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 39
## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 40

**(REDACTED IN ITS ENTIRETY)**

# TI SOF

# Exhibit 41

# (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 42
## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 43

# (REDACTED IN ITS ENTIRETY)

TI SOF

# Exhibit 44
**(REDACTED IN ITS ENTIRETY)**

# TI SOF

# Exhibit 45

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 46
## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 47

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 48

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 49
## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 50

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 51

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 52
## (REDACTED IN ITS ENTIRETY)

TI SOF

# Exhibit 53
**(REDACTED IN ITS ENTIRETY)**

# TI SOF

# Exhibit 54

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 55

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 56
## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 57
## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 58
## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 59

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 60

# (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 61

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 62
## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 63

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 64

## (REDACTED IN ITS ENTIRETY)

# TI SOF

# Exhibit 65

## (REDACTED IN ITS ENTIRETY)

TI SOF

# Exhibit 66
**(REDACTED IN ITS ENTIRETY)**

TI SOF

# Exhibit 67

Case 1:24-cv-00490-MN    Document 511    Filed 11/21/25    Page 62 of 75 PageID #: 22499

7/1/2025          Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.  Pavankumar Mulabagal

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


QUALCOMM INCORPORATED, A DELAWARE        )

CORPORATION; QUALCOMM TECHNOLOGIES,      )

INC., A DELAWARE CORPORATION,            )

                                         ) C.A. No. 24-490-MN

                    PLAINTIFFS,  )

                                         )

              v.                         )

                                         )

ARM HOLDINGS PLC, F/K/A ARM LTD.,        )

A U.K. CORPORATION,                      )

                                         )

                    DEFENDANT.  )

_____)

              * * *  ██████ █████████  * * *

              * * *  ████████ █████ ████  * * *

        VIDEO-RECORDED DEPOSITION OF

             PAVANKUMAR MULABAGAL

      IN HIS PERSONAL AND 30(B)(6) CAPACITIES

            TUESDAY, JULY 1, 2025

                9:50 A.M. PDT

            PALO ALTO, CALIFORNIA


      REPORTED BY AUDRA E. CRAMER, CSR NO. 9901

_____

              DIGITAL EVIDENCE GROUP

            1730 M Street, NW, Suite 812

              Washington, D.C. 20036

                (202) 232-0646



Page 6

1      THE VIDEOGRAPHER:  The questioning
2  attorney.
3      MR. FRENTZEN:  William Frentzen for the
4  Defendant, Arm Holdings.
5      MR. HUTTINGER:  Henry Huttinger for the
6  Defendant, Arm Holdings.
7      MR. SCOTT:  Conrad Scott, Paul Weiss,
8  for Qualcomm.
9      THE VIDEOGRAPHER:  Okay.  Will the
10  court reporter please introduce herself and then
11  administer the oath.
12      THE REPORTER:  Audra Cramer,
13  CSR No. 9901.
14
15      PAVANKUMAR MULABAGAL,
16      having been first duly sworn, was
17      examined and testified as follows:
18
19      MR. FRENTZEN:  Thank you.
20  ///                    ///
21
22

Page 7

1              EXAMINATION
2  BY MR. FRENTZEN:
3      Q.  Good morning, sir.
4      A.  Good morning.
5      Q.  We haven't met before; is that right?
6      A.  Correct, yes.
7      Q.  Okay.  My name's Will Frentzen.  I'm
8  working for the Defendant, Arm Holdings.
9          You understand that?
10      A.  Yes.
11      Q.  Okay.  Can you state your name for the
12  record, please, sir.
13      A.  Pavankumar Mulabagal.
14      Q.  Where do you live currently?
15      A.
16
17      Q.  What do you do for a living?
18      A.  I am in the -- I work as a senior
19  director of sales and business development at
20  Qualcomm.
21      Q.  Okay.  And I'm sorry.  Did you "say
22  senior director"?

