**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | |
| Plaintiffs, | REDACTED - PUBLIC VERSION (Filed November 21, 2025) |
| v. | C.A. No. 24-490-MN |
| ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation, | ██████████████████ |
| Defendant. | |

**DEFENDANT ARM HOLDINGS PLC'S OMNIBUS OPENING BRIEF**
**IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT OPINIONS AND**
**TESTIMONY OF ERIC A. POSNER AND PARTIALLY EXCLUDE THE EXPERT**
**OPINIONS AND TESTIMONY OF PATRICK F. KENNEDY**

Dated: October 24, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

NATURE AND STAGE OF PROCEEDINGS ............................................................................. 1

SUMMARY OF ARGUMENT AND FACTS ............................................................................... 2

LEGAL STANDARD ..................................................................................................................... 4

ARGUMENT .................................................................................................................................. 4

I.      THE COURT SHOULD EXCLUDE POSNER'S OPINIONS ................................................ 4

      A.      Posner Is Not Qualified to Offer Economic Opinions. ....................................... 4

      B.      Posner's Analysis Fails to Define a Relevant Market or Engage in
            Any, Let Alone Relevant, Economic Analysis. ................................................... 5

      C.      Posner Impermissibly Offers Ultimate Legal Conclusions. ............................ 10

      D.      Posner's Opinions Should Be Excluded As Unreliable and Unhelpful. .......... 11

II.     THE COURT SHOULD EXCLUDE KENNEDY'S TLA OPINIONS ...................... 13

CONCLUSION ............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allscripts Healthcare, LLC v. Andor Health, LLC*,
  2022 WL 3021560 (D. Del. July 29, 2022) ....................................................12, 13

*Bainbridge v. U.S. Bank, N.A. as Tr. for C-Bass Mortg. Loan Tr. Asset-Back Certificates Series 2007-CB6*,
  2023 WL 7318488 (3d Cir. Nov. 7, 2023)...............................................................11

*Bornstein v. Monmouth Cnty. Sheriff's Off.*,
  658 F. App'x 663 (3d Cir. 2016) ...............................................................................5

*Broadcom Corp. v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007)......................................................................................7

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962)..................................................................................................6

*Cappello v. Walmart Inc.*,
  394 F. Supp. 3d 1015 (N.D. Cal. 2019) ..................................................................10

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ........................................................................................6, 10

*Chavez v. Whirlpool Corp.*,
  93 Cal. App. 4th 363 (2001) ...................................................................................10

*Cohen v. Cohen*,
  125 F.4th 454 (3d Cir. 2025) ....................................................................................4

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)..................................................................................................4

*Freedom Mortg. Corp. v. LoanCare, LLC*,
  2023 WL 2570201 (D.N.J. Mar. 20, 2023)..............................................................14

*Gamboa v. Apple Inc.*,
  2025 WL 660190 (N.D. Cal. Feb. 28, 2025) .............................................................7

*Greenwald Caterers Inc. v. Lancaster Host, LLC*,
  699 F. Supp. 3d 382 (E.D. Pa. 2023) ................................................................14, 15

*In re Live Concert Antitrust Litig.*,
  863 F. Supp. 2d 966 (C.D. Cal. 2012) ......................................................................8

*Navarro v. Fuji Heavy Indus., Ltd.*,
  925 F. Supp 1323 (N.D. Ill. 1996),
  *aff'd*, 117 F.3d 1027 (7th Cir. 1997) ....................................................................8

*Novell, Inc. v. Microsoft Corp.*,
  731 F.3d 1064 (10th Cir. 2013) ........................................................................10

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
  555 U.S. 438 (2009)............................................................................................10

*Reilly v. Apple Inc.*,
  578 F. Supp. 3d 1098 (N.D. Cal. 2022) ...............................................................7

*Sanderson v. Int'l Flavors & Fragrances, Inc.*,
  950 F. Supp. 981 (C.D. Cal. 1996) ......................................................................9

*Shire ViroPharma Inc. v. CSL Behring LLC*,
  2021 WL 1227097 (D. Del. Mar. 31, 2021) ........................................................5

*Sun Microsystems, Inc. v. Microsoft Corp.*,
  87 F. Supp. 2d 992 (N.D. Cal. 2000) ...................................................................7

*Surace v. Caterpillar, Inc.*,
  111 F.3d 1039 (3d Cir. 1997).................................................................................5

*Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*,
  751 F. Supp. 3d 381 (D. Del. 2024).......................................................................8

*Travelers Indem. Co. v. Northrop Grumman Corp.*,
  2014 WL 464769 (S.D.N.Y. Jan. 28, 2014) ......................................................12

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*,
  949 F.3d 825 (3d Cir. 2020)............................................................................4, 5

**Rules**

Fed. R. Evid. 702 ....................................................................................................4

Fed. R. Evid. 702(a)................................................................................................5

## INTRODUCTION

The opinions of Qualcomm's experts, Professor Eric A. Posner and Dr. Patrick F. Kennedy, should be excluded as inadmissible because they are unreliable, unhelpful to the trier of fact, and fail to clear the bar set by Federal Rule of Evidence 702 and its interpreting case law.

***Professor Posner.*** Posner, a philosopher and law professor by trade with little to no formal education in economics, is unqualified to offer an economics opinion. Further, he improperly: (1) fails to define a relevant market, identify any relevant antitrust laws, or even conduct the kind of economic analyses on which his opinions ultimately depend; (2) opines on ultimate legal issues; and (3) speculates on or mischaracterizes underlying evidence in reaching his conclusions. Those flaws render his opinions unreliable and inadmissible under Rule 702.

***Dr. Kennedy.*** The Technology License Agreement ("TLA")



Those opinions do not fit the facts of this case, will not be helpful to the jury, and should be excluded.

## NATURE AND STAGE OF PROCEEDINGS

On August 8, 2025, Qualcomm served its opening expert reports, including reports from Professor Eric A. Posner, a law professor at the University of Chicago, and Dr. Patrick F. Kennedy, Qualcomm's damages expert. On September 5, 2025, Arm provided rebuttal reports from Dr. Timothy Simcoe, the Chair of the Economics Department at Boston University, Mr. Thomas Britven, a certified public accountant and economist, Dr. Michael C. Brogioli, an Adjunct

Professor of Electrical and Computer Engineering at Rice University, and Mr. Steven Richards, a certified public accountant with significant experience at the Securities and Exchange Commission. On September 19, 2025, Qualcomm served its reply reports from Professor Posner and Dr. Kennedy.

## SUMMARY OF ARGUMENT AND FACTS

*Professor Posner.* The Court should exclude the opinions of Professor Posner, Qualcomm's economics expert. Arm most commonly licenses its intellectual property (its ISA or core designs) under either an ALA or TLA. As explained in Arm's motion for summary judgment Arm's ISA is the interface that permits chip design and customization to suit a customer's needs. Recently, Arm has begun designing systems-on-chips ("SoCs") using its ISA in the downstream market for data center chips ██████████████████████. Posner's opinions center on Arm's entry into the downstream SoC market.

Posner opines that Arm engaged in anticompetitive and unfair conduct based on two theories: (1) "input foreclosure," and (2) abandoning a prior commitment to neutrality. Ex. 1 at 14:11–15:6. His input foreclosure theory analyzes Arm's organic downstream entry into the data center SoC sector, in which ████████████████████████████ Ex. 2 ¶ 64. Posner does so under a theoretical "ability/incentive" framework generally applied in the context of vertical mergers, *see* Ex. 3 ¶ 12, that asks whether Arm has the ability and incentive to engage in input foreclosure. Specifically, Posner analyzes Arm's "ability to foreclose Qualcomm from the Arm-compliant data center-specific SoC sector as well as other sectors," Ex. 2 ¶ 65, and "incentive to engage in input foreclosure in sectors where the potential long-term gains from taking business from licensees exceed the short-term loss of royalties on the products that the licensees no longer sell." Ex. 2 ¶ 67.

Posner's second theory posits that because Arm originally "branded itself the 'Switzerland

2

of chips' by committing itself to license the Arm ISA to companies on an 'open, neutral' basis," Ex. 2 ¶ 80, any abandonment of that neutrality by raising royalty rates and entering the downstream SoC market would be improper, Ex. 2 ¶ 86. Doing so would, in Posner's view, harm Qualcomm. Ex. 2 ¶ 87. He did not analyze whether any other harm would flow to the market at large, nor does he opine that Arm has any independent antitrust duty to deal in a neutral manner with Qualcomm or anyone else. *See, e.g.*, Ex. 4 ¶ 15 n.31; Ex. 1 at 19:13–16, 217:4–8.

