# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>          Plaintiffs,<br><br>     v.<br><br>ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,<br><br>          Defendant. | REDACTED - PUBLIC VERSION<br>(Filed November 21, 2025)<br><br>C.A. No. 24-490-MN<br><br>██████████████████ |

## DEFENDANT ARM HOLDINGS PLC'S OMNIBUS OPENING BRIEF IN SUPPORT OF ITS MOTIONS FOR SUMMARY JUDGMENT

Dated: October 24, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

i

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

## TABLE OF CONTENTS

**INTRODUCTION and SUMMARY OF ARGUMENT** ................................................................. 1

**NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF FACTS**........4

**LEGAL STANDARD** ................................................................................................... 7

**ARGUMENT** ...................................................................................................................... 8

**I.    California Law Prohibits Enforcement Of The** ▮▮▮▮▮▮▮▮▮▮▮
**▮▮▮▮ In The TLA And ALA.**................................................................... 8

    A.    California Law Prohibits Enforcement Of Contractual Penalties............................ 8

    B.    The ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ Bear No Relationship To The
Alleged Breaches Or To Qualcomm's Alleged Actual Or Expected Harm. .......... 9

**II.   There Is No Genuine Dispute That Arm Did Not Breach The TLA.** ........................ 13

    A.    Qualcomm's ▮▮▮▮ Breach Claim Fails ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮ .......... 13

    B.    Qualcomm's Claim For Breach of ▮▮▮▮ of the TLA Fails ▮▮▮▮
▮▮▮▮▮▮▮▮ ............................................................. 14

**III.  The Court Should Grant Partial Summary Judgment On Qualcomm's
Implied Covenant Claim (Count III).** ......................................................... 16

**IV.   The _Noerr-Pennington_ Doctrine Bars Claims Based On Arm's Petition
Activity.** ................................................................................................... 19

**V.    QUALCOMM'S UCL CLAIM FAILS AS A MATTER OF LAW.** ......................... 24

    A.    Qualcomm Does Not Lack an Adequate Remedy at Law. .................................... 24

    B.    Qualcomm Has Not Proven that Arm Is Engaging in "Unlawful" or
"Unfair" Acts or Practices Within the Meaning of the UCL. ............................... 26

**VI.   Qualcomm CANNOT SHOW ARM'S ALLEGEDLY TORTIOUS
CONDUCT CAUSED QUALCOMM ANY HARM.** ................................................. 31

    A.    Arm Did Not Cause Qualcomm To Suffer Damages In Its Deal With
▮▮▮▮ ..................................................................................... 31

    B.    Qualcomm Cannot Prove Arm Caused Economic Harm To Any Other
Customer Relationships. ....................................................................... 34

_**\*\*All emphasis added unless otherwise indicated\*\***_

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*911 Restoration Franchise, Inc. v. Blakeney*,
    2015 WL 12698290 (C.D. Cal. Sept. 22, 2015) .......................................................................8

*Adams v. Cole Haan, LLC*,
    2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) .........................................................................25

*Aircapital Cablevision, Inc. v. Starlink Commc'ns Grp., Inc.*,
    634 F. Supp. 316 (D. Kan. 1986).............................................................................................21

*Alfa Consult SA v. TCI Int'l, Inc.*,
    2023 WL 6466388 (N.D. Cal. Oct. 3, 2023)......................................................................31, 33

*All. Atlantis Releasing Ltd. v. Bob Yari Prods.*,
    2010 WL 1525687 (C.D. Cal. Apr. 12, 2010) ...................................................................10, 18

*Allen Saltzman LLP v. Bank of Am. N.A.*,
    2024 WL 3582626 (C.D. Cal. July 29, 2024)..........................................................................26

*Ancestry.com Operations, Inc. v. DNA Diagnostics Ctr., Inc.*,
    2016 WL 3999315 (S.D. Cal. July 26, 2016) ...........................................................3, 20, 22, 23

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...................................................................................................................7

*Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*,
    521 F. Supp. 2d 1031 (N.D. Cal. 2007) ...............................................................................8, 11

*Artoss, Inc. v. Artoss GmbH*,
    2021 WL 7416584 (D. Del. Dec. 9, 2021)...............................................................................24

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
    837 F.3d 231 (3d Cir. 2016)......................................................................................................7

*Beverage v. Apple Inc.*,
    101 Cal. App. 5th 736 (2024) ..................................................................................................28

*Campbell v. Penn. Sch. Bds. Ass'n*,
    972 F.3d 213 (3d Cir. 2020)....................................................................................................19

*Cap. Health Sys., Inc. v. Veznedaroglu*,
    2017 WL 751855 (D.N.J. Feb. 27, 2017) ...........................................................................21, 22

ii

*Cel-Tech Commc'ns, Inc. v. L.A. Cell. Tel. Co.*,
973 P.2d 527 (Cal. 1999) ...................................................................................27, 29, 30, 31

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...........................................................................................................7

*Chavez v. Whirlpool Corp.*,
93 Cal. App. 4th 363 (2001) ...........................................................................................28

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
168 F.3d 119 (3d Cir. 1999)............................................................................................23

*City of L.A. v. Lyons*,
461 U.S. 95 (1983)...........................................................................................................25

*City of Philadelphia v. Beretta U.S.A. Corp.*,
277 F.3d 415 (3d Cir. 2002)............................................................................................29

*Clark v. Am. Honda Motor Co.*,
528 F. Supp. 3d 1108 (C.D. Cal. 2021) ..........................................................................25

*Dollar Tree Stores Inc. v. Toyama Partners LLC*,
875 F. Supp. 2d 1058 (N.D. Cal. 2012), 875 F. Supp. 2d............................................8, 12, 30

*Drum v. San Fernando Valley Bar Ass'n*,
182 Cal. App. 4th 247 (2010) .........................................................................................28

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992).........................................................................................................28

*Evanger's Dog & Cat Food Co. v. Env't Democracy Project*,
2022 WL 180205 (C.D. Cal. Jan. 20, 2022) ...................................................................22

*Fitbit, Inc. v. Laguna 2, LLC*,
2018 WL 306724 (N.D. Cal. Jan. 5, 2018) .....................................................................22

*Florcsk v. Unstoppable Domains Inc.*,
2024 WL 492384 (D. Del. Feb. 8, 2024) .........................................................................19

*In re Ford Tailgate Litig.*,
2014 WL 1007066 (N.D. Cal. Mar. 12, 2014)..................................................................25

*Foundry IV Inc. v. Hard Carry Gaming Inc.*,
2024 WL 211010 (C.D. Cal. Jan. 3, 2024) ......................................................................26

*Gill v. Marsh USA, Inc.*,
2024 WL 3463351 (N.D. Cal. July 18, 2024)...................................................................26

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*,
232 Cal. App. 4th 1332 (2015) ...................................................................8

*Greentree Fin. Grp., Inc. v. Execute Sports, Inc.*,
163 Cal. App. 4th 495 (2008) ..............................................................9, 12

*Guz v. Bechtel Nat'l Inc.*,
24 Cal. 4th 317 (2000) ..................................................3, 16, 17, 18

*Guzman v. Polaris Indus., Inc.*,
49 F.4th 1308 (9th Cir. 2022) ...........................................................24, 25

*Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*,
806 F.3d 162 (3d Cir. 2015)...........................................................19

*Harbor Island Holdings, L.L.C. v. Kim*,
107 Cal. App. 4th 790 (2003) ...........................................................11

*Hsiao & Montano, Inc. v. Xstatic Pro Inc.*,
2023 WL 4205811 (C.D. Cal. May 18, 2023) ...................................8, 11

*Indep. Serv. Orgs. Antitrust Litig.*,
203 F.3d 1322 (Fed. Cir. 2000)...........................................................29

*In re Innovatio IP Ventures, LLC Pat. Litig.*,
921 F. Supp. 2d 903 (N.D. Ill. 2013) ...........................................22

*Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*,
384 F. Supp. 2d 1334 (S.D. Iowa 2005),
*aff'd*, 464 F.3d 1339 (Fed. Cir. 2006) ...........................................21

*Key v. Qualcomm Inc.*,
129 F.4th 1129 (9th Cir. 2025) ...........................................24, 25

*Key v. Qualcomm Inc.*,
No. 23-3354, D.I. 22.1 (9th Cir. Apr. 26, 2024)...................................28

*King v. Nat'l Gen. Ins. Co.*,
2025 WL 2494366 (C.D. Cal. Aug. 29, 2025)...................................25

*Korea Supply Co., v. Lockheed Martin Corp.*,
63 P.3d 937 (Cal. 2003) ...........................................................25, 31, 34

*Lanza v. Moclock*,
842 Fed. App'x 714 (3d Cir. Jan. 8, 2021) ...........................................23

*In re Lipitor Antitrust Litig.*,
855 F.3d 126 (3d Cir. 2017), *as amended* (Apr. 19, 2017)....................27

iv

*Loo v. Toyota Motor Sales, USA, Inc.*,
  2019 WL 7753448 (C.D. Cal. Dec. 20, 2019) ................................................................25

*Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*,
  2011 WL 678707 (D. Del. Feb. 18, 2011) ..............................................................20, 23

*Mariana v. Fisher*,
  338 F.3d 189 (3d Cir. 2003)..............................................................................................19

*Martin Saturn of Ontario, Inc. v. Subaru of Am. Inc.*,
  2023 WL 9417499 (C.D. Cal. July 21, 2023)...................................................................30

*Masterson Mktg., Inc. v. KLS Recreation Corp.*,
  2005 WL 8173312 (S.D. Cal. June 7, 2005)...............................................................8, 11

*Matsushita Elecs. Corp. v. Loral Corp.*,
  974 F. Supp. 345 (S.D.N.Y. 1997).............................................................................20, 23

*Mazal Grp., LLC v. Espana*,
  2017 WL 6001721 (C.D. Cal. Dec. 4, 2017) ...................................................................26

*Melea Ltd. v. Quality Models Ltd.*,
  345 F. Supp. 2d 743 (E.D. Mich. 2004)...........................................................................22

*Mohebbi v. Khazen*,
  2019 WL 144865 (N.D. Cal. Jan. 9, 2019) ...............................................................11, 12

*Mylan Pharms., Inc. v. Teva Pharms. Indus. Ltd.*,
  2025 WL 756793 (D.N.J. Feb. 27, 2025) .........................................................................23

*Novell, Inc. v. Microsoft Corp.*,
  731 F.3d 1064 (10th Cir. 2013) ...............................................................................28, 29

*Ohio v. Am. Express Co.*,
  585 U.S. 529 (2018)............................................................................................................27

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
  555 U.S. 438 (2009)............................................................................................................28

*Pemberton v. Nationstar Mortg. LLC*,
  331 F. Supp. 3d 1018 (S.D. Cal. 2018)...........................................................................17

*PeopleBrowsr, Inc. v. Twitter, Inc.*,
  2013 WL 843032 (N.D. Cal. Mar. 6, 2013).....................................................................28

*Phila. Taxi Ass'n, Inc. v. Uber Techs., Inc.*,
  886 F.3d 332 (3d Cir. 2018)..............................................................................................29

*Poway Royal Mobilehome Owners Ass'n v. City of Poway*,
   149 Cal. App. 4th 1460 (2007) ...................................................................17

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993)......................................................................................23

*In re Qualcomm Litig.*,
   2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) ..............................................26

*Racine & Laramie, Ltd. v. Dep't of Parks & Rec.*,
   11 Cal. App. 4th 1026 (1992) ................................................................3, 16

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
   732 F. Supp. 3d 1101 (N.D. Cal. 2024) ......................................................22

*Reese v. Wal-Mart Assocs., Inc.*,
   2025 WL 472721 (E.D. Cal. Feb. 12, 2025)................................................24

*In re Revlimid & Thalomid Purchaser Antitrust Litig.*,
   2024 WL 2861865 (D.N.J. June 6, 2024) ....................................................23

*Ridgley v. Topa Thrift & Loan Ass'n*,
   17 Cal. 4th 970 (1998) .......................................................................1, 8, 11

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
   348 F.3d 1116 (9th Cir. 2003) ....................................................................31

*Select Comfort Corp. v. The Sleep Better Store*,
   838 F. Supp. 2d 889 (D. Minn. 2012)..........................................................22

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035,1044 (9th Cir. 2010) ...........................................................26

*Simon & Simon, PC v. Align Tech., Inc.*,
   2020 WL 1975139 (D. Del. Apr. 24, 2020)..................................................28

*Smith v. Royal Mfg. Co.*,
   185 Cal. App. 2d 315 (1960) ......................................................................12

*SolidFX LLC v. Jeppesen Sanderson, Inc.*,
   841 F.3d 827 (10th Cir. 2016) ....................................................................29

*Song Fi Inc. v. Google, Inc.*,
   108 F. Supp. 3d 876 (N.D. Cal. 2015) ........................................................17

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ................................................................23, 25

*Sun Microsystems, Inc. v. Microsoft Corp.*,
   87 F. Supp. 2d 992 (N.D. Cal. 2000) ................................................................29

*Sunrise Pharm., Inc. v. Vision Pharma, LLC*,
   2018 WL 11476075 (D.N.J. June 20, 2018) ...........................................21, 22

*Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*,
   655 F. App'x 103 (3d Cir. 2016) ...........................................3, 20, 23

*Trs. Of Univ. of Pa. v. St. Jude Child.'s Rsch. Hosp.*,
   940 F. Supp. 2d 233 (E.D. Pa. 2013) ................................................................19

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ..........................................................20

*United States v. EME Homer City Generation, L.P.*,
   727 F.3d 274 (3d Cir. 2013) ...........................................................................24

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) .........................................................................................28

*Waller v Truck Ins. Exchange, Inc.*,
   11 Cal. 4th 1 (1995) .........................................................................................17

*Warner Theatre Assocs. Ltd. P'Ship v. Metro Life Ins. Co.*,
   1997 WL 685334 (S.D.N.Y. Nov. 4, 1997),
   *aff'd*, 149 F.3d 134 (2d Cir. 1998) ................................................................18

*In re ZF-TRW Airbag Control Unit Prods. Liab. Litig.*,
   601 F. Supp. 3d 625 (C.D. Cal. 2022) ..........................................................24

## Statutes

Cal. Bus. & Prof. Code § 17200 ...........................................................................26

Cal Bus. & Prof. Code § 17203 ...........................................................................23

Cal. Civ. Code § 1671(b) .......................................................................................8

## Rules

Fed. R. Civ. P. 56(a) ..............................................................................................7

## INTRODUCTION AND SUMMARY OF ARGUMENT

This is a sprawling case, with Qualcomm asserting eight different causes of action and more than a dozen theories of liability that turn commercial disputes between Arm and Qualcomm over the past five years into a contractual breach or a tort. Most of Qualcomm's theories are foreclosed by the language of the parties' agreements, seek to impose contractual obligations that simply do not exist, contradict well-established tort-law principles, or seek windfall remedies that bear no relation to the harm Qualcomm allegedly suffered. None of those theories assert a viable claim that turns on disputed facts. Arm thus seeks partial summary judgment to narrow this case to one or two contract issues that turn on genuine factual disputes.

***Unenforceable Penalties.*** The Court should first grant summary judgment that the ████ ████████ ████ in the parties' Architecture License Agreement ("ALA") and Technology License Agreement ("TLA") are unenforceable penalties. Both agreements are governed by California law, ███ SOF ¶ 2, and in California, a liquidated damages clause is unenforceable "if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970, 977–79 (1998). Here, Qualcomm's 30(b)(6) witness admitted ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ████ SOF ¶ 6. That is why the ███████████████████████████ ████████████████████████████████████ ██████ . *Id.* ¶¶ 4-5. The ████████████████ Qualcomm seeks (about ████████████ ████████████) bears no logical relationship to the at most ████████ in harm it allegedly suffered. *Id.* ¶¶ 12, 18, 22. In similar circumstances, California courts routinely refuse to enforce penalty provisions. The Court should do the same here.

1

*Alleged TLA Breaches.* The Court should also grant summary judgment that Arm did not violate ████████ or ██████ of the TLA. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

Qualcomm seeks the ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

*Alleged Implied Covenant Breaches.* Qualcomm's claim that Arm breached the implied covenant in the ALA and the TLA is equally meritless. Arm moved to dismiss two of Qualcomm's implied-covenant theories in its pending motion to dismiss, and it now seeks summary judgment on three more theories. Two of Qualcomm's theories contend Arm breached the implied covenant

2

by briefing a *Bloomberg* reporter on an ALA breach notice Arm sent Qualcomm and by communicating with mutual customers about the ongoing litigation. No provision in the ALA explicitly or implicitly prohibits those communications, and Qualcomm identified none during discovery. The implied covenant "cannot be extended to create obligations not contemplated in the contract," as Qualcomm attempts to do here. *Racine & Laramie, Ltd. v. Dep't of Parks & Rec.*, 11 Cal. App. 4th 1026, 1032 (1992).

Qualcomm separately claims that Arm breached the implied covenant in the TLA by ███████████████████████ but this claim again "seeks to impose substantive duties … beyond those incorporated in the specific terms" of the parties' agreement. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000). ████████████████████████ ███████████████████████. █ SOF Ex. 3; TLA SOF Ex. 1 █████. ██████████████████████████████ ██████. Nothing in the duty of good faith implicitly adds such a term, which Qualcomm expressly bargained for when licensing other types of IP.

