## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,<br><br>        Defendant. | REDACTED - PUBLIC VERSION<br>(Filed November 21, 2025)<br><br><br>C.A. No. 24-490-MN<br><br> |

### DEFENDANT ARM HOLDINGS PLC'S REPLY IN SUPPORT OF ITS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Dated: November 14, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................................. 1

ARGUMENT........................................................................................................................ 2

I.     SECTION ▋ OF THE TLA AND THE ALA IS AN UNENFORCEABLE
       PENALTY ..................................................................................................................... 2

II.    QUALCOMM'S TLA CLAIMS FAIL AS A MATTER OF LAW ............................. 6

      A.    § ██████████████████████████████████ .......... 6

      B.    Arm's ████████████████████████████ ....................... 8

III.   THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT ON
       QUALCOMM'S IMPLIED COVENANT CLAIM (COUNT III)............................. 10

IV.   *NOERR-PENNINGTON* BARS CLAIMS BASED ON ARM'S
       LITIGATION-RELATED PETITIONING CONDUCT............................................ 11

V.    QUALCOMM'S UCL CLAIM FAILS AS A MATTER OF LAW .......................... 14

      A.    Qualcomm Fails To Show That It Lacks An Adequate Remedy At Law. ........... 14

      B.    Qualcomm Has Not Adduced Any Evidence That Arm Has Engaged In
          "Unfair" Or "Unlawful Conduct" Under The UCL............................................. 15

VI.   QUALCOMM CANNOT PROVE ARM'S ALLEGEDLY TORTIOUS
       CONDUCT CAUSED QUALCOMM ANY HARM. .................................................. 18

CONCLUSION .................................................................................................................... 19

***All emphasis added unless otherwise indicated***

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajay Endeavors, Inc. v. Divvymed, LLC,*
2025 WL 239035 (D. Del. Jan. 17, 2025)................................................................................7

*Al Owaidah v. Mazzei,*
2020 WL 1041091 (C.D. Cal. Jan. 27, 2020) .........................................................................4

*Alfa Consult SA v. TCI Int'l, Inc.,*
2023 WL 6466388 (N.D. Cal. Oct. 3, 2023)..........................................................................19

*Bates v. United Parcel Serv., Inc.,*
511 F.3d 974 (9th Cir. 2007) ................................................................................................15

*Bayol v. Zipcar, Inc.,*
78 F. Supp. 3d 1252 (N.D. Cal. 2015) ....................................................................................4

*Cal. Specialty Insulation, Inc. v. Allied World Surplus Lines Ins. Co.,*
102 Cal. App. 5th 1 (2024) ......................................................................................................9

*Carrum Techs., LLC v. Ford Motor Co.,*
2023 WL 7407778 (D. Del. Nov. 9, 2023) ..............................................................................8

*Cel-Tech Commc'ns, Inc. v. LA Cell. Tel. Co.,*
973 P.2d 527 (Cal. 1999).........................................................................................14, 16, 17

*Chodos v. West Publ'g Co.,*
292 F.3d 992 (9th Cir. 2002) ..................................................................................................4

*City of L.A. v. Lyons,*
461 U.S. 95 (1983)................................................................................................................15

*ConsumerDirect Inc. v. Pentius, LLC,*
2023 WL 6173472 (C.D. Cal. Aug. 17, 2023)......................................................................18

*Copeland v. Baskin Robbins U.S.A.,*
96 Cal. App. 4th 1251 (2002) ...............................................................................................15

*DJO Glob. Inc. v. Glader,*
2016 WL 11622009 (S.D. Cal. Dec. 22, 2016)......................................................................18

*Dollar Tree Stores Inc. v. Toyama Partners LLC,*
875 F. Supp. 2d 1058 (N.D. Cal. 2012) ..................................................................................3

*Dynamex Ops. W., Inc. v. Superior Ct.*,
    416 P.3d 1 (Cal. 2018) ...................................................................................................17

*Ebbert v. Mercantile Trust Co. of Cal.*,
    213 Cal. 496 (1931) .........................................................................................................3

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023) .........................................................................................16

*Gill v. Marsh USA, Inc.*,
    2024 WL 3463351 (N.D. Cal. July 18, 2024) ...............................................................18

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*,
    232 Cal. App. 4th 1332 (2015) ...................................................................................3, 5

*Greentree Fin. Grp., Inc. v. Execute Sports, Inc.*,
    163 Cal. App. 4th 495 (2008) .........................................................................................2

*Harbor Island Holdings, L.L.C. v. Kim*,
    107 Cal. App. 4th 790 (2003) ......................................................................................2, 5

*Hsiao & Montano, Inc. v. Xstatic Pro Inc.*,
    2023 WL 4205811 (C.D. Cal. May 18, 2023) ...............................................................2

*Indep. Trust Corp. v. Fidelity Nat'l Title Ins. Co. of N.Y.*,
    577 F. Supp. 2d 1023 (N.D. Ill. 2008) .........................................................................15

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
    607 F. Supp. 3d 464 (D. Del. 2022) ...............................................................................9

*Kocher v. Larksville Borough*,
    926 F. Supp. 2d 579 (M.D. Pa. 2013) ..........................................................................11

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003) ...............................................................................................19

*Krechuniak v. Noorzoy*,
    11 Cal. App. 5th 713 (2017) ...........................................................................................6

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) ......................................................................................16

