IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>  a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>  a Delaware corporation, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 24-490 (MN) |
| | ) | |
| v. | ) | ▮▮▮▮▮▮▮▮▮▮▮▮ |
| | ) | |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>  a U.K. corporation, | ) | REDACTED PUBLIC VERSION |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO EXCLUDE CERTAIN OF ARM'S EXPERT OPINIONS AND
<u>TESTIMONY</u>**

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Jenifer N. Hartley
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007
(202) 240-2900

Original filing date: October 24, 2025
Redacted filing date: November 21, 2025

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ............................................................................1

II. NATURE AND STAGE OF THE PROCEEDING AND STATEMENT OF FACTS.....1

III. SUMMARY OF THE ARGUMENT...................................................................2

IV. LEGAL STANDARD .....................................................................................3

V. ARGUMENT .................................................................................................3

   A. CERTAIN OF DR. BROGIOLI'S OPINIONS SHOULD BE EXCLUDED. .................3

     1. Brogioli's September 5, 2025 Report Contains Improper Rebuttal...................................3

     2. Brogioli's ACK-Related Opinions Are Improper.........................................................5

        a. Brogioli's Lack of Familiarity with the ACK Renders His ACK-Related Opinions Unreliable.................................................................................5

        b. Brogioli's Opinion That ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Is Irrelevant. ...........................8

     3. Brogioli's Opinion That ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Is Unreliable Because He Never Evaluated Either. ............................8

     4. Brogioli's Nuvia-Related Opinions Are Irrelevant to Any Issue................................10

     5. Brogioli's Opinion Regarding the Performance of Arm Implementation Cores Is Unreliable Because He Merely Regurgitates Fact Testimony........................................11

   B. MR. RICHARDS' TESTIMONY SHOULD BE EXCLUDED..................................11

     1. Richards' September 5, 2025 Report Contains Improper Rebuttal. ............................11

     2. Richards' Materiality and ASC 450-20 Opinions Are Unreliable.................................12

        a. Materiality.............................................................................................12

        b. ASC 450-20 ..........................................................................................15

     3. Richards' Opinions About Qualcomm's State of Mind Are Inappropriate....................15

     4. Richards' Harm Opinions Do Not "Fit" the Case.........................................................16

   C. CERTAIN OF MR. BRITVEN'S TESTIMONY SHOULD BE EXCLUDED..............16

     1. Britven's Mere Repetition of Arm's Factual Allegations, Without Application of Any Objective Methodology, Is Improper. .........................................................................16

     2. Britven's Opinions About What Was "▮▮▮▮▮▮" and "▮▮▮▮▮▮" Do Not Fit This Case.    20

     3. Britven's Opinions About Causation Improperly Invade the Jury's Role. ....................21

D.    PROFESSOR SIMCOE'S TESTIMONY SHOULD BE EXCLUDED..........................21

1.   Simcoe's Testimony About Intent or State of Mind Is Inappropriate............................22

2.   Testimony About "The Future Competitive Constraint from the RISC-V ISA" and
     Hypothetical "Additional Diversion Paths" Is Not Reliable. ...........................................22

3.   Simcoe's Opinions About Qualcomm's Total Revenue and Arm's Total R&D
     Expenditure Are Unreliable...........................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                   **Page(s)**

*Allscripts Healthcare, LLC* v. *Andor Health, LLC*,
  2022 WL 3021560 (D. Del. July 29, 2022) ................................................................ 15, 22

*Basic Inc.* v. *Levinson*,
  485 U.S. 224 (1998) ............................................................................................................ 12

*Boltex Mfg. Co., LP* v. *Ulma Piping USA Corp.*,
  2019 WL 2716313 (S.D. Tex. June 28, 2019) ...................................................................... 18

*Calhoun* v. *Yamaha Motor Corp., U.S.A.*,
  350 F.3d 316 (3d Cir. 2003) .................................................................................................. 6

*Cavi* v. *Evolving Sys. NC, Inc.*,
  2018 WL 2317594 (D. Del. May 21, 2018) ......................................................................... 21

*Cirba Inc.* v. *VMware, Inc.*,
  2023 WL 6799267 (D. Del. Mar. 30, 2023) .......................................................................... 5

*Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ....................................................................................................*passim*

*Elcock* v. *Kmart Corp.*,
  233 F.3d 734 (3d Cir. 2000) .................................................................................................. 3

*FedEx Ground Package Sys., Inc.* v. *Applications Int'l Corp.*,
  695 F. Supp. 2d 216 (W.D. Pa. 2010) ................................................................................... 7

*Galderma Lab'ys, L.P.* v. *Amneal Pharms., LLC*,
  2018 WL 508876 (D. Del. Jan. 22, 2018) ............................................................................. 4

*Gen. Elec. Co.* v. *Joiner*,
  522 U.S. 136 (1997) .............................................................................................................. 3

*In re: C2R Global Mfg.*,
  2021 WL 1347209 (E.D. Wisc. Bankr. Mar. 30, 2021) ....................................................... 21

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994) ................................................................................................ 3, 6

*In re TMI Litig.*,
  193 F.3d 613 (3d Cir. 1999) .................................................................................................. 7

*Lucent Techs., Inc.* v. *Newbridge Networks Corp.*,
  168 F. Supp. 2d 181 (D. Del. 2001) ..................................................................................... 10

*Maxwell Land-Grant Co* v. *Dawson*,
  151 U.S. 586 (1894) ...............................................................................12

*O'Hara* v. *Premcor Ref. Grp., Inc.*,
  2012 WL 12896236 (D. Del. Oct. 5, 2012) .............................................. 7, 11, 18

*Oddi* v. *Ford Motor Co.*,
  234 F.3d 136 (3d Cir. 2000) ..................................................... 9, 10, 20

*Oxford Gene Tech. Ltd.* v. *Mergen Ltd.*,
  345 F. Supp. 2d 431 (D. Del. 2004) .......................................... 14, 22

*Rheault* v. *Halma Holdings Inc.*,
  2025 WL 1866842 (D. Del. June 30, 2025) ................................... 3, 18

*Smartsky Networks LLC* v. *Gogo Business Aviation LLC and Gogo Inc.*,
  2025 WL 2972258 (D. Del. Oct. 21, 2025) ...........................................18

*SUNOCO Partners Mktg. & Terminals L.P.* v. *Powder Springs Logistics, LLC*,
  2020 WL 7330715 (D. Del. Jan. 13, 2020) ..........................................24

*Torain* v. *City of Phila.*,
  2023 WL 174952 (E.D. Pa. Jan. 12, 2023) ................................. 7, 14, 15

*TSC Indus., Inc.* v. *Northway, Inc.*,
  426 U.S. 438 (1976) ....................................................................... 12, 13

*UGI Sunbury LLC* v. *A Permanent Easement for 1.7575 Acres*,
  949 F.3d 825 (3d Cir. 2020) ...........................................................20

