IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| QUALCOMM INCORPORATED,<br>  a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>  a Delaware corporation, | )<br>)<br>)<br>)<br>) |  |
|              Plaintiffs, | )<br>) | C.A. No. 24-490 (MN) |
| v. | )<br>)<br>) | ████████████████████ |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>  a U.K. corporation, | )<br>)<br>) | REDACTED PUBLIC VERSION |
|          Defendant. | )<br>) |  |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT**

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Jenifer N. Hartley
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007
(202) 240-2900

Original filing date: October 24, 2025
Redacted filing date: November 21, 2025

## <u>TABLE OF CONTENTS</u>

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   NATURE AND STAGE OF THE PROCEEDINGS .............................................2

III.  SUMMARY OF ARGUMENT ..................................................................................2

IV.   STATEMENT OF FACTS .........................................................................................3

V.    LEGAL STANDARD ................................................................................................9

VI.   ARGUMENT .............................................................................................................9

   A. Arm Is Collaterally Estopped From Asserting Defenses Based On Issues  Resolved In The Arm Action.................................................................................................9

   B. Arm Breached ███████████ Of The TLA By ███████ ██████████████████ And ████████ By █████████████████████████████.................................................13

      i.   Arm ███████████████████████████████████████.....................14

      ii.  Arm's ████████████████████████████████ ............................21

      iii. Qualcomm Has Been Harmed By Arm's Breaches of TLA ██████...................22

   C. Summary Judgement Should Be Granted On Arm's Unclean Hands Defense.................23

VII.  CONCLUSION .......................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                        **Page(s)**

*Arm Ltd.* v. *Qualcomm Inc. et al.*,
No. 22-1146-MN (D. Del) ....................................................................................... 3, 24

*Bank of Am., N.A.* v. *Roberts*,
159 Cal. Rptr. 3d 345 (Ct. App. 2013) ........................................................................ 26

*Biogen Int'l GmbH* v. *Amneal Pharms. LLC*,
487 F. Supp. 3d 254 (D. Del. 2020) ....................................................................... 10, 11

*Brigham & Women's Hosp. Inc.* v. *Teva Pharms. USA, Inc.*,
707 F. Supp. 2d 463 (D. Del. 2010) ............................................................................. 19

*Cal. Nat'l Bank* v. *Woodbridge Plaza, LLC*,
78 Cal. Rptr. 3d 561 (Ct. App. 2008) .......................................................................... 21

*Daubert* v. *Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ..................................................................................................... 20

*Eucasia Schs. Worldwide, Inc.* v. *DW August Co.*,
159 Cal. Rptr. 3d 621 (Ct. App. 2013) ........................................................................ 21

*Galderma Lab'ys Inc.* v. *Amneal Pharms, LLC*,
921 F. Supp. 2d 278 (D. Del. 2012) ............................................................................. 12

*Hawk Inv. Holdings Ltd.* v. *Stream TV Networks, Inc.*,
2022 WL 17258460 (Del. Ch. Nov. 29, 2022) ............................................................. 10

*Jade Fashion & Co.* v. *Harkham Indus., Inc.*,
177 Cal. Rptr. 3d 184 (Ct. App. 2014) .................................................................... 24, 26

*Jean Alexander Cosmetics, Inc.* v. *L'Oreal USA, Inc.*,
458 F.3d 244 (3d Cir. 2006) ......................................................................................... 12

*Jutrowski* v. *Twp. of Riverdale*,
904 F.3d 280 (3d Cir. 2018) ...................................................................................... 9, 20

*Lucky Brand Dungarees, Inc.* v. *Marcel Fashions Grp., Inc.*,
590 U.S. 405 (2020) ...................................................................................................... 24

*M.G. Bancorporation, Inc.* v. *Le Beau*,
737 A.2d 513 (Del. 1999) ............................................................................................. 10

*Neoplan USA Corp.* v. *Taylor*,
604 F. Supp. 1540 (D. Del. 1985) ........................................................................... 10, 12

*Oasis W. Realty, LLC* v. *Goldman*,
  250 P.3d 1115 (Cal. 2011) ...................................................................................13

*Rivera* v. *Redfern*,
  98 F.4th 419 (3d Cir. 2024) ...................................................................................9

*Salas* v. *Sierra Chem. Co.*,
  327 P.3d 797 (Cal. 2014) ...................................................................... 24, 25, 26

*Semtek Int'l Inc.* v. *Lockheed Martin Corp.*,
  531 U.S. 497 (2001) ...........................................................................................10

*St. Louis Condominium Ass'n, Inc.* v. *Rockhill Ins. Co.*,
  2019 WL 2013136 (S.D. Fla. Mar. 7, 2019) .......................................................19

*Thomas & Agnes Carvel Found.* v. *Carvel*,
  2008 WL 4482703 (Del. Ch. Sept. 30, 2008) ......................................................12

**Statutes**

Cal. Civ. Code § 1641 ................................................................................................21

California Unfair Competition Law ...............................................................................2

**Rules**

Fed. R. Civ. P. 8(b)(6) ..............................................................................................13

Fed. R. Civ. P. 30(b)(6) .......................................................................................7, 16

Fed. R. Civ. P. 56(a) ..................................................................................................9

Fed. R. Civ. P. 56(c)(1) ............................................................................................13

**Other Authorities**

Restatement (Second) of Judgments (1982) ..........................................................10, 12

Cal. Civ. Jury Instr. 303 ...........................................................................................13

## I.    PRELIMINARY STATEMENT

Arm has, for the last several years, pursued multiple strategies intended to disrupt Qualcomm's business and impede its ability to compete, including, but not limited to, by: pursuing a meritless litigation in which Arm sought to disrupt innovation of, and ensure destruction of, cutting-edge, high-performance CPUs developed by Qualcomm engineers; interfering with Qualcomm's customer relationships through various means, including by sending a meritless letter threatening to terminate Qualcomm's Architecture License Agreement ("ALA") and leaking that letter to the press; improperly withholding technology used to design and innovate Qualcomm's products, to which Qualcomm was entitled under its ALA; and failing to provide contractually compliant licensing offers for CPUs, to which Qualcomm was entitled under its Technology License Agreement ("TLA").  Arm's actions gave rise to Qualcomm's claims in this case, including claims for breach of the ALA, breach of the TLA, and various tort claims.

