IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation; and
QUALCOMM TECHNOLOGIES, INC.,
  a Delaware corporation,

            Plaintiffs,

      *v.*

ARM HOLDINGS PLC., f/k/a ARM LTD.,
  a U.K. corporation,

            Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 24-490 (MN)

███████████████████

REDACTED PUBLIC VERSION

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO ARM'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
Jenifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA  94105
(628) 432-5100

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
Ben Yenerall (#7132)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com
byenerall@morrisnichols.com

*Attorneys for Plaintiffs*

Catherine Nyarady
Anish Desai
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Original filing date: November 7, 2025
Redacted filing date: November 21, 2025

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF THE PROCEEDINGS ................................................. 1

II.    SUMMARY OF ARGUMENT ................................................. 1

III.    STATEMENT OF FACTS ................................................. 3

IV.    LEGAL STANDARD ................................................. 3

V.    ARGUMENT ................................................. 4

    A.    ██████ Of The ALA And TLA Are NOT UNEnforceable. ................................................. 4

        1.    The ██████ Remedy Is Not A Liquidated Damages Provision. ................................................. 5

        2.    Even If ██████ Is A Liquidated Damages Provision, It Is Not An Unenforceable Penalty. ................................................. 7

    B.    Arm's ██████████ Breached Sections ███ And ███ Of The Qualcomm TLA (COUNTS VII and viii) ................................................. 14

        1.    Under The TLA's Plain Language, Qualcomm's ██████ To License ███, ████████ Were ████████████ ................................................. 15

        2.    The Parties' Negotiation Of ████████ And Course Of Dealing Confirms That Qualcomm's ██████ Were ██████ ................................................. 16

        3.    Arm Breached Section ███ By ████████████████ ██████████ ................................................. 18

    C.    QUALCOMM'S IMPLIED COVENANT CLAIMS SHOULD PROCEED TO TRIAL (COUNT III). ................................................. 21

    D.    THE *NOERR-PENNINGTON* DOCTRINE PROVIDES ARM NO DEFENSE. ............ 25

    E.    QUALCOMM'S UCL CLAIM SHOULD PROCEED TO TRIAL (COUNT VI). ......... 29

        1.    There Is A Genuine Dispute of Material Fact As To Whether Arm Has Engaged In Unfair Or Unlawful Conduct Under The UCL. ................................................. 29

        2.    Qualcomm Lacks An Adequate Remedy At Law For Arm's Unfair And Unlawful Competition. ................................................. 36

    F.    There Is a Genuine Dispute of Material Fact as to Whether Arm's Conduct Caused Qualcomm Harm (COUNTS IV ANd v). ................................................. 39

VI.    CONCLUSION ................................................. 42

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*10x Genomics, Inc. v. Vizgen, Inc.*,
   654 F. Supp. 3d 310 (D. Del. 2023)..........................................................................25

*10x Genomics, Inc. v. Vizgen, Inc.*,
   681 F. Supp. 3d 252 (D. Del. 2023)..........................................................................25

*Al Owaidah v. Mazzei*,
   2020 WL 1041091 (C.D. Cal. Jan. 27, 2020); Cal. Civ. ....................................5, 7

*Alfa Consult SA v. TCI Int'l, Inc.*,
   2023 WL 6466388 (N.D. Cal. Oct. 3, 2023)............................................................42

*Allen Saltzman LLP v. Bank of America, N.A.* ,
   2024 WL 3582626 (C.D. Cal. July 29, 2024)..........................................................31

*Am. Life Ins. Co. v. Stewart*,
   300 U.S. 203 (1937)..................................................................................................37

*Arista Networks, Inc. v. Cisco Sys., Inc.*,
   2018 WL 11230167 (N.D. Cal. May 21, 2018)........................................................28

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
   472 U.S. 585 (1985)..................................................................................................35

*Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*,
   877 F.3d 136 (3d Cir. 2017)......................................................................................33

*Brown v. Goldstein*,
   246 Cal. Rptr. 3d 161 (Ct. App. 2019) ....................................................................14

*Candelore v. Tinder, Inc.*,
   228 Cal. Rptr. 3d 336 (Ct. App. 2018) ....................................................................36

*Capito v. San Jose Healthcare Sys., LP*,
   561 P.3d 380 (Cal. 2024) ..........................................................................................30

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tele. Co.*,
   973 P.2d 527 (Cal. 1999) ..............................................................................*passim*

*Chodos v. W. Publ'g Co.*,
   292 F.3d 992 (9th Cir. 2002) ................................................................................6, 7

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
   479 F.3d 1099 (9th Cir. 2007) ..................................................................................36

*DJO Global, Inc. v. Glader*,
  2016 WL 11622009 (S.D. Cal. Dec. 22, 2016) ..................................................................36

*Dollar Tree Stores Inc. v. Toyama Partners LLC*,
  875 F. Supp. 2d 1058 (N.D. Cal. 2012) ...........................................................................13

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
  111 F.4th 337 (4th Cir. 2024) ..........................................................................................36

*Dynamex Ops. W. v. Superior Ct.*,
  416 P.3d 1 (Cal. 2018) .....................................................................................................34

*Epic Commc'ns, Inc. v. Richwave Tech., Inc.*,
  188 Cal. Rptr. 3d 844 (Ct. App. 2015) ............................................................................17

*Epic Games, Inc. v. Apple, Inc.*,
  67 F.4th 946 (9th Cir. 2023) .....................................................................................*passim*

*Gerawan Farming, Inc. v. Rehrig Pac. Co.*,
  2013 WL 1934173 (E.D. Cal. May 9, 2013) ...............................................................31, 32

*Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*,
  525 F. Supp. 3d 1145 (S.D. Cal. 2021) .......................................................................26, 28

*Gormley v. Gonzalez*,
  300 Cal. Rptr. 3d 156 (Ct. App. 2022) ...........................................................................7, 8

*Greentree Fin. Grp., Inc. v. Execute Sports, Inc.*,
  78 Cal. Rptr. 3d 24 (Ct. App. 2008), *as modified* (May 28, 2008) .................................13

*Guz v. Bechtel Nat'l Inc.*,
  8 P.3d 1089 (Cal. 2000) ...................................................................................................24

*In re Qualcomm Litigation*,
  2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) ....................................................................31

*Jenni Rivera Enters., LLC v. Latin World Ent. Holdings, Inc.*,
  249 Cal. Rptr. 3d 122 (Ct. App. 2019) ............................................................................39

*Korea Supply Co. v. Lockheed Martin Corp.*,
  63 P.3d 937 (Cal. 2003) ...................................................................................................42

*Krechuniak v. Noorzoy*,
  217 Cal. Rptr. 740 (Ct. App. 2017)...............................................................................5, 13

*Laitram Mach., Inc. v. Carnitech A/S*,
  901 F. Supp. 1155 (E.D. La. 1995) ..................................................................................27

*Lamont v. New Jersey*,
637 F.3d 177 (3d Cir. 2011)............................................................................3, 19

*Lawrence v. La Jolla Beach & Tennis Club, Inc.*,
179 Cal. Rptr. 3d 758 (Ct. App. 2014) ...................................................................39

*Le Pape v. Lower Merion Sch. Dist.*,
103 F.4th 966 (3d Cir. 2024) ...................................................................3, 28, 29

*Licudine v. Cedars-Sinai Med. Ctr.*,
242 Cal. Rptr. 76 (Ct. App. 2019).........................................................................20

*Luxul Tech. Inc. v. Nectarlux, LLC*,
78 F. Supp. 3d 1156 (N.D. Cal. 2015) ...................................................................32

*LY Berditchev, Corp. v. Truss Cosmetics, Corp.*,
2023 WL 334539 (D.N.J. Jan. 20, 2023) ...............................................................28

*Metricolor LLC v. L'oréal S.A.*,
2020 WL 2802942 (C.D. Cal. July 7, 2020).........................................................34

*Microsoft Corp. v. Motorola, Inc.*,
795 F.3d 1024 (9th Cir. 2015) ....................................................................26, 29

*Microsoft Mobile Inc. v. Interdigital, Inc.*,
2016 WL 1464545 (D. Del. Apr. 13, 2016)...........................................................26

*ML Prods. Inc. v. Ninestar Tech. Co.*,
2023 WL 12171006 (C.D. Cal. Sept. 27, 2023) ...................................................34

*Moore v. Wells Fargo Bank, N.A.*,
251 Cal. Rptr. 3d 779 (Ct. App. 2019) ....................................................22, 24, 31

*Nat'l Rural Telecomm. Co-op v. DIRECTV, Inc.*,
319 F. Supp. 2d 1059 (C.D. Cal. 2003) .................................................................32

*Nationwide Biweekly Admin., Inc. v. Superior Ct.*,
462 P.3d 461 (Cal. 2020) ......................................................................................30

*Nuance Communications v. MModal LLC*,
2018 WL 6804488 (D. Del. Dec. 27, 2018), *report & recommendation adopted*, 2019 WL 181322 (D. Del. Jan. 11, 2019)..........................................28, 29

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,
334 Cal. Rptr. 3d 488 (Ct. App. 2025), *review denied* (Cal. Sept. 17, 2025).........................25

*Overhill Farms, Inc. v. Lopez*,
119 Cal. Rptr. 3d 127 (Ct. App. 2010) ..................................................................41

*Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*,
   214 F. Supp. 3d 808 (N.D. Cal. 2016) ...................................................................34

*Powertech Tech., Inc. v. Tessera, Inc.*,
   872 F. Supp. 2d 924 (N.D. Cal. 2012) ..................................................................29

*Price v. Apple, Inc.*,
   2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) ........................................................6, 7

*Ridgley v. Topa Thrift & Loan Ass'n*,
   953 P.2d 484 (Cal. 1998) ......................................................................................14

*Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*,
   2015 WL 12941890 (N.D. Cal. Apr. 7, 2015) .......................................................28

*Rocket Software, Inc. v. CollegeNET Inc.*,
   2024 WL 4920011 (D. Or. Sept. 30, 2024) ...........................................................31

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
   348 F.3d 1116 (9th Cir. 2003) ...............................................................................42

*Shroyer* v. *New Cingular Wireless Services, Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ...............................................................................36

*Smith v. Royal Mfg. Co.*,
   8 Cal. Rptr. 417 (Ct. App. 1960) ...........................................................................13

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .................................................................................37

*Spear Pharms., Inc. v. William Blair & Co., LLC*,
   610 F. Supp. 2d 278 (D. Del. 2009) ......................................................................29

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ..............................................................................................39

