IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) | |
| Plaintiffs, | ) | C.A. No. 24-490 (MN) |
| v. | ) | |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) | |
| Defendant. | ) | REDACTED PUBLIC VERSION |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN OF ARM'S EXPERT OPINIONS AND TESTIMONY**


OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
Jenifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
(628) 432-5100

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
Ben Yenerall (#7132)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com
byenerall@morrisnichols.com

*Attorneys for Plaintiffs*

Catherine Nyarady
Anish Desai
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000


Original filing date: November 14, 2025
Redacted filing date: November 21, 2025

# TABLE OF CONTENTS

**Page**

I. The Brogioli and Richards Reports Contain Improper Rebuttal. .......................................... 1

II. Brogioli's Opinions Should Be Excluded. ................................................................... 1

III. Richards' Opinions Should Be Excluded. ................................................................... 4

IV. Certain of Britven's Opinions Should Be Excluded. ............................................................ 5

V. Certain of Simcoe's Opinions Should Be Excluded. ............................................................ 9

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Allscripts Healthcare, LLC* v. *Andor Health, LLC*,
2022 WL 3021560 (D. Del. July 29, 2022) ....................10

*APEX Fin. Options, LLC v. Gilbertson*,
2022 WL 613347 (D. Del. Mar. 1, 2022) ....................5

*Biogen Inc.* v. *Sandoz Inc.*,
2025 U.S. Dist. LEXIS 167161 (D. Del. Apr. 3, 2025)....................9

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
350 F.3d 316 (3d Cir. 2003)....................2

*Cavi* v. *Evolving Sys. NC, Inc.*,
2018 WL 2317594 (D. Del. May 21, 2018)....................8

*Deutsch* v. *Novartis Pharms. Corp.*,
768 F. Supp. 2d 420 (E.D.N.Y. 2011) ....................9

*In re C2R Global Manufacturing*,
2021 WL 1347209 ....................8

*Integra Lifesciences Corp. v. HyperBranch Medical Technology, Inc.*,
2018 WL 1785033 (D. Del. Apr. 4, 2018)....................2

*Pandora Jewelers 1995, Inc.* v. *Pandora Jewelry, LLC*,
2011 WL 2295269 (S.D. Fla. June 8, 2011) ....................9

*Rheault* v. *Halma Holdings Inc.*,
2025 WL 1866842 (D. Del. June 30, 2025)....................6, 7

*SEC* v. *Ripple Labs, Inc.*,
2023 WL 5670711 (S.D.N.Y. Mar. 6, 2023) ....................5

*SmartSky Networks, LLC v. Gogo Bus. Aviation LLC*,
2025 WL 2972258 (D. Del. Oct. 21, 2025) ....................5

*Stone Creek Bus. Ctr., LLLP* v. *Stone Creek-Colo., LLC*,
2022 WL 4448854 (D. Colo. Sept. 23, 2022)....................7

*Tormenia v. First Investors Realty Co., Inc.,*
251 F.3d 128 (3d Cir. 2000)....................2

*Truong v. Delta Int'l Machinery Corp.,*
2021 WL 5441802 (D.N.J. Oct. 29, 2021)....................2

*TrustID, Inc. v. Next Caller Inc.*,
2021 WL 3015280 (D. Del. Jul. 6, 2021) ....................................................................5

*TSC Indus., Inc. v. Northway, Inc.*,
426 U.S. 438 (1976)............................................................................................................4

**Other Authorities**

31A C.J.S. Evidence § 191 ..........................................................................................1

*Perceive*, *Black's Law Dictionary* (12th ed. 2024).........................................................4

*State of Mind*, *Black's Law Dictionary* (12th ed. 2024) ................................................4

## I. The Brogioli and Richards Reports Contain Improper Rebuttal.

Arm's oppositions confirm the Brogioli and Richards Reports contain improper rebuttal. *First*, Arm argues it should be permitted to present evidence that it "stopped providing certain tech support to Qualcomm for Nuvia-based cores" because "Arm reasonably and in good faith believed those cores were unlicensed" and thus was not obligated to provide deliverables for them. D.I. 453 at 8.[1] But Qualcomm offered no expert opinion about Arm's state of mind or belief. Brogioli's testimony supports an affirmative defense on which Arm has the burden of proof; accordingly, it may not rely on Brogioli's late-disclosed opinions. *See* D.I. 434 at 10 n.8; D.I. 44 ¶ 7(g). *Second*, Arm argues "even if there were no Bloomberg article, Qualcomm still would have disclosed the Breach Letter in its SEC filings," purportedly undermining any causal connection between Arm's leak and Qualcomm's harm. D.I. 447 at 14. As the party raising this issue, Arm has the burden to prove it. 31A C.J.S. Evidence § 191 ("where a fact is essential to a defense, the burden of proof is on the party raising the defense"). The Richards Report came too late to support this argument.

