# Exhibit 1

# ANNEX 1

# QUALCOMM GLOBAL TRADING PTE, LTD.



Qualcomm

CONFIDENTIAL                                        QCARM_0343954

# Exhibit 2

Page 1

1

2    IN THE UNITED STATES DISTRICT COURT

     FOR THE DISTRICT OF DELAWARE

3    C.A. No. 24-490-MN

     ----------------------------------------x

4    QUALCOMM INCORPORATED, a Delaware

     corporation, QUALCOMM TECHNOLOGIES, INC.,

5    a Delaware corporation,

6                         Plaintiffs,

7         - against -

8    ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K.

     corporation

9

                         Defendant.

10   ----------------------------------------x

11                   October 3, 2025

                     9:02 a.m.

12

13

14            *HIGHLY CONFIDENTIAL*

15

16       VIDEOTAPED DEPOSITION of THOMAS

17   BRITVEN, held at the offices of PAUL WEISS

18   RIFKIND WHARTON & GARRISON, LLP, located at

19   1285 Avenue of the Americas, New York, New

20   York 10019, before Anthony Giarro, a

21   Registered Professional Reporter, a Certified

22   Realtime Reporter and a Notary Public of the

23   State of New York.

24

25



Page 58

1  THOMAS BRITVEN -- HIGHLY CONFIDENTIAL
2  things that are going on. And I don't
3  think Dr. Kennedy is accounting for those
4  things, including, for example, the
5  differences between      and Qualcomm.
6  So      -- I'm sorry.
7      and -- that's right.     and
8  Qualcomm. So, for example,
9    , and Qualcomm    And there are
10 some other things listed in my report.
11 Q    So how would you do an
12 apportionment --
13     MR. EVANGELATOS: Objection.
14 Q    -- of the license fees in
15 the      agreement?
16
17
18
19
20
21 Q    You don't disagree that an
22 apportionment analysis can be conducted;
23 correct?
24     MR. EVANGELATOS: Objection,
25 form.

Page 59

1  THOMAS BRITVEN -- HIGHLY CONFIDENTIAL
2  A    For what purpose?
3  Q    Putting aside the purpose,
4  you agree that an apportionment analysis
5  can be conducted of the    license
6  fee; correct?
7     MR. EVANGELATOS: Objection,
8  form.
9  A    Any apportionment analysis
10 can be done. The one that Dr. Kennedy
11 did, I don't understand the context of
12 your question.
13 Q    You disagree with the way
14 Dr. Kennedy conducted the apportionment
15 analysis, but you agree that an
16 apportionment analysis can be conducted
17 of the    license fee; correct?
18     MR. EVANGELATOS: Objection,
19 form.
20 A    I don't understand the
21 question well enough to answer it. Can
22 be performed, for what purpose, in what
23 context?
24 Q    So I want to --
25 A    To do what?

Page 60

1  THOMAS BRITVEN -- HIGHLY CONFIDENTIAL
2  Q    In your report --
3  A    I'm asking a question. To
4  do what?
5  Q    I'm asking the questions.
6  A    Okay.
7  Q    You discuss ways that an
8  apportionment analysis can be conducted
9  in your report; correct?
10 A    Yes.
11 Q    Let's go to that. Let's go
12 to paragraph 147 of your report.
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 61

1  THOMAS BRITVEN -- HIGHLY CONFIDENTIAL
2
3
4
5
6
7
8
9
10
11
12
13
14

19
20

24
25

16 (Pages 58 - 61)



Page 66

1    THOMAS BRITVEN -- HIGHLY CONFIDENTIAL
2    Q    There's a better way, in
3    your opinion, doing an apportionment
4    analysis of the ▮▮▮▮ license fee than
5    the way Dr. Kennedy does it in your view;
6    correct?
7    A    Correct. So I think there's
8    a better way.

