# EXHIBIT 1

# EXHIBIT 2

# EXHIBIT 3

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**FORM 20-F**

**(Mark One)**

☐ **REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR (g) OF THE SECURITIES EXCHANGE ACT OF 1934**

**OR**

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended March 31, 2025**

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**OR**

☐ **SHELL COMPANY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

Date of event requiring this shell company report _____

For the transition period from _____ to _____

**Commission File Number: 001-41800**

# Arm Holdings plc

(Exact name of registrant as specified in its charter)

**England and Wales**

(Jurisdiction of incorporation or organization)

**110 Fulbourn Road**
**Cambridge CB1 9NJ**
**United Kingdom**
**Tel: 44 (1223) 400 400**

(Address of principal executive offices)

**Spencer Collins**
**Arm Holdings plc**
**110 Fulbourn Road**
**Cambridge CB1 9NJ**
**United Kingdom**
**Tel: 44 (1223) 400 400**

(Name, Telephone, E-mail and/or Facsimile number and Address of Company Contact Person)

**Securities registered or to be registered pursuant to Section 12(b) of the Act:**

On April 18, 2024, Qualcomm brought a new action in Delaware against us, asserting claims that were rejected for inclusion in the original action. In this new action, Qualcomm asserted that we failed to satisfy certain delivery obligations under Qualcomm's Architecture License Agreement with us (the "Qualcomm ALA"). On December 16, 2024, Qualcomm amended its complaint to add allegations relating to an Arm notice of breach of the Qualcomm ALA and related tort and anti-competition claims. On March 7, 2025, Qualcomm indicated that it planned to seek leave to amend its complaint again to add claims relating to an alleged breach of Qualcomm's Technology Licensing Agreement with us. We disagree with the assertions made by Qualcomm in this action and intend to vigorously defend against them. The case is currently set for trial on March 9, 2026.

We can provide no assurances regarding the outcome of either litigation or how the litigation will affect our relationship with or revenue from Qualcomm, which is currently a major customer of ours and accounted for 10% of our total revenue for the fiscal year ended March 31, 2025. These cases will likely require significant legal expenditures going forward and may also require substantial time and attention from our executives or employees, which could distract them from operating our business. Further, we are subject to antitrust laws and regulations in multiple jurisdictions, which could subject us to investigations by antitrust regulators. Our involvement in litigation with Qualcomm or in any antitrust investigation could cause us to incur significant reputational damage in the industry, in our relationship with Qualcomm or in our relationship with other third-party partners.

These matters can be time-consuming, divert management's attention and resources, and cause us to incur significant expenses. Any allegations made in the course of regulatory or legal proceedings may also harm our reputation, regardless of whether there is merit to such claims.

***Errors, defects, bugs or security vulnerabilities in or associated with our products could expose us to liability and damage our brand and reputation, which could harm our competitive position and result in a loss of market share.***

Our products have in the past and could have a substantial technical flaw or an undetected design error, which could result in unanticipated costs. Our products are used in billions of consumer and enterprise products across a wide range of industries, and many of these products are depended on by individuals and businesses. We use third-party AI software products in our business, including use by our engineers. AI software products rely on extracting and processing data from various sources, including third parties, and new training methods, and the resulting products offered by us or our customers may contain unknown or undetected defects and errors, or reflect unintended bias. The discovery of any design defect, fault or bug associated with our products, as well as any ensuing litigation or claims for indemnification could adversely affect our reputation and our relationships with partners, thereby having a material adverse effect on our business, results of operations, financial condition and prospects. Any such defects, faults or bugs could cause us to lose customers, increase our service costs, subject us to liability for damages or divert our resources from other tasks, any one of which could materially and adversely affect our business, results of operations, financial condition and prospects. The ramifications of a design defect, fault, or bug may be further exacerbated by the fact that many of our products are based on a common architecture and our new architecture products often are based on legacy products. Accordingly, a design defect, fault, or bug may affect multiple end products that are based on the same products, thereby potentially exposing us to additional liability and requiring additional resources to remedy the error.

In addition, our software could contain errors, defects or bugs, especially when first introduced or when new versions are released. Product errors, including those resulting from third-party suppliers and open-source vendors, could affect the performance or interoperability of our products, could delay the development or release of new products or new versions of products and could adversely affect market acceptance or perception of the quality and attractiveness of our products. Any such errors or delays in releasing new products or new versions of products, or allegations of unsatisfactory performance, could cause us to lose customers, increase our service costs, subject us to liability for damages or divert our resources from other tasks, any one of which could materially and adversely affect our business, results of operations, financial condition and prospects.

Security vulnerabilities have previously been, and may in the future be, identified in our products, and it is possible that vulnerabilities may not be mitigated before they become known. Publicity related to any such security vulnerabilities, whether accurate or inaccurate, and any attempted or successful exploitation of such vulnerabilities, may cause increased third-party attempts to identify additional security vulnerabilities or could result in litigation, indemnification or other regulatory actions or inquiries, which could harm our brand and have an adverse effect on our business and results of operations and financial performance.

# EXHIBIT 4

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**FORM 20-F**

**(Mark One)**

☐ **REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR (g) OF THE SECURITIES EXCHANGE ACT OF 1934**

**OR**

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended March 31, 2024**

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**OR**

☐ **SHELL COMPANY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

Date of event requiring this shell company report _____

For the transition period from _____ to _____

**Commission File Number: 001-41800**

# Arm Holdings plc

(Exact name of registrant as specified in its charter)

**England and Wales**

(Jurisdiction of incorporation or organization)

**110 Fulbourn Road**
**Cambridge CB1 9NJ**
**United Kingdom**
**Tel: 44 (1223) 400 400**

(Address of principal executive offices)

**Spencer Collins**
**Arm Holdings plc**
**110 Fulbourn Road**
**Cambridge CB1 9NJ**
**United Kingdom**
**Tel: 44 (1223) 400 400**

(Name, Telephone, E-mail and/or Facsimile number and Address of Company Contact Person)

**Securities registered or to be registered pursuant to Section 12(b) of the Act:**

common architecture and our new products are often based on legacy products, adverse events related to our IP may have a more significant impact on us than if our products were less related.

***We may be sued by third parties for alleged infringement, misappropriation or other violation of their IP rights or proprietary rights and our defense against these claims can be costly.***

We have in the past been and may in the future be subject to claims by third parties alleging our infringement, misappropriation or other violation of third-party IP rights, including patent rights, or misuse of third-party confidential information. Under our customer agreements, we agree in some cases to indemnify our customers if a third party files a claim in court or another venue asserting that our products infringe such third party's IP rights. Although we do not agree to indemnify our customers' end customers, such end customers may be subject to infringement claims and may initiate claims against us as a result. Claims alleging infringement, misappropriation or other violation of third-party IP rights can result in costly and time-consuming litigation (regardless of their validity or merit), require us to enter into royalty or licensing arrangements, subject us to damages or injunctions restricting the sale of our products, result in the invalidation of a patent or family of patents, require us to refund license fees to our customers or to forgo future payments or require us to redesign or rebrand certain of our products, any one of which could have a material adverse effect on our business, results of operations, financial condition and prospects.

In addition to the time and expense required for us to satisfy our support and indemnification obligations to our customers and partners, any litigation could severely disrupt or shut down the business of our customers and partners, which in turn could damage our relations with them and have a material adverse effect on our business, reputation, results of operations, financial condition and prospects.

***We are currently involved in pending litigation.***

From time to time, we are involved in various legal, administrative and regulatory proceedings, claims, demands and investigations relating to our business, which may include claims with respect to commercial, product liability, IP, cybersecurity, privacy, data protection, antitrust, breach of contract, labor and employment, whistleblower, mergers and acquisitions and other matters. We are involved in pending litigation, including, but not limited to, lawsuits with Qualcomm Inc. and Qualcomm Technologies, Inc. (together "Qualcomm") and Nuvia, Inc. ("Nuvia"). In addition, our products are involved in pending litigation to which we are not a party. We cannot provide you any assurances regarding how any such litigation will be resolved, what benefits we will obtain or what losses we might incur.

On August 31, 2022, we sued Qualcomm and Nuvia in the U.S. District Court for the District of Delaware, on the basis that Qualcomm and Nuvia: (i) breached the termination provisions of Nuvia's Architecture License Agreement (the "Nuvia ALA") with us by failing to destroy technology Nuvia developed under the Nuvia ALA, which we terminated in March 2022 based on Nuvia's failure to obtain our consent to the assignment of the Nuvia ALA to Qualcomm; and (ii) will infringe our trademarks if Qualcomm uses them in connection with the Nuvia technology which is subject to a destruction obligation under the Nuvia ALA. Our complaint seeks, among other things, specific performance of the Nuvia ALA termination provisions to require Qualcomm and Nuvia to stop using and to destroy the relevant Nuvia technology, and to stop their improper use of our trademarks with their related products. We also seek declaratory judgment, injunctive relief and damages relating to Qualcomm's and Nuvia's breach of contract and infringement of our trademarks in connection with the relevant Nuvia technology. Qualcomm originally responded and brought a counterclaim against us seeking a declaratory judgment that after Qualcomm's acquisition of Nuvia, Qualcomm's proposed products are fully licensed from us under its separate license agreements with us and that it has complied with its contractual obligations to us and Nuvia did not breach the Nuvia ALA. On March 6, 2024, the Court denied-in-part Qualcomm's motion to amend its counterclaims, but allowed Qualcomm to raise a new claim alleging that Arm breached the termination provisions of the Nuvia ALA by continuing to use Nuvia confidential information following termination. The original claims are currently in the expert discovery phase, while the newly-added claims are currently in the fact discovery phase, with trial set for December 2024. On April 18, 2024, Qualcomm brought a new action in Delaware against Arm, asserting claims that were rejected in the Court's decision on March 6, 2024. In this new action, Qualcomm asserts that Arm failed to satisfy certain delivery actions. Qualcomm seeks to have us comply with contractual obligations that we allegedly breached, damages and additional relief. We disagree with each of the assertions made by Qualcomm (as referred to above) and intend to vigorously defend against them. We can provide no assurances regarding the outcome of either litigation or how the litigation will affect our relationship with ==Qualcomm, which is currently a major customer of ours and accounted for 10% of our total revenue for the fiscal year ended March 31, 2024.== These cases will likely require significant legal expenditures going forward and may also require substantial time and attention from our executives or employees, which could distract them from operating our business. In addition, our involvement in such litigation could cause us to incur significant

# EXHIBIT 5

Page 1

1

2     IN THE UNITED STATES DISTRICT COURT
      FOR THE DISTRICT OF DELAWARE
3     C.A. No. 24-490-MN
      ----------------------------------------x
4     QUALCOMM INCORPORATED, a Delaware
      corporation, QUALCOMM TECHNOLOGIES, INC.,
5     a Delaware corporation,
6                       Plaintiffs,
7          - against -
8     ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K.
      corporation
9
                          Defendant.
10
      ----------------------------------------x
11
                      June 20, 2025
12                    9:20 a.m.
13
14                ███████████████
15          *ATTORNEYS' EYES ONLY*
16
17         VIDEOTAPED DEPOSITION of MARTIN
18    WEIDMANN, held at the offices of PAUL WEISS
19    RIFKIND WHARTON & GARRISON, LLP, located at
20    1285 Avenue of the Americas, New York, New
21    York 10019, before Anthony Giarro, a
22    Registered Professional Reporter, a Certified
23    Realtime Reporter and a Notary Public of the
24    State of New York.
25



Page 206

1 MARTIN WEIDMANN -- CONFIDENTIAL -- ATTORNEYS' EYES
     ONLY
2 were acquired. We went from being a
3 public company, for example, to being a
4 private company. I'm not sure exactly
5 which of the things we were doing
6 differently because we were acquired as
7 opposed to just because the world was
8 changing.
9     Q    Do you feel that SoftBank
10 has pressured ARM to focus on increasing
11 its revenue and profits?
12        MR. EMERICK: Objection,
13    form.
14    A    ARM is a business. I think
15 it's always been interested in growing
16 its revenues and profits.
17    Q    Do you think that that has
18 changed following SoftBank's acquisition?
19        MR. EMERICK: Objection,
20    form.
21    A    I'm not sure I'm qualified
22 to really answer.
23    Q    Do you think that the IPO
24 changed ARM's business focus?
25        MR. EMERICK: Objection,

Page 207

1 MARTIN WEIDMANN -- CONFIDENTIAL -- ATTORNEYS' EYES
     ONLY
2    form.
3    A    I'm sorry. I'm thinking.
4 Again, there are a lot of changes, which
5 of them are because we are IPO'd and
6 which of them are because the world is
7 changing. We have all new markets and
8 all new opportunities to go after. I'm
9 not sure I could point to which one is
10 which.
11    Q    I wanted to circle back on
12 one of the things we were discussing
13 earlier. We were talking about the
14 withholding of the OOB testing results
15 and the ACK patches.
16        I wanted to ask you, do you
17 know if ARM was withholding OOB testing
18 results from Qualcomm
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮?
20        MR. EMERICK: Objection,
21    form.
22    A    So as previously discussed,
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Page 208

1 MARTIN WEIDMANN -- CONFIDENTIAL -- ATTORNEYS' EYES
     ONLY
2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6 ▮▮▮▮▮▮▮▮▮▮▮▮▮
7 ▮▮▮▮▮▮▮▮▮▮
8 ▮▮▮▮▮▮▮▮▮
9 ▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮
12    Q    But I'm not asking about the
13 ▮▮▮▮
14        I'm just asking, are you
15 aware that ARM was withholding OOB test
16 results from Qualcomm ▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮▮▮▮?
18        MR. EMERICK: Objection,
19    form.
20    A    So we're working in
21 accordance with ▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮▮▮

Page 209

1 MARTIN WEIDMANN -- CONFIDENTIAL -- ATTORNEYS' EYES
     ONLY
2 ▮▮▮▮▮▮.
3    Q    Are you saying that ARM ▮▮
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮▮▮▮?
7    A    I'm saying that we weren't
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮.
11    Q    So you were also not
    ▮▮▮▮▮▮▮▮?
14    A    The ACK documentation does
15 describe how it can be configured. And
16 partners are able to configure that
17 themselves. ▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮
20    Q    But I guess I'm asking, from
21 your knowledge as a 30(b)(6) witness on
22 this topic, are you aware that ARM was
23 withholding OOB testing results from
24 Qualcomm?
25        MR. EMERICK: Objection,

53 (Pages 206 - 209)



Page 210

1 MARTIN WEIDMANN -- CONFIDENTIAL -- ATTORNEYS' EYES
ONLY
2    form.
3        A    ▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
10    Q    I mean again, that's not
11  what I'm asking.  I'm asking
12  specifically, the OOB testing results.
13       A    I would need to consult with
14  my colleagues as to the precise set of
15  things ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇
19    Q    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
23       MR. EMERICK:  Objection,
24  form.
25       A    As discussed, ▇▇▇▇▇▇▇

Page 211

1 MARTIN WEIDMANN -- CONFIDENTIAL -- ATTORNEYS' EYES
ONLY
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇
8        (The above-referred-to
9   document was marked as QCX Exhibit 70
10  for identification, as of this date.)
11    Q    I'm going to hand you a
12  series of exhibits here.
13       This is QCX 70.
14       (The above-referred-to
15  document was marked as QCX Exhibit 71
16  for identification, as of this date.)
17    Q    QCX 71.
18       (The above-referred-to
19  document was marked as QCX Exhibit 72
20  for identification, as of this date.)
21    Q    QCX 72.
22       (The above-referred-to
23  document was marked as QCX Exhibit 73
24  for identification, as of this date.)
25    Q    QCX 73.

Page 212

1 MARTIN WEIDMANN -- CONFIDENTIAL -- ATTORNEYS' EYES
ONLY
2        (The above-referred-to
3   document was marked as QCX Exhibit 74
4   for identification, as of this date.)
5    Q    And QCX 74.
6        QCX 70 is the metadata for
7   71, 72, 73 and 74.  All four of these
8   documents were produced from your
9   custodial files.
10       If we start at QCX 71, which
11  is ARMQC00000083, can you please tell me
12  what this document is?
13       A    It's a bit difficult to read
14  in this state.  But this appears to be
15  one of the files provided in one of the
16  XML bundles that we make available.
17    Q    When you say one of the XML
18  bundles that we make available, what are
19  you referring to?
20       A    The specifications are
21  provided as PDFs.  Some of the
22  information is additionally provided in
23  other formats which are easier for
24  machines to read or process.
25    Q    So is this an architecture

Page 213

1 MARTIN WEIDMANN -- CONFIDENTIAL -- ATTORNEYS' EYES
ONLY
2   document?
3        A    It's a bit difficult to read
4   in this format.  But based off the
5   metadata, it is a copy of the data from
6   the specification in a different format.
7    Q    Do you know why it's in the
8   format that it's in?  I agree with you.
9   It's difficult to read.
10       A    So the PDFs are optimized
11  for humans to read.  We provide the data
12  in other formats which are maybe more
13  optimal for machines to process.
14  Partners find machine processes more data
15  useful.
16    Q    So XML files are not
17  intended for humans to read?
18       MR. EMERICK:  Objection,
19  form.
20       A    I would say that humans are
21  welcome to read them and may often read
22  them.  But they may be not optimized for
23  that.
24    Q    But you would agree with me
25  this is incredibly difficult to read?

54 (Pages 210 - 213)

Page 226

```
1
2         C E R T I F I C A T I O N
3
4
5       I, ANTHONY GIARRO, a Shorthand Reporter
6  and a Notary Public, do hereby certify that
7  the foregoing witness, MARTIN WEIDMANN, was
8  duly sworn on the date indicated, and that
9  the foregoing, to the best of my ability, is
10 a true and accurate transcription of my
11 stenographic notes.
12      I further certify that I am not
13 employed by nor related to any party to this
14 action.
15
16
17
              _____
18              ANTHONY GIARRO
19
20
21
22
23
24
25
```

Page 227

```
1
2              ERRATA SHEET
          VERITEXT/NEW YORK REPORTING, LLC
3              1-800-727-6396
4  330 Old Country Road    7 Times Square
   Mineola, New York 11501  New York, New York
5  10036
6  NAME OF CASE:  Qualcomm versus ARM
   DATE OF DEPOSITION: June 20, 2025
7  NAME OF DEPONENT:   Martin Weidmann
8
   PAGE LINE (S) CHANGE    REASON
9  ____|____|_____|_____
10 ____|____|_____|_____
11 ____|____|_____|_____
12 ____|____|_____|_____
13 ____|____|_____|_____
14 ____|____|_____|_____
15 ____|____|_____|_____
16 ____|____|_____|_____
17 ____|____|_____|_____
18 ____|____|_____|_____
19 ____|____|_____|_____
20 ____|____|_____|_____
21        _____
              MARTIN WEIDMANN
22
23 SUBSCRIBED AND SWORN TO BEFORE ME
   THIS ____ DAY OF _____, 20__.
24
   _____  _____
25  (NOTARY PUBLIC)  MY COMMISSION EXPIRES:
```

58 (Pages 226 - 227)

# EXHIBIT 6

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

_____

QUALCOMM INCORPORATED, a

Delaware corporation, QUALCOMM

TECHNOLOGIES, INC., a Delaware

corporation

       Plaintiff,

v.                                    C.A. No. 24-490-MN

ARM HOLDINGS PLC, f/k/a, ARM

LTD. a U.K. corporation

       Defendant.

_____

***■■■■■■■■■***

***PURSUANT TO PROTECTIVE ORDER***

VIDEOTAPED DEPOSITION OF JIGNESH TRIVEDI

WEDNESDAY, JULY 9, 2025

SAN DIEGO, CALIFORNIA

REPORTED BY:  PATRICIA Y. SCHULER, CSR NO. 11949

_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

7/9/2025          Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.          Jignesh Trivedi

---

Page 30

1      A.  I don't directly --
2      Q.  I apologize.
3      A.  My bad.
4      Q.  You don't interface with any of
5  Qualcomm's customers, correct?
6      A.  Not directly.
7      Q.  Does Arm have a ▮▮▮▮▮▮▮▮▮?
8      MS. NYARADY:  Objection.
9      THE WITNESS:  Not that I am aware of.
10 BY MR. JANES:
11     Q.  Does Qualcomm ▮▮▮▮▮▮
▮▮  ▮▮▮▮▮▮▮▮?
13     MS. NYARADY:  Objection to the extent that
14 it calls for a legal conclusion.
15     You can answer.
16     THE WITNESS:  I am not aware of ▮▮, so I
17 can't comment.
18 BY MR. JANES:
19     Q.  Mr. Trivedi, does Arm compete unfairly?
20     MS. NYARADY:  Objection.
21     THE WITNESS:  That's not a call -- or an
22 opinion I can provide.  I would be guessing there.
23 BY MR. JANES:
24     Q.  You are not aware of any facts showing
25 that Arm competes unfairly?

---

Page 31

1      MS. NYARADY:  Objection.
2      THE WITNESS:  In the execution of my work,
3  I was expecting certain things, which we did not get
4  over the last couple of years.
5  BY MR. JANES:
6      Q.  So your belief is that Arm not providing
7  certain things to Qualcomm is a form of Arm
8  competing unfairly; is that right?
9      A.  I can speak for the technical part.  I
10 did not get some of the technology that I needed to
11 finish my work.  I cannot comment beyond that.
12     Q.  Why do you think that is an example of
13 Arm competing unfairly?
14     A.  Again, that's for a different set of
15 folks to make that.  I could not continue my work
16 or I could not finish my work to the best of my
17 ability as I would have liked because I did not get
18 some of those things.
19     Q.  Well, Mr. Trivedi, I'm asking you.  I
20 asked you, do you know of any facts supporting that
21 Arm competes unfairly, and you identified that Arm
22 didn't provide certain things to you.
23     And so my question is, why do you believe
24 that Arm not providing certain materials to
25 Qualcomm is an example of Arm competing unfairly?

---

Page 32

1      MS. NYARADY:  Objection; asked and
2  answered.
3      THE WITNESS:  If the technology that we
4  require to run the ACK, if that is not provided,
5  that creates an impediment for us to run, one.  If I
6  am not able to run successfully, then it prevents me
7  from running the compliance, two.
8      So if the technology is not provided, it
9  could hinder our ability, making us spend extra
10 effort, making us guess when we are looking at test
11 analysis to say whether it is a design issue or a
12 test issue.  Is it a test defect?  And that adds a
13 risk to our design process.
14 BY MR. JANES:
15     Q.  One of the things that you listed was
16 that Arm not providing certain materials prevented
17 you from running the compliance.
18     Do I have that right?
19     A.  It delayed, hindered us from what we need
20 to run for compliance.  And we had to guess in that
21 scenario what -- we came up with what we think is
22 the correct list, absent, for example, an OOB,
23 which provides me a list.
24     We provide Arm the target configuration
25 of a CPU design, what features it is implementing.

---

Page 33

1  We share that with Arm.  As a response to that, Arm
2  provides us a list, which is the OOB, which is an
3  analysis of those tests, what tests you need to
4  run, what are the status of those tests with Arm,
5  of their Arm reference model.  And if there are any
6  test issues that Arm already knows about, that is
7  an OOB.
8      We can regenerate a list.  We corroborate
9  if that number matches.  They update the list we
10 have.  But I don't get the failure analysis when I
11 don't have an OOB.  So that hinders me.  It makes
12 me spend more time analyzing something.  And if I
13 guess wrong or if I analyze wrong, that could be a
14 design issue.
15     Q.  Mr. Trivedi, I'd like you to listen very
16 carefully to the question I am asking you.
17     You said that Arm not providing certain
18 materials prevented you from running the compliance
19 suite, correct?
20     A.  I said it hindered me or, you know, it
21 added more work on our side.
22     Q.  Okay.  So Arm not providing certain
23 materials to Qualcomm did not prevent Qualcomm from
24 running the compliance suite, correct?
25     MS. NYARADY:  Objection.

---

9  (Pages 30 to 33)

7/9/2025        Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.        Jignesh Trivedi



Page 110

1  would be a fair statement, yes.
2

Page 112

7    Q.  Are you familiar with someone named Vivek
8  Agrawal?
9    A.  Yes, I am.  I interact with him on a
10  weekly basis.
11    Q.  Who is Vivek Agrawal?
12    A.  He is my contact point to all -- for the
13  ACK support, for ACK technology.
14    Q.  Does Vivek Agrawal work for the partner
15  enablement team for Arm Technology Group?
16    A.  I interface with him for Arm technology
17  enablement, ACK enablement.  I don't know who else
18  he interfaces with.
19    Q.  What I am trying to get at is, Vivek
20  Agrawal works for Arm, right?
21    A.  Yes.
22    Q.  And he is -- he interfaces with you in
23  connection with Qualcomm's efforts to verify that
24  its custom cores are compliant with Arm's
25  architecture, right?

Page 111

1

Page 113

1    A.  Broadly speaking, you can say that, yes.
2    Q.  What are all the categories of materials
3  that you either request from Vivek or that Vivek
4  provides to you?
5    A.  We request an ACK -- a generic ACK
6  download.  We provide a target config which is
7  specific to the design that we are targeting to
8  Vivek.  In return, he provides me an OOB, which is
9  the technical list of -- sorry, the reference list
10  of tests, technical analysis of those failures, and
11  results on Arm's side.
12        ET Checker, if we need any help looking
13  it up, making it functional so that the ACK tests
14  can run.  Any issues we see as we get a new ACK and
15  we are trying to get -- bring it up generically
16  before I make any design-specific change in it.
17  There could be issues that we face there, correct.
18    Q.  Are there any other categories of
19  materials that you either request from Mr. Agrawal
20  or that he provides to you?
21    A.  Test patches for sure.  So we submit test
22  defects, test issues as we see them.  And then an
23  adjudication or -- or Arm's analysis, rather, of
24  whether they agree it is a test issue or their
25  analysis of -- so no, it's not a test issue; it's a

29  (Pages 110 to 113)

Page 254

1  BY MS. NYARADY:
2       Q.  Arm's counsel asked you a number of
3  questions using the term "███████.
4       When you were answering those questions,
5  did you have in mind any definition other than the
6  plain English definition of ████████ "?
7       A.  I tried to clarify earlier that ████████ "
8  is like flow flush and ACK, if there's dual issues
9  and so on.  The OOB is technology we need to know
10 what tests we need to run.  Any test issues are
11 technology because Arm, if they decide it's a test
12 issue, would provide us a source code to allow us
13 to back up by patching the test.  That's Arm
14 technology that needs to be provided.
15      So those are the two things that come to
16 mind, and I tried to allude to that during the
17 discussion.
18      Q.  Are you aware of any special definition
19 of ████████ that is in, for example, the contracts
20 between Arm and Qualcomm?
21      A.  I am not aware of that.
22      Q.  Okay.  Did Qualcomm ever enable the
23 ██ ████████ in any CPUs that were verified
24 during the time that Arm was withholding can
25 ████████████████████?

Page 255

1       A.  ██████████████████████████
2  ██████████████████████████
3  ██████████████████████████
5       Q.  And was Qualcomm forced to disable that
6  feature because of Arm's lack of support?
7       MR. JANES:  Objection; form.
8       THE WITNESS:  We had to mark those tests
9  as a waiver when had actually had the feature
10 implemented.  And it did play a role in the
11 Kaanapali v1 whether we could do ED or not.
12      MS. NYARADY:  No further questions.
13      FURTHER EXAMINATION
14 BY MR. JANES:
15      Q.  I just want to clarify.  The record says
16 on your answer that "Suspect this flow flush and
17 ACK."
18      You said, "████████" not "suspect,"
19 right?
20      A.  Sorry.  Can you repeat that, please?
21      Q.  Sure.
22      You were asked -- when were answering
23 these questions, did you have any -- in mind any
24 definition of "████████" other than the plain
25 English definite of "████████," and you answered --

Page 256

1  the record shows you answered "to clarify earlier
2  that "suspect" is flow flush in ACK.
3       Instead of "suspect," you meant to say
4  "████████" correct?
5       A.  Let me restate that.
6       As a generic ACK package is given to us
7  to generate any test for any configuration, it
8  needs to work in our environment.  There could be
9  two issues, there could be version issues and so
10 on.  Those are generic issues, nothing specific to
11 our design at all.  To bring the ACK up and
12 running, I consider that ████████
13      After that point, when I have a specific
14 design configuration and the tests start running,
15 if those tests fail, patches for those tests would
16 be Arm technology that is Arm code, Arm C-code that
17 is helping us verify the CP architecture.
18      MR. JANES:  Thank you, Mr. Trivedi.
19 Nothing further.
20      THE VIDEOGRAPHER:  This concludes today's
21 deposition of Mr. Jignesh Trivedi at 3:38.
22      (The videotaped deposition of
23 JIGNESH TRIVEDI concluded at 3:38 p.m.)
24
25

Page 257

1       I, Patricia Y. Schuler, a Certified
2  Shorthand Reporter of the State of California, do
3  hereby certify:
4       That the foregoing proceedings were taken
5  before me at the time and place herein set forth;
6  that any witnesses in the foregoing proceedings,
7  prior to testifying, were duly sworn; that a
8  verbatim record of the proceedings was made by me
9  using machine shorthand which was thereafter
10 transcribed under my direction; that the foregoing
11 transcript is a true record of the testimony given.
12      Further, that if the foregoing pertains
13 to the original transcript of a deposition in a
14 Federal Case, before completion of the proceedings,
15 review of the transcript [X] was [ ] was not
16 requested.
17      I further certify I am neither
18 financially interested in the action nor a relative
19 or employee of any attorney or party to this
20 action.
21      IN WITNESS WHEREOF, I have this date
22 subscribed my name.
23 Dated:  July 12, 2025
24      _____
25      PATRICIA Y. SCHULER
       CSR NO. 11949

65  (Pages 254 to 257)

# EXHIBIT 7



**Qualcomm Incorporated**

5775 Morehouse Drive, San Diego, CA 92121

www.qualcomm.com

**VIA ELECTRONIC AND REGISTERED MAIL**                                    December 5, 2022

Spencer Collins
EVP, Chief Legal Officer
ARM Limited
110 Fulbourn Road
Cambridge, CB1 9NJ
United Kingdom

Dear Spencer,

We have not received confirmation of your receipt of my November 3, 2022 letter, a copy of which is attached hereto. That letter served as Qualcomm's written notice to ARM of ARM's non-compliance with ██████████ of Qualcomm's Architecture License Agreement (ALA).

This letter is Qualcomm's second written notice of non-compliance in accordance with the notice process set forth in ██████████ of the ALA. ARM must cure this non-compliance per the time and procedures set forth therein, or Qualcomm intends to exercise its remedies under ██████████

Best regards,

Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated

cc: Dawn Hill, Account Manager, dawn.hill@arm.com (via electronic and registered mail)
    Jason Child, EVP and Chief Financial Officer, jason.child@arm.com (via electronic and registered mail)
    Rene Haas, Chief Executive Officer, Rene.Haas@arm.com (via electronic and registered mail)
    Chief Operating Officer (via registered mail; no name or address to send via electronic mail)

CONFIDENTIAL                                                                ARM_00025401



<u>Letter to ARM dated November 3, 2022</u>

ARM_00025402



Qualcomm Incorporated
5775 Morehouse Drive, San Diego, CA 92121
www.qualcomm.com

VIA ELECTRONIC & REGISTERED MAIL                                    November 3, 2022

Spencer Collins
EVP, Chief Legal Officer
Arm Limited
110 Fulbourn Road
Cambridge, CB1 9NJ
United Kingdom

Dear Spencer,

I write to respond to your October 16, 2022 letter. With respect to your interpretation of the NUVIA and Qualcomm ALAs, there is no further need to address that here. Suffice to say we disagree in every respect with ARM's interpretation of these agreements. We refer you to Qualcomm's pleadings.

That said with respect to ARM's failure to engage in its support obligations, we want to make clear that Qualcomm is invoking its remedies under ▮▮▮▮▮▮ Under ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

breach of ▮▮▮▮ Please construe this letter as Qualcomm's required notice under ▮▮▮▮ that ARM is not in compliance with its obligations under ▮▮▮▮ and that ARM must cure this breach in accordance with the time and procedures set forth therein.

We also note that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Finally, I also respond to your email dated October 12, 2022. As I am sure you are aware, there is a weekly sync meeting between engineers at Qualcomm and ARM to discuss various technical issues that arise during the verification test process. We trust that you have no issues with these meetings proceeding.

Best Regards,

Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated

cc: Dawn Hill (via registered mail)
    Inder Singh (via registered mail)

# EXHIBIT 8

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF DELAWARE

3   QUALCOMM INCORPORATED a Delaware corporation, ) Case No.
    QUALCOMM TECHNOLOGIES, INC., a Delaware       )24-490-MN
4   corporation,                                  )
                                                  )
5       Plaintiffs,                               )
                                                  )
6      vs.                                        )
                                                  )
7   ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K.      )
    corporation,                                  )
8                                                 )
9       Defendant.                                )
    _____    )
10   ██████████████████████████  VIDEOTAPED

11           DEPOSITION OF VIVEK N. AGRAWAL

12              Palo Alto, California

13              Friday, July 11, 2025

14

15

16          REPORTED BY: Derek L. Hoagland

17              CSR No. 13445

18

19

20

21

22

23

24

25



Page 94

1 change of position.  All right.  Let's try this again.
2 BY MS. NYARADY:
3 Q.    Mr. Agrawal, what partner other than Qualcomm do
4 you interact with on a regular basis as part of -- as
5 part of your current job responsibilities?
6 A.    ▮▮▮▮▮
7 Q.    ▮▮▮▮▮▮▮▮
8       Okay.  Let's take a look at QCX 233.
9       (Exhibit No. 233 marked for identification.)
10 BY MS. NYARADY:
11 Q.    And that is QCVARM_688932 to 934.  Now, this is
12 a series of emails between you and Mr. Trivedi, right?
13 A.    Yes.
14 Q.    If you go to the last email -- it starts on
15 page 933 -- oh, actually, no.  The second-to-last email.
16 That is on page 933.  You are writing to Mr. Trivedi,
17 and you're telling him that you've canceled the sync
18 meeting.
19       The sync meeting, those are the weekly kind of
20 scheduled meetings that you have unless you -- you don't
21 have enough for an agenda.  Is that right?
22 A.    Yes.
23 Q.    Okay.  So you're talking about rescheduling the
24 weekly meeting to a different time.  You think a half
25 hour is going to be enough, and then you say:

Page 95

1       ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4       Do you see that?
5 A.    Yes.
6 Q.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9       MR. JANES:  Mr. Agrawal, I just caution you not
10 to disclose the substance of an attorney-client
11 privileged communication, but you can answer that in a
12 "yes" or a "no," or an "I don't know" if you don't know.
13       THE DEPONENT:  ▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮
16 BY MS. NYARADY:
17 Q.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20       MR. JANES:  Object to form.  And I'll just
21 caution you not to disclose the substance of any
22 communication that you may or may not have had with an
23 attorney.  If you can answer otherwise, you can do so.
24       THE DEPONENT:  I do not recall.
25 ///

Page 96

1 BY MS. NYARADY:
2 Q.    Okay.  And when you say "▮▮▮▮▮▮▮▮▮,"
3 do you recall who that ▮▮▮▮ came from?
4 A.    No.  I don't remember.
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6 Q.    Okay.  You just don't -- as you sit here today,
7 you don't recall?
8 A.    Yes.
9 Q.    Okay.  At the top of that same page that we're
10 looking at, 933, Mr. Trivedi is writing to you, and in
11 the second paragraph he says, "As we discussed" -- so
12 this is October 6th of 2022, so, you know, a week or a
13 little bit over a week later, he writes to you, and he
14 says:
15       "As we discussed, my team is targeting mid to
16 late December 2022 for final compliance report using the
17 July 2022 ACK release."
18       And then he says:
19       "Hence, I wanted to request the OOB for this
20 newly uploaded configuration, which will confirm the
21 precise test list.  We will need to pass for
22 architectural compliance."
23       Do you see that paragraph?
24 A.    Yes.
25 Q.    Okay.  So Mr. Trivedi is asking you for an OOB

Page 97

1 for the newly uploaded configuration, and then I would
2 like to go to the next email, which is on page 932.  And
3 you respond to Mr. Trivedi on October 10th of 2022, and
4 you say:
5       ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9       Do you see that?
10 A.    Yes.
11 Q.    And so again you're telling Mr. Trivedi that ▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮, correct?
14 A.    Yes, I'm saying so.
15 Q.    Then if we go to the top email, this is in
16 October 13th of 2022, so a few days later.  You say, ▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ when you write to Mr. Trivedi.  And
19 you say that:
20       ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25       Do you see that?

25 (Pages 94 - 97)

Page 98

1  A.    Yes.
2  Q.    So at this point in time, is it fair to say that
███████████████████████████████████████████
███████████████████████████████████████████
███████████
6        MR. JANES:  Mr. Agrawal, I will caution you not
7  to disclose the contents of a privileged conversation.
8  But you can answer that in a "yes," "no," or "I don't
9  know" or "I don't remember."
10       THE DEPONENT:  What was your exact question
11 here?
12 BY MS. NYARADY:
13 Q.    Sure.  So at this point in time, in October of
14 '22, ████████████████████████████████████████████
███████████████████████████████████████████
17       MR. JANES:  Same instruction.
18       THE DEPONENT:  Yes.  At that moment, since I did
19 not hear anything other way around, ████████████████
███████████████████████████████████████████
21 BY MS. NYARADY:
22 Q.    And that remained true until January of 2025,
23 correct?
24 A.    Yes.  I was maintaining that same position until
25 January 2025.

Page 99

1  Q.    The email on -- on page 932, did you write that
2  second paragraph, the one that starts ████████████
██████████████████████████████████████?
4  A.    No, I did not write this paragraph.
5  Q.    Who wrote that paragraph for you?
6        MR. JANES:  Mr. Agrawal, I will caution you not
7  to disclose the substance of any communication you may
8  or may not have had with an attorney.  If you can answer
9  outside of that, you can do so.
10       THE DEPONENT:  I don't recall exactly who was
11 that person or name, ███████████████████████████.
12 BY MS. NYARADY:
13 Q.    Do you recall whether █████████████████████
███████████████████████████████████████████
██████████████████?
16       MR. JANES:  Mr. Agrawal, you can answer that in
17 a "yes," "no," "I don't know," or "I don't remember,"
18 but do not disclose the substance of any communication
19 you may or may not have had with an attorney.
20       THE DEPONENT:  I do not remember whether it was
███████████████████████████████████████████.
23 BY MS. NYARADY:
24 Q.    I just want to make sure I understand.
█  ██████████████████████████████████████

Page 100

███████████████████████████████████?
2        MR. JANES:  Same instruction, Mr. Agrawal.
3        THE DEPONENT:  ████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████
9        MS. NYARADY:  Okay.  Let's move to QCX 234.
10       (Exhibit No. 234 marked for identification.)
11 34.
12       MS. NYARADY:  And this is a document Bates
13 numbered QCVARM_689117 through 120, and there's two
14 emails in this chain.  Both of them start on the first
15 page there at 117.
16       So the bottom email is Mr. Trivedi on
17 October 26th, 2022, writing to you, and he says that he
18 uploaded the Pakala target config file, and then he's
19 giving you a list of -- at the bottom there, he says,
20 "Test or AEM errors/fails," and then there's a couple of
21 pages of -- of that list.
22 BY MS. NYARADY:
23 Q.    Does that accurately describe what's going on in
24 this email?
25 A.    What Jignesh has written, I'm not sure if I

Page 101

1  recall those things specifically, but you're saying AEM
2  Pakala report, right?
3  Q.    Right.  So he's sending you an AEM errors Pakala
4  report and he's telling you that for Pakala, for the CPU
5  that is code named Pakala, that he is aiming, targeting,
6  a tentatively December 2022 to early January 2023 ACK
7  compliance, right?
8        MR. JANES:  Object to form.
9        THE DEPONENT:  Yes.  He sent this.
10 BY MS. NYARADY:
11 Q.    Okay.  And then you respond the same day,
12 October 26, 2022, and you say:
13       ██████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████
██████████?
18 A.    At this moment, I am not sure what █████████
██████.
20       (Reporter clarification.)
21       THE DEPONENT:  ███████████████████████████
███████████████████████████████████████████
████████.  I -- I do not recall that.
25 ///

26 (Pages 98 - 101)



Page 194

1 ████████████████

2       MR. JANES: Object to form.

3       THE DEPONENT: Since you are saying about the

4 verifications, so verification is not an area for the

5 custom CPU cores. We only do the compliance.

6 BY MS. NYARADY:

7 Q.    Well, I said verify compliance, so maybe I'll

8 just ask it without using the word "verify," if that's

9 bothering you.

10     Based on your conversations with Jignesh

11 Trivedi, do you understand that it's been harder for

12 Qualcomm to certify compliance for its custom cores?

13     MR. JANES: Same objection.

14     THE DEPONENT: No. I don't recall any such

15 conversation that it is hard for them.

16 BY MS. NYARADY:

17 Q.    He hasn't communicated to you that there are

18 certain things that he needs in order to certify

19 compliance with its custom cores?

20 A.    No. I don't recall any such conversation at the

21 moment.

22 Q.    Do you think it's been harder for Qualcomm to

23 certify compliance in the absence of an OOB and patches

24 and signoff?

25 A.    So since there are three whole things together,

Page 195

1 so I would like to separate them, because the OOB is

2 something -- it is automated process, so we have enabled

3 all of our partners that they can do the OOB by them

4 self. So I don't think of any partner who has been

5 working on the ACK, at least for one generation of the

6 product. It is not -- it is not hard, in anything hard,

7 because automation is script and documentation.

8 Everything is there with the ACK. And whatever we do,

9 that would be same things partner can do by them self.

10 Q.    What about withholding signoff, do you think

11 that's made it more difficult to achieve certified

12 compliance?

13     MR. JANES: Object to form.

14     THE DEPONENT: I am not aware of the -- how --

15 how signoff can be making things harder for them. I'm

16 not sure.

17 BY MS. NYARADY:

18 Q.    Because it's not required?

19 A.    It is required, but I have an idea why it is

20 required from the ARM's per -- perspective, but I'm not

21 sure what is required from the partner's perspective.

22 What I understand, yes, ARM requires partners to do the

23 compliance signoff. I am not sure what is the

24 partner's -- if anything is making things harder for the

25 partner.

Page 196

1     MS. NYARADY: Okay. No further questions.

2     MR. JANES: No questions from me. Thank you,

3 Mr. Agrawal.

4     THE VIDEOGRAPHER: We're off the record at

5 6:02 p.m., and this concludes today's given by

6 Vivek Agrawal. The total number of media used was six

7 and will be retained by Veritext Legal Solutions.

8     (Proceeding Concludes at 6:02 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 197

1       REPORTER'S CERTIFICATE

2

3 STATE OF CALIFORNIA        )  ss.

4 I, DEREK L. HOAGLAND, CSR #13445, State of California,

5 do hereby certify:

6 That prior to being examined, the witness named in the

7 foregoing proceeding was by me sworn to testify to the

8 truth, the whole truth and nothing but the truth;

9 That said proceeding was taken down by me by stenotype

10 at the time and place therein stated and thereafter

11 transcribed under my direction into computerized

12 transcription.

13 I further certify that I am not of counsel nor attorney

14 for nor related to the parties hereto, nor am I in any

15 way interested in the outcome of this action.

16 In compliance with section 8016 of the Business and

17 Professions Code, I certify under penalty of perjury

18 that I am a certified shorthand reporter with license

19 number 13445 in full force and effect.

20 Witness my hand this 14th day of July, 2025.

21

22

23

24       DEREK L. HOAGLAND, CSR #13445

25

50 (Pages 194 - 197)

# EXHIBIT 9



110 Fulbourn Road
Cambridge, CB1 9NJ
United Kingdom
Spencer.Collins@arm.com

January 8, 2025

**VIA E-MAIL ONLY**

Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated
5775 Morehouse Drive
San Diego, CA 92121-1714
AChaplin@qualcomm.com

Privileged & Confidential

Dear Ann:

I write concerning Qualcomm's Architecture License Agreement ("Qualcomm ALA") and certain CPUs that include designs and code acquired in the Nuvia acquisition ("Nuvia CPUs", including at a minimum Qualcomm's ███████████████████████ products).

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████ and while Arm's ongoing legal challenges
are pending, ██████
██████ Arm therefore withdraws the pending October 22, 2024 notice of material
breach. ████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████

Arm's prior correspondence and relevant court filings in the Delaware litigation reflect Arm's legal position regarding the scope of the Qualcomm ALA and the required actions

QCVARM_0573677

that Nuvia acting in concert with Qualcomm must take in light of the termination of the Nuvia ALA on March 1, 2022.  Arm's future legal filing will reflect its legal position regarding the non-final verdict, a new trial and judgment in the legal case.  Arm reserves all rights and none of Arm's conduct, support and verification reflects a waiver of Arm's present or future rights or claims.

Qualcomm may wish to share this notice with its customers only on a confidential basis, and Arm confirms Qualcomm may do so.

Sincerely,

_____
Spencer Collins
EVP, Chief Legal Officer
Arm Limited

2

CONFIDENTIAL

QCVARM_0573678

# EXHIBIT 10

Message

---

**From**: Rene Haas [Rene.Haas@arm.com]
**Sent**: 31/08/2022 18:50:36
**To**: pcarmack@google.com
**CC**: Saumil Shah [Saumil.Shah@arm.com]
**Subject**: Arm News
**Attachments**: Letter 2 Aug.pdf

Dear Phil,

I want to personally inform you regarding some news you may hear about in the press soon. Today we have filed a lawsuit against Qualcomm and Nuvia for breach of contract and trademark infringement. As an intellectual property company, Arm must act to protect our rights and the rights of our ecosystem.

In connection with Qualcomm's acquisition of Nuvia, Qualcomm attempted to transfer Nuvia licenses without Arm's consent, which is a standard restriction under Arm's license agreements. Nuvia's licenses therefore terminated in March 2022. Before and after that date, Arm made multiple good faith efforts to seek a resolution. Whereas in contrast, Qualcomm has breached the terms of the Arm license agreement by continuing development under the terminated licenses.

Qualcomm has failed to comply with those provisions, as we told Qualcomm by letter dated August 2, 2022 (enclosed).  As set forth in that letter, "after termination, Qualcomm is not authorized to make, use, sell, or import a product incorporating designs or derivatives of the Nuvia technology" and "any resulting products will not be protected by any existing license agreement." Despite this, Qualcomm continues to indicate publicly a plan to use the technology developed under the former Nuvia license.

Arm takes pride in our role as innovator of the world's most critical semiconductor IP and the billions of devices that run on Arm. These technological achievements have required years of research and significant costs, they must be recognized and respected. We will work vigorously to protect what is rightfully ours and we are confident that the courts will agree with us.

In the meantime, there will be no disruptions to your partnership with Arm and you can continue to expect world-class products and support. Please do not hesitate to reach out if you have any questions.

Regards,

Rene Haas

CEO

Arm

---

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# EXHIBIT 11

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF DELAWARE

3

4     QUALCOMM INCORPORATED, a          )
      Delaware corporation, QUALCOMM  )
5     TECHNOLOGIES, INC., a Delaware   )
      corporation,                     )
6                                       )
              Plaintiffs,              )
7                                       )
              vs.                       ) C.A. No. 24-490(MN)
8                                       )
      ARM HOLDINGS PLC, f/k/a ARM      )
9     LTD., a U.K. corporation,        )
                                        )
10            Defendant.               )
      _____ )

11

12

13    ███████████████████████████████████

14        VIDEO-RECORDED DEPOSITION OF RENE HAAS

15

16             Monday, July 7, 2025

17             Palo Alto, California

18

19

20

21

22

23    Stenographically Reported By:

24    Hanna Kim, CLR, CSR No. 13083

25    Job No. 7428967

Page 14

1      You understand your deposition today is in
2  a separate case brought by Qualcomm against ARM
3  based on information that Qualcomm learned in the
4  first case?
5      MR. LoCASCIO:  Same objection.
6      THE WITNESS:  Yes, I believe so.
7  BY MS. DUNN:
8    Q.  Okay.  And you also understand that the
9  jury in the December 2024 trial found that Qualcomm
10 had not breached the NUVIA ALA and that the Qualcomm
11 CPUs that include designs acquired in the NUVIA
12 acquisition are licensed under the Qualcomm ALA?
13     Do you recall that?
14     MR. LoCASCIO:  Objection to form.
15     THE WITNESS:  I'm sorry, can you repeat
16 that again, Karen?
17 BY MS. DUNN:
18   Q.  Sure.
19     And you understand that the jury in the
20 December 2024 trial found that Qualcomm had not
21 breached the NUVIA ALA and that the Qualcomm CPUs
22 that include designs acquired in the NUVIA
23 acquisition are licensed under the Qualcomm ALA?
24   A.  I --
25     MR. LoCASCIO:  Same objection.

Page 15

1      THE WITNESS:  I believe so.
2  BY MS. DUNN:
3    Q.  Okay.  Great.  All right.
4      And you also recall then at the
5  December 2024 trial you testified that on August 31,
6  2022, the day ARM filed its Complaint against
7  Qualcomm, ARM reached out to customers?
8    A.  I'm not sure I understand that question.
9    Q.  Okay.  You recall in the trial that we had
10 you testified about outreach to customers at the
11 same time that ARM had filed its Complaint?
12   A.  Yes.
13   Q.  Right.
14     And you recall that you personally sent a
15 letter to ▮ top executives at customers; correct?
16   A.  Yes.
17   Q.  And you recall testifying that those
18 customers were shared by ARM and Qualcomm; correct?
19     MR. LoCASCIO:  Object to form.
20     THE WITNESS:  Yes.
21 BY MS. DUNN:
22   Q.  Okay.  And you also recall that we talked
23 about at trial that about eight months later, in
24 May of 2023, your colleague Will Abbey sent a
25 follow-up letter to customers; correct?

Page 16

1    A.  Yes.
2    Q.  Right.
3      And that was the letter that was marked of
4  "high importance" with the red exclamation point we
5  talked about at the trial?
6      MR. LoCASCIO:  Object to form.
7      THE WITNESS:  Yeah, can you repeat that?
8  I'm sorry.
9  BY MS. DUNN:
10   Q.  It's okay.
11     You recall testifying that the May 2023
12 letter that Mr. Abbey sent was misleading because it
13 quoted ARM's claim when it said that it was quoting
14 the contract?
15     Do you recall that?
16     MR. LoCASCIO:  Object to form.
17     THE WITNESS:  I -- I recall the
18 discussion, yes.
19 BY MS. DUNN:
20   Q.  Okay.  And at the time of trial, I asked
21 you if, when you realized that ARM had sent out a
22 misleading letter to customers, you had gone back to
23 the customers to tell them that the letter was
24 inaccurate.
25     Do you recall that?

Page 17

1      MR. LoCASCIO:  Object to form.
2      THE WITNESS:  I recall that discussion.
3  BY MS. DUNN:
4    Q.  Okay.  And you recall that at the time of
5  trial you told me that ARM had not reached out to
6  customers to tell them that the letter was
7  inaccurate; right?
8      MR. LoCASCIO:  Object to form.
9      THE WITNESS:  I'm sorry, can you repeat
10 that?
11 BY MS. DUNN:
12   Q.  Okay.  You recall that when I asked you
13 about the letter at trial and I asked you if ARM at
14 that point had reached out to customers to correct
15 the misleading letter, you had said that ARM had not
16 at that point reached out to customers.
17     MR. LoCASCIO:  Same objection.
18     THE WITNESS:  I don't recall that exactly.
19 BY MS. DUNN:
20   Q.  Okay.  So just for your benefit, I asked
21 you, "And when you realized that you had sent this
22 incorrect letter accusing Qualcomm of breach and
23 citing something that's not contract language, did
24 you go back to all the customers and tell them that
25 you were wrong?"

5 (Pages 14 - 17)



Page 18

1      And you answered, "No, we did not, not to
2  my knowledge."
3      Does that help refresh your recollection?
4      A.  That helps refresh my recollection, yeah.
5      Q.  Okay.  And that was your testimony; right?
6      A.  That is what I recall.
7      Q.  Okay.  And so since that date,
8  December 16th, 2024, when you testified to this
9  effect, and this date, July 7th, 2025, has ARM now
10 gone back to the customers to correct the misleading
11 letter?
12     MR. LoCASCIO:  Object to form.
13     THE WITNESS:  Not to my knowledge.
14     MS. DUNN:  Okay.
15     THE COURT REPORTER:  Counsel, can I ask
16 you to slow down, please.
17     MS. DUNN:  Yes, I'd be happy to.
18 BY MS. DUNN:
19     Q.  All right.
20     Now, when you were deposed in December of
21 2023, you testified that ████████████████████
████████████████████████████████████████████
██████████████ .
24     And at the time of your deposition, those
25 were ████████████████████████████████████████████

Page 19

1  ████████████████████████████ ?
2      Do you remember that?
3      A.  I don't recall that.
4      Q.  Okay.  Since December of 2023, have you
5  had ████████████████████████████████████████
████████████████████████████████ ?
7      A.  I'm sorry, could you repeat that?
8      Q.  Yes.
9      Since of December of 2023, the last time
10 that you were deposed, have you had ████████████
████████████████████████████████████████████ ?
13     A.  Yes.
14     Q.  Okay.  ████████████████████████████
████████████████████████████████████████████ ?
16     A.  Since December 2023?
17     Q.  Yes.
18     A.  I believe so.
19     Q.  All right.
20     Tell me what you remember about the
21 ████████████████████████ .
22     A.  My recollection is I believe it was at CES
23 of 2024 -- but I could be wrong on the -- on the
24 dates now -- a discussion with -- I'm -- I'm haz- --
25 hazy on the dates, whether it's December of --

Page 20

1  whether it was January of '23 or January of '24.  I
2  think it was January of '24 -- ████████████████████
████████████████████████████████████████████████████
████████████████████████ .
5      Q.  And what do you remember telling the --
6  I'm sorry, tell me the name of the first person.
7      A.  ████████████████████ .
8      Q.  ████████████
9      A.  ████████████████████████████ ?
10     A.  Yeah.
11     Q.  Okay.  What did -- what do you remember
12 ████████████████████████████████████████████████
████████ ?
14     A.  ████████████████████████████████████
████████████████████████████████████ .
16     Q.  Okay.  And do you recall anything else
████████████████████████████████████████ ?
18     MR. LoCASCIO:  Object to form.  It's
19 ████████████████ here.
20     THE WITNESS:  ████████████████████
21     MS. DUNN:  Sorry.
22     Thanks, Gregg.
23 BY MS. DUNN:
24     Q.  Do you recall anything else ████████████
████████████████████████ ?

Page 21

1      A.  No.
2      Q.  Okay.  And do you recall anything that
3  ████████████████████████ ?
4      A.  No.
5      Q.  Okay.  And is that the only time between
6  your deposition in 2023 and today that you recall
████████████████████████████████████████
████████████ ?
9      A.  To the best of my knowledge, yeah.
10     Q.  Okay.  And is that the only time between
11 your deposition in 2023 and today that you recall
12 ████████████████████████████████████████████████ ?
13     A.  I'm sorry, could you say that again?
14     Q.  Yes.
15     Is -- is the -- the time that you've
16 testified about at CES the only time between your
17 deposition in 2023 and today that you recall
18 ████████████████████████████████████████████████ ?
19     A.  Yeah, I don't recall.
20     Q.  Okay.  All right.
21     And do you recall that at your deposition
22 you told me that ████████████████████████████████
████████████████████████████████████████ ?
25     A.  I'm sorry, say that one more time.

6 (Pages 18 - 21)

Page 258

```
 1              CERTIFICATE OF REPORTER
 2        I, Hanna Kim, a Certified Shorthand
 3   Reporter, do hereby certify:
 4        That prior to being examined, the witness
 5   in the foregoing proceedings was by me duly sworn to
 6   testify to the truth, the whole truth, and nothing
 7   but the truth;
 8        That said proceedings were taken before me
 9   at the time and place therein set forth and were
10   taken down by me in shorthand and thereafter
11   transcribed into typewriting under my direction and
12   supervision;
13        I further certify that I am neither
14   counsel for, nor related to, any party to said
15   proceedings, not in anywise interested in the
16   outcome thereof.
17        Further, that if the foregoing pertains to
18   the original transc                    deral
19   case, before comp                       review
20   of the transcript [                      ed.
21        In witness
     subscribed my na
22   Dated:  8th day o
23
24   _____
             Hanna Kim
25           CLR, CSR No. 13083
```

Page 259

```
 1   GREGG F. LOCASCIO, ESQ.
 2   gregg.locascio@kirkland.com
 3              July 8, 2025
 4   RE:   Qualcomm Inc. v. Arm Holdings PLC
 5       7/7/2025, Rene  Haas (#7428967)
 6       The above-referenced transcript is available for
 7   review.
 8       Within the applicable timeframe, the witness should
 9   read the testimony to verify its accuracy. If there are
10   any changes, the witness should note those with the
11   reason, on the attached Errata Sheet.
12       The witness should sign the Acknowledgment of
13   Deponent and Errata and return to the deposing attorney.
14   Copies should be sent to all counsel, and to Veritext at
15   cs-ny@veritext.com.
16    Return completed errata within 30 days from
17   receipt of testimony.
18    If the witness fails to do so within the time
19   allotted, the transcript may be used as if signed.
20
21
22          Yours,
23          Veritext Legal Solutions
24
25
```

Page 260

```
 1        ERRATA SHEET FOR THE TRANSCRIPT OF:
 2   Case Name: QUALCOMM vs. ARM HOLDINGS PLC
 3   Dep. Date: JULY 7, 2025
 4   Deponent:  RENE HAAS
 5             CORRECTIONS:
 6   Pg.  Ln.   Now Reads   Should Read   Reason
 7   ___  ___   _____   _____   _____
 8   ___  ___   _____   _____   _____
 9   ___  ___   _____   _____   _____
10   ___  ___   _____   _____   _____
11   ___  ___   _____   _____   _____
12   ___  ___   _____   _____   _____
13   ___  ___   _____   _____   _____
14   ___  ___   _____   _____   _____
15   ___  ___   _____   _____   _____
16   ___  ___   _____   _____   _____
17   ___  ___   _____   _____   _____
18   ___  ___   _____   _____   _____
19
20             Signature of Deponent
21   SUBSCRIBED AND SWORN BEFORE ME
22   THIS____DAY OF_____, 2025.
23   _____
24   (Notary Public) MY COMMISSION
25   EXPIRES:_____
```

Page 261

```
 1              JURAT
 2
 3       I, RENE HAAS, do hereby certify under
 4   penalty of perjury that I have read the foregoing
 5   transcript of my deposition taken on Monday, July 7,
 6   2025; that I have made such corrections as appear
 7   noted herein in ink, initialed by me; that my
 8   testimony as contained herein, as corrected, is true
 9   and correct.
10
11       Dated this _____ day of _____, 2025,
12   at _____.
13
14
15
16
17
18   _____
             RENE HAAS
19
20
21
22
23
24
25
```

66 (Pages 258 - 261)

# EXHIBIT 12

Message

| | |
|---|---|
| **From**: | Spencer Collins [Spencer.Collins@arm.com] |
| **Sent**: | 22/10/2024 19:40:37 |
| **To**: | Rene Haas [Rene.Haas@arm.com] |
| **Subject**: | FW: Notice |
| **Attachments**: | Letter from Arm to Qualcomm .pdf |

## Redacted - Privileged

**From:** Spencer Collins <Spencer.Collins@arm.com>
**Date:** Tuesday, 22 October 2024 at 20:39
**To:** achaplin@qualcomm.com <achaplin@qualcomm.com>
**Cc:** sylvie@qualcomm.com <sylvie@qualcomm.com>
**Subject:** Notice

Dear Ann,

Please find attached.

Kind regards,
Spencer

**Spencer Collins | EVP, Chief Legal Officer**
Mobile: (+44) 7393 766 339
Arm Ltd, 110 Fulbourn Road, Cambridge, CB1 9NJ, UK
www.arm.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated
5775 Morehouse Drive
San Diego, CA 92121

22 October 2024

Dear Ann,

Pursuant to section ████ of the Qualcomm Architecture License Agreement (LES-TLA-20039) ("the Qualcomm ALA"), Arm hereby provides notice that Qualcomm is in material breach of the Qualcomm ALA. Unless Qualcomm cures its material breach ████████████ Arm shall be entitled to ███████████████████████████████ ██████████████.

Under the Qualcomm ALA, ███████████████████████████████████████ verify, and sell designs for ████████████████████████████████████████ ███████████████████████████ The Qualcomm ALA permits ████████ ███████████████████████████ Qualcomm is only permitted ██████████ requirements of the Qualcomm ALA and ██████████████████████████ ████████ And Qualcomm is entitled to ████████████████████████████ ███████ within the scope of the ALA. These obligations are reflected in multiple places in the Qualcomm ALA, including but not limited to ███████████████████████ ████████████.

Qualcomm has systematically and willfully breached these obligations, and its breaches have accelerated and expanded in recent months. Specifically, Qualcomm has ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████ And Qualcomm initiated and continues to prosecute contractual claims that arise from Qualcomm's improper conduct with respect to these unlicensed cores.

Due to Qualcomm's willful, ongoing, and renewed actions, Qualcomm is in material breach of the Qualcomm ALA. ██████████████████████████████████████████ ███████ To do so, Qualcomm must, ████████████████████████████████████ ███████████████.

ARMQC_02749015



██████████████████████████████████████████████████ If Qualcomm does not do so ██████████

██████████████████████████████████████████████████ Qualcomm shall be subject to ██████████

██████████████████████ of the Qualcomm ALA.

Sincerely,

Spencer Collins
EVP, Chief Legal Officer
Arm Limited
110 Fulbourn Road
Cambridge, CB1 9NJ
United Kingdom

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

ARMQC_02749016

# EXHIBIT 13

| Message | |
|---|---|
| **From**: | Siegel, Kenneth A. [ksiegel@mofo.com] |
| **Sent**: | 23/10/2024 01:41:29 |
| **To**: | Rene Haas [Rene.Haas@arm.com]; Spencer Collins [Spencer.Collins@arm.com] |
| **Subject**: | FW: Bloomberg: Arm to Cancel Qualcomm Chip Design License in Escalation of Feud |

Warning: EXTERNAL SENDER, use caution when opening links or attachments.

**Arm to Cancel Qualcomm Chip Design License in Escalation of Feud**
Bloomberg News
By Ian King
22 October 2024

- *Arm sued its longtime partner for breach of contract in 2022*
- *The company gave Qualcomm a 60-day notice of cancellation*

Arm Holdings Plc is canceling a license that allowed longtime partner Qualcomm Inc. to use Arm intellectual property to design chips, escalating a legal dispute over vital smartphone technology.

Arm, based in the UK, has given Qualcomm a mandated 60-day notice of the cancellation of their so-called architectural license agreement, according to a document seen by Bloomberg. The contract allows Qualcomm to create its own chips based on standards owned by Arm.

The showdown threatens to roil the smartphone and personal computer markets, as well as disrupting the finances and operations of two of the most influential companies in the semiconductor industry.

Qualcomm sells hundreds of millions of processors annually — technology used in the majority of Android smartphones. If the cancellation takes effect, the company might have to stop selling products that account for much of its roughly $39 billion in revenue, or face claims for massive damages.

The move ratchets up a legal fight that began when Arm sued San Diego-based Qualcomm — one of its biggest customers — for breach of contract and trademark infringement in 2022. With the cancellation notice, Arm is giving the US company an eight-week period to remedy the dispute.

Representatives for Arm and Qualcomm declined to comment.

The two are headed to a trial to resolve the breach-of-contract claim by Arm and a countersuit by Qualcomm. The disagreement centers on Qualcomm's 2021 acquisition of another Arm licensee and a failure — according to Arm — to renegotiate contract terms. Qualcomm argues that its existing agreement covers the activities of the company that it purchased, the chip-design startup Nuvia.

Nuvia's work on microprocessor design has become central to new personal computer chips that Qualcomm sells to companies such as HP Inc. and Microsoft Corp. The processors are the key component to a new line of artificial intelligence-focused laptops dubbed AI PCs. Earlier this week, Qualcomm announced plans to bring Nuvia's design — called Oryon — to its more widely used Snapdragon chips for smartphones.

Arm says that move is a breach of Qualcomm's license and is demanding that the company destroy Nuvia designs that were created before the Nuvia acquisition. They can't be transferred to Qualcomm without permission, according to the original suit filed by Arm in the US District Court in Delaware. Nuvia's licenses were terminated in February 2023 after negotiations failed to reach a resolution.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Like many others in the chip industry, Qualcomm relies on an instruction set from Cambridge, England-based Arm, a company that has created much of the underlying technology for mobile electronics. An instruction set is the basic computer code that chips use to run software such as operating systems.

If Arm follows through with the license termination, Qualcomm would be prevented from doing its own designs using Arm's instruction set. It would still be able to license Arm's blueprints under separate product agreements, but that path would cause significant delays and force the company to waste work that's already been done.

Prior to the dispute, the two companies were close partners that helped advance the smartphone industry. Now, under newer leadership, both of them are pursuing strategies that increasingly make them competitors.

Under Chief Executive Officer Rene Haas, Arm has shifted to offering more complete designs — ones that companies can take directly to contract manufacturers. Haas believes that his company, still majority owned by Japan's SoftBank Group Corp., should be rewarded more for the engineering work it does. That shift encroaches on the business of Arm's traditional customers, like Qualcomm, who use Arm's technology in their own final chip designs.

Meanwhile, under CEO Cristiano Amon, Qualcomm is moving away from using Arm designs and is prioritizing its own work, something that potentially makes it a less lucrative customer for Arm. He's also expanding into new areas, most notably computing, where Arm is making its own push. But the two companies' technologies remain intertwined, and Qualcomm isn't yet in a position to make a clean break from Arm.

Arm was acquired in 2016 by SoftBank, and part of it was sold to the public in an offering in September of last year. The Japanese company still owns more than 80% of the Arm.

Arm has two types of customers: companies that use its designs as the basis for their chips and ones that create their own semiconductors and only license the Arm instruction set.

Qualcomm is no stranger to licensing disputes. The company gets a large chunk of its profit from selling the rights to its own technology — a key part of mobile wireless communications. Its customers include Samsung Electronics Co. and Apple Inc., the two biggest smartphone makers.

Qualcomm emerged victorious in 2019 from a wide-ranging legal fight with Apple. It also won a court decision on appeal against the US Federal Trade Commission, which alleged that the company was using predatory licensing activities.

*[Available via Bloomberg Terminal.]*

Rizal Wong
Associate Director
New York

M. ‗‗‗‗‗‗                              +1 916.836.9786

E. ‗‗‗‗‗‗
A. ‗‗‗‗‗‗                              Rizal.Wong@fgsglobal.com
                                       909 Third Avenue
                                       New York, NY 10022

fgs global

====================================================================================

This message contains information that may be confidential and privileged. Unless you are the addressee, you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail ksiegel@mofo.com, and delete the message. Learn about Morrison & Foerster LLP's Privacy Policy.

# EXHIBIT 14

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | |
| Plaintiffs, | |
| v. | C.A. No. 24-490-MN |
| ARM HOLDINGS PLC, f/k/a, ARM LTD. a U.K. corporation, | **HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY** |
| Defendant. | |

### ARM HOLDINGS PLC'S SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S FIRST SET OF INTERROGATORIES (NOS. 1–3)

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States District Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm")'s First Set of Interrogatories (Nos. 1–3).

### GENERAL OBJECTIONS

Arm makes the following general objections, which are hereby incorporated by reference and made part of its response to each and every Interrogatory.

1. Arm objects to each Interrogatory to the extent it purports to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

2. Arm objects to the "Instructions" and "Definitions" sections to the extent they purport to alter the plain meaning and/or scope of any specific Interrogatory, on the ground that

1

**HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY**

corrections, updates, Extensions, modifications, maintenance releases and enhancements to …
architectures." *Id.*

OOBs are not █████████████" or ████████ under the Qualcomm ALA. OOBs identify
which of the previously delivered ACK tests a partner should run and are based on the
configuration of the partner's design implementation. OOBs are not ████████████████ at least
because they are not ████████████████████████████████████████████████████████
████████████████████ as defined in the Qualcomm ALA, ████████████████████ and because
OOBs are not ██████████████████████████████████████████
████████████████ as defined in the Armv8-A Architecture Annex 1 (LES-LTR-21099 SP-Version:
13.0) to the Qualcomm ALA, ████████████████████████. OOBs are also not ████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████. OOBs are also not included in ████████████████████████
████████████ of the Armv9-A Architecture Annex 1 to the Qualcomm ALA. ████████████████
████████████████ OOBs are not ████████████" because they are not ████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████ as defined in the Qualcomm ALA.
████████████████████████. OOBs are not ████████████████████████████████████
████████████████████████████████████████████████████

**<u>Qualcomm Is Not Entitled To Any ACK Patches Or OOBs For Nuvia-Based Designs</u>**

Nuvia-based designs (including Qualcomm's Oryon CPU cores and the CPU cores used in
Qualcomm's Hamoa, Pakala, Nordschleife, and Pegasus products) are unlicensed cores that fall
outside the Qualcomm ALA for the reasons explained in Arm's January 17, 2025 Motion For

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

Judgment As A Matter Of Law Or A New Trial (No. 22-1146, D.I. 596) and Arm's February 28, 2025 Reply In Support Of Its Motion For Judgment As A Matter of Law Or A New Trial (No. 22-1146, D.I. 614). Qualcomm is not entitled to any ACK Patches or OOB for those unlicensed CPU cores. ARM_00055357 ▌▌▌▌▌▌; ARM_00063298 ▌▌▌▌ Under the Qualcomm ALA, Qualcomm is licensed and permitted only to develop, verify, and sell Architecture Compliant Products. ARM_00055357 ▌▌▌▌▌▌; ARM_00063298 ▌▌▌▌ Such ▌▌▌▌▌▌ ▌▌▌▌ limited to ▌▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌ And those ▌▌▌▌▌▌▌▌ are limited to CPU cores developed (1) under the licenses granted in the Qualcomm ALA, (2) by or for Qualcomm, and (3) based on Arm Technology that Arm delivered to Qualcomm.  The pre-acquisition Nuvia designs do not satisfy any of those requirements for the reasons explained in Arm's January 17, 2025 Motion For Judgment As A Matter Of Law Or A New Trial (No. 22-1146, D.I. 596) and Arm's February 28, 2025 Reply In Support Of Its Motion For Judgment As A Matter of Law Or A New Trial (No. 22-1146, D.I. 614).  The integrated circuits and central microprocessor units Qualcomm developed that incorporate or are based on the pre-acquisition Nuvia designs therefore fall outside the scope of the Qualcomm ALA and outside the scope of Arm's support obligations under that agreement.  The Qualcomm ALA permits Qualcomm to seek support and verification solely for CPU designs created by Qualcomm employees, at a time when they were Qualcomm employees, but does not permit Qualcomm to seek support and verification for designs from third parties such as Nuvia.

Because the Nuvia-based designs are not licensed under the Qualcomm ALA, Qualcomm is not entitled to any ACK patches or OOBs for them under the Qualcomm ALA.

**Notwithstanding That Qualcomm Is Not Entitled To Support For Nuvia-Based Designs, Arm Has Since January 8, 2025 Committed To Provide Support For Them**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1/8/2025 Arm Ltr. to Qualcomm.  Qualcomm and Arm exchanged further correspondence on January 22 and 30.  1/22/2025 Qualcomm Ltr. to Arm; 1/30/2025 Arm Ltr. to Qualcomm.

<u>**Arm and Qualcomm's Press Briefing Regarding**</u>
<u>**Qualcomm's Breach of the Qualcomm ALA**</u>



On October 22, 2024 ▮▮▮▮▮▮▮, who is a partner at ▮▮▮▮▮▮, and ▮▮▮▮▮▮▮, who is a director of ▮▮▮▮▮▮▮▮▮▮ and a partner at ▮▮▮▮▮▮▮▮, discussed Arm's October 22 Notice with Ian King at Bloomberg, who reported on the Notice and upcoming trial on October 22.  Individuals knowledgeable about Arm's decision to discuss the Notice with Bloomberg are ▮▮▮▮▮ and ▮▮▮▮▮▮. On October 22 & 23, multiple news outlets reported that Qualcomm released a statement in response to the Bloomberg article. On October 22 or 23, Qualcomm released a statement to the media regarding Arm's October 22 Notice. On October 23, Arm released a statement to the media in response to Qualcomm's statement. On October 24, ▮▮▮▮▮▮ of Arm confirmed for Ian King at Bloomberg that Arm had sent the letter to Qualcomm.  Arm did not send its October 22 Notice to any third-party companies or customers.

Following the publication of an article by Ian King on October 22, 2024, a statement by Arm regarding the October 22, 2024 letter was provided to the following persons: Stephen Nellis (Reuters), Gavin Bonshor (The Register), Mark Hachman (PC World), Ina Fried (Axios), Kosuke Shimizu (Nikkei), Ryan Browne (CNBC), David Lumb (CNET), Hadlee Simmons (Android Authority), Adam Clark (Barrons), Tae Kim (Barrons), Benjamin Woodecki (Capacity Media), Wayne Ma (The Information), Kaustubh Bagalkote (Benzinga), Adrienne Valdez (MT Newswires), Chris Thomas (Android Police), James Sanders (TechInsights), Seema Mody (CNBC), Tom McKay (IT Brew/Morning Brew), and Fudo Abazovic (Fudzilla).

# EXHIBIT 15

Page 1

1

2    IN THE UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF DELAWARE
3    C.A. No. 24-490-MN
     ----------------------------------------x
4    QUALCOMM INCORPORATED, a Delaware
     corporation, QUALCOMM TECHNOLOGIES, INC.,
5    a Delaware corporation,
6                        Plaintiffs,
7         - against -
8    ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K.
     corporation
9
                         Defendant.
10
     ----------------------------------------x
11
                     June 30, 2025
12                   9:03 a.m.
13
14               *CONFIDENTIAL*
15
16       VIDEOTAPED DEPOSITION of SPENCER
17   COLLINS, held at the offices of PAUL WEISS
18   RIFKIND WHARTON & GARRISON, LLP, located at
19   1285 Avenue of the Americas, New York, New
20   York 10019, before Anthony Giarro, a
21   Registered Professional Reporter, a Certified
22   Realtime Reporter and a Notary Public of the
23   State of New York.
24
25

Page 78

SPENCER COLLINS -- CONFIDENTIAL
1
2 progress with Qualcomm, that was the
3 appropriate thing to do.
4     Q     So the fact that trial was
5 looming was a factor in sending this
6 letter; correct?
7     A     Yes.
8     Q     And so it was intentional
9 that you had the ████████████
10 expire the day after the parties expected
11 a jury verdict; yes?
12    A     We were aware of the fact
13 that the ██████████ would expire at or
14 around the conclusion of the trial.  That
15 is correct.  What we wanted was to have
16 optionality in terms of remedy.
17    Q     So you wanted to have the
18 ability to terminate the Qualcomm ALA as
19 soon as the jury came back if, in fact,
20 you had won the trial in December; is
21 that fair?
22    A     We hadn't decided as to
23 whether or not we would terminate the
24 ALA.  But we wanted the option.  We
25 wanted to be in business with customers

Page 79

SPENCER COLLINS -- CONFIDENTIAL
1
2 that respect our contracts.
3     Q     Did you know at the time
4 that you sent this letter that the
5 Snapdragon Summit, the Qualcomm's
6 Snapdragon Summit was in progress?
7     A     I don't know at what point I
8 became aware of the fact that it was a
9 conference.  I think you called it
10 Snapdragon conference.  I don't recall at
11 what point, I became aware.  But I was
12 aware that -- I was made aware that there
13 was a conference.
14    Q     Before you sent the letter?
15    A     I don't recall the specific
16 timing of that.
17    Q     How about before the letter
18 was leaked?  Did you know that the
19 Snapdragon conference was in progress
20 when you leaked the letter?
21        MR. LoCASCIO:  Object to
22 form.
23    A     I'm not aware of the letter
24 being leaked.  You just insinuated that
25 we -- I assume you mean ARM -- leaked the

Page 80

SPENCER COLLINS -- CONFIDENTIAL
1
2 letter.  We did not.  And I don't recall
3 the exact time I became aware of the
4 Snapdragon conference.
5        But what I can tell you is,
6 the ██████████ coincided with the
7 trial date from our standpoint as opposed
8 to the Snapdragon conference.
9     Q     You do not dispute, do you,
10 that Paul Kranhold, who is at FGS Global,
11 and Kenneth Siegel, who is a director at
12 SoftBank and also a Morrison & Foerster
13 partner, discussed this letter, the
14 October 22nd letter that we've been
15 talking about with Ian King at Bloomberg,
16 do you?
17    A     I am aware that they had a
18 conversation around the sending of a
19 material breach notice.  I don't know
20 what detail was discussed in terms of
21 letter.
22    Q     Was anyone from ARM in that
23 conversation?
24    A     Not to my understanding.
25    Q     And you didn't get a report

Page 81

SPENCER COLLINS -- CONFIDENTIAL
1
2 back on what was said?
3     A     No.
4     Q     Did you talk to Mr. Kranhold
5 or Mr. Siegel in advance of their
6 conversation with Bloomberg about the
7 fact that they were going to have a
8 conversation with Bloomberg?
9     A     I spoke with Mr. Siegel.  I
10 don't recall whether I spoke with Paul
11 Kranhold.  I don't know.  But I do
12 remember speaking to Ken Siegel.
13    Q     So did you authorize
14 Mr. Siegel to speak to Ian King at
15 Bloomberg?
16    A     I did.
17    Q     And you're aware that the
18 Bloomberg article says that Ian King was
19 shown a document; correct?
20    A     I have subsequently seen
21 that in the article that came out.  I
22 don't know whether he was or not; wasn't
23 on the call.
24    Q     And you don't have any
25 information as to what that document may

21 (Pages 78 - 81)

Page 154

1
2          INDEX (Cont.)
3
   QCX Exhibit 89    Letter     123
4
   QCX Exhibit 90    E-mails     125
5
   QCX Exhibit 91    Letter     127
6
   QCX Exhibit 92    Letter     131
7
   QCX Exhibit 93    Letter     132
8
   QCX Exhibit 94    ALA      134
9
   QCX Exhibit 95    Letter     142
10
   QCX Exhibit 96    Letter     143
11
   QCX Exhibit 97    Letter     144
12
   QCX Exhibit 98    Letter     146
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 156

1
2          ERRATA SHEET
            VERITEXT/NEW YORK REPORTING, LLC
3              1-800-727-6396
4  330 Old Country Road    7 Times Square
   Mineola, New York 11501  New York, New York
5  10036
6  NAME OF CASE:  Qualcomm versus ARM
   DATE OF DEPOSITION: June 30, 2025
7  NAME OF DEPONENT:  Spencer Collins
8
   PAGE LINE (S) CHANGE      REASON
9  _____|_____|_____|_____
10 _____|_____|_____|_____
11 _____|_____|_____|_____
12 _____|_____|_____|_____
13 _____|_____|_____|_____
14 _____|_____|_____|_____
15 _____|_____|_____|_____
16 _____|_____|_____|_____
17 _____|_____|_____|_____
18 _____|_____|_____|_____
19 _____|_____|_____|_____
20 _____|_____|_____|_____
21
            _____
            SPENCER COLLINS
22
23 SUBSCRIBED AND SWORN TO BEFORE ME
   THIS ____ DAY OF _____, 20__.
24
   _____  _____
25  (NOTARY PUBLIC)  MY COMMISSION EXPIRES:

Page 155

1
2      C E R T I F I C A T I O N
3
4
5      I, ANTHONY GIARRO, a Shorthand Reporter
6  and a Notary Public, do hereby certify that
7  the foregoing witness, SPENCER COLLINS , was
8  duly sworn on the date indicated, and that
9  the foregoing, to the best of my ability, is
10 a true and accurate transcription of my
11 stenographic notes.
12     I further certify that I am not
13 employed by nor related to any party to this
14 action.
15
16
17
   _____
18      ANTHONY GIARRO
19
20
21
22
23
24
25

EXHIBIT 16

CONFIDENTIAL ATTORNEYS EYES ONLY

Page 1

1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF DELAWARE

3      QUALCOMM INCORPORATED a Delaware corporation, ) Case No.

       QUALCOMM TECHNOLOGIES, INC., a Delaware      ) 24-490-MN

4      corporation,                                 )

                                                     )

5           Plaintiffs,                             )

                                                     )

6         vs.                                       )

                                                     )

7      ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K.     )

       corporation,                                 )

8                                                    )

            Defendant.                              )

9      _____)

10     ███████████████████████     VIDEOTAPED 30(b)(6) and

11              30(b)(1) DEPOSITION OF PAUL KRANHOLD

12                  San Francisco, California

13                  Thursday, July 17, 2025

14

15

16           REPORTED BY: Derek L. Hoagland

17                  CSR No. 13445

18

19

20

21

22

23

24

25

CONFIDENTIAL ATTORNEYS EYES ONLY

**Page 86**

1  MS. NYARADY: Okay.
2  BY MS. NYARADY:
3  Q.  And it has metadata from a call, and in the
4  metadata, you can see that Mr. Spicehandler is listed as
5  joining the call and leaving the call, and Mr. King
6  is -- is listed as joining and leaving the call, right?
7  A.  Mm-hmm. Mm-hmm.
8  Q.  ███████████████████████
███████████████████████
███████████████████████
12  A.  Yes. It's a pretty good guess, but I don't know
13  specific -- there would be no reason -- other reason for
14  Ben to be having a -- is this a record of a video call?
15  Q.  I can't tell from the document.
16  A.  Okay.
17  Q.  I don't know.
18  A.  The only -- yeah. The way that we create video
19  calls on our system, you -- you -- you would copy
20  yourself in order to put it on your calendar as a video
21  call, so I think it's a pretty good guess. And the way
22  that Ben described it to me is a very short video call,
23  so I think that's a -- and given the timing, I think
24  that's a pretty good guess.
25  Q.  And it --

**Page 87**

1  A.  But I -- I haven't seen the document before, and
2  I haven't talked to Ben about -- about the specific time
3  of day that that happened, so.
4  Q.  Okay. But on October 22nd, at some point in
5  time, Mr. Spicehandler had a call of some sort with
6  Mr. King ████████████████
█████████?
8  A.  Yeah, I don't -- I don't -- it looks like the
9  call took place on October 22nd UTC, but this meeting
10  looks like it was scheduled on the 23rd, which doesn't
11  make any sense to me, because the email was sent on the
12  23rd for a meeting that had already taken place.
13  Q.  Right. No. My understanding was this was just
14  memorializing that the meeting had happened. But I --
15  but, you know, if you haven't seen this, that's fine.
16  But putting aside this document, is it your
17  understanding that on October 22nd, before the article
18  came out, ██████████████████
███████████████████████
███████████████████?
21  A.  ██████████████████████
████████████████.
23  Q.  Okay. So it was after you and Mr. Siegel talked
24  to Mr. King, but before the article was published,
25  correct?

**Page 88**

1  A.  Correct.
2  Q.  Okay. Do you know whether anyone was on that
3  call other than Mr. Spicehandler and Mr. King?
4  A.  I do not.
5  Q.  What did -- you said you spoke to
6  Mr. Spicehandler in preparation for this deposition,
7  right?
8  A.  Mm-hmm.
9  Q.  Yes?
10  A.  Yes. I'm sorry.
11  Q.  What -- what did he tell you?
12  A.  He confirmed for me that he had, in fact, done
13  what I asked him to do, which was to ████████
███████████████████████
████████████████████.
16  Q.  ███████████████████████
███████████████████████
███████████.
19  A.  I don't know.
20  Q.  ████████████████████?
21  A.  I don't know.
22  Q.  Do you have any more information on what
23  ███████████████████████?
24  A.  He said that's all he did when I spoke to him
25  about it.

**Page 89**

1  Q.  So he said that he ██████████████
███████████████████████?
3  A.  Yes.
4  Q.  Okay. Did he say that -- █████████████
████████████████████?
6  A.  He did not.
7  A.  He did not ███████████████████
█████████████?
9  A.  He did not say. I'm sorry.
10  Q.  Okay. That's my fault. Bad question.
11  You understand that the Bloomberg article, when
12  it published, said that Mr. King said that he had seen a
13  document. Is it your understanding that the document he
14  was referring to is the actual October 22nd letter?
15  A.  Yes.
16  Q.  Did you get a draft of the article before
17  publication?
18  A.  No.
19  Q.  Were you able to propose any changes to the
20  article before publication?
21  A.  No.
22  Q.  Did Mr. Spicehandler tell you whether there was
23  any discussion between him and Mr. King regarding the
24  substance of the letter?
25  A.  No. As I Recall, Ben said it was a pretty quick

23 (Pages 86 - 89)

CONFIDENTIAL ATTORNEYS EYES ONLY

Page 182

1          REPORTER'S CERTIFICATE

2

3    STATE OF CALIFORNIA        )  ss.

4    I, DEREK L. HOAGLAND, CSR #13445, State of California,

5    do hereby certify:

6    That prior to being examined, the witness named in the

7    foregoing proceeding was by me sworn to testify to the

8    truth, the whole truth and nothing but the truth;

9    That said proceeding was taken down by me by stenotype

10   at the time and place therein stated and thereafter

11   transcribed under my direction into computerized

12   transcription.

13   I further certify that I am not of counsel nor attorney

14   for nor related to the parties hereto, nor am I in any

15   way interested in the outcome of this action.

16   In compliance with section 8016 of the Business and

17   Professions Code, I certify under penalty of perjury

18   that I am a certified shorthand reporter with license

19   number 13445 in full force and effect.

20   Witness my hand this 18th day of July, 2025.

21

22

23

24      DEREK L. HOAGLAND, CSR #13445

25

Page 183

1            ERRATA SHEET
          VERITEXT/NEW YORK REPORTING, LLC
2
     CASE NAME: Qualcomm Incorporated v. Arm Holdings Plc
3    DATE OF DEPOSITION: 7/17/2025
     WITNESSES' NAME: Paul Kranhold
4
5    PAGE  LINE (S)    CHANGE        REASON

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21            Paul Kranhold
22   SUBSCRIBED AND SWORN TO BEFORE ME
     THIS ____ DAY OF _____, 20__.
23
24
25   (NOTARY PUBLIC)        MY COMMISSION EXPIRES:

47 (Pages 182 - 183)

# EXHIBIT 17

Message

**Sent**:         4/2/2024 11:48:20 PM
**To**:           Dawn Hill [Dawn.Hill@arm.com]; Akshay Bhatnagar [Akshay.Bhatnagar@arm.com]
**CC**:           Richard Meacham [rmeacham@qti.qualcomm.com]
**Subject**:      Lets keep the momentum rolling and extend some more IPs!

Hi Dawn
Thx for helping complete the █████████████████████
Now that we completed the ██████████████████████████████ we like to build on that momentum with
below extension 😊

This mail is in reference to Annex 1 CM0001915, Dated Oct 18, 2019 as amended

As requested by ARM, QCOM has waited a while since our last discussions to extend ███████████████████
QCOM wants to extend the license terms for IPs listed below for another ■ years now, with extended term beginning



Please help to prepare a proposal for QCOM and ARM to discuss

Thx,
**Kurt A. Wolf**



# EXHIBIT 18

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,                )
a Delaware corporation; and           )
QUALCOMM TECHNOLOGIES, INC.,          )
a Delaware corporation,               )
                                      )
          Plaintiffs,                 )
                                      ) C.A. No.
          vs.                         ) 24-490(MN)
                                      )
ARM HOLDINGS PLC., f/k/a              )
ARM LTD., a U.K. corporation,         )
                                      )
          Defendant.                  )
_____)


HIGHLY CONFIDENTIAL

OUTSIDE COUNSEL EYES ONLY

VIDEO DEPOSITION OF MANJU VARMA

JUNE 24, 2025

SAN DIEGO, CALIFORNIA


Reported by:

Cynthia J. Vega, CA CSR 6640, RMR, RDR, CCRR 95

_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

6/24/2025          Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.          Manju Varma
Highly Confidential - Outside Counsel Eyes Only



Page 126

1  BY MR. EVANGELATOS:
2  **Q.  What is Cortex-A78's code name?**
3      A.
4  **Q.  So you were considering using**              **and**
5                    **as of the fall of 2024?**
6      MS. YING:  Objection.
7      THE WITNESS:  No.

10  BY MR. EVANGELATOS:
11  **Q.**

15      MS. YING:  Objection.
16      Why don't you reask the question, I'll make
17  the objection, and then she can answer.
18      MR. EVANGELATOS:  Sure.
19  BY MR. EVANGELATOS:
20  **Q.**

Page 127

10  BY MR. EVANGELATOS:
11  **Q.  Okay.**

20

Page 128

1              Yes.
2  BY MR. EVANGELATOS:
3  **Q.**

9

21  **Q.  And when was that product scheduled to be**
22  **released?**
23      A.  Again, very fluid.  These road map changes
24  happen all the time.  I can't remember or recollect
25  exactly when this product is expected to be

Page 129

1  launched.
2  **Q.**

13  yes, we were considering            CPU IPs as a
14

16  BY MR. EVANGELATOS:
17

23

6/24/2025      Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.      Manju Varma
Highly Confidential - Outside Counsel Eyes Only

Page 250

```
 1        CERTIFIED SHORTHAND REPORTER'S CERTIFICATE
 2
 3         I, Cynthia J. Vega, a Certified Shorthand
 4   Reporter for the State of California, do hereby
 5   certify:
 6         That the witness in the foregoing
 7   deposition was by me duly sworn; that the deposition
 8   was then taken before me at the time and place
 9   herein set forth; that the testimony and proceedings
10   were reported by me stenographically and were
11   transcribed through computerized transcription under
12   my direction; and the foregoing is a true and
13   correct record of the testimony and proceedings
14   taken at that time.
15         I further certify that I am not of counsel
16   or attorney for either or any of the parties in the
17   foregoing proceeding and caption named or in any way
18   interested in the outcome of the cause in said
19   caption.
20         IN WITNESS WHEREOF, I have subscribed my
21   name this 26th day of June, 2025.
22         Reading and Signing was requested.
23
24         _____
25         Cynthia J. Vega, CA CSR No. 6640, RMR
```

Page 251

```
 1   Manju Varma, c/o
 2   MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
 3   1201 North Market Street
 4   Wilmington, Delaware  19899
 5
 6   Case: Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.
 7   Date of deposition: June 24, 2025
 8   Deponent: Manju Varma
 9
10   Please be advised that the transcript in the above
11   referenced matter is now complete and ready for signature.
12   The deponent may come to this office to sign the transcript,
13   a copy may be purchased for the witness to review and sign,
14   or the deponent and/or counsel may waive the option of
15   signing. Please advise us of the option selected.
16   Please forward the errata sheet and the original signed
17   signature page to counsel noticing the deposition, noting the
18   applicable time period allowed for such by the governing
     Rules of Procedure. If you have any questions, please do
     not hesitate to call our office at (202)-232-0646.
19
20
21   Sincerely,
22   Digital Evidence Group
23   Copyright 2025 Digital Evidence Group
24   Copying is forbidden, including electronically, absent
25   express written consent.
```

Page 252

```
 1   Digital Evidence Group, L.L.C.
 2   1730 M Street, NW, Suite 812
 3   Washington, D.C. 20036
 4   (202) 232-0646
 5
 6   SIGNATURE PAGE
 7   Case: Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.
 8   Witness Name: Manju Varma
 9   Deposition Date: June 24, 2025
10
11   I do hereby acknowledge that I have read
12   and examined the foregoing pages
13   of the transcript of my deposition and that:
14
15   (Check appropriate box):
16   ( ) The same is a true, correct and
17   complete transcription of the answers given by
     me to the questions therein recorded.
18   ( ) Except for the changes noted in the
     attached Errata Sheet, the same is a true,
19   correct and complete transcription of the
     answers given by me to the questions therein
20   recorded.
21   _____          _____
     DATE                     WITNESS SIGNATURE
22
23   _____          _____
24   DATE                     NOTARY
25
```

Page 253

```
 1   Digital Evidence Group, LLC
 2   1730 M Street, NW, Suite 812
 3   Washington, D.C.  20036
 4   (202)232-0646
 5
 6              ERRATA SHEET
 7
 8   Case: Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.
 9   Witness Name: Manju Varma
10   Deposition Date: June 24, 2025
11   Page No.   Line No.    Change
12
13
14
15
16
17
18
19
20
21   _____       _____
22   Signature                  Date
23
24
25
```

64 (Pages 250 to 253)

# EXHIBIT 19

| From: | Will Abbey[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=75C9F4BE26C441C1B35277146 E3C50C7-WILL ABBEY] |
|---|---|
| Sent: | Fri 24/05/2024 5:27:26 AM (UTC) |
| To: | Kristin Webster[Kristin.Webster@arm.com] |
| Cc: | Doreen Wei[Doreen.Wei@arm.com]; Phillip Price[phillip.price@arm.com]; Akshay Bhatnagar[Akshay.Bhatnagar@arm.com]; Karthik Shivashankar[Karthik.Shivashankar@arm.com]; Chris Bergey[Chris.Bergey@arm.com]; Lynn Couillard[Lynn.Couillard@arm.com] |
| Subject: | Re: Privileged & Confidential - QCOM ███████ extension request |

Thanks Kris.
We should hopefully have a position by Tuesday. Apologies for delay.

Thanks
Will
Sent from my iPhone

> On May 23, 2024, at 5:27 PM, Kristin Webster <Kristin.Webster@arm.com> wrote:
>
>
> Doreen, Phillip and I had a call with Qualcomm legal today on this topic.  The call was pretty benign.  Their lawyer just wanted to ███████████████████████████. We explained that this request was under review internally.  They asked if escalation was needed and I let them know it had been escalated internally, but they were welcome to escalate as well.  I told them that I was hoping to have a response for them next week and they said they would wait to see what happened next week and decide escalation at that point.
>
> Doreen & Phillip – feel free to add any additional comments.
>
> Kris
>
> From: Will Abbey <Will.Abbey@arm.com>
> Sent: Wednesday, May 22, 2024 10:53 PM
> To: Kristin Webster <Kristin.Webster@arm.com>
> Cc: Akshay Bhatnagar <Akshay.Bhatnagar@arm.com>; Doreen Wei <Doreen.Wei@arm.com>; Karthik Shivashankar <Karthik.Shivashankar@arm.com>; Chris Bergey <Chris.Bergey@arm.com>
> Subject: Re: QCOM ███████ extension request
>
> Yes. I'm still in discussions with other EC members.  Should have a final decision

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

tomorrow.

Will,

---

**From:** Kristin Webster <Kristin.Webster@arm.com>
**Date:** Wednesday, May 22, 2024 at 1:53 PM
**To:** Will Abbey <Will.Abbey@arm.com>, Karthik Shivashankar <Karthik.Shivashankar@arm.com>, Doreen Wei <Doreen.Wei@arm.com>
**Cc:** Akshay Bhatnagar <Akshay.Bhatnagar@arm.com>, Chris Bergey <Chris.Bergey@arm.com>
**Subject:** RE: QCOM ███████ extension request

Hi Will –

Checking status on this. Have you and Chris had a chance to discuss?

Thanks,
Kris

---

**From:** Will Abbey <Will.Abbey@arm.com>
**Sent:** Thursday, May 16, 2024 12:55 PM
**To:** Karthik Shivashankar <Karthik.Shivashankar@arm.com>; Kristin Webster <Kristin.Webster@arm.com>; Akshay Bhatnagar <Akshay.Bhatnagar@arm.com>; Doreen Wei <Doreen.Wei@arm.com>
**Cc:** Akshay Bhatnagar <Akshay.Bhatnagar@arm.com>; Chris Bergey <Chris.Bergey@arm.com>
**Subject:** Re: QCOM ███████ extension request

Thank you. To be clear, this proposal isn't approved and should not be delivered externally.
I will provide further guidance in a day or two.

Thanks
Will

---

**From:** Karthik Shivashankar <Karthik.Shivashankar@arm.com>
**Date:** Thursday, May 16, 2024 at 6:02 PM
**To:** Will Abbey <Will.Abbey@arm.com>, Chris Bergey <Chris.Bergey@arm.com>, Doreen Wei <Doreen.Wei@arm.com>
**Cc:** Kristin Webster <Kristin.Webster@arm.com>, Akshay Bhatnagar <Akshay.Bhatnagar@arm.com>
**Subject:** Re: QCOM ███████ extension request

████████████████████████

Hi Will, Chris,

Please see the proposal guidance for Qualcomm which we have prepared.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Regards,
Karthik

---

**From:** Kristin Webster <Kristin.Webster@arm.com>
**Sent:** Thursday, May 9, 2024 7:22 AM
**To:** Karthik Shivashankar <Karthik.Shivashankar@arm.com>; Akshay Bhatnagar <Akshay.Bhatnagar@arm.com>
**Subject:** FW: QCOM ▇▇▇▇▇▇ extension request

Good morning –

I will put some time in your calendars to discuss the proposal for QCOM. REDACTED
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Thanks,
Kris

**From:** Will Abbey <Will.Abbey@arm.com>
**Sent:** Thursday, May 9, 2024 1:17 AM
**To:** Kristin Webster <Kristin.Webster@arm.com>
**Cc:** Lynn Couillard <Lynn.Couillard@arm.com>
**Subject:** Re: QCOM ▇▇▇▇▇▇ extension request

Apologies for the tardy response Kris. Your logic is sound.

Please work with licensing on the proposal. Let Karthik know that I have instructed you.

Thanks
Will
Sent from my iPhone

> On May 8, 2024, at 2:33 PM, Lynn Couillard <Lynn.Couillard@arm.com> wrote:
>
> Hi Will – here's the note on the ▇▇▇▇ extension for QC
>
> **From:** Kristin Webster <Kristin.Webster@arm.com>
> **Date:** Monday, May 6, 2024 at 10:24 AM
> **To:** Will Abbey <Will.Abbey@arm.com>
> **Cc:** Lynn Couillard <Lynn.Couillard@arm.com>

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

ARMQC_02784201

**Subject:** QCOM ▮▮▮▮▮ extension request

Hi Will –

As you may be aware, Qualcomm has requested to extend the term for ▮▮▮▮▮ and some system IP (▮▮▮▮▮). Their current license doesn't expire until ▮▮▮. Their request is for an additional ▮ years, but I think they would agree to a shorter term.

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

For reference – in their current agreement ▮▮▮▮▮▮▮▮▮▮

I need to work with licensing on what the appropriate license fees would be, but before I asked anyone to spend cycles on this, I wanted to get your take on ▮▮▮▮▮.

Happy to discuss if you have any questions.

Kris

Kristin Webster
Sr. Director of Sales
ARM - Austin, TX

www.arm.com

ARMQC_02784202

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

(512) 633-2627 cell
kristin.webster@arm.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

ARMQC_02784203

# EXHIBIT 20

| From: | Jeff Fonseca[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=237B6809A3684800B11BDD58E11D1D93-JEFF FONSEC] |
|---|---|
| Sent: | Mon 10/02/2025 10:38:46 PM (UTC) |
| To: | Doreen Wei[Doreen.Wei@arm.com]; Shaymus McTeague[Shaymus.McTeague@arm.com] |
| Cc: | Jeffrey Coulter[Jeffrey.Coulter@arm.com] |
| Subject: | Privileged and Confidential FW: QCOM & Arm Weekly Meeting |

Hi,

```
Redacted - Privileged
```

Regards,
Jeff Fonseca (He/Him)
(858) 395-7773

**From:** Kurt Wolf <kwolf@qti.qualcomm.com>
**Sent:** Monday, February 10, 2025 11:43 AM
**To:** Jeff Fonseca <Jeff.Fonseca@arm.com>; Jeffrey Coulter <Jeffrey.Coulter@arm.com>; Richard Meacham <rmeacham@qti.qualcomm.com>
**Subject:** Re: QCOM & Arm Weekly Meeting

Warning: EXTERNAL SENDER, use caution when opening links or attachments.

Hi Jeff
We meant to send this reply last Friday...

QCOM is still collecting internal requirements of future devices across our BUs that may use M85 cores.
Currently we are not in a position to reply with the number of single use licenses or a term license necessary.

Thx

**Kurt A. Wolf**



**From:** Jeff Fonseca <Jeff.Fonseca@arm.com>
**Sent:** Friday, January 10, 2025 10:44 AM
**To:** Kurt Wolf <kwolf@qti.qualcomm.com>; Jeffrey Coulter <Jeffrey.Coulter@arm.com>; Richard Meacham

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

<rmeacham@qti.qualcomm.com>
**Subject:** RE: QCOM & Arm Weekly Meeting

**WARNING:** This email originated from outside of Qualcomm. Please be wary of any links or attachments, and do not enable macros.

Good morning Kurt,

Arm hereby provides the offer attached to this email for Cortex-M85 that Qualcomm requested to license pursuant to ▮▮▮▮▮ of the Technology License Agreement (with Arm document number LEC-TLA-00550 "TLA").   If Qualcomm accepts the offer, please acknowledge in writing Qualcomm's acceptance of the offer and Arm will prepare an annex for M85 to the TLA and an amended and restated master royalty schedule and send the drafts to Qualcomm for signature process.

Regards,
Jeff Fonseca (He/Him)
(858) 395-7773

**From:** Kurt Wolf <kwolf@qti.qualcomm.com>
**Sent:** Wednesday, September 4, 2024 6:43 PM
**To:** Jeff Fonseca <Jeff.Fonseca@arm.com>; Jeffrey Coulter <Jeffrey.Coulter@arm.com>; Richard Meacham <rmeacham@qti.qualcomm.com>
**Subject:** Re: QCOM & Arm Weekly Meeting

Warning: EXTERNAL SENDER, use caution when opening links or attachments.

Hi Jeff,
Meant to reply earlier...

Re: M85 - QCOM feedback to ARM questions



"Pursuant to ▮▮▮▮▮▮ of the TLA, Arm is prepared to give Qualcomm a one-time quote. In order for Arm to provide a quote, we will need to know:  Apart from the ▮▮▮▮ ▮▮▮▮▮▮ of the TLA does not require QCOM to provide additional information for ARM to offer license fees and royalty rates, as described in that clause.

Thx

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Kurt A. Wolf**



---

**From:** Jeff Fonseca <Jeff.Fonseca@arm.com>
**Sent:** Wednesday, September 4, 2024 1:50 PM
**To:** Kurt Wolf <kwolf@qti.qualcomm.com>; Jeffrey Coulter <Jeffrey.Coulter@arm.com>; Richard Meacham <rmeacham@qti.qualcomm.com>
**Subject:** RE: QCOM & Arm Weekly Meeting

**WARNING:** This email originated from outside of Qualcomm. Please be wary of any links or attachments, and do not enable macros.

Hi Kurt,

Just following up as I received guidance from our legal with this reference:

"Pursuant to ▇▇▇▇▇▇ of the TLA, Arm is prepared to give Qualcomm a one-time quote. In order for Arm to provide a quote, we will need to know:

- Use case (segment application)
- Start/product launch estimated date
- Production tape-out date
- Military/space/government?
- Projected volume and market lifecycle

Regards,

Jeff Fonseca (He/Him)

(858) 395-7773

---

**From:** Jeff Fonseca
**Sent:** Thursday, August 29, 2024 1:54 PM
**To:** Kurt Wolf <kwolf@qti.qualcomm.com>; Jeffrey Coulter <Jeffrey.Coulter@arm.com>; Richard Meacham <rmeacham@qti.qualcomm.com>

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Subject:** RE: QCOM & Arm Weekly Meeting

Hi,

Per the call, follow up in response to request for pricing:

- Use case (segment application)
- Start/product launch estimated date
- Production tape-out date
- Military/space/government?
- Projected volume and market lifecycle

Regards,

Jeff Fonseca (He/Him)

(858) 395-7773

---

**From:** Kurt Wolf <kwolf@qti.qualcomm.com>
**Sent:** Thursday, August 29, 2024 12:50 PM
**To:** Jeff Fonseca <Jeff.Fonseca@arm.com>; Jeffrey Coulter <Jeffrey.Coulter@arm.com>; Richard Meacham <rmeacham@qti.qualcomm.com>
**Subject:** Re: QCOM & Arm Weekly Meeting

> Warning: EXTERNAL SENDER, use caution when opening links or attachments.

Same topics for today 🙂

**Kurt A. Wolf**



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**From:** Kurt Wolf <kwolf@qti.qualcomm.com>
**Sent:** Thursday, August 22, 2024 1:20 PM
**To:** Jeff Fonseca <Jeff.Fonseca@arm.com>; Jeffrey Coulter <Jeffrey.Coulter@arm.com>; Richard Meacham
<rmeacham@qti.qualcomm.com>
**Subject:** Re: QCOM & Arm Weekly Meeting

Hi Jeff F

Mtg Topics for 8/22/24; new to old

New

QCOM requests;

1. Extend the M55/███ agreement
2. Formal Pricing proposal request for M85
3. Specification documents for M85 (at least PPA info compared to M55)
4. Heads-up: QCOM CPU Product Management Team will reach out to you to request update and discussion on M55 & M85

Old

1. A78 STL
2. A55 REL Schedule
3. Raven Renewal
4. M85 LUL Eval
5. TAB feedback

Thx

**Kurt A. Wolf**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



---

**From:** Jeff Fonseca <Jeff.Fonseca@arm.com>
**Sent:** Wednesday, August 14, 2024 2:01 PM
**To:** Jeffrey Coulter <Jeffrey.Coulter@arm.com>; Kurt Wolf <kwolf@qti.qualcomm.com>; Richard Meacham <rmeacham@qti.qualcomm.com>
**Subject:** QCOM & Arm Weekly Meeting
**When:** Occurs every Thursday from 1:30 PM to 2:00 PM effective 8/22/2024 until 2/6/2025. There are 25 more occurrences.
**Where:** Microsoft Teams Meeting

WARNING: This email originated from outside of Qualcomm. Please be wary of any links or attachments, and do not enable macros.

_____

# Microsoft Teams  Need help?

## Join the meeting now

Meeting ID: 344 205 797 947

Passcode: h2osqq

---

**Dial in by phone**

+1 213-336-0288,,324908341# United States, Los Angeles

Find a local number

Phone conference ID: 324 908 341#

For organizers: Meeting options | Reset dial-in PIN

_____

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                ARMQC_02777463

IMPORTANT NOTICE: The contents of this email and any attachments are confidential and may also be privileged. If you are not the intended recipient, please notify the sender immediately and do not disclose the contents to any other person, use it for any purpose, or store or copy the information in any medium. Thank you.

IMPORTANT NOTICE: The contents of this email and any attachments are confidential and may also be privileged. If you are not the intended recipient, please notify the sender immediately and do not disclose the contents to any other person, use it for any purpose, or store or copy the information in any medium. Thank you.
IMPORTANT NOTICE: The contents of this email and any attachments are confidential and may also be privileged. If you are not the intended recipient, please notify the sender immediately and do not disclose the contents to any other person, use it for any purpose, or store or copy the information in any medium. Thank you.

# EXHIBIT 21

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

_____

QUALCOMM INCORPORATED, A DELAWARE        )

CORPORATION; QUALCOMM TECHNOLOGIES,      )

INC., A DELAWARE CORPORATION,            )

                                     ) C.A. No.

                       PLAINTIFFS, ) 24-490-MN

                                     )

               v.                     )

                                     )

ARM HOLDINGS PLC, F/K/A ARM LTD.,        )

A U.K. CORPORATION,                      )

                                     )

                        DEFENDANT. )

_____)

* * *  HIGHLY CONFIDENTIAL  * * *

* * *  ATTORNEYS' EYES ONLY  * * *


VIDEO-RECORDED DEPOSITION OF LARISSA COCHRON

IN HER 30(B)(1) AND 30(B)(6) CAPACITIES

FRIDAY, JULY 11, 2025

10:00 A.M. PDT

PALO ALTO, CALIFORNIA


REPORTED BY AUDRA E. CRAMER, CSR NO. 9901

_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

7/11/2025          Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.     Larissa Cochron
Highly Confidential - Attorneys' Eyes Only



Page 106

1    Q.  And what was your role in those
2  discussions?
3    A.  Internal discussions with sourcing and
4  product management when they identified the need
5  or interest in ███████████████ .
6    Q.  Okay.  And I think you said Mr. Wolf
7  was sourcing.
8        And who was product?
9    A.  Manju Varma.
10    Q.  And so as to your 30(b)(6) topics
11  today -- I can go back to where I started -- as
12  to ██████████████ and Qualcomm's claims
13  against Arm, do you have any other nonprivileged
14  information other than what you've just told me?
15        MS. MORGAN:  Objection to form.
16        THE WITNESS:  It'd be helpful if you
17  had a specific question that I might be able to
18  answer.
19  BY MS. DAWSON:
20    Q.  Well, you've testified -- that is my
21  specific question.
22        So as to ██████████████ and

Page 107

1    ███████████████████ what
3  nonprivileged information do you have in
4  addition to what you've said, the discussions
5  with Mr. Wolf and Ms. Varma?
6        MS. MORGAN:  Objection to form.
7        THE WITNESS:  I have Arm's offers in
8  response if you're considering that part of this
9  question.  I'm not sure.
10  BY MS. DAWSON:
11    Q.  Uh-huh.
12    A.  There's some overlap in the question,
13  so it's a little bit --
14    Q.  Okay.  Arm's offers in response.
15    A.  -- unclear to me what you're asking.
16    Q.  Sorry to speak over you.
17        So Arm's offers in response.
18        Did Arm end up giving Qualcomm an offer
19  for ███████████████ and the peripheral IPs?
20        MS. MORGAN:  Objection to form.
21        THE WITNESS:  In September Qualcomm
22  sent Arm a letter notifying that they --

Page 108

1  notifying Arm that they were in breach of the
2  TLA for failure to provide the offer for the
3  cores.  In response, ███████████████████
4  ██  ███████████████████████████████
5  ██  ████ that we've been talking about, the
6  ████████████████████████████████████████
7  ████ .
8        The terms were not in compliance with
9  their obligations under ██████████ in the sense
10  that ████████████████████████████████
11  ██  ██████████████████████████
12  ██  ██████████████████████████████████
13  ██  ██████████████████████████████████
14  ██  ████████████
15  ██  ██████████████████████████
16  ██  █████████████████████████ . As
19  the ASP, the average selling price of our
20  products increases.  That has a significant
21  impact on our financials.
22

Page 109

1  BY MS. DAWSON:
2    Q.  Understood.
3        So you -- that was a long answer that
4  I'm going to try to unpack.
5        But you said there was a notice that
6  Arm was in breach, and then after that, Arm ████
7  ██  ████████████████████████████████████
8  ██  ████████████████ .
9        Then you also said -- the terms of that
10  offer, though, you testified, were not in
11  compliance with their obligations under
12  ██████████ right?
13    A.  Yes.
14    Q.  So what's all the nonprivileged
15  information you have that you can share with me
16  sitting here today on why Arm was not in
17  compliance with their obligations under
18  ██████████
19    A.  Arm ██████████████████████
██  ████████████████████████████████████
██  ████████████████████████████
██  ████████████████████████

7/11/2025          Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.    Larissa Cochron
Highly Confidential - Attorneys' Eyes Only



Page 110

1    ███████████████. These are old products.
2    Q.  Uh-huh.
3    A.  ████████████████████
     ████████████████████████████
     ██████████████████████████████████
     ████████████████ █ █████████████
     ████████████████████████
     ███████████████████████████
     ████████████████████████████
     ███████████████ █ █████████████
     ████████████████████████
     █████████████
14   Q.  Okay.  Let me unpack that a little bit
15   more.  So we'll get back to ████████████
     ███████████, so just put that aside for now.
17   How do you know all this information
18   that you're sharing that Arm did not
     ██████████████████████████████████████
     ████████████████████████████████
     ████████████? Where's that information
22   coming from?

Page 111

1    A.  The terms of the ███████████ itself --
2    Q.  Uh-huh.
3    A.  -- compared to ████████████████
     ████████████████████████████.
5    Q.  Okay.  So your testimony on this is
6    informed on an analysis you did yourself --
7    A.  Kurt Wolf and --
8    MS. MORGAN:  Objection to form.
9    And let her finish asking the question.
10   Was there a question?
11   BY MS. DAWSON:
12   Q.  Your testimony on this is informed by
13   an analysis you did yourself?
14   MS. MORGAN:  Objection to form.
15   THE WITNESS:  Kurt Wolf and Manju Varma
16   did the initial analyses.
17   BY MS. DAWSON:
18   Q.  Were those initial analyses done as
19   preparation for this -- your deposition today?
20   A.  No.
21   Q.  They were done in their work as
22   Qualcomm attorneys?

Page 112

1    MS. MORGAN:  Objection to form.
2    THE WITNESS:  They are not Qualcomm
3    attorneys.
4    BY MS. DAWSON:
5    Q.  I'm sorry.  They were done in their
6    work as Qualcomm employees?  Excuse me.
7    A.  Yes.
8    Q.  And then when did they share that
9    information with you?
10   A.  At the time that we were deciding
11   whether or not to accept the offers for ████
     ████████████████.
13   Q.  Okay.  And any other nonprivileged
14   information you have to share about ██████████
     ███████████████ and Qualcomm's allegations that
16   Arm is not in compliance with ██████████ of the
17   TLA?
18   A.  There's also ██████████ ████████
     ██████████████████████████████████████
     ████████████████████████. When we
22   didn't accept the offer for the other cores,

Page 113

1    ██████████████████ ███████████████
     ███████████████████████████████████
     ███████████████████████████████████████
6    Q.  Okay.  Why did Qualcomm request to
7    extend the license to ██████████████████████
8    two years before those products -- that license
9    was set to expire?
10   A.  Our products have a relatively long
11   life cycle.  Two to three years you're going to
12   see if you -- when you look at -- if you looked
13   at our roadmaps, you'd see products are on the
14   roadmap about two to three years in advance.
15   The design, manufacturing, the verification time
16   in advance of tape-out -- and tape-out is the
17   deadline.  We have to have taped out a product
18   before the agreement expires.
19   So we need to have that IP within that
20   two- to three-period -- or we prefer to have
21   that IP within that two- to three-period
22   timeline before the expiration, and this is

29  (Pages 110 to 113)

7/11/2025        Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.    Larissa Cochron
Highly Confidential - Attorneys' Eyes Only



Page 114

1  something consistent with what Arm knows.  For
2  example, in the ▓▓▓▓▓▓▓▓▓▓▓
3  ▓▓▓▓, but ▓▓▓▓▓▓▓ were not even
4  commercially available until 2022 --
5      Q.  Uh-huh.
6      A.  -- about a three-year timeframe.
7      Q.  Got it.
8          So does Qualcomm's current roadmap
9  beyond 2026 have products that include ▓▓▓▓
10  ▓▓▓▓▓▓▓▓▓
11      A.  Beyond 2026?
12      Q.  Yes.
13      A.  Not anymore.
14      Q.  When Qualcomm made that request for
15  ▓▓▓▓▓▓▓▓▓▓▓▓ -- strike that.
16          A Qualcomm businessperson had the idea
17  to request ▓▓▓▓ as an idea to
18  sweeten the pot for Arm to extend renewal offers
19  at low prices for the peripherals; right?
20      MS. MORGAN:  Objection to form.
21      THE WITNESS:  I'm not aware of that.
22      What I am aware of is that Ziad Asghar

Page 115

1  in product management, he said that ▓▓▓▓▓
2  ▓ were Arm's -- the last of the ▓▓▓ cores
3  that we had licensed that were -- that were
4  basically good cores.  The other ▓ cores that
5  we licensed ▓▓▓▓▓▓▓▓ -- excuse
6  me -- ▓▓▓▓▓▓▓▓▓▓ were
7  either canceled, which was ▓▓▓, or they
8  didn't perform as Arm had originally told us.
9      Q.  You testified a minute ago that the
10  2026 -- post-2026 roadmap doesn't include those
11  cores; right?
12      MS. MORGAN:  Misstates the witness's
13  testimony.
14      THE WITNESS:  To my understanding, the
15  current post-2026 roadmap does not include those
16  cores.
17  BY MS. DAWSON:
18      Q.  Was Qualcomm aware of that in 2024 when
19  it made the request?
20      A.  In 2024 when we made the request, there
21  were products on the roadmap that would include
22  those cores.  But when Arm's offer was so out of

Page 116

1  line, we chose to move forward without renewing
2  the license to ▓▓▓▓▓▓▓▓▓▓, and so
3  we've begun planning for alternatives.
4      Q.  So it's your testimony sitting here
5  today that Qualcomm changed its roadmap because
6  of the Arm offer on ▓▓▓▓▓▓▓▓?
7      A.  With respect to which of the Arm cores
8  will be used in products on the roadmap, yes,
9  there have been some changes that we've begun to
10  do -- additional work, time, money, effort -- to
11  begin to transition out the cores that we had
12  planned to use from Arm for other alternatives.
13      Q.  So that didn't quite answer my
14  question.
15          In 2024 when Qualcomm made the request
16  for the cores we're talking about, ▓▓▓▓▓▓▓▓
17  ▓▓▓▓▓▓ your testimony is that Qualcomm's
18  roadmap at that time for post-2026 included
19  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓
20      A.  We wanted to use ▓▓▓▓▓▓▓▓
21  ▓▓▓▓ for products that were on the roadmap.
22          So my understanding -- and this is

Page 117

1  where Manju Varma would -- I should probably
2  refer you to her for more specific details.
3          But the products are on the roadmap for
4  whatever, you know, market --
5      Q.  Uh-huh.
6      A.  -- customer requirements, et cetera.
7  Then product management determines what
8  third-party IP do we intend to use in that
9  product.
10      Q.  Uh-huh.
11      A.  And so as part of that analysis, we
12  knew which products were on the roadmap, and
13  then we have to decide what third-party IP do we
14  want to use, and some of that third-party IP is
15  Arm.  And so it's at that point we'd go to Arm
16  or go to the other vendor and say, "Will you
17  give us a license to x, y, z we need?" and if we
18  can't get the license, like in this case with
19  Arm, then the plan changes.
20          The roadmap product is probably still
21  there.  You know, if you're saying is there a
22  change, like a product falls off the roadmap, it

30  (Pages 114 to 117)

7/11/2025          Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.    Larissa Cochron
Highly Confidential - Attorneys' Eyes Only



Page 118

1    may not.  Instead we are just transitioning out
2    the different third-party IP that's in the
3    product depending on what we can license.
4        Q.  I got it.
5        So what were the products in 2024 --
6    what were the products in 2024 that had been
7    slated post-2026 to be using ██████████
██ ██████████
9        A.  So for ██████████ -- it's two
10   different buckets of products. ██████████
11   are used together in what's called a big.LITTLE
12   configuration in a product.  So you typically
13   use them both together on the same core.
14       Q.  Okay.
15       A.  I mean same chip.  And that was for our
16   mobile, mid-tier.
17       Q.  Uh-huh.
18       A.  And there I'd have to refer you to
19   Manju for more details than that.
20       With respect to ██████, that is
21   ████████████████████████████████
██ ████████████████████████████████

Page 119

1    ████████████████████████
██ ████████████████████████
██ ████████████████████████
██ ████████████████████████
██ ████████████████████████
██ ████████████████████████
██ ████████████████████████
9    ████████████████████████
██ ████████████████████████
██ ████████████████████████.
13       Q.  Let me just stop you for a moment.
14       So in terms of the products, you said
15   that after Arm -- you didn't get the -- Qualcomm
16   didn't get the offer they wanted.  The -- those
17   implementation cores were removed.
18       So when were those removed?
19       A.  So with respect to ██████████, we
20   are currently in the process of developing the
21   alternative core -- one of the alternative cores
22   that we would put in those products.  "Removed"

Page 120

1    is probably not the right word from a technical
2    perspective, because we're not actually removing
3    some -- from a technical perspective, we're not
4    removing it today.  We are instead removing it
5    from the roadmap planning, and they're in the
6    process of developing the custom core that is
7    the alternative.
8        Q.  So Qualcomm is developing the
9    replacement for these implementation cores?
10       A.  Yeah, for ██████████, Qualcomm is
11   in the process of developing replacements.
12       Q.  So when was -- when was that decision
13   made that the custom core would replace ██████
██ ██████████?
15       A.  I don't have this date.  I'd have to
16   refer you to Manju.
17       Q.  Was it before 2024?
18       A.  No.  That would have been 2023.  No.
19       Q.  So it was after fall of 2024?
20       A.  It was after we received the offer.
21       Q.  And who made the decision to remove
22   ██████████████████ from the products post-2026.

Page 121

1        A.  I don't know if it was anyone in
2    particular that I can point to.  I know in
3    general that the plan of record is to use a
4    custom core in devices that were originally
5    going to use ██████████.
6        Q.  You don't have any testimony sitting
7    here today, though, who made that decision?
8        A.  No.
9        Q.  What group made that decision?
10       A.  No.
11       Q.  Do you have any other details you can
12   share with me about your testimony that ██████████
██ ██████ were going to be removed from the
14   post-2026 roadmap and replaced with a Qualcomm
15   custom core?
16       A.  No.
17       MS. DAWSON:  Okay.  I'm going to put in
18   front of you the next exhibit.
19       While it's getting marked, this is an
20   email starting with Qualcomm Bates 612367.
21       (Whereupon, Exhibit 8 was
22       marked for identification.)

31  (Pages 118 to 121)

7/11/2025         Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.    Larissa Cochron
Highly Confidential - Attorneys' Eyes Only



Page 134

1  ██████ pricing was so outrageous, we chose not to
2  accept the offer at that time.
3       And then, subsequently, voice and music
4  and -- that's a Qualcomm business unit -- and
5  XR, which is extended reality, identified
6  additional products that they thought they might
7  want to use using ██████, and so we submitted a
8  subsequent request.
9       Q.  Okay.  Sitting here today, what is all
10  the nonprivileged information you can share with
11  me about why Qualcomm accepted -- only accepted
12  the offer at that time for peripherals?
13       A.  ███
███████████, and the peripherals are not a
15  particularly complex IP, ████████████
██ ████████████████████████████
██ ██████████████████████████
██ ████████████████████████████
██ ███████████████████████████████
██ ███████████████████████████████
██ ██████████.
22       Q.  Uh-huh.

Page 135

1       A.  If you go to Arm's ████████████, I
2  think it was -- if you added them all up, it was
3  about ████████████████████
4       So from a financial analysis, that
5  ████████ delta, while, you know, we disagreed
6  that the price should increase, it was something
7  financially we could absorb, ████████████
██ █████████████████████████████████,
10  and that -- after they did the analysis, that
11  was not something that we could absorb.
12       Q.  So what's your basis for that
13  testimony?
14       Where do you know all that from that
15  you could absorb the increased money -- what's
16  your basis for that understanding?
17       A.  From the conversations with Manju Varma
18  and Kurt Wolf.
19       Q.  The August 2024 conversation?
20       A.  No.  The conversations I had recently
21  with them to prepare.
22       Q.  Pertaining to this?

Page 136

1       A.  Yes.
2       Q.  Is there any other information you have
3  besides the conversations with those two that
4  informs your testimony that you just gave about
5  there ████████████████, so there was a financial
6  analysis about the ████████ delta?
7       A.  I believe just privileged emails.  I
8  can't recall.
9       MS. MORGAN:  If you have a question
10  about the privilege, then we can go off the
11  record --
12       THE WITNESS:  Yeah, yeah.
13       MS. MORGAN:  -- and talk about it.  But
14  if you -- we can only go off to talk if you have
15  a question about privilege.
16       THE WITNESS:  Okay.  Then I can't
17  answer that -- or I don't --
18       MS. MORGAN:  Are you not answering
19  because you're confused about the privilege?
20       THE WITNESS:  I'm not answering --
21       MS. DAWSON:  Let's go off the record.
22       THE WITNESS:  Yeah, let's go off the

Page 137

1  record.
2       THE VIDEOGRAPHER:  We are now off the
3  record at 1:37.
4       (Pause in the proceedings.)
5       THE VIDEOGRAPHER:  We are now on the
6  record at 1:41.
7  BY MS. DAWSON:
8       Q.  So I'll ask my question again.
9       Is there any other information you have
10  besides the conversations with --
11       THE VIDEOGRAPHER:  Oh, hold on.
12       (Discussion held off the record.)
13       MS. DAWSON:  Strike that.  I'll start
14  over.
15       THE VIDEOGRAPHER:  Okay.
16  BY MS. DAWSON:
17       Q.  Is there any other information you have
18  besides the conversation with the two -- with
19  Ms. Varma and Mr. Wolf that informs your
20  testimony that you had given previously about
21  there ████████████████████████
██ ████████████████████?

35  (Pages 134 to 137)

7/11/2025          Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.     Larissa Cochron
Highly Confidential - Attorneys' Eyes Only

Page 238

1  proceedings.  We are now off the record.  The
2  time is 3:55.
3              (Whereupon, at 3:55 p.m. PDT
4         the deposition of LARISSA COCHRON
5         was adjourned.)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Page 239

1  STATE OF CALIFORNIA      )
2  COUNTY OF SAN MATEO       ) SS.
3
4       I, AUDRA E. CRAMER, CSR No. 9901, in and for the
5  State of California, do hereby certify:
6       That, prior to being examined, the witness named
7  in the foregoing deposition was by me duly sworn to
8  testify the truth, the whole truth and nothing but the
9  truth;
10      That said deposition was taken down by me in
11 shorthand at the time and place therein named, and
12 thereafter reduced to typewriting under my direction,
13 and the same is a true, correct and complete transcript
14 of said proceedings;
15      I further certify that I am not interested in the
16 event of the action.
17      Witness my hand this 14 day of July, 2025.
18
19      _____
20      Certified Shorthand
21      Reporter for the
22      State of California

Page 240

1  Larissa Cochron, c/o
2  DUNN ISAACSON RHEE LLP
3  401 9th Street Northwest
4  WASHINGTON, D.C. 20004
5
6  Case: Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.
7  Date of deposition: July 11, 2025
8  Deponent: Larissa Cochron
9
10 Please be advised that the transcript in the above
11 referenced matter is now complete and ready for signature.
12 The deponent may come to this office to sign the transcript,
13 a copy may be purchased for the witness to review and sign,
14 or the deponent and/or counsel may waive the option of
   signing. Please advise us of the option selected.
15 Please forward the errata sheet and the original signed
   signature page to counsel noticing the deposition, noting the
16 applicable time period allowed for such by the governing
17 Rules of Procedure. If you have any questions, please do
18 not hesitate to call our office at (202)-232-0646.
   Sincerely,
19 Digital Evidence Group
   Copyright 2025 Digital Evidence Group
20 Copying is forbidden, including electronically, absent
   express written consent.
21
22

Page 241

1  Digital Evidence Group, L.L.C.
2  1730 M Street, NW, Suite 812
3  Washington, D.C. 20036
4  (202) 232-0646
5
6  SIGNATURE PAGE
7  Case: Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.
8  Witness Name: Larissa Cochron
9  Deposition Date: July 11, 2025
10
11 I do hereby acknowledge that I have read
12 and examined the foregoing pages
13 of the transcript of my deposition and that:
14
15 (Check appropriate box):
16 ( ) The same is a true, correct and
17 complete transcription of the answers given by
   me to the questions therein recorded.
18 ( ) Except for the changes noted in the
   attached Errata Sheet, the same is a true,
19 correct and complete transcription of the
   answers given by me to the questions therein
20 recorded.
21 _____    _____
   DATE                WITNESS SIGNATURE
22 _____    _____
   DATE                NOTARY

61  (Pages 238 to 241)

# EXHIBIT 22



**Qualcomm Incorporated**

5775 Morehouse Drive, San Diego, CA 92121

www.qualcomm.com

**VIA ELECTRONIC AND REGISTERED MAIL**

Spencer Collins
EVP, Chief Legal Officer
ARM Limited
110 Fulbourn Road
Cambridge, CB1 9NJ
United Kingdom

ARM Limited
110 Fulbourn Road
Cambridge, CB2 2HT
United Kingdom

Dear Spencer,

We have not received confirmation of your receipt of my September 20, 2024 letter, a copy of which is attached hereto. That letter served as Qualcomm's written notice to ARM of ARM's breach of, and non-compliance with, ███████ of Qualcomm's Technology License Agreement (TLA).

This letter is Qualcomm's second written notice of breach and non-compliance ████████████████. ARM must cure this non-compliance ████████████████ or Qualcomm intends to exercise its remedies ████████████.

Qualcomm reserves all rights.

Best regards,

*[signature]*

Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated

cc: Jeff Fonseca, Account Manager, Jeff.Fonseca@arm.com (via electronic and registered mail)
Jason Child, EVP and Chief Financial Officer, jason.child@arm.com (via electronic and registered mail)
Rene Haas, Chief Executive Officer, Rene.Haas@arm.com (via electronic and registered mail)
Chief Operating Officer (via registered mail; no name or address to send via electronic mail)
ARM Legal (via facsimile +44 1223 400546)

Qualcomm

**Qualcomm Incorporated**

5775 Morehouse Drive, San Diego, CA 92121

www.qualcomm.com

**VIA ELECTRONIC AND REGISTERED MAIL**                                   September 20, 2024

Spencer Collins
EVP, Chief Legal Officer
ARM Limited
110 Fulbourn Road
Cambridge, CB1 9NJ
United Kingdom

ARM Limited
110 Fulbourn Road
Cambridge, CB2 2HT
United Kingdom

Dear Spencer,

This letter relates to the Technology License Agreement between ARM Limited ("ARM") and Qualcomm Global Trading Pte, Ltd ("Qualcomm") dated May 30, 2013 (the "TLA"). Per the ███████████████████████, this letter serves as Qualcomm's written notice of ARM's breach of, and non-compliance with, ████████████ of the TLA.

Qualcomm has requested licenses to various ARM cores, including ███████████ and Cortex-M55. Qualcomm submitted its ███████████████████ for ██████████ in April 2024. However, after repeated follow-ups from Qualcomm over several months, ARM has refused to provide any proposed license offer. When Qualcomm then submitted an ██████████ for Cortex-M55 in August 2024, ARM again refused to provide offers for any of the requested cores.

Under ████████ of the TLA, ARM must ████████████████████ and, in prior years, ARM's custom and practice was to do so promptly. However, ██████████████████████████████████████████████████████ ARM has failed to offer Qualcomm a license to the requested ████████████ We ask that ARM provide the requested core licenses immediately and in accordance with the terms and conditions of the TLA ████████ or Qualcomm will be forced to exercise its remedies under the TLA.

In addition, Qualcomm has requested licenses to various peripherals ██████████████ ████████████████████ including the GIC-700, MMU-700, and ELA-600. Qualcomm first submitted requests to license the GIC-700 in September 2023 and the MMU-700 in October 2023, but ARM refused to provide the requested offers. When Qualcomm reiterated its requests in December 2023, ARM still refused to make a timely offer.  In April 2024, Qualcomm again submitted requests to license the GIC-700 and MMU-700, as well as a request to license the ELA-600. However, after repeated follow-ups from Qualcomm over

# Qualcomm

several months, ARM still failed to provide an offer for any of the requested peripherals, restating, as recently as August 2024, that ARM would not do so.

███████████████████████████████████████████████████████ Please provide us with the requested peripheral licenses immediately, ████████████████████ ██████████████

Qualcomm reserves all rights.

Best regards,

*[signature]*

Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated

cc: Kristin Webster, Account Manager, Kristin.Webster@arm.com (via electronic and registered mail)
    Jason Child, EVP and Chief Financial Officer, jason.child@arm.com (via electronic and registered mail)
    ARM Legal (via facsimile +44 1223 400546)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# EXHIBIT 23

# EXHIBIT 24



# Qualcomm Global Trading Pte. Ltd.

## Qualcomm IP Extension Offer

*Date of Offer:*

24 October 2024

*Confidential* Copyright © 2024, Arm Limited, All rights reserved.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

SUBJECT TO CONTRACT

Please review and confirm your selection of the offer (with the corresponding Total License Fees listed in the License Fees table) that you are accepting, noting products (if any) for which you do not accept the offer.  Please also sign below to indicate your acceptance of the terms and conditions of the offer.

☐ **7 years TERM license; or**

☐ **3 years TERM license; or**

☐ **Single Use license.**

# Offer for additional license (extension)

## License Fees (in USD)

| License Fee for ARM Technology | 7 years TERM license | 3 years TERM license | Single Use license |
|---|---|---|---|
|  |  |  |  |

## Royalty Rates

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

ARMQC_02771947

SUBJECT TO CONTRACT

# General Terms

1. This Qualcomm IP Extension Offer expires on 23 November 2024.
2. This Qualcomm IP Extension Offer is subject to Qualcomm Global Trading Pte. Ltd.'s acceptance pursuant to this offer and the parties' execution of contracts memorializing the commercial terms and conditions outlined in this offer, consistent with the parties' past practice: (i) an amendment to the existing Annex 1 (Arm document number CM0001915) under the Technology License Agreement (Arm document number LEC-TLA-00550, "TLA") and (ii) an amended and restated master royalty schedule between the parties.
3. Each Single Use License provides rights to develop a single design of an ▓▓▓▓▓▓▓▓▓▓▓▓▓ within a three (3) year period from October 17, 2026.
4. A Term License provides rights to develop an unlimited number of designs of an ▓▓▓▓▓▓▓▓▓▓▓ during the specified period.
5. Royalty rates are based on the ASP of the packaged ▓▓▓▓▓▓▓▓.
6. The royalty rates specified and license grants under the relevant annex as amended pursuant to this Qualcomm IP Extension Offer will be applicable for all ▓▓▓▓▓▓▓▓▓▓▓ taped out after October 17, 2026.
7. Royalties for the aforementioned ARM CPUs shall be additive to any other royalties for other royalty bearing ARM products.
8. If an ARM CPU has more than 8 Integer CPUs in an ▓▓▓▓▓▓▓▓▓▓▓, then the parties will separately negotiate the applicable Running Royalty.
9. Each Cortex-M55 Processor Integer CPU shall be considered a separate ARM Core for the purposes of calculating royalties.
10. The royalty rates specified are not subject to any other royalty discount or royalty cap in the Master Royalty Schedule.
11. The Total Compute configuration royalty rate specified in the Royalty Rates table is applicable where the corresponding configuration specified is instantiated in the same ▓▓▓▓▓▓▓▓▓▓▓
12. Support and Maintenance is not included in this Qualcomm IP Extension Offer.
13. The pricing in this Qualcomm IP Extension Offer is based on the assumption Qualcomm will license all products for which it requested offers, but the products can be licensed independently.
14. Payment terms are in accordance with clause ▓▓▓ of the TLA. For clarity, upon Qualcomm Global Trading Pte. Ltd.'s acceptance pursuant to this Qualcomm IP Extension Offer, Qualcomm Global Trading Pte. Ltd. shall pay all License Fees for the selected license extension option within forty-five (45) days of receipt of ARM's invoice therefor.

### Agreed and Accepted by Qualcomm Global Trading Pte. Ltd.

### Qualcomm Global Trading Pte. Ltd.

SIGNED:

NAME:

TITLE:

DATE:

*Confidential* Copyright © 2024, Arm Limited, All rights reserved.

# EXHIBIT 25

# EXHIBIT 26

**United States District Court**

**District of Delaware**

**Civil Action No. 1:24-cv-00490-MN**

**Qualcomm Incorporated and**

**Qualcomm Technologies, Inc.**

**v.**

**Arm Holdings plc**

**Expert Report of Patrick F. Kennedy, Ph.D.**

**August 8, 2025**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

## TABLE OF CONTENTS

I.    Introduction .................................................................................. 1

II.   Qualifications and Testimony ...................................................... 1

III.  Materials Considered ................................................................... 2

IV.  Case Background .......................................................................... 3

    A.   Relevant Parties ................................................................... 3

        i.    Qualcomm ................................................................. 3

        ii.   Arm Holdings plc ...................................................... 3

    B.   Litigation .............................................................................. 7

    C.   Relevant Arm / Qualcomm Licenses .................................. 8

        i.    Qualcomm ALA ........................................................ 9

        ii.   Qualcomm TLA ....................................................... 11

V.   Damages Analysis ...................................................................... 15

    A.   Framework for Available Remedies .................................. 15

    B.   Calculation of ALA and TLA Royalties Paid by Qualcomm Following Arm's Alleged Breach of the Qualcomm ALA ................................................. 15

    C.   Calculation of ALA and TLA Royalties Paid by Qualcomm Following Arm's Alleged Breach of the Qualcomm TLA ................................................. 19

    D.   Comparison of Arm's Proposed License Fees and Royalty Rates for ██████████████ ................................ 23

        i.    Proposed License Fees and Royalty Rates vs. Qualcomm's Existing License ............................... 24

            a. License Fee Comparison ............................... 24

            b. Royalty Rate Comparison ............................ 31

        ii.   Proposed License Fees and Royalty Rates vs. ██████████████ .... 33

            a. License Fee Comparison ............................... 33

            b. Royalty Rate Comparison ............................ 36

        iii.  Proposed License Fees and Royalty Rates vs. Third-Party Licenses ... 37

    E.   Qualcomm's Damages Related to Arm's Alleged Breach of the Implied Covenant of Good Faith and Fair Dealing in the Qualcomm TLA ................ 45

        i.    Qualcomm's Existing License to the Peripheral IP ............................... 46

        ii.   Qualcomm's Requests for License Proposals ....................................... 49

        iii.  Arm's ██████████████ ............................................................. 52

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

iv.    Arm's ████████████████ ........................................................ 54

v.    Comparison of License Fees for the Peripheral IP ............................. 56

a. License Fees Proposed vs. Qualcomm's Existing License Fee ............. 56

b. License Fees Proposed vs. ████████████████████ 60

vi.    Qualcomm's Alleged Peripheral IP License Fee Overpayment............. 63

F.    Qualcomm's Damages Related to Arm's Alleged Intentional Interference and Negligent Interference with Prospective Economic Advantage ............. 68

i.    ████████████████████████████████████

G.    Conclusion ........................................................................ 80

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

## TABLE OF FIGURES

▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

## I.    INTRODUCTION

1.    I have been retained by Counsel representing Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively referred to in this report as "Plaintiffs" or "Qualcomm") to evaluate damages related to certain claims asserted by Qualcomm against Arm Holdings plc ("Arm" or "Defendant")[1] related to the alleged wrongful conduct described in Qualcomm's Second Amended Complaint in this action.[2]  The purpose of my report is to disclose my professional background and experience, the materials subject to my review, and my expert opinions associated with Qualcomm's claims regarding damages in this matter.

2.    This report summarizes my opinions given the information available to me at this time.  If I receive additional relevant information, I reserve the right to prepare a supplemental report incorporating this new information.

## II.    QUALIFICATIONS AND TESTIMONY

3.    I am an economist and Managing Director with Stout Risius Ross, LLC ("Stout"). Stout is a professional services firm that provides independent expert testimony, analysis, valuation, and strategic consulting services to clients, along with financial services such as investment banking, advisory, and valuation services.  I hold a bachelor's degree in Economics from the University of California, San Diego and a doctorate in Economics from Stanford University.  Prior to joining Stout, I was a Managing Director with Torrey Partners, a Managing

---

[1]    I am aware that there is a pending motion to amend Qualcomm's Second Amended Complaint to name both Arm Holdings plc and Arm Ltd. as Defendants.  Nothing in my analysis and quantification of certain categories of Qualcomm's claimed damages is dependent on which Arm corporate entity(ies) are named Defendant(s).  *See* Plaintiffs' Motion for Leave to Amend the Complaint to Name Arm Holdings Plc. And Arm Ltd. as Individual Defendants, August 1, 2025.

[2]    Second Amended Complaint, *Qualcomm Inc. and Qualcomm Technologies, Inc. v. Arm Holdings plc f/k/a Arm Ltd.*, Civil Action No. 1:24-cv-00490-MN, June 3, 2025 ("Second Amended Complaint"), pp. 1-6.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

Director with LECG, a Shareholder with Mack|Barclay, Inc., a Director of Economic Research with International Securities Group, and an Economist with the Board of Governors of the Federal Reserve System in Washington, D.C.   Attached at **Exhibit A** is my curriculum vitae, which summarizes my educational and professional background.

4.      My professional experience includes assessing economic damages within and outside of the litigation environment; many of these matters have required my presentation of qualified expert testimony in state and federal courts.   Attached at **Exhibit B** is a list of my deposition, arbitration, and trial testimony for the last five years.

5.      In this case, Stout is being compensated for my analysis and testimony at a rate of $950 per hour.   In preparing the analysis reflected in this report, I have been assisted by consultants employed by Stout, who performed work under my direction.  My compensation is not contingent upon the outcome of this litigation or my opinions.

## III.    MATERIALS CONSIDERED

6.      In connection with my continuing review and analysis, I have considered, reviewed, and relied upon materials and information that may be cited directly in this report and are generally summarized at the attached **Exhibit C**.   This information includes pleadings, depositions, documents produced by the parties, third party information, interviews, and other expert reports, all of which I incorporate herein by reference, even if not specifically stated.

---

STOUT RISIUS ROSS, LLC                                                                                          2
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## IV.    CASE BACKGROUND

### A. Relevant Parties

#### i.  Qualcomm

7.      Qualcomm was incorporated in 1985 and is headquartered in San Diego, California.[3]  Qualcomm is a global leader in the development and commercialization of technologies for the wireless telecommunications (e.g., 3G, 4G, and 5G wireless connectivity) and "high-performance and low-power computing and on-device artificial intelligence" markets.[4]  Qualcomm also provides technologies to markets such as automotive (e.g., connectivity, digital cockpit, advanced driver assistance systems, and automated driving) and internet of things ("IoT"), (e.g., consumer computing, voice and music, extended reality, edge networking, and industrial).[5]  Qualcomm's handset/smartphone segment generated the majority of Qualcomm's revenue in FY 2024 (64% of total revenue) and fiscal 2025 year-to-date (63% of total revenue).[6]

#### ii.  Arm Holdings plc

8.      Arm was incorporated as Widelogic Limited in 1990 and is headquartered in Cambridge, United Kingdom.[7]  Arm develops and licenses central processing units ("CPUs" or "microprocessors"[8]) and architecture technologies for use in semiconductors and products such as cloud compute, networking equipment, mobile phones, mobile applications, and consumer

---

[3]    Qualcomm Incorporated Form 10-K for the fiscal year ended September 29, 2024, pp. 6, 26.
[4]    Qualcomm Incorporated Form 10-K for the fiscal year ended September 29, 2024, p. 6.
[5]    Qualcomm Incorporated Form 10-K for the fiscal year ended September 29, 2024, p. 6.
[6]    Handset Revenue / Total Revenue = $24,863 / $38,962 = 64% (revenue in millions, USD); s*ee* Qualcomm Incorporated, Form 10-K for the fiscal year ended September 29, 2024, pp. 41, 44. Handset Revenue / Total Revenue = $20,831 / $33,013 = 63% (revenue in million, USD); *see* Qualcomm Incorporated, Form 10-Q for the quarterly period ended June 29, 2025, pp. 5, 10.
[7]    Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025, pp. 56, 66.  Arm Limited is a wholly owned subsidiary of Arm Holdings plc.
[8]    <https://download.intel.com/newsroom/kits/40thanniversary/pdfs/What_is_a_Microprocessor.pdf>.

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**

electronics (e.g., wearables, laptops).[9]  Arm states in its annual financial filing for its fiscal year ended March 31, 2025, that it "license[s] [its] products to semiconductor companies, OEMs [(Original Equipment Manufacturers)], and other organizations to design their chips."[10]  Arm further describes that its licenses have multiple components that generate revenue, including license fees, support and maintenance fees, and per-chip royalties.[11]

9.     Arm states that its "CPU products address diverse requirements for performance, power, and size."[12]  Arm also states that it offers complementary products such as graphic processing units ("GPUs") and neural processing units ("NPUs") that provide "computing acceleration," design components "that enable designers to create high-performance" and "secure" chips, and tools and software that support the "development and deployment" of Arm's products.[13]

10.     Arm's website states that "100% of the world's population uses Arm based products," with more than 310 billion Arm-based chips shipped to date.[14]  Arm's CEO, Rene Haas, has described Arm as having "the most ubiquitous computer architecture on the planet."[15]  According to Arm's SEC filings, Arm has "maintained market share in the mobile applications processor market of greater than 99% for many years, by virtue of all key mobile operating systems depending on Arm processors."[16]

---

9    Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025, pp. 57, 59-61.
10   Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025, p. 61.
11   Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025, pp. 68-69.
12   Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025, p. 57.
13   Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025, pp. 9, 58-59.
14   <https://www.arm.com/company>.
15   "Rene Haas: 'Arm has the most ubiquitous computer architecture on the planet,'" Financial Times, June 7, 2024, <https://www.ft.com/content/5b191c4c-119f-4f97-bc61-622d20bfa46d>.
16   Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025, pp. 59.

---

**STOUT RISIUS ROSS, LLC**                                                              4
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

11.      Jonathan Weiser, Former Lead Attorney at QCT,[17] testified that he "believe[s] that Arm [has] a monopoly in the mobile space, wireless space, cell phone technology with regard to its adoption" of its instruction set architecture.[18]  In an Arm Global Finance Conference 2021 presentation, Arm stated that "Arm's success has come from the wide accessibility of its architecture" and "its fostering of an enormous ecosystem of developers."[19]  Arm further states that it has an "unparalleled software ecosystem" and that "no other business ecosystem comes close to this group of silicon, system and software companies."[20]  Arm claims that its ecosystem has "over 22 million developers building on Arm" as of May 2025.[21]

12.      However, Arm appears to be shifting its strategy to make chips in house, much like architecture license partners Qualcomm and NVIDIA.  In a February 2025 article, the *Financial Times* reported that "Arm plans to launch its own [semiconductor] chip…made in-house."[22]  The *Financial Times* described that Arm previously "design[ed] the basic building blocks of a chip" and that this move is a "radical change to the…business model of licensing its blueprints to the likes of Apple and Nvidia."[23]  Mr. Haas testified ██████████████████████

██████████████████████████████████████████████

███████.[24]

13.      █████████████████████████████████████████

██████████████████████████████████████████████

---

[17]   Deposition of Jonathan Weiser, July 11, 2025, p. 55.  I understand that "QCT" refers to "Qualcomm CDMA Technologies" and is Qualcomm's "semiconductor business."  *See* Qualcomm Incorporated, Form 10-K for the fiscal year ended September 29, 2024, p. 7.
[18]   Deposition of Jonathan Weiser, July 11, 2025, pp. 8-9.
[19]   ARMQC_02727610-629 at '617.
[20]   ARMQC_02720799-800 at '799; ARMQC_00001136-163 at '142.
[21]   <https://newsroom.arm.com/blog/arm-computex-2025>.
[22]   <https://www.ft.com/content/95367b2b-2aa7-4a06-bdd3-0463c9bad008>.
[23]   <https://www.ft.com/content/95367b2b-2aa7-4a06-bdd3-0463c9bad008>.
[24]   Deposition of Rene Haas, July 7, 2025, pp. 221, 225.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



---

25   Deposition of Rene Haas, July 7, 2025, pp. 221, 225; <https://www.ft.com/content/95367b2b-2aa7-4a06-bdd3-0463c9bad008>.

26   Deposition of Rene Haas, July 7, 2025, pp. 209, 212.

27   Deposition of Lynn Couillard, July 3, 2025, p. 13.

28   Deposition of Lynn Couillard, July 3, 2025, pp. 122, 132.

29   Deposition of Lynn Couillard, July 3, 2025, pp. 122-124.

30   Deposition of Lynn Couillard, July 3, 2025, pp. 125-126.

31   Deposition of Mohamed Awad, July 29, 2025, pp. 7-8.

32   Deposition of Mohamed Awad, July 29, 2025, pp. 40-41.

33   Deposition of Rene Haas, July 7, 2025, p. 186.

---

STOUT RISIUS ROSS, LLC

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

███  ████████████████████████████████████████

████████████████████████████████████████

## B. Litigation

15.    On August 31, 2022, Arm filed a complaint against Qualcomm and NuVia, Inc. ("Nuvia") for breach of contract – specific performance, declaratory judgment and trademark infringement under 15 U.S.C § 1114, and declaratory judgment and false designation under 15 U.S.C § 1125 in the U.S. District Court for the District of Delaware.[36]  Qualcomm and Nuvia responded with an amended counterclaim filed on October 26, 2022, seeking a declaratory judgment that the defending parties did not breach Nuvia's license agreements with Arm.[37]  Qualcomm also sought a declaratory judgment that its custom CPU products were licensed under Qualcomm's architecture license agreement with Arm.[38]  The parties proceeded to a combined bench and jury trial from December 13, 2024 to December 20, 2024.[39]  The jury found that Qualcomm did not breach the architecture license agreement between Arm and Nuvia and that Qualcomm's CPUs that include designs acquired in the Nuvia acquisition are licensed under the architecture license agreement between Arm and Qualcomm.[40]  The jury did not reach a verdict on Arm's claim that Nuvia breached the architecture license agreement between Arm and Nuvia.[41]

---

[34]    Deposition of Rene Haas, July 7, 2025, pp. 190-191.
[35]    Deposition of Rene Haas, July 7, 2025, pp. 196-197.
[36]    Complaint, *Arm Ltd. v. Qualcomm Inc., Qualcomm Technologies, Inc. and Nuvia, Inc.*, Civil Action No. 1:22-cv-01146-MN, August 31, 2022.
[37]    Defendants' Answer and Defenses to Plaintiff's Complaint and Jury Demand and Defendants' Amended Counterclaim, October 26, 2022, p. 80.
[38]    Defendants' Answer and Defenses to Plaintiff's Complaint and Jury Demand and Defendants' Amended Counterclaim, October 26, 2022, p. 80.
[39]    Opening Brief in Support of Defendant NuVia, Inc.'s Renewed Motions for Judgment as a Matter of Law, January 17, 2025, p. 1.
[40]    Opening Brief in Support of Defendant NuVia, Inc.'s Renewed Motions for Judgment as a Matter of Law, January 17, 2025, p. 1.
[41]    Opening Brief in Support of Defendant NuVia, Inc.'s Renewed Motions for Judgment as a Matter of Law, January 17, 2025, p. 1.

---

STOUT RISIUS ROSS, LLC                                                                        7
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

16.    On April 18, 2024, Qualcomm filed a complaint (the "Complaint") against Arm for two counts, including declaratory judgment and breach of ████████ of the parties' architecture license agreement.[42]  On December 16, 2024, Qualcomm filed a first amended complaint (the "First Amended Complaint") against Arm that added claims for breach of the implied covenant of good faith and fair dealing, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, and violations of California unfair competition law under California Business and Professions Code §§ 17200 *et seq,* in addition to the aforementioned counts alleged in the Complaint.[43]  On June 3, 2025, Qualcomm filed its second amended complaint (the "Second Amended Complaint") against Arm that added claims for Arm's contractual breach of sections ███████████ of the parties' technology license agreement.[44]

## C. Relevant Arm / Qualcomm Licenses

17.    I understand that Arm licenses its technology under agreements including architecture license agreements ("ALA") and technology licensing agreements ("TLA").[45]  Arm states that "architecture licensees [under an ALA] will often also license Arm CPU designs [under a TLA] to use either as a complementary processor alongside the licensee's Arm-compliant CPU design, or in other chips where the licensee's own design is unsuitable."[46]

---

[42]  Complaint, *Qualcomm Incorporated, Qualcomm Technologies, Inc., v. Arm Holdings Plc.,* Civil Action No. 24-490-MN, April 18, 2024 ("Complaint"), pp. 20-21, 23.

[43]  First Amended Complaint, *Qualcomm Incorporated, Qualcomm Technologies, Inc., v. Arm Holdings Plc.,* Civil Action No. 24-490-MN, December 16, 2024 ("First Amended Complaint"), pp. 39-47.

[44]  Second Amended Complaint, pp. 52-65.

[45]  Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025, pp. 67-68.

[46]  Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025, p. 68.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

18.    Under an Arm ALA, a licensee develops custom CPU designs that are compliant with the Arm instruction set architecture ("ISA") for a fixed architecture license fee.[47]  Under a TLA, Arm licenses a "single CPU design or other technology design to a customer in return for a fixed license fee."[48]  Arm also states that it "generate[s] the majority of [its] revenue from customers who enter into license agreements, pursuant to which [Arm] receive[s] royalty fees based on average selling price of the customer's Arm-based chip or a fixed fee per chip."[49]  Arm describes that the TLA "may be limited by term (i.e., the number of years during which the licensee is entitled to incorporate [Arm's] products in new chip designs, but licensees typically have the right to manufacture designs perpetually) and/or by number of uses (i.e., the number of concurrent chip designs that may use [Arm's] products)."[50]

i.    █████████████

█    ███████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████ █████████████
████████████████████████████████████████████

---

[47]  Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025, p. 68.
[48]  Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025, p. 68; *see, e.g.,* ARMQC_02747848-867 at '866-867.
[49]  Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025, p. 68.
[50]  Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025, p. 68.
[51]  I understand that Qualcomm Global Trading PTE Ltd. is a subsidiary of Qualcomm. *See* <https://www.sec.gov/Archives/edgar/data/804328/000080432824000075/qcom092924ex21.htm>.  I refer to Qualcomm Global Trading PTE Ltd. as "Qualcomm" at times throughout my report.
[52]  ARM_00055357-399 at '357.
[53]  ARM_00055357-399 at '357, '360, '363; QCARM_0343120-142; QCARM_0338573-576; QCVARM_1015821-843.  I understand that Arm refers to the "v8-A" architecture as "v8."

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



---

[56] ARM_00055357-399 at '357, '368.
[57] ARM_00055357-399 at '367-368.
[58] ARM_00055357-399 at '372-373.

---

STOUT RISIUS ROSS, LLC                                                                 10
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



### ii. Qualcomm TLA





---

59  ARM_00055357-399 at '373.
60  QCVARM_1015821-843 at '821, '827.
61  QCVARM_1015821-843 at '834-835.
62  QCVARM_1015821-843 at '833.
63  QCARM_0343533-587 at '533.
64  QCARM_0343533-587 at '533, '535, '537.
65  QCARM_0343533-587 at '541.
66  QCARM_0343533-587 at '552.
67  QCARM_0343533-587 at '545-546.

---

STOUT RISIUS ROSS, LLC

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



---

68  QCARM_0343533-587 at '545.
69  QCARM_0343533-587 at '546.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



---

70    QCARM_0343533-587 at '546.
71    QCARM_0343533-587 at '546.
72    ARMQC_02747848-867 at '848.

---

STOUT RISIUS ROSS, LLC                                                    13
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

**D. Comparison of Arm's Proposed License Fees and Royalty Rates for** ████████
████████████████

48.    As part of the ██████████████████████████████████

████████████████████████████████████████  ████████████████

████████  ██████████████████████████████████████

██████████.[124] Each respective term license had the following proposed license fees for ████████

████████████████.



[122]  Second Amended Complaint, pp. 39-40.
[123]  QCVARM_0616967-969 at '968.
[124]  QCVARM_0616967-969 at '969.
[125]  QCVARM_0616967-969 at '968.



---

126   QCVARM_0616967-969 at '968.  Figure contains screen shot from Arm's ████████████

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

**E. Qualcomm's Damages Related to Arm's Alleged Breach of the Implied Covenant of Good Faith and Fair Dealing in the Qualcomm TLA**

83.      I understand that Qualcomm asserts claims related to Arm's alleged breach of the

implied covenant of good faith and fair dealing in the Qualcomm TLA due to, among other things,

Arm's bad faith licensing proposals for IP including ███████████████████████

---

191    Second Amended Complaint, pp. 34-38.
192    Arm's First Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories
       (Nos. 4-11), July 11, 2025, p. 60.
193    Arm's First Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories
       (Nos. 4-11), July 11, 2025, p. 60.

---

STOUT RISIUS ROSS, LLC                                                                          45
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
V. ARM HOLDINGS PLC



### ii. Qualcomm's Requests for License Proposals

87.    Qualcomm ███████████████████████████████████████

████████████████ Qualcomm's current license to ████████████ expires in ████, and

Qualcomm communicated to Arm that it wished to extend its license for an additional █ years █

███.[213]  On ████████████, Qualcomm also contacted Arm and stated █████████████

████████  ██████████████████████████████████████████████████

██████████████████  ████████████████.[214]  On ████████████, Dawn Hill, former

Director of Global Sales at Arm and former "account manager for Qualcomm from Arm,"[215]

communicated to Qualcomm personnel that "██████████████████████████████████

---

[211]  QCARM_0027985-986 at '985; ARM_00062474-493 at '488.
[212]  QCVARM_0608131-138 at '133-134.
[213]  QCVARM_0608131-138 at '133-134.
[214]  QCVARM_0613037-039 at '037-038.
[215]  <https://www.linkedin.com/in/dawn-hill-montemagni/>; 30(b)(6) Deposition of Jeffrey Fonseca, July 9, 2025, p. 81.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

███ ███████████████████████████ ████████████████████████."[216]

Based on email correspondence between Qualcomm and Arm, the parties again discussed Arm

████████████████████ ██████████████████████ ██████████,

without an agreement.[217]

     88.    In ████████ Kurt Wolf, Director of Strategic Sourcing and Licensing at

Qualcomm,[218] sent an email to Ms. Hill and stated "as requested by Arm, [Qualcomm] has waited

a while since our last discussions" ████████ ██████████████████████████, and

████████████████████ ████████████ ██

██████████.[219]  In the same email, Mr. Wolf also expressed ██████████████

████ ██████████, which is also set to ████████████████████████████.[220]

     89.    On ████████████, Qualcomm communicated its ████████████████████

████████████ at the following weekly meeting with Arm.[221]  A week later, Qualcomm followed

up for proposed meeting times, as Arm did not respond to the previous email.[222]  Arm replied that

it was "waiting on the internal approval to proceed with this meeting.  As soon as [Arm has]

approval, [Arm] will reach out with day/time options."[223]  On ████████████, Qualcomm sent a third

follow-up email for proposed meeting times with Arm.[224]  In its communications, Qualcomm

requested a meeting with Will Abbey, Executive Vice President and Chief Commercial Officer at

Arm,[225] to discuss Qualcomm's ████████████████████████████████████████



---

[216]  QCVARM_0608131-138 at '131.
[217]  QCVARM_0524007-011.
[218]  <https://www.linkedin.com/in/siliconip/>.
[219]  QCVARM_0616935.
[220]  QCVARM_0616935.
[221]  QCVARM_0618338-340 at '339.
[222]  QCVARM_0618338-340 at '339.
[223]  QCVARM_0618338-340 at '339.
[224]  QCVARM_0618338-340 at '338.
[225]  Deposition of Will Abbey, June 26, 2025, p. 8.

██████████████ .[226] Qualcomm stated that Mr. Abbey should hear "why [Qualcomm] needs replies, consistent with [its] long-standing partnership, from Arm so [the parties] can continue to develop and deliver products to [Qualcomm] customers."[227]

90.     Qualcomm and Arm scheduled a meeting for ██████████ , but postponed the meeting to the following week when Mr. Abbey would be able to provide a response on the ██████████████████ .[228]  Based on internal email correspondence between Qualcomm personnel, Mr. Wolf described Mr. Abbey's response as including the ███████████████████ ████████████████████████████████████████████████████████████ ████████ "[229]

91.     I understand from testimony of Qualcomm personnel that its products have relatively long development life cycles necessitating advance planning prior to tape out.   Kurt Wolf, Director of Strategic Sourcing and Licensing at Qualcomm,[230] testified that "it is typical to take at least three years from the beginning of a design to being able to ship silicon."[231] Larissa Cochron, Senior Director of Contracts at Qualcomm,[232] also testified that Qualcomm's "products have a relatively long life cycle," that Qualcomm's "products are on the roadmap about two to three years in advance," and mentioned the "design, manufacturing, the verification time" that needs to occur before a product launches.[233]  Ms. Cochron further testified, as an example, that Qualcomm signed a license agreement for ██████████████ 2019, "but ██████████ were not even commercially available until 2022[,] … about a three-year timeframe."[234]  Ziad

---

[226]  QCVARM_0618338-340 at '338.
[227]  QCVARM_0618338-340 at '338.
[228]  QCVARM_0523826-831 at '826-827.
[229]  QCVARM_0525344-353 at '350-'351.
[230]  Deposition of Kurt Wolf, June 25, 2025, p. 16.
[231]  Deposition of Kurt Wolf, June 25, 2025, p. 28.
[232]  Deposition of Larissa Cochron, July 11, 2025, p. 11.
[233]  Deposition of Larissa Cochron, July 11, 2025, p. 113.
[234]  Deposition of Larissa Cochron, July 11, 2025, p. 114.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

Asghar, Senior Vice President and General Manager of XR & Spatial Computing at Qualcomm,[235] similarly testified that "the product cycle in silicon is very long.  So if it's ███ you're already planning for these parts in [2026]."[236]  Jeffrey Fonseca, Director of Sales at Arm,[237] who is also the "partner manager for Qualcomm" at Arm, also testified that to his knowledge, Qualcomm planned its roadmaps "two years in advance."[238]  Additionally, the "SoftBank Group Report 2025" included a "message from Arm CEO," Mr. Haas, which stated that "it takes Arm's customers time to develop the complex chips that contain Arm technology, with royalties typically materializing 2-3 years after licensing."[239]

92.    As noted above, on ██████████, Qualcomm provided Arm with written notice alleging Arm's breach of the Qualcomm TLA, including in relation to ██████████ ██████████████████  ██████████████████ ██████  Qualcomm stated in this letter that it had ████████████ ████████████████████████████████████████ ████████████████████████████████████████████.█"[241]

### iii. Arm's ████████████████

93.    As  discussed  above,  on  ██████████████████████ ██████████████████████████ █ ████████████████ ████████████████████ ██████████████████████████ ████████████████████████████████████████

---

[235]  Exhibit 1 to Deposition of Ziad Asghar, July 7, 2025.
[236]  Deposition of Ziad Asghar, July 7, 2025, p. 99.
[237]  30(b)(6) Deposition of Jeffrey Fonseca, July 9, 2025, p. 11.
[238]  30(b)(6) Deposition of Jeffrey Fonseca, July 9, 2025, p. 88.
[239]  <https://group.softbank/en/ir/financials/annual_reports/2025/message/arm>.
[240]  QCVARM_0616952-954 at '953.
[241]  QCVARM_0616952-954 at '953-'954.
[242]  QCVARM_0616967-969.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



94.    On .[247]  In this letter, Qualcomm asked Arm to

[248]  According to testimony

from Larissa Cochron, Senior Director of Contracts at Qualcomm,[249] while Qualcomm "disagreed

that the price should increase" for the Peripheral IP, Qualcomm felt it "could absorb" the additional

cost associated with the ██████ license for a █ year term.[250]

---

243  QCVARM_0616967-969 at '968.
244  QCVARM_0616967-969 at '969.
245  QCVARM_0616967-969 at '968.
246  QCVARM_0616967-969 at '968.
247  QCVARM_0618354.
248  QCVARM_0618354.
249  Deposition of Larissa Cochron, July 11, 2025, p. 11.
250  Deposition of Larissa Cochron, July 11, 2025, p. 135.

---

STOUT RISIUS ROSS, LLC                                                            53
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**iv. Arm's** 

95.    On

---

251  QCVARM_0527544-545 at '544.
252  QCVARM_0527544-545 at '544.
253

*See* Figure 15 and Figure 16.
254  QCVARM_0527546-548 at '547.

---

**Figure 16:   Arm's Proposed License Fees for the Peripheral IP per the** [255]



96.     Based on the documents discussed below, I understand that Qualcomm accepted Arm's ███████████████.

_____

[255] QCVARM_0527546-548 at '547.
[256] QCVARM_0573056-057 at '056.
[257] QCVARM_0573056-057 at '056.
[258] QCVARM_0573056-057 at '056-057.
[259] QCVARM_0573056-057 at '056.
[260] QCVARM_0573056-057 at '057.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.

v. ARM HOLDINGS PLC

███████████████████████████████████████████████████████

### v. Comparison of License Fees for the Peripheral IP

98.     As described below, █████████████████████████████████

███████████████████████████████████████████████████████

#### a. License Fees Proposed vs. Qualcomm's Existing License Fee

---

261  QCVARM_1118081-084; QCVARM_1118085-088.
262  QCVARM_1121930; QCVARM_1121931.
263  ███████████████████████████████████████████████
264  Schedule 5.

---



110.    As shown in the figure above, for each license option and for each Peripheral IP, Arm proposed significantly more than the ███████████████████████████████ █████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████. This comparison suggests that the █-year term Peripheral IP license fees Arm ██████████████████████ ███████████████████ ████ █████████████████████████████████████████ ██████████████████████████████ ████████████████████████████████.

### vi. Qualcomm's Alleged Peripheral IP License Fee Overpayment

111.    As discussed above, Qualcomm alleges that Arm's proposals for the Peripheral IP are commercially unreasonable and made in bad faith.[283]  I have been asked by Qualcomm's counsel to calculate the amount that Qualcomm overpaid for its ██████████████████████ ████████████████████.[284]  Qualcomm's alleged overpayment is based on a comparison of

---

[282]   Schedule 3.4.
[283]   Plaintiffs' Supplemental Responses and Objections to Defendant's First Set of Interrogatories (nos. 1-9), July 11, 2025, p. 13; Second Amended Complaint, p. 34.
[284]   QCVARM_0573056-057 at '056.

what Qualcomm paid versus a but-for price reflecting commercially reasonable license fees.  I

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████. Further, I understand

that Qualcomm remains one of Arm's "major" customers and accounted for approximately $400

million of Arm's revenue in fiscal year 2025.[285]  Even with the reduced scope of licensing that

Qualcomm asserts is at least in part due to Arm's alleged wrongful conduct, Qualcomm remains

one of Arm's largest customers.  █████████████████████████████████

███████████████████████████████████████████████████████

██████████████

    112.    Additionally, I understand that the Peripheral IP that Qualcomm ████████

███████████████████████████████████████████████████████

████████████████████████████████████ █████████████████████

███████████████████████████████████████████████████████

---

[285] Arm states in its Form 20-F that Qualcomm "accounted for 10% of our total revenue for the fiscal year ended March 31, 2025," and Arm reported total revenue of approximately $4 billion.  $4,000,000,000 x 10% = $400,000,000.  *See* Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025, pp. 29, 72.

[286] Conversation with Larissa Cochron.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

consistent list price for the ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

113.    Further, as described above, Arm has produced only a limited set of license agreements with incomplete information.  Without additional information, I cannot fully assess whether there has been any change in Arm's ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████        ████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████

██████        █████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████        █████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████.

---

287  Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025, p. 29.
288  Schedule 5.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



291 Schedule 3.2.
292 ███████████████████████. *See* Schedule 3.1.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.

V. ARM HOLDINGS PLC

### F. Qualcomm's Damages Related to Arm's Alleged Intentional Interference and Negligent Interference with Prospective Economic Advantage[293]

118.   I understand that Qualcomm claims intentional interference and negligent interference with prospective economic advantage against Arm as a result of a letter that Arm sent Qualcomm on October 22, 2024 (the "Notice Letter") and prior allegedly misleading communications by Arm to Qualcomm's customers.[294]   In the Notice Letter, Arm alleged that Qualcomm was in material breach of the Qualcomm ALA for the development and marketing of "unlicensed cores" and claimed that Arm would be entitled to ███████████████████████ ████ if Qualcomm did not meet Arm's demands for a "cure" to its alleged breach.[295]   Qualcomm alleges that the Notice Letter was leaked to the media by Arm as an attempt to interfere with Qualcomm's current and potential business relationships and incite uncertainty about Qualcomm's ability to deliver Arm-compatible products.[296]

119.   In addition to the Notice Letter, I understand that Arm had previous communications with Qualcomm's customers, including via letters sent to over ██ Qualcomm customers in August 2022 and early September 2022 and to █ customers in May 2023, as well as via meetings with executives of Samsung, Qualcomm's largest customer in its mobile segment.[297]   In an October 4, 2022 meeting with Samsung executives, I understand that the

███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████

Second Amended Complaint, pp. 11-14, 42-43, 47-50, 56-59; Plaintiffs' Supplemental Responses and Objections to Defendant's First Set of Interrogatories (nos. 1-9), July 11, 2025, pp. 22-24, 30-31, 40.
[295]   Second Amended Complaint, pp. 11, 45-46.
[296]   Second Amended Complaint, pp. 47-48.
[297]   *See, e.g.,* ARM_00110507; ARM_01215885; ARM_01231025; ARM_01215878; Deposition of Ziad Asghar, July 7, 2025, p. 118; Deposition of Rene Haas, July 7, 2025, pp. 22-25; Second Amended Complaint, pp. 42-43.

chairman of the Board of Arm indicated that Qualcomm's ALA with Arm would expire in 2025, even though I understand that the parties agree that the ALA does not expire in 2025.[298]

120.    The letters that Arm sent in 2022 and 2023 to Qualcomm's customers alleged that Qualcomm breached the terms of its agreement with Arm, that certain unspecified Qualcomm products would not be covered under "███████████████," and that ██████████████████████████████████████████████████████████.[299]

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

121.    James Jeon, Vice President of Global Commercial Operations at Qualcomm,[301] testified that Qualcomm's immediate response team ("IRT") developed an approved statement to be sent to Qualcomm's customers in response to the Notice Letter.[302]  In its statement, Qualcomm claimed that Arm's Notice Letter was "designed to strongarm a longtime partner" and "interfere with [Qualcomm's] performance-leading CPUs."[303]  Qualcomm further stated that Arm's Notice Letter "appear[ed] to be an attempt to disrupt the legal process, and its claim for termination is completely baseless."[304]

122.    Mr. Jeon testified that certain customers made follow-up inquiries regarding the Notice Letter.[305]  Specifically, Mr. Jeon stated that some customers replied that "they understand the situation, they get [Qualcomm's] message, and then they don't follow up.  But some of the

---

[298]   Trial Proceedings, *Arm v. Qualcomm*, C.A. No. 22-1146 (MN), Volume 2, December 16, 2024, pp. 145, 346.
[299]   *See, e.g.,* ARM_00110511; ARM_01215886.
[300]   Deposition of Jonathan Weiser, July 11, 2025, pp. 45-49.
[301]   Deposition of James Jeon, July 11, 2025, p. 23.
[302]   Deposition of James Jeon, July 11, 2025, pp. 24-25.
[303]   *See, e.g.,* QCVARM_1121337.
[304]   *See, e.g.,* QCVARM_1121337.
[305]   Deposition of James Jeon, July 11, 2025, *e.g.,* pp. 22, 45-46.

customer[s], they have a lot of questions…it depends on who the customer is and what business they're doing with us."[306]   For example, I understand that certain Qualcomm customers communicated concerns regarding future availability of products. ████████████████████

██████████████████████████████████████████  ████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

        ██████  ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████  ██████████████████

████████████████████████████████████████████████████████████████

████████████████████████  ██████████████████████████████████████

██████████████████  ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████  █

████████████████████████████████████████████████████████████████

        ██████  ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████

---

[306]   Deposition of James Jeon, July 11, 2025, p. 46.
[307]   <https://www.linkedin.com/in/%E6%99%93%E6%B0%91-%E9%A9%AC-9381bb15a/>.
[308]   QCVARM_0454071-072 at '071.
[309]   QCVARM_0713516-518 at '517.
[310]   QCVARM_0713516-518 at '516.
[311]   <https://www.linkedin.com/in/mike-neilio-5358141/>.
[312]   QCVARM_0713516-518 at '516.
[313]   QCVARM_1028750-751 at '751.
[314]   Plaintiffs' Supplemental Responses and Objections to Defendant's First Set of Interrogatories (nos. 1-9), July 11, 2025, pp. 8-9, 22-23.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

### G. Conclusion

141.    Based on the analyses described above, I calculate the ██████████

████████████████████████████████████████████████████████████████

█████████████████████████████████ In addition, should the trier of fact determine

that Arm's alleged wrongful conduct caused Qualcomm to overpay for ████████████

████████, I quantify the amount of such overpayment.  Finally, I calculate Qualcomm's loss

associated with the ████████████████████████████████████, should the

trier of fact determine that the change in terms was caused by Arm's alleged wrongful conduct.

The figure below summarized the above-described calculations.

**Figure 27:   Summary of Qualcomm's Damages[362]**



---

[362]   Schedule 1.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

I declare under penalty of perjury that the foregoing is true and correct.


_____                    _____ 8/8/2025 _____

Patrick F. Kennedy, Ph.D.                           Executed on

Managing Director

Stout Risius Ross, LLC

EXHIBIT A



## Patrick F. Kennedy, PhD
Managing Director

Patrick F. Kennedy is a Managing Director at Stout based in San Diego, CA.  Dr. Kennedy provides analysis, consultation, and expert opinions in business and dispute contexts.  In his more than 20 years of experience, Dr. Kennedy has testified as an expert in Federal Court, the U.S. Court of Claims, Bankruptcy Court, State Court,  and in private arbitrations throughout the country.

Dr. Kennedy has analyzed economic loss and damages in matters with causes of action including, but not limited to, patent, copyright, trademark and trade secret misappropriation, false advertising, breach of contract, product liability, fraud, professional malpractice, negligence, trespass, construction defect, antitrust and unfair competition, insurance bad faith, employment disputes and loss of earnings.

Dr. Kennedy has experience in a wide range of industries involving diverse technology.

### PROFESSIONAL EXPERIENCE

| | | |
|---|---|---|
| 2023 to present | **Stout** | Managing Director |
| 2011 to 2023 | **Torrey Partners** | Managing Director |
| 2006 to 2011 | **LECG** | Managing Director (2008) |
| 1996 to 2006 | **Mack\|Barclay, Inc.** | Shareholder (1998) |
| 1995 to 1996 | **International Securities Group, Inc.** | Director of Economic Research |
| 1992 to 1995 | **Board of the Governors of the Federal Reserve System, Washington, D.C.** | Economist |

### EDUCATION

**Doctorate in Economics**, Stanford University, 1992

> Awarded Stanford University Fellowship, Bradley Foundation Dissertation Fellowship, and Outstanding Teaching Award

**Bachelor of Arts in Economics**, University of California, San Diego, 1986

> Muir College Valedictorian, Summa Cum Laude and Phi Beta Kappa.  Awarded UC Regents Scholarship and the Seymour E. Harris Economics Award

### LICENSES AND PROFESSIONAL MEMBERSHIPS

> Registered Securities Representative and Registered Principal
> (NASD Series 7, 24 and 63 – inactive)
> American Economic Association
> National Association for Business Economics
> National Association for Forensic Economics
> Licensing Executive Society

### BOARD MEMBERSHIPS

> Torrey Pines Bank, Board of Directors
> University of California San Diego, Economic Leadership Board Member

### AWARDS AND PUBLICATIONS

> IAM Patent 1000

SELECTED CASE AND INDUSTRY EXPERIENCE

INTELLECTUAL PROPERTY

- Patent infringement claims including cellular handset technologies, various integrated circuits, medical devices, action cameras, digital image sensors and processing, network and device security, software, social media, unmanned aerial vehicles, advertising, LED backlighting, vehicle equipment and testing, electronic lottery systems, antibacterial products, DNA-based diagnostic testing, radio frequency identification systems, apparel and other products
- Trade secret misappropriation claims including medical devices, responsive website design, drug development, network security, systems integration, merchant services, financial services, fiber-reinforced polymer systems, manufacturing, cellular handsets, Bluetooth devices and other products
- Trademark and copyright infringement claims including cloud storage, luxury watches, musical composition, a nationally branded convention, wireless headsets, food products, fashion accessories, field marketing organizations, ceiling fans, jewelry, toys, apparel, retail and other products

OTHER MATTERS

- Breach of contract, intentional interference with prospective economic advantage, professional malpractice, insurance bad faith and other claims in industries including, but not limited to, oil wells and extraction, pharmaceutical clinical trials, reference microorganisms and cell lines, aircraft rescue and firefighting vehicles, wineries, gaming and casinos, satellite television, water purification filters, defense contracting, aerospace, aircraft charter, medical services, government contracts, veterans counseling services, advertising, national franchises, printing, paper and plastics, multilevel marketing, agriculture, footwear, financial services, insurance brokerage and real estate development
- Qui Tam cases involving overbilling by major systems integrators, faulty illuminating flares used in military aviation, improper testing of semiconductors used in military applications, and faulty design of a spacecraft intended to return solar wind samples to earth
- Foodborne illness and product recall
- Natural disaster business losses, including the Northern and Southern California wildfires
- Eminent domain matters involving real estate development and construction aggregates
- Valuing liabilities associated with future product liability claims for an automobile manufacturer in bankruptcy court
- Valuing technology related to motor vehicle engine diagnostics, drone anti-collision sensor technology and other products and services
- Multidistrict product liability litigation including pharmaceutical products and asbestos
- Consumer and business class actions related to solar panels, a natural gas facility blowout, automotive products, assisted living facilities, mobile home park relocation and cellular services
- Antitrust damages in convention services, telecommunications, and aircraft
- Personal loss including aviation, maritime and under the Vaccine Injury Compensation Program

EXHIBIT B

**Patrick F. Kennedy, Ph.D.**
**Deposition and Trial Testimony**

| Date | Case Name | Venue | Testimony |
|------|-----------|-------|-----------|
| 08/06/25 | Contour IP Holdings v. GoPro | CA Northern – Federal Court | Deposition |
| 07/08/25 | Carmack v. American Boat Works, Inc. and American Marine Corporation | HI Federal Court | Deposition |
| 06/18/25 | Chester v. The Belt Railway Company of Chicago | IL Federal Court | Deposition |
| 06/06/25 | Ikhana Group LLC v. Viking Air Limited | Arbitration | Trial |
| 05/15/25 | Quiroz v. Caltrans | Tulare Superior Court | Trial |
| 04/08/25 | Quiroz v. Caltrans | Tulare Superior Court | Deposition |
| 04/03/25 | Valeo Schalter und Sensoren GmbH v. Nvidia Corporation | CA Northern – Federal Court | Deposition |
| 04/01/25 | Blink Health Group, LLC  v. Susan Lang | American Arbitration Association | Deposition |
| 03/17/25 | Baker v. Secretary of Department of Health and Human Services | U.S. Court of Federal Claims | Hearing |
| 12/17/24 | Jubilant Draximage, Inc. v. Jubilant Radiopharmacies | CA Central – Federal Court | Deposition |
| 12/13/24 | Nasdaq, Inc. v. Miami International Holdings, Inc. | New Jersey – Federal Court | Deposition |
| 12/03/24 | Planner 5D v. Meta Platforms, Inc. | CA Northern – Federal Court | Deposition |
| 11/12/24 | Amyndas Pharmaceuticals, LLC v. Alexion Phrmaceuticals, Inc. | MA Federal Court | Deposition |
| 11/06/24 | Scientific Applications & Research Associates (SARA), Inc. v. Zipline International, Inc. | CA Northern – Federal Court | Deposition |
| 10/25/24 | Gardner Denver, Inc. v. Accurate Air Engineering, Inc. | CA Central – Federal Court | Deposition |
| 10/04/24 | Stiner, et al. v. Brookdale Senior Living Communities, Inc. | CA Northern – Federal Court | Deposition |
| 10/03/24 | Smartsky Networks, LLC  v. GOGO Business Aviation, LLC | Delaware – Federal Court | Deposition |
| 09/30/24 | Alorica, Inc. v. Fortinet, Inc. | Santa Clara Superior Court | Trial |
| 07/26/24 | Shadow Holdings, LLC v. John Paul Mitchell Systems | American Arbitration Association | Arbitration |
| 07/19/24 | Shadow Holdings, LLC v. John Paul Mitchell Systems | American Arbitration Association | Arbitration |
| 07/08/24 | ARM Ltd v. Qualcomm, Inc. | Delaware – Federal Court | Deposition |
| 06/25/24 | Shadow Holdings, LLC v. John Paul Mitchell Systems | American Arbitration Association | Deposition |
| 06/18/24 | Risk v. United Airlines, Inc. | Los Angeles Superior Court | Deposition |
| 04/17/24 | Heredia, et al. v. Sunrise Senior Living, LLC | CA Central – Federal Court | Declaration |
| 04/16/24 | Pliner v. Central Iowa Health System, et al. | IA Federal Court | Deposition |
| 04/12/24 | Rex Computing, Inc. v. Cerebras Systems, Inc. | Delaware – Federal Court | Deposition |
| 04/10/24 | Saint Paul Commodities, Inc. v. Oleo-X LLC | NY American Arbitration Association | Arbitration |
| 04/05/24 | NantWorks, LLC v. Bank of America Corporation | CA Central – Federal Court | Deposition |
| 03/01/24 | Palm Beach Tan, Inc. v. Sunless, Inc. | OH Northern – Federal Court | Deposition |
| 02/16/24 | Cocke  v. United States of America, et al. | GA Southern – Federal Court | Deposition |
| 01/19/24 | Saint Paul Commodities, Inc. v. Oleo-X LLC | NY American Arbitration Association | Deposition |
| 12/14/23 | Davis v. Secretary of Department of Health and Human Services | U.S. Court of Federal Claims | Hearing |
| 11/15/23 | Eilan v. Secretary of Department of Health and Human Services | U.S. Court of Federal Claims | Hearing |
| 10/19/23 | Stiner, et al. v. Brookdale Senior Living Communities, Inc. | CA Northern – Federal Court | Declaration |
| 10/16/23 | Jones v. Secretary of Department of Health and Human Services | U.S. Court of Federal Claims | Hearing |
| 09/12/23 | Pacific Steel Group v. Commerical Metals Company, et al. | CA Northern – Federal Court | Deposition |
| 09/07/23 | Bryan v. Secretary of Department of Health and Human Services | U.S. Court of Federal Claims | Hearing |
| 09/05/23 | Alorica, Inc. v. Fortinet, Inc. | Santa Clara Superior Court | Deposition |
| 08/31/23 | Alorica, Inc. v. Fortinet, Inc. | Santa Clara Superior Court | Deposition |
| 08/22/23 | Avila v. Joe Avis Farms | San Joaquin Superior Court | Trial |
| 06/26/23 | Bright v. Brookdale Senior Living Inc.; and Gunza v. Brookdale Senior Living Inc. | TN Middle – Federal Court | Deposition |
| 06/01/23 | Bright v. Brookdale Senior Living Inc.; and Gunza v. Brookdale Senior Living Inc. | TN Middle – Federal Court | Declaration |
| 05/17/23 | MicroVention, Inc. v. Balt USA, Inc. | CA Central – Federal Court | Deposition |
| 04/26/23 | Taction Technology, Inc. v. Apple Inc. | CA Southern – Federal Court | Deposition |
| 04/21/23 | Philips North America LLC, et al.  v. TEC Holdings, Inc. | NC Western – Federal Court | Trial |
| 04/14/23 | Philips North America LLC, et al.  v. TEC Holdings, Inc. | NC Western – Federal Court | Trial |
| 04/13/23 | PennyMac Loan Services, LLC v. Black Knight Servicing Technologies, LLC | American Arbitration Association | Arbitration |
| 03/09/23 | Raymond James Financial, Inc, et al. v. Deutsche Bank AG, et al. | FINRA Dispute Resolution | Arbitration |
| 03/02/23 | Wisk Aero LLC v. Archer Aviation, Inc. | CA Northern – Federal Court | Deposition |
| 02/22/23 | Raymond James Financial, Inc, et al. v. Deutsche Bank AG, et al. | FINRA Dispute Resolution | Deposition |
| 02/14/23 | Crysel v. American Equity | Orange County Superior Court | Trial |
| 01/19/23 | DexCom, Inc. v. Abbott Diabetes Care, Inc. | Delaware – Federal Court | Deposition |
| 12/29/22 | Crysel v. American Equity | Orange County Superior Court | Deposition |
| 12/27/22 | PennyMac Loan Services, LLC v. Black Knight Servicing Technologies, LLC | American Arbitration Association | Deposition |
| 10/19/22 | Avila v. Joe Avis Farms | San Joaquin Superior Court | Deposition |
| 09/22/22 | Alcon Vision, LLC v. Lens.com, Inc. | NY Eastern – Federal Court | Deposition |
| 08/17/22 | Vitalyte Sports Nutrition, Inc. v. Revitalyte, LLC | TX Western – Federal Court | Deposition |
| 08/11/22 | Sunstone Information Defense, Inc. v. International Business Machines Corporation | TX Western – Federal Court | Trial |
| 08/04/22 | Rodriguez, et al. v.  Sea Breeze Jet Ski, LLC | CA Northern – Federal Court | Deposition |
| 07/28/22 | Kurin, Inc. v. Magnolia Medical Technologies, Inc. | Delaware – Federal Court | Trial |
| 05/18/22 | Stiner, et al. v. Brookdale Senior Living Communities, Inc. | CA Northern – Federal Court | Declaration |
| 05/11/22 | CRF Frozen Foods v. Pictsweet, et al. | TN Middle – Federal Court | Deposition |
| 05/04/22 | Ayers v. The Penta Building Group | Riverside Cty Superior Court | Trial |
| 03/25/22 | The Waffle v. Tucker Investments | Los Angeles Superior Court | Trial |

**Patrick F. Kennedy, Ph.D.**
**Deposition and Trial Testimony**

| Date | Case Name | Venue | Testimony |
|------|-----------|-------|-----------|
| 02/17/22 | Sunstone Information Defense, Inc. v. International Business Machines Corporation | TX Western - Federal Court | Deposition |
| 01/27/22 | Chan v. Kimball, Tirey & St. John | San Diego Superior Court | Deposition |
| 01/17/22 | MedImpact Healthcare Systems, Inc. v. IQVIA, Inc. | CA Southern - Federal Court | Deposition |
| 01/14/22 | Nelson v. United States of America, et al. | OR - Federal Court | Trial |
| 01/05/22 | DeLeon-Piedra v. Ocean Angel V | CA Northern - Federal Court | Deposition |
| 12/14/21 | Stiner, et al. v. Brookdale Senior Living Communities, Inc. | CA Northern - Federal Court | Deposition |
| 12/01/21 | Contour IP Holdings v. GoPro | CA Northern - Federal Court | Deposition |
| 11/18/21 | Bellin Memorial Hospital v. Kinsey & Kinsey, Inc. | WI Federal Court | Trial |
| 11/15/21 | The Waffle v. Tucker Investments | Los Angeles Superior Court | Deposition |
| 10/21/21 | 7510 Hazard, LLC v. Connecticut General Life Insurance Company | San Diego Superior Court | Deposition |
| 10/18/21 | Philips North America LLC, et al. v. Dorow | NC Federal Court | Deposition |
| 10/18/21 | Philips North America LLC, et al. v. Zimmerman, et al. | NC Federal Court | Deposition |
| 10/12/21 | MicroVention, Inc. v. Balt USA, Inc. | CA Central - Federal Court | Deposition |
| 10/08/21 | In re: PFA Insurance Marketing | CA Northern - Federal Court | Declaration |
| 09/28/21 | Cuker v. Pilsbury | CA Southern - Federal Court | Deposition |
| 09/23/21 | LISCR, LLC v. Legality Holdings, S.A. | VA Eastern - Federal Court | Deposition |
| 0917/21 | TRC Operating Company, Inc. v. Chevron U.S.A., Inc. | Kern Cty Superior Court | Trial |
| 09/08/21 | Philips North America LLC, et al. v. TEC Holdings, Inc. | GA Northern - Federal Court | Deposition |
| 09/02/21 | 7510 Hazard, LLC v. Connecticut General Life Insurance Company | San Diego Superior Court | Deposition |
| 08/26/21 | TRC Operating Company, Inc. v. Chevron U.S.A., Inc. | Kern Cty Superior Court | Trial |
| 08/18/21 | Stiner, et al. v. Brookdale Senior Living Communities, Inc. | CA Northern - Federal Court | Declaration |
| 08/06/21 | Kiva Health Brands, LLC v. Kiva Brands, Inc. et al. | CA Northern - Federal Court | Deposition |

EXHIBIT C

**Qualcomm Incorporated and Qualcomm Technologies, Inc. v. Arm Holdings plc**                                                                                                          **Exhibit C**
Documents Considered List

| Date | Description |
|------|-------------|
| *Legal* | |
| 08/31/22 | Complaint, Arm Ltd. v. Qualcomm Inc., Qualcomm Technologies, Inc. and Nuvia, Inc., Civil Action No. 1:22-cv-01146-MN |
| 09/30/22 | Defendants' Answer and Defenses to Plaintiff's Complaint and Jury Demand and Defendants' Counterclaim |
| 10/26/22 | Defendants' Answer and Defenses to Plaintiff's Complaint and Jury Demand and Defendants' Amended Counterclaim |
| 04/18/24 | Complaint, Qualcomm Incorporated, Qualcomm Technologies, Inc., v. Arm Holdings Plc., Civil Action No. 24-490-MN |
| 12/16/24 | First Amended Complaint and Exhibits |
| 12/16/24 | Trial Proceedings, Arm v. Qualcomm, C.A. No. 22-1146 (MN), Volume 2 |
| 01/21/25 | Qualcomm's First Set of Requests for Production (Nos. 1–52) |
| 02/07/25 | Plaintiffs' Disclosures To Arm Holdings PLC. Pursuant to Delaware Default Standard Paragraph 3 |
| 02/07/25 | Defendant Arm Holdings Plc.'s Initial Disclosures Pursuant to Paragraph 3 of the Default Standard for Discovery |
| 02/07/25 | Defendant Arm Holdings Plc.'s Rule 26(a)(1) Initial Disclosures |
| 02/07/25 | Plaintiffs' Initial Disclosures Pursuant To Rule 26(a)(1) of the Federal Rules of Civil Procedure |
| 02/07/25 | Arm Holdings Plc's First Set of Requests for Production to Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (Nos. 1–58) |
| 02/07/25 | Arm Holdings Plc's First Set of Interrogatories to Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (Nos. 1–9) |
| 02/20/25 | Arm Ltd.'s Objections and Responses to Qualcomm's First Set of Requests for Production (Nos. 1–52) |
| 02/21/25 | Qualcomm's Second Set of Requests for Production (Nos. 53–120) |
| 02/21/25 | Qualcomm's First Set of Interrogatories To Arm (Nos. 1–3) |
| 03/10/25 | Plaintiffs' Responses and Objections to Defendant's First Set of Requests for Production (Nos. 1–58) |
| 03/10/25 | Plaintiffs' Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1–9) |
| 03/14/25 | Arm Holdings Plc's Second Set of Requests for Production to Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (Nos. 59–122) |
| 03/24/25 | Arm Holdings Plc's Objections and Responses to Qualcomm's Second Set of Requests for Production (Nos. 53–120) |
| 03/24/25 | Arm Holdings Plc's Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1–3) |
| 03/27/25 | Plaintiffs' Motion for Leave To Amend the Complaint |
| 04/02/25 | Qualcomm's Third Set of Requests for Production (Nos. 121–156) |
| 04/04/25 | Defendant Arm Holdings Plc.'s Rule 26(a)(1) First Supplemental Initial Disclosures |
| 04/10/25 | Qualcomm's Amended Interrogatory No. 3 To Arm |
| 04/14/25 | Plaintiffs' Responses and Objections to Defendant's Second Set of Requests for Production (Nos. 59–122) |
| 04/16/25 | Qualcomm's Fourth Set of Requests for Production (Nos. 157–168) |
| 05/01/25 | Plaintiffs' Responses and Objections to Defendant's Third Set of Requests for Production (Nos. 123–173) |
| 05/09/25 | Qualcomm's Fifth Set of Requests for Production (Nos. 169–186) |
| 05/09/25 | Plaintiffs' Responses and Objections to Defendant's Second Set of Interrogatories (Nos. 10–13) |
| 05/12/25 | Arm Holdings Plc's Objections and Responses to Qualcomm's Amended Interrogatory No. 3 |
| 05/14/25 | Qualcomm's Second Set of Interrogatories to Arm (Nos. 4–11) |
| 05/16/25 | Arm Holdings Plc's Objections and Responses to Qualcomm's Fourth Set of Requests for Production (Nos. 157–168) |
| 05/22/25 | Qualcomm's Sixth Set of Requests for Production (Nos. 187–191) |
| 06/03/25 | Second Amended Complaint and Exhibits |
| 06/09/25 | Qualcomm's Seventh Set of Requests for Production (Nos. 192–195) |
| 06/09/25 | Arm Holdings Plc's Objections and Responses to Qualcomm's Fifth Set of Requests for Production (Nos. 169–186) |
| 06/09/25 | Qualcomm's Third Set of Interrogatories to Arm (No. 12) |
| 06/11/25 | Arm's Fifth Set of Requests for Production to Qualcomm (Nos. 228–287) |
| 06/11/25 | Arm's Third Set of Interrogatories to Qualcomm (Nos. 14–23) |
| 06/11/25 | Arm's First Set of Requests for Admission to Qualcomm (Nos. 1–30) |
| 06/11/25 | Plaintiffs' First Requests for Admissions to Defendant (Nos. 1–28) |
| 06/12/25 | Arm's Rule 26(a)(1) Second Supplemental Initial Disclosures |
| 06/13/25 | Plaintiffs' Supplemental Disclosures To Arm Holdings PLC. Pursuant to Delaware Default Standard Paragraph 3 |
| 06/13/25 | Plaintiffs' Supplemental Initial Disclosures Pursuant To Rule 26(a)(1) of the Federal Rules of Civil Procedure |
| 06/16/25 | Arm's Rule 26(a)(1) Third Supplemental Initial Disclosures |
| 06/16/25 | Arm's Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4–11) |
| 06/17/25 | Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's First Set of Requests for Production (Nos. 1–52) |
| 06/17/25 | Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's Second Set of Requests for Production (Nos. 53–120) |
| 06/17/25 | Arm Holdings Plc's First Supplemental Objections and Responses to Qualcomm's Third Set of Requests for Production (Nos. 121–156) |
| 06/18/25 | Arm's First Supplemental Response to Qualcomm's Amended Interrogatory No. 3 |
| 06/24/25 | Arm Holdings Plc's Objections and Responses to Qualcomm's Sixth Set of Requests for Production (Nos. 187–191) |
| 06/25/25 | Plaintiffs' First Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1–4, 7, and 9) |
| 07/09/25 | Arm Holdings Plc's Objections and Responses to Qualcomm's Seventh Set of Requests for Production (Nos. 192–195) |
| 07/09/25 | Plaintiffs' Responses and Objections to Defendant's Fourth Set of Requests for Production (Nos. 174–227) |
| 07/09/25 | Arm's Objections and Responses to Qualcomm's Third Set of Interrogatories (No. 12) |
| 07/11/25 | Plaintiffs' Responses and Objections to Defendant's Fifth Set of Requests for Production (Nos. 228–287) |
| 07/11/25 | Arm's First Supplemental Response to Qualcomm's Amended Interrogatory No. 3 |
| 07/11/25 | Arm's First Supplemental Response to Qualcomm's Third Set of Interrogatories (No. 12) |
| 07/11/25 | Arm's First Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4–11) |
| 07/11/25 | Arm Holdings Plc's First Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1–3) |
| 07/11/25 | Plaintiffs' Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14–24) |
| 07/11/25 | Plaintiffs' Supplemental Responses and Objections to Defendant's Second Set of Interrogatories (Nos. 10–13) |
| 07/11/25 | Plaintiffs' Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1–9) |
| 08/01/25 | Plaintiffs' Motion for Leave to Amend the Complaint to Name Arm Holdings Plc. And Arm Ltd. as Individual Defendants |

**Qualcomm Incorporated and Qualcomm Technologies, Inc. v. Arm Holdings plc**                                                                      **Exhibit C**
Documents Considered List

| Date | Description |
|------|-------------|
| *Depositions* | |
| 06/17/25 | Deposition of Sudeep Holla and Exhibits — Principal Engineer at Arm |
| 06/17/25 | Deposition of Phil Hughes and Exhibits — Corporate Vice President and Chief Communications Officer at Advanced Micro Devices, Inc. |
| 06/18/25 | Deposition of Karl Whealton and Exhibits — Senior Director of CPU, DSP, Benchmarking, and AI H/W Product Management at Qualcomm |
| 06/20/25 | 30(b)(6) Deposition of Karthik Shivashankar and Exhibits — Senior Director of Commercial Strategy and Licensing at Arm |
| 06/20/25 | Deposition of Martin Weidmann and Exhibits — Director of Product Management at Arm |
| 06/24/25 | Deposition of Manju Varma and Exhibits — Senior Director of CPU Product Management at Qualcomm |
| 06/25/25 | Deposition of Kurt Wolf and Exhibits — Director of Sourcing at Qualcomm |
| 06/25/25 | Deposition of Gerard Williams and Exhibits — Senior Director of Engineering at Qualcomm |
| 06/26/25 | Deposition of Will Abbey and Exhibits — Executive Vice President and Chief Commercial Officer at Arm |
| 06/26/25 | Deposition of Ehab Youssef and Exhibits — Vice President and Deputy General Counsel of Licensing, Legal Ops, and Trade Compliance at Arm |
| 06/27/25 | Deposition of Richard Meacham and Exhibits — Principal Engineer Automotive CPU at Qualcomm |
| 06/27/25 | Deposition of Mark Dragicevich and Exhibits — Senior Director of Finance at Qualcomm |
| 06/27/25 | Deposition of Michael Williams and Exhibits — Lead Architect for Debug and RAS Architecture at Arm |
| 06/30/25 | Deposition of Spencer Collins and Exhibits — Executive Vice President and Chief Legal Officer at Arm |
| 07/01/25 | Deposition of Andrew Howard and Exhibits — Vice President of Partner Success and Licensing at Arm |
| 07/01/25 | Deposition of Jean-Francois Vidon and Exhibits — Senior Director of Engineering at Qualcomm |
| 07/01/25 | 30(b)(6) Deposition of Pavankumar Mulabagal and Exhibits — Senior Director of Sales and Business Development at Qualcomm |
| 07/02/25 | Deposition of Richard Grisenthwaite and Exhibits — Chief Architect and Fellow at Arm |
| 07/02/25 | Deposition of Paul Williamson and Exhibits — Senior Vice President and General Manager of IoT at Arm |
| 07/02/25 | 30(b)(6) Deposition of Cristiano Amon and Exhibits — President and CEO of Qualcomm at Qualcomm |
| 07/03/25 | Deposition of Jeffrey Golden and Exhibits — Hardware Engineer at Qualcomm |
| 07/03/25 | Deposition of Lynn Couillard and Exhibits — Vice President of Strategic Alliances at Arm |
| 07/04/25 | Deposition of Kenneth Siegel and Exhibits — Managing Partner at Morrison & Foerster |
| 07/04/25 | Deposition of Peter Greenhalgh and Exhibits — Senior Vice President of Technology at Arm |
| 07/07/25 | Deposition of Aparajita Bhattacharya and Exhibits — Senior Director of Engineering at Arm |
| 07/07/25 | Deposition of Rene Haas and Exhibits — CEO at Arm |
| 07/07/25 | Deposition of Ziad Asghar and Exhibits — Senior Vice President and General Manager of XR & Spatial Computing at Qualcomm |
| 07/08/25 | Deposition of Laura Sand and Exhibits — Senior Vice President, Legal Counsel at Qualcomm |
| 07/08/25 | Deposition of John Horley and Exhibits — Distinguished Engineer at Arm |
| 07/09/25 | Deposition of Jignesh Trivedi and Exhibits — Director of Engineering at Qualcomm |
| 07/09/25 | 30(b)(6) Deposition of Jeffrey Fonseca and Exhibits — Director of Sales at Arm |
| 07/10/25 | Deposition of Durga Malladi and Exhibits — Senior Vice President and General Manager of Technology Planning and Solutions and Data Center at Qualcomm |
| 07/10/25 | Deposition of Akshay Bhatnagar and Exhibits — Senior Manager of North America Licensing at Arm |
| 07/10/25 | 30(b)(6) Deposition of Jannik Nelson and Exhibits — VP of Revenue at Arm |
| 07/10/25 | 30(b)(6) Deposition of Christine Tran and Exhibits — Senior Director of Legal at Arm |
| 07/11/25 | Deposition of James Jeon and Exhibits — VP of Global Commercial Operations at Qualcomm |
| 07/11/25 | Deposition of Vivek Agrawal and Exhibits — Senior Principal Engineer at Arm |
| 07/11/25 | Deposition of Jonathan Weiser and Exhibits — Former Lead Attorney for QCT at Qualcomm |
| 07/11/25 | Deposition of Larissa Cochron and Exhibits — Senior Director of Contracts at Qualcomm |
| 07/11/25 | Deposition of Ann Chaplin and Exhibits — General Counsel and Corporate Secretary at Qualcomm |
| 07/29/25 | Deposition of Mohamed Awad and Exhibits — Senior Vice President and General Manager of Infrastructure Business |

Qualcomm Incorporated and Qualcomm Technologies, Inc. v. Arm Holdings plc                                    Exhibit C
Documents Considered List

| Date | Description |
|---|---|

*Produced Documents*

*If the bates number referenced below is the beginning of a document/production, the bates reference is to the entire document.*
*I had access to documents produced by Qualcomm, Arm, and other third parties.*

| | | | |
|---|---|---|---|
| ARM_00000680 | QCVARM_0468074 | QCVARM_0618338 | QCVARM_1088375 |
| ARM_00009370 | QCVARM_0468076 | QCVARM_0618354 | QCVARM_1117815 |
| ARM_00025401 | QCVARM_0468082 | QCVARM_0618387 | QCVARM_1117818 |
| ARM_00052643 | QCVARM_0468164 | QCVARM_0618420 | QCVARM_1117821 |
| ARM_00055357 | QCVARM_0468212 | QCVARM_0618448 | QCVARM_1117825 |
| ARM_00056571 | QCVARM_0468426 | QCVARM_0618449 | QCVARM_1117836 |
| ARM_00062441 | QCVARM_0468623 | QCVARM_0618450 | QCVARM_1117839 |
| ARM_00062474 | QCVARM_0520880 | QCVARM_0618454 | QCVARM_1117843 |
| ARM_00076910 | QCVARM_0523656 | QCVARM_0618455 | QCVARM_1117847 |
| ARM_00083490 | QCVARM_0523730 | QCVARM_0618456 | QCVARM_1117851 |
| ARM_00083492 | QCVARM_0523754 | QCVARM_0618459 | QCVARM_1117866 |
| ARM_00083608 | QCVARM_0523826 | QCVARM_0618461 | QCVARM_1117873 |
| ARM_00086164 | QCVARM_0523837 | QCVARM_0618568 | QCVARM_1117877 |
| ARM_00103702 | QCVARM_0523995 | QCVARM_0618694 | QCVARM_1117880 |
| ARM_00103718 | QCVARM_0524007 | QCVARM_0618702 | QCVARM_1117884 |
| ARM_00103781 | QCVARM_0524237 | QCVARM_0618703 | QCVARM_1117891 |
| ARM_00110507 | QCVARM_0524718 | QCVARM_0618705 | QCVARM_1117898 |
| ARM_00110509 | QCVARM_0524739 | QCVARM_0618707 | QCVARM_1117901 |
| ARM_00110511 | QCVARM_0524900 | QCVARM_0618708 | QCVARM_1117905 |
| ARM_00110513 | QCVARM_0525167 | QCVARM_0618712 | QCVARM_1117909 |
| ARM_00110515 | QCVARM_0525344 | QCVARM_0618843 | QCVARM_1117934 |
| ARM_00110517 | QCVARM_0525354 | QCVARM_0618975 | QCVARM_1117938 |
| ARM_00114880 | QCVARM_0526038 | QCVARM_0624133 | QCVARM_1117942 |
| ARM_00118835 | QCVARM_0526286 | QCVARM_0626519 | QCVARM_1117948 |
| ARM_00119119 | QCVARM_0526828 | QCVARM_0626590 | QCVARM_1117956 |
| ARM_01014940 | QCVARM_0527427 | QCVARM_0626603 | QCVARM_1117960 |
| ARM_01215878 | QCVARM_0527470 | QCVARM_0667395 | QCVARM_1117971 |
| ARM_01215885 | QCVARM_0527544 | QCVARM_0685578 | QCVARM_1117977 |
| ARM_01215886 | QCVARM_0527546 | QCVARM_0687237 | QCVARM_1117981 |
| ARM_01215887 | QCVARM_0527863 | QCVARM_0687476 | QCVARM_1117985 |
| ARM_01215888 | QCVARM_0528119 | QCVARM_0687479 | QCVARM_1117989 |
| ARM_01215889 | QCVARM_0528956 | QCVARM_0687758 | QCVARM_1118003 |
| ARM_01215890 | QCVARM_0528981 | QCVARM_0687760 | QCVARM_1118009 |
| ARM_01216189 | QCVARM_0529021 | QCVARM_0688778 | QCVARM_1118012 |
| ARM_01200076 | QCVARM_0529438 | QCVARM_0688834 | QCVARM_1118016 |
| ARM_01231025 | QCVARM_0529703 | QCVARM_0688922 | QCVARM_1118020 |
| ARM_01231027 | QCVARM_0529842 | QCVARM_0688932 | QCVARM_1118024 |
| ARM_01231028 | QCVARM_0530133 | QCVARM_0689117 | QCVARM_1118029 |
| ARM_01231029 | QCVARM_0530245 | QCVARM_0691526 | QCVARM_1118036 |
| ARM_01231030 | QCVARM_0530447 | QCVARM_0691853 | QCVARM_1118040 |
| ARM_01231031 | QCVARM_0531270 | QCVARM_0692586 | QCVARM_1118043 |
| ARM_01231032 | QCVARM_0531350 | QCVARM_0692665 | QCVARM_1118051 |
| ARM_01231033 | QCVARM_0531368 | QCVARM_0692718 | QCVARM_1118055 |
| ARM_01231034 | QCVARM_0531514 | QCVARM_0699176 | QCVARM_1118059 |
| ARM_01231037 | QCVARM_0531658 | QCVARM_0699278 | QCVARM_1118064 |
| ARM_01231038 | QCVARM_0531817 | QCVARM_0707732 | QCVARM_1118067 |
| ARM_01231039 | QCVARM_0531821 | QCVARM_0707997 | QCVARM_1118081 |
| ARM_01231040 | QCVARM_0531864 | QCVARM_0708086 | QCVARM_1118085 |
| ARM_01231041 | QCVARM_0531919 | QCVARM_0708107 | QCVARM_1118089 |
| ARM_01231042 | QCVARM_0532274 | QCVARM_0708118 | QCVARM_1118093 |
| ARM_01231043 | QCVARM_0532413 | QCVARM_0709978 | QCVARM_1118097 |
| ARM_01231044 | QCVARM_0532997 | QCVARM_0710047 | QCVARM_1118100 |
| ARM_01231045 | QCVARM_0535154 | QCVARM_0710418 | QCVARM_1118104 |
| ARM_01231046 | QCVARM_0535481 | QCVARM_0711109 | QCVARM_1118146 |
| ARM_01231047 | QCVARM_0535654 | QCVARM_0711110 | QCVARM_1118481 |
| ARM_01231048 | QCVARM_0535721 | QCVARM_0713477 | QCVARM_1118510 |
| ARM_01231049 | QCVARM_0539180 | QCVARM_0713488 | QCVARM_1118515 |
| ARM_01231050 | QCVARM_0539482 | QCVARM_0713513 | QCVARM_1118518 |
| ARM_01231051 | QCVARM_0571705 | QCVARM_0713516 | QCVARM_1118524 |
| ARM_01231052 | QCVARM_0572833 | QCVARM_0713527 | QCVARM_1118528 |
| ARM_01231053 | QCVARM_0572851 | QCVARM_0713528 | QCVARM_1118531 |
| ARM_01231054 | QCVARM_0572936 | QCVARM_0713530 | QCVARM_1118534 |
| ARM_01231055 | QCVARM_0573056 | QCVARM_0713532 | QCVARM_1118538 |
| ARM_01231056 | QCVARM_0573528 | QCVARM_0713535 | QCVARM_1118543 |
| ARM_01231057 | QCVARM_0573677 | QCVARM_0713538 | QCVARM_1118546 |
| ARM_01231058 | QCVARM_0573684 | QCVARM_0713652 | QCVARM_1118549 |
| ARM_01231059 | QCVARM_0573685 | QCVARM_0713665 | QCVARM_1118552 |
| ARM_01231060 | QCVARM_0575290 | QCVARM_0713840 | QCVARM_1118555 |
| ARM_01231061 | QCVARM_0575607 | QCVARM_0717757 | QCVARM_1118559 |
| ARM_01231062 | QCVARM_0575611 | QCVARM_0846761 | QCVARM_1118565 |
| ARM_01231063 | QCVARM_0575613 | QCVARM_0847668 | QCVARM_1118596 |
| ARM_01231064 | QCVARM_0575615 | QCVARM_0847765 | QCVARM_1118779 |
| ARM_01231394 | QCVARM_0575616 | QCVARM_0848924 | QCVARM_1118787 |
| ARM_01233086 | QCVARM_0575617 | QCVARM_0850838 | QCVARM_1118795 |
| ARM_01233089 | QCVARM_0575634 | QCVARM_0850937 | QCVARM_1118800 |
| ARM_01238384 | QCVARM_0575636 | QCVARM_0851120 | QCVARM_1118820 |

Qualcomm Incorporated and Qualcomm Technologies, Inc. v. Arm Holdings plc                                                 Exhibit C
Documents Considered List

| Date | | | | |
|------|------|------|------|------|
| | ARM_01241379 | QCVARM 0577544 | QCVARM 0851183 | QCVARM 1118832 |
| | ARM_01241472 | QCVARM 0578265 | QCVARM 0851271 | QCVARM 1118836 |
| | ARM_01241581 | QCVARM 0579532 | QCVARM 0851410 | QCVARM 1118842 |
| | ARM_01241585 | QCVARM 0580173 | QCVARM 0851512 | QCVARM 1118844 |
| | ARM_01241587 | QCVARM 0580181 | QCVARM 0851782 | QCVARM 1118862 |
| | ARM_01249519 | QCVARM 0595522 | QCVARM 0851837 | QCVARM 1118865 |
| | ARM_01291148 | QCVARM 0595815 | QCVARM 0854985 | QCVARM 1118870 |
| | ARM_01314327 | QCVARM 0599620 | QCVARM 0855117 | QCVARM 1118884 |
| | ARMQC_00001136 | QCVARM 0599801 | QCVARM 0855455 | QCVARM 1118890 |
| | ARMQC_00027166 | QCVARM 0600037 | QCVARM 0855474 | QCVARM 1118894 |
| | ARMQC_02600059 | QCVARM 0600038 | QCVARM 0855614 | QCVARM 1118896 |
| | ARMQC_02600803 | QCVARM 0600039 | QCVARM 0856340 | QCVARM 1118898 |
| | ARMQC_02600838 | QCVARM 0600040 | QCVARM 0856754 | QCVARM 1118901 |
| | ARMQC_02601067 | QCVARM 0600041 | QCVARM 0856864 | QCVARM 1118926 |
| | ARMQC_02720799 | QCVARM 0600042 | QCVARM 0863300 | QCVARM 1118928 |
| | ARMQC_02727610 | QCVARM 0600043 | QCVARM 0863428 | QCVARM 1118929 |
| | ARMQC_02730917 | QCVARM 0600044 | QCVARM 0863435 | QCVARM 1118931 |
| | ARMQC_02731051 | QCVARM 0600045 | QCVARM 0863641 | QCVARM 1118933 |
| | ARMQC_02731250 | QCVARM 0600046 | QCVARM 0863644 | QCVARM 1118934 |
| | ARMQC_02731284 | QCVARM 0600047 | QCVARM 0863818 | QCVARM 1118945 |
| | ARMQC_02732393 | QCVARM 0600048 | QCVARM 0864030 | QCVARM 1118972 |
| | ARMQC_02741466 | QCVARM 0600049 | QCVARM 0864277 | QCVARM 1118976 |
| | ARMQC_02742804 | QCVARM 0600050 | QCVARM 0864713 | QCVARM 1118978 |
| | ARMQC_02742861 | QCVARM 0600051 | QCVARM 0864833 | QCVARM 1118980 |
| | ARMQC_02747567 | QCVARM 0600052 | QCVARM 0864834 | QCVARM 1118983 |
| | ARMQC_02747848 | QCVARM 0600053 | QCVARM 0864838 | QCVARM 1118986 |
| | ARMQC_02749702 | QCVARM 0600054 | QCVARM 0864839 | QCVARM 1118988 |
| | ARMQC_02750967 | QCVARM 0600055 | QCVARM 0864901 | QCVARM 1118990 |
| | ARMQC_02750999 | QCVARM 0600056 | QCVARM 0864924 | QCVARM 1118995 |
| | ARMQC_02771350 | QCVARM 0600057 | QCVARM 0864967 | QCVARM 1118997 |
| | ARMQC_02772241 | QCVARM 0600058 | QCVARM 0864969 | QCVARM 1118998 |
| | ARMQC_02772246 | QCVARM 0600059 | QCVARM 0865022 | QCVARM 1118999 |
| | ARMQC_02772333 | QCVARM 0600060 | QCVARM 0865025 | QCVARM 1119004 |
| | ARMQC_02774738 | QCVARM 0600061 | QCVARM 0865233 | QCVARM 1119005 |
| | ARMQC_02774748 | QCVARM 0600062 | QCVARM 0865343 | QCVARM 1119008 |
| | ARMQC_02774757 | QCVARM 0600063 | QCVARM 0865344 | QCVARM 1119015 |
| | ARMQC_02774767 | QCVARM 0600064 | QCVARM 0865345 | QCVARM 1119018 |
| | ARMQC_02774814 | QCVARM 0600065 | QCVARM 0865360 | QCVARM 1119020 |
| | ARMQC_02774816 | QCVARM 0600066 | QCVARM 0865367 | QCVARM 1119023 |
| | ARMQC_02774818 | QCVARM 0600067 | QCVARM 0865370 | QCVARM 1119025 |
| | ARMQC_02774844 | QCVARM 0600068 | QCVARM 0865412 | QCVARM 1119027 |
| | ARMQC_02775090 | QCVARM 0600069 | QCVARM 0865415 | QCVARM 1119030 |
| | ARMQC_02779269 | QCVARM 0600070 | QCVARM 0865435 | QCVARM 1119032 |
| | ARMQC_02779314 | QCVARM 0600071 | QCVARM 0865479 | QCVARM 1119070 |
| | ARMQC_02779364 | QCVARM 0600072 | QCVARM 0865488 | QCVARM 1119074 |
| | ARMQC_02779391 | QCVARM 0600073 | QCVARM 0865490 | QCVARM 1119120 |
| | ARMQC_02779412 | QCVARM 0600074 | QCVARM 0865603 | QCVARM 1120024 |
| | ARMQC_02779433 | QCVARM 0600075 | QCVARM 0866177 | QCVARM 1120466 |
| | ARMQC_02779483 | QCVARM 0600076 | QCVARM 0867422 | QCVARM 1120773 |
| | ARMQC_02783512 | QCVARM 0600077 | QCVARM 1014030 | QCVARM 1120811 |
| | ARMQC_02783533 | QCVARM 0600078 | QCVARM 1014186 | QCVARM 1120812 |
| | ARMQC_02783575 | QCVARM 0600079 | QCVARM 1014307 | QCVARM 1120999 |
| | ARMQC_02783595 | QCVARM 0600080 | QCVARM 1014424 | QCVARM 1121028 |
| | ARMQC_02783597 | QCVARM 0600081 | QCVARM 1014890 | QCVARM 1121029 |
| | ARMQC_02783599 | QCVARM 0600082 | QCVARM 1014955 | QCVARM 1121312 |
| | ARMQC_02783601 | QCVARM 0600083 | QCVARM 1014955 | QCVARM 1121313 |
| | ARMQC_02783603 | QCVARM 0600084 | QCVARM 1015219 | QCVARM 1121314 |
| | ARMQC_02783615 | QCVARM 0600085 | QCVARM 1015426 | QCVARM 1121315 |
| | ARMQC_02783618 | QCVARM 0600086 | QCVARM 1015438 | QCVARM 1121316 |
| | ARMQC_02783619 | QCVARM 0600087 | QCVARM 1015821 | QCVARM 1121317 |
| | ARMQC_02783731 | QCVARM 0600088 | QCVARM 1016051 | QCVARM 1121318 |
| | ARMQC_02783848 | QCVARM 0600089 | QCVARM 1016205 | QCVARM 1121319 |
| | ARMQC_02783967 | QCVARM 0600090 | QCVARM 1016218 | QCVARM 1121320 |
| | ARMQC_02784120 | QCVARM 0600091 | QCVARM 1017127 | QCVARM 1121321 |
| | ARMQC_02784199 | QCVARM 0600092 | QCVARM 1017149 | QCVARM 1121322 |
| | ARMQC_02784204 | QCVARM 0600093 | QCVARM 1017169 | QCVARM 1121323 |
| | QC ARM EC 0000128 | QCVARM 0600094 | QCVARM 1017295 | QCVARM 1121324 |
| | QC ARM EC 0001144 | QCVARM 0600095 | QCVARM 1017417 | QCVARM 1121325 |
| | QCARM 0016229 | QCVARM 0600096 | QCVARM 1017438 | QCVARM 1121326 |
| | QCARM 0027985 | QCVARM 0600097 | QCVARM 1017467 | QCVARM 1121327 |
| | QCARM 0169753 | QCVARM 0600098 | QCVARM 1017747 | QCVARM 1121328 |
| | QCARM 0169823 | QCVARM 0600101 | QCVARM 1019256 | QCVARM 1121329 |
| | QCARM 0208733 | QCVARM 0600533 | QCVARM 1020165 | QCVARM 1121330 |
| | QCARM 0218409 | QCVARM 0600801 | QCVARM 1022267 | QCVARM 1121331 |
| | QCARM 0314128 | QCVARM 0601671 | QCVARM 1022268 | QCVARM 1121332 |

Qualcomm Incorporated and Qualcomm Technologies, Inc. v. Arm Holdings plc    Exhibit C
Documents Considered List

| Date | | Description | |
|---|---|---|---|
| QCARM 0333656 | QCVARM 0601718 | QCVARM 1022565 | QCVARM 1121333 |
| QCARM 0337857 | QCVARM 0601787 | QCVARM 1023593 | QCVARM 1121334 |
| QCARM 0338243 | QCVARM 0602168 | QCVARM 1024002 | QCVARM 1121335 |
| QCARM 0338573 | QCVARM 0602198 | QCVARM 1024617 | QCVARM 1121336 |
| QCARM 0339100 | QCVARM 0602317 | QCVARM 1024852 | QCVARM 1121337 |
| QCARM 0343120 | QCVARM 0602395 | QCVARM 1024873 | QCVARM 1121338 |
| QCARM 0343533 | QCVARM 0602404 | QCVARM 1024874 | QCVARM 1121341 |
| QCARM 0343954 | QCVARM 0602434 | QCVARM 1026209 | QCVARM 1121342 |
| QCARM 0345914 | QCVARM 0604150 | QCVARM 1028558 | QCVARM 1121344 |
| QCARM 0350039 | QCVARM 0604257 | QCVARM 1028750 | QCVARM 1121346 |
| QCARM 0360161 | QCVARM 0605658 | QCVARM 1029604 | QCVARM 1121348 |
| QCARM 0362108 | QCVARM 0605660 | QCVARM 1029757 | QCVARM 1121351 |
| QCARM 0483799 | QCVARM 0605661 | QCVARM 1029911 | QCVARM 1121354 |
| QCARM 0569125 | QCVARM 0605876 | QCVARM 1030509 | QCVARM 1121359 |
| QCARM 0573247 | QCVARM 0606806 | QCVARM 1030813 | QCVARM 1121362 |
| QCARM 0579579 | QCVARM 0607060 | QCVARM 1031251 | QCVARM 1121491 |
| QCARM 2412907 | QCVARM 0607506 | QCVARM 1031267 | QCVARM 1121493 |
| QCARM 2416747 | QCVARM 0607680 | QCVARM 1033335 | QCVARM 1121510 |
| QCARM 2423696 | QCVARM 0607691 | QCVARM 1034376 | QCVARM 1121514 |
| QCARM 2533808 | QCVARM 0608131 | QCVARM 1037652 | QCVARM 1121518 |
| QCARM 3004833 | QCVARM 0608423 | QCVARM 1055990 | QCVARM 1121519 |
| QCARM 3449986 | QCVARM 0608452 | QCVARM 1056140 | QCVARM 1121522 |
| QCARM 3473070 | QCVARM 0608501 | QCVARM 1056567 | QCVARM 1121528 |
| QCARM 3485264 | QCVARM 0608626 | QCVARM 1057229 | QCVARM 1121529 |
| QCARM 3489547 | QCVARM 0608764 | QCVARM 1066278 | QCVARM 1121531 |
| QCARM 3496803 | QCVARM 0609540 | QCVARM 1066761 | QCVARM 1121536 |
| QCARM 3509490 | QCVARM 0609541 | QCVARM 1067283 | QCVARM 1121538 |
| QCARM 3509521 | QCVARM 0609543 | QCVARM 1067284 | QCVARM 1121541 |
| QCARM 3961513 | QCVARM 0609881 | QCVARM 1067971 | QCVARM 1121674 |
| QCARM 7463823 | QCVARM 0613037 | QCVARM 1068133 | QCVARM 1121930 |
| QCARM 7464139 | QCVARM 0615918 | QCVARM 1068141 | QCVARM 1121931 |
| QCARM 7464653 | QCVARM 0616170 | QCVARM 1068152 | QCVARM 1121932 |
| QCARM 7464862 | QCVARM 0616348 | QCVARM 1068191 | QCVARM 1122336 |
| QCARM 7464969 | QCVARM 0616349 | QCVARM 1068222 | QCVARM 1122338 |
| QCARM 7465288 | QCVARM 0616636 | QCVARM 1068352 | QCVARM 1122342 |
| QCARM 7465644 | QCVARM 0616687 | QCVARM 1068388 | QCVARM 1122355 |
| QCARM 7465765 | QCVARM 0616871 | QCVARM 1068434 | QCVARM 1122406 |
| QCARM 7465962 | QCVARM 0616906 | QCVARM 1068512 | QCVARM 1122415 |
| QCARM 7466191 | QCVARM 0616907 | QCVARM 1068516 | QCVARM 1122429 |
| QCARM 7477117 | QCVARM 0616912 | QCVARM 1068521 | QCVARM 1122431 |
| QCARM 7492376 | QCVARM 0616914 | QCVARM 1068525 | QCVARM 1122434 |
| QCARM 7622616 | QCVARM 0616916 | QCVARM 1068603 | QCVARM 1122439 |
| QCVARM 0000218 | QCVARM 0616919 | QCVARM 1068612 | QCVARM 1122454 |
| QCVARM 0000482 | QCVARM 0616920 | QCVARM 1068666 | QCVARM 1122462 |
| QCVARM 0029611 | QCVARM 0616928 | QCVARM 1068739 | QCVARM 1122464 |
| QCVARM 0447242 | QCVARM 0616935 | QCVARM 1068905 | QCVARM 1122485 |
| QCVARM 0447252 | QCVARM 0616936 | QCVARM 1068922 | QCVARM 1122486 |
| QCVARM 0447464 | QCVARM 0616939 | QCVARM 1068986 | QCVARM 1122489 |
| QCVARM 0447871 | QCVARM 0616942 | QCVARM 1068988 | QCVARM 1122490 |
| QCVARM 0448066 | QCVARM 0616947 | QCVARM 1068990 | QCVARM 1122492 |
| QCVARM 0448362 | QCVARM 0616948 | QCVARM 1068995 | QCVARM 1122493 |
| QCVARM 0449561 | QCVARM 0616950 | QCVARM 1069077 | QCVARM 1122504 |
| QCVARM 0449883 | QCVARM 0616952 | QCVARM 1069112 | QCVARM 1122508 |
| QCVARM 0450016 | QCVARM 0616955 | QCVARM 1069129 | QCVARM 1122515 |
| QCVARM 0450317 | QCVARM 0616959 | QCVARM 1069363 | QCVARM 1122590 |
| QCVARM 0450320 | QCVARM 0616963 | QCVARM 1069483 | QCVARM 1122672 |
| QCVARM 0450425 | QCVARM 0616964 | QCVARM 1069555 | QCVARM 1122676 |
| QCVARM 0450438 | QCVARM 0616965 | QCVARM 1069674 | QCVARM 1122684 |
| QCVARM 0450606 | QCVARM 0616967 | QCVARM 1069705 | QCVARM 1122696 |
| QCVARM 0452200 | QCVARM 0616970 | QCVARM 1069708 | QCVARM 1122701 |
| QCVARM 0452326 | QCVARM 0616975 | QCVARM 1069710 | QCVARM 1122713 |
| QCVARM 0452397 | QCVARM 0617114 | QCVARM 1069941 | QCVARM 1122715 |
| QCVARM 0453129 | QCVARM 0617401 | QCVARM 1069945 | QCVARM 1122717 |
| QCVARM 0453334 | QCVARM 0617453 | QCVARM 1069949 | QCVARM 1122720 |
| QCVARM 0454071 | QCVARM 0617454 | QCVARM 1070014 | QCVARM 1122725 |
| QCVARM 0454821 | QCVARM 0617456 | QCVARM 1070027 | QCVARM 1122726 |
| QCVARM 0455016 | QCVARM 0617459 | QCVARM 1070034 | QCVARM 1122730 |
| QCVARM 0455212 | QCVARM 0617460 | QCVARM 1070077 | QCVARM 1122731 |
| QCVARM 0455341 | QCVARM 0617462 | QCVARM 1070081 | QCVARM 1122733 |
| QCVARM 0452883 | QCVARM 0617517 | QCVARM 1070271 | QCVARM 1122735 |
| QCVARM 0458346 | QCVARM 0617730 | QCVARM 1070640 | QCVARM 1122737 |
| QCVARM 0460408 | QCVARM 0617756 | QCVARM 1070831 | QCVARM 1151573 |
| QCVARM 0461296 | QCVARM 0617760 | QCVARM 1071192 | QCVARM 1151578 |
| QCVARM 0462995 | QCVARM 0617902 | QCVARM 1071193 | QCVARM 1151582 |
| QCVARM 0463153 | QCVARM 0617903 | QCVARM 1071194 | QCVARM 1151586 |
| QCVARM 0465188 | QCVARM 0617947 | QCVARM 1071199 | QCVARM 1151591 |
| QCVARM 0465502 | QCVARM 0617948 | QCVARM 1071201 | QCVARM 1151597 |
| QCVARM 0465566 | QCVARM 0617951 | QCVARM 1071232 | QCVARM 1151603 |
| QCVARM 0465730 | QCVARM 0617954 | QCVARM 1071244 | QCVARM 1151608 |
| QCVARM 0465917 | QCVARM 0617957 | QCVARM 1071246 | QCVARM 1151611 |
| QCVARM 0466056 | QCVARM 0617958 | QCVARM 1071248 | QCVARM 1151619 |
| QCVARM 0466177 | QCVARM 0617961 | QCVARM 1071500 | QCVARM 1151620 |
| QCVARM 0466366 | QCVARM 0617964 | QCVARM 1071502 | QCVARM 1151964 |
| QCVARM 0466478 | QCVARM 0617978 | QCVARM 1071972 | QCVARM 1151965 |
| QCVARM 0466936 | QCVARM 0618320 | QCVARM 1071980 | QCVARM 1151966 |
| QCVARM 0467171 | QCVARM 0618324 | QCVARM 1071993 | |
| QCVARM 0467529 | QCVARM 0618325 | QCVARM 1072199 | |
| QCVARM_0467601 | QCVARM_0618336 | QCVARM_1073895 | |

**Qualcomm Incorporated and Qualcomm Technologies, Inc. v. Arm Holdings plc**                                                                    **Exhibit C**
Documents Considered List

| Date | Description |
|---|---|

*Research*

Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025
NVIDIA Corporation Form 10-K for the fiscal year ended January 26, 2025
Qualcomm Incorporated Form 10-K for the fiscal year ended September 29, 2024
Qualcomm Incorporated, Form 10-Q for the quarterly period ended June 29, 2025
S&P Global Market Intelligence. 2025. WACC analysis: Qualcomm Inc. (QCOM). Capital IQ.
SoftBank Group Annual Report 2024
Trial Proceedings, *Arm v. Qualcomm* , C.A. No. 22-1146 (MN), Volume 2, December 16, 2024

https://download.intel.com/newsroom/kits/40thanniversary/pdfs/What_is_a_Microprocessor.pdf
https://group.softbank/en/ir/financials/annual_reports/2025/message/arm
https://group.softbank/en/news/press/20160905
https://newsroom.arm.com/blog/arm-computex-2025
https://nvidianews.nvidia.com/news/nvidia-and-softbank-group-announce-termination-of-nvidias-acquisition-of-arm-limited
https://nvidianews.nvidia.com/news/nvidia-to-acquire-arm-for-40-billion-creating-worlds-premier-computing-company-for-the-age-of-ai
https://tech.facebook.com/reality-labs/
https://www.arm.com/company
https://www.capitaliq.com
https://www.cnbc.com/2023/09/14/arm-ipo-arm-starts-trading-on-the-nasdaq-in-win-for-softbank.html
https://www.ft.com/content/5b191c4c-119f-4f97-bc61-622d20bfa46d
https://www.ft.com/content/95367b2b-2aa7-4a06-bdd3-0463c9bad008
https://www.lawinsider.com/dictionary/standard-margin
https://www.linkedin.com/in/%E6%99%93%E6%B0%91-%E9%A9%AC-9381bb15a/
https://www.linkedin.com/in/dawn-hill-montemagni/
https://www.linkedin.com/in/mike-neilio-5358141/
https://www.linkedin.com/in/siliconip/
https://www.linkedin.com/in/tejas-krishnamohan-aa24a91/
https://www.linkedin.com/in/will-wyatt-ab6bb2b/
https://www.phonearena.com/galaxy-tab-s10-release-date-price-features-news
https://www.sec.gov/Archives/edgar/data/804328/000080432824000075/qcom092924ex21.htm

EXHIBIT D

# EXHIBIT 27

Page 1

1

2    IN THE UNITED STATES DISTRICT COURT

3    FOR THE DISTRICT OF DELAWARE

4    ----------------------------------x

5    QUALCOMM INCORPORATED, a Delaware
     corporation, QUALCOMM TECHNOLOGIES,

6    INC., a Delaware corporation,

7                          Plaintiffs,

8        -against-         C.A. No. 24-49-MN

9    ARM HOLDINGS PLC, f/k/a ARM LTD.,
     a U.K. corporation,

10

                          Defendant.

11

     ----------------------------------x

12

             HIGHLY CONFIDENTIAL

13           ATTORNEYS' EYES ONLY

14

        REMOTE VIDEOTAPED DEPOSITION OF

15              EHAB YOUSEFF

            Palo Alto, California

16            June 26, 2025

17

18

     Reported By:

19

     ERIC J. FINZ

20

21

22

23

24

25

Page 18

EHAB YOUSSEF - HIGHLY CONFIDENTIAL
1     EHAB YOUSSEF - HIGHLY CONFIDENTIAL
2        A.   Yes.
3        Q.   Could you just quickly give me
4     your educational background?
5        A.   Sure.  I went to undergraduate
6     school at UC Davis and completed a BS in
7     health science management law.  I then
8     attended Santa Clara University, where I
9     obtained my JD, specializing in high
10    technology.
11       Q.   And you joined Arm in 2011.
12    Is that right?
13       A.   I joined Arm initially in
14    1998.
15       Q.   What was your position --
16    sorry.
17            Have you worked at Arm from
18    1998 to the present continuously?
19       A.   No.
20       Q.   Okay.  Could you just walk me
21    through your employment history with Arm
22    in terms of the years you worked there?
23       A.   Sure.  Yes.  So I started with
24    Arm initially in 1998.  I was with Arm
25    until 2005-ish.  I then went and started

Page 19

1     EHAB YOUSSEF - HIGHLY CONFIDENTIAL
2     my own law practice.  And I came back to
3     Arm in 2011.
4        Q.   From 1998 to 2005, what was
5     your title at Arm?
6        A.   I think my initial title was
7     senior corporate counsel.
8        Q.   And were you a corporate
9     counsel that entire first period of
10    working with Arm from 1998 to 2005?
11       A.   No.
12       Q.   What were your other roles?
13       A.   So over that period of time my
14    roles went -- my title went from senior
15    corporate counsel to vice president to
16    general manager.
17       Q.   When you returned in 2011,
18    what was your initial title?
19       A.   I returned in 2011 as vice
20    president of legal.
21       Q.   And how long did you hold that
22    title?
23       A.   For approximately -- let me
24    think this one through.  Approximately,
25    let's call it five years.  Approximately

Page 20

1     EHAB YOUSSEF - HIGHLY CONFIDENTIAL
2     five years.
3        Q.   Okay.  And then what was
4     your -- what title did you move to after
5     that?
6        A.   Then I went to vice president
7     and assistant general counsel of
8     commercial licensing and trade
9     compliance.
10       Q.   And that would have been in
11    2016?
12       A.   Approximately.
13       Q.   Okay.  Did you move -- when
14    did you -- is your current title now VP
15    and deputy general counsel of licensing,
16    legal ops and trade compliance?
17       A.   Yes, that's right.
18       Q.   And when did you take that
19    title?
20       A.   I took that title
21    approximately, let's call it
22    two-and-a-half years ago.  So sometime in
23    I believe late '22.
24       Q.   What are your responsibilities
25    in this role?

Page 21

1     EHAB YOUSSEF - HIGHLY CONFIDENTIAL
2        A.   So I have a team, I'm
3     responsible for a team of lawyers that
4     handles the commercial licensing aspects,
5     the trade compliance aspects, legal
6     operations, and a host of other legal
7     matters that play into this.
8        Q.   And would your
9     responsibilities with respect to
10    licensing include Arm's negotiation and
11    execution of ALAs and TLAs?
12       A.   Could you repeat that?
13       Q.   I believe you said you had
14    responsibilities -- your responsibilities
15    included commercial licensing.  Is that
16    right?
17       A.   Yes, my team is responsible
18    for commercial licensing.
19       Q.   And the team that you are
20    managing with respect to commercial
21    licensing, would that involve managing
22    their negotiation and execution of Arm's
23    ALAs and TLAs?
24       A.   Yes, that's correct.
25       Q.   All right.

6 (Pages 18 - 21)



Page 58

1 EHAB YOUSSEF - HIGHLY CONFIDENTIAL
2 identified as, which would be the
3 content of the document. I'm
4 asking if such a privileged
5 document would exist.
6 MR. EMERICK: Instruction not
7 to answer. You're asking about is
8 there a privileged document with a
9 certain content.
10 BY DESAI:
11 Q. Are you going to follow your
12 attorney's instruction?
13 A. Yes.
14 Q. All right.
15 Do you understand that
16 Qualcomm ███████████████████████
17 ██████████████████████████?
18 A. Yes.
19 MR. DESAI: Why don't we pull
20 up tab 25.
21 THE WITNESS: Did you say tab
22 25? A new exhibit, correct?
23 MR. DESAI: It should be
24 showing up. We're going to mark it
25 as Exhibit 5.

Page 59

1 EHAB YOUSSEF - HIGHLY CONFIDENTIAL
2 (Youseff Exhibit 5 for
3 identification, letter dated
4 September 27, 2024, production
5 numbers QCVARM_0573671 through
6 QCVARM_0573673.)
7 THE WITNESS: We can see it.
8 BY DESAI:
9 Q. And if you skip to -- sorry.
10 MR. DESAI: For the record,
11 the beginning Bates number of this
12 is QCVARM_0573671.
13 Q. I'd like you to skip to the
14 next page that ends in 72.
15 Do you see that?
16 A. I see the second page, yes.
17 Q. Okay. And this is a September
18 20, 2024 letter from Qualcomm to a
19 Spencer Collins at Arm. Correct?
20 A. That's what it says, yes.
21 Q. And do you know Mr. Collins?
22 A. Yes.
23 Q. And do you report to
24 Mr. Collins?
25 A. Yes.

Page 60

1 EHAB YOUSSEF - HIGHLY CONFIDENTIAL
2 Q. Okay. And you can see in the
3 second paragraph, that Qualcomm is
4 notifying Arm ████████████████████████████
5 ██████████████████████████████████████
6 ███████████████████████████. Is that
7 right?
8 A. That's what the letter says,
9 yes.
10 Q. And you understand that Arm
11 ████████████████████████████████████
12 ██████████████████. Is that right?
13 ████████████████████
14 A. Arm ████████████████████████
15 ██████████████████████████. I'm not sure it
16 was in response to this. ███████████████
17 ███████████████.
18 Q. Okay.
19 MR. DESAI: Why don't we pull
20 up that response, or that proposal,
21 sorry. Tab 27.
22 (Youseff Exhibit 6 for
23 identification, ████████████████████
24 ████████████, production numbers
25 QCVARM_0526828 through

Page 61

1 EHAB YOUSSEF - HIGHLY CONFIDENTIAL
2 QCVARM_0526830.)
3 MR. DESAI: Are you there?
4 THE WITNESS: Yes, we're
5 there.
6 MR. DESAI: Okay. So we're
7 going to mark this as Exhibit 6.
8 For the record, it is a document
9 labeled QCVARM_0526828.
10 BY DESAI:
11 Q. Have you seen this document
12 before?
13 A. Yes.
14 Q. And you reviewed this as part
15 of your 30(b)(6) preparation?
16 A. Yes.
17 Q. And this is an ████████████████
18 ████████████████████████████████████████
19 ████████████████████████████████
20 ████████████████████████████████████
21 ██████████████ Correct?
22 A. ██████████████████████████████
23 ████████████████████████████
24 ██████████, yes.
25 Q. ███████████████████████████████



Page 62

EHAB YOUSSEF - HIGHLY CONFIDENTIAL
1
2
3
4
5        MR. EMERICK:  Objection; form.
6    A.   Yes,
7
8
9    Q.   Who
10   A.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 63

EHAB YOUSSEF - HIGHLY CONFIDENTIAL
1
2
3    Q.   Did these individuals
4
5
6                              ?
7    A.   To my knowledge, I don't
8    know -- I'm going to answer it this way:
9    With respect to nonprivileged documents,
10   I don't have any factual knowledge of.
11   Q.   Just to be clear, Arm's
12   position is that
13
14
15                          .  Is that
16
17   correct?
18        MR. EMERICK:  Objection; form.
19   A.   To the best of my knowledge, I
20   don't have any factual knowledge of
21   nonprivileged documents regarding the
22
23                        .
24   Q.   What was the
25

Page 64

EHAB YOUSSEF - HIGHLY CONFIDENTIAL
1
2
3                        ?
4        MR. EMERICK:  Objection.
5    Objection; form.
6    A.   I'm going to clarify before I
7    answer that question.
8    Q.   Sure.
9    A.   I'm going to use first the
10   definition            , to be
11   clear.  So when you say
12
13
14
15   Q.   And is that
16
17
18                        ?
19   A.   With respect to the
20   definition,
21
22                        .
23   Q.   What was the date of the
24         deal?
25   A.   Sorry, I have to have that in

Page 65

EHAB YOUSSEF - HIGHLY CONFIDENTIAL
1
2    front of me.  I don't recall that.
3        MR. DESAI:  Counsel, I'm just
4    confirming, if this particular
5            deal hasn't be been
6    produced, we ask that it be
7    produced.  I don't know off the top
8    of my head if it has.  I just make
9    that request now.
10       (Request for production.)
11       MR. EMERICK:  Request
12   received.
13 BY DESAI:
14   Q.   And so is it Arm's position
15   that the            in Exhibit 5 --
16   sorry, Exhibit 6, for
17         , is
18
19         ?
20   A.   I'm going to ask you to repeat
21   that, please.
22   Q.   Okay.  We'll break it into
23   pieces here.
24       I believe you've testified now
25   that

17 (Pages 62 - 65)



Page 70

1    EHAB YOUSSEF - HIGHLY CONFIDENTIAL
2

Page 72

1    EHAB YOUSSEF - HIGHLY CONFIDENTIAL

10       Q.   In one of your earlier answers
11   a few moments ago I think you used the
12   phrase "                    ."  Do you
13   remember saying that?
14       A.   You have to read it back to
15   me, I'm not sure if I said that.
16       Q.   I'll represent to you said
17   that.  And the transcript will.
18

24       A.   And again, I'll answer with
25   respect to nonprivileged portion.

Page 71

1    EHAB YOUSSEF - HIGHLY CONFIDENTIAL
2
4        Q.   What was that other licensee?
5    Or who, sorry.  Who.
6        A.   The other licensee is
                            .
8        Q.   So as I understand your
9    response,

                    .  Is that right?
13       A.   And I'll clarify that.  What
14   I'm intending to say is that

Page 73

1    EHAB YOUSSEF - HIGHLY CONFIDENTIAL
2        Q.   Sorry, the names of the people
3    who perform it are not privileged.  So
4    that's all I'm asking first.
5        A.   I can tell you the folks on
6    the

15       Q.   And when did they -- with
16   respect to this Qualcomm

                    ?
20       A.   Prior to the        being sent
21   over.
22       Q.   A month before, six months
23   before?
24       A.   Well, let me answer that by
25   saying, again, there is not one date in

19 (Pages 70 - 73)

# EXHIBIT 28

Page 1

1              IN THE UNITED STATES DISTRICT COURT
2                 FOR THE DISTRICT OF DELAWARE
3

4    QUALCOMM INCORPORATED, a
     Delaware corporation,
5    QUALCOMM TECHNOLOGIES, INC.,
     a Delaware corporation,
6

          Plaintiffs,
7

               vs.                    C.A. No. 24-490 (MN)
8

     ARM HOLDINGS PLC., f/k/a
9    ARM LTD., a U.K.
     corporation,
10

          Defendant.
11   _____
12
13                **ATTORNEYS' EYES ONLY**
14   VIDEO DEPOSITION OF ARM HOLDINGS PLC's 30(b)(6) and
15     30(b)(1) REPRESENTATIVE - KARTHIK SHIVASHANKAR
16                  Palo Alto, California
17                 Friday, June 20, 2025
18                      Volume 1
19
20

     STENOGRAPHICALLY REPORTED BY:
21   REBECCA L. ROMANO, RPR, CSR, CCR
     California CSR No. 12546
22   Nevada CCR No. 827
     Oregon CSR No. 20-0466
23   Washington CCR No. 3491
24   JOB NO. 7428915
25   PAGES 1 - 189



**Page 66**

1    Q.  (By Ms. Zappala)  And is it true that
2    under ███████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
5          MR. KRAMER:  Objection to form.  Calls
6    for a legal conclusion.
7          THE DEPONENT:  Can you say again.
8    Q.  (By Ms. Zappala)  Sure.
9          Is it true that under ████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████
13         MR. KRAMER:  Objection to form.  Calls
14   for legal conclusion.
15         THE DEPONENT:  Yeah, so this is
16   something, yeah, again, not my, I mean, yeah,
17   expertise, right?
18         I mean, so what this actually says, I
19   mean, yeah, that's, I mean, yeah, for -- that's not
20   my expertise to actually determine.
21   Q.  (By Ms. Zappala) ██████████████████
██████████████████████████████████████?
23   A.  █████████████████████████████████
███████████████████████████████████████
███████████████████████████████

**Page 67**

██████████████████████████████████████
██████████████████████████████████████
█████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████.
12   Q.  And when you say ███████████████
███████████████████████████████████████.
14   what did you mean by that?
15   A.  ████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████  ████████████████████████████████
███████████████████████████████████████
████████████████████████████
25         MR. KRAMER:  Ms. Zappala, we've been

**Page 68**

1    going an hour and 15 minutes.
2          Is now a good time for a break?
3          MS. ZAPPALA:  Let me ask two more
4    questions, and then we can break.
5          Okay?
6    Q.  (By Ms. Zappala) ████████████████
███████████████████████████████████████
█████████████████████████
███████████████
██████████████████████████████████████
█████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

**Page 69**

1    ████████████████████████████████████
███████████████████████████████████████
4          Do you see that?
5          A.  Yeah, I can see the sentence which you
6    read out.
7          Q.  ██████████████████████████████
███████████████████████████████████████
9          MR. KRAMER:  Objection to form.  Vague.
10         THE DEPONENT:  So I don't remember the
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
16   Q.  (By Ms. Zappala) ████████████████
████████████████████████████████████████
███████████████████████████████
19         MR. KRAMER:  Objection to form.  Vague.
20         THE DEPONENT:  Yeah, I cannot actually, I
21   mean, yeah, conclude on -- on -- on the -- on the
22   meaning of the sentences you read out.  I mean,
23   again, that's not my expertise.
24   ████████████████████████████████████
███████████████████████████████████████

18 (Pages 66 - 69)



Page 82

```
           ████████████████████████████████
  ███████████████████ reflected in Exhibit 13?
 3    A.  I do not recall the exact date, yeah.
 4    Q.  This is dated ████████.
 5        Do you recall if it was weeks in advance,
 6  months in advance; what is the general timeline?
 7    A.  I do not recall the exact date, I mean,
 8  yeah.
 9        Yeah, I do not recall the exact date.
10    Q.  Okay.  Can you tell me everything you
11  remember about ████████████████████████
   ████████████ reflected in Exhibit 13.
13        MR. KRAMER:  Objection to form.
14        THE DEPONENT: █████████████████
   ████████████████████████████████
   ████████████████████████████████
   ████████████████████████████████
   ████████████████████████████████
   ███████████
   ████████████████████████████████
   ████████████████████████████████
   ████
```

Page 83

```
   ████████████████████████████████
   ████████.
 3    Q.  (By Ms. Zappala)  Are there any -- did
 4  you -- strike that.
 5  ████████████████████████████████
   ████████████████████████████████
   ████████████ reflected in Exhibit 13?
 8    A.  ████████████████████████████
   ████████████████████████████████
   ████████████████████████
12    Q.  Who on your team ████████████████?
13    A.  So a person named Akshay Bhatnagar.
14    Q.  And then you ████████████████?
15    A.  Yes, that is correct.
16    Q.  ████████████████████████████
   ████?
18    A.  ████████████████████████
   ████████████████████████
21    Q.  Just to clarify, you mean 2024, right?
22    A.  Yeah, sorry, 2024, yeah.
23    Q.  When you say you ████████████████
   ████████████████████████?
25    A.  ████████████████████████
```

Page 84

```
 1 █
   ████████████████████████████████
   ████████████████████████████
   █ ████████████████████████████████
   ████████████████████
 8        MS. ZAPPALA:  And, Counsel, I would say
 9  we don't have any of the documentation reflecting
10  the ████████ under Exhibit 13.  We will send a
11  follow-up email out, but we will request that
12  documentation.
13        MR. KRAMER:  All right.  Thank you.
14    Q.  (By Ms. Zappala)  When you say the
15  ████████████████, what do you mean by that?
16        What were you looking at?
17    A.  So, again, I mean, going back to my
18  previous explanation, ████████████████████
   ████████████████████████████████
   ████████████████████████████████
   ████████████████████████
25    Q.  So let's talk about ████████████ for
```

Page 85

```
 1  a minute.  Here, ████████████████████
   ████████████████████████.
 3        Do you see that in Exhibit 13?
 4    A.  Yeah ████████████████
   ████████████████████.
 6    Q.  Can you tell me -- and you see there's a
 7  column, ████
 8        What ████████████ is listed?
 9    A.  I can see the ████████████████
10  listed.
11    Q.  Can you tell me what the ████████████ was
12  related to ████████████████.
13    A.  I don't, I mean, yeah, recall the exact,
14  I mean, yeah, ████ and the -- and the -- and the
15  ████████████████.  But, I mean, yeah, it
16  actually, I mean, yeah, went ████████████████
   ████████████████████
19        That's the ████ I was involved in.
20    Q.  Can you describe for me what the ████████
   ████████████████████
22        MR. KRAMER:  Objection to form.
23        THE DEPONENT:  Again, I mean, as I
24  explained before, I mean, yeah, ████████████
   ████ I mean, yeah, we ████████████████
```

22 (Pages 82 - 85)



Page 86

11    Q.  (By Ms. Zappala)
                                    ?
13    A.  I don't exactly remember

16    Q.  Your testimony is that

                                       ?
19    A.

24    Q.  And if I wanted to understand -- sorry,
25    if I want to see the specifics of the

Page 87

1  what would I look at?
2        MR. KRAMER:  Objection to form.
3    Q.  (By Ms. Zappala)  Is there a document
4  that has the              in it?
5        MR. KRAMER:  Objection to form.
6        THE DEPONENT:  So can you say the
7  question again.
8    Q.  (By Ms. Zappala)  So you said the -- you

12       How can I find the documentation
13  supporting that
14       MR. KRAMER:  Objection to form.
15       THE DEPONENT:

19    Q.  (By Ms. Zappala)  Did Mr. Akshay [sic]
20  send you an email
                            ?
22    A.  I do not recall exactly, I mean, yeah,
23  what documents was exchanged because, I mean, yeah,
24  more than a year ago.
25    Q.  When you

Page 88

Page 89

23 (Pages 86 - 89)



Page 90

1    ███████████?
2        A. I do not exactly remember ████
     ████████████████████████
     ████████████████████████
7        Q. I know you can't remember ████
     ████████
9            Can you remember some information about
10   them?
11       A. ██████████████████████
     ████████████████████
     ██████████████████████
17       Q. And do you understand -- so I want you to
18   take a look, if you compare -- strike that.
19           If you go to the ████████████
     ██████████████
     ██████████
24       Q. Are those ████████████████
25   ████?

Page 91

1            MR. KRAMER: Objection to form. Calls
2    for legal conclusion.
3            THE DEPONENT: As part of the -- I mean,
4    the -- the proposal generation, I mean, yeah, we
5    would have, I mean, yeah, considered, ████████
     ████████
     █████████
     ████████████
11       A. I don't precisely remember ████████
     ██████████████
14       Q. So you don't recall if there was an ████
     ████
17       A. I do not recall at this point.
18   ████████████████████████
     ████████████
     ████████
     ████████████
     ████████████████

Page 92

1            Do you see that?
2    ████████████████████
     █████████████████████████
     ██████████████████████
     ████████████████
     ███████████████████
     ████████
11   █████████████████
     ████████████████████████
     █████████████
     ██████████████████████
     ████████████████████
     ████████
21       Q. Can you explain to me the reason there
     ████████████████
     ████
24           MR. KRAMER: Objection to form.
25           THE DEPONENT: I mean, I cannot, I mean,

Page 93

1    yeah, comment on -- on --
     ████.
3        Q. (By Ms. Zappala) ████████████
     ██████████████████████
     ████████████?
7            MR. KRAMER: Objection to form.
8            THE DEPONENT: ████████████████
     ████████████████████
     ███████████████.
12       Q. (By Ms. Zappala) But my question was,
     ██████████████████████
     ████████?
15           MR. KRAMER: Objection to form.
16           THE DEPONENT: So I do not exactly, I
17   mean, yeah, recall.
18   ████████████████████
     ████████.
21       Q. (By Ms. Zappala) ████████████
     ████████?
24   ████████████████████?
25           MR. KRAMER: Objection to form.

24 (Pages 90 - 93)



Page 94

1    THE DEPONENT:

5    Q.  (By Ms. Zappala)

7    MR. KRAMER:  Objection to form.
8    THE DEPONENT:

14    Q.  (By Ms. Zappala) Now,

16    correct?
17    A.

23    Q.

Page 95

1    MR. KRAMER:  Objection to form.
2    THE DEPONENT:  It's a very broad
3    question.  Can you say that again.
4    Q.  (By Ms. Zappala)  Sure.
5    Well, I'm just going to strike that.
6

10    MR. KRAMER:  Objection to form.
11    THE DEPONENT:  Again, I don't precisely
12    remember the steps.
13    Coming back to my point, I mean, yeah,

16    Q.  (By Ms. Zappala)  When you say the

     what do you mean by that?
19    A.  Again, coming back to my explanation,

25

Page 96

1

3

6    Q.

8    MR. KRAMER:  Objection to form.  Calls
9    for a legal conclusion.
10    THE DEPONENT:  Can you say the question
11    again.
12    Q.  (By Ms. Zappala) Sure.
13

15    MR. KRAMER:  Same objection.
16    THE DEPONENT:  I do not exactly, I mean,
17    yeah -- I mean, I do not know, I mean, yeah, the --

--

Page 97

1    Q.  (By Ms. Zappala)

4    A.

7    Q.

10    A.  Sorry, can you say that once more.
11    Q.  Sure.
12

15    A.

18

21

25 (Pages 94 - 97)



Page 98

1    A. █████████████████████
     ██████████████.
3    Q.   And do you recall what ██████████
     ███████████████████████
5    A.   I do not recall the ████████████.
6    Q.   █████████████████████████
     ███████████████████
     ████?
9    A.   █████████████████████
     █████████████████
     ████████.
12   Q.   If you go up to the "████████" table
13   in Exhibit 13, █████████████████
     ███████████;
     █████████████████.
16        Do you see that?
17   A.   █████████████████
     ███████.
19   ███████████████████████
     ███████████████████████
     ███████████████
24        (Court Reporter asks for clarification.)
25        THE DEPONENT:  Sorry, I do not recall the

Page 99

     ███████████████
2        (Exhibit 14 was marked for identification
3    by the Court Reporter and is attached hereto.)
4        MS. ZAPPALA:  I'm going to mark this as
5    Exhibit 14, which is a letter from Qualcomm to Arm,
6    Bates No. Q90579_0040182.
7    Q.   (By Ms. Zappala)  Have you seen this
8    document before?
9    A.   I have not seen this document before.
10   Q.   This is a letter from Qualcomm to Arm.
11   And it says -- Mr. Kurt Wolf at Qualcomm to a
12   Jeff Fonseca at Arm saying, "████████████
     ███████████████████████
     ████████████████," and
15   then it lists the ███████████████
     ███████████████
17        Do you see that?
18   A.   I can see the sentence which you read
19   out.
20   Q.   And then do you see that it lists for
21   each one of these that ████████████████
     ███████████████████████?
23        Do you see that?
24   A.   The letter says "████████████████
     █████████████."

Page 100

1    Q.   ████████████████████████,
     ███████████████████████
3    which is Exhibit --
4        MS. ZAPPALA:  13?
5        MR. WESTERHOLD:  14.
6    Q.   (By Ms. Zappala) -- 14.
7    A.   Sorry, can you say the question again.
8    Q.   ████████████████████
     ███████████████████████
     ███████ in Exhibit 13, correct?
12   A.   ████████████████████████
     ████████████████████
15        MR. KRAMER:  I just got a note and I'm
16   sorry for being noisy, that the Zoom went out.
17        THE VIDEOGRAPHER:  I'm reconnecting it.
18   I lost the Wi-Fi.
19        MS. ZAPPALA:  We can go off the record.
20        THE VIDEOGRAPHER:  One second.
21        Okay.  This marks the end of media file
22   labeled No. 2.  Off the record at 11:21 a.m.
23        (Recess taken.)
24        THE VIDEOGRAPHER:  This marks the
25   beginning of media file labeled No. 3.  Back on the

Page 101

1    record at 11:22 a.m.
2        (Exhibit 15 was marked for identification
3    by the Court Reporter and is attached hereto.)
4        MS. ZAPPALA:  I'm going to mark as
5    Exhibit 15 a email that's Bates-stamped
6    Q90568_0104036.
7        THE DEPONENT:  Thank you.
8        MS. ZAPPALA:  I'm sorry, it's
9    QCVARM_0527544.
10   Q.   (By Ms. Zappala)  And this is a email
11   from a Jeff Fonseca to Kurt Wolf on January 10,
12   2025.
13        Do you see that?
14   A.   Yup, I can see the -- the -- Jeff and
15   Kurt's name on the email, yeah.
16   Q.   Have you ever seen this email before?
17   A.   No, I have not seen this email.
18   Q.   Okay.  I want to direct you to the first
19   paragraph.
20        Mr. Fonseca writes, ████████████████
     ████████████████████████
     ████████████████████████
     ████████████████████████
     ████████████████████

26 (Pages 98 - 101)

# EXHIBIT 29

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE
 2
 3    QUALCOMM INCORPORATED,      §
      A DELAWARE CORPORATION,     §
 4    QUALCOMM TECHNOLOGIES,      §   C.A. NO. 24-490-MN
      INC., A DELAWARE            §
 5    CORPORATION,                §
                                  §
 6       PLAINTIFFS,              §
                                  §
 7    - AGAINST -                 §
                                  §
 8    ARM HOLDINGS PLC.,          §
      F/K/A ARM LTD., A U.K.      §
 9    CORPORATION,                §
                                  §
10       DEFENDANT.               §
11          **HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**
12       ORAL AND VIDEOTAPED DEPOSITION OF AKSHAY BHATNAGAR
                       JULY 10, 2025
13
14
15
         ORAL AND VIDEOTAPED DEPOSITION OF AKSHAY
16    BHATNAGAR, produced as a witness at the instance of
      the Plaintiffs and duly sworn, was taken in the
17    above styled and numbered cause on Thursday,
      July 10, 2025, from 9:22 a.m. to 12:39 p.m., before
18    TAMARA CHAPMAN, CSR, RPR-CRR in and for the State of
      Texas, reported by computerized stenotype machine,
19    at the offices of Kirkland & Ellis, LLP, 401
      Congress Avenue, Austin, Texas, pursuant to the
20    Federal Rules of Civil Procedure and any provisions
      stated on the record herein.
21
22
23
24
25    Job No. NY 7464214
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 34

1    Q.    [redacted]

. What do

3    you understand [redacted] to mean?
4    A.    [redacted]

[redacted]?

6    Q.    [redacted]

[redacted]?

8    A.    [redacted]?
9    Q.    Qualcomm's [redacted]?
10   A.    So I'm just trying to make sure I'm
11   getting the timeline correct.

[redacted]?

13   Q.    You understand that Qualcomm [redacted],

15   don't you?
16   A.    I don't remember when [redacted]

[redacted].

18   Q.    Do you remember that there was such a
19   [redacted]?
20   A.    I remember there was [redacted]

[redacted].

22   Q.    And my question is [redacted]

[redacted]?

24   A.    [redacted]

[redacted]

Page 35

3    Q.    [redacted]

[redacted]?

5          MR. EVANGELATOS:  Objection.
6          I'm going to caution you again.  To
7    the extent any of that analysis or any discussions
8    about that analysis involve attorneys, you should
9    not include that in your answer, and you should
10   answer as to anything outside of anything you may
11   have discussed with any attorneys.
12         MR. SCOTT:  I'll just note for the
13   record that our position would be that that claim of
14   privilege is overbroad, but you can -- I respect
15   your right to instruct your witness.
16         MR. EVANGELATOS:  Yeah.  Obviously I
17   disagree.  I mean, let him testify to -- in
18   accordance with my instruction.
19         So go ahead and answer.
20   A.    [redacted]

Page 36

[redacted]

[redacted]

[redacted]

[redacted]

9    Q.    Let me break that down a little bit.
10         You testified that [redacted]

[redacted]?

13   A.    I don't remember.  It's been a while.
14   Q.    [redacted]?

16   A.    [redacted]

[redacted]

[redacted]

[redacted]

24   Q.    You referred to -- you testified -- I'm
25   sorry.  Strike that.

Page 37

[redacted]

[redacted]

[redacted]

[redacted]

9    Q.    [redacted]

[redacted]

12         MR. EVANGELATOS:  Objection; form.
13   A.    [redacted]

[redacted]

[redacted]

[redacted]

23   Q.    [redacted]

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



**Page 38**

13    MR. EVANGELATOS: I'm going to
14 caution you on the basis of a third-party
15 confidentiality obligation.
16         The question was "do you recall."
17 Just answer that as a "yes" or "no" and then let's
18 be careful about ████████ we're talking
19 about and which companies we're talking about.
20         So just answer that question "yes" or
21 "no," do you recall.
22    A.  No.
23    Q.  ████████████████████
24 ████████
25         MR. EVANGELATOS: Are you asking him

**Page 39**

1 ████████████████
2 ████████████████?
3         MR. SCOTT: I'm asking ████████
4 ████████.
5         MR. EVANGELATOS: Well, so, I need to
6 instruct him on a third-party confidentiality. So
7 if you want to narrow it first and see if he
8 recalls, and then we can take it basis by -- company
9 by company.
10        MR. SCOTT: For the record, I don't
11 think that it's appropriate for you to instruct him
12 not to answer on the basis of a purported
13 third-party confidentiality.
14        MR. EVANGELATOS: So, look, we told
15 you yesterday ████████ has objected to revealing
16 their confidential information. So that -- we
17 understand they're going to file something
18 imminently. And so we can't reveal certain
19 information based on that dispute.
20        MR. SCOTT: And they filed something?
21        MR. EVANGELATOS: My understanding is
22 they're filing something any day now. And so they
23 have objected. And without -- on the basis of that
24 objection we're going to instruct him not to answer
25 about ████████ confidential information.

**Page 40**

1         So I'm just asking you, if you want
2 to ask questions about the others that have not
3 objected, go ahead. If you want to probe that, go
4 ahead. But as to ████████ in particular, I do need
5 to instruct him on that.
6         MR. SCOTT: I just want to make clear
7 for the record, you're instructing your witness not
8 to answer based on your belief that a third-party
9 may file for a protective order in the future?
10        MR. EVANGELATOS: No, that's not
11 accurate. I'm instructing -- specifically as to
12 ████████, I've told you ████████ informed us
13 that they object to that disclosure and they will
14 file something. I don't know off the top of my head
15 if they filed something yet. If -- because on the
16 basis of that dispute, I will instruct him not to
17 answer as to ████████.
18        MR. SCOTT: Okay. Just for the
19 record, we believe that instruction is improper and
20 we will hold the deposition open.
21        MR. EVANGELATOS: Okay. We can agree
22 to disagree.
23        MR. SCOTT: Great.
24    Q.  Let's see. So just getting back to -- ████
25 ████████████████████████

**Page 41**

1 ████████████████████
2 ██ ████████
3 ██ ████████
4 ████████████████████
5 ████████████████████
6 ████████████████████████
7 ████████████? Am I understanding that
8 correctly?
9    A.  So, again, these discussions were more
10 than a year back, or around a year back, so I may
11 not remember the specific works. ████████████
12 ████████████████████████
13 ████████████████████████
14 ████████████████████
17    Q.  I'm -- I'm -- I'm asking what they told
18 you at this time, and not what you think they would
19 have told you or presumed that they might have told
20 you. So I just want to restate the question.
21 ████████████████████████
22 ████████████████████████
23 ████████████?
24    A.  ████████████████████
25 ████████████████████

11 (Pages 38 - 41)

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



19 (Pages 70 - 73)

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 82

Page 84

1           ?
2           MR. EVANGELATOS:  Objection; form and
3 asked and answered.
4     A.   I mean, I heard the term tossed around
5 maybe in some conversations.  What exactly it means,
6 I don't know.

Page 83

1     Q.   Okay.  I'm going to hand you -- and this
2 will be -- I think we can take a break after this
3 one.  I'm going to hand you another document with
4 the Bates No. ARMQC_2751388.  I'm marking this as
5 QCX 211.
6        (Exhibit QCX 211 was marked.)
7     Q.   So this is an email thread between you
8 and Mr. Shivashankar dated December 2024.
9       Do you see that?
10       And it's got the subject line
11                  ."
12     A.   (Pause.)
13     Q.   Do you recall receiving this email?
14     A.   (Pause.)
15     I can see that I'm on the email.  I don't
16 exactly remember the email.
17     Q.   It looks like an email you sent in the
18 course of work at Arm, though, doesn't it?
19     A.   (Nods.)
20     Q.   Is that a yes?  Sorry.  The court
21 reporter can't get nodding.
22     A.   It does look like -- yes, it does look
23 like that email.
24     Q.   Great.  Thank you.
25

Page 85

22 (Pages 82 - 85)

# EXHIBIT 30

Page 1

1              IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF DELAWARE

3    QUALCOMM INCORPORATED a Delaware corporation, ) Case No.
     QUALCOMM TECHNOLOGIES, INC., a Delaware       )24-490-MN

4    corporation,                                  )
                                                   )
5         Plaintiffs,                              )
                                                   )
6        vs.                                       )
                                                   )
7    ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K.      )
     corporation,,                                 )
8                                                  )
          Defendant.                               )
9    _____)

10              ATTORNEYS EYES ONLY VIDEOTAPED

11        30(b)(6) DEPOSITION OF JEFFREY M. FONSECA

12                   Palo Alto, California

13                 Wednesday, July 9, 2025

14

15

16            REPORTED BY: Derek L. Hoagland

17                   CSR No. 13445

18

19

20

21

22

23

24

25

Page 14

1  Q.    And what does it mean to manage Qualcomm and
2  these two accounts?
3  A.    I'm the key point of contact for sales for all
4  three accounts.
5  Q.    So is it fair to say that as of June 2024 you
6  became the key point of sales for the Qualcomm account?
7  A.    Yes.
8  Q.    And what does it mean to be the key point of
9  sales for the Qualcomm account?
10  A.    Basically, anything that relates to customer
11  engagement, we call them partners, is I'm the first
12  point of contact, myself and my technical liaison, and
13  basically we help validate any inquiries that come in
14  from the partners.
15  Q.    Who do you interact with at Qualcomm?
16  A.    Currently, Kurt wolf, Richard Meacham.
17  Q.    Anyone else?
18  A.    Primary contacts that I deal with on a running
19  basis every week.
20  Q.    And have Kurt Wolf and Richard Meacham been your
21  primary point of contacts since June of 2024?
22  A.    Yes.
23  Q.    Anyone else at Qualcomm?
24  A.    I have interacted with Manju Varma and Karl,
25  Manju Varma and Karl Whealton.  That's his name

Page 15

1  correctly, yeah, W-h-e-l -- e-a-l-t-o-n.  And then I've
2  interacted with some other people, like John.  I can't
3  remember his last name.  They're in the WiFi group.
4  We've talked to other engineering teams through
5  Kurt and Richard that facilitate these conversations,
6  but they were always part of the conversations.
7  Q.    And I think you said you and a technical liaison
8  validate inquiries that come in?
9  A.    Yes.
10  Q.    And the partners.
11       Who is that technical liaison?
12  A.    Currently, it's a guy called Gonzalo Delgado.
13  Previously, it was a guy named Jeff Coulter.  That
14  changed two months ago.
15  Q.    So up until two months ago, it was Jeff Coulter?
16  A.    Yes.
17  Q.    So from June 2024 to around May --
18  A.    May.
19  Q.    -- it was Jeff?
20  A.    Yes.
21  Q.    And now it's a gentleman by the name of Gonzalo?
22  A.    Gonzalo Delgado Huiton.  I cannot spell his last
23  name.  I'm sorry.
24  Q.    And going back to your previous job as vice
25  president of strategic alliances, did -- were your job

Page 16

1  responsibilities for Amazon, Meta, Microsoft, and Google
2  essentially the same as your current responsibilities
3  for Qualcomm and Snap and SpaceX?
4  A.    Yes.
5       MS. ZAPPALA:  I'm going to show you -- what
6  exhibit number?
7       MR. BASNER:  QC_169.
8       MS. ZAPPALA:  QCX Exhibit No. 169, the 30(b)(6)
9  notice that Qualcomm issued to -- Brian, we'll he
10  heading into the 30(b)(6) portion of the deposition.
11       MR. KRAMER:  Thank you.
12       MS. ZAPPALA:  169.
13       MR. CLUBOK:  If you want us to create a shred
14  bin for you?
15       MS. ZAPPALA:  Would you like to read along?
16       THE REPORTER:  Sure.
17       (Exhibit No. 169 marked for identification.)
18  BY MS. ZAPPALA:
19  Q.    Mr. Fonseca, have you seen this exhibit before,
20  which is titled "Plaintiff's Notice of Rule 30(B)(6)
21  Deposition of Defendant"?
22  A.    I have seen something similar to this.
23  Q.    Okay.  I want to -- I believe you have been
24  designated -- so strike that.
25       This notice identifies various topics that

Page 17

1  Qualcomm has noticed to ARM for 30(b)(6) deposition
2  topics.
3  A.    Mm-hmm.
4  Q.    And my understanding is that you've been
5  designated on topics 8, 18, 19, and 21, which are listed
6  in here.
7       Does that sound accurate to you?
8  A.    That is correct.
9       MR. KRAMER:  I will represent, he is designated
10  on those topics, 8, 18, 19, and 21, subject to the
11  narrowing objections that we made on June 19th.
12  BY MS. ZAPPALA:
13  Q.    Mr. Fonseca, what did you do to prepare to
14  testify on the 30(b)(6) topics?
15  A.    Reviewed the documentation that was related to
16  each of the topics that I have been assigned, or
17  designated on, and then discussed some of the historical
18  aspects of some of those documents, just for the record,
19  and then with respect to my clarification and
20  understanding, talked to one specific individual to help
21  reconcile my correct understanding, and that was with
22  Karthik Shivashankar, on one of the topics -- on two of
23  the topics, I'm sorry.
24  Q.    So I want to unpack that a bit.
25       You said you reviewed some documentation related

5 (Pages 14 - 17)



Page 18

1  to those topics. What documentation is that?
2  A.    I don't recall off the top of my head because I
3  had the documents in front of me yesterday.
4  Q.    Okay. And you said you spoke with a
5  Mr. Karthik Shivashankar. Is that correct?
6  A.    Yes.
7  Q.    Related to two topics, right?
8  A.    Related to two topics, yes, if I recall, topic
9  8 -- let me go back and check it. I'm sorry. The
10  topics are here.
11        Yeah. It was around ▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
14  Q.    Is that topic 20? I don't believe you're
15  designated on 20.
16  A.    I'm sorry. 20 -- 21. Sorry. 18, because it
17  was around the ▓▓▓▓
18  Q.    When you say "▓▓▓▓▓ what are you referring
19  to?
20  A.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓.
22  Q.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓?
24  A.    Yes.
25  Q.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Page 19

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓
3  A.    Yes.
4  Q.    And for how long did you speak with
5  Mr. Shivashankar?
6  A.    Approximately 15 minutes.
7  Q.    On both topics that you have identified?
8  A.    Yes.
9  Q.    Can you tell me what Mr. Shivashankar told you
10  about ▓▓▓▓▓▓▓▓▓▓▓ -- let me strike
11  that question.
12        You said you spoke with Mr. Shivashankar about
13  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in one respect?
14  A.    Mm-hmm.
15  Q.    What was that respect you were referring to?
16        MR. KRAMER: Objection to form.
17        THE DEPONENT: ▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.
23  BY MS. ZAPPALA:
24  Q.    And what did Mr. Shivashankar tell you about
25  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓?

Page 20

1  A.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.
14  Q.    And did Mr. Shivashankar provide you with any
15  information about ▓▓▓▓▓▓▓▓▓▓▓▓▓?
16  A.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓
19  Q.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
21  A.    Yes.
22  Q.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓?
23  A.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Page 21

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓
6  Q.    When you -- I think you said ▓▓▓▓. Is that
7  correct?
8  A.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓
12  Q.    Have you --
13  A.    That's why when I look at paper, I can actually
14  recall better than you if you ask me blindly. Then it
15  might not come across correct.
16  Q.    Understood. Okay. So I want to take a step
17  back. We will come back to that, but I want to take a
18  step back.
19        So you spoke with Mr. Shivashankar about the
20  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓?
21  A.    Mm-hmm.
22  Q.    Can you just describe for me everything you
23  remember about that conversation with Mr. Shivashankar?
24  A.    From yesterday. That was a recollection that,
25

6 (Pages 18 - 21)



Page 22

1 ████████████████████████████████
████████████████████████████████.
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

16 A. ████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

23 ████████████████████████████
████████████████████████████████

Page 23

1 Q.    So I understood you to say that Mr. Shiva --
2 you -- strike that.
3 ████████████████████████████████
████████████████████████████████
████████████████████████████████
6 A.    Yes.
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

Page 24

1 ████████████████████████████████
████████████████████████████████
3 A.    I don't know that.
4    THE REPORTER:  You said ████████?
5 BY MS. ZAPPALA:
6 Q.    ████████████████████████████
████████████████████████████████
8 A.    ████████████████████████████
████████████████████████████████
10 Q.   ████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
14 A.    My understanding is that --
15    MR. KRAMER:  Objection to form.  You can --
16    THE DEPONENT: ████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
23 BY MS. ZAPPALA:
24 Q.    And when you say ████████████
████████ what are you referring to?

Page 25

1 A.    That's --
2    MR. KRAMER:  Objection.  Outside the scope of --
3    THE DEPONENT:  Yeah.
4    MR. KRAMER:  -- the specific topic 8.
5    But go ahead.
6    THE DEPONENT:  That's their definition.  I don't
7 have that definition.
8 BY MS. ZAPPALA:
9 Q.    So you have an understanding that there's
10 something called a ████████████████, but
11 you don't know what that refers to?
12 A.    Correct.
13 Q.    So do you have an understanding of whether the
14 ████████████████████████████████
████████████████████████████████
████████████████████████████████
17    MR. KRAMER:  Objection.  Outside scope.
18    THE DEPONENT:  My understanding is that, yes,
19 ████████████████████████████████.
20 BY MS. ZAPPALA:
21 Q.    ████████████████████████████
████████████████████████████████
████████████████████████████████

7 (Pages 22 - 25)



Page 54

1
Do you see that?
9 A.    Yes.
10 Q.

17    MR. KRAMER:  Objection to form.
18    THE DEPONENT:  I didn't understand your
19 question.
20    MS. ZAPPALA:  Sure.
21    THE DEPONENT:  So.
22 BY MS. ZAPPALA:
23 Q.    Do you see that this section that we just
24 read --
25 A.    Yes.

Page 55

1 Q.

7    Do you see that?
8 A.    Yes.
9 Q.

?
12    MR. KRAMER:  Objection to form.  Calls for legal
13 conclusion.
14    THE DEPONENT:

17 BY MS. ZAPPALA:
18 Q.

?
22    MR. KRAMER:  Objection to form.
23    THE DEPONENT:

Page 56

1 BY MS. ZAPPALA:
2 Q.

?
4 A.    Yes.
5 Q.

8 A.    That, I don't know.
9 Q.

14 A.    No.
15    MR. KRAMER:  Objection to form.
16    THE DEPONENT:  I'm sorry.
17 BY MS. ZAPPALA:
18 Q.    What was the answer to the question?
19 A.    No.
20    And would that be the same answer for the
21 core?
22 A.    No.  Correct, same answer.
23    MR. KRAMER:  A little higher.  Don't.
24    MS. ZAPPALA:  Let me re-ask it.
25    MR. KRAMER:  Sorry.  Go ahead.

Page 57

1 BY MS. ZAPPALA:
2 Q.    Let me re-ask.
3    You have an understanding that
4 Mr. Shivashankar's team

7    MR. KRAMER:  Objection to form.
8    THE DEPONENT:  Yes.
9 BY MS. ZAPPALA:
10 Q.

14 Q.

23 Q.    Earlier you testified that

, correct?

15 (Pages 54 - 57)

# EXHIBIT 31

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,  )
  a Delaware corporation; and  )
QUALCOMM TECHNOLOGIES, INC.,  )
  a Delaware corporation,  )
  )
        Plaintiffs,  )  C.A. No. 24-490 (MN)
  )
      v.  )  **SUBMITTED UNDER SEAL –**
  )  **HIGHLY CONFIDENTIAL –**
ARM HOLDINGS PLC., f/k/a ARM LTD.,  )  **ATTORNEYS' EYES ONLY**
  a U.K. corporation,  )
  )
        Defendant.  )

**PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI
REGARDING SUBSEQUENT EVENTS RELATING TO THEIR MOTION TO COMPEL
PRODUCTION OF ARM'S ANALYSIS OF THIRD-PARTY LICENSES**

OF COUNSEL:

Catherine Nyarady
Jacob A. Braly
Jacob Apkon
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Adam Basner
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007
(202) 240-2900

October 17, 2025

Dear Special Master Rychlicki:

Pursuant to D. Del. LR 7.1.2, Plaintiffs write to advise Your Honor of newly-learned facts and subsequent events that have occurred since the August hearings that relate to Qualcomm's pending motion to compel production of documents related to ███████████████████████. Ex. 1 at 4-5.

As Your Honor is aware, ███████████████████████████████████████████████. Qualcomm requested production of that ███ on numerous occasions. *See, e.g.*, Ex. 3; Ex. 4 at 2. Arm said it is withholding the ███ because it includes ███ and ███ confidential information, but would produce it following resolution of the ███ and ███ protective order motions. *See, e.g.*, Ex. 5 at 2; Ex. 6 at 38:4-17; Ex. 7 at 245:12-246:8; Ex. 8.

Dispositive motions are due in this case on October 24. D.I. 44 ¶ 9. And, given that Arm did not otherwise object to producing this ███, Qualcomm requested Arm produce now the ███ with redactions over ███ and ███'s confidential information so that Qualcomm can address it in its upcoming summary judgment briefing. Ex. 9. Following the parties' October 10 meet and confer, Arm refused this request, claiming that Qualcomm's request is prohibited by the Protective Order ("PO") and untimely.[1] Arm is wrong.

**Protective Order.** Arm claims that the PO prohibits its ability to provide the ███ because a third party has objected. This argument makes no sense because Qualcomm seeks only a redacted version of this ███.

Arm also claims that the PO ***prohibits*** it from producing a redacted document in this case. While the producing party is not permitted to unilaterally redact documents for reasons other than privilege or other immunity, it is illogical to suggest that the PO ***prohibits*** the production of a document in redacted form if the parties agree. For the same reasons explained in Qualcomm's other October 17 letter, the parties' PO dispute in March before Judge Fallon has no bearing on the production of the ███ in redacted form. Ex. 11 at 3.

**Timing.** Arm claims Qualcomm's request is untimely because Qualcomm did not request a redacted version of this ███ earlier. As explained above, Qualcomm repeatedly requested production of the ████████████████. Given the upcoming summary judgment deadline, Qualcomm now seeks a redacted version of the ███ to reduce the prejudice to its summary judgment briefing.

Arm also suggests Qualcomm should have raised this issue with Your Honor in August. Ex. 8 at 3. But, at the time there was no dispute over production of a redacted version of the ███. In light of the upcoming summary judgment deadline and the current status of the parties' discovery disputes, Qualcomm made a reasonable, good faith request for a redacted version of the ███. Arm's refusal to provide those portions of the ███ that it can

---

[1] To the extent Arm separately contends that any part of the ███ is privileged, Ex. 10 at 17:2-9, the Protective Order permits such privilege redactions. Qualcomm reserves all rights to challenge any privilege designation.

at this time, based on an illogical reading of the protective order and meritless timing allegations, is improper and prejudices Qualcomm in the upcoming briefing.

Qualcomm respectfully requests that Arm be compelled to produce a redacted version of the ████████ pending resolution of the third-party protective order motions.

Respectfully submitted,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 589

Encls.

# EXHIBIT 32

**United States District Court**

**District of Delaware**

**Civil Action No. 1:24-cv-00490-MN**

**Qualcomm Incorporated and**

**Qualcomm Technologies, Inc.**

**v.**

**Arm Holdings plc**

**Reply Expert Report of Patrick F. Kennedy, Ph.D.**

**September 19, 2025**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.

v. ARM HOLDINGS PLC

## TABLE OF CONTENTS

I.      Introduction ........................................................................................... 1

II.     Materials Considered ........................................................................... 2

III.    Analysis of Newly Produced Arm Agreements .................................... 3

       ■  ██████████████████████████████████████████

       ■  ██████████████████████████████████████████

IV.     Summary of the Britven Report ......................................................... 13

    A.      ███████████████████████████████████████ .... 14

                                .... 14

                                .... 17

                                .... 20

        iv.     Mr. Britven's Opinion that the Kennedy Opening Report Analysis of Third-Party Agreements Is Incomplete ................................. 21

    B.      Mr. Britven's Analysis of Alleged Overpayment for At-Issue Peripheral IP .... 22

    C.      Mr. Britven's Analysis of Damages Due to Alleged Interference with ████ 24

V.      Summary of Relevant Opinions in the Simcoe Report ...................... 25

VI.     Reply Opinions Regarding the Britven Report ................................... 26

    A.      Reply to Mr. Britven's Analysis of the ██████████████████ ████████ .................................................................. 26

        i.      ████████████████████████████████████ . 26

        ii.     ████████████████████████████████████ . 28

        iii.    Mr. Britven's opinions ignore the language of ████████ of the Qualcomm TLA ......................................................................... 42

        iv.     Mr. Britven's opinions regarding "other third-party licenses" are incomplete and inconsistent ....................................................... 72

        v.      Mr. Britven's criticisms of my analysis of ████████████ for ██████████████ contradict the record evidence ............. 74

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

B.   Reply to Mr. Britven's Criticisms of My Analysis Related to the Peripheral IP ................................................................................................... 78

    i.   ████████████████████████████████ ..... 78

    ii.   █████████████████████████████████ 79

    iii.   ███████████████████████████ ........... 80

    iv.   ████████████████████████ ................... 81

    v.   Mr. Britven's assertions that the Qualcomm TLA does not preclude price increases or require consistent discounting are not informative ... 82

C.   Reply to Mr. Britven's Analysis of Damages Due to Alleged Interference with Qualcomm's Prospective Economic Advantage ..................................... 84

    i.   ██████████████████████████ ..................... 84

    ii.   Mr. Britven's claims related to "the extent to which the assumed future harm will actually occur" are contradicted by the record evidence ............................................................................... 86

    iii.   ████████████████████████ ..................... 87

VII.   Reply Opinions Regarding the Simcoe Report ................................................. 88

VIII.   Reservation of Rights ................................................................................. 90

STOUT RISIUS ROSS, LLC                                                                ii
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

**TABLE OF FIGURES**



QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

## I.    INTRODUCTION

1.      I have been retained by Counsel representing Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively referred to in this report as "Plaintiffs" or "Qualcomm") to evaluate damages related to certain claims asserted by Qualcomm against Arm Holdings plc ("Arm" or "Defendant")[1] related to the alleged wrongful conduct described in Qualcomm's Second Amended Complaint in this action.[2]

2.      On August 8, 2025, I issued an expert report in this matter (the "Kennedy Opening Report").  On September 5, 2025, Mr. Thomas W. Britven, Arm's damages expert, issued an expert report (the "Britven Report"), reflecting his opinions and responding to my opinions reflected in the Kennedy Opening Report.[3]  Also on September 5, 2025, Professor Timothy Simcoe issued an expert report (the "Simcoe Report"), reflecting his opinions and responding to the opinions of Professor Eric Posner, Qualcomm's retained expert on anticompetitive conduct and unfair competition.[4]  The Simcoe Report also responds to certain aspects of my analysis of Qualcomm's damages related ██████████████████████████████████████.[5]  The purpose of this report is to address and respond to the opinions and analysis in the Britven Report, as well as certain opinions of the Simcoe Report.[6]  Additionally, since the issuance of the Kennedy

---

[1]    I am aware that there is a pending motion to amend Qualcomm's Second Amended Complaint to name both Arm Holdings plc and Arm Ltd. as Defendants.  Nothing in my analysis and quantification of certain categories of Qualcomm's claimed damages is dependent on which Arm corporate entity(ies) are named Defendant(s).  *See* Plaintiffs' Motion for Leave to Amend the Complaint to Name Arm Holdings Plc. And Arm Ltd. as Individual Defendants, August 1, 2025.
[2]    Second Amended Complaint, *Qualcomm Inc. and Qualcomm Technologies, Inc. v. Arm Holdings plc f/k/a Arm Ltd.*, Civil Action No. 1:24-cv-00490-MN, June 3, 2025 ("Second Amended Complaint"), pp. 1-6.
[3]    Expert Report of Thomas W. Britven, September 5, 2025, ("Britven Report").
[4]    Rebuttal Expert Report of Professor Timothy S. Simcoe, September 5, 2025 ("Simcoe Report").
[5]    Simcoe Report, p. 6.
[6]    I understand that other Arm experts also issued their respective reports on September 5, 2025, specifically Dr. Michael Brogioli and Mr. Steven Richards.  In their respective reports, Dr. Brogioli and

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

Opening Report, Arm has produced additional license agreements with third parties.  With this newly produced information, I supplement my opinions in the Kennedy Opening Report related to Arm's third-party agreements in this report.[7]

3.    This report incorporates my previous disclosures concerning my professional background and experience, the materials subject to my review, and my expert opinions regarding economic damages associated with the claims asserted in this case.  This report summarizes my current opinions given the information available to me at this time.  I understand that Arm has not completed production of all documents relevant to my report including, specifically, its production of third-party license agreements.  If I receive additional relevant information, I reserve the right to prepare a supplemental report incorporating this new information.

## II.    MATERIALS CONSIDERED

4.    In connection with my continuing review and analysis, I have considered, reviewed, and relied upon materials and information cited in the Kennedy Opening Report and Exhibit C thereto and the additional information and materials cited in this report and generally summarized at the attached **Exhibit B**.

---

Mr. Richards claim to respond to certain of my opinions in the Kennedy Opening Report.  However, based on my review of their reports, they appear to be responding to factual summaries in the Kennedy Opening Report, as opposed to my expert opinions.  Therefore, I do not explicitly reply to Dr. Brogioli's or Mr. Richards' report in this reply report.

[7]    As discussed below, Arm produced agreements related to an additional ▮ third parties over the last 15 days, with the latest agreements produced on the due date of this report.  As such, I have not completed my analysis of all of these additional third-party agreements, and do not include analysis of certain of them in this report, and I specifically reserve the right to supplement my opinions with respect to all of Arm's third-party agreements.

## III.    ANALYSIS OF NEWLY PRODUCED ARM AGREEMENTS

5.    Since the date of the Kennedy Opening Report, Arm has produced agreements related to an ███████████████ , as shown in the figure below.

**Figure 1:    Summary of Arm Third-Party Agreements[8]**



---

[8]    Schedule 6-Supplemental; ARMQC_02797236-281; ARMQC_02797282-297; ARMQC_02797298-301; ARMQC_02797302-305; ARMQC_02797306-307; ARMQC_02797308-313; ARMQC_02797314-357; ARMQC_02797358-378; ARMQC_02797379-380; ARMQC_02797381-384; ARMQC_02797385-418; ARMQC_02797419-441; ARMQC_02797442-443; ARMQC_02797444-445;

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.

V. ARM HOLDINGS PLC

---

6.      As shown in the figure above, ██ of these additional third parties' agreements were produced on September 4, 2025 (the day before the issuance of Mr. Britven's report), ██ were produced on September 11, 2025 (eight days before the due date of this reply report), ██ were produced on September 15, 2025 (four days before the due date of this reply report), ██ were produced on September 16, 2025 (three days before the due date of this reply report), and ██ was produced on September 19, 2025 (the due date of this reply report).  Because it takes time for counsel to upload the production to the document review platform and render the documents in a format that I can review, I was not able to begin my review of each agreement until a day or two after the production.  I have preliminarily reviewed the agreements produced on September 4, 2025 and September 11, 2025 and incorporate my preliminary analysis of those agreements in this report.  I have not yet reviewed the agreements produced on September 15, 16, and 19, 2025, which total more than 800 pages.[9]  Given the extremely short window that Arm's production schedule has provided to review these agreements, I reserve the right and intend to supplement my analysis of Arm's third-party agreements produced after the date of the Kennedy Opening Report, including any agreements that have not yet been produced.

---

ARMQC_02797446-448; ARMQC_02797449-453; ARMQC_02797454-484; ARMQC_02797485-526; ARMQC_02797527-546; ARMQC_02797547-548; ARMQC_02797549-551; ARMQC_02797552-554; ARMQC_02797555-561;  ARMQC_02797562-600; ARMQC_02797601-602; ARMQC_02797603-609; ARMQC_02797610-624; ARMQC_02797625-668; ARMQC_02797669-688; ARMQC_02797689-691; ARMQC_02797692-698; ARMQC_02797699-739; ARMQC_02797740-759; ARMQC_02797760-762; ARMQC_02797763-764; ARMQC_02797765-766; ARMQC_02797767-774; ARMQC_02797775-777; ARMQC_02797778-942; ARMQC_02797943-971; ARMQC_02797972-982; ARMQC_02797983-984; ARMQC_02797985-986; ARMQC_02797987-996; ARMQC_02797997-032; ARMQC_02798033-034; ARMQC_02798035-039; ARMQC_02798040-056; production dates per Counsel.

[9]  ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

ARMQC_02797987-996 at '990.

---

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC**

## A. Royalty Rates for ███████████████ in the Newly Produced Arm Agreements

7.      In the figure below, I indicate which of the relevant Arm Implementation Cores are

licensed in each of Arm's third-party agreements that I have been able to preliminarily review.





---

10    Schedule 6-Supplemental.

11    ████████████████████████████████████. *See* ARMQC_02779412-432, ARMQC_02783512-532, ARMQC_02789005-047, ARMQC_02789048-068, ARMQC_02789069-070, ARMQC_02789071-073, ARMQC_02789074-076, and ARMQC_02789077-081. ████████ ███████████████████████████████████████ See ARMQC_02779269-313 at '269.  I

---

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.

v. ARM HOLDINGS PLC



Opening Report. I supplement that analysis here with the additional licenses produced by Arm on September 4, 2025 and September 11, 2025. I note that Arm has still not produced its agreement with ███████, which Arm contends was used as the basis for ████████████ ████████ for ████████████████.[12] As noted in the Kennedy Opening Report, I do not contend that this analysis represents a complete analysis of Arm's agreements with third parties discussed herein. As described above, I reserve the right to, and intend to, supplement my report after my complete review of Arm's third-party agreements produced after the date of the Kennedy Opening Report, as well as if/when any additional agreements and/or supporting documentation are produced and/or any Arm fact witness provides testimony after the date of this reply report regarding any of these agreements.

9.     In the figures below, I compare the ████████████████ ████████████ ████████████████ to the various agreements produced by Arm.

---

████████████████████████████████████████████. *See* ARMQC_02789069-070, ARMQC_02789077-081, and ARMQC_02783619-730 at '623-'628.

[12]  Arm's Second Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11), September 5, 2025, pp. 60-61.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



---

[13]   Schedule 6-Supplemental; QCVARM_0616967-969 at '968.  I note that royalty rate percentages for ███████████

[14]   Schedule 6-Supplemental; QCVARM_0616967-969 at '968.

---

STOUT RISIUS ROSS, LLC                                                                          7
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
V. ARM HOLDINGS PLC**



---

[15]  Schedule 6-Supplemental; QCVARM_0616967-969 at '968.
[16]  Arm's Second Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11), September 5, 2025, pp. 60-61.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**



**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
V. ARM HOLDINGS PLC**



QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
V. ARM HOLDINGS PLC



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



## IV.    SUMMARY OF THE BRITVEN REPORT

18.    As discussed above, on September 5, 2025, Mr. Britven issued an expert report, rebutting the Kennedy Opening Report. In the following sections, I provide a summary of the sections of the Britven Report that are relevant to my reply opinions.

---

[43]    ARMQC_02783619-730 at '625-627. I do not have enough information to determine if/when ▮▮▮ shifted from being included in the Advanced package variant to the Regular package variant. Because ▮▮▮ was included in the Regular package variant as of ▮▮▮, I do not see an economic basis for the increase in the offered price for ▮▮▮ reflected in the ▮▮▮ given the maturity of this IP.

[44]    Kennedy Opening Report, p. 30.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

**A. Arm's** ███████████████████████████████████

**i. Mr. Britven's Understanding of Arm's** ███████████████████



███████████████████."[45]  I note that Mr. Britven's understanding of Arm's ███████ is based on an interrogatory response, deposition testimony, and interviews of the following Arm personnel:

- Akshay Bhatnagar, Senior Manager of North America Licensing[46]
- Jeffrey Fonseca, Director and Partner Manager, Sales[47]
- Karthik Shivashankar, Senior Director of Commercial Strategy and Licensing[48]
- Ehab Youssef, Vice President and Deputy General of Licensing, Legal Ops, and Trade Compliance[49]

20.    Outside of the deposition testimony and interrogatory response, the only documents cited in Mr. Britven's description of his understanding of Arm's ███████████ are Arm licenses with third parties, ████████████████████, and public websites about Qualcomm's and ██████████ businesses.[50]  He does not identify any Arm ███████,

---

[45]  Britven Report, pp. 34-35.
[46]  Deposition of Akshay Bhatnagar, July 10, 2025, p. 8.
[47]  30(b)(6) Deposition of Jeffrey Fonseca, July 9, 2025, p. 11.
[48]  30(b)(6) Deposition of Karthik Shivashankar, June 20, 2025, p. 20.
[49]  Deposition of Ehab Youssef, June 26, 2025, p. 20.
[50]  Britven Report, pp. 34-38.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC





23.    As noted above, Mr. Britven's report does not reference any Arm documents,

."55

---

51  Britven Report, pp. 34-35.
52  Britven Report, p. 37.
53  Britven Report, pp. 35, 37.
54  Britven Report, p. 35.
55  Britven Report, p. 35.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



---

[56] Britven Report, p. 36.
[57] Britven Report, p. 35-36.
[58] Britven Report, pp. 36, 68.
[59] Britven Report, p. 37.
[60] Britven Report, p. 37.
[61] Britven Report, p. 37.

---

STOUT RISIUS ROSS, LLC                                                                 16
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**v. ARM HOLDINGS PLC**



### ii. Mr. Britven's Opinions Regarding ████████████████████████

27.    In light of his description of Arm's ████████████████



---

62    Britven Report, p. 37, fn. 194.
63    Britven Report, p. 37, fn. 194.
64    Britven Report, pp. 29, 34-38.
65    Britven Report, pp. 39-60.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



29.    Mr. Britven ultimately opines that ████████████████████████
████████████████████████████████████████████████████████████
███████████████████    ████████████████████████."[67]

██    ████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████    ███████████████████████████
██████████████████████████████████████████████████  ██
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████

---

[66]    Britven Report, pp. 61-69.
[67]    Britven Report, p. 39.
[68]    Britven Report, p. 67.
[69]    Britven Report, p. 67.
[70]    Britven Report, pp. 67-68.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.



---

[71]   Britven Report, p. 68.
[72]   Britven Report, p. 68.
[73]   Britven Report, p. 69.
[74]   Britven Report, p. 69.
[75]   Britven Report, pp. 68-69.
[76]   Britven Report, p. 70 (emphasis in original).

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.

V. ARM HOLDINGS PLC



### iii. Mr. Britven's Opinion that Certain Benchmarks Are Not Relevant Under



---

77  Britven Report, pp. 72-73.
78  Britven Report, p. 73.

---



### iv. Mr. Britven's Opinion that the Kennedy Opening Report Analysis of Third-Party Agreements Is Incomplete

36.     Mr. Britven claims that the analysis of third-party agreements with respect to determining a ███████████████ in the Kennedy Opening Report is "incomplete" based on "Arm's

---

79    Britven Report, p. 73.
80    Britven Report, pp. 73-74.
81    Britven Report, pp. 74-75.
82    Britven Report, p. 75.
83    Britven Report, p. 76.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



"[84]    Mr. Britven claims that the

37.    Ultimately, Mr. Britven opines that "the Kennedy Report (while recognizing its own analysis to be incomplete) fails to show that



## B. Mr. Britven's Analysis of Alleged Overpayment for At-Issue Peripheral IP

38.    Mr. Britven opines that Arm's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for the Peripheral IP were commercially reasonable, and that Qualcomm did not incur any overpayment

---

[84]    Britven Report, pp. 79-80.

[85]

Britven Report, pp. 39-40.

[86]    Britven Report, pp. 79-80 (emphasis omitted).

---

for Arm technology.[87]  Specifically, Mr. Britven claims that "the evidence indicates that Qualcomm itself did not object to Arm's offer and determined it could 'absorb' the price increase. The fact that Qualcomm now claims in hindsight several million dollars in damages for an offer that it accepted and paid undermines the notion that it was 'harmed' or suffered 'damages' as a result of Arm's offer."[88]  Mr. Britven opines that this evidence "indicates that the prices Qualcomm paid for the Peripheral IP at Issue were reasonable" and therefore, "[i]n the event the trier-of-fact agrees, damages under this cause of action are zero."[89]



---

[87]    Britven Report, pp. 87-88.
[88]    Britven Report, pp. 87-88.
[89]    Britven Report, p. 88.
[90]    Britven Report, pp. 84-85.
[91]    Britven Report, pp. 84-85.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC





---

92 Britven Report, p. 85.
93 Britven Report, p. 85.
94 Britven Report, p. 85.
95 Britven Report, pp. 86-87.
96 Britven Report, pp. 86-87.
97 Britven Report, p. 99.

---

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



## V.    SUMMARY OF RELEVANT OPINIONS IN THE SIMCOE REPORT

44. ████████████████████████████████████████████████

████████████████ Mr. Simcoe opines that I provide no evidence that Qualcomm has suffered harm from Arm's alleged anticompetitive conduct.[103]  Specifically, Mr. Simcoe states "Dr. Kennedy merely compares the term sheets before and after the Breach Letter and, as he himself acknowledges, his analysis does not causally link the changes in the terms to Arm's allegedly

---

[98]  Britven Report, p. 96.
[99]  Britven Report, p. 99.
[100]  Britven Report, p. 96.
[101]  Britven Report, p. 96.
[102]  Britven Report, p. 99.
[103]  Simcoe Report, p. 13.

anticompetitive conduct."[104]  Mr. Simcoe further notes that I did not "construct a but-for world or provide any evidence based on market prices or terms and conditions for an actual license."[105]

45.      Mr. Simcoe argues that "there is no real-world compelling evidence of harm to Qualcomm.  Qualcomm has continued to grow and experience strong financial performance since its acquisition of Nuvia in March 2021 and public awareness of the lawsuit in August 2022, and it forecasts strong financial performance going forward."[106]  Mr. Simcoe highlights Qualcomm's growth in revenue and operating profit from ████████ and Qualcomm's forecasted increases in revenue to support his claim that "Qualcomm's success in the marketplace undermines its claim that it was 'harmed' by Arm's communications with its customers."[107]

## VI.    REPLY OPINIONS REGARDING THE BRITVEN REPORT[108]

### A. Reply to Mr. Britven's Analysis of ███████████████████ ████

#### ██ Mr. Britven's opinions regarding ███████████ ██████ are irrelevant

46.      In his report, Mr. Britven claims ██████████████████ ██████████████████████████████    ████████████████.[109]

However, such an analysis is irrelevant, as it is disconnected from Qualcomm's claims in this matter.  Qualcomm claims that Arm's ████████████ for ████████████ does

---

[104] Simcoe Report, pp. 48, 65.
[105] Simcoe Report, p. 49.
[106] Simcoe Report, p. 48.
[107] Simcoe Report, pp. 49-54.
[108] To the extent that I do not explicitly address or rebut a particular, assumption, analysis, or opinion in Mr. Britven's report, such omission should not be interpreted as agreement or acceptance of that point.
[109] Britven Report, p. 29.

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**

not meet specific contractual provisions regarding ████████, as outlined in ████████ of

the Qualcomm TLA.[110]  As such, Mr. Britven's opinions about "████████████" do not

directly address Qualcomm's claims in this litigation related to ████████ the Qualcomm TLA.

47.    The issue is not whether Arm "████████████," as suggested by

Mr. Britven. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████  ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████

---

[110]  Second Amended Complaint, pp. 37-38, 52-53, 62-63; QCARM_0343533-587 at '545-546.
[111]  Second Amended Complaint, pp. 37-38, 52-53, 62-63.

**STOUT RISIUS ROSS, LLC**                                                          27

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

### ii. **Mr. Britven's opinion that Arm** ████████████████████
████████████████████████████████████████

#### a. *Mr. Britven does not cite to any documents showing how Arm* ████████████████████████████████████

48.      Throughout his report, Mr. Britven references ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ Despite his

references to this ████████████████, Mr. Britven's report cites to no documents showing any

████████████████████████████████████ ████████████

████████████████ ████████████████████████████████

████████████████ ████████████████████. Instead, Mr. Britven simply cites to Arm's

interrogatory response and the depositions of and conversations with Mr. Bhatnagar, Mr.

Shivashankar, and Mr. Youssef.[113]

49.      Arm's interrogatory response does not cite any produced document showing the

████████████████████████████████████ ████████████

████ ████████████████████████████████████

---

[112]  Britven Report, p. 35.
[113]  Britven Report, pp. 37-38. *See also* Arm's Second Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11), September 5, 2025, pp. 60-61; Deposition of Ehab Youssef, June 26, 2025, pp. 68-71.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

███████████████████████████████████████████████████████████

███████

50.     Mr. Britven relied on Arm deposition testimony regarding ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████. Specifically, Mr. Bhatnagar testified

that he████████████████████████████████████████████████████████

██████, which Qualcomm's counsel has requested from Arm.[115]  I understand from

Qualcomm's counsel that as of the date of this report, Arm has not produced the requested

document. ██████████████████████████████████████████

████████████████████████████████████████. In contrast, Mr.

Britven suggests that Arm ████████████████████████ that is not evident in any

documentation.  Therefore, as a threshold matter, Mr. Britven opines on the████████████

████████████████████████████████████.  His characterization of Arm's ████████

remains undocumented, unsupported, and in contradiction with Arm deposition testimony.

### b. *Deposition testimony and Arm's interrogatory response contradict Mr. Britven's description of* ████████████████████ ████████

51.     Mr. Britven's description of the purported ████████████████████

████████████████████ ████████████████████ ████████████████████

██████████ is based primarily on an interview or interviews Mr. Britven had with Mr. Bhatnagar,

Mr. Shivashankar, and Mr. Youssef.[116]  I understand that each of these individuals were also

deposed in this matter, and asked questions regarding Arm's ████████████████████

---

[114] Arm's Second Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11), September 5, 2025, pp. 60-61.
[115] Deposition of Akshay Bhatnagar, July 10, 2025, p. 45.
[116] Britven Report, pp. 34-38.

███████████████████████.[117] Certain parts of Mr. Britven's description

of ███████████████ are inconsistent with this deposition testimony, particularly (1) Mr.

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

   (i)  _Mr. Britven's list of_ ███████████████████       ████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

53.    Specifically, as support for this ████████ Mr. Britven cites to an interview

with Mr. Bhatnagar, Mr. Shivashankar, and Mr. Youssef, and parts of Mr. Bhatnagar's

testimony.[119] However, the portions of Mr. Bhatnagar's testimony that Mr. Britven cites do not

mention the ████████ that Mr. Britven lists.[120] In other portions of Mr. Bhatnagar's testimony, Mr.

Bhatnagar was asked for ████████████████████████████

---

[117] Deposition of Akshay Bhatnagar, July 10, 2025; 30(b)(6) Deposition of Karthik Shivashankar, June 20, 2025; Deposition of Ehab Youssef, June 26, 2025.
[118] Britven Report, pp. 34-35.
[119] Britven Report, pp. 34-35.
[120] Britven Report, pp. 34-35; Deposition of Akshay Bhatnagar, July 10, 2025, pp. 42-43.

████████████████████████████████████████████, and Mr. Bhatnagar

testified that ██████████████████████████████████████████████████.

████████.[121]



54.    Further, Mr. Bhatnagar testified that ████████████████████████

██████████████████████████████████.[122]

---

[121]  Deposition of Akshay Bhatnagar, July 10, 2025, pp. 36-38.
[122]  Deposition of Akshay Bhatnagar, July 10, 2025, pp. 41-42.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



55.    Mr. Shivashankar also testified that ████████████████████ ████████████████████████████, other than ██████:[123]



---

[123]  30(b)(6) Deposition of Karthik Shivashankar, June 20, 2025, pp. 86, 89-90.



*(ii) Mr. Britven's claim that the* ████████████████████ ████████████ *in addition to* ████████████████

57.     Mr. Britven states in his report that ████████████████████ ████████████████████ ██████████████████████████ as ██████████████████████[124]    This claim, however, contradicts Arm's interrogatory response and the deposition testimony of Arm personnel.  In its interrogatory response, Arm identifies █████████ as the only third-party agreement upon which ████████████████ ████ stating that "████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ██ ████████████████████████████████████

██████████████████████████████
████████████

██████████████████████████████
██████████████████████

---

[124] Britven Report, p. 37.
[125] Arm's Second Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11), September 5, 2025, p. 61.
[126] 30(b)(6) Deposition of Karthik Shivashankar, June 20, 2025, pp. 97-98.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



58.    Mr. Youssef testified that ████████████████████████████████ ████████ Mr. Fonseca also testified that ███████████████████████ ███████████████████████████████████.[128]  I note that Mr. Bhatnagar testified that ████████████████████████████████ ████████████████████████████████████████████████████ ███.[129]

59.    Mr. Britven's claim that █████████████████████████████ ████████████████████████████████████████████"[130] is contradicted by the testimony discussed above, which indicates that it was based only on █████████████████████.

127  Deposition of Ehab Youssef, June 26, 2025, pp. 68-72.
128  30(b)(6) Deposition of Jeffrey Fonseca, July 9, 2025, p. 23.
129  Deposition of Akshay Bhatnagar, July 10, 2025, pp. 51-52.
130  Britven Report, p. 37.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



61.     In his deposition, Mr. Bhatnagar did not testify that █████████████ ██████████████████████ listed by Mr. Britven in his report,[134] contrary to Mr. Britven's assertions.  Specifically with respect to ████████████████████████████, Mr. Bhatnagar testified that ███████████████████████████████ ███████████████████████████████████████████████ ██████5

████████████████████████████████
████████████████████████

---

131  Britven Report, p. 35.
132  Britven Report, p. 35, fn. 187.
133  30(b)(6) Deposition of Karthik Shivashankar, June 20, 2025, pp. 83, 114; Deposition of Ehab Youssef, June 26, 2025, pp. 62, 73.
134  Britven Report, p. 35.
135  Deposition of Akshay Bhatnagar, July 10, 2025, pp. 34-36, 42-44, 47-48, 62, 82 (emphasis added).

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



[…]

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.

v. ARM HOLDINGS PLC

62.    Further, Mr. Shivashankar testified that ███████████████████████
████████████[136]



---

[136] 30(b)(6) Deposition of Karthik Shivashankar, June 20, 2025, pp. 113-114 (emphasis added), *see also* pp. 85, 91, 94, 179-181.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

███████████████████████████████████████████████████████████

### c. Mr. Britven's claim that Qualcomm failed to provide "customer-provided information" despite Arm's requests is not supported

64.    In his report, Mr. Britven claims that Qualcomm "failed to provide" certain information to Arm in connection with ███████████████████████████████████, such as

████████████████████████████████████████████████████████████

65.    As a threshold matter, I am unaware of any evidence that Arm ever requested the ████████████████████████ that Mr. Britven claims that Qualcomm failed to provide, and Mr. Britven cites to none.[141] If anything, the communications between Arm and Qualcomm show Arm either delaying or ignoring ██████████████████████████████████████. Specifically, on April 3, 2024, Kurt Wolf, Director of Strategic Sourcing and Licensing at Qualcomm,[142] ██████████████████████████████ Email correspondence shows that Arm did not reply to Mr. Wolf's request for approximately one month, at which point

---

[137]  Britven Report, p. 35, fn. 187.
[138]  Britven Report, p. 31.
[139]  Britven Report, p. 69.
[140]  Britven Report, p. 32.
[141]  ███████████████████████████████████████████████████ See QCARM_0343533-587; ARMQC_02747848-867.
[142]  <https://www.linkedin.com/in/siliconip/>.
[143]  QCVARM_0616935.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

Kristin Webster, Senior Director of Sales at Arm,[144] replied that ███████████████████

████████████████████████████████████████████████████████████████[145]

66.    It is unclear if the meeting in May occurred between Qualcomm and Arm, since

email correspondence shows that Ms. Webster emailed Mr. Wolf on May 30, 2024 that she was

███████████████████████████████████[146]  An email dated June 19, 2024

from Mr. Wolf to Arm indicates that Qualcomm was still waiting on a reply on ███████████

Up through June 2024, email communications between Arm and Qualcomm indicate that Arm

██████████████████████████████████████████████████████████████████████

█████████████████████.

67.    As of late June or early July 2024, Will Abbey, Executive Vice President and Chief

Commercial Officer at Arm,[148] provided Qualcomm the ████████████████████████████

██████████████████████████████████████████████████████████████

████████."[149]  Email correspondence shows that Qualcomm noted ████████████████ as

part of its agenda during a meeting with Arm on August 22, 2024.[150]  On September 20, 2024,

Qualcomm provided written notice to Arm of its alleged breach of the Qualcomm TLA, including

in relation to Qualcomm's █████████████ ███████████████.[151]  In its letter, Qualcomm

stated that Arm continually ██████████████████████████████████████████████

████, even after Qualcomm had repeatedly followed up.[152]  Qualcomm provided a second written

---

144  ARMQC_02784199-203 at '202.
145  QCVARM_0604645-648 at '646.
146  QCVARM_0618338-340 at '339.
147  QCVARM_0618338-340 at '338.
148  Deposition of Will Abbey, June 26, 2025, p. 8.
149  QCVARM_0525344-353 at '350-351; *see also* ARMQC_02747993-998 at '993.
150  QCVARM_0616975-976 at '975.  Mr. Fonseca testified that Mr. Wolf made the request to extend the
     license for Yamin in Qualcomm's meeting with Arm on August 22, 2024.  *See* 30(b)(6) Deposition of
     Jeffrey Fonseca, July 9, 2025, pp. 106-107.
151  QCVARM_0616952-954 at '953.
152  QCVARM_0616952-954 at '953.

---

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**

notice to Arm on September 27, 2024.[153] Arm sent a response letter to Qualcomm on October

23, 2024, in which Arm did not assert that Qualcomm ████████████████████████████

████████████████████████████████████████████████████████████████

██████.[154] Qualcomm then received ██████████████████████ ████████████████

██████ from Arm on ██████████████.[155]

68.    Mr. Britven's assertion that Arm "was forced to make guesses" regarding

Qualcomm's use of ██████████████████ also ignores the fact that Qualcomm has been an

Arm licensee generally for ████████ and is an existing licensee for ████████████████

since 2019.[156]  To the extent Arm lacked specific information from Qualcomm, I am unaware of

anything that would have prevented Arm from ████████████████████████████████

████████████████████████████████████████████████████████████████

██████.[157,158]

██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████

**STOUT RISIUS ROSS, LLC**                                        41
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

**iii. Mr. Britven's opinions ignore the language of** ███████████ **of the Qualcomm TLA**



---

159  Britven Report, p. 39.



161  QCARM_0343533-587 at '545.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



---

162  Britven Report, p. 37.
163  Britven Report, pp. 35-37.
164  Britven Report, p. 38.  I note that Mr. Britven has performed no analysis to confirm Arm's contention; he merely restates Arm's allegation without providing any analysis or referencing evidence to support it.
165  Britven Report, p. 37.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████

**b. Mr. Britven's analysis of**  **" is inconsistent with the terms of the Qualcomm TLA**

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

166   Britven Report, p. 39.
167   Britven Report, pp. 35, 39-40, 79.



75.     Additionally, as discussed above, based on my review of testimony from Mr. Bhatnagar, Mr. Shivashankar, and Mr. Youssef, ██████████████████████████ ████████████████████████████████████████████████████ ██████████████ As discussed previously, Arm's deposition testimony indicates that Mr. Bhatnagar's ██████████████████████ ████████████████ ██████████████

---

168  QCARM_0343533-587 at '545.
169  Deposition of Ehab Youssef, June 26, 2025, pp. 66-68; *see also* Britven Report, p. 35.
170  Britven Report, pp. 36-37.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

██████████████████████████. ████████████████████████████████

████████████████████████████████████████████████, it is also

inconsistent with ████████████████████████████████████████

██████████████████.

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**v. ARM HOLDINGS PLC**



QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



---

180  Britven Report, p. 70.
181  Britven Report, p. 68.
182  Schedule 8.1.
183  QCVARM_0616967-969 at '968.

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**



---

[184]  Britven Report, p. 68.
[185]  Britven Report, p. 36.

---

**STOUT RISIUS ROSS, LLC**                                                    50
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



---

186   Britven Report, p. 36; *see also*, p. 68.
187   ARMQC_02774816-817 at '816.

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**



**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**



QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████

**v. Mr. Britven's criticisms of my analysis of** ██████████████████ **for** ████████████████ **contradict the record evidence**

123.     Mr. Britven claims that my analyses of ██████████ and prices previously paid by Qualcomm are "irrelevant distractions."[262] However, this assertion is contradicted by Arm testimony, documents, and Mr. Britven's own descriptions of Arm's determination ██████████ ██████████.

█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████

---

[260]   Britven Report, p. 69.
[261]   ARMQC_02774748-756 at '752; QCVARM_0616967-969 at '968.
[262]   Britven Report, pp. 73-74.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



---

263  Britven Report, p. 37.
264  Deposition of Akshay Bhatnagar, July 10, 2025, pp. 9, 11.
265  Deposition of Akshay Bhatnagar, July 10, 2025, p. 43.
266  Deposition of Akshay Bhatnagar, July 10, 2025, pp. 62-64.
267  Deposition of Akshay Bhatnagar, July 10, 2025, p. 64.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



**b.** ████████████████████████

127.   In addition to ████████ ███████████████████████, Arm ███████████████████████████████ ████████████████, ████ ██████████████████████████████████████████████ ██████████████████████████ █████████████████████████ ████████████████ ██████0 ████████████████████████████ ████ ███████████████████████████████ █████████████████████████████████ ████████████████

---

268  Exhibit 208 to the Deposition of Akshay Bhatnagar, p. 4.
269  Exhibit 208 to the Deposition of Akshay Bhatnagar, p. 4.
270  Exhibit 209 to the Deposition of Akshay Bhatnagar, July 10, 2025.
271  Deposition of Akshay Bhatnagar, July 10, 2025, pp. 55-56; Exhibit 209 to the Deposition of Akshay Bhatnagar, July 10, 2025.
272  Kennedy Opening Report, pp. 33-35.

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**



**B.  Reply to Mr. Britven's Criticisms of My Analysis Related to the Peripheral IP**



---

[278]  Britven Report, p. 74; ARM_00062474-493 at '487-488.

[279]  ARM_00062474-493 at '488; Kennedy Opening Report, p. 25.

[280]  <https://www.linkedin.com/in/dawn-hill-montemagni/>; 30(b)(6) Deposition of Jeffrey Fonseca, July 9, 2025, p. 81.

[281]  ARMQC_02747567-569 at '568.

[282]  Kennedy Opening Report, p. 26.

---

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



---

[283] Britven Report, pp. 85-86.
[284] Britven Report, pp. 86-87.
[285] *See* Section VI.A.iii.d.(ii)(c).



---

[286]  *See* QCARM_0339100-127; QCVARM_1016051-077; QCVARM_1023593-611; QCVARM_1020165-215; QCVARM_1022565-579; QCVARM_0524237-253.

[287]  I discuss the Qualcomm ALA in the Kennedy Opening Report.  *See* Kennedy Opening Report, pp. 9-10; QCARM_0337857-899.

[288]  Kennedy Opening Report, pp. 60-63.

[289]  Kennedy Opening Report, p. 62.

[290]  Kennedy Opening Report, p. 63.

[291]  ARMQC_02784204; *see also* Section VI.A.v.c. above.

[292]  Britven Report, pp. 84-85.

---



### iv. Mr. Britven's claims that I do not offer any analysis of what the "threshold price" of a "commercially reasonable offer" ignores my analysis of the but-for price for the Peripheral IP

137.    Mr. Britven claims that "the Kennedy Report does not offer an analysis of what the threshold price for a 'commercially reasonable' offer would be."[295]  This critique is inaccurate.  I present two alternative calculations of Qualcomm's but-for license fee, each of which provides a basis for determining a commercially reasonable threshold price.

138.    ███████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████ ████████████████████████████████████████████████████
██████████████████████████████████████████████████████.[297] For the reasons discussed in the Kennedy Opening Report, these two alternatives establish a reasonable range for what would constitute a commercially reasonable offer.[298]

---

293  Britven Report, p. 85.
294  ARMQC_02784204.
295  Britven Report, p. 86.
296  Kennedy Opening Report, p. 64.
297  Kennedy Opening Report, p. 67.
298  Kennedy Opening Report, Section V.E.vi.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

### v. Mr. Britven's assertions that the Qualcomm TLA ███████ ████████████████████████████████ are not informative

139.    Mr. Britven states throughout his rebuttal to my calculation of Qualcomm's damages related to the Peripheral IP that it is Arm's position that the terms of the Qualcomm TLA do not require Arm ██████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████       ████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████      █████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████

140.    Mr. Britven claims that "the Kennedy Report fails to show ██████████

███████████████████████████████████████████████

██████████████████████████████ – an assertion which ignores the precise analyses that I perform in the Kennedy Opening Report.[300]  In the Kennedy Opening Report, I provide ██████████████████████████████████████████████

██████████████ based on the available evidence – ██████████████████████████

████████████████████████████████████

---

299  Britven Report, pp. 81, 86.
300  Britven Report, p. 81.
301  Kennedy Opening Report, Section V.E.v.

141.    Mr. Britven claims that these analyses are not informative and unsupported.[302]

142.    Notably, I am unaware of any evidence, and Mr. Britven cites to none, that supports

the reasonableness of the ultimate price that Qualcomm paid for the Peripheral IP – a price that

[302]  Britven Report, pp. 84, 87.
[303]  Exhibit 209 to the Deposition of Akshay Bhatnagar, July 10, 2025.
[304]  Opening Kennedy Report, Section V.E.v; Deposition of Will Abbey, June 26, 2025, pp. 84-85; Exhibit 209 to the Deposition of Akshay Bhatnagar, July 10, 2025; ARMQC_02784120-198 at '149-150; Schedule 9.1.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
V. ARM HOLDINGS PLC

I declare under penalty of perjury that the foregoing is true and correct.

9 / 19 /25

Patrick F. Kennedy, Ph.D.

Executed on

Managing Director

Stout Risius Ross, LLC

# EXHIBIT A

**Patrick F. Kennedy, Ph.D.**
**Deposition and Trial Testimony**

| Date | Case Name | Venue | Testimony |
|------|-----------|-------|-----------|
| 09/17/25 | Dow Chemical Canada ULC  v. NOVA Chemicals Corporation | Court of King's Bench of Alberta | Deposition |
| 08/06/25 | Contour IP Holdings v. GoPro | CA Northern - Federal Court | Deposition |
| 07/08/25 | Carmack v. American Boat Works, Inc. and American Marine Corporation | HI Federal Court | Deposition |
| 06/18/25 | Chester v. The Belt Railway Company of Chicago | IL Federal Court | Deposition |
| 06/06/25 | Ikhana Group LLC v. Viking Air Limited | Arbitration | Trial |
| 05/15/25 | Quiroz v. Caltrans | Tulare Superior Court | Trial |
| 04/08/25 | Quiroz v. Caltrans | Tulare Superior Court | Deposition |
| 04/03/25 | Valeo Schalter und Sensoren GmbH v. Nvidia Corporation | CA Northern - Federal Court | Deposition |
| 04/01/25 | Blink Health Group, LLC  v. Susan Lang | American Arbitration Association | Deposition |
| 03/17/25 | Baker v. Secretary of Department of Health and Human Services | U.S. Court of Federal Claims | Hearing |
| 12/17/24 | Jubilant Draximage, Inc. v. Jubilant Radiopharmacies | CA Central - Federal Court | Deposition |
| 12/13/24 | Nasdaq, Inc. v. Miami International Holdings, Inc. | New Jersey - Federal Court | Deposition |
| 12/03/24 | Planner 5D v. Meta Platforms, Inc. | CA Northern - Federal Court | Deposition |
| 11/12/24 | Amyndas Pharmaceuticals, LLC v. Alexion Phrmaceuticals, Inc. | MA Federal Court | Deposition |
| 11/06/24 | Scientific Applications & Research Associates (SARA), Inc. v. Zipline International, Inc. | CA Northern - Federal Court | Deposition |
| 10/25/24 | Gardner Denver, Inc. v. Accurate Air Engineering, Inc. | CA Central - Federal Court | Deposition |
| 10/04/24 | Stiner, et al. v. Brookdale Senior Living Communities, Inc. | CA Northern - Federal Court | Deposition |
| 10/03/24 | Smartsky Networks, LLC  v. GOGO Business Aviation, LLC | Delaware - Federal Court | Deposition |
| 09/30/24 | Alorica, Inc. v. Fortinet, Inc. | Santa Clara Superior Court | Trial |
| 07/26/24 | Shadow Holdings, LLC v. John Paul Mitchell Systems | American Arbitration Association | Arbitration |
| 07/19/24 | Shadow Holdings, LLC v. John Paul Mitchell Systems | American Arbitration Association | Arbitration |
| 07/08/24 | ARM Ltd v. Qualcomm, Inc. | Delaware - Federal Court | Deposition |
| 06/25/24 | Shadow Holdings, LLC v. John Paul Mitchell Systems | American Arbitration Association | Deposition |
| 06/18/24 | Risk v. United Airlines, Inc. | Los Angeles Superior Court | Deposition |
| 04/17/24 | Heredia, et al. v. Sunrise Senior Living, LLC | CA Central - Federal Court | Declaration |
| 04/16/24 | Pliner v. Central Iowa Health System, et al. | IA Federal Court | Deposition |
| 04/12/24 | Rex Computing, Inc. v. Cerebras Systems, Inc. | Delaware - Federal Court | Deposition |
| 04/10/24 | Saint Paul Commodities, Inc. v. Oleo-X LLC | NY American Arbitration Association | Arbitration |
| 04/05/24 | NantWorks, LLC v. Bank of America Corporation | CA Central - Federal Court | Deposition |
| 03/01/24 | Palm Beach Tan, Inc. v. Sunless, Inc. | OH Northern - Federal Court | Deposition |
| 02/16/24 | Cocke  v. United States of America, et al. | GA Southern - Federal Court | Deposition |
| 01/19/24 | Saint Paul Commodities, Inc. v. Oleo-X LLC | NY American Arbitration Association | Deposition |
| 12/14/23 | Davis v. Secretary of Department of Health and Human Services | U.S. Court of Federal Claims | Hearing |
| 11/15/23 | Eilan v. Secretary of Department of Health and Human Services | U.S. Court of Federal Claims | Hearing |
| 10/19/23 | Stiner, et al. v. Brookdale Senior Living Communities, Inc. | CA Northern - Federal Court | Declaration |
| 10/16/23 | Jones v. Secretary of Department of Health and Human Services | U.S. Court of Federal Claims | Hearing |
| 09/12/23 | Pacific Steel Group v. Commerical Metals Company, et al. | CA Northern - Federal Court | Deposition |
| 09/07/23 | Bryan v. Secretary of Department of Health and Human Services | U.S. Court of Federal Claims | Hearing |
| 09/05/23 | Alorica, Inc. v. Fortinet, Inc. | Santa Clara Superior Court | Deposition |
| 08/31/23 | Alorica, Inc. v. Fortinet, Inc. | Santa Clara Superior Court | Deposition |
| 08/22/23 | Avila v. Joe Avis Farms | San Joaquin Superior Court | Trial |
| 06/26/23 | Bright v. Brookdale Senior Living Inc.; and Gunza v. Brookdale Senior Living Inc. | TN Middle - Federal Court | Deposition |
| 06/01/23 | Bright v. Brookdale Senior Living Inc.; and Gunza v. Brookdale Senior Living Inc. | TN Middle - Federal Court | Declaration |
| 05/17/23 | MicroVention, Inc. v. Balt USA, Inc. | CA Central - Federal Court | Deposition |
| 04/26/23 | Taction Technology, Inc. v. Apple Inc. | CA Southern - Federal Court | Deposition |
| 04/21/23 | Philips North America LLC, et al.  v. TEC Holdings, Inc. | NC Western - Federal Court | Trial |
| 04/14/23 | Philips North America LLC, et al.  v. TEC Holdings, Inc. | NC Western - Federal Court | Trial |
| 04/13/23 | PennyMac Loan Services, LLC v. Black Knight Servicing Technologies, LLC | American Arbitration Association | Arbitration |
| 03/09/23 | Raymond James Financial, Inc, et al. v. Deutsche Bank AG, et al. | FINRA Dispute Resolution | Arbitration |
| 03/02/23 | Wisk Aero LLC v. Archer Aviation, Inc. | CA Northern - Federal Court | Deposition |
| 02/22/23 | Raymond James Financial, Inc, et al. v. Deutsche Bank AG, et al. | FINRA Dispute Resolution | Deposition |
| 02/14/23 | Crysel v. American Equity | Orange County Superior Court | Trial |
| 01/19/23 | DexCom, Inc. v. Abbott Diabetes Care, Inc. | Delaware - Federal Court | Deposition |
| 12/29/22 | Crysel v. American Equity | Orange County Superior Court | Deposition |
| 12/27/22 | PennyMac Loan Services, LLC v. Black Knight Servicing Technologies, LLC | American Arbitration Association | Deposition |
| 10/19/22 | Avila v. Joe Avis Farms | San Joaquin Superior Court | Deposition |
| 09/22/22 | Alcon Vision, LLC v. Lens.com, Inc. | NY Eastern - Federal Court | Deposition |
| 08/17/22 | Vitalyte Sports Nutrition, Inc. v. Revitalyte, LLC | TX Western - Federal Court | Deposition |
| 08/11/22 | Sunstone Information Defense, Inc. v. International Business Machines Corporation | TX Western - Federal Court | Trial |
| 08/04/22 | Rodriguez, et al. v.  Sea Breeze Jet Ski, LLC | CA Northern - Federal Court | Deposition |
| 07/28/22 | Kurin, Inc. v. Magnolia Medical Technologies, Inc. | Delaware - Federal Court | Trial |
| 05/18/22 | Stiner, et al. v. Brookdale Senior Living Communities, Inc. | CA Northern - Federal Court | Declaration |
| 05/11/22 | CRF Frozen Foods v. Pictsweet, et al. | TN Middle - Federal Court | Deposition |
| 05/04/22 | Ayers v. The Penta Building Group | Riverside Cty Superior Court | Trial |
| 03/25/22 | The Waffle v. Tucker Investments | Los Angeles Superior Court | Trial |

**Patrick F. Kennedy, Ph.D.**
**Deposition and Trial Testimony**

| Date | Case Name | Venue | Testimony |
|---|---|---|---|
| 02/17/22 | Sunstone Information Defense, Inc.  v. International Business Machines Corporation | TX Western - Federal Court | Deposition |
| 01/27/22 | Chan v. Kimball, Tirey & St. John | San Diego Superior Court | Deposition |
| 01/17/22 | MedImpact Healthcare Systems, Inc. v. IQVIA, Inc. | CA Southern - Federal Court | Deposition |
| 01/14/22 | Nelson v. United States of America, et al. | OR - Federal Court | Trial |
| 01/05/22 | DeLeon-Piedra v. Ocean Angel V | CA Northern - Federal Court | Deposition |
| 12/14/21 | Stiner, et al. v. Brookdale Senior Living Communities, Inc. | CA Northern - Federal Court | Deposition |
| 12/01/21 | Contour IP Holdings v. GoPro | CA Northern - Federal Court | Deposition |
| 11/18/21 | Bellin Memorial Hospital v. Kinsey & Kinsey, Inc. | WI Federal Court | Trial |
| 11/15/21 | The Waffle v. Tucker Investments | Los Angeles Superior Court | Deposition |
| 10/21/21 | 7510 Hazard, LLC v. Connecticut General Life Insurance Company | San Diego Superior Court | Deposition |
| 10/18/21 | Philips North America LLC, et al. v Dorow | NC Federal Court | Deposition |
| 10/18/21 | Philips North America LLC, et al. v. Zimmerman, et al. | NC Federal Court | Deposition |
| 10/12/21 | MicroVention, Inc. v. Balt USA, Inc. | CA Central - Federal Court | Deposition |
| 10/08/21 | In re: PFA Insurance Marketing | CA Northern - Federal Court | Declaration |
| 09/28/21 | Cuker v. Pilsbury | CA Southern - Federal Court | Deposition |
| 09/23/21 | LISCR, LLC v. Legality Holdings, S.A. | VA Eastern - Federal Court | Deposition |
| 0917/21 | TRC Operating Company, Inc. v. Chevron U.S.A., Inc. | Kern Cty Superior Court | Trial |
| 09/08/21 | Philips North America LLC, et al.  v. TEC Holdings, Inc. | GA Northern - Federal Court | Deposition |
| 09/02/21 | 7510 Hazard, LLC v. Connecticut General Life Insurance Company | San Diego Superior Court | Deposition |

EXHIBIT B

**Qualcomm Incorporated and Qualcomm Technologies, Inc. v. Arm Holdings plc**     **Exhibit B**
**Documents Considered List**

This list supplements Exhibit C to the Kennedy Opening Report filed on August 8, 2025. In connection with my review and analysis, I have considered, reviewed, and relied upon materials summarized in this Exhibit, as well as those summarized on Exhibit C to the Kennedy Opening Report filed on August 8, 2025.

| Date | Description |
|---|---|
| *Legal* | |
| 08/01/25 | Plaintiffs' Motion for Leave to Amend the Complaint to Name Arm Holdings Plc. And Arm Ltd. as Individual Defendants |
| 09/05/25 | Arm's Second Supplemental Response to Qualcomm's Third Set of Interrogatories (No. 12) |
| 09/05/25 | Arm Holdings Plc's Second Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1–3) |
| 09/05/25 | Arm's Second Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4–11) |
| 09/05/25 | Arm's Third Supplemental Response to Qualcomm's Amended Interrogatory No. 3 |

*Other Expert Reports*

| | |
|---|---|
| 08/08/25 | Expert Report of Eric A. Posner |
| 09/05/25 | Rebuttal Expert Report of Timothy S. Simcoe |
| 09/05/25 | Expert Report of Thomas W. Britven |
| 09/05/25 | Rebuttal Expert Report of Michael C. Brogioli, Ph.D. |
| 09/05/25 | Rebuttal Report of Steven Richards, CPA |

*Produced Documents*

*If the bates number referenced below is the beginning of a document/production, the bates reference is to the entire document.*
*I had access to documents produced by Qualcomm, Arm, and other third parties.*

| | | | |
|---|---|---|---|
| ARM_00006123 | ARMQC_02785348 | ARMQC_02797454 | QCVARM_0600073 |
| ARM_00055357 | ARMQC_02785408 | ARMQC_02797485 | QCVARM_0604257 |
| ARM_00056571 | ARMQC_02785427 | ARMQC_02797527 | QCVARM_0604645 |
| ARM_00062441 | ARMQC_02785429 | ARMQC_02797547 | QCVARM_0605055 |
| ARM_00062474 | ARMQC_02785436 | ARMQC_02797549 | QCVARM_0608106 |
| ARM_00063298 | ARMQC_02785474 | ARMQC_02797552 | QCVARM_0608131 |
| ARM_00085567 | ARMQC_02785499 | ARMQC_02797555 | QCVARM_0613037 |
| ARM_00086164 | ARMQC_02785501 | ARMQC_02797562 | QCVARM_0616912 |
| ARM_00103918 | ARMQC_02785503 | ARMQC_02797601 | QCVARM_0616916 |
| ARM_00114880 | ARMQC_02785513 | ARMQC_02797603 | QCVARM_0616935 |
| ARM_01298891 | ARMQC_02785557 | ARMQC_02797610 | QCVARM_0616952 |
| ARM_01427776 | ARMQC_02785578 | ARMQC_02797625 | QCVARM_0616967 |
| ARMQC_02722953 | ARMQC_02785581 | ARMQC_02797669 | QCVARM_0616975 |
| ARMQC_02732016 | ARMQC_02785583 | ARMQC_02797689 | QCVARM_0617829 |
| ARMQC_02747567 | ARMQC_02788903 | ARMQC_02797692 | QCVARM_0618320 |
| ARMQC_02747848 | ARMQC_02788944 | ARMQC_02797699 | QCVARM_0618338 |
| ARMQC_02747993 | ARMQC_02788947 | ARMQC_02797740 | QCVARM_0618354 |
| ARMQC_02772025 | ARMQC_02788972 | ARMQC_02797760 | QCVARM_0710047 |
| ARMQC_02772026 | ARMQC_02788975 | ARMQC_02797763 | QCVARM_0711638 |
| ARMQC_02772366 | ARMQC_02788995 | ARMQC_02797765 | QCVARM_0714015 |
| ARMQC_02774738 | ARMQC_02788999 | ARMQC_02797767 | QCVARM_0846761 |
| ARMQC_02774748 | ARMQC_02789001 | ARMQC_02797775 | QCVARM_0855438 |
| ARMQC_02774757 | ARMQC_02789003 | ARMQC_02797778 | QCVARM_0855474 |
| ARMQC_02774767 | ARMQC_02789005 | ARMQC_02797943 | QCVARM_0855614 |
| ARMQC_02774814 | ARMQC_02789048 | ARMQC_02797972 | QCVARM_0856270 |
| ARMQC_02774816 | ARMQC_02789069 | ARMQC_02797976 | QCVARM_0863641 |
| ARMQC_02774818 | ARMQC_02789071 | ARMQC_02797983 | QCVARM_0863644 |
| ARMQC_02774844 | ARMQC_02789074 | ARMQC_02797985 | QCVARM_0864713 |
| ARMQC_02779269 | ARMQC_02789077 | ARMQC_02797987 | QCVARM_0864833 |
| ARMQC_02779314 | ARMQC_02789082 | ARMQC_02797997 | QCVARM_0864834 |
| ARMQC_02779364 | ARMQC_02789126 | ARMQC_02798033 | QCVARM_0864838 |
| ARMQC_02779391 | ARMQC_02789129 | ARMQC_02798035 | QCVARM_0864967 |
| ARMQC_02779412 | ARMQC_02789157 | ARMQC_02798040 | QCVARM_0864969 |
| ARMQC_02779433 | ARMQC_02789159 | QCARM_0027985 | QCVARM_0865022 |
| ARMQC_02779483 | ARMQC_02789161 | QCARM_0029357 | QCVARM_0865344 |
| ARMQC_02783512 | ARMQC_02789202 | QCARM_0217597 | QCVARM_0865345 |
| ARMQC_02783533 | ARMQC_02789224 | QCARM_0337591 | QCVARM_1016051 |
| ARMQC_02783575 | ARMQC_02789227 | QCARM_0337857 | QCVARM_1020165 |
| ARMQC_02783595 | ARMQC_02789237 | QCARM_0338180 | QCVARM_1022565 |
| ARMQC_02783597 | ARMQC_02789248 | QCARM_0338352 | QCVARM_1023587 |
| ARMQC_02783599 | ARMQC_02789251 | QCARM_0339100 | QCVARM_1023593 |
| ARMQC_02783601 | ARMQC_02789253 | QCARM_0343120 | QCVARM_1030726 |
| ARMQC_02783603 | ARMQC_02797236 | QCARM_0343533 | QCVARM_1030813 |
| ARMQC_02783615 | ARMQC_02797282 | QCARM_0343954 | QCVARM_1034899 |
| ARMQC_02783616 | ARMQC_02797298 | QCARM_3474751 | QCVARM_1068402 |
| ARMQC_02783617 | ARMQC_02797302 | QCARM_3480078 | QCVARM_1069705 |
| ARMQC_02783618 | ARMQC_02797306 | QCARM_3633088 | QCVARM_1120137 |
| ARMQC_02783619 | ARMQC_02797308 | QCVARM_0452199 | QCVARM_1120153 |
| ARMQC_02783731 | ARMQC_02797314 | QCVARM_0523650 | QCVARM_1120994 |
| ARMQC_02783848 | ARMQC_02797358 | QCVARM_0524237 | QCVARM_1121930 |
| ARMQC_02783967 | ARMQC_02797379 | QCVARM_0524362 | QCVARM_1121931 |
| ARMQC_02784120 | ARMQC_02797381 | QCVARM_0525196 | QCVARM_1122733 |
| ARMQC_02784199 | ARMQC_02797385 | QCVARM_0525344 | QCVARM_1151573 |
| ARMQC_02784204 | ARMQC_02797419 | QCVARM_0526828 | QCVARM_1151620 |
| ARMQC_02785291 | ARMQC_02797442 | QCVARM_0527544 | QCVARM_1151964 |
| ARMQC_02785326 | ARMQC_02797444 | QCVARM_0571705 | |
| ARMQC_02785342 | ARMQC_02797449 | QCVARM_0573056 | |
| ARMQC_02785344 | | QCVARM_0600042 | |

**Qualcomm Incorporated and Qualcomm Technologies, Inc. v. Arm Holdings plc**          **Exhibit B**
**Documents Considered List**

This list supplements Exhibit C to the Kennedy Opening Report filed on August 8, 2025. In connection with my review and analysis, I have considered, reviewed, and relied upon materials summarized in this Exhibit, as well as those summarized on Exhibit C to the Kennedy Opening Report filed on August 8, 2025.

| Date | Description |
|---|---|
| ***Research*** | |
| | Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025 |
| | Morningstar Equity Analyst Report: Qualcomm Inc, as of November 7, 2024 |
| | Qualcomm Incorporated Form 10-K for the fiscal year ended September 24, 2023 |
| | Qualcomm Incorporated Form 10-K for the fiscal year ended September 29, 2024 |
| | |
| | https://dart.deloitte.com/USDART/home/codification/revenue/asc606-10/roadmap-revenue-recognition/chapter-7-step-4-allocate-transaction/7-3-determine-stand-alone-selling |
| | https://investors.arm.com/static-files/c383780b-44f8-42c0-a125-4f6db0b8eb06 |
| | https://www.linkedin.com/in/dawn-hill-montemagni/ |
| | https://www.linkedin.com/in/siliconip/ |
| | https://www.qualcomm.com/snapdragon/device-finder/samsung-galaxy-s24 |
| | https://www.reuters.com/technology/artificial-intelligence/qualcomm-revamps-mobile-phone-chips-ai-signs-samsung-others-2024-10-21/ |

EXHIBIT C

EXHIBIT 32

**United States District Court**

**District of Delaware**

**Civil Action No. 1:24-cv-00490-MN**

**Qualcomm Incorporated and**

**Qualcomm Technologies, Inc.**

**v.**

**Arm Holdings plc**

**Reply Expert Report of Patrick F. Kennedy, Ph.D.**

**September 19, 2025**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.

v. ARM HOLDINGS PLC

## TABLE OF CONTENTS

I.    Introduction ........................................................................................ 1

II.   Materials Considered ......................................................................... 2

III.  Analysis of Newly Produced Arm Agreements ................................. 3

      ▌ ███████████████████████████████████████████

      ▌ ███████████████████████████████████████████

IV.   Summary of the Britven Report ....................................................... 13

      A.   ████████████████████████████████████ .... 14

           ████████████████████████████████████ .... 14

           ████████████████████████████████████ .... 17

           ████████████████████████████████████ .... 20

           iv.   Mr. Britven's Opinion that the Kennedy Opening Report Analysis of
                 Third-Party Agreements Is Incomplete ................................. 21

      B.   Mr. Britven's Analysis of Alleged Overpayment for At-Issue Peripheral IP .... 22

      C.   Mr. Britven's Analysis of Damages Due to Alleged Interference with ███ 24

V.    Summary of Relevant Opinions in the Simcoe Report ..................... 25

VI.   Reply Opinions Regarding the Britven Report ................................. 26

      A.   Reply to Mr. Britven's Analysis of the ████████████████████
           ████████████████ ................................................................ 26

           i.    ████████████████████████████████████████ . 26

           ii.   ████████████████████████████████████████ . 28

           iii.  Mr. Britven's opinions ignore the language of ████████ of the
                 Qualcomm TLA ...................................................................... 42

           iv.   Mr. Britven's opinions regarding "other third-party licenses" are
                 incomplete and inconsistent .................................................. 72

           v.    Mr. Britven's criticisms of my analysis of ████████████████
                 for ████████████████ contradict the record evidence ............. 74

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

B.   Reply to Mr. Britven's Criticisms of My Analysis Related to the Peripheral IP .................................................................................................. 78

    i.   ████████████████████████████████████████ 78

    ii.  ████████████████████████████████████████ 79

    iii. ███████████████████████████████████ ........... 80

    iv.  ██████████████████████████████████ ................ 81

    v.   Mr. Britven's assertions that the Qualcomm TLA does not preclude price increases or require consistent discounting are not informative ... 82

C.   Reply to Mr. Britven's Analysis of Damages Due to Alleged Interference with Qualcomm's Prospective Economic Advantage ..................................... 84

    i.   ████████████████████████████████ ............... 84

    ii.  Mr. Britven's claims related to "the extent to which the assumed future harm will actually occur" are contradicted by the record evidence ................................................................................................. 86

    iii. ████████████████████████████████ ............... 87

VII.  Reply Opinions Regarding the Simcoe Report ................................................. 88

VIII. Reservation of Rights ....................................................................................... 90

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**

## TABLE OF FIGURES



## I.     INTRODUCTION

1.      I have been retained by Counsel representing Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively referred to in this report as "Plaintiffs" or "Qualcomm") to evaluate damages related to certain claims asserted by Qualcomm against Arm Holdings plc ("Arm" or "Defendant")[1] related to the alleged wrongful conduct described in Qualcomm's Second Amended Complaint in this action.[2]

2.      On August 8, 2025, I issued an expert report in this matter (the "Kennedy Opening Report").  On September 5, 2025, Mr. Thomas W. Britven, Arm's damages expert, issued an expert report (the "Britven Report"), reflecting his opinions and responding to my opinions reflected in the Kennedy Opening Report.[3]  Also on September 5, 2025, Professor Timothy Simcoe issued an expert report (the "Simcoe Report"), reflecting his opinions and responding to the opinions of Professor Eric Posner, Qualcomm's retained expert on anticompetitive conduct and unfair competition.[4]  The Simcoe Report also responds to certain aspects of my analysis of Qualcomm's damages related ██████████████████████████████████.[5]  The purpose of this report is to address and respond to the opinions and analysis in the Britven Report, as well as certain opinions of the Simcoe Report.[6]  Additionally, since the issuance of the Kennedy

---

[1]   I am aware that there is a pending motion to amend Qualcomm's Second Amended Complaint to name both Arm Holdings plc and Arm Ltd. as Defendants.  Nothing in my analysis and quantification of certain categories of Qualcomm's claimed damages is dependent on which Arm corporate entity(ies) are named Defendant(s).  *See* Plaintiffs' Motion for Leave to Amend the Complaint to Name Arm Holdings Plc. And Arm Ltd. as Individual Defendants, August 1, 2025.

[2]   Second Amended Complaint, *Qualcomm Inc. and Qualcomm Technologies, Inc. v. Arm Holdings plc f/k/a Arm Ltd.*, Civil Action No. 1:24-cv-00490-MN, June 3, 2025 ("Second Amended Complaint"), pp. 1-6.

[3]   Expert Report of Thomas W. Britven, September 5, 2025, ("Britven Report").

[4]   Rebuttal Expert Report of Professor Timothy S. Simcoe, September 5, 2025 ("Simcoe Report").

[5]   Simcoe Report, p. 6.

[6]   I understand that other Arm experts also issued their respective reports on September 5, 2025, specifically Dr. Michael Brogioli and Mr. Steven Richards.  In their respective reports, Dr. Brogioli and

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

Opening Report, Arm has produced additional license agreements with third parties. With this newly produced information, I supplement my opinions in the Kennedy Opening Report related to Arm's third-party agreements in this report.[7]

3.      This report incorporates my previous disclosures concerning my professional background and experience, the materials subject to my review, and my expert opinions regarding economic damages associated with the claims asserted in this case. This report summarizes my current opinions given the information available to me at this time. I understand that Arm has not completed production of all documents relevant to my report including, specifically, its production of third-party license agreements. If I receive additional relevant information, I reserve the right to prepare a supplemental report incorporating this new information.

## II.    MATERIALS CONSIDERED

4.      In connection with my continuing review and analysis, I have considered, reviewed, and relied upon materials and information cited in the Kennedy Opening Report and Exhibit C thereto and the additional information and materials cited in this report and generally summarized at the attached **Exhibit B**.

---

Mr. Richards claim to respond to certain of my opinions in the Kennedy Opening Report. However, based on my review of their reports, they appear to be responding to factual summaries in the Kennedy Opening Report, as opposed to my expert opinions. Therefore, I do not explicitly reply to Dr. Brogioli's or Mr. Richards' report in this reply report.

[7]    As discussed below, Arm produced agreements related to an additional ▮ third parties over the last 15 days, with the latest agreements produced on the due date of this report. As such, I have not completed my analysis of all of these additional third-party agreements, and do not include analysis of certain of them in this report, and I specifically reserve the right to supplement my opinions with respect to all of Arm's third-party agreements.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

## III.  ANALYSIS OF NEWLY PRODUCED ARM AGREEMENTS

5.  Since the date of the Kennedy Opening Report, Arm has produced agreements related to an ███████████████ , as shown in the figure below.

**Figure 1:**  **Summary of Arm Third-Party Agreements[8]**



---

[8]  Schedule 6-Supplemental; ARMQC_02797236-281; ARMQC_02797282-297; ARMQC_02797298-301; ARMQC_02797302-305; ARMQC_02797306-307; ARMQC_02797308-313; ARMQC_02797314-357; ARMQC_02797358-378; ARMQC_02797379-380; ARMQC_02797381-384; ARMQC_02797385-418; ARMQC_02797419-441; ARMQC_02797442-443; ARMQC_02797444-445;

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

6.    As shown in the figure above, ██ of these additional third parties' agreements were produced on September 4, 2025 (the day before the issuance of Mr. Britven's report), ██ were produced on September 11, 2025 (eight days before the due date of this reply report), ██ were produced on September 15, 2025 (four days before the due date of this reply report), ██ were produced on September 16, 2025 (three days before the due date of this reply report), and ██ was produced on September 19, 2025 (the due date of this reply report).  Because it takes time for counsel to upload the production to the document review platform and render the documents in a format that I can review, I was not able to begin my review of each agreement until a day or two after the production.  I have preliminarily reviewed the agreements produced on September 4, 2025 and September 11, 2025 and incorporate my preliminary analysis of those agreements in this report.  I have not yet reviewed the agreements produced on September 15, 16, and 19, 2025, which total more than 800 pages.[9]  Given the extremely short window that Arm's production schedule has provided to review these agreements, I reserve the right and intend to supplement my analysis of Arm's third-party agreements produced after the date of the Kennedy Opening Report, including any agreements that have not yet been produced.

---

ARMQC_02797446-448; ARMQC_02797449-453; ARMQC_02797454-484; ARMQC_02797485-526; ARMQC_02797527-546; ARMQC_02797547-548; ARMQC_02797549-551; ARMQC_02797552-554; ARMQC_02797555-561; ARMQC_02797562-600; ARMQC_02797601-602; ARMQC_02797603-609; ARMQC_02797610-624; ARMQC_02797625-668; ARMQC_02797669-688; ARMQC_02797689-691; ARMQC_02797692-698; ARMQC_02797699-739; ARMQC_02797740-759; ARMQC_02797760-762; ARMQC_02797763-764; ARMQC_02797765-766; ARMQC_02797767-774; ARMQC_02797775-777; ARMQC_02797778-942; ARMQC_02797943-971; ARMQC_02797972-982; ARMQC_02797983-984; ARMQC_02797985-986; ARMQC_02797987-996; ARMQC_02797997-032; ARMQC_02798033-034; ARMQC_02798035-039; ARMQC_02798040-056; production dates per Counsel.

[9]

ARMQC_02797987-996 at '990.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

### A. Royalty Rates for ███████████████ in the Newly Produced Arm Agreements

7.    In the figure below, I indicate which of the relevant Arm Implementation Cores are licensed in each of Arm's third-party agreements that I have been able to preliminarily review.



---

10    Schedule 6-Supplemental.

11    ███████████████████████████████████. *See* ARMQC_02779412-432, ARMQC_02783512-532, ARMQC_02789005-047, ARMQC_02789048-068, ARMQC_02789069-070, ARMQC_02789071-073, ARMQC_02789074-076, and ARMQC_02789077-081. ███████████ ███████████████████████████████████ See ARMQC_02779269-313 at '269. I

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.

v. ARM HOLDINGS PLC



Opening Report. I supplement that analysis here with the additional licenses produced by Arm

on September 4, 2025 and September 11, 2025. I note that Arm has still not produced its

agreement with ▮▮▮▮, which Arm contends was used as the basis for ▮▮▮▮▮▮▮▮

▮▮▮▮ for ▮▮▮▮▮▮▮▮.[12] As noted in the Kennedy Opening Report, I do not

contend that this analysis represents a complete analysis of Arm's agreements with third parties

discussed herein. As described above, I reserve the right to, and intend to, supplement my report

after my complete review of Arm's third-party agreements produced after the date of the Kennedy

Opening Report, as well as if/when any additional agreements and/or supporting documentation

are produced and/or any Arm fact witness provides testimony after the date of this reply report

regarding any of these agreements.

       9.     In the figures below, I compare the ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮

▮▮▮▮▮▮ to the various agreements produced by Arm.

---

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See*
ARMQC_02789069-070, ARMQC_02789077-081, and ARMQC_02783619-730 at '623-'628.

[12] Arm's Second Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11), September 5, 2025, pp. 60-61.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



---

[13]   Schedule 6-Supplemental; QCVARM_0616967-969 at '968.  I note that royalty rate percentages for ████████████████████████

[14]   Schedule 6-Supplemental; QCVARM_0616967-969 at '968.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



---

[15]  Schedule 6-Supplemental; QCVARM_0616967-969 at '968.
[16]  Arm's Second Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11), September 5, 2025, pp. 60-61.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



## IV.    SUMMARY OF THE BRITVEN REPORT

18.    As discussed above, on September 5, 2025, Mr. Britven issued an expert report, rebutting the Kennedy Opening Report. In the following sections, I provide a summary of the sections of the Britven Report that are relevant to my reply opinions.

---

[43]    ARMQC_02783619-730 at '625-627. I do not have enough information to determine if/when ▆▆▆ shifted from being included in the Advanced package variant to the Regular package variant. Because ▆▆▆ was included in the Regular package variant as of ▆▆▆▆, I do not see an economic basis for the increase in the offered price for ▆▆ reflected in the ▆▆▆▆ given the maturity of this IP.

[44]    Kennedy Opening Report, p. 30.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

**A. Arm's** ████████████████████████████████████████████

   **i. Mr. Britven's Understanding of Arm's** ████████████████████
      █████



████████████."[45]  I note that Mr. Britven's understanding of Arm's █████ is based on an interrogatory response, deposition testimony, and interviews of the following Arm personnel:

- Akshay Bhatnagar, Senior Manager of North America Licensing[46]
- Jeffrey Fonseca, Director and Partner Manager, Sales[47]
- Karthik Shivashankar, Senior Director of Commercial Strategy and Licensing[48]
- Ehab Youssef, Vice President and Deputy General of Licensing, Legal Ops, and Trade Compliance[49]

20.    Outside of the deposition testimony and interrogatory response, the only documents cited in Mr. Britven's description of his understanding of Arm's ████████████ are Arm licenses with third parties, ████████████████████, and public websites about Qualcomm's and ████████ businesses.[50]  He does not identify any Arm ████████,

---

[45]   Britven Report, pp. 34-35.
[46]   Deposition of Akshay Bhatnagar, July 10, 2025, p. 8.
[47]   30(b)(6) Deposition of Jeffrey Fonseca, July 9, 2025, p. 11.
[48]   30(b)(6) Deposition of Karthik Shivashankar, June 20, 2025, p. 20.
[49]   Deposition of Ehab Youssef, June 26, 2025, p. 20.
[50]   Britven Report, pp. 34-38.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC





23.     As noted above, Mr. Britven's report does not reference any Arm documents,

."[55]

---

[51] Britven Report, pp. 34-35.
[52] Britven Report, p. 37.
[53] Britven Report, pp. 35, 37.
[54] Britven Report, p. 35.
[55] Britven Report, p. 35.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



---

56  Britven Report, p. 36.
57  Britven Report, p. 35-36.
58  Britven Report, pp. 36, 68.
59  Britven Report, p. 37.
60  Britven Report, p. 37.
61  Britven Report, p. 37.

---

STOUT RISIUS ROSS, LLC                                                16
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



### ii. Mr. Britven's Opinions Regarding ▮▮▮▮

27.    In light of his description of Arm's ▮▮▮▮



---

[62] Britven Report, p. 37, fn. 194.
[63] Britven Report, p. 37, fn. 194.
[64] Britven Report, pp. 29, 34-38.
[65] Britven Report, pp. 39-60.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



29.    Mr. Britven ultimately opines that ███████████████████████████

████████████████████████████████████████████████

████████████████  ████████████████████████."67



---

66    Britven Report, pp. 61-69.
67    Britven Report, p. 39.
68    Britven Report, p. 67.
69    Britven Report, p. 67.
70    Britven Report, pp. 67-68.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.



---

71   Britven Report, p. 68.
72   Britven Report, p. 68.
73   Britven Report, p. 69.
74   Britven Report, p. 69.
75   Britven Report, pp. 68-69.
76   Britven Report, p. 70 (emphasis in original).

---

STOUT RISIUS ROSS, LLC                                                                 19
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



### iii. Mr. Britven's Opinion that Certain Benchmarks Are Not Relevant Under



---

77   Britven Report, pp. 72-73.
78   Britven Report, p. 73.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



### iv. Mr. Britven's Opinion that the Kennedy Opening Report Analysis of Third-Party Agreements Is Incomplete

36.      Mr. Britven claims that the analysis of third-party agreements with respect to determining a ██████████████ in the Kennedy Opening Report is "incomplete" based on "Arm's

---

[79]   Britven Report, p. 73.
[80]   Britven Report, pp. 73-74.
[81]   Britven Report, pp. 74-75.
[82]   Britven Report, p. 75.
[83]   Britven Report, p. 76.

 ██████████████████████████████████"[84]    Mr. Britven claims that the

37.    Ultimately, Mr. Britven opines that "the Kennedy Report (while recognizing its own

analysis to be incomplete) fails to show that 

## B. Mr. Britven's Analysis of Alleged Overpayment for At-Issue Peripheral IP

38.    Mr. Britven opines that Arm's █████████████████████████ for the

Peripheral IP were commercially reasonable, and that Qualcomm did not incur any overpayment

---

[84]    Britven Report, pp. 79-80.

[85]    

Britven Report, pp. 39-40.

[86]    Britven Report, pp. 79-80 (emphasis omitted).

for Arm technology.[87]  Specifically, Mr. Britven claims that "the evidence indicates that Qualcomm itself did not object to Arm's offer and determined it could 'absorb' the price increase. The fact that Qualcomm now claims in hindsight several million dollars in damages for an offer that it accepted and paid undermines the notion that it was 'harmed' or suffered 'damages' as a result of Arm's offer."[88]  Mr. Britven opines that this evidence "indicates that the prices Qualcomm paid for the Peripheral IP at Issue were reasonable" and therefore, "[i]n the event the trier-of-fact agrees, damages under this cause of action are zero."[89]



---

[87]   Britven Report, pp. 87-88.
[88]   Britven Report, pp. 87-88.
[89]   Britven Report, p. 88.
[90]   Britven Report, pp. 84-85.
[91]   Britven Report, pp. 84-85.

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**v. ARM HOLDINGS PLC**





---

92   Britven Report, p. 85.
93   Britven Report, p. 85.
94   Britven Report, p. 85.
95   Britven Report, pp. 86-87.
96   Britven Report, pp. 86-87.
97   Britven Report, p. 99.

---

**STOUT RISIUS ROSS, LLC**                                          24
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



## V.     SUMMARY OF RELEVANT OPINIONS IN THE SIMCOE REPORT

44. ███████████████████████████████

███████████████     Mr. Simcoe opines that I provide no evidence that Qualcomm has suffered harm from Arm's alleged anticompetitive conduct.[103]  Specifically, Mr. Simcoe states "Dr. Kennedy merely compares the term sheets before and after the Breach Letter and, as he himself acknowledges, his analysis does not causally link the changes in the terms to Arm's allegedly

---

[98]   Britven Report, p. 96.
[99]   Britven Report, p. 99.
[100]  Britven Report, p. 96.
[101]  Britven Report, p. 96.
[102]  Britven Report, p. 99.
[103]  Simcoe Report, p. 13.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

anticompetitive conduct."[104]  Mr. Simcoe further notes that I did not "construct a but-for world or provide any evidence based on market prices or terms and conditions for an actual license."[105]

45.     Mr. Simcoe argues that "there is no real-world compelling evidence of harm to Qualcomm.  Qualcomm has continued to grow and experience strong financial performance since its acquisition of Nuvia in March 2021 and public awareness of the lawsuit in August 2022, and it forecasts strong financial performance going forward."[106]  Mr. Simcoe highlights Qualcomm's growth in revenue and operating profit from ████████ and Qualcomm's forecasted increases in revenue to support his claim that "Qualcomm's success in the marketplace undermines its claim that it was 'harmed' by Arm's communications with its customers."[107]

## VI.   REPLY OPINIONS REGARDING THE BRITVEN REPORT[108]

### A. Reply to Mr. Britven's Analysis of ████████████████████ ████ ██████

███ **Mr. Britven's opinions regarding** ████████████████ ████████████ **are irrelevant**

46.     In his report, Mr. Britven claims ████████████████████ ████████████████████████████████████ ████████████████████.[109]

However, such an analysis is irrelevant, as it is disconnected from Qualcomm's claims in this matter.  Qualcomm claims that Arm's ████████████ for ████████████ does

---

[104] Simcoe Report, pp. 48, 65.
[105] Simcoe Report, p. 49.
[106] Simcoe Report, p. 48.
[107] Simcoe Report, pp. 49-54.
[108] To the extent that I do not explicitly address or rebut a particular, assumption, analysis, or opinion in Mr. Britven's report, such omission should not be interpreted as agreement or acceptance of that point.
[109] Britven Report, p. 29.

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**v. ARM HOLDINGS PLC**

not meet specific contractual provisions regarding ████████, as outlined in ████████ of the Qualcomm TLA.[110]  As such, Mr. Britven's opinions about "██████████████" do not directly address Qualcomm's claims in this litigation related to ████████ the Qualcomm TLA.

47.    The issue is not whether Arm "██████████████," as suggested by Mr. Britven. ████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████  ████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████

---

[110]    Second Amended Complaint, pp. 37-38, 52-53, 62-63; QCARM_0343533-587 at '545-546.
[111]    Second Amended Complaint, pp. 37-38, 52-53, 62-63.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

### ii. **Mr. Britven's opinion that Arm** ███████████████████
███████████████████████████████████████

#### a. *Mr. Britven does not cite to any documents showing how Arm* ████████████████████████████████

48.     Throughout his report, Mr. Britven references ████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████ Despite his

references to this █████████████, Mr. Britven's report cites to no documents showing any

██████████████████████████████████ ███████████████
████████████  ██████████████████████████████████████

██████████████ ██████████████████. Instead, Mr. Britven simply cites to Arm's

interrogatory response and the depositions of and conversations with Mr. Bhatnagar, Mr.

Shivashankar, and Mr. Youssef.[113]

49.     Arm's interrogatory response does not cite any produced document showing the

██████████████████████████████████ ███████████████

████ ███████████████████████████████

---

[112]  Britven Report, p. 35.
[113]  Britven Report, pp. 37-38. *See also* Arm's Second Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11), September 5, 2025, pp. 60-61; Deposition of Ehab Youssef, June 26, 2025, pp. 68-71.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

███████████████████████████████████████████████████████

██████████

50.    Mr. Britven relied on Arm deposition testimony regarding ████████████

█████████████████████████████████████████████████████

██████████████████████████████████████. Specifically, Mr. Bhatnagar testified

that he █████████████████████████████████████████████████████

██████████, which Qualcomm's counsel has requested from Arm.[115]  I understand from

Qualcomm's counsel that as of the date of this report, Arm has not produced the requested

document. ███████████████████████████████████████████

███████████████████████████████████████. In contrast, Mr.

Britven suggests that Arm ██████████████████████████ that is not evident in any

documentation.  Therefore, as a threshold matter, Mr. Britven opines on the ██████████

████████████████████████████████████.  His characterization of Arm's ████████

remains undocumented, unsupported, and in contradiction with Arm deposition testimony.

**b.  Deposition testimony and Arm's interrogatory response contradict Mr. Britven's description of █████████████████████ ████████**

51.    Mr. Britven's description of the purported █████████████████████

██████████████████████  ████████████████████  ████████████████████

██████████████ is based primarily on an interview or interviews Mr. Britven had with Mr. Bhatnagar,

Mr. Shivashankar, and Mr. Youssef.[116]  I understand that each of these individuals were also

deposed in this matter, and asked questions regarding Arm's ██████████████████████

---

[114]  Arm's Second Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11), September 5, 2025, pp. 60-61.
[115]  Deposition of Akshay Bhatnagar, July 10, 2025, p. 45.
[116]  Britven Report, pp. 34-38.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

███████████████████████████.[117] Certain parts of Mr. Britven's description

of ████████████████ are inconsistent with this deposition testimony, particularly (1) Mr.

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

    (i)  *Mr. Britven's list of* ████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

53.    Specifically, as support for this ████████████ Mr. Britven cites to an interview

with Mr. Bhatnagar, Mr. Shivashankar, and Mr. Youssef, and parts of Mr. Bhatnagar's

testimony.[119] However, the portions of Mr. Bhatnagar's testimony that Mr. Britven cites do not

mention the ████████ that Mr. Britven lists.[120] In other portions of Mr. Bhatnagar's testimony, Mr.

Bhatnagar was asked for ████████████████████████████████████████

---

[117] Deposition of Akshay Bhatnagar, July 10, 2025; 30(b)(6) Deposition of Karthik Shivashankar, June 20, 2025; Deposition of Ehab Youssef, June 26, 2025.
[118] Britven Report, pp. 34-35.
[119] Britven Report, pp. 34-35.
[120] Britven Report, pp. 34-35; Deposition of Akshay Bhatnagar, July 10, 2025, pp. 42-43.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

████████████████████████████████████████████, and Mr. Bhatnagar

testified that ██████████████████████████████████████████████████████.

████████:[121]



54.    Further, Mr. Bhatnagar testified that ████████████████████████

██████████████████████████████████████:[122]

---

[121] Deposition of Akshay Bhatnagar, July 10, 2025, pp. 36-38.
[122] Deposition of Akshay Bhatnagar, July 10, 2025, pp. 41-42.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.

v. ARM HOLDINGS PLC



55.    Mr. Shivashankar also testified that ███████████████████ ████████████████████████, other than ████████:[123]

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

---

[123]  30(b)(6) Deposition of Karthik Shivashankar, June 20, 2025, pp. 86, 89-90.



*(ii) Mr. Britven's claim that the* ███████████████████ *in addition to* ███████████████

57.    Mr. Britven states in his report that ███████████████████ ████████████████████████         ██████████████████████ as ███████████████████.[124]    This claim, however, contradicts Arm's interrogatory response and the deposition testimony of Arm personnel.  In its interrogatory response, Arm identifies ███████ as the only third-party agreement upon which ████████████ ██████ stating that "████████████████████████████████████ ███████████████████████████████████████████████████ █████████████████████████████████████ ████ ████ ████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
███████████████████████

_____

[124]  Britven Report, p. 37.
[125]  Arm's Second Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11), September 5, 2025, p. 61.
[126]  30(b)(6) Deposition of Karthik Shivashankar, June 20, 2025, pp. 97-98.



58.     Mr. Youssef testified that ████████████████████████████████████████ ████████ Mr. Fonseca also testified that ████████████████████████████████ ████████████████████████████████████████.[128]  I note that Mr. Bhatnagar testified that ████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████.[129]

59.     Mr. Britven's claim that ████████████████████████████████████████ ████████████████████████████████████████████████"[130] is contradicted by the testimony discussed above, which indicates that it was based only on ████████████████████████

---

127   Deposition of Ehab Youssef, June 26, 2025, pp. 68-72.
128   30(b)(6) Deposition of Jeffrey Fonseca, July 9, 2025, p. 23.
129   Deposition of Akshay Bhatnagar, July 10, 2025, pp. 51-52.
130   Britven Report, p. 37.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.

v. ARM HOLDINGS PLC



61.    In his deposition, Mr. Bhatnagar did not testify that ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ listed by Mr. Britven in his report,[134] contrary to Mr. Britven's assertions.  Specifically with respect to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Mr. Bhatnagar testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮[135]

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

131 Britven Report, p. 35.
132 Britven Report, p. 35, fn. 187.
133 30(b)(6) Deposition of Karthik Shivashankar, June 20, 2025, pp. 83, 114; Deposition of Ehab Youssef, June 26, 2025, pp. 62, 73.
134 Britven Report, p. 35.
135 Deposition of Akshay Bhatnagar, July 10, 2025, pp. 34-36, 42-44, 47-48, 62, 82 (emphasis added).

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



[…]

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

62.    Further, Mr. Shivashankar testified that ███████████████████

████████████ [136]



_____

[136] 30(b)(6) Deposition of Karthik Shivashankar, June 20, 2025, pp. 113-114 (emphasis added), *see also* pp. 85, 91, 94, 179-181.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.

v. ARM HOLDINGS PLC

████████████████████████████████████████████████████████████████

### c. *Mr. Britven's claim that Qualcomm failed to provide "customer-provided information" despite Arm's requests is not supported*

64.    In his report, Mr. Britven claims that Qualcomm "failed to provide" certain information to Arm in connection with ████████████████████████████████████, such as

████████████████████████████████████████████████████████████████

65.    As a threshold matter, I am unaware of any evidence that Arm ever requested the ████████████████████████ that Mr. Britven claims that Qualcomm failed to provide, and Mr. Britven cites to none.[141] If anything, the communications between Arm and Qualcomm show Arm either delaying or ignoring ████████████████████████████████████. Specifically, on April 3, 2024, Kurt Wolf, Director of Strategic Sourcing and Licensing at Qualcomm,[142] ████████████████████████████████████ Email correspondence shows that Arm did not reply to Mr. Wolf's request for approximately one month, at which point

---

[137]  Britven Report, p. 35, fn. 187.
[138]  Britven Report, p. 31.
[139]  Britven Report, p. 69.
[140]  Britven Report, p. 32.
[141]  ████████████████████████████████████████████████ *See* QCARM_0343533-587; ARMQC_02747848-867.
[142]  <https://www.linkedin.com/in/siliconip/>.
[143]  QCVARM_0616935.

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**

Kristin Webster, Senior Director of Sales at Arm,[144] replied that ████████████████

█████████████████████████████████████████████████████████[145]

66.    It is unclear if the meeting in May occurred between Qualcomm and Arm, since email correspondence shows that Ms. Webster emailed Mr. Wolf on May 30, 2024 that she was █████████████████████████████[146] An email dated June 19, 2024 from Mr. Wolf to Arm indicates that Qualcomm was still waiting on a reply on ████████████ Up through June 2024, email communications between Arm and Qualcomm indicate that Arm ██████████████████████████████████████████████████████ ████████████████████.

67.    As of late June or early July 2024, Will Abbey, Executive Vice President and Chief Commercial Officer at Arm,[148] provided Qualcomm the ██████████████████████ ██████████████████████████████████████████████████ ████████."[149] Email correspondence shows that Qualcomm noted ██████████████ as part of its agenda during a meeting with Arm on August 22, 2024.[150] On September 20, 2024, Qualcomm provided written notice to Arm of its alleged breach of the Qualcomm TLA, including in relation to Qualcomm's ████████ ████████████████.[151] In its letter, Qualcomm stated that Arm continually ████████████████████████████████████████ ████, even after Qualcomm had repeatedly followed up.[152] Qualcomm provided a second written

---

[144] ARMQC_02784199-203 at '202.
[145] QCVARM_0604645-648 at '646.
[146] QCVARM_0618338-340 at '339.
[147] QCVARM_0618338-340 at '338.
[148] Deposition of Will Abbey, June 26, 2025, p. 8.
[149] QCVARM_0525344-353 at '350-351; *see also* ARMQC_02747993-998 at '993.
[150] QCVARM_0616975-976 at '975.  Mr. Fonseca testified that Mr. Wolf made the request to extend the license for Yamin in Qualcomm's meeting with Arm on August 22, 2024.  *See* 30(b)(6) Deposition of Jeffrey Fonseca, July 9, 2025, pp. 106-107.
[151] QCVARM_0616952-954 at '953.
[152] QCVARM_0616952-954 at '953.

---

**STOUT RISIUS ROSS, LLC**                                                    40
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

notice to Arm on September 27, 2024.[153]  Arm sent a response letter to Qualcomm on October 23, 2024, in which Arm did not assert that Qualcomm ██████████████████████████████ ██████████████████████████████████████████████████████████ ████████.[154]  Qualcomm then received ██████████████████ ████████████████ █████ from Arm on ████████████████.[155]

68.    Mr. Britven's assertion that Arm "was forced to make guesses" regarding Qualcomm's use of ████████████████ also ignores the fact that Qualcomm has been an Arm licensee generally for ██████ and is an existing licensee for ████████████████ since 2019.[156]  To the extent Arm lacked specific information from Qualcomm, I am unaware of anything that would have prevented Arm from ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████.[157,158]

---

[153] QCVARM_0616952-954 at '952.
[154] QCVARM_1030813-814.
[155] QCVARM_0616967-969; QCVARM_1023587-588 at '588.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.

v. ARM HOLDINGS PLC

### iii. Mr. Britven's opinions ignore the language of ▮▮▮▮▮▮▮ of the Qualcomm TLA



---

[159] Britven Report, p. 39.



[161] QCARM_0343533-587 at '545.

---



---

[162] Britven Report, p. 37.
[163] Britven Report, pp. 35-37.
[164] Britven Report, p. 38.  I note that Mr. Britven has performed no analysis to confirm Arm's contention; he merely restates Arm's allegation without providing any analysis or referencing evidence to support it.
[165] Britven Report, p. 37.

---



**b. Mr. Britven's analysis of** ████████████████ **" is inconsistent with the terms of the Qualcomm TLA**

████████████████████████████████████████████████

---

166  Britven Report, p. 39.
167  Britven Report, pp. 35, 39-40, 79.

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**



75.     Additionally, as discussed above, based on my review of testimony from Mr. Bhatnagar, Mr. Shivashankar, and Mr. Youssef, ███████████████████████████

████████████████████████████████████████████████ ██████

██████████████     As discussed previously, Arm's deposition testimony indicates that Mr.

Bhatnagar's ████████████████████ ████████████ █████████████

---

[168] QCARM_0343533-587 at '545.
[169] Deposition of Ehab Youssef, June 26, 2025, pp. 66-68; *see also* Britven Report, p. 35.
[170] Britven Report, pp. 36-37.

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**

██████████████████████████. ████████████████████████████
███████████████████████████████████████████████████, it is also
inconsistent with ██████████████████████████████████████████████
██████████████████████.

██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**



**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**





---

180  Britven Report, p. 70.
181  Britven Report, p. 68.
182  Schedule 8.1.
183  QCVARM_0616967-969 at '968. ███████████████████████████

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**v. ARM HOLDINGS PLC**



---

[184]  Britven Report, p. 68.
[185]  Britven Report, p. 36.

---

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



---

186  Britven Report, p. 36; *see also*, p. 68.
187  ARMQC_02774816-817 at '816.

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**



**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**



QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

███████████████████████████████████████████████████████

**v. Mr. Britven's criticisms of my analysis of** ████████████████ **for** ████████████████ **contradict the record evidence**

123.     Mr. Britven claims that my analyses of ████████████ and prices previously paid by Qualcomm are "irrelevant distractions."[262] However, this assertion is contradicted by Arm testimony, documents, and Mr. Britven's own descriptions of Arm's determination ████████████ ██████████ .

███████████████████████████████████████████████████████

---

[260]  Britven Report, p. 69.
[261]  ARMQC_02774748-756 at '752; QCVARM_0616967-969 at '968.
[262]  Britven Report, pp. 73-74.

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC**



---

263  Britven Report, p. 37.
264  Deposition of Akshay Bhatnagar, July 10, 2025, pp. 9, 11.
265  Deposition of Akshay Bhatnagar, July 10, 2025, p. 43.
266  Deposition of Akshay Bhatnagar, July 10, 2025, pp. 62-64.
267  Deposition of Akshay Bhatnagar, July 10, 2025, p. 64.

---



**b.** ████████████████

127.  In addition to ██████ ████████████████████, Arm ████████████████████████ ██████████, ████
████████████████████████████████████
████████████████████████████ ██████████
████████████████████████████████████
███0 ████████████████████████████
████ ██████████████████████████████
████████████████████████████████
██████████████



268  Exhibit 208 to the Deposition of Akshay Bhatnagar, p. 4.
269  Exhibit 208 to the Deposition of Akshay Bhatnagar, p. 4.
270  Exhibit 209 to the Deposition of Akshay Bhatnagar, July 10, 2025.
271  Deposition of Akshay Bhatnagar, July 10, 2025, pp. 55-56; Exhibit 209 to the Deposition of Akshay Bhatnagar, July 10, 2025.
272  Kennedy Opening Report, pp. 33-35.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

### B. Reply to Mr. Britven's Criticisms of My Analysis Related to the Peripheral IP



---

278 Britven Report, p. 74; ARM_00062474-493 at '487-488.
279 ARM_00062474-493 at '488; Kennedy Opening Report, p. 25.
280 <https://www.linkedin.com/in/dawn-hill-montemagni/>; 30(b)(6) Deposition of Jeffrey Fonseca, July 9, 2025, p. 81.
281 ARMQC_02747567-569 at '568.
282 Kennedy Opening Report, p. 26.

---

STOUT RISIUS ROSS, LLC

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC



---

283  Britven Report, pp. 85-86.
284  Britven Report, pp. 86-87.
285  *See* Section VI.A.iii.d.(ii)(c).



---

286  *See* QCARM_0339100-127; QCVARM_1016051-077; QCVARM_1023593-611; QCVARM_1020165-215; QCVARM_1022565-579; QCVARM_0524237-253.

287  I discuss the Qualcomm ALA in the Kennedy Opening Report.  *See* Kennedy Opening Report, pp. 9-10; QCARM_0337857-899.

288  Kennedy Opening Report, pp. 60-63.

289  Kennedy Opening Report, p. 62.

290  Kennedy Opening Report, p. 63.

291  ARMQC_02784204; *see also* Section VI.A.v.c. above.

292  Britven Report, pp. 84-85.

---



### iv. Mr. Britven's claims that I do not offer any analysis of what the "threshold price" of a "commercially reasonable offer" ignores my analysis of the but-for price for the Peripheral IP

137.     Mr. Britven claims that "the Kennedy Report does not offer an analysis of what the threshold price for a 'commercially reasonable' offer would be."[295]  This critique is inaccurate.  I present two alternative calculations of Qualcomm's but-for license fee, each of which provides a basis for determining a commercially reasonable threshold price.

138.     ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███  █████████████████████████████████████████████████████████

████████████████████████████████████████████████████.[297]  For the reasons discussed in the Kennedy Opening Report, these two alternatives establish a reasonable range for what would constitute a commercially reasonable offer.[298]

---

[293]  Britven Report, p. 85.
[294]  ARMQC_02784204.
[295]  Britven Report, p. 86.
[296]  Kennedy Opening Report, p. 64.
[297]  Kennedy Opening Report, p. 67.
[298]  Kennedy Opening Report, Section V.E.vi.

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
v. ARM HOLDINGS PLC

### v. Mr. Britven's assertions that the Qualcomm TLA ███████████ ███████████████████████████████████ are not informative

139.    Mr. Britven states throughout his rebuttal to my calculation of Qualcomm's damages related to the Peripheral IP that it is Arm's position that the terms of the Qualcomm TLA do not require Arm ████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████ ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████

140.    Mr. Britven claims that "the Kennedy Report fails to show ██████████

████████████████████████████████████████████████

████████████████████████████ – an assertion which ignores the precise analyses that I perform in the Kennedy Opening Report.[300]  In the Kennedy Opening Report, I provide ██████████████████████████████████████████████

██████████████ based on the available evidence – ████████████████████████

████████████████████████████████████████

---

299   Britven Report, pp. 81, 86.
300   Britven Report, p. 81.
301   Kennedy Opening Report, Section V.E.v.

**QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.**
**V. ARM HOLDINGS PLC**

141.    Mr. Britven claims that these analyses are not informative and unsupported.[302]

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████ ████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████

142.    Notably, I am unaware of any evidence, and Mr. Britven cites to none, that supports

the reasonableness of the ultimate price that Qualcomm paid for the Peripheral IP – a price that

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████

---

302  Britven Report, pp. 84, 87.
303  Exhibit 209 to the Deposition of Akshay Bhatnagar, July 10, 2025.
304  Opening Kennedy Report, Section V.E.v; Deposition of Will Abbey, June 26, 2025, pp. 84-85; Exhibit 209 to the Deposition of Akshay Bhatnagar, July 10, 2025; ARMQC_02784120-198 at '149-150; Schedule 9.1.

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.
V. ARM HOLDINGS PLC

I declare under penalty of perjury that the foregoing is true and correct.

9 / 19 / 25

Patrick F. Kennedy, Ph.D.

Executed on

Managing Director

Stout Risius Ross, LLC

# EXHIBIT A

**Patrick F. Kennedy, Ph.D.**
**Deposition and Trial Testimony**

| Date | Case Name | Venue | Testimony |
|------|-----------|-------|-----------|
| 09/17/25 | Dow Chemical Canada ULC  v. NOVA Chemicals Corporation | Court of King's Bench of Alberta | Deposition |
| 08/06/25 | Contour IP Holdings v. GoPro | CA Northern - Federal Court | Deposition |
| 07/08/25 | Carmack v. American Boat Works, Inc. and American Marine Corporation | HI Federal Court | Deposition |
| 06/18/25 | Chester v. The Belt Railway Company of Chicago | IL Federal Court | Deposition |
| 06/06/25 | Ikhana Group LLC v. Viking Air Limited | Arbitration | Trial |
| 05/15/25 | Quiroz v. Caltrans | Tulare Superior Court | Trial |
| 04/08/25 | Quiroz v. Caltrans | Tulare Superior Court | Deposition |
| 04/03/25 | Valeo Schalter und Sensoren GmbH v. Nvidia Corporation | CA Northern - Federal Court | Deposition |
| 04/01/25 | Blink Health Group, LLC  v. Susan Lang | American Arbitration Association | Deposition |
| 03/17/25 | Baker v. Secretary of Department of Health and Human Services | U.S. Court of Federal Claims | Hearing |
| 12/17/24 | Jubilant Draximage, Inc. v. Jubilant Radiopharmacies | CA Central - Federal Court | Deposition |
| 12/13/24 | Nasdaq, Inc. v. Miami International Holdings, Inc. | New Jersey - Federal Court | Deposition |
| 12/03/24 | Planner 5D v. Meta Platforms, Inc. | CA Northern - Federal Court | Deposition |
| 11/12/24 | Amyndas Pharmaceuticals, LLC v. Alexion Phrmaceuticals, Inc. | MA Federal Court | Deposition |
| 11/06/24 | Scientific Applications & Research Associates (SARA), Inc. v. Zipline International, Inc. | CA Northern - Federal Court | Deposition |
| 10/25/24 | Gardner Denver, Inc. v. Accurate Air Engineering, Inc. | CA Central - Federal Court | Deposition |
| 10/04/24 | Stiner, et al. v. Brookdale Senior Living Communities, Inc. | CA Northern - Federal Court | Deposition |
| 10/03/24 | Smartsky Networks, LLC  v. GOGO Business Aviation, LLC | Delaware - Federal Court | Deposition |
| 09/30/24 | Alorica, Inc. v. Fortinet, Inc. | Santa Clara Superior Court | Trial |
| 07/26/24 | Shadow Holdings, LLC v. John Paul Mitchell Systems | American Arbitration Association | Arbitration |
| 07/19/24 | Shadow Holdings, LLC v. John Paul Mitchell Systems | American Arbitration Association | Arbitration |
| 07/08/24 | ARM Ltd v. Qualcomm, Inc. | Delaware - Federal Court | Deposition |
| 06/25/24 | Shadow Holdings, LLC v. John Paul Mitchell Systems | American Arbitration Association | Deposition |
| 06/18/24 | Risk v. United Airlines, Inc. | Los Angeles Superior Court | Deposition |
| 04/17/24 | Heredia, et al. v. Sunrise Senior Living, LLC | CA Central - Federal Court | Declaration |
| 04/16/24 | Pliner v. Central Iowa Health System, et al. | IA Federal Court | Deposition |
| 04/12/24 | Rex Computing, Inc. v. Cerebras Systems, Inc. | Delaware - Federal Court | Deposition |
| 04/10/24 | Saint Paul Commodities, Inc. v. Oleo-X LLC | NY American Arbitration Association | Arbitration |
| 04/05/24 | NantWorks, LLC v. Bank of America Corporation | CA Central - Federal Court | Deposition |
| 03/01/24 | Palm Beach Tan, Inc. v. Sunless, Inc. | OH Northern - Federal Court | Deposition |
| 02/16/24 | Cocke  v. United States of America, et al. | GA Southern - Federal Court | Deposition |
| 01/19/24 | Saint Paul Commodities, Inc. v. Oleo-X LLC | NY American Arbitration Association | Deposition |
| 12/14/23 | Davis v. Secretary of Department of Health and Human Services | U.S. Court of Federal Claims | Hearing |
| 11/15/23 | Eilan v. Secretary of Department of Health and Human Services | U.S. Court of Federal Claims | Hearing |
| 10/19/23 | Stiner, et al. v. Brookdale Senior Living Communities, Inc. | CA Northern - Federal Court | Declaration |
| 10/16/23 | Jones v. Secretary of Department of Health and Human Services | U.S. Court of Federal Claims | Hearing |
| 09/12/23 | Pacific Steel Group v. Commerical Metals Company, et al. | CA Northern - Federal Court | Deposition |
| 09/07/23 | Bryan v. Secretary of Department of Health and Human Services | U.S. Court of Federal Claims | Hearing |
| 09/05/23 | Alorica, Inc. v. Fortinet, Inc. | Santa Clara Superior Court | Deposition |
| 08/31/23 | Alorica, Inc. v. Fortinet, Inc. | Santa Clara Superior Court | Deposition |
| 08/22/23 | Avila v. Joe Avis Farms | San Joaquin Superior Court | Trial |
| 06/26/23 | Bright v. Brookdale Senior Living Inc.; and Gunza v. Brookdale Senior Living Inc. | TN Middle - Federal Court | Deposition |
| 06/01/23 | Bright v. Brookdale Senior Living Inc.; and Gunza v. Brookdale Senior Living Inc. | TN Middle - Federal Court | Declaration |
| 05/17/23 | MicroVention, Inc. v. Balt USA, Inc. | CA Central - Federal Court | Deposition |
| 04/26/23 | Taction Technology, Inc. v. Apple Inc. | CA Southern - Federal Court | Deposition |
| 04/21/23 | Philips North America LLC, et al.  v. TEC Holdings, Inc. | NC Western - Federal Court | Trial |
| 04/14/23 | Philips North America LLC, et al.  v. TEC Holdings, Inc. | NC Western - Federal Court | Trial |
| 04/13/23 | PennyMac Loan Services, LLC v. Black Knight Servicing Technologies, LLC | American Arbitration Association | Arbitration |
| 03/09/23 | Raymond James Financial, Inc, et al  v. Deutsche Bank AG, et al. | FINRA Dispute Resolution | Arbitration |
| 03/02/23 | Wisk Aero LLC v. Archer Aviation, Inc. | CA Northern - Federal Court | Deposition |
| 02/22/23 | Raymond James Financial, Inc, et al  v. Deutsche Bank AG, et al. | FINRA Dispute Resolution | Deposition |
| 02/14/23 | Crysel v. American Equity | Orange County Superior Court | Trial |
| 01/19/23 | DexCom, Inc. v. Abbott Diabetes Care, Inc. | Delaware - Federal Court | Deposition |
| 12/29/22 | Crysel v. American Equity | Orange County Superior Court | Deposition |
| 12/27/22 | PennyMac Loan Services, LLC v. Black Knight Servicing Technologies, LLC | American Arbitration Association | Deposition |
| 10/19/22 | Avila v. Joe Avis Farms | San Joaquin Superior Court | Deposition |
| 09/22/22 | Alcon Vision, LLC v. Lens.com, Inc. | NY Eastern - Federal Court | Deposition |
| 08/17/22 | Vitalyte Sports Nutrition, Inc. v. Revitalyte, LLC | TX Western - Federal Court | Deposition |
| 08/11/22 | Sunstone Information Defense, Inc.  v. International Business Machines Corporation | TX Western - Federal Court | Trial |
| 08/04/22 | Rodriguez, et al. v.  Sea Breeze Jet Ski, LLC | CA Northern - Federal Court | Deposition |
| 07/28/22 | Kurin, Inc. v. Magnolia Medical Technologies, Inc. | Delaware - Federal Court | Trial |
| 05/18/22 | Stiner, et al. v. Brookdale Senior Living Communities, Inc. | CA Northern - Federal Court | Declaration |
| 05/11/22 | CRF Frozen Foods v. Pictsweet, et al. | TN Middle - Federal Court | Deposition |
| 05/04/22 | Ayers v. The Penta Building Group | Riverside Cty Superior Court | Trial |
| 03/25/22 | The Waffle v. Tucker Investments | Los Angeles Superior Court | Trial |

**Patrick F. Kennedy, Ph.D.**
**Deposition and Trial Testimony**

| Date | Case Name | Venue | Testimony |
|------|-----------|-------|-----------|
| 02/17/22 | Sunstone Information Defense, Inc.  v. International Business Machines Corporation | TX Western - Federal Court | Deposition |
| 01/27/22 | Chan v. Kimball, Tirey & St. John | San Diego Superior Court | Deposition |
| 01/17/22 | MedImpact Healthcare Systems, Inc. v. IQVIA, Inc. | CA Southern - Federal Court | Deposition |
| 01/14/22 | Nelson v. United States of America, et al. | OR - Federal Court | Trial |
| 01/05/22 | DeLeon-Piedra v. Ocean Angel V | CA Northern - Federal Court | Deposition |
| 12/14/21 | Stiner, et al. v. Brookdale Senior Living Communities, Inc. | CA Northern - Federal Court | Deposition |
| 12/01/21 | Contour IP Holdings v. GoPro | CA Northern - Federal Court | Deposition |
| 11/18/21 | Bellin Memorial Hospital v. Kinsey & Kinsey, Inc. | WI Federal Court | Trial |
| 11/15/21 | The Waffle v. Tucker Investments | Los Angeles Superior Court | Deposition |
| 10/21/21 | 7510 Hazard, LLC v. Connecticut General Life Insurance Company | San Diego Superior Court | Deposition |
| 10/18/21 | Philips North America LLC, et al. v. Dorow | NC Federal Court | Deposition |
| 10/18/21 | Philips North America LLC, et al. v. Zimmerman, et al. | NC Federal Court | Deposition |
| 10/12/21 | MicroVention, Inc. v. Balt USA, Inc. | CA Central - Federal Court | Deposition |
| 10/08/21 | In re: PFA Insurance Marketing | CA Northern - Federal Court | Declaration |
| 09/28/21 | Cuker v. Pilsbury | CA Southern - Federal Court | Deposition |
| 09/23/21 | LISCR, LLC v. Legality Holdings, S.A. | VA Eastern - Federal Court | Deposition |
| 0917/21 | TRC Operating Company, Inc. v. Chevron U.S.A., Inc. | Kern Cty Superior Court | Trial |
| 09/08/21 | Philips North America LLC, et al.  v. TEC Holdings, Inc. | GA Northern - Federal Court | Deposition |
| 09/02/21 | 7510 Hazard, LLC v. Connecticut General Life Insurance Company | San Diego Superior Court | Deposition |

EXHIBIT B

**Qualcomm Incorporated and Qualcomm Technologies, Inc. v. Arm Holdings plc**  **Exhibit B**
**Documents Considered List**

This list supplements Exhibit C to the Kennedy Opening Report filed on August 8, 2025. In connection with my review and analysis, I have considered, reviewed, and relied upon materials summarized in this Exhibit, as well as those summarized on Exhibit C to the Kennedy Opening Report filed on August 8, 2025.

| Date | Description |
|---|---|
| *Legal* | |
| 08/01/25 | Plaintiffs' Motion for Leave to Amend the Complaint to Name Arm Holdings Plc. And Arm Ltd. as Individual Defendants |
| 09/05/25 | Arm's Second Supplemental Response to Qualcomm's Third Set of Interrogatories (No. 12) |
| 09/05/25 | Arm Holdings Plc's Second Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1–3) |
| 09/05/25 | Arm's Second Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4–11) |
| 09/05/25 | Arm's Third Supplemental Response to Qualcomm's Amended Interrogatory No. 3 |

*Other Expert Reports*

| Date | Description |
|---|---|
| 08/08/25 | Expert Report of Eric A. Posner |
| 09/05/25 | Rebuttal Expert Report of Timothy S. Simcoe |
| 09/05/25 | Expert Report of Thomas W. Britven |
| 09/05/25 | Rebuttal Expert Report of Michael C. Brogioli, Ph.D. |
| 09/05/25 | Rebuttal Report of Steven Richards, CPA |

**Produced Documents**

*If the bates number referenced below is the beginning of a document/production, the bates reference is to the entire document.*
*I had access to documents produced by Qualcomm, Arm, and other third parties.*

| | | | |
|---|---|---|---|
| ARM_00006123 | ARMQC_02785348 | ARMQC_02797454 | QCVARM_0600073 |
| ARM_00055357 | ARMQC_02785408 | ARMQC_02797485 | QCVARM_0604257 |
| ARM_00056571 | ARMQC_02785427 | ARMQC_02797527 | QCVARM_0604645 |
| ARM_00062441 | ARMQC_02785429 | ARMQC_02797547 | QCVARM_0605055 |
| ARM_00062474 | ARMQC_02785436 | ARMQC_02797549 | QCVARM_0608106 |
| ARM_00063298 | ARMQC_02785474 | ARMQC_02797552 | QCVARM_0608131 |
| ARM_00085567 | ARMQC_02785499 | ARMQC_02797555 | QCVARM_0613037 |
| ARM_00086164 | ARMQC_02785501 | ARMQC_02797562 | QCVARM_0616912 |
| ARM_00103918 | ARMQC_02785503 | ARMQC_02797601 | QCVARM_0616916 |
| ARM_00114880 | ARMQC_02785513 | ARMQC_02797603 | QCVARM_0616935 |
| ARM_01298891 | ARMQC_02785557 | ARMQC_02797610 | QCVARM_0616952 |
| ARM_01427776 | ARMQC_02785578 | ARMQC_02797625 | QCVARM_0616967 |
| ARMQC_02722953 | ARMQC_02785581 | ARMQC_02797669 | QCVARM_0616975 |
| ARMQC_02732016 | ARMQC_02785583 | ARMQC_02797689 | QCVARM_0617829 |
| ARMQC_02747567 | ARMQC_02788903 | ARMQC_02797692 | QCVARM_0618320 |
| ARMQC_02747848 | ARMQC_02788944 | ARMQC_02797699 | QCVARM_0618338 |
| ARMQC_02747993 | ARMQC_02788947 | ARMQC_02797740 | QCVARM_0618354 |
| ARMQC_02772025 | ARMQC_02788972 | ARMQC_02797760 | QCVARM_0710047 |
| ARMQC_02772026 | ARMQC_02788995 | ARMQC_02797763 | QCVARM_0711638 |
| ARMQC_02772366 | ARMQC_02788995 | ARMQC_02797765 | QCVARM_0714015 |
| ARMQC_02774738 | ARMQC_02788999 | ARMQC_02797767 | QCVARM_0846761 |
| ARMQC_02774748 | ARMQC_02789001 | ARMQC_02797775 | QCVARM_0855438 |
| ARMQC_02774757 | ARMQC_02789003 | ARMQC_02797778 | QCVARM_0855474 |
| ARMQC_02774767 | ARMQC_02789005 | ARMQC_02797943 | QCVARM_0855614 |
| ARMQC_02774814 | ARMQC_02789048 | ARMQC_02797972 | QCVARM_0856270 |
| ARMQC_02774816 | ARMQC_02789069 | ARMQC_02797976 | QCVARM_0863641 |
| ARMQC_02774818 | ARMQC_02789071 | ARMQC_02797983 | QCVARM_0863644 |
| ARMQC_02774844 | ARMQC_02789074 | ARMQC_02797985 | QCVARM_0864713 |
| ARMQC_02779269 | ARMQC_02789077 | ARMQC_02797997 | QCVARM_0864833 |
| ARMQC_02779314 | ARMQC_02789082 | ARMQC_02797997 | QCVARM_0864834 |
| ARMQC_02779364 | ARMQC_02789126 | ARMQC_02798033 | QCVARM_0864838 |
| ARMQC_02779391 | ARMQC_02789129 | ARMQC_02798035 | QCVARM_0864967 |
| ARMQC_02779412 | ARMQC_02789157 | ARMQC_02798040 | QCVARM_0864969 |
| ARMQC_02779433 | ARMQC_02789159 | QCARM_0027985 | QCVARM_0865022 |
| ARMQC_02779483 | ARMQC_02789161 | QCARM_0029357 | QCVARM_0865344 |
| ARMQC_02783512 | ARMQC_02789202 | QCARM_0217597 | QCVARM_0865345 |
| ARMQC_02783533 | ARMQC_02789224 | QCARM_0337591 | QCVARM_1016051 |
| ARMQC_02783575 | ARMQC_02789227 | QCARM_0337857 | QCVARM_1020165 |
| ARMQC_02783595 | ARMQC_02789237 | QCARM_0338180 | QCVARM_1022565 |
| ARMQC_02783597 | ARMQC_02789248 | QCARM_0338352 | QCVARM_1023587 |
| ARMQC_02783599 | ARMQC_02789251 | QCARM_0339100 | QCVARM_1023593 |
| ARMQC_02783601 | ARMQC_02789253 | QCARM_0343120 | QCVARM_1030726 |
| ARMQC_02783603 | ARMQC_02797236 | QCARM_0343533 | QCVARM_1030813 |
| ARMQC_02783615 | ARMQC_02797282 | QCARM_0343954 | QCVARM_1034899 |
| ARMQC_02783616 | ARMQC_02797298 | QCARM_3474751 | QCVARM_1068402 |
| ARMQC_02783617 | ARMQC_02797302 | QCARM_3480078 | QCVARM_1069705 |
| ARMQC_02783618 | ARMQC_02797306 | QCARM_3633088 | QCVARM_1120137 |
| ARMQC_02783619 | ARMQC_02797308 | QCVARM_0452199 | QCVARM_1120153 |
| ARMQC_02783731 | ARMQC_02797314 | QCVARM_0523650 | QCVARM_1120994 |
| ARMQC_02783848 | ARMQC_02797358 | QCVARM_0524237 | QCVARM_1121930 |
| ARMQC_02783967 | ARMQC_02797379 | QCVARM_0524362 | QCVARM_1121931 |
| ARMQC_02784120 | ARMQC_02797381 | QCVARM_0525196 | QCVARM_1122733 |
| ARMQC_02784199 | ARMQC_02797385 | QCVARM_0525344 | QCVARM_1151573 |
| ARMQC_02784204 | ARMQC_02797419 | QCVARM_0526828 | QCVARM_1151620 |
| ARMQC_02785291 | ARMQC_02797442 | QCVARM_0527544 | QCVARM_1151964 |
| ARMQC_02785326 | ARMQC_02797444 | QCVARM_0571705 | |
| ARMQC_02785342 | ARMQC_02797449 | QCVARM_0573056 | |
| ARMQC_02785344 | ARMQC_02797449 | QCVARM_0600042 | |

**Qualcomm Incorporated and Qualcomm Technologies, Inc. v. Arm Holdings plc**                                                                 **Exhibit B**
**Documents Considered List**

This list supplements Exhibit C to the Kennedy Opening Report filed on August 8, 2025. In connection with my review and analysis, I have considered, reviewed, and relied upon materials summarized in this Exhibit, as well as those summarized on Exhibit C to the Kennedy Opening Report filed on August 8, 2025.

| Date | Description |
|---|---|

*Research*

Arm Holdings plc Form 20-F for the fiscal year ended March 31, 2025
Morningstar Equity Analyst Report: Qualcomm Inc, as of November 7, 2024
Qualcomm Incorporated Form 10-K for the fiscal year ended September 24, 2023
Qualcomm Incorporated Form 10-K for the fiscal year ended September 29, 2024

https://dart.deloitte.com/USDART/home/codification/revenue/asc606-10/roadmap-revenue-recognition/chapter-7-step-4-allocate-transaction/7-3-determine-stand-alone-selling
https://investors.arm.com/static-files/c383780b-44f8-42c0-a125-4f6db0b8eb06
https://www.linkedin.com/in/dawn-hill-montemagni/
https://www.linkedin.com/in/siliconip/
https://www.qualcomm.com/snapdragon/device-finder/samsung-galaxy-s24
https://www.reuters.com/technology/artificial-intelligence/qualcomm-revamps-mobile-phone-chips-ai-signs-samsung-others-2024-10-21/

# EXHIBIT C

# EXHIBIT 33

# EXHIBIT 34

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,	)
  a Delaware corporation; and	)
QUALCOMM TECHNOLOGIES, INC.,	)
  a Delaware corporation,	)
 	)
        Plaintiffs,	)	C.A. No. 24-490 (MN)
 	)
      v.	)	**SUBMITTED UNDER SEAL –**
 	)	**HIGHLY CONFIDENTIAL –**
ARM HOLDINGS PLC., f/k/a ARM LTD.,	)	**ATTORNEYS' EYES ONLY**
  a U.K. corporation,	)
 	)
        Defendant.	)

**PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI
REGARDING SUBSEQUENT EVENTS RELATING TO THEIR MOTION TO COMPEL
PRODUCTION OF THIRD-PARTY ARM LICENSES AND RELATED AGREEMENTS**

OF COUNSEL:

Catherine Nyarady
Jacob A. Braly
Jacob Apkon
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Adam Basner
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007
(202) 240-2900

October 17, 2025

Dear Special Master Rychlicki:

Pursuant to D. Del. LR 7.1.2, Plaintiffs write to advise Your Honor of newly-learned facts and subsequent events that have occurred since the August hearings on the parties' motions to compel and Qualcomm's September 15 letter that relate to Qualcomm's pending motion to compel production of third-party Arm licenses and related agreements. D.I. 359; 8/1/2025 Qualcomm Ltr. at 1–2.

As Your Honor is aware, Arm has repeatedly represented that it has "agreed to produce agreements with third parties for █████████████████ in effect at the time" of █████████ ██████████████████. 9/19/2025 Arm Ltr. to Special Master Rychlicki at 2; 8/7/2025 Arm Opp. to Qualcomm's Mot. to Compel at 1. But, as detailed in Qualcomm's September 15 letter, Arm produced only a fraction of those agreements during fact discovery, or even ahead of the hearings Your Honor held in August. Specifically, Arm produced ██ third parties' agreements in September and October,[1] as compared to ██ agreements produced by August.[2]

As mentioned in Qualcomm's August 1 letter, even those few agreements produced as of August were incomplete, as they were missing attachments that form part of the agreements. 8/1/2025 Qualcomm Ltr. at 1; D.I. 359 (moving to compel production of documents pursuant to, among others, RFP No. 123, which sought "All agreements licensing ██████████████████ codenamed ████████████████████, including TLAs and corresponding Annexes"). This problem of Arm producing incomplete agreements has only been exacerbated in Arm's later productions, with Arm continuing to omit at least the following documents that are part of the agreements Arm has with third parties:

- Annexes that the produced documents identify as containing pricing information, *e.g.*, Ex. 1 at -047, ████████████████████████████████████████;



---

[1] These are the agreements for ████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████. As Your Honor is aware, additional third parties' agreements have not yet been produced pending the resolution of their motions for protective orders.

[2] These were the agreements for ██████████████████████████████████ ██████████.

[3] Arm licenses packages of its IP to third parties under its Arm Total Access agreements ("ATAs"), whereas TLAs cover a more tailored set of IP that the relevant third party has specifically sought to license from Arm.

- Contract amendments, *e.g.*, Ex. 3 ███████████████████████████████████████████
███████████████████████████████████████████ . *See also* Ex. 4
at 5–6 (correspondence between counsel including list of apparently omitted documents).

Given Arm's purported recognition of its need to produce third-party agreements for ████████████████████ and the direct relevance of these missing contract components to the analyses of Qualcomm's damages expert Dr. Patrick Kennedy, Qualcomm reached out to Arm on September 24 with a specific list of omitted parts of third-party agreements referenced in the documents Arm had produced. Ex. 4 at 5–6. Qualcomm asked that Arm produce these missing contract components or identify by Bates number where Arm believed it had already produced them. *Id.* at 5. Arm did not respond for more than two weeks. *Id.* at 3–4. After repeated follow up, Arm represented on October 9 that it was "investigating Qualcomm's request for these additional documents." *Id.* at 3. After additional follow up, Arm responded that it would not provide these parts of third-party agreements it has omitted because it believes "Qualcomm is seeking to relitigate pending a ruling" on its motion to compel. *Id.* at 2. Arm also faulted Qualcomm for not "timely rais[ing] the issue," *id.* at 3, notwithstanding that Arm produced the substantial majority of third-party agreements after the parties briefed their motions to compel and after Your Honor heard those motions.

Aside from repeating its opposition to producing the annexes for ████████████████ ████ on the grounds that they purportedly do not relate to █████████████████ , Arm does not claim that these contract components are not relevant or discoverable. Nor could it. Under the California law that governs the breach claims in this case, "[t]he whole of a contract is to be taken together." Cal. Civ. Code § 1641. And some of the contract components that Arm has omitted are █████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████████████
███████████████████████████████ . Without production of these documents, Qualcomm has no way to know if the terms it is reading in the produced ATAs even govern third parties' licenses for ███████████████████ . Qualcomm cannot fully evaluate Arm's claimed compliance with the parties' TLA term requiring ████████████████████
████████████ if Arm will not produce the complete agreements that constitute those prior deals.[4]

Additionally, Arm has obstructed Qualcomm's efforts to mitigate the effects of Arm's failure to notify third parties of the need to produce their agreements before the end of fact discovery by refusing to produce a redacted version of a third-party agreement that Qualcomm and the third-party, ████████ , have agreed should be produced. As noted in Qualcomm's September 15 letter to Your Honor, Qualcomm has been engaging in meet and confers with late-notified licensee ████████ in an effort to reach an agreement regarding redactions without needing to burden Your Honor with yet another protective order motion. Qualcomm and ████████ reached

---

[4] In the continued investigation conducted in the weeks waiting for Arm to respond on this issue, Qualcomm was able to identify a single produced █████████████████ document, appended as an exhibit to the ██████████████ ATA. Ex. 5 at -842–942. This document confirms the relevance of these ██████████████████ as it, among other information, ████████████████████████
█████████████████████████████████████████████████████████████████████████████ .

an agreement whereby ██████ would allow Arm to produce redacted versions of its agreements now, along with a redaction log, subject to those agreements later being unredacted in whole or in part depending on how Your Honor resolves the pending third-party protective order motions.

On October 9, ██████'s counsel provided Arm with redacted versions of its agreements and gave Arm permission to produce them to Qualcomm. On October 10, counsel for Arm stated that he was not up to date on the status of Qualcomm's negotiations with ██████ but that "if there has been an agreement and redactions have been agreed to[,] we will get that out promptly." Ex. 6 at 21:2–15. On October 14, however, Arm reversed course, refusing to produce the redacted versions of ██████ agreements, claiming that it was not appropriate to do so unless ██████ filed a motion for a protective order or the Court resolved the pending dispute over the scope of Qualcomm's TLA-related claims. Ex. 7.

Arm's position—itself a change from its promise to produce the agreements "promptly" a few days earlier—is improper and would require a tremendous waste of resources by ██████, Qualcomm, and Your Honor. Arm claims that redactions are not permitted under the protective order in light of the dispute the parties litigated in March before Judge Fallon. *Id.* at 3–4. But that dispute addressed a specific provision that Arm was attempting to insert into the protective order and ESI order that would have allowed the "producing party" to redact confidential information "that is subject to a confidentiality agreement with a Third Party for which a Third Party has requested redaction." D.I. 68, Ex. D ¶ 52. *See also id.,* Ex. E ¶ 2(j). Qualcomm objected that Arm should not be permitted to unilaterally redact third-party information in the absence of the third party moving for, and the Court granting, a protective order. D.I. 70. Qualcomm also specifically noted that that the ordinary process of the non-producing party negotiating with the third party would remain available. D.I. 70 at 4 ("The usual method for protecting information—party negotiation followed by a prompt protective order motion by the third party to resolve any disputes—is the appropriate procedure."). Thus, nothing about the parties' March dispute displaces the commonsense practice of producing redacted versions of documents upon agreement between a third party and the party seeking the documents. Arm's refusal to produce ██████ agreements is improper, but consistent with Arm's other efforts to avoid compliance with its discovery obligations.

Qualcomm requests that Arm be required to abide by its commitment to produce its agreements with third parties for ██████████ (subject to Your Honor's resolution of the parties' scope dispute). Despite its repeated representations to Your Honor that it has made this production, *e.g.*, 8/14/2025 Tr. 60:16-22; 8/22/2025 Tr. 277:18-278:13, 278:19-23, 279:17-18; 9/19/2025 Arm Ltr. to Special Master Rychlicki at 2 ("Arm's additional productions moot Qualcomm's motions to compel, which should be denied."), Arm's production remains incomplete, and Arm refuses to remedy its inadequacies absent a Court order. Qualcomm's motion to compel production of third-party Arm licenses and related agreements should be granted.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 1637

Encls.

# EXHIBIT 36

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 24-490 (MN) |
| v. | ) ) ) | **SUBMITTED UNDER SEAL – HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI REGARDING NEWLY-LEARNED FACTS AND SUBSEQUENT EVENTS**

OF COUNSEL:

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

September 15, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Dear Special Master Rychlicki:

     Pursuant to D. Del. LR 7.1.2, Plaintiffs write to advise Your Honor of newly-learned facts and subsequent events that have occurred since the August 14 and 22 hearings that relate to Qualcomm's pending motions to compel production of third-party Arm TLAs and related agreements (D.I. 359; 8/1/2025 Qualcomm Ltr. at 1-2), and supplemental interrogatory responses and 30(b)(6) testimony identifying and explaining relevant terms in these agreements (D.I. 375; 8/11/2025 Qualcomm Ltr. at 4-5).

     As Your Honor may recall, at the August 14 hearing, Arm took the position that there was no need to compel production of third-party agreements licensing the implementation cores codenamed ███████████ because Arm had already produced those documents, except for those subject to pending motions for protective orders. Specifically, Arm's counsel represented: "[I]n terms of parties that do have a license [to ███████████], we have provided that discovery and sought to provide that discovery unless it was objected to [by the third party], and clearly we have some objections here that we're dealing with today." Ex. 1, 8/14/2025 Tr. 60:16-22. Similarly, at the August 22 hearing, counsel for Arm represented, in opposing Qualcomm's motion to compel supplemental responses to interrogatories 6 and 11:

> So after the SAC allowed and the TLA claims of ███████████ were in the case, we went and provided discovery on ███████████. We produced the documents. We produced them on a rolling basis because, as Your Honor knows, third parties have confidentiality interests in those documents. We provided notice to those third parties and an opportunity to object. ███████ did not object and so that agreement was produced. As Your Honor knows, ███████ has objected and that dispute is before you. So that agreement has not been produced yet. In any event, Qualcomm then deposed a number of witnesses about these documents. . . . Now, there's definitely a discrepancy whether Qualcomm thinks it got enough information from those witnesses, but there's no question that it certainly had that opportunity. . . . *they had the documents, so there's no dispute about that.*

Ex. 2, 8/22/2025 Tr. 277:18-278:13, 278:19-23, 279:17-18 (emphasis added).

     Following the two hearings, Qualcomm has learned that Arm had not produced all, or even most, of the third-party agreements for ███████████ as of the June and July depositions of Arm's witnesses, or even as of the August hearings. To be clear: as of August 22, Arm had produced license agreements for ███████████ with ███ third parties.[1] Since then, however, Arm has produced license agreements with new third parties: ███████████ on September 4; ███████████ last week on September 11; and ███████████

---

[1] These were ███████████. These seven third parties' agreements were also the only ones produced when Qualcomm's opening expert reports were due on August 8. Arm produced ███ additional third parties' agreements before it served its rebuttal report on September 5, 2025, and Arm's expert relied on those newly produced agreements.

just today.  As Your Honor may have seen, a ███████████ new third party (███████████, Inc.) moved for protective orders last Thursday.  According to these third parties, they did not receive notice from Arm about production of their agreements until late August, after the August 14 hearing with Your Honor.  In addition, last Friday night, a ███████ new third party, ███████████, contacted Qualcomm advising that it did not receive notice from Arm until September 4.[2]

Notwithstanding Arm's repeated assurances that it had produced everything not subject to a motion for a protective order, Qualcomm appears only to be receiving additional agreements (and additional third parties have moved for protective orders) now because Qualcomm's counsel scoured the public record for other mentions of Arm licensees who have ███████████ and raised three of those potential licensees with Arm.  *See* 8/7/2025 Arm Opp. to Qualcomm's 8/1/2025 Mot. to Compel at 1 (stating that Arm had agreed to investigate the existence of other agreements as of July 30—two weeks before the August 14 hearing).  Arm has refused to respond to Qualcomm's questions about (1) why it did not produce these agreements earlier during discovery, (2) whose agreements remain outstanding, or (3) what it has done to ensure that the deficiencies that caused it to miss these agreements in its initial productions are not affecting other areas of its production.  *See* Ex. 3, Correspondence between Arm and Qualcomm Counsel.

As of the date of this letter, Qualcomm remains in the dark about how many additional license agreements for ███████████ are still to be produced, when it can expect that production, and why Arm did not produce these agreements within the fact discovery period.  Qualcomm also has not had any opportunity to question any Arm witness about these newly produced documents, making more critical Qualcomm's motion to compel Arm to produce a 30(b)(6) witness that is prepared to testify on relevant terms of third-party agreements.  Qualcomm's motions to compel Arm's third-party agreements for ███████████; supplemental interrogatory responses; and 30(b)(6) testimony accordingly present live disputes, despite representations that the subject documents had been produced before Arm's witnesses' depositions and last month's hearings.[3]

Qualcomm respectfully requests that Your Honor grant its motions to compel.  Counsel is available should Your Honor have any questions.

Respectfully submitted,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 1005

---

[2] Qualcomm will be meeting and conferring with ███████ this week, as ███████ has requested.
[3] Qualcomm further notes that its reply expert reports, including one which must address these third-party agreements, are due at the end of this week on September 19.  *See* D.I. 44, ¶ 7(g)(i).  The parties' dispositive and *Daubert* motions are due on October 24.  D.I. 44, ¶ 9.  Qualcomm may seek additional relief in the future should it become necessary based upon Arm's belated disclosures.

# EXHIBIT 37

# EXHIBIT 38

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, <br><br><br> Plaintiffs, <br><br> v. <br><br> ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, <br><br> Defendant. | C.A. No. 24-490 (MN) <br><br><br> **HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY** |

## ARM'S SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S SECOND SET OF INTERROGATORIES (NOS. 4-11)

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States District Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm")'s Second Set of Interrogatories (Nos. 4-11).

## GENERAL OBJECTIONS

Arm makes the following general objections, which are hereby incorporated by reference and made part of its response to each and every Interrogatory.

1.    Arm objects to each Interrogatory to the extent it purports to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

2.    Arm objects to the "Instructions" and "Definitions" sections to the extent they purport to alter the plain meaning and/or scope of any specific Interrogatory, on the ground that such alteration renders the Interrogatory vague, ambiguous, overly broad, and/or uncertain, by

failing to adequately define terms or by using terms the meaning of which are not readily available or decipherable. Arm's responses to such Interrogatories shall not be construed as an admission, agreement, or acquiescence to any such instruction or definition. Arm further objects to the "Instructions" and "Definitions" sections to the extent they purport to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

3.      Arm objects to the definitions of "Defendant," "Arm," "you," and "your" as overly broad and unduly burdensome to the extent they purport to require Arm to provide information that is not within the possession, custody, or control of Arm Holdings PLC, or to otherwise respond on behalf of third parties, at least because these definitions include entities that have no relation to the present litigation.

4.      Arm objects to the definitions of "ALA" and "TLA" as overbroad and vague and ambiguous to the extent they define Architecture License Agreement and Technology License Agreement to include "all amendments and annexes to any such agreement."

5.      Arm objects to the definition of ██████████ " as overbroad and vague and ambiguous to the extent it defines the term by reference to the definition of that term in ██████ ████████████████████████████████████████████████████████████████ ████████████████████████

6.      Arm objects to the definition of "ACK" as overbroad and vague and ambiguous to the extent it defines the term as meaning "████████████████████████████████████ ████████████████████████████████████████████ ."

7.      Arm objects to each Interrogatory, including the instructions and definitions that Qualcomm purports to incorporate therein, to the extent that each Interrogatory is overbroad,

unduly burdensome, not limited to a reasonable time frame, vague and ambiguous, irrelevant, and/or not reasonably calculated to lead to the discovery of admissible evidence.

8.      Arm objects to each Interrogatory to the extent it seeks information, documents, and/or things that are protected from disclosure by the attorney-client privilege, work-product doctrine, common-interest privilege, and/or any other applicable privilege, immunity, or protection (collectively, "privileged information").    Nothing contained in these responses should be considered a waiver of any attorney-client privilege, work-product protection, or any other applicable privilege or doctrine.   Arm does not intend to produce information or documents that would divulge any privileged information.   Any such disclosure is inadvertent and shall not be deemed a waiver of any applicable privilege or immunity.

9.      Arm objects to any factual characterizations in Qualcomm's Interrogatories.   By responding, Arm does not accept or admit any of Qualcomm's factual characterizations.

10.      Arm objects to each Interrogatory to the extent it seeks "all" or "any" facts, documents, witness identifications, or things as overbroad and unduly burdensome.

11.      Arm's discovery and investigation in connection with this case is ongoing.   Arm's responses to these Interrogatories are based on its knowledge to date following a reasonable investigation.   As a result, Arm's responses are provided without waiver of Arm's right to: (a) object to other interrogatories directed to the subject matter of these Interrogatories and responses; (b) make additional or supplementary objections to these Interrogatories; or (c) revise, amend, supplement, or clarify the contents of these responses.

Subject to and without wavier of these General Objections and the more specific objections set forth below, Arm responds as follows:

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 4:

Describe, in detail, Arm's reason(s), explanation, or justification for failing to respond to Qualcomm's █████████ under ████████████ of the Qualcomm ALA to extend the ████████████. Your response should include (1) the names of any individuals involved in the decision not to respond to Qualcomm's █████, (2) a description of any discussions regarding whether to respond to Qualcomm's ████████, including any discussions that occurred in subsequent years, (3) any factual or legal bases that Arm relied on in deciding not to respond to Qualcomm's █████, and (4) an identification of any relevant documents by Bates number.

### RESPONSE TO INTERROGATORY NO. 4 (JUNE 16, 2025):

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks information regarding "the names of any individuals," "any discussions," "any factual or legal bases," and "any relevant documents," without limitation.  Arm objects to this Interrogatory as vague and ambiguous and as mischaracterizing, as the terms "Qualcomm's ████████ under ████████ of the Qualcomm ALA" and "the decision not to respond to Qualcomm's █████ are unclear and inaccurate. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.  Arm objects to this Interrogatory to the extent it calls for a legal conclusion.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

### Arm Responded To Qualcomm's Purported █████ Under ████ In █████

Arm responded to Qualcomm's purported █████ under ████████ of the Qualcomm ALA in █████.

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

In response to outreach from Brett Bettesworth from Qualcomm to Lynn Couillard at Arm in ███████████████, Lynn Couillard sent several responses to Qualcomm in response to its request for an ████████████████████████████████, including on ███████████ when she responded stating that ███████████ ████████████████████████████████ ██████████████████████████████████████████████: ██████████████████████████ ██████████████ ██████████████████████████████ ████████████████████████████████████████████████████████" and that "████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████": 

> **From:** Lynn Couillard <Lynn.Couillard@arm.com>
> **Sent:** ███████████████ 9:49 AM
> **To:** Brett Bettesworth <betteswb@qti.qualcomm.com>; Rajiv Gupta <grajiv@qti.qualcomm.com>
> **Cc:** Todd Lepinski <Todd.Lepinski@arm.com>
> **Subject:** [EXT] Re: █████████████████████████
>
> Hello Brett and Rajiv, (+Todd)
>
> ████████████████████████████████████████████████████████
> ████████████████████████████████████████████████████████
> ████████████████████████████████████████████████████████
> ████████████████████████████████████████████████████████
>
> Note that at the time of the █ architecture closure, we also included ██████ which at the time had no definition, and eventually became ███.
>
> Please let us know if you'd like to discuss, we can set something up for next week.
>
> Thanks
> Lynn

ARM_00005340.  Mr. Bettesworth responded five days later.  He did not dispute any of Ms. Couillard's statements, including that ██████████████████████████████████████ ████████████████████████████████████████████ and that if Qualcomm desires to "████ ████████████████████████████████████████████████████████████████ ████████████████████." He elected to "████████████████████████████████████████":

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



*Id.*  Mr. Bettesworth's email also did not seek a response, and ended by stating that "[w]e can discuss further at some point in the near future …."  However, Mr. Bettesworth does not appear to have sent a follow-up email to arrange such discussions.  Qualcomm also failed to send any follow-up about ▇ to Arm, including any formal correspondence ▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ Qualcomm further failed to send any notice of breach of the ALA to Arm for allegedly breaching ▇▇▇▇▇▇▇

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Lynn Couillard.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: QCVARM_1120481, ARM_00079223.

Arm further incorporates by reference the testimony of the following witnesses: Lynn Couillard, Martin Weidmann, Gerard Williams, Spencer Collins, Michael Williams, William Abbey, Mark Dragicevich, Ziad Asghar, and Karthik Shivashankar, including the documents used at each of those depositions. Arm also incorporates by reference its responses to Interrogatory Nos. 3 and 10.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

## INTERROGATORY NO. 5 (JUNE 16, 2025):

Identify with specificity all ACK patches and OOBs developed or provided by Arm between July 2022 and February 2025 and their respective release schedule(s). Your response should identify (1) the names of each partner who received an ACK patch or OOB, (2) the dates that each ACK patch and OOB was requested and by whom, (3) the date that each ACK patch and OOB was provided and to which partner, (4) information regarding whether any ACK patches and OOB were withheld from any partners during this time period, (5) the names of all Arm individuals with relevant knowledge, and (6) identify any relevant documents by Bates number.

## RESPONSE TO INTERROGATORY NO. 5:

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding "all ACK patches and OOBs developed or provided by Arm between July 2022 and February 2025," "each partner," information about "each ACK patch and OOB," and "all Arm individuals," without limitation. Arm further objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case because it seeks detailed information regarding Arm's development and provision of partner-specific OOBs and ACK patches for partners other than Qualcomm. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the

joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm incorporates its response to Qualcomm's Interrogatory Number 1.

### Arm Provides The Content Of ACK Patches To All Partners, Including Qualcomm As Part Of Its Quarterly ACK Release

ACK patches are not ███████████████████████" under the Qualcomm ALA, including because they are not architecture technology identified in the ████████████ ████████████████████████████████. An ACK patch is a partner-specific solution to a partner-specific ACK test issue, and when that solution is relevant to all ALA licensees, Arm typically incorporates the solution into its next quarterly ACK release, which is made available to all ALA partners, including Qualcomm.

Arm provided Qualcomm with the full suite of ACK tests for both the ████ and ████ architectures—the ██████████████████████ and the ██████████████ ████████████ ████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████). Arm therefore did not withhold any ACK tests from Qualcomm.

Arm provided all of its ALA partners, including Qualcomm, with quarterly ACK releases that incorporated ACK-patch solutions to ACK test issues relevant to all ALA partners. *See*, *e.g.*,

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████).

### OOBs Are Partner and Design-Specific, And OOBs Provided To Third Parties Are Not Relevant To Qualcomm

OOBs are not "███████████████████████" under the Qualcomm ALA, including because they are not architecture technology ██████████████████████████

███████████████████████████████████. OOBs identify which of the previously delivered ACK tests a partner should run and are based on the configuration of the partner's design implementation. Because OOBs are not just partner-specific, but implementation-

specific, any OOB that Arm may have provided to a third-party ALA partner is not relevant to Qualcomm. *See* Agrawal Dep. Tr. at 29:1–21 ("Two partners can never have [the] same OOB."). Further, as explained in Arm's response to Qualcomm Interrogatory No. 1, by July 2022, Arm had already given Qualcomm several OOB packages, including for use with Nuvia-based designs. *See* Arm Resp. to Qualcomm Interrog. No. 1.

Further, though Qualcomm is not entitled to any ACK patches or OOB for Nuvia-based designs, Arm made clear in its January 8, 2025 letter to Qualcomm that "Arm intends to provide support for the Nuvia CPUs, including support and verification services" pending certain litigation between the parties.  QCVARM_0573677.

Arm identifies the following individual as knowledgeable regarding aspects of this subject matter: Vivek Agrawal.

Pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived:  ARMQC_02603587, ARMQC_02604609, ARMQC_02604610, ARMQC_02604611, ARMQC_02604612, ARMQC_02604613, ARMQC_02604614, ARMQC_02604615, ARMQC_02604616, ARMQC_02604617, ARMQC_02604618, ARMQC_02604619, ARMQC_02747093, ARMQC_02747097, ARMQC_02747103, and ARMQC_02747104.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm provided all of its ALA partners, including Qualcomm, with quarterly ACK releases that incorporated ACK-patch solutions to ACK test issues relevant to all ALA partners. *See*, *e.g.*,



Arm also provided Qualcomm with Qualcomm-specific support materials. *See*, *e.g.*, ARMQC_02747093 (document showing Arm providing Qualcomm-specific support materials); ARMQC_02747097 (document showing Arm providing Qualcomm-specific support materials); ARMQC_02747103 (document showing Qualcomm downloading Qualcomm-specific support materials); ARMQC_02747104 (document showing Qualcomm downloading Qualcomm-specific support materials).

Arm further incorporates by reference Arm's objections and responses to Qualcomm Interrogatory Nos. 1 and 10.

Arm further incorporates by reference the testimony of all witnesses that have been deposed in this case to date, including those specifically referenced herein, as well as the testimony of all witnesses deposed in *Arm v. Qualcomm*, Case No. 1:22-cv-01146 (D. Del.), and the exhibits used during those depositions.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARMQC_02779171, ARMQC_02779174, ARMQC_02779176,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

ARMQC_02779179, ARMQC_02779181; ARMQC_02603587, ARMQC_02604609,

ARMQC_02604610, ARMQC_02604611, ARMQC_02604612, ARMQC_02604613,

ARMQC_02604614, ARMQC_02604615, ARMQC_02604616, ARMQC_02604617,

ARMQC_02604618, ARMQC_02604619, ARMQC_026046020, ARMQC_02604621,

ARMQC_02604622, ARMQC_02604623, ARMQC_02747093, ARMQC_02747097,

ARMQC_02747103, ARMQC_02747104.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5 (September 5, 2025):

Arm incorporates by reference its previous responses to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further incorporates by reference the forthcoming expert report and testimony of Dr. Michael Brogioli, as well as documents and testimony cited therein.

## INTERROGATORY NO. 6:

Describe in detail and provide a list of licensing terms that Arm has offered since 2019 for CortexA720 codenamed ██████," Cortex-A520 codenamed "██████" Cortex M55 codenamed ██████," Cortex-X925 codenamed ██████," the CPU codenamed ██████," Cortex-A720AE codenamed ██████ Cortex-A730 codenamed "██████", and Cortex-A725 codenamed ██████. Your response should identify (1) the names of each partner and which licensing offer(s) the partner received, (2) the date of each offer to each specific partner, (3) the licensing fee offered for each of the identified products, by partner (4) the royalty rate offered for each of the identified products, by partner (5) the licensing term offered for each of the identified products, by partner (6) any support and maintenance terms offered for each of the identified products, by partner (7) any restrictions imposed on engineering development efforts for each of the identified products, by partner (8) the names of all Arm individuals with relevant knowledge, and (9) all relevant documents identified by Bates number.

## RESPONSE TO INTERROGATORY NO. 6 (JUNE 16, 2025):

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks information regarding "each

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

partner," "each offer," "each of the identified products," without limitation. Arm further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information regarding cores for which Qualcomm does not allege breach in its Second Amended Complaint, including "Cortex-X925," ████████" "the CPU codenamed ████," "Cortex-A720AE codenamed ████," "Cortex-A730 codenamed ████," and "Cortex-A725 codenamed '████'" Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this Interrogatory as vague and ambiguous, as the term "restrictions" is unclear. Arm further objects to this Interrogatory as having multiple discrete subparts and therefore multiple interrogatories. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows: Arm is willing to meet and confer with Qualcomm regarding a reasonable scope for this interrogatory.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Arm further objects to this Interrogatory as vague and ambiguous, as the term "offered" is unclear. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARM_01424135, ARMQC_02779314, ARMQC_02772366, ARMQC_02779433, ARMQC_02779391, ARMQC_02779269, ARMQC_02779412, ARMQC_02779364, ARMQC_02779483, ARMQC_02783533, ARMQC_02783601, ARMQC_02783599, ARMQC_02783597, ARMQC_02783603, ARMQC_02783595, ARMQC_02783512, ARMQC_02783575, ARMQC_02774738, ARMQC_02774748, ARMQC_02774757, ARMQC_02774767, ARMQC_02774814, ARMQC_02774818, ARMQC_02774844, ARMQC_02774816.

Arm further incorporates by reference the testimony of the following witnesses: Karthik Shivashankar, Ehab Youssef, Akshay Bhatnagar, Jeff Fonseca, and Kurt Wolf, including the documents used at each of those depositions..

Arm further incorporates by reference any documents withheld on the basis of third-party confidentiality disputes, including due to an objection or motion for a Protective Order filed by any such third parties. Arm reserves the right to supplement this response to address such documents as appropriate should any such disputes be resolved and result in the production of any documents to Qualcomm.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 7:**

Describe, in detail, Arm's business strategy with respect to gaining a competitive advantage against other companies, including Qualcomm. Your response should include (1) any strategy related to unwinding or limiting ALAs, (2) any strategy related to increasing licensing prices for products offered under any license, (3) any strategy related to development of silicon, (4) any strategy related to acquiring other companies, (5) any strategy related to increasing pricing or limiting access to ███ or future versions of the Arm ISA, (6) the names of all Arm individuals with relevant knowledge, and (7) all relevant documents identified by Bates number.

**RESPONSE TO INTERROGATORY NO. 7 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding "any strategy" and "all Arm individuals," without limitation.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.  Arm further objects to this Interrogatory as vague and ambiguous, as the terms "Arm's business strategy with respect to gaining a competitive advantage," "unwinding or limiting ALAs," "development of silicon," and "increasing pricing or limiting access to ███ or future versions of the Arm ISA" are unclear.  Arm objects to Qualcomm's characterization of its business strategy.  Arm further objects to this Interrogatory as having multiple discrete subparts and therefore multiple interrogatories  Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows: Arm is willing to meet and confer with Qualcomm regarding a reasonable scope for this interrogatory, if any.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence, including information regarding Arm's "strategy related to acquiring other companies."  Specifically, this portion of the

Interrogatory is not relevant to any of Qualcomm's claims in its Second Amended Complaint, including Qualcomm's California Unfair Competition Law ("UCL") claim. *See Bacon v. Carroll*, 2007 WL 2111057, at *7 (D. Del. July 17, 2007) (finding interrogatories related to defendant's grievances "are not relevant or likely to lead to admissible evidence" and plaintiff "cannot point to any use for the material that would support" the claims). Arm is willing to meet and confer with Qualcomm as to the relevance and appropriate scope of this portion of the Interrogatory, if any.

Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence, including information regarding "Arm's business strategy with respect to gaining a competitive advantage against other companies." Specifically, this portion of the Interrogatory is not relevant to any of Qualcomm's claims in its Second Amended Complaint, including Qualcomm's UCL claim. There is no support for the proposition that a business strategy to "gain[] a competitive advantage against other companies," without more, is unfair or unlawful conduct under the UCL. Such conduct is instead generally pro-competitive. *See FTC v. Qualcomm*, 969 F.3d 974, 1003, 1005 (9th Cir. 2020) (finding Qualcomm's "hypercompetitive" behavior to be "disruptive" but "in a manner that [is] beneficial to consumers in the long run"). Indeed, where business practices are "reasonable and consistent with current industry practice" and "reduc[e] 'transaction costs and complexities,'" courts routinely find such conduct does not violate the UCL. *E.g.*, Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 47–48 (Apr. 26, 2024) (citing *FTC v. Qualcomm*, 969 F.3d 974, 996 n.17, 996 (9th Cir. 2020)).

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm's business has always been customer centric. Its mission is to innovate and develop products to meet customer needs and market demand. Arm continues to pursue this mission by

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

developing both its instruction set architecture ("ISA") and its implementation cores in close collaboration with its partners, including Qualcomm.  This enables Arm's partners to compete across the semiconductor technology stack, which in turn brings more choice to the market. Accordingly, Arm's business strategy is aimed at investing in productive relationships with its partners to meet these pro-competitive goals.

Arm's open licensing model enables many companies to design chips, fostering a competitive ecosystem.  Specifically, Arm has enabled its partners to build custom central processing units ("CPUs") by licensing its ISA to them through Architecture Licensing Agreements ("ALAs").  Doing so increases the number of CPUs available on the market, including CPUs that compete with Arm-designed CPUs, which Arm also makes available for license through Technology Licensing Agreements ("TLAs").  Given the extraordinary amount of time and resources required to successfully develop CPUs and the attendant high rate of failure, Arm ███████████████████████████████████████████████.  Even the top semiconductor companies with the greatest resources are often unable to successfully develop custom CPUs under their ALAs.  For example, Qualcomm—one of the world's largest and most profitable semiconductor companies—sought to develop a custom core for the server market but ultimately abandoned the effort due to high costs.  *See* Deposition of James Thompson, November 11, 2023, pp. 53–56.  Indeed, Arm's royalty payment model aligns its interests with those of its partners—meaning Arm succeeds when its partners do—and incentivizes its partners to make their intellectual property available as broadly as possible.  Arm's ALA licensing practices are thus pro-competitive and driven by rational business decisions.

In addition to major players like Qualcomm, Arm has also entered ALAs with promising start-up technology design companies to foster innovation and meet customer needs.  For example, in 2019, Arm negotiated an ALA with NUVIA Inc. ("Nuvia"), a start-up that designed chips for

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

data centers.  Arm agreed to accept a lower-than-average upfront fee for the ALA to help sponsor Nuvia's entry into the market.  In return for Arm's agreement to share Nuvia's risk on the front-end, Nuvia agreed to grant Arm higher royalties if it successfully developed a CPU.  This deal typified Arm's customer centric, pro-competitive approach to its partners: investment and support.

Although Arm executes ALAs with partners who have the means and desire to invest in developing their own customized CPUs, history and experience has demonstrated that those partners are not always capable of optimizing Arm's architecture during CPU development and are unlikely to yield CPUs that are materially superior to Arm's product, despite enormous investments of resources and time.   Many partners thus license Arm's market-leading, ready-to-use implementation cores through TLAs rather than embarking on the high-risk, low-reward proposition of CPU development.  TLAs enable Arm's partners to outsource their costly CPU research and development needs to Arm, which reduces their development burdens and risks, speeds up their time-to-market, and frees up resources for investment in innovation and differentiating themselves in other areas.  Because TLAs offer a far more efficient, practical, and effective arrangement in almost every circumstance, the vast majority of Arm's licenses are TLAs and historically most of Arm's partners have a TLA.  *See* ARM_01259705 at 9794; Deposition of Simon Segars, November 16, 2023, pp. 29–30.  TLAs, in turn, directly benefit the market and consumers by increasing product quality while decreasing prices.

Arm has further explored offering its own chips to meet innovation needs and customer demand.  Arm's potential entrance into the chip market would thus generate more competition, innovation, and consumer choice.  Regulators routinely approve, and markets encourage, this type of pro-competitive conduct.

Arm does not have a blanket "strategy" for pricing its IP licenses.  Arm instead approaches each license individually and in the context of the specific needs of the partner, market segment,

and end-users, resulting in various license structures. 

. Qualcomm's ALA, by contrast,

. To the extent Arm has

. Indeed, Arm's conduct is "reasonable and consistent with current industry practice." *See, e.g.*, Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 47–48 (Apr. 26, 2024) (citing *FTC v. Qualcomm*, 969 F.3d 974, 996 n.17, 996 (9th Cir. 2020)).

Arm refers Qualcomm to its Initial Disclosures for "the names of all Arm individuals with" knowledge relevant to this Interrogatory.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARM_01293447, ARMQC_02771129, ARMQC_02771151, QCVARM_0851876, QCVARM_1068459.

Arm further incorporates by reference the testimony of the following witnesses: Rene Haas, William Abbey, Paul Williamson, Richard Grisenthwaite, Karthik Shivashankar, Jannik Nelson, Peter Greenhalgh, Durga Malladi, and Martin Weidmann, including the documents used at each of those depositions.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7 (September 5,**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**2025):**

Arm incorporates by reference its previous responses to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further incorporates by reference the forthcoming expert reports and testimony of Dr. Michael Brogioli, Steven Richards, and Timothy Simcoe as well as documents and testimony cited therein.

## INTERROGATORY NO. 8:

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not interfere, either intentionally or negligently, with Qualcomm's business opportunities, including but not limited to Qualcomm's business opportunities with the Smartphone Company and the AI and Ecosystem Company identified in the operative Complaint. Your response should include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

## RESPONSE TO INTERROGATORY NO. 8 (JUNE 16, 2025):

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding alleged interference with "Qualcomm's business opportunities," without limitation.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.  Arm further objects to this Interrogatory as vague and ambiguous, as the terms "Qualcomm's business opportunities," and "Qualcomm's business opportunities with the Smartphone Company and the AI and Ecosystem Company" are unclear.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

### Arm's October 2024 Letter And Its Publication Did Not Interfere With Qualcomm's Business Opportunities Because Arm Repeatedly And Publicly Stated That Qualcomm Was In Breach Of The Qualcomm ALA As Early As 2022

Arm's October 2024 letter stating that Qualcomm was in breach of the Qualcomm ALA, and the publication of the same, did not interfere with any of Qualcomm's business relationships because Arm repeatedly and publicly stated that Qualcomm was in breach of the Qualcomm ALA as early as 2022.

On November 15, 2022 Arm filed a publicly-available Answer in *Arm Ltd. v. Qualcomm Inc. et al.*, No. 22-1146 (MN) ("Arm v. Qualcomm"), in which Arm publicly stated that "Qualcomm is materially breaching its ALA, giving Arm the right to terminate, and the Qualcomm ALA does not provide a license for or right to continue development of the Nuvia technology," that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology, entitling Arm to terminate that ALA based on Qualcomm's material breaches," that "Arm is entitled to terminate Qualcomm's ALA based on Qualcomm's material breaches of the verification, delivery, and support and maintenance provisions," and that:

> "Qualcomm's allegations that it is exercising its rights with respect to the relevant Nuvia technology under Qualcomm's license agreements with Arm and is not in violation of those agreements fail because Arm has no such obligations with respect to the Nuvia technology, and Qualcomm is breaching the Qualcomm ALA by insisting otherwise. Under the Qualcomm ALA, Arm has no obligation to provide, and Qualcomm has no right to seek, verification, delivery, or support and maintenance in connection with technology developed under the now-terminated Nuvia ALA. The 'verification' provisions of Section 4 of the Qualcomm ALA are limited to products manufactured [redacted] in the ALA. The delivery (Section 5) and support and maintenance (Section 7) obligations of the Qualcomm ALA are similarly limited to the defined [redacted] and therefore likewise do not extend to the relevant Nuvia technology, which embodies and was derived from Arm technology delivered by Arm to Nuvia under Nuvia's now-terminated ALA. Qualcomm's unreasonable, bad-faith demands that Arm comply with purported obligations for verification, delivery, and support and maintenance with respect to technology delivered and developed outside the scope of the Qualcomm ALA are contrary to the parties' expectations and undermines the benefit to Arm from the Qualcomm ALA, thereby materially breaching that agreement's terms and implied

covenant of good faith and fair dealing and entitling Arm to terminate the Qualcomm ALA under Section 14.2."

No. 22-1146, D.I. 21 at 2, 37, 39, 41-42.

On April 11, 2024, Arm filed another publicly-available Answer that likewise included allegations that Qualcomm was in breach of its ALA, including that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology," and that "Qualcomm is materially breaching its ALA, giving Arm the right to terminate …." D.I. 322 at 2, 42-45, 48-49. These materials were available to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146.

### Qualcomm Recognized That Arm's October 22, 2024 Notice Of Material Breach "Is Actually Not New News"

In *Arm v. Qualcomm*, the Court held a pre-trial conference on November 20, 2024. During that conference, Qualcomm's counsel stated that Arm's claim that Qualcomm is in breach of the Qualcomm ALA has been in the case "starting at the very beginning," Nov. 11, 2024 Hearing Tr. at 13:10-16, and that "[t]he letter on October 22nd is actually not new news in the sense of alleging these breaches":

> "And in response to that, there have been repeated allegations that the Qualcomm ALA has been breached by Qualcomm. The letter on October 22nd is actually not new news in the sense of alleging these breaches. It has been in the case squarely and we anticipate that it is going to be raised by ARM in response to the arguments that we have regarding the fact that our products are licensed."

*Id.* at 14:18-24. Qualcomm's counsel stated earlier in that same hearing that "with respect to Qualcomm's alleged breach under the Qualcomm ALA, Arm itself has put that in the case starting at the very beginning" and that "[w]hen you go to their answer at DI 21, they say … [Qualcomm is] also materially breaching its ALA with Arm." *Id.* at 13:10-16. Qualcomm candidly admitted "as early as November 15, 2022, in DI 21, … they say Qualcomm is materially breaching its own ALA and giving ARM the right to terminate that agreement." *Id.* at 13:23-14:12. Qualcomm also acknowledged "there is at least five or six references" to this same assertion that Arm has the right

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

to terminate the Qualcomm ALA "throughout [Arm's] pleading" in November 2022. *Id.*

**Arm's Alleged Publication of Arm's October 2024 Letter Did Not
Interfere With Qualcomm's Business Opportunities Because Qualcomm Admits
It Had An Obligation To Publish—And Did Publish—Arm's October 2024 Letter**

On October 22, 2024 Arm sent a notice of material breach ("October 22 Notice") to Qualcomm that echoed its public statements in its November 15, 2022 and April 11, 2024 Answers, including that:



"The Qualcomm ALA permits ▮▮▮▮▮▮▮▮▮▮▮ Qualcomm is only permitted to ▮▮▮▮▮▮ requirements of the Qualcomm ALA And Qualcomm is entitled to ▮▮ within the scope of the ALA. These obligations are reflected in multiple places in the Qualcomm ALA, including but not limited to Sections ▮▮▮▮▮▮▮▮

Qualcomm has systematically and willfully breached these obligations, and its breaches have accelerated and expanded in recent months. Specifically, Qualcomm has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And Qualcomm initiated and continues to prosecute contractual claims that arise from Qualcomm's improper conduct with respect to these unlicensed cores.

Due to Qualcomm's willful, ongoing, and renewed actions, Qualcomm is in material breach of the Qualcomm ALA."

10/22/2024 Arm Breach Notice to Qualcomm (ARMQC_02749015).  No terms or provisions of the Qualcomm ALA were quoted in Arm's notice of material breach. *Id.* Qualcomm responded on October 28, 2024.  10/28/2024 Qualcomm Ltr. to Arm.  Qualcomm made a summary of the contents of both notices available to the public on November 6, 2024.  Qualcomm 10-K Annual Report (November 6, 2024).

On January 8, 2025, Arm withdrew its October 22 Notice, stating that:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

███████████████████████████████████████████████
███████████████████████████████ while Arm's
ongoing legal challenges are pending, ██████████████
██████████████████████████ rm therefore withdraws the pending
October 22, 2024 notice of material breach.
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████ .

> Arm's prior correspondence and relevant court filings in the Delaware litigation
> reflect Arm's legal position regarding the scope of the Qualcomm ALA and the
> required actions that Nuvia acting in concert with Qualcomm must take in light of
> the termination of the Nuvia ALA on March 1, 2022. Arm's future legal filing will
> reflect its legal position regarding the non-final verdict, a new trial and judgment in
> the legal case. Arm reserves all rights and none of Arm's conduct, support and
> verification reflects a waiver of Arm's present or future rights or claims.

1/8/2025 Arm Ltr. to Qualcomm (QCVARM_0847182). Qualcomm and Arm exchanged further

correspondence on January 22 and 30. 1/22/2025 Qualcomm Ltr. to Arm (QCVARM_0847182);

1/30/2025 Arm Ltr. to Qualcomm (QCVARM_0847184).

On November 6, 2024 Qualcomm publicly described Arm's October 22 Notice in its Annual

Report to investors:

> On October 22, 2024, Arm provided us with a notice alleging that we have breached
> the Qualcomm ALA by marketing products that contain CPUs that Arm alleges use
> designs, technology and code created by Nuvia employees prior to our acquisition
> of Nuvia; by seeking support and verification from Arm for additional products that
> use such alleged designs, technology and code; and by suing Arm for breach of the
> Qualcomm ALA. Arm's notice asserts that it will have the right to terminate the
> Qualcomm ALA if such alleged breaches are not cured within 60 days of such
> notice.

Qualcomm 10-K Annual Report (November 6, 2024).

On December 16, 2024 Qualcomm filed a public version of its First Amended Complaint

in this case in which it publicly described Arm's October 22, 2024 notice of material breach, stating

that "Arm sent Qualcomm a notice of material breach purporting to have the right to terminate

Qualcomm's own license," described the contents of the letter, and publicly filed a redacted copy

of the notice of material breach. A redacted copy of Arm's October 22, 2024 notice of material breach was and remains accessible to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146. D.I. 39 at 2, 8-9, 32-35; D.I. 39-1.

On January 22, 2025, Qualcomm wrote to Arm and stated that the parties' correspondence on this issue was not confidential, and that Qualcomm was "required by law" to publicly disclose the correspondence in its filings with the U.S. Securities & Exchange Commission, and that "in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice":

> "Even if that [January 8, 2025] letter [withdrawing the October 22, 2024 notice of material breach] were itself 'Confidential'—and it is not—Qualcomm is nevertheless required by law to disclose the fact that Arm has withdrawn that notice and indicated that it has no current plan to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. For instance, in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice and Arm's threats to terminate the Qualcomm ALA. Qualcomm intends to update those disclosures in light of Arm's withdrawal of that notice and statement that it does not currently intend to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. We presume you have no objection to this legally required update."

> 1/22/2025 Qualcomm Ltr. to Arm (QCVARM_0847182).

On February 5, 2025 Qualcomm publicly described Arm's January 8, 2025 letter in its Quarterly Report:

> On January 8, 2025, Arm notified us that it was withdrawing its October 22, 2024 notice of breach and indicated that it has no current plan to terminate the Qualcomm ALA, while reserving its rights pending the outcome of the ongoing litigation.

> Qualcomm 10-Q Quarterly Report (February 5, 2025). Cristiano Amon also publicly described Arm's communication in its public investor conference call on February 5, 2025.

### <u>Arm's Actions Did Not Interfere With Any Of Qualcomm's Business Opportunities With</u> █████████

The business opportunities Qualcomm alleges it lost are not due to Arm's actions, and Arm's conduct did not amount to intentional or negligent interference with Qualcomm's business

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

relationships with ███████████████████.

Regarding ████, Qualcomm contends that "[a]fter the Breach Letter was published, ████ delayed finalizing a termsheet for an agreement under which Qualcomm would design that custom chip and requested inclusion of language related to Qualcomm's chip development capabilities. [████] has stated to Qualcomm that before it finalizes that termsheet, it must first understand the implications of termination of the QC ALA on Qualcomm's ability to deliver the custom chips in question."  SAC ¶ 159.  Qualcomm has failed to identify the termsheet in question let alone any documents relevant to its theory that its business relationship with ████ was harmed by Arm.  Further, any delay in the finalization of that termsheet is due to factors other than Arm's actions, including Qualcomm's own business practices.

Regarding ████████████, Qualcomm contends that "[████████] had informed Qualcomm that it was designing a new mobile phone that would rely on Qualcomm's innovative Snapdragon® 8-Elite SoC.  After learning that Arm was threatening to terminate the QC ALA, however, a senior executive of [████████] informed a senior Qualcomm executive that the customer's legal and intellectual-property teams would need to confer with their counterparts at Qualcomm. [████████] has also insisted on Qualcomm's providing additional reassurances before it will extend its existing business relationship with Qualcomm."  SAC ¶ 158.  Qualcomm has failed to identify any lost opportunity with ████████ and any loss of an "exten[sion]" to its relationship with ████████ is due to factors other than Arm's actions, including Qualcomm's own business practices.

## Qualcomm's Claims Are Barred By *Noerr-Pennington* And California's Litigation Privilege

As a matter of law, Arm's alleged conduct is related to litigation and therefore not actionable.  *Noerr-Pennington* immunizes parties from liability "for engaging in conduct (including litigation) aimed at influencing decision making by the government."  *Avaya Inc., RP v. Telecom*

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*Labs, Inc.*, 838 F.3d 354, 413 (3d Cir. 2016). The *Noerr-Pennington* doctrine protects "conduct incidental to the prosecution of [a] suit," *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934-35 (9th Cir. 2006), including "demand letter[s] or cease-and-desist letter[s]." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015); *Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 655 F. App'x 103, 111 (3d Cir. 2016) ("cease-and-desist letter" "protected under *Noerr-Pennington*"); *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, C.A. No. 07-127-LPS, 2011 WL 678707, at *2 (D. Del. Feb. 18, 2011) (similar).

Courts also apply *Noerr-Pennington* immunity when plaintiffs bring tortious interference and other claims based on purported communications about litigation to customers. *See, e.g.*, *Evanger's Dog & Cat Food Co. v. Env't Democracy Project*, No. CV 21-08489, 2022 WL 180205, at *1, *4 (C.D. Cal. Jan. 20, 2022) (dismissing claims arising out of letter to plaintiff's customer); *Fitbit, Inc. v. Laguna 2, LLC*, No. 17-cv-00079- EMC, 2018 WL 306724, at *10 (N.D. Cal. Jan. 5, 2018) (claims based on contacting customers regarding pre-suit demand letter barred by *Noerr-Pennington*).

California's litigation privilege also protects Arm's letter (and the alleged publicizing of that letter) from Qualcomm's tortious interference claims. The "litigation privilege is … absolute in nature," *Silberg v. Anderson*, 50 Cal. 3d 205, 215 (1990), and protects not only statements made in litigation, but also "out-of-court statements 'to nonparties who have a substantial interest in the outcome of the pending litigation,'" *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1040-41 (S.D. Cal. Aug. 29, 2011); *see also Cargill v. Progressive Dairy Sols., Inc.*, No. CV-F-07-0349-LJO-SMS, 2008 WL 2235354, at *6 (E.D. Cal. May 29, 2008) ("news release" "inform[ing] the recipients of the … claims asserted" protected by the privilege); *Designing Health, Inc. v. Erasmus*, No. CV-98-4758 LGB (CWx), 2001 WL 36239748, at *3-4 (C.D. Cal. Apr. 24, 2001) (similar). Arm's letter was made during litigation

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

with Qualcomm regarding Arm's claims. Such publications are protected under California law. *Cargill*, 2008 WL 2235354, at *6.

### Qualcomm Has Not Identified Any Independently Wrongful Conduct

To plead intentional interference with prospective economic advantage, Qualcomm must allege "intentionally wrongful act(s) designed to disrupt the relationship." *See Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.,* 2 Cal. 5th 505, 512 (2017). This element requires "independently wrongful" conduct, defined as conduct "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.,* 19 Cal. 4th 1134, 1159 (2003). Even if a plaintiff alleges some sort of interference with economic advantage, courts dismiss intentional interference claims where the plaintiff still does not allege conduct "wrongful by some legal measure," *Golden v. Sound Inpatient Physicians Med. Grp., Inc.,* 93 F. Supp. 3d 1171, 1178 (E.D. Cal. 2015), or that the conduct "violated any other law, which is a necessary element of intentional interference with economic relations," *Republican Nat'l Comm. v. Google LLC,* 2024 WL 3595538, at *1 (E.D. Cal. July 31, 2024).

Qualcomm has already conceded that breach-of-contract does *not* satisfy the independently-wrongful-acts requirement. D.I. 64 at 13; *see Block v. eBay, Inc.,* 2012 WL 1601471, at *5 (N.D. Cal. May 7, 2012). Allegations that Arm leaked the breach letter or made statements to customers, SAC ¶ 192, likewise do not show violations of "other law," particularly where Qualcomm fails to plead UCL claims and where that conduct is protected by *Noerr-Pennington*. Qualcomm's negligent tortious interference claim fails for the same reason: Arm has "failed to allege facts showing that defendants engaged in an act that is wrongful apart from the interference itself." *See TriCoast Builders, Inc. v. Lakeview Loan Servicing, LLC*, 2021 WL 248316, at *5 (Cal. Ct. App. Jan. 26, 2021) (quotations omitted).

### Qualcomm Has Not Established That Arm Owed Any Duties To Qualcomm

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

With respect to Qualcomm's negligent interference claim, Arm did not owe Qualcomm a duty of care. California law imposes a duty of care via contract only if the contract itself contains that duty. *See*, *e.g.*, *Golick v. State of California*, 82 Cal. App. 5th 1127, 1150 (2022) (no duty where plaintiffs did not show contract included "duty to protect"); *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 423 (2022) (no duty where contract did not contain "express promise"). Even "[t]he implied covenant of good faith and fair dealing is a contractual relationship and does not give rise to an independent duty of care." *Ragland v. U.S. Bank*, 209 Cal. App. 4th 182, 206 (2012).

Qualcomm also cannot establish a duty of care where Qualcomm and Arm are allegedly competitors. Qualcomm repeatedly alleges that Qualcomm and Arm have "competing CPU designs," and that Arm is seeking to "compete … with Qualcomm." SAC ¶¶ 1, 5; *see also id.* ¶¶ 35, 52, 70–74, 160, 165. But "[t]here is no duty of care between competitors under California law." *Singman v. NBA Props., Inc*, 2014 WL 7892049, at *5 (C.D. Cal. Jan. 17, 2014); *Stolz v. Wong Commc'ns Ltd. P'ship*, 25 Cal. App. 4th 1811, 1825 (1994).

### Qualcomm's Claims Are Barred By Unclean Hands

Qualcomm's allegations regarding Arm's interference with Qualcomm's customer relationships is also barred by the equitable doctrine of unclean hands. "One who comes into equity must come with clean hands and keep those hands clean throughout the pendency of the litigation even to the time of ultimate disposition by an appellate court." *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 310 (D. Del. 2005) (quoting *Gaudiosi v. Mellon*, 269 F.2d 873, 881 (3d Cir. 1959)). "The clean hands maxim gives broad discretion to the court's equity power in refusing to aid an unclean hands litigant." *Id.* "Any willful act, which can rightfully be said to transgress equitable standards, is sufficient." *Id.* at 311.

"The equitable doctrine of unclean hands applies when a party seeking relief has committed

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Kars 4 Kids Inc. v. Am. Can!*, 98 F.4th 436, 449 (3d Cir. 2024) (quoting *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001)). "The misconduct must be rooted in 'fraud, unconscionable conduct, or bad faith ... that injures the other party and affects the balance of equities.'" *Id.* at 450 (quoting *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 n.12 (3d Cir. 1999)).

Courts have found unclean hands where the plaintiff engaged in the same (inequitable) conduct it accuses a defendant of. *See, e.g.*, *Emco, Inc. v. Obst*, No. CV03-6432-R (RZX), 2004 WL 1737355, at *4–6 (C.D. Cal. May 7, 2004) (in a Lanham Act case where plaintiff accused defendant of falsely advertising that its blades were manufactured in the United States, the court found that defendant had proven its affirmative defense of unclean hands as a matter of law because plaintiff's "Americut" blades—which plaintiff promoted with classic American symbols such as the American flag and Statue of Liberty—were similarly manufactured overseas); *Haagen-Dazs, Inc. v. Frusen Gladje Ltd.*, 493 F. Supp. 73, 75–76 (S.D.N.Y. 1980) (denying plaintiff's motion for a preliminary injunction due to plaintiff's unclean hands in accusing defendant of falsely using Swedish motifs to suggest that its products were not of domestic origin, when plaintiff had done similarly). Qualcomm published Arm's October 2024 letter just days after Arm did. Further, on March 25, 2025, Bloomberg published a story concerning Qualcomm's non-public complaints of anticompetitive behavior at the European Commission, US Federal Trade Commission, and Korea Fair Trade Commission. Josh Sisco & Ian King, *Qualcomm Takes Legal Fight with Arm to Global Antitrust Agencies*, Bloomberg News (Mar. 25, 2025, 3:55 PM CDT), https://www.bloomberg.com/news/articles/2025-03-25/qualcomm-takes-legal-fight-with-arm-to-global-antitrust-agencies. Qualcomm's publication of Arm's letter, and non-public litigation materials to Bloomberg bar its claims against Arm under the doctrine of unclean hands.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8 (June 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further responds that Qualcomm's witness Mr. Cristiano Amon, Qualcomm's President and Chief Executive Officer and corporate designee on harm resulting from Arm's alleged tortious interference (*see, e.g.*, Arm's Fed. R. Civ. P. 30(b)(6) Topic No. 56), testified that Qualcomm's allegations of harm resulting from the October 22 Notice and Bloomberg article are based on Arm's allegations in the lawsuit.  For example, Mr. Amon testified as follows:

> Q. Is it your view that Qualcomm suffered harm because its customers were informed that Arm alleged that Qualcomm had breached its ALA?
>
> A. Yes.
>
> Q. Okay. And is it your view that Qualcomm suffered harm because the public was informed that Arm alleged that Qualcomm had breached its ALA?
>
> A. Yes.
>
> Q. Is it your view that Qualcomm suffered harm because customers were informed that Arm believed it could terminate Qualcomm's ALA due to Qualcomm's alleged breach of that?
>
> A. Yes.
>
> Q. And is it your view that view that [*sic*] Qualcomm suffered harm because the public was informed that Arm believed it could terminate Qualcomm's ALA due to Qualcomm's alleged breach of that agreement?
>
> A. Yes. And let's specify public stakeholders[,] shareholders[,] and employees and all of that.

Amon Dep. Tr. (Rough) at 161:15-162:19; *see also id.* at 146:13-147:7. Mr. Amon's testimony confirms that Qualcomm's allegations of harm resulting from the October 22 Notice and Bloomberg article relate squarely to the litigation and Arm's litigation-related conduct.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Accordingly, Qualcomm's claims for tortious interference are barred by *Noerr-Pennington* and California's Litigation Privilege.

Regarding ██████ Arm further responds that Qualcomm still has failed to identify any harm to its business relationship with ██████, let along any harm that was caused by Arm.  In particular, the material business terms agreed between Qualcomm and ██████ were unaffected by the October 22 Notice. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ ████████████████████████

Nor did the October 22 Notice and Bloomberg article materially delay Qualcomm's business dealings with ██████ . ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████     ████████████████████

████████████████████████     ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



Arm's dealings with ████ also did not impact Qualcomm's dealings. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████

Regarding ██████, Arm further responds that Qualcomm still has failed to identify any harm to its business relationship with ██████ that was caused by Arm. Qualcomm's business relationship with ██████ had instead become increasingly strained in the years preceding the October 22 Notice because of Qualcomm's decision to scale back its use of ████████████ ████████████████████████████████████. For example, Mr. Amon wrote in June 2024 that Qualcomm was "████████████████████████████████ ████████████████████████████████████████████ ██████ QCVARM_1069945. Mr. Amon testified that there was "PTSD on both sides" of the Qualcomm and ████████████████████████. *See, e.g.*, Amon Dep. Tr. (Rough) at 264:2-275:25. Predating the October 22 Notice, Mr. Amon had come to believe that a ███████████████████████████████████████████████████ *See, e.g.*, *id.* at 266:2-8. Any harm to Qualcomm's business relationship with ██████ was Qualcomm's own doing and unrelated to any actions by Arm.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: QCVARM_0865022, QCVARM_0864924, QCVARM_0864933, QCVARM_0864833, QCVARM_0865420, QCVARM_0865236, QCVARM_0865430, QCARM_3425702, QCARM_3534037, QCVARM_0856270, QCVARM_0856888, QCVARM_1069082, QCVARM_1069106, QCARM_3533982, QCARM_7484460, QCARM_7484463, QCVARM_0467694, QCVARM_1069945, QCVARM_1070005, QCVARM_1118617, QCARM_7515834, QCVARM_0464076, QCVARM_0464128, QCVARM_0464495, QCVARM_0465604, QCVARM_0600730, QCVARM_0601923, QCVARM_0608314, QCVARM_1068645, QCVARM_1118760, QCVARM_1119347, QCVARM_0848786.

Arm further incorporates by reference the testimony of the following witnesses: Pavankumar Mulabagal, Cristiano Amon, and Spencer Collins, including the documents used at each of those depositions..

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8 (September 5, 2025):

Arm incorporates by reference its previous responses to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further incorporates by reference the forthcoming expert reports and testimony of Thomas Britven, Timothy Simcoe, and Steven Richards, as well as documents and testimony cited therein.

**INTERROGATORY NO. 9:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that Your conduct as identified in Paragraphs 204-212 of the Second Amended Complaint does not constitute a violation of unfair competition law under the California Unfair Competition Law. Your response should include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 9 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, and unduly burdensome. Arm objects to this Interrogatory to the extent it calls for a legal conclusion. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Qualcomm asserts that Arm violated the California Unfair Competition Law ("UCL") by allegedly (1) withholding deliverables under the Qualcomm ALA and TLA; (2) misrepresenting to Qualcomm that it was not withholding deliverables; (3) "wrongfully" asserting that it has the right to terminate the QC ALA; (4) refusing to negotiate licensing terms with Qualcomm in good faith; (5) threatening or attempting to cut off Qualcomm's access to Arm's ISA; (6) leaking its October 22, 2024 letter to the media; (7) interfering or attempting to interfere with Qualcomm's customer relationships; and (8) making misleading statements to Qualcomm's customers to pressure them not to acquire products from Qualcomm. SAC ¶¶ 206–07. None of this conduct constitutes "a violation of unfair competition law" under the UCL.

To bring a claim under the UCL, Qualcomm must show that Arm engages in an "unfair, unlawful, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Qualcomm has

indicated its allegations implicate the "unfair" and "unlawful" prongs.  Arm's conduct is not unfair or unlawful.

There are two tests courts use to determine whether conduct is "unfair" under the UCL. First, when a business competitor brings a UCL claim, California courts apply a "tethering test" that examines whether the conduct "[1] threatens an incipient violation of an antitrust law, or [2] violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [3] otherwise significantly threatens or harms competition."  *Cel-Tech Comm'cns, Inc. v. L.A. Cell. Tel. Co.,* 20 Cal.4th 163, 187 (1999).  The claim must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Zhejiang Yuanzheng Auto*, 2023 WL 4317189, at *12 (citing *Cel-Tech Comm'cns, Inc. v. L.A. Cell. Tel. Co.,* 20 Cal.4th 163, 186–87 (1999)).  A party's conduct "violates the policy or spirit of the antitrust laws" where "the effect of the conduct is comparable to or the same as a violation of the antitrust laws, [] or it otherwise significantly threatens or harms competition."  *People's Choice Wireless*, 131 Cal. App. 4th at 662 (citing *Cel-Tech*, 20 Cal. 4th at 187).  Second, in consumer actions, California courts apply a "balancing test" which "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Id.* (simplified).  Finally, the "unlawful" prong requires Qualcomm to prove that Arm violated a federal, state, or local law.  *See Olson v. World Fin. Grp. Ins. Agency, LLC*, 2024 WL 4668515, at *8 (N.D. Cal. Nov. 4, 2024). Arm's alleged conduct does not violate the UCL under either the "unfair" prong—including under both the tethering and balancing tests—or "unlawful" prong.

### Arm's Alleged Conduct Does Not Violate the UCL Under The Tethering Test

As a threshold matter, Qualcomm's allegations about Arm's allegedly unfair conduct suffer from two fatal flaws.  For one, Qualcomm "does not identify an antitrust law or a policy or spirit of such a law."  *Roberson v. Pocker*, 2024 WL 2984026, at *10 (C.D. Cal. Apr. 3, 2024) (granting

dismissal); *see also Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002) (affirming dismissal where "complaint allege[d] that Albertson's acted with a motive to secure an advantage over competitors" but did "not state a theory of unfair practice based on violation of specific anti-trust statutes or policies of anti-trust legislation"). Qualcomm cannot make the "unusual" showing that Arm somehow "violate[d] the 'policy and spirit' of the antitrust laws without violating the actual laws themselves." *Synopsys, Inc. v. ATopTech, Inc.,* 2015 WL 4719048, at *10 (N.D. Cal. Aug. 7, 2015). For another, Qualcomm fails to identify any relevant market in which Arm's conduct allegedly threatens competition and has affirmatively represented that it "does not intend to offer a market definition to support its" UCL claim. 4/9/25 Ltr. From C. Nyardy at 4. But "without a definition of [the] market there is no way to measure [Arm's] ability to lessen or destroy competition." *Ohio v. Am. Express*, 585 U.S. 529, 543 (2018); *Racek v. Rady Children's Hosp. of San Diego*, 2012 WL 2947881, *6 (Cal. App. July 20, 2012); *Sun Microsystems, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 992 (N.D. Cal. 2000); *Vox Network Sols., Inc. v. Gage Tech., Inc.*, 2025 WL 929939, *5 (N.D. Cal. Mar. 27, 2025) (dismissing claim under UCL's "unfair" prong, where plaintiff failed to identify relevant market); *Reilly v. Apple Inc.*, 578 F.Supp.3d 1098, 1106-1111 (N.D. Cal. 2022) (same where plaintiff alleged only implausible market). Qualcomm's allegations thus beg the question: "Competition" with what products, or with whom?

Although the legal inquiry should end there, Arm's conduct nevertheless does not satisfy any of the respective tests under the UCL or constitute a violation of that law. Qualcomm's continued refusal to identify the antitrust laws implicated by Arm's conduct or the relevant market(s) in which Arm's conduct allegedly threatens competition makes it impossible for Arm to provide the "complete factual and legal bases" supporting Arm's contention that its "conduct as identified in Paragraphs 204-212 of the Second Amended Complaint does not constitute a violation of unfair competition law under the California Unfair Competition Law." Arm's analysis is thus

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

limited to Qualcomm's present allegations and representations, and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory to the extent Qualcomm clarifies its claim.

Qualcomm alleges that Arm acted unfairly by "withholding deliverables" it must provide ██████████████████████████ "misrepresenting to Qualcomm that it was not withholding deliverables," "asserting that it has the right to terminate the QC ALA without any basis in the QC ALA for those assertions," and "refusing to negotiate license terms with Qualcomm in good faith." SAC ¶ 206.  These allegations assert that Arm breached its contracts with Qualcomm, but corporate plaintiffs may not bootstrap contract claims into UCL violations. *See, e.g.*, *Martin Saturn of Ontario, Inc. v. Suburu of Am. Inc.*, 2023 WL 9417499, *8 (C.D. Cal. July 21, 2023); *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012); *Scripps Clinic v. Superior Court*, 108 Cal.App.4th 917, 940 (2003) (concluding harm was contractual, but not a UCL violation); *Mazal Grp. LLC v. Espana*, 2017 WL 6001721, at *4 (C.D. Cal. Dec. 5, 2017) (dismissing UCL claim when plaintiff did not include any specific allegations regarding the unfair prong and simply incorporated breach of contract allegations)).  As Qualcomm itself has argued, it "makes little sense to hold that contract disputes between 'the world's most sophisticated companies,' [*Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 997 (9th Cir. 2020)], could give rise to an independent UCL claim."  Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 48 (Apr. 26, 2024) (citing *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008)).  Qualcomm's assertion that Arm refused to negotiate license terms with Qualcomm in good faith is barred by the statute of limitations.

To the extent Qualcomm alleges that any of Arm's conduct was aimed at "threatening or attempting to cut off Qualcomm's access to the ubiquitous Arm ISA," SAC ¶ 207, such conduct still does not constitute a violation of the UCL.  As Qualcomm itself has argued, "an antitrust duty

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

to deal with" or license others is "far outside the mainstream of antitrust law." Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 30 (Apr. 26, 2024); *see also Verizon Comm'cns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407-411 (2004) ("As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)); *FTC v. Qualcomm*, 969 F.3d 974 (9th Cir. 2020) ("As the Supreme Court has repeatedly emphasized, there is no duty to deal under the terms and conditions preferred by [a competitor's] rivals."); *Simon and Simon, PC v. Align Tech., Inc.*, 2020 WL 1975139, *3-6 (D. Del. Apr. 24, 2020). It is completely beyond the reach of antitrust law here given Qualcomm has disclaimed any argument that Arm is attempting to exercise monopoly power. 4/28/25 Ltr. From C. Nyardy at 1 ("As the … SAC make[s] clear, Qualcomm is not asserting a claim for monopolization under Section 2 of the Sherman Act; it is asserting a claim under the UCL's 'unfair' prong."); SAC ¶ 207 (striking monopoly allegation). "[I]n the absence of any purpose to create or maintain a monopoly," antitrust law "does not restrict the long-recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *United States v. Colgate & Co.*, 250 U.S. 300, 308 (1919); *Trinko*, 540 U.S. at 408. For that reason, California courts have consistently held a purported refusal to deal "is neither unlawful nor unfair" as a matter of law for purposes of the UCL. *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 367 (2001); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 254; *Beverage v. Apple Inc.*, 101 Cal. App. 5th 749-50, 753-56 (2024); *People's Choice Wireless, Inc. v. Verizon Wireless,* 131 Cal. App. 4th 656, 668 (2005) (explaining that though it is true an antitrust violation is not necessary under the UCL, "[t]he allegations here are simply too far removed from cognizable antitrust evils to warrant intervention by a California court").

Also, to the extent Qualcomm's allegation that Arm "refus[ed] to negotiate license terms with Qualcomm in good faith," SAC ¶ 206, refers to the claim that Arm violated the implied covenant of good faith and fair dealing by allegedly refusing to negotiate a license to ███ of the Arm ISA, both the breach of contract and "refusal to deal" principles explained above preclude UCL liability premised on such conduct.

Next, Arm did not violate the UCL by allegedly "interfering or attempting to interfere with Qualcomm's relationships with Qualcomm's current and prospective customers," "leaking the Breach letter to the media," and "making misleading statements to Qualcomm's customers to pressure them not to acquire products from Qualcomm." SAC ¶¶ 206–07. The policy and spirit behind the antitrust laws protect against harm "to *competition itself*, not merely to competitors." *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 996 (9th Cir. 2020). In its recent filings, Qualcomm indicated its view for the first time that Arm acted unfairly in order to "gain market share as a chip designer." Qualcomm nowhere alleges or explains how this or any other alleged conduct broadly undermines a competitive market or consumers, or harms any alleged competitor other than Qualcomm. And in any event, Arm has virtually no market share today in a so-called "chip design market."

Further, because Arm's statements in Arm's October 22, 2024 letter are true, they cannot serve as a basis for "unfair" or anticompetitive conduct. *See Digene Corp. v. Third Wave Techs., Inc.*, 536 F. Supp. 2d 996, 1006 (W.D. Wis. 2008), aff'd, 323 F. App'x 902 (Fed. Cir. 2009); *Gen. Commc'ns Eng'g, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 421 F. Supp. 274, 290 (N.D. Cal. 1976) (holding that "salesman puff" does not violate antitrust laws). The antitrust laws are generally unconcerned with the content of competitive speech, even critical or derogatory speech. *See Schachar v. Am. Acad. Of Ophthalmology*, 870 F.2d 397, 399 (7th Cir. 1989) ("Antitrust law does not compel your competitor to praise your product or sponsor your work. To require

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

cooperation or friendliness among rivals is to undercut the intellectual foundations of antitrust law."); *cf. Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 937 F. Supp. 435 ("Antitrust laws do not exist to stifle speech … Thus, any stigma that MSL has suffered because of ABA's not listing MSL as an accredited school does not provide the necessary offensive *conduct* for antitrust liability.").

### Arm's Alleged Conduct Does Not Violate the UCL Under The Balancing Test

The balancing test asks "whether the challenged business practice is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 1197, 1226 (N.D. Cal. 2014). Qualcomm does not properly qualify as a consumer such that the consumer balancing test should apply. Even if Qualcomm could constitute a consumer under the test, for the same reasons outlined above, Arm's business practices are pro-competitive, foster innovation, and benefit consumers, meaning they are not immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of Arm's conduct far outweighs any potential harm to Qualcomm. *See Drum v. San Fernando Valley Bar Association.*, 182 Cal. App. 4th 247, 257 (2010).

Arm's business model is inherently pro-competitive and beneficial to consumers. Arm's decision to license its ISA designs enables business partners to innovate, meet consumer demands across a diverse range of applications, and provide differentiated products. That, in turn, increases consumer choice and competition—including against Arm's own CPUs—resulting in lower consumer prices. And, Arm's licenses for its market-leading, ready-to-use CPUs offer partners an opportunity to bypass the enormous costs associated with CPU development and instead reallocate those resources towards innovating their products in other ways. Arm's partners can thereby speed up their time-to-market and fill more areas of consumer need, all while passing along their savings

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

to consumers.  Arm's practices are "reasonable and consistent with current industry practice," and "reduc[e] 'transaction costs and complexities'" for consumers.  Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 47–48 (Apr. 26, 2024) (citing *FTC v. Qualcomm*, 969 F.3d 974, 996 n.17, 996 (9th Cir. 2020)).  Any alleged business-related harms Qualcomm may have suffered do not outweigh the pro-competitive benefits and practical utility of Arm's business practices.

### Arm's Alleged Conduct Does Not Violate the UCL Under The Unlawful Prong

To succeed under the "unlawful" prong of the UCL, Qualcomm must allege "a violation of another law [as a] predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007); *Gopher Media LLC v. Melone*, 2023 WL 8790266, at *15 (Dec. 19, 2023 S.D. Cal) ("To prevail on a claim under the unlawful prong of the [UCL], the plaintiff must show that a challenged [conduct] violates any federal or California statute or regulation." (citation omitted)).  Qualcomm alleges that "Arm's conduct is … unlawful because it violates California common law, including state law prohibiting intentional and negligent interference with prospective economic advantage."  SAC ¶ 209.  But a common law claim cannot form the predicate for a UCL claim.  *See Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1044 (9th Cir. 2010), ("[A] common law violation such as breach of contract is insufficient … Because [plaintiff] does not go beyond alleging a violation of common law, he fails to state a claim under the unlawful prong of § 17200."); *Mazal Group, LLC v. Espana*, 2017 WL 6001721, at *4 (C.D. Cal. Dec. 4, 2017) (granting MTD on UCL claim when plaintiff did not go beyond alleging a violation of common law).  And, in any event, Qualcomm's argument is circular.  Qualcomm contends Arm's conduct is unlawful because it tortiously interfered with Qualcomm's economic advantage, SAC ¶ 209, and simultaneously contends Arm's conduct is wrongful for purposes of that tort because the conduct violates the UCL.  Such circular reasoning

cannot satisfy the elements of either claim.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Qualcomm claims that Arm acted "unfair[ly]" by sending Qualcomm a letter on October 22, 2024 to notify Qualcomm that it was in material breach of the Qualcomm ALA.  SAC ¶ 206.  But, two years prior, Qualcomm itself sent threatening letters to Arm with baseless claims that Arm breached the ALA.  On November 3, 2022 and December 5, 2022, Qualcomm sent notice letters to Arm alleging that, "[b]y refusing to provide the OOB, ARM has failed to comply with its



Arm_01241585; ARM_00025401.  Arm responded on December 6, 2022, stating that "Arm strongly disagrees with Qualcomm's claim that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮ is at issue or that provision of the OOB ▮▮▮▮▮▮▮▮▮▮ and that "Qualcomm's letter is a transparent and malicious effort to transform a debate about Arm's support obligations under

Arm_01241565.  Arm's legitimate defense of its rights under the ALA two years after Qualcomm itself began weaponizing the ALA to coerce Arm cannot serve as a basis for a UCL claim.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARMQC_00001136, ARM_01259705, ARMQC_00001136, QCVARM_1068459, QCVARM_0462995, QCVARM_0528826.

Arm further incorporates by reference the testimony of the following witnesses: Lynn

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

Couillard, Martin Weidmann, Gerard Williams, Spencer Collins, Michael Williams, William Abbey, Mark Dragicevich, Karthik Shivashankar, Cristiano Amon, Jean-Francois Vidon, Paul Williamson, Richard Meacham, Ziad Asghar, Peter Greenhalgh, Jannik Nelson, Durga Malladi, and Manju Varma, including the documents used at each of those depositions. Arm also incorporates by reference its responses to Interrogatory Nos. 1–8, and 10–12, including the testimony and documents cited and incorporated therein (and any supplements thereto). Additionally, Arm incorporates by reference its Motion to Dismiss, D.I. 19, 28, Arm's Motion to Dismiss Qualcomm's First Amended Complaint, D.I. 48, 72, and Arm's Motion to Dismiss Qualcomm's Second Amended Complaint, D.I. 232, 233, 305.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9 (September 5, 2025):

Arm incorporates by reference its previous responses to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further incorporates by reference the forthcoming expert reports and testimony of Dr. Michael Brogioli, Timothy Simcoe, and Steven Richards as well as documents and testimony cited therein.

## INTERROGATORY NO. 10:

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not breach the Qualcomm ALA. Your response should include, but is not limited to, the complete factual and legal bases for any contention that you did not withhold ███ ████████████████ or breach the implied covenant of good faith and fair dealing, and should include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

## RESPONSE TO INTERROGATORY NO. 10 (JUNE 16, 2025):

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the

needs of the case, including, but not limited to, to the extent it seeks "the complete factual and legal bases," without limitation. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this Interrogatory to the extent it calls for a legal conclusion.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

### Qualcomm's Allegations

Qualcomm alleges in its Second Amended Complaint that Arm breached ████ of the Qualcomm ALA by allegedly withholding OOB and ACK patches. Second Amended Complaint ¶¶ 78-94. Qualcomm alleges in its Second Amended Complaint that Arm breached an implied covenant of good faith and fair dealing under the ALA by "with[olding] deliverables that it was required to provide Qualcomm under the QC ALA" and "fail[ing] to negotiate an extension to the QC ALA that would cover future version of the architecture, including ████ Second Amended Complaint ¶ 184.

### Arm Did Not Breach The Qualcomm ALA Based On The Alleged Withholding Of ACK And OOB

For Qualcomm's allegations that Arm breached the Qualcomm ALA based on its alleged withholding of ACK and OOB, including based on an implied covenant of good faith and fair dealing, Arm incorporates by reference its response to Interrogatory No. 1.

Further, Qualcomm's implied covenant allegation is duplicative of Qualcomm's Section █ breach claim and fails for the same reasons. *See, e.g.*, *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 439 (3d Cir. 1993) (holding that Plaintiff "cannot assert a claim for breach of implied

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

covenants that is based on exactly the same acts which are said to be in breach of express covenants."); *Cision US, Inc. v. CapTech Ventures, Inc.*, No. CV 24-00063-MN-SRF, 2025 WL 1094318, at *5 (D. Del. Apr. 11, 2025) (dismissing Plaintiff's "claim for breach of the implied covenant of good faith and fair dealing … as impermissibly duplicative of its breach of contract and warranty claims.").

### Arm Did Not Breach Any Implied Covenant Of Good Faith And Fair Dealing For The Qualcomm ALA By Allegedly Failing To Negotiate A License To v10

Qualcomm alleges in its Second Amended Complaint that Arm breached an implied covenant of good faith and fair dealing under the ALA by "fail[ing] to negotiate an extension to the QC ALA that would cover future version of the architecture, including v10."  Second Amended Complaint ¶ 184.

That is not true.  On June 4, 2025, Will Abbey, Arm's Chief Commercial Officer, wrote to Qualcomm ████████████████████████████████████████████████████ ████████████████████████████████████████████:

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

June 4, 2025 Will Abbey Letter to Roawen Chen.  On June 9, Qualcomm responded, but did not address Mr. Abbey's request for a business meeting.  Further, on June 13, 2025, Arm's Executive Vice President and Chief Legal Officer Spencer Collins sent Qualcomm another letter ████████ ████████████████████████████████████████:

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

███

\* \* \*

███

June 13, 2025 Spencer Collins Letter to Ann Chaplin.

**Arm Is Not Required To Negotiate The Terms And Conditions Of A ███ License Under The Qualcomm ALA Because Qualcomm Did ███ In**

Qualcomm, in any event, does not allege that Arm breached ███ of the Qualcomm ALA. ███ of the Qualcomm ALA states that ███ ███ ███ ███ ███ ███ Qualcomm does not accuse Arm of breaching of this Section. Any implied covenant claim based on ███ thus improperly "seeks to impose" obligations "beyond those to which the parties actually agreed." *Lamke v. Sunstate Equipment Co., LLC*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004).

As an initial matter Arm had no obligation to negotiate an ███ based on Qualcomm's May 2020 email because ███, and there were no ███ ███ In ███ ███ ███ . In ███ Qualcomm ███ ███

ARM_00005340.  Arm responded ███████████████████████ *Id.*  Qualcomm responded, stating that "███████████████████████████████████████████████ ███████████████████████████████████████████" and sought to amend the ALA.  *Id.*

On ██████████ Lynn Couillard from Arm wrote to Qualcomm, stating that ███████ ████████████████████████████████████████████████████████████ ███████. ████████████████████████ ███████████████████ ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████":

From: Lynn Couillard <Lynn.Couillard@arm.com>
Sent: ████████████████ 9:49 AM
To: Brett Bettesworth <betteswb@qti.qualcomm.com>; Rajiv Gupta <grajiv@qti.qualcomm.com>
Cc: Todd Lepinski <Todd.Lepinski@arm.com>
Subject: [EXT] Re: ██████ ████████████████

Hello Brett and Rajiv, (+Todd)

████████████████████████████████████████████████
██████████████████████████████████

Note that at the time of the ██ architecture closure, we also included ███████ which at the time had no definition, and eventually became ██ ████████████████████████████████████

Please let us know if you'd like to discuss, we can set something up for next week.

Thanks
Lynn

ARM_00005340.  Mr. Bettesworth responded five days later.  He did not dispute any of Ms. Couillard's statements, including that ████████████████████████████ ████████████████████████████████████," and that █████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████:

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



*Id.*

   Arm and Qualcomm never reached any mutual agreement over ███████████████████ █████████████████████████████████.  And to the extent any agreement was reached, it is ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ███████████████████ ██████████████████████████████████████████" and Qualcomm did not dispute any of Ms. Couillard's statements, including that ██████████████████████ ████████████████████████████████████████████████," and that ███ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████ *Id.*  Qualcomm did not follow up on that correspondence, and did not make any effort to follow up on its ████████ correspondence until five years later, as discussed above.  Instead, ████████████████████████████████████ ███████████████████████████████████████

   **Arm Is Not Required To Negotiate The Terms And Conditions Of A ██████ License ████ ████████████ Because Qualcomm's ████████ Emails Were ████████**

Arm was not obligated to ██████████████████████████████

████████████████████████████████████████████████████████

████████████

         ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████. Qualcomm did not send Arm follow-up

correspondence ████████████████████████████████ and did not

correspond with Arm again about its purported "██████ for another five years.  But even if

████████████████████████, its assertion that Arm breached the implied covenant would

be barred by the applicable statute of limitations.

### Arm Did Not Breach The Qualcomm ALA Based On The Alleged Withholding Of ██████████████

Qualcomm does not allege that Arm breached the Qualcomm ALA based on withholding

████████████ in its Second Amended Complaint or in its response to Arm's Interrogatory

2, which calls for "the complete legal and factual basis for [Qualcomm's] contention that Arm failed

to meet any of its obligations under the Qualcomm ALA."  Second Amended Complaint;

Qualcomm's March 10, 2025 Response to Arm's Interrogatory No. 2.  Nor did Qualcomm identify

any alleged withholding of ████████████ in its November 3, 2022 letter to Arm.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

ARM_01423632 at -634.  Qualcomm states in its response to Arm Interrogatory No. 13 that "Arm violated the terms of the Qualcomm ALA by failing to … provide ███████████████████████ but does not specify the support that was allegedly withheld or identify any term of the ALA that Arm allegedly breached.

To the extent Qualcomm's statements can be understood, Arm did not breach the Qualcomm ALA based on any alleged withholding of ████████████████████ Qualcomm states in its response to Arm Interrogatory No. 13 that "██████████████████████ ███████████████████████." However, Arm ████████████████████████ ████████████████████████████████████, and Arm delivered all subsequent quarterly ACK releases to Qualcomm.  *See*, *e.g.*, █████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████████ Qualcomm's unexplained statement that Arm allegedly withheld unspecified ███████████████ allegedly constitutes a breach of unspecified "terms of the Qualcomm ALA" fails to show any breach by Arm.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

In depositions, Qualcomm has suggested that the Qualcomm ALA's ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ QCARM_0338573.  In 2020, the parties executed an Annex

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived:  ARM_01293447,  ARMQC_02771129,  ARMQC_02771151, QCVARM_0851876,  ARMQC_02771128,  ARMQC_02771124,  ARMQC_02771125, ARMQC_02771126,  ARMQC_02771127,  QCVARM_0453724,  QCVARM_0851511, QCARM_0562765,  QCVARM_0448842,  QCVARM_0532239,  QCVARM_0534596, QCVARM_0534597,  QCVARM_0852203,  QCVARM_0851120,  QCVARM_0851333, QCVARM_0531892,  QCVARM_0847000,  QCVARM_0448361,  QCVARM_0529072, QCVARM_0528955,  QCVARM_0529887,  QCVARM_0447175,  QCVARM_0449653, QCVARM_0449658,  QCVARM_0447252,  QCVARM_0846761,  QCVARM_0537065, ARMQC_02603587,  ARMQC_02604609,  ARMQC_02604610,  ARMQC_02604611, ARMQC_02604612,  ARMQC_02604613,  ARMQC_02604614,  ARMQC_02604615, ARMQC_02604616,  ARMQC_02604617,  ARMQC_02604618,  ARMQC_02604619, ARMQC_026046020,  ARMQC_02604621,  ARMQC_02604622,  ARMQC_02604623, ARMQC_02747093,  ARMQC_02747097,  ARMQC_02747103,  ARMQC_02747104, ARMQC_02779171,  ARMQC_02779174,  ARMQC_02779176,  ARMQC_02779179,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

ARMQC_02779181, QCARM_2430181, ARM_00100013, ARM_01282655, ARM_00090791,

ARM_00067349, ARM_00102683, ARM_00091389, ARM_00068087, ARM_00068131,

ARM_00068459, ARM_00068504, ARM_00091657, ARM_00091659, ARM_00091714,

ARM_00091768, ARM_00091799, ARM_00091834, ARM_00091869, ARM_00091903,

ARM_00075096, ARM_00075098, ARM_00075343, ARM_00076113, ARM_00103566,

ARM_00103635, ARMQC_02755397, ARMQC_02755446, ARMQC_02755490,

ARMQC_02755534, ARMQC_02755580, ARMQC_02755624, ARMQC_02755674,

ARMQC_02755903, ARMQC_02755905, ARMQC_02756148, ARMQC_02756245,

ARMQC_02756246, ARMQC_02756344, ARMQC_02746634, ARMQC_02756542,

ARMQC_02756544, ARMQC_02746871, ARMQC_02756860, ARMQC_02760525,

ARMQC_02627275, ARM_01241565, QCVARM_0573677, ARMQC_02779064,

ARMQC_02779076, ARMQC_02779099, ARMQC_02779107, ARMQC_02779116,

ARMQC_02779122, ARMQC_02779133, ARM_00001777, ARM_00001195, ARM_00001198,

ARM_00001777, ARM_01020186, QCARM_3337526, QCARM_3337900, QCARM_3338108,

QCARM_3339493, QCVARM_0685544, QCVARM_0689117, QCVARM_0699179,

QCARM_3216178, QCARM_3066477, QCVARM_0602227, QCVARM_0618420,

QCVARM_0691521, QCVARM_0000395, QCVARM_0000269, QCARM_3353040,

QCVARM_0602564, QCVARM_0000142, QCVARM_0618741, QCVARM_0000180,

QCARM_3352796, QCARM_3353006, QCARM_3353126, ARM_00025401,

QCVARM_0468612, QCVARM_0000061, QCVARM_1118518, QCVARM_0602258,

QCVARM_0602295, QCVARM_0468174, QCVARM_0000114, QCVARM_0000092,

QCVARM_0000085, QCVARM_0000123, QCVARM_0000135, QCVARM_0602359,

QCVARM_0468148, QCVARM_0000395, QCVARM_0000269, QCARM_3353040,

QCVARM_0602564, QCVARM_0621692, QCVARM_0535116, QCVARM_0524624,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QCVARM_0854027,     QCARM_0566625,     QCVARM_0524624,     QCVARM_0613083,

QCVARM_0613160,     QCVARM_0540468,     QCVARM_0452598,     QCARM_0340017,

QCVARM_0452296,     QCVARM_0846871,     QCVARM_0857113,     QCVARM_0463558,

QCVARM_0608391,     QCVARM_1031097,     QCVARM_0448757,     QCARM_3430479,

QCVARM_0851449,     QCVARM_0621447,     QCVARM_0621448,     QCARM_3537716,

QCARM_3537383,     QCVARM_0467659,     QCVARM_0454629,     QCVARM_0451824,

QCVARM_0449970,  QCVARM_0467852, ARM_00003305.

Arm further incorporates by reference all documents produced in Qualcomm's 11th document production (QCVARM_011), and all documents cited in Qualcomm's responses to Arm Interrogatory Nos. 1, 2, 6, 9, and 13.

Given the breadth of allegations Qualcomm has made regarding Arm's alleged breach of the ALA, Arm further incorporates by reference the testimony of all witnesses that have been deposed in this case to date, including those specifically referenced herein, as well as the testimony of all witnesses deposed in *Arm v. Qualcomm*, Case No. 1:22-cv-01146 (D. Del.), and the exhibits used during those depositions.

Arm also incorporates by reference its responses to Interrogatory Nos. 1, 3, 4, and 5.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10 (September 5, 2025):

Arm incorporates by reference its previous responses to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further incorporates by reference the forthcoming expert reports and testimony of Dr. Michael Brogioli and Thomas Britven as well as documents and testimony cited therein.

## INTERROGATORY NO. 11:

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not breach the Qualcomm TLA. Your response should include, but is not limited to, the complete legal and factual bases for any contention that you did not breach ██████ of the TLA or the implied covenant of good faith and fair dealing, and should include an identification of all documents by Bates numbers you intend to rely upon to support your contention.

## RESPONSE TO INTERROGATORY NO. 11 (JUNE 16, 2025):

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks "the complete factual and legal bases," without limitation. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this Interrogatory to the extent it calls for a legal conclusion. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

### Qualcomm's Allegations



Qualcomm alleges that Arm breached ██████ of the Qualcomm TLA "because the licensing offers it provided to Qualcomm for ████████████████████████████ ████████████████████████████," and that Arm breached ██████ of the Qualcomm TLA "because the licensing offers it provided to Qualcomm for ████████████████████████████████ ████████ including ████████████████." Second Amended Complaint ¶¶ 215, 223. Qualcomm alleges that Arm breached the implied covenant of

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

good faith and fair dealing of the Qualcomm TLA by "fail[ing] to provide licensing proposals for

███████████████████████ to Qualcomm ████████████████████████ Second

Amended Complaint ¶ 184.  Arm understands that Qualcomm's only allegations that Arm breached

the Qualcomm TLA are based on licensing offers for the ███████████████ cores.

Arm denies Qualcomm's allegations that Arm breached the Qualcomm TLA. Arm has not

breached the Qualcomm TLA, and Qualcomm has failed to show otherwise.

### Arm Did Not Breach The Qualcomm TLA Because Arm's Licensing Offers Satisfied ████████████████████

Qualcomm alleges that Arm's licensing offer for ███████████████ ██████████

████████████████████████████████████████████████████

████████████████" and thus ███████████████████████████████

████████████████████████████████████████████ Second

Amended Complaint ¶¶ 118, 119.  To the extent ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

    Arm's license offer to Qualcomm satisfied the ████████████████, to the extent it

applies, which is calculated not based on what Qualcomm paid in the past, but instead ████████

████████████████████████████████████," which includes Arm's █████████

███ pricing for the ████████████ cores.

### Arm Did Not Breach The Qualcomm TLA Because It ██████████████████████ To Qualcomm

    Qualcomm alleges that "Arm's proposal was a ██████████████████████

███████████████████████████████████████████████████

████████████████████ Second Amended Complaint ¶¶ 25, 118.  Arm did not

breach the Qualcomm TLA because, as Qualcomm admits, ████████████████████████

████████ Second Amended Complaint ¶ 117.  Further, as described above, █████████

███████████████████████████████████████████████████

██████████████████████

### Arm Did Not Breach The Qualcomm TLA Because Its ███████████████████████████████████

    Qualcomm alleges in its Second Amended Complaint that "Arm failed to fulfill its

obligation under ████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████ ████████████████████████."  Second

Amended Complaint ¶ 223.  Qualcomm does not identify ████████████████████

██████████████.  Arm did not breach the Qualcomm TLA ███████████████████

████████████████ for ████████████████.

    ████████ of the Qualcomm ALA states that ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

  ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████

### Arm Did Not Breach The Qualcomm TLA Because Arm Was Not Obligated To Offer Licenses To ████████████████████ To Qualcomm In 2024

Qualcomm alleges in its Second Amended Complaint that Qualcomm submitted requests to Arm for licenses to ████████████ in April 2024 and for a license to ██████ in August 2024, and that Qualcomm sent Arm two notices of breach of the Qualcomm TLA in September 2024 because Arm had not yet responded with license offers by that time.  Second Amended Complaint ¶¶ 21-24.

Arm had no obligation to offer Qualcomm licenses to the ████████████████████ cores in 2024 because Qualcomm's ████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████ ██████████ ███ ████████████████████████.  Qualcomm first licensed the ████████████████████ cores in

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

2019 as part of a bundled license that the parties negotiated for several Arm cores, and thus made

 . *See, e.g.*, QCARM_0029040 at 29043.

. Qualcomm has not

identified any other requests for licenses to those cores other than its communications in 2024.

<u>**Arm Did Not Breach Any Obligation To Act In "Good Faith"**</u>
<u>**Or The Implied Covenant Of Good Faith An Fair Dealing**</u>

Qualcomm alleges in its Second Amended Complaint that "[t]he financial terms that Arm

provided for the three requested cores were commercially unreasonable, exorbitant, and not in good

faith" and that "Arm has breached the implied covenant of good faith and fair dealing" for the

Qualcomm TLA. Second Amended Complaint ¶¶ 118, 187.

Arm did not breach either the  or

any implied covenant of good faith and fair dealing for the reasons described above: Arm did not

breach the TLA, and made a good faith offer with financial terms that satisfied the

.

Further, any allegation that Arm breached the implied covenant of good faith and fair

dealing is duplicative of the                              and is not actionable. *See, e.g.*, *USX*

*Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 439 (3d Cir. 1993) (holding that Plaintiff "cannot assert

a claim for breach of implied covenants that is based on exactly the same acts which are said to be

in breach of express covenants."); *Cision US, Inc. v. CapTech Ventures, Inc.*, No. CV 24-00063-

MN-SRF, 2025 WL 1094318, at *5 (D. Del. Apr. 11, 2025) (dismissing Plaintiff's "claim for breach

of the implied covenant of good faith and fair dealing … as impermissibly duplicative of its breach

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

of contract and warranty claims.").

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Jeff Fonseca and Karthik Shivashankar.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

**Arm Did Not Breach The Qualcomm TLA Because Arm's Licensing Offers ██████████████████████████**

Arm's ██████████████████████████ satisfied the ████████████ term because Arm ████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████

Arm ████████████████████████████████████████████████████ ████████████████████████████████████. QCVARM_0524362. Arm, *e.g.*, ████ ████████████████████████████████████████ ████████████████ ████████████████████████████████████████████. *See, e.g.*, Bhatnagar Dep. (Rough) at 25–28; ARMQC_02784199; ARMQC_02784204. ████████ ████████████████████████████████████████████████████████ ████████████████ *See, e.g.*, Youssef Dep. at 64–68; ARMQC_02779314. Arm then ████ ████████████████████████████████████████████████████████ ████████████████████, ████████████████████████████████████ ████████████████████████████████████████████████████████

██████████████████████████████████████. *See, e.g.*, Youssef Dep. at 68–71. ███████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████████████████ ████

████████████████████████████████████████████████████████████████

████████████████████. QCVARM_0617829.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████  *See, e.g.*, Youssef Dep. at 68–71.  Instead, Arm determined that █████████s

██████████████████ ███████████████████ ███████████████████ █████████████

████████████████████████████████████. Youssef Dep. at 71 ("█

██ █████████ ███████████████████████████ █████████████████████████

██████████████████ ██████ ████████████████████████████████████████

██ ██████████████████████████████ ████████████████████████████████

████████████████████ █████████████████████████████████████████████

████████████████████████████████████████. *See* Youssef Dep. at 71;

Shivashankar Dep. at 97–98; Fonseca Dep. (Rough) at 16, 19, 32–34, 37–39; ARMQC_02783731;

ARMQC_02783848; ARMQC_02783619; ARMQC_02783967; ARMQC_02784120.

To the extent Qualcomm argues that Arm violated ███████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████, that is not true.  Arm ████████████████

████████████████ ████████████████████████████████████████████████

████████████████████ █████████████████████████ ████████████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

ARMQC_02779314.  Arm also

**Arm Did Not Breach The Qualcomm TLA Because Its**

Arm did not breach

Qualcomm's allegation for an alleged breach of

QCVARM_0617829 at 831.  However, there was never a change

in the                              and Qualcomm is mistaken.  Qualcomm has a

ARMQC_02772246.  That agreement has been extended several times by the parties, and is set to run through                      .  ARMQC_02772246, § 1.4; *see also* ARMQC_02772246; ARM_01300657; ARM_01300665; ARM_01298732; ARM_01300650.

. ARMQC_02774856; Wolf Dep. at

176.  Mr. Wolf admitted that

Mr. Fonseca testified that,

.  *See, e.g.*, ARMQC_02772246;
ARM_01300657; ARM_01300665; ARM_01298732; ARM_01300650.

Further, any argument by Qualcomm that Arm's

is also incorrect.  Arm's

.  *See, e.g.*, Fonseca Dep. at 64–65;
ARMQC_02783169 at 654

).  That Arm

**Arm Did Not Breach The Qualcomm TLA Because Arm Was Not Obligated**



. ARM_00103918 at 918, 955.  Arm never received any such request from

an ████████████.  Rather, Qualcomm's communications regarding ████████████████████

████████████████████ came from individuals ████████████████████████

████████ Inc., *i.e.*, Kurt Wolf or Ann Chaplin.  *See, e.g.*, ARMQC_02771126;

QCVARM_0605055.

### Arm Did Not Breach Any Obligation To Act████████████████
### Or The Implied Covenant Of Good Faith And Fair Dealing

Qualcomm alleges in its Second Amended Complaint that "[t]he financial terms that Arm

provided for the three requested cores were commercially unreasonable, exorbitant, and ████████

████" and that "Arm has breached the implied covenant of good faith and fair dealing" for the

Qualcomm TLA.  Second Amended Complaint ¶¶ 118, 187.  For the additional reasons discussed

above, ████████████████████████████████████████████ or any

implied covenant of good faith and fair dealing.  Arm made a good faith offer in accordance with

████████████████████████████████████████████

### Additional Factual and Legal Bases Regarding Qualcomm's TLA Allegations

Arm further states that Qualcomm has failed to prove that Arm's alleged conduct was the

but-for or proximate cause of any supposed "harm" that Qualcomm has allegedly suffered.

Qualcomm has failed to articulate any "harm" that it has allegedly suffered as a result of Arm's

supposed breach of either ████████ of the TLA.  As discussed above, Arm has not breached the

TLA or any ████████████████ provisions therein.  Qualcomm has failed to make any

effort to quantify any "harm," such as alleged ████████████████████████████

████████████████████████████████████████████.  While

Qualcomm's witnesses have vaguely alleged that Qualcomm had to "shift resources" or hire

"engineering resources" to develop custom cores as a result of Arm's actions with regard to the

████████████████, Qualcomm has failed to produce or identify any documentary evidence

corroborating those claims. Qualcomm has also failed to prove any casual connection between ██████████████ and any of this supposed "harm."

To the contrary, discovery has confirmed that Qualcomm has suffered no harm *at all* from Arm's ████████████████████ ██████████████████. Regarding █████, ████████████████████████ ██████ ████. ARMQC_02778342. As to ██████████, Qualcomm never had a legitimate plan to use those cores after October 2026 and ████████████████████████████. *See* Williams Dep. at 49–51. Arm incorporates by reference its response to Interrogatory No. 12 and discussion of its unclean hands defense. Qualcomm only ████████████████ ██████████ as a pretext to prompt a response from Arm regarding three "peripheral IP," ████████████████████ QCVARM_0605055; QCVARM_0447175; Wolf Dep. at 75–77. Indeed, it never sought to continue ████████████████████ from Arm in 2024 or anytime after for ██████████.

Further, Qualcomm ████████████████████████ █████████████. QCVARM_0524726. ██████████████████████ ██████████████████████ ██████, Qualcomm accepted those revised terms. QCVARM_0524726; QCVARM_0523650. This lack of harm undermines any notion that Qualcomm should be entitled to ████████████████████████ ██████████████████.

Arm further notes that, to date, Qualcomm has failed to disclose any legal or factual bases for its theories as to how Arm has allegedly breached the TLA. Other than Qualcomm's vague allegations in the SAC—which are legally insufficient as set forth in Arm's Motion to Dismiss (D.I. 232, 233, 305)—Qualcomm has not answered any interrogatory or otherwise disclosed its theories for how Arm allegedly breached ██████████████ of the TLA. Arm served interrogatories to

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Qualcomm seeking such information on June 11, 2025, to which Qualcomm could have responded but has not.  Qualcomm similarly failed to provide any response to Arm's theories regarding the TLA, which were disclosed to Qualcomm on June 16, 2025.  Accordingly, Arm reserves the right to supplement these responses after it has an opportunity to review any such theories Qualcomm discloses at a later date.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARMQC_02772366, QCARM_0222545, QCARM_0344783.

Arm further incorporates by reference its response to Interrogatory No. 6, including the documents and testimony cited therein.

Arm further incorporates by reference the testimony of the following witnesses: Karthik Shivashankar, Ehab Youssef, Akshay Bhatnagar, Jeff Fonseca, Kurt Wolf, Manju Varma, Larissa Cochran, Spencer Collins, Will Abbey, Cristiano Amon, Ann Chaplin, Lynn Couillard, Durga Malladi, Richard Meacham, Laura Sand, Christine Tran, Jonathan Weiser, and Gerard Williams, including the documents used at each of those depositions.

Arm further incorporates by reference any documents withheld on the basis of third-party confidentiality disputes, including due to an objection or motion for a Protective Order filed by any such third parties.  Arm reserves the right to supplement this response to address such documents should any such disputes be resolved and result in the production of such documents to Qualcomm.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11 (September 5, 2025):**

Arm incorporates by reference its previous responses to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further incorporates by reference the forthcoming expert reports and testimony of Thomas Britven, as well as documents and testimony cited therein.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Dated: September 5, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Matthew J. McIntee
Meredith Pohl
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
matt.mcintee@kirkland.com
meredith.pohl@kirkland.com

Jay Emerick
Reid McEllrath
Adam Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP


 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 5, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

                              YOUNG CONAWAY STARGATT &
                              TAYLOR, LLP

                              /s/ Robert M. Vrana
                              Anne Shea Gaza (No. 4093)
                              Robert M. Vrana (No. 5666)
                              Daniel G. Mackrides (No. 7230)
                              Rodney Square
                              1000 North King Street
                              Wilmington, DE 19801
                              (302) 571-6600
                              agaza@ycst.com
                              rvrana@ycst.com
                              dmackrides@ycst.com

                              *Attorneys for Defendant Arm Holdings plc*

# EXHIBIT 39

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>    Plaintiffs,<br><br>    v.<br><br>ARM HOLDINGS PLC, f/k/a, ARM LTD. a U.K. corporation,<br><br>    Defendant. | C.A. No. 24-490-MN<br><br>**HIGHLY CONFIDENTIAL -**<br>**ATTORNEYS EYES ONLY** |

**ARM'S SECOND SUPPLEMENTAL RESPONSE TO**
**QUALCOMM'S THIRD SET OF INTERROGATORIES (NO. 12)**

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively "Qualcomm")'s Third Set of Interrogatories (No. 12).

**GENERAL OBJECTIONS**

Arm incorporates by reference the Objections set forth in Arm's responses to Qualcomm's First Set of Interrogatories, served March 24, 2025, Qualcomm's Second Set of Interrogatories, served June 16, 2025, Arm's supplemental response to Qualcomm's Amended Interrogatory No. 3, served June 18, 2025, Arm's Objections and Responses to Qualcomm's Third Set of Interrogatories No. 12, served July 9, 2025, and Arm's supplemental Objections and Responses to Qualcomm's Third Set of Interrogatories No. 12, served July 11, 2025.

1

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

## SPECIFIC OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 12:**

Identify and describe in detail the complete factual and legal bases for any defense or counterclaim that You assert in response to the Complaint. Your response should include an identification of all persons knowledgeable about the facts referenced or relied upon in your response, and all documents (by Bates number) you rely upon in support of your response.

**RESPONSE TO INTERROGATORY NO. 12 (JULY 9, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it seeks information regarding "the complete factual and legal bases" for "any defense," "all persons," and "all documents," without limitation. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties. Arm further objects to this request to the extent it seeks expert testimony, which is not yet due and will be provided in accordance with the Scheduling Order. Arm further objects to this request as duplicative of other Interrogatories.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm's Answer sets forth detailed explanations of the factual and legal basis for Arm's defenses that it is asserting in this case, which include: Failure to State a Claim; Waiver/Estoppel/Laches/Acquiescence; Unclean Hands; Limits on Damages; Compulsory Counterclaims/Res Judicata/Collateral Estoppel; the *Noerr-Pennington* Doctrine and California

2

**HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY**

Litigation Privilege; the Statute of Limitations; Freedom of Speech and Freedom to Petition; Claim and Issue Preclusion; Qualcomm's Failure to Mitigate; and Unenforceability of the ALA and TLA. D.I. 234 at pp. 39–46. Arm incorporates by reference its Answer to Qualcomm's Second Amended Complaint, D.I. 234. Arm asserts all of these defenses and its incorporation by reference of them here should not be construed as a waiver or forfeiture of any such defenses.

Arm also incorporates by reference its Motion to Dismiss, D.I. 19, 28, Arm's Motion To Dismiss Qualcomm's First Amended Complaint, D.I. 48, 72, and Arm's Motion to Dismiss Qualcomm's Second Amended Complaint, D.I. 232, 233, 305. Arm's Motions to Dismiss further expand on Arm's defenses and provides further factual and legal details support for them, including regarding Arm's *Noerr-Pennington*, California Litigation Privilege, and Anti-SLAPP (D.I. 233 at 4–8), Failure to State a Claim (D.I. 233 at 9–19), and Statute of Limitations (D.I. 233 at 20) defenses. Further, Arm incorporates by reference its responses to Qualcomm's Interrogatory Nos. 1–11, including the testimony and documents cited therein (and any supplements thereto), which contain additional factual and legal support for Arm's defenses.

Arm also provides below additional explanation regarding certain of its defenses. Arm notes, however, that Qualcomm to date has refused to provide meaningful or reciprocal discovery into its allegations. For example, Qualcomm has failed to remedy any of the deficiencies in Qualcomm's production set forth in Arm's letter briefing on discovery disputes. *See* D.I. 159. Qualcomm has also refused to supplement its interrogatory responses to meaningfully disclose its case theories. Qualcomm has also asserted improper privilege claims over information that is business advice or strategy, and not legal in nature. In another example, Qualcomm has refused to produce communications with the media or customers about its rights under the QC ALA despite alleging that Arm's statements about the same damaged Qualcomm's customer relationships,

documents regarding its publication of the same letter in its SEC filings as described above, and documents concerning its own "leaking," including for a story about confidential competition complaints QC placed with the same reporter at the same news outlet Arm allegedly communicated with. Qualcomm's improper refusal to provide or to block discovery on the core issues in the case has impaired Arm's ability to further develop its defenses. Accordingly, Arm provides this response and additional information based on the information currently available to it, and reserves the right to supplement this response should Qualcomm provide additional discovery, including any depositions taken in the future or after the close of the fact discovery period.

**Unclean Hands**

As set forth in Arm's answer, D.I. 234 at 43–44, Qualcomm's claims are barred, in whole or in part, by the equitable doctrine of unclean hands. In addition to Qualcomm's actions regarding Nuvia and Qualcomm's publishing of Arm's October 2024 letter, discovery has revealed that Qualcomm's actions surrounding ███████████████ █████████████ █ ████████ constitute unclean hands. Qualcomm's requests to Arm for ███████████ ████ in 2024 were made in bad faith, were deceitful, and/or were fraudulent, including because they were made as a pretext to prompt a response from Arm regarding other products. ████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████ And although Arm ███████████████████████

███████████████████, Qualcomm never attempted to negotiate better terms for or discuss

the ██████████████ with Arm, confirming that it had no legitimate plan to use those cores after

October 2026, ████████████████████████████████████

These actions constitute bad faith, were deceitful, and/or were fraudulent as evidenced by

other documents produced by Qualcomm, and are directly related to Arm's alleged breach of the

TLA as asserted by Qualcomm in the SAC. *See, e.g.*, D.I. 137, Counts VII, VIII. ████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████ With █████████████████, Qualcomm "was not ready to license"

those products after October 2026 as it did not have those products on its CPU roadmap for the

future. ████████████████████████████████████████

███████████████████████████████████████████

██████████████████.

Further, given the ongoing disputes between Qualcomm and Arm, Qualcomm not only used

██████████████████████████ as a pretext for peripheral IP offers, but also to manufacture additional

meritless claims to assert against Arm in litigation, and as a basis to ███████████████████████

████████████████████.  Thus, any remedies Qualcomm seeks in connection with Arm's

alleged violation of the TLA are barred by the doctrine of unclean hands.

<strong><u>Limits on Damages</u></strong>

As set forth in Arm's Answer, D.I. 234 at 44, the Qualcomm ALA and TLA ████████

██████████████████████  As an initial matter, Qualcomm has failed to show what

its purported damages are for any allegation it has made in the complaint.  Nor has Qualcomm

identified evidence purporting to quantify the supposed "harm" it has suffered as a result of Arm's

alleged actions.  Arm disputes that Qualcomm has suffered any "harm" or damages, and reserves

the right to supplement this response in the event Qualcomm later attempts to show any purported

"harm" or damages.

Setting aside this failure of proof, Qualcomm's damages, ████████████████





████████████████  To the extent Qualcomm intends to seek damages for any of these types

of damages, it is precluded from doing so.  For example, any interruption of Qualcomm's business

due to Arm's alleged actions, such as "shifting resources," "delays," or changes made in its

6

"roadmapping and SoC planning process," is something Qualcomm agreed that it is not permitted to recover. *See, e.g.*, D.I. 137 ¶¶ 180, 188, 195–196, 203, 211, 220, 226. ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

In another example, the TLA provides in ██████████████████████

██████████████████████████████████████████████████

*See* ARM_00103918 at 931. ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████ Moreover, even if Qualcomm could overcome these contractual limitations on liability, it cannot establish that Arm's alleged conduct was the but-for or proximate cause of any harms that Qualcomm allegedly suffered.

### Unenforceability of Qualcomm ALA and TLA Provisions

As set forth in Arm's Answer, D.I. 234 at 46, ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

**HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY**

███████████████████████████████████████████████████████

█████████████████████████████████████████████ These

provisions are unenforceable and unreasonable contractual penalty clauses.

For example, Qualcomm has not suffered any harm as a result of Arm's alleged breach of ███████ of the QC ALA, nor has Qualcomm identified any such harm. Although Arm has served interrogatories seeking Qualcomm's complete factual and legal basis for contending that Arm's conduct has harmed Qualcomm (Arm Interrogatory No. 1) and seeking a specific description of Qualcomm's efforts to verify or attempt to verify compliance with the Arm architecture (Arm Interrogatory No. 13), Qualcomm has failed to identify any particular harm that Qualcomm claims to have suffered as a result of Arm's alleged breach of █████ of the QC ALA other than to repeat its allegation from the complaint that Qualcomm was "forced to (1) expend extra time and resources, including Qualcomm engineers, to run ACK tests to verify compliance with the Arm ISA, and (2) use their own engineers to address issues that would have been addressed by Arm's patches." *See* Qualcomm's Resp. to Arm Interrog. No. 1.

To the contrary, Arm's alleged withholding of OOB and ACK patches (which Arm disputes, and which does not constitute a breach of █████ of the QC ALA, including for the reasons explained in Arm's response to Qualcomm Interrogatory Nos. 1 and 5) did not prevent Qualcomm from completing the verification process for Nuvia-based custom CPU designs, nor did it prevent Qualcomm from releasing products that incorporate those CPU designs. Moreover, Qualcomm released its products incorporating Nuvia-based custom CPU designs on time or even ahead of schedule. ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL- ATTORNEYS EYES ONLY**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

Likewise, Qualcomm's TLA allegations demonstrate that ██████████ of the TLA is an unenforceable penalty clause. ████████████████████████████████████ ████████████████████████████ However, there is no dispute that Arm ████████████ ████████ ████████████████ ████████████████ and therefore satisfied its obligation under ████████████████████████████████████████████████ ████████████████████████████████ ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ Arm hereby incorporates by reference the testimony of Ehab Youssef and Karthik Shivashankar, and the forthcoming testimony of Jeff Fonseca and Akshay Bhatnagar.  Further, as to ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████.

Even if Qualcomm could overcome the contractual limitations on liability discussed above in the TLA and ALA, it cannot establish that Arm's alleged conduct was the but-for or proximate

9

**HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY**

cause of any harms that Qualcomm allegedly suffered. There is no relationship (let alone a

reasonable relationship) between ████████████████████ and the *de minimis* damages, if

any, that Qualcomm alleges to have suffered. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ ████

████████████████████████████████████████████████████

████████████████. Likewise, to date, Qualcomm has failed to show its supposed damages or harm

due to Arm's alleged actions. To the extent Qualcomm attempts to do so in the future, that

quantification will only further confirm that ████████ of the QC ALA and the QC TLA are

unenforceable.

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████  ████  ████  ████████████  ████████████  ████████████

████████████  ████████████  ████████████  ████████████

████████████████████████████████

    Arm further incorporates by reference the testimony of all witnesses that have been deposed

in the case to date, including those specifically referenced herein.

    Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its

response to this Interrogatory.

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 (JULY 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived:    ARM_00095578,    ARM_00095579,    ARM_00085679,    ARM_00085680, ARM_00111449,    ARM_01228027,    ARM_01228031,    ARM_01228035,    ARM_01228039, ARM_01228043,    ARM_01228044,    ARM_01228048,    ARM_01228049,    ARM_01228053, ARM_01228054,    ARM_01228058,    ARM_01228059,    ARM_01228063,    ARM_01228064, ARM_01228073,    ARM_01228074,    ARM_01228075,    ARM_01239440,    ARM_01239441, ARM_01239442,    ARM_01239444,    ARM_01239445,    ARM_01239447,    ARM_01239448, ARM_01239449,    ARM_01239451,    ARM_01239452,    ARM_01239453,    ARM_01239458, ARM_01239459,    ARM_01239464,    ARM_01239465,    ARM_01239470,    ARM_01239471, ARM_01239472,    ARM_01239473,    ARM_01239474,    ARM_01239475,    ARM_01239476, ARM_01239477,    ARM_01239478,    ARM_01239479,    ARM_01239483,    ARM_01239485, ARM_01239486,    ARM_01239488,    ARM_01239503,    ARM_01239504,    ARM_01239506, ARM_01423231,    ARM_01423342,    ARM_01423234,    ARM_01423345,    ARM_01423238, ARM_01423349, ARM_01423239, ARM_01423350, ARM_01333009, ARMQC_02601210, ARMQC_02603580, ARMQC_02603581, ARMQC_02603582.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 (September 5, 2025):**

Arm incorporates by reference its previous responses to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

Arm further incorporates by reference the forthcoming expert reports and testimony of Timothy Simcoe, Steven Richards, Thomas Britven, and Dr. Michael Brogioli, as well as documents and testimony cited therein.

**HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY**

Dated:  September 5, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
Reid McEllrath
Adam Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP


 /s/ Robert M. Vrana
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**HIGHLY CONFIDENTIAL-ATTORNEYS EYES ONLY**

ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 5, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

                                    YOUNG CONAWAY STARGATT &
                                    TAYLOR, LLP

                                    */s/ Robert M. Vrana*
                                    _____
                                    Anne Shea Gaza (No. 4093)
                                    Robert M. Vrana (No. 5666)
                                    Daniel G. Mackrides (No. 7230)
                                    Rodney Square
                                    1000 North King Street
                                    Wilmington, DE 19801
                                    (302) 571-6600
                                    agaza@ycst.com
                                    rvrana@ycst.com
                                    dmackrides@ycst.com

                                    *Attorneys for Defendant Arm Holdings plc*