# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

JENNIFER YING
(302) 351-9243
jying@morrisnichols.com

Originally Filed: January 5, 2026
Redacted Version Filed: January 13, 2026

The Honorable Maryellen Noreika
United States District Court
 for the District of Delaware
844 N. King Street
Wilmington, DE 19801

REDACTED - PUBLIC VERSION

Re: *Qualcomm Inc. v. Arm Holdings Plc.*, C.A. No. 24-490 (MN)

Dear Judge Noreika:

     Qualcomm writes in response to Arm's December 29, 2025 letter regarding purported supplemental authority related to (1) Arm's Motion for Summary Judgment on Qualcomm's UCL claim and (2) Arm's Motion to Exclude Qualcomm's expert Eric Posner. D.I. 581. Arm's letter does not present new facts, theories, or authority, and therefore is improper supplemental briefing. Moreover, even if the information in Arm's letter was new, it has no bearing on Arm's pending motions.

     On November 14, 2025 – the same day briefing on the parties' Summary Judgment and *Daubert* motions closed – Arm served a motion to strike the same opinions of Qualcomm's expert Eric Posner. D.I. 475. As Qualcomm explained to Special Master Rychlicki, Arm's motion to strike an undisclosed "monopoly" theory misstated Posner's references to dominance as a monopolization claim. Further, the motion was an improper second attempt at a Daubert challenge more than three months after Posner's opinions were disclosed. While framed as a motion to strike an allegedly undisclosed "monopoly" theory under Rule 37, Arm's arguments were, at bottom, duplicative of its *Daubert* arguments regarding whether Posner had engaged in the proper, relevant analysis required under the UCL. D.I. 581, Ex. 7 at 1.

     The Special Master denied Arm's motion to strike, in relevant part finding that:

> Qualcomm has brought a claim for violation of the California Unfair Competition Law. Posner's analysis is limited to Arm's dominance of the Arm ISA Ecosystem. His equating of a firm's dominant position with being a monopolist does not contradict Qualcomm's fact discovery representations that it would not define a market as required by the Sherman Act or make any claim for monopolization.

The Honorable Maryellen Noreika
January 5, 2026
Page 2

D.I. 581, Ex. 8 at 124:14-125:1. As the Special Master concluded, "Qualcomm disclosed its neutrality abandonment theory and input foreclosure theory well before Posner's expert reports" and Posner's theories do "not contradict" Qualcomm's earlier representations and disclosures. *Id.* at 124:18-125:15. Arm did not object to the ruling and the period for objections has run. D.I. 336 at 3.

Moreover, the purportedly "new" information in Arm's letter has no bearing on Qualcomm's UCL claim, which is *not* a monopoly claim and does not require Qualcomm to allege a monopoly. As Qualcomm explained in its opposition to Arm's Motion for Summary Judgment, "California law does not require UCL plaintiffs to plead or prove a market or market power, or other elements of an antitrust claim." D.I. 464 at 33-34 (citing *Epic Games, Inc.* v. *Apple Inc.*, 67 F.4th 946, 1002 (9th Cir. 2023); *Metricolor LLC v. L'oréal S.A.*, 2020 WL 2802942, at *17 (C.D. Cal. July 7, 2020)). Qualcomm's position was disclosed and consistent during fact discovery (D.I. 581 at 1), as evidenced by Qualcomm's statements to the Court in opposition to Arm's motion to compel (D.I. 161 at 3), Qualcomm's statements to the Special Master in opposition to Arm's motion to compel (Ex. 1 at 4; Ex. 2 at 308:12-312:21; 316:15-318:1), and Arm's citation to Qualcomm's Interrogatory Responses and letters from April 2025 in which Qualcomm stated that it would not pursue a "monopoly theory" at trial. D.I. 581, Exs. 2-4.

Nor is the information in Arm's letter relevant to Arm's pending *Daubert* motion to exclude Posner's opinions. As Qualcomm has explained, "Posner's analysis of the Arm ISA Ecosystem and Arm's anticompetitive actions (including based on input foreclosure)" does not "require defining a market". D.I. 451 at 3. Qualcomm's assurance that Posner will not offer testimony "contending Arm is a monopolist in any market" is consistent with his opinions and "does not contradict Qualcomm's fact discovery representations." D.I. 581, Ex. 7 at 3; D.I. 581, Ex. 8 at 124:18-125:1.

