IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED, )
   a Delaware corporation; and )
QUALCOMM TECHNOLOGIES, INC., )
   a Delaware corporation, )    C.A. No. 24-490 (MN)
     )
     Plaintiffs, )
     )
    v. )
     )    **REDACTED - PUBLIC VERSION**
ARM HOLDINGS PLC., f/k/a ARM LTD., )
   a U.K. corporation, )
     )
     Defendant. )

## APPENDIX TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S JANUARY 7, 2026 ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND (VOL. 1: A001-A405)

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007
(202) 240-2900

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

January 14, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

**Original Filing Date: January 14, 2026**
**Redacted Filing Date: January 21, 2026**

# TABLE OF CONTENTS

| Document | Page Range |
|---|---|
| *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holding PLC., f/k/a Arm Ltd., C.A. No. 24-490-MN,* Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Motion for Leave to Amend (Aug. 1, 2025) | A001 – A007 |
| Qualcomm Exhibit 1 - Arm Holdings Ltd. Form F-1 Registration Statement (Aug. 2023) | A008 – A014 |
| Qualcomm Exhibit 2 - Arm's First Supplemental Response to Qualcomm's Third Set of Interrogatories (No. 12) (July 11, 2025) | A015 – A030 |
| Qualcomm Exhibit 3 - Arm's Rule 26(a)(1) Fourth Supplemental Initial Disclosures (July 11, 2025) | A031 – A044 |
| Qualcomm Exhibit 4 - Arm Holdings PLC's First Set of Requests for Production to Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (Nos. 1-58) (Feb. 7, 2025) | A045 – A052 |
| Qualcomm Exhibit 5 - Arm Holdings PLC's Second Set of Requests for Production to Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (Nos. 59-122) (Mar. 14, 2025) | A053 – A060 |
| Qualcomm Exhibit 6 - Arm Holdings PLC's Third Set of Requests for Production to Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (Nos. 123-173) (Apr. 1, 2025) | A061 – A066 |
| Qualcomm Exhibit 7 - Arm's Fourth Set of Requests for Production to Qualcomm (Nos. 174-227) (June 9, 2025) | A067 – A071 |
| Qualcomm Exhibit 8 - Arm's Fifth Set of Requests for Production to Qualcomm (Nos. 228-287) (June 11, 2025) | A072 – A076 |
| Qualcomm Exhibit 9 - Arm Holdings PLC's First Set of Interrogatories to Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (Nos. 1-9) (Feb. 7, 2025) | A077 – A083 |
| Qualcomm Exhibit 10 - Arm Holdings PLC's Second Set of Interrogatories to Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (Nos. 10-13) (Apr. 9, 2025) | A084 – A090 |
| Qualcomm Exhibit 11 - Arm's Third Set of Interrogatories to Qualcomm (Nos. 14-23) (June 11, 2025) | A091 – A095 |

| | |
|---|---|
| Qualcomm Exhibit 12 - Arm's First Set of Requests for Admission to Qualcomm (Nos. 1-30) (June 11, 2025) | A096 – A101 |
| Qualcomm Exhibit 13 - Arm Holdings PLC's First Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1-3) (July 11, 2025) | A102 – A131 |
| Qualcomm Exhibit 14 - Arm's First Supplemental Response to Qualcomm's Amended Interrogatory No. 3 (July 11, 2025) | A132 – A141 |
| Qualcomm Exhibit 15 - Arm's First Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11) (July 11, 2025) | A142 – A211 |
| Qualcomm Exhibit 16 - Deposition of Spencer Collins (June 30, 2025) Excerpt | A212 – A216 |
| Qualcomm Exhibit 17 - Deposition of Michael J. Williams (June 27, 2025) Excerpt | A217 – A219 |
| Qualcomm Exhibit 18 - Deposition of Peter Greenhalgh (July 4, 2025) Excerpt | A220 – A222 |
| Qualcomm Exhibit 19 - Deposition of Jannik W. Nelson (July 10, 2025) Excerpt | A223 – A225 |
| Qualcomm Exhibit 20 - Deposition of Mohamed Awad (July 29, 2025) Excerpt | A226 – A228 |
| Qualcomm Exhibit 21 - Production Letter from David Nathaniel Tan to Catherine Nyarady (Apr. 22, 2025) | A229 – A230 |
| Qualcomm Exhibit 22 - Production Letter from David Nathaniel Tan to Catherine Nyarady (Apr. 28, 2025) | A231 – A232 |
| Qualcomm Exhibit 23 - Production Letter from David Nathaniel Tan to Catherine Nyarady (May 1, 2025) | A233 – A234 |
| Qualcomm Exhibit 24 - Production Letter from Henry Huttinger to Catherine Nyarady (June 3, 2025) | A235 – A236 |
| Qualcomm Exhibit 25 - Production Letter from Henry Huttinger to Catherine Nyarady (June 13, 2025) | A237 – A238 |
| Qualcomm Exhibit 26 - Production Letter from Henry Huttinger to Catherine Nyarady (June 17, 2025) | A239 – A240 |
| Qualcomm Exhibit 27 - Production Letter from Henry Huttinger to Catherine Nyarady (June 18, 2025) | A241 – A242 |

| | |
|---|---|
| Qualcomm Exhibit 28 - Production Letter from Henry Huttinger to Catherine Nyarady (June 19, 2025) | A243 – A244 |
| Qualcomm Exhibit 29 - Production Letter from Henry Huttinger to Catherine Nyarady (June 24, 2025) | A245 – A246 |
| Qualcomm Exhibit 30 - Production Letter from Henry Huttinger to Catherine Nyarady (June 3, 2025) | A247 – A248 |
| Qualcomm Exhibit 31 - Production Letter from Henry Huttinger to Catherine Nyarady (July 1, 2025) | A249 – A250 |
| Qualcomm Exhibit 32 - Production Letter from Henry Huttinger to Catherine Nyarady (July 3, 2025) | A251 – A252 |
| Qualcomm Exhibit 33 - Production Letter from Henry Huttinger to Catherine Nyarady (July 4, 2025) | A253 – A254 |
| Qualcomm Exhibit 34 - Production Letter from Henry Huttinger to Catherine Nyarady (July 8, 2025) | A255 – A256 |
| Qualcomm Exhibit 35 - Production Letter from Henry Huttinger to Catherine Nyarady (July 9, 2025) | A257 – A258 |
| Qualcomm Exhibit 36 – Letter from Henry Huttinger to Catherine Nyarady (July 11, 2025) | A259 – A260 |
| Qualcomm Exhibit 37 - Production Letter from Henry Huttinger to Catherine Nyarady (July 11, 2025) | A261 – A262 |
| Qualcomm Exhibit 38 - Arm Initial Privilege Log | A263 – A264 |
| Qualcomm Exhibit 39 - Arm First Supplemental Initial Privilege Log | A265 – A266 |
| Qualcomm Exhibit 40 - Arm Second Supplemental Initial Privilege Log | A267 – A268 |
| Qualcomm Exhibit 41 - Arm's Responses & Objections to Qualcomm's First Set of Request for Admissions (Nos. 1-28) | A269 – A275 |
| Qualcomm Exhibit 42 - Email from Jennifer Ying re: Qualcomm/Arm - C.A. No. 24-490 - Stipulation re Caption and Joinder (July 2025) | A276 – A281 |

| | |
|---|---|
| *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holding PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, ADI Letter Brief in Support of Nonparty Analog Devices, Inc.'s Motion for Protective Order (Sep. 16, 2025), Exhibit 2 | A282 |
| *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holding plc, f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Defendant Arm Holdings plc's Letter Brief to Special Master Rychlicki Opposing Plaintiffs' Motion for Leave to Amend (Aug. 7, 2025) | A283 – A289 |
| Declaration of Matthew J. McIntee in Support of Defendant's Letter to Special Master Helena C. Rychlicki Opposing Plaintiffs' Motion for Leave to Amend | A290 – A296 |
| Arm Exhibit 1 - Form 424B4 for Arm Holdings PLC UK (Sep. 13, 2023) | A297 – A301 |
| Arm Exhibit 2 - May 2024 Annual Report, 20-F Arm Holdings PLC FY2024 | A302 – A307 |
| Arm Exhibit 3 - D.I. 12, Arm's Corporate Disclosure Statement (June 12, 2024) | A308 – A312 |
| Arm Exhibit 4 - D.I. 31, Arm's Initial Answer to Qualcomm's Complaint (Nov. 13, 2024) | A313 – A338 |
| Arm Exhibit 5 - D.I. 234, Arm's Answer to Qualcomm's Second Amended Complaint (June 17, 2025) | A339 – A389 |
| Arm Exhibit 6 - Arm's First Supplemental Responses and Objections to Qualcomm's Third Set of Interrogatories (July 11, 2025) | A390 – A405 |
| Arm Exhibit 7 - D.I. 44, Scheduling Order (Jan. 31, 2025) | A406 – A417 |
| Arm Exhibit 8 - ARM_00055357 (May 31, 2013) | A418 – A461 |
| Arm Exhibit 9 - ARM_00103918 (May 31, 2013) | A462 – A517 |
| Arm Exhibit 10 - ARM_00063298 (May 29, 2013) | A518 – A533 |
| Arm Exhibit 11 - QCARM_0338573 (May 29, 2013) | A534 – A538 |
| Arm Exhibit 12 - QCARM_0343954 (June 19, 2020) | A539 – A562 |
| Arm Exhibit 13 - ARMQC_02772333 (Oct. 17, 2019) | A563 – A596 |
| Arm Exhibit 14 - ARMQC_02772366 (Oct. 17, 2019) | A597 – A617 |
| Arm Exhibit 15 - Qualcomm's Original Complaint (Apr. 18, 2024) | A618 – A642 |

| | |
|---|---|
| Arm Exhibit 16 - Qualcomm's First Amended Complaint (Dec. 16, 2024) | A643 – A694 |
| Arm Exhibit 17 - Qualcomm's Second Amended Complaint (June 3, 2025) | A695 – A765 |
| Arm Exhibit 18 - Qualcomm Purchase Order (Apr. 17, 2024) | A766 – A768 |
| Arm Exhibit 19 - Arm Holdings Form F-1 (Aug. 21, 2023) | A769 – A772 |
| Arm Exhibit 20 - Alphabet 2023 10-K | A773 – A778 |
| Arm Exhibit 21 - Anheuser-Busch 20-F | A779 – A783 |
| Arm Exhibit 22 - Qualcomm 2024 10-K | A784 – A787 |
| *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holding PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Special Master Hearing Transcript (Aug. 22, 2025) Excerpt | A789 – A795 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) ) | |
| | ) | C.A. No. 24-490 (MN) |
| Plaintiffs, | ) ) | **SUBMITTED UNDER SEAL -** |
| v. | ) ) | **HIGHLY CONFIDENTIAL –** **ATTORNEYS' EYES ONLY** |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI**
**REGARDING MOTION FOR LEAVE TO AMEND**

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

**A001**

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

August 1, 2025

Dear Special Master Rychlicki:

Qualcomm moves, pursuant to Federal Rules of Civil Procedure 15, 16, and 20 to amend its Complaint to name Arm Holdings plc. and Arm Ltd. as individual Defendants instead of "Arm Holdings plc. f/k/a Arm Ltd." and to assert each count in the Second Amended Complaint against both Defendants. Qualcomm asked Arm to stipulate to this amendment. Arm refused.

**I.    Good Cause Exists to Add Arm Ltd. as a Separate Defendant.**

Where, as here, the deadline to amend pleadings or add parties has passed, D.I. 44 ¶ 2, courts initially apply Rule 16(b)(4)'s "good cause" standard prior to reaching Rule 15(a)'s mandate to "freely give leave [to amend] when justice so requires." *Evonik Degussa GmbH* v. *Materia Inc.*, 2011 WL 13152274, at *3 (D. Del. Dec. 13, 2011) (quoting *Foman* v. *Davis*, 371 U.S. 178, 182 (1962)). Good cause is shown through a plaintiff's due diligence, *id.*, a showing Qualcomm has more than satisfied.

In 2023, Arm underwent a restructuring ahead of its IPO: Arm Holdings Ltd. went from being a wholly-owned subsidiary of Arm Ltd. to being Arm Ltd.'s holding company; Arm Holdings Ltd. then registered with the SEC and changed its name to Arm Holdings plc. Ex. 1 (Arm Holdings Ltd., Registration Statement (Form F-1) (Aug. 21, 2023)) at n.1, 82. Yet Arm has routinely obfuscated how exactly it continues to operate post-restructuring, including which entity has obligations under Arm's licenses.

Arm's 2023 prospectus described Arm Holdings plc. as the operating entity following the restructuring. For example, Arm's prospectus defined the terms "Arm," the "Company," "we," "us," and "our" to refer to "Arm Holdings plc. and its consolidated subsidiaries" once the reorganization was complete. *Id.* at ii. It then discussed "Our licensing and royalty business model" to include ALAs and TLAs. *Id.* at 86-87. Likewise, in its prospectus, Arm described Qualcomm's counterclaim against Arm Ltd. in the prior suit filed pre-corporate restructuring as "against us" and as "seeking a declaratory judgment that . . . Qualcomm's proposed products are fully licensed from us under its separate license agreements with us." *Id.* at 44. Accordingly, when Qualcomm filed its original complaint in this case, it named as Defendant "Arm Holdings plc. f/k/a Arm Ltd.," intending to sue the entity relevant to Qualcomm's breach-of-contract claim.

Until recently, Arm never asserted that Qualcomm sued the wrong party, only making vague statements denying Arm Holdings plc. was formerly known as Arm Ltd., D.I. 12 (Corporate Disclosure Stmt.); D.I. 31 (Arm's Initial Answer) ¶ 20, that Qualcomm understood as Arm merely clarifying its formal corporate structure.

Throughout discovery, Arm continued seemingly to represent that Qualcomm had, in fact, named the correct entity as Defendant:

- Arm waived service as to the entity "Arm Holdings plc. f/k/a Arm Ltd." D.I. 11.

**A003**

- Many of Arm's attorneys appeared on behalf of Arm Holdings plc. f/k/a Arm Ltd.  D.I. 45, 61, 76.

- Counsel for Arm signed stipulations on Arm's behalf as "Attorneys for Defendant Arm Holdings PLC f/k/a Arm Ltd."  D.I. 33, 37, 38, 271, 282, 306.

- Arm signed each certificate of service for its court filings on behalf of Arm Holdings plc. f/k/a Arm Ltd. through at least March 14, 2025, D.I. 73, including for court filings in which it denied Arm Holdings plc. was formerly known as Arm Ltd., D.I. 12, 31.

- Arm filed three motions to dismiss in this case, but none included the theory that Arm Holdings plc. is not a proper party to Qualcomm's claims, including the breach-of-contract claims.  D.I. 15, 48, 233.  Arm's second motion to dismiss was explicitly brought on behalf of "Defendant Arm Holdings PLC f/k/a Arm Ltd."  D.I. 47.

- Arm's first Answer did not plead a defense that Arm Holdings plc. was not a party to the Qualcomm ALA or TLA.  D.I. 31.

- Arm did not include any factual or legal bases that Arm Holdings plc. was not a party to the Qualcomm ALA or TLA in response to Qualcomm Interrogatory No. 12, which asked for Arm's "complete factual and legal bases for any defense or counterclaim that You assert in response to the Complaint."  Ex. 2.

- Arm's Initial Disclosures list Arm Ltd. employees with potential areas of knowledge regarding "Arm," defined as Arm Holdings plc.  Ex. 3; Ex. 16 (Collins) 6:17-25, 8:3-12; Ex. 17 (Williams) 7:11-12; Ex. 19 (Nelson) 8:14-15; Ex. 20 (Awad) 7:21-8:3.

- Arm served discovery requests with a certificate of service from "Arm Holdings PLC f/k/a Arm Ltd."  Ex. 4 (Arm's 1st Set of RFPs); Ex. 5 (Arm's 2d Set of RFPs); Ex. 9 (Arm's 1st Set of Rogs.).

- In its discovery requests, Arm repeatedly defined "Qualcomm ALA" as "the Amended and Restated Architecture License Agreement with *Arm*"—defined as *Arm Holdings PLC*—"dated May 31, 2013 ███████████████████████"  Ex. 4 (Arm's 1st Set of RFPs) at 7 (emphasis added); Ex. 5 (Arm's 2d Set of RFPs) at 7; Ex. 6 (Arm's 3d Set of RFPs) at 6; Ex. 7 (Arm's 4th Set of RFPs) at 1 (incorporating definitions from the first three sets); Ex. 8 (Arm's 5th Set of RFPs) at 1 (same); Ex. 9 (Arm's 1st Set of Rogs.) at 4; Ex. 10 (Arm's 2d Set of Rogs.) at 5; Ex. 11 (Arm's 3d Set of Rogs.) at 1 (incorporating definitions from the first two sets); Ex. 12 (Arm's 1st Set of RFAs) at 3.

- Arm Holdings plc. defined the term "ALA Breach Allegations and Communications" to include "statements in *its* November 15, 2022 and April 4, 2024 Answers" to Qualcomm's counterclaims in the prior litigation, Ex. 10 (Arm 2d Set of Rogs.) at 4 (emphasis added), even though those pleading were filed by Arm Ltd.  *Arm Ltd.* v. *Qualcomm Inc.*, C.A. 22-1146 (MN), D.I. 23, D.I. 318.

- Arm responded to numerous interrogatories by describing "Arm's"—defined as "Arm

Holdings plc."—actions that underlie the Second Amended Complaint, including Arm's licensing business, ALA and TLA agreements, and sending of the October 22 letter, all of which are the bases for Qualcomm's claims in this case. Exs. 2, 13-15.

- Arm provided deposition testimony from current or former Arm Ltd. employees, including Arm Ltd.'s Chief Legal Officer. *E.g.*, Ex. 16 (Collins) 6:17-25, 8:3-12; Ex. 17 (Williams) 7:11-12; Ex. 18 (Greenhalgh) 6:7-12; Ex. 19 (Nelson) 8:14-15; Ex. 20 (Awad) 7:21-8:3.

- Arm made its document productions (totaling 302,546 documents), including multiple productions made on the final day of fact discovery, on behalf of "Arm Ltd.," without ever asserting that Arm Ltd. was not properly a party to this litigation. Exs. 21-37 (Arm production letters).[1]

- Arm agreed to Qualcomm's use of discovery produced by Arm Ltd. in the prior litigation. D.I. 84 ¶¶ 34-36.

- Arm served privilege logs on behalf of "Defendant Arm Holdings PLC f/k/a Arm Ltd." on June 2, June 20, and July 11, 2025. Exs. 38-40.

Notwithstanding the foregoing, on June 17, 2025, six months into fact discovery and three months after the pleading amendment deadline, Arm answered the Second Amended Complaint, where it distinguished between Arm Holdings plc. and Arm Ltd. for the first time. *See* D.I. 234 (distinguishing between "Arm" and "Arm Ltd." nearly fifty times). In its Answer, Arm attempts to walk back its binding interrogatory responses, asserting that, for example, Arm Ltd., not Arm Holdings plc., "sent Qualcomm a notice of material breach of the Qualcomm ALA on October 22, 2024," *id.* ¶ 1, and that "Arm Holdings plc. is not a party to the Qualcomm ALA or TLA," *id.* at 39. Notably, Arm never amended its binding interrogatory responses to mirror its most recent pleading.

Even after Arm's June 17 Answer, it is unclear how Qualcomm can be expected to understand the inner workings of Arm's corporate structure given that Arm still continues to blur any distinction between Arm Ltd. and Arm Holdings plc. For example, in its June 17 Answer, Arm describes Arm Holdings plc. as the operating entity for purposes of Arm's licensing business. D.I. 234 ¶¶ 25, 44, 57. Likewise, Arm first stated that Qualcomm's September 20, 2024 notice of breach of the TLA was sent to Arm Ltd., *id.* ¶ 23, then a month later, said it was sent to Arm Holdings plc., Ex. 41 at 12-13 (R&O to QC RFA No. 17).

Qualcomm has "acted with the requisite diligence to understand the nature of" the reorganized Arm and Arm Ltd.'s role. *Ohana Enters., LLC* v. *Mourer Foster, Inc.*, 2024 WL 640753, at *4 (D.N.J. Feb. 15, 2024).

On June 30, Qualcomm deposed Spencer Collins, Executive Vice President and Chief Legal Officer of Arm Ltd. and member of the Executive Committee of Arm Holdings plc., who

---

[1] Qualcomm did not receive a production letter for Arm's seventeenth production, which contained just three documents.

testified ███████████████████████████████████████████████████████████████████████████████████ Ex. 16 (Collins) 27:21-32:11.  Further, despite having reviewed and approved the filing of the pleadings in the case, Mr. Collins ████████████████████████████████. *Id.* at 29:12-18, 30:18-31:14.  Two days after Mr. Collins' deposition, Qualcomm reached out to Arm to seek consent to name "Arm Ltd." as a separate Defendant.  Ex. 42 (7/2/25 Ltr. from J. Ying).

Because Qualcomm "did not have a sufficient understanding of the relationship between certain entities until proceeding to depositions," good cause exists to permit Qualcomm to amend its complaint now, after the pleading amendment deadline has passed.  *Ohana Enters.*, 2024 WL 640753, at *4 (collecting cases); *see Clark* v. *Blackfoot-Bey*, 2012 WL 5383321, at *5 (E.D. Pa. Nov. 1, 2012) (permitting addition of corporate defendant after deadline based on information learned in discovery); *PBM Prods.* v. *Mead Johnson Nutrition Co.*, 2009 WL 4665746, at *2 (E.D. Va. Dec. 1, 2009) (good cause exists where party "has not made a distinction between [related entities] due to their close corporate relationship and discovery has proceeded on this basis").

## II.    Adding Arm Ltd. as a Defendant Satisfies Rules 15 and 20.

"Leave to amend must generally be granted unless equitable considerations" such as "undue delay, bad faith, and futility" render it "otherwise unjust."  *Arthur* v. *Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).  For the reasons discussed above, no such equitable considerations are implicated by Qualcomm's proposed amendment, and permitting the proposed amendment would neither prejudice Arm nor burden the Court with additional discovery disputes or any extensions of the case schedule.[3]

To date, Arm conducted itself in all respects as though Arm Ltd. was already joined and therefore would suffer no prejudice from Qualcomm's request.  Arm produced hundreds of thousands of documents exclusively on behalf of Arm Ltd., not Arm Holdings plc.  Arm made

---

[2] Arm Ltd., not Arm Holdings plc., is the named party in the 2013 Qualcomm ALA and TLA.

[3] In analogous situations, courts within the Third Circuit apply the "misnomer rule" to amend the case caption pursuant to Rule 15 and correctly identify the intended defendant.  The misnomer rule applies "when a plaintiff misnames or misidentifies a party in its pleadings but correctly serves that party," including "in cases when a plaintiff sues a parent instead of a subsidiary."  *In re QDN, LLC*, 363 F. App'x 873, 877 (3d Cir. 2010); *see Sharp* v. *Verizon Delaware LLC*, 2014 WL 350089, at *1 n.1 (D. Del. Jan. 31, 2014) (applying misnomer rule *sua sponte*), *report and recommendation adopted*, 2014 WL 707238 (D. Del. Feb. 21, 2014).  "The basic test for the misnomer rule is whether it would be reasonable to conclude that plaintiff had in mind the proper entity or person, merely made a mistake as to the name, and actually served the entity or person intended; or whether the plaintiff actually meant to serve and sue a different person."  *Zameska* v. *Seguros Ing Com. Am., S.A. de C.V.*, 2005 WL 615749, at *1 (E.D. Pa. Mar. 15, 2005) (cleaned up).  Qualcomm's use of "f/k/a Arm Ltd." shows it always intended to include Arm Ltd. in the case.

Arm Ltd. employees available for deposition. And Arm provided substantial written discovery regarding events it now claims only pertain to Arm Ltd., not Arm Holdings plc.

On the parties' meet and confer, Arm claimed untimeliness and prejudice, stating that it was prejudiced because it would have "done things differently" in discovery. When pressed, however, Arm was unable to identify anything specific it would have done differently had Arm Ltd. been a separately named party.[4] "But the non-moving party must do more than merely claim prejudice; 'it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely.'" *Bechtel* v. *Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Heyl & Patterson Int'l, Inc.* v. *F.D. Rich Housing*, 663 F.2d 419, 426 (3d Cir. 1981)) (alteration in original). Having already litigated this case—and completed fact discovery—without making "a distinction between" Arm entities, Arm cannot make such a showing. *PBM Prods.*, 2009 WL 4665746, at *2; *cf. Airtech Int'l Inc.* v. *Yim*, 2025 WL 1393223, at *5 (D.N.J. May 14, 2025) ("[B]ecause discovery pertaining to these Proposed Defendants has already been underway since Plaintiff learned of their existence, the Court finds no undue prejudice in joining them[.]").

Likewise, Qualcomm's proposed amendment satisfies Rule 20, which permits the joinder of defendants when "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The proposed amendment adds no new factual allegations, let alone any from a different transaction or occurrence, nor any new questions of law or fact. In addition, Qualcomm seeks no additional discovery. Accordingly, joinder of Arm Ltd. is proper.

*    *    *

For these reasons, Qualcomm respectfully requests that the Court grant its motion to amend the case caption and to add Arm Ltd. as a separately named Defendant.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 2388

---

[4] Having failed to identify any specific actions it would have "done differently" on the meet and confer, Arm should not be permitted to raise those for the first time in its opposition.

5

**A007**

# Exhibit 1

F-1 1 d393891df1.htm F-1

Table of Contents

As filed with the Securities and Exchange Commission on August 21, 2023.

Registration Statement No. 333-

---

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

### Form F-1
## REGISTRATION STATEMENT
#### UNDER
#### THE SECURITIES ACT OF 1933

---

# Arm Holdings Limited[1]

---

| England and Wales | 3674 | Not applicable |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Primary Standard Industrial Classification Code Number) | (I.R.S. Employer Identification Number) |

110 Fulbourn Road
Cambridge CB1 9NJ
United Kingdom
Tel: +44 (1223) 400 400
(Address, including zip code, and telephone number, including area code, of Registrant's principal executive offices)

---

Arm, Inc.
120 Rose Orchard Way
San Jose, CA 95134
Tel: +1 (408) 576-1500
(Name, address, including zip code, and telephone number, including area code, of agent for service)

---

Copies of all communications, including communications sent to agent for service, should be sent to:

| Justin R. Salon | Kenneth A. Siegel | Richard D. Truesdell, Jr. |
|---|---|---|
| R. John Hensley | Jesse S. Gillespie | Derek J. Dostal |
| John T. Owen | Morrison & Foerster LLP | Davis Polk & Wardwell LLP |
| Morrison & Foerster LLP | Shin-Marunouchi Building, 29th Floor | 450 Lexington Avenue |
| 2100 L Street, NW, Suite 900 | 5-1, Marunouchi 1-Chome | New York, New York 10017 |
| Washington, D.C. 20037 | Chiyoda-ku, Tokyo, Japan 100-6529 | +1 (212) 450-4000 |
| +1 (202) 887-1500 | +81-3-3214-6522 | |

---

**Approximate date of commencement of proposed sale to public:**
As soon as practicable after this registration statement becomes effective.

If any of the securities being registered on this Form are to be offered on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, check the following box. ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(c) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act.

Emerging growth company ☐

If an emerging growth company that prepares its financial statements in accordance with U.S. GAAP, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards† provided pursuant to Section 7(a)(2)(B) of the Securities Act. ☐

**The registrant hereby amends this registration statement on such date or dates as may be necessary to delay its effective date until the registrant shall file a further amendment which specifically states that this registration statement shall thereafter become effective in accordance with Section 8(a) of the Securities Act of 1933, as amended, or until the registration statement shall become effective on such date as the Commission, acting pursuant to such Section 8(a), shall determine.**

---

† The term "new or revised financial accounting standard" refers to any update issued by the Financial Accounting Standards Board to its Accounting Standards Codification after April 5, 2012.

1 Arm Holdings Limited, a company with limited liability incorporated under the laws of England and Wales, will become the holding company of Arm Limited and will be the Registrant. Arm Holdings Limited aid will be the Registrant under English law from a private limited company by re-registering as a public limited company and changing the name of the Registrant from Arm Holdings Limited to Arm Holdings plc prior to the completion of this offering. See the section titled "Corporate Reorganization" in the prospectus which forms a part of this registration statement.

ARM_01262030

Table of Contents

Neither we, the selling shareholder nor the underwriters have authorized anyone to provide you with information that is different from that contained in this prospectus or in any free writing prospectus we may authorize to be delivered or made available to you. Neither we, the selling shareholder nor the underwriters take any responsibility for, or provide any assurance as to the reliability of, any other information that others may give you. We, the selling shareholder and the underwriters are offering to sell ADSs and seeking offers to purchase ADSs only in the U.S. and certain other jurisdictions where offers and sales are permitted. The information contained in this prospectus is accurate only as of the date on the cover page of this prospectus, regardless of the time of delivery of this prospectus or any sale of ADSs.

For investors outside the U.S.: Neither we, the selling shareholder nor any of the underwriters have taken any action to permit this offering or possession or distribution of this prospectus in any jurisdiction where action for that purpose is required, other than in the U.S. You are required to inform yourselves about and to observe any restrictions relating to this offering and the distribution of this prospectus.

We are incorporated under the laws of England and Wales and a majority of our outstanding securities is owned by non-U.S. residents. Under the rules of the U.S. Securities and Exchange Commission (the "SEC"), we are eligible for treatment as a "foreign private issuer." As a foreign private issuer, we will not be required to file periodic reports and financial statements with the SEC as frequently or as promptly as domestic registrants whose securities are registered under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

### ABOUT THIS PROSPECTUS

Prior to the completion of this offering, we underwent a corporate reorganization described under the section titled "Corporate Reorganization," pursuant to which Arm Limited became a wholly owned subsidiary of Arm Holdings Limited, a holding company with nominal assets and no liabilities, contingencies or commitments, which has not conducted any operations prior to this offering other than acquiring the entire issued share capital of Arm Limited. Prior to the completion of this offering, we intend to re-register Arm Holdings Limited as a public limited company and to change its name from Arm Holdings Limited to Arm Holdings plc.

Unless otherwise indicated or the context otherwise requires, in this prospectus, "Arm," the "Company," "we," "us" and "our" refer to (i) Arm Limited and its consolidated subsidiaries prior to the completion of our corporate reorganization, (ii) Arm Holdings Limited and its consolidated subsidiaries after the completion of our corporate reorganization and prior to the re-registration of Arm Holdings Limited as a public limited company and (iii) Arm Holdings plc and its consolidated subsidiaries after the re-registration of Arm Holdings Limited as a public limited company. See "Corporate Reorganization" and "Description of Share Capital and Articles of Association."

### NOTE REGARDING TRADEMARKS, TRADENAMES AND SERVICE MARKS

This prospectus includes trademarks, tradenames and service marks, certain of which belong to us and others that are the property of other organizations. Solely for convenience, trademarks, tradenames and service marks referred to in this prospectus appear without the ®, ™ and ℠ symbols, but the absence of those symbols is not intended to indicate, in any way, that we will not assert our rights or that the applicable owner will not assert its rights to these trademarks, tradenames and service marks to the fullest extent under applicable law. We do not intend our use or display of other parties' trademarks, tradenames or service marks to imply, and such use or display should not be construed to imply, a relationship with, or endorsement or sponsorship of us by, these other parties.

ii

ARM_01262036

**A010**

Table of Contents

rebrand certain of our products, any one of which could have a material adverse effect on our business, results of operations, financial condition and prospects.

In addition to the time and expense required for us to satisfy our support and indemnification obligations to our customers and partners, any litigation could severely disrupt or shut down the business of our customers and partners, which in turn could damage our relations with them and have a material adverse effect on our business, reputation, results of operations, financial condition and prospects.

*We are currently involved in pending litigation.*

From time to time, we are involved in various legal, administrative and regulatory proceedings, claims, demands and investigations relating to our business, which may include claims with respect to commercial, product liability, IP, cybersecurity, privacy, data protection, antitrust, breach of contract, labor and employment, whistleblower, mergers and acquisitions and other matters. We are involved in pending litigation, including, but not limited to, a lawsuit with Qualcomm Inc. and Qualcomm Technologies, Inc. (together "Qualcomm") and Nuvia, Inc. ("Nuvia"). In addition, our products are involved in pending litigation to which we are not a party. We cannot provide you any assurances regarding how any such litigation will be resolved, what benefits we will obtain or what losses we might incur.

On August 31, 2022, we sued Qualcomm and Nuvia in the U.S. District Court for the District of Delaware, on the basis that Qualcomm and Nuvia: (i) breached the termination provisions of Nuvia's Architecture License Agreement (the "Nuvia ALA") with us by failing to destroy technology Nuvia developed under the Nuvia ALA, which we terminated in March 2022 based on Nuvia's failure to obtain our consent to the assignment of the Nuvia ALA to Qualcomm; and (ii) will infringe our trademarks when Qualcomm uses them in connection with the Nuvia technology subject to destruction under the Nuvia ALA. Our complaint seeks, among other things, specific performance of the Nuvia ALA termination provisions to require Qualcomm and Nuvia to stop using and to destroy the relevant Nuvia technology and to stop their improper use of our trademarks with their related products. We also seek declaratory judgment, injunctive relief and damages relating to Qualcomm's and Nuvia's breach of contract and infringement of our trademarks in connection with the relevant Nuvia technology. Qualcomm has responded and brought a counterclaim against us seeking a declaratory judgment that after Qualcomm's acquisition of Nuvia, Qualcomm's proposed products are fully licensed from us under its separate license agreements with us and that it has complied with its contractual obligations to us and Nuvia did not breach the Nuvia ALA. We and Qualcomm can amend our respective claims to seek additional or different relief as the proceedings progress. We can provide no assurances regarding the outcome of the litigation or how the litigation will affect our relationship with Qualcomm, which is currently a major customer of ours and accounted for 11% of our total revenue for the fiscal year ended March 31, 2023. This case is currently in the discovery phase, with trial set for September 2024, and will likely require significant legal expenditures going forward. It may also require substantial time and attention from our executives or employees, which could distract them from operating our business. In addition, our involvement in such litigation could cause us to incur significant reputational damage in the industry, in our relationship with Qualcomm or in our relationship with other third-party partners.

These matters can be time-consuming, divert management's attention and resources, cause us to incur significant expenses and lead to attempts on the part of other parties to pursue similar claims. Allegations made in the course of regulatory or legal proceedings may also harm our reputation, regardless of whether there is merit to such claims. Furthermore, because litigation and the outcome of regulatory proceedings are inherently unpredictable, our business, results of operations, financial condition and prospects could be materially adversely affected by an unfavorable resolution of one or more of these proceedings, claims, demands or investigations.

44

ARM_01262084

**A011**

Table of Contents

### CORPORATE REORGANIZATION

On April 9, 2018, Arm Holdings Limited was incorporated as a wholly-owned subsidiary of Arm Limited under the laws of England and Wales with nominal assets and liabilities, contingencies and commitments. After consummating the corporate reorganization described herein, including the re-registration of Arm Holdings Limited as a public limited company, Arm Holdings plc became the ultimate holding company for Arm Limited. Arm Limited in turn was incorporated as a private company with limited liability under the laws of England and Wales on November 12, 1990.

Arm Holdings plc is a holding company which, since formation, has not conducted any operations other than activities incidental to the maintenance of its legal existence, the corporate reorganization and this offering. Investors in this offering will only acquire, and this prospectus only describes the offering of, ADSs representing ordinary shares of Arm Holdings plc. Ordinary shares of Arm Holdings plc will not be offered to investors as part of this offering.

The corporate reorganization took place in several steps, all of which were completed prior to the completion of this offering. We refer to these steps, which are discussed below, as our "corporate reorganization."

#### Amendment of the Articles of Association of, and First Reorganization of Share Capital of, Arm Holdings Limited

On         , 2023, Arm Holdings Limited amended its articles of association to permit its merger reserve to legally be used to pay up the shares allotted as a bonus issue, and to allow the creation of a new class of deferred shares (which carry no or extremely limited voting rights, and no right to share in the income or capital of Arm Holdings Limited). On         , 2023, Arm Holdings Limited undertook a reorganization of its share capital to sub-divide its share capital of 100 ordinary shares of £1.00 each into 100,000 ordinary shares of £0.001 each.

#### Distribution of Ordinary Shares of Arm Holdings Limited by Arm Limited

On         , 2023, Arm Limited distributed 100,000 ordinary shares of £0.001 each in the capital of Arm Holdings Limited (such number of shares together constituting 100% of the ordinary shares of Arm Holdings Limited) to Kronos II LLC, Arm Limited's majority shareholder immediately prior to the distribution. We refer to the shares of Arm Holdings Limited distributed to Kronos II LLC as the "Dividend Shares."

#### Exchange of Ordinary Shares of Arm Limited for Shares of Arm Holdings Limited

Following the completion of the distribution of the Dividend Shares, on         , 2023, Kronos II LLC transferred its entire shareholding in the capital of Arm Limited, being 1,025,233,999 ordinary shares of £0.001 each, to Arm Holdings Limited in exchange for receiving 1,025,133,999 newly issued ordinary shares of £0.001 each in the capital of Arm Holdings Limited, and SVF HoldCo (UK) Limited transferred its entire shareholding in the capital of Arm Limited, being one ordinary share of £0.001, to Arm Holdings Limited in exchange for receiving one newly issued ordinary share of £0.001 in the capital of Arm Holdings Limited. We refer to this as the "Share Exchange." Following the Share Exchange, the former holders of shares in Arm Limited now hold shares in Arm Holdings Limited of the same class and in the same proportions as their previous shareholdings in Arm Limited. Arm Limited became a wholly-owned subsidiary of Arm Holdings Limited as a result of the Share Exchange. As a result of the Share Exchange, an English company law merger reserve in Arm Holdings Limited was created.

#### First Bonus Issue of Arm Holdings Limited

Following the completion of the Share Exchange, on         , 2023, Arm Holdings Limited capitalized a portion of the amount standing to the credit of its merger reserve and applied such sums in paying up in full new

82

ARM_01262122

**A012**

Table of Contents

expanding our market share in growth markets, including cloud compute, networking equipment, automotive and consumer electronics. We believe that the increasing need for high-powered and energy-efficient computing, as well as our continued investments, will enable us to grow our share in these segments. We also intend to expand our system IP and platform product offerings by continuing to develop a broader set of systems IP specifically developed for use with Arm processors. Across all our end markets and products, we believe that, as chip designs become more advanced and complex, our investments in additional functionality, higher performance, higher efficiency, and more specialized designs will allow us to deliver more value to our partners.

We have achieved significant growth since our inception. For our fiscal years ended March 31, 2023, 2022 and 2021, our total revenue was $2,679 million, $2,703 million and $2,027 million, respectively. Over that same period, net income from continuing operations was $524 million, $676 million and $544 million, respectively.

## Our Business Model

We have a flexible business model for licensing products to customers, and we are continuously assessing our ability to provide greater flexibility to our customers and maximize the number of design wins for our products. Our customers license our products for a fee, which gives them access to our products and enables them to develop Arm-based processors. Once a processor has been designed and manufactured with our products, we receive a per-unit royalty on substantially all Arm-based chips shipped by our customers. Our business model enables the widest range of customers to access Arm products through an agreement best suited to their particular business needs. Our licensing and royalty business model includes:

- *Arm Total Access Agreements*: Under an Arm Total Access agreement, we license a portfolio of CPU designs and related technologies to a customer in return for an annual fee determined at execution of the agreement. We retain the right, from time to time, to add or remove specific products from the package. The agreement is for a fixed term and may limit the number of concurrent chip designs that may use products from the package.

- *Arm Flexible Access Agreements*: Under an Arm Flexible Access agreement, we license a portfolio of CPU designs and related technologies to a customer in return for an annual fee determined at execution of the agreement. Unlike an Arm Total Access license, the package of products licensed pursuant to an Arm Flexible Access agreement will not contain our latest products. Although customers are free to experiment with products contained in the Arm Flexible Access package, they must pay a single use license fee for specific products if they include Arm products in a final chip design "tape out," when the final result of a semiconductor chip design is sent for manufacturing. As with an Arm Total Access agreement, we retain the right, from time to time, to add or remove specific products from the package.

- *Technology Licensing Agreements (TLA)*: Under a TLA, we license a single CPU design or other technology design to a customer in return for a fixed license fee. The license may be limited by term (i.e., the number of years during which the licensee is entitled to incorporate our products in new chip designs, but licensees typically have the right to manufacture designs perpetually) and/or by number of uses (i.e., the number of concurrent chip designs that may use our products).

- *Architecture License Agreements (ALA)*: Under an ALA, the licensee is allowed to develop their own highly customized CPU designs that is compliant with the Arm ISA for a fixed architecture license fee. As the creation of an optimized CPU is very costly and time consuming, architecture licensees will often also license Arm CPU designs to use either as a complementary processor alongside the licensee's Arm-compliant CPU design, or in other chips where the licensee's own design is unsuitable.

- *Royalty Fees*: We generate the majority of our revenue from customers who enter into license agreements, pursuant to which we receive royalty fees based on average selling price of the customer's Arm-based chip or a fixed fee per chip. Royalty revenues are impacted primarily by the adoption of our products by the licensee as well as other factors, such as product lifecycles, customer's business performance, market trends and global supply constraints. In the fiscal year ended March 31, 2023, royalty revenue represented 63% of our total revenue.

86

ARM_01262126

Table of Contents

Historically, most customers licensed our products under the terms of a TLA. In 2019 and 2021, we introduced the Arm Flexible Access and Arm Total Access agreements, respectively, to enable the widest range of customers to access our products through methods best suited to their particular business needs. We believe that the Arm Total Access and Arm Flexible Access agreements provide enhanced flexibility for our customers (as compared to the TLA business model) and increase the number of chip designs using our products. While certain customers will elect to remain TLA customers, some customers are in the process of transitioning from TLAs to Arm Total Access and Arm Flexible Access agreements. We may experience variability in license revenues due to the timing of product deliveries within each TLA, Arm Total Access and Arm Flexible Access agreement. However, because Arm Total Access and Arm Flexible Access agreements are renewable in nature, as customers transition away from TLAs, we expect our visibility into future license revenues to improve.

We typically are able to command a royalty for chips that contain our products, which creates a long-term recurring revenue opportunity from each design win. We typically see sustained revenue streams from older chips, as products containing those chips continue to be sold and older processors are incorporated into new chips, creating a cumulative effect that fuels long-term growth. For example, based on royalty revenue information provided to us by customers in quarterly royalty reports, approximately 46% of our royalty revenue for the fiscal year ended March 31, 2023 came from products released between 1990 to 2012. Additionally, as we transition to more Arm Total Access and Arm Flexible Access licenses, we expect more of our products to be incorporated into more of our customers' chip designs, and our royalty revenue to increase over time as a result.

LOGO

**Key Factors and Trends Affecting Our Operating Results**

We believe that the growth of our business and our future success are dependent upon many factors, including those described in the section titled "Risk Factors" and elsewhere in this prospectus as well as the factors described below. While each of these factors presents significant opportunities for us, these factors also pose challenges that we must successfully address in order to sustain the growth of our business and enhance our results of operations.

*Global Demand for Semiconductor Products and Cyclical Nature of the Semiconductor Industry*

Semiconductor chips are essential components in consumer, enterprise, and automotive electronics, which has resulted in sustained and increasing long-term demand for semiconductor chips, a significant percentage of which contain our products. Our license and royalty revenues are, in part, affected by market conditions in the

87

ARM_01262127

# Exhibit 2

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC, f/k/a, ARM LTD. a U.K. corporation<br><br>Defendant. | C.A. No. 24-490-MN<br><br>**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY** |

**ARM'S FIRST SUPPLEMENTAL RESPONSE TO
QUALCOMM'S THIRD SET OF INTERROGATORIES (NO. 12)**

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively "Qualcomm")'s Third Set of Interrogatories (No. 12).

**GENERAL OBJECTIONS**

Arm incorporates by reference the Objections set forth in Arm's responses to Qualcomm's First Set of Interrogatories, served March 24, 2025, Qualcomm's Second Set of Interrogatories, served June 16, 2025, Arm's supplemental response to Qualcomm's Amended Interrogatory No. 3, served June 18, 2025, and Arm's Objections and Responses to Qualcomm's Third Set of Interrogatories No. 12, served July 9, 2025.

1

**A016**

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

**SPECIFIC OBJECTIONS AND RESPONSES**

**INTERROGATORY NO. 12:**

Identify and describe in detail the complete factual and legal bases for any defense or counterclaim that You assert in response to the Complaint. Your response should include an identification of all persons knowledgeable about the facts referenced or relied upon in your response, and all documents (by Bates number) you rely upon in support of your response.

**RESPONSE TO INTERROGATORY NO. 12 (JULY 9, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it seeks information regarding "the complete factual and legal bases" for "any defense," "all persons," and "all documents," without limitation. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties. Arm further objects to this request to the extent it seeks expert testimony, which is not yet due and will be provided in accordance with the Scheduling Order. Arm further objects to this request as duplicative of other Interrogatories.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm's Answer sets forth detailed explanations of the factual and legal basis for Arm's defenses that it is asserting in this case, which include: Failure to State a Claim; Waiver/Estoppel/Laches/Acquiescence; Unclean Hands; Limits on Damages; Compulsory Counterclaims/Res Judicata/Collateral Estoppel; the *Noerr-Pennington* Doctrine and California

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

Litigation Privilege; the Statute of Limitations; Freedom of Speech and Freedom to Petition; Claim and Issue Preclusion; Qualcomm's Failure to Mitigate; and Unenforceability of the ALA and TLA. D.I. 234 at pp. 39–46. Arm incorporates by reference its Answer to Qualcomm's Second Amended Complaint, D.I. 234. Arm asserts all of these defenses and its incorporation by reference of them here should not be construed as a waiver or forfeiture of any such defenses.

Arm also incorporates by reference its Motion to Dismiss, D.I. 19, 28, Arm's Motion To Dismiss Qualcomm's First Amended Complaint, D.I. 48, 72, and Arm's Motion to Dismiss Qualcomm's Second Amended Complaint, D.I. 232, 233, 305. Arm's Motions to Dismiss further expand on Arm's defenses and provides further factual and legal details support for them, including regarding Arm's *Noerr-Pennington*, California Litigation Privilege, and Anti-SLAPP (D.I. 233 at 4–8), Failure to State a Claim (D.I. 233 at 9–19), and Statute of Limitations (D.I. 233 at 20) defenses. Further, Arm incorporates by reference its responses to Qualcomm's Interrogatory Nos. 1–11, including the testimony and documents cited therein (and any supplements thereto), which contain additional factual and legal support for Arm's defenses.

Arm also provides below additional explanation regarding certain of its defenses. Arm notes, however, that Qualcomm to date has refused to provide meaningful or reciprocal discovery into its allegations. For example, Qualcomm has failed to remedy any of the deficiencies in Qualcomm's production set forth in Arm's letter briefing on discovery disputes. *See* D.I. 159. Qualcomm has also refused to supplement its interrogatory responses to meaningfully disclose its case theories. Qualcomm has also asserted improper privilege claims over information that is business advice or strategy, and not legal in nature. In another example, Qualcomm has refused to produce communications with the media or customers about its rights under the QC ALA despite alleging that Arm's statements about the same damaged Qualcomm's customer relationships,

3

**A018**

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

documents regarding its publication of the same letter in its SEC filings as described above, and documents concerning its own "leaking," including for a story about confidential competition complaints QC placed with the same reporter at the same news outlet Arm allegedly communicated with.  Qualcomm's improper refusal to provide or to block discovery on the core issues in the case has impaired Arm's ability to further develop its defenses.  Accordingly, Arm provides this response and additional information based on the information currently available to it, and reserves the right to supplement this response should Qualcomm provide additional discovery, including any depositions taken in the future or after the close of the fact discovery period.

**<u>Unclean Hands</u>**

As set forth in Arm's answer, D.I. 234 at 43–44, Qualcomm's claims are barred, in whole or in part, by the equitable doctrine of unclean hands.  In addition to Qualcomm's actions regarding Nuvia and Qualcomm's publishing of Arm's October 2024 letter, discovery has revealed that Qualcomm's actions surrounding its requests to renew licenses for ███████████████ in October 2024 constitute unclean hands.  Qualcomm's requests to Arm for ██████████ ██████ in 2024 were made in bad faith, were deceitful, and/or were fraudulent, including because they were made as a pretext to prompt a response from Arm regarding other products.  For example,

████████████████████████████████████████████████

████████████████████████████████████████████████

██████ *See, e.g.*, Wolf Dep. at 75–77. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

*See* QCVARM_0605055. ████████████████████████████

4

**A019**

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

███████████████████████████████████████████

██████████████████. *Id.* ██████████████████

███████████████████████████████████████████

QCVARM_0447175. And although Arm later agreed to terms for renewal licenses on certain peripheral IP with Qualcomm, Qualcomm never attempted to negotiate better terms for or discuss the ████████ with Arm, confirming that it had no legitimate plan to use those cores after October 2026, through which it is licensed under its current agreement.

These actions constitute bad faith, were deceitful, and/or were fraudulent as evidenced by other documents produced by Qualcomm, and are directly related to Arm's alleged breach of the TLA as asserted by Qualcomm in the SAC. *See, e.g.,* D.I. 137, Counts VII, VIII. Indeed, ███████

███████████████████████████████████████████

██████████████████████████. *See* QCVARM_0447175. ███████

███████████████████████████████████████████

███████████████████████████████████████████

████████████ *Id.* With ██████████████, Qualcomm ████████████████████ those products after October 2026 as it did not have those products on its CPU roadmap for the future. ██████████████████████████████████████

██████████████████████████████████████ Wolf Dep. at 180–181.

Further, given the ongoing disputes between Qualcomm and Arm, Qualcomm not only used its 2024 licensing demands ██████████████████, but also to manufacture additional meritless claims to assert against Arm in litigation, and as a basis to withhold royalty payments to

5

**A020**

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

Arm under ▮▮▮ of the TLA.  Thus, any remedies Qualcomm seeks in connection with Arm's alleged violation of the TLA are barred by the doctrine of unclean hands.

**<u>Limits on Damages</u>**

As set forth in Arm's Answer, D.I. 234 at 44, the Qualcomm ALA and TLA limit the damages available for any alleged breach.  As an initial matter, Qualcomm has failed to show what its purported damages are for any allegation it has made in the complaint.  Nor has Qualcomm identified evidence purporting to quantify the supposed "harm" it has suffered as a result of Arm's alleged actions.  Arm disputes that Qualcomm has suffered any "harm" or damages, and reserves the right to supplement this response in the event Qualcomm later attempts to show any purported "harm" or damages.

Setting aside this failure of proof, Qualcomm's damages, if any, are limited by the ALA and TLA.  For example,



ARM_000558357 at 381. ▮▮▮▮▮▮▮. *See* ARM_00103918 at 937.  To the extent Qualcomm intends to seek damages for any of these types of damages, it is precluded from doing so.  For example, any interruption of Qualcomm's business due to Arm's alleged actions, such as "shifting resources," "delays," or changes made in its

6

**A021**

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

"roadmapping and SoC planning process," is something Qualcomm agreed that it is not permitted to recover.  *See, e.g.*, D.I. 137 ¶¶ 180, 188, 195–196, 203, 211, 220, 226.  Likewise, Qualcomm cannot recover for any supposed "harm" identified by Mr. Amon, such as, but not limited to, ██

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██"  *See* C. Amon Dep Transcript (Rough).

    In another example, the TLA provides in ██████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

*See* ARM_00103918 at 931.  ████████████████

██████████████████████████████████████

████████████████  Thus, Qualcomm is contractually barred from seeking any other damages or remedies for alleged breaches of ████, including consequential or indirect damages, and is limited to the specific contractual remedies set forth in the TLA in ████████

██.  Moreover, even if Qualcomm could overcome these contractual limitations on liability, it cannot establish that Arm's alleged conduct was the but-for or proximate cause of any harms that Qualcomm allegedly suffered.

**Unenforceability of Qualcomm ALA and TLA Provisions**

    As set forth in Arm's Answer, D.I. 234 at 46, ████ of the QC ALA and the QC TLA provide that a breach by Arm of certain provisions of the ALA or TLA will result in ████████

██████████████████████████████████████

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

███████████████████████████████████████████████████

██████████████████████  ARM_00103918 at 956; ARM_00055357 at 373.  These provisions are unenforceable and unreasonable contractual penalty clauses.

For example, Qualcomm has not suffered any harm as a result of Arm's alleged breach of ████████ of the QC ALA, nor has Qualcomm identified any such harm.  Although Arm has served interrogatories seeking Qualcomm's complete factual and legal basis for contending that Arm's conduct has harmed Qualcomm (Arm Interrogatory No. 1) and seeking a specific description of Qualcomm's efforts to verify or attempt to verify compliance with the Arm architecture (Arm Interrogatory No. 13), Qualcomm has failed to identify any particular harm that Qualcomm claims to have suffered as a result of Arm's alleged breach of ████████ of the QC ALA other than to repeat its allegation from the complaint that Qualcomm was "forced to (1) expend extra time and resources, including Qualcomm engineers, to run ACK tests to verify compliance with the Arm ISA, and (2) use their own engineers to address issues that would have been addressed by Arm's patches."  *See* Qualcomm's Resp. to Arm Interrog. No. 1.

To the contrary, Arm's alleged withholding of OOB and ACK patches (which Arm disputes, and which does not constitute a breach of ████████ of the QC ALA, including for the reasons explained in Arm's response to Qualcomm Interrogatory Nos. 1 and 5) did not prevent Qualcomm from completing the verification process for Nuvia-based custom CPU designs, nor did it prevent Qualcomm from releasing products that incorporate those CPU designs.  Moreover, Qualcomm released its products incorporating Nuvia-based custom CPU designs on time or even ahead of schedule.  For example, Nuvia's President and Founder and Qualcomm's current Senior VP of Engineering, Gerard Williams, who is the head of Qualcomm's CPU design and engineering team and manages the Qualcomm team responsible for verifying that Qualcomm's custom CPU designs

8

**A023**

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

are compliant with Arm's architecture, testified that ██████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████. *See, e.g.,*

G. Williams Dep. Tr. (Rough) at 3, 8–9, 54–58.

Likewise, Qualcomm's TLA allegations demonstrate that ██████████ the TLA is an

unenforceable penalty clause. ████████████████████████████

████████████████████. However, there is no dispute that Arm made offers for a

license to the ██████████ cores in October 2024 and therefore satisfied its obligation

under ████████████████████████████████

████████████ *See, e.g.,* QCVARM_0617829.  Arm's witnesses have also repeatedly

confirmed at deposition that Arm ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████. Arm hereby incorporates by reference the testimony

of Ehab Youssef and Karthik Shivashankar, and the forthcoming testimony of Jeff Fonseca and

Akshay Bhatnagar.  Further, as to ████, Arm also confirmed that it did not "██████████

████████████████████████████████████████

██████████" when it made licensing renewal offers to Qualcomm in October 2024 for

████████████, as Arm and Qualcomm ████████████████

████████████. ARMQC_02772246.

Even if Qualcomm could overcome the contractual limitations on liability discussed above

in the TLA and ALA, it cannot establish that Arm's alleged conduct was the but-for or proximate

9

**A024**

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

cause of any harms that Qualcomm allegedly suffered. There is no relationship (let alone a

reasonable relationship) between ███████████████████ and the *de minimis* damages, if

any, that Qualcomm alleges to have suffered. If Qualcomm were to ████████████████

█████████████████████████████████████████████████

███████████████████████████████. *See, e.g.*, ARMQC_02771200

█████████████████████████████████████████████

███████████████████████████████████████). Such a

windfall to Qualcomm would be unreasonably large and completely out of proportion to any alleged

harm to Qualcomm. Likewise, to date, Qualcomm has failed to show its supposed damages or harm

due to Arm's alleged actions. To the extent Qualcomm attempts to do so in the future, that

quantification will only further confirm that ██████ of the QC ALA and the QC TLA are

unenforceable.

Further, █████████████████ was not the result of a reasonable endeavor by

the parties to estimate a fair compensation to Qualcomm in the event of Arm's alleged breach of

███████ During the parties' negotiation of the QC ALA and the QC TLA, the parties described

██████████████████████████████████████████████████

█████    *See, e.g.*,    QCARM_3419636;    QCARM_3419788;    QCARM_3421025;

QCARM_3421029;    QCARM_3961297;    QCARM_3961355;    QCARM_3961358;

QCARM_7428754; QCARM_7431828; QCARM_7431832.

Arm further incorporates by reference the testimony of all witnesses that have been deposed

in the case to date, including those specifically referenced herein.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its

response to this Interrogatory.

10
**A025**

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 (JULY 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARM_00095578, ARM_00095579, ARM_00085679, ARM_00085680, ARM_00111449, ARM_01228027, ARM_01228031, ARM_01228035, ARM_01228039, ARM_01228043, ARM_01228044, ARM_01228048, ARM_01228049, ARM_01228053, ARM_01228054, ARM_01228058, ARM_01228059, ARM_01228063, ARM_01228064, ARM_01228073, ARM_01228074, ARM_01228075, ARM_01239440, ARM_01239441, ARM_01239442, ARM_01239444, ARM_01239445, ARM_01239447, ARM_01239448, ARM_01239449, ARM_01239451, ARM_01239452, ARM_01239453, ARM_01239458, ARM_01239459, ARM_01239464, ARM_01239465, ARM_01239470, ARM_01239471, ARM_01239472, ARM_01239473, ARM_01239474, ARM_01239475, ARM_01239476, ARM_01239477, ARM_01239478, ARM_01239479, ARM_01239483, ARM_01239485, ARM_01239486, ARM_01239488, ARM_01239503, ARM_01239504, ARM_01239506, ARM_01423231, ARM_01423342, ARM_01423234, ARM_01423345, ARM_01423238, ARM_01423349, ARM_01423239, ARM_01423350, ARM_01333009, ARMQC_02601210, ARMQC_02603580, ARMQC_02603581, ARMQC_02603582.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


_/s/ Robert M. Vrana_
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

_Attorneys for Defendant Arm Holdings plc_

12

**A027**

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

(213) 892-5348
nfung@mofo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A029**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A030**

# Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC.,
  a Delaware corporation,

        Plaintiffs,

   v.

ARM HOLDINGS PLC.,
  a U.K. corporation,

        Defendant.

C.A. No. 24-490-MN

**CONFIDENTIAL**

### ARM'S RULE 26(a)(1) FOURTH SUPPLEMENTAL INITIAL DISCLOSURES

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendant Arm

Holdings Plc. ("Arm") makes the following fourth supplemental initial disclosures ("initial

disclosures") to Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc., (collectively,

"Qualcomm"), in the above-captioned action, including any appeals therefrom ("Litigation").  By

making these initial disclosures, Arm does not represent that it is identifying every document, item

of electronically stored information, tangible thing, or witness that might be relevant to its

defenses in this action.    Further, Arm notes that persons who are not now associated with or

employed by Arm may have relevant information.    Arm is not purporting in the following

disclosures to make disclosures on behalf of, or based on the information available to, all such

persons.    Rather, Arm's initial disclosures represent a good faith effort to identify information

that Arm reasonably believes to be relevant to its defenses.

Arm provides these initial disclosures subject to and without waiving: (i) any applicable

privilege, doctrine, immunity, or right, including without limitation the attorney-client privilege

1

**A032**

and the work product doctrine; (ii) the right to object on the grounds of competency, relevancy, materiality, hearsay, undue burden, or any other proper ground, to the use of any such information for any purposes, in whole or in part, in this action or any other action or proceeding; and (iii) the right to object on any and all grounds at any time to any other discovery request or proceeding involving or relating to the subject matter of these initial disclosures in any proceeding in this Litigation or in any other action.   Further, Arm notes that its disclosure obligation is limited by the Federal Rules of Civil Procedure, the Local Rules of the District of Delaware, the Scheduling Order entered in this case (as may be amended from time to time), and any governing case law or Court orders.

Arm makes these initial disclosures based on Arm's current knowledge, and upon information that is reasonably available to Arm at this time and within its possession, custody or control.   Arm's investigation is ongoing, and Arm reserves the right to further amend, supplement, or withdraw these disclosures.   Arm provides the disclosures contained herein, and in any subsequent amended or supplemental disclosures, subject to the above objections and qualifications.

### A.    Rule 26(a)(1)(A)(i): Individuals Likely to Have Discoverable Information

Based on information currently and reasonably available to Arm, Arm identifies the following individuals likely to have discoverable information that Arm may use to support its defenses, unless identified solely for impeachment.   Arm does not represent that these individuals have relevant documents in their possession, custody, or control, and does not waive its right to object to the production of any document or tangible thing in the possession of any of these individuals on the basis of the attorney client privilege, the work product doctrine, relevance, or any other objection.   Arm's investigation is ongoing.   Arm is unaware of other individuals warranting disclosure at this time, but Arm may add or remove individuals once it learns more

2

**A033**

information about Qualcomm's claims.   By making these initial disclosures, Arm does not waive

its right to object to the deposition or trial testimony of any individual below under the Federal

Rules of Civil Procedure, Federal Rules of Evidence, Delaware Local Rules, and any governing

case law or Court orders.

| Name | Contact | Potential areas of knowledge (at least) |
|---|---|---|
| Andrew Howard | Arm<br><br>Contact through counsel | Arm's commercial strategy. |
| Chris Bergey | Arm<br><br>Contact through counsel | Arm's infrastructure line of business; Arm's relationship with Qualcomm and Nuvia, Inc. ("Nuvia"). |
| Christine Tran | Arm<br><br>Contact through counsel | Licensing of Arm technology through Arm's ALAs and TLAs. |
| Jannik Nelson | Arm<br><br>Contact through counsel | Arm's revenue operations. |
| Jonathan Armstrong | Arm<br><br>Contact through counsel | Arm's brand management and trademarks. |
| Karthik Shivashankar | Arm<br><br>Contact through counsel | Arm's commercial strategy and licensing; licensing under the TLA to Qualcomm; Qualcomm's attempt to extend the ALA. |
| Martin Weidmann | Arm<br><br>Contact through counsel | Development and purported verification of Arm-based technology, including v10 to the Arm ISA. |
| Paul Williamson | Arm<br><br>Contact through counsel | Arm's relationship with Qualcomm in 2021 and 2022. |
| Rene Haas | Arm<br><br>Contact through counsel | Arm's business strategy and client relationships; communications with Qualcomm and third parties regarding Arm's October 22, 2024 Notice. |

3

**A034**

| Name | Contact | Potential areas of knowledge (at least) |
|------|---------|------------------------------------------|
| Richard Grisenthwaite | Arm<br><br>Contact through counsel | Design, development, operation, and purported verification of Arm-based technology, including v10 to the Arm ISA; Arm's relationship with Qualcomm and Nuvia; ACK and OOB. |
| Simon Segars | Contact through counsel | Arm's relationships with Qualcomm and Nuvia. |
| Vivek Agrawal | Arm<br><br>Contact through counsel | Development, operation, and purported verification of Arm-based technology; ACK and OOB. |
| Will Abbey | Arm<br><br>Contact through counsel | Arm's relationships with Qualcomm and Nuvia; v10 licensing negotiations. |
| Lynn Couillard | Arm<br><br>Contact through counsel | Arm's relationships with Qualcomm and Nuvia; Qualcomm's attempt to extend the ALA. |
| John Horley | Arm<br><br>Contact through counsel | Design, development, operation, and purported verification of Arm-based technology. |
| Michael Williams | Arm<br><br>Contact through counsel | Design, development, operation, and purported verification of Arm-based technology. |
| Phil Hughes | Contact through counsel | Arm's October 22, 2024 Notice; communications with press regarding Arm's October 22, 2024 Notice. |
| Paul Kranhold | FGS Global<br><br>Contact through Brandon Messina (Brandon.Messina@FGSGlobal.com) | Arm's October 22, 2024 Notice; communications with press regarding Arm's October 22, 2024 Notice. |
| Kenneth Siegel | Contact through counsel | Arm's October 22, 2024 Notice; communications with press regarding Arm's October 22, 2024 Notice. |
| Mohamed Awad | Arm<br><br>Contact through counsel | Arm's commercial strategy and customer relationships, including with ███. |

4

**A035**

| Name | Contact | Potential areas of knowledge (at least) |
|------|---------|------------------------------------------|
| Spencer Collins | Arm<br><br>Contact through counsel | Arm's communications with Qualcomm and press including regarding Arm's October 22, 2024 Notice; licensing under the TLA to Qualcomm; Qualcomm's attempt to extend the ALA. |
| Jeff Fonseca | Arm<br><br>Contact through counsel | Arm's relationship with Qualcomm; licensing under the TLA to Qualcomm; Qualcomm's attempt to extend the ALA. |
| Ehab Youssef | Arm<br><br>Contact through counsel | The ALA and TLA, including the drafting and negotiation thereof; Arm's offers to and negotiations with Qualcomm for, and pricing for, ███████ ███████████ cores, ████████████████████ ████████████████ offers to license █████████ ███████ cores to Qualcomm after October 23, 2024. |
| Cristiano Amon | Qualcomm<br><br>Known to Qualcomm | Qualcomm's sales, marketing, financial, and business strategy; design and development of Arm-based technology; Qualcomm's acquisition of Nuvia. |
| Gerard Williams | Qualcomm<br><br>Known to Qualcomm | Design, development, and operation of Arm-based technology; Qualcomm's acquisition of Nuvia; Nuvia's certification of compliance with the termination provisions of its Arm licenses. |
| Jignesh Trivedi | Qualcomm<br><br>Known to Qualcomm | Design, development, operation, and purported verification of Arm-based technology. |
| John Bruno | Qualcomm<br><br>Known to Qualcomm | Design, development, and operation of Arm-based technology. |

5

**A036**

| Name | Contact | Potential areas of knowledge (at least) |
|---|---|---|
| Manu Gulati | Qualcomm<br><br>Known to Qualcomm | Design, development, and operation of Arm-based technology. |
| Nitin Sharma | 121 East Tasman Drive, Apt 211 San Jose, CA, 95134 | Design, development, operation, and purported verification of Arm-based technology. |
| RK Chunduru | Qualcomm<br><br>Known to Qualcomm | Qualcomm's relationship with Arm; Qualcomm's discussions with Arm regarding the acquisition of Nuvia. |
| Ziad Asghar | Qualcomm<br><br>Known to Qualcomm | Qualcomm's relationship with Arm; Qualcomm's discussions with Arm regarding the acquisition of Nuvia. |
| Michael Roberts | Qualcomm<br><br>Known to Qualcomm | Qualcomm's business and marketing plans; Qualcomm's representations to third parties about whether Qualcomm's products are Arm compliant or have been verified by Arm. |
| Pradeep Kanapathipillai | Qualcomm<br><br>Known to Qualcomm | Qualcomm's relationship with Arm; design, development, operation, and purported verification of Arm-based technology. |
| James Thompson | 7975 Paseo Esmerado, Carlsbad, CA, 92009 | Design, development, operation, and purported verification of Arm-based technology. |
| Ronald Tessitore | Qualcomm<br><br>Known to Qualcomm | Design, development, operation, and purported verification of Arm-based technology. |
| Laura Sand | Qualcomm<br><br>Known to Qualcomm | Qualcomm's licensing negotiations with Arm; Qualcomm's drafting and negotiation of its license agreements with Arm; scope of Qualcomm's license agreements with Arm; Qualcomm's relationship with Arm. |

6

**A037**

| Name | Contact | Potential areas of knowledge (at least) |
|---|---|---|
| Rohit Singh | Qualcomm<br><br>Known to Qualcomm | Design, development, and operation of Arm-based technology. |
| Matthew Page | Qualcomm<br><br>Known to Qualcomm | Design, development, and operation of Arm-based technology. |
| Raghava Denduluri | Qualcomm<br><br>Known to Qualcomm | Design, development, operation, and purported verification of Arm-based technology. |
| Bob Pflederer | Qualcomm<br><br>Known to Qualcomm | Design, development, operation, and purported verification of Arm-based technology. |
| Jonathan Weiser | Qualcomm<br><br>Known to Qualcomm | Qualcomm's licensing negotiations with Arm; Qualcomm's drafting and negotiation of its license agreements with Arm; scope of Qualcomm's license agreements with Arm; Qualcomm's relationship with Arm. |
| Lynn Bos | Qualcomm<br><br>Known to Qualcomm | Compliance with the termination provision of the Nuvia agreements. |
| Vinod Chamarty | Qualcomm<br><br>Known to Qualcomm | Design, development, operation, and purported verification of Arm-based technology. |
| Geeta Balakrishnan | Qualcomm<br><br>Known to Qualcomm | Design, development, and operation of Arm-based technology. |
| Current and former directors, officers, and employees of Qualcomm and any related companies | Qualcomm<br><br>Known to Qualcomm | Qualcomm's commercial strategy, including licensing under the TLA and ALA; negotiation of the TLA and ALA; Qualcomm's allegations in the Second Amended Complaint; the areas of knowledge listed above. |

Arm does not consent to or authorize Qualcomm's communication with current or former

employees of Arm.   All communications with such individuals should be through Arm's counsel.

7

**A038**

In addition to the individuals identified above, the following individuals may have discoverable information: (i) persons deposed during this Litigation and persons identified during depositions or discovery responses; (ii) persons identified in Qualcomm's initial disclosures or any supplements or amendments thereto; and (iii) other individuals with relevant knowledge currently or previously at Qualcomm or Nuvia.

Arm will identify any testifying expert witnesses as required by Rule 26(a)(2) and any applicable Local Rule or Court Order.

Because Arm's investigation and analysis of this matter is ongoing, Arm reserves the right to further supplement or amend this information and to designate or call further witnesses at trial. Arm also reserves the right to seek discovery from other persons when it subsequently learns they are likely to have discoverable and relevant information.

### B.    Rule 26(a)(1)(A)(ii): Documents, Electronically Stored Information, and Tangible Things

The following are categories of documents (originals or copies), besides expert materials for disclosure under Rule 26(a)(2), that Arm may have in its possession, custody, or control, that it may use to support its defenses, unless solely for impeachment.    These disclosures do not constitute admissions to the relevance or admissibility of the identified materials or waive any attorney-client privilege, work product privilege, work product protection, or other applicable protection or immunity.    By making these disclosures, Arm reserves the right to object to the admissibility, relevance, and the like of such documents and evidence.    Arm continues to investigate other documents, electronically stored information, and tangible things that it may use to support its defenses and may supplement this disclosure.

8

**A039**

| Description |
|---|
| Licenses and agreements between Arm and Qualcomm |
| Documents relating to the Arm technology licensed to Qualcomm |
| Documents relating to support and maintenance Arm provided or made available to Qualcomm |
| Documents and communications relating to Qualcomm's development of Arm-based technology |
| Communications between Arm and Qualcomm, including, but not limited to, emails and letters regarding Qualcomm's acquisition of Nuvia |
| Documents relating to Qualcomm's acquisition of Nuvia and other Arm licensees |
| Documents relating to Qualcomm's requests for verification of Arm-based technology |
| Any other materials on which Arm's witnesses or experts may rely |

Arm may also rely on documents produced by Qualcomm or by non-parties in support of its defenses.

Arm's investigation for discoverable information that it may use to support its defenses in this action is ongoing. Arm reserves the right to further supplement these disclosures or provide an appropriate other form of notice of such information. Arm reserves its right to object to the production of documents within the categories described herein on any basis permitted by the Federal Rules of Civil Procedure.

C.    **Rule 26(a)(1)(A)(iii): Damages**

Arm currently intends to seek an award of all costs and expenses of this action and attorneys' fees for defending itself against Qualcomm's allegations. The amount of attorney's fees, costs, and expenses has not yet been determined. Arm will produce documents or computations together with supporting documents detailing its costs and fees at the appropriate time. Arm will offer expert testimony regarding damages as required by Rule 26(a)(2), the Court's Scheduling Order, and any applicable Local Rule or Court order. Because Arm's fact investigation remains ongoing, Arm expressly reserves the right to further supplement these

9

**A040**

disclosures as discovery continues and it receives more information from Qualcomm.

**D.**      **Rule 26(a)(1)(A)(iv): Insurance Agreements**

Arm is not aware of any insurance policy responsive to Rule 26(a)(1)(A)(iv).   Arm's fact investigation remains ongoing and Arm expressly reserves the right to further supplement this disclosure as discovery continues and it receives more information from Qualcomm.

\* \* \*

Arm makes these initial disclosures based on the information that is now reasonably available to it.   Arm expressly reserves the right to further amend, supplement, withdraw or modify these initial disclosures as appropriate based upon its future evaluation of facts and evidence in its possession, and upon further investigation and discovery in this action.

10

**A041**

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

11

**A042**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A043**

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A044**

# Exhibit 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
  Delaware corporation

        Plaintiffs,

    v.

ARM HOLDINGS PLC, f/k/a, ARM LTD.
  a U.K. corporation

        Defendant.

C.A. No. 24-490-MN

**CONFIDENTIAL**

### ARM HOLDINGS PLC'S FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFFS QUALCOMM INC. AND QUALCOMM TECHNOLOGIES, INC. (NOS. 1-58)

Pursuant to Federal Rule of Civil Procedure 26 and 34, Defendant Arm Holdings PLC ("Arm") requests that Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. ("Qualcomm") serve written responses to these requests and produce for inspection, copying, and other purposes, each of the documents, electronically stored information, and tangible things described below at the offices of Morrison & Foerster LLP, 755 Page Mill Road, Palo Alto, California 94304, or at such place as may be mutually agreed upon, within 30 days after service of these requests as specified by Federal Rules of Civil Procedure 34(b), or such earlier time as is ordered by the Court or agreed to by the parties.

### INSTRUCTIONS

1.      Each request shall be answered pursuant to Federal Rules of Civil Procedure 26 and 34, and supplemented as required by Federal Rule of Civil Procedure 26(e).

2.      You shall serve supplemental responses promptly after receiving any further

1

**A046**

modifying, contradicting, disproving or criticizing.

6.      "Include" and "including" are illustrative and are in no way a limitation of the information required and shall be deemed to be followed by the phrase "without limitation."

7.      "Regarding" and "Relating to" mean, in addition to their usual and customary meanings, in whole or in any part alluding to, responding to, concerning, relating to, connected with, involving, commenting on, in respect of, about, associated with, discussing, evidencing, showing, describing, reflecting, analyzing, summarizing, memorializing, consisting of, constituting, identifying, stating, tending to support, tending to discredit, referring to, or in any way touching upon.

8.      "Arm" or "Defendant" means Arm Holdings PLC, and its officers, directors, and employees, and the officers, directors, and employees of its related corporate entities and their subsidiaries.

9.      "Qualcomm" or "Plaintiffs" means Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc., and any of their officers, directors, employees, corporate parents, subsidiaries, affiliates, agents, consultants, independent contractors, experts, investigators, representatives, predecessors-in-interests, successors-in-interest, licensees, licensors, and/or collaborators.

10.      "You," "Your," or "Plaintiffs" mean Qualcomm and/or any of their officers, directors, employees, corporate parents, subsidiaries, affiliates, agents, consultants, independent contractors, experts, investigators, representatives, predecessors-in-interests, successors-in-interest, licensees, licensors, and/or collaborators.

11.      "Complaint" means the First Amended Complaint filed by Qualcomm in the District of Delaware on December 16, 2024, captioned *Qualcomm Inc.* v. *Arm Holdings PLC*,

6

**A047**

No. 24-490 (MN), and all amendments thereto.

12.     "Litigation" means the above-captioned action, including any appeals therefrom.

13.     "ALA" means an Architecture License Agreement with Arm, including all amendments and annexes to any such agreement.

14.     "Qualcomm ALA" means the Amended and Restated Architecture License Agreement with Arm dated May 31, 2013 (████████████████████████), including all amendments and annexes thereto.

15.     "Person" or "Entity" and their plural forms include, without limitation, any individual, firm, association, organization, joint venture, partnership, corporation, or other business, legal, or governmental entity. "Third Party" or "Third Parties" means any Person other than Plaintiffs and Defendant, as defined in the foregoing paragraphs.

16.     "Thing" and its plural form means any tangible object other than a Document, including, without limitation, objects of every kind and nature, as well as biological items, prototypes, models, drafts, or specimens thereof.

17.    The terms "Identify," Identifying, or "Identification" are used in the broadest sense possible, including:

   a.     for an individual, to state the individual's full name and current or last known personal address, personal telephone number, employer, employment position, dates of employment, business address, and business telephone number and to describe the individual's employment responsibilities;

Dated: February 7, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

23

**A049**

(213) 892-5348
nfung@mofo.com

24

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 7, 2025, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
Erin J. Morgan
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
rjgarrett@paulweis.com
ejmorgan@paulweiss.com

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

**A051**

swilson@ycst.com

*Attorneys for Arm Holdings PLC f/k/a Arm Ltd.*

2

**A052**

# Exhibit 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

QUALCOMM INCORPORATED,
    a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
    Delaware corporation

              Plaintiffs,

      v.

ARM HOLDINGS PLC, f/k/a, ARM LTD.
    a U.K. corporation

              Defendant.

C.A. No. 24-490-MN

**CONFIDENTIAL**

## ARM HOLDINGS PLC'S SECOND SET OF REQUESTS FOR PRODUCTION TO PLAINTIFFS QUALCOMM INC. AND QUALCOMM TECHNOLOGIES, INC. (NOS. 59–122)

      Pursuant to Federal Rule of Civil Procedure 26 and 34, Defendant Arm Holdings PLC ("Arm") requests that Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. ("Qualcomm") serve written responses to these requests and produce for inspection, copying, and other purposes, each of the documents, electronically stored information, and tangible things described below at the offices of Morrison & Foerster LLP, 755 Page Mill Road, Palo Alto, California 94304, or at such place as may be mutually agreed upon, within 30 days after service of these requests as specified by Federal Rules of Civil Procedure 34(b), or such earlier time as is ordered by the Court or agreed to by the parties.

### INSTRUCTIONS

    1.    Each request shall be answered pursuant to Federal Rules of Civil Procedure 26 and 34, and supplemented as required by Federal Rule of Civil Procedure 26(e).

    2.    You shall serve supplemental responses promptly after receiving any further

1

**A054**

6.      "Include" and "including" are illustrative and are in no way a limitation of the information required and shall be deemed to be followed by the phrase "without limitation."

7.      "Regarding" and "Relating to" mean, in addition to their usual and customary meanings, in whole or in any part alluding to, responding to, concerning, relating to, connected with, involving, commenting on, in respect of, about, associated with, discussing, evidencing, showing, describing, reflecting, analyzing, summarizing, memorializing, consisting of, constituting, identifying, stating, tending to support, tending to discredit, referring to, or in any way touching upon.

8.      "Arm" or "Defendant" means Arm Holdings PLC, and its officers, directors, and employees, and the officers, directors, and employees of its related corporate entities and their subsidiaries.

9.      "Qualcomm" or "Plaintiffs" means Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc., and any of their officers, directors, employees, corporate parents, subsidiaries, affiliates, agents, consultants, independent contractors, experts, investigators, representatives, predecessors-in-interests, successors-in-interest, licensees, licensors, and/or collaborators.

10.     "You," "Your," or "Plaintiffs" mean Qualcomm and/or any of their officers, directors, employees, corporate parents, subsidiaries, affiliates, agents, consultants, independent contractors, experts, investigators, representatives, predecessors-in-interests, successors-in-interest, licensees, licensors, and/or collaborators.

11.     "Complaint" means the First Amended Complaint filed by Qualcomm in the District of Delaware on December 16, 2024, captioned *Qualcomm Inc.* v. *Arm Holdings PLC*, C.A. No. 24-490 (MN), and all amendments thereto.

**A055**

12.    "Litigation" means the above-captioned action, including any appeals therefrom.

13.    "ALA" means an Architecture License Agreement with Arm, including all amendments and annexes to any such agreement.

14.    "Qualcomm ALA" means the Amended and Restated Architecture License Agreement with Arm dated May 31, 2013 (███████████████████████), including all amendments and annexes thereto.

15.    "Person" or "Entity" and their plural forms include, without limitation, any individual, firm, association, organization, joint venture, partnership, corporation, or other business, legal, or governmental entity.  "Third Party" or "Third Parties" means any Person other than Plaintiffs and Defendant, as defined in the foregoing paragraphs.

16.    "Thing" and its plural form means any tangible object other than a Document, including, without limitation, objects of every kind and nature, as well as biological items, prototypes, models, drafts, or specimens thereof.

17.    The terms "Identify," Identifying, or "Identification" are used in the broadest sense possible, including:

    a.    for an individual, to state the individual's full name and current or last known personal address, personal telephone number, employer, employment position, dates of employment, business address, and business telephone number and to describe the individual's employment responsibilities;

    b.    for a Person besides a natural person (including a business, legal, or governmental entity or association), to state the Person's full name; legal

7

**A056**

Dated: March 14, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
**MORRISON & FOERSTER LLP**
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
**MORRISON & FOERSTER LLP**
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

_/s/ Robert M. Vrana_
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

_Attorneys for Defendant Arm Holdings PLC_

21

**A057**

Nicholas Rylan Fung
**MORRISON & FOERSTER LLP**
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

22

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 14, 2025, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
Erin J. Morgan
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
rjgarrett@paulweis.com
ejmorgan@paulweiss.com

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

/s/ Robert M. Vrana
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

**A059**

swilson@ycst.com

*Attorneys for Arm Holdings PLC f/k/a Arm Ltd.*

2

**A060**

# Exhibit 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INCORPORATED,<br>    a Delaware corporation,<br>QUALCOMM TECHNOLOGIES, INC., a<br>Delaware corporation<br><br>    Plaintiffs,<br><br>    v.<br><br>ARM HOLDINGS PLC, f/k/a, ARM LTD.<br>    a U.K. corporation<br><br>    Defendant. | C.A. No. 24-490-MN<br><br>**HIGHLY CONFIDENTIAL** |

## ARM HOLDINGS PLC'S THIRD SET OF REQUESTS FOR PRODUCTION TO PLAINTIFFS QUALCOMM INC. AND QUALCOMM TECHNOLOGIES, INC. (NOS. 123-173)

Pursuant to Federal Rule of Civil Procedure 26 and 34, Defendant Arm Holdings plc ("Arm") requests that Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. ("Qualcomm") serve written responses to these requests and produce for inspection, copying, and other purposes, each of the documents, electronically stored information, and tangible things described below at the offices of Morrison & Foerster LLP, 755 Page Mill Road, Palo Alto, California 94304, or at such place as may be mutually agreed upon, within 30 days after service of these requests as specified by Federal Rules of Civil Procedure 34(b), or such earlier time as is ordered by the Court or agreed to by the parties.

## INSTRUCTIONS

1.      Each request shall be answered pursuant to Federal Rules of Civil Procedure 26 and 34, and supplemented as required by Federal Rule of Civil Procedure 26(e).

2.      You shall serve supplemental responses promptly after receiving any further

1

**A062**

with, involving, commenting on, in respect of, about, associated with, discussing, evidencing, showing, describing, reflecting, analyzing, summarizing, memorializing, consisting of, constituting, identifying, stating, tending to support, tending to discredit, referring to, or in any way touching upon.

8.    "Arm" or "Defendant" means Arm Holdings plc, and its officers, directors, and employees, and the officers, directors, and employees of its related corporate entities and their subsidiaries.

9.    "Qualcomm," "You," "Your," or "Plaintiffs" mean Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc., and any of their officers, directors, employees, corporate parents, subsidiaries, affiliates, agents, consultants, independent contractors, experts, investigators, representatives, predecessors-in-interests, successors-in-interest, licensees, licensors, and/or collaborators.

10.    "Complaint" means the First Amended Complaint filed by Qualcomm in the District of Delaware on December 16, 2024, captioned *Qualcomm Inc. v. Arm Holdings plc*, No. 24-490 (MN), and all amendments thereto.

11.    "Litigation" means the above-captioned action, including any appeals therefrom.

12.    "ALA" means an Architecture License Agreement with Arm, including all amendments and annexes to any such agreement.

13.    "CPU" means central processing unit.

14.    "Qualcomm ALA" means the Amended and Restated Architecture License Agreement with Arm dated May 31, 2013 (███████████████████████), including all amendments and annexes thereto.

Dated:  April 1, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

23

**A064**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 1, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
Erin J. Morgan
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
rjgarrett@paulweis.com
ejmorgan@paulweiss.com

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

**A065**

swilson@ycst.com

*Attorneys for Arm Holdings plc*

2

**A066**

# Exhibit 7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
   a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
   Delaware corporation

        Plaintiffs,

     v.

ARM HOLDINGS PLC,
   a U.K. corporation

        Defendant.

C.A. No. 24-490-MN

**CONFIDENTIAL**

## ARM'S FOURTH SET OF REQUESTS FOR PRODUCTION
## TO QUALCOMM (NOS. 174–227)

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Arm Holdings plc ("Arm") requests that Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. ("Qualcomm") serve written responses to these requests and produce for inspection, copying, and other purposes, each of the documents, electronically stored information, and tangible things described below at the offices of Kirkland & Ellis LLP, 1301 Pennsylvania Avenue, N.W., Washington, D.C., 20004 and Morrison & Foerster LLP, 755 Page Mill Road, Palo Alto, California 94304, or at such place as may be mutually agreed upon, within 30 days after service of these requests as specified by Federal Rule of Civil Procedure 34(b), or such earlier time as is ordered by the Court or agreed to by the parties.

## DEFINITIONS AND INSTRUCTIONS

Arm incorporates by reference its Definitions and Instructions from Arm's First, Second, and Third Sets of Requests for Production.

1

**A068**

Dated: June 9, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

13

**A069**

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on June 9, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
rjgarrett@paulweis.com
ejmorgan@paulweiss.com

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com

grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600

**A070**

agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A071**

# Exhibit 8

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

QUALCOMM INCORPORATED,
   a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
   Delaware corporation

        Plaintiffs,

    v.

ARM HOLDINGS PLC,
   a U.K. corporation

        Defendant.

C.A. No. 24-490-MN

**CONFIDENTIAL**

**ARM'S FIFTH SET OF REQUESTS FOR PRODUCTION
TO QUALCOMM (NOS. 228–287)**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Arm Holdings plc ("Arm") requests that Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. ("Qualcomm") serve written responses to these requests and produce for inspection, copying, and other purposes, each of the documents, electronically stored information, and tangible things described below at the offices of Kirkland & Ellis LLP, 1301 Pennsylvania Avenue, N.W., Washington, D.C., 20004 and Morrison & Foerster LLP, 755 Page Mill Road, Palo Alto, California 94304, or at such place as may be mutually agreed upon, within 30 days after service of these requests as specified by Federal Rule of Civil Procedure 34(b), or such earlier time as is ordered by the Court or agreed to by the parties.

**DEFINITIONS AND INSTRUCTIONS**

Arm incorporates by reference its Definitions and Instructions from Arm's First, Second, Third, and Fourth Sets of Requests for Production.

1

**A073**

Dated: June 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


_/s/ Robert M. Vrana_
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

14

**A074**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 11, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
rjgarrett@paulweis.com
ejmorgan@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/ Robert M. Vrana
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600

**A075**

agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A076**

# Exhibit 9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
   a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
   Delaware corporation

          Plaintiffs,

      v.

ARM HOLDINGS PLC, f/k/a, ARM LTD.
   a U.K. corporation

          Defendant.

C.A. No. 24-490-MN

**CONFIDENTIAL**

---

### ARM HOLDINGS PLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS QUALCOMM INC. AND QUALCOMM TECHNOLOGIES, INC. (NOS. 1-9)

Pursuant to Federal Rule of Civil Procedure 33, Defendant Arm Holdings PLC ("Arm") requests that Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc.("Qualcomm") serve written responses to these Interrogatories within the time specified under Rule 33(b), or such earlier time as agreed-to by the parties or ordered by the Court.  The interrogatory answers should be served upon Arm's counsel at the offices of Morrison & Foerster LLP, 755 Page Mill Road, Palo Alto, California 94304.

### DEFINITIONS

1.    "Arm" or "Defendant" means Arm Holdings PLC, and its officers, directors, and employees, and the officers, directors, and employees of its related corporate entities and their subsidiaries.

2.    "Qualcomm" means Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc., and any of their officers, directors, employees, corporate parents, subsidiaries,

1

**A078**

date of creation, page length, drafters, authors, signatories, date of communication, addressees, recipients, current location, current custodian, and corresponding Bates number for all originals and copies and to summarize its subject matter and contents briefly, in the alternative, the responding party may produce the documents, together with identifying the information sufficient to satisfy Fed. R. Civ. P. 33(d).

   d. for a thing, to state all trade names, part or model numbers, internal names, revisions, version numbers, catalogue numbers, article or model names, and other identifiers known or used by Qualcomm or others for the thing.

   e. for an oral communication or meeting, to provide: the date of the conversation or meeting; the location where it occurred or, in the case of an electronic communication, the location of each party; all individuals who participated or were present; the substance of what was discussed; and all actions taken as a result of the communication or meeting.

   12. "Disclose" means to Identify, describe, explain, reveal, demonstrate, show, display, exhibit, illustrate, exemplify, refer to, or relate to.

   13. "Describe" means to fully Identify and Disclose each fact, circumstance, condition, and Thing of which You are aware relating to the subject of the interrogatory, including each Person having personal related knowledge.

   14. "ALA" means an Architecture License Agreement with Arm, including all amendments and annexes to any such agreement.

   15. "Qualcomm ALA" means the Amended and Restated Architecture License Agreement with Arm dated May 31, 2013 (███████████████████████), including all amendments and annexes thereto.

4

**A079**

Dated: February 7, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP


*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

11

**A080**

(213) 892-5348
nfung@mofo.com

**A081**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 7, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
Erin J. Morgan
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
rjgarrett@paulweis.com
ejmorgan@paulweiss.com

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

**A082**

swilson@ycst.com

*Attorneys for Arm Holdings PLC f/k/a Arm Ltd.*

2

**A083**

# Exhibit 10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
   a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
   Delaware corporation

           Plaintiffs,

    v.

ARM HOLDINGS PLC, f/k/a, ARM LTD.
   a U.K. corporation

           Defendant.

C.A. No. 24-490-MN

**CONFIDENTIAL**

### ARM HOLDINGS PLC'S SECOND SET OF INTERROGATORIES TO PLAINTIFFS QUALCOMM INC. AND QUALCOMM TECHNOLOGIES, INC. (NOS. 10-13)

Pursuant to Federal Rule of Civil Procedure 33, Defendant Arm Holdings plc ("Arm") requests that Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. ("Qualcomm") serve written responses to these Interrogatories within the time specified under Rule 33(b), or such earlier time as agreed-to by the parties or ordered by the Court. The interrogatory responses should be served upon Arm's counsel at the offices of Morrison & Foerster LLP, 755 Page Mill Road, Palo Alto, California 94304.

### DEFINITIONS

1.    "Arm" or "Defendant" means Arm Holdings plc, and its officers, directors, and employees, and the officers, directors, and employees of its related corporate entities and their subsidiaries.

2.    "Qualcomm," "You," "Your," or "Plaintiffs" mean Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. and any of their officers, directors, employees, corporate

1

**A085**

alternative, the responding party may produce the documents, together with identifying the information sufficient to satisfy Fed. R. Civ. P. 33(d).

        d.    for a thing, to state all trade names, part or model numbers, internal names, revisions, version numbers, catalogue numbers, article or model names, and other identifiers known or used by Qualcomm or others for the thing.

        e.    for an oral communication or meeting, to provide: the date of the conversation or meeting; the location where it occurred or, in the case of an electronic communication, the location of each party; all individuals who participated or were present; the substance of what was discussed; and all actions taken as a result of the communication or meeting.

11.    "Disclose" means to Identify, describe, explain, reveal, demonstrate, show, display, exhibit, illustrate, exemplify, refer to, or relate to.

12.    "Describe" means to fully Identify and Disclose each fact, circumstance, condition, and Thing of which You are aware relating to the subject of the interrogatory, including each Person having personal related knowledge.

13.    "ALA" means an Architecture License Agreement with Arm, including all amendments and annexes to any such agreement.

14.    "ALA Breach Allegations and Communications" means Arm's statements regarding its allegations of Qualcomm's breach of the Qualcomm ALA, including Arm's statements in its November 15, 2022 and April 4, 2024 Answers that Qualcomm was in breach of the Qualcomm ALA, Arm's October 22, 2024 letter providing notice to Qualcomm of Qualcomm's material breach of the Qualcomm ALA, Arm's subsequent January 8, 2025 letter withdrawing said notice, and Qualcomm's January 22, 2025 letter in response.

**A086**

15.    "CPU" means central processing unit.

16.    "Qualcomm ALA" means the Amended and Restated Architecture License Agreement with Arm dated May 31, 2013 (█████████████████████ including all amendments and annexes thereto.

17.    "SoCs" means systems-on-a-chip.

18.    "Disputed Subject Matter" means licensing or competition between Arm and Qualcomm or the subject matter of the claims at issue in this Litigation or in *Arm Ltd. v. Qualcomm Inc.*, No. 22-1146 (MN) (D. Del.), including (1) Qualcomm's rights under the Qualcomm ALA with respect to Nuvia designs, (2) any statement, assertion, or allegation by Arm that Arm is entitled to terminate the Qualcomm ALA, including Arm's notice of breach of the Qualcomm ALA, (3) Qualcomm's notice of breach of the Qualcomm TLA, or (4) allegedly anti-competitive or unfair behavior or actions by Arm, including but not limited to Arm's alleged campaign to harm or threaten to harm competition in the markets for CPUs and SoCs.

19.    Additionally, the following rules of construction apply: (a) unless specifically defined, all words shall be construed and interpreted according to ordinary custom, usage and meaning; (b) the terms "any" and "all" shall be understood to include and encompass each and every; (c) connectives such as "and" or "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the interrogatory all responses that might otherwise be construed to be outside of its scope; (d) the use of the singular form of any word includes the plural and vice versa; and (e) whenever a verb is used herein in the present, past, future, subjunctive, or other tense, voice, or mood, it shall also be construed to include all other tenses, voices or moods.

## INSTRUCTIONS

1.    Each interrogatory shall be answered pursuant to Federal Rules of Civil

5

**A087**

Dated: April 9, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP


 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A088**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 9, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
Erin J. Morgan
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
rjgarrett@paulweis.com
ejmorgan@paulweiss.com

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

**A089**

swilson@ycst.com

*Attorneys for Arm Holdings plc*

2

**A090**

# Exhibit 11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
   a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
   Delaware corporation

         Plaintiffs,

    v.

ARM HOLDINGS PLC, f/k/a, ARM LTD.
   a U.K. corporation

         Defendant.

C.A. No. 24-490-MN

**HIGHLY CONFIDENTIAL –
ATTORNEY'S EYES ONLY**

## ARM'S THIRD SET OF INTERROGATORIES TO QUALCOMM (NOS. 14–23)

Pursuant to Federal Rule of Civil Procedure 33, Defendant Arm Holdings plc ("Arm") requests that Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. ("Qualcomm") serve written responses to these Interrogatories within the time specified under Rule 33(b), or such earlier time as agreed-to by the parties or ordered by the Court. The interrogatory responses should be served upon Arm's counsel at the offices of Kirkland & Ellis LLP, 1301 Pennsylvania Avenue, N.W., Washington, D.C., 20004, and Morrison & Foerster LLP, 755 Page Mill Road, Palo Alto, California 94304.

## DEFINITIONS AND INSTRUCTIONS

Arm incorporates by reference its Definitions and Instructions from Arm's First and Second Sets of Interrogatories to Qualcomm. Arm further provides the following additional definitions:

19.    "Architecture Compliant Core" means an Architecture Compliant Core as defined by the Qualcomm ALA and any Annexes thereto, including ███████ of the Armv8-

Dated: June 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP


_/s/ Robert M. Vrana_
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

6

**A093**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 11, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
rjgarrett@paulweis.com
ejmorgan@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/ Robert M. Vrana
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600

**A094**

agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A095**

# Exhibit 12

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED,<br>    a Delaware corporation,<br>QUALCOMM TECHNOLOGIES, INC., a<br>    Delaware corporation<br><br>                    Plaintiffs,<br><br>        v.<br><br>ARM HOLDINGS PLC, f/k/a, ARM LTD.<br>    a U.K. corporation<br><br>                    Defendant. | **HIGHLY CONFIDENTIAL -**<br>**ATTORNEY'S EYES ONLY**<br><br><br>C.A. No. 24-490-MN |

### ARM'S FIRST SET OF REQUESTS FOR ADMISSION TO QUALCOMM (NOS. 1-30)

Pursuant to Federal Rule of Civil Procedure 36, Defendant Arm Holdings PLC ("Arm") requests that Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc.("Qualcomm") serve written responses to these Requests for Admission ("Requests") within the time specified under Rule 36(a)(3), or such earlier time as agreed-to by the parties or ordered by the Court. The answers to these Requests should be served upon Arm's counsel at the offices of Kirkland & Ellis LLP, 1301 Pennsylvania Avenue, N.W., Washington, D.C., 20004, and Morrison & Foerster LLP, 755 Page Mill Road, Palo Alto, California 94304.

### DEFINITIONS

1.      "Arm" or "Defendant" means Arm Holdings PLC, and its officers, directors, and employees, and the officers, directors, and employees of its related corporate entities and their subsidiaries.

2.      "Qualcomm" means Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc., and any of their officers, directors, employees, corporate parents, subsidiaries, affiliates,

**A097**

8.     "Thing" and its plural form means any tangible object other than a Document, including, without limitation, objects of every kind and nature, as well as biological items, prototypes, models, drafts, or specimens thereof.

9.     "Person" or "Entity" and their plural forms include, without limitation, any individual, firm, association, organization, joint venture, partnership, corporation, or other business, legal, or governmental entity.

10.     "Regarding" and "Relating to" mean, in addition to their usual and customary meanings, in whole or in any part alluding to, responding to, concerning, relating to, connected with, involving, commenting on, in respect of, about, associated with, discussing, evidencing, showing, describing, reflecting, analyzing, summarizing, memorializing, consisting of, constituting, identifying, stating, tending to support, tending to discredit, referring to, or in any way touching upon.

11.     "ALA" means an Architecture License Agreement with Arm, including all amendments and annexes to any such agreement.

12.     "Qualcomm ALA" means the Amended and Restated Architecture License Agreement with Arm dated May 31, 2013 (█████████████████████), including all amendments and annexes thereto.

13.     "Nuvia ALA" means the ALA between Nuvia, Inc. and Arm with an effective date of September4 27, 2019, including all amendments and annexes thereto.

14.     "Qualcomm TLA" or "TLA" refers to the technology license agreement referred to in Paragraph 3 of the Second Amended Complaint and that was entered into between Arm Limited and Qualcomm Global Trading PTE, Ltd. on May 30, 2013.

**A098**

Dated: June 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A099**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 11, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
rjgarrett@paulweis.com
ejmorgan@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

/s/ Robert M. Vrana
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600

**A100**

agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A101**

# Exhibit 13

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC, f/k/a, ARM LTD. a U.K. corporation<br><br>Defendant. | C.A. No. 24-490-MN<br><br>**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY** |

**ARM HOLDINGS PLC'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES
TO QUALCOMM'S FIRST SET OF INTERROGATORIES (NOS. 1–3)**

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States District Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm")'s First Set of Interrogatories (Nos. 1–3).

**GENERAL OBJECTIONS**

Arm makes the following general objections, which are hereby incorporated by reference and made part of its response to each and every Interrogatory.

1.    Arm objects to each Interrogatory to the extent it purports to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

2.    Arm objects to the "Instructions" and "Definitions" sections to the extent they purport to alter the plain meaning and/or scope of any specific Interrogatory, on the ground that

1

**A103**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

such alteration renders the Interrogatory vague, ambiguous, overly broad, and/or uncertain, by failing to adequately define terms or by using terms the meaning of which are not readily available or decipherable.  Arm's responses to such Interrogatories shall not be construed as an admission, agreement, or acquiescence to any such instruction or definition.  Arm further objects to the "Instructions" and "Definitions" sections to the extent they purport to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

    3.    Arm objects to the definitions of "Defendant," "Arm," "you," and "your" as overly broad and unduly burdensome to the extent they purport to require Arm to provide information that is not within the possession, custody, or control of Arm Holdings PLC, or to otherwise respond on behalf of third parties, at least because these definitions include entities that have no relation to the present litigation.

    4.    Arm objects to the definitions of "ALA" and "TLA" as overbroad and vague and ambiguous to the extent they define Architecture License Agreement and Technology License Agreement to include "all amendments and annexes to any such agreement."

    5.    Arm objects to the definition of " ███████████ " as overbroad and vague and ambiguous to the extent it defines the term by reference to the definition of that term in "Section

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

███ of the Qualcomm ALA, ████████ of the Qualcomm v8-A ALA Annex, or ████████ of the Qualcomm v9-A ALA Annex."

6.  Arm objects to the definition of "ACK" as overbroad and vague and ambiguous to the extent it defines the term as meaning "Arm's Architecture Compliance Kit or Arm's Architecture Validation Suite or Arm's Architecture Compliance Suite."

7.  Arm objects to each Interrogatory, including the instructions and definitions that Qualcomm purports to incorporate therein, to the extent that each Interrogatory is overbroad, unduly burdensome, not limited to a reasonable time frame, vague and ambiguous, irrelevant, and/or not reasonably calculated to lead to the discovery of admissible evidence.

8.  Arm objects to each Interrogatory to the extent it seeks information, documents, and/or things that are protected from disclosure by the attorney-client privilege, work-product doctrine, common-interest privilege, and/or any other applicable privilege, immunity, or protection (collectively, "privileged information").  Nothing contained in these responses should be considered a waiver of any attorney-client privilege, work-product protection, or any other applicable privilege or doctrine.  Arm does not intend to produce information or documents that would divulge any privileged information.  Any such disclosure is inadvertent and shall not be deemed a waiver of any applicable privilege or immunity.

9.  Arm objects to any factual characterizations in Qualcomm's Interrogatories.  By responding, Arm does not accept or admit any of Qualcomm's factual characterizations.

10.  Arm objects to each Interrogatory to the extent it seeks "all" or "any" facts, documents, witness identifications, or things as overbroad and unduly burdensome.

11.  Arm's discovery and investigation in connection with this case is ongoing.  Arm's responses to these Interrogatories are based on its knowledge to date following a reasonable

3

**A105**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

investigation.  As a result, Arm's responses are provided without waiver of Arm's right to: (a) object to other interrogatories directed to the subject matter of these Interrogatories and responses; (b) make additional or supplementary objections to these Interrogatories; or (c) revise, amend, supplement, or clarify the contents of these responses.

Subject to and without wavier of these General Objections and the more specific objections set forth below, Arm responds as follows:

<u>SPECIFIC OBJECTIONS AND RESPONSES</u>

<u>INTERROGATORY NO. 1:</u>

Identify and describe in detail all ███████████████ thereto, or any other downloads, releases, notes, publications, materials, support, or the like, including ACK patches and OOB tests, that Qualcomm is entitled to under the Qualcomm ALA that Arm has released, distributed, or otherwise made available since June 1, 2022 but not provided to Qualcomm. For each such item identified, your response should include (i) a description of the licensed item, (ii) the type of information (i.e., ████████████████████ ████████████████), (iii) the date(s) the item was made available by Arm, (iv) the names of any Arm licensee other than Qualcomm who received the item, (v) the date(s) of distribution to each Arm licensee other than Qualcomm, (vi) the terms and conditions, including cost, of each Arm licensee for each item identified in response to (iii)-(v), (vii) the three (3) Persons affiliated with Arm with the most knowledge of your response, and (viii) an identification of all documents (by Bates number) that support your response.

<u>RESPONSE TO INTERROGATORY NO. 1 (MARCH 24, 2025):</u>

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory to the extent it seeks to characterize "any other downloads, releases, notes, publications, materials, support, or the like, including ACK patches and OOB tests" as "██ ████████████████ thereto." Arm objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case, including because it seeks the identification and description of "all … or any other" items, materials, or actions from a list of broad and undefined categories, including "notes, publications, materials, support, or the like." Arm objects to this Interrogatory to the extent it calls for a legal conclusion. Arm further objects

4

**A106**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

to this Interrogatory as seeking information that is more readily available to Qualcomm than it is to Arm. Arm further objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information regarding what Arm provided licensees other than Qualcomm under or relating to license agreements to which Qualcomm is not a party. Arm objects to this Interrogatory's use of the phrase "or the like," as vague and ambiguous. Arm objects to this Interrogatory to the extent it seeks privileged information. Arm additionally objects to this Interrogatory as compound and constituting several, discrete interrogatories.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

There are no ███████████████████ as these terms are used in the Qualcomm ALA (including █████████████), and each Annex 1 thereto, or any downloads, releases, notes, publications, materials, support, or other materials, including ACK patches and OOBs, that Qualcomm is entitled to under the Qualcomm ALA that Arm has released, distributed, or otherwise made available since June 1, 2022 but not provided to Qualcomm.

Arm's Interrogatory No. 2 to Qualcomm seeks Qualcomm's "contention that Arm failed to meet any of its obligations under the Qualcomm ALA," and in response, Qualcomm alleges that Arm "failed to deliver (1) patches to the ACK and (2) the OOB," but does not specify any particular ACK patch or OOB that it contends Arm failed to deliver. Qualcomm's Responses and Objections to Arm's First Set of Interrogatories (Nos. 1-9) at 9-11 (March 10, 2025). However, (1) Qualcomm is not entitled to ACK patches and OOB under ███████████ at least because ACK patches and OOB are not ███████████████████ (2) Qualcomm is not entitled to any ACK patches or OOBs for Nuvia-based designs for the reasons explained in Arm's January 17, 2025

5

**A107**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Motion For Judgment As A Matter Of Law Or A New Trial (No. 22-1146, D.I. 596); (3) notwithstanding that Qualcomm is not entitled to any support for Nuvia-based designs, Arm has since January 8, 2025 committed to provide support to Qualcomm for Nuvia-based designs during the pendency of certain litigation between the parties; (4) Arm did not withhold any ACK patches that Qualcomm was entitled to; (5) Arm did not withhold any OOBs that Qualcomm was entitled to.

**Qualcomm Is Not Entitled To ACK Patches And OOB Under ██████████ At Least Because ACK Patches And OOB Are Not ████████████████"**

Qualcomm is not entitled to ACK patches and OOB under ████████ under the Qualcomm ALA at least because they are not "████████████████."

The Qualcomm ALA, at ████ states that ████████████████ ████████████████████████████ ████████████████████ ARM_00055357 at ███ The Qualcomm ALA, at Annex 1 for the ARMv8-A Architecture (████████████████), states that ████████████████████ ████████████████████ ████████████████████ ████████████████ ARM_00063298 at -301, ███ Annex 1 for the Armv9-A Architecture (████████████) states that ████████████ ████████████████████ QCARM_0343954 at -959, ███.

The Qualcomm ALA, at ████ states that ████ means:

████████████████████████
████████████████████████
████████████████████████

6

**A108**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



ARM_00055357 at -359, ██ .

The Qualcomm ALA, at ████ states that ████████████
████████████████████████████████████████
██████████████████████████." ARM_00055357 at -360, § ██ The
Qualcomm ALA, at Annex 1 for the Armv8-A Architecture (███████████████),
states that ███████████████████████████████
█████████████████████." ARM_00063298 at -301, § ██
Annex 1 for the Armv9-A Architecture (█████████████ states that "██

7

**A109**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

████████████████████████████████████████████████

███████████████████████████████."  QCARM_0343954 at -958, ██████

ACK patches are not ████████████████████ under the Qualcomm ALA.  An

ACK patch is a partner-specific solution to a partner-specific ACK test issue, and when that

solution is relevant to all ALA licensees, Arm typically incorporates the solution into its next

quarterly ACK release, which is made available to all ALA partners, including Qualcomm.  ACK

patches are not "████████████ at least because they are not █████████████████

█████████████████████████████████████████████████

███████████████████████, and because ACK patches are not "███████████

█████████████████████████████████████████████████

██████████████████████████ to the Qualcomm ALA,

ARM_00063298 at -301, § ████.  ACK patches are also not "█████████████████

███████████████████████████ *Id.* at -301, § ███; *id.* at -299–

300, ████████████████████.  ACK patches are also not included in "█████████

████████████████" of the Armv9-A Architecture Annex 1 to the Qualcomm ALA.

QCARM_00343954 at -955–58, ████████  None of the ██████████████ identified and listed

by part number in ████████ of the Armv8-A Architecture Annex 1 or the Armv9-A Architecture

Annex 1 to the Qualcomm ALA are ACK patches.  ACK patches are not ████████" because they

are not "███████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████,"

as defined in the Qualcomm ALA.  ARM_00055357 at -359, § ████.  ACK patches are not ████████

8

**A110**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



*Id.*

OOBs are not ████████████████ under the Qualcomm ALA. OOBs identify which of the previously delivered ACK tests a partner should run and are based on the configuration of the partner's design implementation. OOBs are not ████████ at least because they are not ████████████████ ████████████ as defined in the Qualcomm ALA, ARM_00055357 at ███, and because OOBs are not ████████████████ as defined in the Armv8-A Architecture Annex 1 (████████████: ███ to the Qualcomm ALA, ARM_00063298 at -301, ███. OOBs are also not "████████ ████████████████ *Id.* at -301, § ███ *id.* at -299–300, ████████████████. OOBs are also not included in ████████████████ ████████ of the Armv9-A Architecture Annex 1 to the Qualcomm ALA. QCARM_00343954 at -955–58, §§ ███ OOBs are not ████████ because they are not ████████████ ████████████████████████████████████████ ████████████████████████████████████ ████████████████████," as defined in the Qualcomm ALA. ARM_00055357 at -359, ███. OOBs are not ████████████████ ████████████████." *Id.*

**<u>Qualcomm Is Not Entitled To Any ACK Patches Or OOBs For Nuvia-Based Designs</u>**

Nuvia-based designs (including Qualcomm's Oryon CPU cores and the CPU cores used in Qualcomm's Hamoa, Pakala, Nordschleife, and Pegasus products) are unlicensed cores that fall outside the Qualcomm ALA for the reasons explained in Arm's January 17, 2025 Motion For

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Judgment As A Matter Of Law Or A New Trial (No. 22-1146, D.I. 596) and Arm's February 28, 2025 Reply In Support Of Its Motion For Judgment As A Matter of Law Or A New Trial (No. 22-1146, D.I. 614). Qualcomm is not entitled to any ACK Patches or OOB for those unlicensed CPU cores. ARM_00055357 ████████████ ARM_00063298 §███. Under the Qualcomm ALA, Qualcomm is licensed and permitted only to develop, verify, and sell Architecture Compliant Products. ARM_00055357 ███████████; ARM_00063298 §███. Such Arm Compliant Products are limited to "████████████" that "████████████████ ████." ARM_00055357 ████ And those Architecture Compliant Cores are limited to CPU cores developed (1) under the licenses granted in the Qualcomm ALA, (2) by or for Qualcomm, and (3) based on Arm Technology that Arm delivered to Qualcomm. The pre-acquisition Nuvia designs do not satisfy any of those requirements for the reasons explained in Arm's January 17, 2025 Motion For Judgment As A Matter Of Law Or A New Trial (No. 22-1146, D.I. 596) and Arm's February 28, 2025 Reply In Support Of Its Motion For Judgment As A Matter of Law Or A New Trial (No. 22-1146, D.I. 614). The integrated circuits and central microprocessor units Qualcomm developed that incorporate or are based on the pre-acquisition Nuvia designs therefore fall outside the scope of the Qualcomm ALA and outside the scope of Arm's support obligations under that agreement. The Qualcomm ALA permits Qualcomm to seek support and verification solely for CPU designs created by Qualcomm employees, at a time when they were Qualcomm employees, but does not permit Qualcomm to seek support and verification for designs from third parties such as Nuvia.

Because the Nuvia-based designs are not licensed under the Qualcomm ALA, Qualcomm is not entitled to any ACK patches or OOBs for them under the Qualcomm ALA.

**<u>Notwithstanding That Qualcomm Is Not Entitled To Support For Nuvia-Based Designs, Arm Has Since January 8, 2025 Committed To Provide Support For Them</u>**

10

**A112**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

On January 8, 2025, Arm sent a letter to Qualcomm stating that "Arm intends to provide support for the Nuvia CPUs, including support and verification services" pending certain litigation between the parties:

> The Qualcomm ALA was the subject of an incomplete jury verdict on December 20 that found in Qualcomm's favor. That verdict is not final and is subject to a variety of legal challenges. Nonetheless, Arm respects and values the jury process and the Court's ongoing role in resolving the parties' disputes. As a result, and while Arm's ongoing legal challenges are pending, Arm will treat the Nuvia CPUs as falling within the scope of the Qualcomm ALA, and Arm therefore withdraws the pending October 22, 2024 notice of material breach. Arm has no current plan to terminate the Qualcomm ALA until the legal process resolves the parties' disputes over the Qualcomm ALA. Arm also conditionally accepts Qualcomm's one-time, five-year year extension under which the Qualcomm ALA will expire in 2033. Pursuant to separate correspondence, Arm intends to provide support for the Nuvia CPUs, including support and verification services, while the related legal challenges remain outstanding.

1/8/2025 Arm Letter to Qualcomm.

**Arm Did Not Withhold Any ACK Patches Qualcomm Was Entitled To**

Qualcomm has not identified any specific ACK patch(es) that Qualcomm contends Arm improperly withheld from Qualcomm. For example, Qualcomm does not identify any specific ACK patches that Arm allegedly withheld from Qualcomm in its response to Arm's Interrogatory No. 2, which seeks, *inter alia*, "the complete legal and factual basis for [Qualcomm's] contention that Arm failed to meet any of its obligations under the Qualcomm ALA." Qualcomm's Responses and Objections to Arm's First Set of Interrogatories (Nos. 1-9) at 9-11 (March 10, 2025). Qualcomm cites to its First Amended Complaint, where Qualcomm references Arm engineer Vivek Agrawal's deposition testimony and exhibit QX175 to his deposition (ARM_01314327) to allege that Arm "withheld from Qualcomm certain ACK 'patches.'" FAC ¶ 80 (citing Redacted Mar. 5, 2024 Hr'g Tr., *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 26, 2024), D.I. 312-1; Redacted Mar. 6 Order, Ex. A. to Pl.'s Ltr. to Hon. Laura D. Hatcher Regarding Redactions to the Mar. 6, 2024 Mem. Order, *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN

11

**A113**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

(D. Del. Mar. 20, 2024), D.I. 303 at ECF p.5). Qualcomm does not, however, identify any specific ACK patches that Arm allegedly withheld from Qualcomm. *Id.*

Qualcomm's FAC cites to its November 3, 2022 and December 5, 2022 letters to Arm, however, those letters also did not specifically identify any allegedly withheld ACK patches. ARM_00025401–03. The cited requests for ACK patches in QX175 were for a product that Arm "believe[d] … to be using Nuvia technology," QX175 at ARM_01314329, and Qualcomm is not entitled to any ACK patches for Nuvia-based designs. Further, Arm continued to provide all of its ALA partners, including Qualcomm, the same quarterly ACK releases, which typically incorporate solutions to ACK test issues that are relevant to all ALA licensees. As Qualcomm acknowledged in its First Amended Complaint, Qualcomm did not need any ACK patches from Arm to run the validation tests that Arm had provided. FAC ¶ 86.

## Arm Did Not Withhold Any OOBs Qualcomm Was Entitled To

Qualcomm has not identified any specific OOBs that Qualcomm contends Arm improperly withheld from Qualcomm. For example, Arm's Interrogatory No. 2 seeks "the complete legal and factual basis for [Qualcomm's] contention that Arm failed to meet any of its obligations under the Qualcomm ALA." Qualcomm's Responses and Objections to Arm's First Set of Interrogatories (Nos. 1-9) at 9-11 (March 10, 2025). Qualcomm does not identify any specific OOBs that Arm allegedly withheld. Qualcomm cites to its First Amended Complaint, where Qualcomm references Arm engineer Vivek Agrawal's deposition testimony and exhibit QX175 (ARM_01314327) to his deposition, as well as an October 10, 2022 email that Mr. Agrawal sent to Qualcomm engineer Jignesh Trivedi, produced at ARM_01020195. FAC ¶¶ 69, 79–80. However, neither the cited testimony nor the cited documents reference any specific OOB that Qualcomm contends Arm improperly withheld; they simply reference "OOB." Likewise, Qualcomm cites to its November

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

3, 2022 and December 5, 2022 letters to Arm, but those letters do not identify any allegedly withheld OOB and instead simply reference "the OOB." ARM_00025401–03.  The cited requests for OOBs were for a product that Arm "believe[d] … to be using Nuvia technology," QX175 at ARM_01314329; *see also* ARM_01020195, and Qualcomm is not entitled to any OOBs for Nuvia-based designs.

Further, OOBs identify which of the previously delivered tests a partner should run, and Arm had already delivered those tests to Qualcomm in the Architecture Valid Suite Kit.  *See*

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████;
ARM_00002045 ("Management System Report" showing Arm "IP downloaded from Connect" by specific Nuvia employees, later Qualcomm employees, including the "ARMv8-A Architecture Compliance Kit," the "ARMv8-A Architecture – Valid Suite Kit" and the "User Guide").  As Qualcomm acknowledged in its First Amended Complaint, Qualcomm did not need any OOB from Arm to run the validation tests that Arm had provided.  FAC ¶ 85; *see also* Agrawal Dep. Tr. at 54:18–55:2 (████████████████████████████████████████████████████

████████████████████████████████████████████████████).

Further, because OOB is partner-specific, Arm has not "released, distributed, or otherwise made available since June 1, 2022 but not provided to Qualcomm" any OOB that would be relevant to Qualcomm.  Agrawal Dep. Tr. at 29:1–21 ████████████████████████████████).

Further, by June 1, 2022, Arm had given Qualcomm several OOB packages, including for use with Nuvia-based designs.  *See*, *e.g.*, ████████████████████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

███████████████████████████████████████████████████████

███████████████); ARM_00001192 (Arm delivering OOB to Qualcomm on or around October 28, 2021); ARM_00001512 (Arm delivering OOB to Qualcomm on or around January 18, 2022); ARM_00132256 (Arm delivering OOB to Qualcomm on or around May 3, 2022). Qualcomm used these OOBs to successfully run ACK testing first for the Nuvia-based Phoenix implementation and then at least for the Nuvia-based Hamoa core design. ARM_00001495 at -495–96 (Arm giving Qualcomm the "Green-signal" for its "Phoenix implementation (v8.7)" on February 4, 2022); ARM_00000634 (Arm telling Qualcomm on June 3, 2022, "No ACK issue pending for Hamoa's sign-off. Results were matching with reference OOB results. Awaiting legal clearance.").

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Vivek Agrawal is knowledgeable about OOBs, ACK releases, and ALA licensee support, and Richard Grisenthwaite is knowledgeable about the design, development, operation, and purported verification of Arm-based technology and Arm's relationship with Nuvia and Qualcomm.

As discovery is ongoing, Arm reserves the right to supplement, amend, or modify its response to this Interrogatory, and reserves the right to rely upon any evidence subsequently discovered or which may otherwise come to light during discovery.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

The Armv8-A Architecture Annex 1 to the Qualcomm ALA defines █████████

█████████████████████████████████████████████
████████████████████████████████████

14

**A116**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



ARM_00063298 at -302, § ▮. OOBs and ACK patches are not ▮, including for the reasons stated above.

The Armv9-A Architecture Annex 1 to the Qualcomm ALA defines ▮ as:



QCARM_0343954 at -958, § ▮. OOBs and ACK patches are not "ACK", including for the reasons stated above.

Arm further incorporates by reference Arm's objections and responses to Qualcomm Interrogatory Nos. 5 and 10.

Arm further incorporates by reference the testimony of all witnesses that have been deposed in this case to date, including those specifically referenced herein, as well as the testimony of all witnesses deposed in *Arm v. Qualcomm*, Case No. 1:22-cv-01146 (D. Del.), and the exhibits used during those depositions.

Pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARMQC_02603587, ARMQC_02604609, ARMQC_02604610, ARMQC_02604611, ARMQC_02604612, ARMQC_02604613, ARMQC_02604614, ARMQC_02604615, ARMQC_02604616, ARMQC_02604617, ARMQC_02604618, ARMQC_02604619, ARMQC_026046020, ARMQC_02604621, ARMQC_02604622, ARMQC_02604623,

15

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

ARMQC_02747093, ARMQC_02747097, ARMQC_02747103, ARMQC_02747104, ARMQC_02779171, ARMQC_02779174, ARMQC_02779176, ARMQC_02779179, ARMQC_02779181, QCARM_2430181, ARM_00100013, ARM_01282655, ARM_00090791, ARM_00067349, ARM_00102683, ARM_00091389, ARM_00068087, ARM_00068131, ARM_00068459, ARM_00068504, ARM_00091657, ARM_00091659, ARM_00091714, ARM_00091768, ARM_00091799, ARM_00091834, ARM_00091869, ARM_00091903, ARM_00075096, ARM_00075098, ARM_00075343, ARM_00076113, ARM_00103566, ARM_00103635, ARMQC_02755397, ARMQC_02755446, ARMQC_02755490, ARMQC_02755534, ARMQC_02755580, ARMQC_02755624, ARMQC_02755674, ARMQC_02755903, ARMQC_02755905, ARMQC_02756148, ARMQC_02756245, ARMQC_02756246, ARMQC_02756344, ARMQC_02746634, ARMQC_02756542, ARMQC_02756544, ARMQC_02746871, ARMQC_02756860, ARMQC_02760525, ARMQC_02627275, ARM_01241565, QCVARM_0573677, ARMQC_02779064, ARMQC_02779076, ARMQC_02779099, ARMQC_02779107, ARMQC_02779116, ARMQC_02779122, ARMQC_02779133, ARM_00001777, ARM_00001195, ARM_00001198, ARM_00001777, ARM_01020186, QCARM_3337526, QCARM_3337900, QCARM_3338108, QCARM_3339493, QCVARM_0685544, QCVARM_0689117, QCVARM_0699179, QCARM_3216178, QCARM_3066477, QCVARM_0602227, QCVARM_0618420, QCVARM_0691521, QCVARM_0000395, QCVARM_0000269, QCARM_3353040, QCVARM_0602564, QCVARM_0000142, QCVARM_0618741, QCVARM_0000180, QCARM_3352796, QCARM_3353006, QCARM_3353126, ARM_00025401, QCVARM_0468612, QCVARM_0000061, QCVARM_1118518, QCVARM_0602258, QCVARM_0602295, QCVARM_0468174, QCVARM_0000114, QCVARM_0000092,

16

**A118**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QCVARM_0000085,    QCVARM_0000123,    QCVARM_0000135,    QCVARM_0602359,

QCVARM_0468148,    QCVARM_0000395,    QCVARM_0000269,    QCARM_3353040,

QCVARM_0602564,    QCVARM_0621692,    QCVARM_0535116,    QCVARM_0524624,

QCVARM_0854027,    QCARM_0566625,    QCVARM_0524624,    QCVARM_0613083,

QCVARM_0613160, QCVARM_0540468, QCVARM_0452598, all documents produced in

Qualcomm's 11th production (QCVARM_011), and all documents cited in Qualcomm's

responses to Arm Interrogatory Nos. 1, 2, 6, 9, and 13.

As discovery is ongoing, Arm reserves the right to supplement, amend, or modify its

response to this Interrogatory, and reserves the right to rely upon any evidence subsequently

discovered or which may otherwise come to light during discovery.


**INTERROGATORY NO. 2:**

With respect to Arm's October 22, 2024 letter to Qualcomm alleging that Qualcomm is in material breach of the QC ALA, state (i) a complete explanation for the timing of that letter and an identification of all Persons involved in the drafting of the letter, (ii) a complete list of all Third Parties that Arm shared the letter with or discussed the subject matter of the letter with or otherwise informed of Qualcomm's purported breach and an identification of all Persons affiliated with Arm involved in any communications with those Third Parties, and (iii) a list of the Persons affiliated with Arm with the most knowledge of Arm's decision to share the letter or information with Third Parties, and (iv) an identification of all documents (by Bates number) that support your response.

**RESPONSE TO INTERROGATORY NO. 2 (MARCH 24, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this

Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the

case. Arm further objects to this Interrogatory as seeking information that is not relevant to either

Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant

evidence. Arm further objects to this Interrogatory to the extent it seeks information protected from

discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

**Arm Repeatedly And Publicly Stated That Qualcomm
Was In Breach Of The Qualcomm ALA As Early As 2022**

On November 15, 2022 Arm filed a publicly-available Answer in *Arm Ltd. v. Qualcomm Inc. et al*., No. 22-1146 (MN) ("*Arm v. Qualcomm*"), in which Arm publicly stated that "Qualcomm is materially breaching its ALA, giving Arm the right to terminate, and the Qualcomm ALA does not provide a license for or right to continue development of the Nuvia technology," that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology, entitling Arm to terminate that ALA based on Qualcomm's material breaches," that "Arm is entitled to terminate Qualcomm's ALA based on Qualcomm's material breaches of the verification, delivery, and support and maintenance provisions," and that:

> "Qualcomm's allegations that it is exercising its rights with respect to the relevant Nuvia technology under Qualcomm's license agreements with Arm and is not in violation of those agreements fail because Arm has no such obligations with respect to the Nuvia technology, and Qualcomm is breaching the Qualcomm ALA by insisting otherwise. Under the Qualcomm ALA, Arm has no obligation to provide, and Qualcomm has no right to seek, verification, delivery, or support and maintenance in connection with technology developed under the now-terminated Nuvia ALA. The 'verification' provisions of Section 4 of the Qualcomm ALA are limited to products manufactured [redacted] in the ALA. The delivery (Section 5) and support and maintenance (Section 7) obligations of the Qualcomm ALA are similarly limited to the defined [redacted] and therefore likewise do not extend to the relevant Nuvia technology, which embodies and was derived from Arm technology delivered by Arm to Nuvia under Nuvia's now-terminated ALA. Qualcomm's unreasonable, bad-faith demands that Arm comply with purported obligations for verification, delivery, and support and maintenance with respect to technology delivered and developed outside the scope of the Qualcomm ALA are contrary to the parties' expectations and undermines the benefit to Arm from the Qualcomm ALA, thereby materially breaching that agreement's terms and implied

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

covenant of good faith and fair dealing and entitling Arm to terminate the Qualcomm ALA under Section 14.2."

No. 22-1146, D.I. 21 at 2, 37, 39, 41-42.

On April 11, 2024, Arm filed another publicly-available Answer that likewise included allegations that Qualcomm was in breach of its ALA, including that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology," and that "Qualcomm is materially breaching its ALA, giving Arm the right to terminate …." D.I. 322 at 2, 42-45, 48-49. These materials were available to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146.

### Arm and Qualcomm's Correspondence Regarding Qualcomm's Breach of the Qualcomm ALA

On October 22, 2024 Arm sent a notice of material breach ("October 22 Notice") to Qualcomm that echoed its public statements in its November 15, 2022 and April 11, 2024 Answers, including that:

> "The Qualcomm ALA permits Qualcomm to seek support and verification solely for CPU designs created by Qualcomm employees, at a time when they were Qualcomm employees. Qualcomm is only permitted to market an Architecture Compliant Core if Qualcomm has complied in all respects with the requirements of the Qualcomm ALA and completed the verification procedures provided therein. And Qualcomm is entitled to seek contractual remedies solely for CPU designs that fall within the scope of the ALA. These obligations are reflected in multiple places in the Qualcomm ALA, including but not limited to ██████████████████ ████████████████████
>
> Qualcomm has systematically and willfully breached these obligations, and its breaches have accelerated and expanded in recent months. Specifically, Qualcomm has developed CPUs and marketed multiple products that contain CPUs that use designs, technology, and code created by Nuvia employees at the time when Nuvia was a third party (hereinafter 'Nuvia designs'). Recently, Qualcomm has sought support and verification for additional designs that reuse the Nuvia designs. Qualcomm and Nuvia have willfully refused to discontinue use of the Nuvia designs despite the independent obligations provided by Section 15.1 of the Nuvia ALA upon termination. And Qualcomm initiated and continues to prosecute contractual claims that arise from Qualcomm's improper conduct with respect to these unlicensed cores.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Due to Qualcomm's willful, ongoing, and renewed actions, Qualcomm is in material breach of the Qualcomm ALA."

10/22/2024 Arm Breach Notice to Qualcomm.  Arm's October 22 Notice was drafted by counsel and sent by Spencer Collins, Arm's Chief Legal Officer, to Ann Chaplin, Qualcomm's General Counsel.  Qualcomm responded on October 28, 2024.  10/28/2024 Qualcomm Ltr. to Arm. Qualcomm made a summary of the contents of both notices available to the public on November 6, 2024.

On January 8, 2025, Arm withdrew its October 22 Notice, stating that:

The Qualcomm ALA was the subject of an incomplete jury verdict on December 20 that found in Qualcomm's favor. That verdict is not final and is subject to a variety of legal challenges. Nonetheless, Arm respects and values the jury process and the Court's ongoing role in resolving the parties' disputes. As a result, and while Arm's ongoing legal challenges are pending, Arm will treat the Nuvia CPUs as falling within the scope of the Qualcomm ALA, and Arm therefore withdraws the pending October 22, 2024 notice of material breach. Arm has no current plan to terminate the Qualcomm ALA until the legal process resolves the parties' disputes over the Qualcomm ALA. Arm also conditionally accepts Qualcomm's one-time, five-year year extension under which the Qualcomm ALA will expire in 2033. Pursuant to separate correspondence, Arm intends to provide support for the Nuvia CPUs, including support and verification services, while the related legal challenges remain outstanding.

Arm's prior correspondence and relevant court filings in the Delaware litigation reflect Arm's legal position regarding the scope of the Qualcomm ALA and the required actions that Nuvia acting in concert with Qualcomm must take in light of the termination of the Nuvia ALA on March 1, 2022. Arm's future legal filing will reflect its legal position regarding the non-final verdict, a new trial and judgment in the legal case. Arm reserves all rights and none of Arm's conduct, support and verification reflects a waiver of Arm's present or future rights or claims.

1/8/2025 Arm Ltr. to Qualcomm.  Qualcomm and Arm exchanged further correspondence on January 22 and 30.  1/22/2025 Qualcomm Ltr. to Arm; 1/30/2025 Arm Ltr. to Qualcomm.

**Arm and Qualcomm's Press Briefing Regarding
Qualcomm's Breach of the Qualcomm ALA**

On October 22, 2024 Paul Kranhold, who is a partner at FGS Global, and Kenneth Siegel, who is a director of SoftBank Group Corporation Ltd and a partner at Morrison & Foerster LLP,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

discussed Arm's October 22 Notice with Ian King at Bloomberg, who reported on the Notice and upcoming trial on October 22. Individuals knowledgeable about Arm's decision to discuss the Notice with Bloomberg are Paul Kranhold and Kenneth Siegel. On October 22 & 23, multiple news outlets reported that Qualcomm released a statement in response to the Bloomberg article. On October 22 or 23, Qualcomm released a statement to the media regarding Arm's October 22 Notice. On October 23, Arm released a statement to the media in response to Qualcomm's statement. On October 24, Phil Hughes of Arm confirmed for Ian King at Bloomberg that Arm had sent the letter to Qualcomm. Arm did not send its October 22 Notice to any third-party companies or customers.

Following the publication of an article by Ian King on October 22, 2024, a statement by Arm regarding the October 22, 2024 letter was provided to the following persons: Stephen Nellis (Reuters), Gavin Bonshor (The Register), Mark Hachman (PC World), Ina Fried (Axios), Kosuke Shimizu (Nikkei), Ryan Browne (CNBC), David Lumb (CNET), Hadlee Simmons (Android Authority), Adam Clark (Barrons), Tae Kim (Barrons), Benjamin Woodecki (Capacity Media), Wayne Ma (The Information), Kaustubh Bagalkote (Benzinga), Adrienne Valdez (MT Newswires), Chris Thomas (Android Police), James Sanders (TechInsights), Seema Mody (CNBC), Tom McKay (IT Brew/Morning Brew), and Fudo Abazovic (Fudzilla).

On November 6, 2024 Qualcomm publicly described Arm's October 22 Notice in its Annual Report to investors:

> On October 22, 2024, Arm provided us with a notice alleging that we have breached the Qualcomm ALA by marketing products that contain CPUs that Arm alleges use designs, technology and code created by Nuvia employees prior to our acquisition of Nuvia; by seeking support and verification from Arm for additional products that use such alleged designs, technology and code; and by suing Arm for breach of the Qualcomm ALA. Arm's notice asserts that it will have the right to terminate the Qualcomm ALA if such alleged breaches are not cured within 60 days of such notice.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Qualcomm 10-K Annual Report (November 6, 2024).

On December 16, 2024 Qualcomm filed a public version of its First Amended Complaint in this case in which it publicly described Arm's October 22, 2024 notice of material breach, stating that "Arm sent Qualcomm a notice of material breach purporting to have the right to terminate Qualcomm's own license," described the contents of the letter, and publicly filed a redacted copy of the notice of material breach. A redacted copy of Arm's October 22, 2024 notice of material breach was and remains accessible to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146. D.I. 39 at 2, 8-9, 32-35; D.I. 39-1.

On January 22, 2025, Qualcomm wrote to Arm and stated that the parties' correspondence on this issue was not confidential, and that Qualcomm was "required by law" to publicly disclose the correspondence in its filings with the U.S. Securities & Exchange Commission, and that "in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice":

> "Even if that [January 8, 2025] letter [withdrawing the October 22, 2024 notice of material breach] were itself 'Confidential'—and it is not—Qualcomm is nevertheless required by law to disclose the fact that Arm has withdrawn that notice and indicated that it has no current plan to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. For instance, in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice and Arm's threats to terminate the Qualcomm ALA. Qualcomm intends to update those disclosures in light of Arm's withdrawal of that notice and statement that it does not currently intend to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. We presume you have no objection to this legally required update."

1/22/2025 Qualcomm Ltr. to Arm.

On February 5, 2025 Qualcomm publicly described Arm's January 8, 2025 letter in its Quarterly Report:

> On January 8, 2025, Arm notified us that it was withdrawing its October 22, 2024 notice of breach and indicated that it has no current plan to terminate the Qualcomm ALA, while reserving its rights pending the outcome of the ongoing litigation.

**A124**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Qualcomm 10-Q Quarterly Report (February 5, 2025). Christiano Amon also publicly described Arm's communication in its public investor conference call on February 5, 2025.

<u>**Qualcomm Recognized That Arm's October 22, 2024**</u><br><u>**Notice Of Material Breach "Is Actually Not New News"**</u>

In *Arm v. Qualcomm*, the Court held a pre-trial conference on November 20, 2024.  During that conference, Qualcomm's counsel stated that Arm's claim that Qualcomm is in breach of the Qualcomm ALA has been in the case "starting at the very beginning," Nov. 11, 2024 Hearing Tr. at 13:10-16, and that "[t]he letter on October 22nd is actually not new news in the sense of alleging these breaches":

> "And in response to that, there have been repeated allegations that the Qualcomm ALA has been breached by Qualcomm. The letter on October 22nd is actually not new news in the sense of alleging these breaches. It has been in the case squarely and we anticipate that it is going to be raised by ARM in response to the arguments that we have regarding the fact that our products are licensed."

*Id.* at 14:18-24.  Qualcomm's counsel stated earlier in that same hearing that "with respect to Qualcomm's alleged breach under the Qualcomm ALA, Arm itself has put that in the case starting at the very beginning" and that "[w]hen you go to their answer at DI 21, they say … [Qualcomm is] also materially breaching its ALA with Arm."  *Id.* at 13:10-16.  Qualcomm candidly admitted "as early as November 15, 2022, in DI 21, … they say Qualcomm is materially breaching its own ALA and giving ARM the right to terminate that agreement."  *Id.* at 13:23-14:12.  Qualcomm also acknowledged "there is at least five or six references" to this same assertion that Arm has the right to terminate the Qualcomm ALA "throughout [Arm's] pleading" in November 2022.  *Id.*

As discovery is ongoing, Arm reserves the right to supplement, amend, or modify its response to this Interrogatory, and reserves the right to rely upon any evidence subsequently discovered or which may otherwise come to light during discovery.

23

**A125**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further incorporates by reference the testimony of the following witnesses: Will Abbey, Kenneth Siegel, and Spencer Collins.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 3:**

Describe, in detail, all facts and circumstances, including the status, of any development or plans to develop v10 of the Arm ISA and any licensing thereof. Your response should include (i) an identification of any features included in v10 of the Arm ISA that were not included in v9 of the Arm ISA and a description of the incremental value, if any, of each feature, (ii) the date(s) on which Arm began discussing development of v10 and any projected timelines for its development or release, (iii) the identity of any partners who have requested a license to v10 and (iv) the terms and conditions of any license proposal from Arm (v) a list of all Persons affiliated with Arm involved in such communications or negotiations, (vi) a list of the Persons affiliated with Arm with the most knowledge of the development or licensing of v10 of the Arm ISA, and (vii) an identification of all documents (by Bates number) that support your response.

**RESPONSES TO INTERROGATORY NO. 3 (MARCH 24, 2025):**

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case. Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Subject to and without wavier of its general and specific objections, Arm responds as follows: Subject to its objections, Arm is willing to meet and confer with Qualcomm as to the relevance and appropriate scope of this Interrogatory, if any.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP


 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

27

**A129**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A130**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A131**

# Exhibit 14

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
   a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
   Delaware corporation

          Plaintiffs,

     v.

ARM HOLDINGS PLC, f/k/a, ARM LTD.
   a U.K. corporation

          Defendant.

C.A. No. 24-490-MN

**HIGHLY CONFIDENTIAL -
ATTORNEYS EYES ONLY**

## ARM'S FIRST SUPPLEMENTAL RESPONSE TO
## QUALCOMM'S AMENDED INTERROGATORY NO. 3

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States District Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm")'s Amended Interrogatory No. 3.

## GENERAL OBJECTIONS

Arm incorporates by reference the objections and responses previously served in response to Qualcomm's Amended Interrogatory No. 3.

## SPECIFIC OBJECTIONS AND RESPONSES

## AMENDED INTERROGATORY NO. 3:

Describe, in detail, all facts and circumstances, including the status, of any development or plans to develop v10 of the Arm ISA and any licensing thereof. Your response should include (i) an identification of any features included in v10 of the Arm ISA that were not included in v9 of

1

**A133**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

the Arm ISA and a description of the incremental value, if any, of each feature, (ii) the date(s) on which Arm began discussing development of v10 and any projected timelines for its development or release, (iii) the identity of any partners who have requested a license to v10 (iv) the terms and conditions of any license proposal from Arm (v) the date(s) on which Arm entered into negotiations for v10 with these partners (vi) the date(s) on which Arm entered offered any license or entered into any license agreement with these partners (vii) a list of all Persons affiliated with Arm involved in such communications or negotiations, (viii) a list of the Persons affiliated with Arm with the most knowledge of the development or licensing of v10 of the Arm ISA, and (ix) an identification of all documents (by Bates number) that support your response.

**RESPONSE TO AMENDED INTERROGATORY NO. 3 (MAY 12, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information concerning allegations made in Qualcomm's pending Motion for Leave to File a Second Amended Complaint, and because it seeks information regarding "all facts and circumstances," "any license proposals," "all Persons," without limitation. Arm further objects to this Interrogatory as vague and ambiguous, as the term "the date(s) on which Arm entered offered any license or entered into any license agreement" is unclear. Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this Interrogatory as having multiple discrete subparts and therefore multiple interrogatories, and will limit its response to information, if any, regarding "development or plans to develop ▮ of the Arm ISA." Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

2

**A134**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Subject to and without wavier of its general and specific objections, Arm responds as follows: Arm is willing to meet and confer with Qualcomm as to the relevance and appropriate scope of this Interrogatory, if any.

**FIRST SUPPLEMENTAL RESPONSE TO AMENDED INTERROGATORY NO. 3 (JUNE 18, 2025):**

Arm further objects to this interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding "the incremental value" of "any features included in v10 of the Arm ISA that were not included in v9 of the Arm ISA," "the terms and conditions of any license proposal from Arm," "the identity of any partners who have requested a license to v10," "the date(s) on which Arm entered into negotiations or v10 with these partners," "the date(s) on which Arm entered offered [sic] any license or entered into any license agreement with those partners," without limitation or regard to relevance. Arm objects to this request to the extent it calls for expert testimony or opinion, which is not yet due and will be served in accordance with the Scheduling Order.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

**Arm's Development of v10 of the Arm ISA**

Qualcomm's request for detailed information about the development of v10 to the Arm ISA is premature. Arm gave a presentation entitled "Architecture update for 2025" in October 2024 that included information about the "███████████████████████████████ ██████████" and a preliminary timeline for development. QCVARM_0851876 at 1876–1881. That presentation similarly included a "summary of other Armv10-A changes" that were being "considered" but remain "highly provisional and subject to partner feedback." *Id.* at 1894–1895. Subsequently, in March 2025, Arm hosted an Arm Development Meeting attended by Arm's

3

**A135**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

partners, including Qualcomm.  ARMQC_02771129 at 1132; *see also* ARMQC_02771151.

Preliminary information on v10, Arm's development timeline for v10, and "other changes being

considered" was shared with attendees.  ARMQC_02771129 at 1129–1150.

### Arm's Licensing of v10 of the Arm ISA

On April 24, 2025, Qualcomm sent a letter to Arm requesting "an initial licensing offer for

v10, including licensing fees and royalty pricing."  ARMQC_02771128.  According to Qualcomm,

"ARM gave a presentation to Qualcomm entitled ARM Architecture Update for 2025" which

allegedly "made clear that Armv10-A was on the way in the near future and would build on

Armv9-A, which Qualcomm has already licensed."  *Id.*

On May 29, 2025, Qualcomm sent another letter to Arm purporting to follow up on its

April 24th letter and requesting that Arm "promptly provide an initial licensing offer for v10 that

includes licensing fees and royalty pricing."  ARMQC_02771124.

On June 4, 2025, Will Abbey, Arm's Chief Commercial Officer, wrote to Qualcomm

regarding its request for a v10 license, stating that Arm is prepared to negotiate in good faith for a

v10 license and proposed a business meeting:

> Arm is prepared to negotiate in good faith over the terms of a license to the v10
> architecture. As the first step in those negotiations, we propose a meeting between
> our commercial teams to better understand how Qualcomm intends to use the v10
> architecture. That will help Arm put together an appropriately tailored licensing
> proposal. Please let us know a few dates Qualcomm is available for that meeting,
> and we will let you know our availability.

ARMQC_02771125.  On June 9, Qualcomm responded, but did not address Mr. Abbey's request

for a business meeting.  ARMQC_02771126.

On June 13, 2025, Arm's Executive Vice President and Chief Legal Officer Spencer

Collins sent Qualcomm another letter regarding v10:

> On this basis, on June 4, 2025, Will Abbey, Arm's Chief Commercial Officer,
> proposed in good faith a business meeting regarding Qualcomm's request for a

4

**A136**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

license to Arm's v.10 architecture.  Mr. Abbey's offer to meet remains open and Arm continues to believe that such a meeting would be the most efficient path forward in response to Qualcomm's request.  Please have the relevant business personnel respond to Mr. Abbey with dates that Qualcomm is available for such a meeting.

\* \* \*

Despite these clear limits on Qualcomm's election rights under the ALA, as we told Qualcomm in 2020, nothing prevents Arm and Qualcomm from discussing a potential license to future versions of the Arm architecture as they become available.  Arm remains prepared to negotiate in good faith over the terms of a license to the v.10 architecture.

ARMQC_02771127.

Arm also incorporates by reference its responses to Interrogatory Nos. 4 and 10.

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Martin Weidmann.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

## SECOND SUPPLEMENTAL RESPONSE TO AMENDED INTERROGATORY NO. 3 (July 11, 2025):

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm further incorporates by reference the testimony of the following witnesses: Lynn Couillard, Martin Weidmann, Richard Grisenthwaite, Gerard Williams, Spencer Collins, Andrew Howard, Michael Williams, Will Abbey, Mark Dragicevich, Jannik Nelson, Jeffrey Fonseca, Ehab Youssef, Rene Haas, and Karthik Shivashankar, including the documents used at each of those depositions.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

5

**A137**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Matthew J. McIntee
Meredith Pohl
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
matt.mcintee@kirkland.com
meredith.pohl@kirkland.com

Jay Emerick
Adam Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
adam.janes@kirkland.com

Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP


  */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

7

**A139**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A140**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A141**

# Exhibit 15

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED,<br>  a Delaware corporation,<br>QUALCOMM TECHNOLOGIES, INC.,<br>  a Delaware corporation,<br><br>             Plaintiffs,<br><br>     v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>  a U.K. corporation,<br><br>             Defendant. | C.A. No. 24-490 (MN)<br><br>HIGHLY CONFIDENTIAL -<br>ATTORNEYS EYES ONLY |

## ARM'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S SECOND SET OF INTERROGATORIES (NOS. 4-11)

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States District Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm")'s Second Set of Interrogatories (Nos. 4-11).

## GENERAL OBJECTIONS

Arm makes the following general objections, which are hereby incorporated by reference and made part of its response to each and every Interrogatory.

1.    Arm objects to each Interrogatory to the extent it purports to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

2.    Arm objects to the "Instructions" and "Definitions" sections to the extent they purport to alter the plain meaning and/or scope of any specific Interrogatory, on the ground that such alteration renders the Interrogatory vague, ambiguous, overly broad, and/or uncertain, by

**A143**

failing to adequately define terms or by using terms the meaning of which are not readily available or decipherable.  Arm's responses to such Interrogatories shall not be construed as an admission, agreement, or acquiescence to any such instruction or definition.  Arm further objects to the "Instructions" and "Definitions" sections to the extent they purport to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

3.      Arm objects to the definitions of "Defendant," "Arm," "you," and "your" as overly broad and unduly burdensome to the extent they purport to require Arm to provide information that is not within the possession, custody, or control of Arm Holdings PLC, or to otherwise respond on behalf of third parties, at least because these definitions include entities that have no relation to the present litigation.

4.      Arm objects to the definitions of "ALA" and "TLA" as overbroad and vague and ambiguous to the extent they define Architecture License Agreement and Technology License Agreement to include "all amendments and annexes to any such agreement."

5.      Arm objects to the definition of "███████████" as overbroad and vague and ambiguous to the extent it defines the term by reference to the definition of that term in "████ ███ of the Qualcomm ALA, ██████████ of the Qualcomm v8-A ALA Annex, or ██████████ of the Qualcomm v9-A ALA Annex."

6.      Arm objects to the definition of "ACK" as overbroad and vague and ambiguous to the extent it defines the term as meaning "Arm's Architecture Compliance Kit or Arm's Architecture Validation Suite or Arm's Architecture Compliance Suite."

7.      Arm objects to each Interrogatory, including the instructions and definitions that Qualcomm purports to incorporate therein, to the extent that each Interrogatory is overbroad,

**A144**

unduly burdensome, not limited to a reasonable time frame, vague and ambiguous, irrelevant, and/or not reasonably calculated to lead to the discovery of admissible evidence.

8.    Arm objects to each Interrogatory to the extent it seeks information, documents, and/or things that are protected from disclosure by the attorney-client privilege, work-product doctrine, common-interest privilege, and/or any other applicable privilege, immunity, or protection (collectively, "privileged information").  Nothing contained in these responses should be considered a waiver of any attorney-client privilege, work-product protection, or any other applicable privilege or doctrine.  Arm does not intend to produce information or documents that would divulge any privileged information.  Any such disclosure is inadvertent and shall not be deemed a waiver of any applicable privilege or immunity.

9.    Arm objects to any factual characterizations in Qualcomm's Interrogatories.  By responding, Arm does not accept or admit any of Qualcomm's factual characterizations.

10.    Arm objects to each Interrogatory to the extent it seeks "all" or "any" facts, documents, witness identifications, or things as overbroad and unduly burdensome.

11.    Arm's discovery and investigation in connection with this case is ongoing.  Arm's responses to these Interrogatories are based on its knowledge to date following a reasonable investigation.  As a result, Arm's responses are provided without waiver of Arm's right to: (a) object to other interrogatories directed to the subject matter of these Interrogatories and responses; (b) make additional or supplementary objections to these Interrogatories; or (c) revise, amend, supplement, or clarify the contents of these responses.

Subject to and without wavier of these General Objections and the more specific objections set forth below, Arm responds as follows:

**A145**

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 4:

Describe, in detail, Arm's reason(s), explanation, or justification for failing to respond to Qualcomm's May 2020 election under ███████████████████████ to extend the initial term of the ALA. Your response should include (1) the names of any individuals involved in the decision not to respond to Qualcomm's election, (2) a description of any discussions regarding whether to respond to Qualcomm's election, including any discussions that occurred in subsequent years, (3) any factual or legal bases that Arm relied on in deciding not to respond to Qualcomm's election, and (4) an identification of any relevant documents by Bates number.

### RESPONSE TO INTERROGATORY NO. 4 (JUNE 16, 2025):

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks information regarding "the names of any individuals," "any discussions," "any factual or legal bases," and "any relevant documents," without limitation. Arm objects to this Interrogatory as vague and ambiguous and as mischaracterizing, as the terms "Qualcomm's May 2020 election under ████████████ ████████" and "the decision not to respond to Qualcomm's election" are unclear and inaccurate. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm objects to this Interrogatory to the extent it calls for a legal conclusion.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

### Arm Responded To Qualcomm's Purported Election Under Section █████ In May 2020

Arm responded to Qualcomm's purported election under Section █████ of the Qualcomm ALA in May 2020.

**A146**

In response to outreach from Brett Bettesworth from Qualcomm to Lynn Couillard at Arm in April and May 2020, Lynn Couillard sent several responses to Qualcomm in response to its request for an extension of the ALA under ██████████ including on May 15, 2020 when she responded stating that "[t]he intent of ████████ is to allow for an extension of the agreement as of this point in the term of the agreement.  If there is not desire from Qualcomm to negotiate terms of an extension at this point, but rather to have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire" and that "there is nothing that stops us from discussing next gen architecture or entering into an agreement anytime in the future regardless of the existing agreement":

---

**From:** Lynn Couillard <Lynn.Couillard@arm.com>
**Sent:** Friday, May 15, 2020 9:49 AM
**To:** Brett Bettesworth <betteswb@qti.qualcomm.com>; Rajiv Gupta <grajiv@qti.qualcomm.com>
**Cc:** Todd Lepinski <Todd.Lepinski@arm.com>
**Subject:** [EXT] Re: V10 -->V9 architecture follow-on

Hello Brett and Rajiv, (+Todd)

The intent of section ████ is to allow for an extension of the agreement as of this point in term of the agreement.  If there is no desire from Qualcomm to negotiate terms of an extension at this point, but rather to have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire.  However, importantly, there is nothing that stops us from discussing next gen architecture or entering into an agreement anytime in the future regardless of the existing agreement.

Note that at the time of the v8 architecture closure, we also included ████ which at the time had no definition, and eventually became v9.   We are in a similar situation here with regards to visibility on next generation architecture.

Please let us know if you'd like to discuss, we can set something up for next week.

Thanks
Lynn

---

ARM_00005340.  Mr. Bettesworth responded five days later.  He did not dispute any of Ms. Couillard's statements, including that "[t]he intent of ████████ is to allow for an *extension* of the agreement *as of this point in term of the agreement*," and that if Qualcomm desires to "have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire."  He elected to "go ahead and move forward with the extension":

**A147**

| | |
|---|---|
| From: | Brett Bettesworth [betteswb@qti.qualcomm.com] |
| Sent: | 20/05/2020 20:05:11 |
| To: | Lynn Couillard [Lynn.Couillard@arm.com]; grajiv@qti.qualcomm.com |
| CC: | Todd Lepinski [Todd.Lepinski@arm.com] |
| Subject: | RE: V10 -->V9 architecture follow-on |

**Importance:**    High

Hi Lynn,

Thanks for your email and the note below.  We will go ahead and move forward with the extension at this point, per the ALA optional election.

████████████████████████████████████████████████████████████

We can discuss further at some point in the near future, but wanted to ensure that we provided timely notification of our election here, as mentioned previously.

Sincerely,
Brett

*Id.*  Mr. Bettesworth's email also did not seek a response, and ended by stating that "[w]e can discuss further at some point in the near future …."  However, Mr. Bettesworth does not appear to have sent a follow-up email to arrange such discussions.  Qualcomm also failed to send any follow-up about v10 to Arm, including any formal correspondence in compliance with the ALA's notice provisions, for nearly five years.  Qualcomm further failed to send any notice of breach of the ALA to Arm for allegedly breaching ███████████████

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Lynn Couillard.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies

**A148**

the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: QCVARM_1120481, ARM_00079223.

Arm further incorporates by reference the testimony of the following witnesses: Lynn Couillard, Martin Weidmann, Gerard Williams, Spencer Collins, Michael Williams, William Abbey, Mark Dragicevich, Ziad Asghar, and Karthik Shivashankar, including the documents used at each of those depositions. Arm also incorporates by reference its responses to Interrogatory Nos. 3 and 10.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 5 (JUNE 16, 2025):**

Identify with specificity all ACK patches and OOBs developed or provided by Arm between July 2022 and February 2025 and their respective release schedule(s). Your response should identify (1) the names of each partner who received an ACK patch or OOB, (2) the dates that each ACK patch and OOB was requested and by whom, (3) the date that each ACK patch and OOB was provided and to which partner, (4) information regarding whether any ACK patches and OOB were withheld from any partners during this time period, (5) the names of all Arm individuals with relevant knowledge, and (6) identify any relevant documents by Bates number.

**RESPONSE TO INTERROGATORY NO. 5:**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding "all ACK patches and OOBs developed or provided by Arm between July 2022 and February 2025," "each partner," information about "each ACK patch and OOB," and "all Arm individuals," without limitation. Arm further objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case because it seeks detailed information regarding Arm's development and provision of partner-specific OOBs and ACK patches for partners other than Qualcomm. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by

**A149**

the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm incorporates its response to Qualcomm's Interrogatory Number 1.

### Arm Provides The Content Of ACK Patches To All Partners, Including Qualcomm As Part Of Its Quarterly ACK Release

ACK patches are not ███████████████████ under the Qualcomm ALA, including because they are not architecture technology identified in the v8 Annex 1 or the v9 Annex 1 to the Qualcomm ALA, nor are they ███████████ thereto. An ACK patch is a partner-specific solution to a partner-specific ACK test issue, and when that solution is relevant to all ALA licensees, Arm typically incorporates the solution into its next quarterly ACK release, which is made available to all ALA partners, including Qualcomm.

Arm provided Qualcomm with the full suite of ACK tests for both the Arm v8 and Arm v9 architectures—the ARMv8-A Architecture Valid Suite Kit (AVS) and the Armv9-A Architecture Compliance Kit. *See, e.g.,* ARMQC_02604619 (spreadsheet showing Qualcomm downloaded certain Arm materials, including the Arm v8 ACK / AVS (███████████) and the Arm v9 ACK / ACS (███████████)); ARMQC_02604613 (spreadsheet showing when Qualcomm downloaded certain Arm materials, including Part Nos. █████ (associated with the Arm v8 ACK / AVS) and █████ (Arm v9 ACK)); ARMQC_02604617 (spreadsheet showing Arm deliveries of █████ materials to Qualcomm between 2022 and 2024); ARMQC_02603587 (spreadsheet showing Arm making Product Nos. ███████████ available to Qualcomm between

05/11/2007 and 01/08/2025); *see also* ARMQC_02604612 (spreadsheet showing Arm made "New Arm Product Updates Available" to Qualcomm between 10/31/2022 and 01/29/2025); ARMQC_02604614 (spreadsheet showing Arm made "New Arm Products Available" to Qualcomm between 09/22/2022 and 03/27/2025); ARMQC_02604609 (document showing Arm materials made available to Qualcomm between 07/15/2010 and 06/24/2022); ARMQC_02604615 (spreadsheet showing Arm materials that Qualcomm downloaded, including "OOB" and "ACK patch[es]"). Arm therefore did not withhold any ACK tests from Qualcomm.

Arm provided all of its ALA partners, including Qualcomm, with quarterly ACK releases that incorporated ACK-patch solutions to ACK test issues relevant to all ALA partners. *See, e.g.*, ARMQC_02747093 (document showing Arm providing quarterly v8 ACK releases to Qualcomm between 2021 and 2025); ARMQC_02747097 (document showing Arm providing quarterly v9 ACK releases to Qualcomm between 2021 and 2025); ARMQC_02747103 (document showing Qualcomm downloading Armv8 materials, including quarterly "Update[s]_for_ACK," between 2022 and 2024); ARMQC_02747104 (document showing Qualcomm downloading Armv9 materials, including "Update[s]_for_ACK" and "V9A_ACK_Release_Update[s]" between 2022 and 2025); ARMQC_02604611 (document showing Arm delivering quarterly Armv8 ACK releases to Qualcomm between 04/04/2011 and 07/28/2022); ARMQC_02604616 (document showing Arm delivering quarterly Armv9 ACK releases to Qualcomm between 05/27/2019 and 07/28/2022).

### OOBs Are Partner and Design-Specific, And OOBs Provided To Third Parties Are Not Relevant To Qualcomm

OOBs are not "███████████" or "██████" under the Qualcomm ALA, including because they are not architecture technology identified in the v8 Annex 1 or the v9 Annex 1 to the Qualcomm ALA, nor are they █████████████ thereto. OOBs identify which of the previously delivered ACK tests a partner should run and are based on the configuration of the

**A151**

partner's design implementation.  Because OOBs are not just partner-specific, but implementation-specific, any OOB that Arm may have provided to a third-party ALA partner is not relevant to Qualcomm.  *See* Agrawal Dep. Tr. at 29:1–21 ("███████████████████████████.").  Further, as explained in Arm's response to Qualcomm Interrogatory No. 1, by July 2022, Arm had already given Qualcomm several OOB packages, including for use with Nuvia-based designs. *See* Arm Resp. to Qualcomm Interrog. No. 1.

Further, though Qualcomm is not entitled to any ACK patches or OOB for Nuvia-based designs, Arm made clear in its January 8, 2025 letter to Qualcomm that "Arm intends to provide support for the Nuvia CPUs, including support and verification services" pending certain litigation between the parties.  QCVARM_0573677.

Arm identifies the following individual as knowledgeable regarding aspects of this subject matter: Vivek Agrawal.

Pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived:  ARMQC_02603587,  ARMQC_02604609,  ARMQC_02604610,  ARMQC_02604611, ARMQC_02604612,    ARMQC_02604613,    ARMQC_02604614,    ARMQC_02604615, ARMQC_02604616,    ARMQC_02604617,    ARMQC_02604618,    ARMQC_02604619, ARMQC_02747093, ARMQC_02747097, ARMQC_02747103, and ARMQC_02747104.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm provided all of its ALA partners, including Qualcomm, with quarterly ACK releases

that incorporated ACK-patch solutions to ACK test issues relevant to all ALA partners. *See, e.g.*, ARMQC_02604611 (document showing Arm delivering quarterly Armv8 ACK releases to Qualcomm between 04/04/2011 and 07/28/2022); ARMQC_02604616 (document showing Arm delivering quarterly Armv9 ACK releases to Qualcomm between 05/27/2019 and 07/28/2022); ARMQC_02779171 (document showing Arm delivering Product Code ██████ from 08/20/2021 to 05/26/2025), ARMQC_02779174 (document showing Arm delivering Product Code ██████ from 08/20/2021 to 05/22/2025), ARMQC_02779176 (document showing Arm delivering Product Code ██████ from 08/20/2021 to 05/26/2025), ARMQC_02779179 (document showing Arm delivering Product Code ██████ from 09/08/2021 to 05/20/2025), ARMQC_02779181 (document showing Arm delivering Product Code ██████ from 09/08/2021 to 04/29/2025).

Arm also provided Qualcomm with Qualcomm-specific support materials. *See, e.g.*, ARMQC_02747093 (document showing Arm providing Qualcomm-specific support materials); ARMQC_02747097 (document showing Arm providing Qualcomm-specific support materials); ARMQC_02747103 (document showing Qualcomm downloading Qualcomm-specific support materials); ARMQC_02747104 (document showing Qualcomm downloading Qualcomm-specific support materials).

Arm further incorporates by reference Arm's objections and responses to Qualcomm Interrogatory Nos. 1 and 10.

Arm further incorporates by reference the testimony of all witnesses that have been deposed in this case to date, including those specifically referenced herein, as well as the testimony of all witnesses deposed in *Arm v. Qualcomm*, Case No. 1:22-cv-01146 (D. Del.), and the exhibits used during those depositions.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this

**A153**

Interrogatory may be derived: ARMQC_02779171, ARMQC_02779174, ARMQC_02779176,

ARMQC_02779179,        ARMQC_02779181;        ARMQC_02603587,        ARMQC_02604609,

ARMQC_02604610,        ARMQC_02604611,        ARMQC_02604612,        ARMQC_02604613,

ARMQC_02604614,        ARMQC_02604615,        ARMQC_02604616,        ARMQC_02604617,

ARMQC_02604618,        ARMQC_02604619,        ARMQC_026046020,       ARMQC_02604621,

ARMQC_02604622,        ARMQC_02604623,        ARMQC_02747093,        ARMQC_02747097,

ARMQC_02747103, ARMQC_02747104.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.


**INTERROGATORY NO. 6:**

Describe in detail and provide a list of licensing terms that Arm has offered since 2019 for CortexA720 codenamed "▮▮▮▮▮" Cortex-A520 codenamed ▮▮▮▮," Cortex M55 codenamed "▮▮▮▮" Cortex-X925 codenamed "▮▮▮▮▮▮ the CPU codenamed "▮▮▮▮," Cortex-A720AE codenamed "▮▮▮▮▮," Cortex-A730 codenamed "▮▮▮▮", and Cortex-A725 codenamed "▮▮▮▮". Your response should identify (1) the names of each partner and which licensing offer(s) the partner received, (2) the date of each offer to each specific partner, (3) the licensing fee offered for each of the identified products, by partner (4) the royalty rate offered for each of the identified products, by partner (5) the licensing term offered for each of the identified products, by partner (6) any support and maintenance terms offered for each of the identified products, by partner (7) any restrictions imposed on engineering development efforts for each of the identified products, by partner (8) the names of all Arm individuals with relevant knowledge, and (9) all relevant documents identified by Bates number.

**RESPONSE TO INTERROGATORY NO. 6 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks information regarding "each partner," "each offer," "each of the identified products," without limitation. Arm further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information regarding cores for which Qualcomm does not allege breach in

**A154**

its Second Amended Complaint, including "Cortex-X925," "███████" "the CPU codenamed

"████" "Cortex-A720AE codenamed "██████,'" "Cortex-A730 codenamed █████" and

"Cortex-A725 codenamed "██████"'" Arm further objects to this Interrogatory to the extent it

seeks information protected from discovery by the attorney-client privilege, the attorney work-

product doctrine, the common interest privilege, the joint defense privilege, or any other applicable

privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules

of Civil Procedure or the Local Rules.  Arm further objects to this Interrogatory as vague and

ambiguous, as the term "restrictions" is unclear.  Arm further objects to this Interrogatory as having

multiple discrete subparts and therefore multiple interrogatories.  Arm further objects to this request

to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality

obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as

follows: Arm is willing to meet and confer with Qualcomm regarding a reasonable scope for this

interrogatory.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its

response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Arm further objects

to this Interrogatory as vague and ambiguous, as the term "offered" is unclear.  Subject to and

without waiver of its general and specific objections, Arm further responds as follows:

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies

the following documents from which information responsive to the non-objectionable scope of this

Interrogatory may be derived: ARM_01424135, ARMQC_02779314, ARMQC_02772366,

ARMQC_02779433,       ARMQC_02779391,       ARMQC_02779269,       ARMQC_02779412,

**A155**

ARMQC_02779364,    ARMQC_02779483,    ARMQC_02783533,    ARMQC_02783601,

ARMQC_02783599,    ARMQC_02783597,    ARMQC_02783603,    ARMQC_02783595,

ARMQC_02783512,    ARMQC_02783575,    ARMQC_02774738,    ARMQC_02774748,

ARMQC_02774757,    ARMQC_02774767,    ARMQC_02774814,    ARMQC_02774818,

ARMQC_02774844, ARMQC_02774816.

Arm further incorporates by reference the testimony of the following witnesses: Karthik Shivashankar, Ehab Youssef, Akshay Bhatnagar, Jeff Fonseca, and Kurt Wolf, including the documents used at each of those depositions..

Arm further incorporates by reference any documents withheld on the basis of third-party confidentiality disputes, including due to an objection or motion for a Protective Order filed by any such third parties. Arm reserves the right to supplement this response to address such documents as appropriate should any such disputes be resolved and result in the production of any documents to Qualcomm.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.


**INTERROGATORY NO. 7:**

Describe, in detail, Arm's business strategy with respect to gaining a competitive advantage against other companies, including Qualcomm. Your response should include (1) any strategy related to unwinding or limiting ALAs, (2) any strategy related to increasing licensing prices for products offered under any license, (3) any strategy related to development of silicon, (4) any strategy related to acquiring other companies, (5) any strategy related to increasing pricing or limiting access to v10 or future versions of the Arm ISA, (6) the names of all Arm individuals with relevant knowledge, and (7) all relevant documents identified by Bates number.

**RESPONSE TO INTERROGATORY NO. 7 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding "any

strategy" and "all Arm individuals," without limitation. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this Interrogatory as vague and ambiguous, as the terms "Arm's business strategy with respect to gaining a competitive advantage," "unwinding or limiting ALAs," "development of silicon," and "increasing pricing or limiting access to v10 or future versions of the Arm ISA" are unclear. Arm objects to Qualcomm's characterization of its business strategy. Arm further objects to this Interrogatory as having multiple discrete subparts and therefore multiple interrogatories Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows: Arm is willing to meet and confer with Qualcomm regarding a reasonable scope for this interrogatory, if any.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence, including information regarding Arm's "strategy related to acquiring other companies." Specifically, this portion of the Interrogatory is not relevant to any of Qualcomm's claims in its Second Amended Complaint, including Qualcomm's California Unfair Competition Law ("UCL") claim. *See Bacon v. Carroll*,

2007 WL 2111057, at *7 (D. Del. July 17, 2007) (finding interrogatories related to defendant's grievances "are not relevant or likely to lead to admissible evidence" and plaintiff "cannot point to any use for the material that would support" the claims). Arm is willing to meet and confer with Qualcomm as to the relevance and appropriate scope of this portion of the Interrogatory, if any.

Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence, including information regarding "Arm's business strategy with respect to gaining a competitive advantage against other companies." Specifically, this portion of the Interrogatory is not relevant to any of Qualcomm's claims in its Second Amended Complaint, including Qualcomm's UCL claim. There is no support for the proposition that a business strategy to "gain[] a competitive advantage against other companies," without more, is unfair or unlawful conduct under the UCL. Such conduct is instead generally pro-competitive. *See FTC v. Qualcomm*, 969 F.3d 974, 1003, 1005 (9th Cir. 2020) (finding Qualcomm's "hypercompetitive" behavior to be "disruptive" but "in a manner that [is] beneficial to consumers in the long run"). Indeed, where business practices are "reasonable and consistent with current industry practice" and "reduc[e] 'transaction costs and complexities,'" courts routinely find such conduct does not violate the UCL. *E.g.*, Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 47–48 (Apr. 26, 2024) (citing *FTC v. Qualcomm*, 969 F.3d 974, 996 n.17, 996 (9th Cir. 2020)).

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm's business has always been customer centric. Its mission is to innovate and develop products to meet customer needs and market demand. Arm continues to pursue this mission by developing both its instruction set architecture ("ISA") and its implementation cores in close collaboration with its partners, including Qualcomm. This enables Arm's partners to compete

**A158**

across the semiconductor technology stack, which in turn brings more choice to the market. Accordingly, Arm's business strategy is aimed at investing in productive relationships with its partners to meet these pro-competitive goals.

Arm's open licensing model enables many companies to design chips, fostering a competitive ecosystem. Specifically, Arm has enabled its partners to build custom central processing units ("CPUs") by licensing its ISA to them through Architecture Licensing Agreements ("ALAs"). Doing so increases the number of CPUs available on the market, including CPUs that compete with Arm-designed CPUs, which Arm also makes available for license through Technology Licensing Agreements ("TLAs"). Given the extraordinary amount of time and resources required to successfully develop CPUs and the attendant high rate of failure, Arm carefully chooses its ALA partners to ensure the greatest likelihood of success. Even the top semiconductor companies with the greatest resources are often unable to successfully develop custom CPUs under their ALAs. For example, Qualcomm—one of the world's largest and most profitable semiconductor companies—sought to develop a custom core for the server market but ultimately abandoned the effort due to high costs. *See* Deposition of James Thompson, November 11, 2023, pp. 53–56. Indeed, Arm's royalty payment model aligns its interests with those of its partners—meaning Arm succeeds when its partners do—and incentivizes its partners to make their intellectual property available as broadly as possible. Arm's ALA licensing practices are thus pro-competitive and driven by rational business decisions.

In addition to major players like Qualcomm, Arm has also entered ALAs with promising start-up technology design companies to foster innovation and meet customer needs. For example, in 2019, Arm negotiated an ALA with NUVIA Inc. ("Nuvia"), a start-up that designed chips for data centers. Arm agreed to accept a lower-than-average upfront fee for the ALA to help sponsor Nuvia's entry into the market. In return for Arm's agreement to share Nuvia's risk on the front-

**A159**

end, Nuvia agreed to grant Arm higher royalties if it successfully developed a CPU. This deal typified Arm's customer centric, pro-competitive approach to its partners: investment and support.

Although Arm executes ALAs with partners who have the means and desire to invest in developing their own customized CPUs, history and experience has demonstrated that those partners are not always capable of optimizing Arm's architecture during CPU development and are unlikely to yield CPUs that are materially superior to Arm's product, despite enormous investments of resources and time. Many partners thus license Arm's market-leading, ready-to-use implementation cores through TLAs rather than embarking on the high-risk, low-reward proposition of CPU development. TLAs enable Arm's partners to outsource their costly CPU research and development needs to Arm, which reduces their development burdens and risks, speeds up their time-to-market, and frees up resources for investment in innovation and differentiating themselves in other areas. Because TLAs offer a far more efficient, practical, and effective arrangement in almost every circumstance, the vast majority of Arm's licenses are TLAs and historically most of Arm's partners have a TLA. *See* ARM_01259705 at 9794; Deposition of Simon Segars, November 16, 2023, pp. 29–30. TLAs, in turn, directly benefit the market and consumers by increasing product quality while decreasing prices.

Arm has further explored offering its own chips to meet innovation needs and customer demand. Arm's potential entrance into the chip market would thus generate more competition, innovation, and consumer choice. Regulators routinely approve, and markets encourage, this type of pro-competitive conduct.

Arm does not have a blanket "strategy" for pricing its IP licenses. Arm instead approaches each license individually and in the context of the specific needs of the partner, market segment, and end-users, resulting in various license structures. As noted, Arm's ALA with Nuvia catered to Nuvia's unique needs as a start-up and sought to increase Nuvia's chances of success by trading off

lower upfront fees for higher royalty rates.  Qualcomm's ALA, by contrast, has considerably lower-than-average royalty rates that reflect, among other factors, Qualcomm's market presence and prominence as one of Arm's largest partners by royalty revenue.  To the extent Arm has increased upfront prices or royalty rates for any of its IP, Arm has done so in the normal course of business to account for increased costs, including resources expended on developing updated and innovative products, and reflect the increased value of its updated offerings.  Indeed, Arm's conduct is "reasonable and consistent with current industry practice."  *See, e.g.*, Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 47–48 (Apr. 26, 2024) (citing *FTC v. Qualcomm*, 969 F.3d 974, 996 n.17, 996 (9th Cir. 2020)).

Arm refers Qualcomm to its Initial Disclosures for "the names of all Arm individuals with" knowledge relevant to this Interrogatory.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived:  ARM_01293447, ARMQC_02771129, ARMQC_02771151, QCVARM_0851876, QCVARM_1068459.

Arm further incorporates by reference the testimony of the following witnesses: Rene Haas, William Abbey, Paul Williamson, Richard Grisenthwaite, Karthik Shivashankar, Jannik Nelson, Peter Greenhalgh, Durga Malladi, and Martin Weidmann, including the documents used at each of those depositions.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 8:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not interfere, either intentionally or negligently, with Qualcomm's business

opportunities, including but not limited to Qualcomm's business opportunities with the Smartphone Company and the AI and Ecosystem Company identified in the operative Complaint. Your response should include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

### RESPONSE TO INTERROGATORY NO. 8 (JUNE 16, 2025):

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding alleged interference with "Qualcomm's business opportunities," without limitation.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.  Arm further objects to this Interrogatory as vague and ambiguous, as the terms "Qualcomm's business opportunities," and "Qualcomm's business opportunities with the Smartphone Company and the AI and Ecosystem Company" are unclear.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

### Arm's October 2024 Letter And Its Publication Did Not Interfere With Qualcomm's Business Opportunities Because Arm Repeatedly And Publicly Stated That Qualcomm Was In Breach Of The Qualcomm ALA As Early As 2022

Arm's October 2024 letter stating that Qualcomm was in breach of the Qualcomm ALA, and the publication of the same, did not interfere with any of Qualcomm's business relationships because Arm repeatedly and publicly stated that Qualcomm was in breach of the Qualcomm ALA as early as 2022.

On November 15, 2022 Arm filed a publicly-available Answer in *Arm Ltd. v. Qualcomm Inc. et al.*, No. 22-1146 (MN) ("Arm v. Qualcomm"), in which Arm publicly stated that "Qualcomm

**A162**

is materially breaching its ALA, giving Arm the right to terminate, and the Qualcomm ALA does not provide a license for or right to continue development of the Nuvia technology," that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology, entitling Arm to terminate that ALA based on Qualcomm's material breaches," that "Arm is entitled to terminate Qualcomm's ALA based on Qualcomm's material breaches of the verification, delivery, and support and maintenance provisions," and that:

> "Qualcomm's allegations that it is exercising its rights with respect to the relevant Nuvia technology under Qualcomm's license agreements with Arm and is not in violation of those agreements fail because Arm has no such obligations with respect to the Nuvia technology, and Qualcomm is breaching the Qualcomm ALA by insisting otherwise. Under the Qualcomm ALA, Arm has no obligation to provide, and Qualcomm has no right to seek, verification, delivery, or support and maintenance in connection with technology developed under the now-terminated Nuvia ALA. The 'verification' provisions of ▮▮▮▮▮ of the Qualcomm ALA are limited to products manufactured [redacted] in the ALA. The delivery (▮▮▮▮▮▮) and support and maintenance (▮▮▮▮▮▮ obligations of the Qualcomm ALA are similarly limited to the defined [redacted] and therefore likewise do not extend to the relevant Nuvia technology, which embodies and was derived from Arm technology delivered by Arm to Nuvia under Nuvia's now-terminated ALA. Qualcomm's unreasonable, bad-faith demands that Arm comply with purported obligations for verification, delivery, and support and maintenance with respect to technology delivered and developed outside the scope of the Qualcomm ALA are contrary to the parties' expectations and undermines the benefit to Arm from the Qualcomm ALA, thereby materially breaching that agreement's terms and implied covenant of good faith and fair dealing and entitling Arm to terminate the Qualcomm ALA under ▮▮▮▮▮▮▮."

No. 22-1146, D.I. 21 at 2, 37, 39, 41-42.

On April 11, 2024, Arm filed another publicly-available Answer that likewise included allegations that Qualcomm was in breach of its ALA, including that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology," and that "Qualcomm is materially breaching its ALA, giving Arm the right to terminate …." D.I. 322 at 2, 42-45, 48-49. These materials were available to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146.

**A163**

<u>**Qualcomm Recognized That Arm's October 22, 2024**</u>
<u>**Notice Of Material Breach "Is Actually Not New News"**</u>

In *Arm v. Qualcomm*, the Court held a pre-trial conference on November 20, 2024. During that conference, Qualcomm's counsel stated that Arm's claim that Qualcomm is in breach of the Qualcomm ALA has been in the case "starting at the very beginning," Nov. 11, 2024 Hearing Tr. at 13:10-16, and that "[t]he letter on October 22nd is actually not new news in the sense of alleging these breaches":

> "And in response to that, there have been repeated allegations that the Qualcomm ALA has been breached by Qualcomm. The letter on October 22nd is actually not new news in the sense of alleging these breaches. It has been in the case squarely and we anticipate that it is going to be raised by ARM in response to the arguments that we have regarding the fact that our products are licensed."

*Id.* at 14:18-24. Qualcomm's counsel stated earlier in that same hearing that "with respect to Qualcomm's alleged breach under the Qualcomm ALA, Arm itself has put that in the case starting at the very beginning" and that "[w]hen you go to their answer at DI 21, they say … [Qualcomm is] also materially breaching its ALA with Arm." *Id.* at 13:10-16. Qualcomm candidly admitted "as early as November 15, 2022, in DI 21, … they say Qualcomm is materially breaching its own ALA and giving ARM the right to terminate that agreement." *Id.* at 13:23-14:12. Qualcomm also acknowledged "there is at least five or six references" to this same assertion that Arm has the right to terminate the Qualcomm ALA "throughout [Arm's] pleading" in November 2022. *Id.*

<u>**Arm's Alleged Publication of Arm's October 2024 Letter Did Not**</u>
<u>**Interfere With Qualcomm's Business Opportunities Because Qualcomm Admits**</u>
<u>**It Had An Obligation To Publish—And Did Publish—Arm's October 2024 Letter**</u>

On October 22, 2024 Arm sent a notice of material breach ("October 22 Notice") to Qualcomm that echoed its public statements in its November 15, 2022 and April 11, 2024 Answers, including that:

> "The Qualcomm ALA permits Qualcomm to seek support and verification solely for CPU designs created by Qualcomm employees, at a time when they were Qualcomm employees. Qualcomm is only permitted to market an Architecture Compliant Core if Qualcomm has complied in all respects with the requirements of

**A164**

the Qualcomm ALA and completed the verification procedures provided therein. And Qualcomm is entitled to seek contractual remedies solely for CPU designs that fall within the scope of the ALA. These obligations are reflected in multiple places in the Qualcomm ALA, including but not limited to ███████████████ ███████████████

Qualcomm has systematically and willfully breached these obligations, and its breaches have accelerated and expanded in recent months. Specifically, Qualcomm has developed CPUs and marketed multiple products that contain CPUs that use designs, technology, and code created by Nuvia employees at the time when Nuvia was a third party (hereinafter 'Nuvia designs'). Recently, Qualcomm has sought support and verification for additional designs that reuse the Nuvia designs. Qualcomm and Nuvia have willfully refused to discontinue use of the Nuvia designs despite the independent obligations provided by Section 15.1 of the Nuvia ALA upon termination. And Qualcomm initiated and continues to prosecute contractual claims that arise from Qualcomm's improper conduct with respect to these unlicensed cores.

Due to Qualcomm's willful, ongoing, and renewed actions, Qualcomm is in material breach of the Qualcomm ALA."

10/22/2024 Arm Breach Notice to Qualcomm (ARMQC_02749015).   No terms or provisions of the Qualcomm ALA were quoted in Arm's notice of material breach.  *Id.*  Qualcomm responded on October 28, 2024.  10/28/2024 Qualcomm Ltr. to Arm.  Qualcomm made a summary of the contents of both notices available to the public on November 6, 2024.  Qualcomm 10-K Annual Report (November 6, 2024).

On January 8, 2025, Arm withdrew its October 22 Notice, stating that:

The Qualcomm ALA was the subject of an incomplete jury verdict on December 20 that found in Qualcomm's favor. That verdict is not final and is subject to a variety of legal challenges. Nonetheless, Arm respects and values the jury process and the Court's ongoing role in resolving the parties' disputes. As a result, and while Arm's ongoing legal challenges are pending, Arm will treat the Nuvia CPUs as falling within the scope of the Qualcomm ALA, and Arm therefore withdraws the pending October 22, 2024 notice of material breach. Arm has no current plan to terminate the Qualcomm ALA until the legal process resolves the parties' disputes over the Qualcomm ALA. Arm also conditionally accepts Qualcomm's one-time, five-year year extension under which the Qualcomm ALA will expire in 2033. Pursuant to separate correspondence, Arm intends to provide support for the Nuvia CPUs, including support and verification services, while the related legal challenges remain outstanding.

Arm's prior correspondence and relevant court filings in the Delaware litigation reflect Arm's legal position regarding the scope of the Qualcomm ALA and the required actions that Nuvia acting in concert with Qualcomm must take in light of

**A165**

the termination of the Nuvia ALA on March 1, 2022. Arm's future legal filing will reflect its legal position regarding the non-final verdict, a new trial and judgment in the legal case. Arm reserves all rights and none of Arm's conduct, support and verification reflects a waiver of Arm's present or future rights or claims.

1/8/2025 Arm Ltr. to Qualcomm (QCVARM_0847182). Qualcomm and Arm exchanged further correspondence on January 22 and 30. 1/22/2025 Qualcomm Ltr. to Arm (QCVARM_0847182); 1/30/2025 Arm Ltr. to Qualcomm (QCVARM_0847184).

On November 6, 2024 Qualcomm publicly described Arm's October 22 Notice in its Annual Report to investors:

> On October 22, 2024, Arm provided us with a notice alleging that we have breached the Qualcomm ALA by marketing products that contain CPUs that Arm alleges use designs, technology and code created by Nuvia employees prior to our acquisition of Nuvia; by seeking support and verification from Arm for additional products that use such alleged designs, technology and code; and by suing Arm for breach of the Qualcomm ALA. Arm's notice asserts that it will have the right to terminate the Qualcomm ALA if such alleged breaches are not cured within 60 days of such notice.
>
> Qualcomm 10-K Annual Report (November 6, 2024).

On December 16, 2024 Qualcomm filed a public version of its First Amended Complaint in this case in which it publicly described Arm's October 22, 2024 notice of material breach, stating that "Arm sent Qualcomm a notice of material breach purporting to have the right to terminate Qualcomm's own license," described the contents of the letter, and publicly filed a redacted copy of the notice of material breach. A redacted copy of Arm's October 22, 2024 notice of material breach was and remains accessible to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146. D.I. 39 at 2, 8-9, 32-35; D.I. 39-1.

On January 22, 2025, Qualcomm wrote to Arm and stated that the parties' correspondence on this issue was not confidential, and that Qualcomm was "required by law" to publicly disclose the correspondence in its filings with the U.S. Securities & Exchange Commission, and that "in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice":

"Even if that [January 8, 2025] letter [withdrawing the October 22, 2024 notice of material breach]—and it is not—Qualcomm is nevertheless required by law to disclose the fact that Arm has withdrawn that notice and indicated that it has no current plan to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. For instance, in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice and Arm's threats to terminate the Qualcomm ALA. Qualcomm intends to update those disclosures in light of Arm's withdrawal of that notice and statement that it does not currently intend to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. We presume you have no objection to this legally required update."

1/22/2025 Qualcomm Ltr. to Arm (QCVARM_0847182).

On February 5, 2025 Qualcomm publicly described Arm's January 8, 2025 letter in its Quarterly Report:

On January 8, 2025, Arm notified us that it was withdrawing its October 22, 2024 notice of breach and indicated that it has no current plan to terminate the Qualcomm ALA, while reserving its rights pending the outcome of the ongoing litigation.

Qualcomm 10-Q Quarterly Report (February 5, 2025). Cristiano Amon also publicly described Arm's communication in its public investor conference call on February 5, 2025.

### <u>Arm's Actions Did Not Interfere With Any Of Qualcomm's Business Opportunities With</u> ████████████

The business opportunities Qualcomm alleges it lost are not due to Arm's actions, and Arm's conduct did not amount to intentional or negligent interference with Qualcomm's business relationships with ██████████ or ██████████.

Regar ████, Qualcomm contends that "[a]fter the Breach Letter was published, [████] delayed finalizing a termsheet for an agreement under which Qualcomm would design that custom chip and requested inclusion of language related to Qualcomm's chip development capabilities. [████] has stated to Qualcomm that before it finalizes that termsheet, it must first understand the implications of termination of the QC ALA on Qualcomm's ability to deliver the custom chips in question." SAC ¶ 159. Qualcomm has failed to identify the termsheet in question let alone any documents relevant to its theory that its business relationship with ████ was harmed by Arm.

**A167**

Further, any delay in the finalization of that termsheet is due to factors other than Arm's actions, including Qualcomm's own business practices.

Regard ████████████, Qualcomm contends that "[████] had informed Qualcomm that it was designing a new mobile phone that would rely on Qualcomm's innovative Snapdragon® 8-Elite SoC.  After learning that Arm was threatening to terminate the QC ALA, however, a senior executive of [██████] informed a senior Qualcomm executive that the customer's legal and intellectual-property teams would need to confer with their counterparts at Qualcomm. ████████ has also insisted on Qualcomm's providing additional reassurances before it will extend its existing business relationship with Qualcomm."  SAC ¶ 158.  Qualcomm has failed to identify any lost opportunity with ██████, and any loss of an "exten[sion]" to its relationship with ██████ is due to factors other than Arm's actions, including Qualcomm's own business practices.

### Qualcomm's Claims Are Barred By *Noerr-Pennington* And California's Litigation Privilege

As a matter of law, Arm's alleged conduct is related to litigation and therefore not actionable.  *Noerr-Pennington* immunizes parties from liability "for engaging in conduct (including litigation) aimed at influencing decision making by the government."  *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 413 (3d Cir. 2016).  The *Noerr-Pennington* doctrine protects "conduct incidental to the prosecution of [a] suit," *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934-35 (9th Cir. 2006), including "demand letter[s] or cease-and-desist letter[s]." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015); *Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 655 F. App'x 103, 111 (3d Cir. 2016) ("cease-and-desist letter" "protected under *Noerr-Pennington*"); *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, C.A. No. 07-127-LPS, 2011 WL 678707, at *2 (D. Del. Feb. 18, 2011) (similar).

Courts also apply *Noerr-Pennington* immunity when plaintiffs bring tortious interference

**A168**

and other claims based on purported communications about litigation to customers.  *See, e.g.*, *Evanger's Dog & Cat Food Co. v. Env't Democracy Project*, No. CV 21-08489, 2022 WL 180205, at *1, *4 (C.D. Cal. Jan. 20, 2022) (dismissing claims arising out of letter to plaintiff's customer); *Fitbit, Inc. v. Laguna 2, LLC*, No. 17-cv-00079- EMC, 2018 WL 306724, at *10 (N.D. Cal. Jan. 5, 2018) (claims based on contacting customers regarding pre-suit demand letter barred by *Noerr-Pennington*).

California's litigation privilege also protects Arm's letter (and the alleged publicizing of that letter) from Qualcomm's tortious interference claims.  The "litigation privilege is … absolute in nature," *Silberg v. Anderson*, 50 Cal. 3d 205, 215 (1990), and protects not only statements made in litigation, but also "out-of-court statements 'to nonparties who have a substantial interest in the outcome of the pending litigation,'" *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1040-41 (S.D. Cal. Aug. 29, 2011); *see also Cargill v. Progressive Dairy Sols., Inc.*, No. CV-F-07-0349-LJO-SMS, 2008 WL 2235354, at *6 (E.D. Cal. May 29, 2008) ("news release" "inform[ing] the recipients of the … claims asserted" protected by the privilege); *Designing Health, Inc. v. Erasmus*, No. CV-98-4758 LGB (CWx), 2001 WL 36239748, at *3-4 (C.D. Cal. Apr. 24, 2001) (similar).  Arm's letter was made during litigation with Qualcomm regarding Arm's claims.  Such publications are protected under California law. *Cargill*, 2008 WL 2235354, at *6.

### Qualcomm Has Not Identified Any Independently Wrongful Conduct

To plead intentional interference with prospective economic advantage, Qualcomm must allege "intentionally wrongful act(s) designed to disrupt the relationship." *See Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017). This element requires "independently wrongful" conduct, defined as conduct "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*,

**A169**

19 Cal. 4th 1134, 1159 (2003). Even if a plaintiff alleges some sort of interference with economic advantage, courts dismiss intentional interference claims where the plaintiff still does not allege conduct "wrongful by some legal measure," *Golden v. Sound Inpatient Physicians Med. Grp., Inc.,* 93 F. Supp. 3d 1171, 1178 (E.D. Cal. 2015), or that the conduct "violated any other law, which is a necessary element of intentional interference with economic relations," *Republican Nat'l Comm. v. Google LLC,* 2024 WL 3595538, at *1 (E.D. Cal. July 31, 2024).

Qualcomm has already conceded that breach-of-contract does *not* satisfy the independently-wrongful-acts requirement. D.I. 64 at 13; *see Block v. eBay, Inc.,* 2012 WL 1601471, at *5 (N.D. Cal. May 7, 2012).  Allegations that Arm leaked the breach letter or made statements to customers, SAC ¶ 192, likewise do not show violations of "other law," particularly where Qualcomm fails to plead UCL claims and where that conduct is protected by *Noerr-Pennington*.  Qualcomm's negligent tortious interference claim fails for the same reason: Arm has "failed to allege facts showing that defendants engaged in an act that is wrongful apart from the interference itself." *See TriCoast Builders, Inc. v. Lakeview Loan Servicing, LLC*, 2021 WL 248316, at *5 (Cal. Ct. App. Jan. 26, 2021) (quotations omitted).

### Qualcomm Has Not Established That Arm Owed Any Duties To Qualcomm

With respect to Qualcomm's negligent interference claim, Arm did not owe Qualcomm a duty of care.  California law imposes a duty of care via contract only if the contract itself contains that duty. *See*, *e.g.*, *Golick v. State of California*, 82 Cal. App. 5th 1127, 1150 (2022) (no duty where plaintiffs did not show contract included "duty to protect"); *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 423 (2022) (no duty where contract did not contain "express promise"). Even "[t]he implied covenant of good faith and fair dealing is a contractual relationship and does not give rise to an independent duty of care." *Ragland v. U.S. Bank*, 209 Cal. App. 4th 182, 206 (2012).

**A170**

Qualcomm also cannot establish a duty of care where Qualcomm and Arm are allegedly competitors. Qualcomm repeatedly alleges that Qualcomm and Arm have "competing CPU designs," and that Arm is seeking to "compete … with Qualcomm." SAC ¶¶ 1, 5; *see also id.* ¶¶ 35, 52, 70–74, 160, 165. But "[t]here is no duty of care between competitors under California law." *Singman v. NBA Props., Inc,* 2014 WL 7892049, at *5 (C.D. Cal. Jan. 17, 2014); *Stolz v. Wong Commc'ns Ltd. P'ship,* 25 Cal. App. 4th 1811, 1825 (1994).

### Qualcomm's Claims Are Barred By Unclean Hands

Qualcomm's allegations regarding Arm's interference with Qualcomm's customer relationships is also barred by the equitable doctrine of unclean hands. "One who comes into equity must come with clean hands and keep those hands clean throughout the pendency of the litigation even to the time of ultimate disposition by an appellate court." *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 310 (D. Del. 2005) (quoting *Gaudiosi v. Mellon*, 269 F.2d 873, 881 (3d Cir. 1959)). "The clean hands maxim gives broad discretion to the court's equity power in refusing to aid an unclean hands litigant." *Id.* "Any willful act, which can rightfully be said to transgress equitable standards, is sufficient." *Id.* at 311.

"The equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Kars 4 Kids Inc. v. Am. Can!*, 98 F.4th 436, 449 (3d Cir. 2024) (quoting *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001)). "The misconduct must be rooted in 'fraud, unconscionable conduct, or bad faith ... that injures the other party and affects the balance of equities.'" *Id.* at 450 (quoting *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 n.12 (3d Cir. 1999)).

Courts have found unclean hands where the plaintiff engaged in the same (inequitable) conduct it accuses a defendant of. *See, e.g., Emco, Inc. v. Obst*, No. CV03-6432-R (RZX), 2004

**A171**

WL 1737355, at *4–6 (C.D. Cal. May 7, 2004) (in a Lanham Act case where plaintiff accused defendant of falsely advertising that its blades were manufactured in the United States, the court found that defendant had proven its affirmative defense of unclean hands as a matter of law because plaintiff's "Americut" blades—which plaintiff promoted with classic American symbols such as the American flag and Statue of Liberty—were similarly manufactured overseas); *Haagen-Dazs, Inc. v. Frusen Gladje Ltd.*, 493 F. Supp. 73, 75–76 (S.D.N.Y. 1980) (denying plaintiff's motion for a preliminary injunction due to plaintiff's unclean hands in accusing defendant of falsely using Swedish motifs to suggest that its products were not of domestic origin, when plaintiff had done similarly).  Qualcomm published Arm's October 2024 letter just days after Arm did.  Further, on March 25, 2025, Bloomberg published a story concerning Qualcomm's non-public complaints of anticompetitive behavior at the European Commission, US Federal Trade Commission, and Korea Fair Trade Commission.  Josh Sisco & Ian King, *Qualcomm Takes Legal Fight with Arm to Global Antitrust Agencies*, Bloomberg News (Mar. 25, 2025, 3:55 PM CDT), https://www.bloomberg.com/news/articles/2025-03-25/qualcomm-takes-legal-fight-with-arm-to-global-antitrust-agencies.  Qualcomm's publication of Arm's letter, and non-public litigation materials to Bloomberg bar its claims against Arm under the doctrine of unclean hands.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8 (June 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further responds that Qualcomm's witness Mr. Cristiano Amon, Qualcomm's President and Chief Executive Officer and corporate designee on harm resulting from Arm's alleged tortious interference (*see, e.g.*, Arm's Fed. R. Civ. P. 30(b)(6) Topic No. 56), testified that

Qualcomm's allegations of harm resulting from the October 22 Notice and Bloomberg article are based on Arm's allegations in the lawsuit. For example, Mr. Amon testified as follows:



Amon Dep. Tr. (Rough) at 161:15-162:19; *see also id.* at 146:13-147:7. Mr. Amon's testimony confirms that Qualcomm's allegations of harm resulting from the October 22 Notice and Bloomberg article relate squarely to the litigation and Arm's litigation-related conduct. Accordingly, Qualcomm's claims for tortious interference are barred by *Noerr-Pennington* and California's Litigation Privilege.

Regarding ███ Arm further responds that Qualcomm still has failed to identify any harm to its business relationship with ███, let alone any harm that was caused by Arm. In particular, the material business terms agreed between Qualcomm and ███ were unaffected by the October 22 Notice. For example, Qualcomm's witness Mr. Pavankumar Mulabagal, Qualcomm's corporate designee on Arm's Fed. R. Civ. P. 30(b)(6) Topic Nos. 51 ("All communications between Qualcomm and ███, including the timing of such communications, surrounding Qualcomm's

**A173**

contention that Arm intentionally and/or negligently interfered with Qualcomm's relationship with

█████ ") and 58 ("The factual basis for Your contention that Arm had knowledge of Your existing

or prospective business relationship with █████ , including when and how Arm first became aware

of the relationship"), testified ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ . *See,*

*e.g.*, Mulabagal Dep. Tr. at 35:18-36:15.

      Nor did the October 22 Notice and Bloomberg article materially delay Qualcomm's

business dealings with ████ . ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ . *See, e.g., id.* at 49:6-63:4; QCVARM_0864924;

QCVARM_0864933; QCVARM_0864833. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ . Mulabagal Dep. Tr. at 47:17-48:15. And,

Mr. Mulabagal testified that ████████████████████████████████

████████████████████████████████████████████████████

████████████████████ *Id.* at 88:22-89:15. ████████████████████

████████████████████ . *See, e.g., id.* at 57:5-58:3. The October 22 Notice and Bloomberg article

therefore did not alter Qualcomm's and █████ development timeline.

      Arm's dealings with █████ also did not impact Qualcomm's dealings. ████████████

████████████████████████████████████████████████████

**A174**

████████████████████████████████  *See id.* at 94:7-98:22.  Qualcomm

therefore cannot point to any actionable harm to its business relationship with ████, let alone harm

that was caused by Arm.

  Regarding ████, Arm further responds that Qualcomm still has failed to identify any

harm to its business relationship with ████ that was caused by Arm.  Qualcomm's business

relationship with ████ had instead become increasingly strained in the years preceding the

October 22 Notice because of Qualcomm's decision to ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████.  *See, e.g.*, Amon Dep. Tr.

(Rough) at 264:2-275:25.  Predating the October 22 Notice, Mr. Amon ████████████

████████████████████████████████████  *See, e.g.*, *id.* at

266:2-8.  Any harm to Qualcomm's business relationship with ████ was Qualcomm's own

doing and unrelated to any actions by Arm.

  Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies

the following documents from which information responsive to the non-objectionable scope of this

Interrogatory may be derived: QCVARM_0865022, QCVARM_0864924, QCVARM_0864933,

QCVARM_0864833,  QCVARM_0865420,  QCVARM_0865236,  QCVARM_0865430,

QCARM_3425702,  QCARM_3534037,  QCVARM_0856270,  QCVARM_0856888,

QCVARM_1069082,  QCVARM_1069106,  QCARM_3533982,  QCARM_7484460,

QCARM_7484463,  QCVARM_0467694,  QCVARM_1069945,  QCVARM_1070005,

QCVARM_1118617,  QCARM_7515834,  QCVARM_0464076,  QCVARM_0464128,

QCVARM_0464495,    QCVARM_0465604,    QCVARM_0600730,    QCVARM_0601923,

QCVARM_0608314,    QCVARM_1068645,    QCVARM_1118760,    QCVARM_1119347,

QCVARM_0848786.

Arm further incorporates by reference the testimony of the following witnesses: Pavankumar Mulabagal, Cristiano Amon, and Spencer Collins, including the documents used at each of those depositions..

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 9:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that Your conduct as identified in Paragraphs 204-212 of the Second Amended Complaint does not constitute a violation of unfair competition law under the California Unfair Competition Law. Your response should include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 9 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, and unduly burdensome.  Arm objects to this Interrogatory to the extent it calls for a legal conclusion.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Qualcomm asserts that Arm violated the California Unfair Competition Law ("UCL") by allegedly (1) withholding deliverables under the Qualcomm ALA and TLA; (2) misrepresenting to

**A176**

Qualcomm that it was not withholding deliverables; (3) "wrongfully" asserting that it has the right to terminate the QC ALA; (4) refusing to negotiate licensing terms with Qualcomm in good faith; (5) threatening or attempting to cut off Qualcomm's access to Arm's ISA; (6) leaking its October 22, 2024 letter to the media; (7) interfering or attempting to interfere with Qualcomm's customer relationships; and (8) making misleading statements to Qualcomm's customers to pressure them not to acquire products from Qualcomm.  SAC ¶¶ 206–07.  None of this conduct constitutes "a violation of unfair competition law" under the UCL.

To bring a claim under the UCL, Qualcomm must show that Arm engages in an "unfair, unlawful, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Qualcomm has indicated its allegations implicate the "unfair" and "unlawful" prongs.  Arm's conduct is not unfair or unlawful.

There are two tests courts use to determine whether conduct is "unfair" under the UCL. First, when a business competitor brings a UCL claim, California courts apply a "tethering test" that examines whether the conduct "[1] threatens an incipient violation of an antitrust law, or [2] violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [3] otherwise significantly threatens or harms competition."  *Cel-Tech Comm'cns, Inc. v. L.A. Cell. Tel. Co.,* 20 Cal.4th 163, 187 (1999).  The claim must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Zhejiang Yuanzheng Auto*, 2023 WL 4317189, at *12 (citing *Cel-Tech Comm'cns, Inc. v. L.A. Cell. Tel. Co.,* 20 Cal.4th 163, 186–87 (1999)).  A party's conduct "violates the policy or spirit of the antitrust laws" where "the effect of the conduct is comparable to or the same as a violation of the antitrust laws, [] or it otherwise significantly threatens or harms competition."  *People's Choice Wireless*, 131 Cal. App. 4th at 662 (citing *Cel-Tech*, 20 Cal. 4th at 187).  Second, in consumer actions, California courts apply a "balancing test" which "weigh[s] the utility of the defendant's

conduct against the gravity of the harm to the alleged victim." *Id.* (simplified). Finally, the "unlawful" prong requires Qualcomm to prove that Arm violated a federal, state, or local law. *See Olson v. World Fin. Grp. Ins. Agency, LLC*, 2024 WL 4668515, at *8 (N.D. Cal. Nov. 4, 2024). Arm's alleged conduct does not violate the UCL under either the "unfair" prong—including under both the tethering and balancing tests—or "unlawful" prong.

### Arm's Alleged Conduct Does Not Violate the UCL Under The Tethering Test

As a threshold matter, Qualcomm's allegations about Arm's allegedly unfair conduct suffer from two fatal flaws. For one, Qualcomm "does not identify an antitrust law or a policy or spirit of such a law." *Roberson v. Pocker*, 2024 WL 2984026, at *10 (C.D. Cal. Apr. 3, 2024) (granting dismissal); *see also Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002) (affirming dismissal where "complaint allege[d] that Albertson's acted with a motive to secure an advantage over competitors" but did "not state a theory of unfair practice based on violation of specific anti-trust statutes or policies of anti-trust legislation"). Qualcomm cannot make the "unusual" showing that Arm somehow "violate[d] the 'policy and spirit' of the antitrust laws without violating the actual laws themselves." *Synopsys, Inc. v. ATopTech, Inc.*, 2015 WL 4719048, at *10 (N.D. Cal. Aug. 7, 2015). For another, Qualcomm fails to identify any relevant market in which Arm's conduct allegedly threatens competition and has affirmatively represented that it "does not intend to offer a market definition to support its" UCL claim. 4/9/25 Ltr. From C. Nyardy at 4. But "without a definition of [the] market there is no way to measure [Arm's] ability to lessen or destroy competition." *Ohio v. Am. Express*, 585 U.S. 529, 543 (2018); *Racek v. Rady Children's Hosp. of San Diego*, 2012 WL 2947881, *6 (Cal. App. July 20, 2012); *Sun Microsystems, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 992 (N.D. Cal. 2000); *Vox Network Sols., Inc. v. Gage Tech., Inc.*, 2025 WL 929939, *5 (N.D. Cal. Mar. 27, 2025) (dismissing claim under UCL's "unfair" prong, where plaintiff failed to identify relevant market); *Reilly v. Apple Inc.*, 578 F.Supp.3d 1098, 1106-1111

**A178**

(N.D. Cal. 2022) (same where plaintiff alleged only implausible market).  Qualcomm's allegations thus beg the question: "Competition" with what products, or with whom?

Although the legal inquiry should end there, Arm's conduct nevertheless does not satisfy any of the respective tests under the UCL or constitute a violation of that law.  Qualcomm's continued refusal to identify the antitrust laws implicated by Arm's conduct or the relevant market(s) in which Arm's conduct allegedly threatens competition makes it impossible for Arm to provide the "complete factual and legal bases" supporting Arm's contention that its "conduct as identified in Paragraphs 204-212 of the Second Amended Complaint does not constitute a violation of unfair competition law under the California Unfair Competition Law."  Arm's analysis is thus limited to Qualcomm's present allegations and representations, and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory to the extent Qualcomm clarifies its claim.

Qualcomm alleges that Arm acted unfairly by "withholding deliverables" it must provide "under the Qualcomm ALA and TLA," "misrepresenting to Qualcomm that it was not withholding deliverables," "asserting that it has the right to terminate the QC ALA without any basis in the QC ALA for those assertions," and "refusing to negotiate license terms with Qualcomm in good faith." SAC ¶ 206.  These allegations assert that Arm breached its contracts with Qualcomm, but corporate plaintiffs may not bootstrap contract claims into UCL violations. *See, e.g.*, *Martin Saturn of Ontario, Inc. v. Suburu of Am. Inc.*, 2023 WL 9417499, *8 (C.D. Cal. July 21, 2023); *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012); *Scripps Clinic v. Superior Court*, 108 Cal.App.4th 917, 940 (2003) (concluding harm was contractual, but not a UCL violation); *Mazal Grp. LLC v. Espana*, 2017 WL 6001721, at *4 (C.D. Cal. Dec. 5, 2017) (dismissing UCL claim when plaintiff did not include any specific allegations regarding the unfair prong and simply incorporated breach of contract allegations)).  As Qualcomm itself has argued, it

**A179**

"makes little sense to hold that contract disputes between 'the world's most sophisticated companies,' [*Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 997 (9th Cir. 2020)], could give rise to an independent UCL claim."  Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 48 (Apr. 26, 2024) (citing *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008)).  Qualcomm's assertion that Arm refused to negotiate license terms with Qualcomm in good faith is barred by the statute of limitations.

To the extent Qualcomm alleges that any of Arm's conduct was aimed at "threatening or attempting to cut off Qualcomm's access to the ubiquitous Arm ISA," SAC ¶ 207, such conduct still does not constitute a violation of the UCL.  As Qualcomm itself has argued, "an antitrust duty to deal with" or license others is "far outside the mainstream of antitrust law." Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 30 (Apr. 26, 2024); *see also Verizon Comm'cns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407-411 (2004) ("As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)); *FTC v. Qualcomm*, 969 F.3d 974 (9th Cir. 2020) ("As the Supreme Court has repeatedly emphasized, there is no duty to deal under the terms and conditions preferred by [a competitor's] rivals."); *Simon and Simon, PC v. Align Tech., Inc.*, 2020 WL 1975139, *3-6 (D. Del. Apr. 24, 2020).  It is completely beyond the reach of antitrust law here given Qualcomm has disclaimed any argument that Arm is attempting to exercise monopoly power.  4/28/25 Ltr. From C. Nyardy at 1 ("As the … SAC make[s] clear, Qualcomm is not asserting a claim for monopolization under Section 2 of the Sherman Act; it is asserting a claim under the UCL's 'unfair' prong."); SAC ¶ 207 (striking monopoly allegation).  "[I]n the absence of any purpose to create or maintain a monopoly," antitrust law "does not restrict the long-recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent

**A180**

discretion as to parties with whom he will deal." *United States v. Colgate & Co.*, 250 U.S. 300, 308 (1919); *Trinko*, 540 U.S. at 408. For that reason, California courts have consistently held a purported refusal to deal "is neither unlawful nor unfair" as a matter of law for purposes of the UCL. *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 367 (2001); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 254; *Beverage v. Apple Inc.*, 101 Cal. App. 5th 749-50, 753-56 (2024); *People's Choice Wireless, Inc. v. Verizon Wireless,* 131 Cal. App. 4th 656, 668 (2005) (explaining that though it is true an antitrust violation is not necessary under the UCL, "[t]he allegations here are simply too far removed from cognizable antitrust evils to warrant intervention by a California court").

Also, to the extent Qualcomm's allegation that Arm "refus[ed] to negotiate license terms with Qualcomm in good faith," SAC ¶ 206, refers to the claim that Arm violated the implied covenant of good faith and fair dealing by allegedly refusing to negotiate a license to v10 of the Arm ISA, both the breach of contract and "refusal to deal" principles explained above preclude UCL liability premised on such conduct.

Next, Arm did not violate the UCL by allegedly "interfering or attempting to interfere with Qualcomm's relationships with Qualcomm's current and prospective customers," "leaking the Breach letter to the media," and "making misleading statements to Qualcomm's customers to pressure them not to acquire products from Qualcomm." SAC ¶¶ 206–07. The policy and spirit behind the antitrust laws protect against harm "to *competition itself*, not merely to competitors." *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 996 (9th Cir. 2020). In its recent filings, Qualcomm indicated its view for the first time that Arm acted unfairly in order to "gain market share as a chip designer." Qualcomm nowhere alleges or explains how this or any other alleged conduct broadly undermines a competitive market or consumers, or harms any alleged competitor other than Qualcomm. And in any event, Arm has virtually no market share today in a so-called "chip design

market."

Further, because Arm's statements in Arm's October 22, 2024 letter are true, they cannot serve as a basis for "unfair" or anticompetitive conduct.  *See Digene Corp. v. Third Wave Techs.*, *Inc.*, 536 F. Supp. 2d 996, 1006 (W.D. Wis. 2008), aff'd, 323 F. App'x 902 (Fed. Cir. 2009); *Gen. Commc'ns Eng'g, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 421 F. Supp. 274, 290 (N.D. Cal. 1976) (holding that "salesman puff" does not violate antitrust laws).  The antitrust laws are generally unconcerned with the content of competitive speech, even critical or derogatory speech. *See Schachar v. Am. Acad. Of Ophthalmology*, 870 F.2d 397, 399 (7th Cir. 1989) ("Antitrust law does not compel your competitor to praise your product or sponsor your work. To require cooperation or friendliness among rivals is to undercut the intellectual foundations of antitrust law."); *cf. Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 937 F. Supp. 435 ("Antitrust laws do not exist to stifle speech … Thus, any stigma that MSL has suffered because of ABA's not listing MSL as an accredited school does not provide the necessary offensive *conduct* for antitrust liability.").

### Arm's Alleged Conduct Does Not Violate the UCL Under The Balancing Test

The balancing test asks "whether the challenged business practice is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 1197, 1226 (N.D. Cal. 2014).  Qualcomm does not properly qualify as a consumer such that the consumer balancing test should apply.  Even if Qualcomm could constitute a consumer under the test, for the same reasons outlined above, Arm's business practices are pro-competitive, foster innovation, and benefit consumers, meaning they are not immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of Arm's conduct far outweighs any potential harm to Qualcomm.  *See Drum v. San Fernando Valley*

*Bar Association.*, 182 Cal. App. 4th 247, 257 (2010).

Arm's business model is inherently pro-competitive and beneficial to consumers. Arm's decision to license its ISA designs enables business partners to innovate, meet consumer demands across a diverse range of applications, and provide differentiated products. That, in turn, increases consumer choice and competition—including against Arm's own CPUs—resulting in lower consumer prices. And, Arm's licenses for its market-leading, ready-to-use CPUs offer partners an opportunity to bypass the enormous costs associated with CPU development and instead reallocate those resources towards innovating their products in other ways. Arm's partners can thereby speed up their time-to-market and fill more areas of consumer need, all while passing along their savings to consumers. Arm's practices are "reasonable and consistent with current industry practice," and "reduc[e] 'transaction costs and complexities'" for consumers. Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 47–48 (Apr. 26, 2024) (citing *FTC v. Qualcomm*, 969 F.3d 974, 996 n.17, 996 (9th Cir. 2020)). Any alleged business-related harms Qualcomm may have suffered do not outweigh the pro-competitive benefits and practical utility of Arm's business practices.

### **Arm's Alleged Conduct Does Not Violate the UCL Under The Unlawful Prong**

To succeed under the "unlawful" prong of the UCL, Qualcomm must allege "a violation of another law [as a] predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007); *Gopher Media LLC v. Melone*, 2023 WL 8790266, at *15 (Dec. 19, 2023 S.D. Cal) ("To prevail on a claim under the unlawful prong of the [UCL], the plaintiff must show that a challenged [conduct] violates any federal or California statute or regulation." (citation omitted)). Qualcomm alleges that "Arm's conduct is … unlawful because it violates California common law, including state law prohibiting intentional and negligent interference with prospective economic advantage." SAC ¶ 209. But a

**A183**

common law claim cannot form the predicate for a UCL claim.  *See Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1044 (9th Cir. 2010), ("[A] common law violation such as breach of contract is insufficient … Because [plaintiff] does not go beyond alleging a violation of common law, he fails to state a claim under the unlawful prong of § 17200."); *Mazal Group, LLC v. Espana*, 2017 WL 6001721, at *4 (C.D. Cal. Dec. 4, 2017) (granting MTD on UCL claim when plaintiff did not go beyond alleging a violation of common law).  And, in any event, Qualcomm's argument is circular.  Qualcomm contends Arm's conduct is unlawful because it tortiously interfered with Qualcomm's economic advantage, SAC ¶ 209, and simultaneously contends Arm's conduct is wrongful for purposes of that tort because the conduct violates the UCL.  Such circular reasoning cannot satisfy the elements of either claim.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Qualcomm claims that Arm acted "unfair[ly]" by sending Qualcomm a letter on October 22, 2024 to notify Qualcomm that it was in material breach of the Qualcomm ALA.  SAC ¶ 206.  But, two years prior, Qualcomm itself sent threatening letters to Arm with baseless claims that Arm breached the ALA.  On November 3, 2022 and December 5, 2022, Qualcomm sent notice letters to Arm alleging that, "[b]y refusing to provide the OOB, ARM has failed to comply with its obligations under ██████████████████████████ . . . of the ALA," and that "ARM has ██ days to cure any breach of ████████ Arm_01241585; ARM_00025401.  Arm responded on December 6, 2022, stating that "Arm strongly disagrees with Qualcomm's claim that ████ ████ is at issue or that provision of the OOB implicates ████████" and that "Qualcomm's letter is a

**A184**

transparent and malicious effort to transform a debate about Arm's support obligations under ███████ into a weapon of economic duress through its improper invocation of ███████ " Arm_01241565. Arm's legitimate defense of its rights under the ALA two years after Qualcomm itself began weaponizing the ALA to coerce Arm cannot serve as a basis for a UCL claim.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARMQC_00001136, ARM_01259705, ARMQC_00001136, QCVARM_1068459, QCVARM_0462995, QCVARM_0528826.

Arm further incorporates by reference the testimony of the following witnesses: Lynn Couillard, Martin Weidmann, Gerard Williams, Spencer Collins, Michael Williams, William Abbey, Mark Dragicevich, Karthik Shivashankar, Cristiano Amon, Jean-Francois Vidon, Paul Williamson, Richard Meacham, Ziad Asghar, Peter Greenhalgh, Jannik Nelson, Durga Malladi, and Manju Varma, including the documents used at each of those depositions. Arm also incorporates by reference its responses to Interrogatory Nos. 1–8, and 10–12, including the testimony and documents cited and incorporated therein (and any supplements thereto). Additionally, Arm incorporates by reference its Motion to Dismiss, D.I. 19, 28, Arm's Motion to Dismiss Qualcomm's First Amended Complaint, D.I. 48, 72, and Arm's Motion to Dismiss Qualcomm's Second Amended Complaint, D.I. 232, 233, 305.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 10:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not breach the Qualcomm ALA. Your response should include, but is not limited to, the complete factual and legal bases for any contention that you did not withhold ARM Technology or Updates or breach the implied covenant of good faith and fair dealing, and should

include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 10 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks "the complete factual and legal bases," without limitation.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.  Arm further objects to this Interrogatory to the extent it calls for a legal conclusion.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

**Qualcomm's Allegations**

Qualcomm alleges in its Second Amended Complaint that Arm breached ███████ of the Qualcomm ALA by allegedly withholding OOB and ACK patches. Second Amended Complaint ¶¶ 78-94.  Qualcomm alleges in its Second Amended Complaint that Arm breached an implied covenant of good faith and fair dealing under the ALA by "with[olding] deliverables that it was required to provide Qualcomm under the QC ALA" and "fail[ing] to negotiate an extension to the QC ALA that would cover future version of the architecture, including v10."  Second Amended Complaint ¶ 184.

**Arm Did Not Breach The Qualcomm ALA Based
On The Alleged Withholding Of ACK And OOB**

For Qualcomm's allegations that Arm breached the Qualcomm ALA based on its alleged

**A186**

withholding of ACK and OOB, including based on an implied covenant of good faith and fair dealing, Arm incorporates by reference its response to Interrogatory No. 1.

Further, Qualcomm's implied covenant allegation is duplicative of Qualcomm's ███ breach claim and fails for the same reasons. *See, e.g.*, *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 439 (3d Cir. 1993) (holding that Plaintiff "cannot assert a claim for breach of implied covenants that is based on exactly the same acts which are said to be in breach of express covenants."); *Cision US, Inc. v. CapTech Ventures, Inc.*, No. CV 24-00063-MN-SRF, 2025 WL 1094318, at *5 (D. Del. Apr. 11, 2025) (dismissing Plaintiff's "claim for breach of the implied covenant of good faith and fair dealing … as impermissibly duplicative of its breach of contract and warranty claims.").

### Arm Did Not Breach Any Implied Covenant Of Good Faith And Fair Dealing For The Qualcomm ALA By Allegedly Failing To Negotiate A License To v10

Qualcomm alleges in its Second Amended Complaint that Arm breached an implied covenant of good faith and fair dealing under the ALA by "fail[ing] to negotiate an extension to the QC ALA that would cover future version of the architecture, including v10." Second Amended Complaint ¶ 184.

That is not true. On June 4, 2025, Will Abbey, Arm's Chief Commercial Officer, wrote to Qualcomm regarding its request for a v10 license, stating that Arm is prepared to negotiate in good faith for a v10 license and proposed a business meeting:

> Arm is prepared to negotiate in good faith over the terms of a license to the v10 architecture. As the first step in those negotiations, we propose a meeting between our commercial teams to better understand how Qualcomm intends to use the v10 architecture. That will help Arm put together an appropriately tailored licensing proposal. Please let us know a few dates Qualcomm is available for that meeting, and we will let you know our availability.

June 4, 2025 Will Abbey Letter to Roawen Chen. On June 9, Qualcomm responded, but did not address Mr. Abbey's request for a business meeting. Further, on June 13, 2025, Arm's Executive

**A187**

Vice President and Chief Legal Officer Spencer Collins sent Qualcomm another letter again stating

that Arm is prepared to negotiate in good faith:

> On this basis, on June 4, 2025, Will Abbey, Arm's Chief Commercial Officer, proposed in good faith a business meeting regarding Qualcomm's request for a license to Arm's v.10 architecture.  Mr. Abbey's offer to meet remains open and Arm continues to believe that such a meeting would be the most efficient path forward in response to Qualcomm's request.  Please have the relevant business personnel respond to Mr. Abbey with dates that Qualcomm is available for such a meeting.

> \* \* \*

> Despite these clear limits on Qualcomm's election rights under the ALA, as we told Qualcomm in 2020, nothing prevents Arm and Qualcomm from discussing a potential license to future versions of the Arm architecture as they become available.  Arm remains prepared to negotiate in good faith over the terms of a license to the v.10 architecture.

June 13, 2025 Spencer Collins Letter to Ann Chaplin.

### Arm Is Not Required To Negotiate The Terms And Conditions Of A V10 License Under The Qualcomm ALA Because Qualcomm Did Not Have The Right To Elect V10 In 2020

Qualcomm, in any event, does not allege that Arm breached ████████ of the

Qualcomm ALA. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████  Qualcomm does not accuse Arm of

breaching of this Section.  Any implied covenant claim based on ████████ thus improperly

"seeks to impose" obligations "beyond those to which the parties actually agreed."  *Lamke v.*

*Sunstate Equipment Co., LLC*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004).

As an initial matter Arm had no obligation to negotiate an extension under ████████

based on Qualcomm's May 2020 email because v10 was not in development at that time, and there

**A188**

were no ██████████████████████████████████████████ to elect in

2020.   In May 2020, Arm's v10 was not in development, and the parties never reached any ████████

████████ regarding any future versions of ████████████ that would be covered by a purported

election.   In April 2020, Qualcomm reached out to Arm asking if anyone is working on v10

Architecture in the context of seeking an extension to the ALA ██████████████.

ARM_00005340.  Arm responded that "no one is working on v10."  *Id.*  Qualcomm responded,

stating that "no meaningful discussions can currently be initiated around the terms and conditions

for an extension of the ALA Term to cover v10 architecture" and sought to amend the ALA.  *Id.*

On May 15, 2020 Lynn Couillard from Arm wrote to Qualcomm, stating that "[t]he intent

of ████████████ is to allow for an extension of the agreement as of this point in the term of the

agreement.  If there is not desire from Qualcomm to negotiate terms of an extension at this point,

but rather to have a discussion around licensing the next architecture sometime in the future, then

this portion of the agreement will expire" and that "there is nothing that stops us from discussing

next gen architecture or entering into an agreement anytime in the future regardless of the existing

agreement":



**From:** Lynn Couillard <Lynn.Couillard@arm.com>
**Sent:** Friday, May 15, 2020 9:49 AM
**To:** Brett Bettesworth <betteswb@qti.qualcomm.com>; Rajiv Gupta <grajiv@qti.qualcomm.com>
**Cc:** Todd Lepinski <Todd.Lepinski@arm.com>
**Subject:** [EXT] Re: V10 -->V9 architecture follow-on

Hello Brett and Rajiv, (+Todd)

The intent of section ████ s to allow for an extension of the agreement as of this point in term of the agreement.  If there is no desire from Qualcomm to negotiate terms of an extension at this point, but rather to have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire.  However, importantly, there is nothing that stops us from discussing next gen architecture or entering into an agreement anytime in the future regardless of the existing agreement.

Note that at the time of the v8 architecture closure, we also included ████████ which at the time had no definition, and eventually became v9.   We are in a similar situation here with regards to visibility on next generation architecture.

Please let us know if you'd like to discuss, we can set something up for next week.

Thanks
Lynn

**A189**

ARM_00005340.  Mr. Bettesworth responded five days later.  He did not dispute any of Ms. Couillard's statements, including that "[t]he intent of ███████ is to allow for an **extension** of the agreement *as of this point in term of the agreement*," and that if Qualcomm desires to "have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire."  He elected to "go ahead and move forward with the extension":

| | |
|---|---|
| From: | Brett Bettesworth [betteswb@qti.qualcomm.com] |
| Sent: | 20/05/2020 20:05:11 |
| To: | Lynn Couillard [Lynn.Couillard@arm.com]; grajiv@qti.qualcomm.com |
| CC: | Todd Lepinski [Todd.Lepinski@arm.com] |
| Subject: | RE: V10 -->V9 architecture follow-on |

Importance:    High

Hi Lynn,

Thanks for your email and the note below.  We will go ahead and move forward with the extension at this point, per the ALA optional election.

████████████████████████████████████████████████

We can discuss further at some point in the near future, but wanted to ensure that we provided timely notification of our election here, as mentioned previously.

Sincerely,
Brett

*Id.*

Arm and Qualcomm never reached any mutual agreement over what if any Arm Technology would be included in a purported extension.  And to the extent any agreement was reached, it is that v10 would not be included: after Arm notified Qualcomm that v10 was not in development, Qualcomm acknowledged that "no meaningful discussions can currently be initiated around the terms and conditions for an extension of the ALA Term to cover v10 architecture" and Qualcomm did not dispute any of Ms. Couillard's statements, including that "[t]he intent of ███████ is to allow for an extension of the agreement as of this point in term of the agreement," and that if Qualcomm desires to "have a discussion around licensing the next architecture sometime in the

**A190**

future, then this portion of the agreement will expire." *Id.*  Qualcomm did not follow up on that correspondence, and did not make any effort to follow up on its May 2020 correspondence until five years later, as discussed above.  Instead, the parties proceeded with negotiating and finalizing an Annex 1 for v9, which was the only planned architecture at that time.

### Arm Is Not Required To Negotiate The Terms And Conditions Of A V10 License Under The Qualcomm ALA Because Qualcomm's May 2020 Emails Were Not A Valid Election

Arm was not obligated to negotiate an extension of the Qualcomm ALA because Qualcomm's May 2020 emails in which Qualcomm purported to elect to extend the ALA were not a valid election.



does not include email as a valid or effective method of providing notice under the ALA.  Qualcomm's May 20, 2020 email did not give Arm proper notice of its purported election under ▮▮▮▮▮▮▮ rendering Qualcomm's purported "election" ineffective.  Qualcomm did not send Arm follow-up correspondence in compliance with ▮▮▮▮▮ regarding its purported "election," and did not correspond with Arm again about its purported "election" for another five years.  But even if Qualcomm had made a valid election, its assertion that Arm breached the implied covenant would be barred by the applicable statute of limitations.

### Arm Did Not Breach The Qualcomm ALA Based On The Alleged Withholding Of ETE Checker Support

Qualcomm does not allege that Arm breached the Qualcomm ALA based on withholding

**A191**

ETE Checker support in its Second Amended Complaint or in its response to Arm's Interrogatory 2, which calls for "the complete legal and factual basis for [Qualcomm's] contention that Arm failed to meet any of its obligations under the Qualcomm ALA." Second Amended Complaint; Qualcomm's March 10, 2025 Response to Arm's Interrogatory No. 2. Nor did Qualcomm identify any alleged withholding of ETE Checker support in its November 3, 2022 letter to Arm. ARM_01423632 at -634. Qualcomm states in its response to Arm Interrogatory No. 13 that "Arm violated the terms of the Qualcomm ALA by failing to … provide support for the ETE Checker," but does not specify the support that was allegedly withheld or identify any term of the ALA that Arm allegedly breached.

To the extent Qualcomm's statements can be understood, Arm did not breach the Qualcomm ALA based on any alleged withholding of support for the ETE Checker. Qualcomm states in its response to Arm Interrogatory No. 13 that "the ETE Checker [is] a component of the ACK licensed by Qualcomm for Armv9." However, Arm delivered the Armv9 ACK—including the ETE Checker—to Qualcomm at least as early as May 27, 2019, and Arm delivered all subsequent quarterly ACK releases to Qualcomm. *See*, *e.g.*, ARMQC_02604616 (showing Arm making available to Qualcomm "Product: ███ – Armv9-A Architecture Compliance Kit" and "Part: ████████ – Armv9-A Architecture Compliance Suite," and quarterly releases thereto, via the Arm Connect document delivery portal). Qualcomm's unexplained statement that Arm allegedly withheld unspecified support for the ETE Checker allegedly constitutes a breach of unspecified "terms of the Qualcomm ALA" fails to show any breach by Arm.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and

**A192**

without waiver of its general and specific objections, Arm further responds as follows:

In depositions, Qualcomm has suggested that the Qualcomm ALA's definition of ████████
entitles Qualcomm to the unreleased v10 of the Arm ISA. That is incorrect. The Qualcomm ALA
defines 

██████████████████ ARM_00055357 at 360. Because the only version of the Arm ISA that
was available at the time of the Qualcomm ALA's execution was v8, the ███████████████

███████████████████████. Indeed, the parties executed an Annex 1 for ████████

████████████ contemporaneously with the execution of the ALA to serve as a placeholder for the
next available version of the Arm ISA. QCARM_0338573. In 2020, the parties executed an Annex
1 for v9 of the Arm ISA, which ███████████████████████████

███████████ QCARM_0343954. This confirms that the parties understood that ████████

████████████████████████████.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies
the following documents from which information responsive to the non-objectionable scope of this
Interrogatory may be derived: ARM_01293447, ARMQC_02771129, ARMQC_02771151,
QCVARM_0851876, ARMQC_02771128, ARMQC_02771124, ARMQC_02771125,
ARMQC_02771126, ARMQC_02771127, QCVARM_0453724, QCVARM_0851511,
QCARM_0562765, QCVARM_0448842, QCVARM_0532239, QCVARM_0534596,
QCVARM_0534597, QCVARM_0852203, QCVARM_0851120, QCVARM_0851333,
QCVARM_0531892, QCVARM_0847000, QCVARM_0448361, QCVARM_0529072,
QCVARM_0528955, QCVARM_0529887, QCVARM_0447175, QCVARM_0449653,
QCVARM_0449658, QCVARM_0447252, QCVARM_0846761, QCVARM_0537065,
ARMQC_02603587, ARMQC_02604609, ARMQC_02604610, ARMQC_02604611,

**A193**

ARMQC_02604612,      ARMQC_02604613,      ARMQC_02604614,      ARMQC_02604615,

ARMQC_02604616,      ARMQC_02604617,      ARMQC_02604618,      ARMQC_02604619,

ARMQC_026046020,      ARMQC_02604621,      ARMQC_02604622,      ARMQC_02604623,

ARMQC_02747093,      ARMQC_02747097,      ARMQC_02747103,      ARMQC_02747104,

ARMQC_02779171,      ARMQC_02779174,      ARMQC_02779176,      ARMQC_02779179,

ARMQC_02779181, QCARM_2430181, ARM_00100013, ARM_01282655, ARM_00090791,

ARM_00067349,    ARM_00102683,    ARM_00091389,    ARM_00068087,    ARM_00068131,

ARM_00068459,    ARM_00068504,    ARM_00091657,    ARM_00091659,    ARM_00091714,

ARM_00091768,    ARM_00091799,    ARM_00091834,    ARM_00091869,    ARM_00091903,

ARM_00075096,    ARM_00075098,    ARM_00075343,    ARM_00076113,    ARM_00103566,

ARM_00103635,      ARMQC_02755397,      ARMQC_02755446,      ARMQC_02755490,

ARMQC_02755534,      ARMQC_02755580,      ARMQC_02755624,      ARMQC_02755674,

ARMQC_02755903,      ARMQC_02755905,      ARMQC_02756148,      ARMQC_02756245,

ARMQC_02756246,      ARMQC_02756344,      ARMQC_02746634,      ARMQC_02756542,

ARMQC_02756544,      ARMQC_02746871,      ARMQC_02756860,      ARMQC_02760525,

ARMQC_02627275,      ARM_01241565,      QCVARM_0573677,      ARMQC_02779064,

ARMQC_02779076,      ARMQC_02779099,      ARMQC_02779107,      ARMQC_02779116,

ARMQC_02779122, ARMQC_02779133, ARM_00001777, ARM_00001195, ARM_00001198,

ARM_00001777, ARM_01020186, QCARM_3337526, QCARM_3337900, QCARM_3338108,

QCARM_3339493,      QCVARM_0685544,      QCVARM_0689117,      QCVARM_0699179,

QCARM_3216178,      QCARM_3066477,      QCVARM_0602227,      QCVARM_0618420,

QCVARM_0691521,      QCVARM_0000395,      QCVARM_0000269,      QCARM_3353040,

QCVARM_0602564,      QCVARM_0000142,      QCVARM_0618741,      QCVARM_0000180,

QCARM_3352796,      QCARM_3353006,      QCARM_3353126,      ARM_00025401,

**A194**

QCVARM_0468612, QCVARM_0000061, QCVARM_1118518, QCVARM_0602258, QCVARM_0602295, QCVARM_0468174, QCVARM_0000114, QCVARM_0000092, QCVARM_0000085, QCVARM_0000123, QCVARM_0000135, QCVARM_0602359, QCVARM_0468148, QCVARM_0000395, QCVARM_0000269, QCARM_3353040, QCVARM_0602564, QCVARM_0621692, QCVARM_0535116, QCVARM_0524624, QCVARM_0854027, QCARM_0566625, QCVARM_0524624, QCVARM_0613083, QCVARM_0613160, QCVARM_0540468, QCVARM_0452598, QCARM_0340017, QCVARM_0452296, QCVARM_0846871, QCVARM_0857113, QCVARM_0463558, QCVARM_0608391, QCVARM_1031097, QCVARM_0448757, QCARM_3430479, QCVARM_0851449, QCVARM_0621447, QCVARM_0621448, QCARM_3537716, QCARM_3537383, QCVARM_0467659, QCVARM_0454629, QCVARM_0451824, QCVARM_0449970, QCVARM_0467852, ARM_00003305.

Arm further incorporates by reference all documents produced in Qualcomm's 11th document production (QCVARM_011), and all documents cited in Qualcomm's responses to Arm Interrogatory Nos. 1, 2, 6, 9, and 13.

Given the breadth of allegations Qualcomm has made regarding Arm's alleged breach of the ALA, Arm further incorporates by reference the testimony of all witnesses that have been deposed in this case to date, including those specifically referenced herein, as well as the testimony of all witnesses deposed in *Arm v. Qualcomm*, Case No. 1:22-cv-01146 (D. Del.), and the exhibits used during those depositions.

Arm also incorporates by reference its responses to Interrogatory Nos. 1, 3, 4, and 5.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**A195**

**INTERROGATORY NO. 11:**

      Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not breach the Qualcomm TLA. Your response should include, but is not limited to, the complete legal and factual bases for any contention that you did not breach ▮▮▮▮▮▮ of the TLA or the implied covenant of good faith and fair dealing, and should include an identification of all documents by Bates numbers you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 11 (JUNE 16, 2025):**

      Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks "the complete factual and legal bases," without limitation. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this Interrogatory to the extent it calls for a legal conclusion. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

      Subject to and without wavier of its general and specific objections, Arm responds as follows:

**Qualcomm's Allegations**



      Qualcomm alleges that Arm breached ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Second Amended Complaint ¶¶ 215, 223. Qualcomm alleges that Arm breached the implied covenant of

good faith and fair dealing of the Qualcomm TLA by "fail[ing] to provide licensing proposals for Arm Implementation Cores to Qualcomm in violation of provisions of the QC TLA."  Second Amended Complaint ¶ 184.  Arm understands that Qualcomm's only allegations that Arm breached the Qualcomm TLA are based on licensing offers for the ████████████ cores.

Arm denies Qualcomm's allegations that Arm breached the Qualcomm TLA. Arm has not breached the Qualcomm TLA, and Qualcomm has failed to show otherwise.

### Arm Did Not Breach The Qualcomm TLA Because Arm's Licensing Offers Satisfied The ████████████ Term

Qualcomm alleges that Arm's licensing offer for ████████████ "increased licensing fees and royalty rate percentages for each core by nearly five times from the prior terms licensed by Qualcomm" and thus ████████████████████████████████████ ████████████████████████████████████ Second Amended Complaint ¶¶ 118, 119.  To the extent ██████████ applies, Arm's licensing offer satisfied the ██████████ term, which is calculated based ██████████████████ ██████████████████████████████ ████

████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

**A197**

█████████████████████████████████████████████████████

███████████████████████████████████████████

Arm's license offer to Qualcomm satisfied the ████████████ term, to the extent it applies, which is calculated █████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████

### Arm Did Not Breach The Qualcomm TLA Because It Made An Actual License Offer To Qualcomm

Qualcomm alleges that "Arm's proposal was a constructive failure to offer a license" because of its financial terms and that "[t]his constructive failure to offer a license to the requested cores violated the terms of the QC TLA."  Second Amended Complaint ¶¶ 25, 118.  Arm did not breach the Qualcomm TLA because, as Qualcomm admits, Arm made an *actual* license offer to Qualcomm.  Second Amended Complaint ¶ 117.  Further, as described above, the financial terms of that offer satisfied the "████████████" term and were in good faith and thus not a "constructive failure to offer a license."

### Arm Did Not Breach The Qualcomm TLA Because Its ████████████████

Qualcomm alleges in its Second Amended Complaint that "Arm failed to fulfill its obligation under █████████████████████████████████████████

██████████████████████████████████████████

████████████████████████ including by excluding support and maintenance."  Second Amended Complaint ¶ 223.  Qualcomm does not identify any other alleged ████████████

████████████████████ Arm did not breach the Qualcomm TLA because its offer included support and maintenance for ████████████████████

█████████████████████████████████████████

**A198**

Arm's ████████████████████████████████

**Arm Did Not Breach The Qualcomm TLA Because Arm Was Not Obligated To Offer Licenses To ██████████████████ To Qualcomm In 2024**

Qualcomm alleges in its Second Amended Complaint that Qualcomm submitted requests to Arm for licenses to ████████████ in April 2024 and for a license to ██████ in August 2024, and that Qualcomm sent Arm two notices of breach of the Qualcomm TLA in September 2024 because Arm had not yet responded with license offers by that time.  Second Amended Complaint ¶¶ 21-24.

Arm had no obligation to offer Qualcomm licenses to the ████████████ cores in 2024 because Qualcomm's ██████████████████████ does not make reference to renewals.  Qualcomm first licensed the ████████████ cores in

**A199**



, and thus made

its ███████ no later than 2019.  *See, e.g.*, QCARM_0029040 at 29043.  Under ███████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.

Because Qualcomm did not request a license to the ███████████ cores within the

███████████████████████, Arm was under no obligation with respect to

Qualcomm's 2024 request to license the ███████████ cores.  Qualcomm has not

identified any other requests for licenses to those cores other than its communications in 2024.

**Arm Did Not Breach Any Obligation To Act In "███████ Or The Implied Covenant Of Good Faith An Fair Dealing**

Qualcomm alleges in its Second Amended Complaint that "[t]he financial terms that Arm

provided for the three requested cores were commercially unreasonable, exorbitant, and not in good

faith" and that "Arm has breached the implied covenant of good faith and fair dealing" for the

Qualcomm TLA.  Second Amended Complaint ¶¶ 118, 187.

Arm did not breach either the express "███████ provisions of ███████ of the TLA or

any implied covenant of good faith and fair dealing for the reasons described above: Arm did not

breach the TLA, and made a good faith offer with financial terms that satisfied the ███████████

██████ team.

Further, any allegation that Arm breached the implied covenant of good faith and fair

dealing is duplicative of the express "███████ provisions and is not actionable.  *See, e.g.*, *USX*

*Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 439 (3d Cir. 1993) (holding that Plaintiff "cannot assert

a claim for breach of implied covenants that is based on exactly the same acts which are said to be

in breach of express covenants."); *Cision US, Inc. v. CapTech Ventures, Inc.*, No. CV 24-00063-

MN-SRF, 2025 WL 1094318, at *5 (D. Del. Apr. 11, 2025) (dismissing Plaintiff's "claim for breach

of the implied covenant of good faith and fair dealing … as impermissibly duplicative of its breach

**A200**

of contract and warranty claims.").

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Jeff Fonseca and Karthik Shivashankar.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

**Arm Did Not Breach The Qualcomm TLA Because Arm's Licensing Offers Satisfied The █████████████ Term**

Arm's October 2024 license offer to Qualcomm satisfied the ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

Arm prepared a quote in response to Qualcomm's 2024 requests to renew its license for the █████████████████ cores as required by the TLA. QCVARM_0524362. Arm, *e.g.*, Karthik Shivashankar and Akshay Bhatnagar, performed an analysis to ████████████████████ ████████████████████████████████████████. *See, e.g.*, Bhatnagar Dep. (Rough) at 25–28; ARMQC_02784199; ARMQC_02784204. Next, Arm ██████████████ ████████████████████████████████████████████████

██████████████ *See, e.g.*, Youssef Dep. at 64–68; ARMQC_02779314. Arm then performed an analysis to determine appropriate licensing fees and royalty rates to propose to Qualcomm based on a variety of factors, ████████████████████████████████████████████

████████████████████████████████████████████████

**A201**

█████████████████████████.  *See, e.g.*, Youssef Dep. at 68–71. Other Arm team members contributed to this analysis in addition to Mr. Shivashankar and Mr. Bhatnagar, including Ehab Youssef, and Jeff Fonseca, among others.

After considering the ███████████████████████████████████████████ ██████ an appropriate licensing fee and royalty rate schedule to propose to Qualcomm, which it formalized in a quote.  QCVARM_0617829.  In arriving at its proposal, Arm determined that while

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████.  *See, e.g.*, Youssef Dep. at 68–71.  ██████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████.  Youssef Dep. at 71 ("█

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████).  Thus, Arm prepared a quote using ████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████.  *See* Youssef Dep. at 71; Shivashankar Dep. at 97–98; Fonseca Dep. (Rough) at 16, 19, 32–34, 37–39; ARMQC_02783731; ARMQC_02783848; ARMQC_02783619; ARMQC_02783967; ARMQC_02784120.

To the extent Qualcomm argues that Arm violated ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ that is not true.  Arm considered ██████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

**A202**

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████

**Arm Did Not Breach The Qualcomm TLA Because Its** ██████████████

Arm did not breach ████████████████████████

████████████████████████████████████████

████████████████

Qualcomm's allegation for an alleged breach of ████████ apparently based on the statement in Arm's October 2024 offer that "Support and Maintenance is not included in this Qualcomm IP Extension Offer." QCVARM_0617829 at 831. However, there was never a change in the ██████████████" and Qualcomm is mistaken. Qualcomm has a ████████ ████████████████████████████████████████ ████████████████████████████████████████ ████. ARMQC_02772246. That agreement has been extended several times by the parties, and is set to run through ████████ ARMQC_02772246, §██ *see also* ARMQC_02772246; ARM_01300657; ARM_01300665; ARM_01298732; ARM_01300650.

Arm never communicated to Qualcomm that it was no longer providing support and maintenance in any renewal license to ████████████ Indeed, Arm confirmed to

**A203**

Qualcomm, *i.e.*, Kurt Wolf, that "support is included in QCOM umbrella Support & Maintenance Agreement" and "this is the correct reading" of that language.  ARMQC_02774856; Wolf Dep. at 176. ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████.  *See, e.g.*, ARMQC_02772246; ARM_01300657; ARM_01300665; ARM_01298732; ARM_01300650.

Further, any argument by Qualcomm that Arm's discounting of its October 2024 license fees demonstrates that Arm was not including support and maintenance is also incorrect.  ████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████.  *See, e.g.*, Fonseca Dep. at 64–65; ARMQC_02783169 at 654 ("██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████).  That Arm discounted its licensing fee offers for ██████████████████ to account for Qualcomm's ██████ further confirms that support and maintenance was still included vis-à-vis the ██████.

### Arm Did Not Breach The Qualcomm TLA Because Arm Was Not Obligated To Offer Licenses To ████████████████████ To Qualcomm In 2024

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████t.  In addition to Qualcomm's failure to make a ████████████████████

██████ of requesting ████████████████████ licenses in 2019, Arm had no obligation to offer licenses to ████████████████ because it did not receive any renewal request from ████████

███████████████████████████████████████████████████████████████████

**A204**

. ARM_00103918 at 918, 955. Arm never received any such request from an employee of ███. Rather, Qualcomm's communications regarding ███████████ renewal requests to Arm in 2024 came from individuals employed by Qualcomm Inc. or Qualcomm Technologies, Inc., *i.e.*, Kurt Wolf or Ann Chaplin. *See, e.g.*, ARMQC_02771126; QCVARM_0605055.

### Arm Did Not Breach Any Obligation To Act In "████████ Or The Implied Covenant Of Good Faith And Fair Dealing

Qualcomm alleges in its Second Amended Complaint that "[t]he financial terms that Arm provided for the three requested cores were commercially unreasonable, exorbitant, and not in good faith" and that "Arm has breached the implied covenant of good faith and fair dealing" for the Qualcomm TLA. Second Amended Complaint ¶¶ 118, 187. For the additional reasons discussed above, Arm did not breach the express "████████ provision of ███████ of the TLA or any implied covenant of good faith and fair dealing. Arm made a good faith offer in accordance with ████, and did not ██████████████████████ in accordance with ████.

### Additional Factual and Legal Bases Regarding Qualcomm's TLA Allegations

Arm further states that Qualcomm has failed to prove that Arm's alleged conduct was the but-for or proximate cause of any supposed "harm" that Qualcomm has allegedly suffered. Qualcomm has failed to articulate any "harm" that it has allegedly suffered as a result of Arm's supposed breach of either ████████ of the TLA. As discussed above, Arm has not breached the TLA or any express or inherent "████████ provisions therein. Qualcomm has failed to make any effort to quantify any "harm," such as alleged overpayments which should be refunded, ████████ ██████████████████████████████████████████████ While Qualcomm's witnesses have vaguely alleged that Qualcomm had to "shift resources" or hire "engineering resources" to develop custom cores as a result of Arm's actions with regard to the October 2024 TLA offers, Qualcomm has failed to produce or identify any documentary evidence

**A205**

corroborating those claims. Qualcomm has also failed to prove any casual connection between Arm's October 2024 offer and any of this supposed "harm."

To the contrary, discovery has confirmed that Qualcomm has suffered no harm *at all* from Arm's October 2024 offer to renew Qualcomm's license to ███████████████ Regarding ██████ Qualcomm received an updated offer for █████ in 2025. ARMQC_02778342. As to ██████████, Qualcomm never had a legitimate plan to use those cores after October 2026 and those products are not on its roadmap after that time. ████████████████. Arm incorporates by reference its response to Interrogatory No. 12 and discussion of its unclean hands defense. Qualcomm only requested renewal offers for ████████████ as a pretext to prompt a response from Arm regarding three "peripheral IP," GIC-700, MMU-700, and ELA-600. QCVARM_0605055; QCVARM_0447175; Wolf Dep. at 75–77. Indeed, it never sought to continue negotiating over or sought revised licensing terms from Arm in 2024 or anytime after for ████████████.

Further, Qualcomm attempted to partially accept Arm's October 2024 offer as to the "peripheral IP" only. QCVARM_0524726. After Arm rejected Qualcomm's attempt but provided a revised offer for GIC-700, MMU-700, and ELA-600 in January 2025, Qualcomm accepted those revised terms. QCVARM_0524726; QCVARM_0523650. This lack of harm undermines any notion that Qualcomm should be entitled to ████████████████████████████ ████████████████████.

Arm further notes that, to date, Qualcomm has failed to disclose any legal or factual bases for its theories as to how Arm has allegedly breached the TLA. Other than Qualcomm's vague allegations in the SAC—which are legally insufficient as set forth in Arm's Motion to Dismiss (D.I. 232, 233, 305)—Qualcomm has not answered any interrogatory or otherwise disclosed its theories for how Arm allegedly breached ████████████ of the TLA. Arm served interrogatories to

**A206**

Qualcomm seeking such information on June 11, 2025, to which Qualcomm could have responded but has not. Qualcomm similarly failed to provide any response to Arm's theories regarding the TLA, which were disclosed to Qualcomm on June 16, 2025. Accordingly, Arm reserves the right to supplement these responses after it has an opportunity to review any such theories Qualcomm discloses at a later date.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARMQC_02772366, QCARM_0222545, QCARM_0344783.

Arm further incorporates by reference its response to Interrogatory No. 6, including the documents and testimony cited therein.

Arm further incorporates by reference the testimony of the following witnesses: Karthik Shivashankar, Ehab Youssef, Akshay Bhatnagar, Jeff Fonseca, Kurt Wolf, Manju Varma, Larissa Cochran, Spencer Collins, Will Abbey, Cristiano Amon, Ann Chaplin, Lynn Couillard, Durga Malladi, Richard Meacham, Laura Sand, Christine Tran, Jonathan Weiser, and Gerard Williams, including the documents used at each of those depositions.

Arm further incorporates by reference any documents withheld on the basis of third-party confidentiality disputes, including due to an objection or motion for a Protective Order filed by any such third parties. Arm reserves the right to supplement this response to address such documents should any such disputes be resolved and result in the production of such documents to Qualcomm.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**A207**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Matthew J. McIntee
Meredith Pohl
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
matt.mcintee@kirkland.com
meredith.pohl@kirkland.com

Jay Emerick
Adam Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
adam.janes@kirkland.com

Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP


 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

66

**A208**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

67

**A209**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A210**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A211**

# Exhibit 16

Page 1

1

2  IN THE UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF DELAWARE
3  C.A. No. 24-490-MN
   ----------------------------------------x
4  QUALCOMM INCORPORATED, a Delaware
   corporation, QUALCOMM TECHNOLOGIES, INC.,
5  a Delaware corporation,
6                         Plaintiffs,
7       - against -
8  ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K.
   corporation
9
                          Defendant.
10
   ----------------------------------------x
11
                     June 30, 2025
12                   9:03 a.m.
13
14                 *CONFIDENTIAL*
15
16      VIDEOTAPED DEPOSITION of SPENCER
17  COLLINS, held at the offices of PAUL WEISS
18  RIFKIND WHARTON & GARRISON, LLP, located at
19  1285 Avenue of the Americas, New York, New
20  York 10019, before Anthony Giarro, a
21  Registered Professional Reporter, a Certified
22  Realtime Reporter and a Notary Public of the
23  State of New York.
24
25

# Exhibit 17

Page 1

1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF DELAWARE

3      QUALCOMM INCORPORATED a Delaware corporation, ) Case No.
   ) 24-490-MN

       QUALCOMM TECHNOLOGIES, INC., a Delaware        )
4      corporation,                                   )
                                                      )
5           Plaintiffs,                               )
                                                      )
6           vs.                                       )
                                                      )
7      ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K.       )
       corporation,,                                  )
8                                                     )
            Defendant.                                )
9      _____)

10           ATTORNEYS EYES ONLY VIDEOTAPED DEPOSITION OF

11                      MICHAEL J. WILLIAMS

12                      Palo Alto, California

13                      Friday, June 27, 2025

14

15

16            REPORTED BY: Derek L. Hoagland

17                      CSR No. 13445

18

19

20

21

22

23

24

25



**A219**

# Exhibit 18

Page 1

1
2      IN THE UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF DELAWARE
3      C.A. No. 24-490-MN
       ----------------------------------------x
4      QUALCOMM INCORPORATED, a Delaware
       corporation, QUALCOMM TECHNOLOGIES, INC.,
5      a Delaware corporation,
6                          Plaintiffs,
7           - against -
8      ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K.
       corporation
9
                           Defendant.
10
       ----------------------------------------x
11
                      July 4, 2025
12                    9:10 a.m.
13
14            *HIGHLY CONFIDENTIAL*
              *ATTORNEYS' EYES ONLY*
15
16        VIDEOTAPED DEPOSITION of PETER
17     GREENHALGH, held at the offices of PAUL WEISS
18     RIFKIND WHARTON & GARRISON, LLP, located at
19     1285 Avenue of the Americas, New York, New
20     York 10019, before Anthony Giarro, a
21     Registered Professional Reporter, a Certified
22     Realtime Reporter and a Notary Public of the
23     State of New York.
24
25



**A222**

# Exhibit 19

Page 1

1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF DELAWARE

3   QUALCOMM INCORPORATED a Delaware corporation, ) Case No.

    QUALCOMM TECHNOLOGIES, INC., a Delaware        )24-490-MN

4   corporation,                                   )

                                                    )

5       Plaintiffs,                                )

                                                    )

6       vs.                                        )

                                                    )

7   ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K.       )

    corporation,                                   )

8                                                   )

        Defendant.                                 )

9   _____)

10     CONFIDENTIAL ATTORNEYS EYES ONLY VIDEOTAPED 30(b)(6)

11              DEPOSITION OF JANNIK W. NELSON

12                  Palo Alto, California

13                 Thursday, July 10, 2025

14

15

16           REPORTED BY: Derek L. Hoagland

17                  CSR No. 13445

18

19

20

21

22

23

24

25



A225

# Exhibit 20

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1           IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF DELAWARE

3                    ---oOo---

4   QUALCOMM INCORPORATED, a

    Delaware corporation,

5   QUALCOMM TECHNOLOGIES, INC.,

    a Delaware corporation,

6

            Plaintiffs,

7

    vs.                          C.A. No. 24-490-MN

8

    ARM HOLDINGS PLC., f/k/a

9   ARM LTD., a U.K. corporation,

10            Defendants.

    _____/

11

12

13    **HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

14

15        VIDEO DEPOSITION OF MOHAMED AWAD

16             PALO ALTO, CALIFORNIA

17            TUESDAY, JULY 29, 2025

18

19

20

21  STENOGRAPHICALLY REPORTED BY:

22  ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~ CSR

23  LICENSE NO. 9830

24  JOB NO. 7479175

25



# Exhibit 21

# ⅢORRISON FOERSTER

2100 L STREET
NW SUITE 900
WASHINGTON, D.C.
20037

TELEPHONE: 202.887.1500
FACSIMILE: 202.887.0763

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AUSTIN, BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI,
NEW YORK, PALO ALTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

April 22, 2025

Writer's Direct Contact
+1 (202) 790-1077
NTan@mofo.com

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re: *Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s first set of document production, ARMQC_001, Bates numbered ARMQC_00000001 to ARMQC_00086000. Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order.

The production will be sent via secure file transfer as a password-protected zip file. The password for the encrypted zip file is **lbX26!55zwj8pJOC**.

Sincerely,

*/s/ David Nathaniel Tan*

David Nathaniel Tan
Associate

**A230**

# Exhibit 22

**MORRISON FOERSTER**

2100 L STREET
NW SUITE 900
WASHINGTON, D.C.
20037

TELEPHONE: 202.887.1500
FACSIMILE: 202.887.0763

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AUSTIN, BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI,
NEW YORK, PALO ALTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

April 28, 2025

Writer's Direct Contact
+1 (202) 790-1077
NTan@mofo.com

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:     *Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s second and third set of document productions, ARMQC_002 and ARMQC_003, Bates numbered ARMQC_000860001 to ARMQC_01602066 and ARMQC_01602067 to ARMQC_02599789 respectively.  Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order. The productions will be sent via secure file transfer as a password-protected zip file.  The password for the encrypted zip files are as follows:  **a5c2I/%Ax3kj** and **~7tM\1KXC9F8**.

Sincerely,

*/s/ David Nathaniel Tan*

David Nathaniel Tan
Associate

**A232**

# Exhibit 23

**IIIORRISON FOERSTER**

2100 L STREET
NW SUITE 900
WASHINGTON, D.C.
20037

TELEPHONE: 202.887.1500
FACSIMILE: 202.887.0763

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AUSTIN, BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI,
NEW YORK, PALO ALTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

May 1, 2025

Writer's Direct Contact
+1 (202) 887-6943
NTan@mofo.com

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:    *Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s fourth set of document production, ARMQC_004, Bates numbered ARMQC_02599790 to ARMQC_02745250.  Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order.

The production will be sent via secure file transfer as a password-protected zip file.  The password for the encrypted zip file is **cr#fE!TLseCIK$9L**.

Sincerely,

*/s/ David Nathaniel Tan*

David Nathaniel Tan
Associate

sf-6715908

**A234**

# Exhibit 24

**IIIORRISON FOERSTER**

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA  90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI, NEW
YORK, PALO ALTO, SAN DIEGO, SAN
FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

June 3, 2025

Writer's Direct Contact
+1 (213) 892-5647
HHuttinger@mofo.com

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

    Re:    *Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s fifth set of document production, ARMQC_005, Bates numbered ARMQC_02745251 to ARMQC_02752651.  Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order.

The production will be sent via secure file transfer as a password-protected zip file.  The password for the encrypted zip file is **50qB/%z78>wX**.

Sincerely,

*/s/ Henry Huttinger*

Henry Huttinger

**A236**

# Exhibit 25

**ⅢORRISON FOERSTER**

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA 90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI, NEW
YORK, PALO ALTO, SAN DIEGO, SAN
FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

Writer's Direct Contact
+1 (213) 892-5647
HHuttinger@mofo.com

June 13, 2025

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:    *Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s sixth set of document production, ARMQC_006, Bates numbered ARMQC_02752652 to ARMQC_02759704. Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order. In addition, we are also producing an overlay for volumes ARMQC_0001-ARMQC_004.

The productions will be sent via secure file transfer as a password-protected zip file. The password for ARMQC_006 zip file is **qK?eaB.N`3Ww**. The password for ARMQC_001-ARMQC_004 ReProduction zip file is **wHJ9<BSb2#-&.**

Sincerely,

*/s/ Henry Huttinger*

Henry Huttinger

**A238**

# Exhibit 26

# ⅢORRISON FOERSTER

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA 90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI, NEW
YORK, PALO ALTO, SAN DIEGO, SAN
FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

June 17, 2025

Writer's Direct Contact
+1 (213) 892-5647
HHuttinger@mofo.com

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:    *Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s seventh set of document production, ARMQC_007, Bates numbered ARMQC_02771124 to ARMQC_02772171.  Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order.

The production will be sent via secure file transfer as a password-protected zip file.  The password for ARMQC_007 zip file is **+8%W>{]6I9H]hl**.

Sincerely,

*/s/ Henry Huttinger*

Henry Huttinger

**A240**

# Exhibit 27

**ⅢORRISON FOERSTER**

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA 90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI, NEW
YORK, PALO ALTO, SAN DIEGO, SAN
FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

June 18, 2025

Writer's Direct Contact
+1 (213) 892-5647
HHuttinger@mofo.com

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:     *Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s eighth set of document production, ARMQC_008, Bates numbered ARMQC_02772172 to ARMQC_02772908.  Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order.

The production will be sent via secure file transfer as a password-protected zip file.  The password for ARMQC_007 zip file is **$r^Gq-,WU708**.

Sincerely,

*/s/ Henry Huttinger*

Henry Huttinger

**A242**

# Exhibit 28

**ᛖMORRISON FOERSTER**

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA 90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI, NEW
YORK, PALO ALTO, SAN DIEGO, SAN
FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

June 19, 2025

Writer's Direct Contact
+1 (213) 892-5647
HHuttinger@mofo.com

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

      Re:    *Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s nineth set of document production, ARMQC_009, Bates numbered ARMQC_02772909 to ARMQC_02773520. Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order.

The production will be sent via secure file transfer as a password-protected zip file. The password for ARMQC_007 zip file is **k!4cK5d2'y=3**.

Sincerely,

*/s/ Henry Huttinger*

Henry Huttinger

**A244**

# Exhibit 29

A245

**ⅢORRISON FOERSTER**

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA 90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI, NEW
YORK, PALO ALTO, SAN DIEGO, SAN
FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

Writer's Direct Contact
+1 (213) 892-5647
HHuttinger@mofo.com

June 24, 2025

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:    *Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s tenth set of document production, ARMQC_010, Bates numbered ARMQC_02773521 to ARMQC_02774990.

Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order.

The production will be sent via secure file transfer as a password-protected zip file. The password for ARMQC_010 zip file is **pa;[E)O*4Y4L**.

Sincerely,

*/s/ Henry Huttinger*

Henry Huttinger

**A246**

# Exhibit 30

# MORRISON FOERSTER

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA  90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI, NEW
YORK, PALO ALTO, SAN DIEGO, SAN
FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

June 26, 2025

Writer's Direct Contact
+1 (213) 892-5647
HHuttinger@mofo.com

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:    *Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s eleventh set of document production, ARMQC_011, Bates numbered ARMQC_02774991 to ARMQC_02779268.

Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order.

The production will be sent via secure file transfer as a password-protected zip file.  The password for ARMQC_011 zip file is **yC}I9bhauyoBL6**.

Sincerely,

*/s/ Henry Huttinger*

Henry Huttinger

**A248**

# Exhibit 31

**ꟿORRISON FOERSTER**

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA  90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON, BRUSSELS, DENVER, HONG KONG, LONDON, LOS ANGELES, MIAMI, NEW YORK, PALO ALTO, SAN DIEGO, SAN FRANCISCO, SHANGHAI, SINGAPORE, TOKYO, WASHINGTON, D.C.

July 1, 2025

Writer's Direct Contact
+1 (213) 892-5647
HHuttinger@mofo.com

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:    *Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s twelfth set of document production, ARMQC_012, Bates numbered ARMQC_02779269 to ARMQC_02779508.

Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order.

The production will be sent via secure file transfer as a password-protected zip file.  The password for ARMQC_012 zip file is **Ch%S]qOkeV5G**.

Sincerely,

*/s/ Henry Huttinger*

Henry Huttinger

**A250**

# Exhibit 32

# ᛁᛁᛁORRISON FOERSTER

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA 90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI, NEW
YORK, PALO ALTO, SAN DIEGO, SAN
FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

July 3, 2025

Writer's Direct Contact
+1 (213) 892-5647
HHuttinger@mofo.com

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:     *Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s thirteenth set of document production, ARMQC_013, Bates numbered ARMQC_02779509 to ARMQC_02779862.

Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order.

The production will be sent via secure file transfer as a password-protected zip file. The password for ARMQC_013 zip file is **Q6R(G%>!hM98**.

Sincerely,

*/s/ Henry Huttinger*

Henry Huttinger

**A252**

# Exhibit 33

**ΙΙΙORRISON FOERSTER**

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA 90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI, NEW
YORK, PALO ALTO, SAN DIEGO, SAN
FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

Writer's Direct Contact
+1 (213) 892-5647
HHuttinger@mofo.com

July 4, 2025

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:    *Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s fourteenth set of document production, ARMQC_014, Bates numbered ARMQC_02779863 to ARMQC_02783511.

Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order.

The production will be sent via secure file transfer as a password-protected zip file. The password for ARMQC_014 zip file is **5WqT'P|0#4*`**.

Sincerely,

*/s/ Henry Huttinger*

Henry Huttinger

**A254**

# Exhibit 34

# ⅢORRISON FOERSTER

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA  90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI, NEW
YORK, PALO ALTO, SAN DIEGO, SAN
FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

July 8, 2025

Writer's Direct Contact
+1 (213) 892-5647
HHuttinger@mofo.com

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:     *Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s fifteenth set of document production, ARMQC_015, Bates numbered ARMQC_02783512 to ARMQC_02783614.

Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order.

The production will be sent via secure file transfer as a password-protected zip file.  The password for ARMQC_015 zip file is **OpSxP5wpIZDw**.

Sincerely,

*/s/ Henry Huttinger*

Henry Huttinger

**A256**

# Exhibit 35

# ⅢORRISON FOERSTER

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA 90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI, NEW
YORK, PALO ALTO, SAN DIEGO, SAN
FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

July 9, 2025

Writer's Direct Contact
+1 (213) 892-5647
HHuttinger@mofo.com

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:    *Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s sixteenth set of document production, ARMQC_016, Bates numbered ARMQC_02783614 to ARMQC_02784119.

Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order.

The production will be sent via secure file transfer as a password-protected zip file. The password for ARMQC_016 zip file is **pb$A&d55o_9L**.

Sincerely,

*/s/ Henry Huttinger*

Henry Huttinger

**A258**

# Exhibit 36

# ШORRISON FOERSTER

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA 90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI, NEW
YORK, PALO ALTO, SAN DIEGO, SAN
FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

Writer's Direct Contact
+1 (213) 892-5647
HHuttinger@mofo.com

July 11, 2025

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:    *Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s eighteenth set of document production, ARMQC_018, Bates numbered ARMQC_02784205 to ARMQC_02785245.

Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order.

The production will be sent via secure file transfer as a password-protected zip file. The password for ARMQC_018 zip file is **\*kiK0IQ5F5OH**.

Sincerely,

*/s/ Henry Huttinger*

Henry Huttinger

**A260**

# Exhibit 37

**ᴍORRISON FOERSTER**

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA  90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI, NEW
YORK, PALO ALTO, SAN DIEGO, SAN
FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

Writer's Direct Contact
+1 (213) 892-5647
HHuttinger@mofo.com

July 11, 2025

Via E-Mail

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

　　　　Re:　　*Qualcomm Inc. v. Arm Holdings Plc., C.A. No. 24-00490-MN (D. Del.)*

Dear Counsel:

Today you will receive Arm Ltd.'s nineteenth set of document production, ARMQC_019, Bates numbered ARMQC_02785246 to ARMQC_02785278.

Please note that documents in this production have been designated Confidential or Highly Confidential—Attorneys' Eyes Only, pursuant to the parties' Stipulated Protective Order.

The production will be sent via secure file transfer as a password-protected zip file.  The password for ARMQC_019 zip file is **VvW#E/ml?@hJ**.

Sincerely,

*/s/ Henry Huttinger*

Henry Huttinger

**A262**

# Exhibit 38

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

## ARM INITIAL PRIVILEGE LOG

| Privilege Log ID | M-Master Date | Author | RECIPIENT_TO | RECIPIENT_CC | RECIPIENT_BCC | R-Privilege Asserted | Privilege Description |
|---|---|---|---|---|---|---|---|
| ARMQC_PLOG_00000001 | | | | | | | Defendant Arm Holdings PLC f/k/a Arm Ltd. ("Arm") hereby incorporates by reference its privilege logs served on September 18, 2023, May 10, 2024, and July 9, 2024 in the matter Arm Ltd. v. Qualcomm Inc., et al., C.A. No. 22-1146-MN (D. Del.) |
| ARMQC_PLOG_00000002 | 12/10/2018 23:39 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000003 | 12/10/2018 23:39 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000004 | 12/13/2018 0:36 | Chen, Jennifer ESQ | | | | Attorney Client | Draft letter containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000005 | 12/13/2018 0:36 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000006 | 12/13/2018 6:04 | Chen, Jennifer ESQ | | | | Attorney Client | Draft letter containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000007 | 1/4/2019 19:15 | Webster, Kristin | Stokes, Ed; Chen, Jennifer ESQ; Couillard, Lynn | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. Email containing a request for confidential legal advice of Jennifer Chen ESQ regarding contract issues. |
| ARMQC_PLOG_00000008 | 1/5/2019 4:48 | Couillard, Lynn | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000009 | 1/5/2019 4:56 | Couillard, Lynn | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding contract issues. |
| ARMQC_PLOG_00000010 | 1/5/2019 10:59 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding contract issues. |
| ARMQC_PLOG_00000011 | 1/7/2019 20:56 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000012 | 1/8/2019 18:42 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000013 | 1/9/2019 1:48 | Couillard, Lynn | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000014 | 1/10/2019 17:32 | Chen, Jennifer ESQ | Couillard, Lynn | | | Attorney Client | Email containing legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000015 | 1/10/2019 17:32 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement relaying legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000016 | 1/10/2019 17:43 | Couillard, Lynn | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000017 | 1/16/2019 18:34 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding contract issues. |
| ARMQC_PLOG_00000018 | 1/16/2019 18:34 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |

# Exhibit 39

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

**ARM FIRST SUPPLEMENTAL INITIAL PRIVILEGE LOG**

| Privilege Log ID | M-Master Date | Author | RECIPIENT_TO | RECIPIENT_CC | RECIPIENT_BCC | R-Privilege Asserted | Privilege Description |
|---|---|---|---|---|---|---|---|
| | | | Defendant Arm Holdings PLC (N/k/a Arm Ltd. ("Arm") hereby incorporates by reference its privilege logs served on September 18, 2023, May 10, 2024, and July 9, 2024 in the matter Arm Ltd. v. Qualcomm Inc. et al, C.A. No. 22-1146-MN (D. Del.) | | | | |
| ARMQC_PLOG_00000001 | 12/10/2018 23:39 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000002 | 12/10/2018 23:39 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000003 | 12/13/2018 0:36 | Chen, Jennifer ESQ | | | | Attorney Client | Draft letter containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000004 | 12/13/2018 0:36 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000005 | 12/13/2018 6:04 | Chen, Jennifer ESQ | | | | Attorney Client | Draft letter containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000006 | 12/13/2018 6:04 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000007 | 1/4/2019 19:15 | Webster, Kristin | | | | Attorney Client | Email containing a request for confidential legal advice of Jennifer Chen ESQ regarding contract issues. |
| ARMQC_PLOG_00000008 | 1/5/2019 4:48 | Couillard, Lynn | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000009 | 1/5/2019 4:56 | Couillard, Lynn | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding contract issues. |
| ARMQC_PLOG_00000010 | 1/7/2019 10:59 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding contract issues. |
| ARMQC_PLOG_00000011 | 1/7/2019 20:56 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000012 | 1/8/2019 18:42 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000013 | 1/9/2019 1:48 | Couillard, Lynn | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000014 | 1/10/2019 17:32 | Chen, Jennifer ESQ | Couillard, Lynn | | | Attorney Client | Email containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000015 | 1/10/2019 17:32 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement relaying legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000016 | 1/10/2019 17:43 | Couillard, Lynn | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000017 | 1/16/2019 18:34 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding contract issues. |
| ARMQC_PLOG_00000018 | 1/16/2019 18:34 | Chen, Jennifer ESQ | Stokes, Ed; Chen, Jennifer ESQ; Couillard, Lynn | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |

# Exhibit 40

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

**ARM SECOND SUPPLEMENTAL INITIAL PRIVILEGE LOG**

Defendant Arm Holdings PLC f/k/a Arm Ltd. ("Arm") hereby incorporates by reference its privilege logs served on September 18, 2023, May 10, 2024, and July 9, 2024 in the matter Arm Ltd. v. Qualcomm Inc. et al., C.A. No. 22-1146-MN (D. Del.)

| Privilege Log ID | H-Master Date | Author | RECIPIENT-TO | RECIPIENT-CC | RECIPIENT-BCC | R. Privilege Asserted | Privilege Description |
|---|---|---|---|---|---|---|---|
| ARMQC_PLOG_00000001 | 12/10/2018 23:39 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000002 | 12/10/2018 23:39 | Chen, Jennifer ESQ | | | | Attorney Client | Draft letter containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000003 | 12/13/2018 0:36 | Chen, Jennifer ESQ | | | | Attorney Client | Draft letter containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000004 | 12/13/2018 0:36 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000005 | 12/13/2018 6:04 | Chen, Jennifer ESQ | | | | Attorney Client | Draft letter containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000006 | 12/13/2018 6:04 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000007 | 1/4/2019 19:15 | Webster, Kristin | Stokes, Ed; Chen, Jennifer ESQ; Couillard, Lynn | | | Attorney Client | Email containing a request for confidential legal advice of Jennifer Chen ESQ regarding contract issues. |
| ARMQC_PLOG_00000008 | 1/5/2019 4:48 | Couillard, Lynn | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000009 | 1/5/2019 4:56 | Couillard, Lynn | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding contract issues. |
| ARMQC_PLOG_00000010 | 1/7/2019 10:59 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding contract issues. |
| ARMQC_PLOG_00000011 | 1/7/2019 20:56 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000012 | 1/8/2019 18:42 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000013 | 1/9/2019 1:48 | Couillard, Lynn | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000014 | 1/10/2019 17:32 | Chen, Jennifer ESQ | Couillard, Lynn | | | Attorney Client | Email containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000015 | 1/10/2019 17:32 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement relaying legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000016 | 1/10/2019 17:43 | Couillard, Lynn | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |
| ARMQC_PLOG_00000017 | 1/16/2019 18:34 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding contract issues. |
| ARMQC_PLOG_00000018 | 1/16/2019 18:34 | Chen, Jennifer ESQ | | | | Attorney Client | Draft agreement containing a provision of legal advice of Jennifer Chen ESQ regarding licensing issues. |

# Exhibit 41

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
　　a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC.,
　　a Delaware corporation,

　　　　　　　　Plaintiffs,

　　　　v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
　　a U.K. corporation,

　　　　　　　　Defendant.

C.A. No. 24-490-MN

**CONFIDENTIAL**

## ARM'S RESPONSES & OBJECTIONS TO QUALCOMM'S FIRST SET OF REQUEST FOR ADMISSIONS (NOS. 1-28)

Pursuant to Federal Rules of Civil Procedure 26 and 36 and the Local Rules for the United States District Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby objects and responds to Plaintiffs' Qualcomm Inc. and Qualcomm Technologies, Inc. (collectively, "Qualcomm") First Set of Requests for Admission, Nos. 1-28 ("Requests").

### GENERAL OBJECTIONS

Arm makes the following general objections to Qualcomm's Requests, which apply to each Request regardless of whether the general objections are specifically incorporated into the specific objections and responses below.

1.　　Arm objects to each Request to the extent that it purports to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

2.　　Arm objects to the "Definitions" and "Instructions" to the extent that they purport to alter the plain meaning and/or scope of any specific request, on the ground that such alteration

**A270**

**REQUEST FOR ADMISSION NO. 15:**

Admit that Qualcomm requested licensing offers for Arm Implementation Cores codenamed ███████████████ in April and August 2024.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Arm objects to this Request as vague and ambiguous as to the terms "requested" and "licensing offers." Arm further objects to this Request to the extent it calls for a legal conclusion. Arm further objects to this Request as containing multiple requests. Subject to and without wavier of its general and specific objections, Arm responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 16:**

Admit that Qualcomm has requested to renew licensing offers for Arm Implementation Cores prior to its requests for Arm Implementation Cores codenamed ██████████ ██████.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Arm objects to this Request as vague and ambiguous as to the terms "licensing offers for Arm Implementation Cores prior to its requests for Arm Implementation Cores codenamed ████████████████ Arm further objects to this Request to the extent it calls for a legal conclusion. Arm further objects to this request as containing multiple requests. Arm further objects to this request as seeking information that is irrelevant to the claims and defenses of the parties, as "offers for Arm Implementation Cores" other than ██████████████ are not the subject of Qualcomm's allegations. Based on the foregoing objections, Arm maintains that no response is required, but to the extent a response is required: Denied.

**REQUEST FOR ADMISSION NO. 17:**

Admit that Qualcomm notified Arm that it had violated ████████ of the Qualcomm TLA on September 20, 2024.

12

**A271**

**RESPONSE TO REQUEST FOR ADMISSION NO. 17**:

Arm objects to this Request as vague and ambiguous as to the term "notified" and "violated." Arm further objects to this Request to the extent it calls for a legal conclusion. Subject to and without wavier of its general and specific objections, Arm responds as follows: Admitted that Qualcomm sent Arm a letter dated September 20, 2024 regarding █████████ of the TLA, but denied that the letter is accurate or that Arm violated █████████ of the TLA.

**REQUEST FOR ADMISSION NO. 18**:

Admit that Arm failed to cure any violation of █████████ of the Qualcomm TLA within █ days of receiving notice on September 20, 2024.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18**:

Arm objects to this Request as vague and ambiguous as to the terms "failed to cure," "any violation," and "receiving notice." Arm further objects to this Request to the extent it calls for a legal conclusion. Subject to and without wavier of its general and specific objections, Arm responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 19**:

Admit that Arm failed to provide to Qualcomm licensing offers for Arm Implementation Cores codenamed █████████████████ until October 23, 2024.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19**:

Arm objects to this Request as vague and ambiguous as to the terms "provide" and "licensing offers." Arm further objects to this Request to the extent it calls for a legal conclusion. Arm further objects to this request as containing multiple requests. Arm further objects to this Request as duplicative of other Requests. Subject to and without wavier of its general and specific objections, Arm responds as follows: Denied.

13

**A272**

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

18

**A273**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

| | |
|---|---|
| Jack B. Blumenfeld | Ruby J. Garrett |
| Jennifer Ying | Adam L. Basner |
| Travis Murray | Eric C. Westerhold |
| MORRIS, NICHOLS, ARSHT | PAUL, WEISS, RIFKIND, |
| & TUNNELL LLP | WHARTON & GARRISON LLP |
| 1201 North Market Street | 2001 K Street, NW |
| P.O. Box 1347 | Washington, DC 20006 |
| Wilmington, DE 19899 | rjgarrett@paulweiss.com |
| jblumenfeld@morrisnichols.com | abasner@paulweiss.com |
| jying@morrisnichols.com | ewesterhold@paulweiss.com |
| tmurray@morrisnichols.com | |

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A274**

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A275**

# Exhibit 42

| | |
|---|---|
| **From:** | Ying, Jennifer |
| **To:** | ycst_arm_qualcomm; MoFo_Arm_QCOM; #KE-ARM-Qualcomm |
| **Cc:** | GRP-QCvARM; Murray, Travis; Yenerall, Ben; kdunn@dirllp.com; William Isaacson; mzappala@dirllp.com |
| **Subject:** | RE: Qualcomm/Arm - C.A. No. 24-490 - Stipulation re Caption and Joinder |
| **Date:** | Monday, July 7, 2025 11:16:02 AM |
| **Attachments:** | Qualcomm _ ARM 24-490 - Stipulation to Amend Caption and Join Arm Ltd..docx |

Counsel,

I am following up on our email from July 2 to which we have yet to receive a response.  Please let us know if Arm consents to the proposed stipulation (re-attached here).  We remain available to discuss if needed.

Thank you
Jennifer

**From:** Ying, Jennifer
**Sent:** Wednesday, July 2, 2025 3:04 PM
**To:** ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>; MoFo_Arm_QCOM
<MoFo_Arm_QCOM@mofo.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Murray, Travis <tmurray@morrisnichols.com>;
Yenerall, Ben <byenerall@morrisnichols.com>; kdunn@dirllp.com; William Isaacson
<wisaacson@dirllp.com>; mzappala@dirllp.com
**Subject:** Qualcomm/Arm - C.A. No. 24-490 - Stipulation re Caption and Joinder

Counsel,

Based on the information learned from Mr. Collins deposition on Monday regarding Arm Holdings plc and Arm Limited, please see the attached for a draft stipulation to amend the caption and to join Arm Limited as a defendant to the action.

Please let us know if Arm is agreeable to this stipulation. We are available to discuss if needed.

Best,
Jennifer Ying

**A277**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>   a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>   a Delaware corporation, | ) ) ) ) ) | |
|         Plaintiffs, | ) ) | |
|      v. | ) ) | C.A. No. 24-490 (MN) |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>   a U.K. corporation, | ) ) ) | |
|         Defendant. | ) ) | |

**STIPULATION AND [PROPOSED] ORDER TO AMEND CAPTION
AND JOIN ARM LTD. AS A DEFENDANT**

WHEREAS, on April 18, 2024, Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Incorporated (collectively, "Qualcomm") filed a Complaint (D.I. 1) against Defendant Arm Holdings plc, f/k/a Arm Ltd. ("Arm Holdings plc");

WHEREAS, Qualcomm filed a Second Amended Complaint (D.I. 137) and Arm Holdings plc filed a partial motion to dismiss (D.I. 232) and Answer (D.I. 234) on June 17, 2025;

WHEREAS, Qualcomm and Arm Holdings plc have served and responded to various written discovery requests and have noticed and taken depositions;

WHEREAS, in the course of recent discovery, Qualcomm has learned that Arm Ltd. still exists as a separate entity and is a subsidiary of Arm Holdings plc;

WHEREAS, Qualcomm and Arm Holdings plc seek to amend the above-captioned action to remove the "f/k/a" qualifier and individually name as defendants Arm Holdings plc and Arm Ltd.; and

WHEREAS, counsel for Arm Holdings plc confirm that they will represent Arm Holdings plc and Arm Ltd. as defendants in this Action;

**A278**

NOW THEREFORE, Qualcomm, Arm Holdings plc, and Arm Ltd., by and through their respective undersigned counsel in the above-captioned action, and subject to the approval of the Court, hereby stipulate as follows:

1. Arm Ltd. consents to be joined as a Defendant pursuant to Fed. R. Civ. P. 19(a)(1) and counsel for Arm Ltd. accepts service of this stipulation.

2. All pleadings filed in the Action on behalf of Qualcomm and against Arm Holdings plc in the above-captioned action are also deemed to be made and served against Arm Ltd.

3. All discovery requests served on behalf of Qualcomm and against Arm Holdings plc in the above-captioned action are also deemed to be served against Arm Ltd., and all responses and objections served by Arm Holdings plc and discovery requests served by Arm Holdings plc are also deemed to have been served by Arm Ltd.

4. All pleadings, motions, notices, and any other submissions made on behalf of Arm Holdings plc are also deemed to be made on behalf of Arm Ltd., including but not limited to the partial motion to dismiss (D.I. 232) and Answer (D.I. 234) filed on June 17, 2025.

5. Arm Ltd. agrees to be bound, effective immediately, by all existing orders of the Court in this action.

6. Upon entry of this stipulated order, the case caption for the above-captioned action shall be amended as follows:

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED, )
    a Delaware corporation; and )
QUALCOMM TECHNOLOGIES, INC., )
    a Delaware corporation, )
                            )
              Plaintiffs, )
                            )
       v. )  C.A. No. 24-490 (MN)
                            )
ARM HOLDINGS PLC, )
    a U.K. corporation; and )
ARM LTD., )
    a U.K. corporation, )
                            )
          Defendants. )

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/

_____

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

July 30, 2025

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/

_____

Anne Shea Gaza (#4093)
Robert M. Vrana (#5666)
Samantha G. Wilson (#5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendants*

**A280**

SO ORDERED this _____ day of _____, 2025.

_____
UNITED STATES DISTRICT JUDGE

**A281**



21 August 2025

Analog Devices, Inc.
Attn: Janene Asgeirsson, Chief Legal Officer
One Analog Way
Wilmington, MA 01887

Analog Devices, Inc.
Attn: Engineering Enablement
One Analog Way
Wilmington, MA 01887

**Arm Ltd**
5707 Southwest Pkwy
Bld 1 Suite 100
Austin, TX  78735

T +1 (973) 896-8902
arm.com

Dear Ms. Asgeirsson:

I write on behalf of Arm Ltd. ("Arm") regarding discovery requests from Qualcomm seeking

Please contact me at phillip.price@arm.com or (973) 896-8902 if you have any questions.

Sincerely,

Phillip Price
Senior Director and Head of Litigation

**A282**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,<br><br>        Defendant. | C.A. No. 24-490-MN<br><br>**HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY**<br><br>**FILED UNDER SEAL** |

**DEFENDANT ARM HOLDINGS PLC'S LETTER BRIEF TO SPECIAL MASTER RYCHLICKI OPPOSING PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

Dated: August 7, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A283**

adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

**A284**

Dear Special Master Rychlicki:

Nearly five months after the 3/14/2025 deadline to amend, Qualcomm seeks to amend its complaint for the *third time* to add a new defendant, Arm Ltd.—Qualcomm's counterparty to the 2013 agreements it alleges Arm breached. Qualcomm sued the wrong party, Arm Holdings plc, but even minimal diligence would have revealed Arm Holdings is not Arm Ltd. Arm Holdings called Arm Ltd. its "wholly owned subsidiary" in its 2023 and 2024 SEC filings, Ex. 1 at ii, 12, 82; Ex. 2 at 54-55, and repeatedly told Qualcomm since June 2024 that Arm Ltd. and Arm Holdings are different. Exs. 3-6. Yet, Qualcomm did nothing. Arm opposes Qualcomm's untimely motion, which fails to establish "good cause" under Rule 16.

That is dispositive, but even if Qualcomm is found to satisfy Rule 16, the Court should deny Qualcomm's motion under Rule 15. Having known about Arm Ltd. since before it initiated this case, Qualcomm unduly delayed this motion and instead filed three Complaints naming Arm Holdings as the sole defendant, despite Arm repeatedly clarifying the entities' relationship. If granted, Qualcomm's motion would prejudicially add a new defendant *after* fact discovery closed and *after* Qualcomm repeatedly represented it was pursuing claims against Arm Holdings only. Qualcomm's undue delay and the resulting prejudice warrants denial.

Finally, the Court should deny Qualcomm's motion for not explaining how it could satisfy Rule 20 by joining Arm Ltd. with Arm Holdings as defendants. Arm Holdings was not a party to either of the contracts at-issue in Qualcomm's breach-of-contract claims, nor was it a party to the *Arm v. Qualcomm* litigation at-issue in Qualcomm's tortious-interference claims, and Qualcomm has not explained whether or how it seeks to assert claims against these entities "jointly, severally, or in the alternative" under Rule 20.

## Qualcomm Has Not Satisfied Rule 16

The amendment deadline passed on 3/14/2025. Ex. 7 ¶2. Accordingly, Qualcomm must demonstrate good cause, Fed. R. Civ. P. 16(b)(4), and must "meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard." *Premier Comp Sols. v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). "Rule 16(b)(4) focuses on the moving party's burden to show due diligence." *Race Tires Am. v. Hoosier Racing Tire*, 614 F.3d 57, 84 (3d Cir. 2010). "Courts presume a party lacks diligence if [it] had knowledge of the facts supporting its proposed amendment before the deadline to amend." *Cytiva Sweden Ab v. Bio-Rad Lab'ys*, 2021 WL 431508, at *1 (D. Del. Feb. 8, 2021). Qualcomm cannot meet its burden.

Qualcomm knew about Arm Ltd. for years, yet repeatedly chose not to name it as a defendant. Qualcomm's contract claims concern two agreements (ALA and TLA) Qualcomm executed with Arm Ltd. on 5/31/2013, and annexes thereto that also list Arm Ltd. Exs. 8-9, 10-14. Qualcomm's tortious-interference claim arises from allegations Arm Ltd. made concerning a separate suit that Arm Ltd. initiated against Qualcomm in 2022, *Arm v. Qualcomm*, No. 22-cv-1146 (D. Del.). Ex. 17 ¶¶189-203. That case remains ongoing and Arm Ltd. has never identified Arm Holdings as its successor, something Arm Ltd. would have done if it renamed itself. Yet, in each of Qualcomm's three Complaints here, Qualcomm chose not to name Arm Ltd. as a defendant, but instead named only Arm Holdings, which Qualcomm erroneously described as "f/k/a Arm Ltd." Exs. 15-17.

1

**A285**

There should have been no confusion that Arm Ltd. and Arm Holdings are distinct entities. Seven months before Qualcomm filed suit, Arm Holdings publicly filed a SEC registration statement for its IPO. Arm Holdings told the public that "Arm Holdings plc [is] the ultimate holding company for Arm Limited," that "Arm Limited" is a "wholly-owned subsidiary of Arm Holdings Limited," and that Arm Holdings "changed its name from Arm Holdings Limited to Arm Holdings plc." Ex. 1 at ii, 12, 82. Those are unequivocal statements that Arm Holdings is not simply Arm Ltd. by a different name. The statement further disclosed that "Arm Holdings plc is a holding company which, since formation, *has not conducted any operations*," which was another indication Arm Holdings could not possibly be the entity that allegedly breached contracts and committed torts. *Id*. at 82. Arm Holdings then publicly filed its first SEC annual report in May 2024, a month after Qualcomm filed suit and ten months before the March 2025 amendment deadline. Arm Holdings reiterated that, as part of the IPO, "Arm Limited became a wholly owned subsidiary of the holding company, Arm Holdings plc." Ex. 2 at 54-55. Qualcomm continued conducting business with "Arm Ltd.," not Arm Holdings, after the IPO. Ex. 18. Exercising minimal diligence, Qualcomm could have discovered it sued the wrong party long before March 2025.

But Qualcomm did not even need to skim the public record to learn this. From this case's beginning, when Arm served its 6/12/2024 Corporate Disclosure Statement, Arm told Qualcomm, unambiguously, that "Arm Holdings plc…is not formerly known as Arm Ltd." Ex. 3 at 1. In Arm's November 2024 Answer, Arm again told Qualcomm that "Arm denies that Arm Holdings plc was formerly known as Arm Ltd.," and Arm Ltd. "is a wholly owned subsidiary of Arm Holdings plc." Ex. 4 ¶¶20, 36. Qualcomm asked no questions and served no discovery to learn more. Instead, Qualcomm subsequently amended its complaint *twice* without naming Arm Ltd. Qualcomm's knowledge of the relevant facts well before the deadline creates a presumption it did not act diligently. *Cytiva*, 2021 WL 431508, at *1.

Presumption or not, Qualcomm did not diligently pursue amendment. In *Race Tires*, the plaintiff sought to amend nearly five months after the deadline and over one year after filing suit. 614 F.3d at 72, 84. The district court denied the motion under Rule 16(b)(4). *Id*. at 84-85. The Third Circuit affirmed, noting it "was the fourth time that [plaintiff] desired to amend its complaint," and the plaintiff previously knew the information forming the basis of its motion. *Id*. Nothing justifies treating Qualcomm more leniently. Qualcomm's motion to amend its complaint (for the third time) comes nearly five months after the deadline, and over fifteen months after Qualcomm filed suit. Qualcomm always had available to it the facts necessary to uncover it had not sued Arm Ltd., its contractual counter-party. Having repeatedly ignored those facts, Qualcomm cannot satisfy Rule 16's "good cause" requirement, and the Court should deny its motion.

Qualcomm cannot blame Arm. It is untrue that "Arm never asserted that Qualcomm sued the wrong party" "[u]ntil recently." Mot. at 1. Arm first notified Qualcomm of its incorrect identification of "Arm Holdings plc f/k/a Arm Ltd." over a year ago. Ex. 3. Qualcomm still chose to pursue Arm Holdings only. Qualcomm now claims it "understood [Arm's statements] as Arm merely clarifying [Arm's] formal corporate structure." Mot. at 1. Qualcomm should have asked about those clarifications and done its own diligence to confirm it sued the correct entity. *Villa v. Sw. Credit Sys.,* 2020 WL 3808911, at *3-*4 (W.D.N.Y. June 10, 2020), *R&R adopted*, 2020 WL 3802936 (July 7, 2020).

2

**A286**

There is likewise nothing confusing about the definitions in Arm Holdings' IPO prospectus. Qualcomm contends the use of "we," "us," and "our" led Qualcomm to believe Arm Holdings was the relevant operating entity. But as Qualcomm concedes, the IPO prospectus defined those terms as "Arm Holdings plc and its consolidated subsidiaries." Ex. 19 at ii. "[C]onsolidating the activities of a subsidiary into the parent's reports is a common business practice" in SEC filings, *Khatib v. All. Bankshares*, 846 F. Supp. 2d 18, 33 (D.D.C. 2012), because GAAP "require[s] parent corporations to consolidate subsidiaries" in those filings, *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft*, 751 F.2d 117, 121 n.3 (2d Cir. 1984). Other companies follow this same practice. *E.g.*, Ex. 20 at 7; Ex. 21 at 38. Such statements *do not* mean the parent (Arm Holdings) conducts the described global operations. Qualcomm should know this—it follows the same practice. Ex. 22 at 6. Arm's prospectus should have dispelled any doubt for a sophisticated company represented by sophisticated counsel.

Qualcomm's grab-bag of other excuses is equally meritless. Qualcomm cites instances where Arm purportedly "continued seemingly to represent that Qualcomm had, in fact, named the correct entity as Defendant[.]" Mot. at 1-3. This ignores Arm's *explicit* contrary statements and highlights irrelevant instances where Arm repeated Qualcomm's erroneous case caption. Qualcomm notes Arm did not raise the entity issue in Arm's motions to dismiss, but Arm's motions must take the complaint's allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Qualcomm asserts Arm failed to raise this issue in its response to Interrogatory 12, but Arm's interrogatory response incorporates by reference its most recent Answer, which clearly identifies Qualcomm's error. Ex. 6 at 3; Ex. 5 at 39, ¶40. Qualcomm, in any event, first served Interrogatory 12 on 6/9/2025, two months after the deadline, so Arm's response could not have factored into Qualcomm's decision not to amend earlier.

Qualcomm cannot hide behind the June 2025 deposition of Spencer Collins either. Qualcomm identifies no relevant facts it supposedly learned during his deposition that were not previously available to Qualcomm. Mot. at 3-4. Qualcomm identifies his statement that he would "███████ ████████" to determine which Arm entity has obligations under the 2013 ALA and TLA and had no "████" on which entity Qualcomm should have named as a defendant. *Id*. That hardly excuses Qualcomm's lack of diligence.

This case is nothing like Qualcomm's cases. *Ohana Enters. v. Mourer Foster* and *Clark v. Blackfoot-Bey* involved amendments based on information first uncovered during discovery that could not have been discovered earlier. 2024 WL 640753, at *4, *5 (D.N.J. Feb. 15, 2024); 2012 WL 5383321, at *5 (E.D. Pa. Nov. 1, 2012). *PBM Prods. v. Mead Johnson Nutrition* did not involve Rule 16, let alone find good cause existed, but rather applied Rule 15. 2009 WL 4665746, at *1-*2 (E.D. Va. Dec. 1, 2009). Qualcomm knew the basis for this motion well before the deadline, yet needlessly delayed. That is not good cause.

## Qualcomm Has Not Satisfied Rule 15

Qualcomm's failure to satisfy Rule 16's demanding standard is reason enough to deny its motion. The Court should also deny Qualcomm's motion under Rule 15. "A party that has established good cause pursuant to Rule 16(b)(4) still must meet the requirements of Rule 15 to amend its pleadings." *Cytiva*, 2021 WL 431508, at *2. "[A] District Court may deny a motion to amend a complaint if '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives,

(2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" *Parker v. F.D.I.C.*, 447 F. App'x 332, 337 (3d Cir. 2011). "Delay may become undue when a movant has had previous opportunities to amend a complaint," and "the question of undue delay requires that [the Court] focus on the movant's reasons for not amending sooner." *Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir. 2001).

Qualcomm unduly delayed seeking to name Arm Ltd. Courts in this Circuit routinely deny similar Rule 15 motions. In *Lorenz v. CSX Corp.*, the Third Circuit affirmed denial of the plaintiff's motion to amend because "[m]ost of the facts were available to plaintiff…before she filed her original complaint…, and probably all of them were available when she amended her complaint," and the plaintiff's "delay was unreasonable" because she "had numerous opportunities to correct any deficiencies…but failed to take advantage of them." 1 F.3d 1406, 1414 (3d Cir. 1993). In *Cureton*, the Third Circuit affirmed denial of leave to amend because the "factual information on which the proposed amendment relied was known" before the motion to amend, which came over a year after the complaint. 252 F.3d at 273-74. And in *USX v. Barnhart*, the Third Circuit affirmed denial of leave to amend where the plaintiff had notice of the supporting facts "prior to filing both the original complaint and the first amended complaint." 395 F.3d 161, 169 (3d Cir. 2004). Here, Qualcomm knew or should have known the proper relationship between Arm Holdings and Arm Ltd. before it filed suit, and certainly should have understood that relationship when it filed its December 2024 First Amended Complaint and sought to file its Second Amended Complaint in March 2025. Qualcomm's delay until after fact discovery closed was undue and threatens to prejudice Arm Ltd., who would be added to this case after fact discovery closed.

After Arm repeatedly notified Qualcomm that Arm Holdings is not Arm Ltd.'s successor, Qualcomm repeatedly chose not to name Arm Ltd. as a defendant in its two amended complaints. Arm therefore reasonably expected that Qualcomm intended to pursue claims against Arm Holdings only. Qualcomm's post-fact-discovery attempt to impose liability onto an entity that has not been a party in this case is dilatory and prejudicial.

Qualcomm improperly cites the "misnomer rule." It is not "reasonable to conclude that [Qualcomm] had in mind the proper entity or person," and "merely made a mistake as to the name," as in *Zameska v. Seguros Ing Com. Am.*, 2005 WL 615749, at *1 (E.D. Pa. Mar. 15, 2005), because Arm repeatedly told Qualcomm about its corporate-entity relationship and Qualcomm thereafter repeatedly continued to pursue claims against Arm Holdings only in each subsequent complaint. None of Qualcomm's cases involved such deliberate conduct.

## <u>Qualcomm Failed To Explain How It Satisfies Rule 20</u>

Rule 20 applies when "any right to relief is asserted against [multiple defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2). Qualcomm has not explained how it would assert breach-of-contract and tortious-interference claims against Arm Holdings and Arm Ltd. "jointly, severally, or in the alternative," as Qualcomm's only counterparty to those contracts is Arm Ltd., not Arm Holdings, and only Arm Ltd. was a party to the -01146 case. Qualcomm failed to meet its burden of demonstrating joinder is proper under Rule 20. *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009).

4

**A288**

*** 

Arm has no objection to removing Qualcomm's erroneous statement that Arm Holdings was "f/k/a Arm Ltd.," but respectfully requests the Court deny Qualcomm's motion.

Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

Words: 2,370

5

**A289**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation<br><br>    Plaintiffs,<br><br>  v.<br><br>ARM HOLDINGS PLC, f/k/a, ARM LTD., a U.K. corporation<br><br>    Defendant. | C.A. No. 24-490-MN<br><br><br>**HIGHLY CONFIDENTIAL –**<br>**ATTORNEYS' EYES ONLY**<br><br>**FILED UNDER SEAL** |

**DECLARATION OF MATTEW J. MCINTEE IN SUPPORT OF DEFENDANT'S**
**LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI**
**OPPOSING PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

Dated: August 7, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A290**

reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

**A291**

I, Matthew J. McIntee, do hereby declare as follows:

I am an attorney with the law firm of Kirkland & Ellis LLP and serve as counsel in this action for Defendant Arm Holdings plc. I am licensed to practice in the District of Columbia and admitted *pro hac vice* to practice before this Court. I submit this declaration in support of Defendant's Letter to Special Master Helena C. Rychlicki Opposing Plaintiff's Motion for Leave to Amend. I have personal knowledge of the matters set forth below and have confirmed the authenticity of the exhibits in the remaining paragraphs.

1.       Attached as **Exhibit 1** is a true and correct copy of Form 424B4 for Arm Holdings PLC UK, dated September 13, 2023.

2.       Attached as **Exhibit 2** is a true and correct copy of May 2024 Annual Report, 20-F Arm Holdings PLC FY2024.

3.       Attached as **Exhibit 3** is a true and correct copy of D.I. 12, Arm's Corporate Disclosure Statement, dated June 12, 2024.

4.       Attached as **Exhibit 4** is a true and correct copy of D.I. 31, Arm's Initial Answer to Qualcomm's Complaint, dated November 13, 2024.

5.       Attached as **Exhibit 5** is a true and correct copy of D.I. 234, Arm's Answer to Qualcomm's Second Amended Complaint, dated June 17, 2025 [Confidential – Filed Under Seal].

6.       Attached as **Exhibit 6** is a true and correct copy of Arm's First Supplemental Responses and Objections to Qualcomm Third Set of Interrogatories, dated July 11, 2025 [Highly Confidential – Attorney's Eyes Only].

7.       Attached as **Exhibit 7** is a true and correct copy of D.I. 44, Scheduling Order, dated January 31, 2025.

1

**A292**

8.      Attached as **Exhibit 8** is a true and correct copy of ARM_00055357, dated May 31, 2013 [Confidential].

9.      Attached as **Exhibit 9** is a true and correct copy of ARM_00103918, dated May 31, 2013 [Confidential].

10.     Attached as **Exhibit 10** is a true and correct copy of ARM_00063298, dated May 29, 2013 [Confidential].

11.     Attached as **Exhibit 11** is a true and correct copy of QCARM_0338573, dated May 29, 2013 [Confidential].

12.     Attached as **Exhibit 12** is a true and correct copy of QCARM_0343954, dated June 19, 2020 [Confidential].

13.     Attached as **Exhibit 13** is a true and correct copy of ARMQC_02772333, dated October 17, 2019 [Confidential].

14.     Attached as **Exhibit 14** is a true and correct copy of ARMQC_02772366, dated October 17, 2019 [Confidential].

15.     Attached as **Exhibit 15** is a true and correct copy of D.I. 2, Qualcomm's Original Complaint, dated April 18, 2024 [Confidential – Filed Under Seal].

16.     Attached as **Exhibit 16** is a true and correct copy of D.I. 36, Qualcomm's First Amended Complaint, dated December 16, 2024 [Confidential – Filed Under Seal].

17.     Attached as **Exhibit 17** is a true and correct copy of D.I. 137, Qualcomm's Second Amended Complaint, dated June 3, 2025 [Confidential – Filed Under Seal].

18.     Attached as **Exhibit 18** is a true and correct copy of Qualcomm Purchase Order, dated April 17, 2024 [Confidential].

2

**A293**

19.    Attached as **Exhibit 19** is a true and correct copy of Arm Holdings Form F-1, dated August 21, 2023.

20.    Attached as **Exhibit 20** is a true and correct copy of Alphabet 2023 10-K.

21.    Attached as **Exhibit 21** is a true and correct copy of Anheuser-Busch 20-F.

22.    Attached as **Exhibit 22** is a true and correct copy of Qualcomm 2024 10-K.

I declare under the penalty of perjury that the forgoing is true and correct.


Executed at Washington, D.C., on this 7th day of August, 2025

*/s/ Matthew J. McIntee*
Matthew J. McIntee

3

**A294**

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on August 7, 2025, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A295**

Dated: August 7, 2025

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A296**

# Exhibit 1

Table of Contents

Filed Pursuant to Rule 424(b)(4)
Registration No. 333-274120

# 95,500,000 American Depositary Shares
# (Representing 95,500,000 Ordinary Shares)



This is an initial offering of American depositary shares ("ADSs") representing ordinary shares of Arm Holdings plc.

All of the ADSs to be sold in this offering are currently held by the selling shareholder identified in this prospectus. We are not selling any of the ADSs in this offering and will not receive any proceeds from the sale of the ADSs by the selling shareholder in this offering. Each ADS represents the right to receive one ordinary share, nominal value £0.001 per share, and may be evidenced by American depositary receipts ("ADRs").

Prior to this offering, there has been no public market for the ADSs or our ordinary shares. The initial public offering price per ADS is $51.00. Our ADSs have been approved for listing on the Nasdaq Global Select Market ("Nasdaq") under the symbol "ARM".

We are a "foreign private issuer" as defined under the U.S. federal securities laws and, as such, will be subject to reduced public company reporting and stock exchange governance requirements. See "Management and Executive Remuneration—Foreign Private Issuer Exemption" for additional information.

SoftBank Group Corp. ("SoftBank Group") is expected to beneficially own approximately 90.6% of our outstanding ordinary shares following the completion of this offering (or approximately 89.9% if the underwriters exercise in full their option to purchase additional ADSs from the selling shareholder). As a result of SoftBank Group's ownership, after the completion of this offering, we will be a "controlled company" within the meaning of Nasdaq rules. See "Management and Executive Remuneration—Controlled Company Status."

Advanced Micro Devices, Inc., Apple Inc., Cadence Design Systems, Inc., Google International LLC, Intel Corporation, MediaTek Inc.'s affiliated entities, NVIDIA Corporation, Samsung Electronics Co., Ltd., Synopsys, Inc. and TSMC Partners, Ltd. (collectively, the "Cornerstone Investors") have, severally and not jointly, indicated an interest in purchasing up to an aggregate of $735 million of the ADSs offered in this offering at the initial public offering price and on the same terms and conditions as the other purchasers in this offering. Because these indications of interest are not binding agreements or commitments to purchase, any of the Cornerstone Investors may determine to purchase more, fewer, or no ADSs in this offering, or the underwriters may determine to sell more, fewer, or no ADSs to any of the Cornerstone Investors. The underwriters will receive the same underwriting discount on any ADSs purchased by the Cornerstone Investors as they will from the other ADSs sold to the public in this offering.

**Investing in our ADSs involves a high degree of risk. Before buying any ADSs, you should carefully read the discussion of material risks of investing in our ADSs in "Risk Factors" beginning on page 21 of this prospectus.**

|  | PER ADS | TOTAL |
|---|---|---|
| Initial public offering price | $ 51.00 | $4,870,500,000 |
| Underwriting discounts and commissions | 1.02 | 97,410,000 |
| Proceeds, before expenses, to the selling shareholder | 49.98 | 4,773,090,000 |

The underwriters may also exercise their option to purchase up to an additional 7,000,000 ADSs from the selling shareholder at the initial public offering price, less the underwriting discounts and commissions, for 30 days after the date of the final prospectus. We will not receive any proceeds from the sale of such additional ADSs by the selling shareholder.

Raine Securities LLC is acting as our financial advisor in connection with this offering.

The underwriters expect to deliver the ADSs against payment in U.S. dollars to purchasers on or about September 18, 2023.

**Neither the Securities and Exchange Commission nor any U.S. state securities commission has approved or disapproved of these securities or passed upon the accuracy or adequacy of this prospectus. Any representation to the contrary is a criminal offense.**

| Barclays | Goldman Sachs & Co. LLC | | J.P. Morgan | Mizuho |

*(in alphabetical order)*

| BofA Securities | Citigroup | Deutsche Bank Securities | Jefferies |
| BNP PARIBAS | Credit Agricole CIB | MUFG | Natixis | Santander | SMBC Nikko |

| BMO Capital Markets | Daiwa Capital Markets America | Guggenheim Securities | HSBC | IMI - Intesa Sanpaolo | Independence Point Securities |
| KeyBanc Capital Markets | Loop Capital Markets | Ramirez & Co., Inc.    Rosenblatt | SOCIETE GENERALE | TD Cowen | Wolfe | Nomura Alliance |

The date of this prospectus is September 13, 2023.

**A298**

Table of Contents

**Neither we, the selling shareholder nor the underwriters have authorized anyone to provide you with information that is different from that contained in this prospectus or in any free writing prospectus we may authorize to be delivered or made available to you. Neither we, the selling shareholder nor the underwriters take any responsibility for, or provide any assurance as to the reliability of, any other information that others may give you. We, the selling shareholder and the underwriters are offering to sell ADSs and seeking offers to purchase ADSs only in the U.S. and certain other jurisdictions where offers and sales are permitted. The information contained in this prospectus is accurate only as of the date on the cover page of this prospectus, regardless of the time of delivery of this prospectus or any sale of ADSs.**

For investors outside the U.S.: Neither we, the selling shareholder nor any of the underwriters have taken any action to permit this offering or possession or distribution of this prospectus in any jurisdiction where action for that purpose is required, other than in the U.S. You are required to inform yourselves about and to observe any restrictions relating to this offering and the distribution of this prospectus.

We are incorporated under the laws of England and Wales and a majority of our outstanding securities is owned by non-U.S. residents. Under the rules of the U.S. Securities and Exchange Commission (the "SEC"), we are eligible for treatment as a "foreign private issuer." As a foreign private issuer, we will not be required to file periodic reports and financial statements with the SEC as frequently or as promptly as domestic registrants whose securities are registered under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

## ABOUT THIS PROSPECTUS

Prior to the completion of this offering, we underwent a corporate reorganization described under the section titled "Corporate Reorganization," pursuant to which Arm Limited became a wholly owned subsidiary of Arm Holdings Limited, a holding company with nominal assets and no liabilities, contingencies or commitments, which has not conducted any operations prior to this offering other than acquiring the entire issued share capital of Arm Limited. On September 1, 2023, Arm Holdings Limited re-registered as a public limited company and changed its name from Arm Holdings Limited to Arm Holdings plc.

Unless otherwise indicated or the context otherwise requires, in this prospectus, "Arm," the "Company," "we," "us" and "our" refer to (i) Arm Limited and its consolidated subsidiaries prior to the completion of our corporate reorganization, (ii) Arm Holdings Limited and its consolidated subsidiaries after the completion of our corporate reorganization and prior to the re-registration of Arm Holdings Limited as a public limited company and (iii) Arm Holdings plc and its consolidated subsidiaries after the re-registration of Arm Holdings Limited as a public limited company. See "Corporate Reorganization" and "Description of Share Capital and Articles of Association."

## NOTE REGARDING TRADEMARKS, TRADENAMES AND SERVICE MARKS

This prospectus includes trademarks, tradenames and service marks, certain of which belong to us and others that are the property of other organizations. Solely for convenience, trademarks, tradenames and service marks referred to in this prospectus appear without the ®, TM and SM symbols, but the absence of those symbols is not intended to indicate, in any way, that we will not assert our rights or that the applicable owner will not assert its rights to these trademarks, tradenames and service marks to the fullest extent under applicable law. We do not intend our use or display of other parties' trademarks, tradenames or service marks to imply, and such use or display should not be construed to imply, a relationship with, or endorsement or sponsorship of us by, these other parties.

ii

**A299**

Table of Contents

**Corporate Information**

Arm Holdings plc was incorporated as a private limited company with the legal name Arm Holdings Limited under the laws of England and Wales on April 9, 2018, with the company number 11299879. Arm Holdings Limited re-registered as a public limited company under the laws of England and Wales on September 1, 2023 and changed its name to Arm Holdings plc.

Arm Limited was incorporated as a private limited company with the legal name Widelogic Limited under the laws of England and Wales on November 12, 1990 with the company number 02557590. On December 3, 1990, Widelogic Limited changed its company name to Advanced RISC Machines Limited, and, on May 21, 1998, it changed its company name to Arm Limited (at which time it was a wholly owned subsidiary of Arm Holdings plc with the company number 02548782). Our business was initially operated through Arm Holdings plc with the company number 02548782, which was previously an independent publicly traded corporation until its acquisition in September 2016 by SoftBank Group. On March 19, 2018, as a part of a reorganization, Arm Holdings plc with the company number 02548782 re-registered as a private limited company and was renamed SVF HoldCo (UK) Limited, which became a subsidiary of SoftBank Vision Fund L.P. ("SoftBank Vision Fund"), which retained an approximate 25% interest in our company with the remainder beneficially held by SoftBank Group. In August 2023, a subsidiary of SoftBank Group acquired substantially all of SoftBank Vision Fund's interest in Arm Limited at a purchase price of approximately $16.1 billion, with the associated payments to be made in installments over a two-year period. The purchase price was established by reference to the terms of a prior contractual arrangement between the parties. Accordingly, prior to this offering, SoftBank Group beneficially owns substantially all of our outstanding shares. Our registered office is 110 Fulbourn Road, Cambridge, Cambridgeshire, CB1 9NJ, U.K., and the telephone number at that office is +44 (1223) 400 400.

The principal office for Arm Inc., our U.S. subsidiary, is located at 120 Rose Orchard Way, San Jose, CA 95134, and our telephone number at that office is +1 (408) 576-1500.

Our website address is www.arm.com. We have included our website address in this prospectus solely as an inactive textual reference. Information contained on, or that can be accessed through, our website is not incorporated by reference into this prospectus, and you should not consider information on our website to be part of this prospectus. Our agent for service of process in the United States is Arm, Inc.

**Corporate Reorganization**

Prior to the completion of this offering, we undertook a corporate reorganization pursuant to which Arm Holdings Limited acquired all the issued ordinary shares of Arm Limited. In connection with the corporate reorganization, the shareholders of Arm Limited exchanged each of the ordinary shares held by them in Arm Limited for newly issued ordinary shares of Arm Holdings Limited of the same class and in the same proportions as their previous shareholdings in Arm Limited. As a result, Arm Limited became a wholly-owned subsidiary of Arm Holdings Limited. On September 1, 2023, Arm Holdings Limited re-registered as a public limited company under the laws of England and Wales and changed its name from Arm Holdings Limited to Arm Holdings plc. The consolidated financial statements included in this prospectus do not show the effect of the corporate reorganization. See "Corporate Reorganization" for more information.

**Risk Factors Summary**

Our business is subject to a number of risks of which you should be aware before making an investment decision. You should carefully consider all of the information set forth in this prospectus and, in particular, should evaluate the specific factors set forth in the section titled "Risk Factors" before deciding whether to invest in our ADSs. Among these important risks are the following:

*Risks Relating to Our Business and Industry*

- Demand for our products and services primarily depends on trends in the semiconductor and electronics industries and the demand for the products of our customers and our customers' customers.

12

**A300**

Table of Contents

CORPORATE REORGANIZATION

On April 9, 2018, Arm Holdings Limited was incorporated as a wholly-owned subsidiary of Arm Limited under the laws of England and Wales with nominal assets and liabilities, contingencies and commitments. After consummating the corporate reorganization described herein, including the re-registration of Arm Holdings Limited as a public limited company, Arm Holdings plc became the ultimate holding company for Arm Limited. Arm Limited in turn was incorporated as a private company with limited liability under the laws of England and Wales on November 12, 1990.

Arm Holdings plc is a holding company which, since formation, has not conducted any operations other than activities incidental to the maintenance of its legal existence, the corporate reorganization and this offering. Investors in this offering will only acquire, and this prospectus only describes the offering of, ADSs representing ordinary shares of Arm Holdings plc. Ordinary shares of Arm Holdings plc will not be offered to investors as part of this offering.

The corporate reorganization took place in several steps, all of which were completed prior to the completion of this offering. We refer to these steps, which are discussed below, as our "corporate reorganization."

**Amendment of the Articles of Association of, and First Reorganization of Share Capital of, Arm Holdings Limited**

On August 20, 2023, Arm Holdings Limited amended its articles of association to permit its merger reserve to legally be used to pay up the shares allotted as a bonus issue, and to allow the creation of a new class of deferred shares (which carry no or extremely limited voting rights, and no right to share in the income or capital of Arm Holdings Limited). On August 21, 2023, Arm Holdings Limited undertook a reorganization of its share capital to sub-divide its share capital of 100 ordinary shares of £1.00 each into 100,000 ordinary shares of £0.001 each.

**Distribution of Ordinary Shares of Arm Holdings Limited by Arm Limited**

On August 21, 2023, Arm Limited distributed 100,000 ordinary shares of £0.001 each in the capital of Arm Holdings Limited (such number of shares together constituting 100% of the ordinary shares of Arm Holdings Limited) to Kronos II LLC, Arm Limited's majority shareholder immediately prior to the distribution. We refer to the shares of Arm Holdings Limited distributed to Kronos II LLC as the "Dividend Shares."

**Exchange of Ordinary Shares of Arm Limited for Shares of Arm Holdings Limited**

Following the completion of the distribution of the Dividend Shares, on August 21, 2023, Kronos II LLC transferred its entire shareholding in the capital of Arm Limited, being 1,025,233,999 ordinary shares of £0.001 each, to Arm Holdings Limited in exchange for receiving 1,025,133,999 newly issued ordinary shares of £0.001 each in the capital of Arm Holdings Limited, and SVF HoldCo (UK) Limited transferred its entire shareholding in the capital of Arm Limited, being one ordinary share of £0.001, to Arm Holdings Limited in exchange for receiving one newly issued ordinary share of £0.001 in the capital of Arm Holdings Limited. We refer to this as the "Share Exchange." Following the Share Exchange, the former holders of shares in Arm Limited held shares in Arm Holdings Limited of the same class and in the same proportions as their previous shareholdings in Arm Limited. Arm Limited became a wholly-owned subsidiary of Arm Holdings Limited as a result of the Share Exchange. As a result of the Share Exchange, an English company law merger reserve in Arm Holdings Limited was created.

**First Bonus Issue of Arm Holdings Limited**

Following the completion of the Share Exchange, on August 25, 2023, Arm Holdings Limited capitalized a portion of the amount standing to the credit of its merger reserve and applied such sums in paying up in full new

82

**A301**

# Exhibit 2

A302

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**FORM 20-F**

**(Mark One)**

☐ **REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR (g) OF THE SECURITIES EXCHANGE ACT OF 1934**

**OR**

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended March 31, 2024**

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**OR**

☐ **SHELL COMPANY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

Date of event requiring this shell company report _____

For the transition period from _____ to _____

**Commission File Number: 001-41800**

# Arm Holdings plc

(Exact name of registrant as specified in its charter)

**England and Wales**

(Jurisdiction of incorporation or organization)

**110 Fulbourn Road**
**Cambridge CB1 9NJ**
**United Kingdom**
**Tel: 44 (1223) 400 400**

(Address of principal executive offices)

**Spencer Collins**
**Arm Holdings plc**
**110 Fulbourn Road**
**Cambridge CB1 9NJ**
**United Kingdom**
**Tel: 44 (1223) 400 400**

(Name, Telephone, E-mail and/or Facsimile number and Address of Company Contact Person)

**Securities registered or to be registered pursuant to Section 12(b) of the Act:**

**A303**

*Information-E. Taxation-Material U.S. Federal Income Tax Considerations for U.S. Holders-Passive Foreign Investment Company Rules*" of this Annual Report.

***Changes and uncertainties in the tax system in the countries in which we have operations, could materially adversely affect our financial condition and results of operations, and reduce net returns to our shareholders.***

We conduct business globally and file income tax returns in multiple jurisdictions. Our consolidated effective income tax rate, and the tax treatment of our ADSs and ordinary shares, could be materially adversely affected by several factors, including: changing tax laws, regulations and treaties, or the interpretation thereof; tax policy initiatives and reforms under consideration (such as those related to the Inclusive Framework (as defined below), the European Commission's state aid investigations and other initiatives); the practices of tax authorities in jurisdictions in which we operate; and the resolution of issues arising from tax audits or examinations and any related interest or penalties. Such changes may include (but are not limited to) the taxation of operating income, investment income, dividends received or (in the specific context of withholding tax) dividends paid, or the stamp duty or SDRT treatment of our ADSs or ordinary shares.

The Organisation for Economic Co-Operation and Development ("OECD") and the G20 Inclusive Framework on Base Erosion and Profit Shifting (the "Inclusive Framework") have put forth two proposals-Pillar One and Pillar Two-that revise the existing profit allocation and nexus rules and ensure a minimal level of taxation. In July 2023, the U.K. enacted legislation to implement the OECD framework for Pillar Two, part of which went into effect January 1, 2024. A number of other countries where we do business, including the U.S., Japan, and many countries in the European Union, have implemented, or are considering implementing, changes in relevant tax, accounting and other laws, regulations and interpretations. The overall tax environment has made it increasingly challenging for multinational corporations to operate with certainty about taxation in many jurisdictions. In the U.S., various proposals to raise corporate income taxes are periodically considered, such as the Inflation Reduction Act, which introduced a 15% Corporate Alternative Minimum Tax beginning in 2023. These proposed and enacted changes in tax laws, treaties or regulations, or their interpretation or enforcement, could have a material adverse impact on our future tax positions.

We believe that our provision for income taxes is reasonable, but the ultimate tax outcome may differ from the amounts recorded in our financial statements and may materially affect our financial results in the period or periods in which such outcome is determined. We are unable to predict what tax reform may be proposed or enacted in the future or what effect such changes would have on our business, but such changes, to the extent they are brought into tax legislation, regulations, policies or practices in jurisdictions in which we operate, could increase the estimated tax liability that we have expensed to date and paid or accrued on our financial statements, and otherwise affect our financial position, future results of operations, cash flows in a particular period and overall or effective tax rates in the future in countries where we have operations, reduce post-tax returns to our shareholders and increase the complexity, burden and cost of tax compliance. Additionally, our future tax liability could be impacted by changes in accounting principles or changes in applicable tax jurisdictions.

In addition, we may periodically restructure our legal entities and if taxing authorities were to disagree with our tax positions in connection with any such restructurings, our tax liability could be materially affected. In connection with any restructuring we could also incur additional charges associated with consulting fees and other charges.

We carry out extensive research and development activities, and as a result, we benefit in the U.K. from the research and development expenditure credit ("RDEC") regime, which provides relief against U.K. corporation tax. Broadly, RDEC provides a tax credit currently equal to 20% of 'qualifying research and development expenditure' incurred from April 1, 2023 (the rate was previously 13% of qualifying research and development expenditure incurred from April 1, 2020 to March 31, 2023) by certain companies where certain criteria are met. To the extent a company cannot utilize the RDEC against U.K. corporation tax then certain rules apply that allow the RDEC to, among other things, reduce the tax liability of certain specified taxes (for example, value added tax or employee taxes), be surrendered to a group company, and to the extent it is not possible to utilize the RDEC in full, then the net tax credit is paid to the company by HMRC in cash. On February 22, 2024, the U.K. government enacted changes to its research and development tax relief legislation which apply for accounting periods beginning on or after April 1, 2024. These changes include the merger of the RDEC regime and the small and medium-sized enterprise regime into a single RDEC regime. The merged RDEC regime provides the same tax credit as under the old RDEC scheme (currently equal to 20% of 'qualifying research and development expenditure'). The enacted changes also restrict research and development relief where the research and development activity is subcontracted and takes place outside of the U.K.

**A304**

We also benefit from the U.K.'s "patent box" regime, which allows certain profits attributable to revenues from patented products (and other qualifying income) to be taxed at an effective corporation tax rate of 10%.

If, however, there are unexpected adverse changes to the RDEC or the "patent box" regime, or for any reason we are unable to qualify for such tax incentives, then our business, results of operations and financial condition may be adversely affected.

**Item 4. Information on the Company**

**A. *History and development of the company***

**Corporate Information**

The Company is a global leader in the semiconductor industry. The Company's principal operations are the licensing, marketing, research and development of microprocessors, systems IP, graphics processing units, physical IP and associated systems IP, software, tools and other related services.

Arm Holdings plc was incorporated as a private limited company with the legal name Arm Holdings Limited under the laws of England and Wales on April 9, 2018, with the company number 11299879. Arm Holdings Limited re-registered as a public limited company under the laws of England and Wales on September 1, 2023 and changed its name to Arm Holdings plc.

Arm Limited was incorporated as a private limited company with the legal name Widelogic Limited under the laws of England and Wales on November 12, 1990 with the company number 02557590. On December 3, 1990, Widelogic Limited changed its company name to Advanced RISC Machines Limited, and, on May 21, 1998, it changed its company name to Arm Limited (at which time it was a wholly owned subsidiary of Arm Holdings plc with the company number 02548782). Our business was initially operated through Arm Holdings plc with the company number 02548782, which was previously an independent publicly traded corporation until its acquisition in September 2016 by SoftBank Group. On March 19, 2018, as a part of a reorganization, Arm Holdings plc with the company number 02548782 re-registered as a private limited company and was renamed SVF HoldCo (UK) Limited, which became a subsidiary of SoftBank Vision Fund L.P. ("SoftBank Vision Fund"), which retained an approximate 25% interest in our company with the remainder beneficially held by SoftBank Group. In August 2023, a subsidiary of SoftBank Group acquired substantially all of SoftBank Vision Fund's interest in Arm Limited at a purchase price of approximately $16.1 billion, with the associated payments to be made in installments over a two-year period. The purchase price was established by reference to the terms of a prior contractual arrangement between the parties. Accordingly, prior to Arm's initial public offering, SoftBank Group beneficially owned substantially all of our outstanding shares.

Our registered office is 110 Fulbourn Road, Cambridge, Cambridgeshire, CB1 9NJ, U.K., and the telephone number at that office is +44 (1223) 400 400. The principal office for Arm Inc., our U.S. subsidiary, is located at 120 Rose Orchard Way, San Jose, CA 95134, and our telephone number at that office is +1 (408) 576-1500. Our website address is www.arm.com. We have included our website address in this Annual Report solely as an inactive textual reference. Information contained on, or that can be accessed through, our website is not incorporated by reference into this Annual Report, and you should not consider information on our website to be part of this Annual Report. Our agent for service of process in the United States is Arm, Inc.

For a discussion of our principal capital expenditures, refer to "*Item 5. Operating and Financial Review and Prospects-B. Liquidity and Capital Resources*", "*Item 4. Information on the Company-D. Property and Equipment*", "*Item 8. Financial Information-Note 8 - Property and Equipment, Net*" and "*Item 8. Financial Information-Note 9 - Leases*" in the Notes to the Consolidated Financial Statements included in this Annual Report.

The SEC maintains an Internet site that contains reports, proxy and information statements, and other information regarding issuers that file electronically with the SEC at www.sec.gov.

**Corporate Reorganization**

In September 2023, we completed a board approved corporate reorganization which involved (1) the shareholders of Arm Limited exchanging each of the ordinary shares held by them in Arm Limited for newly issued ordinary shares of Arm Holdings Limited; and (2) the re-registration of Arm Holdings Limited as a public limited company under the laws of

**A305**

England and Wales at which time its name was changed to Arm Holdings plc. This corporate reorganization was solely for the purpose of reorganizing our corporate structure, in which Arm Limited became a wholly owned subsidiary of the holding company, Arm Holdings plc. This transfer of equity resulted in the issuance of ordinary shares of Arm Holdings plc to shareholders in the same class and the same number of ordinary shares as their previous shareholding in Arm Limited. As a result of the corporate reorganization between entities under common control, our historical consolidated financial statements were retrospectively adjusted for the change in reporting entity. Therefore, the historical consolidated financial statements of Arm Limited became the historical consolidated financial statements of Arm Holdings plc as of the date of the corporate reorganization.

**Initial Public Offering**

The registration statement on Form F-1 relating to the IPO was declared effective on September 13, 2023 and our ADSs began trading on the Nasdaq Global Select Market under the ticker symbol "ARM" on September 14, 2023. On September 18, 2023, we completed the closing of the IPO. One of our shareholders sold an aggregate of 102,500,000 ADSs at a price of $51 per share, including the underwriters' full exercise of their option to purchase up to an additional 7,000,000 ADSs to cover over-allotments. We did not receive any proceeds from the sale of the ADSs in the IPO.

**B. Business Overview**

**Industry Background**

Semiconductors are indispensable to everyday life. In today's technology-driven world, semiconductors are the enablers of the devices and infrastructure that facilitate virtually everything people do. As almost all of the products and services people use every day rely on semiconductors. Manufacturing, logistics, city infrastructure, and building management also increasingly build their processes and services around semiconductor-enabled devices. As consumers and enterprises continue to demand more from their devices, we expect the pervasiveness of high-performance and energy-efficient semiconductors to continue to expand.

The world is becoming increasingly digital with the proliferation of smart, connected devices, such as smartphones, wearables, personal computers ("PCs"), tablets, and other electronic devices. Even everyday products like washing machines, thermostats, and utility meters are becoming more advanced. The market trend to make nearly all products smart and connected is not just limited to consumer electronics, but is also driving a wave of innovation across a broad range of end markets and use cases. For example, vehicles are effectively transforming into computers on wheels, factory floors are becoming increasingly automated with robotics, and retail shopping is evolving with the help of cashier-less checkout technology.

The massive expansion of data, advanced software applications, and AI are driving the need for high-performance compute capabilities. To address increasingly complex workloads, a key approach has been to increase the speed of a CPU and expand the number of processor cores per chip. Solely running an existing chip faster may deliver more compute performance, but increasing performance in this way results in higher energy costs, and may cause thermal limits to be exceeded. For example, individual servers are limited by their ability to dissipate heat energy, while whole data centers are limited by how much electricity is available to them. Mobile devices are limited by the energy stored in their batteries, while their instantaneous power is limited by thermal constraints. Furthermore, the transition to electric vehicles is increasing pressure on automakers to consider the power consumption and thermal management of vehicle electronics. In addition, enterprises are increasingly mindful of environmental sustainability, which is driving a need for more efficient alternatives to offset the continued growth in data centers and other compute deployments. Collectively, these considerations result in the need for innovation in chip design to address market demands for an optimal balance of performance, efficiency, size, and cost across end markets.

Further, the resources required to develop leading-edge products are significant and continue to increase exponentially as manufacturing process nodes shrink. Design partners play an increasingly valuable role in the chip design process by providing specialized capabilities and expertise that enable semiconductor suppliers to focus on their core product differentiation, while keeping pace with market innovation. Design partners facilitate innovation and enhance customers' competitive positioning by reducing the complexity, risk, and cost of a significant part of the development cycle. In addition, design partners, like Arm, that can demonstrate a deep understanding of their customers' workloads are better positioned to integrate themselves into their customers' workflows, further expanding their value proposition over time.

Many OEMs today utilize "off-the-shelf," or "merchant," semiconductors when building their product offerings. However, we are also seeing some leading OEMs looking to build custom chips in-house that deliver greater performance and greater efficiency at an equal or better price for a particular use case.

For a discussion of our business's cyclical nature, see *"Item 5. Operating and Financial Review and Prospects-D. Trend information-Key Factors and Trends Affecting Our Operating Results-Global Demand for Semiconductor Products and Cyclical Nature of the Semiconductor Industry."*

## Our Company

Arm architects, develops, and licenses high-performance, low-cost, and energy-efficient CPU products and related technology, on which many of the world's leading semiconductor companies and OEMs rely to develop their products. For the three months ended March 31, 2024, approximately 7 billion Arm-based chips were reported as shipped, resulting in more than 287 billion Arm-based chips cumulatively, powering everything from the tiniest of sensors to the most powerful supercomputers. Today, Arm CPUs run the vast majority of the world's software, including the operating systems and applications for smartphones, tablets and PCs, data centers and networking equipment, and vehicles, as well as the embedded operating systems in devices such as smartwatches, thermostats, drones and industrial robotics.

Every CPU has an ISA, which defines the software instructions that can be executed by the CPU, essentially a common language for software developers to use. The ISA sets the foundation for a large library of compatible software which runs on those CPUs. The Arm ISA also has corresponding market position as compared to competing ISAs. This means that Arm-based chips have a global community of software developers familiar with how to program the CPU. Chip designers utilizing the Arm CPU can add desired functionality (Wi-Fi connectivity, image processing, video processing, etc.) to create an SoC to meet the needs of any end market.

Our primary product offerings are leading CPU products that address diverse performance, power, and cost requirements. Complementary products such as graphics processing units ("GPUs"), which accelerate the display of complex graphics onto a screen and can also be used for other mathematical applications, System IP, and compute platforms are also available as well as development tools and a software ecosystem to enable high-performance, efficient, reliable, system-level creation for a wide range of increasingly sophisticated devices and applications. Our development tools and robust software ecosystem have further solidified our position as the world's most widely adopted processor architecture.

We also support ecosystems of third-party tool vendors for embedded software and the IoT. We are also committed to contributing to open-source software and tools to ensure our offerings are optimized for the latest technologies.

Arm CPUs run AI and ML workloads in billions of devices, including smartphones, cameras, digital TVs, cars and cloud data centers. The CPU is vital in all AI systems, whether it is handling the AI workload entirely or in combination with a co-processor, such as a GPU or a neural processing unit ("NPU"), which specializes in the acceleration of ML algorithms. In the emerging area of large language models, generative AI and autonomous driving, there will be a heightened emphasis on the low power acceleration of these algorithms. In our latest ISA, CPUs, and GPUs, we have added new functionality and instructions to accelerate future AI and ML algorithms.

### History

Established in 1990, Arm began as a joint venture between Acorn Computers, Apple Computer, and VLSI Technology. We were publicly listed on the London Stock Exchange and the Nasdaq Stock Market from 1998 until 2016, when we were taken private by SoftBank Group, our controlling shareholder.

The original joint venture set out to develop a processor that was high performance, power efficient, easy to program, and readily scalable - a goal that continues to define Arm today. One of the first Arm-based products was a predecessor of today's tablets. As a battery-powered device, it required an energy-efficient chip to maximize its battery life while providing the necessary compute capabilities. This product benefited from Arm's clear focus on efficient CPU design. Our CPUs initially gained significant traction in mobile phones in the mid-1990s because our energy-efficient processors provided an appropriate level of performance while consuming little power, which was critical for these smaller form factor devices. As the mobile phone market continued to grow rapidly, more semiconductor companies entered the market. All these companies needed to source high-performance, energy-efficient processors to run their mobile phone software, and

56

**A307**

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | |
| Plaintiffs, | |
| v. | C.A. No. 24-490 (MN) |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | |
| Defendant. | |

**DEFENDANT ARM HOLDINGS PLC'S CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Civil Procedure 7.1(a), Defendant Arm Holdings plc is publicly traded on the NASDAQ Stock Exchange. Softbank Group Corp. owns more than 10% of Arm Holdings plc's stock. Softbank Group Corp. is publicly traded on the Tokyo Stock Exchange.

Arm Holdings plc further states that it is not formerly known as Arm Ltd.

1

**A309**

Dated: June 12, 2024

OF COUNSEL:

Daralyn J. Durie
Joyce Liou
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
jliou@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
Kyle D. Friedland
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com
kfriedland@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP

  _/s/ Anne Shea Gaza_
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

2

**A310**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 12, 2024, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
Erin J. Morgan
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
rjgarrett@paulweis.com
ejmorgan@paulweiss.com

Catherine Nyarady
Madalyn G. Vaughn
Jacob A. Braly
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
mvaughn@paulweiss.com
jbraly@paulweiss.com

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP

/s/ Anne Shea Gaza
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600

**A311**

agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Arm Holdings PLC f/k/a Arm Ltd.*

2

**A312**

# Exhibit 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation,<br><br>    Defendant. | C.A. No. 24-490-MN<br><br>**JURY TRIAL DEMANDED** |

### DEFENDANT ARM HOLDINGS PLC.'S ANSWER AND DEFENSES TO PLAINTIFFS QUALCOMM INC. AND QUALCOMM TECHNOLOGIES, INC.'S COMPLAINT

Defendant Arm Holdings plc. ("Arm") hereby submits its Answer and Defenses to the Complaint of Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (collectively, "Qualcomm").

### PRELIMINARY STATEMENT

Qualcomm's claims are baseless. Arm has no obligations under the Architecture License Agreement ("ALA") between Arm and Qualcomm with respect to unlicensed Nuvia-based technology. Instead, that technology is subject to an independent obligation requiring Qualcomm to discontinue and destroy the Nuvia-based technology used in its Oryon designs and its Snapdragon X products.

*First*, the relevant Nuvia-based technology—which Qualcomm has improperly incorporated into products like the Snapdragon X chips—is subject to discontinuance and destruction pursuant to an express, independent obligation under the termination provisions

1

**A314**

of the now-terminated ALA between Arm and Nuvia. Qualcomm's ALA is simply irrelevant given this independent obligation, because Arm had and has no obligations under the Qualcomm ALA with respect to Nuvia-based technology that Qualcomm was required to discontinue and destroy in March 2022, following termination of the Nuvia ALA.

*Second*, Qualcomm's ALA provides a license only for technology developed under that ALA, based on technology Arm delivered to Qualcomm under that ALA. Importantly, Qualcomm's ALA does not provide a license to technology developed under the Nuvia ALA, based on technology Arm delivered to Nuvia under the Nuvia ALA. And the Qualcomm ALA limits Qualcomm's rights, and Arm's obligations, to cores licensed under the Qualcomm ALA, based on technology delivered by Arm to Qualcomm under the Qualcomm ALA. Arm thus has no obligations under the Qualcomm ALA with respect to Qualcomm's unlicensed Nuvia-based Oryon cores and related products like Snapdragon X, which incorporate unlicensed designs and code developed under the now-terminated Nuvia ALA.

*Third*, the information requested by Qualcomm that is the purported basis for Qualcomm's suit does not implicate the delivery provisions of the Qualcomm ALA, but instead falls within the ALA's verification provisions. As Qualcomm admits, Arm made clear in its December 6, 2022, letter that "[n]o failure of delivery has occurred." Accordingly, there is no basis for a claim implicating the specific remedy Qualcomm seeks.

*Fourth*, because Qualcomm was aware of the purported basis for its baseless claims more than two years ago, its claims are barred by waiver, laches, estoppel, and the compulsory counterclaim doctrine. As Qualcomm admits, Arm expressly stated in its December 6, 2022, letter that Qualcomm "does not have verification, delivery, or support

rights under its ALA applicable to Nuvia-based technology like the design for which

Qualcomm improperly seeks" verification. Yet Qualcomm did not pursue, or otherwise

raise, its claims for more than a year, despite engaging in active litigation regarding its

failure to comply with the termination provisions of the Nuvia ALA.

**ANSWER**

Arm further answers the Complaint as follows, and except as expressly admitted

below, Arm denies each and every allegation of the Complaint:

1.      In answer to paragraph 1, Arm denies that it is attempting to strong-arm

Qualcomm into renegotiating the financial terms of the parties' license agreements. Arm

lacks sufficient knowledge or information to form a belief about the remaining allegations

in this paragraph and on that basis denies them.

2.      Paragraph 2 contains legal conclusions to which no response is required. To

the extent a response is required, Arm denies the allegations in this paragraph, at least

because Arm did not withhold deliverables under the plain language of the ALA, and

Qualcomm's ALA does not cover the unlicensed Nuvia technology.

3.      Paragraph 3 contains legal conclusions to which no response is required. To

the extent a response is required, Arm denies the allegations in this paragraph.

4.      Paragraph 4 contains legal conclusions to which no response is required. To

the extent a response is required, Arm denies the allegations in this paragraph, at least

because Qualcomm is trying to retain the benefit of unlicensed technology, which is subject

to discontinuance and/or destruction obligations.

5.      Paragraph 5 contains legal conclusions to which no response is required. To

the extent a response is required, Arm respectfully refers the Court to the "license

agreement between ARM and NUVIA"—that is, the Nuvia ALA—and the Qualcomm ALA, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

6.      Paragraph 6 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the lawsuit, which speaks for itself and belies Qualcomm's allegations. Arm otherwise denies the allegations in this paragraph.

7.      Paragraph 7 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the lawsuit and Arm's licenses with Qualcomm, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

8.      Paragraph 8 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations contained in this paragraph, at least because Arm has licenses to input and feedback provided by Nuvia under the Nuvia ALA and the Nuvia Technology License Agreement ("TLA").

9.      Paragraph 9 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support and maintenance for the unlicensed Nuvia technology.

10.      Arm denies the allegations in paragraph 10, at least because Qualcomm's ALA does not cover the unlicensed Nuvia technology, Arm did not withhold deliverables under the plain language of the ALA, and Qualcomm was on notice in the fall of 2022 that

Arm would not provide support and maintenance for the unlicensed Nuvia technology, as the Court confirmed in denying Qualcomm's motion to amend in the action styled *Arm Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146-MN (D.I. 295).

11.    In answer to paragraph 11, Arm respectfully refers the Court to its letters and correspondence, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

12.    In answer to paragraph 12, Arm respectfully refers the Court to its letters and correspondence, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

13.    Paragraph 13 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations contained in this paragraph, at least because Arm did not withhold deliverables under the plain language of the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

14.    Paragraph 14 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations contained in this paragraph, at least because Arm had no breach to cure.

15.    Paragraph 15 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA and TLA, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

16.    Paragraph 16 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph. Further, the

**A318**

specific remedy Qualcomm seeks does not apply, because Arm did not withhold deliverables under the plain language of the ALA, which also does not cover the unlicensed Nuvia technology.

17.     Paragraph 17 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations contained in this paragraph.

18.     In answer to paragraph 18, Arm admits that Qualcomm Incorporated is a Delaware corporation with its principal place of business in San Diego, California. Arm admits that Qualcomm has developed and commercialized products related to wireless technologies and has been involved in 3G, 4G, and 5G mobile communication standards. Arm lacks sufficient knowledge or information to form a belief about the remaining allegations in this paragraph and on that basis denies them.

19.     In answer to paragraph 19, Arm admits that Qualcomm Technologies, Inc. is a wholly owned subsidiary of Qualcomm Incorporated and a Delaware corporation with a principal place of business in San Diego, California. Arm lacks sufficient knowledge or information to form a belief about the remaining allegations in this paragraph and on that basis denies them.

20.     Arm denies that Arm Holdings plc. was formerly known as Arm Ltd. Arm otherwise admits the allegations in paragraph 20.

21.     Paragraph 21 contains legal conclusions to which no response is required. To the extent a response is required, Arm admits this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

**A319**

22.     Paragraph 22 contains legal conclusions to which no response is required. To the extent a response is required, Arm admits that venue is proper in this Judicial District.

23.     In answer to paragraph 23, Arm admits that it develops and licenses technology for processors used in a variety of different products, including, but not limited to, servers, mobile phones, and cars. Arm denies the remaining allegations in paragraph 23.

24.     In answer to paragraph 24, Arm admits that at least some of its ALAs grant licensees the right to design their own custom central processing units ("CPUs") that can execute ARM's instruction set architecture ("ISA"), as well as the right to design and distribute products incorporating such CPUs, but denies the suggestion that all Arm ALAs grant uniform rights. Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm denies the remaining allegations in this paragraph.

25.     Arm admits that CPU cores may be particular components of SOCs, and that SOCs are integrated circuits that can be used in cellular phones, computers, and other devices. Arm also admits that a core or CPU can perform processing within the SOC. Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

26.     In answer to paragraph 26, Arm admits that an ISA is part of the abstract model of a computer that specifies how the CPU interacts with software. Arm admits that applications and software that conform to an ISA's specifications can generally be run on a CPU that is based on the ISA, regardless of who has designed or manufactured the hardware. Arm admits that the Arm ISA allows for compatibility of applications and software, as Arm-based products can receive the same inputs (instructions) and, for each of those inputs, determine and output the proper result. Arm admits that application and

7

**A320**

software developers create their products to be compatible with particular ISAs. Arm denies the remaining allegations in this paragraph.

27.     In answer to paragraph 27, Arm admits that an ISA is part of the abstract model of a computer that specifies how the CPU interacts with software. Arm admits that the Arm ISA allows for compatibility of applications and software, as Arm-based products can receive the same inputs (instructions) and, for each of those inputs, determine and output the proper result.  Arm denies the remaining allegations contained in paragraph 27.

28.     In answer to paragraph 28, Arm admits the allegations in the first sentence of paragraph 28. Arm denies that micro-architectural know-how and expertise required to build a CPU is not related to the ISA. Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph, and on that basis denies them.

29.     In answer to the first sentence of paragraph 29, Arm admits that a CPU developer developing a custom CPU generally designs the core to meet the requirements of the relevant architecture. Arm lacks sufficient knowledge or information to form a belief about the truth of the second and third sentences of this paragraph and on that basis denies them.

30.     In answer to paragraph 30, Arm admits the allegations in the first, second, and fourth sentences of paragraph 30, but denies the suggestion that ALA licensees develop custom processor cores without significant support from Arm. Arm further respectfully refers the Court to its August 21, 2023, Registration Statement, which speaks for itself.

31.     In answer to the first sentence of paragraph 31, Arm admits that Arm TLAs allow the use of specific "off-the-shelf" Arm processor core designs with only minor

modifications. Arm denies the remaining allegations in this sentence. Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

32.     In answer to paragraph 32, Arm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis denies them.

33.     In answer to paragraph 33, Arm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis denies them.

34.     In answer to paragraph 34, Arm admits that Qualcomm develops SOCs used in different technologies. Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

35.     In answer to paragraph 35, Arm admits that Qualcomm first entered into a license agreement with Arm in 1997. Arm further respectfully refers the Court to its Registration Statement, which speaks for itself. Arm denies the remaining allegations in this paragraph.

36.     In answer to paragraph 36, Arm admits that, on May 30, 2013, Qualcomm and Arm Ltd. (which is a wholly owned subsidiary of Arm Holdings plc.) entered into the Qualcomm ALA and a related annex, which speak for themselves, and on June 23, 2020, Qualcomm and Arm Ltd. entered into an additional annex, which speaks for itself.

37.     The first and second sentences of paragraph 37 contain legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA and related annexes, which speak for themselves. Arm

denies the remaining allegations in the first and second sentences of paragraph 37. Arm

admits the allegations in the third sentence of paragraph 37.

38.    Arm denies the allegations in paragraph 38.

39.    In answer to paragraph 39, Arm respectfully refers the Court to its Initial

Phase 2 Submission, which speaks for itself. Arm denies the remaining allegations in this

paragraph.

40.    In answer to paragraph 40, Arm admits that Qualcomm is an Arm licensee

and pays license fees and royalties to Arm under the Qualcomm ALA. Arm denies the

remaining allegations in this paragraph.

41.    In answer to paragraph 41, Arm admits that in March 2021, Qualcomm

acquired NUVIA, a startup focused on developing a custom CPU and SOC, both specifically

for use in data centers and servers.

42.    In answer to paragraph 42, Arm lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in this paragraph, and on that basis denies

them.

43.    In answer to paragraph 43, Arm lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in this paragraph, and on that basis denies

them.

44.    In answer to paragraph 44, Arm lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in this paragraph, and on that basis denies

them.

45.    Paragraph 45 contains legal conclusions to which no response is required. To

the extent a response is required, Arm denies the allegations contained in this paragraph.

46.     Paragraph 46 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations contained in this paragraph, at least because Arm did not withhold deliverables under the plain language of the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

47.     Paragraph 47 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself.

48.     Paragraph 48 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

49.     Paragraph 49 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph. Further, the specific remedy Qualcomm seeks does not apply, because Arm did not withhold deliverables under the plain language of the ALA, which also does not cover the unlicensed Nuvia technology.

50.     Paragraph 50 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

51.     Arm denies the allegations in paragraph 51.

**A324**

52.    In answer to paragraph 52, Arm respectfully refers the Court to its correspondence, which speaks for itself. Arm otherwise denies the allegations in this paragraph, at least because Arm has no obligations under the Qualcomm ALA with regard to unlicensed Nuvia technology.

53.    Paragraph 53 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to Qualcomm's letters and correspondence, which speak for themselves. Arm otherwise denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

54.    Paragraph 54 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA and Qualcomm's letters and correspondence, which speak for themselves. Arm otherwise denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology. Arm further denies the allegations in this paragraph.

55.    Paragraph 55 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

56.    In answer to paragraph 56, Arm admits that it sent a letter to Qualcomm dated December 6, 2022. Arm otherwise denies the allegations in this paragraph.

57.    In answer to paragraph 57, Arm respectfully refers the Court to its correspondence, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

58.    In answer to paragraph 58, Arm respectfully refers the Court to its correspondence, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

59.    In answer to paragraph 59, Arm respectfully refers the Court to its correspondence, which speaks for itself. Arm otherwise denies the allegations in this paragraph, at least because Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm was on notice in the fall of 2022 that Arm would not provide support and maintenance for the unlicensed Nuvia technology, as the Court confirmed in denying Qualcomm's motion to amend in the action styled *Arm Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146-MN (D.I. 295).

60.    In answer to paragraph 60, Arm admits that its correspondence speaks for itself. Arm otherwise denies the allegations in this paragraph.

61.    Paragraph 61 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm was on notice in the fall of 2022 that Arm would not provide support and maintenance for the unlicensed Nuvia technology.

62.    In answer to paragraph 62, Arm respectfully refers the Court to the Court's March 5, 2024 hearing transcript, March 6, 2024 Order, and the October 2022 email chain,

which speak for themselves. Arm otherwise denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

63.    Paragraph 63 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Court's March 6, 2024 Order and Mr. Agrawal's testimony and documents, which speak for themselves. Arm otherwise denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

64.    In answer to paragraph 64, Arm respectfully refers the Court to the Qualcomm ALA and Annex 1, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

65.    Paragraph 65 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

66.    In answer to paragraph 66, Arm respectfully refers the Court to its letters and correspondence, which speak for themselves. Arm otherwise denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm was on notice in the fall of 2022 that Arm would not provide support and maintenance for the unlicensed Nuvia technology, as the Court confirmed in denying

Qualcomm's motion to amend in the action styled *Arm Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146-MN (D.I. 295).

67.     Paragraph 67 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

68.     Paragraph 68 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

69.     Paragraph 69 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

70.     In response to paragraph 70, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

71.     In response to paragraph 71, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm denies the remaining allegations in this paragraph.

72.     Paragraph 72 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the Qualcomm ALA,

and Qualcomm's ALA does not cover the unlicensed Nuvia technology. Further, the specific remedy Qualcomm seeks does not apply, because Arm did not withhold deliverables under the plain language of the ALA, which also does not cover the unlicensed Nuvia technology.

73.    Paragraph 73 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph. Further, the specific remedy Qualcomm seeks does not apply, because Arm did not withhold deliverables under the plain language of the ALA, which also does not cover the unlicensed Nuvia technology.

74.    Paragraph 74 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

75.    Paragraph 75 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Arm did not breach that Qualcomm ALA.

76.    Arm denies the allegations in paragraph 76.

## COUNT I

### (Declaratory Judgment)

77.    In answer to paragraph 77, Arm repeats, re-alleges, and incorporates by reference its answers to paragraphs 1–76 as if fully set forth herein.

78.    In answer to paragraph 78, Arm:

a.  is not required to respond to sub-paragraph (a) because it contains legal conclusions. To the extent a response is required, Arm denies the allegations in this sub-paragraph. Further, Arm did not withhold

**A329**

deliverables under the plain language of the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

b.  is not required to respond to sub-paragraph (b) because it contains legal conclusions. To the extent a response is required, Arm denies the allegations in this sub-paragraph, at least because Arm did not breach the Qualcomm ALA. Further, the specific remedy Qualcomm seeks does not apply, because Arm did not withhold deliverables under the plain language of the ALA, which also does not cover the unlicensed Nuvia technology.

c.  is not required to respond to sub-paragraph (c) because it contains legal conclusions. To the extent a response is required, Arm denies the allegations in this sub-paragraph.

79.    Paragraph 79 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not breach the Qualcomm ALA. Further, the specific remedy Qualcomm seeks does not apply, because Arm did not withhold deliverables under the plain language of the ALA, which also does not cover the unlicensed Nuvia technology.

80.    Paragraph 80 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

### <u>COUNT II</u>

### (Breach of the Qualcomm ALA)

81.    In answer to paragraph 81, Arm repeats, re-alleges, and incorporates by reference its answers to paragraphs 1–80 as if fully set forth herein.

**A330**

82.     Paragraph 82 contains legal conclusions to which no response is required. To the extent a response is required, Arm admits that the Qualcomm ALA is a valid, binding contract.

83.     Paragraph 83 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

84.     Paragraph 84 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the plain language of the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

85.     Paragraph 85 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm has no obligations under the Qualcomm ALA with regard to unlicensed Nuvia technology.

86.     Paragraph 86 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

87.     Paragraph 87 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not breach the Qualcomm ALA. Further, the specific remedy Qualcomm seeks does not apply, because Arm did not withhold deliverables under the plain language of the ALA, which also does not cover the unlicensed Nuvia technology.

88.    Paragraph 88 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

## PRAYER FOR RELIEF

Qualcomm's Prayer for Relief contains legal conclusions to which no response is required. To the extent that a response is required, Arm denies that Qualcomm is entitled to any of the relief it seeks in its prayer for relief.

## JURY DEMAND

Pursuant to D. Del. LR 38.1 and Fed. R. Civ. P. 38, Arm hereby demands a TRIAL BY JURY of all claims and issues presented in Qualcomm's Complaint that are so triable.

## DEFENSES

Without admitting or acknowledging that it bears the burden of proof as to any of them, Arm asserts the following defenses and reserves the right to amend its Answer as additional information becomes available.

## FIRST DEFENSE

### (Failure to State a Claim)

Qualcomm fails to state a claim upon which relief can be granted. Under the Qualcomm ALA, Arm has no obligation to provide, and Qualcomm has no right to seek, verification for unlicensed technology developed under the now-terminated Nuvia ALA. Instead, the unlicensed Nuvia-based technology is subject to an independent obligation requiring discontinuance and destruction regardless of the Qualcomm ALA. The license under the Qualcomm ALA is limited to specific, defined technology delivered by Arm to Qualcomm under the Qualcomm ALA, and, contrary to Qualcomm's assertions, does not

extend to any other Arm technology, like the technology delivered by Arm to Nuvia under the Nuvia ALA.

The Qualcomm ALA limits Qualcomm's rights, and Arm's obligations, to designs based on technology Arm delivered to Qualcomm under that ALA, rather than some other ALA, and developed under the licenses in the Qualcomm ALA, rather than some other ALA. None of this is true of the Phoenix core or other designs developed under the Nuvia ALA based on the technology delivered and licenses granted by Arm to Nuvia under the Nuvia ALA, when Nuvia was a standalone company. Arm thus has no obligations under the Qualcomm ALA with respect to that technology, which is instead subject to independent discontinuance and destruction obligations that apply to Qualcomm's Oryon designs and related Snapdragon X products incorporating that technology. And Qualcomm has failed to provide appropriate notice for the alleged breach.

## SECOND DEFENSE

### (Waiver/Estoppel/Laches/Acquiescence)

Qualcomm's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, laches, and/or acquiescence. Qualcomm was aware of the purported basis for its claims as early as October 10, 2022. And Arm expressly stated in its November 15, 2022, response in the original Delaware litigation to enforce the Nuvia termination provisions that Qualcomm is not licensed to use Arm technology developed under the now-terminated Nuvia ALA. (*Arm Ltd. v. Qualcomm Inc.*, C.A. No. 22-1146-MN, D.I. 21 (Nov. 15, 2022), (Arm's Redacted Answer to Defs.' Am. Countercls.).) Yet Qualcomm did not pursue its claims until well over a year later, despite engaging in active litigation against Arm regarding the Nuvia termination provisions barring use of Nuvia-based technology. By

delaying its assertion of the claims in this action, Qualcomm waived its claims, acquiesced to Arm's position, is estopped from bringing these claims, and is barred by the doctrine of laches. And Qualcomm has failed to provide appropriate notice for the alleged breach.

### THIRD DEFENSE

#### (Unclean Hands)

Qualcomm's claims are barred, in whole or in part, by the equitable doctrine of unclean hands. As set forth in Arm's action to enforce the termination obligations of the Nuvia ALA, in violation of the Nuvia contract and in violation of law, Qualcomm induced Nuvia to materially breach the Nuvia ALA by acquiring Nuvia without Arm's consent to the assignment of the Nuvia ALA. Qualcomm continues to attempt to benefit from its improper acquisition of Nuvia technology and the related material breach of the Nuvia ALA by wrongly insisting that the unlicensed Nuvia technology is licensed under the Qualcomm ALA, and seeking to enforce verification obligations as to that unlicensed technology. Those obligations under the Qualcomm ALA, however, apply only to technology developed using technology delivered by Arm to Qualcomm under the Qualcomm ALA, unlike the Nuvia technology developed using Arm technology delivered by Arm to Nuvia under the now-terminated Nuvia ALA. Qualcomm has acted wrongfully in seeking to reap the benefits from technology developed under the now-terminated Nuvia ALA, improperly transferring technology developed under the Nuvia ALA to Qualcomm, combining Nuvia and Qualcomm workstreams and personnel, while ignoring the obligations under the Nuvia ALA to discontinue and destroy the unlicensed Nuvia technology.

**A334**

## FOURTH DEFENSE

### (Limits on Damages)

The Qualcomm ALA limits the damages available for the alleged breach in a variety of ways, including barring the recovery of particular types of damages for alleged breaches, and specifying sole and exclusive remedies for certain breaches.

## FIFTH DEFENSE

### (Compulsory Counterclaims/Res Judicata/Collateral Estoppel)

Qualcomm's claims are barred, in whole or in part, by the doctrines of compulsory counterclaims, res judicata, and/or collateral estoppel. Qualcomm's claims in this new action arise out of the same transaction and occurrence at issue in the action styled *Arm Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146-MN (D.I. 295), and share a logical relationship with that action, because they (1) rest on one of the contracts at issue in the original action, and (2) arise from allegations of breach set forth in the original action. More specifically, Arm expressly stated in its November 15, 2022, response in the Delaware litigation that Qualcomm's ALA does not cover the unlicensed Nuvia technology developed under the now-terminated Nuvia ALA. Yet Qualcomm failed to timely assert claims against Arm in the earlier-filed action in this Court, as the Court confirmed by denying leave to amend to add these claims in the original action, based on Qualcomm's failure to assert claims at the time they arose. Accordingly, Qualcomm's claims are barred under the doctrines of compulsory counterclaims, res judicata, and/or collateral estoppel.

**A335**

Dated:  November 13, 2024

OF COUNSEL:

Daralyn J. Durie
Joyce Liou
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
jliou@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
Kyle D. Friedland
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com
kfriedland@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

23

**A336**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 13, 2024, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
Erin J. Morgan
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
rjgarrett@paulweis.com
ejmorgan@paulweiss.com

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

_Anne Shea Gaza_

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com

**A337**

rvrana@ycst.com
swilson@ycst.com

*Attorneys for Arm Holdings PLC f/k/a Arm Ltd.*

# Exhibit 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED, a
Delaware corporation, QUALCOMM
TECHNOLOGIES, INC., a Delaware
corporation,

        Plaintiffs,

    v.

ARM HOLDINGS PLC., f/k/a ARM LTD., a
U.K. corporation,

        Defendant.

C.A. No. 24-490-MN

**JURY TRIAL DEMANDED**

**CONFIDENTIAL –
FILED UNDER SEAL**

## DEFENDANT ARM HOLDINGS PLC.'S ANSWER AND DEFENSES TO PLAINTIFFS QUALCOMM INC. AND QUALCOMM TECHNOLOGIES, INC.'S SECOND AMENDED COMPLAINT

    Defendant Arm Holdings plc. ("Arm") hereby submits its Answer and Defenses to the Second Amended Complaint of Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (collectively, "Qualcomm").

### PRELIMINARY STATEMENT

    Qualcomm's claims are baseless. Arm did not withhold deliverables under the Qualcomm Architecture License Agreement ("ALA") and has no obligations under the Qualcomm ALA with respect to unlicensed Nuvia-based technology. Arm has provided all materials that Qualcomm is entitled to under the Qualcomm ALA, and the Nuvia-based technology is subject to an independent obligation requiring Qualcomm to discontinue and destroy Nuvia-based technology used in its products.

    *First*, the information requested by Qualcomm that is the purported basis for Qualcomm's suit does not implicate the delivery provisions of the Qualcomm ALA, but

33291353.2

1

**A340**

instead implicates the ALA's verification provisions. As Qualcomm admits, Arm made clear in its December 6, 2022, letter that "[n]o failure of delivery has occurred." Accordingly, there is no basis for Qualcomm's breach claim.

*Second*, Qualcomm's ALA does not cover the relevant Nuvia-based technology, which is subject to discontinuance and destruction pursuant to an express, independent obligation under the termination provisions of the now-terminated ALA between Arm and Nuvia. Qualcomm's ALA provides a license only for technology developed under that ALA, based on technology Arm delivered to Qualcomm under that ALA. The pre-acquisition Nuvia designs fall outside the scope of the Qualcomm ALA, and Qualcomm is not entitled to any of the support that Arm allegedly withheld for those unlicensed designs.

*Third*, because Qualcomm was aware of the purported basis for its baseless claims more than two years ago, its claims are barred by waiver, laches, estoppel, and the compulsory counterclaim doctrine. As Qualcomm admits, Arm expressly stated in its December 6, 2022, letter that Qualcomm "does not have verification, delivery, or support rights under its ALA applicable to Nuvia-based technology like the design for which Qualcomm improperly seeks" verification. Yet Qualcomm did not pursue, or otherwise raise, its claims for more than a year, despite engaging in active litigation regarding its failure to comply with the termination provisions of the Nuvia ALA.

Qualcomm's allegations regarding the Technology License Agreement ("TLA") are equally without merit. Qualcomm's allegations are based on an alleged failure to provide licensing offers for the ███████████████ in October 2024. Yet Arm indisputably made licensing offers for ███████, even though Qualcomm failed to timely request those offers under the contract. Qualcomm admits as much by alleging that the

33291353.2

2

**A341**

offers Arm made nonetheless constituted a "constructive failure to offer" ███ licenses. Qualcomm's claim boils down to the simple fact that it merely didn't like the terms Arm offered, which it was free to reject or negotiate. Qualcomm has also failed to identify any supposed ████████████ withheld from Arm, and Arm did not change any terms with respect to ██████████████.

Further, Qualcomm's allegation that Arm breached the implied covenant of good faith based on an alleged failure to negotiate an extension of the ALA is without merit. Qualcomm alleges that in May 2020—over five years ago—it made a request to extend the ALA ██████████████████ to cover versions of the Arm technology that did not yet exist, for which Qualcomm had no right to a license at the time. Accordingly, there can be no breach of the implied covenant of good faith and fair dealing of the ALA.

Finally, none of Arm's alleged conduct violates the California Unfair Competition Law ("UCL") under any test or theory recognized under California law. As a threshold matter, Qualcomm fails to identify (1) any antitrust law, or a policy or spirit of such a law, that Arm violates or threatens to violate or (2) any relevant market in which Arm's conduct allegedly threatens competition. These two deficiencies alone are fatal to Qualcomm's UCL claim. Also, Qualcomm's derivative allegations premised on breach of contract, refusal to deal with or license Qualcomm, harms to Qualcomm, competitive speech, and common law violations do not constitute "unfair" or "unlawful" conduct under the UCL. Contrary to Qualcomm's claims, Arm's business practices are inherently pro-competitive and beneficial to consumers.

## ANSWER

Arm further answers the Complaint as follows, and except as expressly admitted below, Arm denies each and every allegation of the Complaint:

33291353.2

1.      In answer to paragraph 1, Arm denies that it is attempting to stifle competition and disrupt Qualcomm's business. Arm specifically admits that Qualcomm is an Arm licensee and pays license fees and royalties under the Qualcomm ALA. Arm denies that it filed suit against Qualcomm and Nuvia but acknowledges that Arm Ltd. filed suit against Qualcomm and Nuvia for breach of the Nuvia ALA. Arm admits that it reached out to its customers and partners after filing its lawsuit against Qualcomm and Nuvia. Arm denies that it sent Qualcomm a notice of material breach of the Qualcomm ALA but acknowledges that Arm Ltd. sent Qualcomm a notice of material breach of the Qualcomm ALA on October 22, 2024. Arm denies the remaining allegations in this paragraph.

2.      In answer to paragraph 2, Arm admits that it offers licenses to some companies to design their own custom central processing units ("CPUs") that can execute ARM's instruction set architecture ("ISA") and licenses to use Arm's own "off-the-shelf" CPU designs. Arm admits that this paragraph quotes portions of statements made in public documents and news articles. Arm denies the remaining allegations in this paragraph.

3.      In answer to Paragraph 3, Arm admits that Qualcomm first entered into a license agreement with an Arm affiliate in 1997. Arm denies that Qualcomm and Arm entered into the Qualcomm ALA in 2013 but acknowledges that, in 2013, Qualcomm and Arm Ltd. entered into the Qualcomm ALA and a related annex, which speak for themselves. Arm also admits that Qualcomm has a TLA that provides Qualcomm with a license to use Arm's "off-the-shelf" CPU designs.

4.      Arm denies the allegations in paragraph 4.

5.      Arm denies the allegations in paragraph 5.

33291353.2

6.      In response to paragraph 6, Arm admits that a trial took place last year before this Court in the matter *Arm Ltd. v. Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del.). Arm admits that NUVIA was a startup focused on developing a custom CPU and SoC, both specifically for use in data centers and servers. Arm admits that, in 2021, Qualcomm acquired NUVIA for $1.4 billion. Arm denies the remaining allegations in this paragraph.

7.      Paragraph 7 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the "license agreement between ARM and NUVIA"—that is, the Nuvia ALA—and the Qualcomm ALA, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

8.      Paragraph 8 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the lawsuit, which speaks for itself and belies Qualcomm's allegations. Arm otherwise denies the allegations in this paragraph.

9.      Paragraph 9 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the lawsuit and Arm's licenses with Qualcomm, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

10.     In answer to paragraph 10, Arm respectfully refers the Court to the lawsuit and to Arm's pending renewed motion for judgment as a matter of law or new trial, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

11.     Paragraph 11 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

12.     Paragraph 12 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA, which

33291353.2

5

**A344**

speaks for itself. Arm otherwise denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology.

13.     Arm denies the allegations in paragraph 13, at least because Qualcomm's ALA does not cover the unlicensed Nuvia technology, Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm is not entitled to support for the unlicensed Nuvia technology, and Qualcomm was on notice in the fall of 2022 that Arm Ltd. would not provide support for the unlicensed Nuvia technology, as the Court confirmed in denying Qualcomm's motion to amend in the action styled *Arm Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146-MN (D.I. 295).

14.     In answer to paragraph 14, Arm respectfully refers the Court to Arm Ltd.'s letters and correspondence, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

15.     In answer to paragraph 15, Arm respectfully refers the Court to Arm Ltd.'s letters and correspondence, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

16.     Paragraph 16 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations contained in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology.

33291353.2

17.     Paragraph 17 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations contained in this paragraph, at least because Arm had no breach to cure.

18.     Paragraph 18 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA and TLA, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

19.     Paragraph 19 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph. Further, the specific remedy Qualcomm seeks does not apply, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology.

20.     Paragraph 20 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

21.     In answer to paragraph 21, Arm admits that Qualcomm submitted requests to renew licenses from Arm Ltd. for "off-the-shelf" ███████████████████████████ ████████████████████████. Arm denies that Arm Ltd. refused to provide licensing offers, at least because it provided Qualcomm with licensing offers for ███████████ in October 2024.

22.     In answer to paragraph 22, Arm admits that Qualcomm submitted a request to renew a license from Arm Ltd. for its "off-the-shelf" ██████████████████████. Arm denies that Arm Ltd. refused to provide licensing offers, at least because it provided Qualcomm with licensing offers for ████████████ in October 2024.

23.     In answer to paragraph 23, Arm admits that Arm Ltd. received correspondence from Qualcomm's General Counsel on September 20, 2024 and September 27, 2024, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

24.     In answer to paragraph 24, Arm respectfully refers the court to Arm Ltd.'s letters and correspondence, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

25.     In answer to paragraph 25, Arm admits that it provided Qualcomm with a licensing offer for the ███████████████████. The remaining allegations in this paragraph contain legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

26.     Paragraph 26 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm TLA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

27.     Paragraph 27 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm TLA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

28.     Paragraph 28 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

29.     Paragraph 29 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to Arm Ltd.'s October 22, 2024 letter, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

30.     In answer to paragraph 30, Arm admits that Arm Ltd. sent Qualcomm the Breach Letter on October 22, 2024 and respectfully refers the Court to the letter, which speaks for itself.

The remaining allegations in paragraph 30 contain legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

31.     Arm denies the allegations in paragraph 31.

32.     Arm denies the allegations in paragraph 32.

33.     Arm denies the allegations in paragraph 33.

34.     In answer to the first sentence in paragraph 34, Arm denies that the notice of breach letter was timed to interfere with *Arm v. Qualcomm*. In answer to the second sentence in paragraph 34, Arm admits that Arm Ltd. sent Qualcomm the notice of breach letter on October 22, 2024, and respectfully refers the Court to the letter, which speaks for itself. In answer to the third sentence in paragraph 34, Arm admits that this sentence cites to excerpts from the October 30, 2024, hearing transcript in *Arm Ltd. v. Qualcomm, Inc.*, but denies the remaining allegations in this sentence. Arm denies the remaining allegations in this paragraph.

35.     In answer to paragraph 35, Arm admits that this paragraph cites to excerpts from a Reuters article dated February 13, 2025. Arm lacks sufficient knowledge or information to form a belief about the truth of the allegations contained in the fifth sentence of this paragraph, and on that basis denies them. Arm denies the remaining allegations in this paragraph.

36.     In answer to paragraph 36, Arm respectfully refers the Court to Arm Ltd.'s letters and correspondence, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

37.     Paragraph 37 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations contained in this paragraph.

38.     In answer to paragraph 38, Arm admits that Qualcomm Incorporated is a Delaware corporation with its principal place of business in San Diego, California. Arm admits

that Qualcomm has developed and commercialized products related to wireless technologies and has been involved in 3G, 4G, and 5G mobile communication standards. Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

39.     In answer to paragraph 39, Arm admits that Qualcomm Technologies, Inc. is a wholly owned subsidiary of Qualcomm Incorporated and a Delaware corporation with a principal place of business in San Diego, California. Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

40.     Arm denies that Arm Holdings plc. was formerly known as Arm Ltd. Arm otherwise admits the allegations in paragraph 40.

41.     Paragraph 41 contains legal conclusions to which no response is required. To the extent a response is required, Arm admits this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

42.     Paragraph 42 contains legal conclusions to which no response is required. To the extent a response is required, Arm admits that venue is proper in this Judicial District.

43.     In answer to paragraph 43, Arm admits that it develops and licenses technology for processors used in a variety of different products, including, but not limited to, servers, mobile phones, and cars. Arm also admits that it offers different types of license contracts, of which two are ALAs and TLAs. Arm denies the remaining allegations in paragraph 43.

44.     In answer to paragraph 44, Arm admits that at least some of its ALAs grant licensees the right to design their own custom central processing units ("CPUs") that can execute

33291353.2

ARM's instruction set architecture ("ISA"), as well as the right to design and distribute products incorporating such CPUs, but denies the suggestion that all Arm ALAs grant uniform rights. Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm denies the remaining allegations in this paragraph.

45.     Arm admits that CPU cores may be particular components of SoCs, and that SoCs are integrated circuits that can be used in cellular phones, computers, and other devices. Arm also admits that a core or CPU can perform processing within the SoC. Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

46.     In answer to paragraph 46, Arm admits that an ISA is part of the abstract model of a computer that specifies how the CPU interfaces with software. Arm admits that applications and software that conform to an ISA's specifications can generally be run on a CPU that is based on the ISA, regardless of who has designed or manufactured the hardware. Arm admits that the Arm ISA allows for compatibility of applications and software, as Arm-based products can receive the same inputs (instructions) and, for each of those inputs, determine and output the proper result. Arm admits that application and software developers create their products to be compatible with particular ISAs. Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

47.     In answer to paragraph 47, Arm admits that an ISA is part of the abstract model of a computer that specifies how the CPU interacts with software. Arm admits that the Arm ISA allows for compatibility of applications and software, as Arm-based products can receive the same inputs (instructions) and, for each of those inputs, determine and output the proper result. Arm denies the remaining allegations contained in paragraph 47.

33291353.2

11

**A350**

48.    In answer to paragraph 48, Arm admits the allegations in the first sentence of paragraph 48. Arm denies that micro-architectural know-how and expertise required to build a CPU is not related to the ISA. Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph, and on that basis denies them.

49.    In answer to the first sentence of paragraph 49, Arm admits that a CPU developer developing a custom CPU generally designs the core to meet the requirements of the relevant architecture. Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph, and on that basis denies them.

50.    In answer to paragraph 50, Arm admits the allegations in the first, second, fourth, and fifth sentences of paragraph 50, but denies the suggestion that ALA licensees develop custom processor cores without significant support from Arm. Arm further respectfully refers the Court to its August 21, 2023, Registration Statement, which speaks for itself.

51.    In answer to the first sentence of paragraph 51, Arm admits that Arm TLAs allow the use of specific "off-the-shelf" Arm processor core designs with only minor modifications. In answer to the third sentence of paragraph 51, Arm admits that Arm TLAs also allow the use of Arm-designed technology that can be used in SoCs to perform specific functions and interface with the licensed "off-the-shelf" CPUs. Arm admits that the last sentence of paragraph 51 cites to excerpts of Arm's August 21, 2023, Registration Statement. Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph, and on that basis denies them.

52.    In answer to paragraph 52, Arm admits that at least some TLA licenses charge higher royalties than ALA licenses. Arm denies the remaining allegations in this paragraph.

33291353.2

53.     In answer to paragraph 53, Arm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis denies them.

54.     In answer to paragraph 54, Arm admits that Qualcomm develops SoCs used in different technologies. Arm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and on that basis denies them.

55.     In answer to paragraph 55, Arm admits that Qualcomm first entered into a license agreement with an Arm affiliate in 1997. Arm denies that Qualcomm and Arm entered into the currently operative Qualcomm ALA, ███████████, but acknowledges that Qualcomm and Arm Ltd. entered into the Qualcomm ALA and a related annex, which speak for themselves. Arm further denies that Qualcomm and Arm entered into an additional Annex 1 to the Qualcomm ALA, but acknowledges that on June 23, 2020, Qualcomm and Arm Ltd. entered into an additional annex, which speaks for itself.

56.     The first and second sentences of paragraph 56 contain legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA and related annexes, which speak for themselves. Arm denies the remaining allegations in the first and second sentences of paragraph 56. Arm admits that since Qualcomm entered into the Qualcomm ALA, Qualcomm has at times shipped custom Arm ISA-compatible CPUs in addition to shipping CPUs based on Arm implementation cores.

57.     In answer to paragraph 57, Arm admits that Qualcomm is an Arm licensee and pays license fees and royalties under the Qualcomm ALA. The third sentence of paragraph 57 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this sentence. Arm further respectfully refers the Court to its Form

33291353.2

13

**A352**

20-F dated August 12, 2024, which speaks for itself. Arm denies the remaining allegations in this paragraph.

58.    Arm denies the allegations in paragraph 58.

59.    In answer to the first sentence of paragraph 59, Arm admits that in March 2021, Qualcomm acquired NUVIA, a startup focused on developing a custom CPU and SoC, both specifically for use in data centers and servers. Arm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and on that basis denies them.

60.    In answer to paragraph 60, Arm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis denies them.

61.    In answer to paragraph 61, Arm admits that the last sentence of this paragraph cites to excerpts of public articles. Arm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and on that basis denies them.

62.    In answer to paragraph 62, Arm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis denies them.

63.    In answer to paragraph 63, Arm denies that Qualcomm and Arm entered into an Amended and Restated Architecture License Agreement, ███████████, and Annex 1 to that agreement, but acknowledges that Qualcomm and Arm Ltd. entered into that Agreement and Annex. Arm admits that the Qualcomm ALA is a binding and enforceable agreement, but denies that all the provisions in the Qualcomm ALA are necessarily enforceable.

64.    In answer to paragraph 64, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

33291353.2

14

**A353**

65.    In answer to paragraph 65, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

66.    In answer to paragraph 66, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

67.    In answer to paragraph 67, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

68.    In answer to paragraph 68, Arm admits that this paragraph cites to excerpts of public documents and videos. To the extent this paragraph characterizes "benefit[s]" to anyone or anything other than Arm, Arm lacks sufficient knowledge or information to form a belief about the truth of those allegations, and on that basis denies them. Arm denies the remaining allegations in this paragraph.

69.    In answer to paragraph 69, Arm admits that this paragraph cites to excerpts of the FTC complaint from *In the Matter of Nvidia Corp., SoftBank Grp., & Arm, Ltd*. Arm denies the remaining allegations in this paragraph.

70.    In answer to paragraph 70, Arm admits that this paragraph cites to excerpts of public documents. Arm denies the remaining allegations in this paragraph.

71.    In answer to paragraph 71, Arm admits that this paragraph cites to excerpts of the Initial Phase 2 Submission, Anticipated Acquisition by NVIDIA Corp. of ARM Ltd., U.K. Competition & Markets Authority, dated December 20, 2021. Arm denies the remaining allegations in this paragraph.

72.    Arm denies the allegations in paragraph 72.

33291353.2

73.     In answer to the first and second sentences of paragraph 73, Arm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in these sentences, and on that basis denies them. Arm denies the remaining allegations contained in this paragraph.

74.     Paragraph 74 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations contained in this paragraph.

75.     Paragraph 75 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself.

76.     Paragraph 76 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

77.     Paragraph 77 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph. Further, the specific remedy Qualcomm seeks does not apply, at least because Arm did not withhold deliverables under the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

78.     Paragraph 78 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology.

33291353.2

**A355**

79.     Arm denies the allegations in paragraph 79.

80.     In answer to paragraph 80, Arm respectfully refers the Court to Arm Ltd.'s correspondence, which speaks for itself. Arm otherwise denies the allegations in this paragraph, at least because Arm has no obligations under the Qualcomm ALA with regard to unlicensed Nuvia technology.

81.     Paragraph 81 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to Qualcomm's letters and correspondence, which speak for themselves. Arm otherwise denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology.

82.     Paragraph 82 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA and Qualcomm's letters and correspondence, which speak for themselves. Arm otherwise denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology.

83.     Paragraph 83 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology.

33291353.2

17

**A356**

84.    In answer to paragraph 84, Arm admits that Arm Ltd. sent a letter to Qualcomm dated December 6, 2022. Arm otherwise denies the allegations in this paragraph.

85.    In answer to paragraph 85, Arm respectfully refers the Court to Arm Ltd.'s correspondence, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

86.    In answer to paragraph 86, Arm respectfully refers the Court to Arm Ltd.'s correspondence, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

87.    In answer to paragraph 87, Arm respectfully refers the Court to Arm Ltd.'s correspondence, which speaks for itself. Arm otherwise denies the allegations in this paragraph, at least because Qualcomm's ALA does not cover the unlicensed Nuvia technology, Qualcomm is not entitled to support for the unlicensed Nuvia technology, and Qualcomm was on notice in the fall of 2022 that Arm would not provide support for the unlicensed Nuvia technology, as the Court confirmed in denying Qualcomm's motion to amend in the action styled *Arm Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146-MN (D.I. 295).

88.    In answer to paragraph 88, Arm respectfully refers the Court to Arm Ltd.'s correspondence, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

89.    Paragraph 89 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, Qualcomm is not entitled to support for the unlicensed Nuvia technology, and Qualcomm was on notice in the fall of 2022 that Arm would not provide support for the unlicensed Nuvia technology.

90.    In answer to paragraph 90, Arm respectfully refers the Court to the Court's March 5, 2024 hearing transcript, March 6, 2024 Order, and the October 2022 email chain, which speak

33291353.2

for themselves. Arm otherwise denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology.

91.    Paragraph 91 contains legal conclusions to which no response is required. To the extent a response is required, Arm respectfully refers the Court to the Court's March 6, 2024 Order and Mr. Agrawal's testimony and documents, which speak for themselves. Arm otherwise denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology.

92.    In answer to paragraph 92, Arm respectfully refers the Court to the Qualcomm ALA and Annex 1, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

93.    Paragraph 93 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology.

94.    In answer to paragraph 94, Arm respectfully refers the Court to Arm Ltd.'s letters and correspondence, which speak for themselves. Arm otherwise denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, Qualcomm is not entitled to support for the unlicensed Nuvia technology, and Qualcomm was on notice in the fall of 2022

33291353.2

that Arm would not provide support for the unlicensed Nuvia technology, as the Court confirmed in denying Qualcomm's motion to amend in the action styled *Arm Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146-MN (D.I. 295).

95.    Paragraph 95 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology.

96.    Paragraph 96 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology.

97.    Paragraph 97 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology.

98.    In response to paragraph 98, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

99.    In response to paragraph 99, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm denies the remaining allegations in this paragraph.

33291353.2

100.     Paragraph 100 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology. Further, the specific remedy Qualcomm seeks does not apply, at least because Arm did not withhold deliverables under the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

101.     Paragraph 101 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology. Further, the specific remedy Qualcomm seeks does not apply, at least because Arm did not withhold deliverables under the ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

102.     Paragraph 102 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations.

103.     In response to Paragraph 103, Arm respectfully refers the Court to the Qualcomm TLA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

104.     In response to Paragraph 104, Arm respectfully refers the Court to the Qualcomm TLA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

105.     In response to paragraph 105, Arm respectfully refers the Court to the Qualcomm TLA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

106.    In response to paragraph 106, Arm respectfully refers the Court to the Qualcomm TLA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

107.    In response to paragraph 107, Arm respectfully refers the Court to the Qualcomm TLA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

108.    In response to paragraph 108, Arm respectfully refers the Court to the Qualcomm TLA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

109.    In response to Paragraph 109, Arm admits that Qualcomm sought to renew its licenses for ███████████████████████. Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

110.    In response to paragraph 110, Arm respectfully refers the Court to the Qualcomm TLA and Qualcomm's licenses for ████████████████, which speak for themselves. Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

111.    In answer to paragraph 111, Arm admits that Qualcomm submitted requests to renew licenses from Arm for ██████████████ and ████████ ████████████.

112.    Paragraph 112 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations, at least because it provided Qualcomm with licensing offers for ████████████ in October 2024.

113.    In answer to paragraph 113, Arm admits that Qualcomm submitted a request to renew a license from Arm for ██████████████. Arm denies the remaining

allegations, at least because it provided Qualcomm with a licensing offer for ▮▮▮▮ in October 2024.

114.    In answer to paragraph 114, Arm admits that Arm Ltd. received correspondence from Qualcomm's General Counsel on September 20, 2024. Arm otherwise denies the allegations in this paragraph.

115.    In answer to paragraph 115, Arm admits that Arm Ltd. received correspondence from Qualcomm's General Counsel on September 27, 2024. Arm otherwise denies the allegations in this paragraph.

116.    In answer to paragraph 116, Arm respectfully refers the Court to Arm Ltd.'s letters and correspondence, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

117.    In answer to paragraph 117, Arm respectfully refers the Court to Arm Ltd.'s letters and correspondence, which speak for themselves. Arm otherwise denies the allegations in this paragraph.

118.    Arm denies the allegations in paragraph 118.

119.    Arm denies the allegations in paragraph 119.

120.    Arm denies the allegations in paragraph 120.

121.    In answer to paragraph 121, Arm denies that its proposal was exorbitant. Arm lacks sufficient knowledge or information to form a belief about the truth of the allegations in this paragraph and on that basis denies them.

122.    In answer to paragraph 122, Arm denies that it ▮▮▮▮▮▮▮▮▮▮ refusal to offer licenses and to change the ▮▮▮▮▮▮▮▮▮▮ of its licensing offers. Arm lacks sufficient

knowledge or information to form a belief about the truth of the remaining allegations in this paragraph and on that basis denies them.

123.    In answer to paragraph 123, Arm respectfully refers the Court to the Qualcomm TLA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

124.    In answer to paragraph 124, Arm respectfully refers the Court to the Qualcomm TLA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

125.    In answer to paragraph 125, Arm respectfully refers the Court to the Qualcomm TLA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

126.    In answer to paragraph 126, Arm admits that Arm Ltd. received correspondence from Qualcomm's General Counsel on September 20, 2024 and September 27, 2024. Arm otherwise denies the allegations in this paragraph.

127.    In answer to paragraph 127, Arm respectfully refers the Court to the Qualcomm ALA and Qualcomm TLA, which speak for themselves. Arm otherwise denies the allegations in this paragraph, including at least because Arm did not withhold deliverables under the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology. Further, the specific remedy Qualcomm seeks does not apply, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Arm's conduct did not breach ████████████████ ████ of the Qualcomm TLA.

128.    Arm denies the allegations in paragraph 128.

129.    Arm denies the allegations in paragraph 129.

130.    In answer to paragraph 130, Arm respectfully refers the Court to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

33291353.2

131.    In answer to paragraph 131, Arm admits that this paragraph refers to and cites from an email between a Qualcomm employee and an Arm employee. Arm otherwise denies the allegations in this paragraph.

132.    In answer to paragraph 132, Arm admits that Arm Ltd. received correspondence from Qualcomm's General Counsel on May 20, 2020. Arm otherwise denies the allegations in this paragraph.

133.    Arm denies the allegations in paragraph 133.

134.    Arm denies the allegations in paragraph 134.

135.    Arm denies the allegations in paragraph 135.

136.    Arm denies that it filed suit against Qualcomm and Nuvia but acknowledges that, on August 31, 2022, Arm Ltd. commenced *Arm v. Qualcomm* in the U.S. District Court for the District of Delaware. Arm admits that, in that action, Arm Ltd. alleges that Qualcomm and NUVIA breached the NUVIA ALA by, among other things, failing to abide by the change-of-control and termination provisions in the NUVIA ALA. Arm otherwise denies the allegations in paragraph 136.

137.    In answer to paragraph 137, Arm admits that, after filing the complaint in *Arm v. Qualcomm*, Arm Ltd. corresponded with certain of its customers concerning the *Arm v. Qualcomm* lawsuit. Arm respectfully refers the Court to the correspondence, which speaks for itself. Arm admits that the last sentence of this paragraph cites to excerpts of testimony by Rene Haas. Arm otherwise denies the allegations in this paragraph.

138.    In answer to paragraph 138, Arm admits that the August 31, 2022 letters sent to customers included a letter from Arm's general counsel to Qualcomm's general counsel. Arm

respectfully refers the Court to the correspondence, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

139.    In answer to paragraph 139, Arm admits that, in May 2023, Arm Ltd. sent letters to some of its customers concerning the *Arm v. Qualcomm* lawsuit. Arm respectfully refers the Court to the correspondence, which speaks for itself, and to Mr. Haas's trial testimony in *Arm v. Qualcomm*, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

140.    In answer to paragraph 140, Arm respectfully refers the Court to Arm Ltd.'s May 2023 correspondence with its customers, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

141.    Paragraph 141 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

142.    Paragraph 142 contains legal conclusions to which no response is required. To the extent a response is required, Arm admits that, on September 30, 2022, Qualcomm answered Arm's complaint in *Arm v. Qualcomm* and filed a counterclaim against Arm Ltd. Arm otherwise denies the allegations in this paragraph.

143.    Paragraph 143 contains legal conclusions to which no response is required. To the extent a response is required, Arm admits that, on March 13, 2024, Qualcomm filed its second amended counterclaims in *Arm v. Qualcomm* and, on April 4, 2024, Arm Ltd. answered those counterclaims. Arm otherwise denies the remaining allegations in this paragraph.

144.    In answer to paragraph 144, Arm admits that Arm Ltd. sent Qualcomm a notice of material breach of the Qualcomm ALA on October 22, 2024. Arm respectfully refers the Court to the letter, which speaks for itself, and to the Qualcomm ALA, which speaks for itself. Arm otherwise denies the remaining allegations in this paragraph.

33291353.2

**A365**

145.    In answer to paragraph 145, Arm admits that this paragraph cites to excerpts of Arm Ltd.'s October 22, 2024 letter to Qualcomm. Arm respectfully refers the Court to this letter, which speaks for itself. Arm denies the remaining allegations in this paragraph.

146.    In answer to paragraph 146, Arm admits that this paragraph cites to excerpts of Arm Ltd.'s October 22, 2024 letter to Qualcomm. Arm respectfully refers the Court to this letter, which speaks for itself. The remaining allegations in this paragraph contain legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

147.    In answer to Paragraph 147, Arm admits that this paragraph cites to excerpts of Arm Ltd.'s October 22, 2024 letter to Qualcomm. Arm respectfully refers the Court to this letter, which speaks for itself. Arm otherwise denies the allegations in this paragraph.

148.    Arm denies the allegations in paragraph 148.

149.    In answer to Paragraph 149, Arm admits that this paragraph cites to excerpts from an Arm press release. Arm denies the remaining allegations in this paragraph.

150.    Arm denies the allegations in paragraph 150, at least because Qualcomm's ALA does not cover the unlicensed Nuvia technology and Arm identified Qualcomm's unlicensed use of as a material breach of the Qualcomm ALA.

151.    Paragraph 151 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations.

152.    In answer to paragraph 152, Arm lacks sufficient knowledge or information to form a belief about the truth of the allegations, and on that basis denies them.

153.    In answer to paragraph 153, Arm admits that, on October 22, 2024, Arm Ltd. sent Qualcomm a notice of material breach of the Qualcomm ALA. Arm otherwise denies the allegations in this paragraph.

154.    In answer to paragraph 154, Arm admits that Arm Ltd. discussed the October 22, 2024 letter with a reporter at Bloomberg. Arm admits that this paragraph cites to excerpts of an October 22, 2024 article by Bloomberg. Arm otherwise denies the allegations in this paragraph.

155.    Arm denies the allegations in paragraph 155.

156.    Arm denies the allegations in paragraph 156.

157.    In answer to paragraph 157, Arm lacks sufficient knowledge or information to form a belief about the truth of the allegations, and on that basis denies them.

158.    In answer to paragraph 158, Arm lacks sufficient knowledge or information to form a belief about the truth of the allegations, and on that basis denies them.

159.    In answer to paragraph 159, Arm lacks sufficient knowledge or information to form a belief about the truth of the allegations, and on that basis denies them.

160.    In answer to paragraph 160, Arm lacks sufficient knowledge or information to form a belief about the truth of the allegations, and on that basis denies them.

161.    Arm denies the allegations in paragraph 161.

162.    In answer to the first, second, and third sentences of paragraph 162, Arm respectfully refers the Court to Arm Ltd.'s January 8, 2025 letter to Qualcomm, which speaks for itself. Arm otherwise denies the remaining allegations in this paragraph.

163.    In answer to paragraph 163, Arm admits that it designated Arm Ltd.'s January 8, 2025 letter to Qualcomm as "confidential" and authorized Qualcomm to share the letter with its customers on a confidential basis. Arm otherwise denies the allegations in this paragraph.

33291353.2

164.    Arm denies the allegations in paragraph 164.

165.    Paragraph 165 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

166.    Paragraph 166 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

## COUNT I

### (Declaratory Judgment)

167.    In answer to paragraph 167, Arm repeats, re-alleges, and incorporates by reference its answers to paragraphs 1–166 as if fully set forth herein.

168.    In answer to paragraph 168, Arm:

    a.    is not required to respond to sub-paragraph (a) because it contains legal conclusions. To the extent a response is required, Arm denies the allegations in this sub-paragraph. Further, Arm did not withhold deliverables under the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

    b.    is not required to respond to sub-paragraph (b) because it contains legal conclusions. To the extent a response is required, Arm denies the allegations in this sub-paragraph, at least because Arm did not breach the Qualcomm ALA. Further, the specific remedy Qualcomm seeks does not apply, at least because Arm did not withhold deliverables under the Qualcomm ALA, the Qualcomm ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology.

33291353.2

c.    is not required to respond to sub-paragraph (c) because it contains legal conclusions. To the extent a response is required, Arm denies the allegations in this sub-paragraph.

d.    is not required to respond to sub-paragraph (d) because it contains legal conclusions. To the extent a response is required, Arm denies the allegations in this sub-paragraph.

e.    is not required to respond to sub-paragraph (e) because it contains legal conclusions. To the extent a response is required, Arm denies the allegations in this sub-paragraph.

f.    is not required to respond to sub-paragraph (f) because it contains legal conclusions. To the extent a response is required, Arm denies the allegations in this sub-paragraph.

g.    is not required to respond to sub-paragraph (g) because it contains legal conclusions. To the extent a response is required, Arm denies the allegations in this sub-paragraph.

h.    is not required to respond to sub-paragraph (h) because it contains legal conclusions. To the extent a response is required, Arm denies the allegations in this sub-paragraph.

i.    is not required to respond to sub-paragraph (i) because it contains legal conclusions. To the extent a response is required, Arm denies the allegations in this sub-paragraph.

j.      is not required to respond to sub-paragraph (j) because it contains legal

conclusions. To the extent a response is required, Arm denies the

allegations in this sub-paragraph.

169.    Paragraph 169 contains legal conclusions to which no response is required. To the

extent a response is required, Arm denies the allegations in this paragraph, at least because Arm

did not breach the Qualcomm ALA. Further, the specific remedy Qualcomm seeks does not

apply, at least because Arm did not withhold deliverables under the Qualcomm ALA, the

Qualcomm ALA does not cover the unlicensed Nuvia technology, and Arm's conduct did not

breach Sections ████████████ of the Qualcomm TLA.

170.    Paragraph 170 contains legal conclusions to which no response is required. To the

extent a response is required, Arm denies the allegations in this paragraph.

171.    Paragraph 171 contains legal conclusions to which no response is required. To the

extent a response is required, Arm denies the allegations in this paragraph.

172.    Paragraph 172 contains legal conclusions to which no response is required. To the

extent a response is required, Arm denies the allegations in this paragraph, at least because Arm

withdrew its notice of material breach of the Qualcomm ALA on January 8, 2025 while Arm's

ongoing legal challenges are pending.

## COUNT II

### (Breach of the Qualcomm ALA)

173.    In answer to paragraph 173, Arm repeats, re-alleges, and incorporates by

reference its answers to paragraphs 1–172 as if fully set forth herein.

174.    Paragraph 174 contains legal conclusions to which no response is required. To the

extent a response is required, Arm admits that the Qualcomm ALA is a valid, binding contract.

33291353.2

31

**A370**

175.    Paragraph 175 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology.

176.    Paragraph 176 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold deliverables under the Qualcomm ALA, Qualcomm's ALA does not cover the unlicensed Nuvia technology, and Qualcomm is not entitled to support for the unlicensed Nuvia technology.

177.    Paragraph 177 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm has no obligations under the Qualcomm ALA with regard to unlicensed Nuvia technology.

178.    Paragraph 178 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

179.    Paragraph 179 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not breach the Qualcomm ALA. Further, the specific remedy Qualcomm seeks does not apply, at least because Arm did not withhold deliverables under the Qualcomm ALA, and Qualcomm's ALA does not cover the unlicensed Nuvia technology.

180.    Paragraph 180 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

33291353.2

## COUNT III

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

181.    In answer to paragraph 181, Arm repeats, re-alleges, and incorporates by reference its answers to paragraphs 1–180 as if fully set forth herein.

182.    Paragraph 182 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations.

183.    Paragraph 183 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies that it has breached the implied covenant of good faith and fair dealing for either the QC ALA or the QC TLA. Arm otherwise lacks sufficient information or belief about the truth of the allegations in this paragraph and on that basis denies them.

184.    Paragraph 184 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

185.    Paragraph 185 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

186.    Paragraph 186 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies that its actions have frustrated the essential purposes of the QC ALA and TLA. Arm otherwise lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph, and on that basis denies them.

187.    Paragraph 187 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not breach the implied covenant of good faith and fair dealing for either the Qualcomm ALA or TLA.

33291353.2

33

**A372**

188.    Paragraph 188 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies that it has breached the implied covenant of good faith and fair dealing for either the QC ALA or TLA. Arm otherwise lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph, and on that basis denies them.

## COUNT IV

### (Intentional Interference with Prospective Economic Advantage)

189.    In answer to paragraph 189, Arm repeats, re-alleges, and incorporates by reference its answers to paragraphs 1–188 as if fully set forth herein.

190.    In answer to paragraph 190, Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph, and on that basis denies them.

191.    Paragraph 191 contains legal conclusions to which no response is required. To the extent a response is required, Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph, and on that basis denies them.

192.    Arm denies the allegations in paragraph 192.

193.    Paragraph 193 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegation in this paragraph.

194.    Arm denies the allegations in paragraph 194.

195.    In answer to paragraph 195, Arm lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph, and on that basis denies them.

33291353.2

34

**A373**

196.    In answer to paragraph 196, Arm denies that it has made efforts to interfere with Qualcomm's business relationships. Arm otherwise lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph, and on that basis denies them.

## COUNT V

### (Negligent Interference with Prospective Economic Advantage)

197.    In answer to paragraph 197, Arm repeats, re-alleges, and incorporates by reference its answers to paragraphs 1–196 as if fully set forth herein.

198.    Paragraph 198 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

199.    Paragraph 199 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

200.    Paragraph 200 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

201.    Paragraph 201 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

202.    Paragraph 202 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

203.    Paragraph 203 contains legal conclusions to which no response is required. To the extent a response is required, Arm lacks sufficient knowledge or information to form a belief about the truth of the allegations in this paragraph, and on that basis denies them.

## COUNT VI

### (Violations of California Unfair Competition Law,

### Cal. Bus. & Prof. Code §§ 17200 et seq.)

204.    In answer to paragraph 204, Arm repeats, re-alleges, and incorporates by reference its answers to paragraphs 1–203 as if fully set forth herein.

205.    Paragraph 205 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations.

206.    Paragraph 206 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations.

207.    Paragraph 207 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations.

208.    Paragraph 208 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations.

209.    Paragraph 209 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations.

210.    Paragraph 210 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations.

211.    Paragraph 211 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations.

212.    Paragraph 212 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations.

## COUNT VII

### (Breach of Section ███ of the QC TLA)

213.    In answer to paragraph 213, Arm repeats, re-alleges, and incorporates by reference its answers to paragraphs 1–212 as if fully set forth herein.

214.    Paragraph 214 contains legal conclusions to which no response is required. To the extent a response is required, Arm admits that the Qualcomm TLA is a valid, binding contract. Arm denies the remaining allegations in this paragraph.

215.    Paragraph 215 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

216.    Paragraph 216 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph, at least because Arm did not withhold a license offer under the Qualcomm ALA or TLA.

217.    Paragraph 217 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

218.    Paragraph 218 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

219.    Paragraph 219 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

220.    Paragraph 220 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

## COUNT VIII

### (Breach of Section ███ of the QC TLA)

221.    In answer to paragraph 221, Arm repeats, re-alleges, and incorporates by reference its answers to paragraphs 1–220 as if fully set forth herein.

222.    Paragraph 222 contains legal conclusions to which no response is required. To the extent a response is required, Arm admits that the Qualcomm TLA is a valid, binding contract. Arm denies the remaining allegations in this paragraph.

223.    Paragraph 223 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

224.    Paragraph 224 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

225.    Paragraph 225 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

226.    Paragraph 226 contains legal conclusions to which no response is required. To the extent a response is required, Arm denies the allegations in this paragraph.

### PRAYER FOR RELIEF

Qualcomm's Prayer for Relief contains legal conclusions to which no response is required. To the extent that a response is required, Arm denies that Qualcomm is entitled to any of the relief it seeks in its prayer for relief.

### JURY DEMAND

Pursuant to D. Del. LR 38.1 and Fed. R. Civ. P. 38, Arm hereby demands a TRIAL BY JURY of all claims and issues presented in Qualcomm's Complaint that are so triable.

33291353.2

## DEFENSES

Without admitting or acknowledging that it bears the burden of proof as to any of them, Arm asserts the following defenses and reserves the right to amend its Answer as additional information becomes available.

## FIRST DEFENSE

### (Failure to State a Claim)

Qualcomm fails to state a claim upon which relief can be granted. Qualcomm filed its complaint against Arm Holdings plc, but Arm Holdings plc is not a party to the Qualcomm ALA or TLA.

Under the Qualcomm ALA, Arm has no obligation to provide, and Qualcomm has no right to seek, verification or support for unlicensed technology developed under the now-terminated Nuvia ALA. Instead, the unlicensed Nuvia-based technology is subject to an independent obligation requiring discontinuance and destruction regardless of the Qualcomm ALA. The license under the Qualcomm ALA is limited to specific, defined technology delivered by Arm to Qualcomm under the Qualcomm ALA, and, contrary to Qualcomm's assertions, does not extend to any other Arm technology, like the technology delivered by Arm to Nuvia under the Nuvia ALA.

The Qualcomm ALA limits Qualcomm's rights, and Arm's obligations, to designs based on technology Arm delivered to Qualcomm under that ALA, rather than some other ALA, and developed under the licenses in the Qualcomm ALA, rather than some other ALA. None of this is true of the Phoenix core or other designs developed under the Nuvia ALA based on the technology delivered and licenses granted by Arm to Nuvia under the Nuvia ALA, when Nuvia was a standalone company. Arm thus has no obligations under the

33291353.2

39

**A378**

Qualcomm ALA with respect to that technology, which is instead subject to independent discontinuance and destruction obligations that apply to Qualcomm's Oryon designs and related Snapdragon X products incorporating that technology. Qualcomm has also failed to provide appropriate notice for the alleged breach.

The Qualcomm ALA expressly permitted Arm's sending of a notice letter to Qualcomm. It does not impose confidentiality obligations specific to assertions of breach or the right to terminate, or otherwise restrict Arm's right to make related public statements. Arm's statements to the press, moreover, do not violate any statute or other law. Indeed, no law prohibits Arm from making the statements in the letter publicly or via press release. Arm also has a constitutional right to make public statements regarding its view of the case. And asserting a contractual right to terminate is not an antitrust violation, nor is allegedly discussing contractual rights with the press, particularly where Arm has no duty to deal with Qualcomm, much less on Qualcomm's preferred terms.

Arm also owed no duty to Qualcomm with respect to Qualcomm's prospective customers, nor does Qualcomm identify such a duty. The supposed relationships were speculative, and Arm's conduct did not disrupt these relationships.

Section ███ of the Qualcomm TLA does not apply to Arm's offers to license the ████ ████████ in 2024. ██████████ of the Qualcomm TLA states that Arm's ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

██████████████████████████████ Section ███ thus only applies ██████████

████████████████████████████████████████████████████

██████████████████ Section ███ also ████

██████████████

Qualcomm first licensed the █████████████ in 2019 ██████████

█████████████████████ Under Section ███, because █████████

were licensed to Qualcomm in 2019, Qualcomm was required to submit any ██████████

██████████████████████. Because Qualcomm did not

████████████████████████████████████████████

██████████████, Arm was under no obligation with respect to Qualcomm's 2024 request to

license ████████████████████.

Section ███ of the Qualcomm TLA similarly does not apply to Arm's offers to license the

████████████████████ in 2024. ██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ Because Section ███ is limited to ██████████

██████████████ and Qualcomm first licensed the █████████████ in 2019,

██████████████ does not apply to Arm's offers to license the █████████████ in

2024.

Arm's licensing offers to Qualcomm for the █████████████, moreover,

more than complied with the Qualcomm TLA. In addition, Arm's ██████████████

██████████████████████ were consistent with the TLA's terms, and

included ██████████████ because Arm has a separate agreement with Qualcomm ███



33291353.2

41

**A380**

████████████████████████████████████ .

Arm also had no obligation to respond to Qualcomm's alleged request in May 2020—over five years ago—to extend the Qualcomm ALA under Section ██████ . Qualcomm failed to provide proper notice of its intention to renew the ALA. Further, Arm had no obligation under the ALA to negotiate a license to the v10 architecture, which did not exist at the time of Qualcomm's request. ██████████████████████████████████████ ████████████████████████████████████ , which did not include the v10 architecture. Qualcomm itself acknowledged in May 2020 that no meaningful discussions could happen at that time around the terms and conditions for an extension of the ALA to cover the v10 architecture.

## SECOND DEFENSE

### (Waiver/Estoppel/Laches/Acquiescence)

Qualcomm's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, laches, and/or acquiescence. Qualcomm was aware of the purported basis for its claims as early as October 10, 2022, if not 2020 for its v10 claims. And Arm expressly stated in its November 15, 2022 response in the original Delaware litigation to enforce the Nuvia termination provisions that Qualcomm is not licensed to use Arm technology developed under the now-terminated Nuvia ALA. (*Arm Ltd. v. Qualcomm Inc.*, C.A. No. 22-1146-MN, D.I. 21 (Nov. 15, 2022) (Arm's Redacted Answer to Defs.' Am. Countercls.).) Yet Qualcomm did not pursue its claims until well over a year later, despite engaging in active litigation against Arm regarding the Nuvia termination provisions barring use of Nuvia-based technology. By delaying its assertion of the claims in this action, Qualcomm waived its claims, acquiesced to Arm's position, is estopped from bringing these claims, and

is barred by the doctrine of laches. And Qualcomm has failed to provide appropriate notice for the alleged breach.

### **THIRD DEFENSE**

### **(Unclean Hands)**

Qualcomm's claims are barred, in whole or in part, by the equitable doctrine of unclean hands. As set forth in Arm's action to enforce the termination obligations of the Nuvia ALA, in violation of the Nuvia contract and in violation of law, Qualcomm induced Nuvia to materially breach the Nuvia ALA by acquiring Nuvia without Arm's consent to the assignment of the Nuvia ALA. Qualcomm continues to attempt to benefit from its improper acquisition of Nuvia technology and the related material breach of the Nuvia ALA by wrongly insisting that the unlicensed Nuvia technology is licensed under the Qualcomm ALA and seeking to enforce ███████████████ as to that unlicensed technology. Those ██████████████████████, however, apply only to technology developed using technology delivered by Arm to Qualcomm under the Qualcomm ALA, unlike the Nuvia technology developed using Arm technology delivered by Arm to Nuvia under the now-terminated Nuvia ALA. Qualcomm has acted wrongfully in seeking to reap the benefits from technology developed under the now-terminated Nuvia ALA, improperly transferring technology developed under the Nuvia ALA to Qualcomm, combining Nuvia and Qualcomm workstreams and personnel, while ignoring the obligations under the Nuvia ALA to discontinue and destroy the unlicensed Nuvia technology.

Qualcomm also published Arm's October 2024 letter just days after Arm did. Further, on March 25, 2025, Bloomberg published a story concerning Qualcomm's non-public complaints of anticompetitive behavior at the European Commission, U.S. Federal

33291353.2

Trade Commission, and Korea Fair Trade Commission. Qualcomm's publication of Arm's letter, and non-public litigation materials to Bloomberg bar its claims against Arm under the doctrine of unclean hands.

## FOURTH DEFENSE

### (Limits on Damages)

The Qualcomm ALA and TLA limit the damages available for the alleged breach in a variety of ways, including barring the recovery of particular types of damages for alleged breaches, and specifying sole and exclusive remedies for certain breaches.

## FIFTH DEFENSE

### (Compulsory Counterclaims/Res Judicata/Collateral Estoppel)

Qualcomm's claims are barred, in whole or in part, by the doctrines of compulsory counterclaims, res judicata, and/or collateral estoppel. Qualcomm's claims in this new action arise out of the same transaction and occurrence at issue in the action styled *Arm Ltd. v. Qualcomm Inc., et al*., C.A. No. 22-1146-MN (D.I. 295), and share a logical relationship with that action, because they (1) rest on one of the contracts at issue in the original action, and (2) arise from allegations of breach set forth in the original action. More specifically, Arm expressly stated in its November 15, 2022 response in the Delaware litigation that Qualcomm's ALA does not cover the unlicensed Nuvia technology developed under the now-terminated Nuvia ALA. Yet Qualcomm failed to timely assert claims against Arm in the earlier-filed action in this Court, as the Court confirmed by denying leave to amend to add these claims in the original action, based on Qualcomm's failure to assert claims at the time they arose. Accordingly, Qualcomm's claims are barred under the doctrines of compulsory counterclaims, res judicata, and/or collateral estoppel.

33291353.2

## SIXTH DEFENSE

### (*Noerr-Pennington* Doctrine and California Litigation Privilege)

Qualcomm's claims are barred, in whole or in part, by the First Amendment, the *Noerr-Pennington* doctrine and the California litigation privilege. Arm's alleged conduct, including the October 22, 2024 notice of material breach of the Qualcomm ALA and any alleged publicizing of that notice, is protected litigation conduct under these doctrines. Arm's notice to Qualcomm was  made during litigation with Qualcomm and accurately described Arm's claims and litigation position.

## SEVENTH DEFENSE

### (Statute of Limitations)

Qualcomm's claims are barred, in whole or in part, by the applicable statute of limitations. *See*, *e.g.*, 10 Del. C. § 8106.

## EIGHTH DEFENSE

### (Freedom of Speech and Freedom to Petition)

Qualcomm's claims are barred, in whole or in part, because Arm's speech to the press is protected by the free speech and petition clauses of the First Amendment, federal and state common law, and statutes such as California's Anti-SLAPP statute (Cal. Civ. Proc. Code § 425.16).

## NINTH DEFENSE

### (Preclusion)

Qualcomm's claims are barred, in whole or in part, by claim preclusion and/or issue preclusion, because claims and/or issues in this new action are the same as claims and/or issues in the action styled *Arm Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146-MN (D.I.

295).

## **TENTH DEFENSE**

### **(Failure to Mitigate)**

Qualcomm's claims are barred, in whole or in part, because Qualcomm failed to mitigate its damages.

## **ELEVENTH DEFENSE**

### **(Unenforceability of Qualcomm ALA and TLA Provisions)**

Qualcomm's claims are barred, in whole or in part, because ███████ of the Qualcomm ALA and ███████ of the Qualcomm TLA are unenforceable penalties under Cal Civ. Code § 1671(b).

Dated: June 17, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
gregg.locascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

_/s/ Anne Shea Gaza_
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

33291353.2

47

**A386**

370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

33291353.2

48

**A387**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 17, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
ejmorgan@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A388**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A389**

# Exhibit 6

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC, f/k/a, ARM LTD. a U.K. corporation<br><br>Defendant. | C.A. No. 24-490-MN<br><br>**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY** |

**ARM'S FIRST SUPPLEMENTAL RESPONSE TO**
**QUALCOMM'S THIRD SET OF INTERROGATORIES (NO. 12)**

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively "Qualcomm")'s Third Set of Interrogatories (No. 12).

**GENERAL OBJECTIONS**

Arm incorporates by reference the Objections set forth in Arm's responses to Qualcomm's First Set of Interrogatories, served March 24, 2025, Qualcomm's Second Set of Interrogatories, served June 16, 2025, Arm's supplemental response to Qualcomm's Amended Interrogatory No. 3, served June 18, 2025, and Arm's Objections and Responses to Qualcomm's Third Set of Interrogatories No. 12, served July 9, 2025.

1

**A391**

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

**SPECIFIC OBJECTIONS AND RESPONSES**

**INTERROGATORY NO. 12:**

Identify and describe in detail the complete factual and legal bases for any defense or counterclaim that You assert in response to the Complaint. Your response should include an identification of all persons knowledgeable about the facts referenced or relied upon in your response, and all documents (by Bates number) you rely upon in support of your response.

**RESPONSE TO INTERROGATORY NO. 12 (JULY 9, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it seeks information regarding "the complete factual and legal bases" for "any defense," "all persons," and "all documents," without limitation. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties. Arm further objects to this request to the extent it seeks expert testimony, which is not yet due and will be provided in accordance with the Scheduling Order. Arm further objects to this request as duplicative of other Interrogatories.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm's Answer sets forth detailed explanations of the factual and legal basis for Arm's defenses that it is asserting in this case, which include: Failure to State a Claim; Waiver/Estoppel/Laches/Acquiescence; Unclean Hands; Limits on Damages; Compulsory Counterclaims/Res Judicata/Collateral Estoppel; the *Noerr-Pennington* Doctrine and California

2

**A392**

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

Litigation Privilege; the Statute of Limitations; Freedom of Speech and Freedom to Petition; Claim and Issue Preclusion; Qualcomm's Failure to Mitigate; and Unenforceability of the ALA and TLA. D.I. 234 at pp. 39–46. Arm incorporates by reference its Answer to Qualcomm's Second Amended Complaint, D.I. 234. Arm asserts all of these defenses and its incorporation by reference of them here should not be construed as a waiver or forfeiture of any such defenses.

Arm also incorporates by reference its Motion to Dismiss, D.I. 19, 28, Arm's Motion To Dismiss Qualcomm's First Amended Complaint, D.I. 48, 72, and Arm's Motion to Dismiss Qualcomm's Second Amended Complaint, D.I. 232, 233, 305. Arm's Motions to Dismiss further expand on Arm's defenses and provides further factual and legal details support for them, including regarding Arm's *Noerr-Pennington*, California Litigation Privilege, and Anti-SLAPP (D.I. 233 at 4–8), Failure to State a Claim (D.I. 233 at 9–19), and Statute of Limitations (D.I. 233 at 20) defenses. Further, Arm incorporates by reference its responses to Qualcomm's Interrogatory Nos. 1–11, including the testimony and documents cited therein (and any supplements thereto), which contain additional factual and legal support for Arm's defenses.

Arm also provides below additional explanation regarding certain of its defenses. Arm notes, however, that Qualcomm to date has refused to provide meaningful or reciprocal discovery into its allegations. For example, Qualcomm has failed to remedy any of the deficiencies in Qualcomm's production set forth in Arm's letter briefing on discovery disputes. *See* D.I. 159. Qualcomm has also refused to supplement its interrogatory responses to meaningfully disclose its case theories. Qualcomm has also asserted improper privilege claims over information that is business advice or strategy, and not legal in nature. In another example, Qualcomm has refused to produce communications with the media or customers about its rights under the QC ALA despite alleging that Arm's statements about the same damaged Qualcomm's customer relationships,

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

documents regarding its publication of the same letter in its SEC filings as described above, and documents concerning its own "leaking," including for a story about confidential competition complaints QC placed with the same reporter at the same news outlet Arm allegedly communicated with.  Qualcomm's improper refusal to provide or to block discovery on the core issues in the case has impaired Arm's ability to further develop its defenses.  Accordingly, Arm provides this response and additional information based on the information currently available to it, and reserves the right to supplement this response should Qualcomm provide additional discovery, including any depositions taken in the future or after the close of the fact discovery period.

<u>**Unclean Hands**</u>

As set forth in Arm's answer, D.I. 234 at 43–44, Qualcomm's claims are barred, in whole or in part, by the equitable doctrine of unclean hands.  In addition to Qualcomm's actions regarding Nuvia and Qualcomm's publishing of Arm's October 2024 letter, discovery has revealed that Qualcomm's actions surrounding its requests to renew licenses for ███████████ in October 2024 constitute unclean hands.  Qualcomm's requests to Arm for █████████ ████ in 2024 were made in bad faith, were deceitful, and/or were fraudulent, including because they were made as a pretext to prompt a response from Arm regarding other products.  For example,

███████████████████████████████████

███████████████████████████████████

██████  *See, e.g.*, Wolf Dep. at 75–77.  ████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

*See* QCVARM_0605055.  ████████████████████████

4

**A394**

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

QCVARM_0447175.  And although Arm later agreed to terms for renewal licenses on certain

peripheral IP with Qualcomm, Qualcomm never attempted to negotiate better terms for or discuss

the ███████████ with Arm, confirming that it had no legitimate plan to use those cores after

October 2026, through which it is licensed under its current agreement.

These actions constitute bad faith, were deceitful, and/or were fraudulent as evidenced by

other documents produced by Qualcomm, and are directly related to Arm's alleged breach of the

TLA as asserted by Qualcomm in the SAC.  *See, e.g.*, D.I. 137, Counts VII, VIII. ████████████

████████████████████████████████████████████████████

███████████████████████████████████ *See* QCVARM_0447175. ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ *Id.*  With ███████████████████ Qualcomm ███████████████

those products after October 2026 as it did not have those products on its CPU roadmap for the

future. ███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████

Further, given the ongoing disputes between Qualcomm and Arm, Qualcomm not only used

its 2024 licensing demands ████████████████████, but also to manufacture additional

meritless claims to assert against Arm in litigation, and as a basis to withhold royalty payments to

5

**A395**

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

Arm under ███ of the TLA.  Thus, any remedies Qualcomm seeks in connection with Arm's alleged violation of the TLA are barred by the doctrine of unclean hands.

### Limits on Damages

As set forth in Arm's Answer, D.I. 234 at 44, the Qualcomm ALA and TLA limit the damages available for any alleged breach.  As an initial matter, Qualcomm has failed to show what its purported damages are for any allegation it has made in the complaint.  Nor has Qualcomm identified evidence purporting to quantify the supposed "harm" it has suffered as a result of Arm's alleged actions.  Arm disputes that Qualcomm has suffered any "harm" or damages, and reserves the right to supplement this response in the event Qualcomm later attempts to show any purported "harm" or damages.

Setting aside this failure of proof, Qualcomm's damages, if any, are limited by the ALA and TLA.  For example, ███████████████████████



ARM_000558357 at 381.  ███████████████████████.  *See* ARM_00103918 at 937.  To the extent Qualcomm intends to seek damages for any of these types of damages, it is precluded from doing so.  For example, any interruption of Qualcomm's business due to Arm's alleged actions, such as "shifting resources," "delays," or changes made in its

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

"roadmapping and SoC planning process," is something Qualcomm agreed that it is not permitted to recover.  *See, e.g.*, D.I. 137 ¶¶ 180, 188, 195–196, 203, 211, 220, 226.  Likewise, Qualcomm cannot recover for any supposed "harm" identified by Mr. Amon, such as, but not limited to, ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████    *See* C. Amon Dep Transcript (Rough).

In another example, the TLA provides in ████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

*See* ARM_00103918 at 931.  ████████ of the TLA makes clear that the ████████████

████████████████████████████████████████████████████████

████████████████████  Thus, Qualcomm is contractually barred from seeking any other damages or remedies for alleged breaches of ████████ including consequential or indirect damages, and is limited to the specific contractual remedies set forth in the TLA in ████████

████  Moreover, even if Qualcomm could overcome these contractual limitations on liability, it cannot establish that Arm's alleged conduct was the but-for or proximate cause of any harms that Qualcomm allegedly suffered.

**Unenforceability of Qualcomm ALA and TLA Provisions**

As set forth in Arm's Answer, D.I. 234 at 46, ████████ of the QC ALA and the QC TLA provide that a breach by Arm of certain provisions of the ALA or TLA will result in ████████

████████████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

███████████████████████████████████████████████████████████

████████████████████████.”   ARM_00103918 at 956; ARM_00055357 at 373.   These

provisions are unenforceable and unreasonable contractual penalty clauses.

For example, Qualcomm has not suffered any harm as a result of Arm's alleged breach of

███████ of the QC ALA, nor has Qualcomm identified any such harm.  Although Arm has served

interrogatories seeking Qualcomm's complete factual and legal basis for contending that Arm's

conduct has harmed Qualcomm (Arm Interrogatory No. 1) and seeking a specific description of

Qualcomm's efforts to verify or attempt to verify compliance with the Arm architecture (Arm

Interrogatory No. 13), Qualcomm has failed to identify any particular harm that Qualcomm claims

to have suffered as a result of Arm's alleged breach of ██████ of the QC ALA other than to repeat

its allegation from the complaint that Qualcomm was "forced to (1) expend extra time and

resources, including Qualcomm engineers, to run ACK tests to verify compliance with the Arm

ISA, and (2) use their own engineers to address issues that would have been addressed by Arm's

patches."  *See* Qualcomm's Resp. to Arm Interrog. No. 1.

To the contrary, Arm's alleged withholding of OOB and ACK patches (which Arm disputes,

and which does not constitute a breach of ███████ of the QC ALA, including for the reasons

explained in Arm's response to Qualcomm Interrogatory Nos. 1 and 5) did not prevent Qualcomm

from completing the verification process for Nuvia-based custom CPU designs, nor did it prevent

Qualcomm from releasing products that incorporate those CPU designs.  Moreover, Qualcomm

released its products incorporating Nuvia-based custom CPU designs on time or even ahead of

schedule.  For example, Nuvia's President and Founder and Qualcomm's current Senior VP of

Engineering, Gerard Williams, who is the head of Qualcomm's CPU design and engineering team

and manages the Qualcomm team responsible for verifying that Qualcomm's custom CPU designs

8

**A398**

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

are compliant with Arm's architecture, testified that ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████. *See, e.g.,*

G. Williams Dep. Tr. (Rough) at 3, 8–9, 54–58.

Likewise, Qualcomm's TLA allegations demonstrate that ████████ of the TLA is an

unenforceable penalty clause. ████████ is applicable to ███████████████████

██████████████████████" However, there is no dispute that Arm made offers for a

license to the ██████████████ cores in October 2024 and therefore satisfied its obligation

under ████████, which requires only that Arm ███████████████████████████████

████████████████    *See, e.g.*, QCVARM_0617829.   Arm's witnesses have also repeatedly

confirmed at deposition that Arm investigated and determined the ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████  Arm hereby incorporates by reference the testimony

of Ehab Youssef and Karthik Shivashankar, and the forthcoming testimony of Jeff Fonseca and

Akshay Bhatnagar.   Further, as to ████ Arm also confirmed that it did not "███████████

████████████████████████████████████████████████████████

██████████████████e" when it made licensing renewal offers to Qualcomm in October 2024 for

██████████████████, as Arm and Qualcomm have a ████████████████████████████

████████████████████  ARMQC_02772246.

Even if Qualcomm could overcome the contractual limitations on liability discussed above

in the TLA and ALA, it cannot establish that Arm's alleged conduct was the but-for or proximate

9

**A399**

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

cause of any harms that Qualcomm allegedly suffered.  There is no relationship (let alone a reasonable relationship) between ███████████████████ and the *de minimis* damages, if any, that Qualcomm alleges to have suffered.  If Qualcomm were to ███████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████).  Such a windfall to Qualcomm would be unreasonably large and completely out of proportion to any alleged harm to Qualcomm.  Likewise, to date, Qualcomm has failed to show its supposed damages or harm due to Arm's alleged actions.  To the extent Qualcomm attempts to do so in the future, that quantification will only further confirm that ███████ of the QC ALA and the QC TLA are unenforceable.

Further, █████████████████████ was not the result of a reasonable endeavor by the parties to estimate a fair compensation to Qualcomm in the event of Arm's alleged breach of ████████  During the parties' negotiation of the QC ALA and the QC TLA, the parties described ████████████████████████ that is distinct from and goes "beyond actual damages."    *See,*    *e.g.,*    QCARM_3419636;    QCARM_3419788;    QCARM_3421025; QCARM_3421029;    QCARM_3961297;    QCARM_3961355;    QCARM_3961358; QCARM_7428754; QCARM_7431828; QCARM_7431832.

Arm further incorporates by reference the testimony of all witnesses that have been deposed in the case to date, including those specifically referenced herein.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 (JULY 11, 2025):**

      Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

      Pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARM_00095578, ARM_00095579, ARM_00085679, ARM_00085680, ARM_00111449, ARM_01228027, ARM_01228031, ARM_01228035, ARM_01228039, ARM_01228043, ARM_01228044, ARM_01228048, ARM_01228049, ARM_01228053, ARM_01228054, ARM_01228058, ARM_01228059, ARM_01228063, ARM_01228064, ARM_01228073, ARM_01228074, ARM_01228075, ARM_01239440, ARM_01239441, ARM_01239442, ARM_01239444, ARM_01239445, ARM_01239447, ARM_01239448, ARM_01239449, ARM_01239451, ARM_01239452, ARM_01239453, ARM_01239458, ARM_01239459, ARM_01239464, ARM_01239465, ARM_01239470, ARM_01239471, ARM_01239472, ARM_01239473, ARM_01239474, ARM_01239475, ARM_01239476, ARM_01239477, ARM_01239478, ARM_01239479, ARM_01239483, ARM_01239485, ARM_01239486, ARM_01239488, ARM_01239503, ARM_01239504, ARM_01239506, ARM_01423231, ARM_01423342, ARM_01423234, ARM_01423345, ARM_01423238, ARM_01423349, ARM_01423239, ARM_01423350, ARM_01333009, ARMQC_02601210, ARMQC_02603580, ARMQC_02603581, ARMQC_02603582.

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017

YOUNG CONAWAY STARGATT & TAYLOR, LLP


_/s/ Robert M. Vrana_
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

_Attorneys for Defendant Arm Holdings plc_

12

**A402**

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

(213) 892-5348
nfung@mofo.com

13

**A403**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A404**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A405**

# Exhibit 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>   a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>   a Delaware corporation,<br><br>               Plaintiffs,<br><br>         v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>   a U.K. corporation,<br><br>               Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 24-490 (MN) |

## SCHEDULING ORDER

This 31st day of January 2025, ~~the Court having conducted an initial Rule 16(b) scheduling conference pursuant to Local Rule 16.1(b), and~~ the parties having determined after discussion that the matter cannot be resolved at this juncture by settlement, voluntary mediation, or binding arbitration;

IT IS ORDERED that:

1.    <u>Rule 26(a)(1) Initial Disclosures and E-Discovery Order</u>.

Unless otherwise agreed to by the parties, the parties shall make their initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) and Paragraph 3 of the Delaware Default Standard for Discovery on or before February 7, 2025.  The parties shall submit a proposed E-Discovery protocol and order by January 31, 2025.

2.    <u>Joinder of Other Parties and Amendment of Pleadings</u>.  All motions to join other parties, and to amend or supplement the pleadings, shall be filed on or before March 14, 2025. Unless otherwise ordered by the Court, any motion to join a party or motion to amend the pleadings shall be made pursuant to the procedures set forth in Paragraphs 7(g) and 8.

**A407**

3.      <u>Application to Court for Protective Order</u>.  Should counsel find it will be necessary to apply to the Court for a protective order specifying terms and conditions for the disclosure of confidential information, counsel should confer and attempt to reach an agreement on a proposed form of order and submit it to the Court on or before January 31, 2025.  Should counsel be unable to reach an agreement on a proposed form of order, counsel must follow the provisions of Paragraph 7(g) below.

Any proposed protective order must include the following paragraph:

<u>Other Proceedings</u>.  By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated "confidential" [the parties should list any other level of designation, such as "highly confidential," which may be provided for in the protective order] pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

4.      <u>Papers Filed Under Seal</u>.    In accordance with section G of the Revised Administrative Procedures Governing Filing and Service by Electronic Means, a redacted version of any sealed document shall be filed electronically within seven (7) days of the filing of the sealed document.

5.      <u>Courtesy Copies</u>.  The parties shall provide to the Court two (2) courtesy copies of all briefs and any other document filed in support of any briefs (*i.e.*, appendices, exhibits, declarations, affidavits etc.).  This provision also applies to papers filed under seal.  All courtesy copies shall be double-sided.

6.      <u>ADR Process</u>.  This matter is NOT referred to a magistrate judge to explore the possibility of alternative dispute resolution.

7.    Discovery.  Unless otherwise ordered by the Court or agreed to by parties, the limitations on discovery set forth in the Federal Rules shall be strictly observed.

(a)    Fact Discovery Cut Off.  All fact discovery in this case shall be initiated so that it will be completed on or before July 11, 2025.

(b)    Document Production.  The parties agree to produce documents on a rolling basis and will not wait until the substantial completion of document production deadline before producing documents.  Document production shall be substantially complete by [**Qualcomm's proposal**: April 11, 2025][1] [**Arm's proposal**: May 22, 2025]. May 1, 2025.

(c)    The parties have agreed to discuss and include provisions in the Protective Order concerning re-use and production in this case of materials produced in *Arm Ltd v. Qualcomm et al.*, C.A. No. 22-1146 (D. Del.), excluding source code.

(d)    Requests for Admission.  A maximum of **thirty (30)** requests for admission are permitted for each side.  The parties shall separately meet and confer to discuss any stipulations regarding the authenticity of any documents to be offered as exhibits in this case.

(e)    Interrogatories.

i.    A maximum of **twenty-five (25)** interrogatories, including contention interrogatories, are permitted for each side.

ii.    The Court encourages the parties to serve and respond to contention interrogatories early in the case.  In the absence of agreement among the parties, contention interrogatories, if filed, shall first be addressed by the party with the burden of proof.  The adequacy

---

[1] Given scheduling and production difficulties in the prior case, Qualcomm believes that its earlier substantial completion deadline is necessary to ensure sufficient time to complete depositions.

of all interrogatory answers shall be judged by the level of detail each party provides (*i.e.*, the more detail a party provides, the more detail a party shall receive).

      (f)   <u>Depositions</u>.

      i.   <u>Limitation on Deposition Discovery</u>.  Each side is limited to a total of seventy (70) hours of taking testimony by deposition upon oral examination.  This limitation does not apply to third party or expert depositions.  For purposes of this provision, former employees shall not be considered third parties.

      ii.   <u>Location of Depositions</u>.  [**Qualcomm's proposal:** Given that there are witnesses located outside of the United States that are expected to testify at trial, the parties agree that all depositions shall take place within the continental United States.] [**Arm's proposal**: ~~Any party or representative (officer, director, or managing agent) of a party filing a civil action in this district court must ordinarily be required, upon request, to submit to a deposition at a place within 100 miles of that party or representative's place of residence. The parties will meet and confer regarding each deposition to determine whether a deposition by remote means is an acceptable alternative to an in-person deposition. A defendant who becomes a counterclaimant, cross-claimant, or third-party plaintiff shall be considered as having filed an action in this Court for the purpose of this provision.]~~ [2] [3]

_____

[2] ~~Arm's proposal for the location of depositions is identical to the language agreed to between the parties in the scheduling order for *Arm Ltd v. Qualcomm et al.*, C.A. No. 22-1146 (D. Del.), which the Court entered on Dec. 19, 2022 (D.I. 26) and pursuant to which the parties completed discovery in a timely manner.~~

[3] ~~Qualcomm disagrees that the parties "completed discovery in a timely manner" in the prior case. The parties needed to extend fact discovery to account for travel to India and the UK for depositions of Arm's witnesses. D.I. 87.~~

    (g)    <u>Disclosure of Expert Testimony</u>.

    i.    <u>Expert Reports</u>.  For the party who has the initial burden of proof on the subject matter, the initial Federal Rule of Civil Procedure 26(a)(2) disclosure of expert testimony is due on or before August 8, 2025.  The supplemental disclosure to contradict or rebut evidence on the same matter identified by another party is due on or before September 5, 2025.  Reply expert reports from the party with the initial burden of proof are due on or before September 19, 2025.  No other expert reports will be permitted without either the consent of all parties or leave of the Court.  The parties shall advise of the dates and times of their experts' availability for deposition no later than two weeks after service of rebuttal reports.

    ii.    <u>Objections to Expert Testimony</u>.  To the extent any objection to expert testimony is made pursuant to the principles announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as incorporated in Federal Rule of Evidence 702, it shall be made by motion no later than the deadline for dispositive motions set forth herein, unless otherwise ordered by the Court.

    iii.    <u>Expert Discovery Cut Off</u>.  All expert discovery in this case shall be initiated so that it will be completed on or before October 3, 2025.

    (h)    <u>Discovery Matters and Disputes Relating to Protective Orders</u>.

    i.    Any discovery motion filed without first complying with the following procedures will be denied without prejudice to renew pursuant to these procedures.

    ii.    Should counsel find, after a reasonable effort pursuant to Local Rule 7.1.1 that they are unable to resolve a discovery matter or a dispute relating to a protective order, the parties involved in the discovery matter or protective order dispute shall contact the Court's Judicial Administrator to schedule an argument.

5

**A411**

iii.    On a date to be set by separate order, generally not less than four (4) days prior to the conference, the party seeking relief shall file with the Court a letter, not to exceed three (3) pages, outlining the issues in dispute and its position on those issues.  On a date to be set by separate order, but generally not less than three (3) days prior to the conference, any party opposing the application for relief may file a letter, not to exceed three (3) pages, outlining that party's reasons for its opposition.

iv.    The parties shall provide to the Court two (2) courtesy copies of its discovery letter and any other document filed in support of any letter (*i.e.*, appendices, exhibits, declarations, affidavits etc.).  This provision also applies to papers filed under seal.  All courtesy copies shall be double-sided.

v.    Should the Court find further briefing necessary upon conclusion of the conference, the Court will order it.  Alternatively, the Court may choose to resolve the dispute prior to the conference and will, in that event, cancel the conference.

8.    <u>Motions to Amend / Motions to Strike</u>.

(a)    Any motion to amend (including a motion for leave to amend) a pleading or any motion to strike any pleading or other document shall be made pursuant to the discovery dispute procedure set forth in Paragraph 7(g) above.

(b)    Any such motion shall attach the proposed amended pleading as well as a "redline" comparison to the prior pleading or attach the document to be stricken.

9.    <u>Case Dispositive Motions</u>.

(a)    All case dispositive motions, an opening brief, and affidavits, if any, in support of the motion shall be served and filed on or before October 24, 2025.  Answering briefs shall be due on or before November 7, 2025, and reply briefs shall be due on or before November

14, 2025.  Briefing will be presented pursuant to the Court's Local Rules.  No case dispositive motion under Rule 56 may be filed more than ten (10) days before the above date without leave of the Court.

(b)    Concise Statement of Facts Requirement.    Any motion for summary judgment shall be accompanied by a separate concise statement, not to exceed six (6) pages, which details each material fact which the moving party contends is essential for the Court's resolution of the summary judgment motion (not the entire case) and as to which the moving party contends there is no genuine issue to be tried.  Each fact shall be set forth in a separate numbered paragraph and shall be supported by specific citation(s) to the record.

Any party opposing the motion shall include with its opposing papers a response to the moving party's concise statement, not to exceed six (6) pages, which admits or disputes the facts set forth in the moving party's concise statement on a paragraph-by-paragraph basis.  To the extent a fact is disputed, the basis of the dispute shall be supported by specific citation(s) to the record.  Failure to respond to a fact presented in the moving party's concise statement of facts shall indicate that fact is not in dispute for purposes of summary judgment.  The party opposing the motion may also include with its opposing papers a separate concise statement, not to exceed four (4) pages, which sets forth material facts as to which the opposing party contends there is a genuine issue to be tried.  Each fact asserted by the opposing party shall also be set forth in a separate numbered paragraph and shall be supported by specific citation(s) to the record.

The moving party shall include with its reply papers a response to the opposing party's concise statement of facts, not to exceed four (4) pages, on a paragraph-by-paragraph basis.  Failure to respond to a fact presented in the opposing party's concise statement of facts shall indicate that fact remains in dispute for purposes of summary judgment.

**A413**

(c)    <u>Page limits combined with *Daubert* motion page limits</u>.  Each party is permitted to file as many case dispositive motions as desired provided, however, that each SIDE will be limited to a combined total of 40 pages for all opening briefs, a combined total of 40 pages for all answering briefs, and a combined total of 20 pages for all reply briefs regardless of the number of case dispositive motions that are filed. In the event that a party files, in addition to a case dispositive motion, a *Daubert* motion to exclude or preclude all or any portion of an expert's testimony, the total amount of pages permitted for all case dispositive and *Daubert* motions shall be increased to 50 pages for all opening briefs, 50 pages for all answering briefs, and 25 pages for all reply briefs for each SIDE.

10.    <u>Applications by Motion</u>.  Except as otherwise specified herein, any application to the Court shall be by written motion.  Any non-dispositive motion should contain the statement required by Local Rule 7.1.1.

11.    <u>Motions *in Limine*</u>.  Motions *in limine* shall not be separately filed.  All *in limine* requests and responses thereto shall be set forth in the proposed pretrial order.  Each party shall be limited to three (3) *in limine* requests, unless otherwise permitted by the Court.  The *in limine* request and any response shall contain the authorities relied upon; each *in limine* request may be supported by a maximum of three (3) pages of argument, may be opposed by a maximum of three (3) pages of argument, and the party making the *in limine* request may add a maximum of one (1) additional page in reply in support of its request.  If more than one party is supporting or opposing an *in limine* request, such support or opposition shall be combined in a single three (3) page submission (and, if the moving party, a single one (1) page reply), unless otherwise ordered by the Court.  No separate briefing shall be submitted on *in limine* requests, unless otherwise permitted by the Court.

**A414**

12.    <u>Pretrial Conference</u>.  On March 2, 2026, the Court will hold a pretrial conference in Court with counsel beginning at 4:30 PM.  The parties shall file with the Court the joint proposed final pretrial order in compliance with Local Rule 16.3(c) and the Court's Preferences and Procedures for Civil Cases not later than seven (7) days before the pretrial conference.  Unless otherwise ordered by the Court, the parties shall comply with the timeframes set forth in Local Rule 16.3(d)(1)-(3) for the preparation of the joint proposed final pretrial order.  The Court will advise the parties at or before the above-scheduled pretrial conference whether an additional pretrial conference will be necessary.

The parties shall provide the Court two (2) double-sided courtesy copies of the joint proposed final pretrial order and all attachments.  The proposed final pretrial order shall contain a table of contents and the paragraphs shall be numbered.

13.    <u>Jury Instructions, Voir Dire, and Special Verdict Forms</u>.  Where a case is to be tried to a jury, pursuant to Local Rules 47.1(a)(2) and 51.1 the parties should file (i) proposed voir dire, (ii) preliminary jury instructions, (iii) final jury instructions, and (iv) special verdict forms seven (7) full days before the final pretrial conference.  This submission shall be accompanied by a courtesy copy containing electronic files of these documents, in Microsoft Word format, which may be submitted by e-mail to mn_civil@ded.uscourts.gov.

14.    <u>Trial</u>.  This matter is scheduled for a five (5) day jury trial beginning at 9:30 a.m. on March 9, 2026, with the subsequent trial days beginning at 9:00 a.m.  Until the case is submitted to the jury for deliberations, the jury will be excused each day at 4:30 p.m.  The trial will be timed, as counsel will be allocated a total number of hours in which to present their respective cases.

_Maryellen Noreika_
The Honorable Maryellen Noreika
United States District Judge

**A415**

Counsel Shall Provide a Chart of All Relevant Deadlines

| EVENT | QUALCOMM'S PROPOSED DEADLINE | ARM'S PROPOSED DEADLINE |
|---|---|---|
| Parties to submit proposed ESI Order | January 31, 2025 | |
| Parties to submit proposed Protective Order | January 31, 2025 | |
| Rule 26(a)(1) Initial Disclosures | February 7, 2025 | |
| Delaware Default Standard for Discovery Paragraph 3 Disclosures | February 7, 2025 | |
| Joinder of parties and amendment of pleadings | March 14, 2025 | |
| Substantial completion of document production | ~~April 11, 2025~~ | ~~May 22, 2025~~ May 1, 2025 |
| Fact discovery cutoff | July 11, 2025 | |
| Initial expert reports | August 8, 2025 | |
| Rebuttal expert reports | September 5, 2025 | |
| Reply expert reports | September 19, 2025 | |
| Expert discovery cutoff | October 3, 2025 | |
| Opening Briefs for case dispositive motions and *Daubert* motions | October 24, 2025 | |
| Answering Briefs for case dispositive motions and *Daubert* motions | November 7, 2025 | |
| Reply Briefs for case dispositive motions and *Daubert* motions | November 14, 2025 | |

10

**A416**

| EVENT | QUALCOMM'S PROPOSED DEADLINE | ARM'S PROPOSED DEADLINE |
|---|---|---|
| Pretrial conference | March 2, 2026 at 4:30 p.m. ||
| 5-day Jury trial | March 9, 2026 ||

# Exhibit 8

# Exhibit 9

# Exhibit 10

# Exhibit 11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 14, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                    *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
Sydney D. Gaskins, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Kyle W.K. Mooney, Esquire                    *VIA ELECTRONIC MAIL*
Alexandra Corrinne Hottenrott, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

Erik J. Olson, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Defendant*

Daniel P. Muino, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
*Attorneys for Defendant*

Brian M. Kramer, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, CA  92130
*Attorneys for Defendant*

William Frentzen, Esquire                                 *VIA ELECTRONIC MAIL*
Daralyn J. Durie, Esquire
Shaelyn Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                   *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                    *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                              *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*


                                          */s/ Jennifer Ying*
                                          _____
                                          Jennifer Ying (#5550)