IN THE UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF DELAWARE


QUALCOMM INC., and          )
QUALCOMM TECHNOLOGIES, INC.,)
                            )
          Plaintiffs,       )
                            ) C.A. No. 24-490(MN)
v.                          )
                            )
ARM HOLDINGS PLC,           )
                            )
          Defendant.        )


                    Thursday, January 22, 2026
                    10:00 a.m.
                    Status Conference


                    844 King Street
                    Wilmington, Delaware


BEFORE:   THE HONORABLE MARYELLEN NOREIKA
          United States District Court Judge


APPEARANCES:


          MORRIS NICHOLS ARSHT & TUNNELL LLP
          BY:  JENNIFER YING, ESQ.

          -and-

          DUNN ISAACSON RHEE LLP
          BY:  KAREN DUNN, ESQ.
          BY:  ERIN J. MORGAN, ESQ.
          BY:  JENIFER N. HARTLEY, ESQ.

          -and-

2

APPEARANCES (Cont'd):

PAUL WEISS
BY:  CATHERINE NYARADY, ESQ.
BY:  JACOB A. BRALY, ESQ.

                    Counsel for the Plaintiffs


YOUNG CONAWAY STARGATT & TAYLOR LLP
BY:  ANNE SHEA GAZA, ESQ.

-and-

KIRKLAND & ELLIS LLP
BY:  GREGG F. LoCASCIO, ESQ.
BY:  JASON M. WILCOX, ESQ.
BY:  MARY BARNETT, ESQ.

                    Counsel for the Defendant



            _ _ _ _ _ _ _ _ _ _ _ _ _


            COURTROOM DEPUTY:  All rise.  The United States District Court for the District of Delaware is now in session.  The Honorable Maryellen Noreika presiding.

            THE COURT:  Good morning, everyone.  Oh, gosh, everybody is backwards.  Okay.  All right.  Let's start with some introductions.

            MS. YING:  Good morning, Your Honor.  Jennifer

Ying from Morris Nichols Arsht & Tunnell on behalf of the Plaintiffs.  I have with me here at counsel table today Karen Dunn, Erin Morgan and Jen Hartley from Dunn Isaacson Rhee.  And we also have Catherine Nyardy and Jake Braly from Paul Weiss.

THE COURT:  All right.  Thank you.

MS. GAZA:  Good morning, Your Honor.

THE COURT:  I recognize some of the people at that table.

MS. GAZA:  Good morning, Your Honor.  Anne Gaza from Young, Conaway on behalf of Arm.  I am joined today from Kirkland & Ellis by Gregg LoCascio, Jason Wilcox, and Mary Barnett.

THE COURT:  All right.  Good morning to all of you.

Okay.  So you broke the special master and we need to adjust the schedule.  Is that where we are?

MS. DUNN:  I don't know that we would say broke, but --

THE COURT:  I have a list of all the motions that you all filed in front of her.  And when I sent the case to the special master, I didn't intend to -- that would be just a free-for-all for you not to agree to things, but in any event, you did follow the rules and file the motions and they have not been decided.  So I'm not sure what you

need.

MS. DUNN:  Thank you, Your Honor.  Primarily we're here because I think both parties would agree the March 9th date is impractical.  And we would like to talk to the Court about a schedule and a process that we could put in place where the discovery motions that have been brought will get ruled upon.

Obviously there is also the separate issue of the objections we filed to the special master's decision with regard to the case name.  So we could talk about that as well.  But these things will take time.

THE COURT:  That one, though, I mean, is that sort of mooted if we consolidate the new case?

MS. DUNN:  I would say --

THE COURT:  Because I haven't really looked at it because I thought you were just filing a new case and then wanted to talk about whether that would be brought into this one.

MS. DUNN:  We filed the new case as a protective matter.

THE COURT:  Right.

MS. DUNN:  And we believe the special master's ruling is in error for reasons I would be happy to explain.  But there are benefits to proceeding with the old case and not the new case.  And I can enumerate those.

One is that we would have to redo quite a lot of process that has already occurred in the old case and there is nothing different about the new case other than adding a name to the case caption.  It's substantively identical.

THE COURT:  When you say adding process, help me with what that means.

MS. DUNN:  So, for example, a new motion to dismiss from the other side, even though Your Honor has discouraged a motion to dismiss in this case previously.

THE COURT:  Nobody takes a hint in this case. You don't take a hint, they don't take a hint, that's fine, I can deal with it.

MS. DUNN:  A statute of limitations argument that they have indicated that they would like to make even though the reason for the statute of limitations problem is that it ran during the seven months that the special master had our motion, so there is going to be issues with that. There has already been issues with service in this case where we asked if they would accept service in the new case and they said well, you're asking for a waiver of service so we get ninety days to respond to an identical complaint with the exact same substance.  They refused to accept service for the motion to consolidate.

So the reason I say all of this is I can explain to Your Honor why the special master's ruling is in error,

and I believe that those reasons are so compelling that the easier thing to do and the right thing to do would be just to allow the amendment and then get the discovery motions resolved and ruled upon so we can go to trial in a timely way as opposed to redoing all of this work.

THE COURT:  Okay.  I will let you do that.  You can tell me -- you can make your argument.  I don't know that I will rule on the discovery motions because as I said, I haven't really prioritized those because I wasn't sure it was something I was going to have to deal with.

