Originally Filed:  February 3, 2026
Redacted Version Filed:  February 11, 2026

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation; and
QUALCOMM TECHNOLOGIES, INC.,
  a Delaware corporation,

              Plaintiffs,

    v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
  a U.K. corporation,

              Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

REDACTED - PUBLIC VERSION

C.A. No. 24-490 (MN)
(CONSOLIDATED)

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO BIFURCATE THE 2026
TRIAL AND TO STRIKE IN PART QUALCOMM'S JURY DEMAND**

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
Jenifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Catherine Nyarady
Anish Desai
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA  94105
(628) 432-5100

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   Introduction And Summary Of The Argument ........................................................ 1

II.  Relevant Factual Background And Nature And Stage Of the Proceedings ........................... 3

III. Argument ............................................................................................. 7

   A.   This Case Should Proceed In A Single Trial Because Arm's Violation Of The UCL
        Provides An Element of Qualcomm's Tortious Interference Claims. ............................... 7

   B.   A Two Trial Process Would Be Inefficient, Expensive, Needlessly Delayed, and
        Prejudicial To The Court And The Parties ..................................................... 9

IV.  Conclusion ........................................................................................ 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple iPod iTunes Antitrust Litig.*,
   No. 4:05-cv-00037-YGR, D.I. 1026 (N.D. Cal. Jan. 5, 2015 ..................................................11

*People* v. *Bestline Prods., Inc.*,
   132 Cal. Rptr. 767 (Ct. App. 1976)..........................................................................................8

*CGB Occupational Therapy Inc.* v. *RHA Health Servs.*,
   357 F.3d 375 (3d Cir. 2004)......................................................................................................9

*CRST Van Expedited, Inc.* v. *Werner Enters., Inc.*,
   479 F.3d 1099 (9th Cir. 2007) ..............................................................................................6, 8

*Curtis* v. *Loether*,
   415 U.S. 189 (1974)...................................................................................................................7

*CZ Servs., Inc.* v. *Express Scripts Holding Co.*,
   2020 WL 4368212 (N.D. Cal. July 30, 2020)............................................................................8

*Dairy Queen, Inc.* v. *Wood*,
   369 U.S. 469 (1962)............................................................................................................11, 12

*DJO Global Inc.* v. *Glader*,
   2016 WL 11622009 (S.D. Cal. Dec. 22, 2016)..........................................................................8

*Drink Tank Ventures LLC* v. *Real Soda in Real Bottles, Ltd.*,
   286 Cal. Rptr. 3d 333 (Ct. App. 2021) ....................................................................................9

*In re Google Play Store Antitrust Litig.*,
   147 F.4th 917 (9th Cir. 2025) .................................................................................................11

*SEC* v. *Jensen*,
   835 F.3d 1100 (9th Cir. 2016) ..................................................................................................7

*Johns Hopkins Univ.* v. *CellPro*,
   160 F.R.D. 30 (D. Del. 1995) .................................................................................................10

*Kingsbury* v. *U.S. Greenfiber, LLC*,
   2013 WL 12121540 (C.D. Cal. Nov. 4, 2013)...........................................................................8

*L.A. Police Protective League* v. *Gates*,
   995 F.2d 1469 (9th Cir. 1993) .................................................................................................11

*Lowe* v. *Phila. Newspapers, Inc.*,
    594 F. Supp. 123 (E.D. Pa. 1984) ........................................................................10

*Miller* v. *Sun Cap. Partners, Inc.*,
    2016 WL 4941989 (D. Del. Sept. 15, 2016) ..........................................................7

*Nationwide Biweekly Admin., Inc.* v. *Super. Ct.*,
    462 P.3d 461 (Cal. 2020) ......................................................................................8

*Okura & Co. (Am.), Inc.* v. *Careau Grp.*,
    783 F. Supp. 482 (C.D. Cal. 1991) ........................................................................8

*Oracle Am., Inc.* v. *Hewlett Packard Enterprise Co.*,
    No. 4:16-cv-01393-JST, D.I. 1357 (N.D. Cal. July 14, 2022) ...............................11

