Originally Filed: February 3, 2026
Redacted Version Filed: February 11, 2026

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation; and
QUALCOMM TECHNOLOGIES, INC.,
  a Delaware corporation,

           Plaintiffs,

      v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
  a U.K. corporation,

           Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

REDACTED - PUBLIC VERSION

C.A. No. 24-490 (MN)
(CONSOLIDATED)

**DECLARATION OF CATHERINE NYARADY IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANT'S MOTION TO BIFURCATE THE 2026 TRIAL AND
TO STRIKE IN PART QUALCOMM'S JURY DEMAND**

I, Catherine Nyarady, declare under penalty of perjury that the following is true and correct:

1.      I am an attorney at Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel of record for Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm" or "Plaintiffs") in the above-captioned matter. I am a member in good standing of the State Bar of New York and have been admitted *pro hac vice* in this case. I am competent to testify to the matters stated herein, have personal knowledge of the facts and statements in this declaration, and each of the facts and statements is true and correct.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of an excerpt of Qualcomm's Third Supplemental Responses and Objections to Arm's First Set of Interrogatories.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of an excerpt of Arm's Second Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of an excerpt of the transcript of the July 11, 2025 Deposition of Jonathan Weiser.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of an  email thread between Catherine Nyarady and Meredith Pohl, dated January 15, 2026.

6.      Attached hereto as **Exhibit 5** is a true and correct copy of *Apple iPod iTunes Antitrust Litig*., No. 4:05-cv-00037-YGR, D.I. 1026 (N.D. Cal. Jan. 5, 2015).

7.      Attached hereto as **Exhibit 6** is a true and correct copy of *Oracle Am., Inc.* v. *Hewlett Packard Enterprise Co*., No. 4:16-cv-01393-JST, D.I. 1357 (N.D. Cal. July 14, 2022).

8.      Attached hereto as **Exhibit 7** is a true and correct copy of and excerpt of *Pai Corp.* v. *Integrated Sci. Sols., Inc*., No. 3:06-cv-05349-JCS, D.I. 196 (N.D. Cal. Oct. 27, 2008).

I declare under the penalty of perjury that the foregoing is true and correct to the best of my present knowledge and belief.

Dated:  February 3, 2026                    */s/ Catherine Nyarady*
                                             Catherine Nyarady

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,　　　　　)
  a Delaware corporation,　　　　　　　)
QUALCOMM TECHNOLOGIES, INC.,　　)
  a Delaware corporation,　　　　　　　)
　　　　　　　　　　　　　　　　)　　C.A. No. 24-490-MN
　　　　　　　　Plaintiffs,　　　　)
　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
ARM HOLDINGS PLC., f/k/a ARM LTD.,　)
  a U.K. corporation,　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　)

**PLAINTIFFS' THIRD SUPPLEMENTAL RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES (NOS. 1–9)**

      Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, plaintiffs Qualcomm

Inc. and Qualcomm Technologies, Inc. (collectively "Qualcomm" or "Plaintiffs") by and through

their attorneys, hereby respond and object to defendant Arm Holdings PLC's ("Defendant" or

"Arm") Interrogatories to Plaintiffs dated February 7, 2025, as follows:

**GENERAL OBJECTIONS**

      1.    Plaintiffs object to each Interrogatory to the extent that it seeks to impose greater

or different obligations on Plaintiffs than those provided for by the Federal Rules of Civil

Procedure, the Local Rules of the United States District Court for the District of Delaware, any

discovery orders entered into this case, any other applicable Court orders, or agreements reached

by the parties.

      2.    Plaintiffs object to each Interrogatory to the extent that it seeks documents, things,

or information protected by the attorney-client privilege, the work-product doctrine, or any other

applicable privilege or immunity.  Nothing contained in these Responses and Objections is

██████████████████████████

ARMQC_02774642;    ARMQC_02774539;    ARMQC_02784227;    QCVARM_1122742;

QCVARM_1122745;    QCVARM_1126209;    QCVARM_1129673;    QCVARM_1129695;

QCVARM_1129711;    QCVARM_1130170;    QCVARM_1133205;    QCVARM_1133211;

QCVARM_1133216;    QCVARM_1133757;    QCVARM_1137360;    QCVARM_1140735;

QCVARM_1140739;    QCVARM_1140742;    QCVARM_1141284;    QCVARM_1146697;

QCVARM_1149389;    QCVARM_1149435;    QCVARM_1149528;    ARM_01230110;

ARM_00036346; ARM_01314327.

Furthermore, Arm's witnesses have now confirmed that Arm's direct outreach to third parties regarding the Qualcomm ALA, including Arm's leak of the October 22 notice letter, was in disregard of the ██████████████████████████. *See, e.g.*, Badani Dep. 43:13-44:44:7, 44:25-46:4; Kranhold Dep. 34:17-24, 71:6-14, 72:18-73:1, 78:8-79:23, 87:16-22.

## INTERROGATORY NO. 7:

Describe with specificity each alleged "unlawful and unfair business acts and practices" for which You seek monetary or injunctive relief, including: (i) a detailed description of each specific allegedly unlawful or unfair business act or practice attributable to Arm; (ii) the complete facts, circumstances, and legal basis that allegedly render the business act or practice "unlawful"; (iii) the complete facts, circumstances, and legal basis that allegedly render the business act or practice "unfair"; (iv) the dates on or during which each alleged act or practice occurred; (v) whether You contend Arm engaged in such alleged act or practice to leverage its alleged monopoly power and how such alleged act or practice helped Arm leverage its alleged monopoly power; (vi) why You contend the alleged act or practice entitles You to relief; and (vii) the specific legal or equitable relief You seek for each alleged act or practice.

## RESPONSE TO INTERROGATORY NO. 7:

Plaintiffs incorporate their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to Interrogatory No. 7 as premature at this stage of the litigation, given that (i) it involves an opinion or contention that relates to fact or the application of law to fact, and (ii) discovery, including, without limitation, document production and depositions, has

not been completed.  Plaintiffs further object to the Interrogatory as overly broad and unduly burdensome to the extent that it calls for the disclosure of information that was articulated in the First Amended Complaint.  Plaintiffs further object to the Interrogatory to the extent it calls for a legal conclusion.  Plaintiffs further object to the Interrogatory to the extent that Arm is seeking information subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine that makes such information non-discoverable.

Subject to and without waiving the foregoing objections, Plaintiffs refer Defendant to the Qualcomm ALA and to paragraphs 2, 4-5, 32-41, 57-62, 96-97, 109-118, 141-159 of the First Amended Complaint (D.I. 36), and incorporate them by reference as if fully set forth herein, for Plaintiffs' position.

Arm develops both an instruction set architecture ("ISA"), which allows for software compatibility across products compatible with the ISA, and its own off-the-shelf CPU designs compliant with that ISA.  Arm licenses its ISA through an Architecture License Agreement ("ALA") to permit a limited set of licensees to develop custom Arm-compatible CPUs.  But the Arm ISA does not tell a designer how to design or build a CPU, nor any of the internal design features that deliver superior performance and make a CPU competitive; a CPU designer developing a custom CPU designs how the core is built, how it performs, and how it executes the CPU's instructions.  In other words, the technological development and innovation—and the resulting product that may meet or fail the performance benchmarks necessary to succeed in the marketplace—is left to the licensee.  Because "the creation of an optimized CPU is very costly and time consuming," Arm "expect[s] the number of new [ALA] licensees for this technology to diminish over time as the effort required on their part to provide the customization often does not provide a reasonable return on investment."  Arm Holdings, Ltd., Registration Statement (Form

F-1) (Aug. 21, 2023) at 86, 131.  However, if an ALA licensee is willing to put in the extraordinary effort and investment to develop a custom CPU, it may develop differentiated CPUs, including differentiation from CPUs developed and marketed by Arm.

Arm licenses its off-the-shelf CPU designs through a Technology License Agreement ("TLA").  Under a TLA, Arm delivers a complete processor core design that is compatible with the Arm ISA, saving the licensee the trouble and expense of designing its own CPU.  But reliance on Arm's off-the-shelf CPU designs comes at a cost, both financially and with regard to performance.  Reflecting that the TLA license delivers a complete, ready-made design, Arm charges substantially higher royalties for the use of its off-the-shelf cores than it charges for a core that an ALA licensee develops.  Moreover, when a chip developer uses stock Arm CPU designs, it may have difficulty differentiating its product from those offered by rivals that also license Arm CPU designs.  And when Arm fails to keep up with the state of the art in CPU design and performance, as it has in recent years, any licensor of Arm's off-the-shelf cores may have difficulty building and marketing chips that can compete against those with more advanced custom CPUs.

Until recently, Arm's licensing model has been neutral and open, which enabled Arm to become the most ubiquitous computer architecture on the planet, used by practically every smartphone, most "internet of things" devices, many automobiles, and an increasing number of personal computers and datacenter servers.  *See* Stephen Nellis et al., *Nvidia's Arm Deal Sparks Quick Backlash in Chip Industry*, Reuters (Sept. 14, 2020, 1:24 AM), https://www.reuters.com/article/technology/nvidias-arm-deal-sparksquick-backlash-in-chip-industry-idUSKBN2650GT/; Tim Bradshaw, *Rene Haas: "Arm Has the Most Ubiquitous Computer Architecture on the Planet"*, Financial Times (June 7, 2024), https://www.ft.com/content/5b191c4c-119f-4f97-bc61-622d20bfa46d  (quoting   Rene   Haas);

████████████████████████████████████

*Consumer Technologies: Smartphones, Arm*, https://www.arm.com/markets/consumer-technologies/smartphones (last visited Mar. 10, 2025). And at present, there is no viable, licensable alternative to the Arm architecture. *See* C.A. No. 22-1146, Trial Tr. 513:3-514:5 (Colwell). All told, Arm estimates that 270 billion Arm-compliant chips have shipped as of January 2024. *Arm: The Technology Foundation for AI Everywhere*, Arm (Jan. 8, 2024), https://newsroom.arm.com/blog/arm-ai-everywhere.

Following Arm's acquisition by SoftBank and its failed acquisition by Nvidia, Arm has changed its business model, seeking to bolster its revenue by increasing the royalty rates it demands to use the Arm ISA and capturing a greater share of the chips that power devices compatible with the Arm ISA—and thus the greater royalty rates it can obtain by licensing chip designs (or by selling chips themselves). For example, Arm has announced that it will collect double the royalties for Armv9 as compared to Armv8, despite only modest, incremental improvements to the ISA, and has pressured existing v8 licensees to "upgrade" their licenses to v9 by not releasing or supporting older v8 cores. *Q3 FYE24 Results Presentation* at 5, Arm (Feb. 7, 2024), https://investors.arm.com/static-files/c383780b-44f8-42c0-a125-4f6db0b8eb06 (statement of Rene Haas). Likewise, Arm has sought to leverage the Arm ISA's ubiquity to exclude competitors from designing and selling chips that are compatible with the Arm ISA—chips that "compete with" and "pose a threat to Arm's implementation IP business." Initial Phase 2 Submission, Anticipated Acquisition by NVIDIA Corp. of ARM Ltd., U.K. Competition & Markets Authority (Dec. 20, 2021) at 6-7. Indeed, Rene Haas, Arm's CEO, has stated that ████ ████████████████████████████████████, ARM_01239056 at -061, something Arm now plans to do, Stephen Nellis and Max A. Cherney, *Arm Recruits from*

████████████████████████████████████

*Customers as It Plans to Sell Its Own Chips*, Reuters, https://www.reuters.com/technology/arm-recruits-customers-it-plans-sell-its-own-chips-2025-02-13/ (last visited Mar. 7, 2025).

