# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,

        Plaintiffs,

v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,

        Defendant.

REDACTED - PUBLIC VERSION
Filed: February 17, 2026

C.A. No. 24-490-MN
(CONSOLIDATED)



## DEFENDANT ARM HOLDINGS PLC'S REPLY IN SUPPORT OF ITS MOTION TO BIFURCATE AND TO STRIKE IN PART QUALCOMM'S JURY DEMAND

Dated: February 10, 2026

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Kasdin Mitchell, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
kasdin.mitchell@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza Chicago, IL
60654 (312) 862-2000
jay.emerick@kirkland.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202 (303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

    I.     THE UCL IS NOT AN ELEMENT OF THE TORTIOUS
          INTERFERENCE CLAIMS REQUIRING THE JURY'S RESOLUTION. ......... 2

    II.    QUALCOMM'S ARGUMENTS CONFIRM IT WANTS A COMBINED
          TRIAL TO UNFAIRLY PAINT ARM AS AN ANTICOMPETITIVE
          MONOPOLIST. .................................................................................................... 5

    III.   BIFURCATION WOULD CONSERVE JUDICIAL RESOURCES AND
          AVOID JURY CONFUSION AND PREJUDICE. ............................................... 8

CONCLUSION....................................................................................................................... 10

*****All emphasis added unless otherwise indicated*****

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ...................................................................................................10

*Cohen v. Ellison First Asia, LLC*,
2020 WL 3643484 (C.D. Cal. Mar. 27, 2020).................................................................6, 9

*Crown Imports, LLC v. Superior Ct.*,
223 Cal. App. 4th 1395 (2014) ...........................................................................................3

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
479 F.3d 1099 (9th Cir. 2007) ............................................................................................4

*Curtis v. Loether*,
415 U.S. 189 (1974)........................................................................................................7, 8

*Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.*,
71 Cal. App. 5th 528 (2021) ...................................................................................1, 3, 4, 6

*Guz v. Bechtel Nat'l, Inc.*,
24 Cal. 4th 317 (2000) ........................................................................................................6

*Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*,
2017 WL 11558096 (D. Del. Dec. 11, 2017)......................................................................5

*Ixchel Pharma, LLC v. Biogen, Inc.*,
9 Cal. 5th 1130 (2020) ........................................................................................................3

*Key v. Qualcomm Inc.*,
129 F.4th 1129 (9th Cir. 2025) ...........................................................................................8

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ......................................................................................................3

*Miller v. Sun Capital Partners, Inc.*,
2016 WL 4941989 (D. Del. Sep. 15, 2016) ........................................................................8

*NICOR, Inc. v. SourceBlue, LLC*,
2023 WL 6866329 (C.D. Cal. Aug. 30, 2023).....................................................................3

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*,
11 Cal. App. 4th 1026 (1992) .............................................................................................6

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*,
    2 Cal. 5th 505 (2017) ................................................................................................4

*SEC v. Jensen*,
    835 F.3d 1100 (9th Cir. 2016) ................................................................................8

**Rules**

Fed. R. Civ. P. 42(b) ................................................................................................9

**INTRODUCTION**

The parties agree on one thing: Qualcomm has no jury trial right on its UCL claim and "the Court will render the ultimate verdict on [that] claim." D.I. 622 ("Opp.") at 10. There is thus no reason to burden the jury with resolving the UCL issues in this eight-count case where the issues the jurors must resolve are already complex. Qualcomm's arguments for nonetheless presenting its UCL evidence to the jury misinterpret California law and confirm Qualcomm wants to use that evidence to unfairly prejudice Arm on other issues.

Start with Qualcomm's assertion that the jury must decide whether Arm violated the UCL to resolve the "independently wrongful conduct" element of Qualcomm's tortious interference claims. California law says otherwise. For that element, the jury must decide only whether the challenged conduct interfered with Qualcomm's prospective customer relationships. Whether "that conduct is independently wrongful" because it violated the UCL "***is a legal question for the trial court***"—not the jury. *Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.*, 71 Cal. App. 5th 528, 538 (2021). Even if that were not the case, the tortious interference theory Qualcomm has pursued is far narrower than its UCL claim. Qualcomm has identified three types of conduct that were allegedly wrongful: (1) statements made in an October 2022 Samsung meeting; (2) letters Arm sent to mutual customers about the litigation; and (3) Arm sharing information with a Bloomberg reporter. Resolving whether those acts were independently wrongful does not require resolving Qualcomm's more capacious UCL claim, which paints almost every major business decision Arm made in the last four years as anti-competitive.

