IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,　　　　　)
　a Delaware corporation; and　　　　　)
QUALCOMM TECHNOLOGIES, INC.,　)
　a Delaware corporation,　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　C.A. No. 24-490 (MN)
　　　　　　　　　　Plaintiffs,　　　　)　　(CONSOLIDATED)
　　　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　████████████████
ARM HOLDINGS PLC., f/k/a ARM LTD.,　)
　a U.K. corporation,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　REDACTED - PUBLIC VERSION
　　　　　　　　　　Defendant.　　　　)

**APPENDIX TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S
JANUARY 22, 2026 ORDER (D.I. 604) DENYING PLAINTIFFS' MOTION TO
STRIKE THE EXPERT REPORTS OF ARM'S EXPERTS MICHAEL C.
BROGIOLI, PH.D. & STEVEN RICHARDS, CPA (VOL 3: A1240-A1654)**

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007
(202) 240-2900

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
　& GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

February 12, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

| Document | Page Range |
|---|---|
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki in Support of Their Motion to Strike the Expert Reports of Arm's Experts Michael C. Brogioli, Ph.D. & Steven Richards, CPA (Sept. 16, 2025) | A0001 – A0006 |
| Qualcomm Exhibit 1 – Rebuttal Expert Report of Michael C. Brogioli, Ph.D. (Sept. 5, 2025) | A0007 – A0236 |
| Qualcomm Exhibit 2 – Rebuttal Report of Steven Richards, CPA (Sept. 5, 2025) | A0237 – A0283 |
| Qualcomm Exhibit 3 – Expert Report of Eric A. Posner Excerpt (Aug. 8, 2025) | A0284 – A0295 |
| Qualcomm Exhibit 4 – Expert Report of Patrick F. Kennedy, Ph.D. Excerpt (Aug. 8, 2025) | A0296 – A0304 |
| Qualcomm Exhibit 5 – Meet & Confer Transcript Excerpt (Sept. 15, 2025) | A0305 – A0316 |
| Qualcomm Exhibit 6 – Scheduling Order [Non-Patent; Jury Trial] | A0317 – A0326 |
| Qualcomm Exhibit 7 – Teleconference Transcript (Aug. 29, 2025) | A0327 – A0329 |
| Qualcomm Exhibit 8 – D.I. 572, Verdict Form (Dec. 20, 2024) | A0330 – A0333 |
| Qualcomm Exhibit 9 – Special Master Hearing Transcript Excerpt (Aug. 22, 2025) | A0334 – A0336 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Defendant Arm Holdings PLC's Letter Brief to Special Master Rychlicki Opposing Plaintiffs' Motion to Strike the Expert Reports of Michael C. Brogioli, Ph.D. & Steven Richards, CPA (Sept. 23, 2025) | A0337 – A0343 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Declaration of Adam Janes in Support of Defendant Arm Holdings PLC's Letter Brief to Special Master Rychlicki Opposing Plaintiffs' Motion to Strike Expert Reports of Michael C. Brogioli, Ph.D. & Steven Richards, CPA (Sept. 23, 2025) | A0344 – A0348 |

| | |
|---|---|
| Arm Exhibit 1 – D.I. 44, Scheduling Order (Jan. 31, 2025) | A0349 – A0360 |
| Arm Exhibit 2 – Rebuttal Report of Steven Richards, CPA (Sept. 5, 2025) | A0361 – A0407 |
| Arm Exhibit 3 – Rebuttal Expert Report of Michael C. Brogioli, Ph.D. (Sept. 5, 2025) | A0408 – A0637 |
| Arm Exhibit 4 – Reply Expert Report of Susan Markel (Sept. 19, 2025) | A0638 – A0660 |
| Arm Exhibit 5 – Reply Expert Report of Samuel J. Winer (Sept. 19, 2025) | A0661 – A0685 |
| Arm Exhibit 6 – Meet & Confer Transcript (Sept. 15, 2025) | A0686 – A0716 |
| Arm Exhibit 7 – Expert Report of Eric A. Posner (Aug. 8, 2025) | A0717 – A0785 |
| Arm Exhibit 8 – Arm Holdings PLC's Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1-3) (Mar. 24, 2025) | A0786 – A0812 |
| Arm Exhibit 9 – Arm's Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11) (June 16, 2025) | A0813 – A0860 |
| Arm Exhibit 10 – Expert Report of Patrick F. Kennedy, Ph.D. (Aug. 8, 2025) | A0861 – A1076 |
| Arm Exhibit 11 – Rebuttal Expert Report of Professor Timothy S. Simcoe (Sept. 5, 2025) | A1077 – A1336 |
| Arm Exhibit 12 – Plaintiffs' Letter to Special Master Helena C. Rychlicki in Support of Their Motion to Strike the Expert Reports of Arm's Experts Michael C. Brogioli, Ph.D. & Steven Richards, CPA (Sept. 16, 2025) | A1337 – A1343 |
| Arm Exhibit 13 – Arm Holdings PLC's First Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1-3) (July 11, 2025) | A1344 – A1373 |
| Arm Exhibit 14 – Arm's First Supplemental Response to Qualcomm's Amended Interrogatory No. 3 (July 11, 2025) | A1374 – A1383 |
| Arm Exhibit 15 – Arm's First Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11) (July 11, 2025) | A1384 – A1453 |

| | |
|---|---|
| Arm Exhibit 16 – Arm's First Supplemental Response to Qualcomm's Third Set of Interrogatories (No. 12) (July 11, 2025) | A1454 – A1469 |
| Arm Exhibit 17 – Expert Reply Report of Eric A. Posner (Sept. 19, 2025) | A1470 – A1498 |
| Arm Exhibit 18 – Reply Expert Report of Patrick F. Kennedy, Ph.D. (Sept. 19, 2025) | A1499 – A1636 |
| Arm Exhibit 19 – Defendant Arm Holdings PLC's Response to Qualcomm's September 15, 2025 Letter to Special Master Rychlicki (Sept. 19, 2025) | A1637 – A1643 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Special Master Hearing Transcript Excerpt (Oct. 1, 2025) | A1644 – A1654 |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

**X.  APPENDICES**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

**APPENDIX A: PROFESSOR TIMOTHY S. SIMCOE'S CV**

# Timothy S. Simcoe

| | | |
|---|---|---|
| CONTACT | Boston University Questrom School of Business | (510) 685-2020 |
| | 595 Commonwealth Avenue | tsimcoe@bu.edu |
| | Boston, MA 02215 | http://people.bu.edu/tsimcoe |

**ACADEMIC EMPLOYMENT**

**Boston University, Questrom School of Business**
- David J. McGrath Jr. Professor in Strategy & Innovation, 2024-*present*.
- Professor of Strategy & Innovation, 2022-2024.
- Associate Professor of Strategy & Innovation, 2013-2022.
- Assistant Professor of Strategy & Innovation, 2009-2013.

**University of Toronto, Joseph L. Rotman School of Management**
- Assistant Professor of Strategic Management, 2004-2009.

**APPOINTMENTS**

**President's Council of Economic Advisers**
- Senior Economist, 2014-2015.

**National Bureau of Economic Research**
- Research Associate, Productivity Program, 2016-*present*.
- Faculty Research Fellow, Productivity Program, 2009-2016.

**BU Technology & Policy Research Initiative**
- Faculty Director, 2020-*present*.

**EDUCATION**

**University of California at Berkeley**
- Ph.D., Business Administration, 2004
- M.A., Economics, 2003

**Harvard University**
- A.B., Applied Math & Economics, 1996

**PUBLICATIONS**

**Refereed Articles**

Mezzanotti, F. and T. Simcoe. Innovation, Patenting and Appropriability: Survey Evidence from a Nationally Representative Sample of U.S. Firms, *Review of Economics and Statistics*, forthcoming.

R. A. Gibbs, T. Simcoe and D. Waguespack. Does Earnings Management Matter for Strategy Research *Strategic Management Journal*, forthcoming.

B. Ganglmair, E. Tarantino and T. Simcoe. Learning When to Quit: An Empirical Model of Experimentation in Standards Development. *AEJ: Microeconomics*, 17(3):164–190, August 2025.

C. Righi and T. Simcoe. Patenting Inventions or Inventing Patents? Continuation Practice at the USPTO. *RAND Journal of Economics*, 54(3):416–442, Fall 2023.

J. Baron, B. Ganglmair, N. Persico, T. Simcoe and E. Tarantino. Representation is Not Sufficient for Selecting Gender Diversity. *Research Policy*, 53(6):104994, July 2024.

R. Bekkers, C. Catalini, A. Martinelli, C. Righi and T. Simcoe. Disclosure Rules and Declared Essential Patents. *Research Policy*, 52(1):104618, January 2023.

E. Basker and T. Simcoe. Upstream, Downstream: Diffusion and Impact of the Universal Product Code. *Journal of Political Economy*, 129(4):1252–1286, April 2021.

A. King, B. Goldfarb and T. Simcoe. Learning from Testimony on Quantitative Research in Management. *Academy of Management Review*, 46(3):465–488, July 2021.

X. Li and T. Simcoe. Competing or Complementary Labels? Estimating Spillovers in Chinese Green Building Certification. *Strategic Management Journal*, 42(13): 2451–2476, December 2021.

A. Agrawal, C. Rosell and T. Simcoe. Tax Credits and Small Firm R&D Spending. *American Economic Journal: Economic Policy*, 12(1): 1–21. Lead Article, May 2020.

M. Rysman, T. Simcoe and Y. Wang. Differentiation Strategies in the Adoption of Environmental Standards: LEED from 2000 to 2014. *Management Science*, 66(9): 4173–4192, September 2020.

T. Simcoe and J. Watson. Forking, Fragmentation and Splintering. *Strategy Science*, 4(4):251–342, December 2019.

F. Mezzanotti and T. Simcoe. Patent Policy and American Innovation After eBay: An Empirical Examination. *Research Policy*, 48(5): 1271–1281, June 2019.

C. Righi and T. Simcoe. Patent Examiner Specialization. *Research Policy*, 48(1):137–148, February 2019.

M. Lemley and T. Simcoe. How Essential are Standard Essential Patents? *Cornell Law Review*, 104(3): 607–642, March 2019 .

M. Catillon, P. Gertler and T. Simcoe. Who Benefits Most in Disease Management Programs?: Improving Target Efficiency. *Health Economics*, 28(2): 189–203, February 2019.

L. Freedman, I. Cockburn and T. Simcoe. The Economics of Reproducibility in Preclinical Research. *PLoS Biology*, 13(6): e1002165, June 2015.

T. Simcoe and M. Toffel. Government Green Procurement Spillovers: Evidence from Municipal Building Policies in California. *Journal of Environmental Economics and Management*, 68(3):411–434. Lead article, November 2014.

E. Rawley and T. Simcoe. Information, Knowledge and Asset Ownership in Taxicab Fleets. *Organization Science*, 24(3): 831–845, May-June 2013.

J. Farrell and T. Simcoe. Choosing the Rules for Consensus Standardization. *The RAND Journal of Economics*, 43(2): 235–252, Summer 2012.

T. Simcoe. Standard Setting Committees: Consensus Governance for Shared Technology Platforms. *American Economic Review*, 102(1): 305–336, February 2012.

M. Rysman and T. Simcoe. A NAASTy Alternative to RAND Pricing Commitments. *Telecommunications Policy*, 35(11): 1010–1017, December 2011.

A. Galasso and T. Simcoe. CEO Overconfidence and Innovation. *Management Science*, 57(8): 1469–1484, August 2011.

T. Simcoe and D. Waguespack. Status, Quality and Attention: What's in a (Missing) Name? *Management Science*, 57(2): 274–290, February 2011.

A. Mehta, M. Rysman and T. Simcoe. Identifying the Age Profile of Patent Citations: New Estimates of Knowledge Diffusion. *Journal of Applied Econometrics*, 25 (7): 1073–1222, November/December 2010.

E. Rawley and T. Simcoe. Diversification, Vertical Contracting and Diseconomies of

Scope: Evidence from the Taxicab Industry. *Management Science*, 56(9): 1534–1550, September 2010.

T. Simcoe, S. J. Graham and M. Feldman. Competing on Standards? Entrepreneurship, Intellectual Property and Platform Technologies. *Journal of Economics and Management Strategy*, 18(3): 775–816, Fall 2009.

M. Rysman and T. Simcoe. Patents and the Performance of Voluntary Standard Setting Organizations. *Management Science*, 54(11): 1920–1934, November 2008.

D. Mowery and T. Simcoe. Is the Internet a US Invention? An Economic and Technological History of Computer Networking. *Research Policy*, 31(8-9): 1369–1387, 2002.

J. Macher, D. Mowery and T. Simcoe. eBusiness and the Semiconductor Industry Value Chain: Implications for Vertical Specialization and Integrated Semiconductor Manufacturers. *Industry and Innovation*, 9:155–181, 2002.

**Working Papers**

Mezzanotti, F. and T. Simcoe. Research and/or Development: Financial Frictions and Innovation Investment. R&R at *Journal of Finance*

N. Sahoo, T. Simcoe and X. Yang. Effects of Content Sourcing Strategy on Online News Subscription. R&R at *MIS Quarterly*.

D-S. Jeon, Y. Lefouili, Y. Li and T. Simcoe. Ecosystems and Complementary Platforms.

**Other Publications**

T. Simcoe. Standard Setting Organizations. Chapter in the *Elgar Encyclopedia on the Economics of Competition and Regulation*, forthcoming.

K. Blind, M. Kenney, A. Leiponen and T. Simcoe. Standards and Innovation: A Review and Introduction to the Special Issue. *Research Policy*, 52(8), October 2023.

J. Contreras, T. Simcoe et al. Preserving the Royalty-Free Standards Ecosystem. *European Intellectual Property Review*, 45(7): 371-375, June 2023.

E. Hovenkamp and T. Simcoe. Tying and Exclusion in FRAND Licensing: Evaluating Qualcomm. *The Antitrust Source*, February 2020.

A. Sesia, T. Simcoe and M. Toffel. Platform LEEDership at the U.S. Green Building Council. Harvard Business School Case 619-027, May 2018.

B. Goldfarb, A. King and T. Simcoe. Heritability of Trust and Distrust Remains Unknown. Letter to *Proceedings of the National Academy of Sciences*, January 2018.

S. Graham, P. Menell, C. Shapiro and T. Simcoe. Final Report of the Berkeley Center for Law & Technology Patent Damages Workshop. *Texas Intellectual Property Law Journal*, 25 (1): 115–142, 2017.

A. Shampine and T. Simcoe. Economics of Patents and Standardization: Network Effects, Hold-up, Hold-out, Stacking. The Cambridge Handbook of Technical Standardization Law, Vol. 1. Cambridge University Press, 2017.

T. Simcoe and C. Righi. Standards, Patents and Innovation. Handbook of Standards and Innovation. Edward Elgar, 2017.

T. Simcoe. How to Make and Keep a Patent Pledge. Pages 285–290 in *Patent Pledges: Global Perspectives on Patent Law's Private Ordering Frontier*. Edward Elgar, 2017.

T. Simcoe. Modularity and the Evolution of the Internet. Chapter 1 in *Economic Analysis of the Digital Economy*. University of Chicago Press, 2015.

A. Agrawal, S.J. Graham, M. Rysman and T. Simcoe. Industry Standards, Intellectual Property and Innovation: Introduction to the Special Issue. *International Journal of Industrial Organization*, 36:1-3 (September 2014).

T. Simcoe. Governing the Anti-commons: Institutional Design for Standard Setting Organizations. In *Innovation Policy and the Economy*, 14:99–128, 2014.

T. Simcoe. Private and Public Approaches to Patent Holdup in Industry Standard-Setting. *Antitrust Bulletin*, 57(1): 59–88, Spring 2012.

J. Farrell and T. Simcoe. Four Paths to Compatibility. pages 34–58 in the *Oxford Handbook of the Digital Economy*. Oxford University Press, 2012.

T. Simcoe. Delay and *de jure* Standardization: Exploring the Slowdown in Internet Standards Development. Pages 260–295 in *Standards and Public Policy*. Cambridge University Press, 2007.

T. Simcoe. Explaining the Increase in Intellectual Property Disclosure. Pages 260–295 in *Standards Edge: The Golden Mean*. Bolin Group, 2007.

T. Simcoe. Open standards and Intellectual Property Rights. Pages 161–183 in *Open Innovation: Researching a New Paradigm*. Oxford University Press, 2006.

D. Mowery and T. Simcoe. Public and Private Participation in the Development and Governance of the Internet. Pages 259–294 in *The Limits of Market Organization*. Russell Sage, 2005.

D. Mowery and T. Simcoe. The Origins and Evolution of the Internet. Pages 229–265 in *Technological Innovation and Economic Performance*. Princeton University Press, 2002.

M. Rysman and T. Simcoe. Measuring the Performance of Standard Setting Organizations. Pages 81–94 in *International Standardization as a Strategic Tool: Commended Papers from the IEC Centenary Challenge 2006*. International Electrotechnical Commission, 2006.

TEACHING    **Boston University Questrom School of Business**
Technology Strategy (MBA and Executive MBA)
Strategy and Innovation (Undergraduate)
Competition, Innovation and Strategy (MBA)
Data Analysis (Executive MBA)
Causal Inference in Management Research (PhD)

**University of Toronto, Rotman School of Management**
Fundamentals of Competitive Strategy (MBA)
Entrepreneurship & Small Business Management (Undergraduate)
Models & Methods in Strategic Management (PhD)

**University of California, Berkeley**
Economic Analysis for Business Decisions, Teaching Assistant (MBA)

CONSULTING

**Expert Reports, Depositions and Testimony**

United States of America *et al.* (client) v. Google LLC. Eastern District of Virginia. Case No. 1:23-cv-00108.

Apple (client) v. Qualcomm. Southern District of California. Case No. 3:17-CV-0108.

Microsoft (client) v. Motorola. Western District of Washington. Case No. C10-1823-JLR.

HTC Corporation (client) v. Ericsson. Eastern District of Texas. Case No. 6:18-CV-00243-JRG.

ViiV Healthcare, (client) v. Gilead Sciences. District of Delaware. Case No. 1:18-CV-0224-VAC-CJB.

In Re: Qualcomm Securities Class Action Litigation (plaintiff client). Southern District of California. Case No. 3:17-CV-00121-JO-MSB

Fujitsu v. Tellabs (client). Northern District of Illinois, Eastern Division. Civil Action No. 09 CV 04530.

In the Matter of Certain Video Capable Electronic Devices, Including Computers, Streaming Devices, Televisions, Cameras, and Components and Modules Thereof (clients Amazon and Hewlett Packard). U.S. International Trade Commission Investigations Nos. 337-1379 and 337-1380.

In the Matter of Video-Capable Laptop, Desktop Computers, Handheld Computers, Tablets, Televisions, Projectors, and Components and Modules Thereof (clients Acer, AsusTek and HiSense). U.S. International Trade Commission Investigation No. 337-TA-448.

Apple (client) v. Motorola. Western District of Wisconsin. Case No. 11-CV-178.

Lenovo (client) and Motorola Mobility v. InterDigital Technology Corporation et al. District of Delaware. Case No. 19-1590-LPS

3G Licensing, Koninklijke KPN and Orange v. LG Electronics (client). District of Delaware. Case No. 17-cv-85-LPS.

Global Communications (client) v. Direct TV, et al. Northern District of Florida. Case No. 4:12-CV-00651-RH-CAS.

Zenith Electronics, Panasonic, U.S. Philips and The Trustees of Columbia University v. Craig Electronics (client). Southern District of Florida. Case No. 13-CV-80567.

**Other Consulting**

Wireless standards developer (client). Review of bylaws and procedures.

Boston Toronto Group (client). Executive education.

SERVICE

**University Governance**

Strategy & Innovation Department Chair, 2024-*present*

PhD Program Director (2015-2017, 2018-2022.)

**Editorial and Advisory Positions**

American Economic Journal: Economic Policy, Board of Editors, 2021.

Management Science, Associate Editor in Innovation and Entrepreneurship, 2014-present.

A-5

Journal of Industrial Economics, Associate Editor, 2013-present.

Management Science, Associate Editor in Business Strategy, 2012-present.

NIST Visiting Expert Committee on US National Standards Strategy for Critical and Emerging Technologies, 2023-24.

National Academy of Sciences, Member of Committee on Intellectual Property Management Practices of Standard Setting Organizations, 2012-2013.

National Academy of Sciences, Member of Committee on the Review of the Small Business Innovation Research and Small Business Technology Transfer Programs at the National Science Foundation, 2019-2021.

Co-founder, Sloan Management Review Strategy Forum, 2018-2023.

Scientific Advisory Board, Global Biological Standards Institute, 2015-2018.

**Doctoral Advising & Committees**

Xia Li, London Business School (Primary Advisor, 2023).

Jeremy Watson, University of Minnesota (Primary Advisor, 2018).

Cesare Righi, Pompeu Fabra University (Primary Advisor, 2017).

Jane Wu, UCLA (Committee Member, 2022).

Sophie Wang, UIBE Beijing (Committee Member, 2021).

Christian Catalini, MIT Sloan (Committee Member, 2013)

Paul Seaborn, University of Denver (Primary Advisor, 2011)

Jay Horwitz, University of Bocconi (Committee Member, 2011)

Elena Kulchina, Duke University (Committee Member, 2012)

Justus Baron, Ecole des Mines / ParisTech (Committee Member, 2012)

AWARDS

Innovators Network Foundation Intellectual Property Fellow, 2021-2023
Broderick Award for Excellence in Research, 2022.
Dean's Research Scholar, 2015-2018, 2020-2022
Outstanding Contribution to Questrom Doctoral Programs, 2018
Questrom Full-time MBA Favorite Elective Professor, 2016
BU Questrom Doctoral Student's Association, Distinguished Mentor Award, 2016
John R. Russell Excellence in Teaching Award, Executive MBA, 2013
Management Science Meritorious Service Award (Reviewer), 2010
Rotman Excellence in Teaching Award, Commerce Program, 2008
Glueck Best Paper Award, Academy of Management BPS Division, 2008
Finalist, IEC Centenary Challenge, 2006
Finalist, Organization Science Dissertation Proposal Competition, 2003

GRANTS

Intel Corporation Research Gift, 2017-2020
Bell Canada University Labs, 2007-2008
Connaught New Faculty Start-Up Award, 2004-2008
Berkeley Center for I.T. Research in the Interest of Society, 2003-2004
Intel Corporation Robert M. Noyce Memorial Fellowship, 2001-2002
Haas School of Business Ph.D. Fellowship, 1999-2000
Harvard College Fellowship, 1992-1995

| | |
|---|---|
| PRIOR WORK EXPERIENCE | **Ernst & Young LLP**<br>Senior Consultant, Center for Business Innovation, Boston MA, 1998-1999<br>Consultant, E&Y Economics Consulting, Washington DC, 1996-1998 |
| OTHER | **Professional Societies**<br>American Economics Association, Academy of Management, Strategy Research Forum, International Society for New Institutional Economics<br><br>**Computer Code**<br>STATA xtpqml: Robust inference in fixed-effects poisson regression<br>STATA mtad: Multinomial test of agglomeration and dispersion |
| PERSONAL | Married: Stephanie Tobias Gates (August 2002)<br>Children: Katherine, Anne and Theodore<br>Interests: Michigan Sailing, North Haven Golf Club, Harvard Alumni Jazz Band |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

### APPENDIX B: MATERIALS RELIED UPON

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

## Legal Documents

"Arm's First (Corrected) Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1-11)," Arm Ltd., March 1, 2024

"Arm's First Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1–3)," Arm Holdings, July 11, 2025

"Arm's First Supplemental Response to Qualcomm's Amended Interrogatory No. 3," Arm Holdings, July 11, 2025

"Arm's First Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11)," Arm Holdings, July 11, 2025

"Arm's First Supplemental Objections and Responses to Qualcomm's Third Set of Interrogatories (No. 12)," Arm Holdings, July 11, 2025

"Arm's Responses & Objections to Qualcomm's First Set of Request for Admissions (Nos. 1-28)," Arm Holdings, July 11, 2025

"Plaintiffs' Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1–9)," Qualcomm, March 10, 2025

"Plaintiffs' Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1–9)," Qualcomm, July 11, 2025

"Plaintiffs' Third Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1–9)," Qualcomm, August 8, 2025

"Plaintiffs' Supplemental Responses and Objections to Defendant's Second Set of Interrogatories (Nos. 10-13)," Qualcomm, July 11, 2025

"Plaintiffs' Second Supplemental Responses and Objections to Defendant's Second Set of Interrogatories (Nos. 10-13)," Qualcomm, August 8, 2025

"Plaintiffs' Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14-24)," Qualcomm, July 11, 2025

"Plaintiffs' First Supplemental Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14-24)," Qualcomm, August 8, 2025

"Plaintiffs' Responses and Objections to Defendant's First Set of Requests for Admission (Nos. 1-30)," Qualcomm, July 11, 2025

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

*Qualcomm Inc. v. Arm Holdings, plc.,* C.A. No. 24-490-MN, Dkt. Nos. 137; 137-1 (Ex. A) (June 3, 2025)

*Arm Ltd. v. Qualcomm Inc.,* No. 1:22-cv-01146 (D. Del. filed August 31, 2022), Dkt. Nos. 571, 572

*Arm Ltd. v. Qualcomm Inc., No. 1:22-cv-01146* (D. Del. filed August 31, 2022), Dkt. No. 1

*Arm v. Qualcomm,* No. 22-1146 (MN), Plaintiff Arm Ltd.'s Answer and Affirmative Defenses to Defendants Qualcomm Inc., Qualcomm Technologies, Inc., and Nuvia, Inc.'s Amended Counterclaim, D.I. 21, November 15, 2022

*Arm v. Qualcomm*, No. 22-1146 (MN), Pretrial Conference Transcript, November 20, 2024

*Qualcomm Inc. v. Arm Holdings, plc.,* C.A. No. 24-490-MN, Dkt. No. 233, Arm's Opening Brief In Support of Its Partial Motion To Dismiss Qualcomm's Second Amended Complaint, June 17, 2025

Baumol, William J. and 18 other leading economics scholars, "Supreme Court Amicus Brief Regarding Morgan Stanley Capital Group Inc. v. Public Utility District No. 1 of Snohomish County, Washington," December 2007

Complaint for Patent Infringement, *Qualcomm Inc. v. Apple Inc.,* No. 3:17-cv-01375-JAH-AGS (S.D. Cal. filed July 6, 2017), https://www.qualcomm.com/content/dam/qcomm-martech/dm-assets/documents/2017-07-06_complaint.pdf

*eBay Inc. and Half.com v. MercExchange, L.L.C.*, Brief of Amici Curiae Qualcomm Inc. & Tessera, Inc. in Support of Respondent, 547 U.S. 388 (2006) (No. 05-130)

Expert Report of Dr. Michael C. Brogioli, September 5, 2025

Expert Report of Mr. Steven Richards, CPA, September 5, 2025

Expert Report of Eric A. Posner, August 8, 2025

Expert Report of Patrick F. Kennedy, August 8, 2025

Expert Report of Patrick F. Kennedy, February 27, 2024

*Federal Trade Commission v. Qualcomm Incorporated,* "Reply brief for appellant Qualcomm Incorporated (Redacted)," Qualcomm Incorporated, December 16, 2019, No. 19-16122, Dkt. Entry 228, United States Court of Appeals for the Ninth Circuit

Plaintiffs' Supplemental Responses and Objections to Defendant's Second Set of Interrogatories (Nos. 10–13)," Qualcomm, July 11, 2025

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

**I incorporate by reference all documents cited in ARM's and Qualcomm's discovery responses, and all materials relied upon by Prof. Posner and Dr. Kennedy.**

## Case Law

*Brown Shoe Co., Inc. v. United States,* 370 U.S. 294 (1962)

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977)

*Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104 (1986)

*Federal Trade Commission v. Tempur Sealy International and Mattress Firm Group Inc*., U.S. District Court, Southern District of Texas, Civil Action No. 4:24-cv-02508, Opinion and Order Denying Motion for Preliminary Injunction,  Case 4:24-cv-02508, Dkt. Entry 511 (S.D. Tex. Jan. 31, 2025)

*United States v. Aluminum Co. of Am.,* 148 F.2d 416, 430 (2d Cir. 1945)

*United States v. Microsoft Corp.,* 253 F.3d 59 (2001)

## Deposition Testimony and Associated Exhibits

*Arm v. Qualcomm,* Trial Transcript, Vol 2.1, December 16, 2024

*Arm v. Qualcomm,* Trial Transcript, Vol 3.1, December 17, 2024

*Arm v. Qualcomm,* Trial Transcript, Vol. 4.1, December 18, 2024

Deposition of Akshay Bhatnagar, July 10, 2025

Deposition of Ami Badani, August 1, 2025

Deposition of Andrew Howard, July 1, 2025

Deposition of Ann Chaplin, July 11, 2025

Deposition of Anupa George, July 30, 2025

Deposition of Aparajita Bhattacharya, July 7, 2025

Deposition of Christine Tran, July 10, 2025

Deposition of Christopher Patrick, July 2, 2025

Deposition of Cristiano Amon, July 3, 2025

Deposition of Durga Malladi, July 10, 2025

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Deposition of Ehab Youssef, June 26, 2025

Deposition of Gerard Williams, June 25, 2025

Deposition of Gerard Williams, November 3, 2023

Deposition of James Jeon, July 11, 2025

Deposition of James Thompson, November 28, 2023

Deposition of Jannik Nelson, July 10, 2025

Deposition of Jean-Francois (Jeff) Vidon, July 1, 2025

Deposition of Jeff Golden, July 3, 2025

Deposition of Jeffrey M. Fonseca, July 9, 2025

Deposition of Jignesh Trivedi, July 9, 2025

Deposition of John Horley, July 8, 2025

Deposition of Jonathan Weiser, July 11, 2025

Deposition of Karl M. Whealton, June 18, 2025

Deposition of Karthik Shivashankar, June 20, 2025

Deposition of Kenneth Siegel, July 4, 2025

Deposition of Kurt Wolf, June 25, 2025

Deposition of Larissa Cochron, July 11, 2025

Deposition of Laura Sand, July 8, 2025

Deposition of Lynn Couillard, July 3, 2025

Deposition of Manju Varma, June 24, 2025

Deposition of Mark Dragicevich, June 27, 2025

Deposition of Martin Weidmann, June 20, 2025

Deposition of Michael Williams, June 27, 2025

Deposition of Mohamed Awad, July 29, 2025

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Deposition of Paul Kranhold, July 17, 2025

Deposition of Paul Williamson, July 2, 2025

Deposition of Pavankumar (Pavan) Mulabagal, July 1, 2025

Deposition of Peter Greenhalgh, July 4, 2025

Deposition of Philip Hughes, June 17, 2025

Deposition of Rene Haas, July 7, 2025

Deposition of Richard Grisenthwaite, July 2, 2025

Deposition of Richard Meacham, June 27, 2025

Deposition of Selena LaCroix, August 1, 2025

Deposition of Simon Segars, November 16, 2023

Deposition of Spencer Collins, June 30, 2025

Deposition of Sudeep Holla, June 17, 2025

Deposition of Tim Herbert, October 25, 2023

Deposition of Vivek Agrawal, July 11, 2025

Deposition of Will Abbey, June 26, 2025

Deposition of Will Abbey, October 27, 2023

Deposition of Ziad Asghar, July 7, 2025

## Conversations

Conversation with Dr. Michael C. Brogioli, September 2, 2025

Conversation with Mohamed Awad, August 29, 2025

Conversation with Paul Williamson, September 2, 2025

## SEC Filings

Arm Holdings plc, Form F-1, August 21, 2023,
https://www.sec.gov/Archives/edgar/data/1973239/000119312523216983/d393891df1.htm

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Arm Holdings plc, Amendment No. 2 to Form F-1, September 5, 2023, https://www.sec.gov/Archives/edgar/data/1973239/000119312523228059/d393891df1a.htm

Arm Holdings plc, Form 20-F, for the fiscal year ended March 31, 2024, https://investors.arm.com/static-files/dcdd6629-24bb-40ef-ba55-8aca1362205a

Arm Holdings plc, Form 20-F, for the fiscal year ended March 31, 2025, https://investors.arm.com/static-files/9be77c9d-75ee-4639-bfe4-17efd23c56b5

Intel Corporation, 2021 Form 10-K, for the fiscal year ended December 25, 2021, https://www.intc.com/filings-reports/all-sec-filings/content/0000050863-22-000007/0000050863-22-000007.pdf

Intel Corporation, 2024 Form 10-K, for the fiscal year ended December 28, 2024, https://www.intc.com/filings-reports/all-sec-filings/content/0000050863-25-000009/0000050863-25-000009.pdf

Qualcomm Incorporated, Form 10-K, for the fiscal year ended September 29, 2024, https://d18rn0p25nwr6d.cloudfront.net/CIK-0000804328/fd08c4f6-61ba-4a6a-a339-0e3b522ed739.pdf

Qualcomm Incorporated, Form 10-K, for fiscal years 2019 – 2024, https://investor.qualcomm.com/financial-info-sec-filings/sec-filings/default.aspx

Qualcomm Incorporated, Form 10-Q, for the quarterly period ended December 26, 2021, https://d18rn0p25nwr6d.cloudfront.net/CIK-0000804328/c91b841c-1f3f-4762-9c0d-c379f1554455.pdf

Qualcomm Incorporated, Form 10-Q, for the quarterly period ended December 29, 2024, https://d18rn0p25nwr6d.cloudfront.net/CIK-0000804328/1b687286-85e9-44e6-a579-d19d089eacfb.pdf

Qualcomm Incorporated, Form 10-Q, for the quarterly periods 2019 – 2024, https://investor.qualcomm.com/financial-info-sec-filings/sec-filings/default.aspx

## Bates Numbered Documents

ARM_00000003

ARM_00000016

ARM_00000017

ARM_00000382

ARM_00000510

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

ARM_00002955

ARM_00004029

ARM_00026351

ARM_00032601

ARM_00032602

ARM_00045266

ARM_00055357

ARM_00057511

ARM_00057560

ARM_00076604

ARM_00080472

ARM_00081203

ARM_00081461

ARM_00081462

ARM_00081753

ARM_00086285

ARM_00087465

ARM_00088600

ARM_00092788

ARM_00095947

ARM_00097388

ARM_00103918

ARM_00104733

ARM_00110511

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

ARM_00113179

ARM_00115827

ARM_00117493

ARM_00118635

ARM_00119602

ARM_00119603

ARM_01215409

ARM_01215878

ARM_01215886

ARM_01230861

ARM_01230977

ARM_01230978

ARM_01238895

ARM_01239056

ARM_01246942

ARM_01249629

ARM_01259705

ARM_01282304

ARM_01293447

ARM_01294236

ARM_01305915

ARM_01311208

ARM_01314793

ARM_01426938

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

ARM_01427719

ARM_01427776

ARM_01427796

ARM_01428339

ARMQC_00000640

ARMQC_02600713

ARMQC_02601118

ARMQC_02725050

ARMQC_02726982

ARMQC_02727610

ARMQC_02729412

ARMQC_02731630

ARMQC_02739661

ARMQC_02740205

ARMQC_02740386

ARMQC_02748499

ARMQC_02749177

ARMQC_02762992

ARMQC_02770485

ARMQC_02770649

ARMQC_02770676

ARMQC_02771127

ARMQC_02771946

ARMQC_02772366

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

ARMQC_02779314

ARMQC_02779364

ARMQC_02779391

ARMQC_02779433

ARMQC_02779483

ARMQC_02783619

ARMQC_02785287

QCARM_0020011

QCARM_0020012

QCARM_0027980

QCARM_0222737

QCARM_0275743

QCARM_0332490

QCARM_0337839

QCARM_0338297

QCARM_0338573

QCARM_0338883

QCARM_0343120

QCARM_0343954

QCARM_0353229

QCARM_0550516

QCARM_0550518

QCARM_0589823

QCARM_0591733

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

QCARM_3460234

QCARM_3474751

QCARM_3839896

QCARM_3972031

QCARM_7401071

QCARM_7484882

QCVARM_0449658

QCVARM_0451587

QCVARM_0455391

QCVARM_0463558

QCVARM_0463837

QCVARM_0464076

QCVARM_0464648

QCVARM_0465090

QCVARM_0526828

QCVARM_0527544

QCVARM_0528956

QCVARM_0532239

QCVARM_0534597

QCVARM_0537065

QCVARM_0538870

QCVARM_0538873

QCVARM_0541454

QCVARM_0573677

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

QCVARM_0600104

QCVARM_0608391

QCVARM_0621447

QCVARM_0621448

QCVARM_0847188

QCVARM_0851120

QCVARM_0851449

QCVARM_0855438

QCVARM_0856270

QCVARM_0856888

QCVARM_0857113

QCVARM_0857152

QCVARM_0863181

QCVARM_0863573

QCVARM_0863641

QCVARM_0864713

QCVARM_0864833

QCVARM_0864924

QCVARM_0865022

QCVARM_0865236

QCVARM_0865274

QCVARM_0865311

QCVARM_1014030

QCVARM_1024852

A1261

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

QCVARM_1031097

QCVARM_1066820

QCVARM_1069058

QCVARM_1069082

QCVARM_1069106

QCVARM_1069760

QCVARM_1120481

QCVARM_1120999

QCVARM_1121176

QCVARM_112154

QCVARM_1121674

QCVARM_1151565

QCVARM_1151573

QCVARM_1151615

## Articles and Books

"AI Flywheel Gathering Momentum - Initiate Buy," UBS Global Research, November 24, 2024

"Qualcomm Incorporated 2009 and Qualcomm Incorporated 2011 Update," Harvard Business School Teaching Notes, May 25, 2011

Aberra, Adam and Matthieu Chemin, "Does legal representation increase investment? Evidence from a field experiment in Kenya," 2021, Journal of Development Economics, Vol. 150

Armstrong, Mark, "Competition in Two-Sided Markets," 2006, RAND Journal of Economics, Vol. 37, No. 3

Babcock, Linda, George Loewenstein, S. Issacharoff, and Colin Camerer, "Biased Judgements of Fairness in Bargaining," American Economic Review, 1995, Vol. 85, No. 5

Beck, Marissa and Fiona Scott Morton, "Evaluating the Evidence on Vertical Mergers," Review of Industrial Organization, 2021, Vol. 59

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Benjamin E. Hermalin et al., "Contract Law," in Handbook of Law & Economics, 2007, Vol. 3, No. 68 (ed. A. Mitchell Polinsky & Steven Shavell)

Blair, Roger D., Christine S. Wilson, D. Daniel Sokol, Keith Klovers and Jeremy A. Sandford, "Analyzing Vertical Mergers: Accounting for the Unilateral Effects Tradeoff and Thinking Holistically About Efficiencies," George Mason Law Review, 2020, Vol. 27, No. 3

Bloom, Nick, Stephen Bond, and John Van Reenen, "Uncertainty and Investment Dynamics," The Review of Economic Studies, 2007, Vol. 74, No. 2

Brandenburger, Adam M. and Barry J. Nalebuff, "The Rules of Co-opetition," Harvard Business Review, 2021

CGS International, "Arm Holdings pcl - Initiate at Outperform and $160 PT; Content Story in Early Innings," US Equity Research, Sept 12, 2024

De Stefano, Martino and Michael Salinger, "The Complicated Simple Economics of Vertical Mergers," The Journal of Law and Economics, 2025, Vol. 68, No. 1

Donna, Javier D., Pedro Pereira, Yun Pu, Andre Trindade, and Renan C. Yoshida, "Direct sales and bargaining," RAND Journal of Economics, 2024, Vol. 55, No. 4

Federico, Giulio, Fiona Scott Morton, and Carl Shapiro, "Antitrust and Innovation: Welcoming and Protecting Disruption," Innovation Policy and the Economy, 2020, Vol. 20, pp. 125-190

Gans, Joshua "The Disruption Dilemma," MIT Press, 2016

Gilbert, Richard J. and Carl Shapiro, "An Economic Analysis of Unilateral Refusals to License Intellectual Property," Proceedings of the National Academy of Sciences U.S.A., 1996, Vol. 3

Kwon, Yona, Dahee Kang, Sinji Kim, and Seungho Choi, "Coopetition in the SoC Industry: The Case of Qualcomm Incorporated," Journal of Open Innovation: Technology, Market, and Complexity, 2020, Vol. 6, No. 1

Lemley, Mark A. and Carl Shapiro, "Probabilistic Patents," Journal of Economic Perspectives, 2005, Vol. 19, No. 2

Lianos, Ioannis and Pierre Regibeau, "'Vexatious'/'Sham' Litigation: When Can It Arise and How Can It Be Reduced?," The Antitrust Bulletin, 2017, Vol. 62, No. 4

Lu, Shihua, Serge Moresi, and Steven C. Salop, "A Note on Vertical Mergers with an Upstream Monopolist: Foreclosure and Welfare Effects," 2007, Working Paper

Muthoo, Abhinay, "A Non-Technical Introduction to Bargaining Theory," World Economics, April-June 2020, Vol. 1, No. 2

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Posner, Richard A., "The Law and Economics of Contract Interpretation," 2004, 83 Texas Law Review 1581

Priest, George L. & Benjamin Klein, "The Selection of Disputes for Litigation," Journal of Legal Studies, 1984, Vol. 13

Schumpeter, Joseph, "Capitalism, Socialism, and Democracy," Harper & Brothers Publishers, 1942

Seitz, Michael and Martin Watzinger, "Contract enforcement and R&D investment," Research Policy, 2017, Volume 46, Issue 1

Shapiro, Carl & Keith Waehrer, "Using and Misusing Microeconomics: Federal Trade Commission v. Qualcomm," Chapter 15, Antitrust Economics at a Time of Upheaval: Recent Competition Policy Cases on Two Continents (ed. John E. Kwoka, Jr., Tommaso M. Valletti & Lawrence J. White), 2023, Competition Policy International

Shapiro, Carl, "Competition and Innovation Did Arrow Hit the Bull's Eye?" in The Rate and Direction of Inventive Activity Revisited (ed. Josh Lerner and Scott Stern), 2012, University of Chicago Press

Shapiro, Carl, "Premiums for high quality products as returns to reputations," The Quarterly Journal of Economics, 1983, Vol. 98, No. 4

Shapiro, Carl, "Vertical Mergers and Input Foreclosure Lessons from the AT&T/Time Warner Case," Review of Industrial Organization, 2021, Vol. 59, pp. 303–341

Spulber, Daniel F., "How Do Competitive Pressures Affect Incentives to Innovate When There is a Market for Inventions?" Journal of Political Economy, 2013, Vol. 121, No. 6, pp. 1007-1054

Tirole, Jean, "Competition and the Industrial Challenge for the Digital Age," Annual Review of Economics, 2020, Vol. 156

Yang, Chenyu, "Vertical Structure and Innovation: A Study of the SoC and Smartphone Industries," The RAND Journal of Economics, 2022, Vol. 51, No. 3, pp. 739–785

## Websites and Other Public Sources

"2023 Patent Litigation Report," Bloomberg Law, https://pro.bloomberglaw.com/insights/intellectual-property/2023-patent-litigation-report/

"4 Reasons Qualcomm's Data Center Business Failed," The Motley Fool, December 21, 2018, https://www.nasdaq.com/articles/4-reasons-qualcomms-data-center-business-failed-2018-12-21

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

"4Q24 Global Top 10 Foundries Set New Revenue Record, TSMC Leads in Advanced Process Nodes," TechPowerUp, March 10, 2025, https://www.techpowerup.com/333868/4q24-global-top-10-foundries-set-new-revenue-record-tsmc-leads-in-advanced-process-nodes

"About RISC-V," RISC-V International, https://riscv.org/about/, accessed  August 15, 2025

"Accelerating the RISC-V Software Ecosystem," RISE, The Linux Foundation Projects, https://riseproject.dev/, accessed August 26, 2025

"AI Accelerator Chips Overview and Comparison," HardwareBee, https://hardwarebee.com/ai-accelerator-chips-overview-and-comparison/, accessed on August 22, 2025

"Apple announces Mac transition to Apple silicon," Apple Newsroom, June 22, 2020, https://www.apple.com/newsroom/2020/06/apple-announces-mac-transition-to-apple-silicon/

"Apple unleashes M1," Apple Newsroom, November 10, 2020, https://www.apple.com/newsroom/2020/11/apple-unleashes-m1/

"Arm Approved Design Partners," Arm, https://www.arm.com/partners/arm-approved-program/design-partners, accessed September 4, 2025

"Arm CEO on Intel, Chips, AI, Listing in US," Bloomberg Technology, YouTube, October 22, 2024, www.youtube.com/watch?v=6FnBz8rxWUY

"Arm Compute Subsystems (CSS) for Client," Arm, https://www.arm.com/products/compute-subsystems-for-client, accessed September 4, 2025

"Arm CoreLink GIC-700 Generic Interrupt Controller Technical Reference Manual," Arm Developer,  https://developer.arm.com/documentation/101516/latest/, accessed September 4, 2025

"Arm Cortex-A Processor Comparison Table," Arm Developer, https://developer.arm.com/documentation/102826/latest/, accessed September 4, 2025

"Arm Cortex-M Processor Comparison Table," Arm Developer, https://developer.arm.com/documentation/102787/latest/, accessed September 4, 2025

"Arm Cortex-R Processor Comparison Table," Arm Developer, https://developer.arm.com/documentation/102788/latest/, accessed September 4, 2025

"Arm CPU Architecture: A Foundation for Computing Everywhere," Arm, https://www.arm.com/architecture/cpu, accessed September 4, 2025

"Arm Files Lawsuit Against Qualcomm and Nuvia for Breach of License Agreements and Trademark Infringement," Arm, August 31, 2022, https://newsroom.arm.com/news/arm-files-lawsuit-against-qualcomm-and-nuvia-for-breach-of-license-agreements-and-trademark-infringement

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

"Arm Flexible Access," Arm, https://www.arm.com/products/flexible-access

"Arm Holdings plc Q1 2026 Earnings Call," July 30, 2025, https://investors.arm.com/static-files/57a99953-427a-4cfb-ade8-634d3564c008

"Arm Holdings plc Q3 2025 Earnings Call," February 5, 2025, https://investors.arm.com/static-files/f1190d81-408d-4276-a30c-b27c1ce5a30a

"Arm Holdings plc Q4 2025 Earnings Call," May 7, 2025, https://investors.arm.com/static-files/181d5019-29bd-4ba5-af29-45888e25c637

"Arm Holdings plc Q3 FYE24 Results Presentation," Arm Holdings, February 7, 2024, https://investors.arm.com/static-files/c383780b-44f8-42c0-a125-4f6db0b8eb06

"Arm Holdings plc Q4 FYE24 Results Presentation," Arm Holdings, May 8, 2024, https://investors.arm.com/static-files/4f2fc46b-34a5-4bc5-94af-f13fbc348f0e

"Arm Holdings Q2 FYE25 Investor Presentation," Arm Holdings, November 6, 2024, https://investors.arm.com/static-files/623fece0-c947-4d'93-94eb-e08e8dfad61b

"Arm Holdings plc Q4 FYE25 Investor Presentation," Arm Holdings, May 7, 2025, https://investors.arm.com/static-files/6bb3def3-ddce-4588-bf81-b5a718973274

"Arm Holdings plc, Q1 FYE26 Investor Presentation," Arm Holdings, July 30, 2025, https://investors.arm.com/static-files/dae25601-3e5a-4d40-b9f5-e0149989e553

"Arm Total Access," Arm, https://www.arm.com/products/licensing/arm-total-access, accessed August 30, 202

"At Qualcomm Trial, Apple COO Said $7.50 Per-iPhone Fee Cost Company $1 Billion a Year," Bloomberg, January 14, 2019, https://fortune.com/2019/01/14/qualcomm-trial-apple-7-50-iphone-fee-billion/

"Automated Driving | Snapdragon Ride ADAS Tech for Smart Cars," Qualcomm, https://www.qualcomm.com/products/automotive/automated-driving, accessed September 4, 2025

"AWS and Arm," Arm, https://www.arm.com/markets/computing-infrastructure/cloud-computing/aws#1, accessed August 29, 2025

"AWS re: Invent 2024 - Monday Night Live with Peter DeSantis," AWS, YouTube.com, December 3, 2024, https://www.youtube.com/watch?v=vx36tyJ47ps&t=1041s

"BoM Analysis: Samsung Galaxy S23 Ultra Costs $469 to Make," Counterpoint, May 31, 2023, https://www.counterpointresearch.com/insight/bom-analysis-samsung-galaxy-s23-ultra

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

"CMN-600 Coherent Mesh: Scalable Network for Smart Systems," Arm, https://www.arm.com/products/silicon-ip-system/corelink-interconnect/cmn-600, accessed September 4, 2025

"CoreSight ELA-600," Arm Developer, https://developer.arm.com/Processors/CoreSight%20ELA-600, accessed September 4, 2025

"CPU Cortex-A78", Arm https://www.arm.com/products/silicon-ip-cpu/cortex-a/cortex-a78, accessed August 29, 2025

"Exynos Mobile Processor," Samsung Semiconductor Global, https://semiconductor.samsung.com/processor/mobile-processor/, accessed September 4, 2025

"Fastest Path to Production Silicon with World-Leading Performance, on Leading-Edge Technology," Arm, https://www.arm.com/products/neoverse-compute-subsystems, accessed September 4, 2025

"FYE26 Q1 (30-Jun-25) Historical Quarters Datasheet.xlsx," Arm Holdings, July 30, 2025, https://investors.arm.com/financials/quarterly-annual-results

"Gartner Says Worldwide Semiconductor Revenue Grew 21% in 2024," Gartner, April 10, 2025, https://www.gartner.com/en/newsroom/press-releases/2025-04-10-gartner-says-worldwide-semiconductor-revenue-grew-21-percent-in-2024

"Glossary," Lenovo, https://www.lenovo.com/us/en/glossary/cpu-core/, accessed September 4, 2025

"Glossary," Lenovo, https://www.lenovo.com/us/en/glossary/what-is-a-chipset, accessed September 3, 2025

"Governing Board," RISE, The Linux Foundation Projects, https://riseproject.dev/leadership/, accessed August 26, 2025

"Here's How Much Apple Was Paying Qualcomm in Royalties," The Motley Fool, January 14, 2019, https://www.nasdaq.com/articles/heres-how-much-apple-was-paying-qualcomm-royalties-2019-01-14

"How NVIDIA Shipped One Billion RISC-V Cores In 2024," RISC-V International, February 25, 2025, https://riscv.org/blog/2025/02/how-nvidia-shipped-one-billion-risc-v-cores-in-2024/

"Intel Antitrust Rulings," https://www.amd.com/en/legal/notices/antitrust-ruling.html, accessed September 4, 2025

"Invention and Intellectual Property [-] Protecting the value of invention," Qualcomm, https://www.qualcomm.com/company/corporate-responsibility/acting-responsibly/public-policy/our-positions/invention-and-intellectual-property, accessed August 28, 2025

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

"Is Snapdragon an ARM Processor? Understanding the Core Technology Behind Qualcomm's Mobile Chipsets," Indian Institute of Embedded Systems, https://iies.in/blog/is-snapdragon-an-arm-processor-understanding-the-core-technology-behind-qualcomms-mobile-chipsets

"Keynote: Accelerating Innovation with RISC-V: Past, Present and Future - Manju Varma," RISC-V International, YouTube, December 29, 2022, at 1:01, https://www.youtube.com/watch?v=t6_9pbgg1LI&ab_channel=RISC- Vinternational

"Keynote: Unlocking Innovation with RISC-V and Qualcomm - Ziad Asghar," RISC-V International, YouTube, November 29, 2023, @ 4:37, https://www.youtube.com/watch?v=9h9LwkPnrUw&ab_channel=RISC-Vinternational

"Market Capitalization of Arm Holdings," Companies Market Cap, https://companiesmarketcap.com/arm-holdings/marketcap/, accessed August 29, 2025

"Market Capitalization of Qualcomm," Companies Market Cap, https://companiesmarketcap.com/qualcomm/marketcap/, accessed August 29, 2025

"Market Capitalization of Samsung," Companies Market Cap, https://companiesmarketcap.com/samsung/marketcap/, accessed August 29, 2025

"Missouri and New Jersey Should Repeal Their Prohibitions on Direct-to-Consumer Auto Sales by Manufacturers," Federal Trade Commission, Press Release May 16, 2014, https://www.ftc.gov/news-events/news/press-releases/2014/05/ftc-staff-missouri-new-jersey-should-repeal-their-prohibitions-direct-consumer-auto-sales

"Neoverse N1 | CPU for Next-Gen Cloud Infrastructure," Arm, https://www.arm.com/products/silicon-ip-cpu/neoverse/neoverse-n1, accessed September 4, 2025

"Next-Gen flagship Snapdragon chip 'Pakala' & reference device slip in new Qualcomm video," March 21, 2024, https://www.gizmochina.com/2024/03/21/next-gen-snapdragon-pakala-reference-device/

"NUVIA Raises $53 Million to Reimagine Silicon Design for the Data Center," Globe News Wire, November 15, 2019, https://www.globenewswire.com/news-release/2019/11/15/1948072/0/en/NUVIA-Raises-53-Million-to-Reimagine-Silicon-Design-for-the-Data-Center.htm

"Our Businesses," Qualcomm, https://www.qualcomm.com/our-businesses, August 5, 2025

"PPA analysis overview," Arm Developer, https://developer.arm.com/documentation/102738/0100/Power--performance--and-area-analysis, accessed September 4, 2025

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

"Q1 2025 Qualcomm Inc. Earnings Call," Qualcomm, February 5, 2025, https://s204.q4cdn.com/645488518/files/doc_events/2025/Feb/05/QCOM_Q1FY25EC_Transcript_2-5-24.pdf

"Q2 2025 Qualcomm Inc. Earnings Call," Qualcomm, April 30, 2025, https://s204.q4cdn.com/645488518/files/doc_events/2025/Apr/30/QCOM_Q2FY25EC_Transcript_5-1-25.pdf

"Q3 2025 Qualcomm Inc. Earnings Call," Qualcomm, July 30, 2025, https://s204.q4cdn.com/645488518/files/doc_events/2025/Jul/30/Q3FY25-Earnings-Call-Transcript_7-30-25_Final.pdf

"Q4 2024 Qualcomm Inc. Earnings Call," Qualcomm, November 6, 2024, https://s204.q4cdn.com/645488518/files/doc_events/2024/Nov/06/QCOM_Q4FY24EC_Transcript_11-7-24.pdf

"Qualcomm 5G NR Royalty Terms Statement," November 19, 2017, https://www.qualcomm.com/content/dam/qcomm-martech/dm-assets/documents/qualcomm-5g-nr-royalty-terms-statement.pdf

"Qualcomm Announces Third Quarter Fiscal 2025 Results," Qualcomm, July 30, 2025, https://s204.q4cdn.com/645488518/files/doc_financials/2025/q3/FY2025-3rd-Quarter-Earnings-Release.pdf

"Qualcomm Cellular IoT Licensing Program," Qualcomm, https://www.qualcomm.com/licensing/cellular-iot-licensing-program, accessed September 4, 2025

"Qualcomm Completes Acquisition of NUVIA," Qualcomm Press Release, March 15, 2021, https://www.qualcomm.com/news/releases/2021/03/qualcomm-completes-acquisition-nuvia

"Qualcomm Dominates Premium Android Smartphone Chip Market in Q1 2022," Cellit, May 19, 2022, https://cellit.in/qualcomm-dominates-premium-android-smartphone-chip-market-in-q1-2022/

"Qualcomm Files GSM Patent Infringement Suit Against Nokia," Qualcomm Press Release, November 6, 2005, https://www.qualcomm.com/news/releases/2005/11/qualcomm-files-gsm-patent-infringement-suit-against-nokia

"Qualcomm Files Lawsuit Against Motorola," Qualcomm, Mar 5, 1997 https://www.qualcomm.com/news/releases/1997/03/qualcomm-files-lawsuit-against-motorola

"Qualcomm Implements New Corporate Structure," Qualcomm Press Release, October 1, 2012, https://www.qualcomm.com/news/releases/2012/10/qualcomm-implements-new-corporate-structure

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

"Qualcomm Inc. Investor Day," Qualcomm, Cristiano Amon, November 16, 2021, https://d1io3yog0oux5.cloudfront.net/_9145a2f999cf4f4b2b0c08721e637935/qualcomm/db/703/7061/file/QCOM-USQ_Transcript_2021-11-16_Investor%20Day%20(1).pdf

"Qualcomm Inc., Investor Day," Qualcomm, Cristiano Amon, November 19, 2024, https://s204.q4cdn.com/645488518/files/doc_events/2024/Nov/19/Qualcomm-Investor-Day-2024_Cristiano_StrategicFramework_11-19-24.pdf

"Qualcomm Incorporated 2009 and Qualcomm Incorporated 2011 Update," Harvard Business School Teaching Notes, May 25, 2011, https://hbsp.harvard.edu/product/711463-PDF-ENG

"Qualcomm Investor Day 2024: IoT and Automotive Diversification Update," Qualcomm, November 19, 2024, https://www.qualcomm.com/content/dam/qcomm-martech/dm-assets/images/company/company/events/investor-day-2024/QCOM-Investor-Day-2024-transcript.pdf

"Qualcomm Oryon CPU," Qualcomm, https://www.qualcomm.com/products/technology/processors/oryon, accessed August 20, 202

"Qualcomm Sets New Growth Targets, Showcasing Company's Opportunity as On-Device AI Accelerates Demand for its Technologies," Qualcomm Inc., Press Release, November 19, 2024 https://investor.qualcomm.com/news-events/press-releases/news-details/2024/Qualcomm-Sets-New-Growth-Targets-Showcasing-Companys-Opportunity-as-On-Device-AI-Accelerates-Demand-for-its-Technologies/default.aspx

"Qualcomm to Acquire Alphawave Semi," Qualcomm, June 9, 2025, https://www.qualcomm.com/news/releases/2025/06/qualcomm-to-acquire-alphawave-semi

"Qualcomm to Bring RISC-V Based Wearable Platform to Wear OS by Google," Qualcomm, October 17, 2023, https://www.qualcomm.com/news/releases/2023/10/qualcomm-to-bring-risc-v-based-wearable-platform-to--wear-os-by-

"Quintauris: Accelerating RISC-V Innovation for next-gen Hardware ," November 4, 2024, https://www.quintauris.com/quintauris-accelerating-risc-v-innovation-for-next-gen-hardware

"RISC-V International Governance," RISC-V, https://riscv.org/about/board/, accessed August 13, 2025

"Samsung Apologizes for Falling Behind in AI Chips Race," Wall Street Journal, October 8, 2024, https://www.wsj.com/tech/samsungs-chip-technologies-fall-behind-in-early-innings-of-ai-game-67f0f9af

"Samsung Electronics Co. Ltd.," Wall Street Journal, https://www.wsj.com/market-data/quotes/kr/xkrx/005930, accessed August 26, 2025

"SCO Sends Warning Letters To Linux Users," InformationWeek, December 22, 2003, https://www.informationweek.com/it-leadership/sco-sends-warning-letters-to-linux-users

B - 21

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

"Silicon Design Reimagined," Nuvia, Inc., January 15, 2021, https://web.archive.org/web/20210115193713/https://nuviainc.com/

"Snapdragon Summit," SixFiveMedia, https://www.sixfivemedia.com/our-events/snapdragon-summit, accessed September 4, 2025

"Supreme Court Amicus Brief Regarding Morgan Stanley Capital Group Inc. v. Public Utility District No. 1 of Snohomish County, Washington," December 2007, https://appext.hks.harvard.edu/publications/getFile.aspx?Id=451

"The 5 Best Features of the Meta Quest 3," Qualcomm, January 12, 2024, https://www.qualcomm.com/snapdragon/news/the-5-best-features-of-the-meta-quest-3

"The Largest Companies by Market Cap in August 2025," The Motley Fool, August 4, 2025 https://www.fool.com/research/largest-companies-by-market-cap/

"The Value of Making Concessions In Negotiation," Red Bear, November 12, 2024, https://www.redbearnegotiation.com/blog/making-concessions-in-negotiation

"Too Good to Lose: America's Stake in Intel," Center for Strategic and International Studies, November 12, 2024, https://www.csis.org/analysis/too-good-lose-americas-stake-intel

"Top 10 Semiconductor Foundries in the World," Cytech Systems, March 13, 2024 https://www.cytechsystems.com/news/top-10-semiconductor-foundries

"Trial Sheds Light on Q'comm Patent Holdings, Royalty Rates," EETimes, January 21, 2019, https://www.eetimes.com/trial-sheds-light-on-qcomm-patent-holdings-royalty-rates

"Understanding Android," Android, https://www.android.com/everyone/facts/, accessed August 29, 2025

"Virtual Reality: Transforming the way we experience reality," Qualcomm, https://www.qualcomm.com/products/mobile/snapdragon/xr-vr-ar/virtual-reality-vr

"What are IP Cores in Semiconductor Design: Types & Advantages," Techovedas, April 21, 2024, https://techovedas.com/what-are-ip-cores-in-semiconductor-design-types-advantages/

"What is Windows on Arm (WoA)?" Arm, https://www.arm.com/glossary/windows-on-arm, accessed September 4, 2025

"Why RISC-V is Inevitable, Calista Redmond, RISC-V International," RISC-V International, April 6, 2023, at 8:33, https://www.youtube.com/watch?v=ktjSvlelKPk&ab_channel=RISC-VInternational

"XR/VR/AR Reimagining reality as we know it," Qualcomm, https://www.qualcomm.com/products/mobile/snapdragon/xr-vr-ar, accessed September 4, 2025

B - 22

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

"Your Negotiation Challenges," Karrass, June 17, 2025, https://www.karrass.com/blog/your-negotiation-challenges

Abner Li, "Report: Arm cancels Qualcomm's instruction set, IP license for chip design," 9to5Google, October 22, 2024, https://9to5google.com/2024/10/22/report-qualcomm-arm-chip-design/

Aditya Bedi, "The foundation of Total Compute: First Armv9 Cortex CPUs," Arm Community, May 25, 2021 https://community.arm.com/arm-community-blogs/b/architectures-and-processors-blog/posts/first-armv9-cpu-cores

Akash Palkhiwala, "Qualcomm Investor Day 2024 Financial Update Presentation," Qualcomm, November 19, 2024, https://www.qualcomm.com/content/dam/qcomm-martech/dm-assets/images/company/company/events/investor-day-2024/Qualcomm-Investor-Day-2024_Akash_FinancialUpdate.pdf

Anand Lal Shimpi, "The ARM Diaries, Part 1: How ARM's Business Model Works," AnandTech, June 28, 2013, https://web.archive.org/web/20130701165406/http://www.anandtech.com/show/7112/the-arm-diaries-part-1-how-arms-business-model-works/2

Andy Patrizio, "Qualcomm makes it official; no more data center chip," Network World, December 12, 2018, https://www.networkworld.com/article/966778/qualcomm-makes-it-official-no-more-data-center-chip.html

Anton Shilov, "Arm-Based CPUs Could Double Notebook PC Market Share by 2027: Report," Tom's Hardware, April 11, 2023, https://www.tomshardware.com/news/arm-based-cpus-set-to-double-notebook-pc-market-share-by-2027

Arjun Kharpal, "Qualcomm to launch data center processors that link to Nvidia chips," CNBC, May 19, 2025, https://www.cnbc.com/2025/05/19/qualcomm-to-launch-data-center-processors-that-link-to-nvidia-chips.html

Arm, "The ARM processor business model," https://developer.arm.com/documentation/dht0001/a/architectures--processors--and-devices/the-arm-processor-business-model, accessed August 22, 2025

Ben Schoon, "Google Pixel grows in US, settling into top 4 spot ahead of Pixel 10 launch," 9to5google, July 28, 2025, https://9to5google.com/2025/07/28/google-pixel-us-market-share-q2-2025/

Ben Schoon, "Qualcomm confirms November 15–17 event to reveal its next Snapdragon flagship," 9to5Google, July 19, 2022, https://9to5google.com/2022/07/19/snapdragon-summit-2022

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Ben Schoon, "Qualcomm is suing Transsion, the largest smartphone maker that doesn't use Snapdragon," 9to5Google, July 12, 2024, https://9to5google.com/2024/07/12/qualcomm-transsion-lawsuit-report

Beth Kindig, "Arm Stock: AI Chip Favorite Is Overpriced," Forbes, Mar 21, 2024, https://www.forbes.com/sites/bethkindig/2024/03/21/arm-stock-ai-chip-favorite-is-overpriced/

Briana Watson, "SOC vs CPU: Breaking Down the Differences and their Optimal Usage," November 15, 2023, https://www.totalphase.com/blog/2023/11/soc-vs-cpu-breaking-down-the-differences-and-their-optimal-usage/

Charles Martin and Malcom Owen, "The history—and triumph —of Arm and Apple Silicon", Apple Insider, April 22, 2024, https://appleinsider.com/articles/24/04/22/the-history----and-triumph----of-arm-and-apple-silicon

Chris Williams, "Arm shells Qualcomm's Snapdragon launch party with latest salvo in license war," The Register, November 16, 2022, https://www.theregister.com/2022/11/16/arm_qualcomm_licensing_latest/

Chris Williams, "Arm sues Qualcomm over custom Nuvia CPU cores, wants designs destroyed," The Register, August 31, 2022, https://www.theregister.com/2022/08/31/arm_sues_qualcomm/

Chris Williams, "Up in arms! Arm kills off its anti-RISC-V smear site after own staff revolt," The Register, July 10, 2018, https://www.theregister.com/2018/07/10/arm_riscv_website/

Congressional Research Service, "Antitrust Law: An Introduction," May 1, 2025, https://www.congress.gov/crs_external_products/IF/PDF/IF11234/IF11234.8.pdf

David Brash, "The ARMv8-A architecture and its ongoing development," Arm Community, December 2, 2014  https://community.arm.com/arm-community-blogs/b/architectures-and-processors-blog/posts/the-armv8-a-architecture-and-its-ongoing-development

David Manners, "Qualcomm data centre business withers away," Electronics Weekly, December 11, 2018, https://www.electronicsweekly.com/news/business/qualcomm-datacentre-business-withers-away-2018-12/

Deepa Prahalad, "Why Trust Matters More Than Ever for Brands," Harvard Business Review, December 8, 2011 https://hbr.org/2011/12/why-trust-matters-more-than-ev

Dominic Rushe, "Myspace sold for $35m in spectacular fall from $12bn heyday," The Guardian, June 30, 2011,  https://www.theguardian.com/technology/2011/jun/30/myspace-sold-35-million-news

Don Fancher, Jennifer Lee, and Debbie McCormack, "Trust: A Critical Asset," Harvard Law School Forum on Corporate Governance, June 17, 2021, https://corpgov.law.harvard.edu/2021/06/17/trust-a-critical-asset/

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Dylan Patel, "Arm's Nuclear Option – Qualcomm Must Cancel Next-Generation Products If Arm Succeeds," SemiAnalysis, November 16, 2022, https://semianalysis.com/2022/11/16/arms-nuclear-option-qualcomm-must/

Dylan Patel, Myron Xie, Afzal Ahmad and Daniel Nishball, "Arm and a Leg: Arm's Quest To Extract Their True Value," SemiAnalysis, September 14, 2023, https://semianalysis.com/2023/09/14/arm-and-a-leg-arms-quest-to-extract/

Exchange Rates, "British Pound to US Dollar History: 2019," https://www.exchangerates.org.uk/GBP-USD-spot-exchange-rates-history-2019.html

Florian Mueller, "BREAKING: Qualcomm settles with China's Transsion (Africa's smartphone market leader): Indian patent lawsuit withdrawn," ip fray, January 16, 2025, https://ipfray.com/breaking-qualcomm-settles-with-chinas-transsion-africas-smartphone-market-leader-indian-patent-lawsuit-withdrawn/

Francisco Cheng, "What is RISC-V, and why we're unlocking its potential," Qualcomm, September 8, 2023, https://www.qualcomm.com/news/onq/2023/09/what-is-risc-v-and-why-were-unlocking-its-potential

Greg Tang, "Intel and the x86 Architecture: A Legal Perspective," The Harvard Journal of Law & Technology, January 4, 2011, https://jolt.law.harvard.edu/digest/intel-and-the-x86-architecture-a-legal-perspective

Gyana Swain, "Arm secures Meta as first customer in chip push, challenging industry giants," ComputerWorld, February 14, 2025, https://www.computerworld.com/article/3825123/arm-secures-meta-as-first-customer-in-chip-push-challenging-industry-giants.html.

Haroun Adamu, "Did you know: Samsung makes a lot of money from iPhones," Android Authority, June 11, 2025, https://www.androidauthority.com/did-you-know-samsung-apple-partnership-3426411/

Herbert Hovenkamp, "Antitrust Market Definition: the Hypothetical Monopolist and Brown Shoe," Network Law Review, April 4, 2024, https://www.networklawreview.org/hovenkamp-market-definition/

Ian King, "Arm to Scrap Qualcomm Chip Design License in Feud Escalation," Bloomberg, October 22, 2024 (updated on October 23, 2024), https://www.bloomberg.com/news/articles/2024-10-23/arm-to-cancel-qualcomm-chip-design-license-in-escalation-of-feud

Ian King, "Qualcomm Plans Exit From Server Chips," Bloomberg, May 7, 2018 https://www.bloomberg.com/news/articles/2018-05-07/qualcomm-is-said-to-plan-exit-from-server-chips-amid-cost-cuts

Imogen Beech, "6 real-life coopetition examples," Breezy, September 6, 2023, https://breezy.io/blog/coopetition-examples

B - 25

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Jeffrey Mervis, "To beat China, new U.S. law offers billions for microchip research and training," Science, September 6, 2022, https://www.science.org/content/article/beat-china-new-u-s-law-offers-billions-microchip-research-and-training

Jessica Coacci, "Here's the one-page memo Warren Buffett sent to his managers every two years for over 25 years," Yahoo! Finance, August 6, 2025 https://finance.yahoo.com/news/one-page-memo-warren-buffett-140107224.html

Jim McGregor, "Arm Squares Off Against Qualcomm: Day 2," December 18, 2024, https://www.forbes.com/sites/tiriasresearch/2024/12/18/arm-squares-off-against-qualcomm-day-2/

Joseph Calamia, Explained: The Physics-Defying Flight of the Bumblebee, Live Science, February 25, 2011 https://www.livescience.com/33075-how-bees-fly.html

Jowi Morales, "Qualcomm claims it owns 10% of U.S. Windows PC retail market for devices priced $800 and up," Tom's Hardware, February 6, 2025, https://www.tomshardware.com/tech-industry/qualcomm-claims-it-owns-10-percent-of-u-s-windows-pc-retail-market-for-devices-priced-usd800-and-up

Kelsey Ziser, "MediaTek and Qualcomm's rivalry heats up in 5G smartphone market – Omdia," Light Reading, July 16, 2024, https://www.lightreading.com/smartphones-devices/mediatek-and-qualcomm-s-rivalry-heats-up-in-5g-smartphone-market-omdia

Khadija Khartit, "When Does It Make Sense for a Company to Pursue Vertical Integration?" Investopedia, February 6, 2025, https://www.investopedia.com/ask/answers/012715/when-does-it-makes-sense-company-pursue-vertical-integration.asp

Linley Gwennap, "Editorial: Arm's No-Win Legal Fight," Tech Insights, https://www.techinsights.com/blog/editorial-arms-no-win-legal-fight, accessed August 29, 2025

MacroTrends, "QUALCOMM Research and Development Expenses 2010-2025," https://www.macrotrends.net/stocks/charts/QCOM/qualcomm/research-development-expenses

MacroTrends, "QUALCOMM Revenue 2010-2025," https://www.macrotrends.net/stocks/charts/QCOM/qualcomm/revenue

Majeed Kamran, "Qualcomm's Alphawave Acquisition Targets Data Centers and AI, But What's Next?" EE Times, June 9, 2025, https://www.eetimes.com/qualcomms-alphawave-acquisition-targets-data-centers-and-ai-but-whats-next/

Mark Liu, "x86 Server CPUs Remain Market Mainstream, 7nm Platform May Help AMD to Increase Market Share, Says TrendForce," TrendForce, November 28, 2018, https://www.trendforce.com/presscenter/news/20181128-10076.html

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Matthew Garrahan, Tim Bradshaw, and David Keohane, "Arm to launch its own chip in move that could upend semiconductor Industry," Financial Times, February 13, 2025, https://www.ft.com/content/95367b2b-2aa7-4a06-bdd3-0463c9bad008

Max Cherney, "Exclusive: Arm aims to capture 50% of PC market in five years, CEO says," Reuters, June 3, 2024, https://www.reuters.com/technology/arm-aims-capture-50-pc-market-five-years-ceo-says-2024-06-03/

Melissa Riofrio, "Surface Pro X revealed: Thin, light, and supercharged with a custom SQ1 ARM chip," PC World, October 2, 2019, https://www.pcworld.com/article/398146/microsofts-surface-pro-x-is-thin-light-and-supercharged-with-a-custom-sq1-arm-chip.html

Mike Freeman, "Qualcomm laying off more workers in San Diego, North Carolina to cut costs," The San Diego Union-Tribune, December 8, 2018, https://www.sandiegouniontribune.com/2018/12/07/qualcomm-laying-off-more-workers-in-san-diego-north-carolina-to-cut-costs/

Mike Wehner, "AIM is officially dead, and your childhood means nothing," Yahoo!News, October 6, 2017, https://www.yahoo.com/news/aim-officially-dead-childhood-means-nothing-174900787.html

Mike Wuerthele, "Apple & ARM's iPhone & Mac chip partnership will continue for decades," Apple Insider, September 5, 2023, https://appleinsider.com/articles/23/09/05/apple-arms-iphone-mac-chip-partnership-will-continue-for-decades

Nikita Kumari, "From Idea to Silicon: How Custom Chip Design Drives Innovation," BISinfotech, July 16, 2025, https://www.bisinfotech.com/from-idea-to-silicon-how-custom-chip-design-drives-innovation

Patent Dispute Report: 2024 Mid-Year Report," Unified Patents, July 22, 2024, https://www.unifiedpatents.com/insights/2024/7/22/patent-dispute-report-2024-mid-year-report

Paul Alcorn, "Intel and AMD are unlikely allies in new x86 ecosystem advisory group," Tom's Hardware, October 15, 2024, https://www.tomshardware.com/pc-components/cpus/intel-and-amd-forge-x86-ecosystem-advisory-group-that-aims-to-ensure-a-unified-isa-moving-forward

Paul Williamson, "Arm Continues to Accelerate IoT Software Development with New Partnerships," Arm Newsroom, November 7, 2022, https://newsroom.arm.com/news/arm-continues-to-accelerate-iot-software-development-with-new-partnerships

Phill Powell, "Types of central processing units (CPUs)," https://www.ibm.com/think/topics/central-processing-unit-types

Qualcomm Financial Summary downloaded from LSEG Data & Analytics

Rajeev Dhir, "Negotiation: Stages and Strategies," Investopedia, June 04, 2024, https://www.investopedia.com/terms/n/negotiation.asp

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Rajesh Pandey, "Qualcomm wants Android device makers to pay even more for its next flagship chip," Yahoo Tech, December 2, 2024, https://tech.yahoo.com/phones/articles/qualcomm-wants-android-device-makers-092330024.html

Rashika Singh, "Qualcomm shares slide as Apple modem shift, tariffs raise growth concerns," Yahoo Finance, July 31, 2025, https://finance.yahoo.com/news/qualcomm-shares-slide-apple-modem-085843911.html

Robert Triggs, "Arm vs x86: Instruction sets, architecture, and all key differences explained", Android Authority, December 20, 2023 https://www.androidauthority.com/arm-vs-x86-key-differences-explained-568718/

Roddy Urquhart, "Systems & Design: Opinion, Semiconductor Engineering," March 29, 2021, https://semiengineering.com/what-does-risc-v-stand-for/

Ryan Bourne, "Is This Time Different? Schumpeter, the Tech Giants, and Monopoly Fatalism," Cato Institute, June 18, 2019 https://www.cato.org/publications/policy-analysis/time-different-schumpeter-tech-giants-monopoly-fatalism

Saul Sugarman, "So I visited the last Blockbuster on the planet, and all I got was this t-shirt," The Bold Italic, December 8, 2023, https://thebolditalic.com/so-i-visited-the-last-blockbuster-on-the-planet-and-all-i-got-was-this-t-shirt-ffc6d2ed414d

Sebastian Moss, "Qualcomm announces data center CPUs, will support Nvidia's NVLink Fusion," Data Center Dynamics, May 20, 2025 https://www.datacenterdynamics.com/en/news/qualcomm-announces-data-center-cpus-will-support-nvidias-nvlink-fusion/

Semiconductor Industry Association, "2022 State of the U.S. Semiconductor Industry," November 2022, https://www.semiconductors.org/wp-content/uploads/2022/11/SIA_State-of-Industry-Report_Nov-2022.pdf

Shapiro, Carl, "Competition and the Small Business Landscape: Fair Competition and a Level Playing Field," Opening Statement of Professor Carl Shapiro House Committee on Small Business March 1 2022 https://www.congress.gov/117/meeting/house/114436/witnesses/HHRG-117-SM00-Wstate-ShapiroC-20220301.pdf

Simon Sharwood, "Arm gives up on killing off Qualcomm's vital chip license," The Register, February 6, 2025, https://www.theregister.com/2025/02/06/arm_qualcomm_nuvia/

Skye Jacobs, "Former Intel engineers from AheadComputing to break CPU performance limits with RISC-V design," TechSpot, June 12, 2025, https://www.techspot.com/news/108281-former-intel-engineers-form-aheadcomputing-break-cpu-performance.html

Stan Gibson, "AWS ARM-based chips could shift microprocessor market," TechTarget, April 28, 2020, https://www.techtarget.com/searchaws/feature/AWS-ARM-based-chips-could-shift-microprocessor-market

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Stephen Nellis and Jane Lee, "Arm sues Qualcomm, aiming to unwind Qualcomm's $1.4 bln Nuvia purchase," Reuters, September 1, 2022, https://www.reuters.com/legal/chips-tech-firm-arm-sues-qualcomm-nuvia-breach-license-trademark-2022-08-31

Stephen Nellis, "Apple inks new long-term deal with Arm for chip technology, according to filing," Reuters, September 5, 2023 https://www.reuters.com/technology/apple-inks-new-long-term-deal-with-arm-chip-technology-filing-2023-09-05/

Stephen Shankland, "SCO targets Linux customers," CNET, May 14, 2003, https://www.cnet.com/tech/services-and-software/sco-targets-linux-customers/

Steve McDowell, "Qualcomm's Game-Changing Move Into Automotive And Industrial IoT," Forbes, January 28, 2025, https://www.forbes.com/sites/stevemcdowell/2025/01/28/qualcomms-game-changing-move-into-automotive-and-industrial-iot/

Steve Mollman, "Blockbuster 'laughed us out of the room,' recalls Netflix cofounder on trying to sell company now worth over $150 billion for $50 million," Fortune, October 22, 2024, https://finance.yahoo.com/news/blockbuster-laughed-us-room-recalls-174322621.html

Swagath Bandhakavi, "FTC ends legal challenge against Microsoft's $69bn Activision Blizzard acquisition," Tech Monitor, May 23, 2025 https://www.techmonitor.ai/digital-economy/big-tech/ftc-microsoft-activision-blizzard-deal

Timothy Green, "Qualcomm is Going After Intel and AMD in This Lucrative Market," January 16, 2025,  https://finance.yahoo.com/news/qualcomm-going-intel-amd-lucrative-101500205.html

Tobias Mann, "Jury spares Qualcomm's AI PC ambitions, but Arm eyes a retrial," The Register, December 23, 2024, https://www.theregister.com/2024/12/23/qualcomm_arm_trial/

Tom Simonite, "With Its Own Chips, Apple Aims to Define the Future of PCs," Wired, Nov 10, 2020, https://www.wired.com/story/own-chips-apple-aims-define-future-pcs/

U.S. Department of Justice & The Federal Trade Commission, "Vertical Merger Guidelines," June 30, 2020 (now withdrawn), https://www.ftc.gov/system/files/documents/reports/us-department-justice-federal-trade-commission-vertical-merger-guidelines/vertical_merger_guidelines_6-30-20.pdf

U.S. Department of Justice & The Federal Trade Commission, Commentary on the Horizontal Merger Guidelines, March 2006, https://www.justice.gov/d9/383663.pdf

U.S. Department of Justice & The Federal Trade Commission, Merger Guidelines, December 18, 2023, https://www.justice.gov/d9/2023-12/2023%20Merger%20Guidelines.pdf

Victor Keegan, "Will MySpace ever lose its monopoly?" The Guardian, February 8, 2007, https://www.theguardian.com/technology/2007/feb/08/business.comment

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Wayne Ma & Cory Weinberg, "How a Lopsided Apple Deal Got Under Arm's Skin," The Information, November 29, 2023, https://www.theinformation.com/articles/how-a-lopsided-apple-deal-got-under-arms-skin

Will Abbey, "Flexible Licensing, Boundless Innovation: How Arm is Accelerating Partner Success," Arm, November 1, 2023, https://newsroom.arm.com/blog/arm-licensing-models

Young Hyun Jun, "Dearvalued [sic] customers, investors, and employees of Samsung Electronics," Samsung, October 8, 2024, https://www.samsung.com/global/ir/reports-disclosures/public-disclosure-view.84206/

Zac Hall, "Apple makes up less than 5% of Arm's revenue, and Arm can't do anything about it," 9to5mac, November 29, 2023, https://9to5mac.com/2023/11/29/apple-arm-licensing-revenue/

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

**APPENDIX C: TRANSCRIPT OF INTERVIEW OF RENE HAAS, ARM'S CEO, OCTOBER 22, 2024**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

**Source: "Arm CEO on Intel, Chips, AI, Listing in US," Bloomberg Technology, YouTube, October 22, 2024, https://www.youtube.com/watch?v=6FnBz8rxWUY**

*Peter Elstrom (Executive Editor Technology Bloomberg, PE): That's why I have you. And thank you all for joining us. We have a lot of questions for you, so we'll go ahead and get started. First, I begin. You are not just the of Arm you're now a podcaster. You began in your spare time I guess. You began a new podcast is called 'Tech Unheard' and your first interview was was with Jensen Huang. That's right which I gave a listen to. First of all, what gave you the idea to start a podcast? And secondly, how do you find the time as CEO to do something like that too?*

Rene Haas (Arm CEO): Yeah. So first off, thank you again for for having me here. I'm an amateur at this, so you don't have to worry about your day job as far as podcasting goes. You know, we were talking with some of our board members about how to use a unique medium to talk to two leaders, talk about the Arm story. And one of the ideas that was suggested was was a podcast. I was a radio disc jockey actually spinning records in university. So, I had a little bit of experience and aspirations to do that kind of work early in my life. So, in talking with some folks, you know, around the team, we said, you know, let's let's try this and let's do something a little bit more innovative and talk to other leaders and give them a perspective of maybe a conversation that they may not naturally have with someone who's professional like you are. So, yeah, we kicked it off. Please listen, it's on Apple Music, Spotify and Jensen was my first guest.

*Peter Elstrom: Great, Great. Congratulations. And, you know, in terms of the business Arm was acquired by SoftBank for about three two billion dollars. At some point, SoftBank agreed to sell it for about 40 billion dollars. That deal didn't go through, of course, NVIDIA was supposed to buy it. That deal didn't go through. Now, you went public just over a year ago, companies worth roughly 160 billion dollars, which seems like a successful IPO. But could you talk to us about what the business model for Arm has been and how it's evolved over time, over that period of time? And especially, what's the strategy going forward?*

Rene Haas: Yeah, well, thank you for the you know, for the nice words. 30-year-old plus company. Our business model for most of our time on earth, if you will, was very horizontal in that we had a licensing model. We develop IP. Our products are primarily CPUs. The business model is very horizontal in nature, meaning that we designed a very general-purpose product,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

very power efficient product, and then license it to customers independent of the vertical market. And in other words, we didn't really target a certain vertical. I took over the core IP business right after SoftBank bought Arm and we pivoted to a more of a vertical approach, meaning that we now have products very specific for the data center, very specific for automotive, very specific for IoT. Smartphones we were born. And that diversification really allowed us to expand into many new markets with brand new products. SoftBank buying Arm in 2016 allowed us to invest in those new areas. So fast forward the result. What you're seeing now in terms of performance is that strategy. You know, going forward as we think about the next number of years, what we're seeing in the marketplace is a need for more solutions. Chips are getting increasingly more difficult to build. It takes a long time to design a chip, takes even longer to fabricate the chip. So, the more that Arm can do to help customers get to market faster is helpful. So, we're now developing solutions, what we call "CSSs" that get people to market sooner and allow them to get more profitably in a sooner way.

*Peter Elstrom: Mm hmm. Okay. I want to talk about AI. And in particular, the opportunities in AI. There is some debate, as we've referred to, I think, in a couple of these sessions about whether there's a bubble in AI. And I'm going to assume that you think that there are real opportunities there. But can you talk about what Arm's role is there and how you see the company evolving to take advantage of those opportunities?*

Rene Haas: So, one of the most unique things about our company is the fact that the device that we build, the CPU, we estimate that 70% of the world's population touches Arm in some way. We're in security cameras, automobiles, PCs, smartphones, data center. And what that means is every workload, whether it's an application, an operating system or AI, runs through Arm in some way. So, that means AI. is going to run on Arm, period. And we're the only company on the planet that can run those AI workloads from the smallest devices on the edge. Again, a wearable, glasses, watch, phone to the data center. So, for us, AI is a gigantic opportunity in terms of growth going forward because AI is going to be everywhere. And as far as a bubble goes, I just don't ascribe to that. I look at things such as when people say, Gosh, is it overhyped? Or the stocks have gone down last quarter. That's almost like saying should I short AT&T in 2000 because the Internet is not going to happen. Or if Ford was a stock in 1907, would I short them? Because the automobile is not going to happen. It's just not. I mean, AI is we've seen such

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

advancement across the AI in the last couple of years that the amount of innovation that it's going to drive is just going to be incredible.

*Peter Elstrom: Okay. Okay. The chip company that probably has taken the most opportunity that has been able to capitalize the most on AI so far is NVIDIA. Chip maker in your space. They now have a near monopoly in terms of the highest end AI accelerators. How do you see that evolving in the future? And are there opportunities for Arm in particular to be able to play in that space and drive real revenue from?*

Rene Haas: Yeah. So, we're there already. NVIDIA's most advanced chip called the GB200, which is Grace Blackwell. Microsoft just announced that they're going to be deploying Grace Blackwell, the most advanced NVIDIA chip in their data centers that uses the Arm CPU. So, Grace is the Arm CPU. Blackwell Is the Nvidia GPU. So, Arm is there already. So, we are going to play in the most advanced data centers using AI. Arm, Arm will be there. I think what's most exciting for us, as I mentioned though, is the fact that not only will we be in the data center for training these algorithms, ultimately the training has to be transferred into inference, and training is the teacher inference is the student. Inference is actually running the workload and inference actually running that AI agent that's going to happen in the data center, that's going to happen in the car, that's going to happen on your watch. That's going to happen in glasses, that's going to happen in phones, and everywhere it happens, it's going to run on Arm. So, it's going to be a gigantic opportunity for us. The data center is just one place.

*Peter Elstrom: Mm hmm. Okay. So, you see Arm having opportunities kind of from the beginning to the end.*

Rene Haas: More than, more than opportunities. The agents will run locally. And the reason for that is you'll have a hybrid situation where some of that will run in the cloud. Some of it will run in your local device. Again, your glasses, your wearable, your phone. But locally, what you'll be able to add is security, things that can make sure it's private to you that not all your data is being passed to the cloud and vice versa. So yeah for for Arm I think it's going to be just an amazingly large opportunity.

*Peter Elstrom: Okay. As we were talking about before, I just moved from Japan where we spent a lot of time looking at SoftBank and especially Masayoshi Son's ambitions. We've written stories*

C - 3

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

*about how SoftBank is looking at ways to enter the AI chip market and particularly to compete with NVIDIA, quite directly in GPUs. He has a secret plan "Izanagi" that we've written about in the past. How does* Arm *isn't still 90% owned by SoftBank? How does* Arm *fit into that equation?*

Rene Haas: Yeah, so no, no product launch announcements today. So, nothing I can say about products coming out that you've written about. I can say that on the SoftBank board member, I do advisory work for SoftBank. I talked to Masa all the time. It's no secret that he is a big believer in AI has been for quite some time. He's talked about it actually, probably as long as any of the folks out there. I think his vision in terms of where it's all coming together now, you can start to see the pieces of it as I just described. Where does Arm fit  - all those AI workloads are going to run on Arm somewhere somehow. So that's the reason that we spend a lot of time talking to SoftBank about the future.

*Peter Elstrom: Okay. Okay. Earlier we had the ASML CEO on and he was talking about some of the challenges that they're facing in the market. They surprised investors last week as we talked about. And it does seem that there's a little bit of a disconnect in the market where many people see opportunities. ASML reported that their orders were about half what analysts had thought they were going to be. Seems there are certain areas of the chip industry that are struggling quite a bit. And on the other end you have Sam Altman talking about how we need more capacity in the chip industry. We need billions of dollars, maybe trillions of dollars of investment. What is the disconnect and how does that get resolved?*

Rene Haas: Yeah, so there's a lot to unpack there. Where Arm plays, as I mentioned because 70 % of the world's population uses Arm. And I think 300 billion chips have shipped since we were started that have Arm inside. And every year about 30 billion chips. We have a unique view into the industry because just about every digital device uses Arm. There are some markets that aren't accelerating as fast as others and candidly those are the ones that aren't using AI in a very large way. But in areas that can use AI and will use AI, people can't go fast enough. And I'll give you an example. Many of the hardware devices that are being introduced today were designed two or three years ago. That means the chips were designed two or three years ago. The chips that are going in your phones or your wearables. Those were all invented before ChatGPT was released

C - 4

**A1284**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

or before Lamo was released. So what we're seeing on one end of the industry is just a rush to develop more and more chips that have this AI capability. Now it takes time. You know, chips aren't built overnight. In fact, it takes from the time we engage a partner, you know, two or three years at least until that comes to market. So I think you'll see some of these new products coming out. I think what Sam is talking about is just generally the ceiling to get to AGI. Artificial general intelligence requires more compute. And the more compute you have, the better the models get. So, I see. I see both. But generally speaking, I'm pretty optimistic about the growth for our industry.

*Peter Elstrom: Okay. Okay. We were talking about this a bit before. One of the gating factors is making sure that you have chip manufacturers who can make the most advanced chips. TSMC seems to be gaining market share right now as a couple of the key competitors struggle, Intel in particular. And Samsung also has been struggling a bit. They're both trying to move into the foundry business a bit in competition with TSMC. What what are the dangers around having TSMC garner so much market share in foundry? And is it good for the industry or would it be better if there's a more diversified manufacturing base for the industry?*

Rene Haas: Yeah, TSMC is an amazing company. They've just done so much for the industry relative to the innovation, how they work with partners, etc. etc. If you remove semiconductor manufacturing or foundry for a moment and just step back and say, is it healthy for any industry to have a one dominant supplier and then add on top of that a dominant supplier that's largely concentrated in one part of the world? Not, not really. So as a result, I think it's necessary just in terms of diversity of supply base, to have more and more advanced manufacturing and geographic diversity. Fabs in the United States. Fabs in Europe. Fabs in India. Fabs in Saudi Arabia. I think over time, we're going to see not only more suppliers, but geographic diversity as well.

*Peter Elstrom: Okay. Governments obviously are investing a lot in that very question. You're seeing the United States do it. You're seeing Europe do it. Japan has spent a lot of money on it, too. Do you think that's making progress at this point? Do you see light at the end of that tunnel?*

Rene Haas: It's the the capital expenditures required for these fabs are enormous. TSMC, Intel, Samsung, I think their CapEx is anywhere between 30 to 35 billion dollars a year in new

C - 5

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

factories. And if you start looking at the revenues that these companies produce, you start very quickly looking at, oh my gosh, that is a lot of money to invest. Now, on one hand, you can look at it and say, well, the demand will be there, AI, etc., etc.. But it doesn't take much in terms of a year slowdown in demand and the companies have a really negative financial outcome. So, yes, governments have been involved, I think should be involved in my opinion. We saw in the U.S. for the very first time a policy act around CHIPS Act to put funding into the fabs, which I generally a big supporter of. I think it's necessary.

*Peter Elstrom: Okay. Let's talk a little bit more about Intel and their struggles. You grew up in a chip industry where Intel was really the dominant player, kind of set the pace for technology evolution over time. Now we're openly talking about whether Intel is going to be broken up, maybe sold into pieces. What kind of opportunities are there for* Arm *within that space as Intel goes through these struggles?*

Rene Haas: Yes, we work very closely with Intel. It's a bit of strange bedfellows. Many folks would consider Arm and Intel to be natural competitors on the product space. But what's very important to us, back to this discussion around supply base is that "Intel Foundry Services" IFS is successful. We do a lot of work with Intel as we do with Samsung and TSMC to ensure that our products can be manufactured there. We work very closely with their engineers to ensure that the leading edge technology can can run on Arm. So, we want to see Intel successful and we want to see IFS successful. I think it might be strange to hear the Arm CEO say that, but we want Intel manufacturing to be successful.

*Peter Elstrom: Okay. Bloomberg reported that* Arm *took a pretty close look at buying a part of Intel. Would you like to comment?*

Rene Haas: Nothing I can say on that one.

*Peter Elstrom: "Okay. All right.  Thank you. Thank you. I wanted to turn. You talked about are moving up the value stack kind of moving beyond its traditional place in the industry. And as you have moved up the value chain, you've gotten closer to doing what some of your customers do."*

Rene Haas: "Right."

C - 6

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

*Peter Elstrom: "Getting closer to being able to do these complete designs. And. Yes. It speeds up innovation, as you were alluding to, but it also puts you in closer competition with some of your customers. You have a lawsuit with Qualcomm in particular."*

Rene Haas: "Yeah."

*Peter Elstrom: "Isn't it in both companies interest to settle that and to resolve the legal dispute at this point? Or what would you say?"*

Rene Haas: "These are these are tough questions. It's a good thing I'm a podcaster, so I know what's coming. You know, first thing on, competing with our customers, you know, it's rather complicated because if you look at some of our customers, our customers are Amazon. Our customers are Microsoft. Our customers are Apple. Our customers are Tesla. They all build chips using Arm. I'm not going to build an electric car. I'm not going to build a phone. I'm not going to build a data center. So, to look at the value chain relative to who builds chips, relative to whether you're end business is a chip business or a product business. It's gotten a lot more gray. We follow what the industry is demanding, and what the industry wants to see is solutions getting to market faster. And that's what we're focused on. Qualcomm. Not much I can say on that, other than we're headed to a trial. I think it's the third week in December. We feel very good about our case. We think our case is quite simple and straightforward. And as I said, December, we'll find out."

*Peter Elstrom: "Okay. So, you head to the courtroom then. One last question. I think we have time for this. In this audience in particular, there's a lot of interest in whether* Arm*, which is historically a British company, whether they would ever look at doing some sort of dual listing. Of course, we've heard about this many times in the past. A year ago when you did your IPO, you decided you would do it in the U.S. instead. One of the opportunities for listing here, what are the pluses and minuses of that sort of thing?"*

Rene Haas: "Yeah, we did. We listed in New York over over a year ago. And at that time our comments were we would look at a secondary listing. We're still open to it. It's not something that's top of mind right now, quite candidly. But we'll continue to have discussions with both stakeholders in the government and in the local exchange. We'd love to find a way at some point

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

in time, but also at the same time, there's a lot of other things that keep me busy relative to my day job."

*Peter Elstrom: "Okay. All right. Rene Haas, thank you very much. Please join me in welcoming. Thank you. Thank you."*

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

**APPENDIX A: PROFESSOR TIMOTHY S. SIMCOE'S CV**

# Timothy S. Simcoe

| | | |
|---|---|---|
| CONTACT | Boston University Questrom School of Business<br>595 Commonwealth Avenue<br>Boston, MA 02215 | (510) 685-2020<br>tsimcoe@bu.edu<br>http://people.bu.edu/tsimcoe |

ACADEMIC
EMPLOYMENT

**Boston University, Questrom School of Business**
- David J. McGrath Jr. Professor in Strategy & Innovation, 2024-*present*.
- Professor of Strategy & Innovation, 2022-2024.
- Associate Professor of Strategy & Innovation, 2013-2022.
- Assistant Professor of Strategy & Innovation, 2009-2013.

**University of Toronto, Joseph L. Rotman School of Management**
- Assistant Professor of Strategic Management, 2004-2009.

APPOINTMENTS

**President's Council of Economic Advisers**
- Senior Economist, 2014-2015.

**National Bureau of Economic Research**
- Research Associate, Productivity Program, 2016-*present*.
- Faculty Research Fellow, Productivity Program, 2009-2016.

**BU Technology & Policy Research Initiative**
- Faculty Director, 2020-*present*.

EDUCATION

**University of California at Berkeley**
- Ph.D., Business Administration, 2004
- M.A., Economics, 2003

**Harvard University**
- A.B., Applied Math & Economics, 1996

PUBLICATIONS

**Refereed Articles**

Mezzanotti, F. and T. Simcoe. Innovation, Patenting and Appropriability: Survey Evidence from a Nationally Representative Sample of U.S. Firms, *Review of Economics and Statistics*, forthcoming.

R. A. Gibbs, T. Simcoe and D. Waguespack. Does Earnings Management Matter for Strategy Research *Strategic Management Journal*, forthcoming.

B. Ganglmair, E. Tarantino and T. Simcoe. Learning When to Quit: An Empirical Model of Experimentation in Standards Development. *AEJ: Microeconomics*, 17(3):164–190, August 2025.

C. Righi and T. Simcoe. Patenting Inventions or Inventing Patents? Continuation Practice at the USPTO. *RAND Journal of Economics*, 54(3):416–442, Fall 2023.

J. Baron, B. Ganglmair, N. Persico, T. Simcoe and E. Tarantino. Representation is Not Sufficient for Selecting Gender Diversity. *Research Policy*, 53(6):104994, July 2024.

R. Bekkers, C. Catalini, A. Martinelli, C. Righi and T. Simcoe. Disclosure Rules and Declared Essential Patents. *Research Policy*, 52(1):104618, January 2023.

E. Basker and T. Simcoe. Upstream, Downstream: Diffusion and Impact of the Universal Product Code. *Journal of Political Economy*, 129(4):1252–1286, April 2021.

A. King, B. Goldfarb and T. Simcoe. Learning from Testimony on Quantitative Research in Management. *Academy of Management Review*, 46(3):465–488, July 2021.

X. Li and T. Simcoe. Competing or Complementary Labels? Estimating Spillovers in Chinese Green Building Certification. *Strategic Management Journal*, 42(13): 2451–2476, December 2021.

A. Agrawal, C. Rosell and T. Simcoe. Tax Credits and Small Firm R&D Spending. *American Economic Journal: Economic Policy*, 12(1): 1–21. Lead Article, May 2020.

M. Rysman, T. Simcoe and Y. Wang. Differentiation Strategies in the Adoption of Environmental Standards: LEED from 2000 to 2014. *Management Science*, 66(9): 4173–4192, September 2020.

T. Simcoe and J. Watson. Forking, Fragmentation and Splintering. *Strategy Science*, 4(4):251–342, December 2019.

F. Mezzanotti and T. Simcoe. Patent Policy and American Innovation After eBay: An Empirical Examination. *Research Policy*, 48(5): 1271–1281, June 2019.

C. Righi and T. Simcoe. Patent Examiner Specialization. *Research Policy*, 48(1):137–148, February 2019.

M. Lemley and T. Simcoe. How Essential are Standard Essential Patents? *Cornell Law Review*, 104(3): 607–642, March 2019 .

M. Catillon, P. Gertler and T. Simcoe. Who Benefits Most in Disease Management Programs?: Improving Target Efficiency. *Health Economics*, 28(2): 189–203, February 2019.

L. Freedman, I. Cockburn and T. Simcoe. The Economics of Reproducibility in Preclinical Research. *PLoS Biology*, 13(6): e1002165, June 2015.

T. Simcoe and M. Toffel. Government Green Procurement Spillovers: Evidence from Municipal Building Policies in California. *Journal of Environmental Economics and Management*, 68(3):411–434. Lead article, November 2014.

E. Rawley and T. Simcoe. Information, Knowledge and Asset Ownership in Taxicab Fleets. *Organization Science*, 24(3): 831–845, May-June 2013.

J. Farrell and T. Simcoe. Choosing the Rules for Consensus Standardization. *The RAND Journal of Economics*, 43(2): 235–252, Summer 2012.

T. Simcoe. Standard Setting Committees: Consensus Governance for Shared Technology Platforms. *American Economic Review*, 102(1): 305–336, February 2012.

M. Rysman and T. Simcoe. A NAASTy Alternative to RAND Pricing Commitments. *Telecommunications Policy*, 35(11): 1010–1017, December 2011.

A. Galasso and T. Simcoe. CEO Overconfidence and Innovation. *Management Science*, 57(8): 1469–1484, August 2011.

T. Simcoe and D. Waguespack. Status, Quality and Attention: What's in a (Missing) Name? *Management Science*, 57(2): 274–290, February 2011.

A. Mehta, M. Rysman and T. Simcoe. Identifying the Age Profile of Patent Citations: New Estimates of Knowledge Diffusion. *Journal of Applied Econometrics*, 25 (7): 1073–1222, November/December 2010.

E. Rawley and T. Simcoe. Diversification, Vertical Contracting and Diseconomies of

A-2

Scope: Evidence from the Taxicab Industry. *Management Science*, 56(9): 1534–1550, September 2010.

T. Simcoe, S. J. Graham and M. Feldman. Competing on Standards? Entrepreneurship, Intellectual Property and Platform Technologies. *Journal of Economics and Management Strategy*, 18(3): 775–816, Fall 2009.

M. Rysman and T. Simcoe. Patents and the Performance of Voluntary Standard Setting Organizations. *Management Science*, 54(11): 1920–1934, November 2008.

D. Mowery and T. Simcoe. Is the Internet a US Invention? An Economic and Technological History of Computer Networking. *Research Policy*, 31(8-9): 1369–1387, 2002.

J. Macher, D. Mowery and T. Simcoe. eBusiness and the Semiconductor Industry Value Chain: Implications for Vertical Specialization and Integrated Semiconductor Manufacturers. *Industry and Innovation*, 9:155–181, 2002.

### Working Papers

Mezzanotti, F. and T. Simcoe. Research and/or Development: Financial Frictions and Innovation Investment. R&R at *Journal of Finance*

N. Sahoo, T. Simcoe and X. Yang. Effects of Content Sourcing Strategy on Online News Subscription. R&R at *MIS Quarterly*.

D-S. Jeon, Y. Lefouili, Y. Li and T. Simcoe. Ecosystems and Complementary Platforms.

### Other Publications

T. Simcoe. Standard Setting Organizations. Chapter in the *Elgar Encyclopedia on the Economics of Competition and Regulation*, forthcoming.

K. Blind, M. Kenney, A. Leiponen and T. Simcoe. Standards and Innovation: A Review and Introduction to the Special Issue. *Research Policy*, 52(8), October 2023.

J. Contreras, T. Simcoe et al. Preserving the Royalty-Free Standards Ecosystem. *European Intellectual Property Review*, 45(7): 371-375, June 2023.

E. Hovenkamp and T. Simcoe. Tying and Exclusion in FRAND Licensing: Evaluating Qualcomm. *The Antitrust Source*, February 2020.

A. Sesia, T. Simcoe and M. Toffel. Platform LEEDership at the U.S. Green Building Council. Harvard Business School Case 619-027, May 2018.

B. Goldfarb, A. King and T. Simcoe. Heritability of Trust and Distrust Remains Unknown. Letter to *Proceedings of the National Academy of Sciences*, January 2018.

S. Graham, P. Menell, C. Shapiro and T. Simcoe. Final Report of the Berkeley Center for Law & Technology Patent Damages Workshop. *Texas Intellectual Property Law Journal*, 25 (1): 115–142, 2017.

A. Shampine and T. Simcoe. Economics of Patents and Standardization: Network Effects, Hold-up, Hold-out, Stacking. The Cambridge Handbook of Technical Standardization Law, Vol. 1. Cambridge University Press, 2017.

T. Simcoe and C. Righi. Standards, Patents and Innovation. Handbook of Standards and Innovation. Edward Elgar, 2017.

T. Simcoe. How to Make and Keep a Patent Pledge. Pages 285–290 in *Patent Pledges: Global Perspectives on Patent Law's Private Ordering Frontier*. Edward Elgar, 2017.

T. Simcoe. Modularity and the Evolution of the Internet. Chapter 1 in *Economic Analysis of the Digital Economy*. University of Chicago Press, 2015.

A. Agrawal, S.J. Graham, M. Rysman and T. Simcoe. Industry Standards, Intellectual Property and Innovation: Introduction to the Special Issue. *International Journal of Industrial Organization*, 36:1-3 (September 2014).

T. Simcoe. Governing the Anti-commons: Institutional Design for Standard Setting Organizations. In *Innovation Policy and the Economy*, 14:99–128, 2014.

T. Simcoe. Private and Public Approaches to Patent Holdup in Industry Standard-Setting. *Antitrust Bulletin*, 57(1): 59–88, Spring 2012.

J. Farrell and T. Simcoe. Four Paths to Compatibility. pages 34–58 in the *Oxford Handbook of the Digital Economy*. Oxford University Press, 2012.

T. Simcoe. Delay and *de jure* Standardization: Exploring the Slowdown in Internet Standards Development. Pages 260–295 in *Standards and Public Policy*. Cambridge University Press, 2007.

T. Simcoe. Explaining the Increase in Intellectual Property Disclosure. Pages 260–295 in *Standards Edge: The Golden Mean*. Bolin Group, 2007.

T. Simcoe. Open standards and Intellectual Property Rights. Pages 161–183 in *Open Innovation: Researching a New Paradigm*. Oxford University Press, 2006.

D. Mowery and T. Simcoe. Public and Private Participation in the Development and Governance of the Internet. Pages 259–294 in *The Limits of Market Organization*. Russell Sage, 2005.

D. Mowery and T. Simcoe. The Origins and Evolution of the Internet. Pages 229–265 in *Technological Innovation and Economic Performance*. Princeton University Press, 2002.

M. Rysman and T. Simcoe. Measuring the Performance of Standard Setting Organizations. Pages 81–94 in *International Standardization as a Strategic Tool: Commended Papers from the IEC Centenary Challenge 2006*. International Electrotechnical Commission, 2006.

TEACHING    **Boston University Questrom School of Business**
Technology Strategy (MBA and Executive MBA)
Strategy and Innovation (Undergraduate)
Competition, Innovation and Strategy (MBA)
Data Analysis (Executive MBA)
Causal Inference in Management Research (PhD)

**University of Toronto, Rotman School of Management**
Fundamentals of Competitive Strategy (MBA)
Entrepreneurship & Small Business Management (Undergraduate)
Models & Methods in Strategic Management (PhD)

**University of California, Berkeley**
Economic Analysis for Business Decisions, Teaching Assistant (MBA)

A-4

CONSULTING

**Expert Reports, Depositions and Testimony**

United States of America *et al.* (client) v. Google LLC. Eastern District of Virginia. Case No. 1:23-cv-00108.

Apple (client) v. Qualcomm. Southern District of California. Case No. 3:17-CV-0108.

Microsoft (client) v. Motorola. Western District of Washington. Case No. C10-1823-JLR.

HTC Corporation (client) v. Ericsson. Eastern District of Texas. Case No. 6:18-CV-00243-JRG.

ViiV Healthcare, (client) v. Gilead Sciences. District of Delaware. Case No. 1:18-CV-0224-VAC-CJB.

In Re: Qualcomm Securities Class Action Litigation (plaintiff client). Southern District of California. Case No. 3:17-CV-00121-JO-MSB

Fujitsu v. Tellabs (client). Northern District of Illinois, Eastern Division. Civil Action No. 09 CV 04530.

In the Matter of Certain Video Capable Electronic Devices, Including Computers, Streaming Devices, Televisions, Cameras, and Components and Modules Thereof (clients Amazon and Hewlett Packard). U.S. International Trade Commission Investigations Nos. 337-1379 and 337-1380.

In the Matter of Video-Capable Laptop, Desktop Computers, Handheld Computers, Tablets, Televisions, Projectors, and Components and Modules Thereof (clients Acer, AsusTek and HiSense). U.S. International Trade Commission Investigation No. 337-TA-448.

Apple (client) v. Motorola. Western District of Wisconsin. Case No. 11-CV-178.

Lenovo (client) and Motorola Mobility v. InterDigital Technology Corporation et al. District of Delaware. Case No. 19-1590-LPS

3G Licensing, Koninklijke KPN and Orange v. LG Electronics (client). District of Delaware. Case No. 17-cv-85-LPS.

Global Communications (client) v. Direct TV, et al. Northern District of Florida. Case No. 4:12-CV-00651-RH-CAS.

Zenith Electronics, Panasonic, U.S. Philips and The Trustees of Columbia University v. Craig Electronics (client). Southern District of Florida. Case No. 13-CV-80567.

**Other Consulting**

Wireless standards developer (client). Review of bylaws and procedures.

Boston Toronto Group (client). Executive education.

SERVICE

**University Governance**

Strategy & Innovation Department Chair, 2024-*present*

PhD Program Director (2015-2017, 2018-2022.)

**Editorial and Advisory Positions**

American Economic Journal: Economic Policy, Board of Editors, 2021.

Management Science, Associate Editor in Innovation and Entrepreneurship, 2014-present.

Journal of Industrial Economics, Associate Editor, 2013-present.

Management Science, Associate Editor in Business Strategy, 2012-present.

NIST Visiting Expert Committee on US National Standards Strategy for Critical and Emerging Technologies, 2023-24.

National Academy of Sciences, Member of Committee on Intellectual Property Management Practices of Standard Setting Organizations, 2012-2013.

National Academy of Sciences, Member of Committee on the Review of the Small Business Innovation Research and Small Business Technology Transfer Programs at the National Science Foundation, 2019-2021.

Co-founder, Sloan Management Review Strategy Forum, 2018-2023.

Scientific Advisory Board, Global Biological Standards Institute, 2015-2018.

**Doctoral Advising & Committees**

Xia Li, London Business School (Primary Advisor, 2023).

Jeremy Watson, University of Minnesota (Primary Advisor, 2018).

Cesare Righi, Pompeu Fabra University (Primary Advisor, 2017).

Jane Wu, UCLA (Committee Member, 2022).

Sophie Wang, UIBE Beijing (Committee Member, 2021).

Christian Catalini, MIT Sloan School (Committee Member, 2013)

Paul Seaborn, University of Denver (Primary Advisor, 2011)

Jay Horwitz, University of Bocconi (Committee Member, 2011)

Elena Kulchina, Duke University (Committee Member, 2012)

Justus Baron, Ecole des Mines / ParisTech (Committee Member, 2012)

Awards
Innovators Network Foundation Intellectual Property Fellow, 2021-2023
Broderick Award for Excellence in Research, 2022.
Dean's Research Scholar, 2015-2018, 2020-2022
Outstanding Contribution to Questrom Doctoral Programs, 2018
Questrom Full-time MBA Favorite Elective Professor, 2016
BU Questrom Doctoral Student's Association, Distinguished Mentor Award, 2016
John R. Russell Excellence in Teaching Award, Executive MBA, 2013
Management Science Meritorious Service Award (Reviewer), 2010
Rotman Excellence in Teaching Award, Commerce Program, 2008
Glueck Best Paper Award, Academy of Management BPS Division, 2008
Finalist, IEC Centenary Challenge, 2006
Finalist, Organization Science Dissertation Proposal Competition, 2003

Grants
Intel Corporation Research Gift, 2017-2020
Bell Canada University Labs, 2007-2008
Connaught New Faculty Start-Up Award, 2004-2008
Berkeley Center for I.T. Research in the Interest of Society, 2003-2004
Intel Corporation Robert M. Noyce Memorial Fellowship, 2001-2002
Haas School of Business Ph.D. Fellowship, 1999-2000
Harvard College Fellowship, 1992-1995

PRIOR WORK
EXPERIENCE

**Ernst & Young LLP**

Senior Consultant, Center for Business Innovation, Boston MA, 1998-1999

Consultant, E&Y Economics Consulting, Washington DC, 1996-1998

OTHER

**Professional Societies**

American Economics Association, Academy of Management, Strategy Research Forum, International Society for New Institutional Economics

**Computer Code**

STATA xtpqml: Robust inference in fixed-effects poisson regression

STATA mtad: Multinomial test of agglomeration and dispersion

PERSONAL

Married: Stephanie Tobias Gates (August 2002)

Children: Katherine, Anne and Theodore

Interests: Michigan Sailing, North Haven Golf Club, Harvard Alumni Jazz Band

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

### APPENDIX B: MATERIALS RELIED UPON

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

## Legal Documents

"Arm's First (Corrected) Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1-11)," Arm Ltd., March 1, 2024

"Arm's First Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1–3)," Arm Holdings, July 11, 2025

"Arm's First Supplemental Response to Qualcomm's Amended Interrogatory No. 3," Arm Holdings, July 11, 2025

"Arm's First Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11)," Arm Holdings, July 11, 2025

"Arm's First Supplemental Objections and Responses to Qualcomm's Third Set of Interrogatories (No. 12), Arm Holdings, July 11, 2025

"Arm's Responses & Objections to Qualcomm's First Set of Request for Admissions (Nos. 1-28)," Arm Holdings, July 11, 2025

"Plaintiffs' Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1–9)," Qualcomm, March 10, 2025

"Plaintiffs' Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1–9)," Qualcomm, July 11, 2025

"Plaintiffs' Third Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1–9)," Qualcomm, August 8, 2025

"Plaintiffs' Supplemental Responses and Objections to Defendant's Second Set of Interrogatories (Nos. 10-13)," Qualcomm, July 11, 2025

"Plaintiffs' Second Supplemental Responses and Objections to Defendant's Second Set of Interrogatories (Nos. 10-13)," Qualcomm, August 8, 2025

"Plaintiffs' Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14-24)," Qualcomm, July 11, 2025

"Plaintiffs' First Supplemental Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14-24)," Qualcomm, August 8, 2025

"Plaintiffs' Responses and Objections to Defendant's First Set of Requests for Admission (Nos. 1-30)," Qualcomm, July 11, 2025

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

*Qualcomm Inc. v. Arm Holdings, plc.,* C.A. No. 24-490-MN, Dkt. Nos. 137; 137-1 (Ex. A) (June 3, 2025)

*Arm Ltd. v. Qualcomm Inc*., No. 1:22-cv-01146 (D. Del. filed August 31, 2022), Dkt. Nos. 571, 572

*Arm Ltd. v. Qualcomm Inc., No. 1:22-cv-01146* (D. Del. filed August 31, 2022), Dkt. No. 1

*Arm v. Qualcomm*, No. 22-1146 (MN), Plaintiff Arm Ltd.'s Answer and Affirmative Defenses to Defendants Qualcomm Inc., Qualcomm Technologies, Inc., and Nuvia, Inc.'s Amended Counterclaim, D.I. 21, November 15, 2022

*Arm v. Qualcomm*, No. 22-1146 (MN), Pretrial Conference Transcript, November 20, 2024

*Qualcomm Inc. v. Arm Holdings, plc.,* C.A. No. 24-490-MN, Dkt. No. 233, Arm's Opening Brief In Support of Its Partial Motion To Dismiss Qualcomm's Second Amended Complaint, June 17, 2025

Baumol, William J. and 18 other leading economics scholars, "Supreme Court Amicus Brief Regarding Morgan Stanley Capital Group Inc. v. Public Utility District No. 1 of Snohomish County, Washington," December 2007

Complaint for Patent Infringement, *Qualcomm Inc. v. Apple Inc.,* No. 3:17-cv-01375-JAH-AGS (S.D. Cal. filed July 6, 2017), https://www.qualcomm.com/content/dam/qcomm-martech/dm-assets/documents/2017-07-06_complaint.pdf

*eBay Inc. and Half.com v. MercExchange, L.L.C*., Brief of Amici Curiae Qualcomm Inc. & Tessera, Inc. in Support of Respondent, 547 U.S. 388 (2006) (No. 05-130)

Expert Report of Dr. Michael C. Brogioli, September 5, 2025

Expert Report of Mr. Steven Richards, CPA, September 5, 2025

Expert Report of Eric A. Posner, August 8, 2025

Expert Report of Patrick F. Kennedy, August 8, 2025

Expert Report of Patrick F. Kennedy, February 27, 2024

*Federal Trade Commission v. Qualcomm Incorporated,* "Reply brief for appellant Qualcomm Incorporated (Redacted)," Qualcomm Incorporated, December 16, 2019, No. 19-16122, Dkt. Entry 228, United States Court of Appeals for the Ninth Circuit

Plaintiffs' Supplemental Responses and Objections to Defendant's Second Set of Interrogatories (Nos. 10–13)," Qualcomm, July 11, 2025

B - 2

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

**I incorporate by reference all documents cited in ARM's and Qualcomm's discovery responses, and all materials relied upon by Prof. Posner and Dr. Kennedy.**

## Case Law

*Brown Shoe Co., Inc. v. United States,* 370 U.S. 294 (1962)

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977)

*Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104 (1986)

*Federal Trade Commission v. Tempur Sealy International and Mattress Firm Group Inc*., U.S. District Court, Southern District of Texas, Civil Action No. 4:24-cv-02508, Opinion and Order Denying Motion for Preliminary Injunction,  Case 4:24-cv-02508, Dkt. Entry 511 (S.D. Tex. Jan. 31, 2025)

*United States v. Aluminum Co. of Am.,* 148 F.2d 416, 430 (2d Cir. 1945)

*United States v. Microsoft Corp.,* 253 F.3d 59 (2001)

## Deposition Testimony and Associated Exhibits

*Arm v. Qualcomm,* Trial Transcript, Vol 2.1, December 16, 2024

*Arm v. Qualcomm,* Trial Transcript, Vol 3.1, December 17, 2024

*Arm v. Qualcomm,* Trial Transcript, Vol. 4.1, December 18, 2024

Deposition of Akshay Bhatnagar, July 10, 2025

Deposition of Ami Badani, August 1, 2025

Deposition of Andrew Howard, July 1, 2025

Deposition of Ann Chaplin, July 11, 2025

Deposition of Anupa George, July 30, 2025

Deposition of Aparajita Bhattacharya, July 7, 2025

Deposition of Christine Tran, July 10, 2025

Deposition of Christopher Patrick, July 2, 2025

Deposition of Cristiano Amon, July 3, 2025

Deposition of Durga Malladi, July 10, 2025

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Deposition of Ehab Youssef, June 26, 2025

Deposition of Gerard Williams, June 25, 2025

Deposition of Gerard Williams, November 3, 2023

Deposition of James Jeon, July 11, 2025

Deposition of James Thompson, November 28, 2023

Deposition of Jannik Nelson, July 10, 2025

Deposition of Jean-Francois (Jeff) Vidon, July 1, 2025

Deposition of Jeff Golden, July 3, 2025

Deposition of Jeffrey M. Fonseca, July 9, 2025

Deposition of Jignesh Trivedi, July 9, 2025

Deposition of John Horley, July 8, 2025

Deposition of Jonathan Weiser, July 11, 2025

Deposition of Karl M. Whealton, June 18, 2025

Deposition of Karthik Shivashankar, June 20, 2025

Deposition of Kenneth Siegel, July 4, 2025

Deposition of Kurt Wolf, June 25, 2025

Deposition of Larissa Cochron, July 11, 2025

Deposition of Laura Sand, July 8, 2025

Deposition of Lynn Couillard, July 3, 2025

Deposition of Manju Varma, June 24, 2025

Deposition of Mark Dragicevich, June 27, 2025

Deposition of Martin Weidmann, June 20, 2025

Deposition of Michael Williams, June 27, 2025

Deposition of Mohamed Awad, July 29, 2025

B - 4

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Deposition of Paul Kranhold, July 17, 2025

Deposition of Paul Williamson, July 2, 2025

Deposition of Pavankumar (Pavan) Mulabagal, July 1, 2025

Deposition of Peter Greenhalgh, July 4, 2025

Deposition of Philip Hughes, June 17, 2025

Deposition of Rene Haas, July 7, 2025

Deposition of Richard Grisenthwaite, July 2, 2025

Deposition of Richard Meacham, June 27, 2025

Deposition of Selena LaCroix, August 1, 2025

Deposition of Simon Segars, November 16, 2023

Deposition of Spencer Collins, June 30, 2025

Deposition of Sudeep Holla, June 17, 2025

Deposition of Tim Herbert, October 25, 2023

Deposition of Vivek Agrawal, July 11, 2025

Deposition of Will Abbey, June 26, 2025

Deposition of Will Abbey, October 27, 2023

Deposition of Ziad Asghar, July 7, 2025

## Conversations

Conversation with Dr. Michael C. Brogioli, September 2, 2025

Conversation with Mohamed Awad, August 29, 2025

Conversation with Paul Williamson, September 2, 2025

## SEC Filings

Arm Holdings plc, Form F-1, August 21, 2023,
https://www.sec.gov/Archives/edgar/data/1973239/000119312523216983/d393891df1.htm

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Arm Holdings plc, Amendment No. 2 to Form F-1, September 5, 2023, https://www.sec.gov/Archives/edgar/data/1973239/000119312523228059/d393891df1a.htm

Arm Holdings plc, Form 20-F, for the fiscal year ended March 31, 2024, https://investors.arm.com/static-files/dcdd6629-24bb-40ef-ba55-8aca1362205a

Arm Holdings plc, Form 20-F, for the fiscal year ended March 31, 2025, https://investors.arm.com/static-files/9be77c9d-75ee-4639-bfe4-17efd23c56b5

Intel Corporation, 2021 Form 10-K, for the fiscal year ended December 25, 2021, https://www.intc.com/filings-reports/all-sec-filings/content/0000050863-22-000007/0000050863-22-000007.pdf

Intel Corporation, 2024 Form 10-K, for the fiscal year ended December 28, 2024, https://www.intc.com/filings-reports/all-sec-filings/content/0000050863-25-000009/0000050863-25-000009.pdf

Qualcomm Incorporated, Form 10-K, for the fiscal year ended September 29, 2024, https://d18rn0p25nwr6d.cloudfront.net/CIK-0000804328/fd08c4f6-61ba-4a6a-a339-0e3b522ed739.pdf

Qualcomm Incorporated, Form 10-K, for fiscal years 2019 – 2024, https://investor.qualcomm.com/financial-info-sec-filings/sec-filings/default.aspx

Qualcomm Incorporated, Form 10-Q, for the quarterly period ended December 26, 2021, https://d18rn0p25nwr6d.cloudfront.net/CIK-0000804328/c91b841c-1f3f-4762-9c0d-c379f1554455.pdf

Qualcomm Incorporated, Form 10-Q, for the quarterly period ended December 29, 2024, https://d18rn0p25nwr6d.cloudfront.net/CIK-0000804328/1b687286-85e9-44e6-a579-d19d089eacfb.pdf

Qualcomm Incorporated, Form 10-Q, for the quarterly periods 2019 – 2024, https://investor.qualcomm.com/financial-info-sec-filings/sec-filings/default.aspx

## Bates Numbered Documents

ARM_00000003

ARM_00000016

ARM_00000017

ARM_00000382

ARM_00000510

B - 6

A1303

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

ARM_00002955

ARM_00004029

ARM_00026351

ARM_00032601

ARM_00032602

ARM_00045266

ARM_00055357

ARM_00057511

ARM_00057560

ARM_00076604

ARM_00080472

ARM_00081203

ARM_00081461

ARM_00081462

ARM_00081753

ARM_00086285

ARM_00087465

ARM_00088600

ARM_00092788

ARM_00095947

ARM_00097388

ARM_00103918

ARM_00104733

ARM_00110511

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

ARM_00113179

ARM_00115827

ARM_00117493

ARM_00118635

ARM_00119602

ARM_00119603

ARM_01215409

ARM_01215878

ARM_01215886

ARM_01230861

ARM_01230977

ARM_01230978

ARM_01238895

ARM_01239056

ARM_01246942

ARM_01249629

ARM_01259705

ARM_01282304

ARM_01293447

ARM_01294236

ARM_01305915

ARM_01311208

ARM_01314793

ARM_01426938

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

ARM_01427719

ARM_01427776

ARM_01427796

ARM_01428339

ARMQC_00000640

ARMQC_02600713

ARMQC_02601118

ARMQC_02725050

ARMQC_02726982

ARMQC_02727610

ARMQC_02729412

ARMQC_02731630

ARMQC_02739661

ARMQC_02740205

ARMQC_02740386

ARMQC_02748499

ARMQC_02749177

ARMQC_02762992

ARMQC_02770485

ARMQC_02770649

ARMQC_02770676

ARMQC_02771127

ARMQC_02771946

ARMQC_02772366

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

ARMQC_02779314

ARMQC_02779364

ARMQC_02779391

ARMQC_02779433

ARMQC_02779483

ARMQC_02783619

ARMQC_02785287

QCARM_0020011

QCARM_0020012

QCARM_0027980

QCARM_0222737

QCARM_0275743

QCARM_0332490

QCARM_0337839

QCARM_0338297

QCARM_0338573

QCARM_0338883

QCARM_0343120

QCARM_0343954

QCARM_0353229

QCARM_0550516

QCARM_0550518

QCARM_0589823

QCARM_0591733

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

QCARM_3460234

QCARM_3474751

QCARM_3839896

QCARM_3972031

QCARM_7401071

QCARM_7484882

QCVARM_0449658

QCVARM_0451587

QCVARM_0455391

QCVARM_0463558

QCVARM_0463837

QCVARM_0464076

QCVARM_0464648

QCVARM_0465090

QCVARM_0526828

QCVARM_0527544

QCVARM_0528956

QCVARM_0532239

QCVARM_0534597

QCVARM_0537065

QCVARM_0538870

QCVARM_0538873

QCVARM_0541454

QCVARM_0573677

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

QCVARM_0600104

QCVARM_0608391

QCVARM_0621447

QCVARM_0621448

QCVARM_0847188

QCVARM_0851120

QCVARM_0851449

QCVARM_0855438

QCVARM_0856270

QCVARM_0856888

QCVARM_0857113

QCVARM_0857152

QCVARM_0863181

QCVARM_0863573

QCVARM_0863641

QCVARM_0864713

QCVARM_0864833

QCVARM_0864924

QCVARM_0865022

QCVARM_0865236

QCVARM_0865274

QCVARM_0865311

QCVARM_1014030

QCVARM_1024852

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

QCVARM_1031097

QCVARM_1066820

QCVARM_1069058

QCVARM_1069082

QCVARM_1069106

QCVARM_1069760

QCVARM_1120481

QCVARM_1120999

QCVARM_1121176

QCVARM_112154

QCVARM_1121674

QCVARM_1151565

QCVARM_1151573

QCVARM_1151615

## Articles and Books

"AI Flywheel Gathering Momentum - Initiate Buy," UBS Global Research, November 24, 2024

"Qualcomm Incorporated 2009 and Qualcomm Incorporated 2011 Update," Harvard Business School Teaching Notes, May 25, 2011

Aberra, Adam and Matthieu Chemin, "Does legal representation increase investment? Evidence from a field experiment in Kenya," 2021, Journal of Development Economics, Vol. 150

Armstrong, Mark, "Competition in Two-Sided Markets," 2006, RAND Journal of Economics, Vol. 37, No. 3

Babcock, Linda, George Loewenstein, S. Issacharoff, and Colin Camerer, "Biased Judgements of Fairness in Bargaining," American Economic Review, 1995, Vol. 85, No. 5

Beck, Marissa and Fiona Scott Morton, "Evaluating the Evidence on Vertical Mergers," Review of Industrial Organization, 2021, Vol. 59

B - 13

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Benjamin E. Hermalin et al., "Contract Law," in Handbook of Law & Economics, 2007, Vol. 3, No. 68 (ed. A. Mitchell Polinsky & Steven Shavell)

Blair, Roger D., Christine S. Wilson, D. Daniel Sokol, Keith Klovers and Jeremy A. Sandford, "Analyzing Vertical Mergers: Accounting for the Unilateral Effects Tradeoff and Thinking Holistically About Efficiencies," George Mason Law Review, 2020, Vol. 27, No. 3

Bloom, Nick, Stephen Bond, and John Van Reenen, "Uncertainty and Investment Dynamics," The Review of Economic Studies, 2007, Vol. 74, No. 2

Brandenburger, Adam M. and Barry J. Nalebuff, "The Rules of Co-opetition," Harvard Business Review, 2021

CGS International, "Arm Holdings pcl - Initiate at Outperform and $160 PT; Content Story in Early Innings," US Equity Research, Sept 12, 2024

De Stefano, Martino and Michael Salinger, "The Complicated Simple Economics of Vertical Mergers," The Journal of Law and Economics, 2025, Vol. 68, No. 1

Donna, Javier D., Pedro Pereira, Yun Pu, Andre Trindade, and Renan C. Yoshida, "Direct sales and bargaining," RAND Journal of Economics, 2024, Vol. 55, No. 4

Federico, Giulio, Fiona Scott Morton, and Carl Shapiro, "Antitrust and Innovation: Welcoming and Protecting Disruption," Innovation Policy and the Economy, 2020, Vol. 20, pp. 125-190

Gans, Joshua "The Disruption Dilemma," MIT Press, 2016

Gilbert, Richard J. and Carl Shapiro, "An Economic Analysis of Unilateral Refusals to License Intellectual Property," Proceedings of the National Academy of Sciences U.S.A., 1996, Vol. 3

Kwon, Yona, Dahee Kang, Sinji Kim, and Seungho Choi, "Coopetition in the SoC Industry: The Case of Qualcomm Incorporated," Journal of Open Innovation: Technology, Market, and Complexity, 2020, Vol. 6, No. 1

Lemley, Mark A. and Carl Shapiro, "Probabilistic Patents," Journal of Economic Perspectives, 2005, Vol. 19, No. 2

Lianos, Ioannis and Pierre Regibeau, "'Vexatious'/'Sham' Litigation: When Can It Arise and How Can It Be Reduced?," The Antitrust Bulletin, 2017, Vol. 62, No. 4

Lu, Shihua, Serge Moresi, and Steven C. Salop, "A Note on Vertical Mergers with an Upstream Monopolist: Foreclosure and Welfare Effects," 2007, Working Paper

Muthoo, Abhinay, "A Non-Technical Introduction to Bargaining Theory," World Economics, April-June 2020, Vol. 1, No. 2

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Posner, Richard A., "The Law and Economics of Contract Interpretation," 2004, 83 Texas Law Review 1581

Priest, George L. & Benjamin Klein, "The Selection of Disputes for Litigation," Journal of Legal Studies, 1984, Vol. 13

Schumpeter, Joseph, "Capitalism, Socialism, and Democracy," Harper & Brothers Publishers, 1942

Seitz, Michael and Martin Watzinger, "Contract enforcement and R&D investment," Research Policy, 2017, Volume 46, Issue 1

Shapiro, Carl & Keith Waehrer, "Using and Misusing Microeconomics: Federal Trade Commission v. Qualcomm," Chapter 15, Antitrust Economics at a Time of Upheaval: Recent Competition Policy Cases on Two Continents (ed. John E. Kwoka, Jr., Tommaso M. Valletti & Lawrence J. White), 2023, Competition Policy International

Shapiro, Carl, "Competition and Innovation Did Arrow Hit the Bull's Eye?" in The Rate and Direction of Inventive Activity Revisited (ed. Josh Lerner and Scott Stern), 2012, University of Chicago Press

Shapiro, Carl, "Premiums for high quality products as returns to reputations," The Quarterly Journal of Economics, 1983, Vol. 98, No. 4

Shapiro, Carl, "Vertical Mergers and Input Foreclosure Lessons from the AT&T/Time Warner Case," Review of Industrial Organization, 2021, Vol. 59, pp. 303–341

Spulber, Daniel F., "How Do Competitive Pressures Affect Incentives to Innovate When There is a Market for Inventions?" Journal of Political Economy, 2013, Vol. 121, No. 6, pp. 1007-1054

Tirole, Jean, "Competition and the Industrial Challenge for the Digital Age," Annual Review of Economics, 2020, Vol. 156

Yang, Chenyu, "Vertical Structure and Innovation: A Study of the SoC and Smartphone Industries," The RAND Journal of Economics, 2022, Vol. 51, No. 3, pp. 739–785

## Websites and Other Public Sources

"2023 Patent Litigation Report," Bloomberg Law, https://pro.bloomberglaw.com/insights/intellectual-property/2023-patent-litigation-report/

"4 Reasons Qualcomm's Data Center Business Failed," The Motley Fool, December 21, 2018, https://www.nasdaq.com/articles/4-reasons-qualcomms-data-center-business-failed-2018-12-21

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

"4Q24 Global Top 10 Foundries Set New Revenue Record, TSMC Leads in Advanced Process Nodes," TechPowerUp, March 10, 2025, https://www.techpowerup.com/333868/4q24-global-top-10-foundries-set-new-revenue-record-tsmc-leads-in-advanced-process-nodes

"About RISC-V," RISC-V International, https://riscv.org/about/, accessed  August 15, 2025

"Accelerating the RISC-V Software Ecosystem," RISE, The Linux Foundation Projects, https://riseproject.dev/, accessed August 26, 2025

"AI Accelerator Chips Overview and Comparison," HardwareBee, https://hardwarebee.com/ai-accelerator-chips-overview-and-comparison/, accessed on August 22, 2025

"Apple announces Mac transition to Apple silicon," Apple Newsroom, June 22, 2020, https://www.apple.com/newsroom/2020/06/apple-announces-mac-transition-to-apple-silicon/

"Apple unleashes M1," Apple Newsroom, November 10, 2020, https://www.apple.com/newsroom/2020/11/apple-unleashes-m1/

"Arm Approved Design Partners," Arm, https://www.arm.com/partners/arm-approved-program/design-partners, accessed September 4, 2025

"Arm CEO on Intel, Chips, AI, Listing in US," Bloomberg Technology, YouTube, October 22, 2024, www.youtube.com/watch?v=6FnBz8rxWUY

"Arm Compute Subsystems (CSS) for Client," Arm, https://www.arm.com/products/compute-subsystems-for-client, accessed September 4, 2025

"Arm CoreLink GIC-700 Generic Interrupt Controller Technical Reference Manual," Arm Developer,  https://developer.arm.com/documentation/101516/latest/, accessed September 4, 2025

"Arm Cortex-A Processor Comparison Table," Arm Developer, https://developer.arm.com/documentation/102826/latest/, accessed September 4, 2025

"Arm Cortex-M Processor Comparison Table," Arm Developer, https://developer.arm.com/documentation/102787/latest/, accessed September 4, 2025

"Arm Cortex-R Processor Comparison Table," Arm Developer, https://developer.arm.com/documentation/102788/latest/, accessed September 4, 2025

"Arm CPU Architecture: A Foundation for Computing Everywhere," Arm, https://www.arm.com/architecture/cpu, accessed September 4, 2025

"Arm Files Lawsuit Against Qualcomm and Nuvia for Breach of License Agreements and Trademark Infringement," Arm, August 31, 2022, https://newsroom.arm.com/news/arm-files-lawsuit-against-qualcomm-and-nuvia-for-breach-of-license-agreements-and-trademark-infringement

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

"Arm Flexible Access," Arm, https://www.arm.com/products/flexible-access

"Arm Holdings plc Q1 2026 Earnings Call," July 30, 2025, https://investors.arm.com/static-files/57a99953-427a-4cfb-ade8-634d3564c008

"Arm Holdings plc Q3 2025 Earnings Call," February 5, 2025, https://investors.arm.com/static-files/f1190d81-408d-4276-a30c-b27c1ce5a30a

"Arm Holdings plc Q4 2025 Earnings Call," May 7, 2025, https://investors.arm.com/static-files/181d5019-29bd-4ba5-af29-45888e25c637

"Arm Holdings plc Q3 FYE24 Results Presentation," Arm Holdings, February 7, 2024, https://investors.arm.com/static-files/c383780b-44f8-42c0-a125-4f6db0b8eb06

"Arm Holdings plc Q4 FYE24 Results Presentation," Arm Holdings, May 8, 2024, https://investors.arm.com/static-files/4f2fc46b-34a5-4bc5-94af-f13fbc348f0e

"Arm Holdings Q2 FYE25 Investor Presentation," Arm Holdings, November 6, 2024, https://investors.arm.com/static-files/623fece0-c947-4d'93-94eb-e08e8dfad61b

"Arm Holdings plc Q4 FYE25 Investor Presentation," Arm Holdings, May 7, 2025, https://investors.arm.com/static-files/6bb3def3-ddce-4588-bf81-b5a718973274

"Arm Holdings plc, Q1 FYE26 Investor Presentation," Arm Holdings, July 30, 2025, https://investors.arm.com/static-files/dae25601-3e5a-4d40-b9f5-e0149989e553

"Arm Total Access," Arm, https://www.arm.com/products/licensing/arm-total-access, accessed August 30, 202

"At Qualcomm Trial, Apple COO Said $7.50 Per-iPhone Fee Cost Company $1 Billion a Year," Bloomberg, January 14, 2019, https://fortune.com/2019/01/14/qualcomm-trial-apple-7-50-iphone-fee-billion/

"Automated Driving | Snapdragon Ride ADAS Tech for Smart Cars," Qualcomm, https://www.qualcomm.com/products/automotive/automated-driving, accessed September 4, 2025

"AWS and Arm," Arm, https://www.arm.com/markets/computing-infrastructure/cloud-computing/aws#1, accessed August 29, 2025

"AWS re: Invent 2024 - Monday Night Live with Peter DeSantis," AWS, YouTube.com, December 3, 2024, https://www.youtube.com/watch?v=vx36tyJ47ps&t=1041s

"BoM Analysis: Samsung Galaxy S23 Ultra Costs $469 to Make," Counterpoint, May 31, 2023, https://www.counterpointresearch.com/insight/bom-analysis-samsung-galaxy-s23-ultra

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

"CMN-600 Coherent Mesh: Scalable Network for Smart Systems," Arm, https://www.arm.com/products/silicon-ip-system/corelink-interconnect/cmn-600, accessed September 4, 2025

"CoreSight ELA-600," Arm Developer, https://developer.arm.com/Processors/CoreSight%20ELA-600, accessed September 4, 2025

"CPU Cortex-A78", Arm https://www.arm.com/products/silicon-ip-cpu/cortex-a/cortex-a78, accessed August 29, 2025

"Exynos Mobile Processor," Samsung Semiconductor Global, https://semiconductor.samsung.com/processor/mobile-processor/, accessed September 4, 2025

"Fastest Path to Production Silicon with World-Leading Performance, on Leading-Edge Technology," Arm, https://www.arm.com/products/neoverse-compute-subsystems, accessed September 4, 2025

"FYE26 Q1 (30-Jun-25) Historical Quarters Datasheet.xlsx," Arm Holdings, July 30, 2025, https://investors.arm.com/financials/quarterly-annual-results

"Gartner Says Worldwide Semiconductor Revenue Grew 21% in 2024," Gartner, April 10, 2025, https://www.gartner.com/en/newsroom/press-releases/2025-04-10-gartner-says-worldwide-semiconductor-revenue-grew-21-percent-in-2024

"Glossary," Lenovo, https://www.lenovo.com/us/en/glossary/cpu-core/, accessed September 4, 2025

"Glossary," Lenovo, https://www.lenovo.com/us/en/glossary/what-is-a-chipset, accessed September 3, 2025

"Governing Board," RISE, The Linux Foundation Projects, https://riseproject.dev/leadership/, accessed August 26, 2025

"Here's How Much Apple Was Paying Qualcomm in Royalties," The Motley Fool, January 14, 2019, https://www.nasdaq.com/articles/heres-how-much-apple-was-paying-qualcomm-royalties-2019-01-14

"How NVIDIA Shipped One Billion RISC-V Cores In 2024," RISC-V International, February 25, 2025, https://riscv.org/blog/2025/02/how-nvidia-shipped-one-billion-risc-v-cores-in-2024/

"Intel Antitrust Rulings," https://www.amd.com/en/legal/notices/antitrust-ruling.html, accessed September 4, 2025

"Invention and Intellectual Property [-] Protecting the value of invention," Qualcomm, https://www.qualcomm.com/company/corporate-responsibility/acting-responsibly/public-policy/our-positions/invention-and-intellectual-property, accessed August 28, 2025

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

"Is Snapdragon an ARM Processor? Understanding the Core Technology Behind Qualcomm's Mobile Chipsets," Indian Institute of Embedded Systems, https://iies.in/blog/is-snapdragon-an-arm-processor-understanding-the-core-technology-behind-qualcomms-mobile-chipsets

"Keynote: Accelerating Innovation with RISC-V: Past, Present and Future - Manju Varma," RISC-V International, YouTube, December 29, 2022, at 1:01, https://www.youtube.com/watch?v=t6_9pbgg1LI&ab_channel=RISC- Vinternational

"Keynote: Unlocking Innovation with RISC-V and Qualcomm - Ziad Asghar," RISC-V International, YouTube, November 29, 2023, @ 4:37, https://www.youtube.com/watch?v=9h9LwkPnrUw&ab_channel=RISC-Vinternational

"Market Capitalization of Arm Holdings," Companies Market Cap, https://companiesmarketcap.com/arm-holdings/marketcap/, accessed August 29, 2025

"Market Capitalization of Qualcomm," Companies Market Cap, https://companiesmarketcap.com/qualcomm/marketcap/, accessed August 29, 2025

"Market Capitalization of Samsung," Companies Market Cap, https://companiesmarketcap.com/samsung/marketcap/, accessed August 29, 2025

"Missouri and New Jersey Should Repeal Their Prohibitions on Direct-to-Consumer Auto Sales by Manufacturers," Federal Trade Commission, Press Release May 16, 2014, https://www.ftc.gov/news-events/news/press-releases/2014/05/ftc-staff-missouri-new-jersey-should-repeal-their-prohibitions-direct-consumer-auto-sales

"Neoverse N1 | CPU for Next-Gen Cloud Infrastructure," Arm, https://www.arm.com/products/silicon-ip-cpu/neoverse/neoverse-n1, accessed September 4, 2025

"Next-Gen flagship Snapdragon chip 'Pakala' & reference device slip in new Qualcomm video," March 21, 2024, https://www.gizmochina.com/2024/03/21/next-gen-snapdragon-pakala-reference-device/

"NUVIA Raises $53 Million to Reimagine Silicon Design for the Data Center," Globe News Wire, November 15, 2019, https://www.globenewswire.com/news-release/2019/11/15/1948072/0/en/NUVIA-Raises-53-Million-to-Reimagine-Silicon-Design-for-the-Data-Center.htm

"Our Businesses," Qualcomm, https://www.qualcomm.com/our-businesses, August 5, 2025

"PPA analysis overview," Arm Developer, https://developer.arm.com/documentation/102738/0100/Power--performance--and-area-analysis, accessed September 4, 2025

B - 19

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

"Q1 2025 Qualcomm Inc. Earnings Call," Qualcomm, February 5, 2025, https://s204.q4cdn.com/645488518/files/doc_events/2025/Feb/05/QCOM_Q1FY25EC_Transcript_2-5-24.pdf

"Q2 2025 Qualcomm Inc. Earnings Call," Qualcomm, April 30, 2025, https://s204.q4cdn.com/645488518/files/doc_events/2025/Apr/30/QCOM_Q2FY25EC_Transcript_5-1-25.pdf

"Q3 2025 Qualcomm Inc. Earnings Call," Qualcomm, July 30, 2025, https://s204.q4cdn.com/645488518/files/doc_events/2025/Jul/30/Q3FY25-Earnings-Call-Transcript_7-30-25_Final.pdf

"Q4 2024 Qualcomm Inc. Earnings Call," Qualcomm, November 6, 2024, https://s204.q4cdn.com/645488518/files/doc_events/2024/Nov/06/QCOM_Q4FY24EC_Transcript_11-7-24.pdf

"Qualcomm 5G NR Royalty Terms Statement," November 19, 2017, https://www.qualcomm.com/content/dam/qcomm-martech/dm-assets/documents/qualcomm-5g-nr-royalty-terms-statement.pdf

"Qualcomm Announces Third Quarter Fiscal 2025 Results," Qualcomm, July 30, 2025, https://s204.q4cdn.com/645488518/files/doc_financials/2025/q3/FY2025-3rd-Quarter-Earnings-Release.pdf

"Qualcomm Cellular IoT Licensing Program," Qualcomm, https://www.qualcomm.com/licensing/cellular-iot-licensing-program, accessed September 4, 2025

"Qualcomm Completes Acquisition of NUVIA," Qualcomm Press Release, March 15, 2021, https://www.qualcomm.com/news/releases/2021/03/qualcomm-completes-acquisition-nuvia

"Qualcomm Dominates Premium Android Smartphone Chip Market in Q1 2022," Cellit, May 19, 2022, https://cellit.in/qualcomm-dominates-premium-android-smartphone-chip-market-in-q1-2022/

"Qualcomm Files GSM Patent Infringement Suit Against Nokia," Qualcomm Press Release, November 6, 2005, https://www.qualcomm.com/news/releases/2005/11/qualcomm-files-gsm-patent-infringement-suit-against-nokia

"Qualcomm Files Lawsuit Against Motorola," Qualcomm, Mar 5, 1997 https://www.qualcomm.com/news/releases/1997/03/qualcomm-files-lawsuit-against-motorola

"Qualcomm Implements New Corporate Structure," Qualcomm Press Release, October 1, 2012, https://www.qualcomm.com/news/releases/2012/10/qualcomm-implements-new-corporate-structure

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

"Qualcomm Inc. Investor Day," Qualcomm, Cristiano Amon, November 16, 2021, https://d1io3yog0oux5.cloudfront.net/_9145a2f999cf4f4b2b0c08721e637935/qualcomm/db/703/7061/file/QCOM-USQ_Transcript_2021-11-16_Investor%20Day%20(1).pdf

"Qualcomm Inc., Investor Day," Qualcomm, Cristiano Amon, November 19, 2024, https://s204.q4cdn.com/645488518/files/doc_events/2024/Nov/19/Qualcomm-Investor-Day-2024_Cristiano_StrategicFramework_11-19-24.pdf

"Qualcomm Incorporated 2009 and Qualcomm Incorporated 2011 Update," Harvard Business School Teaching Notes, May 25, 2011, https://hbsp.harvard.edu/product/711463-PDF-ENG

"Qualcomm Investor Day 2024: IoT and Automotive Diversification Update," Qualcomm, November 19, 2024, https://www.qualcomm.com/content/dam/qcomm-martech/dm-assets/images/company/company/events/investor-day-2024/QCOM-Investor-Day-2024-transcript.pdf

"Qualcomm Oryon CPU," Qualcomm, https://www.qualcomm.com/products/technology/processors/oryon, accessed August 20, 202

"Qualcomm Sets New Growth Targets, Showcasing Company's Opportunity as On-Device AI Accelerates Demand for its Technologies," Qualcomm Inc., Press Release, November 19, 2024 https://investor.qualcomm.com/news-events/press-releases/news-details/2024/Qualcomm-Sets-New-Growth-Targets-Showcasing-Companys-Opportunity-as-On-Device-AI-Accelerates-Demand-for-its-Technologies/default.aspx

"Qualcomm to Acquire Alphawave Semi," Qualcomm, June 9, 2025, https://www.qualcomm.com/news/releases/2025/06/qualcomm-to-acquire-alphawave-semi

"Qualcomm to Bring RISC-V Based Wearable Platform to Wear OS by Google," Qualcomm, October 17, 2023, https://www.qualcomm.com/news/releases/2023/10/qualcomm-to-bring-risc-v-based-wearable-platform-to--wear-os-by-

"Quintauris: Accelerating RISC-V Innovation for next-gen Hardware ," November 4, 2024, https://www.quintauris.com/quintauris-accelerating-risc-v-innovation-for-next-gen-hardware

"RISC-V International Governance," RISC-V, https://riscv.org/about/board/, accessed August 13, 2025

"Samsung Apologizes for Falling Behind in AI Chips Race," Wall Street Journal, October 8, 2024, https://www.wsj.com/tech/samsungs-chip-technologies-fall-behind-in-early-innings-of-ai-game-67f0f9af

"Samsung Electronics Co. Ltd.," Wall Street Journal, https://www.wsj.com/market-data/quotes/kr/xkrx/005930, accessed August 26, 2025

"SCO Sends Warning Letters To Linux Users," InformationWeek, December 22, 2003, https://www.informationweek.com/it-leadership/sco-sends-warning-letters-to-linux-users

B - 21

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

"Silicon Design Reimagined," Nuvia, Inc., January 15, 2021, https://web.archive.org/web/20210115193713/https://nuviainc.com/

"Snapdragon Summit," SixFiveMedia, https://www.sixfivemedia.com/our-events/snapdragon-summit, accessed September 4, 2025

"Supreme Court Amicus Brief Regarding Morgan Stanley Capital Group Inc. v. Public Utility District No. 1 of Snohomish County, Washington," December 2007, https://appext.hks.harvard.edu/publications/getFile.aspx?Id=451

"The 5 Best Features of the Meta Quest 3," Qualcomm, January 12, 2024, https://www.qualcomm.com/snapdragon/news/the-5-best-features-of-the-meta-quest-3

"The Largest Companies by Market Cap in August 2025," The Motley Fool, August 4, 2025 https://www.fool.com/research/largest-companies-by-market-cap/

"The Value of Making Concessions In Negotiation," Red Bear, November 12, 2024, https://www.redbearnegotiation.com/blog/making-concessions-in-negotiation

"Too Good to Lose: America's Stake in Intel," Center for Strategic and International Studies, November 12, 2024, https://www.csis.org/analysis/too-good-lose-americas-stake-intel

"Top 10 Semiconductor Foundries in the World," Cytech Systems, March 13, 2024 https://www.cytechsystems.com/news/top-10-semiconductor-foundries

"Trial Sheds Light on Q'comm Patent Holdings, Royalty Rates," EETimes, January 21, 2019, https://www.eetimes.com/trial-sheds-light-on-qcomm-patent-holdings-royalty-rates

"Understanding Android," Android, https://www.android.com/everyone/facts/, accessed August 29, 2025

"Virtual Reality: Transforming the way we experience reality," Qualcomm, https://www.qualcomm.com/products/mobile/snapdragon/xr-vr-ar/virtual-reality-vr

"What are IP Cores in Semiconductor Design: Types & Advantages," Techovedas, April 21, 2024, https://techovedas.com/what-are-ip-cores-in-semiconductor-design-types-advantages/

"What is Windows on Arm (WoA)?" Arm, https://www.arm.com/glossary/windows-on-arm, accessed September 4, 2025

"Why RISC-V is Inevitable, Calista Redmond, RISC-V International," RISC-V International, April 6, 2023, at 8:33, https://www.youtube.com/watch?v=ktjSvlelKPk&ab_channel=RISC-VInternational

"XR/VR/AR Reimagining reality as we know it," Qualcomm, https://www.qualcomm.com/products/mobile/snapdragon/xr-vr-ar, accessed September 4, 2025

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

"Your Negotiation Challenges," Karrass, June 17, 2025, https://www.karrass.com/blog/your-negotiation-challenges

Abner Li, "Report: Arm cancels Qualcomm's instruction set, IP license for chip design," 9to5Google, October 22, 2024, https://9to5google.com/2024/10/22/report-qualcomm-arm-chip-design/

Aditya Bedi, "The foundation of Total Compute: First Armv9 Cortex CPUs," Arm Community, May 25, 2021 https://community.arm.com/arm-community-blogs/b/architectures-and-processors-blog/posts/first-armv9-cpu-cores

Akash Palkhiwala, "Qualcomm Investor Day 2024 Financial Update Presentation," Qualcomm, November 19, 2024, https://www.qualcomm.com/content/dam/qcomm-martech/dm-assets/images/company/company/events/investor-day-2024/Qualcomm-Investor-Day-2024_Akash_FinancialUpdate.pdf

Anand Lal Shimpi, "The ARM Diaries, Part 1: How ARM's Business Model Works," AnandTech, June 28, 2013, https://web.archive.org/web/20130701165406/http://www.anandtech.com/show/7112/the-arm-diaries-part-1-how-arms-business-model-works/2

Andy Patrizio, "Qualcomm makes it official; no more data center chip," Network World, December 12, 2018, https://www.networkworld.com/article/966778/qualcomm-makes-it-official-no-more-data-center-chip.html

Anton Shilov, "Arm-Based CPUs Could Double Notebook PC Market Share by 2027: Report," Tom's Hardware, April 11, 2023, https://www.tomshardware.com/news/arm-based-cpus-set-to-double-notebook-pc-market-share-by-2027

Arjun Kharpal, "Qualcomm to launch data center processors that link to Nvidia chips," CNBC, May 19, 2025, https://www.cnbc.com/2025/05/19/qualcomm-to-launch-data-center-processors-that-link-to-nvidia-chips.html

Arm, "The ARM processor business model," https://developer.arm.com/documentation/dht0001/a/architectures--processors--and-devices/the-arm-processor-business-model, accessed August 22, 2025

Ben Schoon, "Google Pixel grows in US, settling into top 4 spot ahead of Pixel 10 launch," 9to5google, July 28, 2025, https://9to5google.com/2025/07/28/google-pixel-us-market-share-q2-2025/

Ben Schoon, "Qualcomm confirms November 15–17 event to reveal its next Snapdragon flagship," 9to5Google, July 19, 2022, https://9to5google.com/2022/07/19/snapdragon-summit-2022

A1320

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Ben Schoon, "Qualcomm is suing Transsion, the largest smartphone maker that doesn't use Snapdragon," 9to5Google, July 12, 2024, https://9to5google.com/2024/07/12/qualcomm-transsion-lawsuit-report

Beth Kindig, "Arm Stock: AI Chip Favorite Is Overpriced," Forbes, Mar 21, 2024, https://www.forbes.com/sites/bethkindig/2024/03/21/arm-stock-ai-chip-favorite-is-overpriced/

Briana Watson, "SOC vs CPU: Breaking Down the Differences and their Optimal Usage," November 15, 2023, https://www.totalphase.com/blog/2023/11/soc-vs-cpu-breaking-down-the-differences-and-their-optimal-usage/

Charles Martin and Malcom Owen, "The history—and triumph —of Arm and Apple Silicon", Apple Insider, April 22, 2024, https://appleinsider.com/articles/24/04/22/the-history----and-triumph----of-arm-and-apple-silicon

Chris Williams, "Arm shells Qualcomm's Snapdragon launch party with latest salvo in license war," The Register, November 16, 2022, https://www.theregister.com/2022/11/16/arm_qualcomm_licensing_latest/

Chris Williams, "Arm sues Qualcomm over custom Nuvia CPU cores, wants designs destroyed," The Register, August 31, 2022, https://www.theregister.com/2022/08/31/arm_sues_qualcomm/

Chris Williams, "Up in arms! Arm kills off its anti-RISC-V smear site after own staff revolt," The Register, July 10, 2018, https://www.theregister.com/2018/07/10/arm_riscv_website/

Congressional Research Service, "Antitrust Law: An Introduction," May 1, 2025, https://www.congress.gov/crs_external_products/IF/PDF/IF11234/IF11234.8.pdf

David Brash, "The ARMv8-A architecture and its ongoing development," Arm Community, December 2, 2014  https://community.arm.com/arm-community-blogs/b/architectures-and-processors-blog/posts/the-armv8-a-architecture-and-its-ongoing-development

David Manners, "Qualcomm data centre business withers away," Electronics Weekly, December 11, 2018, https://www.electronicsweekly.com/news/business/qualcomm-datacentre-business-withers-away-2018-12/

Deepa Prahalad, "Why Trust Matters More Than Ever for Brands," Harvard Business Review, December 8, 2011 https://hbr.org/2011/12/why-trust-matters-more-than-ev

Dominic Rushe, "Myspace sold for $35m in spectacular fall from $12bn heyday," The Guardian, June 30, 2011,  https://www.theguardian.com/technology/2011/jun/30/myspace-sold-35-million-news

Don Fancher, Jennifer Lee, and Debbie McCormack, "Trust: A Critical Asset," Harvard Law School Forum on Corporate Governance, June 17, 2021, https://corpgov.law.harvard.edu/2021/06/17/trust-a-critical-asset/

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Dylan Patel, "Arm's Nuclear Option – Qualcomm Must Cancel Next-Generation Products If Arm Succeeds," SemiAnalysis, November 16, 2022, https://semianalysis.com/2022/11/16/arms-nuclear-option-qualcomm-must/

Dylan Patel, Myron Xie, Afzal Ahmad and Daniel Nishball, "Arm and a Leg: Arm's Quest To Extract Their True Value," SemiAnalysis, September 14, 2023, https://semianalysis.com/2023/09/14/arm-and-a-leg-arms-quest-to-extract/

Exchange Rates, "British Pound to US Dollar History: 2019," https://www.exchangerates.org.uk/GBP-USD-spot-exchange-rates-history-2019.html

Florian Mueller, "BREAKING: Qualcomm settles with China's Transsion (Africa's smartphone market leader): Indian patent lawsuit withdrawn," ip fray, January 16, 2025, https://ipfray.com/breaking-qualcomm-settles-with-chinas-transsion-africas-smartphone-market-leader-indian-patent-lawsuit-withdrawn/

Francisco Cheng, "What is RISC-V, and why we're unlocking its potential," Qualcomm, September 8, 2023, https://www.qualcomm.com/news/onq/2023/09/what-is-risc-v-and-why-were-unlocking-its-potential

Greg Tang, "Intel and the x86 Architecture: A Legal Perspective," The Harvard Journal of Law & Technology, January 4, 2011, https://jolt.law.harvard.edu/digest/intel-and-the-x86-architecture-a-legal-perspective

Gyana Swain, "Arm secures Meta as first customer in chip push, challenging industry giants," ComputerWorld, February 14, 2025, https://www.computerworld.com/article/3825123/arm-secures-meta-as-first-customer-in-chip-push-challenging-industry-giants.html.

Haroun Adamu, "Did you know: Samsung makes a lot of money from iPhones," Android Authority, June 11, 2025, https://www.androidauthority.com/did-you-know-samsung-apple-partnership-3426411/

Herbert Hovenkamp, "Antitrust Market Definition: the Hypothetical Monopolist and Brown Shoe," Network Law Review, April 4, 2024, https://www.networklawreview.org/hovenkamp-market-definition/

Ian King, "Arm to Scrap Qualcomm Chip Design License in Feud Escalation," Bloomberg, October 22, 2024 (updated on October 23, 2024), https://www.bloomberg.com/news/articles/2024-10-23/arm-to-cancel-qualcomm-chip-design-license-in-escalation-of-feud

Ian King, "Qualcomm Plans Exit From Server Chips," Bloomberg, May 7, 2018 https://www.bloomberg.com/news/articles/2018-05-07/qualcomm-is-said-to-plan-exit-from-server-chips-amid-cost-cuts

Imogen Beech, "6 real-life coopetition examples," Breezy, September 6, 2023, https://breezy.io/blog/coopetition-examples

B - 25

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Jeffrey Mervis, "To beat China, new U.S. law offers billions for microchip research and training," Science, September 6, 2022, https://www.science.org/content/article/beat-china-new-u-s-law-offers-billions-microchip-research-and-training

Jessica Coacci, "Here's the one-page memo Warren Buffett sent to his managers every two years for over 25 years," Yahoo! Finance, August 6, 2025 https://finance.yahoo.com/news/one-page-memo-warren-buffett-140107224.html

Jim McGregor, "Arm Squares Off Against Qualcomm: Day 2," December 18, 2024, https://www.forbes.com/sites/tiriasresearch/2024/12/18/arm-squares-off-against-qualcomm-day-2/

Joseph Calamia, Explained: The Physics-Defying Flight of the Bumblebee, Live Science, February 25, 2011 https://www.livescience.com/33075-how-bees-fly.html

Jowi Morales, "Qualcomm claims it owns 10% of U.S. Windows PC retail market for devices priced $800 and up," Tom's Hardware, February 6, 2025, https://www.tomshardware.com/tech-industry/qualcomm-claims-it-owns-10-percent-of-u-s-windows-pc-retail-market-for-devices-priced-usd800-and-up

Kelsey Ziser, "MediaTek and Qualcomm's rivalry heats up in 5G smartphone market – Omdia," Light Reading, July 16, 2024, https://www.lightreading.com/smartphones-devices/mediatek-and-qualcomm-s-rivalry-heats-up-in-5g-smartphone-market-omdia

Khadija Khartit, "When Does It Make Sense for a Company to Pursue Vertical Integration?" Investopedia, February 6, 2025, https://www.investopedia.com/ask/answers/012715/when-does-it-makes-sense-company-pursue-vertical-integration.asp

Linley Gwennap, "Editorial: Arm's No-Win Legal Fight," Tech Insights, https://www.techinsights.com/blog/editorial-arms-no-win-legal-fight, accessed August 29, 2025

MacroTrends, "QUALCOMM Research and Development Expenses 2010-2025," https://www.macrotrends.net/stocks/charts/QCOM/qualcomm/research-development-expenses

MacroTrends, "QUALCOMM Revenue 2010-2025," https://www.macrotrends.net/stocks/charts/QCOM/qualcomm/revenue

Majeed Kamran, "Qualcomm's Alphawave Acquisition Targets Data Centers and AI, But What's Next?" EE Times, June 9, 2025, https://www.eetimes.com/qualcomms-alphawave-acquisition-targets-data-centers-and-ai-but-whats-next/

Mark Liu, "x86 Server CPUs Remain Market Mainstream, 7nm Platform May Help AMD to Increase Market Share, Says TrendForce," TrendForce, November 28, 2018, https://www.trendforce.com/presscenter/news/20181128-10076.html

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Matthew Garrahan, Tim Bradshaw, and David Keohane, "Arm to launch its own chip in move that could upend semiconductor Industry," Financial Times, February 13, 2025, https://www.ft.com/content/95367b2b-2aa7-4a06-bdd3-0463c9bad008

Max Cherney, "Exclusive: Arm aims to capture 50% of PC market in five years, CEO says," Reuters, June 3, 2024, https://www.reuters.com/technology/arm-aims-capture-50-pc-market-five-years-ceo-says-2024-06-03/

Melissa Riofrio, "Surface Pro X revealed: Thin, light, and supercharged with a custom SQ1 ARM chip," PC World, October 2, 2019, https://www.pcworld.com/article/398146/microsofts-surface-pro-x-is-thin-light-and-supercharged-with-a-custom-sq1-arm-chip.html

Mike Freeman, "Qualcomm laying off more workers in San Diego, North Carolina to cut costs," The San Diego Union-Tribune, December 8, 2018, https://www.sandiegouniontribune.com/2018/12/07/qualcomm-laying-off-more-workers-in-san-diego-north-carolina-to-cut-costs/

Mike Wehner, "AIM is officially dead, and your childhood means nothing," Yahoo!News, October 6, 2017, https://www.yahoo.com/news/aim-officially-dead-childhood-means-nothing-174900787.html

Mike Wuerthele, "Apple & ARM's iPhone & Mac chip partnership will continue for decades," Apple Insider, September 5, 2023, https://appleinsider.com/articles/23/09/05/apple-arms-iphone-mac-chip-partnership-will-continue-for-decades

Nikita Kumari, "From Idea to Silicon: How Custom Chip Design Drives Innovation," BISinfotech, July 16, 2025, https://www.bisinfotech.com/from-idea-to-silicon-how-custom-chip-design-drives-innovation

Patent Dispute Report: 2024 Mid-Year Report," Unified Patents, July 22, 2024, https://www.unifiedpatents.com/insights/2024/7/22/patent-dispute-report-2024-mid-year-report

Paul Alcorn, "Intel and AMD are unlikely allies in new x86 ecosystem advisory group," Tom's Hardware, October 15, 2024, https://www.tomshardware.com/pc-components/cpus/intel-and-amd-forge-x86-ecosystem-advisory-group-that-aims-to-ensure-a-unified-isa-moving-forward

Paul Williamson, "Arm Continues to Accelerate IoT Software Development with New Partnerships," Arm Newsroom, November 7, 2022, https://newsroom.arm.com/news/arm-continues-to-accelerate-iot-software-development-with-new-partnerships

Phill Powell, "Types of central processing units (CPUs)," https://www.ibm.com/think/topics/central-processing-unit-types

Qualcomm Financial Summary downloaded from LSEG Data & Analytics

Rajeev Dhir, "Negotiation: Stages and Strategies," Investopedia, June 04, 2024, https://www.investopedia.com/terms/n/negotiation.asp

B - 27

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Rajesh Pandey, "Qualcomm wants Android device makers to pay even more for its next flagship chip," Yahoo Tech, December 2, 2024, https://tech.yahoo.com/phones/articles/qualcomm-wants-android-device-makers-092330024.html

Rashika Singh, "Qualcomm shares slide as Apple modem shift, tariffs raise growth concerns," Yahoo Finance, July 31, 2025, https://finance.yahoo.com/news/qualcomm-shares-slide-apple-modem-085843911.html

Robert Triggs, "Arm vs x86: Instruction sets, architecture, and all key differences explained", Android Authority, December 20, 2023 https://www.androidauthority.com/arm-vs-x86-key-differences-explained-568718/

Roddy Urquhart, "Systems & Design: Opinion, Semiconductor Engineering," March 29, 2021, https://semiengineering.com/what-does-risc-v-stand-for/

Ryan Bourne, "Is This Time Different? Schumpeter, the Tech Giants, and Monopoly Fatalism," Cato Institute, June 18, 2019 https://www.cato.org/publications/policy-analysis/time-different-schumpeter-tech-giants-monopoly-fatalism

Saul Sugarman, "So I visited the last Blockbuster on the planet, and all I got was this t-shirt," The Bold Italic, December 8, 2023, https://thebolditalic.com/so-i-visited-the-last-blockbuster-on-the-planet-and-all-i-got-was-this-t-shirt-ffc6d2ed414d

Sebastian Moss, "Qualcomm announces data center CPUs, will support Nvidia's NVLink Fusion," Data Center Dynamics, May 20, 2025 https://www.datacenterdynamics.com/en/news/qualcomm-announces-data-center-cpus-will-support-nvidias-nvlink-fusion/

Semiconductor Industry Association, "2022 State of the U.S. Semiconductor Industry," November 2022, https://www.semiconductors.org/wp-content/uploads/2022/11/SIA_State-of-Industry-Report_Nov-2022.pdf

Shapiro, Carl, "Competition and the Small Business Landscape: Fair Competition and a Level Playing Field," Opening Statement of Professor Carl Shapiro House Committee on Small Business March 1 2022 https://www.congress.gov/117/meeting/house/114436/witnesses/HHRG-117-SM00-Wstate-ShapiroC-20220301.pdf

Simon Sharwood, "Arm gives up on killing off Qualcomm's vital chip license," The Register, February 6, 2025, https://www.theregister.com/2025/02/06/arm_qualcomm_nuvia/

Skye Jacobs, "Former Intel engineers from AheadComputing to break CPU performance limits with RISC-V design," TechSpot, June 12, 2025, https://www.techspot.com/news/108281-former-intel-engineers-form-aheadcomputing-break-cpu-performance.html

Stan Gibson, "AWS ARM-based chips could shift microprocessor market," TechTarget, April 28, 2020, https://www.techtarget.com/searchaws/feature/AWS-ARM-based-chips-could-shift-microprocessor-market

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Stephen Nellis and Jane Lee, "Arm sues Qualcomm, aiming to unwind Qualcomm's $1.4 bln Nuvia purchase," Reuters, September 1, 2022, https://www.reuters.com/legal/chips-tech-firm-arm-sues-qualcomm-nuvia-breach-license-trademark-2022-08-31

Stephen Nellis, "Apple inks new long-term deal with Arm for chip technology, according to filing," Reuters, September 5, 2023 https://www.reuters.com/technology/apple-inks-new-long-term-deal-with-arm-chip-technology-filing-2023-09-05/

Stephen Shankland, "SCO targets Linux customers," CNET, May 14, 2003, https://www.cnet.com/tech/services-and-software/sco-targets-linux-customers/

Steve McDowell, "Qualcomm's Game-Changing Move Into Automotive And Industrial IoT," Forbes, January 28, 2025, https://www.forbes.com/sites/stevemcdowell/2025/01/28/qualcomms-game-changing-move-into-automotive-and-industrial-iot/

Steve Mollman, "Blockbuster 'laughed us out of the room,' recalls Netflix cofounder on trying to sell company now worth over $150 billion for $50 million," Fortune, October 22, 2024, https://finance.yahoo.com/news/blockbuster-laughed-us-room-recalls-174322621.html

Swagath Bandhakavi, "FTC ends legal challenge against Microsoft's $69bn Activision Blizzard acquisition," Tech Monitor, May 23, 2025 https://www.techmonitor.ai/digital-economy/big-tech/ftc-microsoft-activision-blizzard-deal

Timothy Green, "Qualcomm is Going After Intel and AMD in This Lucrative Market," January 16, 2025,  https://finance.yahoo.com/news/qualcomm-going-intel-amd-lucrative-101500205.html

Tobias Mann, "Jury spares Qualcomm's AI PC ambitions, but Arm eyes a retrial," The Register, December 23, 2024, https://www.theregister.com/2024/12/23/qualcomm_arm_trial/

Tom Simonite, "With Its Own Chips, Apple Aims to Define the Future of PCs," Wired, Nov 10, 2020, https://www.wired.com/story/own-chips-apple-aims-define-future-pcs/

U.S. Department of Justice & The Federal Trade Commission, "Vertical Merger Guidelines," June 30, 2020 (now withdrawn), https://www.ftc.gov/system/files/documents/reports/us-department-justice-federal-trade-commission-vertical-merger-guidelines/vertical_merger_guidelines_6-30-20.pdf

U.S. Department of Justice & The Federal Trade Commission, Commentary on the Horizontal Merger Guidelines, March 2006, https://www.justice.gov/d9/383663.pdf

U.S. Department of Justice & The Federal Trade Commission, Merger Guidelines, December 18, 2023, https://www.justice.gov/d9/2023-12/2023%20Merger%20Guidelines.pdf

Victor Keegan, "Will MySpace ever lose its monopoly?" The Guardian, February 8, 2007, https://www.theguardian.com/technology/2007/feb/08/business.comment

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

Wayne Ma & Cory Weinberg, "How a Lopsided Apple Deal Got Under Arm's Skin," The Information, November 29, 2023, https://www.theinformation.com/articles/how-a-lopsided-apple-deal-got-under-arms-skin

Will Abbey, "Flexible Licensing, Boundless Innovation: How Arm is Accelerating Partner Success," Arm, November 1, 2023, https://newsroom.arm.com/blog/arm-licensing-models

Young Hyun Jun, "Dearvalued [sic] customers, investors, and employees of Samsung Electronics," Samsung, October 8, 2024, https://www.samsung.com/global/ir/reports-disclosures/public-disclosure-view.84206/

Zac Hall, "Apple makes up less than 5% of Arm's revenue, and Arm can't do anything about it," 9to5mac, November 29, 2023, https://9to5mac.com/2023/11/29/apple-arm-licensing-revenue/

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

**APPENDIX C: TRANSCRIPT OF INTERVIEW OF RENE HAAS, ARM'S CEO, OCTOBER 22, 2024**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

**Source: "Arm CEO on Intel, Chips, AI, Listing in US," Bloomberg Technology, YouTube, October 22, 2024, https://www.youtube.com/watch?v=6FnBz8rxWUY**

*Peter Elstrom (Executive Editor Technology Bloomberg, PE): That's why I have you. And thank you all for joining us. We have a lot of questions for you, so we'll go ahead and get started. First, I begin. You are not just the of Arm you're now a podcaster. You began in your spare time I guess. You began a new podcast is called 'Tech Unheard' and your first interview was was with Jensen Huang. That's right which I gave a listen to. First of all, what gave you the idea to start a podcast? And secondly, how do you find the time as CEO to do something like that too?*

Rene Haas (Arm CEO): Yeah. So first off, thank you again for for having me here. I'm an amateur at this, so you don't have to worry about your day job as far as podcasting goes. You know, we were talking with some of our board members about how to use a unique medium to talk to two leaders, talk about the Arm story. And one of the ideas that was suggested was was a podcast. I was a radio disc jockey actually spinning records in university. So, I had a little bit of experience and aspirations to do that kind of work early in my life. So, in talking with some folks, you know, around the team, we said, you know, let's let's try this and let's do something a little bit more innovative and talk to other leaders and give them a perspective of maybe a conversation that they may not naturally have with someone who's professional like you are. So, yeah, we kicked it off. Please listen, it's on Apple Music, Spotify and Jensen was my first guest.

*Peter Elstrom: Great, Great. Congratulations. And, you know, in terms of the business Arm was acquired by SoftBank for about three two billion dollars. At some point, SoftBank agreed to sell it for about 40 billion dollars. That deal didn't go through, of course, NVIDIA was supposed to buy it. That deal didn't go through. Now, you went public just over a year ago, companies worth roughly 160 billion dollars, which seems like a successful IPO. But could you talk to us about what the business model for Arm has been and how it's evolved over time, over that period of time? And especially, what's the strategy going forward?*

Rene Haas: Yeah, well, thank you for the you know, for the nice words. 30-year-old plus company. Our business model for most of our time on earth, if you will, was very horizontal in that we had a licensing model. We develop IP. Our products are primarily CPUs. The business model is very horizontal in nature, meaning that we designed a very general-purpose product,

C - 1

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

very power efficient product, and then license it to customers independent of the vertical market. And in other words, we didn't really target a certain vertical. I took over the core IP business right after SoftBank bought Arm and we pivoted to a more of a vertical approach, meaning that we now have products very specific for the data center, very specific for automotive, very specific for IoT. Smartphones we were born. And that diversification really allowed us to expand into many new markets with brand new products. SoftBank buying Arm in 2016 allowed us to invest in those new areas. So fast forward the result. What you're seeing now in terms of performance is that strategy. You know, going forward as we think about the next number of years, what we're seeing in the marketplace is a need for more solutions. Chips are getting increasingly more difficult to build. It takes a long time to design a chip, takes even longer to fabricate the chip. So, the more that Arm can do to help customers get to market faster is helpful. So, we're now developing solutions, what we call "CSSs" that get people to market sooner and allow them to get more profitably in a sooner way.

*Peter Elstrom: Mm hmm. Okay. I want to talk about AI. And in particular, the opportunities in AI. There is some debate, as we've referred to, I think, in a couple of these sessions about whether there's a bubble in AI. And I'm going to assume that you think that there are real opportunities there. But can you talk about what Arm's role is there and how you see the company evolving to take advantage of those opportunities?*

Rene Haas: So, one of the most unique things about our company is the fact that the device that we build, the CPU, we estimate that 70% of the world's population touches Arm in some way. We're in security cameras, automobiles, PCs, smartphones, data center. And what that means is every workload, whether it's an application, an operating system or AI, runs through Arm in some way. So, that means AI. is going to run on Arm, period. And we're the only company on the planet that can run those AI workloads from the smallest devices on the edge. Again, a wearable, glasses, watch, phone to the data center. So, for us, AI is a gigantic opportunity in terms of growth going forward because AI is going to be everywhere. And as far as a bubble goes, I just don't ascribe to that. I look at things such as when people say, Gosh, is it overhyped? Or the stocks have gone down last quarter. That's almost like saying should I short AT&T in 2000 because the Internet is not going to happen. Or if Ford was a stock in 1907, would I short them? Because the automobile is not going to happen. It's just not. I mean, AI is we've seen such

C - 2

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

advancement across the AI in the last couple of years that the amount of innovation that it's going to drive is just going to be incredible.

*Peter Elstrom: Okay. Okay. The chip company that probably has taken the most opportunity that has been able to capitalize the most on AI so far is NVIDIA. Chip maker in your space. They now have a near monopoly in terms of the highest end AI accelerators. How do you see that evolving in the future? And are there opportunities for Arm in particular to be able to play in that space and drive real revenue from?*

Rene Haas: Yeah. So, we're there already. NVIDIA's most advanced chip called the GB200, which is Grace Blackwell. Microsoft just announced that they're going to be deploying Grace Blackwell, the most advanced NVIDIA chip in their data centers that uses the Arm CPU. So, Grace is the Arm CPU. Blackwell Is the Nvidia GPU. So, Arm is there already. So, we are going to play in the most advanced data centers using AI. Arm, Arm will be there. I think what's most exciting for us, as I mentioned though, is the fact that not only will we be in the data center for training these algorithms, ultimately the training has to be transferred into inference, and training is the teacher inference is the student. Inference is actually running the workload and inference actually running that AI agent that's going to happen in the data center, that's going to happen in the car, that's going to happen on your watch. That's going to happen in glasses, that's going to happen in phones, and everywhere it happens, it's going to run on Arm. So, it's going to be a gigantic opportunity for us. The data center is just one place.

*Peter Elstrom: Mm hmm. Okay. So, you see Arm having opportunities kind of from the beginning to the end.*

Rene Haas: More than, more than opportunities. The agents will run locally. And the reason for that is you'll have a hybrid situation where some of that will run in the cloud. Some of it will run in your local device. Again, your glasses, your wearable, your phone. But locally, what you'll be able to add is security, things that can make sure it's private to you that not all your data is being passed to the cloud and vice versa. So yeah for for Arm I think it's going to be just an amazingly large opportunity.

*Peter Elstrom: Okay. As we were talking about before, I just moved from Japan where we spent a lot of time looking at SoftBank and especially Masayoshi Son's ambitions. We've written stories*

C - 3

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

*about how SoftBank is looking at ways to enter the AI chip market and particularly to compete with NVIDIA, quite directly in GPUs. He has a secret plan "Izanagi" that we've written about in the past. How does* Arm *isn't still 90% owned by SoftBank? How does* Arm *fit into that equation?*

Rene Haas: Yeah, so no, no product launch announcements today. So, nothing I can say about products coming out that you've written about. I can say that on the SoftBank board member, I do advisory work for SoftBank. I talked to Masa all the time. It's no secret that he is a big believer in AI has been for quite some time. He's talked about it actually, probably as long as any of the folks out there. I think his vision in terms of where it's all coming together now, you can start to see the pieces of it as I just described. Where does Arm fit  - all those AI workloads are going to run on Arm somewhere somehow. So that's the reason that we spend a lot of time talking to SoftBank about the future.

*Peter Elstrom: Okay. Okay. Earlier we had the ASML CEO on and he was talking about some of the challenges that they're facing in the market. They surprised investors last week as we talked about. And it does seem that there's a little bit of a disconnect in the market where many people see opportunities. ASML reported that their orders were about half what analysts had thought they were going to be. Seems there are certain areas of the chip industry that are struggling quite a bit. And on the other end you have Sam Altman talking about how we need more capacity in the chip industry. We need billions of dollars, maybe trillions of dollars of investment. What is the disconnect and how does that get resolved?*

Rene Haas: Yeah, so there's a lot to unpack there. Where Arm plays, as I mentioned because 70 % of the world's population uses Arm. And I think 300 billion chips have shipped since we were started that have Arm inside. And every year about 30 billion chips. We have a unique view into the industry because just about every digital device uses Arm. There are some markets that aren't accelerating as fast as others and candidly those are the ones that aren't using AI in a very large way. But in areas that can use AI and will use AI, people can't go fast enough. And I'll give you an example. Many of the hardware devices that are being introduced today were designed two or three years ago. That means the chips were designed two or three years ago. The chips that are going in your phones or your wearables. Those were all invented before ChatGPT was released

C - 4

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

or before Lamo was released. So what we're seeing on one end of the industry is just a rush to develop more and more chips that have this AI capability. Now it takes time. You know, chips aren't built overnight. In fact, it takes from the time we engage a partner, you know, two or three years at least until that comes to market. So I think you'll see some of these new products coming out. I think what Sam is talking about is just generally the ceiling to get to AGI. Artificial general intelligence requires more compute. And the more compute you have, the better the models get. So, I see. I see both. But generally speaking, I'm pretty optimistic about the growth for our industry.

*Peter Elstrom: Okay. Okay. We were talking about this a bit before. One of the gating factors is making sure that you have chip manufacturers who can make the most advanced chips. TSMC seems to be gaining market share right now as a couple of the key competitors struggle, Intel in particular. And Samsung also has been struggling a bit. They're both trying to move into the foundry business a bit in competition with TSMC. What what are the dangers around having TSMC garner so much market share in foundry? And is it good for the industry or would it be better if there's a more diversified manufacturing base for the industry?*

Rene Haas: Yeah, TSMC is an amazing company. They've just done so much for the industry relative to the innovation, how they work with partners, etc. etc. If you remove semiconductor manufacturing or foundry for a moment and just step back and say, is it healthy for any industry to have a one dominant supplier and then add on top of that a dominant supplier that's largely concentrated in one part of the world? Not, not really. So as a result, I think it's necessary just in terms of diversity of supply base, to have more and more advanced manufacturing and geographic diversity. Fabs in the United States. Fabs in Europe. Fabs in India. Fabs in Saudi Arabia. I think over time, we're going to see not only more suppliers, but geographic diversity as well.

*Peter Elstrom: Okay. Governments obviously are investing a lot in that very question. You're seeing the United States do it. You're seeing Europe do it. Japan has spent a lot of money on it, too. Do you think that's making progress at this point? Do you see light at the end of that tunnel?*

Rene Haas: It's the the capital expenditures required for these fabs are enormous. TSMC, Intel, Samsung, I think their CapEx is anywhere between 30 to 35 billion dollars a year in new

C - 5

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

factories. And if you start looking at the revenues that these companies produce, you start very quickly looking at, oh my gosh, that is a lot of money to invest. Now, on one hand, you can look at it and say, well, the demand will be there, AI, etc., etc.. But it doesn't take much in terms of a year slowdown in demand and the companies have a really negative financial outcome. So, yes, governments have been involved, I think should be involved in my opinion. We saw in the U.S. for the very first time a policy act around CHIPS Act to put funding into the fabs, which I generally a big supporter of. I think it's necessary.

*Peter Elstrom: Okay. Let's talk a little bit more about Intel and their struggles. You grew up in a chip industry where Intel was really the dominant player, kind of set the pace for technology evolution over time. Now we're openly talking about whether Intel is going to be broken up, maybe sold into pieces. What kind of opportunities are there for* Arm *within that space as Intel goes through these struggles?*

Rene Haas: Yes, we work very closely with Intel. It's a bit of strange bedfellows. Many folks would consider Arm and Intel to be natural competitors on the product space. But what's very important to us, back to this discussion around supply base is that "Intel Foundry Services" IFS is successful. We do a lot of work with Intel as we do with Samsung and TSMC to ensure that our products can be manufactured there. We work very closely with their engineers to ensure that the leading edge technology can can run on Arm. So, we want to see Intel successful and we want to see IFS successful. I think it might be strange to hear the Arm CEO say that, but we want Intel manufacturing to be successful.

*Peter Elstrom: Okay. Bloomberg reported that* Arm *took a pretty close look at buying a part of Intel. Would you like to comment?*

Rene Haas: Nothing I can say on that one.

*Peter Elstrom: "Okay. All right.  Thank you. Thank you. I wanted to turn. You talked about are moving up the value stack kind of moving beyond its traditional place in the industry. And as you have moved up the value chain, you've gotten closer to doing what some of your customers do."*

Rene Haas: "Right."

C - 6

**A1334**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

*Peter Elstrom: "Getting closer to being able to do these complete designs. And. Yes. It speeds up innovation, as you were alluding to, but it also puts you in closer competition with some of your customers. You have a lawsuit with Qualcomm in particular."*

Rene Haas: "Yeah."

*Peter Elstrom: "Isn't it in both companies interest to settle that and to resolve the legal dispute at this point? Or what would you say?"*

Rene Haas: "These are these are tough questions. It's a good thing I'm a podcaster, so I know what's coming. You know, first thing on, competing with our customers, you know, it's rather complicated because if you look at some of our customers, our customers are Amazon. Our customers are Microsoft. Our customers are Apple. Our customers are Tesla. They all build chips using Arm. I'm not going to build an electric car. I'm not going to build a phone. I'm not going to build a data center. So, to look at the value chain relative to who builds chips, relative to whether you're end business is a chip business or a product business. It's gotten a lot more gray. We follow what the industry is demanding, and what the industry wants to see is solutions getting to market faster. And that's what we're focused on. Qualcomm. Not much I can say on that, other than we're headed to a trial. I think it's the third week in December. We feel very good about our case. We think our case is quite simple and straightforward. And as I said, December, we'll find out."

*Peter Elstrom: "Okay. So, you head to the courtroom then. One last question. I think we have time for this. In this audience in particular, there's a lot of interest in whether* Arm*, which is historically a British company, whether they would ever look at doing some sort of dual listing. Of course, we've heard about this many times in the past. A year ago when you did your IPO, you decided you would do it in the U.S. instead. One of the opportunities for listing here, what are the pluses and minuses of that sort of thing?"*

Rene Haas: "Yeah, we did. We listed in New York over over a year ago. And at that time our comments were we would look at a secondary listing. We're still open to it. It's not something that's top of mind right now, quite candidly. But we'll continue to have discussions with both stakeholders in the government and in the local exchange. We'd love to find a way at some point

C - 7

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SUBJECT TO PROTECTIVE ORDER

in time, but also at the same time, there's a lot of other things that keep me busy relative to my day job."

*Peter Elstrom: "Okay. All right. Rene Haas, thank you very much. Please join me in welcoming. Thank you. Thank you."*

C - 8

# Exhibit 12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 24-490 (MN) |
| v. | ) ) | **SUBMITTED UNDER SEAL –** |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>a U.K. corporation, | ) ) ) | **HIGHLY CONFIDENTIAL –**<br>**ATTORNEYS' EYES ONLY** |
| Defendant. | ) ) ) | |

## PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI IN SUPPORT OF THEIR MOTION TO STRIKE THE EXPERT REPORTS OF ARM'S EXPERTS MICHAEL C. BROGIOLI, PH.D. & STEVEN RICHARDS, CPA

OF COUNSEL:

Catherine Nyarady
Jacob A. Braly
Jacob Apkon
PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Adam Basner
PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007
(202) 240-2900

September 16, 2025

Dear Special Master Rychlicki:

Qualcomm submits this letter in support of its motion to strike the expert reports of Michael C. Brogioli, Ph.D. (Ex. 1) and Steven Richards, CPA (Ex. 2).

## I.    The Brogioli and Richards Reports Are Not Proper Rebuttal.

On August 8, 2025, Qualcomm served two expert reports:  one from law professor Eric Posner relating to the anticompetitive effects of Arm's unfair competition (Ex. 3), and one from Dr. Patrick Kennedy, a damages expert (Ex. 4).  Arm served four expert reports on September 5, 2025, including the Brogioli and Richards reports.  Pursuant to the Scheduling Order, the only expert reports that could be properly served on that date were those that "contradict[ed] or rebut[ted] evidence on the same matter identified by another party."  D.I. 44 ¶ 7(g)(i).  But the Brogioli and Richards reports "do not directly contradict or rebut the actual contents of [the] prior report[s]" and accordingly "do not qualify as proper rebuttal or reply reports."  *See Withrow v. Spears*, 967 F. Supp. 2d 982, 1002 (D. Del. 2013).  Tellingly, on the parties' September 15 meet and confer, in response to repeated questions, ████████████████████████████ ███████████████████████████████████ Ex. 5 at 37:19-39:11.  Indeed, the reports themselves indicate that they are not rebuttal.



Brogioli was ███████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████ Ex. 1 ¶¶ 369-394.  But neither of Qualcomm's experts provided any "technical assessment" on any of these topics.[1]  Though Brogioli claims that his 419-paragraph report is responsive to one paragraph in the Kennedy report (Ex. 4 ¶ 32) and five paragraphs in the Posner report (Ex. 3 ¶¶ 22, 28, 61, 65, and 77), those paragraphs contain recitation of Qualcomm's factual allegations—not technical opinions.[2]  *See* Ex. 1 ¶¶ 22, 167-168, 396.  And entire sections of Brogioli's report on ██████████████████████████ do not reference Qualcomm's experts at all.  *See* Ex. 1 ¶¶ 369-394.

Richards was asked by Arm's counsel to opine on ██████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████ Ex. 2 ¶ 2.  Again, neither of Qualcomm's experts provided any opinion regarding Qualcomm's public disclosures.  And, again, Richards's 94-paragraph report is not responsive to the three paragraphs in the Kennedy report (Ex. 4 ¶¶ 118, 124, and 125) and one paragraph in the Posner

---

[1]    Dr. Kennedy is an economist and Professor Posner is an attorney.  They did not (and could not) offer any "technical assessment."

[2]    The paragraph in Kennedy's report that Brogioli is purportedly responding to plainly begins: ██████████████████████████████████ Ex. 4 ¶ 32.

report (Ex. 3 ¶ 65) that he purportedly rebuts. *See id.* As in Brogioli, each Kennedy report paragraph Richards cites expressly says it is reciting what █████████████████ Ex. 2 ¶ 62. And the Posner report paragraph simply states, among other points unrelated to the October 22 letter, that █████████████████████████████████████████████████████████████████ Ex. 2 ¶ 63; Ex. 3 ¶ 65.

Under Rule 26, "rebuttal reports are intended to contradict or rebut evidence on the same subject matter in the opposing party's initial report…[I]t is insufficient for a report to 'simply address the same general subject matter as a previously-submitted report'; the report must contradict or rebut the actual contents of the initial report." *Wang v. Injective Labs Inc*., 2025 WL 775530, at *1 (D. Del. Mar. 11, 2025) (citation omitted).

Brogioli's and Richard's "scant mention[s]" of Qualcomm's experts and "discuss[ion of] different and largely distinct topics" confirm that these are not proper rebuttal reports. *Withrow*, 967 F. Supp. 2d at 1002-03. Where, as here, a purported rebuttal expert "does not engage with, or even cite to" an opening expert's opinions for entire sections of his report, his "opinions are not appropriate subject matter for a rebuttal report." *Wang*, 2025 WL 775530, at *2. The Brogioli and Richards reports offer new opinions that Arm cannot appropriately raise now.[3]

## II.    The Brogioli and Richards Reports Should Be Stricken

As the Brogioli and Richard reports are not appropriate rebuttal, the inquiry turns to whether Rule 37 and the *Pennypack* factors[4] favor exclusion. *Wang*, 2025 WL 775530, at *4 (analyzing non-rebuttal portions of expert reports under *Pennypack*). A party that fails to disclose information or identify a witness as required "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Third Circuit has accordingly "upheld the exclusion of expert witnesses as an appropriate sanction for a party's violation of a … pre-trial order." *Allen v. Parkland Sch. Dist*., 230 F. App'x 189, 194 (3d Cir. 2007) (quotation omitted).

---

[3]    On the meet and confer, Arm declined to take the position that its reports were served in support of any of its affirmative defenses. *See, e.g.*, Ex. 5 at 34:16-18 (██████████████████████ ████████████████████"). This is not surprising, as any such opinions would have been due on August 8. *See* D.I. 44 ¶ 7(g)(i) ("For the party who has the initial burden of proof on the subject matter, the initial Federal Rule of Civil Procedure 26(a)(2) disclosure of expert testimony is due on or before August 8, 2025."); *Lucent Techs., Inc. v. Newbridge Networks Corp*., 168 F. Supp. 2d 181, 242 (D. Del. 2001) (party asserting an affirmative defense bears burden of proving it). Arm cannot now argue otherwise.

[4]    The *Pennypack* factors are: (1) the surprise or prejudice to the moving party; (2) the ability to cure such prejudice; (3) the extent to which the evidence would disrupt the order and efficiency of trial; (4) the offering party's bad faith or willfulness; and (5) the importance of the expert opinions at issue. *Wang*, 2025 WL 775530, at *2.

Where, as here, the party who breaches its obligations is engaged in sophisticated litigation and "represented by competent counsel," the District of Delaware has been "more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Id.* at *3 (quotation omitted) (collecting cases). Arm and its sophisticated counsel should not be permitted to ignore Court orders, and each of the *Pennypack* factors favors exclusion here.

With respect to the first two *Pennypack* factors, Arm's improper reports have prejudicially left Qualcomm with "two bad options: either scramble to have an expert respond in an effort to preserve an expert opinion on the [] allegations if the Court allowed them into the case; or offer no response and risk not preserving an opinion for trial if the pending Motion to Strike was denied." *Galderma Lab'ys, L.P. v. Amneal Pharms., LLC*, 2018 WL 508876, at *2 (D. Del. Jan. 22, 2018) (quotation omitted).[5] Qualcomm is also prejudiced by "hav[ing] to spend additional time and money to refute [Arm's] new theories" if these reports are not stricken. *St. Clair Intell. Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 2012 WL 1015993, at *8 (D. Del. Mar. 26, 2012), *aff'd*, 525 F. App'x 915 (3d Cir. 2013). Even where a prejudiced party can depose a late-disclosed expert and file a report rebutting his opinions, "it would be unjust to penalize [the moving party] for doing its best under difficult circumstances" such that the *Pennypack* factors concerned with prejudice can still favor exclusion. *Cirba Inc. v. VMware, Inc.*, 2023 WL 6799267, at *3 (D. Del. Mar. 30, 2023) (quotation omitted). Given that expert discovery is supposed to close in just 17 days (on October 3), with dispositive and *Daubert* motions to be filed just a few weeks later on October 24, the additional time that Qualcomm would have to spend addressing these improper reports would incurably take away from time "it would otherwise spend preparing dispositive [and *Daubert*] motions." *Wang*, 2025 WL 775530, at *4.

On the third *Pennypack* factor, the "further delay and prolonged disruption" necessitated by additional responsive expert reports and discovery prompted by inappropriately disclosed reports can satisfy concern for disruption to an orderly trial. *St. Clair*, 2012 WL 1015993, at *8. This applies even where a trial date has not been set, unlike here where trial has long been set for March 2026. Any delay to the quickly approaching end of expert discovery and dispositive motion dates resulting from Arm's failure to comply with the Scheduling Order will prejudice Qualcomm, as the Court seeks to close dispositive motion briefing approximately four months before the pretrial conference. *See* Ex. 6 (J. Noreika Form Scheduling Order ¶ 9); D.I. 44 ¶¶ 9(a), 12 (briefing on dispositive motions closes November 14; pretrial conference is March 2). Yet that may be precisely Arm's strategy: Arm does not want this trial to proceed as scheduled and raised with Judge Noreika at the August 29 hearing on the parties' motions for judgment as a matter of law in the *Arm v. Qualcomm* case its view that this trial should be delayed until the conclusion of yet-unfiled appeals in that prior case. Ex. 7 at 46:16-47:16. The Court declined to engage on Arm's efforts to delay this trial, and Qualcomm should not be forced to suffer a delay now because of Arm's non-compliant disclosures. Additionally, allowing these improper reports and associated testimony will disrupt the orderly and efficient progression of trial because Arm will put on

---

[5]    Unlike in *Withrow*, where the court did not find prejudice, Qualcomm did not "receive[] a preview of the content" of the Brogioli or Richards reports, 967 F. Supp. 2d at 1004, and had to start from scratch in considering its response.

3

purported rebuttal witnesses that are not actually contradicting anything the jury has heard from Qualcomm's witnesses.

With respect to the fourth factor, these improper rebuttal reports, along with Arm's late notification of third parties whose agreements with Arm are the subject of Qualcomm's document requests and late production of critical agreements it repeatedly represented it had already provided,[6] "are part of a developing pattern of untimeliness, which weighs in favor of excluding" the reports. *Wang*, 2025 WL 775530, at *4 (quotation omitted); *see also Cirba*, 2023 WL 6799267, at *3 (striking expert evidence where there was no direct evidence of bad faith or willfulness, but there were "previous instances in which [the late-disclosing party's] conduct was questioned"). Arm has not offered any excuse for its improper rebuttals, claiming instead that it complied with the Scheduling Order. Ex. 5 at 38:19-39:4. Ultimately, any justification Arm may volunteer for its improper reports is not dispositive as there need not be proof that Arm acted willfully or in bad faith to be subject to the exclusion of its inappropriately disclosed evidence. *See St. Clair*, 2012 WL 1015993, at *8 (excluding supplemental report without any allegation or evidence of bad faith or willfulness).

Finally, the opinions Arm seeks to introduce from the Brogioli and Richards reports are either unimportant or irrelevant to the overall case and Arm has other options for presenting similar evidence, if appropriate. Arm is the defendant in this case; it does not bear the initial burden of proof on anything besides the affirmative defenses it has chosen to assert and Arm did not claim on the parties' meet and confer that it needs Brogioli or Richards to support those defenses. *See Wang*, 2025 WL 775530, at *4 (excluding new opinions where not "genuinely critical" to case); Ex. 5.[7] Arm's fact witnesses can presumably explain Arm's own verification-related technology and v10 features to the jury in place of Brogioli (who has no direct experience with Arm's

---

[6]     *See* Qualcomm's 9/15/2025 Ltr. Regarding Newly-Discovered Facts and Subsequent Events.

[7]     Arm may try to change its position from the meet and confer and claim it needs Brogioli for its unclean hands defense premised on the theory that "Qualcomm continues to attempt to benefit from its improper acquisition of Nuvia technology and the related material breach of the Nuvia ALA by wrongly insisting that the unlicensed Nuvia technology is licensed under the Qualcomm ALA and seeking to enforce verification obligations as to that unlicensed technology." D.I. 234 at 43. Putting aside that Arm should not be allowed to assert a changed purported justification for its improper report and that this argument would not cure untimeliness, a jury already rejected Arm's defense when it found "that the Qualcomm CPUs that include designs acquired in the Nuvia acquisition are licensed under the Qualcomm ALA." Ex. 8.

As noted when Your Honor asked, ███████████████████████████████████ ████████████████████████████ Arm believes that ██████████████████████ ███████████████████████ Ex. 9 at 188:14-23. The Court has indicated that it will issue its post-trial opinion as soon as possible (Ex. 7 at 47:23-48:3), at which point Qualcomm expects Arm's unclean hands defense will become entirely precluded.

4

technology anyway[8]), and Arm's attorneys can make the legal arguments to the Court that Richards is proffering, if such evidence or arguments are not otherwise excluded. Any claimed importance Arm ascribes to these reports cannot "outweigh" the prejudice they cause to Qualcomm. *360Heros, Inc. v. GoPro, Inc*., 2022 WL 2063262, at *2 (D. Del. June 8, 2022) (denying requests to submit supplemental expert reports because they would necessitate additional depositions and "at least consideration of rebuttal reports" four months from trial).

Arm's improper disclosure of the non-rebuttal opinions in the Brogioli and Richards reports was not "substantially justified" or "harmless," and the reports should be stricken.


Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 2,395

---

[8]     Brogioli states that ███████████████████████████████████████████
████████████████ Ex. 1 ¶ 154.

5

**A1343**

# Exhibit 13

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC, f/k/a, ARM LTD. a U.K. corporation<br><br>Defendant. | C.A. No. 24-490-MN<br><br>**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY** |

## ARM HOLDINGS PLC'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S FIRST SET OF INTERROGATORIES (NOS. 1–3)

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States District Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm")'s First Set of Interrogatories (Nos. 1–3).

## GENERAL OBJECTIONS

Arm makes the following general objections, which are hereby incorporated by reference and made part of its response to each and every Interrogatory.

1.     Arm objects to each Interrogatory to the extent it purports to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

2.     Arm objects to the "Instructions" and "Definitions" sections to the extent they purport to alter the plain meaning and/or scope of any specific Interrogatory, on the ground that

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

such alteration renders the Interrogatory vague, ambiguous, overly broad, and/or uncertain, by failing to adequately define terms or by using terms the meaning of which are not readily available or decipherable.  Arm's responses to such Interrogatories shall not be construed as an admission, agreement, or acquiescence to any such instruction or definition.  Arm further objects to the "Instructions" and "Definitions" sections to the extent they purport to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

3.       Arm objects to the definitions of "Defendant," "Arm," "you," and "your" as overly broad and unduly burdensome to the extent they purport to require Arm to provide information that is not within the possession, custody, or control of Arm Holdings PLC, or to otherwise respond on behalf of third parties, at least because these definitions include entities that have no relation to the present litigation.

4.       Arm objects to the definitions of "ALA" and "TLA" as overbroad and vague and ambiguous to the extent they define Architecture License Agreement and Technology License Agreement to include "all amendments and annexes to any such agreement."

5.       Arm objects to the definition of "██████████████" as overbroad and vague and ambiguous to the extent it defines the term by reference to the definition of that term in "Section

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

███ of the Qualcomm ALA, ██████ of the Qualcomm v8-A ALA Annex, or ██████ of the Qualcomm v9-A ALA Annex."

6.     Arm objects to the definition of "ACK" as overbroad and vague and ambiguous to the extent it defines the term as meaning "Arm's Architecture Compliance Kit or Arm's Architecture Validation Suite or Arm's Architecture Compliance Suite."

7.     Arm objects to each Interrogatory, including the instructions and definitions that Qualcomm purports to incorporate therein, to the extent that each Interrogatory is overbroad, unduly burdensome, not limited to a reasonable time frame, vague and ambiguous, irrelevant, and/or not reasonably calculated to lead to the discovery of admissible evidence.

8.     Arm objects to each Interrogatory to the extent it seeks information, documents, and/or things that are protected from disclosure by the attorney-client privilege, work-product doctrine, common-interest privilege, and/or any other applicable privilege, immunity, or protection (collectively, "privileged information").  Nothing contained in these responses should be considered a waiver of any attorney-client privilege, work-product protection, or any other applicable privilege or doctrine.  Arm does not intend to produce information or documents that would divulge any privileged information.  Any such disclosure is inadvertent and shall not be deemed a waiver of any applicable privilege or immunity.

9.     Arm objects to any factual characterizations in Qualcomm's Interrogatories.  By responding, Arm does not accept or admit any of Qualcomm's factual characterizations.

10.    Arm objects to each Interrogatory to the extent it seeks "all" or "any" facts, documents, witness identifications, or things as overbroad and unduly burdensome.

11.    Arm's discovery and investigation in connection with this case is ongoing.  Arm's responses to these Interrogatories are based on its knowledge to date following a reasonable

**HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY**

investigation.  As a result, Arm's responses are provided without waiver of Arm's right to: (a) object to other interrogatories directed to the subject matter of these Interrogatories and responses; (b) make additional or supplementary objections to these Interrogatories; or (c) revise, amend, supplement, or clarify the contents of these responses.

Subject to and without wavier of these General Objections and the more specific objections set forth below, Arm responds as follows:

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1:

Identify and describe in detail all ████████████████ thereto, or any other downloads, releases, notes, publications, materials, support, or the like, including ACK patches and OOB tests, that Qualcomm is entitled to under the Qualcomm ALA that Arm has released, distributed, or otherwise made available since June 1, 2022 but not provided to Qualcomm. For each such item identified, your response should include (i) a description of the licensed item, (ii) the type of information (i.e., ████████████████ ████████████████), (iii) the date(s) the item was made available by Arm, (iv) the names of any Arm licensee other than Qualcomm who received the item, (v) the date(s) of distribution to each Arm licensee other than Qualcomm, (vi) the terms and conditions, including cost, of each Arm licensee for each item identified in response to (iii)-(v), (vii) the three (3) Persons affiliated with Arm with the most knowledge of your response, and (viii) an identification of all documents (by Bates number) that support your response.

### RESPONSE TO INTERROGATORY NO. 1 (MARCH 24, 2025):

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory to the extent it seeks to characterize "any other downloads, releases, notes, publications, materials, support, or the like, including ACK patches and OOB tests" as "████ ████████████████ thereto." Arm objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case, including because it seeks the identification and description of "all … or any other" items, materials, or actions from a list of broad and undefined categories, including "notes, publications, materials, support, or the like." Arm objects to this Interrogatory to the extent it calls for a legal conclusion. Arm further objects

**HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY**

to this Interrogatory as seeking information that is more readily available to Qualcomm than it is to Arm. Arm further objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information regarding what Arm provided licensees other than Qualcomm under or relating to license agreements to which Qualcomm is not a party. Arm objects to this Interrogatory's use of the phrase "or the like," as vague and ambiguous. Arm objects to this Interrogatory to the extent it seeks privileged information. Arm additionally objects to this Interrogatory as compound and constituting several, discrete interrogatories.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

There are no "████████████████████," as these terms are used in the Qualcomm ALA (including ████████████), and each Annex 1 thereto, or any downloads, releases, notes, publications, materials, support, or other materials, including ACK patches and OOBs, that Qualcomm is entitled to under the Qualcomm ALA that Arm has released, distributed, or otherwise made available since June 1, 2022 but not provided to Qualcomm.

Arm's Interrogatory No. 2 to Qualcomm seeks Qualcomm's "contention that Arm failed to meet any of its obligations under the Qualcomm ALA," and in response, Qualcomm alleges that Arm "failed to deliver (1) patches to the ACK and (2) the OOB," but does not specify any particular ACK patch or OOB that it contends Arm failed to deliver. Qualcomm's Responses and Objections to Arm's First Set of Interrogatories (Nos. 1-9) at 9-11 (March 10, 2025). However, (1) Qualcomm is not entitled to ACK patches and OOB under ████████████ at least because ACK patches and OOB are not "████████████████████"; (2) Qualcomm is not entitled to any ACK patches or OOBs for Nuvia-based designs for the reasons explained in Arm's January 17, 2025

**HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY**

Motion For Judgment As A Matter Of Law Or A New Trial (No. 22-1146, D.I. 596); (3) notwithstanding that Qualcomm is not entitled to any support for Nuvia-based designs, Arm has since January 8, 2025 committed to provide support to Qualcomm for Nuvia-based designs during the pendency of certain litigation between the parties; (4) Arm did not withhold any ACK patches that Qualcomm was entitled to; (5) Arm did not withhold any OOBs that Qualcomm was entitled to.

**<u>Qualcomm Is Not Entitled To ACK Patches And OOB Under</u>** ███████ **<u>At Least</u>**
**<u>Because ACK Patches And OOB Are Not "</u>**███████████**<u>"</u>**

Qualcomm is not entitled to ACK patches and OOB under ███████ under the Qualcomm ALA at least because they are not "████████████."

The Qualcomm ALA, at ██████ states that "███████████████████
████████████████████████████████████████████

███████████████████ ARM_00055357 at ████. The Qualcomm ALA, at Annex 1 for the ARMv8-A Architecture (███████████████), states that

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████." ARM_00063298 at -301, ████. Annex 1 for the Armv9-A Architecture (███████████) states that ████████████████

███████████████████████████████████████████

███████████████████ QCARM_0343954 at -959, ████.

The Qualcomm ALA, at ██████ states that "'██████' means:



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



ARM_00055357 at -359, ███.

The Qualcomm ALA, at ██████ states that █████████████████████████
████████████████████████████████████████████████████████████████████
█████████████████████████ ARM_00055357 at -360, ███. The
Qualcomm ALA, at Annex 1 for the Armv8-A Architecture (█████████████████),
states that "██████████████████████████████████████████████████████████
█████████████████████████████." ARM_00063298 at -301, § ███.
Annex 1 for the Armv9-A Architecture (███████████████████) states that "██

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



██████████████████████████████████████████████████████████████████

███████████████████████████████████." QCARM_0343954 at -958, ████

ACK patches are not ████████████████████████" under the Qualcomm ALA.  An

ACK patch is a partner-specific solution to a partner-specific ACK test issue, and when that

solution is relevant to all ALA licensees, Arm typically incorporates the solution into its next

quarterly ACK release, which is made available to all ALA partners, including Qualcomm.  ACK

patches are not "████████████" at least because they are not ████████████████

██████████████████████████████████████ as defined in the Qualcomm

ALA, ARM_00055357 at ████ and because ACK patches are not ██████████████

██████████████████████████████████████████████████████████

████████████████████████████████████ to the Qualcomm ALA,

ARM_00063298 at -301, ████.  ACK patches are also not ████████████████████

██████████████████████████████ *Id.* at -301, ████; *id.* at -299–

300, ████████████████████████.  ACK patches are also not included in ████████████

████████████████ of the Armv9-A Architecture Annex 1 to the Qualcomm ALA.

QCARM_00343954 at -955–58, ████████.  None of the ██████████████" identified and listed

by part number in ████████ of the Armv8-A Architecture Annex 1 or the Armv9-A Architecture

Annex 1 to the Qualcomm ALA are ACK patches.  ACK patches are not ████████ because they

are not "███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████,"

as defined in the Qualcomm ALA.  ARM_00055357 at -359, § ████ ACK patches are not "████

**HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY**



." *Id.*

OOBs are not ▮▮▮▮▮▮▮▮▮▮ under the Qualcomm ALA. OOBs identify

which of the previously delivered ACK tests a partner should run and are based on the

configuration of the partner's design implementation. OOBs are not ▮▮▮▮▮▮▮▮" at least

because they are not ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ as defined in the Qualcomm ALA, ARM_00055357 at ▮▮▮, and because

OOBs are not ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮" as defined in the Armv8-A Architecture Annex 1 (▮▮▮▮▮▮▮▮▮

▮▮▮ to the Qualcomm ALA, ARM_00063298 at -301, ▮▮▮. OOBs are also not ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at -301, ▮▮▮; *id.* at -299–300,

▮▮▮▮▮▮▮▮. OOBs are also not included in ▮▮▮▮▮▮▮▮

▮▮▮▮ of the Armv9-A Architecture Annex 1 to the Qualcomm ALA. QCARM_00343954 at

-955–58, §§ ▮▮▮ OOBs are not "▮▮▮" because they are not ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮," as defined in the Qualcomm ALA.

ARM_00055357 at -359, ▮▮▮. OOBs are not ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ *Id.*

**Qualcomm Is Not Entitled To Any ACK Patches Or OOBs For Nuvia-Based Designs**

Nuvia-based designs (including Qualcomm's Oryon CPU cores and the CPU cores used in

Qualcomm's Hamoa, Pakala, Nordschleife, and Pegasus products) are unlicensed cores that fall

outside the Qualcomm ALA for the reasons explained in Arm's January 17, 2025 Motion For

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Judgment As A Matter Of Law Or A New Trial (No. 22-1146, D.I. 596) and Arm's February 28, 2025 Reply In Support Of Its Motion For Judgment As A Matter of Law Or A New Trial (No. 22-1146, D.I. 614). Qualcomm is not entitled to any ACK Patches or OOB for those unlicensed CPU cores. ARM_00055357 §§ ███████; ARM_00063298 § ███. Under the Qualcomm ALA, Qualcomm is licensed and permitted only to develop, verify, and sell Architecture Compliant Products. ARM_00055357 ████████; ARM_00063298 █████. Such Arm Compliant Products are limited to ██████████" that "██████████████ ████" ARM_00055357 █████. And those Architecture Compliant Cores are limited to CPU cores developed (1) under the licenses granted in the Qualcomm ALA, (2) by or for Qualcomm, and (3) based on Arm Technology that Arm delivered to Qualcomm. The pre-acquisition Nuvia designs do not satisfy any of those requirements for the reasons explained in Arm's January 17, 2025 Motion For Judgment As A Matter Of Law Or A New Trial (No. 22-1146, D.I. 596) and Arm's February 28, 2025 Reply In Support Of Its Motion For Judgment As A Matter of Law Or A New Trial (No. 22-1146, D.I. 614). The integrated circuits and central microprocessor units Qualcomm developed that incorporate or are based on the pre-acquisition Nuvia designs therefore fall outside the scope of the Qualcomm ALA and outside the scope of Arm's support obligations under that agreement. The Qualcomm ALA permits Qualcomm to seek support and verification solely for CPU designs created by Qualcomm employees, at a time when they were Qualcomm employees, but does not permit Qualcomm to seek support and verification for designs from third parties such as Nuvia.

Because the Nuvia-based designs are not licensed under the Qualcomm ALA, Qualcomm is not entitled to any ACK patches or OOBs for them under the Qualcomm ALA.

**<u>Notwithstanding That Qualcomm Is Not Entitled To Support For Nuvia-Based Designs, Arm Has Since January 8, 2025 Committed To Provide Support For Them</u>**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

On January 8, 2025, Arm sent a letter to Qualcomm stating that "Arm intends to provide support for the Nuvia CPUs, including support and verification services" pending certain litigation between the parties:

> The Qualcomm ALA was the subject of an incomplete jury verdict on December 20 that found in Qualcomm's favor. That verdict is not final and is subject to a variety of legal challenges. Nonetheless, Arm respects and values the jury process and the Court's ongoing role in resolving the parties' disputes. As a result, and while Arm's ongoing legal challenges are pending, Arm will treat the Nuvia CPUs as falling within the scope of the Qualcomm ALA, and Arm therefore withdraws the pending October 22, 2024 notice of material breach. Arm has no current plan to terminate the Qualcomm ALA until the legal process resolves the parties' disputes over the Qualcomm ALA. Arm also conditionally accepts Qualcomm's one-time, five-year year extension under which the Qualcomm ALA will expire in 2033. Pursuant to separate correspondence, Arm intends to provide support for the Nuvia CPUs, including support and verification services, while the related legal challenges remain outstanding.

1/8/2025 Arm Letter to Qualcomm.

### Arm Did Not Withhold Any ACK Patches Qualcomm Was Entitled To

Qualcomm has not identified any specific ACK patch(es) that Qualcomm contends Arm improperly withheld from Qualcomm. For example, Qualcomm does not identify any specific ACK patches that Arm allegedly withheld from Qualcomm in its response to Arm's Interrogatory No. 2, which seeks, *inter alia*, "the complete legal and factual basis for [Qualcomm's] contention that Arm failed to meet any of its obligations under the Qualcomm ALA." Qualcomm's Responses and Objections to Arm's First Set of Interrogatories (Nos. 1-9) at 9-11 (March 10, 2025). Qualcomm cites to its First Amended Complaint, where Qualcomm references Arm engineer Vivek Agrawal's deposition testimony and exhibit QX175 to his deposition (ARM_01314327) to allege that Arm "withheld from Qualcomm certain ACK 'patches.'" FAC ¶ 80 (citing Redacted Mar. 5, 2024 Hr'g Tr., *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 26, 2024), D.I. 312-1; Redacted Mar. 6 Order, Ex. A. to Pl.'s Ltr. to Hon. Laura D. Hatcher Regarding Redactions to the Mar. 6, 2024 Mem. Order, *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

(D. Del. Mar. 20, 2024), D.I. 303 at ECF p.5). Qualcomm does not, however, identify any specific ACK patches that Arm allegedly withheld from Qualcomm. *Id.*

Qualcomm's FAC cites to its November 3, 2022 and December 5, 2022 letters to Arm, however, those letters also did not specifically identify any allegedly withheld ACK patches. ARM_00025401–03. The cited requests for ACK patches in QX175 were for a product that Arm "believe[d] … to be using Nuvia technology," QX175 at ARM_01314329, and Qualcomm is not entitled to any ACK patches for Nuvia-based designs. Further, Arm continued to provide all of its ALA partners, including Qualcomm, the same quarterly ACK releases, which typically incorporate solutions to ACK test issues that are relevant to all ALA licensees. As Qualcomm acknowledged in its First Amended Complaint, Qualcomm did not need any ACK patches from Arm to run the validation tests that Arm had provided. FAC ¶ 86.

## Arm Did Not Withhold Any OOBs Qualcomm Was Entitled To

Qualcomm has not identified any specific OOBs that Qualcomm contends Arm improperly withheld from Qualcomm. For example, Arm's Interrogatory No. 2 seeks "the complete legal and factual basis for [Qualcomm's] contention that Arm failed to meet any of its obligations under the Qualcomm ALA." Qualcomm's Responses and Objections to Arm's First Set of Interrogatories (Nos. 1-9) at 9-11 (March 10, 2025). Qualcomm does not identify any specific OOBs that Arm allegedly withheld. Qualcomm cites to its First Amended Complaint, where Qualcomm references Arm engineer Vivek Agrawal's deposition testimony and exhibit QX175 (ARM_01314327) to his deposition, as well as an October 10, 2022 email that Mr. Agrawal sent to Qualcomm engineer Jignesh Trivedi, produced at ARM_01020195. FAC ¶¶ 69, 79–80. However, neither the cited testimony nor the cited documents reference any specific OOB that Qualcomm contends Arm improperly withheld; they simply reference "OOB." Likewise, Qualcomm cites to its November

**HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY**

3, 2022 and December 5, 2022 letters to Arm, but those letters do not identify any allegedly withheld OOB and instead simply reference "the OOB." ARM_00025401–03. The cited requests for OOBs were for a product that Arm "believe[d] … to be using Nuvia technology," QX175 at ARM_01314329; *see also* ARM_01020195, and Qualcomm is not entitled to any OOBs for Nuvia-based designs.

Further, OOBs identify which of the previously delivered tests a partner should run, and Arm had already delivered those tests to Qualcomm in the Architecture Valid Suite Kit. *See*



ARM_00002045 ("Management System Report" showing Arm "IP downloaded from Connect" by specific Nuvia employees, later Qualcomm employees, including the "ARMv8-A Architecture Compliance Kit," the "ARMv8-A Architecture – Valid Suite Kit" and the "User Guide"). As Qualcomm acknowledged in its First Amended Complaint, Qualcomm did not need any OOB from Arm to run the validation tests that Arm had provided. FAC ¶ 85; *see also* Agrawal Dep. Tr. at 54:18–55:2 (

).

Further, because OOB is partner-specific, Arm has not "released, distributed, or otherwise made available since June 1, 2022 but not provided to Qualcomm" any OOB that would be relevant to Qualcomm. Agrawal Dep. Tr. at 29:1–21                                                    ).

Further, by June 1, 2022, Arm had given Qualcomm several OOB packages, including for use with Nuvia-based designs. *See*, *e.g.*,

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

███████████████████████████████████████████████████████

████████████); ARM_00001192 (Arm delivering OOB to Qualcomm on or around October 28, 2021); ARM_00001512 (Arm delivering OOB to Qualcomm on or around January 18, 2022); ARM_00132256 (Arm delivering OOB to Qualcomm on or around May 3, 2022).  Qualcomm used these OOBs to successfully run ACK testing first for the Nuvia-based Phoenix implementation and then at least for the Nuvia-based Hamoa core design.  ARM_00001495 at -495–96 (Arm giving Qualcomm the "Green-signal" for its "Phoenix implementation (v8.7)" on February 4, 2022); ARM_00000634 (Arm telling Qualcomm on June 3, 2022, "No ACK issue pending for Hamoa's sign-off. Results were matching with reference OOB results. Awaiting legal clearance.").

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Vivek Agrawal is knowledgeable about OOBs, ACK releases, and ALA licensee support, and Richard Grisenthwaite is knowledgeable about the design, development, operation, and purported verification of Arm-based technology and Arm's relationship with Nuvia and Qualcomm.

As discovery is ongoing, Arm reserves the right to supplement, amend, or modify its response to this Interrogatory, and reserves the right to rely upon any evidence subsequently discovered or which may otherwise come to light during discovery.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

The Armv8-A Architecture Annex 1 to the Qualcomm ALA defines ██████████

███████████████████████████████████████████

**HIGHLY CONFIDENTIAL- ATTORNEYS' EYES ONLY**



ARM_00063298 at -302, § ██ .  OOBs and ACK patches are not ██, including for the

reasons stated above.

The Armv9-A Architecture Annex 1 to the Qualcomm ALA defines "██ as:



QCARM_0343954 at -958, § ██ .  OOBs and ACK patches are not "ACK", including for the

reasons stated above.

Arm further incorporates by reference Arm's objections and responses to Qualcomm

Interrogatory Nos. 5 and 10.

Arm further incorporates by reference the testimony of all witnesses that have been

deposed in this case to date, including those specifically referenced herein, as well as the testimony

of all witnesses deposed in *Arm v. Qualcomm*, Case No. 1:22-cv-01146 (D. Del.), and the exhibits

used during those depositions.

Pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents

from which information responsive to the non-objectionable scope of this Interrogatory may be

derived:  ARMQC_02603587,  ARMQC_02604609,  ARMQC_02604610,  ARMQC_02604611,

ARMQC_02604612,      ARMQC_02604613,      ARMQC_02604614,      ARMQC_02604615,

ARMQC_02604616,      ARMQC_02604617,      ARMQC_02604618,      ARMQC_02604619,

ARMQC_026046020,      ARMQC_02604621,      ARMQC_02604622,      ARMQC_02604623,

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

ARMQC_02747093, ARMQC_02747097, ARMQC_02747103, ARMQC_02747104,
ARMQC_02779171, ARMQC_02779174, ARMQC_02779176, ARMQC_02779179,
ARMQC_02779181, QCARM_2430181, ARM_00100013, ARM_01282655, ARM_00090791,
ARM_00067349, ARM_00102683, ARM_00091389, ARM_00068087, ARM_00068131,
ARM_00068459, ARM_00068504, ARM_00091657, ARM_00091659, ARM_00091714,
ARM_00091768, ARM_00091799, ARM_00091834, ARM_00091869, ARM_00091903,
ARM_00075096, ARM_00075098, ARM_00075343, ARM_00076113, ARM_00103566,
ARM_00103635, ARMQC_02755397, ARMQC_02755446, ARMQC_02755490,
ARMQC_02755534, ARMQC_02755580, ARMQC_02755624, ARMQC_02755674,
ARMQC_02755903, ARMQC_02755905, ARMQC_02756148, ARMQC_02756245,
ARMQC_02756246, ARMQC_02756344, ARMQC_02746634, ARMQC_02756542,
ARMQC_02756544, ARMQC_02746871, ARMQC_02756860, ARMQC_02760525,
ARMQC_02627275, ARM_01241565, QCVARM_0573677, ARMQC_02779064,
ARMQC_02779076, ARMQC_02779099, ARMQC_02779107, ARMQC_02779116,
ARMQC_02779122, ARMQC_02779133, ARM_00001777, ARM_00001195, ARM_00001198,
ARM_00001777, ARM_01020186, QCARM_3337526, QCARM_3337900, QCARM_3338108,
QCARM_3339493, QCVARM_0685544, QCVARM_0689117, QCVARM_0699179,
QCARM_3216178, QCARM_3066477, QCVARM_0602227, QCVARM_0618420,
QCVARM_0691521, QCVARM_0000395, QCVARM_0000269, QCARM_3353040,
QCVARM_0602564, QCVARM_0000142, QCVARM_0618741, QCVARM_0000180,
QCARM_3352796, QCARM_3353006, QCARM_3353126, ARM_00025401,
QCVARM_0468612, QCVARM_0000061, QCVARM_1118518, QCVARM_0602258,
QCVARM_0602295, QCVARM_0468174, QCVARM_0000114, QCVARM_0000092,

**HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY**

QCVARM_0000085, QCVARM_0000123, QCVARM_0000135, QCVARM_0602359, QCVARM_0468148, QCVARM_0000395, QCVARM_0000269, QCARM_3353040, QCVARM_0602564, QCVARM_0621692, QCVARM_0535116, QCVARM_0524624, QCVARM_0854027, QCARM_0566625, QCVARM_0524624, QCVARM_0613083, QCVARM_0613160, QCVARM_0540468, QCVARM_0452598, all documents produced in Qualcomm's 11th production (QCVARM_011), and all documents cited in Qualcomm's responses to Arm Interrogatory Nos. 1, 2, 6, 9, and 13.

As discovery is ongoing, Arm reserves the right to supplement, amend, or modify its response to this Interrogatory, and reserves the right to rely upon any evidence subsequently discovered or which may otherwise come to light during discovery.

**INTERROGATORY NO. 2:**

With respect to Arm's October 22, 2024 letter to Qualcomm alleging that Qualcomm is in material breach of the QC ALA, state (i) a complete explanation for the timing of that letter and an identification of all Persons involved in the drafting of the letter, (ii) a complete list of all Third Parties that Arm shared the letter with or discussed the subject matter of the letter with or otherwise informed of Qualcomm's purported breach and an identification of all Persons affiliated with Arm involved in any communications with those Third Parties, and (iii) a list of the Persons affiliated with Arm with the most knowledge of Arm's decision to share the letter or information with Third Parties, and (iv) an identification of all documents (by Bates number) that support your response.

**RESPONSE TO INTERROGATORY NO. 2 (MARCH 24, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case. Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

### Arm Repeatedly And Publicly Stated That Qualcomm Was In Breach Of The Qualcomm ALA As Early As 2022

On November 15, 2022 Arm filed a publicly-available Answer in *Arm Ltd. v. Qualcomm Inc. et al.*, No. 22-1146 (MN) ("*Arm v. Qualcomm*"), in which Arm publicly stated that "Qualcomm is materially breaching its ALA, giving Arm the right to terminate, and the Qualcomm ALA does not provide a license for or right to continue development of the Nuvia technology," that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology, entitling Arm to terminate that ALA based on Qualcomm's material breaches," that "Arm is entitled to terminate Qualcomm's ALA based on Qualcomm's material breaches of the verification, delivery, and support and maintenance provisions," and that:

> "Qualcomm's allegations that it is exercising its rights with respect to the relevant Nuvia technology under Qualcomm's license agreements with Arm and is not in violation of those agreements fail because Arm has no such obligations with respect to the Nuvia technology, and Qualcomm is breaching the Qualcomm ALA by insisting otherwise. Under the Qualcomm ALA, Arm has no obligation to provide, and Qualcomm has no right to seek, verification, delivery, or support and maintenance in connection with technology developed under the now-terminated Nuvia ALA. The 'verification' provisions of Section 4 of the Qualcomm ALA are limited to products manufactured [redacted] in the ALA. The delivery (Section 5) and support and maintenance (Section 7) obligations of the Qualcomm ALA are similarly limited to the defined [redacted] and therefore likewise do not extend to the relevant Nuvia technology, which embodies and was derived from Arm technology delivered by Arm to Nuvia under Nuvia's now-terminated ALA. Qualcomm's unreasonable, bad-faith demands that Arm comply with purported obligations for verification, delivery, and support and maintenance with respect to technology delivered and developed outside the scope of the Qualcomm ALA are contrary to the parties' expectations and undermines the benefit to Arm from the Qualcomm ALA, thereby materially breaching that agreement's terms and implied

**HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY**

covenant of good faith and fair dealing and entitling Arm to terminate the Qualcomm ALA under Section 14.2."

No. 22-1146, D.I. 21 at 2, 37, 39, 41-42.

On April 11, 2024, Arm filed another publicly-available Answer that likewise included allegations that Qualcomm was in breach of its ALA, including that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology," and that "Qualcomm is materially breaching its ALA, giving Arm the right to terminate …." D.I. 322 at 2, 42-45, 48-49. These materials were available to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146.

### Arm and Qualcomm's Correspondence Regarding Qualcomm's Breach of the Qualcomm ALA

On October 22, 2024 Arm sent a notice of material breach ("October 22 Notice") to Qualcomm that echoed its public statements in its November 15, 2022 and April 11, 2024 Answers, including that:

> "The Qualcomm ALA permits Qualcomm to seek support and verification solely for CPU designs created by Qualcomm employees, at a time when they were Qualcomm employees. Qualcomm is only permitted to market an Architecture Compliant Core if Qualcomm has complied in all respects with the requirements of the Qualcomm ALA and completed the verification procedures provided therein. And Qualcomm is entitled to seek contractual remedies solely for CPU designs that fall within the scope of the ALA. These obligations are reflected in multiple places in the Qualcomm ALA, including but not limited to ██████████████████ ████████████████████
>
> Qualcomm has systematically and willfully breached these obligations, and its breaches have accelerated and expanded in recent months. Specifically, Qualcomm has developed CPUs and marketed multiple products that contain CPUs that use designs, technology, and code created by Nuvia employees at the time when Nuvia was a third party (hereinafter 'Nuvia designs'). Recently, Qualcomm has sought support and verification for additional designs that reuse the Nuvia designs. Qualcomm and Nuvia have willfully refused to discontinue use of the Nuvia designs despite the independent obligations provided by Section 15.1 of the Nuvia ALA upon termination. And Qualcomm initiated and continues to prosecute contractual claims that arise from Qualcomm's improper conduct with respect to these unlicensed cores.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Due to Qualcomm's willful, ongoing, and renewed actions, Qualcomm is in material breach of the Qualcomm ALA."

10/22/2024 Arm Breach Notice to Qualcomm.  Arm's October 22 Notice was drafted by counsel and sent by Spencer Collins, Arm's Chief Legal Officer, to Ann Chaplin, Qualcomm's General Counsel.  Qualcomm responded on October 28, 2024.  10/28/2024 Qualcomm Ltr. to Arm. Qualcomm made a summary of the contents of both notices available to the public on November 6, 2024.

On January 8, 2025, Arm withdrew its October 22 Notice, stating that:

The Qualcomm ALA was the subject of an incomplete jury verdict on December 20 that found in Qualcomm's favor. That verdict is not final and is subject to a variety of legal challenges. Nonetheless, Arm respects and values the jury process and the Court's ongoing role in resolving the parties' disputes. As a result, and while Arm's ongoing legal challenges are pending, Arm will treat the Nuvia CPUs as falling within the scope of the Qualcomm ALA, and Arm therefore withdraws the pending October 22, 2024 notice of material breach. Arm has no current plan to terminate the Qualcomm ALA until the legal process resolves the parties' disputes over the Qualcomm ALA. Arm also conditionally accepts Qualcomm's one-time, five-year year extension under which the Qualcomm ALA will expire in 2033. Pursuant to separate correspondence, Arm intends to provide support for the Nuvia CPUs, including support and verification services, while the related legal challenges remain outstanding.

Arm's prior correspondence and relevant court filings in the Delaware litigation reflect Arm's legal position regarding the scope of the Qualcomm ALA and the required actions that Nuvia acting in concert with Qualcomm must take in light of the termination of the Nuvia ALA on March 1, 2022. Arm's future legal filing will reflect its legal position regarding the non-final verdict, a new trial and judgment in the legal case. Arm reserves all rights and none of Arm's conduct, support and verification reflects a waiver of Arm's present or future rights or claims.

1/8/2025 Arm Ltr. to Qualcomm.  Qualcomm and Arm exchanged further correspondence on January 22 and 30.  1/22/2025 Qualcomm Ltr. to Arm; 1/30/2025 Arm Ltr. to Qualcomm.

## Arm and Qualcomm's Press Briefing Regarding Qualcomm's Breach of the Qualcomm ALA

On October 22, 2024 Paul Kranhold, who is a partner at FGS Global, and Kenneth Siegel, who is a director of SoftBank Group Corporation Ltd and a partner at Morrison & Foerster LLP,

**HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY**

discussed Arm's October 22 Notice with Ian King at Bloomberg, who reported on the Notice and upcoming trial on October 22. Individuals knowledgeable about Arm's decision to discuss the Notice with Bloomberg are Paul Kranhold and Kenneth Siegel. On October 22 & 23, multiple news outlets reported that Qualcomm released a statement in response to the Bloomberg article. On October 22 or 23, Qualcomm released a statement to the media regarding Arm's October 22 Notice. On October 23, Arm released a statement to the media in response to Qualcomm's statement. On October 24, Phil Hughes of Arm confirmed for Ian King at Bloomberg that Arm had sent the letter to Qualcomm. Arm did not send its October 22 Notice to any third-party companies or customers.

Following the publication of an article by Ian King on October 22, 2024, a statement by Arm regarding the October 22, 2024 letter was provided to the following persons: Stephen Nellis (Reuters), Gavin Bonshor (The Register), Mark Hachman (PC World), Ina Fried (Axios), Kosuke Shimizu (Nikkei), Ryan Browne (CNBC), David Lumb (CNET), Hadlee Simmons (Android Authority), Adam Clark (Barrons), Tae Kim (Barrons), Benjamin Woodecki (Capacity Media), Wayne Ma (The Information), Kaustubh Bagalkote (Benzinga), Adrienne Valdez (MT Newswires), Chris Thomas (Android Police), James Sanders (TechInsights), Seema Mody (CNBC), Tom McKay (IT Brew/Morning Brew), and Fudo Abazovic (Fudzilla).

On November 6, 2024 Qualcomm publicly described Arm's October 22 Notice in its Annual Report to investors:

> On October 22, 2024, Arm provided us with a notice alleging that we have breached the Qualcomm ALA by marketing products that contain CPUs that Arm alleges use designs, technology and code created by Nuvia employees prior to our acquisition of Nuvia; by seeking support and verification from Arm for additional products that use such alleged designs, technology and code; and by suing Arm for breach of the Qualcomm ALA. Arm's notice asserts that it will have the right to terminate the Qualcomm ALA if such alleged breaches are not cured within 60 days of such notice.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Qualcomm 10-K Annual Report (November 6, 2024).

On December 16, 2024 Qualcomm filed a public version of its First Amended Complaint in this case in which it publicly described Arm's October 22, 2024 notice of material breach, stating that "Arm sent Qualcomm a notice of material breach purporting to have the right to terminate Qualcomm's own license," described the contents of the letter, and publicly filed a redacted copy of the notice of material breach. A redacted copy of Arm's October 22, 2024 notice of material breach was and remains accessible to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146. D.I. 39 at 2, 8-9, 32-35; D.I. 39-1.

On January 22, 2025, Qualcomm wrote to Arm and stated that the parties' correspondence on this issue was not confidential, and that Qualcomm was "required by law" to publicly disclose the correspondence in its filings with the U.S. Securities & Exchange Commission, and that "in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice":

> "Even if that [January 8, 2025] letter [withdrawing the October 22, 2024 notice of material breach] were itself 'Confidential'—and it is not—Qualcomm is nevertheless required by law to disclose the fact that Arm has withdrawn that notice and indicated that it has no current plan to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. For instance, in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice and Arm's threats to terminate the Qualcomm ALA. Qualcomm intends to update those disclosures in light of Arm's withdrawal of that notice and statement that it does not currently intend to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. We presume you have no objection to this legally required update."

1/22/2025 Qualcomm Ltr. to Arm.

On February 5, 2025 Qualcomm publicly described Arm's January 8, 2025 letter in its Quarterly Report:

> On January 8, 2025, Arm notified us that it was withdrawing its October 22, 2024 notice of breach and indicated that it has no current plan to terminate the Qualcomm ALA, while reserving its rights pending the outcome of the ongoing litigation.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Qualcomm 10-Q Quarterly Report (February 5, 2025). Christiano Amon also publicly described Arm's communication in its public investor conference call on February 5, 2025.

### Qualcomm Recognized That Arm's October 22, 2024 Notice Of Material Breach "Is Actually Not New News"

In *Arm v. Qualcomm*, the Court held a pre-trial conference on November 20, 2024. During that conference, Qualcomm's counsel stated that Arm's claim that Qualcomm is in breach of the Qualcomm ALA has been in the case "starting at the very beginning," Nov. 11, 2024 Hearing Tr. at 13:10-16, and that "[t]he letter on October 22nd is actually not new news in the sense of alleging these breaches":

> "And in response to that, there have been repeated allegations that the Qualcomm ALA has been breached by Qualcomm. The letter on October 22nd is actually not new news in the sense of alleging these breaches. It has been in the case squarely and we anticipate that it is going to be raised by ARM in response to the arguments that we have regarding the fact that our products are licensed."

*Id.* at 14:18-24. Qualcomm's counsel stated earlier in that same hearing that "with respect to Qualcomm's alleged breach under the Qualcomm ALA, Arm itself has put that in the case starting at the very beginning" and that "[w]hen you go to their answer at DI 21, they say … [Qualcomm is] also materially breaching its ALA with Arm." *Id.* at 13:10-16. Qualcomm candidly admitted "as early as November 15, 2022, in DI 21, … they say Qualcomm is materially breaching its own ALA and giving ARM the right to terminate that agreement." *Id.* at 13:23-14:12. Qualcomm also acknowledged "there is at least five or six references" to this same assertion that Arm has the right to terminate the Qualcomm ALA "throughout [Arm's] pleading" in November 2022. *Id.*

As discovery is ongoing, Arm reserves the right to supplement, amend, or modify its response to this Interrogatory, and reserves the right to rely upon any evidence subsequently discovered or which may otherwise come to light during discovery.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further incorporates by reference the testimony of the following witnesses: Will Abbey, Kenneth Siegel, and Spencer Collins.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 3:**

Describe, in detail, all facts and circumstances, including the status, of any development or plans to develop v10 of the Arm ISA and any licensing thereof. Your response should include (i) an identification of any features included in v10 of the Arm ISA that were not included in v9 of the Arm ISA and a description of the incremental value, if any, of each feature, (ii) the date(s) on which Arm began discussing development of v10 and any projected timelines for its development or release, (iii) the identity of any partners who have requested a license to v10 and (iv) the terms and conditions of any license proposal from Arm (v) a list of all Persons affiliated with Arm involved in such communications or negotiations, (vi) a list of the Persons affiliated with Arm with the most knowledge of the development or licensing of v10 of the Arm ISA, and (vii) an identification of all documents (by Bates number) that support your response.

**RESPONSES TO INTERROGATORY NO. 3 (MARCH 24, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case. Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.

**HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY**

Subject to and without wavier of its general and specific objections, Arm responds as follows: Subject to its objections, Arm is willing to meet and confer with Qualcomm as to the relevance and appropriate scope of this Interrogatory, if any.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP


_/s/ Robert M. Vrana_
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

**HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY**

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

# Exhibit 14

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
   a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
   Delaware corporation

        Plaintiffs,

   v.

ARM HOLDINGS PLC, f/k/a, ARM LTD.
   a U.K. corporation

        Defendant.

C.A. No. 24-490-MN

**HIGHLY CONFIDENTIAL -
ATTORNEYS EYES ONLY**

## ARM'S FIRST SUPPLEMENTAL RESPONSE TO
## QUALCOMM'S AMENDED INTERROGATORY NO. 3

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable

Local Rules of the United States District Court for the District of Delaware, Defendant Arm

Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm

Technologies, Inc. (collectively, "Qualcomm")'s Amended Interrogatory No. 3.

## GENERAL OBJECTIONS

Arm incorporates by reference the objections and responses previously served in response

to Qualcomm's Amended Interrogatory No. 3.

## SPECIFIC OBJECTIONS AND RESPONSES

## AMENDED INTERROGATORY NO. 3:

Describe, in detail, all facts and circumstances, including the status, of any development or
plans to develop v10 of the Arm ISA and any licensing thereof. Your response should include (i)
an identification of any features included in v10 of the Arm ISA that were not included in v9 of

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

the Arm ISA and a description of the incremental value, if any, of each feature, (ii) the date(s) on which Arm began discussing development of v10 and any projected timelines for its development or release, (iii) the identity of any partners who have requested a license to v10 (iv) the terms and conditions of any license proposal from Arm (v) the date(s) on which Arm entered into negotiations for v10 with these partners (vi) the date(s) on which Arm entered offered any license or entered into any license agreement with these partners (vii) a list of all Persons affiliated with Arm involved in such communications or negotiations, (viii) a list of the Persons affiliated with Arm with the most knowledge of the development or licensing of v10 of the Arm ISA, and (ix) an identification of all documents (by Bates number) that support your response.

## RESPONSE TO AMENDED INTERROGATORY NO. 3 (MAY 12, 2025):

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information concerning allegations made in Qualcomm's pending Motion for Leave to File a Second Amended Complaint, and because it seeks information regarding "all facts and circumstances," "any license proposals," "all Persons," without limitation. Arm further objects to this Interrogatory as vague and ambiguous, as the term "the date(s) on which Arm entered offered any license or entered into any license agreement" is unclear.  Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.  Arm further objects to this Interrogatory as having multiple discrete subparts and therefore multiple interrogatories, and will limit its response to information, if any, regarding "development or plans to develop ███ of the Arm ISA."  Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Subject to and without wavier of its general and specific objections, Arm responds as follows: Arm is willing to meet and confer with Qualcomm as to the relevance and appropriate scope of this Interrogatory, if any.

### FIRST SUPPLEMENTAL RESPONSE TO AMENDED INTERROGATORY NO. 3 (JUNE 18, 2025):

Arm further objects to this interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding "the incremental value" of "any features included in v10 of the Arm ISA that were not included in v9 of the Arm ISA," "the terms and conditions of any license proposal from Arm," "the identity of any partners who have requested a license to v10," "the date(s) on which Arm entered into negotiations or v10 with these partners," "the date(s) on which Arm entered offered [sic] any license or entered into any license agreement with those partners," without limitation or regard to relevance. Arm objects to this request to the extent it calls for expert testimony or opinion, which is not yet due and will be served in accordance with the Scheduling Order.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

### Arm's Development of v10 of the Arm ISA

Qualcomm's request for detailed information about the development of v10 to the Arm ISA is premature. Arm gave a presentation entitled "Architecture update for 2025" in October 2024 that included information about the "█████████████████████████████ ███████████ and a preliminary timeline for development. QCVARM_0851876 at 1876–1881. That presentation similarly included a "summary of other Armv10-A changes" that were being "considered" but remain "highly provisional and subject to partner feedback." *Id.* at 1894–1895. Subsequently, in March 2025, Arm hosted an Arm Development Meeting attended by Arm's

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

partners, including Qualcomm.  ARMQC_02771129 at 1132; *see also* ARMQC_02771151.  Preliminary information on v10, Arm's development timeline for v10, and "other changes being considered" was shared with attendees.  ARMQC_02771129 at 1129–1150.

### Arm's Licensing of v10 of the Arm ISA

On April 24, 2025, Qualcomm sent a letter to Arm requesting "an initial licensing offer for v10, including licensing fees and royalty pricing."  ARMQC_02771128.  According to Qualcomm, "ARM gave a presentation to Qualcomm entitled ARM Architecture Update for 2025" which allegedly "made clear that Armv10-A was on the way in the near future and would build on Armv9-A, which Qualcomm has already licensed."  *Id*.

On May 29, 2025, Qualcomm sent another letter to Arm purporting to follow up on its April 24th letter and requesting that Arm "promptly provide an initial licensing offer for v10 that includes licensing fees and royalty pricing."  ARMQC_02771124.

On June 4, 2025, Will Abbey, Arm's Chief Commercial Officer, wrote to Qualcomm regarding its request for a v10 license, stating that Arm is prepared to negotiate in good faith for a v10 license and proposed a business meeting:

> Arm is prepared to negotiate in good faith over the terms of a license to the v10 architecture. As the first step in those negotiations, we propose a meeting between our commercial teams to better understand how Qualcomm intends to use the v10 architecture. That will help Arm put together an appropriately tailored licensing proposal. Please let us know a few dates Qualcomm is available for that meeting, and we will let you know our availability.

ARMQC_02771125.  On June 9, Qualcomm responded, but did not address Mr. Abbey's request for a business meeting.  ARMQC_02771126.

On June 13, 2025, Arm's Executive Vice President and Chief Legal Officer Spencer Collins sent Qualcomm another letter regarding v10:

> On this basis, on June 4, 2025, Will Abbey, Arm's Chief Commercial Officer, proposed in good faith a business meeting regarding Qualcomm's request for a

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

license to Arm's v.10 architecture.  Mr. Abbey's offer to meet remains open and Arm continues to believe that such a meeting would be the most efficient path forward in response to Qualcomm's request.  Please have the relevant business personnel respond to Mr. Abbey with dates that Qualcomm is available for such a meeting.

\* \* \*

Despite these clear limits on Qualcomm's election rights under the ALA, as we told Qualcomm in 2020, nothing prevents Arm and Qualcomm from discussing a potential license to future versions of the Arm architecture as they become available.  Arm remains prepared to negotiate in good faith over the terms of a license to the v.10 architecture.

ARMQC_02771127.

Arm also incorporates by reference its responses to Interrogatory Nos. 4 and 10.

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Martin Weidmann.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

## SECOND SUPPLEMENTAL RESPONSE TO AMENDED INTERROGATORY NO. 3 (July 11, 2025):

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm further incorporates by reference the testimony of the following witnesses: Lynn Couillard, Martin Weidmann, Richard Grisenthwaite, Gerard Williams, Spencer Collins, Andrew Howard, Michael Williams, Will Abbey, Mark Dragicevich, Jannik Nelson, Jeffrey Fonseca, Ehab Youssef, Rene Haas, and Karthik Shivashankar, including the documents used at each of those depositions.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Matthew J. McIntee
Meredith Pohl
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
matt.mcintee@kirkland.com
meredith.pohl@kirkland.com

Jay Emerick
Adam Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
adam.janes@kirkland.com

Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP


 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

# Exhibit 15

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED,<br>   a Delaware corporation,<br>QUALCOMM TECHNOLOGIES, INC.,<br>   a Delaware corporation,<br><br>              Plaintiffs,<br><br>   v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>   a U.K. corporation,<br><br>              Defendant. | C.A. No. 24-490 (MN)<br><br><br>**HIGHLY CONFIDENTIAL -<br>ATTORNEYS EYES ONLY** |

## ARM'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S SECOND SET OF INTERROGATORIES (NOS. 4-11)

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States District Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm")'s Second Set of Interrogatories (Nos. 4-11).

## GENERAL OBJECTIONS

Arm makes the following general objections, which are hereby incorporated by reference and made part of its response to each and every Interrogatory.

1.     Arm objects to each Interrogatory to the extent it purports to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

2.     Arm objects to the "Instructions" and "Definitions" sections to the extent they purport to alter the plain meaning and/or scope of any specific Interrogatory, on the ground that such alteration renders the Interrogatory vague, ambiguous, overly broad, and/or uncertain, by

failing to adequately define terms or by using terms the meaning of which are not readily available or decipherable.  Arm's responses to such Interrogatories shall not be construed as an admission, agreement, or acquiescence to any such instruction or definition.  Arm further objects to the "Instructions" and "Definitions" sections to the extent they purport to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

3.      Arm objects to the definitions of "Defendant," "Arm," "you," and "your" as overly broad and unduly burdensome to the extent they purport to require Arm to provide information that is not within the possession, custody, or control of Arm Holdings PLC, or to otherwise respond on behalf of third parties, at least because these definitions include entities that have no relation to the present litigation.

4.      Arm objects to the definitions of "ALA" and "TLA" as overbroad and vague and ambiguous to the extent they define Architecture License Agreement and Technology License Agreement to include "all amendments and annexes to any such agreement."

5.      Arm objects to the definition of "█████████████" as overbroad and vague and ambiguous to the extent it defines the term by reference to the definition of that term in "███████ ████ of the Qualcomm ALA, █████████ of the Qualcomm v8-A ALA Annex, or █████████ of the Qualcomm v9-A ALA Annex."

6.      Arm objects to the definition of "ACK" as overbroad and vague and ambiguous to the extent it defines the term as meaning "Arm's Architecture Compliance Kit or Arm's Architecture Validation Suite or Arm's Architecture Compliance Suite."

7.      Arm objects to each Interrogatory, including the instructions and definitions that Qualcomm purports to incorporate therein, to the extent that each Interrogatory is overbroad,

unduly burdensome, not limited to a reasonable time frame, vague and ambiguous, irrelevant, and/or not reasonably calculated to lead to the discovery of admissible evidence.

8.    Arm objects to each Interrogatory to the extent it seeks information, documents, and/or things that are protected from disclosure by the attorney-client privilege, work-product doctrine, common-interest privilege, and/or any other applicable privilege, immunity, or protection (collectively, "privileged information").   Nothing contained in these responses should be considered a waiver of any attorney-client privilege, work-product protection, or any other applicable privilege or doctrine.   Arm does not intend to produce information or documents that would divulge any privileged information.   Any such disclosure is inadvertent and shall not be deemed a waiver of any applicable privilege or immunity.

9.    Arm objects to any factual characterizations in Qualcomm's Interrogatories.   By responding, Arm does not accept or admit any of Qualcomm's factual characterizations.

10.    Arm objects to each Interrogatory to the extent it seeks "all" or "any" facts, documents, witness identifications, or things as overbroad and unduly burdensome.

11.    Arm's discovery and investigation in connection with this case is ongoing.   Arm's responses to these Interrogatories are based on its knowledge to date following a reasonable investigation.   As a result, Arm's responses are provided without waiver of Arm's right to: (a) object to other interrogatories directed to the subject matter of these Interrogatories and responses; (b) make additional or supplementary objections to these Interrogatories; or (c) revise, amend, supplement, or clarify the contents of these responses.

Subject to and without wavier of these General Objections and the more specific objections set forth below, Arm responds as follows:

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 4:

Describe, in detail, Arm's reason(s), explanation, or justification for failing to respond to Qualcomm's May 2020 election under █████████████████ to extend the initial term of the ALA. Your response should include (1) the names of any individuals involved in the decision not to respond to Qualcomm's election, (2) a description of any discussions regarding whether to respond to Qualcomm's election, including any discussions that occurred in subsequent years, (3) any factual or legal bases that Arm relied on in deciding not to respond to Qualcomm's election, and (4) an identification of any relevant documents by Bates number.

### RESPONSE TO INTERROGATORY NO. 4 (JUNE 16, 2025):

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks information regarding "the names of any individuals," "any discussions," "any factual or legal bases," and "any relevant documents," without limitation.  Arm objects to this Interrogatory as vague and ambiguous and as mischaracterizing, as the terms "Qualcomm's May 2020 election under █████████████ ██████████" and "the decision not to respond to Qualcomm's election" are unclear and inaccurate. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.  Arm objects to this Interrogatory to the extent it calls for a legal conclusion.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

### Arm Responded To Qualcomm's Purported Election Under ████████████ In May 2020

Arm responded to Qualcomm's purported election under ████████████ of the Qualcomm ALA in May 2020.

In response to outreach from Brett Bettesworth from Qualcomm to Lynn Couillard at Arm in April and May 2020, Lynn Couillard sent several responses to Qualcomm in response to its request for an extension of the ALA under ████████ including on May 15, 2020 when she responded stating that "[t]he intent of ████████ is to allow for an extension of the agreement as of this point in the term of the agreement.  If there is not desire from Qualcomm to negotiate terms of an extension at this point, but rather to have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire" and that "there is nothing that stops us from discussing next gen architecture or entering into an agreement anytime in the future regardless of the existing agreement":

From: Lynn Couillard <Lynn.Couillard@arm.com>
Sent: Friday, May 15, 2020 9:49 AM
To: Brett Bettesworth <bettesswb@qti.qualcomm.com>; Rajiv Gupta <grajiv@qti.qualcomm.com>
Cc: Todd Lepinski <Todd.Lepinski@arm.com>
Subject: [EXT] Re: V10 -->V9 architecture follow-on

Hello Brett and Rajiv, (+Todd)

The intent of section ████ is to allow for an extension of the agreement as of this point in term of the agreement.  If there is no desire from Qualcomm to negotiate terms of an extension at this point, but rather to have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire.  However, importantly, there is nothing that stops us from discussing next gen architecture or entering into an agreement anytime in the future regardless of the existing agreement.

Note that at the time of the v8 architecture closure, we also included ████████ which at the time had no definition, and eventually became v9.   We are in a similar situation here with regards to visibility on next generation architecture.

Please let us know if you'd like to discuss, we can set something up for next week.

Thanks
Lynn

ARM_00005340.  Mr. Bettesworth responded five days later.  He did not dispute any of Ms. Couillard's statements, including that "[t]he intent of ████████ is to allow for an ***extension*** of the agreement ***as of this point in term of the agreement***," and that if Qualcomm desires to "have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire."  He elected to "go ahead and move forward with the extension":

| From: | Brett Bettesworth [betteswb@qti.qualcomm.com] |
|---|---|
| Sent: | 20/05/2020 20:05:11 |
| To: | Lynn Couillard [Lynn.Couillard@arm.com]; grajiv@qti.qualcomm.com |
| CC: | Todd Lepinski [Todd.Lepinski@arm.com] |
| Subject: | RE: V10 -->V9 architecture follow-on |

Importance:    High

Hi Lynn,

Thanks for your email and the note below. We will go ahead and move forward with the extension at this point, per the ALA optional election.

███████████████████████████████████████████████████████

We can discuss further at some point in the near future, but wanted to ensure that we provided timely notification of our election here, as mentioned previously.

Sincerely,
Brett

*Id.* Mr. Bettesworth's email also did not seek a response, and ended by stating that "[w]e can discuss further at some point in the near future …." However, Mr. Bettesworth does not appear to have sent a follow-up email to arrange such discussions. Qualcomm also failed to send any follow-up about v10 to Arm, including any formal correspondence in compliance with the ALA's notice provisions, for nearly five years. Qualcomm further failed to send any notice of breach of the ALA to Arm for allegedly breaching ███████████

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Lynn Couillard.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies

the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: QCVARM_1120481, ARM_00079223.

Arm further incorporates by reference the testimony of the following witnesses: Lynn Couillard, Martin Weidmann, Gerard Williams, Spencer Collins, Michael Williams, William Abbey, Mark Dragicevich, Ziad Asghar, and Karthik Shivashankar, including the documents used at each of those depositions. Arm also incorporates by reference its responses to Interrogatory Nos. 3 and 10.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

## INTERROGATORY NO. 5 (JUNE 16, 2025):

Identify with specificity all ACK patches and OOBs developed or provided by Arm between July 2022 and February 2025 and their respective release schedule(s). Your response should identify (1) the names of each partner who received an ACK patch or OOB, (2) the dates that each ACK patch and OOB was requested and by whom, (3) the date that each ACK patch and OOB was provided and to which partner, (4) information regarding whether any ACK patches and OOB were withheld from any partners during this time period, (5) the names of all Arm individuals with relevant knowledge, and (6) identify any relevant documents by Bates number.

## RESPONSE TO INTERROGATORY NO. 5:

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding "all ACK patches and OOBs developed or provided by Arm between July 2022 and February 2025," "each partner," information about "each ACK patch and OOB," and "all Arm individuals," without limitation. Arm further objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case because it seeks detailed information regarding Arm's development and provision of partner-specific OOBs and ACK patches for partners other than Qualcomm. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by

the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm incorporates its response to Qualcomm's Interrogatory Number 1.

### Arm Provides The Content Of ACK Patches To All Partners, Including Qualcomm As Part Of Its Quarterly ACK Release

ACK patches are not ███████████████████ under the Qualcomm ALA, including because they are not architecture technology identified in the v8 Annex 1 or the v9 Annex 1 to the Qualcomm ALA, nor are they ████████████ thereto. An ACK patch is a partner-specific solution to a partner-specific ACK test issue, and when that solution is relevant to all ALA licensees, Arm typically incorporates the solution into its next quarterly ACK release, which is made available to all ALA partners, including Qualcomm.

Arm provided Qualcomm with the full suite of ACK tests for both the Arm v8 and Arm v9 architectures—the ARMv8-A Architecture Valid Suite Kit (AVS) and the Armv9-A Architecture Compliance Kit. *See*, *e.g.*, ARMQC_02604619 (spreadsheet showing Qualcomm downloaded certain Arm materials, including the Arm v8 ACK / AVS (████████) and the Arm v9 ACK / ACS (████████)); ARMQC_02604613 (spreadsheet showing when Qualcomm downloaded certain Arm materials, including Part Nos. ████ (associated with the Arm v8 ACK / AVS and ████ (Arm v9 ACK)); ARMQC_02604617 (spreadsheet showing Arm deliveries of ████ materials to Qualcomm between 2022 and 2024); ARMQC_02603587 (spreadsheet showing Arm making Product Nos. ████████████ available to Qualcomm between

05/11/2007 and 01/08/2025); *see also* ARMQC_02604612 (spreadsheet showing Arm made "New Arm Product Updates Available" to Qualcomm between 10/31/2022 and 01/29/2025); ARMQC_02604614 (spreadsheet showing Arm made "New Arm Products Available" to Qualcomm between 09/22/2022 and 03/27/2025); ARMQC_02604609 (document showing Arm materials made available to Qualcomm between 07/15/2010 and 06/24/2022); ARMQC_02604615 (spreadsheet showing Arm materials that Qualcomm downloaded, including "OOB" and "ACK patch[es]").  Arm therefore did not withhold any ACK tests from Qualcomm.

Arm provided all of its ALA partners, including Qualcomm, with quarterly ACK releases that incorporated ACK-patch solutions to ACK test issues relevant to all ALA partners.  *See*, *e.g.*, ARMQC_02747093 (document showing Arm providing quarterly v8 ACK releases to Qualcomm between 2021 and 2025); ARMQC_02747097 (document showing Arm providing quarterly v9 ACK releases to Qualcomm between 2021 and 2025); ARMQC_02747103 (document showing Qualcomm downloading Armv8 materials, including quarterly "Update[s]_for_ACK," between 2022 and 2024); ARMQC_02747104 (document showing Qualcomm downloading Armv9 materials, including "Update[s]_for_ACK" and "V9A_ACK_Release_Update[s]" between 2022 and 2025); ARMQC_02604611 (document showing Arm delivering quarterly Armv8 ACK releases to Qualcomm between 04/04/2011 and 07/28/2022); ARMQC_02604616 (document showing Arm delivering quarterly Armv9 ACK releases to Qualcomm between 05/27/2019 and 07/28/2022).

### OOBs Are Partner and Design-Specific, And OOBs Provided To Third Parties Are Not Relevant To Qualcomm

OOBs are not ████████████████ under the Qualcomm ALA, including because they are not architecture technology identified in the v8 Annex 1 or the v9 Annex 1 to the Qualcomm ALA, nor are they ████████████ thereto.  OOBs identify which of the previously delivered ACK tests a partner should run and are based on the configuration of the

partner's design implementation.  Because OOBs are not just partner-specific, but implementation-specific, any OOB that Arm may have provided to a third-party ALA partner is not relevant to Qualcomm.  *See* Agrawal Dep. Tr. at 29:1–21 ("██████████████████████████████████").  Further, as explained in Arm's response to Qualcomm Interrogatory No. 1, by July 2022, Arm had already given Qualcomm several OOB packages, including for use with Nuvia-based designs. *See* Arm Resp. to Qualcomm Interrog. No. 1.

Further, though Qualcomm is not entitled to any ACK patches or OOB for Nuvia-based designs, Arm made clear in its January 8, 2025 letter to Qualcomm that "Arm intends to provide support for the Nuvia CPUs, including support and verification services" pending certain litigation between the parties.  QCVARM_0573677.

Arm identifies the following individual as knowledgeable regarding aspects of this subject matter: Vivek Agrawal.

Pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived:  ARMQC_02603587, ARMQC_02604609, ARMQC_02604610, ARMQC_02604611, ARMQC_02604612,        ARMQC_02604613,        ARMQC_02604614,        ARMQC_02604615, ARMQC_02604616,        ARMQC_02604617,        ARMQC_02604618,        ARMQC_02604619, ARMQC_02747093, ARMQC_02747097, ARMQC_02747103, and ARMQC_02747104.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm provided all of its ALA partners, including Qualcomm, with quarterly ACK releases

that incorporated ACK-patch solutions to ACK test issues relevant to all ALA partners.  *See*, *e.g.*, ARMQC_02604611 (document showing Arm delivering quarterly Armv8 ACK releases to Qualcomm between 04/04/2011 and 07/28/2022); ARMQC_02604616 (document showing Arm delivering quarterly Armv9 ACK releases to Qualcomm between 05/27/2019 and 07/28/2022); ARMQC_02779171 (document showing Arm delivering Product Code ███ from 08/20/2021 to 05/26/2025), ARMQC_02779174 (document showing Arm delivering Product Code ███ from 08/20/2021 to 05/22/2025), ARMQC_02779176 (document showing Arm delivering Product Code ███ from 08/20/2021 to 05/26/2025), ARMQC_02779179 (document showing Arm delivering Product Code ███ from 09/08/2021 to 05/20/2025), ARMQC_02779181 (document showing Arm delivering Product Code ███ from 09/08/2021 to 04/29/2025).

Arm also provided Qualcomm with Qualcomm-specific support materials.  *See*, *e.g.*, ARMQC_02747093 (document showing Arm providing Qualcomm-specific support materials); ARMQC_02747097 (document showing Arm providing Qualcomm-specific support materials); ARMQC_02747103 (document showing Qualcomm downloading Qualcomm-specific support materials); ARMQC_02747104 (document showing Qualcomm downloading Qualcomm-specific support materials).

Arm further incorporates by reference Arm's objections and responses to Qualcomm Interrogatory Nos. 1 and 10.

Arm further incorporates by reference the testimony of all witnesses that have been deposed in this case to date, including those specifically referenced herein, as well as the testimony of all witnesses deposed in *Arm v. Qualcomm*, Case No. 1:22-cv-01146 (D. Del.), and the exhibits used during those depositions.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this

Interrogatory may be derived: ARMQC_02779171, ARMQC_02779174, ARMQC_02779176, ARMQC_02779179, ARMQC_02779181; ARMQC_02603587, ARMQC_02604609, ARMQC_02604610, ARMQC_02604611, ARMQC_02604612, ARMQC_02604613, ARMQC_02604614, ARMQC_02604615, ARMQC_02604616, ARMQC_02604617, ARMQC_02604618, ARMQC_02604619, ARMQC_026046020, ARMQC_02604621, ARMQC_02604622, ARMQC_02604623, ARMQC_02747093, ARMQC_02747097, ARMQC_02747103, ARMQC_02747104.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 6:**

Describe in detail and provide a list of licensing terms that Arm has offered since 2019 for CortexA720 codenamed "█████," Cortex-A520 codenamed █████," Cortex M55 codenamed █████" Cortex-X925 codenamed █████," the CPU codenamed "█████," Cortex-A720AE codenamed █████", Cortex-A730 codenamed "█████", and Cortex-A725 codenamed █████". Your response should identify (1) the names of each partner and which licensing offer(s) the partner received, (2) the date of each offer to each specific partner, (3) the licensing fee offered for each of the identified products, by partner (4) the royalty rate offered for each of the identified products, by partner (5) the licensing term offered for each of the identified products, by partner (6) any support and maintenance terms offered for each of the identified products, by partner (7) any restrictions imposed on engineering development efforts for each of the identified products, by partner (8) the names of all Arm individuals with relevant knowledge, and (9) all relevant documents identified by Bates number.

**RESPONSE TO INTERROGATORY NO. 6 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks information regarding "each partner," "each offer," "each of the identified products," without limitation. Arm further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information regarding cores for which Qualcomm does not allege breach in

its Second Amended Complaint, including "Cortex-X925," "███████," "the CPU codenamed ██████,'" "Cortex-A720AE codenamed '███████,'" "Cortex-A730 codenamed '████,'" and "Cortex-A725 codenamed '███████.'"  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.  Arm further objects to this Interrogatory as vague and ambiguous, as the term "restrictions" is unclear.  Arm further objects to this Interrogatory as having multiple discrete subparts and therefore multiple interrogatories.  Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows: Arm is willing to meet and confer with Qualcomm regarding a reasonable scope for this interrogatory.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Arm further objects to this Interrogatory as vague and ambiguous, as the term "offered" is unclear.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARM_01424135, ARMQC_02779314, ARMQC_02772366, ARMQC_02779433, ARMQC_02779391, ARMQC_02779269, ARMQC_02779412,

ARMQC_02779364,      ARMQC_02779483,      ARMQC_02783533,      ARMQC_02783601,

ARMQC_02783599,      ARMQC_02783597,      ARMQC_02783603,      ARMQC_02783595,

ARMQC_02783512,      ARMQC_02783575,      ARMQC_02774738,      ARMQC_02774748,

ARMQC_02774757,      ARMQC_02774767,      ARMQC_02774814,      ARMQC_02774818,

ARMQC_02774844, ARMQC_02774816.

Arm further incorporates by reference the testimony of the following witnesses: Karthik Shivashankar, Ehab Youssef, Akshay Bhatnagar, Jeff Fonseca, and Kurt Wolf, including the documents used at each of those depositions..

Arm further incorporates by reference any documents withheld on the basis of third-party confidentiality disputes, including due to an objection or motion for a Protective Order filed by any such third parties. Arm reserves the right to supplement this response to address such documents as appropriate should any such disputes be resolved and result in the production of any documents to Qualcomm.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 7:**

Describe, in detail, Arm's business strategy with respect to gaining a competitive advantage against other companies, including Qualcomm. Your response should include (1) any strategy related to unwinding or limiting ALAs, (2) any strategy related to increasing licensing prices for products offered under any license, (3) any strategy related to development of silicon, (4) any strategy related to acquiring other companies, (5) any strategy related to increasing pricing or limiting access to v10 or future versions of the Arm ISA, (6) the names of all Arm individuals with relevant knowledge, and (7) all relevant documents identified by Bates number.

**RESPONSE TO INTERROGATORY NO. 7 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding "any

strategy" and "all Arm individuals," without limitation.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.  Arm further objects to this Interrogatory as vague and ambiguous, as the terms "Arm's business strategy with respect to gaining a competitive advantage," "unwinding or limiting ALAs," "development of silicon," and "increasing pricing or limiting access to v10 or future versions of the Arm ISA" are unclear.  Arm objects to Qualcomm's characterization of its business strategy.  Arm further objects to this Interrogatory as having multiple discrete subparts and therefore multiple interrogatories  Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows: Arm is willing to meet and confer with Qualcomm regarding a reasonable scope for this interrogatory, if any.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**<u>FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7 (July 11, 2025)</u>:**

Arm incorporates by reference its initial response to this Interrogatory.  Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence, including information regarding Arm's "strategy related to acquiring other companies."  Specifically, this portion of the Interrogatory is not relevant to any of Qualcomm's claims in its Second Amended Complaint, including Qualcomm's California Unfair Competition Law ("UCL") claim.  *See Bacon v. Carroll*,

2007 WL 2111057, at *7 (D. Del. July 17, 2007) (finding interrogatories related to defendant's grievances "are not relevant or likely to lead to admissible evidence" and plaintiff "cannot point to any use for the material that would support" the claims). Arm is willing to meet and confer with Qualcomm as to the relevance and appropriate scope of this portion of the Interrogatory, if any.

Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence, including information regarding "Arm's business strategy with respect to gaining a competitive advantage against other companies." Specifically, this portion of the Interrogatory is not relevant to any of Qualcomm's claims in its Second Amended Complaint, including Qualcomm's UCL claim. There is no support for the proposition that a business strategy to "gain[] a competitive advantage against other companies," without more, is unfair or unlawful conduct under the UCL. Such conduct is instead generally pro-competitive. *See FTC v. Qualcomm*, 969 F.3d 974, 1003, 1005 (9th Cir. 2020) (finding Qualcomm's "hypercompetitive" behavior to be "disruptive" but "in a manner that [is] beneficial to consumers in the long run"). Indeed, where business practices are "reasonable and consistent with current industry practice" and "reduc[e] 'transaction costs and complexities,'" courts routinely find such conduct does not violate the UCL. *E.g.*, Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 47–48 (Apr. 26, 2024) (citing *FTC v. Qualcomm*, 969 F.3d 974, 996 n.17, 996 (9th Cir. 2020)).

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm's business has always been customer centric. Its mission is to innovate and develop products to meet customer needs and market demand. Arm continues to pursue this mission by developing both its instruction set architecture ("ISA") and its implementation cores in close collaboration with its partners, including Qualcomm. This enables Arm's partners to compete

across the semiconductor technology stack, which in turn brings more choice to the market. Accordingly, Arm's business strategy is aimed at investing in productive relationships with its partners to meet these pro-competitive goals.

Arm's open licensing model enables many companies to design chips, fostering a competitive ecosystem.  Specifically, Arm has enabled its partners to build custom central processing units ("CPUs") by licensing its ISA to them through Architecture Licensing Agreements ("ALAs").  Doing so increases the number of CPUs available on the market, including CPUs that compete with Arm-designed CPUs, which Arm also makes available for license through Technology Licensing Agreements ("TLAs").  Given the extraordinary amount of time and resources required to successfully develop CPUs and the attendant high rate of failure, Arm carefully chooses its ALA partners to ensure the greatest likelihood of success.  Even the top semiconductor companies with the greatest resources are often unable to successfully develop custom CPUs under their ALAs.  For example, Qualcomm—one of the world's largest and most profitable semiconductor companies—sought to develop a custom core for the server market but ultimately abandoned the effort due to high costs.  *See* Deposition of James Thompson, November 11, 2023, pp. 53–56.  Indeed, Arm's royalty payment model aligns its interests with those of its partners—meaning Arm succeeds when its partners do—and incentivizes its partners to make their intellectual property available as broadly as possible.  Arm's ALA licensing practices are thus pro-competitive and driven by rational business decisions.

In addition to major players like Qualcomm, Arm has also entered ALAs with promising start-up technology design companies to foster innovation and meet customer needs.  For example, in 2019, Arm negotiated an ALA with NUVIA Inc. ("Nuvia"), a start-up that designed chips for data centers.  Arm agreed to accept a lower-than-average upfront fee for the ALA to help sponsor Nuvia's entry into the market.  In return for Arm's agreement to share Nuvia's risk on the front-

end, Nuvia agreed to grant Arm higher royalties if it successfully developed a CPU. This deal typified Arm's customer centric, pro-competitive approach to its partners: investment and support.

Although Arm executes ALAs with partners who have the means and desire to invest in developing their own customized CPUs, history and experience has demonstrated that those partners are not always capable of optimizing Arm's architecture during CPU development and are unlikely to yield CPUs that are materially superior to Arm's product, despite enormous investments of resources and time. Many partners thus license Arm's market-leading, ready-to-use implementation cores through TLAs rather than embarking on the high-risk, low-reward proposition of CPU development. TLAs enable Arm's partners to outsource their costly CPU research and development needs to Arm, which reduces their development burdens and risks, speeds up their time-to-market, and frees up resources for investment in innovation and differentiating themselves in other areas. Because TLAs offer a far more efficient, practical, and effective arrangement in almost every circumstance, the vast majority of Arm's licenses are TLAs and historically most of Arm's partners have a TLA. *See* ARM_01259705 at 9794; Deposition of Simon Segars, November 16, 2023, pp. 29–30. TLAs, in turn, directly benefit the market and consumers by increasing product quality while decreasing prices.

Arm has further explored offering its own chips to meet innovation needs and customer demand. Arm's potential entrance into the chip market would thus generate more competition, innovation, and consumer choice. Regulators routinely approve, and markets encourage, this type of pro-competitive conduct.

Arm does not have a blanket "strategy" for pricing its IP licenses. Arm instead approaches each license individually and in the context of the specific needs of the partner, market segment, and end-users, resulting in various license structures. As noted, Arm's ALA with Nuvia catered to Nuvia's unique needs as a start-up and sought to increase Nuvia's chances of success by trading off

lower upfront fees for higher royalty rates. Qualcomm's ALA, by contrast, has considerably lower-than-average royalty rates that reflect, among other factors, Qualcomm's market presence and prominence as one of Arm's largest partners by royalty revenue. To the extent Arm has increased upfront prices or royalty rates for any of its IP, Arm has done so in the normal course of business to account for increased costs, including resources expended on developing updated and innovative products, and reflect the increased value of its updated offerings. Indeed, Arm's conduct is "reasonable and consistent with current industry practice." *See, e.g.*, Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 47–48 (Apr. 26, 2024) (citing *FTC v. Qualcomm*, 969 F.3d 974, 996 n.17, 996 (9th Cir. 2020)).

Arm refers Qualcomm to its Initial Disclosures for "the names of all Arm individuals with" knowledge relevant to this Interrogatory.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARM_01293447, ARMQC_02771129, ARMQC_02771151, QCVARM_0851876, QCVARM_1068459.

Arm further incorporates by reference the testimony of the following witnesses: Rene Haas, William Abbey, Paul Williamson, Richard Grisenthwaite, Karthik Shivashankar, Jannik Nelson, Peter Greenhalgh, Durga Malladi, and Martin Weidmann, including the documents used at each of those depositions.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 8:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not interfere, either intentionally or negligently, with Qualcomm's business

opportunities, including but not limited to Qualcomm's business opportunities with the Smartphone Company and the AI and Ecosystem Company identified in the operative Complaint. Your response should include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 8 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding alleged interference with "Qualcomm's business opportunities," without limitation.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.  Arm further objects to this Interrogatory as vague and ambiguous, as the terms "Qualcomm's business opportunities," and "Qualcomm's business opportunities with the Smartphone Company and the AI and Ecosystem Company" are unclear.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

**Arm's October 2024 Letter And Its Publication Did Not Interfere With Qualcomm's Business Opportunities Because Arm Repeatedly And Publicly Stated That Qualcomm Was In Breach Of The Qualcomm ALA As Early As 2022**

Arm's October 2024 letter stating that Qualcomm was in breach of the Qualcomm ALA, and the publication of the same, did not interfere with any of Qualcomm's business relationships because Arm repeatedly and publicly stated that Qualcomm was in breach of the Qualcomm ALA as early as 2022.

On November 15, 2022 Arm filed a publicly-available Answer in *Arm Ltd. v. Qualcomm Inc. et al.*, No. 22-1146 (MN) ("Arm v. Qualcomm"), in which Arm publicly stated that "Qualcomm

is materially breaching its ALA, giving Arm the right to terminate, and the Qualcomm ALA does not provide a license for or right to continue development of the Nuvia technology," that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology, entitling Arm to terminate that ALA based on Qualcomm's material breaches," that "Arm is entitled to terminate Qualcomm's ALA based on Qualcomm's material breaches of the verification, delivery, and support and maintenance provisions," and that:

> "Qualcomm's allegations that it is exercising its rights with respect to the relevant Nuvia technology under Qualcomm's license agreements with Arm and is not in violation of those agreements fail because Arm has no such obligations with respect to the Nuvia technology, and Qualcomm is breaching the Qualcomm ALA by insisting otherwise. Under the Qualcomm ALA, Arm has no obligation to provide, and Qualcomm has no right to seek, verification, delivery, or support and maintenance in connection with technology developed under the now-terminated Nuvia ALA. The 'verification' provisions of ████████ of the Qualcomm ALA are limited to products manufactured [redacted] in the ALA. The delivery (████████) and support and maintenance (████████) obligations of the Qualcomm ALA are similarly limited to the defined [redacted] and therefore likewise do not extend to the relevant Nuvia technology, which embodies and was derived from Arm technology delivered by Arm to Nuvia under Nuvia's now-terminated ALA. Qualcomm's unreasonable, bad-faith demands that Arm comply with purported obligations for verification, delivery, and support and maintenance with respect to technology delivered and developed outside the scope of the Qualcomm ALA are contrary to the parties' expectations and undermines the benefit to Arm from the Qualcomm ALA, thereby materially breaching that agreement's terms and implied covenant of good faith and fair dealing and entitling Arm to terminate the Qualcomm ALA under ████████."

No. 22-1146, D.I. 21 at 2, 37, 39, 41-42.

On April 11, 2024, Arm filed another publicly-available Answer that likewise included allegations that Qualcomm was in breach of its ALA, including that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology," and that "Qualcomm is materially breaching its ALA, giving Arm the right to terminate …."  D.I. 322 at 2, 42-45, 48-49.  These materials were available to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146.

## Qualcomm Recognized That Arm's October 22, 2024
## Notice Of Material Breach "Is Actually Not New News"

In *Arm v. Qualcomm*, the Court held a pre-trial conference on November 20, 2024. During that conference, Qualcomm's counsel stated that Arm's claim that Qualcomm is in breach of the Qualcomm ALA has been in the case "starting at the very beginning," Nov. 11, 2024 Hearing Tr. at 13:10-16, and that "[t]he letter on October 22nd is actually not new news in the sense of alleging these breaches":

> "And in response to that, there have been repeated allegations that the Qualcomm ALA has been breached by Qualcomm. The letter on October 22nd is actually not new news in the sense of alleging these breaches. It has been in the case squarely and we anticipate that it is going to be raised by ARM in response to the arguments that we have regarding the fact that our products are licensed."

*Id.* at 14:18-24. Qualcomm's counsel stated earlier in that same hearing that "with respect to Qualcomm's alleged breach under the Qualcomm ALA, Arm itself has put that in the case starting at the very beginning" and that "[w]hen you go to their answer at DI 21, they say … [Qualcomm is] also materially breaching its ALA with Arm." *Id.* at 13:10-16. Qualcomm candidly admitted "as early as November 15, 2022, in DI 21, … they say Qualcomm is materially breaching its own ALA and giving ARM the right to terminate that agreement." *Id.* at 13:23-14:12. Qualcomm also acknowledged "there is at least five or six references" to this same assertion that Arm has the right to terminate the Qualcomm ALA "throughout [Arm's] pleading" in November 2022. *Id.*

## Arm's Alleged Publication of Arm's October 2024 Letter Did Not
## Interfere With Qualcomm's Business Opportunities Because Qualcomm Admits
## It Had An Obligation To Publish—And Did Publish—Arm's October 2024 Letter

On October 22, 2024 Arm sent a notice of material breach ("October 22 Notice") to Qualcomm that echoed its public statements in its November 15, 2022 and April 11, 2024 Answers, including that:

> "The Qualcomm ALA permits Qualcomm to seek support and verification solely for CPU designs created by Qualcomm employees, at a time when they were Qualcomm employees. Qualcomm is only permitted to market an Architecture Compliant Core if Qualcomm has complied in all respects with the requirements of

the Qualcomm ALA and completed the verification procedures provided therein. And Qualcomm is entitled to seek contractual remedies solely for CPU designs that fall within the scope of the ALA. These obligations are reflected in multiple places in the Qualcomm ALA, including but not limited to ███████████████████ ████████████████████

Qualcomm has systematically and willfully breached these obligations, and its breaches have accelerated and expanded in recent months. Specifically, Qualcomm has developed CPUs and marketed multiple products that contain CPUs that use designs, technology, and code created by Nuvia employees at the time when Nuvia was a third party (hereinafter 'Nuvia designs'). Recently, Qualcomm has sought support and verification for additional designs that reuse the Nuvia designs. Qualcomm and Nuvia have willfully refused to discontinue use of the Nuvia designs despite the independent obligations provided by Section 15.1 of the Nuvia ALA upon termination. And Qualcomm initiated and continues to prosecute contractual claims that arise from Qualcomm's improper conduct with respect to these unlicensed cores.

Due to Qualcomm's willful, ongoing, and renewed actions, Qualcomm is in material breach of the Qualcomm ALA."

10/22/2024 Arm Breach Notice to Qualcomm (ARMQC_02749015).  No terms or provisions of the Qualcomm ALA were quoted in Arm's notice of material breach.  *Id.*  Qualcomm responded on October 28, 2024.  10/28/2024 Qualcomm Ltr. to Arm.  Qualcomm made a summary of the contents of both notices available to the public on November 6, 2024.  Qualcomm 10-K Annual Report (November 6, 2024).

On January 8, 2025, Arm withdrew its October 22 Notice, stating that:

The Qualcomm ALA was the subject of an incomplete jury verdict on December 20 that found in Qualcomm's favor. That verdict is not final and is subject to a variety of legal challenges. Nonetheless, Arm respects and values the jury process and the Court's ongoing role in resolving the parties' disputes. As a result, and while Arm's ongoing legal challenges are pending, Arm will treat the Nuvia CPUs as falling within the scope of the Qualcomm ALA, and Arm therefore withdraws the pending October 22, 2024 notice of material breach. Arm has no current plan to terminate the Qualcomm ALA until the legal process resolves the parties' disputes over the Qualcomm ALA. Arm also conditionally accepts Qualcomm's one-time, five-year year extension under which the Qualcomm ALA will expire in 2033. Pursuant to separate correspondence, Arm intends to provide support for the Nuvia CPUs, including support and verification services, while the related legal challenges remain outstanding.

Arm's prior correspondence and relevant court filings in the Delaware litigation reflect Arm's legal position regarding the scope of the Qualcomm ALA and the required actions that Nuvia acting in concert with Qualcomm must take in light of

> the termination of the Nuvia ALA on March 1, 2022. Arm's future legal filing will reflect its legal position regarding the non-final verdict, a new trial and judgment in the legal case. Arm reserves all rights and none of Arm's conduct, support and verification reflects a waiver of Arm's present or future rights or claims.

1/8/2025 Arm Ltr. to Qualcomm (QCVARM_0847182). Qualcomm and Arm exchanged further correspondence on January 22 and 30. 1/22/2025 Qualcomm Ltr. to Arm (QCVARM_0847182); 1/30/2025 Arm Ltr. to Qualcomm (QCVARM_0847184).

On November 6, 2024 Qualcomm publicly described Arm's October 22 Notice in its Annual Report to investors:

> On October 22, 2024, Arm provided us with a notice alleging that we have breached the Qualcomm ALA by marketing products that contain CPUs that Arm alleges use designs, technology and code created by Nuvia employees prior to our acquisition of Nuvia; by seeking support and verification from Arm for additional products that use such alleged designs, technology and code; and by suing Arm for breach of the Qualcomm ALA. Arm's notice asserts that it will have the right to terminate the Qualcomm ALA if such alleged breaches are not cured within 60 days of such notice.

> Qualcomm 10-K Annual Report (November 6, 2024).

On December 16, 2024 Qualcomm filed a public version of its First Amended Complaint in this case in which it publicly described Arm's October 22, 2024 notice of material breach, stating that "Arm sent Qualcomm a notice of material breach purporting to have the right to terminate Qualcomm's own license," described the contents of the letter, and publicly filed a redacted copy of the notice of material breach. A redacted copy of Arm's October 22, 2024 notice of material breach was and remains accessible to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146. D.I. 39 at 2, 8-9, 32-35; D.I. 39-1.

On January 22, 2025, Qualcomm wrote to Arm and stated that the parties' correspondence on this issue was not confidential, and that Qualcomm was "required by law" to publicly disclose the correspondence in its filings with the U.S. Securities & Exchange Commission, and that "in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice":

"Even if that [January 8, 2025] letter [withdrawing the October 22, 2024 notice of material breach] were itself 'Confidential'—and it is not—Qualcomm is nevertheless required by law to disclose the fact that Arm has withdrawn that notice and indicated that it has no current plan to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. For instance, in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice and Arm's threats to terminate the Qualcomm ALA. Qualcomm intends to update those disclosures in light of Arm's withdrawal of that notice and statement that it does not currently intend to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. We presume you have no objection to this legally required update."

1/22/2025 Qualcomm Ltr. to Arm (QCVARM_0847182).

On February 5, 2025 Qualcomm publicly described Arm's January 8, 2025 letter in its

Quarterly Report:

On January 8, 2025, Arm notified us that it was withdrawing its October 22, 2024 notice of breach and indicated that it has no current plan to terminate the Qualcomm ALA, while reserving its rights pending the outcome of the ongoing litigation.

Qualcomm 10-Q Quarterly Report (February 5, 2025). Cristiano Amon also publicly

described Arm's communication in its public investor conference call on February 5, 2025.

### Arm's Actions Did Not Interfere With Any Of
### Qualcomm's Business Opportunities With ███████████

The business opportunities Qualcomm alleges it lost are not due to Arm's actions, and

Arm's conduct did not amount to intentional or negligent interference with Qualcomm's business

relationships with ████████████████████.

Regarding ████, Qualcomm contends that "[a]fter the Breach Letter was published, [███

delayed finalizing a termsheet for an agreement under which Qualcomm would design that custom

chip and requested inclusion of language related to Qualcomm's chip development capabilities.

[████] has stated to Qualcomm that before it finalizes that termsheet, it must first understand the

implications of termination of the QC ALA on Qualcomm's ability to deliver the custom chips in

question." SAC ¶ 159. Qualcomm has failed to identify the termsheet in question let alone any

documents relevant to its theory that its business relationship with ████ was harmed by Arm.

Further, any delay in the finalization of that termsheet is due to factors other than Arm's actions, including Qualcomm's own business practices.

Regarding ███████████████, Qualcomm contends that "[███████] had informed Qualcomm that it was designing a new mobile phone that would rely on Qualcomm's innovative Snapdragon® 8-Elite SoC.  After learning that Arm was threatening to terminate the QC ALA, however, a senior executive of [███████] informed a senior Qualcomm executive that the customer's legal and intellectual-property teams would need to confer with their counterparts at Qualcomm.  [███████] has also insisted on Qualcomm's providing additional reassurances before it will extend its existing business relationship with Qualcomm." SAC ¶ 158.  Qualcomm has failed to identify any lost opportunity with ███████, and any loss of an "exten[sion]" to its relationship with ███████ is due to factors other than Arm's actions, including Qualcomm's own business practices.

## Qualcomm's Claims Are Barred By *Noerr-Pennington* And California's Litigation Privilege

As a matter of law, Arm's alleged conduct is related to litigation and therefore not actionable.  *Noerr-Pennington* immunizes parties from liability "for engaging in conduct (including litigation) aimed at influencing decision making by the government."  *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 413 (3d Cir. 2016).  The *Noerr-Pennington* doctrine protects "conduct incidental to the prosecution of [a] suit," *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934-35 (9th Cir. 2006), including "demand letter[s] or cease-and-desist letter[s]."  *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015); *Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 655 F. App'x 103, 111 (3d Cir. 2016) ("cease-and-desist letter" "protected under *Noerr-Pennington*"); *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, C.A. No. 07-127-LPS, 2011 WL 678707, at *2 (D. Del. Feb. 18, 2011) (similar).

Courts also apply *Noerr-Pennington* immunity when plaintiffs bring tortious interference

and other claims based on purported communications about litigation to customers.  *See, e.g.*, *Evanger's Dog & Cat Food Co. v. Env't Democracy Project*, No. CV 21-08489, 2022 WL 180205, at \*1, \*4 (C.D. Cal. Jan. 20, 2022) (dismissing claims arising out of letter to plaintiff's customer); *Fitbit, Inc. v. Laguna 2, LLC*, No. 17-cv-00079- EMC, 2018 WL 306724, at \*10 (N.D. Cal. Jan. 5, 2018) (claims based on contacting customers regarding pre-suit demand letter barred by *Noerr-Pennington*).

California's litigation privilege also protects Arm's letter (and the alleged publicizing of that letter) from Qualcomm's tortious interference claims.  The "litigation privilege is … absolute in nature," *Silberg v. Anderson*, 50 Cal. 3d 205, 215 (1990), and protects not only statements made in litigation, but also "out-of-court statements 'to nonparties who have a substantial interest in the outcome of the pending litigation,'" *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1040-41 (S.D. Cal. Aug. 29, 2011); *see also Cargill v. Progressive Dairy Sols., Inc.*, No. CV-F-07-0349-LJO-SMS, 2008 WL 2235354, at \*6 (E.D. Cal. May 29, 2008) ("news release" "inform[ing] the recipients of the … claims asserted" protected by the privilege); *Designing Health, Inc. v. Erasmus*, No. CV-98-4758 LGB (CWx), 2001 WL 36239748, at \*3-4 (C.D. Cal. Apr. 24, 2001) (similar).  Arm's letter was made during litigation with Qualcomm regarding Arm's claims.  Such publications are protected under California law. *Cargill*, 2008 WL 2235354, at \*6.

## Qualcomm Has Not Identified Any Independently Wrongful Conduct

To plead intentional interference with prospective economic advantage, Qualcomm must allege "intentionally wrongful act(s) designed to disrupt the relationship." *See Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.,* 2 Cal. 5th 505, 512 (2017). This element requires "independently wrongful" conduct, defined as conduct "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.,*

19 Cal. 4th 1134, 1159 (2003). Even if a plaintiff alleges some sort of interference with economic advantage, courts dismiss intentional interference claims where the plaintiff still does not allege conduct "wrongful by some legal measure," *Golden v. Sound Inpatient Physicians Med. Grp., Inc.,* 93 F. Supp. 3d 1171, 1178 (E.D. Cal. 2015), or that the conduct "violated any other law, which is a necessary element of intentional interference with economic relations," *Republican Nat'l Comm. v. Google LLC,* 2024 WL 3595538, at *1 (E.D. Cal. July 31, 2024).

Qualcomm has already conceded that breach-of-contract does *not* satisfy the independently-wrongful-acts requirement. D.I. 64 at 13; *see Block v. eBay, Inc.,* 2012 WL 1601471, at *5 (N.D. Cal. May 7, 2012). Allegations that Arm leaked the breach letter or made statements to customers, SAC ¶ 192, likewise do not show violations of "other law," particularly where Qualcomm fails to plead UCL claims and where that conduct is protected by *Noerr-Pennington*. Qualcomm's negligent tortious interference claim fails for the same reason: Arm has "failed to allege facts showing that defendants engaged in an act that is wrongful apart from the interference itself." *See TriCoast Builders, Inc. v. Lakeview Loan Servicing, LLC*, 2021 WL 248316, at *5 (Cal. Ct. App. Jan. 26, 2021) (quotations omitted).

## **Qualcomm Has Not Established That Arm Owed Any Duties To Qualcomm**

With respect to Qualcomm's negligent interference claim, Arm did not owe Qualcomm a duty of care. California law imposes a duty of care via contract only if the contract itself contains that duty. *See*, *e.g.*, *Golick v. State of California*, 82 Cal. App. 5th 1127, 1150 (2022) (no duty where plaintiffs did not show contract included "duty to protect"); *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 423 (2022) (no duty where contract did not contain "express promise"). Even "[t]he implied covenant of good faith and fair dealing is a contractual relationship and does not give rise to an independent duty of care." *Ragland v. U.S. Bank*, 209 Cal. App. 4th 182, 206 (2012).

Qualcomm also cannot establish a duty of care where Qualcomm and Arm are allegedly competitors.  Qualcomm repeatedly alleges that Qualcomm and Arm have "competing CPU designs," and that Arm is seeking to "compete … with Qualcomm." SAC ¶¶ 1, 5; *see also id.* ¶¶ 35, 52, 70–74, 160, 165. But "[t]here is no duty of care between competitors under California law." *Singman v. NBA Props., Inc,* 2014 WL 7892049, at *5 (C.D. Cal. Jan. 17, 2014); *Stolz v. Wong Commc'ns Ltd. P'ship,* 25 Cal. App. 4th 1811, 1825 (1994).

## Qualcomm's Claims Are Barred By Unclean Hands

Qualcomm's allegations regarding Arm's interference with Qualcomm's customer relationships is also barred by the equitable doctrine of unclean hands.  "One who comes into equity must come with clean hands and keep those hands clean throughout the pendency of the litigation even to the time of ultimate disposition by an appellate court." *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 310 (D. Del. 2005) (quoting *Gaudiosi v. Mellon*, 269 F.2d 873, 881 (3d Cir. 1959)).  "The clean hands maxim gives broad discretion to the court's equity power in refusing to aid an unclean hands litigant." *Id.*  "Any willful act, which can rightfully be said to transgress equitable standards, is sufficient." *Id.* at 311.

"The equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Kars 4 Kids Inc. v. Am. Can!*, 98 F.4th 436, 449 (3d Cir. 2024) (quoting *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001)).  "The misconduct must be rooted in 'fraud, unconscionable conduct, or bad faith ... that injures the other party and affects the balance of equities.'" *Id.* at 450 (quoting *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 n.12 (3d Cir. 1999)).

Courts have found unclean hands where the plaintiff engaged in the same (inequitable) conduct it accuses a defendant of.  *See, e.g.*, *Emco, Inc. v. Obst*, No. CV03-6432-R (RZX), 2004

WL 1737355, at *4–6 (C.D. Cal. May 7, 2004) (in a Lanham Act case where plaintiff accused defendant of falsely advertising that its blades were manufactured in the United States, the court found that defendant had proven its affirmative defense of unclean hands as a matter of law because plaintiff's "Americut" blades—which plaintiff promoted with classic American symbols such as the American flag and Statue of Liberty—were similarly manufactured overseas); *Haagen-Dazs, Inc. v. Frusen Gladje Ltd.*, 493 F. Supp. 73, 75–76 (S.D.N.Y. 1980) (denying plaintiff's motion for a preliminary injunction due to plaintiff's unclean hands in accusing defendant of falsely using Swedish motifs to suggest that its products were not of domestic origin, when plaintiff had done similarly).  Qualcomm published Arm's October 2024 letter just days after Arm did.  Further, on March 25, 2025, Bloomberg published a story concerning Qualcomm's non-public complaints of anticompetitive behavior at the European Commission, US Federal Trade Commission, and Korea Fair Trade Commission.  Josh Sisco & Ian King, *Qualcomm Takes Legal Fight with Arm to Global Antitrust Agencies*, Bloomberg News (Mar. 25, 2025, 3:55 PM CDT), https://www.bloomberg.com/news/articles/2025-03-25/qualcomm-takes-legal-fight-with-arm-to-global-antitrust-agencies.  Qualcomm's publication of Arm's letter, and non-public litigation materials to Bloomberg bar its claims against Arm under the doctrine of unclean hands.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8 (June 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further responds that Qualcomm's witness Mr. Cristiano Amon, Qualcomm's President and Chief Executive Officer and corporate designee on harm resulting from Arm's alleged tortious interference (*see, e.g.*, Arm's Fed. R. Civ. P. 30(b)(6) Topic No. 56), testified that

Qualcomm's allegations of harm resulting from the October 22 Notice and Bloomberg article are based on Arm's allegations in the lawsuit.  For example, Mr. Amon testified as follows:



Amon Dep. Tr. (Rough) at 161:15-162:19; *see also id.* at 146:13-147:7.  Mr. Amon's testimony confirms that Qualcomm's allegations of harm resulting from the October 22 Notice and Bloomberg article relate squarely to the litigation and Arm's litigation-related conduct. Accordingly, Qualcomm's claims for tortious interference are barred by *Noerr-Pennington* and California's Litigation Privilege.

Regarding ███, Arm further responds that Qualcomm still has failed to identify any harm to its business relationship with ███, let along any harm that was caused by Arm.  In particular, the material business terms agreed between Qualcomm and ███ were unaffected by the October 22 Notice.  For example, Qualcomm's witness Mr. Pavankumar Mulabagal, Qualcomm's corporate designee on Arm's Fed. R. Civ. P. 30(b)(6) Topic Nos. 51 ("All communications between Qualcomm and ███, including the timing of such communications, surrounding Qualcomm's

contention that Arm intentionally and/or negligently interfered with Qualcomm's relationship with

████ ") and 58 ("The factual basis for Your contention that Arm had knowledge of Your existing

or prospective business relationship with ████ , including when and how Arm first became aware

of the relationship"), testified ████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ . *See,*

*e.g.*, Mulabagal Dep. Tr. at 35:18-36:15.

Nor did the October 22 Notice and Bloomberg article materially delay Qualcomm's

business dealings with ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ *See, e.g., id.* at 49:6-63:4; QCVARM_0864924;

QCVARM_0864933; QCVARM_0864833. ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ Mulabagal Dep. Tr. at 47:17-48:15. And,

Mr. Mulabagal testified that ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ *Id.* at 88:22-89:15. ████████████████████

████████████████████████████████████████████████████████████████

████████████████ *See, e.g., id.* at 57:5-58:3. The October 22 Notice and Bloomberg article

therefore did not alter Qualcomm's and ████ development timeline.

Arm's dealings with ████ also did not impact Qualcomm's dealings. ████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████." *See id.* at 94:7-98:22.  Qualcomm

therefore cannot point to any actionable harm to its business relationship with ████, let alone harm

that was caused by Arm.

Regarding ████████, Arm further responds that Qualcomm still has failed to identify any

harm to its business relationship with ██████ that was caused by Arm.  Qualcomm's business

relationship with ██████ had instead become increasingly strained in the years preceding the

October 22 Notice because of Qualcomm's decision to ██████████████████████████



██████████████████████████████. *See, e.g.*, Amon Dep. Tr.

(Rough) at 264:2-275:25.  Predating the October 22 Notice, Mr. Amon ████████████████

████████████████████████████████████████ *See, e.g.*, *id.* at

266:2-8.  Any harm to Qualcomm's business relationship with ██████ was Qualcomm's own

doing and unrelated to any actions by Arm.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies

the following documents from which information responsive to the non-objectionable scope of this

Interrogatory may be derived: QCVARM_0865022, QCVARM_0864924, QCVARM_0864933,

QCVARM_0864833,     QCVARM_0865420,     QCVARM_0865236,     QCVARM_0865430,

QCARM_3425702,     QCARM_3534037,     QCVARM_0856270,     QCVARM_0856888,

QCVARM_1069082,     QCVARM_1069106,     QCARM_3533982,     QCARM_7484460,

QCARM_7484463,     QCVARM_0467694,     QCVARM_1069945,     QCVARM_1070005,

QCVARM_1118617,     QCARM_7515834,     QCVARM_0464076,     QCVARM_0464128,

QCVARM_0464495,    QCVARM_0465604,    QCVARM_0600730,    QCVARM_0601923,

QCVARM_0608314,    QCVARM_1068645,    QCVARM_1118760,    QCVARM_1119347,

QCVARM_0848786.

Arm further incorporates by reference the testimony of the following witnesses: Pavankumar Mulabagal, Cristiano Amon, and Spencer Collins, including the documents used at each of those depositions..

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 9:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that Your conduct as identified in Paragraphs 204-212 of the Second Amended Complaint does not constitute a violation of unfair competition law under the California Unfair Competition Law. Your response should include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 9 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, and unduly burdensome.  Arm objects to this Interrogatory to the extent it calls for a legal conclusion.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Qualcomm asserts that Arm violated the California Unfair Competition Law ("UCL") by allegedly (1) withholding deliverables under the Qualcomm ALA and TLA; (2) misrepresenting to

Qualcomm that it was not withholding deliverables; (3) "wrongfully" asserting that it has the right to terminate the QC ALA; (4) refusing to negotiate licensing terms with Qualcomm in good faith; (5) threatening or attempting to cut off Qualcomm's access to Arm's ISA; (6) leaking its October 22, 2024 letter to the media; (7) interfering or attempting to interfere with Qualcomm's customer relationships; and (8) making misleading statements to Qualcomm's customers to pressure them not to acquire products from Qualcomm.  SAC ¶¶ 206–07.  None of this conduct constitutes "a violation of unfair competition law" under the UCL.

To bring a claim under the UCL, Qualcomm must show that Arm engages in an "unfair, unlawful, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Qualcomm has indicated its allegations implicate the "unfair" and "unlawful" prongs.  Arm's conduct is not unfair or unlawful.

There are two tests courts use to determine whether conduct is "unfair" under the UCL. First, when a business competitor brings a UCL claim, California courts apply a "tethering test" that examines whether the conduct "[1] threatens an incipient violation of an antitrust law, or [2] violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [3] otherwise significantly threatens or harms competition."  *Cel-Tech Comm'cns, Inc. v. L.A. Cell. Tel. Co.,* 20 Cal.4th 163, 187 (1999).  The claim must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  *Zhejiang Yuanzheng Auto*, 2023 WL 4317189, at *12 (citing *Cel-Tech Comm'cns, Inc. v. L.A. Cell. Tel. Co.,* 20 Cal.4th 163, 186–87 (1999)).  A party's conduct "violates the policy or spirit of the antitrust laws" where "the effect of the conduct is comparable to or the same as a violation of the antitrust laws, [] or it otherwise significantly threatens or harms competition."  *People's Choice Wireless*, 131 Cal. App. 4th at 662 (citing *Cel-Tech*, 20 Cal. 4th at 187).  Second, in consumer actions, California courts apply a "balancing test" which "weigh[s] the utility of the defendant's

conduct against the gravity of the harm to the alleged victim." *Id.* (simplified). Finally, the "unlawful" prong requires Qualcomm to prove that Arm violated a federal, state, or local law. *See Olson v. World Fin. Grp. Ins. Agency, LLC*, 2024 WL 4668515, at *8 (N.D. Cal. Nov. 4, 2024). Arm's alleged conduct does not violate the UCL under either the "unfair" prong—including under both the tethering and balancing tests—or "unlawful" prong.

### Arm's Alleged Conduct Does Not Violate the UCL Under The Tethering Test

As a threshold matter, Qualcomm's allegations about Arm's allegedly unfair conduct suffer from two fatal flaws. For one, Qualcomm "does not identify an antitrust law or a policy or spirit of such a law." *Roberson v. Pocker*, 2024 WL 2984026, at *10 (C.D. Cal. Apr. 3, 2024) (granting dismissal); *see also Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002) (affirming dismissal where "complaint allege[d] that Albertson's acted with a motive to secure an advantage over competitors" but did "not state a theory of unfair practice based on violation of specific anti-trust statutes or policies of anti-trust legislation"). Qualcomm cannot make the "unusual" showing that Arm somehow "violate[d] the 'policy and spirit' of the antitrust laws without violating the actual laws themselves." *Synopsys, Inc. v. ATopTech, Inc.*, 2015 WL 4719048, at *10 (N.D. Cal. Aug. 7, 2015). For another, Qualcomm fails to identify any relevant market in which Arm's conduct allegedly threatens competition and has affirmatively represented that it "does not intend to offer a market definition to support its" UCL claim. 4/9/25 Ltr. From C. Nyardy at 4. But "without a definition of [the] market there is no way to measure [Arm's] ability to lessen or destroy competition." *Ohio v. Am. Express*, 585 U.S. 529, 543 (2018); *Racek v. Rady Children's Hosp. of San Diego*, 2012 WL 2947881, *6 (Cal. App. July 20, 2012); *Sun Microsystems, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 992 (N.D. Cal. 2000); *Vox Network Sols., Inc. v. Gage Tech., Inc.*, 2025 WL 929939, *5 (N.D. Cal. Mar. 27, 2025) (dismissing claim under UCL's "unfair" prong, where plaintiff failed to identify relevant market); *Reilly v. Apple Inc.*, 578 F.Supp.3d 1098, 1106-1111

(N.D. Cal. 2022) (same where plaintiff alleged only implausible market).  Qualcomm's allegations thus beg the question: "Competition" with what products, or with whom?

Although the legal inquiry should end there, Arm's conduct nevertheless does not satisfy any of the respective tests under the UCL or constitute a violation of that law.  Qualcomm's continued refusal to identify the antitrust laws implicated by Arm's conduct or the relevant market(s) in which Arm's conduct allegedly threatens competition makes it impossible for Arm to provide the "complete factual and legal bases" supporting Arm's contention that its "conduct as identified in Paragraphs 204-212 of the Second Amended Complaint does not constitute a violation of unfair competition law under the California Unfair Competition Law."  Arm's analysis is thus limited to Qualcomm's present allegations and representations, and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory to the extent Qualcomm clarifies its claim.

Qualcomm alleges that Arm acted unfairly by "withholding deliverables" it must provide "under the Qualcomm ALA and TLA," "misrepresenting to Qualcomm that it was not withholding deliverables," "asserting that it has the right to terminate the QC ALA without any basis in the QC ALA for those assertions," and "refusing to negotiate license terms with Qualcomm in good faith." SAC ¶ 206.  These allegations assert that Arm breached its contracts with Qualcomm, but corporate plaintiffs may not bootstrap contract claims into UCL violations. *See, e.g.*, *Martin Saturn of Ontario, Inc. v. Suburu of Am. Inc.*, 2023 WL 9417499, *8 (C.D. Cal. July 21, 2023); *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012); *Scripps Clinic v. Superior Court*, 108 Cal.App.4th 917, 940 (2003) (concluding harm was contractual, but not a UCL violation); *Mazal Grp. LLC v. Espana*, 2017 WL 6001721, at *4 (C.D. Cal. Dec. 5, 2017) (dismissing UCL claim when plaintiff did not include any specific allegations regarding the unfair prong and simply incorporated breach of contract allegations)).  As Qualcomm itself has argued, it

"makes little sense to hold that contract disputes between 'the world's most sophisticated companies,' [*Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 997 (9th Cir. 2020)], could give rise to an independent UCL claim."  Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 48 (Apr. 26, 2024) (citing *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008)).  Qualcomm's assertion that Arm refused to negotiate license terms with Qualcomm in good faith is barred by the statute of limitations.

        To the extent Qualcomm alleges that any of Arm's conduct was aimed at "threatening or attempting to cut off Qualcomm's access to the ubiquitous Arm ISA," SAC ¶ 207, such conduct still does not constitute a violation of the UCL.  As Qualcomm itself has argued, "an antitrust duty to deal with" or license others is "far outside the mainstream of antitrust law." Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 30 (Apr. 26, 2024); *see also Verizon Comm'cns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407-411 (2004) ("As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)); *FTC v. Qualcomm*, 969 F.3d 974 (9th Cir. 2020) ("As the Supreme Court has repeatedly emphasized, there is no duty to deal under the terms and conditions preferred by [a competitor's] rivals."); *Simon and Simon, PC v. Align Tech., Inc.*, 2020 WL 1975139, *3-6 (D. Del. Apr. 24, 2020).  It is completely beyond the reach of antitrust law here given Qualcomm has disclaimed any argument that Arm is attempting to exercise monopoly power.  4/28/25 Ltr. From C. Nyardy at 1 ("As the … SAC make[s] clear, Qualcomm is not asserting a claim for monopolization under Section 2 of the Sherman Act; it is asserting a claim under the UCL's 'unfair' prong."); SAC ¶ 207 (striking monopoly allegation).  "[I]n the absence of any purpose to create or maintain a monopoly," antitrust law "does not restrict the long-recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent

discretion as to parties with whom he will deal." *United States v. Colgate & Co.*, 250 U.S. 300, 308 (1919); *Trinko*, 540 U.S. at 408.  For that reason, California courts have consistently held a purported refusal to deal "is neither unlawful nor unfair" as a matter of law for purposes of the UCL.  *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 367 (2001); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 254; *Beverage v. Apple Inc.*, 101 Cal. App. 5th 749-50, 753-56 (2024); *People's Choice Wireless, Inc. v. Verizon Wireless,* 131 Cal. App. 4th 656, 668 (2005) (explaining that though it is true an antitrust violation is not necessary under the UCL, "[t]he allegations here are simply too far removed from cognizable antitrust evils to warrant intervention by a California court").

Also, to the extent Qualcomm's allegation that Arm "refus[ed] to negotiate license terms with Qualcomm in good faith," SAC ¶ 206, refers to the claim that Arm violated the implied covenant of good faith and fair dealing by allegedly refusing to negotiate a license to v10 of the Arm ISA, both the breach of contract and "refusal to deal" principles explained above preclude UCL liability premised on such conduct.

Next, Arm did not violate the UCL by allegedly "interfering or attempting to interfere with Qualcomm's relationships with Qualcomm's current and prospective customers," "leaking the Breach letter to the media," and "making misleading statements to Qualcomm's customers to pressure them not to acquire products from Qualcomm."  SAC ¶¶ 206–07.  The policy and spirit behind the antitrust laws protect against harm "to *competition itself*, not merely to competitors." *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 996 (9th Cir. 2020).  In its recent filings, Qualcomm indicated its view for the first time that Arm acted unfairly in order to "gain market share as a chip designer."  Qualcomm nowhere alleges or explains how this or any other alleged conduct broadly undermines a competitive market or consumers, or harms any alleged competitor other than Qualcomm.  And in any event, Arm has virtually no market share today in a so-called "chip design

market."

Further, because Arm's statements in Arm's October 22, 2024 letter are true, they cannot serve as a basis for "unfair" or anticompetitive conduct.  *See Digene Corp. v. Third Wave Techs., Inc.*, 536 F. Supp. 2d 996, 1006 (W.D. Wis. 2008), aff'd, 323 F. App'x 902 (Fed. Cir. 2009); *Gen. Commc'ns Eng'g, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 421 F. Supp. 274, 290 (N.D. Cal. 1976) (holding that "salesman puff" does not violate antitrust laws).  The antitrust laws are generally unconcerned with the content of competitive speech, even critical or derogatory speech. *See Schachar v. Am. Acad. Of Ophthalmology*, 870 F.2d 397, 399 (7th Cir. 1989) ("Antitrust law does not compel your competitor to praise your product or sponsor your work. To require cooperation or friendliness among rivals is to undercut the intellectual foundations of antitrust law."); *cf. Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 937 F. Supp. 435 ("Antitrust laws do not exist to stifle speech … Thus, any stigma that MSL has suffered because of ABA's not listing MSL as an accredited school does not provide the necessary offensive *conduct* for antitrust liability.").

### Arm's Alleged Conduct Does Not Violate the UCL Under The Balancing Test

The balancing test asks "whether the challenged business practice is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 1197, 1226 (N.D. Cal. 2014).  Qualcomm does not properly qualify as a consumer such that the consumer balancing test should apply.  Even if Qualcomm could constitute a consumer under the test, for the same reasons outlined above, Arm's business practices are pro-competitive, foster innovation, and benefit consumers, meaning they are not immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of Arm's conduct far outweighs any potential harm to Qualcomm.  *See Drum v. San Fernando Valley*

*Bar Association.*, 182 Cal. App. 4th 247, 257 (2010).

Arm's business model is inherently pro-competitive and beneficial to consumers. Arm's decision to license its ISA designs enables business partners to innovate, meet consumer demands across a diverse range of applications, and provide differentiated products. That, in turn, increases consumer choice and competition—including against Arm's own CPUs—resulting in lower consumer prices. And, Arm's licenses for its market-leading, ready-to-use CPUs offer partners an opportunity to bypass the enormous costs associated with CPU development and instead reallocate those resources towards innovating their products in other ways. Arm's partners can thereby speed up their time-to-market and fill more areas of consumer need, all while passing along their savings to consumers. Arm's practices are "reasonable and consistent with current industry practice," and "reduc[e] 'transaction costs and complexities'" for consumers. Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 47–48 (Apr. 26, 2024) (citing *FTC v. Qualcomm*, 969 F.3d 974, 996 n.17, 996 (9th Cir. 2020)). Any alleged business-related harms Qualcomm may have suffered do not outweigh the pro-competitive benefits and practical utility of Arm's business practices.

### Arm's Alleged Conduct Does Not Violate the UCL Under The Unlawful Prong

To succeed under the "unlawful" prong of the UCL, Qualcomm must allege "a violation of another law [as a] predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007); *Gopher Media LLC v. Melone*, 2023 WL 8790266, at *15 (Dec. 19, 2023 S.D. Cal) ("To prevail on a claim under the unlawful prong of the [UCL], the plaintiff must show that a challenged [conduct] violates any federal or California statute or regulation." (citation omitted)). Qualcomm alleges that "Arm's conduct is … unlawful because it violates California common law, including state law prohibiting intentional and negligent interference with prospective economic advantage." SAC ¶ 209. But a

common law claim cannot form the predicate for a UCL claim.  *See Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1044 (9th Cir. 2010), ("[A] common law violation such as breach of contract is insufficient … Because [plaintiff] does not go beyond alleging a violation of common law, he fails to state a claim under the unlawful prong of § 17200."); *Mazal Group, LLC v. Espana*, 2017 WL 6001721, at *4 (C.D. Cal. Dec. 4, 2017) (granting MTD on UCL claim when plaintiff did not go beyond alleging a violation of common law).  And, in any event, Qualcomm's argument is circular.  Qualcomm contends Arm's conduct is unlawful because it tortiously interfered with Qualcomm's economic advantage, SAC ¶ 209, and simultaneously contends Arm's conduct is wrongful for purposes of that tort because the conduct violates the UCL.  Such circular reasoning cannot satisfy the elements of either claim.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9 (July 11, 2025):

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Qualcomm claims that Arm acted "unfair[ly]" by sending Qualcomm a letter on October 22, 2024 to notify Qualcomm that it was in material breach of the Qualcomm ALA.  SAC ¶ 206.  But, two years prior, Qualcomm itself sent threatening letters to Arm with baseless claims that Arm breached the ALA.  On November 3, 2022 and December 5, 2022, Qualcomm sent notice letters to Arm alleging that, "[b]y refusing to provide the OOB, ARM has failed to comply with its obligations under ███████████████████████████ . . . of the ALA," and that "ARM has ██ days to cure any breach of ████████  Arm_01241585; ARM_00025401.  Arm responded on December 6, 2022, stating that "Arm strongly disagrees with Qualcomm's claim that ████████ ███ is at issue or that provision of the OOB implicates ████████ and that "Qualcomm's letter is a

transparent and malicious effort to transform a debate about Arm's support obligations under █████████ into a weapon of economic duress through its improper invocation of ██████.'' Arm_01241565.  Arm's legitimate defense of its rights under the ALA two years after Qualcomm itself began weaponizing the ALA to coerce Arm cannot serve as a basis for a UCL claim.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARMQC_00001136, ARM_01259705, ARMQC_00001136, QCVARM_1068459, QCVARM_0462995, QCVARM_0528826.

Arm further incorporates by reference the testimony of the following witnesses: Lynn Couillard, Martin Weidmann, Gerard Williams, Spencer Collins, Michael Williams, William Abbey, Mark Dragicevich, Karthik Shivashankar, Cristiano Amon, Jean-Francois Vidon, Paul Williamson, Richard Meacham, Ziad Asghar, Peter Greenhalgh, Jannik Nelson, Durga Malladi, and Manju Varma, including the documents used at each of those depositions.  Arm also incorporates by reference its responses to Interrogatory Nos. 1–8, and 10–12, including the testimony and documents cited and incorporated therein (and any supplements thereto). Additionally, Arm incorporates by reference its Motion to Dismiss, D.I. 19, 28, Arm's Motion to Dismiss Qualcomm's First Amended Complaint, D.I. 48, 72, and Arm's Motion to Dismiss Qualcomm's Second Amended Complaint, D.I. 232, 233, 305.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 10:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not breach the Qualcomm ALA. Your response should include, but is not limited to, the complete factual and legal bases for any contention that you did not withhold ARM Technology or Updates or breach the implied covenant of good faith and fair dealing, and should

include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 10 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks "the complete factual and legal bases," without limitation.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.  Arm further objects to this Interrogatory to the extent it calls for a legal conclusion.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

<u>**Qualcomm's Allegations**</u>

Qualcomm alleges in its Second Amended Complaint that Arm breached ███████ of the Qualcomm ALA by allegedly withholding OOB and ACK patches. Second Amended Complaint ¶¶ 78-94.  Qualcomm alleges in its Second Amended Complaint that Arm breached an implied covenant of good faith and fair dealing under the ALA by "with[olding] deliverables that it was required to provide Qualcomm under the QC ALA" and "fail[ing] to negotiate an extension to the QC ALA that would cover future version of the architecture, including v10."  Second Amended Complaint ¶ 184.

<u>**Arm Did Not Breach The Qualcomm ALA Based**</u>
<u>**On The Alleged Withholding Of ACK And OOB**</u>

For Qualcomm's allegations that Arm breached the Qualcomm ALA based on its alleged

withholding of ACK and OOB, including based on an implied covenant of good faith and fair dealing, Arm incorporates by reference its response to Interrogatory No. 1.

Further, Qualcomm's implied covenant allegation is duplicative of Qualcomm's ████ breach claim and fails for the same reasons.  *See, e.g.*, *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 439 (3d Cir. 1993) (holding that Plaintiff "cannot assert a claim for breach of implied covenants that is based on exactly the same acts which are said to be in breach of express covenants."); *Cision US, Inc. v. CapTech Ventures, Inc.*, No. CV 24-00063-MN-SRF, 2025 WL 1094318, at *5 (D. Del. Apr. 11, 2025) (dismissing Plaintiff's "claim for breach of the implied covenant of good faith and fair dealing … as impermissibly duplicative of its breach of contract and warranty claims.").

### Arm Did Not Breach Any Implied Covenant Of Good Faith And Fair Dealing For The Qualcomm ALA By Allegedly Failing To Negotiate A License To v10

Qualcomm alleges in its Second Amended Complaint that Arm breached an implied covenant of good faith and fair dealing under the ALA by "fail[ing] to negotiate an extension to the QC ALA that would cover future version of the architecture, including v10."  Second Amended Complaint ¶ 184.

That is not true.  On June 4, 2025, Will Abbey, Arm's Chief Commercial Officer, wrote to Qualcomm regarding its request for a v10 license, stating that Arm is prepared to negotiate in good faith for a v10 license and proposed a business meeting:

> Arm is prepared to negotiate in good faith over the terms of a license to the v10 architecture. As the first step in those negotiations, we propose a meeting between our commercial teams to better understand how Qualcomm intends to use the v10 architecture. That will help Arm put together an appropriately tailored licensing proposal. Please let us know a few dates Qualcomm is available for that meeting, and we will let you know our availability.

June 4, 2025 Will Abbey Letter to Roawen Chen.  On June 9, Qualcomm responded, but did not address Mr. Abbey's request for a business meeting.  Further, on June 13, 2025, Arm's Executive

Vice President and Chief Legal Officer Spencer Collins sent Qualcomm another letter again stating

that Arm is prepared to negotiate in good faith:

> On this basis, on June 4, 2025, Will Abbey, Arm's Chief Commercial Officer, proposed in good faith a business meeting regarding Qualcomm's request for a license to Arm's v.10 architecture.  Mr. Abbey's offer to meet remains open and Arm continues to believe that such a meeting would be the most efficient path forward in response to Qualcomm's request.  Please have the relevant business personnel respond to Mr. Abbey with dates that Qualcomm is available for such a meeting.
>
> \* \* \*
>
> Despite these clear limits on Qualcomm's election rights under the ALA, as we told Qualcomm in 2020, nothing prevents Arm and Qualcomm from discussing a potential license to future versions of the Arm architecture as they become available. Arm remains prepared to negotiate in good faith over the terms of a license to the v.10 architecture.

June 13, 2025 Spencer Collins Letter to Ann Chaplin.

### <u>Arm Is Not Required To Negotiate The Terms And Conditions Of A V10 License Under The Qualcomm ALA Because Qualcomm Did Not Have The Right To Elect V10 In 2020</u>

Qualcomm, in any event, does not allege that Arm breached ███████████ of the Qualcomm ALA. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Qualcomm does not accuse Arm of

breaching of this Section.  Any implied covenant claim based on ████████ thus improperly

"seeks to impose" obligations "beyond those to which the parties actually agreed."  *Lamke v.*

*Sunstate Equipment Co., LLC*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004).

As an initial matter Arm had no obligation to negotiate an extension under ████████████

based on Qualcomm's May 2020 email because v10 was not in development at that time, and there

were no ███████████████████████████████████████████ to elect in

2020.   In May 2020, Arm's v10 was not in development, and the parties never reached any ██████

████████ regarding any future versions of ██████████ that would be covered by a purported

election.   In April 2020, Qualcomm reached out to Arm asking if anyone is working on v10

Architecture in the context of seeking an extension to the ALA ████████████████.

ARM_00005340.  Arm responded that "no one is working on v10."  *Id.*  Qualcomm responded,

stating that "no meaningful discussions can currently be initiated around the terms and conditions

for an extension of the ALA Term to cover v10 architecture" and sought to amend the ALA.  *Id.*

On May 15, 2020 Lynn Couillard from Arm wrote to Qualcomm, stating that "[t]he intent

of ██████████. is to allow for an extension of the agreement as of this point in the term of the

agreement.  If there is not desire from Qualcomm to negotiate terms of an extension at this point,

but rather to have a discussion around licensing the next architecture sometime in the future, then

this portion of the agreement will expire" and that "there is nothing that stops us from discussing

next gen architecture or entering into an agreement anytime in the future regardless of the existing

agreement":



From: Lynn Couillard <Lynn.Couillard@arm.com>
Sent: Friday, May 15, 2020 9:49 AM
To: Brett Bettesworth <betteswb@qti.qualcomm.com>; Rajiv Gupta <grajiv@qti.qualcomm.com>
Cc: Todd Lepinski <Todd.Lepinski@arm.com>
Subject: [EXT] Re: V10 -->V9 architecture follow-on

Hello Brett and Rajiv, (+Todd)

The intent of section ██████ is to allow for an extension of the agreement as of this point in term of the agreement.  If there is no desire from Qualcomm to negotiate terms of an extension at this point, but rather to have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire.  However, importantly, there is nothing that stops us from discussing next gen architecture or entering into an agreement anytime in the future regardless of the existing agreement.

Note that at the time of the v8 architecture closure, we also included "██████ which at the time had no definition, and eventually became v9.   We are in a similar situation here with regards to visibility on next generation architecture.

Please let us know if you'd like to discuss, we can set something up for next week.

Thanks
Lynn

ARM_00005340.  Mr. Bettesworth responded five days later.  He did not dispute any of Ms. Couillard's statements, including that "[t]he intent of ███████ is to allow for an **_extension_** of the agreement **_as of this point in term of the agreement_**," and that if Qualcomm desires to "have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire."  He elected to "go ahead and move forward with the extension":

| | |
|---|---|
| From: | Brett Bettesworth [betteswb@qti.qualcomm.com] |
| Sent: | 20/05/2020 20:05:11 |
| To: | Lynn Couillard [Lynn.Couillard@arm.com]; grajiv@qti.qualcomm.com |
| CC: | Todd Lepinski [Todd.Lepinski@arm.com] |
| Subject: | RE: V10 -->V9 architecture follow-on |

**Importance:**   High

Hi Lynn,

Thanks for your email and the note below.  We will go ahead and move forward with the extension at this point, per the ALA optional election.

████████████████████████████████████████

We can discuss further at some point in the near future, but wanted to ensure that we provided timely notification of our election here, as mentioned previously.

Sincerely,
Brett

*Id.*

Arm and Qualcomm never reached any mutual agreement over what if any Arm Technology would be included in a purported extension.  And to the extent any agreement was reached, it is that v10 would not be included: after Arm notified Qualcomm that v10 was not in development, Qualcomm acknowledged that "no meaningful discussions can currently be initiated around the terms and conditions for an extension of the ALA Term to cover v10 architecture" and Qualcomm did not dispute any of Ms. Couillard's statements, including that "[t]he intent of ███████ is to allow for an extension of the agreement as of this point in term of the agreement," and that if Qualcomm desires to "have a discussion around licensing the next architecture sometime in the

future, then this portion of the agreement will expire." *Id.* Qualcomm did not follow up on that correspondence, and did not make any effort to follow up on its May 2020 correspondence until five years later, as discussed above. Instead, the parties proceeded with negotiating and finalizing an Annex 1 for v9, which was the only planned architecture at that time.

### Arm Is Not Required To Negotiate The Terms And Conditions Of A V10 License Under The Qualcomm ALA Because Qualcomm's May 2020 Emails Were Not A Valid Election

Arm was not obligated to negotiate an extension of the Qualcomm ALA because Qualcomm's May 2020 emails in which Qualcomm purported to elect to extend the ALA were not a valid election.



does not include email as a valid or effective method of providing notice under the ALA. Qualcomm's May 20, 2020 email did not give Arm proper notice of its purported election under ▮▮▮▮▮▮ rendering Qualcomm's purported "election" ineffective. Qualcomm did not send Arm follow-up correspondence in compliance with ▮▮▮▮ regarding its purported "election," and did not correspond with Arm again about its purported "election" for another five years. But even if Qualcomm had made a valid election, its assertion that Arm breached the implied covenant would be barred by the applicable statute of limitations.

### Arm Did Not Breach The Qualcomm ALA Based On The Alleged Withholding Of ETE Checker Support

Qualcomm does not allege that Arm breached the Qualcomm ALA based on withholding

ETE Checker support in its Second Amended Complaint or in its response to Arm's Interrogatory 2, which calls for "the complete legal and factual basis for [Qualcomm's] contention that Arm failed to meet any of its obligations under the Qualcomm ALA."  Second Amended Complaint; Qualcomm's March 10, 2025 Response to Arm's Interrogatory No. 2.  Nor did Qualcomm identify any alleged withholding of ETE Checker support in its November 3, 2022 letter to Arm. ARM_01423632 at -634.  Qualcomm states in its response to Arm Interrogatory No. 13 that "Arm violated the terms of the Qualcomm ALA by failing to … provide support for the ETE Checker," but does not specify the support that was allegedly withheld or identify any term of the ALA that Arm allegedly breached.

To the extent Qualcomm's statements can be understood, Arm did not breach the Qualcomm ALA based on any alleged withholding of support for the ETE Checker.  Qualcomm states in its response to Arm Interrogatory No. 13 that "the ETE Checker [is] a component of the ACK licensed by Qualcomm for Armv9."  However, Arm delivered the Armv9 ACK—including the ETE Checker—to Qualcomm at least as early as May 27, 2019, and Arm delivered all subsequent quarterly ACK releases to Qualcomm.  *See, e.g.*, ARMQC_02604616 (showing Arm making available to Qualcomm "Product: ███ – Armv9-A Architecture Compliance Kit" and "Part: A███████ – Armv9-A Architecture Compliance Suite," and quarterly releases thereto, via the Arm Connect document delivery portal).  Qualcomm's unexplained statement that Arm allegedly withheld unspecified support for the ETE Checker allegedly constitutes a breach of unspecified "terms of the Qualcomm ALA" fails to show any breach by Arm.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and

without waiver of its general and specific objections, Arm further responds as follows:

In depositions, Qualcomm has suggested that the Qualcomm ALA's definition of ████████ entitles Qualcomm to the unreleased v10 of the Arm ISA. That is incorrect. The Qualcomm ALA defines ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ ARM_00055357 at 360. Because the only version of the Arm ISA that was available at the time of the Qualcomm ALA's execution was v8, the ████████████████

████████████████████████████████ Indeed, the parties executed an Annex 1 for ████████

████████████ contemporaneously with the execution of the ALA to serve as a placeholder for the next available version of the Arm ISA. QCARM_0338573. In 2020, the parties executed an Annex 1 for v9 of the Arm ISA, which ████████████████████████████████

████████████ QCARM_0343954. This confirms that the parties understood that ██████████

████████████████████████████████████

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARM_01293447, ARMQC_02771129, ARMQC_02771151, QCVARM_0851876, ARMQC_02771128, ARMQC_02771124, ARMQC_02771125, ARMQC_02771126, ARMQC_02771127, QCVARM_0453724, QCVARM_0851511, QCARM_0562765, QCVARM_0448842, QCVARM_0532239, QCVARM_0534596, QCVARM_0534597, QCVARM_0852203, QCVARM_0851120, QCVARM_0851333, QCVARM_0531892, QCVARM_0847000, QCVARM_0448361, QCVARM_0529072, QCVARM_0528955, QCVARM_0529887, QCVARM_0447175, QCVARM_0449653, QCVARM_0449658, QCVARM_0447252, QCVARM_0846761, QCVARM_0537065, ARMQC_02603587, ARMQC_02604609, ARMQC_02604610, ARMQC_02604611,

ARMQC_02604612,      ARMQC_02604613,      ARMQC_02604614,      ARMQC_02604615,

ARMQC_02604616,      ARMQC_02604617,      ARMQC_02604618,      ARMQC_02604619,

ARMQC_026046020,      ARMQC_02604621,      ARMQC_02604622,      ARMQC_02604623,

ARMQC_02747093,      ARMQC_02747097,      ARMQC_02747103,      ARMQC_02747104,

ARMQC_02779171,      ARMQC_02779174,      ARMQC_02779176,      ARMQC_02779179,

ARMQC_02779181, QCARM_2430181, ARM_00100013, ARM_01282655, ARM_00090791,

ARM_00067349,   ARM_00102683,   ARM_00091389,   ARM_00068087,   ARM_00068131,

ARM_00068459,   ARM_00068504,   ARM_00091657,   ARM_00091659,   ARM_00091714,

ARM_00091768,   ARM_00091799,   ARM_00091834,   ARM_00091869,   ARM_00091903,

ARM_00075096,   ARM_00075098,   ARM_00075343,   ARM_00076113,   ARM_00103566,

ARM_00103635,      ARMQC_02755397,      ARMQC_02755446,      ARMQC_02755490,

ARMQC_02755534,      ARMQC_02755580,      ARMQC_02755624,      ARMQC_02755674,

ARMQC_02755903,      ARMQC_02755905,      ARMQC_02756148,      ARMQC_02756245,

ARMQC_02756246,      ARMQC_02756344,      ARMQC_02746634,      ARMQC_02756542,

ARMQC_02756544,      ARMQC_02746871,      ARMQC_02756860,      ARMQC_02760525,

ARMQC_02627275,      ARM_01241565,      QCVARM_0573677,      ARMQC_02779064,

ARMQC_02779076,      ARMQC_02779099,      ARMQC_02779107,      ARMQC_02779116,

ARMQC_02779122, ARMQC_02779133, ARM_00001777, ARM_00001195, ARM_00001198,

ARM_00001777, ARM_01020186, QCARM_3337526, QCARM_3337900, QCARM_3338108,

QCARM_3339493,      QCVARM_0685544,      QCVARM_0689117,      QCVARM_0699179,

QCARM_3216178,      QCARM_3066477,      QCVARM_0602227,      QCVARM_0618420,

QCVARM_0691521,      QCVARM_0000395,      QCVARM_0000269,      QCARM_3353040,

QCVARM_0602564,      QCVARM_0000142,      QCVARM_0618741,      QCVARM_0000180,

QCARM_3352796,      QCARM_3353006,      QCARM_3353126,      ARM_00025401,

QCVARM_0468612,      QCVARM_0000061,      QCVARM_1118518,      QCVARM_0602258,

QCVARM_0602295,      QCVARM_0468174,      QCVARM_0000114,      QCVARM_0000092,

QCVARM_0000085,      QCVARM_0000123,      QCVARM_0000135,      QCVARM_0602359,

QCVARM_0468148,      QCVARM_0000395,      QCVARM_0000269,      QCARM_3353040,

QCVARM_0602564,      QCVARM_0621692,      QCVARM_0535116,      QCVARM_0524624,

QCVARM_0854027,      QCARM_0566625,      QCVARM_0524624,      QCVARM_0613083,

QCVARM_0613160,      QCVARM_0540468,      QCVARM_0452598,      QCARM_0340017,

QCVARM_0452296,      QCVARM_0846871,      QCVARM_0857113,      QCVARM_0463558,

QCVARM_0608391,      QCVARM_1031097,      QCVARM_0448757,      QCARM_3430479,

QCVARM_0851449,      QCVARM_0621447,      QCVARM_0621448,      QCARM_3537716,

QCARM_3537383,      QCVARM_0467659,      QCVARM_0454629,      QCVARM_0451824,

QCVARM_0449970,  QCVARM_0467852, ARM_00003305.

Arm further incorporates by reference all documents produced in Qualcomm's 11th document production (QCVARM_011), and all documents cited in Qualcomm's responses to Arm Interrogatory Nos. 1, 2, 6, 9, and 13.

Given the breadth of allegations Qualcomm has made regarding Arm's alleged breach of the ALA, Arm further incorporates by reference the testimony of all witnesses that have been deposed in this case to date, including those specifically referenced herein, as well as the testimony of all witnesses deposed in *Arm v. Qualcomm*, Case No. 1:22-cv-01146 (D. Del.), and the exhibits used during those depositions.

Arm also incorporates by reference its responses to Interrogatory Nos. 1, 3, 4, and 5.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 11:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not breach the Qualcomm TLA. Your response should include, but is not limited to, the complete legal and factual bases for any contention that you did not breach ███████ of the TLA or the implied covenant of good faith and fair dealing, and should include an identification of all documents by Bates numbers you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 11 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks "the complete factual and legal bases," without limitation.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.  Arm further objects to this Interrogatory to the extent it calls for a legal conclusion. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

### Qualcomm's Allegations

Qualcomm alleges that Arm breached ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████ Second

Amended Complaint ¶¶ 215, 223.  Qualcomm alleges that Arm breached the implied covenant of

good faith and fair dealing of the Qualcomm TLA by "fail[ing] to provide licensing proposals for Arm Implementation Cores to Qualcomm in violation of provisions of the QC TLA."  Second Amended Complaint ¶ 184.  Arm understands that Qualcomm's only allegations that Arm breached the Qualcomm TLA are based on licensing offers for the ██████████████ cores.

Arm denies Qualcomm's allegations that Arm breached the Qualcomm TLA. Arm has not breached the Qualcomm TLA, and Qualcomm has failed to show otherwise.

### Arm Did Not Breach The Qualcomm TLA Because Arm's Licensing Offers Satisfied The ███████████ Term

Qualcomm alleges that Arm's licensing offer for ██████████████ "increased licensing fees and royalty rate percentages for each core by nearly five times from the prior terms licensed by Qualcomm" and thus ████████████████████████████ ████████████████████████████████████████ Second Amended Complaint ¶¶ 118, 119.  To the extent ██████████ applies, Arm's licensing offer satisfied the ██████████ term, which is calculated based ████████████████ ████████████████████████████████████████ ███████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

Arm's license offer to Qualcomm satisfied the ████████████ term, to the extent it applies, which is calculated ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

### Arm Did Not Breach The Qualcomm TLA Because It Made An Actual License Offer To Qualcomm

Qualcomm alleges that "Arm's proposal was a constructive failure to offer a license" because of its financial terms and that "[t]his constructive failure to offer a license to the requested cores violated the terms of the QC TLA."  Second Amended Complaint ¶¶ 25, 118.  Arm did not breach the Qualcomm TLA because, as Qualcomm admits, Arm made an ***actual*** license offer to Qualcomm.  Second Amended Complaint ¶ 117.  Further, as described above, the financial terms of that offer satisfied the "██████████████" term and were in good faith and thus not a "constructive failure to offer a license."

### Arm Did Not Breach The Qualcomm TLA Because Its ██████████████

Qualcomm alleges in its Second Amended Complaint that "Arm failed to fulfill its obligation under ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ including by excluding support and maintenance."  Second Amended Complaint ¶ 223.  Qualcomm does not identify any other alleged ████████████ ████████████████.  Arm did not breach the Qualcomm TLA because its offer included support and maintenance for ████████████████.

████████████████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

Arm's [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

### Arm Did Not Breach The Qualcomm TLA Because Arm Was Not Obligated To Offer Licenses To [REDACTED] To Qualcomm In 2024

Qualcomm alleges in its Second Amended Complaint that Qualcomm submitted requests to Arm for licenses to [REDACTED] in April 2024 and for a license to [REDACTED] in August 2024, and that Qualcomm sent Arm two notices of breach of the Qualcomm TLA in September 2024 because Arm had not yet responded with license offers by that time.  Second Amended Complaint ¶¶ 21-24.

Arm had no obligation to offer Qualcomm licenses to the [REDACTED] cores in 2024 because Qualcomm's [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] does not make reference to renewals.  Qualcomm first licensed the [REDACTED] cores in

, and thus made

its ████████ no later than 2019.  *See, e.g.*, QCARM_0029040 at 29043.  Under ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Because Qualcomm did not request a license to the ████████████████ cores within the

████████████████████████████, Arm was under no obligation with respect to

Qualcomm's 2024 request to license the ████████████████ cores.  Qualcomm has not

identified any other requests for licenses to those cores other than its communications in 2024.

### Arm Did Not Breach Any Obligation To Act In ████████" Or The Implied Covenant Of Good Faith An Fair Dealing

Qualcomm alleges in its Second Amended Complaint that "[t]he financial terms that Arm

provided for the three requested cores were commercially unreasonable, exorbitant, and not in good

faith" and that "Arm has breached the implied covenant of good faith and fair dealing" for the

Qualcomm TLA.  Second Amended Complaint ¶¶ 118, 187.

Arm did not breach either the express ████████" provisions of ████████ of the TLA or

any implied covenant of good faith and fair dealing for the reasons described above: Arm did not

breach the TLA, and made a good faith offer with financial terms that satisfied the ████████

████ team.

Further, any allegation that Arm breached the implied covenant of good faith and fair

dealing is duplicative of the express "████████" provisions and is not actionable.  *See, e.g.*, *USX*

*Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 439 (3d Cir. 1993) (holding that Plaintiff "cannot assert

a claim for breach of implied covenants that is based on exactly the same acts which are said to be

in breach of express covenants."); *Cision US, Inc. v. CapTech Ventures, Inc.*, No. CV 24-00063-

MN-SRF, 2025 WL 1094318, at *5 (D. Del. Apr. 11, 2025) (dismissing Plaintiff's "claim for breach

of the implied covenant of good faith and fair dealing … as impermissibly duplicative of its breach

of contract and warranty claims.").

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Jeff Fonseca and Karthik Shivashankar.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

**Arm Did Not Breach The Qualcomm TLA Because Arm's Licensing Offers Satisfied The "████████████" Term**

Arm's October 2024 license offer to Qualcomm satisfied the ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

Arm prepared a quote in response to Qualcomm's 2024 requests to renew its license for the ████████████ cores as required by the TLA.  QCVARM_0524362.  Arm, *e.g.*, Karthik Shivashankar and Akshay Bhatnagar, performed an analysis to ████████████ ████████████████████████████████████. *See, e.g.*, Bhatnagar Dep. (Rough) at 25–28; ARMQC_02784199; ARMQC_02784204.  Next, Arm ████████ ████████████████████████████████████████ ████████████ *See, e.g.*, Youssef Dep. at 64–68; ARMQC_02779314.  Arm then performed an analysis to determine appropriate licensing fees and royalty rates to propose to Qualcomm based on a variety of factors, ████████████████████████████████████ ████████████████████████████████████████

**A1443**

████████████████████████████. *See, e.g.*, Youssef Dep. at 68–71. Other Arm team members contributed to this analysis in addition to Mr. Shivashankar and Mr. Bhatnagar, including Ehab Youssef, and Jeff Fonseca, among others.

After considering the ███████████████████████████████ ████ an appropriate licensing fee and royalty rate schedule to propose to Qualcomm, which it formalized in a quote.  QCVARM_0617829.  In arriving at its proposal, Arm determined that while

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████ *See, e.g.*, Youssef Dep. at 68–71. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████. Youssef Dep. at 71 ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████ Thus, Arm prepared a quote using ████████████████████

████████████████████████████████████████████

████████████████████████████████████ *See* Youssef Dep. at 71; Shivashankar Dep. at 97–98; Fonseca Dep. (Rough) at 16, 19, 32–34, 37–39; ARMQC_02783731; ARMQC_02783848; ARMQC_02783619; ARMQC_02783967; ARMQC_02784120.

To the extent Qualcomm argues that Arm violated ████████████████████████

████████████████████████████████████████████

█████████████████████████████, that is not true.  Arm considered ████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████ .

**Arm Did Not Breach The Qualcomm TLA Because Its** ████████████
██████████████████████████████████████████████

Arm did not breach ███████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████

Qualcomm's allegation for an alleged breach of ████████ is apparently based on the statement in Arm's October 2024 offer that "Support and Maintenance is not included in this Qualcomm IP Extension Offer." QCVARM_0617829 at 831. However, there was never a change in the "███████████████████ and Qualcomm is mistaken. Qualcomm has a ████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████ ARMQC_02772246. That agreement has been extended several times by the parties, and is set to run through ████████████. ARMQC_02772246, § ████; *see also* ARMQC_02772246; ARM_01300657; ARM_01300665; ARM_01298732; ARM_01300650.

Arm never communicated to Qualcomm that it was no longer providing support and maintenance in any renewal license to ███████████████. Indeed, Arm confirmed to

Qualcomm, *i.e.*, Kurt Wolf, that "support is included in QCOM umbrella Support & Maintenance Agreement" and "this is the correct reading" of that language.  ARMQC_02774856; Wolf Dep. at 176. ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████.  *See, e.g.*, ARMQC_02772246; ARM_01300657; ARM_01300665; ARM_01298732; ARM_01300650.

Further, any argument by Qualcomm that Arm's discounting of its October 2024 license fees demonstrates that Arm was not including support and maintenance is also incorrect. ██████

███████████████████████████████████████████████████████

███████████████████████████████████████.  *See, e.g.*, Fonseca Dep. at 64–65; ARMQC_02783169 at 654 ████████████████████████████████████████████

███████████████████████████████████████████████████████

████████).  That Arm discounted its licensing fee offers for ████████████████ to account for Qualcomm's ██████ further confirms that support and maintenance was still included vis-à-vis the ██████.

### Arm Did Not Breach The Qualcomm TLA Because Arm Was Not Obligated To Offer Licenses To ████████████████████ To Qualcomm In 2024

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████  In addition to Qualcomm's failure to make a ████████████████████

████████  of requesting ████████████████████ licenses in 2019, Arm had no obligation to offer licenses to ████████████████ because it did not receive any renewal request from ██████

███████████████████████████████████████████████████████

█████████████████. ARM_00103918 at 918, 955.  Arm never received any such request from

an employee of ████.  Rather, Qualcomm's communications regarding ████████████

renewal requests to Arm in 2024 came from individuals employed by Qualcomm Inc. or Qualcomm

Technologies, Inc., *i.e.*, Kurt Wolf or Ann Chaplin.  *See, e.g.*, ARMQC_02771126;

QCVARM_0605055.

### Arm Did Not Breach Any Obligation To Act In ████████████ Or The Implied Covenant Of Good Faith And Fair Dealing

Qualcomm alleges in its Second Amended Complaint that "[t]he financial terms that Arm

provided for the three requested cores were commercially unreasonable, exorbitant, and not in good

faith" and that "Arm has breached the implied covenant of good faith and fair dealing" for the

Qualcomm TLA.  Second Amended Complaint ¶¶ 118, 187.  For the additional reasons discussed

above, Arm did not breach the express ██████████" provision of ██████ of the TLA or any

implied covenant of good faith and fair dealing.  Arm made a good faith offer in accordance with

████, and did not █████████████████████████████ in accordance with ████.

### Additional Factual and Legal Bases Regarding Qualcomm's TLA Allegations

Arm further states that Qualcomm has failed to prove that Arm's alleged conduct was the

but-for or proximate cause of any supposed "harm" that Qualcomm has allegedly suffered.

Qualcomm has failed to articulate any "harm" that it has allegedly suffered as a result of Arm's

supposed breach of either ████████ of the TLA.  As discussed above, Arm has not breached the

TLA or any express or inherent ████████ provisions therein.  Qualcomm has failed to make any

effort to quantify any "harm," such as alleged overpayments which should be refunded, ████████

███████████████████████████████████████████████████.  While

Qualcomm's witnesses have vaguely alleged that Qualcomm had to "shift resources" or hire

"engineering resources" to develop custom cores as a result of Arm's actions with regard to the

October 2024 TLA offers, Qualcomm has failed to produce or identify any documentary evidence

corroborating those claims. Qualcomm has also failed to prove any casual connection between Arm's October 2024 offer and any of this supposed "harm."

To the contrary, discovery has confirmed that Qualcomm has suffered no harm ***at all*** from Arm's October 2024 offer to renew Qualcomm's license to ██████████████████. Regarding ████, Qualcomm received an updated offer for ████ in 2025. ARMQC_02778342. As to ██████████████, Qualcomm never had a legitimate plan to use those cores after October 2026 and those products are not on its roadmap after that time. ████████████████████. Arm incorporates by reference its response to Interrogatory No. 12 and discussion of its unclean hands defense. Qualcomm only requested renewal offers for ████████████ as a pretext to prompt a response from Arm regarding three "peripheral IP," GIC-700, MMU-700, and ELA-600. QCVARM_0605055; QCVARM_0447175; Wolf Dep. at 75–77. Indeed, it never sought to continue negotiating over or sought revised licensing terms from Arm in 2024 or anytime after for ████████████.

Further, Qualcomm attempted to partially accept Arm's October 2024 offer as to the "peripheral IP" only. QCVARM_0524726. After Arm rejected Qualcomm's attempt but provided a revised offer for GIC-700, MMU-700, and ELA-600 in January 2025, Qualcomm accepted those revised terms. QCVARM_0524726; QCVARM_0523650. This lack of harm undermines any notion that Qualcomm should be entitled to ████████████████████████████████████ ████████████████████████████████.

Arm further notes that, to date, Qualcomm has failed to disclose any legal or factual bases for its theories as to how Arm has allegedly breached the TLA. Other than Qualcomm's vague allegations in the SAC—which are legally insufficient as set forth in Arm's Motion to Dismiss (D.I. 232, 233, 305)—Qualcomm has not answered any interrogatory or otherwise disclosed its theories for how Arm allegedly breached ████████████████ of the TLA. Arm served interrogatories to

Qualcomm seeking such information on June 11, 2025, to which Qualcomm could have responded but has not. Qualcomm similarly failed to provide any response to Arm's theories regarding the TLA, which were disclosed to Qualcomm on June 16, 2025. Accordingly, Arm reserves the right to supplement these responses after it has an opportunity to review any such theories Qualcomm discloses at a later date.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARMQC_02772366, QCARM_0222545, QCARM_0344783.

Arm further incorporates by reference its response to Interrogatory No. 6, including the documents and testimony cited therein.

Arm further incorporates by reference the testimony of the following witnesses: Karthik Shivashankar, Ehab Youssef, Akshay Bhatnagar, Jeff Fonseca, Kurt Wolf, Manju Varma, Larissa Cochran, Spencer Collins, Will Abbey, Cristiano Amon, Ann Chaplin, Lynn Couillard, Durga Malladi, Richard Meacham, Laura Sand, Christine Tran, Jonathan Weiser, and Gerard Williams, including the documents used at each of those depositions.

Arm further incorporates by reference any documents withheld on the basis of third-party confidentiality disputes, including due to an objection or motion for a Protective Order filed by any such third parties. Arm reserves the right to supplement this response to address such documents should any such disputes be resolved and result in the production of such documents to Qualcomm.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Matthew J. McIntee
Meredith Pohl
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
matt.mcintee@kirkland.com
meredith.pohl@kirkland.com

Jay Emerick
Adam Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
adam.janes@kirkland.com

Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP

 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

# Exhibit 16

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

QUALCOMM INCORPORATED,
   a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
   Delaware corporation

        Plaintiffs,

   v.

ARM HOLDINGS PLC, f/k/a, ARM LTD.
   a U.K. corporation

        Defendant.

C.A. No. 24-490-MN

**HIGHLY CONFIDENTIAL -
ATTORNEYS EYES ONLY**

**ARM'S FIRST SUPPLEMENTAL RESPONSE TO
QUALCOMM'S THIRD SET OF INTERROGATORIES (NO. 12)**

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively "Qualcomm")'s Third Set of Interrogatories (No. 12).

**GENERAL OBJECTIONS**

Arm incorporates by reference the Objections set forth in Arm's responses to Qualcomm's First Set of Interrogatories, served March 24, 2025, Qualcomm's Second Set of Interrogatories, served June 16, 2025, Arm's supplemental response to Qualcomm's Amended Interrogatory No. 3, served June 18, 2025, and Arm's Objections and Responses to Qualcomm's Third Set of Interrogatories No. 12, served July 9, 2025.

**HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY**

## SPECIFIC OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 12:**

Identify and describe in detail the complete factual and legal bases for any defense or counterclaim that You assert in response to the Complaint. Your response should include an identification of all persons knowledgeable about the facts referenced or relied upon in your response, and all documents (by Bates number) you rely upon in support of your response.

**RESPONSE TO INTERROGATORY NO. 12 (JULY 9, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it seeks information regarding "the complete factual and legal bases" for "any defense," "all persons," and "all documents," without limitation. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties. Arm further objects to this request to the extent it seeks expert testimony, which is not yet due and will be provided in accordance with the Scheduling Order. Arm further objects to this request as duplicative of other Interrogatories.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm's Answer sets forth detailed explanations of the factual and legal basis for Arm's defenses that it is asserting in this case, which include: Failure to State a Claim; Waiver/Estoppel/Laches/Acquiescence; Unclean Hands; Limits on Damages; Compulsory Counterclaims/Res Judicata/Collateral Estoppel; the *Noerr-Pennington* Doctrine and California

A1456

HIGHLY CONFIDENTIAL-ATTORNEYS EYES ONLY

Litigation Privilege; the Statute of Limitations; Freedom of Speech and Freedom to Petition; Claim and Issue Preclusion; Qualcomm's Failure to Mitigate; and Unenforceability of the ALA and TLA. D.I. 234 at pp. 39–46. Arm incorporates by reference its Answer to Qualcomm's Second Amended Complaint, D.I. 234. Arm asserts all of these defenses and its incorporation by reference of them here should not be construed as a waiver or forfeiture of any such defenses.

Arm also incorporates by reference its Motion to Dismiss, D.I. 19, 28, Arm's Motion To Dismiss Qualcomm's First Amended Complaint, D.I. 48, 72, and Arm's Motion to Dismiss Qualcomm's Second Amended Complaint, D.I. 232, 233, 305. Arm's Motions to Dismiss further expand on Arm's defenses and provides further factual and legal details support for them, including regarding Arm's *Noerr-Pennington*, California Litigation Privilege, and Anti-SLAPP (D.I. 233 at 4–8), Failure to State a Claim (D.I. 233 at 9–19), and Statute of Limitations (D.I. 233 at 20) defenses. Further, Arm incorporates by reference its responses to Qualcomm's Interrogatory Nos. 1–11, including the testimony and documents cited therein (and any supplements thereto), which contain additional factual and legal support for Arm's defenses.

Arm also provides below additional explanation regarding certain of its defenses. Arm notes, however, that Qualcomm to date has refused to provide meaningful or reciprocal discovery into its allegations. For example, Qualcomm has failed to remedy any of the deficiencies in Qualcomm's production set forth in Arm's letter briefing on discovery disputes. *See* D.I. 159. Qualcomm has also refused to supplement its interrogatory responses to meaningfully disclose its case theories. Qualcomm has also asserted improper privilege claims over information that is business advice or strategy, and not legal in nature. In another example, Qualcomm has refused to produce communications with the media or customers about its rights under the QC ALA despite alleging that Arm's statements about the same damaged Qualcomm's customer relationships,

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

documents regarding its publication of the same letter in its SEC filings as described above, and documents concerning its own "leaking," including for a story about confidential competition complaints QC placed with the same reporter at the same news outlet Arm allegedly communicated with. Qualcomm's improper refusal to provide or to block discovery on the core issues in the case has impaired Arm's ability to further develop its defenses. Accordingly, Arm provides this response and additional information based on the information currently available to it, and reserves the right to supplement this response should Qualcomm provide additional discovery, including any depositions taken in the future or after the close of the fact discovery period.

### Unclean Hands

As set forth in Arm's answer, D.I. 234 at 43–44, Qualcomm's claims are barred, in whole or in part, by the equitable doctrine of unclean hands. In addition to Qualcomm's actions regarding Nuvia and Qualcomm's publishing of Arm's October 2024 letter, discovery has revealed that Qualcomm's actions surrounding its requests to renew licenses for ███████████ in October 2024 constitute unclean hands. Qualcomm's requests to Arm for ███████████ ███ in 2024 were made in bad faith, were deceitful, and/or were fraudulent, including because they were made as a pretext to prompt a response from Arm regarding other products. For example,

███████████████████████████████████

███████████████████████████████████

███ *See, e.g.*, Wolf Dep. at 75–77. ███████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

*See* QCVARM_0605055. ███████████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

███████████████████████████████████████████████████

██████████████████████ *Id.* █████████████████████████

███████████████████████████████████████████████████

QCVARM_0447175.  And although Arm later agreed to terms for renewal licenses on certain peripheral IP with Qualcomm, Qualcomm never attempted to negotiate better terms for or discuss the ████████████ with Arm, confirming that it had no legitimate plan to use those cores after October 2026, through which it is licensed under its current agreement.

These actions constitute bad faith, were deceitful, and/or were fraudulent as evidenced by other documents produced by Qualcomm, and are directly related to Arm's alleged breach of the TLA as asserted by Qualcomm in the SAC.  *See, e.g.*, D.I. 137, Counts VII, VIII.  Indeed, █████████

███████████████████████████████████████████████████

████████████████████████████████ *See* QCVARM_0447175.  ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████ *Id.*  With █████████████████████, Qualcomm █████████████████

those products after October 2026 as it did not have those products on its CPU roadmap for the future. ████████████████████████████████████████

████████████████████████████████████████████ Wolf

Dep. at 180–181.

Further, given the ongoing disputes between Qualcomm and Arm, Qualcomm not only used its 2024 licensing demands ███████████████████████, but also to manufacture additional meritless claims to assert against Arm in litigation, and as a basis to withhold royalty payments to

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

Arm under ███ of the TLA.  Thus, any remedies Qualcomm seeks in connection with Arm's alleged violation of the TLA are barred by the doctrine of unclean hands.

### Limits on Damages

As set forth in Arm's Answer, D.I. 234 at 44, the Qualcomm ALA and TLA limit the damages available for any alleged breach.  As an initial matter, Qualcomm has failed to show what its purported damages are for any allegation it has made in the complaint.  Nor has Qualcomm identified evidence purporting to quantify the supposed "harm" it has suffered as a result of Arm's alleged actions.  Arm disputes that Qualcomm has suffered any "harm" or damages, and reserves the right to supplement this response in the event Qualcomm later attempts to show any purported "harm" or damages.

Setting aside this failure of proof, Qualcomm's damages, if any, are limited by the ALA and TLA.  For example, ███████████████████████████████████████



ARM_000558357 at 381.  ████████████████████████████████  *See* ARM_00103918 at 937.  To the extent Qualcomm intends to seek damages for any of these types of damages, it is precluded from doing so.  For example, any interruption of Qualcomm's business due to Arm's alleged actions, such as "shifting resources," "delays," or changes made in its

**HIGHLY CONFIDENTIAL–ATTORNEYS EYES ONLY**

"roadmapping and SoC planning process," is something Qualcomm agreed that it is not permitted

to recover.  *See, e.g.*, D.I. 137 ¶¶ 180, 188, 195–196, 203, 211, 220, 226.  Likewise, Qualcomm

cannot recover for any supposed "harm" identified by Mr. Amon, such as, but not limited to, █



█ "  *See* C. Amon Dep Transcript (Rough).

　　　In another example, the TLA provides in █████████████████

*See* ARM_00103918 at 931. ████████████████████

████████████████████

████████████████ Thus, Qualcomm is contractually barred from seeking any

other damages or remedies for alleged breaches of █████ including consequential or indirect

damages, and is limited to the specific contractual remedies set forth in the TLA in ████████

████. Moreover, even if Qualcomm could overcome these contractual limitations on liability, it

cannot establish that Arm's alleged conduct was the but-for or proximate cause of any harms that

Qualcomm allegedly suffered.

## Unenforceability of Qualcomm ALA and TLA Provisions

　　　As set forth in Arm's Answer, D.I. 234 at 46, ████████ of the QC ALA and the QC TLA

provide that a breach by Arm of certain provisions of the ALA or TLA will result in ████████

████████████████████

**HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY**

██████████████████████████████████████████████

████████████████████████    ARM_00103918 at 956; ARM_00055357 at 373.    These

provisions are unenforceable and unreasonable contractual penalty clauses.

For example, Qualcomm has not suffered any harm as a result of Arm's alleged breach of

████████ of the QC ALA, nor has Qualcomm identified any such harm.    Although Arm has served

interrogatories seeking Qualcomm's complete factual and legal basis for contending that Arm's

conduct has harmed Qualcomm (Arm Interrogatory No. 1) and seeking a specific description of

Qualcomm's efforts to verify or attempt to verify compliance with the Arm architecture (Arm

Interrogatory No. 13), Qualcomm has failed to identify any particular harm that Qualcomm claims

to have suffered as a result of Arm's alleged breach of ████████ of the QC ALA other than to repeat

its allegation from the complaint that Qualcomm was "forced to (1) expend extra time and

resources, including Qualcomm engineers, to run ACK tests to verify compliance with the Arm

ISA, and (2) use their own engineers to address issues that would have been addressed by Arm's

patches." *See* Qualcomm's Resp. to Arm Interrog. No. 1.

To the contrary, Arm's alleged withholding of OOB and ACK patches (which Arm disputes,

and which does not constitute a breach of ████████ of the QC ALA, including for the reasons

explained in Arm's response to Qualcomm Interrogatory Nos. 1 and 5) did not prevent Qualcomm

from completing the verification process for Nuvia-based custom CPU designs, nor did it prevent

Qualcomm from releasing products that incorporate those CPU designs.    Moreover, Qualcomm

released its products incorporating Nuvia-based custom CPU designs on time or even ahead of

schedule.    For example, Nuvia's President and Founder and Qualcomm's current Senior VP of

Engineering, Gerard Williams, who is the head of Qualcomm's CPU design and engineering team

and manages the Qualcomm team responsible for verifying that Qualcomm's custom CPU designs

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

are compliant with Arm's architecture, testified that █████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████. *See, e.g.,*

G. Williams Dep. Tr. (Rough) at 3, 8–9, 54–58.

Likewise, Qualcomm's TLA allegations demonstrate that ████████ of the TLA is an

unenforceable penalty clause. ██████████████████████████████

██████████████████████ However, there is no dispute that Arm made offers for a

license to the ████████████ cores in October 2024 and therefore satisfied its obligation

under █████████████████████████████████████████████████

████████████ *See, e.g.,* QCVARM_0617829.  Arm's witnesses have also repeatedly

confirmed at deposition that Arm ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ Arm hereby incorporates by reference the testimony

of Ehab Youssef and Karthik Shivashankar, and the forthcoming testimony of Jeff Fonseca and

Akshay Bhatnagar.  Further, as to ████, Arm also confirmed that it did not "██████████████

████████████████████████████████████████████████████████

██████████████" when it made licensing renewal offers to Qualcomm in October 2024 for

████████████████, as Arm and Qualcomm ██████████████████████

████████████████.  ARMQC_02772246.

Even if Qualcomm could overcome the contractual limitations on liability discussed above

in the TLA and ALA, it cannot establish that Arm's alleged conduct was the but-for or proximate

**HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY**

cause of any harms that Qualcomm allegedly suffered.  There is no relationship (let alone a

reasonable relationship) between ███████████████ and the *de minimis* damages, if

any, that Qualcomm alleges to have suffered.  If Qualcomm were to ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████.  *See*, *e.g.*, ARMQC_02771200

████████████████████████████████████████████████████████

███████████████████████████.  Such a

windfall to Qualcomm would be unreasonably large and completely out of proportion to any alleged

harm to Qualcomm.  Likewise, to date, Qualcomm has failed to show its supposed damages or harm

due to Arm's alleged actions.  To the extent Qualcomm attempts to do so in the future, that

quantification will only further confirm that ████████ of the QC ALA and the QC TLA are

unenforceable.

Further, ████████████████ was not the result of a reasonable endeavor by

the parties to estimate a fair compensation to Qualcomm in the event of Arm's alleged breach of

████████  During the parties' negotiation of the QC ALA and the QC TLA, the parties described

████████████████████████████████████████████████████████

████████    *See*,  *e.g.*,  QCARM_3419636;  QCARM_3419788;  QCARM_3421025;

QCARM_3421029;    QCARM_3961297;    QCARM_3961355;    QCARM_3961358;

QCARM_7428754; QCARM_7431828; QCARM_7431832.

Arm further incorporates by reference the testimony of all witnesses that have been deposed

in the case to date, including those specifically referenced herein.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its

response to this Interrogatory.

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 (JULY 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived:  ARM_00095578,  ARM_00095579,  ARM_00085679,  ARM_00085680, ARM_00111449,  ARM_01228027,  ARM_01228031,  ARM_01228035,  ARM_01228039, ARM_01228043,  ARM_01228044,  ARM_01228048,  ARM_01228049,  ARM_01228053, ARM_01228054,  ARM_01228058,  ARM_01228059,  ARM_01228063,  ARM_01228064, ARM_01228073,  ARM_01228074,  ARM_01228075,  ARM_01239440,  ARM_01239441, ARM_01239442,  ARM_01239444,  ARM_01239445,  ARM_01239447,  ARM_01239448, ARM_01239449,  ARM_01239451,  ARM_01239452,  ARM_01239453,  ARM_01239458, ARM_01239459,  ARM_01239464,  ARM_01239465,  ARM_01239470,  ARM_01239471, ARM_01239472,  ARM_01239473,  ARM_01239474,  ARM_01239475,  ARM_01239476, ARM_01239477,  ARM_01239478,  ARM_01239479,  ARM_01239483,  ARM_01239485, ARM_01239486,  ARM_01239488,  ARM_01239503,  ARM_01239504,  ARM_01239506, ARM_01423231,  ARM_01423342,  ARM_01423234,  ARM_01423345,  ARM_01423238, ARM_01423349,  ARM_01423239,  ARM_01423350,  ARM_01333009,  ARMQC_02601210, ARMQC_02603580, ARMQC_02603581, ARMQC_02603582.

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP


 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

(213) 892-5348
nfung@mofo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

# Arm Exhibit 17
# (REDACTED IN ITS ENTIRETY)

# Arm Exhibit 18
# (REDACTED IN ITS ENTIRETY)

# Exhibit 19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware
corporation, QUALCOMM
TECHNOLOGIES, INC., a Delaware
corporation,

        Plaintiffs,

    v.

ARM HOLDINGS PLC, f/k/a ARM LTD.,
a U.K. corporation,

        Defendant.

C.A. No. 24-490-MN

**HIGHLY CONFIDENTIAL -
ATTORNEY'S EYES ONLY**

**FILED UNDER SEAL**

## DEFENDANT ARM HOLDINGS PLC'S
## RESPONSE TO QUALCOMM'S SEPTEMBER 15, 2025 LETTER
## TO SPECIAL MASTER RYCHLICKI

Dated: September 19, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

Dear Special Master Rychlicki:

We write in response to Qualcomm's September 15, 2025, letter regarding Arm's production of Technology License Agreements ("TLA") between Arm and third parties for the ███████████████ cores, and to advise Your Honor of events that have occurred since the August 14 and 22 hearings relating to Arm's pending motion to compel the deposition of Pradeep Kanapathipillai.

## 1. Qualcomm's Motions To Compel Documents Arm Has Already Produced Should Be Denied.

Qualcomm's letter feigns surprise at Arm's recent production of additional TLAs, claiming it is "in the dark" as to why Arm is now producing them. Yet Qualcomm omits that it knows precisely why Arm was producing these additional TLAs: Arm made this production *at Qualcomm's request* and to resolve an outstanding discovery dispute before Your Honor. Arm's production of these additional TLAs—which will soon be complete—moots Qualcomm's request for these documents, and its motions to compel should thus be denied.[1]

Qualcomm knows precisely why Arm is producing these TLAs. On a July 30 meet and confer, Qualcomm alleged that Arm's production during fact discovery of TLAs for ██████ ███████████████ was incomplete, stating that unspecified "public reporting" suggested there were certain other TLAs that had not yet been produced. Ex. 1 (7/30/25 M&C Tr.) at 49:22-50:9. Arm immediately responded on that meet-and-confer that "[w]e're happy to investigate those further and see what the story is" and "whether we left them out, whether there are any others." *Id.* at 50:17-20. From the very beginning, Arm was open with Qualcomm that it would investigate Qualcomm's request.

Notwithstanding Arm's immediate agreement to investigate, two days later Qualcomm moved to compel on this issue in its August 1 letter brief to Your Honor. Ex. 2 (8/1/2025 Ltr.) at 1. Arm responded again to Qualcomm—and the Special Master—that it was investigating this issue:

> Qualcomm's request for additional licenses to those cores should be denied as premature. Qualcomm raised this issue for the first time on July 30, two days before its opening brief, and *Arm agreed to investigate the existence and production of additional licenses that may cover* ███████████████ (subject to any third-party intervention). The parties are therefore not at an impasse, and Qualcomm never submitted it to the Court as required by the Court's and Special Master's orders. (Ex. 4, Ex. 5.)

Ex. 3 (8/7/2025 Arm's Responsive Ltr.) at 1. Qualcomm argued in its August 1 letter and suggests again in its September 15 letter that Arm made incorrect representations to Qualcomm and the Special Master regarding the status of its TLA production, but Arm has been fully open that while it believed its production of TLAs was complete, it would investigate whether its production omitted other TLAs for ███████████████ .

---

[1] *See* QC Aug. 1, 2025 Letter, Part I ("TLAs"); QC Aug. 11, 2025 Letter, Part IV (Interrogatory Nos. 6, 11).

Just as Arm said it would, it promptly investigated Qualcomm's allegations and confirmed that certain third-party ████████████ agreements were inadvertently omitted from Arm's production. Arm then promptly provided notice to each additional third party that it would produce their ████████████████ agreements. As the notice periods expired, Arm produced the additional ██████████ agreements to Qualcomm on a rolling basis, including on September 4, 11, 15, 16, and 19. Arm's production of the TLAs that were omitted from its previous production is nearly complete: Arm expects to produce agreements from ██████ imminently, and Arm understands that Qualcomm is negotiating with ██████ regarding production of its agreements. That resolves the issue other than for two of the additional third parties, ████████████████, who have objected to disclosure of their agreements and filed protective order motions with the Court and Your Honor. D.I. 386, 390.

Arm's additional productions moot Qualcomm's motions to compel, which should be denied. As Arm stated in its August 7 letter brief, Arm agreed to produce agreements with third parties for ████████████ in effect at the time. Ex. 3 at 1. Arm also already agreed to supplement its response to Interrogatory No. 6, and will promptly do so once it completes production. QC Ex. 3 at 5, 7. Qualcomm appears to also be seeking additional deposition time with an Arm 30(b)(6) witness "prepared to testify on relevant terms of third-party agreements." As Arm explained at the August 22 hearing, Qualcomm already had the opportunity to depose five witnesses about Arm's agreements, and chose to spend only 2 hours with Arm's 30(b)(6) witness, Ehab Youssef, on the October 2024 offer. Nonetheless, Arm agrees to make Mr. Youssef available for an additional 2 hours of deposition time on Qualcomm's Topics 20 and 29 (subject to Arm's previously-served objections) after Arm completes its production and the third-party TLA licensee protective order motions are resolved. Thus, Qualcomm already has the relief it seeks, its motions to compel as they relate to ████████████ discovery are moot, and its September 15 letter only highlights that its motion should be denied.

Once again—as Qualcomm has now repeatedly done—Qualcomm served Your Honor with its letter before even attempting to resolve this issue with Arm. The parties were scheduled to meet and confer on this issue at 4 PM on September 15, and Qualcomm served its letter at 1:41 PM. Had Qualcomm waited another two hours for the parties to meet and confer, it would not have needed to raise this dispute with Your Honor. At the meet-and-confer, Arm answered Qualcomm's questions regarding the additional TLA production, as it sought to do in correspondence leading up to that call. QC Ex. 3.

Qualcomm's September 15 letter further seeks information regarding "*why* Arm did not produce these agreements within the fact discovery period." QC Ltr. at 2 (emphasis added). This request is also moot; Arm has already provided this information to Qualcomm. As explained above, the inadvertent omission in Arm's production was discovered because of a request from Qualcomm in a July 30 meet-and-confer, which Arm has repeatedly told Qualcomm. QC Ex. 3 at 7; Ex. 4 (9/15/25 Tr.) at 39-47. To the extent Qualcomm is seeking information about Arm's in-house counsel's and outside counsel's document collection, review, and production, and communications regarding the same, that information is privileged.

Qualcomm states that it "may seek additional relief" on this issue, and in a September 14 email suggested that Arm should be precluded "from contending that it complied with ██████ of the TLA." QC Ltr. Br. at 2 n.3; QC Ex. 3 at 2. Any such relief should be denied, and there is no basis for a discovery sanction, let alone one that awards Qualcomm with what

2

is effectively summary judgment of breach on the TLA, for which Qualcomm seeks a ██████ ███████████████████████████.

Finally, while Qualcomm's letter broadly asks that "Your Honor grant its motions to compel," Qualcomm omits that subsumed within that request are other issues completely unrelated to the ████████████████████ agreements or any other issue related to the SAC. More specifically, Qualcomm also seeks discovery on numerous other TLA products, including "peripheral TLA IP," ██████████████████████████, among others, that are entirely absent from the SAC.  For the reasons set forth in Arm's August 18 letter and supplemental brief, Qualcomm is not entitled to that discovery.  Ex. 8 (8/18/2025 Arm's Responsive Ltr.) at 1–2.

Qualcomm's motions to compel should be denied.

## 2. Qualcomm's Continued Refusal To Offer Mr. Kanapathipillai For Deposition While Offering New Witnesses Is Improper.

Qualcomm continues to improperly refuse to offer a deposition date for Pradeep Kanapathipillai.  Arm properly noticed him.  He is not an *Apex* witness.  And Qualcomm's own Senior Director of Engineering, Gerard Williams, testified that he has relevant personal knowledge because he is "directly responsible" for Qualcomm's at-issue verification efforts and thus is knowledgeable about Arm's alleged withholding of verification support (OOBs and ACK patches) and Qualcomm's alleged resulting harm.  Ex. 9 at 3.  Qualcomm's recent conduct confirms as much.

On August 29, Qualcomm offered deposition dates for two *different* noticed witnesses, Tarang Agarwal and Sureshkumar AM.  Ex. 5 (8/29/2025 C. Nyarady Email).  They are both based in India and would fly to California for their depositions.  Arm was surprised by Qualcomm's offer of these dates not only because Qualcomm still has not offered a deposition date for Mr. Kanapathipillai, who lives in California, but also because Qualcomm had represented to Arm a month earlier that "there's not going to be a deposition" of Mr. Agarwal and Mr. AM because their visas "can take, you know, like 18 months."  Ex. 6 (7/28/2025 M&C Tr.) at 76:3-77:20.  Arm responded to Qualcomm, stating that "[a]s you know, we currently have a dispute pending with the Special Master in which we've sought the deposition of Pradeep Kanapathipillai.  If our motion is granted, we intend to use our remaining deposition time with Mr. Kanapathipillai and would not depose Tarang Agarwal or Sureshkumar AM.  If our motion is denied, we can revisit the depositions of Tarang Agarwal or Sureshkumar AM at that time."  Ex. 7 (9/10/2025 J. Emerick Email).  Qualcomm refused to do so, and refused to provide alternative dates for Tarang Agarwal and Sureshkumar AM.[2]  Ex. 4 at 56:3–59:16.

Qualcomm's offering of deposition dates for these two witnesses more than one month after the close of fact discovery illustrates that its objections to Arm's purported "delay" with respect to Mr. Kanapathipillai are meritless.  Qualcomm's offer also illustrates the lengths it is willing to go to avoid Mr. Kanapathipillai's deposition: the parties have a deposition-hours limit in this case, and Qualcomm is willing to fly *two* witnesses from *India* to California to expend Arm's remaining deposition time to avoid one deposition of Mr. Kanapathipillai, who

---

[2]  Arm reserves all rights with respect to Tarang Agarwal and Sureshkumar AM's deposition in the event the Special Master denies Arm's motion to compel Mr. Kanapathipillai's deposition.

lives in California.  There is no prejudice to Qualcomm in making Mr. Kanapathipillai, a California-based employee, available for deposition.

Respectfully,

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)

Word Count: 1673

Enclosures: Exhibits 1–9

4

**In the Matter Of:**

*QUALCOMM INCORPORATED vs*

*ARM HOLDINGS PLC.*

---

*SPECIAL DISCOVERY MASTER HEARING*

*October 01, 2025*

---



## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 12, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                          *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                      *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
*Attorneys for Defendant*

Sydney D. Gaskins, Esquire                                       *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017
*Attorneys for Defendant*

Alexandra Corrinne Hottenrott, Esquire                           *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                                        *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                   *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                      *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                               *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*


                                        */s/ Jennifer Ying*
                                        _____
                                        Jennifer Ying (#5550)