Originally Filed: February 18, 2026
Redacted Version Filed: February 27, 2026

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation; and
QUALCOMM TECHNOLOGIES, INC.,
  a Delaware corporation,

        Plaintiffs,

      v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
  a U.K. corporation,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 24-490 (MN)

REDACTED - PUBLIC VERSION

## APPENDIX TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
## MASTER'S ORDERS MOTIONS FOR PROTECTIVE ORDERS FILED BY THIRD
## PARTIES BROADCOM INC. (D.I. 609), AMLOGIC HOLDINGS LTD. (D.I. 614),
## ANALOG DEVICES INC. (D.I. 617), MEDIATEK INC. (D.I. 625) &
## ANNAPURNA LABS (U.S.) INC. (D.I. 628)

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064

*Of Counsel for Plaintiffs as to Motions
Brought By All Movants Except for
Annapurna Labs (U.S.), Inc.*

February 18, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com
*Attorneys for Plaintiffs as to Motions Brought By All
Movants Except for Annapurna Labs (U.S.), Inc.*

CONNOLLY GALLAGHER LLP
Alan R. Silverstein (#5066)
Sara A. Barry (#6703)
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 252-3645
asilverstein@connollygallagher.com
sbarry@connollygallagher.com
*Attorneys for Plaintiffs as to Motion Brought By
Annapurna Labs (U.S.), Inc.*

# TABLE OF CONTENTS

| Docket Entries for Motions Referred to the Special Master | |
| --- | --- |
| **Document** | **Page Range/D.I. #** |
| Nonparty Broadcom Inc's Motion for a Protective Order (May 23, 2025) | D.I. 127 |
| Broadcom Exhibit 1 – Letter from Phillip Price to Mark Brazeal (Apr. 23, 2025) | D.I. 127-1 |
| Broadcom Exhibit 2 – Email from Nicholas Fung to Jenness Parker (May 5, 2025) | D.I. 127-1 |
| Declaration of Aric Kinney in Support of Nonparty Broadcom Inc.'s Motion for Protective Order (May 23, 2025) | D.I. 127-2 |
| [Proposed] Order Granting Nonparty Broadcom Inc.'s Motion for a Protective Order Under Federal Rule of Civil Procedure 26(c) (May 23, 2025) | D.I. 127-3 |
| Qualcomm's Answering Brief in Opposition to Non-Party Broadcom's Motion for a Protective Order (D.I. 127) (June 6, 2025) | D.I. 180 |
| Qualcomm Exhibit 1 - *Arm Ltd. v. Qualcomm Inc., Qualcomm Techs., Inc. and Nuvia, Inc.*, C.A. No. 22-1146-MN, Oral Argument Transcript Excerpt (Mar. 7, 2024) | D.I. 180-1 |
| Nonparty Broadcom Inc.'s Reply in Further Support of its Motion for a Protective Order (June 13, 2025) | D.I. 213 |
| Nonparty MediaTek Inc's Motion for a Protective Order (July 11, 2025) | D.I. 323 |
| Declaration of Lucia Sun in Support of Nonparty MediaTek Inc.'s Motion for Protective Order (July 11, 2025) | D.I. 323-1 |
| [Proposed] Order Granting Nonparty MediaTek Inc.'s Motion for a Protective Order (July 11, 2025) | D.I. 323-2 |
| Arm's Opposition to Nonparty MediaTek Inc.'s Motion for a Protective Order (July 25, 2025) | D.I. 343 |
| [Proposed] Order Denying Nonparty MediaTek Inc.'s Motion for a Protective Order (July 25, 2025) | D.I. 343-1 |
| Arm Exhibit 1 - *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holding PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Deposition of Ehab Youssef Transcript Excerpt (June 26, 2025) | D.I. 343-2 |
| Qualcomm's Opposition to Non-Party MediaTek's Motion for a Protective Order (July 25, 2025) | D.I. 346 |
| Declaration of Catherine Nyarady in Support of Qualcomm's Answering Brief in Opposition to Non-Party MediaTek's Motion for a Protective Order (July 25, 2025) | D.I. 347 |
| Qualcomm Exhibit 1 - *Arm Ltd. v. Qualcomm Inc., Qualcomm Techs., Inc. and Nuvia, Inc.*, C.A. No. 22-1146-MN, Telephonic Oral Argument Transcript Excerpt (Jan. 12, 2024) | D.I. 347-1 |
| Qualcomm Exhibit 2 - *Arm Ltd. v. Qualcomm Inc., Qualcomm Techs., Inc. and Nuvia, Inc.*, C.A. No. 22-1146-MN, Oral Argument Transcript Excerpt (Mar. 7, 2024) | D.I. 347-1 |

| | |
|---|---|
| Qualcomm Exhibit 3 - *Arm Ltd. v. Qualcomm Inc., Qualcomm Techs., Inc. and Nuvia, Inc.*, C.A. No. 22-1146-MN, Pretrial Conference Transcript Excerpt (Nov. 20, 2024) | D.I. 347-1 |
| Qualcomm Exhibit 4 - *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holding PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Deposition of Karthik Shivashankar Transcript Excerpt (June 20, 2025) | D.I. 347-1 |
| Qualcomm Exhibit 5 - *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holding PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Deposition of Akshay Bhatnagar Transcript Excerpt (July 10, 2025) | D.I. 347-1 |
| Qualcomm Exhibit 6 - *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holding PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Deposition of Jeffrey Fonseca Transcript Excerpt (July 9, 2025) | D.I. 347-1 |
| Nonparty MediaTek Inc.'s Consolidated Reply in Further Support of its Motion for a Protective Order (Aug. 8, 2025) | D.I. 352 |
| Non-Party Amlogic Holdings Ltd.'s Motion for a Protective Order to Redact Competitively Sensitive Commercial Information (July 11, 2025) | D.I. 329 |
| [Proposed] Order Granting Non-Party Amlogic Holdings Ltd.'s Motion for a Protective Order Under Federal Rule of Civil Procedure 26(c) (July 11, 2025) | D.I. 329-1 |
| Amlogic Exhibit 1 - Declaration of Richard Swope in Support of Non-Party Amlogic Holdings Ltd. Motion for a Protective Order to Redact Competitively Sensitive Commercial Information (July 11, 2025) | D.I. 329-2 |
| Amlogic Exhibit 2 – Letter from Phillip Price to Amlogic Legal Dept. (June 24, 2025) | D.I. 329-3 |
| Amlogic Exhibit 3 – Email from Anne Gaza to Brett McCartney, Jack Blumenfeld, Travis Murray, Robert Vrana, and Samantha Wilson (July 11, 2025) | D.I. 329-4 |
| Amlogic Exhibit 4 – Proposed Redactions | D.I. 329-5 |
| Qualcomm's Opposition to Non-Party Amlogic's Motion for a Protective Order (July 25, 2025) | D.I. 344 |
| Declaration of Catherine Nyarady in Support of Qualcomm's Answering Brief in Opposition to Non-Party Amlogic's Motion for a Protective Order (July 25, 2025) | D.I. 345 |
| Qualcomm Exhibit 1 - *Arm Ltd. v. Qualcomm Inc., Qualcomm Techs., Inc. and Nuvia, Inc.*, C.A. No. 22-1146-MN, Telephonic Oral Argument Transcript Excerpt (Jan. 12, 2024) | D.I. 345-1 |
| Qualcomm Exhibit 2 - *Arm Ltd. v. Qualcomm Inc., Qualcomm Techs., Inc. and Nuvia, Inc.*, C.A. No. 22-1146-MN, Oral Argument Transcript Excerpt (Mar. 7, 2024) | D.I. 345-1 |
| Qualcomm Exhibit 3 - *Arm Ltd. v. Qualcomm Inc., Qualcomm Techs., Inc. and Nuvia, Inc.*, C.A. No. 22-1146-MN, Pretrial Conference Transcript Excerpt (Nov. 20, 2024) | D.I. 345-1 |
| Non-Party Amlogic Holdings Ltd.'s Reply in Support of Motion for a Protective Order to Redact Competitively Sensitive Commercial Information (Aug. 8, 2025) | D.I. 351 |

| Appendix Entries for Briefing & Proceedings Before the Special Master | |
|---|---|
| Nonparty Annapurna Labs (U.S.) Inc.'s Motion for a Protective Order (Sep. 11, 2025) | A001 – A002 |
| Nonparty Annapurna Labs (U.S.) Inc.'s Motion for a Protective Order [Proposed] Order (Sep. 11, 2025) | A003 – A003 |
| Letter from Andrew Mayo (Counsel for Annapurna) to Special Master Helena Rychlicki (Sep. 11, 2025) | A004 – A013 |
| Declaration of Nafea Bshara in Support of Nonparty Annapurna Labs (U.S.) Inc.'s Motion for Protective Order (Sep. 11, 2025) | A010 – A013 |
| Annapurna Exhibit A – CNBC, "Qualcomm to launch data center processors that link to Nvidia chips" (May 19, 2025) | A014 – A020 |
| Annapurna Exhibit B – DataCenter Knowledge, "Data Center Chips in 2024: Top Trends and Releases" (Apr. 11, 2024) | A021 – A038 |
| Annapurna Exhibit C – Amazon, "Amazon's new cloud computing chip, AWS Graviton4, is now generally available. Take a look back at its evolution." (July 9, 2024) | A039 – A044 |
| Letter from Sara Barry (Counsel for Qualcomm) to Special Master Helena Rychlicki (Sep. 18, 2025) | A045 – A049 |
| Declaration of Sara A. Barry in Support of Plaintiffs' Opposition to Non-Party Annapurna Labs (U.S.) Inc.'s Motion for a Protective Order (Sep. 25, 2025) | A050 – A051 |
| Qualcomm Exhibit A - *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holding PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's First Set of Requests for Production (Nos. 1-52) (July 17, 2025) | A052 – A062 |
| Qualcomm Exhibit B - *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holding PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's Second Set of Requests for Production (Nos. 53-120) (Sep. 18, 2025) | A063 – A072 |
| Qualcomm Exhibit C - *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holding PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Arm Holdings Plc's First Supplemental Objections and Responses to Qualcomm's Third Set of Requests for Production (Nos. 121-156) (July 17, 2025) | A073 – A080 |
| Qualcomm Exhibit D – Email from Nicholas Fung to Sara Barry, ARM-Qualcomm@kirkland.com, MoFo_Arm_QCOM, and YCST_Arm_Qualcomm@ycst.com (Sep. 9, 2025) | A081 – A083 |
| Qualcomm Exhibit E – *Arm Ltd. v. Qualcomm Inc., Qualcomm Techs., Inc. and Nuvia, Inc.,* C.A. No. 22-1146-MN, Qualcomm's First Set of Requests for Production (Nos. 1–36) (Dec. 20, 2022) | A084 – A088 |
| Qualcomm Exhibit F – *Arm Ltd. v. Qualcomm Inc., Qualcomm Techs., Inc. and Nuvia, Inc.,* C.A. No. 22-1146-MN, Qualcomm's Fifth Set of Requests for Production (Nos. 71 - 124) (Oct. 18, 2023) | A089 – A095 |
| Qualcomm Exhibit G – *Arm Ltd. v. Qualcomm Inc., Qualcomm Techs., Inc. and Nuvia, Inc.,* C.A. No. 22-1146-MN, Oral Argument Transcript Excerpt (Mar. 7, 2024) | A096 – A110 |

| | |
|---|---|
| Nonparty Analog Devices, Inc.'s Motion for a Protective Order (Sep. 11, 2025) | A111 – A111 |
| [Proposed] Order Granting Nonparty Analog Devices, Inc.'s Motion for a Protective Order (Sep. 11, 2025) | A112 – A112 |
| Letter from Matthew Goeller (Counsel for Analog Devices) to Special Master Helena Rychlicki (Sep. 16, 2025) | A113 – A118 |
| Analog Exhibit 1 – Declaration of Dimitri Vasiliadis in Support of Nonparty Analog Devices, Inc.'s Motion for Protective Order (Sep. 16, 2025) | A119 – A123 |
| Analog Exhibit 2 – Letter from Phillip Price to Janene Asgeirsson (Aug. 21, 2025) | A124 – A125 |
| Qualcomm's Letter Brief in Opposition to Analog Devices, Inc.'s Motion for a Protective Order (Sep. 23, 2025) | A126 – A131 |
| Qualcomm Exhibit 1 - *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holding PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Qualcomm's First Set of Requests for Production (Nos. 1–52) (Jan. 21, 2025) | A132 – A137 |
| Qualcomm Exhibit 2 - *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holding PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Qualcomm's Second Set of Requests for Production (Nos. 53–120) (Feb. 21, 2025) | A138 – A142 |
| Qualcomm Exhibit 3 - *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holding PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Qualcomm's Third Set of Requests for Production (Nos. 121–156) (Apr. 2, 2025) | A143 – A148 |
| Qualcomm Exhibit 4 – *Arm Ltd. v. Qualcomm Inc., Qualcomm Techs., Inc. and Nuvia, Inc.*, C.A. No. 22-1146-MN, Oral Argument Transcript Excerpt (Mar. 7, 2024) | A149 – A154 |
| *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holding PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Special Master Discovery Hearing Transcript Excerpt (Aug. 14, 2025) | A155 – A173 |
| Email from Jennifer Ying to Special Master Helena Rychlicki (Oct. 21, 2025) | A174 – A175 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED and QUALCOMM TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 24-490 (MN) |
| ARM HOLDINGS PLC f/k/a ARM LTD., | ) ) ) | |
| Defendant. | ) ) | |

**NONPARTY ANNAPURNA LABS (U.S.) INC.'S
<u>MOTION FOR PROTECTIVE ORDER</u>**

Pursuant to Federal Rule of Civil Procedure 26 and Paragraphs 51-52 of the Stipulated Protective Order (D.I. 84), Nonparty Annapurna Labs (U.S.) Inc. ("Annapurna") hereby moves for a protective order to prevent production of agreements that Arm identified for production to Qualcomm, as well as any amendments, exhibits, and annexes thereto.

The grounds for this motion are set forth in the Letter Brief of Nonparty Annapurna's Motion for Protective Order concurrently submitted to Special Master Helena C. Rychlicki.

*Of Counsel:*

Adam Greenfield
Ashley N. Finger
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
(202) 637-2200
adam.greenfield@lw.com
ashley.finger@lw.com

Dated: September 11, 2025

ASHBY & GEDDES

*/s/ Andrew C. Mayo*
_____
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com

*Attorneys for Nonparty Annapurna Labs (U.S.) Inc.*

## RULE 7.1.1 CERTIFICATION

The undersigned hereby certifies that, after conferring with counsel for Plaintiffs and counsel for Defendant, Plaintiffs oppose the relief requested in the foregoing motion and Defendant does not oppose the relief requested in the foregoing motion.

/s/ *Andrew C. Mayo*

Andrew C. Mayo

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED and QUALCOMM TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 24-490 (MN) |
| v. | ) ) | |
| ARM HOLDINGS PLC f/k/a ARM LTD., | ) ) | |
| Defendant. | ) | |

## [PROPOSED] ORDER

NOW THEREFORE, having reviewed Nonparty Annapurna's Motion for Protective Order ("Annapurna's Motion'),

IT IS HEREBY ORDERED that Annapurna's Motion is GRANTED.

_____
Helena C. Rychlicki, Esq.
Special Master

ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

September 11, 2025

Helena C. Rychlicki, Esquire                                    VIA ELECTRONIC MAIL
Pinckney, Weidinger, Urban & Joyce LLC
2 Mill Road, Suite 204
Wilmington, Delaware 19806
(302) 504-1497
HRychlicki@pwujlaw.com

      Re:    *Qualcomm Inc., et al. v. ARM Holdings PLC*, C.A. No. 24-490-MN
              <u>Nonparty Annapurna's Motion for Protective Order</u>

Dear Special Master Rychlicki:

Nonparty Annapurna Labs (U.S.) Inc. ("Annapurna") moves for entry of a protective order preventing Defendant Arm Holdings plc, f/k/a ARM Ltd. ("Arm") from producing agreements between Arm and Annapurna to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm"). This motion is brought under Federal Rule of Civil Procedure 26, ¶¶51-52 of the Stipulated Protective Order (D.I. 84), and the procedures governing disputes before the Special Master (D.I. 336; D.I. 350).

## I.    INTRODUCTION

Qualcomm seeks unredacted copies of highly sensitive, customized contracts between Annapurna and Arm. These contracts have no discernable relevance to the present dispute between Qualcomm and Arm: a breach of contract claim that does not involve Annapurna.

At the same time, the harm of producing the requested agreements is great. Qualcomm announced that it intends to launch chips for data centers and servers "very soon." Ex. A (available at https://www.cnbc.com/2025/05/19/qualcomm-to-launch-data-center-processors-that-link-to-nvidia-chips.html); Ex. B (available at https://www.datacenterknowledge.com/data-center-chips/data-center-chips-in-2024-top-trends-and-releases). This will put Qualcomm in competition with Annapurna. *See* Declaration of Nafea Bshara ("Decl.") ¶6. In the relevant space, Annapurna incorporates Arm-licensed designs into its end products. Decl. ¶¶4-5, 8; Ex. C (available at https://www.aboutamazon.com/news/aws/graviton4-aws-cloud-computing-chip). The agreements between Annapurna and Arm that Qualcomm seeks contain Annapurna's trade secrets and highly sensitive competitive information for those products. Decl. ¶¶7-10, 12. Specifically, the agreements include pricing details, payment structures, and forward-looking information. Moreover, Qualcomm could ascertain other details about Annapurna's business, including costs bearing on Annapurna's pricing decisions.

{02163300;v1 }

**A004**

Helena C. Rychlicki, Esquire
September 11, 2025
Page 2

Accordingly, Annapurna respectfully requests a protective order preventing disclosure of Annapurna's agreements with Arm. As this Court held in a related action, "[a] court may issue an order under Rule 26(c) to protect information from disclosure for good cause, which requires a movant to show that, absent the protective order, it will suffer a clearly defined and serious injury … balancing relevance, need, confidentiality, and harm." *See ARM Ltd. v. Qualcomm Inc.*, No. 22-cv-1146 (D. Del.) ("NUVIA litigation"), D.I. 207. Good cause exists here because the requested information has no bearing on Qualcomm's claims that Arm breached a contract between the parties, but would be particularly useful to Qualcomm in competition with Annapurna and in its commercial negotiations.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Annapurna's Agreements with Arm

Annapurna is a leader in semiconductor chip and software development for data center and cloud computing applications. Annapurna has agreements with Arm to license Arm's technology for incorporation into chip designs. Decl. ¶¶4-5. These agreements are highly negotiated.



Decl. ¶¶7-12. The terms are                                         Decl. ¶9.

                                    Decl. ¶7.

          .  Decl. ¶9.

                                         Decl. ¶9.

The agreements Arm intends to produce are the Technology License Agreement ("TLA"), Arm Total Access Agreement ("ATA"), and Royalty Pricing Agreement ("RPA"). These agreements contain confidentiality clauses and require protective measures. In the event of necessary disclosure, the agreements also require the disclosing party to provide advance notice. Decl. ¶10.

### B.    Protective Order Procedure in This Action

The Stipulated Protective Order (D.I. 84) permits nonparties to move for protection of highly sensitive information from disclosure in the litigation. When a party is required to produce a nonparty's confidential information, it must promptly notify the requesting party and the nonparty in writing, provide the discovery requests to the nonparty, and make the requested information available for the nonparty's inspection. D.I. 84 ¶51. The nonparty then has 21 days to move for a protective order. D.I. 84 ¶52.

On August 21, 2025, Arm sent a letter notifying Annapurna that it "intends to produce to Qualcomm confidential information relating to Arm's relationship with Annapurna, including copies of the unredacted TLA, ATA, and RPA between Arm and Annapurna." Decl. ¶3. On September 3, 2025, Arm provided the Qualcomm discovery requests, in response to which Arm intends to produce

---

[1]  Annapurna is an organization within AWS. Decl. ¶1.

{02163300;v1 }

Helena C. Rychlicki, Esquire
September 11, 2025
Page 3

these agreements, as required under the Stipulated Protective Order.  D.I. 84 ¶51.  To permit substantive discussions, Qualcomm retained conflicts counsel on September 5, 2025.  Pursuant to Local Rule 7.1, Annapurna and Qualcomm conferred on September 5 and 9 attempting to reach a resolution.  Annapurna separately conferred with Arm on September 9.  Specifically, Annapurna requested an explanation of why, even at a high level, the agreements sought were relevant to the pending action.  The parties declined to provide any actionable information without Annapurna first agreeing to a host of requirements and restrictions.  Annapurna now timely moves for a protective order.  D.I. 84 ¶52.

