# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,

Plaintiffs,

v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,

Defendant.

**REDACTED - PUBLIC VERSION**
(Filed February 27, 2026)

C.A. No. 24-490-MN
(CONSOLIDATED)



## DEFENDANT ARM HOLDINGS PLC'S OBJECTIONS TO THE SPECIAL MASTER'S FEBRUARY 6, 2026 ORDER (D.I. 627) DENYING DEFENDANT'S MOTION TO COMPEL (D.I. 361)

Dated: February 20, 2026

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Kasdin Mitchell, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
kasdin.mitchell@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL
60654 (312) 862-2000
jay.emerick@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   BACKGROUND ..................................................................................................... 2

III.  ARGUMENT ........................................................................................................... 5

      A.    Qualcomm's Media Communications Are Relevant To Its Tortious
            Interference And UCL Claims. .................................................................... 5

      B.    Qualcomm's Prior Statements About Its Licensing Practices Are Relevant
            Its UCL Claims. ........................................................................................... 7

IV.   CONCLUSION ....................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Qualcomm Inc.*,
No. 3:17-cv-00108-GPC-MDD (S.D. Cal.), D.I. 1 ...................................................4, 8

*Desert Healthcare Dist. v. PacifiCare FHP, Inc.*,
94 Cal. App. 4th 781 (2001) ...........................................................................8

*Emco, Inc. v. Obst*,
2004 WL 1737355 (C.D. Cal. May 7, 2004) ...........................................................6

*Fed. Trade Comm'n v. Qualcomm Inc.*,
No. 5:17- cv-220-LHK (N.D. Cal.), D.I. 1 .........................................................4, 8

*Haagen-Dazs, Inc. v. Frusen Gladje Ltd.*,
493 F. Supp. 73 (S.D.N.Y. 1980) ....................................................................6

*Holt v. Dep't of Food & Agric.*,
171 Cal. App. 3d 427 (1985) ........................................................................6

*Howard v. Omni Hotels Mgmt. Corp.*,
203 Cal. App. 4th, 403, 420-21 (2012) ..............................................................6

*Inventio AG v. ThyssenKrupp Elevator Americas Corp.*,
662 F. Supp. 2d 375 (D. Del. 2009).................................................................5, 7

*Nelson v. Tucker Ellis, LLP*,
262 Cal. Rptr. 3d 250 (Cal. Ct. App. 2020)...........................................................6

*In re Qualcomm Antitrust Litig.*,
No. 3:17-md-02773-JSC (N.D. Cal.), D.I. 94...................................................4, 8

*In re Qualcomm Inc. Secs. Litig.*,
No. 3:17-cv-121-JO-MSB (S.D. Cal.), D.I. 1 .........................................................4

*Scripps Clinic & Rsch. Found. v. Baxter Travenol Lab'ys, Inc.*,
1988 WL 70013 (D. Del. June 21, 1988).............................................................8

*United States v. Abbott Lab'ys*,
2016 WL 4247429 (E.D. Pa. Aug. 11, 2016) .......................................................7, 8

*USM Corp. v. Arthur D. Little Sys., Inc.*,
28 Mass. App. Ct. 108 (1989)........................................................................8

ii

**Rules**

Fed. R. Civ. P. 26.........................................................................................................................5, 7, 9

Fed. R. Civ. P. 53.................................................................................................................................5

I.      PRELIMINARY STATEMENT

Qualcomm refused to produce documents responsive to more than 80 RFPs, each seeking important discovery relevant to Qualcomm's sweeping claims. The Special Master found no problem with this wholesale refusal to participate in the discovery process and did not order Qualcomm to produce a single additional document. Although Qualcomm should have responded to all of Arm's discovery requests, Arm limits its objections to two key categories of documents.

*First*, Arm seeks documents concerning Qualcomm's communications with the media about its disputes with Arm. Three of Qualcomm's claims center on Arm's supposedly wrongful, tortious, and unscrupulous disclosure of a letter to the media. Yet Qualcomm refuses to produce documents concerning its own communications with the press about Arm or the parties' legal disputes, including for multiple stories about Qualcomm's confidential competition complaints against Arm by the same reporter at the same news outlet. Those communications are relevant to Arm's unclean hands defense and to rebutting Qualcomm's arguments that Arm acted negligently or unfairly by discussing the 22-1146-MN litigation with the media. Qualcomm should not be permitted to stonewall Arm on these issues.

