# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,

        Plaintiffs,

v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,

        Defendant.

**REDACTED - PUBLIC VERSION**
(Filed February 27, 2026)

**C.A. No. 24-490-MN**



---

## APPENDIX TO DEFENDANT'S OBJECTIONS TO THE SPECIAL MASTER'S MEMORANDUM ORDER (D.I. 627) RESOLVING DEFENDANT'S MOTION TO COMPEL (D.I. 361) – VOL. 1 OF 2
### (A0001 – A0773)

Dated: February 20, 2026

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Kasdin Mitchell, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
kasdin.mitchell@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

## TABLE OF CONTENTS

| Document | Page Range |
|---|---|
| C.A. No. 1:24-cv-00490-MN, Defendant Arm Holdings plc's Letter Brief to Special Master Rychlicki, dated August 1, 2025 ▮▮▮▮▮▮▮▮ | A0001 |
| Declaration of Matthew J. McIntee in Support of Arm's Motion to Compel, dated August 1, 2025 ▮▮▮▮▮▮▮ ▮▮▮▮▮▮ | A0008 |
| Exhibit 1 – Plaintiffs' Responses and Objections to Defendant's First Set of Requests for Production (Nos. 1-58) ▮▮▮▮▮, dated March 10, 2025 | A0012 |
| Exhibit 2 – Plaintiffs' Responses and Objections to Defendant's Second Set of Requests for Production (Nos. 59-122) ▮▮▮▮▮, dated April 14, 2025 | A0067 |
| Exhibit 3 – Plaintiffs' Responses and Objections to Defendant's Third Set of Requests for Production (Nos. 123-173)▮▮▮▮▮, dated May 1, 2025 | A0122 |
| Exhibit 4 – Arm's First Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1-3) ▮▮▮ ▮▮▮▮▮▮▮▮▮ dated July 11, 2025. | A0166 |
| Exhibit 5 – Arm's First Supplemental Response to Qualcomm's Amended Interrogatory No. 3 ▮▮▮▮▮▮ ▮▮▮▮, dated July 11, 2025 | A0196 |
| Exhibit 6 – Arm's First Supplemental Response to Qualcomm's Amended Interrogatory Nos. 4-11 ▮▮▮▮▮ ▮▮▮▮▮, dated July 11, 2025 | A0206 |
| Exhibit 7 – Arm's First Supplemental Response to Qualcomm's Third Set of Interrogatories (No. 12) ▮▮▮▮▮ ▮▮▮▮▮, dated July 11, 2025 | A0276 |
| Exhibit 8 – D.I. 137, Second Amended Complaint ▮▮▮▮ ▮▮, dated June 3, 2025 | A0292 |
| Exhibit 9 –Excerpts from the June 25, 2025, Deposition of Gerard Williams ▮▮▮▮▮▮▮▮ | A0363 |

| Document | Page Range |
|---|---|
| Exhibit 10 – Arm's Rule 26(a)(1) Second Supplemental Initial Disclosures ████████ , dated June 12, 2025 | A0402 |
| Exhibit 11 – Email from J. Emerick, dated June 16, 2025 | A0416 |
| Exhibit 12 – Plaintiffs' Responses and Objections to Arm's First Notice of Deposition of Qualcomm Inc. and Qualcomm Technologies, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6) ████████ , dated June 23, 2025 | A0431 |
| Exhibit 13 – Letter from J. Emerick, dated July 25, 2025 ████ ██████████████████ | A0512 |
| Exhibit 14 – Plaintiffs' Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1-9) ████ ████████████████████ , dated July 11, 2025 | A0524 |
| Exhibit 15 – Plaintiffs' Supplemental Responses and Objections to Defendant's Second Set of Interrogatories (Nos. 10-13) ████████████████████ dated July 11, 2025 | A0583 |
| Exhibit 16 – Intentionally Omitted | -- |
| Exhibit 17 – Letter from C. Nyarady ████████ , dated April 28, 2025 | A0610 |
| Exhibit 18 – Letter from C. Nyarady, dated March 17, 2025 | A0613 |
| Exhibit 19 – Arm's Second Set of Requests for Production to Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (Nos. 59-122) ████████ , dated March 14, 2025 | A0616 |
| Exhibit 20 – Arm's Third Set of Requests for Production to Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (Nos. 123-173) ████████████████████ , dated April 1, 2025 | A0641 |
| Exhibit 21 – Arm's Fourth Set of Requests for Production (Nos. 174-227) ████████ , dated June 9, 2025 | A0667 |
| Exhibit 22 – Arm's Fifth Set of Requests for Production (Nos. 228-287) ████████ dated June 11, 2025 | A0683 |

| Document | Page Range |
|---|---|
| Exhibit 23 – D.I. 84, Stipulated Protective Order, dated March 21, 2025 | A0700 |
| Exhibit 24 – D.I. 85, Stipulated Order for Discovery, Including Discovery of Electronically Stored Information ("ESI"), dated March 21, 2025 | A0742 |
| Exhibit 25 – Letter from N. Fung to C. Nyarady ███████ ████████████████████████████, dated May 16, 2025 | A0760 |
| Exhibit 26 – Letter from N. Fung to C. Nyarady, dated June 30, 2025 | A0768 |
| C.A. No. 1:24-cv-00490-MN, Plaintiffs' Responsive Letter Brief to Special Master Rychlicki, dated August 7, 2025 ██████████████████████████████ | A0774 |
| Exhibit 1 –Email from C. Nyarady to Arm's Counsel, dated July 1, 2025 | A0781 |
| Exhibit 2 – Email from J. Emerick to Qualcomm's Counsel, dated July 11, 2025 | A0783 |
| Exhibit 3 – Email from J. Apkon to Arm's Counsel, dated July 11, 2025 | A0786 |
| Exhibit 4 – Email from P. Evangelatos to Qualcomm's Counsel, dated July 16, 2025 | A0788 |
| Exhibit 5 – Plaintiffs' Responses and Objections to Arm Ltd.'s First Notice of Deposition of Qualcomm Inc. and Qualcomm Technologies, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6), dated June 23, 2025 ██████████ | A0790 |
| Exhibit 6 – Letter from J. Emerick to C. Nyarady, dated July 25, 2025 ██████████████████ | A0800 |
| Exhibit 7 – Excerpts from Plaintiffs' Responses and Objections to Defendant's Second Set of Requests for Production (Nos. 59-122), dated April 14, 2025 ████████████ | A0802 |
| Exhibit 8 – Letter from C. Nyarady to N. Fung, dated May 29, 2025 ██████████████████ | A0809 |

3

| Document | Page Range |
|---|---|
| Exhibit 9 – Excerpts from the July 28, 2025, Meet-and-Confer Transcript | A0813 |
| Exhibit 10 – Excerpts from the July 7, 2025, deposition transcript of Ziad Asghar ███████████████ | A0818 |
| Exhibit 11 – Letter from C. Nyarady to J. Emerick, dated April 24, 2025 ████████████████ | A0823 |
| Exhibit 12 – QCARM_3482711 ██████ | A0826 |
| Exhibit 13 – QCARM_3482703 ██████ | A0830 |
| Exhibit 14 – Excerpts from Plaintiffs' Responses and Objections to Defendant's First Set of Requests for Production (Nos. 1-58), dated March 10, 2025 ██████ | A0836 |
| Exhibit 15 – Plaintiff's First Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1-4, 7, and 9), dated June 25, 2025 ████████ ████ | A0843 |
| Exhibit 16 – Letter from C. Nyarady to J. Emerick, dated April 18, 2025 ███████ | A0887 |
| Exhibit 17 – Letter from J. Emerick to C. Nyarady, dated April 22 16, 2025 ████ | A0890 |
| Exhibit 18 – Excerpts from Plaintiff's Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1-9), dated July 11, 2025 ████████ ██ | A0896 |
| Exhibit 19 – Excerpts from the June 25, 2025, deposition transcript of Gerard R. Williams III ████████ ████ | A0913 |
| Exhibit 20 – Excerpts from the July 9, 2025, deposition transcript of Jignesh Trivedi ████████ | A0917 |
| Exhibit 21 – Excerpts from the July 3, 2025, deposition transcript of Jeffery B. Golden ████████ ██ | A0921 |

4

| Document | Page Range |
|---|---|
| Exhibit 22 – Excerpts from the May 28, 2025, Meet-and-Confer Transcript | A0925 |
| Exhibit 23 –Plaintiffs' Third Supplemental Privilege Log, dated July 10, 2025 ████████████████████████ | A0933 |
| Exhibit 24 – Excerpts from the July 11, 2025, deposition transcript of Ann Cathcart Chaplin ████████ ████████ | A1112 |
| Exhibit 25 – Letter from C. Nyarady to J. Emerick, dated April 28, 2025 ████████ | A1116 |
| Exhibit 26 – Email from J. Braly to Arm's Counsel, dated May 17, 2025 | A1119 |
| C.A. No. 1:24-cv-00490-MN, Defendant Arm Holdings plc's Letter Brief to Special Master Rychlicki Regarding Subsequent Events relating to Arm's Motion to Compel Production of Qualcomm's Media Communications, dated December 4, 2025 ████████████████ | A1123 |
| Declaration of Jay Emerick in Support of Defendant Arm Holdings plc's Letter Brief to Special Master Rychlicki Regarding Subsequent Events relating to Arm's Motion to Compel Production of Qualcomm's Media Communications, dated December 4, 2025 ████████████ | A1127 |
| Exhibit 1 – *Bloomberg* article entitled "South Korea Antitrust Regulators Inspect Arm's Office in Seoul," by Josh Sisco, dated November 19, 2025 | A1132 |
| C.A. No. 1:24-cv-00490-MN, Plaintiffs' Response to Defendant's Letter Brief to Special Master Rychlicki Regarding Subsequent Events relating to Arm's Motion to Compel Production of Qualcomm's Media Communications, dated December 11, 2025 ████████████ | A1135 |
| Exhibit 1 – Excerpts from Arm Holdings plc's Second Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1-3), dated September 5, 2025 ████ ████████████ | A1139 |

5

| Document | Page Range |
|---|---|
| Exhibit 2 – Excerpts from the June 30, 2025, deposition transcript of Spencer Collins ███████████████████████ | A1150 |
| Exhibit 3 – Excerpts from the July 17, 2025, deposition transcript of Paul Kranhold ████████████████████████ | A1153 |
| Exhibit 4 – Excerpts from the July 4, 2025, deposition transcript of Kenneth Siegel ██████████████████████ | A1156 |
| Exhibit 5 – Excerpts from the July 7, 2025, deposition transcript of Rene Haas ████████████████████████ | A1161 |
| Exhibit 6 – Excerpts from Plaintiffs' Responses and Objections to Defendant's Third Set of Requests for Production (Nos. 123-173), dated May 1, 2025 ███████ | A1164 |
| Exhibit 7 – Excerpts from the May 23, 2025, Meet-and-Confer Transcript | A1175 |
| Exhibit 8 – Excerpts from Arm Holdings Plc's Objections and Responses to Qualcomm's Sixth Set of Requests for Production (Nos. 187-191), dated June 23, 2025 ███████ | A1181 |
| Exhibit 9 – Excerpts from the July 11, 2025, deposition transcript of Ann Cathcart Chaplin ████████████████ ███ | A1186 |
| Exhibit 10 – Excerpts from the July 3, 2025, deposition transcript of Christiano R. Amon ██████████████ ███ | A1194 |
| Exhibit 11 – Excerpts from the July 2, 2025, deposition transcript of Christopher Patrick ███████████████ ███ | A1200 |
| C.A. No. 1:24-cv-00490-MN, Excerpts from Transcript of Proceedings before Helena C. Rychlicki, Esq. – Special Discovery Master, dated August 14, 2025 ████████ ████████████ | A1206 |

6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
Delaware corporation,

        Plaintiffs,

  v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a
U.K. corporation,

        Defendant.

C.A. No. 24-490-MN



### DEFENDANT ARM HOLDINGS PLC'S
### LETTER BRIEF TO SPECIAL MASTER RYCHLICKI

Dated: August 1, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A0001**

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

2

**A0002**

Dear Special Master Rychlicki:

Qualcomm alleges across eight counts that Arm breached two contracts, tortiously interfered with Qualcomm's customer relationships, and engaged in unfair competition in violation of the California UCL. Yet Qualcomm still has not disclosed the basic contours of its claims against Arm, beyond what it alleges in its Complaint, let alone provided the discovery Arm needs to defend itself. Qualcomm's interrogatory responses largely recycle the Complaint (Exs. 14-15), and it refuses to produce witnesses on important 30(b)(6) topics (Ex. 12). It refuses to produce documents responsive to more than **80 RFPs** (Exs. 1-3);[1] for the requests where it has agreed to produce documents, it searched for ESI using overly limited terms with the wrong custodians. In keeping with the Scheduling Order's directive that "the more detail a party provides, the more detail a party shall receive," D.I. 44 at 4, Arm submitted detailed responses to Qualcomm's interrogatories. Exs. 4-7. Arm should get the same from Qualcomm and have the opportunity to conduct additional depositions once Qualcomm provides fulsome responses.

**<u>Qualcomm's Refusal to Provide Deposition Dates</u>**: Qualcomm refuses to provide a deposition date for Pradeep Kanapathipillai. This witness is relevant to Qualcomm's claim that Arm's alleged withholding of certain materials (OOB and ACK patches) harmed Qualcomm, including whether it had to "expend[] extra time and resources." Ex. 8, ¶ 96; Ex. 9 at 13:16-21; 68:13-70:13, 87:16-88:9 (Qualcomm's Senior Director of Engineering testifying █████████████████████████████████████████████).

Arm noticed Mr. Kanapathipillai's deposition on June 12. On June 27, Qualcomm offered Mr. Kanapathipillai for July 16 (five days after fact discovery closed). On June 30, Arm requested a date that was before the close of fact discovery. Qualcomm refused, and on July 11, it unilaterally cancelled the July 16 date and refused to provide new dates. In contrast, Arm provided deposition dates for every witness Qualcomm has noticed—even when Qualcomm served one of those notices, for Mohamed Awad, after the deadline the local rules impose. *See* D. Del. LR 30.1; D.I. 289; Ex. 10 at 4; Ex. 11. Qualcomm should make Mr. Kanapathipillai available for a deposition.

**<u>Qualcomm's Refusal to Provide Witnesses on Certain 30(b)(6) Topics</u>**: Qualcomm refuses to provide witnesses on, and unduly narrowed the scope of, several 30(b)(6) Topics.[2] For example, Topic 81 seeks testimony on Qualcomm's market power, influence, or position with respect to CPUs, which is relevant to whether Arm's conduct can "harm or threaten to harm competition for CPU … designs" or "pressure [Qualcomm's customers] not to acquire products from Qualcomm." Ex. 8, ¶ 207. Qualcomm improperly changed this Topic to "Qualcomm's competitive intelligence analysis regarding Arm." Ex. 12. Qualcomm refuses to produce a witness on Topic 59, which concerns Qualcomm's decision to disclose the Notice of Breach Letter in its November 6, 2024, Form 10-K. Whether and when Qualcomm would have disclosed the letter on its own, absent the *Bloomberg* article regarding the letter, is relevant to Qualcomm's tortious interference claims and

---

[1] RFPs 6, 8, 10, 12-13, 26, 28, 30, 34, 37, 52-53, 56-57, 59-63, 66, 74-75, 78-81, 83-84, 87-88, 90, 93, 105, 108-109, 111-113, 116, 120, 124-127, 129, 131-136, 141-160, 165-168, 171, 173.

[2] Ex. 12, Topic Nos. 38, 52, 55, 59-61, 63, 76-77, 80-82, 84-85; Ex. 13, 7/25/2025 Ltr. from J. Emerick.

3

**A0003**

Arm's defenses. *See* Ex. 14; *see e.g.*, Ex. 8, ¶¶ 29, 33-34, 151-161; 181-203. Also, Qualcomm narrowed Topics 60 and 61, which concern Qualcomm's claims regarding disclosures or communications with third parties about the ALA breach allegations. Qualcomm cannot allege a claim and seek Arm's 30(b)(6) testimony on Arm's communications with the media yet refuse to provide testimony on topics seeking Qualcomm's disclosures to the same sources. Qualcomm should provide 30(b)(6) witnesses for the topics it has improperly withheld testimony.

**Qualcomm's Improper "Relevance" Objections**: Many disputes over Arm's discovery requests concern Qualcomm's erroneous view that only Arm's conduct is relevant, but Qualcomm's conduct is not—even where it bears directly on Qualcomm's own allegations and Arm's defenses. *Keel v. Del. State Univ. Bd. of Trustees*, 2021 WL 9649436, at *2 (D. Del. Mar. 30, 2021). Qualcomm objected to requests that quote its own Complaint. *See, e.g.*, Ex. 1, RFP 6 (Qualcomm's efforts to reduce its reliance on Arm); RFP 8 (alleged harms to Qualcomm's customer relationships); RFP 37 (Qualcomm's entitlement to deliverables under the ALA for its Nuvia-based technology); RFP 57 (potential termination of the ALA); Ex. 14, ROG 2 (Arm's alleged breach of the ALA); ROG 4 (Arm's knowledge of Qualcomm's existing or prospective business relationships); ROG 6 ("required" deliverables under the ALA); Ex. 8, ¶¶ 12-19, 52, 66, 150, 156-161. When asked, Qualcomm contended that discovery into the bases of those quotes is irrelevant because they come from the Complaint's background section, not the counts. But those counts "incorporate by reference all allegations set forth in the preceding paragraphs as though fully set forth" therein, *E.g.*, Ex. 8, ¶ 167, and Qualcomm relies on those allegations to oppose Arm's pending motion to dismiss.

These are the most blatant examples. Qualcomm also labels Arm's licensing practices "unfair," yet refuses to produce information about its own licensing arrangements and agreements, even for products that use Arm's ISA, on the same basis. *See, e.g.*, Ex. 2, RFPs 108-109, 116. Qualcomm's treatment of its licensees, Qualcomm's previous testimony regarding licensing practice in UCL litigation, and its own conduct is relevant to whether Arm's licensing conduct is "unfair," unscrupulous, or "harms competition." *See Bardell v. Banyan Del.,* 2024 WL 3273498, at *1 (D. Del. July 2, 2024). Qualcomm should provide discovery on the requests it is improperly claiming lack of relevance.

**Qualcomm's Breach Claim Deficiencies**: Qualcomm refuses to provide discovery necessary for Arm to assess Qualcomm's claim that Arm breached its ALA by not providing OOBs and ACK patches. In response to Arm's ROG 6 seeking Qualcomm's bases for alleging breach, Qualcomm provides no specificity; it simply refers to the Complaint and quotes portions of the ALA. Other than identifying high level material types (OOB and ACK patches), Qualcomm provides no detail on which OOB or ACK patches were allegedly withheld, or for which designs. Despite alleging that it had to "expend[] extra time and resources," Qualcomm refuses to describe the circumstances of that expenditure. Ex. 8, ¶ 96. For example, Qualcomm has largely refused to produce information about its "efforts to verify compliance" with Arm's ISA, RFP 149, or documents related to "validation" of compliant cores, RFP 160. Qualcomm's interrogatory responses similarly do not describe its verification efforts for any particular core or identify or describe any difference between Qualcomm's previous verification efforts and any allegedly increased verification efforts that Qualcomm contends resulted from Arm's alleged breach. *See* Ex. 14, ROG 13. Qualcomm should be precluded from going beyond its these responses. *Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, No. CV 15-819-LPS-CJB, 2017 WL 11558096 at *7-13

4

**A0004**

(D. Del. Dec. 11, 2017) (concluding that "Plaintiffs did not timely supplement their discovery responses" and granting Defendants motion to strike Plaintiffs' new damages theory).

**Qualcomm's Tortious Interference Claim Deficiencies**: Qualcomm has not provided meaningful discovery related to its tortious interference claims. Qualcomm has alleged that Arm interfered with Qualcomm's relationships with two companies (Smartphone Company and AI and Ecosystem Company) based on a notice of material breach letter that Arm served on Qualcomm, and that press outlets publicly reported. Qualcomm has prevented Arm from developing its defenses to these allegations by sealing the customers' names and refusing to share the identities with Arm's in-house counsel. And Qualcomm has refused to produce its own communications with the media or customers about its rights under the Qualcomm ALA despite alleging that Arm's statements about the same damaged Qualcomm's customer relationships. *See* Ex. 3, RFPs 124-127, 129, 131, 142. Indeed, three of Qualcomm's claims center on Arm's supposedly wrongful, tortious, and unscrupulous "leaking" of a letter "to the media," *e.g.*, Ex. 8, ¶ 206, but Qualcomm refuses to produce discovery on its publication of the letter in its SEC filings, just days later, and refuses to produce documents concerning its own "leaking," including for a story about confidential competition complaints by the same reporter at the same news outlet Arm communicated with. *See* Ex. 3, RFPs 145-147, 157-159. Qualcomm should have to provide information on its own communications with the media, and it should unseal the identities of the companies.[3]

**Qualcomm's Competition-Related Deficiencies**: Arm served interrogatories seeking the bases of Qualcomm's UCL claim. *See* Exs. 14-15, ROGs 5, 7-8. Qualcomm refused to meaningfully answer; instead, its responses are comprised of (a) nearly identical paragraphs distinguished by trivial changes; (b) generalized statements devoid of explanation or detail; and/or (c) bare references to other documents. *See* Exs. 14. Those responses are unacceptable. *See In re Wilmington Tr. Secs. Litig.*, 2017 WL 2457456, at *2 (D. Del. June 6, 2017). And although Qualcomm later purported to supplement its responses—and setting aside that Arm has independent gripes with those supplements on which the parties continue to meet and confer— those supplements did not remediate the substantive deficiencies Arm identified and briefed in June. *See* Ex. 14, ROGs 7-8.

Qualcomm says it "reserves the right to prove that Arm's business acts and practices were 'unfair' under ***any tests*** California courts apply." Ex. 17 at 2 (emphasis added). One of those tests, which applies in disputes between sophisticated corporations, requires proof that Arm's conduct "[1] threatens an incipient violation of an antitrust law, or [2] violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [3] otherwise significantly threatens or harms competition." *Cel-Tech Comm'cns, Inc. v. L.A. Cell. Tel. Co.*, 20 Cal. 4th 163, 187 (1999). But Qualcomm refuses to identify the antitrust laws supposedly implicated by Arm's conduct. *See* Ex. 14, ROGs 5, 7-8; *see also Gregory v. Albertson's Inc.*, 104 Cal. App. 4th 845, 856 (2002). Without this basic information, Arm cannot develop its legal or

---

[3] Arm intends to identify additional issues with Qualcomm's interrogatory responses in its next brief.

factual defenses to show its conduct does not threaten an incipient antitrust violation or violate the spirit of those laws.

Qualcomm's refusal to identify relevant market(s) with respect to its UCL claim has prejudiced Arm's ability to obtain discovery. *See Novanta Corp. v. Iradion Laser*, 2016 WL 4987110, at *7 (D. Del. Sept. 16, 2016). Here, the relevant market could be any number of things ranging from an all-CPU and/or SoC market, specific market segments (mobile, data center, automotive), or the market for instruction set architectures themselves. It is impossible to say how "competition" is harmed in the absence of a market or identification of any alternative products. *See Gamboa v. Apple*, 2025 WL 660190, at *6 (N.D. Cal. Feb. 28, 2025) ("Without a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy competition."); *Racek v. Rady Children's Hosp. of San Diego*, 2012 WL 2947881, at *6 (Cal. App. July 20, 2012) (similar); *Sun Microsystems v. Microsoft*, 87 F. Supp. 2d 992, 1001-02 (N.D. Cal. 2000) (similar); *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018).

No court has adopted Qualcomm's *sui generis* position that under the UCL it need not even ***identify*** a relevant market. Qualcomm cited *PeopleBrowsr v. Twitter*, 2013 WL 843032 (N.D. Cal. Mar. 6, 2013) in its interrogatory responses, but the issue there concerned federal subject matter jurisdiction—the court did not hold that parties could plead UCL claims without identifying any relevant market. In *Epic Games v. Apple*, there was extensive discovery (expert and otherwise) into the relevant market, but the holding was simply that, even if a party does not ***prove*** a market to Sherman Act certainty under the federal balancing test, a plaintiff can still satisfy the UCL. 67 F.4th 946, 1001 (9th Cir. 2023). It did not hold that a party need not identify a relevant market, competitors within that market, or substitutable products at issue. Nor has Qualcomm ever argued that its UCL claim raises the kind of "quick look" legal question related to price fixing in which "a precise market-definition is not needed." *Id.* at 1002. Qualcomm is obligated to explain the theory on which it plans to litigate its UCL claim, including in what market competition was harmed, what competitors were harmed, how so, what products were affected, and what effect that had on consumers in that market. Qualcomm must actually answer Arm's competition-related interrogatories, as the limited information provided so far has significantly hampered Arm's defense.

**Qualcomm's ESI Search Terms and Custodians Are Deficient**: Qualcomm's ESI search terms are inadequate. *See* Ex. 24. Qualcomm provided its first and only list of search terms on March 17 in response to Arm's first set of RFPs, even though Arm subsequently served additional RFPs (on March 14, April 1, June 9, and June 11) covering additional issues. Exs. 18-22. Further, Qualcomm was permitted to amend its complaint, *see* D.I. 137, which added new claims regarding Arm's alleged breach of the TLA and licensing of v10. Yet Qualcomm has refused to supplement or broaden its terms or custodians. *See* Exs. 18, 25-26. *McGovern v. Amazon Web Servs.*, No. 1:20-cv-01399-SB, D.I. 114 (D. Del. Dec. 11, 2023); *id.* D.I. 118 (D. Del. Dec. 22, 2023). Further, Qualcomm's March 17 terms are unduly narrow, containing overly limiting conjunctions and including only portions of relevant terms without root expanders (*e.g.*, "RISC," without a root expander, instead of "RISC*" or "RISC-V," the proper name). *See Frontier Commc'ns v. Google*, 2014 WL 12606321, at *4-5 (D. Del. Feb. 3, 2014) (ordering party to "revise [a] proposed string search … to include the plaintiff's name and additional variations of the term"). For core issues like unfair competition and Arm's alleged withholding of OOB and ACK patches, Qualcomm has only a ***single*** search term. Qualcomm has only three narrow search terms on TLA and v10 that do

6

**A0006**

not adequately cover those issues.  Moreover, Qualcomm refuses to run its terms against witnesses it has identified as knowledgeable about the key issues and has refused to supplement its search term custodians to include witnesses who testified they are knowledgeable about key case issues. Exs. 25-26.  Qualcomm cannot withhold relevant discovery by shirking its ESI obligations.

Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

Words: 2,376

7

**A0007**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
Delaware corporation,

        Plaintiffs,

v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a
U.K. corporation,

        Defendant.

C.A. No. 24-490-MN



## DECLARATION OF MATTHEW J. McINTEE IN SUPPORT OF
## ARM'S MOTION TO COMPEL

I, Matthew J. McIntee, declare as follows:

I am an attorney with the law firm of Kirkland & Ellis LLP, counsel for Arm Holdings PLC ("Arm") in the above referenced action. I submit this declaration in support of Arm's Motion to Compel.

1.　　Attached as Exhibit 1 is true and correct copy of Plaintiffs' Responses and Objections to Defendant's First Set of Requests for Production (Nos. 1-58) ████████ dated March 10, 2025.

2.　　Attached as Exhibit 2 is a true and correct copy of Plaintiffs' Responses and Objections to Defendant's Second Set of Requests for Production (Nos. 59-122) ████████ dated April 14, 2025.

3.　　Attached as Exhibit 3 is a true and correct copy of Plaintiffs' Responses and Objections to Defendant's Third Set of Requests for Production (Nos. 123-173) ████████ dated May 1, 2025.

4.      Attached as Exhibit 4 is a true and correct copy of Arm's First Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1-3) ███ ███████████████████████ dated July 11, 2025.

5.      Attached as Exhibit 5 is a true and correct copy of Arm's First Supplemental Response to Qualcomm's Amended Interrogatory No. 3 █████████████████████████ ████ dated July 11, 2025.

6.      Attached as Exhibit 6 is a true and correct copy of Arm's First Supplemental Response to Qualcomm's Amended Interrogatory Nos. 4-11 █████████████████████ █████████ dated July 11, 2025.

7.      Attached as Exhibit 7 is a true and correct copy of Arm's First Supplemental Response to Qualcomm's Third Set of Interrogatories (No. 12) ██████████████████ ██████████ dated July 11, 2025.

8.      Attached as Exhibit 8 is a true and correct copy of D.I. 137, Second Amended Complaint ████████████ dated June 3, 2025.

9.      Attached as Exhibit 9 is a true and correct copy of excerpts from the June 25, 2025, Deposition of Gerard Williams█████████████████████████.

10.     Attached as Exhibit 10 is a true and correct copy of Arm's Rule 26(a)(1) Second Supplemental Initial Disclosures ██████████ dated June 12, 2025.

11.     Attached as Exhibit 11 is a true and correct copy of Email from J. Emerick, dated June 16, 2025.

12.     Attached as Exhibit 12 is a true and correct copy of Plaintiffs' Responses and Objections to Arm's First Notice of Deposition of Qualcomm Inc. and Qualcomm Technologies, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6) ██████████ dated June 23, 2025.

2

**A0009**

13.     Attached as Exhibit 13 is a true and correct copy of Letter from J. Emerick, dated July 25, 2025 ██████████████████████

14.     Attached as Exhibit 14 is a true and correct copy of Plaintiffs' Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1-9) ████ ██████████████████ dated July 11, 2025.

15.     Attached as Exhibit 15 is a true and correct copy of Plaintiffs' Supplemental Responses and Objections to Defendant's Second Set of Interrogatories (Nos. 10-13) ████ ██████████████, dated July 11, 2025.

16.     Exhibit 16 Intentionally Omitted.

17.     Attached as Exhibit 17 is a true and correct copy of Letter from C. Nyarady ███████ dated April 28, 2025.

18.     Attached as Exhibit 18 is a true and correct copy of Letter from C. Nyarady, dated March 17, 2025.

19.     Attached as Exhibit 19 is a true and correct copy of Arm's Second Set of Requests for Production to Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (Nos. 59-122) ████████ dated March 14, 2025.

20.     Attached as Exhibit 20 is a true and correct copy of Arm's Third Set of Requests for Production to Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (Nos. 123-173) ████████████████████ dated April 1, 2025.

21.     Attached as Exhibit 21 is a true and correct copy of Arm's Fourth Set of Requests for Production (Nos. 174-227) ████████ dated June 9, 2025.

22.     Attached as Exhibit 22 is a true and correct copy of Arm's Fifth Set of Requests for Production (Nos. 228-287) ████████ dated June 11, 2025.

3

**A0010**

23.    Attached as Exhibit 23 is a true and correct copy of D.I. 84, Stipulated Protective Order, dated March 21, 2025.

24.    Attached as Exhibit 24 is a true and correct copy of D.I. 85, Stipulated Order for Discovery, Including Discovery of Electronically Stored Information ("ESI"), dated March 21, 2025.

25.    Attached as Exhibit 25 is a true and correct copy of Letter from N. Fung to C. Nyarady ██████████████████████ dated May 16, 2025.

26.    Attached as Exhibit 26 is a true and correct copy of Letter from N. Fung to C. Nyarady, dated June 30, 2025.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 1st day of August 2025 at Washington, D.C.

*/s/ Mathew J. McIntee*
Matthew J. McIntee

4

**A0011**

# Exhibit 1

**A0012**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,                )
   a Delaware corporation; and           )
QUALCOMM TECHNOLOGIES, INC.,          )
   a Delaware corporation,               )
                                                )
               Plaintiffs,                   )
                                   )    C.A. No. 24-490 (MN)
     v.                                 )
                                   )
ARM HOLDINGS PLC., f/k/a ARM LTD.,    )
   a U.K. corporation,                  )
                                   )
             Defendant.                      )

## PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S
## FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1–58)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively "Qualcomm") by and through their attorneys, hereby respond and object to Arm's ("Defendant") First Set of Requests for Production (Nos. 1–58) ("Requests").

The following responses are based solely on the information that is presently available and specifically known to Plaintiffs, and are given without prejudice to Plaintiffs' right to supplement with any subsequently-discovered facts. Plaintiffs reserve the right to supplement the following responses and to change any and all responses therein as additional facts are ascertained, analyses are made, and legal research is completed.

Plaintiffs respond to the Requests on the basis of information available at the time the responsive information was gathered, within the limits of time, and subject to the objections described below. Plaintiffs respond to the Requests as they interpret and understand each Request set forth herein. If Defendant subsequently asserts an interpretation of any of the Requests that differs from Plaintiffs' understanding, Plaintiffs reserve the right to supplement their objections and/or responses.

A0013

No incidental or implied admissions are intended by the responses herein. Plaintiffs' willingness to respond to any particular Request does not constitute an admission that Plaintiffs agree with any characterization, definition, or assumption contained in the Request or an assumption or an acknowledgement by Plaintiffs that the Request is proper, that the information sought is within the proper bounds of discovery or that demands for similar information will be treated in similar fashion. Furthermore, a statement that responsive documents will be produced in response to a particular Request does not mean that Plaintiffs know any such document exists or is in Plaintiffs' possession, custody, or control. The fact that Plaintiffs have provided a response to any particular request should not be taken as an admission that Plaintiffs accept or admit the existence of any fact or interpretation or conclusion of law set forth or assumed by such request or that said response constitutes admissible evidence. The fact that Plaintiffs have provided a response to any request is not intended to be, and shall not be construed as, a waiver by Plaintiffs of any part of any objection to any such request.

Plaintiffs' responses to the Requests contain, provide, or refer to information that is protected under District of Delaware Local Rule 26.2 and the agreed upon provisions of the proposed Protective Order in this matter and should therefore be treated accordingly. Plaintiffs reserve the right to amend or supplement their objections and/responses as appropriate once the Court enters a Protective Order and ESI Order in this matter.

Plaintiffs have not yet completed their discovery relating to this case and their investigation of the facts is ongoing. Plaintiffs anticipate that additional information responsive to the Requests may be obtained as discovery proceeds. Plaintiffs' responses to the Requests are therefore made without prejudice to Plaintiffs' right to amend, correct or supplement their responses to the Requests. Any responses will be supplied by Plaintiffs subject to all objections as to competence, relevance, materiality, propriety, admissibility, and any and all other objections on any grounds

that would require the exclusion of the response or information if such were offered in evidence, all of which objections and grounds are hereby expressly reserved and may be interposed at the time of trial.

## **GENERAL OBJECTIONS**

1. Plaintiffs object to each Request to the extent that it seeks to impose greater or different obligations on Plaintiffs than those provided for by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any discovery orders entered into this case, any other applicable Court orders, or agreements reached by the parties.

2. Plaintiffs object to each Request to the extent that it seeks documents, things, or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. Nothing contained in these Responses and Objections is intended to be, nor shall in any way be, construed as a waiver of any such privilege, immunity, or protection. Specific Objections on the grounds of privilege are provided for emphasis and clarity only, and the absence of a Specific Objection is neither intended, nor should be interpreted, as evidence that Plaintiffs do not object to a Request on the basis of an applicable privilege, immunity, or protection. Any disclosure of any such privileged or protected material in responses to any Request is inadvertent and not intended to waive those privileges and protections.

3. Plaintiffs object to the Requests to the extent they seek documents and things that Plaintiffs have a legal or contractual obligation not to disclose, or subject to third-party confidentiality obligations. Plaintiffs will not provide such documents or things without either the consent of the relevant third-party or an order compelling the production thereof, or without providing the relevant third-party an opportunity to object to the production.

3

A0015

4.      Plaintiffs object to each Request to the extent that it purports, or may be construed, to call for the production or identification of "any," "all," "each," or "every" document or thing pertaining to a specific subject, on the ground that such language is overbroad and unduly burdensome. As used herein, the term overbroad includes Requests that, so characterized, seek, at least in part, documents or information irrelevant in scope, subject matter, or time period to this lawsuit or to the particular matters at issue in this lawsuit. For example, the requests for "All Communications" seek administrative or ministerial discussions that have little if any substantive value and do not prove or disprove any claim or defense in the case. To the extent that a search is required, Plaintiffs will perform a reasonable, targeted search that accounts for the burden and relevance, and is designed to reasonably and proportionately identify requested documents, to the extent any exist.

5.      Plaintiffs object to the Requests to the extent that they call for discovery that is unreasonable or not proportional to the needs of the case, or not relevant to any claim or defense of any party in this action. Plaintiffs further object to the Requests to the extent they seek to re-litigate issues that were the subject of the jury verdict in *Arm v. Qualcomm*, C.A. No. 22-1146 (D. Del.).

6.      Plaintiffs object to the Requests to the extent that they purport to require Plaintiffs to create, generate, compile, or develop documents not kept, or in a form not kept, in the ordinary course of Plaintiffs' businesses.

7.      Plaintiffs object to the Requests to the extent that they are not reasonably limited in time. Plaintiffs will agree to produce documents dating from June 1, 2022 forward, unless otherwise specified. Specific Objections on the grounds that a Request is not reasonably limited in time are provided for emphasis and clarity only, and the absence of a Specific Objection is

**A0016**

neither intended, nor should be interpreted, as evidence that Plaintiffs do not object to a Request on this basis.

8.    Plaintiffs object to the Requests and each and every instruction and definition therein to the extent that any Request: (a) seeks the production of documents or disclosure of information not relevant to this litigation, nor proportional to the needs of the case; (b) is overbroad, unduly burdensome, harassing, oppressive, or duplicative; (c) is vague or ambiguous; (d) calls for the disclosure of information not within Plaintiffs' possession, knowledge, custody, care, or control; (e) calls for the disclosure of information already in Defendant's possession, knowledge, custody, care, or control; (f) calls for the production of documents or disclosure of information readily available to Defendant from public or third-party sources; or (g) calls for the production of information already produced to Defendant in the prior litigation, *Arm v. Qualcomm et al.*, C.A. No. 22-1146 (D. Del).

9.    Plaintiffs' election to respond to a Request, notwithstanding the objectionable nature of the Request, is not: (a) an acceptance of, or agreement with, any of the characterizations or purported descriptions of any facts, circumstances, events, or legal conclusions contained in the Requests; (b) a concession or admission that the materials are relevant to this case or would be admissible at trial; (c) a waiver of the General Objections or the objections asserted in response to that specific Request; (d) an admission that any such documents or things exist; (e) an agreement that requests for similar information or documents will be treated in a similar manner; or (f) an acceptance of, or agreement with, any of the definitions in the Requests, to the extent that the definition or meaning of any defined term is at issue in this case.

10.    Plaintiffs' investigation of the facts in this proceeding and review of the relevant documents is ongoing. Accordingly, the objections and responses herein are based on present knowledge, information, and belief. Plaintiffs reserve the right to modify, supplement, or amend

any response and objection, if necessary or appropriate, in any way and at any time. Plaintiffs further reserve the right to object, at any hearing and any other proceeding in this litigation, to the use or admissibility into evidence of: (a) any documents produced in response to the Requests; (b) any of the information contained in any such document; or (c) any other information provided in response to any Request.

11.   Consistent with paragraph 54 of the agreed upon provisions of the proposed Protective Order, in the event that Plaintiffs produce a document that is privileged, protected under Federal Rule of Evidence 502, or otherwise immune from disclosure, it will have been produced through inadvertence and shall not constitute a waiver of any privilege or immunity applicable (a) to that or any other document or (b) to communications concerning the subject matter of that or any other document.

12.   Plaintiffs object to the Requests to the extent that they assume disputed facts or legal conclusions in defining the documents requested. Plaintiffs hereby deny any such disputed facts or legal conclusions. Any documents or information produced by Plaintiffs in response to the Requests are without prejudice to this objection.

13.   Plaintiffs' General Objections apply to each and every Request and are incorporated by reference into each of the responses set forth below, which responses are made without waiver of, and subject to, these General Objections.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.   Plaintiffs object to the "Definitions" to the extent that they attempt to define words beyond or inconsistent with their ordinary meaning.

2.   Plaintiffs object to the definition of "Arm" or "Defendant" as vague and ambiguous to the extent the scope of "related corporate entities and their subsidiaries" is unclear.

3.      Plaintiffs object to the definition of "Qualcomm" of "Plaintiffs" as vague, ambiguous, overbroad, and unduly burdensome to the extent it is defined to include not only Qualcomm Incorporated and Qualcomm Technologies, Inc., but also persons or entities that are separate and distinct from Qualcomm Incorporated and Qualcomm Technologies, Inc., and over whom Plaintiffs exercise no control, such as but not limited to affiliates, consultants, independent contractors, experts, investigators, licensees, licensors, or collaborators.

4.      Plaintiffs object to the definitions of "You," "Your," and "Plaintiffs" as vague, ambiguous, overbroad, and unduly burdensome to the extent they seek information relating to persons or entities that are separate and distinct from Qualcomm Incorporated and Qualcomm Technologies, Inc., and over whom Plaintiffs exercise no control.  In responding to these requests, Plaintiffs interpret the terms "You," "Your," and "Plaintiffs" to refer only to the named parties in this action.  Plaintiffs also object to the definitions of "You," "Your," and "Plaintiffs" to the extent they purport to impose obligations on Plaintiffs beyond what is required by the Rules.  Plaintiffs will interpret the definition of "You," "Your," and "Plaintiffs" to impose no discovery obligation on any person or entity that is not a party to this litigation.

5.      Plaintiffs object to the definition of "ALA" as vague, ambiguous, and overbroad because it is not clear which agreement(s) "an Architecture License Agreement with Arm" refers to.  Plaintiffs will interpret "ALA" as synonymous with "Qualcomm ALA" and therefore to mean the Amended and Restated Architecture License Agreement ██ ███████████ dated ██████ ███, and amendments and annexes thereto.

6.      Plaintiffs object to the definitions of "Document" and its plural to the extent they purport to impose any obligations beyond what is required by the Federal Rules.  Plaintiffs further object to the definition of "Document" to the extent that it implies that Plaintiffs must collect or produce, e.g., computer programs, testing data, electronic sound records, and other types of files

7

A0019

that are typically not required to be collected or produced, as listed in the Proposed ESI Protocol Schedule A.

7.      Plaintiffs object to the definitions of "Communication" and its plural form to the extent they purport to impose any obligations beyond what is required by the Federal Rules.

8.      Plaintiffs object to the definitions of "Thing" and its plural form to the extent they purport to impose any obligations beyond what is required by the Federal Rules.

9.      Plaintiffs object to the definitions of "Identify," "Identifying," and "Identification" to the extent they purport to impose any obligations beyond what is required by the Federal Rules. Plaintiffs also object to the definitions of "Identify," "Identifying," and "Identification" to the extent they ask Plaintiffs to provide any information unknown to Plaintiffs or not within their possession, custody, or control, or beyond the scope of this litigation, including but not limited to "identifiers known or used by Qualcomm or others." Plaintiffs further object to the extent it seeks information other than the production of documents responsive to Defendant's First Set of Requests for Production. Plaintiffs will not create documents or provide narrative information to identify particular natural persons, entities, things, documents, or conversations. Plaintiffs further object to this definition on the ground that none of the Requests use the words "Identify," "Identifying," or "Identification."

10.     Plaintiffs object to the definition of "Disclose" because that term is not used in Defendant's Requests.

11.     Plaintiffs object to Instruction 2 on the ground that it imposes obligations beyond those provided for by the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Delaware.

12.     Plaintiffs object to Instruction 3 to the extent it states a procedure for the production of documents beyond those required by the Federal Rules of Civil Procedure. Pursuant to Fed. R.

Civ. P. 34(b)(2)(E), Plaintiffs will produce documents as they are kept in the usual course of business, as they were ordinarily maintained, or in a reasonably usable format, and in accordance with the agreed upon provisions of Parties' ESI Protocol.

13. Plaintiffs object to Instruction 5 to the extent that it is overbroad, unduly burdensome, and purports to impose requirements inconsistent with or more burdensome than those imposed by the local rules and applicable law. Plaintiffs have responded to the below requests and specified the documents that they will produce. Plaintiffs further object to Instruction 5 as vague and ambiguous to the extent it invokes responses and objections to interrogatories, rather than requests for production.

14. Plaintiffs object to Instruction 6, to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure, and because it is premature and contrary to the agreed upon provisions in the parties' proposed ESI Protocol and Protective Order.

15. Plaintiffs object to Instruction 7 to the extent it purports to require Plaintiffs to respond to Requests that are not reasonably limited in time, including on subjects other than those for which such discovery is permitted under the Delaware Default Standard for Discovery or as agreed upon in the parties' anticipated agreement(s) regarding electronic discovery. Plaintiffs will agree to produce documents dating from June 1, 2022, forward, unless otherwise specified.

16. Plaintiffs object to Instruction 8 on the ground as vague and ambiguous because it refers to interrogatories, rather than requests for production.

17. Plaintiffs object to the requested production date as unreasonably burdensome. Plaintiffs will produce documents at a reasonable time in a reasonable manner consistent with the Scheduling Order entered in this action.

██████████████

## SPECIFIC RESPONSES AND OBJECTIONS

**REQUEST FOR PRODUCTION NO. 1:**

All Documents, Communications, and Things You referenced, relied upon, or otherwise used in drafting Your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control that were referenced, relied upon, or otherwise used in drafting the Complaint, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents, Communications, and Things that You contend support your claims or that rebut your claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs object to this request to the extent that it calls for information that is publicly available and information that is in the possession, custody, or control of Defendant. Plaintiffs object to this

Request to the extent it is duplicative of other of Defendant's requests, including, for example, Request No. 1.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that support or rebut the claims made in the Complaint.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents, Communications, and Things received by You in response to any Third-Party discovery sought by You related to this case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.

**Response:** Plaintiffs will produce documents produced by third parties in response to any subpoenas served by Plaintiffs in this matter.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents, Communications, and Things concerning Qualcomm's communications with Third Parties regarding this case or the *Arm Ltd v. Qualcomm et al.*, C.A. No. 22-1146 (D. Del.) lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things" and because it requests information that is not relevant to a claim

or defense in this case.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding Plaintiffs' communications with third parties that are relevant to the claims made in the Complaint.

## REQUEST FOR PRODUCTION NO. 5:

All Documents, Communications, and Things concerning Qualcomm's communications with customers of Arm or Qualcomm, potential customers of Arm or Qualcomm, or other Third Parties, regarding Arm or ████████████, including as alleged in paragraph 114 of Your Complaint that "multiple Qualcomm customers and business partners have contacted the company to express concern about the Breach Letter."

## RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs also object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to the Request on the grounds that it is irrelevant because it seeks materials related to communications beyond those that are related to the allegations made in the Complaint.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control, located through a reasonable,

12
**A0024**

targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding Plaintiffs' communications with third parties related to the Breach Letter discussed in paragraph 114 of the Complaint.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents, Communications, and Things concerning Qualcomm's attempts, efforts, motivation, and strategy for "Qualcomm to reduce its reliance on Arm," Dkt. 22 at 6.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs also object to this Request on the ground that it is irrelevant as it doesn't relate to any claim or defense in this case. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of the Request.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents, Communications, and Things that You expect to use or introduce into evidence at any hearing, trial, submission to the Court, or deposition in this case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the

grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs also object to this Request to the extent it seeks documents in advance of the deadlines as set forth in the Scheduling Order. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including Request Nos. 1 and 2.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, in accordance with the requirements of District of Delaware Local Rules, Federal Rules of Civil Procedure, and any orders of the Court.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents, Communications, and Things supporting or rebutting Your contention that Qualcomm's customer relationships have been harmed by Arm, including:

(1) Your contention in paragraph 25 of Your Complaint regarding Arm's alleged "bad-faith claim that Qualcomm has breached the QC ALA" and the "Breach Letter" referred to in paragraph 19 of Your Complaint,

(2) Your contention in paragraph 97 of Your Complaint that "Arm has also deliberately sought to impair Qualcomm's standing and relationships with current and prospective customers," that Arm "has engaged in a misinformation campaign to mislead Qualcomm's customers into believing that Qualcomm will not be able to deliver licensed Arm-compatible products after 2024, and that Qualcomm customers must obtain their own direct licenses from Arm," and that "Arm continued this misinformation campaign by declaring without basis that Qualcomm has materially breached the QC ALA and leaking the Breach Letter. By doing so, Arm has caused tangible harm to Qualcomm's customer relationships,"

(3) Your contention in paragraph 110 of your Complaint that Arm "intended to embarrass Qualcomm and to interfere with its relationships with its current and potential customers and business partners, including by creating unwarranted uncertainty about Qualcomm's ability to continue delivering licensed Arm-compatible products," and

(4) Your contention in paragraph 112 of Your Complaint that "Arm leaked the Breach

14

A0026

███████████

Letter to distract from the Snapdragon® Summit and the groundbreaking products released at the Summit, and to ensure that the attention of Qualcomm's customers and business partners focused on the parties' licensing dispute rather than on Qualcomm's products, which pose a threat to Arm's own competitive ambitions."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 1 and 2. Plaintiffs further object to this request to the extent that it calls for information that is in the possession, custody, or control of Defendant.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding Qualcomm's contention that its "customer relationships have been harmed by Arm."

**REQUEST FOR PRODUCTION NO. 9:**

All Documents, Communications, and Things supporting or rebutting Your contention in paragraph 156 of Your Complaint that Arm's actions as alleged in the Complaint "harm or threaten to harm competition."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the

grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request to the extent it seeks materials that are duplicative of other of Defendant's requests, including, for example, Requests Nos. 1 and 2.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding how Arm's actions have harmed or threatened to harm competition in the semiconductor industry.

## REQUEST FOR PRODUCTION NO. 10:

All Documents, Communications, and Things concerning any pricing, price increases, or price decreases for Arm-compatible cores, CPUs, or products containing the same.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request on the ground that it is not relevant to any claim or defense in this litigation, including because it is not limited in time nor by any relevant product. Plaintiffs further object to this request to the extent that it calls for information that is in the possession, custody, or control of Defendant.

16

A0028

**Response:** Plaintiffs do not intend to produce documents in response to this request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of the request.

## REQUEST FOR PRODUCTION NO. 11:

All Documents, Communications, and Things regarding the performance and competitiveness of Arm-designed cores, CPUs, or products containing the same, including all Documents, Communications, and Things supporting or rebutting:

(1) Your contention in paragraph 41 of Your Complaint that "Arm fails to keep up with the state of the art in CPU design and performance, as it has in recent years," and that "any licensor of Arm's off-the-shelf cores may have difficulty building and marketing SoCs that can compete against those with more advanced custom CPUs,"

(2) Your contention in paragraph 47 of Your Complaint that "In recent years, as Arm's off-the-shelf implementation cores have fallen behind custom cores developed by other Arm ALA licensees, it has become more challenging for Qualcomm to compete by relying on Arm- designed cores. In particular, Arm has been unable to provide an implementation core that is competitive in the compute product segment; thus, the need for developing custom CPUs became more critical,"

(3) Your contention in paragraph 50 of Your Complaint that "Qualcomm's SoCs with custom CPUs compete more effectively against other Arm-compatible products, including those containing off-the-shelf Arm designs, and against rival suppliers of CPUs compatible with other ISAs (notably, Intel's x86)," and

(4) Your contention in paragraph 62 of Your Complaint that "products using Qualcomm custom CPUs can outcompete products using Arm's off-the-shelf designs."

## RESPONSE TO REQUEST FOR PRODUCTION NO. 11:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this request to the extent that it calls for information that is in the possession, custody, or control of Defendant.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents, Communications, and Things concerning any comparisons of any Arm-designed cores, CPUs, or products containing the same to any cores, CPUs, or products containing the same designed by Qualcomm, Nuvia, or any Third Party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request on the ground that it is not relevant to any claim or defense in this litigation. Plaintiffs further object to this request to the extent that it calls for information that is in the possession, custody, or control of Defendant.

**Response:** Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of the Request.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents, Communications, and Things concerning Qualcomm's attempts or efforts to reduce the royalties or licensing fees it pays or has paid to any Third Party, and to increase the royalties or licensing fees it receives or has received from any Third Party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to the Request on the ground that it is not relevant to any claim or defense in this case.

**Response:** Plaintiffs do not intend to provide documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of the Request.

## REQUEST FOR PRODUCTION NO. 14:

All Documents, Communications, and Things supporting or rebutting Your contention in paragraph 25 of Your Complaint that "important Qualcomm customers have delayed entering into new (or renewing existing) contracts with Qualcomm."

## RESPONSE TO REQUEST FOR PRODUCTION NO. 14:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 1 and 2.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

## REQUEST FOR PRODUCTION NO. 15:

All Documents, Communications, and Things supporting or rebutting Your contention in paragraph 25 of Your Complaint that "important Qualcomm customers . . . have insisted that Qualcomm provide them with additional commitments regarding its ability to deliver licensed products," and "required Qualcomm executives and employees to spend considerable time

responding to and alleviating customer inquiries."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 1 and 2.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents, Communications, and Things supporting or rebutting Your contention in paragraph 25 of Your Complaint that "Arm's campaign has not only deprived Qualcomm of the ability to finalize these business opportunities promptly and without providing additional commitments, but also required Qualcomm executives and employees to spend considerable time responding to and alleviating customer inquiries."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege,

the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including,

for example, Requests Nos. 1, 2, 14, and 15.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce

non-privileged documents in their custody, possession, or control located through a reasonable,

targeted search of agreed-upon custodians designed to reasonably and proportionately identify

responsive documents, to the extent any exist.

## REQUEST FOR PRODUCTION NO. 17:

All Documents, Communications, and Things supporting or rebutting Your contention in
paragraph 9 of Your Complaint that "Arm and Son promoted the Arm v. Qualcomm lawsuit to
Qualcomm's customers to sow fear, uncertainty, and doubt by suggesting that customers could not
rely on Qualcomm as a supplier and could be subject to retaliation by Arm if they did, including
by misrepresenting the terms of Qualcomm's licenses with Arm to Qualcomm's customers."

## RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General

Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the

grounds that it is overbroad and unduly burdensome, including because it requests "all Documents,

Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the

production of documents or the disclosure of information protected by the attorney-client privilege,

the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

Plaintiffs also object to this request to the extent that it calls for information that is in the

possession, custody, or control of Defendant. Plaintiffs further object to this Request as duplicative

of other of Defendant's requests, including, for example, Requests Nos. 1 and 2. Plaintiffs further

object to this request to the extent that it calls for information that is in the possession, custody, or

control of Defendant.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents, Communications, and Things supporting or rebutting Your contention in paragraph 114 of Your Complaint that "multiple Qualcomm customers and business partners have contacted the company to express concern about the Breach Letter."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 1 and 2.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents, Communications, and Things supporting or rebutting Your contention in paragraph 114 of Your Complaint that "several Qualcomm customers have deferred finalizing

pending business agreements pending resolution of the *Arm v. Qualcomm* litigation and until Qualcomm provides them with reassurances that it will be able to provide licensed Arm- compliant products."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 1 and 2.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents, Communications, and Things supporting or rebutting Your contention in paragraph 115 of Your Complaint that "a senior executive of the Smartphone Company informed a senior Qualcomm executive that the customer's legal and intellectual-property teams would need to confer with their counterparts at Qualcomm."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the

production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 1 and 2.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents, Communications, and Things supporting or rebutting Your contention in paragraph 115 of Your Complaint that the "Smartphone Company insisted on Qualcomm's providing additional reassurances before it will extend its existing business relationship with Qualcomm."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 1, 2, and 20.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable,

targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents, Communications, and Things supporting or rebutting Your contention in paragraph 116 of Your Complaint that the AI and Ecosystem Company "refused to finalize a term sheet for an agreement under which Qualcomm would design a custom chip" and "has stated to Qualcomm that before it finalizes that termsheet, it must first understand the implications of termination of the QC ALA on Qualcomm's ability to deliver the custom chips in question."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 1 and 2.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents, Communications, and Things supporting or rebutting Your contention in paragraph 116 of Your Complaint that "[a]s a result of the uncertainty stemming from Arm's assertion and leak of the Breach Letter, Qualcomm has been unable to finalize this valuable opportunity."

████████████

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 1, 2, and 22.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents, Communications, and Things supporting or rebutting Your contention in Paragraph 85 of Your Complaint that Arm's alleged failure to deliver the Out-of-Box (OOB) deliverables "forced Qualcomm to expend extra time and resources to run ACK tests to verify that its products are compliant with the Arm ISA."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 1 and 2.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

## REQUEST FOR PRODUCTION NO. 25:

All Documents, Communications, and Things supporting or rebutting Your contention in paragraph 86 of Your Complaint that Arm's alleged failure to deliver patches "forced Qualcomm to use its own engineers to address issues that would have been addressed by Arm's patches."

## RESPONSE TO REQUEST FOR PRODUCTION NO. 25:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 1, 2, and 24.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 26:**

All Documents, Communications, and Things relating to or comprising Your negotiations concerning any commercial relationships and business opportunities, including Your internal analyses of any such relationships and opportunities, with the "Smartphone Company" in paragraph 115 of Your Complaint and the "AI and Ecosystem Company" in paragraph 116 of Your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request because the phrase "internal analyses of any such relationships and opportunities" is vague and ambiguous. Plaintiffs further object to this Request as irrelevant to the extent it seeks materials concerning negotiations with these companies unrelated to the Complaint.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, sufficient to show the impact of Arm's October 2024 letter on Qualcomm's business dealings, including with the Smartphone Company and AI and Ecosystem Company.

**REQUEST FOR PRODUCTION NO. 27:**

All Documents, Communications, and Things with the Smartphone Company referenced in paragraph 115 of Your Complaint concerning Arm, the Qualcomm ALA, or the "Breach Letter"

referred to in paragraph 19 of Your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to the request on the ground that the request for "documents" and "things" "with the Smartphone Company" is vague and ambiguous. Plaintiffs further object to the Request on the ground that it is duplicative of other of Defendant's requests, including Requests Nos. 20, 21, and 26.

**Response**: Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding the allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 28:**

All executed or proposed agreements, contracts, and term sheets between Qualcomm and the Smartphone Company referenced in paragraph 115 of your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad, unduly burdensome, and irrelevant, including because it is not limited in scope to the time period or the type of agreement described in the Complaint. Plaintiffs further

object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged proposed agreements, contracts, and term sheets in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding the impact of Arm's October 2024 letter on Qualcomm's business dealings with the Smartphone Company referred to in paragraph 115 of the Complaint.

## REQUEST FOR PRODUCTION NO. 29:

All Documents, Communications, and Things with the AI and Ecosystem Company referenced in paragraph 116 of Your Complaint concerning Arm, the Qualcomm ALA, or the "Breach Letter" referred to in paragraph 19 of Your Complaint.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 29:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to the request on the ground that the request for "documents" and "things" "with the AI and Ecosystem Company" is vague and ambiguous. Plaintiffs further object to the Request on the ground that it is duplicative of other of Defendant's requests, including Requests Nos. 22 and 26.

█████████

**Response**: Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding the allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 30:**

All executed or proposed agreements, contracts, and term sheets between Qualcomm and the AI and Ecosystem Company referenced in paragraph 116 of Your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad, unduly burdensome, and irrelevant, including because it is not limited in scope to the time period or the type of agreement described in the Complaint. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response**: Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged proposed agreements, contracts, and term sheets in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding the impact of Arm's October 2024 letter on Qualcomm's business dealings with the AI and Ecosystem Company referred to in paragraph 116 of the Complaint.

**REQUEST FOR PRODUCTION NO. 31:**

All Documents, Communications, and Things supporting or rebutting Your allegation in

31
**A0043**

paragraph 132 of Your Complaint that "Qualcomm has been damaged both (i) by delay that could have been avoided had Arm fulfilled its obligations, (ii) by costs and expenses incurred by Qualcomm expending extra time and resources to run the ACK tests to verify that its products are compliant with the Arm ISA and use its own engineers to address issues that would have been addressed by Arm's patches ... ."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this request to the extent that it calls for information that is in the possession, custody, or control of Defendant. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 1, 2, 23, and 24.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding Qualcomm's damage from and costs and expenses incurred by Arm's delay, as set forth in paragraph 132 of the Complaint.

**REQUEST FOR PRODUCTION NO. 32:**

All Documents, Communications, and Things supporting or rebutting Your contention in paragraph 86 of Your Complaint that Qualcomm was damaged by Arm's alleged failure to deliver the ACK patches.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents,

32

A0044

███████████

Communications, and Things." Plaintiffs further object to this Request as duplicative of other of

Defendant's requests, including, for example, Requests Nos. 1, 2, 23, 24, and 31.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce

non-privileged documents in their custody, possession, or control located through a reasonable,

targeted search of agreed-upon custodians designed to reasonably and proportionately identify

responsive documents, to the extent any exist, regarding Qualcomm's damage caused by Arm's

failure to deliver the ACK patches as set forth in paragraph 86 of the Complaint.


**REQUEST FOR PRODUCTION NO. 33:**

All Documents, Communications, and Things supporting or rebutting Your contention in paragraph 80 of Your Complaint that the OOB and ACK tests allegedly withheld by Arm are deliverables provided under ████████ of the Qualcomm ALA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General

Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the

grounds that it is overbroad and unduly burdensome, including because it requests "all Documents,

Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the

production of documents or the disclosure of information protected by the attorney-client privilege,

the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including,

for example, Requests Nos. 1 and 2.  Plaintiffs object to this request to the extent that it calls for

information that is publicly available and information that is in the possession, custody, or control

of Defendant.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce

non-privileged documents in their custody, possession, or control located through a reasonable,

███████████

targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 34:**

All Documents, Communications, and Things concerning Your "first susp[icion] that Arm was withholding" ████████████ or other alleged deliverables as described in paragraph 67 of Your Complaint, and any subsequent investigation into such alleged withholding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that the phrase "subsequent investigation" is vague and ambiguous, and is otherwise not relevant to any claim or defense in this case.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist concerning how Plaintiffs learned that Defendant was withholding deliverables.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents, Communications, and Things concerning any requests by You for OOBs, ACK tests, patches, ██████, bug fixes, and any other items You allege should have been delivered under ██████████ of the Qualcomm ALA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request on the ground that it is irrelevant and overbroad because it is not limited to items that were not delivered by Arm. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this request to the extent that it calls for information that is in the possession, custody, or control of Defendant.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents, Communications, and Things supporting or rebutting Your contention in paragraph 78 of Your Complaint that Arm "deliberately with[eld] the OOB and other deliverables to which Qualcomm was entitled."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the

production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this request to the extent that it calls for information that is in the possession, custody, or control of Defendant.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding Arm's deliberate withholding of the OOB and other deliverables.

**REQUEST FOR PRODUCTION NO. 37:**

All Documents, Communications, and Things supporting or rebutting Your contention that Qualcomm is entitled to deliverables under the Qualcomm ALA for its Nuvia-based technology.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs also object to this request on the ground that the phrase "Nuvia-based technology" is vague and ambiguous. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object that the Request is irrelevant.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce the verdict form in *Arm Ltd v. Qualcomm et al.*, C.A. No. 22-1146 (D. Del.) and the Qualcomm ALA.

**REQUEST FOR PRODUCTION NO. 38:**

All Documents, Communications, and Things concerning the negotiation of the Qualcomm ALA, including all amendments and annexes thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request to the extent that it calls for information that is in the possession, custody, or control of Defendant.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 39:**

All Documents, Communications, and Things supporting or rebutting Your contention in paragraph 91 of Your Complaint that Arm has refused to negotiate an extension of the Qualcomm ALA to cover future versions of ████████████, including v10 of the Arm ISA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents,

███████████

Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this request to the extent that it calls for information that is in the possession, custody, or control of Defendant.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 40:**

All Documents, Communications, and Things concerning any inquiry or request made by Qualcomm to Arm regarding the Arm's development of v10 or other future versions of the Arm ISA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this request to the extent that it calls for information that is in the possession, custody, or control of Defendant.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable,

38
A0050

targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 41:**

All Documents, Communications, and Things concerning Qualcomm's internal discussions of the v10 or any future version of the Arm ISA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents, Communications, and Things concerning the meaning of ▮▮▮▮▮ of the Qualcomm ALA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the

███████████

production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 43:**

All Documents, Communications, and Things concerning the meaning of ████████ of the Qualcomm ALA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents, Communications, and Things concerning the meaning of ████████ of the Qualcomm ALA.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 44:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

## REQUEST FOR PRODUCTION NO. 45:

All Documents, Communications, and Things concerning revenues, royalties, or any other payments Qualcomm received from either "the Smartphone Company" referenced in paragraph 115 of Your Complaint or "the AI and Ecosystem Company" referenced in paragraph 116 of your Complaint, including the profits and profit margin associated with those payments.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 45:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs also object to this Request on the ground that it is irrelevant because it does not relate to any claim or defense in this litigation, including because it is not limited in scope to the type of engagement described in the Complaint between Qualcomm and these companies.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding the revenues, royalties, and other payments (and associated profits and profit margins) Qualcomm received from either company with respect to the agreements that are the subject of paragraphs 115 and 116 of the Complaint.

**REQUEST FOR PRODUCTION NO. 46:**

All Documents, Communications, and Things supporting or rebutting Your request for damages and restitution in this Action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 1 and 2.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 47:**

All Documents, Communications, and Things supporting or rebutting Your request for specific performance and other equitable relief in this Action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 1 and 2.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 48:**

All Documents, Communications, and Things concerning "competition in the markets for CPUs and SoCs, in California and elsewhere," as alleged in paragraph 156 of Your Complaint, or in any other markets You contend are relevant in Your Response to Interrogatory No. 8.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the

production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further incorporate by reference, as though fully set forth herein, their objections to Interrogatory No. 8.

**Response:** Subject to and without waiver of any of their objections, Defendants will produce non-privileged documents in their custody, possession, or control located through a reasonable targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding the facts set forth in Defendants' response to Interrogatory No. 8.

## REQUEST FOR PRODUCTION NO. 49:

All Documents, Communications, and Things supporting or rebutting Your allegation that Arm has and "can leverage its monopoly" in the markets for CPUs and SoCs, in California and elsewhere, or in any other markets You contend are relevant in Your Response to Interrogatory No. 8.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 49:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further incorporate by reference, as though fully set forth herein, their objections to Interrogatory No. 8. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests No. 48. Plaintiffs further object to this Request on the

ground that it seeks information that is not relevant to any claim or defense in this litigation to the extent that it misstates allegations in the complaint.

**Response:** Subject to and without waiver of any of their objections, Defendants will produce non-privileged documents in their custody, possession, or control located through a reasonable targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding the facts set forth in Defendants' response to Interrogatory No. 8.

**REQUEST FOR PRODUCTION NO. 50:**

All Documents, Communications, and Things supporting or rebutting Your allegation that "there are no readily available alternatives for certain applications" as alleged in paragraph 158 of Your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs also object to this request to the extent that it calls for information that is in the possession, custody, or control of Defendant. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 1 and 2.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable,

targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

## REQUEST FOR PRODUCTION NO. 51:

All Documents, Communications, and Things supporting or rebutting Your allegation that "Qualcomm . . . lost business opportunities that would have been awarded to it absent Arm's conduct," as alleged in paragraph 159 of Your Complaint.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 51:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 1, 2, 14-23.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

## REQUEST FOR PRODUCTION NO. 52:

All Documents, Communications, and Things concerning competition in the markets for CPUs and SoCs, in California and elsewhere, or in any other markets You contend are relevant in Your Response to Interrogatory No. 8, including the size and geographic boundaries of each market, the companies, products, and services that compete in each market, Arm's market share in each market, the cross-elasticity of demand for the products and services that compete in each market, the cross-elasticity of demand between products and services that compete in each market

and products and services offered in other markets, whether the product and services that compete in each market are reasonably interchangeable with products in other markets, and public or industrial recognition that each market is or is not a separate economic entity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs also object to this request on the ground that the phrases "markets for CPUs and SoCs," "market share," "cross-elasticity of demand," "reasonably interchangeable," "public or industrial recognition," and "separate economic entity" are vague and ambiguous.  Plaintiffs also object to this request to the extent that it calls for information that is in the possession, custody, or control of Defendant.  Plaintiffs further incorporate by reference, as though fully set forth herein, their objections to Interrogatory No. 8.

**Response:** Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant about the relevance and appropriate scope, if any, of this request.

**REQUEST FOR PRODUCTION NO. 53:**

All Documents, Communications, and Things concerning whether the market for CPUs for the compute, mobile, automotive, data center, and server market segments are the same market or different markets, including the size and geographic boundaries of each market, the companies, products, and services that compete in each market, Arm's market share in each market, the cross-elasticity of demand for the products and services that compete in each market, the cross-elasticity of demand between products and services that compete in each market and products and services offered in other markets, whether the product and services that compete in each market are reasonably interchangeable with products in other markets, and public or industrial recognition that each market is or is not a separate economic entity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the

grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs also object to the Request on the ground that the phrases "market for CPUs for the computer, mobile, automative, data center, and server market segments," "market share," "cross-elasticity of demand," "reasonably interchangeable," "public or industrial recognition," and "separate economic entity" are vague and ambiguous. Plaintiffs also object to this request to the extent that it calls for information that is in the possession, custody, or control of Defendant. Plaintiffs further object to this Request on the ground that it seeks materials that are not relevant to any claim or defense in this litigation. Plaintiffs further incorporate by reference, as though fully set forth herein, their objections to Interrogatory No. 8.

**Response:** Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant about the relevance and appropriate scope, if any, of this request.

## REQUEST FOR PRODUCTION NO. 54:

All Documents, Communications, and Things supporting or rebutting Your alleged "reasonable costs and expenses incurred in obtaining specific performance and other equitable relief of Arm's obligation" alleged in paragraph 90 of Your Complaint.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 54:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including,

for example, Requests Nos. 1 and 2. Plaintiffs further object to this Request as premature to the extent that it seeks materials related to attorneys' fees.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 55:**

All Documents, Communications, and Things concerning royalties paid to Arm and projected to be paid to Arm through January 2028.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs also object to this Request to the extent that it calls for information that is in the possession, custody, or control of Defendant.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 56:**

All Documents, Communications, and Things related to or concerning the projected or forecasted impact to Qualcomm's revenue or profits if the Qualcomm ALA is terminated.

██████████████

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is irrelevant to any claim or defense in this litigation.

**Response:** Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant about the relevance and appropriate scope, if any, of this request.

**REQUEST FOR PRODUCTION NO. 57:**

All Documents, Communications, and Things concerning any potential termination of the Qualcomm ALA, including any actions in response thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it seeks materials that are not relevant to any claim or defense in this litigation.

**Response:** Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Arm to discuss the relevance and appropriate scope, if any, of this Request.

**REQUEST FOR PRODUCTION NO. 58:**

All Documents, Communications, and Things concerning the "Breach Letter" referred to in paragraph 19 of Your Complaint or Arm's January 8, 2025 letter to Qualcomm, including any actions in response thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request that it is duplicative of other of Defendant's Requests, including Nos. 1, 2, 5, 8, 18, 23, 27, and 29.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

███████████

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

March 10, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

███████████

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2025, copies of the foregoing were caused to be served upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                                  *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Kyle W.K. Mooney, Esquire                                  *VIA ELECTRONIC MAIL*
Kyle D. Friedland, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                    *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

53
**A0065**

Jay Emerick, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

*/s/ Jennifer Ying*
_____

Jennifer Ying (#5550)

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED,<br>    a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>    a Delaware corporation,<br><br>                    Plaintiffs,<br><br>        v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>    a U.K. corporation,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 24-490 (MN)<br>)<br>)    ▮▮▮▮▮▮▮<br>)<br>)<br>)<br>) |

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S
SECOND SET OF REQUESTS FOR PRODUCTION (NOS. 59-122)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively "Qualcomm") by and through their attorneys, hereby respond and object to Arm's ("Defendant") Second Set of Requests for Production (Nos. 59–122) ("Requests").

The following responses are based solely on the information that is presently available and specifically known to Plaintiffs, and are given without prejudice to Plaintiffs' right to supplement with any subsequently-discovered facts. Plaintiffs reserve the right to supplement the following responses and to change any and all responses therein as additional facts are ascertained, analyses are made, and legal research is completed.

Plaintiffs respond to the Requests on the basis of information available at the time the responsive information was gathered, within the limits of time, and subject to the objections described below. Plaintiffs respond to the Requests as they interpret and understand each Request set forth herein. If Defendant subsequently asserts an interpretation of any of the Requests that

**A0068**

differs from Plaintiffs' understanding, Plaintiffs reserve the right to supplement their objections and/or responses.

No incidental or implied admissions are intended by the responses herein.  Plaintiffs' willingness to respond to any particular Request does not constitute an admission that Plaintiffs agree with any characterization, definition, or assumption contained in the Request or an assumption or an acknowledgement by Plaintiffs that the Request is proper, that the information sought is within the proper bounds of discovery or that demands for similar information will be treated in similar fashion.  Furthermore, a statement that responsive documents will be produced in response to a particular Request does not mean that Plaintiffs know any such document exists or is in Plaintiffs' possession, custody, or control.  The fact that Plaintiffs have provided a response to any particular request should not be taken as an admission that Plaintiffs accept or admit the existence of any fact or interpretation or conclusion of law set forth or assumed by such request or that said response constitutes admissible evidence.  The fact that Plaintiffs have provided a response to any request is not intended to be, and shall not be construed as, a waiver by Plaintiffs of any part of any objection to any such request.

Plaintiffs' responses to the Requests contain, provide, or refer to information that is protected under District of Delaware Local Rule 26.2 and provisions of the Protective Order (D.I. 84) in this matter and should therefore be treated accordingly.

Plaintiffs have not yet completed their discovery relating to this case and their investigation of the facts is ongoing.  Plaintiffs anticipate that additional information responsive to the Requests may be obtained as discovery proceeds.  Plaintiffs' responses to the Requests are therefore made without prejudice to Plaintiffs' right to amend, correct or supplement their responses to the

Requests. Any responses will be supplied by Plaintiffs subject to all objections as to competence, relevance, materiality, propriety, admissibility, and any and all other objections on any grounds that would require the exclusion of the response or information if such were offered in evidence, all of which objections and grounds are hereby expressly reserved and may be interposed at the time of trial.

## GENERAL OBJECTIONS

1.      Plaintiffs object to each Request to the extent that it seeks to impose greater or different obligations on Plaintiffs than those provided for by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any discovery orders entered into this case, any other applicable Court orders, or agreements reached by the parties.

2.      Plaintiffs object to each Request to the extent that it seeks documents, things, or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. Nothing contained in these Responses and Objections is intended to be, nor shall in any way be, construed as a waiver of any such privilege, immunity, or protection. Specific Objections on the grounds of privilege are provided for emphasis and clarity only, and the absence of a Specific Objection is neither intended, nor should be interpreted, as evidence that Plaintiffs do not object to a Request on the basis of an applicable privilege, immunity, or protection. Any disclosure of any such privileged or protected material in responses to any Request is inadvertent and not intended to waive those privileges and protections.

3.      Plaintiffs object to the Requests to the extent they seek documents and things that Plaintiffs have a legal or contractual obligation not to disclose, or subject to third-party confidentiality obligations. Plaintiffs will not provide such documents or things without either the

3

**A0070**

consent of the relevant third-party or an order compelling the production thereof, or without providing the relevant third-party an opportunity to object to the production.

4.      Plaintiffs object to each Request to the extent that it purports, or may be construed, to call for the production or identification of "any," "all," "each," or "every" document or thing pertaining to a specific subject, on the ground that such language is overbroad and unduly burdensome.  As used herein, the term overbroad includes Requests that, so characterized, seek, at least in part, documents or information irrelevant in scope, subject matter, or time period to this lawsuit or to the particular matters at issue in this lawsuit.  For example, the requests for "All Communications" seek administrative or ministerial discussions that have little if any substantive value and do not prove or disprove any claim or defense in the case.  To the extent that a search is required, Plaintiffs will perform a reasonable, targeted search that accounts for the burden and relevance, and is designed to reasonably and proportionately identify requested documents, to the extent any exist.

5.      Plaintiffs object to the Requests to the extent that they call for discovery that is unreasonable or not proportional to the needs of the case, or not relevant to any claim or defense of any party in this action.  Plaintiffs further object to the Requests to the extent they seek to relitigate issues that were the subject of the jury verdict in *Arm v. Qualcomm*, C.A. No. 22-1146 (D. Del.).

6.      Plaintiffs object to the Requests to the extent that they purport to require Plaintiffs to create, generate, compile, or develop documents not kept, or in a form not kept, in the ordinary course of Plaintiffs' businesses.

7.      Plaintiffs object to the Requests to the extent that they are not reasonably limited in time.  Plaintiffs will agree to produce documents dating from June 1, 2022 forward, unless

otherwise specified.  Specific Objections on the grounds that a Request is not reasonably limited in time are provided for emphasis and clarity only, and the absence of a Specific Objection is neither intended, nor should be interpreted, as evidence that Plaintiffs do not object to a Request on this basis.

8.      Plaintiffs object to the Requests and each and every instruction and definition therein to the extent that any Request: (a) seeks the production of documents or disclosure of information not relevant to this litigation, nor proportional to the needs of the case; (b) is overbroad, unduly burdensome, harassing, oppressive, or duplicative; (c) is vague or ambiguous; (d) calls for the disclosure of information not within Plaintiffs' possession, knowledge, custody, care, or control; (e) calls for the disclosure of information already in Defendant's possession, knowledge, custody, care, or control;  (f) calls for the production of documents or disclosure of information readily available to Defendant from public or third-party sources; or (g) calls for the production of information already produced to Defendant in the prior litigation, *Arm* v. *Qualcomm et al.*, C.A. No. 22-1146 (D. Del).

9.      Plaintiffs' election to respond to a Request, notwithstanding the objectionable nature of the Request, is not: (a) an acceptance of, or agreement with, any of the characterizations or purported descriptions of any facts, circumstances, events, or legal conclusions contained in the Requests; (b) a concession or admission that the materials are relevant to this case or would be admissible at trial; (c) a waiver of the General Objections or the objections asserted in response to that specific Request; (d) an admission that any such documents or things exist; (e) an agreement that requests for similar information or documents will be treated in a similar manner; or (f) an acceptance of, or agreement with, any of the definitions in the Requests, to the extent that the definition or meaning of any defined term is at issue in this case.

10.     Plaintiffs' investigation of the facts in this proceeding and review of the relevant documents is ongoing.  Accordingly, the objections and responses herein are based on present knowledge, information, and belief.  Plaintiffs reserve the right to modify, supplement, or amend any response and objection, if necessary or appropriate, in any way and at any time.  Plaintiffs further reserve the right to object, at any hearing and any other proceeding in this litigation, to the use or admissibility into evidence of: (a) any documents produced in response to the Requests; (b) any of the information contained in any such document; or (c) any other information provided in response to any Request.

11.     Consistent with paragraph 54 of Protective Order, in the event that Plaintiffs produce a document that is privileged, protected under Federal Rule of Evidence 502, or otherwise immune from disclosure, it will have been produced through inadvertence and shall not constitute a waiver of any privilege or immunity applicable (a) to that or any other document or (b) to communications concerning the subject matter of that or any other document.

12.     Plaintiffs object to the Requests to the extent that they assume disputed facts or legal conclusions in defining the documents requested.  Plaintiffs hereby deny any such disputed facts or legal conclusions.  Any documents or information produced by Plaintiffs in response to the Requests are without prejudice to this objection.

13.     Plaintiffs' General Objections apply to each and every Request and are incorporated by reference into each of the responses set forth below, which responses are made without waiver of, and subject to, these General Objections.

### OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Plaintiffs object to the "Definitions" to the extent that they attempt to define words beyond or inconsistent with their ordinary meaning.

6
**A0073**

2.      Plaintiffs object to the definition of "Arm" or "Defendant" as vague and ambiguous to the extent the scope of "related corporate entities and their subsidiaries" is unclear.

3.      Plaintiffs object to the definition of "Qualcomm" of "Plaintiffs" as vague, ambiguous, overbroad, and unduly burdensome to the extent it is defined to include not only Qualcomm Incorporated and Qualcomm Technologies, Inc., but also persons or entities that are separate and distinct from Qualcomm Incorporated and Qualcomm Technologies, Inc., and over whom Plaintiffs exercise no control, such as but not limited to affiliates, consultants, independent contractors, experts, investigators, licensees, licensors, or collaborators.

4.      Plaintiffs object to the definitions of "You," "Your," and "Plaintiffs" as vague, ambiguous, overbroad, and unduly burdensome to the extent they seek information relating to persons or entities that are separate and distinct from Qualcomm Incorporated and Qualcomm Technologies, Inc., and over whom Plaintiffs exercise no control.  In responding to these requests, Plaintiffs interpret the terms "You," "Your," and "Plaintiffs" to refer only to the named parties in this action.  Plaintiffs also object to the definitions of "You," "Your," and "Plaintiffs" to the extent they purport to impose obligations on Plaintiffs beyond what is required by the Rules.  Plaintiffs will interpret the definition of "You," "Your," and "Plaintiffs" to impose no discovery obligation on any person or entity that is not a party to this litigation.

5.      Plaintiffs object to the definition of "ALA" as vague, ambiguous, and overbroad because it is not clear which agreement(s) "an Architecture License Agreement with Arm" refers to.  Plaintiffs will interpret "ALA" as synonymous with "Qualcomm ALA" and therefore to mean the Amended and Restated Architecture License Agreement ██ ████████████ dated ██████ ████ , and amendments and annexes thereto.

7

**A0074**

6. Plaintiffs object to the definitions of "Document" and its plural to the extent they purport to impose any obligations beyond what is required by the Federal Rules. Plaintiffs further object to the definition of "Document" to the extent that it implies that Plaintiffs must collect or produce, e.g., computer programs, testing data, electronic sound records, and other types of files that are typically not required to be collected or produced, as listed in the ESI Protocol Schedule A (D.I. 85).

7. Plaintiffs object to the definitions of "Communication" and its plural form to the extent they purport to impose any obligations beyond what is required by the Federal Rules.

8. Plaintiffs object to the definitions of "Thing" and its plural form to the extent they purport to impose any obligations beyond what is required by the Federal Rules.

9. Plaintiffs object to the definitions of "Identify," "Identifying," and "Identification" to the extent they purport to impose any obligations beyond what is required by the Federal Rules. Plaintiffs also object to the definitions of "Identify," "Identifying," and "Identification" to the extent they ask Plaintiffs to provide any information unknown to Plaintiffs or not within their possession, custody, or control, or beyond the scope of this litigation, including but not limited to "identifiers known or used by Qualcomm or others." Plaintiffs further object to the extent it seeks information other than the production of documents responsive to Defendant's Second Set of Requests for Production. Plaintiffs will not create documents or provide narrative information to identify particular natural persons, entities, things, documents, or conversations.

10. Plaintiffs object to the definition of "Disclose" because that term is not used in Defendant's Requests.

11.     Plaintiffs object to Instruction 2 on the ground that it imposes obligations beyond those provided for by the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Delaware.

12.     Plaintiffs object to Instruction 3 to the extent it states a procedure for the production of documents beyond those required by the Federal Rules of Civil Procedure.  Pursuant to Fed. R. Civ. P. 34(b)(2)(E), Plaintiffs will produce documents as they are kept in the usual course of business, as they were ordinarily maintained, or in a reasonably usable format, and in accordance with the ESI Protocol (D.I. 85).

13.     Plaintiffs object to Instruction 5 to the extent that it is overbroad, unduly burdensome, and purports to impose requirements inconsistent with or more burdensome than those imposed by the local rules and applicable law.  Plaintiffs have responded to the below requests and specified the documents that they will produce.  Plaintiffs further object to Instruction 5 as vague and ambiguous to the extent it invokes responses and objections to interrogatories, rather than requests for production.

14.     Plaintiffs object to Instruction 6, to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure, and because it is premature and contrary to the ESI Protocol and Protective Order.

15.     Plaintiffs object to Instruction 7 to the extent it purports to require Plaintiffs to respond to Requests that are not reasonably limited in time, including on subjects other than those for which such discovery is permitted under the Delaware Default Standard for Discovery or as agreed upon in the parties' ESI protocol.  Plaintiffs will agree to produce documents dating from June 1, 2022, forward, unless otherwise specified.

16.     Plaintiffs object to Instruction 8 on the ground as vague and ambiguous because it refers to interrogatories, rather than requests for production.

17.     Plaintiffs object to the requested production date as unreasonably burdensome. Plaintiffs will produce documents at a reasonable time in a reasonable manner consistent with the Scheduling Order entered in this action.

<b><u>SPECIFIC RESPONSES AND OBJECTIONS</u></b>

**<u>REQUEST FOR PRODUCTION NO. 59:</u>**

All Documents, Communications, and Things exchanged with Qualcomm's Board of Directors for the past 10 years.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 59:</u>**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs also object to this request on the ground that the word "exchanged" is vague and ambiguous. Plaintiffs also object to this Request on the ground that it is overbroad, unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs also object to this Request on the ground that it is not relevant to any claim or defense in this case, and is not reasonably limited in time.

**Response:** Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of the Request.

**<u>REQUEST FOR PRODUCTION NO. 60:</u>**

All minutes or records of Qualcomm's Board of Directors meetings for the past 10 years.

10<br><b>A0077</b>

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs also object to this Request on the ground that it is overbroad, unduly burdensome, and not relevant to any claim or defense in this case, and not reasonably limited in time.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of the Request

**REQUEST FOR PRODUCTION NO. 61:**

All minutes or records of Qualcomm's Feature Review Board meetings for the past 10 years, including documents sufficient to show the dates of each meeting, the attendees, and the matters discussed.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs also object to this Request on the ground that it is overbroad, unduly burdensome, and irrelevant, including because it is not reasonably limited in time nor by connection to any claim or defense in this case.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 62:**

Documents sufficient to show every ALA, TLA, or confidential Arm document made available to Broadcom or its counsel as part of Broadcom's planned acquisition of Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, and seeks irrelevant information. Plaintiffs also object to this Request on the ground that the phrase "confidential Arm document" is vague and ambiguous. Plaintiffs further object to this Request on that ground that it is not relevant to any claim or defense in this case.

**Response:** Plaintiffs do not intend to produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 63:**

Documents sufficient to show every ALA, TLA, or confidential Arm document made available by Qualcomm to any Third Party or its counsel, including as part of any planned acquisition.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, and seeks irrelevant information. Plaintiffs also object to this Request on

the ground that the phrase "confidential Arm document" is vague and ambiguous.  Plaintiffs further

object to this Request on that ground that it is not relevant to any claim or defense in this case.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request.

## REQUEST FOR PRODUCTION NO. 64:

All Documents, Communications, and Things exchanged between You and RISC-V International or any other provider of the RISC-V ISA.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 64:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to using a RISC-V compatible processor to remedy Arm's withholding of deliverables.

## REQUEST FOR PRODUCTION NO. 65:

All Documents, Communications, and Things relating to Qualcomm's use of ISAs provided by organizations other than Arm, including x86 and RISC-V, or products built using the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to using a RISC-V compatible processor to remedy Arm's withholding of deliverables.

**REQUEST FOR PRODUCTION NO. 66:**

All Documents, Communications, and Things relating to Qualcomm's collaboration with Google on a RISC-V Snapdragon Wear platform, including its ▆▆▆▆▆ and ▆▆▆▆▆ modules.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents,

14

**A0081**

Communications, and Things." Plaintiffs further object to this Request on that ground that it is not relevant to any claim or defense in this case.

**Response:** Plaintiffs do not intend to produce documents in response to this Request.

## REQUEST FOR PRODUCTION NO. 67:

All Documents, Communications, and Things relating to the RISC-V Software Ecosystem (RISE) Project, including the reasons for Qualcomm's involvement in that project.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 67:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to using a RISC-V compatible processor to remedy Arm's withholding of deliverables.

## REQUEST FOR PRODUCTION NO. 68:

All Documents, Communications, and Things comparing Arm's ISA to any non-Arm ISA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to using a non-Arm ISA to remedy Arm's withholding of deliverables.

**REQUEST FOR PRODUCTION NO. 69:**

All Documents, Communications, and Things relating to the performance, benefits, or drawbacks of, or comments, criticisms, or concerns regarding, Arm's ISA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents,

16
**A0083**

Communications, and Things." Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to using a non-Arm ISA to remedy Arm's withholding of deliverables.

## REQUEST FOR PRODUCTION NO. 70:

All Documents, Communications, and Things relating to the performance, benefits, or drawbacks of, or comments, criticisms, or concerns regarding, any non-Arm ISA.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 70:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to using a non-Arm ISA to remedy Arm's withholding of deliverables.

**A0084**

**REQUEST FOR PRODUCTION NO. 71:**

All Documents, Communications, and Things relating to the additional efforts and costs implicated or otherwise likely incurred to use a non-Arm ISA for future products compared to an Arm ISA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to using a non-Arm ISA to remedy Arm's withholding of deliverables.

**REQUEST FOR PRODUCTION NO. 72:**

All Documents, Communications, and Things relating to Quintauris and Qualcomm's involvement in Quintauris.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the

attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to using Quintauris to remedy Arm's withholding of deliverables.

## REQUEST FOR PRODUCTION NO. 73:

All Documents, Communications, and Things showing all Arm materials Qualcomm downloaded or had access to from Arm, including through Arm's Connect, DropZone, or any online large file or other transfer systems, and all downloads from the same.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 73:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case. Plaintiffs also object to this Request to the extent that it calls for information that is in the possession, custody, or control of Defendant.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 74:**

All Documents, Communications, and Things relating to all licenses with Third Parties for any Arm-compatible products or for products containing the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request on that ground that it is not relevant to any claim or defense in this case.

**Response:** Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of the Request.

**REQUEST FOR PRODUCTION NO. 75:**

All Documents, Communications, and Things relating to all royalties paid to or received from Third Parties for any Arm-compatible products or for products containing the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request

to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request on that ground that it is not relevant to any claim or defense in this case.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of the Request.

## REQUEST FOR PRODUCTION NO. 76:

All Documents, Communications, and Things relating to Qualcomm's business strategies, views, impressions, models, or plans relating to past, current, or future versions of the Arm ISA, including Qualcomm's decision to use or not use the same.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 76:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable,

21
**A0088**

targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 77:**

All Documents, Communications, and Things relating to Qualcomm's business strategies, views, impressions, models, or plans relating to past, current, or future versions of any non-Arm ISA, including Qualcomm's decision to use or not use the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 78:**

All Documents, Communications, and Things related to or concerning the projected or forecasted impact to Qualcomm's revenue or profits following expiration of the Qualcomm ALA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request on the

grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on that ground that it is not relevant to any claim or defense in this case.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request.

## REQUEST FOR PRODUCTION NO. 79:

All Documents, Communications, and Things related to Softbank or Masayoshi Son, including any investments by Qualcomm in Softbank or collaboration between Qualcomm and Softbank on mobile or other technologies.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 79:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on that ground that it is not relevant to any claim or defense in this case.  Plaintiffs also object to this Request to the extent that it calls for information that is in the possession, custody, or control of Defendant.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request.

## REQUEST FOR PRODUCTION NO. 80:

All Documents, Communications, and Things related to Qualcomm's business strategy related to Intel Foundry Services, including Qualcomm's decision to use or not use the same.

23
**A0090**

███████

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on that ground that it is not relevant to any claim or defense in this case.

**Response:** Plaintiffs do not intend to produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 81:**

All Documents, Communications, and Things related to any attempt by Qualcomm to license its Arm ISA-compatible CPU core designs to Third Parties, including any attempts to license the gate-level netlist or RTL code of those Arm ISA-compatible CPU cores.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request on the ground that it is not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Plaintiffs do not intend to produce documents in response to this Request.

24

**A0091**

**REQUEST FOR PRODUCTION NO. 82:**

All Documents, Communications, and Things related to any attempt by Qualcomm to create, design, or develop its own ISA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent that it is seeks materials that are not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 83:**

All pleadings, deposition transcripts, trial transcripts, discovery responses, and expert reports (including all exhibits and addenda to same) related to Qualcomm's licensing and sale practices, its alleged anti-competitive conduct, exclusivity arrangements, and/or other royalty-related strategies, and the definition of the relevant market in *In re Qualcomm Inc. Securities Litig.*, No. 3:17-cv-121-JO-MSB (S.D. Cal.), *Federal Trade Commission v. Qualcomm Inc.*, No. 5:17-cv-220-LHK (N.D. Cal.); *Apple Inc. v. Qualcomm Inc.*, No. 3:17-cv-00108-GPC-MDD (S.D. Cal.), and *In re Qualcomm Antitrust Litig.*, No. 17-md-02773-JSC (N.D. Cal.).

██████████████

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome.  Plaintiffs further object to this Request to on that ground that it is not relevant to any claim or defense in this case.  Plaintiffs also object to this Request on the ground that it is not relevant to any claim or defense in this case.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 84:**

One copy of each customer-facing or user-facing advertisement, promotion, video, marketing material, product description, or other communication mentioning Arm or the Arm ISA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, including because it is not reasonably limited in time.  Plaintiffs object to this Request on the ground that it is not relevant to any claim or defense in this case.  Plaintiffs further object to this Request to the extent it seeks materials that are publicly available or in the possession, custody, or control of Defendant.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Arm to discuss the relevance and appropriate scope, if any, of this Request.

**REQUEST FOR PRODUCTION NO. 85:**

All Documents, Communications, and Things related to any drafts of ██████████████ ██████ of the Qualcomm ALA.

26

**A0093**

███████

**RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs also object to this Request to the extent that it calls for information that is in the possession, custody, or control of Defendant.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 86:**

All Documents, Communications, and Things concerning the meaning of ███████ of the Qualcomm ALA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 86:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

████████

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 87:**

All Documents, Communications, and Things related to Qualcomm's licensing practices, including any efforts by Qualcomm to terminate, not renew, narrow, or impose restrictions on a previously granted license and any efforts by Qualcomm to cut-off, limit, restrict, interfere with, or deny access to its licensed technology or future versions of its licensed technology by Third Parties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is not relevant to any claim or defense in this case.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 88:**

All Documents, Communications, and Things related to Qualcomm's efforts to restrict, deny, limit, or otherwise interfere with rival chipmakers or other competitors access to Qualcomm's licensed technology.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 88:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the

grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that ground that it is not relevant to any claim or defense in this case.

**Response:** Plaintiffs do not intend to produce documents in response to this Request.

## REQUEST FOR PRODUCTION NO. 89:

Documents sufficient to show the costs, revenues, royalties, expenses, rebates, reimbursements, profits, or profit margins relating to the design, development, manufacture, and sale of each Arm-compatible core, CPU or products containing the same, on a monthly, quarterly, and annual basis, including documents sufficient to show: (a) gross revenues; (b) net revenues; (c) fixed and variable costs of goods sold; (d) fixed and variable costs of manufacturing; (e) sales and distribution costs; (f) marketing, advertising, promotional, and sales expenses; (g) fixed and variable operating expenses; (h) rebates and reimbursements; and (i) license fees and royalties paid and/or received.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 89:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome. Plaintiffs further object to this Request to the extent it seeks production of materials that are not relevant to any claim or defense in this litigation. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify

responsive documents, to the extent any exist and have not already been produced, sufficient to show the additional costs relating to the design and development of Arm-compatible products without the benefit of (1) the OOB deliverables, as described in paragraph 85 of the Complaint or (2) Arm patches, as alleged in paragraph 86 of the Complaint.

**REQUEST FOR PRODUCTION NO. 90:**

Documents sufficient to show the difference in costs, revenues, royalties, expenses, rebates, reimbursements, profits, or profit margins relating to the design, development, manufacture, and sale of an Arm-designed core, CPU, or products containing the same compared to the design, development, manufacture, and sale of a custom-designed Arm-compatible core, CPU, or products containing the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome. Plaintiffs further object to this Request on the ground that it is not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Plaintiffs do not intend to produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 91:**

Documents sufficient to show the expenses, lost revenues, and lost profits, as well as any offsetting cost savings or other benefits, that Qualcomm attributes to (a) the purported delays that could have been avoided if Arm had not allegedly breached the Qualcomm ALA; (b) Qualcomm's purported extra time and resources expended to run the ACK tests to verify that its products are compliant with the Arm ISA; and (c) Qualcomm's use of its own engineers to address issues that allegedly would have been addressed by Arm's patches.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 91:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request on the ground that the phrase "offsetting cost savings" is vague and ambiguous.  Plaintiffs also object to this Request to the extent it calls for information that is in the possession, custody, or control of Defendant.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 92:**

Documents sufficient to show the expenses, lost revenues, and lost profits, as well as any offsetting cost savings or other benefits, that Qualcomm attributes to (a) the purported delays that could have been avoided if Arm had not allegedly breached the Qualcomm ALA; (b) Qualcomm's purported extra time and resources expended to run the ACK tests to verify that its products are compliant with the Arm ISA; and (c) Qualcomm's use of its own engineers to address issues that allegedly would have been addressed by Arm's patches.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 92:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further incorporate by reference, as though fully set forth herein, their objections to RFP 91.  Plaintiffs further object to this Request on the ground that it is duplicative of RFP 91.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the

attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

## REQUEST FOR PRODUCTION NO. 93:

All Documents, Communications, and Things related to Communications to and from Qualcomm sales, marketing, or market intelligence personnel referring to Arm; Arm-designed cores and CPUs containing the same; or the Arm ISA.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 93:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request on the ground that it is not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of the Request.

## REQUEST FOR PRODUCTION NO. 94:

All Documents, Communications, and Things related to the past, present, or future size or scope of, or competition in, any market for (a) instruction set architectures, (b) core or CPU designs, regardless of the ISA, (c) physical cores or CPUs, regardless of the ISA, (d) Arm-

compatible core or CPU designs, and (e) Arm-compatible cores, CPUs, and products containing the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 94:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, sufficient to show how Arm's conduct harms competition.

**REQUEST FOR PRODUCTION NO. 95:**

All Documents, Communications, and Things, including market analyst reports or market intelligence related to the past, present, or future competition between ISAs in the (a) mobile, (b) compute, (c) data center, (d) Internet of Things, (e) mobile, and (f) automotive markets.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 95:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General

Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the

ground that it is overbroad and unduly burdensome, including because it requests "all Documents,

Communications, and Things." Plaintiffs further object to this Request on the ground that the

phrases "market analysist reports" and "market intelligence" are vague and ambiguous. Plaintiffs

further object to this Request to the extent it calls for production of materials that are publicly

available or in the possession, custody, or control of Defendant. Plaintiffs further object to this

Request to the extent it seeks materials that are not relevant to any claim or defense in this case.

Plaintiffs further object to this Request to the extent it seeks the production of documents or the

disclosure of information protected by the attorney-client privilege, the work product doctrine, or

any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce

non-privileged documents in their custody, possession, or control located through a reasonable,

targeted search of agreed-upon custodians designed to reasonably and proportionately identify

responsive documents, to the extent any exist and have not already been produced, sufficient to

show how Arm's conduct harms competition.

**REQUEST FOR PRODUCTION NO. 96:**

All Documents, Communications, and Things, including market analyst reports or market
intelligence related to the past, present, or future competition between cores and CPUs in the (a)
mobile, (b) compute, (c) data center, (d) Internet of Things, (e) mobile, and (f) automotive
segments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 96:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General

Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the

███████████

ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request on the ground that the phrases "market analysist reports" and "market intelligence" are vague and ambiguous.  Plaintiffs further object to this Request to the extent it calls for production of materials that are publicly available or in the possession, custody, or control of Defendant.  Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, sufficient to show how Arm's conduct harms competition.

## REQUEST FOR PRODUCTION NO. 97:

All Documents, Communications, and Things related to industry or market research reports mentioning any of the Arm-designed cores.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 97:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all documents, communications, and things."  Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case.  Plaintiffs also object to this Request to the extent that it seeks materials that are publicly available or in the possession, custody,

or control of Defendant.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, sufficient to show how Arm's conduct harms competition.

## REQUEST FOR PRODUCTION NO. 98:

All Documents, Communications, and Things related to the actual, estimated, and/or projected market share for the Arm ISA or any actual or potential competitor on a monthly, quarterly, or other period basis, including any market in the United States and worldwide.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 98:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs also object to this Request to the extent that it seeks materials that are publicly available or in the possession, custody, or control of Defendant. Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify

responsive documents, to the extent any exist, sufficient to show how Arm's conduct harms competition.

**REQUEST FOR PRODUCTION NO. 99:**

All Documents, Communications, and Things related to the actual, estimated, and/or projected market share for any Arm-designed core or CPU, or any actual or potential competitor, on a monthly, quarterly, or other period basis, including any market in the United States and worldwide.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 99:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all documents, communications, and things." Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent it seeks materials that are in the possession, custody, or control of Defendant. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, sufficient to show how Arm's conduct harms competition.

**REQUEST FOR PRODUCTION NO. 100:**

All Documents, Communications, and Things sufficient to show Qualcomm's market share, market power, influence, or market position with respect to CPU cores and CPUs in the (a) mobile, (b) compute, (c) data center, (d) Internet of Things, (e) mobile, and (f) automotive segments.

████████

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, sufficient to show how Arm's conduct harms competition.

**REQUEST FOR PRODUCTION NO. 101:**

All Documents, Communications, and Things comparing or contrasting, in any way, an Arm-designed core to any other core, whether or not such other core is based on the Arm architecture or some other architecture.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 101:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all documents, communications, and things."  Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information

protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to allegations in the Complaint.

## REQUEST FOR PRODUCTION NO. 102:

All Documents, Communications, and Things concerning any advantages or improvements of an Arm-designed core as compared to any other core, whether or not such other core is based on the Arm architecture or some other architecture.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 102:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent it seeks production of materials that are not relevant to any claim or defense in this case.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 103:**

All Documents, Communications, and Things concerning why customers or users choose one physical core or CPU over another.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 103:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent it seeks production of materials that are not relevant to any claim or defense in this case.  Plaintiffs further object to this Request to the extent that it seeks production of materials that are publicly available or in the possession, custody, or control of Defendant, or third parties.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 104:**

All Documents, Communications, and Things concerning why customers or users choose one core or CPU design over another.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 104:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents,

Communications, and Things." Plaintiffs further object to this Request to the extent it seeks materials that are not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent that it seeks production of materials that are publicly available or in the possession, custody, or control of Defendant, or third parties. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to allegations in the Complaint.

## REQUEST FOR PRODUCTION NO. 105:

All Documents, Communications, and Things concerning why customers, software developers, or users choose one ISA over another.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 105:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent that it seeks production of materials that are publicly available or in the possession, custody, or control of Defendant, or third parties. Plaintiffs also object to this Request on the ground that it is not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client

privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Plaintiffs do not intend to produce documents in response to this Request.

## REQUEST FOR PRODUCTION NO. 106:

All Documents, Communications, and Things concerning any praise, criticism, complaint, or skepticism by a Third Party related to an Arm-designed core or CPU.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 106:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent that it seeks production of materials that are publicly available or in the possession, custody, or control of Defendant, or third parties.  Plaintiffs also object to this Request to the extent it seeks production of materials that are not relevant to any claim or defense in this case.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to allegations in the Complaint.

## REQUEST FOR PRODUCTION NO. 107:

All Documents, Communications, and Things concerning any reason, decision, or motivation for including or not including an Arm-designed core in any Qualcomm product.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 107:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent that it seeks production of materials that are publicly available or in the possession, custody, or control of Defendant.  Plaintiffs also object to this Request to the extent that it seeks production of materials that are not relevant to any claim or defense in this case.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 108:**

All Communications with Qualcomm's investors concerning Arm, Arm-designed cores, the Arm ISA, the Breach Letter, or this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 108:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome.  Plaintiffs further object to this Request to the extent that it seeks materials that are not relevant to any claim or defense in this case.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of the Request.

**REQUEST FOR PRODUCTION NO. 109:**

All SEC filings and transcripts of any investor or earnings conferences mentioning Arm, Arm-designed cores, the Arm ISA, the Breach Letter, or this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 109:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome.  Plaintiffs further object to this Request on the ground that it is not relevant to any claim or defense in this case.  Plaintiffs also object to this request to the extent it seeks production of materials that are publicly available or in the possession, custody, or control of Defendant or a third party.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of the Request.

**REQUEST FOR PRODUCTION NO. 110:**

Documents sufficient to show the steps Qualcomm takes to manufacture a custom-designed Arm-compatible core, starting from finalizing the gate-level netlist or RTL code through manufacture of the physical CPU containing one or more cores.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 110:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this request to the extent that it is overbroad, unduly burdensome, and irrelevant, including because it seeks production of materials that do not relate to any claim or defense in this case.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, sufficient to show the steps Qualcomm takes to (1) verify that its products are compliant with the Arm ISA in the absence of the OOB deliverables, as described in paragraph 85 of the Complaint; and (2) to address issues that would have been addressed by Arm's patches, had they been delivered, as alleged in paragraph 86 of the Complaint.

**REQUEST FOR PRODUCTION NO. 111:**

Documents sufficient to show the steps Qualcomm takes to manufacture an Arm-designed core or CPU, starting from finalizing the gate-level netlist or RTL code through manufacture of the physical CPU containing one or more cores.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 111:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this request on the ground that it is overbroad, unduly burdensome, and irrelevant, including because it does not relate to any claim or defense in this case.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 112:**

Documents sufficient to show the percentage of Qualcomm's revenues and profits attributable to licensing.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 112:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request on the grounds that the phrase "attributable to licensing" is vague and ambiguous.  Plaintiffs further object to this Request on the ground that is not relevant to any claim or defense in this case.  Plaintiffs

further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Plaintiffs do not intend to produce documents in response to this Request.

## REQUEST FOR PRODUCTION NO. 113:

Documents sufficient to show the flow of revenue, expenses, and profits from the sale of Qualcomm products containing Arm-compliant cores to Qualcomm Inc. and to Qualcomm Technologies, Inc.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 113:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this request on the ground that the phrase "flow of revenue, expenses, and profits" is vague and ambiguous. Plaintiffs also object to this Request as overbroad and unduly burdensome.  Plaintiffs further object to this Request on the ground that it is not relevant to any claim or defense in this litigation. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Plaintiffs do not intend to produce documents in response to this Request.

## REQUEST FOR PRODUCTION NO. 114:

All Documents, Communications, and Things shown, given, or discussed with or concerning any person Qualcomm expects to call as an expert witness at trial.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 114:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents,

46

**A0113**

Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs also object to this Request to the extent it seeks production of materials in advance of the deadlines set forth in the scheduling order.

**Response:** In light of Arm's refusal to produce comparable information, Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant.

**REQUEST FOR PRODUCTION NO. 115:**

All Documents, Communications, and Things reviewed or relied upon by Qualcomm's witnesses in connection with their depositions, including Rule 30(b)(1) and 30(b)(6) depositions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 115:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs also object to this Request on the ground that it is premature.

**Response:** In light of Arm's refusal to produce comparable information, Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant.

47
**A0114**

█████████

**REQUEST FOR PRODUCTION NO. 116:**

All sworn testimony, statements, declarations, or affidavits previously provided by any person identified in Qualcomm's initial disclosures under Rule 26(a)(1) and supplemental disclosures under Rule 26(e) of the Federal Rules of Civil Procedure.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 116:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it is not limited in time or by subject matter.  Plaintiffs also object to this Request to the extent it calls for information that is not within Plaintiffs' possession, custody, or control, or is otherwise publicly available.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 117:**

All Communications between Qualcomm and Arm relating to █████████ of the Qualcomm ALA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 117:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Communications."  Plaintiffs also object to this Request on the ground that it calls for information that is in the possession, custody, or control of Defendant.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 118:**

All Documents and Communications related to or concerning any analysis or evaluation by Qualcomm at the time of negotiations and execution of the Qualcomm ALA regarding the impact, cost, damage, or harm to Qualcomm from a breach of the delivery provisions of █████ ███ of the Qualcomm ALA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 118:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents and Communications." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 119:**

All Documents and Communications related to or concerning any analysis or evaluation by Qualcomm at the time of negotiations and execution of the Qualcomm ALA regarding the impact, cost, damage, or harm to Qualcomm from a breach of the delivery provisions of █████ ███ of the Qualcomm ALA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 119:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents and Communications." Plaintiffs further object to this Request on the ground that it

is duplicative of other of Defendant's requests, including, for example RFP 118.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 120:**

All Documents and Communications related to or concerning any communications between Qualcomm and the press or media relating to or involving Arm or this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 120:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents and Communications."  Plaintiffs further object to this Request on the ground that it is  not relevant to any claim or defense in this case.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Plaintiffs do not intend to produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 121:**

All Documents and Communications related to or concerning communications between Qualcomm and its customers, potential customers, or any Third Parties before October 22, 2024 about the possibility that Arm could terminate the Qualcomm ALA, including any communications

50

**A0117**

about the material breach allegations in Arm's November 15, 2022 answer to Qualcomm's counterclaims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 121:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents and Communications."  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 122:**

All Documents and Communications related to or concerning any communications with customers, potential customers, or any Third Parties regarding the Breach Letter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 122:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents and Communications."  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request as duplicative of other of Defendant's requests, including, for example, Requests Nos. 5, 8, 18, and 58.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

April 14, 2025

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

52
**A0119**

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2025, copies of the foregoing were caused to be served upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Samantha G. Wilson, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO  80202<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Nicholas R. Fung, Esquire<br>Henry Huttinger, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd., Suite 6000<br>Los Angeles, CA  90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kyle W.K. Mooney, Esquire<br>Kyle D. Friedland, Esquire<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, NY  10019<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Erik J. Olson, Esquire<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, CA 94304<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

███████████

Gregg F. LoCascio, P.C.                                          *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                            *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*


                                          */s/ Jennifer Ying*
                                          _____
                                          Jennifer Ying (#5550)


54
**A0121**

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED, )
  a Delaware corporation; and )
QUALCOMM TECHNOLOGIES, INC., )
  a Delaware corporation, )
                                   )
            Plaintiffs, )
                                   )
      v. )      C.A. No. 24-490 (MN)
                                   )
ARM HOLDINGS PLC., f/k/a ARM LTD., )      ███████████████
  a U.K. corporation, )
                                   )
          Defendant. )

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S
THIRD SET OF REQUESTS FOR PRODUCTION (NOS. 123-173)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil

Rules of this Court, Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc.

(collectively "Qualcomm") by and through their attorneys, hereby respond and object to Arm's

("Defendant") Third Set of Requests for Production (Nos. 123-173) ("Requests").

The following responses are based solely on the information that is presently available and

specifically known to Plaintiffs, and are given without prejudice to Plaintiffs' right to supplement

with any subsequently-discovered facts. Plaintiffs reserve the right to supplement the following

responses and to change any and all responses therein as additional facts are ascertained, analyses

are made, and legal research is completed.

Plaintiffs respond to the Requests on the basis of information available at the time the

responsive information was gathered, within the limits of time, and subject to the objections

described below. Plaintiffs respond to the Requests as they interpret and understand each Request

set forth herein. If Defendant subsequently asserts an interpretation of any of the Requests that

**A0123**

differs from Plaintiffs' understanding, Plaintiffs reserve the right to supplement their objections and/or responses.

No incidental or implied admissions are intended by the responses herein. Plaintiffs' willingness to respond to any particular Request does not constitute an admission that Plaintiffs agree with any characterization, definition, or assumption contained in the Request or an assumption or an acknowledgement by Plaintiffs that the Request is proper, that the information sought is within the proper bounds of discovery or that demands for similar information will be treated in similar fashion. Furthermore, a statement that responsive documents will be produced in response to a particular Request does not mean that Plaintiffs know any such documents exist or are in Plaintiffs' possession, custody, or control. The fact that Plaintiffs have provided a response to any particular request should not be taken as an admission that Plaintiffs accept or admit the existence of any fact or interpretation or conclusion of law set forth or assumed by such request or that said response constitutes admissible evidence. The fact that Plaintiffs have provided a response to any request is not intended to be, and shall not be construed as, a waiver by Plaintiffs of any part of any objection to any such request.

Plaintiffs' responses to the Requests contain, provide, or refer to information that is protected under District of Delaware Local Rule 26.2 and provisions of the Protective Order (D.I. 84) in this matter and should therefore be treated accordingly.

Plaintiffs have not yet completed their discovery relating to this case and their investigation of the facts is ongoing. Plaintiffs anticipate that additional information responsive to the Requests may be obtained as discovery proceeds. Plaintiffs' responses to the Requests are therefore made without prejudice to Plaintiffs' right to amend, correct or supplement their responses to the

2

**A0124**

Requests.  Any responses will be supplied by Plaintiffs subject to all objections as to competence, relevance, materiality, propriety, admissibility, and any and all other objections on any grounds that would require the exclusion of the response or information if such were offered in evidence, all of which objections and grounds are hereby expressly reserved and may be interposed at the time of trial.

**GENERAL OBJECTIONS**

1.      Plaintiffs object to each Request to the extent that it seeks to impose greater or different obligations on Plaintiffs than those provided for by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any discovery orders entered into this case, any other applicable Court orders, or agreements reached by the parties.

2.      Plaintiffs object to each Request to the extent that it seeks documents, things, or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.  Nothing contained in these Responses and Objections is intended to be, nor shall in any way be, construed as a waiver of any such privilege, immunity, or protection.  Specific Objections on the grounds of privilege are provided for emphasis and clarity only, and the absence of a Specific Objection is neither intended, nor should be interpreted, as evidence that Plaintiffs do not object to a Request on the basis of an applicable privilege, immunity, or protection.  Any disclosure of any such privileged or protected material in responses to any Request is inadvertent and not intended to waive those privileges and protections.

3.      Plaintiffs object to the Requests to the extent they seek documents and things that Plaintiffs have a legal or contractual obligation not to disclose, or subject to third-party confidentiality obligations.  Plaintiffs will not provide such documents or things without either the

3

A0125

consent of the relevant third-party or an order compelling the production thereof, or without providing the relevant third-party an opportunity to object to the production.

4.     Plaintiffs object to each Request to the extent that it purports, or may be construed, to call for the production or identification of "any," "all," "each," or "every" document or thing pertaining to a specific subject, on the ground that such language is overbroad and unduly burdensome.  As used herein, the term overbroad includes Requests that, so characterized, seek, at least in part, documents or information irrelevant in scope, subject matter, or time period to this lawsuit or to the particular matters at issue in this lawsuit.  For example, the requests for "All Communications" seek administrative or ministerial discussions that have little if any substantive value and do not prove or disprove any claim or defense in the case.  To the extent that a search is required, Plaintiffs will perform a reasonable, targeted search that accounts for the burden and relevance, and is designed to reasonably and proportionately identify requested documents, to the extent any exist.

5.     Plaintiffs object to the Requests to the extent that they call for discovery that is unreasonable or not proportional to the needs of the case, or not relevant to any claim or defense of any party in this action.  Plaintiffs further object to the Requests to the extent they seek to relitigate issues that were the subject of the jury verdict in *Arm v. Qualcomm*, C.A. No. 22-1146 (D. Del.).

6.     Plaintiffs object to the Requests to the extent that they purport to require Plaintiffs to create, generate, compile, or develop documents not kept, or in a form not kept, in the ordinary course of Plaintiffs' businesses.

7.     Plaintiffs object to the Requests to the extent that they are not reasonably limited in time.  Plaintiffs will produce documents dating from June 1, 2022 forward, unless otherwise

specified.  Specific Objections on the grounds that a Request is not reasonably limited in time are provided for emphasis and clarity only, and the absence of a Specific Objection is neither intended, nor should be interpreted, as evidence that Plaintiffs do not object to a Request on this basis.

8.    Plaintiffs object to the Requests and each and every instruction and definition therein to the extent that any Request: (a) seeks the production of documents or disclosure of information not relevant to this litigation, nor proportional to the needs of the case; (b) is overbroad, unduly burdensome, harassing, oppressive, or duplicative; (c) is vague or ambiguous; (d) calls for the disclosure of information not within Plaintiffs' possession, knowledge, custody, care, or control; (e) calls for the disclosure of information already in Defendant's possession, knowledge, custody, care, or control;  (f) calls for the production of documents or disclosure of information readily available to Defendant from public or third-party sources; or (g) calls for the production of information already produced to Defendant in the prior litigation, *Arm* v. *Qualcomm et al.*, C.A. No. 22-1146 (D. Del).

9.    Plaintiffs' election to respond to a Request, notwithstanding the objectionable nature of the Request, is not: (a) an acceptance of, or agreement with, any of the characterizations or purported descriptions of any facts, circumstances, events, or legal conclusions contained in the Requests; (b) a concession or admission that the materials are relevant to this case or would be admissible at trial; (c) a waiver of the General Objections or the objections asserted in response to that specific Request; (d) an admission that any such documents or things exist; (e) an agreement that requests for similar information or documents will be treated in a similar manner; or (f) an acceptance of, or agreement with, any of the definitions in the Requests, to the extent that the definition or meaning of any defined term is at issue in this case.

10.      Plaintiffs' investigation of the facts in this proceeding and review of the relevant documents is ongoing.  Accordingly, the objections and responses herein are based on present knowledge, information, and belief.  Plaintiffs reserve the right to modify, supplement, or amend any response and objection, if necessary or appropriate, in any way and at any time.  Plaintiffs further reserve the right to object, at any hearing and any other proceeding in this litigation, to the use or admissibility into evidence of: (a) any documents produced in response to the Requests; (b) any of the information contained in any such document; or (c) any other information provided in response to any Request.

11.      Consistent with paragraph 54 of Protective Order, in the event that Plaintiffs produce a document that is privileged, protected under Federal Rule of Evidence 502, or otherwise immune from disclosure, it will have been produced through inadvertence and shall not constitute a waiver of any privilege or immunity applicable (a) to that or any other document or (b) to communications concerning the subject matter of that or any other document.

12.      Plaintiffs object to the Requests to the extent that they assume disputed facts or legal conclusions in defining the documents requested.  Plaintiffs hereby deny any such disputed facts or legal conclusions.  Any documents or information produced by Plaintiffs in response to the Requests are without prejudice to this objection.

13.      Plaintiffs' General Objections apply to each and every Request and are incorporated by reference into each of the responses set forth below, which responses are made without waiver of, and subject to, these General Objections.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      Plaintiffs object to the "Definitions" to the extent that they attempt to define words beyond or inconsistent with their ordinary meaning.

6
**A0128**

2.      Plaintiffs object to the definition of "Arm" or "Defendant" as vague and ambiguous to the extent the scope of "related corporate entities and their subsidiaries" is unclear.

3.      Plaintiffs object to the definition of "Qualcomm" of "Plaintiffs" as vague, ambiguous, overbroad, and unduly burdensome to the extent it is defined to include not only Qualcomm Incorporated and Qualcomm Technologies, Inc., but also persons or entities that are separate and distinct from Qualcomm Incorporated and Qualcomm Technologies, Inc., and over whom Plaintiffs exercise no control, such as but not limited to affiliates, consultants, independent contractors, experts, investigators, licensees, licensors, or collaborators.

4.      Plaintiffs object to the definitions of "You," "Your," and "Plaintiffs" as vague, ambiguous, overbroad, and unduly burdensome to the extent they seek information relating to persons or entities that are separate and distinct from Qualcomm Incorporated and Qualcomm Technologies, Inc., and over whom Plaintiffs exercise no control.  In responding to these requests, Plaintiffs interpret the terms "You," "Your," and "Plaintiffs" to refer only to the named parties in this action.  Plaintiffs also object to the definitions of "You," "Your," and "Plaintiffs" to the extent they purport to impose obligations on Plaintiffs beyond what is required by the Rules.  Plaintiffs will interpret the definition of "You," "Your," and "Plaintiffs" to impose no discovery obligation on any person or entity that is not a party to this litigation.

5.      Plaintiffs object to the definition of "ALA" as vague, ambiguous, and overbroad because it is not clear which agreement(s) "an Architecture License Agreement with Arm" refers to.  Plaintiffs will interpret "ALA" as synonymous with "Qualcomm ALA" and therefore to mean the Amended and Restated Architecture License Agreement ██ ████████████ dated ███████ ████, and amendments and annexes thereto.

7

**A0129**

6.    Plaintiffs object to the definitions of "Document" and its plural to the extent they purport to impose any obligations beyond what is required by the Federal Rules.  Plaintiffs further object to the definition of "Document" to the extent that it implies that Plaintiffs must collect or produce, e.g., computer programs, testing data, electronic sound records, and other types of files that are typically not required to be collected or produced, as listed in the ESI Protocol Schedule A (D.I. 85).

7.    Plaintiffs object to the definitions of "Communication" and its plural form to the extent they purport to impose any obligations beyond what is required by the Federal Rules.

8.    Plaintiffs object to the definitions of "Thing" and its plural form to the extent they purport to impose any obligations beyond what is required by the Federal Rules.

9.    Plaintiffs object to the definitions of "Identify," "Identifying," and "Identification" to the extent they purport to impose any obligations beyond what is required by the Federal Rules. Plaintiffs also object to the definitions of "Identify," "Identifying," and "Identification" to the extent they ask Plaintiffs to provide any information unknown to Plaintiffs or not within their possession, custody, or control, or beyond the scope of this litigation, including but not limited to "identifiers known or used by Qualcomm or others."  Plaintiffs further object to the extent the Requests seek information other than the production of documents responsive to Defendant's Third Set of Requests for Production.  Plaintiffs will not create documents or provide narrative information to identify particular natural persons, entities, things, documents, or conversations.

10.    Plaintiffs object to the definitions of "Nuvia Designs" and "Nuvia-based Products" because they are vague, ambiguous, overbroad, and irrelevant, including because issues related to Nuvia were litigated and resolved in the prior litigation, *Arm Ltd. v. Qualcomm Inc.*, No. 22-1146-MN.

11.      Plaintiffs object to Instruction 2 on the ground that it imposes obligations beyond those provided for by the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Delaware.

12.      Plaintiffs object to Instruction 3 to the extent it states a procedure for the production of documents beyond those required by the Federal Rules of Civil Procedure.  Pursuant to Fed. R. Civ. P. 34(b)(2)(E), Plaintiffs will produce documents as they are kept in the usual course of business, as they were ordinarily maintained, or in a reasonably usable format, and in accordance with the ESI Protocol (D.I. 85).

13.      Plaintiffs object to Instruction 5 to the extent that it is overbroad, unduly burdensome, and purports to impose requirements inconsistent with or more burdensome than those imposed by the local rules and applicable law.  Plaintiffs have responded to the below requests and specified the documents that they will produce.

14.      Plaintiffs object to Instruction 6, to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure, the ESI Protocol, or the Protective Order.

15.      Plaintiffs object to Instruction 7 to the extent it purports to require Plaintiffs to respond to Requests that are not reasonably limited in time, including on subjects other than those for which such discovery is permitted under the District of Delaware Default Standard for Discovery or as agreed upon in the parties' ESI protocol.  Plaintiffs will produce documents dating from June 1, 2022, forward, unless otherwise specified.

16.      Plaintiffs object to the requested production date as unreasonably burdensome. Plaintiffs will produce documents at a reasonable time in a reasonable manner consistent with the Scheduling Order entered in this action.

9
**A0131**

<span style="background:black">      </span>

## SPECIFIC RESPONSES AND OBJECTIONS

**REQUEST FOR PRODUCTIONS NO. 123:**

All Documents, Communications, and Things You referenced, relied upon, used in drafting, Identified, Described, or referred to in Your responses to Arm's interrogatories.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 123:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, that are responsive to this Request, to the extent any exist.

**REQUEST FOR PRODUCTIONS NO. 124:**

All Documents, Communications, and Things concerning Qualcomm's communications with Third Parties regarding Qualcomm's rights under the Qualcomm ALA with respect to Nuvia Designs or Nuvia-based Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 124:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs also object to the phrases "Nuvia Designs" and "Nuvia-based Products" because they are vague, ambiguous, overbroad, and irrelevant, including because issues related to Nuvia were litigated and resolved in the prior litigation, *Arm Ltd. v. Qualcomm*

*Inc.*, No. 22-1146-MN.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:**  Plaintiffs will not produce documents in response to this Request.

## REQUEST FOR PRODUCTIONS NO. 125:

All Documents, Communications, and Things concerning Qualcomm's communications with press, publicists, journalists, writers, media outlets (including podcasts, newsletters, blogs, and social media outlets), or publishers regarding Qualcomm's rights under the Qualcomm ALA with respect to Nuvia Designs or Nuvia-based Products.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 125:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs also object to the phrases "Nuvia Designs" and "Nuvia-based Products" because they are vague, ambiguous, overbroad, and irrelevant, including because issues related to Nuvia were litigated and resolved in the prior litigation, *Arm Ltd. v. Qualcomm Inc.*, No. 22-1146-MN.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:**  Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTIONS NO. 126:**

All Documents, Communications, and Things concerning Qualcomm's communications with Qualcomm customers, potential customers, or licensees regarding Qualcomm's rights under the Qualcomm ALA with respect to Nuvia Designs or Nuvia-based Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 126:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs object to the phrases "Nuvia Designs" and "Nuvia-based Products" because they are vague, ambiguous, overbroad, and irrelevant, including because issues related to Nuvia were litigated and resolved in the prior litigation, *Arm Ltd. v. Qualcomm Inc.*, No. 22-1146-MN. Plaintiffs also object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:** Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTIONS NO. 127:**

All Documents, Communications, and Things concerning Qualcomm's communications with Arm customers or Arm licensees regarding Qualcomm's rights under the Qualcomm ALA with respect to Nuvia Designs or Nuvia-based Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 127:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs object to the phrases "Nuvia Designs" and "Nuvia-based

Products" because they are vague, ambiguous, overbroad, and irrelevant, including because issues related to Nuvia were litigated and resolved in the prior litigation, *Arm Ltd. v. Qualcomm Inc.*, No. 22-1146-MN.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:**  Plaintiffs will not produce documents in response to this Request.

## REQUEST FOR PRODUCTIONS NO. 128:

All Documents, Communications, and Things concerning Qualcomm's communications with Third Parties regarding licensing or competition between Arm and Qualcomm or the subject matter of the claims at issue in this Litigation, in any regulatory proceeding against or sought against Arm, or in Arm Ltd. v. Qualcomm Inc., No. 22-1146 (MN) (D. Del.), including (1) Qualcomm's rights under the Qualcomm ALA with respect to Nuvia Designs or Nuvia-based Products, (2) any statement, assertion, or allegation by Arm that Arm is entitled to terminate the Qualcomm ALA, including Arm's notice of breach of the Qualcomm ALA, (3) Qualcomm's notice of breach of the Qualcomm TLA, or (4) allegedly anti-competitive or unfair behavior or actions by Arm, including but not limited to Arm's alleged campaign to harm or threaten to harm competition in the markets for CPUs and SoCs.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 128:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs also object to the phrases "Nuvia Designs" and "Nuvia-based Products" because they are vague, ambiguous, overbroad, and irrelevant, including because issues related to Nuvia were litigated and resolved in the prior litigation, *Arm Ltd. v. Qualcomm Inc.*, No. 22-1146-MN.  Plaintiffs also object to this Request to the extent it calls for the production of materials that are in the possession, custody, or control of Defendant.  Plaintiffs further object to this Request on

the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents regarding communications with third parties concerning the subject matter of the claims at issue in this litigation, including (1) statements by Arm that it is entitled to terminate the QC ALA; (2) Qualcomm's notice to Arm of Arm's breach of the QC TLA, and (3) Arm's anticompetitive or unfair behavior.

## REQUEST FOR PRODUCTIONS NO. 129:

All Documents, Communications, and Things concerning Qualcomm's communications (for attribution, on background, off the record, or otherwise) with press, publicists, journalists, writers, media outlets (including podcasts, newsletters, blogs, and social media outlets), or publishers regarding licensing or competition between Arm and Qualcomm or the subject matter of the claims at issue in this Litigation, in any regulatory proceeding against or sought against Arm, or in *Arm Ltd.* v. *Qualcomm Inc.*, No. 22-1146 (MN) (D. Del.), including (1) Qualcomm's rights under the Qualcomm ALA with respect to Nuvia Designs or Nuvia-based Products, (2) any statement, assertion, or allegation by Arm that Arm is entitled to terminate the Qualcomm ALA, including Arm's notice of breach of the Qualcomm ALA, (3) Qualcomm's notice of breach of the Qualcomm TLA, or (4) allegedly anti-competitive or unfair behavior or actions by Arm, including but not limited to Arm's alleged campaign to harm or threaten to harm competition in the markets for CPUs and SoCs.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 129:

Plaintiffs object to this Request as duplicative of RFP No. 128 and hereby incorporate their objections to that Request as though fully set forth herein.

**Response:** Plaintiffs will not produce documents in response to this Request.

## REQUEST FOR PRODUCTIONS NO. 130:

All Documents, Communications, and Things concerning Qualcomm's communications with Qualcomm customers, potential customers, or licensees regarding licensing or competition between Arm and Qualcomm or the subject matter of the claims at issue in this Litigation, in any regulatory proceeding against or sought against Arm, or in *Arm Ltd.* v. *Qualcomm Inc.*, No. 22-

1146 (MN) (D. Del.), including (1) any statement, assertion, or allegation by Arm that Arm is entitled to terminate the Qualcomm ALA, including Arm's notice of breach of the Qualcomm ALA, (2) Qualcomm's notice of breach of the Qualcomm TLA, or (3) allegedly anti-competitive or unfair behavior or actions by Arm, including but not limited to Arm's alleged campaign to harm or threaten to harm competition in the markets for CPUs and SoCs.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 130:

Plaintiffs object to this Request as duplicative of RFP No. 128 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response:** Plaintiffs will not produce additional documents in response to this Request.

## REQUEST FOR PRODUCTIONS NO. 131:

All Documents, Communications, and Things concerning Qualcomm's communications with Arm customers or Arm licensees regarding licensing or competition between Arm and Qualcomm or the subject matter of the claims at issue in this Litigation, in any regulatory proceeding against or sought against Arm, or in *Arm Ltd.* v. *Qualcomm Inc.*, No. 22-1146 (MN) (D. Del.), including (1) any statement, assertion, or allegation by Arm that Arm is entitled to terminate the Qualcomm ALA, including Arm's notice of breach of the Qualcomm ALA, (2) Qualcomm's notice of breach of the Qualcomm TLA, or (3) allegedly anti-competitive or unfair behavior or actions by Arm, including but not limited to Arm's alleged campaign to harm or threaten to harm competition in the markets for CPUs and SoCs.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 131:

Plaintiffs object to this Request as duplicative of RFP No. 128 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response:** Plaintiffs will not produce additional documents in response to this Request.

## REQUEST FOR PRODUCTIONS NO. 132:

All Documents, Communications, and Things concerning any of Your agreements with or payments to Third Parties, including consultants, press, publicists, journalists, writers, media outlets (including podcasts, newsletters, blogs, and social media outlets), or publishers, for services performed regarding licensing or competition between Arm and Qualcomm or the subject matter of the claims at issue in the Litigation, in any regulatory proceeding against or sought against Arm, or in *Arm Ltd.* v. *Qualcomm Inc.*, No. 22-1146 (MN) (D. Del.).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 132:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs also object to this Request on the ground that the phrase "services performed regarding licensing or competition" is vague and ambiguous. Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:** Plaintiffs will not produce documents in response to this request.

**REQUEST FOR PRODUCTIONS NO. 133:**

All Documents, Communications, and Things concerning any of Your agreements with or payments to Third Parties, including financial analysts, stock analysts, market analysts, or equity research analysts, for services performed regarding licensing or competition between Arm and Qualcomm or the subject matter of the claims at issue in the Litigation, in any regulatory proceeding against or sought against Arm, or in *Arm Ltd.* v. *Qualcomm Inc.*, No. 22-1146 (MN) (D. Del.).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 133:**

Plaintiffs object to this Request as duplicative of RFP No. 132 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response:** Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTIONS NO. 134:**

All Documents, Communications, and Things concerning Qualcomm's decision to disclose or to not disclose, to communicate or not to communicate to Third Parties, including Your customers, potential customers, licensees, or the U.S. Securities & Exchange Commission, or publicly, any statement, assertion, or allegation by Arm that Qualcomm breached the Qualcomm

16
A0138

ALA or that Arm is entitled to terminate the Qualcomm ALA, including Arm's notice of breach of the Qualcomm ALA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 134:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request on the ground that it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:** Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTIONS NO. 135:**

All Documents, Communications, and Things concerning Qualcomm's decision to disclose or to not disclose in Qualcomm's filings with the U.S. Securities & Exchange Commission any statement, assertion, or allegation by Arm that Qualcomm breached the Qualcomm ALA or that Arm is entitled to terminate the Qualcomm ALA, including Arm's notice of breach of the Qualcomm ALA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 135:**

Plaintiffs object to this Request as duplicative of RFP No. 134 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response:** Plaintiffs will not produce documents in response to this Request.

██████████

**REQUEST FOR PRODUCTIONS NO. 136:**

All Documents, Communications, and Things concerning Qualcomm's assertion in its January 22, 2025 letter to Arm that Qualcomm is "required by law" to disclose any statement, assertion, or allegation by Arm relating to Qualcomm's breach of the Qualcomm ALA or that Arm is entitled to terminate the Qualcomm ALA, including Arm's notice of breach of the Qualcomm ALA, including in SEC filings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 136:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request on the ground that it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:** Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTIONS NO. 137:**

All Documents, Communications, and Things concerning Arm's communications or dealings with ██████ (the "Smartphone Company" referenced in paragraph 115 of Your Complaint) or ████ (the "AI and Ecosystem Company" referenced in paragraph 116 of Your Complaint).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 137:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs object to this Request on the ground that it is overbroad, unduly burdensome, and irrelevant, including because it requests "all Documents, Communications, and Things" and because it is not limited in scope to the time period or the type

█████████████

of dealings described in the Complaint.  Plaintiffs further object to this Request on the ground that it is duplicative of other of Defendant's requests, including, for example, RFPs 20, 21, 22, 23, 26, 27, 28, 29, 30, 45.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding the communications and dealings with ██████████████ described in the Complaint.

## REQUEST FOR PRODUCTIONS NO. 138:

All Documents, Communications, and Things concerning any executed or proposed agreements, contracts, or term sheets between Qualcomm and ████.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 138:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs object to this Request on the ground that it is overbroad, unduly burdensome, and irrelevant, including because it requests "all Documents, Communications, and Things" and because it is not limited in scope to the time period or the type of dealings described in the Complaint.  Plaintiffs further object to this Request on the ground that it is duplicative of other of Defendant's requests, including, for example, RFP 30.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged proposed agreements, contracts, and term sheets in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to

reasonably and proportionately identify responsive documents, to the extent any exist, regarding the dealings with ▆ referenced in the Complaint.

## REQUEST FOR PRODUCTIONS NO. 139:

All Documents, Communications, and Things concerning any executed or proposed agreements, contracts, or term sheets between Qualcomm and ▆.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 139:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs object to this Request on the ground that it is overbroad, unduly burdensome, and irrelevant, including because it requests "all Documents, Communications, and Things" and because it is not limited in scope to the time period or the type of dealings described in the Complaint. Plaintiffs further object to this Request on the ground that it is duplicative of other of Defendant's requests, including, for example, RFP 28.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged proposed agreements, contracts, and term sheets in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding the dealings with ▆ referenced in the Complaint.

## REQUEST FOR PRODUCTIONS NO. 140:

All Documents, Communications, and Things concerning any business or potential business between Arm and ▆.

A0142

**RESPONSE TO REQUEST FOR PRODUCTION NO. 140:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case. Plaintiffs further object to this Request on the ground that it seeks production of materials that are in the possession, custody, or control of Defendant.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their possession, custody, or control, located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding allegations in the Complaint.

**REQUEST FOR PRODUCTIONS NO. 141:**

All Documents, Communications, and Things concerning any submissions, Communications, or meetings with ████████████████████ ████████████████████████████████, including all Documents shown to, disclosed to, or exchanged with any regulatory body in connection with such a request.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 141:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.

21

A0143



Plaintiffs also object to this Request to the extent that it seeks production of confidential information related to governmental proceedings.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:**  Plaintiffs will not produce documents in response to this Request.

## REQUEST FOR PRODUCTIONS NO. 142:

All Documents, Communications, and Things concerning any submissions, Communications, or meetings with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ regarding Arm, licensing or competition between Arm and Qualcomm, or the subject matter of the claims at issue in this Litigation, in any regulatory proceeding against or sought against Arm, or in *Arm Ltd.* v. *Qualcomm Inc.*, No. 22-1146 (MN) (D. Del.), including: (1) Qualcomm's rights under the Qualcomm ALA with respect to Nuvia Designs or Nuvia-based Products, (2) any statement, assertion, or allegation by Arm that Arm is entitled to terminate the Qualcomm ALA, including Arm's notice of breach of the Qualcomm ALA, (3) Qualcomm's notice of breach of the Qualcomm TLA, or (4) allegedly anti-competitive or unfair behavior or actions by Arm, including but not limited to Arm's alleged campaign to harm or threaten to harm competition in the markets for CPUs and SoCs.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 142:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs also object to the phrases "Nuvia Designs" and "Nuvia-based Products" because they are vague, ambiguous, overbroad, and irrelevant, including because issues related to Nuvia were litigated and resolved in the prior litigation, *Arm Ltd. v. Qualcomm Inc.*, No. 22-1146-MN.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs also object to this Request to the extent that it seeks production of confidential information related

███████████

to governmental proceedings.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:**  Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTIONS NO. 143:**

All Documents, Communications, and Things concerning Qualcomm's submissions to the United States Department of Justice, Federal Trade Commission, European Commission, Korea Fair Trade Commission, or any other regulatory body relating to Qualcomm's acquisition of Nuvia.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 143:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs also object to this Request to the extent that it seeks production of confidential information related to governmental proceedings.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:**  Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTIONS NO. 144:**

All Documents, Communications, and Things concerning any statements or requests for information by the United States Department of Justice, Federal Trade Commission, European Commission, Korea Fair Trade Commission, or any other regulatory body relating to Qualcomm's acquisition of Nuvia.

███████████

**RESPONSE TO REQUEST FOR PRODUCTION NO. 144:**

Plaintiffs object to this Request as duplicative of RFP No. 143 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response:**  Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTIONS NO. 145:**

All Documents, Communications, and Things concerning Qualcomm's Communications (for attribution, on background, off the record, or otherwise) with press, publicists, journalists, writers, media outlets (including podcasts, newsletters, blogs, and social media outlets), or publishers relating to or concerning the subject matter of the Bloomberg News article on March 25, 2025, titled "Qualcomm Takes Legal Fight With Arm to Global Antitrust Agencies," regardless of whether those Communications occurred before or after publication of the article.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 145:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:**  Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTIONS NO. 146:**

All Documents, Communications, and Things concerning Qualcomm's Communications (for attribution, on background, off the record, or otherwise) with press, publicists, journalists, writers, media outlets (including podcasts, newsletters, blogs, and social media outlets), or publishers soliciting, suggesting, or requesting that those Persons publish an article or otherwise create content relating to or concerning the subject matter in the Bloomberg News article on March

██████████

25, 2025, titled "Qualcomm Takes Legal Fight With Arm to Global Antitrust Agencies," regardless of whether those Communications occurred before or after publication of the article.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 146:

Plaintiffs object to this Request as duplicative of RFP No. 145 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response:** Plaintiffs will not produce documents in response to this Request.

## REQUEST FOR PRODUCTIONS NO. 147:

All Documents, Communications, and Things concerning Qualcomm's Communications (for attribution, on background, off the record, or otherwise) with press, publicists, journalists, writers, media outlets (including podcasts, newsletters, blogs, and social media outlets), or publishers concerning (a)



or (b)

## RESPONSE TO REQUEST FOR PRODUCTION NO. 147:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:** Plaintiffs will not produce documents in response to this Request.

## REQUEST FOR PRODUCTIONS NO. 148:

All Communications by You to Arm requesting OOBs, ACK tests, patches, ██████, bug fixes, and any other items for each new version of (i) Your designs or products that incorporate,

25

A0147

████████████

are based on, embody, contain, or relate to Nuvia Designs or Nuvia-based Products, including ██████████████████████████████, and (ii) any subsequent designs or products developed by You.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 148:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this request on the ground that it seeks production of materials that are in the possession, custody, or control of Defendant. Plaintiffs also object to the phrases "Nuvia Designs" and "Nuvia-based Products" because they are vague, ambiguous, overbroad, and irrelevant, including because issues related to Nuvia were litigated and resolved in the prior litigation, *Arm Ltd. v. Qualcomm Inc.*, No. 22-1146-MN. Plaintiffs further object to this Request on the ground that it is duplicative of other of Defendant's requests, including, for example, RFP 35.

**Response:** Subject to and without waiver of these objections, Plaintiffs will produce documents in accordance with their response to RFP 35.

**REQUEST FOR PRODUCTIONS NO. 149:**

All Documents, Communications, and Things related to or concerning Your efforts to verify compliance with the Arm ARM or Arm ISA for each of (i) Your designs or products that incorporate, are based on, embody, contain, or relate to Nuvia Designs or Nuvia-based Products, including ████████████████████████████, and (ii) any subsequent designs or products developed by You.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 149:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and

Things."  Plaintiffs also object to the phrases "Nuvia Designs" and "Nuvia-based Products"

because they are vague, ambiguous, overbroad, and irrelevant, including because issues related to

Nuvia were litigated and resolved in the prior litigation, *Arm Ltd. v. Qualcomm Inc.*, No. 22-1146-

MN.  Plaintiffs further object to this request on the ground that it seeks production of materials

that are in the possession, custody, or control of Defendant.  Plaintiffs further object to this Request

on the ground that it seeks information that is not relevant to any claim or defense of any party in

this case.

**Response:**    Plaintiffs are willing to meet and confer with Defendant regarding the

relevance and appropriate scope, if any, of the Request.

**REQUEST FOR PRODUCTIONS NO. 150:**

All Documents, Communications, and Things sufficient to show whether You were
successful in verifying compliance with the Arm ARM or Arm ISA for each of (i) Your designs
or products that incorporate, are based on, embody, contain, or relate to Nuvia Designs or Nuvia-
based Products, including ████████████████████████████████████ and (ii)
any subsequent designs or products developed by You.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 150:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General

Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request to the

extent it seeks the production of documents or the disclosure of information protected by the

attorney-client privilege, the work product doctrine, or any other privilege or immunity from

disclosure recognized by law.  Plaintiffs object to this Request on the grounds that it is overbroad

and unduly burdensome, including because it requests "all Documents, Communications, and

Things."  Plaintiffs also object to the phrases "Nuvia Designs" and "Nuvia-based Products"

because they are vague, ambiguous, overbroad, and irrelevant, including because issues related to

Nuvia were litigated and resolved in the prior litigation, *Arm Ltd. v. Qualcomm Inc.*, No. 22-1146-

MN.  Plaintiffs also object to this request on the ground that it seeks production of materials that

are in the possession, custody, or control of Defendant.  Plaintiffs further object to this Request on

the ground that it is duplicative of other of Defendant's requests, including, for example, RFPs 24,

31, and 149.

**Response:**    Plaintiffs are willing to meet and confer with Defendant regarding the

relevance and appropriate scope, if any, of the Request.

## REQUEST FOR PRODUCTIONS NO. 151:

All Documents, Communications, and Things, including confidential filings, submitted by You or Third Parties to the Federal Trade Commission relating to any investigations into Qualcomm's licensing or business activities, including but not limited to the Federal Trade Commission investigation and subsequent action in *Federal Trade Commission* v. *Qualcomm Inc.*, No. 5:17-cv-220-LHK (N.D. Cal.).

## RESPONSE TO REQUEST FOR PRODUCTION NO. 151:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General

Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request on the

grounds that it is overbroad and unduly burdensome, including because it requests "all Documents,

Communications, and Things."  Plaintiffs also object to this Request to the extent that it seeks

production of confidential information related to governmental proceedings.  Plaintiffs further

object to this Request on the ground that it seeks information that is not relevant to any claim or

defense of any party in this case.

**Response:**  Plaintiffs will not produce documents in response to this Request.

## REQUEST FOR PRODUCTIONS NO. 152:

All Documents, Communications, and Things, including confidential filings, submitted by You or Third Parties to any federal or global antitrust authority, including but not limited to the Federal Trade Commission, European Commission, and Korea Fair Trade Commission, relating to any investigations into Qualcomm's licensing or business activities.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 152:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs also object to this Request to the extent that it seeks production of confidential information related to governmental proceedings.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:**  Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTIONS NO. 153:**

All testimony, statements, declarations, or affidavits filed by Qualcomm in connection with the Federal Trade Commission investigation and subsequent action in *Federal Trade Commission* v. *Qualcomm Inc.*, No. 5:17-cv-220-LHK (N.D. Cal.).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 153:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome.  Plaintiffs also object to this Request to the extent that it seeks production of confidential information related to governmental proceedings. Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case..  Plaintiffs also object to this Request to the extent it seeks production of materials that are publicly available.

**Response:**  Plaintiffs will not  produce documents in response to this Request.

**REQUEST FOR PRODUCTIONS NO. 154:**

All testimony, statements, declarations, or affidavits filed by Qualcomm in connection with *Apple Inc.* v. *Qualcomm Inc.*, No. 3:17-cv-00108-GPC-MDD (S.D. Cal.).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 154:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case. Plaintiffs also object to this Request to the extent it seeks production of materials that are publicly available.

**Response:**  Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTIONS NO. 155:**

All testimony, statements, declarations, or affidavits filed by Qualcomm in connection with *In re Qualcomm Inc. Securities Litig.*, No. 3:17-cv-121-JO-MSB (S.D. Cal.).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 155:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case. Plaintiffs also object to this Request to the extent it seeks production of materials that are publicly available.

**Response:**  Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTIONS NO. 156:**

All testimony, statements, declarations, or affidavits filed by Qualcomm in connection with *In re Qualcomm Antitrust Litig.*, No. 17-md-02773-JSC (N.D. Cal.).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 156:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the

grounds that it is overbroad and unduly burdensome.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case. Plaintiffs also object to this Request to the extent it seeks production of materials that are publicly available.

**Response:**  Plaintiffs will not produce documents in response to this Request.

## REQUEST FOR PRODUCTIONS NO. 157:

All Documents, Communications, and Things related to or concerning any of Your efforts, plans, or strategy to edit, influence, direct, shape, or otherwise affect news articles, stories, accounts, reports, or publications regarding Arm or the subject matter of the claims at issue in the Litigation, in any regulatory proceeding against or sought against Arm, or in *Arm Ltd.* v. *Qualcomm Inc.*, No. 22-1146 (MN) (D. Del.).

## RESPONSE TO REQUEST FOR PRODUCTION NO. 157:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:**  Plaintiffs will not produce documents in response to this Request.

## REQUEST FOR PRODUCTIONS NO. 158:

Documents, Communications, and Things sufficient to identify all persons involved in Your efforts, plans, or strategy to edit, influence, direct, shape, or otherwise affect news articles, stories, accounts, reports, or publications regarding Arm or the subject matter of the claims at issue in the Litigation, in any regulatory proceeding against or sought against Arm, or in *Arm Ltd.* v. *Qualcomm Inc.*, No. 22-1146 (MN) (D. Del.), including Qualcomm-affiliated persons and Third Parties.

████████████

## RESPONSE TO REQUEST FOR PRODUCTION NO. 158:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:**  Plaintiffs will not produce documents in response to this Request.

## REQUEST FOR PRODUCTIONS NO. 159:

Documents, Communications, and Things sufficient to show the monetary amount You have spent on Your efforts, plans, or strategy to edit, influence, direct, shape, or otherwise affect news articles, stories, accounts, reports, or publications regarding Arm or the subject matter of the claims at issue in the Litigation, in any regulatory proceeding against or sought against Arm, or in *Arm Ltd.* v. *Qualcomm Inc.*, No. 22-1146 (MN) (D. Del.), including any invoices, agreements, or other documents specifying the amounts You have paid to Third Parties for services performed related to publicizing such stories.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 159:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:**  Plaintiffs will not produce documents in response to this Request.

## REQUEST FOR PRODUCTIONS NO. 160:

All Documents, Communications, and Things relating to the validation of any ████████ ████████ , ████████████ , and all implementations thereof for which You did not receive any OOB from Arm, including Documents showing the amount of time and resources that You devoted to such validation processes.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 160:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request to the

extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request on the ground that it is duplicative of other of Defendant's requests, including, for example, RFP No. 24.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce documents in accordance with their responses to RFP No. 24.

## REQUEST FOR PRODUCTIONS NO. 161:

All Documents, Communications, and Things relating to the validation of any ███████ ██████████ , ██████████████████ , and all implementations thereof for which You did receive at least one OOB from Arm, including Documents showing the amount of time and resources that You devoted to such validation processes.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 161:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."

**Response:**  Plaintiffs are willing to meet and confer with Defendant regarding the appropriate scope, if any, of the Request.

## REQUEST FOR PRODUCTIONS NO. 162:

All Documents, Communications, and Things analyzing, reviewing, or comparing the amount of time and resources that You devoted to the validation of any ███████████

33

**A0155**

████████████████

████, ████████████████, and all implementations thereof for which You did not receive an OOB from Arm on the one hand and any ████████████████, ████████████████, and all implementations thereof for which You did receive at least one OOB from Arm on the other hand.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 162:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this request on the ground that it is duplicative of other of Arm's requests, including RFPs 24, 89, 110.

**Response:** Subject to and without waiver of these objections, Plaintiffs will produce documents in accordance with their responses to RFPs 24, 89, and 110.

## REQUEST FOR PRODUCTIONS NO. 163:

All Documents, Communications, and Things relating to the validation of any ████████████ ████████████, ████████████████, and all implementations thereof for which You did not receive any ACK patches from Arm, including Documents showing the amount of time and resources that You devoted to such validation processes.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 163:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and

34
A0156

Things."  Plaintiffs further object to this Request on the ground that it is duplicative of other of

Defendant's requests, including, for example, RFP 32.

**Response:**  Subject to and without waiver of these objections, Plaintiffs will produce

documents in accordance with their response to RFP No. 32.

## REQUEST FOR PRODUCTIONS NO. 164:

All Documents, Communications, and Things relating to the validation of any █████████ ██████████ , ███████████████ , and all implementations thereof for which You did receive at least one ACK patch from Arm, including Documents showing the amount of time and resources that You devoted to such validation processes.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 164:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General

Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request to the

extent it seeks the production of documents or the disclosure of information protected by the

attorney-client privilege, the work product doctrine, or any other privilege or immunity from

disclosure recognized by law.  Plaintiffs object to this Request on the grounds that it is overbroad

and unduly burdensome, including because it requests "all Documents, Communications, and

Things."  Plaintiffs further object to this Request on the ground that it seeks information that is not

relevant to any claim or defense of any party in this case..  Plaintiffs further object to this Request

on the ground that it is duplicative of other of Defendant's requests, including, for example, RFP

32.

**Response:**  Subject to and without waiver of these objections, Plaintiffs will produce

documents in accordance with their response to RFP 32.

## REQUEST FOR PRODUCTIONS NO. 165:

All Documents, Communications, and Things analyzing, reviewing, or comparing the amount of time and resources that You devoted to the validation of any █████████████ ████ , ████████████████ , and all implementations thereof for which You did not receive an ACK patch from Arm on the one hand and any ████████████████ , █████████



, and all implementations thereof for which You did receive at least one ACK patch from Arm on the other hand.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 165:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs also object to this Request on the ground that it is duplicative of other of Defendant's requests, including No. 25.  Plaintiffs further object to this Request to the extent that it seeks information that are not relevant to any claim or defense of any party in this case.

**Response:**  Subject to and without waiver of any of these objections, Plaintiffs will produce documents in accordance with their response to RFP 25.

## REQUEST FOR PRODUCTIONS NO. 166:

All Documents, Communications, and Things relating to the architecture validation processes for each version of any implementation or design intended to comply with Arm's v9 architecture, including ███████ and ██████.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 166:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and

36
**A0158**

Things." Plaintiffs further object to this Request to the extent it calls for production of materials in the possession, custody, or control, of Defendant. Plaintiffs further object to this Request to the extent that it seeks information that is not relevant to any claim or defense in this case. Plaintiffs also object to this Request on the ground that it is duplicative of other of Defendant's requests, including RFPs 160, 161, 163, and 164.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce documents in accordance with their responses to RFPs 160, 161, 163, and 164.

## REQUEST FOR PRODUCTIONS NO. 167:

Documents sufficient to show each instance in which You requested an OOB from Arm, from June 1, 2022 to present.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 167:

Plaintiffs object to this Request as duplicative of RFP No. 35 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response**: Plaintiffs will not produce additional documents in response to this Request.

## REQUEST FOR PRODUCTIONS NO. 168:

Documents sufficient to show each instance in which You requested, but did not receive, an OOB from Arm, from May 31, 2013 to June 1, 2022.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 168:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome. Plaintiffs further object to this request to the extent that it calls for information that is in the possession, custody, or control of Defendant. Plaintiffs also object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

37

A0159

**Response:**   Plaintiffs are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of the Request.

## REQUEST FOR PRODUCTIONS NO. 169:

All Documents, Communications, and Things relating to any OOB or OOB-equivalent that You developed, as opposed to OOBs that Arm developed and provided to You.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 169:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.   Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.   Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."

**Response:**   Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, sufficient to show Plaintiffs' efforts to verify that their products are compliant with the Arm ISA in the absence of the OOB deliverables.

## REQUEST FOR PRODUCTIONS NO. 170:

Documents sufficient to show each instance in which You requested an ACK patch from Arm, from June 1, 2022 to present.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 170:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent that it calls for information that is in the possession, custody, or control of Defendant.

Plaintiffs also object to this Request on the ground that it is duplicative of other of Defendant's RFPs, including, for example, RFP 35.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

## REQUEST FOR PRODUCTIONS NO. 171:

Documents sufficient to show each instance in which You requested, but did not receive, an ACK patch from Arm, from May 31, 2013 to June 1, 2022.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 171:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome. Plaintiffs further object to this request to the extent that it calls for information that is in the possession, custody, or control of Defendant. Plaintiffs also object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:** Plaintiffs are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of the Request.

## REQUEST FOR PRODUCTIONS NO. 172:

All Documents, Communications, and Things relating to any ACK patch or ACK patch-equivalent that You developed, as opposed to ACK patches that Arm developed and provided to You.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 172:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs object to this Request to the

39
A0161

extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."

Response:  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, sufficient to show Plaintiffs' efforts to verify that their products are compliant with the Arm ISA in the absence of the ACK patches from Arm.

REQUEST FOR PRODUCTIONS NO. 173:

All Documents, Communications, and Things relating to any downloads, releases, notes, publications, materials, support, or the like, including patches and partner-specific test compilations, that have been provided, offered, and/or made available to Qualcomm in connection with or relating to architecture compliance verification or validation processes concerning designs or products that are designed or intended to comply with any non-Arm architecture, including RISC-V, x86, and/or MIPS.

RESPONSE TO REQUEST FOR PRODUCTION NO. 173:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request on the ground that "downloads, releases, notes, publications, materials, support, or the like, including patches and partner-specific test

40

A0162

compilations," is vague and ambiguous.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense of any party in this case.

**Response:**   Plaintiffs are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of the Request.


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*
_____

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

May 1, 2025

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

41
**A0163**

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2025, copies of the foregoing were caused to be served upon

the following in the manner indicated:

Anne Shea Gaza, Esquire                                   *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                               *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                                 *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Kyle W.K. Mooney, Esquire                                 *VIA ELECTRONIC MAIL*
Kyle D. Friedland, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

Erik J. Olson, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
*Attorneys for Defendant*

42
**A0164**

███████

Gregg F. LoCascio, P.C.                                           *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                              *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*


                                          */s/ Jennifer Ying*
                                          _____
                                          Jennifer Ying (#5550)

# Exhibit 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
   a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
   Delaware corporation

        Plaintiffs,

        v.

ARM HOLDINGS PLC, f/k/a, ARM LTD.
   a U.K. corporation

        Defendant.

C.A. No. 24-490-MN



## ARM HOLDINGS PLC'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S FIRST SET OF INTERROGATORIES (NOS. 1–3)

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States District Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm")'s First Set of Interrogatories (Nos. 1–3).

### GENERAL OBJECTIONS

Arm makes the following general objections, which are hereby incorporated by reference and made part of its response to each and every Interrogatory.

1.      Arm objects to each Interrogatory to the extent it purports to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

2.      Arm objects to the "Instructions" and "Definitions" sections to the extent they purport to alter the plain meaning and/or scope of any specific Interrogatory, on the ground that

A0167

1

such alteration renders the Interrogatory vague, ambiguous, overly broad, and/or uncertain, by failing to adequately define terms or by using terms the meaning of which are not readily available or decipherable. Arm's responses to such Interrogatories shall not be construed as an admission, agreement, or acquiescence to any such instruction or definition. Arm further objects to the "Instructions" and "Definitions" sections to the extent they purport to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

3.     Arm objects to the definitions of "Defendant," "Arm," "you," and "your" as overly broad and unduly burdensome to the extent they purport to require Arm to provide information that is not within the possession, custody, or control of Arm Holdings PLC, or to otherwise respond on behalf of third parties, at least because these definitions include entities that have no relation to the present litigation.

4.     Arm objects to the definitions of "ALA" and "TLA" as overbroad and vague and ambiguous to the extent they define Architecture License Agreement and Technology License Agreement to include "all amendments and annexes to any such agreement."

5.     Arm objects to the definition of "███████████" as overbroad and vague and ambiguous to the extent it defines the term by reference to the definition of that term in "Section

A0168

2

██ of the Qualcomm ALA, ████████ of the Qualcomm v8-A ALA Annex, or ██████████ of the Qualcomm v9-A ALA Annex."

6.      Arm objects to the definition of "ACK" as overbroad and vague and ambiguous to the extent it defines the term as meaning "Arm's Architecture Compliance Kit or Arm's Architecture Validation Suite or Arm's Architecture Compliance Suite."

7.      Arm objects to each Interrogatory, including the instructions and definitions that Qualcomm purports to incorporate therein, to the extent that each Interrogatory is overbroad, unduly burdensome, not limited to a reasonable time frame, vague and ambiguous, irrelevant, and/or not reasonably calculated to lead to the discovery of admissible evidence.

8.      Arm objects to each Interrogatory to the extent it seeks information, documents, and/or things that are protected from disclosure by the attorney-client privilege, work-product doctrine, common-interest privilege, and/or any other applicable privilege, immunity, or protection (collectively, "privileged information").  Nothing contained in these responses should be considered a waiver of any attorney-client privilege, work-product protection, or any other applicable privilege or doctrine.  Arm does not intend to produce information or documents that would divulge any privileged information.  Any such disclosure is inadvertent and shall not be deemed a waiver of any applicable privilege or immunity.

9.      Arm objects to any factual characterizations in Qualcomm's Interrogatories.  By responding, Arm does not accept or admit any of Qualcomm's factual characterizations.

10.     Arm objects to each Interrogatory to the extent it seeks "all" or "any" facts, documents, witness identifications, or things as overbroad and unduly burdensome.

11.     Arm's discovery and investigation in connection with this case is ongoing.  Arm's responses to these Interrogatories are based on its knowledge to date following a reasonable

investigation.  As a result, Arm's responses are provided without waiver of Arm's right to: (a)

object to other interrogatories directed to the subject matter of these Interrogatories and responses;

(b) make additional or supplementary objections to these Interrogatories; or (c) revise, amend,

supplement, or clarify the contents of these responses.

Subject to and without wavier of these General Objections and the more specific objections

set forth below, Arm responds as follows:

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1:

Identify and describe in detail all ██████████████████ thereto, or any other downloads, releases, notes, publications, materials, support, or the like, including ACK patches and OOB tests, that Qualcomm is entitled to under the Qualcomm ALA that Arm has released, distributed, or otherwise made available since June 1, 2022 but not provided to Qualcomm. For each such item identified, your response should include (i) a description of the licensed item, (ii) the type of information (i.e., ███████████████████████████████ ██████████████████████ ), (iii) the date(s) the item was made available by Arm, (iv) the names of any Arm licensee other than Qualcomm who received the item, (v) the date(s) of distribution to each Arm licensee other than Qualcomm, (vi) the terms and conditions, including cost, of each Arm licensee for each item identified in response to (iii)-(v), (vii) the three (3) Persons affiliated with Arm with the most knowledge of your response, and (viii) an identification of all documents (by Bates number) that support your response.

### RESPONSE TO INTERROGATORY NO. 1 (MARCH 24, 2025):

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this

Interrogatory to the extent it seeks to characterize "any other downloads, releases, notes,

publications, materials, support, or the like, including ACK patches and OOB tests" as "████

█████████████████ thereto."  Arm objects to this Interrogatory as overbroad, unduly

burdensome, and not proportional to the needs of the case, including because it seeks the

identification and description of "all … or any other" items, materials, or actions from a list of

broad and undefined categories, including "notes, publications, materials, support, or the like."

Arm objects to this Interrogatory to the extent it calls for a legal conclusion. Arm further objects

to this Interrogatory as seeking information that is more readily available to Qualcomm than it is to Arm. Arm further objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information regarding what Arm provided licensees other than Qualcomm under or relating to license agreements to which Qualcomm is not a party. Arm objects to this Interrogatory's use of the phrase "or the like," as vague and ambiguous. Arm objects to this Interrogatory to the extent it seeks privileged information. Arm additionally objects to this Interrogatory as compound and constituting several, discrete interrogatories.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

There are no " █████████████████████ ," as these terms are used in the Qualcomm ALA (including ███████████ ), and each Annex 1 thereto, or any downloads, releases, notes, publications, materials, support, or other materials, including ACK patches and OOBs, that Qualcomm is entitled to under the Qualcomm ALA that Arm has released, distributed, or otherwise made available since June 1, 2022 but not provided to Qualcomm.

Arm's Interrogatory No. 2 to Qualcomm seeks Qualcomm's "contention that Arm failed to meet any of its obligations under the Qualcomm ALA," and in response, Qualcomm alleges that Arm "failed to deliver (1) patches to the ACK and (2) the OOB," but does not specify any particular ACK patch or OOB that it contends Arm failed to deliver. Qualcomm's Responses and Objections to Arm's First Set of Interrogatories (Nos. 1-9) at 9-11 (March 10, 2025). However, (1) Qualcomm is not entitled to ACK patches and OOB under ███████████ at least because ACK patches and OOB are not " █████████████████████ "; (2) Qualcomm is not entitled to any ACK patches or OOBs for Nuvia-based designs for the reasons explained in Arm's January 17, 2025

**A0171**
5

Motion For Judgment As A Matter Of Law Or A New Trial (No. 22-1146, D.I. 596); (3) notwithstanding that Qualcomm is not entitled to any support for Nuvia-based designs, Arm has since January 8, 2025 committed to provide support to Qualcomm for Nuvia-based designs during the pendency of certain litigation between the parties; (4) Arm did not withhold any ACK patches that Qualcomm was entitled to; (5) Arm did not withhold any OOBs that Qualcomm was entitled to.

### Qualcomm Is Not Entitled To ACK Patches And OOB Under ██████████ At Least Because ACK Patches And OOB Are Not "████████████████"

Qualcomm is not entitled to ACK patches and OOB under ████████ under the Qualcomm ALA at least because they are not "████████████████."

The Qualcomm ALA, at ██████ states that ""



████████████████████ ARM_00055357 at ████. The Qualcomm ALA, at Annex 1 for the ARMv8-A Architecture (████████████████), states that ████████████████ ████████████████ ████████████████ ████████████████." ARM_00063298 at -301, ████. Annex 1 for the Armv9-A Architecture (████████████) states that ████████████ ████████████████ ████████████████ QCARM_0343954 at -959, ████.

The Qualcomm ALA, at ██████ states that "'████' means:

(████████████████████████████



ARM_00055357 at -359, ███ .

The Qualcomm ALA, at ██████ states that ██████████████████████████████████████████████████████████████████████████████████ ARM_00055357 at -360, ███ . The Qualcomm ALA, at Annex 1 for the Armv8-A Architecture (██████████████████), states that "███████████████████████████████████████████████████████████████." ARM_00063298 at -301, § ███ . Annex 1 for the Armv9-A Architecture (██████████████████) states that "███

A0173
7



.” QCARM_0343954 at -958, ██████.

ACK patches are not ██████████████████” under the Qualcomm ALA.  An ACK patch is a partner-specific solution to a partner-specific ACK test issue, and when that solution is relevant to all ALA licensees, Arm typically incorporates the solution into its next quarterly ACK release, which is made available to all ALA partners, including Qualcomm.  ACK patches are not “████████” at least because they are not ████████████████████████████████ as defined in the Qualcomm ALA, ARM_00055357 at ████ and because ACK patches are not ████████████████████████████████████████ to the Qualcomm ALA, ARM_00063298 at -301, ██████.  ACK patches are also not ████████████████████████████████ *Id.* at -301, ██████; *id.* at -299–300, ████████████████.  ACK patches are also not included in ████████████████ of the Armv9-A Architecture Annex 1 to the Qualcomm ALA. QCARM_00343954 at -955–58, ████████.  None of the ████████████” identified and listed by part number in ██████ of the Armv8-A Architecture Annex 1 or the Armv9-A Architecture Annex 1 to the Qualcomm ALA are ACK patches.  ACK patches are not ████████ because they are not “████████████████████████████████████████████████████████████████████████████████████████,” as defined in the Qualcomm ALA.  ARM_00055357 at -359, § ████ ACK patches are not “████

█████████████████████████████████████████████████████

████████." *Id.*

OOBs are not ██████████████████████ under the Qualcomm ALA. OOBs identify which of the previously delivered ACK tests a partner should run and are based on the configuration of the partner's design implementation. OOBs are not ████████████" at least because they are not ███████████████████████████████████████ ██████████████ as defined in the Qualcomm ALA, ARM_00055357 at ███, and because OOBs are not █████████████████████████████████████████ █████████████" as defined in the Armv8-A Architecture Annex 1 (████████████████ ███ to the Qualcomm ALA, ARM_00063298 at -301, █████. OOBs are also not ████████ ███████████████████████████████ *Id.* at -301, ████; *id.* at -299–300, ████████████████████████████. OOBs are also not included in ██████████████ ███████ of the Armv9-A Architecture Annex 1 to the Qualcomm ALA. QCARM_00343954 at -955–58, §§ ██████ OOBs are not "██████" because they are not ███████████████ █████████████████████████████████████████████████████ █████████████████████████████████████████████████████ ████████████████████████████," as defined in the Qualcomm ALA. ARM_00055357 at -359, ██████. OOBs are not ███████████████████████ ██████████████████████████████████ *Id.*

### Qualcomm Is Not Entitled To Any ACK Patches Or OOBs For Nuvia-Based Designs

Nuvia-based designs (including Qualcomm's Oryon CPU cores and the CPU cores used in Qualcomm's Hamoa, Pakala, Nordschleife, and Pegasus products) are unlicensed cores that fall outside the Qualcomm ALA for the reasons explained in Arm's January 17, 2025 Motion For

Judgment As A Matter Of Law Or A New Trial (No. 22-1146, D.I. 596) and Arm's February 28, 2025 Reply In Support Of Its Motion For Judgment As A Matter of Law Or A New Trial (No. 22-1146, D.I. 614). Qualcomm is not entitled to any ACK Patches or OOB for those unlicensed CPU cores. ARM_00055357 §§ ███████; ARM_00063298 § ███. Under the Qualcomm ALA, Qualcomm is licensed and permitted only to develop, verify, and sell Architecture Compliant Products. ARM_00055357 ██████████; ARM_00063298 ████. Such Arm Compliant Products are limited to ███████████" that "████████████████████ ██████" ARM_00055357 ████. And those Architecture Compliant Cores are limited to CPU cores developed (1) under the licenses granted in the Qualcomm ALA, (2) by or for Qualcomm, and (3) based on Arm Technology that Arm delivered to Qualcomm. The pre-acquisition Nuvia designs do not satisfy any of those requirements for the reasons explained in Arm's January 17, 2025 Motion For Judgment As A Matter Of Law Or A New Trial (No. 22-1146, D.I. 596) and Arm's February 28, 2025 Reply In Support Of Its Motion For Judgment As A Matter of Law Or A New Trial (No. 22-1146, D.I. 614). The integrated circuits and central microprocessor units Qualcomm developed that incorporate or are based on the pre-acquisition Nuvia designs therefore fall outside the scope of the Qualcomm ALA and outside the scope of Arm's support obligations under that agreement. The Qualcomm ALA permits Qualcomm to seek support and verification solely for CPU designs created by Qualcomm employees, at a time when they were Qualcomm employees, but does not permit Qualcomm to seek support and verification for designs from third parties such as Nuvia.

Because the Nuvia-based designs are not licensed under the Qualcomm ALA, Qualcomm is not entitled to any ACK patches or OOBs for them under the Qualcomm ALA.

**<u>Notwithstanding That Qualcomm Is Not Entitled To Support For Nuvia-Based Designs, Arm Has Since January 8, 2025 Committed To Provide Support For Them</u>**

A0176

10

On January 8, 2025, Arm sent a letter to Qualcomm stating that "Arm intends to provide support for the Nuvia CPUs, including support and verification services" pending certain litigation between the parties:

> The Qualcomm ALA was the subject of an incomplete jury verdict on December 20 that found in Qualcomm's favor. That verdict is not final and is subject to a variety of legal challenges. Nonetheless, Arm respects and values the jury process and the Court's ongoing role in resolving the parties' disputes. As a result, and while Arm's ongoing legal challenges are pending, Arm will treat the Nuvia CPUs as falling within the scope of the Qualcomm ALA, and Arm therefore withdraws the pending October 22, 2024 notice of material breach. Arm has no current plan to terminate the Qualcomm ALA until the legal process resolves the parties' disputes over the Qualcomm ALA. Arm also conditionally accepts Qualcomm's one-time, five-year year extension under which the Qualcomm ALA will expire in 2033. Pursuant to separate correspondence, Arm intends to provide support for the Nuvia CPUs, including support and verification services, while the related legal challenges remain outstanding.

1/8/2025 Arm Letter to Qualcomm.

### **Arm Did Not Withhold Any ACK Patches Qualcomm Was Entitled To**

Qualcomm has not identified any specific ACK patch(es) that Qualcomm contends Arm improperly withheld from Qualcomm. For example, Qualcomm does not identify any specific ACK patches that Arm allegedly withheld from Qualcomm in its response to Arm's Interrogatory No. 2, which seeks, *inter alia*, "the complete legal and factual basis for [Qualcomm's] contention that Arm failed to meet any of its obligations under the Qualcomm ALA." Qualcomm's Responses and Objections to Arm's First Set of Interrogatories (Nos. 1-9) at 9-11 (March 10, 2025). Qualcomm cites to its First Amended Complaint, where Qualcomm references Arm engineer Vivek Agrawal's deposition testimony and exhibit QX175 to his deposition (ARM_01314327) to allege that Arm "withheld from Qualcomm certain ACK 'patches.'" FAC ¶ 80 (citing Redacted Mar. 5, 2024 Hr'g Tr., *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 26, 2024), D.I. 312-1; Redacted Mar. 6 Order, Ex. A. to Pl.'s Ltr. to Hon. Laura D. Hatcher Regarding Redactions to the Mar. 6, 2024 Mem. Order, *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN

(D. Del. Mar. 20, 2024), D.I. 303 at ECF p.5). Qualcomm does not, however, identify any specific ACK patches that Arm allegedly withheld from Qualcomm. *Id.*

Qualcomm's FAC cites to its November 3, 2022 and December 5, 2022 letters to Arm, however, those letters also did not specifically identify any allegedly withheld ACK patches. ARM_00025401–03. The cited requests for ACK patches in QX175 were for a product that Arm "believe[d] … to be using Nuvia technology," QX175 at ARM_01314329, and Qualcomm is not entitled to any ACK patches for Nuvia-based designs. Further, Arm continued to provide all of its ALA partners, including Qualcomm, the same quarterly ACK releases, which typically incorporate solutions to ACK test issues that are relevant to all ALA licensees. As Qualcomm acknowledged in its First Amended Complaint, Qualcomm did not need any ACK patches from Arm to run the validation tests that Arm had provided. FAC ¶ 86.

### Arm Did Not Withhold Any OOBs Qualcomm Was Entitled To

Qualcomm has not identified any specific OOBs that Qualcomm contends Arm improperly withheld from Qualcomm. For example, Arm's Interrogatory No. 2 seeks "the complete legal and factual basis for [Qualcomm's] contention that Arm failed to meet any of its obligations under the Qualcomm ALA." Qualcomm's Responses and Objections to Arm's First Set of Interrogatories (Nos. 1-9) at 9-11 (March 10, 2025). Qualcomm does not identify any specific OOBs that Arm allegedly withheld. Qualcomm cites to its First Amended Complaint, where Qualcomm references Arm engineer Vivek Agrawal's deposition testimony and exhibit QX175 (ARM_01314327) to his deposition, as well as an October 10, 2022 email that Mr. Agrawal sent to Qualcomm engineer Jignesh Trivedi, produced at ARM_01020195. FAC ¶¶ 69, 79–80. However, neither the cited testimony nor the cited documents reference any specific OOB that Qualcomm contends Arm improperly withheld; they simply reference "OOB." Likewise, Qualcomm cites to its November

**A0178**

12

3, 2022 and December 5, 2022 letters to Arm, but those letters do not identify any allegedly withheld OOB and instead simply reference "the OOB." ARM_00025401–03. The cited requests for OOBs were for a product that Arm "believe[d] … to be using Nuvia technology," QX175 at ARM_01314329; *see also* ARM_01020195, and Qualcomm is not entitled to any OOBs for Nuvia-based designs.

Further, OOBs identify which of the previously delivered tests a partner should run, and Arm had already delivered those tests to Qualcomm in the Architecture Valid Suite Kit. *See*

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

ARM_00002045 ("Management System Report" showing Arm "IP downloaded from Connect" by specific Nuvia employees, later Qualcomm employees, including the "ARMv8-A Architecture Compliance Kit," the "ARMv8-A Architecture – Valid Suite Kit" and the "User Guide"). As Qualcomm acknowledged in its First Amended Complaint, Qualcomm did not need any OOB from Arm to run the validation tests that Arm had provided. FAC ¶ 85; *see also* Agrawal Dep. Tr. at 54:18–55:2 (████████████████████████████████████████████████

████████████████████████████████████████████████

Further, because OOB is partner-specific, Arm has not "released, distributed, or otherwise made available since June 1, 2022 but not provided to Qualcomm" any OOB that would be relevant to Qualcomm. Agrawal Dep. Tr. at 29:1–21 ████████████████████████████████████████).

Further, by June 1, 2022, Arm had given Qualcomm several OOB packages, including for use with Nuvia-based designs. *See*, *e.g.*, ████████████████████████████

███████████████████████████████████████████████████

███████ ); ARM_00001192 (Arm delivering OOB to Qualcomm on or around October 28, 2021); ARM_00001512 (Arm delivering OOB to Qualcomm on or around January 18, 2022); ARM_00132256 (Arm delivering OOB to Qualcomm on or around May 3, 2022). Qualcomm used these OOBs to successfully run ACK testing first for the Nuvia-based Phoenix implementation and then at least for the Nuvia-based Hamoa core design. ARM_00001495 at -495–96 (Arm giving Qualcomm the "Green-signal" for its "Phoenix implementation (v8.7)" on February 4, 2022); ARM_00000634 (Arm telling Qualcomm on June 3, 2022, "No ACK issue pending for Hamoa's sign-off. Results were matching with reference OOB results. Awaiting legal clearance.").

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Vivek Agrawal is knowledgeable about OOBs, ACK releases, and ALA licensee support, and Richard Grisenthwaite is knowledgeable about the design, development, operation, and purported verification of Arm-based technology and Arm's relationship with Nuvia and Qualcomm.

As discovery is ongoing, Arm reserves the right to supplement, amend, or modify its response to this Interrogatory, and reserves the right to rely upon any evidence subsequently discovered or which may otherwise come to light during discovery.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

The Armv8-A Architecture Annex 1 to the Qualcomm ALA defines ████████

████████████████████████████████████████
████████████████████████████████

A0180

14



ARM_00063298 at -302, § ▮. OOBs and ACK patches are not ▮, including for the reasons stated above.

The Armv9-A Architecture Annex 1 to the Qualcomm ALA defines "▮ as:



QCARM_0343954 at -958, § ▮. OOBs and ACK patches are not "ACK", including for the reasons stated above.

Arm further incorporates by reference Arm's objections and responses to Qualcomm Interrogatory Nos. 5 and 10.

Arm further incorporates by reference the testimony of all witnesses that have been deposed in this case to date, including those specifically referenced herein, as well as the testimony of all witnesses deposed in *Arm v. Qualcomm*, Case No. 1:22-cv-01146 (D. Del.), and the exhibits used during those depositions.

Pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARMQC_02603587, ARMQC_02604609, ARMQC_02604610, ARMQC_02604611, ARMQC_02604612, ARMQC_02604613, ARMQC_02604614, ARMQC_02604615, ARMQC_02604616, ARMQC_02604617, ARMQC_02604618, ARMQC_02604619, ARMQC_026046020, ARMQC_02604621, ARMQC_02604622, ARMQC_02604623,

ARMQC_02747093,       ARMQC_02747097,       ARMQC_02747103,       ARMQC_02747104,

ARMQC_02779171,       ARMQC_02779174,       ARMQC_02779176,       ARMQC_02779179,

ARMQC_02779181, QCARM_2430181, ARM_00100013, ARM_01282655, ARM_00090791,

ARM_00067349,    ARM_00102683,    ARM_00091389,    ARM_00068087,    ARM_00068131,

ARM_00068459,    ARM_00068504,    ARM_00091657,    ARM_00091659,    ARM_00091714,

ARM_00091768,    ARM_00091799,    ARM_00091834,    ARM_00091869,    ARM_00091903,

ARM_00075096,    ARM_00075098,    ARM_00075343,    ARM_00076113,    ARM_00103566,

ARM_00103635,       ARMQC_02755397,       ARMQC_02755446,       ARMQC_02755490,

ARMQC_02755534,       ARMQC_02755580,       ARMQC_02755624,       ARMQC_02755674,

ARMQC_02755903,       ARMQC_02755905,       ARMQC_02756148,       ARMQC_02756245,

ARMQC_02756246,       ARMQC_02756344,       ARMQC_02746634,       ARMQC_02756542,

ARMQC_02756544,       ARMQC_02746871,       ARMQC_02756860,       ARMQC_02760525,

ARMQC_02627275,       ARM_01241565,       QCVARM_0573677,       ARMQC_02779064,

ARMQC_02779076,       ARMQC_02779099,       ARMQC_02779107,       ARMQC_02779116,

ARMQC_02779122, ARMQC_02779133, ARM_00001777, ARM_00001195, ARM_00001198,

ARM_00001777, ARM_01020186, QCARM_3337526, QCARM_3337900, QCARM_3338108,

QCARM_3339493,       QCVARM_0685544,       QCVARM_0689117,       QCVARM_0699179,

QCARM_3216178,       QCARM_3066477,       QCVARM_0602227,       QCVARM_0618420,

QCVARM_0691521,       QCVARM_0000395,       QCVARM_0000269,       QCARM_3353040,

QCVARM_0602564,       QCVARM_0000142,       QCVARM_0618741,       QCVARM_0000180,

QCARM_3352796,       QCARM_3353006,       QCARM_3353126,       ARM_00025401,

QCVARM_0468612,       QCVARM_0000061,       QCVARM_1118518,       QCVARM_0602258,

QCVARM_0602295,       QCVARM_0468174,       QCVARM_0000114,       QCVARM_0000092,

QCVARM_0000085, QCVARM_0000123, QCVARM_0000135, QCVARM_0602359, QCVARM_0468148, QCVARM_0000395, QCVARM_0000269, QCARM_3353040, QCVARM_0602564, QCVARM_0621692, QCVARM_0535116, QCVARM_0524624, QCVARM_0854027, QCARM_0566625, QCVARM_0524624, QCVARM_0613083, QCVARM_0613160, QCVARM_0540468, QCVARM_0452598, all documents produced in Qualcomm's 11th production (QCVARM_011), and all documents cited in Qualcomm's responses to Arm Interrogatory Nos. 1, 2, 6, 9, and 13.

As discovery is ongoing, Arm reserves the right to supplement, amend, or modify its response to this Interrogatory, and reserves the right to rely upon any evidence subsequently discovered or which may otherwise come to light during discovery.

**INTERROGATORY NO. 2:**

With respect to Arm's October 22, 2024 letter to Qualcomm alleging that Qualcomm is in material breach of the QC ALA, state (i) a complete explanation for the timing of that letter and an identification of all Persons involved in the drafting of the letter, (ii) a complete list of all Third Parties that Arm shared the letter with or discussed the subject matter of the letter with or otherwise informed of Qualcomm's purported breach and an identification of all Persons affiliated with Arm involved in any communications with those Third Parties, and (iii) a list of the Persons affiliated with Arm with the most knowledge of Arm's decision to share the letter or information with Third Parties, and (iv) an identification of all documents (by Bates number) that support your response.

**RESPONSE TO INTERROGATORY NO. 2 (MARCH 24, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case. Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest

**A0183**

17

privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

## Arm Repeatedly And Publicly Stated That Qualcomm Was In Breach Of The Qualcomm ALA As Early As 2022

On November 15, 2022 Arm filed a publicly-available Answer in *Arm Ltd. v. Qualcomm Inc. et al.*, No. 22-1146 (MN) ("*Arm v. Qualcomm*"), in which Arm publicly stated that "Qualcomm is materially breaching its ALA, giving Arm the right to terminate, and the Qualcomm ALA does not provide a license for or right to continue development of the Nuvia technology," that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology, entitling Arm to terminate that ALA based on Qualcomm's material breaches," that "Arm is entitled to terminate Qualcomm's ALA based on Qualcomm's material breaches of the verification, delivery, and support and maintenance provisions," and that:

> "Qualcomm's allegations that it is exercising its rights with respect to the relevant Nuvia technology under Qualcomm's license agreements with Arm and is not in violation of those agreements fail because Arm has no such obligations with respect to the Nuvia technology, and Qualcomm is breaching the Qualcomm ALA by insisting otherwise. Under the Qualcomm ALA, Arm has no obligation to provide, and Qualcomm has no right to seek, verification, delivery, or support and maintenance in connection with technology developed under the now-terminated Nuvia ALA. The 'verification' provisions of Section 4 of the Qualcomm ALA are limited to products manufactured [redacted] in the ALA. The delivery (Section 5) and support and maintenance (Section 7) obligations of the Qualcomm ALA are similarly limited to the defined [redacted] and therefore likewise do not extend to the relevant Nuvia technology, which embodies and was derived from Arm technology delivered by Arm to Nuvia under Nuvia's now-terminated ALA. Qualcomm's unreasonable, bad-faith demands that Arm comply with purported obligations for verification, delivery, and support and maintenance with respect to technology delivered and developed outside the scope of the Qualcomm ALA are contrary to the parties' expectations and undermines the benefit to Arm from the Qualcomm ALA, thereby materially breaching that agreement's terms and implied

**A0184**
18

covenant of good faith and fair dealing and entitling Arm to terminate the Qualcomm ALA under Section 14.2."

No. 22-1146, D.I. 21 at 2, 37, 39, 41-42.

On April 11, 2024, Arm filed another publicly-available Answer that likewise included allegations that Qualcomm was in breach of its ALA, including that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology," and that "Qualcomm is materially breaching its ALA, giving Arm the right to terminate …." D.I. 322 at 2, 42-45, 48-49. These materials were available to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146.

### Arm and Qualcomm's Correspondence Regarding Qualcomm's Breach of the Qualcomm ALA

On October 22, 2024 Arm sent a notice of material breach ("October 22 Notice") to Qualcomm that echoed its public statements in its November 15, 2022 and April 11, 2024 Answers, including that:

> "The Qualcomm ALA permits Qualcomm to seek support and verification solely for CPU designs created by Qualcomm employees, at a time when they were Qualcomm employees. Qualcomm is only permitted to market an Architecture Compliant Core if Qualcomm has complied in all respects with the requirements of the Qualcomm ALA and completed the verification procedures provided therein. And Qualcomm is entitled to seek contractual remedies solely for CPU designs that fall within the scope of the ALA. These obligations are reflected in multiple places in the Qualcomm ALA, including but not limited to ███████████████████ █████████████████

> Qualcomm has systematically and willfully breached these obligations, and its breaches have accelerated and expanded in recent months. Specifically, Qualcomm has developed CPUs and marketed multiple products that contain CPUs that use designs, technology, and code created by Nuvia employees at the time when Nuvia was a third party (hereinafter 'Nuvia designs'). Recently, Qualcomm has sought support and verification for additional designs that reuse the Nuvia designs. Qualcomm and Nuvia have willfully refused to discontinue use of the Nuvia designs despite the independent obligations provided by Section 15.1 of the Nuvia ALA upon termination. And Qualcomm initiated and continues to prosecute contractual claims that arise from Qualcomm's improper conduct with respect to these unlicensed cores.

Due to Qualcomm's willful, ongoing, and renewed actions, Qualcomm is in material breach of the Qualcomm ALA."

10/22/2024 Arm Breach Notice to Qualcomm. Arm's October 22 Notice was drafted by counsel and sent by Spencer Collins, Arm's Chief Legal Officer, to Ann Chaplin, Qualcomm's General Counsel. Qualcomm responded on October 28, 2024. 10/28/2024 Qualcomm Ltr. to Arm. Qualcomm made a summary of the contents of both notices available to the public on November 6, 2024.

On January 8, 2025, Arm withdrew its October 22 Notice, stating that:

The Qualcomm ALA was the subject of an incomplete jury verdict on December 20 that found in Qualcomm's favor. That verdict is not final and is subject to a variety of legal challenges. Nonetheless, Arm respects and values the jury process and the Court's ongoing role in resolving the parties' disputes. As a result, and while Arm's ongoing legal challenges are pending, Arm will treat the Nuvia CPUs as falling within the scope of the Qualcomm ALA, and Arm therefore withdraws the pending October 22, 2024 notice of material breach. Arm has no current plan to terminate the Qualcomm ALA until the legal process resolves the parties' disputes over the Qualcomm ALA. Arm also conditionally accepts Qualcomm's one-time, five-year year extension under which the Qualcomm ALA will expire in 2033. Pursuant to separate correspondence, Arm intends to provide support for the Nuvia CPUs, including support and verification services, while the related legal challenges remain outstanding.

Arm's prior correspondence and relevant court filings in the Delaware litigation reflect Arm's legal position regarding the scope of the Qualcomm ALA and the required actions that Nuvia acting in concert with Qualcomm must take in light of the termination of the Nuvia ALA on March 1, 2022. Arm's future legal filing will reflect its legal position regarding the non-final verdict, a new trial and judgment in the legal case. Arm reserves all rights and none of Arm's conduct, support and verification reflects a waiver of Arm's present or future rights or claims.

1/8/2025 Arm Ltr. to Qualcomm. Qualcomm and Arm exchanged further correspondence on January 22 and 30. 1/22/2025 Qualcomm Ltr. to Arm; 1/30/2025 Arm Ltr. to Qualcomm.

### Arm and Qualcomm's Press Briefing Regarding Qualcomm's Breach of the Qualcomm ALA

On October 22, 2024 Paul Kranhold, who is a partner at FGS Global, and Kenneth Siegel, who is a director of SoftBank Group Corporation Ltd and a partner at Morrison & Foerster LLP,

discussed Arm's October 22 Notice with Ian King at Bloomberg, who reported on the Notice and upcoming trial on October 22. Individuals knowledgeable about Arm's decision to discuss the Notice with Bloomberg are Paul Kranhold and Kenneth Siegel. On October 22 & 23, multiple news outlets reported that Qualcomm released a statement in response to the Bloomberg article. On October 22 or 23, Qualcomm released a statement to the media regarding Arm's October 22 Notice. On October 23, Arm released a statement to the media in response to Qualcomm's statement. On October 24, Phil Hughes of Arm confirmed for Ian King at Bloomberg that Arm had sent the letter to Qualcomm. Arm did not send its October 22 Notice to any third-party companies or customers.

Following the publication of an article by Ian King on October 22, 2024, a statement by Arm regarding the October 22, 2024 letter was provided to the following persons: Stephen Nellis (Reuters), Gavin Bonshor (The Register), Mark Hachman (PC World), Ina Fried (Axios), Kosuke Shimizu (Nikkei), Ryan Browne (CNBC), David Lumb (CNET), Hadlee Simmons (Android Authority), Adam Clark (Barrons), Tae Kim (Barrons), Benjamin Woodecki (Capacity Media), Wayne Ma (The Information), Kaustubh Bagalkote (Benzinga), Adrienne Valdez (MT Newswires), Chris Thomas (Android Police), James Sanders (TechInsights), Seema Mody (CNBC), Tom McKay (IT Brew/Morning Brew), and Fudo Abazovic (Fudzilla).

On November 6, 2024 Qualcomm publicly described Arm's October 22 Notice in its Annual Report to investors:

> On October 22, 2024, Arm provided us with a notice alleging that we have breached the Qualcomm ALA by marketing products that contain CPUs that Arm alleges use designs, technology and code created by Nuvia employees prior to our acquisition of Nuvia; by seeking support and verification from Arm for additional products that use such alleged designs, technology and code; and by suing Arm for breach of the Qualcomm ALA. Arm's notice asserts that it will have the right to terminate the Qualcomm ALA if such alleged breaches are not cured within 60 days of such notice.

Qualcomm 10-K Annual Report (November 6, 2024).

On December 16, 2024 Qualcomm filed a public version of its First Amended Complaint in this case in which it publicly described Arm's October 22, 2024 notice of material breach, stating that "Arm sent Qualcomm a notice of material breach purporting to have the right to terminate Qualcomm's own license," described the contents of the letter, and publicly filed a redacted copy of the notice of material breach. A redacted copy of Arm's October 22, 2024 notice of material breach was and remains accessible to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146. D.I. 39 at 2, 8-9, 32-35; D.I. 39-1.

On January 22, 2025, Qualcomm wrote to Arm and stated that the parties' correspondence on this issue was not confidential, and that Qualcomm was "required by law" to publicly disclose the correspondence in its filings with the U.S. Securities & Exchange Commission, and that "in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice":

> "Even if that [January 8, 2025] letter [withdrawing the October 22, 2024 notice of material breach] were itself 'Confidential'—and it is not—Qualcomm is nevertheless required by law to disclose the fact that Arm has withdrawn that notice and indicated that it has no current plan to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. For instance, in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice and Arm's threats to terminate the Qualcomm ALA. Qualcomm intends to update those disclosures in light of Arm's withdrawal of that notice and statement that it does not currently intend to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. We presume you have no objection to this legally required update."

1/22/2025 Qualcomm Ltr. to Arm.

On February 5, 2025 Qualcomm publicly described Arm's January 8, 2025 letter in its Quarterly Report:

> On January 8, 2025, Arm notified us that it was withdrawing its October 22, 2024 notice of breach and indicated that it has no current plan to terminate the Qualcomm ALA, while reserving its rights pending the outcome of the ongoing litigation.

**A0188**
22

Qualcomm 10-Q Quarterly Report (February 5, 2025). Christiano Amon also publicly described Arm's communication in its public investor conference call on February 5, 2025.

<u>**Qualcomm Recognized That Arm's October 22, 2024<br>Notice Of Material Breach "Is Actually Not New News"**</u>

In *Arm v. Qualcomm*, the Court held a pre-trial conference on November 20, 2024. During that conference, Qualcomm's counsel stated that Arm's claim that Qualcomm is in breach of the Qualcomm ALA has been in the case "starting at the very beginning," Nov. 11, 2024 Hearing Tr. at 13:10-16, and that "[t]he letter on October 22nd is actually not new news in the sense of alleging these breaches":

> "And in response to that, there have been repeated allegations that the Qualcomm ALA has been breached by Qualcomm. The letter on October 22nd is actually not new news in the sense of alleging these breaches. It has been in the case squarely and we anticipate that it is going to be raised by ARM in response to the arguments that we have regarding the fact that our products are licensed."

*Id.* at 14:18-24. Qualcomm's counsel stated earlier in that same hearing that "with respect to Qualcomm's alleged breach under the Qualcomm ALA, Arm itself has put that in the case starting at the very beginning" and that "[w]hen you go to their answer at DI 21, they say … [Qualcomm is] also materially breaching its ALA with Arm." *Id.* at 13:10-16. Qualcomm candidly admitted "as early as November 15, 2022, in DI 21, … they say Qualcomm is materially breaching its own ALA and giving ARM the right to terminate that agreement." *Id.* at 13:23-14:12. Qualcomm also acknowledged "there is at least five or six references" to this same assertion that Arm has the right to terminate the Qualcomm ALA "throughout [Arm's] pleading" in November 2022. *Id.*

As discovery is ongoing, Arm reserves the right to supplement, amend, or modify its response to this Interrogatory, and reserves the right to rely upon any evidence subsequently discovered or which may otherwise come to light during discovery.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further incorporates by reference the testimony of the following witnesses: Will Abbey, Kenneth Siegel, and Spencer Collins.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 3:**

Describe, in detail, all facts and circumstances, including the status, of any development or plans to develop v10 of the Arm ISA and any licensing thereof. Your response should include (i) an identification of any features included in v10 of the Arm ISA that were not included in v9 of the Arm ISA and a description of the incremental value, if any, of each feature, (ii) the date(s) on which Arm began discussing development of v10 and any projected timelines for its development or release, (iii) the identity of any partners who have requested a license to v10 and (iv) the terms and conditions of any license proposal from Arm (v) a list of all Persons affiliated with Arm involved in such communications or negotiations, (vi) a list of the Persons affiliated with Arm with the most knowledge of the development or licensing of v10 of the Arm ISA, and (vii) an identification of all documents (by Bates number) that support your response.

**RESPONSES TO INTERROGATORY NO. 3 (MARCH 24, 2025):**

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case. Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.

**A0190**
24

Subject to and without wavier of its general and specific objections, Arm responds as follows: Subject to its objections, Arm is willing to meet and confer with Qualcomm as to the relevance and appropriate scope of this Interrogatory, if any.

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP


 /s/ Robert M. Vrana
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

**A0192**

26

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

**A0193**
27

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A0194**

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A0195**

# Exhibit 5

**A0196**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED,<br>a Delaware corporation,<br>QUALCOMM TECHNOLOGIES, INC., a<br>Delaware corporation<br><br>    Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC, f/k/a, ARM LTD.<br>a U.K. corporation<br><br>    Defendant. | C.A. No. 24-490-MN<br><br>██████████████ |

## ARM'S FIRST SUPPLEMENTAL RESPONSE TO
## QUALCOMM'S AMENDED INTERROGATORY NO. 3

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States District Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm")'s Amended Interrogatory No. 3.

## GENERAL OBJECTIONS

Arm incorporates by reference the objections and responses previously served in response to Qualcomm's Amended Interrogatory No. 3.

## SPECIFIC OBJECTIONS AND RESPONSES

**AMENDED INTERROGATORY NO. 3:**

Describe, in detail, all facts and circumstances, including the status, of any development or plans to develop v10 of the Arm ISA and any licensing thereof. Your response should include (i) an identification of any features included in v10 of the Arm ISA that were not included in v9 of

A0197

1

the Arm ISA and a description of the incremental value, if any, of each feature, (ii) the date(s) on which Arm began discussing development of v10 and any projected timelines for its development or release, (iii) the identity of any partners who have requested a license to v10 (iv) the terms and conditions of any license proposal from Arm (v) the date(s) on which Arm entered into negotiations for v10 with these partners (vi) the date(s) on which Arm entered offered any license or entered into any license agreement with these partners (vii) a list of all Persons affiliated with Arm involved in such communications or negotiations, (viii) a list of the Persons affiliated with Arm with the most knowledge of the development or licensing of v10 of the Arm ISA, and (ix) an identification of all documents (by Bates number) that support your response.

**RESPONSE TO AMENDED INTERROGATORY NO. 3 (MAY 12, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information concerning allegations made in Qualcomm's pending Motion for Leave to File a Second Amended Complaint, and because it seeks information regarding "all facts and circumstances," "any license proposals," "all Persons," without limitation. Arm further objects to this Interrogatory as vague and ambiguous, as the term "the date(s) on which Arm entered offered any license or entered into any license agreement" is unclear. Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this Interrogatory as having multiple discrete subparts and therefore multiple interrogatories, and will limit its response to information, if any, regarding "development or plans to develop ███ of the Arm ISA." Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

A0198

2

Subject to and without wavier of its general and specific objections, Arm responds as follows: Arm is willing to meet and confer with Qualcomm as to the relevance and appropriate scope of this Interrogatory, if any.

**FIRST SUPPLEMENTAL RESPONSE TO AMENDED INTERROGATORY NO. 3 (JUNE 18, 2025):**

Arm further objects to this interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding "the incremental value" of "any features included in v10 of the Arm ISA that were not included in v9 of the Arm ISA," "the terms and conditions of any license proposal from Arm," "the identity of any partners who have requested a license to v10," "the date(s) on which Arm entered into negotiations or v10 with these partners," "the date(s) on which Arm entered offered [sic] any license or entered into any license agreement with those partners," without limitation or regard to relevance.  Arm objects to this request to the extent it calls for expert testimony or opinion, which is not yet due and will be served in accordance with the Scheduling Order.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

### Arm's Development of v10 of the Arm ISA

Qualcomm's request for detailed information about the development of v10 to the Arm ISA is premature.  Arm gave a presentation entitled "Architecture update for 2025" in October 2024 that included information about the "█████████████████████████████ ████████ and a preliminary timeline for development.  QCVARM_0851876 at 1876–1881. That presentation similarly included a "summary of other Armv10-A changes" that were being "considered" but remain "highly provisional and subject to partner feedback." *Id.* at 1894–1895. Subsequently, in March 2025, Arm hosted an Arm Development Meeting attended by Arm's

**A0199**

3

partners, including Qualcomm.   ARMQC_02771129 at 1132; *see also* ARMQC_02771151. Preliminary information on v10, Arm's development timeline for v10, and "other changes being considered" was shared with attendees.  ARMQC_02771129 at 1129–1150.

**<u>Arm's Licensing of v10 of the Arm ISA</u>**

On April 24, 2025, Qualcomm sent a letter to Arm requesting "an initial licensing offer for v10, including licensing fees and royalty pricing."  ARMQC_02771128.  According to Qualcomm, "ARM gave a presentation to Qualcomm entitled ARM Architecture Update for 2025" which allegedly "made clear that Armv10-A was on the way in the near future and would build on Armv9-A, which Qualcomm has already licensed." *Id*.

On May 29, 2025, Qualcomm sent another letter to Arm purporting to follow up on its April 24th letter and requesting that Arm "promptly provide an initial licensing offer for v10 that includes licensing fees and royalty pricing."  ARMQC_02771124.

On June 4, 2025, Will Abbey, Arm's Chief Commercial Officer, wrote to Qualcomm regarding its request for a v10 license, stating that Arm is prepared to negotiate in good faith for a v10 license and proposed a business meeting:

> Arm is prepared to negotiate in good faith over the terms of a license to the v10 architecture. As the first step in those negotiations, we propose a meeting between our commercial teams to better understand how Qualcomm intends to use the v10 architecture. That will help Arm put together an appropriately tailored licensing proposal. Please let us know a few dates Qualcomm is available for that meeting, and we will let you know our availability.

ARMQC_02771125.  On June 9, Qualcomm responded, but did not address Mr. Abbey's request for a business meeting.  ARMQC_02771126.

On June 13, 2025, Arm's Executive Vice President and Chief Legal Officer Spencer Collins sent Qualcomm another letter regarding v10:

> On this basis, on June 4, 2025, Will Abbey, Arm's Chief Commercial Officer, proposed in good faith a business meeting regarding Qualcomm's request for a

**A0200**
4

license to Arm's v.10 architecture.  Mr. Abbey's offer to meet remains open and Arm continues to believe that such a meeting would be the most efficient path forward in response to Qualcomm's request.  Please have the relevant business personnel respond to Mr. Abbey with dates that Qualcomm is available for such a meeting.

* * *

Despite these clear limits on Qualcomm's election rights under the ALA, as we told Qualcomm in 2020, nothing prevents Arm and Qualcomm from discussing a potential license to future versions of the Arm architecture as they become available.  Arm remains prepared to negotiate in good faith over the terms of a license to the v.10 architecture.

ARMQC_02771127.

Arm also incorporates by reference its responses to Interrogatory Nos. 4 and 10.

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Martin Weidmann.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**SECOND SUPPLEMENTAL RESPONSE TO AMENDED INTERROGATORY NO. 3 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm further incorporates by reference the testimony of the following witnesses: Lynn Couillard, Martin Weidmann, Richard Grisenthwaite, Gerard Williams, Spencer Collins, Andrew Howard, Michael Williams, Will Abbey, Mark Dragicevich, Jannik Nelson, Jeffrey Fonseca, Ehab Youssef, Rene Haas, and Karthik Shivashankar, including the documents used at each of those depositions.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**A0201**

5

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Matthew J. McIntee
Meredith Pohl
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
matt.mcintee@kirkland.com
meredith.pohl@kirkland.com

Jay Emerick
Adam Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
adam.janes@kirkland.com

Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP


 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

**A0202**
6

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

**A0203**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A0204**

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A0205**

# Exhibit 6

**A0206**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC.,
  a Delaware corporation,

        Plaintiffs,

    v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
  a U.K. corporation,

        Defendant.

C.A. No. 24-490 (MN)

███████████████████

## ARM'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S SECOND SET OF INTERROGATORIES (NOS. 4-11)

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States District Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm")'s Second Set of Interrogatories (Nos. 4-11).

## GENERAL OBJECTIONS

Arm makes the following general objections, which are hereby incorporated by reference and made part of its response to each and every Interrogatory.

1.      Arm objects to each Interrogatory to the extent it purports to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

2.      Arm objects to the "Instructions" and "Definitions" sections to the extent they purport to alter the plain meaning and/or scope of any specific Interrogatory, on the ground that such alteration renders the Interrogatory vague, ambiguous, overly broad, and/or uncertain, by

A0207

███████

failing to adequately define terms or by using terms the meaning of which are not readily available or decipherable. Arm's responses to such Interrogatories shall not be construed as an admission, agreement, or acquiescence to any such instruction or definition. Arm further objects to the "Instructions" and "Definitions" sections to the extent they purport to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

3.    Arm objects to the definitions of "Defendant," "Arm," "you," and "your" as overly broad and unduly burdensome to the extent they purport to require Arm to provide information that is not within the possession, custody, or control of Arm Holdings PLC, or to otherwise respond on behalf of third parties, at least because these definitions include entities that have no relation to the present litigation.

4.    Arm objects to the definitions of "ALA" and "TLA" as overbroad and vague and ambiguous to the extent they define Architecture License Agreement and Technology License Agreement to include "all amendments and annexes to any such agreement."

5.    Arm objects to the definition of " ███████████ " as overbroad and vague and ambiguous to the extent it defines the term by reference to the definition of that term in "█████ of the Qualcomm ALA, ████████ of the Qualcomm v8-A ALA Annex, or ███████ of the Qualcomm v9-A ALA Annex."

6.    Arm objects to the definition of "ACK" as overbroad and vague and ambiguous to the extent it defines the term as meaning "Arm's Architecture Compliance Kit or Arm's Architecture Validation Suite or Arm's Architecture Compliance Suite."

7.    Arm objects to each Interrogatory, including the instructions and definitions that Qualcomm purports to incorporate therein, to the extent that each Interrogatory is overbroad,

A0208

unduly burdensome, not limited to a reasonable time frame, vague and ambiguous, irrelevant, and/or not reasonably calculated to lead to the discovery of admissible evidence.

8.      Arm objects to each Interrogatory to the extent it seeks information, documents, and/or things that are protected from disclosure by the attorney-client privilege, work-product doctrine, common-interest privilege, and/or any other applicable privilege, immunity, or protection (collectively, "privileged information").   Nothing contained in these responses should be considered a waiver of any attorney-client privilege, work-product protection, or any other applicable privilege or doctrine.   Arm does not intend to produce information or documents that would divulge any privileged information.   Any such disclosure is inadvertent and shall not be deemed a waiver of any applicable privilege or immunity.

9.      Arm objects to any factual characterizations in Qualcomm's Interrogatories.   By responding, Arm does not accept or admit any of Qualcomm's factual characterizations.

10.      Arm objects to each Interrogatory to the extent it seeks "all" or "any" facts, documents, witness identifications, or things as overbroad and unduly burdensome.

11.      Arm's discovery and investigation in connection with this case is ongoing.   Arm's responses to these Interrogatories are based on its knowledge to date following a reasonable investigation.   As a result, Arm's responses are provided without waiver of Arm's right to: (a) object to other interrogatories directed to the subject matter of these Interrogatories and responses; (b) make additional or supplementary objections to these Interrogatories; or (c) revise, amend, supplement, or clarify the contents of these responses.

Subject to and without wavier of these General Objections and the more specific objections set forth below, Arm responds as follows:

A0209

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 4:

Describe, in detail, Arm's reason(s), explanation, or justification for failing to respond to Qualcomm's May 2020 election under ██████████████████████ to extend the initial term of the ALA. Your response should include (1) the names of any individuals involved in the decision not to respond to Qualcomm's election, (2) a description of any discussions regarding whether to respond to Qualcomm's election, including any discussions that occurred in subsequent years, (3) any factual or legal bases that Arm relied on in deciding not to respond to Qualcomm's election, and (4) an identification of any relevant documents by Bates number.

### RESPONSE TO INTERROGATORY NO. 4 (JUNE 16, 2025):

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks information regarding "the names of any individuals," "any discussions," "any factual or legal bases," and "any relevant documents," without limitation.  Arm objects to this Interrogatory as vague and ambiguous and as mischaracterizing, as the terms "Qualcomm's May 2020 election under ████████████ ██████████" and "the decision not to respond to Qualcomm's election" are unclear and inaccurate. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.  Arm objects to this Interrogatory to the extent it calls for a legal conclusion.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

### Arm Responded To Qualcomm's Purported Election Under ████████████ In May 2020

Arm responded to Qualcomm's purported election under ████████████ of the Qualcomm ALA in May 2020.

A0210

In response to outreach from Brett Bettesworth from Qualcomm to Lynn Couillard at Arm in April and May 2020, Lynn Couillard sent several responses to Qualcomm in response to its request for an extension of the ALA under ▇▇▇▇▇▇ including on May 15, 2020 when she responded stating that "[t]he intent of ▇▇▇▇▇▇ is to allow for an extension of the agreement as of this point in the term of the agreement. If there is not desire from Qualcomm to negotiate terms of an extension at this point, but rather to have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire" and that "there is nothing that stops us from discussing next gen architecture or entering into an agreement anytime in the future regardless of the existing agreement":

> **From:** Lynn Couillard <Lynn.Couillard@arm.com>
> **Sent:** Friday, May 15, 2020 9:49 AM
> **To:** Brett Bettesworth <betteswb@qti.qualcomm.com>; Rajiv Gupta <grajiv@qti.qualcomm.com>
> **Cc:** Todd Lepinski <Todd.Lepinski@arm.com>
> **Subject:** [EXT] Re: V10 -->V9 architecture follow-on
>
> Hello Brett and Rajiv, (+Todd)
>
> The intent of section ▇▇ is to allow for an extension of the agreement as of this point in term of the agreement. If there is no desire from Qualcomm to negotiate terms of an extension at this point, but rather to have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire. However, importantly, there is nothing that stops us from discussing next gen architecture or entering into an agreement anytime in the future regardless of the existing agreement.
>
> Note that at the time of the v8 architecture closure, we also included ▇▇▇▇ which at the time had no definition, and eventually became v9. We are in a similar situation here with regards to visibility on next generation architecture.
>
> Please let us know if you'd like to discuss, we can set something up for next week.
>
> Thanks
> Lynn

ARM_00005340. Mr. Bettesworth responded five days later. He did not dispute any of Ms. Couillard's statements, including that "[t]he intent of ▇▇▇▇▇▇ is to allow for an ***extension*** of the agreement ***as of this point in term of the agreement***," and that if Qualcomm desires to "have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire." He elected to "go ahead and move forward with the extension":

**A0211**

From:     Brett Bettesworth [betteswb@qti.qualcomm.com]
Sent:     20/05/2020 20:05:11
To:       Lynn Couillard [Lynn.Couillard@arm.com]; grajiv@qti.qualcomm.com
CC:       Todd Lepinski [Todd.Lepinski@arm.com]
Subject:  RE: V10 -->V9 architecture follow-on

Importance:   High

Hi Lynn,

Thanks for your email and the note below.  We will go ahead and move forward with the extension at this point, per the ALA optional election.

██████████████████████████████████████████████████████████████

We can discuss further at some point in the near future, but wanted to ensure that we provided timely notification of our election here, as mentioned previously.

Sincerely,
Brett

*Id.*  Mr. Bettesworth's email also did not seek a response, and ended by stating that "[w]e can discuss further at some point in the near future …."  However, Mr. Bettesworth does not appear to have sent a follow-up email to arrange such discussions.  Qualcomm also failed to send any follow-up about v10 to Arm, including any formal correspondence in compliance with the ALA's notice provisions, for nearly five years.  Qualcomm further failed to send any notice of breach of the ALA to Arm for allegedly breaching ████████████.

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Lynn Couillard.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies

A0212

the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: QCVARM_1120481, ARM_00079223.

Arm further incorporates by reference the testimony of the following witnesses: Lynn Couillard, Martin Weidmann, Gerard Williams, Spencer Collins, Michael Williams, William Abbey, Mark Dragicevich, Ziad Asghar, and Karthik Shivashankar, including the documents used at each of those depositions. Arm also incorporates by reference its responses to Interrogatory Nos. 3 and 10.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 5 (JUNE 16, 2025):**

Identify with specificity all ACK patches and OOBs developed or provided by Arm between July 2022 and February 2025 and their respective release schedule(s). Your response should identify (1) the names of each partner who received an ACK patch or OOB, (2) the dates that each ACK patch and OOB was requested and by whom, (3) the date that each ACK patch and OOB was provided and to which partner, (4) information regarding whether any ACK patches and OOB were withheld from any partners during this time period, (5) the names of all Arm individuals with relevant knowledge, and (6) identify any relevant documents by Bates number.

**RESPONSE TO INTERROGATORY NO. 5:**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding "all ACK patches and OOBs developed or provided by Arm between July 2022 and February 2025," "each partner," information about "each ACK patch and OOB," and "all Arm individuals," without limitation. Arm further objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case because it seeks detailed information regarding Arm's development and provision of partner-specific OOBs and ACK patches for partners other than Qualcomm. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by

A0213

the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm incorporates its response to Qualcomm's Interrogatory Number 1.

### Arm Provides The Content Of ACK Patches To All Partners, Including Qualcomm As Part Of Its Quarterly ACK Release

ACK patches are not ███████████████ under the Qualcomm ALA, including because they are not architecture technology identified in the v8 Annex 1 or the v9 Annex 1 to the Qualcomm ALA, nor are they ███████████ thereto. An ACK patch is a partner-specific solution to a partner-specific ACK test issue, and when that solution is relevant to all ALA licensees, Arm typically incorporates the solution into its next quarterly ACK release, which is made available to all ALA partners, including Qualcomm.

Arm provided Qualcomm with the full suite of ACK tests for both the Arm v8 and Arm v9 architectures—the ARMv8-A Architecture Valid Suite Kit (AVS) and the Armv9-A Architecture Compliance Kit. *See, e.g.,* ARMQC_02604619 (spreadsheet showing Qualcomm downloaded certain Arm materials, including the Arm v8 ACK / AVS (███████████) and the Arm v9 ACK / ACS (███████████)); ARMQC_02604613 (spreadsheet showing when Qualcomm downloaded certain Arm materials, including Part Nos. ██████ (associated with the Arm v8 ACK / AVS) and ██████ (Arm v9 ACK)); ARMQC_02604617 (spreadsheet showing Arm deliveries of ██████ materials to Qualcomm between 2022 and 2024); ARMQC_02603587 (spreadsheet showing Arm making Product Nos. ███████████ available to Qualcomm between

05/11/2007 and 01/08/2025); *see also* ARMQC_02604612 (spreadsheet showing Arm made "New Arm Product Updates Available" to Qualcomm between 10/31/2022 and 01/29/2025); ARMQC_02604614 (spreadsheet showing Arm made "New Arm Products Available" to Qualcomm between 09/22/2022 and 03/27/2025); ARMQC_02604609 (document showing Arm materials made available to Qualcomm between 07/15/2010 and 06/24/2022); ARMQC_02604615 (spreadsheet showing Arm materials that Qualcomm downloaded, including "OOB" and "ACK patch[es]"). Arm therefore did not withhold any ACK tests from Qualcomm.

Arm provided all of its ALA partners, including Qualcomm, with quarterly ACK releases that incorporated ACK-patch solutions to ACK test issues relevant to all ALA partners. *See, e.g.,* ARMQC_02747093 (document showing Arm providing quarterly v8 ACK releases to Qualcomm between 2021 and 2025); ARMQC_02747097 (document showing Arm providing quarterly v9 ACK releases to Qualcomm between 2021 and 2025); ARMQC_02747103 (document showing Qualcomm downloading Armv8 materials, including quarterly "Update[s]_for_ACK," between 2022 and 2024); ARMQC_02747104 (document showing Qualcomm downloading Armv9 materials, including "Update[s]_for_ACK" and "V9A_ACK_Release_Update[s]" between 2022 and 2025); ARMQC_02604611 (document showing Arm delivering quarterly Armv8 ACK releases to Qualcomm between 04/04/2011 and 07/28/2022); ARMQC_02604616 (document showing Arm delivering quarterly Armv9 ACK releases to Qualcomm between 05/27/2019 and 07/28/2022).

### OOBs Are Partner and Design-Specific, And OOBs Provided To Third Parties Are Not Relevant To Qualcomm

OOBs are not ███████████████████████████ under the Qualcomm ALA, including because they are not architecture technology identified in the v8 Annex 1 or the v9 Annex 1 to the Qualcomm ALA, nor are they ██████████████ thereto. OOBs identify which of the previously delivered ACK tests a partner should run and are based on the configuration of the

A0215

partner's design implementation.  Because OOBs are not just partner-specific, but implementation-specific, any OOB that Arm may have provided to a third-party ALA partner is not relevant to Qualcomm.  *See* Agrawal Dep. Tr. at 29:1–21 ("███████████████████████████████████").  Further, as explained in Arm's response to Qualcomm Interrogatory No. 1, by July 2022, Arm had already given Qualcomm several OOB packages, including for use with Nuvia-based designs. *See* Arm Resp. to Qualcomm Interrog. No. 1.

Further, though Qualcomm is not entitled to any ACK patches or OOB for Nuvia-based designs, Arm made clear in its January 8, 2025 letter to Qualcomm that "Arm intends to provide support for the Nuvia CPUs, including support and verification services" pending certain litigation between the parties.  QCVARM_0573677.

Arm identifies the following individual as knowledgeable regarding aspects of this subject matter: Vivek Agrawal.

Pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived:  ARMQC_02603587,  ARMQC_02604609,  ARMQC_02604610,  ARMQC_02604611, ARMQC_02604612,  ARMQC_02604613,  ARMQC_02604614,  ARMQC_02604615, ARMQC_02604616,  ARMQC_02604617,  ARMQC_02604618,  ARMQC_02604619, ARMQC_02747093, ARMQC_02747097, ARMQC_02747103, and ARMQC_02747104.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm provided all of its ALA partners, including Qualcomm, with quarterly ACK releases

that incorporated ACK-patch solutions to ACK test issues relevant to all ALA partners.  *See, e.g.,* ARMQC_02604611 (document showing Arm delivering quarterly Armv8 ACK releases to Qualcomm between 04/04/2011 and 07/28/2022); ARMQC_02604616 (document showing Arm delivering quarterly Armv9 ACK releases to Qualcomm between 05/27/2019 and 07/28/2022); ARMQC_02779171 (document showing Arm delivering Product Code ███ from 08/20/2021 to 05/26/2025), ARMQC_02779174 (document showing Arm delivering Product Code ███ from 08/20/2021 to 05/22/2025), ARMQC_02779176 (document showing Arm delivering Product Code ███ from 08/20/2021 to 05/26/2025), ARMQC_02779179 (document showing Arm delivering Product Code ███ from 09/08/2021 to 05/20/2025), ARMQC_02779181 (document showing Arm delivering Product Code ███ from 09/08/2021 to 04/29/2025).

Arm also provided Qualcomm with Qualcomm-specific support materials.  *See, e.g.,* ARMQC_02747093 (document showing Arm providing Qualcomm-specific support materials); ARMQC_02747097 (document showing Arm providing Qualcomm-specific support materials); ARMQC_02747103 (document showing Qualcomm downloading Qualcomm-specific support materials); ARMQC_02747104 (document showing Qualcomm downloading Qualcomm-specific support materials).

Arm further incorporates by reference Arm's objections and responses to Qualcomm Interrogatory Nos. 1 and 10.

Arm further incorporates by reference the testimony of all witnesses that have been deposed in this case to date, including those specifically referenced herein, as well as the testimony of all witnesses deposed in *Arm v. Qualcomm*, Case No. 1:22-cv-01146 (D. Del.), and the exhibits used during those depositions.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this

Interrogatory may be derived: ARMQC_02779171, ARMQC_02779174, ARMQC_02779176, ARMQC_02779179, ARMQC_02779181; ARMQC_02603587, ARMQC_02604609, ARMQC_02604610, ARMQC_02604611, ARMQC_02604612, ARMQC_02604613, ARMQC_02604614, ARMQC_02604615, ARMQC_02604616, ARMQC_02604617, ARMQC_02604618, ARMQC_02604619, ARMQC_026046020, ARMQC_02604621, ARMQC_02604622, ARMQC_02604623, ARMQC_02747093, ARMQC_02747097, ARMQC_02747103, ARMQC_02747104.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 6:**

Describe in detail and provide a list of licensing terms that Arm has offered since 2019 for CortexA720 codenamed " █████ " Cortex-A520 codenamed █████ ," Cortex M55 codenamed █████ " Cortex-X925 codenamed █████ ," the CPU codenamed " ████ ," Cortex-A720AE codenamed █████ ", Cortex-A730 codenamed " ████ ", and Cortex-A725 codenamed █████ ". Your response should identify (1) the names of each partner and which licensing offer(s) the partner received, (2) the date of each offer to each specific partner, (3) the licensing fee offered for each of the identified products, by partner (4) the royalty rate offered for each of the identified products, by partner (5) the licensing term offered for each of the identified products, by partner (6) any support and maintenance terms offered for each of the identified products, by partner (7) any restrictions imposed on engineering development efforts for each of the identified products, by partner (8) the names of all Arm individuals with relevant knowledge, and (9) all relevant documents identified by Bates number.

**RESPONSE TO INTERROGATORY NO. 6 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks information regarding "each partner," "each offer," "each of the identified products," without limitation. Arm further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information regarding cores for which Qualcomm does not allege breach in

A0218

its Second Amended Complaint, including "Cortex-X925," "█████," "the CPU codenamed "████," "Cortex-A720AE codenamed "██████," "Cortex-A730 codenamed "███," and "Cortex-A725 codenamed "██████." Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this Interrogatory as vague and ambiguous, as the term "restrictions" is unclear. Arm further objects to this Interrogatory as having multiple discrete subparts and therefore multiple interrogatories. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows: Arm is willing to meet and confer with Qualcomm regarding a reasonable scope for this interrogatory.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Arm further objects to this Interrogatory as vague and ambiguous, as the term "offered" is unclear. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARM_01424135, ARMQC_02779314, ARMQC_02772366, ARMQC_02779433, ARMQC_02779391, ARMQC_02779269, ARMQC_02779412;

A0219

ARMQC_02779364, ARMQC_02779483, ARMQC_02783533, ARMQC_02783601, ARMQC_02783599, ARMQC_02783597, ARMQC_02783603, ARMQC_02783595, ARMQC_02783512, ARMQC_02783575, ARMQC_02774738, ARMQC_02774748, ARMQC_02774757, ARMQC_02774767, ARMQC_02774814, ARMQC_02774818, ARMQC_02774844, ARMQC_02774816.

Arm further incorporates by reference the testimony of the following witnesses: Karthik Shivashankar, Ehab Youssef, Akshay Bhatnagar, Jeff Fonseca, and Kurt Wolf, including the documents used at each of those depositions..

Arm further incorporates by reference any documents withheld on the basis of third-party confidentiality disputes, including due to an objection or motion for a Protective Order filed by any such third parties. Arm reserves the right to supplement this response to address such documents as appropriate should any such disputes be resolved and result in the production of any documents to Qualcomm.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

## INTERROGATORY NO. 7:

Describe, in detail, Arm's business strategy with respect to gaining a competitive advantage against other companies, including Qualcomm. Your response should include (1) any strategy related to unwinding or limiting ALAs, (2) any strategy related to increasing licensing prices for products offered under any license, (3) any strategy related to development of silicon, (4) any strategy related to acquiring other companies, (5) any strategy related to increasing pricing or limiting access to v10 or future versions of the Arm ISA, (6) the names of all Arm individuals with relevant knowledge, and (7) all relevant documents identified by Bates number.

## RESPONSE TO INTERROGATORY NO. 7 (JUNE 16, 2025):

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding "any

strategy" and "all Arm individuals," without limitation. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this Interrogatory as vague and ambiguous, as the terms "Arm's business strategy with respect to gaining a competitive advantage," "unwinding or limiting ALAs," "development of silicon," and "increasing pricing or limiting access to v10 or future versions of the Arm ISA" are unclear. Arm objects to Qualcomm's characterization of its business strategy. Arm further objects to this Interrogatory as having multiple discrete subparts and therefore multiple interrogatories Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows: Arm is willing to meet and confer with Qualcomm regarding a reasonable scope for this interrogatory, if any.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence, including information regarding Arm's "strategy related to acquiring other companies." Specifically, this portion of the Interrogatory is not relevant to any of Qualcomm's claims in its Second Amended Complaint, including Qualcomm's California Unfair Competition Law ("UCL") claim. *See Bacon v. Carroll,*

2007 WL 2111057, at *7 (D. Del. July 17, 2007) (finding interrogatories related to defendant's grievances "are not relevant or likely to lead to admissible evidence" and plaintiff "cannot point to any use for the material that would support" the claims). Arm is willing to meet and confer with Qualcomm as to the relevance and appropriate scope of this portion of the Interrogatory, if any.

Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence, including information regarding "Arm's business strategy with respect to gaining a competitive advantage against other companies." Specifically, this portion of the Interrogatory is not relevant to any of Qualcomm's claims in its Second Amended Complaint, including Qualcomm's UCL claim. There is no support for the proposition that a business strategy to "gain[] a competitive advantage against other companies," without more, is unfair or unlawful conduct under the UCL. Such conduct is instead generally pro-competitive. *See FTC v. Qualcomm*, 969 F.3d 974, 1003, 1005 (9th Cir. 2020) (finding Qualcomm's "hypercompetitive" behavior to be "disruptive" but "in a manner that [is] beneficial to consumers in the long run"). Indeed, where business practices are "reasonable and consistent with current industry practice" and "reduc[e] 'transaction costs and complexities,'" courts routinely find such conduct does not violate the UCL. *E.g.*, Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 47–48 (Apr. 26, 2024) (citing *FTC v. Qualcomm*, 969 F.3d 974, 996 n.17, 996 (9th Cir. 2020)).

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm's business has always been customer centric. Its mission is to innovate and develop products to meet customer needs and market demand. Arm continues to pursue this mission by developing both its instruction set architecture ("ISA") and its implementation cores in close collaboration with its partners, including Qualcomm. This enables Arm's partners to compete

**A0222**

across the semiconductor technology stack, which in turn brings more choice to the market. Accordingly, Arm's business strategy is aimed at investing in productive relationships with its partners to meet these pro-competitive goals.

Arm's open licensing model enables many companies to design chips, fostering a competitive ecosystem. Specifically, Arm has enabled its partners to build custom central processing units ("CPUs") by licensing its ISA to them through Architecture Licensing Agreements ("ALAs"). Doing so increases the number of CPUs available on the market, including CPUs that compete with Arm-designed CPUs, which Arm also makes available for license through Technology Licensing Agreements ("TLAs"). Given the extraordinary amount of time and resources required to successfully develop CPUs and the attendant high rate of failure, Arm carefully chooses its ALA partners to ensure the greatest likelihood of success. Even the top semiconductor companies with the greatest resources are often unable to successfully develop custom CPUs under their ALAs. For example, Qualcomm—one of the world's largest and most profitable semiconductor companies—sought to develop a custom core for the server market but ultimately abandoned the effort due to high costs. *See* Deposition of James Thompson, November 11, 2023, pp. 53–56. Indeed, Arm's royalty payment model aligns its interests with those of its partners—meaning Arm succeeds when its partners do—and incentivizes its partners to make their intellectual property available as broadly as possible. Arm's ALA licensing practices are thus pro-competitive and driven by rational business decisions.

In addition to major players like Qualcomm, Arm has also entered ALAs with promising start-up technology design companies to foster innovation and meet customer needs. For example, in 2019, Arm negotiated an ALA with NUVIA Inc. ("Nuvia"), a start-up that designed chips for data centers. Arm agreed to accept a lower-than-average upfront fee for the ALA to help sponsor Nuvia's entry into the market. In return for Arm's agreement to share Nuvia's risk on the front-

A0223

end, Nuvia agreed to grant Arm higher royalties if it successfully developed a CPU. This deal typified Arm's customer centric, pro-competitive approach to its partners: investment and support.

Although Arm executes ALAs with partners who have the means and desire to invest in developing their own customized CPUs, history and experience has demonstrated that those partners are not always capable of optimizing Arm's architecture during CPU development and are unlikely to yield CPUs that are materially superior to Arm's product, despite enormous investments of resources and time. Many partners thus license Arm's market-leading, ready-to-use implementation cores through TLAs rather than embarking on the high-risk, low-reward proposition of CPU development. TLAs enable Arm's partners to outsource their costly CPU research and development needs to Arm, which reduces their development burdens and risks, speeds up their time-to-market, and frees up resources for investment in innovation and differentiating themselves in other areas. Because TLAs offer a far more efficient, practical, and effective arrangement in almost every circumstance, the vast majority of Arm's licenses are TLAs and historically most of Arm's partners have a TLA. *See* ARM_01259705 at 9794; Deposition of Simon Segars, November 16, 2023, pp. 29–30. TLAs, in turn, directly benefit the market and consumers by increasing product quality while decreasing prices.

Arm has further explored offering its own chips to meet innovation needs and customer demand. Arm's potential entrance into the chip market would thus generate more competition, innovation, and consumer choice. Regulators routinely approve, and markets encourage, this type of pro-competitive conduct.

Arm does not have a blanket "strategy" for pricing its IP licenses. Arm instead approaches each license individually and in the context of the specific needs of the partner, market segment, and end-users, resulting in various license structures. As noted, Arm's ALA with Nuvia catered to Nuvia's unique needs as a start-up and sought to increase Nuvia's chances of success by trading off

A0224

lower upfront fees for higher royalty rates. Qualcomm's ALA, by contrast, has considerably lower-than-average royalty rates that reflect, among other factors, Qualcomm's market presence and prominence as one of Arm's largest partners by royalty revenue. To the extent Arm has increased upfront prices or royalty rates for any of its IP, Arm has done so in the normal course of business to account for increased costs, including resources expended on developing updated and innovative products, and reflect the increased value of its updated offerings. Indeed, Arm's conduct is "reasonable and consistent with current industry practice." *See, e.g.*, Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 47–48 (Apr. 26, 2024) (citing *FTC v. Qualcomm*, 969 F.3d 974, 996 n.17, 996 (9th Cir. 2020)).

Arm refers Qualcomm to its Initial Disclosures for "the names of all Arm individuals with" knowledge relevant to this Interrogatory.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARM_01293447, ARMQC_02771129, ARMQC_02771151, QCVARM_0851876, QCVARM_1068459.

Arm further incorporates by reference the testimony of the following witnesses: Rene Haas, William Abbey, Paul Williamson, Richard Grisenthwaite, Karthik Shivashankar, Jannik Nelson, Peter Greenhalgh, Durga Malladi, and Martin Weidmann, including the documents used at each of those depositions.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

## INTERROGATORY NO. 8:

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not interfere, either intentionally or negligently, with Qualcomm's business

opportunities, including but not limited to Qualcomm's business opportunities with the Smartphone Company and the AI and Ecosystem Company identified in the operative Complaint. Your response should include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 8 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding alleged interference with "Qualcomm's business opportunities," without limitation. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this Interrogatory as vague and ambiguous, as the terms "Qualcomm's business opportunities," and "Qualcomm's business opportunities with the Smartphone Company and the AI and Ecosystem Company" are unclear.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

**Arm's October 2024 Letter And Its Publication Did Not Interfere With Qualcomm's Business Opportunities Because Arm Repeatedly And Publicly Stated That Qualcomm Was In Breach Of The Qualcomm ALA As Early As 2022**

Arm's October 2024 letter stating that Qualcomm was in breach of the Qualcomm ALA, and the publication of the same, did not interfere with any of Qualcomm's business relationships because Arm repeatedly and publicly stated that Qualcomm was in breach of the Qualcomm ALA as early as 2022.

On November 15, 2022 Arm filed a publicly-available Answer in *Arm Ltd. v. Qualcomm Inc. et al.*, No. 22-1146 (MN) ("*Arm v. Qualcomm*"), in which Arm publicly stated that "Qualcomm

A0226

is materially breaching its ALA, giving Arm the right to terminate, and the Qualcomm ALA does not provide a license for or right to continue development of the Nuvia technology," that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology, entitling Arm to terminate that ALA based on Qualcomm's material breaches," that "Arm is entitled to terminate Qualcomm's ALA based on Qualcomm's material breaches of the verification, delivery, and support and maintenance provisions," and that:

> "Qualcomm's allegations that it is exercising its rights with respect to the relevant Nuvia technology under Qualcomm's license agreements with Arm and is not in violation of those agreements fail because Arm has no such obligations with respect to the Nuvia technology, and Qualcomm is breaching the Qualcomm ALA by insisting otherwise. Under the Qualcomm ALA, Arm has no obligation to provide, and Qualcomm has no right to seek, verification, delivery, or support and maintenance in connection with technology developed under the now-terminated Nuvia ALA. The 'verification' provisions of ▮▮▮▮ of the Qualcomm ALA are limited to products manufactured [redacted] in the ALA. The delivery (▮▮▮▮▮) and support and maintenance (▮▮▮▮▮) obligations of the Qualcomm ALA are similarly limited to the defined [redacted] and therefore likewise do not extend to the relevant Nuvia technology, which embodies and was derived from Arm technology delivered by Arm to Nuvia under Nuvia's now-terminated ALA. Qualcomm's unreasonable, bad-faith demands that Arm comply with purported obligations for verification, delivery, and support and maintenance with respect to technology delivered and developed outside the scope of the Qualcomm ALA are contrary to the parties' expectations and undermines the benefit to Arm from the Qualcomm ALA, thereby materially breaching that agreement's terms and implied covenant of good faith and fair dealing and entitling Arm to terminate the Qualcomm ALA under ▮▮▮▮▮."

No. 22-1146, D.I. 21 at 2, 37, 39, 41-42.

On April 11, 2024, Arm filed another publicly-available Answer that likewise included allegations that Qualcomm was in breach of its ALA, including that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology," and that "Qualcomm is materially breaching its ALA, giving Arm the right to terminate …." D.I. 322 at 2, 42-45, 48-49. These materials were available to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146.

**Qualcomm Recognized That Arm's October 22, 2024
Notice Of Material Breach "Is Actually Not New News"**

In *Arm v. Qualcomm*, the Court held a pre-trial conference on November 20, 2024. During that conference, Qualcomm's counsel stated that Arm's claim that Qualcomm is in breach of the Qualcomm ALA has been in the case "starting at the very beginning," Nov. 11, 2024 Hearing Tr. at 13:10-16, and that "[t]he letter on October 22nd is actually not new news in the sense of alleging these breaches":

> "And in response to that, there have been repeated allegations that the Qualcomm ALA has been breached by Qualcomm. The letter on October 22nd is actually not new news in the sense of alleging these breaches. It has been in the case squarely and we anticipate that it is going to be raised by ARM in response to the arguments that we have regarding the fact that our products are licensed."

*Id.* at 14:18-24.   Qualcomm's counsel stated earlier in that same hearing that "with respect to Qualcomm's alleged breach under the Qualcomm ALA, Arm itself has put that in the case starting at the very beginning" and that "[w]hen you go to their answer at DI 21, they say … [Qualcomm is] also materially breaching its ALA with Arm." *Id.* at 13:10-16. Qualcomm candidly admitted "as early as November 15, 2022, in DI 21, … they say Qualcomm is materially breaching its own ALA and giving ARM the right to terminate that agreement." *Id.* at 13:23-14:12.   Qualcomm also acknowledged "there is at least five or six references" to this same assertion that Arm has the right to terminate the Qualcomm ALA "throughout [Arm's] pleading" in November 2022. *Id.*

**Arm's Alleged Publication of Arm's October 2024 Letter Did Not
Interfere With Qualcomm's Business Opportunities Because Qualcomm Admits
It Had An Obligation To Publish—And Did Publish—Arm's October 2024 Letter**

On October 22, 2024 Arm sent a notice of material breach ("October 22 Notice") to Qualcomm that echoed its public statements in its November 15, 2022 and April 11, 2024 Answers, including that:

> "The Qualcomm ALA permits Qualcomm to seek support and verification solely for CPU designs created by Qualcomm employees, at a time when they were Qualcomm employees. Qualcomm is only permitted to market an Architecture Compliant Core if Qualcomm has complied in all respects with the requirements of

**A0228**

the Qualcomm ALA and completed the verification procedures provided therein. And Qualcomm is entitled to seek contractual remedies solely for CPU designs that fall within the scope of the ALA. These obligations are reflected in multiple places in the Qualcomm ALA, including but not limited to ███████████████████ ███████████████.

Qualcomm has systematically and willfully breached these obligations, and its breaches have accelerated and expanded in recent months. Specifically, Qualcomm has developed CPUs and marketed multiple products that contain CPUs that use designs, technology, and code created by Nuvia employees at the time when Nuvia was a third party (hereinafter 'Nuvia designs'). Recently, Qualcomm has sought support and verification for additional designs that reuse the Nuvia designs. Qualcomm and Nuvia have willfully refused to discontinue use of the Nuvia designs despite the independent obligations provided by Section 15.1 of the Nuvia ALA upon termination. And Qualcomm initiated and continues to prosecute contractual claims that arise from Qualcomm's improper conduct with respect to these unlicensed cores.

Due to Qualcomm's willful, ongoing, and renewed actions, Qualcomm is in material breach of the Qualcomm ALA."

10/22/2024 Arm Breach Notice to Qualcomm (ARMQC_02749015). No terms or provisions of the Qualcomm ALA were quoted in Arm's notice of material breach. *Id.* Qualcomm responded on October 28, 2024. 10/28/2024 Qualcomm Ltr. to Arm. Qualcomm made a summary of the contents of both notices available to the public on November 6, 2024. Qualcomm 10-K Annual Report (November 6, 2024).

On January 8, 2025, Arm withdrew its October 22 Notice, stating that:

The Qualcomm ALA was the subject of an incomplete jury verdict on December 20 that found in Qualcomm's favor. That verdict is not final and is subject to a variety of legal challenges. Nonetheless, Arm respects and values the jury process and the Court's ongoing role in resolving the parties' disputes. As a result, and while Arm's ongoing legal challenges are pending, Arm will treat the Nuvia CPUs as falling within the scope of the Qualcomm ALA, and Arm therefore withdraws the pending October 22, 2024 notice of material breach. Arm has no current plan to terminate the Qualcomm ALA until the legal process resolves the parties' disputes over the Qualcomm ALA. Arm also conditionally accepts Qualcomm's one-time, five-year year extension under which the Qualcomm ALA will expire in 2033. Pursuant to separate correspondence, Arm intends to provide support for the Nuvia CPUs, including support and verification services, while the related legal challenges remain outstanding.

Arm's prior correspondence and relevant court filings in the Delaware litigation reflect Arm's legal position regarding the scope of the Qualcomm ALA and the required actions that Nuvia acting in concert with Qualcomm must take in light of

A0229

the termination of the Nuvia ALA on March 1, 2022. Arm's future legal filing will reflect its legal position regarding the non-final verdict, a new trial and judgment in the legal case. Arm reserves all rights and none of Arm's conduct, support and verification reflects a waiver of Arm's present or future rights or claims.

1/8/2025 Arm Ltr. to Qualcomm (QCVARM_0847182). Qualcomm and Arm exchanged further correspondence on January 22 and 30. 1/22/2025 Qualcomm Ltr. to Arm (QCVARM_0847182); 1/30/2025 Arm Ltr. to Qualcomm (QCVARM_0847184).

On November 6, 2024 Qualcomm publicly described Arm's October 22 Notice in its Annual Report to investors:

> On October 22, 2024, Arm provided us with a notice alleging that we have breached the Qualcomm ALA by marketing products that contain CPUs that Arm alleges use designs, technology and code created by Nuvia employees prior to our acquisition of Nuvia; by seeking support and verification from Arm for additional products that use such alleged designs, technology and code; and by suing Arm for breach of the Qualcomm ALA. Arm's notice asserts that it will have the right to terminate the Qualcomm ALA if such alleged breaches are not cured within 60 days of such notice.
>
> Qualcomm 10-K Annual Report (November 6, 2024).

On December 16, 2024 Qualcomm filed a public version of its First Amended Complaint in this case in which it publicly described Arm's October 22, 2024 notice of material breach, stating that "Arm sent Qualcomm a notice of material breach purporting to have the right to terminate Qualcomm's own license," described the contents of the letter, and publicly filed a redacted copy of the notice of material breach. A redacted copy of Arm's October 22, 2024 notice of material breach was and remains accessible to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146. D.I. 39 at 2, 8-9, 32-35; D.I. 39-1.

On January 22, 2025, Qualcomm wrote to Arm and stated that the parties' correspondence on this issue was not confidential, and that Qualcomm was "required by law" to publicly disclose the correspondence in its filings with the U.S. Securities & Exchange Commission, and that "in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice":

"Even if that [January 8, 2025] letter [withdrawing the October 22, 2024 notice of material breach] were itself 'Confidential"—and it is not—Qualcomm is nevertheless required by law to disclose the fact that Arm has withdrawn that notice and indicated that it has no current plan to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. For instance, in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice and Arm's threats to terminate the Qualcomm ALA. Qualcomm intends to update those disclosures in light of Arm's withdrawal of that notice and statement that it does not currently intend to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. We presume you have no objection to this legally required update."

1/22/2025 Qualcomm Ltr. to Arm (QCVARM_0847182).

On February 5, 2025 Qualcomm publicly described Arm's January 8, 2025 letter in its

Quarterly Report:

On January 8, 2025, Arm notified us that it was withdrawing its October 22, 2024 notice of breach and indicated that it has no current plan to terminate the Qualcomm ALA, while reserving its rights pending the outcome of the ongoing litigation.

Qualcomm 10-Q Quarterly Report (February 5, 2025). Cristiano Amon also publicly

described Arm's communication in its public investor conference call on February 5, 2025.

### Arm's Actions Did Not Interfere With Any Of Qualcomm's Business Opportunities With ████████

The business opportunities Qualcomm alleges it lost are not due to Arm's actions, and Arm's conduct did not amount to intentional or negligent interference with Qualcomm's business relationships with ████████████████████.

Regarding ████, Qualcomm contends that "[a]fter the Breach Letter was published, [████ delayed finalizing a termsheet for an agreement under which Qualcomm would design that custom chip and requested inclusion of language related to Qualcomm's chip development capabilities. [████] has stated to Qualcomm that before it finalizes that termsheet, it must first understand the implications of termination of the QC ALA on Qualcomm's ability to deliver the custom chips in question." SAC ¶ 159. Qualcomm has failed to identify the termsheet in question let alone any documents relevant to its theory that its business relationship with ████ was harmed by Arm.

A0231

Further, any delay in the finalization of that termsheet is due to factors other than Arm's actions, including Qualcomm's own business practices.

Regarding ███████████████, Qualcomm contends that "[██████] had informed Qualcomm that it was designing a new mobile phone that would rely on Qualcomm's innovative Snapdragon® 8-Elite SoC. After learning that Arm was threatening to terminate the QC ALA, however, a senior executive of [██████] informed a senior Qualcomm executive that the customer's legal and intellectual-property teams would need to confer with their counterparts at Qualcomm. [██████] has also insisted on Qualcomm's providing additional reassurances before it will extend its existing business relationship with Qualcomm." SAC ¶ 158. Qualcomm has failed to identify any lost opportunity with ██████, and any loss of an "exten[sion]" to its relationship with ██████ is due to factors other than Arm's actions, including Qualcomm's own business practices.

**Qualcomm's Claims Are Barred By *Noerr-Pennington* And California's Litigation Privilege**

As a matter of law, Arm's alleged conduct is related to litigation and therefore not actionable. *Noerr-Pennington* immunizes parties from liability "for engaging in conduct (including litigation) aimed at influencing decision making by the government." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 413 (3d Cir. 2016). The *Noerr-Pennington* doctrine protects "conduct incidental to the prosecution of [a] suit," *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934-35 (9th Cir. 2006), including "demand letter[s] or cease-and-desist letter[s]." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015); *Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 655 F. App'x 103, 111 (3d Cir. 2016) ("cease-and-desist letter" "protected under *Noerr-Pennington*"); *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, C.A. No. 07-127-LPS, 2011 WL 678707, at *2 (D. Del. Feb. 18, 2011) (similar).

Courts also apply *Noerr-Pennington* immunity when plaintiffs bring tortious interference

and other claims based on purported communications about litigation to customers.  *See, e.g.,*

*Evanger's Dog & Cat Food Co. v. Env't Democracy Project*, No. CV 21-08489, 2022 WL 180205,

at *1, *4 (C.D. Cal. Jan. 20, 2022) (dismissing claims arising out of letter to plaintiff's customer);

*Fitbit, Inc. v. Laguna 2, LLC*, No. 17-cv-00079- EMC, 2018 WL 306724, at *10 (N.D. Cal. Jan. 5,

2018) (claims based on contacting customers regarding pre-suit demand letter barred by *Noerr-*

*Pennington*).

California's litigation privilege also protects Arm's letter (and the alleged publicizing of

that letter) from Qualcomm's tortious interference claims.  The "litigation privilege is … absolute

in nature," *Silberg v. Anderson*, 50 Cal. 3d 205, 215 (1990), and protects not only statements made

in litigation, but also "out-of-court statements 'to nonparties who have a substantial interest in the

outcome of the pending litigation,'" *Weiland Sliding Doors & Windows, Inc. v. Panda Windows &*

*Doors, LLC*, 814 F. Supp. 2d 1033, 1040-41 (S.D. Cal. Aug. 29, 2011); *see also Cargill v.*

*Progressive Dairy Sols., Inc.*, No. CV-F-07-0349-LJO-SMS, 2008 WL 2235354, at *6 (E.D. Cal.

May 29, 2008) ("news release" "inform[ing] the recipients of the … claims asserted" protected by

the privilege); *Designing Health, Inc. v. Erasmus*, No. CV-98-4758 LGB (CWx), 2001 WL

36239748, at *3-4 (C.D. Cal. Apr. 24, 2001) (similar).  Arm's letter was made during litigation

with Qualcomm regarding Arm's claims.  Such publications are protected under California law.

*Cargill*, 2008 WL 2235354, at *6.

### Qualcomm Has Not Identified Any Independently Wrongful Conduct

To plead intentional interference with prospective economic advantage, Qualcomm must

allege "intentionally wrongful act(s) designed to disrupt the relationship." *See Roy Allan Slurry*

*Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017). This element requires "independently

wrongful" conduct, defined as conduct "proscribed by some constitutional, statutory, regulatory,

common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*,

19 Cal. 4th 1134, 1159 (2003). Even if a plaintiff alleges some sort of interference with economic advantage, courts dismiss intentional interference claims where the plaintiff still does not allege conduct "wrongful by some legal measure," *Golden v. Sound Inpatient Physicians Med. Grp., Inc.,* 93 F. Supp. 3d 1171, 1178 (E.D. Cal. 2015), or that the conduct "violated any other law, which is a necessary element of intentional interference with economic relations," *Republican Nat'l Comm. v. Google LLC,* 2024 WL 3595538, at *1 (E.D. Cal. July 31, 2024).

Qualcomm has already conceded that breach-of-contract does *not* satisfy the independently-wrongful-acts requirement. D.I. 64 at 13; *see Block v. eBay, Inc.,* 2012 WL 1601471, at *5 (N.D. Cal. May 7, 2012). Allegations that Arm leaked the breach letter or made statements to customers, SAC ¶ 192, likewise do not show violations of "other law," particularly where Qualcomm fails to plead UCL claims and where that conduct is protected by *Noerr-Pennington*. Qualcomm's negligent tortious interference claim fails for the same reason: Arm has "failed to allege facts showing that defendants engaged in an act that is wrongful apart from the interference itself." *See TriCoast Builders, Inc. v. Lakeview Loan Servicing, LLC,* 2021 WL 248316, at *5 (Cal. Ct. App. Jan. 26, 2021) (quotations omitted).

### Qualcomm Has Not Established That Arm Owed Any Duties To Qualcomm

With respect to Qualcomm's negligent interference claim, Arm did not owe Qualcomm a duty of care. California law imposes a duty of care via contract only if the contract itself contains that duty. *See, e.g., Golick v. State of California,* 82 Cal. App. 5th 1127, 1150 (2022) (no duty where plaintiffs did not show contract included "duty to protect"); *Jane Doe No. 1 v. Uber Techs., Inc.,* 79 Cal. App. 5th 410, 423 (2022) (no duty where contract did not contain "express promise"). Even "[t]he implied covenant of good faith and fair dealing is a contractual relationship and does not give rise to an independent duty of care." *Ragland v. U.S. Bank,* 209 Cal. App. 4th 182, 206 (2012).

A0234

Qualcomm also cannot establish a duty of care where Qualcomm and Arm are allegedly competitors. Qualcomm repeatedly alleges that Qualcomm and Arm have "competing CPU designs," and that Arm is seeking to "compete … with Qualcomm." SAC ¶¶ 1, 5; *see also id.* ¶¶ 35, 52, 70–74, 160, 165. But "[t]here is no duty of care between competitors under California law." *Singman v. NBA Props., Inc,* 2014 WL 7892049, at *5 (C.D. Cal. Jan. 17, 2014); *Stolz v. Wong Commc'ns Ltd. P'ship,* 25 Cal. App. 4th 1811, 1825 (1994).

### Qualcomm's Claims Are Barred By Unclean Hands

Qualcomm's allegations regarding Arm's interference with Qualcomm's customer relationships is also barred by the equitable doctrine of unclean hands. "One who comes into equity must come with clean hands and keep those hands clean throughout the pendency of the litigation even to the time of ultimate disposition by an appellate court." *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.,* 398 F. Supp. 2d 305, 310 (D. Del. 2005) (quoting *Gaudiosi v. Mellon,* 269 F.2d 873, 881 (3d Cir. 1959)). "The clean hands maxim gives broad discretion to the court's equity power in refusing to aid an unclean hands litigant." *Id.* "Any willful act, which can rightfully be said to transgress equitable standards, is sufficient." *Id.* at 311.

"The equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Kars 4 Kids Inc. v. Am. Can!,* 98 F.4th 436, 449 (3d Cir. 2024) (quoting *Highmark, Inc. v. UPMC Health Plan, Inc.,* 276 F.3d 160, 174 (3d Cir. 2001)). "The misconduct must be rooted in 'fraud, unconscionable conduct, or bad faith ... that injures the other party and affects the balance of equities.'" *Id.* at 450 (quoting *Paramount Aviation Corp. v. Agusta,* 178 F.3d 132, 147 n.12 (3d Cir. 1999)).

Courts have found unclean hands where the plaintiff engaged in the same (inequitable) conduct it accuses a defendant of. *See, e.g., Emco, Inc. v. Obst,* No. CV03-6432-R (RZX), 2004

**A0235**

WL 1737355, at *4–6 (C.D. Cal. May 7, 2004) (in a Lanham Act case where plaintiff accused defendant of falsely advertising that its blades were manufactured in the United States, the court found that defendant had proven its affirmative defense of unclean hands as a matter of law because plaintiff's "Americut" blades—which plaintiff promoted with classic American symbols such as the American flag and Statue of Liberty—were similarly manufactured overseas); *Haagen-Dazs, Inc. v. Frusen Gladje Ltd.*, 493 F. Supp. 73, 75–76 (S.D.N.Y. 1980) (denying plaintiff's motion for a preliminary injunction due to plaintiff's unclean hands in accusing defendant of falsely using Swedish motifs to suggest that its products were not of domestic origin, when plaintiff had done similarly). Qualcomm published Arm's October 2024 letter just days after Arm did. Further, on March 25, 2025, Bloomberg published a story concerning Qualcomm's non-public complaints of anticompetitive behavior at the European Commission, US Federal Trade Commission, and Korea Fair Trade Commission. Josh Sisco & Ian King, *Qualcomm Takes Legal Fight with Arm to Global Antitrust Agencies*, Bloomberg News (Mar. 25, 2025, 3:55 PM CDT), https://www.bloomberg.com/news/articles/2025-03-25/qualcomm-takes-legal-fight-with-arm-to-global-antitrust-agencies. Qualcomm's publication of Arm's letter, and non-public litigation materials to Bloomberg bar its claims against Arm under the doctrine of unclean hands.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8 (June 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further responds that Qualcomm's witness Mr. Cristiano Amon, Qualcomm's President and Chief Executive Officer and corporate designee on harm resulting from Arm's alleged tortious interference (*see, e.g.*, Arm's Fed. R. Civ. P. 30(b)(6) Topic No. 56), testified that

**A0236**

Qualcomm's allegations of harm resulting from the October 22 Notice and Bloomberg article are based on Arm's allegations in the lawsuit. For example, Mr. Amon testified as follows:



Amon Dep. Tr. (Rough) at 161:15-162:19; *see also id.* at 146:13-147:7. Mr. Amon's testimony confirms that Qualcomm's allegations of harm resulting from the October 22 Notice and Bloomberg article relate squarely to the litigation and Arm's litigation-related conduct. Accordingly, Qualcomm's claims for tortious interference are barred by *Noerr-Pennington* and California's Litigation Privilege.

Regarding ▮▮▮, Arm further responds that Qualcomm still has failed to identify any harm to its business relationship with ▮▮▮, let along any harm that was caused by Arm. In particular, the material business terms agreed between Qualcomm and ▮▮▮ were unaffected by the October 22 Notice. For example, Qualcomm's witness Mr. Pavankumar Mulabagal, Qualcomm's corporate designee on Arm's Fed. R. Civ. P. 30(b)(6) Topic Nos. 51 ("All communications between Qualcomm and ▮▮▮, including the timing of such communications, surrounding Qualcomm's

A0237
▮▮▮

contention that Arm intentionally and/or negligently interfered with Qualcomm's relationship with

███ ") and 58 ("The factual basis for Your contention that Arm had knowledge of Your existing

or prospective business relationship with ███ , including when and how Arm first became aware

of the relationship"), testified ████████████████████████

████████████████████████

████████████████████████ . *See,*

*e.g.*, Mulabagal Dep. Tr. at 35:18-36:15.

Nor did the October 22 Notice and Bloomberg article materially delay Qualcomm's

business dealings with ████████████████

████████████████████████

████████████████████████

████████████ *See, e.g., id.* at 49:6-63:4; QCVARM_0864924;

QCVARM_0864933; QCVARM_0864833. ████████████

████████████████████████

████████████████████████

████████████ Mulabagal Dep. Tr. at 47:17-48:15. And,

Mr. Mulabagal testified that ████████████████

████████████████████████

████████████ *Id.* at 88:22-89:15. ████████

████████████████████████

████████ *See, e.g., id.* at 57:5-58:3. The October 22 Notice and Bloomberg article

therefore did not alter Qualcomm's and ███ development timeline.

Arm's dealings with ███ also did not impact Qualcomm's dealings. ████████

████████████████████████

A0238

████████

██████████████████████████████████████████████.” *See id.* at 94:7-98:22. Qualcomm

therefore cannot point to any actionable harm to its business relationship with ████, let alone harm

that was caused by Arm.

Regarding ████████, Arm further responds that Qualcomm still has failed to identify any

harm to its business relationship with ████████ that was caused by Arm. Qualcomm's business

relationship with ████████ had instead become increasingly strained in the years preceding the

October 22 Notice because of Qualcomm's decision to ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████. *See, e.g.*, Amon Dep. Tr.

(Rough) at 264:2-275:25. Predating the October 22 Notice, Mr. Amon ████████████████

████████████████████████████████████████ *See, e.g., id.* at

266:2-8. Any harm to Qualcomm's business relationship with ████████ was Qualcomm's own

doing and unrelated to any actions by Arm.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies

the following documents from which information responsive to the non-objectionable scope of this

Interrogatory may be derived: QCVARM_0865022, QCVARM_0864924, QCVARM_0864933,

QCVARM_0864833, QCVARM_0865420, QCVARM_0865236, QCVARM_0865430,

QCARM_3425702, QCARM_3534037, QCVARM_0856270, QCVARM_0856888,

QCVARM_1069082, QCVARM_1069106, QCARM_3533982, QCARM_7484460,

QCARM_7484463, QCVARM_0467694, QCVARM_1069945, QCVARM_1070005,

QCVARM_1118617, QCARM_7515834, QCVARM_0464076, QCVARM_0464128,

A0239

QCVARM_0464495,    QCVARM_0465604,    QCVARM_0600730,    QCVARM_0601923,

QCVARM_0608314,    QCVARM_1068645,    QCVARM_1118760,    QCVARM_1119347,

QCVARM_0848786.

Arm further incorporates by reference the testimony of the following witnesses: Pavankumar Mulabagal, Cristiano Amon, and Spencer Collins, including the documents used at each of those depositions..

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 9:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that Your conduct as identified in Paragraphs 204-212 of the Second Amended Complaint does not constitute a violation of unfair competition law under the California Unfair Competition Law. Your response should include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 9 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, and unduly burdensome.  Arm objects to this Interrogatory to the extent it calls for a legal conclusion.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Qualcomm asserts that Arm violated the California Unfair Competition Law ("UCL") by allegedly (1) withholding deliverables under the Qualcomm ALA and TLA; (2) misrepresenting to

**A0240**

Qualcomm that it was not withholding deliverables; (3) "wrongfully" asserting that it has the right to terminate the QC ALA; (4) refusing to negotiate licensing terms with Qualcomm in good faith; (5) threatening or attempting to cut off Qualcomm's access to Arm's ISA; (6) leaking its October 22, 2024 letter to the media; (7) interfering or attempting to interfere with Qualcomm's customer relationships; and (8) making misleading statements to Qualcomm's customers to pressure them not to acquire products from Qualcomm. SAC ¶¶ 206–07. None of this conduct constitutes "a violation of unfair competition law" under the UCL.

To bring a claim under the UCL, Qualcomm must show that Arm engages in an "unfair, unlawful, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Qualcomm has indicated its allegations implicate the "unfair" and "unlawful" prongs. Arm's conduct is not unfair or unlawful.

There are two tests courts use to determine whether conduct is "unfair" under the UCL. First, when a business competitor brings a UCL claim, California courts apply a "tethering test" that examines whether the conduct "[1] threatens an incipient violation of an antitrust law, or [2] violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [3] otherwise significantly threatens or harms competition." *Cel-Tech Comm'cns, Inc. v. L.A. Cell. Tel. Co.*, 20 Cal.4th 163, 187 (1999). The claim must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Zhejiang Yuanzheng Auto*, 2023 WL 4317189, at *12 (citing *Cel-Tech Comm'cns, Inc. v. L.A. Cell. Tel. Co.*, 20 Cal.4th 163, 186–87 (1999)). A party's conduct "violates the policy or spirit of the antitrust laws" where "the effect of the conduct is comparable to or the same as a violation of the antitrust laws, [] or it otherwise significantly threatens or harms competition." *People's Choice Wireless*, 131 Cal. App. 4th at 662 (citing *Cel-Tech*, 20 Cal. 4th at 187). Second, in consumer actions, California courts apply a "balancing test" which "weigh[s] the utility of the defendant's

A0241

conduct against the gravity of the harm to the alleged victim." *Id.* (simplified). Finally, the "unlawful" prong requires Qualcomm to prove that Arm violated a federal, state, or local law. *See Olson v. World Fin. Grp. Ins. Agency, LLC*, 2024 WL 4668515, at \*8 (N.D. Cal. Nov. 4, 2024). Arm's alleged conduct does not violate the UCL under either the "unfair" prong—including under both the tethering and balancing tests—or "unlawful" prong.

**Arm's Alleged Conduct Does Not Violate the UCL Under The Tethering Test**

As a threshold matter, Qualcomm's allegations about Arm's allegedly unfair conduct suffer from two fatal flaws. For one, Qualcomm "does not identify an antitrust law or a policy or spirit of such a law." *Roberson v. Pocker*, 2024 WL 2984026, at \*10 (C.D. Cal. Apr. 3, 2024) (granting dismissal); *see also Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002) (affirming dismissal where "complaint allege[d] that Albertson's acted with a motive to secure an advantage over competitors" but did "not state a theory of unfair practice based on violation of specific anti-trust statutes or policies of anti-trust legislation"). Qualcomm cannot make the "unusual" showing that Arm somehow "violate[d] the 'policy and spirit' of the antitrust laws without violating the actual laws themselves." *Synopsys, Inc. v. ATopTech, Inc.*, 2015 WL 4719048, at \*10 (N.D. Cal. Aug. 7, 2015). For another, Qualcomm fails to identify any relevant market in which Arm's conduct allegedly threatens competition and has affirmatively represented that it "does not intend to offer a market definition to support its" UCL claim. 4/9/25 Ltr. From C. Nyardy at 4. But "without a definition of [the] market there is no way to measure [Arm's] ability to lessen or destroy competition." *Ohio v. Am. Express*, 585 U.S. 529, 543 (2018); *Racek v. Rady Children's Hosp. of San Diego*, 2012 WL 2947881, \*6 (Cal. App. July 20, 2012); *Sun Microsystems, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 992 (N.D. Cal. 2000); *Vox Network Sols., Inc. v. Gage Tech., Inc.*, 2025 WL 929939, \*5 (N.D. Cal. Mar. 27, 2025) (dismissing claim under UCL's "unfair" prong, where plaintiff failed to identify relevant market); *Reilly v. Apple Inc.*, 578 F.Supp.3d 1098, 1106-1111

A0242

(N.D. Cal. 2022) (same where plaintiff alleged only implausible market). Qualcomm's allegations thus beg the question: "Competition" with what products, or with whom?

Although the legal inquiry should end there, Arm's conduct nevertheless does not satisfy any of the respective tests under the UCL or constitute a violation of that law. Qualcomm's continued refusal to identify the antitrust laws implicated by Arm's conduct or the relevant market(s) in which Arm's conduct allegedly threatens competition makes it impossible for Arm to provide the "complete factual and legal bases" supporting Arm's contention that its "conduct as identified in Paragraphs 204-212 of the Second Amended Complaint does not constitute a violation of unfair competition law under the California Unfair Competition Law." Arm's analysis is thus limited to Qualcomm's present allegations and representations, and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory to the extent Qualcomm clarifies its claim.

Qualcomm alleges that Arm acted unfairly by "withholding deliverables" it must provide "under the Qualcomm ALA and TLA," "misrepresenting to Qualcomm that it was not withholding deliverables," "asserting that it has the right to terminate the QC ALA without any basis in the QC ALA for those assertions," and "refusing to negotiate license terms with Qualcomm in good faith." SAC ¶ 206. These allegations assert that Arm breached its contracts with Qualcomm, but corporate plaintiffs may not bootstrap contract claims into UCL violations. *See, e.g., Martin Saturn of Ontario, Inc. v. Suburu of Am. Inc.*, 2023 WL 9417499, *8 (C.D. Cal. July 21, 2023); *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012); *Scripps Clinic v. Superior Court*, 108 Cal.App.4th 917, 940 (2003) (concluding harm was contractual, but not a UCL violation); *Mazal Grp. LLC v. Espana*, 2017 WL 6001721, at *4 (C.D. Cal. Dec. 5, 2017) (dismissing UCL claim when plaintiff did not include any specific allegations regarding the unfair prong and simply incorporated breach of contract allegations)). As Qualcomm itself has argued, it

A0243

"makes little sense to hold that contract disputes between 'the world's most sophisticated companies,' [*Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 997 (9th Cir. 2020)], could give rise to an independent UCL claim." Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 48 (Apr. 26, 2024) (citing *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008)). Qualcomm's assertion that Arm refused to negotiate license terms with Qualcomm in good faith is barred by the statute of limitations.

To the extent Qualcomm alleges that any of Arm's conduct was aimed at "threatening or attempting to cut off Qualcomm's access to the ubiquitous Arm ISA," SAC ¶ 207, such conduct still does not constitute a violation of the UCL. As Qualcomm itself has argued, "an antitrust duty to deal with" or license others is "far outside the mainstream of antitrust law." Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 30 (Apr. 26, 2024); *see also Verizon Comm'cns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407-411 (2004) ("As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)); *FTC v. Qualcomm*, 969 F.3d 974 (9th Cir. 2020) ("As the Supreme Court has repeatedly emphasized, there is no duty to deal under the terms and conditions preferred by [a competitor's] rivals."); *Simon and Simon, PC v. Align Tech., Inc.*, 2020 WL 1975139, *3-6 (D. Del. Apr. 24, 2020). It is completely beyond the reach of antitrust law here given Qualcomm has disclaimed any argument that Arm is attempting to exercise monopoly power. 4/28/25 Ltr. From C. Nyardy at 1 ("As the … SAC make[s] clear, Qualcomm is not asserting a claim for monopolization under Section 2 of the Sherman Act; it is asserting a claim under the UCL's 'unfair' prong."); SAC ¶ 207 (striking monopoly allegation). "[I]n the absence of any purpose to create or maintain a monopoly," antitrust law "does not restrict the long-recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent

A0244

discretion as to parties with whom he will deal." *United States v. Colgate & Co.*, 250 U.S. 300, 308 (1919); *Trinko*, 540 U.S. at 408. For that reason, California courts have consistently held a purported refusal to deal "is neither unlawful nor unfair" as a matter of law for purposes of the UCL. *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 367 (2001); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 254; *Beverage v. Apple Inc.*, 101 Cal. App. 5th 749-50, 753-56 (2024); *People's Choice Wireless, Inc. v. Verizon Wireless,* 131 Cal. App. 4th 656, 668 (2005) (explaining that though it is true an antitrust violation is not necessary under the UCL, "[t]he allegations here are simply too far removed from cognizable antitrust evils to warrant intervention by a California court").

Also, to the extent Qualcomm's allegation that Arm "refus[ed] to negotiate license terms with Qualcomm in good faith," SAC ¶ 206, refers to the claim that Arm violated the implied covenant of good faith and fair dealing by allegedly refusing to negotiate a license to v10 of the Arm ISA, both the breach of contract and "refusal to deal" principles explained above preclude UCL liability premised on such conduct.

Next, Arm did not violate the UCL by allegedly "interfering or attempting to interfere with Qualcomm's relationships with Qualcomm's current and prospective customers," "leaking the Breach letter to the media," and "making misleading statements to Qualcomm's customers to pressure them not to acquire products from Qualcomm." SAC ¶¶ 206–07. The policy and spirit behind the antitrust laws protect against harm "to *competition itself,* not merely to competitors." *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 996 (9th Cir. 2020). In its recent filings, Qualcomm indicated its view for the first time that Arm acted unfairly in order to "gain market share as a chip designer." Qualcomm nowhere alleges or explains how this or any other alleged conduct broadly undermines a competitive market or consumers, or harms any alleged competitor other than Qualcomm. And in any event, Arm has virtually no market share today in a so-called "chip design

market."

Further, because Arm's statements in Arm's October 22, 2024 letter are true, they cannot serve as a basis for "unfair" or anticompetitive conduct. *See Digene Corp. v. Third Wave Techs., Inc.*, 536 F. Supp. 2d 996, 1006 (W.D. Wis. 2008), aff'd, 323 F. App'x 902 (Fed. Cir. 2009); *Gen. Commc'ns Eng'g, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 421 F. Supp. 274, 290 (N.D. Cal. 1976) (holding that "salesman puff" does not violate antitrust laws). The antitrust laws are generally unconcerned with the content of competitive speech, even critical or derogatory speech. *See Schachar v. Am. Acad. Of Ophthalmology*, 870 F.2d 397, 399 (7th Cir. 1989) ("Antitrust law does not compel your competitor to praise your product or sponsor your work. To require cooperation or friendliness among rivals is to undercut the intellectual foundations of antitrust law."); *cf. Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 937 F. Supp. 435 ("Antitrust laws do not exist to stifle speech … Thus, any stigma that MSL has suffered because of ABA's not listing MSL as an accredited school does not provide the necessary offensive *conduct* for antitrust liability.").

**Arm's Alleged Conduct Does Not Violate the UCL Under The Balancing Test**

The balancing test asks "whether the challenged business practice is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 1197, 1226 (N.D. Cal. 2014). Qualcomm does not properly qualify as a consumer such that the consumer balancing test should apply. Even if Qualcomm could constitute a consumer under the test, for the same reasons outlined above, Arm's business practices are pro-competitive, foster innovation, and benefit consumers, meaning they are not immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of Arm's conduct far outweighs any potential harm to Qualcomm. *See Drum v. San Fernando Valley*

A0246

*Bar Association.*, 182 Cal. App. 4th 247, 257 (2010).

Arm's business model is inherently pro-competitive and beneficial to consumers. Arm's decision to license its ISA designs enables business partners to innovate, meet consumer demands across a diverse range of applications, and provide differentiated products. That, in turn, increases consumer choice and competition—including against Arm's own CPUs—resulting in lower consumer prices. And, Arm's licenses for its market-leading, ready-to-use CPUs offer partners an opportunity to bypass the enormous costs associated with CPU development and instead reallocate those resources towards innovating their products in other ways. Arm's partners can thereby speed up their time-to-market and fill more areas of consumer need, all while passing along their savings to consumers. Arm's practices are "reasonable and consistent with current industry practice," and "reduc[e] 'transaction costs and complexities'" for consumers. Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 47–48 (Apr. 26, 2024) (citing *FTC v. Qualcomm*, 969 F.3d 974, 996 n.17, 996 (9th Cir. 2020)). Any alleged business-related harms Qualcomm may have suffered do not outweigh the pro-competitive benefits and practical utility of Arm's business practices.

### Arm's Alleged Conduct Does Not Violate the UCL Under The Unlawful Prong

To succeed under the "unlawful" prong of the UCL, Qualcomm must allege "a violation of another law [as a] predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007); *Gopher Media LLC v. Melone*, 2023 WL 8790266, at *15 (Dec. 19, 2023 S.D. Cal) ("To prevail on a claim under the unlawful prong of the [UCL], the plaintiff must show that a challenged [conduct] violates any federal or California statute or regulation." (citation omitted)). Qualcomm alleges that "Arm's conduct is … unlawful because it violates California common law, including state law prohibiting intentional and negligent interference with prospective economic advantage." SAC ¶ 209. But a

**A0247**

common law claim cannot form the predicate for a UCL claim. *See Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1044 (9th Cir. 2010), ("[A] common law violation such as breach of contract is insufficient … Because [plaintiff] does not go beyond alleging a violation of common law, he fails to state a claim under the unlawful prong of § 17200."); *Mazal Group, LLC v. Espana*, 2017 WL 6001721, at *4 (C.D. Cal. Dec. 4, 2017) (granting MTD on UCL claim when plaintiff did not go beyond alleging a violation of common law). And, in any event, Qualcomm's argument is circular. Qualcomm contends Arm's conduct is unlawful because it tortiously interfered with Qualcomm's economic advantage, SAC ¶ 209, and simultaneously contends Arm's conduct is wrongful for purposes of that tort because the conduct violates the UCL. Such circular reasoning cannot satisfy the elements of either claim.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Qualcomm claims that Arm acted "unfair[ly]" by sending Qualcomm a letter on October 22, 2024 to notify Qualcomm that it was in material breach of the Qualcomm ALA. SAC ¶ 206. But, two years prior, Qualcomm itself sent threatening letters to Arm with baseless claims that Arm breached the ALA. On November 3, 2022 and December 5, 2022, Qualcomm sent notice letters to Arm alleging that, "[b]y refusing to provide the OOB, ARM has failed to comply with its obligations under ███████████████████████████ … of the ALA," and that "ARM has █ days to cure any breach of ███████ Arm_01241585; ARM_00025401. Arm responded on December 6, 2022, stating that "Arm strongly disagrees with Qualcomm's claim that ██████ ██ is at issue or that provision of the OOB implicates ████████ and that "Qualcomm's letter is a

**A0248**

transparent and malicious effort to transform a debate about Arm's support obligations under ███████ into a weapon of economic duress through its improper invocation of ███████." Arm_01241565. Arm's legitimate defense of its rights under the ALA two years after Qualcomm itself began weaponizing the ALA to coerce Arm cannot serve as a basis for a UCL claim.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARMQC_00001136, ARM_01259705, ARMQC_00001136, QCVARM_1068459, QCVARM_0462995, QCVARM_0528826.

Arm further incorporates by reference the testimony of the following witnesses: Lynn Couillard, Martin Weidmann, Gerard Williams, Spencer Collins, Michael Williams, William Abbey, Mark Dragicevich, Karthik Shivashankar, Cristiano Amon, Jean-Francois Vidon, Paul Williamson, Richard Meacham, Ziad Asghar, Peter Greenhalgh, Jannik Nelson, Durga Malladi, and Manju Varma, including the documents used at each of those depositions. Arm also incorporates by reference its responses to Interrogatory Nos. 1–8, and 10–12, including the testimony and documents cited and incorporated therein (and any supplements thereto). Additionally, Arm incorporates by reference its Motion to Dismiss, D.I. 19, 28, Arm's Motion to Dismiss Qualcomm's First Amended Complaint, D.I. 48, 72, and Arm's Motion to Dismiss Qualcomm's Second Amended Complaint, D.I. 232, 233, 305.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 10:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not breach the Qualcomm ALA. Your response should include, but is not limited to, the complete factual and legal bases for any contention that you did not withhold ARM Technology or Updates or breach the implied covenant of good faith and fair dealing, and should

A0249

include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 10 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks "the complete factual and legal bases," without limitation. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this Interrogatory to the extent it calls for a legal conclusion.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

**Qualcomm's Allegations**

Qualcomm alleges in its Second Amended Complaint that Arm breached ███████ of the Qualcomm ALA by allegedly withholding OOB and ACK patches. Second Amended Complaint ¶¶ 78-94. Qualcomm alleges in its Second Amended Complaint that Arm breached an implied covenant of good faith and fair dealing under the ALA by "with[olding] deliverables that it was required to provide Qualcomm under the QC ALA" and "fail[ing] to negotiate an extension to the QC ALA that would cover future version of the architecture, including v10." Second Amended Complaint ¶ 184.

**Arm Did Not Breach The Qualcomm ALA Based
On The Alleged Withholding Of ACK And OOB**

For Qualcomm's allegations that Arm breached the Qualcomm ALA based on its alleged

A0250

withholding of ACK and OOB, including based on an implied covenant of good faith and fair dealing, Arm incorporates by reference its response to Interrogatory No. 1.

Further, Qualcomm's implied covenant allegation is duplicative of Qualcomm's ███ breach claim and fails for the same reasons. *See, e.g.*, *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 439 (3d Cir. 1993) (holding that Plaintiff "cannot assert a claim for breach of implied covenants that is based on exactly the same acts which are said to be in breach of express covenants."); *Cision US, Inc. v. CapTech Ventures, Inc.*, No. CV 24-00063-MN-SRF, 2025 WL 1094318, at *5 (D. Del. Apr. 11, 2025) (dismissing Plaintiff's "claim for breach of the implied covenant of good faith and fair dealing … as impermissibly duplicative of its breach of contract and warranty claims.").

### Arm Did Not Breach Any Implied Covenant Of Good Faith And Fair Dealing For The Qualcomm ALA By Allegedly Failing To Negotiate A License To v10

Qualcomm alleges in its Second Amended Complaint that Arm breached an implied covenant of good faith and fair dealing under the ALA by "fail[ing] to negotiate an extension to the QC ALA that would cover future version of the architecture, including v10." Second Amended Complaint ¶ 184.

That is not true. On June 4, 2025, Will Abbey, Arm's Chief Commercial Officer, wrote to Qualcomm regarding its request for a v10 license, stating that Arm is prepared to negotiate in good faith for a v10 license and proposed a business meeting:

> Arm is prepared to negotiate in good faith over the terms of a license to the v10 architecture. As the first step in those negotiations, we propose a meeting between our commercial teams to better understand how Qualcomm intends to use the v10 architecture. That will help Arm put together an appropriately tailored licensing proposal. Please let us know a few dates Qualcomm is available for that meeting, and we will let you know our availability.

June 4, 2025 Will Abbey Letter to Roawen Chen. On June 9, Qualcomm responded, but did not address Mr. Abbey's request for a business meeting. Further, on June 13, 2025, Arm's Executive

A0251

Vice President and Chief Legal Officer Spencer Collins sent Qualcomm another letter again stating

that Arm is prepared to negotiate in good faith:

> On this basis, on June 4, 2025, Will Abbey, Arm's Chief Commercial Officer, proposed in good faith a business meeting regarding Qualcomm's request for a license to Arm's v.10 architecture. Mr. Abbey's offer to meet remains open and Arm continues to believe that such a meeting would be the most efficient path forward in response to Qualcomm's request. Please have the relevant business personnel respond to Mr. Abbey with dates that Qualcomm is available for such a meeting.
>
> * * *
>
> Despite these clear limits on Qualcomm's election rights under the ALA, as we told Qualcomm in 2020, nothing prevents Arm and Qualcomm from discussing a potential license to future versions of the Arm architecture as they become available. Arm remains prepared to negotiate in good faith over the terms of a license to the v.10 architecture.

June 13, 2025 Spencer Collins Letter to Ann Chaplin.

### Arm Is Not Required To Negotiate The Terms And Conditions Of A V10 License Under The Qualcomm ALA Because Qualcomm Did Not Have The Right To Elect V10 In 2020

Qualcomm, in any event, does not allege that Arm breached ▮▮▮▮▮ of the

Qualcomm ALA. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Qualcomm does not accuse Arm of

breaching of this Section. Any implied covenant claim based on ▮▮▮▮▮ thus improperly

"seeks to impose" obligations "beyond those to which the parties actually agreed." *Lamke v.*

*Sunstate Equipment Co., LLC*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004).

As an initial matter Arm had no obligation to negotiate an extension under ▮▮▮▮▮

based on Qualcomm's May 2020 email because v10 was not in development at that time, and there

A0252

were no ████████████████████████████████████████████████ to elect in 2020.  In May 2020, Arm's v10 was not in development, and the parties never reached any ████ ████████ regarding any future versions of ████████ that would be covered by a purported election.  In April 2020, Qualcomm reached out to Arm asking if anyone is working on v10 Architecture in the context of seeking an extension to the ALA ████████████████.  ARM_00005340.  Arm responded that "no one is working on v10." *Id.*  Qualcomm responded, stating that "no meaningful discussions can currently be initiated around the terms and conditions for an extension of the ALA Term to cover v10 architecture" and sought to amend the ALA.  *Id.*

On May 15, 2020 Lynn Couillard from Arm wrote to Qualcomm, stating that "[t]he intent of ████████. is to allow for an extension of the agreement as of this point in the term of the agreement.  If there is not desire from Qualcomm to negotiate terms of an extension at this point, but rather to have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire" and that "there is nothing that stops us from discussing next gen architecture or entering into an agreement anytime in the future regardless of the existing agreement":

> **From:** Lynn Couillard <Lynn.Couillard@arm.com>
> **Sent:** Friday, May 15, 2020 9:49 AM
> **To:** Brett Bettesworth <betteswb@qti.qualcomm.com>; Rajiv Gupta <grajiv@qti.qualcomm.com>
> **Cc:** Todd Lepinski <Todd.Lepinski@arm.com>
> **Subject:** [EXT] Re: V10 -->V9 architecture follow-on
>
> Hello Brett and Rajiv, (+Todd)
>
> The intent of section ████ is to allow for an extension of the agreement as of this point in term of the agreement.  If there is no desire from Qualcomm to negotiate terms of an extension at this point, but rather to have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire.  However, importantly, there is nothing that stops us from discussing next gen architecture or entering into an agreement anytime in the future regardless of the existing agreement.
>
> Note that at the time of the v8 architecture closure, we also included "████████ which at the time had no definition, and eventually became v9.  We are in a similar situation here with regards to visibility on next generation architecture.
>
> Please let us know if you'd like to discuss, we can set something up for next week.
>
> Thanks
> Lynn

A0253

ARM_00005340. Mr. Bettesworth responded five days later. He did not dispute any of Ms. Couillard's statements, including that "[t]he intent of ████████ is to allow for an ***extension*** of the agreement ***as of this point in term of the agreement***," and that if Qualcomm desires to "have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire." He elected to "go ahead and move forward with the extension":

| | |
|---|---|
| From: | Brett Bettesworth [betteswb@qti.qualcomm.com] |
| Sent: | 20/05/2020 20:05:11 |
| To: | Lynn Couillard [Lynn.Couillard@arm.com]; grajiv@qti.qualcomm.com |
| CC: | Todd Lepinski [Todd.Lepinski@arm.com] |
| Subject: | RE: V10 -->V9 architecture follow-on |
| Importance: | High |

Hi Lynn,

Thanks for your email and the note below. We will go ahead and move forward with the extension at this point, per the ALA optional election.

████████████████████████████████████████

We can discuss further at some point in the near future, but wanted to ensure that we provided timely notification of our election here, as mentioned previously.

Sincerely,
Brett

*Id.*

Arm and Qualcomm never reached any mutual agreement over what if any Arm Technology would be included in a purported extension. And to the extent any agreement was reached, it is that v10 would not be included: after Arm notified Qualcomm that v10 was not in development, Qualcomm acknowledged that "no meaningful discussions can currently be initiated around the terms and conditions for an extension of the ALA Term to cover v10 architecture" and Qualcomm did not dispute any of Ms. Couillard's statements, including that "[t]he intent of ████████ is to allow for an extension of the agreement as of this point in term of the agreement," and that if Qualcomm desires to "have a discussion around licensing the next architecture sometime in the

A0254

future, then this portion of the agreement will expire." *Id.* Qualcomm did not follow up on that correspondence, and did not make any effort to follow up on its May 2020 correspondence until five years later, as discussed above. Instead, the parties proceeded with negotiating and finalizing an Annex 1 for v9, which was the only planned architecture at that time.

### Arm Is Not Required To Negotiate The Terms And Conditions Of A V10 License Under The Qualcomm ALA Because Qualcomm's May 2020 Emails Were Not A Valid Election

Arm was not obligated to negotiate an extension of the Qualcomm ALA because Qualcomm's May 2020 emails in which Qualcomm purported to elect to extend the ALA were not a valid election.



does not include email as a valid or effective method of providing notice under the ALA. Qualcomm's May 20, 2020 email did not give Arm proper notice of its purported election under █████████ rendering Qualcomm's purported "election" ineffective. Qualcomm did not send Arm follow-up correspondence in compliance with █████ regarding its purported "election," and did not correspond with Arm again about its purported "election" for another five years. But even if Qualcomm had made a valid election, its assertion that Arm breached the implied covenant would be barred by the applicable statute of limitations.

### Arm Did Not Breach The Qualcomm ALA Based On The Alleged Withholding Of ETE Checker Support

Qualcomm does not allege that Arm breached the Qualcomm ALA based on withholding

A0255

ETE Checker support in its Second Amended Complaint or in its response to Arm's Interrogatory 2, which calls for "the complete legal and factual basis for [Qualcomm's] contention that Arm failed to meet any of its obligations under the Qualcomm ALA." Second Amended Complaint; Qualcomm's March 10, 2025 Response to Arm's Interrogatory No. 2. Nor did Qualcomm identify any alleged withholding of ETE Checker support in its November 3, 2022 letter to Arm. ARM_01423632 at -634. Qualcomm states in its response to Arm Interrogatory No. 13 that "Arm violated the terms of the Qualcomm ALA by failing to … provide support for the ETE Checker," but does not specify the support that was allegedly withheld or identify any term of the ALA that Arm allegedly breached.

To the extent Qualcomm's statements can be understood, Arm did not breach the Qualcomm ALA based on any alleged withholding of support for the ETE Checker. Qualcomm states in its response to Arm Interrogatory No. 13 that "the ETE Checker [is] a component of the ACK licensed by Qualcomm for Armv9." However, Arm delivered the Armv9 ACK—including the ETE Checker—to Qualcomm at least as early as May 27, 2019, and Arm delivered all subsequent quarterly ACK releases to Qualcomm. *See, e.g.*, ARMQC_02604616 (showing Arm making available to Qualcomm "Product: ████ – Armv9-A Architecture Compliance Kit" and "Part: A████████ – Armv9-A Architecture Compliance Suite," and quarterly releases thereto, via the Arm Connect document delivery portal). Qualcomm's unexplained statement that Arm allegedly withheld unspecified support for the ETE Checker allegedly constitutes a breach of unspecified "terms of the Qualcomm ALA" fails to show any breach by Arm.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and

without waiver of its general and specific objections, Arm further responds as follows:

In depositions, Qualcomm has suggested that the Qualcomm ALA's definition of ███████

entitles Qualcomm to the unreleased v10 of the Arm ISA. That is incorrect. The Qualcomm ALA

defines ████████████████████████████████████

████████████████████████████████████

███████████████ ARM_00055357 at 360. Because the only version of the Arm ISA that

was available at the time of the Qualcomm ALA's execution was v8, the █████████████

██████████████ Indeed, the parties executed an Annex 1 for ██████

████████ contemporaneously with the execution of the ALA to serve as a placeholder for the

next available version of the Arm ISA. QCARM_0338573. In 2020, the parties executed an Annex

1 for v9 of the Arm ISA, which ████████████████████████

██████████ QCARM_0343954. This confirms that the parties understood that ██████████

██████████████████████

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies

the following documents from which information responsive to the non-objectionable scope of this

Interrogatory may be derived: ARM_01293447, ARMQC_02771129, ARMQC_02771151, QCVARM_0851876, ARMQC_02771128, ARMQC_02771124, ARMQC_02771125, ARMQC_02771126, ARMQC_02771127, QCVARM_0453724, QCVARM_0851511, QCARM_0562765, QCVARM_0448842, QCVARM_0532239, QCVARM_0534596, QCVARM_0534597, QCVARM_0852203, QCVARM_0851120, QCVARM_0851333, QCVARM_0531892, QCVARM_0847000, QCVARM_0448361, QCVARM_0529072, QCVARM_0528955, QCVARM_0529887, QCVARM_0447175, QCVARM_0449653, QCVARM_0449658, QCVARM_0447252, QCVARM_0846761, QCVARM_0537065, ARMQC_02603587, ARMQC_02604609, ARMQC_02604610, ARMQC_02604611;

**A0257**

ARMQC_02604612, ARMQC_02604613, ARMQC_02604614, ARMQC_02604615,

ARMQC_02604616, ARMQC_02604617, ARMQC_02604618, ARMQC_02604619,

ARMQC_026046020, ARMQC_02604621, ARMQC_02604622, ARMQC_02604623,

ARMQC_02747093, ARMQC_02747097, ARMQC_02747103, ARMQC_02747104,

ARMQC_02779171, ARMQC_02779174, ARMQC_02779176, ARMQC_02779179,

ARMQC_02779181, QCARM_2430181, ARM_00100013, ARM_01282655, ARM_00090791,

ARM_00067349, ARM_00102683, ARM_00091389, ARM_00068087, ARM_00068131,

ARM_00068459, ARM_00068504, ARM_00091657, ARM_00091659, ARM_00091714,

ARM_00091768, ARM_00091799, ARM_00091834, ARM_00091869, ARM_00091903,

ARM_00075096, ARM_00075098, ARM_00075343, ARM_00076113, ARM_00103566,

ARM_00103635, ARMQC_02755397, ARMQC_02755446, ARMQC_02755490,

ARMQC_02755534, ARMQC_02755580, ARMQC_02755624, ARMQC_02755674,

ARMQC_02755903, ARMQC_02755905, ARMQC_02756148, ARMQC_02756245,

ARMQC_02756246, ARMQC_02756344, ARMQC_02746634, ARMQC_02756542,

ARMQC_02756544, ARMQC_02746871, ARMQC_02756860, ARMQC_02760525,

ARMQC_02627275, ARM_01241565, QCVARM_0573677, ARMQC_02779064,

ARMQC_02779076, ARMQC_02779099, ARMQC_02779107, ARMQC_02779116,

ARMQC_02779122, ARMQC_02779133, ARM_00001777, ARM_00001195, ARM_00001198,

ARM_00001777, ARM_01020186, QCARM_3337526, QCARM_3337900, QCARM_3338108,

QCARM_3339493, QCVARM_0685544, QCVARM_0689117, QCVARM_0699179,

QCARM_3216178, QCARM_3066477, QCVARM_0602227, QCVARM_0618420,

QCVARM_0691521, QCVARM_0000395, QCVARM_0000269, QCARM_3353040,

QCVARM_0602564, QCVARM_0000142, QCVARM_0618741, QCVARM_0000180,

QCARM_3352796, QCARM_3353006, QCARM_3353126, ARM_00025401,

**A0258**

QCVARM_0468612, QCVARM_0000061, QCVARM_1118518, QCVARM_0602258, QCVARM_0602295, QCVARM_0468174, QCVARM_0000114, QCVARM_0000092, QCVARM_0000085, QCVARM_0000123, QCVARM_0000135, QCVARM_0602359, QCVARM_0468148, QCVARM_0000395, QCVARM_0000269, QCARM_3353040, QCVARM_0602564, QCVARM_0621692, QCVARM_0535116, QCVARM_0524624, QCVARM_0854027, QCARM_0566625, QCVARM_0524624, QCVARM_0613083, QCVARM_0613160, QCVARM_0540468, QCVARM_0452598, QCARM_0340017, QCVARM_0452296, QCVARM_0846871, QCVARM_0857113, QCVARM_0463558, QCVARM_0608391, QCVARM_1031097, QCVARM_0448757, QCARM_3430479, QCVARM_0851449, QCVARM_0621447, QCVARM_0621448, QCARM_3537716, QCARM_3537383, QCVARM_0467659, QCVARM_0454629, QCVARM_0451824, QCVARM_0449970, QCVARM_0467852, ARM_00003305.

Arm further incorporates by reference all documents produced in Qualcomm's 11th document production (QCVARM_011), and all documents cited in Qualcomm's responses to Arm Interrogatory Nos. 1, 2, 6, 9, and 13.

Given the breadth of allegations Qualcomm has made regarding Arm's alleged breach of the ALA, Arm further incorporates by reference the testimony of all witnesses that have been deposed in this case to date, including those specifically referenced herein, as well as the testimony of all witnesses deposed in *Arm v. Qualcomm*, Case No. 1:22-cv-01146 (D. Del.), and the exhibits used during those depositions.

Arm also incorporates by reference its responses to Interrogatory Nos. 1, 3, 4, and 5.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 11:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not breach the Qualcomm TLA. Your response should include, but is not limited to, the complete legal and factual bases for any contention that you did not breach ███████ of the TLA or the implied covenant of good faith and fair dealing, and should include an identification of all documents by Bates numbers you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 11 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks "the complete factual and legal bases," without limitation. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this Interrogatory to the extent it calls for a legal conclusion. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

### Qualcomm's Allegations

Qualcomm alleges that Arm breached ███████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████ Second Amended Complaint ¶¶ 215, 223. Qualcomm alleges that Arm breached the implied covenant of

A0260

good faith and fair dealing of the Qualcomm TLA by "fail[ing] to provide licensing proposals for Arm Implementation Cores to Qualcomm in violation of provisions of the QC TLA."  Second Amended Complaint ¶ 184.  Arm understands that Qualcomm's only allegations that Arm breached the Qualcomm TLA are based on licensing offers for the ███████████████ cores.

Arm denies Qualcomm's allegations that Arm breached the Qualcomm TLA. Arm has not breached the Qualcomm TLA, and Qualcomm has failed to show otherwise.

### Arm Did Not Breach The Qualcomm TLA Because Arm's Licensing Offers Satisfied The ███████████ Term

Qualcomm alleges that Arm's licensing offer for █████████████ "increased licensing fees and royalty rate percentages for each core by nearly five times from the prior terms licensed by Qualcomm" and thus ████████████████████████ ██████████████████████████████████████ Second Amended Complaint ¶¶ 118, 119.  To the extent ████████ applies, Arm's licensing offer satisfied the ████████████ term, which is calculated based █████████████

███████████████████████████

████

████████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

**A0261**

████████

██████████████████████████████████████████████████████

███████████████████████████████████████████

Arm's license offer to Qualcomm satisfied the ████████████ term, to the extent it applies, which is calculated ████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████

### Arm Did Not Breach The Qualcomm TLA Because It Made An Actual License Offer To Qualcomm

Qualcomm alleges that "Arm's proposal was a constructive failure to offer a license" because of its financial terms and that "[t]his constructive failure to offer a license to the requested cores violated the terms of the QC TLA." Second Amended Complaint ¶¶ 25, 118. Arm did not breach the Qualcomm TLA because, as Qualcomm admits, Arm made an *actual* license offer to Qualcomm. Second Amended Complaint ¶ 117. Further, as described above, the financial terms of that offer satisfied the "████████████" term and were in good faith and thus not a "constructive failure to offer a license."

### Arm Did Not Breach The Qualcomm TLA Because Its ████████████ █████████████████████████████████████████████████

Qualcomm alleges in its Second Amended Complaint that "Arm failed to fulfill its obligation under ████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████ including by excluding support and maintenance." Second Amended Complaint ¶ 223. Qualcomm does not identify any other alleged ████████████ ████████████████. Arm did not breach the Qualcomm TLA because its offer included support and maintenance for ████████████████.

████████████████████████████████████████████████████

A0262

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

Arm's ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████

### Arm Did Not Breach The Qualcomm TLA Because Arm Was Not Obligated To Offer Licenses To █████████████████ To Qualcomm In 2024

Qualcomm alleges in its Second Amended Complaint that Qualcomm submitted requests to Arm for licenses to ███████████ in April 2024 and for a license to █████ in August 2024, and that Qualcomm sent Arm two notices of breach of the Qualcomm TLA in September 2024 because Arm had not yet responded with license offers by that time.  Second Amended Complaint ¶¶ 21-24.

Arm had no obligation to offer Qualcomm licenses to the ████████████████ cores in 2024 because Qualcomm's ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████ does not make reference to renewals.  Qualcomm first licensed the ██████████████ cores in

A0263

██████████



, and thus made its ███████ no later than 2019. *See, e.g.*, QCARM_0029040 at 29043. Under ███████

███████████████████████████

███████████████████████████

Because Qualcomm did not request a license to the ███████████ cores within the ███████████████, Arm was under no obligation with respect to Qualcomm's 2024 request to license the ███████████ cores. Qualcomm has not identified any other requests for licenses to those cores other than its communications in 2024.

### Arm Did Not Breach Any Obligation To Act In ███████" Or The Implied Covenant Of Good Faith An Fair Dealing

Qualcomm alleges in its Second Amended Complaint that "[t]he financial terms that Arm provided for the three requested cores were commercially unreasonable, exorbitant, and not in good faith" and that "Arm has breached the implied covenant of good faith and fair dealing" for the Qualcomm TLA. Second Amended Complaint ¶¶ 118, 187.

Arm did not breach either the express ███████" provisions of ███████ of the TLA or any implied covenant of good faith and fair dealing for the reasons described above: Arm did not breach the TLA, and made a good faith offer with financial terms that satisfied the ███████ ███ team.

Further, any allegation that Arm breached the implied covenant of good faith and fair dealing is duplicative of the express "███████" provisions and is not actionable. *See, e.g.*, *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 439 (3d Cir. 1993) (holding that Plaintiff "cannot assert a claim for breach of implied covenants that is based on exactly the same acts which are said to be in breach of express covenants."); *Cision US, Inc. v. CapTech Ventures, Inc.*, No. CV 24-00063-MN-SRF, 2025 WL 1094318, at *5 (D. Del. Apr. 11, 2025) (dismissing Plaintiff's "claim for breach of the implied covenant of good faith and fair dealing … as impermissibly duplicative of its breach

of contract and warranty claims.").

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Jeff Fonseca and Karthik Shivashankar.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

**Arm Did Not Breach The Qualcomm TLA Because Arm's Licensing Offers Satisfied The "██████████" Term**

Arm's October 2024 license offer to Qualcomm satisfied the ██████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

Arm prepared a quote in response to Qualcomm's 2024 requests to renew its license for the ██████████████ cores as required by the TLA. QCVARM_0524362. Arm, *e.g.*, Karthik Shivashankar and Akshay Bhatnagar, performed an analysis to ██████████████████ ██████████████████████████████. *See, e.g.*, Bhatnagar Dep. (Rough) at 25–28; ARMQC_02784199; ARMQC_02784204. Next, Arm ████████ ██████████████████████████████████ ████████████ *See, e.g.*, Youssef Dep. at 64–68; ARMQC_02779314. Arm then performed an analysis to determine appropriate licensing fees and royalty rates to propose to Qualcomm based on a variety of factors, ████████████████████████████████████ ██████████████████████████████████████████

A0265

██████████████████████████████. *See, e.g.*, Youssef Dep. at 68–71. Other Arm team members contributed to this analysis in addition to Mr. Shivashankar and Mr. Bhatnagar, including Ehab Youssef, and Jeff Fonseca, among others.

After considering the ████████████████████████████████ ██ an appropriate licensing fee and royalty rate schedule to propose to Qualcomm, which it formalized in a quote. QCVARM_0617829. In arriving at its proposal, Arm determined that while

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████ *See, e.g.*, Youssef Dep. at 68–71. ██████████████████████

████████████████████████████████████████

████████████████████████████████████. Youssef Dep. at 71 ████

████████████████████████████████████████

████████████████████████████████████████

██████████ Thus, Arm prepared a quote using ████████████████

████████████████████████████████████████

████████████████████████████████. *See* Youssef Dep. at 71; Shivashankar Dep. at 97–98; Fonseca Dep. (Rough) at 16, 19, 32–34, 37–39; ARMQC_02783731; ARMQC_02783848; ARMQC_02783619; ARMQC_02783967; ARMQC_02784120.

To the extent Qualcomm argues that Arm violated █████████████████

████████████████████████████████████████

████████████████████████████, that is not true. Arm considered ████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████.

**Arm Did Not Breach The Qualcomm TLA Because Its** ████████████████████████████████████

Arm did not breach ████████████████████████████████

████████████████████████████████████████████

████████████████████

Qualcomm's allegation for an alleged breach of ██████████ is apparently based on the statement in Arm's October 2024 offer that "Support and Maintenance is not included in this Qualcomm IP Extension Offer." QCVARM_0617829 at 831. However, there was never a change in the "████████████████████ and Qualcomm is mistaken. Qualcomm has a ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████ ARMQC_02772246. That agreement has been extended several times by the parties, and is set to run through ████████████. ARMQC_02772246, § ███; *see also* ARMQC_02772246; ARM_01300657; ARM_01300665; ARM_01298732; ARM_01300650.

Arm never communicated to Qualcomm that it was no longer providing support and maintenance in any renewal license to ████████████████████. Indeed, Arm confirmed to

A0267

Qualcomm, *i.e.*, Kurt Wolf, that "support is included in QCOM umbrella Support & Maintenance Agreement" and "this is the correct reading" of that language. ARMQC_02774856; Wolf Dep. at 176. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████. *See, e.g.*, ARMQC_02772246; ARM_01300657; ARM_01300665; ARM_01298732; ARM_01300650.

Further, any argument by Qualcomm that Arm's discounting of its October 2024 license fees demonstrates that Arm was not including support and maintenance is also incorrect. ████

███████████████████████████████████████████

████████████████████████████████. *See, e.g.*, Fonseca Dep. at 64–65; ARMQC_02783169 at 654 ████████████████████████████████

███████████████████████████████████████████

████████). That Arm discounted its licensing fee offers for ████████████████ to account for Qualcomm's ████ further confirms that support and maintenance was still included vis-à-vis the ████.

<u>**Arm Did Not Breach The Qualcomm TLA Because Arm Was Not Obligated To Offer Licenses To** ████████████████ **To Qualcomm In 2024**</u>

███████████████████████████████████████████

███████████████████████████████████████████

████████████ In addition to Qualcomm's failure to make a ████████████████ ████ of requesting ████████████████ licenses in 2019, Arm had no obligation to offer licenses to ████████████████ because it did not receive any renewal request from ████

███████████████████████████████████████████

A0268
████████

███████████████. ARM_00103918 at 918, 955. Arm never received any such request from an employee of ███. Rather, Qualcomm's communications regarding ████████████ renewal requests to Arm in 2024 came from individuals employed by Qualcomm Inc. or Qualcomm Technologies, Inc., *i.e.*, Kurt Wolf or Ann Chaplin. *See, e.g.*, ARMQC_02771126; QCVARM_0605055.

### Arm Did Not Breach Any Obligation To Act In ████████ Or The Implied Covenant Of Good Faith And Fair Dealing

Qualcomm alleges in its Second Amended Complaint that "[t]he financial terms that Arm provided for the three requested cores were commercially unreasonable, exorbitant, and not in good faith" and that "Arm has breached the implied covenant of good faith and fair dealing" for the Qualcomm TLA. Second Amended Complaint ¶¶ 118, 187. For the additional reasons discussed above, Arm did not breach the express ███████" provision of ██████ of the TLA or any implied covenant of good faith and fair dealing. Arm made a good faith offer in accordance with ███, and did not ███████████████████████ in accordance with ███.

### Additional Factual and Legal Bases Regarding Qualcomm's TLA Allegations

Arm further states that Qualcomm has failed to prove that Arm's alleged conduct was the but-for or proximate cause of any supposed "harm" that Qualcomm has allegedly suffered. Qualcomm has failed to articulate any "harm" that it has allegedly suffered as a result of Arm's supposed breach of either ████████ of the TLA. As discussed above, Arm has not breached the TLA or any express or inherent ████████ provisions therein. Qualcomm has failed to make any effort to quantify any "harm," such as alleged overpayments which should be refunded, ████████ ████████████████████████████████████████. While Qualcomm's witnesses have vaguely alleged that Qualcomm had to "shift resources" or hire "engineering resources" to develop custom cores as a result of Arm's actions with regard to the October 2024 TLA offers, Qualcomm has failed to produce or identify any documentary evidence

**A0269**

corroborating those claims. Qualcomm has also failed to prove any casual connection between Arm's October 2024 offer and any of this supposed "harm."

To the contrary, discovery has confirmed that Qualcomm has suffered no harm *at all* from Arm's October 2024 offer to renew Qualcomm's license to ███████████████. Regarding ████, Qualcomm received an updated offer for ████ in 2025. ARMQC_02778342. As to ████████████, Qualcomm never had a legitimate plan to use those cores after October 2026 and those products are not on its roadmap after that time. ██████████████████. Arm incorporates by reference its response to Interrogatory No. 12 and discussion of its unclean hands defense. Qualcomm only requested renewal offers for ████████████ as a pretext to prompt a response from Arm regarding three "peripheral IP," GIC-700, MMU-700, and ELA-600. QCVARM_0605055; QCVARM_0447175; Wolf Dep. at 75–77. Indeed, it never sought to continue negotiating over or sought revised licensing terms from Arm in 2024 or anytime after for ████████████.

Further, Qualcomm attempted to partially accept Arm's October 2024 offer as to the "peripheral IP" only. QCVARM_0524726. After Arm rejected Qualcomm's attempt but provided a revised offer for GIC-700, MMU-700, and ELA-600 in January 2025, Qualcomm accepted those revised terms. QCVARM_0524726; QCVARM_0523650. This lack of harm undermines any notion that Qualcomm should be entitled to ██████████████████████████ ██████████████████████████████████.

Arm further notes that, to date, Qualcomm has failed to disclose any legal or factual bases for its theories as to how Arm has allegedly breached the TLA. Other than Qualcomm's vague allegations in the SAC—which are legally insufficient as set forth in Arm's Motion to Dismiss (D.I. 232, 233, 305)—Qualcomm has not answered any interrogatory or otherwise disclosed its theories for how Arm allegedly breached ████████████ of the TLA. Arm served interrogatories to

**A0270**

Qualcomm seeking such information on June 11, 2025, to which Qualcomm could have responded but has not.  Qualcomm similarly failed to provide any response to Arm's theories regarding the TLA, which were disclosed to Qualcomm on June 16, 2025.  Accordingly, Arm reserves the right to supplement these responses after it has an opportunity to review any such theories Qualcomm discloses at a later date.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARMQC_02772366, QCARM_0222545, QCARM_0344783.

Arm further incorporates by reference its response to Interrogatory No. 6, including the documents and testimony cited therein.

Arm further incorporates by reference the testimony of the following witnesses: Karthik Shivashankar, Ehab Youssef, Akshay Bhatnagar, Jeff Fonseca, Kurt Wolf, Manju Varma, Larissa Cochran, Spencer Collins, Will Abbey, Cristiano Amon, Ann Chaplin, Lynn Couillard, Durga Malladi, Richard Meacham, Laura Sand, Christine Tran, Jonathan Weiser, and Gerard Williams, including the documents used at each of those depositions.

Arm further incorporates by reference any documents withheld on the basis of third-party confidentiality disputes, including due to an objection or motion for a Protective Order filed by any such third parties.  Arm reserves the right to supplement this response to address such documents should any such disputes be resolved and result in the production of such documents to Qualcomm.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**A0271**

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Matthew J. McIntee
Meredith Pohl
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
matt.mcintee@kirkland.com
meredith.pohl@kirkland.com

Jay Emerick
Adam Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
adam.janes@kirkland.com

Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP


 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

**A0272**
66

(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

**A0273**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A0274**

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

# Exhibit 7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
  Delaware corporation

      Plaintiffs,

      v.

ARM HOLDINGS PLC, f/k/a, ARM LTD.
  a U.K. corporation

      Defendant.

C.A. No. 24-490-MN

██████████████████

### ARM'S FIRST SUPPLEMENTAL RESPONSE TO
### QUALCOMM'S THIRD SET OF INTERROGATORIES (NO. 12)

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively "Qualcomm")'s Third Set of Interrogatories (No. 12).

### GENERAL OBJECTIONS

Arm incorporates by reference the Objections set forth in Arm's responses to Qualcomm's First Set of Interrogatories, served March 24, 2025, Qualcomm's Second Set of Interrogatories, served June 16, 2025, Arm's supplemental response to Qualcomm's Amended Interrogatory No. 3, served June 18, 2025, and Arm's Objections and Responses to Qualcomm's Third Set of Interrogatories No. 12, served July 9, 2025.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 12:

Identify and describe in detail the complete factual and legal bases for any defense or counterclaim that You assert in response to the Complaint. Your response should include an identification of all persons knowledgeable about the facts referenced or relied upon in your response, and all documents (by Bates number) you rely upon in support of your response.

### RESPONSE TO INTERROGATORY NO. 12 (JULY 9, 2025):

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it seeks information regarding "the complete factual and legal bases" for "any defense," "all persons," and "all documents," without limitation. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties. Arm further objects to this request to the extent it seeks expert testimony, which is not yet due and will be provided in accordance with the Scheduling Order. Arm further objects to this request as duplicative of other Interrogatories.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm's Answer sets forth detailed explanations of the factual and legal basis for Arm's defenses that it is asserting in this case, which include: Failure to State a Claim; Waiver/Estoppel/Laches/Acquiescence; Unclean Hands; Limits on Damages; Compulsory Counterclaims/Res Judicata/Collateral Estoppel; the *Noerr-Pennington* Doctrine and California

A0278

2

Litigation Privilege; the Statute of Limitations; Freedom of Speech and Freedom to Petition; Claim and Issue Preclusion; Qualcomm's Failure to Mitigate; and Unenforceability of the ALA and TLA. D.I. 234 at pp. 39–46. Arm incorporates by reference its Answer to Qualcomm's Second Amended Complaint, D.I. 234. Arm asserts all of these defenses and its incorporation by reference of them here should not be construed as a waiver or forfeiture of any such defenses.

Arm also incorporates by reference its Motion to Dismiss, D.I. 19, 28, Arm's Motion To Dismiss Qualcomm's First Amended Complaint, D.I. 48, 72, and Arm's Motion to Dismiss Qualcomm's Second Amended Complaint, D.I. 232, 233, 305. Arm's Motions to Dismiss further expand on Arm's defenses and provides further factual and legal details support for them, including regarding Arm's *Noerr-Pennington*, California Litigation Privilege, and Anti-SLAPP (D.I. 233 at 4–8), Failure to State a Claim (D.I. 233 at 9–19), and Statute of Limitations (D.I. 233 at 20) defenses. Further, Arm incorporates by reference its responses to Qualcomm's Interrogatory Nos. 1–11, including the testimony and documents cited therein (and any supplements thereto), which contain additional factual and legal support for Arm's defenses.

Arm also provides below additional explanation regarding certain of its defenses. Arm notes, however, that Qualcomm to date has refused to provide meaningful or reciprocal discovery into its allegations. For example, Qualcomm has failed to remedy any of the deficiencies in Qualcomm's production set forth in Arm's letter briefing on discovery disputes. *See* D.I. 159. Qualcomm has also refused to supplement its interrogatory responses to meaningfully disclose its case theories. Qualcomm has also asserted improper privilege claims over information that is business advice or strategy, and not legal in nature. In another example, Qualcomm has refused to produce communications with the media or customers about its rights under the QC ALA despite alleging that Arm's statements about the same damaged Qualcomm's customer relationships,

documents regarding its publication of the same letter in its SEC filings as described above, and documents concerning its own "leaking," including for a story about confidential competition complaints QC placed with the same reporter at the same news outlet Arm allegedly communicated with. Qualcomm's improper refusal to provide or to block discovery on the core issues in the case has impaired Arm's ability to further develop its defenses. Accordingly, Arm provides this response and additional information based on the information currently available to it, and reserves the right to supplement this response should Qualcomm provide additional discovery, including any depositions taken in the future or after the close of the fact discovery period.

**Unclean Hands**

As set forth in Arm's answer, D.I. 234 at 43–44, Qualcomm's claims are barred, in whole or in part, by the equitable doctrine of unclean hands. In addition to Qualcomm's actions regarding Nuvia and Qualcomm's publishing of Arm's October 2024 letter, discovery has revealed that Qualcomm's actions surrounding its requests to renew licenses for ███████████████ in October 2024 constitute unclean hands. Qualcomm's requests to Arm for ████████ ████ in 2024 were made in bad faith, were deceitful, and/or were fraudulent, including because they were made as a pretext to prompt a response from Arm regarding other products. For example,

████████████████████████████████████████

████████████████████████████████████████

██████ *See, e.g.*, Wolf Dep. at 75–77. ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

*See* QCVARM_0605055. ████████████████████

A0280

4

███████████████████████████████████████████

███████████████████ *Id.* █████████████████

███████████████████████████████████████████

QCVARM_0447175.  And although Arm later agreed to terms for renewal licenses on certain peripheral IP with Qualcomm, Qualcomm never attempted to negotiate better terms for or discuss the ████████ with Arm, confirming that it had no legitimate plan to use those cores after October 2026, through which it is licensed under its current agreement.

These actions constitute bad faith, were deceitful, and/or were fraudulent as evidenced by other documents produced by Qualcomm, and are directly related to Arm's alleged breach of the TLA as asserted by Qualcomm in the SAC. *See, e.g.*, D.I. 137, Counts VII, VIII.  Indeed, ████████

███████████████████████████████████████████

███████████████████████████ *See* QCVARM_0447175. ████

███████████████████████████████████████████

███████████████████████████████████████████

████████ *Id.*  With █████████████, Qualcomm ████████ those products after October 2026 as it did not have those products on its CPU roadmap for the future. ████████████████████████████████████

███████████████████████████████████████ Wolf Dep. at 180–181.

Further, given the ongoing disputes between Qualcomm and Arm, Qualcomm not only used its 2024 licensing demands ████████████████████, but also to manufacture additional meritless claims to assert against Arm in litigation, and as a basis to withhold royalty payments to

A0281
5

Arm under ▉ of the TLA.  Thus, any remedies Qualcomm seeks in connection with Arm's alleged violation of the TLA are barred by the doctrine of unclean hands.

## Limits on Damages

As set forth in Arm's Answer, D.I. 234 at 44, the Qualcomm ALA and TLA limit the damages available for any alleged breach.  As an initial matter, Qualcomm has failed to show what its purported damages are for any allegation it has made in the complaint.  Nor has Qualcomm identified evidence purporting to quantify the supposed "harm" it has suffered as a result of Arm's alleged actions.  Arm disputes that Qualcomm has suffered any "harm" or damages, and reserves the right to supplement this response in the event Qualcomm later attempts to show any purported "harm" or damages.

Setting aside this failure of proof, Qualcomm's damages, if any, are limited by the ALA and TLA.  For example, ▉



ARM_000558357 at 381. ▉ *See* ARM_00103918 at 937.  To the extent Qualcomm intends to seek damages for any of these types of damages, it is precluded from doing so.  For example, any interruption of Qualcomm's business due to Arm's alleged actions, such as "shifting resources," "delays," or changes made in its

"roadmapping and SoC planning process," is something Qualcomm agreed that it is not permitted to recover. *See, e.g.*, D.I. 137 ¶¶ 180, 188, 195–196, 203, 211, 220, 226. Likewise, Qualcomm cannot recover for any supposed "harm" identified by Mr. Amon, such as, but not limited to, ███

███

███

███

███ " *See* C. Amon Dep Transcript (Rough).

In another example, the TLA provides in ███



*See* ARM_00103918 at 931. ███

███

███ Thus, Qualcomm is contractually barred from seeking any other damages or remedies for alleged breaches of ███ including consequential or indirect damages, and is limited to the specific contractual remedies set forth in the TLA in ███

███ . Moreover, even if Qualcomm could overcome these contractual limitations on liability, it cannot establish that Arm's alleged conduct was the but-for or proximate cause of any harms that Qualcomm allegedly suffered.

### Unenforceability of Qualcomm ALA and TLA Provisions

As set forth in Arm's Answer, D.I. 234 at 46, ███ of the QC ALA and the QC TLA provide that a breach by Arm of certain provisions of the ALA or TLA will result in ███

███

A0283
7

███████████ ARM_00103918 at 956; ARM_00055357 at 373. These provisions are unenforceable and unreasonable contractual penalty clauses.

For example, Qualcomm has not suffered any harm as a result of Arm's alleged breach of ████ of the QC ALA, nor has Qualcomm identified any such harm. Although Arm has served interrogatories seeking Qualcomm's complete factual and legal basis for contending that Arm's conduct has harmed Qualcomm (Arm Interrogatory No. 1) and seeking a specific description of Qualcomm's efforts to verify or attempt to verify compliance with the Arm architecture (Arm Interrogatory No. 13), Qualcomm has failed to identify any particular harm that Qualcomm claims to have suffered as a result of Arm's alleged breach of ████ of the QC ALA other than to repeat its allegation from the complaint that Qualcomm was "forced to (1) expend extra time and resources, including Qualcomm engineers, to run ACK tests to verify compliance with the Arm ISA, and (2) use their own engineers to address issues that would have been addressed by Arm's patches." *See* Qualcomm's Resp. to Arm Interrog. No. 1.

To the contrary, Arm's alleged withholding of OOB and ACK patches (which Arm disputes, and which does not constitute a breach of ████ of the QC ALA, including for the reasons explained in Arm's response to Qualcomm Interrogatory Nos. 1 and 5) did not prevent Qualcomm from completing the verification process for Nuvia-based custom CPU designs, nor did it prevent Qualcomm from releasing products that incorporate those CPU designs. Moreover, Qualcomm released its products incorporating Nuvia-based custom CPU designs on time or even ahead of schedule. For example, Nuvia's President and Founder and Qualcomm's current Senior VP of Engineering, Gerard Williams, who is the head of Qualcomm's CPU design and engineering team and manages the Qualcomm team responsible for verifying that Qualcomm's custom CPU designs

are compliant with Arm's architecture, testified that ███████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████. *See, e.g.,*

G. Williams Dep. Tr. (Rough) at 3, 8–9, 54–58.

Likewise, Qualcomm's TLA allegations demonstrate that ████████ of the TLA is an

unenforceable penalty clause. ███████████████████████████████████

██████████████████ However, there is no dispute that Arm made offers for a

license to the ████████████ cores in October 2024 and therefore satisfied its obligation

under ███████████████████████████████████████

█████████████ *See, e.g.,* QCVARM_0617829.  Arm's witnesses have also repeatedly

confirmed at deposition that Arm ██████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████ Arm hereby incorporates by reference the testimony

of Ehab Youssef and Karthik Shivashankar, and the forthcoming testimony of Jeff Fonseca and

Akshay Bhatnagar.  Further, as to ████, Arm also confirmed that it did not "███████████

███████████████████████████████████████████████████████

████████████" when it made licensing renewal offers to Qualcomm in October 2024 for

██████████████, as Arm and Qualcomm ███████████████████████

███████████████. ARMQC_02772246.

Even if Qualcomm could overcome the contractual limitations on liability discussed above

in the TLA and ALA, it cannot establish that Arm's alleged conduct was the but-for or proximate

A0285

9

cause of any harms that Qualcomm allegedly suffered. There is no relationship (let alone a reasonable relationship) between ███████████████████████ and the *de minimis* damages, if any, that Qualcomm alleges to have suffered. If Qualcomm were to ████████████████

████████████████████████████████████████████████

███████████████████████████████████. *See, e.g.,* ARMQC_02771200

████████████████████████████████████████████████

███████████████████████████████████████████. Such a windfall to Qualcomm would be unreasonably large and completely out of proportion to any alleged harm to Qualcomm. Likewise, to date, Qualcomm has failed to show its supposed damages or harm due to Arm's alleged actions. To the extent Qualcomm attempts to do so in the future, that quantification will only further confirm that ████████ of the QC ALA and the QC TLA are unenforceable.

Further, ██████████████████████ was not the result of a reasonable endeavor by the parties to estimate a fair compensation to Qualcomm in the event of Arm's alleged breach of ████████ During the parties' negotiation of the QC ALA and the QC TLA, the parties described

████████████████████████████████████████████████

████████ *See, e.g.,* QCARM_3419636; QCARM_3419788; QCARM_3421025; QCARM_3421029; QCARM_3961297; QCARM_3961355; QCARM_3961358; QCARM_7428754; QCARM_7431828; QCARM_7431832.

Arm further incorporates by reference the testimony of all witnesses that have been deposed in the case to date, including those specifically referenced herein.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

A0286
10

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 (JULY 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARM_00095578, ARM_00095579, ARM_00085679, ARM_00085680, ARM_00111449, ARM_01228027, ARM_01228031, ARM_01228035, ARM_01228039, ARM_01228043, ARM_01228044, ARM_01228048, ARM_01228049, ARM_01228053, ARM_01228054, ARM_01228058, ARM_01228059, ARM_01228063, ARM_01228064, ARM_01228073, ARM_01228074, ARM_01228075, ARM_01239440, ARM_01239441, ARM_01239442, ARM_01239444, ARM_01239445, ARM_01239447, ARM_01239448, ARM_01239449, ARM_01239451, ARM_01239452, ARM_01239453, ARM_01239458, ARM_01239459, ARM_01239464, ARM_01239465, ARM_01239470, ARM_01239471, ARM_01239472, ARM_01239473, ARM_01239474, ARM_01239475, ARM_01239476, ARM_01239477, ARM_01239478, ARM_01239479, ARM_01239483, ARM_01239485, ARM_01239486, ARM_01239488, ARM_01239503, ARM_01239504, ARM_01239506, ARM_01423231, ARM_01423342, ARM_01423234, ARM_01423345, ARM_01423238, ARM_01423349, ARM_01423239, ARM_01423350, ARM_01333009, ARMQC_02601210, ARMQC_02603580, ARMQC_02603581, ARMQC_02603582.

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A0288**

(213) 892-5348
nfung@mofo.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A0290**

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A0291**
2

# Exhibit 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED, )
a Delaware corporation, )
QUALCOMM TECHNOLOGIES, INC., )
a Delaware corporation, )
) C.A. No. 24-490-MN
Plaintiffs, )
)
v. ) **JURY TRIAL DEMANDED**
)
ARM HOLDINGS PLC., f/k/a ARM LTD., ) **REDACTED – PUBLIC VERSION**
a U.K. corporation, ) **Original Filing Date: June 3, 2025**
) **Redacted Filing Date: June 9, 2025**
Defendant. )

## SECOND AMENDED COMPLAINT

Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm") complain and allege as follows against Defendant Arm Holdings PLC, formerly known as Arm Ltd. ("Arm").[1]

## NATURE OF THE ACTION

1. This case arises out of the latest chapter in Arm's campaign to stifle competition and technology innovation by impeding the efforts of its longtime business partner Qualcomm to deliver leading computer chips to its customers and consumers around the world. For years, Arm has received substantial royalties from licensing Qualcomm to design and sell products containing custom central processing units ("CPUs") compatible with Arm's instruction set architecture

---

[1] On March 13, 2024, Qualcomm filed its Answer and Defenses to ARM's Complaint and Second Amended Counterclaims. *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 13, 2024), D.I. 300. This filing contains additional background on Arm's attempt to preclude Qualcomm's custom central processing units from competing with Arm's own central processing units. The background allegations are set forth in paragraphs 1-47 and 175-273 of the redacted and publicly available pleading. Redacted Answer & Defenses to Arm's Compl. & 2d Am. Countercls., *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 22, 2024), D.I. 306.

("ISA"). But following its acquisition by the venture capital firm SoftBank Group and its failed sale to NVIDIA, Arm attempted to shift its business model away from licensing its ISA for use by companies like Qualcomm that design CPUs, and toward forcing customers to buy only Arm's own CPU designs. Qualcomm's license, however, stands in the way of Arm's effort to push aside the makers of custom CPUs: Qualcomm's license extends until 2033, and Qualcomm's Arm-compatible microprocessors lead the industry in numerous applications. At the direction of SoftBank and its chairman and CEO, Masayoshi Son, Arm thus sought to disrupt Qualcomm's business. Arm's first move was to sue Qualcomm for allegedly breaching a license that Arm had previously granted to a company Qualcomm acquired but to which Qualcomm was not a party, demanding that Qualcomm cease distributing its groundbreaking microprocessors. As soon as Arm filed that lawsuit, it blitzed Qualcomm's major customers with letters publicizing the lawsuit, accusing Qualcomm of breaching "the Arm license agreement," and threatening that it would "work vigorously to protect what is rightfully ours." And eight months later, Arm sent another round of letters to Qualcomm's largest customers, using language Arm's CEO has admitted under oath was "confusing" and "misleading" to create the false impression that Qualcomm was clearly in breach of its agreement. Then, on the eve of trial in that case, Arm sent Qualcomm a notice of material breach purporting to have the right to terminate Qualcomm's own license after 60 days the day after the trial was scheduled to end. That laid bare Arm's intentions from the beginning: to attempt to get out of its license with Qualcomm in any way possible so Arm could eliminate alternatives to Arm's own competing CPU designs.

2.    For decades, Arm has developed and licensed intellectual property relating to chips. Arm has pursued that business through two distinct models: *first*, by licensing other companies to

2

**A0294**

use Arm's ISA  the set of commands that determines how software controls a CPU[2]  and *second*, by licensing its own CPU designs so that other companies can make and sell products that use Arm's ready-made designs.  Unlike other companies that developed a proprietary ISA used only on those companies' own chips, Arm followed a distinctive, "industry-described neutral, open licensing approach"[3] of "licensing its designs to all comers."[4]  That open approach encouraged widespread adoption of Arm's ISA and also its designs.  Arm's ISA  which Arm CEO Rene Haas describes as "the most ubiquitous computer architecture on the planet"[5]  is used by practically every smartphone, most "internet of things" ("IoT") devices, many automobiles, and an increasing number of personal computers and datacenter servers.  Arm claims that companies using its ISA have shipped 270  *illion* chips as of January 2024.[6]

3.      One of these customers was Qualcomm, which has licensed Arm technology since 1997.  As relevant here, Qualcomm and Arm entered into an architecture license agreement or "ALA" in 2013 (the "QC ALA"), which licensed Qualcomm to develop and sell custom-designed

---

[2]    An ISA acts as an interface between CPU hardware and software.  These instructions describe the high-level attributes of the CPU, such as the supported computer instructions.  It consists of a set of a few thousand instructions (for example, "add," "multiply," "load," and "store") and a few hundred registers, which are the places where information can be read, written, or operated upon, by the instructions, which compatible software will recognize.

[3]    Compl.  5, *In t e Matter of Nvidia Cor . oft an  r .  Arm  Ltd.*, Docket No. 9404 (FTC filed Dec. 2, 2021) (hereinafter "FTC Complaint").

[4]    Stephen Nellis et al., *Nvidia s Arm Deal  ar s Quic  ac las  in C i  Industry*, Reuters (Sept. 14, 2020, 1:24 AM), https://www.reuters.com/article/technology/nvidias-arm-deal-sparks-quick-backlash-in-chip-industry-idUSKBN2650GT/.

[5]    Tim Bradshaw, *Rene   aas   Arm   as t e Most    i uitous Com uter Arc itecture on t e Planet* , Financial Times (June 7, 2024), https://www.ft.com/content/5b191c4c-119f-4f97-bc61-622d20bfa46d (quoting Rene Haas).  ARM claims that "[a]bout 99  of premium smartphones are powered    by    Arm."    *Consumer    Tec nolo ies    mart ones*,    Arm, https://www.arm.com/markets/consumer-technologies/smartphones (last visited Dec. 9, 2024).

[6]    *Arm   T e  Tec nolo y   oundation  for  AI  Every  ere*, Arm (Jan.  8,  2024), https://newsroom.arm.com/blog/arm-ai-everywhere.

3

CPUs that are compatible with the Arm ISA but are otherwise the product of Qualcomm's own engineering work. Qualcomm has also entered into a technology license agreement ("TLA") authorizing Qualcomm to make and sell products, including systems-on-a-chip ("SoCs") that use Arm's ready-made CPU designs.

4. In recent years, Arm has apparently grown dissatisfied with its longstanding open, neutral business model. Following its acquisition by SoftBank and the failure of an attempted sale to NVIDIA, Arm is now grasping for any means — fair or foul — of padding its bottom line and stock price. Eager to cash in on the ubiquity of — and lack of any viable alternatives to — the Arm ISA, and as urged by SoftBank and Son, Arm has begun turning the screws on its customers, substantially increasing the royalty rates it demands to use the Arm ISA. Nor is Arm content to simply increase the rates it charges architecture licensees like Qualcomm. Instead, it has sought to capture a greater share of the chips that power devices compatible with the Arm ISA — and thus the greater royalty rates it can obtain by licensing chip designs (or indeed, by selling chips themselves).

5. Qualcomm now stands as an obstacle to Arm's ambition to raise prices and eliminate alternatives for customers. Qualcomm has developed innovative products enabled by its custom-designed, high-performance, low-power CPUs, which utilize a novel microarchitecture and related technologies to deliver significant increases in both performance and efficiency. Those innovative products pose a serious obstacle to Arm's ambition to control more links in the computer-chip value chain. Unable to compete fairly with Qualcomm, Arm has employed a series of wrongful tactics in an attempt to stifle Qualcomm's technological leaps in CPU design, to force Qualcomm to continue to use Arm's off-the-shelf CPUs, and to coerce Qualcomm into renegotiating the QC ALA, despite it being in effect for years to come, on terms substantially more

4

**A0296**

favorable to Arm — or simply to nullify that agreement. Indeed, Arm's tactics are part and parcel of a broader effort to enable the company to escape its existing ALAs and thereby to ensure that devices compatible with the Arm ISA run on Arm chips.

6.      Some of Arm's maneuvers resulted in a trial that took place last year before this Court. *ee Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del.) (hereinafter "*Arm* v. *Qualcomm*"). That case arises primarily from Arm's attempt to use Qualcomm's acquisition of the startup NUVIA Inc. ("NUVIA") as a pretext for escaping the QC ALA. NUVIA was founded by a world-class engineering team that set out to design better chips for use in datacenters. In 2021, Qualcomm acquired NUVIA for  1.4 billion, intending for this team to help drive innovation across Qualcomm's product segments, including in laptops and other personal computers ("compute"), smartphones ("mobile"), and the digital cockpits and driver-assistance systems that are increasingly common in cars and trucks ("automotive"). Arm could have treated that acquisition as an opportunity to grow the use of the Arm ISA in new markets but instead regarded the acquisition as a competitive threat, whose benefits should be eradicated.

7.      *irst*, Arm asserted, with no legal or contractual basis, that following Qualcomm's 2021 acquisition of NUVIA, Qualcomm needed Arm's consent to transfer NUVIA's technology to Qualcomm. Arm took the position that this allegedly necessary "transfer" would require Qualcomm to pay hundreds of millions of dollars in "fees" and much higher royalty rates for the duration of the QC ALA. Arm later claimed that, absent agreement to its terms, Qualcomm's use of *any* technology started by NUVIA engineers — including in products that Qualcomm began developing after the NUVIA acquisition, such as the Snapdragon®  -Elite — violated a license agreement between Arm and NUVIA that Qualcomm was not using and that Arm ultimately terminated. This made no sense. Qualcomm has its own license agreements for Arm technology

5

and information that allowed it to develop and provide custom Arm-compliant cores and products incorporating such cores to its customers (including the Snapdragon®  -Elite and Snapdragon® 8-Elite) for many years to come.  Qualcomm did not need Arm's consent to develop and market this technology.[7]

8.      econd, Arm filed the meritless *Arm* v. *Qualcomm* action against Qualcomm, claiming that Qualcomm and NUVIA breached NUVIA's terminated agreements with Arm, despite Qualcomm not even being a party to those agreements, and infringed Arm's trademarks by marketing custom CPUs years after the NUVIA acquisition.  In that action, Arm is demanding that Qualcomm destroy these groundbreaking CPU products that Qualcomm developed after the NUVIA acquisition and in accordance with the Qualcomm/Arm agreements   even though Arm has repeatedly admitted that it suffered no actual harm as a result of the conduct allegedly forming the basis of its claims.[8]

9.      *T ird*, Arm and Son promoted the *Arm* v. *Qualcomm* lawsuit to Qualcomm's customers to sow fear, uncertainty, and doubt by suggesting that customers could not rely on Qualcomm as a supplier and could be subject to retaliation by Arm if they did, including by misrepresenting the terms of Qualcomm's licenses with Arm to Qualcomm's customers.[9]  Arm took further action in an attempt to disrupt Qualcomm's business relationships by sending emails to Qualcomm's customers on two separate occasions that misrepresented the terms of the NUVIA

---

[7]   Compl., *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Aug. 31, 2022), D.I. 1.

[8]    *ee* Redacted Answer & Defenses to ARM's Compl. & 2d Am. Countercls.   29, 31-37, *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 22, 2024), D.I. 306; Joint Letter re Bench or Jury Trial, *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 25, 2024), D.I. 308; Redacted Mar. 5, 2024 Hr'g Tr. 38:20-39:8, *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 26, 2024), D.I. 312-1.

[9]   Redacted Answer & Defenses to ARM's Compl. & 2d Am. Countercls.   255-70, *Arm* v. *Qualcomm*, D.I. 306.

6

agreements and misleadingly implied that Qualcomm was required to destroy the custom CPUs that it was working on.

10. Qualcomm was vindicated in the *Arm* v. *Qualcomm* action, in which the jury found that Qualcomm had not breached NUVIA's agreements and that Qualcomm's products were properly licensed under the QC ALA.[10]

11. This complaint seeks redress for further bad-faith conduct in which Arm has engaged in an attempt to pressure Qualcomm to cave to its demands. That conduct includes refusing to perform certain of its obligations under the QC ALA and QC TLA and continuing to wrongfully interfere with Qualcomm's relationships with current and prospective customers.

### Arm Withheld Deliverables in Breach of Its Obligations Under the QC ALA

12. Arm deliberately withheld deliverables to which Qualcomm is entitled under the QC ALA with Arm under the guise that the QC ALA does not entitle Qualcomm to support for "Nuvia-based technology." Arm's excuse is unjustified, and its breach could not be clearer.

13. Qualcomm first suspected that Arm was withholding QC ALA deliverables in the fall of 2022. At that point, Qualcomm sent a written notice of failure to deliver, but because certain deliverables were solely within Arm's actual knowledge and control, Qualcomm had no way of knowing what exactly was being withheld, if anything, or for how long it had been withheld.

14. Arm capitalized on this lack of transparency, with its General Counsel stating definitively that ███████████████████████████ Arm further stated that Qualcomm ███ ███████████████████████████████ under its ALA applicable to Nuvia-based technology like the design for which Qualcomm improperly seeks" deliverables. Here again, Arm

---

[10] Verdict Form, *Arm* v. *Qualcomm*, D.I. 572.

was exerting its leverage in an attempt to force Qualcomm to acquiesce in its unwarranted demands.

15.    Arm went on to state that Qualcomm's written notice was a "███████████" to cause Arm "██████████" because "██████████████████" was at issue, which Arm purported was "████████████████████████████████████████████

████████████████"    ████████████████████████████████████████████.

Additionally, Arm threatened Qualcomm that, if Qualcomm availed itself ██████████████

████████████████████████████, Arm would harm Qualcomm, including by terminating Qualcomm's multiple licenses with Arm.

16.    Arm's statement that "████████████████████████████████" was not true, and its purported desire to uphold the "language, spirit, and purpose of the ALA" was a charade. Discovery conducted in *Arm* v. *Qualcomm* revealed incontrovertible evidence that Arm not only had the deliverables in question, but that, at the time Qualcomm sent its written notice of failure to deliver, Arm was intentionally withholding those deliverables from Qualcomm as part of a negotiating tactic related to the parties' dispute over the use of technology acquired from NUVIA.

17.    Arm never cured its failure to deliver, causing Qualcomm to expend additional, unnecessary resources in designing and verifying its products.

18.    Arm's failure to deliver violated the QC ALA, which ██████████████████████

████████████████████████████████████████████████ under that agreement. Under the QC ALA, if Arm is found to be in breach of Section ██ of the QC ALA, it must ██████████████████████████████████████. If Arm fails ██████

██████████████████████████████████ pursuant to Section ██████

8

**A0300**

███████████████████████████████████████████████████

██████████████████████████.

19.   Arm's withholding of deliverables and deliberate decision not to cure the issue ███████████████████████████████ is a material breach of the QC ALA.  Accordingly, Qualcomm is entitled to financial damages, including but not limited to ███████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████

### *Arm Violated the QC TLA By Refusing to License Qualcomm CPU Cores*

20.   Arm failed to uphold its obligations under the QC TLA by refusing to offer licenses to its off-the-shelf cores at commercially reasonable prices to Qualcomm.  Arm's actions are violations of licensing provisions negotiated between the parties.

21.   For example, in April 2024, Qualcomm submitted requests to renew licenses from Arm for off-the-shelf cores Cortex-A720 (codenamed "████") and Cortex-A520 (codenamed "████").  Despite repeated follow-ups over the following several months, Arm refused to provide any licensing offer for either core.

22.   In August 2024, Qualcomm submitted a request to Arm to renew a license to Arm's off-the-shelf core Cortex-M55 (codenamed "████").  Arm once again refused to provide a licensing offer for the ████ core and continued to refuse to provide a licensing offer for the ███████████ cores.

23.   Given Arm's prolonged refusal to engage, Qualcomm's General Counsel sent Arm a notice of breach of, and non-compliance with, the QC TLA on September 20, 2024.  Qualcomm sent a second notice on September 27, 2024 when Arm failed to provide confirmation of having received the initial letter.

9

**A0301**

24.    Arm waited nearly a month to respond to Qualcomm's notices of non-compliance. In its October 23, 2024 response, Arm's Chief Legal Officer wrote that Arm did not ███████ █████████████████████████████████████████████████ Despite the clear indication that Arm did not intend to proceed ████████, ████████████████████ ████████████████████.

25.    Arm subsequently provided Qualcomm with a licensing offer for the requested cores and microcontroller. As Arm must have been aware, its proposal was extreme and clearly not commercially feasible for Qualcomm. Arm's proposal was a constructive failure to offer a license ██████████████████████████. Under the terms of the QC TLA, ████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████.

26.    As with the QC ALA, ████████████████████ ████████████████████, which Qualcomm sent in September 2024. ████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████.

10

27.    Arm's proposal violated the QC TLA by presenting financial terms that were so exorbitant as to be commercially unreasonable and not ███████, and therefore a constructive failure to offer a license. It also greatly exceeded ████████████████████████

████████████████████████████████████

Furthermore, Arm's proposal failed to comply with the QC TLA by ████████████████

███████████████████████████████████

28.    Arm has refused to offer commercially reasonable terms for any of the requested cores, and has thereby failed to cure its breach of the QC TLA.

### Arm Threatened to Terminate the QC ALA Without Basis

29.    Apparently seeking to ratchet up pressure on Qualcomm before trial in *Arm* v. *Qualcomm*, on October 22, 2024, Arm sent Qualcomm—and leaked to the media—a letter (the "Breach Letter") asserting that Qualcomm is in material breach of the QC ALA for allegedly developing and marketing "unlicensed cores," and claiming that Arm will be entitled to terminate the QC ALA if Qualcomm does not capitulate to Arm's demands for a "cure" within 60 days. Those demands, which had no basis in the agreement, included that Qualcomm should "at a minimum" stop development of any CPUs that use any designs, technology, or code created by NUVIA employees; cease requesting ████████████████ for any such CPUs; cease manufacturing and selling such CPUs; and cease manufacturing or selling CPUs that Arm has refused to validate and verify. The Breach Letter also demanded, without support in the QC ALA or the law, that Qualcomm withdraw its claims against Arm in this case for Arm's breach of its delivery obligations under Section ███

30.    Arm's assertion that Qualcomm was in material breach of the QC ALA lacked any basis in that agreement. The premise of Arm's Breach Letter was that certain Qualcomm CPU cores allegedly contain aspects of designs that were started by NUVIA employees. But the QC

11

ALA does not prohibit Qualcomm from acquiring nascent microarchitecture technology and using that technology to develop Qualcomm CPUs. And it certainly does not permit Arm to terminate the QC ALA as payback for Qualcomm's suing to protect its rights under that agreement. Because Qualcomm has not committed a " ███████████████████████████ " Arm has no right to terminate the QC ALA, and any purported termination of that agreement is null and void.

31.    Moreover, Arm's claim of a material breach was inconsistent with Arm's own conduct throughout this dispute. Arm has known since at least 2021 that Qualcomm would be acquiring NUVIA and using the technology that Arm now belatedly claims was improperly licensed. Yet for three years, Arm took no steps towards attempting to terminate the QC ALA and stood by while Qualcomm, through significant investments of time and money, developed and brought to market innovative products featuring Qualcomm's custom CPUs. Arm's belated threat to terminate the QC ALA on the eve of trial and while Qualcomm was announcing new products based on its high-performance custom CPUs demonstrates that Arm's claim of a material breach was a pretext to justify Arm's true aim: escaping the QC ALA and other ALAs so Arm can attempt to dominate the market free from competition from Qualcomm and other designers of custom CPUs.

### *Arm Continues to Wrongfully Attempt to Injure Qualcomm's Business*

32.    Arm's Breach Letter was the latest installment of Arm's longstanding efforts to undermine Qualcomm's market position and to interfere with Qualcomm's relationships with current and prospective customers.

33.    The Breach Letter was not only legally groundless, but also timed and publicly released in an effort to damage Qualcomm's business. Arm sent the Breach Letter to coincide with Qualcomm's annual Snapdragon® Summit, where Qualcomm unveiled an SoC that offers

12

**A0304**

greater CPU performance and efficiency than those offered by Qualcomm's competitors, including those competitors that use Arm off-the-shelf products in their SoCs.  To ensure that the Breach Letter reached Qualcomm's customers, Arm also promptly leaked it to Bloomberg, which published a story on the threatened termination that very day.[11]  Arm did so knowing that Qualcomm's customers would likely be concerned that termination of the QC ALA could destabilize their own supply chains, because Arm's actions implied, despite the actual terms of the QC ALA, that Arm could and would impede Qualcomm's ability to deliver the SoCs its customers ordered, and that Qualcomm's customers might even face intellectual-property litigation brought by Arm.  Both the timing and the disclosure of the Breach Letter were thus calculated to interfere with Qualcomm's customer relationships and prospective business opportunities.

34.    The Breach Letter was also timed to interfere with *Arm* v. *Qualcomm*.  In the Breach Letter, Arm threatens that it "shall be entitled" to terminate the QC ALA on December 21, 2024 the day after trial in *Arm* v. *Qualcomm* was expected to conclude.  Arm's counsel's statements to this Court that termination would not be "automatic" after 60 days, that he "hope[d] that there are discussions between the parties," and that the Breach Letter could prompt the parties to "evaluat[e] their positions" underscore that Arm sent the Breach Letter to pressure Qualcomm to accede to Arm's unjustified demands.[12]  Arm's wrongful tactics have harmed Qualcomm.  Following Arm's bad-faith claim that Qualcomm has breached the QC ALA and leak of the Breach Letter, important Qualcomm customers delayed entering into new (or renewing existing) contracts with Qualcomm or have insisted that Qualcomm provide them with additional commitments regarding its ability to

---

[11]  Ian King, *Arm to Cancel Qualcomm C i  Desi n License in  eud Escalation*, Bloomberg (Oct. 22, 2024, 8:17 PM), https://www.bloomberg.com/news/articles/2024-10-23/arm-to-cancel-qualcomm-chip-design-license-in-escalation-of-feud.

[12]  Oct. 30, 2024, Hr'g Tr. 39:14-40:2, *Arm Ltd. v. Qualcomm  Inc.*, C.A. No. 22-1146 (D. Del. Nov. 7, 2024), D.I. 513.

13

**A0305**

deliver licensed products. Arm's campaign not only deprived Qualcomm of the ability to finalize these business opportunities promptly and without providing additional commitments, but also required Qualcomm executives and employees to spend considerable time responding to and alleviating customer inquiries. None of those demands would have existed but for Arm's wrongful conduct.

35.    At trial in the *Arm* v. *Qualcomm* case, Arm continued to misrepresent its relationship with Qualcomm and its position in the marketplace. Arm's Chief Executive Officer, Rene Haas, repeatedly stated that Arm did not view Qualcomm as a competitor because Arm did not build or sell semiconductor chips in the marketplace, which Mr. Haas stated would amount to direct competition between the companies. Despite Mr. Haas' sworn statements denying Arm's involvement in chip development, Arm is now in the process of designing and distributing its own semiconductor chips.[13] Moreover, Arm "sought to hire executives from its customers as early as November," several weeks before Mr. Haas' sworn testimony in court.[14] Specifically, Arm's recruiter told the customer executive that this new position will help with Arm's "transformation from solely designing processor architecture (IP) to also selling its own silicon."[15] To facilitate its entry into selling its own chips, Arm now seeks to force Qualcomm—which would otherwise be a competitor—out from the marketplace.

36.    Following Qualcomm's victory at trial in *Arm* v. *Qualcomm*, on January 8, 2025,

████████████████████████████

---

[13] *Arm recruits from customer as it plans to sell its own chips*, Stephen Nellis and Max Cherney, REUTERS,    https://www.reuters.com/technology/arm-recruits-customers-it-plans-sell-its-own-chips-2025-02-13/ (Feb. 13, 2025).

[14] *Id.*

[15] *Id.*

14

██████████████████████████████████████████████████████████."

But even then, Arm confirmed that it was not abandoning its efforts to obstruct Qualcomm's developments of custom cores, insisting that ████████████████████████ ████████████████████████ Moreover, Arm sought to prevent Qualcomm from curing the impression created in the market by its deliberate leak of the Breach Letter, ███████████████████████████████████████████ ████████████████████

37.    Arm's non-compliance with its contractual obligations to Qualcomm should be seen for what it is: the latest in a series of anti-competitive maneuvers intended to force Qualcomm to renegotiate an existing, long-term license agreement that Arm's current management views as disadvantageous, and to frustrate Qualcomm's efforts to design and deliver industry-leading technology. Arm's tactics—its refusal to provide technology it is contractually obligated to deliver and its attempts to undermine customers' confidence in Qualcomm—should be wholly rejected.

### THE PARTIES

38.    Plaintiff Qualcomm Incorporated is a Delaware corporation with its principal place of business in San Diego, California. Qualcomm is a leading technology innovator in mobile communication products and the driving force behind the development, launch, and expansion of 5G technology. Qualcomm's foundational technologies enable the mobile ecosystem and are found in every 3G, 4G, and 5G smartphone. Qualcomm brings the benefits of mobile to new industries, including automotive, IoT, and computing, where Qualcomm's technology has driven the convergence of PC and mobile technology to increase productivity, connectivity, and security in portable laptops.

39.    Plaintiff Qualcomm Technologies, Inc. is a Delaware corporation with its principal place of business in San Diego, California. Qualcomm Technologies is a wholly owned subsidiary

15

A0307

of Qualcomm Incorporated and operates, along with its subsidiaries, substantially all of Qualcomm's engineering and research and development functions, and substantially all of its products and services businesses, including its QCT semiconductor business.

40.     Defendant Arm Holdings PLC is a U.K. corporation headquartered in Cambridge, United Kingdom.

## JURISDICTION AND VENUE

41.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds 75,000.

42.     Venue is proper in the District of Delaware under 28 U.S.C. 1391(c)(3) because Arm is "a defendant not resident in the United States" and therefore can be "sued in any judicial district." Arm has also consented to and availed itself of the District of Delaware by suing Qualcomm in the District of Delaware.[16]

## FACTUAL ALLEGATIONS

### I.     ARM LICENSES AND T E CUSTOM CPU MAR ET

43.     Arm is in the business of developing and licensing technology for processors used in a variety of different products, including, but not limited to, servers, mobile phones, and cars. Arm's licensing model has been based on receiving both upfront license fees and royalties, the amounts of which are negotiated with each licensee. For many years, Arm has offered different types of license contracts, of which two are at issue in this case: ALAs and TLAs.

---

[16]  ee  enerally Compl., *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Aug. 31, 2022), D.I. 1.

16

### A.   ALAs and the Arm ISA

44.   An ALA grants licensees the right under Arm's intellectual property to design their own custom Architecture Compliant Cores using specific licensed ISA technology and to manufacture, sell, and distribute Arm Compliant Products incorporating such cores.[17]

45.   CPU cores (also known simply as cores) are a particular component of SoCs, which are integrated circuits used in cellular phones, computers, and other devices that combine several technologies used in such products into a single chip.  A core or CPU performs processing within the SoC.

46.   An Arm Compliant Core is compatible with the Arm ISA.  As a general matter, an ISA lists the instructions that allow hardware (like SoCs) to interface with software programs.  Application and software developers create their products to be compatible with particular ISAs.  As a result of greater investment in Arm-based systems by hardware companies like Qualcomm and software developers, the Arm ISA is now "ubiquitous" and used in practically every premium smartphone, as well as a large percentage of automobiles and IoT devices and a growing number of personal computers and datacenter servers.

47.   The Arm ISA allows for software compatibility across all Arm-compatible products, as those products can receive the same inputs (instructions) and, for each of those inputs, determine and output the proper result.  The Arm ISA does not tell a designer how to design or build a CPU core, nor any of the internal design features that deliver superior performance and make a CPU competitive.

---

[17] ████████████████████████████████████████

48.	To make a CPU that then can execute the Arm ISA and therefore run applications and other software that have been written to be compatible with that ISA, the CPU developer must design and build a complicated integrated circuit consisting of billions of transistors connected into arrays that form larger, interconnected blocks.  Building a CPU requires detailed micro-architectural know-how and expertise in multiple disciplines unrelated to the ISA, and requires expertise in cache design, branch prediction techniques, prefetchers, memory coherency/consistency paradigms, dependency resolution logic, schedulers, power delivery, power measurement and management, clocking methodology, and many other areas.

49.	A CPU developer developing a custom CPU designs *how* the core is built, *how* it performs, and *how* it executes the CPU's instructions.  There are a virtually infinite number of ways to design and build CPUs that can implement the Arm ISA.  Companies that design custom CPUs employ armies of engineers who make countless design choices and tradeoffs to improve the size, computing performance, power consumption, heat dissipation, and other important features of CPUs.  Many of these design choices are driven by the requirements of the product segment the designer is targeting  CPUs for mobile applications can have different design priorities than those for laptop computers or automobiles.

50.	Under an ALA, Arm does not deliver any specific Arm design or tell the licensee how to make the CPU.  That technological development and innovation   and the resulting product that may meet or fail the performance benchmarks necessary to succeed in the marketplace   is left to the licensee.  As Arm has publicly acknowledged, "the creation of an optimized CPU is very costly and time consuming," and Arm therefore "expect[s] the number of new [ALA] licensees for this technology to diminish over time as the effort required on their part to provide the

**A0310**

customization often does not provide a reasonable return on investment."[18]   If the licensee is willing to put in the extraordinary effort and investment to develop a custom CPU, however, an ALA licensee may develop differentiated CPUs, including differentiation from CPUs developed and marketed by Arm.  Arm has executed ALAs with Qualcomm and a number of other companies.

**B.     TLAs  nd O     e S  e  CPUs**

51.     In addition to granting licensees rights under ALAs to make custom-designed products that are compatible with the Arm ISA, Arm also designs "off-the-shelf" CPUs and other peripheral intellectual property ("IP") that customers may license through a TLA.  Under a TLA, Arm delivers complete processor core designs that a licensee can incorporate into a larger SoC design, saving the licensee the trouble and expense of designing its own CPU.  In addition to CPUs, Arm also designs, and licenses under the TLA, peripheral IP, which is technology used in SoCs to perform specific functions and interface with the CPU.  This peripheral IP takes a variety of forms, such as "interconnects" that facilitate the transfer of information between different components of an SoC or various pieces of software that are incorporated into a semiconductor chip as a means of certifying safety capabilities of the chip.  Recently, Arm has placed greater emphasis on licensing off-the-shelf CPU technology, including by launching a "Compute Subsystems" business that offers integrated designs that pair CPUs with other technology  all in exchange for "significantly higher royalty rates" than Arm receives for licensing its ISA.[19]

52.     But reliance on Arm's off-the-shelf CPU designs comes at a cost, both financially and with regard to performance.  Reflecting that the TLA license delivers a complete, ready-made design, Arm charges substantially higher royalties for the use of its off-the-shelf cores than it

---

[18]   Arm Holdings, Ltd., Registration Statement (Form F-1) (Aug. 21, 2023) at 86, 131.

[19]   *Id.*

19

charges for a license to the Arm ISA. Moreover, when an SoC developer uses stock Arm CPU designs, it may have difficulty differentiating its product from those offered by rivals that also license Arm CPU designs. And when Arm fails to keep up with the state of the art in CPU design and performance, as it has in recent years, any licensor of Arm's off-the-shelf cores may have difficulty building and marketing SoCs that can compete against those with more advanced custom CPUs.

## II.    QUALCOMM'S RELATIONS IP IT ARM AND CUSTOM CPU INNOVATIONS

53.    Founded in 1985, Qualcomm was created with the goal of building "QUALity COMMunications." Qualcomm is a world leader in the design and production of semiconductor microchips, including SoCs. Qualcomm's chips power cellphones, computers, and an increasing number of other modern machines. Qualcomm is also in the vanguard of new chip technologies, and the company's current "5G" technology is ushering in a new age of connectivity and speed for wireless devices.

54.    Qualcomm continues to invent foundational technologies that transform how the world connects, computes, and communicates. In addition to its ground-breaking innovations in wireless technology, Qualcomm designs platforms, chipsets, software, tools, and services that help Original Equipment Manufacturers ("OEMs") and developers bring those technologies into products that change the way we live, including industry-leading smartphones with powerful functionality, laptops with built-in cellular and 5G connectivity and long-lasting battery life, and connectivity, infotainment, and Advanced Driver Assistance Systems products for the automotive industry designed to deliver connected experiences that are safer and customizable. Included among these products are custom CPUs and SoCs used in many different end technologies, including cell phones, cars, laptops, and tablets.

20

## A.      Qualcomm Builds Innovative Arm-Compatible Products.

55.      Qualcomm has held Arm licenses since 1997.  Those licenses include an ALA entered in 2003, and the currently operative QC ALA, ███████████████, which Qualcomm[20] and Arm entered into on May 30, 2013, and Annex 1 to that agreement for Arm v8-A Architecture deliverables.  On June 23, 2020, Qualcomm and Arm entered into an additional Annex 1 to the QC ALA for Arm v9-A Architecture deliverables.

56.      Under the QC ALA and corresponding Annex 1s, Qualcomm has rights, using specific licensed technology, to design, manufacture, sell, and distribute Qualcomm's v8-A and v9 Arm-compatible custom cores, custom Arm ISA-compatible CPU cores, and products incorporating those cores.  ███████████████████████████████

███████████████████████████████████.  Since Qualcomm entered into the QC ALA, Qualcomm has developed and shipped custom Arm ISA-compatible CPUs.

57.      Qualcomm is today one of Arm's largest licensees—it "accounted for 10% of [Arm's] total revenue for [Arm's] fiscal year ended March 31, 2024."[21]  Since 2013, Qualcomm has paid Arm total license fees of ██████ and running royalties of ██████████ under the QC ALA.  Qualcomm has fully complied with its obligations under the QC ALA and has continued to tender royalty payments to Arm (under protest) pending resolution of this dispute.

58.      In recent years, as Arm's off-the-shelf implementation cores have fallen behind custom cores developed by other Arm ALA licensees, it has become more challenging for

---

[20]  The actual party to the ALA and TLA ████████████████████ The terms of the agreements █████████████████████████████████████████████

[21]  ARM Holdings plc, Annual Report for Fiscal Year Ended Mar. 31, 2024 (Form 20-F) at 28 (Aug. 12, 2024).

21

A0313

Qualcomm to compete by relying on Arm-designed cores. In particular, Arm has been unable to provide an implementation core that is competitive in the compute product segment; thus, the need for developing custom CPUs became more critical.

59.    In March 2021, Qualcomm acquired NUVIA, a start-up focused on developing a custom CPU and SoC specifically for use in datacenter servers. At the time of the acquisition, NUVIA had built a team of world-class engineers with unparalleled experience in developing custom CPUs. Qualcomm's goal was to transition the new Qualcomm employees to develop custom CPUs for its primary compute, mobile, and automotive product segments. Qualcomm also planned to continue development of the server CPU and SoC for use in data centers and servers that NUVIA had originally intended to design.

60.    Since acquiring NUVIA and integrating the NUVIA team as Qualcomm employees, Qualcomm spent years developing innovative products with custom-designed CPUs using a novel microarchitecture and related technologies.

61.    Qualcomm's SoCs with custom CPUs compete more effectively against other Arm-compatible products, including those containing off-the-shelf Arm designs, and against rival suppliers of CPUs compatible with other ISAs (notably, Intel's x86). Qualcomm's new products with custom CPUs have drawn praise as being "incredibly potent"[22] and "shockingly fast."[23]

62.    Qualcomm is not alone in its belief that its custom cores offerings will transform and advance the industry. Major industry participants   including Microsoft, Google, Samsung,

---

[22] Aaron Klotz, *na dra on  Elite  eats AMD and Intel  la s i  Mo ile CP s in  ee enc ,* Tom's Hardware (Apr. 2, 2024), https://www.tomshardware.com/pc-components/cpus/snapdragon-x-elite-beats-amd-and-intel-flagship-mobile-cpus-in-geekbench-6-qualcomms-new-laptop-chip-leads-in-single-and-multi-core-tests.

[23] Mark Hachman, *Qualcomm s  na dra on  Elite C i Attracts  n recedented PC Partners i s,* PCWorld (Oct. 25, 2023), https://www.pcworld.com/article/2116395/qualcomms-latest-snapdragon-attracts-huge-pc-partnerships.html.

22

GM, HP, and many others—praised Qualcomm's planned innovations as benefitting their products and end-customers.[24]

**B.    Relevant Provisions of the Qualcomm ALA**

63.    On May 30, 2013, Qualcomm and Arm entered into an Amended and Restated Architecture License Agreement, ███████████████, and Annex 1 to that agreement. The QC ALA is a binding and enforceable agreement.

64.    ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

65.    ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

66.    ████████████████████████████████████████

███████████████████████████████████████████████

---

[24]    *See Qualcomm to Acquire NUVIA*, Qualcomm Inc. (Jan. 12, 2021), https://www.qualcomm.com/news/releases/2021/01/qualcomm-acquire-nuvia.

23

**A0315**



67.

.[26]

## C.    Arm's Evolving Business Model

68.    For years, Arm expressed its commitment to an open, neutral model for licensing the use of its ISA. Under that model, which led to Arm commonly being referred to as the "Switzerland of chips," Arm held itself out as not discriminating against companies that sought to use the Arm ISA.[27] That model benefited the software developers, which could develop software

---

[25] ▮▮▮▮▮ and ▮▮▮▮▮▮▮ are defined terms in the QC ALA. *See* ▮▮▮▮▮

[26] ▮▮▮▮▮▮▮ is a defined term in the QC ALA. ▮▮▮▮▮

[27] FTC Compl. ¶¶ 22-29; *see also* Josh Horwitz, *Relief and Challenges for Chipmakers as Nvidia-Arm Megadeal Collapses*, Reuters (Feb. 8, 2022, 8:21 AM), https://www.reuters.com/markets/us/relief-challenges-chipmakers-nvidia-arm-megadeal-collapses-2022-02-08/ (quoting Arm co-founder Hermann Hauser as stating that "[t]he whole point

24

that would be interoperable across Arm-compatible devices, and ultimately benefited customers. Indeed, Arm continues to tout the benefits of its "broad, standardized software ecosystem," which it claims "ensures diversity and robustness in supply, as well as easy software portability between Arm-based systems."[28]  That model also benefited Arm, leading to widespread adoption of the ISA.  As a senior Arm executive has explained, "[w]hat makes an architecture successful is actually the number of people that use it," as greater adoption of an ISA creates a "virtuous circle" in which the "more people that use your architecture, the more people will want to use it."[29]

69.    After being acquired by SoftBank, however, Arm has pivoted away from that model.  When the chipmaker NVIDIA attempted to acquire Arm in 2020, the proposed acquisition met with harsh responses from regulators and other companies that rely on the Arm ISA, based on fears that NVIDIA could use its control of Arm to undermine its rivals, "including by manipulating levers such as [Arm]'s pricing, the terms and timing of access to [Arm]'s Processor Technology, … [Arm]'s technological developments and features, and [Arm]'s provision of service and support."[30]

70.    When that acquisition fell apart under regulatory scrutiny, Arm pursued a variety of strategies to try to bolster royalty revenues at SoftBank's and Son's behest, including unsuccessful attempts to impose a pricing model under which customers would pay royalties based on a percentage of the retail prices of the end products they made, and to force a major customer

---

about Arm was always that it was the Switzerland of the semiconductor industry, dealing very even-handedly with all of its 500-plus licensees").

[28] *T e Arm Advanta e C oosin Arm Tec nolo y*, Arm.com, https://www.arm.com/company/arm-advantage (last visited Dec. 9, 2024).

[29] Arm, *at Is CP Arc itecture* , YouTube.com (Aug. 18, 2021), https://www.youtube.com/watch_v_KGHdDVLnKJM&t_144s.

[30] FTC Compl.  8.

to renegotiate royalty rates notwithstanding the parties' existing contract.[31]  After releasing a new version of its ISA (v9) that makes only modest, incremental improvements on the prior version (v8), Arm has announced that it will collect double the royalties, and Arm has pressured existing v8 licensees to "upgrade" their licenses to v9 by not releasing or supporting older v8 cores.[32] Indeed, in its calls with investors, Arm routinely touts the increased revenues it expects to collect as a result of widespread adoption of v9.Arm has also attempted to bolster its income    and thus its valuation    by abandoning its historic role of neutral and open licensing of its ISA.  Having made that ISA "ubiquitous" for the entire smartphone and IoT markets and made significant inroads in other sectors, Arm now seeks to leverage that ubiquity to exclude competitors from designing and selling chips that are compatible with the Arm ISA.  Mr. Haas has hinted at precisely that sort of leveraging, explaining that as the company "defining a computer architecture and … building the future of computing," it is "easier" to understand the best ways to integrate hardware and software "if you're building something than if you're licensing IP" because "building something" makes a company "much closer to that interlock" and gives it "much better perspective in terms of the design tradeoffs to make," which is why "if we were to do something, that would be one of the reasons."[33]  Moreover, Arm has also sought to develop more complex, integrated "subsystems" that combine CPUs with other chips and intellectual property.[34]  And it was recently

---

[31]  Wayne Ma & Cory Weinberg, *o  a Lo sided A  le Deal  ot  nder Arm s   in*, The Information (Nov. 29, 2023), https://www.theinformation.com/articles/how-a-lopsided-apple-deal-got-under-arms-skin.

[32]  *Q   E   Results Presentation* at 5, Arm (Feb. 7, 2024), https://investors.arm.com/static-files/c383780b-44f8-42c0-a125-4f6db0b8eb06 (statement of Rene Haas).

[33]  Alex Health, *at Arm s CEO Ma es of t e Intel De acle*, The Verge (Dec. 6, 2024, 4:45 PM), https://www.theverge.com/2024/12/6/24315123/arm-ceo-rene-haas-intel-ai-chips-samsung-changes.

[34]  *Client  olutions  Arm  Com ute  u systems  C   for  Client*, Arm, https://www.arm.com/products/compute-subsystems-for-client (last visited Dec. 9, 2024).

26

reported that, in a "radical change to [Arm's] business model," Arm was planning to launch its own chip by as early as this summer.[35] This transformation from licensing intellectual property to positioning itself primarily as a chip designer creates the potential for Arm to make substantially more money: These businesses "carry significantly higher royalty rates"[36] than merely licensing use of the Arm ISA.

71.     But this transformation also brings Arm into direct conflict with existing licensees and customers. When an architecture licensee like Qualcomm designs a custom Arm ISA-compatible CPU, that CPU does not belong to Arm. Instead, as Arm has publicly acknowledged, those custom CPUs "compete with" and "pose a threat to Arm's implementation IP business"— that is, Arm's effort to position itself as a designer of CPUs.[37]

72.     Arm has thus responded by pressuring customers (such as Qualcomm) to purchase Arm's off-the-shelf CPUs and by attempting to prevent Qualcomm from designing CPUs compatible with the Arm ISA.

## III. ARM UNFAIRLY AND UNLAWFULLY ATTEMPTS TO PREVENT QUALCOMM'S CUSTOM CORES FROM COMPETING WITH ARM'S OWN OFF-THE-SHELF CORES

73.     Developing its own CPUs frees Qualcomm of the need to rely on Arm's off-the-shelf CPU designs. That can both reduce the royalty rates Qualcomm pays Arm— ████████

---

[35] Matthew Garrahan et al., *Arm To Launch Its Own Chip in Move That Could Upend Semiconductor Industries*, Financial Times (Feb. 13, 2025), https://www.ft.com/content/95367b2b-2aa7-4a06-bdd3-0463c9bad008 . According to the report, the chip is "expected to be a [CPU] for servers in large data centres and is built on a base that can then be customized for clients."

[36] *Arm First Quarter Fiscal Year 2025* at 5, Arm (July 31, 2024), https://investors.arm.com/static-files/393afe3f-13ff-4aa8-a4b3-41b1afaa5a91 (statement of Rene Haas).

[37] Initial Phase 2 Submission, Anticipated Acquisition by NVIDIA Corp. of ARM Ltd., U.K. Competition & Markets Authority (Dec. 20, 2021) at 6-7.

27

████████████████████████████████████████—and demonstrate that products using Qualcomm custom CPUs can outcompete products using Arm's off-the-shelf designs. Instead of lauding the advancements on the horizon or viewing the competition as inspiration to develop an even better product for customers and opening new product segments for chips compatible with Arm's ISA, Arm has dug its heels in and endeavored to disrupt Qualcomm's custom cores development by any means necessary—unlawful means included.

A. **Arm Wrongfully Withholds Deliverables Owed to Qualcomm Under the QC ALA.**

74. In an effort to limit competition posed by Qualcomm's custom CPU, Arm breached its contractual obligations to provide Qualcomm with deliverables paid for under the QC ALA.

1. *The QC ALA requires Arm to provide Qualcomm with certain deliverables.*

75. The two contract provisions at issue here—Sections ██ and ██—are clear and unambiguous.

76. Section ██ of the QC ALA requires Arm to "████████████████████████████████████████████" and to "████████████████████████████████████████." Arm is also required to deliver ████ "████████████████████████████." ████████ is defined in the Qualcomm ALA as "████████████████████████████████████████████████████████████" under that agreement.

77. Under Section ██ of the QC ALA, ████████████████████████████████████████████████████████████████████████████:

28

**A0320**



### 2.    *Arm withholds the deliverables.*

78.    Qualcomm first suspected that Arm was withholding ▮▮▮▮▮▮▮ under the QC ALA in the fall of 2022. At that time, Qualcomm was embarking on its verification process for its ▮▮ SoC. As is the customary practice between an ALA licensee and Arm, Qualcomm provided Arm with details about its ▮▮ CPU so that Arm would provide a formal list of agreed Arm Compliance Kit ("ACK") tests for which Arm would expect to see verification data. But Arm withheld the formal list of tests (known as the "OOB") ▮▮▮▮▮▮

▮▮▮▮▮▮

▮▮▮

79.    Qualcomm then attempted to resolve the issue without court intervention.

80.    On October 6, 2022, Qualcomm requested the OOB and various patches (e.g., bug fixes) from Arm. Arm engineer Vivek Agrawal responded on October 10, 2022, writing, "I'll be able to share OOB and various patches after my management has given their approval."

### 3.    *Qualcomm provides written notice of Arm's failure to deliver—but Arm does not cure.*

81.    Almost one month later and after still not having received the deliverables under the QC ALA and for which Qualcomm had provided substantial consideration, on November 3, 2022, Qualcomm notified Arm in writing of its failure to provide certain deliverables, including the OOB, stating explicitly that Arm should take the letter as "Qualcomm's required notice under Section ▮ that Arm is not in compliance with its obligations under Section ▮, and that Arm must cure this breach in accordance with the time and procedures set forth therein."

29

**A0321**

82.     After not hearing from Arm, pursuant to Section ▇ of the QC ALA, Qualcomm sent a follow-up letter on December 5, 2022. The letter was Qualcomm's "second written notice of non-compliance ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." The letter stated that "ARM must ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ set forth" in the QC ALA "or ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇."

83.     Pursuant to Section ▇ of the QC ALA, Arm ▇▇▇▇ to remedy its failure to provide the deliverable. ▇▇▇▇ passed without Arm remedying the issue.

84.     Arm responded on December 6, 2022.

85.     In its response, Arm disagreed that Section ▇ was at issue "or that provision of the OOB implicates Section ▇." Arm additionally asserted that the ACK deliverables are governed by Section ▇ of the QC ALA, not Section ▇ and that remedies for a breach of that section do not include ▇▇▇▇▇▇▇▇.

86.     Notably, Arm additionally claimed that "▇▇▇▇▇▇▇▇▇▇▇▇▇," stating explicitly that Arm "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." As to the OOB specifically, Arm claimed that "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇."

87.     Arm was definitive in its assertions, stating that "[n]o additional delivery is required," and "[n]o breach of Section ▇ has occurred." Qualcomm was unable to verify this assertion because the "patches" are created by Arm and provided solely by Arm. Accordingly, Qualcomm has no way of knowing definitively whether Arm has released patches for verification until they are delivered (or until someone from Arm tells Qualcomm they are available, which did not occur in this case).

30

88. Arm's letter further stated that Qualcomm "does not have ███████████ ████ rights under its ALA applicable to Nuvia-based technology like the design for which Qualcomm improperly seeks" deliverables. Arm additionally threatened Qualcomm that if it did not drop its invocation of Section ██, Arm would take steps that would harm Qualcomm. Arm claimed that Qualcomm's invocation of Section ██ was "a new, material breach of the Qualcomm ALA" and that, to the extent Qualcomm exercised ██████████████████████████ ████████████████████████, Arm would "not hesitate to terminate" Qualcomm's licenses. Arm further stated that Qualcomm's letter was a "malicious effort" to cause Arm "economic duress," which Arm purported was "inconsistent with the language, spirit, and purpose of the ALA and ████████████████████████."

### 4. *Discovery reveals that Arm deliberately withheld the deliverables.*

89. But more than a year later, Qualcomm discovered that Arm's December 6, 2022, letter misrepresented the facts and concealed Arm's strategy of deliberately withholding the OOB and other deliverables to which Qualcomm was entitled, seemingly in an effort to create commercial leverage and cause Qualcomm duress.

90. "On November 2, 2023[,] [] Arm produced a document [in related litigation] describing how Arm intentionally withheld from Qualcomm formal lists of agreed verification ('ACK') tests known as the 'OOB.'" In response to Qualcomm's requests for production, Arm produced an October 2022 email chain in which Richard Grisenthwaite, Arm's Executive Vice President and Chief Architect, explicitly instructed others at Arm not to provide Qualcomm with the OOB and other deliverables connected to the verification suite. In the email, Mr. Grisenthwaite stated "if [Qualcomm] complain[s] just say that I am reviewing it with our legal counsel."[38]

---

[38] On March 5, 2024, Judge Hatcher held a hearing on Qualcomm's motion to amend its counterclaims to include Arm's breach of Section ██ of the QC ALA. These allegations and

31

91.    In addition, "[o]n December 12, 2023, Arm engineer Vivek Agrawal testified at deposition that Arm had withheld from Qualcomm certain ACK 'patches.'"  Mr. Agrawal's testimony and documents made clear that Arm concealed whether it was, in fact, adhering to its contractual obligations by providing some deliverables and support but not providing others (including the OOB and the patches).  Arm's multi-tiered deception was successful for more than a year. "[I]t was not until Mr. Agrawal's deposition that Qualcomm was able to confirm whether the aforementioned patches even existed, let alone that they were improperly withheld in violation of Section ▮ of the Qualcomm ALA."[39]

92.    The applicable Annex 1 to the QC ALA includes ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

93.    Accordingly, when it was revealed through document and deposition testimony that, contrary to Arm's December 6, 2022, letter, Arm had deliberately withheld the ACK deliverables to which Qualcomm was entitled, it became clear that Arm breached its obligations under Section ▮▮▮▮.

---

quotations are taken from the redacted and publicly available transcript of that hearing and the Court's subsequent order. Redacted Mar. 5, 2024 Hr'g Tr., *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 26, 2024), D.I. 312-1; Redacted Mar. 6 Order, Ex. A. to Pl.'s Ltr. to Hon. Laura D. Hatcher Regarding Redactions to the Mar. 6, 2024 Mem. Order, *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 20, 2024), D.I. 303 at ECF p.5. Notably, at that hearing, Arm advocated against adding this claim to the case in which this discovery was produced; and instead, Arm advocated for Qualcomm to bring a separate lawsuit. Redacted Mar. 5, 2024 Hr'g Tr. 39:13-20, *Arm* v. *Qualcomm*, D.I. 312-1.

[39]  Redacted Mar. 6 Order at 4, *Arm* v. *Qualcomm*, D.I. 303; *see also* Redacted Mar. 5, 2024 Hr'g Tr. 17:18-19:9, *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 26, 2024), D.I. 312-1 (discussing chart Agrawal used to "clear up his own confusion and make sure there was alignment internally" on what was being withheld from Qualcomm and what was not being withheld; the "top half of the chart [listed] things that sa[id] 'continue support as earlier,'" and "things on the bottom of the chart, which include[d] the OOB and also the patches, sa[id] 'no support unless legal approves.'").

32

94. Arm's Chief Legal Officer concealed the facts, explicitly (and definitively) stating in Arm's December 6, 2022, letter that it had provided Qualcomm with ███████ to the ACK and that "████████████████████████." Qualcomm did not have a valid basis to dispute that factual representation without discovery.

### 5. *Arm's breach of the QC ALA has harmed Qualcomm.*

95. To date, Arm still has not provided the OOB and relevant patches to which Qualcomm is entitled, and Arm's failure to do so increased Qualcomm's burden in verification.

96. By failing to deliver the OOB, Arm forced Qualcomm to expend extra time and resources to run ACK tests to verify that its products are compliant with the Arm ISA, even in the absence of the OOB deliverables, which Qualcomm paid for and was entitled to receive under the QC ALA.

97. Similarly, by failing to deliver the patches, Arm forced Qualcomm to use its own engineers to address issues that would have been addressed by Arm's patches, which Qualcomm paid for and was entitled to receive under the QC ALA. Qualcomm was damaged as a result.

98. ████████████████████████████████████.

99. Pursuant to Section ██ of the QC ALA:



100. Accordingly, ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

A0325

101.    In addition, because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**B.    Arm Fails to Provide Qualcomm With ▮▮▮▮ Licensing Proposals in Violation of the QC TLA.**

102.    Arm has not only attempted to disrupt Qualcomm's development of custom CPUs but also attempted to interfere with Qualcomm's development of products containing off-the-shelf Arm cores by intentionally failing to provide commercially reasonable, and therefore ▮▮▮▮, licensing proposals to Qualcomm ▮▮▮▮▮▮▮▮▮▮▮. In addition to the below, Qualcomm expects discovery to show that Arm ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮ in its licensing negotiations involving peripheral TLA IP.

*1.    The QC TLA requires Arm to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮*

103.    The QC TLA contains ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

34

**A0326**

104.    Section ▮▮▮ sets forth a series of requirements that Arm must follow for each of its off-the-shelf cores. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

105.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

106.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ Arm has never provided Qualcomm with written notice that ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

107.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

35



108.

### 2. Arm fails to respond to Qualcomm's licensing requests.

109. As part of its product development cycle, Qualcomm monitors the terms of licensing agreements to determine whether renewals or extensions of third-party IP will be necessary in order to plan for future product development and sales. Qualcomm has historically licensed and renewed licenses for various ▮▮▮. For example, Qualcomm sought to renew licenses to certain ▮▮▮, ▮▮▮, ▮▮▮.

110. Qualcomm's licenses for all three cores, which were ▮▮▮ licenses entered into in 2019, are set to expire in ▮▮. Given Qualcomm's desire to avoid disruption to its development schedule and roadmap, it began negotiations for new licenses for each core in 2024.

111. In April 2024, Qualcomm sent Arm written requests to license both ▮▮▮.

36

112. Arm failed to respond to Qualcomm's requests, ▮▮▮▮▮ ▮ ▮ ▮▮▮ and ignored continued outreach from Qualcomm in the subsequent months.

113. In August 2024, Qualcomm submitted a written request for ▮▮. Arm failed to respond to this request as well.

114. Faced with Arm's continued non-compliance and the potential impact to its roadmap, Qualcomm sent Arm a notice of non-compliance with Section ▮ of the QC TLA (including ▮▮▮▮) in September 2024. Qualcomm told Arm that the letter "serves as Qualcomm's written notice of ARM's breach of, and non-compliance with, ▮▮▮ of the TLA." The letter asked that "ARM provide the requested core license immediately and in accordance with the terms and conditions of the TLA as required by ▮▮▮▮ of the TLA, or Qualcomm will be forced to exercise its remedies under the TLA."

115. Once again, Arm failed to respond. A week later, Qualcomm wrote to Arm again, informing Arm of the "second written notice of breach and non-compliance in accordance with the notice process set forth in Section ▮ of the TLA."

### 3. *Arm fails to provide ▮▮▮ licensing terms to Qualcomm.*

116. Nearly four weeks later, Arm finally responded to Qualcomm's notice of non-compliance. In its October 23, 2024 letter, Arm "▮▮▮▮▮▮▮▮▮▮". Instead, Arm told Qualcomm that it did not "▮▮▮▮▮▮▮▮▮▮▮▮▮."

117. In connection with the letter, Arm provided offers to the requested cores that Arm claimed were "▮▮▮▮▮▮▮▮▮." However, not only was this untrue, but also Arm's proposal contained terms so unreasonable that it was a constructive failure to license.

37

118.    The financial terms that Arm provided for the three requested cores were commercially unreasonable, exorbitant, and ███████████.    For example, ███████████ ████████████████████████████████████████████████ ██████████████████████████████████████████.    ███████████████    was not justified by any change or improvement in the technology and is grossly inconsistent with the market for any comparable technology.    Arm was aware of the unrealistic terms of its proposal, which Arm acknowledged it only provided because of Qualcomm's notice of non-compliance with Section ████████████████████████████████████████████ ████.    This constructive failure to offer a license to the requested cores violated the terms of the QC TLA.

119.    Arm's proposal also violated the QC TLA requirement under Section ███████ ███████████████████████████████████████████████████████████.

120.    Furthermore, by ███████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████.

### 4. Qualcomm has been harmed by Arm's TLA violations.

121.    As a result of Arm's exorbitant proposal, Qualcomm has been forced to proceed in development of SoCs without knowing what CPUs it will be using after the licenses to ████████ ████████████    expire.

122.    Due to the development lifecycle for semiconductor chips, Arm's ███████ refusal to offer licenses and to change ███████████████ of its licensing offers is already impacting Qualcomm.    Qualcomm must undergo reviews of its planning roadmaps to ensure that it will have suitable CPUs for its customers.    This effort requires (i) that additional resources be shifted to

38

**A0330**

design custom CPUs for each of its semiconductor chips (ii) that Qualcomm allocate resources to identify workarounds based on RISC-V and redesign products to function with a different microprocessor design, or (iii) rely on older, less competitive versions of Arm CPUs that Qualcomm has licensed.

123. The QC TLA sets forth the remedies for Arm's violations.

124. ███████████████ states that Qualcomm may seek ███████████



125. In addition, Section ██ of the QC TLA states:



126. Qualcomm sent its first notice of breach on September 20, 2024 and its second notice on September 27, 2024. Arm's purported offer in response to Qualcomm's notices was dated October 24, 2024. To date, Arm has failed to provide any commercially reasonable, ████ ███, offer and, as such, has failed to remedy its breach within the ███████████.

127. Qualcomm is entitled to ████████████ under both the QC TLA and QC ALA for a period of ████████████████████████████████████████████. While Qualcomm will continue to ████████████████ until Arm's breach of the QC TLA is finally

39

**A0331**

resolved, Qualcomm believes that Arm is not entitled to receive those ████████ ████████████████████ pursuant to the QC TLA and ALA████████████████ ████████████████████████ For this reason, Qualcomm does not believe that any ████████████████████

## C. Arm Refuses to Negotiate a License to the Latest Version of Its ISA ████████ ██████████

128. Arm has not only taken steps to destroy or delay Qualcomm's present development efforts. It has also tried to hamstring Qualcomm's future development efforts by failing to negotiate a license to future versions of the Arm Architecture.

129. In addition to failing to provide the deliverables ████████████████████ and constructively failing to offer licensing proposals ████████████, Arm has also refused to negotiate an extension of ████████ to cover future versions of ████████████████ ████████ requires it to do.

130. As noted, Section ████████ of the QC ALA ████████████████████ ████████████████████████████████████████████ ████████. Qualcomm has ████████████████████████████. Additionally, Section ████████ of the QC ALA ████████████████████████████ ████████████████████████████████.

131. On April 17, 2020, a Qualcomm employee emailed an Arm counterpart to ask if Arm was working on a new version (v10) of the Arm ISA to replace v9 and explained that the request was made in the context of ████████████████████████████ ████████████. The Arm employee responded the following week that "████████████████ ████████████████████████████

40

██████ would expire but that there was "██████████████████████████

█████████████████████████████."

132.    On May 20, 2020, Qualcomm emailed Arm stating that Qualcomm "████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████."

133.    Arm never responded to that email or followed up at any other time regarding Qualcomm's rights ██████████████████.

134.    Arm's actions underscore its strategy of attempting to eliminate existing ALAs and to force Qualcomm and other licensees to use Arm's off-the-shelf CPU designs—or to cease designing Arm-compatible chips entirely.

**D.    Arm Engages in a Campaign to Undermine Qualcomm's Customer Relationships.**

135.    In addition to the breaches described above, Arm has also deliberately sought to impair Qualcomm's standing and relationships with current and prospective customers. As Qualcomm has detailed, Arm, through its leadership and through SoftBank and Son, has engaged in a misinformation campaign to mislead Qualcomm's customers into believing that Qualcomm will not be able to deliver licensed Arm-compatible products after 2024, and that Qualcomm customers must obtain their own direct licenses from Arm.[40]  That misinformation campaign included multiple rounds of letters to Qualcomm customers misleadingly claiming that Qualcomm had breached its ALA and suggesting that customers could face legal jeopardy from using

---

[40]   Defs.' Answer and Defenses to Pl.'s Compl. & Jury Demand & Defs.' 2d Am. Countercls. ¶¶ 255-70, 275(b)-(d), *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 13, 2024), D.I. 300.

Qualcomm products. More recently, Arm began "ratcheting up the pressure" on Qualcomm in *Arm* v. *Qualcomm*,[41] and Arm continued this misinformation campaign by declaring without basis that Qualcomm has materially breached the QC ALA and leaking the Breach Letter. By doing so, Arm has caused tangible harm to Qualcomm's customer relationships.

### 1. Arm repeatedly attempts to interfere in Qualcomm's customer relationships.

136.    On August 31, 2022, Arm commenced *Arm* v. *Qualcomm* in the U.S. District Court for the District of Delaware. In that action, Arm alleges that Qualcomm and NUVIA breached the NUVIA ALA by not destroying all design work undertaken by NUVIA pursuant to its license with Arm following Qualcomm's acquisition of NUVIA.

137.    On the same day that Arm filed that action, it launched a premeditated campaign to blitz Qualcomm's customers with letters publicizing the lawsuit. As Mr. Haas admitted under oath at trial, Arm sent letters to top executives at 37 companies that were customers of both Arm and Qualcomm. In those letters, Arm stated that Qualcomm had breached the terms of "the Arm license agreement," implying that Qualcomm had breached its own ALA. That was misleading: Arm's complaint in the *Arm* v. *Qualcomm* action accused Qualcomm and Nuvia of breaching the *Nuvia* ALA and never accused Arm of breaching the *Qualcomm* ALA. Mr. Haas thus also admitted under oath that the letter "should have said" that Qualcomm had supposedly breached the Nuvia ALA, not Qualcomm's "Arm license agreement."

138.    Additionally, the August 31 letters asserted that Arm would "███████████ ███████████████████████" and thus (despite assuring customers that there would be "███ ████████████████████████████") suggested that companies could face legal jeopardy if

---

[41]    Oct. 30, 2024, Hr'g Tr. 34:6, *Arm Ltd. v. Qualcomm, Inc.*, C.A. No. 22-1146 (D. Del. Nov. 7, 2024), D.I. 513.

42

**A0334**

they used the Qualcomm products that incorporated Nuvia technology. The letter attached a letter from Arm's general counsel to Qualcomm's general counsel that made this point explicitly, asserting that ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████

139.    Eight months later, in May 2023, Arm launched another round of customer letters. Arm executive Will Abbey sent a series of additional letters to key Qualcomm customers "████████████████████████████████████████." Mr. Haas agreed at trial that there was no independent event that triggered Arm's decision to send these letters. That letter stated that Qualcomm's designs based on Nuvia technology, specifically including the Phoenix core, "can no longer be used and must be destroyed." Mr. Haas also agreed at trial that it was very important to Arm to tell customers that it was demanding destruction of technology. The letter extensively quoted from Arm's prior threat letter to Qualcomm but did so in a manner intended to convey that it was quoting from a contract between Qualcomm and Arm that specifically required Qualcomm to cease using "Arm-based technology" developed by Nuvia and to destroy such technology.  In fact, no such contract existed, and the intended implication of quoting that language was thus false. Mr. Haas admitted at trial that he was "quite confused" by the language of the letter and agreed that the letter was "misleading."

140.    Like the prior letters, the May 2023 letters reassured customers that there would be no disruptions to their partnership with Arm, but only if that partnership was "████████████

██████." It also offered to answer questions that customers might have regarding how the litigation might impact the availability of licensed Arm technology going forward, which necessarily

43

implied that the litigation could impact the availability of the Qualcomm products that Arm claims were unlicensed.

### 2. *Arm waits years before taking steps to terminate the QC ALA.*

141. Although Arm now asserts that Qualcomm is in material breach of the QC ALA, Arm waited years before taking any steps towards terminating the QC ALA. When it filed the *Arm* v. *Qualcomm* action, Arm neither alleged that Qualcomm had breached the QC ALA nor sent Qualcomm any notice to that effect, ███████████████████████████████████ ████████.

142. On September 30, 2022, Qualcomm answered Arm's complaint in *Arm* v. *Qualcomm* and filed a Counterclaim against Arm seeking, among other things, a declaratory judgment that its conduct was fully licensed under the QC ALA, and that it could "continue to develop and sell chips free from challenge that its actions are in violation of the Qualcomm ALA" or any other relevant agreement with Arm. When Arm answered that counterclaim, it generally alleged that Qualcomm was breaching the QC ALA, though it did not send Qualcomm any written notice to that effect ███████████████████.

143. On March 13, 2024, Qualcomm filed its second amended counterclaims in *Arm* v. *Qualcomm*. Arm answered on April 4, 2024, and again alleged that Qualcomm was breaching the QC ALA, entitling Arm to terminate that agreement. Again, however, Arm did not send Qualcomm any written notice to that effect ███████████████.

### 3. *Arm's Breach Letter groundlessly asserts that Qualcomm is in material breach of the QC ALA.*

144. It was not until more than seven months later, on October 22, 2024, that Arm sent Qualcomm the Breach Letter, which purported to provide notice to Qualcomm ███████ ███████████████ that Qualcomm is in material breach of that agreement.

44

145.    The Breach Letter asserted that the QC ALA authorizes Qualcomm solely "to develop, verify, and sell designs for CPUs … that use, rely on, or derive from Arm technology *delivered by Arm to Qualcomm* and *developed by Qualcomm employees*, not third parties."[42]  It did not attribute these assertions to any particular provision of the QC ALA but instead cited a string of contract sections, ██████████████████████████████████ ████████████████████████████████████████████ ████████████.  The Breach Letter also referred generally to "Annex 1," a lengthy document describing ████████████████████.  But nowhere in the Breach Letter did Arm identify any provision of the QC ALA that imposes the particular obligations Arm asserts in the Breach Letter.

146.    In the Breach Letter, Arm claimed that Qualcomm "systematically and willfully breached these obligations" by "develop[ing] CPUs and market[ing] multiple products that contain CPUs that use designs, technology, and code created by Nuvia employees at the time when Nuvia was a third party."[43]  The Breach Letter thus reprised the same arguments it has made in *Arm* v. *Qualcomm* about the NUVIA ALA: in essence, that Qualcomm somehow breached the *NUVIA* ALA by developing CPUs in part by using technology created by and acquired from NUVIA.  Arm has not explained in that litigation and did not explain in its Breach Letter how Qualcomm allegedly breached any provision in the *QC* ALA by developing CPUs in the manner it did.  In short, there is a reason why Arm's purported notice letter failed to state clearly which express contractual provision Qualcomm materially breached, or when or how Qualcomm breached any such provision: None exists.

---

[42]  Ex. A at 1 (emphasis added).

[43]  *Id.*

45

147.    Having invoked Section ███ of the QC ALA, Arm's Breach Letter demanded that Qualcomm "cure" the alleged breach(es) within 60 days, including by stopping the development of "Nuvia designs" and the manufacture and sale of Qualcomm CPUs that allegedly "use Nuvia designs or technology." The Breach Letter further demanded that Qualcomm "cure" the alleged breaches by withdrawing its complaint in this Action against Arm. And the Breach Letter asserted that if Qualcomm does not "cure" the alleged breaches in this manner within 60 days, Arm would be entitled to immediately terminate the QC ALA.

148.    The "cures" that Arm demanded in its Letter—other than the dismissal of this Action—are the same remedies that Arm has requested in *Arm* v. *Qualcomm*. By sending the Breach Letter, Arm attempted to pressure Qualcomm to yield to its demands regardless of the outcome of *Arm* v. *Qualcomm*, as well as this case, before the former went to trial.

149.    The timing of the Breach Letter belied Arm's assertion that Qualcomm has materially breached the QC ALA. Arm knew about Qualcomm's acquisition of NUVIA in 2021, and asserted in its November 2022 Answer to Qualcomm's Counterclaim that Qualcomm was supposedly in breach of the QC ALA. Yet before sending the October 22, 2024, Breach Letter, Arm never even attempted to provide the notice ███████████████ that Qualcomm had supposedly breached the agreement. Quite to the contrary, Arm *celebrated* Qualcomm's development of the Snapdragon® X Elite SoC that contains CPU designs whose development Arm now claims breach the QC ALA, with Arm's CEO stating that Arm was "very excited to see the announcement of the brand new Windows on Arm PCs that run Copilot, true AI PCs."[44] In the

---

[44] *Arm First Quarter Fiscal Year 2025*, at 3. Mr. Haas further commented that "the products that are out today are using the most advanced Arm technology," because they "are optimized with Microsoft for the most effective battery life on the planet." *Id.* at 10.

Breach Letter, Arm nowhere explained why it waited more than three years after Qualcomm allegedly breached the Nuvia ALA before it provided notice of an alleged breach of the QC ALA.

150.    Because Qualcomm did not materially breach the QC ALA, Arm did not identify any valid grounds on which to terminate the QC ALA, and any purported termination based on the Breach Letter is null and void.

### 4.    *Arm leaks the Breach Letter to harm Qualcomm's customer relationships.*

151.    Arm's assertion that Qualcomm was in material breach not only lacked legal or factual basis, but was also made in a manner calculated to damage Qualcomm's customer relationships.  Arm's claim that it has the authority to terminate the QC ALA was false, wrongful, and calculated to pressure Qualcomm to accede to Arm's demands and to prevent Qualcomm from gaining new business opportunities.

152.    From October 21–23, 2024, Qualcomm hosted its annual Snapdragon® Summit. At that Summit, Qualcomm unveiled new technology, including its new Snapdragon® 8 Elite Mobile Platform, an SoC featuring Qualcomm's custom-built second generation Qualcomm Oryon  CPU.  That SoC delivers significant performance and efficiency improvements over competitors, ███████████████████████████████.

153.    Arm issued its Breach Letter on October 22, 2024, in the middle of the Snapdragon® Summit.  That timing was no accident, but was an intentional Arm media stunt intended to embarrass Qualcomm and to interfere with its relationships with its current and potential customers and business partners, including by creating unwarranted uncertainty about Qualcomm's ability to continue delivering licensed Arm-compatible products.

47

**A0339**

154.     In addition to sending the Breach Letter to Qualcomm, Arm also leaked the Breach Letter or its contents to Bloomberg, which published a story that same day.[45]  The story was based on and referred to "a document seen by Bloomberg."  On the afternoon of October 22, 2024  the same day Qualcomm received the Breach Letter  a Bloomberg reporter contacted Qualcomm requesting comment on Arm's having sent Qualcomm a "60-day letter" notifying Qualcomm that it was purportedly in breach of the QC ALA.  The reporter was familiar with details of the letter.  Later that day, Bloomberg published its story reporting on Arm's purported cancellation of the QC ALA.[46]  The story relayed details about the Breach Letter "according to a document seen by Bloomberg."  Because Qualcomm did not leak the Breach Letter, the Letter could have reached Bloomberg only if it had been leaked by Arm.

155.     Arm leaked the Breach Letter to distract from the Snapdragon® Summit and the groundbreaking products released at the Summit, and to ensure that the attention of Qualcomm's customers and business partners focused on the parties' licensing dispute rather than on Qualcomm's products, which pose a threat to Arm's own competitive ambitions.  The leak of the Breach Letter thus further demonstrated Arm's deliberate efforts to interfere with Qualcomm's customer relationships.

### 5.     *Arm's leak of the Breach Letter harms Qualcomm.*

156.     The release of the Breach Letter has caused Qualcomm harm, by impairing its relationships with current and prospective customers and interfering with its future business opportunities.

---

[45]   See Ian King, *su  ra* note 11.

[46]   *Id.*

157. Following Bloomberg's publication of the news story about the Breach Letter, multiple Qualcomm customers and business partners have contacted the company to express concern about the Breach Letter. As a result of the Breach Letter and, in particular, Arm's baseless assertion that it can terminate the QC ALA several Qualcomm customers have deferred finalizing pending business agreements pending resolution of the *Arm* v. *Qualcomm* litigation and until Qualcomm provides them with reassurances that it will be able to provide licensed Arm-compliant products.

158. For example, a major customer (the "Smartphone Company") had informed Qualcomm that it was designing a new mobile phone that would rely on Qualcomm's innovative Snapdragon® 8-Elite SoC. After learning that Arm was threatening to terminate the QC ALA, however, a senior executive of the customer informed a senior Qualcomm executive that the customer's legal and intellectual-property teams would need to confer with their counterparts at Qualcomm. The Smartphone Company has also insisted on Qualcomm's providing additional reassurances before it will extend its existing business relationship with Qualcomm.

159. Additionally, a potential customer (the "AI and Ecosystem Company") that currently relies on a competitor's chips for its substantial processing needs was in the process of reaching an agreement with Qualcomm to design a custom chip for the customer based on Qualcomm's custom-built CPU. After the Breach Letter was published, the customer delayed finalizing a termsheet for an agreement under which Qualcomm would design that custom chip and requested inclusion of language related to Qualcomm's chip development capabilities. The AI and Ecosystem Company has stated to Qualcomm that before it finalizes that termsheet, it must first understand the implications of termination of the QC ALA on Qualcomm's ability to deliver the custom chips in question. As a result of the uncertainty stemming from Arm's assertion and

leak of the Breach Letter, there was a delay in Qualcomm's ability to finalize this valuable opportunity.

160.    Simultaneous with its actions that have set back Qualcomm's efforts to finalize a deal with the AI and Ecosystem Company, Arm is also attempting to supply the AI and Ecosystem Company directly.  Despite Arm's insistence at trial in *Arm v. Qualcomm* that it does not make chips, it was recently reported that Arm had reached an agreement with the AI and Ecosystem Company under which Arm would begin producing its own chips for use in a datacenter operated by the AI and Ecosystem Company.[47]  Arm has thus not only delayed Qualcomm's efforts to finalize a contract with the AI and Ecosystem Company but has separately developed its own datacenter chips that it is trying to sell to the same company.

161.    Arm leaked the Breach Letter at a time when it knew that the Smartphone Company is an existing customer of Qualcomm and when it knew or should have known that the AI and Ecosystem Company was a customer of Qualcomm or was likely to be absent Arm's interference. On information and belief, Arm leaked the Breach Letter knowing (or in circumstances in which it should have known) that its wrongful threats to cancel the QC ALA would disrupt those customer relationships and that Qualcomm was likely to be harmed as a result.

### 6.    *Arm's withdrawal of the Breach Letter offers no assurance that Arm will not attempt to terminate the QC ALA.*

162.    Following Qualcomm's victory at trial in *Arm v. Qualcomm*, on January 8, 2025, Arm Chief Legal Officer Spencer Collins sent Qualcomm a letter (the "Notice") withdrawing the Breach Letter and stating ████████████████████████████████████████ ████████████████████████████████████████████"    The Notice also

---

[47] Reuters, *Arm Secures Meta as First Customer for Ambitious New Chip Project, FT Reports* (Feb. 13, 2025).

50



The Notice thus indicated that Arm was pausing its efforts to terminate the QC ALA, but in no way suggested that Arm had any plan to abandon its long-term efforts to force Qualcomm to use Arm off-the-shelf cores and to block Qualcomm from creating and delivering products using its own custom cores (or indeed, any chips that might compete with Arm's own offerings).

163.    Arm also sought to prevent Qualcomm from addressing the uncertainty created by Arm's own leak of the Breach Letter. Despite leaking that letter to the press, Arm █████████ ███████████████████ thereby attempting to limit Qualcomm's ability to disclose the letter. Arm authorized Qualcomm to "█████████████████████████████████," thereby seeking to obstruct Qualcomm from communicating about the letter publicly or with potential customers or other business partners.

## IV.    ARM'S WELL-ESTABLISHED EFFORTS TO LIMIT INNOVATION AND RESTRICT COMPETITION ARE HARMFUL TO THE INDUSTRY

164.    Arm's efforts to interfere with Qualcomm's CPU innovations and stifle competition must come to an end. Despite Arm's CEO's sworn testimony to the contrary, it is clear that Arm seeks to take control of the semiconductor industry and will do whatever it takes to undermine and dominate the companies that it once treated as partners.

165.    Arm's tactics violate basic contract principles and are directly contrary to the purpose of the QC ALA, which will have little value if licensees cannot rely on executed ALAs to receive the deliverables and ████ they bargained for without fear that Arm will unilaterally

51

**A0343**

abdicate its contractual obligations in an effort to disrupt a licensee's innovation if Arm views the licensee as an unacceptable competitor. ALA licensees must be assured that they can freely develop custom cores (at their own risk and expense) and that their success in so doing will not be used against them.

166. The assault on Qualcomm's business through the improper refusal to provide commercially reasonable, ▮▮▮▮▮ licensing offers under the QC TLA likewise threatens reliance on the Arm ecosystem and the fundamentals of licensing. Licensees enter into TLAs with Arm under the assumption that they will be joining a collaborative and open ecosystem and will be able to license the IP necessary to compete and grow in the market. Arm's transformation into a chipmaker, combined with its throttling of the delivery of critical IP, is a dramatic reversal of Arm's longstanding business model that endangers the semiconductor industry and the manner in which its participants interact.

## COUNT I

### (Declaratory Judgment)

167. Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as though fully set forth herein.

168. Plaintiffs are entitled to a declaratory judgment that:

    A.    Arm breached the QC ALA by withholding ▮▮▮▮▮ that Arm was obligated ▮▮▮▮▮ to deliver under Section ▮ of the QC ALA, and by withholding ▮▮▮ Arm was required to deliver "▮▮▮▮▮" under Section ▮ of the QC ALA;

    B.    As a result of Arm's breach of Section ▮ of the QC ALA, Qualcomm is entitled to ▮▮▮▮▮

    C.    Arm breached the QC TLA by ▮▮▮▮▮ for ▮▮▮▮▮, including ▮▮▮

52



D. As a result of Arm's breach of Section ███ of the QC TLA, Qualcomm is entitled to ███████████████ , including ███████████████ , and ███████████████

E. Arm breached the QC TLA by ███████████████ , including ███████████████ in violation of ███████████████ of the QC TLA.

F. As a result of Arm's breach of Section ███ of the QC TLA, ███████████████

G. Arm breached the QC TLA by ███████████████ for ███████████████ , including ███████████████ , with ███████████████ of the QC TLA.

H. As a result of Arm's breach of Section ███ of the QC TLA, ███████████████

I. Qualcomm has not breached the QC ALA as asserted in the October 22, 2024, Breach Letter; and

J. Arm is therefore not entitled to terminate the QC ALA.

169. A judicial declaration pursuant to the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201-02) concerning this matter is necessary and appropriate so that Qualcomm can confirm its belief that ███████████████████████████████████████ .

170. A valid and justiciable controversy exists between Qualcomm and Arm because ███████████████ Arm is threatening to terminate the QC ALA if Qualcomm ███████████████ pursuant to Section ██ of the ALA.

171. A declaratory judgment is also necessary and appropriate so that Qualcomm may ascertain Arm's obligations and Qualcomm's rights and obligations under the QC ALA and clear

53

A0345

any cloud that may exist over its business as a result of Arm's false assertions of breach and threats to terminate the QC ALA.

172.    A valid and justiciable controversy exists between Qualcomm and Arm because Arm has asserted that Qualcomm is in breach of the QC ALA and has asserted that Arm has the right to terminate the QC ALA on December 21, 2024.  Qualcomm disputes both assertions. Qualcomm also reasonably expects that Arm would attempt to use its purported termination to damage Qualcomm with its customers, in the media, and with analysts, in light of Arm's behaviors to date.

### COUNT II

### (Breach of Section ▇ of the QC ALA)

173.    Plaintiff Qualcomm repeats and realleges all of the preceding allegations as if set forth fully herein.

174.    The QC ALA is a valid, binding contract.

175.    Arm failed to fulfill its obligation under Section ▇ of the QC ALA because it intentionally withheld from Qualcomm certain ▇▇▇▇ to which Qualcomm was entitled, including the OOB and certain "patches" used for verification.

176.    Accordingly, Arm did not "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇," or "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇," or ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇," as is required by Section ▇ of the agreement.

177.    Arm's failure to comply with its contractual obligation to timely deliver bargained-for technology was not only intentional, but it was also done with an intent to deceive Qualcomm.

54

178.    Qualcomm put Arm on written notice of this violation and Arm ███████████, as is required under the contract.

179.    Arm's breach of Section █ of the QC ALA entitles Qualcomm ███████ ████████████████████████████████████.

180.    As a proximate result of Arm's breach of contract, Qualcomm has been damaged both (i) by delay that could have been avoided had Arm fulfilled its obligations, (ii) by costs and expenses incurred by Qualcomm expending extra time and resources to run the ACK tests to verify that its products are compliant with the Arm ISA and use its own engineers to address issues that would have been addressed by Arm's patches, and (iii) by ██████████████ ██████████████████████ not misrepresented its compliance with the parties' agreement.

## COUNT III

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

181.    Plaintiff Qualcomm repeats and realleges all of the preceding allegations as if set forth fully herein.

182.    Under California law, every contract implies a covenant for each party not to do anything that will deprive the parties of the benefits of the contract.

183.    At all relevant times, Arm agreed and was required by law to act fairly and in good faith with respect to its obligations under the QC ALA and TLA.

184.    Arm breached this implied covenant of good faith and fair dealing under both agreements. For example, Arm withheld deliverables that it was required to provide Qualcomm under the QC ALA; asserted, without valid basis under the QC ALA, that Qualcomm was supposedly in material breach of that agreement; sent letters to Qualcomm customers and leaked

the Breach Letter to the media to create uncertainty about Qualcomm's ability to provide its customers with products containing custom CPUs; failed to negotiate an extension to the QC ALA that would cover future version of the architecture, including v10, and failed to provide licensing proposals for ███████████████ to Qualcomm in violation of provisions of the QC TLA.

185.    Arm's actions have been willful and carried out in bad faith, as part of an effort to enable Arm to disregard the QC ALA and TLA so that it can prevent Qualcomm from competing with Arm's sale of its own CPU and other chip designs, or, at a minimum, coerce into renegotiating the QC ALA so that Arm can extract payments from Qualcomm that exceed those due under the QC ALA.

186.    Arm's actions have unfairly frustrated the essential purposes of the QC ALA and TLA, and have prevented Qualcomm from obtaining the reasonably and justifiably intended and expected benefit of its bargain with Arm, including the right to produce and sell custom CPUs that are compatible with the Arm ISA ████████████████████████.

187.    For at least the foregoing reasons, Arm has breached the implied covenant of good faith and fair dealing for both the QC ALA and TLA.

188.    As a proximate result of Arm's breach of the implied covenant of good faith and fair dealing, Qualcomm has been injured in its business or property, and is threatened by imminent loss of profits and loss of actual and potential customers and business opportunities.

## COUNT IV

### (Intentional Interference with Prospective Economic Advantage)

189.    Plaintiff Qualcomm repeats and realleges all of the preceding allegations as if set forth fully herein.

190.    Qualcomm has economic relationships with customers that rely on Qualcomm's technology to meet their business needs, including the Smartphone Company and the AI and Ecosystem Company referenced above.

191.    Absent Arm's interference, these relationships would likely result or would have likely resulted in profitable business opportunities for Qualcomm, most notably for Qualcomm to sell its customers particular SoCs to support those customers' business operations.  These relationships are sufficient to support an intentional-interference claim because the Smartphone Company is already a major Qualcomm customer, while the AI and Ecosystem Company operates a large number of datacenters, is a large buyer of datacenter hardware, and had reached a nearly final termsheet with Qualcomm before Arm's interference sabotaged that business relationship.

192.    Arm knew of these relationships but nevertheless engaged in conduct aimed at interfering with Qualcomm's business opportunities, including by (a) purporting to give notice that it "shall be entitled" to terminate the QC ALA based on nonexistent alleged material breaches of the QC ALA; (b) deliberately leaking the Breach Letter in the middle of Qualcomm's Snapdragon® Summit; and (c) making misleading and threatening statements to Qualcomm's customers to undermine their relationships to Qualcomm and to induce them not to procure products from Qualcomm.

193.    Arm's interference with Qualcomm's business opportunities was wrongful.  For example, as explained below, Arm's conduct represented unfair business acts and practices in violation of California law.

194.    By engaging in this conduct, Arm intended to disrupt these relationships or knew that disruption of these relationships was certain or substantially certain to occur.

195.     As a result of that conduct, these relationships have in fact been disrupted.  The AI and Ecosystem Company has delayed finalizing a valuable and nearly final agreement with Qualcomm that it would have finalized absent Arm's interference, and subsequently finalized a substitute contract with Arm instead, and the Smartphone Company has likewise delayed extending its business relationship with Qualcomm pending additional assurances.  As a result of these delays and interruptions in its business relationships, Qualcomm has suffered actual harm.

196.     Arm's efforts to interfere with Qualcomm's business relationships have been a substantial factor in causing that harm, which Qualcomm would not have suffered but for Arm's misconduct.

## COUNT V

**(Ne    en In er eren e     Prospe    e E ono    Ad    n    e)**

197.     Plaintiff Qualcomm repeats and realleges all of the preceding allegations as if set forth fully herein.

198.     Arm knew or should have known that Qualcomm has substantial business relationships with a number of customers, including the Smartphone Company and the AI and Ecosystem Company.

199.     Arm also knew or should have known that these relationships would be disrupted by Arm's failure to act with reasonable care by purporting to terminate the QC ALA despite lacking legal or factual grounds for doing so, by leaking the Breach Letter in bad faith and in disregard of its duties to Qualcomm as a contract counterparty, and by making misleading and threatening statements to Qualcomm's customers to undermine their relationships to Qualcomm and to induce them not to procure products from Qualcomm.

58

200. Arm owes Qualcomm a duty to act with reasonable care based on, among other things, the parties' contractual relationship and the foreseeability that interfering with Qualcomm's customer relationships would cause Qualcomm harm.

201. Arm failed to act with reasonable care when, in bad faith, it purported to declare that Qualcomm is in material breach of the QC ALA, leaked the Breach Letter, and made those misleading and threatening statements to Qualcomm's customers.

202. Arm's conduct was wrongful because, for example, it was "unfair" under California law.

203. As a result of Arm's wrongful conduct, Qualcomm's relationships with the customers identified herein have been disrupted, as customers have required additional assurances or delayed entering into additional transactions with Qualcomm.

## COUNT VI

### (Violations of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

204. Plaintiff Qualcomm repeats and realleges all of the preceding allegations as if set forth fully herein.

205. The California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, prohibits "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

206. By engaging in the conduct described above, Arm has committed and continues to commit unlawful and unfair business acts or practices prohibited by the UCL. These unfair business acts or practices include deliberately withholding deliverables it was required to provide Qualcomm ███████████████████; misrepresenting to Qualcomm that it was not withholding deliverables; refusing to negotiate license terms with Qualcomm ██████; repeatedly interfering or attempting to interfere with Qualcomm's relationships with Qualcomm's

59

**A0351**

current and prospective customers; wrongfully asserting that it has the right to terminate the QC ALA without any basis in the QC ALA for those assertions, and then leaking the Breach Letter to the media, in an effort to terminate the QC ALA and thereby obstruct Qualcomm's ability to produce custom cores and thus eliminate a competing supplier of chips compatible with the Arm ISA; to pressure Qualcomm to accede to its demands in *Arm* v. *Qualcomm*; and to prevent Qualcomm from continuing to litigate its meritorious claims in the instant case.

207. Arm's actions are part of a broader campaign to harm or threaten to harm competition for CPU and other computer chip designs, in California and elsewhere. Arm is employing a variety of unfair acts and practices so that it can leverage its control over the ISA used in all premium smartphones and a large and growing share of other computing devices to attempt to prevent Qualcomm from developing and marketing products with CPUs that threaten to outcompete products containing Arm's off-the-shelf CPU designs. These tactics include making misleading statements to Qualcomm's customers to pressure them not to acquire products from Qualcomm and threatening or attempting to cut off Qualcomm's access to the ubiquitous Arm ISA with the goal of preventing Qualcomm from developing custom cores that would compete with Arm's own designs and from marketing products that contain Qualcomm custom cores.

208. Arm's conduct is also unfair because it threatens to significantly harm competition not only for CPU designs, but also for the SoCs used in a variety of platforms, and ultimately for the devices that use those CPUs and SoCs. If Arm's conduct goes unchecked, Qualcomm and other chip designers will be forced to rely on Arm's off-the-shelf CPUs and will be at Arm's mercy if Arm wishes  as it has signaled it does  to foreclose them from making chips that are compatible with the Arm ISA. As a result of Arm's efforts to reduce competition to create those CPUs and SoCs, consumers will be deprived of products that are built around innovative, high-

60

A0352

performance, high-efficiency Qualcomm chips and/or will have to pay more for (or will have reduced choices among) products that incorporate CPUs compatible with the Arm ISA. Arm's conduct towards Qualcomm  a longtime Arm licensee  threatens incipient violations of competition laws; violates the policy or spirit of those laws; threatens to significantly harm competition; is immoral, unethical, oppressive, and unscrupulous; and threatens to harm consumers and competition in a manner vastly disproportionate to whatever supposed benefits that behavior could possibly create.

209.    Arm's conduct is also unlawful because it violates California common law, including state law prohibiting intentional and negligent interference with prospective economic advantage.

210.    Arm's unlawful and unfair business acts and practices are a direct and proximate cause of injury to Qualcomm. Qualcomm has suffered harm in California and elsewhere as a supplier of a variety of Arm-compatible products, and it has suffered or faces the threat of loss of profits, customers, and potential customers. If Arm is allowed to continue in its unlawful and unfair business acts and practices, Qualcomm risks being denied access to a widely used ISA for which there are no readily available alternatives for certain applications, which threatens to impede Qualcomm's ability to continue developing and marketing its high-performance products based on its own custom CPU designs. Arm's conduct thus threatens to harm competition among SoC producers but also in end users, who will be forced to use products built with Arm chips and CPUs.

211.    Qualcomm has standing to bring this claim because it has lost money or property as a result of Arm's unfair competition, including by losing business opportunities that would have been awarded to it absent Arm's conduct.

61

A0353

212.    Qualcomm requires equitable relief under the UCL because it lacks adequate remedies at law to address Arm's anticompetitive and unfair actions, which are ongoing and which have caused or threaten to cause Qualcomm to suffer significant harm.

## COUNT VII

### (Breach of Section ███ of the QC TLA)

213.    Plaintiff Qualcomm repeats and realleges all of the preceding allegations as if set forth fully herein.

214.    The QC TLA is a valid, binding contract.

215.    Arm failed to fulfill its obligation under Section ███ of the QC TLA because the licensing offers it provided to Qualcomm for ████████████████, including ███████████ ████████████████████████████████████.

216.    Arm's failure to comply with its contractual obligation ███████████████ ████████████████████████████████████ ███████████.

217.    Qualcomm put Arm on written notice of this violation and Arm failed to cure within ████████, as is required under the contract.

218.    Arm's breach of Section ████████ of the QC TLA entitles Qualcomm to a ████████████████████████████████████, including ██████ ████████████, and a license offer ███████████████████.

219.    Arm's breach of Section ████████ of the QC TLA entitles Qualcomm to ███████████ ████████████████████████████████████ ███.

62

220. As a proximate result of Arm's breach of contract, Qualcomm has been harmed both by (i) shifting resources to its custom CPU team in order to analyze and begin development of CPUs for future SoCs that would have used the ████████████, including ████ ████████ cores, (ii) the uncertainty caused by Arm's refusal to license the ██ ████████████, which causes complications in the roadmapping and SoC planning process, and (iii) by ████████████████████████████████████████ ████.

## COUNT VIII

(Breach of Section ████ of the QC TLA)

221. Plaintiff Qualcomm repeats and realleges all of the preceding allegations as if set forth fully herein.

222. The QC TLA is a valid, binding contract.

223. Arm failed to fulfill its obligation under Section ████ of the QC TLA because the licensing offers it provided to Qualcomm for ████████████████, including ████████ ████████████████████████████████████████ ████████████████.

224. Qualcomm put Arm on written notice of this violation and Arm failed to cure within ████, as is required under the contract.

225. Arm's breach of Section ████ of the QC TLA entitles Qualcomm to ████████ ████████████████████████████████████████ ██.

226. As a proximate result of Arm's breach of contract, Qualcomm has been forced to seek alternative means to ensure that it is protected according to the ████████████ that it

63

negotiated in the QC TLA and to divert additional resources in order to continue development of its SoCs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment and relief as follows:

A    For the declaratory judgments set forth in Plaintiffs' claims;

B    For an Order requiring Arm to comply with all its obligations under the QC ALA, including (but not limited to) by providing the ███████████, OOB, Patches, and ██████ without discrimination or retaliation;

C    For an Order requiring Arm to comply with all its obligations under the QC TLA, including (but not limited to) by ████████████████████████████████, including ████████████████████████████;

D    For an Order enjoining Arm from engaging in the unlawful, unfair, and anticompetitive actions and practices described in this Amended Complaint and from any other unlawful, fraudulent, or unfair acts or practices aimed at obstructing Qualcomm's ability to develop and sell chips;

E    For an Order that Qualcomm is entitled to ███████████████████████ with respect to ████████████ licenses at pricing structures ████████████;

F    For an Order ████████████████████████████ as a result of Arm's breach of the QC ALA and TLA;

G    For an Order that the Breach Letter is ineffective notice of an alleged material breach and that Arm has no right to terminate the QC ALA on the grounds stated in the Breach Letter;

H    For recovery of all ███████████████████████████████████████;

I    For damages resulting from the wrongful conduct alleged in this Amended Complaint, including from Arm's threat to terminate the QC ALA and its leak of the Breach Letter, failure to offer ████████ licensing terms ████████████ and specifically including damages arising from the postponement of the business opportunity with the AI and Ecosystem Company;

J    For restitution of amounts Arm derived from the unfair and anticompetitive conduct described in this Amended Complaint;

64

**A0356**

K  For costs and expenses incurred in connection with Qualcomm obtaining specific performance and other equitable relief; or, in the alternative, for additional damages, in the alternative, that the Court deems appropriate;

L  For an award of attorneys' fees and costs as allowed by law; and

M  For such other and further relief available at law and equity as the Court may deem just and proper.

## **JURY DEMAND**

Pursuant to D. Del. LR 38.1 and Fed. R. Civ. P. 38, Qualcomm hereby demands a TRIAL

BY JURY of all claims and issues presented in this Complaint that are so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

Melissa F. Zappala
Ruby J. Garrett
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

June 3, 2025

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

65

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 3, 2025, upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Samantha G. Wilson, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Karen E. Keller, Esquire<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO 80202<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Nicholas R. Fung, Esquire<br>Henry Huttinger, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd., Suite 6000<br>Los Angeles, CA 90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

66

**A0358**

Kyle W.K. Mooney, Esquire  
MORRISON & FOERSTER LLP  
250 West 55th Street  
New York, NY  10019  
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Erik J. Olson, Esquire  
MORRISON & FOERSTER LLP  
755 Page Mill Road  
Palo Alto, CA 94304  
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Gregg F. LoCascio, P.C.  
Jason M. Wilcox, P.C.  
Meredith Pohl, Esquire  
Matthew J. McIntee, Esquire  
KIRKLAND & ELLIS LLP  
1301 Pennsylvania Avenue, N.W.  
Washington, D.C.  20004  
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Jay Emerick, Esquire  
Adam M. Janes, Esquire  
KIRKLAND & ELLIS LLP  
333 West Wolf Point Plaza  
Chicago, IL  60654  
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Peter Evangelatos, Esquire  
KIRKLAND & ELLIS LLP  
601 Lexington Avenue  
New York, NY  10022  
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

67

**A0359**

# EXHIBIT A



Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated
5775 Morehouse Drive
San Diego, CA 92121

22 October 2024

Dear Ann,

Pursuant to section ▮▮▮ of the Qualcomm Architecture License Agreement (LES-TLA-20039) ("the Qualcomm ALA"), Arm hereby provides notice that Qualcomm is in material breach of the Qualcomm ALA. Unless Qualcomm cures its material breach ▮▮▮ Arm shall be entitled ▮▮▮▮▮▮▮▮ ▮▮▮▮

Under the Qualcomm ALA, ▮▮▮▮▮▮▮▮▮▮▮▮▮

The Qualcomm ALA permits

Qualcomm is only permitted to

requirements of the Qualcomm ALA and ▮▮ And Qualcomm is entitled to ▮▮ within the scope of the ALA. These obligations are reflected in multiple places in the Qualcomm ALA, including but not limited to Sections ▮▮▮▮▮▮

Qualcomm has systematically and willfully breached these obligations, and its breaches have accelerated and expanded in recent months. Specifically, Qualcomm has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And Qualcomm initiated and continues to prosecute contractual claims that arise from Qualcomm's improper conduct with respect to these unlicensed cores.

Due to Qualcomm's willful, ongoing, and renewed actions, Qualcomm is in material breach of the Qualcomm ALA. Pursuant to Section ▮▮▮▮▮ To do so, Qualcomm must, at a minimum, ▮▮▮▮

A0361



████████████████████████████████ A0362 ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ If Qualcomm does not do so ████

Arm shall be entitled to immediately terminate the ALA ████████████████████

████████████ Following termination, Qualcomm shall be subject to the ████████

████████████ Qualcomm ALA.

Sincerely,

_____

Spencer Collins
EVP, Chief Legal Officer
Arm Limited
110 Fulbourn Road
Cambridge, CB1 9NJ
United Kingdom

2

# Exhibit 9
## (REDACTED IN ITS ENTIRETY)

# Exhibit 10
## (REDACTED IN ITS ENTIRETY)

# Exhibit 11
## (REDACTED IN ITS ENTIRETY)

A0416

# Exhibit 12
## (REDACTED IN ITS ENTIRETY)

# Exhibit 13
## (REDACTED IN ITS ENTIRETY)

# Exhibit 14
## (REDACTED IN ITS ENTIRETY)

# Exhibit 15
## (REDACTED IN ITS ENTIRETY)

# Exhibit 17

**A0610**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

EXAL DIRECT DIAL:  +1 212 373 3532
EMAIL:  CNYARADY@PAULWEISS.COM

| | |
|---|---|
| BRUSSELS | TOKYO |
| HONG KONG | TORONTO |
| LONDON | WASHINGTON, DC |
| LOS ANGELES | WILMINGTON |
| SAN FRANCISCO | |

April 28, 2025

**Via Email**

Jay Emerick
Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654

Re: *Qualcomm Inc.* v. *Arm Holdings Plc.*
C.A. No. 24-490-MN

Dear Jay,

I write in response to your April 17, 2025 letter purporting to "seek clarity" about Qualcomm's California Unfair Competition Law ("UCL") claim but in fact includes a laundry list of questions about the support for that claim.    To the extent Arm wished to ask about the legal and factual bases for Qualcomm's UCL claim, it could have done so through properly framed interrogatories.  But it cannot circumvent discovery limitations through requests for "clarity" about discovery it chose not to take.  And it is surprising that you would demand a "prompt response" when Arm had yet to produce any meaningful discovery on the topics most relevant to Qualcomm's UCL claim and first produced any documents only last week after your letter.  The scope and grounds of Qualcomm's UCL claim are set forth in Qualcomm's First Amended Complaint ("FAC") and its proposed Second Amended Complaint ("SAC"). Given that Arm has provided no meaningful discovery in this case, Qualcomm cannot provide they type of detailed contention that Arm seems to demand.  *Novanta Corp.* v. *Iradion Laser, Inc.*, 2016 WL 4987110, at *7 (D. Del. Sept. 16, 2016) (collecting decisions holding that contention interrogatories are premature before substantial documentary or testimonial discovery has been completed).

Nevertheless, in the interest of efficiency and avoiding unnecessary disputes, Qualcomm provides the following information regarding the scope of its UCL claim.  This is based on Qualcomm's current understanding, Qualcomm reserves all rights to amend or supplement in the future, including based on any new facts that Qualcomm learns through discovery.

As the FAC and SAC make clear, Qualcomm is not asserting a claim for monopolization under Section 2 of the Sherman Act; it is asserting a claim under the UCL's "unfair" prong.

**A0611**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

Qualcomm also alleges that Arm's business acts and practices were unlawful because, in addition to being unfair, they also violated California tort law. Thus, Qualcomm need not identify a relevant market, *Epic Games, Inc.* v. *Apple, Inc.*, 67 F.4th 946, 1002 (9th Cir. 2023), in the manner the Sherman Act may require. Qualcomm reserves the right to prove that Arm's business acts and practices were "unfair" under any tests California courts apply in cases under that prong. In support of that claim, Qualcomm reserves the right to present evidence that (among other things) Arm is engaged in a campaign to prevent Qualcomm from developing and marketing products with custom CPUs that threaten to outcompete products containing Arm's off-the-shelf CPU designs, with the goal of forcing reliance on Arm's off-the-shelf CPU designs and/or preventing Qualcomm from making chips compatible with the Arm ISA. *See, e.g.*, SAC ¶¶ 206–208.

Finally, Qualcomm disagrees with the assertions in the final paragraph of your letter. The SAC merely clarifies and elaborates the allegations of the FAC. Qualcomm has not made materially "new contentions" or "re-formulat[ed] … its UCL claim." Arm could have requested any of this information by interrogatory long ago, rather than allowing "weeks" to elapse before raising these concerns, or raised its purported concerns earlier. We also fail to see how Arm could have been prejudiced by the purported "disavow[al of] the monopolization allegations," especially given that Qualcomm provided its SAC several weeks before your letter, the amendment made clear that Qualcomm was *not* asserting a claim under Section 2 of the Sherman Act, and Arm has continued to refuse to produce discovery regarding this claim.

Sincerely,

*/s/ Catherine Nyarady*

Catherine Nyarady

**A0612**

# Exhibit 18

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

EXAL DIRECT DIAL: +1 212 373 3532
EMAIL: CNYARADY@PAULWEISS.COM

| | |
|---|---|
| BRUSSELS | TOKYO |
| HONG KONG | TORONTO |
| LONDON | WASHINGTON, DC |
| LOS ANGELES | WILMINGTON |
| SAN FRANCISCO | |

March 17, 2025

**Via Email**

Nicholas Fung
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, CA 90017

Re: *Qualcomm Inc.* v. *Arm Holdings Plc.*
C.A. No. 24-00490-MN

Dear Nick,

Pursuant to Section 2(b)(i) of the parties' ESI order, Qualcomm hereby provides the search terms it will use to identity potentially responsive ESI. Qualcomm will apply the date exclusion of June, 1, 2022 forwards. Qualcomm also provides its list of custodians pursuant to Section 2(b)(iii) of the parties' ESI order. Qualcomm reserves the right to modify its search terms and list of custodians.

**Search Terms**

| |
|---|
| ("Architecture License Agreement" OR ALA) AND (terminat* OR breach) AND customer |
| ("Architecture License Agreement" OR ALA) AND (terminat* OR breach) |
| ("breach" OR terminat* OR (Arm W/5 letter) OR (Arm W/5 notice) OR "October 22") AND Arm |
| ARM AND (impair OR mislead OR deceive OR undermine OR target OR leverage OR coerce OR lie OR "not true" OR hurt OR damage) |
| Arm AND leak AND (breach OR letter OR termination OR notice) |
| Arm AND ("Architecture License Agreement" OR ALA) AND expir* AND 2024 |
| Arm AND new AND (model OR licens* OR agreement) |
| ("Architecture License Agreement" OR ALA OR Arm) AND (Snapdragon OR summit OR Hawai'I OR Hawaii OR announcement OR Oryon) |
| Arm AND (compet*) AND (harm OR threat*) |
| "Arm" AND (CPU or core) AND (price OR royalt* OR fee OR amount) |

**A0614**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

| |
|---|
| "Arm" AND (CPU or core) AND (perf* OR compet*) AND (TLA or "off-the-shelf" OR "Arm CPU" OR "Arm design" OR implementation OR "Arm Implementation Core") |
| "Arm" AND (CPU or core) AND (perf* OR compet*) AND (TLA or "off-the-shelf" OR "Arm CPU" OR "Arm design" OR implementation OR "Arm Implementation Core") AND comput* |
| ("Snapdragon X Elite" OR "Snapdragon 8 Elite") AND (Geekbench OR ▮▮▮ OR perf* OR benchmark OR "Arm off-the-shelf") |
| (licens* OR agreement* OR contract) AND customer AND (delay OR pause OR stop) |
| customer AND (commitment OR assurance OR promise OR reassur*) AND (deliver OR licens*) |
| Arm AND (lawsuit OR case OR action) AND (▮▮▮ or ▮▮▮▮) |
| ("legal team" OR "intellectually property" OR IP) AND (confer OR speak OR assur*) |
| ("term sheet" OR agreement OR deal OR opportunity OR partnership) AND Arm |
| OOB OR ((ACK OR "Architecture Compliance Kit" OR AVS OR ACS) AND patch*) |
| (▮▮▮ OR ▮▮) AND (contract OR agreement OR license OR project OR deal) |
| Arm AND (withhold* OR withheld*) |
| Arm AND exten* AND (version OR v9 or v10 or "v8next" or "v8-next" or "v8 next") |
| V10 AND (ARM or ISA or architecture) |
| (▮▮▮ OR ▮▮) AND (royal* OR revenue OR fees OR price OR payment) |
| Arm AND (damag* or impact) AND roadmap |
| (RISC OR ISA) AND (ecosystem OR application OR developers) |
| (Market or customer) AND (size OR share) and (CPU or SoC) |
| Arm AND royalt* AND (future OR projected) |
| ("Architecture License Agreement" OR ALA) AND (terminat* OR breach OR cancel OR concern OR impact) |
| ALA OR "Architecture License Agreement" |
| TLA OR "Technology License Agreement" |
| Arm AND (interfere OR disrupt OR undermine OR hurt OR steal OR distract) |

**Custodians**
- Ziad Asghar
- Jeff Golden
- Jignesh Trivedi
- Manju Varma
- Karl Whealton

Sincerely,

/s/ Catherine Nyarady

Catherine Nyarady

A0615

# Exhibit 19
## (REDACTED IN ITS ENTIRETY)

# Exhibit 20
## (REDACTED IN ITS ENTIRETY)

# Exhibit 21
## (REDACTED IN ITS ENTIRETY)

# Exhibit 22
## (REDACTED IN ITS ENTIRETY)

**A0683**

# Exhibit 23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation; and
QUALCOMM TECHNOLOGIES, INC.,
  a Delaware corporation,

          Plaintiffs,

      v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
  a U.K. corporation,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 24-490 (MN)

**JURY TRIAL DEMANDED**

## STIPULATED PROTECTIVE ORDER

WHEREAS, Plaintiffs Qualcomm Inc., Qualcomm Technologies, Inc. (collectively "Qualcomm" or "Plaintiffs") and Defendant Arm Holdings PLC ("Arm" or "Defendant") expect discovery in the above-captioned action, including any appeals therefrom (this "Litigation"), to encompass certain information that may constitute proprietary, confidential, commercially sensitive, trade secret, and/or other confidential development, business, or commercial information. If such information is disclosed or disseminated in an unprotected manner, it may cause substantial harm to Plaintiffs, Defendant, and/or nonparties, including loss of competitive advantage, loss of existing business, and loss of business opportunities. Accordingly, the Parties, by and between their respective Outside Counsel, HEREBY STIPULATE AND AGREE, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and subject to the approval of the Court, that the following Stipulated Protective Order (the "Protective Order") shall govern the handling of Discovery Material in the Litigation. Accordingly, pursuant to Fed. R. Civ. P. 26(c), it is hereby ORDERED THAT:

**A0701**

## DEFINITIONS

1.      "Affiliate" means any Third Party that directly or indirectly through one or more intermediaries controls, or is controlled by, or is under common control with, a Party to this Litigation.

2.      "CONFIDENTIAL" means information that constitutes, contains, reveals, or reflects trade secrets or other confidential research, development, business, or commercial information within the meaning of Fed. R. Civ. P. 26(c)(l)(G), including but not limited to: (i) confidential, proprietary, or commercially sensitive information; (ii) any information which is not generally known and which the Producing Party would not normally reveal to Third Parties, would cause Third Parties to maintain in confidence; (iii) any information that the Producing Party believes in good faith is sensitive, or reasonably believes to be protected by a right to privacy under foreign, federal, or state law, a data protection law, or any other applicable privilege or right related to confidentiality or privacy; or (iv) confidential information of a Third Party that the Producing Party is bound by a separate confidentiality agreement or court order to maintain in confidence and that the Producing Party is permitted to produce in this Litigation.  CONFIDENTIAL information includes, but is not limited to, scientific and technical information; financial, budgeting and/or accounting information; information about existing and potential customers; marketing and other business strategies, decisions, or negotiations; personnel compensation, evaluations, and other employment information; and includes such confidential and proprietary information about a Third Party, including parents, subsidiaries, and/or other Affiliates.  Provisions of this Protective Order relating to CONFIDENTIAL information shall be understood to encompass any information derived from, as well as testimony and oral conversation related to, CONFIDENTIAL information, and all copies, excerpts, and summaries thereof.

2

**A0702**

3.  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" means highly sensitive CONFIDENTIAL information, disclosure of which to another Party or Third Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

4.  "Source Code" means human-readable representations of software, firmware, and integrated circuits. Source Code includes, but is not limited to, programming language text, symbolic representations of integrated circuits ("Chip-Level Schematics") or graphical depictions of physical configuration of semiconductor material within integrated circuit die or chip ("Integrated Circuit Layouts"), as well as register-transfer level abstraction files ("RTL Files") and transaction-level modeling files ("TLM Files"). Source Code includes, but is not limited to, programming language text in "C," "C++," BREW, Java ME, J2ME, assembler, digital signal processor ("DSP"), Hardware Design Language ("HDL"), VHDL, or Verilog programming languages.

5.  "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY" means highly sensitive CONFIDENTIAL information that includes Source Code.

6.  "CONFIDENTIAL Discovery Material" means Discovery Material a Designating Party designates as CONFIDENTIAL pursuant to the terms of this Protective Order.

7.  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material" means Discovery Material a Designating Party designates as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY pursuant to the terms of this Protective Order.

8.  "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material" means Discovery Material a Designating Party designates as HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY pursuant to the terms of this Protective Order.

9. "Discovery Material" means all documents, testimony, pleadings, exhibits, and all other material or information produced or disclosed in this Litigation, including disclosures, contentions, responses to requests for production of documents and/or things, answers to interrogatories, responses to requests for admissions, documents and things made available for inspection, deposition testimony, expert testimony and reports, and all other disclosures made and discovery taken pursuant to the Federal Rules of Civil Procedure and any order of this Court, including Third Party discovery pursuant to Rule 45, matters in evidence and any other information hereafter furnished, directly or indirectly, by or on behalf of any Party, Third Party, or witness in connection with this Litigation. This Protective Order and protections herein shall apply to all Discovery Material.

10. "Expert" means a person with specialized knowledge or experience in a matter pertinent to this Litigation, including any associates or analysts working under the supervision of the Expert, with disclosure only to the extent necessary to perform such work, who has been retained by a Party or its Outside Counsel to serve as an expert witness or as a consultant in this Litigation who, at the time of retention: (1) is not an officer, director, or employee of a Party, Affiliate, or Competitor of a Party and (2) is not anticipated to become an officer, director, or employee of a Party, Affiliate, or Competitor of a Party. Nothing in this Protective Order purports to alter in any way the requirements for offering testimony under Fed. R. Evid. 703, or to define the term "expert" for purposes other than those addressed in this Protective Order.

11. "Competitor" means any entity or person that is involved in the development of any custom CPU or SoC for mobile or compute markets that would compete against Plaintiffs' custom Arm-based CPU(s) or SoC(s) for mobile, automotive, IoT, or compute markets.

4

**A0704**

12.    "Outside Counsel" means (i) any attorney from a law firm that has made a formal appearance as counsel of record for a Party in this Litigation and who is not an employee of a Party or of an Affiliate, and (ii) partners, principals, counsel, associates, employees, and contract attorneys of such Outside Counsel to whom it is reasonably necessary to disclose information for this litigation, including supporting personnel employed by the attorneys, such as paralegals, legal translators, legal secretaries, legal clerks, and shorthand reporters.

13.    "Party" means a party to this Litigation.

14.    "Challenging Party" means a Party or Third Party that challenges the designation of information or items under this Protective Order.

15.    "Designating Party" means any Party or Third Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY."

16.    "Producing Party" means any Party or any Third Party who produces or otherwise discloses, whether through formal or informal means, Discovery Material in this Litigation.

17.    "Professional Vendor" means a person or entity that provides litigation support services (e.g., photocopying, audio or video recording, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium; jury consulting including mock jurors, mock trial coordination) and their employees and subcontractors. Professional Vendors do not include Experts.

18.    "Protective Order" means this Stipulated Protective Order.

**A0705**

19.     "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY."

20.     "Receiving Party" means any Party that receives Discovery Material produced or otherwise disclosed by any Producing Party.

21.     "Third Party" means a person or entity that is not a Party.

## SCOPE

22.     The protections conferred by this Protective Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.  However, the protections conferred by this Protective Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication that does not violate this Protective Order, including becoming part of the public record through trial or otherwise; or (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party.  To the extent there is any dispute regarding the use of Protected Material at trial, the parties shall submit the dispute to the Court for resolution.

## DURATION

23.     Even after final disposition of this Litigation, the confidentiality obligations imposed by this Protective Order shall remain in effect until the Designating Party agrees

6

**A0706**

otherwise in writing or a court order otherwise directs.  Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this Litigation, with or without prejudice; or (2) final judgment after the completion and exhaustion of all appeals, re-hearings, remands, trials, or reviews of this Litigation, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

### **DESIGNATION**

24.    Any Producing Party may designate Discovery Material as CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY in accordance with this Protective Order if such party in good faith believes that such Discovery Material contains CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY information.

25.    For information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), designation in conformity with this Protective Order requires that the Producing Party affix the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY" to each page that contains Protected Material, or, if not practicable, as otherwise agreed by the Parties.

26.    A Party or Third Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced.  During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Designating Party must determine which documents,

7

**A0707**

or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY") to each page that contains Protected Material, or, if not practicable, as otherwise agreed by the Parties. There will be no waiver of confidentiality, or any privilege or immunity, by the inspection of Discovery Material before it is copied and marked pursuant to this Order. Inspection of Discovery Material by any Party shall be conducted by persons eligible under Paragraphs 41 and 42 below.

27.     For documents produced in native format, the Producing Party shall include the appropriate confidentiality designation in the filename, as well as on any slip sheet accompanying the production. Any printed or PDFed copies of such designated documents shall be marked by the Receiving Party at the time of printing/PDFing with the appropriate confidentiality designation to ensure appropriate protection.

28.     Information revealed during a deposition upon oral or written examination under Fed. R. Civ. P. 30 shall be treated as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY for thirty (30) days (as calculated by Fed. R. Civ. P. 6) following receipt of the final transcript by Outside Counsel for the Designating Party, but not thereafter unless, before the thirty (30) day period has expired, Outside Counsel for the Producing Party notifies Outside Counsel for the Receiving Party in writing that the Discovery Material set forth in the transcript is CONFIDENTIAL, HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY. Counsel for any Party or Third Party also may designate the transcript or portions thereof to be CONFIDENTIAL Discovery Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material, or

HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material during the deposition.  The appropriate legend described in Paragraph 25 shall be placed on the front of any deposition transcript (and, if recorded, any copies of the recording) containing CONFIDENTIAL Discovery Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material.  Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material.  In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order.  In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential or highly confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative protective orders in this matter or pursuant to written stipulation of the parties." Counsel for any Producing Party shall have the right to exclude from confidential portions of oral depositions (e.g., involving testimony regarding Protected Material, or the use of such material in the deposition), other than the deponent, deponent's counsel, and the reporter and videographer (if any), any person who is not authorized by the Protective Orders in this action to receive or access Protected Material based on the designation of such Protected Material.

29.     Any pleading, brief, declaration, affidavit, expert report, or other filing that contains, describes, or discusses Protected Material shall be filed under seal pursuant to the requirements of D. Del. LR 5.1.3 and the Court's CM/ECF procedures.  The filing Party must

include on the cover page of the brief, or other filing, a descriptive legend in substantially the following format: "CONFIDENTIAL - FILED UNDER SEAL" or "HIGHLY CONFIDENTIAL (ATTORNEYS' EYES ONLY) - FILED UNDER SEAL." Outside Counsel for the Party filing papers containing, describing, or discussing Protected Material shall be responsible for providing appropriately redacted copies of the filed document to the Court in accordance with Paragraph (G)(l) of the United States District Court for the District of Delaware's Administrative Procedures Governing Filing and Service by Electronic Means, Revised January 2023.  If the filing contains the Protected Material of the Party who did not file the document, within three (3) days from the date of a filing made under seal, Outside Counsel for the filing Party or filing Third Party shall deliver to Outside Counsel for the non-filing Party or Parties a proposed public version of the under seal filing, which shall include the filing Party's proposed redactions of any Protected Material.  Within three (3) days after receipt of the proposed public version, Outside Counsel for the non-filing Party shall provide any additional redactions it believes appropriate.  Redacted versions of papers filed under seal may be made publicly available provided that (a) all Protected Material is redacted; and (b) such redacted versions are clearly marked "Public Version," and clearly identify each place where information or exhibits have been redacted or deleted.

## **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

30.    Any Party may challenge a designation of confidentiality at any time.  Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the Litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

31.    The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge.  To

10

**A0710**

avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order.  The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring in-person or telephonically within seven (7) days of the date of service of notice of the challenge.  In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.  The Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

32.    If the Parties cannot resolve a challenge without court intervention, the Challenging Party may file and serve a motion, or otherwise invoke the Court's discovery dispute resolution process.

33.    The burden of persuasion in any such challenge proceeding shall be on the Designating Party.  Neither party shall make frivolous challenges or challenges for an improper purpose (*e.g.*, to harass or impose unnecessary expenses and burdens on other parties).  All Parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation until the court rules on the challenge.

<u>**USE OF MATERIALS FROM PRIOR LITIGATION**</u>

34.    The provisions of this Order shall also be binding with respect to materials produced by and designated under the Protective Order (D.I. 38) therein by, any Party or Non-Party that produced documents in response to a subpoena in the prior litigation *Arm Ltd v.*

*Qualcomm et al.*, C.A. No. 22-1146 (D. Del.) (the "Prior Litigation"), excluding source code and documents produced from Qualcomm's database of quarantined materials.  For the convenience of the parties, and without conceding relevance to the claims or defenses here, the parties have agreed to treat all other materials produced in the Prior Litigation as if they had been produced in this Litigation.  This includes treating all such materials designated by any Party under the Protective Order in the Prior Litigation (D.I. 38) therein as if they were "Protected Material" produced with the same designation under this Order.

35.    In light of this agreement, the destruction obligations imposed by paragraphs 67–69 of the Protective Order (D.I. 38) in the Prior Litigation shall not apply to any materials within the scope of this section until the final disposition of this Litigation.

36.    The parties further agree that all depositions conducted in connection with the Prior Litigation can be used in this litigation and that use of those depositions do not count toward the deposition limits set forth in the Scheduling Order.  This paragraph shall not apply to portions of any deposition in which the witness discussed or reviewed source code that has not been produced in this litigation.  The Parties further agree that any briefing or related materials filed under seal in the Prior Litigation may be referenced in this Litigation without violating the Prior Litigation Protective Order (D.I. 38), but they are not evidence and are not deemed produced in this Litigation.

## ACCESS TO AND USE OF PROTECTED MATERIAL

37.    Protected Material produced by a Party or Third Party may be used by the Receiving Party only for purposes of this Litigation, and shall not be used in any other way, or for any other purpose.  Unless otherwise permitted in writing between Producing Party and Receiving Party, any individual who personally receives, other than on behalf of Producing Party, any

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material shall not participate in amending, drafting, or otherwise affecting the scope of patent specifications or claims before a Patent Office or agency (whether domestic or foreign) of any patent or patent application related to the information disclosed in the HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material, from the time of receipt of such material through one (1) year after the date the individual person(s) provides written notice to the Producing Party that said person ceases to have access to the HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material as well as any materials that contain or disclose such material, or if access does not cease, one (1) year after termination of this Litigation, as set forth above. For avoidance of doubt, the foregoing provision applies to pending applications as well as post-grant proceedings. Unless otherwise permitted in writing between Producing Party and Receiving Party, any Expert retained on behalf of Receiving Party who is to be given access to Producing Party's documents or Protected Material must agree in writing, using the form in Exhibit A, not to perform hardware or software development work or product development work directly or indirectly intended for commercial purposes related to the information disclosed in the HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material, which is not publicly known, from the time of first receipt of such material through one (1) year after the date the Expert provides written notice to the Producing Party that said expert consultant ceases to have access to any Protected Material, as well as any materials that contain or disclose Protected

13
**A0713**

Material or if access does not cease, one (1) year after termination of this Litigation, as set forth above.

38.    Nothing in this Protective Order precludes a Producing Party from using or disseminating its own Discovery Material, including Protected Material for purposes other than this Litigation.

39.    At the deposition of any fact witness, unless agreed to by the Designating Party, such witness may be shown Protected Material only if the witness is a current employee of the Designating Party, the Protected Material indicates that the witness authored the Protected Material, or the witness received or reviewed the Protected Material in the ordinary course of business and outside the context of this Litigation.

40.    At the deposition of any corporate representative designated pursuant to Fed. R. Civ. P. 30(b)(6) to testify on behalf of a Party on a particular topic or subject area, unless agreed to by the Designating Party, such witness may be shown Protected Material only if the Designating Party is the Party being deposed pursuant to Fed. R. Civ. P. 30(b)(6), the Protected Material indicates that an employee or agent of the Party being deposed pursuant to Fed. R. Civ. P. 30(b)(6) authored the Protected Material, or the witness received or reviewed the Protected Material in the ordinary course of business and outside the context of this Litigation.

41.    Third parties may designate as CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY deposition transcripts of their witnesses and any Discovery Material they produce, whether voluntarily or by subpoena, to the same extent and in the same manner as Parties and any such Protected Material shall be treated by the Parties in the same manner as the Protected Material produced by a Party.  Third Parties shall have the same rights

and obligations under this Protective Order as Parties and may move the Court to enforce the provisions of this Protective Order.

42. The Parties acknowledge that Protected Material also may be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the U.S. government export control and economic sanctions laws, such as the Export Administration Regulations ("EAR", 15 CFR 730 et seq., http://www.bis.doc.gov/) administered by the Department of Commerce, Bureau of Industry and Security, and the Foreign Asset Control Regulations (31 CFR 500 et seq., http://www.treas.gov/offices/enforcement/ofac/) administered by the Department of Treasury, Office of Foreign Assets Control ("OFAC"). Receiving Parties will abide by U.S. law and applicable regulations governing the disclosure, export, re-export, transfer, or release of any export-controlled Protected Material ("Export Controlled Information") to any destination, person, entity, or end use prohibited or restricted under U.S. law, including obtaining prior U.S. government authorization to the extent required by regulation. The U.S. government maintains embargoes and sanctions against the countries listed in Country Groups E:1/2 of the EAR (Supplement 1 to part 740). Export Controlled Information disclosed in this action will be used only for the purposes of this action. The Producing Party shall be responsible for identifying any Export Controlled Information, and the Receiving Party shall take measures necessary to ensure compliance. This paragraph shall be interpreted consistent with applicable U.S. law and is not intended to contradict such law.

43. Producing Party's Source Code:

(a) To the extent that a Producing Party makes Source Code available for inspection by a Receiving Party:

15

**A0715**

i. The Producing Party shall make all relevant and properly requested Source Code available electronically and in text searchable form at the offices of Counsel of Record for Producing Party or at a secure facility approved by Producing Party. The Producing Party shall make the Source Code available for inspection on a stand-alone, non-networked personal computer running a reasonably current version of the Microsoft Windows operating system ("Source Code Computer"). Alternatively, solely at the option of the Producing Party, the Producing Party may make such source code available on a Source Code Computer that is networked, in a configuration deemed secure by Producing Party. The Source Code Computer shall be configured to permit review of the Source Code through a password-protected account having read-only access. To facilitate review of the Source Code at the secure facility, the Receiving Party may use appropriate tool software on the Source Code Computer, which shall be installed by the Producing Party, including at least one text editor like Visual Slick Edit that is capable of printing out Source Code with page and/or line numbers, a source code comparison tool like Winmerge, and at least one multi-text file text search tool such as "grep." Should it be necessary, other mutually agreed upon tools may be used. Licensed copies of other mutually agreed upon tool software shall be installed on the Source Code

16

**A0716**

Computer by the Producing Party and paid for by the Receiving Party.

ii.    In the event a Producing Party makes Chip-Level Schematics or Integrated Circuit Layouts available for review, the Producing Party shall ensure that the Source Code Computers include software sufficient to allow a user to view such types of Source Code.

(b)    Any Source Code produced in discovery shall be made available for inspection, in its native form and native directory structure as organized and kept in the ordinary course of business allowing it to be reasonably reviewed and searched, during normal business hours (9:00 a.m. to 4:30 p.m. local time, Monday-Friday, excluding holidays) or at other mutually agreeable times, at a mutually agreed upon location.  Upon reasonable notice from the receiving party, which shall not be less than three (3) business days in advance, the supplier shall make reasonable efforts to accommodate the receiving party's request for access to the computer outside of normal business hours.  Following the end of expert discovery, a party is not obligated to make Source Code produced in discovery available for inspection.

(c)    The Source Code Computers shall be equipped to print PDF copies of the Source Code so that the Receiving Party can designate the Source Code for which it would like hard-copy printouts which shall be printed by the Producing Party on watermarked pre-Bates numbered paper after the review.  The Receiving Party may request a reasonable number of pages of Source Code to be printed.  A reasonable number of pages means no more than 500 pages of Source Code, on 8.5" x 11" paper with a font no smaller than Courier 12-point.  The parties agree to negotiate printing beyond these page limits in good faith, should the need arise.  Counsel for the Producing Party will keep the original printouts, and shall provide copies of such original printouts

17

**A0717**

to counsel for the Receiving Party within seven (7) days of (1) any request by the Receiving Party, or (2) otherwise being notified that such original printouts have been made or designated.  Counsel of Record for the Receiving Party may request up to 5 copies of each original printout of Source Code.  No more than 500 original printouts of Source Code for any software release or hardware product may be in printed form at any one time, without the express written consent of Producing Party, which shall not be unreasonably denied.  All printed Source Code shall be logged by Receiving Party's Counsel of Record and/or other Personnel Retained by a Receiving Party in this action as noted in subparagraph (i) below.  No additional electronic copies of the Source Code shall be provided by the Producing Party.  Hard copies of the Source Code also may not be converted into an electronic document, and may not be scanned using optical character recognition ("OCR") technology.  Only printouts of Source Code may be made, and such printouts, where made of programming language text, must include (1) directory path information and filenames from which the Source Code came and (2) line numbers.  The Producing Party may refuse to provide copies of Source Code printouts that fail to comply with this section.

(d)     Authorized reviewer(s) in this action shall not print Source Code that has not been reviewed on the Source Code Computer, or in order to review the Source Code elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code electronically on the Source Code Computer, as the Parties acknowledge and agree that the purpose of the protections herein would be frustrated by such actions.

(e)     Authorized reviewer(s) are prohibited from bringing outside electronic devices, including but not limited to laptops, floppy drives, zip drives, or other hardware into the secure room, except as outlined in subparagraph (f).  Nor shall any cellular telephones, personal digital assistants (PDAs), Blackberries, cameras, voice recorders, Dictaphones, external or

18

**A0718**

portable telephone jacks, or other outside electronic devices be permitted inside the secure room, except for medical devices, implants, or equipment reasonably necessary for any legitimate medical reason.

(f)        If any authorized reviewer(s) reviewing Source Code seeks to take notes, all such notes will be taken on bound (spiral or other type of permanently bound) notebooks. No loose paper or other paper that can be used in a printer may be brought into the secure room. In addition to taking notes on bound notebooks, an authorized reviewer may also bring a USB memory device to the secure room, to be inserted into a separate notetaking laptop computer provided by the Producing Party or the Producing Party's vendor. The notetaking laptop computer shall be configured with Microsoft Word, such that the Reviewing Party can create or modify documents directly on the USB memory device plugged into the notetaking laptop computer. The Receiving Party shall encrypt any file on the USB memory device that contains confidential material subject to this Protective Order using Microsoft Word's "Encrypt with Password" functionality accessible through the File->Info->Protect Document menu in Microsoft Word. The Receiving Party's Outside Counsel and/or Experts may not copy the Source Code into the notes and may not take such notes electronically on the Source Code Computer itself. Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Order, the Receiving Party's Outside Counsel and/or Experts shall remove all notes, documents, USB memory devices, and all other materials from the Source Code Review Room. The Producing Party shall not be responsible for any items left in the room following each inspection session, and the Receiving Party shall have no expectation of confidentiality for any items left in the room following each inspection session without a prior agreement to that effect.

19

**A0719**

(g)   If Source Code is quoted or set forth in a confidential pleading or expert report, the Party including the Source Code will limit the amount of such Source Code to what is reasonably necessary for the party to make its point and will designate such documents as "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY." Absent the Producing Party's consent (which will not be unreasonably withheld), an excerpt of programming language text will not exceed five (5) continuous lines of code, and an excerpt of Chip-Level Schematics or Integrated Circuit Layouts will not exceed five (5) sequential pages of printouts of such material.  Except as approved by the Producing Party in writing, longer excerpts shall not be copied for use in court documents but shall be referred to by citation to production page numbers and lines.  A Receiving Party may not submit copies of Source Code as part of a Court document or exhibits thereto.  Source Code must be submitted *in camera* only.  Instead, a Receiving Party wishing to refer to Source Code in Court documents shall use pin cites to Source Code material submitted *in camera.*  In the event copies of Source Code printouts are used as exhibits in a deposition or trial, printouts shall not be provided to the court reporter, and the further copies of the original Source Code printouts made for the deposition or trial shall be destroyed at the conclusion of the deposition or trial.  The original copies of deposition exhibits designated "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY" will be maintained by the deposing party under the terms set forth in this Protective Order.

(h)   In addition to other reasonable steps to maintain the security and confidentiality of Source Code, printed copies of the Designated Source Code Material maintained by the Receiving Party must be kept in a locked storage container when not being actively reviewed or otherwise being transferred as permitted by this Protective Order.

(i)     The Receiving Party's Counsel of Record shall keep log(s) recording the identity of each individual to whom each hard copy of each Producing Party's Source Code is provided and when it was provided to that person in the first instance, and within thirty (30) days after the issuance of a final, non-appealable decision resolving all issues in this action, the Receiving Party must serve upon Producing Party the log.  In addition, any Expert of the Receiving Party to whom the paper copies of the Source Code were provided must certify in writing that all copies of the Source Code were destroyed or returned to the counsel who provided them the information and that they will make no use of the Source Code, or of any knowledge gained from the source code in any future endeavor.

**DISCLOSURE OF PROTECTED MATERIAL**

44.     Unless otherwise directed by the Court or authorized in writing by the Designating Party, CONFIDENTIAL Discovery Material may be disclosed by the Receiving Party only to the following persons:

(a)     In-house counsel of the Receiving Party, including paralegals, eDiscovery teams, and secretarial staff, provided that they have signed the "Declaration to be Bound" attached as Exhibit A;

(b)     Any Outside Counsel;

(c)     Contract attorneys retained by a Party's Outside Counsel for the sole purpose of assisting with document review in this Litigation and who shall be subject to the same restrictions as Outside Counsel;

(d)     Any Expert who is expressly retained by any Outside Counsel to assist in this Litigation, including any associates or analysts working under the supervision of the Expert, with disclosure only to the extent necessary to perform such work, who have signed the

"Declaration to be Bound" attached as Exhibit A and as to whom the procedures set forth in Paragraph 44 have been followed;

   (e)  Support personnel for Experts, such as secretaries and clerical staff, assisting with this Litigation under the supervision of the Expert;

   (f)  Any interpreter, court reporter, or other shorthand reporter or typist who is translating, recording, or transcribing documents or testimony in connection with this Litigation;

   (g)  Professional Vendors retained by a Party or Outside Counsel to whom disclosure is reasonably necessary for this action;

   (h)  Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the Parties, and his or her staff;

   (i)  Personnel of the Court and all appropriate courts of appellate jurisdiction; and

   (j)  Any other person with the prior written consent of the Designating Party or by order of this Court.

45.  Unless otherwise directed by the Court or authorized in writing by the Designating Party, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material may be disclosed by the Receiving Party only to the following persons:

   (a)  Any Outside Counsel;

   (b)  Contract attorneys retained by a Party's Outside Counsel for the sole purpose of assisting with document review in this Litigation and who shall be subject to the same restrictions as Outside Counsel;

(c)    Any Expert who is expressly retained by any Outside Counsel to assist in this Litigation, including any associates or analysts working under the supervision of the Expert, with disclosure only to the extent necessary to perform such work, who have signed the "Declaration to be Bound" attached as Exhibit A and as to whom the procedures set forth in Paragraph 44 have been followed;

(d)    Support personnel for Experts, such as secretaries and clerical staff, assisting with this Litigation under the supervision of an Expert;

(e)    Any interpreter, court reporter, or other shorthand reporter or typist who is translating, recording, or transcribing documents or testimony in connection with this Litigation;

(f)    Professional Vendors retained by a Party or Outside Counsel to whom disclosure is reasonably necessary for this action;

(g)    Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the Parties, and his or her staff; who have, after the date of this Protective Order, signed the "Declaration to be Bound" attached as Exhibit A;

(h)    Personnel of the Court and all appropriate courts of appellate jurisdiction;

(i)    Any other person requested with the prior written consent of the Designating Party or by order of this Court who has signed the "Declaration to be Bound" attached as Exhibit A.

46.    CONFIDENTIAL Discovery Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material shall not be disclosed to persons described in Paragraph 41 (a), (d), (e), or (j) or 42 (c), (d), (g), or (i), unless and until such person has executed

23
**A0723**

the "Declaration to be Bound" attached as Exhibit A. Outside Counsel must maintain a copy of the executed Exhibit A for each such person during the Litigation and for one (1) year thereafter.

47.    Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, before a Party can disclose to an Expert any Protected Material, Outside Counsel for the Receiving Party: (a) shall serve a notice on the Designating Party identifying such individual by name, business address, business profession, country of citizenship, and including an up-to-date curriculum vitae ("CV") or equivalent resume disclosing the individual's employment history, past or present relationship with any of the Parties and Affiliates, the individual's employment and consulting relationships for the past five (5) years with the dates of the consultancy or employment and a brief description of the subject matter of the consultancy or employment (to the extent such information is not disclosed on the individual's curriculum vitae), all cases in which the individual has testified in a deposition or a trial in the past six (6) years, an indication of whether Outside Counsel for the Receiving Party intends to show the individual CONFIDENTIAL Discovery Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material, and an executed copy of the "Declaration to be Bound" attached as Exhibit A from the individual to whom the disclosure is to be made; and (b) shall abide by the provisions of Paragraph 34.

48.    With respect to Experts that have not been previously disclosed to the Producing Party, the Designating Party shall have five (5) business days, starting from the first business day following the date upon which the Receiving Party provides the notice and all information regarding the Expert required by Paragraph 44 to the Designating Party, to object for good cause in writing to such disclosure via e-mail to all Outside Counsel. After the expiration of the five (5) business days, if no objection for good cause has been asserted by the Designating Party, Protected

24
**A0724**

Material may be disclosed to the Expert pursuant to the terms of this Protective Order. Any objection by the Designating Party must be made for good cause, and must set forth in detail the grounds on which it is based. Should the Receiving Party disagree with the basis for the objection(s), the Receiving Party must first attempt to resolve the objection(s) with the Designating Party via a verbal meet and confer. If the meet and confer efforts do not resolve the dispute within five (5) business days from the date upon which Receiving Party was first notified of any objection for good cause by Designating Party, the parties shall raise the dispute with the Court using the discovery dispute procedures as set forth in the Scheduling Order within three (3) business days. The burden shall be on the objecting Party to demonstrate to the Court why such individual should not be permitted to receive Protected Material. Such Protected Material shall not be disclosed to such individual pending the Court's resolution of the dispute. If relief is not sought from the Court within that time, the objection shall be deemed withdrawn. The foregoing time periods may be extended or shortened by agreement of the Parties or by Order of the Court.

49.     The recipient of any Protected Material that is provided under this Protective Order (including any copies or excerpts made thereof) shall maintain such Protected Material in a secure and safe area and shall exercise reasonable and proper care with respect to the storage, custody, use, and/or dissemination of such Protected Material. The recipient of Protected Material produced in electronic form shall maintain such Protected Material on a secure, password-protected computer, drive, or server with access restricted to persons authorized under Paragraphs 41 and 42, respectively.

50.     Pre-trial proceedings shall be conducted in a manner, subject to the supervision of the Court, to protect from disclosure Protected Material to persons not authorized to have access to such Protected Material. Any Party intending to disclose or discuss Protected Material at pretrial

proceedings shall make reasonable efforts to give advance notice to the Producing Party, and shall otherwise treat such Protected Material consistent with the terms of this Protective Order.

### PRODUCING A THIRD PARTY'S PROTECTED MATERIALS

51. In the event that a Party is required, by a valid discovery request, to produce a Third Party's confidential information in its possession, and the Party is subject to an agreement restricting the ability to produce the Third Party's confidential information, then the Party shall:

(a) promptly notify in writing the requesting Party and the Third Party that some or all of the information requested is subject to a confidentiality agreement with a Third Party;

(b) promptly provide the Third Party with a copy of the Protective Order and the relevant discovery request(s); and

(c) promptly make the information requested available for inspection by the Third Party.

52. If the Third Party fails to seek a protective order or other relief from this Court within twenty-one (21) days of receiving the notice and accompanying information, the Third Party's confidential information responsive to the discovery request shall be produced, with an appropriate confidentiality designation. If the Third Party timely seeks a protective order, the Third Party's confidential information responsive to the discovery request shall not be produced before a determination by the Court. Absent a Court order to the contrary, the Third Party shall bear the burden and expense of seeking protection in this Court of its Protected Material.

### EXPERT DISCOVERY

53. In accordance with Federal Rule of Civil Procedure 26(b), communications and exchanges between counsel and Experts (including testifying Experts), including those made in preparing drafts of expert reports and declarations, are not discoverable unless the Expert relies on

any such communication to support his or her opinion. In addition, draft expert reports and declarations are not discoverable. Communications and exchanges between counsel and non-testifying Expert witnesses are not discoverable. Notes made by Experts for purposes of this Litigation are not discoverable. Neither Party shall seek discovery of non-discoverable Expert communications, exchanges, notes, or draft reports or declarations.

## **<u>NO WAIVER OF PRIVILEGE BY VIRTUE OF DISCLOSURE</u>**

54.     The disclosure or production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, or the failure to object to the use of such Privileged Information, whether inadvertent or otherwise, will not waive the applicable privilege and/or protection regardless of the circumstances of the disclosure or production, whether in this Litigation or in any other federal or state proceeding. This provision constitutes an Order under Federal Rule of Evidence 502(d), which shall be interpreted to provide the maximum protection allowed by Rule 502(d), and shall be interpreted consistent with applicable ethical guidelines. Upon discovery of the production of Discovery Material over which a privilege or protection is claimed, a Producing Party may promptly request the return of such Discovery Material. The Producing Party must produce a privilege log or amended privilege log for any such Discovery Material within three (3) days of its request for the return of such material. If the Producing Party claims that only a portion of a Document contains privileged or protected material, the Producing Party shall also provide a new copy or copies of the Document(s) with the relevant material redacted concurrent with the notification, to the extent reasonably practicable. Upon a request from any Producing Party who has produced Discovery Material that it believes is privileged and/or protected (the "Identified Materials"):

(a)     the Receiving Party shall not, from that point onward, copy, distribute, or otherwise use in any manner the Identified Materials, unless the parties agree or the Court orders;

27

**A0727**

(b)    the Receiving Party shall instruct all persons to whom the Receiving Party has disseminated the Identified Materials that such information is subject to this Order and may not be copied, distributed, or otherwise used; and

(c)    the Receiving Party and all persons notified as set out in the preceding subparagraph shall, within ten (10) calendar days:

i.    return, destroy, delete, or sequester, all Identified Materials, and make a good faith effort to return, destroy, delete, or sequester all portions of all analyses, memoranda, or notes that were internally generated based upon the Identified Materials;

ii.    return, destroy, delete, or sequester, all copies of the Identified Materials in electronic format in databases, production media, or other locations used to store the documents. For Identified Materials stored on production media, the Receiving Party may load the production, but shall exclude the Identified Materials (thus sequestering them on the production media), or immediately destroy, delete, or sequester them after loading the production.

55.    For purposes of this Order, Identified Materials that are not reasonably accessible under Federal Rule of Civil Procedure 26(b)(2)(B) because they are stored by the Receiving Party on backup storage media are deemed to be sequestered. Should such data be retrieved, the Receiving Party must promptly take steps to delete the restored Identified Materials.

56.    The Receiving Party may make no use of the Identified Materials during any aspect of this matter or any other matter, including in depositions or at trial, unless the documents are later designated by a court of competent jurisdiction as not privileged or protected.

57.     If any Receiving Party has reason to believe that it is in receipt of Privileged Information from a Producing Party, the Receiving Party shall not copy, distribute, or otherwise use such Privileged Information in any manner and shall provide prompt notice to the Producing Party to afford an opportunity to request return of the materials in the manner set forth herein.

58.     Nothing in this Order overrides any ethical responsibilities to refrain from examining, disclosing, or using materials that an attorney knows or reasonably should know to be privileged and to inform the Producing Party that such materials have been produced.

59.     The contents of the Identified Materials shall not be disclosed to anyone who was not already aware of the contents before the notice was made.

60.     If the Receiving Party has any notes or other work product reflecting the contents of the Identified Materials, the Receiving Party will not review or use those materials unless a court of competent jurisdiction later designates the Identified Materials as not privileged or protected.

61.     If the Receiving Party returning the Identified Materials contests the Producing Party's claim of privilege or other applicable protection, the parties will promptly meet and confer in an attempt to resolve the dispute.  If the parties are unable to resolve the dispute, the Receiving Party may move the Court for an order compelling production of some or all of the Identified Materials:

(a)     The basis for such a motion may not be the fact or circumstances of the production or disclosure or any of the factors listed in FRE 502(b).

(b)     The Producing Party retains the burden, upon the Receiving Party's challenge, of establishing the privileged or protected nature of Identified Materials.

29

**A0729**

(c)    Pending resolution of the motion, the Receiving Party must not use the contested information in any way, or disclose it to any person, other than those required by law to be served with a copy of the sealed motion.

62.    This Protective Order does not constitute a concession by any party that any documents are subject to protection by the attorney-client privilege, the work product doctrine or any other potentially applicable privilege or doctrine.  This agreement also is not intended to waive or limit in any way any party's right to contest any privilege claims that may be asserted with respect to any of the documents produced except to the extent stated in the agreement.

63.    Identified Materials under this Order shall not be used as grounds by any third party to argue that any waiver of privilege or protection has occurred by virtue of any production in this case.

64.    FRE 502(b) is inapplicable to the Identified Materials, which shall receive the maximum protection afforded by FRE 502(d).  Under FRE 502(d) and 28 U.S. Code § 1738, this Order shall be enforceable and granted full faith and credit in all other state and federal proceedings.  Any subsequent conflict of law analysis shall apply the law most protective of privilege and work product.

65.    Notwithstanding the provisions of this Order, Parties may redact from any document, whether Protected Material or not, any information containing privileged material, attorney work product, or any other data protected from disclosure by State or Federal laws or regulations.

### FAILURE TO DESIGNATE

66.    The failure by a Producing Party to designate Discovery Material as CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material shall not

30
**A0730**

be a waiver of such designation provided that the Producing Party that fails to make such designation informs the Receiving Party that such Discovery Material is CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY promptly after the failure to designate first became known to the Producing Party.  The failure by a Producing Party to designate Discovery Material as CONFIDENTIAL, as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or as HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY shall not preclude a Party from seeking relief from the Court at a later date requesting imposition of such designation or challenging the propriety thereof.  The Producing Party shall reproduce the Discovery Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Party.  Upon receiving the Discovery Material with the correct confidentiality designation, the Receiving Party shall promptly return or securely destroy all Discovery Material that was not designated properly and certify compliance.

67.    In the event of disclosure of Protected Material to any person not authorized to such access under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately inform Outside Counsel for the Party whose Protected Material has been disclosed of all known relevant information concerning the nature and circumstances of the disclosure.  The Party responsible for improperly disclosing such Protected Material shall also promptly take all reasonable measures to retrieve the improperly disclosed Protected Material, to ensure that no further or greater unauthorized disclosure and/or use thereof is made, to inform the person or persons to whom unauthorized disclosures were made of all the terms of this Protective Order, and to request such person or persons to execute the "Declaration

to be Bound" attached as Exhibit A. Nothing in these provisions should be construed as limiting any Producing Party's rights to seek remedies for a violation of this Protective Order.

68.    If the Receiving Party discovers that an unauthorized person or persons has accessed or obtained the Protected Material of another Party, the Receiving Party shall: (1) provide written notice to Producing Party of such breach within three (3) business days of Receiving Party's discovery of the breach; (2) investigate and remediate the effects of the breach, and provide Producing Party with assurance reasonably satisfactory to Producing Party that such breach shall not recur; and (3) provide sufficient information about the breach that the Producing Party can reasonably ascertain the size and scope of the breach including, but not limited to, the nature of the compromise, the timing of the compromise, the documents compromised, the nature of the unauthorized party, and the data security in place at the time of the compromise. If required by any judicial or governmental request, requirement, or order to disclose such information, the Receiving Party shall take all reasonable steps to give the Producing Party sufficient prior notice in order to contest such request, requirement, or order through legal means. The Receiving Party agrees to provide reasonable cooperation to the Producing Party or law enforcement in investigating any such security incident. In any event, the Receiving Party shall promptly take all necessary and appropriate corrective action to terminate the unauthorized access as it deems appropriate in its good faith and reasonable judgment. If the unauthorized access or disclosure of the Protected Material requires notice to individuals, organizations, or regulators under applicable law, then the Receiving Party shall follow the reasonable instructions of the Producing Party regarding such notice at their own cost.

## **DATA SECURITY**

69.    Receiving Parties must take reasonable precautions to protect Protected Material from loss, misuse and unauthorized access, disclosure, alteration and destruction, including but

32

**A0732**

not limited to: (a) material in electronic format shall be maintained in a secure litigation support site(s) that applies standard industry practices regarding data security, including but not limited to application of access control rights to those persons entitled to access Protected Material under this Order; (b) any Protected Material downloaded from the litigation support site(s) in electronic format shall be stored only on encrypted devise(s) (e.g., laptop, tablet, smartphone, thumb drive, portable hard drive) that are password protected with access limited to authorized users, if the user is unable to password protect and/or encrypt the device, then the Protected Material shall be password protected and/or encrypted at the file level; and (c) derivations of Protected Material, including any lists, memorandum, indices or compilations prepared or based on an examination of this material, that quote from or paraphrase such Designated material in a manner that enables it to be identified shall be accorded the same status of confidentiality as the underlying Protected Material.

## DESTRUCTION OF PROTECTED MATERIALS

70.    Unless otherwise ordered or agreed in writing by Producing Party, not later than sixty (60) days (as calculated by Fed. R. Civ. P. 6) after the final disposition of this Litigation, each Receiving Party, including Outside Counsel, will use commercially reasonable efforts to destroy all Protected Material produced by the other Parties in this action and destroy or redact any such Protected Material included in work product, pleadings, motion papers, legal memoranda, correspondence, trial transcripts and trial exhibits admitted into evidence ("derivations") and all reasonably accessible copies thereof.

71.    With respect to any copy of Protected Material or derivation thereof that remains on back-up tapes and other disaster storage media of an authorized reviewer(s), the Receiving Party shall not be required to delete Protected Material to the extent the systems are overwritten in the normal course of business, are located in electronic files not reasonable accessible, or where

33
**A0733**

located in archiving and back-up systems where deletion would require more than commercially reasonable efforts.  Neither the Receiving Party nor its consultants, experts, counsel or other party acting on its behalf shall make copies of any such information available to any person or otherwise retrieve, access, or use the material for any purpose other than backup or disaster recovery unless compelled by law and, in that event, only after thirty (30) days prior notice to Producing Party or such shorter period as required by court order, subpoena, or applicable law.

72.    Not later than sixty (60) days (as calculated by Fed. R. Civ. P. 6) after the final disposition of this Litigation, the Party receiving any Protected Material shall certify in writing that it, including its Outside Counsel, has complied with its obligations under this Paragraph.

## MISCELLANEOUS PROVISIONS

73.    This Protective Order is without prejudice to the right of any Party to seek further or additional protection of information for which the protection of this Protective Order is not believed by any Party to be adequate.  Nothing in this Protective Order shall be deemed to bar or preclude any Producing Party from seeking such additional protection, including, without limitation, an order that certain information may not be discovered at all.

74.    The entry of this Protective Order shall not be construed as a waiver of any right to object to the furnishing of information in response to discovery, and except as expressly provided, shall not relieve any party of the obligation of producing information in the course of discovery.

75.    If at any time Protected Material of a Producing Party is subpoenaed from a Receiving Party or is the subject of a discovery request directed to a Receiving Party in any proceeding before any court or arbitral, administrative, or legislative body, the person to whom the subpoena or other request is directed shall immediately give written and email notice pursuant to the provisions of Paragraph 75 and shall provide the Producing Party with an opportunity to object to the production of such materials.  Such notification must include a copy of the subpoena

34

A0734

or order.  The Receiving Party also must immediately inform, in writing, the party who caused the subpoena or order to issue that some or all of the material covered by the subpoena or order is subject to this Protective Order.  In addition, the Receiving Party must provide a copy of this Protective Order promptly to the party in the other action that caused the subpoena or order to issue.  If the Producing Party does not seek a protective order within fifteen (15) days (as calculated by Fed. R. Civ. P. 6) of the date written notice is given, the Receiving Party to whom the subpoena or other request is directed may produce, on or after the date set for production in the subpoena or other request, but not prior to the end of the fifteen (15) day notice period, such material in response thereto, under a protective order with confidentiality provisions equal to or more restrictive than those of this Protective Order.

76.    Other Proceedings.  By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated as CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY, pursuant to this Protective Order shall promptly notify that party of the motion so that the party may have the opportunity to appear and be heard on whether that information should be disclosed.

77.    Outside Counsel shall have the right to exclude from depositions, other than the deponent and the reporter, any person who is not authorized under this Protective Order to receive Protected Material.  Such right of exclusion shall be applicable only during periods of examination or testimony directed to Protected Material.

78.    All notices during this Litigation required by this Protective Order are to be made by email to a Party's Outside Counsel (including, if available, to Outside Counsel's service distribution email address designated for this Litigation), and all notices subsequent to the termination of Litigation are to be made by email and U.S. mail to a Party's Outside Counsel and the office of the Party's general counsel, if known.  The date by which a Party receiving notice shall respond or otherwise take action shall be computed from the date of service as calculated by Fed. R. Civ. P. 6.  Any of the notice requirements herein may be waived in whole or in part, but only in writing signed by Outside Counsel for the Designating Party.

79.    Nothing in this Protective Order shall bar or otherwise restrict any Outside Counsel from rendering advice to his or her client with respect to this Litigation and, in the course thereof, relying in a general way upon his or her examination of Protected Material produced or exchanged in this Litigation: provided, however, that in rendering such advice and in otherwise communicating with a person not permitted access to Protected Material under this Protective Order, the Outside Counsel shall not disclose the contents of Protected Material produced by any other Party or Third Party.

80.    Execution of this Protective Order shall not constitute a waiver of the right of any Party to claim in this Litigation or otherwise that any document, communication, or any portion thereof is privileged or otherwise non-discoverable, or is not admissible in evidence in this Litigation or any other proceeding.

81.    Each person who receives CONFIDENTIAL Discovery Material or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material agrees to be subject to the jurisdiction of this Court for the purpose of any proceedings relating to the performance under, compliance with, or violation of this Protective Order.

82.    This Order may be amended by the agreement of Outside Counsel for the Parties in the form of a written Stipulated Amended Protective Order signed by each Party's Outside Counsel and filed with the Court for approval.  The Court retains the right to allow disclosure of any subject or Protected Material covered by this Protective Order or to modify or vacate this Protective Order at any time in the interest of justice.

83.    Neither the final disposition of this Litigation nor the termination of employment of any person with access to any Protected Material shall relieve any individual from the obligation of maintaining the confidentiality of such information in accordance with this Protective Order. The Court shall retain jurisdiction to enforce the terms of the Protective Order after final disposition of this Litigation.

**A0737**

| | |
|---|---|
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| */s/ Jennifer Ying* | */s/ Robert M. Vrana* |
| Jack B. Blumenfeld (#1014) | Anne Shea Gaza (No. 4093) |
| Jennifer Ying (#5550) | Robert M. Vrana (No. 5666) |
| Travis J. Murray | Samantha G. Wilson (No. 5816) |
| 1201 North Market Street | Rodney Square |
| P.O. Box 1347 | 1000 North King Street |
| Wilmington, DE 19899 | Wilmington, DE 19801 |
| (302) 658-9200 | (302)  571-6600 |
| jblumenfeld@morrisnichols.com | agaza@ycst.com |
| jying@morrisnichols.com | rvrana@ycst.com |
| tmurray@morrisnichols.com | swilson@ycst.com |
| OF COUNSEL: | OF COUNSEL: |
| Karen L. Dunn | Gregg F. LoCascio, P.C. |
| William A. Isaacson | Jason M. Wilcox, P.C. |
| Melissa F. Zappala | KIRKLAND & ELLIS LLP |
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP | 1301 Pennsylvania Ave., NW |
| 2001 K Street, NW | Washington, DC 20004 |
| Washington, DC 20006-1047 | (202) 389-5000 |
| (202) 223-7300 | glocascio@kirkland.com |
| kdunn@paulweiss.com | jason.wilcox@kirkland.com |
| wisaacson@paulweiss.com | |
| mzappala@paulweiss.com | Jay Emerick |
| rjgarrett@paulweiss.com | KIRKLAND & ELLIS LLP |
| | 333 West Wolf Point Plaza |
| Catherine Nyarady | Chicago, IL 60654 |
| Erin J. Morgan | (312) 862-2000 |
| Jacob A. Braly | jay.emerick@kirkland.com |
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP | |
| 1285 Avenue of the Americas | Daralyn J. Durie |
| New York, NY 10019-6064 | Shaelyn Dawson |
| (212) 373-3000 | MORRISON & FOERSTER LLP |
| cnyarady@paulweiss.com | 425 Market Street |
| ejmorgan@paulweiss.com | San Francisco, CA  94105 |
| jbraly@paulweiss.com | (415) 268-7000 |
| | ddurie@mofo.com |
| *Attorneys for Plaintiffs* | shaelyndawson@mofo.com |
| | Erik J. Olson |
| | MORRISON & FOERSTER LLP |
| | 755 Page Mill Road |
| | Palo Alto, CA  94304 |
| | (650) 813-5600 |
| | ejolson@mofo.com |

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

*Attorneys for Defendant*

**SO ORDERED this 21st day of March 2025.**

_____

**The Honorable Maryellen Noreika**
**United States District Judge**

39

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>  a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>  a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 24-490 (MN) |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>  a U.K. corporation, | ) ) ) | |
| Defendant. | ) ) | |

## DECLARATION TO BE BOUND BY PROTECTIVE ORDER

I, _____ [print or type full name], a citizen of

_____ [print or type country of citizenship], am a

_____[print or type present occupation or job description] of

_____ [print or type business name

and business address] and declare under penalty of perjury that I have read in its entirety and

understand the Protective Order that was issued by the United States District Court for the

District of Delaware on _____ [date] in the above-captioned Litigation.

I have received and carefully read the Protective Order in this Litigation and understand

its provisions. Specifically, I understand that I am obligated, under order of the Court, to hold in

confidence and not to disclose the contents of anything provided to me in the above-captioned

case marked "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

ONLY" except as permitted by the Protective Order. According to the restrictions of Paragraph

34 of the Protective Order, I will use Discovery Material, including CONFIDENTIAL Discovery

Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material, or

**A0740**

information derived therefrom solely for purposes relating to the above-captioned Litigation.  I will never use such Discovery Material or information derived therefrom, directly or indirectly, in competition with the Producing Party, including hardware or software development work or product development work intended for commercial purposes related to the information disclosed in the Protected Material, from the time of receipt of such material through and including the date that I cease to have access to any Protected Material, nor will I permit others to do so.

In addition to the foregoing, I understand that I must abide by all of the provisions of the Protective Order.  At the termination of this Litigation or any time requested by Outside Counsel for the Party by whom I am engaged, I will return or destroy all documents and other materials, including notes, computer data, summaries, abstracts, or any other materials containing or reflecting CONFIDENTIAL Discovery Material or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material that have come into my possession, and will return or destroy all documents or things I have prepared relating to or reflecting such information.

I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this Litigation.  I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Date:_____

Signature:_____

**A0741**

# Exhibit 24

**A0742**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INCORPORATED,<br>  a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>  a Delaware corporation,<br><br>              Plaintiffs,<br><br>      v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>  a U.K. corporation,<br><br>              Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 24-490 (MN)<br>)<br>)  **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>) |

**STIPULATED ORDER FOR DISCOVERY, INCLUDING**
**DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI")**

After conferring on these matters, the Parties hereby stipulate to the following protocol for electronic discovery and respectfully ask the Court to enter this Order.  Accordingly, and for good cause shown,

IT IS ORDERED that:

**1.      General Provisions**

a.      **Purpose**.  This Stipulated Order will govern discovery of electronically stored information ("ESI") in this case.  The term "ESI" carries its broadest meaning consistent with Fed. R. Civ. P. 26 and 34.  Without limitation, ESI includes word-processing documents, PowerPoint or other presentation documents, spreadsheets, electronic design files and flowcharts, PDF files, image files (*e.g.*, JPEG and TIFF), and e-mail.  Nothing in this Stipulated Order establishes any agreement as to either the temporal or subject matter scope of discovery.  Nothing in this Stipulated Order creates an obligation by any Party to produce ESI on back-up tapes or other long-term storage media that were created for use as a disaster recovery medium.  The Parties shall not be

**A0743**

obligated under this Stipulated Order to produce ESI that is no longer within their possession, custody, or control (*i.e.*, lost or deleted) as a result of the good-faith operation of an electronic information system or document retention policy. This Stipulated Order may be modified for good cause.

b.     **Cooperation**.   The Parties are aware of the importance the Court places on cooperation and hereby commit to cooperate in good faith throughout this matter consistent with this Court's Default Standard for Discovery and Fed. R. Civ. P. 26-36. The parties expect to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36. In the event that the parties are unable to agree on the parameters and/or timing of discovery, the following standards shall apply until further order of the Court, or the parties reach agreement.

c.     **Proportionality**.   The Parties agree to use reasonable, good faith and proportional efforts to preserve, identify, and produce relevant information.[1] This includes identifying appropriate limits to discovery, including limits on custodians, limits on discoverable data sources, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues. Requests for production and corresponding responses shall be reasonably targeted, clear, and as specific as practicable in compliance with Federal Rule of Civil Procedure 34(b)(1)(A).

d.     **Preservation of Discoverable Information**. A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control.

---

[1]   Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

(i)     Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to backup and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody, or control.

(ii)     Absent a showing of good cause by the requesting party, the categories of ESI identified in **Schedule A** attached hereto need not be preserved or searched for responsive information.

e.     **Privilege**.

(i)     The parties will continue to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements.  The privilege log should be provided within 30 days after substantial completion of production.

(ii)     With respect to information generated after the filing of the Complaint, parties are not required to include any such information in privilege logs.  Communications may be identified on a privilege log by category, rather than individually, if appropriate.

(iii)     Logging of Redactions for Privilege.  Partially privileged documents produced in redacted form may either be identified on a privilege log or the Producing Party shall provide a metadata field setting forth the nature of the privilege(s), as set forth herein.  A Receiving Party may request a log identifying information sufficient to justify the claim of privilege provided in the metadata.

(iv)     Contents of Privilege Log.  Consistent with Fed. R. Civ. P. 26(b)(5), the following information should be provided (as applicable) in the privilege log for each document or category of documents:

3

**A0745**

(1)  unique document identification numbers;

(2)  nature of privilege or protection claimed (e.g., Attorney-Client Privilege, Work-Product);

(3)  name of the authors (if known) – to the extent a document is an email or email chain, the name of the senders of the most recent email in the chain shall be identified;

(4)  date range of documents in each category (based on metadata, for electronic documents);

(5)  for emails, names of the recipient(s), including those in the TO, CC, and BCC fields;

(6)  general nature of the reasons for the privilege assertion that, without revealing the information itself that is privileged or protected, is sufficient to enable the requesting party to assess the validity of the privilege claim.

(v)  Challenges to Privilege Log.

(1)  The parties retain the right to request metadata for individual documents and emails, including lesser-included communications in email strings, if necessary to properly assess the privilege claim for any document included in a categorical privilege log.

(2)  If a requesting party believes in good faith that one or more items or categories in a producing party's privilege log should be produced and are inappropriately being withheld, then it shall raise the issue as to each log entry with the producing party in writing with

4

**A0746**

reasonably sufficient detail so that the producing party may understand the reasons for the requesting party's complaint. Within 7 calendar days, the producing party shall respond in writing. If the response does not satisfy the requesting party, then the parties shall meet and confer, and if the dispute as to the privileged nature of the material cannot be resolved, then the requesting party may seek relief from the Court as to the specific log entries raised with the producing party. Nothing in this procedure to challenge a Party's privilege log modifies the producing party's burden to establish the privileged nature of the withheld document.

(vi)     Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

(vii)     The Parties have conferred on an appropriate non-waiver order under Fed. R. Evid. 502, as set forth in the proposed Protective Order. Until a non-waiver order is entered, information that contains privileged matter or attorney work product shall be immediately returned if such information appears on its face to have been inadvertently produced or if notice is provided of inadvertent production.

(viii)     Nothing in this Order, including any production of documents under the ESI protocol set forth herein, shall constitute a waiver by any Party for any purpose.

**2.     Specific E-Discovery Issues**

a.     **On-site inspection of electronic media**. Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

b.     **Search methodology**.

(i)    If the producing party elects to use search terms to locate potentially responsive ESI from a particular data source, it shall disclose the search terms so used and any exclusion criteria (including, but not limited to, date restrictions).  In analyzing possible search terms for use in locating potentially responsive ESI, the producing party may run test searches to analyze the suitability of possible search terms or exclusion criteria.  Absent a showing of good cause based on the size, complexity, and issues of this specific case, a requesting party may request no more than 10 additional search terms for testing by the producing party with respect to the ESI data source(s) on which the producing party elected to use search terms to locate potentially responsive ESI.  Within 14 days of receiving additional search terms from the requesting party, the producing party shall perform test searches for the requested search terms, disclose search terms results, and inform the requesting party whether it objects to any of the requested terms, including (but not limited to) search terms that return a disproportionate amount of non-responsive or immaterial ESI, or an unreasonably large number of results.  In such cases, the parties shall work together to modify or revise the search terms as appropriate.  If the parties cannot reach agreement regarding appropriate search terms, they shall submit their dispute to the Court in accordance with the Court's discovery dispute procedures.  Without waiting for a ruling on the disputed search terms, the producing party shall use the undisputed search terms, if any, to search ESI. The identification of materials via agreed-upon searches shall not prevent the producing party from withholding such materials on the grounds that they are not responsive, or protected from disclosure by applicable privilege, immunity, or agreement between the parties.  Notwithstanding prior agreement on the search terms to be used for electronic searches, if a search term returns a disproportionate amount of non-responsive or immaterial ESI, or an unreasonably large number of results, the parties shall (at the producing party's request) meet and confer to discuss application

6

**A0748**

of negative search restrictions, and the party receiving production shall not unreasonably oppose further restrictions to filter a disproportionate amount of non-responsive or immaterial ESI, or an unreasonably large number of results. After the parties come to agreement on reasonable terms, each producing party shall perform elusion testing of the ESI population that did not hit on search terms (the null set) by conducting a statistical sample (95% confidence level, +/- 2% margin of error) of the null set to confirm whether any responsive ESI was missed. If a producing party finds that more than 10% of the null set is responsive, the producing party will add terms as necessary to identify responsive ESI found in the null set, then conduct additional null set sampling and adding of additional search terms until the proportion of missed responsive ESI is less than 10%, provided that the additional terms return a proportion of responsive or material documents greater than the non-responsive or immaterial documents also resulting from the additional terms (after calibrating the terms to get reasonable precision).

(ii)    Focused terms, rather than over-broad terms (*e.g.*, product and company names), shall be employed. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word or are part of a conjunctive search term (*e.g.*, "computer" and "system" or "printer" or "mainframe"). Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the search.

(iii)    To the extent possible, the producing party shall locate potentially responsive ESI from (i) the non-custodial data sources identified in accordance with paragraph 3(b) of the Default Standard for Discovery; and (ii) the custodians identified in accordance with

7

**A0749**

paragraph 3(a) of the Default Standard for Discovery. The Parties shall exchange lists of the custodians whose data will be searched, as well as the applicable date ranges. The Parties agree to meet and confer on any additional data sources or custodians a requesting party identifies as having potentially relevant information.

c. **Technology Assisted Review (TAR)**. No Party can compel another Party to use TAR or to produce documents without human review over the producing party's objection. To the extent a producing party elects to use technology for prioritization or other workflows designed for review efficiency while still reviewing all of the documents within the review population, this use is not required to be disclosed to the requesting party. On the other hand, a producing party that elects to use TAR to cull documents from the review population shall promptly inform the requesting party of its intent to do so. The parties shall promptly meet and confer to agree on the information that must be disclosed regarding the producing party's proposed use of TAR, but at minimum, such disclosure shall set forth the tool it intends to employ, the validation methodology it intends to use, and exceptions to the application of TAR.

d. **Deduplication**. The parties shall de-duplicate stand-alone documents or entire document families globally using MD5, or SHA-1 Hash value matching. Deduplication shall not break apart families and shall be performed at a family level (for example, email attachments shall not be eliminated from the parent email). Hard copy documents shall not be eliminated as duplicates of responsive ESI. The producing party shall take reasonable steps to de-duplicate ESI on a family level globally (i.e., both within a particular custodian's files and across all custodians).[2] No Party shall be required to identify and/or eliminate electronic duplicates by manual review or

---

[2]    There may be non-custodial data sources that cannot be globally deduped or for which global deduplication is not appropriate.

some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above. In globally de-duped, incremental productions, there will be instances when production of documents from additional custodians will include documents previously produced. A Custodian Append overlay load file using the load file format described above shall be provided with updated AllCustodian and AllFilePaths fields; BegBates and EndBates fields may be used as the unique identifiers.

e.      **Format**. ESI and non-ESI shall be produced to the requesting party as text searchable image files (e.g., TIFF). When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting; the metadata (as noted below); hidden comments, tracked changes, speaker notes, and columns, rows, and sheets; and, where applicable, the revision history. The parties shall produce their information in the following format: single-page TIFF greyscale format images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata and document breaks.

f.      **Native files**. The only files that should be produced in native format are files not easily converted to image format, such as audio, video, and spreadsheet files (e.g., Excel). A party that receives a document produced in non-native format may make a reasonable request to receive the document in its native format. In lieu of a TIFF image version of each spreadsheet file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the native format version of each file. When redaction is necessary, a redacted TIFF image version shall be produced. Content that would otherwise be available in the native format, including hidden columns, rows, and sheets; comments; and "track changes" (and similar in-line editing) must be included in the

9

**A0751**

image version.  The parties reserve the right to request access to the native format versions of such files.

g.    **Databases and Structured Data Format**.  To the extent a response to discovery requires production of discoverable ESI contained in a database, the producing party may elect to produce the data in a report format if that format is reasonably usable or in a native format compatible with Microsoft Excel or Microsoft Access.

h.    **Paper Documents**.  In scanning paper documents, distinct documents should not be merged into a single record and single documents should not be split into multiple records.  If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes should be maintained as it existed when collected by the producing party and should be reflected in proper coding of the family fields set out in the metadata fields specified herein.  Parties may unitize their documents using either physical unitization (i.e., based on physical binding or organizational elements present with the original paper documents like staples, clips, and binder inserts) or logical unitization (i.e., a manual review of the paper to determine what logically constitutes a document like page numbers or headers).  If unitization cannot be reasonably maintained, the original unitization should be documented in the data load file or otherwise electronically tracked if reasonably possible.  The producing party should scan and produce folders, redwelds, binder-covers and other organizational structure.  Such materials should be produced as independent documents and be produced before the documents that were contained in these elements to the extent reasonably accomplishable by the above-addressed unitization, (e.g., the file folder should have a Production number immediately before the documents contained in the file folder).  The producing party will provide the name of the custodian who had possession of the document when it was collected.  A custodian can consist of

10
**A0752**

the name of an employee or other person, a department, or an archive storage location. The producing party will create and produce optical character recognition (OCR) of paper documents.

i. **Color**. The parties will accommodate reasonable and proportional requests made in good faith for the production of specific color images originally produced in greyscale TIFF format to the extent available and where reasonably necessary to decipher the complete meaning, context, or content of the documents on a case by case basis.

j. **Redactions**. The producing party may redact, from any TIFF image, metadata field, and/or native file, information that is protected from disclosure by any applicable privilege or immunity law or regulation, including but not limited to information protected by the attorney-client privilege, work product doctrine, joint defense work product doctrine, individually identifiable health information, or personal identifying information. Each redaction shall be clearly labeled and include the reason for the redaction, such as "Redacted-Privileged" or "Redacted-Private," as appropriate. The producing party shall preserve an unredacted version of the document. Where a document contains both protected and non-protected responsive content, the producing party shall redact the protected material and produce the remainder of the document as redacted. The parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this paragraph. No party shall be required to produce a redaction log provided that the reason for the redaction appears on the redaction label (e.g., "Privileged," "Private"). Redacted documents may have certain metadata fields withheld from production. The parties shall cooperate to create a list of metadata fields which may be produced for these documents.

k. **Non-English language documents**. Documents shall be produced in their original language. Where a requested document exists in a foreign language and the producing party also has a reasonably available English-language version of the document that it prepared for non-

11

**A0753**

litigation purposes prior to the filing of this lawsuit, the producing party shall produce both the original document and any such English-language versions.  In addition, if the producing party has a reasonably available certified translation of a foreign-language document that is being produced (whether or not the translation is prepared for purposes of litigation), the producing party shall produce both the original document and the certified translation.

l.      **Instant Messages**.  For instant message and chat application data stored in company enterprise systems, the Parties shall produce messages in a 24-hour period, as opposed to a custom time period or producing individual messages.  This does not limit the Parties from redacting information that is protected from disclosure within the 24-hour period.

m.      **Email threads**.  The parties are obligated to produce only the most inclusive part of an email thread (for example, only the last-in-time email in an email chain comprised of 15 emails), with the exception of any individual emails in an email thread with unique attachments, which should also be produced.

n.      **Document Family**.  All document family relationships shall be produced together and children files should follow parent files in sequential Bates number order.  This does not impose any requirement on parties to associate and produce together hyperlinked documents.

o.      **Embedded Files**.  The parties will not review or produce embedded images or documents outside the document in which the file is embedded (e.g., .vcf files embedded in emails, .xlsx files embedded in PowerPoint presentations).  The parties will accommodate reasonable and proportional requests made in good faith for the production of embedded files (non-images), on a case by case basis.

p.    **Metadata fields**.  The parties are obligated to provide only the following metadata for all ESI produced, to the extent such metadata exists: All Custodian, File Path,[3] Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Date Accessed, Time Accessed, Meeting Start Date, Meeting Start Time, Meeting End Date, Meeting End Time, Message ID, Importance, Sensitivity, Filename, Author, Date Created, Time Created, Date Saved, Time Saved, MD5 Hash, File Size, Title, File Extension, File Size, Confidentiality Designation, Redacted (indicating whether document is redacted), Redaction Reason (nature of the privilege), Hidden Content, Text Path, Native Path, Bates Number Begin, Bates Number End, Attachment Count, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

q.    **Encrypted or Password Protected Files**.  The parties will make reasonable efforts to ensure that all Documents they produce are decrypted, and if possible, will decrypt any encrypted documents on the receiving party's request.

r.    **Production Media**.  The parties will make reasonable efforts to ensure that any productions made are free from malware.  Any media on which Documents are produced may be encrypted by the producing party.  In such cases, the producing party shall transmit the encryption key or password to the requesting party under separate cover upon service of the encrypted media.

---

[3]    File path metadata created in the course of collecting files for purposes of litigation is not required to be produced if such production would reveal privileged information.

**SCHEDULE A**

1.     Deleted, slack, fragmented, or other data only accessible by forensics.

2.     Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.     On-line access data such as temporary internet files, history, cache, cookies, and the like.

4.     Data in metadata fields that are frequently updated automatically, such as last opened dates.

5.     Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6.     Voice messages and voicemails.

7.     Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.  Instant messages that are retained on corporate servers dedicated to instant messaging are not included here.

8.     Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9.     Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10.    Text messages, instant messages, chat application data, and other data stored on mobile devices.

11.    Logs of calls made from mobile devices.

12.    Server, system, or network logs.

13.    Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

14.    Data remaining from systems no longer in use that is unintelligible on the systems in use.

**A0756**

15. Dynamic fields of databases or log files that are not retained in the usual course of business.

16. Automatically saved versions of documents and emails as temporary files.

17. Personal computers and personal e-mail not regularly used for business activities.

18. Social media sites.

19. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and disposition of computer equipment.

20. Files that do not store user-created content during ordinary use such as structural files, operating system files, application source code, configuration, and other similar application files.

21. Files included on the National Institute of Standards and Technology (NIST) List (https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl/nsrl-download).

22. Other forms of ESI the preservation of which requires extraordinary affirmative measures that are not utilized in the ordinary course of business.  Data stored on photocopiers, scanners, and fax machines.

23. Data remaining from systems no longer in use that is unintelligible on the systems in use.

**A0757**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis J. Murray
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
rjgarrett@paulweiss.com

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
cnyarady@paulweiss.com
ejmorgan@paulweiss.com
jbraly@paulweiss.com

*Attorneys for Plaintiffs*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302)  571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
shaelyndawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

**A0758**

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

*Attorneys for Defendant*

**SO ORDERED this 21st day of March 2025.**

_____
**The Honorable Maryellen Noreika**
**United States District Judge**

**A0759**

# Exhibit 25

**IIIORRISON FOERSTER**

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA  90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON FOERSTER LLP

AUSTIN, BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI,
NEW YORK, PALO ALTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

May 16, 2025

Writer's Direct Contact
+1 (213) 892-5348
NFung@mofo.com

BY EMAIL

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:    *Qualcomm Inc. v. Arm Holdings Plc.*, C.A. No. 24-00490-MN (D. Del.)

Counsel:

We write regarding deficiencies in Qualcomm's search terms, including those identified in its March 17, 2025, letter, as well as its continued refusal to provide additional terms responsive to requests made in Arm's subsequent requests for production made after service of those initial terms. As described below, Qualcomm's search terms do not capture the universe of information sought in Arm's subsequent sets of RFPs, and in any event are too narrow to capture the relevant documents and categories of information central to Qualcomm's claims.[1] Qualcomm's search terms broadly track its strategy in responding to discovery writ large: Qualcomm simply refuses to search for documents relevant to any defenses Arm might have to Qualcomm's claims, because Qualcomm believes none of that information is relevant or discoverable. That is wrong. Arm is entitled to take discovery on Qualcomm's claims, including discovery that refutes or otherwise undermines those claims. Qualcomm has no basis for its continued refusal to meaningfully participate in discovery.

---

[1] Arm asked Qualcomm four times to confirm that the search terms disclosed in Qualcomm's March 17, 2025, letter comprise the entirety of Qualcomm's search terms for Arm's Requests for Production, including Arm's Second and Third Sets of Requests for Production. (*See, e.g.,* 4/28/2025 email from K. Friedland to J. Apkon.) Qualcomm refused to confirm which of Arm's RFPs its search terms purportedly cover and instead waited weeks to vaguely respond that "Qualcomm disclosed its complete current list of search terms used to locate potentially responsive ESI on March 17." (4/29/2025 email from J. Apkon to K. Friedland.) Given Qualcomm's apparent position that it may use additional search terms to respond to Arm's requests for production in the future, Arm has reserved a portion of its ten terms for any additional terms disclosed by Qualcomm. Arm reserves the right to identify deficiencies in any additional terms disclosed by Qualcomm.

**A0761**

**IIIORRISON FOERSTER**

C. Nyarady
May 16, 2025
Page Two

**Qualcomm Must Provide New Search Terms In Response to Arm's Subsequent Sets of RFPs.** To date, Qualcomm has refused to provide any additional search terms it plans to use in this litigation beyond those identified in its March 17, 2025 letter. That letter predates many of Arm's requests for production, and accordingly, does not capture the full universe of responsive information Arm seeks. Qualcomm has refused to provide additional terms, while Arm has provided 31 new terms and even accepted or modified terms Qualcomm requested. Arm has sought to work with Qualcomm in good faith, to cooperatively identify terms with a reasonable review burden and targeted at Qualcomm's requests (subject to Arm's objections). Qualcomm, by contrast, has only objected, obstructed, and refused to produce documents and propose additional search terms. Qualcomm's obstructionist tactics have put Arm in an impossible position: Arm is only permitted to request 10 additional terms under the ESI protocol, but given Qualcomm's steadfast refusal to provide *any* new terms (or indeed to provide much clarity as to the scope of, among other things, its competition claim) Arm cannot hope to cover the waterfront of what Qualcomm has left out with only 10 terms.

Qualcomm's current search terms are plainly deficient, and do not cover the universe of information that (1) Arm requested in its sets of RFPs served *after* Qualcomm identified these terms and (2) Qualcomm has agreed to produce. There are numerous examples demonstrating this disparity and the deficiency of Qualcomm's current search terms, and we identify several (non-limiting) examples below.

For one, Qualcomm has agreed to produce documents responsive to Arm's RFP No. 72, requesting "Documents, Communications, and Things relating to Qualcomm's involvement in Quintarius." Yet, none of Qualcomm's existing search terms hit on anything related to Quintarius, particularly where "Quintarius" is not included in any search string. There is no way Qualcomm can produce "communications" responsive to this RFP—the kind of ESI necessarily requiring a search term—without a single targeted search term.

For another, Qualcomm has agreed to produce documents in response to Arm's RFP No. 148, which requests "All Communications by [Qualcomm] to Arm requesting OOBs, ACK tests, patches, updates, bug fixes, and any other items" for Qualcomm's "designs or products that incorporate, are based on, embody, contain, or relate to Nuvia Designs or Nuvia-based Products, including Phoenix, Hamoa, Pakala, Oryon, Nordschleife, and Pegasus, and [] any subsequent designs or products …," yet none of the following search terms are included in Qualcomm's list: "test*," "update*," "bug*," "fix*," "Nuvia," "Phoenix," Hamoa," "Pakala," "Oryon," "Nordschleife," or "Pegasus." And although Qualcomm has agreed to produce documents in response to Arm's RFP Nos. 160, 161, 163, and 164, which request, *inter alia*, "Communications … relating to the validation of any Architecture Compliant Core, ARM Compliant Product, and all implementations thereof …," the search term "valid*" is not included in Qualcomm's list. Further, while Qualcomm has agreed to produce

**A0762**

**IIIORRISON FOERSTER**

C. Nyarady
May 16, 2025
Page Three

documents in response to Arm's RFP No. 166, which requests, *inter alia*, "Communications … relating to the architecture validation processes for … ███████████████," the search terms "██████," and "██████" are not included in Qualcomm's list, nor does Qualcomm have a general "v9" term likely to capture this universe of information as (explained in greater detail below) its current terms are over-limited.

**Qualcomm's Current Search Terms Are Too Narrow.**  Not only has Qualcomm failed to provide search terms that would hit on relevant and responsive ESI, but Qualcomm's search terms are over-limited, artificially narrow, and not targeted to cover the universe of responsive material central to Qualcomm's claims and Arm's defenses.

By way of example, Qualcomm has agreed to produce documents in response to Arm's RFP No. 65, which seeks "Documents, Communications, and Things relating to Qualcomm's use of ISAs provided by organizations other than Arm, including x86 or RISC-V, or products built using the same." Qualcomm has only one term even touching on such a subject, and it is woefully deficient. Qualcomm's search term No. 26 covers "(RISC OR ISA) AND (ecosystem OR applications OR developers)". For one, Qualcomm has *no* search terms touching on "Intel" or "x86."[2] For another, the proper name for the alternate ISA is "RISC-V" not "RISC," a term *not* currently being run by Qualcomm. Nor does Qualcomm's use of "RISC" contain a root extender that would suggest it is capturing alternative forms of the term, including "RISC-V." And, strangely, the search term excludes the term "architecture," which Qualcomm included elsewhere in conjunction with "ISA." Further, the inclusion of an AND connector to (ecosystem or application or developers) is likely over-limiting the term. "Ecosystem" is separate and apart from the information actually sought by the RFP, and the use of plural "developers" is likely over limiting where a root extender on "develop*" would better capture the relevant universe. Nor did Qualcomm limit its response to the use of any of those terms. *See* Qualcomm's R&Os to Arm's Second Set of RFPs at No. 65. This search term deficiency plagues Qualcomm's response to all of Arm's requests that seek information about relevant alternative ISAs. *See* RFPs 64, 66, 67, 68.

Similarly, Qualcomm's terms do not contain a term targeted to capture documents relevant to Arm's ISA. The only term related to Arm's ISA contains the limiter "V10 AND." As you know, Arm disagrees that v10 is relevant to Qualcomm's operative first amended complaint ("FAC"). Yet, Qualcomm is only searching for documents related to Arm's ISA in conjunction with the use of "v10." That is the kind of discovery misdirection courts do not

---

[2] Notably, Qualcomm seemingly has limited its production to exclude x86 or Intel. Qualcomm must clarify whether it intends to argue that x86 or Intel are competitors in the market in which Qualcomm insists competition was harmed, so that Arm can assess whether such discovery is necessary in defense of Qualcomm's claims.

**A0763**

**IIIORRISON FOERSTER**

C. Nyarady
May 16, 2025
Page Four

condone—Qualcomm is only willing to produce information on its terms, and on its (inoperative) second amended complaint, but refuses to produce materials that substantiate Arm's defenses in response to the only *operative* complaint. For example, the operative FAC alleges issues and performance complaints with Arm's ISA and cores, and harm to competition from Arm's conduct unrelated to v10. To that end, Arm served RFP No. 69, seeking "All Documents, Communications, and Things relating to the performance, benefits, or drawbacks of, or comments, criticisms, or concerns regarding, Arm's ISA."[3] Qualcomm has no search terms likely to capture that information, and its only term related to Arm's ISA excludes v8 and v9. Qualcomm's only term that contains "V8" or "V9" and a few variations is limited to "(ARM AND extend*)"—it doesn't use the term "ISA" or "architecture," and the use of "extend*" is likely over limiting responsive material.

Another example is Qualcomm's deficient "market" or competition-related search terms. Qualcomm has agreed to provide one market-related term: (Market or customer) AND (size OR share) and (CPU or SoC). Puzzlingly, Qualcomm now insists it need not prove a relevant market, nor monopoly or market power within that market, under its UCL claim, yet its only search term targeted at that universe of information relates solely to market "size OR share." As you know, Arm disagrees with Qualcomm's position—harm to competition must necessarily occur within a market. Yet, Qualcomm has agreed to produce documents responsive to this term that it believes is irrelevant—this despite Qualcomm's refusal to produce documents in response to eight of Arm's terms on relevance grounds. Nor does Qualcomm's term "ARM AND (compet*) AND (harm or threat*)" cover the waterfront. A single use of (compet*) in conjunction with "ARM" does not capture the universe of information Arm has sought related to *other* competition in the market, how strong or weak that competition is, among who and what market players, what constitutes usual market conduct, and what relevant substitutes or alternative products exist.

In addition, many of Qualcomm's search terms will not capture how Qualcomm personnel communicate about the topics in question. For example, Qualcomm's Search Term No.1 contains a limiter "AND customer," but from our review of Qualcomm's productions to date, Qualcomm often does not refer internally to "customers," instead using the name of the company to which it provides its product. Nor does Qualcomm provide any alterative terms "licensee" or "partner." Accordingly, the use of "AND customer" is severely limiting the term and likely excluding a significant volume of likely responsive information.

---

[3] Qualcomm agreed to produce documents in response to this request, although it did so by effectively changing the response to information that "relate[s] to using a non-Arm ISA to remedy Arm's withholding of deliverables." *See* Qualcomm's R&Os to Arm's Second Set of RFPs at No. 69. Setting aside that that is entirely nonresponsive to the information sought, as explained above Qualcomm does not have a search string responsive to that category of information either.

**A0764**

**IIIORRISON ҒOERSTER**

C. Nyarady
May 16, 2025
Page Five

Further, many of Qualcomm's search terms are simply missing relevant variations or synonyms of terms.

- Qualcomm's single search term regarding OOB includes just that one variation of the term and does not include, for example, "out-of-box," "out of box," or "OOBs" plural (nor does Qualcomm's term contain a root extender). Qualcomm also includes a single search term regarding Arm's alleged withholding of materials, yet fails to provide any variations other than "withhold*" or "withheld*," including, for example, "refus*" or "deny."

- Qualcomm's search terms include "CPU" and "SoC" but fail to include variations such as "core," the common name referred to in conversation and in Qualcomm's documents, and which Qualcomm uses in other limited CPU-related search terms— and "system-on-chip." *See, e.g.*, QCVARM_0468186 ( ███████████████████████████ ); QCVARM_0465843 ( ███████████ ); QCVARM_0466618 ( ███████████ ).

- Qualcomm's use of "Snapdragon X Elite" and "Snapdragon 8 Elite" in its search terms is unlikely to capture communications or documents that do not use the exact product names but rather colloquial variations like, for example, Snapdragon or Oryon. In fact, Qualcomm uses the broader "Snapdragon" term in a different search term that contains other limiters like a conjunctive "Arm."

- Qualcomm's search term regarding its request for an extension of the ALA includes the term "new," but fails to include variations such as "renew," "exten*," or "continu*." Similarly, Qualcomm's search terms include terms for "terminat*" and "breach," but do not include variations such as "cancel," "end," or "status." Indeed, for one of Qualcomm's search terms, it has included the full term "termination," and not the broader "terminat*" term with root extender that Qualcomm includes for other strings.

- Qualcomm's search term regarding future or projected royalties fails to include variations of "future" and "projected" such as "forecast.*" Nor does it include a root extender for "projected" (i.e., "project*") that would capture "projection" or "projects." Instead, Qualcomm's term is limited only to the past tense. With respect to royalties, Qualcomm has not provided any variations such as "rate," "revenue*", "fee*," "price," or "pay*", despite providing similar terms elsewhere related solely to ███████████ . Yet even that ███████████ specific search term is insufficient, failing to include root extenders for any term but "royal*," and instead

**A0765**

**IIIORRISON FOERSTER**

C. Nyarady
May 16, 2025
Page Six

limiting to a full term like "payment" as opposed to ("pay* OR paid").  And, that term nonetheless still fails to include "rate."

- Qualcomm has provided just two search terms regarding ███████████ without including variations of these company names or Qualcomm's internal codenames for the deals or transactions surrounding those companies that it has alleged Arm "interfered with."

At a minimum, Qualcomm should modify its search terms to address the deficiencies identified above. But in any event, Qualcomm must provide additional search terms responsive to Arm's requests that post-date these terms. Similarly, Qualcomm has never attempted to substantiate its March 17, 2025 terms through hit reports or other testing. If Qualcomm continues to refuse to provide additional terms or otherwise modify its terms to adequately capture information central to Qualcomm's claims and Arm's defenses, then it must immediately provide hit reports. To that end, Qualcomm has sought [and received] hit reports from Arm on Qualcomm's requested additional terms. Qualcomm should have no objection to reciprocal discovery and providing hit reports of its own—particularly where to date Qualcomm has refused to provide any additional terms on the basis that its March 17, 2025 terms are sufficient. To the extent Qualcomm continues to refuse to do so, Arm reserves all rights to seek relief as appropriate with the Court.

**Qualcomm's Identification of Custodians Is Deficient**.  Qualcomm's identification of custodians is similarly deficient. As with its search terms, Qualcomm has never attempted to substantiate that the five custodians it identified on March 17 are the correct custodians for running its search terms. Qualcomm's list of custodians is deficient on its face. As one example, none of the five individuals listed are identified in Qualcomm's initial disclosures as having any knowledge regarding any of the competition issues Qualcomm plead in its complaint. And as with its search terms, Qualcomm has never updated its list of custodians, including after Arm served dozens of additional RFPs on new issues.

As another example, Arm's Interrogatory No. 1 asks Qualcomm to identify "the specific Qualcomm personnel" relating to each alleged harm Qualcomm suffered. None of the five custodians Qualcomm identified in relation to its search terms are identified in Qualcomm's interrogatory response. The same is true for Arm's entire 1st Set of Interrogatories (Nos. 1-9).  These interrogatories call Qualcomm's contentions on a variety of issues, but Qualcomm's five proposed custodians—Ziad Asghar, Jeff Golden, Jignesh Trivedi, Manju Varma, and Karl Whealton—are never identified in Qualcomm's responses.

Qualcomm's responses to Arm's 2nd Interrogatories are worse still. For two of Arm's Interrogatories, which related to communications with media and third parties including ████████████ (Nos. 10 and 11), Qualcomm responds that the three most knowledgeable

**A0766**

# IIIORRISON FOERSTER

C. Nyarady
May 16, 2025
Page Seven


persons are "Christiano Amon," "Pavan Mulabagal," and "Chris Patrick." None of these individuals are named as custodians for Qualcomm's search terms. That makes Qualcomm's search terms on this topic—such as "█████████████"—illusory and ineffective. Similarly, for Arm's Interrogatory No. 12, which relates to Arm's October 22, 2024 letter, Qualcomm again identifies Mr. Amon as one of just two knowledgeable persons regarding Arm's October 22, 2024 letter, but again does not identify him as a custodian for its search terms.

To the extent Qualcomm continues to refuse to identify and run search terms against knowledgeable custodians, please provide your availability for a meet and confer. Arm reserves all rights to seek relief as appropriate with the Court.

Sincerely,

*/s/ Nicholas Fung*

Nicholas Fung

cc:  All Counsel of Record (by email)

**A0767**

# Exhibit 26

**MORRISON FOERSTER**

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA  90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON FOERSTER LLP

AUSTIN, BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI,
NEW YORK, PALO ALTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

Writer's Direct Contact
+1 (213) 892-5348
NFung@mofo.com

June 30, 2025

BY EMAIL ███████████████████████████████████

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:    *Qualcomm Inc. v. Arm Holdings Plc.*, C.A. No. 24-00490-MN (D. Del.)

Counsel:

We write to follow-up on Arm's May 16, 2025 letter regarding deficiencies in Qualcomm's search terms.  Qualcomm's May 29, 2025 letter does not address Arm's concerns.

Qualcomm's statement that Arm "makes no claim that Qualcomm's production is deficient based on its search terms" is baseless.  (May 29, 2025 Nyarady Ltr. to Fung (no citation)).  Arm's May 16 letter sets forth numerous grounds as to the deficiency of Qualcomm's search terms.  Those deficiencies are echoed in the numerous disputes raised in Arm's discovery letter briefing to the Court.  To date, Qualcomm has failed to remedy a single one of those deficiencies, including through providing proper search term discovery.  By contrast, Arm has provided new search terms, accepted Qualcomm's proposed revisions to Arm's search terms, and continues to work with Qualcomm to reach a reasonable scope for its additional terms.  Arm reiterates the deficiencies with Qualcomm's search terms below, and reserves all rights to seek relief as appropriate based on Qualcomm's continued stonewalling and refusal to provide meaningful search term discovery.

**Qualcomm Must Provide New Search Terms In Response to Arm's Subsequent RFPs.**

Qualcomm does not dispute that the only search terms it has ever disclosed in this lawsuit are those in its March 17, 2025 letter.  Since March 17, 2025, however, Arm has served numerous additional RFPs which Qualcomm has responded to.  *See* April 14, 2025 Responses and Objections to Arm's Second Set of RFPs; May 1, 2025, Responses and Objections to Arm's Third Set of RFPs.  Qualcomm's position that its lone March 17 disclosure of search terms is adequate to cover the entirety of the dozens of additional RFPs served in the months since March 17 is not credible. Qualcomm's suggestion that it need not disclose additional search terms because it substantially completed production by May 1, 2025 ignores that its disclosed search terms pre-date numerous Arm RFPs.

sf-6792325.2

**A0769**

IIIORRISON FOERSTER

C. Nyarady
June 30, 2025
Page Two

Qualcomm has not provided any other justification for how its March 17 disclosure of search terms could possibly cover the gamut of additional RFPs served by Arm since then. Qualcomm contends that it has "produced documents responsive" to specific requests, but this does not address Qualcomm's failure to include in its search strings phrases that are specific to these RFPs.  Qualcomm's general position appears to be that its search terms have resulted in production of *some* responsive documents, but that is insufficient to meet Qualcomm's obligations.  *Feenix Payment Sys., LLC v. Steel Cap. Mgmt.*, LLC, No. CV 20-1519-MAK, 2021 WL 3862008, at *2 (D. Del. Aug. 24, 2021), report and recommendation adopted, No. CV 20-1519, 2021 WL 3862030 (D. Del. Aug. 26, 2021) ("Plaintiffs have a primary obligation 'to conduct a reasonably diligent search and to produce relevant, responsive documents in a timely manner . . . , irrespective of ongoing debates regarding search terms.'")

Arm's RFP 72.  This RFP requests "Documents, Communications, and Things relating to Quintauris and Qualcomm's involvement in Quintauris."  Qualcomm provides no justification why its search terms do not include the word "Quintauris.  Instead, Qualcomm states that it has produced "at least 10" documents that include the term "Quintauris." Absent Qualcomm's representation that these documents are all the documents that relate to Quintauris, this fails to meet Qualcomm's obligation to use reasonable search terms. Qualcomm's representation that Qualcomm's search terms are sufficient is not persuasive, considering that only 10 documents have been produced.

Arm's RFP 148.  This RFP requests, inter alia, "All Communications by [Qualcomm] to Arm requesting OOBs, ACK tests, patches, updates, bug fixes, and any other items" for Qualcomm's "designs or products that incorporate, are based on, embody, contain, or relate to Nuvia Designs or Nuvia-based Products, including Phoenix, Hamoa, Pakala, Oryon, Nordschleife, and Pegasus, and [] any subsequent designs or products."  Qualcomm's representation that its search terms, based on a one-sided characterization of the case, is sufficient.  Not so.  Arm is permitted to discovery regarding these products without Qualcomm's qualifier that these were "withheld" or "interfere" with Qualcomm's business.

Arm's RFP 160, 161, 163, & 164.  These RFPs relate to validation, and yet Qualcomm does not use the term "valid*" in its search terms.  Qualcomm contends that Arm has not articulated why the term would return a proportionate amount of ESI.  But that information is solely in Qualcomm's hands.  Arm's position is that the term "valid*" is reasonable because the RFPs relate to validation.  Qualcomm has not provided any basis for why such a search term "would likely result in an unreasonably large number of results."

Qualcomm contends that it used "search terms regarding verification" to meet its discovery obligation, but no iteration of "verification" exists in Qualcomm's March 17, 2025 letter.

sf-6792325.2

**A0770**

**IIIORRISON FOERSTER**

C. Nyarady
June 30, 2025
Page Three

Arm's RFP 166.  Qualcomm has not provided any basis for why adding the terms "███████" and "██████" are disproportional to the needs of the case.  Qualcomm's bare representation that its search terms are sufficient is not acceptable.

**Qualcomm's Search Terms Are Too Narrow.**

Qualcomm has not addressed Arm's concerns regarding Qualcomm's overly narrow search terms.

RFP No. 65.  As an example of Qualcomm's overly narrow search terms, Arm identified RFP No. 65, which seeks "Documents, Communications, and Things relating to Qualcomm's use of ISAs provided by organizations other than Arm, including x86 or RISC-V, or products built using the same."

First, Qualcomm proposed no search terms that mention Intel or its architecture, x86.  In response, Qualcomm merely states that because Intel typically does not license its architecture, including "Intel" or "x86" as search terms "makes no sense."  Leaving aside Qualcomm's alleged confusion, Qualcomm nevertheless must produce documents relating to Intel or x86.  Qualcomm should update its search terms to capture the full scope of Arm's RFP No. 65, including Qualcomm's use of ISAs such as x86.  Qualcomm must satisfy its discovery obligations.

Second, while Arm appreciates Qualcomm providing hit counts for the search term ("RISC-V architecture" R "RISC V architecture" OR "RISCV architecture") or ISA), this does not justify Qualcomm's use of an "AND" connector followed by ("ecosystem or applications or developers)."  RPF No. 65, as well as other RFPs relating to ISAs (e.g., 64, 66, 67, and 68) are not limited to "ecosystem or applications or developers."  Please explain why Qualcomm considers these terms as properly limiting the term "RISC OR ISA" to still capture Arm's ISA-related RFPs.  As Arm noted, Qualcomm did not limit its responses to Arm's RFPs by the terms "ecosystem" "applications," or "developers."

Arm's ISA.  Qualcomm's search terms remain deficient in capturing documents relating to Arm's ISA.  The only Qualcomm search term related to Arm's ISA is in conjunction with v10.  Qualcomm's response is that other Qualcomm search terms cover Arm's ISA.  Not so.  Qualcomm first identifies the term, (Arm AND **exten\*** AND (version OR v9 or v10 or "██████████████████")) (emphasis added).  But this term is unduly narrowed by the term "exten\*," and would not reasonably capture documents relating to performance, benefits, drawbacks, comments, criticisms, or concerns regarding Arm's ISA.  (*See* Arm's RFP No. 69.)  Qualcomm then identifies the term, (Arm AND (damage\* or impact) AND roadmap), which appears to relate to Arm as a company, and not to Arm's ISA.  Qualcomm

sf-6792325.2

**A0771**

**IIIORRISON FOERSTER**

C. Nyarady
June 30, 2025
Page Four

also identifies terms relating Arm's ALA or TLA, which relate to license agreements and not the scope of RFP No. 69.  Lastly, Qualcomm identifies term (RISC OR ISA) AND (ecosystem OR application OR developers), which, as explained above, is limited by the terms "ecosystem OR application OR developers" and would not capture a reasonable set of documents.

Market-related terms.  Qualcomm does not dispute that its lone search term relating to market does not cover documents sufficient to identify a relevant market.  Instead, Qualcomm states that its search term is sufficient to cover documents "responsive to" Qualcomm's claim.  But Qualcomm is obligated to provide documents responsive to Arm's RFPs.

Qualcomm's Search Terms.  As Arm explained in its May 16, 2025, letter, many of Qualcomm's search terms are missing relevant variations or synonyms of terms.

- OOB-related term.  Thank you for agreeing to add "out-of-box" and "out of box" as variations for this term.  Please explain why Qualcomm is not adding "OOBs" (plural) or a root extender as well.  Further, please explain why Qualcomm is limiting this search term to (withhold* or withheld*), and why Qualcomm is not considering adding (refus* or deny).
- CPU and SoC-related terms.  Arm's inquiry relates to Qualcomm not including "Core" in its search term relating to "CPU or SoC."  Arm appreciates that "Core" appears in other Qualcomm search terms.  Please let us know if Qualcomm agrees to add "Core" to this search term (i.e., (CPU or SoC or Core)).
- Snapdragon-related terms.  Thank you for including "Oryon" for the Snapdragon-related terms.  Regarding "Snapdragon," Arm proposes that Qualcomm include the internal codenames for its Snapdragon X Elite and Snapdragon 8 Elite products.  For example, based on public information, Qualcomm calls its Snapdragon X Elite product "X1E,"[1] and its Snapdragon 8 Elite product "SM8750."[2]  Arm also understands that Qualcomm also uses the codenames "███████" and "███████" respectively for these products.
- Renewal-related terms.  Qualcomm does not dispute that none of its terms include synonyms for "new" such as "renew" or "continu*."

---

[1] https://www.qualcomm.com/products/mobile/snapdragon/laptops-and-tablets/snapdragon-x-elite#Documentation

[2] https://www.qualcomm.com/products/mobile/snapdragon/smartphones/snapdragon-8-series-mobile-platforms/snapdragon-8-elite-mobile-platform#Documentation

sf-6792325.2

**A0772**

**IIIORRISON FOERSTER**

C. Nyarady
June 30, 2025
Page Five

- ████████████████ erms.  Qualcomm does not dispute that its search terms regarding ████████████ do not include internal code names or transaction names.  Qualcomm's argument that its terms are "sufficient" and it has "produced" some documents relating to ████████████ ignores that its two search terms on this issue remain deficient.

**Qualcomm's Identification of Custodians is Deficient.**

Qualcomm has ignored Arm's questions.  Please identify which, if any, custodians have knowledge regarding any of the competition issues Qualcomm pleaded in its complaint.  (*See* May 16, 2025 Fung Ltr. to Nyarady.)

Please explain why none of the individuals identified by Qualcomm in its response to Arm's Interrogatory Nos. 1, 10, and 11 are custodians in this case.  As you know, Interrogatory No. 1 directly asks individuals relating to each alleged harm Qualcomm has suffered.  This is central to Qualcomm's case, and yet none of these individuals are listed as custodians. Likewise, Interrogatory Nos. 10 and 11 are directed to Qualcomm's claims regarding ████████████.  Qualcomm's own vague curation of "targeted collections of relevant documents" is insufficient to satisfy Qualcomm's discovery obligations here, especially when the identity of individuals who should have knowledge of these issues—by Qualcomm's own admission—are known.

Arm reiterates its request:  to the extent Qualcomm continues to refuse to identify and run search terms against knowledgeable custodians, please provide your availability for a meet and confer.

Sincerely,

*/s/ Nicholas Fung*

Nicholas Fung

cc:  All Counsel of Record (by email)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 20, 2026, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com
John Poulos
NORTON ROSE FULBRIGHT US LLP

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

                                        YOUNG CONAWAY STARGATT &
                                         TAYLOR, LLP

                                        /s/ Anne Shea Gaza
                                        Anne Shea Gaza (No. 4093)
                                        Robert M. Vrana (No. 5666)
                                        Daniel G. Mackrides (No. 7230)
                                        Rodney Square
                                        1000 North King Street
                                        Wilmington, DE 19801
                                        (302) 571-6600
                                        agaza@ycst.com
                                        rvrana@ycst.com
                                        dmackrides@ycst.com

                                        *Attorneys for Defendant Arm Holdings plc*

2