# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,

 Plaintiffs,

 v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,

 Defendant.

**REDACTED - PUBLIC VERSION**
(Filed February 27, 2026)

C.A. No. 24-490-MN
(CONSOLIDATED)



## APPENDIX TO DEFENDANT'S OBJECTIONS TO THE SPECIAL MASTER'S MEMORANDUM ORDER (D.I. 625) RESOLVING NON-PARTY MEDITEK INC.'S MOTION FOR PROTECTIVE ORDER (D.I. 323)
## (A0001 – A0097)

Dated: February 20, 2026

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Kasdin Mitchell, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
kasdin.mitchell@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

## TABLE OF CONTENTS

| Document | Page Range |
|---|---|
| C.A. No. 1:24-cv-00490-MN, Non-Party MediaTek Inc.'s Motion for a Protective Order, dated July 11, 2025, D.I. 323 | A0001 |
| Declaration of Lucia Sun in Support of Non-Party MediaTek Inc.'s Motion for a Protective Order, dated July 11, 2025, D.I. 323-1 | A0013 |
| Proposed Order, D.I. 323-2 | A0017 |
| Certificate of Service, D.I. 323-3 | A0018 |
| C.A. No. 1:24-cv-00490-MN, Arm's Opposition to Non-Party MediaTek Inc.'s Motion for a Protective Order (D.I. 323), dated July 25, 2025, D.I. 346 ▮▮▮▮▮▮▮▮▮▮▮▮ ▮ | A0019 |
| Exhibit 1 – Excerpts from the June 26, 2025, Deposition of Ehab Youssef ▮▮▮▮▮▮▮▮▮▮▮ | A0032 |
| C.A. No. 1:24-cv-00490-MN, Plaintiffs' Opposition to Non-Party MediaTek Inc.'s Motion for a Protective Order, dated July 25, 2025, D.I. 346 ▮▮▮▮▮▮▮▮▮▮▮▮ | A0042 |
| Declaration of Catherine Nyarady in Support of Plaintiffs' Answering Brief in Opposition to Non-Party MediaTek Inc.'s Motion for a Protective Order, dated July 25, 2025, D.I. 347 ▮▮▮▮▮▮▮▮▮▮▮▮ | A0056 |
| Exhibit 1 – Excerpts from the transcript of the January 12, 2024 telephonic hearing before Judge Hatcher in the case styled *Arm Ltd. v. Qualcomm Technologies, Inc. et al.*, C.A. No. 22-1146 (D. Del.) | A0061 |
| Exhibit 2 – Excerpts from the transcript of the March 7, 2024 hearing before Judge Noreika in the case styled A*rm Ltd. v. Qualcomm Technologies, Inc. et al.,* C.A. No. 22-1146 (D. Del.) | A0065 |
| Exhibit 3 – Excerpts from transcript of the November 20, 2024 telephonic hearing before Judge Noreika in the case styled A*rm Ltd. v. Qualcomm Technologies, Inc. et al.,* C.A. No. 22-1146 (D. Del.) | A0070 |

| Document | Page Range |
|---|---|
| Exhibit 4 – Excerpts from the June 20, 2025, Deposition of Karthik Shivashankar ████████████████ █ | A0077 |
| Exhibit 5 – Excerpts from the July 10, 2025, Deposition of Akshay Bhatnagar ██████████ | A0081 |
| Exhibit 6 – Excerpts from the July 9, 2025, Deposition of Jeffrey Fonseca ████████████████ | A0084 |
| C.A. No. 1:24-cv-00490-MN, Non-Party MediaTek Inc.'s Consolidated Reply in Further Support Motion for a Protective Order, dated August 1, 2025, D.I. 352 ██████████ | A0088 |

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED, a
Delaware
corporation, and QUALCOMM
TECHNOLOGIES, INC., a Delaware
corporation,

　　　　　　　Plaintiffs,

　　　v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
a U.K. corporation,

　　　　　　　Defendant.

C.A. No. 24-490-MN

PUBLIC VERSION - FILED JULY 22, 2025

## NONPARTY MEDIATEK INC.'S MOTION FOR A PROTECTIVE ORDER

Nonparty MediaTek Inc. ("MediaTek") moves for the entry of a protective order preventing Defendant Arm Holdings plc, f/k/a ARM Ltd. ("ARM") from producing agreements between ARM and MediaTek to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. ("Qualcomm"). This motion is brought under Federal Rule of Civil Procedure 26 and Paragraphs 48-49 of the Stipulated Protective Order (D.I. 38).

Plaintiff Qualcomm—one of Nonparty MediaTek's closest competitors—seeks confidential, unredacted copies of ███████████████████████████ ██████████████████████████████████████████ ████████████ These highly sensitive contracts between MediaTek and ARM have little relevance to this litigation, which is a dispute between Qualcomm and ARM that does not involve MediaTek.

The risks associated with production are high. Qualcomm is one of the closest direct competitors to MediaTek, if not the closest, with both companies operating in many of the same markets in the semiconductor space. *See* Declaration of Lucia Sun ("Decl."), ¶ 3.

1

Qualcomm and MediaTek are both leaders in producing smartphone systems on chips ("SoCs") for use with the Android operating system, where both MediaTek and Qualcomm incorporate ARM-licensed central processing unit ("CPU") technology into their SoCs. *Id.* Competition between the two is fierce.[1] MediaTek and Qualcomm also compete in laptop SoCs, automotive SoCs and AI products, many of which incorporate licensed ARM technology, as well as other products like 5G modems.[2]

The MediaTek/ARM agreements contain MediaTek's trade secrets and highly sensitive competitive information.   Decl. ¶ 4.  Specifically, the information in █████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

---

[1]  *See, e.g.*, James Peckham, *New Qualcomm, MediaTek Chips Could Power Some of 2025's Best New Phones*, PCMag, May 15, 2025, https://www.pcmag.com/news/new-qualcomm-mediatek-chips-could-power-some-of-2025s-best-new-phones ("Qualcomm and MediaTek keep most of our mobile gadgets running, and each has a new chipset that will power midrange to high-end Android phones."); Daniel R. Deakin, *MediaTek leapfrogs Qualcomm as the world's largest smartphone chipset vendor thanks to huge growth in India and Latin America*, Notebookcheck, Dec. 24, 2020, https://www.notebookcheck.net/MediaTek-leapfrogs-Qualcomm-as-the-world-s-largest-smartphone-chipset-vendor-thanks-to-huge-growth-in-India-and-Latin-America.512177.0.html ("MediaTek has overtaken Qualcomm to become the world's largest smartphone chipset vendor in terms of market share.").

[2] *See*, *e.g.*,  *MediaTek, Qualcomm Push into AI Markets Beyond Mobile*, Nasdaq, May 20, 2025, https://www.nasdaq.com/articles/mediatek-qualcomm-push-ai-markets-beyond-mobile ("MediaTek and Qualcomm are increasingly battling in the PC market, particularly for laptops."); Ansehl Sag, *Next- Gen 5G Modems From MediaTek And Qualcomm Debut At MWC 2025*, Forbes, Mar. 31, 2025, https://www.forbes.com/sites/moorinsights/2025/03/31/next-gen-5g-modems-from-mediatek-and-qualcomm-debut-at-mwc-2025/ ("[T]he two biggest providers of 5G modems, MediaTek and Qualcomm[,] have been shipping 5G modems across multiple generations for years.").

████████████████ The Court should grant a protective order preventing disclosure of MediaTek's agreements with ARM, as this information is not usable to prove or disprove Qualcomm's claims, but would be exceptionally useful in commercial negotiations with ARM and head-to-head competition against MediaTek.

Good cause therefore exists for an order preventing production. As this Court held in the prior, related action between ARM and Qualcomm, "[a] court may issue an order under Rule 26(c) to protect information from disclosure for good cause, which requires a movant to show that, absent the protective order, it will suffer a clearly defined and serious injury … balancing relevance, need, confidentiality, and harm." *See ARM Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146 (MN) (D. Del.) (D.I. 207) (the "NUVIA litigation").

First, the documents and information Qualcomm seeks are not relevant and are not discoverable at all. Qualcomm has filed breach of contract claims against ARM, alleging that ARM breached *Qualcomm's* licensing agreement. The terms of ARM's separate agreements with third parties have minimal if any bearing on Qualcomm's claims.

Second, any marginal relevance is far outweighed by the harm to MediaTek that would be caused by disclosing trade secrets and highly sensitive information to its direct competitor. Qualcomm could use information from MediaTek's agreements ████ ████████████████████████████████████ to its advantage, at a heavy cost to MediaTek and its business, particularly when MediaTek does not have access to the same information relating to Qualcomm's agreements with ARM. Decl. ¶ 7.

Finally, the Court should reject any Qualcomm arguments similar to those made in its opposition to Broadcom's motion, D.I. 180, redacted at D.I. 211, that MediaTek's agreements with ARM are relevant to Qualcomm's claim that ARM has acted in bad faith by

3

"failing to provide licensing offers for certain TLA cores and peripherals at commercially reasonable rates."  Providing agreements with only licensing and royalty terms received *by MediaTek specifically* for those products purchased *by MediaTek specifically* is neither necessary nor sufficient to discern overall commercially reasonable rates for ARM licenses, which are utilized by hundreds of firms worldwide.

Having demonstrated good cause, MediaTek requests that the Court enter its proposed protective order, filed herewith.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    MediaTek's Agreement With ARM**

MediaTek is a leading innovator in semiconductor solutions, including for mobile devices, smart home appliances, home entertainment, connectivity, and automotive. MediaTek has several long-standing agreements with ARM to license important technology that ARM develops.  Decl. ¶ 3.  These agreements are highly negotiated and contain terms that are unique to MediaTek and that reveal ████████████████████████████████ ███████████████████████████████████ *Id*. ¶¶ 6-7.  These are among MediaTek's most important commercial agreements, as MediaTek relies on licensed ARM intellectual property for the computation function in many of its finished semiconductor products.  *Id*. ¶ 3.  Qualcomm, a major, direct competitor of MediaTek in the semiconductor space, also contracts with ARM for technology that Qualcomm then integrates into its products.  *Id.*

MediaTek's agreements contain highly confidential and commercially sensitive terms related to MediaTek's fees, royalties, and products.  *Id*. ¶ 4.  Therefore, these agreements are not externally distributed, and even internal access within MediaTek is limited.  *Id.* ¶ 6. Negotiation of these terms are made by specific members of a dedicated team from both

4

MediaTek and ARM and sometimes directly between specific executives. *Id.* The agreements are maintained by MediaTek internally on a recordkeeping platform on the company's intranet with limited access only for those employees who have a need to know as part of their role and responsibilities. *Id.* Access is controlled by security measures such as user authentication and regular security reviews. *Id.*

The TLA's definition of "Confidential Information" includes, among other things "terms and conditions of this TLA." *Id.* ¶ 5. Further, Section 3.1 of the TLA restricts disclosure of "Confidential Information:"

> **Restricted Disclosure**. Except as expressly provided by Clauses 3.2, 3.3, 3.4, 3.5, 3.6 and 3.7, each party shall maintain in confidence the Confidential Information disclosed by the other party and apply security measures no less stringent than the measures that such party applies to its own like information, but not less than a reasonable degree of care, to prevent unauthorised disclosure and use of the Confidential Information. The period of confidentiality shall be indefinite with respect to each party's Confidential Information.

Section 3.6 of the TLA further provides that any party required to make disclosure of Confidential Information pursuant to a court order must "promptly notif[y] the other party" and "give[] the other party a reasonable opportunity to contest or limit the scope of such required disclosure (including but not limited to making an application for a protective order)[.]" Decl. ¶ 5.

## B.     The Court Establishes A Procedure For Addressing Third-Party Objections To Discovery In This Action.

Qualcomm and ARM have stipulated to a controlling procedure for resolving disputes over producing a third party's protected materials. The Stipulated Protective Order

entered by this Court permits nonparties whose competitively sensitive information is being sought in discovery to move the Court to protect that information from disclosure.  *See* D.I. 84.   Under the Stipulated Protective Order, when a party is required to produce a third party's confidential information that is subject to a confidentiality agreement, it must promptly notify the requesting party and the third party in writing, provide the third party with a copy of the discovery requests, and make the requested information available for the third party's inspection.  *Id.* ¶ 51.   The third party then has 21 days to file a motion for a protective order. *Id.* ¶ 52.

### C.    ARM Notifies MediaTek That Qualcomm Was Seeking MediaTek's Confidential Information.

On June 24, 2025, ARM sent MediaTek a letter notifying MediaTek that Qualcomm was seeking confidential information related to ARM's agreements with MediaTek, including requests for copies of ████████████████████████████████████ ██████████████████  This motion is timely made under the Court's Stipulated Protective Order, D.I. 84, ¶ 52.

### D.    Prior, Similar Motions Have Been Granted By The Court.

This is not the first dispute between Qualcomm and ARM that has drawn in third parties concerned about production of highly sensitive information.  In the *NUVIA* Litigation, *ARM Ltd. v. Qualcomm Inc., et al.,* C.A. No. 22-1146 (MN), D.I. 207 (D. Del. Nov. 27, 2023), this Court applied this same standard applicable here to prevent production of competitively sensitive third-party information related to licensing technology from ARM.  *See*, *Id.* D.I. 207 (issuing protective order preventing production of Architecture License Agreement ("ALA") between Apple Inc. and ARM because of the sensitivity of the information, "considering the 2023 Apple ALA's minimal relevance when combined with the harm of disclosure given that Qualcomm's outside counsel will necessarily need to communicate

6

generalized information about the ALA to its client, all of which remains true even given the [preexisting] Protective Order in this case").

## **ARGUMENT**

Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery of any non-privileged information that is relevant to a claim or defense and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  The party seeking discovery bears the burden of demonstrating relevance.  *See Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, 2017 WL 4310221, at *4 (M.D. Pa. Sept. 28, 2017).  The existence of a protective order in an action "is not a substitute for establishing relevance or need[;]" rather, a protective order's purpose is to "prevent harm by limiting disclosure of *relevant* and *necessary* information."  *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990) (emphasis in original).

Rule 26 limits the scope of discovery by providing that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense" by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(G).  "[G]ood cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure."  *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984).  "[I]t is clear that a court may issue a protective order restricting disclosure of discovery materials to protect a party from being put at a competitive disadvantage."  *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 890 (E.D. Pa. 1981).  In determining whether good cause exists to preclude discovery, the Court considers whether the movant has "show[n] that, absent the protective order, it will suffer a clearly defined and serious injury … balancing relevance, need, confidentiality, and harm."  *NUVIA* Litigation, D.I. 207.  Indeed, "even if the information sought is relevant, discovery is

7

not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (cited in *NUVIA* Litigation, D.I. 207).

