## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation,
and QUALCOMM TECHNOLOGIES, INC.,
a Delaware corporation,

                Plaintiffs,

      v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a
U.K. corporation,

                Defendant.

**REDACTED - PUBLIC VERSION**
(Filed February 27, 2026)

C.A. No. 24-490-MN
(CONSOLIDATED)



---

### DEFENDANT ARM HOLDINGS PLC'S OBJECTIONS TO THE SPECIAL MASTER'S FEBRUARY 6, 2026 (D.I. 630) ORDER DENYING DEFENDANT'S MOTION TO STRIKE AND TO COMPEL (D.I. 378)

Dated: February 20, 2026

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Kasdin Mitchell, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
kasdin.mitchell@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................ 1

II.   FACTUAL BACKGROUND ................................................................... 1

      A.    Qualcomm's New And Untimely Claims ................................................ 1

      B.    Qualcomm's Improper Privilege Claims ................................................ 3

III.  ARGUMENT ............................................................................................ 4

      A.    Qualcomm's Untimely,  Intentionally Withheld Theories Should Be
            Stricken ................................................................................................ 4

            1.    Qualcomm's Disclosures Were Untimely. ................................... 4

            2.    The Order's *Pennypack* Analysis Is Erroneous. ......................... 6

      B.    Qualcomm's Privilege Claims Over Business Strategy Documents Are
            Improper................................................................................................ 9

IV.   CONCLUSION ....................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Immersion Corp. v. HTC Corp.*,
   2014 WL 3948021 (D. Del. Aug. 7, 2014) ........................................................................9, 10

*Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*,
   2017 WL 11558096 (D. Del. Dec. 11, 2017) ......................................................................4, 6

*Kurtz v. Westfield Ins.*,
   610 F. Supp. 3d 703 (E.D. Pa. 2022) ........................................................................................8

*Oasis Tooling, Inc. v. GlobalFoundries U.S., Inc.*,
   No. 1:22-cv-00312-CJB, D.I. 428 (D. Del. Mar. 4, 2024) ...................................................5, 7

*Wachtel v. Health Net, Inc.*,
   482 F.3d 225 (3d Cir. 2007) ....................................................................................................9

**Rules**

Fed. R. Civ. P. 26 ........................................................................................................................4, 6, 7

Fed. R. Civ. P. 37(c)(1) ....................................................................................................................6

Fed. R. Civ. P. 53 ............................................................................................................................4

## I.    PRELIMINARY STATEMENT

Arm objects to two portions of the Special Master's order denying Arm's August 11, 2025 motion to compel and strike.

First, four hours after fact discovery closed, Qualcomm supplemented its interrogatory responses to add at least fifteen new theories of liability. None of those theories, which include new tortious interference allegations and several new alleged breaches of two different contracts, appear in any of Qualcomm's ***three*** complaints in this case (and Qualcomm does not raise them in its recently filed complaint against Arm Ltd. either). Nor did Qualcomm disclose them during fact discovery in response to any of Arm's interrogatories. Qualcomm has no substantial justification for holding back these theories until the last day of discovery, as most of the newly challenged conduct occurred years earlier. Qualcomm's excuses for its late disclosure show Qualcomm decided to pursue its new theories months earlier, but intentionally did not disclose them in its interrogatory responses. That is textbook bad-faith behavior. This belated attempt to introduce numerous new and largely unexplained claims after Arm's ability to test and develop defenses to them in fact discovery had closed severely prejudices Arm.

Moreover, Qualcomm has improperly redacted and withheld non-privileged business strategy documents regarding its demand for a ██████████████ license renewal. Discovery has confirmed that Qualcomm's 2024 requests to renew its license to ███████ ██████  █████████████████████████████████████. This evidence undermines Qualcomm's ████████████ claim under the TLA that it was "harmed" by Arm's October 2024 offer. Qualcomm should produce this business strategy information.

