**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,<br><br>Defendant. | **REDACTED - PUBLIC VERSION**<br>(Filed February 27, 2026)<br><br>C.A. No. 24-490-MN<br>(CONSOLIDATED)<br><br> |

**APPENDIX TO DEFENDANT'S OBJECTIONS TO THE SPECIAL MASTER'S**
**MEMORANDUM ORDER (D.I. 630) RESOLVING DEFENDANT'S**
**MOTION TO STRIKE AND TO COMPEL (D.I. 378) – VOL. 2 OF 7**
**A0457 – A0904**

Dated: February 20, 2026

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Kasdin Mitchell, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
kasdin.mitchell@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

# TABLE OF CONTENTS

| Document | Page Range |
|---|---|
| C.A. No. 1:24-cv-00490-MN, Defendant Arm Holdings plc's Letter Brief to Special Master Rychlicki, dated August 11, 2025 █████████████████████ | A0001 |
| Declaration of Adam Janes in Support of Defendant Arm Holdings plc's Letter Brief to Special Master Rychlicki, dated August 11, 2025 ████████████ | A0008 |
| Exhibit 1 – Plaintiffs' Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1-9), dated July 11, 2025 █████████████ | A0013 |
| Exhibit 2 – Plaintiffs' Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14-24), dated July 11 2025 ████████████ | A0072 |
| Exhibit 3 – Plaintiffs' First Amended Complaint, dated December 16, 2024 ██████████ | A0129 |
| Exhibit 4 – Plaintiffs' Second Amended Complaint, dated June 3, 2025 █████████ | A0181 |
| Exhibit 5 – Plaintiffs' First Supplemental Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14-24), dated August 8, 2025 ██████████████ ██████ | A0252 |
| Exhibit 6 – Plaintiffs' Responses and Objections to Defendant's Second Set of Interrogatories (Nos. 10-13), dated May 9, 2025 ████████████████ | A0321 |
| Exhibit 7 – QCVARM_0605055 ████████████ ████████ | A0343 |
| Exhibit 8 – Excerpts from the June 25, 2025, deposition transcript of Kurt Wolf ██████████ | A0352 |
| Exhibit 9 – Excerpts from the July 11, 2025, deposition transcript of Larissa Cochron ██████████████████ | A0361 |

| Document | Page Range |
|---|---|
| Exhibit 10 – Excerpts from Plaintiffs' Third Supplemental Privilege Log, dated July 10, 2025 ███████████████ ██████████████ | A0369 |
| Exhibit 11 – Excerpts from the July 9, 2025, deposition transcript of Jignesh Trivedi ███████████████ | A0387 |
| Exhibit 12 – Excerpts from the July 17, 2025, deposition transcript of Paul Kranhold ███████████████ ████████ | A0395 |
| Exhibit 13 – July 3, 2025, deposition transcript of Jeffery B. Golden ███████████████ | A0402 |
| Exhibit 14 – Exhibit 1 to the July 1, 2025, deposition of Jean-Francois Vidon, bearing Bates stamp QCVARM_0544259 ███████████████████ | A0409 |
| Exhibit 15 – Excerpts from the June 27, 2025, deposition transcript of Richard J. Meacham ███████████ ████████ | A0414 |
| Exhibit 16 – Excerpts from the July 1, 2025, deposition transcript of Jean-Francois Vidon ███████████ ██ | A0421 |
| Exhibit 17 – Plaintiffs' Responses and Objections to Defendant's First Set of Requests for Admission (Nos. 1-30), dated July 11, 2025 ████████ | A0428 |
| Exhibit 18 – Email from Qualcomm's Counsel to Arm's Counsel, dated July 11, 2025 ███████████████ ██ | A0455 |
| C.A. No. 1:24-cv-00490-MN, Plaintiffs' Letter in Response to Defendant's August 11 Letter to Special Master Helena C. Rychlicki, dated August 18, 2025 ██████████████ █████████████ | A0457 |
| Exhibit 1 – Service Email from Arm to Qualcomm, dated July 11, 2025 | A0464 |
| Exhibit 2 – Letter from Catherine Nyarady to Jay Emerick, dated August 11, 2025 ███████████████ | A0466 |

2

| Document | Page Range |
|---|---|
| Exhibit 3 – Plaintiffs' First Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1–4, 7, and 9), dated June 25, 2025 ██████████ ██████ | A0480 |
| Exhibit 4 – QCVARM_0713516 ████████████ █████████████ | A0524 |
| Exhibit 5 – Excerpts from the July 3, 2025, deposition transcript of Cristiano Amon ██████████████████ | A0527 |
| Exhibit 6 – Plaintiffs' Responses and Objections to Arm Ltd.'s First Notice of Deposition of Qualcomm Inc. and Qualcomm Technologies, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6), dated June 23, 2025 ████████ | A0534 |
| Exhibit 7 – Excerpts from the July 11, 2025, deposition transcript of James Jeon ████████████████ | A0615 |
| Exhibit 8 – Excerpts from the July 7, 2025, deposition transcript of Rene Haas ██████████████ | A0627 |
| Exhibit 9 – Plaintiffs' Responses and Objections to Defendant's First Set of Requests for Production (Nos. 1-58), dated March 10, 2025 ████████ | A0634 |
| Exhibit 10 – Qualcomm's First Set of Requests for Production (Nos. 1-52), dated January 21, 2025 ██████████ | A0689 |
| Exhibit 11 – Qualcomm's Second Set of Requests for Production (Nos. 53-120), dated February 21, 2025 █████████ | A0707 |
| Exhibit 12 – Letter from Nicholas Fung to Catherine Nyarady, dated May 2, 2025 ████████████████ | A0728 |
| Exhibit 13 – Arm's Fifth Set of Requests for Production to Qualcomm (Nos. 228-287), dated June 11, 2025 ██████████ | A0746 |
| Exhibit 14 – Arm's Third Set of Interrogatories to Qualcomm (Nos. 14-23), dated June 11, 2025 █████████████ ███████ | A0763 |
| Exhibit 15 – Letter from Nicholas Fung to Catherine Nyarady Identifying Arm's Search Terms, dated April 1, 2025 █████ ████████████ | A0772 |

3

| Document | Page Range |
|---|---|
| Exhibit 16 – Letter from Catherine Nyarady to Nicholas Fung, dated April 15, 2025 | A0775 |
| Exhibit 17 – Letter from Catherine Nyarady to Nicholas Fung, dated May 16, 2025 | A0787 |
| Exhibit 18 – Assortment of ETE-related Documents ██████ ████████████████████████████████ | A0797 |
| Exhibit 19 – Plaintiffs' Responses and Objections to Defendant's Fourth Set of Requests for Production (Nos. 174-227), dated July 9, 2025 ████████████ | A0855 |
| Exhibit 20 – Excerpts from the July 9, 2025, deposition transcript of Jinesh Trivedi █████████████████████████████ | A0905 |
| Exhibit 21 – Excerpts from the July 3, 2025, deposition transcript of Jeffery B. Golden ██████████████████████ ██████ | A0914 |
| Exhibit 22 – Excerpts from the June 25, 2025, deposition transcript of Kurt Wolf ███████████ | A0922 |
| Exhibit 23 – QCVARM_0708107 ██████████████ ████████████ | A0931 |
| Exhibit 24 – Letter from Catherine Nyarady to Peter Evangelatos, dated July 21, 2025 | A0934 |
| Exhibit 25 – Arm's Second Supplemental Initial Privilege Log ████████████████████████████████ | A0938 |
| Exhibit 26 – Excerpts from  C.A. No. 22-cv-01146-MN, Jury Trial Hearing Transcript Vols. 3-4, dated December 17-18, 2024 | A1100 |
| Exhibit 27 – Arm's Responses and Objections to Qualcomm's First Set of Request for Admissions (Nos. 1-28), dated July 11, 2025 ████████████ | A1119 |
| Exhibit 28 – Plaintiffs' First Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1–4, 7, and 9), dated June 25, 2025 ██████████████████████ ████████████ | A1140 |
| C.A. 1:24-cv-00490-MN, Defendant Arm Holdings plc's Supplement to Arm's Motion to Strike and Compel (D.I. 378) | A1184 |

