# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,<br><br>Defendant. | **REDACTED - PUBLIC VERSION**<br>(Filed February 27, 2026)<br><br>C.A. No. 24-490-MN<br>(CONSOLIDATED)<br><br> |

**APPENDIX TO DEFENDANT'S OBJECTIONS TO THE SPECIAL MASTER'S
MEMORANDUM ORDER (D.I. 630) RESOLVING DEFENDANT'S
<u>MOTION TO STRIKE AND TO COMPEL (D.I. 378) – VOL. 6 OF 7</u>
A1397 – A1898**

Dated: February 20, 2026

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Kasdin Mitchell, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
kasdin.mitchell@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

## TABLE OF CONTENTS

| Document | Page Range |
|---|---|
| C.A. No. 1:24-cv-00490-MN, Defendant Arm Holdings plc's Letter Brief to Special Master Rychlicki, dated August 11, 2025 ▮▮▮▮▮▮▮ | A0001 |
| Declaration of Adam Janes in Support of Defendant Arm Holdings plc's Letter Brief to Special Master Rychlicki, dated August 11, 2025 ▮▮▮▮▮▮▮ | A0008 |
| Exhibit 1 – Plaintiffs' Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1-9), dated July 11, 2025 ▮▮▮▮▮▮ | A0013 |
| Exhibit 2 – Plaintiffs' Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14-24), dated July 11 2025 ▮▮▮▮▮▮ | A0072 |
| Exhibit 3 – Plaintiffs' First Amended Complaint, dated December 16, 2024 ▮▮▮▮ | A0129 |
| Exhibit 4 – Plaintiffs' Second Amended Complaint, dated June 3, 2025 ▮▮▮ | A0181 |
| Exhibit 5 – Plaintiffs' First Supplemental Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14-24), dated August 8, 2025 ▮▮▮▮▮▮ ▮▮ | A0252 |
| Exhibit 6 – Plaintiffs' Responses and Objections to Defendant's Second Set of Interrogatories (Nos. 10-13), dated May 9, 2025 ▮▮▮▮▮ | A0321 |
| Exhibit 7 – QCVARM_0605055 ▮▮▮▮ ▮▮▮ | A0343 |
| Exhibit 8 – Excerpts from the June 25, 2025, deposition transcript of Kurt Wolf ▮▮▮ | A0352 |
| Exhibit 9 – Excerpts from the July 11, 2025, deposition transcript of Larissa Cochron ▮▮▮▮▮▮ | A0361 |

| Document | Page Range |
|---|---|
| Exhibit 10 – Excerpts from Plaintiffs' Third Supplemental Privilege Log, dated July 10, 2025 ▮▮▮▮▮ ▮▮▮▮▮ | A0369 |
| Exhibit 11 – Excerpts from the July 9, 2025, deposition transcript of Jignesh Trivedi ▮▮▮▮▮ | A0387 |
| Exhibit 12 – Excerpts from the July 17, 2025, deposition transcript of Paul Kranhold ▮▮▮▮▮ ▮▮▮ | A0395 |
| Exhibit 13 – July 3, 2025, deposition transcript of Jeffery B. Golden ▮▮▮▮▮ | A0402 |
| Exhibit 14 – Exhibit 1 to the July 1, 2025, deposition of Jean-Francois Vidon, bearing Bates stamp QCVARM_0544259 ▮▮▮▮▮ | A0409 |
| Exhibit 15 – Excerpts from the June 27, 2025, deposition transcript of Richard J. Meacham ▮▮▮▮▮ ▮▮▮ | A0414 |
| Exhibit 16 – Excerpts from the July 1, 2025, deposition transcript of Jean-Francois Vidon ▮▮▮▮▮ ▮ | A0421 |
| Exhibit 17 – Plaintiffs' Responses and Objections to Defendant's First Set of Requests for Admission (Nos. 1-30), dated July 11, 2025 ▮▮▮ | A0428 |
| Exhibit 18 – Email from Qualcomm's Counsel to Arm's Counsel, dated July 11, 2025 ▮▮▮▮▮ ▮ | A0455 |
| C.A. No. 1:24-cv-00490-MN, Plaintiffs' Letter in Response to Defendant's August 11 Letter to Special Master Helena C. Rychlicki, dated August 18, 2025 ▮▮▮▮▮ ▮▮▮ | A0457 |
| Exhibit 1 – Service Email from Arm to Qualcomm, dated July 11, 2025 | A0464 |
| Exhibit 2 – Letter from Catherine Nyarady to Jay Emerick, dated August 11, 2025 ▮▮▮▮▮ | A0466 |

2

| Document | Page Range |
|---|---|
| Exhibit 3 – Plaintiffs' First Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1–4, 7, and 9), dated June 25, 2025 ██████████████ ██████ | A0480 |
| Exhibit 4 – QCVARM_0713516 ██████████████ ████████████████ | A0524 |
| Exhibit 5 – Excerpts from the July 3, 2025, deposition transcript of Cristiano Amon ████████████████████ | A0527 |
| Exhibit 6 – Plaintiffs' Responses and Objections to Arm Ltd.'s First Notice of Deposition of Qualcomm Inc. and Qualcomm Technologies, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6), dated June 23, 2025 ████████ | A0534 |
| Exhibit 7 – Excerpts from the July 11, 2025, deposition transcript of James Jeon ████████████████████ | A0615 |
| Exhibit 8 – Excerpts from the July 7, 2025, deposition transcript of Rene Haas ████████████████ | A0627 |
| Exhibit 9 – Plaintiffs' Responses and Objections to Defendant's First Set of Requests for Production (Nos. 1-58), dated March 10, 2025 ████████ | A0634 |
| Exhibit 10 – Qualcomm's First Set of Requests for Production (Nos. 1-52), dated January 21, 2025 ██████████ | A0689 |
| Exhibit 11 – Qualcomm's Second Set of Requests for Production (Nos. 53-120), dated February 21, 2025 ██████████ | A0707 |
| Exhibit 12 – Letter from Nicholas Fung to Catherine Nyarady, dated May 2, 2025 ██████████████████ | A0728 |
| Exhibit 13 – Arm's Fifth Set of Requests for Production to Qualcomm (Nos. 228-287), dated June 11, 2025 ████████ | A0746 |
| Exhibit 14 – Arm's Third Set of Interrogatories to Qualcomm (Nos. 14-23), dated June 11, 2025 ██████████████ ████████ | A0763 |
| Exhibit 15 – Letter from Nicholas Fung to Catherine Nyarady Identifying Arm's Search Terms, dated April 1, 2025 ██████ ████████████ | A0772 |

