Originally Filed: February 20, 2026
Redacted Version Filed: February 27, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) | REDACTED - PUBLIC VERSION |
| Plaintiffs, | ) ) ) ) | C.A. No. 24-490 (MN) (CONSOLIDATED) |
| v. | ) ) ) | ████████████████ |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) | |
| Defendant. | ) ) | |

**APPENDIX TO PLAINTIFFS' PARTIAL OBJECTIONS TO THE SPECIAL MASTER'S FEBRUARY 6, 2026 ORDER (D.I. 629) DENYING PLAINTIFFS' MOTION TO COMPEL (D.I. 375) (Vol. 1: A1-A415)**

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007
(202) 240-2900

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

February 20, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

| Document | Page Range/D.I. # |
|---|---|
| Plaintiffs' Motion to Compel | D.I. 375 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 11, 2025) | A0001-A0007 |
| Qualcomm Exhibit 1 – Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's First Set of Requests for Production (Nos. 1-52) (June 17, 2025) | A0008-A0074 |
| Qualcomm Exhibit 8 – Defendant Arm Holdings PLC's Objections and Responses to Plaintiffs' Notice of 30(b)(6) Deposition (June 19, 2025) | A0075-A0123 |
| Qualcomm Exhibit 10 – Arm's First Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11) (July 11, 2025) | A0124-A0193 |
| Qualcomm Exhibit 11 – QCVARM_0526828 (Oct. 24, 2024) | A0194-A0197 |
| Qualcomm Exhibit 24 – Arm's First Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11) Excerpt (July 11, 2025) | A0198-A0215 |
| Qualcomm Exhibit 25 – Deposition of Jeffrey M. Fonseca Excerpt (July 9, 2025) | A0216-A0222 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Supplemental Letter to Special Master Helena C. Rychlicki Regarding Scope of Discovery (Aug. 18, 2025) | A0223-A0227 |
| Qualcomm Exhibit 1 – Letter from S. Collins to A. Chaplin (Oct. 23, 2024) | A0228-A0230 |
| Qualcomm Exhibit 2 – Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7, 2025) | A0231-A0239 |
| Qualcomm Exhibit 4 – Qualcomm's Second Set of Requests for Production (Nos. 53-120) Excerpt (Feb. 21, 2025) | A0240-A0250 |

| | |
|---|---|
| Qualcomm Exhibit 5 – Qualcomm's Fourth Set of Requests for Production (Nos. 157-168) Excerpt (Apr. 16, 2025) | A0251-A0257 |
| Qualcomm Exhibit 8 – Plaintiffs' Responses and Objections to Arm Ltd.'s First Notice of Deposition of Qualcomm Inc. and Qualcomm Technologies, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6) Excerpt (June 23, 2025) | A0258-A0274 |
| Qualcomm Exhibit 9 – Deposition of Jonathan Weiser Excerpt (July 11, 2025) | A0275-A0278 |
| Qualcomm Exhibit 10 – Deposition of Larissa Cochron Excerpt (July 11, 2025) | A0279-A0281 |
| Qualcomm Exhibit 11 – Deposition of Ann Nathalie Cathcart Chaplin Excerpt (July 11, 2025) | A0282-A0285 |
| Qualcomm Exhibit 12 – Deposition of Kurt Wolf Excerpt (June 25, 2025) | A0286-A0288 |
| Qualcomm Exhibit 13 – Deposition of Manju Varma Excerpt (June 24, 2025) | A0289-A0291 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendant Arm Holdings PLC's Supplement to Arm's Motion to Strike and Compel (D.I. 378) and Opposition to Qualcomm's August 11 Letter Brief to Special Master Rychlicki (Aug. 18, 2025) | A0292-A0299 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Peter Evangelatos in Support of Defendant Arm Holdings PLC's Supplement to Arm's Motion to Strike and Compel (D.I. 378) and Opposition to Qualcomm's August 11 Letter Brief to Special Master Rychlicki (Aug. 18, 2025) | A0300-A0306 |
| Arm Exhibit 1 – Plaintiffs' Motion to Compel (Aug. 11, 2025) | A0307-A0323 |
| Arm Exhibit 2 – Second Amended Complaint (June 3, 2025) | A0324-A0394 |
| Arm Exhibit 3 – Arm's Reply Brief in Support of its Partial Motion to Dismiss Qualcomm's Second Amended Complaint (July 8, 2025) | A0395-A0415 |
| Arm Exhibit 4 – Qualcomm's Answering Brief in Opposition to Arm's Motion to Dismiss the Second Amended Complaint (July 1, 2025) | A0416-A0448 |
| Arm Exhibit 5 – ARM_00103918 (May 30, 2013) | A0449-A0504 |

iii

| | |
|---|---|
| Arm Exhibit 6 – Plaintiffs' First Supplemental Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14-24) (Aug. 8, 2025) | A0505-A0573 |
| Arm Exhibit 7 – Plaintiffs' Responses and Objections to Defendant's Fifth Set of Requests for Production (Nos. 228-287) (July 11, 2025) | A0574-A0626 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Special Master Hearing Transcript (Aug. 22, 2025) | A0627-A0702 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Newly-Learned Facts and Subsequent Events (Sept. 15, 2025) | A0703-A0705 |
| Qualcomm Exhibit 1 – Special Master Hearing Transcript Excerpt (Aug. 14, 2025) | A0706-A0708 |
| Qualcomm Exhibit 2 – Special Master Hearing Transcript Excerpt (Aug. 22, 2025) | A0709-A0712 |
| Qualcomm Exhibit 3 – Email from A. Basner to P. Evangelatos et al. re: RE: Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): RFPs (Sept. 14, 2025) | A0713-A0722 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendant Arm Holdings PLC's Response to Qualcomm's September 15, 2025 Letter to Special Master Rychlicki (Sept. 19, 2025) | A0723-A0728 |
| Arm Exhibit 1 – Meet and Confer Transcript Excerpt (July 30, 2025) | A0729-A0733 |
| Arm Exhibit 2 – Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A0734-A0741 |
| Arm Exhibit 3 – Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7, 2025) | A0742-A0750 |
| Arm Exhibit 4 – Meet and Confer Transcript Excerpt (Sept. 15, 2025) | A0751-A0758 |
| Arm Exhibit 5 – Email from C. Nyarady to A. Janes et al. re: Qualcomm v. Arm – Meet and Confer (Aug. 29, 2025) | A0759-A0774 |
| Arm Exhibit 6 – Meet and Confer Transcript Excerpt (July 28, 2025) | A0775-A0778 |

iv

| | |
|---|---|
| Arm Exhibit 7 – Email from J. Emerick to C. Nyarady et al. re: Qualcomm v. Arm – Meet and Confer (Sept. 10, 2025) | A0779-A0795 |
| Arm Exhibit 8 – Defendant Arm Holdings PLC's Supplement to Arm's Motion to Strike and Compel (D.I. 378) and Opposition to Qualcomm's August 11 Letter Brief to Special Master Rychlicki (Aug. 18, 2025) | A0796-A0804 |
| Arm Exhibit 9 – Defendant Arm Holdings PLC's Letter Brief to Special Master Rychlicki (Aug. 1, 2025) | A0805-A0812 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Subsequent Events Relating to Their Motion to Compel Production of Third-Party Arm Licenses and Related Agreements (Oct. 17, 2025) | A0813-A0817 |
| Qualcomm Exhibit 1 – ARMQC_02798040 (Sept. 8, 2023) | A0818-A0835 |
| Qualcomm Exhibit 2 – ARMQC_02789082 (Feb. 1, 2022) | A0836-A0880 |
| Qualcomm Exhibit 3 – ARMQC_02797972 (June 10, 2024) | A0881-A0892 |
| Qualcomm Exhibit 4 – Email from J. Hartley to P. Evangelatos et al. re: Qualcomm v. Arm – Third Party Agreements (Oct. 16, 2025) | A0893-A0899 |
| Qualcomm Exhibit 5 – ARMQC_02797778 (Dec. 16, 2021) | A0900-A1065 |
| Qualcomm Exhibit 6 – Meet and Confer Transcript (Oct. 10, 2025) | A1066-A1073 |
| Qualcomm Exhibit 7 – Email from A. Basner to P. Evangelatos re: Qualcomm v. Arm, Case No. 1:24-cv-490 (Oct. 15, 2025) | A1074-A1078 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Subsequent Events Relating to Their Motion to Compel Production of Arm's Analysis of Third-Party Licenses (Oct. 17, 2025) | A1079-A1081 |
| Qualcomm Exhibit 1 – Plaintiffs Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A1082-A1089 |
| Qualcomm Exhibit 2 – Deposition of Akshay Bhatnagar Excerpt (July 10, 2025) | A1090-A1093 |

v

| | |
|---|---|
| Qualcomm Exhibit 3 – Letter from C. Nyarady to P. Evangelatos (July 11, 2025) | A1094-A1096 |
| Qualcomm Exhibit 4 – Letter from C. Nyarady to J. Emerick (July 16, 2025) | A1097-A1103 |
| Qualcomm Exhibit 5 – Letter from J. Emerick to C. Nyarady (July 24, 2025) | A1104-A1112 |
| Qualcomm Exhibit 6 – Meet and Confer Transcript Excerpt (July 28, 2025) | A1113-A1116 |
| Qualcomm Exhibit 7 – Special Master Hearing Transcript Excerpt (Aug. 14, 2025) | A1117-A1121 |
| Qualcomm Exhibit 8 – Letter from P. Evangelatos to C. Nyarady (Oct. 16, 2025) | A1122-A1126 |
| Qualcomm Exhibit 9 – Email from J. Hartley re: Qualcomm v. Arm – Production of Spreadsheet (Oct. 6, 2025) | A1127-A1129 |
| Qualcomm Exhibit 10 – Meet and Confer Transcript Excerpt (Oct. 10, 2025) | A1130-A1133 |
| Qualcomm Exhibit 11 – Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Subsequent Events Relating to Their Motion to Compel Production of Third-Party Arm Licenses and Related Agreements (Oct. 17, 2025) | A1134-A1139 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendant Arm Holdings PLC's Response to Qualcomm's October 17, 2025 Letters (Nov. 7, 2025) | A1140-A1145 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Peter Evangelatos in Support of Defendant Arm Holdings PLC's Response to Qualcomm's October 17, 2025 Letters (Nov. 7, 2025) | A1146-A1149 |
| Arm Exhibit 1 – Letter from A. Gaza to the Honorable Sherry R. Fallon re: *Qualcomm Inc., et al. v. Arm Holdings Plc.,* C.A. No. 24-490 (MN) (Mar. 13, 2025) | A1150-A1237 |
| Arm Exhibit 2 – Qualcomm's Letter to the Honorable Sherry R. Fallon in Response to Arm's Letter Regarding Discovery Dispute (D.I. 68) (Mar. 14, 2025) | A1238-A1264 |

| | |
|---|---|
| Arm Exhibit 3 – Deposition of Akshay Bhatnagar Excerpt (July 10, 2025) | A1265-A1269 |
| Arm Exhibit 4 – Deposition of Karthik Shivashankar Excerpt (June 20, 2025) | A1270-A1277 |
| Arm Exhibit 5 – Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7, 2025) | A1278-A1286 |
| Arm Exhibit 6 – Email from J. Hartley re: Qualcomm v. Arm – Third Party Agreements (Sept. 24, 2025) | A1287-A1289 |
| Arm Exhibit 7 – Defendant Arm Holdings PLC's Response to Qualcomm's September 15, 2025 Letter to Special Master Rychlicki (Sept. 19, 2025) | A1290-A1296 |
| Arm Exhibit 8 – Notice of Electronic Filing of D.I. 74 (Mar. 17, 2025) | A1297-A1300 |
| Arm Exhibit 9 – Stipulated Protective Order (Mar. 21, 2025) | A1301-A1342 |
| Qualcomm's Motion to Compel (Aug. 1, 2025) Exhibit 35 – Letter from N. Fung to C. Nyarady (Mar. 19, 2025) | A1343-A1348 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | C.A. No. 24-490 (MN) |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) | ████████████████████ |
| Defendant. | ) ) | |

### PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI REGARDING OUTSTANDING DISCOVERY DISPUTES

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

August 11, 2025

Dear Special Master Rychlicki:

Qualcomm submits this letter in advance of the August 22 hearing.

## I.        Covenant of Good Faith and Fair Dealing

Arm breached the implied covenant of good faith and fair dealing for both the Qualcomm ALA and TLA.

**Peripheral TLA IP.**  In addition to the ███████████████████ cores, Arm also failed to offer commercially reasonable terms for Peripheral IP—IP used in Qualcomm's chips outside of the CPU and licensable under a TLA, including the ████████████████████████████ ██████████████████████████████████████  Qualcomm requested documents and testimony concerning Arm's licenses and negotiations for these products.  (**RFPs 34, 40; Topic 16(b); Interrogatory 6**.)[1]  Arm refused, saying the Second Amended Complaint ("SAC") does not specifically mention these IPs.  But the SAC alleges that, in addition to the breach of ████ ████, "Qualcomm expects discovery to show that Arm violated the good faith and fair dealing provisions of the QC TLA *in its licensing negotiations involving peripheral TLA IP*."  D.I. 137 ¶ 102 (emphasis added).  In addition, the October 2024 quote referenced in the SAC included prices for these three Peripheral IPs. Ex. 11.  Qualcomm also sought discovery on these Peripheral IPs in January 2025.  (**RFP 34**.)  Arm was thus on notice of Qualcomm's claims concerning Peripheral IP.  Arm should produce discovery on these IPs.

████████████████████████████████.  Arm also provided unreasonable licensing offers for its ████████████████████████████.  Qualcomm sought documents concerning Arm's licensing, negotiation (**RFPs 34, 40, 57, 58, 71, 85; Interrogatory 6**), and engineering (**RFP 100**) of these CPUs.  Arm refused all discovery because it claims the SAC does not specifically mention these CPUs.  But the SAC alleges that Arm breached the implied covenant and lists examples of Arm's conduct.  D.I. 137 ¶ 184.  Rule 26's focus on "actual claims and defenses" "does not mean that a fact must be alleged in a pleading for a party to be entitled to discovery of information concerning that fact," 6 Moore's Federal Practice - Civil § 26.42[1] (2025).  Qualcomm's SAC provided examples of how Arm breached, and Qualcomm should be permitted discovery on *all* the ways Arm may have breached the implied covenant.  Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (confirming that "other incidents of the same type" are discoverable).

**ETE Trace Checker.**  Arm failed to provide Qualcomm with necessary information and guidance for configuring the ETE Trace Checker Module, verification technology Qualcomm licenses under its ALA.  Arm purportedly agreed to produce documents "concerning the decision not to provide Qualcomm with information or documents related to the configuration or enablement of the" ETE Checker, Ex. 12 at 44, but Qualcomm has not identified any such documents in Arm's production.  In addition, Arm refused equally relevant discovery into



---

[1] "RFP" refers to Qualcomm's requests for production, Exhibits 1-7.  "Topic" refers Qualcomm's Notice of Rule 30(b)(6) Deposition of Arm, Exhibit 8.  "Interrogatory" refers to Qualcomm's interrogatories, Exhibits 9-10.

communications regarding Qualcomm's requests for such configuration information or information that was provided to other licensees regarding the ETE Checker (**RFPs 74, 76**), Ex. 13 at 24-27. Arm's refusal to provide discovery prejudiced Qualcomm and impeded its ability to fully pursue its claims. Arm should produce the relevant documents.

## II.    Tortious Interference

Qualcomm's Counts III, IV, and V stem from Arm's interference with Qualcomm's customers, including by sending Qualcomm a letter threatening to terminate the Qualcomm ALA on October 22, 2024, then leaking that letter to Bloomberg News the same day, despite ███████ ████████████████████████████████████████ D.I. 137 ¶¶ 29-37, 144-163, 189-203.

In its response to Interrogatory 2, Arm admitted it leaked the letter to Bloomberg News through Kenneth Siegel, a partner at MoFo and a director of SoftBank Group, and Paul Kranhold, a partner at FGS Global, Arm's PR firm. Ex. 14 at 20-21. Qualcomm sought discovery on the letter and leak (**RFPs 16, 17, 38, 145[2]-147, 149; Topic 32(e)-(h), (j)**), but Arm's production contains no documents about the decision to write or leak the letter or the decision to withdraw the notice on January 8, 2025.

Qualcomm is entitled to documents concerning Arm's leak of information about the termination letter to Bloomberg. Arm's conversations regarding this public relations strategy are not privileged as they do not involve legal advice. And to the extent any such documents are privileged, Arm waived the privilege. At Mr. Abbey's deposition, Arm's counsel elicited testimony that ██████████████████████████████████████████████ ████████████████████████. Ex. 15 at 165:3–21. ███████████████████████ ████████████████████████████████████████████████████████████████████. *Id.* 172:8–20. ████████████████████████████████████████████████ ████████████████████████████████████ *Id.* 173:18–175:11. By testifying about the content of a communication with an attorney—and attempting to use the content of that communication to bolster Arm's defense against Qualcomm's claim—Arm waived privilege over that communication. *See CP Kelco U.S. Inc.* v. *Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2003) ("Having chosen to use the information offensively, any privilege [defendant] might have claimed to defend the information from disclosure is, and remains, waived."). Qualcomm is entitled to any documents regarding that conversation. To the extent no documents exist, Qualcomm is entitled to an additional deposition for the limited purpose of asking Mr. Abbey about this conversation without Arm providing improper privilege instructions to Mr. Abbey.

## III.    California Unfair Competition Law

Historically Arm operated as a neutral licensor, holding itself out as the "Switzerland of chips." D.I. 137 ¶ 68. Arm's neutrality intentionally led to widespread adoption of the Arm Architecture because software developers could ensure software would be interoperable across all Arm-compatible devices. *Id.* Following Arm's acquisition by SoftBank, Arm pivoted away from this neutral model. *Id.* ¶ 69. Now, in violation of the California Unfair Competition Law (Count

---

[2] Qualcomm served two RFP Nos. 145 and moves on both here.

VI), Arm seeks to leverage its control of the Arm ISA to displace Qualcomm and grow Arm's chip business. *Id.* ¶¶ 70-72, 164, 207-210. Arm largely has refused discovery into this business model shift and its related unfair acts.

**RFPs 103-110, 117-119, 121, 143.** Qualcomm sought production of documents relating to Arm's vertical integration and Arm's intentions, plans, and strategy to build chips. Arm refused. Arm should be compelled to produce such documents as they bear on Qualcomm's unfair competition claim relating to Arm's efforts to displace Qualcomm and other licensees through building its own chips.

**RFP 122.** Qualcomm asked Arm for documents regarding Arm's "knowledge since January 1, 2022 that any Third Party is or has been a customer for Qualcomm CPUs or other products." Arm's response is limited to third parties identified in Qualcomm's complaint, *e.g.*, only customers with which Qualcomm already knows Arm tortiously interfered but not Qualcomm customers Arm interfered with without Qualcomm's knowledge. Ex. 16 at 6-7. Qualcomm is entitled to probe whether Arm knew specific companies were Qualcomm customers and targeted those companies to disparage Qualcomm or displace Qualcomm as a chip supplier.

Qualcomm requested documents concerning Arm's internal discussions about Qualcomm's custom CPUs (**RFP 187**), Arm's decision to cease engaging with Qualcomm on its CPUs (**RFP 188**), and any steps or decisions Arm took to impede Qualcomm's development of its CPUs (**RFP 189**). Discovery on Arm's decision to instruct its employees to stop communicating with Qualcomm or to impede Qualcomm's CPU development—for example, by withholding deliverables[3]—is key to understanding what Arm withheld from Qualcomm and whether its actions were motivated by a desire to hinder Qualcomm's CPU development and thereby harm competition.

Qualcomm requested agreements and licenses that Arm has with Apple[4] or Nvidia (**RFPs 193, 195**), including any that resulted from the dissolution of the Arm Joint Venture with Apple (**RFP 192**) and from Nvidia's failed acquisition of Arm (**RFP 194**). Apple was instrumental in Arm's founding and public reporting indicates that it retains a relationship with Arm that is more favorable than that of other licensees. Ex. 18. Nvidia and Arm entered into discussions for an acquisition in 2021 that ultimately fell through after regulatory pressure from the Federal Trade Commission. Arm's other agreements with Apple and NVIDIA are relevant to understanding whether and why their ALAs and TLAs reflect uniquely favorable terms.

**RFPs 169–186.** Arm also refused to produce documents relating to attempts to exclude Qualcomm from █████████████████████████████████████████████████████████████

---

[3] As noted in Qualcomm's August 1 letter, "Arm witnesses testified they were instructed by management to withhold deliverables from Qualcomm, then instructed to deliver them after the verdict in *Arm* v. *Qualcomm*." Ex. 17 at 4. But Arm has not produced those communications or any documents reflecting Arm's decision making leading up to those communications.

[4] With respect to Apple agreements, Morris, Nichols, represents Qualcomm.

3

███████████████████████████████████████████████

███████████████████████████████████████████████

Arm refused all discovery on relevance grounds.  But these requests are relevant to Qualcomm's UCL claim.

## IV.    Arm's Interrogatory Responses

Arm's interrogatory responses are incomplete.

**Interrogatories 6 and 11.**  Arm should be compelled to supplement its responses to **Interrogatory 6 and 11** to provide additional information about Arm's agreements with third parties for (at least) ███████████████ and to offer a 30(b)(6) witness prepared to testify about these issues.

**Interrogatory 6** asked Arm to describe the licensing terms for various products relevant to its claims, including ███████████████.  Arm initially refused to provide any response to this request and, on the last day of fact discovery, supplemented its response to incorporate a handful of third-party agreements.  *First*, Arm should be compelled to produce additional third-party agreements that cover all of the TLA IP identified in **Interrogatory 6**, rather than just third-party agreements related to ███████████████.  *Second*, Arm should be compelled to supplement its response to identify the applicable royalty rates in each agreement for each product. Arm only began to produce third-party agreements after depositions started, producing a handful of agreements between June 24 and July 11, making it impossible for Qualcomm to download, interpret, and examine witnesses using these documents.  Moreover, these are highly technical agreements that do not always identify royalty rates applicable to individual CPUs and that Arm—not outside counsel for Qualcomm—has specialized knowledge of.

**Interrogatory 11** asked for the basis for asserting that Arm did not breach the Qualcomm TLA.  Arm's initial response provides no specific information about ███████████████ ███████████████████████████████.  Ex. 24.  On the last day of fact discovery, after Qualcomm completed its depositions, Arm supplemented its response to identify ███████████████████████████████ for ███████████████████.  *Id.*  The response cited deposition testimony of Ehab Youseff and ███████████████████████

4

████████████████ that Arm produced only *after* Mr. Youseff's deposition. *Id.* As described above, Arm should be required to identify relevant information about the ATA and provide a 30(b)(6) witness to address it.[5] The supplemental response further states that ████ ████████████████████████████████████████████████████████████████████████████ ████████ Ex. 24. But this explanation lacks any specific discussion of the relevant terms of the ██████ agreement or why Arm asserts it could not use them as a reference for Qualcomm's quote. Arm should be required to supplement its interrogatory response to explain its analysis, identify what "other factors" it relied on to determine that ████████████████████████████, and provide a witness prepared to so testify regarding Topics 8, 9, 20, and 29.

**Interrogatory 2.** Arm's supplemental response to **Interrogatory 2** is insufficient because it does not describe Ami Badani or Ben Spicehandler's role in the leak of the October 2024 termination letter. Ms. Badani's deposition testimony makes clear that ████████████ ████████████████████████████████████████████ Ex. 26 at 36:23-40:7. Arm claimed that it could not explain her role before her deposition, Ex. 27 at 33:13-37:7, despite the fact that she is an Arm employee and Arm provided information about other Arm employees prior to their depositions. Further, Paul Kranhold testified about Mr. Spicehandler's involvement. Ex. 28 at 36:1-14. Arm should be required to supplement this response.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

cc:    Clerk of the Court (via hand delivery)
       All Counsel of Record (via CM/ECF and e-mail)

---

[5] Arm's witness on **Topic 8** (Fonseca) ████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

5

**A0007**

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

QUALCOMM INC., a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
Delaware corporation,

Plaintiffs,

v.

ARM LTD., a U.K. corporation,

Defendant.

C.A. No. 24-490-MN

███████████

**ARM LTD.'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO**
**QUALCOMM'S FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-52)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure; the District's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("Default Standard"), and Stipulation and Order governing ESI in this case (together with the Default Standard, the "ESI Order"); any Protective Order entered in this case (the "Protective Order"), the District of Delaware Local Civil Rules (together with the ESI Order and the Protective Order, the "Local Rules"), and any agreements by the parties or orders by the Court, Arm Ltd. ("Arm") submits the following responses and objections to Qualcomm Inc. and Qualcomm Technologies, Inc.'s (together "Qualcomm") First Set of Requests for Production of Documents and Things to Arm Ltd. (Nos. 1-52), dated January 21, 2025 (each a "Request" and collectively the "Requests").

**PRELIMINARY STATEMENT**

1.    Arm's responses to the Requests ("Responses") are made in accordance with the Federal Rules of Civil Procedure and based upon information currently available to Arm.

1

**A0009**

Investigation and discovery are ongoing in this case. Arm responds to the Requests without prejudice to Arm's right to supplement its Responses. Arm provides these Responses and objections to the best of its current knowledge, information, and belief, based on information readily and reasonably available to it after making a reasonable inquiry. Arm expressly reserves the right to modify or supplement any Response, and to assert additional objections to the Requests as necessary or appropriate.

2.      Arm makes these Responses subject to and without waiving Arm's right to introduce, use, or refer to information which Arm presently has, but which Arm has not yet had sufficient time to analyze and evaluate, as well as Arm's right to amend or supplement its Responses in the event that any information previously available to Arm is unintentionally omitted from its Responses.

3.      Arm objects to each instruction, definition, and/or Request to the extent that it seeks information, documents, and/or things protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, common interest privilege, joint defense privilege, or any other applicable privilege or protection, and will not produce such material.

4.      Consistent with Fed. R. Civ. P. 34, Arm will produce documents as kept or maintained in the ordinary course of business, if any such documents exist, subject to Arm's objections and Responses.

5.      Arm's statement that it will search for and produce documents in response to any particular request is not an indication that such documents exist or are within the possession, custody, or control of Arm. It is a mere statement that Arm will produce those reasonably available, relevant, non-privileged documents that exist, are within the

possession, custody, or control of Arm, and can be located after a reasonable search.

## **GENERAL OBJECTIONS**

6.    Arm makes the following General Objections, pursuant to the Local Rules, which are hereby incorporated by reference in each Response to each Request.  By responding to these Requests, Arm does not and shall not be deemed to have accepted or adopted any of Qualcomm's definitions or instructions.

7.    Arm objects to Paragraphs 2 through 3 of the Instructions as seeking to impose additional or different obligations for privilege logs than agreed to by the parties in the ESI Order.

8.    Arm objects to Paragraph 8 of the Instructions to the extent it seeks details about document preservation and collection practices that are protected from disclosure pursuant to the attorney-client privilege, the attorney work-product doctrine, or any other applicable discovery rule.

9.    Arm objects to the definition of "Defendant," "ARM," "you," and "your" as overbroad to the extent it defines these terms beyond Arm Holdings plc.

10.    Arm objects to the definitions of "ALA" and "TLA" as overbroad to the extent they define Architecture License Agreement and Technology License Agreement to include "all amendments and annexes to any such agreement."

11.    Arm objects to each instruction, definition, and/or Request to the extent that it seeks information, documents, and/or things protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, common interest privilege, joint defense privilege, or any other applicable privilege or protection.  No privileged or protected documents will be produced.  Any disclosure of protected or privileged information is inadvertent and is not intended to waive these privileges or protections.

3

12. Arm objects to each instruction, definition, and/or Request to the extent that it seeks to impose obligations on Arm beyond those required by the Federal Rules of Civil Procedure, the Local Rules, any other applicable laws, rules, or orders, or the parties' agreement(s) regarding document production.

13. Arm objects to the Requests to the extent that they seek confidential, proprietary, or trade secret information pertaining to Arm, its business, or third parties that is subject to the Protective Order entered in this case.

14. Arm objects to the Requests to the extent that they seek to obtain any information or documents not in its possession, custody, or control.

15. Arm objects to the Requests to the extent that they seek information already in Qualcomm's possession, information that is a matter of public record, otherwise equally available to Qualcomm, or equally obtainable from more convenient sources.

16. The fact that Arm has objected or produced any documents is not a concession or admission to any statement, inference, or allegation implied by any Request, to the existence of any fact set forth or assumed by any such document or by any Request, or that such document constitutes admissible evidence.  The fact that Arm has produced documents in response to a particular instruction or Request is not to be construed as a waiver by Arm of any objection to that particular instruction or Request.

17. Arm objects to each instruction, definition, and/or Request to the extent that it requires Arm to draw legal conclusions or agree to legal conclusions put forward by Qualcomm.

18. Arm objects to each instruction, definition, and/or Request to the extent that it is unduly burdensome, and the burden or expense of the proposed discovery outweighs its

4

likely benefit.  Arm objects to producing documents periodically created by Arm in the usual scope of Arm's business that only minimally or tangentially reference any relevant information, and where Arm in good faith believes that the information included in the documents would be cumulative of information produced elsewhere.

19.    Arm objects to each instruction, definition, and/or Request as unreasonably burdensome to the extent that Qualcomm seeks production of electronically stored information that goes beyond the Local Rules.

20.    Arm objects to each instruction and/or Request to the extent it requests information properly requested in an interrogatory.

21.    Arm objects to each Request to the extent that it seeks cumulative or duplicative information, including to the extent the Requests are cumulative or duplicative of any of the requests for production Qualcomm or Nuvia, Inc. served in *Arm Ltd. v. Qualcomm Inc. et al.*, C.A. No. 22-1146-MN (D. Del.) ("*Arm v. Qualcomm*").  To the extent documents responsive to such Requests were already produced in *Arm v. Qualcomm*, Arm objects to any reproduction in this case and instead directs Qualcomm to the prior productions.

22.    Arm objects to the Requests to the extent they are not reasonably limited in time. Subject to other objections and unless otherwise specified or agreed, Arm will produce non-privileged and non-work product documents dating from January 1, 2019 forward until the filing of the complaint in *Arm v. Qualcomm* to the extent any such documents exist; are in its possession, custody, and control; and are located after a reasonable search.

**SPECIFIC RESPONSES AND OBJECTIONS TO REQUESTS**

**REQUEST FOR PRODUCTION NO. 1:**

All Documents and Communications Arm referenced, relied upon, or otherwise used in drafting its Answer.

5

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Subject to its General Objections and any specific objections set forth below, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search that Arm referenced in its Answer. Arm has also produced documents responsive to this Request in *Arm v. Qualcomm*.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents and Communications Arm contends support its defenses or that rebut its defenses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Subject to its General Objections and any specific objections set forth below, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search relating to its

**A0014**

defenses. Arm has also produced documents responsive to this Request in *Arm v. Qualcomm.*

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

**REQUEST FOR PRODUCTION NO. 3:**

Documents and Communications sufficient to show

licensed under the Qualcomm ALA and released or distributed (internally or otherwise) since June 1, 2022.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Subject to its General Objections and any specific objections set forth below, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show all

7

████████████████████████████████ licensed under the Qualcomm ALA and released or distributed (internally or otherwise) since June 1, 2022 to April 18, 2024.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks █████████████████████████████ ████████████████████████████ regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request because the phrases ████████████ ████████████████████████████████ are vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents and Communications concerning ████████████████████████ ████████████████████████ or any other technical improvement or information licensed under the Qualcomm ALA that was, after June 1, 2022, delivered to any other Arm licensee but not to Qualcomm.

**A0016**

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the phrases ▮▮▮▮▮▮ ▮▮▮▮▮▮ and "any other technical improvement or information" are vague, ambiguous, and undefined. Arm objects that this Request assumes factual conclusions.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications since June 1, 2022 related to or concerning the [sic] Qualcomm's ACK or Qualcomm's OOB tests, and any patches thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional,

and targeted search through the use of agreed-upon search terms with agreed-upon custodians relating to or concerning Qualcomm's ACK or Qualcomm's OOB tests, and any patches thereto since June 1, 2022 to April 18, 2024. Arm has also produced documents responsive to this Request in *Arm v. Qualcomm*.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request because the term "patches" is vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 6:**

All versions of the ACK released after June 1, 2022, and any patches thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Subject to its General Objections and any specific objections set forth below, Arm will produce non-privileged and non-work product documents sufficient to show the versions of

10

**A0018**

the ACK released after June 1, 2022, and any patches thereto to the extent such documents are in its possession, custody, or control and can be located through a targeted search.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request because the term "patches" is vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request No. 5.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications concerning Arm's position that ███████ ███████████████ of the Qualcomm ALA governs delivery of ACK deliverables listed in ███████ of any of the Qualcomm ALA Annexes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon

custodians concerning Arm's position that ██████████████████████████, of the Qualcomm ALA governs delivery of ACK deliverables listed in ███████ of any of the Qualcomm ALA Annexes.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent it seeks a legal conclusion.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Communications concerning or interpreting ████████████ ███████ of the Qualcomm ALA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians concerning or interpreting ████████████████ of the Qualcomm ALA.

12

**A0020**

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent it seeks a legal conclusion.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents and Communications concerning or interpreting the definition of ▮▮▮▮▮▮, and sections governing verification, delivery, support, and any remedies for failure to deliver ▮▮▮▮▮▮▮▮ in any Third Party ALAs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly

13

burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the phrases "verification," "delivery," "support," and "remedies for failure to deliver" are vague, ambiguous, and undefined. Arm objects to this Request to the extent it seeks a legal conclusion. Arm objects to this Request as duplicative of Request for Production Nos. 7 and 8.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents and Communications concerning the withholding of ▮▮▮ ▮▮▮▮▮▮ or other deliverables from Qualcomm, including any Documents and Communications discussing Arm's justification(s) for those withholdings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians concerning the withholding of ▮▮▮▮▮▮▮, the ACK, or OOB from

14

**A0022**

Qualcomm. Arm has also produced documents responsive to this Request in *Arm v. Qualcomm*.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the term "withholding" is vague, ambiguous, and undefined. Arm objects to this Request to the extent it seeks a legal conclusion. Arm objects to this Request to the extent that it calls for documents not in Arm's possession, custody, or control regarding Arm's handling of deliverables to Qualcomm. Arm objects that this Request assumes factual conclusions.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents and Communications related to or concerning Arm's assertion that Qualcomm has no ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (12/6/2022 Letter from S. Collins to A. Chaplin).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product

documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians related to or concerning Arm's assertion that Qualcomm has no ███████ ██████████████████████████████████████████████ and that ████████████████████████████ as stated in the December 6, 2022 Letter from S. Collins to A. Chaplin. Arm has also produced documents responsive to this Request in *Arm v. Qualcomm*.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents and Communications related to or concerning Qualcomm's notices of failure to deliver, sent to Arm on November 3, 2022 and December 5, 2022.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product

documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians related to or concerning Qualcomm's notices of failure to deliver, sent to Arm on November 3, 2022 and December 5, 2022.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents and Communications related to or concerning Arm's decision not to provide Qualcomm with OOB tests or ACK patches after receiving Qualcomm's November 3, 2022 and December 5, 2022 notices of failure to deliver.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon

A0025

custodians related to or concerning Arm's decision not to provide Qualcomm with OOB tests or ACK patches after receiving Qualcomm's November 3, 2022 and December 5, 2022 notices of failure to deliver.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the phrase "decision" is vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request for Production No. 12. Arm objects that this Request is argumentative and assumes factual conclusions.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents and Communications concerning any inquiry or request made by Qualcomm to Arm regarding the Arm's development of v10 of the Arm ISA (including the April 17, 2020 email from Rajiv Gupta at Qualcomm to Lynn Couillard at Arm) and Arm's response to those inquiries.

18

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" and "any inquiry, or request" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as documents concerning v10 of the Arm ISA. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request to the extent that it calls for documents not in Arm's possession, custody, or control regarding inquiries or requests made by Qualcomm to Arm, and Arm's responses to those inquiries.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search through the use of search terms and custodians concerning any inquiry or request made by Qualcomm to Arm regarding Arm's development of v10 of

19

the Arm ISA (including the April 17, 2020 email from Rajiv Gupta at Qualcomm to Lynn Couillard at Arm) and Arm's response to those inquiries.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" and "any inquiry, or request" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request to the extent that it calls for documents not in Arm's possession, custody, or control regarding inquiries or requests made by Qualcomm to Arm, and Arm's responses to those inquiries.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents and Communications concerning the past, current, or future development of another version of the Arm ISA, including but not limited to a v10 of the Arm ISA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

A0028

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as documents concerning v10 of the Arm ISA. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request because the phrase "another version" is vague, ambiguous, and undefined.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show the development timeline of v10 of the Arm ISA.

A0029

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request because the phrase "another version" is vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents and Communications related to or concerning Arm's October 22, 2024 letter to Qualcomm alleging that Qualcomm is in breach of its ALA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional,

and targeted search through the use of agreed-upon search terms with agreed-upon custodians related to or concerning Arm's October 22, 2024 letter.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents and Communications related to or concerning Arm's sharing of its October 22, 2024 letter to Qualcomm or the allegations contained in that letter with Third Parties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon

custodians related to or concerning Arm's sharing of its October 22, 2024 letter to Qualcomm or the allegations contained in that letter with Third Parties.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request as duplicative of Request for Production No. 16. Arm objects that this Request assumes factual conclusions.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents and Communications related to or concerning Qualcomm's May 20, 2020 email from Brett Bettesworth to Lynn Couillard electing to extend the ▮▮▮▮▮▮▮ of the Qualcomm ALA and to negotiate the terms of the extension.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians related to or concerning Qualcomm's May 20, 2020 email from Brett

Bettesworth to Lynn Couillard electing to extend the ▮▮▮▮▮▮ of the Qualcomm ALA and to negotiate the terms of the extension.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents and Communications related to or concerning Arm's analysis or discussion of whether to extend the ▮▮▮▮▮▮ of the Qualcomm ALA following Qualcomm's May 20, 2020 email.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians related to or concerning Arm's analysis or discussion of whether to extend the ▮▮▮▮▮▮ of the Qualcomm ALA following Qualcomm's May 20, 2020 email.

25

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request as duplicative of Request for Production No. 18.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents and Communications concerning Arm's discussions with Third Parties regarding the claims in Qualcomm's Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians concerning Arm's discussions with Third Parties regarding the claims in Qualcomm's Complaint. Arm will also produce non-privileged and non-work product documents in its possession, custody, or control that it can locate after a reasonable search sufficient to show Arm's formal Communications with Third Parties regarding the claims in Qualcomm's Complaint.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks

26

production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents and Communications related to or concerning Arm's discussions with Third Parties regarding the status of Qualcomm's licenses with Arm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians related to or concerning Arm's discussions with Third Parties regarding the status of Qualcomm's licenses with Arm. Arm will also produce non-privileged and non-work product documents in its possession, custody, or control that it can locate after a reasonable search sufficient to show Arm's formal Communications with Third Parties regarding the status of Qualcomm's licenses with Arm.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter, and licenses not at issue. Arm objects to this Request

to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as licenses not as issue. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the phrase "status of Qualcomm's licenses with Arm" is vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents and Communications related to or concerning Arm's discussions with Third Parties regarding Qualcomm's relationship with Arm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the

28

work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the phrase "Qualcomm's relationship with Arm" is vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents and Communications related to or concerning the projected or forecasted impact to Arm's revenue or profits if the Qualcomm ALA is terminated.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians related to or concerning the projected or forecasted impact to Arm's revenue or profits if the Qualcomm ALA is terminated.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the term "impact" is vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents and Communications containing any analysis or evaluation of the projected or forecasted impact to Arm's revenue or profits if the Qualcomm ALA is terminated.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians containing analysis or evaluation of the projected or forecasted impact to Arm's revenue or profits if the Qualcomm ALA is terminated.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" and "any analysis or evaluation" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the terms "analysis" "evaluation," and "impact" are vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request for Production No. 23.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents and Communications related to or concerning Arm's potential termination of the Qualcomm ALA.

30

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians related to or concerning Arm's October 22, 2024 letter.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

**REQUEST FOR PRODUCTION NO. 26:**

All Documents and Communications concerning deliverables included as  licensed under the Qualcomm ALA, including the that was, after June 1, 2022, delivered to any other Arm licensee but not to Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as third party licenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

**REQUEST FOR PRODUCTION NO. 27:**

All ALAs and Annexes with Third Parties (*i.e.*, parties other than Qualcomm).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as third party licenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and

will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents and Communications concerning delivery of ███████████ ███████████████████████████, or any other technical improvement licensed under ALAs to third parties (*i.e.*, parties other than Qualcomm), including documents sufficient to show the licensee, the date of delivery, and the terms of any such delivery for any delivery that was not provided to Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as third party licenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the

33

**A0041**

third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

**REQUEST FOR PRODUCTION NO. 29:**

All Documents and Communications with Arm's Board of Directors and/or Masayoshi Son concerning the decision to withhold deliverables, ███████████

████████████████████████████████, or any other technical improvement or other information licensed under the Qualcomm ALA, from Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians concerning Arm's withholding of the ACK and OOB from Qualcomm.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable

34

**A0042**

privilege or immunity. Arm objects that this Request assumes factual conclusions. Arm objects to this Request as duplicative of Request for Production Nos. 10 and 39.

**REQUEST FOR PRODUCTION NO. 30:**

All Documents and Communications related to or concerning Arm's communications with Qualcomm regarding the delivery of ███████████ or other deliverables licensed under the Qualcomm ALA, including but not limited to communications from Arm to Qualcomm, informing Qualcomm that deliverables would be delayed or would need legal approval, and documents and communications regarding Arm's strategy or plans for communications with Qualcomm regarding the delivery of ██████████.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians related to or concerning Arm's communications with Qualcomm regarding the delivery of ██████████ under the Qualcomm ALA. Arm has also produced documents responsive to this Request in *Arm v. Qualcomm*.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or

immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects that this Request assumes factual conclusions.

**REQUEST FOR PRODUCTION NO. 31:**

All Documents and Communications related to or concerning each ACK patch released since June 1, 2022, including documents related to the development process for each patch, the timeline for development, and each version of the Arm Architecture that the patch corresponds to.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Subject to its General Objections and any specific objections set forth below, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show the development process for each ACK patch released since June 1, 2022 to April 18, 2024.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable

36

privilege or immunity. Arm objects to this Request because the phrases "development process" and "timeline for development" are vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 32:**

All Documents and Communications related to or concerning the delivery of ACK patches to any ALA partner other than Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as delivery of ACK patches to third parties. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

37

**REQUEST FOR PRODUCTION NO. 33:**

All Documents and Communications concerning OOB tests, including the development process for OOB tests, the timeline to configure the ACK through the use of OOB tests, and any manuals or presentations describing the use of OOB tests with the ACK.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Subject to its General Objections and any specific objections set forth below, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show the development process for OOB tests and the use of OOB tests with the ACK.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the phrases "development process," "timeline to configure the ACK," and "manuals or presentations" are vague, ambiguous, and undefined.

38

**REQUEST FOR PRODUCTION NO. 34:**

All Documents and Communications concerning any negotiations that Arm had with TLA licensees (including Third Parties) ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████ including but not limited to price quotes, license fees, licensing term limits, or other language to include in TLA Annexes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as documents concerning negotiations with third party licensees. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable

39

privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive regarding negotiation between ARM and TLA licensees. Arm objects to this Request because the phrases "TLA licensees" and "other language to include in the TLA Annexes" are vague, ambiguous, and undefined.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show the identity of Arm's licensees for the ███████████████████████ cores.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as documents concerning negotiations with third party licensees. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client

privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive regarding negotiation between ARM and TLA licensees. Arm objects to this Request because the phrases "TLA licensees" and "other language to include in the TLA Annexes" are vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents and Communications related to or concerning Arm's October 22, 2024 letter to Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians related to or concerning Arm's October 22, 2024 letter.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other

41

source that is more convenient, less burdensome, or less expensive regarding Arm's October 22, 2024 letter to Qualcomm. Arm objects to this Request as duplicative of Request for Production No. 16.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents and Communications related to or concerning Arm's sharing of the October 22, 2024 letter with Third Parties, including but not limited to Arm's decision to share the letter with Third Parties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians related to or concerning Arm's sharing of the October 22, 2024 letter with Third Parties.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request as duplicative of Request for Production Nos. 17 and 35.

A0050

**REQUEST FOR PRODUCTION NO. 37:**

All Documents and Communications related to or concerning internal discussions of licensing v10 of the Arm ISA to Qualcomm, including discussions regarding whether to withhold v10 and potential pricing for v10.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as documents relating to v10 of the Arm ISA. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable,

43

proportional, and targeted search through the use of search terms and custodians related to or concerning internal discussions of licensing v10 of the Arm ISA to Qualcomm.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

**REQUEST FOR PRODUCTION NO. 38:**

All Documents and Communications concerning or related to Arm's January 8, 2025 letter to Qualcomm withdrawing the notice of termination of the Qualcomm ALA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians concerning or related to Arm's January 8, 2025 letter to Qualcomm.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the

44

requested subject matter. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

**REQUEST FOR PRODUCTION NO. 39:**

All Documents and Communications concerning or related to withholding ███ ██████████ from Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians concerning or related to withholding ███████████ from Qualcomm.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the term "withholding" is vague, ambiguous, and undefined. Arm objects that this Request assumes factual conclusions. Arm objects to this Request to the extent that it seeks information that would be cumulative of information produced elsewhere.

**REQUEST FOR PRODUCTION NO. 40:**

All Documents and Communications concerning Arm's discussions with Qualcomm regarding licensing of the ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

including discussions regarding potentially withholding any of the listed items, pricing of the items, and any potential restrictions related to the use of the items in Qualcomm's products, including in any chips that contained designs or source code that originated at Nuvia.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client

privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search through the use of search terms and custodians concerning Arm's discussions with Qualcomm regarding licensing of the ████████████ ██████ cores.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other

47

**A0055**

applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

**REQUEST FOR PRODUCTION NO. 41:**

All Documents and Communications concerning the decision not to provide Qualcomm with information or documents related to the configuration or enablement of the ETE Instr Trace Chkr Module Src Armv9-A, including but not limited to communications regarding Qualcomm's requests for delivery of the ETE Instr Trace Chkr Module Src Armv9-A.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians concerning the decision not to provide Qualcomm with information or documents related to the configuration or enablement of the ETE Instr Trace Chkr Module Src Armv9-A.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from

48

disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the phrases "decision not to provide Qualcomm with information or documents" and "configuration and enablement" are vague, ambiguous, and undefined. Arm objects that this Request assumes factual conclusions.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents and Communications concerning the decision to introduce the v9 Architecture, including but not limited to the timing and reasoning for Arm's decision to move from v8 to v9 Architecture within the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from

49

disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show the timing of the introduction of Arm's v9 architecture, and differences between Arm's v8 and v9 Architecture.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order.

**REQUEST FOR PRODUCTION NO. 43:**

All Documents and Communications concerning the decision to introduce the v10 Architecture, including the timing and reasoning for Arm's decision to move from v9 to v10 Architecture and the differences between the v9 and v10 Architecture within the relevant time period.

A0058

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show Arm's current plans for Arm's v10 Architecture, timing of the release of Arm's v10 Architecture, and contemplated differences between Arm's v9 and v10 Architecture.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly

51

burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents and Communications concerning the addition of instructions between v8 and v9 of the Arm ISA, and between v9 and v10 of the Arm ISA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order.

A0060

Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the phrase "addition of instructions between v8 and v9 of the Arm ISA, and between v9 and v10 of the Arm ISA" is vague, ambiguous, and undefined.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show the differences between v8 and v9 of the Arm ISA, and the contemplated differences between v9 and v10 of the Arm ISA.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the phrase "addition

53

**A0061**

of instructions between v8 and v9 of the Arm ISA, and between v9 and v10 of the Arm ISA" is vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 45:**

All Documents and Communications concerning Arm's analysis of whether v9 met the contractual definition of ██████ as defined at ██████████ of the Qualcomm ALA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the phrase "analysis" is vague, ambiguous, and undefined. Arm objects to this Request to the extent it seeks a legal conclusion.

**REQUEST FOR PRODUCTION NO. 46:**

All Documents and Communications concerning " ███████  as defined at ██████

███  of the Qualcomm ALA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians concerning " ██████ " as defined at ████████ of the Qualcomm ALA.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are

obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request to the extent it seeks a legal conclusion.

**REQUEST FOR PRODUCTION NO. 47:**

Organizational charts for Arm's engineering, verification, product management, Intellectual Property Group, Internet of Things, and business departments, including names of sub-unit or team within a department and the names of leadership of each department and any sub-unit or team within a department.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Subject to its General Objections and any specific objections set forth below, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show organizational charts for Arm's engineering, verification, product management, Intellectual Property Group, Internet of Things, and business departments for the relevant time period.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request because the phrase "business departments" is vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 48:**

All minutes or records of Arm's Technology Advisory Board meetings for the past 10 years, including documents sufficient to show the dates of each meeting, the attendees, and the matters discussed.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the terms "minutes" and "records" are vague, ambiguous, and undefined.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search regarding summaries of Arm's Technology Advisory Board meetings for the past 10 years.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the terms "minutes" and "records" are vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 49:**

All Documents and Communications related to or concerning Qualcomm's notices of Arm's breach of █████████████ of the Qualcomm TLA, sent to Arm on September 20, 2024 and September 27, 2024.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request because the terms "breach" is vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request for Production No. 50.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search through the use of search terms and custodians related to or concerning Qualcomm's notices of Arm's alleged breach of ████████████ of the Qualcomm TLA.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request because the terms "breach" is vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request for Production No. 50.

**REQUEST FOR PRODUCTION NO. 50:**

All Documents and Communications related to or concerning Qualcomm's notices of Arm's breach of ▬▬▬▬▬▬ of the Qualcomm TLA, sent to Arm on September 20, 2024 and September 27, 2024.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to

60

**A0068**

this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects that this Request assumes factual conclusions. Arm objects to this Request as duplicative of Request for Production No. 49.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search through the use of search terms and custodians related to or concerning Qualcomm's notices of Arm's alleged breach of ███████████ of the Qualcomm TLA.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less

61

expensive. Arm objects that this Request assumes factual conclusions. Arm objects to this Request as duplicative of Request for Production No. 49.

**REQUEST FOR PRODUCTION NO. 51:**

All Documents and Communications related to or concerning Arm's October 22, 2024 letter to Qualcomm regarding Arm's breach of ▮▮▮▮▮▮▮▮ of the Qualcomm TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects that this Request assumes factual conclusions.

A0070

**REQUEST FOR PRODUCTION NO. 52:**

Documents sufficient to show every ALA and TLA provided or made available to Nvidia or its counsel as part of Nvidia's planned acquisition of Arm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

A0071

Dated: June 17, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

64

**A0072**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 17, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
ejmorgan@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A0073**

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A0074**

# Exhibit 8

A0075

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
  Delaware corporation

      Plaintiffs,

    v.

ARM HOLDINGS PLC, f/k/a, ARM LTD.
  a U.K. corporation

      Defendant.

C.A. No. 24-490-MN

### DEFENDANT ARM HOLDINGS PLC'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' NOTICE OF 30(b)(6) DEPOSITION

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Arm Holdings PLC ("Arm"), hereby objects and responds to the 30(b)(6) Deposition Notice to Arm, which was served by Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc., (collectively, "Plaintiffs" or "Qualcomm"), on June 13, 2025 ("30(b)(6) Notice").

### GENERAL OBJECTIONS

The following General Objections to the 30(b)(6) Notice are incorporated into each of Arm's responses to the specific topics provided in the 30(b)(6) Notice ("Topics"), as if fully stated therein, regardless of whether the General Objections are incorporated specifically into the specific responses below. The failure to mention any of the following General Objections in the specific responses below shall not be deemed a waiver of such General Objection.

1.      Arm incorporates by reference its objections to Qualcomm's First and Second Set of Interrogatories and to Qualcomm's First, Second, Third, Fourth, and Fifth Sets of Requests for Production as if fully set forth herein.

2.      Nothing in these Responses should be construed as waiving rights or objections that might otherwise be available to Arm, nor should Arm's Responses to any of these Topics be deemed an admission of relevance, materiality, or admissibility in evidence of the Topic or the response thereto.

3.      Arm objects to each Topic to the extent a Topic seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections. Such information will not be provided.  Any inadvertent disclosure of such information shall not constitute a waiver of any privilege, right, or ground for objecting to providing such information and shall not waive Arm's right to object to the use of such information.

4.      Arm objects to each Topic to the extent it seeks information that is not relevant to issues in this litigation or is not reasonably calculated to lead to the discovery of relevant and admissible information.

5.      Arm objects to each Topic and the Definitions set forth in the 30(b)(6) Notice ("Definitions") to the extent they are inconsistent with or seeks to impose obligations beyond those imposed by the Federal Rules of Civil Procedure, Local Rules, or any order of the Court.

6.      Arm objects to the Definitions set forth in the 30(b)(6) Notice to the extent they alter the plain meaning of any specific deposition Topic, on the ground that such alteration renders the deposition topic vague, ambiguous, and overbroad.  Arm's responses to any such Topics shall not be construed as an admission, agreement, or acquiescence to any such definition.

7.      Arm objects to the definition of "ACK" as overbroad and vague and ambiguous to the extent it defines the term as meaning "Arm's Architecture Compliance Kit or Arm's Architecture Validation Suite or Arm's Architecture Compliance Suite."

2

8.      Arm objects to the definition of "ALA" as overbroad and vague and ambiguous to the extent it defines Architecture License Agreement to include "all amendments and annexes to any such agreement," including Architecture License Agreements, amendments, and annexes not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case.

9.      Arm objects to the definition of "ARM Architecture Reference Manual" as overbroad and vague and ambiguous to the extent it fails to identify which version(s) of "the ARM Architecture Reference Manual for A-profile architecture released" is part of this definition.

10.     Arm objects to the definition of ███████████ as overbroad and vague and ambiguous to the extent it defines the term by reference to the definition of that term in "███████ ████████████████████████████████████████████████████ ███████████████████

11.     Arm objects to the definition of "Concerning" as vague, overbroad, unduly burdensome, including because the definition is circular and because the definition includes contradictory subparts.

12.     Arm objects to the definition of "Plaintiff" as vague as to the terms "principals," representatives," and "agents," and overbroad and unduly burdensome to the extent it includes all Qualcomm principals, employees, representatives, agents, and officers.  Arm will construe "Plaintiff" to refer to Qualcomm Inc. and Qualcomm Technologies, Inc.

13.     Arm objects to the definition of "OOB" as vague as to the term "Out of Box tests."

14.     Arm objects to the definitions of "Defendant," "Arm," "you," and "your" as overly broad and unduly burdensome to the extent they purport to require Arm to provide information that is not within the possession, custody, or control of Arm Holdings PLC, or to otherwise respond

3

on behalf of third parties, at least because these definitions include entities that have no relation to the present litigation.  Arm will construe "Defendant," "Arm," "you," and "your" to refer to Arm Holdings plc.

15.    Arm objects to Qualcomm's definition of "TLA" as overbroad and vague and ambiguous to the extent it defines Technology License Agreement to include "all amendments and annexes to any such agreement."

16.    Arm objects to the definitions of "Third Party" or Third Parties" as vague as to the term "Person" and overbroad and unduly burdensome to the extent "any Person other than Plaintiffs and Defendant," including "Person[s]" not relevant to any party's claim or defense in this case.

17.    Arm objects to the definition of "Linaro" as vague as to the terms "affiliates," "partners," "principals," "representatives," "agents," "Persons," "entities," and "purport."  Arm further objects to the definition of "Linaro" as overbroad and unduly burdensome to the extent it includes Linaro Ltd., Linaro Inc., and Linaro Sweden's "predecessors, successors, affiliates, subsidiaries, parents, assignees, joint venturers, partners, principals, employees, representatives, agents, officers, trustees, directors, attorneys, and all other Persons or entities acting or purporting to act on their behalf."

18.    Arm objects to the definition of "Linaro Core Member" as vague as to "member organization of Linaro" and "Part 3 of the Articles of Association of Linaro Limited," which does not identify any "members." Arm further objects to the definition of "Linaro Core Member" as overbroad and unduly burdensome to the extent the definition includes "any member organization," including member organizations not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case.

4

19. Arm objects to the definition of "Linaro Next" as vague as to the terms "proposal," "regarding," "restructuring," "drafts," and "other versions." Arm further objects to this definition as overbroad and unduly burdensome to the extent it seeks "any drafts or other versions of the proposal." Arm further objects to this definition to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections.

20. Arm objects to each Topic to the extent a Topic is unduly burdensome, especially to the extent they seek information unrelated to Qualcomm's claims, and/or to the extent the burden of producing such information outweighs any likely benefit.

21. Arm objects to each topic to the extent it seeks testimony such that preparing a witness would place an undue burden on Arm not commensurate with any relevance of the information sought to this case.

22. Arm objects to each Topic to the extent a Topic is vague, ambiguous, or worded in a manner such that they do not describe with reasonable particularity the matters on which examination is requested. Arm further objects to each and every Topic as vague and ambiguous to the extent a Topic includes undefined terms.

23. Arm objects to each Topic to the extent a Topic is unlimited in temporal and/or geographic scope, or to the extent it calls for testimony in violation of an applicable foreign law or regulation.

24. Arm objects to each Topic to the extent a Topic seeks information that is not within the possession, custody, or control of Arm. An objection on this ground does not constitute a representation or admission that such information exists or may be discovered from another source.

5

25.    Arm objects to each Topic to the extent that a Topic calls for information that is in the public domain and therefore of no greater burden for Qualcomm to obtain than for Arm to obtain.

26.    Arm objects to each Topic to the extent that a Topic seeks information that is subject to existing or continuing confidentiality agreements or obligations with third parties that Arm is not permitted to disclose or information that would be illegal for Arm to disclose pursuant to any applicable laws.

27.    Arm objects to each Topic to the extent a Topic calls for testimony regarding Arm's contentions in this case, which is not permitted in this District. *See, e.g., Chalumeau Power Sys. LLC v. Alcatel-Lucent USA, Inc.*, No. 11-1175-RGA, Tr. at 27-28 (D. Del. Oct. 4, 2013) ("[C]ontention depositions are not fair to whomever's being asked to formulate these things."); *Medicis Pharm. Corp. v. Actavis Mid Atlantic LLC*, No. 11-409-LPS-CJB, Tr. at 40-44 (D. Del. Sept. 28, 2012) (denying a request to require plaintiffs to put forward a 30(b)(6) witness on contention topics related to secondary considerations of non-obviousness).

28.    Arm objects to each Topic to the extent a Topic calls for legal conclusions.

29.    Arm objects to each Topic to the extent a Topic seeks testimony from fact witnesses that is more appropriately reserved for expert opinions.

30.    Arm's responses to these Topics are made without in any way waiving (a) the right to object to the use of any information provided herein as evidence in any subsequent proceeding in this action or any other action on the grounds of competency, relevancy, materiality, privilege, or other grounds of admissibility; or (b) the right to object on any ground to other discovery requests involving or relating to the subject matter of these Topics.

6

31. Arm's responses are not an indication or admission by Arm of the relevancy, materiality, or admissibility thereof, and Arm hereby reserves all objections to Qualcomm's use of such responses and any testimony that is elicited relating to the subject matter of such topics.

32. Arm reserves the right to revise, amend, supplement, or clarify its responses to any and all Topics at a later date.

Subject to and without waiving the foregoing General Objections and the more specific objections and responses set forth below, Arm responds as follows:

## SPECIFIC OBJECTIONS AND RESPONSES TO DEPOSITION TOPICS

**TOPIC NO. 1:**

Arm's Answer and any defenses or counterclaims asserted by Arm.

**RESPONSE TO TOPIC NO. 1:**

Arm objects to this Topic to the extent it vague and ambiguous to the extent it fails to provide with reasonable particularity the matters to be examined regarding the "Answer and any defenses or counterclaims asserted by Arm." Arm further objects to this Topic to the extent it calls for testimony regarding Arm's contentions in this case, which is not permitted in this District, and to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections.

Arm will not provide a witness regarding this Topic.

**TOPIC NO. 2:**

Arm's negotiations of any license agreements, including ALAs, TLAs, and any annexes or amendments thereto, since January 1, 2019, including Arm's negotiation of any such license agreement regardless of whether such license agreement was ultimately executed.

**RESPONSE TO TOPIC NO. 2:**

Arm objects to this Topic as overbroad and unduly burdensome because it seeks information concerning "negotiations of any license agreements, including ALAs, TLAs, and any

7

**A0082**

annexes or amendments thereto," including Arm's negotiation of "any" such agreements not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections.

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm and regarding Arm's "negotiations of any license agreements, ALAs, TLAs, and any annexes or amendments thereto, since January 1, 2019" between Arm and Qualcomm.

**TOPIC NO. 3:**

The Qualcomm ALA, including, without limitation:

a. The drafting, negotiation, interpretation, and construction of the Qualcomm ALA and any amendments or annexes thereto,

b. Arm's understanding of the technologies covered or intended to be covered by the term "███," as defined at ███ of the Qualcomm ALA,

c. Discussion of the term "███" as defined at ███ of the Qualcomm ALA at Arm, including discussions regarding whether future architecture versions beyond v9 are encompassed by the definition,

d. Arm ███" including the technology and deliverables included therein, as that term is used in Arm's ALAs, and sections governing verification, delivery, support, and any remedies for failure to deliver ███ in any Third Party ALAs,

e. ARM Technology licensed under the Qualcomm ALA, including but not limited to the ARMv8-A Architecture Reference Manual, ETMv4 Architecture Specification, AVS, ACK, ETMv4 Instr Trace Checker Module Source, NTBSS ARMv8-A Crypto Extension, ETE Instr Trace Chkr Module Src Armv9-A, System MMU Architecture Specifications, and System MMU Compliance Kit, including development timelines, responsible individuals, related documentation, items included in packages available for download, and decisions related to the ███ design and delivery,

f. ███ provided by Arm to Qualcomm under the Qualcomm ALA.

8

**RESPONSE TO TOPIC NO. 3:**

Arm objects to this Topic as vague as to the terms "technology," "future architecture versions," "deliverables," "verification," "support," "development timelines," "responsible individuals," and "related documentation." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning the drafting, negotiation, interpretation, and construction of "any amendments or annexes" to the Qualcomm ALA and to the extent it seeks information concerning "any Third Party ALAs," including amendments, annexes, and Third Party ALAs not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it calls for legal conclusions, including as to the "interpretation" and "construction" of a legal document or a legal term therein. Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections. Arm further objects to the characterizations in this Topic of certain terms of the Qualcomm ALA, including "███████," ████████████ ███████████ and ████████

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm and regarding factual aspects of the Qualcomm ALA that are relevant to the claims and defenses in this case, the drafting and negotiation of the Qualcomm ALA, and Arm's understanding of certain terms and provisions of the Qualcomm ALA, including "███████ ████████████████████

**TOPIC NO. 4:**

Arm's withholding from Qualcomm, including without limitation,

    a. Arm's withholding of ACK patches or OOBs, and

9

b. Arm's withholding from Qualcomm of any technology, documentation, support, verification, products, or ███████████████████ as those terms are defined in the Qualcomm ALA and Annexes.

**RESPONSE TO TOPIC NO. 4:**

Arm objects to this Topic as Arm has not "withh[eld]" anything from Qualcomm to which Qualcomm was entitled, including for the reasons explained in Arm's response to Qualcomm Interrogatory Nos. 1, 5, and 10.  Arm further objects to this Topic as vague as to the terms "withholding," "patches," "technology," "documentation," "support," verification," and "products."  Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning "any technology, documentation, support, verification, products, or ███████████████ including technology, documentation, support, verification, products, or ████████████████ not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case.

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding Arm's provision of materials and support to Qualcomm under the Qualcomm ALA.

**TOPIC NO. 5:**

Arm's efforts to terminate the Qualcomm ALA, including without limitation,

a. Arm's decision to assert that Qualcomm was in breach of the ALA, including the timing and circumstances of that decision, and

b. Arm's communications with and retention of any public relations firms in relation to the Qualcomm ALA.

10

**RESPONSE TO TOPIC NO. 5:**

Arm objects to this Topic as vague as to the terms "terminate," "decision," "circumstances," "communications," "retention," "in relation to" and "public relations firm." Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections.

Subject to and without waiving its General Objections, Definition Objections, and Specific Objections, Arm will  make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding Arm's decision to send Qualcomm a notice of breach of the Qualcomm ALA and Arm's communications with public relations firms regarding the same, if any.

**TOPIC NO. 6:**

The Qualcomm TLA, including, without limitation, the drafting, negotiation, interpretation, and construction of the Qualcomm TLA and any amendments or annexes thereto.

**RESPONSE TO TOPIC NO. 6:**

Arm objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning the "drafting, negotiation, interpretation, and construction" of "any amendments or annexes" to the Qualcomm TLA, including amendments and annexes not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it seeks information that is at least as available to Qualcomm as it is to Arm. Arm further objects to this Topic to the extent it calls for legal conclusions, including as to the "interpretation" and "construction" of a legal document or a legal term therein. Arm further objects to this Topic to the extent it seeks information protected by the

11

attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections.

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding factual aspects of the Qualcomm TLA that are relevant to the claims and defenses in this case and the drafting and negotiation of the Qualcomm TLA.

**TOPIC NO. 7:**

Arm's ALAs with third parties, including, without limitation:

a. The drafting, negotiation, interpretation, and construction of Arm's ALAs with third parties and any amendments or annexes thereto,

b. Negotiations or discussions with third-party ALA licensees regarding Arm v9, and

c. Negotiations or discussions with third-party ALA licensees regarding Arm v10, including ███████████████████████████.

**RESPONSE TO TOPIC NO. 7:**

Arm objects to this Topic as vague as to the distinction, if any, between "third parties" and "Third Party." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning the drafting, negotiation, interpretation, and construction of ARM's ALAs with unspecified third parties and "any amendments or annexes thereto" and "any ████████████████████████████████ including amendments, annexes, agreements, and third parties not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it calls for legal conclusions, including as to the "interpretation" and "construction" of a legal document or a legal term therein. Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable

12

privileges and protections.  Arm further objects to this Topic to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not provide information about any such documents absent agreement of the third party(ies) or Court Order.  Arm further objects to this Topic to the extent it seeks information that is the subject of a motion for a protective order pending before the Court.

Arm will not provide a witness regarding this Topic.

**TOPIC NO. 8:**

Arm's TLAs with third parties, including, without limitation:

a. The drafting, negotiation, interpretation, and construction of the TLAs and any amendments or annexes thereto, and the pricing of those TLAs,

b. Complaints or other feedback from Arm's customers relating to the licensing or pricing of Arm Implementation Cores offered under its TLAs or the peripheral IP offered under the same, or the support provided under those TLAs, and

c. Arm's policies and practices regarding TLA licensing offers and annex renewal offers, including the timing and pricing considerations thereof.

**RESPONSE TO TOPIC NO. 8:**

Arm objects to this Topic as vague as to the terms "other feedback," "Arm Implementation Cores," "peripheral IP," "support," "policies," "practices," "regarding," and "considerations." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning the drafting, negotiation, interpretation, and construction of TLAs with unspecified third parties and "any amendments or annexes thereto," including amendments, annexes, and third parties not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case.  Arm further objects to this Topic to the extent it calls for legal conclusions, including as to the "interpretation" and "construction" of a legal document or a legal term therein.  Arm further objects to this Topic to the extent it seeks information protected

13

**A0088**

by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections. Arm further objects to this Topic to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not provide information about any such documents absent agreement of the third party(ies) or Court Order.

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding Arm's licensing of the ███████████████ cores, including pricing, and Arm's practices and policies relating thereto.

**TOPIC NO. 9:**

Arm licenses, other than TLAs, whereby Arm licenses Arm Implementation Cores, including:

    a.  Arm's evaluation licenses or "Limited Use Licenses," including how Arm determines whether to provide those licenses and Qualcomm's request for an evaluation license for CPUs codenamed ████████████████;

    b.  Agreements licensing Arm Implementation Cores codenamed █████████████ ██████ including licensing fee and royalty information.

**RESPONSE TO TOPIC NO. 9:**

Arm objects to this Topic as vague as to the terms "licenses," "Arm Implementation Cores," "evaluation licenses," and "royalty information." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning unspecified "licenses." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information related to licenses for "CPUs codenamed ███████████████ which are beyond the scope of this action. Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product

14

**A0089**

doctrine, or any other applicable privileges and protections. Arm further objects to this Topic to the extent it fails to describe with reasonable particularity the matters to be examined regarding various Arms licenses. Arm further objects to this Topic to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not provide information about any such documents absent agreement of the third party(ies) or Court Order.

Arm will not provide a witness for this Topic.

**TOPIC NO. 10:**

Delivery of architecture errata for ARM Implementation Cores to Arm partners, including whether it was withheld from partners.

**RESPONSE TO TOPIC NO. 10:**

Arm objects to this Topic as vague as to the terms "delivery," "architecture errata," "ARM Implementation Cores," "Arm partners," and "withheld." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning unspecified "partners." Arm further objects to this Topic to the extent it seeks information not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it fails to describe with reasonable particularity the matters to be examined regarding "delivery of architecture errata for ARM Implementation Cores to Arm partners" beyond "whether it was withheld from partners."

Arm will not provide a witness on this Topic.

**TOPIC NO. 11:**

█████████████████████████████████████████████████████
███████████ licensed by Qualcomm that was released or distributed (internally or otherwise) since June 1, 2022.

15

**RESPONSE TO TOPIC NO. 11:**

Arm objects to this Topic as vague as to the terms

and

"distributed (internally or otherwise)." Arm further objects to this Topic to the extent it seeks information not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it fails to describe with reasonable particularity the matters to be examined regarding

by Qualcom".

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding Arm's provision of materials and support to Qualcomm under the Qualcomm ALA.

**TOPIC NO. 12:**

Complaints or other feedback from Arm customers regarding Arm's delivery or withholding of deliverables (including ACK patches), or ⬛⬛⬛⬛⬛, as those terms are defined in Arm's ALAs.

**RESPONSE TO TOPIC NO. 12:**

Arm objects to this Topic's mischaracterization of "ACK patches" as "deliverables … as those terms are defined in Arm's ALAs." Arm further objects to this Topic as vague as to the terms "other feedback," "Arm customers," "regarding," "delivery," "withholding," "deliverables," and "patches." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning unspecified "customers," "deliverables," ⬛⬛⬛⬛ ⬛⬛⬛⬛ and "ALAs," including those that are not relevant to any party's claim or defense in this action and/or not proportional to the needs of the case. Arm further objects to this Topic as

16

**A0091**

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information regarding what Arm provided licensees other than Qualcomm under or relating to license agreements to which Qualcomm is not a party.

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding Arm's provision of materials and support to Qualcomm under the Qualcomm ALA.

**TOPIC NO. 13:**

Qualcomm's ACK and OOB tests, and any patches thereto.

**RESPONSE TO TOPIC NO. 13:**

Arm objects to this Topic as vague as to the term "patches" regarding "OOB tests." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning "any patches" of Qualcomm's ACK and OOB tests, including patches not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it seeks information that is at least as available to Qualcomm as it is to Arm.

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding ACK and OOB tests for Qualcomm, if any, and Arm's provision to Qualcomm of patches thereto, if any.

**TOPIC NO. 14:**

ACKs, ACK patches, and OOB tests provided to partners other than Qualcomm on or after June 1, 2022, including dates of delivery, identity of partners, and information or documentation contained in the packages provided to the partners.

17

**RESPONSE TO TOPIC NO. 14:**

Arm objects to this Topic as vague as to the term "patches," "partners," "delivery," "information," "documentation," and "packages." Arm further objects to this Topic to the extent it seeks information that is more readily accessible through other means of discovery, including information concerning "documentation." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning unspecified "partners" and "packages provided to the partners," including "partners" and "packages" not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information regarding what Arm provided licensees other than Qualcomm under or relating to license agreements to which Qualcomm is not a party.

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding Arm's provision of quarterly ACK releases to its ALA partners, including Qualcomm.

**TOPIC NO. 15:**

The release and delivery of the ACK, OOB tests, and patches generally to ALA partners, including but not limited to how Arm determines when a partner should receive the aforementioned items and Arm's development efforts and the resources devoted to those efforts.

**RESPONSE TO TOPIC NO. 15:**

Arm objects to this Topic as vague as to the term "release," "delivery," "patches," "partners," "development efforts," and "resources." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning unspecified "partners," including partners not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic as overbroad, unduly burdensome, and

18

not proportional to the needs of the case to the extent it seeks information regarding what Arm provided licensees other than Qualcomm under or relating to license agreements to which Qualcomm is not a party.

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding Arm's provision of the ACK, including ACK patches and quarterly ACK releases, to its ALA partners, and Arm's provision of OOBs to its ALA partners.

**TOPIC NO. 16:**

Arm's licensing and pricing for (a) its ███████████████████████████, and (b) peripheral IP offered under TLAs, including but not limited to ████████████████
████



**RESPONSE TO TOPIC NO. 16:**

Arm objects to this Topic as vague as to the term ██████████████████████
██████ and "peripheral IP." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning unspecified "TLAs," including TLAs not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning ███████████████████ products, as those products are beyond the scope of this case.

Arm will not provide a witness on this Topic.

**TOPIC NO. 17:**

Arm's decision not to participate in the verification of Qualcomm's custom CPUs, including:

19

a. Arm's decision to withhold any and all licenses, information, documentation, deliverables, technology, and support from Qualcomm on or after June 1, 2022, including, who was responsible for that decision (or decisions), and

b. Qualcomm's notices of failure to deliver, sent to Arm on November 3, 2022, and December 5, 2022, and Arm's responses thereto.

**RESPONSE TO TOPIC NO. 17:**

Arm objects to this Topic as containing several mischaracterizations including "Arm's decision not to participate in the verification of Qualcomm's custom CPUs," "Arm's decision to withhold any and all licenses, information, documentation, deliverables, technology, and support from Qualcomm," and "Qualcomm's notices of failure to deliver." Arm has not "withh[eld]" anything from Qualcomm to which Qualcomm was entitled, including for the reasons explained in Arm's response to Qualcomm Interrogatory Nos. 1, 5, and 10. Arm further objects to this Topic as vague as to the terms "participate," "custom CPUs," "withhold," "documentation," "deliverables," "technology," and "support." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning "any and all licenses, information, documentation, deliverables, technology, and support," including those not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections.

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding Arm's provision of materials and support to Qualcomm under the Qualcomm ALA and Arm's responses to Qualcomm's November 3, 2022 and December 5, 2022 letters.

20

**A0095**

**TOPIC NO. 18:**

Qualcomm's April 2024 requests to renew its licenses for Cortex-A720 codenamed "██████" and Cortex-A520 codenamed "██████" including Arm's decision not to respond to those requests.

**RESPONSE TO TOPIC NO. 18:**

Arm objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections. Arm further objects to this Topic to the extent it fails to describe with reasonable particularity the matters to be examined regarding "Qualcomm's April 2024 requests to renew its licenses for Cortex-A720…and Cortex-A520" beyond "Arm's decision not to respond to those requests."

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding the Arm's licensing of the ██████████ cores to Qualcomm.

**TOPIC NO. 19:**

Qualcomm's August 2024 request to renew its license for Cortex-M55 codenamed "██████" including Arm's response and actions taken in response, and Arm's decision not to respond to Qualcomm's request.

**RESPONSE TO TOPIC NO. 19:**

Arm objects to this Topic as vague as to the term "actions." Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections. Arm further objects to this Topic to the extent it fails to describe with reasonable particularity the matters to be examined regarding "Qualcomm's August 2024 request to renew its license for

21

Cortex-M55" beyond "Arm's response and actions taken in response, and Arm's decision not to respond to Qualcomm's request."

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding Arm's licensing of the ███ core to Qualcomm.

**TOPIC NO. 20:**

Arm's offers to Qualcomm for Cortex-A720 codenamed "████," Cortex-A520 codenamed "████," and Cortex-M55 codenamed "████," including but not limited to ████ ████████████████████████████████████████ Arm's analysis of impact to Arm revenues if Qualcomm accepted those offers and Arm's analysis of impact to Qualcomm if Qualcomm accepted those offers.

**RESPONSE TO TOPIC NO. 20:**

Arm objects to this Topic as vague as to the terms "efforts," "investigate," "third party," and "impact." Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections. Arm further objects to this Topic to the extent it fails to describe with reasonable particularity the matters to be examined regarding "Arm's offers to Qualcomm Cortex-A720…Cortex-A520…and Cortex-M55" beyond ████████████████ ████████████████████████████ Arm's analysis of impact to Arm revenues if Qualcomm accepted those offers and Arm's analysis of the impact to Qualcomm if Qualcomm accepted those offers." Arm further objects to this Topic as overbroad and unduly burdensome because it seeks information concerning "Arm's analysis of impact to Arm revenues if Qualcomm accepted those offers and Arm's analysis of impact to Qualcomm if Qualcomm accepted those offers," which is not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the

22

extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not provide information about any such documents absent agreement of the third party(ies) or Court Order.

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm offers to Qualcomm for the ███████████████████████████████████████████████ ████████████████████████████████████

**TOPIC NO. 21:**

Qualcomm's notices of Arm's breach of ██████████████ of the Qualcomm TLA, sent to Arm on September 20, 2024, and September 27, 2024, and Arm's responses thereto.

**RESPONSE TO TOPIC NO. 21:**

Arm objects to this Topic to the extent it seeks information that is at least as available to Qualcomm as it is to Arm. Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections. Arm further objects to this Topic to the extent it fails to describe with reasonable particularity the matters to be examined regarding "Qualcomm's notices of Arm's breach…and Arm's responses thereto".

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding the contents of Qualcomm's notices dated September 20, 2024 and September 27, 2024 regarding Arm's alleged breach of the TLA, and Arm's responses to Qualcomm regarding those notices.

23

A0098

**TOPIC NO. 22:**

Arm's offers to Qualcomm to license Cortex-A720 codenamed "█████," Cortex- A520 codenamed "█████," and Cortex-M55 codenamed "█████," post-dating Arm's October 23, 2024 letter to Qualcomm, including but not limited to the pricing and non-financial terms of the offers.

**RESPONSE TO TOPIC NO. 22:**

Arm objects to this Topic as vague as to the term "non-financial terms." Arm further objects to this Topic to the extent it seeks information that is at least as available to Qualcomm as it is to Arm. Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections. Arm further objects to this Topic to the extent it fails to describe with reasonable particularity the matters to be examined regarding "Arm's offers to Qualcomm to license Cortex-A720…Cortex-A520…and Cortex-M55" beyond "pricing and non-financial terms." Arm further objects to this Topic to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not provide information about any such documents absent agreement of the third party(ies) or Court Order.

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding Arm's offers to Qualcomm to license the █████████████████ cores after Arm's October 23, 2024 letter to Qualcomm, including the pricing and non-financial terms of the offers.

**TOPIC NO. 23:**

Arm's Technical Advisory Board Meetings and Arm Partner Meetings, including topics discussed, attendees, materials distributed, and any improvements Qualcomm suggested for Arm's off-the-shelf TLA cores or the Arm Architecture, and Arm's actions.

24

A0099

**RESPONSE TO TOPIC NO. 23:**

Arm objects to this Topic as vague as to the terms "topics," "materials distributed," "improvements," "Arm Architecture," "off-the-shelf TLA cores," and "actions." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning unspecified "Technical Advisory Board Meetings" and "Arm Partner Meetings" and "any improvements Qualcomm suggested," including meetings and suggestions not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections.

Arm will not provide a witness on this Topic.

**TOPIC NO. 24:**

Arm's response or any action taken in response to Qualcomm's May 20, 2020 email electing to extend the ███████ of the Qualcomm ALA and to negotiate the terms of the extension, including any decision not to respond.

**RESPONSE TO TOPIC NO. 24:**

Arm objects to this Topic as vague as to the term "action." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning "any action," including actions not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections.

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's

25

possession, custody or control that is known or reasonably available to Arm regarding Qualcomm's May 20, 2020 email purporting to extent the Qualcomm ALA.

**TOPIC NO. 25:**

Arm's current and future business plans for licensing Arm's architecture, technology, and other intellectual property.

**RESPONSE TO TOPIC NO. 25:**

Arm objects to this Topic as vague as to the terms "business plans," "architecture," "technology," and "other intellectual property." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning unspecified "current and future business plans," including plans not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it fails to describe with reasonable particularity the matters to be examined regarding "Arm's current and future business plans for licensing Arm's architecture, technology, and other intellectual property."

Arm will not provide a witness on this Topic.

**TOPIC NO. 26:**

Arm's development of and pricing strategy for v9 of the Arm ISA or Arm- developed cores containing v9 Technology, including but not limited to the rationale for any price increase over prior versions of the Arm ISA.

**RESPONSE TO TOPIC NO. 26:**

Arm objects to this Topic as vague as to the terms "development," "pricing strategy," "Arm-developed cores," and "v9 Technology." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning "any price increase," including price increases not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it fails to

26

describe with reasonable particularity the matters to be examined regarding "Arm's development of and pricing strategy for v9 of the Arm ISA or Arm- developed cores containing v10 Technology" beyond "the rationale for any price increase over prior versions of the Arm ISA."

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding Arm's development of v9 of the Arm ISA.

**TOPIC NO. 27:**

Arm's development of and pricing strategy for v10 of the Arm ISA or Arm- developed cores containing v10 Technology, including but not limited to the rationale for any price increase over prior versions of the Arm ISA.

**RESPONSE TO TOPIC NO. 27:**

Arm objects to this Topic as vague as to the terms "development," "pricing strategy," "Arm-developed cores," and "v10 Technology."  Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning "any price increase," including price increases not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case.  Arm further objects to this Topic to the extent it fails to describe with reasonable particularity the matters to be examined regarding "Arm's development of and pricing strategy for v10 of the Arm ISA or Arm- developed cores containing v10 Technology" beyond "the rationale for any price increase over prior versions of the Arm ISA."

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding Arm's development of v10 of the Arm ISA.

27

**TOPIC NO. 28:**

Inquiries or requests made by Qualcomm to Arm regarding the Arm's development of v10 of the Arm ISA.

**RESPONSE TO TOPIC NO. 28:**

Arm objects to this Topic as vague as to the terms "inquiries," "requests," and "regarding." Arm further objects to this Topic to the extent it seeks information that is at least as available to Qualcomm as it is to Arm. Arm further objects to this Topic to the extent it fails to describe with reasonable particularity the matters to be examined regarding the "[i]nquiries or requests made by Qualcomm."

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding communications from Qualcomm to Arm seeking information about Arm's development of v10 of the Arm ISA.

**TOPIC NO. 29:**

Arm's CoreLink ADB-400 AMBA Domain Bridge, ████████████████████, the ████████████████████████, Cortex-A720 codenamed "████████" Cortex-A520 codenamed "█████," Cortex-M55 codenamed "████," Cortex-X925 codenamed "██████," the CPU codenamed "████," Cortex-A720AE codenamed "████████", Cortex-A730 codenamed "████", Cortex-A725 codenamed "███████" products, including but not limited to Arm's negotiations with Qualcomm concerning those products, Arm's pricing strategy for its those products, and Arm's licensing of those products to third parties.

**RESPONSE TO TOPIC NO. 29:**

Arm objects to this Topic as vague as to the terms "pricing strategy" and "third parties." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning unspecified "third parties," including third parties not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further

28

objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning "CoreLink ADB-400 AMBA Domain Bridge, █████████████████████ █████████████████████████████…Cortex-X925 codenamed '████████' the CPU codenamed '████,' Cortex-A720AE codenamed ████████', Cortex-A730 codenamed '████', Cortex-A725 codenamed ████████' products," as those products are beyond the scope of this case.  Arm further objects to this Topic to the extent it seeks information that is at least as available to Qualcomm as it is to Arm.  Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections.  Arm further objects to this Topic to the extent it fails to describe with reasonable particularity the matters to be examined regarding the list of products beyond "Arm's negotiations with Qualcomm concerning these products, Arm's pricing strategy for its those [sic] products, and Arm's licensing of those products to third parties."  Arm further objects to this Topic to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not provide information about any such documents absent agreement of the third party(ies) or Court Order.

Arm will not provide a witness regarding "CoreLink ADB-400 AMBA Domain Bridge, ████████████████████████████████████████████████████████ ████████…Cortex-X925 codenamed '████████,' the CPU codenamed ████,' Cortex-A720AE codenamed '████████', Cortex-A730 codenamed 'Gelas', Cortex-A725 codenamed '████████' products."  Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm

29

**A0104**

regarding Arm's negotiations with Qualcomm, pricing for, and licensing of Cortex-A720 codenamed ███████ Cortex-A520 codenamed ███████ Cortex-M55 codenamed ███████

**TOPIC NO. 30:**

Arm's relationship with Qualcomm or Qualcomm's licensees, including Qualcomm's ALA.

**RESPONSE TO TOPIC NO. 30:**

Arm objects to this Topic as vague as to the term "Qualcomm's licensees."  Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning unspecified "licensees," including licensees not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case.  Arm further objects to this Topic to the extent it seeks information that is at least as available to Qualcomm as it is to Arm.  Arm further objects to this Topic to the extent it seeks information that is not within the possession, custody, or control of Arm.  Arm further objects to this Topic to the extent it fails to describe with reasonable particularity the matters to be examined regarding Arm's relationship with Qualcomm beyond "Qualcomm's ALA."

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding Arm's relationship with Qualcomm with respect to Qualcomm's ALA and TLA.

**TOPIC NO. 31:**

Arm's analysis of potential competition with Qualcomm, including:

a. Arm's analyses of Qualcomm's CPUs and systems-on chips, including discussions with third parties regarding the same;

b. Arm's communications with and retention of any public relations firms in relation to Qualcomm's reputation and ability to compete in the market,

30

**A0105**

c. Arm's analysis of Qualcomm customers, including which customers could become Arm customers, and

d. Arm's efforts to impede Qualcomm's ability to develop custom CPUs, including but not limited to the cessation of support of deliverables and changes made to the pricing and terms of Arm's agreements with Qualcomm for peripheral TLA products that are used in Qualcomm's custom CPUs.

**RESPONSE TO TOPIC NO. 31:**

Arm objects to this Topic as vague as to the terms "potential competition," "third parties," "reputation," "ability to compete," "impede," "custom CPUs," "support," "deliverables," "terms," and "peripheral TLA products."  Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning unspecified "third parties," "customers," and "agreements," including third parties, customers, and agreements, as well as regarding "peripheral TLA products" which are not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case.  Arm further objects to this Topic to the extent it seeks testimony from fact witnesses that is more appropriately reserved for expert opinions, including as to "potential competition."  Arm further objects to this Topic to the extent it calls for legal conclusions.  Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections.

Arm will not provide a witness regarding "the cessation of support of deliverables and changes made to the pricing and terms of Arm's agreements with Qualcomm for peripheral TLA products that are used in Qualcomm's custom CPUs."  Subject to and without waiving its General Objections and Specific Objections, and subject to Qualcomm identifying a reasonable time period, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm and within the scope of this Topic, other than as set forth above.

31

**A0106**

**TOPIC NO. 32:**

Arm's October 22, 2024 letter to Qualcomm alleging that Qualcomm is in material breach of the QC ALA, including:

    a.   the reasons for the sending of that letter and the facts and circumstances surrounding any investigation performed relating to the allegations in the letter;

    b.   the reasons for the timing of that letter,

    c.   all third parties that Arm shared the letter with or otherwise informed of Qualcomm's purported breach,

    d.   the circumstances surrounding the sharing of the letter,

    e.   Arm's communications with third parties concerning the claims in its October 22, 2024 letter,

    f.   Arm's communications with the press, including but not limited to communications with ███████████████████████████████████████████████████████████████████████████████████████████████ concerning Arm's October 22, 2024 letter,

    g.   Discussions with ██████████████ concerning Arm's October 22, 2024 letter including with ████████████,

    h.   Arm's decision to speak to Bloomberg about Arm's October 22, 2024 letter, including any discussions with ██████████████████████,

    i.   Arm's statement in its response to Qualcomm's Second Interrogatory that it "did not send its October 22 Notice to any third-party companies or customers," and

    j.   Arm's communications with all Third Parties, including but not limited to ████████ ████████ regarding the Breach Letter or this Action.

**RESPONSE TO TOPIC NO. 32:**

Arm objects to this Topic as vague as to the terms "circumstances surrounding the sharing of the letter," "communications," and "third parties" and the distinction, if any, between "third parties" and "Third Parties." Arm further objects to this Topic as overbroad and unduly

32

A0107

burdensome to the extent it seeks information concerning unspecified and "all third parties," "all Third Parties," "any investigation," and "any discussions," including third parties, Third Parties, investigations, and discussions not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it seeks information that is either publicly available or is at least as available to Qualcomm as it is to Arm. Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections. Arm further objects to this Topic to the extent it seeks a witness to testify about communications with media in light of Qualcomm's refusal to do the same. Arm further objects to this Topic to the extent it seeks testimony for ▮▮▮▮▮▮▮▮▮▮ because Qualcomm has not allowed Arm's counsel to share those companies with Arm witnesses.

Arm will not provide a witness on subparts (f), (g), (h), or (j) of this Topic. Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding letters to Qualcomm customers under subpart (e), and the remaining subparts of this Topic.

**TOPIC NO. 33:**

Arm's communications with third parties regarding the claims in Qualcomm's Complaint, including:

a. Arm's communications with third parties concerning Qualcomm's future business relationship with Arm, including but not limited to Qualcomm's ability to license Arm technology,

b. SoftBank Group Corp.'s communications with Arm concerning Qualcomm since January 1, 2021, including but not limited to communications regarding the subject matter of Qualcomm's claims in the Complaint,

33

c. Communications with Masayoshi Son or Arm's Board of Directors regarding Qualcomm, including but not limited to withholding licenses, documentation, or other information from Qualcomm or sharing the October 22, 2024 notice with Third Parties,

d. Arm's outreach to Qualcomm's customers since October 2023, concerning Qualcomm's agreements with Arm, Qualcomm's rights under its agreements with Arm, potential termination of Qualcomm's agreements with Arm, Qualcomm's acquisition of Nuvia, or this Action,

e. Arm's communications with ▓▓▓▓ regarding Arm's and ▓▓▓▓ agreement for Arm to supply silicon chips for ▓▓▓ or this Action,

f. Arm's communications with ▓▓▓▓▓ regarding Arm's and ▓▓▓▓▓ agreement for Arm to supply chips for ▓▓▓▓ or this Action,

g. Arm's communications with Third Parties regarding its plans to develop systems-on-a-chip,

h. Any directives issued by Arm to Linux code maintainers relating to Qualcomm-uploaded patches and code,

i. Arm's communications with governmental entities regarding its plans to develop systems-on-a-chip, and

j. Arm's public disclosures regarding this Action and its business relationship with Qualcomm.

**RESPONSE TO TOPIC NO. 33:**

Arm objects to this Topic as vague as to the terms "communications," "third parties," "future business relationship," "withholding," "documentation," "other information," "silicon chips," "directives," "code maintainers," "patches," "governmental entities," and "business relationship, and the distinction, if any, between "third parties" and "Third Parties." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning unspecified "third parties," covers all "communications" with such unspecified third parties, and "[a]ny" directives, including third parties, communications, and directives not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it seeks information not within Arm's possession, custody, or control. Arm further objects to this Topic to the extent it seeks information protected

34

by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order.

Arm will not provide a witness to testify as to subparts (b), (c), (h), and (i). Subject to and without waiving its General Objections and Specific Objections, Arm will otherwise make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody, or control that is known or reasonably available to Arm regarding Arm's letters to Qualcomm customers regarding agreements between Qualcomm and Arm, Arm's and ███ agreement for Arm to supply silicon chips for ███ , Arm and ███ agreement for Arm to supply chips for ███ Arm's position communicated to third parties regarding Arm's system-on-chip development, and Arm's public statements regarding this action and Arm's business relationship with Qualcomm.

**TOPIC NO. 34:**

Projected or forecasted impact to Arm's revenue or profits if Qualcomm ███ ███

**RESPONSE TO TOPIC NO. 34:**

Arm objects to this Topic as vague as to the term "impact." Arm further objects to this Topic to the extent it seeks testimony from fact witnesses that is more appropriately reserved for expert opinions, including as to "projected or forecast impact to Arm's revenue or profits." Arm further objects to this Topic to the extent it seeks information not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case.

Arm will not provide a witness on this Topic.

35

**TOPIC NO. 35:**

RISC-V, including Arm's analysis of the competitive threat by posed by RISC-V, RISC-V's potential impact on Arm's revenue or profits, and communications with Third Parties regarding RISC-V.

**RESPONSE TO TOPIC NO. 35:**

Arm objects to this Topic as vague as to the terms "competitive threat," impact" and "communications." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning unspecified "Third Parties," including third parties not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it seeks testimony from fact witnesses that is more appropriately reserved for expert opinions, including as to "competitive threat."

Arm will not provide a witness to testify as to communications with Third Parties regarding RISC-V. Subject to and without waiving its General Objections and Specific Objections, Arm will otherwise make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm and within the remaining scope of this Topic.

**TOPIC NO. 36:**

Arm's relationship with the semiconductor industry generally, including entities that manufacturer systems-on-chips and entities that are large purchasers of systems-on-chips.

**RESPONSE TO TOPIC NO. 36:**

Arm objects to this Topic as vague as to the terms "semiconductor industry," "relationship … generally," "entities," "manufacturer [sic]," and "large purchasers." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning "the semiconductor industry generally." Arm further objects to this Topic to the extent it seeks information not relevant to any party's claim or defense in this case and/or not proportional to the

36

needs of the case.  Arm further objects to this Topic to the extent it fails to describe with reasonable particularity the matters to be examined regarding "Arm's relationship with the semiconductor industry generally."

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm on  this Topic.

**TOPIC NO. 37:**

Arm's intentions, plans, and strategy to design, build, and distribute its own semiconductor chips or sell its own silicon, including:

a.   Arm's potential or target customers for Arm's systems-on-a-chip,

b.   Arm's analysis of competitors in the chip market, including any potential competition with Qualcomm by Arm,

c.   Arm's development of its own SoC, including but not limited to its intention to enter the SoC market, the process of preparing to develop any SoC, work undertaken in connection with developing the SoC, and analysis of the effect of Arm producing its own SoC, including but not limited to, on competition with any ALA or TLA licensee,

d.   Arm's efforts to convince existing TLA licensees to transition to licensing a completed chip from Arm,

e.   Any agreements (or prospective agreements) Arm has entered into for the licensing or sale of semiconductor chips or silicon designed and built by Arm, and any personnel Arm has hired or has tried to hire in pursuit of that goal, including personnel currently employed by Arm's customers,

f.   Arm's analyses of the projected or forecasted impact to Arm's revenue, market share, or profits resulting from Arm's plan to design, build, and distribute semiconductor chips or sell its own silicon,

g.   Arm's analysis of market share or competition with respect to CPUs, chips, and designs thereof,

h.   Arm's analysis of the systems-on-a-chip server market, including market share, competitors, and potential customers,

i.   The relationship, if any, between Arm's introduction of v10 and its plans to expand into developing systems-on-chips,

37

j.  Softbank's planned acquisition of Ampere, including any discussions with Ampere related to Qualcomm and any discussions of changes or modifications to the Ampere ALA and Annexes and the Ampere TLA and Annexes,

k.  How the acquisition of Ampere by Arm's parent company, Softbank, would impact Arm's business and projected revenues or profits or competition in the market for Arm-compatible CPUs, including any discussions at Arm among employees or the Board of Directors concerning the acquisition or any communications with Softbank personnel regarding the acquisition, and

l.   .

**RESPONSE TO TOPIC NO. 37:**

Arm objects to this Topic as vague as to the terms "intentions," "plans," "strategy," "distribute," "semiconductor chips," "silicon," "chip market," "potential competition," "SoC market," "effect," "efforts to convince," "impact," "systems-on-a-chip server market," "relationship," "changes," modifications," "Arm-compatible CPUs," and "communications." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning "any potential competition," "any discussions with Ampere," and "any communications with Softbank personnel," including "potential competition," discussions, and communications not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it seeks testimony from fact witnesses that is more appropriately reserved for expert opinions, including the "analysis of competitors," "potential competition," "market share," competitive "effect" or "impact," and the definition of any market. Arm further objects to this Topic to the extent it seeks information not in Arm's possession, custody, or control, including SoftBank documents and communications. Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections.

Arm will not provide a witness on subpoints (a), (d), (e), (i), (j), (k), and (l) of this Topic. Subject to and without waiving its General Objections and Specific Objections, Arm will otherwise make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody, or control that is known or reasonably available to Arm regarding Arm's competitors in the semiconductor industry, Arm's market share in the semiconductor industry, and Arm's development of its own SoC.

**TOPIC NO. 38:**

> Arm's customer relationship management system ("CRM"), including
>
> a. External CRM software used, including, but not limited to Salesforce, Salesforce CPQ and Salesforce Sales Cloud, and any internal CRM systems or software,
>
> b. Any notes, comments, or other any information maintained in Arm's CRM or other systems containing information related to communications with customers relating in any to Qualcomm, and
>
> c. Any notes, comments, or other any information maintained in Arm's CRM or other systems containing information related to communications with customers relating in Arm manufacturing and selling its own SoCs in competition with ALA and TLA licensees.

**RESPONSE TO TOPIC NO. 38:**

Arm objects to this Topic as vague as to the terms "customer relationship management system," "External CRM software," "internal CRM systems or software," "communications," "relating in any to [sic]," "other any information [sic]," "other systems containing information," "related to communications," "relating in any to Qualcomm [sic]," "customers relating in Arm manufacturing [sic]," and "competition." Arm further objects to this Topic as overbroad and unduly burdensome to the extent it seeks information concerning "any notes, comments or other any [sic] information" and unspecified "ALA and TLA licensees," including notes, comments, information, and licensees not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it seeks

39

information that is more readily accessible through other means of discovery, including information contained in Arm's CRM. Arm further objects to this Topic to the extent it seeks testimony from fact witnesses that is more appropriately reserved for expert opinions, including as to "competition." Arm further objects to this Topic to the extent that Arm has produced responsive documents and communications stored within Arm's CRM system, and the CRM system itself is irrelevant to this case.

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody, or control that is known or reasonably available to Arm regarding what CRM software and systems Arm uses and what types of documents are stored on Arm's CRM system.

**TOPIC NO. 39:**

The article written by Financial Times on February 13, 2025, titled "Arm to launch its own chip in move that could upend semiconductor industry," including communications with the authors of that article and any public relations firm or personnel retained in connection with that article.

**RESPONSE TO TOPIC NO. 39:**

Arm objects to this Topic as vague as to the terms "communications," and "in connection with." Arm further objects to this Topic to the extent it seeks information that is publicly available. Arm further objects to this Topic to the extent it seeks information that is not within the possession, custody, or control of Arm. Arm further objects to this Topic to the extent it seeks a witness to testify about communications with media in light of Qualcomm's refusal to do the same.

Arm will not provide a witness on this Topic.

**TOPIC NO. 40:**

██████████ role on the █████████████████.

40

**A0115**

**RESPONSE TO TOPIC NO. 40:**

Arm objects to this Topic as vague as to the term "role." Arm further objects to this Topic to the extent it seeks information that is publicly available. Arm further objects to this Topic to the extent it seeks information that is not within the possession, custody, or control of Arm. Arm further objects to this Topic as overbroad and unduly burdensome because it is not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case.

Arm will not provide a witness for this Topic.

**TOPIC NO. 41:**

Changes in Arm's behavior towards Qualcomm as a result of the jury verdict in *Arm* v. *Qualcomm* (22-1146-MN).

**RESPONSE TO TOPIC NO. 41:**

Arm objects to this Topic as vague as to the terms "[c]hanges," "behavior," and "as a result of." Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections. Arm further objects to this Topic to the extent it fails to describe with reasonable particularity the "changes in Arm's behavior towards Qualcomm" to be examined.

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm and regarding Arm's provision of materials and support to Qualcomm under the Qualcomm ALA since the jury verdict in *Arm* v. *Qualcomm* (22-1146-MN).

**TOPIC NO. 42:**

Communications or discussions between Arm and non-Qualcomm Linaro Core Members about Qualcomm or Linaro Next.

41

**RESPONSE TO TOPIC NO. 42:**

Arm objects to this Topic as vague as to the terms "communications," "discussions," and "non-Qualcomm Linaro Core Members." Arm further objects to this Topic to the extent it seeks information not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case, particularly as it involves third parties unrelated to the issues this case. Arm further objects to this Topic as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm further objects to this Topic to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not provide information about any such documents absent agreement of the third party(ies) or Court Order.

Arm will not provide a witness on this Topic.

**TOPIC NO. 43:**

Communications or discussions between Linaro or Li Gong regarding Qualcomm or Linaro Next.

**RESPONSE TO TOPIC NO. 43:**

Arm objects to this Topic as vague as to the terms "communications," "discussions," and "regarding," and because it seeks "Communications or discussions between Linaro or Li Gong" without identifying the other party or parties for the communications and discussions. Arm further objects to this Topic to the extent it seeks information not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case, particularly as it involves communications of third parties unrelated to the issues in this case. Arm further objects to this Topic to the extent it seeks information that is not within the possession, custody, or control of Arm. Arm further objects to this Topic as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm further

42

objects to this Topic to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not provide information about any such documents absent agreement of the third party(ies) or Court Order.

Arm will not provide a witness on this Topic.

**TOPIC NO. 44:**

Arm's submissions to Federal Trade Commission, the European Commission, or the Korea Fair Trade Commission, or any other regulatory body requesting an investigation of Arm.

**RESPONSE TO TOPIC NO. 44:**

Arm objects to this Topic as vague as to the terms "submissions," "other regulatory body," and "investigation." Arm further objects to this Topic to the extent it seeks information that is publicly available. Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections. Arm further objects to this Topic to the extent it seeks information that is not within the possession, custody, or control of Arm, including any Arm submission to any regulatory body "requesting an investigation of Arm." Arm further objects to this Topic to the extent it seeks information about trade commissions submissions in light of Qualcomm's refusal to do the same.

Arms will not provide a witness on this Topic.

**TOPIC NO. 45:**

Any Qualcomm confidential documents shared with Nvidia during the due diligence process of the proposed acquisition of Arm by Nvidia, including documents shared in a data room.

**RESPONSE TO TOPIC NO. 45:**

Arm objects to this Topic as vague as to the terms "documents" and "due diligence process." Arm further objects to this Topic to the extent it seeks information concerning "[a]ny"

43

documents, including documents not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it seeks information that is more readily accessible through other means of discovery.

Arm will not provide a witness regarding this Topic.

**TOPIC NO. 46:**

Arm's document retention and destruction policies and practices.

**RESPONSE TO TOPIC NO. 46:**

Arm objects to this Topic as vague as to the terms "document," "retention," "destruction," and "policies and practices." Arm further objects to this Topic to the extent it seeks information not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections.

Subject to and without waiving its General Objections and Specific Objections, Arm will make available one or more witnesses to testify as to non-privileged, relevant information in Arm's possession, custody or control that is known or reasonably available to Arm regarding Arm's document retention and destruction policies and practices.

**TOPIC NO. 47:**

Arm's collection and production of documents in this Action.

**RESPONSE TO TOPIC NO. 47:**

Arm objects to this Topic as vague as to the term "documents." Arm further objects to this Topic to the extent it seeks information not relevant to any party's claim or defense in this case and/or not proportional to the needs of the case. Arm further objects to this Topic to the extent it

44

A0119

seeks information protected by the attorney-client privilege, common interest privilege, attorney work product doctrine, or any other applicable privileges and protections.

Arm will not provide a witness regarding this Topic.

Dated:  June 19, 2025

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP


 /s/ Robert M. Vrana
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com
*Attorneys for Defendant Arm Holdings PLC*

45

**A0120**

Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

46

**A0121**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 19, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
ejmorgan@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

# Exhibit 10

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC.,
a Delaware corporation,

Plaintiffs,

v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
a U.K. corporation,

Defendant.

C.A. No. 24-490 (MN)

████████████████████

## ARM'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S SECOND SET OF INTERROGATORIES (NOS. 4-11)

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States District Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm")'s Second Set of Interrogatories (Nos. 4-11).

## GENERAL OBJECTIONS

Arm makes the following general objections, which are hereby incorporated by reference and made part of its response to each and every Interrogatory.

1. Arm objects to each Interrogatory to the extent it purports to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

2. Arm objects to the "Instructions" and "Definitions" sections to the extent they purport to alter the plain meaning and/or scope of any specific Interrogatory, on the ground that such alteration renders the Interrogatory vague, ambiguous, overly broad, and/or uncertain, by

failing to adequately define terms or by using terms the meaning of which are not readily available or decipherable.  Arm's responses to such Interrogatories shall not be construed as an admission, agreement, or acquiescence to any such instruction or definition.  Arm further objects to the "Instructions" and "Definitions" sections to the extent they purport to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

3.      Arm objects to the definitions of "Defendant," "Arm," "you," and "your" as overly broad and unduly burdensome to the extent they purport to require Arm to provide information that is not within the possession, custody, or control of Arm Holdings PLC, or to otherwise respond on behalf of third parties, at least because these definitions include entities that have no relation to the present litigation.

4.      Arm objects to the definitions of "ALA" and "TLA" as overbroad and vague and ambiguous to the extent they define Architecture License Agreement and Technology License Agreement to include "all amendments and annexes to any such agreement."

5.      Arm objects to the definition of ███████████ as overbroad and vague and ambiguous to the extent it defines the term by reference to the definition of that term in ██████ ███ of the Qualcomm ALA, ████████ of the Qualcomm v8-A ALA Annex, or ██████████ of the Qualcomm v9-A ALA Annex."

6.      Arm objects to the definition of "ACK" as overbroad and vague and ambiguous to the extent it defines the term as meaning "Arm's Architecture Compliance Kit or Arm's Architecture Validation Suite or Arm's Architecture Compliance Suite."

7.      Arm objects to each Interrogatory, including the instructions and definitions that Qualcomm purports to incorporate therein, to the extent that each Interrogatory is overbroad,

unduly burdensome, not limited to a reasonable time frame, vague and ambiguous, irrelevant, and/or not reasonably calculated to lead to the discovery of admissible evidence.

8.      Arm objects to each Interrogatory to the extent it seeks information, documents, and/or things that are protected from disclosure by the attorney-client privilege, work-product doctrine, common-interest privilege, and/or any other applicable privilege, immunity, or protection (collectively, "privileged information").    Nothing contained in these responses should be considered a waiver of any attorney-client privilege, work-product protection, or any other applicable privilege or doctrine.  Arm does not intend to produce information or documents that would divulge any privileged information.  Any such disclosure is inadvertent and shall not be deemed a waiver of any applicable privilege or immunity.

9.      Arm objects to any factual characterizations in Qualcomm's Interrogatories.  By responding, Arm does not accept or admit any of Qualcomm's factual characterizations.

10.      Arm objects to each Interrogatory to the extent it seeks "all" or "any" facts, documents, witness identifications, or things as overbroad and unduly burdensome.

11.      Arm's discovery and investigation in connection with this case is ongoing.  Arm's responses to these Interrogatories are based on its knowledge to date following a reasonable investigation.  As a result, Arm's responses are provided without waiver of Arm's right to: (a) object to other interrogatories directed to the subject matter of these Interrogatories and responses; (b) make additional or supplementary objections to these Interrogatories; or (c) revise, amend, supplement, or clarify the contents of these responses.

Subject to and without wavier of these General Objections and the more specific objections set forth below, Arm responds as follows:

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 4:

Describe, in detail, Arm's reason(s), explanation, or justification for failing to respond to Qualcomm's May 2020 election under ██████████████████████ to extend the ████████ of the ALA. Your response should include (1) the names of any individuals involved in the decision not to respond to Qualcomm's election, (2) a description of any discussions regarding whether to respond to Qualcomm's election, including any discussions that occurred in subsequent years, (3) any factual or legal bases that Arm relied on in deciding not to respond to Qualcomm's election, and (4) an identification of any relevant documents by Bates number.

### RESPONSE TO INTERROGATORY NO. 4 (JUNE 16, 2025):

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks information regarding "the names of any individuals," "any discussions," "any factual or legal bases," and "any relevant documents," without limitation. Arm objects to this Interrogatory as vague and ambiguous and as mischaracterizing, as the terms "Qualcomm's May 2020 election under ██████████████ ██████████" and "the decision not to respond to Qualcomm's election" are unclear and inaccurate. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm objects to this Interrogatory to the extent it calls for a legal conclusion.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

### Arm Responded To Qualcomm's Purported Election Under Section ████ In May 2020

Arm responded to Qualcomm's purported election under Section ████ of the Qualcomm ALA in May 2020.

**A0128**

In response to outreach from Brett Bettesworth from Qualcomm to Lynn Couillard at Arm in April and May 2020, Lynn Couillard sent several responses to Qualcomm in response to its request for an extension of the ALA under ▮▮▮▮▮▮, including on May 15, 2020 when she responded stating that "[t]he intent of ▮▮▮▮▮▮ is to allow for an extension of the agreement as of this point in the term of the agreement. If there is not desire from Qualcomm to negotiate terms of an extension at this point, but rather to have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire" and that "there is nothing that stops us from discussing next gen architecture or entering into an agreement anytime in the future regardless of the existing agreement":

---

From: Lynn Couillard <Lynn.Couillard@arm.com>
Sent: Friday, May 15, 2020 9:49 AM
To: Brett Bettesworth <betteswb@qti.qualcomm.com>; Rajiv Gupta <grajiv@qti.qualcomm.com>
Cc: Todd Lepinski <Todd.Lepinski@arm.com>
Subject: [EXT] Re: V10 -->V9 architecture follow-on

Hello Brett and Rajiv, (+Todd)

The intent of section ▮▮▮▮ is to allow for an extension of the agreement as of this point in term of the agreement. If there is no desire from Qualcomm to negotiate terms of an extension at this point, but rather to have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire. However, importantly, there is nothing that stops us from discussing next gen architecture or entering into an agreement anytime in the future regardless of the existing agreement.

Note that at the time of the v8 architecture closure, we also included ▮▮▮▮▮ which at the time had no definition, and eventually became v9. We are in a similar situation here with regards to visibility on next generation architecture.

Please let us know if you'd like to discuss, we can set something up for next week.

Thanks
Lynn

---

ARM_00005340. Mr. Bettesworth responded five days later. He did not dispute any of Ms. Couillard's statements, including that "[t]he intent of ▮▮▮▮▮▮ is to allow for an *extension* of the agreement *as of this point in term of the agreement*," and that if Qualcomm desires to "have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire." He elected to "go ahead and move forward with the extension":

| | |
|---|---|
| From: | Brett Bettesworth [betteswb@qti.qualcomm.com] |
| Sent: | 20/05/2020 20:05:11 |
| To: | Lynn Couillard [Lynn.Couillard@arm.com]; grajiv@qti.qualcomm.com |
| CC: | Todd Lepinski [Todd.Lepinski@arm.com] |
| Subject: | RE: V10 -->V9 architecture follow-on |

Importance:    High

Hi Lynn,

Thanks for your email and the note below. We will go ahead and move forward with the extension at this point, per the ALA optional election.

████████████████████████████████████████████████████████████

We can discuss further at some point in the near future, but wanted to ensure that we provided timely notification of our election here, as mentioned previously.

Sincerely,
Brett

*Id.* Mr. Bettesworth's email also did not seek a response, and ended by stating that "[w]e can discuss further at some point in the near future ...." However, Mr. Bettesworth does not appear to have sent a follow-up email to arrange such discussions. Qualcomm also failed to send any follow-up about v10 to Arm, including any formal correspondence in compliance with the ALA's notice provisions, for nearly five years. Qualcomm further failed to send any notice of breach of the ALA to Arm for allegedly breaching ██████████

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Lynn Couillard.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies

the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: QCVARM_1120481, ARM_00079223.

Arm further incorporates by reference the testimony of the following witnesses: Lynn Couillard, Martin Weidmann, Gerard Williams, Spencer Collins, Michael Williams, William Abbey, Mark Dragicevich, Ziad Asghar, and Karthik Shivashankar, including the documents used at each of those depositions.  Arm also incorporates by reference its responses to Interrogatory Nos. 3 and 10.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 5 (JUNE 16, 2025):**

Identify with specificity all ACK patches and OOBs developed or provided by Arm between July 2022 and February 2025 and their respective release schedule(s). Your response should identify (1) the names of each partner who received an ACK patch or OOB, (2) the dates that each ACK patch and OOB was requested and by whom, (3) the date that each ACK patch and OOB was provided and to which partner, (4) information regarding whether any ACK patches and OOB were withheld from any partners during this time period, (5) the names of all Arm individuals with relevant knowledge, and (6) identify any relevant documents by Bates number.

**RESPONSE TO INTERROGATORY NO. 5:**

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding "all ACK patches and OOBs developed or provided by Arm between July 2022 and February 2025," "each partner," information about "each ACK patch and OOB," and "all Arm individuals," without limitation.  Arm further objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case because it seeks detailed information regarding Arm's development and provision of partner-specific OOBs and ACK patches for partners other than Qualcomm. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by

A0131

the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm incorporates its response to Qualcomm's Interrogatory Number 1.

### Arm Provides The Content Of ACK Patches To All Partners, Including Qualcomm As Part Of Its Quarterly ACK Release

ACK patches are not ███████████████ under the Qualcomm ALA, including because they are not architecture technology identified in the v8 Annex 1 or the v9 Annex 1 to the Qualcomm ALA, nor are they ██████████ thereto. An ACK patch is a partner-specific solution to a partner-specific ACK test issue, and when that solution is relevant to all ALA licensees, Arm typically incorporates the solution into its next quarterly ACK release, which is made available to all ALA partners, including Qualcomm.

Arm provided Qualcomm with the full suite of ACK tests for both the Arm v8 and Arm v9 architectures—the ARMv8-A Architecture Valid Suite Kit (AVS) and the Armv9-A Architecture Compliance Kit. *See*, *e.g.*, ARMQC_02604619 (spreadsheet showing Qualcomm downloaded certain Arm materials, including the Arm v8 ACK / AVS (██████████) and the Arm v9 ACK / ACS (██████████)); ARMQC_02604613 (spreadsheet showing when Qualcomm downloaded certain Arm materials, including Part Nos. ████ (associated with the Arm v8 ACK / AVS) and ████ (Arm v9 ACK)); ARMQC_02604617 (spreadsheet showing Arm deliveries of ████ materials to Qualcomm between 2022 and 2024); ARMQC_02603587 (spreadsheet showing Arm making Product Nos. ██████████ available to Qualcomm between

05/11/2007 and 01/08/2025); *see also* ARMQC_02604612 (spreadsheet showing Arm made "New Arm Product Updates Available" to Qualcomm between 10/31/2022 and 01/29/2025); ARMQC_02604614 (spreadsheet showing Arm made "New Arm Products Available" to Qualcomm between 09/22/2022 and 03/27/2025); ARMQC_02604609 (document showing Arm materials made available to Qualcomm between 07/15/2010 and 06/24/2022); ARMQC_02604615 (spreadsheet showing Arm materials that Qualcomm downloaded, including "OOB" and "ACK patch[es]").  Arm therefore did not withhold any ACK tests from Qualcomm.

Arm provided all of its ALA partners, including Qualcomm, with quarterly ACK releases that incorporated ACK-patch solutions to ACK test issues relevant to all ALA partners.  *See*, *e.g.*, ARMQC_02747093 (document showing Arm providing quarterly v8 ACK releases to Qualcomm between 2021 and 2025); ARMQC_02747097 (document showing Arm providing quarterly v9 ACK releases to Qualcomm between 2021 and 2025); ARMQC_02747103 (document showing Qualcomm downloading Armv8 materials, including quarterly "Update[s]_for_ACK," between 2022 and 2024); ARMQC_02747104 (document showing Qualcomm downloading Armv9 materials, including "Update[s]_for_ACK" and "V9A_ACK_Release_Update[s]" between 2022 and 2025); ARMQC_02604611 (document showing Arm delivering quarterly Armv8 ACK releases to Qualcomm between 04/04/2011 and 07/28/2022); ARMQC_02604616 (document showing Arm delivering quarterly Armv9 ACK releases to Qualcomm between 05/27/2019 and 07/28/2022).

### OOBs Are Partner and Design-Specific, And OOBs Provided To Third Parties Are Not Relevant To Qualcomm

OOBs are not "███████████████" or "███████" under the Qualcomm ALA, including because they are not architecture technology identified in the v8 Annex 1 or the v9 Annex 1 to the Qualcomm ALA, nor are they ███████████████ thereto.  OOBs identify which of the previously delivered ACK tests a partner should run and are based on the configuration of the

partner's design implementation. Because OOBs are not just partner-specific, but implementation-specific, any OOB that Arm may have provided to a third-party ALA partner is not relevant to Qualcomm. *See* Agrawal Dep. Tr. at 29:1–21 ████████████████████████████████████. Further, as explained in Arm's response to Qualcomm Interrogatory No. 1, by July 2022, Arm had already given Qualcomm several OOB packages, including for use with Nuvia-based designs. *See* Arm Resp. to Qualcomm Interrog. No. 1.

Further, though Qualcomm is not entitled to any ACK patches or OOB for Nuvia-based designs, Arm made clear in its January 8, 2025 letter to Qualcomm that "Arm intends to provide support for the Nuvia CPUs, including support and verification services" pending certain litigation between the parties. QCVARM_0573677.

Arm identifies the following individual as knowledgeable regarding aspects of this subject matter: Vivek Agrawal.

Pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARMQC_02603587, ARMQC_02604609, ARMQC_02604610, ARMQC_02604611, ARMQC_02604612, ARMQC_02604613, ARMQC_02604614, ARMQC_02604615, ARMQC_02604616, ARMQC_02604617, ARMQC_02604618, ARMQC_02604619, ARMQC_02747093, ARMQC_02747097, ARMQC_02747103, and ARMQC_02747104.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm provided all of its ALA partners, including Qualcomm, with quarterly ACK releases

that incorporated ACK-patch solutions to ACK test issues relevant to all ALA partners.  *See*, *e.g.*, ARMQC_02604611 (document showing Arm delivering quarterly Armv8 ACK releases to Qualcomm between 04/04/2011 and 07/28/2022); ARMQC_02604616 (document showing Arm delivering quarterly Armv9 ACK releases to Qualcomm between 05/27/2019 and 07/28/2022); ARMQC_02779171 (document showing Arm delivering Product Code ███ from 08/20/2021 to 05/26/2025), ARMQC_02779174 (document showing Arm delivering Product Code ███ from 08/20/2021 to 05/22/2025), ARMQC_02779176 (document showing Arm delivering Product Code ███ from 08/20/2021 to 05/26/2025), ARMQC_02779179 (document showing Arm delivering Product Code ███ from 09/08/2021 to 05/20/2025), ARMQC_02779181 (document showing Arm delivering Product Code ███ from 09/08/2021 to 04/29/2025).

Arm also provided Qualcomm with Qualcomm-specific support materials.  *See*, *e.g.*, ARMQC_02747093 (document showing Arm providing Qualcomm-specific support materials); ARMQC_02747097 (document showing Arm providing Qualcomm-specific support materials); ARMQC_02747103 (document showing Qualcomm downloading Qualcomm-specific support materials); ARMQC_02747104 (document showing Qualcomm downloading Qualcomm-specific support materials).

Arm further incorporates by reference Arm's objections and responses to Qualcomm Interrogatory Nos. 1 and 10.

Arm further incorporates by reference the testimony of all witnesses that have been deposed in this case to date, including those specifically referenced herein, as well as the testimony of all witnesses deposed in *Arm v. Qualcomm*, Case No. 1:22-cv-01146 (D. Del.), and the exhibits used during those depositions.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this

Interrogatory may be derived: ARMQC_02779171, ARMQC_02779174, ARMQC_02779176, ARMQC_02779179, ARMQC_02779181; ARMQC_02603587, ARMQC_02604609, ARMQC_02604610, ARMQC_02604611, ARMQC_02604612, ARMQC_02604613, ARMQC_02604614, ARMQC_02604615, ARMQC_02604616, ARMQC_02604617, ARMQC_02604618, ARMQC_02604619, ARMQC_026046020, ARMQC_02604621, ARMQC_02604622, ARMQC_02604623, ARMQC_02747093, ARMQC_02747097, ARMQC_02747103, ARMQC_02747104.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 6:**

Describe in detail and provide a list of licensing terms that Arm has offered since 2019 for CortexA720 codenamed " █████ " Cortex-A520 codenamed " █████ " Cortex M55 codenamed " ████ ," Cortex-X925 codenamed " ███████ ," the CPU codenamed " ████ ," Cortex-A720AE codenamed " ██████ ", Cortex-A730 codenamed " ████ ", and Cortex-A725 codenamed " ██████ ". Your response should identify (1) the names of each partner and which licensing offer(s) the partner received, (2) the date of each offer to each specific partner, (3) the licensing fee offered for each of the identified products, by partner (4) the royalty rate offered for each of the identified products, by partner (5) the licensing term offered for each of the identified products, by partner (6) any support and maintenance terms offered for each of the identified products, by partner (7) any restrictions imposed on engineering development efforts for each of the identified products, by partner (8) the names of all Arm individuals with relevant knowledge, and (9) all relevant documents identified by Bates number.

**RESPONSE TO INTERROGATORY NO. 6 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks information regarding "each partner," "each offer," "each of the identified products," without limitation.  Arm further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information regarding cores for which Qualcomm does not allege breach in

its Second Amended Complaint, including "Cortex-X925," "███████" "the CPU codenamed '████,'" "Cortex-A720AE codenamed '███████,'" "Cortex-A730 codenamed '████'" and "Cortex-A725 codenamed '██████.'" Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this Interrogatory as vague and ambiguous, as the term "restrictions" is unclear. Arm further objects to this Interrogatory as having multiple discrete subparts and therefore multiple interrogatories. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows: Arm is willing to meet and confer with Qualcomm regarding a reasonable scope for this interrogatory.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Arm further objects to this Interrogatory as vague and ambiguous, as the term "offered" is unclear. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARM_01424135, ARMQC_02779314, ARMQC_02772366, ARMQC_02779433, ARMQC_02779391, ARMQC_02779269, ARMQC_02779412,

ARMQC_02779364, ARMQC_02779483, ARMQC_02783533, ARMQC_02783601, ARMQC_02783599, ARMQC_02783597, ARMQC_02783603, ARMQC_02783595, ARMQC_02783512, ARMQC_02783575, ARMQC_02774738, ARMQC_02774748, ARMQC_02774757, ARMQC_02774767, ARMQC_02774814, ARMQC_02774818, ARMQC_02774844, ARMQC_02774816.

Arm further incorporates by reference the testimony of the following witnesses: Karthik Shivashankar, Ehab Youssef, Akshay Bhatnagar, Jeff Fonseca, and Kurt Wolf, including the documents used at each of those depositions..

Arm further incorporates by reference any documents withheld on the basis of third-party confidentiality disputes, including due to an objection or motion for a Protective Order filed by any such third parties. Arm reserves the right to supplement this response to address such documents as appropriate should any such disputes be resolved and result in the production of any documents to Qualcomm.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 7:**

Describe, in detail, Arm's business strategy with respect to gaining a competitive advantage against other companies, including Qualcomm. Your response should include (1) any strategy related to unwinding or limiting ALAs, (2) any strategy related to increasing licensing prices for products offered under any license, (3) any strategy related to development of silicon, (4) any strategy related to acquiring other companies, (5) any strategy related to increasing pricing or limiting access to v10 or future versions of the Arm ISA, (6) the names of all Arm individuals with relevant knowledge, and (7) all relevant documents identified by Bates number.

**RESPONSE TO INTERROGATORY NO. 7 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding "any

strategy" and "all Arm individuals," without limitation. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this Interrogatory as vague and ambiguous, as the terms "Arm's business strategy with respect to gaining a competitive advantage," "unwinding or limiting ALAs," "development of silicon," and "increasing pricing or limiting access to v10 or future versions of the Arm ISA" are unclear. Arm objects to Qualcomm's characterization of its business strategy. Arm further objects to this Interrogatory as having multiple discrete subparts and therefore multiple interrogatories  Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows: Arm is willing to meet and confer with Qualcomm regarding a reasonable scope for this interrogatory, if any.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence, including information regarding Arm's "strategy related to acquiring other companies." Specifically, this portion of the Interrogatory is not relevant to any of Qualcomm's claims in its Second Amended Complaint, including Qualcomm's California Unfair Competition Law ("UCL") claim. *See Bacon v. Carroll,*

2007 WL 2111057, at *7 (D. Del. July 17, 2007) (finding interrogatories related to defendant's grievances "are not relevant or likely to lead to admissible evidence" and plaintiff "cannot point to any use for the material that would support" the claims).  Arm is willing to meet and confer with Qualcomm as to the relevance and appropriate scope of this portion of the Interrogatory, if any.

Arm further objects to this Interrogatory as seeking information that is not relevant to either Party's claims or defenses, and not reasonably calculated to lead to the discovery of relevant evidence, including information regarding "Arm's business strategy with respect to gaining a competitive advantage against other companies."  Specifically, this portion of the Interrogatory is not relevant to any of Qualcomm's claims in its Second Amended Complaint, including Qualcomm's UCL claim.  There is no support for the proposition that a business strategy to "gain[] a competitive advantage against other companies," without more, is unfair or unlawful conduct under the UCL.  Such conduct is instead generally pro-competitive.  *See FTC v. Qualcomm*, 969 F.3d 974, 1003, 1005 (9th Cir. 2020) (finding Qualcomm's "hypercompetitive" behavior to be "disruptive" but "in a manner that [is] beneficial to consumers in the long run").  Indeed, where business practices are "reasonable and consistent with current industry practice" and "reduc[e] 'transaction costs and complexities,'" courts routinely find such conduct does not violate the UCL. *E.g.*, Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 47–48 (Apr. 26, 2024) (citing *FTC v. Qualcomm*, 969 F.3d 974, 996 n.17, 996 (9th Cir. 2020)).

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Arm's business has always been customer centric.  Its mission is to innovate and develop products to meet customer needs and market demand.  Arm continues to pursue this mission by developing both its instruction set architecture ("ISA") and its implementation cores in close collaboration with its partners, including Qualcomm.  This enables Arm's partners to compete

across the semiconductor technology stack, which in turn brings more choice to the market. Accordingly, Arm's business strategy is aimed at investing in productive relationships with its partners to meet these pro-competitive goals.

Arm's open licensing model enables many companies to design chips, fostering a competitive ecosystem. Specifically, Arm has enabled its partners to build custom central processing units ("CPUs") by licensing its ISA to them through Architecture Licensing Agreements ("ALAs"). Doing so increases the number of CPUs available on the market, including CPUs that compete with Arm-designed CPUs, which Arm also makes available for license through Technology Licensing Agreements ("TLAs"). Given the extraordinary amount of time and resources required to successfully develop CPUs and the attendant high rate of failure, Arm carefully chooses its ALA partners to ensure the greatest likelihood of success. Even the top semiconductor companies with the greatest resources are often unable to successfully develop custom CPUs under their ALAs. For example, Qualcomm—one of the world's largest and most profitable semiconductor companies—sought to develop a custom core for the server market but ultimately abandoned the effort due to high costs. *See* Deposition of James Thompson, November 11, 2023, pp. 53–56. Indeed, Arm's royalty payment model aligns its interests with those of its partners—meaning Arm succeeds when its partners do—and incentivizes its partners to make their intellectual property available as broadly as possible. Arm's ALA licensing practices are thus pro-competitive and driven by rational business decisions.

In addition to major players like Qualcomm, Arm has also entered ALAs with promising start-up technology design companies to foster innovation and meet customer needs. For example, in 2019, Arm negotiated an ALA with NUVIA Inc. ("Nuvia"), a start-up that designed chips for data centers. Arm agreed to accept a lower-than-average upfront fee for the ALA to help sponsor Nuvia's entry into the market. In return for Arm's agreement to share Nuvia's risk on the front-

end, Nuvia agreed to grant Arm higher royalties if it successfully developed a CPU.  This deal typified Arm's customer centric, pro-competitive approach to its partners: investment and support.

Although Arm executes ALAs with partners who have the means and desire to invest in developing their own customized CPUs, history and experience has demonstrated that those partners are not always capable of optimizing Arm's architecture during CPU development and are unlikely to yield CPUs that are materially superior to Arm's product, despite enormous investments of resources and time.  Many partners thus license Arm's market-leading, ready-to-use implementation cores through TLAs rather than embarking on the high-risk, low-reward proposition of CPU development.  TLAs enable Arm's partners to outsource their costly CPU research and development needs to Arm, which reduces their development burdens and risks, speeds up their time-to-market, and frees up resources for investment in innovation and differentiating themselves in other areas.  Because TLAs offer a far more efficient, practical, and effective arrangement in almost every circumstance, the vast majority of Arm's licenses are TLAs and historically most of Arm's partners have a TLA.  *See* ARM_01259705 at 9794; Deposition of Simon Segars, November 16, 2023, pp. 29–30.  TLAs, in turn, directly benefit the market and consumers by increasing product quality while decreasing prices.

Arm has further explored offering its own chips to meet innovation needs and customer demand.  Arm's potential entrance into the chip market would thus generate more competition, innovation, and consumer choice.  Regulators routinely approve, and markets encourage, this type of pro-competitive conduct.

Arm does not have a blanket "strategy" for pricing its IP licenses.  Arm instead approaches each license individually and in the context of the specific needs of the partner, market segment, and end-users, resulting in various license structures.  As noted, Arm's ALA with Nuvia catered to Nuvia's unique needs as a start-up and sought to increase Nuvia's chances of success by trading off

lower upfront fees for higher royalty rates. Qualcomm's ALA, by contrast, has considerably lower-than-average royalty rates that reflect, among other factors, Qualcomm's market presence and prominence as one of Arm's largest partners by royalty revenue. To the extent Arm has increased upfront prices or royalty rates for any of its IP, Arm has done so in the normal course of business to account for increased costs, including resources expended on developing updated and innovative products, and reflect the increased value of its updated offerings. Indeed, Arm's conduct is "reasonable and consistent with current industry practice." *See, e.g.*, Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 47–48 (Apr. 26, 2024) (citing *FTC v. Qualcomm*, 969 F.3d 974, 996 n.17, 996 (9th Cir. 2020)).

Arm refers Qualcomm to its Initial Disclosures for "the names of all Arm individuals with" knowledge relevant to this Interrogatory.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARM_01293447, ARMQC_02771129, ARMQC_02771151, QCVARM_0851876, QCVARM_1068459.

Arm further incorporates by reference the testimony of the following witnesses: Rene Haas, William Abbey, Paul Williamson, Richard Grisenthwaite, Karthik Shivashankar, Jannik Nelson, Peter Greenhalgh, Durga Malladi, and Martin Weidmann, including the documents used at each of those depositions.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 8:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not interfere, either intentionally or negligently, with Qualcomm's business

opportunities, including but not limited to Qualcomm's business opportunities with the Smartphone Company and the AI and Ecosystem Company identified in the operative Complaint. Your response should include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 8 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, because it seeks information regarding alleged interference with "Qualcomm's business opportunities," without limitation. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this Interrogatory as vague and ambiguous, as the terms "Qualcomm's business opportunities," and "Qualcomm's business opportunities with the Smartphone Company and the AI and Ecosystem Company" are unclear.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

### Arm's October 2024 Letter And Its Publication Did Not Interfere With Qualcomm's Business Opportunities Because Arm Repeatedly And Publicly Stated That Qualcomm Was In Breach Of The Qualcomm ALA As Early As 2022

Arm's October 2024 letter stating that Qualcomm was in breach of the Qualcomm ALA, and the publication of the same, did not interfere with any of Qualcomm's business relationships because Arm repeatedly and publicly stated that Qualcomm was in breach of the Qualcomm ALA as early as 2022.

On November 15, 2022 Arm filed a publicly-available Answer in *Arm Ltd. v. Qualcomm Inc. et al.*, No. 22-1146 (MN) ("Arm v. Qualcomm"), in which Arm publicly stated that "Qualcomm

is materially breaching its ALA, giving Arm the right to terminate, and the Qualcomm ALA does not provide a license for or right to continue development of the Nuvia technology," that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology, entitling Arm to terminate that ALA based on Qualcomm's material breaches," that "Arm is entitled to terminate Qualcomm's ALA based on Qualcomm's material breaches of the verification, delivery, and support and maintenance provisions," and that:

> "Qualcomm's allegations that it is exercising its rights with respect to the relevant Nuvia technology under Qualcomm's license agreements with Arm and is not in violation of those agreements fail because Arm has no such obligations with respect to the Nuvia technology, and Qualcomm is breaching the Qualcomm ALA by insisting otherwise. Under the Qualcomm ALA, Arm has no obligation to provide, and Qualcomm has no right to seek, verification, delivery, or support and maintenance in connection with technology developed under the now-terminated Nuvia ALA. The 'verification' provisions of ▮▮▮▮ of the Qualcomm ALA are limited to products manufactured [redacted] in the ALA. The delivery (▮▮▮▮) and support and maintenance (▮▮▮▮) obligations of the Qualcomm ALA are similarly limited to the defined [redacted] and therefore likewise do not extend to the relevant Nuvia technology, which embodies and was derived from Arm technology delivered by Arm to Nuvia under Nuvia's now-terminated ALA. Qualcomm's unreasonable, bad-faith demands that Arm comply with purported obligations for verification, delivery, and support and maintenance with respect to technology delivered and developed outside the scope of the Qualcomm ALA are contrary to the parties' expectations and undermines the benefit to Arm from the Qualcomm ALA, thereby materially breaching that agreement's terms and implied covenant of good faith and fair dealing and entitling Arm to terminate the Qualcomm ALA under ▮▮▮▮."

No. 22-1146, D.I. 21 at 2, 37, 39, 41-42.

On April 11, 2024, Arm filed another publicly-available Answer that likewise included allegations that Qualcomm was in breach of its ALA, including that "Qualcomm is breaching its ALA by improperly seeking to use the Qualcomm ALA to continue development of the relevant Nuvia technology," and that "Qualcomm is materially breaching its ALA, giving Arm the right to terminate …." D.I. 322 at 2, 42-45, 48-49.  These materials were available to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146.

**Qualcomm Recognized That Arm's October 22, 2024
Notice Of Material Breach "Is Actually Not New News"**

In *Arm v. Qualcomm*, the Court held a pre-trial conference on November 20, 2024. During that conference, Qualcomm's counsel stated that Arm's claim that Qualcomm is in breach of the Qualcomm ALA has been in the case "starting at the very beginning," Nov. 11, 2024 Hearing Tr. at 13:10-16, and that "[t]he letter on October 22nd is actually not new news in the sense of alleging these breaches":

> "And in response to that, there have been repeated allegations that the Qualcomm ALA has been breached by Qualcomm. The letter on October 22nd is actually not new news in the sense of alleging these breaches. It has been in the case squarely and we anticipate that it is going to be raised by ARM in response to the arguments that we have regarding the fact that our products are licensed."

*Id.* at 14:18-24. Qualcomm's counsel stated earlier in that same hearing that "with respect to Qualcomm's alleged breach under the Qualcomm ALA, Arm itself has put that in the case starting at the very beginning" and that "[w]hen you go to their answer at DI 21, they say … [Qualcomm is] also materially breaching its ALA with Arm." *Id.* at 13:10-16. Qualcomm candidly admitted "as early as November 15, 2022, in DI 21, … they say Qualcomm is materially breaching its own ALA and giving ARM the right to terminate that agreement." *Id.* at 13:23-14:12. Qualcomm also acknowledged "there is at least five or six references" to this same assertion that Arm has the right to terminate the Qualcomm ALA "throughout [Arm's] pleading" in November 2022. *Id.*

**Arm's Alleged Publication of Arm's October 2024 Letter Did Not
Interfere With Qualcomm's Business Opportunities Because Qualcomm Admits
It Had An Obligation To Publish—And Did Publish—Arm's October 2024 Letter**

On October 22, 2024 Arm sent a notice of material breach ("October 22 Notice") to Qualcomm that echoed its public statements in its November 15, 2022 and April 11, 2024 Answers, including that:

> "The Qualcomm ALA permits Qualcomm to seek support and verification solely for CPU designs created by Qualcomm employees, at a time when they were Qualcomm employees. Qualcomm is only permitted to market an Architecture Compliant Core if Qualcomm has complied in all respects with the requirements of

the Qualcomm ALA and completed the verification procedures provided therein. And Qualcomm is entitled to seek contractual remedies solely for CPU designs that fall within the scope of the ALA. These obligations are reflected in multiple places in the Qualcomm ALA, including but not limited to ███████████████ ███████████████

Qualcomm has systematically and willfully breached these obligations, and its breaches have accelerated and expanded in recent months. Specifically, Qualcomm has developed CPUs and marketed multiple products that contain CPUs that use designs, technology, and code created by Nuvia employees at the time when Nuvia was a third party (hereinafter 'Nuvia designs'). Recently, Qualcomm has sought support and verification for additional designs that reuse the Nuvia designs. Qualcomm and Nuvia have willfully refused to discontinue use of the Nuvia designs despite the independent obligations provided by Section 15.1 of the Nuvia ALA upon termination. And Qualcomm initiated and continues to prosecute contractual claims that arise from Qualcomm's improper conduct with respect to these unlicensed cores.

Due to Qualcomm's willful, ongoing, and renewed actions, Qualcomm is in material breach of the Qualcomm ALA."

10/22/2024 Arm Breach Notice to Qualcomm (ARMQC_02749015). No terms or provisions of the Qualcomm ALA were quoted in Arm's notice of material breach. *Id.* Qualcomm responded on October 28, 2024. 10/28/2024 Qualcomm Ltr. to Arm. Qualcomm made a summary of the contents of both notices available to the public on November 6, 2024. Qualcomm 10-K Annual Report (November 6, 2024).

On January 8, 2025, Arm withdrew its October 22 Notice, stating that:

The Qualcomm ALA was the subject of an incomplete jury verdict on December 20 that found in Qualcomm's favor. That verdict is not final and is subject to a variety of legal challenges. Nonetheless, Arm respects and values the jury process and the Court's ongoing role in resolving the parties' disputes. As a result, and while Arm's ongoing legal challenges are pending, Arm will treat the Nuvia CPUs as falling within the scope of the Qualcomm ALA, and Arm therefore withdraws the pending October 22, 2024 notice of material breach. Arm has no current plan to terminate the Qualcomm ALA until the legal process resolves the parties' disputes over the Qualcomm ALA. Arm also conditionally accepts Qualcomm's one-time, five-year year extension under which the Qualcomm ALA will expire in 2033. Pursuant to separate correspondence, Arm intends to provide support for the Nuvia CPUs, including support and verification services, while the related legal challenges remain outstanding.

Arm's prior correspondence and relevant court filings in the Delaware litigation reflect Arm's legal position regarding the scope of the Qualcomm ALA and the required actions that Nuvia acting in concert with Qualcomm must take in light of

A0147

the termination of the Nuvia ALA on March 1, 2022. Arm's future legal filing will reflect its legal position regarding the non-final verdict, a new trial and judgment in the legal case. Arm reserves all rights and none of Arm's conduct, support and verification reflects a waiver of Arm's present or future rights or claims.

1/8/2025 Arm Ltr. to Qualcomm (QCVARM_0847182). Qualcomm and Arm exchanged further correspondence on January 22 and 30. 1/22/2025 Qualcomm Ltr. to Arm (QCVARM_0847182); 1/30/2025 Arm Ltr. to Qualcomm (QCVARM_0847184).

On November 6, 2024 Qualcomm publicly described Arm's October 22 Notice in its Annual Report to investors:

> On October 22, 2024, Arm provided us with a notice alleging that we have breached the Qualcomm ALA by marketing products that contain CPUs that Arm alleges use designs, technology and code created by Nuvia employees prior to our acquisition of Nuvia; by seeking support and verification from Arm for additional products that use such alleged designs, technology and code; and by suing Arm for breach of the Qualcomm ALA. Arm's notice asserts that it will have the right to terminate the Qualcomm ALA if such alleged breaches are not cured within 60 days of such notice.
>
> Qualcomm 10-K Annual Report (November 6, 2024).

On December 16, 2024 Qualcomm filed a public version of its First Amended Complaint in this case in which it publicly described Arm's October 22, 2024 notice of material breach, stating that "Arm sent Qualcomm a notice of material breach purporting to have the right to terminate Qualcomm's own license," described the contents of the letter, and publicly filed a redacted copy of the notice of material breach. A redacted copy of Arm's October 22, 2024 notice of material breach was and remains accessible to any member of the public, including online though the Court's public docket in *Arm v. Qualcomm*, No. 22-1146. D.I. 39 at 2, 8-9, 32-35; D.I. 39-1.

On January 22, 2025, Qualcomm wrote to Arm and stated that the parties' correspondence on this issue was not confidential, and that Qualcomm was "required by law" to publicly disclose the correspondence in its filings with the U.S. Securities & Exchange Commission, and that "in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice":

"Even if that [January 8, 2025] letter [withdrawing the October 22, 2024 notice of material breach] were itself 'Confidential'—and it is not—Qualcomm is nevertheless required by law to disclose the fact that Arm has withdrawn that notice and indicated that it has no current plan to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. For instance, in filings with the U.S. Securities & Exchange Commission, Qualcomm has disclosed Arm's October 22 notice and Arm's threats to terminate the Qualcomm ALA. Qualcomm intends to update those disclosures in light of Arm's withdrawal of that notice and statement that it does not currently intend to terminate the Qualcomm ALA pending resolution of challenges to the jury verdict. We presume you have no objection to this legally required update."

1/22/2025 Qualcomm Ltr. to Arm (QCVARM_0847182).

On February 5, 2025 Qualcomm publicly described Arm's January 8, 2025 letter in its

Quarterly Report:

On January 8, 2025, Arm notified us that it was withdrawing its October 22, 2024 notice of breach and indicated that it has no current plan to terminate the Qualcomm ALA, while reserving its rights pending the outcome of the ongoing litigation.

Qualcomm 10-Q Quarterly Report (February 5, 2025). Cristiano Amon also publicly

described Arm's communication in its public investor conference call on February 5, 2025.

### Arm's Actions Did Not Interfere With Any Of Qualcomm's Business Opportunities With ███████

The business opportunities Qualcomm alleges it lost are not due to Arm's actions, and

Arm's conduct did not amount to intentional or negligent interference with Qualcomm's business

relationships with ███████ or ███████.

Regarding ████, Qualcomm contends that "[a]fter the Breach Letter was published, [████]

delayed finalizing a termsheet for an agreement under which Qualcomm would design that custom

chip and requested inclusion of language related to Qualcomm's chip development capabilities.

[████] has stated to Qualcomm that before it finalizes that termsheet, it must first understand the

implications of termination of the QC ALA on Qualcomm's ability to deliver the custom chips in

question." SAC ¶ 159. Qualcomm has failed to identify the termsheet in question let alone any

documents relevant to its theory that its business relationship with ████ was harmed by Arm.

A0149

Further, any delay in the finalization of that termsheet is due to factors other than Arm's actions, including Qualcomm's own business practices.

Regarding ████████████, Qualcomm contends that "[████] had informed Qualcomm that it was designing a new mobile phone that would rely on Qualcomm's innovative Snapdragon® 8-Elite SoC.  After learning that Arm was threatening to terminate the QC ALA, however, a senior executive of [████] informed a senior Qualcomm executive that the customer's legal and intellectual-property teams would need to confer with their counterparts at Qualcomm. [████ has also insisted on Qualcomm's providing additional reassurances before it will extend its existing business relationship with Qualcomm." SAC ¶ 158.  Qualcomm has failed to identify any lost opportunity with ████ and any loss of an "exten[sion]" to its relationship with ████ is due to factors other than Arm's actions, including Qualcomm's own business practices.

**Qualcomm's Claims Are Barred By *Noerr-Pennington* And California's Litigation Privilege**

As a matter of law, Arm's alleged conduct is related to litigation and therefore not actionable.  *Noerr-Pennington* immunizes parties from liability "for engaging in conduct (including litigation) aimed at influencing decision making by the government." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 413 (3d Cir. 2016).  The *Noerr-Pennington* doctrine protects "conduct incidental to the prosecution of [a] suit," *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934-35 (9th Cir. 2006), including "demand letter[s] or cease-and-desist letter[s]." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015); *Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 655 F. App'x 103, 111 (3d Cir. 2016) ("cease-and-desist letter" "protected under *Noerr-Pennington*"); *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, C.A. No. 07-127-LPS, 2011 WL 678707, at *2 (D. Del. Feb. 18, 2011) (similar).

Courts also apply *Noerr-Pennington* immunity when plaintiffs bring tortious interference

and other claims based on purported communications about litigation to customers. *See, e.g.*, *Evanger's Dog & Cat Food Co. v. Env't Democracy Project*, No. CV 21-08489, 2022 WL 180205, at *1, *4 (C.D. Cal. Jan. 20, 2022) (dismissing claims arising out of letter to plaintiff's customer); *Fitbit, Inc. v. Laguna 2, LLC*, No. 17-cv-00079- EMC, 2018 WL 306724, at *10 (N.D. Cal. Jan. 5, 2018) (claims based on contacting customers regarding pre-suit demand letter barred by *Noerr-Pennington*).

California's litigation privilege also protects Arm's letter (and the alleged publicizing of that letter) from Qualcomm's tortious interference claims. The "litigation privilege is … absolute in nature," *Silberg v. Anderson*, 50 Cal. 3d 205, 215 (1990), and protects not only statements made in litigation, but also "out-of-court statements 'to nonparties who have a substantial interest in the outcome of the pending litigation,'" *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1040-41 (S.D. Cal. Aug. 29, 2011); *see also Cargill v. Progressive Dairy Sols., Inc.*, No. CV-F-07-0349-LJO-SMS, 2008 WL 2235354, at *6 (E.D. Cal. May 29, 2008) ("news release" "inform[ing] the recipients of the … claims asserted" protected by the privilege); *Designing Health, Inc. v. Erasmus*, No. CV-98-4758 LGB (CWx), 2001 WL 36239748, at *3-4 (C.D. Cal. Apr. 24, 2001) (similar). Arm's letter was made during litigation with Qualcomm regarding Arm's claims. Such publications are protected under California law. *Cargill*, 2008 WL 2235354, at *6.

### Qualcomm Has Not Identified Any Independently Wrongful Conduct

To plead intentional interference with prospective economic advantage, Qualcomm must allege "intentionally wrongful act(s) designed to disrupt the relationship." *See Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.,* 2 Cal. 5th 505, 512 (2017). This element requires "independently wrongful" conduct, defined as conduct "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.,*

19 Cal. 4th 1134, 1159 (2003). Even if a plaintiff alleges some sort of interference with economic advantage, courts dismiss intentional interference claims where the plaintiff still does not allege conduct "wrongful by some legal measure," *Golden v. Sound Inpatient Physicians Med. Grp., Inc.,* 93 F. Supp. 3d 1171, 1178 (E.D. Cal. 2015), or that the conduct "violated any other law, which is a necessary element of intentional interference with economic relations," *Republican Nat'l Comm. v. Google LLC,* 2024 WL 3595538, at *1 (E.D. Cal. July 31, 2024).

Qualcomm has already conceded that breach-of-contract does *not* satisfy the independently-wrongful-acts requirement. D.I. 64 at 13; *see Block v. eBay, Inc.,* 2012 WL 1601471, at *5 (N.D. Cal. May 7, 2012). Allegations that Arm leaked the breach letter or made statements to customers, SAC ¶ 192, likewise do not show violations of "other law," particularly where Qualcomm fails to plead UCL claims and where that conduct is protected by *Noerr-Pennington*. Qualcomm's negligent tortious interference claim fails for the same reason: Arm has "failed to allege facts showing that defendants engaged in an act that is wrongful apart from the interference itself." *See TriCoast Builders, Inc. v. Lakeview Loan Servicing, LLC*, 2021 WL 248316, at *5 (Cal. Ct. App. Jan. 26, 2021) (quotations omitted).

### Qualcomm Has Not Established That Arm Owed Any Duties To Qualcomm

With respect to Qualcomm's negligent interference claim, Arm did not owe Qualcomm a duty of care. California law imposes a duty of care via contract only if the contract itself contains that duty. *See*, *e.g.*, *Golick v. State of California*, 82 Cal. App. 5th 1127, 1150 (2022) (no duty where plaintiffs did not show contract included "duty to protect"); *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 423 (2022) (no duty where contract did not contain "express promise"). Even "[t]he implied covenant of good faith and fair dealing is a contractual relationship and does not give rise to an independent duty of care." *Ragland v. U.S. Bank*, 209 Cal. App. 4th 182, 206 (2012).

Qualcomm also cannot establish a duty of care where Qualcomm and Arm are allegedly competitors. Qualcomm repeatedly alleges that Qualcomm and Arm have "competing CPU designs," and that Arm is seeking to "compete … with Qualcomm." SAC ¶¶ 1, 5; *see also id.* ¶¶ 35, 52, 70–74, 160, 165. But "[t]here is no duty of care between competitors under California law." *Singman v. NBA Props., Inc,* 2014 WL 7892049, at *5 (C.D. Cal. Jan. 17, 2014); *Stolz v. Wong Commc'ns Ltd. P'ship,* 25 Cal. App. 4th 1811, 1825 (1994).

### Qualcomm's Claims Are Barred By Unclean Hands

Qualcomm's allegations regarding Arm's interference with Qualcomm's customer relationships is also barred by the equitable doctrine of unclean hands. "One who comes into equity must come with clean hands and keep those hands clean throughout the pendency of the litigation even to the time of ultimate disposition by an appellate court." *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 310 (D. Del. 2005) (quoting *Gaudiosi v. Mellon*, 269 F.2d 873, 881 (3d Cir. 1959)). "The clean hands maxim gives broad discretion to the court's equity power in refusing to aid an unclean hands litigant." *Id.* "Any willful act, which can rightfully be said to transgress equitable standards, is sufficient." *Id.* at 311.

"The equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Kars 4 Kids Inc. v. Am. Can!*, 98 F.4th 436, 449 (3d Cir. 2024) (quoting *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001)). "The misconduct must be rooted in 'fraud, unconscionable conduct, or bad faith ... that injures the other party and affects the balance of equities.'" *Id.* at 450 (quoting *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 n.12 (3d Cir. 1999)).

Courts have found unclean hands where the plaintiff engaged in the same (inequitable) conduct it accuses a defendant of. *See, e.g.*, *Emco, Inc. v. Obst*, No. CV03-6432-R (RZX), 2004

**A0153**

WL 1737355, at *4–6 (C.D. Cal. May 7, 2004) (in a Lanham Act case where plaintiff accused defendant of falsely advertising that its blades were manufactured in the United States, the court found that defendant had proven its affirmative defense of unclean hands as a matter of law because plaintiff's "Americut" blades—which plaintiff promoted with classic American symbols such as the American flag and Statue of Liberty—were similarly manufactured overseas); *Haagen-Dazs, Inc. v. Frusen Gladje Ltd.*, 493 F. Supp. 73, 75–76 (S.D.N.Y. 1980) (denying plaintiff's motion for a preliminary injunction due to plaintiff's unclean hands in accusing defendant of falsely using Swedish motifs to suggest that its products were not of domestic origin, when plaintiff had done similarly).  Qualcomm published Arm's October 2024 letter just days after Arm did.  Further, on March 25, 2025, Bloomberg published a story concerning Qualcomm's non-public complaints of anticompetitive behavior at the European Commission, US Federal Trade Commission, and Korea Fair Trade Commission.  Josh Sisco & Ian King, *Qualcomm Takes Legal Fight with Arm to Global Antitrust Agencies*, Bloomberg News (Mar. 25, 2025, 3:55 PM CDT), https://www.bloomberg.com/news/articles/2025-03-25/qualcomm-takes-legal-fight-with-arm-to-global-antitrust-agencies.  Qualcomm's publication of Arm's letter, and non-public litigation materials to Bloomberg bar its claims against Arm under the doctrine of unclean hands.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8 (June 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Arm further responds that Qualcomm's witness Mr. Cristiano Amon, Qualcomm's President and Chief Executive Officer and corporate designee on harm resulting from Arm's alleged tortious interference (*see, e.g.*, Arm's Fed. R. Civ. P. 30(b)(6) Topic No. 56), testified that

Qualcomm's allegations of harm resulting from the October 22 Notice and Bloomberg article are based on Arm's allegations in the lawsuit. For example, Mr. Amon testified as follows:



Amon Dep. Tr. (Rough) at 161:15-162:19; *see also id.* at 146:13-147:7. Mr. Amon's testimony confirms that Qualcomm's allegations of harm resulting from the October 22 Notice and Bloomberg article relate squarely to the litigation and Arm's litigation-related conduct. Accordingly, Qualcomm's claims for tortious interference are barred by *Noerr-Pennington* and California's Litigation Privilege.

Regarding ███ Arm further responds that Qualcomm still has failed to identify any harm to its business relationship with ███ let along any harm that was caused by Arm. In particular, the material business terms agreed between Qualcomm and ███ were unaffected by the October 22 Notice. For example, Qualcomm's witness Mr. Pavankumar Mulabagal, Qualcomm's corporate designee on Arm's Fed. R. Civ. P. 30(b)(6) Topic Nos. 51 ("All communications between Qualcomm and ███, including the timing of such communications, surrounding Qualcomm's

contention that Arm intentionally and/or negligently interfered with Qualcomm's relationship with

█████ ") and 58 ("The factual basis for Your contention that Arm had knowledge of Your existing

or prospective business relationship with ████ including when and how Arm first became aware

of the relationship"), testified ████████████████████████████

████████████████████████████████

████████████████████████████ *See,*

*e.g.*, Mulabagal Dep. Tr. at 35:18-36:15.

Nor did the October 22 Notice and Bloomberg article materially delay Qualcomm's

business dealings with ████████████████████

████████████████████████████████

████████████████████████████████

████████████████████ *See, e.g., id.* at 49:6-63:4; QCVARM_0864924;

QCVARM_0864933; QCVARM_0864833. ████████████████

████████████████████████████████

████████████████████████████████

████████████████████████. Mulabagal Dep. Tr. at 47:17-48:15. And,

Mr. Mulabagal testified that ████████████████████

████████████████████████████████

████████████████████ *Id.* at 88:22-89:15. ████████████████

████████████████████████████████

████████████ *See, e.g., id.* at 57:5-58:3. The October 22 Notice and Bloomberg article

therefore did not alter Qualcomm's and ████ development timeline.

Arm's dealings with ████ also did not impact Qualcomm's dealings. ████████

████████████████████████████████

████████████████████████████████ *See id.* at 94:7-98:22.  Qualcomm therefore cannot point to any actionable harm to its business relationship with ████, let alone harm that was caused by Arm.

Regarding ███████, Arm further responds that Qualcomm still has failed to identify any harm to its business relationship with ████████ that was caused by Arm.  Qualcomm's business relationship with ████████ had instead become increasingly strained in the years preceding the October 22 Notice because of Qualcomm's decision to ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ *See, e.g.*, Amon Dep. Tr. (Rough) at 264:2-275:25.  Predating the October 22 Notice, Mr. Amon ████████████████████

████████████████████████████████████████ *See, e.g.*, *id.* at 266:2-8.  Any harm to Qualcomm's business relationship with ████████ was Qualcomm's own doing and unrelated to any actions by Arm.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: QCVARM_0865022, QCVARM_0864924, QCVARM_0864933, QCVARM_0864833, QCVARM_0865420, QCVARM_0865236, QCVARM_0865430, QCARM_3425702, QCARM_3534037, QCVARM_0856270, QCVARM_0856888, QCVARM_1069082, QCVARM_1069106, QCARM_3533982, QCARM_7484460, QCARM_7484463, QCVARM_0467694, QCVARM_1069945, QCVARM_1070005, QCVARM_1118617, QCARM_7515834, QCVARM_0464076, QCVARM_0464128;

QCVARM_0464495,    QCVARM_0465604,    QCVARM_0600730,    QCVARM_0601923,

QCVARM_0608314,    QCVARM_1068645,    QCVARM_1118760,    QCVARM_1119347,

QCVARM_0848786.

Arm further incorporates by reference the testimony of the following witnesses: Pavankumar Mulabagal, Cristiano Amon, and Spencer Collins, including the documents used at each of those depositions..

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 9:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that Your conduct as identified in Paragraphs 204-212 of the Second Amended Complaint does not constitute a violation of unfair competition law under the California Unfair Competition Law. Your response should include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 9 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is premature, overly broad, and unduly burdensome.  Arm objects to this Interrogatory to the extent it calls for a legal conclusion.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

Qualcomm asserts that Arm violated the California Unfair Competition Law ("UCL") by allegedly (1) withholding deliverables under the Qualcomm ALA and TLA; (2) misrepresenting to

Qualcomm that it was not withholding deliverables; (3) "wrongfully" asserting that it has the right to terminate the QC ALA; (4) refusing to negotiate licensing terms with Qualcomm in good faith; (5) threatening or attempting to cut off Qualcomm's access to Arm's ISA; (6) leaking its October 22, 2024 letter to the media; (7) interfering or attempting to interfere with Qualcomm's customer relationships; and (8) making misleading statements to Qualcomm's customers to pressure them not to acquire products from Qualcomm. SAC ¶¶ 206–07. None of this conduct constitutes "a violation of unfair competition law" under the UCL.

To bring a claim under the UCL, Qualcomm must show that Arm engages in an "unfair, unlawful, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Qualcomm has indicated its allegations implicate the "unfair" and "unlawful" prongs. Arm's conduct is not unfair or unlawful.

There are two tests courts use to determine whether conduct is "unfair" under the UCL. First, when a business competitor brings a UCL claim, California courts apply a "tethering test" that examines whether the conduct "[1] threatens an incipient violation of an antitrust law, or [2] violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [3] otherwise significantly threatens or harms competition." *Cel-Tech Comm'cns, Inc. v. L.A. Cell. Tel. Co.,* 20 Cal.4th 163, 187 (1999). The claim must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Zhejiang Yuanzheng Auto*, 2023 WL 4317189, at *12 (citing *Cel-Tech Comm'cns, Inc. v. L.A. Cell. Tel. Co.,* 20 Cal.4th 163, 186–87 (1999)). A party's conduct "violates the policy or spirit of the antitrust laws" where "the effect of the conduct is comparable to or the same as a violation of the antitrust laws, [] or it otherwise significantly threatens or harms competition." *People's Choice Wireless*, 131 Cal. App. 4th at 662 (citing *Cel-Tech*, 20 Cal. 4th at 187). Second, in consumer actions, California courts apply a "balancing test" which "weigh[s] the utility of the defendant's

conduct against the gravity of the harm to the alleged victim." *Id.* (simplified).  Finally, the "unlawful" prong requires Qualcomm to prove that Arm violated a federal, state, or local law.  *See Olson v. World Fin. Grp. Ins. Agency, LLC*, 2024 WL 4668515, at \*8 (N.D. Cal. Nov. 4, 2024). Arm's alleged conduct does not violate the UCL under either the "unfair" prong—including under both the tethering and balancing tests—or "unlawful" prong.

### Arm's Alleged Conduct Does Not Violate the UCL Under The Tethering Test

As a threshold matter, Qualcomm's allegations about Arm's allegedly unfair conduct suffer from two fatal flaws.  For one, Qualcomm "does not identify an antitrust law or a policy or spirit of such a law." *Roberson v. Pocker*, 2024 WL 2984026, at \*10 (C.D. Cal. Apr. 3, 2024) (granting dismissal); *see also Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002) (affirming dismissal where "complaint allege[d] that Albertson's acted with a motive to secure an advantage over competitors" but did "not state a theory of unfair practice based on violation of specific anti-trust statutes or policies of anti-trust legislation").  Qualcomm cannot make the "unusual" showing that Arm somehow "violate[d] the 'policy and spirit' of the antitrust laws without violating the actual laws themselves." *Synopsys, Inc. v. ATopTech, Inc.,* 2015 WL 4719048, at \*10 (N.D. Cal. Aug. 7, 2015).  For another, Qualcomm fails to identify any relevant market in which Arm's conduct allegedly threatens competition and has affirmatively represented that it "does not intend to offer a market definition to support its" UCL claim.  4/9/25 Ltr. From C. Nyardy at 4.  But "without a definition of [the] market there is no way to measure [Arm's] ability to lessen or destroy competition." *Ohio v. Am. Express*, 585 U.S. 529, 543 (2018); *Racek v. Rady Children's Hosp. of San Diego*, 2012 WL 2947881, \*6 (Cal. App. July 20, 2012); *Sun Microsystems, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 992 (N.D. Cal. 2000); *Vox Network Sols., Inc. v. Gage Tech., Inc.*, 2025 WL 929939, \*5 (N.D. Cal. Mar. 27, 2025) (dismissing claim under UCL's "unfair" prong, where plaintiff failed to identify relevant market); *Reilly v. Apple Inc.*, 578 F.Supp.3d 1098, 1106-1111

(N.D. Cal. 2022) (same where plaintiff alleged only implausible market).  Qualcomm's allegations thus beg the question: "Competition" with what products, or with whom?

Although the legal inquiry should end there, Arm's conduct nevertheless does not satisfy any of the respective tests under the UCL or constitute a violation of that law.  Qualcomm's continued refusal to identify the antitrust laws implicated by Arm's conduct or the relevant market(s) in which Arm's conduct allegedly threatens competition makes it impossible for Arm to provide the "complete factual and legal bases" supporting Arm's contention that its "conduct as identified in Paragraphs 204-212 of the Second Amended Complaint does not constitute a violation of unfair competition law under the California Unfair Competition Law."  Arm's analysis is thus limited to Qualcomm's present allegations and representations, and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory to the extent Qualcomm clarifies its claim.

Qualcomm alleges that Arm acted unfairly by "withholding deliverables" it must provide "under the Qualcomm ALA and TLA," "misrepresenting to Qualcomm that it was not withholding deliverables," "asserting that it has the right to terminate the QC ALA without any basis in the QC ALA for those assertions," and "refusing to negotiate license terms with Qualcomm in good faith." SAC ¶ 206.  These allegations assert that Arm breached its contracts with Qualcomm, but corporate plaintiffs may not bootstrap contract claims into UCL violations. *See, e.g.*, *Martin Saturn of Ontario, Inc. v. Suburu of Am. Inc.*, 2023 WL 9417499, *8 (C.D. Cal. July 21, 2023); *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012); *Scripps Clinic v. Superior Court*, 108 Cal.App.4th 917, 940 (2003) (concluding harm was contractual, but not a UCL violation); *Mazal Grp. LLC v. Espana*, 2017 WL 6001721, at *4 (C.D. Cal. Dec. 5, 2017) (dismissing UCL claim when plaintiff did not include any specific allegations regarding the unfair prong and simply incorporated breach of contract allegations)).  As Qualcomm itself has argued, it

"makes little sense to hold that contract disputes between 'the world's most sophisticated companies,' [*Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 997 (9th Cir. 2020)], could give rise to an independent UCL claim."  Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 48 (Apr. 26, 2024) (citing *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008)).  Qualcomm's assertion that Arm refused to negotiate license terms with Qualcomm in good faith is barred by the statute of limitations.

To the extent Qualcomm alleges that any of Arm's conduct was aimed at "threatening or attempting to cut off Qualcomm's access to the ubiquitous Arm ISA," SAC ¶ 207, such conduct still does not constitute a violation of the UCL.  As Qualcomm itself has argued, "an antitrust duty to deal with" or license others is "far outside the mainstream of antitrust law." Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 30 (Apr. 26, 2024); *see also Verizon Comm'cns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407-411 (2004) ("As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)); *FTC v. Qualcomm*, 969 F.3d 974 (9th Cir. 2020) ("As the Supreme Court has repeatedly emphasized, there is no duty to deal under the terms and conditions preferred by [a competitor's] rivals."); *Simon and Simon, PC v. Align Tech., Inc.*, 2020 WL 1975139, *3-6 (D. Del. Apr. 24, 2020).  It is completely beyond the reach of antitrust law here given Qualcomm has disclaimed any argument that Arm is attempting to exercise monopoly power.  4/28/25 Ltr. From C. Nyardy at 1 ("As the … SAC make[s] clear, Qualcomm is not asserting a claim for monopolization under Section 2 of the Sherman Act; it is asserting a claim under the UCL's 'unfair' prong."); SAC ¶ 207 (striking monopoly allegation).  "[I]n the absence of any purpose to create or maintain a monopoly," antitrust law "does not restrict the long-recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent

discretion as to parties with whom he will deal." *United States v. Colgate & Co.*, 250 U.S. 300, 308 (1919); *Trinko*, 540 U.S. at 408. For that reason, California courts have consistently held a purported refusal to deal "is neither unlawful nor unfair" as a matter of law for purposes of the UCL. *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 367 (2001); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 254; *Beverage v. Apple Inc.*, 101 Cal. App. 5th 749-50, 753-56 (2024); *People's Choice Wireless, Inc. v. Verizon Wireless,* 131 Cal. App. 4th 656, 668 (2005) (explaining that though it is true an antitrust violation is not necessary under the UCL, "[t]he allegations here are simply too far removed from cognizable antitrust evils to warrant intervention by a California court").

Also, to the extent Qualcomm's allegation that Arm "refus[ed] to negotiate license terms with Qualcomm in good faith," SAC ¶ 206, refers to the claim that Arm violated the implied covenant of good faith and fair dealing by allegedly refusing to negotiate a license to v10 of the Arm ISA, both the breach of contract and "refusal to deal" principles explained above preclude UCL liability premised on such conduct.

Next, Arm did not violate the UCL by allegedly "interfering or attempting to interfere with Qualcomm's relationships with Qualcomm's current and prospective customers," "leaking the Breach letter to the media," and "making misleading statements to Qualcomm's customers to pressure them not to acquire products from Qualcomm." SAC ¶¶ 206–07. The policy and spirit behind the antitrust laws protect against harm "to *competition itself*, not merely to competitors." *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 996 (9th Cir. 2020). In its recent filings, Qualcomm indicated its view for the first time that Arm acted unfairly in order to "gain market share as a chip designer." Qualcomm nowhere alleges or explains how this or any other alleged conduct broadly undermines a competitive market or consumers, or harms any alleged competitor other than Qualcomm. And in any event, Arm has virtually no market share today in a so-called "chip design

market."

Further, because Arm's statements in Arm's October 22, 2024 letter are true, they cannot serve as a basis for "unfair" or anticompetitive conduct. *See Digene Corp. v. Third Wave Techs., Inc.*, 536 F. Supp. 2d 996, 1006 (W.D. Wis. 2008), aff'd, 323 F. App'x 902 (Fed. Cir. 2009); *Gen. Commc'ns Eng'g, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 421 F. Supp. 274, 290 (N.D. Cal. 1976) (holding that "salesman puff" does not violate antitrust laws). The antitrust laws are generally unconcerned with the content of competitive speech, even critical or derogatory speech. *See Schachar v. Am. Acad. Of Ophthalmology*, 870 F.2d 397, 399 (7th Cir. 1989) ("Antitrust law does not compel your competitor to praise your product or sponsor your work. To require cooperation or friendliness among rivals is to undercut the intellectual foundations of antitrust law."); *cf. Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 937 F. Supp. 435 ("Antitrust laws do not exist to stifle speech … Thus, any stigma that MSL has suffered because of ABA's not listing MSL as an accredited school does not provide the necessary offensive *conduct* for antitrust liability.").

### Arm's Alleged Conduct Does Not Violate the UCL Under The Balancing Test

The balancing test asks "whether the challenged business practice is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 1197, 1226 (N.D. Cal. 2014). Qualcomm does not properly qualify as a consumer such that the consumer balancing test should apply. Even if Qualcomm could constitute a consumer under the test, for the same reasons outlined above, Arm's business practices are pro-competitive, foster innovation, and benefit consumers, meaning they are not immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of Arm's conduct far outweighs any potential harm to Qualcomm. *See Drum v. San Fernando Valley*

*Bar Association.*, 182 Cal. App. 4th 247, 257 (2010).

Arm's business model is inherently pro-competitive and beneficial to consumers.  Arm's decision to license its ISA designs enables business partners to innovate, meet consumer demands across a diverse range of applications, and provide differentiated products.  That, in turn, increases consumer choice and competition—including against Arm's own CPUs—resulting in lower consumer prices.  And, Arm's licenses for its market-leading, ready-to-use CPUs offer partners an opportunity to bypass the enormous costs associated with CPU development and instead reallocate those resources towards innovating their products in other ways.  Arm's partners can thereby speed up their time-to-market and fill more areas of consumer need, all while passing along their savings to consumers.  Arm's practices are "reasonable and consistent with current industry practice," and "reduc[e] 'transaction costs and complexities'" for consumers.  Qualcomm Answering Br., *Key v. Qualcomm*, No. 23-3354, D.I. 22.1 at 47–48 (Apr. 26, 2024) (citing *FTC v. Qualcomm*, 969 F.3d 974, 996 n.17, 996 (9th Cir. 2020)).  Any alleged business-related harms Qualcomm may have suffered do not outweigh the pro-competitive benefits and practical utility of Arm's business practices.

### Arm's Alleged Conduct Does Not Violate the UCL Under The Unlawful Prong

To succeed under the "unlawful" prong of the UCL, Qualcomm must allege "a violation of another law [as a] predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007); *Gopher Media LLC v. Melone*, 2023 WL 8790266, at *15 (Dec. 19, 2023 S.D. Cal) ("To prevail on a claim under the unlawful prong of the [UCL], the plaintiff must show that a challenged [conduct] violates any federal or California statute or regulation." (citation omitted)).  Qualcomm alleges that "Arm's conduct is … unlawful because it violates California common law, including state law prohibiting intentional and negligent interference with prospective economic advantage."  SAC ¶ 209.  But a

common law claim cannot form the predicate for a UCL claim.  *See Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1044 (9th Cir. 2010), ("[A] common law violation such as breach of contract is insufficient … Because [plaintiff] does not go beyond alleging a violation of common law, he fails to state a claim under the unlawful prong of § 17200."); *Mazal Group, LLC v. Espana*, 2017 WL 6001721, at *4 (C.D. Cal. Dec. 4, 2017) (granting MTD on UCL claim when plaintiff did not go beyond alleging a violation of common law).  And, in any event, Qualcomm's argument is circular.  Qualcomm contends Arm's conduct is unlawful because it tortiously interfered with Qualcomm's economic advantage, SAC ¶ 209, and simultaneously contends Arm's conduct is wrongful for purposes of that tort because the conduct violates the UCL.  Such circular reasoning cannot satisfy the elements of either claim.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory.  Subject to and without waiver of its general and specific objections, Arm further responds as follows:

Qualcomm claims that Arm acted "unfair[ly]" by sending Qualcomm a letter on October 22, 2024 to notify Qualcomm that it was in material breach of the Qualcomm ALA.  SAC ¶ 206.  But, two years prior, Qualcomm itself sent threatening letters to Arm with baseless claims that Arm breached the ALA.  On November 3, 2022 and December 5, 2022, Qualcomm sent notice letters to Arm alleging that, "[b]y refusing to provide the OOB, ARM has failed to comply with its obligations under ███████████████████████████████ . . . of the ALA," and that "ARM has ██ days to cure any breach of ███████ Arm_01241585; ARM_00025401.  Arm responded on December 6, 2022, stating that "Arm strongly disagrees with Qualcomm's claim that ██████ ██ is at issue or that provision of the OOB implicates ███████ and that "Qualcomm's letter is a

transparent and malicious effort to transform a debate about Arm's support obligations under ███████ into a weapon of economic duress through its improper invocation of ███████ Arm_01241565. Arm's legitimate defense of its rights under the ALA two years after Qualcomm itself began weaponizing the ALA to coerce Arm cannot serve as a basis for a UCL claim.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARMQC_00001136, ARM_01259705, ARMQC_00001136, QCVARM_1068459, QCVARM_0462995, QCVARM_0528826.

Arm further incorporates by reference the testimony of the following witnesses: Lynn Couillard, Martin Weidmann, Gerard Williams, Spencer Collins, Michael Williams, William Abbey, Mark Dragicevich, Karthik Shivashankar, Cristiano Amon, Jean-Francois Vidon, Paul Williamson, Richard Meacham, Ziad Asghar, Peter Greenhalgh, Jannik Nelson, Durga Malladi, and Manju Varma, including the documents used at each of those depositions. Arm also incorporates by reference its responses to Interrogatory Nos. 1–8, and 10–12, including the testimony and documents cited and incorporated therein (and any supplements thereto). Additionally, Arm incorporates by reference its Motion to Dismiss, D.I. 19, 28, Arm's Motion to Dismiss Qualcomm's First Amended Complaint, D.I. 48, 72, and Arm's Motion to Dismiss Qualcomm's Second Amended Complaint, D.I. 232, 233, 305.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 10:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not breach the Qualcomm ALA. Your response should include, but is not limited to, the complete factual and legal bases for any contention that you did not withhold ARM Technology or Updates or breach the implied covenant of good faith and fair dealing, and should

include an identification of all documents by Bates numbers that you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 10 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is premature, overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks "the complete factual and legal bases," without limitation.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.  Arm further objects to this Interrogatory to the extent it calls for a legal conclusion.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

**Qualcomm's Allegations**

Qualcomm alleges in its Second Amended Complaint that Arm breached ▮▮▮▮ of the Qualcomm ALA by allegedly withholding OOB and ACK patches. Second Amended Complaint ¶¶ 78-94.  Qualcomm alleges in its Second Amended Complaint that Arm breached an implied covenant of good faith and fair dealing under the ALA by "with[olding] deliverables that it was required to provide Qualcomm under the QC ALA" and "fail[ing] to negotiate an extension to the QC ALA that would cover future version of the architecture, including v10."  Second Amended Complaint ¶ 184.

**Arm Did Not Breach The Qualcomm ALA Based
On The Alleged Withholding Of ACK And OOB**

For Qualcomm's allegations that Arm breached the Qualcomm ALA based on its alleged

withholding of ACK and OOB, including based on an implied covenant of good faith and fair dealing, Arm incorporates by reference its response to Interrogatory No. 1.

Further, Qualcomm's implied covenant allegation is duplicative of Qualcomm's █████ breach claim and fails for the same reasons. *See, e.g.*, *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 439 (3d Cir. 1993) (holding that Plaintiff "cannot assert a claim for breach of implied covenants that is based on exactly the same acts which are said to be in breach of express covenants."); *Cision US, Inc. v. CapTech Ventures, Inc.*, No. CV 24-00063-MN-SRF, 2025 WL 1094318, at *5 (D. Del. Apr. 11, 2025) (dismissing Plaintiff's "claim for breach of the implied covenant of good faith and fair dealing … as impermissibly duplicative of its breach of contract and warranty claims.").

### Arm Did Not Breach Any Implied Covenant Of Good Faith And Fair Dealing For The Qualcomm ALA By Allegedly Failing To Negotiate A License To v10

Qualcomm alleges in its Second Amended Complaint that Arm breached an implied covenant of good faith and fair dealing under the ALA by "fail[ing] to negotiate an extension to the QC ALA that would cover future version of the architecture, including v10." Second Amended Complaint ¶ 184.

That is not true. On June 4, 2025, Will Abbey, Arm's Chief Commercial Officer, wrote to Qualcomm regarding its request for a v10 license, stating that Arm is prepared to negotiate in good faith for a v10 license and proposed a business meeting:

> Arm is prepared to negotiate in good faith over the terms of a license to the v10 architecture. As the first step in those negotiations, we propose a meeting between our commercial teams to better understand how Qualcomm intends to use the v10 architecture. That will help Arm put together an appropriately tailored licensing proposal. Please let us know a few dates Qualcomm is available for that meeting, and we will let you know our availability.

June 4, 2025 Will Abbey Letter to Roawen Chen. On June 9, Qualcomm responded, but did not address Mr. Abbey's request for a business meeting. Further, on June 13, 2025, Arm's Executive

Vice President and Chief Legal Officer Spencer Collins sent Qualcomm another letter again stating that Arm is prepared to negotiate in good faith:

> On this basis, on June 4, 2025, Will Abbey, Arm's Chief Commercial Officer, proposed in good faith a business meeting regarding Qualcomm's request for a license to Arm's v.10 architecture.  Mr. Abbey's offer to meet remains open and Arm continues to believe that such a meeting would be the most efficient path forward in response to Qualcomm's request.  Please have the relevant business personnel respond to Mr. Abbey with dates that Qualcomm is available for such a meeting.
>
> * * *
>
> Despite these clear limits on Qualcomm's election rights under the ALA, as we told Qualcomm in 2020, nothing prevents Arm and Qualcomm from discussing a potential license to future versions of the Arm architecture as they become available. Arm remains prepared to negotiate in good faith over the terms of a license to the v.10 architecture.

June 13, 2025 Spencer Collins Letter to Ann Chaplin.

### Arm Is Not Required To Negotiate The Terms And Conditions Of A V10 License Under The Qualcomm ALA Because Qualcomm Did Not Have The Right To Elect V10 In 2020

Qualcomm, in any event, does not allege that Arm breached ████████ of the Qualcomm ALA. ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ Qualcomm does not accuse Arm of breaching of this Section.  Any implied covenant claim based on ████████ thus improperly "seeks to impose" obligations "beyond those to which the parties actually agreed." *Lamke v. Sunstate Equipment Co., LLC*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004).

As an initial matter Arm had no obligation to negotiate an extension under ████████ based on Qualcomm's May 2020 email because v10 was not in development at that time, and there

were no ██████████████████████████████████████████████ to elect in 2020.   In May 2020, Arm's v10 was not in development, and the parties never reached any ████ ███████ regarding any future versions of █████████ that would be covered by a purported election.   In April 2020, Qualcomm reached out to Arm asking if anyone is working on v10 Architecture in the context of seeking an extension to the ALA ███████████████. ARM_00005340.   Arm responded that "no one is working on v10." *Id.*   Qualcomm responded, stating that "no meaningful discussions can currently be initiated around the terms and conditions for an extension of the ALA Term to cover v10 architecture" and sought to amend the ALA. *Id.*

On May 15, 2020 Lynn Couillard from Arm wrote to Qualcomm, stating that "[t]he intent of ████████ . is to allow for an extension of the agreement as of this point in the term of the agreement.  If there is not desire from Qualcomm to negotiate terms of an extension at this point, but rather to have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire" and that "there is nothing that stops us from discussing next gen architecture or entering into an agreement anytime in the future regardless of the existing agreement":

---

From: Lynn Couillard <Lynn.Couillard@arm.com>
Sent: Friday, May 15, 2020 9:49 AM
To: Brett Bettesworth <betteswb@qti.qualcomm.com>; Rajiv Gupta <grajiv@qti.qualcomm.com>
Cc: Todd Lepinski <Todd.Lepinski@arm.com>
Subject: [EXT] Re: V10 -->V9 architecture follow-on

Hello Brett and Rajiv, (+Todd)

The intent of section ████ is to allow for an extension of the agreement as of this point in term of the agreement.  If there is no desire from Qualcomm to negotiate terms of an extension at this point, but rather to have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire.  However, importantly, there is nothing that stops us from discussing next gen architecture or entering into an agreement anytime in the future regardless of the existing agreement.

Note that at the time of the v8 architecture closure, we also included ███████ which at the time had no definition, and eventually became v9.   We are in a similar situation here with regards to visibility on next generation architecture.

Please let us know if you'd like to discuss, we can set something up for next week.

Thanks
Lynn

ARM_00005340. Mr. Bettesworth responded five days later. He did not dispute any of Ms. Couillard's statements, including that "[t]he intent of ▮▮▮▮▮▮▮ is to allow for an *extension* of the agreement *as of this point in term of the agreement*," and that if Qualcomm desires to "have a discussion around licensing the next architecture sometime in the future, then this portion of the agreement will expire." He elected to "go ahead and move forward with the extension":

| From: | Brett Bettesworth [betteswb@qti.qualcomm.com] |
|---|---|
| Sent: | 20/05/2020 20:05:11 |
| To: | Lynn Couillard [Lynn.Couillard@arm.com]; grajiv@qti.qualcomm.com |
| CC: | Todd Lepinski [Todd.Lepinski@arm.com] |
| Subject: | RE: V10 -->V9 architecture follow-on |

Importance:    High

Hi Lynn,

Thanks for your email and the note below. We will go ahead and move forward with the extension at this point, per the ALA optional election.

████████████████████████████████████████████

We can discuss further at some point in the near future, but wanted to ensure that we provided timely notification of our election here, as mentioned previously.

Sincerely,
Brett

*Id.*

Arm and Qualcomm never reached any mutual agreement over what if any Arm Technology would be included in a purported extension. And to the extent any agreement was reached, it is that v10 would not be included: after Arm notified Qualcomm that v10 was not in development, Qualcomm acknowledged that "no meaningful discussions can currently be initiated around the terms and conditions for an extension of the ALA Term to cover v10 architecture" and Qualcomm did not dispute any of Ms. Couillard's statements, including that "[t]he intent of ▮▮▮▮▮▮▮ is to allow for an extension of the agreement as of this point in term of the agreement," and that if Qualcomm desires to "have a discussion around licensing the next architecture sometime in the

future, then this portion of the agreement will expire." *Id.* Qualcomm did not follow up on that correspondence, and did not make any effort to follow up on its May 2020 correspondence until five years later, as discussed above. Instead, the parties proceeded with negotiating and finalizing an Annex 1 for v9, which was the only planned architecture at that time.

### Arm Is Not Required To Negotiate The Terms And Conditions Of A V10 License Under The Qualcomm ALA Because Qualcomm's May 2020 Emails Were Not A Valid Election

Arm was not obligated to negotiate an extension of the Qualcomm ALA because Qualcomm's May 2020 emails in which Qualcomm purported to elect to extend the ALA were not a valid election.



does not include email as a valid or effective method of providing notice under the ALA. Qualcomm's May 20, 2020 email did not give Arm proper notice of its purported election under ████████, rendering Qualcomm's purported "election" ineffective. Qualcomm did not send Arm follow-up correspondence in compliance with ████████ regarding its purported "election," and did not correspond with Arm again about its purported "election" for another five years. But even if Qualcomm had made a valid election, its assertion that Arm breached the implied covenant would be barred by the applicable statute of limitations.

### Arm Did Not Breach The Qualcomm ALA Based On The Alleged Withholding Of ETE Checker Support

Qualcomm does not allege that Arm breached the Qualcomm ALA based on withholding

ETE Checker support in its Second Amended Complaint or in its response to Arm's Interrogatory 2, which calls for "the complete legal and factual basis for [Qualcomm's] contention that Arm failed to meet any of its obligations under the Qualcomm ALA." Second Amended Complaint; Qualcomm's March 10, 2025 Response to Arm's Interrogatory No. 2. Nor did Qualcomm identify any alleged withholding of ETE Checker support in its November 3, 2022 letter to Arm. ARM_01423632 at -634. Qualcomm states in its response to Arm Interrogatory No. 13 that "Arm violated the terms of the Qualcomm ALA by failing to … provide support for the ETE Checker," but does not specify the support that was allegedly withheld or identify any term of the ALA that Arm allegedly breached.

To the extent Qualcomm's statements can be understood, Arm did not breach the Qualcomm ALA based on any alleged withholding of support for the ETE Checker. Qualcomm states in its response to Arm Interrogatory No. 13 that "the ETE Checker [is] a component of the ACK licensed by Qualcomm for Armv9." However, Arm delivered the Armv9 ACK—including the ETE Checker—to Qualcomm at least as early as May 27, 2019, and Arm delivered all subsequent quarterly ACK releases to Qualcomm. *See*, *e.g.*, ARMQC_02604616 (showing Arm making available to Qualcomm "Product: ▮▮▮▮ – Armv9-A Architecture Compliance Kit" and "Part: ▮▮▮▮▮▮▮ – Armv9-A Architecture Compliance Suite," and quarterly releases thereto, via the Arm Connect document delivery portal). Qualcomm's unexplained statement that Arm allegedly withheld unspecified support for the ETE Checker allegedly constitutes a breach of unspecified "terms of the Qualcomm ALA" fails to show any breach by Arm.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and

without waiver of its general and specific objections, Arm further responds as follows:

In depositions, Qualcomm has suggested that the Qualcomm ALA's definition of ███████ entitles Qualcomm to the unreleased v10 of the Arm ISA. That is incorrect. The Qualcomm ALA defines ████████████████████████████████████████████████████████████████████████████████████████████████████████████ ████████████████████ ARM_00055357 at 360. Because the only version of the Arm ISA that was available at the time of the Qualcomm ALA's execution was v8, the ███████████████ ██████████████████████████████ Indeed, the parties executed an Annex 1 for ██████ ██████ contemporaneously with the execution of the ALA to serve as a placeholder for the next available version of the Arm ISA. QCARM_0338573. In 2020, the parties executed an Annex 1 for v9 of the Arm ISA, which ████████████████████████████████████████ ████████ QCARM_0343954. This confirms that the parties understood that ███████████ ████████████████████████████

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARM_01293447, ARMQC_02771129, ARMQC_02771151, QCVARM_0851876, ARMQC_02771128, ARMQC_02771124, ARMQC_02771125, ARMQC_02771126, ARMQC_02771127, QCVARM_0453724, QCVARM_0851511, QCARM_0562765, QCVARM_0448842, QCVARM_0532239, QCVARM_0534596, QCVARM_0534597, QCVARM_0852203, QCVARM_0851120, QCVARM_0851333, QCVARM_0531892, QCVARM_0847000, QCVARM_0448361, QCVARM_0529072, QCVARM_0528955, QCVARM_0529887, QCVARM_0447175, QCVARM_0449653, QCVARM_0449658, QCVARM_0447252, QCVARM_0846761, QCVARM_0537065, ARMQC_02603587, ARMQC_02604609, ARMQC_02604610, ARMQC_02604611,

ARMQC_02604612, ARMQC_02604613, ARMQC_02604614, ARMQC_02604615,

ARMQC_02604616, ARMQC_02604617, ARMQC_02604618, ARMQC_02604619,

ARMQC_026046020, ARMQC_02604621, ARMQC_02604622, ARMQC_02604623,

ARMQC_02747093, ARMQC_02747097, ARMQC_02747103, ARMQC_02747104,

ARMQC_02779171, ARMQC_02779174, ARMQC_02779176, ARMQC_02779179,

ARMQC_02779181, QCARM_2430181, ARM_00100013, ARM_01282655, ARM_00090791,

ARM_00067349, ARM_00102683, ARM_00091389, ARM_00068087, ARM_00068131,

ARM_00068459, ARM_00068504, ARM_00091657, ARM_00091659, ARM_00091714,

ARM_00091768, ARM_00091799, ARM_00091834, ARM_00091869, ARM_00091903,

ARM_00075096, ARM_00075098, ARM_00075343, ARM_00076113, ARM_00103566,

ARM_00103635, ARMQC_02755397, ARMQC_02755446, ARMQC_02755490,

ARMQC_02755534, ARMQC_02755580, ARMQC_02755624, ARMQC_02755674,

ARMQC_02755903, ARMQC_02755905, ARMQC_02756148, ARMQC_02756245,

ARMQC_02756246, ARMQC_02756344, ARMQC_02746634, ARMQC_02756542,

ARMQC_02756544, ARMQC_02746871, ARMQC_02756860, ARMQC_02760525,

ARMQC_02627275, ARM_01241565, QCVARM_0573677, ARMQC_02779064,

ARMQC_02779076, ARMQC_02779099, ARMQC_02779107, ARMQC_02779116,

ARMQC_02779122, ARMQC_02779133, ARM_00001777, ARM_00001195, ARM_00001198,

ARM_00001777, ARM_01020186, QCARM_3337526, QCARM_3337900, QCARM_3338108,

QCARM_3339493, QCVARM_0685544, QCVARM_0689117, QCVARM_0699179,

QCARM_3216178, QCARM_3066477, QCVARM_0602227, QCVARM_0618420,

QCVARM_0691521, QCVARM_0000395, QCVARM_0000269, QCARM_3353040,

QCVARM_0602564, QCVARM_0000142, QCVARM_0618741, QCVARM_0000180,

QCARM_3352796, QCARM_3353006, QCARM_3353126, ARM_00025401,

QCVARM_0468612,     QCVARM_0000061,     QCVARM_1118518,     QCVARM_0602258,

QCVARM_0602295,     QCVARM_0468174,     QCVARM_0000114,     QCVARM_0000092,

QCVARM_0000085,     QCVARM_0000123,     QCVARM_0000135,     QCVARM_0602359,

QCVARM_0468148,     QCVARM_0000395,     QCVARM_0000269,     QCARM_3353040,

QCVARM_0602564,     QCVARM_0621692,     QCVARM_0535116,     QCVARM_0524624,

QCVARM_0854027,     QCARM_0566625,     QCVARM_0524624,     QCVARM_0613083,

QCVARM_0613160,     QCVARM_0540468,     QCVARM_0452598,     QCARM_0340017,

QCVARM_0452296,     QCVARM_0846871,     QCVARM_0857113,     QCVARM_0463558,

QCVARM_0608391,     QCVARM_1031097,     QCVARM_0448757,     QCARM_3430479,

QCVARM_0851449,     QCVARM_0621447,     QCVARM_0621448,     QCARM_3537716,

QCARM_3537383,     QCVARM_0467659,     QCVARM_0454629,     QCVARM_0451824,

QCVARM_0449970,  QCVARM_0467852, ARM_00003305.

Arm further incorporates by reference all documents produced in Qualcomm's 11th document production (QCVARM_011), and all documents cited in Qualcomm's responses to Arm Interrogatory Nos. 1, 2, 6, 9, and 13.

Given the breadth of allegations Qualcomm has made regarding Arm's alleged breach of the ALA, Arm further incorporates by reference the testimony of all witnesses that have been deposed in this case to date, including those specifically referenced herein, as well as the testimony of all witnesses deposed in *Arm v. Qualcomm*, Case No. 1:22-cv-01146 (D. Del.), and the exhibits used during those depositions.

Arm also incorporates by reference its responses to Interrogatory Nos. 1, 3, 4, and 5.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**INTERROGATORY NO. 11:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not breach the Qualcomm TLA. Your response should include, but is not limited to, the complete legal and factual bases for any contention that you did not breach ▮▮▮▮▮ of the TLA or the implied covenant of good faith and fair dealing, and should include an identification of all documents by Bates numbers you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 11 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein.  Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks "the complete factual and legal bases," without limitation.  Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules.  Arm further objects to this Interrogatory to the extent it calls for a legal conclusion. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

### Qualcomm's Allegations

Qualcomm alleges that Arm breached ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Second

Amended Complaint ¶¶ 215, 223.  Qualcomm alleges that Arm breached the implied covenant of

good faith and fair dealing of the Qualcomm TLA by "fail[ing] to provide licensing proposals for Arm Implementation Cores to Qualcomm in violation of provisions of the QC TLA." Second Amended Complaint ¶ 184. Arm understands that Qualcomm's only allegations that Arm breached the Qualcomm TLA are based on licensing offers for the ██████████████ cores.

Arm denies Qualcomm's allegations that Arm breached the Qualcomm TLA. Arm has not breached the Qualcomm TLA, and Qualcomm has failed to show otherwise.

### Arm Did Not Breach The Qualcomm TLA Because Arm's Licensing Offers Satisfied The ██████████████ Term

Qualcomm alleges that Arm's licensing offer for ██████████████ "increased licensing fees and royalty rate percentages for each core by nearly five times from the prior terms licensed by Qualcomm" and thus ████████████████████████████ ████████████████████████████ Second Amended Complaint ¶¶ 118, 119. To the extent ██████████ applies, Arm's licensing offer satisfied the ██████████ term, which is calculated based ██████████████ ████████████████████████████ ██████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

Arm's license offer to Qualcomm satisfied the ███████████ term, to the extent it applies, which is calculated ████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████

### Arm Did Not Breach The Qualcomm TLA Because It Made An Actual License Offer To Qualcomm

Qualcomm alleges that "Arm's proposal was a constructive failure to offer a license" because of its financial terms and that "[t]his constructive failure to offer a license to the requested cores violated the terms of the QC TLA." Second Amended Complaint ¶¶ 25, 118. Arm did not breach the Qualcomm TLA because, as Qualcomm admits, Arm made an *actual* license offer to Qualcomm. Second Amended Complaint ¶ 117. Further, as described above, the financial terms of that offer satisfied the ████████████ term and were in good faith and thus not a "constructive failure to offer a license."

### Arm Did Not Breach The Qualcomm TLA Because Its ████████████████████████████████████████████████████████

Qualcomm alleges in its Second Amended Complaint that "Arm failed to fulfill its obligation under ███████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████ including by excluding support and maintenance." Second Amended Complaint ¶ 223. Qualcomm does not identify any other alleged ██████████████ ████████████████ Arm did not breach the Qualcomm TLA because its offer included support and maintenance for ██████████████████.

████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

Arm's ██████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████

### Arm Did Not Breach The Qualcomm TLA Because Arm Was Not Obligated To Offer Licenses To ██████████████████ To Qualcomm In 2024

Qualcomm alleges in its Second Amended Complaint that Qualcomm submitted requests to Arm for licenses to ████████████ in April 2024 and for a license to █████ in August 2024, and that Qualcomm sent Arm two notices of breach of the Qualcomm TLA in September 2024 because Arm had not yet responded with license offers by that time.  Second Amended Complaint ¶¶ 21-24.

Arm had no obligation to offer Qualcomm licenses to the ██████████████████ cores in 2024 because Qualcomm's ████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████████ does not make reference to renewals.  Qualcomm first licensed the ██████████████████ cores in



Because Qualcomm did not request a license to the ▮▮▮▮▮▮▮▮▮▮▮ cores within the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Arm was under no obligation with respect to Qualcomm's 2024 request to license the ▮▮▮▮▮▮▮▮▮ cores. Qualcomm has not identified any other requests for licenses to those cores other than its communications in 2024.

### Arm Did Not Breach Any Obligation To Act In ▮▮▮▮▮▮▮▮ Or The Implied Covenant Of Good Faith An Fair Dealing

Qualcomm alleges in its Second Amended Complaint that "[t]he financial terms that Arm provided for the three requested cores were commercially unreasonable, exorbitant, and not in good faith" and that "Arm has breached the implied covenant of good faith and fair dealing" for the Qualcomm TLA. Second Amended Complaint ¶¶ 118, 187.

Arm did not breach either the express ▮▮▮▮▮▮▮ provisions of ▮▮▮▮▮ of the TLA or any implied covenant of good faith and fair dealing for the reasons described above: Arm did not breach the TLA, and made a good faith offer with financial terms that satisfied the ▮▮▮▮▮▮▮ ▮▮▮ team.

Further, any allegation that Arm breached the implied covenant of good faith and fair dealing is duplicative of the express ▮▮▮▮▮▮ provisions and is not actionable. *See, e.g.*, *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 439 (3d Cir. 1993) (holding that Plaintiff "cannot assert a claim for breach of implied covenants that is based on exactly the same acts which are said to be in breach of express covenants."); *Cision US, Inc. v. CapTech Ventures, Inc.*, No. CV 24-00063-MN-SRF, 2025 WL 1094318, at *5 (D. Del. Apr. 11, 2025) (dismissing Plaintiff's "claim for breach of the implied covenant of good faith and fair dealing … as impermissibly duplicative of its breach

of contract and warranty claims.").

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Jeff Fonseca and Karthik Shivashankar.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

**Arm Did Not Breach The Qualcomm TLA Because Arm's
Licensing Offers Satisfied The ███████████ Term**

Arm's October 2024 license offer to Qualcomm satisfied the ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

Arm prepared a quote in response to Qualcomm's 2024 requests to renew its license for the ████████████████ cores as required by the TLA. QCVARM_0524362. Arm, *e.g.*, Karthik Shivashankar and Akshay Bhatnagar, performed an analysis to ████████████████

████████████████████████████████. *See, e.g.*, Bhatnagar Dep. (Rough) at 25–28; ARMQC_02784199; ARMQC_02784204. Next, Arm ████████

██████████████████████████████████████████

██████████████ *See, e.g.*, Youssef Dep. at 64–68; ARMQC_02779314. Arm then performed an analysis to determine appropriate licensing fees and royalty rates to propose to Qualcomm based on a variety of factors. █████████████████████████████

██████████████████████████████████████████

██████████████████████████████. *See, e.g.*, Youssef Dep. at 68–71. Other Arm team members contributed to this analysis in addition to Mr. Shivashankar and Mr. Bhatnagar, including Ehab Youssef, and Jeff Fonseca, among others.

After considering the ████████████████████████████████ ████ an appropriate licensing fee and royalty rate schedule to propose to Qualcomm, which it formalized in a quote. QCVARM_0617829. In arriving at its proposal, Arm determined that while

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████. *See, e.g.*, Youssef Dep. at 68–71. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████ Youssef Dep. at 71 ████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████ Thus, Arm prepared a quote using ████████████████

████████████████████████████████████████████████

████████████████████████████████████. *See* Youssef Dep. at 71; Shivashankar Dep. at 97–98; Fonseca Dep. (Rough) at 16, 19, 32–34, 37–39; ARMQC_02783731; ARMQC_02783848; ARMQC_02783619; ARMQC_02783967; ARMQC_02784120.

To the extent Qualcomm argues that Arm violated ████████████████████

████████████████████████████████████████████████

███████████████████████████████ that is not true. Arm considered ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████

**Arm Did Not Breach The Qualcomm TLA Because Its** ███████████
████████████████████████████

Arm did not breach ████████████████████████████████

███████████████████████████████████████████████

██████████████████████████

Qualcomm's allegation for an alleged breach of ████████ is apparently based on the statement in Arm's October 2024 offer that "Support and Maintenance is not included in this Qualcomm IP Extension Offer." QCVARM_0617829 at 831. However, there was never a change in the ██████████████████████ and Qualcomm is mistaken. Qualcomm has a ████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████ ARMQC_02772246. That agreement has been extended several times by the parties, and is set to run through ████████████. ARMQC_02772246, ██; *see also* ARMQC_02772246; ARM_01300657; ARM_01300665; ARM_01298732; ARM_01300650.

Arm never communicated to Qualcomm that it was no longer providing support and maintenance in any renewal license to ████████████████. Indeed, Arm confirmed to

**A0185**

Qualcomm, *i.e.*, Kurt Wolf, that "support is included in QCOM umbrella Support & Maintenance Agreement" and "this is the correct reading" of that language.  ARMQC_02774856; Wolf Dep. at 176.  ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████  *See, e.g.*, ARMQC_02772246; ARM_01300657; ARM_01300665; ARM_01298732; ARM_01300650.

Further, any argument by Qualcomm that Arm's discounting of its October 2024 license fees demonstrates that Arm was not including support and maintenance is also incorrect.  ████

████████████████████████████████████████████████████████

████████████████████████████████████  *See, e.g.*, Fonseca Dep. at 64–65; ARMQC_02783169 at 654 ████████████████████████████████

████████████████████████████████████████████████████████

████████.  That Arm discounted its licensing fee offers for ██████████████████ to account for Qualcomm's ████ further confirms that support and maintenance was still included vis-à-vis the ████

### Arm Did Not Breach The Qualcomm TLA Because Arm Was Not Obligated To Offer Licenses To ██████████████████ To Qualcomm In 2024

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████  In addition to Qualcomm's failure to make a ████████████████

████  of requesting ██████████████████  licenses in 2019, Arm had no obligation to offer licenses to ██████████████████ because it did not receive any renewal request from ████

████████████████████████████████████████████████████████

**A0186**

███████████████. ARM_00103918 at 918, 955. Arm never received any such request from an employee of ████ Rather, Qualcomm's communications regarding ██████████ renewal requests to Arm in 2024 came from individuals employed by Qualcomm Inc. or Qualcomm Technologies, Inc., *i.e.*, Kurt Wolf or Ann Chaplin. *See, e.g.*, ARMQC_02771126; QCVARM_0605055.

### Arm Did Not Breach Any Obligation To Act In ███████████ Or The Implied Covenant Of Good Faith And Fair Dealing

Qualcomm alleges in its Second Amended Complaint that "[t]he financial terms that Arm provided for the three requested cores were commercially unreasonable, exorbitant, and not in good faith" and that "Arm has breached the implied covenant of good faith and fair dealing" for the Qualcomm TLA. Second Amended Complaint ¶¶ 118, 187. For the additional reasons discussed above, Arm did not breach the express ██████████ provision of ███████ of the TLA or any implied covenant of good faith and fair dealing. Arm made a good faith offer in accordance with ████, and did not █████████████████████████ in accordance with ████.

### Additional Factual and Legal Bases Regarding Qualcomm's TLA Allegations

Arm further states that Qualcomm has failed to prove that Arm's alleged conduct was the but-for or proximate cause of any supposed "harm" that Qualcomm has allegedly suffered. Qualcomm has failed to articulate any "harm" that it has allegedly suffered as a result of Arm's supposed breach of either ██████████ of the TLA. As discussed above, Arm has not breached the TLA or any express or inherent ██████████ provisions therein. Qualcomm has failed to make any effort to quantify any "harm," such as alleged overpayments which should be refunded, ██████████ ████████████████████████████████████ While Qualcomm's witnesses have vaguely alleged that Qualcomm had to "shift resources" or hire "engineering resources" to develop custom cores as a result of Arm's actions with regard to the October 2024 TLA offers, Qualcomm has failed to produce or identify any documentary evidence

corroborating those claims.  Qualcomm has also failed to prove any casual connection between Arm's October 2024 offer and any of this supposed "harm."

To the contrary, discovery has confirmed that Qualcomm has suffered no harm *at all* from Arm's October 2024 offer to renew Qualcomm's license to ████████████████████.  Regarding ██████ Qualcomm received an updated offer for ██████ in 2025.  ARMQC_02778342.  As to ████████████, Qualcomm never had a legitimate plan to use those cores after October 2026 and those products are not on its roadmap after that time.  ████████████████████ Arm incorporates by reference its response to Interrogatory No. 12 and discussion of its unclean hands defense.  Qualcomm only requested renewal offers for ████████████ as a pretext to prompt a response from Arm regarding three "peripheral IP," GIC-700, MMU-700, and ELA-600.  QCVARM_0605055; QCVARM_0447175; Wolf Dep. at 75–77.  Indeed, it never sought to continue negotiating over or sought revised licensing terms from Arm in 2024 or anytime after for ████████████

Further, Qualcomm attempted to partially accept Arm's October 2024 offer as to the "peripheral IP" only.  QCVARM_0524726. After Arm rejected Qualcomm's attempt but provided a revised offer for GIC-700, MMU-700, and ELA-600 in January 2025, Qualcomm accepted those revised terms.  QCVARM_0524726; QCVARM_0523650.  This lack of harm undermines any notion that Qualcomm should be entitled to ████████████████████████ ████████████████████████

Arm further notes that, to date, Qualcomm has failed to disclose any legal or factual bases for its theories as to how Arm has allegedly breached the TLA.  Other than Qualcomm's vague allegations in the SAC—which are legally insufficient as set forth in Arm's Motion to Dismiss (D.I. 232, 233, 305)—Qualcomm has not answered any interrogatory or otherwise disclosed its theories for how Arm allegedly breached ████████████████ of the TLA.  Arm served interrogatories to

Qualcomm seeking such information on June 11, 2025, to which Qualcomm could have responded but has not.  Qualcomm similarly failed to provide any response to Arm's theories regarding the TLA, which were disclosed to Qualcomm on June 16, 2025.  Accordingly, Arm reserves the right to supplement these responses after it has an opportunity to review any such theories Qualcomm discloses at a later date.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARMQC_02772366, QCARM_0222545, QCARM_0344783.

Arm further incorporates by reference its response to Interrogatory No. 6, including the documents and testimony cited therein.

Arm further incorporates by reference the testimony of the following witnesses: Karthik Shivashankar, Ehab Youssef, Akshay Bhatnagar, Jeff Fonseca, Kurt Wolf, Manju Varma, Larissa Cochran, Spencer Collins, Will Abbey, Cristiano Amon, Ann Chaplin, Lynn Couillard, Durga Malladi, Richard Meacham, Laura Sand, Christine Tran, Jonathan Weiser, and Gerard Williams, including the documents used at each of those depositions.

Arm further incorporates by reference any documents withheld on the basis of third-party confidentiality disputes, including due to an objection or motion for a Protective Order filed by any such third parties.  Arm reserves the right to supplement this response to address such documents should any such disputes be resolved and result in the production of such documents to Qualcomm.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Matthew J. McIntee
Meredith Pohl
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
matt.mcintee@kirkland.com
meredith.pohl@kirkland.com

Jay Emerick
Adam Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
adam.janes@kirkland.com

Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP


 /s/ Robert M. Vrana
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

66
**A0190**

(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A0192**

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

# Exhibit 11

A0194



# Qualcomm Global Trading Pte. Ltd.

## Qualcomm IP Extension Offer

*Date of Offer:*

24 October 2024

*Confidential* Copyright © 2024, Arm Limited, All rights reserved.

**A0195**

QCVARM_0526828

# Exhibit 24

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
   a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC.,
   a Delaware corporation,

        Plaintiffs,

      v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
   a U.K. corporation,

        Defendant.

C.A. No. 24-490 (MN)

## ARM'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S SECOND SET OF INTERROGATORIES (NOS. 4-11)

Pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, and the applicable Local Rules of the United States District Court for the District of Delaware, Defendant Arm Holdings PLC ("Arm") hereby responds to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm")'s Second Set of Interrogatories (Nos. 4-11).

### GENERAL OBJECTIONS

Arm makes the following general objections, which are hereby incorporated by reference and made part of its response to each and every Interrogatory.

1.    Arm objects to each Interrogatory to the extent it purports to impose upon Arm discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

2.    Arm objects to the "Instructions" and "Definitions" sections to the extent they purport to alter the plain meaning and/or scope of any specific Interrogatory, on the ground that such alteration renders the Interrogatory vague, ambiguous, overly broad, and/or uncertain, by

A0199

**INTERROGATORY NO. 11:**

Identify and describe in detail the complete factual and legal bases for Your contention, if any, that You did not breach the Qualcomm TLA. Your response should include, but is not limited to, the complete legal and factual bases for any contention that you did not breach ▊▊▊▊▊ of the TLA or the implied covenant of good faith and fair dealing, and should include an identification of all documents by Bates numbers you intend to rely upon to support your contention.

**RESPONSE TO INTERROGATORY NO. 11 (JUNE 16, 2025):**

Arm incorporates its General Objections as if fully asserted herein. Arm objects to this Interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case, including, but not limited to, to the extent it seeks "the complete factual and legal bases," without limitation. Arm further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege or claim of confidentiality, or that is otherwise not discoverable under the Federal Rules of Civil Procedure or the Local Rules. Arm further objects to this Interrogatory to the extent it calls for a legal conclusion. Arm further objects to this request to the extent it seeks information that Arm is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

Subject to and without wavier of its general and specific objections, Arm responds as follows:

### Qualcomm's Allegations

Qualcomm alleges that Arm breached ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ Second Amended Complaint ¶¶ 215, 223. Qualcomm alleges that Arm breached the implied covenant of

good faith and fair dealing of the Qualcomm TLA by "fail[ing] to provide licensing proposals for Arm Implementation Cores to Qualcomm in violation of provisions of the QC TLA." Second Amended Complaint ¶ 184. Arm understands that Qualcomm's only allegations that Arm breached the Qualcomm TLA are based on licensing offers for the ██████████████████ cores.

Arm denies Qualcomm's allegations that Arm breached the Qualcomm TLA. Arm has not breached the Qualcomm TLA, and Qualcomm has failed to show otherwise.

### Arm Did Not Breach The Qualcomm TLA Because Arm's Licensing Offers Satisfied The ██████████████ Term

Qualcomm alleges that Arm's licensing offer for ███████████████████ "increased licensing fees and royalty rate percentages for each core by nearly five times from the prior terms licensed by Qualcomm" and thus ████████████████████████████████████████ ████████████████████████████████████████ Second Amended Complaint ¶¶ 118, 119. To the extent ██████████████ applies, Arm's licensing offer satisfied the ██████████████ term, which is calculated based ██████████████████ ████████████████████████████████████████ ███

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

Arm's license offer to Qualcomm satisfied the ████████████████ term, to the extent it applies, which is calculated ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

### Arm Did Not Breach The Qualcomm TLA Because It Made An Actual License Offer To Qualcomm

Qualcomm alleges that "Arm's proposal was a constructive failure to offer a license" because of its financial terms and that "[t]his constructive failure to offer a license to the requested cores violated the terms of the QC TLA." Second Amended Complaint ¶¶ 25, 118. Arm did not breach the Qualcomm TLA because, as Qualcomm admits, Arm made an *actual* license offer to Qualcomm. Second Amended Complaint ¶ 117. Further, as described above, the financial terms of that offer satisfied the ████████████████ term and were in good faith and thus not a "constructive failure to offer a license."

### Arm Did Not Breach The Qualcomm TLA Because Its ████████████████ ████████████████████████████████████████████

Qualcomm alleges in its Second Amended Complaint that "Arm failed to fulfill its obligation under ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ including by excluding support and maintenance." Second Amended Complaint ¶ 223. Qualcomm does not identify any other alleged ████████████████ ████████████████ Arm did not breach the Qualcomm TLA because its offer included support and maintenance for ████████████████████

████████████████████████████████████████████████████

**A0202**

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

Arm's ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████

### Arm Did Not Breach The Qualcomm TLA Because Arm Was Not Obligated To Offer Licenses To ██████████████████ To Qualcomm In 2024

Qualcomm alleges in its Second Amended Complaint that Qualcomm submitted requests to Arm for licenses to ██████████ in April 2024 and for a license to █████ in August 2024, and that Qualcomm sent Arm two notices of breach of the Qualcomm TLA in September 2024 because Arm had not yet responded with license offers by that time.  Second Amended Complaint ¶¶ 21-24.

Arm had no obligation to offer Qualcomm licenses to the ████████████████ cores in 2024 because Qualcomm's ██████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████ does not make reference to renewals.  Qualcomm first licensed the ████████████████ cores in

, and thus made its ███████ no later than 2019. *See, e.g.*, QCARM_0029040 at 29043. Under ███████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Because Qualcomm did not request a license to the ████████████████ cores within the ████████████████████████████████, Arm was under no obligation with respect to Qualcomm's 2024 request to license the ██████████████ cores. Qualcomm has not identified any other requests for licenses to those cores other than its communications in 2024.

### Arm Did Not Breach Any Obligation To Act In ██████████ Or The Implied Covenant Of Good Faith An Fair Dealing

Qualcomm alleges in its Second Amended Complaint that "[t]he financial terms that Arm provided for the three requested cores were commercially unreasonable, exorbitant, and not in good faith" and that "Arm has breached the implied covenant of good faith and fair dealing" for the Qualcomm TLA. Second Amended Complaint ¶¶ 118, 187.

Arm did not breach either the express ██████████ provisions of ████████ of the TLA or any implied covenant of good faith and fair dealing for the reasons described above: Arm did not breach the TLA, and made a good faith offer with financial terms that satisfied the ██████████ ██████ team.

Further, any allegation that Arm breached the implied covenant of good faith and fair dealing is duplicative of the express ██████████ provisions and is not actionable. *See, e.g.*, *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 439 (3d Cir. 1993) (holding that Plaintiff "cannot assert a claim for breach of implied covenants that is based on exactly the same acts which are said to be in breach of express covenants."); *Cision US, Inc. v. CapTech Ventures, Inc.*, No. CV 24-00063-MN-SRF, 2025 WL 1094318, at *5 (D. Del. Apr. 11, 2025) (dismissing Plaintiff's "claim for breach of the implied covenant of good faith and fair dealing … as impermissibly duplicative of its breach

of contract and warranty claims.").

Arm identifies the following individuals as knowledgeable regarding aspects of this subject matter: Jeff Fonseca and Karthik Shivashankar.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11 (July 11, 2025):**

Arm incorporates by reference its initial response to this Interrogatory. Subject to and without waiver of its general and specific objections, Arm further responds as follows:

**Arm Did Not Breach The Qualcomm TLA Because Arm's Licensing Offers Satisfied The ▮▮▮▮▮▮▮▮▮▮ Term**

Arm's October 2024 license offer to Qualcomm satisfied the ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Arm prepared a quote in response to Qualcomm's 2024 requests to renew its license for the ▮▮▮▮▮▮▮▮▮▮ cores as required by the TLA. QCVARM_0524362. Arm, *e.g.*, Karthik Shivashankar and Akshay Bhatnagar, performed an analysis to ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.*, Bhatnagar Dep. (Rough) at 25–28; ARMQC_02784199; ARMQC_02784204. Next, Arm ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ *See, e.g.*, Youssef Dep. at 64–68; ARMQC_02779314. Arm then performed an analysis to determine appropriate licensing fees and royalty rates to propose to Qualcomm based on a variety of factors. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████████.  *See, e.g.*, Youssef Dep. at 68–71.  Other Arm team members contributed to this analysis in addition to Mr. Shivashankar and Mr. Bhatnagar, including Ehab Youssef, and Jeff Fonseca, among others.

After considering the ████████████████████████████ ████ an appropriate licensing fee and royalty rate schedule to propose to Qualcomm, which it formalized in a quote.  QCVARM_0617829.  In arriving at its proposal, Arm determined that while

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████.  *See, e.g.*, Youssef Dep. at 68–71.  ████████████████████

████████████████████████████████████████████

████████████████████████████████████  Youssef Dep. at 71 ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████  Thus, Arm prepared a quote using ██████████████████

████████████████████████████████████████████

████████████████████████████████.  *See* Youssef Dep. at 71; Shivashankar Dep. at 97–98; Fonseca Dep. (Rough) at 16, 19, 32–34, 37–39; ARMQC_02783731; ARMQC_02783848; ARMQC_02783619; ARMQC_02783967; ARMQC_02784120.

To the extent Qualcomm argues that Arm violated ██████████████████

████████████████████████████████████████████

████████████████████████████  that is not true.  Arm considered ██████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████

**<u>Arm Did Not Breach The Qualcomm TLA Because Its</u>** ████████████████
████████████████████████████████████

Arm did not breach ████████████████████████

████████████████████████████████████████████

████████████████████

Qualcomm's allegation for an alleged breach of ██████████ is apparently based on the statement in Arm's October 2024 offer that "Support and Maintenance is not included in this Qualcomm IP Extension Offer." QCVARM_0617829 at 831. However, there was never a change in the ████████████████████ and Qualcomm is mistaken. Qualcomm has a ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████ ARMQC_02772246. That agreement has been extended several times by the parties, and is set to run through ████████████ ARMQC_02772246, ███; *see also* ARMQC_02772246; ARM_01300657; ARM_01300665; ARM_01298732; ARM_01300650.

Arm never communicated to Qualcomm that it was no longer providing support and maintenance in any renewal license to ████████████████. Indeed, Arm confirmed to

**A0207**

Qualcomm, *i.e.*, Kurt Wolf, that "support is included in QCOM umbrella Support & Maintenance Agreement" and "this is the correct reading" of that language.  ARMQC_02774856; Wolf Dep. at 176. ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████ *See, e.g.*, ARMQC_02772246; ARM_01300657; ARM_01300665; ARM_01298732; ARM_01300650.

Further, any argument by Qualcomm that Arm's discounting of its October 2024 license fees demonstrates that Arm was not including support and maintenance is also incorrect.  ████

███████████████████████████████████████████████████████████

███████████████████████████████████████. *See, e.g.*, Fonseca Dep. at 64–65; ARMQC_02783169 at 654 ████████████████████████████████████████

███████████████████████████████████████████████████████████

████████ That Arm discounted its licensing fee offers for ██████████████ to account for Qualcomm's ████ further confirms that support and maintenance was still included vis-à-vis the ████

**Arm Did Not Breach The Qualcomm TLA Because Arm Was Not Obligated To Offer Licenses To** ██████████████████ **To Qualcomm In 2024**

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████ In addition to Qualcomm's failure to make a ████████████████████ ██████ of requesting ████████████████ licenses in 2019, Arm had no obligation to offer licenses to ████████████████ because it did not receive any renewal request from ████

███████████████████████████████████████████████████████████

████████████████. ARM_00103918 at 918, 955.  Arm never received any such request from an employee of ████.  Rather, Qualcomm's communications regarding ████████████████ renewal requests to Arm in 2024 came from individuals employed by Qualcomm Inc. or Qualcomm Technologies, Inc., *i.e.*, Kurt Wolf or Ann Chaplin.  *See, e.g.*, ARMQC_02771126; QCVARM_0605055.

### Arm Did Not Breach Any Obligation To Act In ████████ Or The Implied Covenant Of Good Faith And Fair Dealing

Qualcomm alleges in its Second Amended Complaint that "[t]he financial terms that Arm provided for the three requested cores were commercially unreasonable, exorbitant, and not in good faith" and that "Arm has breached the implied covenant of good faith and fair dealing" for the Qualcomm TLA.  Second Amended Complaint ¶¶ 118, 187.  For the additional reasons discussed above, Arm did not breach the express ████████ provision of ████████ of the TLA or any implied covenant of good faith and fair dealing.  Arm made a good faith offer in accordance with ████, and did not ████████████████████████████ in accordance with ████.

### Additional Factual and Legal Bases Regarding Qualcomm's TLA Allegations

Arm further states that Qualcomm has failed to prove that Arm's alleged conduct was the but-for or proximate cause of any supposed "harm" that Qualcomm has allegedly suffered.  Qualcomm has failed to articulate any "harm" that it has allegedly suffered as a result of Arm's supposed breach of either ████████ of the TLA.  As discussed above, Arm has not breached the TLA or any express or inherent "████████" provisions therein.  Qualcomm has failed to make any effort to quantify any "harm," such as alleged overpayments which should be refunded. ████████ ████████████████████████████████████████████████  While Qualcomm's witnesses have vaguely alleged that Qualcomm had to "shift resources" or hire "engineering resources" to develop custom cores as a result of Arm's actions with regard to the October 2024 TLA offers, Qualcomm has failed to produce or identify any documentary evidence

corroborating those claims.  Qualcomm has also failed to prove any casual connection between Arm's October 2024 offer and any of this supposed "harm."

To the contrary, discovery has confirmed that Qualcomm has suffered no harm *at all* from Arm's October 2024 offer to renew Qualcomm's license to ███████████████. Regarding ██████ Qualcomm received an updated offer for ████ in 2025.  ARMQC_02778342.  As to ██████████, Qualcomm never had a legitimate plan to use those cores after October 2026 and those products are not on its roadmap after that time.  ████████████████. Arm incorporates by reference its response to Interrogatory No. 12 and discussion of its unclean hands defense.  Qualcomm only requested renewal offers for ████████████ as a pretext to prompt a response from Arm regarding three "peripheral IP," GIC-700, MMU-700, and ELA-600. QCVARM_0605055; QCVARM_0447175; Wolf Dep. at 75–77.  Indeed, it never sought to continue negotiating over or sought revised licensing terms from Arm in 2024 or anytime after for ████████████.

Further, Qualcomm attempted to partially accept Arm's October 2024 offer as to the "peripheral IP" only.  QCVARM_0524726. After Arm rejected Qualcomm's attempt but provided a revised offer for GIC-700, MMU-700, and ELA-600 in January 2025, Qualcomm accepted those revised terms.  QCVARM_0524726; QCVARM_0523650.  This lack of harm undermines any notion that Qualcomm should be entitled to ████████████████████████ ████████████████████████.

Arm further notes that, to date, Qualcomm has failed to disclose any legal or factual bases for its theories as to how Arm has allegedly breached the TLA.  Other than Qualcomm's vague allegations in the SAC—which are legally insufficient as set forth in Arm's Motion to Dismiss (D.I. 232, 233, 305)—Qualcomm has not answered any interrogatory or otherwise disclosed its theories for how Arm allegedly breached ████████████████ of the TLA.  Arm served interrogatories to

Qualcomm seeking such information on June 11, 2025, to which Qualcomm could have responded but has not.  Qualcomm similarly failed to provide any response to Arm's theories regarding the TLA, which were disclosed to Qualcomm on June 16, 2025.  Accordingly, Arm reserves the right to supplement these responses after it has an opportunity to review any such theories Qualcomm discloses at a later date.

Arm further responds that pursuant to Federal Rule of Civil Procedure 33(d), Arm identifies the following documents from which information responsive to the non-objectionable scope of this Interrogatory may be derived: ARMQC_02772366, QCARM_0222545, QCARM_0344783.

Arm further incorporates by reference its response to Interrogatory No. 6, including the documents and testimony cited therein.

Arm further incorporates by reference the testimony of the following witnesses: Karthik Shivashankar, Ehab Youssef, Akshay Bhatnagar, Jeff Fonseca, Kurt Wolf, Manju Varma, Larissa Cochran, Spencer Collins, Will Abbey, Cristiano Amon, Ann Chaplin, Lynn Couillard, Durga Malladi, Richard Meacham, Laura Sand, Christine Tran, Jonathan Weiser, and Gerard Williams, including the documents used at each of those depositions.

Arm further incorporates by reference any documents withheld on the basis of third-party confidentiality disputes, including due to an objection or motion for a Protective Order filed by any such third parties.  Arm reserves the right to supplement this response to address such documents should any such disputes be resolved and result in the production of such documents to Qualcomm.

Discovery is ongoing and Arm reserves the right to supplement, amend, or modify its response to this Interrogatory.

Dated: July 11, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Matthew J. McIntee
Meredith Pohl
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
matt.mcintee@kirkland.com
meredith.pohl@kirkland.com

Jay Emerick
Adam Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
adam.janes@kirkland.com

Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP


_/s/ Robert M. Vrana_
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

66

**A0212**

(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 11, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A0214**

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

A0215

# Exhibit 25

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED a Delaware corporation, ) Case No.

QUALCOMM TECHNOLOGIES, INC., a Delaware        )24-490-MN

corporation,                                   )

                                               )

    Plaintiffs,                                )

                                               )

    vs.                                        )

                                               )

ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K.       )

corporation,,                                  )

                                               )

    Defendant.                                 )

_____)

                                    VIDEOTAPED

      30(b)(6) DEPOSITION OF ███████████

               Palo Alto, California

              Wednesday, July 9, 2025

             REPORTED BY: Derek L. Hoagland

                    CSR No. 13445

A0217



Veritext Legal Solutions
212-267-6868    www.veritext.com    516-608-2400

A0218



6 (Pages 18 - 21)

Veritext Legal Solutions

212-267-6868          www.veritext.com          516-608-2400

A0219



7 (Pages 22 - 25)



8 (Pages 26 - 29)

Veritext Legal Solutions

212-267-6868          www.veritext.com          516-608-2400

A0221



Page 50

14 (Pages 50 - 53)

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,          )
   a Delaware corporation; and    )
QUALCOMM TECHNOLOGIES, INC.,    )
   a Delaware corporation,        )
                                 )
             Plaintiffs,      )
                                 )
     v.                      )   C.A. No. 24-490 (MN)
                                 )
ARM HOLDINGS PLC., f/k/a ARM LTD.,  )
   a U.K. corporation,            )
                                 )
             Defendant.       )

## PLAINTIFFS' SUPPLEMENTAL LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI REGARDING SCOPE OF DISCOVERY

OF COUNSEL:

Catherine Nyarady
Anish Desai
C. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
  DUNN, ISAACSON, RHEE LLP
401 Ninth Street, NW
Washington, DC 20004
(202) 240-2900

August 18, 2025

Dear Special Master Rychlicki:

Qualcomm's Second Amended Complaint (SAC) asserts claims that Arm breached  D.I. 137, SAC ¶¶ 213-226. Qualcomm additionally claims that Arm breached the implied covenant of good faith and fair dealing in connection with its licensing negotiations for various Arm IP, including Arm Implementation Cores and peripheral IP. *Id.* ¶¶ 181-188.

Despite these allegations, Arm argues that any cores other than the three explicitly named in the SAC—███████████████—and any peripheral IP are outside the scope of this case, both because they were not specifically named in the SAC and were purportedly not identified until after the close of fact discovery. On that basis, Arm refuses to provide discovery concerning (a) any other Arm Implementation Cores, including but not limited to ████████████, and (b) any peripheral IP. D.I. 162, at 3-4; D.I. 247, at 3. Arm's argument is baseless: the SAC makes clear that Qualcomm's claims extend to cores ███████████████ and to peripheral IP. Moreover, Arm requested documents and testimony about these products during fact discovery, both confirming Arm's knowledge that these products were at issue and conceding their relevance.

"[I]t is well-settled that the scope of discovery is broad." *Am. Bottling Co. Inc. v. Vital Pharm., Inc.*, 2021 WL 9599683, at *1 (D. Del. Sep. 27, 2021). "Discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *New Jersey Dep't of Env't Prot. v. E.I. DuPont De Nemours and Co.*, 2024 WL 525422, at *5 (D.N.J. Dec. 31, 2024) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Courts routinely grant discovery when a topic is raised broadly in the complaint, regardless of whether the complaint contains specific key words or facts in the discovery requests. *See New Jersey Dep't of Env't Prot.*, 2024 WL 525422, at *5 (discovery regarding specific chemicals not named in complaint permitted where complaint "alleges contamination by other [] compounds"); *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2021 WL 2164108 (D.N.J. Apr. 21, 2021) (discovery on revenue manipulation not "specifically referenced or pled" was permitted; discovery "is not limited to the precise issues set out in the pleadings"); *see also Paoli v. Stetser*, 2013 WL 2154393, at *10 (D. Del. May 16, 2013) (R&R adopted in *Paoli v. Stetser*, 2013 WL 2571380 (D. Del. Jun 10., 2013)); *Groark v. Timek*, 2014 WL 3556367, at *8 (D.N.J. July 18, 2014).

There is no question the SAC alleges claims implicating Arm's licensing practices for implementation cores generally, as well as for peripheral IP. The SAC is explicit that Arm violated the implied covenant in connection with peripheral IP. SAC ¶ 102 ("Qualcomm expects discovery to show that Arm violated the good faith and fair dealing provisions of the QC TLA *in its licensing negotiations involving peripheral TLA IP*."); *see also* ¶ 51 (describing Arm's peripheral IP); Ex. 1 (letter from Arm regarding offers under QC TLA for "cores and peripherals," described in SAC ¶ 24). It is likewise clear that ████████████████ are not the only Arm Implementation Cores at issue but rather examples of Arm's failure to provide reasonable quotes for implementation cores. *Id.* at ¶ 109 ("***For example***, Qualcomm sought to renew licenses to certain Arm Implementation Cores, ████████████"); *id.* ¶ 215 ("Arm failed to fulfill its

obligation under ██████████ of the QC TLA because the licensing offers it provided to Qualcomm for Arm Implementation Cores, *including* ████████████████████, ████████████████████████████"); *id.* ¶ 223 ("Arm failed to fulfill its obligation under █████ of the QC TLA because the licensing offers it provided to Qualcomm for Arm Implementation Cores, *including* ███████████████, ██████████████████████").

Not surprisingly, Qualcomm served discovery requests intended to investigate Arm's repeated breaches of ████████ of the TLA and the implied covenant. Qualcomm's requests—which were served in January, February, and April 2025, not after the close of fact discovery (*see* Ex. 2, at 2)—specifically identified and requested documents about the ████████████████████████████████████ (Ex. 3, Qualcomm's RFP 34; Ex. 4, Qualcomm's RFPs 57, 58) and about peripheral IP both generally (Ex. 5, Qualcomm's RFP 158) and specifically (Ex. 4, Qualcomm's RFPs 58, 60, 63, 71, 85, 94, 100). *See also* Ex. 3, Qualcomm's RFP 40; Ex. 4, Qualcomm RFPs 53, 56; Ex. 5, Qualcomm's RFPs 157, 158, 161, 164; Ex. 6, Qualcomm's Interrogatory 6.

Arm sought its own discovery on these topics, effectively conceding their relevance. Arm's RFPs 255 and 257 ask for materials concerning "████████████" core under the TLA" and "████████████████ under the TLA," respectively. Ex. 7, Arm RFPs 255, 257. Likewise, RFP 249 requests "any materials, *including peripheral intellectual property*, that were provided, allegedly not provided to, and/or were allegedly withheld from Qualcomm under the TLA." Other RFPs specifically name other cores including the ████████████████████████████████████████████████████████████████████████████████████████████ (*id.*, Arm RFPs 250, 251, 252, 258).[1]

In addition, Arm requested 30(b)(6) testimony on numerous issues related to the QC TLA and Qualcomm's claims related to Arm's breach of the QC TLA without limitation to ████████████████████. Ex. 8, Topics 10, 25, 26, 27, 32, 34, 36, 37. Qualcomm produced 30(b)(6) witnesses prepared to discuss those issues. *Id.*, Topics 10, 25, 26, 27, 32, 34, 36, 37. Arm not only questioned those 30(b)(6) witnesses about licensing of peripheral IP and cores other than ████████████, *see* Ex. 9, at 183:17-184:20 (asking about prices or fees for technology licensed in QC TLA Annex 1 without limitation); Ex. 10, at 103:1-21 (Arm asking about Qualcomm's requests regarding peripheral IP), but also asked numerous other Qualcomm witnesses. *See, e.g.*, Ex. 11, at 40:14-41:5 (asking broadly which products Qualcomm tried to license and for which Arm delayed; Chaplin listing █████████████████████████████████████); Ex. 12, at156:10-20 (Arm asking about Qualcomm's license for peripheral IP); Ex. 13, at 51:3-12 (Arm asking about Qualcomm's need to license ██████).

In light of the clear law on the scope of discovery and the record, Arm should be compelled to respond to Qualcomm's requests for discovery concerning (a) any other Arm Implementation Cores, including but not limited to ████████████████, and (b) any peripheral IP.

---

[1] Qualcomm has produced documents that relate to each of these products.

2

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

Words: 1158

Encls.

3

# Exhibit 1



110 Fulbourn Road
Cambridge, CB1 9NJ
United Kingdom
Spencer.Collins@arm.com

October 23, 2024

**VIA E-MAIL ONLY**

Ann Chaplin
General Counsel & Corporate Secretary
Qualcomm Incorporated
5775 Morehouse Drive
San Diego, CA 92121-1714
AChaplin@qualcomm.com

██████████████████

Dear Ann:

I write in response to your letter dated September 27, 2024, regarding Arm's compliance with its obligations under ██████████████ of the Qualcomm TLA.

Arm disagrees that any offers are currently due under ██████████████ of the Qualcomm TLA. The language of ████████████████████████████████████████████████████████████████████████████████████████████████████████████████ As you know, Arm previously made compliant offers under ███████████ for the relevant cores ██████████████████████ . Contrary to the suggestion in your letter, the relevant language of ██████████████████████████████████████ Further, there can be no ██████████████████████████████████████████████████████████████████████████████████████████████████████████████

Nor does Arm have any good faith obligation under the TLA to make renewal offers at this time, contrary to Qualcomm's suggestion. ████████████████████████████████████████████████████████████████ Qualcomm's requests for renewal offers are thus premature, rather than a matter of urgency. Put

**A0229**



simply, Arm has not breached █████████████, or proceeded in bad faith; instead, Arm has already complied with its obligations ███████████████████████████, and Qualcomm has no need for renewal offers at this time.

Given, however, Qualcomm's bad-faith suggestion that it will pursue ██████████████████████████████████ if Arm does not make renewal offers, Arm has provided offers for the relevant cores and peripherals in a format consistent with the parties' past practice for offers (which Qualcomm can accept by signing as indicated in the offer), while reserving all rights regarding the parties' obligations under the TLA. We believe these offers satisfy the ██████████████████████████████████████████████, and also moot the need for further escalation of this dispute to ████████████ ███████ under ████████ Arm nonetheless is available for a meeting between the parties' senior executives if Qualcomm believes necessary or appropriate.

Sincerely,

_____

Spencer Collins
EVP, Chief Legal Officer
Arm Limited

2

**A0230**

# Exhibit 2

A0231

# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED, )
  a Delaware corporation, )
QUALCOMM TECHNOLOGIES, INC., )
  a Delaware corporation, )
                                )   C.A. No. 24-490-MN
          Plaintiffs, )
                                )
      v. )
                                )
ARM HOLDINGS PLC., f/k/a ARM LTD., )
  a U.K. corporation, )
                                )
          Defendant. )

**QUALCOMM'S SECOND SET OF REQUESTS FOR PRODUCTION (NOS. 53-120)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (collectively, "Plaintiffs" or "Qualcomm") request that Defendant Arm Holdings PLC ("Arm") serve Qualcomm with its written responses to these requests for production and produce copies of the Documents and tangible things requested below at the law offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 within thirty (30) days of service.

**INSTRUCTIONS**

1.     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests for Documents and things are continuing in nature. If, after producing the requested Documents and things, Arm obtains or becomes aware of any further responsive Document or thing, Arm must produce to Qualcomm such additional Document or thing.

2.     If Arm withholds any Document or thing based upon a claim of privilege or any other claim of immunity from discovery, Arm shall state the specific basis for withholding the Document or thing and describe the facts and circumstances giving rise to such withholding in

16.    "Answer" means Arm's Answer filed in response to Qualcomm's Complaint.

17.    "ACK" means Arm's Architecture Compliance Kit or Arm's Architecture Validation Suite or Arm's Architecture Compliance Suite.

18.    ██████████ means the definition of ██████████ as set forth in ██████████ of the Qualcomm ALA.

19.    "OOB" means Arm's Out of Box tests.

20.    "ISA" means Arm's A-Profile Instruction Set Architecture.

21.    As used in these requests, the singular shall include the plural, and the past tense shall include the present tense, and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the word "all" shall mean "any and all"; the word "including" shall mean "including, without limitation," so as to be most inclusive.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 53:**

All Documents and Communications relating to or concerning improvements Qualcomm suggested for Arm's off-the-shelf TLA cores.

**REQUEST FOR PRODUCTION NO. 54:**

All Documents and Communications relating to or concerning improvements Qualcomm suggested for the Arm Architecture, including but not limited to suggestions made at Technical Advisory Board (TAB) Meetings.

**REQUEST FOR PRODUCTION NO. 55:**

All Documents and Communications relating to or concerning the withholding of ██████████ documentation from Qualcomm, including but not limited to ██████ ██████████.

6

**A0242**

**REQUEST FOR PRODUCTION NO. 56:**

All Documents and Communications relating to or concerning additional license restrictions and requirements Arm sought to insert into Qualcomm TLA annexes and other contracts between the parties after 2021, including new term limits.

**REQUEST FOR PRODUCTION NO. 57:**

All Documents and Communications relating to or concerning Arm's discussions with Qualcomm regarding licensing of the ███████████████████████ and and ████ ████ codenamed ███████████ codenamed ██████████ codenamed █████ ███████ codenamed ████████ the CPU codenamed ██████████████ codenamed ████████████ codenamed ██████, and ██████████ codenamed ████████, including discussions regarding Arm potentially withholding the listed items, pricing of the items, term of the licenses, and any potential restrictions related to the use of the Arm products in Qualcomm's products, including in any chips that contained designs or source code that originated at Nuvia.

**REQUEST FOR PRODUCTION NO. 58:**

All Documents and Communications relating to or concerning any negotiations that Arm had with TLA licensees (including Third Parties) for the ████████████████████ ██████ and and ████████ codenamed █████████████ codenamed ███████████ ████ codenamed ███████████ codenamed ████████ the CPU codenamed ██████ ███████ codenamed ██████████████ codenamed █████ and ██████████ codenamed ████████, including but not limited to price quotes, license fees, licensing term limits, or other language to include in TLA Annexes.

7

**REQUEST FOR PRODUCTION NO. 59:**

All Documents and Communications relating to or concerning the withholding of software test libraries (STL) files or releases from Qualcomm.

**REQUEST FOR PRODUCTION NO. 60:**

All Documents and Communications relating to or concerning the withholding of documentation associated with Arm's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ product.

**REQUEST FOR PRODUCTION NO. 61:**

All Documents and Communications relating to or concerning the withholding of fault simulation results from Qualcomm.

**REQUEST FOR PRODUCTION NO. 62:**

All Documents and Communications relating to or concerning the withholding of invitations to Arm Partner Meetings from Qualcomm, including any documentation associated with those meetings.

**REQUEST FOR PRODUCTION NO. 63:**

All Documents and Communications relating to or concerning the withholding of evaluation licenses (LULs) from Qualcomm for any Arm off-the-shelf TLA cores or other IP that Arm offers for licensing.

**REQUEST FOR PRODUCTION NO. 64:**

All software release notes and other documentation produced or distributed alongside the release of all error corrections, ▮▮▮▮▮▮▮▮▮▮, modifications, maintenance releases, and enhancements to the ▮▮▮▮▮▮▮▮ released since June 1, 2022, including documents sufficient to show the changes, improvements, and/or fixes provided.

8

**REQUEST FOR PRODUCTION NO. 70:**

All Documents and Communications relating to or concerning architecture errata for ██████ ████████████████ that was delivered to other Arm licensees but not to Qualcomm.

**REQUEST FOR PRODUCTION NO. 71:**

All internal strategy documents relating to or concerning Arm's licensing plans for ██████ ████████ as that term is used in Arm's TLA Annexes, or software test libraries for the ██████ ██████ and ████████ cores, █████████████████████████████████, and ████████ codenamed ██████████████ codenamed ████████████████ codenamed ██████ ██████████ codenamed ████████ the CPU codenamed ██████████████████ codenamed ████████████████ codenamed ██████, and ████████ codenamed ██████████, including but not limited to pricing strategy, license fees, licensing term limits, or other language to include in TLA Annexes.

**REQUEST FOR PRODUCTION NO. 72**

All Documents and Communications relating to or concerning any ██████████ ██████████████████████████████ protocol information provided to other Arm licensees but not to Qualcomm.

**REQUEST FOR PRODUCTION NO. 73**

All Documents and Communications relating to or concerning the licensing of the ██████ ██████████████████████████ to Qualcomm.

**REQUEST FOR PRODUCTION NO. 74**

All Documents and Communications relating to or concerning Qualcomm's requests to Arm for configuration information concerning the ████████████████████████████

10

**REQUEST FOR PRODUCTION NO. 81**

All Documents and Communications relating to or concerning the projected or forecasted impact to Arm's revenue or profits following the expiration of Qualcomm's ALA.

**REQUEST FOR PRODUCTION NO. 82**

All Documents and Communications relating to or concerning Arm's analysis of the RISC-V Architecture, including any analyses related to potential impact to Arm's revenue or profits.

**REQUEST FOR PRODUCTION NO. 83**

All Documents and Communications with third parties concerning the RISC-V Architecture and its competition with the Arm Architecture.

**REQUEST FOR PRODUCTION NO. 84**

All Documents and Communications relating to or concerning configuration information for the ███████████████████████████ that was provided to other licensees.

**REQUEST FOR PRODUCTION NO. 85**

All Documents and Communications relating to or concerning Qualcomm's request for an evaluation license for the CPU codenamed ████████ including discussions of licensing fees, royalty pricing, licensing term limits, and proposed restrictions on Qualcomm's CPU engineering team's access to information concerning "██████".

**REQUEST FOR PRODUCTION NO. 86**

All Documents and Communications relating to or concerning Arm's analyses of Qualcomm's CPUs and systems-on chips, including technical analyses, such as analysis of power, performance, and area, estimations of Qualcomm's potential time-to-market for any future CPUs or systems-on-chips, and analysis of project impact to Arm's product roadmap, Arm's market share, and Arm's revenue or profitability.

12

**REQUEST FOR PRODUCTION NO. 93**

All Documents and Communications relating to or concerning ██████████

██████████████ if Qualcomm ████████████ under the ALA or TLA██

██████

**REQUEST FOR PRODUCTION NO. 94**

All Documents and Communications relating to or concerning Qualcomm's request for an evaluation license for the CPU codenamed ██████ including discussions of licensing fees, royalty pricing, licensing term limits, and proposed restrictions on Qualcomm's CPU engineering team's access to information concerning ██████

**REQUEST FOR PRODUCTION NO. 95**

All Documents and Communications concerning or interpreting ███████████

████████████ of the Qualcomm TLA.

**REQUEST FOR PRODUCTION NO. 96**

All Documents and Communications concerning or interpreting ███████ of the Qualcomm ALA.

**REQUEST FOR PRODUCTION NO. 97**

Organizational charts for Arm's automotive department, including names of subunit or team within the department and the names of leadership of the department and any sub-unit or team within the department.

**REQUEST FOR PRODUCTION NO. 98**

Organizational charts for Arm's automotive department, including names of subunit or team within the department and the names of leadership of the department and any sub-unit or team within the department.

14

**REQUEST FOR PRODUCTION NO. 99**

All Documents referred to, referenced, considered, or relied upon by Arm in preparing responses to each of the interrogatories served by Qualcomm in this lawsuit.

**REQUEST FOR PRODUCTION NO. 100**

All Documents and Communications related to or concerning the differences, improvements, enhancements, modifications, changes, or lack thereof between the Arm CPU codenamed ████ and the ██████ codenamed ██████

**REQUEST FOR PRODUCTION NO. 101**

All Documents and Communications related to or concerning the marketing, sales, and promotion of the Arm v9 ISA, including marketing materials, Technology Advisory Board materials, internal communications concerning sales pitches to Arm partners, sales materials, promotional materials, and sales or marketing PowerPoint decks used with partners.

**REQUEST FOR PRODUCTION NO. 102**

All Documents and Communications related to or concerning Arm's strategy and planning to encourage adoption by Arm partners and the Arm ecosystem of the Arm v9 ISA.

**REQUEST FOR PRODUCTION NO. 103**

All Documents and Communications related to or concerning Arm's intentions, plans, and strategy to design, build, and distribute its own semiconductor chips or sell its own silicon.

**REQUEST FOR PRODUCTION NO. 104**

All Documents and Communications related to or concerning Arm's agreement to provide ████ with a semiconductor chip or silicon, as was reported in Financial Times on February 13, 2025.

15

**A0248**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

February 21, 2025

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

19

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2025, copies of the foregoing were caused to be served upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                    *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                       *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*


*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)


20

**A0250**

# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 24-490 (MN) |
| v. | ) ) | ███████████ |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) | |
| Defendant. | ) | |

**QUALCOMM'S FOURTH SET OF REQUESTS FOR PRODUCTION (NOS. 157-168)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (collectively, "Plaintiffs" or "Qualcomm") request that Defendant Arm Holdings PLC ("Arm") serve Qualcomm with its written responses to these requests for production and produce copies of the Documents and tangible things requested below at the law offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 within thirty (30) days of service.

**INSTRUCTIONS**

1.      Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests for Documents and things are continuing in nature.  If, after producing the requested Documents and things, Arm obtains or becomes aware of any further responsive Document or thing, Arm shall produce to Qualcomm such additional Document or thing.

2.      If Arm withholds any Document or thing based upon a claim of privilege or any other claim of immunity from discovery, Arm shall state the specific basis for withholding the Document or thing and describe the facts and circumstances giving rise to such withholding in

15. ████████ means the definition of ████████ as set forth in ████████ of the Qualcomm ALA.

16. "Answer" means Arm's Answer filed in response to Qualcomm's Complaint.

17. "ACK" means Arm's Architecture Compliance Kit or Arm's Architecture Validation Suite or Arm's Architecture Compliance Suite.

18. ████████ means the definition of ████████ as set forth in ████████ of the Qualcomm ALA.

19. "OOB" means Arm's Out of Box tests.

20. "ISA" means Arm's A-Profile Instruction Set Architecture.

21. As used in these requests, the singular shall include the plural, and the past tense shall include the present tense, and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the word "all" shall mean "any and all"; the word "including" shall mean "including, without limitation," so as to be most inclusive.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 157:**

All Communications from or to any or all Arm customers related to or concerning complaints regarding licensing or pricing terms for ████████ offered under TLAs.

**REQUEST FOR PRODUCTION NO. 158:**

All Communications from or to any or all Arm customers related to or concerning complaints regarding licensing or pricing terms for peripheral IP offered under TLAs, including, but not limited to, ████████.

6

A0253

**REQUEST FOR PRODUCTION NO. 159:**

All Communications from or to any or all Arm customers related to or concerning complaints regarding Arm's withholding of deliverables, including, but not limited to, OOB tests, ACK patches, the ACK, architecture documentation, architecture errata, the ███████████ ███████████████████████ offered under ALAs.

**REQUEST FOR PRODUCTION NO. 160:**

All Communications from or to any or all Arm customers related to or concerning complaints regarding Arm's delay or failure to provide support, maintenance, acknowledgement or error reports, or corrective actions regarding ACK test errors.

**REQUEST FOR PRODUCTION NO. 161:**

All Communications from or to any or all Arm customers related to or concerning complaints regarding Arm's delay or failure to provide support or maintenance for ██ ██████████████.

**REQUEST FOR PRODUCTION NO. 162:**

All licenses for the v10 ISA offered to, or entered into, with Third Parties.

**REQUEST FOR PRODUCTION NO. 163:**

All Documents and Communications relating to or concerning deliverables, including, but not limited to, OOB tests, ACK patches, the ACK, architecture documentation, architecture errata, the █████████████████████████████████ withheld from Third Party ALA licensees.

**REQUEST FOR PRODUCTION NO. 164:**

All Documents and Communications relating to or concerning licensing terms or pricing information offered to Third Parties for any ██████████████ since January 1, 2019.

7

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Ruby J. Garrett
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

April 16, 2025

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

9

A0255

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 16, 2025, copies of the foregoing were caused to be served

upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Samantha G. Wilson, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO 80202<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Nicholas R. Fung, Esquire<br>Henry Huttinger, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd., Suite 6000<br>Los Angeles, CA 90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kyle W.K. Mooney, Esquire<br>Kyle D. Friedland, Esquire<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, NY 10019<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Erik J. Olson, Esquire<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, CA 94304<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

10

**A0256**

Gregg F. LoCascio, P.C.                                *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                     *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*


*/s/ Jennifer Ying*

_____

Jennifer Ying (#5550)


11

A0257

# Exhibit 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>  a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>  a Delaware corporation, | ) <br> ) <br> ) <br> ) <br> ) | |
|              Plaintiffs, | ) | C.A. No. 24-490 (MN) |
| | ) | |
|     v. | ) | ▮▮▮▮▮▮▮▮ |
| | ) | |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>  a U.K. corporation, | ) <br> ) <br> ) | |
|              Defendant. | ) | |

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO ARM LTD.'S FIRST NOTICE OF DEPOSITION OF QUALCOMM INC. AND QUALCOMM TECHNOLOGIES, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)**

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively "Qualcomm" or "Plaintiffs") by and through their attorneys, hereby respond and object to Arm Holdings PLC's ("Arm" or "Defendant") First Notice of Deposition of Qualcomm Inc. and Qualcomm Technologies, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6), dated June 12, 2025 ("the Notice").

**PRELIMINARY STATEMENT**

Plaintiffs incorporate by reference each and every General Objection and Preliminary Statement set forth below into each and every specific response. From time to time, a specific response may repeat a General Objection or a Preliminary Statement for emphasis or some other reason. The failure to include any General Objection or Preliminary Statement in any specific response shall not constitute a waiver of any General Objection or Preliminary Statement to that discovery request.

1

this Topic as overbroad and unduly burdensome to the extent it seeks testimony regarding Plaintiffs "understanding (or lack thereof) or belief as to the meaning of ███████ of the Qualcomm ALA." Plaintiffs further object to this Topic to the extent the information sought calls for a legal conclusion. Plaintiffs further object to this Topic on the grounds that it improperly seeks testimony regarding contentions, which is not permitted by the District of Delaware. Plaintiffs further object to this Topic to the extent the information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine.

Subject to and without waiving the foregoing objections, Plaintiffs agree to produce one or more witness(es) to provide testimony on this Topic.

**TOPIC NO. 10:**

Your basis for any allegation that You are entitled to invoke ██████████    such that ████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████

**OBJECTION TO TOPIC NO. 10:**

Plaintiffs incorporate by reference each of their General Objections and Objections to Definitions as if fully set forth herein. Plaintiffs object that this Topic is duplicative of Topic No. 9. Plaintiffs object that this Topic fails to describe the matters for examination with reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6). Plaintiffs further object to this Topic as overbroad and unduly burdensome to the extent it seeks testimony regarding Plaintiffs' "allegation that [Plaintiffs] are entitled to invoke ██████████ such that ████████████ ████████████████████████████████████████████████████████████████." Plaintiffs further object to this Topic to the extent the information sought calls for a legal conclusion. Plaintiffs further object to this Topic as vague and ambiguous, particularly with respect to the phrase "████████████." Plaintiffs further object to this Topic on the grounds that it improperly seeks testimony regarding contentions, which is not permitted by the District of Delaware.

15

Plaintiffs further object to this Topic to the extent the information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine. Plaintiffs object to this Topic to the extent it is more properly the subject of other discovery means, such as written interrogatories.

Subject to and without waiving the foregoing objections, Plaintiffs agree to produce one or more witness(es) to provide testimony on this Topic.

**TOPIC NO. 11:**

Your basis for any allegation that You are entitled to ██████████████████████.

**OBJECTION TO TOPIC NO. 11:**

Plaintiffs incorporate by reference each of their General Objections and Objections to Definitions as if fully set forth herein. Plaintiffs object that this Topic is duplicative of Topic No. 9. Plaintiffs object that this Topic fails to describe the matters for examination with reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6). Plaintiffs further object to this Topic as overbroad and unduly burdensome to the extent it seeks testimony regarding Plaintiffs' "basis for any allegation that [Plaintiffs] are entitled to ██████████████████ ████." Plaintiffs further object to this Topic to the extent the information sought calls for a legal conclusion. Plaintiffs further object to this Topic as vague and ambiguous, particularly with respect to the phrase "████████████████████." Plaintiffs further object to this Topic on the grounds that it improperly seeks testimony regarding contentions, which is not permitted by the District of Delaware. Plaintiffs further object to this Topic to the extent the information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine. Plaintiffs object to this Topic to the extent it is more properly the subject of other discovery means, such as written interrogatories.

16

**OBJECTION TO TOPIC NO. 24:**

Plaintiffs incorporate by reference each of their General Objections and Objections to Definitions as if fully set forth herein.  Plaintiffs object that this Topic fails to describe the matters for examination with reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6).  Plaintiffs further object to this Topic as overbroad and unduly burdensome to the extent it seeks testimony regarding Plaintiffs' basis for alleging "Arm breached the covenant of good faith and fair dealing."  Plaintiffs further object to this Topic to the extent the information sought calls for a legal conclusion.  Plaintiffs further object to this Topic on the grounds that it improperly seeks testimony regarding contentions, which is not permitted by the District of Delaware.  Plaintiffs further object to this Topic to the extent the information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine.  Plaintiffs object to this Topic to the extent it is more properly the subject of expert testimony.  Plaintiffs object to this Topic to the extent it is more properly the subject of other discovery means, such as written interrogatories.

Subject to and without waiving the foregoing objections, Plaintiffs agree to produce one or more witness(es) to provide testimony on this Topic.

**TOPIC NO. 25:**

The Qualcomm TLA and the negotiation thereof.

**OBJECTION TO TOPIC NO. 25:**

Plaintiffs incorporate by reference each of their General Objections and Objections to Definitions as if fully set forth herein.  Plaintiffs object that this Topic fails to describe the matters for examination with reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6).  Plaintiffs further object to this Topic as overbroad and unduly burdensome to the extent it seeks testimony regarding the "Qualcomm TLA and the negotiation thereof."  Plaintiffs further

27

**A0262**

object to this Topic to the extent the information sought calls for a legal conclusion.  Plaintiffs further object to this Topic as vague and ambiguous, particularly with respect to the phrase "negotiation thereof."  Plaintiffs further object to this Topic on the grounds that it improperly seeks testimony regarding contentions, which is not permitted by the District of Delaware.  Plaintiffs further object to this Topic to the extent the information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine.

Subject to and without waiving the foregoing objections, Plaintiffs will attempt to prepare a witness to testify on this Topic despite the fact that this Topic fails to describe the matters for examination with reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6). Plaintiffs invite Arm to identify with greater specificity the information Arm is seeking through this Topic so that any witness Plaintiffs produce may be prepared to offer testimony on this Topic.

**TOPIC NO. 26:**

Negotiation of ▮▮▮▮▮▮ of the Qualcomm TLA, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and all subsections thereof.



**OBJECTION TO TOPIC NO. 26:**

Plaintiffs incorporate by reference each of their General Objections and Objections to Definitions as if fully set forth herein.  Plaintiffs object that this Topic is duplicative of Topic No. 25.  Plaintiffs object that this Topic fails to describe the matters for examination with reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6).  Plaintiffs further object to this Topic as overbroad and unduly burdensome to the extent it seeks testimony regarding the "[n]egotiation of ▮▮▮▮▮▮ of the Qualcomm TLA."  Plaintiffs further object to this Topic to the extent the information sought calls for a legal conclusion.  Plaintiffs further object to this Topic on the grounds that it improperly seeks testimony regarding contentions, which is not permitted by the District of Delaware.  Plaintiffs further object to this Topic to the extent the information sought

28

is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine.

Subject to and without waiving the foregoing objections, Plaintiffs agree to produce one or more witness(es) to provide testimony on this Topic.

**TOPIC NO. 27:**

Arm's alleged breach of the Qualcomm TLA, including ███████████████ thereof.

**OBJECTION TO TOPIC NO. 27:**

Plaintiffs incorporate by reference each of their General Objections and Objections to Definitions as if fully set forth herein. Plaintiffs object that this Topic fails to describe the matters for examination with reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6). Plaintiffs further object to this Topic as overbroad and unduly burdensome to the extent it seeks testimony regarding the "Arm's alleged breach of the Qualcomm TLA." Plaintiffs further object to this Topic to the extent the information sought calls for a legal conclusion. Plaintiffs further object to this Topic on the grounds that it improperly seeks testimony regarding contentions, which is not permitted by the District of Delaware. Plaintiffs further object to this Topic to the extent the information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine. Plaintiffs object to this Topic to the extent it is more properly the subject of other discovery means, such as written interrogatories.

Subject to and without waiving the foregoing objections, Plaintiffs agree to produce one or more witness(es) to provide testimony on this Topic.

**TOPIC NO. 28:**

Qualcomm's licensing of (or requests to license) the ███████████████ cores from Arm pursuant to the Qualcomm TLA, including all agreements and communications relating thereto.

29

to the extent it is more properly the subject of other discovery means, such as written interrogatories.

Subject to and without waiving the foregoing objections, Plaintiffs agree to produce one or more witness(es) to provide testimony on this Topic.

**TOPIC NO. 31:**

The ██████████████████ of Arm's October 2024 license proposal for the ██████ ██████████████.

**OBJECTION TO TOPIC NO. 31:**

Plaintiffs incorporate by reference each of their General Objections and Objections to Definitions as if fully set forth herein.  Plaintiffs object that this Topic is duplicative of Topic Nos. 28, 29, and 30.  Plaintiffs object that this Topic fails to describe the matters for examination with reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6).  Plaintiffs further object to this Topic as overbroad and unduly burdensome to the extent it seeks testimony regarding all ████████████████████ of Arm's October 2024 license."  Plaintiffs further object to this Topic to the extent the information sought calls for a legal conclusion.  Plaintiffs further object to this Topic as vague and ambiguous, particularly with respect to the phrase "October 2024 license proposal."  Plaintiffs further object to this Topic on the grounds that it improperly seeks testimony regarding contentions, which is not permitted by the District of Delaware.  Plaintiffs further object to this Topic to the extent the information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine.

Subject to and without waiving the foregoing objections, Plaintiffs agree to produce one or more witness(es) to provide testimony on this Topic.

**TOPIC NO. 32:**

The support and maintenance Qualcomm receives and/or has received for technology licensed under the TLA, including any agreements related thereto.

32

**OBJECTION TO TOPIC NO. 32:**

Plaintiffs incorporate by reference each of their General Objections and Objections to Definitions as if fully set forth herein. Plaintiffs object that this Topic fails to describe the matters for examination with reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6). Plaintiffs further object to this Topic as overbroad and unduly burdensome to the extent it seeks testimony regarding all "support and maintenance Qualcomm receives and/or has received." Plaintiffs further object to this Topic to the extent the information sought calls for a legal conclusion. Plaintiffs further object to this Topic as vague and ambiguous, particularly with respect to the phrase "support and maintenance." Plaintiffs further object to this Topic on the grounds that it improperly seeks testimony regarding contentions, which is not permitted by the District of Delaware. Plaintiffs further object to this Topic to the extent the information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine. Plaintiffs object to this Topic to the extent it is more properly the subject of expert testimony.

Subject to and without waiving the foregoing objections, Plaintiffs will attempt to prepare a witness to testify on this Topic despite the fact that this Topic fails to describe the matters for examination with reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6). Plaintiffs invite Arm to identify with greater specificity the information Arm is seeking through this Topic so that any witness Plaintiffs produce may be prepared to offer testimony on this Topic. Plaintiffs welcome a meeting to confer promptly on this issue.

**TOPIC NO. 33:**

Qualcomm's negotiation and/or acceptance of any terms proposed in Arm's October 2024 license proposal to Qualcomm.

33

**A0266**

**OBJECTION TO TOPIC NO. 33:**

Plaintiffs incorporate by reference each of their General Objections and Objections to Definitions as if fully set forth herein. Plaintiffs object that this Topic is duplicative of Topic Nos. 28, 29, 30, and 31. Plaintiffs object that this Topic fails to describe the matters for examination with reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6). Plaintiffs further object to this Topic as overbroad and unduly burdensome to the extent it seeks testimony regarding "Qualcomm's negotiation and/or acceptance of any terms." Plaintiffs further object to this Topic to the extent the information sought calls for a legal conclusion. Plaintiffs further object to this Topic as vague and ambiguous, particularly with respect to the phrase "October 2024 license proposal." Plaintiffs further object to this Topic on the grounds that it improperly seeks testimony regarding contentions, which is not permitted by the District of Delaware. Plaintiffs further object to this Topic to the extent the information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine.

Subject to and without waiving the foregoing objections, Plaintiffs agree to produce one or more witness(es) to provide testimony on this Topic.

**TOPIC NO. 34:**

The ██████████████ and/or the implied covenant of good faith and fair dealing of the Qualcomm TLA, including Arm's alleged breach thereof.

**OBJECTION TO TOPIC NO. 34:**

Plaintiffs incorporate by reference each of their General Objections and Objections to Definitions as if fully set forth herein. Plaintiffs object that this Topic is duplicative of Topic Nos. 24 and 30. Plaintiffs object that this Topic fails to describe the matters for examination with reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6). Plaintiffs further object to this Topic as overbroad and unduly burdensome to the extent it seeks testimony regarding

34

the " ███████████████ and/or the implied covenant of good faith and fair dealing of the Qualcomm TLA." Plaintiffs further object to this Topic to the extent the information sought calls for a legal conclusion. Plaintiffs further object to this Topic on the grounds that it improperly seeks testimony regarding contentions, which is not permitted by the District of Delaware. Plaintiffs further object to this Topic to the extent the information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine. Plaintiffs object to this Topic to the extent it is more properly the subject of other discovery means, such as written interrogatories.

Subject to and without waiving the foregoing objections, Plaintiffs agree to produce one or more witness(es) to provide testimony on this Topic.

**TOPIC NO. 35:**

The license fees and royalties paid by Qualcomm to Arm for the ████████████████ ███ since 2019.

**OBJECTION TO TOPIC NO. 35:**

Plaintiffs incorporate by reference each of their General Objections and Objections to Definitions as if fully set forth herein. Plaintiffs object that this Topic is duplicative of Topic Nos. 28 and 29. Plaintiffs object that this Topic fails to describe the matters for examination with reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6). Plaintiffs further object to this Topic as overbroad and unduly burdensome to the extent it seeks testimony regarding the "license fees and royalties paid by Qualcomm to Arm." Plaintiffs further object to this Topic to the extent the information sought calls for a legal conclusion. Plaintiffs further object to this Topic on the grounds that it improperly seeks testimony regarding contentions, which is not permitted by the District of Delaware. Plaintiffs further object to this Topic to the extent the

35

information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine.

Subject to and without waiving the foregoing objections, Plaintiffs agree to produce one or more witness(es) to provide testimony on this Topic.

**TOPIC NO. 36:**

The remedies Qualcomm seeks for Arm's alleged breach of the Qualcomm TLA, including ████████████████████████████████████████████████████████████ ████████████████████████.

**OBJECTION TO TOPIC NO. 36:**

Plaintiffs incorporate by reference each of their General Objections and Objections to Definitions as if fully set forth herein. Plaintiffs object that this Topic fails to describe the matters for examination with reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6). Plaintiffs further object to this Topic as overbroad and unduly burdensome to the extent it seeks testimony regarding the "remedies Qualcomm seeks for Arm's alleged breach of the Qualcomm TLA." Plaintiffs further object to this Topic to the extent the information sought calls for a legal conclusion. Plaintiffs further object to this Topic on the grounds that it improperly seeks testimony regarding contentions, which is not permitted by the District of Delaware. Plaintiffs further object to this Topic to the extent the information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine. Plaintiffs object to this Topic to the extent it is more properly the subject of other discovery means, such as written interrogatories.

Subject to and without waiving the foregoing objections, Plaintiffs agree to produce one or more witness(es) to provide testimony on this Topic.

36

**TOPIC NO. 37:**

Qualcomm's allegation that it was damaged due to Arm's alleged breach of the Qualcomm TLA, including that Qualcomm was "forced to proceed" in SoC development without knowing what CPUs it will use, conducted "reviews of its planning roadmaps," and shifted or allocated resources.

**OBJECTION TO TOPIC NO. 37:**

Plaintiffs incorporate by reference each of their General Objections and Objections to Definitions as if fully set forth herein. Plaintiffs object that this Topic fails to describe the matters for examination with reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6). Plaintiffs further object to this Topic as overbroad and unduly burdensome to the extent it seeks testimony regarding all of "Qualcomm's allegation that it was damaged due to Arm's alleged breach of the Qualcomm TLA." Plaintiffs further object to this Topic to the extent the information sought calls for a legal conclusion. Plaintiffs further object to this Topic on the grounds that it improperly seeks testimony regarding contentions, which is not permitted by the District of Delaware. Plaintiffs further object to this Topic to the extent the information sought is subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine. Plaintiffs object to this Topic to the extent it is more properly the subject of other discovery means, such as written interrogatories.

Subject to and without waiving the foregoing objections, Plaintiffs agree to produce one or more witness(es) to provide testimony on this Topic.

**TOPIC NO. 38:**

The appropriate amount of damages or restitution, if any, due to You as a result of Arm's alleged breach of the Qualcomm TLA.

**OBJECTION TO TOPIC NO. 38:**

Plaintiffs incorporate by reference each of their General Objections and Objections to Definitions as if fully set forth herein. Plaintiffs object that this Topic is duplicative of Topic Nos.

37

**A0270**

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA  94105
(628) 432-5100

June 23, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

77

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2025, copies of the foregoing were caused to be served upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Karen E. Keller, Esquire                                    *VIA ELECTRONIC MAIL*
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                                  *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
Sydney D. Gaskins, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Kyle W.K. Mooney, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

78

**A0272**

Erik J. Olson, Esquire                                   *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Defendant*

Daniel P. Muino, Esquire                                 *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
*Attorneys for Defendant*

Brian M. Kramer, Esquire                                 *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, CA  92130
*Attorneys for Defendant*

William Frentzen, Esquire                                *VIA ELECTRONIC MAIL*
Daralyn J. Durie, Esquire
Shaelyn Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                                   *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                  *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

79

**A0273**

Jay Emerick, Esquire                                    *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                              *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*


*/s/ Jennifer Ying*

Jennifer Ying (#5550)

80

**A0274**

# Exhibit 9

Case 1:24-cv-00490-MN    Document 715    Filed 02/27/26    Page 283 of 426 PageID #: 50307

7/11/2025        Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.    Jonathan Weiser

██████████████████████████

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____

QUALCOMM INCORPORATED, a      )
Delaware corporation,         )
QUALCOMM TECHNOLOGIES, INC.,)
a Delaware corporation,       )
                              )
              Plaintiffs, )
                              )
         vs.                  ) C.A. No.: 24-49-MN
                              )
ARM HOLDINGS PLC, f/k/a,      )
ARM LTD. a U.K. corporation,)
                              )
              Defendants.  )
_____)

████████████████████████████████

VIDEOTAPED DEPOSITION OF JONATHAN WEISER
San Diego, California
Friday, July 11, 2025

Reported by:
CATHY A. WOOD, RDR, RMR, CRR
CSR No. 2825

_____
DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

Page 183

A.   Annex 1 to the TLA.

Q.   And this was signed by, if you turn to the back page, ███████████████████████████████████?

A.   Yes.

Q.   This Annex 1 was an agreement between ARM, and then it actually says on the front to ████████████ ██████████████████; is that right?

A.   Yes.  And it's an annex to the TLA.

Q.   Did you have any involvement in the negotiation of Annex 1 to the Qualcomm TLA?

A.   Specifically this annex in front of me?

Q.   Correct.

A.   Uh, as I sit here, I don't recall my specific involvement other than supervising my -- my team that would have participated in the discussions and the entering into the T -- the Annex 1.

Q.   Are you aware of any negotiations with respect to Annex 1 of Qualcomm TLA?

MS. ZAPPALA:  I object.  Form.  Did you say 1 or 12?

THE REPORTER:  It should be 1.

MR. EMERICK:  It should be 1 if I said 12.

THE WITNESS:  Can we repeat the question now?

BY MR. EMERICK:

Q.   Are you aware of any negotiations that took

**A0277**

7/11/2025     Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.     Jonathan Weiser

Page 184

place with respect to Annex 1 of the Qualcomm TLA?

A.     With respect to this annex in front of me, I am somewhat familiar with the products, the negotiation of a license package for those products for the particular price or fees, if you will.

(Reporter clarification.)

THE WITNESS:  Price or fees for the technology.

BY MR. EMERICK:

Q.     What are you aware of with respect to the prices or fees of the technology licensed in Annex 1?

MS. ZAPPALA:  Objection, scope.

THE WITNESS:  I should have said products, fees and term.  Earlier in our relationship with ARM, we ███

████████████████████████████████

████████████████████  ██████████

██████████████████

I think in this context it was a ██████

████████████████████████████████

██████████████████████████████

██████████████████

MR. EMERICK:  I handed you what's been marked as Exhibit 8 which is Qualcomm v. ARM, 617829 through 831.

(Exhibit No. 8 was marked for identification.)

# Exhibit 10

Case 1:24-cv-00490-MN   Document 715   Filed 02/27/26   Page 287 of 426 PageID #: 50311

7/11/2025        Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.     Larissa Cochron

█████████████████████████

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

_____

QUALCOMM INCORPORATED, A DELAWARE        )

CORPORATION; QUALCOMM TECHNOLOGIES,      )

INC., A DELAWARE CORPORATION,            )

                                         ) C.A. No.

                         PLAINTIFFS,     ) 24-490-MN

                                         )

              v.                         )

                                         )

ARM HOLDINGS PLC, F/K/A ARM LTD.,        )

A U.K. CORPORATION,                      )

                                         )

                         DEFENDANT.      )

_____)

          *  *  *   ████████████████   *  *  *

          *  *  *   ████████████████   *  *  *

VIDEO-RECORDED DEPOSITION OF LARISSA COCHRON

IN HER 30(B)(1) AND 30(B)(6) CAPACITIES

FRIDAY, JULY 11, 2025

10:00 A.M. PDT

PALO ALTO, CALIFORNIA

REPORTED BY AUDRA E. CRAMER, CSR NO. 9901

_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

**A0280**

Page 103

Q.   Okay.  So -- and then I think you've stated in 2024 Qualcomm made a renewal request to extend the license to ██████████████████, and then certain peripheral IP?

MS. MORGAN:  Objection.  Misstates the witness's testimony.  Asked and answered.

THE WITNESS:  Qualcomm made an initial request for a ████████ term license for ████ ████ for the ██████████████████████ in April of 2024 and made a request for a ██████████ term license for ████ for ████████ ████████████████ in August of 2024.

BY MS. DAWSON:

Q.   And what about the peripheral IP?

A.   And for the peripherals the initial request for the ██████████ term license beginning in 2026 was September for the ███████ ██████████████████████, and April 2024 -- I'm not sure if I said this.  It was September of 2023, October of 2023 and April of 2024 for the ████████.

Q.   Why are you calling it an initial

A0281

# Exhibit 11

Case 1:24-cv-00490-MN   Document 715   Filed 02/27/26   Page 290 of 426 PageID #: 50314

7/11/2025          Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.          Ann Nathalie Cathcart Chaplin

■■■■■■■■■■■■■■■

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

_____

QUALCOMM INCORPORATED,              )
a Delaware corporation; and         )
QUALCOMM TECHNOLOGIES, INC.,        )
a Delaware corporation,             )
                                    )
          Plaintiffs,               )
                                    )  C.A. No.
      vs.                           )  24-490(MN)
                                    )
ARM HOLDINGS PLC., f/k/a            )
ARM LTD., a U.K. corporation,       )
                                    )
          Defendant.                )
_____)

■■■■■■■■■■■■

VIDEO DEPOSITION OF ANN NATHALIE CATHCART CHAPLIN
                JULY 11, 2025
            SAN DIEGO, CALIFORNIA

Reported by
Cynthia J. Vega, CA CSR 6640, RMR, RDR, CCRR 95

_____
              DIGITAL EVIDENCE GROUP
          1730 M Street, NW, Suite 812
            Washington, D.C. 20036
                (202) 232-0646

**A0283**

Page 40

license agreement?

A.   It is.

Q.   As Qualcomm's corporate representative, is it your understanding that the technology license agreement is for licenses to Arm implementation cores?

A.   I believe some people refer to it that way.

Q.   Whereas the ALA is a license for Qualcomm to be able to make its own custom cores based on the Arm architecture; correct?

A.   Yes.

Q.   You mentioned that Arm has repeatedly dragged out requests for -- strike that.

You mentioned earlier that Qualcomm believes Arm has dragged out responding to requests by Qualcomm to license certain technology; is that correct?

A.   Correct.

Q.   As Qualcomm's corporate representative, do you have specific requests in mind?

A.   I do.  So the ones that I can recall are we had requests on

**A0284**

Page 41

So those are some of the examples.

Q.   Did you say "████████"?

A.   I believe that was the last of the peripherals if I remember the many acronyms.

Q.   Let me take this backward.

A.   Okay.

Q.   When did Qualcomm make a request to Arm to license the ████?

A.   I don't recall as I sit here.  There is a lot of material back and forth on it.

Q.   Do you recall how long it took Arm to respond to the request for the ████?

A.   I don't recall the period of time.  But I've -- I reviewed materials in advance of my deposition where I saw lengthy delays from many of these items.

Q.   When you say "lengthy delays," can you give me a ballpark figure on how long the delay was?

A.   Well, I think it probably varied across, but I'll give you an example.  ████████, for one, never ever came.  Right?  So ████████████████████



████████████████████████████████████████

████████████████████████████████████████

████████████████████████████.  We kept

# Exhibit 12

A0286

Case 1:24-cv-00490-MN   Document 715   Filed 02/27/26   Page 294 of 426 PageID #: 50318

6/25/2025          Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.          Kurt Wolf

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

_____

QUALCOMM INCORPORATED, a            )

Delaware corporation, QUALCOMM  )

TECHNOLOGIES, INC., a Delaware  )

corporation                     )

                                )

          Plaintiff,            )

                                )

v.                              ) C.A. No. 24-490-MN

                                )

ARM HOLDINGS PLC, f/k/a, ARM    )

LTD. a U.K. corporation         )

          Defendant.            )

_____)

          *** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ***

          VIDEOTAPED DEPOSITION OF KURT WOLF

               WEDNESDAY, JUNE 25, 2025

                SAN DIEGO, CALIFORNIA

REPORTED BY:  PATRICIA Y. SCHULER, CSR NO. 11949

_____

               DIGITAL EVIDENCE GROUP

             1730 M Street, NW, Suite 812

                Washington, D.C. 20036

                  (202) 232-0646

Page 156

what that proposal meant as it relates to ▮▮▮ ▮ ▮▮▮▮▮▮▮, right?

MR. SCOTT:  Objection.

THE WITNESS:  I didn't see it needed a clarification, so I did not ask for a clarification. Correct.

BY MR. EVANGELATOS:

Q.    Let's put 5 aside.  And you can put the offer aside as well, 4.

After the October 2024 offer was made, would it be fair to say that Qualcomm ultimately did secure a license to the three peripheral IP in that offer?

MR. SCOTT:  Objection.

THE WITNESS:  I will answer in two parts. Yes, Qualcomm received a license for the three peripherals.  It was a separate, different offer than this particular annex.  So there was another offer that just had the three peripheral IPs in it, and that's the annex that we ended up signing.

BY MR. EVANGELATOS:

Q.    Okay.  You said there was two parts to your answer.  Is your answer complete?

A.    Yes, yes.

Q.    So after the October 2024 offer was made,

# Exhibit 13

Case 1:24-cv-00490-MN   Document 715   Filed 02/27/26   Page 297 of 426 PageID #: 50321

6/24/2025          Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.          Manju Varma

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,                    )
a Delaware corporation; and               )
QUALCOMM TECHNOLOGIES, INC.,              )
a Delaware corporation,                   )
                                          )
              Plaintiffs,                 )
                                          )  C.A. No.
         vs.                              )  24-490(MN)
                                          )
ARM HOLDINGS PLC., f/k/a                  )
ARM LTD., a U.K. corporation,             )
                                          )
              Defendant.                  )
                                          )

VIDEO DEPOSITION OF MANJU VARMA
JUNE 24, 2025
SAN DIEGO, CALIFORNIA

Reported by:
Cynthia J. Vega, CA CSR 6640, RMR, RDR, CCRR 95

DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

Case 1:24-cv-00490-MN    Document 715    Filed 02/27/26    Page 298 of 426 PageID #: 50322

6/24/2025        Qualcomm Incorporated, et al. v. Arm Holdings PLC, et al.        Manju Varma

Page 51

When I say "you," I mean Qualcomm in this case.

Are you saying that Qualcomm was planning ████ to have ████, and then Arm did not give access to ████ and so, therefore, Qualcomm had to do something else?

MS. YING:  Objection.

THE WITNESS:  We had never planned to use custom CPU for ████.  Our plan was to use Arm IP which Arm had introduced to us as ████.  So yes, our plan was to use ████, which became ████, which we never got access to.

BY MR. EVANGELATOS:

Q.  Now, in 2022 Qualcomm had a license under the ALA to develop its own cores around Arm IP; fair?

MS. YING:  Objection.

THE WITNESS:  Yes.  To the best of my knowledge, yes, that is correct.

BY MR. EVANGELATOS:

Q.  And at that time the TLA that we spoke of earlier was also in effect between the parties; right?

MS. YING:  Objection.

THE WITNESS:  When you say "in effect," I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,<br><br>Defendant. | C.A. No. 24-490-MN <br><br>  |

## DEFENDANT ARM HOLDINGS PLC'S SUPPLEMENT TO ARM'S MOTION TO STRIKE AND COMPEL (D.I. 378) AND OPPOSITION TO QUALCOMM'S AUGUST 11 LETTER BRIEF TO SPECIAL MASTER RYCHLICKI

Dated: August 18, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A0292**

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

Dear Special Master Rychlicki:

Qualcomm's requests for additional discovery should be denied.

## 1.  TLA and ALA-Related Requests

*After* the close of fact discovery, Qualcomm injected new claims that Arm committed multiple additional breaches of the TLA.  They should be stricken, and discovery on them denied.



*New TLA Breach Claims: Peripheral IP* ███████████ *And Implementation Cores* ███████ ).  Qualcomm's request for discovery on new breach claims for *13 new products* should be denied, and those theories stricken from the case.  The SAC focuses exclusively on three products: ███████████ Count VII alleges breach based on Arm's pricing for █████████████ .  Ex. 2 ¶¶ 213-220.  Likewise, Count VIII alleges that Arm "██████████████████" by "excluding support and maintenance" from its █████████ offer.  Ex. 2 ¶¶ 221-226.  Qualcomm only pleads facts regarding ████████████ .  Ex. 2 ¶¶ 109-127.  There is not a single mention of any other Arm implementation cores in the SAC and only a vague statement that Qualcomm "expects discovery to show that Arm violated the good faith" provisions in "negotiations involving" unidentified "peripheral TLA IP."  Ex. 2 ¶ 102.

Qualcomm's attempt to make an end run around its failure to plead a claim for any product other than █████████████ should be rejected.  "Rule 8 simply 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'"  *Robinson v. Family Dollar Inc.*, 679 F. App'x 126, 133 (3d Cir. 2017).  "A plaintiff is entitled to discovery only when they have made factual allegations that support a cognizable claim; discovery is not for determining whether there is a factual basis for a claim not yet made."  *Kurtz v. Westfield Ins.*, 610 F. Supp. 3d 703, 711 (E.D. Pa. 2022).  Qualcomm argues that because it vaguely claimed it "expects discovery to show" other TLA violations based on peripheral IP, that Arm "may" have breached the TLA, or used the word "including" in the SAC, that it is entitled to discovery.  That is not the law—Qualcomm's vague allegations are conclusory and hoping discovery will uncover a claim does not state one.  *See Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006); *GlaxoSmithKline LLC v. Glenmark Pharms., Inc., USA*, 2017 WL 11685418, at *6 (D. Del. Jan. 20, 2017); *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 621-22 (D. Del. 2015).  Ruling on whether the SAC plausibly alleges a claim tied to peripheral IP would also, in any event, prejudge issues in Arm's MTD currently pending before Judge Noreika.  *See* Ex. 3 at 10; Ex. 4 at 20.

Qualcomm looks outside its pleading and exhibits to argue that because "the *October 2024* quote referenced in the SAC included prices" for peripheral IP (█████████████ ), it adequately pled such claims. Ex. 1 at 1.  But simply referencing a business document does not adequately plead a claim, and only underscores that Qualcomm knew about but chose *not* to plead a claim for peripheral IP.  Indeed, TLA ████████████ but it is absent from the SAC.  Ex. 5 █████████ As to non-cores, Qualcomm's theories are based on different offers Arm made years before the █████████████ allegations described in the SAC.  As Qualcomm's untimely interrogatory responses state, Arm's "proposal for ████████" from "*August and November 2022*" and its "proposal for '██████████'" from "*March 2023*" each "breached ████████ Ex. 6 at 11-12.  Permitting these new, unpled claims would also push the period for which

1

Qualcomm allegedly ███████████████████████████████████████████ ███ based on Arm's alleged breaches tied to ████████████████████████████████ which may also impact Arm's statute of limitations defenses. Ex. 2 ¶ 219; Ex. 5 ████. Qualcomm has not pled a claim for the 13 new products on which it seeks to compel discovery.

Qualcomm also points to its implied covenant claim in Count III. Ex. 2 ¶¶ 181-188. But the only allegation about the TLA in that Count is that Arm allegedly "failed to provide licensing proposals for *Arm Implementation Cores* to Qualcomm in violation of provisions of the QC TLA," not peripheral IP. Ex. 2 ¶ 184. Qualcomm's theory for peripheral IP, in any event, is that Arm's offer was not "commercially reasonable," not that Arm failed to provide a proposal. Ex. 1 at 1. Nor does paragraph 184 put Arm on notice of any ████████████████████████████████████████████ allegations, as Qualcomm admits Arm *did* provide offers, it just didn't like them. Qualcomm asserts that serving discovery requests "discloses" a theory—yet that notion eviscerates the purpose of pleadings as well as Rules 12, 15, and 16. Discovery requests are not a recognized way to amend a complaint, evade the deadline for doing so under the scheduling order, or avoid a MTD or other challenge to the new claims. Likewise, the Arm RFPs Qualcomm points to either name only ████████████████████ or were served shortly before discovery closed and after Qualcomm filed its original motion to compel (D.I. 158) merely to ensure that, in the event the Court ruled in Qualcomm's favor on this brewing dispute, Arm would receive reciprocal discovery. *See* Ex. 7 (RFPs 249-258). Arm never conceded Qualcomm's unpled claims were in the case.

Allowing Qualcomm to pursue these new claims would add even more complexity to this already massive case, which is just two months from summary judgment and should be narrowed, not expanded. Litigating whether Arm's proposals for each of these 13 new products breached the TLA would require significant new discovery, likely requiring Arm to notify and produce third party licenses for those products (of which there may be numerous) and which will inevitably spawn new third-party confidentiality disputes. Arm would also need to take new discovery of Qualcomm's witnesses regarding its supposed "harm." Indeed, Qualcomm claims that due to Arm's alleged "refusal to license ████████████████," Qualcomm had to ████████████████████████████████████████████████████████████ ████████████████████████████ Ex. 6 at 19. Yet Qualcomm's interrogatory response does not cite a document to back that claim, only the conclusory testimony of a single employee. *Id.* Further, both parties would likely need to conduct expert discovery into any remedy Qualcomm may seek. None of this additional discovery is appropriate at this late stage.

***New ALA Breach Claim: ETE Checker***. Qualcomm's request for discovery on its new ALA breach claim based on the ETE Checker should be denied, and that theory stricken. As with Qualcomm's new TLA claims, Qualcomm disclosed its ETE Checker claim after the close of fact discovery on July 11. Ex. 8 (QC Resp. to ROG Nos. 1, 6); Ex. 35 (QC Resp. to ROG No. 16. Discovery should be denied for the same reasons.

Further, as Arm's August 7 letter brief explained, Arm's production already includes documents that bear on Arm's decision to stop supporting Qualcomm's use of unlicensed Nuvia technology and ETE Checker support, which Qualcomm recently used at depositions. Ex. 9 at 4; Ex. 10; Ex. 11; Ex. 12. Qualcomm also questioned multiple Arm witnesses about the ETE Checker issue. *See, e.g.*, Ex. 13 at 125:5-156:18; Ex. 14 at 114:4-117:7; Ex. 15 at 180:9-15; Ex. 16 at 24:20-24, 172:18-173:4. Whether Arm provided other companies with support materials (such as ETE Checker support) has no bearing on whether Arm had an obligation to provide such support to Qualcomm.

2

## 2.    Tortious Interference-Related Requests[1]

Qualcomm's request for additional discovery should be denied. Arm has produced numerous documents—and Arm's witnesses have provided testimony—concerning the October 22 letter and related media. Qualcomm deposed five people—Messrs. Collins, Kranhold, Hughes, Siegel, and Ms. Badani—almost exclusively about these topics, and asked several other Arm witnesses about them. Qualcomm argues Arm withheld discovery on its decision to write, share, and withdraw the letter, but that is plainly incorrect. The October 2024 letter not only speaks for itself, but Mr. Collins testified that ███████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████ Ex. 17 at 71:5-88:19. And the reason for withdrawing the letter is stated in Arm's withdrawal letter itself. Ex. 18. Arm agreed to, and did, produce documents responsive to RFP Nos. 16, 17, 38, 145-147, and 149 (*see* Exs. 19 (2/20/25 Arm Resps. to QC 1st RFPs (Nos. 1-52)), 20 (5/2/25 Arm Resps. to QC 3rd RFPs (Nos. 121-156))), and Arm logged an additional 27 documents about the October 22 letter. *See* Ex. 21 (7/11/25 2d Suppl. Privilege Log). Additionally, FGS produced another 183 documents. Arm confirms its production of documents responsive to these Requests is complete.

Regarding Topic No. 32, Arm designated witnesses to testify regarding letters to Qualcomm customers, and as well as on subparts (a), (b), (c), (d), and (i), despite Qualcomm's refusal to engage in reciprocal discovery and designate a witness on Qualcomm's media communications. Ex. 22 at 32-33. The remaining subparts ((f), (g), (h), and (j)), which concern and include communications with third parties other than ████ and ██████ are not relevant or proportional. Nevertheless, multiple fact witnesses provided testimony, including for subpart (f) (*see, e.g.,* Ex. 23 at 54:1-67:12, Ex. 24 at 64:8-70:4, Ex. 25 at 107:22-137:25) and for subpart (g) Mr. Siegel, as Morrison & Foerster's designated witness, testified; for subpart (h), *see, e.g.,* Ex. 23 at 36:23-40:7, Ex. 26 at 40:11-45:23, 48:10-52:5, Ex. 25 at 46:17-85:4, 99:22-103:19; and for subpart (j), *see, e.g.,* Ex. 23 at 54:1-67:12, Ex. 24 at Dep. 64:8-70:4, Ex. 26 at 40:11-45:23, 48:10-52:5, Ex. 25 at 107:22-137:25.

Qualcomm again incorrectly asserts that Arm claimed privilege over its "public relations strategy," but as Arm stated in its prior letter to the Special Master and at the August 14 hearing, and as the above-cited testimony shows, that is incorrect. Ex. 9 at 3-4.

Qualcomm argues that Arm waived privilege over any document relating to its October 2024 letter or media regarding the same. Arm did not. Qualcomm argues for such an enormously broad waiver based on ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

---

[1]    Qualcomm argues there are ████████████████████████████████████████ ████████████████████████████████████████████ but makes no such breach of contract allegations. Ex. 1 at 2.

█████████████████████████████ [2] Ex. 29 at 160:5-17.  On redirect, █████████████████████████████████████████████████████ *Id.* at 164:16-165:21.  That is not a basis to invade any privileged deposition preparation (or other attorney-client communication) in which Mr. Abbey gained an understanding of Arm's interrogatory response, much less a broader waiver.  Qualcomm seeks discovery about how Mr. Abbey gained an understanding of the contents of Arm's interrogatory response, but Arm is not claiming privilege over the content of its interrogatory response, which Qualcomm has.  Further, Arm is not using Mr. Abbey's testimony as a "sword": the contents of interrogatory responses speak for themselves, and Mr. Abbey or another witness's understanding of what is or is not contained in them is irrelevant.  Finally, Qualcomm's assertions of "waiver" aside, Arm is not claiming privilege over how Bloomberg was briefed about the contents of the letter, and Qualcomm received testimony about the conversations with Ian King.  *See, e.g.*, Ex. 26 at 48:20-51:5; Ex. 25 at 62:6-63:2; 64:11-68:14.  This other discovery confirms there are no other documents from this purported "discussion with Bloomberg."  *See, e.g.*, Ex. 26 at 62:6-64:9.

### 3.    Competition-Related Requests

Qualcomm's requests for irrelevant and overbroad discovery on its UCL claim should be denied.

**RFPs 103-110, 117-119, 121, 143.**  RFPs seeking documents about Arm's supposed vertical integration are irrelevant.  Qualcomm's UCL count does not mention its new theory that Arm's business model shifted towards building and licensing chips or that Arm became "vertically integrated."  The UCL count only alleges that Arm acted to prevent Qualcomm from developing *custom CPUs* to avoid competition with Arm's "off-the-shelf *CPU* designs."  *See, e.g.*, Ex. 2 ¶¶ 207-208.  Only two sentences in the SAC—both in the background—even hint at the type of vertical integration in these RFPs. Ex. 2 ¶ 70.  The conclusion of that discussion returns, once again, to Qualcomm's claim that Arm is "pressuring customers . . . to purchase Arm's off-the-shelf CPUs," (Ex. 2 ¶ 72)—the same theory in its UCL count.  Setting aside Qualcomm's position that Arm is not entitled to discovery regarding allegations exclusively appearing in the background section of the SAC, *see* Ex. 30 at 4, Ex. 31 at 3, two never-again-referenced, atmospheric sentences in the background section of a 226-paragraph complaint are not sufficient to form a material part of Qualcomm's UCL claim and put Arm on notice that Qualcomm is advancing such a theory.

Similarly, none of Qualcomm's interrogatory responses meaningfully explain this theory—even after Arm served an interrogatory specifically targeting it.  Qualcomm raised the concept of "vertical integra[tion] and gaining market share as a chip designer" for the first time in its June 4 letter brief.  As that language appears nowhere in the complaint, after Qualcomm's letter brief Arm served Interrogatory No. 19 seeking the bases for that argument, and once again—as Arm has explained elsewhere—Qualcomm recycled *the same 6 paragraphs of text* it uses in response to every interrogatory related to competition issues focused almost exclusively on Arm's conduct with respect to "off-the-shelf CPU designs."  Qualcomm added a single short paragraph describing witness testimony related to Arm's "business model," but did not explain in any detail any UCL violation under any test.  Qualcomm cannot seek to

---

[2]    Qualcomm's assertion in its letter brief that "Arm admitted it leaked the letter to Bloomberg News" in Arm's "response to Interrogatory 2" is incorrect.  Arm did not "leak" the letter to Bloomberg, and its response does not admit to such.  *See* Ex. 28 at 17-23.

compel discovery on irrelevant statements buried in the SAC or theories not fully disclosed in its interrogatory responses. *See, e.g.*, Exs. 6, 32, 33 (QC's R&Os to ROGs 5, 7, 8, 18, 19).

**RFP 122**. Arm properly limited its production to include only the third parties with whom Qualcomm alleges interference. Qualcomm is not entitled to broad and unduly burdensome discovery into all documents that implicate Arm's "knowledge" of Qualcomm's many customers, especially those with whom Qualcomm has *not* alleged interference—especially where Qualcomm has elsewhere taken the position that its other non-pled customers are irrelevant for purposes of its own discovery obligations. *See, e.g.*, Ex. 19 (RFP 13); Ex. 34 (RFP 63); Ex. 20 (RFP 126). In any event, Qualcomm is not entitled to engage in a fishing expedition in the hopes of discovering additional unpled claims—particularly given that Qualcomm's tortious interference claims hinge on business "disruption[s]" that only Qualcomm would be aware of and presumably would know without the aid of discovery. *See, e.g.*, Ex. 2 ¶ 194; *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 279 (D. Del. 2012) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request.") (original emphasis); *In re ML-Lee Acquisition Fund II, L.P.*, 151 F.R.D. 37, 41 (D. Del. 1993).

**RFPs 187-189**. Arm has made clear that it has already produced all non-privileged documents responsive to these requests in *Arm v. Qualcomm* and/or this litigation, including through its productions responsive to other RFPs. *See, e.g.*, Ex. 19 (Resp to QC RFPs 10, 23-24, 29, 39-40); Ex. 34 (Resp. to QC RFPs 57, 81). In any event, the parties are not at an impasse and any dispute is not ripe because at a recent meet-and-confer Arm agreed it would investigate whether it had any other non-privileged documents in its possession responsive to RFPs 188 and 189 and that investigation is ongoing.

**RFPs 192-195**. Arm's agreements and licenses with ███████████ are irrelevant. Neither the SAC nor Qualcomm's interrogatory responses include any allegations about Arm's agreements with ██████████████████████████," let alone whether such agreements include "favorable terms," which is irrelevant. Nor is it relevant that ██



, Qualcomm does not explain how a four-year-old complaint about a failed acquisition is relevant to evaluating the fairness, legality, or impact of Arm's present non-merger-related conduct. Ex. 6 (QC Resp. to ROGs 20-21).

**RFPs 169-186**. RFPs about ██████ are irrelevant, overbroad, unduly burdensome, and not proportional to the case. The SAC contains no allegations related to ████, including as one of the allegedly "unfair" or "unlawful" acts underlying Qualcomm's UCL claim. Nor does Qualcomm include this theory in any interrogatory response, including its original or supplemental responses to Arm's interrogatories requesting the bases for Qualcomm's UCL claim. Ex. 8 (QC Resp. to ROGs 5, 7, 8); Ex. 6 (QC Resp. to ROGs 18, 19, 20, 21).

4. **Interrogatories**

*Interrogatory No. 6*. Qualcomm's interrogatory seeks licensing terms for ██████████████. There is no basis to order Arm to supplement its response because that

5

is precisely what Arm provided—pursuant to Fed. R. Civ. P. 33(d), Arm identified the license agreements themselves for ████████████, which contain the requested license terms.

Qualcomm moves to compel Arm not for any additional facts or any legal contention, but to make characterizations about the license terms it produced, which are not even called for by the Interrogatory. There is no basis for that, including Arm's alleged "knowledge" of them, and the license terms speak for themselves. Qualcomm is more than capable of reviewing those agreements to identify their terms, as it has done for the ALA and TLA. Qualcomm's additional request for "additional third-party agreements that cover all of the TLA IP" should be denied because products other than ████████████ are not at issue in this case, as discussed above and in Arm's other letter briefing.

*Interrogatory No. 11*. Qualcomm failed to raise any issue with Arm's response to this interrogatory in advance of filing its letter. Nonetheless, Arm's response includes a lengthy discussion of how Arm prepared its October 2024 offer for a ████████████ renewal license. That response includes references to the testimony of multiple Arm witnesses that Qualcomm deposed as well as the documents considered in that analysis. Qualcomm's complaint appears to be that Arm should "identify relevant information about the ATA and provide a 30(b)(6) witness to address it." Ex. 1 at 4-5. Arm produced ████████ agreements and Qualcomm's expert was able to analyze and opine about them in his opening report, served on August 8. Qualcomm also deposed several witnesses involved in preparing Arm's offer after the ████████ agreement was produced. ████████████████████████████████████████████████████████████████████████████ Qualcomm has the documents and had the opportunity to ask about them. That Qualcomm did not get the answers it wanted is not a basis for additional discovery.

*Interrogatory No. 2*. Qualcomm failed to identify any purported deficiency in Arm's Interrogatory No. 2 response during the parties' meet-and-confer process, so this issue is at best not ripe. Arm disagrees that its response is deficient but is willing to moot this issue by citing to deposition testimony from Ms. Badani and Mr. Kranhold.

Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

Words: 3419

6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,

        Plaintiffs,

v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,

        Defendant.

C.A. No. 24-490-MN



### DECLARATION OF PETER EVANGELATOS IN SUPPORT OF DEFENDANT ARM HOLDINGS PLC'S SUPPLEMENT TO ARM'S MOTION TO STRIKE AND COMPEL (D.I. 378) AND OPPOSITION TO QUALCOMM'S <u>AUGUST 11 LETTER BRIEF TO SPECIAL MASTER RYCHLICKI</u>

Dated: August 18, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A0300**

jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

2

**A0301**

I, Peter Evangelatos, declare as follows:

I am an attorney with the law firm of Kirkland & Ellis LLP, counsel for Arm Holdings PLC ("Arm") in the above referenced action. I submit this declaration in support of Arm's Opposition to Qualcomm's Motion to Compel (D.I. 375).

1.      Attached as Exhibit 1 is true and correct copy of D.I. 375, Plaintiffs' Motion to Compel and Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes [████████████████████████████████], dated August 11, 2025.

2.      Attached as Exhibit 2 is a true and correct copy of D.I. 137, Second Amended Complaint [████████████], dated June 3, 2025.

3.      Attached as Exhibit 3 is a true and correct copy of D.I. 305, Arm's Reply Brief in Support of Its Partial Motion to Dismiss Qualcomm's Second Amended Complaint ████████ ████████████], dated July 8, 2025.

4.      Attached as Exhibit 4 is a true and correct copy of D.I. 287, Qualcomm's Answering Brief in Opposition to Arm's Motion to Dismiss the Second Amended Complaint [████████████████████], dated July 1, 2025

5.      Attached as Exhibit 5 is a true and correct copy of the TLA [██████████], dated May 30, 2013.

6.      Attached as Exhibit 6 is a true and correct copy of Plaintiffs' First Supplemental Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14-24) ████████ ████████████████████████], dated August 8, 2025.

4

7.    Attached as Exhibit 7 is a true and correct copy of Plaintiffs' Responses and Objections to Defendant's Fifth Set of Requests for Production to Qualcomm (Nos. 228-287) ███████████ ], dated June 11, 2025.

8.    Attached as Exhibit 8 is a true and correct copy of Plaintiffs' Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1-9) [████ ████████████████████████ ], dated July 11, 2025.

9.    Attached as Exhibit 9 is a true and correct copy of Arm's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes [████████████ ████████████████████████ ], dated August 7, 2025.

10.    Attached as Exhibit 10 is a true and correct copy of Exhibit QCX-241 to the July 11, 2025 deposition of Vivek Agrawal [█████████████████████████████ ], bearing Bates stamp ARM_01315194.

11.    Attached as Exhibit 11 is a true and correct copy of Exhibit QCX-272 to the July 11, 2025 deposition of Vivek Agrawal [█████████████████████████████ ], bearing Bates stamp ARMQC_02784247.

12.    Attached as Exhibit 12 is a true and correct copy of Exhibit 30 to the July 2, 2025 deposition of Richard Grisenthwaite [██████████████████████████ ], bearing Bates stamp ARMQC_02779170.

13.    Attached as Exhibit 13 is a true and correct excerpted copy of the July 11, 2025 deposition transcript of Vivek Agrawal [██████████████████████ ].

14.    Attached as Exhibit 14 is a true and correct excerpted copy of the July 7, 2025 deposition transcript of Aparajita Bhattacharya [█████████████████████████ ].

5

**A0303**

15.     Attached as Exhibit 15 is a true and correct excerpted copy of the July 2, 2025 deposition transcript of Richard Grisenthwaite ██████████████████████████████ ].

16.     Attached as Exhibit 16 is a true and correct excerpted copy of the June 20, 2025 deposition transcript of Martin Weidmann [████████████████████████████ ].

17.     Attached as Exhibit 17 is a true and correct excerpted copy of the June 30, 2025 deposition transcript of Spencer Collins [████████████ ].

18.     Attached as Exhibit 18 is a true and correct copy of a letter from Spencer Collins to Ann Chaplin [████████ ], dated January 8, 2025 and bearing Bates stamp QCVARM_0573678.

19.     Attached as Exhibit 19 is a true and correct copy of Arm LTD.'s First Supplemental Objections and Responses to Qualcomm's First Set of Requests for Production (Nos. 1-52) [████████ ], dated June 17, 2025.

20.     Attached as Exhibit 20 is a true and correct copy of Arm Holdings PLC's First Supplemental Objections and Responses to Qualcomm's Third Set of Requests for Production (Nos. 121-156) ████████ ], dated June 17, 2025.

21.     Attached as Exhibit 21 is a true and correct excerpted copy of Arm's Second Supplemental Initial Privilege Log [██████████████████████████ ], dated July 11, 2025.

22.     Attached as Exhibit 22 is a true and correct copy of Arm Holdings PLC's Objections and Responses to Plaintiffs' Notice of 30(b)(6) Deposition, dated June 19, 2025.

23.     Attached as Exhibit 23 is a true and correct excerpted copy of the August 1, 2025 deposition transcript of Ami Badani [████████████████████████ ].

6

**A0304**

24.     Attached as Exhibit 24 is a true and correct excerpted copy of the June 17, 2025 deposition transcript of Phil Hughes.

25.     Attached as Exhibit 25 is a true and correct excerpted copy of the July 17, 2025 deposition transcript of Paul Kranhold ████████████████████████████████ ].

26.     Attached as Exhibit 26 is a true and correct excerpted copy of the July 4, 2025 deposition transcript of Kenneth Siegel [ ████████████████ ].

27.     Attached as Exhibit 27 is a true and correct excerpted copy of the August 14, 2025 transcript of proceedings before Special Discovery Master Helena C. Rychlicki, Esq. [ ████ ████████████████████████ ].

28.     Attached as Exhibit 28 is a true and correct copy of Arm Holdings PLC's First Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1-3) [ ████████████████████████████ ], dated July 11, 2025.

29.     Attached as Exhibit 29 is a true and correct excerpted copy of the June 26, 2025 deposition transcript of William Abbey [ ████████████████ ].

30.     Attached as Exhibit 30 is a true and correct copy of Arm Holdings PLC's Letter Brief to Special Master Rychlicki [ ████████████████████████████████████ ████ ], dated August 1, 2025.

31.     Attached as Exhibit 31 is a true and correct copy of a letter from Jay Emerick to Catherine Nyarady [ ████████ ], dated April 22, 2025.

32.     Attached as Exhibit 32 is a true and correct copy of Plaintiffs' Third Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1-9) [ ████ ████████████████████████ ], dated August 8, 2025.

7

33.     Attached as Exhibit 33 is a true and correct copy of Plaintiffs' Second Supplemental Responses and Objections to Defendant's Second Set of Interrogatories (Nos. 10-13) [█████ ███████████████████████], dated August 8, 2025.

34.     Attached as Exhibit 34 is a true and correct copy of Arm LTD.'s First Supplemental Objections and Responses to Qualcomm's Second Set of Requests for Production (Nos. 53-120) [█████████], dated June 17, 2025.

35.     Attached as Exhibit 35 is a true and correct copy of Plaintiffs' Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14-24) █████████████████ █████████████], dated July 11, 2025.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 18th day of August 2025 at New York, N.Y.

/s/ Peter Evangelatos
Peter Evangelatos

8

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,  )
  a Delaware corporation; and  )
QUALCOMM TECHNOLOGIES, INC.,  )
  a Delaware corporation,  )
     )
     Plaintiffs,  )  C.A. No. 24-490 (MN)
     )
     v.  )
     )
ARM HOLDINGS PLC., f/k/a ARM LTD.,  )
  a U.K. corporation,  )
     )
     Defendant.  )

## PLAINTIFFS' MOTION TO COMPEL

Pursuant to the Court's Order referring this dispute to the Special Master (D.I. 336) and the Order Relating to Procedures for Resolving Disputes Before Special Master (D.I. 350), Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. ("Qualcomm") hereby move to compel Defendant Arm Holdings plc. f/k/a Arm Ltd. ("Arm") to:

(i)      produce documents responsive to RFP Nos. 34 and 40, supplement its response to Interrogatory 6, and provide a witness pursuant to Fed. R. Civ. P. 30(b)(6) that is prepared to testify on Topic 16(b), concerning peripheral IP ███████████████████ ████████████████████████████████████.

(ii)      Produce documents responsive to RFP Nos. 34, 40, 57, 58, 71, 85, 100 and supplement its response to Interrogatory 6, concerning licensing and engineering for Arm's ██████, ████████, and ████████ CPUs.

(iii)      Produce documents responsive to RFP Nos. 74 and 76 concerning Arm's failure to provide guidance for configuring the ███████████.

1

**A0308**

(iv)    Produce documents responsive to RFPs 16, 17, 38, 144, 156, 147, 149 and provide a witness pursuant to Fed. R. Civ. P. 30(b)(6) that is prepared to testify on Topics 32(e)–(h) and (j), concerning Arm's decision to write and leak the October 22, 2024 termination letter.

(v)     Produce documents responsive to RFPs 103, 104, 105, 106, 107, 108, 109, 110, 117, 118, 119, 121, and 143 regarding Arm's vertical integration and plans to build its own chips.

(vi)    Produce documents responsive to RFP No. 122 regarding Arm's knowledge of Qualcomm's customers.

(vii)   Produce documents responsive to RFPs 187, 188, and 189 concerning Arm's discussions of about Qualcomm's CPUs and Arm's decision to cease engaging with Qualcomm on its CPUs or impede Qualcomm's development of its CPUs.

(viii)  Produce documents responsive to RFPs 192, 193, 194, and 195 concerning Arm's agreements with Apple and NVIDIA.[1]

(ix)    Produce documents responsive to RFPs 169–186 concerning ███████████████ █████████████████████████████

(x)     Supplement its response to Interrogatory 6 to identify the applicable license fees and royalty rates third parties paid for each product listed.

(xi)    Supplement its response to Interrogatory 11 to ██████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████, and provide a witness pursuant to Fed. R. Civ. P. 30(b)(6) that is prepared to testify on that issue.

---

[1] With respect to Apple, Qualcomm is represented by Morris, Nichols, Arsht & Tunnell LLP.

2

(xii)   Supplement its response to Interrogatory 2 to explain Ami Badani and Ben Spicehandler's role in the leak of the October 2024 termination letter.

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA  94105
(628) 432-5100

August 11, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

3

**A0310**

## **RULE 7.1.1 CERTIFICATION**

Pursuant to D. Del. Local Rule 7.1.1, counsel for plaintiffs met and conferred with counsel for defendant regarding the relief sought by the foregoing motion, and Arm opposes this motion.


*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED, <br>   a Delaware corporation; and <br> QUALCOMM TECHNOLOGIES, INC., <br>   a Delaware corporation, <br><br>          Plaintiffs, <br><br>   v. <br><br> ARM HOLDINGS PLC., f/k/a ARM LTD., <br>   a U.K. corporation, <br><br>          Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   C.A. No. 24-490 (MN) <br> ) <br> ) <br> ) <br> ) <br> ) |

## [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL

AND NOW, this ___ day of _____, 2025, the Court having considered Plaintiffs' Motion to Compel and any opposition thereto;

IT IS HEREBY ORDERED that the Motion is GRANTED;

IT IS FURTHER HEREBY ORDERED that Defendant Arm Holdings plc. f/k/a Arm Ltd. ("Arm") to:

(i)     produce documents responsive to RFP Nos. 3 and 40, respond to Interrogatory 6, and provide a witness pursuant to Fed. R. Civ. P. 30(b)(6) that is prepared to testify on Topic 16(b), concerning peripheral IP ███████████████ ████████████████████████████████████.

(ii)     Produce documents responsive to RFP Nos. 34, 40, 57, 58, 71, 85, 100 and respond to Interrogatory 6, concerning licensing and engineering for Arm's ████, ██████, and ███████ CPUs.

(iii)     Produce documents responsive to RFP Nos. 74 and 76 concerning Arm's failure to provide guidance for configuring the ██████████.

5

**A0312**

(iv)    Produce documents responsive to RFPs 16, 17, 38, 144, 156, 147, 149 and provide a witness pursuant to Fed. R. Civ. P. 30(b)(6) that is prepared to testify on Topics 32(e)–(h), and (j), concerning Arm's decision to write and leak the October 22, 2024 termination letter.

(v)    Produce documents responsive to RFPs 103, 104, 105, 106, 107, 108, 109, 110, 117, 118, 119, 121, and 143 regarding Arm's vertical integration and plans to build its own chips.

(vi)    Produce documents responsive to RFP No. 122 regarding Arm's knowledge of Qualcomm's customers.

(vii)    Produce documents responsive to RFPs 187, 188, and 189 concerning Arm's discussions of about Qualcomm's CPUs and Arm's decision to cease engaging with Qualcomm on its CPUs or impede Qualcomm's development of its CPUs.

(viii)    Produce documents responsive to RFPs 192, 193, 194, and 195 concerning Arm's agreements with Apple and NVIDIA.[1]

(ix)    Produce documents responsive to RFPs 169–186 concerning ███████████ ████████████████████

(x)    Supplement its response to Interrogatory 6 to identify the applicable license fees and royalty rates third parties paid for each product listed.

(xi)    Supplement its response to Interrogatory 11 to ████████████████ ████████████████████████ ████████████████████████

---

[1] With respect to Apple, Qualcomm is represented by Morris, Nichols, Arsht & Tunnell LLP.

████████████████████████████, and provide a witness pursuant to Fed. R. Civ. P. 30(b)(6) that is prepared to testify on that issue.

(xii)   Supplement its response to Interrogatory 2 to explain Ami Badani and Ben Spicehandler's role in the leak of the October 2024 termination letter.

_____
J.

7

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2025, I caused the foregoing to be electronically filed

with the Clerk of the Court using CM/ECF, which will send notification of such filing to all

registered participants.

I further certify that I caused copies of the foregoing document to be served on

August 11, 2025, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                       *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                   *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                                     *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Kyle W.K. Mooney, Esquire                                     *VIA ELECTRONIC MAIL*
Kyle D. Friedland, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

8

**A0315**

Erik J. Olson, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                    *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                       *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*


                                        */s/ Jennifer Ying*
                                        _____
                                        Jennifer Ying (#5550)

9

**A0316**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,         )
   a Delaware corporation; and     )
QUALCOMM TECHNOLOGIES, INC.,   )
   a Delaware corporation,        )
                               )
           Plaintiffs,         )
                               )
      v.                 )   C.A. No. 24-490 (MN)
                               )
ARM HOLDINGS PLC., f/k/a ARM LTD.,  )
   a U.K. corporation,         )
                               )
          Defendant.      )

## PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI REGARDING OUTSTANDING DISCOVERY DISPUTES

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

**A0317**

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

August 11, 2025

Dear Special Master Rychlicki:

Qualcomm submits this letter in advance of the August 22 hearing.

## I.    Covenant of Good Faith and Fair Dealing

Arm breached the implied covenant of good faith and fair dealing for both the Qualcomm ALA and TLA.

**Peripheral TLA IP.**  In addition to the ███████████████████████, Arm also failed to offer commercially reasonable terms for Peripheral IP—IP used in Qualcomm's chips outside of the CPU and licensable under a TLA, including the ██████████████████████████ ████████████████████████████████████  Qualcomm requested documents and testimony concerning Arm's licenses and negotiations for these products.  (**RFPs 34, 40; Topic 16(b); Interrogatory 6**.)[1]  Arm refused, saying the Second Amended Complaint ("SAC") does not specifically mention these IPs.  But the SAC alleges that, in addition to the breach of █████ ████, "Qualcomm expects discovery to show that Arm violated the good faith and fair dealing provisions of the QC TLA *in its licensing negotiations involving peripheral TLA IP*."  D.I. 137 ¶ 102 (emphasis added).  In addition, the October 2024 quote referenced in the SAC included prices for these three Peripheral IPs. Ex. 11.  Qualcomm also sought discovery on these Peripheral IPs in January 2025.  (**RFP 34**.)  Arm was thus on notice of Qualcomm's claims concerning Peripheral IP.  Arm should produce discovery on these IPs.

  Arm also provided unreasonable licensing offers for its ████████████████████████.  Qualcomm sought documents concerning Arm's licensing, negotiation (**RFPs 34, 40, 57, 58, 71, 85; Interrogatory 6**), and engineering (**RFP 100**) of these CPUs.  Arm refused all discovery because it claims the SAC does not specifically mention these CPUs.  But the SAC alleges that Arm breached the implied covenant and lists examples of Arm's conduct. D.I. 137 ¶ 184.  Rule 26's focus on "actual claims and defenses" "does not mean that a fact must be alleged in a pleading for a party to be entitled to discovery of information concerning that fact," 6 Moore's Federal Practice - Civil § 26.42[1] (2025).  Qualcomm's SAC provided examples of how Arm breached, and Qualcomm should be permitted discovery on *all* the ways Arm may have breached the implied covenant.  Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (confirming that "other incidents of the same type" are discoverable).

**ETE Trace Checker.**  Arm failed to provide Qualcomm with necessary information and guidance for configuring the ETE Trace Checker Module, verification technology Qualcomm licenses under its ALA.  Arm purportedly agreed to produce documents "concerning the decision not to provide Qualcomm with information or documents related to the configuration or enablement of the" ETE Checker, Ex. 12 at 44, but Qualcomm has not identified any such documents in Arm's production.  In addition, Arm refused equally relevant discovery into

---

[1] "RFP" refers to Qualcomm's requests for production, Exhibits 1-7.  "Topic" refers Qualcomm's Notice of Rule 30(b)(6) Deposition of Arm, Exhibit 8.  "Interrogatory" refers to Qualcomm's interrogatories, Exhibits 9-10.

communications regarding Qualcomm's requests for such configuration information or information that was provided to other licensees regarding the ETE Checker (**RFPs 74, 76**), Ex. 13 at 24-27. Arm's refusal to provide discovery prejudiced Qualcomm and impeded its ability to fully pursue its claims. Arm should produce the relevant documents.

## II.   Tortious Interference

Qualcomm's Counts III, IV, and V stem from Arm's interference with Qualcomm's customers, including by sending Qualcomm a letter threatening to terminate the Qualcomm ALA on October 22, 2024, then leaking that letter to Bloomberg News the same day, despite ███████ ██████████████████████████████████ D.I. 137 ¶¶ 29-37, 144-163, 189-203.

In its response to Interrogatory 2, Arm admitted it leaked the letter to Bloomberg News through Kenneth Siegel, a partner at MoFo and a director of SoftBank Group, and Paul Kranhold, a partner at FGS Global, Arm's PR firm. Ex. 14 at 20-21. Qualcomm sought discovery on the letter and leak (**RFPs 16, 17, 38, 145[2]-147, 149; Topic 32(e)-(h), (j)**), but Arm's production contains no documents about the decision to write or leak the letter or the decision to withdraw the notice on January 8, 2025.

Qualcomm is entitled to documents concerning Arm's leak of information about the termination letter to Bloomberg. Arm's conversations regarding this public relations strategy are not privileged as they do not involve legal advice. And to the extent any such documents are privileged, Arm waived the privilege. At Mr. Abbey's deposition, Arm's counsel elicited testimony that █████████████████████████████████████████████████████ ██████████████████████████. Ex. 15 at 165:3–21. ███████████████████████ ████████████████████████████████████████████████████████████████████████. *Id.* 172:8–20. ███████████████████████████████████████████████████ ████████████████████████████████████████. *Id.* 173:18–175:11. By testifying about the content of a communication with an attorney—and attempting to use the content of that communication to bolster Arm's defense against Qualcomm's claim—Arm waived privilege over that communication. *See CP Kelco U.S. Inc.* v. *Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2003) ("Having chosen to use the information offensively, any privilege [defendant] might have claimed to defend the information from disclosure is, and remains, waived."). Qualcomm is entitled to any documents regarding that conversation. To the extent no documents exist, Qualcomm is entitled to an additional deposition for the limited purpose of asking Mr. Abbey about this conversation without Arm providing improper privilege instructions to Mr. Abbey.

## III.   California Unfair Competition Law

Historically Arm operated as a neutral licensor, holding itself out as the "Switzerland of chips." D.I. 137 ¶ 68. Arm's neutrality intentionally led to widespread adoption of the Arm Architecture because software developers could ensure software would be interoperable across all Arm-compatible devices. *Id.* Following Arm's acquisition by SoftBank, Arm pivoted away from this neutral model. *Id.* ¶ 69. Now, in violation of the California Unfair Competition Law (Count

---

[2] Qualcomm served two RFP Nos. 145 and moves on both here.

VI), Arm seeks to leverage its control of the Arm ISA to displace Qualcomm and grow Arm's chip business. *Id.* ¶¶ 70-72, 164, 207-210. Arm largely has refused discovery into this business model shift and its related unfair acts.

**RFPs 103-110, 117-119, 121, 143.** Qualcomm sought production of documents relating to Arm's vertical integration and Arm's intentions, plans, and strategy to build chips. Arm refused. Arm should be compelled to produce such documents as they bear on Qualcomm's unfair competition claim relating to Arm's efforts to displace Qualcomm and other licensees through building its own chips.

**RFP 122.** Qualcomm asked Arm for documents regarding Arm's "knowledge since January 1, 2022 that any Third Party is or has been a customer for Qualcomm CPUs or other products." Arm's response is limited to third parties identified in Qualcomm's complaint, *e.g.*, only customers with which Qualcomm already knows Arm tortiously interfered but not Qualcomm customers Arm interfered with without Qualcomm's knowledge. Ex. 16 at 6-7. Qualcomm is entitled to probe whether Arm knew specific companies were Qualcomm customers and targeted those companies to disparage Qualcomm or displace Qualcomm as a chip supplier.

Qualcomm requested documents concerning Arm's internal discussions about Qualcomm's custom CPUs (**RFP 187**), Arm's decision to cease engaging with Qualcomm on its CPUs (**RFP 188**), and any steps or decisions Arm took to impede Qualcomm's development of its CPUs (**RFP 189**). Discovery on Arm's decision to instruct its employees to stop communicating with Qualcomm or to impede Qualcomm's CPU development—for example, by withholding deliverables[3]—is key to understanding what Arm withheld from Qualcomm and whether its actions were motivated by a desire to hinder Qualcomm's CPU development and thereby harm competition.

Qualcomm requested agreements and licenses that Arm has with Apple[4] or Nvidia (**RFPs 193, 195**), including any that resulted from the dissolution of the Arm Joint Venture with Apple (**RFP 192**) and from Nvidia's failed acquisition of Arm (**RFP 194**). Apple was instrumental in Arm's founding and public reporting indicates that it retains a relationship with Arm that is more favorable than that of other licensees. Ex. 18. Nvidia and Arm entered into discussions for an acquisition in 2021 that ultimately fell through after regulatory pressure from the Federal Trade Commission. Arm's other agreements with Apple and NVIDIA are relevant to understanding whether and why their ALAs and TLAs reflect uniquely favorable terms.

**RFPs 169–186.** Arm also refused to produce documents relating to attempts to exclude Qualcomm from ██████████████████████

---

[3] As noted in Qualcomm's August 1 letter, "Arm witnesses testified they were instructed by management to withhold deliverables from Qualcomm, then instructed to deliver them after the verdict in *Arm* v. *Qualcomm*." Ex. 17 at 4. But Arm has not produced those communications or any documents reflecting Arm's decision making leading up to those communications.

[4] With respect to Apple agreements, Morris, Nichols, represents Qualcomm.

3

**A0321**

███████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████ Arm refused all discovery on relevance grounds.  But these requests are relevant to Qualcomm's UCL claim.

## IV.    Arm's Interrogatory Responses

Arm's interrogatory responses are incomplete.

**Interrogatories 6 and 11.**  Arm should be compelled to supplement its responses to **Interrogatory 6 and 11** to provide additional information about Arm's agreements with third parties for (at least) ████████████████ and to offer a 30(b)(6) witness prepared to testify about these issues.

**Interrogatory 6** asked Arm to describe the licensing terms for various products relevant to its claims, including ███████████████. Arm initially refused to provide any response to this request and, on the last day of fact discovery, supplemented its response to incorporate a handful of third-party agreements.  *First*, Arm should be compelled to produce additional third-party agreements that cover all of the TLA IP identified in **Interrogatory 6**, rather than just third-party agreements related to ████████████████. *Second*, Arm should be compelled to supplement its response to identify the applicable royalty rates in each agreement for each product. Arm only began to produce third-party agreements after depositions started, producing a handful of agreements between June 24 and July 11, making it impossible for Qualcomm to download, interpret, and examine witnesses using these documents.  Moreover, these are highly technical agreements that do not always identify royalty rates applicable to individual CPUs and that Arm— not outside counsel for Qualcomm—has specialized knowledge of.

**Interrogatory 11** asked for the basis for asserting that Arm did not breach the Qualcomm TLA.  Arm's initial response provides no specific information about ████████████████ ████████████████████████ Ex. 24.  On the last day of fact discovery, after Qualcomm completed its depositions, Arm supplemented its response to identify ████████████████████████ for ████████████████. *Id.*  The response cited deposition testimony of Ehab Youseff and ████████████████████

4

**A0322**

██████████████████ that Arm produced only *after* Mr. Youseff's deposition.  *Id.*  As described above, Arm should be required to identify relevant information about the ATA and provide a 30(b)(6) witness to address it.[5]  The supplemental response further states that ██████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████  Ex. 24.  But this explanation lacks any specific discussion of the relevant terms of the ██████ agreement or why Arm asserts it could not use them as a reference for Qualcomm's quote.  Arm should be required to supplement its interrogatory response to explain its analysis, identify what "other factors" it relied on to determine that ████████████████████████████████, and provide a witness prepared to so testify regarding Topics 8, 9, 20, and 29.

**Interrogatory 2.**  Arm's supplemental response to **Interrogatory 2** is insufficient because it does not describe Ami Badani or Ben Spicehandler's role in the leak of the October 2024 termination letter.  Ms. Badani's deposition testimony makes clear that █████████████ ██████████████████████████████████████████████  Ex. 26  at 36:23-40:7.  Arm claimed that it could not explain her role before her deposition, Ex. 27 at 33:13-37:7, despite the fact that she is an Arm employee and Arm provided information about other Arm employees prior to their depositions.  Further, Paul Kranhold testified about Mr. Spicehandler's involvement.  Ex. 28 at 36:1-14.  Arm should be required to supplement this response.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 2,357

---

[5] Arm's witness on **Topic 8** (Fonseca) ████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>  a Delaware corporation,<br>QUALCOMM TECHNOLOGIES, INC.,<br>  a Delaware corporation, | )<br>)<br>)<br>) | |
| | ) | C.A. No. 24-490-MN |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | **JURY TRIAL DEMANDED** |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>  a U.K. corporation, | )<br>)<br>) | ███████████ |
| Defendant. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm") complain and allege as follows against Defendant Arm Holdings PLC, formerly known as Arm Ltd. ("Arm").[1]

## NATURE OF THE ACTION

1.     This case arises out of the latest chapter in Arm's campaign to stifle competition and technology innovation by impeding the efforts of its longtime business partner Qualcomm to deliver leading computer chips to its customers and consumers around the world.  For years, Arm has received substantial royalties from licensing Qualcomm to design and sell products containing custom central processing units ("CPUs") compatible with Arm's instruction set architecture

---

[1]    On March 13, 2024, Qualcomm filed its Answer and Defenses to ARM's Complaint and Second Amended Counterclaims.  *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 13, 2024), D.I. 300.  This filing contains additional background on Arm's attempt to preclude Qualcomm's custom central processing units from competing with Arm's own central processing units.  The background allegations are set forth in paragraphs 1-47 and 175-273 of the redacted and publicly available pleading.  Redacted Answer & Defenses to Arm's Compl. & 2d Am. Countercls., *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 22, 2024), D.I. 306.

("ISA"). But following its acquisition by the venture capital firm SoftBank Group and its failed sale to NVIDIA, Arm attempted to shift its business model away from licensing its ISA for use by companies like Qualcomm that design CPUs, and toward forcing customers to buy only Arm's own CPU designs. Qualcomm's license, however, stands in the way of Arm's effort to push aside the makers of custom CPUs: Qualcomm's license extends until 2033, and Qualcomm's Arm-compatible microprocessors lead the industry in numerous applications. At the direction of SoftBank and its chairman and CEO, Masayoshi Son, Arm thus sought to disrupt Qualcomm's business. Arm's first move was to sue Qualcomm for allegedly breaching a license that Arm had previously granted to a company Qualcomm acquired but to which Qualcomm was not a party, demanding that Qualcomm cease distributing its groundbreaking microprocessors. As soon as Arm filed that lawsuit, it blitzed Qualcomm's major customers with letters publicizing the lawsuit, accusing Qualcomm of breaching "the Arm license agreement," and threatening that it would "work vigorously to protect what is rightfully ours." And eight months later, Arm sent another round of letters to Qualcomm's largest customers, using language Arm's CEO has admitted under oath was "confusing" and "misleading" to create the false impression that Qualcomm was clearly in breach of its agreement. Then, on the eve of trial in that case, Arm sent Qualcomm a notice of material breach purporting to have the right to terminate Qualcomm's own license after 60 days—the day after the trial was scheduled to end. That laid bare Arm's intentions from the beginning: to attempt to get out of its license with Qualcomm in any way possible so Arm could eliminate alternatives to Arm's own competing CPU designs.

2.     For decades, Arm has developed and licensed intellectual property relating to chips. Arm has pursued that business through two distinct models: *first*, by licensing other companies to

2

use Arm's ISA—the set of commands that determines how software controls a CPU[2]—and *second*, by licensing its own CPU designs so that other companies can make and sell products that use Arm's ready-made designs. Unlike other companies that developed a proprietary ISA used only on those companies' own chips, Arm followed a distinctive, "industry-described neutral, open licensing approach"[3] of "licensing its designs to all comers."[4] That open approach encouraged widespread adoption of Arm's ISA and also its designs. Arm's ISA—which Arm CEO Rene Haas describes as "the most ubiquitous computer architecture on the planet"[5]—is used by practically every smartphone, most "internet of things" ("IoT") devices, many automobiles, and an increasing number of personal computers and datacenter servers. Arm claims that companies using its ISA have shipped 270 *billion* chips as of January 2024.[6]

3. One of these customers was Qualcomm, which has licensed Arm technology since 1997. As relevant here, Qualcomm and Arm entered into an architecture license agreement or "ALA" in 2013 (the "QC ALA"), which licensed Qualcomm to develop and sell custom-designed

---

[2] An ISA acts as an interface between CPU hardware and software. These instructions describe the high-level attributes of the CPU, such as the supported computer instructions. It consists of a set of a few thousand instructions (for example, "add," "multiply," "load," and "store") and a few hundred registers, which are the places where information can be read, written, or operated upon, by the instructions, which compatible software will recognize.

[3] Compl. ¶ 5, *In the Matter of Nvidia Corp., SoftBank Grp., & Arm, Ltd.*, Docket No. 9404 (FTC filed Dec. 2, 2021) (hereinafter "FTC Complaint").

[4] Stephen Nellis et al., *Nvidia's Arm Deal Sparks Quick Backlash in Chip Industry*, Reuters (Sept. 14, 2020, 1:24 AM), https://www.reuters.com/article/technology/nvidias-arm-deal-sparks-quick-backlash-in-chip-industry-idUSKBN2650GT/.

[5] Tim Bradshaw, *Rene Haas: "Arm Has the Most Ubiquitous Computer Architecture on the Planet"*, Financial Times (June 7, 2024), https://www.ft.com/content/5b191c4c-119f-4f97-bc61-622d20bfa46d (quoting Rene Haas). ARM claims that "[a]bout 99% of premium smartphones are powered by Arm." *Consumer Technologies: Smartphones*, Arm, https://www.arm.com/markets/consumer-technologies/smartphones (last visited Dec. 9, 2024).

[6] *Arm: The Technology Foundation for AI Everywhere*, Arm (Jan. 8, 2024), https://newsroom.arm.com/blog/arm-ai-everywhere.

3

CPUs that are compatible with the Arm ISA but are otherwise the product of Qualcomm's own engineering work.  Qualcomm has also entered into a technology license agreement ("TLA") authorizing Qualcomm to make and sell products, including systems-on-a-chip ("SoCs") that use Arm's ready-made CPU designs.

4.     In recent years, Arm has apparently grown dissatisfied with its longstanding open, neutral business model.  Following its acquisition by SoftBank and the failure of an attempted sale to NVIDIA, Arm is now grasping for any means—fair or foul—of padding its bottom line and stock price.  Eager to cash in on the ubiquity of—and lack of any viable alternatives to—the Arm ISA, and as urged by SoftBank and Son, Arm has begun turning the screws on its customers, substantially increasing the royalty rates it demands to use the Arm ISA.  Nor is Arm content to simply increase the rates it charges architecture licensees like Qualcomm.  Instead, it has sought to capture a greater share of the chips that power devices compatible with the Arm ISA—and thus the greater royalty rates it can obtain by licensing chip designs (or indeed, by selling chips themselves).

5.     Qualcomm now stands as an obstacle to Arm's ambition to raise prices and eliminate alternatives for customers.  Qualcomm has developed innovative products enabled by its custom-designed, high-performance, low-power CPUs, which utilize a novel microarchitecture and related technologies to deliver significant increases in both performance and efficiency.  Those innovative products pose a serious obstacle to Arm's ambition to control more links in the computer-chip value chain.  Unable to compete fairly with Qualcomm, Arm has employed a series of wrongful tactics in an attempt to stifle Qualcomm's technological leaps in CPU design, to force Qualcomm to continue to use Arm's off-the-shelf CPUs, and to coerce Qualcomm into renegotiating the QC ALA, despite it being in effect for years to come, on terms substantially more

4

**A0328**

favorable to Arm—or simply to nullify that agreement. Indeed, Arm's tactics are part and parcel of a broader effort to enable the company to escape its existing ALAs and thereby to ensure that devices compatible with the Arm ISA run on Arm chips.

6.     Some of Arm's maneuvers resulted in a trial that took place last year before this Court. *See Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del.) (hereinafter "*Arm* v. *Qualcomm*"). That case arises primarily from Arm's attempt to use Qualcomm's acquisition of the startup NUVIA Inc. ("NUVIA") as a pretext for escaping the QC ALA. NUVIA was founded by a world-class engineering team that set out to design better chips for use in datacenters. In 2021, Qualcomm acquired NUVIA for $1.4 billion, intending for this team to help drive innovation across Qualcomm's product segments, including in laptops and other personal computers ("compute"), smartphones ("mobile"), and the digital cockpits and driver-assistance systems that are increasingly common in cars and trucks ("automotive"). Arm could have treated that acquisition as an opportunity to grow the use of the Arm ISA in new markets but instead regarded the acquisition as a competitive threat, whose benefits should be eradicated.

7.     *First*, Arm asserted, with no legal or contractual basis, that following Qualcomm's 2021 acquisition of NUVIA, Qualcomm needed Arm's consent to transfer NUVIA's technology to Qualcomm. Arm took the position that this allegedly necessary "transfer" would require Qualcomm to pay hundreds of millions of dollars in "fees" and much higher royalty rates for the duration of the QC ALA. Arm later claimed that, absent agreement to its terms, Qualcomm's use of *any* technology started by NUVIA engineers—including in products that Qualcomm began developing after the NUVIA acquisition, such as the Snapdragon® X-Elite—violated a license agreement between Arm and NUVIA that Qualcomm was not using and that Arm ultimately terminated. This made no sense. Qualcomm has its own license agreements for Arm technology

and information that allowed it to develop and provide custom Arm-compliant cores and products incorporating such cores to its customers (including the Snapdragon® X-Elite and Snapdragon® 8-Elite) for many years to come.  Qualcomm did not need Arm's consent to develop and market this technology.[7]

8.      *Second*, Arm filed the meritless *Arm* v. *Qualcomm* action against Qualcomm, claiming that Qualcomm and NUVIA breached NUVIA's terminated agreements with Arm, despite Qualcomm not even being a party to those agreements, and infringed Arm's trademarks by marketing custom CPUs years after the NUVIA acquisition.  In that action, Arm is demanding that Qualcomm destroy these groundbreaking CPU products that Qualcomm developed after the NUVIA acquisition and in accordance with the Qualcomm/Arm agreements—even though Arm has repeatedly admitted that it suffered no actual harm as a result of the conduct allegedly forming the basis of its claims.[8]

9.      *Third*, Arm and Son promoted the *Arm* v. *Qualcomm* lawsuit to Qualcomm's customers to sow fear, uncertainty, and doubt by suggesting that customers could not rely on Qualcomm as a supplier and could be subject to retaliation by Arm if they did, including by misrepresenting the terms of Qualcomm's licenses with Arm to Qualcomm's customers.[9]  Arm took further action in an attempt to disrupt Qualcomm's business relationships by sending emails to Qualcomm's customers on two separate occasions that misrepresented the terms of the NUVIA

---

[7]   Compl., *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Aug. 31, 2022), D.I. 1.

[8]   *See* Redacted Answer & Defenses to ARM's Compl. & 2d Am. Countercls. ¶¶ 29, 31-37, *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 22, 2024), D.I. 306; Joint Letter re Bench or Jury Trial, *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 25, 2024), D.I. 308; Redacted Mar. 5, 2024 Hr'g Tr. 38:20-39:8, *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 26, 2024), D.I. 312-1.

[9]   Redacted Answer & Defenses to ARM's Compl. & 2d Am. Countercls. ¶¶ 255-70, *Arm* v. *Qualcomm*, D.I. 306.

6

**A0330**

agreements and misleadingly implied that Qualcomm was required to destroy the custom CPUs that it was working on.

10.     Qualcomm was vindicated in the *Arm* v. *Qualcomm* action, in which the jury found that Qualcomm had not breached NUVIA's agreements and that Qualcomm's products were properly licensed under the QC ALA.[10]

11.     This complaint seeks redress for further bad-faith conduct in which Arm has engaged in an attempt to pressure Qualcomm to cave to its demands.  That conduct includes refusing to perform certain of its obligations under the QC ALA and QC TLA and continuing to wrongfully interfere with Qualcomm's relationships with current and prospective customers.

### *Arm Withheld Deliverables in Breach of Its Obligations Under the QC ALA*

12.     Arm deliberately withheld deliverables to which Qualcomm is entitled under the QC ALA with Arm under the guise that the QC ALA does not entitle Qualcomm to support for "Nuvia-based technology."  Arm's excuse is unjustified, and its breach could not be clearer.

13.     Qualcomm first suspected that Arm was withholding QC ALA deliverables in the fall of 2022.  At that point, Qualcomm sent a written notice of failure to deliver, but because certain deliverables were solely within Arm's actual knowledge and control, Qualcomm had no way of knowing what exactly was being withheld, if anything, or for how long it had been withheld.

14.     Arm capitalized on this lack of transparency, with its General Counsel stating definitively that ███████████████████████  Arm further stated that Qualcomm ████ ███████████████████████████████ under its ALA applicable to Nuvia-based technology like the design for which Qualcomm improperly seeks" deliverables.  Here again, Arm

---

[10] Verdict Form, *Arm* v. *Qualcomm*, D.I. 572.

7

was exerting its leverage in an attempt to force Qualcomm to acquiesce in its unwarranted demands.

15.    Arm went on to state that Qualcomm's written notice was a ███████████ to cause Arm ███████████ because ███████████████ was at issue, which Arm purported was ███████████████████████████████

███████████████████████████████████

Additionally, Arm threatened Qualcomm that, if Qualcomm availed itself ███████████ ███████████████████████ Arm would harm Qualcomm, including by terminating Qualcomm's multiple licenses with Arm.

16.    Arm's statement that ███████████████████ was not true, and its purported desire to uphold the "language, spirit, and purpose of the ALA" was a charade. Discovery conducted in *Arm* v. *Qualcomm* revealed incontrovertible evidence that Arm not only had the deliverables in question, but that, at the time Qualcomm sent its written notice of failure to deliver, Arm was intentionally withholding those deliverables from Qualcomm as part of a negotiating tactic related to the parties' dispute over the use of technology acquired from NUVIA.

17.    Arm never cured its failure to deliver, causing Qualcomm to expend additional, unnecessary resources in designing and verifying its products.

18.    Arm's failure to deliver violated the QC ALA, which ███████████████ ███████████████████████████████ under that agreement.  Under the QC ALA, if Arm is found to be in breach of Section ██ of the QC ALA, it must ███████████████████████████████████. If Arm fails ████ ███████████████████████, pursuant to Section ████████

8

██████████████████████████████████████

████████████████████████████

19.     Arm's withholding of deliverables and deliberate decision not to cure the issue ███████████████████████████████ is a material breach of the QC ALA.  Accordingly, Qualcomm is entitled to financial damages, including but not limited to ████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████

### Arm Violated the QC TLA By Refusing to License Qualcomm CPU Cores

20.     Arm failed to uphold its obligations under the QC TLA by refusing to offer licenses to its off-the-shelf cores at commercially reasonable prices to Qualcomm.  Arm's actions are violations of licensing provisions negotiated between the parties.

21.     For example, in April 2024, Qualcomm submitted requests to renew licenses from Arm for off-the-shelf cores Cortex-A720 (codenamed █████) and Cortex-A520 (codenamed █████).  Despite repeated follow-ups over the following several months, Arm refused to provide any licensing offer for either core.

22.     In August 2024, Qualcomm submitted a request to Arm to renew a license to Arm's off-the-shelf core Cortex-M55 (codenamed ██████).  Arm once again refused to provide a licensing offer for the █████ core and continued to refuse to provide a licensing offer for the ██████████ cores.

23.     Given Arm's prolonged refusal to engage, Qualcomm's General Counsel sent Arm a notice of breach of, and non-compliance with, the QC TLA on September 20, 2024.  Qualcomm sent a second notice on September 27, 2024 when Arm failed to provide confirmation of having received the initial letter.

9

24.     Arm waited nearly a month to respond to Qualcomm's notices of non-compliance. In its October 23, 2024 response, Arm's Chief Legal Officer wrote that Arm did not ███████ ███████████████████████████████████████████████ Despite the clear indication that Arm did not intend to proceed ███████████████████████████████ ██████████████████████████████

25.     Arm subsequently provided Qualcomm with a licensing offer for the requested cores and microcontroller.  As Arm must have been aware, its proposal was extreme and clearly not commercially feasible for Qualcomm.  Arm's proposal was a constructive failure to offer a license ███████████████████████████████ Under the terms of the QC TLA, ███ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████

26.     As with the QC ALA, ███████████████████████████████████ ███████████████████████, which Qualcomm sent in September 2024. ████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████

10

27.     Arm's proposal violated the QC TLA by presenting financial terms that were so exorbitant as to be commercially unreasonable and not ███████, and therefore a constructive failure to offer a license.  It also greatly exceeded ████████████████████████████

████████████████████████████████████████████████████████.

Furthermore, Arm's proposal failed to comply with the QC TLA by ████████████████████

████████████████████████████████████.

28.     Arm has refused to offer commercially reasonable terms for any of the requested cores, and has thereby failed to cure its breach of the QC TLA.

### Arm Threatened to Terminate the QC ALA Without Basis

29.     Apparently seeking to ratchet up pressure on Qualcomm before trial in *Arm* v. *Qualcomm*, on October 22, 2024, Arm sent Qualcomm—and leaked to the media—a letter (the "Breach Letter") asserting that Qualcomm is in material breach of the QC ALA for allegedly developing and marketing "unlicensed cores," and claiming that Arm will be entitled to terminate the QC ALA if Qualcomm does not capitulate to Arm's demands for a "cure" within 60 days. Those demands, which had no basis in the agreement, included that Qualcomm should "at a minimum" stop development of any CPUs that use any designs, technology, or code created by NUVIA employees; cease requesting ████████████████████████ for any such CPUs; cease manufacturing and selling such CPUs; and cease manufacturing or selling CPUs that Arm has refused to validate and verify.  The Breach Letter also demanded, without support in the QC ALA or the law, that Qualcomm withdraw its claims against Arm in this case for Arm's breach of its delivery obligations under Section ██.

30.     Arm's assertion that Qualcomm was in material breach of the QC ALA lacked any basis in that agreement.  The premise of Arm's Breach Letter was that certain Qualcomm CPU cores allegedly contain aspects of designs that were started by NUVIA employees.  But the QC

11

ALA does not prohibit Qualcomm from acquiring nascent microarchitecture technology and using that technology to develop Qualcomm CPUs. And it certainly does not permit Arm to terminate the QC ALA as payback for Qualcomm's suing to protect its rights under that agreement. Because Qualcomm has not committed a "█████████████████████████████████████████" Arm has no right to terminate the QC ALA, and any purported termination of that agreement is null and void.

31.    Moreover, Arm's claim of a material breach was inconsistent with Arm's own conduct throughout this dispute. Arm has known since at least 2021 that Qualcomm would be acquiring NUVIA and using the technology that Arm now belatedly claims was improperly licensed. Yet for three years, Arm took no steps towards attempting to terminate the QC ALA and stood by while Qualcomm, through significant investments of time and money, developed and brought to market innovative products featuring Qualcomm's custom CPUs. Arm's belated threat to terminate the QC ALA on the eve of trial and while Qualcomm was announcing new products based on its high-performance custom CPUs demonstrates that Arm's claim of a material breach was a pretext to justify Arm's true aim: escaping the QC ALA and other ALAs so Arm can attempt to dominate the market free from competition from Qualcomm and other designers of custom CPUs.

### *Arm Continues to Wrongfully Attempt to Injure Qualcomm's Business*

32.    Arm's Breach Letter was the latest installment of Arm's longstanding efforts to undermine Qualcomm's market position and to interfere with Qualcomm's relationships with current and prospective customers.

33.    The Breach Letter was not only legally groundless, but also timed and publicly released in an effort to damage Qualcomm's business. Arm sent the Breach Letter to coincide with Qualcomm's annual Snapdragon® Summit, where Qualcomm unveiled an SoC that offers

12

**A0336**

greater CPU performance and efficiency than those offered by Qualcomm's competitors, including those competitors that use Arm off-the-shelf products in their SoCs.  To ensure that the Breach Letter reached Qualcomm's customers, Arm also promptly leaked it to Bloomberg, which published a story on the threatened termination that very day.[11]  Arm did so knowing that Qualcomm's customers would likely be concerned that termination of the QC ALA could destabilize their own supply chains, because Arm's actions implied, despite the actual terms of the QC ALA, that Arm could and would impede Qualcomm's ability to deliver the SoCs its customers ordered, and that Qualcomm's customers might even face intellectual-property litigation brought by Arm.  Both the timing and the disclosure of the Breach Letter were thus calculated to interfere with Qualcomm's customer relationships and prospective business opportunities.

34.     The Breach Letter was also timed to interfere with *Arm* v. *Qualcomm*.  In the Breach Letter, Arm threatens that it "shall be entitled" to terminate the QC ALA on December 21, 2024—the day after trial in *Arm* v. *Qualcomm* was expected to conclude.  Arm's counsel's statements to this Court that termination would not be "automatic" after 60 days, that he "hope[d] that there are discussions between the parties," and that the Breach Letter could prompt the parties to "evaluat[e] their positions" underscore that Arm sent the Breach Letter to pressure Qualcomm to accede to Arm's unjustified demands.[12]  Arm's wrongful tactics have harmed Qualcomm.  Following Arm's bad-faith claim that Qualcomm has breached the QC ALA and leak of the Breach Letter, important Qualcomm customers delayed entering into new (or renewing existing) contracts with Qualcomm or have insisted that Qualcomm provide them with additional commitments regarding its ability to

---

[11]  Ian King, *Arm to Cancel Qualcomm Chip Design License in Feud Escalation*, Bloomberg (Oct. 22, 2024, 8:17 PM), https://www.bloomberg.com/news/articles/2024-10-23/arm-to-cancel-qualcomm-chip-design-license-in-escalation-of-feud.

[12]  Oct. 30, 2024, Hr'g Tr. 39:14-40:2, *Arm Ltd. v. Qualcomm, Inc.*, C.A. No. 22-1146 (D. Del. Nov. 7, 2024), D.I. 513.

13

**A0337**

deliver licensed products.  Arm's campaign not only deprived Qualcomm of the ability to finalize these business opportunities promptly and without providing additional commitments, but also required Qualcomm executives and employees to spend considerable time responding to and alleviating customer inquiries.  None of those demands would have existed but for Arm's wrongful conduct.

35.    At trial in the *Arm* v. *Qualcomm* case, Arm continued to misrepresent its relationship with Qualcomm and its position in the marketplace.  Arm's Chief Executive Officer, Rene Haas, repeatedly stated that Arm did not view Qualcomm as a competitor because Arm did not build or sell semiconductor chips in the marketplace, which Mr. Haas stated would amount to direct competition between the companies.  Despite Mr. Haas' sworn statements denying Arm's involvement in chip development, Arm is now in the process of designing and distributing its own semiconductor chips.[13]  Moreover, Arm "sought to hire executives from its customers as early as November," several weeks before Mr. Haas' sworn testimony in court.[14]  Specifically, Arm's recruiter told the customer executive that this new position will help with Arm's "transformation from solely designing processor architecture (IP) to also selling its own silicon."[15]  To facilitate its entry into selling its own chips, Arm now seeks to force Qualcomm—which would otherwise be a competitor—out from the marketplace.

36.    Following Qualcomm's victory at trial in *Arm* v. *Qualcomm*, on January 8, 2025,

████████████████████████████████████████████████

---

[13] *Arm recruits from customer as it plans to sell its own chips*, Stephen Nellis and Max Cherney, REUTERS,    https://www.reuters.com/technology/arm-recruits-customers-it-plans-sell-its-own-chips-2025-02-13/ (Feb. 13, 2025).

[14] *Id*.

[15] *Id*.

14

██████████████████████████████████████████████████████████

But even then, Arm confirmed that it was not abandoning its efforts to obstruct Qualcomm's developments of custom cores, insisting that ████████████████████████████ ████████████████████████████████████ Moreover, Arm sought to prevent Qualcomm from curing the impression created in the market by its deliberate leak of the Breach Letter, ██████████████████████████████████████████ ████████████████████████████

37.    Arm's non-compliance with its contractual obligations to Qualcomm should be seen for what it is: the latest in a series of anti-competitive maneuvers intended to force Qualcomm to renegotiate an existing, long-term license agreement that Arm's current management views as disadvantageous, and to frustrate Qualcomm's efforts to design and deliver industry-leading technology.  Arm's tactics—its refusal to provide technology it is contractually obligated to deliver and its attempts to undermine customers' confidence in Qualcomm—should be wholly rejected.

## THE PARTIES

38.    Plaintiff Qualcomm Incorporated is a Delaware corporation with its principal place of business in San Diego, California.  Qualcomm is a leading technology innovator in mobile communication products and the driving force behind the development, launch, and expansion of 5G technology.  Qualcomm's foundational technologies enable the mobile ecosystem and are found in every 3G, 4G, and 5G smartphone.  Qualcomm brings the benefits of mobile to new industries, including automotive, IoT, and computing, where Qualcomm's technology has driven the convergence of PC and mobile technology to increase productivity, connectivity, and security in portable laptops.

39.    Plaintiff Qualcomm Technologies, Inc. is a Delaware corporation with its principal place of business in San Diego, California.  Qualcomm Technologies is a wholly owned subsidiary

15

of Qualcomm Incorporated and operates, along with its subsidiaries, substantially all of Qualcomm's engineering and research and development functions, and substantially all of its products and services businesses, including its QCT semiconductor business.

40.    Defendant Arm Holdings PLC is a U.K. corporation headquartered in Cambridge, United Kingdom.

## JURISDICTION AND VENUE

41.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

42.    Venue is proper in the District of Delaware under 28 U.S.C. § 1391(c)(3) because Arm is "a defendant not resident in the United States" and therefore can be "sued in any judicial district."  Arm has also consented to and availed itself of the District of Delaware by suing Qualcomm in the District of Delaware.[16]

## FACTUAL ALLEGATIONS

### I.    ARM LICENSES AND THE CUSTOM CPU MARKET

43.    Arm is in the business of developing and licensing technology for processors used in a variety of different products, including, but not limited to, servers, mobile phones, and cars. Arm's licensing model has been based on receiving both upfront license fees and royalties, the amounts of which are negotiated with each licensee.  For many years, Arm has offered different types of license contracts, of which two are at issue in this case: ALAs and TLAs.

---

[16]    *See generally* Compl., *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Aug. 31, 2022), D.I. 1.

A0340

## A.    ALAs and the Arm ISA

44.    An ALA grants licensees the right under Arm's intellectual property to design their own custom Architecture Compliant Cores using specific licensed ISA technology and to manufacture, sell, and distribute Arm Compliant Products incorporating such cores.[17]

45.    CPU cores (also known simply as cores) are a particular component of SoCs, which are integrated circuits used in cellular phones, computers, and other devices that combine several technologies used in such products into a single chip.  A core or CPU performs processing within the SoC.

46.    An Arm Compliant Core is compatible with the Arm ISA.  As a general matter, an ISA lists the instructions that allow hardware (like SoCs) to interface with software programs. Application and software developers create their products to be compatible with particular ISAs. As a result of greater investment in Arm-based systems by hardware companies like Qualcomm and software developers, the Arm ISA is now "ubiquitous" and used in practically every premium smartphone, as well as a large percentage of automobiles and IoT devices and a growing number of personal computers and datacenter servers.

47.    The Arm ISA allows for software compatibility across all Arm-compatible products, as those products can receive the same inputs (instructions) and, for each of those inputs, determine and output the proper result.  The Arm ISA does not tell a designer how to design or build a CPU core, nor any of the internal design features that deliver superior performance and make a CPU competitive.

---

[17] ███████████████████████████████

17

48.     To make a CPU that then can execute the Arm ISA and therefore run applications and other software that have been written to be compatible with that ISA, the CPU developer must design and build a complicated integrated circuit consisting of billions of transistors connected into arrays that form larger, interconnected blocks.  Building a CPU requires detailed micro-architectural know-how and expertise in multiple disciplines unrelated to the ISA, and requires expertise in cache design, branch prediction techniques, prefetchers, memory coherency/consistency paradigms, dependency resolution logic, schedulers, power delivery, power measurement and management, clocking methodology, and many other areas.

49.     A CPU developer developing a custom CPU designs *how* the core is built, *how* it performs, and *how* it executes the CPU's instructions.  There are a virtually infinite number of ways to design and build CPUs that can implement the Arm ISA.  Companies that design custom CPUs employ armies of engineers who make countless design choices and tradeoffs to improve the size, computing performance, power consumption, heat dissipation, and other important features of CPUs.  Many of these design choices are driven by the requirements of the product segment the designer is targeting—CPUs for mobile applications can have different design priorities than those for laptop computers or automobiles.

50.     Under an ALA, Arm does not deliver any specific Arm design or tell the licensee how to make the CPU.  That technological development and innovation—and the resulting product that may meet or fail the performance benchmarks necessary to succeed in the marketplace—is left to the licensee.  As Arm has publicly acknowledged, "the creation of an optimized CPU is very costly and time consuming," and Arm therefore "expect[s] the number of new [ALA] licensees for this technology to diminish over time as the effort required on their part to provide the

18

customization often does not provide a reasonable return on investment."[18]   If the licensee is willing to put in the extraordinary effort and investment to develop a custom CPU, however, an ALA licensee may develop differentiated CPUs, including differentiation from CPUs developed and marketed by Arm.  Arm has executed ALAs with Qualcomm and a number of other companies.

### B.    TLAs and Off-the-Shelf CPUs

51.    In addition to granting licensees rights under ALAs to make custom-designed products that are compatible with the Arm ISA, Arm also designs "off-the-shelf" CPUs and other peripheral intellectual property ("IP") that customers may license through a TLA.  Under a TLA, Arm delivers complete processor core designs that a licensee can incorporate into a larger SoC design, saving the licensee the trouble and expense of designing its own CPU.  In addition to CPUs, Arm also designs, and licenses under the TLA, peripheral IP, which is technology used in SoCs to perform specific functions and interface with the CPU.  This peripheral IP takes a variety of forms, such as "interconnects" that facilitate the transfer of information between different components of an SoC or various pieces of software that are incorporated into a semiconductor chip as a means of certifying safety capabilities of the chip.  Recently, Arm has placed greater emphasis on licensing off-the-shelf CPU technology, including by launching a "Compute Subsystems" business that offers integrated designs that pair CPUs with other technology—all in exchange for "significantly higher royalty rates" than Arm receives for licensing its ISA.[19]

52.    But reliance on Arm's off-the-shelf CPU designs comes at a cost, both financially and with regard to performance.  Reflecting that the TLA license delivers a complete, ready-made design, Arm charges substantially higher royalties for the use of its off-the-shelf cores than it

---

[18]    Arm Holdings, Ltd., Registration Statement (Form F-1) (Aug. 21, 2023) at 86, 131.

[19]    *Id.*

19

charges for a license to the Arm ISA.  Moreover, when an SoC developer uses stock Arm CPU designs, it may have difficulty differentiating its product from those offered by rivals that also license Arm CPU designs.  And when Arm fails to keep up with the state of the art in CPU design and performance, as it has in recent years, any licensor of Arm's off-the-shelf cores may have difficulty building and marketing SoCs that can compete against those with more advanced custom CPUs.

## II.   QUALCOMM'S RELATIONSHIP WITH ARM AND CUSTOM CPU INNOVATIONS

53.   Founded in 1985, Qualcomm was created with the goal of building "QUALity COMMunications."  Qualcomm is a world leader in the design and production of semiconductor microchips, including SoCs.  Qualcomm's chips power cellphones, computers, and an increasing number of other modern machines.  Qualcomm is also in the vanguard of new chip technologies, and the company's current "5G" technology is ushering in a new age of connectivity and speed for wireless devices.

54.   Qualcomm continues to invent foundational technologies that transform how the world connects, computes, and communicates.  In addition to its ground-breaking innovations in wireless technology, Qualcomm designs platforms, chipsets, software, tools, and services that help Original Equipment Manufacturers ("OEMs") and developers bring those technologies into products that change the way we live, including industry-leading smartphones with powerful functionality, laptops with built-in cellular and 5G connectivity and long-lasting battery life, and connectivity, infotainment, and Advanced Driver Assistance Systems products for the automotive industry designed to deliver connected experiences that are safer and customizable.  Included among these products are custom CPUs and SoCs used in many different end technologies, including cell phones, cars, laptops, and tablets.

A.      **Qualcomm Builds Innovative Arm-Compatible Products.**

55.      Qualcomm has held Arm licenses since 1997. Those licenses include an ALA entered in 2003, and the currently operative QC ALA, ███████████, which Qualcomm[20] and Arm entered into on May 30, 2013, and Annex 1 to that agreement for Arm v8-A Architecture deliverables. On June 23, 2020, Qualcomm and Arm entered into an additional Annex 1 to the QC ALA for Arm v9-A Architecture deliverables.

56.      Under the QC ALA and corresponding Annex 1s, Qualcomm has rights, using specific licensed technology, to design, manufacture, sell, and distribute Qualcomm's v8-A and v9 Arm-compatible custom cores, custom Arm ISA-compatible CPU cores, and products incorporating those cores. ██████████████████████████████████ ███████████████████████████████ Since Qualcomm entered into the QC ALA, Qualcomm has developed and shipped custom Arm ISA-compatible CPUs.

57.      Qualcomm is today one of Arm's largest licensees—it "accounted for 10% of [Arm's] total revenue for [Arm's] fiscal year ended March 31, 2024."[21] Since 2013, Qualcomm has paid Arm total license fees of ██████ and running royalties of ███████████ under the QC ALA. Qualcomm has fully complied with its obligations under the QC ALA and has continued to tender royalty payments to Arm (under protest) pending resolution of this dispute.

58.      In recent years, as Arm's off-the-shelf implementation cores have fallen behind custom cores developed by other Arm ALA licensees, it has become more challenging for

---

[20]  The actual party to the ALA and TLA ██████████████████ The terms of the agreements ████████████████████████ ██████████████████████████████

[21]  ARM Holdings plc, Annual Report for Fiscal Year Ended Mar. 31, 2024 (Form 20-F) at 28 (Aug. 12, 2024).

21

**A0345**

Qualcomm to compete by relying on Arm-designed cores.  In particular, Arm has been unable to provide an implementation core that is competitive in the compute product segment; thus, the need for developing custom CPUs became more critical.

59. In March 2021, Qualcomm acquired NUVIA, a start-up focused on developing a custom CPU and SoC specifically for use in datacenter servers.  At the time of the acquisition, NUVIA had built a team of world-class engineers with unparalleled experience in developing custom CPUs.  Qualcomm's goal was to transition the new Qualcomm employees to develop custom CPUs for its primary compute, mobile, and automotive product segments.  Qualcomm also planned to continue development of the server CPU and SoC for use in data centers and servers that NUVIA had originally intended to design.

60. Since acquiring NUVIA and integrating the NUVIA team as Qualcomm employees, Qualcomm spent years developing innovative products with custom-designed CPUs using a novel microarchitecture and related technologies.

61. Qualcomm's SoCs with custom CPUs compete more effectively against other Arm-compatible products, including those containing off-the-shelf Arm designs, and against rival suppliers of CPUs compatible with other ISAs (notably, Intel's x86).  Qualcomm's new products with custom CPUs have drawn praise as being "incredibly potent"[22] and "shockingly fast."[23]

62. Qualcomm is not alone in its belief that its custom cores offerings will transform and advance the industry.  Major industry participants—including Microsoft, Google, Samsung,

---

[22] Aaron Klotz, *Snapdragon X Elite Beats AMD and Intel Flagship Mobile CPUs in Geekbench 6*, Tom's Hardware (Apr. 2, 2024), https://www.tomshardware.com/pc-components/cpus/snapdragon-x-elite-beats-amd-and-intel-flagship-mobile-cpus-in-geekbench-6-qualcomms-new-laptop-chip-leads-in-single-and-multi-core-tests.

[23] Mark Hachman, *Qualcomm's Snapdragon X Elite Chip Attracts Unprecedented PC Partnerships*, PCWorld (Oct. 25, 2023), https://www.pcworld.com/article/2116395/qualcomms-latest-snapdragon-attracts-huge-pc-partnerships.html.

22

GM, HP, and many others—praised Qualcomm's planned innovations as benefitting their products and end-customers.[24]

**B.      Relevant Provisions of the Qualcomm ALA**

63.      On May 30, 2013, Qualcomm and Arm entered into an Amended and Restated Architecture License Agreement, ███████████, and Annex 1 to that agreement.  The QC ALA is a binding and enforceable agreement.

64.      ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

65.      ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

66.      ████████████████████████████████████

████████████████████████████████████████

---

[24]   *See Qualcomm to Acquire NUVIA*, Qualcomm Inc. (Jan. 12, 2021), https://www.qualcomm.com/news/releases/2021/01/qualcomm-acquire-nuvia.

A0347



67.

## C.    Arm's Evolving Business Model

68.    For years, Arm expressed its commitment to an open, neutral model for licensing the use of its ISA.  Under that model, which led to Arm commonly being referred to as the "Switzerland of chips," Arm held itself out as not discriminating against companies that sought to use the Arm ISA.[27]  That model benefited the software developers, which could develop software

---

[25]                          and                                        are defined terms in the QC ALA.
*See*

[26]                                        is a defined term in the QC ALA.

[27]    FTC Compl. ¶¶ 22-29; *see also* Josh Horwitz, *Relief and Challenges for Chipmakers as Nvidia-Arm    Megadeal    Collapses*,    Reuters    (Feb.    8,    2022,    8:21    AM), https://www.reuters.com/markets/us/relief-challenges-chipmakers-nvidia-arm-megadeal-collapses-2022-02-08/ (quoting Arm co-founder Hermann Hauser as stating that "[t]he whole point

24

that would be interoperable across Arm-compatible devices, and ultimately benefited customers. Indeed, Arm continues to tout the benefits of its "broad, standardized software ecosystem," which it claims "ensures diversity and robustness in supply, as well as easy software portability between Arm-based systems."[28]  That model also benefited Arm, leading to widespread adoption of the ISA.  As a senior Arm executive has explained, "[w]hat makes an architecture successful is actually the number of people that use it," as greater adoption of an ISA creates a "virtuous circle" in which the "more people that use your architecture, the more people will want to use it."[29]

69.    After being acquired by SoftBank, however, Arm has pivoted away from that model.  When the chipmaker NVIDIA attempted to acquire Arm in 2020, the proposed acquisition met with harsh responses from regulators and other companies that rely on the Arm ISA, based on fears that NVIDIA could use its control of Arm to undermine its rivals, "including by manipulating levers such as [Arm]'s pricing, the terms and timing of access to [Arm]'s Processor Technology, … [Arm]'s technological developments and features, and [Arm]'s provision of service and support."[30]

70.    When that acquisition fell apart under regulatory scrutiny, Arm pursued a variety of strategies to try to bolster royalty revenues at SoftBank's and Son's behest, including unsuccessful attempts to impose a pricing model under which customers would pay royalties based on a percentage of the retail prices of the end products they made, and to force a major customer

about Arm was always that it was the Switzerland of the semiconductor industry, dealing very even-handedly with all of its 500-plus licensees").

[28] *The Arm Advantage: Choosing Arm Technology*, Arm.com, https://www.arm.com/company/arm-advantage (last visited Dec. 9, 2024).

[29] Arm, *What Is CPU Architecture?*, YouTube.com (Aug. 18, 2021), https://www.youtube.com/watch?v=KGHdDVLnKJM&t=144s.

[30] FTC Compl. ¶ 8.

25

to renegotiate royalty rates notwithstanding the parties' existing contract.[31]  After releasing a new version of its ISA (v9) that makes only modest, incremental improvements on the prior version (v8), Arm has announced that it will collect double the royalties, and Arm has pressured existing v8 licensees to "upgrade" their licenses to v9 by not releasing or supporting older v8 cores.[32] Indeed, in its calls with investors, Arm routinely touts the increased revenues it expects to collect as a result of widespread adoption of v9.Arm has also attempted to bolster its income—and thus its valuation—by abandoning its historic role of neutral and open licensing of its ISA.  Having made that ISA "ubiquitous" for the entire smartphone and IoT markets and made significant inroads in other sectors, Arm now seeks to leverage that ubiquity to exclude competitors from designing and selling chips that are compatible with the Arm ISA.  Mr. Haas has hinted at precisely that sort of leveraging, explaining that as the company "defining a computer architecture and … building the future of computing," it is "easier" to understand the best ways to integrate hardware and software "if you're building something than if you're licensing IP" because "building something" makes a company "much closer to that interlock" and gives it "much better perspective in terms of the design tradeoffs to make," which is why "if we were to do something, that would be one of the reasons."[33]  Moreover, Arm has also sought to develop more complex, integrated "subsystems" that combine CPUs with other chips and intellectual property.[34]  And it was recently

---

[31]  Wayne Ma & Cory Weinberg, *How a Lopsided Apple Deal Got Under Arm's Skin*, The Information (Nov. 29, 2023), https://www.theinformation.com/articles/how-a-lopsided-apple-deal-got-under-arms-skin.

[32]  *Q3 FYE24 Results Presentation* at 5, Arm (Feb. 7, 2024), https://investors.arm.com/static-files/c383780b-44f8-42c0-a125-4f6db0b8eb06 (statement of Rene Haas).

[33]  Alex Health, *What Arm's CEO Makes of the Intel Debacle*, The Verge (Dec. 6, 2024, 4:45 PM), https://www.theverge.com/2024/12/6/24315123/arm-ceo-rene-haas-intel-ai-chips-samsung-changes.

[34]  *Client Solutions: Arm Compute Subsystems (CSS) for Client*, Arm, https://www.arm.com/products/compute-subsystems-for-client (last visited Dec. 9, 2024).

26

reported that, in a "radical change to [Arm's] business model," Arm was planning to launch its own chip by as early as this summer.[35]  This transformation from licensing intellectual property to positioning itself primarily as a chip designer creates the potential for Arm to make substantially more money:  These businesses "carry significantly higher royalty rates"[36] than merely licensing use of the Arm ISA.

71.     But this transformation also brings Arm into direct conflict with existing licensees and customers.  When an architecture licensee like Qualcomm designs a custom Arm ISA-compatible CPU, that CPU does not belong to Arm.  Instead, as Arm has publicly acknowledged, those custom CPUs "compete with" and "pose a threat to Arm's implementation IP business"—that is, Arm's effort to position itself as a designer of CPUs.[37]

72.     Arm has thus responded by pressuring customers (such as Qualcomm) to purchase Arm's off-the-shelf CPUs and by attempting to prevent Qualcomm from designing CPUs compatible with the Arm ISA.

## III. ARM UNFAIRLY AND UNLAWFULLY ATTEMPTS TO PREVENT QUALCOMM'S CUSTOM CORES FROM COMPETING WITH ARM'S OWN OFF-THE-SHELF CORES

73.     Developing its own CPUs frees Qualcomm of the need to rely on Arm's off-the-shelf CPU designs.  That can both reduce the royalty rates Qualcomm pays Arm— ███████

---

[35]  Matthew Garrahan et al., *Arm To Launch Its Own Chip in Move That Could Upend Semiconductor Industries*, Financial Times (Feb. 13, 2025), https://www.ft.com/content/95367b2b-2aa7-4a06-bdd3-0463c9bad008 .  According to the report, the chip is "expected to be a [CPU] for servers in large data centres and is built on a base that can then be customized for clients."

[36]  *Arm First Quarter Fiscal Year 2025* at 5, Arm (July 31, 2024), https://investors.arm.com/static-files/393afe3f-13ff-4aa8-a4b3-41b1afaa5a91 (statement of Rene Haas).

[37]  Initial Phase 2 Submission, Anticipated Acquisition by NVIDIA Corp. of ARM Ltd., U.K. Competition & Markets Authority (Dec. 20, 2021) at 6-7.

██████████████████████████████████████—and demonstrate that products using Qualcomm custom CPUs can outcompete products using Arm's off-the-shelf designs. Instead of lauding the advancements on the horizon or viewing the competition as inspiration to develop an even better product for customers and opening new product segments for chips compatible with Arm's ISA, Arm has dug its heels in and endeavored to disrupt Qualcomm's custom cores development by any means necessary—unlawful means included.

**A.    Arm Wrongfully Withholds Deliverables Owed to Qualcomm Under the QC ALA.**

74.    In an effort to limit competition posed by Qualcomm's custom CPU, Arm breached its contractual obligations to provide Qualcomm with deliverables paid for under the QC ALA.

*1.    The QC ALA requires Arm to provide Qualcomm with certain deliverables.*

75.    The two contract provisions at issue here—Sections ██ and ██—are clear and unambiguous.

76.    Section ██ of the QC ALA requires Arm to ████████████████████████ ████████████████████████████████████████████████████ and to ████████████████████████████████████████████ ████████████████████ Arm is also required to deliver ████████████████ ████████████████████████████████████ is defined in the Qualcomm ALA as ████████████████████████████████████ ████████████████████████████████ under that agreement.

77.    Under Section ██ of the QC ALA, ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████



28



### 2. Arm withholds the deliverables.

78. Qualcomm first suspected that Arm was withholding ███████████ under the QC ALA in the fall of 2022. At that time, Qualcomm was embarking on its verification process for its ████ SoC. As is the customary practice between an ALA licensee and Arm, Qualcomm provided Arm with details about its ████ CPU so that Arm would provide a formal list of agreed Arm Compliance Kit ("ACK") tests for which Arm would expect to see verification data. But Arm withheld the formal list of tests (known as the "OOB") ████████████████

████████████████████████████████████████

███████

79. Qualcomm then attempted to resolve the issue without court intervention.

80. On October 6, 2022, Qualcomm requested the OOB and various patches (e.g., bug fixes) from Arm. Arm engineer Vivek Agrawal responded on October 10, 2022, writing, "I'll be able to share OOB and various patches after my management has given their approval."

### 3. Qualcomm provides written notice of Arm's failure to deliver—but Arm does not cure.

81. Almost one month later and after still not having received the deliverables under the QC ALA and for which Qualcomm had provided substantial consideration, on November 3, 2022, Qualcomm notified Arm in writing of its failure to provide certain deliverables, including the OOB, stating explicitly that Arm should take the letter as "Qualcomm's required notice under Section ██ that Arm is not in compliance with its obligations under Section █, and that Arm must cure this breach in accordance with the time and procedures set forth therein."

29

82.    After not hearing from Arm, pursuant to Section ▮ of the QC ALA, Qualcomm sent a follow-up letter on December 5, 2022.  The letter was Qualcomm's "second written notice of non-compliance ████████████████████████████████████████████████████." The letter stated that "ARM must ████████████████████████████████████ set forth" in the QC ALA "or ████████████████████████████████████."

83.    Pursuant to Section ▮ of the QC ALA, Arm ███████████ to remedy its failure to provide the deliverable. ██████████ passed without Arm remedying the issue.

84.    Arm responded on December 6, 2022.

85.    In its response, Arm disagreed that Section ▮ was at issue "or that provision of the OOB implicates Section ▮."  Arm additionally asserted that the ACK deliverables are governed by Section ▮ of the QC ALA, not Section ▮, and that remedies for a breach of that section do not include ████████████████████████████.

86.    Notably, Arm additionally claimed that ████████████████████████████████ stating explicitly that Arm ████████████████████████████████████████ ████████████████████████████████ As to the OOB specifically, Arm claimed that ▮ ████████████████████████████████████████████████ ██████████.

87.    Arm was definitive in its assertions, stating that "[n]o additional delivery is required," and "[n]o breach of Section ▮ has occurred."  Qualcomm was unable to verify this assertion because the "patches" are created by Arm and provided solely by Arm.  Accordingly, Qualcomm has no way of knowing definitively whether Arm has released patches for verification until they are delivered (or until someone from Arm tells Qualcomm they are available, which did not occur in this case).

30

88.     Arm's letter further stated that Qualcomm "does not have ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ rights under its ALA applicable to Nuvia-based technology like the design for which Qualcomm improperly seeks" deliverables.  Arm additionally threatened Qualcomm that if it did not drop its invocation of Section ▮, Arm would take steps that would harm Qualcomm.  Arm claimed that Qualcomm's invocation of Section ▮ was "a new, material breach of the Qualcomm ALA" and that, to the extent Qualcomm exercised ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Arm would "not hesitate to terminate" Qualcomm's licenses.  Arm further stated that Qualcomm's letter was a "malicious effort" to cause Arm "economic duress," which Arm purported was "inconsistent with the language, spirit, and purpose of the ALA and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."

### 4.     *Discovery reveals that Arm deliberately withheld the deliverables.*

89.     But more than a year later, Qualcomm discovered that Arm's December 6, 2022, letter misrepresented the facts and concealed Arm's strategy of deliberately withholding the OOB and other deliverables to which Qualcomm was entitled, seemingly in an effort to create commercial leverage and cause Qualcomm duress.

90.     "On November 2, 2023[,] [] Arm produced a document [in related litigation] describing how Arm intentionally withheld from Qualcomm formal lists of agreed verification ('ACK') tests known as the 'OOB.'"  In response to Qualcomm's requests for production, Arm produced an October 2022 email chain in which Richard Grisenthwaite, Arm's Executive Vice President and Chief Architect, explicitly instructed others at Arm not to provide Qualcomm with the OOB and other deliverables connected to the verification suite.  In the email, Mr. Grisenthwaite stated "if [Qualcomm] complain[s] just say that I am reviewing it with our legal counsel."[38]

---

[38]  On March 5, 2024, Judge Hatcher held a hearing on Qualcomm's motion to amend its counterclaims to include Arm's breach of Section ▮ of the QC ALA.  These allegations and

31

91.    In addition, "[o]n December 12, 2023, Arm engineer Vivek Agrawal testified at deposition that Arm had withheld from Qualcomm certain ACK 'patches.'"  Mr. Agrawal's testimony and documents made clear that Arm concealed whether it was, in fact, adhering to its contractual obligations by providing some deliverables and support but not providing others (including the OOB and the patches).  Arm's multi-tiered deception was successful for more than a year.  "[I]t was not until Mr. Agrawal's deposition that Qualcomm was able to confirm whether the aforementioned patches even existed, let alone that they were improperly withheld in violation of Section ███ of the Qualcomm ALA."[39]

92.    The applicable Annex 1 to the QC ALA includes ████████████ ██████████████████████████████████████████ ███████████████████████

93.    Accordingly, when it was revealed through document and deposition testimony that, contrary to Arm's December 6, 2022, letter, Arm had deliberately withheld the ACK deliverables to which Qualcomm was entitled, it became clear that Arm breached its obligations under Section ████████████.

---

quotations are taken from the redacted and publicly available transcript of that hearing and the Court's subsequent order.  Redacted Mar. 5, 2024 Hr'g Tr., *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 26, 2024), D.I. 312-1; Redacted Mar. 6 Order, Ex. A. to Pl.'s Ltr. to Hon. Laura D. Hatcher Regarding Redactions to the Mar. 6, 2024 Mem. Order, *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 20, 2024), D.I. 303 at ECF p.5.  Notably, at that hearing, Arm advocated against adding this claim to the case in which this discovery was produced; and instead, Arm advocated for Qualcomm to bring a separate lawsuit.  Redacted Mar. 5, 2024 Hr'g Tr. 39:13-20, *Arm* v. *Qualcomm*, D.I. 312-1.

[39]   Redacted Mar. 6 Order at 4, *Arm* v. *Qualcomm*, D.I. 303; *see also* Redacted Mar. 5, 2024 Hr'g Tr. 17:18-19:9, *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 26, 2024), D.I. 312-1 (discussing chart Agrawal used to "clear up his own confusion and make sure there was alignment internally" on what was being withheld from Qualcomm and what was not being withheld; the "top half of the chart [listed] things that sa[id] 'continue support as earlier,'" and "things on the bottom of the chart, which include[d] the OOB and also the patches, sa[id] 'no support unless legal approves.'").

32

94.     Arm's Chief Legal Officer concealed the facts, explicitly (and definitively) stating in Arm's December 6, 2022, letter that it had provided Qualcomm with ███ to the ACK and that ███████████████████ Qualcomm did not have a valid basis to dispute that factual representation without discovery.

### 5.     *Arm's breach of the QC ALA has harmed Qualcomm.*

95.     To date, Arm still has not provided the OOB and relevant patches to which Qualcomm is entitled, and Arm's failure to do so increased Qualcomm's burden in verification.

96.     By failing to deliver the OOB, Arm forced Qualcomm to expend extra time and resources to run ACK tests to verify that its products are compliant with the Arm ISA, even in the absence of the OOB deliverables, which Qualcomm paid for and was entitled to receive under the QC ALA.

97.     Similarly, by failing to deliver the patches, Arm forced Qualcomm to use its own engineers to address issues that would have been addressed by Arm's patches, which Qualcomm paid for and was entitled to receive under the QC ALA.  Qualcomm was damaged as a result.

98.     ███████████████████████

99.     Pursuant to Section ███ of the QC ALA:



100.    Accordingly, █████████████████████

████████████████████████████

████████████████████████████

33

██████████████████████████████████████████████████████

████████████████████████████████

101.    In addition, because ████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

**B.    Arm Fails to Provide Qualcomm With ████████ Licensing Proposals in Violation of the QC TLA.**

102.    Arm has not only attempted to disrupt Qualcomm's development of custom CPUs but also attempted to interfere with Qualcomm's development of products containing off-the-shelf Arm cores by intentionally failing to provide commercially reasonable, and therefore ████████, licensing proposals to Qualcomm ████████████████████. In addition to the below, Qualcomm expects discovery to show that Arm ████████████████████████████ ████ in its licensing negotiations involving peripheral TLA IP.

*1.    The QC TLA requires Arm to ████████ ████████████████████*

103.    The QC TLA contains ████████████████████████

██████████████████████████████████████████████████████

34

A0358

104.    Section ███ sets forth a series of requirements that Arm must follow for each of its off-the-shelf cores. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

105.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████

106.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ Arm has never provided Qualcomm with written notice that ████████

████████████████████████████████████

107.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

35



**108.** ███████████████████████████████

### 2. *Arm fails to respond to Qualcomm's licensing requests.*

109. As part of its product development cycle, Qualcomm monitors the terms of licensing agreements to determine whether renewals or extensions of third-party IP will be necessary in order to plan for future product development and sales. Qualcomm has historically licensed and renewed licenses for various ███████████████. For example, Qualcomm sought to renew licenses to certain ████████████████████████ ███████████████████████████ ███████████████████.

110. Qualcomm's licenses for all three cores, which were ███████████ licenses entered into in 2019, are set to expire in ████. Given Qualcomm's desire to avoid disruption to its development schedule and roadmap, it began negotiations for new licenses for each core in 2024.

111. In April 2024, Qualcomm sent Arm written requests to license both ███████ ████

36

112. Arm failed to respond to Qualcomm's requests, ███████████████████ ██████, and ignored continued outreach from Qualcomm in the subsequent months.

113. In August 2024, Qualcomm submitted a written request for ██████ Arm failed to respond to this request as well.

114. Faced with Arm's continued non-compliance and the potential impact to its roadmap, Qualcomm sent Arm a notice of non-compliance with Section ██ of the QC TLA (including ███████████ in September 2024. Qualcomm told Arm that the letter "serves as Qualcomm's written notice of ARM's breach of, and non-compliance with, ████████ of the TLA." The letter asked that "ARM provide the requested core license immediately and in accordance with the terms and conditions of the TLA as required by ████████████ of the TLA, or Qualcomm will be forced to exercise its remedies under the TLA."

115. Once again, Arm failed to respond. A week later, Qualcomm wrote to Arm again, informing Arm of the "second written notice of breach and non-compliance in accordance with the notice process set forth in Section ██ of the TLA."

### 3. Arm fails to provide ████████ licensing terms to Qualcomm.

116. Nearly four weeks later, Arm finally responded to Qualcomm's notice of non-compliance. In its October 23, 2024 letter, Arm "████████████████████████ ███████████". Instead, Arm told Qualcomm that it did not "████████████████████ ████████████████████████████"

117. In connection with the letter, Arm provided offers to the requested cores that Arm claimed were ████████████████████████████████ However, not only was this untrue, but also Arm's proposal contained terms so unreasonable that it was a constructive failure to license.

37

118. The financial terms that Arm provided for the three requested cores were commercially unreasonable, exorbitant, and ███████████. For example, ██████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ was not justified by any change or improvement in the technology and is grossly inconsistent with the market for any comparable technology. Arm was aware of the unrealistic terms of its proposal, which Arm acknowledged it only provided because of Qualcomm's notice of non-compliance with Section ████████████████████████████████████████████ ██████ This constructive failure to offer a license to the requested cores violated the terms of the QC TLA.

119. Arm's proposal also violated the QC TLA requirement under Section ██████ ██████████████████████████████████████████████

120. Furthermore, by ██████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████

#### 4. *Qualcomm has been harmed by Arm's TLA violations.*

121. As a result of Arm's exorbitant proposal, Qualcomm has been forced to proceed in development of SoCs without knowing what CPUs it will be using after the licenses to ██████ ██████████ expire.

122. Due to the development lifecycle for semiconductor chips, Arm's ██████ refusal to offer licenses and to change ████████████ of its licensing offers is already impacting Qualcomm. Qualcomm must undergo reviews of its planning roadmaps to ensure that it will have suitable CPUs for its customers. This effort requires (i) that additional resources be shifted to

38

design custom CPUs for each of its semiconductor chips (ii) that Qualcomm allocate resources to identify workarounds based on RISC-V and redesign products to function with a different microprocessor design, or (iii) rely on older, less competitive versions of Arm CPUs that Qualcomm has licensed.

123. The QC TLA sets forth the remedies for Arm's violations.

124. ████████████████████ states that Qualcomm may seek ████████████



125. In addition, Section ██ of the QC TLA states:



126. Qualcomm sent its first notice of breach on September 20, 2024 and its second notice on September 27, 2024. Arm's purported offer in response to Qualcomm's notices was dated October 24, 2024. To date, Arm has failed to provide any commercially reasonable, ████ ████ offer and, as such, has failed to remedy its breach within the ████████████.

127. Qualcomm is entitled to ████████████████ under both the QC TLA and QC ALA for a period of ████████████████████████████████████████████████████ While Qualcomm will continue to ████████████████ until Arm's breach of the QC TLA is finally

39

A0363

resolved, Qualcomm believes that Arm is not entitled to receive those ███████████ ██████████████████████ pursuant to the QC TLA and ALA ████████████ ████████████████████████████ For this reason, Qualcomm does not believe that any ██████████████████████ .

**C.     Arm Refuses to Negotiate a License to the Latest Version of Its ISA ██████ ███████████**

128.     Arm has not only taken steps to destroy or delay Qualcomm's present development efforts.  It has also tried to hamstring Qualcomm's future development efforts by failing to negotiate a license to future versions of the Arm Architecture.

129.     In addition to failing to provide the deliverables ████████████████████ and constructively failing to offer licensing proposals ████████████ , Arm has also refused to negotiate an extension of ███████ to cover future versions of ███████████████ ███████ requires it to do.

130.     As noted, Section ██████ of the QC ALA ██████████████████████ ████████████████████████████████████████████████████ ██████████ Qualcomm has ██████████████████████████ . Additionally, Section ███████ of the QC ALA ████████████████████████████████ █████████████████████████████████ .

131.     On April 17, 2020, a Qualcomm employee emailed an Arm counterpart to ask if Arm was working on a new version (v10) of the Arm ISA to replace v9 and explained that the request was made in the context of ████████████████████████████ ██████████████ .  The Arm employee responded the following week that " █████████ ███████████████████████████████████████████████████████

40

███████ would expire but that there was ███████████████████████████

██████████████████████████████████████

132.    On May 20, 2020, Qualcomm emailed Arm stating that Qualcomm "████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████"

133.    Arm never responded to that email or followed up at any other time regarding Qualcomm's rights ███████████████████.

134.    Arm's actions underscore its strategy of attempting to eliminate existing ALAs and to force Qualcomm and other licensees to use Arm's off-the-shelf CPU designs—or to cease designing Arm-compatible chips entirely.

**D.    Arm Engages in a Campaign to Undermine Qualcomm's Customer Relationships.**

135.    In addition to the breaches described above, Arm has also deliberately sought to impair Qualcomm's standing and relationships with current and prospective customers.  As Qualcomm has detailed, Arm, through its leadership and through SoftBank and Son, has engaged in a misinformation campaign to mislead Qualcomm's customers into believing that Qualcomm will not be able to deliver licensed Arm-compatible products after 2024, and that Qualcomm customers must obtain their own direct licenses from Arm.[40]  That misinformation campaign included multiple rounds of letters to Qualcomm customers misleadingly claiming that Qualcomm had breached its ALA and suggesting that customers could face legal jeopardy from using

---

[40]    Defs.' Answer and Defenses to Pl.'s Compl. & Jury Demand & Defs.' 2d Am. Countercls. ¶¶ 255-70, 275(b)-(d), *Arm Ltd.* v. *Qualcomm Inc.*, C.A. No. 22-1146-MN (D. Del. Mar. 13, 2024), D.I. 300.

41

Qualcomm products.  More recently, Arm began "ratcheting up the pressure" on Qualcomm in *Arm* v. *Qualcomm*,[41] and Arm continued this misinformation campaign by declaring without basis that Qualcomm has materially breached the QC ALA and leaking the Breach Letter.  By doing so, Arm has caused tangible harm to Qualcomm's customer relationships.

### 1.    *Arm repeatedly attempts to interfere in Qualcomm's customer relationships.*

136.    On August 31, 2022, Arm commenced *Arm* v. *Qualcomm* in the U.S. District Court for the District of Delaware.  In that action, Arm alleges that Qualcomm and NUVIA breached the NUVIA ALA by not destroying all design work undertaken by NUVIA pursuant to its license with Arm following Qualcomm's acquisition of NUVIA.

137.    On the same day that Arm filed that action, it launched a premeditated campaign to blitz Qualcomm's customers with letters publicizing the lawsuit.  As Mr. Haas admitted under oath at trial, Arm sent letters to top executives at 37 companies that were customers of both Arm and Qualcomm.  In those letters, Arm stated that Qualcomm had breached the terms of "the Arm license agreement," implying that Qualcomm had breached its own ALA.  That was misleading: Arm's complaint in the *Arm* v. *Qualcomm* action accused Qualcomm and Nuvia of breaching the *Nuvia* ALA and never accused Arm of breaching the *Qualcomm* ALA.  Mr. Haas thus also admitted under oath that the letter "should have said" that Qualcomm had supposedly breached the Nuvia ALA, not Qualcomm's "Arm license agreement."

138.    Additionally, the August 31 letters asserted that Arm would "███████████ ████████████████████████" and thus (despite assuring customers that there would be "██ ██████████████████████████████") suggested that companies could face legal jeopardy if

---

[41]    Oct. 30, 2024, Hr'g Tr. 34:6, *Arm Ltd. v. Qualcomm, Inc.*, C.A. No. 22-1146 (D. Del. Nov. 7, 2024), D.I. 513.

42

they used the Qualcomm products that incorporated Nuvia technology. The letter attached a letter from Arm's general counsel to Qualcomm's general counsel that made this point explicitly, asserting that █████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████

139.    Eight months later, in May 2023, Arm launched another round of customer letters. Arm executive Will Abbey sent a series of additional letters to key Qualcomm customers ████████████████████████████████████████████████████ Mr. Haas agreed at trial that there was no independent event that triggered Arm's decision to send these letters.  That letter stated that Qualcomm's designs based on Nuvia technology, specifically including the Phoenix core, "can no longer be used and must be destroyed."  Mr. Haas also agreed at trial that it was very important to Arm to tell customers that it was demanding destruction of technology. The letter extensively quoted from Arm's prior threat letter to Qualcomm but did so in a manner intended to convey that it was quoting from a contract between Qualcomm and Arm that specifically required Qualcomm to cease using "Arm-based technology" developed by Nuvia and to destroy such technology.  In fact, no such contract existed, and the intended implication of quoting that language was thus false.  Mr. Haas admitted at trial that he was "quite confused" by the language of the letter and agreed that the letter was "misleading."

140.    Like the prior letters, the May 2023 letters reassured customers that there would be no disruptions to their partnership with Arm, but only if that partnership was ███████████████ █████████  It also offered to answer questions that customers might have regarding how the litigation might impact the availability of licensed Arm technology going forward, which necessarily

43

implied that the litigation could impact the availability of the Qualcomm products that Arm claims were unlicensed.

### 2. *Arm waits years before taking steps to terminate the QC ALA.*

141.    Although Arm now asserts that Qualcomm is in material breach of the QC ALA, Arm waited years before taking any steps towards terminating the QC ALA.  When it filed the *Arm* v. *Qualcomm* action, Arm neither alleged that Qualcomm had breached the QC ALA nor sent Qualcomm any notice to that effect, ███████████████████████████████████

███████

142.    On September 30, 2022, Qualcomm answered Arm's complaint in *Arm* v. *Qualcomm* and filed a Counterclaim against Arm seeking, among other things, a declaratory judgment that its conduct was fully licensed under the QC ALA, and that it could "continue to develop and sell chips free from challenge that its actions are in violation of the Qualcomm ALA" or any other relevant agreement with Arm.  When Arm answered that counterclaim, it generally alleged that Qualcomm was breaching the QC ALA, though it did not send Qualcomm any written notice to that effect ████████████████████.

143.    On March 13, 2024, Qualcomm filed its second amended counterclaims in *Arm* v. *Qualcomm*.  Arm answered on April 4, 2024, and again alleged that Qualcomm was breaching the QC ALA, entitling Arm to terminate that agreement.  Again, however, Arm did not send Qualcomm any written notice to that effect ████████████████████.

### 3. *Arm's Breach Letter groundlessly asserts that Qualcomm is in material breach of the QC ALA.*

144.    It was not until more than seven months later, on October 22, 2024, that Arm sent Qualcomm the Breach Letter, which purported to provide notice to Qualcomm ██████████ ███████████████ that Qualcomm is in material breach of that agreement.

44

145.    The Breach Letter asserted that the QC ALA authorizes Qualcomm solely "to develop, verify, and sell designs for CPUs … that use, rely on, or derive from Arm technology *delivered by Arm to Qualcomm* and *developed by Qualcomm employees*, not third parties."[42]  It did not attribute these assertions to any particular provision of the QC ALA but instead cited a string of contract sections, ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████  The Breach Letter also referred generally to "Annex 1," a lengthy document describing ████████████████████.  But nowhere in the Breach Letter did Arm identify any provision of the QC ALA that imposes the particular obligations Arm asserts in the Breach Letter.

146.    In the Breach Letter, Arm claimed that Qualcomm "systematically and willfully breached these obligations" by "develop[ing] CPUs and market[ing] multiple products that contain CPUs that use designs, technology, and code created by Nuvia employees at the time when Nuvia was a third party."[43]  The Breach Letter thus reprised the same arguments it has made in *Arm* v. *Qualcomm* about the NUVIA ALA: in essence, that Qualcomm somehow breached the *NUVIA* ALA by developing CPUs in part by using technology created by and acquired from NUVIA.  Arm has not explained in that litigation and did not explain in its Breach Letter how Qualcomm allegedly breached any provision in the *QC* ALA by developing CPUs in the manner it did.  In short, there is a reason why Arm's purported notice letter failed to state clearly which express contractual provision Qualcomm materially breached, or when or how Qualcomm breached any such provision: None exists.

---

[42]   Ex. A at 1 (emphasis added).

[43]   *Id.*

45

147.    Having invoked Section ███ of the QC ALA, Arm's Breach Letter demanded that Qualcomm "cure" the alleged breach(es) within 60 days, including by stopping the development of "Nuvia designs" and the manufacture and sale of Qualcomm CPUs that allegedly "use Nuvia designs or technology." The Breach Letter further demanded that Qualcomm "cure" the alleged breaches by withdrawing its complaint in this Action against Arm. And the Breach Letter asserted that if Qualcomm does not "cure" the alleged breaches in this manner within 60 days, Arm would be entitled to immediately terminate the QC ALA.

148.    The "cures" that Arm demanded in its Letter—other than the dismissal of this Action—are the same remedies that Arm has requested in *Arm* v. *Qualcomm*. By sending the Breach Letter, Arm attempted to pressure Qualcomm to yield to its demands regardless of the outcome of *Arm* v. *Qualcomm*, as well as this case, before the former went to trial.

149.    The timing of the Breach Letter belied Arm's assertion that Qualcomm has materially breached the QC ALA. Arm knew about Qualcomm's acquisition of NUVIA in 2021, and asserted in its November 2022 Answer to Qualcomm's Counterclaim that Qualcomm was supposedly in breach of the QC ALA. Yet before sending the October 22, 2024, Breach Letter, Arm never even attempted to provide the notice ███████████████ that Qualcomm had supposedly breached the agreement. Quite to the contrary, Arm *celebrated* Qualcomm's development of the Snapdragon® X Elite SoC that contains CPU designs whose development Arm now claims breach the QC ALA, with Arm's CEO stating that Arm was "very excited to see the announcement of the brand new Windows on Arm PCs that run Copilot, true AI PCs."[44] In the

---

[44] *Arm First Quarter Fiscal Year 2025*, at 3. Mr. Haas further commented that "the products that are out today are using the most advanced Arm technology," because they "are optimized with Microsoft for the most effective battery life on the planet." *Id.* at 10.

46

Breach Letter, Arm nowhere explained why it waited more than three years after Qualcomm allegedly breached the Nuvia ALA before it provided notice of an alleged breach of the QC ALA.

150.    Because Qualcomm did not materially breach the QC ALA, Arm did not identify any valid grounds on which to terminate the QC ALA, and any purported termination based on the Breach Letter is null and void.

### 4.    *Arm leaks the Breach Letter to harm Qualcomm's customer relationships.*

151.    Arm's assertion that Qualcomm was in material breach not only lacked legal or factual basis, but was also made in a manner calculated to damage Qualcomm's customer relationships.  Arm's claim that it has the authority to terminate the QC ALA was false, wrongful, and calculated to pressure Qualcomm to accede to Arm's demands and to prevent Qualcomm from gaining new business opportunities.

152.    From October 21–23, 2024, Qualcomm hosted its annual Snapdragon® Summit. At that Summit, Qualcomm unveiled new technology, including its new Snapdragon® 8 Elite Mobile Platform, an SoC featuring Qualcomm's custom-built second generation Qualcomm Oryon™ CPU.  That SoC delivers significant performance and efficiency improvements over competitors, ████████████████████████████████████████.

153.    Arm issued its Breach Letter on October 22, 2024, in the middle of the Snapdragon® Summit.  That timing was no accident, but was an intentional Arm media stunt intended to embarrass Qualcomm and to interfere with its relationships with its current and potential customers and business partners, including by creating unwarranted uncertainty about Qualcomm's ability to continue delivering licensed Arm-compatible products.

47

154.    In addition to sending the Breach Letter to Qualcomm, Arm also leaked the Breach Letter or its contents to Bloomberg, which published a story that same day.[45]  The story was based on and referred to "a document seen by Bloomberg."  On the afternoon of October 22, 2024—the same day Qualcomm received the Breach Letter—a Bloomberg reporter contacted Qualcomm requesting comment on Arm's having sent Qualcomm a "60-day letter" notifying Qualcomm that it was purportedly in breach of the QC ALA.  The reporter was familiar with details of the letter. Later that day, Bloomberg published its story reporting on Arm's purported cancellation of the QC ALA.[46]  The story relayed details about the Breach Letter "according to a document seen by Bloomberg."  Because Qualcomm did not leak the Breach Letter, the Letter could have reached Bloomberg only if it had been leaked by Arm.

155.    Arm leaked the Breach Letter to distract from the Snapdragon® Summit and the groundbreaking products released at the Summit, and to ensure that the attention of Qualcomm's customers and business partners focused on the parties' licensing dispute rather than on Qualcomm's products, which pose a threat to Arm's own competitive ambitions.  The leak of the Breach Letter thus further demonstrated Arm's deliberate efforts to interfere with Qualcomm's customer relationships.

### 5.    *Arm's leak of the Breach Letter harms Qualcomm.*

156.    The release of the Breach Letter has caused Qualcomm harm, by impairing its relationships with current and prospective customers and interfering with its future business opportunities.

---

[45]    See Ian King, *supra* note 11.

[46]    *Id.*

157.    Following Bloomberg's publication of the news story about the Breach Letter, multiple Qualcomm customers and business partners have contacted the company to express concern about the Breach Letter.  As a result of the Breach Letter—and, in particular, Arm's baseless assertion that it can terminate the QC ALA—several Qualcomm customers have deferred finalizing pending business agreements pending resolution of the *Arm* v. *Qualcomm* litigation and until Qualcomm provides them with reassurances that it will be able to provide licensed Arm-compliant products.

158.    For example, a major customer (the "Smartphone Company") had informed Qualcomm that it was designing a new mobile phone that would rely on Qualcomm's innovative Snapdragon® 8-Elite SoC.  After learning that Arm was threatening to terminate the QC ALA, however, a senior executive of the customer informed a senior Qualcomm executive that the customer's legal and intellectual-property teams would need to confer with their counterparts at Qualcomm.  The Smartphone Company has also insisted on Qualcomm's providing additional reassurances before it will extend its existing business relationship with Qualcomm.

159.    Additionally, a potential customer (the "AI and Ecosystem Company") that currently relies on a competitor's chips for its substantial processing needs was in the process of reaching an agreement with Qualcomm to design a custom chip for the customer based on Qualcomm's custom-built CPU.  After the Breach Letter was published, the customer delayed finalizing a termsheet for an agreement under which Qualcomm would design that custom chip and requested inclusion of language related to Qualcomm's chip development capabilities.  The AI and Ecosystem Company has stated to Qualcomm that before it finalizes that termsheet, it must first understand the implications of termination of the QC ALA on Qualcomm's ability to deliver the custom chips in question.  As a result of the uncertainty stemming from Arm's assertion and

49

leak of the Breach Letter, there was a delay in Qualcomm's ability to finalize this valuable opportunity.

160.    Simultaneous with its actions that have set back Qualcomm's efforts to finalize a deal with the AI and Ecosystem Company, Arm is also attempting to supply the AI and Ecosystem Company directly.  Despite Arm's insistence at trial in *Arm* v. *Qualcomm* that it does not make chips, it was recently reported that Arm had reached an agreement with the AI and Ecosystem Company under which Arm would begin producing its own chips for use in a datacenter operated by the AI and Ecosystem Company.[47]  Arm has thus not only delayed Qualcomm's efforts to finalize a contract with the AI and Ecosystem Company but has separately developed its own datacenter chips that it is trying to sell to the same company.

161.    Arm leaked the Breach Letter at a time when it knew that the Smartphone Company is an existing customer of Qualcomm and when it knew or should have known that the AI and Ecosystem Company was a customer of Qualcomm or was likely to be absent Arm's interference. On information and belief, Arm leaked the Breach Letter knowing (or in circumstances in which it should have known) that its wrongful threats to cancel the QC ALA would disrupt those customer relationships and that Qualcomm was likely to be harmed as a result.

### 6.    *Arm's withdrawal of the Breach Letter offers no assurance that Arm will not attempt to terminate the QC ALA.*

162.    Following Qualcomm's victory at trial in *Arm* v. *Qualcomm*, on January 8, 2025, Arm Chief Legal Officer Spencer Collins sent Qualcomm a letter (the "Notice") withdrawing the Breach Letter and stating ███████████████████████████████████████████ ████████████████████████████████████████████."    The Notice also

---

[47] Reuters, *Arm Secures Meta as First Customer for Ambitious New Chip Project, FT Reports* (Feb. 13, 2025).

50



The Notice asserted, however, that Arm

The Notice thus indicated that Arm was pausing its efforts to terminate the QC ALA, but in no way suggested that Arm had any plan to abandon its long-term efforts to force Qualcomm to use Arm off-the-shelf cores and to block Qualcomm from creating and delivering products using its own custom cores (or indeed, any chips that might compete with Arm's own offerings).

163.    Arm also sought to prevent Qualcomm from addressing the uncertainty created by Arm's own leak of the Breach Letter.  Despite leaking that letter to the press, Arm ████████ ██████████████████ thereby attempting to limit Qualcomm's ability to disclose the letter. Arm authorized Qualcomm to ██████████████████████████████ thereby seeking to obstruct Qualcomm from communicating about the letter publicly or with potential customers or other business partners.

## IV.    ARM'S WELL-ESTABLISHED EFFORTS TO LIMIT INNOVATION AND RESTRICT COMPETITION ARE HARMFUL TO THE INDUSTRY

164.    Arm's efforts to interfere with Qualcomm's CPU innovations and stifle competition must come to an end.  Despite Arm's CEO's sworn testimony to the contrary, it is clear that Arm seeks to take control of the semiconductor industry and will do whatever it takes to undermine and dominate the companies that it once treated as partners.

165.    Arm's tactics violate basic contract principles and are directly contrary to the purpose of the QC ALA, which will have little value if licensees cannot rely on executed ALAs to receive the deliverables and ██████ they bargained for without fear that Arm will unilaterally

51

abdicate its contractual obligations in an effort to disrupt a licensee's innovation if Arm views the licensee as an unacceptable competitor. ALA licensees must be assured that they can freely develop custom cores (at their own risk and expense) and that their success in so doing will not be used against them.

166. The assault on Qualcomm's business through the improper refusal to provide commercially reasonable, █████████, licensing offers under the QC TLA likewise threatens reliance on the Arm ecosystem and the fundamentals of licensing. Licensees enter into TLAs with Arm under the assumption that they will be joining a collaborative and open ecosystem and will be able to license the IP necessary to compete and grow in the market. Arm's transformation into a chipmaker, combined with its throttling of the delivery of critical IP, is a dramatic reversal of Arm's longstanding business model that endangers the semiconductor industry and the manner in which its participants interact.

## COUNT I

### (Declaratory Judgment)

167. Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as though fully set forth herein.

168. Plaintiffs are entitled to a declaratory judgment that:

A. Arm breached the QC ALA by withholding ████████████ that Arm was obligated ██████████████████████ to deliver under Section ██ of the QC ALA, and by withholding ███████ Arm was required to deliver ████████████████████ under Section ██ of the QC ALA;

B. As a result of Arm's breach of Section ██ of the QC ALA, Qualcomm is entitled to ██████████████████████████████████████████████

C. Arm breached the QC TLA by ██████████████████████ for ██████████████████████, including ████████████

52



D.   As a result of Arm's breach of Section ▮ of the QC TLA, Qualcomm is entitled to ▮, including H ▮ and ▮

E.   Arm breached the QC TLA by ▮, including ▮ in violation of ▮ of the QC TLA.

F.   As a result of Arm's breach of Section ▮ of the QC TLA, ▮

G.   Arm breached the QC TLA by ▮ for ▮ including ▮ with ▮ of the QC TLA.

H.   As a result of Arm's breach of Section ▮ of the QC TLA, ▮

I.   Qualcomm has not breached the QC ALA as asserted in the October 22, 2024, Breach Letter; and

J.   Arm is therefore not entitled to terminate the QC ALA.

169.   A judicial declaration pursuant to the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201-02) concerning this matter is necessary and appropriate so that Qualcomm can confirm its belief that ▮

170.   A valid and justiciable controversy exists between Qualcomm and Arm because ▮ Arm is threatening to terminate the QC ALA if Qualcomm ▮ pursuant to Section ▮ of the ALA.

171.   A declaratory judgment is also necessary and appropriate so that Qualcomm may ascertain Arm's obligations and Qualcomm's rights and obligations under the QC ALA and clear

53

any cloud that may exist over its business as a result of Arm's false assertions of breach and threats to terminate the QC ALA.

172. A valid and justiciable controversy exists between Qualcomm and Arm because Arm has asserted that Qualcomm is in breach of the QC ALA and has asserted that Arm has the right to terminate the QC ALA on December 21, 2024. Qualcomm disputes both assertions. Qualcomm also reasonably expects that Arm would attempt to use its purported termination to damage Qualcomm with its customers, in the media, and with analysts, in light of Arm's behaviors to date.

## COUNT II

### (Breach of Section █ of the QC ALA)

173. Plaintiff Qualcomm repeats and realleges all of the preceding allegations as if set forth fully herein.

174. The QC ALA is a valid, binding contract.

175. Arm failed to fulfill its obligation under Section █ of the QC ALA because it intentionally withheld from Qualcomm certain █████████ to which Qualcomm was entitled, including the OOB and certain "patches" used for verification.

176. Accordingly, Arm did not ████████████████████████████████████████████████████████ or ████████ ████████████████████████████████████████████ or ████████████████████████████████ as is required by Section █ of the agreement.

177. Arm's failure to comply with its contractual obligation to timely deliver bargained-for technology was not only intentional, but it was also done with an intent to deceive Qualcomm.

54

178.    Qualcomm put Arm on written notice of this violation and Arm ▮▮▮▮▮▮▮▮ ▮▮▮▮ as is required under the contract.

179.    Arm's breach of Section ▮ of the QC ALA entitles Qualcomm ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

180.    As a proximate result of Arm's breach of contract, Qualcomm has been damaged both (i) by delay that could have been avoided had Arm fulfilled its obligations, (ii) by costs and expenses incurred by Qualcomm expending extra time and resources to run the ACK tests to verify that its products are compliant with the Arm ISA and use its own engineers to address issues that would have been addressed by Arm's patches, and (iii) by ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ not misrepresented its compliance with the parties' agreement.

## COUNT III

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

181.    Plaintiff Qualcomm repeats and realleges all of the preceding allegations as if set forth fully herein.

182.    Under California law, every contract implies a covenant for each party not to do anything that will deprive the parties of the benefits of the contract.

183.    At all relevant times, Arm agreed and was required by law to act fairly and in good faith with respect to its obligations under the QC ALA and TLA.

184.    Arm breached this implied covenant of good faith and fair dealing under both agreements.  For example, Arm withheld deliverables that it was required to provide Qualcomm under the QC ALA; asserted, without valid basis under the QC ALA, that Qualcomm was supposedly in material breach of that agreement; sent letters to Qualcomm customers and leaked

55

the Breach Letter to the media to create uncertainty about Qualcomm's ability to provide its customers with products containing custom CPUs; failed to negotiate an extension to the QC ALA that would cover future version of the architecture, including v10, and failed to provide licensing proposals for ██████████████ to Qualcomm in violation of provisions of the QC TLA.

185.    Arm's actions have been willful and carried out in bad faith, as part of an effort to enable Arm to disregard the QC ALA and TLA so that it can prevent Qualcomm from competing with Arm's sale of its own CPU and other chip designs, or, at a minimum, coerce into renegotiating the QC ALA so that Arm can extract payments from Qualcomm that exceed those due under the QC ALA.

186.    Arm's actions have unfairly frustrated the essential purposes of the QC ALA and TLA, and have prevented Qualcomm from obtaining the reasonably and justifiably intended and expected benefit of its bargain with Arm, including the right to produce and sell custom CPUs that are compatible with the Arm ISA ██████████████████████.

187.    For at least the foregoing reasons, Arm has breached the implied covenant of good faith and fair dealing for both the QC ALA and TLA.

188.    As a proximate result of Arm's breach of the implied covenant of good faith and fair dealing, Qualcomm has been injured in its business or property, and is threatened by imminent loss of profits and loss of actual and potential customers and business opportunities.

## <u>COUNT IV</u>

### (Intentional Interference with Prospective Economic Advantage)

189.    Plaintiff Qualcomm repeats and realleges all of the preceding allegations as if set forth fully herein.

56

**A0380**

190.    Qualcomm has economic relationships with customers that rely on Qualcomm's technology to meet their business needs, including the Smartphone Company and the AI and Ecosystem Company referenced above.

191.    Absent Arm's interference, these relationships would likely result or would have likely resulted in profitable business opportunities for Qualcomm, most notably for Qualcomm to sell its customers particular SoCs to support those customers' business operations.    These relationships are sufficient to support an intentional-interference claim because the Smartphone Company is already a major Qualcomm customer, while the AI and Ecosystem Company operates a large number of datacenters, is a large buyer of datacenter hardware, and had reached a nearly final termsheet with Qualcomm before Arm's interference sabotaged that business relationship.

192.    Arm knew of these relationships but nevertheless engaged in conduct aimed at interfering with Qualcomm's business opportunities, including by (a) purporting to give notice that it "shall be entitled" to terminate the QC ALA based on nonexistent alleged material breaches of the QC ALA; (b) deliberately leaking the Breach Letter in the middle of Qualcomm's Snapdragon® Summit; and (c) making misleading and threatening statements to Qualcomm's customers to undermine their relationships to Qualcomm and to induce them not to procure products from Qualcomm.

193.    Arm's interference with Qualcomm's business opportunities was wrongful.    For example, as explained below, Arm's conduct represented unfair business acts and practices in violation of California law.

194.    By engaging in this conduct, Arm intended to disrupt these relationships or knew that disruption of these relationships was certain or substantially certain to occur.

195.     As a result of that conduct, these relationships have in fact been disrupted.  The AI and Ecosystem Company has delayed finalizing a valuable and nearly final agreement with Qualcomm that it would have finalized absent Arm's interference, and subsequently finalized a substitute contract with Arm instead, and the Smartphone Company has likewise delayed extending its business relationship with Qualcomm pending additional assurances.  As a result of these delays and interruptions in its business relationships, Qualcomm has suffered actual harm.

196.     Arm's efforts to interfere with Qualcomm's business relationships have been a substantial factor in causing that harm, which Qualcomm would not have suffered but for Arm's misconduct.

**COUNT V**

**(Negligent Interference with Prospective Economic Advantage)**

197.     Plaintiff Qualcomm repeats and realleges all of the preceding allegations as if set forth fully herein.

198.     Arm knew or should have known that Qualcomm has substantial business relationships with a number of customers, including the Smartphone Company and the AI and Ecosystem Company.

199.     Arm also knew or should have known that these relationships would be disrupted by Arm's failure to act with reasonable care by purporting to terminate the QC ALA despite lacking legal or factual grounds for doing so, by leaking the Breach Letter in bad faith and in disregard of its duties to Qualcomm as a contract counterparty, and by making misleading and threatening statements to Qualcomm's customers to undermine their relationships to Qualcomm and to induce them not to procure products from Qualcomm.

58

**A0382**

200. Arm owes Qualcomm a duty to act with reasonable care based on, among other things, the parties' contractual relationship and the foreseeability that interfering with Qualcomm's customer relationships would cause Qualcomm harm.

201. Arm failed to act with reasonable care when, in bad faith, it purported to declare that Qualcomm is in material breach of the QC ALA, leaked the Breach Letter, and made those misleading and threatening statements to Qualcomm's customers.

202. Arm's conduct was wrongful because, for example, it was "unfair" under California law.

203. As a result of Arm's wrongful conduct, Qualcomm's relationships with the customers identified herein have been disrupted, as customers have required additional assurances or delayed entering into additional transactions with Qualcomm.

## COUNT VI

### (Violations of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

204. Plaintiff Qualcomm repeats and realleges all of the preceding allegations as if set forth fully herein.

205. The California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, prohibits "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

206. By engaging in the conduct described above, Arm has committed and continues to commit unlawful and unfair business acts or practices prohibited by the UCL. These unfair business acts or practices include deliberately withholding deliverables it was required to provide Qualcomm ████████████████; misrepresenting to Qualcomm that it was not withholding deliverables; refusing to negotiate license terms with Qualcomm ████████; repeatedly interfering or attempting to interfere with Qualcomm's relationships with Qualcomm's

59

current and prospective customers; wrongfully asserting that it has the right to terminate the QC ALA without any basis in the QC ALA for those assertions, and then leaking the Breach Letter to the media, in an effort to terminate the QC ALA and thereby obstruct Qualcomm's ability to produce custom cores and thus eliminate a competing supplier of chips compatible with the Arm ISA; to pressure Qualcomm to accede to its demands in *Arm* v. *Qualcomm*; and to prevent Qualcomm from continuing to litigate its meritorious claims in the instant case.

207.   Arm's actions are part of a broader campaign to harm or threaten to harm competition for CPU and other computer chip designs, in California and elsewhere.  Arm is employing a variety of unfair acts and practices so that it can leverage its control over the ISA used in all premium smartphones and a large and growing share of other computing devices to attempt to prevent Qualcomm from developing and marketing products with CPUs that threaten to outcompete products containing Arm's off-the-shelf CPU designs.  These tactics include making misleading statements to Qualcomm's customers to pressure them not to acquire products from Qualcomm and threatening or attempting to cut off Qualcomm's access to the ubiquitous Arm ISA with the goal of preventing Qualcomm from developing custom cores that would compete with Arm's own designs and from marketing products that contain Qualcomm custom cores.

208.   Arm's conduct is also unfair because it threatens to significantly harm competition not only for CPU designs, but also for the SoCs used in a variety of platforms, and ultimately for the devices that use those CPUs and SoCs.  If Arm's conduct goes unchecked, Qualcomm and other chip designers will be forced to rely on Arm's off-the-shelf CPUs and will be at Arm's mercy if Arm wishes—as it has signaled it does—to foreclose them from making chips that are compatible with the Arm ISA.  As a result of Arm's efforts to reduce competition to create those CPUs and SoCs, consumers will be deprived of products that are built around innovative, high-

60

performance, high-efficiency Qualcomm chips and/or will have to pay more for (or will have reduced choices among) products that incorporate CPUs compatible with the Arm ISA. Arm's conduct towards Qualcomm—a longtime Arm licensee—threatens incipient violations of competition laws; violates the policy or spirit of those laws; threatens to significantly harm competition; is immoral, unethical, oppressive, and unscrupulous; and threatens to harm consumers and competition in a manner vastly disproportionate to whatever supposed benefits that behavior could possibly create.

209.    Arm's conduct is also unlawful because it violates California common law, including state law prohibiting intentional and negligent interference with prospective economic advantage.

210.    Arm's unlawful and unfair business acts and practices are a direct and proximate cause of injury to Qualcomm. Qualcomm has suffered harm in California and elsewhere as a supplier of a variety of Arm-compatible products, and it has suffered or faces the threat of loss of profits, customers, and potential customers. If Arm is allowed to continue in its unlawful and unfair business acts and practices, Qualcomm risks being denied access to a widely used ISA for which there are no readily available alternatives for certain applications, which threatens to impede Qualcomm's ability to continue developing and marketing its high-performance products based on its own custom CPU designs. Arm's conduct thus threatens to harm competition among SoC producers but also in end users, who will be forced to use products built with Arm chips and CPUs.

211.    Qualcomm has standing to bring this claim because it has lost money or property as a result of Arm's unfair competition, including by losing business opportunities that would have been awarded to it absent Arm's conduct.

61

212. Qualcomm requires equitable relief under the UCL because it lacks adequate remedies at law to address Arm's anticompetitive and unfair actions, which are ongoing and which have caused or threaten to cause Qualcomm to suffer significant harm.

## COUNT VII

**(Breach of Section ███ of the QC TLA)**

213. Plaintiff Qualcomm repeats and realleges all of the preceding allegations as if set forth fully herein.

214. The QC TLA is a valid, binding contract.

215. Arm failed to fulfill its obligation under Section ███ of the QC TLA because the licensing offers it provided to Qualcomm for ████████████████, including ████████████ ████████████████████████████████████████████

216. Arm's failure to comply with its contractual obligation ████████████████ ████████████████████████████████████████████████ ████████████████

217. Qualcomm put Arm on written notice of this violation and Arm failed to cure within ████████ as is required under the contract.

218. Arm's breach of Section ████████ of the QC TLA entitles Qualcomm to a ████████████████████████████████████████████, including ████ ████████████ and a license offer████████████████████████

219. Arm's breach of Section ████████ of the QC TLA entitles Qualcomm to ████ ████████████████████████████████████████████████ ████

62

220.    As a proximate result of Arm's breach of contract, Qualcomm has been harmed both by (i) shifting resources to its custom CPU team in order to analyze and begin development of CPUs for future SoCs that would have used the ███████████████, including ████ ████████████ cores, (ii) the uncertainty caused by Arm's refusal to license the ███ ██████████████ which causes complications in the roadmapping and SoC planning process, and (iii) by ██████████████████████████████████████████████ ████

## COUNT VIII

(Breach of Section ████ of the QC TLA)

221.    Plaintiff Qualcomm repeats and realleges all of the preceding allegations as if set forth fully herein.

222.    The QC TLA is a valid, binding contract.

223.    Arm failed to fulfill its obligation under Section ████ of the QC TLA because the licensing offers it provided to Qualcomm for ██████████████████, including ████████████ ████████████████████████████████████████████████████████ ████████████████████████████

224.    Qualcomm put Arm on written notice of this violation and Arm failed to cure within ████████ as is required under the contract.

225.    Arm's breach of Section ████ of the QC TLA entitles Qualcomm to ████████ ████████████████████████████████████████████████████████ ████

226.    As a proximate result of Arm's breach of contract, Qualcomm has been forced to seek alternative means to ensure that it is protected according to the ████████████ that it

63

negotiated in the QC TLA and to divert additional resources in order to continue development of its SoCs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment and relief as follows:

A    For the declaratory judgments set forth in Plaintiffs' claims;

B    For an Order requiring Arm to comply with all its obligations under the QC ALA, including (but not limited to) by providing the ███████████, OOB, Patches, and ██████ without discrimination or retaliation;

C    For an Order requiring Arm to comply with all its obligations under the QC TLA, including (but not limited to) by ████████████████████████████ ████████████████ including ██████████████████ ████████████████████████████

D    For an Order enjoining Arm from engaging in the unlawful, unfair, and anticompetitive actions and practices described in this Amended Complaint and from any other unlawful, fraudulent, or unfair acts or practices aimed at obstructing Qualcomm's ability to develop and sell chips;

E    For an Order that Qualcomm is entitled to ████████████████ with respect to ████████████ licenses at pricing structures ████████ ████████████████

F    For an Order ████████████████████████████ ████████████████ as a result of Arm's breach of the QC ALA and TLA;

G    For an Order that the Breach Letter is ineffective notice of an alleged material breach and that Arm has no right to terminate the QC ALA on the grounds stated in the Breach Letter;

H    For recovery of all ████████████████████████ ████████████████████

I    For damages resulting from the wrongful conduct alleged in this Amended Complaint, including from Arm's threat to terminate the QC ALA and its leak of the Breach Letter, failure to offer ███████ licensing terms ███████████, and specifically including damages arising from the postponement of the business opportunity with the AI and Ecosystem Company;

J    For restitution of amounts Arm derived from the unfair and anticompetitive conduct described in this Amended Complaint;

64

K      For costs and expenses incurred in connection with Qualcomm obtaining specific performance and other equitable relief; or, in the alternative, for additional damages, in the alternative, that the Court deems appropriate;

L      For an award of attorneys' fees and costs as allowed by law; and

M     For such other and further relief available at law and equity as the Court may deem just and proper.

## JURY DEMAND

Pursuant to D. Del. LR 38.1 and Fed. R. Civ. P. 38, Qualcomm hereby demands a TRIAL

BY JURY of all claims and issues presented in this Complaint that are so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

Melissa F. Zappala
Ruby J. Garrett
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

June 3, 2025

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

65

**A0389**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 3, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 3, 2025, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                              *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Karen E. Keller, Esquire                             *VIA ELECTRONIC MAIL*
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                          *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                            *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

66

**A0390**

Kyle W.K. Mooney, Esquire                                                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

Erik J. Olson, Esquire                                                   *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                                  *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                                    *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                                             *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*

*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)

67

**A0391**

# EXHIBIT A



Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated
5775 Morehouse Drive
San Diego, CA 92121

22 October 2024

Dear Ann,

Pursuant to section ███ of the Qualcomm Architecture License Agreement (LES-TLA-20039) ("the Qualcomm ALA"), Arm hereby provides notice that Qualcomm is in material breach of the Qualcomm ALA. Unless Qualcomm cures its material breach ████████ Arm shall be entitled ██████████████████████████████ ████████████

Under the Qualcomm ALA, ██████████████████████████████ ██████████████████████████████ ██████████████████████████ The Qualcomm ALA permits ██████████████ Qualcomm is only permitted to ████ requirements of the Qualcomm ALA and ██████████ ████ And Qualcomm is entitled to ████████████ ████ within the scope of the ALA. These obligations are reflected in multiple places in the Qualcomm ALA, including but not limited to Sections ████████████████ ████████████

Qualcomm has systematically and willfully breached these obligations, and its breaches have accelerated and expanded in recent months. Specifically, Qualcomm has ████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████ And Qualcomm initiated and continues to prosecute contractual claims that arise from Qualcomm's improper conduct with respect to these unlicensed cores.

Due to Qualcomm's willful, ongoing, and renewed actions, Qualcomm is in material breach of the Qualcomm ALA. Pursuant to Section ████████████████████ ████ To do so, Qualcomm must, at a minimum, ██████████████████████,

**A0393**



A0394

If Qualcomm does not do so Arm shall be entitled to immediately terminate the ALA Following termination, Qualcomm shall be subject to the ualcomm ALA.

Sincerely,

_____

Spencer Collins
EVP, Chief Legal Officer
Arm Limited
110 Fulbourn Road
Cambridge, CB1 9NJ
United Kingdom

2

**A0394**

# Exhibit 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
Delaware corporation,

     Plaintiffs,

  v.

ARM HOLDINGS PLC, a U.K. corporation,

     Defendant.

C.A. No. 24-490-MN



# ARM'S REPLY BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS QUALCOMM'S SECOND AMENDED COMPLAINT

Dated: July 8, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
gregg.locascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A0397**

Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 1

I.      *NOERR-PENNINGTON* AND RELATED DOCTRINES BAR COUNTS III-VI. ........... 1

    A.      The *Noerr-Pennington* Doctrine Bars Several Of Qualcomm's Claims. ............... 1

    B.      The California Litigation Privilege And Anti-SLAPP Law Also Apply. ............... 3

II.     QUALCOMM'S TORT CLAIMS FAIL FOR ADDITIONAL REASONS. ..................... 4

    A.      Qualcomm's UCL Claim Fails (Count VI). ................................................. 4

    B.      Qualcomm's Tortious Interference Claims Fail (Count IV-V). ............................. 7

III.    QUALCOMM'S TLA CONTRACT CLAIMS SHOULD BE DISMISSED. .................. 7

    A.      Qualcomm Fails To Allege A Breach Of ██████ (Count VII). ............................. 7

    B.      Qualcomm Fails To Allege A Breach Of ██████ (Count VIII). ........................... 9

IV.     THE IMPLIED COVENANT CLAIM SHOULD BE DISMISSED (COUNT III). .......... 9

CONCLUSION .................................................................................................. 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10x Genomics v. Vizgen*,
   681 F. Supp. 3d 252 (D. Del. 2023)..........................................................................6

*Accenture v. Guidewire Software*,
   581 F. Supp. 2d 654 (D. Del. 2008)..........................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................7, 8, 9

*Bell Atl. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................1, 7, 8

*Bocock v. Innovate*,
   2022 WL 15800273 (Del. Ch. Oct. 28, 2022) ........................................................10

*Cheminor Drugs v. Ethyl Corp.*,
   168 F.3d 119 (3d Cir. 1999)....................................................................................2, 3

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983)....................................................................................................5

*Costa v. Whirlpool*,
   2025 WL 885245 (D. Del. Mar. 21, 2025) ..............................................................7

*Dove Audio v. Rosenfeld, Meyer, & Susman*,
   54 Cal. Rptr. 2d 830 (Cal. App. 1996)....................................................................4

*Eastman Kodak v. Image Tech. Servs.*,
   504 U.S. 451 (1992)..................................................................................................6

*In re Green Field Energy Servs.*,
   834 F. App'x 695 (3d Cir. 2020) ..............................................................................4

*Guz v. Bechtel Nat'l*,
   24 Cal. 4th 317 (2000) ........................................................................................9, 10

*Key v. Qualcomm*,
   129 F.4th 1129 (9th Cir. 2025) ................................................................................5

*Lamke v. Sunstate Equip.*,
   387 F. Supp. 2d 1044 (N.D. Cal. 2004) ..............................................................9, 10

A0400

*Matsushita Elecs. v. Loral*,
  974 F. Supp. 345 (S.D.N.Y. 1997)..................................................................................2

*Mylan Pharms. v. Teva Pharms.*,
  2025 WL 756793 (D.N.J. Feb. 27, 2025) .......................................................................3

*Novell v. Microsoft*,
  731 F.3d 1064 (10th Cir. 2013) .....................................................................................6

*In re Qualcomm Litig.*,
  2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) ..................................................................6

*Racine & Laramie v. Dep't of Parks & Rec.*,
  11 Cal. App. 4th 1026 (1992) ........................................................................................8

*Reese v. Wal-Mart Assocs.*,
  2025 WL 472721 (E.D. Cal. Feb. 12, 2025)...................................................................5

*In re Revlimid & Thalomid Purchaser Antitrust Litig.*,
  2024 WL 2861865 (D.N.J. June 6, 2024) .......................................................................2

*Six4Three v. Facebook*,
  109 Cal. App. 5th 635 (2025) ........................................................................................4

*SolidFX v. Jeppesen Sanderson*,
  841 F.3d 827 (10th Cir. 2016) .......................................................................................6

*Sonner v. Premier Nutrition*,
  971 F.3d 834 (9th Cir. 2020) ......................................................................................4, 5

*Stephens v. Clash*,
  796 F.3d 281 (3d Cir. 2015)...........................................................................................9

*Sweet St. Desserts v. Chudleigh's*,
  655 F. App'x 103 (3d Cir. 2016) ....................................................................................2

*Thomas v. Hous. Auth. of L.A.*,
  2006 WL 5670938 (C.D. Cal. Feb. 28, 2006)................................................................1

*United States v. Colgate*,
  250 U.S. 300 (1919)........................................................................................................5

*Verizon Commc'ns v. Trinko*,
  540 U.S. 398 (2004)........................................................................................................5

*Warner Theatre Assocs. v. Metro. Life Ins.*,
  1997 WL 685334 (S.D.N.Y. Nov. 4, 1997)....................................................................8

iii

*Wentland v. Wass*,
   126 Cal. App. 4th 1484 (2005) ...............................................................................3, 4

*Yokohama Rubber v. S. China Tire & Rubber*,
   2005 WL 6124310 (C.D. Cal. Jan. 19, 2005) ...........................................................3

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
   601 F. Supp. 3d 625 (C.D. Cal. 2022) ...................................................................4, 5

**Statutes**

10 Del. C. § 8106 ......................................................................................................10

Cal. Civ. P. Code § 425.16.........................................................................................4

Cal. Civ. P. Code § 425.17.........................................................................................4

**Rules**

Fed. R. Civ. P. 8(a)(2)............................................................................................7, 8

**A0402**

**INTRODUCTION**

Qualcomm's opposition highlights the fundamental flaws in the Second Amended Complaint ("SAC"). Qualcomm barely quotes the allegations in the SAC at all, and instead makes claims that appear nowhere in the SAC, while applying an approach to pleading that the Supreme Court repudiated in *Twombly*. Throughout its opposition, Qualcomm also ignores precedent that it finds inconvenient. For example, Qualcomm does not address the many cases Arm cited that applied *Noerr-Pennington* and other speech-related privileges to claims indistinguishable from Qualcomm's. The same is true for the many cases that rejected flawed and underdeveloped UCL theories like those Qualcomm asserts here. As for Qualcomm's implied covenant and TLA claims, Qualcomm can allege a breach and request draconian remedies only by rewriting the parties' agreements to impose new terms Arm never accepted. That too is improper as a matter of law.

**ARGUMENT**

**I.    *NOERR-PENNINGTON* AND RELATED DOCTRINES BAR COUNTS III-VI.**

**A.    The *Noerr-Pennington* Doctrine Bars Several Of Qualcomm's Claims.**

The *Noerr-Pennington* doctrine forecloses Qualcomm's implied covenant, tortious interference, and UCL claims based on allegations that Arm: (1) "wrongfully assert[ed] that it has the right to terminate the QC ALA," (2) allegedly "leak[ed] the Breach Letter to the media," and (3) made "misleading and threatening statements to Qualcomm's customers" about the original lawsuit and Qualcomm's alleged breaches of the ALA. SAC ¶¶ 184, 192, 199, 201, 206; *see id.* ¶¶ 136-155. Those claims attack Arm for speaking about its case and legal rights. Qualcomm's suggestion that the doctrine rarely applies on a motion to dismiss is wrong. Courts often apply *Noerr-Pennington* at the pleading stage—Arm cited half a dozen cases granting motions to dismiss—because even the "pendency" of claims attacking petitioning activity could "chill the exercise of First Amendment rights." *Thomas v. Hous. Auth. of L.A.*, 2006 WL 5670938, at *10

1

n.51 (C.D. Cal. Feb. 28, 2006). As in those cases, the SAC on its face attacks protected conduct.

That protected conduct starts with the Breach Letter itself. The Letter echoes allegations Arm made in the first case (22-1146 D.I. 21 at 23, 37, 39, 41-42) and is indistinguishable from the demand letters, cease-and-desist letters, and threats of suit courts routinely protect under *Noerr-Pennington* (D.I. 233 ("Mot.") 5-6), which may explain why Qualcomm does not attempt to distinguish those cases. Qualcomm likewise leaves unaddressed the multiple cases extending *Noerr-Pennington* immunity to press releases about pending litigation. *See* Mot. 6. Qualcomm cannot evade *Noerr-Pennington*'s protections for statements made in public court filings by challenging Arm's decision to repeat those statements in litigation-related communications.

The First Amendment also protects Arm's challenged communications with customers. Parties cannot hold a litigation adversary liable for providing its view of the case to its customers. Mot. 6-7. Qualcomm again grapples with none of the precedent Arm cited for this well-established principle, and each of Qualcomm's cases is distinguishable. In *Golden Eye*, *Thimes*, *LY Berditchev*, and the other cases Qualcomm cites, *Noerr-Pennington* did not apply to letters sent to third parties when there was no pending or threatened litigation. D.I. 287 ("Opp.") 7-8 & nn.4-5. Here, Arm sent the supposedly misleading letters during litigation to update customers about the suit, updates the SAC alleges were sent to "threaten" customers and "suggest that customers could face legal jeopardy from using Qualcomm products." SAC ¶¶ 1, 135, 138. The doctrine protects letters to third parties that allegedly "threaten litigation." *Matsushita Elecs. v. Loral*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997); *Sweet St. Desserts v. Chudleigh's*, 655 F. App'x 103, 110-11 (3d Cir. 2016).

Qualcomm is wrong that courts cannot resolve whether the sham litigation exception applies on a motion to dismiss. Courts have done so in the past. *See Cheminor Drugs v. Ethyl Corp.*, 168 F.3d 119, 127-28 (3d Cir. 1999); *In re Revlimid & Thalomid Purchaser Antitrust Litig.*,

2

2024 WL 2861865, at *86 (D.N.J. June 6, 2024). No "factual inquir[ies]" are necessary. Opp. 9. The central assertion in the challenged communications is that Qualcomm would breach its ALA by selling Nuvia-based cores. One of the issues sent to the jury in the previous case was whether Qualcomm's ALA covered those Nuvia-based designs; the Court denied Qualcomm's summary judgment motion on that issue. 22-1146 10/30/2024 Minute Entry; 22-1146 D.I. 572. That establishes Arm's assertions were not objectively baseless, even if Qualcomm wrongly believes Arm also made misrepresentations in its communications. *See Cheminor*, 168 F.3d at 122-24; *Mylan Pharms. v. Teva Pharms.*, 2025 WL 756793, at *31 (D.N.J. Feb. 27, 2025).

It is irrelevant that *Noerr-Pennington* does not apply to contract claims. The SAC does not assert that " ███████████████████████████████ " (Opp. 6), and Arm is not seeking to dismiss that unasserted claim. Qualcomm does not cite a single example of a court holding that a hypothetical, unasserted contract claim eliminates *Noerr-Pennington* protections for the allegedly tortious conduct asserted in a complaint. Similarly, the fact Qualcomm believes it could prove its claims based on other conduct does not vitiate Arm's First Amendment protections for conduct that implicates *Noerr-Pennington*. At least Qualcomm's tortious interference claim turns exclusively on Arm's protected conduct regardless. *See* SAC ¶¶ 189-203.

## B. The California Litigation Privilege And Anti-SLAPP Law Also Apply.

California's litigation privilege independently protects the conduct at issue here. Qualcomm contends the privilege "protects only statements that are 'necessary or useful step[s] in the litigation process'" (Opp. 10), but leaves unaddressed the numerous cases holding out-of-court statements to nonparties who have a substantial interest in the litigation meet that standard. Mot. 8-9. Statements to customers and statements to Bloomberg that Arm allegedly intended members of the industry to see are therefore protected. *Yokohama Rubber v. S. China Tire & Rubber*, 2005 WL 6124310, at *3 (C.D. Cal. Jan. 19, 2005). *Wentland v. Wass*, 126 Cal. App. 4th 1484 (2005)

3

is inapposite; that case held the privilege does not bar claims for breach of a contract's confidentiality provisions, *id.* at 1492, but Qualcomm again has not asserted such a breach.

California's anti-SLAPP law also bars Qualcomm's claims. Qualcomm does not attempt to distinguish *Dove Audio v. Rosenfeld, Meyer, & Susman*, 54 Cal. Rptr. 2d 830, 834-35 (Cal. App. 1996). Nor does it grapple with Arm's argument that Arm's conduct is protected by Cal. Civ. P. Code §§ 425.16(e)(2)-(4). Qualcomm's footnote argument that the commercial-speech exception applies is both waived and wrong. *See In re Green Field Energy Servs.*, 834 F. App'x 695, 699 (3d Cir. 2020). Arm did not make the alleged statements while delivering its goods or services or for the purposes of securing sales of any goods or services, essential elements for invoking this "narrowly construed" exception. *Six4Three v. Facebook*, 109 Cal. App. 5th 635, 647-53 (2025); Cal. Civ. P. Code § 425.17(c)(1). The burden therefore falls to Qualcomm to show "a probability [of] prevail[ing]," Cal. Civ. P. Code § 425.16(b)(1), and its assertion that this burden-shifting framework "does not apply in federal court" (Opp. 10-11) is wrong. *See* Mot. 9.

## II.     QUALCOMM'S TORT CLAIMS FAIL FOR ADDITIONAL REASONS.

### A.     Qualcomm's UCL Claim Fails (Count VI).

None of Qualcomm's arguments overcome the two other insurmountable problems with its UCL claim. For starters, the UCL is an equitable statute, so Qualcomm "must establish that [it] lacks an adequate remedy at law" in "the operative complaint." *Sonner v. Premier Nutrition*, 971 F.3d 834, 844 (9th Cir. 2020). Yet Qualcomm says not a word in the SAC or in its brief about why it needs the equitable remedy of restitution on top of its request for money damages. *See* SAC ¶¶ 64-65. As for Qualcomm's request for an injunction, it contends it provided "detailed allegations" of "persistent, systematic," and "ongoing" conduct, but none of the paragraphs it cites say anything about persistent or ongoing conduct. Opp. 11 (citing SAC ¶¶ 137, 139, 144, 207). Even if they had, the SAC does not "*explain why* money damages are not [] adequate." *In re ZF-*

4

*TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 769 (C.D. Cal. 2022) (emp. added); *Reese v. Wal-Mart Assocs.*, 2025 WL 472721, at *8 (E.D. Cal. Feb. 12, 2025). Qualcomm does not address *ZF-TRW* or *Reese* in its brief, instead relying on two cases that do not address the *Sonner* standard or a plaintiff's obligation to plead no adequate remedy exists. *See* Opp. 11. Nor does Qualcomm make any effort to distinguish this case from the arguments it successfully advanced to dismiss the UCL claim in *Key v. Qualcomm*, 129 F.4th 1129, 1142 (9th Cir. 2025).

Qualcomm's representation that it seeks "tailored relief" that enjoins only the unfair acts described in the SAC concedes away its Article III standing to pursue an injunction based on Arm sending the Breach Letter to Qualcomm, allegedly sharing that letter with the media, or Arm's alleged communications with Qualcomm's customers. Opp. 12. Those are backward-looking allegations unsupported by "any real or immediate threat that [Qualcomm] will be wronged again" by similar communications. *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). This is not a "breadth of a potential remedy" (Opp. 12) problem, but a failure to allege an Article III injury-in-fact.

The second problem with Qualcomm's UCL theory is that it does not allege any conduct that "violate[s] the letter, policy, or spirit of federal or state antitrust law." *Key*, 129 F.4th at 1141. Qualcomm in several places asserts that Arm breached its contracts with Qualcomm (SAC ¶¶ 204, 206-207), but Qualcomm does not contest that corporate plaintiffs may not turn contract claims into UCL violations. *See* Mot. 11-12. Those allegations must be dismissed for that reason alone.

Qualcomm's assertion that Arm "has cut off or threatened to cut off Qualcomm's access to necessary IP" fails to state an actionable refusal to deal. Opp. 14. Qualcomm admits it has not alleged Arm is a monopolist, yet there is no refusal-to-deal liability "in the absence of any purpose to create or maintain a monopoly." *United States v. Colgate*, 250 U.S. 300, 307 (1919); *Verizon Commc'ns v. Trinko*, 540 U.S. 398, 408 (2004). That is reason enough to dismiss the UCL claim,

5

**A0407**

but even if Qualcomm plausibly alleged Arm has monopoly power, a monopolist "as a general matter … can refuse to deal with" others. *Eastman Kodak v. Image Tech. Servs.*, 504 U.S. 451, 482-83 n.32 (1992). A rare exception exists where ending a course of dealing would "forsake short-term profits" and is "irrational but for its anticompetitive effect." *Novell v. Microsoft*, 731 F.3d 1064, 1075 (10th Cir. 2013). Qualcomm alleges the opposite, asserting that Arm seeks to maximize its profits. SAC ¶¶ 68-72. The alleged decision to change the licensing terms for "intellectual property rights" or to no longer license those rights "is a presumptively rational business justification for a unilateral refusal to deal" anyway. *SolidFX v. Jeppesen Sanderson*, 841 F.3d 827, 841-42 (10th Cir. 2016). This case is thus indistinguishable from *Novell*, which held Microsoft's decision to no longer give Novell access to its protocols "is protected by the antitrust laws." 731 F.3d at 1074. Such protected conduct is not actionable under the UCL. Mot. 12.

Neither is Qualcomm's "open early, closed late" theory. Opp. 13. As Qualcomm's cases acknowledge, that theory again requires establishing Arm's "monopoly power." *10x Genomics v. Vizgen*, 681 F. Supp. 3d 252, 267-68 (D. Del. 2023). But Qualcomm deleted from the SAC the allegation that Arm "leverage[d] its monopoly" and has not plead facts necessary to show Arm has monopoly power in a properly defined market. *Compare* FAC ¶ 156, *with* SAC ¶ 207. Regardless of whether the UCL always requires establishing the relevant market in which Arm's conduct allegedly threatens competition (and it does, *see* Mot. 13), such allegations are necessary when the theory of unfair competition depends on Arm exercising monopoly power.

Qualcomm cannot sidestep these pleading problems by asserting that the more forgiving balancing test also applies. It is Qualcomm—not Arm—that "confuses the legal standards that govern UCL claims." Opp. 13. In suits between sophisticated companies, the tethering test applies regardless of whether the companies are "direct competitors." *In re Qualcomm Litig.*, 2017 WL

6

5985598, at \*7 (S.D. Cal. Nov. 8, 2017). The balancing test thus has no role to play here, and Qualcomm cannot use that test to defend its UCL claim that Arm "leaked the Breach Letter to the media" and made statements about ongoing litigation "to Qualcomm's customers." SAC ¶¶ 206-207. Qualcomm has no argument this implicates the antitrust laws as the tethering test requires.

### B. Qualcomm's Tortious Interference Claims Fail (Count IV-V).

It is now common ground that Qualcomm's tortious interference claims depend on Qualcomm plausibly alleging that Arm's conduct "violates the UCL's 'unfair' prong." Opp. 16. Because Qualcomm has no viable UCL claim, its tortious interference claims must be dismissed.

## III.   QUALCOMM'S TLA CONTRACT CLAIMS SHOULD BE DISMISSED.

### A.   Qualcomm Fails To Allege A Breach Of ▮▮▮ (Count VII).

Qualcomm justifies the threadbare allegations supporting its claim that Arm breached ▮▮▮ of the TLA based on a watered-down pleading standard that *Twombly* and *Iqbal* eliminated. The SAC offers a one-sentence allegation that the terms Arm offered to renew the license for the ▮▮▮▮▮▮▮▮ in 2024 ▮▮▮▮▮▮▮▮ ▮▮▮ (SAC ¶¶ 117, 215), but offers no factual allegations to support that conclusion. Qualcomm does not even explain how ▮▮▮ could apply ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ Regardless, the allegation that Arm supposedly requested "fees and royalty rates nearly five times as high as those" the parties "agreed to in 2019" (Opp. 17) is no substitute for allegations that Arm offered Qualcomm fees and rates ▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ D.I. 233 Ex. 1 ("TLA") ▮▮▮ It is no answer that the terms of Arm's licenses with third parties "are confidential." Opp. 17. Rule 8 has no exception for facts a plaintiff cannot access, *see Costa v. Whirlpool*, 2025

7

WL 885245, at *11 (D. Del. Mar. 21, 2025); *Accenture v. Guidewire Software*, 581 F. Supp. 2d 654, 665 (D. Del. 2008), which is why Qualcomm does not cite a single case supporting its position. The threshold requirement of "a short and plain statement … showing that the pleader is entitled to relief" requires more than conclusions. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Qualcomm needed to allege "enough facts to state a claim to relief that is plausible on its face," yet it failed to do so. *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007).

Qualcomm cannot overcome this pleading problem by labeling Arm's offer "exorbitant." SAC ¶¶ 118, 216. Although Qualcomm contends California law reads into every contract an implied duty to exercise discretionary power in good faith (Opp. 17), ███████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████. Nothing more. And ████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ███████████████████████████████████████. *See* TLA ████.

The implied covenant and implied duties thus have no role to play here. "Nothing in the duty of good faith requires that parties to a negotiation propose only such terms as the other party is happy with." *Warner Theatre Assocs. v. Metro. Life Ins.*, 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997). Moreover, accepting a constructive-refusal-to-offer theory under the implied covenant would rewrite the agreement to ███████████████████████████████ ██████████████████████████████████████████████. *See* TLA ████ SAC ¶¶ 118, 125-127, 219. The implied covenant does not exist to "create obligations" or remedies "not contemplated in the contract." *Racine & Laramie v. Dep't of Parks & Rec.*, 11 Cal.

8

App. 4th 1026, 1032 (1992). Qualcomm has no response to this well-established principle.

> **B.    Qualcomm Fails To Allege A Breach Of ▆▆▆ (Count VIII).**

Qualcomm similarly defends its claim that Arm breached ▆▆▆ of the Qualcomm ALA by asserting it is not required to plead any facts in support of that claim. The Supreme Court rejected that argument in *Ashcroft v. Iqbal*, holding that "naked assertions devoid of further factual enhancement" fail to state a claim. 556 U.S. at 678 (cleaned up). Qualcomm's only response is that identifying the material non-financial terms Arm supposedly changed is a "superfluous detail." Opp. 18. The facts necessary to make a claim plausible are not superfluous.

## IV.    THE IMPLIED COVENANT CLAIM SHOULD BE DISMISSED (COUNT III).

Qualcomm's defense of its new implied covenant theories underscores why those theories fail under *Lamke v. Sunstate Equip.*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004), and *Guz v. Bechtel Nat'l*, 24 Cal. 4th 317, 327 (2000). Start with Qualcomm's theory that Arm breached the implied covenant by not offering Qualcomm a license to the v10 architecture. *See* SAC ¶¶ 128-133, 184. Qualcomm concedes it does not allege that Arm breached ▆▆▆ of the ALA, ▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆ It instead asserts there is nothing wrong with stacking an implied good-faith obligation ▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆. Neither of the cases it cites endorse that view. Qualcomm's v10 allegations are instead governed by the rule that "where an implied covenant claim alleges a breach of obligations beyond the agreement's actual terms, it is invalid." *Guz*, 24 Cal. 4th at 327.

Qualcomm waited too long to assert that Arm failed to negotiate in good faith. Contrary to Qualcomm's arguments, the "face of the complaint" shows Qualcomm's v10 allegations "ha[ve] not been brought within the statute of limitations." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015). Qualcomm alleges Arm breached the implied covenant by not responding to a May 20,

2020, email requesting a license to v10, but Qualcomm did not assert its claim until March 2025. That is far outside the three-year statute of limitations. *See* 10 Del. C. § 8106. It makes no difference that "the SAC does not allege when that failure to respond ripened into bad faith." Opp. 20. If that fact is necessary to determine when the statute of limitations applies, it is equally necessary to plead a viable claim to survive a motion to dismiss. Nor can Qualcomm hide behind its unpled fraudulent concealment argument. Opp. 20. The SAC nowhere alleges that Arm "lied to Qualcomm in April 2020" (*id.*), and even if Qualcomm had included that allegation, the alleged lack of response to the May 2020 email would have put it on inquiry notice. *See Bocock v. Innovate*, 2022 WL 15800273, at *11-12 (Del. Ch. Oct. 28, 2022). Qualcomm's v10-related theories under the implied covenant and UCL are time-barred.

That leaves the allegation that Arm breached the implied covenant by "fail[ing] to provide licensing proposals for ▮▮▮▮▮▮▮▮▮▮ to Qualcomm in violation of provisions of the QC TLA." SAC ¶ 184. Qualcomm does not say a word in defense of that allegation, which is duplicative of its breach claims. *See* SAC ¶¶ 213-226. Instead, Qualcomm invents two new theories that it did not plead: (1) that Arm allegedly ▮▮▮▮▮▮▮▮▮▮ and (2) that Arm sought to deprive Qualcomm of the benefits of the TLA. Opp. 20. But Qualcomm admits there is ▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.*); Qualcomm cannot impose that duty through the implied covenant. *Lamke*, 387 F. Supp. 2d at 1047. It likewise cannot fit this case within the narrow exception for a bad-faith exercise of a contractual right as a pretext to deny Qualcomm an expressly contemplated benefit under the contract. *Guz*, 24 Cal. 4th at 353 n.18. There is no allegation that Arm did the licensing equivalent of firing an at-will employee to avoid paying a bonus. *See id.*

## CONCLUSION

The Court should dismiss with prejudice Counts III-VIII.

Dated: July 8, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
gregg.locascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650)813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Anne Shea Gaza
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

11

**A0413**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 8, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A0414**

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 20, 2026, upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Daniel G. Mackrides, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO  80202<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Sydney D. Gaskins, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd., Suite 6000<br>Los Angeles, CA  90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Alexandra Corrinne Hottenrott, Esquire<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, NY  10019<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Daralyn J. Durie, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA  94105<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

Lydia B. Cash, Esquire                                              *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                             *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                               *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                                         *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*


                                        */s/ Jennifer Ying*
                                        _____
                                        Jennifer Ying (#5550)

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 27, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                  *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                              *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Sydney D. Gaskins, Esquire                               *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Alexandra Corrinne Hottenrott, Esquire                   *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

2

Lydia B. Cash, Esquire
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Jay Emerick, Esquire
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Peter Evangelatos, Esquire
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

2