Page 8

1      A.  Yes.
2      Q.  Could you tell us briefly:  What are
3  your job responsibilities?
4      A.  Sure.  So I focus mainly on the XR and
5  also other product lines that Qualcomm produces.
6  Work with customers.  The main customer and, in
7  fact, the only customer I interact with is
8
9
10
11
12
13      In general, the role is about
14  developing new businesses, taking existing
15  products to market, holistic account management
16  my team and I are...
17      Q.  Have you ever been deposed before?
18      A.  No.
19      Q.  Do you understand that today you're
20  being deposed both with respect to things you
21  may know, but also with respect to the larger
22  topics that may have arisen between Qualcomm and

Page 9

1
2      A.  I do.
3      Q.  Okay.  All right.  Have you been
4  informed about what those topics are that you're
5  expected to be able to cover for Qualcomm?
6      A.  Yes.
7      Q.  Okay.  Is there any reason why you
8  can't testify here today with respect to those
9  topics accurately and completely?
10      A.  There is no reason.
11      Q.  Okay.  Thank you.
12          Do you understand that part of what
13  we're going to talk about today is a
14  negotiation, if you will, between Qualcomm and
15      about a couple of business opportunities?
16      A.  Yes.
17      Q.  Can you tell us what the current state
18  of that negotiation is, meaning as of today?
19      A.

3  (Pages 6 to 9)



**Page 54**

1    **And then do you see he says,** ███████
     ██████████████████████
     ████ **?**
5    **Do you see that?**
6    A.  Yes.
7    **Q.  After this email on** ██████████
     ██████████████████████
     ██ **?**
10   A.  After -- yes.  Afterwards, yes.
11   **Q.  In other words, meaning once**
     ██████████████████████
14   MR. SCOTT:  Objection.  Form.
15   THE WITNESS: ████████████
     ██████████████████████
     ██████████████████████
     ██████████████████████
     ██████████████████████
     ██████████████████ **.**

**Page 55**

1    ██████████████████████
     ██████████████████████
     ██████████████████████
     ██████████████████████
     ██████████████████████
     ██████████████████████
13   BY MR. FRENTZEN:
14   **Q.  Right.  But** ████████████
     ██████████████████████
17   MR. SCOTT:  Objection.  Form.
18   THE WITNESS: ████████████
     ██████████████████████
     ██████████████████████
     ██████████████████████

**Page 56**

     ██████████████████████
     ██████████████████████
     ██████████████████████
5    BY MR. FRENTZEN:
6    **Q.  Who told you that?**
7    A.  It was coming from couple of folks at
8    ████████
9    **Q.  Who?**
10   A.  ████████
11   **Q.  Is that a first or last name?**
12   A.  That's her first name.
13   **Q.  Do you know the last name?**
14   A.  ████████
15   **Q.  Can you spell it?**
16   A.  ████████ **.**
17   **Q.  Who else?**
18   A.  I believe ████████ may have mentioned
19   it as well.  But these are all verbal
20   conversations in terms of, yeah, there's a --
     ██████████████████████
     ██████████████████████

**Page 57**

1    ██████████████████████
     ██████████████████████
5    **Q.  Are you saying there were no**
6    ██████████████████████
     ██ **?**
8    MR. SCOTT:  Objection.  Form.
9    THE WITNESS:  I wouldn't say there was
10   no ████████████████████
     ██████████████████████
     ██████████████████████
     ██████████████████████
15   BY MR. FRENTZEN:
16   **Q.  Was that ever put in writing that**
17   **you're aware of,** ████████ **?**
18   A.  We discussed it.
     ██████████████████████
     ██████████████████████

15 (Pages 54 to 57)

7/1/2025    Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.  Pavankumar Mulabagal