Neither theory passes muster. For one, Posner has no formal educational training in economics and is, in fact, a law professor. He admits he intended to provide opinions in the field of economics—a field in which he is unqualified. For another, he fails to define a relevant market, identify relevant antitrust laws that Arm's conduct would violate, or conduct any kind of economic analyses necessary to substantiate his opinion that Arm is a "monopolist"—this, despite that his opinions hinge on Arm's alleged possession of monopoly power. He also improperly opines on ultimate legal issues and mischaracterizes evidence in his rush to judgment.

**Dr. Kennedy.**  Kennedy's opinions regarding purported damages under the TLA should be excluded. ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████  Next, Kennedy injects an additional requirement into the TLA that Arm ██████████████

██████████████████████████████████████████████████████

██████ Kennedy's opinions should be excluded and his testimony excluded from trial.

## LEGAL STANDARD

Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *Cohen v. Cohen*, 125 F.4th 454, 460 (3d Cir. 2025). The party offering the expert testimony has the burden of establishing its admissibility by a preponderance of the evidence. *See* Fed. R. Evid. 702. As a threshold matter, the Court must "confirm the witness is a qualified expert." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020). Per Rule 702, the testimony from a qualified expert must: (a) "help the trier of fact to understand the evidence or to determine a fact in issue;" (b) be "based on sufficient facts or data;" (c) be "the product of reliable principles and methods;" and (d) "reflect[] a reliable application of the principles and methods to the facts of the case." Rule 702 contains no exception to these requirements, "so if they are not satisfied, an expert cannot testify." *UGI Sunbury*, 949 F.3d at 832.

## ARGUMENT

### I.    THE COURT SHOULD EXCLUDE POSNER'S OPINIONS.

#### A.    Posner Is Not Qualified To Offer Economic Opinions.

Posner does not have the necessary specialized knowledge, skill, experience, training, education, or credentials required to offer expert testimony about economics. *See* Fed. R. Evid. 702(a). Courts must exclude an expert "if the particular expert does not have sufficient specialized knowledge to assist the jurors." *Bornstein v. Monmouth Cnty. Sheriff's Off.*, 658 F. App'x 663, 670 (3d Cir. 2016); *see also Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1055 (3d Cir. 1997) (excluding electrical and mechanical engineer because he had "no training and no experience" in

4

field of "habituation"). "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Shire ViroPharma Inc. v. CSL Behring LLC*, 2021 WL 1227097, at *3 (D. Del. Mar. 31, 2021).

Posner has explicitly represented that he is offering opinions and analyses based on economic principles, not antitrust law. *E.g.*, Ex. 1 at 99:11–16 ("[T]here are additional reasons, legal reasons why it is common to address markets in antitrust cases. But ***from an economic perspective, which is what I was asked to present***, you can engage in input foreclosure analysis without using a market definition.") (emphasis added); *see also id*. at 215:20–216:4; 281:1–6; 289:8–12; 303:11–12; Ex. 2 ¶ 47; Ex. 4 ¶ 36. Yet Posner does not have any degrees in economics, Ex. 1 at 341:18–20. He has a Bachelor and Master of Arts in philosophy and a law degree. *See* Ex. 5. Indeed, he only took three economics courses at the higher education level, Ex. 1 at 340:22–341:17, and has never held an appointment in an economics department at a university, *id.* at 340:12–18. Because Posner's lack of specialized knowledge and education in the field of economics renders his economic opinions and underlying analyses unreliable and unhelpful, his opinions should be excluded in their entirety.

**B.     Posner's Analysis Fails To Define A Relevant Market Or Engage In Any, Let Alone Relevant, Economic Analysis.**

Even if Posner were qualified, his opinions are largely unrelated to the elements of Qualcomm's UCL claim, rendering them unreliable and unhelpful to the trier of fact.

***Failure To Identify A Relevant Antitrust Market.***  To satisfy the "unfairness" prong of the UCL Qualcomm must show Arm's conduct: "[1] threatens an incipient violation of an antitrust law, or [2] violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [3] otherwise significantly threatens or harms competition."