**Noerr-Pennington.** Qualcomm's tortious interference, California Unfair Competition Law ("UCL"), and implied covenant claims improperly seek to punish Arm for asserting that Qualcomm breached its contractual promises, filing suit to enforce those promises, and speaking publicly about the litigation. These claims attack petitioning activity (and related incidental activity) protected by the *Noerr-Pennington* doctrine and the First Amendment. "[N]on-sham, pre-litigation threats of suit, demand letters, and communications about pending suits" are not actionable. *Ancestry.com Operations, Inc. v. DNA Diagnostics Ctr., Inc.*, 2016 WL 3999315, *5 (S.D. Cal. July 26, 2016); *Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 655 F. App'x 103, 110–11

(3d Cir. 2016). Yet Qualcomm seeks to hold Arm liable for precisely such conduct in an effort to bully Arm and others into silence when legitimate contract disputes arise.

**UCL.** Qualcomm's UCL claim still suffers from the same central flaws Arm identified in its pending motion to dismiss; discovery, if anything, has confirmed Qualcomm has no viable UCL theory. As a threshold matter, Qualcomm has not even attempted to show it lacks an adequate remedy at law. Nor can it, where Qualcomm has identified only restitution as its requested equitable remedy and already seeks money damages for the same conduct. Separately, Qualcomm's UCL claim fails as a matter of law where it cannot meet its burden to show under the relevant "tethering test" that Arm's conduct threatens "an incipient antitrust injury," "violates the spirit and policy of the antitrust laws," or "significantly harms" competition at large as opposed to mere injuries to Qualcomm.

**Tortious Interference.** That leaves Qualcomm's tortious interference claims. Not only are those claims foreclosed by the *Noerr-Pennington* doctrine, but Qualcomm also cannot show Arm's conduct caused Qualcomm any harm. The only harm Qualcomm quantifies is ████████, but there is no evidence ████████████████████████████████████████████████████████████████. Qualcomm does not even attempt to quantify or describe the harm Arm's conduct allegedly caused ████████████ Qualcomm mentions in passing in its interrogatory responses. Without any evidence of causation, Qualcomm has no tortious interference claim.

## NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF FACTS

**Arm's Business.** Arm develops and licenses cutting-edge computing technology, ████ SOF ¶ 1, including Arm's instruction set architectures ("ISAs"), which let software interact with hardware, and Arm's central processing unit ("CPU") core designs, which use Arm's ISAs to

power chips in smartphones, tablets, computers, data centers, wearable devices, and much more.

*Id.* ███████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████ . UCL SOF ¶¶ 12-14.

    ***ISA Development.*** ████████████████████████████████████

████████████████████████ . UCL SOF ¶ 25. ██████████████

██████████████████████████████████████████████████

UCL SOF ¶¶ 28, 30. RISC-V ██████████████████████████████

████████████████████ UCL SOF ¶ 36. Qualcomm has heavily invested in RISC-V's development, is a founding member of the Quintauris consortium aimed at helping "RISC-V continue to grow and mature," and is very involved with the board of RISE, an industry-leading effort to accelerate RISC-V's development. UCL SOF ¶¶ 41-44. ████████████████

████████████ UCL SOF ¶¶ 29, 35.

    ***Qualcomm's ALA and TLA.*** Among other things, Qualcomm designs and markets chips for use in the mobile, PC, IoT, and automotive segments. UCL SOF ¶ 17. Qualcomm licenses Arm's ISA under an ALA and a TLA. ████ SOF ¶ 2. The ALA allows Qualcomm to design its own custom CPU cores. *Id.* The TLA allows Qualcomm to use Arm's CPU core designs, called Arm Implementation Cores. *Id.* Qualcomm's ALA and TLA were both executed on ███████████ .

*Id.* ████████████████████████ *Id.* ██████████████████████

██████████████ . *Id.* ¶ 3. ████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████ *Id.* ¶¶ 4-5.

Relevant here, Qualcomm licenses █████████████████████████

██████████████ TLA SOF ¶ 2. ███████████████████████████

████████████████████████████████████████████

███████████████████████ TLA SOF ¶ 15. ███████████

████████████████████████████████████████████

███ TLA SOF ¶¶ 2, 7. ████████████████████████████

██████████████████████████ TLA SOF ¶¶ 5, 8. ████████

███████████████████████ SOF ¶ 9. ████████████████

████████████████████████████████████████████

██████████████████████████ TLA SOF ¶ 4.

**The First Litigation.** On August 31, 2022, Arm filed suit against Qualcomm and its then-newly acquired subsidiary, Nuvia. UCL SOF ¶ 1. Arm claimed Qualcomm and Nuvia breached the termination provisions of the Nuvia ALA. *Id.* Arm also filed a publicly available Answer on November 15, 2022, asserting that "Qualcomm is materially breaching its [Qualcomm] ALA, giving Arm the right to terminate." TI SOF ¶ 1. Ultimately, the case proceeded to trial, and the jury found in favor of Qualcomm on two of the three questions. UCL SOF ¶ 3. The Court entered judgment on September 30, 2025. No. 1146 D.I. 634. Arm has appealed. No. 1146 D.I. 635.

**The Breach Letter.** During the pendency of the first litigation, on October 22, 2024, Arm sent Qualcomm a written notice re-asserting that Qualcomm materially breached its ALA by developing unlicensed products, and notifying Qualcomm that Arm would be entitled to terminate the Qualcomm ALA if Qualcomm did not cure this material breach. TI SOF ¶ 2. The letter was the subject of an article written by *Bloomberg*, which noted that the letter was part of the parties'

ongoing "legal fight that began when Arm sued San Diego-based Qualcomm . . . for breach of contract and trademark infringement in 2022." TI SOF ¶ 3.

    ***The Present Litigation.*** On April 18, 2024, Qualcomm sued Arm, first alleging Arm had breached the Qualcomm ALA. *Qualcomm Inc. et al. v. Arm Holdings PLC*, 1:24-cv-00490-MN, D.I. 2. Qualcomm has since amended its complaint twice, D.I. 36, 137, adding tortious interference claims, UCL, and an additional breach of contract claim related to the TLA. Fact discovery closed on July 11, 2025, and expert discovery closed on October 3, 2025. *See* D.I. 44. The Pretrial Conference is scheduled on March 2, 2026, with trial set to start on March 9, 2026. *Id.* Arm's motion to dismiss the Second Amended Complaint remains pending. D.I. 232.

## LEGAL STANDARD

    Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The primary inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Even still, if the nonmoving party fails to present adequate evidence on an essential element of its claim, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "While all reasonable inferences must be drawn in favor of the nonmoving party, 'an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'" *In re Asbestos Prods. Liab. Litig. (No. VI)*, 837 F.3d 231, 235 (3d Cir. 2016).

## ARGUMENT

I.    **CALIFORNIA LAW PROHIBITS ENFORCEMENT OF THE** ███████ ███████████ ██████████ **IN THE TLA AND ALA.**

### A.    California Law Prohibits Enforcement Of Contractual Penalties.

"Whether a contractual provision is an unenforceable penalty is determined by the trial court, not the jury," *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1354 (2015), and the "ultimate question of whether a provision is an enforceable liquidated damages provision or an unenforceable penalty is a question of law to be decided by the Court," *911 Restoration Franchise, Inc. v. Blakeney*, 2015 WL 12698290, at *3 (C.D. Cal. Sept. 22, 2015). "A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671(b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." *Ridgley*, 17 Cal. 4th at 977–79; Cal. Civ. Code § 1671(b). "The amount set as liquidated damages '***must*** represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained.' In the absence of such relationship, a contractual clause purporting to predetermine damages '***must*** be construed as a penalty.'" *Ridgley*, 17 Cal. App. 4th at 977 (citation omitted). "[T]he characteristic feature of a penalty is the lack of a proportional relationship between the forfeiture compelled and the damages or harm that might actually flow from the failure to perform a covenant or satisfy a condition." *Grand Prospect Partners*, 232 Cal. App. 4th at 1358.

Courts routinely grant summary judgment of unenforceability if the contractual forfeiture or damages "bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." *Masterson Mktg., Inc. v. KLS Recreation Corp.*, 2005 WL 8173312, at *2–3 (S.D. Cal. June 7, 2005); *see also Hsiao & Montano, Inc. v. Xstatic Pro Inc.*, 2023 WL 4205811, at *4 (C.D. Cal. May 18, 2023); *Dollar Tree Stores Inc. v. Toyama*

*Partners LLC*, 875 F. Supp. 2d 1058, 1074–75 (N.D. Cal. 2012); *Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*, 521 F. Supp. 2d 1031, 1046 (N.D. Cal. 2007).  The Court should do the same here and hold ███ in both the ALA and the TLA impose impermissible penalties.

**B.    The ███████████ ███████ Bear No Relationship To The Alleged Breaches Or To Qualcomm's Alleged Actual Or Expected Harm.**

Qualcomm seeks three independent but overlapping ███████████ under the TLA and the ALA, each exceeding ████████████. ███ SOF ¶¶ 18, 24. The *first*—Qualcomm's claim for more than ██████████ for Arm's alleged breach of TLA ████—is illustrative. In █████████████████ to ██████████████████, at prices that Qualcomm deems "commercially unreasonable." *Id.* ¶¶ 19-21. Qualcomm claims this offer violated ███ of the TLA, claiming █████████, *id.*, and that the TLA ██████████████████ ███████████████████ as a result. *Id.* ¶ 24.