*Masterson Mktg., Inc. v. KLS Recreation Corp.*,
    2005 WL 8173312 (S.D. Cal. June 7, 2005) ...............................................................2, 4

*Matsushita Elecs. Corp. v. Loral Corp.*,
    974 F. Supp. 345 (S.D.N.Y. 1997) ...............................................................................13

*Mayfield v. United States*,
 599 F.3d 964 (9th Cir. 2010) ......................................................................................15

*Microsoft Corp. v. Motorola, Inc.*,
 795 F.3d 1024 (9th Cir. 2015) ....................................................................................14

*Ndulue v. Fremont-Rideout Health Grp.*,
 2017 WL 2547141 (E.D. Cal. June 13, 2017) ...........................................................19

*Novell, Inc. v. Microsoft Corp.*,
 731 F.3d 1064 (10th Cir. 2013) ..................................................................................18

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,
 112 Cal. App. 5th 519 (2025) .....................................................................................11

*Overhill Farms, Inc. v. Lopez*,
 190 Cal. App. 4th 1248 (2010) ...................................................................................19

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
 555 U.S. 438 (2009).....................................................................................................18

*Pickern v. Pier 1 Imports (U.S.), Inc.*,
 457 F.3d 963 (9th Cir. 2006) ......................................................................................17

*Powertech Tech., Inc. v. Tessera, Inc.*,
 872 F. Supp. 2d 924 (N.D. Cal. 2012) .......................................................................14

*Price v. Apple, Inc.*,
 2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) ...............................................................4

*In re Qualcomm Litig.*,
 2017 WL 5985598 (S.D. Cal. Nov. 8, 2017)...............................................................16

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
 732 F. Supp. 3d 1101 (N.D. Cal. 2024) .....................................................................12

*Rickards v. Canine Eye Registration Found., Inc.*,
 704 F.2d 1449 (9th Cir. 1983) ....................................................................................19

*Ridgley v. Topa Thrift & Loan Ass'n*,
 17 Cal. 4th 970 (1998) ..............................................................................................2, 5

*SolidFX LLC v. Jeppesen Sanderson, Inc.*,
 841 F.3d 827 (10th Cir. 2016) ....................................................................................18

*Song Fi Inc. v. Google, Inc.*,
 108 F. Supp. 3d 876 (N.D. Cal. 2015) .......................................................................10

iv

*Spear Pharms., Inc. v. William Blair & Co., LLC,*
  610 F. Supp. 2d 278 (D. Del. 2009) .................................................................................14

*Spence v. City of Philadelphia,*
  147 F. App'x 289 (3d Cir. 2005) .......................................................................................1

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.,*
  2018 WL 10689420 (N.D. Cal. July 9, 2018).................................................................11

*Sweet St. Desserts, Inc. v. Chudleigh's Ltd.,*
  655 F. App'x 103 (3d Cir. 2016) ................................................................................12, 13

*Warner Theatre Assocs. Ltd. P'Ship v. Metro Life Ins. Co.,*
  1997 WL 685334 (S.D.N.Y. Nov. 4, 1997).....................................................................11

*Wolf v. Walt Disney Pictures & Television,*
  162 Cal. App. 4th 1107 (2008) ...........................................................................................7

*Yahoo Inc. v. Nat'l Union Fire Ins. Co.,*
  14 Cal. 5th 58 (2022) ..........................................................................................................7

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.,*
  601 F. Supp. 3d 625 (C.D. Cal. 2022) .............................................................................15

**Statutes**

Cal. Civ. Code, §1641.................................................................................................................7

**Rules**

Fed. R. Civ. P. 37(c) ...................................................................................................................1

Fed. R. Civ. P. 37(c)(1)..............................................................................................................15

**INTRODUCTION**

Qualcomm does not manage to create any genuine dispute of material fact in response to Arm's motion. Instead, Qualcomm obfuscates and avoids addressing Arm's arguments, preferring to unveil new legal theories or attack positions Arm did not take. For example, in response to Arm's motion on Qualcomm's good faith and fair dealing claim, Qualcomm argues for the first time that Arm breached that duty by violating the ALA's confidentiality provision, ▮—a provision Qualcomm nowhere mentions in its SAC or any relevant discovery response. A summary judgment response is not the time to raise new theories, and Qualcomm's attempt to revamp its case underscores that the claims Qualcomm actually pursued fail as a matter of law. *See Spence v. City of Philadelphia*, 147 F. App'x 289, 292 (3d Cir. 2005); Fed. R. Civ. P. 37(c).

Qualcomm's answer to Arm's argument that ▮ of the ALA and TLA is an unenforceable penalty is to concede that that provision makes no attempt to estimate Qualcomm's actual harm. Given that the ▮▮, this concession is fatal. With respect to Arm's argument that ▮▮▮▮. And as to ▮▮▮. Qualcomm's response to Arm's arguments under the *Noerr-Pennington* doctrine is to largely ignore Arm's cases and instead cite a host of irrelevant cases, all while conceding (as it must) that Arm's initial litigation conduct is squarely within the heartland of the doctrine's protections.