*Wang v. Injective Labs Inc.*,
  2025 WL 775530 (D. Del. Mar. 11, 2025) ......................................4, 5

*Wirtgen Am.* v. *Caterpillar, Inc.*,
  2024 WL 166833 (D. Del. Jan. 16, 2024) ........................................10

**Statutes**

Securities and Exchange Act ...............................................................12

**Rules**

Fed. R. Civ. P. 26...................................................................................4

Fed. R. Civ. P. 37............................................................................4, 12

Fed. R. Evid. 702 ..........................................................................*passim*

## I.    PRELIMINARY STATEMENT

Defendant Arm Holdings plc, f/k/a Arm Ltd.'s ("Arm") experts offer opinions on a range of topics but suffer from a common fatal flaw: the failure to perform the requisite independent analysis needed to render their opinions reliable.  Instead, Michael Brogioli (technical expert), Steven Richards (SEC disclosure expert), Thomas Britven (damages expert), and Timothy Simcoe (competition expert) are either parroting the conclusions of Arm's fact witnesses, unquestioningly repeating information they are reading in documents, or both.  Arm's experts have various reasons for this—Brogioli, for example, has no experience with the technology at issue such that he could perform his own analysis, while Britven was hindered by Arm's failure to produce documents necessary for the relevant financial analysis.  The outcome of each expert's failure to perform independent analysis is the same: their opinions are not reliable under Federal Rule of Evidence 702.  Additionally, each of Arm's experts opine on issues irrelevant to the case (that therefore do not "fit" the case) or invade the province of the factfinder with their views on state of mind or causation.  In addition, the Brogioli and Richards reports were served as improper rebuttal reports. Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc.'s (collectively, "Qualcomm") accordingly move to exclude certain testimony of Arm's experts, as set forth below and in the Appendix attached as Exhibit 1 (chart of all paragraphs of expert reports for which corresponding testimony should be excluded).

## II.    NATURE AND STAGE OF THE PROCEEDING AND STATEMENT OF FACTS

Pursuant to the Scheduling Order, the party "who has the initial burden of proof on the subject matter" was to submit its opening expert reports on that subject by August 8, 2025.  D.I. 44 ¶ 7(g)(i).  Qualcomm submitted expert reports related to damages and financial analysis (Kennedy) and Arm's anticompetitive conduct (Posner).  Reports that "contradict or rebut evidence on the same matter identified by another party" were due on September 5, 2025.  *Id.*  On

that date, Arm served reports from purported technical and SEC disclosure experts (Brogioli and Richards, respectively), even though Qualcomm did not submit reports on these issues. Arm also served expert reports addressing damages and financial analysis issues (Britven) and anticompetitive conduct (Simcoe). On September 16, Qualcomm moved to strike the Brogioli and Richards reports as improper rebuttal before the Special Master. D.I. 395. The Special Master heard argument on October 1, and the motion remains pending. Expert discovery closed on October 3, 2025. D.I. 44 ¶ 7(g)(iii). A five-day jury trial is set to begin on March 9, 2026. *Id.* ¶ 14.

Qualcomm incorporates by reference the Statement of Facts in Section IV of Plaintiffs' Opening Brief in Support of its Motion for Partial Summary Judgment, as well as Plaintiffs' Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment.

## III. SUMMARY OF THE ARGUMENT

Testimony of each of the above-named experts should be excluded under Rule 702 and *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because:

- Brogioli lacks the requisite familiarity with the technology at issue to render his opinions reliable, and he did not perform any independent technical analysis of the technology Arm withheld from Qualcomm, Arm's ███, or Arm's implementation cores from which reliable opinions could be formed. He is additionally offering opinions related to Nuvia and the necessity of withheld technology that are not relevant to issues in this case. Brogioli's report should also be stricken as improper rebuttal.

- Richards' opinions regarding Qualcomm's purported need to disclose Arm's October 22, 2024 letter threatening to terminate the Qualcomm Architecture License Agreement ("ALA") are unreliable because he performed no independent analysis. Richards also cannot properly opine on Qualcomm's state of mind, and his opinion about whether harm to Qualcomm was material does not fit this case. Richards' report is also improper rebuttal.

- Britven's opinions regarding ████████████████████████████████████ ████████████████████████ are unreliable, as Britven merely parrots Arm's witnesses without any independent analysis. Additionally, Britven's opinions on whether Arm's actions were "reasonable" and "appropriate" are irrelevant to the issue of whether Arm breached the parties' contract. Finally, Britven cannot usurp the factfinder's role by

opining on what caused Qualcomm's damages.

- Simcoe's opinions about RISC-V (an alternative architecture to Arm's), potential diversion paths, and Qualcomm's and Arm's financials are unreliable for his failure to perform any independent analysis. And Simcoe cannot permissibly opine on Arm's state of mind.

## IV.    LEGAL STANDARD

The Court has "a gatekeeping role" to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.[1] Federal Rule of Evidence 702 imposes "three distinct substantive restrictions on the admission of expert testimony: [1] qualifications, [2] reliability, and [3] fit." *Elcock* v. *Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co.* v. *Joiner*, 522 U.S. 136, 146 (1997). Instead, expert testimony must be "reliable," meaning it "must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994). And to "fit" the case, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. Experts are not permitted to "become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Rheault* v. *Halma Holdings Inc.*, 2025 WL 1866842, at *13 (D. Del. June 30, 2025).

## V.    ARGUMENT

### A.  CERTAIN OF DR. BROGIOLI'S OPINIONS SHOULD BE EXCLUDED.

#### 1.    *Brogioli's September 5, 2025 Report Contains Improper Rebuttal.*

Brogioli was "asked by Arm's counsel to provide a technical assessment" regarding the ARM Technology (the OOB and ACK patches) and support for the ███████ that Qualcomm

---

[1] For quoted material, unless otherwise indicated, all brackets, ellipses, internal quotations, and citations are omitted for readability. All emphasis is added unless otherwise indicated.

alleges Arm withheld ████████████████ (Ex. 2 ¶ 15) along with opinions that certain of Qualcomm's CPUs are "Nuvia-based," and that ███ of Arm's architecture contains significant technical improvements (*id.* ¶¶ 369-94). Brogioli claims his 419-paragraph report is responsive to one paragraph in Qualcomm's damages expert report (Ex. 3 ¶ 32) and five paragraphs in Qualcomm's competition expert report (Ex. 4 ¶¶ 22, 28, 61, 65, 77). *See* Ex. 2 ¶¶ 15, 167-68, 396. But those paragraphs focus on reciting factual allegations and do not contain technical opinions. Ex. 3 ¶ 32; Ex. 4 ¶¶ 22, 28, 61, 65, 77. And entire sections of the Brogioli report do not reference Qualcomm's experts at all. *See* Ex. 2 ¶¶ 100-10, 272-323, 369-94. Tellingly, Brogioli drafted his report before Qualcomm's reports were served. Ex. 5 at 81:11-24.