It is clear at this point that certain of these claims—and Arm's defenses—present no genuine dispute of material fact and should be resolved in Qualcomm's favor.  *First*, Arm attempts to defend against multiple of Qualcomm's claims on various grounds raised in its prior litigation (the "Arm Action"), including that Qualcomm's custom CPUs were not licensed.  This Court has squarely rejected that and related arguments and has entered a final judgment in Qualcomm's favor, so those arguments are precluded.  *Second*, there is no genuine dispute that Arm breached Qualcomm's TLA, which requires ███████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████. Evidence establishes that Arm ███████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████. *Finally*, Arm's unclean hands defense is improper as a matter of law because, among other things, the conduct Arm alleges forms the basis of the defense does not relate to any transaction at issue in this case, nor was Arm prejudiced by it.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Qualcomm asserts claims against Arm for breach of the ALA, breach of the TLA, breach of the implied covenant of good faith and fair dealing inherent in both of those contracts, violation of the California Unfair Competition Law, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage.  Arm denies liability.  Discovery closed, though disputes remain pending before the Special Master whom the Court appointed.  D.I. 336.  A five-day jury trial is set to begin on March 9, 2026.  D.I. 44.

## III.    SUMMARY OF ARGUMENT

1.    Summary judgment should be granted in Qualcomm's favor on Arm's defenses to Qualcomm's claim for breach of the ALA based on arguments that Qualcomm (a) used unlicensed Nuvia technology from the Nuvia acquisition and (b) induced Nuvia to breach the Nuvia ALA.  The Court entered final judgment in *Arm Ltd.* v. *Qualcomm Inc. et al.* in favor of Qualcomm on these issues.  Arm is collaterally estopped from relitigating those issues here.

2.    Summary judgment should be granted in Qualcomm's favor on its claim that Arm breached ████████ of the TLA.  ████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████. There is no genuine dispute of material fact that Arm ██████████████████████████████████████████

███████████████████████████████████████████████████ Each failure is

an independent breach of ███████████ .

    3.    Summary judgment should be granted in Qualcomm's favor on its claim that Arm

breached ███████████ of the TLA, which ██████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████ .  There is no genuine dispute of material fact that Arm's

██████████████████ for ███████████████████████████████████████████████████

███████████████████████████████████████████████████ .

    4.    Summary judgment should be granted in Qualcomm's favor on Arm's unclean

hands defense.  Arm relies on conduct not tied to this case and has not shown prejudice.

## IV.    STATEMENT OF FACTS

Arm has developed and licenses an instruction-set architecture—instructions that allow

hardware to interface with Arm-compliant software. Ex. 46 ¶¶ 1, 11, 15-16.[1] Arm has historically

offered two types of licenses for access to its architecture: ALAs and TLAs.  An ALA grants the

licensee the right to commercialize products with a custom CPU designed by the licensee.  *Id.*

¶¶ 17-18.  A TLA, by contrast, grants a license to use Arm-designed CPUs or other Arm-designed

IP in a System-on-a-Chip.  *Id.* ¶ 17.  Qualcomm has both an ALA and a TLA.  Ex. 1; Ex. 2.

Qualcomm has been an Arm licensee since ████ (Ex. 2) and the parties enjoyed a mutually

beneficial relationship for years.  Qualcomm is one of Arm's largest customers, making up 10%

of Arm's revenue.  Ex. 3 at 29; Ex. 4 at 28.

In August 2022, Arm sued Qualcomm and Nuvia, a startup Qualcomm acquired in 2021.

---

[1] Docket entries from *Arm Ltd.* v. *Qualcomm Inc. et al.*, No. 22-1146-MN (D. Del) cited as "Arm Action, D.I. [x]."

Ex. 46 ¶¶ 27-30; Plaintiffs' Statement of Undisputed Material Facts ("SUMF") ¶ 1.  Arm alleged Qualcomm had to destroy all products incorporating technology started at Nuvia.  *Id.* ¶¶ 62-64, 68, Prayer for Relief.  Also in the fall of 2022, Arm began withholding technology Qualcomm licensed under the ALA, which is used to verify its custom CPUs ("Verification Technology"). Ex. 5 (Weidmann) at 207:11-211:7; Ex. 6 (Trivedi) at 31:6-33:14, 111:2-6, 113:2-11; Ex. 1 at § 5; SUMF ¶ 6.  Arm claims it was entitled to withhold Verification Technology because Qualcomm would use it with Qualcomm's allegedly "unlicensed" "Nuvia-based" custom CPUs.  D.I. 234 at 39.  Qualcomm notified Arm in November and December 2022 that failing to deliver this Verification Technology ██████████████████, but Arm continued to withhold it.  Ex. 7; SUMF ¶ 7.

On December 20, 2024, the Delaware jury in the Arm Action found that Qualcomm's custom CPUs were, in fact, licensed under the Qualcomm ALA.  Ex. 41; SUMF ¶ 3.  The next month—January 2025—Arm began delivering the Verification Technology it had withheld for the previous two and a half years.  Ex. 8 (Agarwal) at 96:25-98:25; Ex. 5 (Weidmann) at 207:11-211:7; Ex. 9; SUMF ¶ 7.  Arm sought to overturn this verdict and to prevail on its claim that Nuvia breached Nuvia's ALA in post-trial briefing.  The Court denied Arm's motion for judgment as a matter of law or a new trial and granted Nuvia's motion for judgment as a matter of law as to Arm's claim that Nuvia breached the Nuvia ALA (Ex. 40), entering final judgment on September 30, 2025 (Ex. 45).  SUMF ¶ 5.