*Thimes Sols., Inc. v. TP Link USA Corp.*,
   2022 WL 1125628 (9th Cir. Apr. 15, 2022) ..........................................................28

*W. Sugar Coop. v. Archer-Daniels-Midland Co.*,
   2015 WL 12683192 (C.D. Cal. Aug. 21, 2015) .....................................................27

*Wisk Aero LLC v. Archer Aviation Inc.*,
   2021 WL 4932734 (N.D. Cal. Sept. 14, 2021) ......................................................32

*Wisk Aero LLC v. Archer Aviation Inc.*,
   2023 WL 3919469 (N.D. Cal. June 9, 2023) .....................................................41, 42

*Worldwide Travel, Inc. v. Travelmate US, Inc.*,
    2015 WL 1013704 (S.D. Cal. Mar. 9, 2015) ........................................................31

*Zeiger v. WellPet LLC*,
    526 F. Supp. 3d 652 (N.D. Cal. 2021) ................................................................37

**Statutes**

Cal. Bus. & Prof. Code § 17203 ............................................................................36

Cal. Civ. Code § 1671(b) ....................................................................................5, 8

Cal. Civ. Proc. Code § 1856(c) ..............................................................................18

**Rules**

Fed. R. Civ. P. 56(a) ..............................................................................................32

**Other Authorities**

Cal. Civ. Jury Instr. 430 ........................................................................................39

Cal. Civ. Jury Instr. 2202 ......................................................................................39

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs refer the Court to Section II of Plaintiffs' Opening Brief in Support of Their

Motion for Partial Summary Judgment (D.I. 442), incorporated by reference herein.

## II.    SUMMARY OF ARGUMENT

1.    Arm's efforts to invalidate the ███████████████ ████████

█████████████████████████████ of the Architecture

License Agreement ("ALA") and Technology License Agreement ("TLA") fail.  Arm assumes,

without analysis, that the ████████ remedy in each agreement is a liquidated damages provision.

It is not, because the ████████ remedy set forth in those provisions is not certain or readily

ascertainable.  But even if ██████ was properly analyzed as a liquidated damages provision,

Arm has not met its burden to show it is unenforceable or a penalty based on all circumstances at

the time of contracting.

2.    It is Qualcomm, not Arm, who is entitled to summary judgment on Qualcomm's

claims for breach of Sections ██████████ of the TLA.  In 2024, Qualcomm ██████████

████████████████████████. Arm then breached the TLA by ████████

██████████████████ ███████████████████████████

██████████████████████ Both the TLA's plain language

and the uncontradicted extrinsic evidence from the parties' negotiations and conduct make clear

that an ███████████████████████████████████

██████████████, including cores ███████████████████

██████████████ as Arm claims.  Arm's █████████████████

████████████ in breach of ████████████████████

████████████████████████████████████████████

███████████████████. Arm ignores the plain language of ███████████ when it argues that the provision does not apply and that Arm could satisfy ██████████ through ██████████████ █████████████████████. ██████████ prohibits Arm from █████████████████████ ████████████████████████████████████████████████████████ and Arm undisputedly ███████████████████████████████████████████.

3.      Arm's attempt to dispose of some of Qualcomm's claims for breach of the implied covenant of good faith and fair dealing inherent in the ALA and TLA ignores Arm's contractual obligations and material factual disputes.  Qualcomm points to substantial facts describing how Arm's conduct related to its leak of the October 22 "breach letter," communications with Qualcomm's customers, and ██████████████████████████████████ directly deprives Qualcomm of the benefits of express contractual provisions.  Arm's disagreements as to whether its conduct actually breached the implied covenant are issues for the jury.

4.      Arm is incorrect that its sending of the October 22 letter to Qualcomm, its unauthorized leak of that letter to Bloomberg, and misleading communications to Qualcomm's customers can be immunized by the *Noerr-Pennington* doctrine.  None of Arm's challenged conduct is protected because Arm was not petitioning any government actor for redress or doing anything incidental to that legitimate activity.

5.      Arm misstates the standard governing Qualcomm's Unfair Competition Law ("UCL") claim and ignores multiple disputes of material fact that preclude summary judgment. Arm asserts for the purposes of this argument that Qualcomm is only Arm's competitor, but there is ample evidence that Qualcomm is also a consumer of Arm's.  As such, Qualcomm can establish that Arm's conduct is unfair if the harm of Arm's challenged conduct to Qualcomm outweighs the utility of Arm's conduct (which it does).  Arm fails to even address this test or any of the disputed

evidence supporting Qualcomm's claim.  In any event, summary judgment is also not appropriate under the competitor test or for Qualcomm's claim of unlawful conduct, which raises the same material factual issues as its claim of unfair conduct.

6.    Finally, Arm improperly asks this Court to decide causation—a quintessential fact question—as a matter of law to dismiss Qualcomm's tortious interference claims.  But there are disputed material facts from which a jury could find that Arm's leak of the October 22 letter interfered with and harmed Qualcomm's customer relationships, including because ███ raised concerns about the letter, conditioned its alignment on deal terms on its review of issues raised by the letter, and made the term change that caused Qualcomm's harm immediately thereafter.

## III.    STATEMENT OF FACTS

Plaintiffs incorporate by reference Section III of their Motion for Partial Summary Judgment (D.I. 442) for factual background.  Additional facts that warrant denial of Arm's Motion for Partial Summary Judgment (D.I. 438) are set forth in the respective argument sections below, and in Qualcomm's concise counter statements of fact, filed concurrently herewith.

## IV.    LEGAL STANDARD

Summary judgment is proper if "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law," when viewing the evidence "in the light most favorable to the non-moving party." *Le Pape v. Lower Merion Sch. Dist.*, 103 F.4th 966, 981 (3d Cir. 2024).[1]  A "dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party."  *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011).

---

[1] With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability.  All emphasis is added unless otherwise indicated.

## V.    ARGUMENT

### A.  SECTIONS ██ OF THE ALA AND TLA ARE NOT UNENFORCEABLE.

Both the ALA and TLA include important █████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████  ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████  D.I. 428 Ex. 3 § ████████

Another ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████  *Id.* §§ ████.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████  D.I. 428 Ex. 2 § ██.  ████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████.  *Id.* ██,  *see also id.* ██;

Ex. 47 § ██.   The remedy for a breach ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████  D.I. 428 Ex. 2 ██.

████████████████████████████████████████████████████████████

4



. D.I. 428 Ex. 2 § █ ,

Ex. 3 § █ .  Arm argues that █████ in the ALA and TLA (together, ███████ are unenforceable liquidated damages provisions.  D.I. 438 at 8-12.  Arm's one-way interpretation of ██████ only favors Arm:  if Qualcomm is claiming damages higher than ████████ ██████ Arm can seek to enforce the provision; if Qualcomm claims damages in some amount lower than ████████ then it is an unenforceable penalty.

Where the facts are undisputed, including the contract language, the question of whether a liquidated damages clause is enforceable is a question of law for the court to decide.  *Krechuniak v. Noorzoy*, 217 Cal. Rptr. 740, 749-50 (Ct. App. 2017).  Arm's liquidated damages argument conflicts with both the contract and the undisputed facts.  *First*, a liquidated damages clause provides a formula for damages in an amount certain or readily ascertainable at the time of breach. ████████ is ***not*** a liquidated damages provision, given that ████████████ ██████ are not certain or readily ascertainable.  *Second*, even if it is a liquidated damages provision, it is enforceable and not a penalty because evidence from the time the contract was made, and the contract language, show it was the product of extensive negotiations between sophisticated parties to both provide a reasonable remedy for potential damages and limit that remedy to avoid large claims.  Arm's cases discuss no similar contract provisions, contracting parties, or contract negotiations.  At a minimum, Arm has failed to meet its burden on the issue of reasonableness—a classic fact question—given the many disputed issues of material fact.

### 1.   The ██████ Remedy Is Not A Liquidated Damages Provision.

To be unenforceable under Arm's theory, Arm must first show sufficient facts demonstrating that ██████ constitutes liquidated damages.  *Al Owaidah v. Mazzei*, 2020 WL 1041091, at *14 (C.D. Cal. Jan. 27, 2020); Cal. Civ. Code § 1671(b).  A liquidated damages

provision provides "an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement." *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002). To meet this standard, "a provision must either set the exact amount (i.e., a single number) or provide some formula by which the amount is *certain or readily ascertainable*" at the time of breach. *Price v. Apple, Inc.*, 2022 WL 1032472, at *3 (N.D. Cal. Apr. 6, 2022). Arm does not explain how ███████ provides such an amount or formula. *See* D.I. 438 at 8-12.

The language of the contract demonstrates that ███████ is ***not*** a liquidated damages provision. ███████ neither sets an exact amount of damages, nor sets forth a formula by which the amount of damages was "certain or readily ascertainable" at the time of breach. ███████

███████████████████████████████████

███████████████████████ D.I. 428 Ex. 2 § ██ , Ex. 3 § ██

███████████████████████████████████

███████████████. *Id.* ███████████████

███████████████████. *Id.* ███████████

███████████████████████████████████

███████████████ D.I. 428 Ex. 2 § ██ , Ex. 3 § ██ . These are factors that change, depending on ███████████████████████████████████

███████████████████. ██ CSOF ¶ 9.[2] If Qualcomm is ███████████

███████████████████████████████ [3]

Courts have rejected arguments that similar uncertain provisions constitute liquidated

_____

[2] Qualcomm's counter statements of fact are referred to herein as "CSOF."

[3] ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████

damages provisions. For example, in *Price*, a provision allowing Apple to terminate an Apple ID user for breach of the Apple Terms, which immediately caused the user to lose access to all apps he had purchased, was not a liquidated damages provision. 2022 WL 1032472, at *3. There, the plaintiff argued that the provision fixed damages at the amount "equal to the value of the apps and services the user purchased and can no longer access" after termination—in his case, $24,000. *Id*. The Court rejected that argument because "the exact amount necessarily varies from user to user: it depends on when the Apple ID account was terminated, what the user purchased through his Apple ID account, and what balance he had in his Apple ID account." *Id.*; *see also Chodos,* 292 F.3d at 1002 (royalties provision for "15% of the gross revenues provided for in the agreement" was not a liquidated debt because the "revenues to which that percentage figure is to be applied cannot be calculated with similar certainty"). Here, as in *Price* and *Chodos*, ████████ provides neither a fixed figure, nor a formula by which ████████████████████ can be calculated with certainty. The amount depends on many circumstances beyond anyone's control.