## II. Brogioli's Opinions Should Be Excluded.

**ACK Opinions.** Brogioli has never used the ACK or verified an Arm core, yet offers opinions on how an Arm partner like Qualcomm uses the ACK, which of its components are "necessary," and what partners can do without them. Brogioli could not even identify ACK components at his deposition. D.I. 434 at 6-7. And Brogioli never confirmed his opinions regarding the withheld compliance materials and how their withholding affected Qualcomm. *Id.* at 7-8. Arm argues Brogioli's ACK opinions are nevertheless reliable because he has verified non-Arm CPUs and written compliance tests for other ISAs. D.I. 447 at 3-5. But he conducted no

---

[1] For quoted material, unless otherwise indicated, all brackets, ellipses, internal quotation marks, and citations are omitted for readability. All emphasis is added unless otherwise indicated.

analysis to confirm his opinions and acknowledged that other ISAs "***did not provide similar tools or tests***" to the ACK. D.I. 439 Ex. 2 ¶ 164.[2] Instead, Brogioli relied on Arm documentation and witness testimony along with general appeals to his non-Arm technical experience. Brogioli's general "expertise in relevant fields" does not mean he can render reliable opinions on technology he never used in the absence of "tests to evaluate the relative merits" of his opinions. *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 324 (3d Cir. 2003); *see* D.I. 434 at 5-8.

Brogioli's lack of independent analysis distinguishes each of Arm's cases: In *Integra Lifesciences Corp. v. HyperBranch Medical Technology, Inc.*, though the expert had not used the technology in question, he watched multiple videos depicting its "assembly and use" and spoke to "colleagues who used the" technology, in addition to reviewing technical documentation. 2018 WL 1785033, at *3 (D. Del. Apr. 4, 2018). Likewise, in *Tormenia v. First Investors Realty Co., Inc.*, the expert did more than rely on "his own experience" and facts in the record—he also applied "general principles of physical science" to support his opinions. 251 F.3d 128, 135 (3d Cir. 2000). And in *Truong v. Delta International Machinery Corp.*, the expert "conducted an investigation." 2021 WL 5441802, at *9 (D.N.J. Oct. 29, 2021). Brogioli, on the other hand, merely assumes his industry experience must translate to the Arm ACK and takes facts in the record at face value.

Arm cites 26 paragraphs from a 419-paragraph report purporting to evidence that Brogioli "performed detailed technical analyses of the documentary and testimonial evidence." D.I. 447 at 6-7 (citing D.I. 439 Ex. 2 ¶¶ 14, 18, 61, 66, 97, 152, 164-65, 182, 184-85, 190, 194-95, 215-17, 225, 286, 291, 297, 311, 313, 326, 343, 347). None do. Paragraphs 14, 18, 61, and 66 do not even relate to verification. Paragraphs 97, 152, 165, 184, 185, 216, 217, 311, and 313 present

[2] This admission undermines Brogioli's deposition testimony that "it's routine to have something that performs [the] role" of the ACK and that he has used "[s]imilar packages" for ISA compliance. D.I. 447 at 4 (quoting D.I. 449 Ex. 3 at 101:21-102:23, 104:15-25).

conclusory opinions based on purported "experience," but they do not contain any technical analysis. Paragraphs 164, 182, 225, 291, 297, and 326 only detail Brogioli's experience. Paragraphs 190, 194, 195, and 215 present evidence of what Qualcomm was able to do in the absence of the technology at issue but offer no technical analysis to support Brogioli's ultimate conclusions. And Paragraphs 286, 343, and 347 recite things already in the record.