Page 67

1    THOMAS BRITVEN -- HIGHLY CONFIDENTIAL

16    Q    Going back to the question
17    of an apportionment analysis, Dr. Kennedy
18    conducted an apportionment analysis;
19    correct?
20    A    He attempted to. It's
21    incomplete and inaccurate.
22    Q    And you agree that one can
23    attempt to do an apportionment analysis
24    of the ▮▮▮▮ license fee; correct?
25    A    One can attempt to do that,

Page 68

1    THOMAS BRITVEN -- HIGHLY CONFIDENTIAL
2    yes.
3    MS. ZAPPALA: We've been
4    going for over an hour. Why don't we
5    take a break.
6    MR. EVANGELATOS: A break
7    okay with you or you want to keep
8    going?
9    THE WITNESS: No. That's
10    fine.
11    THE VIDEOGRAPHER: Off the
12    record 10:13, ending Media Unit
13    No. 1.
14    (A short recess was taken.)
15    THE VIDEOGRAPHER: On the
16    record 10:26, starting Media Unit
17    No. 2.
18    Q    Mr. Britven, before the
19    break, we were talking about
20    paragraph 147 of your report.
21    A    147, yes, ma'am.
22    Q    And in this paragraph, ▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮; correct?

Page 69

1    THOMAS BRITVEN -- HIGHLY CONFIDENTIAL
2    MR. EVANGELATOS: Objection,
3    form.
4    A

11    Q    Right.
12    So you say
15    correct?
16    A    Correct.
17    Q
; correct?
20    A
.
25    Q    And earlier, you testified

18 (Pages 66 - 69)



Page 198

1    THOMAS BRITVEN -- HIGHLY CONFIDENTIAL
2    Q      I want to go to Exhibit 7
3    which is the ███████ ███.
4    A      Yes, ma'am.
5    Q      Then if you go to Footnote
6    281 of your report --
7         MR. EVANGELATOS: It's
8    page 50.
9    A      Oh. So here, I'm
10   referencing an interview relative to some
11   aspect of this ██ So maybe I did talk
12   to the ARM people about it.
13   Q      But you don't remember
14   Mr. Bhatnagar telling you that
███████████████████████████
███████████████████████████
██████████████████████
██████████████████? You don't remember that?
20        MR. EVANGELATOS: Objection,
21   form.
22   A      I had a difficult time
23   capturing everything you said; however,
24   it looks like I'm citing to an interview
25   relative to Footnote 281 that describes

Page 199

1    THOMAS BRITVEN -- HIGHLY CONFIDENTIAL
2    the topic here. I understand that
3    ████████████████████████
5    with ███████████ including
6    ████ and ███, and that if █████ was
7    ██████████████████████████
8    ██████████████████████,
9    and the citation includes a reference to
10   my interview.
11   Q      And then you also cite,
12   according to the footnote, the ████████
13   license agreement which is Exhibit 7;
14   correct?
15   A      Yes, based upon what I'm
16   seeing in this page, I likely talk
17   to the ARM folks about ████ I don't
18   know that that answers your question, if
19   that was determinative in terms of
20   ██████████ as the ██████████
21   ████ But it looks like it was part of
22   the discussion.
23   Q      And going to Exhibit 7,
24   which you cite as the basis for the █████
25   royalty rate being █ percent

Page 200

1    THOMAS BRITVEN -- HIGHLY CONFIDENTIAL
2    ██████████████ can you tell me
3    where it says that in the ██████ license
4    agreement?
5    A      Where it says that in the
6    agreement?
7    Q      Yes.
8    A      Okay. So I reference ██ and
9    ██
10   Q      Mr. Britven, are you not
11   able to identify where --
12        MR. EVANGELATOS: He's
13   reading the agreement. Let him
14   finish. And then he'll answer your
15   question.
16        MS. ZAPPALA: He's using
17   record time.
18        MR. EVANGELATOS: You asked
19   him a question. You asked him to
20   review the document. So he's doing
21   that. So let's give him another
22   couple of minutes. And then let him
23   answer.
24        MS. ZAPPALA: Let the record
25   reflect Mr. Britven has been looking

Page 201

1    THOMAS BRITVEN -- HIGHLY CONFIDENTIAL
2    at this agreement for quite some
3    time.
4         MR. EVANGELATOS: And let
5    the record reflect that counsel asked
6    him to do that.
7         MS. ZAPPALA: I asked him to
8    identify where in the agreement the
9    royalty rate was █ percent.
10        MR. EVANGELATOS: Which
11   requires you to read the document.
12   Keep going. Go ahead if you can
13   answer the question.
14   A      I looked at this footnote
15   before. I can't seem to find it
16   currently.
17   Q      Okay.
18   A      I know it's in here. But
19   it's not coming back to me, how we got
20   there. So I don't think I can do this
21   right now. I don't want to waste any
22   more of your time on the record.
23   Q      So your understanding is
24   ██████████████ as the █████████
25   ████████ for █████ based on this