Counsel is available should the Court have any questions.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

JY/ncf
Encls.
cc:   Clerk of the Court (by hand delivery)
      Counsel of Record (by CM/ECF and email)

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED,<br>a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>a Delaware corporation,<br><br>               Plaintiffs,<br><br>    v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>a U.K. corporation,<br><br>               Defendant. | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 24-490 (MN)<br>)<br>)<br>) ██████████████<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' RESPONSIVE LETTER BRIEF TO SPECIAL MASTER RYCHLICKI**

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Dᴜɴɴ, Iꜱᴀᴀᴄꜱᴏɴ, Rʜᴇᴇ LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

August 7, 2025

Dear Special Master Rychlicki,

Qualcomm provided full discovery. For the reasons set forth below, Arm should be denied all of the relief it seeks.

**Arm's Delayed Deposition Request.** Arm improperly seeks to depose Pradeep Kanapathipillai, the lead of Qualcomm's CPU design team, despite waiving its opportunity to do so during fact discovery. Arm noticed Mr. Kanapathipillai's deposition on June 12. D.I. 202. Arm had ample time, either during fact discovery or immediately afterwards, to take Mr. Kanapathipillai's deposition. Qualcomm provided a July 16 deposition date to Arm on June 27. Ex. 1. On July 1, at Arm's request, Qualcomm confirmed this date was Mr. Kanapathipillai's earliest available date, yet Arm failed to take any further action, despite offering its own witnesses after July 11 based on witness convenience. Ex. 2. When fact discovery closed on July 11, having heard nothing further, Qualcomm informed Arm that it had released Mr. Kanapathipillai. Ex. 3. Arm did not respond. Arm waited five days to request a new date. Ex. 4.

Arm's request should be denied. It is untimely and Arm's sole justification is for information about Qualcomm's extra verification effort due to Arm's withholding technology. Arm Ltr. at 3. But Arm deposed Jignesh Trivedi, Qualcomm's *verification lead* and Rule 30(b)(6) designee on verification-related topics, for 4.5 hours, and Jeff Golden, a verification engineer, for 2 hours. Mr. Kanapathipillai is Mr. Trivedi's supervisor and does not perform the day-to-day verification. His deposition is not warranted.

**Rule 30(b)(6) Testimony.** Qualcomm responded and objected (R&Os) to Arm's 30(b)(6) notice on June 23. Ex. 5. Arm did not complain about those R&Os until *two weeks after fact discovery closed*. Ex. 6.[1]

For **Topic 81**, Qualcomm limited the Topic to match the scope of discovery it agreed to provide in **RFP 96** regarding "market analyst reports or market intelligence related to the past, present, or future competition between cores and CPUs." Ex. 7 at 34-35. Qualcomm produced competitive intelligence analysis reports, and Arm did not identify deficiencies or move to compel further production. Ex. 8 at 4-5. Qualcomm explained it was mirroring RFP 96 during the July 28 meet and confer. Ex. 9 at 67:17-72:1. Qualcomm designated Ziad Asghar, and Arm questioned him on this Topic. Ex. 10 at 235:2-238:7. Arm made no scope objections at his deposition.

As stated in its R&Os, Qualcomm is unaware of any non-privileged information responsive to **Topic 59**. Ex. 5 at 53-54. **Topics 60 and 61** seek information that is irrelevant to Qualcomm's tortious interference claims, which only concern Arm's conduct (not Qualcomm's) in leaking the breach notice to the press. Qualcomm appropriately limited Topics 60 and 61. Ex. 5 at 54-56.

---

[1] Arm's attempt to incorporate arguments from a July 25 letter by reference in a footnote (*see* Arm Ltr. at 3, n. 2) is improper. *See, e.g., Wise v. Biowish Techs., Inc.*, 2019 WL 4344273, at *6 (D. Del. Sept. 12, 2019) (party cannot evade page limits "by incorporating by reference arguments made in prior briefs").