I get the gist of it which is you had gone forward with one particular defendant thinking that was the correct defendant, and then when they finally answered after the date for amending and after maybe discovery was over, they said oh, by the way, you got the wrong defendant and you're like, how are we supposed to know that if no one ever told us.  And now you won't let us amend to put the right defendant in.  That's the gist of your argument.

MS. DUNN:  That is the gist.  And I will say there is a few things that I find extremely compelling in favor of amendment that I want to call to the Court's attention.

First of all, as soon as they raised that this was a legal issue of the wrong party, which was six days after the deadline to serve discovery, they raised it on

June 17th.  The deposition of the chief legal officer for both entities was scheduled for June 30th.  So we took all the discovery we could by asking Mr. Collins, the CLO, a couple on-point questions.  One of the questions he was asked is who was the party that has any responsibility or obligations with respect to the Qualcomm ALA or TLA?  Because just saying that's not our name is not the same as saying this is the liable party.  So we asked him the $25,000 question.  And he said, "I would have to look at the contract."

And so what he's saying when he says that is that the things that Arm points to and that the special master relied upon, the SEC prospectus, were not sufficient enough even for the CLO of the company to know who was the party that had the liabilities.

So to be honest, Your Honor, I think that is dispositive because what Arm is essentially saying is even their CLO did not know and even though for their CLO their SEC prospectus which he undoubtedly approved was not sufficient, that somehow Qualcomm should have been able to divine that.

He also was expressly asked who was the party who should be sued.  And he said he did not know.  So they are holding us to a standard that even their CLO having knowledge of all these corporate restructures could not have

known.

The second thing I would say is that for over a year now, Arm has litigated this case on behalf of both parties. And I made a list of all the things that they did. So they accepted service under Arm Holdings formally known as Arm LTD. They filed three motions to dismiss, none of which raised this issue. They executed six stipulations on behalf of Arm Holdings, formally known as Arm LTD. They produced 300,000 document for Arm LTD which required them to send production letters under Arm LTD formally known as, they served nine sets of written discovery, they served three privileged logs with that same name on it and obviously responded to rogs where they never offered this defense and they also never amended for this defense. And then finally four motions for summary judgment where they never raised this.

So it seems incredibly inequitable to say that they were allowed to file things with the Court and proceed in this fashion but somehow we were not diligent in doing that. And we were diligent because the second that we -- that they told us after all the deadlines, we immediately took discovery through their chief legal officer.

We then approached them and said will you consent to an amendment. They ignored us at first. We followed up twice. They refused. And then obviously as

soon as we could, we moved the Court and then as soon as the special master's process was set up, we filed with the special master and then obviously a long time elapsed.

But I don't -- Your Honor, I do think the case for amendment is extraordinarily strong here.  And I think the benefit for amendment for the parties and the Court would be quite substantial because even just the problems we're having with the service suggest that this, I don't want to say gamesmanship, but refusing to accept service unless they can have a ninety-day window to respond to a complaint that they've had and has not changed suggest we are in for a rough ride.

THE COURT:  Okay.  Let's cut to the chase.  What do you need for a trial date?  If we assume that either the new case gets brought into this -- I don't even know -- let me ask you this.  What's left in the old case if you don't have the right defendant?

MS. DUNN:  Well, they are going to argue that the contract claims are out of the case, notwithstanding the fact that they have been litigating the contract claims on behalf of Arm Holdings PLC.  So you will get motions to that effect.  We will argue that that's not true, including by the language of the contracts themselves.

And they will also argue, I'm told, that this was a compulsory counterclaim.  That was already rejected.

As Your Honor knows -- and actually just to be fair, the statute of limitations argument that they plan to bring only pertains to the ALA claims which as Your Honor is well aware are claims that we tried to bring in the old case.  None of the motion to dismiss arguments are going to be viable, but they will be presented to the Court in any event.  I presume the witnesses will all be redeposed, and you know, it's just -- it's a huge waste.

THE COURT:  Okay.  So when do you think -- assume that the special master is going to rule on things next week and that there will be some discovery allowed at this point, notwithstanding the fact that discovery has long been closed and summary judgment motions have been filed, what are you looking at for a trial date?

MS. DUNN:  So we looked at the Court's calendar and we cross-referenced with clients and other availability.  I think -- we pulled out dates in July, August and September.  And I can give the Court the dates that the cross-reference yielded.

THE COURT:  Okay.  I don't need the specifics just yet.  Let's start with time frame and then let me talk with Mr. LoCascio, and then see if we --

MS. DUNN:  I will note that the July to September time frame assumes that the discovery will actually be produced.  And it has been very difficult to get

this discovery, as Your Honor knows.  The other thing that's going on is there is third party --

THE COURT:  Any time we set a trial date it's on assumption --

MS. DUNN:  Right.  I want to say that assumption informed these dates.

THE COURT:  Let's put it this way.  I am not going to put you in front of a special master again.  I will deal with discovery disputes, but I am not going to be as patient with all of the discovery disputes and you all are either going to have to fight your own battles or get used to dealing with whatever it is you all can agree to.  Because I think sometimes it's nice to have certain discovery, but it's not imperative.

MS. DUNN:  Understood, Your Honor.

THE COURT:  I do think -- I'll let Arm speak for itself.  I do think some of this can be paired back and we're realists and there is already a lot of briefing that happened and frankly very long hearings that happened.  But there is some discovery that we -- I think both parties would agree we just absolutely need in order to try the case.