*Pai Corp.* v. *Integrated Sci. Sols., Inc.*,
    No. 3:06-cv-05349-JCS, D.I. 196 (N.D. Cal. Oct. 27, 2008) ..................................9

*Perttu* v. *Richards*,
    605 U.S. 460 (2025) .............................................................................................11

*SenoRx, Inc.* v. *Hologic, Inc.*,
    920 F. Supp. 2d 565 (D. Del. 2013) ....................................................................10

*Sepracor Inc.* v. *Dey L.P.*,
    2010 WL 2802611 (D. Del. 2010) ........................................................................10

*Thabault* v. *Chait*,
    541 F.3d 512 (3d Cir. 2008) .................................................................................10

*People* v. *Toomey*,
    203 Cal. Rptr. 642 (Ct. App. 1984) .......................................................................8

*Willemijn Houdstermaatschaapij BV* v. *Apollo Computer Inc.*,
    707 F. Supp. 1429 (D. Del. 1989) ........................................................................10

**Other Authorities**

U.S. Const. Amend. VII ...............................................................................................11

Cal. Civ. Jury Instr. No. 325 .........................................................................................7

Cal. Civ. Jury Instr. No. 2202 ............................................................................4, 8, 9, 13

Cal. Civ. Jury Instr. No. 2204 ............................................................................4, 8, 9, 13

Fed. R. Civ. P.  42(b) ..............................................................................................9, 10

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

Qualcomm's operative Second Amended Complaint asserts several claims against Arm, including for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference, and violation of the California Unfair Competition Law ("UCL").  D.I. 137 ¶¶ 167-226.  Arm now moves to bifurcate Qualcomm's UCL claim from the other claims in the case, asking the Court to split the upcoming trial into two separate, cumbersome proceedings.  Specifically, Arm proposes that the jury first decide the contract and tort claims, and, only after the jury has returned a verdict, that the Court hold a second, subsequent bench trial for all evidence related to Qualcomm's UCL claim.

Arm's argument has at least two flaws.  *First*, it ignores that Qualcomm's tortious interference claims require proof of an independent "wrongful act"—an element met by Arm's violation of the UCL.  Thus, for the jury to decide the tortious interference claims, it must also hear all evidence relevant to the UCL claim.  *Second*, it ignores the broad swath of evidence relating to both the contract or tort claims on one hand, and the UCL claim on the other.  Although Qualcomm does not dispute that the Court will ultimately render the verdict on its UCL claim, if evidence is relevant to both the UCL claim and either the contract or tort claims, the jury should also hear that evidence.

Even if the Court is persuaded that there is UCL-only evidence that should not be presented to the jury, that does not require a second, post-jury verdict trial.  The Court may hear nonoverlapping evidence during separate proceedings on the days of the jury trial, as it did in the first trial, C.A. No. 22-1146, when the parties presented evidence relating only to Qualcomm's equitable defenses to the bench.  That is particularly appropriate given that, here, any potential UCL-only evidence is more limited than the evidence for the bench trial issues in the last case.  Arm has conceded as much, stating in its motion for summary judgment that "***every one*** of Arm's

supposedly anticompetitive acts [under the UCL] is already subject to another claim" (D.I. 438 at 24)[1], and acknowledging in its present Motion that "if Qualcomm succeeds on some or all of its claims sounding in tort and contract, then the Court [will] need [to] consider whether the facts found by the jury meet the standard for 'unfairness' under California law." (D.I. 596 at 9). Nonetheless, Arm also argues that there are certain broad categories of evidence that are only relevant to the UCL.  Issues of what will be admissible in the jury trial will be decided at the motion *in limine* stage.  But each of the categories Arm identifies is relevant to Qualcomm's jury claims, as they go to: (1) Arm's motive and intent in tortiously interfering with Qualcomm's customer relationships, (2) Arm's lack of good faith in breaching the implied covenant in the parties' contracts, or (3) the harm to Qualcomm from Arm's breaches.