Because Qualcomm custom CPUs have outperformed Arm's, Arm has employed a series of wrongful tactics in an attempt to stifle Qualcomm's technological leaps in CPU design, to force Qualcomm to continue to use Arm's off-the-shelf CPUs, and to coerce Qualcomm into renegotiating the Qualcomm ALA. For example, Arm engaged in a misinformation campaign to mislead Qualcomm's customers into believing that Qualcomm would not be able to deliver licensed Arm-compatible products after 2024, and that Qualcomm customers must obtain their own direct licenses from Arm. And on October 22, 2024, during Qualcomm's annual Snapdragon Summit where it announced its new Snapdragon 8 Elite Mobile Platform that delivers significant performance and efficiency improvements over competitors, including platforms that rely on Arm's off-the-shelf CPU designs, Arm baselessly declared that Qualcomm was in material breach of the Qualcomm ALA. Arm then leaked the breach letter to Bloomberg, which published a story that same day. Ian King, *Arm to Cancel Qualcomm Chip Design License in Feud Escalation*, Bloomberg (Oct. 22, 2024, 8:17 PM), https://www.bloomberg.com/news/articles/2024-10-23/arm-to-cancel-qualcomm-chip-design-license-in-escalation-of-feud.

Arm's leak interfered with Qualcomm's existing and prospective business relationships. For example, ████████████████. insisted on additional reassurances before it would extend its existing business relationship with Plaintiffs. Likewise, ████████████ refused to finalize a term sheet for an agreement under which Plaintiffs would design a custom chip until it could first understand the implications of termination of the Qualcomm ALA on Plaintiffs' ability to deliver the custom chips in question.

████████████████████████████

Plaintiffs seek, among other things, damages resulting from Arm's wrongful conduct, specifically including damages arising from the postponement of the business opportunity with ███████████████., as well as restitution of amounts Arm derived from its unfair and anticompetitive conduct.

Discovery is ongoing, and Plaintiffs reserve the right to supplement or amend their response.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in its initial response to this Interrogatory.

Subject to and without waiving any of its objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their initial response to this Interrogatory. Plaintiffs further respond that information responsive to this Interrogatory may be obtained from documents that Plaintiffs have produced or will produce in this litigation, and the burden of ascertaining the answer to this Interrogatory from those documents is substantially the same for Defendant as it is for Plaintiffs. *See* Fed. R. Civ. P. 33(d). In particular, Plaintiffs direct Defendant's attention to, *e.g.*:

ARM_01230076,    QCVARM_0000218,    QCVARM_0626590,    QCVARM_0626603, QCVARM_0626519,    ARM_01314327,    ARM_01238384,    QCVARM_0688932, QCVARM_0708107,    QCVARM_0689117,    QCVARM_0687479,    QCVARM_0595815, QCVARM_0691526,    QCVARM_0692665,    QCVARM_0699278,    QCVARM_0691853, QCVARM_0685578,    QCVARM_0699176,    QCVARM_0523837,    QCVARM_0599801, QCVARM_0600098,    QCVARM_0602404,    QCVARM_0618712,    QCVARM_0575613, QCVARM_0575611,    QCVARM_0618420,    QCVARM_0616871,    QCVARM_0600101,

QCVARM_0707732,    QCVARM_0707997,    QCVARM_0708118,    QCVARM_0602198,

QCVARM_1022267,    QCVARM_1022268,    QCVARM_0607060,    ARMQC_00027166,

ARM_01249519,    ARM_01231394,    ARMQC_02731051,    ARMQC_02732393,

QCVARM_0616912,    QCVARM_0616916,    QCVARM_1030813,    QCVARM_1014307,

ARM_00086164,    QCVARM_0713513,    QCVARM_0713840,    QCVARM_0713652,

QCVARM_0713665,    QCVARM_0713516,    QCVARM_0617730,    QCVARM_0713528,

QCVARM_0713532,    QCVARM_0713535,    QCVARM_0713538,    QCVARM_0713530,

ARMQC_02600838,    ARMQC_02601067,    ARMQC_02742804,    ARMQC_02741466,

ARMQC_02742861,    QCVARM_0864277,    QCVARM_1029911,    QCVARM_0865370,

QCVARM_0866177,    QCVARM_0863435,    QCVARM_1029757,    QCVARM_1030509,

QCVARM_0864924, QCVARM_0717757, QCVARM_0847765, QCVARM_0709978.

Plaintiffs reserve the right to further respond or object to, or supplement or amend, this Interrogatory to the extent required and in accordance with Federal Rules of Civil Procedure 26 and 33 and the applicable Local Rules at an appropriate time.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in its initial response to this Interrogatory.  Subject to and without waiving the foregoing objections, Plaintiffs refer Defendant to the Qualcomm ALA and to paragraphs 2, 4-5, 43-52, 68-73, 134-135, 152-166, and 189-212 of the Second Amended Complaint, and incorporate them by reference as if fully set forth herein, for Plaintiffs' position.

Plaintiffs further respond that information responsive to this Interrogatory may be obtained from deposition testimony and related exhibits in this litigation, and the burden of ascertaining the

████████████████████████████████████████

answer to this Interrogatory from those depositions is substantially the same for Defendant as it is for Plaintiffs. *See* Fed. R. Civ. P. 33(d). In particular, Plaintiffs direct Defendant's attention to, *e.g.*: Deposition of Cristiano Amon; Deposition of Manju Varma; Deposition of Kurt Wolf; Deposition of Pavan Mulabagal.

Plaintiffs incorporate the testimony provided and exhibits relied upon in the depositions of individuals identified as knowledgeable pertaining the subject matter of this interrogatory, including testimony from witnesses deposed during the week of July 7–11, 2025 and any additional testimony obtained after July 11, 2025. Plaintiffs reserve the right to supplement or amend their response based on testimony provided by these witnesses.

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in Plaintiffs' initial response to this Interrogatory.

Subject to and without waiving any of their objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their previous responses to this Interrogatory. Plaintiffs also incorporate by reference their responses to Interrogatories Nos. 2, 3, 6, 12, 14, and 16; the Expert Report of Patrick F. Kennedy, Ph.D. (dated August 8, 2025), along with its accompanying schedules; and the Expert Report of Eric A. Posner (dated August 8, 2025), along with its accompanying exhibits.

Qualcomm's General Counsel, Ann Chaplin, testified extensively regarding Arm's unfair and unlawful business practices, including listing many of them out for Arm's counsel as follows:

████████████████████████████████████████

████████████████████████████████████████





.”  Chaplin

Dep. 28:24-30:20.

Plaintiffs further respond that additional information responsive to this Interrogatory may be obtained from deposition testimony, related exhibits, and documents produced in this litigation, and the burden of ascertaining the answer to this Interrogatory from those documents is

substantially the same for Defendant as it is for Plaintiffs. *See* Fed. R. Civ. P. 33(d).  In particular,

Plaintiffs additionally direct Defendant's attention to, e.g.: Amon Dep. 21:10-22:21, 25:3-26:22

41:9-42:10, 43:5-12, 45:9-18, 53:23-55:14, 57:19-58:23, 64:22-65:5, 66:4-67:7, 102:17-104:17,

107:1-15, 108:14-19, 119:13-21, 120:1-15, 129:1-130:9, 145:19-146:12, 172:5-173:5, 238:11-

239:5, 271:8-272:8, 287:4-8, 294:8-295:14; Chaplin Dep. 54:5-20, 54:22-56:7, 57:14-58:5, 58:7-

25, 60:9-14, 63:12-64:19, 65:12-18, 66:2-17, 79:6-11, 129:20-131:24, 167:13-22; Haas Dep.

52:17-53:10, 61:22-62:1, 63:2-5, 63:7-21, 75:14-17, 94:20-95:7, 96:25-97:3, 98:14-19; Varma

Dep. 46:6-48:10, 56:2-57:2, 147:6-147:12, 150:23-151:22, 243:22-244:20; Wolf Dep. 28:5-29:25,

30:11-17, 31:25-33:7, 35:9-25, 39:24-42:12; Jeon Dep. 14:1-15:18, 16:19-23, 20:21-21:21, 22:11-

23:1, 52:9-15, 53:3-56:14, 69:22-70:21, 72:1-21, 86:18-89:3, 98:24-99:100:9; Mulabagal Dep.

39:21-40:7, 42:13-43:19, 54:7-56:4, 111:9-113:21; Patrick Dep. 73:12-74:13, 75:25-76:8, 79:20-

80:22, 81:7-83:10, 91:13-92:6, 110:10-20, 112:3-114:3; Golden Dep. 28:18-29:14, 30:10-31:16,

32:15-33:3, 33:14-19, 36:21-37:23, 43:3-18, 83:8-84:9, 99:13-20, 100:20-101:5, 102:16-19,

104:6-24; G. Williams Dep. 61:19-62:3, 68:17-71:15, 72:1-9; Bhattacharya Dep. 57:8-58:3, 74:9-

76:16, 67:16-68:25, 83:13-88:5, 89:21-24, 94:5-12, 100:10-137:1; Trivedi Dep. 18:15-23:3, 31:19-

34:6, 77:17-78:11, 93:18-98:13, 98:14-103:16, 125:3-130:11, 136:7-137:8, 137:9-139:3, 139:7-

142:3, 146:18-152:1, 156:2-165:22, 168:13-170:22, 172:1-177:12, 179:21-182:8, 196:5-14,

197:12-24, 210:8-212:9, 220:17-222:14, 253:3-14; Weidmann Dep. 144:24-146:5, 146:9-160:2,

151:6-152:14, 164:10-171:2; Deposition of Karthik Shivashankar ("Shivashankar Dep.") at 62:18-

63:24, 67:12-24.


**INTERROGATORY NO. 8:**

Describe with specificity how Arm allegedly has, can, or could "leverage its monopoly" in the

relevant markets, including (i) identifying the relevant markets in which Arm allegedly has an

QCVARM_1122733;    QCVARM_1151603;    QCVARM_1151597;    QCVARM_1151965;

QCVARM_1151966;    QCVARM_1151964;    QCVARM_1151620;    QCVARM_0865490;

QCVARM_1151967; QCVARM_1151968.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Erin J. Morgan
DUNN ISAACSON RHEE LLP
11 Park Place
New York, NY 10017
(202) 240-2900

Catherine Nyarady
Anish Desai
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP

2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Gregg Stephenson
Paul, Weiss, Rifkind, Wharton
   & Garrison LLP
535 Mission Street, 25th Floor
San Francisco, CA  94105
(628) 432-5100

August 8, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 8, 2025, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Karen E. Keller, Esquire                                    *VIA ELECTRONIC MAIL*
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                                  *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
Sydney D. Gaskins, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Kyle W.K. Mooney, Esquire                                  *VIA ELECTRONIC MAIL*
Alexandra Corrinne Hottenrott, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

Erik J. Olson, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Defendant*

Daniel P. Muino, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
*Attorneys for Defendant*

Brian M. Kramer, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, CA  92130
*Attorneys for Defendant*

William Frentzen, Esquire                                 *VIA ELECTRONIC MAIL*
Daralyn J. Durie, Esquire
Shaelyn Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                   *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

████████████████████████

Jay Emerick, Esquire                                    *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                              *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*


*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)

# Exhibit 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation,
and QUALCOMM TECHNOLOGIES, INC.,
a Delaware corporation,

                Plaintiffs,

      v.