Qualcomm's other arguments underscore that prejudicing Arm is the point. Qualcomm candidly admits it plans to support its contract and tort claims by portraying Arm as a monopolist that wants to cut Qualcomm out of the market. That is not true, but more importantly, those allegations have no bearing on the elements of Qualcomm's contract or tort claims. In fact,

Qualcomm's interrogatory responses describing the "complete factual and legal bas[es]" for those other claims do not mention any of its UCL-related economic theories, nor do they reference Qualcomm's economics expert at all because such evidence is irrelevant. Qualcomm does not need this evidence to prove its claims; it wants to throw around terms like "market dominance," "anticompetitive," and "unfair competition" without explaining what those terms mean and untethered from a legal claim where those concepts matter.

Deciding the UCL claim separately will avoid this prejudice, enhance juror comprehension of the issues that actually matter, and conserve judicial resources. Qualcomm essentially ignores Arm's arguments related to prejudice and jury confusion, and its claim that bifurcation will waste judicial resources is meritless. As Arm pointed out, depending on the jury's findings there may be no need for a UCL proceeding at all. It is hard to say that avoiding a proceeding altogether by waiting for the jury's resolution of certain factual issues wastes judicial resources. A single combined trial is the approach most likely to waste judicial resources on crafting complicated and heavily disputed UCL jury instructions without the aid of any model instructions and on frequent disputes over limiting instructions. The Court should instead grant Arm's motion to bifurcate.

## **ARGUMENT**

### I.     **THE UCL IS NOT AN ELEMENT OF THE TORTIOUS INTERFERENCE CLAIMS REQUIRING THE JURY'S RESOLUTION.**

Qualcomm does not dispute that it has no Seventh Amendment right to a jury trial on its UCL claim, and it does not request an advisory jury. Qualcomm instead argues for the first time that "for the jury to decide the tortious interference claims, it must also hear all evidence relevant to the UCL claim." Opp. at 1. In Qualcomm's view, "the UCL claim is an element" of tortious interference, namely the "independent 'wrongful act'" element. Opp. at 6, 1. That argument is legally wrong, and in any event, undisclosed in Qualcomm's interrogatory responses.

2

As a threshold matter, Qualcomm's description of the relationship between tortious interference and the UCL is wrong. It is true that California's tortious interference claim requires plaintiffs prove, among other things, that (1) "the defendant engaged in conduct that interfered with [an economic] relationship," *Drink Tank*, 71 Cal. App. 5th at 537; and (2) the conduct at issue is "independently wrongful" or "wrongful by some legal measure" other than the fact of the interference itself. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 n.11 (2003). Qualcomm insists the jury "need[s] . . . to hear all of the UCL evidence, including expert testimony, to render a decision as to Arm's 'wrongful conduct[.]'" Opp. at 9. But that misunderstands how "adjudicating" a tortious interference claim "is divided between the jury and the trial court." *Drink Tank*, 71 Cal. App. 5th at 538. "Whether the defendant engaged in interfering conduct … [is] … a factual question for the jury." *Id.* But "**whether that conduct is independently wrongful** … **is a legal question for the trial court.**" *Id.*; *see also NICOR, Inc. v. SourceBlue, LLC*, 2023 WL 6866329, at *16 (C.D. Cal. Aug. 30, 2023); *Crown Imports, LLC v. Superior Ct.*, 223 Cal. App. 4th 1395, 1409 (2014). Indeed, the Directions for Use accompanying the Judicial Council of California Civil Jury Instructions ("CACI") jury instructions Qualcomm cites in its brief emphasize that "[w]hether the conduct alleged qualifies as wrongful ... is resolved by the court as a matter of law." *See* CACI Nos. 2202, 2204 (Ex. 6); *see also Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1148 (2020). The jury has no role to play.

This divided responsibility only reinforces the need for a separate equitable proceeding on the UCL. None of the evidence of supposed wrongfulness Qualcomm insists it must present to the jury is even relevant to the jury's task. To present its tortious inference claims, Qualcomm need only present evidence, and the jury need only decide whether, for example, Arm showed the Breach Letter to Bloomberg and whether that conduct disrupted Qualcomm's business dealings

with ▮▮▮ That kind of determination is one within the jury's purview as fact finder. And making that determination does not require exposing the jury to Qualcomm's evidence concerning market dominance, input foreclosure, Arm's supposed abandonment of neutrality principles, or the rest of Qualcomm's UCL evidence unrelated to the specific instances of alleged interference with Qualcomm's business partnerships. The ultimate "wrongfulness" of that conduct—and whether it is an unfair business practice proscribed by the UCL—is a question only the Court can answer.