### C.    Prior, Similar Motions Have Been Granted By The Court

This is not the first dispute between Qualcomm and Arm that has drawn in nonparties concerned about production of highly sensitive information.  In the NUVIA Litigation, the Court granted a protective order preventing the production of competitively sensitive nonparty licenses with Arm.  NUVIA Litigation, D.I. 207 (D. Del. Nov. 27, 2023) (issuing protective order preventing production of nonparty license because of the sensitivity of the information, the agreement's minimal relevance, and the harm of disclosure "given that Qualcomm's outside counsel will necessarily need to communicate generalized information about the [agreement] to its client").

## III.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery of any non-privileged information relevant to a claim or defense and proportional to the needs of the case.  The party seeking discovery bears the burden of demonstrating relevance.  *See Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.,* 2017 WL 4310221, at *4 (M.D. Pa. Sept. 28, 2017).  The existence of a protective order "is not a substitute for establishing relevance or need[;]" rather, a protective order's purpose is to "prevent harm by limiting disclosure of relevant and necessary information."  *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990).

Rule 26 also provides that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense" by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(G).  "[G]ood cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure."  *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984).  "[I]t is clear that a court may issue a protective order restricting disclosure of discovery materials to protect a party from being put at a competitive disadvantage."  *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 890 (E.D. Pa. 1981).  In determining whether good cause exists to preclude discovery, the Court considers whether the movant has "show[n] that, absent the protective order, it will suffer a clearly defined and serious injury … balancing relevance, need, confidentiality, and harm."  NUVIA Litigation, D.I. 207.  Indeed, "even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit."  *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002).

Helena C. Rychlicki, Esquire
September 11, 2025
Page 4

## IV.    ARGUMENT

Annapurna respectfully requests a protective order preventing production of its competitively sensitive information because: (1) the information is minimally, if at all, relevant to Qualcomm's claims; and (2) any need for that information is far outweighed by the harm Annapurna would incur if its highly confidential information were disclosed to a competitor. Annapurna's motion presents similar facts and circumstances to those the Court found warranted a protective order preventing the disclosure of Apple's licensing agreements in the NUVIA Litigation.

*First*, the documents and information Qualcomm seeks are, at most, minimally relevant. Qualcomm alleges Arm breached an agreement between Arm and Qualcomm primarily by alleging Arm withheld deliverables to Qualcomm. The terms of separate agreements between Arm and nonparties (like Annapurna) have no discernable bearing on those claims.

The Court should also reject any arguments by Qualcomm that the requested agreements are relevant to Qualcomm's claim that Arm breached its agreement with Qualcomm by "refusing to provide licensing offers at commercially reasonable prices for various TLA cores and peripherals products." D.I. 211 at 5-6. To assess whether Arm offered Qualcomm commercially reasonable prices for its intended applications, Qualcomm does not (and has not demonstrated a) need to access Annapurna's licensing agreements, which reflect a highly negotiated arrangement for a different set of circumstances and applications. Permitting a dissatisfied licensee to access competitors' agreements with the same licensor simply to verify the commercial reasonableness of its own agreement should be the narrowest of exceptions, not the rule, particularly where (as here) highly sophisticated parties and pioneering technologies are at issue.

*Second*, any minimal relevance is far outweighed by the harm caused to Annapurna by disclosing trade secrets and highly sensitive information to a competitor focused on entering the space in which Annapurna predominantly operates. Decl. ¶¶ 4, 6, 12. There is great risk that Qualcomm could readily use information from Annapurna's agreements with Arm to its advantage at a heavy cost to Annapurna and its business. Meanwhile, Annapurna does not have access to reciprocal information regarding Qualcomm's agreements with Arm. Decl. ¶13.

Having demonstrated good cause, Annapurna requests that the Court enter its proposed protective order, filed herewith.

### A.    The Information Qualcomm Seeks is Irrelevant to its Claims in this Action

Qualcomm's claims relate to alleged breaches of specific contractual provisions by Arm, namely that Arm failed to deliver certain technology it owed to Qualcomm. *See generally* SAC. Annapurna's agreements with Arm have no bearing on whether Arm met those obligations. *See, e.g.*, *AdTrader, Inc. v. Google LLC*, 2021 WL 937559, at *2 (N.D. Cal. Mar. 12, 2021) (holding that policies toward nonparty advertisers were not discoverable because they revealed nothing about performance of contractual obligations owed to plaintiff under a separate agreement).

In response to motions for protective orders by other nonparty Arm licensees, Qualcomm has argued that the requested agreements are relevant as the "claims necessarily involve comparing licensing offers provided to Qualcomm to those provided to third parties" and that "[t]he pricing at

{02163300;v1 }

**A007**

Helena C. Rychlicki, Esquire
September 11, 2025
Page 5

which Arm licensed these cores and peripherals" to nonparties will "provide relevant evidence of the commercially reasonable value of these materials." D.I. 211 at 8. But none of Qualcomm's claims in the operative complaint, to the extent disclosed publicly and thus to Annapurna, appears to turn on whether certain prices are commercially reasonable. And, Annapurna's agreements do not relate to circumstances and applications comparable to those covered by Qualcomm's agreements. The terms of the agreements between Annapurna and Arm represent an unusual collaboration arrangement where Annapurna serves as a pioneer of Arm-based data center CPUs and provides Arm with valuable technical feedback. Decl. ¶8. Further, a contract with Annapurna is not necessary or sufficient to demonstrate general commercial reasonableness, particularly in view of the highly customized nature of those agreements. According to Arm, Qualcomm may argue that the agreements are relevant to allegations that Arm violated certain requirements in its TLA with Qualcomm. That does not warrant production of several entire agreements or Annapurna highly confidential information. The parties declined to agree to any redactions and have not disclosed the nature of the requirements at issue or any other purported basis for relevance.

In the NUVIA Litigation, the Court granted a protective order under similar circumstances. *See* NUVIA Litigation, D.I. 207. There, in a breach of contract action brought by Arm, Qualcomm argued that pricing terms in nonparty licensing agreements were "directly relevant" to its defense to Arm's claim for specific performance because (Qualcomm argued) those terms could demonstrate that monetary damages would be sufficient compensation. *See* NUVIA Litigation, D.I. 201, D.I. 243. The Court disagreed, and granted Apple's motion for a protective order, finding that the "highly bespoke" and "highly confidential" agreement between Apple and Arm was of "marginal relevance." *See* NUVIA Litigation D.I. 207, D.I. 252. The same reasoning applies here.

**B.    Disclosure Poses Substantial Risk of Competitive Harm to Annapurna**

The risk of significant harm to Annapurna far outweighs any marginal and unarticulated relevance of the agreements to this action. *See Mannington Mills*, 206 F.R.D. at 529. The licensing terms and pricing information sought are highly confidential, protected, customized, and valuable. *See* 6 Del. C. § 2001(4)(a)-(b); *Am. Totalisator Co. v. Autotote Ltd.*, 1983 WL 21374, at *3 (Del. Ch. Aug. 18, 1983) (confirming that "information on prices and costs can be trade secret). As discussed above, Qualcomm has made clear it intends to imminently enter the space to which the requested agreement terms and pricing relate. Decl. ¶6. At this critical time, if the requested agreements are produced, Qualcomm will gain insight into the highly sensitive commercial arrangements of a primary competitor, Annapurna.

This competitive harm cannot be remedied by designating the information as viewable by outside counsel pursuant to the existing protective order. As this Court has recognized, "the harm of disclosure given that Qualcomm's outside counsel will necessarily need to communicate generalized information about the [agreement] to its client, all of which remains true even given the Protective Order in this case." NUVIA Litigation, D.I. 207; *see also Mannington Mills*, 206 F.R.D. at 530-32 (rejecting argument that attorney's-eyes-only designation would be sufficient). The same concern exists here. For example, if Qualcomm's counsel intends to use Annapurna's agreements with Arm to assess whether Arm offered Qualcomm commercially reasonable terms, discussions about the details of Annapurna's agreement are inevitable.

Helena C. Rychlicki, Esquire
September 11, 2025
Page 6

## V.    CONCLUSION

Because this action relates to Arm's alleged breach of its agreement with Qualcomm, Annapurna's agreements are minimally, if at all, relevant.  The Court should disregard any relevance arguments advanced by the parties in response to this motion but not previously disclosed to Annapurna.  Weighed against the substantial risk of competitive harm to nonparty Annapurna, a protective order prohibiting Arm from producing or disclosing the requested agreements to Qualcomm is warranted and respectfully requested.

Respectfully,

*/s/ Andrew C. Mayo*

Andrew C. Mayo (#5207)

Word Count: 2371

ACM/mlk

cc:    All counsel of record (via electronic mail)

{02163300;v1 }

**A009**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED and QUALCOMM TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 24-490 (MN) |
| v. | ) ) | |
| ARM HOLDINGS PLC f/k/a ARM LTD., | ) ) | |
| Defendant. | ) ) ) | |

## DECLARATION OF NAFEA BSHARA IN SUPPORT OF NONPARTY ANNAPURNA LABS (U.S.) INC.'S MOTION FOR PROTECTIVE ORDER

*Of Counsel:*

Adam Greenfield
Ashley N. Finger
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
(202) 637-2200
adam.greenfield@lw.com
ashley.finger@lw.com

Dated: September 11, 2025

ASHBY & GEDDES
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com

*Attorneys for Nonparty Annapurna Labs (U.S.) Inc.*

Docusign Envelope ID: 95EC7056-60E3-4376-947C-75DE85455813

## DECLARATION OF NAFEA BSHARA IN SUPPORT OF
## NONPARTY ANNAPURNA'S MOTION FOR PROTECTIVE ORDER

I, Nafea Bshara, hereby declare:

1.      I am a Vice President and one of the founders of Annapurna Labs (U.S.) Inc. ("Annapurna"), which is a custom chip and software research and development organization within Amazon Web Services, Inc. ("AWS").  My responsibilities include oversight over chip designs, product roadmaps, and licensing third party components.  I am over the age of 18 and make this declaration based upon my personal knowledge in support Annapurna's motion for protective order.  If called as a witness, I could and would testify to the information set forth herein.

2.      I am familiar with and have reviewed the Technology License Agreement ("TLA"), ARM Total Access Agreement ("ATA"), and Royalty Pricing Agreement ("RPA") between Annapurna and Arm Ltd. ("Arm"), as well as the amendments, exhibits, and annexes to those agreements.  I am also familiar with the negotiations of these agreements between Arm and Annapurna.  For example, I was involved in setting up the original framework for the agreements and reviewed the final outcomes.

3.      I understand that Arm sent Annapurna a letter on August 21, 2025, notifying Annapurna that it intends to produce the documents listed in the preceding paragraph to Qualcomm Inc. and Qualcomm Technologies, Inc. (collectively, "Qualcomm") as part of an ongoing litigation between the parties relating to Qualcomm's allegations that Arm breached certain terms of an agreement between Qualcomm and Arm.  The notice letter from Arm to Annapurna stated that "Arm has received discovery requests in *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holdings plc*, Case No. 24-490 (MN) (D. Del.), directed to Arm's business relationships with Annapurna, including requests for unredacted copies of Arm's TLA, ATA, and RPA with Annapurna, and Qualcomm has moved to compel Arm's production of such materials."

Docusign Envelope ID: 95EC7056-60E3-4376-947C-75DE85455813

4.      Annapurna is a specialized microelectronics company that develops custom chips and software that are optimized for AWS data centers and cloud computing services.  As part of that work, Annapurna licenses designs from Arm, for incorporation into chip designs.

5.      For example, the Arm-based AWS Graviton chips developed by Annapurna are widely used by customers seeking data center compute capacity.  In 2023 and 2024, more than 50% of the CPU capacity AWS added to its data centers was powered by Graviton chips.  And in 2024, over 70,000 customers used Graviton-based compute instances.

6.      Qualcomm has announced plans to sell new chips targeting data centers and cloud computing workloads.  These forthcoming products look to compete with Annapurna products.

7.      The agreements between Annapurna and Arm listed in paragraph 2 are the end result of extensive and highly confidential negotiations.  Negotiations are limited to a few high-level individuals, at times involving only company executives from Annapurna, Arm, and AWS.

8.      The agreements are also █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

9.      Access to the final agreements is very limited. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

10.     The agreements also include ████████████████████████████████████████████████████████████████████████████████

Docusign Envelope ID: 95EC7056-60E3-4376-947C-75DE85455813

████████   ██████████████████████████████████████

███████████████████████████████████████████

    ██     ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████.

12.    If Qualcomm obtains access to or information regarding Annapurna's agreements with Arm, Qualcomm will gain information regarding ████████████████████   ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

13.    Annapurna does not have access to Qualcomm's agreements with Arm.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of September 2025, in  California



_____
Nafea Bshara
Annapurna Labs (U.S.) Inc.

3

9/9/25, 7:23 PM                                    Qualcomm to launch data center processors that link to Nvidia chips

                                                                    ●LIVESTREAM  🔍  SIGN IN

**TECH**

# Qualcomm to launch data center processors that link to Nvidia chips

PUBLISHED MON, MAY 19 2025·3:21 AM EDT    UPDATED MON, MAY 19 2025·7:08 AM EDT


**Arjun Kharpal**
@ARJUNKHARPAL

WATCH LIVE

## KEY POINTS

Qualcomm said it is planning to launch a custom central processing unit for the data center that can connect to Nvidia's GPUs and software.

A link to Nvidia's infrastructure is key for any player hoping to crack into the data center, given the relevance of the U.S. chip giant's semiconductors for AI.

Getting into the data center is part of a broader strategy from Qualcomm to diversify its business.


Follow your favorite stocks  CREATE FREE ACCOUNT

**In this article**

QCOM  -0.38 (-0.24%) 🌙

[Qualcomm](#)   on Monday said it plans to launch processors designed for data centers to power artificial intelligence, which will link to [Nvidia']  s chips.

Nvidia's graphics processing units (GPUs) have become a critical component in data centers used to train huge AI models that power applications like chatbots. They are often paired with a central processing unit (CPU) — a market dominated by [Intel]   and


MARKETS


VIDEO


WATCHLIST


MENU

**A015**

 

connect to Nvidia's GPUs and software. A link to Nvidia's infrastructure is key for any player hoping to crack into the data center given the relevance of the U.S. chip giant's semiconductors for AI.

The announcement actually marks a re-entry into the data center market for Qualcomm after previous efforts last decade bore little fruit.



**VIDEO** 03:34

Qualcomm to launch data center CPUs that link to Nvidia chips

In 2021, Qualcomm acquired Nuvia, which designs processors based on Arm designs and has been key to the U.S. tech titan's efforts with data center CPUs.

"I think we see a lot of growth happening in this space for decades to come, and we have some technology that can add real value added," Cristiano Amon, CEO of Qualcomm, told CNBC in an interview on Monday. "So I think we have a very disruptive CPU."

Amon said the company will make an announcement about the CPU roadmap and the timing of its release "very soon," without offering specifics.






Addressing the competition, Amon said that there will be a place for Qualcomm in the data center CPU space.

"As long as … we can build a great product, we can bring innovation, and we can add value with some disruptive technology, there's going to be room for Qualcomm, especially in the data center," Amon said. "[It] is a very large addressable market that will that will see a lot of investment for decades to come."

Last week, Qualcomm signed a memorandum of understanding with Saudi-based AI frim Humain to develop data centers, joining a slew of U.S. tech companies making deals in the region. Humain will operate under Saudi Arabia's Public Investment Fund.

**Qualcomm CEO Cristiano Amon speaks at Computex 2025 in Taipei on May 19, 2025.**
*Cheng Yu-chen | Afp | Getty Images*

Getting into the data center is part of a broader strategy from Qualcomm to diversify its business, which has traditionally been dominated by sales of processors and modems


MARKETS


VIDEO


WATCHLIST

MENU

A017

  ● LIVESTREAM    SIGN IN

own modems, while other players are looking at self-developed processors.

Mario Morales, group vice president of semiconductors and enabling technologies at the International Data Corporation, said that Qualcomm's entrance into the data center space is a good move to help its diversification — and that the market is large enough for a new entrant.

"Over the coming five years, the data center will be the fastest growing segment for the semi market as a whole and in the last three years, we've seen the tremendous growth from Nvidia, but companies like Qualcomm have not benefited from that growth because they haven't had a position in the space," Morales said.

"I think this announcement begins to change that, and I expect that some of this technology that they bring to this specific market will probably likely come over the next couple years, because it does take some time to establish a product roadmap and begin to engage with customers."



VIDEO  02:49
Qualcomm CEO Cristiano Amon on tariffs and China


MARKETS


VIDEO


WATCHLIST

MENU



a market historically dominated by Intel.

Amon said on Monday during at presentation at Computex in Taipei, Taiwan, that there are now more than 85 PC designs that are on sale or in development with Snapdragon X Series chips, which were first announced in 2023. Amon also said the company will announce a new PC chip during its annual summit in September.

Qualcomm is pitching its chips as power efficient and capable of running AI processes on a device, rather than in the cloud, where they are typically done now. Some of the touted advantages of on-device AI include faster AI apps and more security, since data doesn't need to leave a piece of hardware.



Follow your favorite stocks    CREATE FREE ACCOUNT

**In this article**

QCOM  -0.38 (-0.24%) 🌙

Subscribe to CNBC PRO                    Subscribe to Investing Club

Licensing & Reprints                     CNBC Councils

Select Personal Finance                  CNBC on Peacock

Join the CNBC Panel                      Supply Chain Values

Closed Captioning                        Digital Products

News Releases                            Internships

Corrections                              About CNBC

Ad Choices                               Site Map

Podcasts                                 Careers

Help                                     Contact

Qualcomm to launch data center processors that link to Nvidia chips

 ●LIVESTREAM     SIGN IN

Got a confidential news tip? We want to hear from you.

GET IN TOUCH

## Advertise With Us

PLEASE CONTACT US

≡✉ **CNBC Newsletters**

Sign up for free newsletters and get more CNBC delivered to your inbox

SIGN UP NOW

Privacy Policy

CA Notice

Terms of Service

Market Data Terms of Use and Disclaimers


MARKETS


VIDEO


WATCHLIST

MENU

https://www.cnbc.com/2025/05/19/qualcomm-to-launch-data-center-processors-that-link-to-nvidia-chips.html          6/6

**A020**

9/9/25, 7:26 PM                                    Data Center Chips in 2024: Top Trends and Releases



DATA CENTER CHIPS        AI DATA CENTERS

# Data Center Chips in 2024: Top Trends and Releases

Now that Nvidia has announced its Blackwell GPUs, Intel, AMD, hyperscalers, and AI chip startups prepare to launch their own data center chips in 2024. We break down all new and upcoming releases.

 **Wylie Wong**, Chips and Hardware Writer
April 11, 2024

14 Min Read



GOOGLE

## Table of Contents

Introduction

Trends: Co-Processors Are a Hot Commodity

Trends: Chipmakers Begin Focusing on AI Inferencing

**A022**

List of the Top 2024 Data Center Chip Releases

- AMD

- Intel

- Nvidia

- Ampere

- AWS

- Microsoft Azure

- Google Cloud

- Meta

- Cerebras

- Groq

- Tenstorrent

- Untether AI

## Introduction

Nvidia recently made a big splash by announcing its next-generation Blackwell GPUs, but the rest of 2024 promises to be a busy year in the data center chip market as rival chipmakers are poised to release new processors.

AMD and Intel are expected to launch new competing data center CPUs, while other chipmakers, including hyperscalers and startups, plan to unveil new AI chips to meet the soaring demand for AI workloads, analysts say.

Fittingly, Intel on Tuesday (April 9) confirmed that its new Gaudi 3 AI accelerator for AI training and inferencing is expected to be generally available during the 2024 third quarter, while Meta on Wednesday (April 10) announced that its next-generation AI inferencing processor is in production and already being used in its data centers today.

While server sales are expected to grow by 6%, from 10.8 million server shipments in 2023 to 11.5 million in 2024, server revenue is expected to jump 59% year-over-year in 2024, an indication that processors remain a hot, growing market, said Manoj Sukumaran, a principal analyst of data center IT at Omdia. In fact, over the next five years, server revenue is expected to more than double to $270 billion by 2028.

**A023**

9/9/25, 7:26 PM                                Data Center Chips in 2024: Top Trends and Releases

**Related:** The AI Revolution Needs Chips, Software – and Gas Pipelines

"Even though the unit shipments are not growing significantly, revenue is growing quite fast because there is a lot of silicon going inside these servers, and as a result, server prices are going up significantly," Sukumaran told *Data Center Knowledge*. "This is a huge opportunity for silicon vendors."

## Co-Processors Are a Hot Commodity

Data center operators have a large appetite for 'co-processors' – microprocessors designed to supplement and augment the capabilities of the primary processor.