*Second*, Arm seeks the deposition and trial transcripts (as well as any affidavits or written testimony) from four prior cases in which Qualcomm defended its own intellectual property ("IP") licensing practices, practices similar to those it now claims violate the California UCL. Despite the clear parallels, Qualcomm contends its licensing practices are irrelevant because it licenses different IP than Arm. A0777.[1] This is a distinction without a difference. Qualcomm's licensing practices in the semiconductor industry—regardless of the exact IP—bear on the propriety of

---

[1] Citations to "A___" are to the Appendix to Defendants' Objections to the Special Master's Memorandum Order (D.I. 627), filed contemporaneously.

Arm's alleged licensing practices in the same industry. Qualcomm can hardly claim Arm acted unfairly or anticompetitively if Qualcomm engages in the same conduct.

## II.    BACKGROUND

Litigation between Arm and Qualcomm began almost three years ago when Arm sued Qualcomm and its recently acquired subsidiary Nuvia for breach of contract. *See generally* No. 22-1146 D.I. 1. In October 2024, during that litigation, Arm sent Qualcomm a written notice asserting that Qualcomm breached its Architecture License Agreement by developing unlicensed products and notifying Qualcomm that Arm would be entitled to terminate that agreement if Qualcomm did not cure its material breach. D.I. 137 ("SAC") ¶ 29. The next day, Bloomberg reporter Ian King published an article discussing the breach notice.

Qualcomm alleges in this case that the breach notice and subsequent Bloomberg article interfered with Qualcomm's relationships with two companies, ███████████████ and ███████████. SAC ¶¶ 156-61. But the October 2024 Bloomberg article is not the only media story about the parties' legal disputes. For example, on March 25, 2025, Bloomberg published an article titled "Qualcomm Takes Legal Fight with Arm to Global Antitrust Agencies," co-authored by Mr. King and Josh Sisco, which described Qualcomm's "private meetings and confidential filings to regulators on three continents" in which "Qualcomm is arguing that Arm—its biggest supplier— is guilty of anticompetitive behavior, according to people familiar with the matter." D.I. 457 Ex. 16 at 1. More recently, on November 19, 2025, Bloomberg again published an article, authored by Mr. Sisco, titled "South Korea Antitrust Regulators Inspect Arm's Office in Seoul" that discusses a complaint Qualcomm filed with Korea regulators and "concerns about Arm's licensing business" that Qualcomm brought "to the US Federal Trade Commission and European Commission." A1132–1134. While Qualcomm's "complaints to regulators are confidential," Mr. Sisco described

2

his sources as "people familiar with the matter" who "were granted anonymity to discuss a confidential matter." *Id.* at 1-2. These stories did not come from Arm.

Arm suspects Qualcomm is the source for these stories, which would be relevant to Arm's unclean hands defense and to rebutting Qualcomm's argument that Arm negligently interfered with Qualcomm's business relationships and violated the California UCL by speaking to the media. To support those defenses, Arm served several document requests seeking Qualcomm's communications with the media and other third parties about the subject matter of the parties' legal disputes (*e.g.*, RFP Nos. 124-27, 129, 131, and 142). A0132–135; A0136; A0137; A0144–145. RFP No. 129, for instance, seeks documents concerning Qualcomm's communications with the media regarding "the subject matter of the claims at issue in this Litigation, in any regulatory proceeding against or sought against Arm, or in" the case Arm filed against Qualcomm. A0136. In response to each of these requests, Qualcomm stated it "will not produce documents in response to this Request." A0132–135; A0136; A0137; A0144–145. Arm served Rule 30(b)(6) topics seeking similar discovery, which Qualcomm again refused to provide. A0485–488.