As it did with Apple's similar motion in the *NUVIA* Litigation, the Court should enter MediaTek's proposed protective order preventing production of its competitively sensitive information because: (1) the information is minimally relevant to Qualcomm's claims; and (2) any need for that information is far outweighed by the harm MediaTek would incur in having its confidential information disclosed to its closest direct competitor. As explained below, MediaTek's motion for protective order should be granted.

## I. THE INFORMATION QUALCOMM SEEKS IS IRRELEVANT TO ITS CLAIMS IN THIS ACTION.

As an initial matter, the Court should grant MediaTek's motion because the information Qualcomm seeks is not relevant to proving Qualcomm's claims. Qualcomm's claims are fundamentally about what Qualcomm alleges are ARM's specific contractual breaches of ARM and *Qualcomm's* agreement, particularly that ARM failed to deliver certain technology it owed to *Qualcomm* under the *Qualcomm-ARM* agreements. *See generally* Second Am. Compl. MediaTek's agreements and annexes will not lead to the discovery of admissible evidence as to whether ARM breached its delivery obligations under *Qualcomm's* licensing agreement. Rather, this case is grounded in ARM's contractual duties to Qualcomm and ARM's conduct fulfilling those duties or not.

In the *NUVIA* Litigation, the Court granted a protective order for similar materials. *See NUVIA* Litigation, *ARM Ltd. v. Qualcomm Inc., et al.,* C.A. No. 22-1146 (MN), D.I. 207 (D. Del. Nov. 27, 2023) ("[b]alancing marginal relevance [of the agreement at issue] against clearly articulated harm" of producing nonparty's "highly bespoke" agreement containing "trade

8

secrets" to Qualcomm, notwithstanding the protective order already entered in the case). There, Qualcomm argued that the pricing terms in nonparty licensing agreements were "directly relevant" to its defense to *ARM's* claim for specific performance because Qualcomm said those terms could help demonstrate that monetary damages would be sufficient to compensate *ARM* for *its* alleged harm. *See NUVIA* Litigation D.I. 201 & 243. The Court disagreed, and granted a protective order against production of the terms. *See NUVIA* Litigation D.I. 207 & 252.

Qualcomm cannot show that ARM's fulfillment of obligations to third parties has any bearing on whether ARM fulfilled its obligations to Qualcomm. *See, e.g., AdTrader, Inc. v. Google LLC*, 2021 WL 937559, at *2 (N.D. Cal. Mar. 12, 2021) (holding that Google's policies toward nonparty advertisers were not discoverable because they revealed nothing about its performance or compliance with contractual obligations owed to plaintiff advertisers under a separate agreement).

Qualcomm has previously argued that its "claims necessarily involve comparing licensing offers provided to Qualcomm to those provided to third parties" and therefore "[t]he pricing at which Arm licensed these cores and peripherals" to non-parties " will thus provide relevant evidence of the commercially reasonable value of these materials.". *See* Opposition to Broadcom's Motion for Protective Order, D.I. 180, redacted at D.I. 211, p. 8. But none of Qualcomm's claims in its Second Amended Complaint appear to turn on purported commercially reasonable prices. And, in any case, a contract with a single counterparty like MediaTek does not establish general commercially reasonable terms amidst the sea of ARM licensees.

## II. DISCLOSURE OF THE PROPRIETARY INFORMATION POSES A SUBSTANTIAL RISK OF COMPETITIVE HARM TO MEDIATEK.

MediaTek's motion for a protective order should also be granted because the

9

harm to MediaTek of disclosure far outweighs any marginal benefit to Qualcomm from the additional discovery. *See Mannington Mills*, 206 F.R.D. at 529. Indeed, Qualcomm itself redacted similar information from its own complaint in this Action regarding its architecture license agreement ("ALA") and TLA (*see* Second Am. Compl. ¶ 181), recognizing that such information is sensitive and should not be disclosed to competitors. MediaTek is seeking to prevent Qualcomm from accessing the same type of information, which is also the same type of information that the Court protected for other nonparties in the *NUVIA* Litigation. *NUVIA* Litigation, *ARM Ltd. v. Qualcomm Inc., et al.,* C.A. No. 22-1146 (MN), D.I. 207 (D. Del. Nov. 27, 2023).

The licensing, fees, and royalty information in MediaTek's agreements with ARM are trade secrets. Decl. ¶ 4. A trade secret is information that both "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and is subject to reasonable efforts "to maintain its secrecy.'" *Syngenta Crop Prot., LLC v. Willowood, LLC*, 2016 WL 4925099, at *3 (D. Del. Sept. 14, 2016) (quoting 6 *Del. C.* § 2001(4)(a)-(b)). Information revealing a company's particular cost factors has also been held to constitute a trade secret. *See, e.g.*, *Am. Totalisator Co. v. Autotote Ltd.*, 1983 WL 21374, at *3 (Del. Ch. Aug. 18, 1983) (stating that "information on prices and costs" was considered a trade secret). However, even if these terms were not trade secrets, they are still highly sensitive confidential information.

MediaTek has also demonstrated risk of serious injury if its trade secrets were to be disclosed to Qualcomm, its direct competitor. ███████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████

10

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████

This competitive harm to MediaTek cannot be remedied through a confidentiality agreement that designates the agreements as "attorneys' eyes only." In the *NUVIA* Litigation, this Court recognized "the harm of disclosure given that Qualcomm's outside counsel will necessarily need to communicate generalized information about the ALA to its client, all of which remains true even given the Protective Order in this case." (*NUVIA* Litigation n D.I. 207 (citation omitted)). The same concerns exist here; Qualcomm's outside counsel will need to communicate to some extent with Qualcomm about the information and documents it receives. *See also Mannington Mills*, 206 F.R.D. at 530-32 (rejecting party's argument that attorney's-eyes-only clause in protective order prevented nonparty competitor from showing that disclosure of its confidential information would be harmful and ultimately quashing subpoena on relevance grounds). For example, if Qualcomm's counsel truly intends to use MediaTek's agreements with Arm to parse whether Qualcomm received commercially reasonable terms, discussions about MediaTek's terms relative to Qualcomm's are inevitable. *See also Realtime Data, LLC v. MetroPCS Texas, LLC*, No. 12CV1048-BTM MDD, 2012 WL 1905080, at *3 (S.D. Cal. May 25, 2012) (denying motion to compel, noting a nonparty's "concerns regarding the security of its [produced information], despite the protective order, cannot be ignored").

Finally, as discussed above, there is no reason Qualcomm could not discover all of the facts it needs to prove its claims from its own communications with ARM or from ARM's internal communications and documents. Its claims appear to relate to ARM's

breach of Qualcomm's own agreement, where MediaTek's documents are not pertinent.  To the extent Qualcomm seeks to establish facts about ARM's dealings with third parties, it is still not appropriate to focus on discovery of contracts with a single counterparty like MediaTek.  To the extent that it is relevant, aggregated data is already surely available from ARM.  *Cf., e.g., Amgen Inc. v. Samsung Bioepis Co.*, 2025 WL 1207594, at *6 (D.N.J. Apr. 25, 2025) (granting protective order to nonparty competitor, in part, because attorney's-eyes-only provision was not "less restrictive means" to adequately protect nonparty's interests).

Because disclosure of MediaTek's ███████████████████ would cause serious risk of competitive harm, and that harm is not outweighed by any substantial need, the Court should enter a protective order.

## CONCLUSION

For all of the foregoing reasons, MediaTek respectfully requests that the Court issue a protective order prohibiting ARM from producing or otherwise disclosing to Qualcomm ████████████████████████████████ ████████████████

DATED:  July 11, 2025

By: */s/ Geoffrey G. Grivner*
 Geoffrey G. Grivner (#4711)
 Buchanan Ingersoll & Rooney PC
 500 Delaware Avenue, Suite 720
 Wilmington, DE 19801-7047
 302-552-4200
 geoffrey.grivner@bipc.com

 *Attorney for Nonparty MediaTek Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation,<br><br>    Defendant. | C.A. No. 24-490-MN<br><br>PUBLIC VERSION - FILED JULY 22, 2025 |

## DECLARATION OF LUCIA SUN IN SUPPORT OF NONPARTY MEDIATEK INC.'S MOTION FOR PROTECTIVE ORDER

I, Lucia Sun, declare as follows:

1. I am over the age of 18 and am employee of MediaTek Inc. ("MediaTek"), with responsibility for the maintenance of the relationship between MediaTek and its EDA (electronic design automation) tools and third-party IP suppliers. My responsibilities include the evaluation of EDA tool and IP suppliers, the negotiation of commercial terms, and the ongoing execution and management of agreements with these suppliers. I have been employed by MediaTek since 2014. If called as a witness, I could and would testify competently to the information set forth in this Declaration.

2. I make this Declaration in support of Nonparty MediaTek's Motion for a Protective Order. I am familiar with and have reviewed ███████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ I am also familiar with the negotiation process of these agreements.

3.      MediaTek is an innovative fabless semiconductor company specialized in the design of integrated circuits of various applications, including mobile communications devices such as smartphones, tablet computers, smart home appliances, connectivity, artificial intelligence, automotive electronics, and more.  Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (together "Qualcomm") directly compete with MediaTek in the semiconductor space.  For instance, both companies are leaders in producing smartphone systems on chips ("SoCs") for use with the Android operating system.  Both companies also have entered into agreements with ARM to incorporate ARM-licensed CPU technology into their SoCs. MediaTek routinely pitches against Qualcomm for significant business opportunities in these markets and competes with Qualcomm across many industry sectors to develop the best chips to meet end customers' needs.  MediaTek's ARM-licensed CPU technology is a key component in many of these competitive products.

4.      The agreements requested for production include MediaTek's trade secrets and highly sensitive competitive information.   Specifically, the information in ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

5.      The TLA's definition of "Confidential Information" includes, among things "terms and conditions of this TLA."  Further Section 3.1 of the TLA restricts disclosure of "Confidential Information:"

> **Restricted Disclosure**. Except as expressly provided by Clauses 3.2, 3.3, 3.4, 3.5, 3.6 and 3.7, each party shall maintain in confidence the Confidential Information disclosed by the other party and apply security measures no less stringent than the measures that such party applies to its own like information, but not less than a reasonable degree of care, to prevent unauthorised disclosure and use of the Confidential Information. The period of confidentiality shall be indefinite with respect to each party's Confidential Information.

Section 3.6 of the TLA further provides that any party required to make disclosure of Confidential Information pursuant to a court order must "promptly notif[y] the other party" and "give[] the other party a reasonable opportunity to contest or limit the scope of such required disclosure (including but not limited to making an application for a protective order)[.]"



6.      MediaTek treats information within these agreements, including information regarding MediaTek's pricing, royalty rates, and ARM product information ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ with heightened sensitivity internally and externally. These agreements are not shared externally. Internally within MediaTek, only those employees who have a need to know as part of their role and responsibilities have access to these agreements on the recordkeeping platform. The recordkeeping platform is only available within MediaTek's intranet and is subject to necessary security measures such as user authentication and regular security reviews.

7.      MediaTek would suffer serious competitive injury if the ▮▮▮▮▮▮ ▮▮▮ were produced to Qualcomm, its exceptionally close direct competitor. ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

-3-



I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of July, 2025 in Hsinchu, Taiwan.

Lucia Sun

MediaTek Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | |
| Plaintiffs, | |
| v. | C.A. No. 24-490-MN |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | PUBLIC VERSION - FILED JULY 22, 2025 |
| Defendant. | |

**[PROPOSED] ORDER GRANTING NONPARTY MEDIATEK' INC.'S MOTION FOR A PROTECTIVE ORDER**

Having considered Nonparty MediaTek Inc.'s ("MediaTek") Motion for a

Protective Order Under Federal Rule of Civil Procedure 26(c), it is **HEREBY ORDERED** that:

MediaTek's Motion for a Protective Order Under Federal Rule of Civil Procedure

26(c) is **GRANTED**, and further that ARM Holdings PLC ("ARM") is prohibited from

producing or otherwise disclosing to Plaintiffs Qualcomm Incorporated and Qualcomm

Technologies, Inc. any version of ███████████████████████████████

███████████████████████████████████████████████

████████████ .

**IT IS SO ORDERED.**

Dated: This __ day of _____, 2025.

_____
The Honorable Maryellen Noreika

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation,<br><br>        Defendant. | C.A. No. 24-490-MN |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2025, a true and correct copy of the foregoing Nonparty

MediaTek Inc.'s Motion for Protective Order was served by email on counsel of record.

/s/ Geoffrey G. Grivner
Geoffrey G. Grivner (#4711)
Buchanan Ingersoll & Rooney PC
500 Delaware Avenue, Ste. 720
Wilmington, DE 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295
Email: *geoffrey.grivner@bipc.com*

*Attorney for Nonparty MediaTek Inc.*

Dated: July 11, 2025

**A0018**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,<br><br>        Defendant. | C.A. No. 24-490-MN<br><br>**REDACTED -<br>PUBLIC VERSION** |

## ARM'S OPPOSITION TO NONPARTY MEDIATEK INC.'S MOTION
## FOR A PROTECTIVE ORDER (D.I. 323)

Dated: July 25, 2025
Redacted Version Filed: August 1, 2025
OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

2

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT........................................................................................................... 2

III.    CONCLUSION....................................................................................................... 6

## TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page(s)**

*Realtime Data, LLC v. MetroPCS Tex., LLC,*
    No. 12cv1048, 2012 WL 1905080 (S.D. Cal. May 25, 2012).....................................................5

ii

## I.    INTRODUCTION

Non-party MediaTek Inc. ("MediaTek") asks this Court to bar discovery regarding three commercial agreements between MediaTek and Arm, which govern MediaTek's licensing of Arm cores.  While Arm understands the confidentiality concerns of its customers, in this instance the terms of the MediaTek-Arm agreements are highly relevant to Arm's defenses to Qualcomm's claims for alleged breach of the Qualcomm-Arm Technology License Agreement ("TLA").  Qualcomm alleges that in 2024 it requested offers from Arm ████████████████████████ ████████████████████████████████—but that the offer Arm made was "commercially unreasonable, exorbitant, and not in good faith."  D.I. 137 ¶¶ 27, 118, 215.  The terms of the ████ MediaTek agreements are critical evidence establishing Qualcomm's allegations are baseless.  ████████████████████████████████████████████ ████████████████████████████

Arm agrees with MediaTek, however, that Qualcomm's document requests go too far.  Turning over the MediaTek-Arm agreements with no redactions would needlessly expose highly sensitive commercial terms that have no relevance to the issues in the case.  ████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████  D.I. 137 ¶¶ 109, 111, 121, 168, 215, 218, 220, 223.  This irrelevant and sensitive information should be redacted from any production to Qualcomm, and Arm is prepared to submit its proposed redactions for *in camera* review.