## II.    FACTUAL BACKGROUND

### A.    Qualcomm's New And Untimely Claims

Qualcomm originally filed this litigation in April 2024, alleging Arm had breached the

parties' ALA. D.I. 1. Qualcomm filed a First Amended Complaint in December 2024 that added claims for breach of the ALA's implied covenant of good faith and fair dealing, tort claims for intentional and negligent interference with prospective economic advantage as well as a claim for violation of the California UCL. D.I. 36. Qualcomm then amended its claims again in a Second Amended Complaint on June 3, 2025. D.I. 137. In addition to the six counts that were at issue in its previous complaint, Qualcomm added two new contract claims related to the parties' separate TLA. *Id*. The TLA allegations center on an offer Arm made in October 2024 for a license renewal to three Arm implementation cores known as █████████████. *Id*.

Early in fact discovery, Arm served multiple interrogatories seeking the bases for Qualcomm's claims. On February 7, 2025, Arm asked Qualcomm to "[d]escribe with specificity the complete legal and factual basis" for its contentions that: (i) the conduct alleged in the complaint harmed Qualcomm (ROG 1), (ii) Arm's actions tortiously interfered with Qualcomm's business relationships, including by identifying "all such customers and prospective customers" (ROG 3), and (iii) Arm breached the ALA, including each act Qualcomm alleged was a breach (ROG 6). A0020, 32, 45.[1] On June 11, shortly after Qualcomm added its claims related to ██████████, Arm further asked Qualcomm to provide "the complete legal and factual basis" for its claim that "Arm breached the Qualcomm TLA." A0079. Qualcomm's responses throughout discovery hewed closely to the allegations in its complaints.

On the last day of fact discovery and four hours after its close, however, Qualcomm served supplemental responses that added numerous new theories. In support of its tortious interference claims, Qualcomm for the first time asserted that Arm's conduct "hampered Qualcomm's ability to negotiate business opportunities" with ██, and that Qualcomm had to

---

[1] Citations to "A000X" refer to the cited page(s) of the appendix submitted concurrently with this brief.

address "client concerns" with "██████████ and other major companies." A0027, 36. Qualcomm identified no damages or concrete harm associated with those customers. A0020-27, 32-37, 62-67, 332-336. With respect to its ALA claims, Qualcomm added an alleged breach of the implied covenant based on Arm supposedly withholding support for a tool known as the ETE checker. A0048, 93-94. And as to Qualcomm's TLA claims, Qualcomm newly claimed that licensing offers from years earlier for numerous other products (*e.g.*, ████████████ ███████████████████████████████████████████████████) all violated the TLA as well. A0081, 87.

None of these new contentions were recent discoveries. The alleged interference with Qualcomm's customers occurred in August and September 2022 and October 2024. The new TLA issues centered around offers for ████████████████████████████████ ████, respectively. A0024-25, 81-84, 87, 89-90. Even worse, Qualcomm failed to identify what precise offers it was referring to for the other remaining TLA products. As for the ETE checker, Arm allegedly withheld support in 2024.

Arm moved to strike these new theories, or alternatively, to have an opportunity to take additional discovery on them. A0003-5. The Special Master denied Arm's motion on February 6, finding that Arm "suffered no surprise or prejudice, Qualcomm acted in good faith, and … the claims and theories at issue here are very important." D.I. 630. The order does not address Arm's alternative request for discovery or discuss the prejudice Arm identified. *Id*. at 3-4.

### B. Qualcomm's Improper Privilege Claims

During discovery, Qualcomm produced an email chain revealing that Qualcomm's request to renew its ████████████████ license was ████████████████████ ████████████████████. A0343-0351. However, this document is heavily redacted and Qualcomm subsequently blocked questioning about it at depositions of the individuals on the

emails on privilege grounds. A0356-0360 at 68:10-83:11. When Arm questioned Qualcomm about its improper privilege claims, Qualcomm claimed that because an attorney, Larissa Cochron, was copied on the emails, that its privilege claims are proper.

Arm objects to the Order pursuant to the Court's procedures, D.I. 336 ¶ 6, and Fed. R. Civ. P. 53. The Court's review of this Order is *de novo*. Fed. R. Civ. P. 53(f)(3)-(4).