4

| Document | Page Range |
|---|---|
| and Opposition to Qualcomm's August 11 Letter Brief to Special Master Rychlicki, dated August 18, 2025 ██████████ ████████████ | |
| Declaration of Peter Evangelatos in Support of Defendant Arm Holdings plc's Supplement to Arm's Motion to Strike and Compel (D.I. 378) and Opposition to Qualcomm's August 11 Letter Brief to Special Master Rychlicki, dated August 18, 2025 ██████████████████████ | A1192 |
| Exhibit 1 – D.I. 375, Plaintiffs' Motion to Compel and Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes, dated August 11, 2025 ████████ ██████████ | A1199 |
| Exhibit 2 – D.I. 137, Second Amended Complaint, dated June 3, 2025 ████████ | A1216 |
| Exhibit 3 – D.I. 305, Arm's Reply Brief in Support of its Partial Motion to Dismiss Qualcomm's Second Amended Complaint, dated July 8, 2025 ████████ | A1287 |
| Exhibit 4 – D.I. 287, Qualcomm's Answering Brief in Opposition to Arm's Motion to Dismiss the Second Amended Complaint, dated July 1, 2025 ████████ | A1308 |
| Exhibit 5 – Technology License Agreement between Arm and Qualcomm, dated May 30, 2013 ██████████ | A1341 |
| Exhibit 6 – Plaintiffs' First Supplemental Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14-24), dated August 8, 2025 ██████████████ ████████ | A1397 |
| Exhibit 7 – Plaintiffs' Responses and Objections to Defendant's Fifth Set of Request for Production to Qualcomm (Nos. 228-287), dated June 11, 2025 ████████ | A1466 |
| Exhibit 8 – Plaintiffs' Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1-9), dated July 11, 2025 ██████████████████ | A1519 |
| Exhibit 9 – Arm's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes, dated August 7, 2025 ██████████████████ | A1578 |

| Document | Page Range |
|---|---|
| Exhibit 10 – Exhibit QCX-241 to the July 11, 2025, deposition of Vivek Agrawal, bearing Bates stamp ARM_01315194 ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | A1587 |
| Exhibit 11 – Exhibit QCX-272 to the July 11, 2025, deposition of Vivek Agrawal, bearing Bates stamp ARMQC_02784247 ▮▮▮▮▮▮▮▮▮▮▮▮▮ | A1591 |
| Exhibit 12 – Exhibit 30 to the July 2, 2025, deposition of Richard Grisenthwaite, bearing Bates stamp ARMQC_02779170 ▮▮ ▮▮▮▮▮▮▮▮ | A1600 |
| Exhibit 13 – Excerpts from the Jully 11, 2025, deposition transcript of Vivek Agrawal ▮▮▮▮▮▮▮▮▮▮ ▮ | A1602 |
| Exhibit 14 – Excerpts from the July 7, 2025, deposition transcript of Aparajita Bhattacharya ▮▮▮▮▮▮▮▮▮ ▮ | A1615 |
| Exhibit 15 – Excerpts from the July 2, 2025, deposition transcript of Richard Grisenthwaite ▮▮▮▮▮▮▮▮▮ ▮ | A1622 |
| Exhibit 16 – Excerpts from the June 20, 2025, deposition transcript of Martin Weidmann ▮▮▮▮▮▮▮▮ ▮ | A1627 |
| Exhibit 17 – Excerpts from the June 30, 2025 deposition transcript of Spencer Collins ▮▮▮▮ | A1633 |
| Exhibit 18 – Letter from Spencer Collins to Ann Chaplin, dated January 8, 2025, bearing Bates Stamp QCVARM_0573678 ▮▮▮▮ | A1641 |
| Exhibit 19 – Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's First Set of Requests for Production (Nos. 1-52), dated June 17, 2025 ▮▮▮▮▮ | A1644 |
| Exhibit 20 – Arm Holdings plc's First Supplemental Objections and Responses to Qualcomm's Third Set of Requests for Production (Nos. 121-156), dated June 17, 2025 ▮▮▮▮ | A1711 |

6

| Document | Page Range |
|---|---|
| Exhibit 21 – Arm's Second Supplemental Initial Privilege Log, dated July 11, 2025 ███████████████ ██ | A1752 |
| Exhibit 22 – Arm Holdings plc's Objections and Responses to Plaintiffs' Notice of 30(b)(6) Deposition, dated June 19, 2025 | A1756 |
| Exhibit 23 – Excerpts from the August 1, 2025, deposition transcript of Ami Badani ██████████████████ | A1805 |
| Exhibit 24 – Excerpts from the June 17, 2025, deposition transcript of Phil Hughes | A1816 |
| Exhibit 25 – Excerpts from the July 17, 2025, deposition transcript of Paul Kranhold ████████████ █ | A1822 |
| Exhibit 26 – Excerpts from the July 4, 2025, deposition transcript of Kenneth Siegel ██████████ | A1848 |
| Exhibit 27 – Excerpts from the August 14, 2025, transcript of proceedings before Special Discovery Master Helena C. Rychlicki, Esq. ██████████████████ | A1857 |
| Exhibit 28 – Arm Holdings plc's First Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1-3), dated July 11, 2025 █████████████ ██ | A1862 |
| Exhibit 29 – Excerpts from the June 26, 2025, deposition transcript of William Abbey ██████████ | A1892 |
| Exhibit 30 – Arm Holdings plc's Letter Brief to Special Master Rychlicki, dated August 1, 2025 ███████████ ███████████ | A1899 |
| Exhibit 31 – Letter from Jay Emerick to Catherine Nyarady, dated April 22, 2025 ████████ | A1907 |
| Exhibit 32 – Plaintiffs' Third Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1-9), dated August 8, 2025 █████████████ ██ | A1916 |
| Exhibit 33 – Plaintiffs' Second Supplemental Responses and Objections to Defendant's Second Set of Interrogatories (Nos. | A1994 |

7

| Document | Page Range |
|---|---|
| 10-13), dated August 8, 2025 ███████████ ██████ | |
| Exhibit 34 – Arm LTD.'s First Supplemental Objections and Responses to Qualcomm's Second Set of Requests for Production (Nos. 53-120), dated June 17, 2025 ██████████ | A2025 |
| Exhibit 35 – Plaintiffs' Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14-24), dated July 11, 2025 ███████████████████████████ | A2097 |
| C.A. No. 1:24-cv-00490-MN, Plaintiffs' Supplemental Letter to Special Master Helena C. Rychlicki Regarding Scope of Discovery, dated August 18, 2025 ██████████ | A2156 |
| Exhibit 1 – Letter from Spencer Collins to Ann Chaplin, dated October 23, 2024 | A2161 |
| Exhibit 2 – Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes, dated August 7, 2025 ████████████████ | A2164 |
| Exhibit 3 – Qualcomm's First Set of Requests for Production (Nos. 1-52), dated January 21, 2025 ████████ | A2173 |
| Exhibit 4 – Qualcomm's Second Set of Requests for Production (Nos. 53-120), dated February 21, 2025 ██████ | A2179 |
| Exhibit 5 – Qualcomm's Fourth Set of Requests for Production (Nos. 157-168), dated April 16, 2025 ████████ | A2190 |
| Exhibit 6 – Qualcomm's Second Set of Interrogatories to Arm (Nos. 4-11), dated May 14, 2025 ██████ | A2197 |
| Exhibit 7 – Plaintiffs' Responses and Objections to Defendant's Fifth Set of Requests for Production (Nos. 228-287), dated July 11, 2025 ██████ | A2203 |
| Exhibit 8 – Plaintiffs' Responses and Objections to Arm Ltd.'s First Notice of Deposition of Qualcomm Inc. and Qualcomm Technologies, Inc. Pursuant to Federal Rule Of Civil Procedure 30(b)(6) | A2217 |
| Exhibit 9 – Excerpts from the July 11, 2025, deposition transcript of Jonathan Weiser ████████████ | A2234 |

8

| Document | Page Range |
|---|---|
| Exhibit 10 – Excerpts from the July 11, 2025, deposition transcript of Larissa Cochron ██████████████ ████████ | A2238 |
| Exhibit 11 – Excerpts from the July 11, 2025, deposition transcript of Ann Chaplin ████████████████ ██ | A2241 |
| Exhibit 12 – Excerpts from the June 25, 2025, deposition transcript of Kurt Wolf ██████████ | A2245 |
| Exhibit 13 – Excerpts from the June 24, 2025, deposition transcript of Manju Varma ████████████████ | A2248 |
| C.A. No. 1:24-cv-00490-MN, Transcript of Proceedings before Helena C. Rychlicki, Esq. – Special Discovery Master, dated August 14, 2025 ██████████████████ | A2251 |
| C.A. No. 1:24-cv-00490-MN, Transcript of Proceedings before Helena C. Rychlicki, Esq. – Special Discovery Master, dated August 22, 2025 ██████████████████ | A2346 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 24-490 (MN) |
| v. | ) ) ) | ███████████████████ ███████████████████ |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' LETTER IN RESPONSE TO DEFENDANT'S AUGUST 11
LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI**

<table>
<tr>
<td></td>
<td>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>Jack B. Blumenfeld (#1014)<br>Jennifer Ying (#5550)</td>
</tr>
<tr>
<td>OF COUNSEL:</td>
<td>Travis Murray (#6882)<br>1201 North Market Street</td>
</tr>
<tr>
<td>Catherine Nyarady<br>Anish Desai<br>S. Conrad Scott<br>Jacob A. Braly<br>Jacob Apkon<br>Flint A. Patterson<br>PAUL, WEISS, RIFKIND,<br>  WHARTON & GARRISON LLP<br>1285 Avenue of the Americas<br>New York, NY 10019<br>(212) 373-3000</td>
<td>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jying@morrisnichols.com<br>tmurray@morrisnichols.com<br><br>*Attorneys for Plaintiffs*</td>
</tr>
<tr>
<td>Eric C. Westerhold<br>Adam Basner<br>Gregg Stephenson<br>PAUL, WEISS, RIFKIND,<br>  WHARTON & GARRISON LLP<br>2001 K Street, NW<br>Washington, DC 20006<br>(202) 223-7300</td>
<td></td>
</tr>
</table>

**A0457**

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

August 18, 2025

**A0458**

Dear Special Master Rychlicki:

Qualcomm submits this letter in opposition to Arm's August 11 letter ("Ltr.").