| Document | Page Range |
|---|---|
| Exhibit 16 – Letter from Catherine Nyarady to Nicholas Fung, dated April 15, 2025 | A0775 |
| Exhibit 17 – Letter from Catherine Nyarady to Nicholas Fung, dated May 16, 2025 | A0787 |
| Exhibit 18 – Assortment of ETE-related Documents ██████ ████████████████████████████████ | A0797 |
| Exhibit 19 – Plaintiffs' Responses and Objections to Defendant's Fourth Set of Requests for Production (Nos. 174-227), dated July 9, 2025 ████████ | A0855 |
| Exhibit 20 – Excerpts from the July 9, 2025, deposition transcript of Jinesh Trivedi ████████████████████████████ | A0905 |
| Exhibit 21 – Excerpts from the July 3, 2025, deposition transcript of Jeffery B. Golden ████████████████████ ███ | A0914 |
| Exhibit 22 – Excerpts from the June 25, 2025, deposition transcript of Kurt Wolf ████████████ | A0922 |
| Exhibit 23 – QCVARM_0708107 ██████████████ ██████████ | A0931 |
| Exhibit 24 – Letter from Catherine Nyarady to Peter Evangelatos, dated July 21, 2025 | A0934 |
| Exhibit 25 – Arm's Second Supplemental Initial Privilege Log ████████████████████████████ | A0938 |
| Exhibit 26 – Excerpts from  C.A. No. 22-cv-01146-MN, Jury Trial Hearing Transcript Vols. 3-4, dated December 17-18, 2024 | A1100 |
| Exhibit 27 – Arm's Responses and Objections to Qualcomm's First Set of Request for Admissions (Nos. 1-28), dated July 11, 2025 ██████████ | A1119 |
| Exhibit 28 – Plaintiffs' First Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1–4, 7, and 9), dated June 25, 2025 ████████████████████ ████████ | A1140 |
| C.A. 1:24-cv-00490-MN, Defendant Arm Holdings plc's Supplement to Arm's Motion to Strike and Compel (D.I. 378) | A1184 |

| Document | Page Range |
|---|---|
| and Opposition to Qualcomm's August 11 Letter Brief to Special Master Rychlicki, dated August 18, 2025 ███████████ ███████████ | |
| Declaration of Peter Evangelatos in Support of Defendant Arm Holdings plc's Supplement to Arm's Motion to Strike and Compel (D.I. 378) and Opposition to Qualcomm's August 11 Letter Brief to Special Master Rychlicki, dated August 18, 2025 ████████████████████ | A1192 |
| Exhibit 1 – D.I. 375, Plaintiffs' Motion to Compel and Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes, dated August 11, 2025 ████████ ███████████ | A1199 |
| Exhibit 2 – D.I. 137, Second Amended Complaint, dated June 3, 2025 ███████████ | A1216 |
| Exhibit 3 – D.I. 305, Arm's Reply Brief in Support of its Partial Motion to Dismiss Qualcomm's Second Amended Complaint, dated July 8, 2025 ████████ | A1287 |
| Exhibit 4 – D.I. 287, Qualcomm's Answering Brief in Opposition to Arm's Motion to Dismiss the Second Amended Complaint, dated July 1, 2025 ████████ | A1308 |
| Exhibit 5 – Technology License Agreement between Arm and Qualcomm, dated May 30, 2013 ██████████ | A1341 |
| Exhibit 6 – Plaintiffs' First Supplemental Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14-24), dated August 8, 2025 ████████████████ ████████ | A1397 |
| Exhibit 7 – Plaintiffs' Responses and Objections to Defendant's Fifth Set of Request for Production to Qualcomm (Nos. 228-287), dated June 11, 2025 █████████ | A1466 |
| Exhibit 8 – Plaintiffs' Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1-9), dated July 11, 2025 ████████████████ | A1519 |
| Exhibit 9 – Arm's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes, dated August 7, 2025 ████████████████ | A1578 |

5

| Document | Page Range |
|---|---|
| Exhibit 10 – Exhibit QCX-241 to the July 11, 2025, deposition of Vivek Agrawal, bearing Bates stamp ARM_01315194 ██████ ████████████████████████ | A1587 |
| Exhibit 11 – Exhibit QCX-272 to the July 11, 2025, deposition of Vivek Agrawal, bearing Bates stamp ARMQC_02784247 ████████████████████████ | A1591 |
| Exhibit 12 – Exhibit 30 to the July 2, 2025, deposition of Richard Grisenthwaite, bearing Bates stamp ARMQC_02779170 ████ ████████████████ | A1600 |
| Exhibit 13 – Excerpts from the Jully 11, 2025, deposition transcript of Vivek Agrawal ███████████████ ███ | A1602 |
| Exhibit 14 – Excerpts from the July 7, 2025, deposition transcript of Aparajita Bhattacharya ██████████████ ███ | A1615 |
| Exhibit 15 – Excerpts from the July 2, 2025, deposition transcript of Richard Grisenthwaite ██████████████ ███ | A1622 |
| Exhibit 16 – Excerpts from the June 20, 2025, deposition transcript of Martin Weidmann ████████████ ███ | A1627 |
| Exhibit 17 – Excerpts from the June 30, 2025 deposition transcript of Spencer Collins ███████ | A1633 |
| Exhibit 18 – Letter from Spencer Collins to Ann Chaplin, dated January 8, 2025, bearing Bates Stamp QCVARM_0573678 █████ | A1641 |
| Exhibit 19 – Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's First Set of Requests for Production (Nos. 1-52), dated June 17, 2025 ████████ | A1644 |
| Exhibit 20 – Arm Holdings plc's First Supplemental Objections and Responses to Qualcomm's Third Set of Requests for Production (Nos. 121-156), dated June 17, 2025 ████████ | A1711 |

6

| Document | Page Range |
|---|---|
| Exhibit 21 – Arm's Second Supplemental Initial Privilege Log, dated July 11, 2025 ███████████████ ██ | A1752 |
| Exhibit 22 – Arm Holdings plc's Objections and Responses to Plaintiffs' Notice of 30(b)(6) Deposition, dated June 19, 2025 | A1756 |
| Exhibit 23 – Excerpts from the August 1, 2025, deposition transcript of Ami Badani ████████████████ | A1805 |
| Exhibit 24 – Excerpts from the June 17, 2025, deposition transcript of Phil Hughes | A1816 |
| Exhibit 25 – Excerpts from the July 17, 2025, deposition transcript of Paul Kranhold ███████████ ██ | A1822 |
| Exhibit 26 – Excerpts from the July 4, 2025, deposition transcript of Kenneth Siegel ████████████ | A1848 |
| Exhibit 27 – Excerpts from the August 14, 2025, transcript of proceedings before Special Discovery Master Helena C. Rychlicki, Esq. ██████████████████ | A1857 |
| Exhibit 28 – Arm Holdings plc's First Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1-3), dated July 11, 2025 ███████████████ ██ | A1862 |
| Exhibit 29 – Excerpts from the June 26, 2025, deposition transcript of William Abbey ██████████ | A1892 |
| Exhibit 30 – Arm Holdings plc's Letter Brief to Special Master Rychlicki, dated August 1, 2025 ████████████ ████████████ | A1899 |
| Exhibit 31 – Letter from Jay Emerick to Catherine Nyarady, dated April 22, 2025 ██████████ | A1907 |
| Exhibit 32 – Plaintiffs' Third Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1-9), dated August 8, 2025 ████████████████ ██ | A1916 |
| Exhibit 33 – Plaintiffs' Second Supplemental Responses and Objections to Defendant's Second Set of Interrogatories (Nos. | A1994 |