Page 58

```
1    Q.  No, I'm saying, did █████ ever tell you
2  in writing, ██████████████
3    A.  I don't believe so.
4    Q.  All right.  Are you aware that ████
  ████████████████████████████████████
  ███████████████████████████?
7    A.  Yes.  I don't know if it's November or
8  late October.  Late October or -- may be the
9  time period, yes.
10    Q.  Are you aware whether or not there were
11  any █████████████████████████████████████
  ██████████████████?
13    A.  I'm not aware.
14       MR. FRENTZEN:  Okay.  All right.  Can I
15  get Tab 14, please.
16       This is 4.
17          (Whereupon, Exhibit 4 was
18          marked for identification.)
19  BY MR. FRENTZEN:
20    Q.  Sir, can you took at what's been marked
21  as Exhibit 4.
22       Do you recognize what that is?
```

Page 59

```
1    A.  Yes.
2    Q.  All right.  Does Exhibit 4 appear to be
3  another email string and you were a recipient of
4  that string?
5    A.  Yes.
6    Q.  Does the first email in the chain
7  show -- and it's from somebody named ██████
8    A.  Yeah.
9    Q.  Do you know who that is?
10    A.  Yes.
11    Q.  Who's that?
12    A.  He's part of my team -- ████ team.  So
13  he reports to me.  Both of us interface with
14  ████
15    Q.  All right.  And so on November 4, 2024,
16  he sent an email, and you were cc'd on it;
17  right?
18    A.  Yes.
19    Q.  And the subject is ████████████
  ████; right?
21       Is that right?
22    A.  Yes.
```

Page 60

```
1    Q.  It says, ████████████████████
  ████████████████████
3       Do you know who █ is?
4    A.  Yes.
5    Q.  Who's ████
6    A.  ████ was a ████████ sourcing interface.
7    Q.  And so, based on this, did Mr. ████
8  report that -- I'm going to the first couple
9  bullets -- ████████████████████████████
  ████████████████████████████████
  ████████████████████████████████
  ████████████████████████████████
  ██████████████████████ by end of
14  week" -- "EOW."
15       I take that to be "end of week"; is
16  that right?
17    A.  Yes.
18    Q.  Okay.  So at that point ████████
  ████████████████████████████████
  ███████████?
21       MR. SCOTT:  Objection.  Form.
22       THE WITNESS:  I mean, yes, they were --
```

Page 61

```
1  ████████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████████
8  BY MR. FRENTZEN:
9    Q.  Okay.  And if you take a look down,
10  there's a couple of, like, black bullet points,
11  and then if you look internally, there's a
12  couple of white ones.
13    A.  Uh-huh.
14    Q.  And the last white one within that
15  second black one -- are you with me?
16       It says "████████ to start with?
17    A.  Yeah.
18    Q. ████████████████████████████████
  ████████████████████████████████████
  ████████████████ right?
22    A.  Yes.
```

16  (Pages 58 to 61)

# TI SOF

# Exhibit 68

## (REDACTED IN ITS ENTIRETY)

TI SOF

# Exhibit 69
**(REDACTED IN ITS ENTIRETY)**

# TI SOF

# Exhibit 70

Page 1

1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF DELAWARE

3      QUALCOMM INCORPORATED a Delaware corporation, ) Case No.

       QUALCOMM TECHNOLOGIES, INC., a Delaware       ) 24-490-MN

4      corporation,                                  )

                                                     )

5           Plaintiffs,                              )

                                                     )

6         vs.                                        )

                                                     )

7      ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K.      )

       corporation,                                  )

8                                                    )