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). To satisfy either of the first two prongs, Qualcomm must adduce some evidence relevant to the antitrust laws themselves. Yet, Posner admits that he did not: (1) conduct any analysis recognized to determine the appropriate relevant market; (2) analyze the "practical indicia" used to determine "[t]he boundaries of … a [product] submarket," *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962); nor (3) "test the cross elasticity of demand" between Arm's ISA and those of Intel and RISC-V, Ex. 1 at 104:4–14. Nor did he apply any of the usual market definition tools prescribed by the U.S. Department of Justice, such as the Hypothetical Monopolist Test ("HMST") or the "Small but Significant Non-Transitory Increase in Price ("SSNIP") test. *See* Ex. 1 at 66:5–12, 78:16–79:6, 97:2–6, 102:14–104:3.

In its interrogatory responses and in correspondence, Qualcomm indicated it believes it can satisfy the tethering test under the last factor alone by showing simply "harm to competition."[1] To be clear, what Qualcomm asks is unprecedented. No court has ever held such a showing independently satisfies the UCL in the absence of the other two prongs of the tethering test. But, in any event, where Posner fails to identify any relevant market, it is impossible to say how "competition" was harmed—"competition" with what products, or with whom? Indeed, "[w]ithout a definition of the market there is no way to measure the defendant's ability to lessen or destroy competition." *Gamboa v. Apple Inc.*, 2025 WL 660190, at *6 (N.D. Cal. Feb. 28, 2025) (alterations omitted); *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1106 (N.D. Cal. 2022) (similar); *Sun Microsystems, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 992, 1001–02 (N.D. Cal. 2000) (similar).

---

[1]    Regardless, Qualcomm should be precluded from defining a market now where it expressly stated that it "does not intend to offer a market definition to support its California Unfair Competition Law claim and does not believe one is required," Ex. 6 at 4, because it is "not asserting a claim for monopolization." Ex. 7 at 1.

Instead, Posner points only to purported harm to **Qualcomm**, which is not harm to **competition** under the antitrust laws. *See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 308 (3d Cir. 2007).

Posner's own input foreclosure theory requires him to identify both a relevant upstream and downstream market. Under his framework, Arm must: (a) have monopoly power in an **upstream market** to control a critical input in the **downstream market**, and (b) enter, or already have presence in, the downstream market with the intent or effect of establishing a monopoly. Ex. 2 ¶ 50; Ex. 1 at 151:4–152:10, 153:1–154:2. Indeed, Posner indicated that the input foreclosure framework "would not apply" in SoC markets, *i.e.*, downstream markets, in which customers are indifferent as to which ISA is compatible with the SoCs they purchase. Ex. 1 at 156:18–157:16 ("Q. Does it matter for . . . your input foreclosure opinion whether [companies in the downstream market use the ISA] for the mobile market, the data center market, or some other market? A. Yes, it . . . can matter. . . . If these companies are simultaneously supplying other downstream sectors where the customers don't care whether they get Arm-compliant chips or chips that run on another ISA, then the input foreclosure model would . . . not apply."). But, it is simply impossible to apply Posner's own framework without conducting the necessary market inquiry.

Posner's lack of market definition or market analysis renders his opinions that Arm acted anticompetitively or harmed competition "neither sufficiently reliable nor sufficiently helpful to the trier of fact to warrant admission under Rule 702." *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 994 (C.D. Cal. 2012); *Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*, 751 F. Supp. 3d 381, 390 (D. Del. 2024) (excluding expert opinion for "essentially ha[ving] no methodology for defining the relevant markets"). All of his opinions should be excluded for this reason alone.

***Failure To Conduct A Monopoly Power Analysis.*** Relatedly, although Posner's opinions

hinge on Arm's having monopoly power, he does not conduct any economic analysis to determine whether Arm in fact does have such power. Posner admits his two opinions—input foreclosure and abandoning a prior commitment to neutrality—"depend[] on Arm being a monopolist"[2] or "having a dominant [market] position." Ex. 1 at 51:5–14 ("[T]he input foreclosure argument depends on Arm being a monopolist that supplies a critical input to the chip designers. . . . The . . . [neutrality] argument . . . depends on Arm having a dominant position or being a monopolist."); *see also* Ex. 4 ¶ 11. And Posner opined repeatedly in his reports and at deposition that Arm has a "monopoly" and a "dominant position." *See, e.g.*, Ex. 2 ¶¶ 11, 14, 19, 33, 35, 43, 55, 56, 57, 58, 78, 84, 86; Ex. 4 ¶¶ 2, 3, 7, 15, 28, 42, 46, 48, 49; Ex. 1 at 50:6–10, 50:17–20. But Posner does not substantiate this opinion with any economic analysis showing that Arm is indeed a monopolist, has monopoly power, or is dominant in any market. *See Navarro v. Fuji Heavy Indus., Ltd.*, 925 F. Supp 1323, 1328 (N.D. Ill. 1996) ("Experts cannot float their conclusions on cushions of air; they must rest those conclusions upon foundations built from reliable scientific explanation."), *aff'd*, 117 F.3d 1027 (7th Cir. 1997).