Using Qualcomm's █████████████████████ ███████████████████. *Id.* This is plainly a penalty, rather than a reasonable attempt to estimate Qualcomm's damages from Arm offering a renewal license for ████████████████. Even if the quoted prices were █████ (they were not), the anticipated harm to Qualcomm is simply ██████████████. This would be readily calculable (████████████████) and is in no way related to Arm ██████ ██████████████████████ ███████ ██████████ ███████████ *Greentree Fin. Grp., Inc. v. Execute Sports, Inc.*, 163 Cal. App. 4th 495, 500 (2008) ("[D]amages for the withholding of money are easily determinable—i.e., interest at prevailing rates.").

**Second**, Qualcomm claims it is entitled to ███████████████████ for Arm's alleged violation of █████ of the TLA, which requires that ███████████████████████████████████████████████████████ ██████████████, because Arm's █████████████████ allegedly ██████████████ ██████████████ SOF ¶¶ 22-24. Under a separate agreement, Qualcomm ███████████████ ███████████████████████████████████ *Id*. ¶ 23. Even if Arm ████████████████████████████ ████████████████████, the minimal, if any, harm from that alleged breach bears no relation to an estimated █████████ █████████ under Section █ of the TLA that gives Qualcomm ████████████████████████████.

**Third**, Qualcomm claims an estimated ████████████████████ as a remedy for Arm's alleged ALA breach, for which Qualcomm alleges that Arm withheld ALA tech support materials (OOBs and ACK patches) for Nuvia cores. *Id*. ¶¶ 8-18. OOBs identify which of the previously provided Architecture Compliance Kit (ACK) tests (which are used to assess a custom core's compliance with Arm's architecture) are relevant to a particular custom core design. *Id*. ¶ 9. ACK patches are interim fixes to ACK test issues provided in advance of Arm's quarterly ACK releases that incorporate those fixes. *Id*. ¶ 10. Setting aside that the ████████████████████ ████████████████████████████████████████████████████ ████████████████████—Qualcomm admits ████████████████████████████ ████████████████████████████████ *Id*. ¶ 16. Qualcomm makes no effort to calculate its harm from these alleged breaches, but Arm's expert calculated ████████████ ████████████████████████████████████ *Id*. ¶¶ 11-17. That

10

is again orders of magnitude less than the ████████████████████████ that Qualcomm seeks as a penalty under ████ of the ALA. *Id*. ¶ 18.

There is no genuine dispute that ████████████ ████████████████████████ were not the result of a reasonable endeavor by the parties to estimate any loss that Qualcomm might sustain from these or any other alleged breaches. Indeed, Qualcomm's 30(b)(6) witness for the ALA and TLA negotiations, Jonathan Weiser, admitted that ████████████████████ ██████████████████ *Id.* ¶ 6. A liquidated damages provision, however, "must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained." *Ridgley*, 17 Cal. 4th at 977; *Hsiao & Montano*, 2023 WL 4205811 at *4– 6; *Masterson Mktg.*, 2005 WL 8173312, at *3. There is simply no evidence that ████ in either agreement reflects such a reasonable endeavor, and for that reason alone, those provisions are unenforceable as a matter of law.

Quite the opposite. Qualcomm's true ████ for ████ was ████████████████ ████████████████████████████████████████████████ SOF ¶ 6. Qualcomm saw ████████████████████████████████████████ ████████████████ *Id.* ¶ 6. For its part, Arm likewise considered ████████████████ ████████████████████████—characterizations that Qualcomm did not dispute at the time. *Id.* ¶ 7.

Courts have routinely held that a forfeiture designed to operate as an ████████████████ that puts ████████████████████████████████████ is unenforceable. *Id.* ¶ 6. For example, in *Ridgley*, the California Supreme Court held a pre-determined damages provision unenforceable where it was "logically unrelated to the charge's purported function as compensation" and was "instead, plainly intended as an incentive" to coerce

contractual compliance. 17 Cal. 4th at 981; *see also Harbor Island Holdings, L.L.C. v. Kim*, 107 Cal. App. 4th 790, 798 (2003); *Mohebbi v. Khazen*, 2019 WL 144865, at *6 (N.D. Cal. Jan. 9, 2019). For this reason alone, the Court should hold ███████████ unenforceable. *Applied Elastomerics, Inc.*, 521 F. Supp. 2d at 1045–46; *Ridgley*, 17 Cal. 4th at 977–79.

Section ██ is also not logically related to any compensatory purpose. The ALA and TLA



SOF ¶¶ 4-5. Indeed, the █████ █████ is the same regardless of whether Arm sends Qualcomm ████████████████████████ ██████████████████, as Qualcomm alleges for its Section ███ breach claim, or whether Arm withholds all ALA and TLA materials in their entirety.

The way ████ in the ALA and the TLA operate is thus no different from the provision found unenforceable in *Dollar Tree*, where the same $2,500 per-day charge applied regardless of whether "none of the Delivery Conditions are met" or if only "one door or window is not in good working order." 875 F. Supp. 2d at 1071–72. The California Court of Appeal in *Smith v. Royal Mfg. Co.*, likewise held a provision in a contract for 100 machines unenforceable where the same damages applied regardless of whether "the breach occurred after one or 99 machines were taken by [the purchaser]." 185 Cal. App. 2d 315, 324 (1960); *see also Mohebbi*, 2019 WL 1444865, at *5 (automatic 120% non-payment penalty unenforceable); *Greentree*, 163 Cal. App. 4th at 502 (term "provid[ing] the same penalty" regardless of breach unenforceable). Section ███ one-size-fits-all approach is yet another flaw that is fatal to its enforceability.

## II. THERE IS NO GENUINE DISPUTE THAT ARM DID NOT BREACH THE TLA.

### A. Qualcomm's ███████ Breach Claim Fails ███████

Qualcomm claims that Arm breached █████ of the TLA █████████████████

████████████████████████████████████

████████████████████████████████████

████████████ TLA SOF Ex. 2; ████ SOF Ex. 26.████████

████████████████████████████████████

████████████████████████████

Section ████ of the TLA includes a ██████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████ TLA SOF Ex. 1; ████ SOF Ex. 3 ████████ ██

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████

Applying the terms of ██████ to the facts here is straightforward. ████████

████████████████████████████████████

████████████████████████████████████

13



████████████████ TLA SOF Ex. 2; ████ SOF Ex. 26 at -366. ████████████

████ *Id.* at -366, -367. ███████████████████

███████████████████████████████████

███████████████████████████████████

█████████████████████ TLA SOF Ex. 4—████████████████████

███████████████████████

**B.    Qualcomm's Claim For Breach Of** ████████ **Of The TLA Fails**
████████████████████████

The Court should also grant summary judgment that Arm did not breach ██████ of the TLA. Under that provision, ████████████████████████

███████████████████████████████████

████████████████████████ TLA SOF Ex. 1; ████ Ex. 3 █████████ █████████

███████████████████████████████████

███████████████████████████████████

██████████ TLA SOF Ex. 6; TLA SOF Ex. 18; ████ SOF Ex. 25 at 11. ████████

████████████████████████████████████ TLA SOF Ex. 13; ████ SOF Ex. 28.

Qualcomm ignores that ████████████████████████

███████████████████████████████████

██████████████████ TLA SOF Ex. 13; ████ SOF Ex. 28 at -246. ████████

███████████████████████████████████

███████████████████████████████████████ TLA SOF Ex. 13; ████ SOF Ex. 28 at -247; TLA SOF Ex. 10; TLA SOF Ex. 11; TLA SOF Ex. 12. ████████

███████████████████████████████████████████████████████

█████████████████████████████ TLA SOF Ex. 13; ████ SOF Ex. 28 at-246.

It is thus true but irrelevant that, when Arm made its ██████████████████████████

████████████████████████████████████████████████████ TLA SOF Ex.

7; ████ SOF Ex. 27 at -831. ██████████████████████████████████████████████

█████████████████████████████████████████████ To the contrary, the

Arm Vice President responsible for preparing the offer, Jeff Fonseca, testified ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ TLA SOF Ex. 14 at 48:12-21. He ████████

█████████████████████████████████████████████ *Id.* at 168:2-17; *see also id.*

49:13-50:2. The language in the offer merely clarified that ████████████████████████

████████████████████████████████████████████████████████████████

███████████████ TLA SOF Ex. 14 at 70:19-71:5; *see also* TLA SOF Ex. 15.

Qualcomm's witnesses also understood ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ TLA SOF Ex. 16; ████ SOF Ex.