Finally, Qualcomm appears to have realized that its UCL claim is an albatross around its

1

neck. Qualcomm spends three pages arguing for supposedly critical injunctive relief it **never raised** in its discovery responses or initial disclosures. That is an incurable error. And Qualcomm now contorts itself to argue that it is a consumer of and not a competitor to Arm, to argue that the UCL's less burdensome "balancing test" for consumer actions applies. This despite Qualcomm's myriad interrogatory responses and pages of expert reports focused on Arm's so-called strategy to "directly compete with Qualcomm." D.I. 423 Ex. 19. None of Qualcomm's smoke screen responses move the needle; the Court should grant Arm's motion for summary judgment.

## ARGUMENT

**I.    SECTION ▮ OF THE TLA AND THE ALA IS AN UNENFORCEABLE PENALTY**

Qualcomm's brief confirms ▮ bears the hallmarks of an unenforceable contractual penalty. **First**, Qualcomm acknowledges ▮ makes no attempt (let alone a reasonable one) to estimate the range of Qualcomm's anticipated harm—which it argues ▮ ▮ D.I. 464 ("Opp.") at 11, 13; D.I. 426 ¶ 6. "In the absence of" "a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained," "a contractual clause purporting to predetermine damages **must** be construed as a penalty." *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970, 977 (1998) (provision unenforceable where parties did not reasonably attempt to estimate actual damages). Arm cited many similar cases in its opening brief, but Qualcomm ignores most of them.[2] **Second**, Qualcomm admits ▮ was

---

[1] Qualcomm says that ▮ ▮, ▮ SOF Ex. 32 at 21:8-22:7; D.I. 429 Ex. 22 at -772; ▮ Ex. 30 at -603, -605-06; and its investor materials forecast revenues and profits, ▮ SOF Ex. 31 at 3.

[2] D.I. 438 at 8-12 (citing *Harbor Island Holdings, L.L.C. v. Kim*, 107 Cal. App. 4th 790, 798 (2003); *Greentree Fin. Grp., Inc. v. Execute Sports, Inc.*, 163 Cal. App. 4th 495, 500 (2008); *Masterson Mktg., Inc. v. KLS Recreation Corp.*, 2005 WL 8173312, at *2-3 (S.D. Cal. June 7, 2005); *Hsiao & Montano, Inc. v. Xstatic Pro Inc.*, 2023 WL 4205811, at *4 (C.D. Cal. May 18, 2023)).



██████████████████████████ Opp. at 13; D.I. 426 ¶ 6. ██████ provisions ██████ ████████ to ████████████, rather than compensate for anticipated harm, are again unenforceable. D.I. 438 at 11-12 (citing cases). Qualcomm has no answer to this well-established principle, one that renders ███ and its requested relief unenforceable as a matter of law. ***Third***, Qualcomm acknowledges ████ ████████████████████████████████████████, ████████████████ , ████████████████████████████████████ ██████████ Opp. at 4. This, too, is characteristic of a penalty. D.I. 438 at 12 (citing *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1071-72 (N.D. Cal. 2012), and others). And like other contractual penalties, the penalty in ████ is unenforceable.

Qualcomm's counterarguments are meritless. Qualcomm argues ███ cannot be a liquidated damages provision ████████████████████████████ ████████ . Opp. at 5-7. But "***any provision*** by which money or property would be forfeited without regard to the actual damage suffered would be an unenforceable penalty." *Ebbert v. Mercantile Trust Co. of Cal.*, 213 Cal. 496, 499 (1931). Qualcomm ignores that ████████████████ ████████████████████████████████████ ███ *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*—a case Arm cited but Qualcomm did not address— ████████████████ ████████████ ████████████████████████ 232 Cal. App. 4th 1332, 1361-65 (2015). Arm's ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ D.I. 428 Exs. 2 & 3, ██████ D.I. 474 ¶ 9. Qualcomm's expert ███ ████████████████████████████████████████ ████████████████████████████████ . D.I. 426 ¶¶ 18, 24. "When a contract

3

provides a formula to calculate liquidated damages based on profits" ██████ , "and damages can be calculated after breach when the profits ██████ had been earned, the provision is for liquidated damages, even if the actual amount cannot be calculated at the time of contract formation." *Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252, 1256 (N.D. Cal. 2015). Although Qualcomm argues ████████████████████████████████████████████████ ████████████████████████████████████████ Opp. at 6, that misses the point. That ████████ ██████████████████████████████████ ███████████████ is irrelevant because "the amount" need not "be determinable at the very instant" of breach for it "to be treated as liquidated damages." *Bayol*, 78 F. Supp. 3d at 1257-58. What matters is that the TLA and ALA ████████████████████████████ ███████████ , *id.*, which ██ does.

Qualcomm's cases did not involve anything like ██ . In *Price v. Apple, Inc.*, a clause terminating an Apple ID was not liquidated damages because it involved no damages amount or formula and plaintiff's proposed "formulas" were made up. 2022 WL 1032472, at *1-3,3 n.2 (N.D. Cal. Apr. 6, 2022). *Chodos v. West Publishing Co.* involved a quantum meruit claim for "restitution for the time and effort [plaintiff] reasonably invested in writing [a] manuscript" that never sold. 292 F.3d 992, 996, 1001-03 (9th Cir. 2002). *Al Owaidah v. Mazzei* concerned the return of a leased horse, not monetary sanctions. 2020 WL 1041091, at *3, *14 (C.D. Cal. Jan. 27, 2020).