Under Rule 26, "it is insufficient for a report to simply address the same general subject matter as a previously-submitted report; the report must contradict or rebut the actual contents of the initial report." *Wang v. Injective Labs Inc.*, 2025 WL 775530, at *1 (D. Del. Mar. 11, 2025). Where, as here, a "rebuttal" expert "does not engage with, or even cite to" an opening expert's opinions for sections of his report, his "opinions are not appropriate subject matter for a rebuttal report." *Id.* at *2. A party that fails to disclose information as required under Rule 26 "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Rule 37 and *Pennypack* favor exclusion of Brogioli's opinions. With respect to the first two *Pennypack* factors, Arm's late service of the Brogioli report prejudicially left Qualcomm with "two bad options: either scramble to have an expert respond in an effort to preserve an expert opinion on the [] allegations if the Court allowed them into the case; or offer no response and risk not preserving an opinion for trial if the pending Motion to Strike was denied." *Galderma Lab'ys, L.P.* v. *Amneal Pharms., LLC*, 2018 WL 508876, at *2 (D. Del. Jan. 22, 2018). Qualcomm could

4

not respond to the Brogioli report on the September 19 reply report deadline (two weeks after it was served). And even where a prejudiced party can depose a late-disclosed expert and serve a report rebutting his opinions, "it would be unjust to penalize [the moving party] for doing its best under difficult circumstances." *Cirba Inc.* v. *VMware, Inc.*, 2023 WL 6799267, at *3 (D. Del. Mar. 30, 2023). On the third *Pennypack* factor, Arm's intention to present "rebuttal" witnesses that are not actually rebutting Qualcomm's witnesses risks jury confusion and trial disruption. With respect to the fourth factor, Arm's months-late production of highly relevant agreements (Ex. 6; Pltfs.' Mot. for Partial Summ. J. at 7-8) is "part of a developing pattern of untimeliness, which weighs in favor of excluding" the reports. *Wang*, 2025 WL 775530, at *4; *see also Cirba*, 2023 WL 6799267, at *4. Finally, the opinions in the Brogioli report are unimportant or irrelevant and Arm has other ways to present such evidence, such as its own engineers testifying about its technology.[2] *See Wang*, 2025 WL 775530, at *4.

Arm's improper disclosure of the non-rebuttal opinions in the Brogioli report was not "substantially justified" or "harmless." The Scheduling Order gave Arm the opportunity to seek "either the consent of all parties or leave of the Court" to serve a non-rebuttal report after the initial August 8 deadline. D.I. 44 ¶ 7(g)(i). Arm did neither.

## 2. *Brogioli's ACK-Related Opinions Are Improper.*

### a. **Brogioli's Lack of Familiarity with the ACK Renders His ACK-Related Opinions Unreliable.**

Brogioli spends 101 paragraphs opining that the CPU verification materials (OOBs, ACK

---

[2] Brogioli's opinions about "Nuvia-based" cores, for example, are irrelevant now that the Court's judgment in the prior litigation has precluded Arm's defenses premised on the argument that it did not have to perform its obligations under the ALA for so-called Nuvia technology. *See* Pltfs.' Mot. for Partial Summ. J. at 9-12. The lack of fit between Brogioli's other opinions and the issues in this case is discussed further in sections V.A.2.b, V.A.4.

patches) and support (███████████████████████) Arm improperly withheld[3] were, from a technical perspective, ██████ and not necessary for verification and another 103 paragraphs opining that Qualcomm was only "minimally" harmed by Arm's withholding of these items. Ex. 2 ¶¶ 165-265, 266-368. These opinions are unreliable:

**Lack of Familiarity with the ACK and OOB.** Brogioli has no experience designing Arm-compliant CPUs, using the ACK, or verifying an Arm CPU (Ex. 5 at 84:1-5, 101:21-25) and his general "expertise in relevant fields" does not mean he can render reliable opinions on the function and significance of technology he has never used or seen. *Calhoun* v. *Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 324 (3d Cir. 2003) (excluding expert who "had never operated a jet ski and, by the time of trial, had only managed to ride a different model" from the one at issue); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 741 ("[T]he level of expertise may affect the reliability of the expert's opinion."). At his deposition, Brogioli was unable to identify the components of the OOB even though he opined that the OOB was unnecessary ████████ Ex. 5 at 124:17-128:6.

███████████████████████████████████████████████████████████████

█████████████████████████. *Id.* at 127:13-128:9. ███████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████ Ex. 5 at 131:14-132:25.

Likewise, Brogioli assumes in his report, without any analysis to confirm, that ████████████

---

[3] OOBs and ACK patches are ████████████████████, Arm's proprietary verification tool, which is delivered to ALA licensees, including Qualcomm. OOBs contain a set of reference reports that provide the specific set of tests a licensee must run to verify its custom core, as well as an analysis of known test failures when the ACK is run against Arm's CPU simulation tool called the Architecture Envelope Model or "AEM." Ex. 32 at 99:3-13, 101:19-22, 173:19-24. ACK patches are replacement source code files for defective ACK tests. Ex. 33 at 22:7-23:1, 25:13-27:9. The ████████████ is a set of verification tests related to a specific Arm architectural feature. Ex. 34 at 38:11-17.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████. Ex. 2 ¶¶ 193, 219, 296, 355.  But at his deposition, Brogioli acknowledged that ████████

████████████████████████████████████████████████████████

████████████████████. Ex. 5 at 150:22-154:18.

**Failure to Independently Investigate.**  Rather than do any technical analysis himself, Brogioli merely relies on Arm witnesses' say-so.[4] ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████. Ex. 5 at 100:13-101:20.  Expert testimony that "simply consists of recitations of narrative reports and deposition testimony" is "clearly inadmissible."  *O'Hara* v. *Premcor Ref. Grp., Inc.*, 2012 WL 12896236, at *1 (D. Del. Oct. 5, 2012); *see also Torain* v. *City of Phila.*, 2023 WL 174952, at *5 (E.D. Pa. Jan. 12, 2023).

Brogioli's failure to conduct any independent investigations into the validity of Arm's position is fatal to his reliability as an expert, particularly given his lack of familiarity with the technology at issue.  *FedEx Ground Package Sys., Inc.* v. *Applications Int'l Corp.*, 695 F. Supp. 2d 216, 224 (W.D. Pa. 2010) (excluding expert opinion based on "the word of" defendant's employee that "could have and should have [been] independently verified," including through technical analysis like source code review); *In re TMI Litig.*, 193 F.3d 613, 716 (3d Cir. 1999)

---

[4] Like other Arm experts, Brogioli repeatedly relies on unrecorded, post-fact discovery conversations with Arm witnesses, including a late-August 2025 conversation with Vivek Agrawal, Senior Principal Verification Engineer at Arm (Ex. 2 ¶¶ 176, 192, 219, 341, 355; Ex. 5 at 81:25-83:15) and an undisclosed conversation with Richard Grisenthwaite, Arm's Chief Architect, conducted a few days before submitting his report (Ex. 5 at 9:21-11:21).  Such reliance prevents Qualcomm from adequately testing the purported statements made by fact witnesses, as there is no record of those conversations.  *See* Ex. 7 at 42:9-43:25.