Following the Nuvia acquisition, Arm engaged in a series of additional actions Qualcomm alleges were designed to impede Qualcomm's business, including, but not limited to: sending Qualcomm customers letters about the Arm Action that Arm's CEO concedes were "misleading" (*see, e.g.*, Ex. 10; Ex. 11 (Haas) at 16:11-18:13); sending Qualcomm a letter on October 22, 2024

threatening to terminate Qualcomm's ALA following the Arm Action trial (Ex. 12); and leaking that letter to Bloomberg News (Ex. 13; Ex. 14 at 21; Ex. 15 (Collins) at 81:4-16; Ex. 16 (Kranhold) at 87:16-22).

Arm also refused to fulfill its obligations under ███████ of the Qualcomm TLA—███████████████████████████. That provision requires ████████████████ ████████████████████████████. Ex. 2 at █████; SUMF ¶ 12. ████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████ ██████████████████████████ Ex. 2 at ██████; SUMF ¶ 12.[3] Then, ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ █████████████████████ Ex. 2 at ██████; SUMF ¶ 12. █████ ████████████████████████████████████████ ████████████████████████████████████████

---

[2] ████████████████████████████████████████. Ex. 2; Ex. 1. ████████ *See* D.I. 233 at 15 (Arm adopting same convention in motion to dismiss).
[3] ████████████████████████████████ Ex. 2 at ██████.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

Ex. 2 at ████; SUMF ¶ 13.

Notwithstanding its obligations under ████████████████████████

██████████████████████████. As relevant to this motion in ████████████████

████████████████ Cortex-A720 (codenamed ██████") and Cortex-A520 (codenamed

██████████████████████████████████████████████████

███████████ Ex. 17; Ex. 18 (Varma) at 127:11-128:1; *see also* Ex. 19 at -202; SUMF ¶ 15.

Qualcomm expressly confirmed with Arm that ████████████████████████████

██████████████████████████ *See* Ex. 19 at -199; SUMF ¶ 15.  In ████████████

████████████████████████ Cortex-M55 (codenamed ████████████████████

██████████████████████████████████████████████████

████████████████████████████ Ex. 20 at -462; Ex. 21 (Cochron)

at 118:5-119:12; SUMF ¶ 16.

Having not received an offer from Arm for any of the ████████████████ cores by

████████████████, Qualcomm ████████████████████████████████████

████████ ██████████████████. Ex. 22; SUMF ¶ 17.  On October 24, 2024, Arm provided an

offer: ██████████████████████████ ████ ████████████████████████

██████████████████████████████████ ██████ ██████████████████████

████████████████████. Ex. 23; Ex. 24; Ex. 25 at -055; Ex. 26 at ¶¶ 51-54, Fig. 7; SUMF ¶

18.  The ████████████████████████████████████████████ ████████████

████████. Ex. 24; SUMF ¶ 19.  Qualcomm did not accept the offer, determining that the

increased fees and royalty rates Arm proposed made using the cores commercially unfeasible. *See*

*generally* Ex. 21 (Cochron) at 109:14-110:13, 134:9-135:11.

The record is clear that Arm failed to ████████████████████████████████████.
Arm did not ██████████████████████████████████████████████████████████████████
███████ ███████████████████████████████████████████. Ex. 27
(Youssef) at 64:9-22; Ex. 28 (Shivashankar) at 67:12-67:20, 85:20-86:6, 87:25-88:7; Ex. 29
(Bhatnagar) at 42:24-43:19 (██████████████████████████). Karthik Shivashankar and
Akshay Bhatnagar—the two Arm employees who ██████████████████████████████████
██████—were asked at deposition ██████████████████████████████████████████████
████████████████████████████████████████████. Ex. 28 (Shivashankar)
at 90:7-16; Ex. 29 (Bhatnagar) at 37:9-38:5. Arm's Rule 30(b)(6) witnesses ███████ ███████
Ex. 27 (Youssef) at 64:9-22; Ex. 30 (Fonseca) at 23:18-24. Mr. Bhatnagar testified ████████
█████████████████████████████████████████████████████████████████████████████
█████████████████████ Ex. 29 (Bhatnagar) at 37:18-38:5, 42:2-9.

Arm produced no documents showing that ██████████████████████████████████████.
*See* Ex. 31. While Arm claims ██████████████████████ is set forth in an Excel spreadsheet,
it refused to produce that spreadsheet, even in redacted form, on the basis that unidentified parts
of the spreadsheet are privileged and that certain information in the spreadsheet is the subject of a
pending motion for a protective order filed by ████████. *Id.*

Even without these documents, discovery established that, at a minimum, ████████ ***cannot***
be ██████████████████████. Arm produced █████████████████████████████████████
█████████████████████████████████████████████████████████████████████████████
███████████████. Ex. 32 at Fig. 8; Ex. 33; SUMF ¶¶ 23-24. There may be others, as Arm is
still producing third-party agreements. Prior to the close of fact discovery, Arm produced only

████ third-party agreements in response to Qualcomm's document requests. *See* Ex. 34. After representing to Qualcomm and the Special Master that its production was complete (Ex. 35 at 60:16-22)—and well after the close of fact discovery—Arm identified at least ██ additional third parties with licenses to ████████████████ and has produced ██ of those agreements as of this filing.[4] Ex. 34.

Not surprisingly, given Arm's failure ██████████████████████████

████████████████████████████████████████████████████

████████████ ***None*** of the ██████ royalty rates for ████████████████

████████████████: 

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

*See* Ex. 37 at -847; Ex. 24 (████████████████████████); SUMF ¶ 21.

Arm contends it ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Ex. 38 at 60-61; Ex. 28 (Shivashankar)

---

[4] This late production of nearly ████████████████ third parties' agreements as during fact discovery came only after Qualcomm identified potential other licensees from public information and raised the deficiency with Arm. Ex. 36. ████ of these late-identified agreements are among the ████ subject to currently pending motions for protective orders. Even for the third parties whose agreements have been produced in part, Arm has omitted annexes with pricing information and other relevant contract exhibits, which it refuses to produce absent an order. Ex. 34.

at 89:25-90:14, 97:12-98:11; SUMF ¶ 20.  But the TLA is clear— ███████████████████

████████████████████████████████████ .