Accordingly, ████████ is not a liquidated damages provision, as a matter of law. At a minimum, because Arm has the burden and failed to even analyze whether, let alone establish that, ████████ is a liquidated damages provision, Arm's motion should be denied. *Al Owaidah*, 2020 WL 1041091, at *14; *Gormley v. Gonzalez*, 300 Cal. Rptr. 3d 156, 161-62 (Ct. App. 2022).

2. ***Even If*** ████████ ***Is A Liquidated Damages Provision, It Is Not An Unenforceable Penalty.***

Even if ████████ is a liquidated damages provision, Arm has failed to meet its burden to show it is unenforceable or a penalty based on all circumstances at the time of contracting. The evidence, in fact, shows that the provision was reasonable in those circumstances. At a minimum, there are multiple genuine disputes of material fact as to the provision's reasonableness—a classic issue of fact—that make summary judgment improper.

Section 1671(b) of the California Code, which governs liquidated damages, presumes that "a provision in a contract liquidating the damages for the breach of the contract" is valid between commercial counterparties. Cal. Civ. Code § 1671(b). The "party seeking to invalidate the provision" must "establish[] that the provision was unreasonable under the circumstances existing at the time the contract was made." *Id.* To determine whether a liquidated damages provision is reasonable, courts look to "[a]ll the circumstances existing *at the time of the making of the contract* [], including the relationship that the damages provided in the contract bear to the range of harm that reasonably could be anticipated at the time of the making of the contract." *Gormley*, 300 Cal. Rptr. 3d at 162. "Other relevant considerations" include "[1] the relative equality of the bargaining power of the parties, [2] whether the parties were represented by lawyers at the time the contract was made, [3] the anticipation of the parties that proof of actual damages would be costly or inconvenient, [4] the difficulty of proving causation and foreseeability, and [5] whether the liquidated damages provision is included in a form contract." *Id.*

Arm largely fails to address the "circumstances existing at the time" ███████ was negotiated, including by failing to identify evidence that the provision is an unreasonable penalty or that it bore no relationship to "the range of harm that reasonably could be anticipated at the time of the making of the contract." *Id.* The undisputed facts are that ███████ was ████████ ████████████████████████████████████████████████████████████ ██████████████████. (In reality, Arm had then, and has today, the exclusive power over its Instruction Set Architecture. D.I. 423 Ex. 17 at ¶¶ 11-12.). Further, those negotiations anticipated ██████████████████████████████████████  ███████████████ ██████████████████████████████

8

The ALA and TLA were negotiated by Qualcomm and Arm attorneys ████████ ████████████████████. Ex. 1 at 16:16-23:23 (2023 Sand); Ex. 93 at 52:12-20, 54:1-55:21 (Weiser). The fact that Arm had full control over its Architecture and all Arm implementation cores and other off-the-shelf Arm technology (D.I. 423 Ex. 17 at ¶¶ 11-12)[4] made Qualcomm uniquely vulnerable to Arm, because ████████████████████████████████ ████████████████████████████████████████████████ Ex. 93 at 78:23-79:4 (Weiser). Chips compatible with the Arm Architecture either use Arm-designed CPUs, which are licensed through a TLA, or custom-designed CPUs that are compliant with the Arm Architecture and whose commercialization is licensed through an ALA. *See* D.I. 234 ¶¶ 1-3.

When the parties negotiated ████████ (and still today), Arm had plenary power to refuse to provide technology Qualcomm needs to operate its business or, alternatively, to raise prices such that Qualcomm could not develop commercially reasonable chips for its customers. Arm could withhold licensing proposals (or provide proposals with non-viable terms) for technology Qualcomm requested to license under the TLA, including ████████████████ and other technology integral to Qualcomm's roadmap. Ex. 93 at 56:11-57:20, 78:23-79:4 (Weiser). As for the ALA, Arm also could withhold ████████████ used to design custom CPUs (for example, architectural specifications and related documentation) and refuse to provide verification technology. *Id.* at 56:11-57:6. In short, if Arm refused to abide by its licensing obligations under the ████████████ provisions of the TLA or the ALA (or both, as it has now done), it could prevent or impede Qualcomm from either buying ████████████████ or commercializing its own Arm-compatible custom CPUs (or both), thus putting Qualcomm's ability to develop and

---

[4] There remains no viable alternative to Arm's ISA for many applications. *See* D.I. 423 Ex. 17 ¶¶ 11, 33-35; Ex. 3 at 106:6-23 (Asghar); Ex. 9 at -058; Ex. 10 at -029.

sell chips to its customers at risk.  Ex. 3 at 88:10-89:25, 103:15-106:5 (Asghar); Ex. 93 at 56:11-57:20, 154:21-155:7 (Weiser); Ex. 5 at 103:22-104:22; 116:11-19 (Varma).[5]

At the time of contracting (and now), █████████████████████████████

███████████████████████████████████████ : ████████████████

████████████████████████████████████████████████████████████

████████████████  Damaging Qualcomm's ability to make Arm-compliant chips carries the

risk of decimating Qualcomm's multi-billion dollar CPU business.  Ex. 23 at 41, 44 (QC 2024 10-

K) (Qualcomm generated $32.8 billion from the sale of equipment and services, including $24.9

billion from handsets alone, the vast majority of which depend on Arm-compliant cores).

Qualcomm's 30(b)(6) witness on this topic ███████████████████████████

█████████████████████████ testifying ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ Ex. 93 at 153:20-154:7 (Weiser).  This was

particularly true for obligations under the ALA, given that Arm ████████████████

█████████████████████████████████ . *Id.* at 154:21-155:7.  Qualcomm was

explicitly concerned that ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ *Id.*

Against this backdrop,[6] Arm and Qualcomm ████████████████████████

█████████████████████████ ███████████ *See, e.g.*, Ex. 18 (████████ Qualcomm

---

[5] This is true even if Qualcomm successfully challenges Arm's withholding in litigation. Qualcomm's roadmap is time-sensitive and any delay in obtaining the technology needed for design—including delay because Qualcomm has to sue to get what it is entitled to under the contract—can cause significant harm.  *See, e.g.*, Ex. 5 at 139:20-140:3, 204:3-13 (Varma).

[6] During the negotiation of the ALA and TLA prior to their execution in 2013, Qualcomm also feared that—based on Arm's conduct at the time—these risks to Qualcomm's business would

document on negotiation status); Ex. 17 at -662 (Arm's ███████████████████ ████

████); Ex. 16 at -135 (Qualcomm's ███████████); Ex. 93 at 55:11-17, 77:10-23, 152:2-

157:19 (Weiser).  In these discussions, Arm ██████████████████████████████

████████████  Ex. 93 at 77:10-23 (Weiser).  ███████████████████████████████

███████████████████████████  *Id*. at 77:10-23; 153:5-19; D.I. 428 Ex.

11 at -025.  To address this concern, the parties discussed and exchanged drafts containing various

█████████████████.  *E.g.*, Ex. 18 at -892.

The resulting ████████ language is reasonable in light of these circumstances.  ████████

████ applies to only the most integral of Arm's obligations—████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ D.I. 428 Ex. 2 § ████ Ex. 3 § ████ Ex. 47 § ██.

Because █████████████████████████████████████████████████████████████

███████████████████████████████████████████████.  D.I. 428

Ex. 2 § ████, Ex. 3 §§ ████████.  The remedy is also the primary protection for Qualcomm in the

agreement, and a primary aspect of the consideration for the fees it paid (in addition to the

technology itself).  Ex. 18; Ex. 19 at -023; Ex. 20 at -235; Ex. 21 at -691.  The remedy is reasonable

in such circumstances, particularly given that, at the time the agreement was negotiated—with a

term that could ███████████████ CSOF ¶ 6)—it was impossible to know several things that

would bear on both the harm caused by Arm's potential breach and the royalties owed to Arm,

including ███████████████████████████████████████████████████████████

████████████████████████████████████.

─────────────────

come to fruition.  For example, █████████████████████████████████████

████     Ex. 93 at 57:7-59:3, 154:21-155:16 (Weiser).

That the provision is reasonable is underscored by the fact that Qualcomm's chip business,

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

While Arm labels ██████████ as a "██████," Arm estimated the remedy's value as ██████ (D.I.

438 at 10)—only a tiny fraction of the total value of the business Arm's actions could (and were

intended to) undermine. The range of harm that reasonably could be anticipated at the time of the

making of the contract from a breach of the ████████████████████████████

██████████████████████████    ██████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

Arm's argument is flawed because it does not rest on the reasonability of ██████████ when

it was negotiated. Instead, Arm contends that the remedy is unreasonable because Arm's failure

to provide ██████████████ under the ALA, including "OOBs and ACK patches," cost Qualcomm

"████████████████████████████." D.I. 438 at 10. Although Qualcomm's witnesses

explained the harm caused by Arm's conduct (Ex. 3 at 88:10-89:25, 103:15-106:5 (Asghar); Ex.

93 at 156:22-157:19 (Weiser); Ex. 5 at 98:8-101:3, 139:20-140:3, 160:15-23, 204:3-13 (Varma)),

Qualcomm could not fully quantify the cost of its effort to work around Arm's failure to comply.

*Id.* Regardless, Arm's argument is without force because it is based on hindsight, and has nothing

to do with the very real risks that Qualcomm faced, and was attempting to guard against, at the

time ██████████ was agreed upon. Ex. 93 at 78:23-79:24, 154:21-155:16 (Weiser); *see also* D.I.

423 Ex. 17 ¶¶ 64-66. The provision was ██████████████████████████████████

██████████████████ (*supra* p. 10), and it is reasonable given the comparative value between

the royalties and the business Arm's conduct could destroy. Ex. 23 at 41, 44; D.I. 438 at 10.

Arm reduces the entirety of its argument about the circumstances at the time of negotiating to two "facts": that a couple of Arm employees (not Qualcomm employees) ███████████ ███████████████████████████████████████████, and that Mr. Weiser testified ███████████████████████████████████████████

Neither is persuasive.   Arm's ███████████████████████████████████████ ███████████████████████████████████████████████.

*Krechuniak*, 217 Cal. Rptr. 3d at 748 ("A recital in the agreement that a provision is either for 'penalty' or 'liquidated damages' is not conclusive, as the parties' intent should be derived from the entire agreement and its surrounding circumstances.").