As a last-ditch effort, Arm argues "Brogioli's technical opinions are far more robust than those of Qualcomm's economics expert, Prof. Posner, who offers unsupported technical opinions." D.I. 447 at 7. But Posner is being offered for competition-related, not technical, opinions.

**"Necessity" of Deliverables.** Arm claims Brogioli's opinion that the verification materials at issue were not "necessary" to verify an Arm CPU using the ACK is relevant to whether they are [REDACTED]. D.I. 447 at 8-9. But [REDACTED] requires Arm to [REDACTED] D.I. 444 Ex. 1 § [REDACTED]. Nothing in Annex 1 or the ALA [REDACTED], and Arm provides no support for this new reading. D.I. 469 Ex. 47 §§ [REDACTED]; Ex. 1 §§ [REDACTED]; D.I. 444 Ex. 1 § [REDACTED]. Brogioli's opinion is therefore irrelevant.

**"Nuvia-Based" Opinions.** Arm also contends that whether Qualcomm CPUs "incorporate pre-acquisition Nuvia code and are based on Nuvia designs" is relevant to Brogioli's opinion on whether the verification materials were necessary to verify an Arm CPU. D.I. 447 at 9-10. That issue from the first trial has no relevance to Qualcomm's [REDACTED] of Qualcomm CPUs following the Nuvia acquisition. Brogioli's opinion instead seeks to raise the now resolved "dispute in the first case [that] concerned whether the Phoenix-based and Pegasus-based cores were Nuvia-based cores that used code developed at Nuvia under the Nuvia ALA." D.I. 439 Ex.

2 ¶ 369. Arm points to 17 paragraphs discussing the potential re-use of verification materials provided to Nuvia, not re-use of pre-acquisition code, D.I. 447 at 9-10 (citing D.I. 439 Ex. 2 ¶¶ 285-92, 297-98, 342-48), but that does not relieve Arm of its contractual obligations to Qualcomm.

[REDACTED]. Brogioli opines that [REDACTED] [REDACTED] yet relies on just two potential [REDACTED] features listed in an out-of-date marketing presentation without reviewing the actual [REDACTED] or [REDACTED] architectures. D.I. 434 at 9. Arm states, without basis, that the features "[REDACTED]" other features in [REDACTED] or [REDACTED]. D.I. 447 at 10. Comparing hypothetical differences of just two features cannot yield a reliable opinion on a comparison between two architecture versions.

**III. Richards' Opinions Should Be Excluded.**

**Materiality.** Richards opines "Qualcomm was required to disclose the Breach Letter within its 2024 Form 10-K regardless of the publication of its contents in the Bloomberg Article." D.I. 439 Ex. 12 ¶¶ 64-68. Arm admits Richards performed no materiality analysis of his own under the relevant legal standards, and instead based his opinion entirely on Qualcomm's purported assessment that the Breach Letter, already published by Bloomberg, was material. D.I. 447 at 11-12. But the standard for materiality—and thus whether information was obligated to be disclosed (*see* D.I. 439 Ex. 12 ¶ 37)—is not whether a company subjectively perceives an already public event as material,[3] it is whether there is a substantial likelihood that the omitted disclosure "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *see*

[3] Arm's argument that Richards has not opined on Qualcomm's state of mind because his "analysis turned on objective facts" (D.I. 447 at 13) makes no sense. Richards based his opinion on evidence of what "Qualcomm perceived the Breach Letter" to be. D.I. 439 Ex. 12 ¶ 67. That goes to Qualcomm's state of mind. *Perceive*, *Black's Law Dictionary* (12th ed. 2024); *see also State of Mind*, *Black's Law Dictionary* (12th ed. 2024) ("The condition or capacity of a person's mind.").

D.I. 439 Ex. 13 at 128:16-129:6. By using the wrong standard, Richards applied no reliable methodology to support his opinion. *See SEC* v. *Ripple Labs, Inc.*, 2023 WL 5670711, at *7 (S.D.N.Y. Mar. 6, 2023) (excluding expert opinion for failure to "conduct an [materiality] assessment based on the 'total mix' of information available").