51 (Pages 198 - 201)

Page 350

1    THOMAS BRITVEN -- HIGHLY CONFIDENTIAL
2    A    That was my initial job for
3    a couple of years out of college.
4    Q    Do you recall being asked
5    today, some questions about whether you
6    ever examined specific cores that
7    Qualcomm or combinations of cores that
8    Qualcomm puts in an SoC?
9         MS. ZAPPALA:  Objection to
10   form.
11   A    Only generally in terms of
12   kind of what goes into each core and how
13   the total compute.  Is that where you're
14   going with your question?
15   Q    Well, let me ask a different
16   question.
17   A    Yes.
18   Q    Are you offering any
19   technical opinions regarding the contents
20   of any Qualcomm SoCs in this case?
21   A    No.
22   Q    Do you recall today a few
23   times, you were asked about the ▮▮▮▮▮
24   agreement, and you were asked to review
25   the ▮▮▮▮▮ agreement to talk about where

Page 351

1    THOMAS BRITVEN -- HIGHLY CONFIDENTIAL
2    in that agreement, there may have been a
3    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4    royalty rate is ▮▮▮▮▮▮▮▮
5    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮?
6         MS. ZAPPALA:  Objection to
7    form.
8    A    Yes.  I remember looking at
9    that.
10   Q    And so let's take a look at
11   your report real quick and specifically
12   to Footnote 281.  Let me know when you're
13   there.
14   A    I'm there.  This is part of
15   that ▮▮▮▮ license discussion.
16   Q    So do you remember being
17   asked about Footnote 281 today?
18   A    Yes.  And I was specifically
19   asked to identify where in the ▮▮▮▮
20   agreement, there was a ▮▮▮ royalty rate.
21   Q    And so you looked at the
22   document itself; right?
23   A    Correct.
24   Q    Now, was your analysis of
25   the ▮▮▮▮ agreement informed by any

Page 352

1    THOMAS BRITVEN -- HIGHLY CONFIDENTIAL
2    other evidence in this case?
3    A    My interview with
4    Mr. Bhatnagar, as well as interrogatory
5    responses and other things.
6    Q    And was that interview with
7    just Mr. Bhatnagar or were there others
8    present as well?
9    A    There would have been others
10   present.
11   Q    That's Mr. Youssef?
12   A    Yes.
13   Q    And Mr. Shivashankar?
14   A    Correct.
15   Q    So the interview you had
16   with those three individuals also was
17   part of the basis for your opinions
18   regarding the ▮▮▮▮ agreement; fair?
19   A    From my understanding of the
20   ▮▮▮▮ agreement, yes, especially
21   relative to the ▮▮▮ ▮▮▮▮.
22   Q    Do you remember also
23   generally being asked about specifically
24   whether ARM faced risk and considered
25   whether it faced risk when it made an

Page 353

1    THOMAS BRITVEN -- HIGHLY CONFIDENTIAL
2    offer to Qualcomm?
3         MS. ZAPPALA:  Objection to
4    form.
5    A    Yes.  That was a topic of
6    conversation during the deposition.
7    Q    And I apologize.  I don't
8    remember the specific page that that
9    bullet is on.
10   A    It was the last bullet in a
11   series.
12   Q    If you know where that is,
13   if you could take us there, I'd
14   appreciate that.  I guess 172.  I guessed
15   correct.  172, let's go there.
16   A    Yes.
17   Q    What type of risk were you
18   referring to here when you made this
19   comment in your report?
20   A    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Working

89 (Pages 350 - 353)

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARM LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1146 (MN) |
| | ) | |
| QUALCOMM INC., QUALCOMM | ) | **CONFIDENTIAL – FILED UNDER** |
| TECHNOLOGIES, INC. and NUVIA, INC., | ) | **SEAL** |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
<u>MOTION FOR SUMMARY JUDGMENT</u>**

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Brian Shiue
Anna P. Lipin
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Anna R. Gressel
Madalyn G. Vaughn
Jacob A. Braly
Alexander M. Butwin
Samantha Mehring
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

July 10, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*

he discusses "have not yet transpired." Ex. 16 at ¶¶ 14, 39; Ex. 17 at 83:3–87:4, 181:15–182:3. In light of the testimony from Arm's executives and expert, Arm cannot credibly argue that it suffered any concrete injury caused by Defendants' alleged breach.  *See*, *also* Ex. 43 at 60:8 – 61:1.