**Qualcomm's Relevance Objections.** Arm served 173 RFPs, many having no relevance to this case.

**RFP 6** seeks documents concerning Qualcomm's efforts to "reduce its reliance on Arm." Arm Ex. 1. Arm mischaracterizes Qualcomm's response, claiming Qualcomm "contended that discovery into the bases of those quotes is irrelevant because they come from the Complaint's background section, not the counts." Arm Ltr. At 4. When Arm first raised **RFP 6**, Qualcomm explained "the quoted statement comes from Qualcomm's *opposition brief to Arm's first motion to dismiss the original complaint*," which "is a description of the facts from the prior litigation that is not the subject of a claim or any Arm defense." D.I. 161 at 1 (emphasis added); Ex. 11 at 1-2. Arm again fails to explain the relevance, and Qualcomm already produced extensive documents regarding its reliance on Arm in the prior litigation. *See*, *e.g.*, Exs. 12-13 (QCARM_3482711); (QCARM_3482703).

**RFP 37,** Arm Ex. 1, requests documents regarding Qualcomm's entitlement to ALA deliverables for "Nuvia-based technology." Qualcomm produced many documents in the prior litigation showing that Qualcomm's ALA covered its custom CPUs and a jury found in favor of Qualcomm, including that Qualcomm's custom CPUs incorporating "Nuvia-based technology" were licensed under Qualcomm's ALA. C.A. No. 22-1146 (MN), D.I. 572 at 1. It remains unclear what additional materials Arm seeks. On April 24, Qualcomm requested an additional meet and confer to address this. Ex. 11 at 1. Arm did not respond.

**RFP 57** seeks documents concerning the potential termination of the Qualcomm ALA. Arm Ex. 1. Arm appears to seek information about whether Qualcomm thought its ALA would be terminated as a result of the parties' Nuvia-related dispute. This has no relevance to the claims at issue and Arm explains none. And Qualcomm already produced internal documents on the impact of Arm's leak in response to other RFPs.

Arm raises Qualcomm's responses to **RFPs 108-109 and 116** concerning Qualcomm's licensing practices. Arm Ltr. at 4. Here, Qualcomm alleges unfair business practices by Arm arising from Arm's licensing practices and Arm's interference with Qualcomm's customer relationships by, among other things, leaking Arm's October 2024 notice letter to Bloomberg News. Qualcomm's licensing business involving cellular standard-essential patents (distinct from any ALAs or TLA) has no relevance here. Unlike Arm, no Qualcomm entity licenses its CPUs, CPU designs, or an architecture.

Arm appears to portray Qualcomm as objecting to **RFP 8** on relevance grounds. Qualcomm did not object to this request on relevance grounds and agreed to produce responsive documents. Ex. 14 at 14-15. Qualcomm produced such documents and identified examples to Arm. Ex. 15. Arm failed to identify any alleged deficiencies in Qualcomm's production.

Arm also failed to explain its position regarding **Interrogatories 2, 4, and 6**. Arm confirmed on an April 15 meet and confer that it was satisfied by Qualcomm's representation that its response to **Interrogatory 2** provided the complete legal basis for its ALA breach claim and that it would supplement its response to **Interrogatory 4**. Ex. 16. On April 22, Arm backtracked without explanation and raised issues with Qualcomm's response to **Interrogatory 6** for the first time. Ex.

2

17. On April 24, Qualcomm requested an additional meet and confer. Ex. 11. Arm did not respond. Qualcomm subsequently supplemented its responses to **Interrogatories 2, 4, and 6**. Exs. 15, 18. Arm identified no purported deficiency with Qualcomm's supplemental responses.

**ALA Breach Claims.** In 2022, when Qualcomm discovered Arm had breached the ALA by withholding technology, Qualcomm immediately informed Arm of the breach and identified the improperly withheld technology of which it was aware. D.I. 137 ("SAC") ¶¶ 81-83. Qualcomm further explained that Arm continued to withhold that technology through filing of the SAC. *Id.* ¶ 95. It is Arm, not Qualcomm, that knows what other technologies were improperly withheld. Nonetheless, Qualcomm produced over 30,000 documents related to its requests to Arm for the withheld technology and Qualcomm's verification efforts, which provide information regarding the time and effort required to work around Arm's withholding. Qualcomm identified examples of such documents in its supplemental responses. Exs. 15, 18. Arm also deposed multiple Qualcomm witnesses for hours regarding verification challenges Qualcomm faced due to Arm's withholding. *See e.g.,* Exs. 19-21 (Williams Tr. at 70:17-71:15 (                                                    ); Trivedi Tr. at 30:24-33:14 (                                          ); Golden Tr. at 91:6-93:11 (                                                        )). Arm has not identified any information allegedly missing from this testimony. Qualcomm also produced numerous verification documents. And Qualcomm agreed to produce documents in response to **RFPs 149 and 160**. Ex. 22 at 79:19-86:4, 115:18-117:8. To the extent Arm raises Qualcomm's responses to **Interrogatories 6 and 13**,[2] which the parties have not discussed, Qualcomm believes those requests are addressed through its citation to documents as well.