THE COURT:  All right.  Mr. LoCascio, I haven't seen you in a while.

MR. LoCASCIO:  I got to sit in the back of a

recent ANDA case in here because I was next door with the judge, Judge Connolly.

THE COURT:  So I assume you're not being as disagreeable as Ms. Dunn thinks that you are, or you're going to tell me how you have been so much more agreeable.

MR. LoCASCIO:  Ms. Dunn and I have a fine relationship inside and outside of the courtroom.

THE COURT:  I like that she always comes in with facts.  She has like six stipulations and summary judgment motions filed in this company's name.

MR. LoCASCIO:  So I want to say two things on that.  First of all, let me get to where you cut to the chase, but then I don't want to leave the motion to amend issue unaddressed.

On the what can we actually accomplish and where should we go from here piece, because I think that's more important to what we're doing here today --

THE COURT:  Because you broke me, too.  I said no on the extension, but it's pretty much a given at this point.  Go ahead, hit me with it.

MR. LoCASCIO:  Insofar as the assumption that you identified which is the likely landing place which is some issues from the parties' discovery, to be clear, both sides have plenty of discovery issues against each other and this suggestion of recalcitrants, et cetera, it's

undeserved, but at a minimum, look in a mirror, team Qualcomm.

What's gone on here is there are various facts, I think both sides say and I know on our side firmly believe that to both defend ourselves in this case we need certain information from Qualcomm and it should be forthcoming from the special master's discovery rulings in some form or fashion.  That's going to then need to be addressed, the documents we get, written discovery requests and depositions.

Summary judgment, and we addressed this in our opposition to at least two of the parts of their motions where we said okay, you're saying we have no evidence to defend ourselves because you haven't given it to us.  So under Rule 56(d) we need to get there, too.  So there has to be some readjustment to the summary judgment briefing.  When you take those two steps together --

THE COURT:  Well, your summary judgment briefing, I have to tell you, I feel like I am going with the Judge Farnan rule which is if you give me more than this much paper to show that there is no genuine issue of material fact, you probably lose.  And you guys are like this.  You have got six volumes of things.  So yeah, maybe there is some summary judgment adjustment that needs to be made and maybe it's not a summary judgment case, and this

case is going to go to trial.

MR. LoCASCIO:  I disagree with the claims that it can go to trial.  I do want to say that part of what our biggest concern is in addition to the discovery and why we have -- we took Your Honor's guidance to heart.  We didn't retread issues that Your Honor had ruled upon, but there are issues in the motion to dismiss which then some of them repeat themselves in the summary judgment motion --

THE COURT:  Yeah, I actually was going to ask you if -- because I looked through the motion to dismiss and then I looked at the summary judgment motions, and it seemed to me that again, with the passage of time, I'm not dealing with it twice, and so do you want me to deal with it on the motion to dismiss or do you want me to deal with it on summary judgment?

MR. LoCASCIO:  There are some issues that are overlapping and in that regard, I think I would probably say the summary judgment side of the world.  There are some that were only a motion to dismiss.  I may want to come back to one or two of those --

THE COURT:  I'm not dealing with -- the fact is I'm one person.  You have like eight issues in your motion to dismiss and twenty-five in your summary judgment.  I can't deal with them.  And what the ultimate upshot of that is going to be that we go to trial and then we have to

figure it out after trial.  So you can tell me, deal with, you know, everything in both motions, I'm just telling you what the risks of you taking that position is is we try everything and we figure it out afterwards.

MR. LoCASCIO:  And we're not going -- I'm not going to ask the Court to be in that position.  What we will do, and we can do it as a supplemental, here is the motions pending, here is how we think the best path to go forward, some of that would depend on where we land on the discovery and scheduling issues.  But at a core level what we have are a series of claims from Qualcomm that on the contract side, the ALA and the TLA are precluded by the express language of the contract.  So we think that's a question of law for the Court as to whether they can proceed because they're essentially ignoring or reading out or reading in contract language.

We have a tortious interference claim that has significant Noerr-Pennington problems because the alleged interference almost entirely relates, and according to their CEO at their deposition, it's all built on the fact that we sued them and said that they had breached in the Nuvia/Qualcomm first case.  That's not a basis for a tortious interference claim.

Then you have a UCL claim --

THE COURT:  Is it just based on the fact that

you sued them or is it based on the fact that you sued them and then said hey, we're going to trial on this and if you lose at trial, we'll tell everybody that you're shut down the day after the trial ends if you lose.  I mean, as I recall, there was a little bit more to what happened and what your clients said to Qualcomm than simply well, you sued us and that was that.

MR. LoCASCIO:  I don't disagree, Your Honor, that there are other events that are all litigation related and all fall under case law that we briefed on summary judgment that say that's not a viable basis.  There has to be some core unlawful act that is the basis for the tortious interference claim.  Putting aside what we raised on summary judgment, there is no harm.  The disclosure they say, this leaked letter that they make a lot about, seven days later they had to disclose it to the SEC and the world because it was a meaningful material event to them.