Ultimately, failure to submit Qualcomm's UCL claim to the jury as an element of Qualcomm's claims for tortious interference will deny Qualcomm its right to a jury trial on those claims.  Even if that were not so, Arm's bifurcation proposal neither avoids prejudice, nor conserves judicial resources, nor enhances juror comprehension of the issues presented.  Instead, Arm's proposal for separate and subsequent trials will waste time and resources, and disrupt Qualcomm's ability to cohesively present the evidence relevant to its jury claims.   Arm's bifurcation request should be rejected, and the case should proceed forward in a single trial at which the Court hears all evidence alongside the jury and then renders the ultimate verdict on Qualcomm's UCL claim and its equitable remedies.

---

[1] For quoted material, unless otherwise indicated, all brackets, ellipses, internal quotations, and citations are omitted for readability. All emphasis is added unless otherwise indicated.

## II.    RELEVANT FACTUAL BACKGROUND AND NATURE AND STAGE OF THE PROCEEDINGS

On June 3, 2025, Qualcomm filed its Second Amended Complaint, which alleges claims against Arm for breach of contract, breach of the implied covenant of good faith and fair dealing, negligent and intentional tortious interference, and violation of the California UCL.  D.I. 137 ¶¶ 167-226.  Each of these claims arises from a years-long course of conduct by Arm intended to harm Qualcomm through any means necessary, including by failing to perform obligations under the parties' contracts, failing to negotiate in good faith, and using its position in the industry to disrupt Qualcomm's relationships with its customers.  *See, e.g.*, *id.* ¶¶ 1, 137-155, 207; D.I. 287 at 3-4; D.I. 442 at 1.  There is no dispute that Qualcomm is entitled to a jury on its intentional and negligent tortious interference claims and contract claims.[2]  *See* D.I. 137 at 65 (jury demand for all claims and issues triable by jury).[3]

Qualcomm's UCL claim alleges that "Arm is employing a variety of unfair acts and practices so that it can leverage its control over the ISA[4] . . . to attempt to prevent Qualcomm from developing and marketing products with CPUs that threaten to outcompete products containing Arm's off-the-shelf CPU designs."  D.I. 137 ¶ 207.  Arm's unfair competitive acts are both a standalone claim, and an element of Qualcomm's claims for intentional and negligent tortious interference.

Qualcomm's tortious interference claims require, among other things, that Qualcomm establish that Arm engaged in an independent wrongful act, which can be any act "proscribed by

---

[2] Arm's request for a bench trial is limited "with respect to [Qualcomm's] California Unfair Competition Law ('UCL') claim," (D.I. 596 at 1), and Arm has previously referred to Qualcomm's contract and tort claim damages as "the quintessential remedy at law," (D.I. 438 at 24-25).

[3] Qualcomm does not contest that its jury demand on all claims and issues "so triable" does not encompass the UCL claim itself (Count VI) or the UCL's equitable remedies.

[4] ISA is the Instruction Set Architecture.

some constitutional, statutory, regulatory, common law, or other determinable legal standard."[5]
*CRST Van Expedited, Inc.* v. *Werner Enterprises, Inc*., 479 F.3d 1099, 1109-1110 (9th Cir. 2007)
("A business act or practice that is 'unlawful, unfair, or fraudulent' under the UCL may also satisfy
the 'independent wrongful act' requirement for interference claims"); CACI Nos. 2202, 2204. The
"independent wrongful act" Qualcomm has alleged Arm engaged in is unfair conduct that violates
the UCL. D.I. 137 ¶¶ 193, 202; *see also* D.I. 287 at 16.

In addition, because Qualcomm's UCL claim alleges "a variety of unfair acts and
practices," (D.I. 137 ¶ 207), the supporting evidence encompasses conduct that underlies other
elements of Qualcomm's tortious interference claims as well as Qualcomm's contract claims. For
example:

- As part of Qualcomm's intentional tortious interference claim, Qualcomm must
  provide proof of Arm's intent—Qualcomm will prove that Arm intended to
  interfere with Qualcomm's business. Qualcomm will point to Arm's leak to
  Bloomberg News of its October 2024 letter threatening termination of
  Qualcomm's ALA and Arm's repeated "misleading and threatening statements to
  Qualcomm's customers" as proof of Arm's intent and motivations. D.I. 137 ¶¶
  192, 199. These misleading and threatening statements also go to the core of
  Qualcomm's UCL claims, by illustrating Arm's "repeated[] interfer[ence] or
  attempt[] to interfere with Qualcomm's relationships with Qualcomm's current
  and prospective customers." *Id.* ¶¶ 206-207.