ARM HOLDINGS PLC., f/k/a ARM LTD., a
U.K. corporation,

                Defendant.

C.A. No. 24-490 (MN)

## ARM'S SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S SECOND SET OF INTERROGATORIES (NOS. 4-11)

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States District Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm")'s Second Set of Interrogatories (Nos. 4-11).

## GENERAL OBJECTIONS

Arm makes the following general objections, which are hereby incorporated by reference and made part of its response to each and every Interrogatory.

1.      Arm objects to each Interrogatory to the extent it purports to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

2.      Arm objects to the "Instructions" and "Definitions" sections to the extent they purport to alter the plain meaning and/or scope of any specific Interrogatory, on the ground that such alteration renders the Interrogatory vague, ambiguous, overly broad, and/or uncertain, by

**2025):**

Arm incorporates by reference its previous responses to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further incorporates by reference the forthcoming expert reports and testimony of Dr. Michael Brogioli, Steven Richards, and Timothy Simcoe as well as documents and testimony cited therein.

**INTERROGATORY NO. 8:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not interfere, either intentionally or negligently, with Qualcomm's business opportunities, including but not limited to Qualcomm's business opportunities with the Smartphone Company and the AI and Ecosystem Company identified in the operative Complaint. Your response should include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 8 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding alleged interference with "Qualcomm's business opportunities," without limitation.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.  Arm further objects to this Interrogatory as vague and ambiguous, as the terms "Qualcomm's business opportunities," and "Qualcomm's business opportunities with the Smartphone Company and the AI and Ecosystem Company" are unclear.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

**Arm's October 2024 Letter And Its Publication Did Not Interfere With Qualcomm's Business Opportunities Because Arm Repeatedly And Publicly Stated That Qualcomm Was In Breach Of The Qualcomm ALA As Early As 2022**

Arm's October 2024 letter stating that Qualcomm was in breach of the Qualcomm ALA, and the publication of the same, did not interfere with any of Qualcomm's business relationships because Arm repeatedly and publicly stated that Qualcomm was in breach of the Qualcomm ALA as early as 2022.

On November 15, 2022 Arm filed a publicly-available Answer in *Arm Ltd. v. Qualcomm Inc. et al.*, No. 22-1146 (MN) ("Arm v. Qualcomm"), in which Arm publicly stated that "Qualcomm is materially breaching its ALA, giving Arm the right to terminate, and the Qualcomm ALA does not provide a license for or right to continue development of the Nuvia technology," that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology, entitling Arm to terminate that ALA based on Qualcomm's material breaches," that "Arm is entitled to terminate Qualcomm's ALA based on Qualcomm's material breaches of the verification, delivery, and support and maintenance provisions," and that:

> "Qualcomm's allegations that it is exercising its rights with respect to the relevant Nuvia technology under Qualcomm's license agreements with Arm and is not in violation of those agreements fail because Arm has no such obligations with respect to the Nuvia technology, and Qualcomm is breaching the Qualcomm ALA by insisting otherwise. Under the Qualcomm ALA, Arm has no obligation to provide, and Qualcomm has no right to seek, verification, delivery, or support and maintenance in connection with technology developed under the now-terminated Nuvia ALA. The 'verification' provisions of ████████ of the Qualcomm ALA are limited to products manufactured [redacted] in the ALA. The delivery (████████) and support and maintenance (████████) obligations of the Qualcomm ALA are similarly limited to the defined [redacted] and therefore likewise do not extend to the relevant Nuvia technology, which embodies and was derived from Arm technology delivered by Arm to Nuvia under Nuvia's now-terminated ALA. Qualcomm's unreasonable, bad-faith demands that Arm comply with purported obligations for verification, delivery, and support and maintenance with respect to technology delivered and developed outside the scope of the Qualcomm ALA are contrary to the parties' expectations and undermines the benefit to Arm from the Qualcomm ALA, thereby materially breaching that agreement's terms and implied

covenant of good faith and fair dealing and entitling Arm to terminate the Qualcomm ALA under ▮▮▮▮▮▮▮▮."

No. 22-1146, D.I. 21 at 2, 37, 39, 41-42.

On April 11, 2024, Arm filed another publicly-available Answer that likewise included allegations that Qualcomm was in breach of its ALA, including that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology," and that "Qualcomm is materially breaching its ALA, giving Arm the right to terminate …." D.I. 322 at 2, 42-45, 48-49. These materials were available to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146.

### Qualcomm Recognized That Arm's October 22, 2024 Notice Of Material Breach "Is Actually Not New News"

In *Arm v. Qualcomm*, the Court held a pre-trial conference on November 20, 2024. During that conference, Qualcomm's counsel stated that Arm's claim that Qualcomm is in breach of the Qualcomm ALA has been in the case "starting at the very beginning," Nov. 11, 2024 Hearing Tr. at 13:10-16, and that "[t]he letter on October 22nd is actually not new news in the sense of alleging these breaches":

> "And in response to that, there have been repeated allegations that the Qualcomm ALA has been breached by Qualcomm. The letter on October 22nd is actually not new news in the sense of alleging these breaches. It has been in the case squarely and we anticipate that it is going to be raised by ARM in response to the arguments that we have regarding the fact that our products are licensed."

*Id.* at 14:18-24. Qualcomm's counsel stated earlier in that same hearing that "with respect to Qualcomm's alleged breach under the Qualcomm ALA, Arm itself has put that in the case starting at the very beginning" and that "[w]hen you go to their answer at DI 21, they say … [Qualcomm is] also materially breaching its ALA with Arm." *Id.* at 13:10-16. Qualcomm candidly admitted "as early as November 15, 2022, in DI 21, … they say Qualcomm is materially breaching its own ALA and giving ARM the right to terminate that agreement." *Id.* at 13:23-14:12. Qualcomm also acknowledged "there is at least five or six references" to this same assertion that Arm has the right

to terminate the Qualcomm ALA "throughout [Arm's] pleading" in November 2022. *Id.*

### Arm's Alleged Publication of Arm's October 2024 Letter Did Not Interfere With Qualcomm's Business Opportunities Because Qualcomm Admits It Had An Obligation To Publish—And Did Publish—Arm's October 2024 Letter

On October 22, 2024 Arm sent a notice of material breach ("October 22 Notice") to Qualcomm that echoed its public statements in its November 15, 2022 and April 11, 2024 Answers, including that:

> "The Qualcomm ALA ███████████████████████████ ███████████████ Qualcomm is only permitted to ████████████████████████████████ requirements of the Qualcomm ALA ██████████████████████████████. And Qualcomm is entitled ██████ within the scope of the ALA. These obligations are reflected in multiple places in the Qualcomm ALA, including but not limited to ████████████████████████ ████████████████████████████
>
> Qualcomm has systematically and willfully breached these obligations, and its breaches have accelerated and expanded in recent months. Specifically, Qualcomm has ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ █████████████████. And Qualcomm initiated and continues to prosecute contractual claims that arise from Qualcomm's improper conduct with respect to these unlicensed cores.
>
> Due to Qualcomm's willful, ongoing, and renewed actions, Qualcomm is in material breach of the Qualcomm ALA."

10/22/2024 Arm Breach Notice to Qualcomm (ARMQC_02749015).   No terms or provisions of the Qualcomm ALA were quoted in Arm's notice of material breach. *Id.* Qualcomm responded on October 28, 2024.  10/28/2024 Qualcomm Ltr. to Arm.  Qualcomm made a summary of the contents of both notices available to the public on November 6, 2024.  Qualcomm 10-K Annual Report (November 6, 2024).

On January 8, 2025, Arm withdrew its October 22 Notice, stating that:

████████████████████████████████████████████████████████████████



while Arm's ongoing legal challenges are pending, Arm therefore withdraws the pending October 22, 2024 notice of material breach.

> Arm's prior correspondence and relevant court filings in the Delaware litigation reflect Arm's legal position regarding the scope of the Qualcomm ALA and the required actions that Nuvia acting in concert with Qualcomm must take in light of the termination of the Nuvia ALA on March 1, 2022. Arm's future legal filing will reflect its legal position regarding the non-final verdict, a new trial and judgment in the legal case. Arm reserves all rights and none of Arm's conduct, support and verification reflects a waiver of Arm's present or future rights or claims.

1/8/2025 Arm Ltr. to Qualcomm (QCVARM_0847182). Qualcomm and Arm exchanged further correspondence on January 22 and 30. 1/22/2025 Qualcomm Ltr. to Arm (QCVARM_0847182); 1/30/2025 Arm Ltr. to Qualcomm (QCVARM_0847184).

On November 6, 2024 Qualcomm publicly described Arm's October 22 Notice in its Annual Report to investors:

> On October 22, 2024, Arm provided us with a notice alleging that we have breached the Qualcomm ALA by marketing products that contain CPUs that Arm alleges use designs, technology and code created by Nuvia employees prior to our acquisition of Nuvia; by seeking support and verification from Arm for additional products that use such alleged designs, technology and code; and by suing Arm for breach of the Qualcomm ALA. Arm's notice asserts that it will have the right to terminate the Qualcomm ALA if such alleged breaches are not cured within 60 days of such notice.

Qualcomm 10-K Annual Report (November 6, 2024).

On December 16, 2024 Qualcomm filed a public version of its First Amended Complaint in this case in which it publicly described Arm's October 22, 2024 notice of material breach, stating that "Arm sent Qualcomm a notice of material breach purporting to have the right to terminate Qualcomm's own license," described the contents of the letter, and publicly filed a redacted copy

of the notice of material breach. A redacted copy of Arm's October 22, 2024 notice of material breach was and remains accessible to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146. D.I. 39 at 2, 8-9, 32-35; D.I. 39-1.

On January 22, 2025, Qualcomm wrote to Arm and stated that the parties' correspondence on this issue was not confidential, and that Qualcomm was "required by law" to publicly disclose the correspondence in its filings with the U.S. Securities & Exchange Commission, and that "in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice":

> "Even if that [January 8, 2025] letter [withdrawing the October 22, 2024 notice of material breach] were itself 'Confidential'—and it is not—Qualcomm is nevertheless required by law to disclose the fact that Arm has withdrawn that notice and indicated that it has no current plan to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. For instance, in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice and Arm's threats to terminate the Qualcomm ALA. Qualcomm intends to update those disclosures in light of Arm's withdrawal of that notice and statement that it does not currently intend to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. We presume you have no objection to this legally required update."