Qualcomm relies on *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099 (9th Cir. 2007). But neither that case, nor any other case Qualcomm cites, stands for the proposition that the jury must decide whether a supposedly unlawful or unfair business act or practice under the UCL is independently wrongful conduct for purposes of tortious interference. *CRST* sets aside an order granting a motion to dismiss "without providing reasons" from the bench. *Id.* at 1104. Along the way, the Ninth Circuit held "the pleading of a UCL violation *could* supply the requisite independently wrongful act," but it had no need at the pleading stage to address whether the judge or the jury should decide whether a UCL violation occurred. *Id.* at 1110.

*CRST* and the other cases Qualcomm cites likewise do not embrace Qualcomm's theory that merely satisfying any UCL claim in litigation—even one factually unrelated to the tortious interference claims—can serve as the required "wrongful act." There needs to be a causal connection between the supposedly wrongful conduct and the alleged interference. *See Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 513 (2017); *Drink Tank*, 71 Cal. App. 5th at 537-38. Here, Qualcomm has identified three types of conduct that allegedly interfered with its customer relationships: (1) an October 2022 meeting with executives from Samsung; (2) that Arm sent letters to customers about its lawsuit against Qualcomm; and (3) Arm's sending the October

4

2024 breach notice to Qualcomm and sharing it with Bloomberg. Ex. 1 at 28-34.[1] Even a quick skim of Professor Posner's report shows Qualcomm's UCL theory involves significantly more alleged conduct, such as Arm allegedly withholding technology from Qualcomm, unjustifiably raising licensing fees and royalties, excluding Qualcomm employees from meetings, and entering downstream markets to compete with Qualcomm and other chip designers. *See e.g.*, Ex. 4 ¶¶ 31, 65, 70. Even if the jury had a role to play in deciding whether Arm engaged in wrongful conduct, Qualcomm could not put that evidence in front of the jury as part of its tortious interference claims.

Treating the UCL as an element of Qualcomm's tortious interference claims is also inconsistent with how Qualcomm litigated this case. Until now, Qualcomm has never articulated that it intends to litigate its UCL claim as an element of those claims, nor how the testimony and opinions of Professor Posner, Qualcomm's UCL expert, relate to its non-UCL claims. For example, Arm served Interrogatory No. 3, seeking "the complete legal and factual basis for Your contention that any of Arm's actions have impaired, interfered, or harmed any of Qualcomm's relationships with its existing or prospective customers." Ex. 1 at 26. In response—including three supplements over the course of discovery—Qualcomm never once mentioned the UCL as a basis (let alone *the* basis) on which it intends to prove these claims. Instead, Qualcomm identified the three specific acts discussed above. Qualcomm's attempt to link those claims not only misunderstands California law but also comes too late in the litigation. *See Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, 2017 WL 11558096, at *9-10 (D. Del. Dec. 11, 2017).

## II.    QUALCOMM'S ARGUMENTS CONFIRM IT WANTS A COMBINED TRIAL TO UNFAIRLY PAINT ARM AS AN ANTICOMPETITIVE MONOPOLIST.

Qualcomm's other arguments make clear that Qualcomm wants a combined trial so that its

---

[1] Exhibits 1-5 were filed as exhibits to D.I. 597.

UCL allegations will unfairly sway the jury on other issues. In support of its tort and contract claims, Qualcomm apparently intends to present to the jury economic evidence about Arm's supposed market power and argue that Arm has the ability to engage in input foreclosure, that Arm "abandoned" previous promises of neutrality, and that Arm engaged in an alleged "pattern of unfair conduct" to undermine competition. Opp. 6-7. None of that evidence has any connection to the tortious interference or contract issues that the jury must decide. Qualcomm tries to link its UCL evidence to the "intent" element of its tortious interference claim, but the only intent that matters for tortious interference is whether Arm "intended to interfere with [a] relationship or 'knew that the interference was certain or substantially certain to occur as a result of its' conduct," *Drink Tank*, 71 Cal. App. 5th at 537. Whether Arm acted based on illegitimate motives or as part of a broader anti-competitive endeavor goes to the separate "independently wrongful conduct" element—an element that again the Court rather than the jury must decide.