Traditionally, the data center server market was CPU-centric with CPUs being the most expensive component in general-purpose servers, Sukumaran said. Just over 11% of servers had a co-processor in 2020, but by 2028, more than 60% of servers are expected to include co-processors, which not only increase compute capacity but also improve efficiency, he said.

Co-processors like Nvidia H100 and AMD's MI300 GPUs, Google Cloud's Tensor Processing Units (TPUs), and other custom application-specific integrated circuits (ASICs) are popular because they enable AI training, AI inferencing, database acceleration, the offloading of network and security functions, and video transcoding, Sukumaran said.

**Related:** World Chip Sales Return to Growth in Sign of Improving Demand

Video transcoding is a process that enables Netflix, YouTube, and other streaming media to optimize video quality for different user devices, from TVs to smartphones, the analyst noted.

## AMD and Intel vs. ARM CPUs

The CPU market remains lucrative. Intel is still the market share leader, but AMD and Arm-based CPUs from the likes of startup Ampere and other cloud service providers have chipped away at Intel's dominance in recent years.

While Intel owns 61% of the CPU market, AMD has gained significant traction, growing from less than 10% of server unit shipments in 2020 to 27% in 2023, according to Omdia. Arm CPUs captured 9% of the market last year.

**A024**

"The Arm software ecosystem has matured quite well over the past few years, and the lower power consumption and high-core densities of Arm CPUs are appealing to cloud service providers," Sukumaran said.

In fact, Google Cloud on Tuesday (April 9) announced that its first Arm-based CPUs, called Google Axion Processors, will be available to customers later this year.

Intel aims to regain its footing in the CPU market this year by releasing next-generation server processors. The new Intel Xeon 6 processors with E-cores, formerly code-named 'Sierra Forest,' is expected to be available during the 2024 second quarter and is designed for hyperscalers and cloud service providers who want power efficiency and performance.

That will be followed soon after by the launch of the new Intel Xeon 6 processors with P-cores, formerly code-named Granite Rapids, which focuses on high performance.

AMD, however, is not sitting still and plans to release its fifth-generation EPYC CPU called Turin.

"AMD has been far and away the performance leader and has done an amazing job stealing market share from Intel," said Matt Kimball, vice president and principal analyst at Moor Insights & Strategy. Almost all of it has been in the cloud with hyperscalers, and AMD is looking to further extend its gains with on-premises enterprises as well. 2024 is where you will see Intel emerge as competitive again with server-side CPUs from a performance perspective."

## Chipmakers Begin Focusing on AI Inferencing

Companies across all verticals are racing to build AI models, so AI training will remain huge. But in 2024, the AI inferencing chip market will begin to emerge, said Jim McGregor, founder and principal analyst at Tirias Research.

"There is a shift toward inferencing processing," he said. "We're seeing a lot of AI workloads and generative AI workloads come out. They've trained the models. Now, they need to run them over and over again, and they want to run those workloads as efficiently as possible. So expect to see new products from vendors."

Nvidia dominates the AI space with its GPUs, but AMD has produced a viable competitive offering with the December release of its Instinct MI300 series GPU for AI training and inferencing, McGregor said.

**A025**

While GPUs and even CPUs are used for both training and inferencing, an increasing number of companies – including Qualcomm, hyperscalers like Amazon Web Services (AWS), and Meta, and AI chip startups like Groq, Tenstorrent, and Untether AI – have built or are developing chips specifically for AI inferencing . Analysts also say these chips are more energy-efficient.

When organizations deploy a Nvidia H100 or AMD MI300, those GPUs are well-suited for training because they are big, with a large number of cores, and are high-performing with high-bandwidth memory, Kimball said.

"Inferencing is a more lightweight task. They don't need the power of an H100 or MI300," he said.

## Top Data Center Chips for 2024 – An Expanding List

Here's a list of processors that are expected to come out in 2024. *Data Center Knowledge* will update this story as companies make new announcements and release new products.

### AMD



AMD Instinct MI300X

**A026**

AMD plans to launch Turin, its next-generation server processor, during the second half of 2024, AMD CEO Lisa Su told analysts during the company's 2023 fourth-quarter earnings call in January. Turin is based on the company's new Zen 5 core.

"Turin is a drop-in replacement for existing 4th Gen EPYC platforms that extends our performance, efficiency and TCO leadership with the addition of our next-gen Zen 5 core, new memory expansion capabilities, and higher core counts," she said on the earnings call.

No specific details of Turin are available. But Kimball, the Moor Insights & Strategy analyst, said Turin will be significant. "AMD will look to further differentiate themselves from Intel from a performance and performance-per-watt perspective," he said.

AMD has also seen huge demand for its Instinct MI300 accelerators, including the MI300X GPU, since their launch in December. The company plans to aggressively ramp up production of the MI300 this year for cloud, enterprise and supercomputing customers, Su said during the earnings call.

## Intel



Intel 5th Gen Xeon chip

**A027**

Intel executives plan to release several major chips this year: its Gaudi 3 AI accelerator and next-generation Xeon server processors.

Gaudi 3 will be for AI training and inferencing, and is aimed at the enterprise market. It's designed to compete against Nvidia and AMD's GPUs. The AI chip will offer four times more AI compute and 1.5 times more memory bandwidth than its predecessor, the Gaudi 2, Intel executives said at its Intel Vision 2024 event in Phoenix this week.

Gaudi 3 is projected to deliver 50% faster training and inferencing times and 40% better power efficiency for inferencing when compared to Nvidia's H100 GPU, Intel executives added.

"This is going to be competitive with massive power savings and a lower price," said Kimball, the analyst.

As for its next-generation Intel Xeon 6 processors, Sierra Forest will include a version that features 288 cores, which would be the largest core count in the industry. It's also the company's first "E-core" server processor designed to balance performance with energy efficiency.

Granite Rapids is a "P-core" server processor that's designed for best performance. It will offer two to three times better performance for AI workloads over Sapphire Rapids, the company said.

Gaudi 3 will be available to OEMs during the 2024 second quarter with general availability anticipated during the third quarter, an Intel spokesperson said. Sierra Forest, now called Intel Xeon 6 processors with E-cores, is expected to be available during the 2024 second quarter. Granite Rapids, now called Intel Xeon 6 processors with P-cores, is expected to launch "soon after," an Intel spokesperson said.

The news follows Intel's launch of its fifth-generation Xeon CPU last year.

## Nvidia

**A028**



Nvidia GB200 Grace Blackwell

Nvidia in mid-March announced that it will start shipping next-generation Blackwell GPUs later this year, which analysts say will enable the chip giant to continue to dominate the AI chip market.

The new family of Blackwell GPUs – designed for cloud providers and enterprises – offer 20 petaflops of AI performance on a single GPU and will enable organizations to train AI models four times faster, improve AI inferencing performance by 30 times and do it with up to 25 times better energy efficiency than Nvidia's previous generation Hopper architecture chips, executives said.

Nvidia will also ship the Hopper-based H200 during the 2024 second quarter. The company recently announced new benchmarks showing it's the most powerful platform for running generative AI workloads. An H200 will perform 45% faster than an H100 while inferencing a 70 billion parameter Llama 2 model, the company said.

## Ampere

**A029**



AmpereOne Chip

Ampere did not respond to *Data Center Knowledge*'s request for information on its chip plans for 2024. But last May, the startup, led by former Intel president Renee James, announced a new family of custom-designed, Arm-compatible server processors that feature up to 192 cores.

That processor, called AmpereOne, is designed for cloud service providers and simultaneously delivers high performance with high power efficiency, company executives said.

## AWS

**A030**



AWS Trainium2

AWS is among the hyperscalers that partner with large chipmakers such as Nvidia, AMD and Intel and use their processors to provide cloud services for customers. But they also find it advantageous and cost-effective to build their own custom chips to power their own data centers and provide cloud services to customers.

AWS this year will launch Graviton4, an Arm-based CPU for general-purpose workloads and Tranium2 for AI training. Last year, it also unveiled Inferentia2, its second-generation AI inferencing chips, said Gadi Hutt, senior director of product and business development at AWS' Annapurna Labs.

"Our goal is to give customers the freedom of choice and give them high-performance at significantly lower cost," Hutt said.

Tranium2 will feature four times the compute and three times the memory of its first Tranium processor. While AWS uses the first Tranium chip in a cluster of 60,000 chips, Tranium2 will be available in a cluster of 100,000 chips, Hutt said.

## Microsoft Azure



Microsoft Azure Maia 100 AI Accelerator

Microsoft recently announced the Microsoft Azure Maia 100 AI Accelerator for AI and generative AI tasks and Cobalt 100 CPU, an Arm-based processor for general-purpose compute workloads.

The company in November said it would begin rolling out the two processors in early 2024 to initially power Microsoft services, such as Microsoft Copilot and Azure OpenAI Service.

The Maia AI accelerator is designed for both AI training and inferencing, while the Cobalt CPU is an energy-efficient chip that's designed to deliver good performance-per-watt, the company said.

## Google Cloud

9/9/25, 7:26 PM                          Data Center Chips in 2024: Top Trends and Releases



Google Axion Processor

Google Cloud is a trailblazer among hyperscalers, having first introduced its custom Tensor Processing Units (TPUs) in 2013. TPUs, designed for AI training and inferencing, are available to customers on the Google Cloud. The processors also power Google services, such as Search, YouTube, Gmail and Google Maps.

The company launched its fifth-generation TPU late last year. The Cloud TPU v5p can train models 2.8 times faster than its predecessor, the company said.

Google Cloud on Tuesday (April 10) announced that it has developed its first Arm-based CPUs, called the Google Axion Processors. The new CPUs, built using the Arm Neoverse V2 CPU, will be available to Google Cloud customers later this year.

The company said customers will be able to use Axion in many Google Cloud services, including Google Compute Engine, Google Kubernetes Engine, Dataproc, Dataflow and Cloud Batch.

Kimball, the analyst, expects AMD and Intel will take a revenue hit as Google Cloud begins to deploy its own CPU for its customers.

**A033**

"For Google, it's a story of 'I've got the right performance at the right power envelope at the right cost structure to deliver services to my customers. That's why it's important to Google," he said. "They look across their data center. They have a power budget, they have certain SLAs, and they have certain performance requirements they have to meet. They designed a chip that meets all those requirements very specifically."

## Meta

Meta has deployed a next-generation custom chip for AI inferencing at its data centers this year, Meta announced on Wednesday (April 10).

The next-generation AI inferencing chip, previously code-named Artemis, is part of the company's Meta Training and Inference Accelerator (MTIA) family of custom-made chips designed for Meta's AI workloads.

Meta introduced its first-generation AI inferencing chip, MTIA v1, last year. The new next-generation chip offers three times better performance and 1.5 times better performance-per-watt over the first-generation chip, the company said.

## Cerebras

A034

9/9/25, 7:26 PM                                    Data Center Chips in 2024: Top Trends and Releases

AI hardware startup Cerebras Systems introduced its third-generation AI processor, the WSE-3, in mid-March. The wafer-sized chip doubles the performance of its predecessor and competes against Nvidia in the high-end of the AI training market.

The company in mid-March also partnered with Qualcomm to provide AI inferencing to its customers. Models trained on Cerebras' hardware are optimized to run inferencing on Qualcomm's Cloud A100 Ultra accelerator.

## Groq

A035



[Groq](#) is a Mountain View, California-based AI chip startup that has built the LPU Inference Engine to run large language models, generative AI applications and other AI workloads.

Groq, which released its first AI inferencing chip in 2020, is targeting hyperscalers, enterprises, the public sector, AI startups and developers. The company will release its [next-generation chip](#) in 2025, a company spokesperson said.

## Tenstorrent

**A036**

Tenstorrent Wormhole Two Chip

Tenstorrent is a Toronto-based AI inferencing startup with a strong pedigree: its CEO is Jim Keller, a chip architect who has worked at Apple, AMD, Tesla and Intel and helped design AMD's Zen architecture and chips for early Apple iPads and iPhones.

The company has begun taking orders of its Wormhole AI inferencing chips this year with a formal launch later this year, said Bob Grim, Tenstorrent's vice president of strategy and corporate communications.

Tenstorrent is selling servers powered by 32 Wormhole chips to enterprises, labs and any organization that needs high-performance computing, he said. Tenstorrent is currently focused on AI inferencing, but its chips can also power AI training, so the company plans to also support AI training in the future, Grim said.

## Untether AI

Untether AI is a Toronto-based AI chip startup that builds chips for energy-efficient AI inferencing.

The company – whose president is Chris Walker, a former Intel corporate vice president and general manager – shipped its first product in 2021 and plans to make its second-generation SpeedAI240 chip available this year, a company spokesperson said.

Untether AI's chips are designed for a variety of form factors, from single-chip devices for embedded applications to 4-chip, PCI-Express accelerator cards, so its processors are used from the edge to the data center, the spokesperson said.

**Read more about:**

Google Alphabet    Chip Watch

## About the Author



**Wylie Wong**

**Chips and Hardware Writer**

Wylie Wong is a journalist and freelance writer specializing in technology, business and sports. He previously worked at CNET, Computerworld and CRN and loves covering and learning about the advances and ever-changing dynamics of the technology industry. On the sports front, Wylie is co-...

Source: https://www.datacenterknowledge.com/data-center-chips/data-center-chips-in-2024-top-trends-and-releases

**A038**



To sign up for news alerts from Amazon, click here and choose "Allow" for notifications.    ✕

Search Amazon News 🔍    ☰

News / AWS

# Amazon's new cloud computing chip, AWS Graviton4, is now generally available. Take a look back at its evolution.

**More powerful, more sustainable, and used by more customers, Graviton was an engineering first for data center chips. The fourth generation is now available to all.**





Written by Amazon Staff

July 09, 2024                                                     2 min read

AWS    Technology    Machine Learning    Innovation              📤 Share

If you've ever opened up your mobile phone, either by design or by unfortunate accident, you'll likely find computing chips that are based on what is known as the Arm architecture. Arm-based chips are extremely powerful and extremely power-efficient—they won't

To sign up for news alerts from Amazon, click here and choose "Allow" for notifications.



**What you need to know about the AWS AI chips powering Amazon's partnership with Anthropic**

Anthropic will use our powerful, purpose-built AI chips to accelerate generative AI for our customers.

The reason? Turns out it's really hard. Others had tried before and failed. Arm is just the starting point, the engineering team at Annapurna Labs began with Arm's customizable nature and then landed on their own refined chip design and process.

The result was Graviton.



AWS Graviton4

Launched in 2018, the custom AWS-engineered data center chip was the first of its kind to be deployed at scale by a major cloud provider. Graviton brought the same efficiency to AWS data centers, and all the power required by AWS customers.

How powerful? Graviton4 offers four times the performance of Graviton1. How efficient? Graviton3 uses 60 percent less energy for the same performance as comparable Amazon EC2 instances (where the compute happens in a data center), and Graviton4 is even more energy efficient. How many transistors are in the chip? Glad you asked: 73 billion transistors, which in compute terms is the equivalent of a whole, whole, lot.

To sign up for news alerts from Amazon, click here and choose "Allow" for notifications.



 optimize its infrastructure to support generative AI at scale.

SAP, Epic Games, and SmugMug are among the AWS customers who are already benefiting from using Graviton4-based instances. Epic, operator of *Fortnite*, one of the world's largest games with over 350 million accounts, is using AWS Graviton4 instances to deliver gaming the way *Fortnite* players expect, as fast as possible and as reliably as possible.

AWS has been driving the industry embrace of processors designed explicitly for cloud workloads, and has been at the forefront of enabling their broad use in cloud applications as well as working with partners to make them accessible to more and more customers. With Graviton, AWS was, and is, at the forefront of this custom chip evolution. But the revolution in custom silicon for the cloud doesn't end there. With the latest generation of AWS chips engineered for AI, Trainium and Inferentia, AWS is extending the chip development environment—the combination of hardware and supporting software—and the success that began five years ago with Graviton.

Check out some highlights of the four generations of Graviton chips.

### Sign up for the weekly Amazon newsletter

Enter email

Amazon Privacy Policy Opt out anytime



01 / 06

**A042**

To sign up for news alerts from Amazon, click here and choose "Allow" for notifications.

- A city in the palm of your hand: Exploring the intricate world of an Amazon Web Services chip
- JetBlue chooses Amazon's Project Kuiper for faster, free in-flight Wi-Fi
- How to watch 'Harlan Coben's Lazarus' on Prime Video
- How to watch the 'Naked Gun' franchise on Prime Video

RELATED TAGS

AWS    Technology    Machine Learning    Innovation                              ➤ Share

More Amazon News        ‹    1 / 3    ›



**OpenAI's open weight models now available on AWS**

**Anthropic's latest Claude 4 models now available in Amazon Bedrock**

Aug. 6, 2025                                Aug. 5, 2025
AWS                                         AWS

Amazon News

Press Center

Amazon.com

Investor Resources

**A043**

To sign up for news alerts from Amazon, click here and choose "Allow" for notifications.

**amazon**                                                          🔍

Careers

Site Map

More from Amazon

Amazon.com | Conditions of Use | Amazon Privacy Policy | © 1996-2025 Amazon.com, Inc. or its affiliates

**A044**



1201 North Market Street
20th Floor
Wilmington, DE 19801
www.connollygallagher.com

Sara A. Barry
TEL: (302) 252-3645
EMAIL: sbarry@connollygallagher.com

September 18, 2025

**Via Electronic Mail**
Helena C. Rychlicki, Esquire
Pinckney, Weidinger, Urban & Joyce LLC
2 Mill Road, Suite 204
Wilmington, DE 19806
(302) 504-1497
HRychlicki@pwujlaw.com

Re:  *Qualcomm Inc., et al. v. ARM Holdings PLC*, C.A. No. 24-490-MN,
     <u>Opposition to Non-Party Annapurna's Motion for Protective Order</u>

Dear Special Master Rychlicki:

Plaintiffs Qualcomm Incorporated and Qualcomm Technologies Inc. (collectively, "Qualcomm") submit this letter in opposition to Non-Party Annapurna Labs (U.S.) Inc.'s ("Annapurna") Motion for a Protective Order ("Motion").  D.I. 386.

I.    **FACTUAL BACKGROUND**

     A.  **Annapurna's agreements with Arm are relevant to Qualcomm's claims.**

Annapurna's Motion contends that the limited information that Qualcomm is seeking from Defendant Arm Holdings plc, f/k/a ARM ltd. ("Arm") in response to discovery requests served nearly eight months ago "have no discernable relevance to the present dispute between Qualcomm and Arm."  OB at 1[1].  Not so.  Arm's agreements with Annapurna are highly relevant to Qualcomm's claims that Arm breached the Qualcomm TLA (defined below) and the implied covenant of good faith and fair dealing in connection with certain quotes Arm gave to Qualcomm. D.I. 137 ¶¶102-108, 116-120, 181-188, 213-220.

As set forth Qualcomm's other briefs in opposition to other third parties' motions for protective orders (D.I. 180, 344, 346 (redacted at 211, 354, 356 respectively)), Arm develops and licenses technology for CPUs compatible with its instruction-set architecture—instructions that allow hardware to interface with Arm-compliant software.  D.I. 137 ¶ 43.  Arm's business model primarily involves two types or licenses:  (1) Architecture License Agreements ("ALAs"), which are not relevant to this motion; and (2) Technology License Agreements ("TLAs"), which are

---

[1]    Annapurna's Letter Brief in support of the Motion will be referred to as "OB."



**A045**

Helena C. Rychlicki, Esquire
September 18, 2025
Page 2

relevant here. A TLA grants the licensee rights to Arm-designed "off-the-shelf" CPUs or other Arm-designed IP that the licensee can then incorporate into its own chips. D.I. 137 ¶ 51. Qualcomm has a TLA with Arm (the "Qualcomm TLA"), authorizing Qualcomm to make and sell products, including systems-on-a-chip ("SoCs") that use Arm's ready-made CPU designs. D.I. 137 ¶ 3.



Importantly, the Qualcomm TLA contains a ████████████████████ ████████████████████████████████████ Qualcomm has alleged that Arm breached the Qualcomm TLA and the implied covenant of good faith and fair dealing by providing licensing quotes for certain Arm CPUs and peripherals at prices with terms that are either inconsistent with the ████████████ in the Qualcomm TLA or are otherwise not commercially reasonable. D.I. 137 ¶¶ 20-28, 102-120-181-188, 213-226.

Since January, Qualcomm has sought production of third-party agreements and communications relevant to these claims. *E.g.* Ex. A, RFPs 34 and 40. *See also, e.g.*, Ex. B, RFP 58; Ex. C, RFP 123. Nearly seven months later and more than a month after the close of fact discovery, on August 21, 2025, Arm notified Annapurna that it "intends to produce to Qualcomm confidential information relating to Arm's relationship with Annapurna, including copies of the unredacted [agreements] . . . between Arm and Annapurna." OB at 2 (citing Decl. ¶ 3).