Qualcomm separately contends that Arm's licensing practices are unfair, unlawful, anticompetitive, or otherwise unscrupulous in violation of the UCL. Qualcomm has repeatedly been sued for similar—if not identical—practices to those it now labels improper:

| *Qualcomm's Allegations Against Arm:* | *Previous Allegations Against Qualcomm:* |
|---|---|
| Attempted to dominate the market. SAC ¶¶ 31, 70, 164. | "[M]aintain[ed] a monopoly." *In re Qualcomm Inc. Secs. Litig.*, No. 3:17-cv-121-JO-MSB (S.D. Cal.), D.I. 1 ¶ 39; *see also Fed. Trade Comm'n v. Qualcomm Inc.*, No. 5:17- cv-220-LHK (N.D. Cal.), D.I. 1 ¶¶ 131–35. |
| "[L]everage[d]" its "ubiquity" in certain markets to "exclude competitors from designing and selling chips that are compatible with the Arm ISA," i.e., input foreclosure. SAC ¶ 70. | Used its "leverage over Apple because of [its] market power in chipsets and its ability to disrupt Apple's supply of chipsets" to "foreclose[] … Apple's business to actual and potential competitors." *Apple Inc. v.* |

3

| *Qualcomm's Allegations Against Arm:* | *Previous Allegations Against Qualcomm:* |
|---|---|
| | *Qualcomm Inc.*, No. 3:17-cv-00108-GPC-MDD (S.D. Cal.), D.I. 1 ¶¶ 93, 105, 386. |
| Increased the royalties it charges to license its ISA, causing a potential downstream increase in price. SAC ¶¶ 4, 70. | "[A]rtificially inflat[ed] the price of modem chips by extracting supracompetitive royalties for its patents." *In re Qualcomm Antitrust Litig.*, No. 3:17-md-02773-JSC (N.D. Cal.), D.I. 94 ¶¶ 13, 108.<br><br>Licensed its patents to original equipment manufacturers ("OEMs") at a rate "significantly higher than those of other licensors." *Fed. Trade Comm'n*, No. 5:17- cv-220-LHK, D.I. 1 ¶ 58. |
| "[R]efus[ed] to deal" with licensing customers. D.I. 464 at 35. | Refused to license patents to competitors. *Fed. Trade Comm'*, No. 5:17- cv-220-LHK, D.I. 1 ¶ 3. |
| Utilized Arm's market power over its ISA to extract unfavorable terms in its contracts with Qualcomm and put Qualcomm at a competitive disadvantage. SAC ¶ 27. | "[W]ithh[e]ld[] its baseband processors unless a customer accept[ed] a license to standard-essential patents on terms preferred by Qualcomm" (i.e., Qualcomm's heavily-litigated "no-license, no-chips" policy). *Fed. Trade Comm'n*, No. 5:17- cv-220-LHK, D.I. 1 ¶ 3. |

Arm served multiple requests for production to obtain prior testimony and other documents from these cases related to Qualcomm's licensing practices (RFP Nos. 83, 116, 151, 153–56). A0629; A0635; A0658–659. Qualcomm again refused to produce any responsive documents. A0093; A0115; A0150–153.

Arm moved to compel on June 4, 2025, D.I. 159, renewed that motion in front of the Special Master, A0003–4, and elaborated on its need for the requested documents at an August 14, 2025 hearing, A1207–1208 at 297:5–299:10; A1209–1210 at 303:20–306:6, 307:9–308:8; A1211–1212 at 313:2–316:10; A1213–1214 at 334:11-338:4; A1215–1216 at 345:8-347:22. The Special Master denied Arm's motion to compel on February 6. For the media-related discovery

requests, the Special Master concluded that "Qualcomm has sufficiently responded to Arm's requests regarding Qualcomm's tortious interference claims," even though Qualcomm refused to provide any documents in response to RFP Nos. 124-27, 129, 131, and 142 and refused to provide a 30(b)(6) witness on those topics. With respect to the prior litigation materials, the Special Master concluded that licensing practices for different IP is irrelevant and that, in any event, "Qualcomm produced documents in response to each request for production." D.I. 627 at 4. The order did not address Qualcomm's unequivocal statement that it "will not produce documents in response to" the requests for materials from its prior licensing-related litigations. A0093; A0115; A0150–153. Arm objects to the Order pursuant to the Court's procedures, D.I. 336 ¶ 6, and Rule 53. The Court's review of this Order is *de novo*. Fed. R. Civ. P. 53(f)(3)-(4).