Arm will also produce those redacted agreements with the highest confidentiality designations available in the Protective Order, mitigating MediaTek's confidentiality concerns.  Accordingly, MediaTek's motion for the entry of a protective order should be granted-in-part and denied-in-part.

## II.    ARGUMENT

The agreements subject to MediaTek's motion contain contract terms that are highly relevant to Arm's defenses to Qualcomm's allegations regarding a purported breach of the Qualcomm-Arm TLA.  The Court should order the production of those terms on an outside-counsel-eyes-only basis.  The rest of the competitively sensitive terms in those agreements, ███████████████████████████████████████, have no relevance to Qualcomm's TLA allegations, and thus should be redacted.

On June 3, 2025, Qualcomm filed its Second Amended Complaint in which it alleges that Arm breached the Qualcomm-Arm TLA by failing to make offers to Qualcomm in accordance with the TLA.  D.I. 137, ¶¶ 102–127.  Specifically, Qualcomm alleges that an offer made by Arm in October 2024 ████████████████████████████████████████████

████████████████████████████    ███████████████████████████████

████████████████████████████████    D.I. 137, ¶¶ 25, 27, 117–118, 129.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

██████████████████████████████████████████████████████████
██████████████

████████████

The MediaTek-Arm agreements are highly relevant to Arm's ability to defend against Qualcomm's claims, which are baseless. Qualcomm demanded ████████████████ ████████████████████ in 2024. Arm disputes that it ███████████████████ ████████████████ Nonetheless, as Arm's witnesses have testified, ████████████ ███████████████████████ █████████████████. ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████    ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████    ██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████

3

Accordingly, production of redacted versions of the MediaTek-Arm agreements showing these key terms is appropriate. To minimize any risk to third-party MediaTek, other information that is ██████████████  ███████████████████████████████████████████ ████████████████████████ should be redacted. ██████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ This information should be redacted from the versions produced to Qualcomm.

Moreover, the protections set forth in the Protective Order in this action are sufficient to protect the commercial sensitivities of the relevant information in the MediaTek-Arm agreements. MediaTek avers there is risk that Qualcomm's outside counsel will communicate "generalized information" to Qualcomm about the agreements. Br. at 11. But it is no secret that MediaTek is an Arm licensee or implements Arm's off-the-shelf cores in its products.[1] Arm can produce the agreements with the "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" designation permitted by the protective order to ensure that any unredacted commercially sensitive information contained in the documents is restricted to use only by outside counsel and the handful of expert witnesses who need to view the information to formulate their opinions.

The significance of MediaTek's agreements to Arm's ability to defend against Qualcomm's (incorrect) breach allegations outweighs MediaTek's hypothetical concern that Qualcomm's outside counsel will breach its protective order obligations, and there is no feasible alternative to producing the information at issue. MediaTek cites this Court's grant of a protective order to Apple in *ARM Ltd. v. Qualcomm Inc.*, but that decision turned on the Court's finding that

---

[1] *See, e.g.*, https://www.techpowerup.com/335300/mediatek-unveils-new-flagship-dimensity-9400-mobile-platform-with-enhanced-ai-performance (describing how MediaTek Dimensity 9400+ product released in April 2025 includes four Cortex-A720 cores, ██ ███████)

4

"[t]he 2023 Apple ALA … seems to be of marginal relevance to Qualcomm's stated desire to test ARM's assertion that it was forced to 'change the nature and structure of its business model' after Defendants' alleged breach.  This is particularly so as there are other ways for Qualcomm to test ARM's theory, including by, for example, reviewing ARM's financials documents." *ARM Ltd. v. Qualcomm Inc.*, C.A. No. 22-1146 (MN), D.I. 207 (D. Del. Nov. 27, 2023) (citation omitted) (emphasis added).  Here, there are only a handful of documents in dispute ████████████

████████████████████████████████████████████████████████

████████████████████  MediaTek's concern can further be mitigated by redacting portions of the documents that █████████ █████████████████████████████████████████.

MediaTek also cites *Realtime Data* for the proposition that a party's confidentiality concerns "cannot be ignored." Br. at 11.  However, that court denied the discovery request at issue due to the "undue burden" on a third party of producing source code and where the information sought could sufficiently be provided by a witness instead.  *Realtime Data, LLC v. MetroPCS Tex., LLC*, No. 12cv1048, 2012 WL 1905080, at *3 (S.D. Cal. May 25, 2012) ("The Court agrees that a deposition of a knowledgeable Ortiva engineer should be sufficient to inform Plaintiff regarding how Ortiva's products work in the Sprint network.").

Here, the ████ agreements are in Arm's possession and Arm will handle production.  There is also no viable alternative to producing the agreements that does not present the same confidentiality concerns.  For example, having a knowledgeable witness testify as to the terms (if a witness could do so, given the complexity) would present the same problem of revealing the terms of MediaTek's agreements with Arm to Qualcomm's outside counsel.  Production of the MediaTek-Arm agreements themselves, with redactions to protect irrelevant sensitive information from disclosure, is the only reasonable solution.

## III.    CONCLUSION

For at least these reasons, the Court should grant-in-part and deny-in-part MediaTek's motion for a Protective Order.

Dated:  July 25, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
adam.janes@kirkland.com

Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
shaelyndawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP


 /s/ Robert M. Vrana
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

7

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> ARM HOLDINGS PLC, a U.K. corporation, <br><br> Defendant. | C.A. No. 24-490-MN |

**[PROPOSED] ORDER DENYING NONPARTY MEDIATEK INC.'S**
**<u>MOTION FOR A PROTECTIVE ORDER (D.I. 323)</u>**

The Court, having considered the parties' briefs, the arguments and authorities of counsel, and any oral argument, hereby has ORDERED that Non-Party MediaTek's Motion for a Protective Order is granted-in-part and denied-in-part.  Arm shall produce redacted versions of the MediaTek-Arm agreements to Qualcomm.

SO ORDERED, this _____ day of _____, 2025.

 

_____
United States District Judge

# Exhibit 1

**Page 1**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

------------------------------------x

QUALCOMM INCORPORATED, a Delaware

corporation, QUALCOMM TECHNOLOGIES,

INC., a Delaware corporation,

                    Plaintiffs,

    -against-         C.A. No. 24-49-MN

ARM HOLDINGS PLC, f/k/a ARM LTD.,

a U.K. corporation,

                    Defendant.

------------------------------------x

████████████████

████████████████

REMOTE VIDEOTAPED DEPOSITION OF

EHAB YOUSSEF

Palo Alto, California

June 26, 2025

Reported By:

ERIC J. FINZ



Page 2

June 26, 2025
12:39 p.m. Eastern
9:39 a.m. Pacific
Remote Videotaped Deposition of EHAB YOUSSEF, taken by Plaintiffs, pursuant to Notice, before ERIC J. FINZ, a Shorthand Reporter and Notary Public within and for the State of New York.

Page 3

A P P E A R A N C E S: (All Via Remote)
PAUL WEISS RIFKIND WHARTON & GARRISON LLP
Attorneys for Plaintiffs
1285 Avenue of the Americas
New York, New York 10019

BY:  ANISH DESAI, ESQ.
adesai@paulweiss.com

MORRISON & FOERSTER LLP
Attorneys for Defendant
755 Page Mill Road
Palo Alto, California 94304

BY:  CATHARINA McWILLIAMS, ESQ.
cmcwilliams@mofo.com

KIRKLAND & ELLIS LLP
Attorneys for Defendant
333 W Wolf Point Plaza
Chicago, Illinois 60654

BY:  JAY EMERICK, ESQ.
jay.emerick@kirkland.com
AUSTIN PENNINGTON, ESQ.
austin.pennington@kirkland.com

ALSO PRESENT:
ROBERT CALICO
STEPHANIE L. CHIN, ESQ.
schin@paulweiss.com

MJ ZIMDAHL, Videographer

2 (Pages 2 - 5)



16 (Pages 58 - 61)



17 (Pages 62 - 65)



18 (Pages 66 - 69)



19 (Pages 70 - 73)

Veritext Legal Solutions

212-267-6868                    www.veritext.com                    516-608-2400



20 (Pages 74 - 77)



Page 106

CERTIFICATE

STATE OF NEW YORK  )
                            : ss.
COUNTY OF NEW YORK  )

I, ERIC J. FINZ, a Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

That EHAB YOUSSEF, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by the witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 1st day of July, 2025.

ERIC J. FINZ

Page 107

Page 108

Page 109

28 (Pages 106 - 109)

212-267-6868        Veritext Legal Solutions        516-608-2400
                    www.veritext.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 25, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Isaac B. Zaur
Nora Niedzielski-Eichner
CLARICK GUERON REISBAUM LLP
220 Fifth Avenue, 14th Floor
New York, NY 10001
izaur@cgr-law.com
nniedzie@cgr-law.com

Catherine Nyarady
Anna R. Gressel
Jacob A. Braly
Alexander M. Butwin
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
agressel@paulweiss.com
jbraly@paulweiss.com
abutwin@paulweiss.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Anna P. Lipin
William T. Marks
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
ejmorgan@paulweiss.com
alipin@paulweiss.com
wmarks@paulweiss.com

Andrea L. D'Ambra
Susana Medeiros
Kira Latham
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com
susana.medeiros@nortonrosefulbright.com
kira.latham@nortonrosefulbright.com

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com
*Attorneys for Defendant Arm Holdings PLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>  a Delaware corporation,<br>QUALCOMM TECHNOLOGIES, INC.,<br>  a Delaware corporation,<br><br>               Plaintiffs,<br><br>       v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>  a U.K. corporation,<br><br>               Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 24-490-MN<br><br>████████<br><br>REDACTED - PUBLIC VERSION |

## PLAINTIFFS' OPPOSITION TO NON-PARTY MEDIATEK'S MOTION FOR A
## PROTECTIVE ORDER

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Adam L. Basner
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

July 25, 2025

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................... 1

II.  BACKGROUND ...................................................................................................... 1

III.  LEGAL STANDARD ............................................................................................... 3

IV.  ARGUMENT ........................................................................................................... 3

    A.  The Materials Qualcomm Seeks Are Relevant ........................................... 3
    B.  Mediatek Has Not Demonstrated Any Specific Risk Of Harm. ............................ 5

V.  CONCLUSION ........................................................................................................ 8

# TABLE OF AUTHORITIES

**Cases**                                                  **Page(s)**

*AdTrader, Inc.* v. *Google LLC*,
Civ. No. 17-7082, 2021 WL 937559 (N.D. Cal. Mar. 12, 2021)................................................4

*Blackbird Tech LLC v. Serv. Lighting and Electrical Supplies, Inc.*,
2016 WL 2904592 (D. Del. May 18, 2016)................................................................7

*Cipollone v. Liggett Grp., Inc.*,
785 F.2d 1108 (3d Cir. 1986)................................................................3, 5

*Mannington Mills Inc.* v. *Armstrong World Indus., Inc.*,
206 F.R.D. 525 (D. Del. 2002) ................................................................7

*Procter & Gamble Co.* v. *Boyle-Midway, Inc.*,
C.A. No. 82-671, 1983 WL 830080 (D. Del. Apr. 11, 1983)................................................6

*Realtime Data, LLC* v. *MetroPCS Texas, LLC*,
Civ. No. 12-1048, 2012 WL 1905080 (S.D. Cal. May 25, 2012)................................................7

*United States* v. *Garett*,
571 F.2d 1323 (5th Cir. 1978) ................................................................3

**Rules**

Fed. R. Civ. P. 26(b)(1)................................................................7

Fed. R. Civ. P. 26(c) ................................................................3

## I.    INTRODUCTION

Non-Party MediaTek Inc. ("MediaTek") moved for a protective order to preclude Defendant Arm from producing agreements between MediaTek and Arm governing MediaTek's licensing of Arm off-the-shelf CPUs.  D.I. 323.  Lifting passages from the Broadcom motion, D.I. 127, MediaTek rehashes the same arguments that Qualcomm has already addressed, D.I. 180. MediaTek's motion should be denied because the documents that Qualcomm seeks are critical to Qualcomm's claims that Arm's October 2024 quote for Arm CPUs and peripheral IP violated the Qualcomm TLA and the covenant of good faith and fair dealing.  ███████████████████ ██████████████████████████████████, making third-party agreements relevant to this analysis, ███████████████████████████████████████████████ ██████████████████████████████████. MediaTek offers only speculation as to why the Protective Order in this case cannot safeguard its information.  MediaTek fails to establish good cause to prevent production of relevant materials in this case.

## II.    BACKGROUND

Arm develops and licenses technology for CPUs compatible with its instruction-set architecture—instructions that allow hardware to interface with Arm-compliant software. D.I. 137 ¶ 46.  Arm has historically offered two types of licenses: Architecture License Agreements ("ALAs") and Technology License Agreements ("TLAs").  *Id.* ¶ 43.  A TLA grants the licensee the right to license from Arm and use Arm-designed CPUs or other Arm-designed IP in a System-on-a-Chip. *Id.* ¶ 51.  An ALA grants the licensee the right to commercialize products with a custom CPU that the licensee designs itself.  *Id.* ¶¶ 44–50. Qualcomm develops microprocessors and has both an ALA and a TLA.  *Id.* ¶ 3.

In prior litigation, Arm alleged that Qualcomm and Nuvia—a company that Qualcomm acquired—breached Nuvia's ALA by not destroying certain technology after Arm terminated the

1

Nuvia ALA. *Arm Ltd. Inc.* v. *Qualcomm et al.*, C.A. No. 22-1146 (MN) (the "Prior Litigation"), D.I. 1. To test whether Arm suffered any harm to its contracts from this alleged breach, Qualcomm sought production of Arm's ALAs and TLAs with third parties. Prior Litigation, D.I. 27, RFP 27; Prior Litigation, D.I. 154, RFP 71. Despite initial rulings declining to compel production of unredacted versions of these materials, the Court ultimately found the ALAs to be relevant and precluded Arm from advancing certain theories of harm at trial due to Arm's refusal to produce the unredacted versions—a nuance that MediaTek (like Broadcom) overlooks. Judge Hatcher initially ruled that certain third-party ALAs were of minimal relevance. Prior Litigation, D.I. 207; Ex. 1, 58:11–25. Qualcomm filed objections with Judge Noreika, who overruled them without prejudice in March 2024. Ex. 2, 62:16–63:15. Critically, Judge Noreika stated that the unredacted ALAs were "a little bit more relevant than" Judge Hatcher suggested. *Id.* 45:6–12. While overruling the objections "for right now" because she could not "make a determination" as to relevance, she stated that Qualcomm could raise the issue later once she understood Arm's theories of harm. *Id.* at 62:10–23. Then, at the November 2024 conference where Arm explained its theories of harm, Judge Noreika precluded Arm from using certain evidence and advancing certain theories in light of its refusal to produce the unredacted ALAs. Ex. 3, 26:20–40:22.