## III.    ARGUMENT

The Special Master erred by not striking Qualcomm's last-minute contentions concerning its tortious interference and contract claims. The "purpose of contention interrogatories is to narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondent's position." *Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, 2017 WL 11558096, at *7 (D. Del. Dec. 11, 2017). Arm did not have that opportunity because Qualcomm did not reveal its new theories until too late. Moreover, Qualcomm's privilege claims over its internal business strategy—not legal advice—are improper, and it should be ordered to produce documents it improperly redacted or withheld.

### A.    Qualcomm's Untimely, Intentionally Withheld Theories Should Be Stricken

#### 1.    Qualcomm's Disclosures Were Untimely.

Although the Order "assume[s] Qualcomm's disclosures were untimely," no assumption is necessary. Each of Qualcomm's belated claims are untimely under Rule 26, which "imposes a continuing obligation to timely supplement or correct discovery disclosures." *Integra*, 2017 WL 11558096, at *4; Fed. R. Civ. P. 26(e). Qualcomm does not dispute that it served its July 11 supplements nearly four hours *after* the fact discovery deadline. That alone confirms that Qualcomm did not comply with Rule 26, but Qualcomm's disclosures would have still been untimely even if served just before the deadline.

Qualcomm's new contentions significantly depart from its prior disclosures. During fact

discovery, Qualcomm only claimed that: Arm tortiously interfered with two customer relationships: ███████████ (D.I. 36 ¶¶ 113-117; A0033-34); Arm's October 2024 renewal offer for ████████████ violated the TLA (D.I. 137 ¶¶ 20-28, 102-127, 213-226); and Arm breached the implied covenant, but never based on an alleged withholding of ETE checker support or offers Arm made for other Arm products (D.I. 137 ¶¶ 181-188). Arm served interrogatories seeking Qualcomm's bases for its claims *months* before the discovery deadline. Yet Qualcomm waited until the last day of fact discovery at 8:50 p.m. to inject these new theories. As in *Oasis*, disclosing new contentions "many, many months late" without any "good reason for doing so" warrants striking them. *Oasis Tooling, Inc. v. GlobalFoundries U.S., Inc.*, No. 1:22-cv-00312-CJB, D.I. 428 at 2 (D. Del. Mar. 4, 2024).

None of the excuses Qualcomm offered the Special Master justify its behavior. It makes no difference that Qualcomm's CEO "referenc[ed] ██████████████ by name" at his deposition a week before the close of fact discovery, or that Qualcomm prepared its 30(b)(6) witness to testify on the last day of discovery about "Qualcomm's dealings with ██████████" and the time Qualcomm spent addressing ████ "customer concerns." A0459. Qualcomm's lawyers should have spoken—and likely did speak—to Qualcomm's witnesses when preparing discovery responses that Arm served months earlier. Revealing additional customer relationships that were allegedly harmed by Arm's conduct during depositions the final week of discovery is too late for Arm to meaningfully respond to that new information in any event.

Qualcomm also told the Special Master it disclosed the new ETE checker, TLA, and ALA implied breach theories *through RFPs that Qualcomm served* in January and February—months before Qualcomm even added the TLA counts to its complaint. A0460-61. That makes no sense. Serving document requests on the other side is no substitute for providing fulsome

contention interrogatory responses and turns the Federal Rules on their head. It is not Arm's responsibility to divine Qualcomm's contentions based on the RFPs Qualcomm serves. In fact, this supposed defense for Qualcomm's behavior confirms that Qualcomm intentionally provided incomplete interrogatory responses for months. If Qualcomm believed these additional theories were in the case as early as January, it had an obligation to provide the legal and factual basis for those theories in interrogatory responses at that time. Qualcomm instead said nothing.