**I.      Qualcomm's Theories and Claims Were Timely Disclosed**

Arm asks to strike certain undefined "new theories and claims" because Qualcomm served supplemental interrogatory responses approximately 4 hours after July 11's 5pm fact-discovery-deadline.[1]  Ltr. at 1.  It remains unclear what relief is sought as Arm identifies no claims.  It seems more likely Arm is attempting to preclude certain evidence at trial.  This is not a "discovery dispute" referred by the Court.

Arm cites *Meyers* v. *Pennypack Woods Home Ownership Ass'n* for the proposition that Qualcomm's interrogatory responses should be stricken but does not attempt to show that it can satisfy the *Pennypack* factors to preclude late-disclosed discovery and identifies no specific prejudice.  559 F.2d 894, 904-05 (3d Cir. 1977); Ltr. at 1.[2]  Moreover, each purportedly new theory or claim was timely disclosed (Ex. 2):

**Tortious Interference.**  The Second Amended Complaint ("SAC") is clear that ███████ (the "Smartphone Company") and ████ (the "AI and Ecosystem Company") were just two examples of companies Arm interfered with, D.I. 137 ¶¶ 158, 190, 198, and Qualcomm never limited its claims only to those two customers.  For example, Qualcomm's June 25 Supplemental Responses to Interrogatories 1 and 3 list exemplar documents containing communications between Qualcomm and several customers, including ███, following Arm's leak of the October 22 letter.  Ex. 3 at 9-10, 16 (referencing, among others, QCVARM_0713516, attached as Ex. 4).

On July 3, Cristiano Amon, Qualcomm's CEO, testified that "████████████████████" following Arm's leak, referencing ████████████ by name.  Ex. 5 at 41:9-42:10, 43:2-12, 45:9-18.  Qualcomm's corporate representative designated to provide testimony "regarding Qualcomm's communications with potential or actual Arm or Qualcomm customers regarding the Arm's October 22, 2024 breach notice," Ex. 6 at 55-56; Ex. 7 at 6:24-7:4, later testified as to the time and resources spent addressing customer concerns, including ████, Ex. 7 at 96:7-15, 98:23-100:18, and to Qualcomm's dealings with ████████, *id.* at 13:24-14:22, 17:22-23:1, 90:25-

---

[1] Senior members of Qualcomm's counsel team were attending five depositions in California that day.  Arm also served supplemental discovery responses after the 5pm deadline.  Ex. 1.

[2] Arm's other cases are no more helpful.  In *Integra Lifesciences* v. *Hyperbranch Medical Technology, Inc.*, the *Pennypack* factors were used to strike portions of an expert report related to a damages theory not disclosed in interrogatory responses; interrogatory responses were not stricken.  2017 WL 11558096 at *7-13 (D. Del. Dec. 11, 2017).  In *Oasis Tooling* v. *GlobalFoundries U.S., Inc.*, the Court struck damages theories made for the first time in a sixth supplemental interrogatory response because they were disclosed "many, many months late" without any "good reason for doing so," the disclosure was prejudicial, and the new theories were not "all that important to [the] case."  C.A. No. 22-312-CJB, D.I. 428 (D. Del. Mar. 4, 2024).

94:17. Qualcomm properly conformed its interrogatory responses to this witness testimony. Fed. R. Civ. P. 26(e).

Arm seeks to quash timely third-party subpoenas,[3] but it has no standing absent some personal right or privilege in the subject matter sought. *Jones* v. *Crisis Intervention Servs.*, 239 F. Supp. 3d 795, 801 (D. Del. 2017), *aff'd*, 686 F. App'x 81 (3d Cir. 2017). Arm has none here. Alternatively, Arm asks to serve its own "reciprocal" third-party subpoenas and "to take additional depositions of Qualcomm's witnesses." Ltr. at 1. But no documents from these third parties have been produced[4] and no depositions have been taken, and Arm already had multiple opportunities to question Qualcomm witnesses about these topics and did so.

**TLA IP.** Arm attempts to blame Qualcomm for Arm's own failures to take discovery relating to Qualcomm's TLA claims. In ***January and February*** alone, Qualcomm served at least 13 RFPs relevant to Arm CPUs ███████████████████████ ████████████████████████████████████████████ ████████████████████████████  Ex. 10 at 12-13; Ex. 11 at 6-8, 10-12, 14-15. Arm refused discovery on these topics until the SAC—which added standalone TLA claims, as permitted by the Court—*e.g.*, Ex. 12 at 1, and served no requests of its own until after that time.

The SAC makes clear that Qualcomm's claims are not limited only to Arm's misconduct with respect to ███████████████████. D.I. 137 ¶¶ 51-52, 102, 181-188, 213-226; *see* Qualcomm Supplemental TLA Letter. Arm conceded as much when, on June 11, it served at least 10 RFPs covering the TLA IP it now wants out of the case. Ex. 13 at 4-7. That same day, Arm served Interrogatories 14 and 15 regarding the scope of Qualcomm's TLA claim. Ex. 14 at 2-3. By Arm's delay, Qualcomm's' responses to these interrogatories were not due until the last day of fact discovery. *Id.*; Arm Ex. 2. That Arm may now "be forced to develop its defenses on a compressed schedule in the middle of expert discovery and dispositive motions," Ltr. at 2, is of Arm's own making.

This case is nothing like *Barry* v. *Stryker Corp.*, where the Court repeatedly expressed its understanding of the scope of plaintiff's claims without correction, only for plaintiff to later try to add a new set of products into the case via interrogatory response. 2023 WL 2733652, at *6 (D.

---

[3] Arm takes issue with Qualcomm's subpoenas to █████████████ because Qualcomm purportedly "never pleaded or disclosed any tortious interference claim based on its relationships with" them. Ltr. at 1. But Arm's counsel acknowledged at Mr. Amon's deposition that "when we were talking [] about the PC market and alleged harm that Qualcomm identifies," that Qualcomm CPUs were "████████████████████████████████████████████." Ex. 5 at 121:3-10. And Arm placed ██████████████████ at issue when, on July 7, its CEO testified that he discussed Qualcomm and the Arm-Qualcomm litigation with each. Ex. 8 at 18:20-21:9, 25:10-30:20. Arm was free to serve its own discovery on these parties.

[4] Qualcomm agreed to produce to Arm all "documents produced by third parties in response to any subpoenas served by Plaintiffs in this matter." Ex. 9 at 11.

2

**A0460**

Del. Mar. 20, 2023). Here, Qualcomm consistently maintained that these technologies are in the case, and Arm served discovery on these TLA claims.

**ETE Checker.** Arm is wrong that Qualcomm waited until the close of fact discovery to make allegations regarding the ETE Checker. In ***January and February***, Qualcomm served multiple requests for production regarding the ETE Checker, Ex. 10 at 10, 13; Ex. 11 at 10-11, and Arm even drafted two search terms to find responsive documents, Ex. 15. The parties discussed the ETE Checker at multiple meet and confers. *E.g.*, Ex. 16 at 6-7; Ex. 17 at 2-3. Then, as Arm concedes, in ***May***, Qualcomm told Arm that "Arm violated the terms of the Qualcomm ALA by failing to . . . provide support for the ETE Checker." Arm Ex. 6 at 17-18.[5]

Arm claims no prejudice from the alleged late disclosure and omits that it already took ETE Checker discovery. Arm served over a dozen RFPs on the ETE Checker and Qualcomm produced numerous documents on it. Ex. 19 at 23-33, 38-39. Arm listed several ETE-Checker-related topics in its Rule 30(b)(6) notice; Qualcomm provided a witness for all of them. Ex. 6 at 8-13, 21-22, 24-25. Arm also questioned multiple Qualcomm witnesses about the ETE Checker. Ex. 20 at 90:1-91:11, 142:14-145:2; Ex. 21 at 43:12-44:3, 49:14-50:11, 57:7-63:3.

Arm's argument that it could not have violated an implied covenant where there is a purportedly applicable express covenant, Ltr. at 2-3, is a merits argument, not a discovery dispute, and neither case Arm cites applies governing California law. *USX Corp.* v. *Prime Leasing Inc.*, 988 F.2d 433, 438 (3d Cir. 1993) (Pennsylvania law); *Cision US, Inc.* v. *CapTech Ventures, Inc.*, 2025 WL 1094318, at *5 (D. Del. Apr. 11, 2025) (Delaware law).