7

| Document | Page Range |
|---|---|
| 10-13), dated August 8, 2025 ███████████████ ███████ | |
| Exhibit 34 – Arm LTD.'s First Supplemental Objections and Responses to Qualcomm's Second Set of Requests for Production (Nos. 53-120), dated June 17, 2025 ████████ | A2025 |
| Exhibit 35 – Plaintiffs' Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14-24), dated July 11, 2025 ██████████████████████ | A2097 |
| C.A. No. 1:24-cv-00490-MN, Plaintiffs' Supplemental Letter to Special Master Helena C. Rychlicki Regarding Scope of Discovery, dated August 18, 2025 ████████ | A2156 |
| Exhibit 1 – Letter from Spencer Collins to Ann Chaplin, dated October 23, 2024 | A2161 |
| Exhibit 2 – Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes, dated August 7, 2025 ████████████ | A2164 |
| Exhibit 3 – Qualcomm's First Set of Requests for Production (Nos. 1-52), dated January 21, 2025 ██████ | A2173 |
| Exhibit 4 – Qualcomm's Second Set of Requests for Production (Nos. 53-120), dated February 21, 2025 ██████ | A2179 |
| Exhibit 5 – Qualcomm's Fourth Set of Requests for Production (Nos. 157-168), dated April 16, 2025 ██████ | A2190 |
| Exhibit 6 – Qualcomm's Second Set of Interrogatories to Arm (Nos. 4-11), dated May 14, 2025 ██████ | A2197 |
| Exhibit 7 – Plaintiffs' Responses and Objections to Defendant's Fifth Set of Requests for Production (Nos. 228-287), dated July 11, 2025 ██████ | A2203 |
| Exhibit 8 – Plaintiffs' Responses and Objections to Arm Ltd.'s First Notice of Deposition of Qualcomm Inc. and Qualcomm Technologies, Inc. Pursuant to Federal Rule Of Civil Procedure 30(b)(6) | A2217 |
| Exhibit 9 – Excerpts from the July 11, 2025, deposition transcript of Jonathan Weiser ███████████ | A2234 |

8

| Document | Page Range |
|---|---|
| Exhibit 10 – Excerpts from the July 11, 2025, deposition transcript of Larissa Cochron ███████████████ ██████ | A2238 |
| Exhibit 11 – Excerpts from the July 11, 2025, deposition transcript of Ann Chaplin ████████████████ ██ | A2241 |
| Exhibit 12 – Excerpts from the June 25, 2025, deposition transcript of Kurt Wolf ████████ | A2245 |
| Exhibit 13 – Excerpts from the June 24, 2025, deposition transcript of Manju Varma ███████████████ | A2248 |
| C.A. No. 1:24-cv-00490-MN, Transcript of Proceedings before Helena C. Rychlicki, Esq. – Special Discovery Master, dated August 14, 2025 ██████████████████ | A2251 |
| C.A. No. 1:24-cv-00490-MN, Transcript of Proceedings before Helena C. Rychlicki, Esq. – Special Discovery Master, dated August 22, 2025 ███████████████ | A2346 |

# Exhibit 6
## (REDACTED IN ITS ENTIRETY)

# Exhibit 7
# (REDACTED IN ITS ENTIRETY)

# Exhibit 8
## (REDACTED IN ITS ENTIRETY)

# Exhibit 9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,

        Plaintiffs,

    v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,

        Defendant.

C.A. No. 24-490-MN



## DEFENDANT'S LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI REGARDING OUTSTANDING DISCOVERY DISPUTES

Dated: August 7, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A1579**

(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

**A1580**

Dear Special Master Rychlicki:

Qualcomm's requests seek irrelevant information and go far beyond the scope of its asserted claims or Arm's defenses; the motion to compel should be denied.

Qualcomm seeks discovery about Arm's entire business, with virtually no limits. Arm is primarily in the technology licensing business, and Qualcomm seeks effectively unlimited discovery into that business by asking for all of Arm's architecture and technology licenses with third parties, and Arm's business with its third-party licensees, including any technology it develops and delivers to third parties. None of those requests—or Qualcomm's other requests—are tethered to the claims or defenses at issue in this case. Arm has already produced over 300,000 documents in this case and over 70,000 documents in the related *Arm v. Qualcomm* case, which are more than sufficient for Qualcomm to test its claims and Arm's defenses.

## I.    QC'S REQUESTS FOR UNREDACTED THIRD-PARTY AGREEMENTS ARE NOT PROPORTIONAL AND SEEK IRRELEVANT INFORMATION.

### A.    QC's Request for Third-Party TLA Discovery Is Overbroad and Irrelevant.

Qualcomm's SAC alleges that Arm's 2024 license renewal offers to Qualcomm for three Arm Implementation Cores— ██████████████ —did not comply with Sections ███ or ██, ███████████████ ██████████ (Ex. 2, ¶ 105; Ex. 1 at 1.) Arm agreed to produce agreements with third parties for ██████████ in effect at the time. (Ex. 3.) Qualcomm's request for additional licenses to those cores should be denied as premature. Qualcomm raised this issue for the first time on July 30, two days before its opening brief, and Arm agreed to investigate the existence and production of additional licenses that may cover ██████████ (subject to any third-party intervention). The parties are therefore not at an impasse, and Qualcomm never submitted it to the Court as required by the Court's and Special Master's orders. (Ex. 4, Ex. 5.) For other ██████████ licenses, Qualcomm incorrectly characterizes motions for protective orders filed by MediaTek and Amlogic as Arm's "objections" to production. But Arm is prepared to produce MediaTek and Amlogic's licenses upon resolution of these motions.

Arm's agreements that do not cover ██████████ are irrelevant. *See APEX Fin. Options, LLC v. Gilbertson*, No. 19-046-LPS-SRF, 2021 U.S. Dist. LEXIS 217148, at *5 (D. Del. Nov. 9, 2021) ("Overbroad requests that encompass time periods or activities beyond those at issue in the case fail under Fed. R. Civ. P. 26 because they are of questionable relevance."). Qualcomm's request for such irrelevant TLAs will significantly burden Arm and its customers. Arm has executed hundreds of TLAs, and Arm must notify its TLA licensees via hardcopy letters prior to producing their agreements; Arm expects that many will seek protective orders once notified (several already have). Qualcomm's requests will multiply the burden on Arm, its customers, and the Special Master, all in pursuit of irrelevant TLAs that do not relate to the cores at issue.

Qualcomm's contention that Arm omitted certain annexes with ██████████ ██ (Ex. 1 at 1) is meritless. Those annexes do not relate to ██████████, and Arm has produced relevant pricing information for those cores under the ██████████

1

**A1581**

███████ Qualcomm's contention that Arm should produce █████ TLA is similarly without merit— ███████ does not have a license to █████████████, and its TLA is thus irrelevant to any claim or defense in this case.