9           Defendant.                               )

       _____  )

10     ████████████████████████ VIDEOTAPED 30(b)(6)  and

11           30(b)(1) DEPOSITION OF PAUL KRANHOLD

12                 San Francisco, California

13                 Thursday, July 17, 2025

14

15

16            REPORTED BY: Derek L. Hoagland

17                 CSR No. 13445

18

19

20

21

22

23

24

25

Page 10

1  other clients that don't relate to ARM and we need to
2  sort out any issues about the proprietary of this
3  witness in answering them, I'm here for that purpose as
4  well.  But I did agree with you that the primary person
5  to handle that would be the witness's counsel.
6       MS. NYARADY:  So, I mean, just to be clear, what
7  you're saying now is different than what we talked
8  about.  You're saying that you're representing a
9  privilege as it interacts with ARM's privilege.  I mean,
10 before this deposition started, you told me that you
11 were representing MoFo's privilege and you thought there
12 was a separate MoFo privilege.  Is that the case.
13      MR. BIRNBAUM:  I don't do that until I hear the
14 question.  I don't know.  I don't know that answer.  I
15 do think a separate privilege exists, but talking
16 hypothetically isn't very constructive.  My
17 understanding is you wanted that only to be as it
18 relates to ARM, and that's why I phrased it that way.
19 But you won't hear me separately objecting and --
20 from -- from Kirkland & Ellis's objections regarding
21 ARM's privilege.
22      MS. NYARADY:  Okay.  And also, just for the
23 record, I don't think it's appropriate for you to make
24 any objections related to confidentiality issues with
25 respect to third parties, which I think you -- you're

Page 11

1  alluding to.  But we can take that as it comes when we
2  get there.
3       MR. BIRNBAUM:  Yeah.  Again, you know what
4  questions you're going to ask.  I don't.  So the
5  proprietary will probably depend on the question.
6       MS. NYARADY:  Good morning.  Could you state and
7  spell your name for the record, please.
8       THE DEPONENT:  Paul Kranhold, K-r-a-n-h-o-l-d.
9
10             PAUL KRANHOLD,
11       having first been duly sworn,
12       was examined and testified as follows:
13
14             EXAMINATION
15 BY MS. NYARADY:
16 Q.   ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋
   ▋▋ ▋▋ ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋
   ▋▋ ▋▋   ▋▋▋▋▋▋
20      MR. LEWIS:  I think that's right.
21      THE DEPONENT:  Is that right?
22      MR. LEWIS:  ▋▋▋▋▋▋.
23      THE DEPONENT:  Right there.
24      MR. LEWIS:  Yeah.
25 ///

Page 12

1  BY MS. NYARADY:
2  Q.   And that's in San Francisco?
3  A.   Yeah.
4  Q.   Okay.  And you're here today testifying pursuant
5  to two separate subpoenas, right?
6  A.   I'm only aware of one, but.
7  Q.   Which subpoena are you aware of?  What's the
8  nature of the subpoena that you're aware of?
9  A.   The subpoena involving how Bloomberg came to
10 know about the notice of termination that was sent to
11 your client.
12      MS. NYARADY:  Okay.  Let me see if I can help
13 out a little bit.
14      I'm handing you what's been marked as FGS
15 Exhibit 1 and 2.
16      (Exhibit Nos. 1 and 2 marked for
17 identification.)
18      MR. LEWIS:  And, Counsel, we've already
19 stipulated that he's here to testify in response to both
20 subpoenas.
21      MS. NYARADY:  Okay.  So just to clarify on the
22 record.
23 BY MS. NYARADY:
24 Q.   Do you understand that you're here to testify in
25 your personal capacity and then also on behalf of FGS?

Page 13

1  A.   Yes.
2  Q.   Okay.
3       MR. LEWIS:  Thank you.
4  BY MS. NYARADY:
5  Q.   And FGS has asked that you testify on their
6  behalf at this deposition, correct?
7  A.   Yes.
8  Q.   And you've agreed to do so?
9  A.   I have.
10 Q.   Any reason you can't do that?
11 A.   No.  None that I'm aware of.
12 Q.   Have you ever been deposed before?
13 A.   No.
14 Q.   Well, welcome.
15 A.   Thank you.
16 Q.   So FGS -- I guess on your bio, there's a company
17 called Sard Verbinnen & Company?
18 A.   Mm-hmm.
19 Q.   That became FGS Global, right?
20 A.   Correct.
21 Q.   When did that happen?
22 A.   December of 2021.
23 Q.   And you were at Sard -- am I saying that right,
24 Sard Verbinnum -- Verbinnen?
25 A.   Yes.