To the extent Posner justifies his assertion that Arm is a monopolist, his reasoning is cursory and untethered to traditional economic principles. For example, Posner supports his claim that "Arm's dominance is widely recognized by the industry" with testimony from Jonathan Weiser—an attorney at Qualcomm—and a CNBC article. Ex. 2 ¶ 58. But, as Posner admitted, economists "generally build their conclusions [about a firm's dominance] on more than just a newspaper article and a statement by an attorney." Ex. 1 at 109:1–10. Similarly, Posner points to Arm's ██████████████████████████████████████████████████. Ex. 2 ¶ 58. According to Posner, this opinion "rel[ies]" on "a general . . . practice of assuming that [a company

---

[2]    Posner uses the terms "monopoly power and monopolist synonymously." Ex. 1 at 55:15–16.

has market power] if [it] raises its prices while not actually improving its product." Ex. 1 at 117:7–11. Yet he did no analysis to determine whether Arm improved its products or whether ███████

████████████████████████████████████████████████████████████

███████████. Ex. 1 at 113:2–11, 116:14–117:3, 117:12–17, 117:21–118:10. Because Posner conducts no economic analysis to confirm the foundational premise of his opinions that Arm is a monopolist or is dominant, Posner's opinions are unreliable and unhelpful and should be excluded. *See Sanderson v. Int'l Flavors & Fragrances, Inc.*, 950 F. Supp. 981, 993–94 (C.D. Cal. 1996) (finding expert opinion inadmissible where it was based on expert's "bald assurance of validity" without independent validation).

**Failure To Identify Relevant Antitrust Laws.**    Posner also did not identify which competition laws, if any, implicate Arm's conduct, let alone assess how Arm's conduct would threaten an incipient violation or violate the "policy or spirit" of those laws. *See* Ex. 1 at 329:18–330:9. At his deposition, he expressly disclaimed offering an opinion that Arm's conduct violated Sections 1 or 2 of the Sherman Act, Section 7 of the Clayton Act, or the Cartwright Act. Ex. 1 at 329:18–330:9. This again requires excluding all his opinions as unhelpful. Those opinions are unmoored from the very antitrust principles to which the California Supreme Court explicitly tethered the UCL in disputes between sophisticated businesses. *See Cel-Tech*, 20 Cal. 4th at 184–87.

Moreover, Posner's discussion of "unfair competition" applies definitions of "unfairness" different from those used by the "tethering test." *See, e.g.*, *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019) ("unfairness must be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."). Instead, Posner's amorphous definition of unfairness hinges on personal beliefs, such as his own displeasure with Arm for

9

"distribut[ing] its ISA by promising or assuring the industry that it would be open and nondiscriminatory, the Switzerland of … chips, and then later, beginning to enter into the downstream chip design sectors." Ex. 1 at 14:20–15:6. And despite contending that Arm's purported "revers[al of] its longstanding business model as the 'Switzerland of chips'" is anticompetitive, he offers no support for his suggestion that Arm must continue this voluntary offer in perpetuity to avoid harming competition. Ex. 2 ¶ 87. Arm has no such obligation under either the antitrust laws or the UCL. *See, e.g.*, *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 449–50 (2009); *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074–76 (10th Cir. 2013); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001).