29 at 151:25-152:14, 175:4-176:15; *see also id.* at 165:18-168:5. ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ TLA SOF ¶ 22. ████████████████

████████████████████████████████████ TLA SOF Ex. 17 at -856. ████████████

████████████████████████████████████████████████████████████████



Even if Arm had changed █████████████████████████████████████ TLA SOF Ex. 1. ████████████████████████████████████████ █████████████████████████ TLA SOF Ex. 2; ███ SOF Ex. 26; TLA SOF Ex. 2; ███ SOF Ex. 26 at 02772370, 02772373, 02772374. ███████████

## III. THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT ON QUALCOMM'S IMPLIED COVENANT CLAIM (COUNT III).

Qualcomm offers a grab-bag of theories for how Arm breached the implied covenant of good faith and fair dealing. *See* TLA SOF Ex. 6; TLA SOF Ex. 18; ███ SOF Ex. 25 at 8-9, 26-32; TLA SOF Ex. 19; TI SOF Ex. 69; ███ SOF Ex. 4 ¶¶ 83-117. Each of those theories is flawed, but Arm seeks summary judgment for only three of them: (1) that Arm breached the implied covenant "by asserting, without a valid basis, that Qualcomm was in material breach of its ALA and by publicizing Arm's notice of termination of the ALA to the media," (2) by "reaching out to Qualcomm's customers directly about the status of Qualcomm's license," and (3) by offering a price to license Arm's peripheral IP that Qualcomm deems too high. TLA SOF Ex. 6; TLA SOF Ex. 18; ███ SOF Ex. 25 at 24, 27-28; TI SOF Ex. 69; ███ SOF Ex. 4 ¶¶ 83-140. Each of those theories improperly seeks to "impose substantive duties … beyond those incorporated in the specific terms of" the ALA and TLA. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349–50 (Cal. 2000). And granting summary judgment on each of them would significantly streamline the issues for trial.

16

Qualcomm has not identified any contractual provisions that were frustrated by Arm asserting Qualcomm materially breached its ALA, ████████████████████████████ ████████████, or contacting mutual customers about the ongoing litigation. The implied covenant does not create a claim for any conduct by a contractual counterparty that Qualcomm happens to find frustrating. The covenant instead "assure[s] compliance with the express terms of the contract" and "cannot be extended to create obligations not contemplated in the contract." *Racine & Laramie*, 11 Cal. App. 4th at 1032. Nothing in the ALA precludes Arm from sending Qualcomm a notice of material breach. Quite the opposite. As the breach notice itself indicates, under Section ████ of the ALA, ████████████████████████████████ ██████████████████████████. ██ SOF Ex. 2 ██████; TI SOF Ex. 4. Because Arm had "the right to do what [it] did by the express provisions of the contract there can be no breach" of the implied covenant. *Song Fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015).

There is also no provision of the ALA that prevents Arm's public relations firm from showing a copy of the breach notice to a *Bloomberg* reporter or Arm discussing the original suit with customers. "The absence of these provisions defeats" Qualcomm's implied covenant claim grounded in those communications. *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1042 (S.D. Cal. 2018). The covenant has no "existence independent of its contractual underpinnings," *Guz*, 24 Cal. 4th at 349, and "does *not* extend beyond the terms of the contract," *Poway Royal Mobilehome Owners Ass'n v. City of Poway*, 149 Cal. App. 4th 1460, 1477 (2007) (emphasis in original). Thus, "[a]bsent [a] contractual right … the implied covenant has nothing upon which to act as a supplement" and has no role to play. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (1995). Without any contractual hook, Qualcomm's implied covenant claims

17

based on Arm's media communications and customer outreach cannot succeed. An alleged "breach of the implied covenant claim based on the violation of a non-existent contractual term plainly 'impose[s]'" extracontractual "substantive duties" for which a claim cannot stand. *Pemberton*, 331 F. Supp. 3d at 1043.

The implied covenant similarly does not regulate the prices Arm may charge for its ███████. It is undisputed that Arm █████████████████████████████████ ████████████████████████████████████████ TLA SOF Ex. 7; ███ SOF Ex. 27; TLA SOF Ex. 20. ██████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████ TLA SOF Ex. 1; ███ SOF Ex. 3 █████; *cf. id.* ████. Experiencing buyer's remorse, █████████████████████████████████████████ ████████████████████████ TLA SOF Ex. 19; TI SOF Ex. 69; ███ SOF Ex. 4 ¶ 111-117; TLA SOF Ex. 6; TLA SOF Ex. 18; ████ SOF Ex. 25 at 8-9; TLA SOF ¶ 25. There is no basis for those numbers in the contract; Qualcomm simply decided ██████████████.[1] TLA SOF Ex. 19; TI SOF Ex. 69; ████ SOF Ex. 4 ¶¶ 114-15; TLA SOF ¶ 25. And yet "[n]othing in the duty of good faith requires that parties to a negotiation propose only such terms as the other party is happy with." *Warner Theatre Assocs. Ltd. P'Ship v. Metro Life Ins. Co.*, 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997), *aff'd*, 149 F.3d 134 (2d Cir. 1998); *All. Atlantis Releasing Ltd. v. Bob Yari Prods.*, 2010 WL 1525687, at *12 (C.D. Cal. Apr. 12, 2010). ██████████████████████

---

[1] Qualcomm's expert presented two damages amounts that seek to refund Qualcomm for its alleged overpayment for peripheral IP: █████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ TLA SOF Ex. 19 ¶¶ 115, 117.

█████████████████████████, would impose yet another substantive duty unmoored from any "contractual underpinnings." *Guz*, 24 Cal. 4th at 349. California law squarely forecloses that result, and with it, Qualcomm's implied covenant claim tied to the peripheral IP.

## IV.    THE *NOERR-PENNINGTON* DOCTRINE BARS CLAIMS BASED ON ARM'S PETITION ACTIVITY.

The *Noerr-Pennington* doctrine arises from "dual principles," including "the constitutional right to petition under the First Amendment and the importance of open communication in representative democracies." *Mariana v. Fisher*, 338 F.3d 189, 197 (3d Cir. 2003). The doctrine protects "parties who petition governments for redress of claims arising in response to that petitioning" and has been "extended … to include protection for citizens who petition for relief through the courts." *Trs. Of Univ. of Pa. v. St. Jude Child.'s Rsch. Hosp.*, 940 F. Supp. 2d 233, 239–40 (E.D. Pa. 2013). The doctrine has been applied to bar numerous types of claims arising from litigation activity, including state-law tort claims. *Id.*

***Arm's Decision To File Suit***. Arm's protected conduct starts with the decision to file the original lawsuit against Qualcomm. The *Noerr-Pennington* doctrine "provides broad immunity from liability to those who petition the government, including administrative agencies and courts, for redress of their grievances." *Florcsk v. Unstoppable Domains Inc.*, 2024 WL 492384, at *2 (D. Del. Feb. 8, 2024) (quoting *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 178 (3d Cir. 2015)); *Campbell v. Penn. Sch. Bds. Ass'n*, 972 F.3d 213, 215, 218–20 (3d Cir. 2020). Yet Qualcomm's claims seek to hold Arm liable for engaging in that core petitioning activity. Cristiano Amon, Qualcomm's CEO, candidly testified that Arm harmed Qualcomm merely by filing suit. This is evident from Mr. Amon's testimony that ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

19

███████████████████████████ TI SOF ¶ 10. Qualcomm's competition expert in support of its UCL claim, Prof. Posner, likewise offers the opinion that ████████████████████████ ███████████████████ *Id.* ¶ 11. In support of its implied covenant claim, Qualcomm contends Arm "assert[ed], without a valid basis, that Qualcomm was in material breach of the ALA." TLA SOF Ex. 6; TLA SOF Ex. 18; ████ SOF Ex. 25 at 27. Whether Qualcomm materially breached its ALA was a central issue in the first case, *e.g.*, TI SOF Ex. 14 at 164:11-18, with Arm staking out the position in public court filings that "Qualcomm is materially breaching its ALA, giving Arm the right to terminate," TI SOF ¶ 1. Qualcomm cannot seek to hold Arm liable for exercising its First Amendment right to file suit.

***The Breach Letter****. Noerr-Pennington* equally protects the statements Arm made in its October 2024 Breach Letter ("Breach Letter"). TI SOF Ex. 4. *Noerr-Pennington* and the First Amendment protect not just litigation conduct, but also conduct "incidental" to protected litigation. *Sweet St. Desserts*, 655 F. App'x at 110–11; *Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997). The Breach Letter, which informs Qualcomm that it "is in material breach of the Qualcomm ALA" ██████████████████████ and that, "unless Qualcomm cures its material breach ███████████, Arm shall be entitled ██████████████ ████████" (TI SOF ¶ 2), is indistinguishable from the demand letters, cease-and-desist letters, and threats of suit courts routinely protect as incidental litigation-related conduct under *Noerr-Pennington*. *See, e.g.*, *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015); *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, 2011 WL 678707, at *2 (D. Del. Feb. 18, 2011); *Ancestry.com*, 2016 WL 3999315, at *5.