Qualcomm cannot show ████████████████████████████ is "reasonable." Opp. at 7-14; *Masterson*, 2005 WL 8173312, at *3 (Qualcomm "must provide some countering evidence that the liquidated damage amount is reasonably related to the actual damages which may occur upon a breach"). It is no answer that Qualcomm and Arm are sophisticated parties. Courts routinely reject the argument that sophisticated parties are exempt from the rules governing unenforceable

penalties. Opp. at 8-11; *Ridgley*, 17 Cal. 4th at 981 n.5; *Harbor Island*, 107 Cal. App. 4th at 799.[3]

Qualcomm says it ████████████████████████████████████ which ████████ ████████████████████ Opp. at 10 n.6, 12-13. But Qualcomm crucially does not claim that the parties "endeavor[ed]" for ████ to be a "fair average compensation" for and bear a "reasonable relationship to the range of" Qualcomm's anticipated harm; the parties made no such effort. D.I. 426 ¶ 6; *Ridgley*, 17 Cal. 4th at 977. "In considering this range, a court may not focus on a single scenario to the exclusion of others." *Grand Prospect Partners*, 232 Cal. App. 4th at 1363-64. Yet that is exactly what Qualcomm asks this Court to do. Qualcomm says, without support, that ████ ████████████████████████████████████████████, and it describes a hypothetical scenario ██████████████ ████████████████████████ ████████████████████████████████████ Opp. at 7-14. None of those things happened and, regardless, they have no relationship to Arm ████████ ██████████████████████████████. D.I. 438 at 9-12; *Ridgley*, 17 Cal. 4th at 977-79; *Grand Prospect Partners*, 232 Cal. App. 4th at 1361 n.12. Tellingly, Qualcomm could not quantify any alleged actual harm, and it does not dispute Arm's expert's ████████████████ (D.I. 426¶ 17), which is ██████████ than the ██ ████████—a "characteristic feature of a penalty," *Grand Prospect Partners*, 232 Cal. App. 4th at 1358; Opp. at 12.

Finally, Arm's motion is not "based on hindsight." Opp. at 12-13. Qualcomm dismisses Arm's contemporaneous evidence, including evidence of Arm employees ████████████ during the ████████ negotiations, yet credits its employee, Mr. Weiser's self-serving statement

---

[3] That Arm had "full control over its" ISA, implementation cores, and other technology, Opp. at 9, is conceptually true for all companies selling goods and services. And the suggestion that there is "no viable alternative to Arm's ISA," *id.* at 9 n.4, ignores that Arm faces fierce competition, D.I. 449 Ex. 2 ¶¶ 92-115, *id.* Ex. 1 ¶¶ 74, 78, 231, and does not justify ████████████ ████ untethered from any anticipated or actual harm.

in 2025 that ██████████████ *Id.* Qualcomm tries to soften Mr. Weiser's admission that ██

████████████████████████████████████████████████████ by discrediting his

knowledge, *id.* at 13, but Qualcomm presented him as its corporate representative for the parties'

negotiations of this provision and there is no evidence to the contrary. D.I. 426 ¶ 6. As for

*Krechuniak v. Noorzoy*, it supports Arm's position by focusing on "the parties' intent"—Arm cited

contemporaneous evidence showing ████████████████████ 11 Cal. App. 5th 713,

722-24 (2017); D.I. 426 ¶ 7. Because there is no genuine dispute that ██ bears no reasonable

relationship to the range of actual or anticipated harm to Qualcomm arising from a breach, and the

parties did not intend for ██ to do so, the Court should resolve that issue now and grant Arm

summary judgment that this provision is an unenforceable penalty.

## II.    QUALCOMM'S TLA CLAIMS FAIL AS A MATTER OF LAW

### A.    ████████████████████████████████████████████████████.



████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ But "[t]he whole of a contract is to be taken together, so as to give effect to every part." Cal. Civ. Code. §1641; *Yahoo Inc. v. Nat'l Union Fire Ins. Co.*, 14 Cal. 5th 58, 69-70 (2022). Only Arm's interpretation gives meaning to every word ████████.

Given the unambiguous contract language, the Court need not consider extrinsic evidence. *See Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1126 (2008). That evidence supports Arm's interpretation in any event. ████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████ D.I. 469-1 Ex. 48 at -230. ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ *Id.* at -229-230. ████

████████████████████████ *see id.* at -229, ██████████████

████████████████████████████. D.I. 469-1 Ex. 49 at -68-69. ████

████████████████████████. D.I. 435 Exs. 2-3.

The testimony from Ms. Sand and Mr. Weiser █████████████████████

█████████████████████████. *Ajay Endeavors, Inc. v. Divvymed, LLC*, 2025 WL 239035, at *3 (D. Del. Jan. 17, 2025). ████████████████

████████████████████████████████████████████████████

███████████████████████████████████. D.I. 469-1 Ex. 48 at

-230. Nor does Mr. Abbey's testimony ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

█████████ Opp. at 18, ███████████████████████████████████████. D.I. 465-1 Ex. 57;

*id.* Ex. 55 at 55, 58-59.