("failure to assess the validity of" what is relied upon, combined with "unblinking reliance," yields unreliable expert testimony).

For the same reasons, Brogioli's follow-on opinions that (1) "Qualcomm performed minimal 'extra' work, if any, compared to if Arm had provided the allegedly withheld support," (2) "any additional 'risk' to Qualcomm, to the extent it exists, was due to Qualcomm's actions, not Arm's," and (3) "Qualcomm's alleged harm due to the errata, to the extent it can be understood, was not caused by Arm's alleged withholding of OOB packages, ACK patches, or ████████ support" (Ex. 2 ¶ 271; *see also id.* ¶¶ 272-368) are not reliable. Brogioli does not have a sufficient understanding of the ACK, OOBs, or ACK patches and has no reliable basis on which to opine as to the amount of work required to verify a CPU absent Arm-provided verification materials or the risks associated with verifying a core without them.

### b. Brogioli's Opinion That the Withheld Verification Materials Were Not "Necessary" for Verification Is Irrelevant.

Brogioli spends much of his report opining on whether the withheld verification materials and support were "necessary" to complete the verification process. Ex. 2 ¶¶ 165-265. But this opinion cannot "assist the trier of fact to understand the evidence or to determine a fact in issue" (*Daubert*, 509 U.S. at 591) because it is irrelevant to the question of whether Arm was required to provide the materials ████████████████████████████████ ████████████████████████. D.I. 137 ¶¶ 173-80. Whether the withheld ████ ████████ was, as a technical matter, necessary for Qualcomm to verify its custom CPUs goes to no element of breach of contract.

### 3. *Brogioli's Opinion That* ████████████████████████████ ████████████████████ *Is Unreliable Because He Never Evaluated Either.*

Brogioli opines that A████████████████████████████████████ and that its two "main ████████████████████████████████████



)—are significant technological improvements. Ex. 2 ¶ 378; *see also id.* ¶¶ 379-94. But because Brogioli did not do a "side-by-side feature delta" between ███ and ███ and is unfamiliar with the technological improvements between the ███ and ███ architecture, he does not have reliable grounds for his opinion and it must be excluded. Ex. 5 at 21:15-18.

Rather than evaluate ███ and ███, Brogioli instead examined a single Arm ███ marketing slide deck, nearly a year old as of the time of his expert report, describing the ***planned*** updated features at a high level[5] and a White House report on memory safety (not specific to Arm's ███ or ███ instruction sets), and compared the description of the ███ features in that Arm 2024 slide deck to their pre-███ iterations.[6] Ex. 2 ¶¶ 378-94; Ex. 5 at 21:19-22:7. Admissible expert opinion must "reliably flow from the facts known to the expert and the methodology used." *Oddi* v. *Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000). But Brogioli's "methodology" of looking at an old slide deck and a generic government report is insufficient to conclude that two updated features render ███, as a whole, a "major increment above" ███, both of which contain more than ███, or those features' predecessors. Brogioli also did no analysis of the technical differences between the preceding versions of the architecture, ███ and ███ and therefore provides no baseline from which he can form his opinion that the new v10 features are ███ Ex. 5 at 23:1-17. Because "there is simply too great a gap between the data and the opinion proffered," Brogioli's opinion is unreliable and must

---

[5] Brogioli principally relied on this ███ slide deck Arm presented to partners. Ex. 2 ¶¶ 382-85, 389, 391, 393. Martin Weidmann, an author of the deck, ███ ███ but Brogioli never requested an updated version or more current Armv10 materials (Ex. 5 at 28:7-30:4).

[6] Brogioli also testified that he relied on a conversation with Richard Grisenthwaite, *supra* n.4.

be excluded.  *Oddi*, 234 F.3d at 146; *Wirtgen Am.* v. *Caterpillar, Inc.*, 2024 WL 166833, at *5 (D. Del. Jan. 16, 2024) (failure to "outline a line of reasoning from a logical foundation that supports [a] conclusion" renders opinion unreliable).

### 4. *Brogioli's Nuvia-Related Opinions Are Irrelevant to Any Issue.*

Brogioli's opinion that Qualcomm's "Phoenix-based and Pegasus-based cores are Nuvia-based cores" (Ex. 2 ¶¶ 369-77) has no relevance to this case and is therefore improper.  Brogioli states that his opinion relates to "a dispute in the first case [that] concerned whether the Phoenix-based and Pegasus-based cores were Nuvia-based cores that used code developed at Nuvia under the Nuvia ALA prior to the Qualcomm acquisition."  *Id.* ¶ 369.[7]  But opinions regarding *a prior dispute* from a separate litigation will not "help the trier of fact to understand the evidence or to determine a fact in issue" in *this* case.  Fed. R. Evid. 702(a).

To the extent Brogioli's opinion is intended to support Arm's defense that it had no obligation under the Qualcomm ALA to provide verification materials or support to purportedly unlicensed "Nuvia-based" Qualcomm cores (D.I. 234 at 39)[8] a jury already found that "Qualcomm CPUs that include designs acquired in the Nuvia acquisition are licensed under the Qualcomm ALA."  Ex. 9 at 1.  And the Court has now entered judgment that "Qualcomm was licensed under the Qualcomm ALA."  Ex. 10.  There is, therefore, no remaining dispute that Arm was obligated to perform under the Qualcomm ALA regarding Qualcomm CPUs that include designs acquired in the Nuvia acquisition, as set forth in Plaintiffs' Opening Brief in Support of their Motion for

---

[7] At his deposition, Brogioli attempted to change his Nuvia-related opinion to an opinion that Qualcomm was able to leverage Nuvia's pre-acquisition verification efforts. Ex. 5 at 64:18-68:10. That is not the same opinion as the one in his report, which does not discuss either company's verification efforts. *See* Ex. 2 ¶¶ 369-77.

[8] Such an opinion also should have been served on August 8 under the Scheduling Order, as Arm bears the burden of proof on this affirmative defense. *See* D.I. 44 ¶ 7(g)(i); *Lucent Techs., Inc.* v. *Newbridge Networks Corp.*, 168 F. Supp. 2d 181, 242 (D. Del. 2001).

Summary Judgment.  Br. at 9-12.