## V.    LEGAL STANDARD

Summary judgment is proper on any part of a claim or defense if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law," when viewing the evidence "in the light most favorable to the non-moving party."  *Rivera* v. *Redfern*, 98 F.4th 419, 422 (3d Cir. 2024) (cleaned up); Fed. R. Civ. P. 56(a).  The non-moving party's reliance on "[b]are assertions" or "conclusory allegations" does not suffice to defeat summary judgment.  *See, e.g.*, *Jutrowski* v. *Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018).

## VI.    ARGUMENT

### A.    Arm Is Collaterally Estopped From Asserting Defenses Based On Issues Resolved In The Arm Action.

Qualcomm should be granted summary judgment on all of Arm's defenses that rely on the premise that Arm's wrongful conduct is excused because Qualcomm was seeking deliverables for allegedly unlicensed "Nuvia-based" designs or because of Qualcomm's alleged inducement of Nuvia to breach the Nuvia ALA.  The Arm Action has been resolved in Qualcomm's favor.  Because final judgment has been entered, Arm is collaterally estopped from relitigating it here.

Arm contends that "Arm has no obligation to provide, and Qualcomm has no right to seek, verification or support for unlicensed technology developed under the now-terminated Nuvia ALA."  D.I. 234 at 39.  Arm also argues that it has "no obligations under the Qualcomm ALA" with respect to "the Phoenix core or other designs developed under the Nuvia ALA based on the technology delivered and licenses granted by Arm to Nuvia under the Nuvia ALA."  *Id.* at 39-40.  Arm asserts an unclean hands defense on the grounds Qualcomm's claims are barred based on Qualcomm "induc[ing] Nuvia to materially breach the Nuvia ALA by acquiring Nuvia without

Arm's consent to the assignment of the Nuvia ALA." *Id.* at 43.  And Arm states that its verification obligations do not apply to "unlicensed technology," (purportedly Nuvia technology developed "under the now-terminated Nuvia ALA").  *Id.*[5]

Collateral estoppel bars Arm's defenses.  "Collateral estoppel prohibits a party from relitigating a factual issue that was adjudicated previously."  *M.G. Bancorporation, Inc.* v. *Le Beau*, 737 A.2d 513, 520 (Del. 1999); Restatement (Second) of Judgments § 27 (1982).[6]  "Delaware law allows collateral estoppel to preclude litigation of an issue in a subsequent suit" when three requirements are met:  (1) "the issue to be concluded must be the same as that involved in the prior action;" (2) "the issue must have been actually raised and fully litigated in the prior action;" and (3) "the issue must have been necessary to the outcome of a valid prior judgment."  *Neoplan USA Corp.* v. *Taylor*, 604 F. Supp. 1540, 1546 (D. Del. 1985) (citations omitted).  Courts also look to see "whether the party being precluded had a 'full and fair opportunity' to litigate the contested issue in the previous action."  *Biogen Int'l*, 487 F. Supp. 3d at 258.  When there "are no disputes of fact associated with [the] invocation of collateral estoppel . . . summary judgment [is] an appropriate vehicle for deciding the issue."  *Hawk Inv. Holdings Ltd.* v. *Stream TV Networks, Inc.*, 2022 WL 17258460, at *14 (Del. Ch. Nov. 29, 2022).  All of the elements of collateral estoppel have been met with respect to the issues regarding whether Qualcomm made use of unlicensed Nuvia technology and whether Nuvia breached the Nuvia ALA.

---

[5] Arm repeats these defenses in its responses to Qualcomm's interrogatories.  *See* Ex. 14 at 9-10; Ex. 38 at at 45 (incorporating Arm's response to Interrogatory No. 1).

[6] For preclusion issues in diversity cases, federal common law looks to the law of the state in which the federal court sits.  *Semtek Int'l Inc.* v. *Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).  In any event, the requirements for issue preclusion under federal and Delaware law are largely the same.  *See, e.g.*, *Biogen Int'l GmbH* v. *Amneal Pharms. LLC*, 487 F. Supp. 3d 254, 258 (D. Del. 2020) (articulating similar test).

**Same Issue To Be Concluded.**  "Identity of the issue is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules."  *Biogen Int'l GmbH*, 487 F. Supp. 3d at 263 (citation omitted).  Qualcomm's counterclaim in the Arm Action addressed the identical issue that Arm asserts in its defenses here—whether Qualcomm's CPUs were licensed, i.e., whether its ALA covered Qualcomm CPUs that include designs acquired in the Nuvia acquisition.  *Compare* D.I. 234 at 39, 43 *with* Ex. 41 at 1.  Likewise, Arm's claims in the Arm Action also directly addressed the issue of whether Nuvia had breached Section 15.1 of the Nuvia ALA.  Ex. 46 at 16-18.  Arm's interrogatory responses effectively concede that these issues are identical, stating that the defenses are supported by "the reasons explained in" its JMOL briefs—reasons that have since been rejected by this Court.  *E.g.* Ex. 14 at 9-10 (supporting Arm's defenses by reference to Arm Action motions).

**Actually Litigated.**  The Arm Action alleged breaches of Section 15.1(a) of Nuvia's ALA by both Qualcomm and Nuvia.  Ex. 46.  Qualcomm counterclaimed, seeking in part a declaratory judgment that neither Qualcomm nor Nuvia breached the Nuvia ALA and TLA and that "[a]fter Qualcomm's acquisition of NUVIA, Qualcomm's architected cores (including all further developments, iterations, or instantiations of the technology acquired from NUVIA), Server SoC, and Compute SoC, are fully licensed under Qualcomm's ALA and TLA for the full terms of those licenses."  Ex. 42 at 83-84.