As to Mr. Weiser's testimony, Arm ignores his statements that the provision was ████ ██████ (Ex. 93 at 153:5-19 (Weiser)); ███████████████████████████████ ██████ (*id.*); and that ████████████████████████████████ ███████████████ (*id.* at 155:17-24).  In any event, the fact that he did not recall ██████ on estimating Qualcomm's actual damages does not mean the provision is unreasonable.  *Contra* D.I. 438 at 11.  The goal ███████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████  Ex. 93 at 153:20-154:7 (Weiser).

The cases Arm relies on to support its argument that the ██████████████ provision is an unreasonable estimation of actual damages are inapposite.  *See Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1073 (N.D. Cal. 2012) (liquidated damages provision was unenforceable because it imposed a fixed remedy of $2,500 per day indefinitely, thus imposing "potentially unlimited damages"); *Smith v. Royal Mfg. Co.*, 8 Cal. Rptr. 417, 422-23 (Ct. App. 1960) (damages were fixed or calculable at the time of contracting); *Greentree Fin.*

13

*Grp., Inc. v. Execute Sports, Inc.*, 78 Cal. Rptr. 3d 24, 27-28 (Ct. App. 2008), *as modified* (May 28, 2008) (liquidated damages set based on approximate damages for breach of a different contract than one at issue); *Ridgley v. Topa Thrift & Loan Ass'n*, 953 P.2d 484, 490 (Cal. 1998) (an over $100,000 pre-fixed late fee on a loan payment had no relationship to harm from late payment).

### B. ARM'S ██████████████ BREACHED SECTIONS ████████ OF THE QUALCOMM TLA (COUNTS VII AND VIII).



████████████████████████████████████████████████████████

██████████████████████ ██████████████████████████████████

████████████████████. D.I. 428 Ex. 3 § ████ Qualcomm has ██████████████

██████████████ called ████████████████, which is set to expire in ████. D.I. 429

Ex. 26 ████. Thus, in 2024, Qualcomm ████████████████████████████. D.I. 435 Exs. 4,

5. Qualcomm contends that Arm then ████████████████ for ██████████████

without ██████████████████████████. D.I. 442 at 13-23.

Arm maintains that ████████████████████ ████████████████ were

██████████████████ and not ██████████████ because Qualcomm ████████████

██████████. D.I. 438 at 13-14. Arm is incorrect: the ██████████ contemplated by

the TLA refers to an ██████████████████████████████ ██████████████

██████████████ cores meets that plain language. *See* D.I. 442 at 5, 14.

Moreover, uncontradicted extrinsic evidence about the provision's function, the parties' negotiations and drafting, and the parties' subsequent course of conduct further supports this reading. *Brown v. Goldstein*, 246 Cal. Rptr. 3d 161, 172 (Ct. App. 2019) ("When there is *no material conflict in the extrinsic evidence*, the trial court interprets the contract as a matter of law").

---

[7] ████████████████████████████████████████████████████
██████████████████████." D.I. 428 Ex. 3 ████████.

Thus, Qualcomm, not Arm, is entitled to summary judgment on this issue.  D.I. 442 at 13-23.  If there is any dispute as to this extrinsic evidence, then, at a minimum, there is a dispute of material fact about the meaning of the words ██████████ such that Arm's motion should be denied.

### 1.  *Under The TLA's Plain Language, Qualcomm's* ██████ *Were* ██████ *For* ██████.

██████████████████████████████████

██████████████████████████████████

██████████████████"[8]  D.I. 428 Ex. 3 § ██████  Arm contends that ██████ ████████████████████████████ ████████ were not an ██████████ because Qualcomm had ██████████ ██████████.  D.I. 438 at 13. By its plain language, ██████████ applies to ██████ ██████████████, and here Qualcomm ██████████████ ████████████████████ Nothing in ██████████ purports to exclude ████████████████████. ██████████ refers only to an ██████████ ██████████████████████ ██████████ Arm fails to provide any contractual language to explain its position or justify its rewriting of the parties' contract.

Arm's suggestion that ██████████████to ██████████████ would be ██████████████████████████████████

___

[8] ██████████████████████████████████
██████████████████████████████████
██████████████ Ex. 48 at -230.

█████████, is incorrect.  D.I. 438 at 14.  ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████  D.I. 428 Ex. 3 § ████.  █████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████.”  D.I. 428 Ex. 3 § ████.  A ██████████████████████████████████

██████████████████████████████[9]

       2.  ***The Parties' Negotiation Of Section █████ And Course Of Dealing Confirms That Qualcomm's █████████████ Were █████████████***

The parties' negotiations and drafts of the agreement make clear that the ████████ was intended to cover █████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████  Arm's witnesses do not claim they were exempt from ████████ ████████████████████████████  instead, they claim to have done the ████████████████████.  Ex. 53 at 61:17-62:8 (30(b)(6) testimony) (Youssef); Ex. 54 at 60:15-61:5 (Shivashankar); Ex. 55 at 60-62.

The negotiations ████████████ confirm that Arm is attempting to rewrite the contract.  In ████████ Qualcomm circulated proposed language to Arm stating that Arm would conduct

---

[9] ████████████████████████████████████████████████████
██████████████████████████████████████████” TLA CSOF ¶ 15.

██████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████

██. Ex. 48 at -231. ████████████████████████████

████████████████████████████████████████████." *Id.* at 230.

████████████████ (*id.* at -229), ████████████████████

██████████████████████ (Ex. 49 at -068-69). ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████. *Compare* Ex. 48 at -231, *with* Ex. 49 at -068-69. ████████████████

██████████████████████████████████████████████."

*Compare* Ex. 48 at -231, *with* Ex. 49 at -068-69. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████.

Ex. 50 at 97:6-17 (Sand) ██████████████████████████

████████████████████████████████████████████████

████████████████; Ex. 50 at 186:25-191:3 (Weiser).[10]

Arm's purported performance of the ████████████████ ████████████████████████

████████████ is "the best indication of what the parties intended the writing to mean." *Epic*

---

[10] Such a limitation also would not serve the parties' purpose of ensuring ████████████████

████████████████████████ *Id.* § ██ ██. ████████

████████████████████████████████████████████████

████████████████████████████████████████████.

*Commc'ns, Inc. v. Richwave Tech., Inc*., 188 Cal. Rptr. 3d 844, 855 (Ct. App. 2015); *see* Cal. Civ. Proc. Code § 1856(c) (terms of final written contracts "may be explained or supplemented by course of dealing or usage of trade or by course of performance"). Arm's witnesses agree that ███████████ ████████████████████████████████████████ ███ ████████████████ Arm's Chief Commercial Officer Will Abbey testified that Arm is required to ████████████████████████████████████████████ ████████ (Ex. 51 at 65:1-20 (Abbey)), ████████████████████████████ ██████████████████████████████████████ (*id.* at 74:19-75:11 (Abbey); *see also* Ex. 52 at 17:7-11, 148:16-149:23 (Couillard)).

The parties' dealings further belie Arm's suggestion that Qualcomm should ████████████ ██████████████████████████████ ████████. D.I. 438 at 13-14. Qualcomm's ████████ for ██████████████████ ran for a term of █████ years in the parties' ████ ████ D.I. 429 Ex. 26 at -366-67. Arm ██████████████████████████████ ████████████ ██████████████████ ████████████████████████████████ ████████████████████████████. Ex. 57 (asserting that Qualcomm's ████████ ████████ ██████████████████ ████████████████). Arm's suggestion that Qualcomm ████████████████████████████████████████████████████ ████████████—is at odds with its own conduct.

> 3. ***Arm Breached Section*** ████ ***By*** ████████████████████████████ ████████████████████.

████████████ ***Applies to the*** ████████████████. Arm's ██████████████████████, in addition to not being based on a ████████████████ ████ also stated that ██████████████████████████████ D.I. 429 Ex. 27 at -831. ████████ ████████████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████ D.I. 428 Ex. 3 § ████ ██

████████████████████████████████████ *Id.*

██████████████████████████████████████

██████████████████████ TLA CSOF ¶ 22.

Arm contends that it was ████████████████████████

█████████

████████████████████ D.I. 438 at 16 (emphasis in original). Arm's reading disregards the plain language of the first sentence of the provision, which

███████████████████ D.I. 428 Ex. 3 § ███.

██████████████████████████████████████

██████████████████████████████████████

█████████ *Id.*[11] █████████████████████

██████████████████████████████████████

██████████████████████████████.

***The* ████████████ *Is Irrelevant to Arm's Breach.*** Arm also contends that

████████████████████████ did not violate ████████

██████████████████████████████████████

████████████████████ D.I. 438 at 14-

---

[11] ███████████████████████ (D.I. 428 Ex. 3 § 1.2A).



15.  That argument fails.



D.I. 429 Ex. 28 ████ The █████████████████████████████

████████████████████████████████ D.I. 429 Ex. 27 at -831.  Thus, by its own

terms, Arm's ████████████████████████████████████████

████████████████████████████████████████████████

████████.  *See Licudine v. Cedars-Sinai Med. Ctr.*, 242 Cal. Rptr. 76, 85 (Ct. App. 2019)

(rejecting argument that "contradicts the plain language of the [] offer itself").  Moreover, Arm's

prior  course  of  dealing  with  Qualcomm  makes  clear  ████████████████████████

████████ ████████████████████████████████████████

████████ ████████████████. D.I. 429 Ex. 26 at -384 (████████████

████████████████████████████████████████████████

████████████████████████ Ex. 58 at -706 (██████████████

████████████████); Ex. 59 at -888 (██████████████

████████████████████████).

Arm's conduct after the offer also shows it ██████████████████████████.

When Qualcomm sought to ████████████████████████████████

████████████████████████████████████████████████

████████████████████████ Ex. 60.  Arm ████████████████

████████████████████████████████████████████████

████████████████████████████ ██████████████████

█████████████████████████████████████████████████████. Ex. 65; Ex. 64 at -547; Ex. 53 at 100:3-102:2 (Youssef).

Arm misstates the record to suggest that its Partner Manager Jeff Fonseca told Qualcomm's Kurt Wolf that ███████████████████████████████████████████████. D.I. 438 at 15; D.I. 431 at 4. Arm relies on an exchange between Mr. Fonseca and Mr. Wolf *seven months after Arm* ████████████████████ for ███████████████—and two months after Qualcomm moved to amend its complaint to allege that ████████████ violated the TLA because it ███████████████ (D.I. 90). In that exchange, Mr. Fonseca and Mr. Wolf were discussing ██████████████████████ ████████████████████. D.I. 435 Ex. 17 (email discussing ████████████████ ███); D.I. 435 Ex. 16 at 170:14-176:14 (Kurt Wolf testifying about that email); Ex. 61 at -726 (offer for ████████ ██████████████████████). That conversation has no bearing on whether Arm's earlier ██████ for █████████████ violated ████████████

Even putting aside Arm's ███████████████████████, ███████████████ ████████████████████████████████████ ████ ████████████████████████████████ (D.I. 438 at 14; D.I. 429 Ex. 28 at -247), ██████████████████████████████ (Ex. 27 at -831).