Moreover, ***Richards*** is the accounting expert, not Cristiano Amon, Qualcomm's CEO, who provides the sole evidence with which Richards supports his first opinion. *See* D.I. 439 Ex. 12 ¶ 67. Without Amon, Richards "has no real evidence" to support his opinion. *SmartSky Networks, LLC v. Gogo Bus. Aviation LLC*, 2025 WL 2972258, at *6 (D. Del. Oct. 21, 2025) (an expert may not "parrot" a fact witness "without any analysis of his own.").[4]

**Harm.** Richards' opinion that "Qualcomm's public disclosures do not convey the significant harm resulting from the Breach Letter as alleged in the Second Amended Complaint" (D.I. 439 Ex. 12 ¶¶ 69-91, 93), is not relevant. Richards' opinion rebuts an allegation Qualcomm never made and does not need to prove: that Arm's leak of the October 22 letter had a "material adverse impact." *Id.* ¶ 91. In an attempt to save Richards' opinion, Arm argues that it "squarely undermines Qualcomm's assertion that the Bloomberg article harmed Qualcomm financially" (D.I. 447 at 14), but Richards is not an expert on harm or damages, and Qualcomm suffered harm from Arm's leak even if that harm did not have a "material adverse impact." D.I. 434 at 16.[5]

## IV. Certain of Britven's Opinions Should Be Excluded.

**Repetition of Arm's Factual Allegations.** Arm misreads Qualcomm's motion to suggest

---

[4] In *TrustID, Inc. v. Next Caller Inc.*, this Court considered whether an expert could, as a matter of the case schedule, rely on a fact witness not previously disclosed. 2021 WL 3015280, at *1-2 (D. Del. Jul. 6, 2021). That bears no resemblance to the facts here.

[5] Arm argues the fit standard is lower for rebuttal witnesses. D.I. 447 at 13. But Richards is not a proper rebuttal expert (*see* D.I. 434 at 11-12), and Qualcomm did not submit an expert opinion on its SEC disclosures or whether it suffered a "material adverse impact." Arm's sole case is inapposite. *APEX Fin. Options, LLC v. Gilbertson*, 2022 WL 613347, at *3 (D. Del. Mar. 1, 2022).

that it seeks to exclude "virtually all" of Britven's testimony. D.I. 447 at 14. Not so. Britven is free, for example, to testify as to his own observations and analyses (to the extent he performs any) of Arm's third-party license agreements. But Britven should be excluded from offering three specific opinions regarding Arm's [REDACTED] that stem from undisclosed witness interviews conducted after the close of fact discovery and not any independent knowledge or expert methodology from Britven. D.I. 434 at 16-20; D.I. 439 Ex. 1. Such testimony is impermissible not only because it allows an expert to bolster a party's factual narrative while shielding fact witnesses from cross-examination, *see* D.I. 447 at 15, but also because the expert "adds nothing to" such evidence beyond transmitting it to the jury. *Rheault* v. *Halma Holdings Inc.*, 2025 WL 1866842, at *13 (D. Del. June 30, 2025).[6]



Britven should not be permitted to testify to [REDACTED]: he relies exclusively on interviews of Arm witnesses who did not identify that information in their depositions, and at his deposition, he could not even remember if his interviewees gave him the list. D.I. 434 at 17-18. Britven should also not be permitted to parrot Arm employees' view that it was not [REDACTED]. *Id.* at 17; D.I. 440 Ex. 18. ¶¶ 78, 147. Britven identifies "adjustments" [REDACTED], D.I. 440 Ex. 18 ¶ 147, and he concedes that such an apportionment could be done. Ex. 2 at 58:21-59:12.

Britven also should not be permitted to testify that, of the third-party agreements produced, [REDACTED]

[6] Arm's claim that "one or more" of the four Arm witnesses Britven interviewed will appear at trial resolves nothing. Allowing Britven to relay facts told to him in these interviews would shield from cross-examination the facts relayed to Britven by witnesses who do not come to trial, particularly given Arm's failure to provide the information at depositions. D.I. 434 at 18.



[redacted]. D.I. 434 at 16-17, 19. At his deposition, after reviewing the [redacted] agreement for more than five minutes, Britven was unable to identify where in the [redacted] agreement it conveyed that [redacted]—a fact Arm tries to explain away by claiming Britven did not have sufficient time in the deposition to read the agreement. D.I. 447 at 16; Ex. 2 at 199:23-201:22. Arm's counsel used leading questions to convey that Britven's understanding of the [redacted] agreement was based on his interview with Arm employees, [redacted] Ex. 2 at 351:10-352:21. This testimony, from Arm's counsel, not Britven, merely recites information provided by Arm absent any expert analysis or methodology. *Rheault*, 2025 WL 1866842, at *13; *see also* D.I. 434 at 19 (discussing Britven's acknowledgment that [redacted]).