### 2.    *Arm's Theories of Future Injury Are Inadequate*

Once the elements for a breach of contract have been established, California courts may award the remedy of specific performance where the plaintiff shows, among other things, that a party lacks "an adequate remedy by way of an action in damages for breach of contract." *Wilkison* v. *Wiederkehr*, 124 Cal. Rptr. 2d 631, 640 (Ct. App. 2002). California courts recognize limited situations in which damages are an inadequate remedy for breach of contract. Damages may be inadequate in light of "the unique nature of the property" at issue or "its lack of a determinable market value." Witkin § 800. Damages may also be inadequate where "an accurate assessment of damages would be far too difficult and require much speculation." *Tamarind Lithography Workshop, Inc.* v. *Sanders*, 193 Cal. Rptr. 409, 412 (Ct. App. 1983); *see Union Oil Co. of Cal.* v. *Greka Energy Corp.*, 80 Cal. Rptr. 3d 738, 741–43 (Ct. App. 2008) ("palpable risk" of groundwater contamination, gas leaks, third-party liability, and public-image deterioration subjected Unocal to "substantial and continuing exposure to third party liability"). Where specific performance is unavailable, so too are damages incidental to specific performance. *Paratore* v. *Perry*, 48 Cal. Rptr. 682, 685 (Ct. App. 1966); *Rose* v. *Lawton*, 29 Cal. Rptr. 844, 847 (Ct. App. 1963).

Even if Arm had established the elements for a claim of breach of contract, Arm cannot justify a request for a remedy of specific performance.  To support a claim for specific performance, Arm asserts hypothetical future injuries. None suffices: each is speculative and can be remedied with money damages.

Arm's expert, Todd Schoettelkotte discusses five categories of potential harms Arm "may" or "could" experience in the future: potential harm to (1) Arm's "licensing ecosystem"; (2) Arm's

"first mover advantage" from competition; (3) Arm's expansion into the server market, which was allegedly hampered when Nuvia's acquisition diverted its efforts to develop an Arm-compliant core for servers; (4) Arm's investment in research and development; and (5) Arm's reputation and goodwill. Ex. 18 at ¶¶ 71–136. Schoettelkotte offers the opinion that money damages are not adequate to remedy those "harms" that Arm might suffer in the future if specific performance is not awarded. *Id.* at ¶ 14; Ex. 16 at ¶¶ 14, 39, 50.[2] In offering that opinion, he is not opining as an expert that Defendants harmed Arm or will cause it future harm, he is identifying future harms claimed by Arm and opining on the issue of whether monetary damages can be adequate. Ex. 17 at 38:12–41:18. And he is relying on statements from Arm witnesses expressing concern about how Defendants' alleged breach might affect Arm in the future and then opining on whether an award of damages would remedy such alleged harms. *Id.*

There is no record evidence that any of the potential harms cited by Schoettelkotte are likely to arise. Schoettelkotte made clear that he is not opining on the probability of any future harms occurring. Ex. 17 at 90:12–92:2, 135:3–10, 142:4–14, 144:14–146:12, 176:2–7. No such harms materialized after Qualcomm launched its Arm-compliant microprocessors in October 2023. And the primary "evidence" Schoettelkotte relies on is speculation by Arm witnesses. *E.g.*, Ex. 18 at ¶¶ 72–136 & nn.184–330. That speculation is not enough to survive summary judgment. *See Halsey* v. *Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014).