**Tortious Interference Discovery.** Qualcomm produced communications with customers following the leak of the October 22, 2024 notice, including a public statement issued by the company. Ex. 15 at 15-16. Qualcomm's production encompasses its response to third parties concerning Arm's leak of the October 22 letter, including documents exchanged with the Smartphone Company and the AI and Ecosystem Company after the leak, as well as additional communications concerning the scope of business relationships impacted, including those preceding the leak.

Arm complains that the Smartphone Company and AI and Ecosystem Company's identities have been sealed. Arm articulated no justification to reveal confidential business-sensitive Qualcomm customer information to Arm. Arm's counsel deposed several Qualcomm senior executives, including Cristiano Amon (CEO), Ziad Asghar, Chris Patrick, and Pavankumar Mulabagal regarding the impact to Qualcomm's business relationships. Arm's counsel also served RFPs about the companies in question. Arm suffered no hardship from the nondisclosure of company names to in-house counsel.

---

[2] *Integra Lifesciences* is inapposite. Arm Ltr. at 4-5. That case struck portions of an expert report related to a damages theory that was never disclosed in interrogatory responses; it did not hold that a party must be "precluded from going beyond" interrogatory responses more generally. *Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, 2017 WL 11558096 at *7-13 (D. Del. Dec. 11, 2017).

3

Arm's concerns regarding Qualcomm's responses to RFPs related to SEC filings and press communications are misplaced. Documents regarding decisions on disclosures in SEC filings are privileged and were logged. Ex. 23. And any communications with reporters concerning articles unrelated to the claims in this action are irrelevant. Arm also fails to explain how Qualcomm's press communications relate to Qualcomm's claims: Arm leaked confidential information to the press, which harmed Qualcomm's business relationships. Regardless, Ann Chaplin, Qualcomm's General Counsel and Corporate Secretary, testified ██████████████████████████████ Ex. 24 at 196:2-8.

**Qualcomm's Competition-Related Claim.** Arm takes issue with Qualcomm's responses to Interrogatories 5, 7, and 8, but ignores Qualcomm's supplemental responses and "intends to identify additional issues in its next brief." Qualcomm's supplemental responses cured any previously alleged deficiencies. Arm has made no further arguments.

Qualcomm is not pursuing a Sherman Act claim in this case, yet Arm demands Qualcomm provide facts supporting such contentions. As Arm knows, the UCL does not require Qualcomm to define or analyze a market, as Arm seeks in its **Interrogatory 8**. *Epic Games, Inc.* v. *Apple, Inc.*, 67 F.4th 946, 1002 (9th Cir. 2023);[3] Ex. 25 (4/28/2025 Letter from C. Nyarady). Arm cites no case to the contrary. *Gamboa* v. *Apple*, 2025 WL 660190, at *6 (N.D. Cal. Feb. 28, 2025) (market definition in context of Sherman Act not UCL claim); *Racek* v. *Rady Children's Hospital of San Diego*, 2012 WL 2947881, at *6 (Cal. App. Jul. 20, 2012) (plaintiff UCL claim rejected due to failure to plead injury to competition, not failure to identify relevant market);[4] *Sun Microsystems, Inc.* v. *Microsoft Corp.* 87 F. Supp. 2d 992, 1001-02 (N.D. Cal. 2000) (case about defendant's *conduct*, not whether market adequately defined); *Ohio* v. *American Express Co.*, 585 U.S. 529, 539 (2018) (Sherman Act claim).