So a lot of these issues, and then the UCL claim which we think is only an issue for the judge, they think it should be in front of the jury as to we're just unfairly competing.  Part of our concern and why we believe yes, the time will be useful, but in a way that makes sense to narrow and clean this up is because in this courthouse under the rules of trying to put that all in front of a jury in a week, I'm not saying this pejoratively, but I get it as a

plaintiff, I want to throw this whole thing out there and say you breached two contracts and let you try to explain the contracts to the jury and I'm going to say you interfered and tell a sexy story about a leak to Bloomberg and say this is all unfair.

And for us to be the ones to unpack that and to be fair to a jury in a week with the claims as they stand is literally impossible.  And for then, Your Honor, to have to try to clean that up on the back side which is not the way this should proceed.

And so we all agree I think that when some discovery gets ordered by the special master because they have been -- for instance on this Bloomberg leak point, they're like that's unfair that you went to talk to Bloomberg.  There are events that only the two of us know about during this case that then Bloomberg reports about.  And we know we didn't tell them.  So we said hey, if you're going to say this is unfair, we want to know what did you go tell Bloomberg.  And they said that's irrelevant.  We're not going to give you any discovery on our dealings with the media or our dealings with the customers who we say were so torqued by your media engagement that that's harm to us.

So there are big issues of discovery that go to our ability to defend if these claims are going to survive. So that should all sort out and then we come back, we should

update.  I know you have a stack, maybe those stacks get smaller and we work things out, but I think --

THE COURT:  You're so funny.

MR. LoCASCIO:  I am inherently an optimist, Your Honor.  But regardless, there are at least some of the arguments like we don't have the facts we need to oppose this summary judgment argument.  And after those facts come to bear, maybe one or two of their arguments that there is no evidence on the defense side falls away.

But we would as much as I'm sure my client would rather me not say this, I think in terms of efficiency of the Court we would review and update the summary judgment briefs and give Your Honor adequate time to deal with that. We would request some argument to talk about how to narrow these and have the pretrial disclosures and the trial.  I think the best timeline that that could work on most realistically is probably September is the earliest you could pull all that off to have a trial date in September. I think the September/November is kind of right with the view that special master orders come out, we get the discovery over the next, I don't know, it takes a month or two.  I mean, last time for some context, we had already raised all these objections or a lot of the discovery issues before the special master was designated by Your Honor, and the discovery deadline was approaching, the parties had

suggested we extend, we understand the Court ruled against, so then the parties spun a pretty Herculean effort in that June early July window to get all these deps done and we continued and argued in August and September with the special master.  I think it's not a month to wrap everything up on the discovery side, I think it's two or three, and come back on the briefing.  That probably is happening in the summertime with a view that then the Court can actually rule or address on some of those or hear us out in that late summerish, early fall window, and then an early fall trial date.  I think that's probably where that lands.

One other part I want to raise, we talked about dates if it's useful, we did not -- I generally know some of our team calendars.  We have a general sense from the client.  We have not vetted dates per se with all of the key witnesses or experts.

On the second case issue, the amendment issue, I do think our opposition to their motion, their objections to the special master's ruling and our opposition to the motion to consolidate come in next week.  We have not even opposed those yet.  Given --

THE COURT:  They haven't opposed the UCL --

MR. LoCASCIO:  Correct.  All three of those, the opposition briefs, aren't in yet.  Given the questions Your Honor asked, I'm happy to have -- so Mr. Wilcox argued this

issue with the special master.  To be clear, the special master found this was not hidden from Qualcomm, they knew they could have acted sooner, they didn't.  They didn't show good cause and that's the basis for the special master's ruling.  But if I can, because you said Ms. Dunn came in with facts, Mr. Wilcox has his own army of facts to have him address just a couple of points that are essentially precursors since we're all here --

THE COURT:  That's good because it helps me when I'm reading the papers to have some understanding of both sides' arguments.

MR. LoCASCIO:  But ultimately, given that is happening in parallel to the timing issue we're facing already, I do think those two combined together suggest yeah, the March 9th day, and Ms. Dunn and I seem to agree on this, should come off the calendar and we should find another date.

I'll let Mr. Wilcox, unless you have questions on the discovery and briefing and the broader issues, address the party question.

THE COURT:  That sounds good.

MR. LoCASCIO:  Thank you.

THE COURT:  I am listening.  I was just looking at when these motions were filed so I can figure out what I want to do with them ultimately.  Just give me one second.

MR. WILCOX:  Of course, Your Honor.

THE COURT:  The docket is so long, it's taking me a minute.  Okay.

MR. WILCOX:  Thank you, Your Honor.

So I think that there are four key facts here to go along with Ms. Dunn's key facts.  So the first key fact is what was the date by which Your Honor said that there needed to be any motions to amend to add parties or update the pleadings, that was March 15th of 2025.  So what we need to look at is what did Qualcomm know before that date.  And did they have enough that they could have acted with diligence to amend.  And I think that you can say yes just based on filings in this case.

So if you look at the corporate disclosure statement that Arm filed in this case in June of 2024, it stated the Arm Holdings was not formally known as Arm Ltd.  Right there they already knew the formally known as Arm Ltd was not correct.

We then filed an answer in November of 2024 to their original complaint and in that Arm Holdings denied that it was formally known as Arm Ltd.

THE COURT:  Why did you keep submitting papers to me if you're saying that's all wrong?  Why are you submitting papers to me?  I look at those 7.1 statements, but I look at them to see if there is a conflict for me.

I'm not looking at them to see if what you're representing in other places is wrong.