- Qualcomm's claim for breach of the ALA arises from Arm's withholding of ALA
  deliverables and related misrepresentations. *Id.* ¶¶ 175-177. Qualcomm's UCL
  claim is based in part on the same actions—evidence that demonstrates Arm's
  unfair efforts to prevent Qualcomm from developing and verifying its own custom

---

[5] Qualcomm's tortious interference claims also require proof of an economic relationship with a
third party that "probably would have resulted in a future economic benefit to" Qualcomm, that
the relationship was disrupted, that Qualcomm was harmed, and that Arm's conduct was a
substantial factor in causing Qualcomm's harm. CACI Nos. 2202, 2204. For intentional tortious
interference, Qualcomm must establish that Arm knew of the relationship and either knew that its
wrongful conduct was certain or substantially certain to disrupt the relationship or intended for its
wrongful conduct to disrupt the relationship (CACI No. 2202); for negligent tortious interference,
Qualcomm must establish that Arm knew or should have known of the relationship, that Arm knew
or should have known that the relationship would be disrupted by Arm's failure to act with
reasonable care, and that Arm failed to act with reasonable care (CACI No. 2204).

CPUs that compete with Arm's off-the-shelf cores. *Id.* ¶¶ 206-210; D.I. 597 Ex. 4 ¶¶ 11-19, 32-46, 65, 67-78; D.I. 597 Ex. 1 at 8-9, 16-20, 38-41, 45-49.

- Qualcomm's claims under the TLA arise from Arm's failure to comply with its obligations under the TLA and constructive failure to offer commercially reasonable TLA licenses. D.I. 137 ¶¶ 213-226. These same actions support Qualcomm's UCL claim, which demonstrates Arm's unfair business practices in refusing to deal with Qualcomm on commercially reasonable terms. *Id.* ¶¶ 206-210; D.I. 597 Ex. 4 ¶¶ 11-19, 24-46, 65, 67-78; D.I. 597 Ex. 1 at 18-20, 38-41, 69-72.

- Qualcomm's claim for breach of the implied covenant of good faith and fair dealing under the ALA arises from Arm's failure to negotiate extensions to the ALA and a license for v10 (D.I. 137 ¶¶ 181-188), and its "business plans [to] abandon a supposed commitment to be the 'Switzerland' of the semiconductor industry" by licensing its architecture on fair terms (D.I. 596 at 8). Qualcomm's UCL claim is based in part on the same actions, which again demonstrate Arm's unfair business practices in refusing to deal with Qualcomm on commercially reasonable terms. D.I. 137 ¶¶ 206-210; D.I. 597 Ex. 4 ¶¶ 44-46, 65; D.I. 597 Ex. 1 at 18-20, 46-49.

There has been no dispute in this case that facts that support Qualcomm's UCL claim also support its other claims, and vice versa. The parties acknowledged the overlap during discovery. *See* Ex. 1 (QC Aug. 8 R&Os to Rogs 1-9) at 49-58 (Qualcomm incorporating responses to interrogatories about bases for breach and tortious interference claims into response to interrogatory requesting a description of "each alleged 'unlawful and unfair business acts and practices'"); Ex. 2 (Arm Sept. 5 R&Os to Rog 9) at 27 (Arm incorporating responses to all other interrogatories into response to interrogatory requesting "the complete factual and legal bases for [Arm's] contention, if any, that [its] conduct . . . does not constitute a violation of unfair competition law under the California Unfair Competition Law"). And in its motion for summary judgment, Arm stated that "***every one*** of Arm's supposedly anticompetitive acts [under the UCL] is already subject to another claim." D.I. 438 at 24.