1/22/2025 Qualcomm Ltr. to Arm (QCVARM_0847182).

On February 5, 2025 Qualcomm publicly described Arm's January 8, 2025 letter in its Quarterly Report:

> On January 8, 2025, Arm notified us that it was withdrawing its October 22, 2024 notice of breach and indicated that it has no current plan to terminate the Qualcomm ALA, while reserving its rights pending the outcome of the ongoing litigation.

Qualcomm 10-Q Quarterly Report (February 5, 2025). Cristiano Amon also publicly described Arm's communication in its public investor conference call on February 5, 2025.

### Arm's Actions Did Not Interfere With Any Of Qualcomm's Business Opportunities With ███████████

The business opportunities Qualcomm alleges it lost are not due to Arm's actions, and Arm's conduct did not amount to intentional or negligent interference with Qualcomm's business

relationships with ███████ or ███████ .

Regarding ███, Qualcomm contends that "[a]fter the Breach Letter was published, [███]
delayed finalizing a termsheet for an agreement under which Qualcomm would design that custom
chip and requested inclusion of language related to Qualcomm's chip development capabilities.
[███] has stated to Qualcomm that before it finalizes that termsheet, it must first understand the
implications of termination of the QC ALA on Qualcomm's ability to deliver the custom chips in
question."  SAC ¶ 159.  Qualcomm has failed to identify the termsheet in question let alone any
documents relevant to its theory that its business relationship with ███ was harmed by Arm.
Further, any delay in the finalization of that termsheet is due to factors other than Arm's actions,
including Qualcomm's own business practices.

Regarding ███████, Qualcomm contends that "[███] had informed
Qualcomm that it was designing a new mobile phone that would rely on Qualcomm's innovative
Snapdragon® 8-Elite SoC.  After learning that Arm was threatening to terminate the QC ALA,
however, a senior executive of [███] informed a senior Qualcomm executive that the
customer's legal and intellectual-property teams would need to confer with their counterparts at
Qualcomm. ███ has also insisted on Qualcomm's providing additional reassurances before
it will extend its existing business relationship with Qualcomm." SAC ¶ 158.  Qualcomm has failed
to identify any lost opportunity with ███, and any loss of an "exten[sion]" to its relationship
with ███ is due to factors other than Arm's actions, including Qualcomm's own business
practices.

**Qualcomm's Claims Are Barred By *Noerr-Pennington* And California's Litigation Privilege**

As a matter of law, Arm's alleged conduct is related to litigation and therefore not
actionable.  *Noerr-Pennington* immunizes parties from liability "for engaging in conduct (including
litigation) aimed at influencing decision making by the government."  *Avaya Inc., RP v. Telecom*

*Labs, Inc.*, 838 F.3d 354, 413 (3d Cir. 2016). The *Noerr-Pennington* doctrine protects "conduct incidental to the prosecution of [a] suit," *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934-35 (9th Cir. 2006), including "demand letter[s] or cease-and-desist letter[s]." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015); *Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 655 F. App'x 103, 111 (3d Cir. 2016) ("cease-and-desist letter" "protected under *Noerr-Pennington*"); *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, C.A. No. 07-127-LPS, 2011 WL 678707, at *2 (D. Del. Feb. 18, 2011) (similar).

Courts also apply *Noerr-Pennington* immunity when plaintiffs bring tortious interference and other claims based on purported communications about litigation to customers. *See, e.g.*, *Evanger's Dog & Cat Food Co. v. Env't Democracy Project*, No. CV 21-08489, 2022 WL 180205, at *1, *4 (C.D. Cal. Jan. 20, 2022) (dismissing claims arising out of letter to plaintiff's customer); *Fitbit, Inc. v. Laguna 2, LLC*, No. 17-cv-00079- EMC, 2018 WL 306724, at *10 (N.D. Cal. Jan. 5, 2018) (claims based on contacting customers regarding pre-suit demand letter barred by *Noerr-Pennington*).

California's litigation privilege also protects Arm's letter (and the alleged publicizing of that letter) from Qualcomm's tortious interference claims. The "litigation privilege is … absolute in nature," *Silberg v. Anderson*, 50 Cal. 3d 205, 215 (1990), and protects not only statements made in litigation, but also "out-of-court statements 'to nonparties who have a substantial interest in the outcome of the pending litigation,'" *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1040-41 (S.D. Cal. Aug. 29, 2011); *see also Cargill v. Progressive Dairy Sols., Inc.*, No. CV-F-07-0349-LJO-SMS, 2008 WL 2235354, at *6 (E.D. Cal. May 29, 2008) ("news release" "inform[ing] the recipients of the … claims asserted" protected by the privilege); *Designing Health, Inc. v. Erasmus*, No. CV-98-4758 LGB (CWx), 2001 WL 36239748, at *3-4 (C.D. Cal. Apr. 24, 2001) (similar). Arm's letter was made during litigation

with Qualcomm regarding Arm's claims.  Such publications are protected under California law. *Cargill*, 2008 WL 2235354, at *6.

### Qualcomm Has Not Identified Any Independently Wrongful Conduct

To plead intentional interference with prospective economic advantage, Qualcomm must allege "intentionally wrongful act(s) designed to disrupt the relationship." *See Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.,* 2 Cal. 5th 505, 512 (2017). This element requires "independently wrongful" conduct, defined as conduct "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.,* 19 Cal. 4th 1134, 1159 (2003). Even if a plaintiff alleges some sort of interference with economic advantage, courts dismiss intentional interference claims where the plaintiff still does not allege conduct "wrongful by some legal measure," *Golden v. Sound Inpatient Physicians Med. Grp., Inc.,* 93 F. Supp. 3d 1171, 1178 (E.D. Cal. 2015), or that the conduct "violated any other law, which is a necessary element of intentional interference with economic relations," *Republican Nat'l Comm. v. Google LLC,* 2024 WL 3595538, at *1 (E.D. Cal. July 31, 2024).

Qualcomm has already conceded that breach-of-contract does *not* satisfy the independently-wrongful-acts requirement. D.I. 64 at 13; *see Block v. eBay, Inc.,* 2012 WL 1601471, at *5 (N.D. Cal. May 7, 2012).  Allegations that Arm leaked the breach letter or made statements to customers, SAC ¶ 192, likewise do not show violations of "other law," particularly where Qualcomm fails to plead UCL claims and where that conduct is protected by *Noerr-Pennington*.  Qualcomm's negligent tortious interference claim fails for the same reason: Arm has "failed to allege facts showing that defendants engaged in an act that is wrongful apart from the interference itself." *See TriCoast Builders, Inc. v. Lakeview Loan Servicing, LLC*, 2021 WL 248316, at *5 (Cal. Ct. App. Jan. 26, 2021) (quotations omitted).

### Qualcomm Has Not Established That Arm Owed Any Duties To Qualcomm

With respect to Qualcomm's negligent interference claim, Arm did not owe Qualcomm a duty of care. California law imposes a duty of care via contract only if the contract itself contains that duty. *See*, *e.g.*, *Golick v. State of California*, 82 Cal. App. 5th 1127, 1150 (2022) (no duty where plaintiffs did not show contract included "duty to protect"); *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 423 (2022) (no duty where contract did not contain "express promise"). Even "[t]he implied covenant of good faith and fair dealing is a contractual relationship and does not give rise to an independent duty of care." *Ragland v. U.S. Bank*, 209 Cal. App. 4th 182, 206 (2012).

Qualcomm also cannot establish a duty of care where Qualcomm and Arm are allegedly competitors. Qualcomm repeatedly alleges that Qualcomm and Arm have "competing CPU designs," and that Arm is seeking to "compete … with Qualcomm." SAC ¶¶ 1, 5; *see also id.* ¶¶ 35, 52, 70–74, 160, 165. But "[t]here is no duty of care between competitors under California law." *Singman v. NBA Props., Inc*, 2014 WL 7892049, at *5 (C.D. Cal. Jan. 17, 2014); *Stolz v. Wong Commc'ns Ltd. P'ship*, 25 Cal. App. 4th 1811, 1825 (1994).

### Qualcomm's Claims Are Barred By Unclean Hands

Qualcomm's allegations regarding Arm's interference with Qualcomm's customer relationships is also barred by the equitable doctrine of unclean hands. "One who comes into equity must come with clean hands and keep those hands clean throughout the pendency of the litigation even to the time of ultimate disposition by an appellate court." *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 310 (D. Del. 2005) (quoting *Gaudiosi v. Mellon*, 269 F.2d 873, 881 (3d Cir. 1959)). "The clean hands maxim gives broad discretion to the court's equity power in refusing to aid an unclean hands litigant." *Id.* "Any willful act, which can rightfully be said to transgress equitable standards, is sufficient." *Id.* at 311.

"The equitable doctrine of unclean hands applies when a party seeking relief has committed

an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Kars 4 Kids Inc. v. Am. Can!*, 98 F.4th 436, 449 (3d Cir. 2024) (quoting *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001)). "The misconduct must be rooted in 'fraud, unconscionable conduct, or bad faith ... that injures the other party and affects the balance of equities.'" *Id.* at 450 (quoting *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 n.12 (3d Cir. 1999)).

Courts have found unclean hands where the plaintiff engaged in the same (inequitable) conduct it accuses a defendant of. *See, e.g.*, *Emco, Inc. v. Obst*, No. CV03-6432-R (RZX), 2004 WL 1737355, at *4–6 (C.D. Cal. May 7, 2004) (in a Lanham Act case where plaintiff accused defendant of falsely advertising that its blades were manufactured in the United States, the court found that defendant had proven its affirmative defense of unclean hands as a matter of law because plaintiff's "Americut" blades—which plaintiff promoted with classic American symbols such as the American flag and Statue of Liberty—were similarly manufactured overseas); *Haagen-Dazs, Inc. v. Frusen Gladje Ltd.*, 493 F. Supp. 73, 75–76 (S.D.N.Y. 1980) (denying plaintiff's motion for a preliminary injunction due to plaintiff's unclean hands in accusing defendant of falsely using Swedish motifs to suggest that its products were not of domestic origin, when plaintiff had done similarly). Qualcomm published Arm's October 2024 letter just days after Arm did. Further, on March 25, 2025, Bloomberg published a story concerning Qualcomm's non-public complaints of anticompetitive behavior at the European Commission, US Federal Trade Commission, and Korea Fair Trade Commission. Josh Sisco & Ian King, *Qualcomm Takes Legal Fight with Arm to Global Antitrust Agencies*, Bloomberg News (Mar. 25, 2025, 3:55 PM CDT), https://www.bloomberg.com/news/articles/2025-03-25/qualcomm-takes-legal-fight-with-arm-to-global-antitrust-agencies. Qualcomm's publication of Arm's letter, and non-public litigation materials to Bloomberg bar its claims against Arm under the doctrine of unclean hands.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8 (June 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further responds that Qualcomm's witness Mr. Cristiano Amon, Qualcomm's President and Chief Executive Officer and corporate designee on harm resulting from Arm's alleged tortious interference (*see, e.g.*, Arm's Fed. R. Civ. P. 30(b)(6) Topic No. 56), testified that Qualcomm's allegations of harm resulting from the October 22 Notice and Bloomberg article are based on Arm's allegations in the lawsuit. For example, Mr. Amon testified as follows:



Amon Dep. Tr. (Rough) at 161:15-162:19; *see also id.* at 146:13-147:7. Mr. Amon's testimony confirms that Qualcomm's allegations of harm resulting from the October 22 Notice and Bloomberg article relate squarely to the litigation and Arm's litigation-related conduct.