Qualcomm's implied covenant claim similarly does not turn on whether Arm is abusing its market power or engaged in an alleged pattern of unfair acts. The implied covenant is a contract claim, and the only relevant question is whether Arm "unfairly frustrat[ed]" Qualcomm's "right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-50 (2000) (emphasis omitted). That narrow question does not give Qualcomm license to argue Arm has a general "obligation to deal fairly" with Qualcomm, that Arm's alleged contractual breaches are part of a larger anti-competitive enterprise, or that Arm's conduct violates "some general public policy interest" against supposedly unfair competition. *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031-32 (1992); *Cohen v. Ellison First Asia, LLC*, 2020 WL 3643484, at *8 (C.D. Cal. Mar. 27, 2020). The implied covenant is not the Sherman Act or the UCL by another name.

6

Importing all Qualcomm's UCL evidence into these other claims is inconsistent with how Qualcomm has litigated this case. Qualcomm does not reference Posner's report or deposition **at all** in any of its non-UCL interrogatory responses. For example, Interrogatory Nos. 2, 6, and 14 seek Qualcomm's "complete factual and legal bas[es]" related to the alleged breach of the ALA and TLA. Ex. 1 at 20, 44; Ex. 7 at 7. Qualcomm's responses include no mention of Posner, no incorporation of UCL-related ROGs like 5, 8, 18, 19, or 24, and not even a reference to the UCL-count complaint paragraphs. The same is true of Interrogatory No. 4 (Arm's knowledge of Qualcomm's existing or prospective business relationships), Interrogatory No. 16 (bases of breach of implied covenant of good faith, and Interrogatory Nos. 9 and 14 (Qualcomm's damages for alleged harm caused by contract breach). Ex. 1 at 34-37, 65-73; Ex. 7 at 7-19, 26-32.[2] It is too late to add new theories now.

Qualcomm suggests that Arm somehow conceded at summary judgment that there is no independent UCL evidence. That is not true. Arm's position has been and remains that any alleged conduct underlying both Qualcomm's legal claims and equitable UCL claim can be adequately redressed by those other legal remedies, which precludes equitable relief under the UCL. D.I. 233 at 9-10; D.I. 438 at 24. Qualcomm contends, for example, that Arm's alleged contractual breaches are also unfair acts. But the reasons that conduct breached a contract or violated the UCL are different and turn on different evidence. Resolving a breach of contract claim does not require evaluating Arm's market power, complex economic antitrust theories, or whether Arm's decision to start designing chips is pro- or anti-competitive.

---

[2] Arm's challenged conduct in the last four years has no bearing on the parties' contract negotiations in 2013. The only negotiation-related testimony Qualcomm identifies, in any event, relates to the contracts' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Opp. 7 & n.8. That testimony may bear on whether those provisions are enforceable, but that is another legal issue the Court must resolve. *See* D.I. 438 at 8.

7

None of Qualcomm's cases suggest bifurcation is inappropriate here. For example, *Curtis v. Loether*, 415 U.S. 189 (1974) involved a damages action to enforce "'legal rights' within the meaning of [the] Seventh Amendment," where "the statute sound[ed] basically in tort" and the relief sought, actual and punitive damages, was the "traditional form of relief offered in the courts of law." *Id*. at 195-96. The UCL is an indisputably equitable claim that affords only equitable relief. *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1141 (9th Cir. 2025). Nor has Arm ever argued Qualcomm's contract and tort claims, and the associated relief sought, are "incidental" to the UCL claim and should be stripped from a jury, making *Miller v. Sun Capital Partners, Inc.*, inapposite too. 2016 WL 4941989, at *3 (D. Del. Sep. 15, 2016). The reasoning in *SEC v. Jensen*, 835 F.3d 1100, 1111-12 (9th Cir. 2016) is similarly inapplicable because a significant universe of *non-overlapping* evidence between the legal and equitable claims exists. Finally, Qualcomm points to *Apple iPod iTunes Antitrust Litig.*, No. 4:05-cv-00037-YGR, D.I. 1026 (N.D. Cal. Jan. 5, 2015) (D.I. 623-05), yet Qualcomm elides that it was an antitrust "class action" alleging a host of Sherman Act violations heard and decided by the jury, and the basis of the UCL claim was the "unlawfulness" of violating the Sherman Act and other antitrust laws. *See* No. 4:05-cv-00037, D.I. 322 at 1 (Ex. 8). The claims Arm seeks to bifurcate here are not antitrust claims, where the evidence and the elements of the claims would significantly overlap with the UCL.