Pursuant to Local Rule 7.1, Annapurna and Qualcomm conferred on September 5 and 9 and attempted to reach resolution. Qualcomm requested from Arm permission to share with Annapurna certain general aspects of the Qualcomm TLA that were redacted in public filings. Ex. D. Arm's counsel agreed that Qualcomm could share this information with Annapurna's counsel under the following conditions:

> (1) Annapurna's outside counsel entering an appearance in this matter and agreeing to be bound by the terms of the Protective Order (D.I. 84), (2) Qualcomm agreeing to designate any briefs, exhibits, and court filings containing this material as Highly Confidential – Attorneys' Eyes Only under the Protective Order; and (3) Qualcomm agreeing to file any such briefs and exhibits under seal, to the extent any filings are required.

*Id.* Qualcomm relayed Arm's conditions to Annapurna's counsel on September 9, 2025, but Annapurna's counsel did not agree to them. Consequently, Qualcomm was not able to share the relevant information with Annapurna prior to Annapurna filing its motion.

**B. Prior litigation with Arm is irrelevant.**

Annapurna alleges that "prior, similar motions have been granted by the Court." OB at 3. This is incorrect. As previously noted in other oppositions to similar third-party motions, the prior litigation involved Arm's allegation that Qualcomm and Nuvia breached the Nuvia ALA, and to test whether Arm suffered any harm, Qualcomm sought production of Arm's ALAs and TLAs with third parties. *Arm Ltd. Inc. v. Qualcomm Inc.*, C.A. No. 22-1146 (MN) (the "Prior Litigation")

Helena C. Rychlicki, Esquire
September 18, 2025
Page 3

Ex. E, RFP 27; Ex. F, RFP 71.  The Court ultimately found that the materials were relevant and precluded Arm from advancing certain theories of harm at trial in light of Arm's refusal to produce the unredacted versions.  D.I. 578 at 26:20-40:18; D.I. 588 at 98:16-101:24.

On the other hand, this litigation arises from Arm's conduct under the Qualcomm TLA and ALA and Arm's tortious interference and unfair competition.  Most relevant here, Qualcomm alleges that Arm breached the Qualcomm TLA and the implied covenant of good faith by providing licensing quotes for certain Arm CPUs at prices that were either inconsistent with the ██████████ or were otherwise not commercially reasonable.  Accordingly, Arm's agreements with Annapurna provide central evidence for proving those allegations.

## II.     LEGAL STANDARD

A court may issue a protective order only upon a showing of good cause.  Fed. R. Civ. P. 26(c).  The non-party seeking a protective order must "show good cause by demonstrating a particular need for protection."  *Cipollone v. Ligget Grp.*, 785 F.2d 1108, 1121 (3d Cir. 1986).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."  *Id.* (citing *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978)); *see also Signode Indus. Grp., LLC v. Polychem, LLC*, C.A. No. 22-519, 2022 WL 3226319 (D. Del. Aug. 10, 2022), D.I. 94 at 1-2 (noting "specificity" requirement for granting protective order).  As explained below, Annapurna has not met its burden of showing why the "highly confidential - attorneys eyes only" confidentiality provisions in the Protective Order are insufficient to protect its confidential information.

## III.    ARGUMENT

### A.  Annapurna's agreements with Arm are relevant.

As Annapurna did not wish to be bound by Arm's conditions for Qualcomm to share information about the agreements' relevance, it is not surprising that Annapurna's Motion incorrectly focuses on an allegation—related to Qualcomm's ALA breach claim—that "Arm failed to deliver certain technology it owed to Qualcomm" and insists that its "agreements with Arm have no bearing on whether Arm met those obligations."  OB at 4.[2]  Here, Annapurna misses the point.  Qualcomm does not contend that Annapurna's agreements are relevant to Qualcomm's claims under the ALA.  Thus, Annapurna's argument is entirely misplaced.

Instead, Annapurna's agreements with Arm (the Technology License Agreement (the "Annapurna TLA"), the Arm Total Access Agreement ("ATA"), and Royalty Pricing Agreement

---

[2]     Annapurna's reliance on *AdTrader, Inc. v. Google LLC* , 2021 WL 937559, at *2 (N.D. Cal. Mar. 12, 2021) like other third parties' reliance on this case is misplaced.  The court there found that production of one agreement was not relevant to the defendant's understanding of its obligations under another agreement.  *Id.*  Here, Annapurna's agreements with Arm are relevant to whether Arm breached the Qualcomm TLA, including the ██████████, and the covenant of good faith and fair dealing.

**A047**

Helena C. Rychlicki, Esquire
September 18, 2025
Page 4

("RPA") are relevant to Qualcomm's claims that Arm breached the Qualcomm TLA and the covenant of good faith and fair dealing in connection with quotes Arm gave to Qualcomm for certain Arm-designed CPUs and peripheral IP.  D.I. 137 ¶¶ 102-127, 181-188.  The Qualcomm TLA includes ███████████████████████████████████████████████████████████████████████████
████████.  *Id.* ¶¶ 204-105. ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████  *Id.*  Similarly, any agreements with Arm that Annapurna has concerning peripheral IP are relevant to Qualcomm's claims that Arm's quote to Qualcomm for peripheral IP was not commercially reasonable.  Put differently, production of Arm's agreements that contain pricing information for Arm-designed CPUs and peripheral IP are necessary for Qualcomm to prove its claims[3].

Annapurna points to the unrelated Prior Litigation as evidence that the agreements are not relevant to Qualcomm's claims, but Annapurna's account of the Prior Litigation is not only incorrect, but also irrelevant to the issues in this litigation.  OB at 5.  Contrary to Annapurna's assertion, the Court ultimately agreed with Qualcomm that certain third-party ALAs at issue in the Prior Litigation were relevant and precluded Arm from advancing certain arguments at trial because Arm had failed to produce them.  Even so, those prior rulings on relevance, while undermining Annapurna's argument, remain inapplicable here, as this litigation involves different claims and different agreements that Qualcomm needs to review to evaluate and prove its claims against Arm.

### B.  Annapurna has not demonstrated specific risks of harm.

Annapurna cannot establish good cause for a protective order because it lacks a "particular need for protection."  *See Cipollone*, 785 F.2d at 1121.

Annapurna contends that "Qualcomm will gain insight into the highly sensitive commercial arrangements of a primary competitor."  *Id.*  Annapurna's speculation, however, wholly discounts the protections of the Protective Order, which permits Arm to designate sensitive information as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," which limits access to outside counsel of record and experts only and prohibits access to anyone at Qualcomm, including Qualcomm in-house counsel.  D.I. 84 ¶¶45-46.  These protections minimize any concern that Annapurna might have about Qualcomm gaining access to sensitive information.[4]  *Procter & Gamble Co. v. Boyle-Midway, Inc.*, C.A. No. 82-671, 1983 WL 830080, at *1 (D. Del. Apr. 11,

---

[3]    Qualcomm was unable to share this relevant information with Annapurna because Annapurna declined to be bound by Arm's conditions for sharing the information.  Annapurna also declined to offer producing the agreements with redactions, but Qualcomm would be willing to consider reviewing the agreements with limited, narrow redactions, but with pricing terms left unredacted, as they are relevant as described above.

[4]    Annapurna's reliance on *Am. Totalisator Co. v. Autotote Ltd.*, 1983 WL 21374, at *3 (Del. Ch. Aug. 18, 1983) is also inapposite.  Qualcomm is not disputing whether information in the agreements constitute "trade secrets," but rather are seeking to review information that will be strongly protected under the Protective Order.

Helena C. Rychlicki, Esquire
September 18, 2025
Page 5

1983) ("The Court simply will not indulge in the speculation that attorneys will violate a protective order issued by a court[.]"); *see also Del. Display Grp. LLC v. Lenovo Grp.*, 2016 WL 720977, at *6 (D. Del. Feb. 23, 2016) ("The sensitive information is protected from further disclosure by the Protective Order.").

Annapurna also speculates that the Protective Order is insufficient and suggests that "discussions about the details of Annapurna's agreement[s] are inevitable." OB at 5. Annapurna does not explain why Qualcomm's outside counsel would need to communicate this information to Qualcomm's in-house counsel or employees. And again, Annapurna's speculation that Qualcomm's outside counsel would somehow violate the Protective Order is unfounded. Ex. G, (D.I. 88, Prior Litigation, Mar. 7, 2024 Hr'g Tr.) at 44:14–23 (noting that it was "quite an accusation" to suggest that this designation wouldn't sufficiently protect sensitive information). Annapurna's cited authority does not strengthen its argument. In *Mannington,* the highly confidential designations were not sufficient protection because the materials sought were only marginally relevant. *See Mannington Mills Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 532 (D. Del. 2002) (indicating that materials sought were not relevant). As shown above, the materials here are not only relevant, but are in fact, necessary to proving Qualcomm's claims.

### IV.    CONCLUSION

For the foregoing reasons, Annapurna's Motion should be denied.


Respectfully submitted,

*/s/ Sara A. Barry*

Sara Barry (#6703)

Words: 1,890
Word Limit: 2,400


Enclosures

cc:    Counsel for Arm (via electronic mail)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 24-490 MN |
| v. | ) ) ) | **Submitted Under Seal** |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) ) | ▬▬▬▬▬▬▬▬▬▬ |
| Defendant. | ) | |

**DECLARATION OF SARA A. BARRY IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO NON-PARTY ANNAPURNA LABS (U.S.) INC.'S
MOTION FOR A PROTECTIVE ORDER**

I, Sara A. Barry, state as follows:

1.     I am an attorney with Connolly Gallagher LLP, counsel for Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm" or "Plaintiffs") in the above-captioned matter.  I am duly licensed to practice in the State of Delaware. I make this declaration based on my personal knowledge, except where otherwise stated, and if compelled to testify, I could and would competently testify to the matters herein.

2.     Attached hereto as **Exhibit A** is a true and correct copy of an excerpt from Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's First Set of Requests for Production (Nos. 1-52).

3.     Attached hereto as **Exhibit B** is a true and correct copy of an excerpt from Arm Ltd's First Supplemental Objections and Responses to Qualcomm's Second Set of Requests for Production (Nos. 53-120).

4.    Attached hereto as **Exhibit C** is a true and correct copy of an excerpt from Arm Ltd's First Supplemental Objections and Responses to Qualcomm's Third Set of Requests for Production (Nos. 121-156).

5.    Attached hereto as **Exhibit D** is a true and correct copy of an email exchange between counsel for Qualcomm and counsel for Arm regarding Non-Party Annapurna Labs (U.S.), Inc.'s Motion for a Protective Order.

6.    Attached hereto as **Exhibit E** is a true and correct copy of an excerpt from Qualcomm's First Set of Requests for Production (Nos. 1-36) as served in *Arm LTD., v. Qualcomm Inc, et al.*, C. A. No. 22-1146-MN.

7.    Attached hereto as **Exhibit F** is a true and correct copy of an excerpt from Qualcomm's Fifth Set of Requests for Production (Nos. 71-124) as served in *Arm LTD., v. Qualcomm Inc, et al.*, C. A. No. 22-1146-MN.

8.    Attached hereto as **Exhibit G** is a true and correct copy of an excerpt from the transcript dated March 7, 2024 in *Arm LTD., v. Qualcomm Inc, et al.*, C. A. No. 22-1146-MN.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my present knowledge and belief.


Dated:  September 18, 2025                    */s/ Sara A. Barry*
                                             Sara A. Barry (#6703)

**2**

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | |
| Plaintiffs, | |
| v. | C.A. No. 24-490-MN |
| ARM LTD., a U.K. corporation, | **CONFIDENTIAL** |
| Defendant. | |

## ARM LTD.'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-52)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure; the District's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("Default Standard"), and Stipulation and Order governing ESI in this case (together with the Default Standard, the "ESI Order"); any Protective Order entered in this case (the "Protective Order"), the District of Delaware Local Civil Rules (together with the ESI Order and the Protective Order, the "Local Rules"), and any agreements by the parties or orders by the Court, Arm Ltd. ("Arm") submits the following responses and objections to Qualcomm Inc. and Qualcomm Technologies, Inc.'s (together "Qualcomm") First Set of Requests for Production of Documents and Things to Arm Ltd. (Nos. 1-52), dated January 21, 2025 (each a "Request" and collectively the "Requests").

## PRELIMINARY STATEMENT

1.      Arm's responses to the Requests ("Responses") are made in accordance with the Federal Rules of Civil Procedure and based upon information currently available to Arm.

**REQUEST FOR PRODUCTION NO. 34:**

All Documents and Communications concerning any negotiations that Arm had with

TLA licensees (including Third Parties) for the ███████████████████████

████████████████████████████████████, software test libraries

for the ████████████████████, and CPUs codenamed ████████████████

████████████████ including but not limited to price quotes, license fees, licensing

term limits, or other language to include in TLA Annexes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Subject to its General Objections and any specific objections set forth below, Arm is

willing to meet and confer with Qualcomm regarding the relevant scope of this Request and

a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional

to the needs of the case to the extent it seeks "[a]ll Documents and Communications"

regarding the requested subject matter. Arm objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case in that it is not limited to a

relevant, reasonable time period. Arm objects to this Request to the extent it seeks

production of documents not relevant to either Party's claims or defenses, such as

documents concerning negotiations with third party licensees. Arm objects to this Request

to the extent it seeks information that Arm is restricted by law or contract from disclosing,

such as information subject to a confidentiality agreement with a third party, and will not

produce any such documents absent agreement of the third party(ies) or Court Order. Arm

objects to this Request as seeking information that is protected by the attorney-client

privilege, the work-product doctrine, the common interest privilege, or any other applicable

privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive regarding negotiation between ARM and TLA licensees. Arm objects to this Request because the phrases "TLA licensees" and "other language to include in the TLA Annexes" are vague, ambiguous, and undefined.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show the identity of Arm's licensees for the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as documents concerning negotiations with third party licensees. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client

privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive regarding negotiation between ARM and TLA licensees. Arm objects to this Request because the phrases "TLA licensees" and "other language to include in the TLA Annexes" are vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents and Communications related to or concerning Arm's October 22, 2024 letter to Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians related to or concerning Arm's October 22, 2024 letter.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other

**REQUEST FOR PRODUCTION NO. 40:**

All Documents and Communications concerning Arm's discussions with Qualcomm regarding licensing of the ███████████████████████████████████████████ ████████████████████████████████ software test libraries for the █████████████ ███████████████ and CPUs codenamed ███████████████████████████████ including discussions regarding potentially withholding any of the listed items, pricing of the items, and any potential restrictions related to the use of the items in Qualcomm's products, including in any chips that contained designs or source code that originated at Nuvia.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client

privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search through the use of search terms and custodians concerning Arm's discussions with Qualcomm regarding licensing of the ██████████████

██████████

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other

applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

**REQUEST FOR PRODUCTION NO. 41:**

All Documents and Communications concerning the decision not to provide Qualcomm with information or documents related to the configuration or enablement of the ███████████████████████████ including but not limited to communications regarding Qualcomm's requests for delivery of the ██████████████████████ ████████

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians concerning the decision not to provide Qualcomm with information or documents related to the configuration or enablement of the ███████████████████ ████████████

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from

48

**A059**

Dated: June 17, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 17, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
ejmorgan@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A061**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A062**

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
   a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
   Delaware corporation

        Plaintiffs,

   v.

ARM HOLDINGS PLC, f/k/a, ARM LTD.
   a U.K. corporation

        Defendant.

C.A. No. 24-490-MN

**CONFIDENTIAL**

### ARM LTD.'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S SECOND SET OF REQUESTS FOR PRODUCTION (NOS. 53-120)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure; the District's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("Default Standard"), and Stipulation and Order governing ESI in this case (together with the Default Standard, the "ESI Order"); any Protective Order entered in this case (the "Protective Order"), the District of Delaware Local Civil Rules (together with the ESI Order and the Protective Order, the "Local Rules"), and any agreements by the parties or orders by the Court, Arm Ltd. ("Arm") submits the following responses and objections to Qualcomm Inc. and Qualcomm Technologies, Inc.'s (together "Qualcomm") Second Set of Requests for Production of Documents and Things to Arm Ltd. (Nos. 53-120), dated February 21, 2025 (each a "Request" and collectively the "Requests").

### PRELIMINARY STATEMENT

1.      Arm's responses to the Requests ("Responses") are made in accordance with the

Arm objects to this Request because the term "withholding" is vague, ambiguous, and undefined.

Arm objects to this Request as duplicative of Request No. 40.

**REQUEST FOR PRODUCTION NO. 58:**



All Documents and Communications relating to or concerning any negotiations that Arm had with TLA licensees (including Third Parties) for the ███████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████ ██████████████████████████ including but not limited to price quotes, license fees, licensing term limits, or other language to include in TLA Annexes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request, if any, and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses, including licenses not at issue. Arm objects to this Request as unduly burdensome and not proportional to the needs of the case to the extent it seeks production of all third-party TLAs and TLA Annexes. Arm objects to this Request to the extent it seeks

11

**A065**

information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request because the term "negotiations" is vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request No. 34.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show the identity of Arm's licensees for the ███████████ ██████████

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses, including licenses not at issue. Arm objects to this Request as unduly burdensome and not proportional to the needs of the case to the extent it seeks production of all

third-party TLAs and TLA Annexes. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request because the term "negotiations" is vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request No. 34.

**REQUEST FOR PRODUCTION NO. 59:**

All Documents and Communications relating to or concerning the withholding of software test libraries (STL) files or releases from Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request, if any, and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses, such as licenses not at issue. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract

party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the phrase "architecture errata" is vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request No. 28.

**REQUEST FOR PRODUCTION NO. 71:**

All internal strategy documents relating to or concerning Arm's licensing plans for ██████████, as that term is used in Arm's TLA Annexes, or software test libraries for the ████████████████████████████████████████

██████████████████████████████

████████████████████████████████

██████████████████████████████

██████████████████████████████

████████████████████████

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request, if any, and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll internal strategy documents" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses, such as licenses not at issue. Arm objects to this Request as unduly burdensome and not proportional to the needs of the case to the

24

**A068**

extent it seeks production of all third-party TLAs and TLA Annexes. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request because the terms "strategy documents" and "licensing plans" are vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 72:**

All Documents and Communications relating to or concerning any  protocol information provided to other Arm licensees but not to Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request, if any, and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" concerning protocol information provided to "other Arm licensees" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses, such as licenses not at issue. Arm objects to this Request as unduly burdensome and not proportional to the needs of the case to the extent it seeks production of all third-party TLAs and TLA Annexes. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents

Dated: June 17, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP


 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

69

**A070**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 17, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

### BY EMAIL

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
ejmorgan@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A072**

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ARM HOLDINGS PLC, a U.K. corporation,<br><br>　　　　　Defendant. | C.A. No. 24-490-MN<br><br>**CONFIDENTIAL** |

**ARM HOLDINGS PLC'S FIRST SUPPLEMENTAL OBJECTIONS AND
RESPONSES TO QUALCOMM'S THIRD SET OF REQUESTS FOR PRODUCTION
(NOS. 121-156)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure; the District's

Default Standard for Discovery, Including Discovery of Electronically Stored Information

("Default Standard"), and Stipulation and Order governing ESI in this case (together with the

Default Standard, the "ESI Order"); any Protective Order entered in this case (the "Protective

Order"), the District of Delaware Local Civil Rules (together with the ESI Order and the

Protective Order, the "Local Rules"), and any agreements by the parties or orders by the Court,

Arm Holdings plc ("Arm") submits the following responses and objections to Qualcomm Inc.

and Qualcomm Technologies, Inc.'s (together "Qualcomm") Third Set of Requests for

Production of Documents and Things to Arm Holdings plc (Nos. 121-156), dated April 2, 2025

(each a "Request" and collectively the "Requests").

## PRELIMINARY STATEMENT

1.　　　Arm's responses to the Requests ("Responses") are made in accordance with the

1

**A074**

**RESPONSE TO REQUEST FOR PRODUCTION NO. 122:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show Arm's knowledge since January 1, 2022 that any Third Party with whom Qualcomm alleges interference is or has been a customer for Qualcomm CPUs or other products.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work- product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order.

**REQUEST FOR PRODUCTION NO. 123:**

All agreements licensing ██████████████████████████████ ██████ including TLAs and corresponding Annexes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 123:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll agreements" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents related to Plaintiff's pending Motion for Leave to Amend the First Amended Complaint. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work- product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as duplicative of Request Nos. 34, 58, and 140.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 123:**

Subject to its General Objections and any specific objections set forth below, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show the identity of Arm's licensees for the ██████████████████████████████.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll agreements" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to

this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work- product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as duplicative of Request Nos. 34, 58, and 140.