## III.    ARGUMENT

The Court should compel Qualcomm to produce documents and a 30(b)(6) witness concerning its media communications and to produce trial and deposition transcripts from the cases in which Qualcomm defended the same licensing practices it now claims violate the UCL. "For purposes of discovery, relevancy is broadly construed." *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009). "Rule 26 permits a court to order broader discovery of 'any matter relevant to the subject matter involved in the action,' where such information is likely to lead to the discovery of admissible evidence and the party making the discovery request can establish 'good cause' to support the request." *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). Arm's requested discovery satisfies this lenient standard.

A.    **Qualcomm's Media Communications Are Relevant To Its Tortious Interference And UCL Claims.**

Qualcomm's media outreach about its dispute with Arm and its efforts to plant stories that cast Arm in an unfavorable light bear directly on Qualcomm's own claims in this case. For

example, Qualcomm's UCL claim asserts Arm's alleged communications with Bloomberg were the type of "immoral, unethical, oppressive, [or] unscrupulous" acts that violate the California UCL. D.I. 137 (SAC) ¶¶ 208-209. Whether Qualcomm has engaged in its own campaign of placing stories with the media concerning its legal disputes with Arm is directly relevant to whether Arm's alleged conduct is as scandalous, unfair or wrongful as Qualcomm contends. For similar reasons, Qualcomm's own media outreach is highly relevant to whether Arm negligently interfered with Qualcomm's prospective customer relationships. To establish Arm acted negligently, Qualcomm must show that Arm "fail[ed] to act with reasonable care," *Nelson v. Tucker Ellis, LLP*, 262 Cal. Rptr. 3d 250, 264 n.5 (Cal. Ct. App. 2020)—a question that turns in part on whether Qualcomm engages in similar behavior. *Howard v. Omni Hotels Mgmt. Corp.*, 203 Cal. App. 4th, 403, 420-21 (2012); *Holt v. Dep't of Food & Agric.*, 171 Cal. App. 3d 427, 434-35 (1985).

Qualcomm's media communications, such as those concerning Qualcomm's confidential complaints to regulators about Arm, also bear on Arm's unclean hands defense. *See* D.I. 234 at 43-44. Indeed, the placement of these stories with Bloomberg is similar in kind to the alleged conduct on which Qualcomm bases its tortious interference claims, *see, e.g.*, D.I. 137 (SAC) ¶¶ 189-203, and courts have applied the unclean hands doctrine where the plaintiff engaged in the same conduct it accuses a defendant of committing, *see, e.g.*, *Emco, Inc. v. Obst*, 2004 WL 1737355, at *4-6 (C.D. Cal. May 7, 2004); *Haagen-Dazs, Inc. v. Frusen Gladje Ltd.*, 493 F. Supp. 73, 75-76 (S.D.N.Y. 1980). While Qualcomm disputes whether the other media stories have a close enough connection to Arm's claims to support an unclean hands defense, A1136; A1137, Qualcomm cannot withhold discovery based on its view of the merits of Arm's arguments.

Making matters worse, Qualcomm moved for summary judgment on Arm's unclean hands defense because Arm supposedly has no evidence establishing Qualcomm is the source of any

6

unfavorable media stories. D.I. 442 at 25-26. Qualcomm cannot use its refusal to provide discovery as a sword to defeat Arm's defense. The Court should instead compel Qualcomm to produce the documents Arm requested in RFP Nos. 124-27, 129, 131, and 142, and to provide a 30(b)(6) witness on topics 60, 61, and 63.