This case involves separate claims arising from Arm's conduct under *Qualcomm's* ALA and TLA (as opposed to *Nuvia's* ALA which was the focus of the Prior Litigation) and Arm's related tortious misconduct and unfair competition. Qualcomm asserts that Arm breached the Qualcomm TLA and the covenant of good faith by providing licensing quotes for certain Arm CPUs and peripheral IP at prices that are ███████████████████████████████ ████████████████████████████████████████████. D.I. 137 ¶¶ 20–28, 102–120, 181–188, 213–226.

2

In January 2025, Qualcomm sought production of documents and communications relating to negotiations for Arm's licensing offers for various TLA products.  D.I. 42, RFP 34.  In April 2025, Qualcomm sought production of all licensing agreements for Arm CPU cores codenamed ████████████████.  D.I. 93, RFP 123.

According to MediaTek, Arm notified MediaTek on June 24, 2025 that Qualcomm was seeking production of ████████████████████████████████ ████████████████████████ █  D.I. 322 at 2; D.I. 323 at 6.  MediaTek moved for a protective order and to intervene in this case on July 11, 2025.  D.I. 322; D.I. 323.

## III.    LEGAL STANDARD

A court may issue a protective order upon a showing of good cause.  Fed. R. Civ. P. 26(c). The burden is on the non-party seeking a protective order to "show good cause by demonstrating a particular need for protection."  *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."  *Id.* (citing *United States* v. *Garett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

## IV.    ARGUMENT

### A.    The Materials Qualcomm Seeks Are Relevant

MediaTek contends that the materials Qualcomm seeks are irrelevant and thus not discoverable.  D.I. 323 at 8–9.  MediaTek is wrong.

---

[1] MediaTek did not attach Arm's notice letter, nor did its declaration indicate when the notice letter was sent or what it contained.  D.I. 323-1.  For purposes of this opposition, Qualcomm assumes that MediaTek's motion is timely and that Arm provided to MediaTek the information required under the Protective Order (D.I. 84 ¶ 51).  ██████████████████████████ ████████████████████

3

MediaTek's  are highly relevant to Qualcomm's claims that Arm breached the Qualcomm TLA and the covenant of good faith and fair dealing in connection with quotes that Arm provided Qualcomm for certain Arm-designed CPUs and peripheral IP.

. D.I. 137 ¶¶ 104–105.

Thus, MediaTek's agreements are uniquely relevant to Qualcomm's claims, and their production is critical to Qualcomm's ability to prove its case.

MediaTek's contrary arguments fail.

*First*, tracking the Broadcom motion, MediaTek argues that its agreements are not relevant because (1) Qualcomm's case is based on Arm's failure to "deliver certain technology it owed to *Qualcomm* under the *Qualcomm-Arm* agreements," D.I. 323 at 8, and (2) Arm's fulfillment of obligations to third parties has no bearing on whether Arm fulfilled its obligations to Qualcomm, D.I. 323 at 8–9. But these arguments appear to reference Qualcomm's other claims for Arm's breach of the Qualcomm ALA (which is a different type of agreement). As discussed above, MediaTek's agreements are relevant to the Qualcomm TLA and related claims.[2]

---

[2] MediaTek's reliance on *AdTrader, Inc.* v. *Google LLC*, Civ. No. 17-7082, 2021 WL 937559, at *2 (N.D. Cal. Mar. 12, 2021) is misplaced for the same reason. There, the court found that production of one agreement was not relevant to the defendant's understanding of its obligations under another agreement. *Id.* That reasoning has no application here, D.I. 137 ¶¶ 104–105.

*Next*, MediaTek argues that none of the claims in the Second Amended Complaint "turn on purported commercially reasonable prices." D.I. 323 at 9. Not so. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ D.I. 137 ¶¶ 104–105. Moreover, the prices for which Arm licensed peripheral IP to other licensees are relevant to Qualcomm's claims that Arm's quotes for peripheral IP violated the implied covenant of good faith and fair dealing. And MediaTek's suggestion that "a contract with a single counterparty like MediaTek" is not probative of Qualcomm's claims, D.I. 323 at 9, is contrary to the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Exs. 4–6. In any event, Qualcomm has not singled out MediaTek, but is seeking production of all third-party agreements related to these IPs to test whether Arm ▮▮▮▮▮▮▮▮▮▮▮▮ or otherwise provided a commercially reasonable quote.

*Finally*, MediaTek's suggestion that the Court's protective order rulings in the Prior Litigation are relevant is both wrong and incomplete. Those rulings are inapplicable here, as this case involves different claims and different types of agreements that Qualcomm seeks for different reasons. Moreover, the Court ultimately sided with Qualcomm that the third-party ALAs at issue in the Prior Litigation were relevant and precluded Arm's theories of harm because Arm failed to produce them.

### B.    MediaTek Has Not Demonstrated Any Specific Risk of Harm.

To establish good cause for a protective order, MediaTek had the burden to show a "particular need for protection" rather than merely "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Cipollone* v. *Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). MediaTek's own brief makes the same point. D.I. 323 at 7 (citing caselaw

5

for the proposition that good cause requires a "clearly defined and serious injury"). Yet, each of MediaTek's assertions of harm are entirely speculative.

MediaTek argues that it would be harmed "*if* its trade secrets were to be disclosed to Qualcomm," because ██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████    D.I. 323 at 10–11 (emphasis added). But each of these hypothetical harms assumes that Qualcomm's outside counsel will violate the Protective Order, which permits Arm to designate sensitive information as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," thus limiting access to outside counsel of record and experts while prohibiting access to anyone at Qualcomm (including Qualcomm in-house counsel). D.I. 84 ¶¶ 45–46. This designation provides strong protection from disclosure of MediaTek's confidential information to Qualcomm. *See* Ex. 2 at 44:14–23 (noting that it was "quite an accusation" to suggest that this designation wouldn't sufficiently protect sensitive information); *Procter & Gamble Co.* v. *Boyle-Midway, Inc.*, C.A. No. 82-671, 1983 WL 830080, at *1 (D. Del. Apr. 11, 1983) ("The Court simply will not indulge in the speculation that attorneys will violate a protective order issued by a court[.]").

MediaTek's only response is to parrot Broadcom's argument—word for word—that outside counsel will "need to communicate to some extent with Qualcomm about the information and documents it receives." *Compare* D.I. 323 at 11 *with* D.I. 127 at 13. But MediaTek never explains *why* Qualcomm's counsel would need to do so. MediaTek adds that "if Qualcomm's counsel truly intends to use MediaTek's agreements with Arm to parse whether Qualcomm received commercially reasonable terms, discussions about MediaTek's terms relative to Qualcomm's are inevitable." D.I. 323 at 11. But again, MediaTek offers no reason why

6

Qualcomm's outside counsel cannot conduct the straightforward exercise of ███████████ ████████████████████████████████████ without revealing information from MediaTek's agreements to Qualcomm in-house counsel. *See Blackbird Tech LLC v. Serv. Lighting and Electrical Supplies, Inc.*, 2016 WL 2904592, at *5 (D. Del. May 18, 2016) (noting that outside counsel can "adequately represent [a client's] interests even if in-house counsel is precluded from viewing confidential information"). Nor does MediaTek show how any such hypothetical, limited disclosure overcomes the overwhelming relevance of its documents, as necessary to establish good cause.[3]

MediaTek contends that (1) Qualcomm can discover what it needs from its own communications with Arm or Arm's internal documents; (2) MediaTek's documents are "not pertinent" to Arm's breach of the Qualcomm TLA; and (3) it is not appropriate to "focus on discovery of contracts with a single counterparty like MediaTek." D.I. 323 at 12. As discussed above, each of these arguments fail given that the █████████████████████████ ████████████████████████████████████████████████████████ ████████

Finally, MediaTek's suggestion that the Court should grant the motion because *MediaTek* does not have access to *Qualcomm's* agreements with Arm is as nonsensical as it was when Broadcom made it. *Compare* D.I. 323 at 3, 10 *with* D.I. 127 at 3, 11. Qualcomm is a plaintiff in a lawsuit and is entitled to discovery of non-privileged documents relevant to its claims. Fed. R.

---

[3] Neither case MediaTek cites alter this conclusion, as both involve subpoenas to third parties and rely on out-of-circuit authorities that do not satisfy the Third Circuit's specificity requirement. *Mannington Mills Inc.* v. *Armstrong World Indus., Inc.*, 206 F.R.D. 525, 528–29 (D. Del. 2002); *Realtime Data, LLC* v. *MetroPCS Texas, LLC*, Civ. No. 12-1048, 2012 WL 1905080, at *2 (S.D. Cal. May 25, 2012).

Civ. P. 26(b)(1).  What information MediaTek—a non-party asserting no claims—does or does not have is irrelevant.

## V.    CONCLUSION

MediaTek's motion should be denied.

|  |  |
|---|---|
| OF COUNSEL: | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | /s/ Jennifer Ying |
| Karen L. Dunn | |
| William A. Isaacson | Jack B. Blumenfeld (#1014) |
| Erin J. Morgan | Jennifer Ying (#5550) |
| Melissa F. Zappala | Travis Murray (#6882) |
| DUNN ISAACSON RHEE LLP | 1201 North Market Street |
| 401 Ninth Street NW | P.O. Box 1347 |
| Washington, DC  20004 | Wilmington, DE  19899 |
| (202) 240-2900 | (302) 658-9200 |
|  | jblumenfeld@morrisnichols.com |
| Catherine Nyarady | jying@morrisnichols.com |
| Jacob A. Braly | tmurray@morrisnichols.com |
| PAUL, WEISS, RIFKIND, WHARTON | |
| & GARRISON LLP | Attorneys for Plaintiffs |
| 1285 Avenue of the Americas | |
| New York, NY  10019-6064 | |
| (212) 373-3000 | |
|  | |
| Adam L. Basner | |
| PAUL, WEISS, RIFKIND, WHARTON | |
| & GARRISON LLP | |
| 2001 K Street, NW | |
| Washington, DC  20006-1047 | |
| (202) 223-7300 | |
|  | |
| July 25, 2025 | |

8

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 25, 2025, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                                                  *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
Sydney D. Gaskins, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Kyle W.K. Mooney, Esquire                                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

9

Erik J. Olson, Esquire                                          *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Defendant*

Daniel P. Muino, Esquire                                        *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
*Attorneys for Defendant*

Brian M. Kramer, Esquire                                        *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, CA  92130
*Attorneys for Defendant*

William Frentzen, Esquire                                       *VIA ELECTRONIC MAIL*
Daralyn J. Durie, Esquire
Shaelyn Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                                          *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                         *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                  *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                            *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*

Geoffrey G. Grivner                                   *VIA ELECTRONIC MAIL*
BUCHANAN INGERSOLL & ROONEY PC
500 Delaware Avenue, Ste. 720
Wilmington, DE  19801
*Attorneys for Nonparty MediaTek Inc.*

                                   */s/ Jennifer Ying*
                                   _____
                                   Jennifer Ying (#5550)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 24-490 (MN) |
| v. | ) ) ) | ███████████████ |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) | REDACTED - PUBLIC VERSION |
| Defendant. | ) ) | |

**DECLARATION OF CATHERINE NYARADY IN SUPPORT
OF PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO NON-PARTY
MEDIATEK'S MOTION FOR A PROTECTIVE ORDER**

I, Catherine Nyarady, hereby declare, under penalty of perjury as follows:

1.      I am an attorney at the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel of record for Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Plaintiffs") in the above-captioned action. I am a member in good standing of the State Bar of New York and have been admitted *pro hac vice* in this case. I am competent to testify to the matters stated herein, have personal knowledge of the facts and statements in this declaration, and each of the facts and statements is true and correct.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of an excerpt from the transcript of the January 12, 2024 telephonic hearing before Judge Hatcher in the case styled *Arm Ltd. v. Qualcomm Technologies, Inc. et al.,* C.A. No. 22-1146 (D. Del.).

3.      Attached hereto as **Exhibit 2** is a true and correct copy of an excerpt from the transcript of the March 7, 2024 hearing before Judge Noreika in the case styled *Arm Ltd. v. Qualcomm Technologies, Inc. et al.,* C.A. No. 22-1146 (D. Del.).

1

4.      Attached hereto as **Exhibit 3** is a true and correct copy of an excerpt from transcript of the November 20, 2024 telephonic hearing before Judge Noreika in the case styled A*rm Ltd. v. Qualcomm Technologies, Inc. et al.,* C.A. No. 22-1146 (D. Del.).

5.      Attached hereto as **Exhibit 4** is a true and correct copy of an excerpt from transcript of the June 20, 2025 deposition of Karthik Shivashankar.

6.      Attached hereto as **Exhibit 5** is a true and correct copy of an excerpt from transcript of the July 10, 2025 deposition of Akshay Bhatnagar.

7.      Attached hereto as **Exhibit 6** is a true and correct copy of an excerpt from transcript of the July 9, 2025 deposition of Jeffrey Fonseca.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of July, 2025 in New York, New York.

/s/ Catherine Nyarady
Catherine Nyarady

2

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 25, 2025, upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Samantha G. Wilson, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO  80202<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Nicholas R. Fung, Esquire<br>Henry Huttinger, Esquire<br>Sydney D. Gaskins, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd., Suite 6000<br>Los Angeles, CA  90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kyle W.K. Mooney, Esquire<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, NY  10019<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

3

Erik J. Olson, Esquire                              *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Defendant*

Daniel P. Muino, Esquire                            *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
*Attorneys for Defendant*

Brian M. Kramer, Esquire                            *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, CA  92130
*Attorneys for Defendant*

William Frentzen, Esquire                           *VIA ELECTRONIC MAIL*
Daralyn J. Durie, Esquire
Shaelyn Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                              *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                             *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                    *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                              *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*

Geoffrey G. Grivner                                     *VIA ELECTRONIC MAIL*
BUCHANAN INGERSOLL & ROONEY PC
500 Delaware Avenue, Ste. 720
Wilmington, DE  19801
*Attorneys for Nonparty MediaTek Inc.*

                                    */s/ Jennifer Ying*

                                    Jennifer Ying (#5550)

5

# Exhibit 1

1

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

ARM LTD.,                          )
        Plaintiff and Counterclaim )
        Defendant,                 )  C.A. No. 22-1146
V.                                 )  (MN)
                                   )
QUALCOMM INC., QUALCOMM            )
TECHNOLOGIES, INC. And NUVIA, INC.,)
        Defendants and             )
        Counterclaim Plaintiffs    )


                        - - - -

                     Wilmington, Delaware
                     Friday, January 12, 2024
                     *Telephonic Oral Argument*

                        - - - -


  BEFORE:   HONORABLE LAURA D. HATCHER
            UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


                        - - - -


                                Michele L. Rolfe, RPR, CRR

is the first we heard that there was an objection from Fujitsu. Fujitsu has not filed anything in this case, ARM has never told us that they object. They haven't sent us any letter. We don't understand what the objection is or why the scope of license technology would be redacted in that regard.