For its TLA-related claims, Qualcomm contends the SAC pleads theories for licensing offers other than ████████████████. A0460. That is impossible to square with the allegations Qualcomm actually made. Paragraphs 20-28 and 109-127 describe Qualcomm's efforts to license ████████████████ in 2024. D.I. 137 ¶¶ 20-28, 109-127. The two TLA counts, Counts VII-VIII, mention exclusively ████████████████. *Id*. ¶¶ 213-226. The SAC is silent as to other licensing offers. It makes a passing reference to ████████, but only that Qualcomm "expects discovery to show" Arm's ████████████ ████████████ ████████████████, a claim it failed to plead. *Id*. ¶ 102.

## 2. The Order's *Pennypack* Analysis Is Erroneous.

Because Qualcomm failed to comply with Rule 26(e), it is "not allowed to use that information … at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Courts in the Third Circuit weigh the *Pennypack* factors: "(1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the testimony sought to be excluded." *Integra*, 2017 WL 11558096, at *5. As Arm explained in its letter brief to the Special Master, Qualcomm's failure was not substantially justified or harmless,

and the *Pennypack* factors favor exclusion.[2]

For factors one and two, Arm was surprised by Qualcomm's never-before-disclosed contentions and is severely prejudiced by their late disclosure. In *Oasis*, Judge Burke struck new claims first disclosed in an interrogatory response served after "discovery had closed and [defendant] no longer had the ability to propound discovery regarding" them. No. 22-cv-00312, D.I. 428 at 1 (finding prejudice and surprise factor "strongly favor[ed]" defendant). Arm did not know until after fact discovery that it needed to defend numerous additional licensing offers, alleged withholding of the ETE checker, or new tortious interference theories. Indeed, Arm likely has statute of limitations defenses for licensing offers made years earlier but had no opportunity to fully develop or raise those defenses. Arm also had no meaningful opportunity to take discovery or produce its own documents to defend itself against those new allegations.

For factor three, allowing Qualcomm to introduce these new theories will disrupt the order and efficiency of trial, and this sprawling case should be narrowed, not expanded, at this late stage. Qualcomm's theories remain evolving and underdeveloped even today. For example, Qualcomm did not provide any damages contentions for the customers first named in its July 11 interrogatory response, but told the Special Master its "damages expert only put in a report on ▆▆▆▆ and the rest will be done through fact witnesses." A2333 at 327:7-16. Arm should not learn what damages Qualcomm seeks or the factual basis for those damages for the first time at trial. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii). Qualcomm likewise failed to provide any significant discovery (factual or expert) regarding the ETE checker, tortious interference, or additional licensing offer allegations. Indeed, Qualcomm's belated July 11 interrogatory responses say

---

[2]    The Order incorrectly found "Arm does not attempt to show that it can satisfy the *Pennypack* factors … and identifies no specific prejudice." Order at 3. Arm addressed facts relevant to each factor, including prejudice. A0003-5.

Arm's "proposal for ▮▮▮▮▮▮▮▮ breached Section ▮▮▮▮▮" of the TLA, but Qualcomm told the Special Master its new TLA theories are all implied covenant claims it never even pled in the SAC. A2379 at 131:2-132:20. Arm also does not know which company relationships Qualcomm intends to tell the jury Arm interfered with and how, or the amount of harm Qualcomm allegedly suffered as a result.

For factor four, Qualcomm showed bad faith and willful delay by waiting until after fact discovery closed to add new claims based on conduct it has known about for years, including as far back as 2021. A0024-25. As discussed above, Qualcomm's own excuses for its behavior demonstrate Qualcomm intentionally left them out of its earlier Complaints and interrogatory responses. There is no good-faith explanation for that conduct.

For the fifth factor, the Special Master found, without explanation, that "the claims and theories at issue here are very important," D.I. 630 at 4, but Qualcomm's actions show otherwise. None of Qualcomm's new theories—which are years old—were important enough to include in three complaints or interrogatory responses served earlier. These are not hallmarks of a very important claim central to Qualcomm's case, but rather additional fodder Qualcomm seeks to use to paint Arm as a bad actor at trial. The *Pennypack* factors thus strongly support exclusion.