## II.    Qualcomm Properly Withheld Privileged Communications

**Kurt Wolf's Documents.** Qualcomm's privilege review properly distinguished business strategy from legal advice, and Qualcomm's limited redactions to QCVARM_0605055[6] confirm this. Qualcomm redacted only the first email on this multi-page thread because that email contains legal advice Mr. Wolf received in a "discussion [he] had w Larissa" Cochron, an attorney and Qualcomm's Senior Director of Contracts. Arm Ex. 7 at -059. That Mr. Wolf may have come up with a certain ***business strategy*** "on his own," Ltr. at 3, does not negate that he sought (and received) ***legal advice*** regarding that strategy. And Qualcomm did not, as Arm contends, apply redactions merely because Ms. Cochron "was copied on the correspondence," *id.*, as is evidenced

---

[5] Arm is wrong on Interrogatories 2 and 9. Ltr. at 2. In both responses, pursuant to Rule 33(d), Qualcomm listed documents related to Arm's refusal to provide configuration information for the ETE Checker. Arm Ex. 1 at 17-18, 51-52 (listing, among others, 14 ETE-related documents attached as Ex. 18); Ex. 28.

[6] Arm mischaracterizes QCVARM_0605055. Ltr. at 3. And Qualcomm did not "block[] questioning" about this document. *Id.* Counsel properly instructed Mr. Wolf not to "divulge the contents of communications [he] had with [his] counsel," Arm Ex. 8 at 70:15-24, but welcomed "questions about what comes later in this thread." *Id.* at 72:1-7. Mr. Wolf testified at length, even beyond Arm's cited excerpt. Ex. 22 at 68:10-90:8.

**A0461**

by the remainder of the thread, which still includes Ms. Cochron and which is entirely unredacted. Arm Ex. 7.[7]

Where "business and legal advice" are "inextricably interwoven," "courts look to the communications' primary purposes to determine whether attorney-client privilege applies." *Onyx Therapeutics, Inc.* v. *Cipla Ltd.*, 2019 WL 668846, at *1 (D. Del. Feb. 15, 2019) (cleaned up). Neither case Arm cites suggests that communications reflecting legal advice about a business strategy must primarily have a business purpose. *See Immersion Corp.* v. *HTC Corp.*, 2014 WL 3948021, at *1 (D. Del. Aug. 7, 2014) (primary purpose of "factual information about licensing/royalty rates" is business); *Wachtel* v. *Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007) (analyzing the fiduciary exemption to privilege and vacating order requiring production of privileged documents).

Arm lists a smattering of documents from Qualcomm's privilege log it believes were improperly withheld, premised entirely on the fact that these documents are from the same "timeframe and the same witnesses." Ltr. at 3. Arm's challenge does not satisfy the ESI Order's requirement for raising issues regarding the privilege log. D.I. 85 ¶ 1(e)(v)(2). Regardless, Qualcomm's privilege determinations were proper: each of the documents Arm challenges contains legal advice or the providing or requesting thereof. Ex. 24 at 2.

**Richard Meacham's Documents and Deposition Testimony.** At the Meacham deposition, Arm marked two exhibits inadvertently produced without redactions, and questioned Mr. Meacham about privileged communications described therein. An investigation confirmed both documents were privileged, and Qualcomm promptly clawed them back, along with Mr. Meacham's limited testimony before counsel recognized the privilege issue.

Both documents reflect legal, not business, advice. The redacted portion of QCVARM_0600200, since re-produced as QCVARM_1118567, contains legal advice provided to Manju Varma, who then conveyed it to Mr. Meacham. *INVISTA N. Am. S.a.r.l.* v. *M&G USA Corp.*, 2013 WL 12171721, at *9 (D. Del. June 25, 2013) ("privileged communications may be shared by non-attorney employees in order to relay information requested by attorneys" (cleaned up)). Likewise, the redacted portion of QCVARM_0600255, since re-produced as QCVARM_1118570, concerns active contract negotiations with Arm, and includes notes reflecting counsel's legal advice. *Montgomery Cnty.* v. *MicroVote Corp.*, 175 F.3d 296, 303 (3d Cir. 1999) (privilege covers "negotiating a contract and rendering advice"); Ex. 25 (Arm asserting privilege over 577 documents "regarding contract issues" and 459 documents "regarding licensing issues").

---

[7] Arm's accusation that Qualcomm employees are "copying lawyers on business communications" to evade discovery, Ltr. at 4, is unfounded. Nearly the entire thread Arm complains of is unredacted, despite a lawyer being copied on each email. Arm Ex. 7. Likewise, Arm quotes out-of-context testimony from Jignesh Trivedi, a non-lawyer, without acknowledging that the document he testified about was ***produced in full***, despite Mr. Trivedi copying a lawyer and marking his communication "ACP." Ex. 23.

Arm is wrong that Qualcomm is somehow attempting "to hide its reliance on Nuvia technology." Ltr. at 4. This is also irrelevant to the issues in this case. At trial in *Arm Ltd.* v. *Qualcomm Inc.*, Qualcomm witnesses repeatedly acknowledged that Qualcomm continued using Nuvia Technology. Ex. 26 ata 401:9-18, 409:16-21, 412:9-16, 808:1-4, 809:1-12, 824:21-24. The jury nonetheless found "that the Qualcomm CPUs that include designs acquired in the Nuvia acquisition are licensed under the Qualcomm ALA." C.A. No. 22-1146-MN, D.I. 572.

## III.     Qualcomm Properly Responded to Arm's RFAs

Without naming specific responses, Arm contends "Qualcomm served several improper RFA responses" because they either "tack on non-responsive, self-serving statements" after admitting or denying the admission, or fail to respond to the actual request by qualifying its response. Ltr. at 4-5. Arm never explains why Qualcomm's responses are deficient, and the Federal Rules acknowledge that good faith might "***require***" Qualcomm to "qualify an answer or deny only a part of a matter." Fed. R. Civ. P. 36(a)(4) (emphasis added); *United Coal Companies* v. *Powell Const. Co.*, 839 F.2d 958, 967 (3d Cir. 1988). Qualcomm's responses do just that. Arm cites no authority for the proposition that Qualcomm is only permitted to admit or deny the entirety of each RFA without further explanation,[8] and Arm itself qualified responses to Qualcomm's requests for admission before admitting or denying the request. *E.g.*, Ex. 27 at 5, 7-9.

Arm states Qualcomm "outright refuses to answer RFAs 21 and 26," Ltr. at 4, but Qualcomm answered RFA 26. Arm Ex. 17 at 20. And RFA 21 asks Qualcomm to interpret the Nuvia ALA; such interpretation is not at issue here and is therefore objectionable. *Tulip Computers Int'l, B.V.* v. *Dell Computer Corp.*, 210 F.R.D. 100, 107 (D. Del. 2002) (RFAs should be "relevant to the pending action" and requests seeking "legal conclusions are not allowed").

*     *     *

For these reasons, Arm's motion should be denied.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 2399

Encls.

---

[8] Arm cites *Williamson* v. *Correctional Medical Services*, which holds only that a party may not object to RFAs on grounds they require expert opinion or should be sought from a third party if responding does "not require an expert opinion or [the RFAs] were directed to [a party] and not a third party." 2009 WL 1364350, at *3 (D. Del. May 14, 2009).

5

**A0463**

# Exhibit 1

| | |
|---|---|
| **From:** | Fanelli, Dominic |
| **To:** | Basner, Adam L; Desai, Anish; Nyarady, Catherine; emorgan@dirllp.com; Westerhold, Eric C; Patterson, Flint; GRP-QCvARM; Stephenson, Gregg; Apkon, Jacob; jblumenfeld@mnat.com ; Braly, Jacob; john.poulos@nortonrosefulbright.com; jying@morrisnichols.com; kdunn@dirllp.com; mzappala@dirllp.com; richard.zembek@nortonrosefulbright.com; Scott, S. Conrad; tmurray@morrisnichols.com; wisaacson@dirllp.com |
| **Cc:** | KE-ARM-Qualcomm@kirkland.com; MoFo_Arm_QCOM@mofo.com; YCST_Arm_Qualcomm@ycst.com |
| **Subject:** | Arm/Qualcomm- C.A. No. 24-490-MN - Discovery - Highly Confidential - AEO |
| **Date:** | Friday, July 11, 2025 5:11:37 PM |
| **Attachments:** | image001.png |
| | FINAL Arm 1st Suppl. Resps. to QC 3rd ROGs (No. 12)(125384651.pdf |
| | FINAL Arm Responses to QC 2nd Set of ROGs (Nos. 4-11)(122459626.pdf |
| | FINAL Arm"s Supp Response to QC Amended ROG 3(123258176.pdf |
| | FINAL Arm"s Supplemental Responses to ROGs 1-2(120302491.pdf |

Please see the attached documents:

**HIGHLY CONFIDENTIAL – AEO - ARM'S FIRST SUPPLEMENTAL RESPONSE TO QUALCOMM'S Amended INTERROGATORY NO. 3**

**HIGHLY CONFIDENTIAL – AEO - ARM'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S SECOND SET OF INTERROGATORIES (NOS. 4-11)**

**HIGHLY CONFIDENTIAL – AEO - ARM HOLDINGS PLC'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S FIRST SET OF INTERROGATORIES (NOS. 1–3)**

**HIGHLY CONFIDENTIAL – AEO - ARM'S FIRST SUPPLEMENTAL RESPONSE TO QUALCOMM'S THIRD SET OF INTERROGATORIES (NO. 12)**



**Dominic Fanelli, Paralegal**
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P: 302.571.6665
DFanelli@ycst.com | www.youngconaway.com

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

-

# Exhibit 2
## (REDACTED IN ITS ENTIRETY)

# Exhibit 3
## (REDACTED IN ITS ENTIRETY)

**A0480**

# Exhibit 4
# (REDACTED IN ITS ENTIRETY)

A0524

# Exhibit 5
## (REDACTED IN ITS ENTIRETY)

A0527

# Exhibit 6
## (REDACTED IN ITS ENTIRETY)

# Exhibit 7

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____
                              )
QUALCOMM INCORPORATED, a       )
Delaware corporation,          )
QUALCOMM TECHNOLOGIES,         )
INC., a Delaware              )
corporation,                  )       C.A. No. 24-490-MN
                              )
                              )
          Plaintiffs,         )
                              )
     vs.                      )
                              )
ARM HOLDINGS PLC, f/k/a,       )
ARM LTD., a U.K.              )
corporation,                  )
                              )
                              )
          Defendant.          )
_____)


HIGHLY CONFIDENTIAL - COUNSELS' EYES ONLY
DEPOSITION OF JAMES JEON
AS CORPORATE DESIGNEE FOR QUALCOMM INCORPORATED
CONDUCTED REMOTELY
JULY 11, 2025


REPORTED BY KAYLEE G. WOOD, RPR, CRR, CSR NO. 14348
_____
DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

## Page 2

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

_____

)
QUALCOMM INCORPORATED, a    )
Delaware corporation,    )
QUALCOMM TECHNOLOGIES,    )
INC., a Delaware    )
corporation,    )    C.A. No. 24-490-MN
)
)
          Plaintiffs,    )
)
    vs.    )
)
ARM HOLDINGS PLC, f/k/a,    )
ARM LTD., a U.K.    )
corporation,    )
)
)
          Defendant.    )
_____

VIDEO RECORDED DEPOSITION OF JAMES JEON AS CORPORATE DESIGNEE FOR QUALCOMM INCORPORATED, commencing at the hour of 2:03 p.m. PDT, Friday, July 11, 2025, conducted remotely, before Kaylee G. Wood, Certified Shorthand Reporter, Registered Professional Reporter, and Certified Realtime Reporter in and for the State of California.

## Page 3

APPEARANCES
FOR THE PLAINTIFFS:
    MORRIS, NICHOLS, ARSHT, & TUNNELL LLP
    BY:  JENNIFER YING, ESQ.
    1201 NORTH MARKET STREET
    PO BOX 1347
    WILMINGTON, DE 19899
    (302) 351-9243
    JYING@MNAT.COM

FOR THE PLAINTIFFS:
    PAUL WEISS RIFKIND WHARTON & GARRISON LLP
    BY:  FLINT A. PATTERSON, ESQ.
    1285 AVENUE OF THE AMERICAS
    NEW YORK, NY 10019
    (646) 478-1450
    FPATTERSON@PAULWEISS.COM

FOR THE PLAINTIFFS:
    QUALCOMM INCORPORATED
    BY:  GUY PERRY, ESQ.
    5775 MOREHOUSE DRIVE
    SAN DIEGO, CA 92121
    (858) 651-1367
    GPERRY@QUALCOMM.COM

FOR THE DEFENDANT:
    KIRKLAND & ELLIS LLP
    BY:  MATTHEW J. MCINTEE, ESQ.
    1301 PENNSYLVANIA AVENUE NW
    WASHINGTON, D.C. 20004
    (202) 389-5230
    MATT.MCINTEE@KIRKLAND.COM

ALSO PRESENT:
    IZABELLA MORRISSEY, VIDEOGRAPHER

## Page 4

I N D E X

WITNESS: James Jeon

EXAMINATION                    PAGE
BY MR. MCINTEE                   6
BY MS. YING                     95
BY MR. MCINTEE                  97

E X H I B I T S

MARKED FOR IDENTIFICATION              PAGE
Exhibit 1    Notice of Deposition        6
Exhibit 2    Bloomberg Article          34
Exhibit 3    October 2024 E-mail        35
Exhibit 4    October 2024 E-mail        41
Exhibit 5    October 2024 E-mail        43
Exhibit 6    Quarterly Report           56
Exhibit 7    January 2025 E-mail        64
Exhibit 8    January 2025 E-mail        90

## Page 5

CONDUCTED REMOTELY; JULY 11, 2025; 2:03 P.M. PDT

PROCEEDINGS

THE VIDEOGRAPHER:  Good afternoon.  This is media number 1 in the video deposition of James Jeon taken by the defense in the matter of Qualcomm Incorporated, et al., versus Arm Holdings PLC, et al., filed in the United States District Court for the District of Delaware, Case Number 24-490-MN.

This deposition is being held at San Diego Marriott Del Mar at 11966 El Camino Real, San Diego, California 92130 on July 11, 2025.  The time on the video screen is 2:04 p.m.

My name is Izabella Morrissey.  I am the legal videographer from Digital Evidence Group.  The court reporter is Kaylee Wood in association with Digital Evidence Group.

Will counsel please introduce themselves for the record?

MR. MCINTEE:  Matt McIntee from Kirkland & Ellis on behalf of Arm.

MS. YING:  Jennifer Ying from Morris, Nichols, Arsht, & Tunnell on behalf of the plaintiffs.

MR. PATTERSON:  Flint Patterson from Paul, Weiss on behalf of the plaintiffs.

MR. PERRY:  Guy Perry from Qualcomm.

2 (Pages 2 to 5)

Page 6

THE WITNESS: James Jeon from Qualcomm.

THE VIDEOGRAPHER: Would the court reporter please swear in the witness?

JAMES JEON, having first been duly sworn, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR THE DEFENDANT

BY MR. MCINTEE:

Q. Good afternoon, Mr. Jeon.

A. Hey, Matt. Nice to meet you.

Q. How are you doing?

A. Good.

Q. Have you been deposed before?

A. Nope.

Q. You understand you're testifying today on behalf of Qualcomm as to one topic, correct?

A. Yes.

Q. Okay. I'm handing you what's been marked as Jeon 1.

(Whereupon, Exhibit 1, Notice of Deposition, was marked for identification.)

Q. Have you seen this document before?

A. No.

Q. Can you turn to page 13, please. Topic 61 recites your disclosures or communications with third

Page 7

parties regarding the ALA breach allegations and communications. Are you prepared to provide corporate testimony on behalf of Qualcomm as to topic 61?

A. Yes.

MS. YING: And I'll just note that that's subject to our objections.

MR. MCINTEE: Noted.

Q. What did you do to prepare for your deposition today?

MS. YING: And I'll just caution the witness not to reveal the contents of any attorney-client privileged communications, but you can otherwise answer the question.

A. Okay. Yeah. I talked to the -- I mean first why I asked that all our regional team, who are actually constantly communicating with our customer. I asked them via the input on what exactly they're communicating with the customer regarding the Arm case happened and when those kind of discussion happened with customer.

And then the -- so I collected those information, get the report from the team, and then the -- share those, the -- consolidate kind of format of information with the corporate side. So on this deposition prior I talked to several of those people

Page 8

that in the regional team, you know, so they can share with me what kind of communication they had or what kind of things they're hearing from the customers.

Q. Okay. Let's break that down. So in order to provide corporate testimony as to topic 61, you spoke to some other --

A. Yes.

Q. -- folks in the Qualcomm organization, is that correct?

A. Yes.

Q. Okay. So how many people did you speak with?

A. I talked to like five, six key people.

Q. Okay.

A. Yeah.

Q. What are their names?

A. I talked to the Yasu Nakayama, the regional president of Japan, and then the Takuya, the sales lead in Japan, and then O.H. Kwon, APAC president, and then Spencer Kim, the sales lead in Korea, and then I talked to the --

(Reporter clarification.)

A. -- Tejas, the North America president. Yeah.

Q. Okay. The first person, I think you identified as the regional president of Japan?

A. Yes.

Page 9

Q. Is that correct?

A. Yes.

Q. What did the regional president of Japan tell you with regards to preparation for your corporate testimony?

MS. YING: And I'll just note that you can talk about the facts.

THE WITNESS: Yeah.

MS. YING: But not anything that you discussed with the lawyers.

THE WITNESS: Yes, yes.

MS. YING: Okay.