Qualcomm's remaining requests for other discovery beyond ███████████████ should be rejected. Qualcomm cites two paragraphs in the SAC for its requests, but paragraph 51 is a general description of Arm's TLAs, and paragraph 102 merely states that "Qualcomm expects discovery to show that Arm ████████████████████████ ██████████ in its licensing negotiations involving peripheral TLA IP." (Ex. 2, ¶¶ 51, 102.) This threadbare allegation is insufficient to support Qualcomm's overbroad requests. *See APEX Fin. Options*, 2021 U.S. Dist. LEXIS 217148, at *7 ("discovery may not be used as a fishing expedition"). Qualcomm did not identify any "peripheral TLA IP" or other Arm IP, such as ████████████, until *after* the close of fact discovery, to which Arm objected as untimely and prejudicial. Indeed, Qualcomm raised disputes about these other products in other jurisdictions in 2024, but chose not to include them in the SAC.

Qualcomm's assertion that Arm put third-party TLAs at issue by cross-examining Qualcomm witnesses about their knowledge of third-party licensing terms for ███████████ █████ (Ex. 1 at 1–2) is a strawman. Arm merely confirmed that Qualcomm witnesses had no knowledge regarding licensing terms for ███████████████ and that Qualcomm had no basis to allege Arm violated the relevant terms of the Qualcomm-Arm TLA.

**B.    QC's Request for Third-Party ALAs Is Overbroad and Irrelevant.**

Qualcomm seeks production of unredacted copies of all third-party ALAs and annexes. (Ex. 1 at 2.). While Arm's ALAs with third parties are not relevant to whether Arm breached its ALA with Qualcomm, Arm already produced these ALAs, with redactions, in the related *Arm v. Qualcomm* litigation. Qualcomm may use them here.

Those redactions were both limited and logged, █████████████████████ ████, and show that none of this information is relevant to the claims and defenses here. As with Qualcomm's request for all Arm TLAs, Qualcomm seeks to multiply the burden on Arm and its customers by seeking their most ████████████████████ and to trigger third-party protective order motion practice.

Arm's third-party ALAs are irrelevant to Qualcomm's breach claims, which are limited to two specific types of support materials that Arm allegedly withheld: (1) patches to the Arm compliance kit ("ACK"), a set of verification tests Arm makes available to Arm partners, including Qualcomm; and (2) the "OOB," a list identifying which ACK tests a partner's particular CPU design should pass. (*See, e.g.*, Ex. 2 ¶¶ 78, 175.) Arm's ALAs are separately negotiated and tailored to the specific circumstances and needs of each licensee. Qualcomm's contention that it needs all third-party ALAs and annexes to determine ████████████████████████████ ███████████████ (Ex. 1 at 2) is irrelevant to whether Arm met its obligations under the Qualcomm ALA. Whether Arm sent an OOB or ACK patch to another partner is irrelevant to whether Arm had a contractual obligation to deliver such OOB or ACK patch to Qualcomm.

2

**A1582**

Qualcomm's citations to deposition testimony indicating that Arm provided OOBs and ACK patches to other ALA licensees do not render the requested discovery relevant. Each OOB Arm provides is specific to a particular partner's CPU design; *no* Arm partner receives the design-specific OOB for another partner's CPU. (*See, e.g.*, Ex. 6 148:25–149:15.) As for ACK patches, Arm produced discovery showing that all ALA partners received updates to the ACK on the same quarterly release schedule through a central distribution channel, including the content of ACK patches, which are sometimes provided to the partner who flagged an ACK issue as a courtesy in the interim between quarterly releases. (Ex. 7 at 8.)

For Qualcomm's claims relating to v10, Qualcomm's contention that it requires third-party ALAs to address Arm's good faith defense for ***Qualcomm's*** agreement is similarly unfounded. Arm's agreements with third parties are not relevant to Arm's licensing discussions with Qualcomm concerning v10. The only relevant terms are those in the Qualcomm-Arm ALA; whether Arm's interactions with Qualcomm somehow breached them does not turn on the terms of third-party agreements. (Ex. 2 ¶¶ 131-133, 181-188.).

Finally, as stated above with respect to third-party TLAs, Qualcomm's assertion that Arm put third-party ALAs at issue by questioning Qualcomm witnesses about terms in these agreements (Ex. 1 at 2) is incorrect. Arm's questioning merely confirmed Qualcomm witnesses had no personal knowledge of third-party ALA terms, and Qualcomm thus could not rely on those witnesses for purposes of alleging Arm had treated Qualcomm differently from other ALA partners.

## II.    PRIVILEGE DETERMINATIONS

**Communications Between Arm's Counsel and FGS.** The redacted communications that are the subject of Qualcomm's letter brief are properly withheld for privilege. All involve coordination among Spencer Collins (Arm's General Counsel), Arm's in-house media team, and FGS about Mr. Collins' October 22, 2024, letter to Qualcomm, and include providing legal advice concerning litigation strategy in the pending litigation with Qualcomm. Arm has not claimed privilege over generic "public relations services" such as "reviewing press coverage," or reaching out "to various media to comment on developments in the litigation," as Qualcomm alleges, and indeed has produced such communications. (*See, e.g.*, Ex. 8; Ex. 9; Ex. 10; Ex. 11; Ex. 12; Ex. 13.)

That Arm engaged FGS directly, rather than through outside counsel, does not negate privilege. "[T]here is no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice," and privilege is not waived. *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001). None of Qualcomm's cases hold otherwise.

**Privilege Logs.** The parties' Stipulated ESI order is clear that "[w]ith respect to information generated after the filing of the Complaint, parties are not required to include any such information in privilege logs." (Ex. 14 ¶ 1(e)(ii).) Here, Qualcomm negotiated and agreed to the ESI Order, which the Court entered, at a time when Qualcomm knew its claims included alleged post-filing conduct. Qualcomm should not be permitted to backtrack now.

**Subject Line Redactions.** The ESI Order's negotiated procedure for challenging entries on a party's privilege log does not require either party to reveal privileged information or

3

**A1583**

communications. Here, the redacted email subject lines reflect legal advice sought from or provided by Arm's in-house and outside counsel at Morrison and Foerster, including the subjects of meetings involving solely Arm's attorneys. Privileged communications are not waived simply because they were made in an email's subject line rather than the body.

## III.    ARM'S DOCUMENT PRODUCTION AND 30(B)(6) TESTIMONY ARE NOT DEFICIENT.

### A.    Qualcomm Seeks Overbroad and Irrelevant Discovery Regarding Its ALA-Breach Claims.

**Withheld Support Materials and Third-Party Support.** As described above, the support materials Arm provided third-party ALA holders are not relevant to whether Arm breached its ALA with Qualcomm. *Supra* I.B. Arm provided fulsome discovery showing the support materials Qualcomm received and confirming Arm withheld only the Nuvia-specific OOB. Qualcomm's claim that the only way to determine what support materials it did not receive is by looking to Arm's interactions with third parties ignores this discovery and is incorrect.