4 (Pages 10 - 13)



Page 70

BY MS. NYARADY:

1  BY MS. NYARADY:
2  Q.    Exhibit FGS 8 is Bates numbered FGS_366 to 368.
3  ███████████████████████████████████
   ███████████████████████████████████████
   ██████████████████████████████████.
6       Do you recall receiving this email?
7  A.    Yes.
8  Q.    And the -- there's an attachment -- well, the
9  subject line says '██████ and there's an attachment
10 that is called '████████████████████████."
11      Do you see that?
12 A.    Mm-hmm.
13 Q.    And it then attaches █████████████████
   ██ ██████████████, correct?
15 A.    Yes.
16 Q.    Was this the first time that you saw, in any
17 form, █████████████████████████████████████
   ██████████████████████████████████████████
   ████████████████████?
20 A.    I believe so.
21 Q.    So you don't believe you had seen a draft of
22 this prior to sending?
23 A.    No.
24 Q.    Okay.  Were you involved in any way in the
25 drafting of the October 22nd letter?

Page 71

1  A.    I don't believe so.
2  Q.    So is it your understanding, then, at the time
3  you received this email that's been marked as FGS 8,
   ████████████████████████████████████████?
5  A.    Yes.
6  Q.    And was the purpose ████████████████████
   ███████████████████████████████
   ████████████████████████?
9  A.    I -- I believe I was in the airplane to Japan at
10 the time that I received this, which is why ████████
   ███████████████████████████████████████████
   ███████████████████████████████████████
   █████████████████████.
15 Q.    Okay.  So before -- so you were in a plane
16 during this time of this email of FGS 8.
   ████████████████████████████████████████
   ████████████████████████.
19 A.    I believe so, yes.
20 Q.    Okay.  ███████████████████████████████
   ███████████████████████████████████████
   ███████████████████, correct?
23 A.    Yes.
24 Q.    So let's talk about that conversation a little
25 bit.

Page 72

1       Was anyone else on the call -- oh, first of all,
2  was it an audio call?
3  A.    Yes.
4  Q.    No video?
5  A.    (Moves head from side to side.)
6       MS. NYARADY:  Okay.  Sorry.  He's shaking his
7  head no.
8       THE DEPONENT:  Yes.  Yes.  It was an audio call.
9  BY MS. NYARADY:
10 Q.    So you had an audio call.  ███████████████
   █████████████████████████████████████████████?
12 A.    Just me.
13 Q.    To your knowledge, did anyone at FGS assist in
14 the drafting of the October 22nd letter?
15 A.    No.
16 Q.    Did you review this letter when you received it?
17 A.    Yes.
18 Q.    ████████████████████████████████████████
   ████████████████████████████, for what purpose did you
20 review the letter?
21 A.    ██████████████████████████████████████
   ████████████████████████████████
   ██████████████████████████████████████████
   ███████████████████████████████████████████████

Page 73

1  ███████████.
2  Q.    Going back to the conversation ████████████
   ████████████████████████████████████████████
   ████████████████████████████████████████
   █████████████████████████?
7  A.    ██████████████████████████████████████████
   ███████████████████████████████████████████
   ████████████████████████████████████████
   ███████████████████████████████████████████████████
   ████████████████████████████████████████
   █████████████████████████████████.
17 Q.    Anything else?
18 A.    ████████████████████████████████████████
   ████████████████████████████████████████████
   ████████████████████████████████████████
   ███████████████████████████████
   ███████████████████
25 Q.    Anything else that you can recall from that

19 (Pages 70 - 73)