*Use of Merger Doctrine in an Admittedly Non-Merger Context.* Similarly, Posner offers an opinion that Arm's alleged conduct is unfair under an "input foreclosure" theory—a theory generally applied in the context of merger analysis, *see* Ex. 3 ¶ 12. Indeed, many of the academic articles Posner cites to for support of his "input foreclosure" theory, Ex. 2 ¶ 51 n.89–92; Ex. 4 ¶ 2 n.2, expressly limit their analysis to the merger context. *See, e.g.,* Ex. 8; Ex. 15. Arm is not aware of a single antitrust or UCL case applying an input foreclosure analysis *outside* the merger context. And as Posner must concede, "obviously this is not a merger case." Ex. 1 at 99:7–10. Yet Posner performs no economic analysis to show the same input foreclosure principles that govern a merger apply to Arm's organic entry into the downstream market for chips—the type of new market entry both mainstream economics and the antitrust laws generally presume is procompetitive. *See* Ex. 9 at 11 (describing how "[n]ew entry can yield a variety of procompetitive effects"); Ex. 3 ¶ 186. As a result, Posner's input foreclosure opinions are neither the product of reliable principles and methods nor likely to help the Court resolve the UCL issues at trial.

## C.   Posner Impermissibly Offers Ultimate Legal Conclusions.

The problems with Posner's opinions do not end there. Posner improperly opines on

ultimate issues and provides legal opinions. *Bainbridge v. U.S. Bank, N.A. as Tr. for C-Bass Mortg. Loan Tr. Asset-Back Certificates Series 2007-CB6*, 2023 WL 7318488, at *4 (3d Cir. Nov. 7, 2023) ("An expert cannot … testify[] regarding the governing law or offering legal opinions."). For example, after listing several of Qualcomm's SAC allegations, Posner opines that ███████

████████████████████████████████████████████████████████████

█████████████████████ Ex. 2 ¶ 45 (emphasis added). That conclusion goes to the heart of Qualcomm's tortious interference and UCL claims. And, despite stating at deposition that he had "no opinion" on whether Arm's lawsuit was "[s]ham litigation, [] a legal concept," Ex. 1 at 281:15–18, Posner opines that ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ Ex. 4 ¶ 48. Posner's impermissible ultimate and legal opinions are unhelpful and usurp this Court's role in instructing the jury on the relevant law.

### D.    Posner's Opinions Should Be Excluded As Unreliable And Unhelpful.

Finally, Posner's rampant speculation and mischaracterization of the evidence renders his opinions inadmissible. *Allscripts Healthcare, LLC v. Andor Health, LLC*, 2022 WL 3021560, at *42 (D. Del. July 29, 2022) ("An expert cannot simply narrate internal documents and form a conclusion evident to a lay person from their face.").

***RISC-V's Likelihood Of Displacing Arm's ISA.*** Posner opines that "because of the enormous complexity of coordination among multiple firms necessary to move from one network to another, ████████████████████████████████████████████████

████████████████████████████████████████ Ex. 2 ¶ 35. This is pure speculation. Posner points to no independent analysis or source for such a proposition, and instead largely relies on fact witness testimony from Qualcomm employees. Ex. 2 ¶ 35 n.67; *see also*

*Travelers Indem. Co. v. Northrop Grumman Corp.*, 2014 WL 464769, at \*3 (S.D.N.Y. Jan. 28, 2014). In forming these opinions, Posner does not test the accuracy of those views against Arm's technical expert, Ex. 1 at 119:13–120:11, nor does he perform any economic analysis to reach his conclusions. Posner "does not convey opinions that are based on [his] knowledge and expertise." *Travelers Indem.*, 2014 WL 464769, at \*3. "[S]uch a narration [is not] traceable to a reliable methodology." *Id.*

**Arm Neutrality.** Posner shares two views about Arm's neutrality that are not reliable and will confuse the jury. **First**, based on a conversation with Gerard Williams, a Qualcomm employee, Posner concludes that ███████████████████████████████████████████████████████ █████████████████████████. Ex. 2 ¶ 82. But Posner takes Williams's statements at face value and ignores any need to ask or survey actual chipmakers or other industry analysts to see if they share this view. Ex. 1at 335:7–336:21; 338:5–10. Posner also ignores the reality that ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████. Ex. 1 at 336:22–338:4; *see also* Ex. 3 ¶ 46.