Qualcomm nonetheless builds its claims around the harm purportedly caused by Arm sending the Breach Letter. It identifies the Breach Letter as one of the ways in which Arm

tortiously interfered with Qualcomm's prospective business relationships. UCL SOF Ex. 40; TI SOF Ex. 19; ▮▮▮ SOF Ex. 13. In support of that theory, Mr. Amon testified that release of the Breach Letter impaired business opportunities ▮▮▮▮▮▮▮▮▮▮▮, TI SOF Ex. 14 at 157:10-158:4. Qualcomm's General Counsel, Ann Chaplin, further testified that Arm's alleged anticompetitive conduct included ▮▮▮▮▮▮▮▮▮▮▮▮ TI SOF ¶ 11. Prof. Posner ▮▮▮▮▮▮▮▮▮▮. *Id.* The contention that Arm somehow breached the implied covenant by asserting Qualcomm materially breached the ALA likewise implicates the Breach Letter, just as it implicates Arm's litigation conduct. TLA SOF Ex. 6; TLA SOF Ex. 18; ▮▮▮ SOF Ex. 25 at 27. The assertions in the letter Qualcomm finds objectionable repeat Arm's litigation position. Qualcomm's claims based on Arm sending the Breach Letter consequently fail as a matter of law.

The *Bloomberg* **Article**. Qualcomm's claims based on Arm "leak[ing] to the media a notice of cancellation for the Qualcomm ALA" again challenge protected conduct. UCL SOF Ex. 40; TI SOF Ex. 19; ▮▮▮ SOF Ex. 13; *see also* TLA SOF Ex. 6; TLA SOF Ex. 18; ▮▮▮ SOF Ex. 25 at 27. Arm did nothing wrong when ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮. TI SOF ¶ 3. Indeed, because attaching liability to steps taken to publicize legitimate legal claims risks chilling litigation conduct, courts have routinely extended *Noerr-Pennington* immunity to press releases about pending litigation. *Sunrise Pharm., Inc. v. Vision Pharma, LLC*, 2018 WL 11476075, at *3 (D.N.J. June 20, 2018); *Cap. Health Sys., Inc. v. Veznedaroglu*, 2017 WL 751855, at *13 (D.N.J. Feb. 27, 2017); *Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 384 F. Supp. 2d 1334, 1349 (S.D. Iowa 2005), *aff'd*, 464 F.3d 1339 (Fed. Cir. 2006); *Aircapital Cablevision, Inc. v. Starlink Commc'ns Grp., Inc.*, 634 F. Supp. 316, 326 (D. Kan. 1986). ▮▮▮▮▮▮▮▮▮▮▮▮ is

indistinguishable from issuing a press release for *Noerr-Pennington* purposes.

And yet Qualcomm's tortious interference damages claim turns on the alleged fallout from the resulting *Bloomberg* article. UCL SOF Ex. 40; TI SOF Ex. 19; ███ SOF Ex. 13. Qualcomm's CEO and corporate designee on issues of harm admitted that, in his view, ████████

████████████████████████████████████

████████████████████████████████████

████████████████████ TI SOF ¶ 10. The UCL and implied covenant claims implicate the same evidence and the same conduct. UCL SOF Ex. 18; TI SOF Ex. 17 ¶¶ 45, 65; UCL SOF Ex. 42; TI SOF Ex. 15 ¶¶ 51, 53-54; UCL SOF Ex. 16; TI SOF Ex. 16 at 345:10-349:11; TLA SOF Ex. 6; TLA SOF Ex. 18; ███ SOF Ex. 25 at 27; UCL SOF Ex. 40; TI SOF Ex. 19; ███ SOF Ex. 13.

That leaves Qualcomm's contentions based on Arm "reaching out to Qualcomm's customers directly" during the litigation. TLA SOF Ex. 6; TLA SOF Ex. 18; ███ SOF Ex. 25 at 27; UCL SOF Ex. 40; TI SOF Ex. 19; ███ SOF Ex. 13; UCL SOF Ex. 18; TI SOF Ex. 17 ¶¶ 45, 65; UCL SOF Ex. 42; TI SOF Ex. 15; UCL SOF Ex. 42 ¶¶ 51, 54; TI SOF Ex. 14 at 158:5-16; UCL SOF Ex. 43; TI SOF Ex. 18 at 28:24-30:20, 54:22-55:19. Each of those customers also does business with Arm. TI SOF ¶ 30. Litigation adversaries are not liable for tortious interference or similar claims merely for providing their view of the case to the other party's customers. *See, e.g.*, *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1112–14 (N.D. Cal. 2024) (dismissing claims premised on communications to plaintiff's customers); *Evanger's Dog & Cat Food Co. v. Env't Democracy Project*, 2022 WL 180205, at *1, *4 (C.D. Cal. Jan. 20, 2022); *Fitbit, Inc. v. Laguna 2, LLC*, 2018 WL 306724, at *10 (N.D. Cal. Jan. 5, 2018); *Sunrise*, 2018 WL 11476075, at *1–2; *Cap. Health Sys.*, 2017 WL 751855, at *13; *Ancestry.com*, 2016 WL

3999315, at \*5; *In re Innovatio IP Ventures, LLC Pat. Litig.*, 921 F. Supp. 2d 903, 917–22 (N.D. Ill. 2013); *Select Comfort Corp. v. The Sleep Better Store*, 838 F. Supp. 2d 889, 891–92 (D. Minn. 2012); *Melea Ltd. v. Quality Models Ltd.*, 345 F. Supp. 2d 743, 758 (E.D. Mich. 2004).

It makes no difference how Qualcomm views or characterizes those customer communications. *See* UCL SOF Ex. 40; TI SOF Ex. 19; ▮▮ SOF Ex. 13. Even if Arm were threatening suit against Qualcomm's customers for incorporating pre-acquisition Nuvia designs, those threats would be an "objectively plausible effort to enforce rights" that are "protected under *Noerr-Pennington*." *Sweet St. Desserts*, 655 F. App'x at 110–11; *Ancestry.com*, 2016 WL 3999315, at \*5; *Matsushita*, 974 F. Supp. at 359. Such conduct cannot form the basis for valid tortious interference, UCL, or implied covenant claims.

Qualcomm with good reason does not contend that any of Arm's conduct falls within *Noerr-Pennington*'s narrow "sham" exception. *See* UCL SOF Ex. 40; TI SOF Ex. 19; ▮▮ SOF Ex. 13. That exception applies only when a lawsuit is "objectively baseless." *In re Revlimid & Thalomid Purchaser Antitrust Litig.*, 2024 WL 2861865, at \*86 (D.N.J. June 6, 2024); *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993); *Ancestry.com*, 2016 WL 3999315, at \*5 (extending to cease-and-desist letters). Plaintiffs seeking to invoke that exception "face[] an uphill battle," *In re Revlimid*, 2024 WL 2861865, at \*86, and must show that "no reasonable litigant could realistically expect success," *Magnetar*, 2011 WL 678707, at \*2–3. Qualcomm cannot satisfy this high bar, particularly where Arm's claims in the prior suit survived summary judgment. UCL SOF ¶ 3. That establishes Arm's assertions were not objectively baseless, even if Qualcomm wrongly believes Arm also made misrepresentations in its communications. *See Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 122–24 (3d Cir. 1999); *Mylan Pharms., Inc. v. Teva Pharms. Indus. Ltd.*, 2025 WL 756793, at \*31 (D.N.J. Feb. 27, 2025).

23

## V.    QUALCOMM'S UCL CLAIM FAILS AS A MATTER OF LAW.

### A.  Qualcomm Does Not Lack An Adequate Remedy At Law.

Qualcomm's UCL claim still faces the same insurmountable problems Arm raised in its pending motion to dismiss. For starters, the UCL is an equitable statute, so Qualcomm "must establish that [it] lacks an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Lanza v. Moclock*, 842 Fed. App'x 714, 717 (3d Cir. Jan. 8, 2021); Cal Bus. & Prof. Code § 17203. This is a jurisdictional rule that "preclude[s]" a party from pursuing a UCL claim "where an adequate legal remedy exists." *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1142 (9th Cir. 2025); *Guzman v. Polaris Indus., Inc.*, 49 F.4th 1308, 1312–13 (9th Cir. 2022). Qualcomm has not shown why the remedies it seeks for its contract and tortious interference claims are inadequate.