Qualcomm waived its interpretation █████████ anyway by raising it for the first time on

summary judgment, despite Arm serving discovery seeking "the complete legal and factual basis"

for Qualcomm's TLA contentions. D.I. 435 Ex. 18 at 7-19; D.I. 465-1 Ex. 57; *id.* Ex. 55 at 55, 58-

59; *see also Carrum Techs., LLC v. Ford Motor Co.*, 2023 WL 7407778, at *6-7 (D. Del. Nov. 9,

2023). The plain language of the contract, contemporaneous extrinsic evidence, and waiver

principles thus all point in the same direction. The process in ████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████

**B.    Arm's** ██████████████████████████████████████████████

Much like its ██████ arguments, Qualcomm's theory that Arm breached ██████ reads █

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

█████████████████████ D.I. 428 Ex. 3 ██████. ██████████████████████████████████████

█████████████. Opp. at 19 n.11. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████. D.I. 435 Ex. 2 at 1, 5, 8-9; *see also* D.I. 435 Ex. 9 at 122:14-123:4. █████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████s.

Qualcomm is thus left to argue the Court should ██████████████████████████████████

███████████████████████████████████████████████████

████████████████████ *See* Opp. at 19 & n.11. Neither approach is an option under California law. Courts may not interpret contracts to make their words meaningless or re-write the terms of the parties' agreement. *Cal. Specialty Insulation, Inc. v. Allied World Surplus Lines Ins. Co.*, 102 Cal. App. 5th 1, 13 (2024).

Arm's interpretation of ███████ second sentence is also consistent with the first, which provides that █████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████. D.I. 428 Ex. 3 at -918. And, by the plain terms of ████████ second sentence, ████████████████████████████████████████████ D.I. 428 Ex. 3 ███████. Arm cannot █████████████████████████████████████████ ███████████████████████████████████████████.

But even if ████████ did apply, ██████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████. D.I. 438 at 14-16; D.I. 435 Ex. 13. ██████████████████████████████████████████████████████████ ████████████████████████████████████, Opp. at 18-21, ███████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████ D.I. 435 Ex. 14 at 48:12-21. Qualcomm sweeps Mr. Fonseca's testimony █████████████████████ ████████████████████████████████, but that cannot create a genuine dispute sufficient to overcome summary judgment. *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F.

9

Supp. 3d 464, 492-93 (D. Del. 2022).

Qualcomm also does not dispute that ███████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████. Opp. at 20. ████████████████

█████████████████████████████████████████████████████████. TLA SOF

Ex. 23 at 13:15-14:7. Qualcomm points to █████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████. *Id.*

at 66:23-71:13. That is precisely what Mr. Fonseca ████████████████████

███████████████████████████████████. D.I. 435 Ex. 16 at 175:6-13.

Qualcomm argues ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████. *Id.* Exs. 10-13.

## III.  THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT ON QUALCOMM'S IMPLIED COVENANT CLAIM (COUNT III).

***The Breach Letter.*** Qualcomm does not defend its theory that Arm breached the implied

covenant "by asserting, without a valid basis, that Qualcomm was in material breach of its ALA."

D.I. 435 Ex. 18 at 27. It is an indefensible theory. Under ████████████████, Arm ██████

████████████████████████████████████████████████████████████████████

██████. D.I. 428 Ex. 2 ████████; D.I. 423 Ex. 4. Because Arm had "the right to do what [it] did

by the express provisions of the contract[,] there can be no breach" of the implied covenant. *Song*

*Fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015).

***Bloomberg Article and Customer Communications.*** There are two problems with

Qualcomm's efforts to tie its implied-covenant claims for the Bloomberg article and Arm's

customer communications to ███████████████████████████████████, including

███. *See* Opp. at 21-23. ***First***, Qualcomm never alleged this theory of breach, *see, e.g.*, SAC ¶¶ 181-188 (Count III), nor identified it anywhere in discovery responses. D.I 435 Ex. 18. "A plaintiff may not expand his claims to assert new theories for the first time in response to a summary judgment motion." *Kocher v. Larksville Borough*, 926 F. Supp. 2d 579, 604-05 (M.D. Pa. 2013). ***Second***, even if Qualcomm had alleged this theory, the implied covenant is not a stand-in for an unasserted and underdeveloped claim that Arm breached an express contractual provision. *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.*, 2018 WL 10689420, at *9 (N.D. Cal. July 9, 2018).



    ***Peripheral IP.*** Nor is Qualcomm's theory that Arm breached the implied covenant by providing a peripheral IP offer persuasive. Opp. at 23-25. As Qualcomm admits, Arm ███ ████████████████████████ Opp. at 24, and it does not dispute that ███████████ ████████████████████. D.I. 436 Ex. 20 at -652. Although Qualcomm ███████████████ ████████████████████████████████████████████ ████████████████████. D.I. 428 Ex. 3 ██████. And in a recurring theme, Qualcomm also does not even attempt to address Arm's cases holding that "[n]othing in the duty of good faith requires that parties to a negotiation propose only such terms as the other party is happy with." *Warner Theatre Assocs. Ltd. P'Ship v. Metro Life Ins. Co.*, 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997). In the end, Qualcomm ██████████████████████████████ ██████████████. That is the "reasonable conduct and cooperation" contemplated by *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 112 Cal. App. 5th 519, 558 (2025).

## IV.   *NOERR-PENNINGTON* BARS CLAIMS BASED ON ARM'S LITIGATION-RELATED PETITIONING CONDUCT.

    Qualcomm's implied-covenant, tortious interference, and UCL claims are predicated on

Arm's decision to file the original lawsuit against Qualcomm, as well as conduct incidental to that litigation. The *Noerr-Pennington* doctrine protects such conduct and prevents Qualcomm from trying these claims. Qualcomm does not dispute that Arm's decision to file the original lawsuit is core petitioning activity protected under *Noerr-Pennington*. *See* D.I. 438 at 19-20; Opp. at 26 n.15. That bars Qualcomm's claims based on this conduct, including its competition expert Prof. Posner's claims that "Arm's lawsuit against Qualcomm was likely anticompetitive." D.I. 421 ¶ 11. Summary judgment should be entered in Arm's favor.