###### 5.  *Brogioli's Opinion Regarding the Performance of Arm Implementation Cores Is Unreliable Because He Merely Regurgitates Fact Testimony.*

Brogioli opines that certain facts relied upon by Qualcomm expert Eric Posner regarding the performance of Arm implementation cores are inaccurate.  Ex. 2 ¶¶ 395-400.  But Brogioli does not perform any analysis to reach that conclusion; he merely stitches together deposition testimony that he asserts contradicts the facts relied on by Posner.  *Id.* ¶¶ 400-19.  Expert testimony that "simply consists of recitations of narrative reports and deposition testimony" is inadmissible. *O'Hara*, 2012 WL 12896236, at *1.

## B.  MR. RICHARDS' TESTIMONY SHOULD BE EXCLUDED

Steven Richards, a CPA, opines that (i) Qualcomm had to disclose in its 2024 SEC filings Arm's October 22, 2024 letter claiming that Arm had a right to terminate Qualcomm's ALA in 60 days (the "Notice Letter"), even absent publication of the Bloomberg article prompted by Arm's sharing of the Notice Letter with Bloomberg News, and (ii) Qualcomm's SEC disclosures do not convey the harm alleged in the Second Amended Complaint ("SAC").  Both opinions contain improper rebuttal, are unreliable, interpret the parties' intent, and do not "fit" the case.

### 1.  *Richards' September 5, 2025 Report Contains Improper Rebuttal.*

Like the Brogioli Report, Richards' Report is subject to Qualcomm's pending motion to strike because it is not a proper rebuttal report.  *See* Ex. 11.  Richards was:

> asked by Counsel . . . to provide [] expert opinion on (1) whether Qualcomm was required to disclose the October 22, 2024 letter from Arm notifying it of a material breach of the Qualcomm Architecture License Agreement [] in its Form 10-K for the fiscal period ending September 29, 2024 [] regardless of the publication of its contents in the Bloomberg Article; [and] (2) whether Qualcomm's public disclosures convey the significant harm resulting from the Breach Letter or its publication in the Bloomberg Article as alleged in the Second Amended Complaint.

Ex. 12 ¶ 2.  Neither of Qualcomm's experts opined on these issues.[9]  Though Richards claims that his 94-paragraph report is responsive to three paragraphs in the Kennedy report and one paragraph in the Posner report (*id.* (citing Ex. 3 ¶¶ 118, 124, 125 and Ex. 4 ¶ 65)) those paragraphs contain recitations of Qualcomm's factual allegations—not expert opinions.  If Arm wanted to serve a report that did not "contradict or rebut evidence on the same matter identified by" Qualcomm, it needed to do so on August 8 or with leave of Court (D.I. 44 ¶ 7(g)(i)), especially because Arm has invoked Qualcomm's SEC disclosures in its affirmative defenses (D.I. 234 at 43).  Rule 37 and *Pennypack* favor exclusion of Richards' opinions for the same reasons discussed above with respect to the Brogioli report.  *See supra,* § IV.A.1.  In addition to being unable to respond to the Brogioli report, Qualcomm was unable to respond to Richards' second opinion that Qualcomm's SEC disclosures do not convey the harm alleged in the SAC, favoring exclusion.  Ex. 12 ¶¶ 69-91.

### 2. Richards' Materiality and ASC 450-20 Opinions Are Unreliable.

#### a. Materiality

The relevant inquiry in determining the materiality of a fact omitted from an SEC disclosure is whether there is a substantial likelihood that the omitted disclosure "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc.* v. *Northway, Inc.*, 426 U.S. 438, 449 (1976).[10]  The Supreme Court expressly adopted the *Northway* standard of materiality for actions brought under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, which cover actions for non-disclosure of material information in a Form 10-K.  *Basic Inc.* v. *Levinson*, 485 U.S. 224, 249 (1998).  Here,

---

[9] Richards' first opinion is also one of Arm's affirmative defenses, and therefore Arm should have submitted Richards' report as an Opening Report on August 8.  *Maxwell Land-Grant Co* v. *Dawson*, 151 U.S. 586, 604 (1894).

[10] Richards agrees that the "total mix" standard set forth in *Northway* is "an authoritative standard regarding materiality."  Ex. 13 at 128:16-129:6.

Richards opines that the Notice Letter was "material," and thus that Qualcomm was required to disclose it to the SEC in Qualcomm's 2024 Form 10-K, without performing any independent analysis, including under the *Northway* standard, and without relying on any expertise.  Ex. 12 ¶¶ 64, 67-68, 92.  Instead, Richards bases his opinion on his assumption that ***Qualcomm*** deemed the disclosure required.  That is not the materiality standard, as parties can and do choose to disclose information that is not "material."

Richards claims that, because Footnote 1 of Qualcomm's Form 10-K states in part that "if there is at least a reasonable possibility that a material loss may have been incurred associated with pending legal and regulatory proceedings, we disclose such fact"—and because Qualcomm disclosed the Notice Letter in Note 7 of its Form 10-K—Qualcomm must have determined that its disclosure was legally required.  Ex. 12 ¶¶ 73-74 (citing Ex. 14 (Qualcomm Inc., Form 10-K, 2024), p. F-13); Ex. 13 at 83:7-15 ("How do you know that Qualcomm determined that the Notice Letter was required to be disclosed? A. Because they lay out their policy in Footnote 1 of the financial statements, and then disclosed it in Footnote 7"), 131:20-133:7.

When asked if he conducted "any separate evaluation or analysis" of this issue outside of reviewing Qualcomm's SEC disclosures, Richards stated that he "got the same answer" by reviewing the deposition transcripts of Qualcomm's CEO, Cristiano Amon, and a former Qualcomm attorney, Jonathan Weiser.  Ex. 13 at 133:8-16, 135:2-136:10, 145:11-150:4 (identifying nn. 15, 16, 152, 153, and 168-171).  Richards claims ████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████.  *Id.*; Ex. 15 at 218:12-24, 220:11-221:3; Ex. 16 at 42:2-43:7.  Putting aside that neither of these deposition statements address legal materiality under the relevant standard, Richards' opinion "constitutes mere personal belief as to the weight of the evidence" and should be excluded because it "invades the province of the fact-finder." *Oxford Gene Tech. Ltd.* v. *Mergen Ltd.*, 345 F. Supp. 2d 431, 435 (D. Del. 2004).

Richards does not perform any analysis of whether disclosure of the Notice Letter would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available, as is required to demonstrate materiality.  He did not review or analyze any analyst reports issued after the Bloomberg Article was published on October 22, 2024 (Ex. 13 at 233:16-20) despite admitting that investors "do make use of analyst reports" (*id.* at 234:13-16). He did not speak to anyone at Qualcomm or anyone who had previously audited Qualcomm.  *Id.* at 107:6-11.  Richards did not consider or cite any evidence of investor sentiment after the Bloomberg Article was published to support his opinion that the Notice Letter was material.[11]  His report concedes that he reviewed transcripts from three investor events Qualcomm attended between November 6 and December 4, 2024—all after Qualcomm's disclosure—yet he does not cite these transcripts in support of his materiality opinions (Ex. 12 ¶¶ 64-68)—likely because, as he admits, Qualcomm made no statements regarding whether the Notice Letter had a material impact on Qualcomm at these events.  Ex. 12 ¶¶ 83-84.  Richards' failure to offer any "analysis or explanation for how he arrives at his conclusion[]" shows there is no "discernible methodology applied by [Richards] in offering his opinions." *Torain*, 2023 WL 174952, at *5.