At trial in December 2024, a Delaware jury found "Qualcomm CPUs that include designs acquired in the Nuvia acquisitions are licensed under the Qualcomm ALA" and Qualcomm had not "breached Section 15.1(a) of the Nuvia ALA."  Ex. 41 at 1; SUMF ¶ 3.  The jury hung as to whether Nuvia breached Section 15.1(a) of the Nuvia ALA.  Ex. 41 at 1.  Post-trial, Arm moved

on all of the questions that were before the jury, arguing in part that Qualcomm's license "is limited to CPU cores developed (1) under the licenses granted in that ALA, (2) by or for Qualcomm, and (3) based on Arm Technology that Arm delivered to Qualcomm." Ex. 43 at 1; SUMF ¶ 4. In the alternative, Arm sought "a new trial on all issues." *Id.* Nuvia sought judgment "on Arm's claim against Nuvia for breach of Section 15.1(a) of the Nuvia ALA." Ex. 44 at 1. In September 2025, the Court ruled, upholding the jury verdict that Qualcomm did not breach the Nuvia ALA and that Qualcomm's products are licensed, and finding Nuvia did not breach the Nuvia ALA. The Court entered final judgment for Qualcomm.[7] Ex. 45; SUMF ¶ 5.

**Necessity.** The issues raised in Arm's defenses are issues the parties "actually deem[ed] important, and not [] incidental matters." *Jean Alexander Cosmetics, Inc.* v. *L'Oreal USA, Inc.*, 458 F.3d 244, 250 (3d Cir. 2006) (quotation omitted); *Neoplan*, 604 F. Supp. at 1547. Resolution of whether Qualcomm's ALA covered its custom CPUs designs was not only necessary to the decision, it was the entire basis for Qualcomm's counterclaim. *E.g.*, Ex. 42 at 61. And Arm's claim that "Nuvia breached Section 15.1(a) of the Nuvia ALA" (Ex. 41) was central to that case.

**Fully Represented.** Arm was fully represented in the prior action by the same counsel as in the present case, had a full and fair opportunity to litigate the issue, and did so vigorously across exhaustive discovery on the issues, a multi-day jury trial, post-trial briefs, and a post-trial hearing before the Court. Accordingly, Arm should be precluded from raising any defenses, or relying on

---

[7] Arm's notice of its intent to appeal the judgment in the Arm Action "does not diminish either the finality or binding effect of [the] trial court's holding." *Galderma Lab'ys Inc.* v. *Amneal Pharms, LLC*, 921 F. Supp. 2d 278, 281 (D. Del. 2012); Restatement (Second) of Judgments § 13 (1982) cmt. g. ("that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion."); *Thomas & Agnes Carvel Found.* v. *Carvel*, 2008 WL 4482703, at *5 n.51 (Del. Ch. Sept. 30, 2008) ("The Delaware courts regularly cite the Restatement (Second) of Judgments with approval.").

any arguments, that would attempt to relitigate the issue of Qualcomm's use of technology acquired in the Nuvia acquisition or Nuvia's alleged breach of the Nuvia ALA.

### B. Arm Breached █████████████████████████████████████████████████████████

Qualcomm should be granted summary judgment on its claims for breach of ████████ █████████████ of the TLA.[8] The parties agree that the Qualcomm TLA is a valid contract.[9] D.I. 234 ¶¶ 3, 214, 222.[10] And there is no dispute that Qualcomm performed its obligations under that contract. Arm never alleged Qualcomm breached the TLA (Ex. 46; D.I. 234), and the parties agree that Qualcomm paid Arm all royalties owed under the TLA (*see, e.g.*, Ex. 47 (Britven) at 291:8-20; Ex. 49 at Attachment 4.0).

There is no genuine dispute of material fact that Arm breached ████████: Arm ████ ████████████████████████████████████████████████████████████████████████ ████████████████████████. ████████████████████████████████████████████ ████████████████████████████████████████████████████. Ex. 2 at ████████.

There is also no genuine dispute of material fact that Arm breached ████████. Contrary to TLA ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████. Ex. 2 at

---

[8] Qualcomm will establish its claims for Arm's breach of ████████████████████ at trial.

[9] The elements of breach of contract claim are proof of valid contract, plaintiff's performance of all or substantially all of the significant things the contract required, defendant's failure to do something the contract required, harm to plaintiff, and that defendant's breach was a substantial factor in causing plaintiff's harm. *See Oasis W. Realty, LLC* v. *Goldman*, 250 P.3d 1115, 1121 (Cal. 2011); *see also* CACI No. 303.

[10] Arm's answer admits this. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); Fed. R. Civ. P. 56(c)(1).

███ . Finally, there cannot be a genuine dispute of material fact that Arm's breaches of ███

██ of the TLA have harmed Qualcomm, as it has █████████████████████

██████ .

      i.   ***Arm*** █████████████████████████

████████████

Arm breached ████████ of the TLA █████████████████

████████████ . █████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

Ex. 2 at ████ . Qualcomm █████████████████████

█████████████████████████████ . Ex. 17; Ex.

20 at -462. This contract provision accordingly ██████████████████

████████████████████████████

████████████████████████████

███████████████████████ . Ex. 2 at ████ .

The undisputable record evidence in this case establishes that Arm ██████████

████████████████████████████

████████████████████████████

---

11 ████████████████████████████

████████████████████████████

████████████ . Ex. 2 at ████ .

14

██████ .   Each of these failures is grounds for summary judgment on the breach element of

Qualcomm's claim for breach of ████████ of the TLA.

████████████████████ .  *First*, the undisputed evidence established in discovery

shows Arm ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████ Ex. 2 at ██████ .  Arm does not dispute this reading:  Will Abbey, Arm's

Chief Commercial Officer who is responsible for ensuring Arm's ████████████████ ,

(Ex. 48 (Abbey) at 114:2-115:8), agreed that ███████████████████████

████████████████████████████████████████████

████████████████████ (*id.* at120:2-10 ███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████ ); 121:5-10 ( ███████████████████████

████████████████ ).