████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████

## C. QUALCOMM'S IMPLIED COVENANT CLAIMS SHOULD PROCEED TO TRIAL (COUNT III).

Arm misstates the law and facts in arguing for partial summary judgment on a subset of Qualcomm's breach of the implied covenant of good faith and fair dealing claims, which arise

from:  Arm's baseless assertion that Qualcomm materially breached its ALA and leak of its letter containing that assertion to the media; Arm's outreach to Qualcomm's customers about Qualcomm's license; and Arm's ███████████████████████.  *See* D.I. 438 at 16.

*First*, Arm argues that "no provision of the ALA [] prevents Arm's public relations firm from showing a copy of the breach notice to a *Bloomberg* reporter or Arm discussing the original suit with customers."  D.I. 438 at 17.  Arm's argument ignores ███████████████

████████████████████████████████████████████

████████████████████████ D.I. 428 Ex. 2 §§ █████, Ex. 13 at 49 (describing that Arm's outreach to third parties about the Qualcomm ALA, including Arm's leak of the October 22 letter, ██████████████████).[12] ███████████████████████

████████████████████████████████████████████

█████████████████████████, whether Arm does so itself or hires agents to do so.  *See Moore v. Wells Fargo Bank, N.A.*, 251 Cal. Rptr. 3d 779, 787-88 (Ct. App. 2019).

Arm violated the implied covenant of good faith and fair dealing inherent in this provision both by sharing its October 22, 2024 letter with Bloomberg and by discussing the terms of Qualcomm's ALA with customers.  Arm's October 22 letter described Arm's view of Qualcomm's rights and obligations under the ALA and then stated that "these obligations are reflected in multiple places in the Qualcomm ALA, including but not limited to ████████████████

███████████████████ D.I. 423 Ex. 4.  Arm also asserted that Qualcomm must ████

---

[12] Arm also violated the express term of █████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████ D.I. 423 Ex. 4.  Qualcomm is not pursuing a separate claim for breach of the ALA as to these statements.

████████████████████████████████████████████████████████████

████████████ D.I. 423 Ex. 4.  Arm ████████████████████████████████

████████. UCL CSOF ¶ 11; *see also* D.I. 421 ¶ 3.  Additionally, Qualcomm is aware of at least

one instance in which Arm represented to at least one Qualcomm customer, ████████ that it was

disclosing the term length of the Qualcomm ALA.  TI/GFFD CSOF ¶ 8.

There is substantial evidence from which a jury could find that Arm failed to act in good

faith in disregarding the ALA's confidentiality provisions, as Arm's challenged conduct stands in

stark contrast to its general respect for the confidentiality of its contracts.  In the Arm Action, Arm

asserted it should not have to produce other customers' ALAs, even under an attorneys' eyes-only

protective order, because ████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ Ex. 66 at 45:4-20; *see also* Ex. 67 at 2 (asserting again in this

action that ████████████████████████████████████████████).  Arm's Chief

Commercial Officer, Will Abbey, also testified that ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████ Ex. 68 at 207:24-208:25 (Abbey Trial Tr.).  In this case, Arm designated the

letter that it leaked to Bloomberg as "highly confidential – attorneys' eyes only" under the

protective order.  *See* D.I. 423 Ex. 4.  And Arm has redacted ***all*** information about ALA and TLA

terms from its public filings.  *See, e.g.*, D.I. 259, D.I. 335.

*Second*, Arm argues that Qualcomm cannot maintain a claim for breach of the implied

covenant based on Arm's ████████████████████████████████████████

████████████████████████████████████████████ D.I. 438 at 18.  That

argument misses the point.  The "covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another." *Moore*, 251 Cal. Rptr. 3d at 788.  ███████████████████████████████████████████████████ ██████████████████████████████████████████████  D.I. 428 Ex. 3 █████  While Arm ████████████████████████████, the covenant means that Arm may not exercise ██████████  in a manner that effectively prevents Qualcomm from "receiving the benefits of the agreement actually made."  *See Guz v. Bechtel Nat'l Inc.*, 8 P.3d 1089, 1110 (Cal. 2000) (implied covenant "prevent[s] one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made")

Here, there is a genuine dispute of material fact as to whether Arm's ███████████████ █ breached the implied covenant.  There is ample evidence that it did.  Qualcomm had previously ████████████████████████████████████████████.  D.I. 429 Ex. 26; Ex. 56 ████ ██████████████████████████████████████████.  When Qualcomm first █████████████████████████████████████████████████████████████ ████████████████████████████████████████████████.  Ex. 69.  Qualcomm ████████████████████████████████████.  D.I. 435 Ex. 4.  Arm ████████████████████████████████.  D.I. 429 Ex. 27.  ████████████ █████████████ ██ ████████████████████████████████████████.  D.I. 424 Ex. 69 ¶ 101.  At this point, Qualcomm had been ███████████████████████ █████████████████████████████████████████████████████████████ ██████████ ████████████████████████████████████████████████ Ex. 3 at 90:2-23 (Asghar).  When



D.I. 424 Ex. 69 ¶ 101; D.I. 436 Ex. 20.

Ultimately, Arm ███████████████ ████████████████████████.

████████████████████████████████. D.I. 424 Ex. 69 ¶ 101. Arm's ███████████████████

████████████████████████████████████

██████████████████ Qualcomm contends this harmed the company and effectively prevented Qualcomm from receiving the benefit of its agreement. D.I. 423 Ex. 19 at 18-19; Ex. 3 at 90:2-23, 93:25-97:4 (Asghar). At a minimum, this evidence presents a question of fact unsuitable for resolution on summary judgment. *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 334 Cal. Rptr. 3d 488, 522 (Ct. App. 2025), *review denied* (Cal. Sept. 17, 2025).

### D. THE *NOERR-PENNINGTON* DOCTRINE PROVIDES ARM NO DEFENSE.

The *Noerr-Pennington* doctrine shields government petitioning from forming the basis for antitrust liability and, in certain circumstances, liability for other business torts. *10x Genomics, Inc. v. Vizgen, Inc.*, 654 F. Supp. 3d 310, 327 (D. Del. 2023). Arm was not petitioning the government when it sent the October 22 letter to Qualcomm, leaked that letter to Bloomberg, and made misleading communications to Qualcomm's customers about Qualcomm's ability to provide them products. So, contrary to Arm's argument (D.I. 438 at 19-23), this tortious and anticompetitive conduct that forms part of the basis for Qualcomm's implied covenant, tortious interference, and UCL claims[14] is not immunized by the *Noerr-Pennington* doctrine. Nor is any

---

[13] This same ███████████████████ for the ████████████ cores that Qualcomm alleges breached ███████████████ D.I. 442 at 13-23.

[14] As discussed in Sections V.C and V.E, Qualcomm's implied covenant and UCL claims also concern conduct unrelated to the October 22 letter and Arm's communications with Qualcomm's customers. Even if successful (which it is not), Arm's *Noerr-Pennington* defense accordingly could not warrant summary judgment on those claims. *See 10x Genomics, Inc. v. Vizgen, Inc.*, 681

of Arm's conduct incidental to legitimate petitioning activity protected by *Noerr-Pennington*. Further, it is black letter law that *Noerr-Pennington* immunity does not apply to conduct that breaches a contract, like Arm's leak of the October 22 letter. *E.g.*, *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1047 (9th Cir. 2015).

*First*, Qualcomm, its customers, and Bloomberg are not "part of the government," so "there is no constitutionally protected right to 'petition' [them] for a redress of grievances." *Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*, 525 F. Supp. 3d 1145, 1241 (S.D. Cal. 2021). For *Noerr-Pennington* to apply, Arm's conduct would have to be "incidental" to protected conduct. *See* D.I. 438 at 20. Arm fails to show that any of sending the October 22 letter to Qualcomm, leaking the October 22 letter to Bloomberg, or misleading and threatening Qualcomm's customers meet that standard.[15] Instead, evidence shows Arm's communications were bad faith attempts to harm Qualcomm. *See* TI/GFFD CSOF ¶¶ 7-8; UCL CSOF ¶¶ 9-15.

***The October 22 Letter.*** Arm's October 22 Letter—which purported to provide notice of breach of the Qualcomm ALA and threatened to terminate that ALA 60 days later—referred to the Arm Action only in passing. It instead focused on an unsupported claim for breach that Arm failed to pursue in the Arm Action and threatened a remedy related to that alleged breach—termination of the Qualcomm ALA—that Arm did not seek and could not get from the Court. D.I. 423 Ex. 4; UCL CSOF ¶ 9. █████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████ UCL CSOF ¶ 10. Thus, the

---

F. Supp. 3d 252, 268-69 (D. Del. 2023) (declining to dismiss antitrust claim pursuant to *Noerr-Pennington* when litigation was just "one enforcement mechanism" of "complex scheme"); *Microsoft Mobile Inc*. v. *Interdigital, Inc*., 2016 WL 1464545, at *3 (D. Del. Apr. 13, 2016).
[15] Arm asserts that "Qualcomm cannot seek to hold Arm liable for exercising its First Amendment right to file suit." D.I. 438 at 20. But none of Qualcomm's claims or damages theories are based on Arm's filing or pursuit of the Arm Action. *See, e.g.*, D.I. 137; D.I. 424 Ex. 69.

sending of the October 22 letter was intended to enact *greater* harm on Qualcomm's business than Arm could have achieved through mere petitioning activity related to the Arm Action.

      ***The Customer Communications and Leak of the October 22 Letter.***  In addition to sending the October 22 letter, Arm engaged in a concerted campaign unrelated to petitioning activity to misrepresent terms of Qualcomm's licenses to Qualcomm customers, including by:  sending letters to Qualcomm customers that Arm's own CEO agreed were "confusing" and "misleading" (UCL CSOF ¶ 15); indicating to ██████ that Qualcomm's ALA with Arm would expire in 2025, even though it is undisputed that it does not (TI/GFFD CSOF ¶ 8); ████████████████████████████████ ██████████████████████████████████████████ (Ex. 102 at 59:24-61:6 (Siegel); UCL CSOF ¶ 11), resulting in the publication of the Bloomberg article, which incorrectly stated "Arm Holdings Plc is canceling [Qualcomm's] license," (D.I. 423 Ex. 7); and ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████ (UCL CSOF ¶ 12).