**Opinions on What Was "[redacted] and "[redacted]** Arm claims that Britven's "[redacted] opinions fit the case because the [redacted] D.I. 447 at 16-17. Arm is incorrect that Section [redacted]s requirement that [redacted] can excuse its literal breaches of the provision. Pls.' Reply in Supp. of Summ. J. at 11-12. The TLA requires [redacted] D.I. 444 Ex. 2 § [redacted] (underline in original). [redacted]

Britven's "[redacted] opinions thus conflict with the contract and should be excluded. *Stone Creek Bus. Ctr., LLLP* v. *Stone Creek-Colo., LLC*, 2022 WL 4448854 at *7 (D. Colo. Sept. 23, 2022) (excluding expert testimony on whether conduct complied with industry standards in a



breach of contract case as irrelevant and likely to confuse the jury). Britven's "[redacted] opinions carry substantial risk of jury confusion because they purport [redacted]. D.I. 440 Ex. 18 ¶ 151 (opining it was [redacted]").

Although Britven recognizes that Arm identified [redacted], D.I. 440 Ex. 18 ¶ 17, he did not perform any such adjustment. Ex. 2 at 69:12-24. Nor has he supplemented his report in response to Kennedy's analysis performing the "adjustments" that Britven identifies. D.I. 444 Ex. 32 ¶¶ 82-118. Thus, Britven's "[redacted] opinion is irrelevant to Arm's compliance with the TLA and will not aid the jury's determination of any contested issue.

**Causation.** Arm contends Britven's opinions on causation should not be excluded because experts are generally permitted to testify on causation. D.I. 447 at 17-18 (collecting cases). While an expert may sometimes opine on causation, he may not do so where that testimony is unnecessary given the jury's ability to understand the evidence. *Cavi* v. *Evolving Sys. NC, Inc.*, 2018 WL 2317594, at *2 (D. Del. May 21, 2018). Britven's causation opinions rely exclusively on the timing of the revisions to the [redacted], emails between Qualcomm and [redacted], and deposition testimony of Qualcomm employees (D.I. 440 Ex. 18 ¶¶ 205-214)—evidence the jury will understand, and which relies on no expert analysis. *See In re C2R Global Manufacturing*, 2021 WL 1347209, at *4 (excluding Britven's causation opinions that do not rely on "his analysis of financial data"); *Cavi*, 2018 WL 2317594, at *2 (excluding causation testimony where jury can rely on "common sense and experience to understand" the evidence).

Additionally, Britven's opinion that Arm's conduct did not cause changes in the [redacted] term

sheet does not "refute[] the factual basis" for Kennedy's opinion or "criticize [his] damages estimates." D.I. 447 at 18. Kennedy did not opine on causation. His sole opinion is the calculation of the difference in value between the [REDACTED] term sheets. D.I. 439 Ex. 3 ¶ 125 n.317. Arm's cases are inapposite as the expert in each case challenged an opinion from the opposing expert. *Pandora Jewelers 1995, Inc.* v. *Pandora Jewelry, LLC*, 2011 WL 2295269, at *5-6 (S.D. Fla. June 8, 2011) (permitting testimony identifying other factors to consider "based on her economics experience"); *Deutsch* v. *Novartis Pharms. Corp.,* 768 F. Supp. 2d 420, 480 (E.D.N.Y. 2011) (permitting physician testimony that factors other than defendant's drug caused plaintiff's condition). Here, Britven purports to "rebut" an opinion Kennedy does not offer.