Arm also has not shown that damages are inadequate to remedy its possible future harms. Schoettelkotte does not opine that a breach of the Nuvia ALA by itself would mean that money damages are inadequate; instead, he states that an alleged breach would have to be combined with

---

[2] Defendants are moving to exclude Schoettelkotte's report under *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). If his report is excluded, it should be disregarded for purposes of summary judgment. Fed. R. Civ. P. 56(c)(2).

an order of this Court denying specific performance. Ex. 18 at ¶ 14; Ex. 16 at ¶¶ 14, 39, 50; Ex. 17 at 84:22–85:2. But in opining on the effect of the Court's potential future order, Schoettelkotte admits that he lacks any knowledge of how Arm licensees would react to an award of money damages, as opposed to an order of specific performance, or even if licensees know what relief Arm is seeking in this case. Ex. 17 at 106:17–108:15, 109:21–110:14, 140:13–142:3. And with respect to competitive harm, lost profits or royalties are the very sort of knowable and quantifiable damages typically awarded in intellectual-property disputes—as Schoettelkotte has conceded. *Id.* at 52:24–56:2; *Versata Software, Inc.* v. *SAP Am., Inc.*, 717 F.3d 1255, 1263–64, 1267 (Fed. Cir. 2013); *Green River Bottling Co.* v. *Green River Corp.*, 997 F.2d 359, 363 (7th Cir. 1993). Arm thus cannot show lack of an adequate remedy at law, nor can it show injury.

## B.     Qualcomm Is Not a Party to the Nuvia ALA

A defendant cannot be liable for breaching a contract to which it is not a party. *See, e.g.*, *Tiffany & Co.* v. *Spreckels*, 262 P. 742, 747 (Cal. 1927); *Tri-Continent Int'l Corp.* v. *Paris Sav. & Loan Ass'n*, 16 Cal. Rptr. 2d 508, 511 (Ct. App. 1993). The Nuvia ALA lists only Arm Limited and Nuvia, Inc., as parties; it does not list Qualcomm. *See* Ex. 5 at 1; *see also id.* at § ████████ ████████████████████████.[3] Recognizing that problem, Arm alleges that "Qualcomm is subject to Nuvia's termination requirements as the acquirer of Nuvia." D.I. 1 at ¶ 43. There is no evidence that Nuvia assigned the Nuvia ALA to Qualcomm.

Nor did Qualcomm's acquisition of Nuvia transfer the Nuvia ALA to Qualcomm by operation of law. Qualcomm acquired Nuvia through a reverse triangular merger. Under the merger agreement, governed by Delaware law, a wholly owned subsidiary of Qualcomm merged with and into Nuvia, with Nuvia surviving as a wholly owned subsidiary of Qualcomm and the

---

[3] At the time, Nuvia was independent and unrelated to Qualcomm. *Compare* Ex. 5 at 1 (effective date of Sept. 27, 2019), *with* Ex. 19 (executed Jan. 12, 2021).

product "incorporating any of the ARM Technology"). Dhar tries to avoid that problem by asserting that "compliance" requires verification through Arm's testing suite. Ex. 32 at ¶ 117; Ex. 33 at ¶ 23. But even assuming *Qualcomm* and *Arm* understood compliance that way, there is no evidence that *Qualcomm's current and potential customers* would understand it that way. Accordingly, even if admissible, Dhar's reports do not create a fact issue on whether Qualcomm's use of the ARM marks would have confused its customers concerning Qualcomm's relationship with Arm.

### VII.    CONCLUSION

The motion for summary judgment should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Brian Shiue
Anna P. Lipin
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Anna R. Gressel
Madalyn G. Vaughn
Jacob A. Braly
Alexander M. Butwin
Samantha Mehring
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

*/s/ Jennifer Ying*

_____
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*

July 10, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 5, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Samantha G. Wilson, Esquire<br>YOUNG, CONAWAY, STARGATT & TAYLOR LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Joyce Liou, Esquire<br>Lydia Davenport, Esquire<br>Daralyn J. Durie, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA  94105<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Erik J. Olson, Esquire<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, CA  94304<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>Sarah E. Brickey, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO  80202-5638<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

Daniel P. Muino, Esquire                          *VIA ELECTRONIC MAIL*
Reebehl G. El-Hage, Esquire
David Nathaniel Tan, Esquire
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C.  20037
*Attorneys for Plaintiff*

Nicholas Rylan Fung, Esquire                       *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
*Attorneys for Plaintiff*

Kyle W.K. Mooney, Esquire                          *VIA ELECTRONIC MAIL*
Kyle D. Friedland, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Plaintiff*

Michael J. DeStefano, Esquire                      *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
600 Brickell Avenue, Suite 1560
Miami, FL  33131
*Attorneys for Plaintiff*

/s/ Jennifer Ying
_____

Jennifer Ying (#5550)