**Interrogatories 5 and 7** seek information on how Arm's actions "harm or threaten to harm competition" and ask Qualcomm to identify each of Arm's "unlawful and unfair business acts and practices."[5] Qualcomm responded to both interrogatories. Arm alleges Qualcomm's responses are insufficient because Qualcomm does not "identify the antitrust laws supposedly implicated by Arm's conduct." Arm Ltr. at 5. There is no such obligation. *See Epic Games*, 67 F.4th at 1002 (UCL does not import Sherman Act principles); *PeopleBrowsr, Inc.* v. *Twitter, Inc.*, 2013 WL 843032, at *4 (N.D. Cal. Mar. 6, 2013) (because "a violation of the unfair prong may be based on conduct that 'significantly threatens or harms competition,' . . . a violation of the unfair prong of the UCL does not necessarily require establishing a violation of the Sherman Act").

---

[3] Unsurprisingly, as Arm notes, Arm Ltr. at 6, *Epic Games* included extensive antitrust discovery; unlike here, that case included standalone antitrust claims.

[4] According to California rules, unpublished state-court opinions like *Racek* "must not be cited or relied on by a court or a party." Cal. R. of Ct. 8.1115(a); *id.* cmt. to (e)(3).

[5] Arm's demand for information is premature, as evidenced by Arm's own case. *Novanta Corp.* v. *Iradion Laser, Inc.*, 2016 WL 4987110, at *7 (D. Del. Sept. 16, 2016) ("a court may defer [contention] interrogatories until the end of discovery"). Qualcomm will supplement its response when it receives the documents and information Arm is presently withholding.

4

**Search Terms and Custodians.**  Pursuant to the ESI Order, D.I. 85 ¶ 2(b)(i), each party may request additional search terms.  Arm proposed four additional search terms—two of which Qualcomm accepted—and identified no additional gaps in Qualcomm's production.  Ex. 26.  Qualcomm produced 53,700 documents, consisting of 39,844 emails and 1,248 chats – in contrast to Arm's production consisting of 4,704 emails and 21 chats.

The two supposed deficiencies in Qualcomm's terms identified by Arm are wrong.  *First*, as Qualcomm already confirmed, "RISC" hits on any use of the formal name "RISC-V," and Arm's own RISC-V-related terms also do not use a "RISC*" root expander.  Ex. 8 at 4.  *Second*, Arm objects to two of Qualcomm's broadly written terms (one for unfair competition and one for OOBs and ACK patches) but does not explain why a broad term is automatically insufficient.  In any event, Qualcomm already agreed to expand its OOB and patches term and produced responsive documents.  *Id.* at 5.

Arm's other complaints are no more persuasive.  Arm states that the SAC "added new claims regarding Arm's alleged breach of the TLA and licensing of v10."  Arm Ltr. at 6.  Qualcomm already produced relevant material, given its position that Armv10 and the Qualcomm TLA were relevant to the First Amended Complaint, and disclosed to Arm search terms used "to locate potentially *responsive* ESI" as required by the ESI Order.  D.I. 85 ¶ 2(b)(i).  Finally, Arm claims that "Qualcomm refuses to run its terms against even witnesses it has identified as knowledgeable about the key issues."  Arm Ltr. at 7.  As Qualcomm repeatedly told Arm, it collected documents from individuals knowledgeable about issues in the case and produced discovery accordingly, including for witnesses identified in Interrogatories.  Ex. 8 at 7.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

Words: 2349

5

# Exhibit 2



```
                                                                1
          IN THE UNITED STATES DISTRICT COURT

             FOR THE DISTRICT OF DELAWARE


    HIGHLY CONFIDENTIAL/ ATTORNEYS' EYES ONLY


    QUALCOMM INCORPORATED,   )
    a Delaware corporation,  )
    QUALCOMM TECHNOLOGIES,   )
    INC., a Delaware         )
    corporation,             )
                             )
         Plaintiffs,         )
                             )Civil Action
    v.                       )No. 24-490-MN
                             )
    ARM HOLDINGS PLC,        )
    f/k/a ARM LTD., a U.K.   )
    corporation,             )
                             )
         Defendant.          )



             August 14, 2025
             12:00 p.m.



    BEFORE:
         HELENA C. RYCHLICKI, ESQ.
         SPECIAL DISCOVERY MASTER


              TRANSCRIPT OF PROCEEDINGS



              LEXITAS REPORTING
       Registered Professional Reporters
              1330 King Street
          Wilmington, Delaware 19801
              (302) 655-0477
             www.lexitaslegal.com
    NOTE:  All parties participated via
```

Case 1:24-cv-00490-MN   Document 588   Filed 01/13/26   Page 16 of 17 PageID #: 28926