MR. WILCOX:  Well, so those other filings that she's referring to is where we have filings with the caption of the case on it.  That's still the caption of the case.  We can't just change the caption of the case and knock off the formally known as.  Yes, the caption is still Arm Holdings formally known as, but we told them --

THE COURT:  Why didn't you change it?

MR. WILCOX:  Why didn't we change the caption?

THE COURT:  Yes.

MR. WILCOX:  It was their caption and we had told them in our corporate disclosure statement and in our answer that we filed in November of 2024 that Holdings was not formally known as Arm Ltd, and Arm Ltd was a wholly owned subsidiary of Arm Holdings PLC.  That was also what we said in our SEC filing --

THE COURT:  I get it.  It just seems -- you're saying we told them.  There is telling somebody something, and then there is going back and figuring out why they should have known when they didn't figure it out.  That's what I'm trying to figure out.

MR. WILCOX:  The date that I would focus on, you know, the document I would focus on is our November 2024 answer where we have specific denials in the answer where we

deny that Arm Holdings was formally known as Arm Ltd.  And paragraph 20 of the answer, and look at paragraph 36 where we state that Arm Ltd is a wholly owned subsidiary of Arm Holdings PLC.  That was us telling them in an answer in a pleading, no, you don't have the party right.

And then they went and two times after that they amended their complaint after we filed that answer.  They did it first in December of 2024, and then they did it in March right before the deadline.  And in neither of those did they make any effort to update the parties or to change who the party in the case is.  Ultimately they had the information that they needed just from the pleadings to know that they had filed suit against the wrong party and they sat on their hands and they didn't do anything with that information.  That creates a presumption under the law that they didn't act with diligence and that their motion should be denied under Rule 16, so the special master did exactly what she was supposed to do.

THE COURT:  Are you going to argue that because the special master took five months to do it that now they're out of luck with the statute of limitations?

MR. WILCOX:  We are going to make the statute of limitations argument --

THE COURT:  Even though they came to me to ask to amend, they asked the special master to amend, and it

took five months, so you're saying well, that's just too bad, nothing was -- you don't get any benefit of the doubt for trying one, you should have just sued again.

MR. WILCOX:  I think they should have done exactly what they have done now, you file a second complaint --

THE COURT:  Sued again, you should have just sued again, even though they were saying look, we did all this in this case?

MR. WILCOX:  But again, sue again.  All they did was just update the names on the pleadings.  You could have filed that and put a notice on the docket that was, Your Honor, just for protective reasons to make sure there is no running of the statute of limitations or anything else, any other prejudice, we'll put this protective complaint on the docket and we'll have it out there.  They could have done that any time in the five months.

THE COURT:  When did you answer and deny that?

MR. WILCOX:  Deny that they had the wrong party?

THE COURT:  Deny the formally known as.

MR. WILCOX:  The first time we answered and denied was November of 2024.  We then when we filed our answer to the Second Amended Complaint, to be clear our answer to the Second Amended Complaint was due when we filed it.  We filed it at the same time as the motion to dismiss,

so we were going through the mad scramble of discovery, there wouldn't be further delays in the case because we had answered.  And in that we again denied it and what we said is to make clear and to make sure there was no waiver on our part, we deny that Arm Holdings is liable here because it's not a party to the contract and it's an operating company with no operations, so it can't be engaging in tortious interference and it can't be engaging in unfair conduct.

THE first time we denied it in a pleading was November of 2024, almost six months from the deadline to move to amend.  And after that date they again twice filed amended complaints and decided to do nothing with that information.

THE COURT:  Did they ask you any interrogatories about that denial?

MR. WILCOX:  They did not.  They didn't ask any interrogatories about that denial.  They didn't send us a letter and say hey, we saw this, what's going on, what is up, we don't understand, we're confused.  They just sat there silently for twice the denial.  And then when we again raised it and denied again in June and put a little bit more color around it, they said well, now we think we need to move to amend.  The problem is that's just too late.  They already amended twice since they had the information and chose to do nothing with it.  So we think that alone shows

that they didn't exercise diligence.  Under the cases we will cite in our letter that we will file to you, there is a presumption of prejudice when they have the information and they do nothing with it.  So we think that the motion to amend should be denied.

I want to talk about Mr. Collins and his deposition.  He is the chief legal officer.  They were asking him these questions off the top of his head.  He said I need to see the contracts to know who the parties to the contracts are.  They of course had the contracts.  They could have looked at it at any time in that period and seen that the party was Arm Ltd.  It wasn't like the contract was right before him and he could see it.

He also didn't have the SEC filings in front of him, unlike how they actually cite the SEC filings that they were relying on or at least one of them in their complaint, so they were definitely aware of them and could have looked at them if they had any questions about it.  We're obviously a big sophisticated firm.  So are they.  Paul Weiss has a lot of security lawyers they could have went to and talked to and said help me understand this.  They didn't do any of that either.

Many of things that they're pointing to all happened after March 15th anyway.  And so whether they fit into the diligence analysis isn't relevant, but the key

thing to focus on is that November 2024 answer and paragraphs 20 to 36.

On the motion to consolidate, just really briefly, Your Honor, regardless of whether you consolidate or not, I don't think there is going to be a ton of discovery that needs to be redone.  We're not going to treat that as though it's a brand-new world and you have to depose every witness again and reserve hundreds of RFPs again.  There is a lot of discovery we can bring over and we can reuse in the second case, even if you don't consolidate them.