Nonetheless, on January 20, 2026, Arm filed its present motion, seeking to push "any evidence and testimony related to the UCL count" (D.I. 596 at 3) into its own trial, separate from

the rest of Qualcomm's pending claims against Arm.  Although Arm's motion acknowledges the nearly complete factual overlap between the UCL claim and the other undisputably jury-triable claims (D.I. 596 at 9), it also contends that several broad categories of facts are purportedly unique to the UCL claim, and therefore should be heard exclusively in the separate, UCL-only bench trial it envisions.  These categories include: "evidence on complex economic concepts;" "whether Arm is a monopolist [or] occupies a dominant position;" "whether other instruction set architectures, such as x86 and RISC-V, compete in the same markets;" and "whether Arm's business plans abandon a supposed commitment to be the 'Switzerland' of the semiconductor industry."  *Id.* at 7-8.  Notably, Arm fails to specify what evidence falls within these categories other than certain paragraphs of reports by Qualcomm's economics expert Professor Eric Posner (who Arm asserts should testify only in the separate UCL proceeding) and Arm's rebuttal expert testimony on the same topics.[6]  *Id.*

Arm's motion ignores that the UCL claim is an element of Qualcomm's claim for tortious interference, and therefore Qualcomm must also present that supporting evidence to the jury.  Regardless, evidence in the categories Arm identifies is also relevant to Qualcomm's other claims to be tried to the jury.  Evidence of: (1) Arm's pattern of unfair conduct, (2) "complex economic concepts" (like Arm's incentive "to engage in input foreclosure in sectors where the potential long-term gains from taking business from licensees exceed the short-term loss of royalties on the products that the licensees no longer sell" (D.I. 597 Ex. 4 ¶ 67, *see also id.* ¶¶ 13-19, 32-46, 55-58, 65-78, 80-90)), and (3) Arm's decision to abandon its position as the "'Switzerland' of the semiconductor industry" and begin designing chips itself are all relevant to Arm's intent in

---

[6] Prior to Arm's motion, Qualcomm repeatedly requested, and Arm refused to provide, evidence that Arm believes "is unique to the UCL claim." Ex. 4 at 1-4.

intentionally interfering with Qualcomm's prospective business relationships (*see CRST Van Expedited, Inc.*, 479 F.3d at 1105 (identifying elements of intentional interference, including "defendant's intentional acts")).[7]    It is particularly relevant to Arm's interference with Qualcomm's ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████. *See* D.I. 597 Ex. 4 ¶¶ 44, 46, 64.  This evidence is also relevant to Arm's lack of "honesty of purpose" or good faith in dealing with Qualcomm for Qualcomm's breach of the implied covenant of good faith and fair dealing claims.  *See* CACI No. 325.

Similarly, evidence about Arm's (1) dominant position in the Arm ecosystem, and (2) the lack of viable competitor instruction set architectures, is relevant to Qualcomm's harm from Arm's breaches of contract.  Without alternatives to the Arm instruction set architecture, Qualcomm does not have the option of replacing Arm with another supplier.  *See, e.g.*, D.I. 597 Ex. 4 ¶¶ 11, 35, 43, 58, Ex. 5 ¶¶ 2, 15-16.  Arm's dominance and lack of competitors is also relevant to understanding the ALA and TLA terms themselves, as Qualcomm's reliance on Arm's architecture heavily influenced the parties' ALA and TLA negotiations.  Ex. 3 (Weiser) at 78:23-79:4, 153:20-155:7.[8]

## III.    ARGUMENT

### A.  This Case Should Proceed In A Single Trial Because Arm's Violation Of The UCL Provides An Element of Qualcomm's Tortious Interference Claims.

Where a "legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact."  *Curtis* v. *Loether*, 415 U.S.

---

[7] Especially given that Arm maintains a defense that it did not intend to intervene with Qualcomm's business relationships, (Ex. 2 (Arm Sept. 5 R&Os to Rog 8) at 8), Qualcomm will need to present to the jury evidence of Arm's motive for such interference.