Accordingly, Qualcomm's claims for tortious interference are barred by *Noerr-Pennington* and California's Litigation Privilege.

Regarding ███ Arm further responds that Qualcomm still has failed to identify any harm to its business relationship with ███, let along any harm that was caused by Arm.  In particular, the material business terms agreed between Qualcomm and ███ were unaffected by the October 22 Notice.  For example, Qualcomm's witness Mr. Pavankumar Mulabagal, Qualcomm's corporate designee on Arm's Fed. R. Civ. P. 30(b)(6) Topic Nos. 51 ("All communications between Qualcomm and ███, including the timing of such communications, surrounding Qualcomm's contention that Arm intentionally and/or negligently interfered with Qualcomm's relationship with ███") and 58 ("The factual basis for Your contention that Arm had knowledge of Your existing or prospective business relationship with ███, including when and how Arm first became aware of the relationship"), testified ███████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████. *See, e.g.*, Mulabagal Dep. Tr. at 35:18-36:15.

Nor did the October 22 Notice and Bloomberg article materially delay Qualcomm's business dealings with ███ . ██████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████. *See, e.g.*, *id.* at 49:6-63:4;  QCVARM_0864924; QCVARM_0864933;  QCVARM_0864833. ████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ █████████████████████████████████. Mulabagal Dep. Tr. at 47:17-48:15.  And,

Mr. Mulabagal testified that █████████████████████████████████████████

████████████████████████████████████████████████████████████ *Id.* at 88:22-89:15. ████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████. *See, e.g.*, *id.* at 57:5-58:3.  The October 22 Notice and Bloomberg article therefore did not alter Qualcomm's and █████ development timeline.

Arm's dealings with █████ also did not impact Qualcomm's dealings. ██████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████ *See id.* at 94:7-98:22.  Qualcomm therefore cannot point to any actionable harm to its business relationship with █████, let alone harm that was caused by Arm.

Regarding ████████, Arm further responds that Qualcomm still has failed to identify any harm to its business relationship with █████ that was caused by Arm.  Qualcomm's business relationship with █████ had instead become increasingly strained in the years preceding the October 22 Notice because of Qualcomm's decision to ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████. *See, e.g.*, Amon Dep. Tr. (Rough) at 264:2-275:25.  Predating the October 22 Notice, Mr. Amon ████████████████████████

████████████████████████████████████████████████ *See, e.g.*, *id.* at 266:2-8.  Any harm to Qualcomm's business relationship with █████████ was Qualcomm's own doing and unrelated to any actions by Arm.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: QCVARM_0865022, QCVARM_0864924, QCVARM_0864933, QCVARM_0864833, QCVARM_0865420, QCVARM_0865236, QCVARM_0865430, QCARM_3425702, QCARM_3534037, QCVARM_0856270, QCVARM_0856888, QCVARM_1069082, QCVARM_1069106, QCARM_3533982, QCARM_7484460, QCARM_7484463, QCVARM_0467694, QCVARM_1069945, QCVARM_1070005, QCVARM_1118617, QCARM_7515834, QCVARM_0464076, QCVARM_0464128, QCVARM_0464495, QCVARM_0465604, QCVARM_0600730, QCVARM_0601923, QCVARM_0608314, QCVARM_1068645, QCVARM_1118760, QCVARM_1119347, QCVARM_0848786.

Arm further incorporates by reference the testimony of the following witnesses: Pavankumar Mulabagal, Cristiano Amon, and Spencer Collins, including the documents used at each of those depositions..

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8 (September 5, 2025):**

Arm incorporates by reference its previous responses to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further incorporates by reference the forthcoming expert reports and testimony of Thomas Britven, Timothy Simcoe, and Steven Richards, as well as documents and testimony cited therein.

**INTERROGATORY NO. 9:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that Your conduct as identified in Paragraphs 204-212 of the Second Amended Complaint does not constitute a violation of unfair competition law under the California Unfair Competition Law. Your response should include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 9 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, and unduly burdensome.  Arm objects to this Interrogatory to the extent it calls for a legal conclusion.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Qualcomm asserts that Arm violated the California Unfair Competition Law ("UCL") by allegedly (1) withholding deliverables under the Qualcomm ALA and TLA; (2) misrepresenting to Qualcomm that it was not withholding deliverables; (3) "wrongfully" asserting that it has the right to terminate the QC ALA; (4) refusing to negotiate licensing terms with Qualcomm in good faith; (5) threatening or attempting to cut off Qualcomm's access to Arm's ISA; (6) leaking its October 22, 2024 letter to the media; (7) interfering or attempting to interfere with Qualcomm's customer relationships; and (8) making misleading statements to Qualcomm's customers to pressure them not to acquire products from Qualcomm.  SAC ¶¶ 206–07.  None of this conduct constitutes "a violation of unfair competition law" under the UCL.

To bring a claim under the UCL, Qualcomm must show that Arm engages in an "unfair, unlawful, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Qualcomm has

indicated its allegations implicate the "unfair" and "unlawful" prongs.  Arm's conduct is not unfair or unlawful.

There are two tests courts use to determine whether conduct is "unfair" under the UCL.  First, when a business competitor brings a UCL claim, California courts apply a "tethering test" that examines whether the conduct "[1] threatens an incipient violation of an antitrust law, or [2] violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [3] otherwise significantly threatens or harms competition."  *Cel-Tech Comm'cns, Inc. v. L.A. Cell. Tel. Co.,* 20 Cal.4th 163, 187 (1999).  The claim must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  *Zhejiang Yuanzheng Auto*, 2023 WL 4317189, at *12 (citing *Cel-Tech Comm'cns, Inc. v. L.A. Cell. Tel. Co.,* 20 Cal.4th 163, 186–87 (1999)).  A party's conduct "violates the policy or spirit of the antitrust laws" where "the effect of the conduct is comparable to or the same as a violation of the antitrust laws, [] or it otherwise significantly threatens or harms competition."  *People's Choice Wireless*, 131 Cal. App. 4th at 662 (citing *Cel-Tech*, 20 Cal. 4th at 187).  Second, in consumer actions, California courts apply a "balancing test" which "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Id.* (simplified).  Finally, the "unlawful" prong requires Qualcomm to prove that Arm violated a federal, state, or local law.  *See Olson v. World Fin. Grp. Ins. Agency, LLC*, 2024 WL 4668515, at *8 (N.D. Cal. Nov. 4, 2024).  Arm's alleged conduct does not violate the UCL under either the "unfair" prong—including under both the tethering and balancing tests—or "unlawful" prong.

### Arm's Alleged Conduct Does Not Violate the UCL Under The Tethering Test

As a threshold matter, Qualcomm's allegations about Arm's allegedly unfair conduct suffer from two fatal flaws.  For one, Qualcomm "does not identify an antitrust law or a policy or spirit of such a law."  *Roberson v. Pocker*, 2024 WL 2984026, at *10 (C.D. Cal. Apr. 3, 2024) (granting

dismissal); *see also Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002) (affirming dismissal where "complaint allege[d] that Albertson's acted with a motive to secure an advantage over competitors" but did "not state a theory of unfair practice based on violation of specific anti-trust statutes or policies of anti-trust legislation").  Qualcomm cannot make the "unusual" showing that Arm somehow "violate[d] the 'policy and spirit' of the antitrust laws without violating the actual laws themselves."  *Synopsys, Inc. v. ATopTech, Inc.,* 2015 WL 4719048, at *10 (N.D. Cal. Aug. 7, 2015).  For another, Qualcomm fails to identify any relevant market in which Arm's conduct allegedly threatens competition and has affirmatively represented that it "does not intend to offer a market definition to support its" UCL claim.  4/9/25 Ltr. From C. Nyardy at 4.  But "without a definition of [the] market there is no way to measure [Arm's] ability to lessen or destroy competition."  *Ohio v. Am. Express*, 585 U.S. 529, 543 (2018); *Racek v. Rady Children's Hosp. of San Diego*, 2012 WL 2947881, *6 (Cal. App. July 20, 2012); *Sun Microsystems, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 992 (N.D. Cal. 2000); *Vox Network Sols., Inc. v. Gage Tech., Inc.*, 2025 WL 929939, *5 (N.D. Cal. Mar. 27, 2025) (dismissing claim under UCL's "unfair" prong, where plaintiff failed to identify relevant market); *Reilly v. Apple Inc.*, 578 F.Supp.3d 1098, 1106-1111 (N.D. Cal. 2022) (same where plaintiff alleged only implausible market).  Qualcomm's allegations thus beg the question: "Competition" with what products, or with whom?

Although the legal inquiry should end there, Arm's conduct nevertheless does not satisfy any of the respective tests under the UCL or constitute a violation of that law.  Qualcomm's continued refusal to identify the antitrust laws implicated by Arm's conduct or the relevant market(s) in which Arm's conduct allegedly threatens competition makes it impossible for Arm to provide the "complete factual and legal bases" supporting Arm's contention that its "conduct as identified in Paragraphs 204-212 of the Second Amended Complaint does not constitute a violation of unfair competition law under the California Unfair Competition Law."  Arm's analysis is thus

limited to Qualcomm's present allegations and representations, and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory to the extent Qualcomm clarifies its claim.

Qualcomm alleges that Arm acted unfairly by "withholding deliverables" it must provide "████████████████████," "misrepresenting to Qualcomm that it was not withholding deliverables," "asserting that it has the right to terminate the QC ALA without any basis in the QC ALA for those assertions," and "refusing to negotiate license terms with Qualcomm in good faith." SAC ¶ 206.  These allegations assert that Arm breached its contracts with Qualcomm, but corporate plaintiffs may not bootstrap contract claims into UCL violations. *See, e.g.*, *Martin Saturn of Ontario, Inc. v. Suburu of Am. Inc.*, 2023 WL 9417499, *8 (C.D. Cal. July 21, 2023); *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012); *Scripps Clinic v. Superior Court*, 108 Cal.App.4th 917, 940 (2003) (concluding harm was contractual, but not a UCL violation); *Mazal Grp. LLC v. Espana*, 2017 WL 6001721, at *4 (C.D. Cal. Dec. 5, 2017) (dismissing UCL claim when plaintiff did not include any specific allegations regarding the unfair prong and simply incorporated breach of contract allegations)).  As Qualcomm itself has argued, it "makes little sense to hold that contract disputes between 'the world's most sophisticated companies,' [*Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 997 (9th Cir. 2020)], could give rise to an independent UCL claim."  Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 48 (Apr. 26, 2024) (citing *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008)).  Qualcomm's assertion that Arm refused to negotiate license terms with Qualcomm in good faith is barred by the statute of limitations.