There is ultimately no mystery about why Qualcomm opposes bifurcation despite conceding the Court will decide the UCL claim. Qualcomm plans to introduce evidence of Arm's supposedly dominant market position and portray some alleged elaborate scheme that Arm is intent on eliminating competition to improperly influence the jury on the non-UCL claims. Only a bifurcated trial mitigates that prejudice to Arm.

**III.    BIFURCATION WOULD CONSERVE JUDICIAL RESOURCES AND AVOID JURY CONFUSION AND PREJUDICE.**

8

Equally misguided are Qualcomm's arguments that bifurcation is not convenient and will not avoid prejudice or economize resources. *See* Fed. R. Civ. P. 42(b).

***First,*** Qualcomm wrongly suggests that Arm is seeking to burden the Court further. Not so. Arm requested to "try the UCL count at a time convenient for the Court." D.I. 596 at 6. Arm only proposed setting time for after the jury verdict because it is possible that the jury's determinations obviate the need to hold a UCL proceeding at all. Even Qualcomm cannot dispute that eliminating an entire claim would no doubt conserve judicial resources. And as explained above, certain of the predicate conduct Qualcomm claims is also "unfair" under the UCL, like alleged breach of contract, will be decided by the jury. The jury could find Arm did not breach, which will affect the presentation of evidence under the UCL. For example, if the jury finds that Arm did comply with the requirements of the TLA in offering Qualcomm licenses to ███████, then Qualcomm need not present any evidence that Arm's related conduct was "unfair," including evidence related to price increases and Professor Posner's consideration of those increases. Ex. 4 ¶ 65. In any event, if the time most convenient for the Court is before the jury trial or evenings during the week of the jury trial, Arm will try the UCL claim at that time.

***Second,*** Qualcomm's view that a single trial "would be faster and avoid unnecessary duplicative efforts from the parties and the Court," Opp. at 10, ignores all of Arm's arguments related to prejudice and jury confusion. Qualcomm spends only two sentences on that point. There is little overlap between the jury and non-jury issues, and any evidence presented during the jury trial will not need to be offered again during the bench trial. But there is a significant risk of jury confusion if all the evidence is heard in a single case. It is undoubtedly confusing to the jury to present evidence of "unfairness practices" or economic theories of supposedly anticompetitive conduct that the jury will never have occasion to decide and that has nothing to do with the other

9

claims. For example, experts from both Arm and Qualcomm will testify at some length on economic principles like input foreclosure, which requires discussion of upstream and downstream markets, market power, and critical inputs. But the parties agree that the jury will never be asked to render a verdict on those issues. Opp. at 10. Why should the jury hear evidence on issues it will not decide? After hearing extended testimony on those issues, the jurors will inevitably think it must be relevant to the issues they will resolve even though it is not.

In addition to burdening the jury, a combined trial of the legal and equitable claims will burden the Court. Each time the parties admit UCL-related evidence, the Court will need to provide a limiting instruction so the jurors do not improperly consider that evidence for other claims. Crafting those instructions takes time and effort. And keeping track of those instructions—and compartmentalizing the evidence—will impose a significant burden on the jury. If the Court does ask for an advisory verdict on the UCL claim, the Court would also have to invent new jury instructions whole cloth because there are no California model jury instructions for the UCL, let alone those that embody the "unfairness" test for cases between sophisticated businesses. *Cel-Tech Commc's Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999).

Instead, Qualcomm tries to flip the argument to claim it will suffer prejudice if not allowed to present UCL evidence. But Qualcomm's ready admission that it agrees ***the jury will never decide the UCL claim*** undercuts that objection. Evidence of market power, input foreclosure, and Arm's supposedly monopolistic aims is irrelevant to the other claims. As Arm explained in its Motion, if the UCL claim is bifurcated, Qualcomm can still proceed on its other claims as a party that was not pursuing a UCL claim would: Seek to admit testimony or evidence on its legal claims that do not require any explanation of "unfairness" or irrelevant economic or antitrust theories.

## **CONCLUSION**

The Court should bifurcate trial and strike Qualcomm's jury demand for its UCL claim.

Dated: February 10, 2026

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Kasdin Mitchell, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
kasdin.mitchell@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 10, 2026, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com
John Poulos
NORTON ROSE FULBRIGHT US LLP

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2