**REQUEST FOR PRODUCTION NO. 124:**

All licensing fee and royalty information for licenses offered by Arm for ███

████████████████████████████████

**RESPONSE TO REQUEST FOR PRODUCTION NO. 124:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll agreements" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents related to Plaintiff's pending Motion for Leave to Amend the First Amended Complaint. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request as seeking

Dated: June 17, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

 /s/ Robert M. Vrana
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 17, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
ejmorgan@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A080**

EXHIBIT D

| | |
|---|---|
| **From:** | Fung, Nicholas Rylan |
| **To:** | Sara Barry; KE-ARM-Qualcomm@kirkland.com; MoFo_Arm_QCOM; YCST_Arm_Qualcomm@ycst.com |
| **Cc:** | Alan Silverstein; Ying, Jennifer; GRP-QCvARM@paulweiss.com |
| **Subject:** | RE: Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): Motion for Protective Order |
| **Date:** | Tuesday, September 9, 2025 10:52:05 AM |
| **Attachments:** | image001.png |

Counsel,

Arm consents to Qualcomm's disclosure to Annapurna's outside counsel on a Highly Confidential – Attorneys' Eyes Only basis of (1) the existence of ▮▮▮▮▮▮ of the Qualcomm TLA, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and (2) the codenames of the TLA products that Qualcomm has licensed or attempted to license.

This consent is conditioned, however, on (1) Annapurna's outside counsel entering an appearance in this matter and agreeing to be bound by the terms of the Protective Order (D.I. 84), (2) Qualcomm agreeing to designate any briefs, exhibits, and court filings containing this material as Highly Confidential – Attorneys' Eyes Only under the Protective Order; and (3) Qualcomm agreeing to file any such briefs and exhibits under seal, to the extent any filings are required.

Regarding the Second Amended Complaint, please identify the specific paragraphs that you propose showing to Annapurna's outside counsel so that we may consider your request.

Regards,

**Nicholas Fung**
Partner | Morrison Foerster
nfung@mofo.com
T: +1 (213) 892-5348

---

**From:** Sara Barry <SBarry@connollygallagher.com>
**Sent:** Monday, September 8, 2025 6:07 AM
**To:** KE-ARM-Qualcomm@kirkland.com; MoFo_Arm_QCOM <MoFo_Arm_QCOM@mofo.com>; YCST_Arm_Qualcomm@ycst.com
**Cc:** Alan Silverstein <asilverstein@connollygallagher.com>; Ying, Jennifer <jying@morrisnichols.com>; GRP-QCvARM@paulweiss.com
**Subject:** Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN); Motion for Protective Order

**External Email**

---

Counsel:

We are writing to you on behalf of Qualcomm in the above-referenced matter.  As you may be aware, non-party Annapurna is currently planning to move for a protective order to prevent production of at least its TLA, Royalty Pricing Agreement, and Arm Total Access Agreement. As with other similar third-party motions, in order to respond to the arguments that these documents are supposedly not relevant, Qualcomm will need to disclose in its opposition (which the non-party will necessarily receive) certain general aspects of the Qualcomm TLA that have been redacted in public filings.  Specifically, Qualcomm will need to disclose that the Qualcomm TLA includes a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Qualcomm may

also need to disclose the names of various products that Qualcomm has licensed or attempted to license from Arm, including CPUs codenamed ███████████████ as well as peripheral IP including the ████████████████████████████████████████████████ ██████████████

Please confirm as soon as possible that Arm consents to (1) the disclosure of the █████████████ provision in the QC TLA and (2) disclosure of the fact that Qualcomm has licensed or attempted to license the IP listed above.  Please confirm that Arm agrees that by making such disclosures,  Qualcomm is not in violation of the protective order or any confidentiality provision of any agreement between the parties.

Please also confirm that, if Annapurna asks to review the unredacted paragraphs of the Second Amended Complaint that concern the TLA, Arm consents to the disclosure and agrees that Qualcomm is not in violation of the protective order or any confidentiality provision of any agreement between the parties.

Thanks,
Sara

**Sara Barry**
ASSOCIATE
sbarry@connollygallagher.com



| | |
|---|---|
| www.connollygallagher.com | O: (302) 252-3645   1201 N. Market Street; 20th Floor<br>C: (302) 573-0208   Wilmington, DE 19801 |

====================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.

**A083**

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARM LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1146 (MN) |
| | ) | |
| QUALCOMM INC., QUALCOMM | ) | **CONFIDENTIAL** |
| TECHNOLOGIES, INC. and NUVIA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## QUALCOMM'S FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1–36)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Defendants Qualcomm Inc., Qualcomm Technologies, Inc., and Nuvia, Inc ("NUVIA") (collectively, "Defendants" or "Qualcomm") request that Plaintiff ARM Ltd. ("ARM") serve Qualcomm with its written responses to these requests for production and produce copies of the Documents and things requested below at the law offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 within thirty (30) days of service.

## INSTRUCTIONS

1.    Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests for Documents and things are continuing in nature.  If, after producing the requested Documents and things, ARM obtains or becomes aware of any further responsive Document or thing, ARM must produce to Qualcomm such additional Document or thing.

2.    If ARM withholds any Document or thing based upon a claim of privilege or any other claim of immunity from discovery, ARM shall state the specific basis for withholding the Document or thing and describe the facts and circumstances giving rise to such withholding in

technology are not readily ascertainable or calculable, given the resulting future impact on ARM's relationships with existing and prospective customers" (D.I. 1, ¶ 56).

**REQUEST FOR PRODUCTION NO. 26:**

All Documents and Communications concerning the acquisition of any ARM licensee by another licensee, including but not limited to Documents and Communications about the acquisition process, negotiations related to the acquisition(s), and the outcome of those negotiations, including any related agreements.

**REQUEST FOR PRODUCTION NO. 27:**

All ALAs ARM has entered into with any party.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents and Communications concerning any circumstances in which ARM has demanded destruction of an architected core or related technology.

**REQUEST FOR PRODUCTION NO. 29:**

All Documents and Communications concerning the acquisition of any ARM licensee by another licensee, including whether assignment of any license agreement occurred, ARM's position on assignment, and any novation agreement that was executed.

**REQUEST FOR PRODUCTION NO. 30:**

All Documents and Communications concerning ARM's market share, including but not limited to its market share in the compute, server, and mobile markets.

**REQUEST FOR PRODUCTION NO. 31:**

All Documents and Communications concerning any ARM architecture set the public domain, including but not limited to the ARMv8-A Architecture Documentation set and all relevant versions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Erin J. Morgan
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

December 20, 2022

14

**A087**

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2022, copies of the foregoing were caused to be served upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG, CONAWAY, STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Michael A. Jacobs, Esquire                                 *VIA ELECTRONIC MAIL*
Joyce Liou, Esquire
Diek Van Nort, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Plaintiff*

Erik J. Olson, Esquire                                     *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Plaintiff*

Scott F. Llewellyn, Esquire                                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202-5638
*Attorneys for Plaintiff*

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

**A088**

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARM LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1146 (MN) |
| | ) | |
| QUALCOMM INC., QUALCOMM | ) | ███████████████ |
| TECHNOLOGIES, INC. and NUVIA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## QUALCOMM'S FIFTH SET OF REQUESTS FOR PRODUCTION (NOS. 71 - 124)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Defendants Qualcomm Inc., Qualcomm Technologies, Inc., and Nuvia, Inc ("NUVIA") (collectively, "Defendants" or "Qualcomm") request that Plaintiff ARM Ltd. ("ARM") serve Qualcomm with its written responses to these requests for production and produce copies of the Documents and things requested below at the law offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 within thirty (30) days of service.

## INSTRUCTIONS

1.     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests for Documents and things are continuing in nature.  If, after producing the requested Documents and things, ARM obtains or becomes aware of any further responsive Document or thing, ARM must produce to Qualcomm such additional Document or thing.

2.     If ARM withholds any Document or thing based upon a claim of privilege or any other claim of immunity from discovery, ARM shall state the specific basis for withholding the Document or thing and describe the facts and circumstances giving rise to such withholding in

**A090**

██████████████████████ **– SUBJECT TO PROTECTIVE ORDER**

well as any index, table of contents, list, or summaries that serve to organize, identify, or reference the Document.

8.      "IPO" means the initial public offering of ARM Ltd.

9.      "Plaintiff," "ARM," "you," and "your" mean Plaintiff ARM Ltd. and its predecessors, successors, affiliates, subsidiaries, parents, assignees, joint venturers, partners, principals, employees, representatives, agents, officers, trustees, directors, attorneys, and all other Persons or entities acting or purporting to act on their behalf.

10.     "TLA" means Technology License Agreement, including all amendments and annexes to any such agreement.

11.     As used in these requests, the singular shall include the plural, and the past tense shall include the present tense, and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the word "all" shall mean "any and all"; the word "including" shall mean "including, without limitation," so as to be most inclusive.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 71:**

All TLAs ARM has entered into with any party.

**REQUEST FOR PRODUCTION NO. 72:**

ARM's audit committee meeting minutes for 2020, 2021, 2022, and 2023.

**REQUEST FOR PRODUCTION NO. 73:**

ARM's board of directors meeting minutes for 2020, 2021, 2022, and 2023.

**REQUEST FOR PRODUCTION NO. 74:**

ARM's board of directors meeting materials for 2020, 2021, 2022, and 2023.

█████████████████ – **SUBJECT TO PROTECTIVE ORDER**

## REQUEST FOR PRODUCTION NO. 121:

All Documents showing any incremental or variable costs, including any compensation paid to sales representatives on sales made in the United States related to the ████████.

## REQUEST FOR PRODUCTION NO. 122:

All Documents and Communications concerning ARM's advertising, marketing, and sales efforts for licensing ████████, including marketing or sales plans, marketing and advertising budgets and expenses, and any and all internal and external communications regarding ARM's advertising, marketing, and sales efforts.

## REQUEST FOR PRODUCTION NO. 123:

All Documents and Communications concerning ARM's communications with actual and/or prospective customers regarding actual or contemplated future licenses, benefits of the ████████, and/or competing products.

## REQUEST FOR PRODUCTION NO. 124:

All Documents and Communications concerning ARM's weighted average cost of capital ("WACC") or discount rate.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

14

███████████████████ – **SUBJECT TO PROTECTIVE ORDER**

Catherine Nyarady
Erin J. Morgan
Anna R. Gressel
Madalyn G. Vaughn
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Andrea L. D'Ambra
Susana Medeiros
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY  10019
(212) 318-3000

Kira Latham
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX  75201
(214) 855-8000

October 18, 2023

████████████████ – **SUBJECT TO PROTECTIVE ORDER**

## CERTIFICATE OF SERVICE

  I hereby certify that on October 18, 2023, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Anne Shea Gaza, Esquire         *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG, CONAWAY, STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Michael A. Jacobs, Esquire        *VIA ELECTRONIC MAIL*
Joyce Liou, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Plaintiff*

Erik J. Olson, Esquire          *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Plaintiff*

Scott F. Llewellyn, Esquire        *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202-5638
*Attorneys for Plaintiff*

Ruohan (Jack) Li, Esquire        *VIA ELECTRONIC MAIL*
Daniel P. Muino, Esquire
Fahd Hussein Patel, Esquire
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C.  20037
*Attorneys for Plaintiff*

█████████████ **– SUBJECT TO PROTECTIVE ORDER**

Nicholas Rylan Fung, Esquire                                 *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
*Attorneys for Plaintiff*

Kyle W.K. Mooney, Esquire                                   *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Plaintiff*

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

17

**A095**

# EXHIBIT G

1

13:12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ARM LTD.,                       )
a U.K. corporation,             )
                                )
          Plaintiff,            )
                                ) C.A. No. 22-1146(MN)
v.                              )
                                )
QUALCOMM, INC.,                 )
a Delaware corporation,         )
et al.,                         )
                                )
          Defendants.           )

                    Thursday, March 7, 2024
                    2:13 p.m.
                    Oral Argument


                    844 King Street
                    Wilmington, Delaware


BEFORE:   THE HONORABLE MARYELLEN NOREIKA
          United States District Court Judge



APPEARANCES:


          YOUNG CONAWAY STARGATT & TAYLOR
          BY:  ANNE SHEA GAZA, ESQ.
          BY:  ROBERT M. VRANA, ESQ.

          -and-

          MORRISON FOERSTER, LLP
          BY:  KYLE W.K. MOONEY, ESQ.
          BY:  NICHOLAS R. FUNG, ESQ.
          BY:  DANIEL MACKNIDES, ESQ.

                    Counsel for the Plaintiff

**A097**

2

1    APPEARANCES CONTINUED:

2

3            MORRIS NICHOLS ARSHT & TUNNELL LLP
             BY:  JACK BLUMENFELD, ESQ.

4            -and-

5            PAUL WEISS
             BY:  KAREN L. DUNN, ESQ.
6            BY:  ERIN MORGAN, ESQ.

7                    Counsel for the Defendants

8

9            FISH & RICHARDSON
             BY:  NITIKA GUPTA FIORELLA, ESQ.
10           -and-

11           WALKER STEVENS CANNOM, LLP
12           BY:  HANNAH L. CANNOM, ESQ.

13                   Counsel for Apple, Inc.

14

15           WILSON SONSINI GOODRICH & ROSATI
             BY:  BRAD SORRELS, ESQ.
16                   Counsel for Ampere Computing

17

18

19                - - - - - - - - - - - - -

20
13:37:07
13:37:07 21           THE COURT:  All right.  Good afternoon everyone.

14:13:23 22    Please be seated.

14:13:28 23           Ms. Gaza.

14:13:29 24           MS. GAZA:  Good afternoon, Your Honor.  Anne

14:13:31 25    Gaza on behalf of plaintiff, ARM.  I'm joined today by Kyle

**A098**

43

15:10:37  1  those employees had, we had produced 1.5 million pages of

15:10:42  2  documents --

15:10:43  3          THE COURT:  They had no idea, when they took

15:10:45  4  those depositions, they couldn't say, Mr. Abbey, what did

15:10:48  5  you discuss with the expert?

15:10:50  6          MR. MOONEY:  I agree with that, Your Honor.

15:10:51  7          THE COURT:  Okay.

15:10:52  8          MR. MOONEY:  But Your Honor, that's not unlike

15:10:55  9  --

15:10:55 10          THE COURT:  I think that's what Mr. Blumenfeld

15:10:57 11  was getting at, he's saying I can't have the same

15:11:00 12  discussions with these folks and ask, you know, have my

15:11:04 13  expert ask them questions because fact discovery is over.

15:11:10 14          MR. MOONEY:  It is true, Your Honor --

15:11:11 15          THE COURT:  He can't ask about what they

15:11:14 16  discussed with the expert.

15:11:15 17          MR. MOONEY:  It is true that in this case

15:11:17 18  Qualcomm's -- if I'm following this, Qualcomm's counsel was

15:11:21 19  not able to depose ARM employees after ARM's expert put in

15:11:26 20  reports, that's true.  That's true in every case.  What is

15:11:30 21  also true in this case --

15:11:31 22          THE COURT:  Yeah, but what's not true in every

15:11:33 23  case is every -- my gosh, we have from footnote 196 through

15:11:38 24  at least -- through at least footnote 219, there is nothing

15:11:43 25  else other than discussion, or maybe a deposition.

**A099**

44

15:11:49  1                    MR. MOONEY:  I agree with Your Honor that

15:11:51  2      Mr. Schoettelkotte in particular had many discussions with

15:11:54  3      our employees and this is a heavily footnoted report.  Those

15:11:58  4      are not the only sources Mr. Schoettelkotte relied on by any

15:12:02  5      means.

15:12:02  6                    THE COURT:  It is the only source in what I

15:12:04  7      have.

15:12:04  8                    MR. MOONEY:  It is the only source in the four

15:12:06  9      pages that Your Honor has been handed from the report,

15:12:09 10      Mr. Schoettelkotte has a schedule of information that was

15:12:11 11      relied on that includes many thousands of documents in the

15:12:14 12      case, many thousands of transcripts and exhibits in addition

15:12:18 13      --

15:12:18 14                    THE COURT:  So let's say -- and I'll give the

15:12:23 15      third parties a chance to weigh in on this, too, tell me

15:12:29 16      about the confidentiality.  We have a protective order, we

15:12:33 17      have an outside counsel only provision.  To say that this

15:12:38 18      stuff is at risk of all of the comments were sort of generic

15:12:44 19      saying this is going to give Qualcomm a competitive

15:12:47 20      advantage.  The way it gives Qualcomm a competitive

15:12:50 21      advantage is if the information is given to outside counsel

15:12:54 22      and outside counsel gives it to Qualcomm, which is quite an

15:13:02 23      accusation.

15:13:03 24                    So why is the protective order not sufficient?

15:13:07 25                    MR. MOONEY:  Well, as Your Honor knows, the law

**A100**

45

15:13:10  1    is clear that the protective order isn't sufficient to

15:13:13  2    require parties to produce information that's not relevant

15:13:16  3    in the case.

15:13:17  4            THE COURT:  Let's say I'm not convinced that

15:13:19  5    it's not relevant.

15:13:20  6            MR. MOONEY:  Your Honor is right, we are not

15:13:21  7    suggesting that Qualcomm outside counsel is going to

15:13:25  8    deliberately disclose this information to anybody, that's

15:13:28  9    not the concern.  The concern is that this is highly

15:13:30 10    confidential competitive information that goes to the very

15:13:34 11    core of our business and to the very core of our

15:13:38 12    competitor's business and this is information that could be

15:13:40 13    misused by our competitors and our customers.  And that any

15:13:45 14    risk that this information is inadvertently specifically or

15:13:50 15    generally used or disclosed by any counsel or anyone else

15:13:54 16    involved in the case who might have access to this

15:13:56 17    information under the protective order, which certainly

15:14:00 18    isn't just counsel sitting at the table is enough of a risk

15:14:03 19    that we worked very carefully with our customers, Apple

15:14:08 20    here, to remove as many --

15:14:11 21            THE COURT:  You haven't worked at all with

15:14:12 22    anyone on the 2023 Apple agreement, that's just a big fat

15:14:17 23    no, right?  You don't even have the first page of it that

15:14:20 24    says agreement.

15:14:21 25            MR. MOONEY:  It is true that the Apple agreement

15:14:24  1    2023 has not been produced and on that, I would let Apple

15:14:29  2    speak further.

15:14:29  3            If you have any other further questions for me,

15:14:32  4    I'm happy to address them.

15:14:34  5            THE COURT:  All right.  Apple.

15:14:37  6            MS. CANNOM:  Thank you, Your Honor.  Hannah

15:14:40  7    Cannom on behalf of Apple, Inc.  A couple of points that I

15:14:43  8    think we need to look at.  First of all, it's from Judge

15:14:46  9    Hatcher's order where she says that balancing the minimal

15:14:50 10    relevance when combined with the harm of disclosure --

15:14:53 11            THE COURT:  I might think it's a little bit more

15:14:55 12    relevant than she does.

15:14:58 13            MS. CANNOM:  What she then goes on to say it

15:15:01 14    will necessarily need to generate generalized information

15:15:03 15    from the ARM clients.  This is different than a source code

15:15:05 16    situation where the source code is in a room and what we're

15:15:07 17    worried about is inadvertent disclosure of large swaths of

15:15:11 18    code.  Here we have information that once it's heard --

15:15:15 19            THE COURT:  Tell me what exactly that means,

15:15:18 20    necessarily -- I don't know why that is, so why is it

15:15:23 21    different than you have source code and you say we can't

15:15:30 22    make out an infringement case because, you know, the source

15:15:34 23    code doesn't have this, or we can make out an infringement

15:15:38 24    case so that, therefore, they are, you know, confirming that

15:15:41 25    the source code shows that something works.  Why -- like,

**A102**

15:15:45 1   why is that different from this?  Why do you think that if

15:15:52 2   someone, outside counsel for Qualcomm gets it, like what is

15:15:56 3   -- give me an example, what necessarily would they have to

15:15:59 4   disclose that's so -- that's so secret that it would be

15:16:04 5   harmful.

15:16:05 6          MS. CANNOM:  Right.  So speaking generally about

15:16:06 7   the termination provision, if they were entitled to see the

15:16:10 8   termination provision, then they would have to tell their

15:16:15 9   client whether the termination provision was similar or

15:16:17 10  different and that's why that mattered to the specific issue

15:16:20 11  here.