### B. Qualcomm's Prior Statements About Its Licensing Practices Are Relevant Its UCL Claims.

The Court should likewise compel the production of prior litigation transcripts and affidavits (or other written testimony) requested in RFP Nos. 83, 116, 151, 153–56. Those transcripts and affidavits are "relevant to the claims and defenses in [the present] case, thereby satisfying the relevancy requirement under Rule 26(b)(1)." *Inventio*, 662 F. Supp. 2d at 383, 382–84 (compelling production of prior deposition transcripts); *United States v. Abbott Lab'ys*, 2016 WL 4247429, at *5–6 (E.D. Pa. Aug. 11, 2016) (same).[2] For example, Arm's requested discovery is essential to probe whether Qualcomm's witnesses previously took inconsistent positions regarding the licensing practices at issue. The public dockets reveal that at least three of Qualcomm's deponents in this case testified in the other cases: Cristiano Amon, Durga Malladi, and Jonathan Weiser.[3] Because Qualcomm defended licensing practices in those cases similar to the practices Qualcomm now calls unfair and anticompetitive, these overlapping witnesses likely

---

[2]  To focus the issues before the Court, Arm seeks to compel a narrower set of documents than originally contemplated by the full scope of the RFPs at issue, which further seek all pleadings, discovery responses, expert reports, and other submissions relating to the four lawsuits, as well as other documents upon which Qualcomm's deposition witnesses relied. A0629; A0635; A0658–659. Arm maintains, however, that those requests were proper and relevant.

[3]  *See Fed. Trade Comm'n.*, No. 5:17- cv-220-LHK, D.I. 1145, D.I. 1275; *Apple Inc*, No. 3:17-cv-00108-GPC-MDD, D.I. 874-2 ¶ 5, D.I. 841-2 ¶¶ 5, 12, and D.I. 629-2 ¶ 18l; *Antitrust Litig.*, No. 3:17-md-02773-JSC, D.I. 950-1 ¶ 33. Because the local rules do not require filing deposition notices in those jurisdictions, it is possible there are additional overlapping witnesses.

took positions that contradict those Qualcomm has taken here. And the transcripts Arm seeks may reveal additional witnesses Qualcomm left off its initial disclosures who Arm would have sought to depose based on their prior testimony defending Qualcomm's licensing practices. Arm should receive both the potential impeachment material and the testimony of Qualcomm's other witnesses who defended the practices Qualcomm now claims are improper. *See, e.g.*, *Scripps Clinic & Rsch. Found. v. Baxter Travenol Lab'ys, Inc.*, 1988 WL 70013, at *3 (D. Del. June 21, 1988) (compelling production of deposition transcripts of plaintiff's employees from prior case); *Abbott*, 2016 WL 4247429, at *5–6 (same).

Testimony revealing Qualcomm's licensing practices is also relevant to the state of play within the semiconductor industry and Qualcomm's allegations that Arm's conduct is "unfair" or "unlawful" under the UCL. If Qualcomm—a major industry player—engages in the same licensing practices it now claims are "unfair" or "unscrupulous" when undertaken by Arm, that would suggest such practices are the industry norm and do not violate the UCL. *See Desert Healthcare Dist. v. PacifiCare FHP, Inc.*, 94 Cal. App. 4th 781, 793 (2001); *see also USM Corp. v. Arthur D. Little Sys., Inc.*, 28 Mass. App. Ct. 108, 125 (1989). Such discovery is clearly relevant.

The Special Master denied the requested discovery for irrelevant and incorrect reasons. For one, that Qualcomm and Arm do not license identical IP is irrelevant to resolving Arm's motion to compel. There is substantial overlap between the licensing practices Qualcomm claims are improper here and those for which it has been repeatedly sued, including the same conduct, industry, and type of product (IP) at issue. The Special Master's denial of discovery into Qualcomm's previously challenged licensing practices because they did not specifically involve CPUs or architectures misses the forest for the trees and is at odds with Rule 26's liberal discovery standard.

8

The Special Master's decision also appears to rest, at least in part, on the incorrect notion that Qualcomm adequately produced responsive documents. D.I. 627 at 4. Qualcomm was emphatic that it "will not produce documents in response to" Arm's requests for those transcripts. A0093; A0115; A0150–153. Throughout discovery, Qualcomm stood by that position.

## IV.    CONCLUSION

Arm's objections should be sustained, and the Court should compel Qualcomm to produce the requested discovery.

Dated: February 20, 2026

OF COUNSEL:
Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Kasdin Mitchell, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
kasdin.mitchell@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/ Anne Shea Gaza
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 20, 2026, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com
John Poulos
NORTON ROSE FULBRIGHT US LLP

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2