We also don't understand what -- why unique licensing rates not at issue in the NUVIA ALA would prevent ARM from listing the redactions on the scope of technology covered by the Google and Microsoft ALAs, they're just -- you know, there's no way for us to assess that.

And as far as the other categories, I'll just say that on representations and warranties, that's a category that's listed in ARM's redaction log, we don't really know what it's covering. Based on review of the ALAs that we've seen, there can be representations and warranties about a whole host of different types of provisions, including pricing provisions. So it's unclear to us why they think all representations and warranties are irrelevant. And we think that we're entitled to see what's under those redactions for all the reasons that we've already stated. And I will pause there.

THE COURT: Okay. Thanks very much, Ms. Morgan.

Let's give Mr. Mooney, if it's Mr. Mooney speaking, a chance to respond.

MR. VRANA: Your Honor, if I may really briefly, this is Rob Vrana at Young Conaway. I just wanted to say that I expect -- I think we expect ARM or potentially third parties may want to seek redaction of the transcript of the hearing, so I just wanted to flag that and request that the Court keep the transcript sealed until that time.

THE COURT: Okay. Will do. Thanks.

MR. MOONEY: Your Honor, I will handle this.

Again, plenty to unpack, but given that we're seven minutes to 5:00 on a holiday weekend, I'll try to be as quick as possible here.

ARM has spent months now since the October 2023 hearing diligently working to produce less redacted ALAs for nearly all of the licensees. And to provide some context, there's basically three buckets here: Apple and Intel, two licensees, have requested that we not remove redactions, we have abided by that.

There were several licensees, but seven licensees that we've worked with to remove redactions and a hand full that have been nonresponsive, but the upside is that the vast majority of what was redacted when we had a hearing back in October is now unredacted, and what remains redacted is set forth in a relatively brief redaction log.

Defendants haven't shown the relevance of any of the currently redacted provisions, and they haven't done

this despite what I thought was very clear guidance, and when I look back it seems to be, of Your Honor at the October 5th hearing three months ago.

In fact, much of what I just heard I was getting a sense of deja vu it was the same argument I heard back in October. But at that hearing, Your Honor was very clear on the transcript that we cannot treat the ALAs with a broad brush, so they all have the same technology and parties and it's ultimately situated, that is not appropriate. And Your Honor specifically said "so after meet and confer, if Qualcomm wants to come back to me and say there's a specific license agreement that has similar or same technology, it's similarly situated, such as the provisions are actually relevant here, they can provide that to me with the applicable California Third Circuit or Federal law, they may do so."

They haven't done that. This was about three sentences in a brief, and they didn't even attempt to meet Your Honor's direction. And I think I just heard that it would be impossible to have done that, it would not have. For example, a short table that would list the agreement, a column explaining the technology was similar and a column explaining why one of the provisions or multiple provisions were relevant would be quite simple, could even be an exhibit. They didn't do that and they have not done that, I

think, on the fly on the phone. At least I have not heard any argument that any specific provision, just technically similar agreement, has any relevance whatsoever to this case.

I guess the last thing I would say is there was an attempt to leverage the change log argument, that is obviously not an analogy, but I think Your Honor understands that.

And unless Your Honor has any questions or would like me to go into any specifics, that's all I have right now. Thank you, Your Honor.

THE COURT: Okay. Thanks very much, Mr. Mooney.

Ms. Morgan, you can briefly respond, if you like, but I'd ask you to limit your remarks to a minute or two, given the hour.

MS. MORGAN: Yeah, I would say that the prior arguments all took place before ARM submitted expert reports that put the third-party ALAs squarely at issue before they provided those agreements to their experts and asked their experts TO rely on them and to come to conclusions that necessitated examination on the third-party ALAs in their entirety.

And as far as putting IN a table goes, I would encourage Mr. Mooney to reread Exhibit 26, which sets forth in exhaustive detail why each one of the ALA redactions

58

needs to be listed.  It took 27 pages to do that.

THE COURT:  Okay.

All right.

MS. MORGAN:  I guess I could also just add for the Court that to the extent ARM believes that we should submit a table that articulates what all of the disputes are on these issues and that that wouldn't violate the page limit, we are happy to do that.

THE COURT:  Thank you, Ms. Morgan.  I hear that ship has sailed.

The motion to lift the redactions to the third-party license is denied.

As our last teleconference on the issue of redactions to third-party licenses, both parties were instructed to meet and confer on a license-by-license basis to determine relevance and specifically instructed to not treat these individually negotiated and bespoke licenses together as a group.  Qualcomm's somewhat watered down motion does just that.

I have no ability, given what I have right now, to evaluate the relevance of any individual license, the applicability of the technology, the relevance of the requested unredactions, the need for such information and whether disclosure of such information could result in harm, so for those reasons the motion should be denied.

59

Is there anything else that we need to do?

MR. MOONEY:  Nothing from our end, Your Honor.

THE COURT:  Okay.  Hearing nothing, folks, thanks again for the very helpful argument, and I hope you have a very nice weekend.  Take care.

ALL COUNSEL:  Thank you, Your Honor.

(Whereupon, the following proceeding concluded at 4:59 p.m.)

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Michele L. Rolfe, RPR, CRR

U.S. District Court

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ARM LTD.,
a U.K. corporation,

    Plaintiff,

v.           C.A. No. 22-1146(MN)

QUALCOMM, INC.,
a Delaware corporation,
et al.,

    Defendants.

Thursday, March 7, 2024
2:13 p.m.
Oral Argument

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE MARYELLEN NOREIKA
United States District Court Judge

APPEARANCES:

YOUNG CONAWAY STARGATT & TAYLOR
BY: ANNE SHEA GAZA, ESQ.
BY: ROBERT M. VRANA, ESQ.

-and-

MORRISON FOERSTER, LLP
BY: KYLE W.K. MOONEY, ESQ.
BY: NICHOLAS R. FUNG, ESQ.
BY: DANIEL MACKNIDES, ESQ.

Counsel for the Plaintiff

APPEARANCES CONTINUED:

MORRIS NICHOLS ARSHT & TUNNELL LLP
BY: JACK BLUMENFELD, ESQ.

-and-

PAUL WEISS
BY: KAREN L. DUNN, ESQ.
BY: ERIN MORGAN, ESQ.

Counsel for the Defendants

FISH & RICHARDSON
BY: NITIKA GUPTA FIORELLA, ESQ.

-and-

WALKER STEVENS CANNOM, LLP
BY: HANNAH L. CANNOM, ESQ.

Counsel for Apple, Inc.

WILSON SONSINI GOODRICH & ROSATI
BY: BRAD SORRELS, ESQ.

Counsel for Ampere Computing

— — — — — — — — — — — — —

THE COURT: All right. Good afternoon everyone. Please be seated.

Ms. Gaza.

MS. GAZA: Good afternoon, Your Honor. Anne Gaza on behalf of plaintiff, ARM. I'm joined today by Kyle Mooney and Nicholas Fung of Morrison & Foerster as well as my colleague, Robert Vrana and Daniel Macknides.

MR. BLUMENFELD: Good afternoon, Your Honor. Jack Blumenfeld from Morris Nichols for the Qualcomm defendants. And with me is Karen Dunn and Erin Morgan from Paul Weiss.

THE COURT: Great.

MS. GAZA: Your Honor, if I may, I'm sorry, I meant to mention also that third-party counsel for Ampere and Apple are in attendance as well if you would like their introduction.

THE COURT: Sure. You guys can give me your input if you need to.

All right. Let's start with -- so we have a couple of objections and we have the trial date issue. I saw there was another order from Judge Hatcher yesterday. Am I going to be getting objections for that, anyone?

MR. MOONEY: No, Your Honor.

THE COURT: I didn't get a yes or no. And when you speak, could you stand.

MS. DUNN: Not from us, Your Honor.

MR. MOONEY: No, Your Honor.

THE COURT: Okay. Great. All right.

Okay. Let's start with Mr., is it Son or Son?

MS. DUNN: Yes, Your Honor. Karen Dunn for Qualcomm.

THE COURT: So I need you to really focus me on the standard here because I'm not looking at this de novo, and so I need you to focus on why this was clearly erroneous or contrary to law.

MS. DUNN: I'm happy to do that, Your Honor. We have slides as to this argument that we can hand up if it pleases the Court. Thank you.

THE COURT: Let me ask you this before I start. Is there really a dispute as to whether he told Samsung or others that Qualcomm's license was going to expire? Is that in dispute?

MS. DUNN: There is a dispute about his statements. We know he -- there is no dispute that he made statements. I don't know, perhaps counsel for Arm can tell us whether they dispute that he said the license would expire. I don't think that's in the record.

THE COURT: Why don't you guys talk about that because I need to understand what there is a dispute about so I can decide if he has superior or unique knowledge. If nobody disputes what you say he said, then I'm not sure I care as much. Why don't you guys talk about it. I can't believe you haven't done that already.

(Discussion off the record.)

MR. MOONEY: Your Honor, Rene Haas, the current

41

change something, only the terms that are non-redacted.

MR. MOONEY: Yes, Your Honor is right that we as you pointed out to counsel at Qualcomm, having redacted that information we are not going to be able to rely what is beneath those redactions to make that argument, that's right.

THE COURT: You're not going to be able to argue that you're changing terms or that you will change terms that have been redacted in any way. So, if, for example, you can't say whatever is in appendix A, you can't say well -- annex A, we're not going to change what we do in annex A because you never disclosed what you did previously so you can't say how you're going to change it, right?

MR. MOONEY: I believe Your Honor would not let us get away with that. We would not be able to rely on any redacted information.

THE COURT: And your expert hasn't given any specifics so you can't come in later with some specifics, is that right?

MR. MOONEY: Well, the expert, yes, Your Honor, I didn't see in looking at Mr. Schoettelkotte's expert report, the passages that we were pointed to, any statements about changes being made to ALAs, any reliance on any redacted material, in fact, Mr. Schoettelkotte had the very same redacted documents that Qualcomm's experts had. I have

42

heard for the first time today a complaint that our expert spoke to some ARM employees. I have not heard that before in this case --

THE COURT: Well, I saw something in the papers saying they didn't give them the licenses or maybe they gave them redacted versions of licenses, but I did see something saying he's not opining based on the licenses, he's opining based on something else.

MR. MOONEY: Our expert, both Mr. Schoettelkotte and others did have conversations with some ARM employees in connection with preparing the report, just as Qualcomm's expert spoke to Qualcomm employees. I would like to say though, that, Your Honor just heard that Qualcomm did not have a chance to have conversations with the people that Mr. Schoettelkotte spoke to. They did. They deposed these people and I was present at those depositions.

THE COURT: And did this come before or after those depositions?

MR. MOONEY: This expert report was served a few weeks after the fact depositions.

THE COURT: So they didn't have a chance to ask because they didn't know that Mr. Abbey and Mr. Williamson had discussions with Mr. Schoettelkotte, right?

MR. MOONEY: I would not agree with that. They knew what -- they knew the sphere of responsibility that

43

those employees had, we had produced 1.5 million pages of documents --

THE COURT: They had no idea, when they took those depositions, they couldn't say, Mr. Abbey, what did you discuss with the expert?

MR. MOONEY: I agree with that, Your Honor.

THE COURT: Okay.

MR. MOONEY: But Your Honor, that's not unlike --

THE COURT: I think that's what Mr. Blumenfeld was getting at, he's saying I can't have the same discussions with these folks and ask, you know, have my expert ask them questions because fact discovery is over.

MR. MOONEY: It is true, Your Honor --

THE COURT: He can't ask about what they discussed with the expert.

MR. MOONEY: It is true that in this case Qualcomm's -- if I'm following this, Qualcomm's counsel was not able to depose ARM employees after ARM's expert put in reports, that's true. That's true in every case. What is also true in this case --

THE COURT: Yeah, but what's not true in every case is every -- my gosh, we have from footnote 196 through at least -- through at least footnote 219, there is nothing else other than discussion, or maybe a deposition.

44

MR. MOONEY: I agree with Your Honor that Mr. Schoettelkotte in particular had many discussions with our employees and this is a heavily footnoted report. Those are not the only sources Mr. Schoettelkotte relied on by any means.

THE COURT: It is the only source in what I have.

MR. MOONEY: It is the only source in the four pages that Your Honor has been handed from the report, Mr. Schoettelkotte has a schedule of information that was relied on that includes many thousands of documents in the case, many thousands of transcripts and exhibits in addition --

THE COURT: So let's say -- and I'll give the third parties a chance to weigh in on this, too, tell me about the confidentiality. We have a protective order, we have an outside counsel only provision. To say that this stuff is at risk of all of the comments were sort of generic saying this is going to give Qualcomm a competitive advantage. The way it gives Qualcomm a competitive advantage is if the information is given to outside counsel and outside counsel gives it to Qualcomm, which is quite an accusation.

So why is the protective order not sufficient?

MR. MOONEY: Well, as Your Honor knows, the law

45

is clear that the protective order isn't sufficient to require parties to produce information that's not relevant in the case.

THE COURT: Let's say I'm not convinced that it's not relevant.

MR. MOONEY: Your Honor is right, we are not suggesting that Qualcomm outside counsel is going to deliberately disclose this information to anybody, that's not the concern. The concern is that this is highly confidential competitive information that goes to the very core of our business and to the very core of our competitor's business and this is information that could be misused by our competitors and our customers. And that any risk that this information is inadvertently specifically or generally used or disclosed by any counsel or anyone else involved in the case who might have access to this information under the protective order, which certainly isn't just counsel sitting at the table is enough of a risk that we worked very carefully with our customers, Apple here, to remove as many --

THE COURT: You haven't worked at all with anyone on the 2023 Apple agreement, that's just a big fat no, right? You don't even have the first page of it that says agreement.