Finally, the Special Master's Order denying Qualcomm's cross-motion to compel additional discovery on these allegations further supports their exclusion. D.I. 629 at 2-3. The Special Master quoted *Kurtz v. Westfield Ins.* for the proposition that Qualcomm failed to make "factual allegations that support a cognizable claim" on these belated allegations. D.I. 629 at 3 (quoting *Kurtz v. Westfield Ins.*, 610 F. Supp. 3d 703, 711 (E.D. Pa. 2022)). In other words, because Qualcomm never properly pled these allegations in any complaint, it is not entitled to discovery on them. There is likewise no basis to permit Qualcomm to belatedly inject them after

8

fact discovery in supplemental interrogatory responses.[3]

**B.    Qualcomm's Privilege Claims Over Business Strategy Documents Are Improper.**

The Special Master's Order should also be overruled because it erroneously concluded that Qualcomm properly withheld communications regarding business strategy as privileged.

When a "communication between an attorney and non-legal personnel primarily relates to business concerns, the communication is not within the scope of attorney-client privilege." *Immersion Corp. v. HTC Corp.*, 2014 WL 3948021, at *1 (D. Del. Aug. 7, 2014). Likewise, "[w]here a lawyer provides non-legal business advice, the communication is not privileged." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007).

Qualcomm should be ordered to produce documents and information on Qualcomm's business strategy behind its TLA licensing renewal requests that it is improperly withholding as "privileged." During discovery, Qualcomm produced an email chain demonstrating that ███████████████████████████████████ ████████████████████████. A0344-51. As the document makes clear, Qualcomm ████████████████████ ████████████████████████████. *Id.* This document directly undermines Qualcomm's claim that it was "harmed" by Arm's October 2024 offer and is entitled to ██████████████████████. D.I. 137 ¶¶ 121-27. However, large portions of the document are redacted due to purported "privilege," and Qualcomm repeatedly blocked questioning about this business strategy information at depositions. A0356-60 at 68:10-83:11.

---

[3]    The Court should both strike Qualcomm's belated theories and overrule any forthcoming objection from Qualcomm to the Special Master's denial of its cross-motion to compel. However, should the Court overrule this objection, Arm alternatively requests an opportunity to conduct discovery on these new theories.

These redactions are improper. Qualcomm's witness repeatedly testified that he came up with the ████ to use ██████████████████ ████████ on his own without the involvement of lawyers. *Id.* at 70:25-71:1 (██████████████████████), 72:9-11 ████████████████████████████████████████████████████████ ████████ 75:15-17 ██████████████████████████████████████ (emphases added). The mere fact that an attorney, Larissa Cochron, was copied on the emails does not make those communications privileged, as there is no indication Ms. Cochron was providing legal advice.[4]

The Special Master briefly concluded that "Qualcomm properly withheld privileged communications." D.I. 630 at 4. That appears to be based on Qualcomm's representation that it allegedly "only redacted the first email in a multi-page thread because that email contains legal advice that a Qualcomm employee received in a discussion he had with a Qualcomm attorney." *Id.* That is incorrect at least because Qualcomm redacted three entire pages from the document, not a single email. There is no indication the emails concerned legal advice, but rather the business strategy ██████████████ ████████████████ ██████████████████.

Accordingly, Qualcomm should be ordered to re-produce documents withheld on this basis without redactions, and Arm should be given additional time to question Qualcomm's witnesses about this subject matter.  Alternatively, the Court should review the email chain *in camera* to test Qualcomm's privilege assertion, and order production if incorrect.

## IV.    CONCLUSION

The Special Master's should be overruled-in-part, and Arm's motions to strike and compel should be granted-in-part.

---

[4]    Ms. Cochran testified that her role in Qualcomm's business strategy was ████████████████████████ ██████████████████████████████████████████████ " A0367 at 106:1-5.

Dated: February 20, 2026

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Kasdin Mitchell, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
kasdin.mitchell@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

 */s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 20, 2026, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com
John Poulos
NORTON ROSE FULBRIGHT US LLP

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*