A. So what I asked with the team, I just want to be very clear. I didn't only, you know, ask the team, those group. I asked the Yasu and then the team that I just mentioned. Understanding the -- when they had the communication with the customer regarding the Arm case, starting from even the '22 time frame when the first lawsuit happened.

Q. Okay.

A. And then there's multiple incident, so I asked the team, hey, which customer either you should reach out to you or you tried to reach out regarding the Arm case, what timeline, what time -- when you guys had that communication, what kind of a communication

3 (Pages 6 to 9)

A0618

7/11/2025        Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.        James Jeon

Page 10

you had, and what kind of thing the customer saying to you, right?

So those are the generic questions that I asked the group, and then I asked actually the regional team provided those data input to me so I can understand over the customer communication related to the Arm case.

Q. Was the input provided by these regional --

A. Yes.

Q. -- team members, was that provided to you -- like did you have a phone conversation or was it provided over e-mail? How was -- how did they provide answers to those questions that you asked?

A. There was the tablet that they actually provided all the information into the document, and then the -- some of the discussion I had over the phone just to clarify their input.

Q. So a template was provided to these regional team leads that you just identified, and then they filled it in?

A. Yeah.

Q. Is that correct?

A. Yeah.

Q. Okay. And when did that happen?

A. I think it was mid-June time frame, early

Page 11

June.

Q. Okay. So we might be talking past each other a little bit. So in preparing for your deposition testimony, did you speak with any of those six folks --

A. Yes.

Q. -- that you identified?

A. Yes.

Q. Okay. When did you speak with them most recently?

A. Recently, this week.

Q. Okay.

A. Yeah.

Q. Do you recall when this week? Was it yesterday?

A. I talked to some of them yesterday and then some of them early this week like Monday.

Q. Okay.

A. And then some of them like Tuesday. Yes.

Q. Okay. So let me ask you this. When did you -- and I just want a date. I don't -- I'm not asking for the contents of anything you discussed with your attorneys, but when did you meet with your attorneys to prepare for your deposition?

A. I briefly met on Monday and then today, this morning.

Page 12

Q. Okay. This morning when you were with your attorneys, did you speak to any of those regional team leads?

A. Not the one that I told you. Yeah.

Q. Okay. Did you speak with anyone who was not an attorney this morning in preparing for your deposition?

A. In Qualcomm?

Q. So let's start with in Qualcomm.

A. Yes. I talked to a couple people in Qualcomm.

Q. Okay. Who did you speak with this morning who was not an attorney to prepare for your deposition?

A. I talked to the Tejas.

Q. Tejas? Okay.

A. Yeah.

Q. Anyone else?

A. I talked to -- we talked to the Mauricio.

Q. Can you spell that?

A. M-A-R -- I need to gather the detailed name --

Q. Okay.

A. I don't remember his spelling.

Q. Is that a first name or --

A. His first name. Yeah, yeah.

Page 13

Q. And what's the surname?

A. Lopez.

Q. Lopez?

A. Yeah.

Q. Okay.

A. Yeah.

Q. Anyone else besides --

(Reporter clarification.)

A. I talked to our Europe team member Edward. I don't remember his last name. Yeah.

Q. Okay. Anyone else?

A. I think that was it. Yeah.

Q. Okay. And then you -- so Tejas, Lopez, and Edward were employees of Qualcomm that you spoke with this morning?

A. Yeah.

Q. You said you also met with your attorneys on Monday, is that right?

A. Briefly, yes.

Q. Okay. When you met with your attorneys briefly on Monday, did you speak with any non-attorneys?

A. No.

Q. Okay. Starting with Tejas, what did Tejas tell you?

4 (Pages 10 to 13)

7/11/2025          Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.          James Jeon

5 (Pages 14 to 17)

7/11/2025          Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.          James Jeon



6 (Pages 18 to 21)

7/11/2025          Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.          James Jeon

████████████████████████



Page 22

Page 24

including the forecast, design pipeline, BOM, and then all the PO management, forecast management, those kind of thing.

Particularly on this case I am part of the IRT team, the immediate response team, so when any of the incident happen, either legal case, lawsuit, or some sort of some incident happen that Qualcomm need to provide the quick message out to our customer, I am handling the whatever company-approved message from the corporate, make sure that we share with our regional sales team and account team so they can communicate properly to their customer. So that's my own part of the responsibility.

Q. Okay. And without revealing the contents of any attorney-client communications, as a member of that IRT team, are you personally helping put together the actual messages that go out in those responses?

MS. YING: And I'll just instruct the witness, that's a yes-or-no question.

THE WITNESS: Yeah.

MS. YING: You just answer yes or no.

A. Yeah. No.

Q. Okay. So are you then taking the message and providing it to customers?

A. Yes.

Page 25

Q. Okay. Are you familiar with the Qualcomm architectural license agreement with Arm?

A. No. I'm not familiar with any detail of that.

Q. Okay. You haven't reviewed it or seen it?

A. No.

Q. Okay. What about the Qualcomm technology license agreement? Have you --

A. No.

Q. Okay. That's something you haven't seen or reviewed?

A. No.

Q. Okay. What's your job title?

A. VP of global commercial operations.

Q. And what do you do as the VP of global commercial operations?

A. So I do mainly the handling all the global business support from San Diego, working with the regional team. So all the regional team, they needed some support from San Diego team, I'll be the liaison. My team support all the regional team customers we get. So working with the regional team closely to provide their business development support they needed. And then the -- I do manage all the sales operations, so

Q. Okay. In October 2024 was the IR team -- IRT team part of the response that went out from the Bloomberg article?

A. Yes.

MS. YING: Objection.

A. So there is -- when Bloomberg article came out, we got the corporate response, what we need to share to the customer.

Q. Okay.

A. So I shared that with the regional team and account team so they can use that statement for their customer communications.

Q. Okay. Did you personally send it to any customers?

A. No, not personally from my end to the customer.

Q. Okay.

A. Yeah.

Q. Do you in your day-to-day work directly with any customers?

MS. YING: Objection. Form.

A. I -- so I don't -- I work with the customer directly sometimes, particularly related to the sales operation-related. So for example, like supply issue happen.

7 (Pages 22 to 25)

7/11/2025          Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.          James Jeon



23 (Pages 86 to 89)

A0623

7/11/2025 Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al. James Jeon



24 (Pages 90 to 93)

7/11/2025          Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.          James Jeon

██████████████████████████████

Page 94

A. When we are provide that approved message, because when I deliver this message to the team, this is the news article came out first from Bloomberg. We got all surprised, and then we quickly work on the our approved message, tell the regional team, this is what you can share with the customer.

Q. Okay.

A. We didn't tell them that you only have to do this reactively.

████████████████████████████
██ █████████████████████████
██ █████████████████████████
██ ██ ████████████████████
██ ████████████████████████
██ ████████████████████████
██ ████████████████

MR. MCINTEE: Okay. So at this point I don't have any more questions, but I do have some things to get on the record. So for multiple reasons, we're keeping this dep open. To start, we got 36 documents an hour before the dep began, many of which were in a foreign language with no translation.

We've already covered this, but Qualcomm appears to be withholding relevant responsive

Page 95

documentation that is not privileged, based on the testimony of Mr. Jeon, summarizing exchanges between Qualcomm and its customers. And he further testified that he relied on it to prepare for his corporate testimony.

Additionally, we're holding it open for the further reason that he testified he had no knowledge of the procedures regarding the marketing communications department, which would fall squarely within topic 61 as it relates to the breach allegations.

MS. YING: So I didn't know if you were actually going to pass me the witness, but I'm assuming you're passing the witness to me right now, right? So --

MR. MCINTEE: Sure.

MS. YING: We disagree with that, and I'll get to that all in a second.

EXAMINATION BY COUNSEL FOR THE PLAINTIFFS

BY MS. YING:

Q. But, Mr. Jeon, did you speak with any -- if you go to Exhibit 5 that's marked -- it had the e-mail that's marked as Exhibit 5 that was shown to you.

A. Exhibit 5.

Q. It has a sticker on it, and it says 5 on it.

A. Yeah.

Page 96

Q. It's an e-mail from Mike Neilio.

A. Yes.

Q. Okay. Did you speak with Mike Neilio or anyone in auto to prepare for your deposition today?

A. Yes. I talked to Mike Neilio. Thanks for reminding me. Sorry.

Q. Okay. So did you speak with anybody else with Mike?

A. Did I speak with anyone else other than Mike or --

██ ██████████████
██ ██ ████████████████████
██ ██████████████████████████
██ ███████████████████████████
██ ████████████████████████.

Q. Okay. And then the template that you were referring to earlier in your testimony.

A. Yes.

Q. Is that a template that you were instructed by counsel to fill out?

A. I didn't created the template. I don't think that --

Q. It's a yes-or-no question.

A. Okay.

Q. So let me --

Page 97

A. Okay.

Q. Following your meeting with counsel, did you use a template -- were you instructed to use a template to collect the information from your regional teams? Yes or no?