**Arm's Decision-Making.** Arm produced communications showing Arm's decision to pause and then resume support for unlicensed designs Qualcomm submitted for verification. *See, e.g.*, Ex. 15, Ex. 16, Ex. 17, Ex. 18, Ex. 19, Ex. 20, Ex. 21, Ex. 22, Ex. 23, Ex. 24, and more than sufficiently prepared its witnesses to testify to the same. (*See, e.g.*, Ex. 25 160:19–161:5, 167:4–167:16, 155:1–7.)

### B.    Qualcomm Seeks Overbroad and Irrelevant Discovery Regarding v10.

Qualcomm claims Arm breached an implied covenant of good faith and fair dealing by allegedly not negotiating a license to Arm's still-unreleased v10 architecture. Qualcomm's requests go far beyond such negotiations and instead seek information on virtually every aspect of Arm's v10 architecture, none of which is relevant to its claims or Arm's defenses. Nonetheless, Arm provided discovery into these issues and Qualcomm's suggestions otherwise are meritless. Qualcomm questioned multiple knowledgeable Arm witnesses, including Arm's chief architect Richard Grisenthwaite, Jannik Nelson, Martin Weidmann, and others, about v9 and v10 and corresponding 30(b)(6) topics. Further, as Arm informed Qualcomm, given v10 has not been released, there are no ████████████████████████████████████████ ████████████████████████████████████████ Finally, Arm's response to Interrogatory No. 3 provides additional information regarding v10 and documents describing its development.

### C.    Qualcomm Seeks Overbroad and Irrelevant Discovery Regarding TLAs.

Qualcomm contends that additional discovery is needed for its TLA claims, because Arm produced "less than fifteen emails" and allegedly withheld 2020-2023 price books that might potentially be relevant to Qualcomm's requests for licenses to ███████████████ in 2024. While Arm already produced four 2024 price books that contain pricing information relevant to Arm's offer, during a recent meet-and-confer, Arm agreed to further consider Qualcomm's request for older price books. The parties thus are not at an impasse on this issue. As to what Qualcomm

4

**A1584**

describes as privileged documents, Arm has already agreed that it would produce a spreadsheet concerning its TLA analysis consistent with resolution of the third-party confidentiality disputes.

## IV.    QUALCOMM'S REQUEST FOR THE PRODUCTION OF TENS OF THOUSANDS OF NON-RESPONSIVE DOCUMENTS IS BASELESS.

Qualcomm's request that Arm produce what may be numerous documents at this stage, much less *without* a review for responsiveness, is meritless. Arm disagrees that it "crafted underinclusive search terms," but in any event, Qualcomm may, under the ESI order, serve Arm with 10 additional search terms. However, the additional terms Qualcomm propounded were extremely overbroad—as Arm informed Qualcomm, its additional terms resulted in nearly *one million* additional documents for review. Given that unduly burdensome request, Arm appropriately objected and sought to work with Qualcomm to narrow its terms, but to no avail. During a recent meet-and-confer, Arm again offered to consider further narrowed terms, which to date Qualcomm has not provided.

Without basis, Qualcomm asserts the parties should disregard the ESI order and Arm should produce all documents that hit on its search terms, regardless of responsiveness. (Ex. 1 at 5.) But Arm is not withholding relevant documents based on responsiveness determinations. Further, Arm ran elusion testing to further confirm that the terms it did run captured responsive material—that testing validated the sufficiency of Arm's search terms and confirmed that Arm's search terms are not "underinclusive." Further, Qualcomm ignores that Arm also produced over 18,000 emails and 700 chats in the prior lawsuit (including 1,700 emails and 30 chats that hit on Arm's search terms here), many of which are relevant to the claims and defenses in this action.

Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

Words: 2,362

5

**A1585**

6

**A1586**

# Exhibit 10
## (REDACTED IN ITS ENTIRETY)

# Exhibit 11
# (REDACTED IN ITS ENTIRETY)

# Exhibit 12
## (REDACTED IN ITS ENTIRETY)

**A1600**

# Exhibit 13
## (REDACTED IN ITS ENTIRETY)

**A1602**

# Exhibit 14
## (REDACTED IN ITS ENTIRETY)

**A1615**

# Exhibit 15

**Page 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____

QUALCOMM INCORPORATED, a Delaware
corporation, QUALCOMM TECHNOLOGIES, INC.,
a Delaware corporation,

                    Plaintiff,

        -against-

ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K.
corporation,

                    Defendant.

C.A. No. 24-490 (MN)

_____

                July 2, 2025
                9:09 a.m.

      DEPOSITION of RICHARD
GRISENTHWAITE, taken by Plaintiff,
pursuant to Notice, held at the offices of
PAUL WEISS RIFKIND WHARTON & GARRISON LLP,
1285 Avenue of the Americas, New York, New
York before Wayne Hock, a Notary Public of
the State of New York.

Page 2

A P P E A R A N C E S:

DUNN ISAACSON RHEE LLP
Attorneys for Plaintiff
901 Ninth Street, NW
Washington, D.C. 20004
BY:    WILLIAM ISAACSON, ESQ.
wisaacson@dirllp.com

-and-

PAUL WEISS RIFKIND WHARTON & GARRISON LLP
2001 K Street, NW
Washington, D.C. 20006

BY:    JACOB APKON, ESQ.
japkon@paulweiss.com

MORRISON & FOERSTER LLP
Attorneys for Defendant
755 Page Mill Road
Palo Alto, California 94304
BY:    ERIK J. OLSON ESQ.
ejolson@mofo.com
(via videoconference)
-and-

Page 3

A P P E A R A N C E S: (Continued)

KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
BY:    JAY EMERICK, ESQ.
jay.emerick@kirkland.com
JAKE KENTALA, ESQ.
jake.kentala@kirkland.com

ALSO PRESENT:

JAMES MCAFEE, Videographer
ROBERT CALICO
*    *    *

Page 4

THE VIDEOGRAPHER: Good morning. We are on record.

The time is 9:09 a.m.

Today's date is July 2, 2025.

Please note that the microphones are sensitive and may pick up whispering and private conversations.

Please mute your phones at this time.

Audio and video recording will continue to take place, unless all parties agree to go off record.

This is media unit one of the recorded deposition of Richard Grisenthwaite taken by counsel for Plaintiff in the matter of Qualcomm, Inc., Qualcomm Technologies versus ARM Holdings Incorporated, filed in the United States District Court, District of Delaware, case number 24-490.

The location of this deposition is Paul Weiss, 1285 Avenue of the Americas, New York, New York.

My name is Jake McAfee and I'm

Page 5

the videographer.  The court reporter is Wayne Hock.  We're from the firm Veritext.

I'm not authorized to administer an oath, I'm not related to any party in this action, nor am I financially interested in the outcome.

If there are any objections to proceeding, please state them at the time of your appearance.

Counsel and all present, including remotely, will now state their appearances and affiliations for the record, beginning with the noticing attorney.

MR. ISAACSON: Bill Isaacson, Dunn Isaacson and Rhee, for Qualcomm.