# TI SOF

# Exhibit 71

Page 1

1                UNITED STATES DISTRICT COURT

2                    DISTRICT OF DELAWARE

3       - - - - - - - - - - - - - - - - - - - - x

4       QUALCOMM INCORPORATED and

5       QUALCOMM TECHNOLOGIES, INC.

6            Plaintiffs

7       vs.                    CA No. 1:24-cv-00490-MN

8       ARM HOLDINGS plc, f/k/a/ ARM LTD.

9            Defendant

10      - - - - - - - - - - - - - - - - - - - - x

11

12          ███████████      ████████████████

13

14          VIDEO DEPOSITION of TIMOTHY S. SIMCOE, PhD

15          Friday, September 26, 2025 - 9:00 a.m.

16                  Kirkland & Ellis LLP

17                  200 Clarendon Street

18                  Boston, Massachusetts

19

20

21      Reporter:  Jill K. Ruggieri, RPR, RMR, FCRR, CRR

22

23

24

25

Page 6

1  is Kirkland & Ellis, LLP, at 200 Clarendon
2  Street in Boston, Massachusetts 02116.
3         My name is Geoffrey Bassett with
4  Veritext, and I am the videographer today.  The
5  court reporter is Jill Ruggieri.  I am not
6  authorized to administer an oath.  I'm not
7  related to any party in this action, nor am I
8  financially interested in the outcome.
9         If there are any objections to
10 proceeding, please state them at the time of
11 your appearance.
12        Counsel and all present, please
13 state your appearance and affiliations for the
14 record.
15        MR. DESAI:  Anish Desai from
16 Paul Weiss for Qualcomm.
17        MR. STEPHENSON:  Gregg
18 Stephenson, Paul Weiss, for Qualcomm.
19        MS. POHL:  Meredith Pohl and
20 Mary Barnett from Kirkland for Arm and the
21 witness.
22        THE VIDEOGRAPHER:  All right.
23 At this time I'll hand it over to our court
24 reporter to swear in the witness.
25

Page 7

1         TIMOTHY SEAN SIMCOE, PhD, a
2  witness having been duly sworn, on oath deposes
3  and says as follows:
4
5            EXAMINATION
6  BY MR. DESAI:
7    Q   Good morning.  Could you state your
8  name for the record.
9    A   My name is Timothy Sean Simcoe.
10   Q   And where are you currently employed?
11   A   I work for Boston University.
12   Q   And what is your title at Boston
13 University?
14   A   I'm the David J. McGrath Jr.
15 Professor of Strategy and Innovation, chair of
16 the strategy department.
17   Q   Have you been deposed before?
18   A   Yes.
19   Q   Okay.
20        So you've been through this
21 before.  If you need a break, just let me know.
22 Otherwise, we'll probably break about every
23 hour.
24        Is that all right?
25   A   Okay.

Page 8

1    Q   If you don't understand my question,
2  let me know, and I'll do my best to rephrase.
3         Is that all right?
4    A   Yes.
5    Q   We've -- just -- in front of you
6  we've marked some exhibits.  Exhibit 1 is your
7  rebuttal report.
8         Do you see that?
9    A   Yes.
10   Q   And Exhibit 2 is Eric Posner's expert
11 report from August 8th?
12   A   Yes, I see that one.
13   Q   And Exhibit 3 is the reply report
14 from Eric Posner?
15   A   Okay.
16   Q   All right.
17        You were retained on behalf of
18 Arm to provide expert opinions in this matter;
19 is that right?
20   A   Yes.
21   Q   Okay.
22        What is the area or areas of
23 expertise that you are relying on to provide
24 opinions in this matter?
25   A   Primarily my expertise is as an

Page 9

1  economist who studies economics of innovation,
2  intellectual property, antitrust, digital
3  technologies, these kind of -- you know, yeah,
4  I would say mostly I've drawn my expertise as
5  an economist who works in the area of
6  industrial organization and innovation.
7    Q   Okay.
8         Have you been retained by Arm
9  for any other matters?
10   A   No.
11   Q   And have you been retained in any
12 other matters involving Qualcomm before?
13   A   Yes.
14   Q   Okay.
15        And were you working for
16 Qualcomm or for the other side?
17   A   I believe this is the third matter
18 where I have worked as an expert, twice adverse
19 to Qualcomm, where Qualcomm was a defendant,
20 and this time adverse to Qualcomm where
21 Qualcomm is a plaintiff.
22   Q   Okay.
23        Was one of those matters -- did
24 it involve Apple versus Qualcomm?
25   A   Yes.