**Second**, Posner opines that "Arm no longer wishes to keep its prior commitments and instead plans to cut off ALA licensees and sell SoCs directly to OEMs, such as data centers, automobile companies, and mobile phone manufacturers," citing as his only source an interview of Rene Haas, Arm's CEO. Ex. 2 ¶ 88; Ex. 1 at 345:10–352:5. This opinion is fatally flawed. For starters, Posner wholly mischaracterizes Haas's words. When asked about his misrepresentation, Posner responded, "the implication . . . if you're a customer and [Arm is] competing with you, . . . you may no longer have a license or other forms of technological support." Ex. 1 at 348:20–352:5. But that poses more questions than it answers—those simply were not the words Haas used, nor is

it clear what context Posner referred to in reaching this conclusion. Ex. 1 at 348:20–352:5. Posner acknowledged his inference (or "implication") was unmoored from any economic analysis. Ex. 1 at 351:4-352:5. And regardless, the jury can decide for itself what Haas's words meant; no expert gloss is needed. *See Allscripts*, 2022 WL 3021560, at *42.

## II.    THE COURT SHOULD EXCLUDE KENNEDY'S TLA OPINIONS.

Several of Kennedy's TLA opinions run contrary to the TLA's terms and should be excluded because Qualcomm is not (1) ███████████████ or (2) ███████████████ ███████████ on any offer from Arm.



**Qualcomm** ███████████████████ Under the TLA, ███████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ Ex. 10 ████ (emphasis added). Likewise, the TLA provides that the █████████████████████████████████████

████████████████████████████████████████████ Ex. 10

████ (emphasis added); *accord* SAC, ¶¶ 25, 27, 104. ██████████████

████████████████████████████████████████████

███████ Ex. 11 at 192:7–8.

Yet Kennedy offers opinions comparing █████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ Ex. 12 ¶¶ 61–62.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ Ex. 12 ¶¶ 51–60. Yet Qualcomm is undisputedly ██████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████ *See Greenwald Caterers Inc. v. Lancaster Host, LLC*, 699 F. Supp. 3d 382, 397–400 (E.D. Pa. 2023) (excluding expert's opinions where there was no "clear link between [the expert's] proposed testimony and the contract"); *Freedom Mortg. Corp. v. LoanCare, LLC*, 2023 WL 2570201, at *4–6 (D.N.J. Mar. 20, 2023) (excluding opinions where expert did "not apply the relevant limitations" of contract).

When questioned at deposition, Kennedy plainly admitted that ████████████████ ███████████████████████████████████████████████████████████ Ex. 13 at 245:7–10 (emphasis added). ██████████████████████████████ ████████████████████████████████████████████████████ Ex. 13 at 245:11– 14 (emphasis added). That should be the end of the matter. But Kennedy nonetheless contends that because ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████ Ex. 13 at 246:22–248:1. That is incorrect; ████████████████████ cannot change the terms of the TLA. *See* Ex. 10 ██████ ██████████████████████████████ ████████████████████████████████████████████. *See* Ex. 10 ██████

***Qualcomm Was Not*** ███████████████████ ***To A*** ████████████. Kennedy also improperly opines that Qualcomm is ███████████████████████████ ██████—a ████████ not required by the TLA. According to Kennedy, this ██████ is based on the ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

██████ Ex. 12 ¶ 111. Kennedy computes this purported ████████████ by comparing the terms of ████████████████████████████████ to ████████████████ ██████, and then faults Arm for not applying ████████████████ Ex. 12 ¶¶ 56–63.

Kennedy's ████████████ opinions should also be excluded as unreliable. Not only is ████████████████████████ but nowhere does the TLA *require* Arm to ████████ ████████████████████████████████████ Nonetheless, Kennedy repeatedly opines throughout his report that Arm should have ████████████████████████ ████████████████ Ex. 12 ¶¶ 57, 59, 63, 66, 69. Kennedy's ████████ is completely divorced from the terms of the TLA, amounting to yet another unreliable application of the facts to the case that should be excluded. *Greenwald Caterers*, 699 F. Supp. 3d at 397–400. Kennedy's opinions should be stricken. Ex. 12 ¶¶50–63, 66, 69; Ex. 14 ¶¶ 103–104, 123, 127–130.

## CONCLUSION

Arm respectfully requests the Court exclude: (1) the opinions of Professor Posner in their entirety and (2) the portions of Dr. Kennedy's opinions pertaining to the TLA, and preclude any related testimony regarding those opinions at trial.

Dated:  October 24, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
shaelyndawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


  /s/ Anne Shea Gaza
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

i

755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 24, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

John Poulos
NORTON ROSE FULBRIGHT US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2