The only equitable remedy Qualcomm seeks is "restitution of amounts Arm derived from its unfair and anticompetitive conduct." UCL SOF ¶ 55. But every one of Arm's supposedly anticompetitive acts is already subject to another claim where Qualcomm asks for money damages. *See* UCL SOF Ex. 18; TI SOF Ex. 17 ¶ 65; UCL SOF Ex. 16; TI SOF Ex. 16 at 291:20-301:22. Qualcomm's breach of contract and implied covenant claims similarly assert Arm failed to provide deliverables under the ALA, did not provide good-faith licensing proposals under the TLA, and has not negotiated in good faith ███████████. UCL SOF Ex. 40; TI SOF Ex. 19; ███ SOF Ex. 13 at 48; TLA SOF Ex. 6; TLA SOF Ex. 25; ███ SOF Ex. 25 at 9; TLA SOF Ex. 6; TLA SOF Ex. 25; ███ SOF Ex. 25 at 29. Qualcomm seeks significant damages for those breaches. TLA SOF Ex. 19; TI SOF Ex. 69; ███ SOF Ex. 4 at Exhibit D. Arm's statements to the press and to customers about the litigation and the Breach Letter are the subject of Qualcomm's tortious interference claims ██████████████████████ ███████ UCL SOF Ex. 40; TI SOF Exs. 19, 69; ███ SOF Ex. 13 at 29-34; TLA SOF Exs. 19, 22

(quantifying ▮ damages). Those damages are the quintessential remedy at law. *See United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 295–96 (3d Cir. 2013); *Artoss, Inc. v. Artoss GmbH*, 2021 WL 7416584, at *2 (D. Del. Dec. 9, 2021). Qualcomm never "***explain[s] why***" those "money damages are not adequate" or why it needs the equitable remedy of restitution on top of its request for money damages. *In re ZF-TRW Airbag Control Unit Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 769 (C.D. Cal. 2022); *Reese v. Wal-Mart Assocs., Inc.*, 2025 WL 472721, at *8 (E.D. Cal. Feb. 12, 2025).

That is a fatal flaw because Qualcomm "must establish that [it] lack[s] an adequate remedy at law before securing equitable restitution for past harm under the UCL." *Key*, 129 F.4th at 1142. For that reason, courts frequently reject UCL claims as a matter of law where the predicate conduct underlying the UCL claim is the same underlying other causes of action. *See, e.g.*, *King v. Nat'l Gen. Ins. Co.*, 2025 WL 2494366, at *6 (C.D. Cal. Aug. 29, 2025); *Loo v. Toyota Motor Sales, USA, Inc.*, 2019 WL 7753448, at *13 (C.D. Cal. Dec. 20, 2019); *In re Ford Tailgate Litig.*, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014). The UCL, after all, "is not an all-purpose substitute for a tort or contract action." *Korea Supply Co.*, *v. Lockheed Martin Corp.*, 63 P.3d 937, 948 (Cal. 2003).

It makes no difference that Qualcomm describes Arm's allegedly anticompetitive conduct as "persistent, systematic, and ongoing." TLA SOF Ex. 6; TLA SOF Ex. 25; ▮ SOF Ex. 25 at 54–55. Qualcomm again identifies no equitable relief it seeks other than restitution and nowhere explains why restitution would provide relief that money damages cannot. Indeed, "none of [*Sonner's*] reasoning suggests that it is limited to claims for restitution for past harms and not to purported future or ongoing harms." *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1121 (C.D. Cal. 2021); *Adams v. Cole Haan, LLC*, 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020).

25

Qualcomm would not even have Article III standing to seek injunctive relief based on Arm sending the Breach Letter, sharing that letter with the media, or Arm's alleged communications with Qualcomm's customers. Those are all backward-looking allegations unsupported by any claim of "any real or immediate threat that [Qualcomm] will be wronged again" by similar communications. *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983); *Key*, 129 F.4th at 1142. The same threshold jurisdictional requirement that foreclosed the UCL claims in *Sonner*, *Key*, and *Guzman* forecloses Qualcomm's UCL claim here.

**B. Qualcomm Has Not Proven That Arm Is Engaging In "Unlawful" Or "Unfair" Acts Or Practices Within The Meaning Of The UCL.**

The other problem with Qualcomm's UCL theory is that Qualcomm cannot prove Arm's conduct was either "unlawful" or "unfair" as a matter of law. Cal. Bus. & Prof. Code § 17200.

*"Unlawful" Conduct.* Qualcomm does not point to the type of statutory or constitutional violation necessary to satisfy the UCL's "unlawful" prong. Rather, Qualcomm claims "Arm's conduct is . . . unlawful because it violates California common law, including state law prohibiting intentional and negligent interference with prospective economic advantage." SAC ¶ 209. For the reasons explained elsewhere, Arm did not violate California common law with respect to those predicate acts. And regardless, "a common law violation such as breach of contract is insufficient" under the UCL; a plaintiff must "go beyond alleging a violation of common law" in order to "state a claim under the unlawful prong of § 17200." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035,1044 (9th Cir. 2010); *accord Gill v. Marsh USA, Inc.*, 2024 WL 3463351, at *6 (N.D. Cal. July 18, 2024); *Foundry IV Inc. v. Hard Carry Gaming Inc.*, 2024 WL 211010, at *6 (C.D. Cal. Jan. 3, 2024); *Mazal Grp., LLC v. Espana*, 2017 WL 6001721, at *4 (C.D. Cal. Dec. 4, 2017).

Qualcomm's argument that Arm's conduct violates the UCL's "unlawful" prong is circular in any event. Qualcomm contends Arm's conduct is unlawful because it tortiously interfered with

Qualcomm's economic advantage, SAC ¶ 209, and simultaneously contends Arm's conduct is wrongful for purposes of that tort because the conduct violates the UCL, SAC ¶ 202. Such circular reasoning cannot satisfy the elements of either claim. Qualcomm's UCL and tort claims rise and fall with Qualcomm's argument that Arm acted "unfairly."

*"Unfair" Conduct.* To determine whether challenged conduct is "unfair" in disputes between sophisticated corporations, courts use the "tethering test." *See Allen Saltzman LLP v. Bank of Am. N.A.*, 2024 WL 3582626, at *3 (C.D. Cal. July 29, 2024); *In re Qualcomm Litig.*, 2017 WL 5985598, at *8 (S.D. Cal. Nov. 8, 2017). Under that test, Qualcomm must establish that Arm's conduct "[1] threatens an incipient violation of an antitrust law, or [2] violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [3] otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cell. Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999). None of Qualcomm's laundry list of supposedly unfair acts amounts to an incipient antitrust violation, violates the "spirit" of the laws, or otherwise threatens competition.

In fact, Qualcomm has *no* UCL theory that implicates the antitrust laws. For one, it steadfastly refused to identify any antitrust law implicated by Arm's conduct. UCL SOF ¶¶ 45-46, 52; *see also* TLA SOF Ex. 6; TLA SOF Ex. 18; ▮ SOF Ex. 25 at 47-54; UCL SOF ¶ 21-23. And for another, it developed no market definition or evidence of monopoly power, UCL SOF ¶¶ 49-53—the hallmarks required to demonstrate an actual or incipient violation of the antitrust laws, *see id.* ¶¶ 23-24. "Without a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy competition." *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018); *see also In re Lipitor Antitrust Litig.*, 855 F.3d 126, 147 (3d Cir. 2017), *as amended* (Apr. 19, 2017).

Qualcomm's competition expert, for his part, disclaimed any opinion concerning whether "Arm's conduct violates or threatens to violate" federal or state antitrust laws. UCL SOF ¶¶ 45-46.

It is clear why neither Qualcomm nor its expert discuss the antitrust laws: Arm's conduct does not raise any antitrust concerns. Qualcomm primarily bases its UCL claim on a novel "input foreclosure" theory that Arm supposedly abused its power in the upstream market for the Arm ISA to harm competition in the downstream market for semiconductor chips. *See, e.g.*, UCL SOF Ex. 18; TI SOF Ex. 17 ¶ 64-65; TI SOF Ex. 15; UCL SOF Ex. 42 ¶ 48; UCL SOF ¶ 47. The Supreme Court has held, however, that an antitrust theory based on a party "abus[ing] their power" in an "upstream market" to "prevent rival firms from competing effectively in" a "downstream market" is "not cognizable" absent "an antitrust duty to deal." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 449–50 (2009); *see also id.* at 447–49. Qualcomm disavowed any claim that ████████████████████████. UCL SOF ¶ 46. It is well-established that "conduct explicitly condoned by federal antitrust law may not constitute a violation of the unfair prong of the UCL." *PeopleBrowsr, Inc. v. Twitter, Inc.*, 2013 WL 843032, at *3 (N.D. Cal. Mar. 6, 2013).

Qualcomm's fallback theory that ████████████████████████████ ████████████████████████████████████████████████████ is similarly unavailing. UCL SOF Ex. 18; TI SOF Ex. 17 ¶ 87. Such an antitrust duty to deal—████ ████████████████████████████ TI SOF Ex. 15; UCL SOF Ex. 42 at n.31—is in Qualcomm's own words "far outside the mainstream of antitrust law." Qualcomm Answering Br., *Key v. Qualcomm Inc.*, No. 23-3354, D.I. 22.1 at 30 (9th Cir. Apr. 26, 2024); *see also Simon & Simon, PC v. Align Tech., Inc.*, 2020 WL 1975139, at *3–6 (D. Del. Apr. 24, 2020). Even a monopolist "as a general matter … can refuse to deal with" others. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482–83 n.32 (1992); *Verizon Commc'ns Inc. v. Law Offices of*

*Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004). For that reason, California courts have consistently held a purported refusal to deal "is neither unlawful nor 'unfair'" for purposes of the UCL. *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 367 (2001); *see also Drum v. San Fernando Valley Bar Ass'n.*, 182 Cal. App. 4th 247, 254 (2010); *Beverage v. Apple Inc.*, 101 Cal. App. 5th 736, 749–50 (2024).