Qualcomm likewise does not dispute that: (1) the Breach Letter referred to Arm's original lawsuit; (2) Arm sent the Breach Letter while that suit was pending, and (3) it reiterated positions Arm had previously staked out in public court filings. *See* Opp. at 26; D.I. 421 ¶ 1. Arm's statement that Qualcomm had breached the ALA by selling unlicensed Nuvia-based cores was an "objectively plausible effort to enforce rights" that is "protected under *Noerr-Pennington*." *Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 655 F. App'x 103, 110-11 (3d Cir. 2016). Indeed, it is indistinguishable from the demand letters, cease-and-desist letters, and threats of suit courts routinely protect under *Noerr-Pennington* (D.I. 438 at 20 (discussing cases)), which explains why Qualcomm does not attempt to distinguish those cases. It also does not matter that Arm ███████ ████████████████████████████ as a remedy in the first case, Opp. at 26; "the protection afforded by *Noerr-Pennington* is not limited to active litigation," *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1112-14 (N.D. Cal. 2024). *Noerr-Pennington* thus protects the statements in the Breach Letter—and Arm's decision to send that letter—as well.

That leaves the Bloomberg article and Arm's statements to its customers about the litigation. Qualcomm's half-hearted attempt to distinguish between the lawsuit and ancillary conduct related to "publicization" of statements ***about*** the lawsuit makes no difference under

*Noerr-Pennington*. The Bloomberg article itself noted the Breach Letter was part of the parties' ongoing "legal fight." D.I. 421 ¶ 3; D.I. 423 Ex. 7. Qualcomm makes no meaningful distinction for *Noerr-Pennington* purposes between showing the Breach Letter to a reporter or its PR firm and issuing a press release, D.I. 438 at 21-22, instead ignoring Arm's cases extending *Noerr-Pennington* immunity to press releases about pending litigation. *See* Opp. at 28-29. Nor is showing the letter to a reporter a "false press release," a "blog post," or a "competitive brief," rendering Qualcomm's *Nuance*, *Arista*, and *Riverbed* cases distinguishable. *See* Opp. at 28-29.

In any event, parties cannot hold a litigation adversary liable for providing its view of the case to its customers. D.I. 438 at 22-23. Qualcomm again ignores Arm's wealth of First Amendment precedent on this score, citing instead to *Golden Eye*, *Thimes*, *LY Berditchev*, and others—cases in which those courts held *Noerr-Pennington* did not apply to letters sent to third parties when there **was no pending or threatened litigation**. Opp. at 27-28. Whether or not Arm's letters to its customers were "misleading" is ultimately not the point, nor the point of any of Qualcomm's cases. Here, there **was** pending litigation, Arm sought to update customers about the suit, and even assuming those letters could be seen as litigation threats, the doctrine protects even those. *Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997) (doctrine applies to letters that allegedly "threaten litigation"); *Sweet St. Desserts*, 655 F. App'x at 110-11.

Finally, it is irrelevant that *Noerr-Pennington* does not apply to contract claims. Qualcomm does not pursue a breach-of-contract claim for ███████████████████████ ███████ Opp. at 29, and Arm is not seeking immunity for that unasserted claim. In fact, Qualcomm concedes a breach of contract cannot be the underlying unlawful conduct supporting a tortious interference claim (D.I. 64 at 13), and does not dispute a contractual breach cannot serve as the basis for a UCL claim either, D.I. 438 at 30 (collecting cases). Qualcomm's cases stand only

13

for the proposition that *Noerr-Pennington* does not immunize a party from contract claims. In both *Microsoft* and *Powertech*, the courts declined to apply *Noerr-Pennington* to protect defendants from liability for asserting rights "in violation of a [contractual] commitment not to enforce those rights." *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1047 (9th Cir. 2015); *Powertech Tech., Inc. v. Tessera, Inc.*, 872 F. Supp. 2d 924, 932 (N.D. Cal. 2012). Likewise, in *Spear*, the plaintiff asserted claims for breach of contract and trade secret misappropriation, and the court found that *Noerr-Pennington* did not protect the defendant's use of misappropriated trade secrets "merely because [defendant] [later] used a petition to a government agency." *Spear Pharms., Inc. v. William Blair & Co., LLC*, 610 F. Supp. 2d 278, 287-88 (D. Del. 2009). Those cases do not preclude *Noerr-Pennington*'s First Amendment protections for Arm's conduct here.

## V.    QUALCOMM'S UCL CLAIM FAILS AS A MATTER OF LAW

Qualcomm's UCL arguments confirm it wants to pursue an antitrust theory without marshalling the evidence necessary to prove it. And its freewheeling approach to proving unfair conduct is a throwback to the standardless approach the California Supreme Court rejected in announcing the tethering test. *See Cel-Tech Commc'ns, Inc. v. LA Cell. Tel. Co.*, 973 P.2d 527, 543-44 (Cal. 1999).