---

[11] Richards' review of the Amon and Weiser transcripts is also irrelevant under this analysis. Neither existed on the date of disclosure in question, so they could not be part of the "total mix" of information available to reasonable investors.  Ex. 13 at 159:1-11.

### b. ASC 450-20

Richards also opines, with no underlying analysis, that Qualcomm was required to disclose the Notice Letter because it constitutes a "Loss Contingency" under Accounting Standards Codification 450-20 ("ASC 450-20"). Ex. 12 ¶¶ 64-68, 92. A contingent loss is defined as "an existing condition, situation, or set of circumstances involving uncertainty as to possible loss to an entity that will ultimately be resolved when one or more future events occur or fail to occur." *Id.* ¶ 45 (citing Ex. 17 (FASB ASC. 450-20, Loss Contingencies, Glossary)). Per ASC 450-20, a loss contingency should be accrued if (1) it is "probable," meaning "the future event or events are likely to occur," and (2) "the amount of the loss can be reasonably estimated." *Id.* ¶ 46 (citing Ex. 17 (FASB ASC 450-20, Loss Contingencies, Glossary and FASB ASC 450-20-25-2, Loss Contingencies, General Note)). But Richards provides no analysis for either element. *See id.* ¶¶ 64-68. He did not assess the probability that a loss may have been incurred with respect to the Notice Letter (Ex. 13 at 301:16-20) nor did he assess whether the purported loss could be reasonably estimated (*id.* at 301:21-302:5). Once again, Richards' failure to offer any independent "analysis or explanation for how he arrives at his conclusion" that the Notice Letter constitutes a "Loss Contingency," meaning "there does not appear to be any discernible methodology applied by [Richards] in offering his opinions." *Torain*, 2023 WL 174952, at *5.

### 3. *Richards' Opinions About Qualcomm's State of Mind Are Inappropriate.*

Richards' testimony that Qualcomm deemed the Notice Letter material is also improper to the extent it opines on Qualcomm's state of mind regarding the Notice Letter or its disclosure obligations. *See, e.g.*, Ex. 12 ¶¶ 21, 67. "Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case [] and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury." *Allscripts Healthcare, LLC* v. *Andor Health, LLC*, 2022 WL

3021560, at *27 (D. Del. July 29, 2022).

### 4. Richards' Harm Opinions Do Not "Fit" the Case.

Richards opines that the Notice Letter and Bloomberg Article "did not the material adverse impact on Qualcomm that Qualcomm described in the Second Amended Complaint." Ex. 12 ¶¶ 69-91, 93. That opinion is irrelevant to whether Qualcomm suffered actual harm and does not accurately describe Qualcomm's claims in the SAC. As Richards acknowledges, Qualcomm does not allege that the harm arising from the leak of the Notice Letter is material. Ex. 13 at 260:16-261:7. Nor did Richards perform any materiality analysis, as is required under *TSC Industries*. As such, Richards' opinion is irrelevant. Further, Richards agrees that he is not offering any opinion on whether Qualcomm suffered harm as a result of the leak of the Notice Letter, or on the extent of the damages Qualcomm incurred. Ex. 13 at 119:10-13, 120:3-7. Thus, Richards' opinions regarding what Qualcomm's SEC disclosures "convey" about its harm, by Richards' own admission, do not bear on the ultimate issue of whether Qualcomm was harmed or what the extent of that harm was.

## C. CERTAIN OF MR. BRITVEN'S TESTIMONY SHOULD BE EXCLUDED.

Arm's damages expert Thomas Britven, a CPA, seeks to offer opinions—divorced from any financial analysis—that are outside the scope of appropriate expert testimony, irrelevant to this case, and exclusively within the province of the jury. These opinions should be excluded.

### 1. Britven's Mere Repetition of Arm's Factual Allegations, Without Application of Any Objective Methodology, Is Improper.

Britven's opinions that "," that "

," and that "

16

████████████████████████████████████████████████████████
████████████████████████████ ' are improper. Ex. 18 ¶¶ 17, 151.

Each of these opinions parrots facts apparently relayed to Britven by Arm employees for the first time in interviews conducted after the close of fact discovery. For example, Britven depends on his interviews with Arm employees[12] for:

- His understanding of ██████████████████████████████████ ████████████ (Ex. 18 ¶¶ 77-79, Ex. 19 at 132:22-133:8) so that he could rubber stamp the ████████████ Ex. 18 ¶ 17.

- His understanding that ████████████ █████████████████████████████████████ so that he could opine that " ██████ ████████████████████████████████ ." Ex. 18 ¶ 17.

- His understanding that "it would not be appropriate to 'deconstruct' the licensing fee paid by ████████ (Ex. 18 ¶ 147 n.385) so that he could opine it was ████████ ████████████ Ex. 18 ¶ 149.

Overall, Britven cites interviews of Arm employees that he conducted after their depositions more than 50 times, and these interviews are his only source for more than 25 propositions. *See generally* Ex. 18; Ex. 19 at 88:6-13. When asked at his deposition what he discussed in these interviews (which Qualcomm was not privy to), Britven had to rely on a document created by his staff that listed the propositions for which he cited them and testified that he "[p]robably" discussed other things with these Arm employees but that he "d[id not] remember

---

[12] Though he cites a few times to an interview with Arm Director and Partner Manager Jeff Fonseca, Britven overwhelmingly relies on his group interview with Akshay Bhatnagar and Karthik Shivashankar of Arm's licensing team and Arm attorney Ehab Youssef. Ex. 18; Ex. 19 at 87:14-23. Arm may have arranged for Britven to interview these employees in a group because of their contradictory deposition testimony. *Contrast, e.g.,* Ex. 20 at 72:2-7, 82:10-25 ████ ████████████████████████████████████████████████████████ *with* Ex. 21 at 113:24-114:13 ( ████████████████████████████████████████████████████████ ████ .

what they are." Ex. 19 at 90:10-93:19, 97:14-98:6.  Britven also struggled to recall whether certain information he cited that was contrary to the interviewees' deposition testimony came from his interviews or some other source.  *See, e.g.*, Ex. 18 ¶¶ 78, 80 (list of licensees Arm purportedly considered); Ex. 19 at 106:6-107:9 (Britven unsure of list's origin); Ex. 21 at 90:7-16 (interviewee unable to recall more than two licensees); Ex. 20 at 37:9-38:5 (same).  And Britven had to retract his assertion that Arm had asked Qualcomm for information about its ████████████████ request because "███████████████████████████████████████████ ████████." Ex. 19 at 39:6-20; Ex. 18 ¶ 148.