There is no genuine dispute of material fact that Arm ████████████████████

████████████████████████████ .   Qualcomm deposed five

Arm witnesses (including corporate designees) who testified ████████████████████

████████████████████████████████████████████████████████ :

- Senior Manager for N. Am. Licensing Akshay Bhatnagar, ███████████ ████████████ (Ex. 27 (Youssef) at 62:9-63:1; Ex. 28 (Shivashankar) at 83:3-15);

- Senior Director for Commercial Strategy and Licensing Karthik Shivashankar, who ██████████████████████████████ (Ex. 27 (Youssef) at 62:9-63:1; Ex. 29 (Bhatnagar) at 71:9-72:7; Ex. 48 (Abbey) at 114:25-115:8, 116:9-19);

- Vice President and Deputy General Counsel Ehab Youssef, Arm's Rule 30(b)(6) witness on █████████████████████████████ and overseer of commercial licensing for Arm's legal department (Ex. 27 (Youssef) at 20:24-21:7);

- Director and Partner Manager Jeff Fonseca, Arm's 30(b)(6) witness on Qualcomm's 2024 requests for ████████████████ (Ex. 30 (Fonseca) at 17:4-23, 18:25-19:3); and

- Executive Vice President and Chief Commercial Officer Will Abbey, responsible for ████████████████████████ (Ex. 48 (Abbey) at 72:3-7, 114:2-115:8).

These witnesses were asked ████████████████████████████

████████. Despite Arm ██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████. *See*

Ex. 28 (Shivashankar) at 90:7-16; Ex. 29 (Bhatnagar) at 37:9-38:5; Ex. 30 (Fonseca) at 23:13-24:22; Ex. 27 (Youssef) at 71:8-72:9.  Mr. Bhatnagar, ██████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ Ex. 29 (Bhatnagar) at 35:20-37:20, 42:2-6; Ex. 28 (Shivashankar) at 83:3-15 (describing Bhatnagar's role); Ex. 27 (Youssef) at 61:25-62:24 (same).  He testified ████████████████████████████████████

████████████████████████ Ex. 29 (Bhatnagar) at, *e.g.*, 44:1-16, 72:2-7, 82:10-25.

Though other Arm witnesses suggested █████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████. *See* Ex. 28 (Shivashankar) at 90:9-

16; Ex. 30 (Fonseca) at 23:3-24 (Arm's 30(b)(6) witness ████████████████████████████

█████████████████████████); Ex. 27 (Youssef) at 71:8-72:9.[12]

     Arm's damages expert Thomas Britven—who conducted a group interview of Mr. Bhatnagar, Mr. Shivashankar, and Mr. Youssef, and separately interviewed Mr. Fonseca—opines that Arm ████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████ Ex. 49 ¶¶ 78, 80; Ex. 47 (Britven) at 106:6-108:3 █████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ The ████████ are not listed in the Britven Report's footnotes or elsewhere.  Ex. 49.).

     Arm's efforts ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

─────────────────────

[12] Mr. Fonseca—a 30(b)(6) witness for Arm having spoken with Mr. Shivashankar the day prior—testified ███████████████████████████████████████████████████████████ Ex. 30 (Fonseca) at 22:8-24:22.  He was not aware whether ███████████████████████████ *Id.* ███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ Mr. Abbey could not recall ████████████████████████████████████████████████████████████████ Ex. 48 (Abbey) at 114:2-24, 118:17-25.

██████████████████████████████████████████████████

█████████████████████████████████. Ex. 2 at ████. Mr. Shivashankar, ███████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████ Ex. 28 (Shivashankar) at

67:12-20, 85:20-86:6, 87:25-88:7.[13]  Mr. Bhatnagar confirmed ███████████████

██████████████████████████████████ Ex. 29 (Bhatnagar) at 42:24-43:25.[14]  At

a minimum, based on the licenses Arm produced, that means ██████████████████

██████████████████████████████████████████████████

█████████████████████████████████████.[15]  SUMF ¶¶ 23-24.

Arm produced *no documents* supporting the notion that it █████████████████

██████████████████████████████████████████████████

████████  There are no produced communications conducting or circulating any analysis; there

are no chat messages that discuss, reference, document, or incorporate the analysis.  There is no

list of ████████████████████████████████████████████████.

And Arm's production itself suggests Arm ████████████████████████████████

██████████████████:  before the close of fact discovery, Arm produced only █ agreements,

Arm represented this production was complete, then after the close of fact discovery, identified ██

---

[13]  Arm's 30(b)(6) witness, Mr. Fonseca, ███████████████████████████████
█████████████████████.  Ex. 30 (Fonseca) at 55:9-16.

[14]  Mr. Britven testified █████████████████████████████████████████
██████████████  Ex. 47 (Britven) at 170:15-171:19.

[15]  These third parties are ██████████████████████████████████████████
█████████████████████████████████████████████████.  Ex. 32 at
Fig. 2; Ex. 33 at -990; Ex. 50 at -770; Ex. 51 at -383; Ex. 52 at -45; Ex. 53; Ex. 54 at -557; Ex. 55
at -606; Ex. 56 at -694; Ex. 57 at -311.

additional agreements.  Arm ███████████████████████████████ and presumably

would have produced them during discovery, ███████████████████████████.

     Mr. Bhatnagar identified █████████████████████████████████████████

████████████████████████████████████████████████████████████

██████ (Ex. 29 (Bhatnagar) at 44:17-45:24)—but Arm refused to produce it, even with

redactions for any third-party data subject to a pending motion for a protective order.[16]  Ex. 59;

Ex. 60.[17]  Arm's refusal to produce the one document that purportedly ██████████████

████████████████████████████████████████████████████████████

██████████████.  Arm "cannot rely on unproduced files to defeat Plaintiff[s'] motion for

summary judgment and, at the same time, refuse to produce the documents in question." *St. Louis*

*Condominium Ass'n, Inc.* v. *Rockhill Ins. Co.*, 2019 WL 2013136, at *4 (S.D. Fla. Mar. 7, 2019);

*see also Brigham & Women's Hosp. Inc.* v. *Teva Pharms. USA, Inc.*, 707 F. Supp. 2d 463, 471 (D.