      Arm's leak of the October 22 letter and letters to Qualcomm customers were not "incidental to valid efforts" to "prosecut[e]" any action.  *W. Sugar Coop. v. Archer-Daniels-Midland Co.*, 2015 WL 12683192, at *6 (C.D. Cal. Aug. 21, 2015); TI/GFFD CSOF ¶ 8; UCL CSOF ¶¶ 9-12. While Arm compares its customer letters to settlement demands (D.I. 438 at 23), the letters demanded nothing from Qualcomm's customers, who have also not themselves been sued by Arm. Courts have refused to apply *Noerr-Pennington* to analogous customer letters alleging that products purchased may be infringing products.  *E.g.*, *Laitram Mach., Inc. v. Carnitech A/S*, 901 F. Supp. 1155, 1161 (E.D. La. 1995) ("The *Noerr-Pennington* doctrine does not extend to sending letters to a competitor's customers alleging violation of trade secrets and infringement of patents");

*see also Thimes Sols., Inc. v. TP Link USA Corp.*, 2022 WL 1125628, at *1-2 (9th Cir. Apr. 15, 2022); *Golden Eye Media*, 525 F. Supp. 3d at 1175-76, 1239-41; *LY Berditchev, Corp. v. Truss Cosmetics, Corp.*, 2023 WL 334539, at *9 (D.N.J. Jan. 20, 2023).

Arm's actions also are not, as Arm states, akin to "press releases" intended to publicize Arm's "litigating position" and "provid[e] [Arm's] view of the case to . . . customers."  D.I. 438 at 21-22.  The October 22 letter, which only alleged breach of the *Qualcomm* ALA, implicated none of Arm's claims in the Arm Action.  D.I. 423 Ex. 4; Ex. 70.  And, unlike a press release, Arm ██████████████████████████████████████████████████████████████████.  UCL CSOF ¶ 12.  Accordingly, viewed "in the light most favorable to [Qualcomm]," *Le Pape*, 103 F.4th at 977, the facts surrounding Arm's communications with customers and leak of the October 22 letter are nothing like a press release regarding pending litigation.

But even if the Bloomberg article prompted by Arm's leak of the October 22 letter was considered akin to a "press release" about the litigation, that would not support *Noerr-Pennington* immunity.  In *Nuance Communications v. MModal LLC*, this Court found that "disseminat[ing] a false press release to [the defendant's] customers and the public after filing this suit," and engaging in a "campaign to use the press release discussing the suit to propose new pricing arrangements" was not "incidental" to litigation and did not implicate the same First Amendment concerns.  2018 WL 6804488, at *3-4 (D. Del. Dec. 27, 2018), *report & recommendation adopted*, 2019 WL 181322 (D. Del. Jan. 11, 2019) (Noreika, J.); *see also Arista Networks, Inc. v. Cisco Sys., Inc.*, 2018 WL 11230167, at *11 (N.D. Cal. May 21, 2018) (denying summary judgment that blog posts were protected by *Noerr-Pennington*, as blog posts were "merely statements about the status of the parties' litigation and [the poster's] intellectual property rights" and not, like demand letters, made in furtherance of or incidental to efforts to "prosecution of the . . . lawsuit"); *Riverbed Tech.,*

*Inc. v. Silver Peak Sys., Inc.*, 2015 WL 12941890, at *3 (N.D. Cal. Apr. 7, 2015) ("competitive brief" about litigation merely described case and was not in "furtherance of or incidental to" it). Here, as in *Nuance*, Arm engaged in "additional market manipulation conduct" by disseminating the Bloomberg article, which falsely claimed that Arm was canceling the Qualcomm ALA, to Qualcomm's customers and other journalists.  2018 WL 6804488, at *4; D.I. 423 Ex. 7; UCL CSOF ¶ 12.  This conduct is neither protected government petitioning nor incidental to it, and Arm cannot use *Noerr-Pennington* to protect its tortious and anticompetitive conduct.

*Second*, *Noerr-Pennington* "does not . . . immunize a party from actions that amount to a breach of contract."  *Microsoft Corp.*, 795 F.3d at 1047.  By undertaking to "comply with the contract," the party "waived" that privilege.  *Powertech Tech., Inc. v. Tessera, Inc.*, 872 F. Supp. 2d 924, 932, 934 (N.D. Cal. 2012); *see also Spear Pharms., Inc. v. William Blair & Co., LLC*, 610 F. Supp. 2d 278, 288 (D. Del. 2009) ("violation of a confidentiality agreement . . . is not protected by the First Amendment").  Arm breached its ███████████ under ███████ of the ALA ████████████████████████████████ ████████████████████████████ ███████ through its leak of the October 22 letter.  *Supra* Section V.C; D.I. 428 Ex. 2 ████ D.I. 423 Ex. 4.  Arm's breach of the ALA's ████████████ precludes summary judgment on any claim pursuant to *Noerr-Pennington* as a matter of law.  If Arm disputes its breach, that material factual dispute also precludes summary judgment.  *Le Pape*, 103 F.4th at 981.

### E.  QUALCOMM'S UCL CLAIM SHOULD PROCEED TO TRIAL (COUNT VI).
#### 1.  *There Is A Genuine Dispute of Material Fact As To Whether Arm Has Engaged In Unfair Or Unlawful Conduct Under The UCL.*

Qualcomm's UCL claim challenges a broad, sustained pattern of conduct by Arm aimed at interfering with Qualcomm's access to the Arm ISA and disrupting Qualcomm's business and customer relationships.  UCL CSOF ¶ 5.  Arm artificially attempts to narrow Qualcomm's UCL

29

claim to argue that it can be resolved as a matter of law. Not so. The UCL's "scope is broad," and it "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tele. Co.*, 973 P.2d 527, 539-40 (Cal. 1999). As Arm agrees, Qualcomm only needs to establish that "Arm's conduct was *either* 'unlawful' or 'unfair.'" D.I. 438 at 26; *see also Cel-Tech*, 973 P.2d at 540. Under either standard, Qualcomm's UCL claim necessarily raises issues of material fact as to the impacts of Arm's conduct on Qualcomm or the threat Arm's conduct poses to competition.

**Unfair Conduct.** California courts evaluate whether conduct is "unfair" under the UCL pursuant to different tests, depending on whether the claim concerns unfairness toward a *direct competitor* or unfairness toward a *consumer* of the defendant's products. Here, Qualcomm is both a direct competitor of Arm for the sale of chips (D.I. 415 ¶ 48) and a customer of Arm for the sale of Arm-compliant cores (UCL CSOF ¶¶ 1-3).

Direct competitors may prove unfair conduct by showing that the defendant's "conduct threatens an incipient violation of an antitrust law, *or* violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, *or* otherwise significantly threatens or harms competition." *Cel-Tech*, 973 P.2d at 544 (the "*Cel-Tech* test"). The California Supreme Court has stated that the *Cel-Tech* test is "limited" to actions by competitors alleging anticompetitive conduct. *Nationwide Biweekly Admin., Inc. v. Superior Ct.*, 462 P.3d 461, 471-72 (Cal. 2020). For consumers of a defendant's products, courts consider whether the harm caused to the plaintiff outweighs the utility of the defendant's challenged conduct. *See Capito v. San Jose Healthcare Sys., LP*, 561 P.3d 380, 386-87 (Cal. 2024) (collecting cases and declining to specify a particular formulation of the balancing test that courts must apply); *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023). These competitor and

consumer tests "are not mutually exclusive." *Epic Games*, 67 F.4th at 1000 (upholding application of both tests to Epic Games-Apple relationship because Epic Games was both a consumer of and competitor to Apple's products). If there is a dispute of material fact under *at least one* of the tests, a UCL claim can survive summary judgment. *See Gerawan Farming, Inc. v. Rehrig Pac. Co.*, 2013 WL 1934173, at *3 (E.D. Cal. May 9, 2013) (denying summary judgment due to factual disputes on UCL claim under the consumer balancing test where plaintiff was in part a consumer and in part a competitor of defendant); *Worldwide Travel, Inc. v. Travelmate US, Inc.*, 2015 WL 1013704, at *12 (S.D. Cal. Mar. 9, 2015) (similar at motion to dismiss stage).

Arm first attempts to skip over the competitor-consumer distinction and asserts that courts apply the "tethering test" (meaning the *Cel-Tech* test) to determine whether conduct is unfair in "disputes between sophisticated corporations." D.I. 438 at 27. This is a misstatement of the law. As the Ninth Circuit confirmed in the *Epic Games* case involving two sophisticated companies, Epic Games and Apple, both the consumer and competitor tests apply where the parties act as both seller-consumer and competitors. *Epic Games*, 67 F.4th at 1000; *see also Rocket Software, Inc. v. CollegeNET Inc.*, 2024 WL 4920011, at *6-7 (D. Or. Sept. 30, 2024) (applying only the consumer balancing test to permit UCL claim against software company by another software company). Arm's case law is not to the contrary: *In re Qualcomm Litigation* lost any persuasive authority after *Epic Games* to the extent that Arm seeks to read it to preclude companies with a consumer relationship from proceeding under the consumer test. 2017 WL 5985598 (S.D. Cal. Nov. 8, 2017). And *Allen Saltzman LLP v. Bank of America, N.A.* is a case involving only a consumer relationship (a law firm suing its bank) that rejects the defendant's argument that the *Cel-Tech* test would apply to the firm's claim. 2024 WL 3582626, at *3 (C.D. Cal. July 29, 2024).

Arm also asserts that Qualcomm cannot proceed under the "balancing test" for consumers

31

because it is a competitor of Arm. D.I. 438 at 31; D.I. 415 ¶ 48. Arm's argument is again inconsistent with the case law because the consumer balancing test and the *Cel-Tech* competitor test "are not mutually exclusive." *Epic Games*, 67 F.4th at 1000; *see also Gerawan Farming*, 2013 WL 1934173, at *3. Arm's attempt to disavow Qualcomm's consumer relationship is also contrary to record evidence. *See Nat'l Rural Telecomm. Co-op v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1076 (C.D. Cal. 2003) (denying summary judgment on UCL claim due to factual dispute over nature of parties' relationship). Arm identifies Qualcomm in its SEC filings as "a major customer" (UCL CSOF ¶ 1) and Qualcomm pays Arm ▮▮▮▮▮▮▮▮▮▮ each year in royalties for products it licenses (D.I. 426 ¶ 3). Additionally, numerous Arm witnesses, including Arm's CEO, have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 88 at 241:11-13 (Haas); Ex. 89 at 22:11-13 (2023 Haas); Ex. 90 at 88:16-19 (Williamson); Ex. 94 at 31:23-32:10 (Greenhalgh); *see also* UCL CSOF ¶ 3.