**V. Certain of Simcoe's Opinions Should Be Excluded.**

**Intent or State of Mind.** Arm attempts to characterize Simcoe's testimony regarding Arm's state of mind as either an assumption "counsel instructed Simcoe" to make or testimony regarding "the underlying facts." D.I. 447 at 24. But Arm admits Simcoe does not merely assume Arm's state of mind for the basis of his opinions; he analyzed the record and "observed that 'the evidence supports the assumption [regarding intent] that [he] make[s].'" *Id.* at 25. As the sole case cited by Arm provides, it "is well settled that experts may not provide testimony concerning the 'state of mind' or 'culpability' of [parties], corporations, regulatory agencies, and others." *Biogen Inc.* v. *Sandoz Inc.*, 2025 U.S. Dist. LEXIS 167161, at *71 (D. Del. Apr. 3, 2025).

**RISC-V and Diversion Opinions.** Arm argues that "Simcoe offers a fulsome economic analysis to justify his opinion" that RISC-V [REDACTED] [REDACTED] D.I. 447 at 19. Tellingly, Arm fails to describe what Simcoe's analysis entailed, and cannot justify his opinions on the future viability of the RISC-V architecture despite his admitted lack of "any analysis of RISC-V from a technical perspective." *Id.*; D.I. 434 at 22-23. And Arm

is wrong that Qualcomm is under a "misimpression," as Simcoe goes beyond "the inference that RISC-V [REDACTED]." D.I. 447 at 20; D.I. 440 Ex. 28 ¶ 71; D.I. 440 Ex. 29 at 112:1-21 ("[REDACTED]"), 121:12-122:9.

Similarly, Arm glosses over Simcoe's lack of analysis to support his diversion pathway theories, contending that Simcoe is "not attempting to accurately forecast future diversion." D.I. 447 at 21. But if Simcoe's opinion about "possible" diversion that "might" materialize is not intended to "accurately forecast," *id.*, it has no purpose. Posner is not similarly situated: his testimony is based on his economic assessment of the industry ***now***. D.I. 439 Ex. 4 ¶¶ 67-72.

**Total Revenue and R&D.** Arm contends Simcoe's sweeping conclusions about the lack of harm to Qualcomm based on broad summary revenue data are reliable because Simcoe additionally parrots generalized profit data and Qualcomm's marketing materials. D.I. 447 at 22. But, Simcoe performs no analysis to "isolate the effect of Arm's conduct" on Qualcomm's total operating profit.[7] D.I. 447 at 22; D.I. 434 at 24. And it is hardly surprising that Qualcomm's press and marketing materials praise Qualcomm's performance. D.I. 447 at 22. Similarly, Arm contends Simcoe's opinions based on Arm's total R&D expenditure, are reliable because Simcoe also recites additional summary data and conclusory assertions, including that Arm's "current high shares do not guarantee future shares" without any supporting analysis. D.I. 447 at 23-24. An expert is not required to read Qualcomm's 10-K to the jury and an "expert cannot simply narrate internal documents and form a conclusion evident to a lay person from their face." *Allscripts Healthcare, LLC* v. *Andor Health, LLC*, 2022 WL 3021560, at *42 (D. Del. July 29, 2022).

[7] Arm's argument that Qualcomm conducted similar analysis in the prior litigation is unavailing. There, Arm alleged specific performance was warranted by immediate and irreparable harm to the ecosystem. Ex. 3 at 8-9. Here, the harm alleged or assessed is not readily apparent in summary financials.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Travis Murray (#6882)
Ben Yenerall (#7132)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com
byenerall@morrisnichols.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
Jenifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

Catherine Nyarady
Anish Desai
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
(628) 432-5100

November 14, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 14, 2025, upon the following in the manner indicated:

Anne Shea Gaza, Esquire — *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire — *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire — *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
Sydney D. Gaskins, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017
*Attorneys for Defendant*

Kyle W.K. Mooney, Esquire — *VIA ELECTRONIC MAIL*
Alexandra Corrinne Hottenrott, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
*Attorneys for Defendant*

Erik J. Olson, Esquire *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
*Attorneys for Defendant*

Daniel P. Muino, Esquire *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
*Attorneys for Defendant*

Brian M. Kramer, Esquire *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, CA 92130
*Attorneys for Defendant*

William Frentzen, Esquire *VIA ELECTRONIC MAIL*
Daralyn J. Durie, Esquire
Shaelyn Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX 78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C. *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
*Attorneys for Defendant*

Jay Emerick, Esquire
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Peter Evangelatos, Esquire
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

*/s/ Jennifer Ying*

Jennifer Ying (#5550)