But on consolidation, there are Third Circuit cases and I'm happy to provide them to you.  But we in our opposition say if you deny a motion to amend, what you can't do is then go and file a second case and have it consolidated with the first case when your motion to amend was denied, so we'll be telling you we don't think the cases should be consolidated.  We think that they should stay separate --

THE COURT:  Is it that they don't have to be or I can't?  Because it seems like from a judicial efficiency state, I have already had one trial in this case, if you think I want to have three, you're mistaken.  So when you represent that Third Circuit has said that, are you saying I am not allowed to consolidate those cases in order to

accommodate my judicial schedule and efficiency?

MR. WILCOX:  So I will give you the exact quote from the Third Circuit, Your Honor, but first let me say we don't want a third trial, either.  What we think is going to happen is that the case against Arm Holdings is going to drop out because again, it's not a party to the contract, it's not an operating company, so really the right case is going to be the case against Limited and that one can move forward and it can moved forward on a timetable that Mr. LoCascio was just talking about.

But here is what the Third Circuit said, for example, in *Walton v. Eaton*, "District courts must ensure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints in Rule 15."

The Third Circuit has gone in cases like *McKenna v. The City of Philadelphia* to say yeah, what that means is you're supposed to deny consolidation if what you did was you denied a motion to amend and then came back and filed a second lawsuit.  Instead what you're supposed to do is either stay the second case, here would be the third case, or you dismiss it without prejudice.  Here we agree the right move would be to stay --

THE COURT:  I'm still not hearing that's what

I'm required to do, but you can brief that issue for me because that is saying that I'm not supposed to let folks play games. But if I am not convinced that the Plaintiff here is playing games and it doesn't sound like they're taking away my discretion to allow me to do something that makes sense for my schedule.

MR. WILCOX: Okay. We'll certainly brief that. I think the way that we read those cases is that they're saying it is an abuse of discretion for a court --

THE COURT: Well, you're going to have to appeal that and the Third Circuit can figure out if they want to sit in my shoes when they say I have to have three trials instead of two.

MR. WILCOX: And I'll also say, Your Honor --

THE COURT: So I wouldn't -- you can brief that issue, but I wouldn't rely too heavily on it because I am quite sure that's not the way I am going to read those cases as saying they're taking away my discretion to manage my docket.

MR. WILCOX: We will brief that, but what I was going to say as my final point on this is as it looks like we're working out this case schedule issue, it may be that this consolidation issue actually takes on less importance and there may be a way that the parties can either figure this out or find a solution to this, but we'll certainly be

mindful of that as we're looking at the cases.  We're not trying to add more to your docket where we can take things off.

The final thing I just want to say very briefly because Ms. Dunn said it several times was about service of process and this idea that we're somehow refusing service of process.

What happened was they reached out and said will you accept service of the complaint.  We said it sounds like you want to go through the procedures and we'll waive, if that's what you had in mind we'll let you know.  All they said was no and the next day they showed up --

THE COURT:  Did you say it's a waiver so we get ninety days?

MR. WILCOX:  We did, we said we thought this is what you're suggesting is you want to use the waiver process.

THE COURT:  And you said you want ninety days.

MR. WILCOX:  Well, sixty --

THE COURT:  Yes, so you wanted additional time, that's what she's saying.  It sounds like you're both saying the same thing.  It's just you're saying we were completely fine to do that, and she's saying look, I get it, maybe you were entitled to that, but it was an unreasonable delay particularly given that I had previously said we weren't

going to extend the schedule.

MR. WILCOX:  And all I'm saying is we went and we had that and if they come back to us and said no, that's not what we have in mind and let's talk about --

THE COURT:  Let me ask.  Ms. Dunn, are you saying you want to -- no, no, no, I just want one question.  Are you saying you want them to waive service, or you're just asking if the lawyers can accept service on behalf of their client?

MS. DUNN:  We were asking if they would accept service on behalf of their client.

THE COURT:  Okay.  So that's the question, not do we waive, we don't know what you mean.  Come on, I used to litigate.  We used to ask people to accept service all the time and it had nothing to do with a waiver.  So you really had no idea what they were suggesting?  They were asking, will you accept service and your answer was yes or no?

MR. WILCOX:  Well, our answer was we think that -- was we'll go through the waiver process --

THE COURT:  So your answer is no.

MR. WILCOX:  But if they --

THE COURT:  Your answer is no unless there is a waiver, is that what I'm understanding?

MR. WILCOX:  No, that was not our answer.

THE COURT: Okay. This is not -- I can see why you guys fight about everything. This is not a hard question. She's saying will you accept service on behalf of your client. What is your answer?

MR. WILCOX: So we -- my answer is yes.

THE COURT: Yes or no, I'm not --

MR. WILCOX: Yes.

THE COURT: No, stop. Yes or no, or you have to check with your client because this is not -- you know this is not a hard question.

MR. LoCASCIO: The answer, Your Honor, for Arm Limited is we will accept service on behalf of Arm Limited. The question --

THE COURT: So --

MR. LoCASCIO: If there had been a conversation between the two people standing at this table, I expect we would resolve this. That didn't come over that way. But at the end of the day, Your Honor, we've now talked and said March 9th isn't going to happen, between the two of us. And, Your Honor, at the time this was all unfolding, just for some context, there was a question on their side they wanted to sort of do an end run around with the special master and get it all in for March 9th. So this suggestion this was all some grand tactical game, yes, the parties are trying to figure out where we land. Now where we land, it's

a nonissue, Your Honor, which is why I said yes.