[8] *See* D.I. 464 at 9-11 (███████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

189, 196 n.11 (1974).  And when a claim for equitable relief "involves the same set of facts" that a jury is required to find to resolve legal claims, the "jury serves as the finder of fact" for those issues.  *SEC* v. *Jensen*, 835 F.3d 1100, 1111 (9th Cir. 2016); *see also Miller* v. *Sun Cap. Partners, Inc.*, 2016 WL 4941989, at *3 (D. Del. Sept. 15, 2016).  Arm does not dispute that Qualcomm is entitled to present all overlapping evidence between its legal claims and UCL claim to the jury. *See* D.I. 596 at 3, 9.[9]

*All* of the UCL evidence in this case overlaps with Qualcomm's jury claims because Qualcomm's intentional and negligent tortious interference claims require that Qualcomm establish Arm engaged in an "independent wrongful act," which, in this case, is violation of the UCL.  The "wrongful act" can be any act "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  *CRST Van Expedited, Inc.*, 479 F.3d at 1109; CACI Nos. 2202, 2204.  It is up to courts to confirm that the "conduct alleged qualifies as wrongful," (CACI No. 2202; *see also* CACI No. 2204), and the Ninth Circuit has confirmed that "a business act or practice that is 'unlawful, unfair, or fraudulent' under the UCL may [] satisfy the 'independent wrongful act' requirement for interference claims."  *See CRST Van Expedited,*

---

[9] The majority of the cases cited by Arm either relate solely to equitable claims or do not discuss overlap of equitable claims with co-pending legal claims.  *See Kingsbury* v. *U.S. Greenfiber, LLC*, 2013 WL 12121540, at *1 (C.D. Cal. Nov. 4, 2013) (no argument regarding overlapping evidence with legal claims); *Nationwide Biweekly Admin., Inc.* v. *Super. Ct.*, 462 P.3d 461, 464 (Cal. 2020) (applying California state law to exclusively equitable claims); *People* v. *Toomey*, 203 Cal. Rptr. 642, 645-46 (Ct. App. 1984) (exclusively equitable claims); *People* v. *Bestline Prods., Inc.*, 132 Cal. Rptr. 767, 790-91 (Ct. App. 1976) (finding that civil penalties under the Penal Code did not provide a right to a jury); *CZ Servs., Inc.* v. *Express Scripts Holding Co.*, 2020 WL 4368212, at *1 (N.D. Cal. July 30, 2020) (no argument regarding overlapping evidence with legal claims); *Okura & Co. (Am.), Inc.* v. *Careau Grp.*, 783 F. Supp. 482, 487-88 (C.D. Cal. 1991) (no argument regarding overlapping evidence with legal claims).  Arm's cite to *Cargill Inc.* v. *Progressive Dairy Sols., Inc.*, actually favors Qualcomm, as the court determined that where evidence is relevant to two issues, in that case "motive and cause evidence," it is properly heard by the jury so long as one of the issues is "deemed to be a jury issue."  362 Fed. App'x 731, 734 (9th Cir. 2010).

*Inc.*, 479 F.3d at 1110; *DJO Global Inc*. v. *Glader*, 2016 WL 11622009, at *7 (S.D. Cal. Dec. 22, 2016) (recognizing that UCL violations and tortious interference claims can be closely related and may be based on the same facts).[10]  That is what Qualcomm has alleged here.  D.I. 137 ¶¶ 193, 202.

Accordingly, at trial, part of the "jury's role" in deciding Qualcomm's tortious interference claims will be to decide whether Arm "engaged in the conduct" that violated the UCL.  *See* CACI Nos. 2202, 2204; Ex. 7 (*Pai Corp.* v. *Integrated Sci. Sols., Inc*., No. 3:06-cv-05349-JCS, D.I. 196 at 75, 79 (N.D. Cal. Oct. 27, 2008) (instructing jury that wrongful conduct needed to support tortious interference claims could include "unfair competition," and on the legal standard for UCL claim)); *see also Drink Tank Ventures LLC* v. *Real Soda in Real Bottles, Ltd*., 286 Cal. Rptr. 3d 333, 349 (Ct. App. 2021) (explaining that jury's verdict on tortious interference claim could have been supported by violation of UCL as "wrongful conduct" absent a special verdict form omitting the UCL claim from serving as a predicate); *see generally CGB Occupational Therapy Inc*. v. *RHA Health Servs*., 357 F.3d 375, 389-390 (3d Cir. 2004) (upholding jury verdict on PA tortious interference claim with similar wrongful conduct requirement on the basis that the jury was "entitled to find" an inequitable breach of the fiduciary duty as a predicate).  The need for the jury to hear all of the UCL evidence, including expert testimony, to render a decision as to Arm's "wrongful conduct" alone obviates any claimed need for separate trials.