To the extent Qualcomm alleges that any of Arm's conduct was aimed at "threatening or attempting to cut off Qualcomm's access to the ubiquitous Arm ISA," SAC ¶ 207, such conduct still does not constitute a violation of the UCL.  As Qualcomm itself has argued, "an antitrust duty

to deal with" or license others is "far outside the mainstream of antitrust law." Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 30 (Apr. 26, 2024); *see also Verizon Comm'cns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407-411 (2004) ("As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)); *FTC v. Qualcomm*, 969 F.3d 974 (9th Cir. 2020) ("As the Supreme Court has repeatedly emphasized, there is no duty to deal under the terms and conditions preferred by [a competitor's] rivals."); *Simon and Simon, PC v. Align Tech., Inc.*, 2020 WL 1975139, *3-6 (D. Del. Apr. 24, 2020). It is completely beyond the reach of antitrust law here given Qualcomm has disclaimed any argument that Arm is attempting to exercise monopoly power. 4/28/25 Ltr. From C. Nyardy at 1 ("As the … SAC make[s] clear, Qualcomm is not asserting a claim for monopolization under Section 2 of the Sherman Act; it is asserting a claim under the UCL's 'unfair' prong."); SAC ¶ 207 (striking monopoly allegation). "[I]n the absence of any purpose to create or maintain a monopoly," antitrust law "does not restrict the long-recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *United States v. Colgate & Co.*, 250 U.S. 300, 308 (1919); *Trinko*, 540 U.S. at 408. For that reason, California courts have consistently held a purported refusal to deal "is neither unlawful nor unfair" as a matter of law for purposes of the UCL. *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 367 (2001); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 254; *Beverage v. Apple Inc.*, 101 Cal. App. 5th 749-50, 753-56 (2024); *People's Choice Wireless, Inc. v. Verizon Wireless,* 131 Cal. App. 4th 656, 668 (2005) (explaining that though it is true an antitrust violation is not necessary under the UCL, "[t]he allegations here are simply too far removed from cognizable antitrust evils to warrant intervention by a California court").

Also, to the extent Qualcomm's allegation that Arm "refus[ed] to negotiate license terms with Qualcomm in good faith," SAC ¶ 206, refers to the claim that Arm violated the implied covenant of good faith and fair dealing by allegedly refusing to negotiate a license to v10 of the Arm ISA, both the breach of contract and "refusal to deal" principles explained above preclude UCL liability premised on such conduct.

Next, Arm did not violate the UCL by allegedly "interfering or attempting to interfere with Qualcomm's relationships with Qualcomm's current and prospective customers," "leaking the Breach letter to the media," and "making misleading statements to Qualcomm's customers to pressure them not to acquire products from Qualcomm."  SAC ¶¶ 206–07.  The policy and spirit behind the antitrust laws protect against harm "to *competition itself*, not merely to competitors." *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 996 (9th Cir. 2020).  In its recent filings, Qualcomm indicated its view for the first time that Arm acted unfairly in order to "gain market share as a chip designer."  Qualcomm nowhere alleges or explains how this or any other alleged conduct broadly undermines a competitive market or consumers, or harms any alleged competitor other than Qualcomm.  And in any event, Arm has virtually no market share today in a so-called "chip design market."

Further, because Arm's statements in Arm's October 22, 2024 letter are true, they cannot serve as a basis for "unfair" or anticompetitive conduct.  *See Digene Corp. v. Third Wave Techs., Inc.*, 536 F. Supp. 2d 996, 1006 (W.D. Wis. 2008), aff'd, 323 F. App'x 902 (Fed. Cir. 2009); *Gen. Commc'ns Eng'g, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 421 F. Supp. 274, 290 (N.D. Cal. 1976) (holding that "salesman puff" does not violate antitrust laws).  The antitrust laws are generally unconcerned with the content of competitive speech, even critical or derogatory speech. *See Schachar v. Am. Acad. Of Ophthalmology*, 870 F.2d 397, 399 (7th Cir. 1989) ("Antitrust law does not compel your competitor to praise your product or sponsor your work. To require

cooperation or friendliness among rivals is to undercut the intellectual foundations of antitrust law."); *cf. Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 937 F. Supp. 435 ("Antitrust laws do not exist to stifle speech … Thus, any stigma that MSL has suffered because of ABA's not listing MSL as an accredited school does not provide the necessary offensive *conduct* for antitrust liability.").

### Arm's Alleged Conduct Does Not Violate the UCL Under The Balancing Test

The balancing test asks "whether the challenged business practice is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 1197, 1226 (N.D. Cal. 2014). Qualcomm does not properly qualify as a consumer such that the consumer balancing test should apply. Even if Qualcomm could constitute a consumer under the test, for the same reasons outlined above, Arm's business practices are pro-competitive, foster innovation, and benefit consumers, meaning they are not immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of Arm's conduct far outweighs any potential harm to Qualcomm. *See Drum v. San Fernando Valley Bar Association.*, 182 Cal. App. 4th 247, 257 (2010).

Arm's business model is inherently pro-competitive and beneficial to consumers. Arm's decision to license its ISA designs enables business partners to innovate, meet consumer demands across a diverse range of applications, and provide differentiated products. That, in turn, increases consumer choice and competition—including against Arm's own CPUs—resulting in lower consumer prices. And, Arm's licenses for its market-leading, ready-to-use CPUs offer partners an opportunity to bypass the enormous costs associated with CPU development and instead reallocate those resources towards innovating their products in other ways. Arm's partners can thereby speed up their time-to-market and fill more areas of consumer need, all while passing along their savings

to consumers.  Arm's practices are "reasonable and consistent with current industry practice," and "reduc[e] 'transaction costs and complexities'" for consumers.  Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 47–48 (Apr. 26, 2024) (citing *FTC v. Qualcomm*, 969 F.3d 974, 996 n.17, 996 (9th Cir. 2020)).  Any alleged business-related harms Qualcomm may have suffered do not outweigh the pro-competitive benefits and practical utility of Arm's business practices.

### Arm's Alleged Conduct Does Not Violate the UCL Under The Unlawful Prong

To succeed under the "unlawful" prong of the UCL, Qualcomm must allege "a violation of another law [as a] predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007); *Gopher Media LLC v. Melone*, 2023 WL 8790266, at *15 (Dec. 19, 2023 S.D. Cal) ("To prevail on a claim under the unlawful prong of the [UCL], the plaintiff must show that a challenged [conduct] violates any federal or California statute or regulation." (citation omitted)).  Qualcomm alleges that "Arm's conduct is … unlawful because it violates California common law, including state law prohibiting intentional and negligent interference with prospective economic advantage."  SAC ¶ 209.  But a common law claim cannot form the predicate for a UCL claim.  *See Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1044 (9th Cir. 2010), ("[A] common law violation such as breach of contract is insufficient … Because [plaintiff] does not go beyond alleging a violation of common law, he fails to state a claim under the unlawful prong of § 17200."); *Mazal Group, LLC v. Espana*, 2017 WL 6001721, at *4 (C.D. Cal. Dec. 4, 2017) (granting MTD on UCL claim when plaintiff did not go beyond alleging a violation of common law).  And, in any event, Qualcomm's argument is circular.  Qualcomm contends Arm's conduct is unlawful because it tortiously interfered with Qualcomm's economic advantage, SAC ¶ 209, and simultaneously contends Arm's conduct is wrongful for purposes of that tort because the conduct violates the UCL.  Such circular reasoning

cannot satisfy the elements of either claim.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Qualcomm claims that Arm acted "unfair[ly]" by sending Qualcomm a letter on October 22, 2024 to notify Qualcomm that it was in material breach of the Qualcomm ALA. SAC ¶ 206. But, two years prior, Qualcomm itself sent threatening letters to Arm with baseless claims that Arm breached the ALA. On November 3, 2022 and December 5, 2022, Qualcomm sent notice letters to Arm alleging that, "[b]y refusing to provide the OOB, ARM has failed to comply with its



Arm_01241585; ARM_00025401. Arm responded on December 6, 2022, stating that "Arm strongly disagrees with Qualcomm's claim that ▉▉▉ is at issue or that provision of the OOB ▉▉▉▉▉▉▉" and that "Qualcomm's letter is a transparent and malicious effort to transform a debate about Arm's support obligations under ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉" Arm_01241565. Arm's legitimate defense of its rights under the ALA two years after Qualcomm itself began weaponizing the ALA to coerce Arm cannot serve as a basis for a UCL claim.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARMQC_00001136, ARM_01259705, ARMQC_00001136, QCVARM_1068459, QCVARM_0462995, QCVARM_0528826.

Arm further incorporates by reference the testimony of the following witnesses: Lynn

Couillard, Martin Weidmann, Gerard Williams, Spencer Collins, Michael Williams, William Abbey, Mark Dragicevich, Karthik Shivashankar, Cristiano Amon, Jean-Francois Vidon, Paul Williamson, Richard Meacham, Ziad Asghar, Peter Greenhalgh, Jannik Nelson, Durga Malladi, and Manju Varma, including the documents used at each of those depositions.  Arm also incorporates by reference its responses to Interrogatory Nos. 1–8, and 10–12, including the testimony and documents cited and incorporated therein (and any supplements thereto). Additionally, Arm incorporates by reference its Motion to Dismiss, D.I. 19, 28, Arm's Motion to Dismiss Qualcomm's First Amended Complaint, D.I. 48, 72, and Arm's Motion to Dismiss Qualcomm's Second Amended Complaint, D.I. 232, 233, 305.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9 (September 5, 2025):

Arm incorporates by reference its previous responses to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further incorporates by reference the forthcoming expert reports and testimony of Dr. Michael Brogioli, Timothy Simcoe, and Steven Richards as well as documents and testimony cited therein.

## INTERROGATORY NO. 10:

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not breach the Qualcomm ALA. Your response should include, but is not limited to, the complete factual and legal bases for any contention that you did not withhold ██████ ████████████████ or breach the implied covenant of good faith and fair dealing, and should include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

## RESPONSE TO INTERROGATORY NO. 10 (JUNE 16, 2025):

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the

Dated: September 5, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Matthew J. McIntee
Meredith Pohl
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
matt.mcintee@kirkland.com
meredith.pohl@kirkland.com

Jay Emerick
Reid McEllrath
Adam Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP


 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 5, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

# Exhibit 3

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
_____

QUALCOMM INCORPORATED, a      )
Delaware corporation,        )
QUALCOMM TECHNOLOGIES, INC.,)
a Delaware corporation,      )
                             )
              Plaintiffs, )
                             )
        vs.                  ) C.A. No.: 24-49-MN
                             )
ARM HOLDINGS PLC, f/k/a,     )
ARM LTD. a U.K. corporation,)
                             )
              Defendants.  )
_____)


HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY


VIDEOTAPED DEPOSITION OF JONATHAN WEISER
San Diego, California
Friday, July 11, 2025


Reported by:
CATHY A. WOOD, RDR, RMR, CRR
CSR No. 2825


_____
DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

# Exhibit 4

| From: | Pohl, Meredith |
|---|---|
| To: | Nyarady, Catherine; Barnett, Mary; Braly, Jacob; qualcommvarm@dirllp.com; GRP-QCvARM; jying@morrisnichols.com; Murray, Travis |
| Cc: | #KE-ARM-Qualcomm; YCST_Arm_Qualcomm@ycst.com |
| Subject: | RE: Qualcomm v. Arm - Meet and Confer |
| Date: | Thursday, January 15, 2026 12:31:45 PM |

Catherine,

We have been clear since we first reached out on December 26 that Qualcomm has no jury trial right on its UCL claim, and for that reason, the UCL claim should be tried to the bench rather than the jury.  We have now had a telephonic meet-and-confer and exchanged several emails over this issue.  In those communications, Qualcomm has never expressed any willingness to stipulate to a bench trial for the UCL claim.  We are therefore at an impasse and will move forward with filing our motion.