15:16:21 12         There are also other, you know, certain

15:16:23 13  licensing terms --

15:16:25 14         THE COURT:  Well, I mean the termination

15:16:26 15  provision, that wasn't even something -- that was redacted

15:16:29 16  in the Google one, so I'm not sure why I understand that's

15:16:33 17  so secretive.

15:16:35 18         MS. CANNOM:  And Apple's position is that

15:16:38 19  everything that's within the 2023 ALA is very highly

15:16:41 20  protected even within Apple.

15:16:44 21         THE COURT:  That assumes a bit much to me.

15:16:47 22  You're telling me the very first words that say this ALA

15:16:51 23  between Apple and ARM, that's super secret.  Come on, right

15:16:54 24  then you're losing a little bit of credibility because

15:16:57 25  you're not even -- I mean, that's not -- let's put it this

15:28:43   1    to make a damages claim on the counterclaim that was

15:28:45   2    permitted yesterday.  I can't tell you that I have thought

15:28:48   3    through how does this work between your role and --

15:28:52   4            THE COURT:  Because I'm trying to figure out if

15:28:54   5    we need to address this now or if we -- I mean, because

15:29:00   6    where I am getting confused is I don't really understand the

15:29:04   7    arguments that they are going to be making and whether or

15:29:07   8    not you need to see additional information other than what's

15:29:12   9    been provided for these agreements.

15:29:17  10            MR. BLUMENFELD:  You know, it's hard for me to

15:29:20  11    answer that question, Your Honor, because we heard about oh,

15:29:24  12    nothing is relevant here and we're not going to rely on it.

15:29:27  13    Maybe they're not going to rely on it.  If we saw it, maybe

15:29:31  14    we would want to rely on it.  Without knowing what it is,

15:29:34  15    for example, the Apple rates, I mean, I don't know whether

15:29:39  16    that's something we want to rely on even on the irreparable

15:29:43  17    harm, or whether somehow it's going to play into a damages

15:29:48  18    claim that we haven't seen yet.  But that's what's so hard

15:29:53  19    about this is that, you know, we're getting partial

15:29:57  20    agreements which they're putting in because they're

15:30:00  21    injecting issues into this case but then saying, you can't

15:30:04  22    see the parts that have to do with rates and licenses and --

15:30:09  23            THE COURT:  Do you need to see the parts that

15:30:11  24    deal with products?  I mean, Apple's counsel said they deal

15:30:14  25    with -- their agreements deal with unannounced products.

**A104**

15:30:17  1    You don't need to see that, do you?

15:30:20  2            MR. BLUMENFELD:  We probably don't need to see

15:30:23  3    parts on unannounced products.  The concern I had with

15:30:27  4    Apple's presentation is I got the feeling if they produced

15:30:30  5    their agreement or if ARM produces that agreement because

15:30:33  6    Your Honor tells them to, we're going to be back here

15:30:35  7    talking about redactions again because we're going to get an

15:30:39  8    agreement that doesn't have the license terms.

15:30:41  9            THE COURT:  I get it, they won't even let you

15:30:44 10    see how many pages it is.

15:30:46 11            MR. BLUMENFELD:  We have spent so much time on

15:30:49 12    this.  I mean, we were before Judge Hatcher a couple of

15:30:52 13    times and we had eight meet and confers in between, and you

15:30:56 14    know, we did make a little bit of progress, but I think

15:30:59 15    we're at a point where we're just saying look, now you're

15:31:03 16    giving us expert reports referring to the agreements kind of

15:31:06 17    generically and the terms kind of generically, and by the

15:31:10 18    way, talking to their employees, we had some depositions

15:31:13 19    where we asked their employees about what some of the

15:31:15 20    redactions were and they wouldn't answer.  And so --

15:31:19 21            THE COURT:  Did you get a log like Judge Hatcher

15:31:22 22    told them to give you?

15:31:23 23            MR. BLUMENFELD:  They did give us a redaction

15:31:25 24    log.  That's what the eight phone calls, eight meet and

15:31:28 25    confer calls were about.  And we did make some progress.

**A105**

58

15:31:32  1    And Mr. Sorrels is right, we made some progress, but we

15:31:36  2    didn't get the royalty terms, the license terms, things of

15:31:43  3    that nature.

15:31:44  4            THE COURT:  All right.  I'm just trying to

15:31:46  5    figure out why the royalty terms and license terms would be

15:31:49  6    relevant before a period of -- you think you would rely on

15:31:53  7    their royalty terms or license terms for your damages claim?

15:31:57  8            MR. BLUMENFELD:  I don't know if we will or not,

15:31:59  9    but we may well rely on those for the lack of irreparable

15:32:03 10    harm.

15:32:04 11            THE COURT:  But I'm sort of separating that out

15:32:06 12    because it seems to me we don't get to that issue until we

15:32:10 13    have had a jury trial and decide whether there is liability.

15:32:13 14    So I'm trying to figure out if we could kick this can down

15:32:20 15    the road, or if you need it now.  Because it turns out that

15:32:25 16    there is liability and they're going to move for a permanent

15:32:28 17    injunction, it may be that, you know, that will be, I don't

15:32:34 18    know, at least months from now, maybe a year from now before

15:32:37 19    that happens, things may have changed, there may be

15:32:40 20    different arguments being made, there is going to be

15:32:43 21    additional briefing and at some point I will actually

15:32:46 22    understand what the relevance is of this stuff and I can

15:32:52 23    balance it, I can see what arguments are they actually

15:32:55 24    making about the agreements and you can make your arguments.

15:32:58 25    Because I don't know.

**A106**

15:35:45  1    Your Honor.

15:35:45  2                    THE COURT:  Did you ever tell me that?  Is that

15:35:47  3    in the scheduling order?

15:35:49  4                    MR. BLUMENFELD:  No, they demanded a jury.

15:35:50  5                    THE COURT:  Because I have a jury trial.  When

15:35:52  6    did you tell me it was going to be a bench trial?

15:35:56  7                    MR. MOONEY:  I have to look back, Your Honor.  I

15:36:00  8    don't have that at my fingertips, I'm sorry.

15:36:02  9                    THE COURT:  Do you think you ever did?

15:36:25 10                    MR. MOONEY:  I'm taking a look, Your Honor.  I

15:36:27 11    don't know the answer to that.  It could have been a delay

15:36:29 12    in the products being released has caused --

15:36:33 13                    THE COURT:  So the answer is no.  But you're

15:37:00 14    going -- are you asking for a jury?

15:37:03 15                    MR. BLUMENFELD:  I expect that we are going to

15:37:04 16    ask for a jury on our counterclaims.  We always thought

15:37:08 17    until about two days ago that this was going to be a jury

15:37:11 18    trial and then ARM's lawyers said something before Judge

15:37:19 19    Hatcher the other day suggesting that they didn't see it

15:37:21 20    that way.

15:37:27 21                    MR. MOONEY:  Our understanding, Your Honor, that

15:37:29 22    the only claim in the case right now --

15:37:32 23                    THE COURT:  I'm just looking at the scheduling

15:37:34 24    order that you guys proposed to me which talks about a

15:37:38 25    five-day jury trial.  So if you changed your mind, it would

**A107**

15:37:44  1    have been nice to have a little bit of a notice, especially

15:37:48  2    when you know we're talking about trial dates.

15:37:52  3                 MR. BLUMENFELD:  And I'm not sure, Your Honor,

15:37:55  4    that they're permitted to withdraw a jury demand without our

15:37:59  5    consent at this point.  It's not something we've ever

15:38:04  6    discussed.

15:38:05  7                 MR. MOONEY:  I understand that the bench trial

15:38:07  8    did come up before Judge Hatcher, Your Honor.  I don't know

15:38:12  9    how long ago that was.

15:38:13 10                 THE COURT:  That's really not relevant to me.

15:38:22 11    So I am going to overrule the objections for right now.  I

15:38:28 12    think we need to understand -- assuming this were to go to a

15:38:33 13    jury trial, I think I could address -- I could allow you to

15:38:44 14    raise this again once I understand the arguments being made

15:38:51 15    as to irreparable harm.

15:38:54 16                 If it's going to be a bench trial, then I need

15:39:00 17    to think about it a little bit more.  And it may be that we

15:39:04 18    just phase the bench trial so that I can understand what the

15:39:09 19    arguments are.  Because my problem is right now I can see

15:39:13 20    relevance, but I can't make a determination that the

15:39:16 21    relevance is enough to overcome some valid -- I think

15:39:22 22    Apple's 2023 agreement is not credible because saying you

15:39:28 23    can't produce it at all is just not even trying.  But I

15:39:34 24    can't say that they don't have valid concerns on the

15:39:39 25    confidentiality aspects.  And I'm sorry, I forgot the other

**A108**

15:39:43  1    company.

15:39:45  2              MR. SORRELS:  Ampere, Your Honor.

15:39:46  3              THE COURT:  Ampere, I think those concerns

15:39:48  4    were -- at least they were specific concerns.

15:39:50  5              So I am not ready to argue -- I'm not ready to

15:39:57  6    rule that the relevance, that Judge Hatcher got it clearly

15:40:00  7    wrong when she weighed the relevance and the harm.

15:40:04  8              But I am also not clear that there is going to

15:40:10  9    be arguments made where it would be unfair for the defendant

15:40:12 10    to be able to defend itself.

15:40:14 11              So I am going to make that ruling without

15:40:20 12    prejudice.  If it turns out that you make a specific showing

15:40:26 13    of what you would need to respond to something or to make an

15:40:28 14    argument, you can come back and just remind us.  And that it

15:40:34 15    should not go to Judge Hatcher, that it should come to me.

15:40:38 16              MR. BLUMENFELD:  Thank you, Your Honor.

15:40:39 17              THE COURT:  Okay.  And you guys need to talk

15:40:41 18    about the trial and can you guys do that and in the next two

15:40:46 19    weeks get back to us on your positions as to jury, bench and

15:40:51 20    whether they can withdraw it at this point?

15:40:53 21              Okay.  So now we have to talk about the trial

15:40:56 22    schedule.  I don't remember when the trial was scheduled.

15:41:31 23    September.

15:41:36 24              MS. DUNN:  I believe September 23rd.

15:41:38 25              THE COURT:  There it is.  September 23rd.  Okay.

**A109**

67

15:47:21  1   agreements that we'll then have to address that as well

15:47:24  2   before defendant would have to respond.

15:47:28  3           MR. MOONEY:  Understood, Your Honor.

15:47:30  4           THE COURT:  All right.  Anything else?

15:47:32  5           MS. DUNN:  No, Your Honor.  Thank you.

15:47:34  6           THE COURT:  Get us times with those trials in

15:47:37  7   the next week because otherwise, the dates that I offered

15:47:42  8   may not hold any longer.

15:47:46  9           All right.  Have a good rest of the week.

15:47:50 10           COURT CLERK:  All rise.  Court is adjourned.

         11           (Court adjourned at 3:47 p.m.)

         12

         13           I hereby certify the foregoing is a true and
              accurate transcript from my stenographic notes in the proceeding.

         14

         15                      /s/ Dale C. Hawkins
                                Official Court Reporter
         16                       U.S. District Court

         17

         18

         19

         20

         21

         22

         23

         24

         25

**A110**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED, a
Delaware corporation, and
QUALCOMM TECHNOLOGIES, INC., a
Delaware corporation,

                        Plaintiffs,

        v.                                            C.A. No. 24-490 MN

ARM HOLDING PLC., f/k/a ARM LTD., a
U.K. corporation,

                        Defendant.

## NONPARTY ANALOG DEVICES, INC.'S MOTION FOR PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26 and Paragraphs 51-52 of the Stipulated

Protective Order (D.I. 84), nonparty Analog Devices, Inc. hereby moves for a protective order to

maintain its highly sensitive commercial information.  The grounds for this motion will be set forth

in an opening letter brief submitted to the Special Master.[1]

Dated: September 11, 2025            **K&L GATES LLP**

                                    */s/ Matthew B. Goeller*
                                    Matthew B. Goeller (No. 6283)
                                    600 N. King Street, Suite 901
                                    Wilmington, DE 19801
                                    Phone: (302) 416-7000
                                    matthew.goeller@klgates.com

                                    *Attorney for Nonparty Analog Devices, Inc.*

---

[1] Counsel for Analog Devices was just retained on this matter and has reached out to counsel for plaintiffs and defendant seeking an extension of the deadline to submit the letter brief to the Special Master. As of this filing, counsel for defendant does not oppose an extension and discussions with plaintiffs' counsel are ongoing.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> ARM HOLDING PLC., f/k/a ARM LTD., a U.K. corporation, <br><br> Defendant. | C.A. No. 24-490 MN |

**[PROPOSED] ORDER GRANTING**
**NONPARTY ANALOG DEVICES, INC.'S MOTION FOR PROTECTIVE ORDER**

IT IS HEREBY ORDERED, this _____ day of _____, 20___ that Nonparty Analog Devices, Inc.'s ("ADI") Motion for Protective Order is **GRANTED**.

IT IS FURTHER ORDERED that Defendant Arm Holdings PLC., f/k/a Arm Ltd. ("Arm") shall not produce or otherwise disclose to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. ("Qualcomm"): (i) ADI's Technology License Agreement with Arm ("TLA"), (ii) the Arm Total Access Agreement between ADI and Arm ("ATA"), (iii) ADI's Royalty Pricing Agreement ("RPA"), or (iv) communications and documents (including but not limited to Package Order Forms) concerning or reflecting Arm's conduct and performance under the TLA, ATA, or RPA with ADI.

_____
The Honorable Maryellen Noreika
United States District Judge

**A112**



*Contains* █████████████

September 16, 2025

Matthew B. Goeller
matthew.goeller@klgates.com

T +1 302 416 7082

**Via Email**

Special Master Helena C. Rychlicki
2 Mill Road, Suite 204
Wilmington, DE 19806
hrychlicki@pwujlaw.com

*Re:*    *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holding PLC., f/k/a Arm Ltd.,
C.A. No. 24-490-MN*

**Letter Brief in Support of
Nonparty Analog Devices, Inc.'s Motion for Protective Order**

K&L GATES LLP
600 N. KING STREET   SUITE 901   WILMINGTON   DE 19801
T +1 302 416 7000  F +1 302 416 7020  klgates.com

**A113**

**Contains** ██████████

Dear Special Master Rychlicki:

Nonparty Analog Devices, Inc. ("ADI") moves for a protective order preventing Defendant Arm Holding PLC ("Arm") from producing certain information in response to discovery requests from Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. ("Qualcomm"), which seek highly confidential ADI business information irrelevant to its dispute.

Arm recently notified ADI that Qualcomm had propounded discovery requests directed at Arm's business relationship with ADI, including unredacted copies of a Technology License Agreement ("TLA"), ARM Total Access Agreement ("ATA"), and Royalty Pricing Agreement ("RPA") between ADI and Arm, along with amendments, exhibits, annexes, and order forms related to the same (the "ADI Contracts").[1]  ADI understands Qualcomm has moved to compel production of the ADI Contracts over Arm's objections and that Arm intends to produce such documents to resolve Qualcomm's motion.  ADI filed its Motion for Protective Order (Dkt. 390) with the Court on September 11, 2025.

The Special Master should enter a protective order prohibiting Arm from producing confidential information relating to Arm's relationship with ADI, including the ADI Contracts, or in the alternative order Qualcomm to confer with counsel for ADI on reasonable redactions to such documents, for at least two reasons:

*First*, the information sought by Qualcomm and which Arm intends to produce is irrelevant to Qualcomm's claims against Arm, and its disclosure serves no legitimate purpose.

*Second*, the substantial risk of competitive harm to ADI if the disclosure is made far outweighs any purported need for the information.

## I.    BACKGROUND

ADI is a global semiconductor leader, specializing in innovative analog, digital, and software solutions.  Vasiliadis Decl. ¶ 3 (attached hereto as **Exhibit 1**).  As part of its business, ADI has long-standing agreements with Arm to license certain Arm technology.  These agreements are highly negotiated and contain terms unique to ADI and sensitive information about ADI's business model.  *Id.* ¶ 4.  Qualcomm, a direct competitor of ADI (*id.* ¶ 3), also contracts with Arm for technology that Qualcomm integrates into its products.  *See, e.g.*, Dkt. 6 ¶ 5.



Vasiliadis Decl. ¶ 4.  The agreement terms were heavily negotiated under highly confidential conditions.  *Id.*

*Id.* ¶ 9.

*Id.*

---

[1] The TLA is the primary contract.  The ATA and RPA are supplemental agreements.

2

September 16, 2025

**A114**



The top, center of every page of the TLA, ATA, and RPA is conspicuously marked as "Confidential." *Id.* ¶ 8.

On or around August 21, 2025, Arm sent ADI a letter notifying ADI that, in response to Qualcomm discovery requests, Arm "intends to produce to Qualcomm confidential information relating to Arm's relationship with Analog Devices, including copies of the unredacted TLA, ATA, and RPA, between Arm and Analog Devices, and amendments, exhibits, and annexes thereto." *See* **Exhibit 2**. ADI objects to the production.

## II.    ARGUMENT

Rule 26(b)(1) limits discovery to non-privileged information that is relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The party seeking discovery bears the burden of establishing relevance. *See Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, 2017 WL 4310221, at *4 (M.D. Pa. Sept. 28, 2017). The existence of a protective order has no impact on the relevance or need for discovery. Rather, a protective order's purpose is to "prevent harm by limiting disclosure of *relevant* and *necessary* information." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990) (emphasis in original).

Rule 26 limits the scope of discovery by providing that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by "requiring that a trade secret or other confidential research, development, or *commercial information* not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G) (emphasis added). "[G]ood cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984). "[A] court may issue a protective order restricting disclosure of discovery materials to protect a party from being put at a competitive disadvantage."

September 16, 2025

**A115**

**Contains** ███████████████████

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 890 (E.D. Pa. 1981); *see also United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 158–62 (D. Del. 1999) (granting protective order shielding nonparty's confidential information from discovery by competitor's in-house attorney).  In determining whether good cause exists, courts consider whether the movant has "show[n] that, absent the protective order, it will suffer a clearly defined and serious injury … balancing relevance, need, confidentiality, and harm."  *See* Oral Order on Motion, *ARM Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146 (MN) (D. Del. Nov. 27, 2023) (Dkt. 207) (the "NUVIA litigation").  Indeed, "even if the information sought is relevant, discovery is not allowed where no need is shown … or where the potential harm caused by production outweighs the benefit." *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002).

Arm should be barred from disclosing ADI's competitively sensitive information contained within the ADI Contracts because: (1) the information Qualcomm seeks is not relevant to its claims against Arm; and (2) even if the ADI Contracts information was relevant, any need for that information is far outweighed by the harm ADI would suffer in having its confidential information disclosed to its direct competitor Qualcomm.

**A.    The Information Qualcomm Seeks Is Irrelevant.**

The ADI confidential information Qualcomm seeks, and Arm intends to produce, is irrelevant to Qualcomm's underlying dispute, and will not lead to the discovery of admissible evidence. Qualcomm's claims against Arm are based on alleged breaches of <u>*Qualcomm's*</u> licensing agreement with Arm, for failure to deliver technology it owed to Qualcomm.  *See generally* Compl. The TLA, ATA, and RPA between Arm <u>*and ADI*</u> are not relevant to Qualcomm's claims, nor are they likely to lead to the discovery of admissible evidence.  Put simply, Arm's obligations and conduct with respect to third parties, including ADI, has no bearing on Arm's obligations and conduct towards Qualcomm.  *See, e.g.*, *AdTrader, Inc. v. Google LLC*, 2021 WL 937559, at *2 (N.D. Cal. Mar. 12, 2021) (holding that Google's policies with respect to nonparty advertisers were not discoverable and not relevant to its performance or compliance with obligations owed to plaintiff advertisers under separate contracts).

Qualcomm has only identified a single specific reason why it believes the ADI Contracts are relevant.  During a September 15, 2025, teleconference, Qualcomm explained to ADI's counsel that the license agreement between Qualcomm and Arm contains a ████████████ ███████, and that this provision states ███████████████████████████████ ████████████████████████████████████ [2]  Notably, Qualcomm confirmed that Arm has stated in discovery that ADI's license agreement with Arm ███████ █████████████████████  As such, the ADI Contracts have no relevance as to whether Arm breached the ███████████████ provision in the agreement with Qualcomm.



---

[2] Neither the license agreement nor any of its language, including the purported ████████ █████████████ has been provided to ADI.

September 16, 2025

**Contains** ████████████

While Qualcomm asserts concern about the accuracy of Arm's discovery response, it has provided no facts calling into question Arm's discovery response, and its speculation is not a sufficient basis for requiring the production of non-party ADI's highly confidential commercial information. *See, e.g.*, *Torre v. Charter Commc'ns, Inc.*, No. 19-CV-5708 (JMF), 2020 WL 7705940, at *1 (S.D.N.Y. Dec. 28, 2020) ("speculation is not a basis to look first to a non-party").