MR. MOONEY: It is true that the Apple agreement

46

2023 has not been produced and on that, I would let Apple speak further.

If you have any other further questions for me, I'm happy to address them.

THE COURT: All right. Apple.

MS. CANNOM: Thank you, Your Honor. Hannah Cannom on behalf of Apple, Inc. A couple of points that I think we need to look at. First of all, it's from Judge Hatcher's order where she says that balancing the minimal relevance when combined with the harm of disclosure --

THE COURT: I might think it's a little bit more relevant than she does.

MS. CANNOM: What she then goes on to say it will necessarily need to generate generalized information from the ARM clients. This is different than a source code situation where the source code is in a room and what we're worried about is inadvertent disclosure of large swaths of code. Here we have information that once it's heard --

THE COURT: Tell me what exactly that means, necessarily -- I don't know why that is, so why is it different than you have source code and you say we can't make out an infringement case because, you know, the source code doesn't have this, or we can make out an infringement case so that, therefore, they are, you know, confirming that the source code shows that something works. Why -- like,

47

why is that different from this? Why do you think that if someone, outside counsel for Qualcomm gets it, like what is -- give me an example, what necessarily would they have to disclose that's so -- that's so secret that it would be harmful.

MS. CANNOM: Right. So speaking generally about the termination provision, if they were entitled to see the termination provision, then they would have to tell their client whether the termination provision was similar or different and that's why that mattered to the specific issue here.

There are also other, you know, certain licensing terms --

THE COURT: Well, I mean the termination provision, that wasn't even something -- that was redacted in the Google one, so I'm not sure why I understand that's so secretive.

MS. CANNOM: And Apple's position is that everything that's within the 2023 ALA is very highly protected even within Apple.

THE COURT: That assumes a bit much to me. You're telling me the very first words that say this ALA between Apple and ARM, that's super secret. Come on, right then you're losing a little bit of credibility because you're not even -- I mean, that's not -- let's put it this

48

way. The Third Circuit test for confidentiality, you didn't meet it when you're telling me that. I'm supposed to go line by line in things according to the Third Circuit. So you just saying there is an agreement, but you can't even see who signed it tells me right then that you're being overly inclusive and you're not encouraging me to follow the Third Circuit's guidance on confidentiality.

MS. CANNOM: Understood, Your Honor. Your Honor, and if you were to order that Apple would have to produce a redacted version in line with the other ALAs, that would be certainly something we would do. Our concern here, however, is that the clearly defined serious injury that Apple has vis-a-vis its competitor and more broadly --

THE COURT: I'm still not getting it. You're telling me it's so harmful to you if the example you gave me, the termination provisions were disclosed, yet other competitors, termination provisions are disclosed, and maybe there is something super secret in Apple's termination provision, but the fact that it sort of undermines your argument when other competitors are like okay, you can't see how much we pay, but you can see what happens if we terminate or how we terminate.

MS. CANNOM: To be clear, there are multiple other ALAs that have been produced in redacted material here. What we're concerned is the most recent one which has

61

Your Honor.

THE COURT: Did you ever tell me that? Is that in the scheduling order?

MR. BLUMENFELD: No, they demanded a jury.

THE COURT: Because I have a jury trial. When did you tell me it was going to be a bench trial?

MR. MOONEY: I have to look back, Your Honor. I don't have that at my fingertips, I'm sorry.

THE COURT: Do you think you ever did?

MR. MOONEY: I'm taking a look, Your Honor. I don't know the answer to that. It could have been a delay in the products being released has caused --

THE COURT: So the answer is no. But you're going -- are you asking for a jury?

MR. BLUMENFELD: I expect that we are going to ask for a jury on our counterclaims. We always thought until about two days ago that this was going to be a jury trial and then ARM's lawyers said something before Judge Hatcher the other day suggesting that they didn't see it that way.

MR. MOONEY: Our understanding, Your Honor, that the only claim in the case right now --

THE COURT: I'm just looking at the scheduling order that you guys proposed to me which talks about a five-day jury trial. So if you changed your mind, it would

62

have been nice to have a little bit of a notice, especially when you know we're talking about trial dates.

MR. BLUMENFELD: And I'm not sure, Your Honor, that they're permitted to withdraw a jury demand without our consent at this point. It's not something we've ever discussed.

MR. MOONEY: I understand that the bench trial did come up before Judge Hatcher, Your Honor. I don't know how long ago that was.

THE COURT: That's really not relevant to me. So I am going to overrule the objections for right now. I think we need to understand -- assuming this were to go to a jury trial, I think I could address -- I could allow you to raise this again once I understand the arguments being made as to irreparable harm.

If it's going to be a bench trial, then I need to think about it a little bit more. And it may be that we just phase the bench trial so that I can understand what the arguments are. Because my problem is right now I can see relevance, but I can't make a determination that the relevance is enough to overcome some valid -- I think Apple's 2023 agreement is not credible because saying you can't produce it at all is just not even trying. But I can't say that they don't have valid concerns on the confidentiality aspects. And I'm sorry, I forgot the other

63

company.

MR. SORRELS: Ampere, Your Honor.

THE COURT: Ampere, I think those concerns were -- at least they were specific concerns.

So I am not ready to argue -- I'm not ready to rule that the relevance, that Judge Hatcher got it clearly wrong when she weighed the relevance and the harm.

But I am also not clear that there is going to be arguments made where it would be unfair for the defendant to be able to defend itself.

So I am going to make that ruling without prejudice. If it turns out that you make a specific showing of what you would need to respond to something or to make an argument, you can come back and just remind us. And that it should not go to Judge Hatcher, that it should come to me.

MR. BLUMENFELD: Thank you, Your Honor.

THE COURT: Okay. And you guys need to talk about the trial and can you guys do that and in the next two weeks get back to us on your positions as to jury, bench and whether they can withdraw it at this point?

Okay. So now we have to talk about the trial schedule. I don't remember when the trial was scheduled. September.

MS. DUNN: I believe September 23rd.

THE COURT: There it is. September 23rd. Okay.

64

So when were you looking to have it moved to?

MS. DUNN: Your Honor, the date that we proposed is a date that we believe was open on Your Honor's calendar, December 9th. We did call the Court some time ago for that date, so we don't know if your calendar is still available.

THE COURT: It's not.

MS. DUNN: We certainly could do it any time after that.

THE COURT: I have December 2nd, the week of December 2nd.

MS. DUNN: That date I believe would work for us. I don't know about my friends on the other side.

MR. MOONEY: Your Honor, we do have availability the week of December 2nd if Your Honor decides to delay the trial. Our position is that counsel has not shown good cause to extend the schedule or change the trial date, particularly in light of the ruling coming out Monday, and that the trial date should remain in September.

THE COURT: I haven't decided if I am going to change it.

Actually I have a naturalization ceremony that week, so what about the week of the 16th of December?

MS. DUNN: That works for Qualcomm.

MR. MOONEY: Did Your Honor have availability before that date if Your Honor decides to delay the trial?

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ARM LTD.,                              )
a U.K. corporation,                    )
                                       )
           Plaintiff,                  )
                                       ) C.A. No. 22-1146(MN)
v.                                     )
                                       )
QUALCOMM, INC.,                        )
a Delaware corporation,                )
et al.,                                )
                                       )
           Defendants.                 )

                    Wednesday, November 20, 2024
                    2:00 p.m.
                    Pretrial Conference

                    844 King Street
                    Wilmington, Delaware

BEFORE:   THE HONORABLE MARYELLEN NOREIKA
          United States District Court Judge

APPEARANCES:

          YOUNG CONAWAY STARGATT & TAYLOR
          BY:  ANNE SHEA GAZA, ESQ.
          BY:  ROBERT M. VRANA, ESQ.
          BY:  DANIEL MACKRIDES, ESQ.

          -and-

---

APPEARANCES (Cont'd):

          MORRISON FOERSTER, LLP
          BY: DARALYN DURIE, ESQ.
          BY: ERIK OLSON, ESQ.
          BY: DANIEL MUINO, ESQ.
          BY: SHAELYN DAWSON, ESQ.
          BY: NICHOLAS FUNG, ESQ.
          BY: HENRY HUTTINGER, ESQ.
          BY: LAURA GILBERT REMUS, ESQ.

               Counsel for the Plaintiff

          MORRIS NICHOLS ARSHT & TUNNELL LLP
          BY: JACK BLUMENFELD, ESQ.
          BY: JENNIFER YING, ESQ.

          -and-

          PAUL WEISS
          BY: KAREN L. DUNN, ESQ.
          BY: CATHERINE NYARDY, ESQ.
          BY: JACOB BRALY, ESQ.
          BY: RUBY GARRETT, ESQ.
          BY: ERIN MORGAN, ESQ.
          BY: ANNA LIPIN, ESQ.
          BY: FLINT PATTERSON, ESQ.

               Counsel for the Defendants

               - - - - - - - - - - - -

COURTROOM DEPUTY:  All rise.  The United States District Court for the District of Delaware is now in

---

session.  The Honorable Maryellen Noreika presiding.

THE COURT:  All right.  Good afternoon, everyone.  Please be seated.

All right.  Ms. Gaza.

MS. GAZA:  Good afternoon, Your Honor.  Anne Gaza from Young, Conaway on behalf of plaintiff, ARM.  I'm joined today by Daralyn Durie, Erik Olson, Shaelyn Dawson, Nicholas Fung, Daniel Muino, Henry Huttinger, Laura Gilbert Remus all from Morrison Foerster as well as my colleagues, Rehoboth Vrana and Daniel Mackrides.

THE COURT:  All right.  Good afternoon everyone.

MR. BLUMENFELD:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

MR. BLUMENFELD:  Jack Blumenfeld from Morris Nichols for Qualcomm and NuVia.  With me at counsel table are Karen Dunn, Catherine Nyrady and Jacob Braly from Paul Weiss.  Behind them, Jennifer Ying from Morris Nichols, Erin Morgan from Paul Weiss, and behind them, Flint Patterson, Ruby Garrett and, Chris Longman from Qualcomm.

THE COURT:  All right.  Welcome to all of you and good afternoon.

Okay.  All right.  Let me just get my document ready here.

So I appreciate the letter that we received last night from the defendants on simplifying the case.  I think

---

it's dropping the counterclaims.  How are we going to resolve those?

MS. DUNN:  Your Honor, they're out of the case, so we are dropping them as claims.

THE COURT:  So I always run into this problem and then I get like after the case are they dismissed, are they dismissed with prejudice, did you fail to put in evidence on them, so I'm granting judgment, what are we doing with them?  You can't just say we're dropping them.  They're in the case.  How do I get them out of it?

MS. DUNN:  We can file a voluntary withdraw of the claims if that is what Your Honor would like.

THE COURT:  I want to know what you guys have agreed to do.  So have you talked with the other side?

MS. DUNN:  We talked to the other side and agreed that we would drop the claims so they're aware.  I don't think we've talked mechanically how we would do that.  We're happy to do that and make a submission to the Court.

THE COURT:  That would be very helpful.

MS. DUNN:  Okay.

THE COURT:  And I don't mean to suggest that I don't appreciate that you're dropping them, it's just that I have gotten myself into trouble before when I don't figure out what that means.

MS. DUNN:  Understood, Your Honor.  Plaintiff's

---

25

the founders received compensation in the acquisition, or to the fact that there is a bonus structure laid out and a term sheet that was signed as part of the acquisition. All of the reasons that ARM provides in their response are satisfied without disclosing the actual proceeds that were made by the NuVia founders who are nonparties to this action. And including that information and introducing that evidence into this case would only seek to inflame the jury.

To also address one of the issues that's raised in ARM's response, they question whether a particular milestone -- I think the last pending milestone payment was paid out based on --

THE COURT: How much money are we talking about?

MR. BRALY: It is approximately 80 to $100 million, Your Honor. Mr. Gulati in Exhibit 1A to our opening brief provides a breakdown of the amount on pages 137 to 138, and describes both the stock transfer as well as a cash payment and then, of course, there are milestone payments as well.

THE COURT: Okay. Let me hear from the plaintiff.

MS. DURIE: Thank you, Your Honor. Daralyn Durie for ARM.

Evidence of the amount of money that the founders stood to make by virtue of the acquisition is

26

highly relevant to their motivation for disregarding their contractual obligations. And closing that transaction notwithstanding the consent requirement and failing to get consent, and then using the ARM technology that had been developed at NuVia in order to speed product development at Qualcomm and get the milestone payments that had been promised to them. And I think the case law is quite clear that evidence of the amount of money that a party stands to gain is evidence of bias. And it shows their motivation for engaging in the specific conduct that is at issue in this case.

THE COURT: All right. I think I have heard enough.

MS. DURIE: Thank you.

THE COURT: I am going to deny the motion. If defendants -- I've already permitted defendants to use the royalty rate to show motive and bias from plaintiff's part, then plaintiff can also use Qualcomm's buyout figures to show motive or bias of the NuVia folks.

Okay. Qualcomm's motion in limine number 2, defendants seek to preclude ARM from making arguments about its ALA program, ALAs generally unless it produces all of its third-party ALAs without redactions. We had a little bit of a discussion about this at the last hearing. I'm not sure if I screwed that up. So I do need to understand

27

what's going on because plaintiff now seems to be saying look, we're not going to use those, which I appreciate because you didn't produce them, you shouldn't be able to use them.

But what I'm not sure happens is instead it seems like you're saying we're just going to have people testify. Well, what are you going to have them testify? Are you going to have them testify about things that they need those documents to cross-examine them on, or are you going to testify about stuff that you've already produced discovery on? So that is what I need some help on.

MS. DURIE: Thank you. And the answer, Your Honor, is the latter. So we will have witnesses describe at a high level the ALA program, and that there are ALA's with a number of different companies. That I think is not a contested fact. We do not intend to put in any evidence about the specific terms of specific agreements that would implicate in any way any information that was redacted from those agreements.

The only -- the reason that this evidence is relevant is to show -- in part to show harm. Obviously the details of that harm are for the remedies phase for a specific performance, but Qualcomm has taken the position that we need to show as an element of the breach of contract claim harm from the breach.

28

THE COURT: And I agree with that.

MS. DURIE: Right. And so we intend to have testimony both that ARM is harmed by the unlicensed use of our technology by Qualcomm and not being compensated for that use in the way that they believe they should have been, and that there is harm generally to ARM from the unlicensed use of its technology, this is not the only ALA.

THE COURT: But I need to know specifically what you suggest someone is going to testify about because if that person is going to say well, gosh, it affects our ability to negotiate good prices on other ALA's, that seems like something you should have produced.