A. Yes.

MS. YING: Okay. I'll pass the witness back if you have anything. Otherwise, I can respond to your other points.

EXAMINATION BY COUNSEL FOR THE DEFENDANT

BY MR. MCINTEE:

Q. So when I asked you if you had spoken to anyone else, I think you said no. You identified Mr. Nellis [sic], is that right?

A. Neilio, Neilio.

Q. Neilio?

A. Yeah.

Q. And then who was the other person you spoke with in auto?

A. I told you that I asked another one was the Kyle Hauser who is the compute channel. My apologies. I mean, I have so many things going on. I cannot remember every single person's name who I talked to on this topic.

Q. You spoke to a lot of people to prepare for

25 (Pages 94 to 97)

7/11/2025        Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.        James Jeon

█████████████████████████

Page 98

your testimony, right?

A. I'm sure. I mean, I spoke to some people. I'm not saying I have like so many, but I talked with some of these people, but I couldn't remember everyone's name when you asked, so --

Q. Yeah. I mean, you spoke to Tejas?

A. Yeah.

Q. Lopez, Edward, O.H. Kwon?

A. Yeah.

Q. Sales lead in Japan?

A. Yeah.

Q. Spencer Kim?

A. Yeah.

Q. Greg Cnosson?

A. Yeah.

Q. Yelena?

A. Yeah.

Q. Neilio?

A. Neilio and Kyle.

Q. And Kyle. So you spoke to ten people to prepare for your testimony today, right?

A. Yes.

█████████████████████

██  █  ████████████████████████

██  ████████████████████████████

Page 100

████████████████████████

■ ████████████

■  █  ████████████████████████

■ ████████████████████████

■ ██████████████████████████

■ ██████████████████████████

■ ████████████████████████████

■ ████████

■ ████████████████████████████████

■ ████████████████████████████████

■ ████████████

■ ██████████████████

■ █  █████████████████

■ ████████████████████████

■ ████████████████████████████

■ ███████████████████

MR. MCINTEE: Okay. Pass the witness.

MS. YING: Okay. All right, and so I'll just respond. We obviously -- as you noted, as you counted, the witness spoke to ten people to prepare for this deposition on a single topic. The topic does not talk about policies and procedures with regards to speaking with the press, which is apparently what you had

█████  █████

■ ██████████████████████████

■ █████████████████████████████

■ █████████████████████████████

■ ███████████████

████████████████████████

■ ████████████████████████

■ ████████████████████████

■ ██████████████████████████

■ ██████████████████████████

■ █████████████████████████

■ █████████████████████████

■ █████████████████████████

■ █  ██

■ ██████████████████

■ ████████████████████████

■ ████████████████████████

■ ███████████████████

■ ██████████████████████████

■ █  ██████████████████

■ █  █  ████████████████

■ █████████████████████████

■ ██████████████████████

Page 101

identified as allegedly being what the witness was not prepared on, so we obviously disagree.

I believe the privilege question has been answered on redirect by the witness as to why that is a document that is privileged, and we will not be producing it. And I'm also going to reserve for the witness to read and sign.

MR. MCINTEE: Yeah. I'll respond in part where necessary, but topic 61, the full scope is disclosures, communications with third parties. He testified marketing communications speaks to third parties and could not provide details as to how they do so or what they said.

Additionally, and for another reason that we're going to seek that document that is not privileged, your redirect waived privilege when you asked, following your meeting with counsel, did you use a template -- were you instructed to use a template to collect the information from your regional teams? So for the additional reason that's waiver. I don't have any other questions.

COURT REPORTER: Confirming your standing order.

MS. YING: Yeah. I think we have one which is, what, the rough today and I don't know what the

26 (Pages 98 to 101)

# Exhibit 8
## (REDACTED IN ITS ENTIRETY)

# Exhibit 9
## (REDACTED IN ITS ENTIRETY)

# Exhibit 10
## (REDACTED IN ITS ENTIRETY)

# Exhibit 11
## (REDACTED IN ITS ENTIRETY)

# Exhibit 12
## (REDACTED IN ITS ENTIRETY)

# Exhibit 13
## (REDACTED IN ITS ENTIRETY)

# Exhibit 14

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
  Delaware corporation

      Plaintiffs,

      v.

ARM HOLDINGS PLC, f/k/a, ARM LTD.
  a U.K. corporation

      Defendant.

C.A. No. 24-490-MN

██████████████████

## ARM'S THIRD SET OF INTERROGATORIES TO QUALCOMM (NOS. 14–23)

Pursuant to Federal Rule of Civil Procedure 33, Defendant Arm Holdings plc ("Arm") requests that Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. ("Qualcomm") serve written responses to these Interrogatories within the time specified under Rule 33(b), or such earlier time as agreed-to by the parties or ordered by the Court. The interrogatory responses should be served upon Arm's counsel at the offices of Kirkland & Ellis LLP, 1301 Pennsylvania Avenue, N.W., Washington, D.C., 20004, and Morrison & Foerster LLP, 755 Page Mill Road, Palo Alto, California 94304.

## DEFINITIONS AND INSTRUCTIONS

Arm incorporates by reference its Definitions and Instructions from Arm's First and Second Sets of Interrogatories to Qualcomm. Arm further provides the following additional definitions:

19. ███████████████████████████████████████████████ as defined by the Qualcomm ALA and any Annexes thereto, including Section ██ of the Armv8-

1

**A0764**



A Architecture Annex 1 ███████████████████████ and Section ██ of the Armv9-

A Architecture Annex 1 ████████████████████████

20.    ████████████████████████████████████████████ as defined by

the Qualcomm ALA and any Annexes thereto, including Section ██ of the Qualcomm ALA.

21.    "ACK patches" means an ACK patch as You used the term in Your Interrogatory No. 1 and Your First Amended Complaint.

22.    "Qualcomm TLA" or "TLA" refers to the technology license agreement referred to in Paragraph 3 of the Second Amended Complaint and that was entered into between Arm Limited and Qualcomm Global Trading PTE, Ltd. on May 30, 2013.

23.    "SAC" refers to Qualcomm's Second Amended Complaint, D.I. 137.

24.    "Data Center Market" means the market for CPUs and related technologies designed for use in data center servers and AI infrastructure.

## INTERROGATORIES

### INTERROGATORY NO. 14:

Describe with specificity the complete legal and factual basis for Your contention(s) that Arm breached the Qualcomm TLA, including: (i) the identification of all section(s) of the TLA Qualcomm contends were allegedly breached by Arm, and how each such section(s) was allegedly breached by Arm; (ii) how Arm allegedly "fail[ed] to provide commercially reasonable, and therefore ██████, licensing proposals to Qualcomm in violation of the QC TLA" (SAC ¶ 102, 118); (iii) how Arm allegedly proposed "terms so unreasonable that it was a constructive failure to license" (SAC ¶ 117); (iv) why you contend that ████████████████████████ ████████████████████████████████████████████████████████████████████ " constitutes a breach of the TLA (SAC ¶ 118); and (v) the "███████████████████ ████████ " allegedly changed by Arm.  Your response shall further include the identification of all documents supporting or refuting Qualcomm's contention(s), and the three witnesses most knowledgeable about Qualcomm's allegations.

### INTERROGATORY NO. 15:

For each section of the Qualcomm TLA allegedly breached by Arm, describe with specificity any and all remedies (monetary, non-monetary, and/or equitable) Qualcomm seeks for

2

**A0765**

each such alleged breach.  Your response to this Interrogatory shall include a discussion of each such remedy sought by Qualcomm and the legal and factual support for such remedies, including for: (i) Qualcomm's allegations in paragraphs 121–122 of the SAC that Qualcomm was "forced to proceed" in SoC development without knowing what CPUs it will use, conducted "reviews of its planning roadmaps," and shifted or allocated resources; (ii) Qualcomm's alleged entitlement to ████████████████████████████ (SAC ¶ 127); and (iii) alleged ██████████ ██████████ (SAC ¶ 107).  Your response shall further include the identification of all documents supporting or refuting Qualcomm's contention(s), and the three witnesses most knowledgeable about Qualcomm's allegations.

## INTERROGATORY NO. 16:

Describe with specificity the complete legal and factual basis for Qualcomm's contention that Arm breached the covenant of good faith and fair dealing of the Qualcomm ALA, including as set forth in Count III of the SAC (SAC ¶¶ 181–188), and any remedies (monetary, non-monetary, and/or equitable) Qualcomm seeks for any such breach.  Your response shall include the identification of all documents supporting or refuting Qualcomm's contention(s), and the three witnesses most knowledgeable about Qualcomm's allegations.

## INTERROGATORY NO. 17:

Describe with specificity the complete legal and factual basis for Your contention that Qualcomm is entitled to a license to v10 under the Qualcomm ALA.  Your response to this Interrogatory shall include a discussion of Qualcomm's contention, if any, as to: (i) whether and how Qualcomm contends made ████████████████████████████ under Section ██████████████████ of that agreement; and (ii) how v10 allegedly constitutes ██████████ ████████████████████ under the Qualcomm ALA.  Your response shall include the identification of all documents supporting or refuting Qualcomm's contention(s), and the three witnesses most knowledgeable about Qualcomm's allegations.