MR. APKON: Jacob Apkon from Paul Weiss for Qualcomm.

MR. EMERICK: Jay Emerick from Kirkland on behalf of ARM and the witness.

With me is Jake Kentala, also of Kirkland, appearing by Zoom, Erik

2 (Pages 2 - 5)



Page 6

Olson of Morrison and Foerster, as well as Rob Calico from ARM.

THE VIDEOGRAPHER: Will our court reporter swear our witness.

R I C H A R D  G R I S E N T H W A I T E, having been first duly sworn by a Notary Public of the State of New York, upon being examined, testified as follows:

EXAMINATION BY

MR. ISAACSON:

Q.   I'm Bill Isaacson.  I'll be asking you questions today.

[REDACTED]

Q.   Thank you.

You were deposed in a prior case between ARM and Qualcomm.

Other than that, have you been deposed before?

A.   Yes, I have.

Q.   How many times?

Page 7

Grisenthwaite-[REDACTED]

A.   I can't quite remember.

Q.   Can you give me an estimate?

A.   About four or five.

Q.   Thank you.

For this deposition, did you meet with your counsel before the deposition?

A.   Yes, I did.

Q.   And for how long?

A.   For about a day.

Q.   Did you review your deposition transcript from the earlier case between the parties?

A.   I reviewed some portions of it. It's a lot of pages.

Q.   You are the chief architect for ARM?

A.   That's correct.

Q.   And you started at ARM as a principal design engineer?

A.   That's correct.

Q.   And then you became lead architect?

A.   That's correct.

Page 8

Grisenthwaite-[REDACTED]

Q.   And then you became vice president of technology for the processor division?

A.   Yes.

Q.   And currently, in addition to being ARM's chief architect, you are also an ARM fellow; is that right?

A.   That is correct.

Q.   And as chief architect, you are responsible for the evolution of ARM's architecture; is that correct?

A.   Yes, I am.

Q.   And before you became chief architect, there was no chief architect at ARM?

A.   That's correct.

Q.   Do you have three direct reports?

A.   At this time I have more than that.

Q.   All right.

Who are your direct reports currently?

A.   My direct reports are David

Page 9

Grisenthwaite-[REDACTED]

Maidment, Matt Rivers-Latham, Charles Garcia-Tobin, Rob Dimond, Thomas Speier, Eric Van Hensbergen.

Q.   And do you indirectly oversee around four hundred employees?

A.   Around that number.

Q.   And do you own stock in ARM?

A.   At this moment in time I have no stockholdings, no.

[REDACTED]

MR. ISAACSON: If you can mark

3 (Pages 6 - 9)

Page 178

Grisenthwaite- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that's written, there's a question asked.



Page 180

Grisenthwaite- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

MR. ISAACSON: This will be thirty.

(Whereupon, an e-mail dated August 5, 2024 was marked Grisenthwaite Exhibit 30 for identification.)

Q.   Exhibit 30 is Bates stamped ARMQC 02779170.

Is this an e-mail you received on August 5, 2024 on the subject of Qualcomm and ETE?

A.   Apparently.  I have no real recollection of it.

Q.   If we can go back to Exhibit 24 where we were looking at topic seventeen.

A.   Yes.

Q.   Topic forty-one is changes in ARM's behavior towards Qualcomm as a result of the jury verdict in ARM V. Qualcomm.

Am I correct that what you are prepared to describe in response to that is limited to ARM's provision of materials

Page 181

Grisenthwaite- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

and support to Qualcomm under the Qualcomm ALA since the jury verdict?

A.   That's correct.

Q.   And by materials, what are you referring to?

A.   I think materials are I think any deliverables or -- I take that as the English language meaning of "materials", anything that we provide to Qualcomm under the license.  This could be deliverables, et cetera.

Q.   Are there materials other than that you've described today that ARM was not providing to Qualcomm before the jury verdict and that they have started providing or resumed providing after the jury verdict?

A.   No.

Q.   And did you talk to anyone to educate yourself to help to assist you in responding to this topic number forty-one?

A.   Other than my counsel?

Q.   I assumed your counsel was assisting you to prepare for your

46 (Pages 178 - 181)

# Exhibit 16
## (REDACTED IN ITS ENTIRETY)

**A1627**

# Exhibit 17
## (REDACTED IN ITS ENTIRETY)

# Exhibit 18



110 Fulbourn Road
Cambridge, CB1 9NJ
United Kingdom
Spencer.Collins@arm.com

January 8, 2025

**VIA E-MAIL ONLY**

Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated
5775 Morehouse Drive
San Diego, CA 92121-1714
AChaplin@qualcomm.com

███████████████

Dear Ann:

I write concerning Qualcomm's Architecture License Agreement ("Qualcomm ALA") and certain CPUs that include designs and code acquired in the Nuvia acquisition ("Nuvia CPUs", including at a minimum Qualcomm's Hamoa, Pakala, Nordschiefe and Pegusus products).

The Qualcomm ALA was the subject of an incomplete jury verdict on December 20 that found in Qualcomm's favor. That verdict is not final and is subject to a variety of legal challenges. Nonetheless, Arm respects and values the jury process and the Court's ongoing role in resolving the parties' disputes. As a result, and while Arm's ongoing legal challenges are pending, Arm will treat the Nuvia CPUs as falling within the scope of the Qualcomm ALA, and Arm therefore withdraws the pending October 22, 2024 notice of material breach. Arm has no current plan to terminate the Qualcomm ALA until the legal process resolves the parties' disputes over the Qualcomm ALA. Arm also conditionally accepts Qualcomm's ███████████████████████████ under which the Qualcomm ALA will expire in ████ Pursuant to separate correspondence, Arm intends to provide support for the Nuvia CPUs, including support and verification services, while the related legal challenges remain outstanding.

Arm's prior correspondence and relevant court filings in the Delaware litigation reflect Arm's legal position regarding the scope of the Qualcomm ALA and the required actions

████████████

**A1642**



that Nuvia acting in concert with Qualcomm must take in light of the termination of the Nuvia ALA on March 1, 2022.  Arm's future legal filing will reflect its legal position regarding the non-final verdict, a new trial and judgment in the legal case.  Arm reserves all rights and none of Arm's conduct, support and verification reflects a waiver of Arm's present or future rights or claims.

Qualcomm may wish to share this notice with its customers only on a confidential basis, and Arm confirms Qualcomm may do so.

Sincerely,

Spencer Collins
EVP, Chief Legal Officer
Arm Limited

2

QCVARM_0573678

**A1643**

# Exhibit 19
## (REDACTED IN ITS ENTIRETY)

# Exhibit 20
## (REDACTED IN ITS ENTIRETY)

# Exhibit 21
## (REDACTED IN ITS ENTIRETY)

# Exhibit 22
## (REDACTED IN ITS ENTIRETY)

# Exhibit 23
# (REDACTED IN ITS ENTIRETY)

# Exhibit 24

**A1816**

**Page 1**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

-ooOoo-

QUALCOMM INCORPORATED, a          )
Delaware corporation,             )
QUALCOMM TECHNOLOGIES, INC.,      )
a Delaware corporation,           )
                                  ) C.A. No. 24-490-MN
              Plaintiffs,          )
                                  )
v.                                )
                                  )
ARM HOLDINGS PLC, f/k/a, ARM      )
LTD. a U.K. corporation,          )
                                  )
              Defendant.           )
                                  )
_____       )

VIDEO RECORDED and VIRTUAL DEPOSITION

OF PHIL HUGHES

Taken on Tuesday, June 17, 2025

8:05 a.m. to 9:56 a.m.