3 (Pages 6 - 9)

Page 174

```
 1   Nuvia IP and whether it had the rights to do so
 2   at the time.  I don't --
 3           You know, during the pendency of
 4   the litigation, let's say there was also
 5   negotiation and the parties were exchanging
 6   their views.
 7           So Arm sent this letter
 8   expressing to Qualcomm its view that Qualcomm
 9   was in breach and had ████████ to cure the
10   breach.
11       Q   Right.
12           And the letter was also leaked
13   to the public, right?
14       A   It was communicated to the press and
15   reported.
16       Q   It was communicated to the press by
17   Arm?
18       A   I believe that's right.
19       Q   Okay.
20           I'm just trying to understand,
21   like, in your opinion what the purpose of this
22   letter is if it's reiterating a position that's
23   already been articulated in the litigation and
24   that issue is going to be decided at a trial in
25   two months.
```

Page 175

```
 1       A   There's a negotiation going on.  Arm
 2   is exerting pressure on Qualcomm, just as
 3   Qualcomm exerts pressure on Arm in that
 4   negotiation by stating its claims about its --
 5   what it believes are its rights under these
 6   agreements.  And I view the letter as part of
 7   that back-and-forth negotiation process.
 8       Q   So would you say that sending the
 9   letter and then leaking it to the public was
10   exerting pressure on Qualcomm?  Is that the
11   point of it?
12       A   I mean, what you -- I think that's
13   likely part of it.  And at the same time, you
14   know, sort of what you're characterizing as a
15   leak is also informing Arm's customers, who are
16   Qualcomm's customers, of what's happening in
17   this dispute, because Arm also has to consider
18   the effects of this litigation on its overall
19   ecosystem, and those effects are not all good.
20       Q   Okay.
21           Well, that actually leads me to
22   my next question.  And what I understand you
23   saying is that the point of the notice letter
24   and leaking it to the press was to inform Arm's
25   customers?  One point, at least.
```

Page 176

```
 1       A   One point.
 2       Q   All right.
 3           Is that -- is that a typical
 4   path for communicating with one's customers,
 5   leaking information to the press?
 6           MS. POHL:  Object to the form.
 7       A   So it's you who consistently is
 8   characterizing this as a leak.  I mean, you
 9   know, whatever.  There's a communication, is
10   the way I put it.
11       Q   I can rephrase my question, if that
12   would be helpful.
13       A   Okay.
14       Q   All right.
15           Is that a typical path for
16   communicating with one's customers, is taking a
17   confidential letter and disclosing it to the
18   press so that it can be published?
19           MS. POHL:  Object to form.
20       A   It can be.  You know, so it's not
21   reporting the detailed contents of the letter.
22   You know, sort of what was reported was a
23   position.  That position matters to customers.
24       Q   I think in paragraph 245, you say --
25   yeah, you say that Qualcomm -- "Arm had a
```

Page 177

```
 1   legitimate interest in ensuring that customers
 2   were aware of the potential legal and licensing
 3   risks associated with Qualcomm CPUs," right?
 4           MS. POHL:  Object to form.
 5       A   Yes.
 6       Q   Okay.
 7           And you also say, "A failure to
 8   communicate could create confusion or undermine
 9   confidence in Arm's IP rights"?
10       A   Yes.
11       Q   So those are both reasons you're
12   giving as to why Arm would send this letter and
13   then have it disclosed to the public in some
14   form?
15       A   I mean, I'm simply -- I think what --
16   the context of all of this is important to
17   understand.  It's not my assignment to provide
18   an explanation of the timing of Arm's
19   communications in the earlier dispute.
20           I'm explaining that the
21   earlier -- the first dispute in which this
22   got -- this letter -- you know, which provides
23   the context for this letter was sent, that's --
24   looks like a normal commercial dispute between
25   Arm and Qualcomm.
```

45 (Pages 174 - 177)