A rare exception exists where ending a course of dealing would "forsake short-term profits" and is "irrational but for its anticompetitive effect." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1075 (10th Cir. 2013); *see Verizon Commc'ns*, 540 U.S. at 407–11. But Qualcomm's competition expert admitted ████████████████████████████████    ████████████████████ ███████████████████████████. *See* UCL SOF ¶ 49. Indeed, the ██████████████████████ ████████████████████████████████████████████████████████ "is a presumptively rational business justification for a unilateral refusal to deal." *SolidFX LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 841–42 (10th Cir. 2016); *Indep. Serv. Orgs. Antitrust Litig.*, 203 F.3d 1322, 1329 (Fed. Cir. 2000). Meaning, Arm's conduct is indistinguishable from *Novell*, which held Microsoft's decision to no longer give Novell access to its protocols is "protected by the antitrust laws." 731 F.3d at 1074. █████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████ UCL SOF ¶ 27.

That leaves Qualcomm to argue it can establish Arm's conduct significantly threatens or harms competition ***without*** tethering its theories to the antitrust laws. In doing so, Qualcomm asks this Court to step beyond existing precedent and make new California law. But courts sitting in diversity "apply the current law of the [] jurisdiction" rather than breaking new ground. *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002). The Court should be

especially wary of adopting Qualcomm's argument here, where the California Supreme Court expressly sought to "tether[]" UCL claims to the antitrust laws. *Cel-Tech*, 973 P.2d at 543–44.

Regardless, Qualcomm's theories fail even on their own terms. "Injury to a competitor is not equivalent to an injury to competition." *Cel-Tech*, 973 P.2d at 544; *Phila. Taxi Ass'n, Inc. v. Uber Techs., Inc.*, 886 F.3d 332, 338 (3d Cir. 2018); *Sun Microsystems, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 992, 1001 (N.D. Cal. 2000); *accord* UCL SOF Ex. 16 at 297:19-298:15. Qualcomm developed no evidence ████████████████████████████████████ ████████████████. UCL SOF ¶ 53. Nor did Qualcomm develop evidence ████████████████ ████████████████████████████. *See generally* UCL SOF Ex. 42; TI SOF Ex. 15 ¶¶ 47-54; UCL SOF Ex. 16; TI SOF Ex. 16 at 304:7-306:11. In short, ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ *See id.*; UCL SOF ¶ 48.

Take, for example, Qualcomm's argument that Arm allegedly acted unfairly by "deliberately withholding deliverables it was required to provide Qualcomm under the QC ALA and TLA" and "refusing to negotiate license terms with Qualcomm in good faith." SAC ¶ 206. Those arguments assert that Arm breached its contracts with Qualcomm, as Qualcomm's expert admitted, but corporate plaintiffs may not bootstrap contract claims into UCL violations. *See, e.g.*, *Martin Saturn of Ontario, Inc. v. Subaru of Am. Inc.*, 2023 WL 9417499, at *8 (C.D. Cal. July 21, 2023); *Dollar Tree*, 875 F. Supp. 2d at 1083. The allegations that Arm supposedly "sent to Qualcomm and leaked to the media a notice of cancellation for the Qualcomm ALA," *see* UCL SOF Ex. 40; TI SOF Ex. 19; TLA SOF Ex. 13 and "sen[t] 'confusing' and 'misleading' messages to customers of Arm and Qualcomm … suggest[ing] that they faced legal jeopardy if they used Qualcomm products" do not suggest harm to competition either. UCL SOF ¶ 54. Qualcomm

nowhere substantiates how this conduct broadly undermines a competitive market or harms any competitor other than Qualcomm.

Finally, although Qualcomm has suggested Arm's conduct may be unfair under the UCL's separate balancing test, that test does not apply. The balancing test, which asks "whether the [challenged] business practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," applies only in suits brought by *consumers*. *Cel-Tech*, 973 P.2d at 543. Here, Qualcomm asserts ███████████████████████████████████████ ██████ UCL SOF ¶ 48. Its "input foreclosure" theory depends entirely on Arm competing against Qualcomm for those chip sales. UCL SOF ¶ 47. But the California Supreme Court has expressly held the balancing test is not the standard in suits between "direct competitor[s]" because it is "too amorphous and provide[s] too little guidance to courts and businesses." *Cel-Tech*, 973 P.2d at 543, 544. Qualcomm thus cannot rely on the amorphous balancing test to overcome the fundamental flaws in its UCL claim.

## VI.    QUALCOMM CANNOT SHOW ARM'S ALLEGEDLY TORTIOUS CONDUCT CAUSED QUALCOMM ANY HARM.

To prevail on its intentional and negligent tortious interference claims, Qualcomm must prove that it suffered economic harm *proximately caused by* Arm's conduct. *E.g.*, *Korea Supply Co.*, 63 P.3d at 950. Courts routinely grant summary judgment against such claims when the claimant cannot raise a genuine issue of material fact on proximate cause. *See, e.g.*, *Rotec Indus., Inc. v. Mitsubishi Corp.*, 348 F.3d 1116, 1122–23 (9th Cir. 2003); *Alfa Consult SA v. TCI Int'l, Inc.*, 2023 WL 6466388, at *13 (N.D. Cal. Oct. 3, 2023).

### A.    Arm Did Not Cause Qualcomm To Suffer Damages In Its Deal With ████

Although Qualcomm contends that Arm's conduct tortiously interfered with several customer relationships, it offers a damages number for only its relationship with ████████

31

██████████████████████████████████████████████████████

████████████████████████████████. TI SOF ¶ 14. ████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████. TI SOF Ex. 26; TI SOF

Ex. 64; *see also* TI SOF ¶¶ 19-20, 23. Qualcomm's damages expert, Dr. Kennedy, estimates that

██████████████████████████████████████████████████████

████████████████████████████████████████. TLA SOF Ex. 22

at ¶ 148.

      Qualcomm contends the ███████████████████ were caused by the publication of

the *Bloomberg* article, but no reasonable jury could accept that argument. TI SOF Ex. 19; TI SOF

Ex. 19. Dr. Kennedy, for his part, offers no causation opinion. TI SOF Ex. 69 ¶ 125 n.317.

Qualcomm's causation case instead appears to rest on four emails. The first, █████████████████

██████████████████████████████████████████████████████

██████████████████████. TI SOF ¶ 16. In the second email, ██████████████████████

████████████████████████████. *Id.* ¶ 17. ██████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* Qualcomm

then asked ████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████ *Id.*

¶ 18.

      There is no evidence ██████████████████████████████████████████

██████████████████████████. No document or witness explains why ██████████████

32

███████ The only reasonable inference is that ████████████████████████████

████████████████████████████████████████████████

███████ TI SOF ¶¶ 20-24. ██████████████████████████

████████████████████████████████████████████████

██████████████████. TI SOF Ex. 67 at 88:22-89:15; TI SOF ¶ 24. ████████████

████████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶ 22. Other communications

make clear that ████████████████████████████████████████.

For example, ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ *Id.* ¶ 21.

The testimony of Mr. Amon, Qualcomm's CEO, does not close the gaps in Qualcomm's

causation theory. He could not identify any connection between the publication of the *Bloomberg*

article and ████████████████████████████████████████

████████████████████████. *See, e.g.*, TI SOF Ex. 14 at 272:9-274:6. He instead tried

to attribute the ████████████████████████████████████████ TI

SOF ¶ 26. That is a theory refuted by the contemporaneous documents, by the testimony of

Qualcomm's corporate representative on the ████ relationship, and has nothing to do with Dr.

Kennedy's opinions on ████████████████████. *Id.* ¶¶ 12-27; TI SOF Ex. 67 at 57:5-58:3

(████████████████████████████████████████████████

████████████████████████). In sum, Qualcomm's meager causation

"evidence requires the stacking of inference upon inference, rather than inference upon evidence,"

warranting summary judgment. *Alfa*, 2023 WL 6466388, at *13.

33

**B.    Qualcomm Cannot Prove Arm Caused Economic Harm To Any Other Customer Relationships.**

Qualcomm's tortious interference claims based on Arm's alleged interference with several other customer relationships are equally flawed. Qualcomm contends Arm's conduct harmed its relationships with ███████████████████████████████████, but Qualcomm and its expert do not identify any quantifiable economic harm for any of those customers. TI SOF ¶¶ 28-30. That is fatal for Qualcomm's tortious interference claims based on those customer relationships. Establishing "economic harm … proximately caused by" Arm's conduct is an essential element of a tortious interference claim, *Korea Supply Co.*, 63 P.3d at 950, so Qualcomm's claim cannot succeed where it has identified none.

## CONCLUSION

Because Qualcomm cannot succeed on its claims as matter of law, Arm respectfully requests the Court grant its motions for summary judgment.

Dated: October 24, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
shaelyndawson@mofo.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_/s/ Anne Shea Gaza_
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

i

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 24, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

John Poulos
NORTON ROSE FULBRIGHT US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*