### A.    Qualcomm Fails To Show That It Lacks An Adequate Remedy At Law.

The threshold problem for Qualcomm is that it has now abandoned the only UCL remedy it requested throughout discovery: restitution. D.I. 415 ¶ 55. Instead, Qualcomm spends three pages defending its need for an injunction to redress possible future harm—a need it never raised in its initial disclosures or interrogatory responses. That dooms its UCL claim. Qualcomm's brief only underscores Arm's point: Qualcomm can cite ***nothing*** to evidence its request for an injunction beyond its prayer for relief. Opp. at 36-39. This despite Arm serving on-point interrogatories seeking the "specific legal ***or equitable relief*** You seek for each alleged [unlawful or unfair] act

14

or practice," D.I. 423 Ex. 19, ROG 7, and "the complete legal and factual bases for Your contention that 'Qualcomm requires **equitable relief** under the UCL because it lacks adequate remedies at law'" D.I. 435 Ex. 18, ROG 21. It is too late for Qualcomm to change its requested relief now. *See* Fed. R. Civ. P. 37(c)(1); *Indep. Trust Corp. v. Fidelity Nat'l Title Ins. Co. of N.Y.*, 577 F. Supp. 2d 1023, 1043-44 (N.D. Ill. 2008).

Even if Qualcomm were not precluded from making its late-breaking plea for an injunction, its arguments are unavailing. References to past conduct, without more, do not raise a material factual dispute because Qualcomm marshals no evidence of "any real or immediate threat that [Qualcomm] will be wronged again." *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). Qualcomm merely speculates that Arm could one day repeat its allegedly anticompetitive acts. Opp. at 37. That is not enough to satisfy the UCL. *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). Qualcomm's argument that it will face ongoing TLA harm is perplexing given that claim is limited to ████████████ ████, SAC ¶¶ 213-26—a complaint that can be adequately remedied by damages. Opp. at 38. And Qualcomm's reference to Arm's "ongoing" conduct regarding ███ is both inaccurate and irrelevant. Most importantly, however, equitable relief is not available to require Arm to "negotiate in good faith." Opp. at 38. Under California law, "reliance damages are the only form of recovery available in an action on a contract to negotiate an agreement." *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1263 (2002). Qualcomm makes no attempt to "explain why [those] money damages are not [] adequate." *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 769 (C.D. Cal. 2022).

**B.    Qualcomm Has Not Adduced Any Evidence That Arm Has Engaged In "Unfair" Or "Unlawful Conduct" Under The UCL.**

***Unfair Conduct.*** Qualcomm barely responds to Arm's arguments about why Qualcomm

15

cannot satisfy the UCL's tethering test. Qualcomm instead shifts to arguing that it satisfies the *consumer* balancing test. Qualcomm's about-face that it is *not* a competitor to Arm, but rather a consumer, runs counter to its entire litigation theory, which is predicated on its argument that Arm sought to take away customers ████████████████████ D.I. 423 Ex. 19 at 67. Qualcomm has also explained repeatedly that Arm sought to put Qualcomm "at a *competitive disadvantage* as compared to other Arm-based CPU designers, *including [against] Arm itself*," *see id.* at 8, 66, ███████████████████████████████████████ *id.* at 35-36, and "Arm has been undergoing a shift in its business model *to directly compete with Qualcomm*," *id.* at 43-44. Posner's input foreclosure theory centers on Arm's supposedly ████████████ ███████████████████████████████████████. D.I. 411 Ex. 2 ¶ 74. Those are theories of competitive harm subject to the UCL's tethering test. *See Cel-Tech*, 973 P.2d at 544.

In any event, Qualcomm's description of the applicability of the balancing test versus tethering test is wrong. In suits between sophisticated companies, the tethering test applies regardless of whether the companies are "direct competitors." *In re Qualcomm Litig.*, 2017 WL 5985598, at *7 (S.D. Cal. Nov. 8, 2017). Qualcomm relies exclusively on *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023), for its narrow view of when the tethering test applies, but overlooks that the Ninth Circuit had previously held that test applies in suits brought by "business owners" who were not direct competitors but nonetheless asserted the challenged conduct "unfairly injures their economic interests," *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136 (9th Cir. 2014)—a holding *Epic Games* did not purport to overrule. *Levitt*'s statement of when the tethering test applies describes Qualcomm's theory here and provides a far closer parallel than *Epic Games*, where Epic was an end-user consumer of Apple's app store.

16

Even if Qualcomm did not have to "tether" its theories to the antitrust laws (it does, *Cel-Tech*, 973 P.2d at 543-44), Qualcomm has not shown there is a genuine dispute of material fact that Arm's conduct significantly threatens or harms competition. Qualcomm rests its argument on purported evidence that Arm has or intends to harm Qualcomm, not competition—i.e., the market, other competitors, or end-user consumers. *Id.* at 544 ("Injury to a competitor is not equivalent to an injury to competition."). As Arm argued—and Qualcomm ignored—Qualcomm has not offered any evidence that Arm's conduct has or threatens to increase prices for end-consumers, decrease their choice, or harm any market participants other than Qualcomm. *See* D.I. 438 at 30.