Britven's opinions based on his adoption of Arm's unchallenged assertions—which Qualcomm cannot directly cross-examine—are not "based on sufficient facts or data" or "the product of reliable principles and methods." Fed. R. Evid. 702.  Proffered expert material like this, which "simply consists of recitations of narrative reports and deposition testimony," is "clearly inadmissible." *O'Hara*, 2012 WL 12896236, at *1; *Boltex Mfg. Co., LP* v. *Ulma Piping USA Corp.*, 2019 WL 2716313, at *3 (S.D. Tex. June 28, 2019) (excluding contents of Britven's employee interviews because he "cannot be made a vehicle for getting otherwise inadmissible testimony before the jury").  An expert may not "under the guise of giving expert testimony, [] in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Rheault*, 2025 WL 1866842, at *13; *Smartsky Networks LLC* v. *Gogo Business Aviation LLC and Gogo Inc.*, 2025 WL 2972258, at *6 (D. Del. Oct. 21, 2025).

Britven's parroting of undisclosed interviews is a natural consequence of the fact that Arm has produced ***no documents*** showing ████████████████████████████████ from which Britven could independently form his opinions, despite Qualcomm's repeated persistent efforts to obtain this evidence. *See, e.g.*, Ex. 22 at Nos. 34, 40; Ex. 23 at Nos. 123-125;

Ex. 20 at 44:17-45:24; Ex. 24; Ex. 25 at 2; D.I. 359; Ex. 26; Ex. 27.  Britven himself repeatedly emphasized at his deposition that his study of this case is "ongoing" due to Arm's failure to produce relevant documents.  Ex. 19 at 51:6-13, 157:5-14, 228:5-7, 252:4-9, 258:17-23.

The only produced documents that Britven cites for his understanding of Arm's █████████ █████████████████████████████ are Arm's license agreements with third parties and the proposal itself—neither of which explains *how* Arm internally evaluated those third-party agreements to generate the offer.  Ex. 18 ¶¶ 77-79.  Even where an Arm interview is cited alongside a document, Britven has chosen to unquestioningly accept Arm's interpretation of documents without his own inquiry or analysis.  For example, Britven opines that "██████ provides the lowest royalty rates for each of ████████████████ relative to the other produced agreements that also provide royalties calculated as a percentage of ASP" (Ex. 18 ¶ 17) but he could not explain at his deposition where or how ████████s agreement provides a lower rate than the produced agreements of other third parties.  *See* Ex. 18 ¶ 109 n.281 (████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████); Ex. 19 at 188:12-190:8 (████████████████ ██████████████████████████████████████████), 199:23-201:22 (████████████████████████████████), 352:15-21 (████████████████████████ ███████████████████████████████████████████████████████████████).

Britven's opinions have no reliable basis.  Britven admits that his opinion that ██████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████ Ex. 19 at 136:18-137:22.  Britven admits that he ████████████████████████████████████████ (because Arm hasn't produced

any documents ███████████ ), and is only "████████████████████████" *Id.* at 135:7-24.  This "haphazard, intuitive inquiry" based on a "no obvious errors so far" standard is insufficient to support expert opinions.  *UGI Sunbury LLC* v. *A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 834 (3d Cir. 2020).  And with respect to his opinion that it was "███████████ ████████████████  ████████████████████████  ████████████████████ ██████████," Britven acknowledges he did not perform his own analysis of the ████████ ████████████ and just made up a list of considerations it would be "nice to see" ████████ ████. Ex. 19 at 155:15-157:14, 257:11-19.  Here, too, Britven "used little, if any, methodology beyond his own intuition."  *Oddi*, 234 F.3d at 158.

        **2.  *Britven's Opinions About What Was "*███████████* and "*███████████* Do Not Fit This Case.***

    Britven's views that ███████████████████████████████████████████████ ████████████████████████████████████████ ██████████ do not "fit" the case and will not assist the jury in deciding any contested issue. Ex. 18 ¶¶ 17, 151; *Daubert*, 509 U.S. at 591.  The relevant question in this breach of contract case is not whether Arm ████ ████████████████████████████████████████ (*see, e.g.*, D.I. 137 ¶¶ 213-26) but whether Arm complied with ████████ of the parties' TLA.  And that is a question that Britven's opinions cannot help answer. Ex. 19 at 140:14-19 (███████████████████████████); 151:24-152:7 (no opinion on compliance with contract); 154:10-25 (same); 241:8-243:6 (████████ ████████████████████████████████████████████████████ ██████).  Put another way, it is possible for Arm's conduct to have been "███████████ and "█████████ in Britven's view and still out of compliance with what the parties agreed Arm was required to do under the TLA.  *See* Ex. 19 at 151:2-23.  Either way, Britven's opinions are irrelevant and allowing him to testify about them could confuse a jury, leading it to believe that so

long as Arm ███████████████████████████ then it was not in breach.

### 3. *Britven's Opinions About Causation Improperly Invade the Jury's Role.*

Britven improperly seeks to opine that ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ Ex. 18 ¶¶ 18, 203, 209,

211, 215. Britven acknowledges that "causation has one foot in liability" (Ex. 19 at 280:16-23).

Thus, he should not be permitted to substitute his read of the record for the jury's. *See Cavi* v.

*Evolving Sys. NC, Inc*., 2018 WL 2317594, at *2 (D. Del. May 21, 2018) (excluding "causation

opinion" because the "jury will be able to use its common sense and experience to understand the

relevant testimony, and to decide whether or not to believe Plaintiff").

Britven claimed at his deposition that he only meant to criticize Qualcomm's expert Dr.

Kennedy—not Qualcomm itself—for not proving causation, though he also acknowledged that

Dr. Kennedy does not bear that burden. Ex. 19 at 282:15-285:24. But even with respect to Dr.

Kennedy, "to the extent that Britven intends to offer substantive testimony on issues of causation

outside of his analysis of financial data, such testimony would exceed his area of expertise and be

inadmissible as expert testimony." *In re: C2R Global Mfg*., 2021 WL 1347209, at *5 (E.D. Wisc.

Bankr. Mar. 30, 2021) (granting *Daubert* motion as to Britven's attempts to rebut opposing

damages expert's assumption of causation).

### D. PROFESSOR SIMCOE'S TESTIMONY SHOULD BE EXCLUDED.

Simcoe's testimony should be excluded to the extent it constitutes interpretation of the

parties' intent or state of mind, speculation about future technical ecosystems or consumer

behavior, or generalized assumptions about Arm's ecosystem and harm to Qualcomm based on

total aggregate revenue and R&D expenditures.