Del. 2010) (privilege may not be used as a sword and a shield).

     ████████████████████████████████████.  As another independent basis

for Arm's breach, the record confirms Arm ████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████.  Ex. 2 at

████████.  Arm's interrogatory response, absent support, ██████████████████████

██████████████████████████████████.  Ex. 38 at 60-61.  But Arm ████████████

████████████████████████████████████.  SUMF ¶ 24.

---

[16]  Arm also suggested that █████████████████████████████████████████████

████████████████████████████.  Ex. 58 at 2; Ex. 35 at 219:4-221:3.

[17]  Qualcomm has opposed all pending third-party motions for protective orders to prevent production of their license agreements and has moved to compel Arm's production of documents relating to the October 2024 offer.  *See* D.I. 359.  Qualcomm's motion to compel is pending.

Specifically, Arm's agreements ███████████████████████████████████████

███████. Ex. 37 at -847; SUMF ¶ 21.  But Arm ██████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████. Ex. 32 at Fig. 8;

Ex. 33 at -990; SUMF ¶ 24.[18]  Arm's "bare assertions" and "conclusory allegations" that ████████

███████████████████ do not survive summary judgment in the face of contrary evidence.

*Jutrowski*, 940 F.3d at 288.  Had Arm ██████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████.

To the extent Arm contends ████████████████████████████████████████

██████████████████████—a theory disclosed for the first (and only) time in the September

5 report of its expert, Britven—that cannot defeat summary judgment.[19]  Mr. Britven's report

asserts ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████ Ex. 49 ¶ 78.  This theory is contrary to the TLA's

██████████████████████████████████.

The TLA requires Arm ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 2 at ██████████.

---

[18] ████████████████████████████████████████████████████████████████

████████████████ *See* Ex. 2 at ████████████████

[19] Qualcomm has moved to exclude this opinion of Mr. Britven's under the principles announced in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), because it is unreliable.  *See* Plaintiffs' Opening Br. in Support of Their Motion to Exclude Certain of Arm's Expert Opinions & Testimony at pp. 16-20.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████. Reading ████████ so that "each clause help[s] to interpret the other"—as required under California law (Cal. Civ. Code § 1641)—confirms this understanding. The very next clause provides that, █████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████.

Ex. 2 ███████████. Arm's apparent position that █████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████.

Courts routinely reject contract interpretations that lead to absurd results. *See, e.g.*, *Eucasia Schs. Worldwide, Inc.* v. *DW August Co.*, 159 Cal. Rptr. 3d 621, 625 (Ct. App. 2013); *Cal. Nat'l Bank* v. *Woodbridge Plaza, LLC*, 78 Cal. Rptr. 3d 561, 566 (Ct. App. 2008).

Moreover, as Arm's expert Mr. Britven acknowledged, ████████████████████ ████████████████████████████████████. Ex. 47 (Britven) at 194:4-195:8. ████████ █████████████████████████████████████. *Id.*; Ex. 49 ¶ 121. Arm nevertheless █████████████████████████████ absent any justification for its decision.

       *ii.*   *Arm's* ███████████████████████████████████████████████████████

Arm also breached ███████████ of the TLA. There is no genuine dispute that ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████.

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████ Ex. 2 at ████. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████ *Id.*

Arm's ██████████████ to Qualcomm for ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████. The entirety of ████████████████████

████████████████████████████████. Ex. 2 at ████ Arm

accordingly does not deny that ████████████████████████████████ Ex.

38 at 62-63. Nor is there any dispute that Arm ██████████████████████

████████████████████████████████████████████████████████

████████████████████. *Id.* Nevertheless, Arm's ████████████████ for ██████████

██████ ██████████████████████████████████████████████

██████████████████████████████ Ex. 24 at -948; SUMF ¶ 19. The terms of this

offer thus ████████████████████████████████████████.

### iii.    *Qualcomm Has Been Harmed By Arm's Breaches of TLA* ██████████.

There is ample evidence in the record that Arm's conduct has disrupted Qualcomm's

business plans and caused it to expend time and effort to address that disruption. *See, e.g.*, Ex. 21

(Cochron) at 118:5-119:12 (██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████ ); 116:4-12 (█████████████████████

████████████████████████████████████████████████████

███████████████████████████████ ); Ex. 61. Though Arm acknowledges the testimony of Qualcomm's witnesses, Qualcomm understands that Arm seeks to create a factual dispute as to this evidence and accordingly does not depend on it for purposes of this motion. *See* Ex. 38 at 64.

It is, however, undisputable that the TLA provides that the ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████ Ex. 2 at █████████[20] Providing Qualcomm establishes breach, this ███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████. Ex. 49 at Attachment 4.0; Ex. 47 (Britven) at 291:15-25; SUMF ¶ 26. Qualcomm has been harmed by Arm's ████████████████ that Arm is not owed because of its breaches. Qualcomm should be ███████████████ ████████████████████ to Arm until ████████████.

### C. Summary Judgement Should Be Granted On Arm's Unclean Hands Defense.

Arm's unclean hands defense fails as a matter of law. The unclean hands doctrine bars relief where a plaintiff "has acted unconscionably, in bad faith, or inequitably in the matter in

---

[20] ████████████████████████████████████████████████████

████████████████. Ex. 2 at ██████.

which the plaintiff seeks relief." *Salas* v. *Sierra Chem. Co.*, 327 P.3d 797, 812 (Cal. 2014). But "[n]ot every wrongful act constitutes unclean hands." *Jade Fashion & Co.* v. *Harkham Indus., Inc.*, 177 Cal. Rptr. 3d 184, 200 (Ct. App. 2014) (quotation omitted). Conduct—even if inequitable—does not support unclean hands unless it "relate[s] directly to the transaction concerning which the complaint is made, i.e. it must pertain to the very subject matter involved and affect the equitable relations between the litigants." *Salas*, 327 P.3d at 812 (quotation omitted). The conduct must also "prejudicially affect the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief." *Jade*, 177 Cal. Rptr. 3d at 200 (quotation omitted).