Arm does not argue that Qualcomm cannot satisfy the consumer test for unfair conduct, much less show that Arm is entitled to summary judgment under that test. D.I. 438 at 31; Fed. R. Civ. P. 56(a). Contrary to Arm's claims that Qualcomm is asking the Court to extend California law (D.I. 438 at 29), California courts have recognized claims where a defendant made misleading statements "that [plaintiff's] business and/or products are affected by legal issues that do not exist" satisfy the "unfair" prong of the UCL. *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1174 (N.D. Cal. 2015); *Wisk Aero LLC v. Archer Aviation Inc.*, 2021 WL 4932734, at *13 (N.D. Cal. Sept. 14, 2021). There is ample record evidence of Arm's misleading statements. After the leak, in responding to reporter questions about the impact of October 22 letter, Arm's Chief Marketing Officer ("CMO") Ami Badani ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

█████████████████████████████████████████████████ Ex. 108.  She also ████████████

███████████████████████████████████████████████████████████████████████

████████████████ *Id.* ████████████████████████████████ : Qualcomm's products containing cores

licensed under its TLA could not have been impacted by the October 22 letter.  Ex. 109 at 70:10-

71:14 (Hughes); D.I. 423 Ex. 4 (alleging breach of ALA only).  Arm stipulated in the Arm Action

that the chair of its Board told ████████ executives in 2022 that Qualcomm's ALA would expire

in 2025.  TI/GFFD CSOF ¶ 12.  This was untrue; Qualcomm's license does not expire in 2025.

*Id.*  Arm's CEO also admitted at trial in the Arm Action that ██████████████████████

██████████████████████████████████ UCL CSOF ¶ 15.

     There is also ample evidence that these misleading statements have harmed Qualcomm,

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ *E.g.*, Ex. 87 at 54:22-56:7,

63:12-64:19 (Chaplin); Ex. 3 at 116:3-117:11 (Asghar).  Arm has offered no pro-competitive

justification for its conduct, and it should not be able to raise one for the first time on reply.  *See*

*Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 145-46 (3d Cir. 2017).  In

any event, the weighing of any supposed pro-competitive justification against the harm to

Qualcomm would necessarily involve disputed factual issues.

     Arm's argument also fails under its preferred *Cel-Tech* test for a competitor.  That test sets

a "wide standard" given that "it would be impossible to draft in advance detailed plans and

specifications of all acts and conduct to be prohibited."  973 P.2d at 540.  Conduct can be "unfair

even if not specifically proscribed by some other law."  *Id.*  So Arm's observations that Qualcomm

has not "identif[ied] any antitrust law implicated by Arm's conduct" or "developed [a] market

definition or evidence of monopoly power" (D.I. 438 at 27) miss the point.  California law does

not require UCL plaintiffs to plead or prove a market or market power, or other elements of an antitrust claim. *Epic Games*, 67 F.4th at 1002; *Metricolor LLC v. L'oréal S.A.*, 2020 WL 2802942, at *17 (C.D. Cal. July 7, 2020).

Moreover, California courts have found that conduct similar to that which Arm engaged in significantly threatens or harms competition. For example, the California Supreme Court has made clear that a company's abandonment of its legal obligations can constitute unfair competition because "responsible companies are [] hurt" when their competitors shirk standards they are upholding. *Dynamex Ops. W. v. Superior Ct.*, 416 P.3d 1, 32 (Cal. 2018) (discussing failure to follow wage laws as unfair competition). And other California courts have found the *Cel-Tech* test satisfied by allegations that a defendant is trying to put the plaintiff out of business. *See Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 837 (N.D. Cal. 2016) (defendants' goal of putting plaintiff out of business "threatens the type of harm the antitrust and federal consumer protection laws aim to prevent"); *ML Prods. Inc. v. Ninestar Tech. Co.*, 2023 WL 12171006, at *14 (C.D. Cal. Sept. 27, 2023).

Qualcomm claims that Arm's unfair practices were conducted "with the goal of preventing Qualcomm from developing custom cores that would compete with Arm's own designs and from marketing products that contain Qualcomm custom cores." D.I. 137 ¶ 207; *see also* D.I. 423 Ex. 19 at 41. Qualcomm has developed substantial evidence in support of that claim, including ███ ████████████████████████████████ (Ex. 110 at 6-7), ████████████████ █████████████████████████████████ (Ex. 95 at -085), and ██████ ███████████████████████████ (Ex. 97 at -061), from which a factfinder could find that Arm's conduct significantly threatens or harms competition.

Arm ignores this theory of Qualcomm's claim and focuses its argument instead on

economic theories of input foreclosure and Arm's switch away from its "Switzerland"-like neutral licensing model discussed by Qualcomm's expert Professor Posner. D.I. 438 at 27-30. Arm argues that its conduct should not be considered unfair under the first two prongs of the *Cel-Tech* test (for threatening an incipient violation of an antitrust law or violating the policy or spirit of one of those laws) because refusals to deal generally do not violate the antitrust laws. *Id.* at 27-29. But antitrust case law only precludes UCL actions where "a *categorical* antitrust rule formed the basis of the decision." *Epic Games*, 67 F.4th at 1001.

Arm acknowledges that ending a course of dealing can give rise to antitrust liability (D.I. 438 at 29), such that its conduct is not shielded by a "categorical" bar. Here the refusal to deal occurred because Arm terminated a historic and profitable course of neutral dealing with its licensing customers on which its customers relied, and then used the power it acquired to compete against its customers. *See* D.I. 438 at 29.; s*ee Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 611 (1985) (antitrust liability based on the termination of a voluntary and profitable course of dealing to achieve an anticompetitive end).

Arm also misstates Professor Posner's testimony regarding the rationality of its conduct; Professor Posner testified ███████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████ Ex. 92 at 328:3-15 (Posner). But there is a material dispute as to whether Arm's conduct required it to sacrifice profits in the short term to prevent Qualcomm from selling both custom cores under its ALA (by withholding ███████████ and undermining customer confidence in Qualcomm's ability to deliver those cores) and its TLA (by refusing ███████████████████ ███████████████████████████████████████ ) (*see* Ex. 87 at 28:24-30:21 (Chaplin)), as Arm's decisions to breach the ALA and TLA have cut off both sources of its royalty revenue.

Whether Arm's conduct constitutes an anticompetitive refusal to deal is ultimately a factual issue in this case that cannot be resolved on a motion for summary judgment. *See Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 365-66 (4th Cir. 2024) (vacating summary judgment ruling due to disputed facts over whether refusal to deal was intended to eliminate competitor).

        ***Unlawful Conduct.*** Arm also argues that Qualcomm cannot prove its conduct is "unlawful" because it "does not point to the type of statutory or constitutional violation necessary." D.I. 438 at 26. Under California law, "virtually any law or regulation—federal or state, statutory or common law—can serve as a predicate for an 'unlawful' prong violation," *Candelore v. Tinder, Inc.*, 228 Cal. Rptr. 3d 336, 350 (Ct. App. 2018), including claims for tortious interference specifically, *DJO Global, Inc. v. Glader*, 2016 WL 11622009, at *7-8 (S.D. Cal. Dec. 22, 2016).[16] And contrary to Arm's argument, the Ninth Circuit has "allow[ed] the allegations of interference with [an] existing contract to do triple duty" in support of tort and UCL claims. *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007).

### 2. Qualcomm Lacks An Adequate Remedy At Law For Arm's Unfair And Unlawful Competition.

        Injunctive relief is the UCL's central remedy, Cal. Bus. & Prof. Code § 17203, and the claim for this unique form of relief should proceed to trial. Arm ignores the full scope of the UCL claim Qualcomm has asserted in arguing that "Qualcomm has not shown why the remedies it seeks for its contract and tortious interference claims are inadequate." D.I. 438 at 24. None of those claims provide a remedy to prevent Arm's ongoing unfair conduct. Because of the prospect of

---

[16] Arm cites *Shroyer* v. *New Cingular Wireless Services, Inc*., in which the Ninth Circuit found that common law breach of contract is insufficient to violate the "unlawful" prong. D.I. 438 at 26. Qualcomm does not contend that its breach of contract claims alone can serve as predicates for violations of the "unlawful" prong of the UCL.

future harm, this is not a case where Qualcomm's legal remedies are certain to allow it to seek the "same amount of money for the exact same harm" as it could under the UCL. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

Arm argues that the "only" equitable relief Qualcomm seeks is restitution, which is incorrect. D.I. 438 at 24-25. Qualcomm seeks injunctive relief, the core remedy for a UCL violation, to prevent ongoing and future illegal conduct. D.I. 137 at Prayer for Relief ¶ D. Supreme Court precedent instructs that a "remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient." *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937). Arm disregards that Qualcomm is seeking injunctive relief against Arm's unfair business practices "aimed at obstructing Qualcomm's ability to develop and sell chips." D.I. 137 at Prayer for Relief ¶ D. As Qualcomm has stated, "legal remedies that do not require Arm to comply with its contractual obligations . . . are insufficient because they would not preclude Arm's anti-competitive efforts to impair Qualcomm's current and future ability to conduct its business." UCL CSOF ¶ 19. Contrary to Arm's position that "[i]t makes no difference" that its conduct is ongoing (D.I. 438 at 25), injunctive relief is the appropriate remedy for curtailing future unfair conduct. *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) (injunction is "prospective" relief to "ensure" that plaintiff "can rely" on defendant to avoid future unfair conduct).

Arm briefly argues that Qualcomm does not have standing to seek injunctive relief based on Arm's sending of the October 22 letter, leak of that letter, and communications with Qualcomm's customers because those are past actions without a real threat of recurrence. D.I. 438 at 26. But there are material factual disputes about Arm's intentions to repeat those kinds of anticompetitive actions. Indeed, Arm sent Qualcomm's customers letters on multiple occasions. *See, e.g.*, Ex. 112; Ex. 111. Arm has not disclaimed any plan to repeat this conduct and, given its

pending appeal and the upcoming trial in this matter, it is reasonable to think Arm may see value in another ██████████ like the October 22 letter.  Ex. 104 at -645.  Arm's CMO apparently ██████████ ████████████████████████████████████████  ██████████████████████████████████████ ████████████████ (Ex. 101 at 43:19-45:8 (Badani)); Arm's CEO ██████████████████████████████ ████████████████████████████ (Ex. 88 at 120:12-121:15 (Haas)); and, in its motion, Arm claims nothing "prevent[ed] Arm's public relations firm from showing a copy of the breach notice to a *Bloomberg* reporter or Arm discussing the original suit with customers" (D.I. 438 at 17).