THE COURT:  Thank you.

So I am not suggesting one side is playing more games than the other, but when I ask a simple question and I can't get a simple answer, it doesn't sit well because then it really does seem to be game play.

Now, Ms. Dunn, I don't want anything more than just this one question.  Is that sufficient for the service issue?

MS. DUNN:  Counsel said that they will accept service for Arm Limited, so what they are now saying after a year of litigation --

THE COURT:  I don't care.  I don't want to do the game playing.  Just tell me what's missing.

MS. DUNN:  They should accept service for both parties.  That's what I believe is happening here, he's saying -- so first of all, I just want to get this clear because when he asked them to accept service, I'm told that they part whether they represented Arm Holdings or Arm Limited, same lawyers, so I just want them to accept service of the complaint which is against both parties.

THE COURT:  Does Arm Holding still exist?

MS. DUNN:  Yes.

MR. WILCOX:  Arm Holdings still exists.  We will accept service on behalf of Arm Holdings.  We have accepted

service on behalf of Arm Holdings for years in this case. There is no problem.

THE COURT: So when Mr. LoCascio was saying Arm Limited, you were saying that because you thought that was the one that was in question?

MR. LoCASCIO: I think that's the only one that is in question.

MS. DUNN: Great.

THE COURT: Okay. And I take your point that there is -- it's much easier for you to address that now because we're not talking about having a trial in March.

Okay. What else did you want to say?

MR. WILCOX: I have nothing else I want to say, Your Honor. Thank you for your time.

THE COURT: Okay.

MS. DUNN: Your Honor, even though I'm trying your patience, there were a few things that were said that were not accurate that I would like to correct.

THE COURT: Hold on.

So let me tell you what I'm thinking and then you all can decide what you want to say.

I am thinking that we set a trial for November 2nd. And I say that because I have time that week, and I also have time the following week if it turns out that there are more issues in this case than we expect. I don't

have the entirety of the next week.  There is also a federal holiday in the middle of that week, but if necessary the case could bleed into that week.  Does anybody have a trial that's already a problem?

MR. LoCASCIO:  I do not have a trial that's a problem.  I was asked -- I have that week as pretty much the only block on my calendar between like two weeks before and the two weeks after, and I'm fine to put on the record, November 3rd is my 25th anniversary.  I have blocked that week for the last year.  But we do what we can do.

So if the 9th -- we had looked at Your Honor's calendar, I know the 9th is open, I appreciate given the normal practice of the Court, if we had to drift you wanted to find some dates for the next week and I know you have something on the 16th.

THE COURT:  How about the week of October 6th? Again, the following Monday is a holiday, but I could let it bleed into that following week, if necessary.

MR. LoCASCIO:  We haven't done witness and expert checking, but I expect from my own calendar in terms of trials and other things, that's fine.

THE COURT:  Ms. Dunn?

MS. DUNN:  With the same caveat with respect to checking, no issue.

THE COURT:  Why don't we aim for that so

Mr. LoCascio's 24th anniversary won't be his last.

MS. DUNN:  Happy anniversary, Mr. LoCascio.

THE COURT:  So we'll aim for that.

Then what I need to do is we need to get the special master things which I am told will be next week, you guys can digest what's in there, file your objections.  And then I need Mr. LoCascio, I need you to tell me, I need you to tell me on the motion to dismiss what you want me to address on the motion to dismiss versus what you want me to look at on the summary judgment.

Then what I am going to do is have you all in here to have an argument on the motion to dismiss, any objections to the special master's decision, which would include the objections already filed.  And we might as well throw the motion to consolidate and the motion to bifurcate in there.  Okay?

I think that leaves me with Dauberts and summary judgment.

MR. LoCASCIO:  Correct by our count, Your Honor.

THE COURT:  Okay.

MS. DUNN:  Your Honor, just quick clarification, on the objections since we have argued our current objection but they have not yet responded and you put the motion to consolidate for this future hearing, are we expecting that we will reargue this argument we just had?

THE COURT:  Yes.  That's why I was saying I didn't need you to respond.

MS. DUNN:  Understood.

THE COURT:  Because you will have an opportunity, I will make sure I read everything that everybody has had an opportunity to respond and then I will let you guys argue.

MS. DUNN:  Thank you, Your Honor.

THE COURT:  Okay.  That's why I stopped you when you wanted to respond.

MS. DUNN:  Understood, Your Honor.  Thank you.

MR. LoCASCIO:  Your Honor, am I guessing that since we now have the week of March 9th that that hearing will fall on that window, is that what you're imaging?

THE COURT:  Yes, that's what I was thinking. Because in terms of like reportable motions, the only one that's reportable for me at the end of March is this motion to dismiss, so I might as well get that done because I don't really care if I get -- have one motion, but why not decide it and just figure out what we're doing.

But that should get you an opportunity to, assuming the special master gets things out next week, to file your objections, respond to objections, complete the briefing on the other briefs.  Please don't file anymore motions until after that hearing, not including objections

in that, but don't raise new issues without getting leave from me, or we can talk about if there are new issues, you can talk about them in March.