### B.  A Two Trial Process Would Be Inefficient, Expensive, Needlessly Delayed, and Prejudicial To The Court And The Parties.

"Under Rule 42(b) a district court has broad discretion in separating issues and claims for

---

[10] Arm has never disputed that its alleged violation of the UCL can satisfy this element of Qualcomm's tortious interference claims.  *See* D.I. 438 at 31-33 (Arm moving for summary judgment on tortious interference claims only on causation element); D.I. 233 at 14-15 (Arm arguing that tortious interference claims should be dismissed based on argument for dismissal of predicate UCL claim).

trial as part of its wide discretion in trial management," but in exercising that discretion "bifurcation remains the exception rather than the rule." *Sepracor Inc.* v. *Dey L.P.*, 2010 WL 2802611, at *3 (D. Del. 2010). Rule 42(b), which governs bifurcation, notes that "the default presumption in such cases is that all claims and defenses will be heard in one trial, unless the Court takes action to the contrary pursuant to the dictates of the Rule." *SenoRx, Inc.* v. *Hologic, Inc.*, 920 F. Supp. 2d 565, 568 (D. Del. 2013) (citing Fed. R. Civ. P. 42(b)); *see also Johns Hopkins Univ.* v. *CellPro*, 160 F.R.D. 30, 32–33 (D. Del. 1995) ("In the normal course of litigation, all claims and issues in a civil action are presented for resolution in one trial."). Arm, as "the party seeking bifurcation has the burden of showing that bifurcation is proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to all parties." *Lowe* v. *Phila. Newspapers, Inc.*, 594 F. Supp. 123, 125 (E.D. Pa. 1984); *see also Sepracor Inc.*, 2010 WL 2802611, at *3. To determine whether bifurcation is appropriate, courts consider "whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *SenoRx, Inc.*, 920 F. Supp. 2d at 567. Bifurcation is not appropriate here.

Qualcomm does not dispute that the Court will render the ultimate verdict on the UCL claim. But there should not be two different proceedings with two different evidence presentations—all evidence should be presented to the jury. Given the overlap in supporting evidence for Qualcomm's legal claims and UCL claim, a single trial would be faster and avoid unnecessary duplicative efforts from the parties and the Court. *See Willemijn Houdstermaatschaapij BV* v. *Apollo Computer Inc.*, 707 F. Supp. 1429, 1434 (D. Del. 1989) (even a "minor" overlap in evidence "certainly does not favor bifurcation"); *Thabault* v. *Chait*, 541 F.3d 512, 530 (3d Cir. 2008) ("eliminat[ing] little of the evidence presented at trial" provides no reason

to order separate trials).

Even if the UCL violation was not an element of the tortious interference claims, it would still be more efficient for all of the evidence supporting the UCL claim to be presented to the jury. Courts deciding UCL claims whose facts overlap with legal claims regularly recognize as much and proceed with a single trial before a jury, followed by a judicial verdict on the UCL claim and any attendant remedies. For example, in *Robinson* v. *U-Haul Co. of California*, the court "tried the [legal] cause of action in *Robinson II* together with the UCL cause of action before a jury, with the trial structured so that the jury would decide only the [legal] action, while the court would decide the UCL claim." 4 Cal. App. 5th 304, 311 (2016).