We do not have an obligation as part of the meet-and-confer process to identify every piece of evidence related to the UCL claim that Arm believes is not relevant to the other issues in the case, just as Qualcomm does not have an obligation today to identify every piece of evidence that it believes applies to both the UCL and non-UCL claims.

We have also laid out our position on how other equitable issues should be handled, while Qualcomm has said nothing about its views.  If Qualcomm would like to provide its position on the other equitable issues and have further discussions about how to handle those issues, we can have that conversation.  It does not change our position on the UCL claim or the impasse on that issue, which we again first raised almost three weeks ago.

Thanks,
Meredith

**Meredith Pohl**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W., Washington, D.C. 20004
**T** +1 202 389-3185  **M** +1 202 294 2931
**F** +1 202 389-5200
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**meredith.pohl@kirkland.com**

---

**From:** Nyarady, Catherine <cnyarady@paulweiss.com>
**Sent:** Wednesday, January 14, 2026 3:13 PM
**To:** Pohl, Meredith <meredith.pohl@kirkland.com>; Barnett, Mary <mary.barnett@kirkland.com>; Braly, Jacob <jbraly@paulweiss.com>; qualcommvarm@dirllp.com; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com

**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Meredith,

Your email is confusing given that the inquiry for bifurcation is very fact specific. Because of that, we have tried to engage with you at that level, but your email does not address a number of our questions.

In addition, you state that Arm's position is that any equitable claims or defenses should be addressed at a bench trial, but you do not explain what that means in terms of the presentation of evidence. And you declined to respond to my inquiry as to what Arm believes fits in this category. Please let us know the full scope of what Arm believes is an equitable claim or defense to be tried to the judge and what process Arm is proposing with respect to a bench trial. Finally, it is unclear whether Arm is moving only on the UCL claim or more broadly – and, as we stated on the meet and confer and in our email, we do not think that these issues should be addressed piecemeal.

Regards,
Catherine

**Catherine Nyarady** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3532 (Direct Phone) | +1 212 492 0532 (Direct Fax)
cnyarady@paulweiss.com | www.paulweiss.com

---

**From:** Pohl, Meredith <meredith.pohl@kirkland.com>
**Sent:** Wednesday, January 14, 2026 9:36 AM
**To:** Nyarady, Catherine <cnyarady@paulweiss.com>; Barnett, Mary <mary.barnett@kirkland.com>; Braly, Jacob <jbraly@paulweiss.com>; qualcommvarm@dirllp.com; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Catherine,

We disagree. *First*, those cases make clear that the nature of the relief sought is purely equitable, and federal courts broadly agree that equitable issues are appropriate for disposition by the court, not a jury. As you know and we discussed on the call, Judge Noreika agreed with that position in the first trial and tried Qualcomm's equitable defenses to the court. 1:22-cv-001146-MN, Dkt. 547, ¶ 5. We see no reason to proceed differently in this case.

**Second**, on your question about overlapping evidence, please do not mischaracterize our conversation. As I said several times on the call, Posner was not the "only" evidence I pointed to, nor was it even the only evidence discussed on our call. I referenced Posner as one clear, obvious example of an expert witness that I do not believe has any relevance whatsoever to Qualcomm's other claims.  I also mentioned evidence of market dominance and position, and your input foreclosure theory in particular, as I have no reason to believe any evidence related to those points would be relevant to any of Qualcomm's other claims.  Notably, what I actually said was that you're the plaintiff and I can't tell you how you plan to present your case or what evidence you intend to marshal because I can't read your mind.  Nevertheless, we continue to believe that none of the following evidence is relevant to any of Qualcomm's other, non-UCL claims: Arm's supposed market "dominance" or "control;" questions surrounding other ISA alternatives like x86 or RISC-V and their viability in particular market segments; whether Arm is supposedly abandoning previous commitments to widely license its technology; input foreclosure market theories and supporting evidence related to upstream and downstream markets, including evidence surrounding the evolution of the data center market and its future composition in particular. As another example, the difference between the rates and fees Qualcomm paid ████████████████████████ ████████████████████, if it is relevant at all, would only be relevant to the UCL claim.  But regardless, issues of whether there is overlapping evidence and how much is largely irrelevant to whether Qualcomm has a jury trial right for its UCL claim.

**Third,** what I asked for on the meet and confer was time to discuss your question with our team and client. Having now done so, I can confirm our position is that, consistent with the first trial, equitable claims (including defenses) should be tried to the court.  If Qualcomm takes the position that certain equitable claims should be tried to the jury, we reserve the right to revisit that position.

Regardless, we appear to be at an impasse on whether Qualcomm's UCL claim should be tried by a jury.  Please let us know by 5ET today if that is incorrect and Qualcomm agrees the UCL claim should be tried to the bench.

Thanks,

Meredith

**Meredith Pohl**

- - - - - - - - - - - - - - - - - - - - - - - - - -

**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W., Washington, D.C. 20004
**T** +1 202 389-3185   **M** +1 202 294 2931
**F** +1 202 389-5200

- - - - - - - - - - - - - - - - - - - - - - - - - -

**meredith.pohl@kirkland.com**

---

**From:** Nyarady, Catherine <cnyarady@paulweiss.com>
**Sent:** Friday, January 9, 2026 3:12 PM
**To:** Barnett, Mary <mary.barnett@kirkland.com>; Braly, Jacob <jbraly@paulweiss.com>; Pohl, Meredith <meredith.pohl@kirkland.com>; qualcommvarm@dirllp.com; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; jying@morrisnichols.com; Murray, Travis

<tmurray@morrisnichols.com>
**Cc:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Counsel,

The cases you cite do not resolve the issue.  As you know, we are in federal court, where jury trial rights are governed by federal law and procedure—not state law.  Federal courts retain discretion to use juries, even for claims with exclusively equitable remedies, under Rule 39(c).  *Tull* addresses the Seventh Amendment generally, *Key* merely states that UCL remedies are equitable in nature, and *Nationwide* speaks only to jury trial rights in California state court.

As a result of the controlling federal procedure, on Wednesday's meet and confer we asked you questions focusing on the overlap between the UCL claim and the other pending jury claims.  We specifically asked what evidence you believe is unique to the UCL claim to support your position that the UCL claim should not be tried to the jury.  On the call, the only evidence you were able to identify was that of expert Posner.  We explained why we believed his testimony is relevant to claims beyond the UCL.  We asked that, following the meet and confer, you provide us with any additional thoughts on this topic, in addition to sending the cases that you thought were dispositive of the issue, but we have not heard from you on this.  If you have anything else in mind, please let us know so that we may consider it in advance of your motion.

On the meet and confer, we also asked you to confirm that it is Arm's position that the UCL claim is the only Qualcomm claim, in whole or in part, that should be in any bench trial given that you only requested a meet and confer on the UCL claim.  You stated that you thought there were issues identified in Arm's summary judgment motions that would not go to the jury, but that you were not prepared to discuss non-UCL claims.  It was (and is) unclear what you had in mind, and we asked that you identify with specificity anything else relating to Qualcomm's claims that Arm believes would be part of any bench trial – especially because we think the Court should only have to deal with this issue once.  Finally, we asked you to confirm that the parties agree that Arm's unclean hands defense will be a bench trial, and not before the jury.  We have not heard from you on these additional items.  Please provide Arm's position.

Regards,
Catherine

**Catherine Nyarady** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3532 (Direct Phone) | +1 212 492 0532 (Direct Fax)
cnyarady@paulweiss.com | www.paulweiss.com

**From:** Barnett, Mary <mary.barnett@kirkland.com>
**Sent:** Thursday, January 8, 2026 1:04 PM
**To:** Braly, Jacob <jbraly@paulweiss.com>; Pohl, Meredith <meredith.pohl@kirkland.com>; Nyarady, Catherine <cnyarady@paulweiss.com>; qualcommvarm@dirllp.com; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Counsel:

On yesterday's meet-and-confer you asked us to identify legal support for the idea that there is no jury trial right for UCL claims.  We encourage you to look at *Nationwide Biweekly Admin., Inc. v. Super Ct. of Alameda Cnty.*, 9 Cal. 5th 279 (2020), *Tull v. United States*, 481 U.S. 412 (1987), and *Key v. Qualcomm Inc.*, 129 F.4th 1129 (9th Cir. 2025).  Please let us know Qualcomm's position by noon ET on Monday.

Regards,
Mary

**Mary Barnett**
------------------------------------
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W. Washington DC 20004
**T** +1 202 389 3292  **M** +1 202 306 4226
**F** +1 202 389 5200
------------------------------------
mary.barnett@kirkland.com

**From:** Braly, Jacob <jbraly@paulweiss.com>
**Sent:** Tuesday, January 6, 2026 9:56 AM
**To:** Pohl, Meredith <meredith.pohl@kirkland.com>; Nyarady, Catherine <cnyarady@paulweiss.com>; qualcommvarm@dirllp.com; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Counsel,

We would like to discuss some additional logistical issues concerning the Pre-Trial Order at the end of Wednesday's meet and confer.  One issue is the briefing schedule for motions in limine.  We propose the below briefing exchange schedule for motions in limine.

February 2, 2026 – Opening Briefs
<u>February 16, 2026</u> – Opposition Briefs
<u>February 23, 2026 (12PM ET</u>) – Reply Briefs

Regards,
**Jake Braly** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3726 (Direct Phone) | +1 212 492 0726 (Direct Fax)
jbraly@paulweiss.com | www.paulweiss.com

**From:** Pohl, Meredith <meredith.pohl@kirkland.com>
**Sent:** Monday, December 29, 2025 9:19 AM
**To:** Nyarady, Catherine <cnyarady@paulweiss.com>; qualcommvarm@dirllp.com; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; jving@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Thanks, Catherine. Given the size of Qualcomm's outside counsel team we're a bit surprised that no one is available any time this week, but we'll accept January 7th at 3pm ET. We will follow up with a calendar invitation.

Thanks,

**Meredith Pohl**
––––––––––––––––––––––––
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W., Washington, D.C. 20004
**T** +1 202 389-3185  **M** +1 202 294 2931
**F** +1 202 389-5200
––––––––––––––––––––––––
**meredith.pohl@kirkland.com**

**From:** Nyarady, Catherine <cnyarady@paulweiss.com>
**Sent:** Sunday, December 28, 2025 11:15 PM
**To:** Pohl, Meredith <meredith.pohl@kirkland.com>; qualcommvarm@dirllp.com; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; jving@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>; Yenerall, Ben <byenerall@morrisnichols.com>
**Cc:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Meredith,
We have a number of people out this week for the holidays.  We are free Wednesday January 7 between 3-5 ET or Friday January 9 between 10-2 ET.  Please let us know if any

of those times work for you.