Because Qualcomm cannot meet its burden of demonstrating relevance, ADI's motion should be granted. *See Mannington Mills*, 206 F.R.D. at 530–32 (quashing subpoena to nonparty on relevance grounds).

**B.    The Discovery Qualcomm Seeks Poses a Substantial Risk of Competitive Harm to ADI.**

In addition to the lack of relevance, the potential harm to ADI far outweighs any purported benefit to Qualcomm and is a separate and sufficient basis to enter ADI's requested protective order. *See Mannington Mills*, 206 F.R.D. at 529 ("[E]ven if the information sought is relevant, discovery is not allowed where no need is shown … or where the potential harm caused by production outweighs the benefit").

The information sought by Qualcomm is undoubtedly competitively sensitive and should not be disclosed to ADI's competitors. Tellingly, Qualcomm itself redacted similar information from its complaint, and refuses to share the specific details of its Arm agreements with its competitors, including ADI. *See, e.g.*, Compl. ¶ 40; Am. Compl. ¶¶ 63–67.[3]  The pricing structure, royalties, and related terms sought to be produced in unredacted form are ADI trade secrets. *See, e.g.*, *Am. Totalisator Co. v. Autotote Ltd.*, 1983 WL 21374, at *3 (Del. Ch. Aug. 18, 1983) ("information on prices and costs" constitutes a trade secret); *see also Syngenta Crop Prot., LLC v. Willowood, LLC*, 2016 WL 4925099, at *3 (D. Del. Sept. 14, 2016) (a trade secret is information that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use' and is subject to reasonable efforts 'to maintain its secrecy'") (quoting 6 Del. C. § 2001 (4)(a)–(b)).  Even if the at-issue ADI information did not qualify for trade secret protection, it is still highly sensitive, confidential commercial information that is not publicly available and heavily restricted within ADI. *See* Vasiliadis Decl. ¶¶ 5, 6, 9.

Disclosure of ADI's trade secrets and confidential information poses a serious risk of injury to ADI. If Qualcomm were permitted to access such information, even inadvertently, Qualcomm could reverse engineer pricing levels that ADI must achieve to remain profitable. *See id.* ¶ 10.  This competitive harm to ADI cannot be remedied through a protective order that limits disclosure of the ADI Contracts to an "attorneys' eyes only" basis.  As the court in the related NUVIA Litigation concluded, there is a "harm of disclosure given that Qualcomm's outside counsel will necessarily need to communicate generalized information about the ALA to its client, all of which remains true

---

[3] Qualcomm's Second Amended Complaint, which is the operative complaint at this stage, is completely under seal and no redacted version is available.

September 16, 2025

**Contains** ████████████████

even given the Protective Order in this case." Oral Order on Motion, NUVIA Litigation, (Dkt. 207) (citation omitted). The same concerns exist here—Qualcomm's outside counsel will need to confer with Qualcomm about the information and documents it receives related to ADI. *See also Mannington Mills*, 206 F.R.D. at 530–32 (rejecting argument that existence of attorney's-eyes only clause in protective order prevented nonparty competitor from showing that disclosure of its confidential information would be harmful); *Amgen Inc. v. Samsung Bioepis Co.*, No. CV 24-8417 (CPO/EAP), 2025 WL 1207594, at *6 (D.N.J. Apr. 24, 2025) ("No less restrictive means are adequate to protect Celltrion's interest. Samsung claims that it seeks production of Celltrion's information on an 'Outside Attorneys' Eyes Only' basis, thus avoiding the speculated harm. Given that Amgen, Celltrion, and Samsung are all direct competitors, however, [i]t would be divorced from reality to believe that either party here would serve as the champion of its competitor ... either to maintain the confidentiality designation or to limit public disclosure as much as possible during trial.") (internal quotation marks omitted). Consistent with ADI's concerns, Qualcomm did not share the content of its Arm contracts with ADI's counsel or any of the specific language contained therein.

Last, the competitive harm to ADI from disclosure is not outweighed by any need for the information and documents Qualcomm seeks. As explained above, the documents Qualcomm seeks are not relevant, much less necessary, to prove Qualcomm's claims.

Because disclosure of the ADI Contracts would cause serious risk of competitive harm to non-party ADI, and that harm is not outweighed by any substantial, legitimate need of the parties, entry of a protective order is justified.

## III.    CONCLUSION

For the foregoing reasons, ADI respectfully requests that the Special Master issue a protective order prohibiting Arm from producing or otherwise disclosing to Qualcomm the ADI Contracts. To the extent the Special Master is inclined to order production, ADI respectfully requests that the Special Master order Qualcomm to meet and confer with ADI directly about a proper scope of discovery and provide ADI an opportunity to seek a compromise solution regarding redactions to any ADI Contracts to be provided to Qualcomm.

Respectfully submitted,

*/s/ Matthew B. Goeller*

Matthew B. Goeller (No. 6283)

Words: 2,291 / 2,400

6

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED, a
Delaware corporation, and
QUALCOMM TECHNOLOGIES, INC., a
Delaware corporation,

                Plaintiffs,

     v.

ARM HOLDING PLC., f/k/a ARM LTD., a
U.K. corporation,

                Defendant.

C.A. No. 24-490 (MN)

### DECLARATION OF DIMITRI VASILIADIS IN SUPPORT OF NONPARTY ANALOG DEVICES, INC.'S MOTION FOR PROTECTIVE ORDER

I, Dimitri Vasiliadis, declare as follows:

      1.     I am over the age of 18 and am Manager of Financial Planning and Analysis of Analog Devices, Inc. ("ADI"), where I review financial results and maintain the operations of finance for the businesses within ADI. If called as a witness, I could and would testify to the information set forth in this Declaration.

      2.     I make this Declaration in support of Non-Party ADI's Motion for a Protective Order. I am familiar with and have reviewed the Technology Licensing Agreement ("TLA"), ARM Total Access Agreement ("ATA"), and Royalty Pricing Agreement ("RPA") between ADI and Arm, as well as the amendments and supplements thereto (the "ADI Contracts"). I am also familiar with the negotiation of these agreements and the parties' relationship under the TLA, ATA, and RPA.

**A120**

3.      ADI is a global semiconductor leader, specializing in innovative analog, digital, and software solutions.  Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (together "Qualcomm") directly compete with ADI in the semiconductor space.  Both ADI and Qualcomm have entered agreements with Arm to license certain technology to use in the semiconductor chips they design and market.

4.      I understand that Qualcomm has served discovery requests seeking disclosure of the ADI Contracts and related order forms.   I also understand that Arm intends to produce these documents in unredacted form.

5.      ██████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████

6.      Because of the sensitivity of the information in the ADI Contracts, the information is governed by detailed confidentiality provisions.  ████████████████████████
██████████████████████████████████████████████████
██████

████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████

█  ██████████████████████████████████████

██████████████████████



8.    The top, center of each page of the ADI Contracts is conspicuously marked as "Confidential."

9.    

10.    ADI would suffer significant competitive injury if the unredacted ADI Contracts were produced to Qualcomm.  Learning when and how much ADI pays Arm to license its technology would give Qualcomm significant insight into ADI's own pricing decisions for products that compete with Qualcomm.

11.    Finally, ADI does not have access to Qualcomm's licensing agreements with Arm. It is my understanding that Qualcomm has redacted the same information it now seeks to obtain from ADI in recognition of the competitively sensitive nature of such information.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16 th day of September, 2025, in Wilmington, MA.

Dimitri Vasiliadis

Manager of Financial Planning and Analy

# Exhibit 2



21 August 2025

Analog Devices, Inc.
Attn: Janene Asgeirsson, Chief Legal Officer
One Analog Way
Wilmington, MA 01887

Analog Devices, Inc.
Attn: Engineering Enablement
One Analog Way
Wilmington, MA 01887

**Arm Ltd**
5707 Southwest Pkwy
Bld 1 Suite 100
Austin, TX 78735

T +1 (973) 896-8902
arm.com

Dear Ms. Asgeirsson:

I write on behalf of Arm Ltd. ("Arm") regarding discovery requests from Qualcomm seeking confidential information relating to the Technology License Agreement ("TLA"), ARM Total Access Agreement ("ATA"), and Royalty Pricing Agreement ("RPA") between Analog Devices, Inc. ("Analog Devices") and Arm.

Arm has received discovery requests in *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holdings plc.*, Case No. 24-490 (MN) (D. Del.), directed to Arm's business relationships with Analog Devices, including requests for unredacted copies of Arm's TLA, ATA, and RPA with Analog Devices, and Qualcomm has moved to compel Arm's production of such materials.

Arm hereby provides notice under the relevant agreements that it intends to produce to Qualcomm confidential information relating to Arm's relationship with Analog Devices, including copies of the unredacted TLA, ATA, and RPA between Arm and Analog Devices, and amendments, exhibits, and annexes thereto, consistent with Arm's discovery obligations under the Court's Scheduling Order, applicable Local Rules, and relevant federal law.

Arm's production of any such documents will be designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the protective order entered in the Litigation, a copy of which is attached. Plaintiffs in this matter are represented by the law firms of Dunn Isaacson Rhee LLP, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Morris, Nichols, Arsht & Tunnell LLP, and potentially other firms that may enter appearances at a later date.

Please note that the protective order and ESI order entered in the Litigation do not contain provisions allowing Arm to redact third-party information absent court order. Please let us know as soon as possible if Analog Devices: (a) objects to the unredacted production of these documents; and (b) intends to seek relief from the Court under paragraphs 51 and 52 of the protective order. If Arm does not receive notice by September 12, 2025 of Analog Devices' intent to seek a protective order or other relief from the court, then Arm intends to produce the above-mentioned documents in unredacted form to Qualcomm. Moreover, we request that you let us know as soon as possible because Arm may be forced to produce such documents prior to September 12, 2025 if the Court orders immediate production in response to Qualcomm's motion to compel.

Please contact me at phillip.price@arm.com or (973) 896-8902 if you have any questions.

Sincerely,

Phillip Price
Senior Director and Head of Litigation

**A125**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,          )
   a Delaware corporation; and          )
QUALCOMM TECHNOLOGIES, INC.,    )
   a Delaware corporation,          )
                                )
               Plaintiffs,          )          C.A. No. 24-490 (MN)
                                )
      v.          )
                                )
ARM HOLDINGS PLC., f/k/a ARM LTD.,    )
   a U.K. corporation,          )
                                )
          Defendant.          )

**PLAINTIFFS' LETTER BRIEF IN OPPOSITION TO ANALOG DEVICES, INC.'S
MOTION FOR A PROTECTIVE ORDER**

OF COUNSEL:

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Jennifer N. Hartley
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007
(202) 240-2900

September 23, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Dear Special Master Rychlicki:

Qualcomm submits this letter in opposition to Analog Devices, Inc.'s ("ADI") Motion for a Protective Order seeking to prevent production of its agreements with Arm governing its licensing of Arm off-the-shelf CPUs and related IP. D.I. 390. ADI recycles the same arguments that Qualcomm has already addressed—six times now—in response to other third-party motions. As Your Honor is aware, the Qualcomm TLA contains a ███████████████ provision with respect to Arm CPUs that ████████████████████████████████████████

████. Further, in the last few weeks, Qualcomm has learned that Arm failed to produce agreements with (at least) twenty other third parties with licenses to the relevant cores during fact discovery. Notably, Qualcomm's ongoing review of the recently-produced agreements identified at least three agreements that include ███████████████████████████████████████████████████████████████████████████████████████. *See infra* n.3. Production of *all* third-party licenses to the relevant cores is thus necessary ████████████████████████████████████████████████████████████████████████. In the face of the overwhelming relevance of these agreements, ADI has failed to offer any non-speculative reason why the Protective Order (D.I. 84) is not sufficient to safeguard any confidential information in the agreements. Thus, ADI has not established good cause for a protective order.

### I.    Factual Background

Arm develops and licenses technology for CPUs compatible with its instruction-set architecture—instructions that allow hardware to interface with Arm-compliant software. D.I. 137 ¶ 46. Arm has historically offered two types of licenses: Architecture License Agreements ("ALAs") and Technology License Agreements ("TLAs"). *Id.* ¶ 43. A TLA grants the licensee the right to license from Arm and use Arm-designed CPUs or other Arm-designed IP in a System on-a-Chip ("SoCs"). *Id.* ¶ 51. An ALA grants the licensee the right to commercialize products with a custom CPU that the licensee designs itself. *Id.* ¶¶ 44–50. Qualcomm develops microprocessors and SoCs and has both an ALA and a TLA. *Id.* ¶ 3.

This litigation arises from Arm's conduct under the Qualcomm ALA and TLA and Arm's tortious interference and unfair competition. Qualcomm's claims include that Arm breached the Qualcomm ALA by failing to provide certain deliverables that Arm is required to give to Qualcomm (the "ALA Deliverables"). D.I. 137 ¶¶ 12–19, 78–94. Relevant to this motion, Qualcomm also alleges that Arm breached the Qualcomm TLA and the implied covenant of good faith by providing licensing quotes for certain Arm CPUs and peripheral IP at prices that are either ████████████████████████████████████████████████████████ or are otherwise not commercially reasonable. *Id.* ¶¶ 20–28, 102–120, 181–188, 213–226.

Since January, Qualcomm has sought production of third-party agreements and communications relevant to these claims. *E.g.*, Ex. 1 RFPs 34, 40. *See also, e.g.*, Ex. 2 RFP 58; Ex. 3 RFPs 123, 124. Despite these requests—and Arm's representations that it had produced the relevant agreements for third parties that did not move for a protective order, *see* 2025.09.15 Letter from Qualcomm to Special Master Rychlicki—Arm did not notify ADI of its intent to produce the

agreements until ***eight months later***, on August 21. ADI Ex. 2.[1]  ADI moved for a protective order on September 11 (D.I. 390) and submitted its letter brief on September 16.  ADI seeks to prevent production of its TLA, Arm Technology Agreement ("ATA") and Royalty Pricing Agreement ("RPA") with Arm.  For the reasons below, ADI's motion should be denied.

## II.    Legal Standard

A court may issue a protective order only upon a showing of good cause. Fed. R. Civ. P. 26(c).  The non-party seeking a protective order must "show good cause by demonstrating a particular need for protection."  *Cipollone* v. *Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."  *Id.* (citing *United States* v. *Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); *see also Signode Indus. Grp, LLC* v. *Polychem, LLC*, C.A. No. 22-519, 2022 WL 3226319 (D. Del. Aug. 10, 2022), D.I. 94 at 1–2 (noting "specificity" requirement for granting protective order).

## III.   The Materials That Qualcomm Seeks are Relevant.

ADI contends that its various agreements with Arm are irrelevant to Qualcomm's claims and are thus not discoverable.  ADI Ltr. at 4–5.  ADI is wrong.  ADI's TLA, ATA, and RPA— each of which govern licensing of Arm-designed CPUs and peripheral IP—are relevant to Qualcomm's claims that Arm breached the Qualcomm TLA and the covenant of good faith and fair dealing in connection with offers that Arm made to Qualcomm for certain Arm-designed CPUs and peripheral IP.  The Qualcomm TLA includes a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ D.I. 137 ¶¶ 104–105.  That provision makes relevant ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Moreover, any third-party agreements governing licenses to the peripheral IP are relevant to Qualcomm's claims that Arm's quote to Qualcomm for those IPs was not commercially reasonable.

ADI's contrary arguments fail.

*First*, ADI contends that its agreements are not relevant because Qualcomm's claims concern "breaches of *Qualcomm's* licensing agreement with Arm, for failure to deliver technology it owed to Qualcomm."  ADI Ltr. at 4.  That argument reflects a misunderstanding of the nature of Qualcomm's claims, as it relies on Qualcomm's separate claim for Arm's breach of the Qualcomm ALA.  As explained above, the terms of ADI's agreements are relevant to Qualcomm's claims for

---

[1] Arm attributes its late notice to Qualcomm's request on July 30th that Arm investigate three other companies that Qualcomm identified from public sources as having licenses to certain CPUs that Qualcomm sought to license from Arm.  2025.09.19 Letter from Arm to Special Master Rychlicki. But Arm's letter does not explain why Arm failed to identify and provide notice to ADI (and other third parties) earlier or why Arm failed to mention the existence of additional third-party agreements (including ADI's) at either of the August hearings before Your Honor.

breach of the TLA and the implied covenant of good faith and fair dealing, and thus any argument based on Qualcomm's ALA claim is misplaced.[2]

     *Second*, ADI contends that the ████████████ provision does not make its agreements relevant because Arm has not identified ADI as ████████████ ADI Ltr. at 4. But Qualcomm need not take Arm's word for it. Qualcomm is entitled to test whether Arm complied with the ████████████ provision, including whether Arm ████████████ *Harmony Biosciences, LLC* v. *Lupin Ltd.*, C.A. No. 23-1286, D.I. 202 (D. Del. Feb. 19, 2025) (finding that the discovery sought by plaintiffs was relevant as "Plaintiffs should be permitted to test [defendant's] representation" regarding the issue in the dispute); *TQ Delta LLC* v. *Time Warner Cable Inc.*, C.A. No. 15-615, D.I. 321, at 8 (D. Del. Sept. 9, 2021) (finding that plaintiff was entitled to discovery "to test [defendant]'s factual assertions about the devices and [its] noninfringement defense"). If litigants were entitled to withhold documents that contradict their preferred view of the facts, discovery would be a meaningless exercise. In any event, agreements with other third parties produced in this litigation have confirmed that Arm's ████████████.[3] Thus, ADI's agreements are relevant and should be produced.

## IV.    ADI Has Not Demonstrated Specific Risks of Harm.

     To establish good cause for a protective order, ADI has the burden to show a "particular need for protection" rather than merely "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Cipollone*, 785 F.2d at 1121. ADI has not satisfied this burden.

     ADI's assertion of harm is entirely hypothetical and non-specific. ADI asserts that it would be harmed "*[i]f* Qualcomm were permitted to access" its agreements because "Qualcomm *could* reverse engineer pricing levels that ADI must achieve to remain profitable." ADI Ltr. at 5. But these hypothetical actions assume that Qualcomm's outside counsel will violate the Protective Order, which permits Arm to designate sensitive information as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," thus limiting access to outside counsel of record and experts while prohibiting access to anyone at Qualcomm (including Qualcomm in-house counsel). D.I. 84 ¶¶ 45–46. This designation provides strong protection from disclosure of ADI's confidential information to Qualcomm. *See* Ex. 4 at 44:14–23 (noting that it was "quite an accusation" to suggest that this designation wouldn't sufficiently protect sensitive information); *Procter & Gamble Co.* v. *Boyle-Midway, Inc.*, C.A. No. 82-671, 1983 WL 830080, at *1 (D. Del. Apr. 11,

---

[2] *AdTrader, Inc.* v. *Google LLC*, 2021 WL 937559, at *2 (N.D. Cal. Mar. 12, 2021), is inapposite. There, the court "d[id] not understand" how production of one agreement was relevant to breach of another agreement. *Id.* Here, ADI's agreements are plainly relevant to Arm's breach of the Qualcomm TLA and the implied covenant of good faith and fair dealing, as described above.

[3] *See* pages 46–48 of the Reply Expert Report of Patrick Kennedy, served on September 19. Qualcomm is providing this document *in camera* only because it contains confidential information of Arm, Qualcomm, and numerous third parties.

1983) ("The Court simply will not indulge in the speculation that attorneys will violate a protective order issued by a court[.]").[4]

ADI further speculates—parroting Broadcom, MediaTek, Amlogic, Ampere, Apple, and Annapurna Labs—that the Protective Order is insufficient because "Qualcomm's outside counsel will need to confer with Qualcomm about the information and documents it receives related to ADI." ADI Ltr. at 6. But ADI never explains *why* Qualcomm's counsel would need to do so. Next, ADI cites a handful of cases to suggest that confidentiality designations are not sufficient. But those cases stand, at most, for the proposition that designating materials as highly confidential does not justify production where the materials sought are not sufficiently relevant. *Mannington Mills, Inc.* v. *Armstrong World Indus., Inc.*, 206 F.R.D. 525, 532 (D. Del. 2002) (relying on Federal Circuit precedent to quash a third-party subpoena primarily because the materials sought were irrelevant); *Amgen Inc.* v. *Samsung Bioepis Co.*, 2025 WL 1207594, at *5 (D.N.J. Apr. 24, 2025) (moving party did not establish "that the information [was] being sought for a proper purpose"). Here, by contrast, the materials are relevant to Qualcomm's claims, and ADI offers no non-speculative reason for why the outside counsel-only confidentiality designation is insufficient.