MS. DURIE: I understand. We are not going to have witness testimony that there has been any past impairment in our ability to negotiate specific ALA terms including rates. We do think that to the extent that Qualcomm's conduct was blessed here and that Qualcomm was ultimately permitted to use unlicensed technology, that that would have negative consequences going forward, but we're not going to put in any testimony --

THE COURT: How is that showing damages? That's showing speculative stuff for the future. How is that showing that you have been damaged by the breach?

MS. DURIE: I think there is exigent harm to the licensing ecosystem, but I think for purposes of showing

29

harm as an element of the breach of contract claim, the fact that our technology is being used in an unlicensed fashion without compensation, without in our view adequate compensation --

THE COURT:  That one I understood.  I understood that one.  I don't understand you saying and now we're going to put someone up and he's not going to say we've already been harmed because we couldn't negotiate better deals or people were like you let Qualcomm get away with it, so we can get away with paying less or something, you're not going to do that and instead you want him to say well, it may happen in the future, that doesn't seem like harm for a breach of contract.  That seems kind of speculative and future.

MS. DURIE:  I don't disagree that it is about the future.  It is about why this lawsuit is important to ARM, it is about why ARM made the decision which was as I understand it literally unprecedented to sue one of its licensees for the unlicensed use of its technology.

I agree that is not what we will be relying on, it is the predicate for a determination of harm as an element of a breach of contract claim, I believe that is the harm that will be specific from the unlicensed use of this technology.

THE COURT:  Let me ask you a question because it

30

sort of your explanation kind of raised this which is let's say you go before the jury and the jury says there was a breach, and the damage, there was damage and loss of reputation, something like that.  Okay?  Something that's damages, but that is sufficient to show damages for purposes of making out a breach of contract claim.  And then you come to me and you've already just said part of your damage may be that you're not compensated adequately for the breach, for the use of our technology, so it's using your technology but not compensating you adequately.

So let's just say after I hear you out on that I say it doesn't seem to me that there is no adequate monetary relief.  What happens because there has been no request for damages, and if I don't give you specific performance but there is a breach, where are we?

MS. DURIE:  So the Court has the power in equity to make awards incidental to an equitable request for specific performance.

THE COURT:  Did you ask for that in the pretrial order?

MS. DURIE:  We asked for that in the pleadings and I believe it is in the pretrial order as well.

I do want to make clear that what I have been talking about is harm as an element of a breach of contract claim as distinct from damages.

31

THE COURT:  I understand.  But if you're going to convince me -- if you want to tell the jury that our harm is that we haven't been adequately compensated, I can't pretend that I didn't hear that.  Compensation sounds money-ish.

MS. DURIE:  I understand, and that is an element of harm and I understand Your Honor's point.  So the answer to your question I think is remedies that are incidental to specific performance.

THE COURT:  All right.

MS. DURIE:  Thank you.

THE COURT:  Mr. Blumenfeld, did we help with some of that?  So they're not going to put in ALA's, they're not going to testify that anything -- that there was anything in the past where they -- their negotiations or their ALA's were somehow impacted, and that's damages.  I'm not sure I'm going to let them put in something speculative about the future, while maybe this will happen, maybe it won't.  So that leaves us with an argument that they're not being adequately compensated for their -- for the alleged breach.  That seems like it's outside of this motion in limine.  So what is left of the motion in limine that I need to address?

MR. BLUMENFELD:  So a couple of things, Your Honor, and I want to swing back to the damages issue that

32

you raised with Ms. Durie.  I don't think it's correct that all they intend to do is call some executives and say oh, there may be some harm to us in the future which Your Honor has said you haven't decided whether you will let them do that or not.  This came up a little bit during summary judgment where they put in a declaration from two of the executives.  In fact, if you read their MIL response it specifically says --

THE COURT:  That caught my attention in the MIL, we're going to have somebody testify and I'm like okay, about what.

MR. BLUMENFELD:  It says about royalties that have been decreased.  That doesn't sound like the future, that sounds like --

THE COURT:  I understand, but we've now had a representation that suggest that's not going to happen, unless the royalties that have been decreased means that they're not being paid, they're Qualcomm or NuVia royalties that they're not getting paid.

MR. BLUMENFELD:  Right.  If I could hand up one of the declarations they put in, this is a big part of our concern.  It's from Williamson.  It came in in August, we objected to it as part of the summary judgment proceedings because it is speculative, and also because it does disclose things or argues things that we didn't get discovery of

33

because we didn't get the ALA's in for other reasons. But if you look at Mr. Williamson's declaration, and he is listed as a trial witness, so he's senior vice-president and general manager, and he says in paragraph 6 that the unlicensed use of ARM's technology has caused multiple harms to ARM. And then he goes on to explain that, and in paragraph 7, he says based on my experience at ARM and marketing and business roles since 2015, the industry's perception of ARM's reputation and its ability to protect its intellectual property impacts ARM's contracts with its licensees, for example, it affects the terms that ARM's licensees are willing to accept, their proposals during negotiations, their willingness to comply with those issues. Terms that may be impacted include that products are licensed financial terms, scope of license technology, I don't know how I'm supposed to be able to cross-examine him on these things happen when I'm talking to our licensees, by the way, you don't have the licenses so you can't use them to cross-examine me --

THE COURT: Hold on. Let me ask. Ms. Durie, I would have thought based on our representations you weren't planning to have him do that because I kind of agree, Mr. Blumenfeld can't just say --

MS. DURIE: That is correct, we are not going to say that there have been any such impacts to date.

34

THE COURT: But you want him to say but there will be.

MS. DURIE: I would like for him to be able to say that one of the reasons that ARM brought this case is because its licensee ecosystem is extremely important to it and it is very important to ARM as an IP licensing entity that its licensees respect its intellectual property. And that in ARM's view, if Qualcomm were able to use ARM technology in an unlicensed fashion, that could have very severe downstream consequences for ARM. I don't expect anyone to spend a long time belaboring the point.

I think at that high level, they are -- Qualcomm has said that they are going to try to suggest that ARM's reasons for refusing to consent and bringing the case was because it wanted to get rid of the Qualcomm ALA. Our response to that is to say no, that is not true, the reason that we are here is not because we want to get rid of the Qualcomm ALA, the reason that we are here is because Qualcomm is using our technology in an unlicensed fashion and that is important to us.

But we don't intend to belabor the point and we do not intend to make any argument that there has been any specific effect in any specific license agreement that would give rise to the need to cross-examine on that.

THE COURT: So with that --

35

MR. BLUMENFELD: Your Honor, if you go on to -- I want to respond also to her point about motivation, how it is their motivation. The suit gets in after, what Mr. Olson said, after our motivation.

THE COURT: I know. Well, you are going to talk about their motivation to sue, that's all I heard over here is they're suing us because they want more money so I can sort of see why they get to respond and say no, we're not suing them because we want more money, we're suing them because this is harmful to our business model.

MR. BLUMENFELD: Well, we will get to that undoubtedly when things come up at trial, but on the specific things that Ms. Durie said about what they're going to do, if you turn to paragraph 11 and then paragraph 13 of Mr. Williamson's declaration, he says he --

THE COURT: Yeah, let's just check before you tell me, are you going -- this seems like past stuff, since June people have contacted me and I have been damaged. So we need -- you're not going to put this in.

MS. DURIE: That's correct, Your Honor.

THE COURT: Okay. So that was paragraph 11.

MS. DURIE: Paragraph 11, that's right.

THE COURT: And then --

MS. DURIE: I want to be clear, we're talking about the phase in front of the jury, obviously specific

36

performance is a separate question and we'll address that at a separate time in front of Your Honor.

THE COURT: We can do that, I'm just saying the extent that you want him to say I have been contacted by people and our agreements are suffering, I would have expected that all of that underlying stuff be produced, and that you're not just going to have him get up there and say it and leave Mr. Blumenfeld to say I don't know if that's true or not. So you can ask again to put it in if there is a bench trial phase, but I still in a bench trial require you to disclose stuff during discovery.

All right. What about paragraph 12, did you have a problem with paragraph 12, Mr. Blumenfeld? This is -- that's different, that's Qualcomm's position as to what's licensed.

MR. BLUMENFELD: It's 13, that's the other issue. But on this entire subject, I don't -- so they put in a declaration saying I have talked to our partners, I have talked to our licensees, here is what I have learned from them. They say that in the declaration. They're not going to do that at trial. I don't know how he can get on the stand and just say but this is going to happen.

THE COURT: And I haven't quite gotten through that. I understand that concern. I understand that concern. And I'm not -- but I guess what I'm thinking is I

37

need to understand more of what he's going to say, right? Like, why can't he get up there and say this is our whole business model, our business model is we licensed technology, and you know, if you're going to be out there -- and we think we have great technology. But it's important to us that people respect our licenses because if people don't respect our licenses, our business model is not worth the paper that it's written on. Right?

MS. DURIE: Right.

THE COURT: And then he can say and our perception is that Qualcomm or NuVia, or I know there is two different parties, I don't know who I'm talking about at this moment, but you don't have to tell me there is two different parties, whoever is not respecting our licenses, probably both, right, neither of them respected the license according to the plaintiff. So that seems okay to me and that's not speculative damages, that's saying it's important to us that people respect it, and it's important to our business model that people respect it, and they're not respecting it. And you can say well, you don't have any evidence that it actually had an impact, but why can't he get up there and say, come on, we're a licensing company, all we do is enter agreements and if we say everybody can just kind of pooh pooh our agreements, you know, it doesn't -- the jury can look at that and be like well, that sounds

38

bad.

MR. BLUMENFELD: So here is the problem with that, and it goes to the question Your Honor raised with Ms. Durie. How do I cross-examine him? Because, for example, we know that they've entered into other licenses since the termination of the NuVia license. We all know about Apple and there are others they've entered into since then. We don't have them, or we have them in redacted forms that we don't know what the terms are. We went through that back in March with the Google licenses where the terms are totally redacted. So if he gets on the stand and says this is going to affect our licensing program, it's going to affect our ability to collect royalties, it's going to affect people's willingness to take a license and all I can say is well, people took licenses, right, and I don't have those licenses and I can't cross-examine him on whether the harm is real or whether it's just something he's making up for the jury.

THE COURT: Let me ask Ms. Durie on that specific point because that one seems --

MS. DURIE: So we're not arguing that there has been any affect on any exigent license agreements because the harm hasn't happened yet --

THE COURT: Hold on, hold on. If he's going to get up there and say well, it's going to harm us in the

39

future and Mr. Blumenfeld could if he had the agreement say good of you to say, but by the way, since this all happened, you have entered into 89 license agreements and, in fact, you got better terms than you ever had before, that's a pretty good cross of him saying oh, it's going to now hurt us.

MS. DURIE: So I disagree --

THE COURT: Well, I don't --

MS. DURIE: But the distinction, I want to draw the distinction between what will happen as a consequence of Qualcomm being allowed to use technology in an unlicensed way without consequences --

THE COURT: Yes. According to you -- hold on.

MS. DURIE: Yes.

THE COURT: According to you, Qualcomm has been allowed to do this.

MS. DURIE: Not yet. We're in court litigating over that very issue. They have not gotten away with it. They make -- if they were to get away with it, if this were to not have a consequence, we would be harmed. But we are not saying -- there has been no --

THE COURT: Now you're getting super speculative. So the jury has to now assume that the damage is that they find that there is a breach, but they can't find that there is a breach unless there is damage. So I

40

can't -- that seemed wrong to me.

MS. DURIE: So let me be clear. The allegation of harm for purposes of whether there was a breach is that they are using our unlicensed technology and they are not paying for it. That is harm. And that suffices to show harm for purposes of a breach.

THE COURT: You know what, that's all I'm going to let him say at trial. He cannot say -- no, he cannot say and in the future, this is going to cause us problems if the jury finds that there was a breach and this can all go and they are allow to get away with it. He cannot say it. Okay? He cannot say it. You can stop arguing it because you did not produce -- you did not produce information that would allow the defendants to fairly cross-examine your witnesses because I get it, you're saying well, they didn't get away with it until the jury finds they got away with it. The fact is they're doing it now. There is no -- no, he can't -- and so one, no, you didn't produce the documents. Two, no, it seems awfully speculative to say we think that at some point if the jury finds that there wasn't -- I don't even know if the jury finds there was a breach or there wasn't a breach that we're going to be harmed.

MS. DURIE: It's not the jury verdict. Let me very be very clear, it's why we brought the lawsuit. If we had allowed this conduct to go unchallenged, if we had

41

allowed Qualcomm to use our IP in an unlicensed fashion and not take an action, that would have threatened our ecosystem, the reason we brought --

THE COURT: There is a difference between saying it will threaten our ecosystem and saying, and what that means is we are going to be harmed in the future by people, you know, everybody -- no one is going to respect our licenses. It's one thing if he gets up there and says this is our business model, we need people to respect our licenses, they're not respecting our licenses, okay, I don't know exactly what that establishes, but the jury I suppose could fairly draw an inference from that. It's a very different thing for him to say and by the way, we will be harmed in the future, or we may be harmed in the future if this is allowed.

MS. DURIE: May I just say in response to the attack on our motive for bringing the lawsuit, which Qualcomm intends to put at issue by saying we refused to consent to try to get out from under the Qualcomm ALA, we would like our witness to be able to say that's not why we're here, the reason why we're here, why we brought the lawsuit and why we are insisting on our rights is because we are a licensing shop. If our technology is used in an unlicensed fashion, that threatens our entire business model and we're very concerned about what the consequences of that

42

would be. We're not saying we're harmed by that --

THE COURT: Yes, but the problem I have is -- and you can say that I'm talking about something different, but I still think it's fair within the scope of cross-examination, if your witness gets up there and says all hell is going to break loose if people don't respect our licenses, our business model is not worth the paper it's written on, and Mr. Blumenfeld or Ms. Dunn or Ms. Nyrady or whoever can't get up and say well, wait a second, everybody knows that according to you, Qualcomm has not been respecting our technology and has just been using it as you say in an unlicensed manner and the sky has not fallen in, in fact all of this other stuff has happened, the problem is he can't say that or they can't say that because you didn't produce the documents.

MS. DURIE: I would think, Your Honor, we could arrive at a stipulation to solve that problem because that is not the argument that we are making. We are saying if we had not enforced our rights and just sat on the sidelines and didn't take action to protect our intellectual property and allowed the unlicensed use of our IP without consequence, that is what would threaten our entire model, not being here pursuing this litigation, but sitting on the sidelines and not taking action.

If Qualcomm wants to cross-examine our witnesses

43

--

THE COURT: How are they supposed to say we don't believe you, that's not true?