## INTERROGATORY NO. 18:

Describe with specificity how Arm allegedly has, can, or could "leverage its control over the ISA used in all premium smartphones and a large and growing share of other computing devices," SAC ¶ 207, including (i) the meaning of the term "control" and its significance, legal or otherwise, if any; (ii) the meaning of "other computing devices," including the identity of companies, competitors, products, and customers who engage with those products and in what market, submarket, or market segment, if any, they are included; (iii)  the difference between leveraging "control over" the ISA used in the identified segments and leveraging a "monopoly" with respect to the ISA used in the identified segments; (iv) the size and geographic boundaries of the "competition" You allege was harmed with respect to each company, competitor, or customer identified in (ii); (viii) the relationship or connection between the companies, competitors, products, or customers identified in (ii) including with respect to products whether any other products are reasonably interchangeable and if so with what; (xi) why You contend Arm has "control over the ISA" as used in each of the products

3

**A0766**

or by the companies, competitors, or customers identified in (ii); and (xii) a detailed description of the specific acts or conduct by which You allege Arm leveraged its "control".

**INTERROGATORY NO. 19:**

Describe with specificity the complete legal and factual basis for Your contention that Arm has shifted its business model away from licensing its ISA towards any other goal, including towards licensing its own CPU designs and/or building and selling silicon chips to "vertically integrate and gain market share as a chip designer," *see* D.I. 158 at 4, and how any such shift in business model "threatens incipient violations of competition laws; violates the policy or spirit of those laws; threatens to significantly harm competition; is immoral, unethical, oppressive, and unscrupulous; and threatens to harm consumers and competition in a manner vastly disproportionate to whatever supposed benefits that behavior could possibly create."

**INTERROGATORY NO. 20:**

Describe with specificity the complete legal and factual basis for Your contention in Paragraph 208 of Your Complaint that "Arm's conduct towards Qualcomm . . . threatens incipient violations of competition laws; violates the policy or spirit of those laws; threatens to significantly harm competition; is immoral, unethical, oppressive, and unscrupulous; and threatens to harm consumers and competition in a manner vastly disproportionate to whatever supposed benefits that behavior could possibly create," including (i) the meaning of the phrase "competition laws," and its legal significance, if any; (ii) any difference between "competition laws" and antitrust laws; and (3) enumerate with specificity which laws You allege Arm threatens an incipient violation of.

**INTERROGATORY NO. 21:**

Describe with specificity the complete legal and factual basis for Your contention that "Qualcomm requires equitable relief under the UCL because it lacks adequate remedies at law to address Arm's anticompetitive and unfair actions, which are ongoing and which have caused or threaten to cause Qualcomm to suffer significant harm," as set forth in Paragraph 212 of Your Complaint.

**INTERROGATORY NO. 22:**

Describe with specificity the complete business relationships between Qualcomm and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from inception to present, including but not limited to all proposed, contemplated, and actual dealings including as all prior ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮, the persons involved in those business relationships and dealings, and provide a complete explanation for why any proposed and contemplated dealings did or did not materialize including all prior dealings or discussions with ▮▮▮▮▮▮▮▮▮. Your response shall include the identification of all documents relevant to answering the complete Interrogatory, and the witnesses most knowledgeable about each respective relationship.

4

**A0767**

**INTERROGATORY NO. 22:**

Identify and describe in detail when and why Qualcomm decided to re-enter the Data Center Market, including the role of Nuvia's Arm-based CPU designs in that decision, the identities of key personnel involved in the decision-making process, any market analyses or financial projections relied upon, and any communications with third parties regarding Qualcomm's plans to develop or deploy data center CPUs from January 1, 2020, to the present.

**INTERROGATORY NO. 23:**

Describe with specificity the complete legal and factual basis for Your contention in paragraph 210 of Your Complaint that the Arm ISA does not have "readily available alternatives for certain applications," including a detailed description of (i) Qualcomm's use or planned use of ISAs provided by organizations other than Arm, including RISC-V International's RISC-V, Intel Corporation's x86, and Infineon Technologies AG's TriCore; (ii) any Communications between Qualcomm and any provider of ISAs other than Arm, including RISC-V International, Intel Corporation, and Infineon Technologies AG; and (iii) Qualcomm's involvement in the RISC-V Software Ecosystem Project.

Dated: June 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


 /s/ Robert M. Vrana
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

6

**A0769**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 11, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kdunn@paulweiss.com
wisaacson@paulweiss.com
rjgarrett@paulweis.com
ejmorgan@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600

**A0770**

agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A0771**

# Exhibit 15

# MORRISON FOERSTER

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA  90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON FOERSTER LLP

AUSTIN, BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI,
NEW YORK, PALO ALTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

Writer's Direct Contact

+1 (213) 892-5348
NFung@mofo.com

April 1, 2025

BY EMAIL ███████████████████

███████████████████

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:     *Qualcomm Inc. v. Arm Holdings Plc.*, C.A. No. 24-00490-MN (D. Del.)

Counsel:

Pursuant to Sections 2(b)(i) and 2(b)(iii) of the parties ESI order (D.I. 85), and in accordance with Arm's objections and responses to Qualcomm's First Requests for Production, Arm hereby provides the search terms and custodians it will use to identify potentially responsive ESI.  Arm will apply the exclusion of May 1, 2013 forward for the first three search terms identified below.  Arm will apply the exclusion of January 1, 2019 forward for the remaining search terms identified below.  Arm reserves the right to alter, amend, or modify its search terms, date exclusions, and list of custodians.

## Search Terms

| |
|---|
| (QC OR Qualcomm OR QCom*) AND (Sect* AND ██████████ AND (ALA OR "Architecture License Agreement") |
| (QC OR Qualcomm OR QCom*) AND (Sect* AND ██████████ AND (ALA OR "Architecture License Agreement") AND (ACK OR "Arm Compliance Kit") |
| "██████ |
| (QC OR Qualcomm OR QCom*) AND ██████████ OR deliverable* OR "Arm Compliance Kit" OR ACK OR OOB OR patch* OR test* OR update* OR bug* OR fix* OR verif* OR support OR compliance) AND (withhold* OR refus* OR deny) |
| (QC OR Qualcomm OR QCom*) AND (letter* OR "notice*") AND (fail* w/10 deliver*) |
| (QC OR Qualcomm OR QCom*) AND (delay* OR withhold* OR deny OR provid* OR share OR approv* OR deliver*) AND (config* OR enable*) AND "ETE Instr Trace Chkr Module SRC Armv9-A" |
| (QC OR Qualcomm OR QCom*) AND (delay* OR withhold* OR deny OR provid* OR share OR approv* OR deliver*) AND ("ETE Instr Trace Chkr Module SRC Armv9-A") |

**A0773**

**IIIORRISON FOERSTER**

C. Nyarady
April 1, 2025
Page Two

| |
|---|
| (QC OR Qualcomm OR QCom\*) AND (project\* OR forecast\* OR analys\* OR evaluat\*) AND (revenue\* OR profit\*) AND (cancel\* OR terminat\* OR end) AND (ALA OR "Architecture License Agreement" OR ███████████████) |
| (QC OR Qualcomm OR QCom\*) AND (ALA OR "Architecture License Agreement" OR ████████████) AND (breach\* OR terminat\* OR status) AND (Nuvia OR "section ███ OR lawsuit OR complaint) |
| (QC OR Qualcomm OR QCom\*) AND (ALA OR "Architecture License Agreement") AND exten\* AND ████████████ |
| (QC OR Qualcomm OR QCom\*) AND (withdraw\* OR rescind\* OR revok\*) AND (terminat\* OR breach\*) AND (ALA OR "Architecture License Agreement" OR ████████ ████████") |
| (QC OR Qualcomm OR QCom\*) AND ("ACK partner support" OR "MOM" OR "Sync Meeting") |
| (QC OR Qualcomm OR QCom\*) AND (breach\* OR terminat\* OR status) AND ("Ian King" OR Bloomberg) |

**Custodians**

- Karthik Shivashankar
- Martin Weidmann
- Paul Williamson
- Rene Haas
- Richard Grisenthwaite
- Vivek Agrawal
- Will Abbey
- Lynn Couillard
- Phil Hughes

Sincerely,

*/s/ Nicholas Fung*

Nicholas Fung

cc:  All Counsel of Record (by email)

**A0774**

# Exhibit 16
## (REDACTED IN ITS ENTIRETY)

# Exhibit 17
## (REDACTED IN ITS ENTIRETY)

# Exhibit 18
## (REDACTED IN ITS ENTIRETY)

# Exhibit 19
## (REDACTED IN ITS ENTIRETY)

**A0855**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 20, 2026, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com
John Poulos
NORTON ROSE FULBRIGHT US LLP

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2