Reported by:  Abigail D.W. Johnson, RPR, CRR, CRC

Utah, California, Idaho, Washington

A1817



Page 2

A P P E A R A N C E S

For the Plaintiffs:

William A. Isaacson
DUNN ISAACSON RHEE
Wisaacson@paulweiss.com
(202) 223-7313
Jacob Apkon
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Japkon@paulweiss.com
(202) 223-7300

For the Defendant:

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Jay.emerick@kirkland.com
(312) 862-2000

Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
Matt.mcintee@kirkland.com
(202) 389-5230
Shaelyn K. Dawson (via Zoom)
MORRISON & FOESTER LLP
425 Market Street
San Francisco, California 94105-2482
Shaelyndawson@mofo.com
(415) 268-7259

Also Present:  Tom Qui (via Zoom)

-ooOoo-

Page 3

I N D E X
EXAMINATIONS                           PAGE
Examination By Mr. Isaacson.......................... 6

E X H I B I T S
EXHIBIT NO.       DESCRIPTION          PAGE
Exhibit 1  Phil Hughes LinkedIn................... 6
Exhibit 2 ███████████████████ ..... 10
███████ Email correspondence
[ARMQC_02741400-403]
Exhibit 3 ███████ Email correspondence .. 19
[ARMQC_02741404-407]

Exhibit 4 ████████████ ..... 20
███████ Email correspondence
[ARMQC_02741412-415]

Exhibit 5 ████████████ ..... 21
███████ Email correspondence
[ARMQC_02741954-2004]

Exhibit 6 ███████ Email correspondence .. 23
[ARM_01215564]
Exhibit 7 ████████████ ..... 24
███████ Email correspondence
[ARMQC_02741727-429]
Exhibit 8 ████████████ ..... 29
███████ Email correspondence
[ARMQC_02741731-734]
Exhibit 9 ████████████ ..... 33
███████ Email correspondence
[ARMQC_02744686-687_0001-44]
Exhibit 10 ████████████ ..... 37
███████ Email correspondence
[ARMQC_02742873-876]

Page 4

Exhibit 11 ████████████ ..... 41
███████ Email correspondence
[ARMQC_02742814-818]
Exhibit 12 ████████████ ..... 46
███████ Email correspondence
[ARMQC_02742798-801]
Exhibit 13 ████████████ ..... 46
███████ Email correspondence
[ARMQC_02749014-016]
Exhibit 14 ████████████ ..... 49
███████ Arm Holding plc's
Objections and Responses to Qualcomm's
First Set of Interrogatories
(Nos. 1-3)
Exhibit 15 ███████ Email correspondence .. 52
[ARMQC_02742793-94]

Exhibit 16  Arm to Scrap Qualcomm Chip Design ...... 56
License in Feud Escalation
[QCVARM_0847094-099]

Exhibit 17 ████████████ ..... 57
███████ Email correspondence
[ARMQC_02742856-858]

Exhibit 18 ████████████ ..... 57
███████ Email correspondence
[ARMQC_02740595-599]

Exhibit 19 ████████████ ..... 62
███████ Email correspondence
[ARMQC_02740600-626]

Exhibit 20 ████████████ ..... 65
███████ Email correspondence
[ARMQC_02742823-826]

Exhibit 21 ████████████ ..... 73
███████ Email correspondence
[ARMQC_02741735-745]

REPORTER'S NOTE:  All quotations from exhibits are reflected in the manner in which they were read into the record and do not necessarily indicate an exact quote from the document.
-o0o-

Page 5

June 17, 2025                        8:05 a.m.
P R O C E E D I N G S
-o0o-
VIDEOGRAPHER:  Good morning.  We are going on the record at 8:05 a.m. on June 17th, 2025.

This is Media 1 deposition recording of Phil Hughes in the matter of Qualcomm Incorporated versus Arm Holdings, plc.  This deposition is being held at Kirkland & Ellis in Salt Lake City, Utah.

My name is Bryce Poulson.  I'm the videographer, and the court reporter is Abby Johnson.

Will all counsel state who they represent for the video record.

MR. ISAACSON:  Bill Isaacson, Dunn Isaacson Rhee for Qualcomm.

MR. EMERICK:  Jay Emerick on behalf of the witness, Phil Hughes.  Also with me is Matt McIntee.

MR. APKON:  Jacob Apkon from Paul Weiss.

VIDEOGRAPHER:  Will the court reporter swear in the witness?

Thereupon --

PHIL HUGHES, was called as a witness, and having been first duly sworn to tell the truth, the whole truth, and nothing but the truth, testified as follows:

2 (Pages 2 - 5)



Page 62

analyst's report related to Arm to me, because there was always a chance that those reports could get reported on by the media.

MR. ISAACSON: This will be the next document, Hughes 19.

(Exhibit No. 19 was marked for identification.)

BY MR. ISAACSON:

Q. Okay. Hughes Exhibit 19 is an email from Mr. Kvaal on October 23rd, 2024 in which you are copied on. The -- and it includes an attached Bernstein report. And it's Bates-stamped ARMQC_02740600. It also includes a ███████████ ███████ ████████████ ███████ ██████████████████████ ██████████████████████ █████████████████████?

A. Yes.

Q. Okay.

A. That would appear to be the case.

Q. And in this case, we are talking about feedback ████████████████████ ██████████████████████ █████████████████

Page 63

correct?

A. That would appear to be the case.

Q. Okay. And -- and there's a list of positives and negatives and questions.

Under the "Negatives," the third bullet says, "██████████████████ ████████████████████."

Do you know what █████████ ██████?

A. I do not.

Q. All right. Under ██████████ ████████████████████ ██████████████████████?

A. ████████████████ ██████████████████

Q. Okay. And the first question is: █████ ████████████████████ ████████████████████

A. I understood the trial date was probably about -- it was sometime in December, mid-December, I believe.

Q. All right. Was it about 60 days away?

A. Again, if I recall, it was, like, what, the second or third week of December. It would have been

Page 64

pretty close to 60 days it sounds like.

Q. ████████████████████ ██████████████████████ ███████ █ ██████████████████████ ██████████████████████████ ███████████████ █ ██ ████████████████████ █████████████████ █ ██ █████████████████████ ██████████████████████████ ██████████████████████████ ██████████████

Q. All right. There is also a question about, ██████████████████ █ ████████████████████████ ██████████████████"

A. I did not. And that was not a question that came in from the media.

Q. Okay. The next question is: ████████ ██████████████████████ ██████████████████████ █ ██████████████████████ █████████

Page 65

A. I don't recall. I just don't remember if there was a response given to the media for it.

MR. ISAACSON: 20.