Although Qualcomm vaguely asserts that a "company's abandonment of its legal obligations can constitute unfair competition," Opp. at 34, Qualcomm does not specify what legal obligations Arm abandoned. And *Dynamex Ops. W., Inc. v. Superior Ct.*, 416 P.3d 1, 32 (Cal. 2018) did not involve a UCL claim but rather state employment law and violations of state "industry-wide wage orders." *Id.* at 32. Qualcomm has not pointed to a similar "legal obligation" here, and if by "legal obligations," Qualcomm means Arm's assertion of its contractual rights, the law is clear that corporate plaintiffs may not bootstrap contract claims into UCL violations. *See* D.I. 438 at 30 (discussing cases).

Finally, for the first time, Qualcomm briefly proclaims Arm's conduct does in fact amount to a refusal to deal giving rise to UCL liability under the tethering test. Opp. at 35. Never mind that Qualcomm's expert previously disavowed a refusal-to-deal theory and Qualcomm never raised it before. *See* D.I. 415 ¶ 46; *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006). Qualcomm's belated arguments are irrelevant anyway because they only address one part of the refusal-to-deal framework: sacrificing short-term profits. Qualcomm must also show Arm's conduct is "irrational but for its anticompetitive effect," but it does not even try.

17

*Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1075 (10th Cir. 2013). Indeed, (as Qualcomm ignores) the alleged decision to change licensing terms for "intellectual property rights" or to no longer license those rights "is a presumptively rational business justification for a unilateral refusal to deal." *SolidFX LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 841-42 (10th Cir. 2016). Qualcomm's argument that the failure to prove a refusal to deal is not a "categorical bar" to its UCL claim contradicts a long line of California precedent and the Supreme Court's decision in *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 447-50 (2009). *See* D.I. 438 at 29 (collecting cases).

***Unlawful Conduct.*** As Qualcomm concedes, "common law breach of contract is insufficient to violate the 'unlawful prong'" and cannot therefore "serve as predicate[]" for it. Opp. at 36 n.16; *accord Gill v. Marsh USA, Inc.*, 2024 WL 3463351, at *6 (N.D. Cal. July 18, 2024). Qualcomm has no response to Arm's cases holding a tortious interference claim is not a predicate for the UCL either, D.I. 438 at 26 (discussing cases), and certainly not if the Court grants summary judgment on it, *see ConsumerDirect Inc. v. Pentius, LLC*, 2023 WL 6173472, at *6 (C.D. Cal. Aug. 17, 2023). In response, Qualcomm points to *DJO Global Inc. v. Glader*, a patent and copyright case where the court held plaintiffs' UCL claim survived because it was "predicated on more than common law claims." 2016 WL 11622009, at *8 (S.D. Cal. Dec. 22, 2016). Regardless, not even *CRST Van* embraced Qualcomm's circular theory: that Arm's conduct is unlawful because it tortiously interfered with Qualcomm's economic advantage, and Arm's conduct is tortious because it unlawfully violates the UCL. Qualcomm's UCL and tort claims rise and fall with Qualcomm's argument that Arm acted "unfairly."

## VI.    QUALCOMM CANNOT PROVE ARM'S ALLEGEDLY TORTIOUS CONDUCT CAUSED QUALCOMM ANY HARM.

The causation theory for Qualcomm's tortious interference claim still "requires the

stacking of inference upon inference, rather than inference upon evidence." *Alfa Consult SA v. TCI Int'l, Inc.*, 2023 WL 6466388, at *13 (N.D. Cal. Oct. 3, 2023). No evidence ties the Bloomberg article to ███████████████████████████████████████. No document or witness explains why ███████████████. D.I. 438 at 31-33. Opposing summary judgment, Qualcomm points to ███████████, D.I. 424 Ex. 26 at -642, arguing "timing alone" can "defeat summary judgment." That is incorrect; the inquiry is "largely dependent upon the degree of proximity and the likelihood of a cause and effect relationship." *Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1267 (2010). Despite proximity, Qualcomm has shown no likelihood of a cause-and-effect relationship because no evidence indicates ████████████████████████████████ ████████████████████████████████. Even reading the available evidence in Qualcomm's favor, the only reasonable inference is that ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████ Opp. at 40 n.18; *see also* D.I. 421 ¶ 24.

Finally, Qualcomm proffers only generalizations of its relationships with other customers, not any concrete economic harm tied to those relationships, unlike *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003). Arm's Resp. to D.I. 472 ¶ 15. "[P]roof of the nature and extent of damages must be reasonably certain before recovery is warranted." *Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1456-57 (9th Cir. 1983); *Ndulue v. Fremont-Rideout Health Grp.*, 2017 WL 2547141, at *9 (E.D. Cal. June 13, 2017) (similar). Here, Qualcomm offers nothing for those other customers.

## CONCLUSION

Arm respectfully requests the Court grant Arm's motion for partial summary judgment.

Dated: November 14, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
shaelyndawson@mofo.com
Erik J. Olson

YOUNG CONAWAY STARGATT & TAYLOR, LLP


 /s/ Anne Shea Gaza
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com
Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com
Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com
Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 14, 2025, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com
John Poulos
NORTON ROSE FULBRIGHT US LLP

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

                YOUNG CONAWAY STARGATT &
                 TAYLOR, LLP

                */s/ Anne Shea Gaza*
                Anne Shea Gaza (No. 4093)
                Robert M. Vrana (No. 5666)
                Daniel G. Mackrides (No. 7230)
                Rodney Square
                1000 North King Street
                Wilmington, DE 19801
                (302) 571-6600
                agaza@ycst.com
                rvrana@ycst.com
                dmackrides@ycst.com

                *Attorneys for Defendant Arm Holdings plc*

2