21

### 1. *Simcoe's Testimony About Intent or State of Mind Is Inappropriate.*

Simcoe's report is rife with "testimony as to intent, motive, or state of mind [that] offers no more than the drawing of an inference from the facts of the case." *Allscripts*, 2022 WL 3021560, at *27. For example, Simcoe's report opines "that Arm's actions were not aimed at harming Qualcomm, one of its main customers." Ex. 28 ¶ 237*, see also id.* ¶¶ 168-69. But he simply reviewed Arm's conduct and opined that "███████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████." Ex. 29 at 43:19-44:5; *see also id.* at 36:18-50:20. This opinion impermissibly substitutes Simcoe's own personal view for that of the fact-finder. *Oxford Gene Tech.*, 345 F. Supp. 2d at 435. It additionally "assume[s] that the disagreement with Qualcomm reflects Arm's genuine views of [] contractual obligations rather than an intent to harm Qualcomm," and that "Arm started the *Arm* v. *Qualcomm* litigation to exercise contractual rights, not to foreclose Qualcomm." Ex. 28 ¶¶ 124, 237; *see also id.* ¶¶ 56-62, 108, 120-26, 141, 166-71, 236. Opinions merely regarding Arm's "intent, motive, or state of mind" should be excluded. *Allscripts*, 2022 WL 3021560, at *27.

### 2. *Testimony About "The Future Competitive Constraint from the RISC-V ISA" and Hypothetical "Additional Diversion Paths" Is Not Reliable.*



Simcoe claims that "█████████████████████████████████████████

████████████████." *See* Ex. 28 ¶¶ 71-72, *see also id.* ¶¶ 67-74, 131-36, 145-48, 150-55, 220-26. While he acknowledges that RISC-V "█████████████████████████████████

█████████████████," Simcoe contends that RISC-V "█████████████████████

████████" (*id.* ¶ 71) but does not provide analysis to support that statement. Simcoe admits that his opinion is not based on "any analysis of RISC-V from a technical perspective," and that he failed to conduct independent analysis of the RISC-V software ecosystem or network of

developers, despite understanding that it is a critical aspect of the viability of an ISA.  Ex. 29 at 89:23-90:2, 114:1-120:4, 123:15-125:5; Ex. 28 ¶ 38.

Instead, Simcoe based his opinion on statements in Qualcomm documents "█████████ █████████████████████████████████████████████████."  Ex. 29 at 98:3-15, 112:1-21.  Simcoe did not investigate the basis of these statements, analyze their veracity, or make any determination as to the likelihood that RISC-V █████████████████████████████.  He also fails to consider evidence pointing to the opposite conclusion, including statements from Arm's CEO that "RISC-V is not interesting from a CPU standpoint" because there's "no software anywhere for RISC-V in these places. None."  Ex. 30 at 8-9; *see also e.g.*, Ex. 31 at 205:13-22 (Qualcomm SVP referring to Qualcomm's RISC-V projections, "we don't believe that it is doable in this time frame given the immaturity of RISC-V.").

Similarly, Simcoe speculates about hypothetical "████████████████████████████ ████████████████████████████████████████████.  Ex. 28 ¶¶ 156-61.  Simcoe claims, without support, that ██████████████████ █████ █████████ ███████████████████ *Id.* ¶ 161.  Simcoe cites no evidence that █████████████ █████, or that Arm would be harmed because ███████ ████████████████████████████.  The only evidence cited to support Simcoe's claims that █████████████████████████████ █████████████████████████████, is a conversation with an Arm employee.[13] Simcoe's opinions are, at best, misstatements of current trends to predict a hypothetical future in a highly technical industry outside of Simcoe's expertise.  Ex. 29 at 24:24-25:6 (Simcoe is "not opining as a technical expert"), 29:24-30:1.

---

[13] Arm knows whether ███████ ████████████████████████████████████████████ ████████████ but refuses to produce documents including that information.  *See* D.I. 359 at 1. Simcoe's opinion should be stricken based on Arm's failure to produce relevant documents.

### 3. Simcoe's Opinions About Qualcomm's Total Revenue and Arm's Total R&D Expenditure Are Unreliable.

Simcoe draws sweeping conclusions from generalized data without analysis or connection to the issues in this case. For example, Simcoe concludes that "Qualcomm's performance and market success" were not "affected in meaningful ways" by Arm's actions because Qualcomm has had strong financial performance and its "total revenue increased more than 38% from Q1 2021 to Q1 2025." Ex. 28 ¶¶ 82-86. Simcoe acknowledges that Qualcomm is a large and complex company with different business segments. *Id.* ¶¶ 50-55. Despite this, Simcoe does not assess what portion of Qualcomm's revenue is derived from its "design[] and develop[ment of] chip solutions" and admits that "a number of factors impact how Qualcomm's profits evolve" and his "analysis does not isolate the effect of Arm's conduct." *Id.* ¶ 81 n.194.

Similarly, Simcoe concludes that Arm faces "competitive pressure" and cannot be a "monopolist" because its total R&D expenditure is higher than Qualcomm's as a share of revenue. Ex. 28 ¶¶ 212-16. But Simcoe fails to perform any assessment of what portion of Arm's total R&D expenditure is invested in developing or improving the ISA.[14] Simcoe testified that he did not break down what Arm's R&D expenditures are directed to, because "it's not so easy to tell" and he did "not have data that from a cost perspective allow[ed him] to say this R&D project is ISA; this R&D project is core or something else." *See* Ex. 29 at 199:7-201:23. Simcoe's failure to acquire that data because he "didn't ask" for it demonstrates the unreliability of his overgeneralized approach. *Id.*

---

[14] Simcoe's evaluation of total revenue and total R&D expenditure, without any analysis to determine the relevant portion of the data, is similar to a failure to apportion a damages calculation by "appl[ying] a royalty rate to the total revenue," a failure that is a frequent basis for exclusion. *See, e.g.*, *SUNOCO Partners Mktg. & Terminals L.P.* v. *Powder Springs Logistics, LLC*, 2020 WL 7330715, at *5 (D. Del. Jan. 13, 2020).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
Jenifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Catherine Nyarady
Anish Desai
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7000

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA  94105
(628) 432-5100

October 24, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 24, 2025, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                                  *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
Sydney D. Gaskins, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Kyle W.K. Mooney, Esquire                                  *VIA ELECTRONIC MAIL*
Alexandra Corrinne Hottenrott, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

26

Erik J. Olson, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Defendant*

Daniel P. Muino, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
*Attorneys for Defendant*

Brian M. Kramer, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, CA  92130
*Attorneys for Defendant*

William Frentzen, Esquire                                 *VIA ELECTRONIC MAIL*
Daralyn J. Durie, Esquire
Shaelyn Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                   *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                              *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                                        *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*


/s/ Jennifer Ying
_____
Jennifer Ying (#5550)