***Inducing Nuvia's Breach***. Arm bases its defense in part on "Qualcomm induc[ing] Nuvia to materially breach the Nuvia ALA by acquiring Nuvia without Arm's consent to the assignment of the Nuvia ALA."[21]  D.I. 234 at 43. Arm raised Nuvia's alleged breach of the Nuvia ALA's assignment provision in the Arm Action, including in closing arguments at trial. Ex. 46 at 6, 8, 12; Ex. 62 at 900:22-901:2. Notably, Arm did not seek relief on any such breach. Regardless, Arm had the opportunity to litigate this claim to final judgment, chose not to, and thus is precluded from raising this argument again based on the principles of res judicata. *Lucky Brand Dungarees, Inc.* v. *Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020).

Moreover, Qualcomm's claims in this case have no relation to Nuvia or its ALA. Instead, Qualcomm asserts claims based on Arm's breach of the *Qualcomm* ALA and TLA, the implied covenant of good faith and fair dealing of both agreements, Arm's violation of the California unfair competition law, and Arm's tortious interference with Qualcomm's business opportunities. Any

---

[21]  For the reasons stated above, Arm's unclean hands defense with respect to the alleged use of unlicensed "Nuvia technology" or breach of the Nuvia ALA's termination provision should be precluded based on collateral estoppel.

alleged conduct by Qualcomm "inducing Nuvia" to breach the Nuvia ALA does not "relate directly to the transaction concerning which the complaint is made." *Salas,* 327 P.3d at 812.

**_March 2025 Bloomberg Article_**.  Arm also asserts that "on March 25, 2025, Bloomberg published a story concerning Qualcomm's nonpublic complaints of anticompetitive behavior at the European Commission, U.S. Federal Trade Commission, and Korea Fair Trade Commission."  D.I. 234 at 43-44; Ex. 38 at 30.  Any alleged leak of information to Bloomberg for a story concerning regulatory investigations into Arm does not relate to any transaction at issue in the Second Amended Complaint.  Qualcomm alleges Arm engaged in tortious interference and unfair competition by leaking information in Arm's October 2024 Letter in violation of the ███████████████ of the ALA during Qualcomm's annual Snapdragon Summit in an effort to harm Qualcomm's business relationships.  D.I. 137 ¶¶ 192, 199, 206; Ex. 39.  By contrast, Arm purports to assert an unclean hands defense based solely on speculation that Qualcomm leaked *unrelated* information about regulatory proceedings against Arm in other countries approximately five months later.  Such conduct plainly does not "relate directly" to the same "transaction" at issue in this case.  *Salas*, 327 P.3d at 812 (quotation omitted).  Moreover, unlike Arm's leak, which it concedes (Ex. 14 at 21), there is no evidence Qualcomm leaked information leading to the publication of the March 2025 Bloomberg Article.  Qualcomm's General Counsel testified Qualcomm did not provide information about the regulatory proceedings to Bloomberg.  Ex. 63 (Chaplin) at 191:23-199:5.  Qualcomm's CEO similarly testified he was unaware of Qualcomm sharing any information with Bloomberg.  Ex. 64 (Amon) at 201:1-202:2.

**_October 2024 Letter_**.  Arm asserts an unclean hands defense based on Qualcomm's "publish[ing] Arm's October 2024 letter just days after Arm did."  D.I. 234. at 43-44.  Arm appears to rely on Qualcomm's disclosure in its November 2024 and February 2025 SEC filings and the

December 2024 First Amended Complaint.  Ex. 38 at 24-25.  These came only *after* Arm's leak to Bloomberg.  Qualcomm's "disclosure" of already public information is not "unconscionabl[e], in bad faith, or inequitabl[e]" as required to support an unclean hands defense.  *Salas*, 327 P.3d at 812; *see also Bank of Am., N.A.* v. *Roberts*, 159 Cal. Rptr. 3d 345, 356 (Ct. App. 2013).

      ***No Prejudice***.  Moreover, Arm's unclean hands defense fails for another reason: Arm has not shown prejudice.  It is well established that the party seeking to establish unclean hands must show the misconduct "prejudicially affect[ed] the rights of the person against whom the relief is sought."  *Jade*, 177 Cal. Rptr. 3d at 200; Ex. 65 at 19 (Arm arguing unclean hands requires prejudice).  Arm's response to Qualcomm's Interrogatory No. 12, asking Arm to describe the "complete factual and legal bases" for its defenses, is devoid of any prejudice tied to unclean hands.  Ex. 39.  Arm's failure to present any evidence of prejudice for the conduct it relies on is an independent basis for the Court to rule in favor of Qualcomm on Arm's unclean hands defense.  *See Jade*, 177 Cal. Rptr. 3d at 200 (affirming denial of unclean hands defense for lack of prejudice).

## VII.    CONCLUSION

      For the foregoing reasons, Qualcomm's motion for partial summary judgment should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
Jenifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Catherine Nyarady
Anish Desai
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7700

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA  94105
(628) 432-5100

October 24, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 24, 2025, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                   *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                               *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                                 *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
Sydney D. Gaskins, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017
*Attorneys for Defendant*

Kyle W.K. Mooney, Esquire                                 *VIA ELECTRONIC MAIL*
Alexandra Corrinne Hottenrott, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
*Attorneys for Defendant*

Erik J. Olson, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Defendant*

Daniel P. Muino, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
*Attorneys for Defendant*

Brian M. Kramer, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, CA  92130
*Attorneys for Defendant*

William Frentzen, Esquire                                 *VIA ELECTRONIC MAIL*
Daralyn J. Durie, Esquire
Shaelyn Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                   *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                    *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                              *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*


*/s/ Jennifer Ying*

_____

Jennifer Ying (#5550)