Other challenged Arm practices also remain ongoing, even as the parties brief this motion. For example, Qualcomm ██████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████ . *See* Ex. 99.  It is unlikely Arm will ██████████████████ ██████████████ .  As ██████████████████████████ ██████ (Ex. 88 at 156:23-157:1 (Haas); Ex. 51 at 26:4-13, 28:2-8 (Abbey)), ██████████████████████████ (Ex. 51 at 21:7-10 (Abbey)), Qualcomm faces an imminent risk of falling behind its competitors with ██ access. ████████████████████████████████ ████████████████████████████████ and the available evidence indicates that Arm will ██████████████████████████████████ .  For example, when Qualcomm ██████████████ ██████ ████████████████████████████ (*see* D.I. 442), ████████████████████████ ████████████████████████ ████████████████████████████████████████████████ .

*Compare* Ex. 107, *with* D.I. 435 Ex. 7.  There is thus a genuine dispute of material fact as to whether Qualcomm is under a concrete, actual, and imminent threat of future harm from Arm's anticompetitive actions, which would be prevented by injunctive relief but not damages.  *See*

*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

### F.  THERE IS A GENUINE DISPUTE OF MATERIAL FACT AS TO WHETHER ARM'S CONDUCT CAUSED QUALCOMM HARM (COUNTS IV AND V).

Arm moves for summary judgment on Qualcomm's tortious interference claims, arguing that "Qualcomm cannot show Arm's allegedly tortious conduct caused Qualcomm any harm" with respect to its business dealings with ████ or other third parties.  D.I. 438 at 31-34.  Arm's argument ignores multiple disputes of material fact that preclude summary judgment.

To prove causation, Qualcomm need only show that Arm's conduct was a "substantial factor" (not the "only factor") in causing it harm.  *Jenni Rivera Enters., LLC v. Latin World Ent. Holdings, Inc.*, 249 Cal. Rptr. 3d 122, 144-45 (Ct. App. 2019); CACI Nos. 430, 2202.  Causation "is ordinarily a question of fact which cannot be resolved by summary judgment."  *Lawrence v. La Jolla Beach & Tennis Club, Inc.*, 179 Cal. Rptr. 3d 758, 774 (Ct. App. 2014).  If there are factual disputes or undisputed facts provide "room for a reasonable difference of opinion," causation cannot be decided as a question of law.  *Id.*

There is a genuine dispute of material fact as to whether Arm's conduct caused harm to Qualcomm's relationship with ████  On October 2, 2024, Qualcomm outlined the terms of a proposed Qualcomm-████ collaboration for the use of Qualcomm chips in ██████████



████████████  D.I. 424 Ex. 22.  █████████

████████████████████████

████████████████████  *Id.*  On October 22, Arm sent Qualcomm a notice of breach of the Qualcomm ALA and leaked it to Bloomberg News.  TI/GFFD CSOF ¶ 7.  Two days later, Tejas Krishnamohan, Qualcomm's Senior Vice President and President of North America, who was part of Qualcomm's ████ negotiation team, reported that ████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████ D.I. 424 Ex. 24 at

-037; *see also* Ex. 3 at 116:8-117:20 (Asghar).

The day after that, a representative from ████ told Mr. Krishnamohan that, while he was

███████████████████████████████████████████████████████

████████████████████████████████████████████████████[17]

D.I. 424 Ex. 26 at -642.  On both October 24 and 25, ████ in-house counsel emailed Qualcomm's

in-house counsel with questions about the implications of Arm's letter and potential ramifications

for the Qualcomm-████ business relationship.  Ex. 73 at -757-58.  And on October 29, ████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████ D.I. 424 Ex. 25 at -475.

Qualcomm shared the first draft of ██████████████████ on October 31.  D.I.

424 Ex. 26.  ██████████████████████████████ *Id.* at -644.  On November

11, less than two weeks after telling Qualcomm alignment on the terms depended on the "Arm

review," ████ shared a ████████████████████████████████████

█████████████████████████████████████████████████████

████ D.I. 424 Ex. 28 at -967, -969.[18] ████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

---

[17] Arm appears to question whether ████ even conducted a "legal review" at all.  *See* D.I. 438 at 32.  On October 31, 2024, ████ told Qualcomm that it had ████████████████████████ Ex. 74 at -924.

[18] In addition, ████████████████████████████████████████████ D.I. 424 Ex. 28 at -970. ████████████████████ D.I. 424 Ex. 64 at -575.

█████████████████████████████ [19] Ex. 2 at 232:2-8, 271:18-272:8 (Amon); D.I. 424 Ex. 69 ¶¶ 129-30. ████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████ costing Qualcomm up to about 180 million dollars.[20]

This evidence alone is sufficient to defeat summary judgment: in tortious interference cases, "timing alone" can prove causation, where "the proximity of the alleged cause and effect tends to demonstrate some relevant connection." *Overhill Farms, Inc. v. Lopez*, 119 Cal. Rptr. 3d 127, 144 (Ct. App. 2010); *Wisk Aero LLC v. Archer Aviation Inc.*, 2023 WL 3919469, at *4-5 (N.D. Cal. June 9, 2023) (denying summary judgment on causation because deal was delayed following publication of a blogpost and deal valuation and funding fell following the delay).

Contrary to Arm's assertions, there is ample "evidence tying ████ concerns about Arm's suit against Qualcomm following Arm's leak of the October 22 letter and desire for a ████ ████ ████████████████████ in the Qualcomm-████████ *See* D.I. 438 at 32. Following Arm's leak, ██████████████████████████████████

██████████████████████████████████████████████████████████

████████ Ex. 75 at 45:7-46:14 (Mulabagal); *id.* at 41:12-44:14 (testifying ██████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████ told Qualcomm that

██████████████████████████████████████████████████████████

---

█ ████ ████████████████████████████████████ Ex. 2 at 232:2-8 (Amon). [20] Qualcomm's exact damages amount will vary based on whether Qualcomm wins future product designs from ████ and how many units of the relevant products ████ sells. D.I. 424 Ex. 69 ¶¶ 131-35; D.I. 436 Ex. 22 ¶ 148, Fig. 17. Qualcomm will present evidence on both points at trial to enable the jury to determine an appropriate damages amount. As ████ and Qualcomm executed their agreement at the close of expert discovery, Dr. Kennedy will also supplement his calculations as needed once Arm has completed its production of other documents relevant to his opinions.

███████████████████████████████████ Ex. 74 at -924.  The natural effect of ██████ concern ███████████████████████████████████████████ Ex. 75 at 49:6-11, 53:20-55:12 (Mulabagal); *see* Ex. 2 at 21:9-22:1 (Amon).  Arm fails to address this evidence.

The cases Arm cites to support its argument bear no resemblance to this case.  *Alfa Consult SA v. TCI Int'l, Inc.*, 2023 WL 6466388, at *13 (N.D. Cal. Oct. 3, 2023) (finding that the defendant caused plaintiff's blacklisting by a government agency would have required stacking three inferences upon one another, without evidence to support *any* of them); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 348 F.3d 1116, 1122-23 (9th Cir. 2003) (Oregon law) (connecting defendants' alleged bribing of two members of a 60-member Bid Evaluation Committee and plaintiff's "ultimate failure to secure the two contracts won by defendants" required drawing "too many inferences").  Here, a jury could decide in Qualcomm's favor based on a single inference:  that ████████████████████████████████████████████ shortly thereafter resulted from Arm's leak of the October 22 letter and were intended "to assuage concerns related" to that letter.  *See Wisk Aero LLC*, 2023 WL 3919469, at *4-5.

Arm also argues that "Qualcomm and its expert do not identify any quantifiable economic harm for" the other Qualcomm customer relationships for which Arm tortiously interfered.  D.I. 438 at 34.  But to prove liability, Qualcomm need only prove that it suffered "economic harm [] proximately caused by the acts of" Arm.  *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003).  The record is filled with testimony supporting that finding.  *See, e.g.*, D.I. 423 Ex. 14 at 41:9-43:12, 45:9-18, 53:16-55:14, 107:1-108:19, 119:13-120:15, 157:23-158:4, 287:4-8, 294:8-295:14 (Amon); TI/GFFD CSOF ¶ 15.  Arm's motion should be denied.

## VI.    CONCLUSION

For the foregoing reasons, Arm's motion for partial summary judgment should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____
Jennifer Ying (#5550)
Travis Murray (#6882)
Ben Yenerall (#7132)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com
byenerall@morrisnichols.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
Jenifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

Catherine Nyarady
Anish Desai
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
(628) 432-5100

November 7, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 7, 2025, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                          *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                      *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                        *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
Sydney D. Gaskins, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Kyle W.K. Mooney, Esquire                        *VIA ELECTRONIC MAIL*
Alexandra Corrinne Hottenrott, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

Erik J. Olson, Esquire  
MORRISON & FOERSTER LLP  
755 Page Mill Road  
Palo Alto, CA  94304  
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Daniel P. Muino, Esquire  
MORRISON & FOERSTER LLP  
2100 L Street, NW, Suite 900  
Washington, DC  20037  
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Brian M. Kramer, Esquire  
MORRISON & FOERSTER LLP  
12531 High Bluff Drive, Suite 200  
San Diego, CA  92130  
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

William Frentzen, Esquire  
Daralyn J. Durie, Esquire  
Shaelyn Dawson, Esquire  
MORRISON & FOERSTER LLP  
425 Market Street  
San Francisco, CA  94105  
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Lydia B. Cash, Esquire  
MORRISON & FOERSTER LLP  
300 Colorado Street, Suite 1800  
Austin, TX  78701  
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Gregg F. LoCascio, P.C.  
Jason M. Wilcox, P.C.  
Meredith Pohl, Esquire  
Matthew J. McIntee, Esquire  
KIRKLAND & ELLIS LLP  
1301 Pennsylvania Avenue, N.W.  
Washington, D.C.  20004  
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Jay Emerick, Esquire                                          *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                                    *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*



                                    */s/ Jennifer Ying*
                                    _____
                                    Jennifer Ying (#5550)