MS. DUNN:  Understood, Your Honor.

THE COURT:  Okay.

MS. DUNN:  And I assume this may go without saying, but the pretrial deadline, one of which is tomorrow, I assume are vacated.

THE COURT:  No, they're not.  I'm just kidding. Yes.

MS. DUNN:  A panic just went through everybody. Thank you, Your Honor.

THE COURT:  Those are vacated.  What I would ask you to do with respect to the October date, confer with each other and come up with a schedule that gets you there.

MS. DUNN:  Okay.

THE COURT:  If you need to -- you're going to have to -- I want you to come up with a new schedule that gets you to that date.  But if you can -- I'll give you like a couple -- like two weeks to get that in to me so that you can take into account if you think you're going to have substantial discovery that needs to take place or whatever. And then the other thing that I need you to think about is in that schedule, if you're going to be doing something different with summary judgment.

MS. DUNN: Understood.

THE COURT: You know, or like I guess that would be supplementing if you think there is going to be a supplementation to summary judgment.

Okay. All right. Anything else that we need to address?

MR. LoCASCIO: I had one or two points around that, the filings and the timing. One would be I think the objection and response time based on the special master's ruling will all happen with enough time before March 9th. My suggestion would be if it doesn't, that we agree to shorten those dates to get it done. I was going to ask you to shorten it and I thought maybe it would fit and I didn't feel like counting out the dates.

MR. LoCASCIO: We'll figure it out.

THE COURT: Yes, if you need to, in order to get us those papers, if you're going to object to everything that the special master does, then I need them sooner. If there is only like objections to one or two things that the special master does, then, you know, I only need a couple of days.

MS. DUNN: Understood.

THE COURT: But truly, she has 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, I don't know, like thirteen motions. If you object to them all, then that will tell me

something about the reasonableness here, but then I need your objections much sooner.

MS. DUNN:  Understood.

MR. LoCASCIO:  That's the first.  The second is a lot of those motions I think in your count on the sheet are third-party motions for protective orders because there are various other licensees as part of their offensive case and part of our defensive case, for example, they said we didn't make a good faith offer.  We said we based it on another party's terms.  I would like to show you these terms, but I have to get permission from these folks and those folks have come in with motions.  The series of those, somebody correct me if I'm wrong, the special master took these hearings off.  She originally thought I'll deal with that first and then she said let me figure out the broader underlying discovery issues to see if these are really needed --

MS. DUNN:  To add to that in the vein of the whole thing, but there is a scope issue about which cores are in the case.  And so we had the beginning of the hearing with third-party counsel and then once it became clear that the scope issue was lurking, the special master said I should answer the antecedent question, decide the scope issue, and that will help figure out what contracts are relevant to the third-party hearing.  And that's how it was

left.  And the third parties were told at some future date there will be a hearing.

MR. LoCASCIO:  Some of these where we land collectively on this, after we see the special master's ruling on scope, the universe of third-party protective order motions may narrow, it may not, but those are still open issues.  And that will dictate or drive some of the discovery and the special master has not heard those parties on that.

So why I'm raising this is just for one, awareness, but two, I don't want to add to Your Honor's docket on the day in March that we pick.  But if that issue is still open, I think it will at the latest need to be tackled around that same window so the parties can actually effect the discovery, maybe even before, and query whether that should remain with the special master or if Your Honor would say at no later, we can -- I don't think the briefing needs to be updated at all --

THE COURT:  Let's put it this way, I'm not going to take it away from the special master because I'm not going to get it right.  I'm going to wind up taking something I shouldn't take away and then leaving something I should.  But if the special master doesn't rule on it, I will deal with it in March.  If the special master rules on it, even though you don't think that she's addressed it,

don't file objections, just bring it to me *de novo* in March.

MS. DUNN:  Understood.

THE COURT:  And if the third parties want to be heard, you can let me just see -- why don't you talk to the third-party counsel, tell them what I did today, that they can be heard on that if they want to be that week in March, and just find out before we set a date, go back and talk with them about if they have a preference and you guys have a preference if there is a date that seems to work for everybody in that week.  The only day that is problematic for me is the 11th, Wednesday, but if you can set it for some time that week, I will hear it.

MR. LoCASCIO:  The last item I had on my list is the second, we'll call it the Arm -- I'll call it the Arm Limited complaint, the new complaint.  Our motion to dismiss would also fall, the deadline to do it, would fall in this window.  On the 9th, 10th, whatever day we're picking that week, Your Honor will hear the issue of objections to the amendments, whether there is an amendment and consolidation, and the parts --

THE COURT:  Your time to move to dismiss, to answer, move, or otherwise respond is extended until after the March 9th hearing.

MR. LoCASCIO:  Thank you.

THE COURT:  Put it on your list of things to

discuss that issue and we'll set a date for that.

MR. LoCASCIO:  Thank you.

And given the other aspects we will ask you to deal with, if we do the motion to dismiss and the other motion it may ultimately be mooted and a nonissue.  So thank you.

THE COURT:  Good.

MS. DUNN:  Good.  Thank you, Your Honor.

THE COURT:  Okay.

COURT CLERK:  All rise.  Court is adjourned.

(Court adjourned at 11:01 a.m.)


I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.


/s/ Dale C. Hawkins
Official Court Reporter
U.S. District Court