Federal courts in California routinely proceed the same way, which ensures protection of the plaintiff's right to a jury trial on all of its legal claims. *See, e.g.*, Ex. 5 (*Apple iPod iTunes Antitrust Litig.*, No. 4:05-cv-00037-YGR, D.I. 1026 (N.D. Cal. Jan. 5, 2015) (court entering judgment on UCL claim "pursuant to the evidence presented at trial" before jury)); Ex. 6 (*Oracle Am., Inc.* v. *Hewlett Packard Enterprise Co*., No. 4:16-cv-01393-JST, D.I. 1357 (N.D. Cal. July 14, 2022) (setting schedule for briefing for court to decide UCL claim after jury trial at which relevant evidence was presented)); *see also In re Google Play Store Antitrust Litig.*, 147 F.4th 917, 937 (9th Cir. 2025) ("the district court did not abuse its discretion in declining to bifurcate the trial and holding a combined jury trial on both the legal and equitable issues"); *Dairy Queen, Inc.* v. *Wood*, 369 U.S. 469, 489 (1962); *Perttu v. Richards*, 605 U.S. 460, 471-74 (2025); *L.A. Police Protective League* v. *Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993) ("[I]n a case where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, in deciding the equitable claims the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations."). This case should proceed the same way,

and Arm's motion for separate trials should be denied.

Arm argues that its plan for two trials will "conserve judicial resources." D.I. 596 at 7-8. To reach this conclusion, Arm asserts that issues of unfair competition are "complex" and that the Court may be able to save some of the time it would otherwise spend on this second trial Arm is requesting if the jury finds against Qualcomm on some or all of its legal claims. D.I. 596 at 7-9. That supposed time saving does not make sense because the Court will make its own determination of whether the evidence presented satisfies the unique elements of Qualcomm's UCL claim. *See Dairy Queen*, 369 U.S. at 479. But even accepting Arm's argument as true, its claim of any resource conservation depends on this Court accepting Arm's premise that it must hold two separate trials, with the more efficient option being to try the UCL claim second. The ordinary procedure of a single trial followed by a Court verdict on the UCL claim based on the evidence presented to the jury is far more efficient and should be followed here.

Arm's proposal would not only delay resolution of Qualcomm's claims and add the expense of a second trial, but it would prejudice Qualcomm's ability to present its evidence of Arm's unfair conduct cohesively in a single trial. Such a disjointed presentation of evidence is less likely to result in a just disposition, especially where Arm's violation of the UCL is an element of a jury-triable claim. *See supra* pp. 8-9. Arm argues that a unified presentation of evidence may cause juror "confusion" based on its assertion that the evidence relevant to the UCL is entirely "separate and distinct from any of Qualcomm's other claims." D.I. 596 at 6-7. But Arm's premise is wrong. As described above, all of the evidence that Arm has identified as supposedly unique to the UCL claim is relevant to at least Qualcomm's legal tortious interference claim, and much of it is relevant to Qualcomm's contract claims as well. *See supra* pp. 3-5. Arm is correct that the UCL and legal claims involve "different elements," (D.I. 596 at 6-7), but courts instruct jurors on

multiple claims involving different elements all the time and the jurors will not be asked to render an independent verdict on Qualcomm's UCL count.  The jurors will, however, require all of the evidence relevant to the UCL claim to make a determination as to the tortious interference elements, including whether Arm committed an independently wrongful act and whether Arm acted with intent.  CACI Nos. 2202, 2204.

## IV.    CONCLUSION

Arm's motion should be denied.  This case should proceed as a single trial where all evidence is presented, with the ultimate verdict on the UCL claim and related equitable remedies reserved for the Court.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
Jenifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Catherine Nyarady
Anish Desai
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA  94105
(628) 432-5100

February 3, 2026

Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 3, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                         *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                     *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
*Attorneys for Defendant*

Sydney D. Gaskins, Esquire                      *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                       *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                          *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX 78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                          *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
Kasdin M. Mitchell, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                            *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                                      *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*

*/s/ Jennifer Ying*

_____

Jennifer Ying (#5550)

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 11, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                          *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                       *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
*Attorneys for Defendant*

Sydney D. Gaskins, Esquire                        *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017
*Attorneys for Defendant*

Alexandra Corrinne Hottenrott, Esquire            *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                         *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                   *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                      *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                                *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*

*/s/ Travis Murray*
_____

Travis Murray (#6882)