Regards,

Catherine

**Catherine Nyarady** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3532 (Direct Phone) | +1 212 492 0532 (Direct Fax)
cnyarady@paulweiss.com | www.paulweiss.com

---

**From:** Pohl, Meredith <meredith.pohl@kirkland.com>
**Sent:** Friday, December 26, 2025 11:00 AM
**To:** qualcommvarm@dirllp.com; GRP-QCvARM <GRP-QCvARM@paulweiss.com>;
jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>; Yenerall, Ben
<byenerall@morrisnichols.com>
**Cc:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** Qualcomm v. Arm - Meet and Confer

Counsel,

Pursuant to D. Del. LR 7.1.1, please provide your availability next week to meet and confer on
Qualcomm's demand for a jury trial on its UCL claim.  It appears the parties agree that UCL claims
are strictly equitable as a matter of California law, meaning they are reserved to the exclusive
jurisdiction of the Court.  Accordingly, Arm believes Qualcomm is not entitled to try its UCL claim to
the jury, but rather that that count should be tried in a later bench trial following the jury's verdict,
at which time the parties may present the relevant expert and other evidence. Arm also believes
that will help streamline issues for trial, given the finite amount of trial time allotted.  Please let us
know if Qualcomm disagrees. If the parties cannot resolve this issue, Arm reserves the right to seek
relief from the Court.

Thanks,
Meredith

**Meredith Pohl**
--------------------------------------
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W., Washington, D.C. 20004
**T** +1 202 389-3185  **M** +1 202 294 2931
**F** +1 202 389-5200
--------------------------------------
meredith.pohl@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return

email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# Exhibit 5

William A. Isaacson (wisaacson@bsfllp.com)
(Admitted *Pro Hac Vice*)
Karen L. Dunn (kdunn@bsfllp.com)
(Admitted *Pro Hac Vice*)
Martha L. Goodman (mgoodman@bsfllp.com)
(Admitted *Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone:  (202) 237-2727
Facsimile:  (202) 237-6131

John F. Cove, Jr. #212213
(jcove@bsfllp.com)
Meredith R. Dearborn #268312
(mdearborn@bsfllp.com)
Maxwell V. Pritt #253155
(mpritt@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone:  (510) 874-1000
Facsimile:  (510) 874-1460

David C. Kiernan #215335
(dkiernan@jonesday.com)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:  (415) 626-3939
Facsimile:  (415) 875-5700

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION | Lead Case No.  C 05-00037 YGR [CLASS ACTION] |
|---|---|
| _____ | **[PROPOSED]** **JUDGMENT** |
| This Document Relates To: ALL ACTIONS | Trial:     December 2, 2014 Judge:   Honorable Yvonne Gonzalez Rogers |

1
2
3    Trial on all remaining counts of the Amended Consolidated Complaint (Dkt. 322) (i.e.,
4  Counts I, II and IV) commenced in this matter on November 19, 2014, with jury selection, and on
5  December 2, 2014, with opening statements and evidence.  The jury entered its verdict in
6  Defendant's favor on Counts I and II of the Amended Consolidated Complaint on December 16,
7  2014, and the verdict form was duly recorded (Dkt. 1008).
8    Based upon the jury's verdict, Counts I and II of the Amended Consolidated Complaint are
9  DISMISSED with prejudice.  The Court also finds, pursuant to the evidence presented at trial, that
10  Plaintiff's claim for a violation of the California Unfair Competition Law similarly fails, and thus
11  Count IV of the Amended Consolidated Complaint is DISMISSED with prejudice.
12    JUDGMENT is hereby ENTERED in favor of Apple Inc. on all counts in the Amended
13  Consolidated Complaint (Dkt. 322).
14    Plaintiff is to receive nothing from Defendant Apple Inc., and Defendant Apple Inc. is to
15  recover costs from Plaintiff pursuant only to Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920.
16    IT IS SO ORDERED.
17
18  Dated:   January 5, 2015
          _____
          Hon. Yvonne Gonzalez Rogers
19        U.S. DISTRICT COURT JUDGE
20
21
22
23
24
25
26
27
28

1

# Exhibit 6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ORACLE AMERICA, INC., et al.,

        Plaintiffs,

    v.

HEWLETT PACKARD ENTERPRISE
COMPANY,

        Defendant.

Case No. 16-cv-01393-JST

**SCHEDULING ORDER**

The Court hereby sets the following case deadlines:

| Event | Deadline |
|---|---|
| Oracle's Proposed Findings of Fact and Conclusions of Law Regarding Oracle's UCL Claim (20 pages) | July 29, 2022 |
| Oracle's Motion for a Permanent Injunction Under the UCL and the Copyright Act (20 pages) | July 29, 2022 |
| HPE's Motion Under Rules 50 and 59 (25 pages) | July 29, 2022 |
| HPE's Opposition to Oracle's Proposed Findings of Fact and Conclusions of Law Regarding Oracle's UCL Claim (20 pages) | September 8, 2022 |
| HPE's Opposition to Oracle's Motion for a Permanent Injunction Under the UCL and the Copyright Act (20 pages) | September 8, 2022 |
| Oracle's Opposition to HPE's Motion Under Rules 50 and 59 (25 pages) | September 8, 2022 |
| Oracle's Motion for Fees and Costs (15 pages) | September 19, 2022 |
| Oracle's Motion for Prejudgment Interest (10 pages) | September 19, 2022 |

| Event | Deadline |
|---|---|
| Oracle's Bill of Costs | September 19, 2022 |
| Oracle's Reply in Support of Oracle's Proposed Findings of Fact and Conclusions of Law Regarding Oracle's UCL Claim (15 pages) | October 7, 2022 |
| Oracle's Reply in Support of Oracle's Motion for a Permanent Injunction Under the UCL and the Copyright Act (15 pages) | October 7, 2022 |
| HPE's Reply in Support of HPE's Motion Under Rules 50 and 59 (15 pages) | October 7, 2022 |
| HPE's Opposition to Oracle's Motion for Fees and Costs (15 pages) | October 19, 2022 |
| HPE's Opposition to Oracle's Motion for Prejudgment Interest (10 pages) | October 19, 2022 |
| Hearing on Oracle's UCL Claim, Oracle's Motion for a Permanent Injunction, and HPE's Motion Under Rules 50 and 59 | October 27, 2022 at 2:00 p.m. |
| Oracle's Reply in Support of Oracle's Motion for Fees and Costs (8 pages) | November 9, 2022 |
| Oracle's Reply in Support of Oracle's Motion for Prejudgment Interest (6 pages) | November 9, 2022 |
| Hearing on Oracle's Motion for Fees and Costs | December 1, 2022 at 2:00 p.m. |

**IT IS SO ORDERED.**

Dated: July 14, 2022



JON S. TIGAR
United States District Judge

# Exhibit 7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAI CORPORATION,                                        No. C-06-5349JCS

       Plaintiff,

   v.

INTEGRATED SCIENCE SOLUTIONS, INC., ET AL.,

       Defendants.
_____

INTEGRATED SCIENCE SOLUTIONS, INC., ET AL,

       Counterclaimants

   v.

PAI CORPORATION,

       Counterdefendant.
_____/

**FINAL JURY INSTRUCTIONS**

DATED: October 27, 2008

_____
JOSEPH C. SPERO
United States Magistrate Judge

1

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 69**

**PLAINTIFF'S CLAIM FOR VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONAL CODE §17200 – UNFAIR COMPETITION**

Plaintiff alleges that Defendants engaged in unfair competition. In order to prevail on this claim, Plaintiff must prove the following by the preponderance of the evidence:

1. The alleged practice is unlawful (i.e., is forbidden by law); or

2. The alleged practice is unfair (i.e., harm to victim outweighs any benefit); or

3. The alleged practice is fraudulent (i.e., is likely to deceive members of the public).

In the context of direct competition between competitors, "unfair competition" is defined as conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or same as a violation of the law, or otherwise significantly threatens or harms competition. The determination of whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.

Plaintiff claims that Defendants committed acts of unfair competition by engaging in one or more of the following practices:

1. fraud;

2. committed conflicts of interest;

3. misappropriation and disclosure of confidential and proprietary Plaintiff information to compete against Plaintiff;

4. solicitation of Plaintiff's employees in violation of the parties' written agreements;

5. tortious interference with Plaintiff's prospective economic advantage with NASA.

**JURY INSTRUCTION NO.  70**

**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

Plaintiff claims that Defendants intentionally interfered with an economic relationship between Plaintiff and NASA that probably would have resulted in an economic benefit to Plaintiff. To establish this claim, Plaintiff must prove by a preponderance of the evidence all of the following:

1.    Plaintiff and NASA were in an economic relationship that probably would have resulted in an economic benefit to Plaintiff;

2.    Defendants knew of the relationship;

3.    Defendants engaged in wrongful conduct;

4.    The relationship was disrupted;

5.    Plaintiff was harmed; and

6.    Defendants' wrongful conduct was a substantial factor in causing Plaintiff's harm.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 71**

**NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

Plaintiff claims that Defendants negligently interfered with a relationship between it and NASA that probably would have resulted in an economic benefit to Plaintiff. To establish this claim, Plaintiff must prove by a preponderance of the evidence all of the following:

1.    Plaintiff and NASA were in an economic relationship that probably would have resulted in a future economic benefit to Plaintiff;

2.    Defendants knew of this relationship;

3.    Defendants knew or should have known that this relationship would be disrupted if they failed to act with reasonable care;

4.    Defendants failed to act with reasonable care;

5.    Defendants engaged in wrongful conduct;

6.    The relationship was disrupted;

7.    That Plaintiff was harmed; and

8.    That Defendants' wrongful conduct was a substantial factor in causing Plaintiff's harm.

**JURY INSTRUCTION NO. 73**

**WRONGFUL CONDUCT – DEFINED**

"Wrongful conduct" is conduct that is wrongful separate and apart from the fact that the conduct interfered with or disrupted the economic relationship between the Plaintiff and NASA.

An act is independently wrongful if it unlawful or otherwise proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.

Here, the wrongful conduct alleged is breach of contract, breach of fiduciary duty, misappropriation of trade secrets, fraud and unfair competition. The legal standards for these claims are set forth elsewhere in the jury instructions.

United States District Court
For the Northern District of California

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 3, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 3, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                           *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                       *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
*Attorneys for Defendant*

Sydney D. Gaskins, Esquire                        *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                         *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                            *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX 78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                          *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
Kasdin M. Mitchell, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                             *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                       *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*


                              */s/ Jennifer Ying*
                              _____
                              Jennifer Ying (#5550)

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 11, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                              *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Sydney D. Gaskins, Esquire                              *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Alexandra Corrinne Hottenrott, Esquire              *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                               *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Jay Emerick, Esquire
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Peter Evangelatos, Esquire
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

*/s/ Travis Murray*

Travis Murray (#6882)