To the extent ADI contends that Qualcomm's redaction of the Second Amended Complaint bears on whether the ADI agreements should be produced, ADI Ltr. at 5, that argument is nonsensical. Qualcomm is a plaintiff in a lawsuit and is entitled to discovery of non-privileged documents relevant to its claims. Fed. R. Civ. P. 26(b)(1). What information ADI—a nonparty asserting no claims—does or does not have is irrelevant.[5]

Finally, ADI alternatively asks that the Court order Qualcomm to meet and confer "about a proper scope of discovery and provide ADI an opportunity to seek a compromise solution regarding redactions." ADI Ltr. at 6. Qualcomm did meet and confer with counsel for ADI on September 15th about the relevance of Qualcomm's document requests and noted that Qualcomm would be willing to consider narrow redactions to the extent that ADI had concerns about certain technical trade secrets that might be revealed in its agreements with Arm, but that Qualcomm could not agree to any redactions of any financial terms or pricing. To date, ADI has not proposed any redactions.

## V.    Conclusion

ADI's motion should be denied.

---

[4] ADI states that these harms could result even from "inadvertent" disclosure. *Id.* But Qualcomm's outside counsel has appropriately safeguarded similar agreements produced in this litigation and the Prior Litigation without any such inadvertent disclosure.

[5] Contrary to ADI's assertion, ADI Ltr. at 5 n.3, a redacted version of the Second Amended Complaint is available on the docket at D.I. 181. Upon request from ADI, Arm has also consented to Qualcomm providing unredacted versions of certain relevant paragraphs that are redacted in the public version of the Second Amended Complaint.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 2030

Encl.

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 24-490 (MN) |
| v. | ) ) | ███████████████ |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) | |
| Defendant. | ) ) | |

## QUALCOMM'S FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1–52)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (collectively, "Plaintiffs" or "Qualcomm") request that Defendant Arm Holdings PLC ("Arm") serve its written responses to these requests for production and produce copies of the Documents and tangible things requested below at the law offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 within thirty (30) days of service.

## INSTRUCTIONS

1.      Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests for Documents and things are continuing in nature.  If, after producing the requested Documents and things, Arm obtains or becomes aware of any further responsive Document or thing, Arm must produce to Qualcomm such additional Document or thing.

2.      If Arm withholds any Document or thing based upon a claim of privilege or any other claim of immunity from discovery, Arm shall state the specific basis for withholding the Document or thing and describe the facts and circumstances giving rise to such withholding in

**A133**

████████████████████

████████████████████████████████████

██████████████████████████

████████████████████████

█████████████████████████████████████

█████████████████████████████████████

████████████████████████████████

**REQUEST FOR PRODUCTION NO. 34:**

All Documents and Communications concerning any negotiations that Arm had with TLA licensees (including Third Parties) for ████████████████████████████████ ███████████████████████████████ software test libraries for the ████████████████████████████████████████ ████████ including but not limited to price quotes, license fees, licensing term limits, or other language to include in TLA Annexes.

████████████████████

████████████████████████████████████

████████████

████████████████████████

██████████████████████████████████

█████████████████████████████████████

██████████████

**A134**

████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████

████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

████████████████████

██████████████████████████████████     ████████████████████████████

██████████████████

**REQUEST FOR PRODUCTION NO. 40:**

All Documents and Communications concerning Arm's discussions with Qualcomm regarding licensing of ████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████ including discussions regarding potentially withholding any of the listed items, pricing of the items, and any potential restrictions related to the use of the items in Qualcomm's products, including in any chips that contained designs or source code that originated at Nuvia.

████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

13

**A135**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

January 21, 2025

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

16

**A136**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 21, 2025, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                         *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                     *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                                       *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)

**A137**

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>    a Delaware corporation,<br>QUALCOMM TECHNOLOGIES, INC.,<br>    a Delaware corporation,<br><br>                        Plaintiffs,<br><br>    v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>    a U.K. corporation,<br><br>                        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 24-490-MN<br><br>■■■■■■ |

## QUALCOMM'S SECOND SET OF REQUESTS FOR PRODUCTION (NOS. 53-120)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (collectively, "Plaintiffs" or "Qualcomm") request that Defendant Arm Holdings PLC ("Arm") serve Qualcomm with its written responses to these requests for production and produce copies of the Documents and tangible things requested below at the law offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 within thirty (30) days of service.

## INSTRUCTIONS

1.    Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests for Documents and things are continuing in nature. If, after producing the requested Documents and things, Arm obtains or becomes aware of any further responsive Document or thing, Arm must produce to Qualcomm such additional Document or thing.

2.    If Arm withholds any Document or thing based upon a claim of privilege or any other claim of immunity from discovery, Arm shall state the specific basis for withholding the Document or thing and describe the facts and circumstances giving rise to such withholding in

**A139**

██████████████████████████

　　██████████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████

　　██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████  ██████  ████████  ██  ████  ██████  ██████  ██████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████

**REQUEST FOR PRODUCTION NO. 58:**

All Documents and Communications relating to or concerning any negotiations that Arm had with TLA licensees (including Third Parties) for the ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████ including but not limited to price quotes, license fees, licensing term limits, or other language to include in TLA Annexes.

7

**A140**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

*/s/ Jennifer Ying*

_____
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

*Attorneys for Plaintiffs*

February 21, 2025

19

**A141**

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2025, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                    *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                       *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)

20

**A142**

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>  a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>  a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 24-490 (MN) |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>  a U.K. corporation, | ) ) ) | ████████████████ |
| Defendant. | ) | |

## QUALCOMM'S THIRD SET OF REQUESTS FOR PRODUCTION (NOS. 121-156)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (collectively, "Plaintiffs" or "Qualcomm") request that Defendant Arm Holdings PLC ("Arm") serve Qualcomm with its written responses to these requests for production and produce copies of the Documents and tangible things requested below at the law offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 within thirty (30) days of service.

## INSTRUCTIONS

1.     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests for Documents and things are continuing in nature. If, after producing the requested Documents and things, Arm obtains or becomes aware of any further responsive Document or thing, Arm shall produce to Qualcomm such additional Document or thing.

2.     If Arm withholds any Document or thing based upon a claim of privilege or any other claim of immunity from discovery, Arm shall state the specific basis for withholding the Document or thing and describe the facts and circumstances giving rise to such withholding in

**REQUEST FOR PRODUCTION NO. 123:**

All agreements licensing Arm Implementation Cores codenamed ██████████ ██████ including TLAs and corresponding Annexes.

**REQUEST FOR PRODUCTION NO. 124:**

All licensing fee and royalty information for licenses offered by Arm for Arm Implementation Cores codenamed ████████████

██████████████

███████████████████████████

██████████████████████████████

██████████████████████████████

███████████████████

██████████████

█████████████████████████

██████████████████████████████

████████████

██████████████

█████████████████████████

██████████████████████████████

████████████

██████████████

█████████████████████████

██████████████

7

**A145**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

April 2, 2025

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

12

**A146**

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2025, copies of the foregoing were caused to be served upon the following in the manner indicated:

Anne Shea Gaza, Esquire                              *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                          *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                            *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Kyle W.K. Mooney, Esquire                            *VIA ELECTRONIC MAIL*
Kyle D. Friedland, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

Erik J. Olson, Esquire                               *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
*Attorneys for Defendant*

13

**A147**

Gregg F. LoCascio, P.C.                                    *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                       *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*


/s/ Jennifer Ying
_____
Jennifer Ying (#5550)

14

**A148**

# Exhibit 4

1

13:12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

```
ARM LTD.,                      )
a U.K. corporation,            )
                               )
          Plaintiff,           )
                               ) C.A. No. 22-1146(MN)
v.                             )
                               )
QUALCOMM, INC.,                )
a Delaware corporation,        )
et al.,                        )
                               )
          Defendants.          )
```

Thursday, March 7, 2024
2:13 p.m.
Oral Argument


844 King Street
Wilmington, Delaware


BEFORE:   THE HONORABLE MARYELLEN NOREIKA
          United States District Court Judge



APPEARANCES:


          YOUNG CONAWAY STARGATT & TAYLOR
          BY:  ANNE SHEA GAZA, ESQ.
          BY:  ROBERT M. VRANA, ESQ.

          -and-

          MORRISON FOERSTER, LLP
          BY:  KYLE W.K. MOONEY, ESQ.
          BY:  NICHOLAS R. FUNG, ESQ.
          BY:  DANIEL MACKNIDES, ESQ.

                    Counsel for the Plaintiff

**A150**

2

APPEARANCES CONTINUED:

              MORRIS NICHOLS ARSHT & TUNNELL LLP
              BY:  JACK BLUMENFELD, ESQ.

              -and-

              PAUL WEISS
              BY:  KAREN L. DUNN, ESQ.
              BY:  ERIN MORGAN, ESQ.

                     Counsel for the Defendants


              FISH & RICHARDSON
              BY:  NITIKA GUPTA FIORELLA, ESQ.

              -and-

              WALKER STEVENS CANNOM, LLP
              BY:  HANNAH L. CANNOM, ESQ.

                     Counsel for Apple, Inc.


              WILSON SONSINI GOODRICH & ROSATI
              BY:  BRAD SORRELS, ESQ.

                     Counsel for Ampere Computing



              _ _ _ _ _ _ _ _ _ _ _ _ _


13:37:07
13:37:07 21        THE COURT:  All right.  Good afternoon everyone.

14:13:23 22   Please be seated.

14:13:28 23        Ms. Gaza.

14:13:29 24        MS. GAZA:  Good afternoon, Your Honor.  Anne

14:13:31 25   Gaza on behalf of plaintiff, ARM.  I'm joined today by Kyle

**A151**

15:10:37 1    those employees had, we had produced 1.5 million pages of

15:10:42 2    documents --

15:10:43 3              THE COURT:  They had no idea, when they took

15:10:45 4    those depositions, they couldn't say, Mr. Abbey, what did

15:10:48 5    you discuss with the expert?

15:10:50 6              MR. MOONEY:  I agree with that, Your Honor.

15:10:51 7              THE COURT:  Okay.

15:10:52 8              MR. MOONEY:  But Your Honor, that's not unlike

15:10:55 9    --

15:10:55 10             THE COURT:  I think that's what Mr. Blumenfeld

15:10:57 11   was getting at, he's saying I can't have the same

15:11:00 12   discussions with these folks and ask, you know, have my

15:11:04 13   expert ask them questions because fact discovery is over.

15:11:10 14             MR. MOONEY:  It is true, Your Honor --

15:11:11 15             THE COURT:  He can't ask about what they

15:11:14 16   discussed with the expert.

15:11:15 17             MR. MOONEY:  It is true that in this case

15:11:17 18   Qualcomm's -- if I'm following this, Qualcomm's counsel was

15:11:21 19   not able to depose ARM employees after ARM's expert put in

15:11:26 20   reports, that's true.  That's true in every case.  What is

15:11:30 21   also true in this case --

15:11:31 22             THE COURT:  Yeah, but what's not true in every

15:11:33 23   case is every -- my gosh, we have from footnote 196 through

15:11:38 24   at least -- through at least footnote 219, there is nothing

15:11:43 25   else other than discussion, or maybe a deposition.

**A152**

44

15:11:49  1                    MR. MOONEY:  I agree with Your Honor that

15:11:51  2    Mr. Schoettelkotte in particular had many discussions with

15:11:54  3    our employees and this is a heavily footnoted report.  Those

15:11:58  4    are not the only sources Mr. Schoettelkotte relied on by any

15:12:02  5    means.

15:12:02  6                    THE COURT:  It is the only source in what I

15:12:04  7    have.

15:12:04  8                    MR. MOONEY:  It is the only source in the four

15:12:06  9    pages that Your Honor has been handed from the report,

15:12:09 10    Mr. Schoettelkotte has a schedule of information that was

15:12:11 11    relied on that includes many thousands of documents in the

15:12:14 12    case, many thousands of transcripts and exhibits in addition

15:12:18 13    --

15:12:18 14                    THE COURT:  So let's say -- and I'll give the

15:12:23 15    third parties a chance to weigh in on this, too, tell me

15:12:29 16    about the confidentiality.  We have a protective order, we

15:12:33 17    have an outside counsel only provision.  To say that this

15:12:38 18    stuff is at risk of all of the comments were sort of generic

15:12:44 19    saying this is going to give Qualcomm a competitive

15:12:47 20    advantage.  The way it gives Qualcomm a competitive

15:12:50 21    advantage is if the information is given to outside counsel

15:12:54 22    and outside counsel gives it to Qualcomm, which is quite an

15:13:02 23    accusation.

15:13:03 24                    So why is the protective order not sufficient?

15:13:07 25                    MR. MOONEY:  Well, as Your Honor knows, the law

**A153**

45

15:13:10 1    is clear that the protective order isn't sufficient to

15:13:13 2    require parties to produce information that's not relevant

15:13:16 3    in the case.

15:13:17 4              THE COURT:  Let's say I'm not convinced that

15:13:19 5    it's not relevant.

15:13:20 6              MR. MOONEY:  Your Honor is right, we are not

15:13:21 7    suggesting that Qualcomm outside counsel is going to

15:13:25 8    deliberately disclose this information to anybody, that's

15:13:28 9    not the concern.  The concern is that this is highly

15:13:30 10   confidential competitive information that goes to the very

15:13:34 11   core of our business and to the very core of our

15:13:38 12   competitor's business and this is information that could be

15:13:40 13   misused by our competitors and our customers.  And that any

15:13:45 14   risk that this information is inadvertently specifically or

15:13:50 15   generally used or disclosed by any counsel or anyone else

15:13:54 16   involved in the case who might have access to this

15:13:56 17   information under the protective order, which certainly

15:14:00 18   isn't just counsel sitting at the table is enough of a risk

15:14:03 19   that we worked very carefully with our customers, Apple

15:14:08 20   here, to remove as many --

15:14:11 21             THE COURT:  You haven't worked at all with

15:14:12 22   anyone on the ████████████████ , that's just a big fat

15:14:17 23   no, right?  You don't even have the first page of it that

15:14:20 24   says agreement.

15:14:21 25             MR. MOONEY:  It is true that the ████████████

**A154**



| | |
|---|---|
| **From:** | Ying, Jennifer <jying@morrisnichols.com> |
| **Sent:** | Tuesday, October 21, 2025 5:13 PM |
| **To:** | Helena C. Rychlicki |
| **Cc:** | Gaza, Anne Shea (agaza@ycst.com); rvrana@ycst.com; Mackrides, Daniel G.; Murray, Travis; Yenerall, Ben; #KE-ARM-Qualcomm; MoFo_Arm_QCOM; Qualcommv Arm; GRP-QCvARM |
| **Subject:** | Qualcomm v. Arm - C.A. 24-490 - Proposal on Hearing on Third-Party Protective Order Motions |

Dear Special Master Rychlicki,

Pursuant to Your Honor's request, the parties have met and conferred and propose the following organization for the hearing on Third-Party Protective Orders motions.

The majority of the disputes involve TLAs.  We propose that at the outset of the hearing, Qualcomm present its arguments regarding TLAs in a joint session with all relevant third parties for no more than 30 minutes.  Following that argument, we propose conducting sequential hearings with each individual third party where the challenge is limited to production of TLA(s).  Each party will have no more than 15 minutes to present its argument, and Qualcomm is allowed 15 minutes to respond, as needed, to third party specific arguments.  For MediaTek, the only party where Arm has opposed the motion, Arm will also have 15 minutes to respond (making the total time a maximum of 45 minutes).

For parties challenging production of both the ████████ (Ampere and Apple), we propose conducting those arguments last, and the parties can address ████████████ in their allotted time – with each party allotted a maximum of 15 minutes.

In order to maintain confidentiality in each individual hearing, the third parties will submit attendees in advance so that they can be held in the waiting room until their scheduled appearance.

We also note that Qualcomm has conflicts counsel for the Annapurna motion.  If Annapurna objects to the joint session, they will not join the initial Qualcomm session, and instead Qualcomm will have conflicts counsel argue the entire motion during the allotted individual time.

The proposed schedule and order for the hearing is below:
- Qualcomm argument (30 minutes)
- MediaTek (45 minutes)
- Amlogic (30 minutes)
- Broadcom (30 minutes)
- Analog Devices (30 minutes)
- Annapurna (30 minutes)
- Ampere (30 minutes)
- Apple (30 minutes)

Qualcomm requests that the hearing on the Third-Party Protective Order motions be scheduled as soon as convenient for Your Honor.  To the extent that Your Honor's ruling on the pending dispute between the parties over the scope of TLA-related discovery affects the dispute with any of these third parties, the parties will inform the third parties' counsel promptly to ensure an efficient hearing.

Arm believes that Your Honor's ruling on the pending dispute between the parties over the scope of TLA-related discovery may narrow the scope of the disputes with some of these parties.  Arm requests that, after resolving the

1

**A174**

scope dispute between the parties, the hearing on the Third-Party Protective Order motions be scheduled as soon as convenient for Your Honor.

Counsel is available should Your Honor have any questions.

Respectfully,
Jennifer Ying (#5550)

---

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

**A175**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 18, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 18, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                  *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                              *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Sydney D. Gaskins, Esquire                               *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                    *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Kasdin M. Mitchell, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                      *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                                *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*

Jenness E. Parker, Esquire                                *VIA ELECTRONIC MAIL*
Elisa M.C. Klein, Esquire
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Non-Party Broadcom Inc.*

Geoffrey G. Grivner, Esquire                              *VIA ELECTRONIC MAIL*
BUCHANAN INGERSOLL & ROONEY PC
500 Delaware Avenue, Suite 720
Wilmington, DE  19801
*Attorneys for Non-Party MediaTek Inc.*

Brett M. McCartney, Esquire                    *VIA ELECTRONIC MAIL*
Elizabeth A. Powers, Esquire
Emily L. Skaug, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE 19801
*Attorneys for Non-Party Amlogic Holdings Ltd.*

Andrew S. Ong, Esquire                         *VIA ELECTRONIC MAIL*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
*Attorneys for Non-Party Amlogic Holdings Ltd.*

Neel Chatterjee, Esquire                       *VIA ELECTRONIC MAIL*
Theresa Sutton, Esquire
KING & SPALDING LLP
245 Lytton Avenue, Suite 150
Palto Alto, CA 94301
*Attorneys for Non-Party Amlogic Holdings Ltd.*

Matthew B. Goeller, Esquire                    *VIA ELECTRONIC MAIL*
K & L GATES LLP
600 N. King Street, Suite 901
Wilmington, DE 19801
*Attorneys for Non-Party Analog Devices, Inc.*

Michael R. Creta, Esquire                      *VIA ELECTRONIC MAIL*
K & L GATES LLP
One Congress Street, Suite 2900
Boston, MA 02114
*Attorneys for Non-Party Analog Devices, Inc.*

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 27, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire       *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire       *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
*Attorneys for Defendant*

Sydney D. Gaskins, Esquire       *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017
*Attorneys for Defendant*

Alexandra Corrinne Hottenrott, Esquire    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
*Attorneys for Defendant*

Daralyn J. Durie, Esquire       *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                          *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                          *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                             *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                       *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*

Jenness E. Parker, Esquire                       *VIA ELECTRONIC MAIL*
Elisa M.C. Klein, Esquire
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Non-Party Broadcom Inc.*

Geoffrey G. Grivner, Esquire                     *VIA ELECTRONIC MAIL*
BUCHANAN INGERSOLL & ROONEY PC
500 Delaware Avenue, Suite 720
Wilmington, DE  19801
*Attorneys for Non-Party MediaTek Inc.*

Brett M. McCartney, Esquire                    *VIA ELECTRONIC MAIL*
Elizabeth A. Powers, Esquire
Emily L. Skaug, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Non-Party Amlogic Holdings Ltd.*

Andrew S. Ong, Esquire                         *VIA ELECTRONIC MAIL*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA  94111
*Attorneys for Non-Party Amlogic Holdings Ltd.*

Neel Chatterjee, Esquire                       *VIA ELECTRONIC MAIL*
Theresa Sutton, Esquire
KING & SPALDING LLP
245 Lytton Avenue, Suite 150
Palto Alto, CA  94301
*Attorneys for Non-Party Amlogic Holdings Ltd.*

Matthew B. Goeller, Esquire                    *VIA ELECTRONIC MAIL*
K & L GATES LLP
600 N. King Street, Suite 901
Wilmington, DE 19801
*Attorneys for Non-Party Analog Devices, Inc.*

Michael R. Creta, Esquire                      *VIA ELECTRONIC MAIL*
K & L GATES LLP
One Congress Street, Suite 2900
Boston, MA 02114
*Attorneys for Non-Party Analog Devices, Inc.*


                                    */s/ Travis J. Murray*
                                    _____
                                    Travis J. Murray (#6882)


3