MS. DURIE: I think we could work out a stipulation. If their goal is to be able to establish that we are not contending there has been any such harm with respect to the terms of license agreements that we were able to negotiate in view of the fact that we did file a lawsuit, we have no problem with that, and I think we could work out a stipulation to that effect.

THE COURT: All right. This is what I am going to do. You can't use the ALA. It sounds like you don't want to use the ALA. And you can't use anything that's happened to date, and it doesn't sound like you want to use anything that's happened to date. So that I will rule on. Whatever happens, see if you can come up with a stipulation that will allow you to deal with it. If not, you can use some of your trial time to argue the rest of this, whatever is left of this motion to me.

MS. DURIE: Understood. Thank you, Your Honor.

THE COURT: But I understood the motion to be that defendants seek to preclude ARM from making argument about its ALA product program and so I guess to the extent that we're talking about not specific agreements but the program, then I -- let me know what's left of that motion.

44

MR. BLUMENFELD: I'm not sure, Your Honor, that there is anything left that we need to deal with today. We may well get into the issue of them putting Mr. Williamson, Mr. Abby, Mr. Haas, their witnesses on to talk about -- to create an impression that there is a parade of horribles that are going to happen and if that does --

THE COURT: I understand. I understand. And I'm not in any way precluding you from objecting to that, or from raising that before the witnesses get on the stand and asking for a proffer on what they're going to say on that so we can address it.

MR. BLUMENFELD: Thank you.

If I can respond to the colloquy that you had on damages, this is kind of an interesting issue for us. Back when we were before you in March, you asked them whether they were asserting a damages claim and they said no. They left themselves open to possibly doing it later. They've never given us a damages expert report. They've never given us a disclosure of a damages theory. They haven't put --

THE COURT: How scary it must be that they want me to figure it out.

MR. BLUMENFELD: But if you go to the pretrial order, I don't know if you have it in front of you.

THE COURT: I can pull it up. Give me a second.

MR. BLUMENFELD: It's Exhibit 13 to the pretrial

# Exhibit 4

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED, a
Delaware corporation,
QUALCOMM TECHNOLOGIES, INC.,
a Delaware corporation,

     Plaintiffs,

        vs.            C.A. No. 24-490 (MN)

ARM HOLDINGS PLC., f/k/a
ARM LTD., a U.K.
corporation,

     Defendant.

_____

VIDEO DEPOSITION OF ARM HOLDINGS PLC's 30(b)(6) and

   30(b)(1) REPRESENTATIVE - ▮▮▮▮▮▮▮▮▮▮

Palo Alto, California

Friday, June 20, 2025

Volume 1

STENOGRAPHICALLY REPORTED BY:
REBECCA L. ROMANO, RPR, CSR, CCR
California CSR No. 12546
Nevada CCR No. 827
Oregon CSR No. 20-0466
Washington CCR No. 3491
JOB NO. 7428915
PAGES 1 - 189



23 (Pages 86 - 89)



24 (Pages 90 - 93)

Veritext Legal Solutions
212-267-6868    www.veritext.com    516-608-2400

# Exhibit 5

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,      §
A DELAWARE CORPORATION,     §
QUALCOMM TECHNOLOGIES,      §  C.A. NO. 24-490-MN
INC., A DELAWARE            §
CORPORATION,                §
                            §
    PLAINTIFFS,             §
                            §
- AGAINST -                 §
                            §
ARM HOLDINGS PLC.,          §
F/K/A ARM LTD., A U.K.      §
CORPORATION,                §
                            §
    DEFENDANT.              §

ORAL AND VIDEOTAPED DEPOSITION OF ████████████
JULY 10, 2025

ORAL AND VIDEOTAPED DEPOSITION OF ██████
████████ produced as a witness at the instance of
the Plaintiffs and duly sworn, was taken in the
above styled and numbered cause on Thursday,
July 10, 2025, from 9:22 a.m. to 12:39 p.m., before
TAMARA CHAPMAN, CSR, RPR-CRR in and for the State of
Texas, reported by computerized stenotype machine,
at the offices of Kirkland & Ellis, LLP, 401
Congress Avenue, Austin, Texas, pursuant to the
Federal Rules of Civil Procedure and any provisions
stated on the record herein.

Job No. NY 7464214



10 (Pages 34 - 37)

# Exhibit 6

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED a Delaware corporation, ) Case No.
QUALCOMM TECHNOLOGIES, INC., a Delaware        )24-490-MN
corporation,                                   )
                                               )
     Plaintiffs,                               )
                                               )
   vs.                                         )
                                               )
ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K.        )
corporation,,                                   )
                                               )
     Defendant.                                )
_____)

                              ███████████  VIDEOTAPED

       30(b)(6) DEPOSITION OF ███████████████

                    Palo Alto, California

                  Wednesday, July 9, 2025


              REPORTED BY: Derek L. Hoagland

                    CSR No. 13445



7 (Pages 22 - 25)



11 (Pages 38 - 41)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, <br><br> Defendant. | C.A. No. 24-490-MN <br><br> **PUBLIC VERSION** <br> **Filed August 8, 2025** |

**<u>NONPARTY MEDIATEK INC.'S CONSOLIDATED REPLY IN FURTHER
SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER</u>**

## **TABLE OF CONTENTS**

**Page**

I.    ARGUMENT ..................................................................................................................1

II.   CONCLUSION ..............................................................................................................7

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Blackbird Tech LCC v. Serv. Lighting & Elec. Supplies, Inc.*,
   2016 WL 2904592 (D. Del. 2016) ........................................................................................6

*Cipollone v. Liggett Grp., Inc.*,
   785 F.2d 1108 (3d Cir. 1986)................................................................................................4

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.*,
   206 F.R.D. 525 (D. Del. 2002) .......................................................................................2, 6-7

*Procter & Gamble Co. v. Boyle-Midway, Inc.*,
   1983 WL 830080 (D. Del. 1983) ..........................................................................................6

## ARGUMENT

Nonparty MediaTek Inc has moved for entry of a protective order preventing Defendant ARM from producing unredacted copies of highly sensitive technology and licensing agreements between ARM and MediaTek to MediaTek's closest competitor, Plaintiff Qualcomm. D.I. 323. The parties' oppositions (ARM Opposition at D.I. 343 and Qualcomm Opposition at D.I. 346) only confirm that MediaTek's motion for a protective order should be granted.

The agreements at issue are not important to this litigation, which is a contract dispute between ARM and Qualcomm that has nothing to do with MediaTek. ARM and Qualcomm argue that ARM's terms with MediaTek are potentially relevant to whether the terms of the licenses that ARM offered to Qualcomm were commercially unreasonable. ARM Opp'n D.I. 343 at 1; Qualcomm Opp'n D.I. 346 at 3. ████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████  ████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

1

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

That should be the end of the story.

████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████    ████████████████████████    ████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████. And discovery of irrelevant, highly sensitive third party material is simply not appropriate. *Cf., e.g., Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (cited by this Court in *ARM Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146 (MN) (D. Del.), D.I. 207).

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████ Qualcomm Opp'n D.I. 346 at 4. But this does not make MediaTek's agreements themselves "uniquely relevant to Qualcomm's claims" as Qualcomm argues. ██

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████



Qualcomm tries to distinguish this Court's prior decision in *ARM Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146 (MN) (D. Del.) (the "NUVIA litigation"), in which this Court did not order production of a non-party's licensing agreements with ARM. Qualcomm notes that there were further proceedings in the NUVIA litigation, and argues that the Court ultimately rejected arguments about the lack of relevance of the non-party agreements. Opp'n D.I. 346 at 5. Specifically, the Court held that ARM could not put on arguments that Qualcomm's conduct harmed its ability to negotiate other agreements that it had avoided producing in the first place, as Qualcomm recognizes. Opp'n D.I. 346 at 2, citing Opp'n D.I. 346 Ex. 3, 26:20–40:22. To be clear, the Court did *not* order production of the nonparty agreements there at issue.

ARM makes different arguments that are also unavailing. It asserts that there is no feasible alternative to producing MediaTek's agreements with ARM, though it says redactions would be appropriate. ARM Opp'n D.I. 343 at 1 ("Turning over MediaTek-Arm agreements with no redactions would needlessly expose highly sensitive commercial terms that have no relevance to the issues in the case."). But producing even redacted copies of MediaTek's highly

3

confidential agreements to MediaTek's closest competitor would be the wrong outcome:  The more appropriate alternative would be for ARM to ██████████████████████████ ████████████████████████████████████████████████████.

To the extent the Court determines that anything other than production ██████████ ██████████ is necessary, Qualcomm's outside counsel could examine anonymized or averaged pricing of ARM's various licensees rather than receiving MediaTek's specific agreements. More generalized information about ARM's other licensee agreements ████████████████ ████████████would be reflect commercial reasonableness more than any one party's particular (and highly confidential) agreement.  Further, internal documents and witness testimony would sufficiently describe ARM's general pricing and ██████████████████

The oppositions not only fail to show relevance of the confidential MediaTek agreements at issue, the filings also confirm the seriousness of MediaTek's confidentiality concerns.  MediaTek has demonstrated a "particular need for protection."  *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121, 1114 (3d Cir. 1986) (finding good cause for a protective order where "revelation of technical information [] might hurt one of the [producing company's] competitive positions").  These concerns include a need to protect trade secrets and highly sensitive information regarding ██████ ██ ████████ ██ ██████ ██ ████████ ██████████, as detailed in MediaTek's motion and supporting declaration.  *See* D.I. 323.  The risk of these harms still exists even if, as ARM suggested, information unrelated to the products at issue was redacted, because the information the Parties want—████████████████████ ████████████████████████–is also the information most competitively sensitive to MediaTek.  *See* D.I. 323, Ex. 1 ¶ 3 (MediaTek's Declaration stating that "MediaTek routinely pitches against Qualcomm for significant business opportunities in these markets and competes with Qualcomm across many industry sectors to develop the best chips to meet end customers'

4

needs.   MediaTek's ARM-licensed CPU technology is a key component in many of these competitive products.").

This particular need for protection is not remedied by an outside-counsel-eyes-only provision.  As Judge Hatcher recognized when issuing a protective order preventing production of nonparty Apple's licensing agreement in the NUVIA litigation, Qualcomm could use nonparties' information from licensing agreements to "obtain unfair competitive advantages."  NUVIA litigation, D.I. 207.  This "harm of disclosure" existed "given that Qualcomm's outside counsel will necessarily need to communicate generalized information about the [licensing agreement] to its client, all of which remains true even given the Protective Order in this case."  *Id*.  Though both ARM and Qualcomm attempt to distinguish this order, the Court's previous decisions in the NUVIA litigation remain highly relevant and show the importance of protecting sensitive information and avoiding risks of disclosure even to outside counsel.  ARM Opp'n D.I. 343 at 4-5; Qualcomm Opp'n D.I. 346 at 2; NUVIA litigation, D.I. 207.  That the claims are different here does not impact the sensitivity of the licensing agreements' terms.

In fact, MediaTek's agreements here are even more sensitive than the third party agreements that the Court protected from disclosure in the NUVIA litigation.  While in that case the Court noted that Qualcomm was Apple's "indirect competitor and customer," here Qualcomm is MediaTek's *most direct and closest* competitor.  NUVIA litigation, D.I. 207.  Indeed, among the many third parties whose interests might be implicated in this litigation, MediaTek has the highest risk of commercial harm.  *See* D.I. 323, Ex. 1 ¶¶ 3, 7 (MediaTek's Declaration stating that Qualcomm "directly compete[s] with MediaTek in the semiconductor space. For instance, both companies are leaders in producing smartphone systems on chips ('SoCs') for use with the Android operating system. . . .   MediaTek would suffer serious competitive injury if the ▮▮▮▮▮▮▮▮▮ were produced to Qualcomm, its exceptionally

5

close direct competitor."). The potential informational asymmetry between MediaTek and Qualcomm, should MediaTek's sensitive information be produced to Qualcomm, heightens the danger. Qualcomm could, for example, point to selective and out of context terms of MediaTek agreements with ARM to argue that Qualcomm can provide cheaper or more complete products than MediaTek can deliver.

Finally, as this Court noted in the NUVIA litigation, a protective order is appropriate notwithstanding an outside counsel eyes only provision because meaningful representation would require client consultation, which in turn could compromise confidentiality in a way that cannot be rectified.[1] For all the same reasons, a protective order is appropriate here. *See also, e.g., Blackbird Tech LCC v. Serv. Lighting & Elec. Supplies, Inc.*, 2016 WL 2904592, at *5 (D. Del. 2016) (ordering a protective order limiting plaintiff's counsel use of confidential information, because even when "presum[ing] the good faith of [plaintiff's] counsel, once such confidential information is disclosed, the bell cannot be unrung"); *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 530-32 (D. Del. 2002) (finding potential harm to a nonparty if required to disclose confidential information to a party-competitor, despite an attorney's eyes only limitation).

---

[1] Qualcomm's citation to *Blackbird Tech LLC v. Serv. Lighting and Electrical Supplies, Inc.*, Qualcomm Opp'n D.I. 346 at 6-7, does not support its argument that outside counsel will not necessarily need to communicate sensitive information to in-house attorneys. 2016 WL 2904592, at *5 (D. Del. 2016). Rather, *Blackbird Tech* recognizes that disclosure of sensitive information to an attorney who "work[ed] closely" with the competitive decision-making in-house attorneys "exacerbate[d] the potential for inadvertent misuse or disclosure." *Id.* at *4. Similarly, Qualcomm's citation to *Procter & Gamble Co. v. Boyle-Midway, Inc.*, is inapposite because, there, the concern regarding disclosure was that in-house legal counsel may reveal sensitive information to in-house patent staff was more speculative, in contrast to the obvious necessity of communications between outside counsel and in-house attorneys about a defense in an active litigation. 1983 WL 830080, at *1 (D. Del. 1983)

6

## CONCLUSION

For the foregoing reasons and those set forth in MediaTek's Motion, MediaTek respectfully requests that the Court issue a protective order prohibiting ARM from producing or otherwise disclosing to Qualcomm ██████████████████████████ ████████████████████ between ARM and MediaTek.


DATED:  August 1, 2025

By: /s/ Geoffrey G. Grivner

Geoffrey G. Grivner (#4711)
Buchanan Ingersoll & Rooney PC
500 Delaware Avenue, Suite 720
Wilmington, DE 19801-7047
302-552-4200
geoffrey.grivner@bipc.com

*Attorney for Nonparty MediaTek Inc.*

7

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 20, 2026, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com
John Poulos
NORTON ROSE FULBRIGHT US LLP

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2