(Exhibit No. 20 was marked for identification.)

BY MR. ISAACSON:

Q. All right. Hughes 20 is Bates-stamped ARMQC_02742823 through 2826.

There is an email from you at the top on October 24th, '24 and then emails on which you are copied on below that.

Do you recall receiving these emails or sending these emails?

A. I don't recall sending or seeing them, but sure, it looks like them. They were from me.

Q. All right. On page -- the last page of the document --

A. Mm-hmm.

Q. -- there's an email from Ami Badani at the bottom.

A. Yeah.

Q. "Spoke with Phil. We are planning to send out the following statement to journalists to update their stories and others that we have a trusted relationship with." And then below that, there is a

17 (Pages 62 - 65)

Page 66

statement in italics.

Is that the statement you were referring to earlier?

MR. EMERICK: Objection. Form.

THE WITNESS: Well, yes. This is the statement that we were sending out with media inquiries, yes.

BY MR. ISAACSON:

Q. And it says, "You should both connect on how best to handle Tim."

Who is Tim?

A. Oh, that probably would have been Tim Bradshaw from the Financial Times.

Q. All right. And on page -- on the second page of the email, there's an email from Ray -- Kristen Ray or Ray, Kristen?

A. Kristen Ray.

Q. Kristen Ray, thank you.

On October 23rd, "I've quickly pulled together a list of folks we've provided the statement to below."

A. Mm-hmm.

Q. And then there's a list of 16 media outlets.

Is that -- you understood that those were

Page 67

all media outlets that received the statement that -- that's in this -- that we were just looking at?

A. Yes, that's what I would believe it to be.

Q. All right. And then on the first page of the email, you wrote at the bottom, "Ami - Here are some additional US/UK reporters we sent to today as well."

There is a list of 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 and continued on the next page --

A. Mm-hmm.

Q. -- 11, 12, 13, 14.

If I counted right, 14 reporters that you sent the statement to; correct?

A. Yes.

Q. And you say, "The main follow-up questions we're getting that we're not commenting on are: What QCOM chips does this impact?"

So that was a question you were getting that you were not commenting on --

A. Mm-hmm.

Q. -- right.

A. Correct.

Q. And you also were getting questions, "What happens at the end of the 60 days?"

And you were not commenting on that?

Page 68

A. Correct. It looks like that and appears that way, yes.

Q. Okay. But then Ami Badani responds to the top -- or on top of your email, "Quick responses to questions. We should confirm with Spencer."

Now there is a question. "What QCOM chips does this impact? All chips that license the Arm technology across the various lines of business (not sure if it is in our interest to be specific)."

You understood that to be a correct answer to the question, "What QCOM chips does this impact," referring to the notice that Arm gave to Qualcomm?

MR. EMERICK: And I will caution you that if you have an understanding whether this is correct or not, if that comes from an attorney, you should not answer. If you have an independent or non-attorney understanding of whether this is correct or not --

THE WITNESS: Right.

MR. EMERICK: -- you can respond.

THE WITNESS: So I -- I don't know if it is correct or not because Ami wrote these. These were -- it appears to be quick responses that she wrote.

BY MR. ISAACSON:

Q. And do you know if she gave those answers to -- to reporters?

Page 69

A. I -- I don't know.

Q. Okay. And did she have responsibility for talking to reporters as well as you?

A. She did.

Q. Okay. And the response to what happens at the end of the 60-day, "Q," Qualcomm "will need to terminate the ALA license and discontinue selling any products that use Arm's platform."

Did you -- did you understand that Ami Badani was answering that question to the press with that answer?

A. Again, I don't know what conversations she had with the press.

And if I can give a little context here, at this point, I had already told Arm, Ami and I, the week before, agreed that I was going to leave. We basically had been working on that for a little while.

And one of the reasons I was leaving was because I --

18 (Pages 66 - 69)



Page 70

Q. All right. And did you understand that Ami Badani, during this period, was having direct communications with reporters?

A. During this period, she was, yes.

Q. All right.

A. Again, I don't know what it was specific to, if it was related to this, but I know she was having conversations with reporters and industry analysts.

Q. And you say, ███████████████████████████████████████████

A. Mm-hmm.

Q. ████████████████████████████████████████████████████████

A. Mm-hmm.

Q. "Cortex cores" refers to Qualcomm Cortex cores; correct?

A. It would refer to, yes, the cores that are part of the -- any technology license agreement, the TLA agreements.

Q. Okay. ████████████████████████████████████████████

Page 71

████████

A. That's likely, yes, what I meant. Yes.

████████████████████████████████████████████████████████████████████████

Q. All right. And did you understand the --
████████████████████████████████

A. ████████████████████████████████████████████████████████████████████████

Page 72

██████████████████████████████████████████████████████████████████

Q. The -- and was Ami Badani, by this point, also talking to Mr. King?

A. She had had conversations with Ian King, but I don't believe she was having any conversations with him in the context of this at this time. But again, I can't be certain of this.

MR. EMERICK: Phil, are you still doing okay? We are in a marathon --

THE WITNESS: Yeah.

MR. EMERICK: -- an hour and 45.

THE WITNESS: Yeah.

MR. EMERICK: All right. I just want to check in with the court reporter and videographer. You guys are okay?

COURT REPORTER: A break soon would be good.

MR. ISAACSON: Frankly, I only have one more document.

MR. EMERICK: If you only have one more, you think that you can hold out?

Page 73

COURT REPORTER: Oh, yeah.

MR. ISAACSON: Hughes 21.

(Exhibit No. 21 was marked for identification.)

BY MR. ISAACSON:

Q. Hughes 21 is Bates-stamped ARMQC_02741735 through 1745.

This is an email exchange between you and Jeremy Kahn of Fortune.

A. Mm-hmm.

Q. Now we are back in 2022. I believe this will be May 10th.

A. Okay.

Q. And do you recognize that you -- these are emails between you and Mr. Kahn; correct?

A. Correct.

Q. And on the first page, in the middle, is an email from Mr. Kahn to you.

Do you see that?

A. Yes.

Q. Okay. And he says, "I'm ready to fact-check the Arm feature now. What follows is a list of facts, not the actual story text."

And then for the rest of it, there's a whole list of things he characterize as facts --

19 (Pages 70 - 73)

# Exhibit 25
## (REDACTED IN ITS ENTIRETY)

**A1822**

# Exhibit 26
## (REDACTED IN ITS ENTIRETY)

# Exhibit 27
# (REDACTED IN ITS ENTIRETY)

A1857

# Exhibit 28
## (REDACTED IN ITS ENTIRETY)

# Exhibit 29
## (REDACTED IN ITS ENTIRETY)

**A1892**

## CERTIFICATE OF SER ICE

The undersigned hereby certifies that on February 20, 2026, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com
John Poulos
NORTON ROSE FULBRIGHT US LLP

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2