Originally Filed:  February 20, 2026
Redacted Version Filed:  February 27, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>    a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>    a Delaware corporation,<br><br>                          Plaintiffs,<br><br>        v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>    a U.K. corporation,<br><br>                          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | REDACTED - PUBLIC VERSION<br><br>C.A. No. 24-490 (MN)<br>(CONSOLIDATED)<br><br>▮▮▮▮▮▮▮▮▮▮<br>▮▮ |

**APPENDIX TO PLAINTIFFS' PARTIAL OBJECTIONS TO THE SPECIAL MASTER'S FEBRUARY 6, 2026 ORDER (D.I. 629) DENYING PLAINTIFFS' MOTION TO <u>COMPEL (D.I. 375) (Vol. 2: A416-A817)</u>**

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007
(202) 240-2900

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

February 20, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

| Document | Page Range/D.I. # |
|---|---|
| Plaintiffs' Motion to Compel | D.I. 375 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 11, 2025) | A0001-A0007 |
| Qualcomm Exhibit 1 – Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's First Set of Requests for Production (Nos. 1-52) (June 17, 2025) | A0008-A0074 |
| Qualcomm Exhibit 8 – Defendant Arm Holdings PLC's Objections and Responses to Plaintiffs' Notice of 30(b)(6) Deposition (June 19, 2025) | A0075-A0123 |
| Qualcomm Exhibit 10 – Arm's First Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11) (July 11, 2025) | A0124-A0193 |
| Qualcomm Exhibit 11 – QCVARM_0526828 (Oct. 24, 2024) | A0194-A0197 |
| Qualcomm Exhibit 24 – Arm's First Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11) Excerpt (July 11, 2025) | A0198-A0215 |
| Qualcomm Exhibit 25 – Deposition of Jeffrey M. Fonseca Excerpt (July 9, 2025) | A0216-A0222 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Supplemental Letter to Special Master Helena C. Rychlicki Regarding Scope of Discovery (Aug. 18, 2025) | A0223-A0227 |
| Qualcomm Exhibit 1 – Letter from S. Collins to A. Chaplin (Oct. 23, 2024) | A0228-A0230 |
| Qualcomm Exhibit 2 – Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7, 2025) | A0231-A0239 |
| Qualcomm Exhibit 4 – Qualcomm's Second Set of Requests for Production (Nos. 53-120) Excerpt (Feb. 21, 2025) | A0240-A0250 |

| | |
|---|---|
| Qualcomm Exhibit 5 – Qualcomm's Fourth Set of Requests for Production (Nos. 157-168) Excerpt (Apr. 16, 2025) | A0251-A0257 |
| Qualcomm Exhibit 8 – Plaintiffs' Responses and Objections to Arm Ltd.'s First Notice of Deposition of Qualcomm Inc. and Qualcomm Technologies, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6) Excerpt (June 23, 2025) | A0258-A0274 |
| Qualcomm Exhibit 9 – Deposition of Jonathan Weiser Excerpt (July 11, 2025) | A0275-A0278 |
| Qualcomm Exhibit 10 – Deposition of Larissa Cochron Excerpt (July 11, 2025) | A0279-A0281 |
| Qualcomm Exhibit 11 – Deposition of Ann Nathalie Cathcart Chaplin Excerpt (July 11, 2025) | A0282-A0285 |
| Qualcomm Exhibit 12 – Deposition of Kurt Wolf Excerpt (June 25, 2025) | A0286-A0288 |
| Qualcomm Exhibit 13 – Deposition of Manju Varma Excerpt (June 24, 2025) | A0289-A0291 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendant Arm Holdings PLC's Supplement to Arm's Motion to Strike and Compel (D.I. 378) and Opposition to Qualcomm's August 11 Letter Brief to Special Master Rychlicki (Aug. 18, 2025) | A0292-A0299 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Peter Evangelatos in Support of Defendant Arm Holdings PLC's Supplement to Arm's Motion to Strike and Compel (D.I. 378) and Opposition to Qualcomm's August 11 Letter Brief to Special Master Rychlicki (Aug. 18, 2025) | A0300-A0306 |
| Arm Exhibit 1 – Plaintiffs' Motion to Compel (Aug. 11, 2025) | A0307-A0323 |
| Arm Exhibit 2 – Second Amended Complaint (June 3, 2025) | A0324-A0394 |
| Arm Exhibit 3 – Arm's Reply Brief in Support of its Partial Motion to Dismiss Qualcomm's Second Amended Complaint (July 8, 2025) | A0395-A0415 |
| Arm Exhibit 4 – Qualcomm's Answering Brief in Opposition to Arm's Motion to Dismiss the Second Amended Complaint (July 1, 2025) | A0416-A0448 |
| Arm Exhibit 5 – ARM_00103918 (May 30, 2013) | A0449-A0504 |

iii

| | |
|---|---|
| Arm Exhibit 6 – Plaintiffs' First Supplemental Responses and Objections to Defendant's Third Set of Interrogatories (Nos. 14-24) (Aug. 8, 2025) | A0505-A0573 |
| Arm Exhibit 7 – Plaintiffs' Responses and Objections to Defendant's Fifth Set of Requests for Production (Nos. 228-287) (July 11, 2025) | A0574-A0626 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Special Master Hearing Transcript (Aug. 22, 2025) | A0627-A0702 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Newly-Learned Facts and Subsequent Events (Sept. 15, 2025) | A0703-A0705 |
| Qualcomm Exhibit 1 – Special Master Hearing Transcript Excerpt (Aug. 14, 2025) | A0706-A0708 |
| Qualcomm Exhibit 2 – Special Master Hearing Transcript Excerpt (Aug. 22, 2025) | A0709-A0712 |
| Qualcomm Exhibit 3 – Email from A. Basner to P. Evangelatos et al. re: RE: Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): RFPs (Sept. 14, 2025) | A0713-A0722 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendant Arm Holdings PLC's Response to Qualcomm's September 15, 2025 Letter to Special Master Rychlicki (Sept. 19, 2025) | A0723-A0728 |
| Arm Exhibit 1 – Meet and Confer Transcript Excerpt (July 30, 2025) | A0729-A0733 |
| Arm Exhibit 2 – Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A0734-A0741 |
| Arm Exhibit 3 – Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7, 2025) | A0742-A0750 |
| Arm Exhibit 4 – Meet and Confer Transcript Excerpt (Sept. 15, 2025) | A0751-A0758 |
| Arm Exhibit 5 – Email from C. Nyarady to A. Janes et al. re: Qualcomm v. Arm – Meet and Confer (Aug. 29, 2025) | A0759-A0774 |
| Arm Exhibit 6 – Meet and Confer Transcript Excerpt (July 28, 2025) | A0775-A0778 |

iv

| | |
|---|---|
| Arm Exhibit 7 – Email from J. Emerick to C. Nyarady et al. re: Qualcomm v. Arm – Meet and Confer (Sept. 10, 2025) | A0779-A0795 |
| Arm Exhibit 8 – Defendant Arm Holdings PLC's Supplement to Arm's Motion to Strike and Compel (D.I. 378) and Opposition to Qualcomm's August 11 Letter Brief to Special Master Rychlicki (Aug. 18, 2025) | A0796-A0804 |
| Arm Exhibit 9 – Defendant Arm Holdings PLC's Letter Brief to Special Master Rychlicki (Aug. 1, 2025) | A0805-A0812 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Subsequent Events Relating to Their Motion to Compel Production of Third-Party Arm Licenses and Related Agreements (Oct. 17, 2025) | A0813-A0817 |
| Qualcomm Exhibit 1 – ARMQC_02798040 (Sept. 8, 2023) | A0818-A0835 |
| Qualcomm Exhibit 2 – ARMQC_02789082 (Feb. 1, 2022) | A0836-A0880 |
| Qualcomm Exhibit 3 – ARMQC_02797972 (June 10, 2024) | A0881-A0892 |
| Qualcomm Exhibit 4 – Email from J. Hartley to P. Evangelatos et al. re: Qualcomm v. Arm – Third Party Agreements (Oct. 16, 2025) | A0893-A0899 |
| Qualcomm Exhibit 5 – ARMQC_02797778 (Dec. 16, 2021) | A0900-A1065 |
| Qualcomm Exhibit 6 – Meet and Confer Transcript (Oct. 10, 2025) | A1066-A1073 |
| Qualcomm Exhibit 7 – Email from A. Basner to P. Evangelatos re: Qualcomm v. Arm, Case No. 1:24-cv-490 (Oct. 15, 2025) | A1074-A1078 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Subsequent Events Relating to Their Motion to Compel Production of Arm's Analysis of Third-Party Licenses (Oct. 17, 2025) | A1079-A1081 |
| Qualcomm Exhibit 1 – Plaintiffs Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A1082-A1089 |
| Qualcomm Exhibit 2 – Deposition of Akshay Bhatnagar Excerpt (July 10, 2025) | A1090-A1093 |

v

| | |
|---|---|
| Qualcomm Exhibit 3 – Letter from C. Nyarady to P. Evangelatos (July 11, 2025) | A1094-A1096 |
| Qualcomm Exhibit 4 – Letter from C. Nyarady to J. Emerick (July 16, 2025) | A1097-A1103 |
| Qualcomm Exhibit 5 – Letter from J. Emerick to C. Nyarady (July 24, 2025) | A1104-A1112 |
| Qualcomm Exhibit 6 – Meet and Confer Transcript Excerpt (July 28, 2025) | A1113-A1116 |
| Qualcomm Exhibit 7 – Special Master Hearing Transcript Excerpt (Aug. 14, 2025) | A1117-A1121 |
| Qualcomm Exhibit 8 – Letter from P. Evangelatos to C. Nyarady (Oct. 16, 2025) | A1122-A1126 |
| Qualcomm Exhibit 9 – Email from J. Hartley re: Qualcomm v. Arm – Production of Spreadsheet (Oct. 6, 2025) | A1127-A1129 |
| Qualcomm Exhibit 10 – Meet and Confer Transcript Excerpt (Oct. 10, 2025) | A1130-A1133 |
| Qualcomm Exhibit 11 – Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Subsequent Events Relating to Their Motion to Compel Production of Third-Party Arm Licenses and Related Agreements (Oct. 17, 2025) | A1134-A1139 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendant Arm Holdings PLC's Response to Qualcomm's October 17, 2025 Letters (Nov. 7, 2025) | A1140-A1145 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Peter Evangelatos in Support of Defendant Arm Holdings PLC's Response to Qualcomm's October 17, 2025 Letters (Nov. 7, 2025) | A1146-A1149 |
| Arm Exhibit 1 – Letter from A. Gaza to the Honorable Sherry R. Fallon re: *Qualcomm Inc., et al. v. Arm Holdings Plc.,* C.A. No. 24-490 (MN) (Mar. 13, 2025) | A1150-A1237 |
| Arm Exhibit 2 – Qualcomm's Letter to the Honorable Sherry R. Fallon in Response to Arm's Letter Regarding Discovery Dispute (D.I. 68) (Mar. 14, 2025) | A1238-A1264 |

| | |
|---|---|
| Arm Exhibit 3 – Deposition of Akshay Bhatnagar Excerpt (July 10, 2025) | A1265-A1269 |
| Arm Exhibit 4 – Deposition of Karthik Shivashankar Excerpt (June 20, 2025) | A1270-A1277 |
| Arm Exhibit 5 – Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7, 2025) | A1278-A1286 |
| Arm Exhibit 6 – Email from J. Hartley re: Qualcomm v. Arm – Third Party Agreements (Sept. 24, 2025) | A1287-A1289 |
| Arm Exhibit 7 – Defendant Arm Holdings PLC's Response to Qualcomm's September 15, 2025 Letter to Special Master Rychlicki (Sept. 19, 2025) | A1290-A1296 |
| Arm Exhibit 8 – Notice of Electronic Filing of D.I. 74 (Mar. 17, 2025) | A1297-A1300 |
| Arm Exhibit 9 – Stipulated Protective Order (Mar. 21, 2025) | A1301-A1342 |
| Qualcomm's Motion to Compel (Aug. 1, 2025) Exhibit 35 – Letter from N. Fung to C. Nyarady (Mar. 19, 2025) | A1343-A1348 |

# Exhibit 4

A0416

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation; and
QUALCOMM TECHNOLOGIES, INC.,
  a Delaware corporation,

           Plaintiffs,

      v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
  a U.K. corporation,

           Defendant.

C.A. No. 24-490 (MN)

**QUALCOMM'S ANSWERING BRIEF IN OPPOSITION TO ARM'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

OF COUNSEL:

Catherine Nyarady
Erin J. Morgan
S. Conrad Scott
Jacob A. Braly
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 2004
(202) 240-2901

July 1, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

I.    NATURE AND STAGE OF PROCEEDINGS ................................................... 1

II.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................... 1

III.  STATEMENT OF FACTS ................................................................................ 3

    A.    Factual Background ................................................................................ 3

    B.    Procedural History ................................................................................. 4

IV.   ARGUMENT ................................................................................................... 4

    A.    None of Arm's Grab-Bag of Litigation-Related Privileges Immunizes Arm from Liability in Connection with Counts III-VI ................................... 4

        1.    *Noerr-Pennington* cannot justify dismissal of any claim in the SAC ......... 5

        2.    Arm's cursory arguments about the litigation privilege and Anti-SLAPP law fail for similar reasons ........................................................... 10

    B.    Arm Offers No Basis for Dismissing Qualcomm's Meritorious UCL Claim ................................................................................................. 11

        1.    There is no procedural obstacle to the UCL claim ................................. 11

        2.    The SAC states a UCL claim .............................................................. 12

    C.    The SAC States Viable Claims for Tortious Interference ................................. 16

    D.    Arm Offers No Valid Reason for Dismissing Qualcomm's TLA Claims ............ 16

        1.    Qualcomm Has Stated a Claim for Breach of ▮▮▮ (Count VII) ........... 16

        2.    Qualcomm Has Stated a Claim for Breach of ▮▮▮ (Count VIII) ......... 18

    E.    Arm's Attempt to Narrow Qualcomm's Implied Covenant Claim (Count III) Fails .................................................................................. 19

V.    CONCLUSION ................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*10x Genomics, Inc.* v. *Vizgen, Inc.*,
  681 F. Supp. 3d 252 (D. Del. 2023)..................................................................9, 13, 15

*Aesha* v. *State Farm Gen. Ins. Co.*,
  2024 WL 5410447 (C.D. Cal. July 30, 2024)...............................................................12

*Argentieri* v. *Zuckerberg*,
  214 Cal. Rptr. 3d 358 (Ct. App. 2017) ...................................................................10

*Arista Networks, Inc.* v. *Cisco Sys., Inc.*,
  2018 WL 11230167 (N.D. Cal. May 21, 2018) ............................................................8

*Aspen Skiing Co.* v. *Aspen Highlands Skiing Corp.*,
  472 U.S. 585 (1985).......................................................................................14, 15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...........................................................................................19

*Beverage* v. *Apple Inc.*,
  320 Cal. Rtpr. 3d 427 (Cal. Ct. App. 2024).............................................................15

*Brehm* v. *21st Century Ins. Co.*,
  83 Cal. Rptr. 3d 410 (Ct. App. 2008) ...............................................................18, 19

*Broughty* v. *Bouzy*,
  2023 WL 5013654 (D.N.J. Aug. 7, 2023) ................................................................10

*Castaline* v. *Aaron Mueller Arts*,
  2010 WL 583944 (N.D. Cal. Feb. 16, 2010) ...........................................................5, 9

*Cel-Tech Commc'ns* v. *L.A. Cellular*,
  973 P.2d 5272 (Cal. 1999) .......................................................................12, 13, 15

*Celador Int'l Ltd.* v. *Walt Disney Co.*,
  347 F. Supp. 2d 846 (C.D. Cal. 2004) ...................................................................20

*CFTC* v. *Traders Glob. Grp.*,
  2023 WL 7545316 (D.N.J. Nov. 14, 2023) ...............................................................11

*Chavez* v. *Whirlpool Corp.*,
  113 Cal. Rptr. 2d 175 (Ct. App. 2001) ...................................................................15

*Cheminor Drugs, Ltd.* v. *Ethyl Corp.*,
  168 F.3d 119 (3d Cir. 1999)..............................................................................5, 7, 9

**A0419**

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Clemens* v. *ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022) ...................................................................................12

*Comunale* v. *Traders & Gen. Ins. Co.*,
328 P.2d 198 (Cal. 1958) ......................................................................................19

*Constr. Cost Data, LLC* v. *Gordian Group, LLC*,
2017 WL 2266993 (S.D. Tex. Apr. 24, 2017) .........................................................7

*ConsumerDirect, Inc.* v. *Pentius, LLC*,
2022 WL 16949657 (C.D. Cal. Aug. 25, 2022)......................................................14

*CRST Van Expedited, Inc.* v. *Werner Enters.*,
479 F.3d 1099 (9th Cir. 2007) .........................................................................13, 16

*Cunningham* v. *Cornell Univ.*,
145 S. Ct. 1020 (2025)..............................................................................................8

*Daly* v. *United Healthcare Ins. Co.*,
2010 WL 4510911 (N.D. Cal. Nov. 1, 2010) .........................................................18

*Drum* v. *San Fernando Valley Bar Ass'n*,
106 Cal. Rptr. 3d 46 (Ct. App. 2010) ....................................................................15

*Eastman Kodak Co.* v. *Image Tech. Servs., Inc.*,
504 U.S. 451 (1992)..........................................................................................14, 15

*Energy Conversation, Inc.* v. *Heliodyne, Inc.*,
698 F.2d 386 (9th Cir. 1983) ...................................................................................9

*Epic Games, Inc.* v. *Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) .................................................................2, 13, 15, 16

*FTC* v. *Shire ViroPharma Inc.*,
2018 WL 1401329 (D. Del. Mar. 20, 2018) .............................................................8

*Golden Eye Media USA, Inc.* v. *Trolley Bags UK Ltd.*,
525 F. Supp. 3d 1145 (S.D. Cal. 2021)..................................................................6, 7

*Harm* v. *Frasher*,
5 Cal. Rptr. 367 (Ct. App. 1960)............................................................................19

*hiQ Labs, Inc.* v. *LinkedIn Corp.*,
273 F. Supp. 3d 1099 (N.D. Cal. 2017) ..................................................................14

iii

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011)................................................................12

*Kearney* v. *Foley & Lardner, LLP*,
    590 F.3d 644 (9th Cir. 2009) .........................................................................5

*Kendall* v. *Ernest Pestana, Inc.*,
    709 P.2d 837 (Cal. 1985) ...........................................................................17

*Key* v. *Qualcomm Inc.*,
    129 F.4th 1129 (9th Cir. 2025) ....................................................................12

*Korea Supply Co.* v. *Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003) ............................................................................16

*L. Offs. of Curtis* V. *Trinko, LLP*,
    540 U.S. 398 (2004)..................................................................................14

*La Liberte* v. *Reid*,
    966 F.3d 79 (2d Cir. 2020)..........................................................................10

*Laitram Machinery, Inc.* v. *Carnitech A/S*,
    901 F. Supp. 1155 (E.D. La. 1995)...................................................................7

*LGM Holdings, LLC* v. *Schurder*,
    2025 WL 1162999 (Del. April 22, 2025) ...........................................................20

*Linear Tech. Corp.* v. *Applied Materials, Inc.*,
    61 Cal. Rptr. 3d 221 (App. 2007) ..................................................................12

*Lord Abbett Affiliated Fund* v. *Navient Corp.*,
    2020 WL 5026553 (D. Del. Aug. 25, 2020) .........................................................13

*LY Berditchev, Corp.* v. *Truss Cosmetics, Corp.*,
    2023 WL 334539 (D.N.J. Jan. 20, 2023)..............................................................7

*Microsoft Corp.* v. *Motorola, Inc.*,
    795 F.3d 1024 (9th Cir. 2015) .......................................................................6

*Microsoft Mobile Inc.* v. *Interdigital, Inc.*,
    2016 WL 1464545 (D. Del. Apr. 13, 2016)...........................................................9

*Navellier* v. *Sletten*,
    52 P.3d 703 (Cal. 2002) ............................................................................10

A0421

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Nuance Commc'ns* v. *MModal LLC*,
2018 WL 6804488 (D. Del. Dec. 27, 2018), *report and recommendation adopted,* 2019 WL 181322 (D. Del. Jan. 11, 2019) ...................................................8

*Overstock.com, Inc.* v. *Gradient Analytics, Inc.*,
61 Cal. Rptr. 3d 29 (Ct. App. 2007) .................................................................14

*Pac. Steel Grp.* v. *Com. Metals Co.*,
600 F. Supp. 3d 1056 (N.D. Cal. 2022) ............................................................14

*Pasadena Live* v. *City of Pasadena*,
8 Cal. Rptr. 3d 233 (Ct. App. 2004) .................................................................19

*PeopleBrowsr, Inc.* v. *Twitter*,
2013 WL 843032 (N.D. Cal. Mar. 6, 2013).......................................................13

*Peterson* v. *Glad Prods. Co.*,
2023 WL 4600404 (N.D. Cal. July 27, 2023)....................................................12

*Powertech Tech., Inc.* v. *Tessera, Inc.*,
872 F. Supp. 2d 924 (N.D. Cal. 2012) ................................................................6

*Racek* v. *Rady Children's Hospital*,
2012 WL 2947881 (Cal. Ct. App. July 20, 2012)..............................................15

*Reilly* v. *Apple, Inc.*,
578 F. Supp. 3d 1098 (N.D. Cal. 2022) .............................................................15

*Riverbed Tech., Inc.* v. *Silver Peak Sys.*,
2015 WL 12941890 (N.D. Cal. Apr. 7, 2015) .....................................................8

*Schmidt* v. *Skolas*,
770 F.3d 241 (3d Cir. 2014)..............................................................................19

*Schrader Cellars, LLC* v. *Roach*,
129 F.4th 1115 (9th Cir. 2025) ...........................................................................5

*Schwartz* v. *State Farm Fire & Cas. Co.*,
106 Cal. Rptr. 2d 523 (Ct. App. 2001) .........................................................18, 19

*Skinner* v. *Switzer*,
562 U.S. 521 (2011)...........................................................................................12

v

A0422

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Spear Pharms., Inc.* v. *William Blair & Co., LLC*,
    610 F. Supp. 2d 278 (D. Del. 2009)........................................................................6

*Sun Microsystems, Inc.* v. *Microsoft Corp.*,
    87 F. Supp. 2d 992 (N.D. Cal. Jan. 24, 2000)....................................................11, 15

*Tameny* v. *Atl. Richfield Co.*,
    610 P.2d 1330 (Cal. 1980) ......................................................................................2

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...............................................................................................13

*Thimes Sols., Inc.* v. *TP Link USA Corp.*,
    2022 WL 1125628 (9th Cir. Apr. 15, 2022) ...........................................................7

*Victaulic Co.* v. *Tieman*,
    499 F.3d 227 (3d Cir. 2007).....................................................................................5

*VMG Salsoul* v. *Birdsong*,
    2014 WL 12597111 (C.D. Cal. Sept. 11, 2014) ....................................................10

*Vox Network Solutions, Inc.* v. *Gage Technologies, Inc.*,
    2025 WL 929939 (N.D. Cal. Mar. 27, 2025)........................................................16

*W. Sugar Coop.* v. *Archer-Daniels-Midland Co.*,
    2015 WL 12683192 (C.D. Cal. Aug. 21, 2015)......................................................7

*Warren Gen. Hosp.* v. *Amgen Inc.*,
    643 F.3d 77 (3d Cir. 2011)......................................................................................7

*Wentland* v. *Wass*,
    25 Cal Rptr. 3d 109 (Ct. App. 2005) .....................................................................10

*Williams* v. *Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ...................................................................................2

*XpandOrtho, Inc.* v. *Zimmer Biomet Holdings, Inc.*,
    2022 WL 801743 (S.D. Cal. Mar. 15, 2022) ........................................................15

A0423

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

**Statutes**

Sherman Act............................................................................................................2, 16

**Rules**

Fed. R. Civ. P. 8...................................................................................................3, 17

Fed. R. Civ. P. 12(b)(6)...............................................................................................5

Cal. Code Civ. Proc. § 425.17(c) .............................................................................10

**Other Authorities**

U.S. Const. amend. I ...............................................................................................6, 8

U.S. Const. art. III ....................................................................................................12

**A0424**

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiffs ("Qualcomm") brought this contract action after Defendant ("Arm") deliberately withheld deliverables under ▓▓▓▓▓▓ of the parties' Architecture License Agreement ("ALA"). Arm moved to dismiss.  D.I. 13.[1]  That motion was denied.  D.I. 30.  Qualcomm then amended its complaint to add allegations based on Arm's ongoing interference with Qualcomm's business and competition.  D.I. 36 (the "FAC").  Arm again moved to dismiss.  D.I. 47, 48.  Qualcomm opposed the motion and, after the motion was fully briefed, sought leave to amend.  D.I. 64, 90.  The Court granted Qualcomm leave to file a Second Amended Complaint ("SAC") and denied Arm's motion to dismiss the FAC as moot.  D.I. 134 at 2-3.  Qualcomm filed the SAC, D.I. 137, which Arm again moves to dismiss, D.I. 232.

## II.    INTRODUCTION AND SUMMARY OF ARGUMENT

When granting Qualcomm leave to file the SAC, the Court noted that it could not "conclude that the amendment is futile" and that it "will look askance at any further motions to dismiss asserting failure to state a claim or compulsory counterclaim grounds."  D.I. 134 at 2.  Yet after conceding that Qualcomm's contract and implied-covenant claims based on breaches of Qualcomm's architecture license agreement ("ALA") are properly pled, Arm moves to dismiss the rest of the SAC on grounds this Court has already rejected.  Arm's motion should be denied.

***Litigation-related immunities:***  Arm attempts to escape liability for interfering with Qualcomm's customer relationships by invoking the *Noerr-Pennington* doctrine and other litigation-related privileges.  But *Noerr-Pennington* and the litigation privilege are affirmative defenses that Qualcomm is not required to anticipate and negate in its complaint.  Regardless, neither shelters communications—like Arm's leak of the Breach Letter—that violate contractual

---

[1] Citations to "D.I." refer to docket entries in this case.  Citations to "No. 1146, D.I." refer to docket entries in the "Arm Action," Civil Action No. 22-1146-MN.

1

confidentiality requirements.  The SAC's plausible allegations that Arm took groundless positions and acted in bad faith are sufficient to reject Arm's privilege arguments at this stage.  Suing Qualcomm did not give Arm *carte blanche* to smear Qualcomm to customers and in the press.

*UCL and Tortious Interference:*  This case does not present the "rare situation" in which the unfairness of Arm's business practices can be resolved on the pleadings.  *See Williams* v. *Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).  Because Qualcomm has plausibly alleged that Arm's misconduct is ongoing, prospective equitable relief is necessary even if Qualcomm can *also* recover damages for past acts of misconduct.  While Arm suggests that refusals to deal are *per se* permissible, the specific allegations in this case fit into the unique circumstances in which a refusal to deal constitutes unfair competition.  Qualcomm's claim is in any event not limited to a refusal to deal theory.  While Arm faults Qualcomm for not defining a market or pleading market power, it ignores the leading case rejecting efforts to import those and other Sherman Act requirements into the UCL.  *Epic Games, Inc.* v. *Apple, Inc.*, 67 F.4th 946, 1002 (9th Cir. 2023).

*Good Faith and Fair Dealing:*  Arm does not dispute that Qualcomm has stated an implied-covenant claim but "seeks to dismiss only Qualcomm's new allegations" that █████████ ███████████████████████████████████ or comply with its obligations under the parties' Technology License Agreement ("TLA").  Arm misunderstands the duty of good faith and fair dealing "inherent in every contract" in California.  *Tameny* v. *Atl. Richfield Co.*, 610 P.2d 1330, 1337 n.12 (Cal. 1980).  Arm is ████████████████████████ SAC ¶¶ 129-31, ███████████████████████ ████████████████████████████████████

*TLA:*  The SAC alleges in detail that when Qualcomm requested licensing offers for certain off-the-shelf cores, Arm drastically hiked fees and omitted ████████████████ from its offer.

2

Those allegations state claims that Arm violated provisions of the TLA ██████████████

████████████████████████████████████████████████████

███████    While Arm complains that Qualcomm did not load the SAC with particularized details

about other (confidential) license offers and the omitted ████████████████, it ignores that

Rule 8 does not require such particularized details.

## III.    STATEMENT OF FACTS

### A.    Factual Background

Qualcomm designs semiconductor chips that enable products including smartphones and laptops. SAC ¶¶ 38, 54. For chips containing CPUs, Qualcomm licenses technology from Arm under the ALA, which allows Qualcomm to incorporate custom CPUs compatible with Arm's instruction set architecture ("ISA") into its products. *Id.* ¶¶ 2, 43-50. Under a TLA, Qualcomm licenses Arm's off-the-shelf CPU designs and adjacent technologies ("peripheral IP"). *Id.* ¶¶ 2, 51-52.

Qualcomm has been an Arm licensee for almost ██████. *Id.* ¶ 55. That longstanding and mutually advantageous business relationship began to deteriorate after SoftBank acquired Arm in 2016. Eager to pad its financials, Arm increased fees and attempted to renegotiate contracts even as its technology grew stale. SAC ¶¶ 4-5, 52, 69-70. In an effort to escape Arm's stranglehold, Qualcomm acquired startup Nuvia Inc. ("Nuvia") and assembled a team to create innovative, high-performance custom CPUs for laptops and other devices. *Id.* ¶¶ 6, 59-62, 73.

Arm saw Qualcomm's foray into custom-core design as a threat to Arm's current revenues and plans to develop its own chips, and responded by seeking to suppress competition from Qualcomm by any means possible. SAC ¶¶ 5, 73-163. Arm filed suit in this Court (hereinafter the "Arm Action") seeking to destroy all products incorporating Nuvia technology. *Id.* ¶ 8. It also withheld essential deliverables used to verify custom CPUs, misled Qualcomm about what it was

3

**A0427**

doing, and refused ███████████████ for off-the-shelf core designs and peripheral IP. *Id.* ¶¶ 12-19, 74-94, 102-34. And to sabotage Qualcomm's customer relationships and reduce demand for Qualcomm's products, Arm (1) blitzed Qualcomm's customers with misleading letters, (2) baselessly threatened to terminate Qualcomm's ALA, *see* D.I. 36-1 (the "Breach Letter"), and (3) leaked that Breach Letter to the press in violation of ████████████████████. SAC ¶¶ 135-55. Those efforts have cost Qualcomm business opportunities. *Id.* ¶¶ 156-61.

### B.        Procedural History

Qualcomm sought to assert the ALA-based claims at issue in this Action (Counts I and II) as counterclaims in the Arm Action, but Arm successfully argued that those claims needed to be "dealt with as a separate proceeding." No. 1146, D.I. 294, 40:14-16. Qualcomm filed this action, D.I. 1, which Arm has moved to dismiss three times. *First*, Arm argued that the ALA-based claims needed to be raised in the Arm Action. D.I. 15. This Court rejected that argument. D.I. 30.[2] *Second*, after Qualcomm filed the FAC (which added claims based on Arm's escalating acts of bad-faith and unfair conduct), Arm again moved to dismiss. D.I. 47; D.I. 48. While that motion was fully briefed and pending, Qualcomm sought leave to file the SAC. D.I. 90. Arm opposed leave to file on futility and other grounds, D.I. 94 at 3, which the Court rejected, D.I. 134 at 2. *Third*, with depositions underway, Arm has once again moved to dismiss. D.I. 233.

## IV.     ARGUMENT

### A.        None of Arm's Grab-Bag of Litigation-Related Privileges Immunizes Arm from Liability in Connection with Counts III-VI.

In arguing that *Noerr-Pennington* and other immunity doctrines bar Qualcomm's implied-

---

[2] Arm misstates the record in claiming that this Court denied its first motion simply because Qualcomm intended to amend its complaint. D.I. 233 at 3-4. The Court stated that it was "not going to say that that was a compulsory counterclaim that [Qualcomm] could have brought." No. 1146, D.I. 513, 39:2-9.

covenant (Count III), tortious interference (Counts IV-V), and UCL (Count VI) claims, Arm misstates Qualcomm's claims and distorts the doctrines it invokes. Arm assumes that Qualcomm's claims are based solely on Arm's leak of the Breach Letter and communications with customers about the parties' litigation.[3] But the SAC alleges a broader scheme of bad-faith and unfair conduct by Arm that ███████████████████████, seeks to prevent Qualcomm from receiving its benefit of the agreement, and obstructs competition. *E.g.*, SAC ¶¶ 184, 192, 206. Arm cannot escape liability by hiding behind doctrines protecting conduct incidental to good-faith litigation.

> 1.    ***Noerr-Pennington* cannot justify dismissal of any claim in the SAC**.

Under the *Noerr-Pennington* Doctrine, "[a] party who petitions the government for redress generally is immune from antitrust liability," and in certain circumstances from liability for other business torts. *Cheminor Drugs, Ltd.* v. *Ethyl Corp.*, 168 F.3d 119, 122, 128-29 (3d Cir. 1999). That defense requires Arm to prove that this "lawsuit imposes a burden on petition rights" and targets "protected petitioning activity." *Kearney* v. *Foley & Lardner, LLP*, 590 F.3d 644 (9th Cir. 2009). Because *Noerr-Pennington* is an affirmative defense, *Schrader Cellars, LLC* v. *Roach*, 129 F.4th 1115, 1125 n.12 (9th Cir. 2025), it is not grounds for a Rule 12(b)(6) dismissal unless it "appears on [the complaint's] face." *Victaulic Co.* v. *Tieman*, 499 F.3d 227, 234 (3d Cir. 2007). Arm cannot show that, on the face of the SAC, *Noerr-Pennington* bars any theory of liability—let alone *all*, as would be required to dismiss Qualcomm's claims. *See Castaline* v. *Aaron Mueller Arts*, 2010 WL 583944, at *4 (N.D. Cal. Feb. 16, 2010).

---

[3] Although Arm repeatedly refers to the "alleged" leak of the Breach Letter (*e.g.*, D.I. 233 at 4, 6, 8), Arm admits that it revealed the Breach Letter to Bloomberg, D.I. 191 at 209.

*First*, *Noerr-Pennington* is inapplicable because Arm ██████████████ ██████████████ by disclosing terms and conditions of the Qualcomm ALA to third parties. *Noerr-Pennington* "does not... immunize a party from actions that amount to a breach of contract," *Microsoft Corp.* v. *Motorola, Inc.*, 795 F.3d 1024, 1047 (9th Cir. 2015), because, by undertaking to "comply with [a] contract," the party "waive[s]" that privilege, *Powertech Tech., Inc.* v. *Tessera, Inc.*, 872 F. Supp. 2d 924, 932 (N.D. Cal. 2012); *see also Spear Pharms., Inc.* v. *William Blair & Co., LLC*, 610 F. Supp. 2d 278, 288 (D. Del. 2009) ("violation of a confidentiality agreement... is not protected by the First Amendment"). ██████████████████ ████████████████████████████ that do not include unauthorized disclosures to the media and customers. D.I. 23-1 at ██████. Although Qualcomm previously pointed out this problem in Arm's argument, D.I. 64 at 11, 18, Arm still has no answer to it.

*Second*, Arm fails to show it engaged in legitimate petitioning activity by misleading and threatening Qualcomm's customers and then leaking to the press a confidential notice purporting to declare Qualcomm in material breach of its ████████ ALA. SAC ¶ 192. Qualcomm's customers and Bloomberg are not "part of the government," so "there is no constitutionally protected right to 'petition' [them] for a redress of grievances." *Golden Eye Media USA, Inc.* v. *Trolley Bags UK Ltd.*, 525 F. Supp. 3d 1145, 1241 (S.D. Cal. 2021). Nor does the SAC allege that Arm's customer communications or leak of the Breach Letter were "incidental" to protected conduct, as would be required for *Noerr-Pennington* to apply at the motion-to-dismiss stage. *See* D.I. 233 at 5. Instead, the SAC plausibly alleges that those communications were bad-faith attempts to harm Qualcomm, which precludes dismissal at this stage. SAC ¶¶ 1, 29, 34.

*The Customer Communications*: Qualcomm's tortious interference claims are not limited to the letters Arm sent Qualcomm's customers, but also encompass other misconduct—i.e.,

6

**A0430**

"misrepresenting the terms of Qualcomm's licenses with Arm to Qualcomm's customers"—wholly unrelated to petitioning activity. SAC ¶ 9. And as to those letters, Arm fails to explain how sending admittedly "confusing" and "misleading" letters to Qualcomm's customers was "incidental to valid efforts" to "prosecut[e]" any action. *W. Sugar Coop.* v. *Archer-Daniels-Midland Co.*, 2015 WL 12683192, at *6 (C.D. Cal. Aug. 21, 2015). While Arm compares those letters to settlement demands, D.I. 233 at 7, the letters demanded nothing from Qualcomm's customers, nor has Arm pursued such litigation. Courts have rejected arguments that *Noerr-Pennington* protects analogous letters to a business's customers complaining that the business may be dealing in infringing products. *E.g.*, *Laitram Machinery, Inc.* v. *Carnitech A/S*, 901 F. Supp. 1155, 1161 (E.D. La. 1995) ("The *Noerr-Pennington* doctrine does not extend to sending letters to a competitor's customers alleging violation of trade secrets and infringement of patents").[4]

*The Breach Letter*: The SAC's allegations that the Breach Letter was baseless and leaked to interfere with Qualcomm's business, SAC ¶¶ 144-61, are sufficient to preclude dismissal on *Noerr-Pennington* grounds. *See Cheminor Drugs*, 168 F.3d at 122 (no immunity for a "mere sham to cover what [was] actually nothing more than an attempt to interfere directly with … business relationships"). Arm's attempt to analogize its direct communications with Qualcomm customers and leak of the Breach Letter to press releases intended to "publicize [Arm's] litigating position" and "provid[e] [Arm's] view of the case to … customers," D.I. 233 at 6, is also inapt. The Breach Letter referred to the Arm Action only in passing and focused instead on unsupported claims that Qualcomm had breached *its* ALA—claims that Arm was not pursuing in the Arm Action. D.I. 36-

---

[4] *See also Thimes Sols., Inc.* v. *TP Link USA Corp.*, 2022 WL 1125628, at *1-2 (9th Cir. Apr. 15, 2022); *Golden Eye Media USA, Inc.*, 525 F. Supp. 3d 1145, 1175-76, 1239-41; *LY Berditchev, Corp.* v. *Truss Cosmetics, Corp.*, 2023 WL 334539, at *9 (D.N.J. Jan. 20, 2023); *Constr. Cost Data, LLC* v. *Gordian Group, LLC*, 2017 WL 2266993, at *7 n.5 (S.D. Tex. Apr. 24, 2017).

7

1. Viewed "in the light most favorable to [Qualcomm]," *Warren Gen. Hosp.* v. *Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011), the Breach Letter was nothing like a press release regarding pending litigation.

Even if the Breach Letter were akin to a press release about the litigation, that would not support *Noerr-Pennington* immunity. While presuit settlement demands are protected to "preserve the breathing space" required for the exercise of protected petitioning rights, "disseminat[ing] a false press release to [the defendant's] customers and the public after filing th[e] suit," and engaging in a "campaign to use the press release discussing the suit to propose new pricing arrangements" is not "incidental" to litigation and does not implicate the same First Amendment concerns. *Nuance Commc'ns* v. *MModal LLC*, 2018 WL 6804488, at *3-4 (D. Del. Dec. 27, 2018), *report & recommendation adopted*, 2019 WL 181322 (D. Del. Jan. 11, 2019).[5] And as in *Nuance*, Arm did not just send the Breach Letter but engaged in "additional market manipulation conduct," by leaking the letter. 2018 WL 6804488, at *4. *Noerr-Pennington* is inapplicable.

Arm's argument that Qualcomm has not pled that Arm's conduct was a "sham," D.I. 233 at 8, ignores the procedural posture of the case and the allegations of the SAC.[6] As an affirmative defense, *Noerr-Pennington* is "not something the plaintiff must anticipate and negate in [its] pleading," *see Cunningham* v. *Cornell Univ.*, 145 S. Ct. 1020, 1028 (2025) (quotation marks

---

[5] *See also Arista Networks, Inc.* v. *Cisco Sys., Inc.*, 2018 WL 11230167, at *11 (N.D. Cal. May 21, 2018) (denying motion for summary judgment that blog posts were protected by *Noerr-Pennington*, as blog posts were "merely statements about the status of the parties' litigation and [the poster's] intellectual property rights" and not, like demand letters, made in furtherance of or incidental to efforts to "prosecution of the … lawsuit"); *Riverbed Tech., Inc.* v. *Silver Peak Sys.*, 2015 WL 12941890, at *3 (N.D. Cal. Apr. 7, 2015) ("competitive brief" about litigation merely described case and was not in "furtherance of or incidental to" it).

[6] The fact that Arm's claims in the *Arm Action* survived summary judgment, D.I. 233 at 8, is irrelevant, because those claims involved alleged breaches of the *Nuvia* ALA, not whether Qualcomm violated *its own* ALA. *See* SAC ¶ 136.

8

omitted), and whether activity is a "sham … is a factual inquiry, which cannot be resolved at the motion to dismiss stage," *FTC* v. *Shire ViroPharma Inc.*, 2018 WL 1401329, at *7 (D. Del. Mar. 20, 2018). The SAC alleges that Arm's claim that Qualcomm had materially breached its ALA was "groundless," "baseless," and a "bad-faith" pretext for harming Qualcomm's business, SAC ¶¶ 1, 9, 33, 157, 184-185, precluding dismissal. *Energy Conversation, Inc.* v. *Heliodyne, Inc.*, 698 F.2d 386, 389 (9th Cir. 1983) (*Noerr-Pennington* inapplicable where unfounded threat was allegedly intended to "generate adverse … publicity and … coverage" and "competitive[] harm").

**Third,** even if Arm's *Noerr-Pennington* defense were apparent on the face of Qualcomm's complaint as to some of Arm's actions—and it is not—that doctrine would not justify dismissal of Qualcomm's claims in full. *Noerr-Pennington* does not immunize Arm from liability for material misrepresentations to Qualcomm's customers that Qualcomm had breached its own ALA. *See* SAC at ¶ 1; *Cheminor Drugs*, 168 F.3d at 124 (3d Cir. 1999) ("[A] material misrepresentation that affects the very core of a litigant's … case will preclude *Noerr-Pennington* immunity..."). Moreover, Arm's implied-covenant and UCL claims are premised on numerous distinct wrongs (such as Arm's refusal to negotiate a v10 license and unfair competition in the semiconductor industry) unrelated to litigation. *E.g.*, SAC ¶¶ 184, 206-207. And because Arm's purported "petitioning" forms part of a "complex scheme" of anticompetitive conduct, Qualcomm may challenge that scheme in its entirety, even if the petitioning were not a sham. *10x Genomics, Inc.* v. *Vizgen, Inc.*, 681 F. Supp. 3d 252, 268-269 (D. Del. 2023); *see Microsoft Mobile Inc.* v. *Interdigital, Inc.*, 2016 WL 1464545, at *3 (D. Del. Apr. 13, 2016). *Noerr-Pennington* does not support dismissal in part, let alone in full. *See Castaline*, 2010 WL 583944, at *4 (denying motion to dismiss "[b]ecause not all of [defendant's] alleged actions are privileged").

9

A0433

**2.    Arm's cursory arguments about the litigation privilege and Anti-SLAPP law fail for similar reasons**.

*Litigation Privilege*:  Arm's invocation of the California litigation privilege fails for much the same reasons as its invocation of *Noerr-Pennington*.[7]  Litigation privilege does not protect conduct ███████████████████████, such as Arm's leak of the Breach Letter. *Wentland* v. *Wass*, 25 Cal Rptr. 3d 109, 116 (Ct. App. 2005).  And it protects only statements that are "necessary or useful step[s] in the litigation process and... serve its purposes." *Argentieri* v. *Zuckerberg*, 214 Cal. Rptr. 3d 358, 371 (Ct. App. 2017).  Sending confusing and misleading letters to Qualcomm's customers and leaking the Breach Letter to the press "does not constitute the type of furtherance or connection sufficient for the litigation privilege to apply." *Id.* at 372.

*California Anti-SLAPP*:  Arm provides no independent argument for applying California Anti-SLAPP law, so that argument fails for the same reasons as Arm's argument about the litigation privilege.  California's Anti-SLAPP law protects only against claims that "arise[] from protected speech or petitioning and lack[] even minimal merit," ████████████████████ ████████████ *Navellier* v. *Sletten*, 52 P.3d 703, 708, 712 (Cal. 2002).  Qualcomm's claims target Arm's bad-faith interference with Qualcomm's business and attempts to undermine competition, not protected speech or petitioning activity. *Supra* pp. 5-9.[8]  Nor can Arm show that those claims "lack even minimal merit," given this Court's grant of leave to amend and rejection of Arm's arguments about futility.  D.I. 134.  Finally, Arm's contention Qualcomm must now "establish a probability it will prevail" on its claims is also misdirected because California Anti-

---

[7] Like *Noerr-Pennington*, litigation privilege is an affirmative defense that requires dismissal only when established on the face of the complaint.  *See, e.g.*, *VMG Salsoul* v. *Birdsong*, 2014 WL 12597111, at *5 (C.D. Cal. Sept. 11, 2014)

[8] To the extent Qualcomm seeks redress for Arm's misrepresentations to Qualcomm customers that Qualcomm's products are unlicensed, the California Anti-SLAPP Law's commercial-speech exception, Cal. Code Civ. Proc. § 425.17(c) also renders Anti-SLAPP Law inapplicable.

10

SLAPP procedure does not apply in federal court, *e.g.*, *La Liberte* v. *Reid*, 966 F.3d 79, 87-88 (2d Cir. 2020); *Broughty* v. *Bouzy*, 2023 WL 5013654, at *3 n.3 (D.N.J. Aug. 7, 2023), and Arm has not invoked those inapplicable state-law procedures.

**B.**     **Arm Offers No Basis for Dismissing Qualcomm's Meritorious UCL Claim**.

**1.**     **There is no procedural obstacle to the UCL claim**.

Arm reprises its argument that Qualcomm cannot obtain equitable relief under the UCL because Qualcomm has adequate legal remedies, but Qualcomm's ability to recover damages for certain past acts of tortious interference and bad-faith conduct does not prevent it from also seeking equitable relief for a broader, ongoing pattern of misconduct.  D.I. 64 at 15.  Arm does not dispute that ongoing harm can justify equitable relief, or that Qualcomm has alleged ongoing harm in the SAC, D.I. 233 at 10, but instead slights those allegations as "conclusory."  The SAC, however, includes detailed allegations of Arm's persistent, systematic, and "ongoing" efforts to undermine Qualcomm's customer relationships and obstruct its development of custom CPUs and chips, including multiple instances in which Arm has sought to mislead Qualcomm's customers and leak confidential information.  *E.g.*, SAC at ¶ 137, 139, 144, 207.  These well-pled allegations are not "conclusory platitudes," D.I. 233 at 10, but firmly established bases for equitable relief.  *See*, *e.g.*, *CFTC* v. *Traders Glob. Grp.*, 2023 WL 7545316, at *1 (D.N.J. Nov. 14, 2023) ("likelihood of future violations may be inferred from systematic or ongoing violations"); *Sun Microsystems, Inc.* v. *Microsoft Corp.*, 87 F. Supp. 2d 992, 1004-05 (N.D. Cal. Jan. 24, 2000) ("past conduct demonstrat[ing] an ongoing strategy to compete" unfairly and unlawfully shows "threatened future harm or a continuing violation" of the UCL such as to warrant injunctive relief").  In faulting Qualcomm for not "explain[ing] why" damages are insufficient in the complaint, Arm overlooks that a complaint requires "a plausible 'short and plain' statement of the plaintiff's claim, not an

11

exposition of his legal argument." *Skinner* v. *Switzer*, 562 U.S. 521, 530 (2011).[9]

Arm's challenges to Qualcomm's standing are similarly meritless. Qualcomm has alleged that Arm's misconduct has harmed it *and is continuing* to cause it harm—for example, by damaging customer relationships and impeding Qualcomm's chip-development efforts—which is all Article III requires. *E.g.*, SAC ¶¶ 34, 156-66, 206-207, 212; *see Clemens* v. *ExecuPharm Inc.*, 48 F.4th 146, 155 (3d Cir. 2022). Arm's assertion that the Court could not enjoin Arm from *all* communications with third parties is a red herring: Qualcomm seeks more tailored relief, SAC ¶ 212 & p.64 (Prayer for Relief ¶ D), and Arm's "qualms as to the breadth of a potential remedy are premature" at the pleadings stage. *Aesha* v. *State Farm Gen. Ins. Co.*, 2024 WL 5410447, at *6 (C.D. Cal. July 30, 2024); *see also Peterson* v. *Glad Prods. Co.*, 2023 WL 4600404, at *5 (N.D. Cal. July 27, 2023).

### 2. The SAC states a UCL claim.

Qualcomm's detailed allegations about Arm's conduct are more than sufficient to state a claim under the "sweeping" language of the UCL, which "permit[s] tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur." *Cel-Tech Commc'ns* v. *L.A. Cellular*, 973 P.2d 527, 561-62 (Cal. 1999). Whether a business act or practice is "unfair" is generally a question of fact, *Linear Tech. Corp.* v. *Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 236 (App. 2007), making it "a rare situation where granting a motion to dismiss claims under the UCL is appropriate." *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011). This case does not present one of those "rare situations."

---

[9] Arm's citation to Qualcomm's brief in *Key* v. *Qualcomm Inc.*, 129 F.4th 1129 (9th Cir. 2025), is inapposite. The fact that the plaintiff there failed to prove the need for equitable relief says nothing about the adequacy of Qualcomm's pleadings in this case.

12

To begin, Arm confuses the legal standards that govern UCL claims. Qualcomm is both a competitor and customer of Arm, so it can show that Arm's conduct was unfair using *either* the *Cel-Tech* competitor *or* balancing tests. *Epic*, 67 F.4th at 1000-01. As to *Cel-Tech*, Arm focuses on the second prong and largely ignores the first and third, D.I. 233 at 11, thereby waiving any argument that Qualcomm has not sufficiently alleged that Arm's conduct is "unfair" because that conduct otherwise "substantially harms competition." *See*, *e.g.*, *Lord Abbett Affiliated Fund* v. *Navient Corp.*, 2020 WL 5026553, at *4 (D. Del. Aug. 25, 2020); *PeopleBrowsr, Inc.* v. *Twitter*, 2013 WL 843032, at *4 (N.D. Cal. Mar. 6, 2013) (*Cel-Tech* disjunctive).

The SAC alleges that Arm has engaged in conduct that is "unfair" by any measure—particularly when that conduct is considered together, as it must be. *See Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[10]

***First***, the SAC alleges that after inducing widespread adoption of the Arm ISA by committing to a neutral, open IP-licensing model, the "Switzerland" of chips sought to exploit its dominance by hiking rates and advantaging its own off-the-shelf cores and planned chips. SAC ¶¶ 68-73. Arm's "open early, closed late" conduct is inconsistent with the "policy or spirit" of the antitrust laws and "significantly threatens or harms competition." *See Cel-Tech*, 973 P.2d at 544; *see 10x Genomics*, 681 F. Supp. 3d at 268-69.[11]

---

[10] Arm contends that Qualcomm's "unlawful" claim is circular, D.I. 233 at 14, but that is incorrect: Qualcomm's "unfair" UCL claim serves as a predicate for its tortious-interference claims, which in turn support its UCL "unlawful" claim. There is nothing wrong with Qualcomm's "unfair" UCL claim doing this sort of "triple duty," *CRST Van Expedited, Inc.* v. *Werner Enters.*, 479 F.3d 1099, 1111 (9th Cir. 2007), and Arm cites no authority to suggest otherwise.

[11] Arm incorrectly claims that Qualcomm has "disclaimed any argument that Arm is attempting to exercise monopoly power." D.I. 233 at 12 (citing SAC ¶ 207). The UCL does not require Qualcomm to plead and prove that Arm has monopoly power. *Epic*, 67 F.4th at 1002. The lack of extraneous allegations in the SAC is not a concession that Arm is not a monopolist.

13

***Second***, the SAC alleges that, notwithstanding the parties' longstanding and profitable business relationship, Arm has cut off or threatened to cut off Qualcomm's access to necessary IP in an anticompetitive attempt to fetter Qualcomm's development of innovative custom cores and chips.  *E.g.*, SAC ¶¶ 1-3, 68-72, 164-166, 184-185, 208.  In these circumstances, that refusal to deal poses recognized threats to competition.  *Eastman Kodak Co.* v. *Image Tech. Servs., Inc.*, 504 U.S. 451, 483-86 (1992); *Aspen Skiing Co.* v. *Aspen Highlands Skiing Corp.*, 472 U.S. 585, 610-11 (1985).[12]  In keeping with federal courts, California courts have thus recognized that certain refusals to deal can amount to "unfair" competition.  *See*, *e.g.*, *Pac. Steel Grp.* v. *Com. Metals Co.*, 600 F. Supp. 3d 1056, 1081-82 (N.D. Cal. 2022); *hiQ Labs, Inc.* v. *LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1117 (N.D. Cal. 2017).  The SAC alleges just such an unfair termination of an existing, profitable business relationship for anticompetitive reasons.

***Third***, the SAC also alleges that Arm has repeatedly tried to mislead or intimidate Qualcomm's customers to induce them not to do business with Qualcomm.  SAC ¶¶ 29-31, 135-140 (alleging, among other things, that Arm and its affiliates misrepresented when Qualcomm's ALA expires and claimed Qualcomm's products were unlicensed and that customers could face legal jeopardy from buying them).  Again, California law has long recognized such practices as "unfair," *e.g.*, *ConsumerDirect, Inc.* v. *Pentius, LLC*, 2022 WL 16949657, at *9 (C.D. Cal. Aug. 25, 2022), independent of any antitrust-like analysis, and Arm hardly argues to the contrary.  *See also Overstock.com, Inc.* v. *Gradient Analytics, Inc.*, 61 Cal. Rptr. 3d 29, 50 (Ct. App. 2007).

Arm's arguments for dismissal are unpersuasive.  Arm suggests that unilateral refusals to deal are simply not actionable under federal antitrust law, D.I. 233 at 12, but ignores exceptions to

---

[12] *See also Verizon Commc'ns Inc.* v. *L. Offs. of Curtis* V. *Trinko, LLP*, 540 U.S. 398, 408-09 (2004) (recognizing *Aspen Skiing* refusal to deal anticompetitive theory, but finding that it does not apply where the monopolist never "engaged in a course of dealing with its rivals").

A0438

that general principle.  *See*, *e.g.*, *Kodak*, 504 U.S. at 483-86; *Aspen Skiing*, 472 U.S. at 600-05; *10x Genomics*, 681 F. Supp. 3d at 267-69.[13]   While Arm also claims that its attempts to mislead Qualcomm customers does not violate the spirit of the antitrust laws, it does not even attempt to explain how that conduct does not "otherwise significantly threaten[] or harm[] competition."  *Cel-Tech*, 973 P.2d at 544.

Arm's remaining challenges to Qualcomm's UCL claim invent pleading requirements from whole cloth.  While Arm notes that Qualcomm has not alleged what antitrust law, in particular, Arm's conduct has violated, D.I. 233 at 13, Qualcomm does not need to "plead a specific violation of antitrust law" to state a viable UCL claim, *XpandOrtho, Inc.* v. *Zimmer Biomet Holdings, Inc.*, 2022 WL 801743, at *11 (S.D. Cal. Mar. 15, 2022), and Arm cites no California case dismissing a UCL claim on that ground.  Nor does Arm cite any California decisions stating that a UCL plaintiff must show market power in a defined market.  The Ninth Circuit has rejected the effort to import a market-definition requirement into the UCL as "contrary to California courts' repeated instruction that no inflexible rule can be laid down as to what conduct will constitute unfair competition."  *Epic*, 67 F.4th at 1002 (cleaned up).  Indeed, the only California case cited by Arm—*Racek* v. *Rady Children's Hospital*, 2012 WL 2947881, at *6 (Cal. Ct. App. July 20, 2012)—is an unpublished, non-citable decision that rejected a UCL claim for failure to prove anticompetitive conduct, not failure to identify a relevant market.  *See also Sun Microsys., Inc.* v. *Microsoft Corp.*, 87 F. Supp. 2d 992, 1002 (N.D. Cal. 2000) (same).[14]

---

[13] Arm's reliance on *Chavez* v. *Whirlpool Corp.*, 113 Cal. Rptr. 2d 175 (Ct. App. 2001); *Drum* v. *San Fernando Valley Bar Ass'n*, 106 Cal. Rptr. 3d 46 (Ct. App. 2010); and *Beverage* v. *Apple Inc.*, 320 Cal. Rtpr. 3d 427 (Cal. Ct. App. 2024), is thus inapt, because those cases involved simple refusals to deal not accompanied, as in this case, by cessation of an existing business relationship (like *Aspen Skiing*) or allegedly gaining widespread acceptance by deception (like *10x Genomics*).
[14] The other federal district-court decisions cited by Arm do not support its argument that UCL plaintiffs must plead a relevant market.  In *Reilly* v. *Apple, Inc.*, 578 F. Supp. 3d 1098 (N.D. Cal.

15

**C.      The SAC States Viable Claims for Tortious Interference**.

Arm now abandons any independent challenge to Qualcomm's tortious-interference claims and contends only that Qualcomm's UCL claim fails and that Qualcomm therefore has not pleaded an "independently wrongful" act.  D.I. 233 at 14.  Qualcomm has stated a viable UCL claim based on, among other things, Arm's campaign of interference with Qualcomm's customer relationships. SAC ¶ 1.  Because that conduct violates the UCL's "unfair" prong, it is necessarily "independently wrongful." *CRST Van Expedited,* 479 F.3d at 1110-11; *cf. Korea Supply Co.* v. *Lockheed Martin Corp.*, 63 P.3d 937, 954 (Cal. 2003) (act is "independently wrongful" if "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard").  Qualcomm has stated viable tortious-interference claims.

**D.      Arm Offers No Valid Reason for Dismissing Qualcomm's TLA Claims**.

**1.      Qualcomm Has Stated a Claim for Breach of ▮▮▮ (Count VII)**.

Under ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮ SAC ¶¶ 104-105.  Qualcomm has alleged that when it requested a license to certain Arm cores, Arm violated that provision by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *id.* ¶¶ 109-115; and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

2022), the plaintiff litigated his UCL claim as derivative of his federal antitrust claim, and the district court never addressed whether the UCL imposes an independent market-definition requirement.  To the extent *Vox Network Solutions, Inc.* v. *Gage Technologies, Inc.*, 2025 WL 929939 (N.D. Cal. Mar. 27, 2025), stated that UCL plaintiffs must identify geographical and product markets, that decision relied on inapposite Sherman Act caselaw and overlooked precedent that the UCL does not require market definition.  *Compare id.* at *5, *with Epic*, 67 F.4th at 1002.

16

████████ and amounted to constructive failure to provide an offer, *id.* ¶¶ 116-120.

Arm asserts that these allegations are "conclusory" because they do not include details about the terms on which Arm licensed the cores at issue to third parties. D.I. 233 at 16. But those terms are confidential and known only to Arm.[15] More importantly, Qualcomm is not required to plead the detail of these other licenses with particularity. Fed. R. Civ. P. 8. The SAC alleges that when Qualcomm requested licenses to the cores in 2024, Arm demanded fees and royalty rates nearly five times as high as those it agreed to in 2019, even though the technology was five years older. SAC ¶¶ 110, 118. Those well-pled allegations state a plausible claim that the rates were ███ ████████████████████████████.[16]

Arm also fails to address the allegations that it did not act in good faith in ████████ ███████████████████████████████████████████████████████. While Arm claims that Qualcomm is "reading an additional requirement" into the TLA, D.I. 233 at 17, ███████████████████████████████████████████████████████ ███████████████████████████████. Qualcomm seeks to enforce the terms of the TLA, not to engraft additional requirements onto it. Nor can Arm plausibly maintain that the TLA ███████████████████████████████████████████████████████ ███████████████████████████. *Id.* at 16-17. Under California law, "[w]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." *Kendall* v. *Ernest Pestana, Inc.*, 709 P.2d 837, 845 (Cal. 1985) (quotation marks omitted). ██████████████

---

[15] Arm is continuing to improperly withhold discovery on its calculation of the ████████
[16] Indeed, the 500% increase alleged in the SAC could be consistent with the ████████ ████████████████████████████████████████ a proposition that is implausible on its face.

17

███████████████████████████████████████████████████████████████

███████████████████████████████████████████. Arm argues that the implied

covenant of good faith and fair dealing cannot be used to impose terms beyond those expressly

stated in the contract, but if Arm were correct that "the implied covenant only enforces the express

terms of the contract, then the entire concept of an implied covenant would be superfluous." *See*

*Daly* v. *United Healthcare Ins. Co.*, 2010 WL 4510911, at \*5 (N.D. Cal. Nov. 1, 2010); *accord*

*Brehm* v. *21st Century Ins. Co.*, 83 Cal. Rptr. 3d 410, 417 (Ct. App. 2008) (rejecting argument that

"no breach of the implied covenant can occur if there is no breach of an express contractual

provision"); *Schwartz* v. *State Farm Fire & Cas. Co.*, 106 Cal. Rptr. 2d 523, 531 (Ct. App. 2001)

("well established... that breach of a specific provision of the contract is not a necessary

prerequisite to a claim for breach of the implied covenant"). ███████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████

      **2.**      **Qualcomm Has Stated a Claim for Breach of** ████ **(Count VIII)**.

The SAC also states a claim that Arm breached ████ by failing to provide an offer with

███████████████████████████████████████ to the QC TLA.  SAC ¶ 120.

Specifically, Arms' offer excluded ███████████████████████████

███████████████████████████████████████████████████████████████

████      Arm responds that the SAC does not sufficiently "describe[] what ███████

███████████████████████████████████████████████████████████████

███████████████      D.I. 233 at 19.  But (as discussed) no such particularized allegations

are required.  *Supra* p. 17.  The fact that Qualcomm did not allege superfluous detail about the

18

specific ████████████████ Arm stripped out of its license offer does not render Qualcomm's allegations "conclusory." *See Twombly*, 550 U.S. at 545, 556-57.

### E.    Arm's Attempt to Narrow Qualcomm's Implied Covenant Claim (Count III) Fails.

Arm expressly does *not* move to dismiss Qualcomm's implied-covenant claim (Count III) but argues only that the Court should dismiss "new allegations" that Arm violated the implied covenant (1) by not offering a license to the v10 architecture and (2) failing to provide licensing proposals ████████████. The motion should be denied for three reasons.

*First*, Arm misunderstands the duty of good faith and fair dealing. In California, "[e]very contract imposes upon each party a duty of good faith and fair dealing in each performance and its enforcement." *Pasadena Live* v. *City of Pasadena*, 8 Cal. Rptr. 3d 233, 234 (Ct. App. 2004). That duty requires a party not only to "do everything that the contract presupposes that he will do to accomplish its purpose," *Harm* v. *Frasher*, 5 Cal. Rptr. 367, 374 (Ct. App. 1960), such as by exercising discretionary powers in good faith, *supra* at p. 17-18, but also *not* to "do anything which will injure the right of the other to receive the benefits of the agreement," *Comunale* v. *Traders & Gen. Ins. Co.*, 328 P.2d 198, 200 (Cal. 1958). To the extent Arm maintains that the implied covenant cannot impose duties beyond those expressly agreed upon in the contract, D.I. 233 at 19, California courts consistently reject that contention as fundamentally inconsistent with the *implied* covenant. *See Brehm*, 83 Cal. Rptr. at 417; *Schwartz*, 106 Cal. Rptr. 2d at 531; *supra* at p. 18.

*Second*, Arm is mistaken that the statute of limitations requires dismissal of Qualcomm's allegations about Arm's bad-faith refusal to license v10 of the Arm architecture.[17] That affirmative defense is procedurally improper because it is "not apparent on the face of the complaint." *Schmidt*

---

[17] Arm does not dispute that its other violations of the implied covenant occurred within the statute of limitations. *See* SAC ¶¶ 132-134, 184-185.

v. *Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).  While Arm focuses on Qualcomm's allegation that Arm failed to respond to a May 2020 request, D.I. 233 at 20, the SAC does not allege when that failure to respond ripened into bad faith, which precludes dismissal on statute of limitations grounds.  Regardless, the complaint also alleges that Arm lied to Qualcomm in April 2020 that ███████████████████████████████████████████████████████████.  SAC ¶ 131.  That concealment of the violation alone would require tolling of any statute of limitations as to any claim based on Arm's failure to license v10.  *See LGM Holdings, LLC* v. *Schurder*, 2025 WL 1162999, at *8 (Del. April 22, 2025).

*Third*, Arm is incorrect to argue that Qualcomm's implied-covenant claim is "duplicative of [its] breach claims."  D.I. 233 at 19-20.  Under the TLA, Arm is expressly ████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████  SAC ¶¶ 102, 118-119, 215.  ███████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████  *See id.* ¶ 102.  In any event, Qualcomm's implied-covenant claim encompasses Arm's broader and intentional campaign to deprive Qualcomm of the benefits of the ALA and TLA, SAC ¶¶ 184-186, and implied-covenant claims are not duplicative of contract claims where, as here, the plaintiff "alleges that the defendant acted in bad faith to frustrate the contract's benefits," *see Celador Int'l Ltd.* v. *Walt Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004).

## V.    CONCLUSION

Arm's motion to dismiss should be denied.

20

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Catherine Nyarady
Anish Desai
Erin J. Morgan
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA  94105
(628) 432-5100

*Attorneys for Plaintiffs*

21

**A0445**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 1, 2025, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                        *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Karen E. Keller, Esquire                                        *VIA ELECTRONIC MAIL*
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                                      *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
Sydney D. Gaskins, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

22

**A0446**

Kyle W.K. Mooney, Esquire                          *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

Erik J. Olson, Esquire                             *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Defendant*

Daniel P. Muino, Esquire                           *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
*Attorneys for Defendant*

Brian M. Kramer, Esquire                           *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, CA  92130
*Attorneys for Defendant*

William Frentzen, Esquire                          *VIA ELECTRONIC MAIL*
Daralyn J. Durie, Esquire
Shaelyn Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                             *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                            *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

23

**A0447**

Jay Emerick, Esquire                                              *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                                        *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*


                                    */s/ Jennifer Ying*
                                    _____
                                    Jennifer Ying (#5550)


24

**A0448**

# A0449 - A0573
# Redacted in Full

# Exhibit 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>  a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>  a Delaware corporation, | ) ) ) ) | |
|             Plaintiffs, | ) ) | C.A. No. 24-490 (MN) |
|       v. | ) ) | ███████████ |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>  a U.K. corporation, | ) ) ) | |
|             Defendant. | ) | |

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIFTH
SET OF REQUESTS FOR PRODUCTION (NOS. 228-287)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively "Qualcomm") by and through their attorneys, hereby respond and object to Arm's ("Defendant") Fifth Set of Requests for Production (Nos. 228-287) ("Requests").

The following responses are based solely on the information that is presently available and specifically known to Plaintiffs, and are given without prejudice to Plaintiffs' right to supplement with any subsequently-discovered facts. Plaintiffs reserve the right to supplement the following responses and to change any and all responses therein as additional facts are ascertained, analyses are made, and legal research is completed.

Plaintiffs respond to the Requests on the basis of information available at the time the responsive information was gathered, within the limits of time, and subject to the objections described below. Plaintiffs respond to the Requests as they interpret and understand each Request set forth herein. If Defendant subsequently asserts an interpretation of any of the Requests that

1

differs from Plaintiffs' understanding, Plaintiffs reserve the right to supplement their objections and/or responses.

No incidental or implied admissions are intended by the responses herein. Plaintiffs' willingness to respond to any particular Request does not constitute an admission that Plaintiffs agree with any characterization, definition, or assumption contained in the Request or an assumption or an acknowledgement by Plaintiffs that the Request is proper, that the information sought is within the proper bounds of discovery or that demands for similar information will be treated in similar fashion. Furthermore, a statement that responsive documents will be produced in response to a particular Request does not mean that Plaintiffs know any such document exists or is in Plaintiffs' possession, custody, or control. The fact that Plaintiffs have provided a response to any particular request should not be taken as an admission that Plaintiffs accept or admit the existence of any fact or interpretation or conclusion of law set forth or assumed by such request or that said response constitutes admissible evidence. The fact that Plaintiffs have provided a response to any request is not intended to be, and shall not be construed as, a waiver by Plaintiffs of any part of any objection to any such request.

Plaintiffs' responses to the Requests contain, provide, or refer to information that is protected under District of Delaware Local Rule 26.2 and provisions of the Protective Order (D.I. 84) in this matter and should therefore be treated accordingly.

Plaintiffs have not yet completed their discovery relating to this case and their investigation of the facts is ongoing. Plaintiffs anticipate that additional information responsive to the Requests may be obtained as discovery proceeds. Plaintiffs' responses to the Requests are therefore made without prejudice to Plaintiffs' right to amend, correct or supplement their responses to the

2

Requests.  Any responses will be supplied by Plaintiffs subject to all objections as to competence, relevance, materiality, propriety, admissibility, and any and all other objections on any grounds that would require the exclusion of the response or information if such were offered in evidence, all of which objections and grounds are hereby expressly reserved and may be interposed at the time of trial.

## GENERAL OBJECTIONS

1.	Plaintiffs object to each Request to the extent that it seeks to impose greater or different obligations on Plaintiffs than those provided for by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any discovery orders entered into this case, any other applicable Court orders, or agreements reached by the parties.

2.	Plaintiffs object to each Request to the extent that it seeks documents, things, or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.  Nothing contained in these Responses and Objections is intended to be, nor shall in any way be, construed as a waiver of any such privilege, immunity, or protection.  Specific Objections on the grounds of privilege are provided for emphasis and clarity only, and the absence of a Specific Objection is neither intended, nor should be interpreted, as evidence that Plaintiffs do not object to a Request on the basis of an applicable privilege, immunity, or protection.  Any disclosure of any such privileged or protected material in responses to any Request is inadvertent and not intended to waive those privileges and protections.

3.	Plaintiffs object to the Requests to the extent they seek documents and things that Plaintiffs have a legal or contractual obligation not to disclose, or subject to third-party confidentiality obligations.  Plaintiffs will not provide such documents or things without either the

3

consent of the relevant third-party or an order compelling the production thereof, or without providing the relevant third-party an opportunity to object to the production.

4.      Plaintiffs object to each Request to the extent that it purports, or may be construed, to call for the production or identification of "any," "all," "each," or "every" document or thing pertaining to a specific subject, on the ground that such language is overbroad and unduly burdensome.  As used herein, the term overbroad includes Requests that, so characterized, seek, at least in part, documents or information irrelevant in scope, subject matter, or time period to this lawsuit or to the particular matters at issue in this lawsuit.  For example, the requests for "All Communications" seek administrative or ministerial discussions that have little if any substantive value and do not prove or disprove any claim or defense in the case.  To the extent that a search is required, Plaintiffs will perform a reasonable, targeted search that accounts for the burden and relevance, and is designed to reasonably and proportionately identify requested documents, to the extent any exist.

5.      Plaintiffs object to the Requests to the extent that they call for discovery that is unreasonable or not proportional to the needs of the case, or not relevant to any claim or defense of any party in this action.  Plaintiffs further object to the Requests to the extent they seek to relitigate issues that were the subject of the jury verdict in Arm v. Qualcomm, C.A. No. 22-1146 (D. Del.).

6.      Plaintiffs object to the Requests to the extent that they purport to require Plaintiffs to create, generate, compile, or develop documents not kept, or in a form not kept, in the ordinary course of Plaintiffs' businesses.

7.      Plaintiffs object to the Requests to the extent that they are not reasonably limited in time.  Plaintiffs will agree to produce documents dating from June 1, 2022 forward, unless

4

otherwise specified. Specific Objections on the grounds that a Request is not reasonably limited in time are provided for emphasis and clarity only, and the absence of a Specific Objection is neither intended, nor should be interpreted, as evidence that Plaintiffs do not object to a Request on this basis.

8. Plaintiffs object to the Requests and each and every instruction and definition therein to the extent that any Request: (a) seeks the production of documents or disclosure of information not relevant to this litigation, nor proportional to the needs of the case; (b) is overbroad, unduly burdensome, harassing, oppressive, or duplicative; (c) is vague or ambiguous; (d) calls for the disclosure of information not within Plaintiffs' possession, knowledge, custody, care, or control; (e) calls for the disclosure of information already in Defendant's possession, knowledge, custody, care, or control; (f) calls for the production of documents or disclosure of information readily available to Defendant from public or third-party sources; or (g) calls for the production of information already produced to Defendant in the prior litigation, *Arm* v. *Qualcomm et al.*, C.A. No. 22-1146 (D. Del).

9. Plaintiffs' election to respond to a Request, notwithstanding the objectionable nature of the Request, is not: (a) an acceptance of, or agreement with, any of the characterizations or purported descriptions of any facts, circumstances, events, or legal conclusions contained in the Requests; (b) a concession or admission that the materials are relevant to this case or would be admissible at trial; (c) a waiver of the General Objections or the objections asserted in response to that specific Request; (d) an admission that any such documents or things exist; (e) an agreement that requests for similar information or documents will be treated in a similar manner; or (f) an acceptance of, or agreement with, any of the definitions in the Requests, to the extent that the definition or meaning of any defined term is at issue in this case.

5

A0579

10.    Plaintiffs' investigation of the facts in this proceeding and review of the relevant documents is ongoing.  Accordingly, the objections and responses herein are based on present knowledge, information, and belief.  Plaintiffs reserve the right to modify, supplement, or amend any response and objection, if necessary or appropriate, in any way and at any time.  Plaintiffs further reserve the right to object, at any hearing and any other proceeding in this litigation, to the use or admissibility into evidence of: (a) any documents produced in response to the Requests; (b) any of the information contained in any such document; or (c) any other information provided in response to any Request.

11.    Consistent with paragraph 54 of Protective Order, in the event that Plaintiffs produce a document that is privileged, protected under Federal Rule of Evidence 502, or otherwise immune from disclosure, it will have been produced through inadvertence and shall not constitute a waiver of any privilege or immunity applicable (a) to that or any other document or (b) to communications concerning the subject matter of that or any other document.

12.    Plaintiffs object to the Requests to the extent that they assume disputed facts or legal conclusions in defining the documents requested.  Plaintiffs hereby deny any such disputed facts or legal conclusions.  Any documents or information produced by Plaintiffs in response to the Requests are without prejudice to this objection.

13.    Plaintiffs' General Objections apply to each and every Request and are incorporated by reference into each of the responses set forth below, which responses are made without waiver of, and subject to, these General Objections.

6

### OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Qualcomm incorporates by reference its Objections to Definitions and Instructions from Qualcomm's Responses and Objections to Arm's First, Second, and Third Sets of Requests for Production.

1.      Plaintiffs object to the "Definitions" to the extent that they attempt to define words beyond or inconsistent with their ordinary meaning.

2.      Plaintiffs object to the definition of "Arm" or "Defendant" as vague and ambiguous to the extent the scope of "related corporate entities and their subsidiaries" is unclear.

3.      Plaintiffs object to the definition of "Qualcomm" of "Plaintiffs" as vague, ambiguous, overbroad, and unduly burdensome to the extent it is defined to include not only Qualcomm Incorporated and Qualcomm Technologies, Inc., but also persons or entities that are separate and distinct from Qualcomm Incorporated and Qualcomm Technologies, Inc., and over whom Plaintiffs exercise no control, such as but not limited to affiliates, consultants, independent contractors, experts, investigators, licensees, licensors, or collaborators.

4.      Plaintiffs object to the definitions of "You," "Your," and "Plaintiffs" as vague, ambiguous, overbroad, and unduly burdensome to the extent they seek information relating to persons or entities that are separate and distinct from Qualcomm Incorporated and Qualcomm Technologies, Inc., and over whom Plaintiffs exercise no control. In responding to these requests, Plaintiffs interpret the terms "You," "Your," and "Plaintiffs" to refer only to the named parties in this action. Plaintiffs also object to the definitions of "You," "Your," and "Plaintiffs" to the extent they purport to impose obligations on Plaintiffs beyond what is required by the Rules. Plaintiffs will interpret the definition of "You," "Your," and "Plaintiffs" to impose no discovery obligation on any person or entity that is not a party to this litigation.

7

5.        Plaintiffs object to the definition of "ALA" as vague, ambiguous, and overbroad because it is not clear which agreement(s) "an Architecture License Agreement with Arm" refers to. Plaintiffs will interpret "ALA" as synonymous with "Qualcomm ALA" and therefore to mean the Amended and Restated Architecture License Agreement No. ███████████ dated May 30, 2013, and amendments and annexes thereto.

6.        Plaintiffs object to the definitions of "Document" and its plural to the extent they purport to impose any obligations beyond what is required by the Federal Rules. Plaintiffs further object to the definition of "Document" to the extent that it implies that Plaintiffs must collect or produce, e.g., computer programs, testing data, electronic sound records, and other types of files that are typically not required to be collected or produced, as listed in the ESI Protocol Schedule A (D.I. 85).

7.        Plaintiffs object to the definitions of "Communication" and its plural form to the extent they purport to impose any obligations beyond what is required by the Federal Rules.

8.        Plaintiffs object to the definitions of "Thing" and its plural form to the extent they purport to impose any obligations beyond what is required by the Federal Rules.

9.        Plaintiffs object to the definitions of "Identify," "Identifying," and "Identification" to the extent they purport to impose any obligations beyond what is required by the Federal Rules. Plaintiffs also object to the definitions of "Identify," "Identifying," and "Identification" to the extent they ask Plaintiffs to provide any information unknown to Plaintiffs or not within their possession, custody, or control, or beyond the scope of this litigation, including but not limited to "identifiers known or used by Qualcomm or others." Plaintiffs further object to the extent the Requests seek information other than the production of documents responsive to Defendant's

8

Third Set of Requests for Production. Plaintiffs will not create documents or provide narrative information to identify particular natural persons, entities, things, documents, or conversations.

10.    Plaintiffs object to the definition of "Alphawave" as vague and ambiguous to the extent that the scope of "related corporate entities and their subsidiaries" is unclear.

11.    Plaintiffs object to the definition of "Data Center Market" as vague and ambiguous to the extent that the scope of "related technologies" and "designed for use in data center servers and AI infrastructure" is unclear.

12.    Plaintiffs object to the requested production date as unreasonably burdensome. Plaintiffs will produce documents at a reasonable time in a reasonable manner consistent with the Scheduling Order entered in this action.

9

█████████████

## SPECIFIC RESPONSES AND OBJECTIONS

**REQUEST FOR PRODUCTION NO. 228:**

All Documents, Communications, and Things related to or concerning Qualcomm's notices of breach of the Qualcomm TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 228:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 229:**

All Documents, Communications, and Things related to or concerning licensing discussions between Qualcomm and Arm for products or materials under the TLA, including but not limited to discussions regarding the ████████████████████.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 229:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request

10

to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent the phrase "the TLA" is vague and ambiguous.  Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant. Plaintiffs also object to this Request to the extent that it seeks production of materials that are not relevant to any claim or defense in this case.

**Response:**  Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 230:**

All executed versions, drafts, annexes, and any Documents or Communications relating to the negotiation, execution, or amendment of any TLA between Qualcomm and Arm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 230:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "any Documents or

11

Communications." Plaintiffs further object to this Request to the extent the phrase "any TLA between Qualcomm and Arm" is vague and ambiguous. Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 231:**

All Documents, Communications, and Things related to or concerning the negotiation of the TLA between Qualcomm and Arm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 231:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent the phrase "the TLA between Qualcomm and Arm" is vague and ambiguous. Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant. Plaintiffs further object to this Request on the ground that it is duplicative of other of Defendant's requests, including, for example, RFP 230.

12

A0586

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their response to RFP 230.

**REQUEST FOR PRODUCTION NO. 232:**

All Documents, Communications, and Things related to or concerning any understanding or interpretation of the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 232:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request because the phrase "related to or concerning any understanding or interpretation of the TLA" is vague and ambiguous. Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant. Plaintiffs also object to this Request to the extent that it is duplicative of other of Defendant's Requests, including RFPs 230 and 231.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

13

**REQUEST FOR PRODUCTION NO. 233:**

All Documents, Communications, and Things related to or concerning any considered or proposed modifications or amendments to the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 233:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent the phrase "the TLA" is vague and ambiguous. Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant. Plaintiffs also object to this Request to the extent it is duplicative of other of Defendant's requests including, for example, RFPs 230 and 231.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 234:**

All Documents, Communications, and Things related to or concerning Arm's licensing of processor cores or materials to Qualcomm under the TLA, including but not limited to the terms, pricing, and conditions of such licenses.

14

**RESPONSE TO REQUEST FOR PRODUCTION NO. 234:**

Plaintiffs object to this Request as duplicative of RFP 229 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce documents in accordance with their response to RFP 229.

**REQUEST FOR PRODUCTION NO. 235:**

All Documents, Communications, and Things related to or concerning any core or materials licensed to Qualcomm or that Qualcomm sought to license under the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 235:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent the phrase "the TLA" is vague and ambiguous. Plaintiffs also object to this Request to the extent it is duplicative of other of Defendant's requests, including, for example, RFP 229. Plaintiffs further object to this Request to the extent that it seeks production of materials that are not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify

15

responsive documents, to the extent any exist, that relate to the licensing of cores and materials under the TLA.

**REQUEST FOR PRODUCTION NO. 236:**

All Documents, Communications, and Things related to or concerning the ████████ ████████████, as well as any other cores or materials for which Qualcomm may allege a breach of the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 236:**

Plaintiffs object to this Request as duplicative of RFP 235 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce documents in accordance with their response to RFP 235.

**REQUEST FOR PRODUCTION NO. 237:**

All Documents, Communications, and Things related to or concerning communications between Qualcomm and Arm regarding the ████████████████████████, and any other cores or materials for which Qualcomm may allege a breach of the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 237:**

Plaintiffs object to this Request as duplicative of RFPs No. 235 and 236 and hereby incorporate their responses and objections to those Requests as though fully set forth herein.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs will produce documents in accordance with their responses to RFPs 235 and 236.

**REQUEST FOR PRODUCTION NO. 238:**

All Documents, Communications, and Things related to or concerning the ████████ ████████ of any core or materials licensed under the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 238:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request

16

██████████

to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent the phrase "the TLA" is vague and ambiguous.  Plaintiffs further object to this Request to the extent that it seeks information that is not relevant to any claim or defense in this case.  Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant.

**Response:**  Subject to and without waiver of any of their objections, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, regarding ████████████████████ in Arm's TLA licensing proposals that relate to allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 239:**

All communications with third parties regarding the ████████████████, and any other cores or materials for which Qualcomm may allege a breach of the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 239:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents,

17

Communications, and Things." Plaintiffs further object to this Request to the extent the phrase "the TLA" is vague and ambiguous. Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense in this case.

**Response:** Subject to and without waiver of any of their objections, Plaintiffs are willing to meet and confer regarding the relevance and appropriate scope, if any, of this Request.

**REQUEST FOR PRODUCTION NO. 240:**

All Documents, Communications, and Things related to or concerning Qualcomm's knowledge of Arm's pricing for the ████████████████████, and any other cores or materials for which Qualcomm may allege a breach of the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 240:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent the phrase "the TLA" is vague and ambiguous. Plaintiffs further object to this Request because the phrase "knowledge of Arm's pricing" is vague and ambiguous. Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the

18

extent any exist.

**REQUEST FOR PRODUCTION NO. 241:**

All Documents, Communications, and Things related to or concerning Qualcomm's allegations regarding the pricing of the █████████████████████, and any other cores or materials for which Qualcomm may allege a breach of the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 241:**

Plaintiffs object to this Request as duplicative of RFPs No. 236 and 240 and hereby incorporate their responses and objections to those Requests as though fully set forth herein

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their responses to RFPs 236 and 240.

**REQUEST FOR PRODUCTION NO. 242:**

All Documents, Communications, and Things related to or concerning evaluations or comparisons concerning the █████████████████████, and any other cores or materials for which Qualcomm may allege a breach of the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 242:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent the phrase "the TLA" is vague and ambiguous. Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense in this case. Plaintiffs further object to this Request because the phrase "evaluations or comparisons" is vague and ambiguous.

19

Plaintiffs further object to this Request on the ground that it is duplicative of other of Defendant's requests, including, for example, RFP 236.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their response to RFP 236.

**REQUEST FOR PRODUCTION NO. 243:**

All Documents, Communications, and Things related to or concerning any core that Qualcomm considered using in place of the ████████████████████, including documents regarding estimated or actual royalties paid for such alternative cores.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 243:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent it seeks production of materials that are not relevant to any claim or defense in this case.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 244:**

All Documents, Communications, and Things related to or concerning royalties paid by

20

Qualcomm under the TLA, including all documents and communications regarding any royalties paid under protest.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 244:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent the phrase "the TLA" is vague and ambiguous. Plaintiffs further object to this Request on the ground that it seeks production of materials that are in the possession, custody, or control of Defendant. Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, sufficient to show royalties paid by Qualcomm under the TLA.

**REQUEST FOR PRODUCTION NO. 245:**

All Documents, Communications, and Things related to or concerning Qualcomm's business strategy regarding the ███████████████████████, and any other cores or materials for which Qualcomm may allege a breach of the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 245:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General

21

Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request because the phrases "business strategy" and "the TLA" are vague and ambiguous.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense in this case.  Plaintiffs further object to this Request on the ground that it is duplicative of other of Defendant's requests, including, for example, RFPs 235 and 236.

**Response:**  Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their responses to RFPs 235 and 236.

**REQUEST FOR PRODUCTION NO. 246:**

All Documents, Communications, and Things related to or concerning any ▮▮▮▮▮▮ ▮▮▮▮▮▮▮ received by Qualcomm under the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 246:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent the phrase

22

██████████████

"the TLA" is vague and ambiguous.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense in this case.  Plaintiffs further object to this Request on the ground that it is duplicative of other of Defendant's requests, including, for example, RFP 238.  Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant.

**Response:**  Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to the allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 247:**

All Documents, Communications, and Things related to or concerning business plans or product roadmaps for any Qualcomm products incorporating the ███████████████████ █████ , and any other cores or materials for which Qualcomm may allege a breach of the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 247:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request because the phrases "business plans" and "the TLA" are vague and ambiguous.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense in this case.  Plaintiffs further object to this Request on the ground that it is duplicative of other of

23

███████████

Defendant's requests, including, for example, RFPs 236 and 245.

**Response:**  Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, sufficient to show the impact of Arm's refusal to offer commercially reasonable licenses under the TLA on Qualcomm's product roadmaps, as described in paragraph 122 of the Complaint.

**REQUEST FOR PRODUCTION NO. 248:**

All Documents, Communications, and Things related to or concerning projected royalties in the event that Arm ████████████████████████████ ██████

**RESPONSE TO REQUEST FOR PRODUCTION NO. 248:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense in this case.  Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant.  Plaintiffs further object to this Request on the ground that it is vague and unclear, as "projected royalties" would necessarily be ██████████████████████████ .

24

**A0598**

**Response:** Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of the Request.

**REQUEST FOR PRODUCTION NO. 249:**

All Documents, Communications, and Things related to or concerning any materials, including peripheral intellectual property, that were provided, allegedly not provided to, and/or were allegedly withheld from Qualcomm under the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 249:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent the phrase "the TLA" is vague and ambiguous. Plaintiffs further object to this Request to the extent that it seeks information that is not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant. Plaintiffs further object to this Request on the ground that it is duplicative of other of Defendant's requests, including, for example, RFPs 235 and 236.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to allegations in the Complaint.

25

**REQUEST FOR PRODUCTION NO. 250:**

All Documents, Communications, and Things related to or concerning the ███████ ████████████████████████████ including regarding Qualcomm's licensing thereof under the TLA or an Annex to the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 250:**

Plaintiffs object to this Request as duplicative of RFPs 229, 234, 235, 236, and 249 and hereby incorporate their responses and objections to those Requests as though fully set forth herein. Plaintiffs further object to this Request to the extent the phrase "the TLA or an Annex to the TLA" is vague and ambiguous.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their response to RFP 249.

**REQUEST FOR PRODUCTION NO. 251:**

All Documents, Communications, and Things related to or concerning the ███████ ████████████████████████████ including regarding Qualcomm's licensing thereof under the TLA or an Annex to the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 251:**

Plaintiffs object to this Request as duplicative of RFPs 229, 234, 235, 236, and 249 and hereby incorporate their responses and objections to those Requests as though fully set forth herein. Plaintiffs further object to this Request to the extent the phrase "the TLA or an Annex to the TLA" is vague and ambiguous.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their response to RFP 249.

**REQUEST FOR PRODUCTION NO. 252:**

All Documents, Communications, and Things related to or concerning ███████████████

26

██████████████

████████████████████, including regarding Qualcomm's licensing thereof under the TLA or an Annex to the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 252:**

Plaintiffs object to this Request as duplicative of RFPs 229, 234, 235, 236, and 249 and hereby incorporate their responses and objections to those Requests as though fully set forth herein. Plaintiffs further object to this Request to the extent the phrase "the TLA or an Annex to the TLA" is vague and ambiguous.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their response to RFP 249.

**REQUEST FOR PRODUCTION NO. 253:**

All Documents, Communications, and Things related to or concerning any software test libraries for cores licensed under the TLA, including software test libraries for the ████████ ████████████████.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 253:**

Plaintiffs object to this Request as duplicative of RFPs 229, 234, 235, 236, and 249 and hereby incorporate their responses and objections to those Requests as though fully set forth herein.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their response to RFP 249.

**REQUEST FOR PRODUCTION NO. 254:**

All Documents, Communications, and Things related to or concerning any alleged delay by Arm in providing Qualcomm with products under the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 254:**

Plaintiffs object to this Request as duplicative of RFPs 235, 236, 249, 250, 251, 252, and

27

253 and hereby incorporate their responses and objections to those Requests as though fully set forth herein.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their response to RFP 249.

**REQUEST FOR PRODUCTION NO. 255:**

All Documents, Communications, and Things related to or concerning Arm's "████" core under the TLA, including regarding Qualcomm's licensing thereof under the TLA or an Annex to the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 255:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent the phrase "the TLA or an Annex to the TLA" is vague and ambiguous. Plaintiffs further object to this Request to the extent that it seeks information that is not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant. Plaintiffs further object to this Request to the extent that it is duplicative of other of Defendant's requests, including, for example, RFPs 229, 234, 235, and 236.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce non-privileged documents in

28

their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 256:**

All Documents, Communications, and Things related to or concerning the ███████████ core under the TLA, including regarding Qualcomm's licensing thereof under the TLA or an Annex to the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 256:**

Plaintiffs object to this Request as duplicative of RFPs 229, 234, 235, 236, and 249 and hereby incorporate their responses and objections to those Requests as though fully set forth herein. Plaintiffs further object to this Request to the extent the phrase "the TLA or an Annex to the TLA" is vague and ambiguous.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their response to RFP 249.

**REQUEST FOR PRODUCTION NO. 257:**

All Documents, Communications, and Things related to or concerning the ███████████ core under the TLA, including regarding Qualcomm's licensing thereof under the TLA or an Annex to the TLA.

A0603

**RESPONSE TO REQUEST FOR PRODUCTION NO. 257:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent the phrase "the TLA or an Annex to the TLA" is vague and ambiguous. Plaintiffs further object to this Request to the extent that it seeks information that is not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant. Plaintiffs further object to this Request to the extent that it is duplicative of other of Defendant's requests, including, for example, RFPs 229, 234, 235, and 236.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 258:**

All Documents, Communications, and Things related to or concerning the ▓▓▓▓ ▓▓▓▓▓▓▓▓ under the TLA, including regarding Qualcomm's licensing thereof under the TLA or an Annex to the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 258:**

Plaintiffs object to this Request as duplicative of RFPs 229, 234, 235, 236, and 249 and

30

hereby incorporate their responses and objections to those Requests as though fully set forth herein. Plaintiffs further object to this Request to the extent the phrase "the TLA or an Annex to the TLA" is vague and ambiguous.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their response to RFP 249.

**REQUEST FOR PRODUCTION NO. 259:**

All Documents, Communications, and Things related to or concerning Qualcomm's decision to license cores under the TLA versus designing cores in-house, such as under the Qualcomm ALA, including any evaluations of price, performance, or other relevant factors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 259:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request because the phrases "evaluations," "other relevant factors," and "the TLA" are vague and ambiguous. Plaintiffs further object to this Request to the extent that it seeks information that is not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent that it is duplicative of other of Defendant's requests, including, for example, RFPs 242 and 245.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon

31

custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to the allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 260:**

All Documents, Communications, and Things related to or concerning any rights of Qualcomm under the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 260:**

Plaintiffs object to this Request as duplicative of RFPs 230, 231, and 232 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their responses to RFPs 230, 231, and 232.

**REQUEST FOR PRODUCTION NO. 261:**

All Documents, Communications, and Things related to or concerning any changes or improvements in the ███████████████████ as compared to prior cores.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 261:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request because the phrases "changes or improvements" and "prior cores" are vague and ambiguous. Plaintiffs further object to this Request to the extent that it seeks information that is not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent that it is duplicative of other of

32

Defendant's requests, including, for example, RFP 242.  Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of the Request.

## REQUEST FOR PRODUCTION NO. 262:

All Documents, Communications, and Things related to or concerning comparisons of the ███████████████████████ to other technology on the market, including comparisons of performance and price.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 262:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request because the phrase "comparisons" is vague and ambiguous.  Plaintiffs further object to this Request to the extent that it seeks information that is not relevant to any claim or defense in this case.  Plaintiffs further object to this Request to the extent that it is duplicative of other of Defendant's requests, including, for example, RFP 242.  Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if

33



any, of the Request.

**REQUEST FOR PRODUCTION NO. 263:**

All Documents, Communications, and Things related to or concerning Qualcomm's statement in paragraph 118 of the SAC that, "[f]or example, ███████████████████ ████████████████████████████████████████████████████ ███████████████████████████. Such an increase was not justified by any change or improvement in the technology and is grossly inconsistent with the market for any comparable technology."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 263:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 264:**

All Documents, Communications, and Things related to or concerning any actions taken by Qualcomm as a result of any alleged failure by Arm to license cores under the TLA, including but not limited to shifting resources, identifying RISC-V workarounds, redesigning products, or relying on older chips, as referenced in paragraph 122 of the SAC.

34

**RESPONSE TO REQUEST FOR PRODUCTION NO. 264:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things."  Plaintiffs further object to this Request to the extent the phrase "the TLA" is vague and ambiguous.

**Response:**  Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 265:**

All Documents, Communications, and Things related to or concerning any actions taken by Qualcomm as a result of any alleged withholding by Arm of ███████████████, or other materials under the TLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 265:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all documents and

35

communications." Plaintiffs further object to this Request to the extent the phrase "the TLA" is vague and ambiguous. Plaintiffs further object to this Request to the extent that it seeks information that is not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent that it is duplicative of other of Defendant's requests, including, for example, RFP 264.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their response to RFP 264.

**REQUEST FOR PRODUCTION NO. 266:**

All documents and communications between Qualcomm and any third party regarding the Arm v10 instruction set architecture (ISA), or any current or future designs or products that utilize, are compatible with, or are intended to be compatible with the v10 ISA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 266:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request ion the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request to the extent that it seeks information that is not relevant to any claim or defense in this case.

**Response:** Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of this Request.

**REQUEST FOR PRODUCTION NO. 267:**

All Documents, Communications, and Things summarizing, analyzing, construing, or interpreting any terms of any agreement between Alphawave and Arm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 267:**

36

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent that it seeks production of materials that are in the possession, custody, or control of Defendant.

**Response:** Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of this Request.

**REQUEST FOR PRODUCTION NO. 268:**

All Communications between You and Alphawave that refer to any agreement between Alphawave and Arm, including any reference to terms regarding assignment, termination, or destruction obligations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 268:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Communications" that "refer" to "any agreement" between Arm and Alphawave. Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent that it is duplicative of other of Defendant's requests, including, for example, RFP 267.

37

**Response:**  Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of this Request.

**REQUEST FOR PRODUCTION NO. 269:**

All Communications between You and any third party, including but not limited to regulators, stockholders, investors, or customers, regarding Qualcomm's acquisition of Alphawave.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 269:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Communications."  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense in this case.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of this Request.

**REQUEST FOR PRODUCTION NO. 270:**

All Documents, Communications, and Things relating to requesting consent to assign or otherwise transfer any agreement between Alphawave and Arm, including any decisions regarding whether to request such consent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 270:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is

38

overbroad and unduly burdensome, including because it requests "all Documents, Communications, and Things." Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense in this case. Plaintiffs further object to this Request to the extent that it is duplicative of other of Defendant's requests, including, for example, RFP 268.

**Response:** Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of this Request.

**REQUEST FOR PRODUCTION NO. 271:**

All Documents, Communications, and Things concerning or constituting a request by You to assign or otherwise transfer any agreement between Alphawave and Arm, including any rights under any such agreement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 271:**

Plaintiffs object to this Request as duplicative of RFPs 268 and 270 and hereby incorporate their responses and objections to those Requests as though fully set forth herein.

**Response:** Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of this Request.

**REQUEST FOR PRODUCTION NO. 272:**

All Documents, Communications, and Things concerning or constituting a request by Alphawave to assign or otherwise transfer any agreement between Alphawave and Arm, including any rights under any agreement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 272:**

Plaintiffs object to this Request as duplicative of RFP 270 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response:** Plaintiffs do not intend to produce documents in response to this Request but

A0613

are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of this Request.

**REQUEST FOR PRODUCTION NO. 273:**

All Documents and Communications related to any agreements or licenses between You and ████.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 273:**

Plaintiffs object to this Request as duplicative of RFP 137 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response:** Plaintiffs have produced documents responsive to this Request to the extent they relate to allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 274:**

All Documents and Communications pertaining to any prior actual or prospective dealings between You and ████, including for any ████████████████ between You and ████ including in the period of ████████, including all documents and communications regarding why any such prior, actual, or prospective dealings have not gone forward.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 274:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents and Communications." Plaintiffs further object to this Request on the ground that the phrase "prospective infrastructure deal" is vague and ambiguous. Plaintiffs further object to this Request as irrelevant to the extent it seeks materials concerning dealings with ████ unrelated to the Complaint.

40

**Response:**  Plaintiffs have produced documents responsive to this Request to the extent they relate to allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 275:**

All Documents and Communications related to any agreements or licenses between You and ███████ .

**RESPONSE TO REQUEST FOR PRODUCTION NO. 275:**

Plaintiffs object to this Request as duplicative of RFP 137 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response:**  Plaintiffs have produced documents responsive to this Request to the extent they relate to allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 276:**

All Documents and Communications pertaining to any prior, actual or prospective dealings between You and ███████ , including all documents and communications regarding why any such prior, actual or prospective dealings have not gone forward.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 276:**

Plaintiffs object to this Request as duplicative of RFP 137 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response:**  Plaintiffs have produced documents responsive to this Request to the extent they relate to allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 277:**

All Documents and Communications from ████████████████ concerning Arm or Arm's October 22, 2024 Letter to Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 277:**

Plaintiffs object to this Request as duplicative of RFPs 5, 18, and 122 and hereby incorporate their responses and objections to those Requests as though fully set forth herein.

**Response:**  Subject to and without waiver of any of their objections, and to the extent not

41

duplicative of documents already produced, Plaintiffs will produce documents in accordance with their responses to RFPs 5, 18, and 122.

**REQUEST FOR PRODUCTION NO. 278:**

All Documents and Communications concerning v10 to the Arm ISA, including any internal communications, communications with Arm, and/or communications with third parties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 278:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents and Communications." Plaintiffs further object to this Request on the ground that the phrase "v10 to the Arm ISA" is vague and ambiguous. Plaintiffs further object to this Request to the extent that it is duplicative of other of Defendant's requests, including, for example, RFP 266.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist, that relate to allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 279:**

All Documents and Communications concerning or relating to Qualcomm's understanding or interpretation of the Qualcomm ALA, including regarding the covenant of good faith and fair dealing, ▇▇▇▇▇▇▇ and/or any extensions to the Qualcomm ALA.

42

**RESPONSE TO REQUEST FOR PRODUCTION NO. 279:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents and Communications." Plaintiffs further object to this Request to the extent that it is duplicative of other of Defendant's requests, including, for example, RFPs 42-44.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce non-privileged documents in their custody, possession, or control located through a reasonable, targeted search of agreed-upon custodians designed to reasonably and proportionately identify responsive documents, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 280:**

All Documents and Communications concerning or relating to Qualcomm's development efforts regarding v10 to the Arm ISA, including any documents regarding Qualcomm's reliance on v10.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 280:**

Plaintiffs object to this Request as duplicative of RFP 278 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response:** Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their response to RFP 278.

43

**REQUEST FOR PRODUCTION NO. 281:**

All Documents and Communications concerning or relating to any roadmaps, business plans, competitive analysis, and/or financial forecasts concerning v10 to the Arm ISA and/or products that may include v10 to the Arm ISA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 281:**

Plaintiffs object to this Request as duplicative of RFP 278 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response:**  Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their response to RFP 278.

**REQUEST FOR PRODUCTION NO. 282:**

All Documents and Communications concerning or relating to Qualcomm's knowledge of v10 to the Arm ISA, including all materials concerning a v10 release date and documents regarding the date Qualcomm became aware of v10.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 282:**

Plaintiffs object to this Request as duplicative of RFP 278 and hereby incorporate their responses and objections to that Request as though fully set forth herein.

**Response:**  Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their response to RFP 278.

**REQUEST FOR PRODUCTION NO. 283:**

All Documents and Communications from January 1, 2017, to December 31, 2019, relating to Qualcomm's decision to discontinue the ███████████████████████████ ████████████████████, including internal memoranda, reports, or analyses discussing the decision to terminate ████████████, the testing and performance of the ████████████, and board meeting minutes or presentations addressing the decision to discontinue the █████ █████.

44

**RESPONSE TO REQUEST FOR PRODUCTION NO. 283:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents and Communications."  Plaintiffs further object to this Request because the phrase "Data Center Market" is vague and ambiguous.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense in this case.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of this Request.

**REQUEST FOR PRODUCTION NO. 284:**

All Documents and Communications from January 1, 2020, to the present, relating to Qualcomm's Humain AI MoU, including drafts, executed versions, and amendments of the Humain AI MoU, Communications between Qualcomm and Humain AI regarding the initiation, negotiation, terms, or implementation of the Humain AI MoU, internal Qualcomm Communications, memoranda, or presentations discussing the decision to enter into the Human AI MoU.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 284:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is

45

overbroad and unduly burdensome, including because it requests "all Documents and Communications." Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense in this case.

**Response:** Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of this Request.

## REQUEST FOR PRODUCTION NO. 285:

All Documents and Communications from January 1, 2020, to the present, relating to Qualcomm's decision to re-enter the Data Center Market, including Communications discussing the strategic rationale, market analysis, or financial projections for re-entering the Data Center Market, and Communications, reports, or presentations referencing the use of Nuvia's Arm-based CPU designs in Qualcomm's Data Center Market strategy.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 285:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions. Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law. Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents and Communications." Plaintiffs further object to this Request because the phrases "Data Center Market," "strategic rationale," and "Data Center Market strategy" are vague and ambiguous. Plaintiffs also object to the phrase "Nuvia's Arm-based CPU designs" because it is vague, ambiguous, overbroad, and irrelevant, including because issues related to Nuvia were litigated and resolved in the prior litigation, *Arm Ltd.* v. *Qualcomm Inc.*, No. 22-1146-MN. Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense in this case.

46

**Response:**  Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of this Request.

## REQUEST FOR PRODUCTION NO. 286:

All Documents and Communications from January 1, 2020, to the present, containing statements or representations made by Qualcomm to Arm regarding Qualcomm's intent not to re- enter the Data Center Market.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 286:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions.  Plaintiffs further object to this Request to the extent it seeks the production of documents or the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure recognized by law.  Plaintiffs further object to this Request on the ground that it is overbroad and unduly burdensome, including because it requests "all Documents and Communications."  Plaintiffs further object to this Request because the phrase "Data Center Market" is vague and ambiguous.  Plaintiffs further object to this Request on the ground that it seeks information that is not relevant to any claim or defense in this case.  Plaintiffs further object to this Request on the ground that it seeks production of materials that are in the possession, custody, or control of Defendant.

**Response:**  Plaintiffs do not intend to produce documents in response to this Request but are willing to meet and confer with Defendant regarding the relevance and appropriate scope, if any, of this Request.

## REQUEST FOR PRODUCTION NO. 287:

All Documents and Communications concerning or relating to the negotiation, interpretation, or meaning of ███████████████████████ of the Qualcomm TLA.

47

██████████████

**RESPONSE TO REQUEST FOR PRODUCTION NO. 287:**

Plaintiffs object to this Request as duplicative of RFPs 230, 231, and 232 and hereby incorporate their responses and objections to those Requests as though fully set forth herein.

**Response:**  Subject to and without waiver of any of their objections, and to the extent not duplicative of documents already produced, Plaintiffs will produce documents in accordance with their responses to RFPs 230, 231, and 232.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Catherine Nyarady
Anish Desai
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047

48

███████████

(202) 223-7300

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA  94105
(628) 432-5100

July 11, 2025

49

████████████

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2025, copies of the foregoing were caused to be served upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
*Attorneys for Defendant*

Karen E. Keller, Esquire                                    *VIA ELECTRONIC MAIL*
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
*Attorneys for Defendant*

Nicholas R. Fung, Esquire                                  *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
Sydney D. Gaskins, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017
*Attorneys for Defendant*

Kyle W.K. Mooney, Esquire                                  *VIA ELECTRONIC MAIL*
Alexandra Corrinne Hottenrott, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
*Attorneys for Defendant*

50

**A0624**

████████

Erik J. Olson, Esquire                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Defendant*

Daniel P. Muino, Esquire                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
*Attorneys for Defendant*

Brian M. Kramer, Esquire                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, CA  92130
*Attorneys for Defendant*

William Frentzen, Esquire                 *VIA ELECTRONIC MAIL*
Daralyn J. Durie, Esquire
Shaelyn Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                   *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

51

████████

Jay Emerick, Esquire                                        *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                                  *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*


                                    */s/ Jennifer Ying*
                                    _____
                                    Jennifer Ying (#5550)


52

**A0626**

**In the Matter Of:**

*QUALCOMM INCORPORATED vs*

ARM HOLDINGS PLC -

# SPECIAL MASTER HEARING

# August 22, 2025



1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

███████████████████████████████

QUALCOMM INCORPORATED,  )
a Delaware corporation, )
QUALCOMM TECHNOLOGIES,  )
INC., a Delaware        )
corporation,            )
                        )
     Plaintiffs,        )
                        )Civil Action
v.                      )No. 24-490-MN
                        )
ARM HOLDINGS PLC,       )
f/k/a ARM LTD., a U.K.  )
corporation,            )
                        )
     Defendant.         )


          August 22, 2025
          12:00 p.m.




BEFORE:
     HELENA C. RYCHLICKI, ESQ.
     SPECIAL DISCOVERY MASTER


          TRANSCRIPT OF PROCEEDINGS



               LEXITAS REPORTING
      Registered Professional Reporters
             1330 King Street
         Wilmington, Delaware 19801
              (302) 655-0477
            www.lexitaslegal.com

A0628

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,      )
   a Delaware corporation; and      )
QUALCOMM TECHNOLOGIES, INC.,      )
   a Delaware corporation,      )
                    )
          Plaintiffs,      )      C.A. No. 24-490 (MN)
                    )
     v.      )
                    )
ARM HOLDINGS PLC., f/k/a ARM LTD.,      )
   a U.K. corporation,      )
                    )
          Defendant.      )

**PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI
REGARDING NEWLY-LEARNED FACTS AND SUBSEQUENT EVENTS**

OF COUNSEL:

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

September 15, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

**A0703**

Dear Special Master Rychlicki:

Pursuant to D. Del. LR 7.1.2, Plaintiffs write to advise Your Honor of newly-learned facts and subsequent events that have occurred since the August 14 and 22 hearings that relate to Qualcomm's pending motions to compel production of third-party Arm TLAs and related agreements (D.I. 359; 8/1/2025 Qualcomm Ltr. at 1-2), and supplemental interrogatory responses and 30(b)(6) testimony identifying and explaining relevant terms in these agreements (D.I. 375; 8/11/2025 Qualcomm Ltr. at 4-5).

As Your Honor may recall, at the August 14 hearing, Arm took the position that there was no need to compel production of third-party agreements licensing ████████████ ████████████████████████ because Arm had already produced those documents, except for those subject to pending motions for protective orders. Specifically, Arm's counsel represented: "[I]n terms of parties that do have a license [to ██████████████], we have provided that discovery and sought to provide that discovery unless it was objected to [by the third party], and clearly we have some objections here that we're dealing with today." Ex. 1, 8/14/2025 Tr. 60:16-22. Similarly, at the August 22 hearing, counsel for Arm represented, in opposing Qualcomm's motion to compel supplemental responses to interrogatories 6 and 11:

> So after the SAC allowed and the TLA claims of ████████████████ were in the case, we went and provided discovery on ██████████████ We produced the documents. We produced them on a rolling basis because, as Your Honor knows, third parties have confidentiality interests in those documents. We provided notice to those third parties and an opportunity to object. ██████ did not object and so that agreement was produced. As Your Honor knows, █████████ has objected and that dispute is before you. So that agreement has not been produced yet. In any event, Qualcomm then deposed a number of witnesses about these documents. . . . Now, there's definitely a discrepancy whether Qualcomm thinks it got enough information from those witnesses, but there's no question that it certainly had that opportunity. . . . *they had the documents, so there's no dispute about that.*

Ex. 2, 8/22/2025 Tr. 277:18-278:13, 278:19-23, 279:17-18 (emphasis added).

Following the two hearings, Qualcomm has learned that Arm had not produced all, or even most, of the third-party agreements for ██████████████████ as of the June and July depositions of Arm's witnesses, or even as of the August hearings. To be clear: as of August 22, Arm had produced license agreements for ████████████████ with ███ third parties.[1] Since then, however, Arm has produced license agreements with new third parties: ███████ ████████████████████████████████████ September 4; ███████ ████████████████ last week on September 11; and ██████

---

[1] These were ████████████████████████████████████████████████████ . These ██████ third parties' agreements were also the only ones produced when Qualcomm's opening expert reports were due on August 8. Arm produced ████ additional third parties' agreements before it served its rebuttal report on September 5, 2025, and Arm's expert relied on those newly produced agreements.

███████████████████████████████ just today.  As Your Honor may have seen, a ████████ ████████ new third party (█████████████████████████████████████) moved for protective orders last Thursday.  According to these third parties, they did not receive notice from Arm about production of their agreements until late August, after the August 14 hearing with Your Honor.  In addition, last Friday night, a ████████ new third party, ████████████████ contacted Qualcomm advising that it did not receive notice from Arm until September 4.[2]

Notwithstanding Arm's repeated assurances that it had produced everything not subject to a motion for a protective order, Qualcomm appears only to be receiving additional agreements (and additional third parties have moved for protective orders) now because Qualcomm's counsel scoured the public record for other mentions of Arm licensees who have █████████████ and raised three of those potential licensees with Arm.  *See* 8/7/2025 Arm Opp. to Qualcomm's 8/1/2025 Mot. to Compel at 1 ████████████████████████████████████ ██████████████████████████████████████.  Arm has refused to respond to Qualcomm's questions about (1) why it did not produce these agreements earlier during discovery, (2) whose agreements remain outstanding, or (3) what it has done to ensure that the deficiencies that caused it to miss these agreements in its initial productions are not affecting other areas of its production.  *See* Ex. 3, Correspondence between Arm and Qualcomm Counsel.

As of the date of this letter, Qualcomm remains in the dark about how many additional license agreements for ████████████████████ are still to be produced, when it can expect that production, and why Arm did not produce these agreements within the fact discovery period.  Qualcomm also has not had any opportunity to question any Arm witness about these newly produced documents, making more critical Qualcomm's motion to compel Arm to produce a 30(b)(6) witness that is prepared to testify on relevant terms of third-party agreements.  Qualcomm's motions to compel Arm's third-party agreements for ████████████████████; supplemental interrogatory responses; and 30(b)(6) testimony accordingly present live disputes, despite representations that the subject documents had been produced before Arm's witnesses' depositions and last month's hearings.[3]

Qualcomm respectfully requests that Your Honor grant its motions to compel.  Counsel is available should Your Honor have any questions.

Respectfully submitted,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 1005

---

[2] Qualcomm will be meeting and conferring with ████████ this week, as ████████ has requested.
[3] Qualcomm further notes that its reply expert reports, including one which must address these third-party agreements, are due at the end of this week on September 19.  *See* D.I. 44, ¶ 7(g)(i). The parties' dispositive and *Daubert* motions are due on October 24.  D.I. 44, ¶ 9.  Qualcomm may seek additional relief in the future should it become necessary based upon Arm's belated disclosures.

2

# Exhibit 1

### In the Matter Of:

## QUALCOMM INCORPORATED vs

### ARM HOL██████████████████

## SPECIAL DISCOVERY MASTER HEARING

## August 14, 2025



# Exhibit 2

In the Matter Of:

QUALCOMM INCORPORATED vs

ARM HOLDINGS PLC - ██████████████

# SPECIAL MASTER HEARING

## August 22, 2025



# Exhibit 3

Outlook

---

## RE: Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): RFPs

---

**From** Basner, Adam L <abasner@paulweiss.com>

**Date** Sun 9/14/2025 2:10 PM

**To** Evangelatos, Peter <peter.evangelatos@kirkland.com>; McWilliams, Catharina R. <CMcWilliams@mofo.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <QualcommvArm@dirllp.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>; jying@morrisnichols.com <jying@morrisnichols.com>; Murray, Travis <tmurray@morrisnichols.com>

**Cc** MoFo_Arm <MoFo_Arm@mofo.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com <YCST_Arm_Qualcomm@ycst.com>

Peter,

We note that you have not identified any mischaracterizations in the email.  As to relief, we've identified that we intend to seek as relief, at a minimum, answers to the questions that we have now asked you several times in this thread.  We may also seek other forms of relief, including but not limited to precluding Arm from contending that it complied with ███████ of the TLA.

In addition to the requests in my last email, please also provide us copies of the notice letters you sent to each third-party licensee.

We will be available to discuss these issues on Monday at 4.  Time permitting, we can also discuss Arm's refusal to depose Sureshkumar A M or Tarang Agarwal on the dates we proposed.

Regards,
**Adam L Basner** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
2001 K Street, NW | Washington, DC 20006-1047
+1 202 223 7367 (Direct Phone) | +1 202 478 0493 (Direct Fax)
abasner@paulweiss.com | www.paulweiss.com

---

**From:** Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Sent:** Friday, September 12, 2025 12:26 PM
**To:** Basner, Adam L <abasner@paulweiss.com>; McWilliams, Catharina R. <CMcWilliams@mofo.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; qualcommvarm@dirllp.com; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>; jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** MoFo_Arm <MoFo_Arm@mofo.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): RFPs

Adam,

We continue to disagree with the mischaracterizations in your email, and also note your non-response regarding the specific relief Qualcomm intends to seek. We can discuss this issue during the meet and confer scheduled for Monday at 4 PM ET. Please also be prepared to discuss the depositions of Sureshkumar A M and Tarang Agrawal during the call.

**A0714**

Best,
Peter

**Peter Evangelatos**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3291 **T** +1 516 528 6348

**F** +1 212 446 4900

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

peter.evangelatos@kirkland.com

---

**From:** Basner, Adam L <abasner@paulweiss.com>
**Sent:** Thursday, September 11, 2025 5:25 PM
**To:** Evangelatos, Peter <peter.evangelatos@kirkland.com>; McWilliams, Catharina R. <CMcWilliams@mofo.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; qualcommvarm@dirllp.com; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>; jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** MoFo_Arm <MoFo_Arm@mofo.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): RFPs

---

Peter,

We disagree that you have answered these questions, let alone "several times." Your prior emails state only that Arm has provided notice to an unknown number of unidentified licensees, without providing any of the information that we've requested.

Arm's production this afternoon amplifies our concerns. More than a month and a half after Arm represented that it "produced all third-party agreements to which it has not received an objection or a motion for a Protective Order was not filed," Arm has now produced eight more agreements, and Qualcomm is aware of at least two others (Annapurna Labs, Analog Devices). That Arm did not discover these additional agreements until it "investigated Qualcomm's request" on the July 30th meet and confer is no excuse. Arm has an obligation to make reasonable, good faith efforts to identify and produce responsive documents. D.I. 85 ¶ (1)(c). Arm's apparent failure to do so is prejudicial, as is Arm's refusal to provide any information about the status of its production, including what other third-party licensees exist and when Arm provided notice to them.

Please promptly provide us with Arm's availability this afternoon or tomorrow morning after 10am ET for a meet and confer. In addition to the requests in my below email, please be prepared to explain why Arm initially failed to identify no fewer than ten third-party licensees, as well as what steps Arm has taken to ensure that it has now identified all third-party licensees and that other aspects of its production do not suffer from similar deficiencies.

Qualcomm reserves the right to seek all appropriate relief, including but not limited to an accounting of all of the information requested in this email and my emails on 8/28, 9/3, 9/5, and 9/9.

Regards,
**Adam L Basner** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
2001 K Street, NW | Washington, DC 20006-1047

**A0715**

+1 202 223 7367 (Direct Phone) | +1 202 478 0493 (Direct Fax)
abasner@paulweiss.com | www.paulweiss.com

---

**From:** Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Sent:** Thursday, September 11, 2025 3:46 PM
**To:** Basner, Adam L <abasner@paulweiss.com>; McWilliams, Catharina R. <CMcWilliams@mofo.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; qualcommvarm@dirllp.com; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>; jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** MoFo_Arm <MoFo_Arm@mofo.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): RFPs

Adam,

We responded to your questions several times already, and we disagree with the characterizations in your email. In any event, we can make ourselves available for a meet and confer to discuss them further. We will circle back with a time that works. In the meantime, since you indicated you intend to raise this issue with the Court, please identify what relief Qualcomm intends to seek so we can adequately prepare for the call.

Best,
Peter

**Peter Evangelatos**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━
peter.evangelatos@kirkland.com

---

**From:** Basner, Adam L <abasner@paulweiss.com>
**Sent:** Tuesday, September 9, 2025 6:15 PM
**To:** Evangelatos, Peter <peter.evangelatos@kirkland.com>; McWilliams, Catharina R. <CMcWilliams@mofo.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; qualcommvarm@dirllp.com; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>; jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** MoFo_Arm <MoFo_Arm@mofo.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): RFPs

---

Peter,

Your email is not responsive.  Given Arm's extreme delay in notifying and producing third-party agreements for ███████████████████ including by failing to produce an unspecified number of agreements before the parties' expert reports were filed—Qualcomm is entitled to understand the status of Arm's production and whether there will be further delays.  To that end, we request again that you respond to the following:

1. Confirm that Arm's position is that it has provided sufficient notice, per the terms of the Protective Order in this case, to all third-party licensees fo ███████████████ identified prior to the July 30th meet and

**A0716**

confer.

2. Confirm that Arm has now identified and provided sufficient notice, per the terms of the Protective Order in this case, to all other third-party licensees fo ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

3. Identify the dates on which Arm provided notice to each third-party licensees fo ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ identified on or after the July 30th meet and confer.

4. Identify each third-party licensee fo ▇▇▇▇▇▇▇▇▇▇▇▇▇▇for which Arm has not yet produced its agreements.

Given Arm's refusal to provide information surrounding its notice to third parties and status of third-party production, we would like to meet and confer so we can take this issue to the Court.  We are available on Thursday after noon ET and Friday after 11am ET.   Please let us know what time works for Arm.

Regards,
**Adam L Basner** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
2001 K Street, NW | Washington, DC 20006-1047
+1 202 223 7367 (Direct Phone) | +1 202 478 0493 (Direct Fax)
abasner@paulweiss.com | www.paulweiss.com

---

**From:** Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Sent:** Tuesday, September 9, 2025 11:02 AM
**To:** Basner, Adam L <abasner@paulweiss.com>; McWilliams, Catharina R. <CMcWilliams@mofo.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; qualcommvarm@dirllp.com; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>; jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** MoFo_Arm <MoFo_Arm@mofo.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): RFPs

Adam,

As stated in my previous email, Arm already identified and gave notice to additional third parties that it intends to produce their agreements f ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ We began production of the additional agreements on September 4. As to your other rhetoric, email is not the proper forum for an information exchange regarding Arm's licensees ▇▇▇▇▇▇▇▇▇▇▇▇ There are still a handful of agreements subject to potential third-party confidentiality objections. Arm will produce those agreements as those confidentiality issues are resolved and will update its response to Interrogatory No. 6 in due course.

Best,
Peter

**Peter Evangelatos**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━
peter.evangelatos@kirkland.com

---

**From:** Basner, Adam L <abasner@paulweiss.com>
**Sent:** Friday, September 5, 2025 12:39 PM

**A0717**

**To:** Evangelatos, Peter <peter.evangelatos@kirkland.com>; McWilliams, Catharina R. <CMcWilliams@mofo.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; qualcommvarm@dirllp.com; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>; jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** MoFo_Arm <MoFo_Arm@mofo.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): RFPs

_____

Peter,

We have not received a response to the below email.  Please confirm that Arm's position is that it has given sufficient notice, per the terms of the Protective Order in this case, to all third-party licensees fo ███████████ ███████ dentified prior to the July 30th meet and confer, and that Arm has now completed its notices to the newly identified third parties.

We received Arm's production number 23, which appears to contain additional third-party agreements not including the three that we identified on July 30.  We are troubled that Arm failed to identify at least eight third-party agreements during discovery, all of which are necessary to test Arm's assertion that it complied wit ███████ ██ f the TLA.  Please confirm that Arm has now identified all licensees fo ████████████████ and identify any licensees not included in the production.

Regards,
**Adam L Basner** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
2001 K Street, NW | Washington, DC 20006-1047
+1 202 223 7367 (Direct Phone) | +1 202 478 0493 (Direct Fax)
abasner@paulweiss.com | www.paulweiss.com

_____

**From:** Basner, Adam L
**Sent:** Wednesday, September 3, 2025 9:44 AM
**To:** Evangelatos, Peter <peter.evangelatos@kirkland.com>; McWilliams, Catharina R. <CMcWilliams@mofo.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; qualcommvarm@dirllp.com; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>; jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** MoFo_Arm <MoFo_Arm@mofo.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): RFPs

Peter,

We understand from your response that Arm's position is that it has given sufficient notice, per the terms of the Protective Order in this case, to all third-party licensees for ██████████████████, other than those newly identified during or after the July 30 meet and confer.  Please confirm.

It is troubling that Arm failed to identify all the third-party licensees fo ████████████████ when Arm received these RFPs months ago.  Qualcomm identified three additional licensees from public sources alone, but the complete list of licensees is uniquely within Arm's control and should be readily available.  Your email implies that there are additional "omitted" parties beyond the three Qualcomm identified during the July 30 meet and confer.  Please identify any such licensee and confirm that Arm has now identified all licensees fo ████████████ ███████

You may share the cited RFPs with these licensees.

Regards,

**Adam L Basner** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
2001 K Street, NW | Washington, DC 20006-1047
+1 202 223 7367 (Direct Phone) | +1 202 478 0493 (Direct Fax)
abasner@paulweiss.com | www.paulweiss.com

---

**From:** Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Sent:** Tuesday, September 2, 2025 1:11 PM
**To:** Basner, Adam L <abasner@paulweiss.com>; McWilliams, Catharina R. <CMcWilliams@mofo.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; qualcommvarm@dirllp.com; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>; jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** MoFo_Arm <MoFo_Arm@mofo.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): RFPs

Adam,

We disagree with the mischaracterizations in your email. During the July 30 meet and confer, Qualcomm for the first time raised an issue regarding whether Arm had produced all its agreements f ▮▮▮▮▮▮▮▮▮ o as allegedly having licenses t ▮▮▮▮▮▮▮ based on "public reporting." 7.30.25 M&C Transcript at 45-50. Two days later in its 8/1 letter to the Special Master, Qualcomm submitted this "public reporting" to the Special Master as exhibits 15-17 to its letter brief. As we informed you at both the meet and confer and in our responsive letter, Arm believed its production was complete but nonetheless agreed to investigate Qualcomm's request. 7.30.25 M&C Transcript at 50; 8.7.25 Arm Letter Brief at 1. Thus, there is nothing "troubling" about the correspondence below, and citing to a letter from before Qualcomm raised this issue or an RFP from even earlier is inapposite.

Arm has investigated Qualcomm's request and located addition ▮▮▮▮▮▮▮▮▮▮▮ agreements that were omitted from the production. Consistent with our representations in both hearings and the scope of discovery we have provided throughout the case, Arm will produce the agreements absent objection from the third parties to which they belong. Indeed, that is what we represented to the Special Master and neither cited transcript excerpt states that Arm "produced all relevant third-party agreements." If Arm receives an objection or a third party files a protective order motion, we will withhold that third party's agreement pending resolution of the dispute. We have already provided notice to the third parties. Arm will also supplement its response to Interrogatory No. 6 as appropriate.

We also understand from your lack of a response regarding our request to share the RFPs that you have no objection to us doing so. Please confirm.

Best,
Peter

**Peter Evangelatos**
═══════════════════════════════════

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900

**A0719**

peter.evangelatos@kirkland.com

---

**From:** Basner, Adam L <abasner@paulweiss.com>
**Sent:** Tuesday, September 2, 2025 12:43 PM
**To:** McWilliams, Catharina R. <CMcWilliams@mofo.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; qualcommvarm@dirllp.com; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>; jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** MoFo_Arm <MoFo_Arm@mofo.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): RFPs

---

Counsel,

We have not received a response to the below email.  Please promptly provide us with the information requested.

Regards,
**Adam L Basner** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
2001 K Street, NW | Washington, DC 20006-1047
+1 202 223 7367 (Direct Phone) | +1 202 478 0493 (Direct Fax)
abasner@paulweiss.com | www.paulweiss.com

---

**From:** Basner, Adam L
**Sent:** Thursday, August 28, 2025 1:49 PM
**To:** McWilliams, Catharina R. <CMcWilliams@mofo.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; qualcommvarm@dirllp.com; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>; jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** MoFo_Arm <MoFo_Arm@mofo.com>; #KE-ARM-Qualcomm <ke-arm-qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** RE: Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): RFPs

Counsel,

It is troubling to receive this request from Arm now.  Arm represented to Qualcomm and the Special Master that Arm has produced all relevant third-party agreements for licensees o ▮▮▮▮▮▮▮▮▮▮▮▮ other than for those who have moved for a protective order.  2025.07.24 Letter from J. Emerick to C. Nyarady;  2025.08.14 Hr'g 56:5-14; 2025.08.22 Hr'g 276:19-23.  Given these representations, we would have expected that Arm has already given the notice required under the protective order to these third parties.  The latest of the RFPs listed in your email were served in April, and the SAC was entered in June.  Arm should have "promptly" given notice at that time.  D.I. 84 ¶ 51.

Please describe the status of Arm's notices to third parties, including what documents or information have been provided to third parties and which ones.  Qualcomm reserves all rights.

Regards,
**Adam L Basner** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
2001 K Street, NW | Washington, DC 20006-1047

**A0720**

+1 202 223 7367 (Direct Phone) | +1 202 478 0493 (Direct Fax)
abasner@paulweiss.com | www.paulweiss.com

---

**From:** McWilliams, Catharina R. <CMcWilliams@mofo.com>
**Sent:** Wednesday, August 27, 2025 11:18 PM
**To:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; qualcommvarm@dirllp.com; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>; jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** MoFo_Arm <MoFo_Arm@mofo.com>; #KE-ARM-Qualcomm <ke-arm-qualcomm@kirkland.com>; YCST_Arm_Qualcomm@ycst.com
**Subject:** Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): RFPs

Counsel,

Please confirm we may share the content of Qualcomm's Requests for Production Nos. 34, 58, 123, 124, and 165 with Arm's licensees f ██████████████████████

Regards,

**Catharina McWilliams**
Associate
cmcwilliams@mofo.com
T: +1 (213) 892-5603

Morrison Foerster
707 Wilshire Boulevard
Los Angeles, CA 90017-3543

**IIIORRISON FOERSTER**

mofo.com | LinkedIn

=================================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have

**A0721**
██████████

received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

**A0722**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| QUALCOMM INC., a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation, <br><br> Defendant. | C.A. No. 24-490-MN <br><br>  |

## DEFENDANT ARM HOLDINGS PLC'S
## RESPONSE TO QUALCOMM'S SEPTEMBER 15, 2025 LETTER
## TO SPECIAL MASTER RYCHLICKI

Dated: September 19, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

Dear Special Master Rychlicki:

We write in response to Qualcomm's September 15, 2025, letter regarding Arm's production of Technology License Agreements ("TLA") between Arm and third parties for the ███████████ cores, and to advise Your Honor of events that have occurred since the August 14 and 22 hearings relating to Arm's pending motion to compel the deposition of Pradeep Kanapathipillai.

**1. Qualcomm's Motions To Compel Documents Arm Has Already Produced Should Be Denied.**

Qualcomm's letter feigns surprise at Arm's recent production of additional TLAs, claiming it is "in the dark" as to why Arm is now producing them. Yet Qualcomm omits that it knows precisely why Arm was producing these additional TLAs: Arm made this production **at Qualcomm's request** and to resolve an outstanding discovery dispute before Your Honor. Arm's production of these additional TLAs—which will soon be complete—moots Qualcomm's request for these documents, and its motions to compel should thus be denied.[1]

Qualcomm knows precisely why Arm is producing these TLAs. On a July 30 meet and confer, Qualcomm alleged that Arm's production during fact discovery of TLAs for ████ ███████████ was incomplete, stating that unspecified "public reporting" suggested there were certain other TLAs that had not yet been produced. Ex. 1 (7/30/25 M&C Tr.) at 49:22-50:9. Arm immediately responded on that meet-and-confer that "[w]e're happy to investigate those further and see what the story is" and "whether we left them out, whether there are any others." *Id*. at 50:17-20. From the very beginning, Arm was open with Qualcomm that it would investigate Qualcomm's request.

Notwithstanding Arm's immediate agreement to investigate, two days later Qualcomm moved to compel on this issue in its August 1 letter brief to Your Honor. Ex. 2 (8/1/2025 Ltr.) at 1. Arm responded again to Qualcomm—and the Special Master—that it was investigating this issue:

> Qualcomm's request for additional licenses to those cores should be denied as premature. Qualcomm raised this issue for the first time on July 30, two days before its opening brief, and **Arm agreed to investigate the existence and production of additional licenses that may cover** ███████████ (subject to any third-party intervention). The parties are therefore not at an impasse, and Qualcomm never submitted it to the Court as required by the Court's and Special Master's orders. (Ex. 4, Ex. 5.)

Ex. 3 (8/7/2025 Arm's Responsive Ltr.) at 1. Qualcomm argued in its August 1 letter and suggests again in its September 15 letter that Arm made incorrect representations to Qualcomm and the Special Master regarding the status of its TLA production, but Arm has been fully open that while it believed its production of TLAs was complete, it would investigate whether its production omitted other TLAs for ███████████ .

---

[1]  *See* QC Aug. 1, 2025 Letter, Part I ("TLAs"); QC Aug. 11, 2025 Letter, Part IV (Interrogatory Nos. 6, 11).

1

Just as Arm said it would, it promptly investigated Qualcomm's allegations and confirmed that certain third-party ████████████████ agreements were inadvertently omitted from Arm's production. Arm then promptly provided notice to each additional third party that it would produce their ██████████████████ agreements. As the notice periods expired, Arm produced the additional ████████████ agreements to Qualcomm on a rolling basis, including on September 4, 11, 15, 16, and 19. Arm's production of the TLAs that were omitted from its previous production is nearly complete: Arm expects to produce agreements from ██████ imminently, and Arm understands that Qualcomm is negotiating with ██████ regarding production of its agreements. That resolves the issue other than for two of the additional third parties, Annapurna and Analog Devices, who have objected to disclosure of their agreements and filed protective order motions with the Court and Your Honor. D.I. 386, 390.

Arm's additional productions moot Qualcomm's motions to compel, which should be denied. As Arm stated in its August 7 letter brief, Arm agreed to produce agreements with third parties for ████████████████ in effect at the time. Ex. 3 at 1. Arm also already agreed to supplement its response to Interrogatory No. 6, and will promptly do so once it completes production. QC Ex. 3 at 5, 7. Qualcomm appears to also be seeking additional deposition time with an Arm 30(b)(6) witness "prepared to testify on relevant terms of third-party agreements." As Arm explained at the August 22 hearing, Qualcomm already had the opportunity to depose five witnesses about Arm's agreements, and chose to spend only 2 hours with Arm's 30(b)(6) witness, Ehab Youssef, on the October 2024 offer. Nonetheless, Arm agrees to make Mr. Youssef available for an additional 2 hours of deposition time on Qualcomm's Topics 20 and 29 (subject to Arm's previously-served objections) after Arm completes its production and the third-party TLA licensee protective order motions are resolved. Thus, Qualcomm already has the relief it seeks, its motions to compel as they relate to ████████████████ discovery are moot, and its September 15 letter only highlights that its motion should be denied.

Once again—as Qualcomm has now repeatedly done—Qualcomm served Your Honor with its letter before even attempting to resolve this issue with Arm. The parties were scheduled to meet and confer on this issue at 4 PM on September 15, and Qualcomm served its letter at 1:41 PM. Had Qualcomm waited another two hours for the parties to meet and confer, it would not have needed to raise this dispute with Your Honor. At the meet-and-confer, Arm answered Qualcomm's questions regarding the additional TLA production, as it sought to do in correspondence leading up to that call. QC Ex. 3.

Qualcomm's September 15 letter further seeks information regarding "*why* Arm did not produce these agreements within the fact discovery period." QC Ltr. at 2 (emphasis added). This request is also moot; Arm has already provided this information to Qualcomm. As explained above, the inadvertent omission in Arm's production was discovered because of a request from Qualcomm in a July 30 meet-and-confer, which Arm has repeatedly told Qualcomm. QC Ex. 3 at 7; Ex. 4 (9/15/25 Tr.) at 39-47. To the extent Qualcomm is seeking information about Arm's in-house counsel's and outside counsel's document collection, review, and production, and communications regarding the same, that information is privileged.

Qualcomm states that it "may seek additional relief" on this issue, and in a September 14 email suggested that Arm should be precluded "from contending that it complied with ██████ of the TLA." QC Ltr. Br. at 2 n.3; QC Ex. 3 at 2. Any such relief should be denied, and there is no basis for a discovery sanction, let alone one that awards Qualcomm with what

2

is effectively summary judgment of breach on the TLA, for which Qualcomm seeks a billion-dollar damages award.

Finally, while Qualcomm's letter broadly asks that "Your Honor grant its motions to compel," Qualcomm omits that subsumed within that request are other issues completely unrelated to the ███████████████ agreements or any other issue related to the SAC. More specifically, Qualcomm also seeks discovery on numerous other TLA products, including ████████████ ███████████████████ among others, that are entirely absent from the SAC. For the reasons set forth in Arm's August 18 letter and supplemental brief, Qualcomm is not entitled to that discovery. Ex. 8 (8/18/2025 Arm's Responsive Ltr.) at 1–2.

Qualcomm's motions to compel should be denied.

**2. Qualcomm's Continued Refusal To Offer Mr. Kanapathipillai For Deposition While Offering New Witnesses Is Improper.**

Qualcomm continues to improperly refuse to offer a deposition date for Pradeep Kanapathipillai. Arm properly noticed him. He is not an *Apex* witness. And Qualcomm's own Senior Director of Engineering, Gerard Williams, testified that he has relevant personal knowledge because he is "directly responsible" for Qualcomm's at-issue verification efforts and thus is knowledgeable about Arm's alleged withholding of verification support (OOBs and ACK patches) and Qualcomm's alleged resulting harm. Ex. 9 at 3. Qualcomm's recent conduct confirms as much.

On August 29, Qualcomm offered deposition dates for two *different* noticed witnesses, Tarang Agarwal and Sureshkumar AM. Ex. 5 (8/29/2025 C. Nyarady Email). They are both based in India and would fly to California for their depositions. Arm was surprised by Qualcomm's offer of these dates not only because Qualcomm still has not offered a deposition date for Mr. Kanapathipillai, who lives in California, but also because Qualcomm had represented to Arm a month earlier that "there's not going to be a deposition" of Mr. Agarwal and Mr. AM because their visas "can take, you know, like 18 months." Ex. 6 (7/28/2025 M&C Tr.) at 76:3-77:20. Arm responded to Qualcomm, stating that "[a]s you know, we currently have a dispute pending with the Special Master in which we've sought the deposition of Pradeep Kanapathipillai. If our motion is granted, we intend to use our remaining deposition time with Mr. Kanapathipillai and would not depose Tarang Agarwal or Sureshkumar AM. If our motion is denied, we can revisit the depositions of Tarang Agarwal or Sureshkumar AM at that time." Ex. 7 (9/10/2025 J. Emerick Email). Qualcomm refused to do so, and refused to provide alternative dates for Tarang Agarwal and Sureshkumar AM.[2] Ex. 4 at 56:3–59:16.

Qualcomm's offering of deposition dates for these two witnesses more than one month after the close of fact discovery illustrates that its objections to Arm's purported "delay" with respect to Mr. Kanapathipillai are meritless. Qualcomm's offer also illustrates the lengths it is willing to go to avoid Mr. Kanapathipillai's deposition: the parties have a deposition-hours limit in this case, and Qualcomm is willing to fly *two* witnesses from *India* to California to expend Arm's remaining deposition time to avoid one deposition of Mr. Kanapathipillai, who

---

[2]   Arm reserves all rights with respect to Tarang Agarwal and Sureshkumar AM's deposition in the event the Special Master denies Arm's motion to compel Mr. Kanapathipillai's deposition.

lives in California.  There is no prejudice to Qualcomm in making Mr. Kanapathipillai, a California-based employee, available for deposition.

Respectfully,

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)

Word Count: 1673

Enclosures: Exhibits 1–9

4

**A0728**

# Exhibit 1

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
Case No. 1:24-cv-00490-MN
- - - - - - - - - - - - - - - - - - - x
QUALCOMM INCORPORATED, a Delaware
corporation, QUALCOMM
TECHNOLOGIES, INC., a Delaware
corporation,

                    Plaintiff,
       - against -
ARM HOLDINGS PLC., f/k/a ARM
LTD., a U.K. corporation,

                    Defendant.

- - - - - - - - - - - - - - - - - - - x
                    July 30, 2025
                    10:30 a.m.


      TRANSCRIPT OF MEET AND CONFER, held
telephonically before Sara K. Killian, a
Registered Professional Reporter, Realtime
Certified Reporter and Notary Public.

A0730

Page 2

APPEARANCES:

PAUL WEISS RIFKIND WHARTON & GARRISON, LLP
Attorneys for Plaintiffs
1285 Avenue of the Americas
New York, New York 10019
BY: CATHERINE NYARADY, ESQ.
    JAKE BRALY, ESQ.
    JACOB APKON, ESQ.
    ADAM BASNER, ESQ.

MORRIS NICHOLS ARSHT & TUNNELL LLP
Attorneys for Plaintiffs
1201 North Market Street, 16th Floor
Wilmington, Delaware 19899
BY: JENNIFER YING, ESQ.

Page 3

APPEARANCES: (cont'd)

KIRKLAND & ELLIS LLP
Attorneys for Defendant
601 Lexington Avenue
New York, New York 10022
BY: PETER EVANGELATOS, ESQ.
    ADAM JANES, ESQ.
    JAY EMERICK, ESQ.
    MATT McINTEE, ESQ.

MORRISON FOERSTER LLP
Attorneys for Defendant
755 Page Mill Road
Palo Alto, California 94304
BY: CATHARINA McWILLIAM, ESQ.

Page 4

MR. EVANGELATOS: Good morning, everyone. This is Peter from Kirkland. This is a follow-up meet and confer that we started earlier on in the week on a variety of discovery issues.

I want to note for the record, before we get started, that we sent an email requesting to meet and confer on a variety of topics, including interrogatories and RFAs and since we don't have Qualcomm's responses to those, we began meeting and conferring on those earlier in the week, including on the interrogatory responses.

There was no issue with Qualcomm responding and Qualcomm has now noted, before the meet and confer first started, that it's refusing to further meet and confirm on those issues because Arm sent two letters just prior to the call.

We disagree and think that's improper and we reserve rights.

MS. NYARADY: So this is

Page 5

Catherine Nyarady from Paul Weiss. That's not entirely accurate, what you said.

The letters that were sent concern a bunch of interrogatories and RFA responses. The letter was sent after we started the meet and confer. I just opened it, have not had a chance to read it. We only covered one interrogatory last time.

Had you wanted to do this without a letter, that's fine. Your email asking to confer on the interrogatories and the RFAs has no specificity, doesn't even identify the numbers of which ones you wanted to talk about and now we have an outstanding letter with what appears to be pages of complaints that I have not had a chance to review.

And so I didn't refuse to meet and confer. What I asked for was time to review the letter and I asked for your availability later today, which

2 (Pages 2 - 5)

Page 46

of the products, support and maintenance terms for each of the identified products and any restrictions imposed on engineering development efforts for the identified products.

I think this ROG response is also incomplete. I think as an initial matter, Arm objects to the inclusion of [REDACTED] which I know we discussed. There's just disagree whether those are in the case or not. I think for our purposes we think the response is incomplete.

Then additionally Arm has responded by incorporating produced third-party agreements that apparently cover the cores in question.

We believe that the production is deficient. If you look at public reporting, it appears that there are additional companies that have licensed [REDACTED] that are not

Page 47

included in Arm's productions and the companies in question have not moved for a protective order.

Additionally, the produced agreements indicate royalties are sent out in annexes -- or at least some of them do -- but annex one has not been produced and Arm has also not identified the specific royalty rates and licensing fees for [REDACTED] in each agreement.

Given that Arm has specialized knowledge of these agreements and has disclosed that at least [REDACTED], for example, is one of the companies relied on in the [REDACTED] we think it appropriate for Arm to provide that information.

MR. EVANGELATOS: So this is Peter from Kirkland.

So for the first part as to non [REDACTED], I think our position has been before clear and we talked about it earlier in the week and

Page 48

in the last meet and confer about the scope of your TLA allegations and we also spoke about in the meet and confer how we disagree that you guys putting in new theories after the closing of batch discovery on all these other products is proper.

So our view is we properly limited the scope of the ROG response to [REDACTED]

I don't think we need to belabor that point or beat a dead horse any further, but I'm happy to continue talking about that if you want to discuss that before I move on to the next point.

MR. BRALY: Yeah, I would just note -- I understand that that's your position.

I would just note that your first response to the interrogatory was on June 16, 2025, which obviously is prior to the close of fact discovery. We had asked for information about

Page 49

those cores, you objected, saying that you didn't think that they were relevant.

So obviously we clearly had asked for discovery on those. You knew that those were cores that we were interested in and thought were related to Arm's bad faith conduct, given that you wrote a response in June about that.

But I understand there's a disagreement as to whether you think they're in the case or not.

MR. EVANGELATOS: Yes. We certainly disagree and I think you've known about those allegations or the basis for those allegations for years and you chose not to put them in your complaint.

But anyway, we could move on.

For the second piece of your request, do you have a list of these other licensees you are referring to? That is the first I'm hearing of that

13 (Pages 46 - 49)



**Page 50**

and I don't think you ever said that before. So what other licensees or supposed licensees are you referring to?

MR. BRALY: Well, I mean, this is public reporting. I would think you would know better than we would. It's just from public reporting.

MR. EVANGELATOS: So if you have this information, supposedly based on public sources, then you're looking at something.

We're happy to investigate those further and see what the story is and why or, you know, whether we left them out, whether there are any others.

MR. BRALY: Those are the only ones that we see from public information. I think you would know better than us who Arm has licensed these CPUs to and we would expect that

**Page 51**

you would have produced the TLA agreements with those companies, especially given that they haven't moved for a protective order.

MR. EVANGELATOS: We'll take back your request to consider it.

I don't agree that, you know, just because they haven't moved at this time -- we'll take it back and consider it.

Can you just remind me of the other parts of your request? I know we talked about two of the issues so far.

MR. BRALY: Yes.

MR. EVANGELATOS: Which agreements are you referring to?

MR. BRALY:

MR. EVANGELATOS: Those are

**Page 52**

MR. BRALY: So it's three different agreements, three different companies and the agreements indicate

MR. EVANGELATOS: Thank you.

MR. BRALY: Yes.

MR. EVANGELATOS: Okay. We'll take that back.

The spirit of our response was intended to provide you the licensing information and the terms for             so again, we'll take that back and look into that and see if we could, you know -- if what we produced does not have that

**Page 53**

information, then we'll take it back and look at the agreement.

MR. BRALY: Okay.

Then the last part that I had mentioned is the fact that the response does not identify the licensing fee and the royalty rate for             with these third parties, which is the basis for Arm saying that there was an appropriate

MR. EVANGELATOS: This is Peter.

You're looking for, like, a chart or something that summarizes that information? Is that fair?

14 (Pages 50 - 53)

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,                )
   a Delaware corporation; and        )
QUALCOMM TECHNOLOGIES, INC.,          )
   a Delaware corporation,            )
                          )
            Plaintiffs,            )   C.A. No. 24-490 (MN)
                          )
       v.                          )
                          )
ARM HOLDINGS PLC., f/k/a ARM LTD.,    )
   a U.K. corporation,                )
                          )
            Defendant.             )

**PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI
REGARDING OUTSTANDING DISCOVERY DISPUTES**

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

**A0735**

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

August 1, 2025

Dear Special Master Rychlicki:

In August 2022, Arm sued Qualcomm for developing unlicensed technology after Arm terminated agreements with Qualcomm subsidiary Nuvia. *Arm Ltd.* v. *Qualcomm Inc.*, C.A. 22-1146 (MN), D.I. 1 ¶ 78. Rather than waiting for resolution through litigation, Arm engaged in self-help, withholding licensed technology from Qualcomm, refusing to license other technology, and interfering with Qualcomm's customer relationships. D.I. 137 ("SAC"). Qualcomm filed this lawsuit. D.I. 2. In December 2024, the *Arm* v. *Qualcomm* jury found the Qualcomm CPUs licensed. C.A. 22-1146 (MN), D.I. 572 at 1.

## I.    Refusal to Produce Unredacted Third-Party Agreements

**TLAs.** Qualcomm needs Arm's TLAs and related agreements—and associated 30(b)(6) testimony (**RFPs 123, 140; Topics 2, 9**)[1]—to prove quotes Arm gave Qualcomm for Arm Cortex Implementation Cores (codenamed ███████████████) violated the Qualcomm TLA, which requires ████████████████████████████████████ ██████████████ SAC ¶¶ 104-105; Ex. 8 █████████ Arm claims it based the October 2024 quote on ████████████████ agreements. Ex. 9 at 23:1-24; Ex. 10 at 97:12-98:2; Ex. 11 at 65:24-72:9. Arm should produce all[2] agreements, so Qualcomm can test whether Arm based its ████████ ████████████████████████ and whether Arm's quotes for other IP violated the implied covenant of good faith and fair dealing. Arm should also produce a witness on the agreements' royalty rates.

Arm claims it "produced all third-party agreements" licensing the Implementation Cores "to which it has not received an objection or a motion for a Protective Order was not filed." Ex. 12 at 2.[3] Arm's withholding based on mere "objections" is improper under the Protective Order. D.I. 84 ¶ 51. Arm's representation also is inaccurate: it has not produced agreements for several entities licensing these products, including █████ (Ex. 14), █████████████ (Ex. 15), and ████████████ (Ex. 16). And Arm omitted Annexes for several agreements that contain pricing information. Ex. 17 (████████); Ex. 18 (████████); Ex. 19 (█████). Finally, Arm improperly limits production to TLAs licensing ██████████████████, but Qualcomm's claims allege Arm provided unreasonable quotes for other TLA IP. SAC ¶¶ 51, 102.

Arm also put these third-party agreements at issue by using the fact that Qualcomm has not seen third-party TLAs to cross-examine Qualcomm witnesses, asking whether they were aware of pricing of ██████████████████ in third-party TLAs and whether the rates provided to Qualcomm were accepted by the industry. Ex. 20 at 106:6-107:22; Ex. 21 at 49:16-19, 53:8-22.

---

[1] "RFP" refers to Qualcomm's requests for production, Exhibits 1-4. "Topic" refers Qualcomm's Notice of Rule 30(b)(6) Deposition of Arm, Exhibit 5. "Interrogatory" refers to Qualcomm's interrogatories, Exhibits 6-7.

[2] With respect to ██████ agreements, Morris, Nichols, represents Qualcomm.

[3] ████ agreed to production of its TLA and related agreements, Ex. 13, yet Arm has not produced them.

Arm cannot challenge Qualcomm's knowledge of third-party pricing while simultaneously withholding it.

**ALAs.** Arm breached the Qualcomm ALA by withholding out-of-box packages ("OOBs") and Architecture Compliance Kit ("ACK") patches. SAC ¶¶ 173-180. Arm argues it was not obligated to deliver that technology, including because it is not ████████████ under the ALA. Ex. 22. Arm provided that technology to other licensees, Ex. 45 at 94:25-97:16, 126:8-127:4, thus, Qualcomm seeks to determine whether the definition of and obligation to deliver ████ ████████ is the same in those partners' ALAs.

Additionally, in May 2020, Qualcomm elected to extend the Qualcomm ALA to ████ ████████████████████████ including Armv10. SAC ¶¶ 128-134, 184. ████ ████████████████████████████████████ *id.* ¶ 65; Ex. 23, yet Arm failed to respond to Qualcomm's election for five years, violating the implied covenant of good faith and fair dealing. Arm denies a breach, claiming it engaged in good faith negotiation even though Qualcomm's election was improper and the ALA would not cover v10. Ex. 24. Qualcomm needs to review other ALAs to address Arm's defense.

In *Arm* v. *Qualcomm*, Arm produced limited heavily redacted ALAs, which are insufficient here. Qualcomm needs *all* unredacted ALAs and the annexes thereto (**RFP 27; Topics 2, 7**) to evaluate the scope of deliverables and rights of other licensees treated differently than Qualcomm. For example, the produced ALAs redact ████████████████ " terms, Ex. 25 at 2, 4, 12, yet Arm argues it did not breach the Qualcomm ALA because the OOBs and ACK patches are ████████ and not "████████████," Ex. 22 at 6, 10. Arm also redacted all fee and royalty information, Ex. 25, and refused to produce ████████████████ (**RFP 162**), both necessary to test Arm's claim of good faith negotiation. At least ████ agreed to produce its ALA (with limited redactions that do not relate to the provisions at issue), Ex. 13, yet Arm has not produced that document.

As with the TLAs, Arm also questioned multiple Qualcomm witnesses regarding their knowledge of terms in third-party ALAs and whether those terms were comparatively advantageous to Qualcomm, while withholding the agreements that would allow Qualcomm to refute the implications of Arm's examinations. Ex. 20 at 57:2-18; Ex. 26 at 78:14-21, 80:12-21, 164:17-25. This is improper: Qualcomm must be allowed to probe Arm's defenses.

## II.    Improper Privilege Determinations

Arm withheld or redacted documents based on improper privilege assertions. The relevant documents should be produced and redactions should be lifted.

**Communications with FGS Global.** Qualcomm asserted claims arising from the leak by Arm's counsel (MoFo) and communications firm (FGS Global) to Bloomberg News of an October 22, 2024 letter Arm wrote to Qualcomm threatening to terminate Qualcomm's ALA. Arm and FGS Global assert communications about the leak are privileged (including "common interest") or work product. Exs. 29; 46 (FGS Emails). But generic "public relations services," including "[r]eviewing press coverage, making calls to various media to comment on developments in the litigation, and even 'finding friendly reporters,'" are not protected. *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 3140050, at *13-14 (D.N.J. July 22, 2021); *In re Riddell Concussion*

2

A0738

*Reduction Litig.*, 2016 WL 7108455, at *9 (D.N.J. Dec. 5, 2016), *aff'd in relevant part*, 2017 WL 11633446 (D.N.J. Jan. 5, 2017). FGS was engaged by Arm, not its outside counsel.[4] Ex. 28 at 24:2-27:20, 57:17-23. And common interest privilege is merely "an extension of the attorney-client privilege or an exception to the waiver of that privilege." *10x Genomics, Inc.* v. *Celsee, Inc.*, 505 F. Supp. 3d 334, 337 (D. Del. 2020).

**Improper Date Cutoff.** Arm failed to log documents dated after the original April 2024 Complaint. The ESI Order required a privilege log of withheld documents generated prior to "the filing of the Complaint." D.I. 85 ¶ 1(e)(ii). The operative "Complaint" contemplated by the March 21, 2025 ESI Order was the December 16, 2024 First Amended Complaint. D.I. 36. Qualcomm's claims are partly based on post-April 2024 conduct, including Arm's October 22, 2024 letter. While Arm eventually logged 27 entries for "documents relating to Arm's communications with Bloomberg regarding the notice" and related follow up communications, D.I. 162 at 4, it otherwise refused to log withheld documents dated from April 18 and December 16, 2024. Ex. 29.

**Subject Lines Redactions.** Arm redacted for privilege subject lines for four meetings with outside counsel regarding the leak. Exs. 30-33. Arm also clawed back metadata revealing subject lines for 18 documents. Ex. 34. In addition to the subject lines not being privileged, the ESI Order contemplates a party challenging a privilege claim may "request metadata for individual documents and emails," D.I. 85 ¶ 1(e)(v)(1), and such metadata will include "Email Subject," *id.* ¶ 2(p).

## III.    Failure to Provide Discovery

Arm refused to produce documents or provide 30(b)(6) testimony on entire categories of relevant information, prejudicing Qualcomm.

### A.    Breach of Qualcomm ALA

**Withheld Technology.** In support of its ALA breach claim, Qualcomm requested documents regarding the technology and information Arm provided to other ALA licensees but not to Qualcomm, including, for example, versions of Arm's ACK from the relevant time period and any patches thereto (**RFP 6; Topic 14**); documents and communications regarding ACK patches (**RFPs 31, 67, 77, 139; Topic 14**) and OOBs (**RFPs 33, 67; Topic 14**). SAC ¶ 175.

Arm would only produce lists of technology made centrally available for licensee download on an Arm platform and technical documents it claims are "sufficient to show" the OOB and ACK patch development and timeline. Ex. 35 at 2, 7-8; Ex. 36 at 5; Ex. 37 at 18. But ACK patches and OOBs are not available on the platform in question and Qualcomm found no

---

[4] Arm's cases, Ex. 27, show no privilege attaches where the client, not a law firm, retains the PR firm. *In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 331 (S.D.N.Y. 2003) (no privilege for communications had client "hired Firm directly"); *Stardock, Sys., Inc.* v. *Reiche*, 2018 WL 6259536, at *3, *6 (N.D. Cal. Nov. 30, 2018).

3

**A0739**

documents in Arm's production showing the time and effort required to develop ACK patches and OOBs.  Thus, Qualcomm cannot investigate what Arm withheld and the impact to Qualcomm.

**Arm's Decision-Making.**  Qualcomm's **Topic 17** seeks testimony regarding Arm's decision to withhold deliverables from Qualcomm, and **Topic 41** and **RFP 156** seek information regarding Arm's decision to resume providing deliverables following the December 2024 jury verdict in *Arm* v. *Qualcomm*.  Although Arm witnesses testified they were ████████████ ████████████████████████  Ex. 39 at 116:11-117:23, 125:6-127:12; Ex. 40 at 31:22-32:23, Arm has not produced those communications or provided a witness on its decision-making, limiting discovery to "Arm's provision of materials and support to Qualcomm" both before and after the verdict, and Arm's responses to Qualcomm's notices of breach.  Ex. 37 at 41.  Qualcomm knows what Arm delivered—it does not know the entirety of what Arm withheld, on what basis, and whether there is additional technology withheld today.

**Third Parties Deliveries.**  Arm's delivery of technology to third parties is relevant, including because the Qualcomm ALA requires Arm to provide technology █████" to █████████████████████████ and because communications with third parties may show Arm treated Qualcomm differently from others with the same or similar rights (**RFPs 28, 32, 68**).  Arm refused to perform a search for documents or provide an accounting of ████████████ or ██████ delivered to third parties but not to Qualcomm (**Interrogatories 1, 5**), instead producing only "documents sufficient to show the centralized distribution of documents, and such documents made available by such distributions, to all third-party ALA licensees."  Ex. 35 at 7; Ex. 41 at 9.  These limitations do not allow Qualcomm to determine when such technology became █████████████" or who obtained the technology.

### B.    Failure to Negotiate Armv10 License

Arm refuses to provide discovery into the versioning and development timeline of the Arm Architecture, its pricing strategy, or ████████ ████████████ preventing Qualcomm from evaluating whether Arm negotiated a good faith offer for Armv10.  According to Arm's Chief Architect, ████████████████████.  Ex. 42 at 130:21-23.  Armv9's baseline is relevant to evaluating a fair offer for Armv10.  Yet Arm refused to provide discovery into its versioning practices (**RFP 42**) pricing strategies (**Topic 26**), or efforts to encourage adoption of Armv9 (**RFP 102**).  Arm also refused discovery into features included in Armv10 and associated value, when Arm began developing Armv10, and information about Arm's licensing of Armv10, including Arm's pricing strategy (**Interrogatory 3;**[5] **Topic 27**).

### C.    Breach of Qualcomm TLA

Qualcomm sought discovery concerning discussions about licensing to Qualcomm under the TLA (**RFPs 40, 56, 57, 63; Interrogatory 6**) and Qualcomm's notices of breach of TLA

---

[5] For **RFP 144**, Arm agreed to produce documents "consistent with its response to Qualcomm's Interrogatory No. 3."  Ex. 38 at 27-28.

4

**A0740**

████████ (**RFPs 49, 50, 51**).  Arm's production contains less than fifteen emails concerning Qualcomm's requests for licenses to ████████ ████████—all from the same three redacted email threads—and not one internal document concerning Arm's response to Qualcomm's breach notices.  Arm also improperly withheld as privileged documents purportedly relevant to Arm's CPU pricing analysis and refused to produce 2020-2023 ████████████████████████ ████████████.  Ex. 47 at 1-2.  Arm cannot defend against Qualcomm's TLA claim by asserting it undertook ████████ but withhold the documents purportedly containing that analysis as privileged.

## IV.    Improper Responsiveness Determinations

Arm crafted underinclusive search terms and interpreted responsiveness so narrowly that it produced fewer than 5,000 emails and only 21 chats.[6]  The size of Arm's document production does not match Qualcomm's claims, which allege years-long misconduct by Arm spanning multiple agreements, lines of business, and levels of Arm's organization.

In *Arm* v. *Qualcomm*, Arm produced over 18,000 emails and over 700 chats covering a similar span of time to the conduct at issue in this case.  Arm's internal communications proved critical to probing Arm's claims, including, for example, a message from Arm's CEO expressing a desire to "hose" competitors through a shift in business model.  C.A. 22-1146 (MN), D.I. 588 (Trial Tr.) at 342:18-343:11.  In this case, Arm produced just 12 chats from its CEO, a search term custodian, despite testimony ████████████████████████ ████████████████████████.  Ex. 44 at 145:4-147:11.

Pursuant to Section 2(b)(i) of the ESI Order, D.I. 85, Qualcomm proposed ten additional search terms and modifications to Arm's terms.  Arm deemed its production sufficient.[7]  But even if Arm accepted Qualcomm's additional terms, Arm's narrow responsiveness determinations would exclude responsive documents.  Qualcomm requests Arm be ordered to produce, without responsiveness review, all non-privileged documents hitting on (1) Arm's terms and (2) Qualcomm's proposed search terms yielding fewer than 15,000 hits, excluding families.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 2394

---

[6] Arm's production in the prior case, Ex. 43 at 1, does not excuse Arm from discovery in this case.

[7] Arm claims its search terms passed requirements in Paragraph 2(b)(i) of the ESI Order.  Ex. 43 at 1.  But Arm deemed less than 3.5% of the hits to its search terms responsive, Ex. 48 at 7-9; Ex. 49 at 3-4, meaning had it produced no documents at all, it still would have complied with the ESI Order, which requires additional search terms only where "more than 10% of the null set is responsive."  D.I. 85 ¶ 2(b)(i).

5

**A0741**

# Exhibit 3

A0742

# Exhibit 4

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
------------------------------------x
QUALCOMM INCORPORATED, a Delaware
corporation, QUALCOMM TECHNOLOGIES,
INC., a Delaware  corporation,

          Plaintiffs,

     - against -


ARM HOLDINGS PLC, f/k/a, ARM LTD.
a U.K. corporation,
          Defendants.
------------------------------------x
                Zoom videoconference
                September 15, 2025
                4:02 p.m.



          MEET & CONFER

A0752

Page 2

A P P E A R A N C E S :

PAUL WEISS RIFKIND WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York New York 10019
BY: JAKE BRALY, ESQ.
     JACOB APKON, ESQ.
     STEPHANIE CHIN, ESQ.
     ADAM BASNER, ESQ.


MORRIS NICHOLS ARSHT & TUNNELL LLP
1201 North Market Street
16th Floor
Wilmington, Delaware 19899
BY: JENNIFER YING, ESQ.




KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
BY: JAY EMERICK, ESQ.
     PETER EVANGELATOS, ESQ.
     ADAM JANES, ESQ.
     MARY BARNETT, ESQ.
     MEREDITH POHL, ESQ.
     MICHAEL A. PRONIN, ESQ.

Page 3

A P P E A R A N C E S: (Continued)

YOUNG CONAWAY STARGATT & TAYLOR LLP
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
BY: ANNE GAZA, ESQ.
     ROBERT VRANA, ESQ.




MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
BY: CATHARINE MCWILLIAMS, ESQ.
     HENRY HUTTINGER, ESQ.
     NICHOLAS FUNG, ESQ.

Page 4

MEET & CONFER

MR. BRALY: So I think we have a couple of items on the agenda. What we would like to start with is Arm's rebuttal reports for Dr. Brogioli and Mr. Richards.

So we wrote to you about both of those reports. We asked you to withdraw the reports, you said that you were not withdrawing either of the reports, and so I think our question to you is why do you believe that these are proper rebuttal reports? What are they responding to that was expert opinion?

MR. EMERICK: Hey Jake, this is Jay from Kirkland. Is it Qualcomm's position that we should have served the Brogioli and Richards reports as opening reports on September 5?

MR. BRALY: September 5, isn't that when you served them?

MR. EMERICK: Sorry, is it Qualcomm's position that Arm should have served the Brogioli and Richards reports at the opening report deadline?

MR. BRALY: Well, I think we're

Page 5

MEET & CONFER

trying to figure out why you think these are proper rebuttal reports.

MR. EMERICK: And I'm trying to understand your position as to why they're in violation of the scheduling order. That's what you guys mentioned in the e-mail. So is it your position that these should have gone in on opening?

MR. BRALY: Well, do these go to affirmative defenses that you have or these are rebuttal to expert opinions in the Kennedy and Posner reports?

MR. EMERICK: Is it Qualcomm's position that Arm should have served the Brogioli and Richards reports at the opening report deadline?

MR. BRALY: What I'm trying to figure out is why you are saying that these are proper rebuttal reports. Are you saying that they are related to affirmative defenses, in which case then you should have served them as

2 (Pages 2 - 5)

Page 38

MEET & CONFER

themselves on that. But the two reports that you guys put in, the Posner and Kennedy reports, there are certainly opinions that we are rebutting in that. And we talk about that -- not we -- but the experts talk about that in their reports at a minimum.

MR. BRALY: Okay. I mean, I have asked you repeatedly to identify what expert opinions you say that they are rebutting. You haven't done so. You are just pointing me back to the report which we don't believe actually is rebutting any expert opinions in the Kennedy or Posner report. We are going to move to strike those reports.

MR. EMERICK: So I think in addition to that, you know, just to get back to the scheduling order itself -- just give me one second. Yeah, we think the Brogioli and Richards reports contradict and rebut evidence on the same subject matter identified by

Page 39

MEET & CONFER

another party here, Qualcomm. So we think we are fully in compliance with the scheduling order.

With that, I'm happy to move on to the next topic. I know we have spent a long time on this.

MR. BRALY: Okay. That still doesn't identify anything specifically, but it seems like we are not going to resolve that.

The next topic is the production of various TLA agreements that seems to be ongoing. There was a production that you made today. So I think we have a number of questions about the production of these agreements. I think the first one is are there more that we should be anticipating, and, if so, how many more should we be anticipating that you will be producing and when will you be producing them?

MR. EVANGELATOS: So this is Peter. A couple of questions there. I

Page 40

MEET & CONFER

think you are asking if you are going to get more of them. I think we have a handful more to get out to you tomorrow and then I think you are aware of a couple of PO disputes that were filed last week. Obviously those are going to be out there until that gets decided by the Court or the Special Master.

MR. BRALY: When you say a handful, does that mean five?

MR. EVANGELATOS: I don't know the specific number of documents off the top of my head. I think there is maybe one or two additional third parties where we have to produce the documents to you. I think that they are coming and that's all I know. I don't know when exactly the production is going to go out the door.

MR. BRALY: So are you saying that with this next production that is coming, that will be all of them, or will there be more after the next production?

Page 41

MEET & CONFER

MR. EVANGELATOS: Again, excluding any that are subject to third-party disputes where the third party has objected to the production of their agreements, I believe that's the case. If not, maybe there is one more. I'm not sure off the top of my head, but I believe that should be the case.

MR. BRALY: Okay. Are you still looking for agreements or have you identified all of them?

MR. EVANGELATOS: My understanding is that they were, and this is what we told you in an e-mail several times, that notice was sent out for the additional agreements that needed to be produced and that is what you are receiving.

MR. BRALY: Okay. When did you send these notices?

MR. EVANGELATOS: I don't have a date off the top of my head. This was quite a while ago, maybe several weeks ago. At least the period for the

11 (Pages 38 - 41)

Page 42

MEET & CONFER

PO is 21 days, so at least 21 days ago, now that you have received several of them.

MR. BRALY: And are you still sending notices? I guess what we're trying to figure out is, I know you said there is going to be a handful that are coming tomorrow but it is just unclear if there is identification of third parties that have licenses to these cores or if you have identified them, you're in the process of notifying them, or if you have identified them and you sent notices before. Where are we in that timeframe?

MR. EVANGELATOS: I'm not going to get into identifying certain third parties, because clearly you are going to try to use that as some admission against Arm someday. That's not what is going on here. We have said to you several times now that there were documents omitted from the production.

Page 43

MEET & CONFER

We notified the third parties that needed to be notified of their agreements being produced. That notice was provided several weeks ago now. We produced some of those agreements I believe on the 4th, on the 11th, today. There is a handful more you have got to receive and then that is wrapped up. So I don't know what else I can tell you about that.

MR. BRALY: And all the notices have been sent at this point in time? I understand that there are companies that may be filing protective order motions, but everyone has notice at this point?

MR. EVANGELATOS: My understanding is yes, that everyone has notice, and there may be a couple going out tomorrow, maybe one or two stragglers, but my understanding is it should be done after that.

MR. BRALY: Okay. And is there a reason that these all came in so

Page 44

MEET & CONFER

late? We had understood you said that everything was complete before and now we have received a bunch more, and it sounds like we are going to receive another handful tomorrow.

MR. EVANGELATOS: I'm not going to get into what I discussed with my client. But I will say that you asked us to look into this on a July 30th meet and confer, and we did. So that's where this came from. You asked us to do this.

MR. EMERICK: So you had not looked for these prior to that meet and confer?

MR. EVANGELATOS: No, and that is misconstruing what I'm saying.

MR. BRALY: What are you saying?

MR. EVANGELATOS: I said I'm not going to get into what I discussed with my client, that is privileged information, but you asked us during that meet and confer to investigate the

Page 45

MEET & CONFER

existence of other TLA agreements that you found online, your reference is to online, you refused to provide that information until you submitted it two days later in your Special Master briefing, and then we went and conducted, you know, and made sure that we didn't miss anything in the production.

So that's where this came from. So I'm not sure why you're asking that question to begin with. This is something you asked for.

MR. BRALY: The reason I'm asking is because we had asked way earlier for production of the agreements related to ██████ ██ ████ we identified those three just from a quick Google search online, and now a bunch more have been produced.

So it is confusing because you previously represented that everything was complete, you have run all of this to ground. The fact that you

12 (Pages 42 - 45)

Page 46

MEET & CONFER

identified these after we identified them for you and you are saying we didn't tell you until it was in the Special Master briefing also doesn't make sense because you have the licensing agreement, so you can figure that out on your own.

MR. EVANGELATOS: Obviously we agree to disagree on that.

MR. EMERICK: Jake, you are not getting a different answer from us on this. You are not getting privileged communication on a meet and confer.

MR. BRALY: I'm not asking for privileged communication. I'm asking for clarification given the conversations that we have previously had.

MR. EMERICK: And we gave you that.

MR. BRALY: So you are saying that we raised this at the July 30th meet and confer, you went back, you have identified everyone, everyone has

Page 47

MEET & CONFER

been identified now, we have one more production that is coming with a handful of documents, potentially another straggler, and at this point everyone that has moved for a protective order, that will potentially move for a protective order, has moved for a protective order?

MR. EVANGELATOS: I'm not going to agree to that characterization. I will stand on what I have said several times now and that's that. You also submitted your letter to the Special Master already. You jumped the gun, as seems to be the case with what you guys like to do. You went to the Special Master and submitted your letter and we will respond to that. A lot of this we have already told you repeatedly, not only in correspondence, but also in the prior briefing as well. So we will respond.

MR. BRALY: Okay. I mean, I think we disagree with that. Will you

Page 48

MEET & CONFER

also produce the notice letters that you have provided to the third parties?

MR. EVANGELATOS: Yeah, I saw your note on that. Can you explain the relevance of that to me?

MR. BRALY: Well, it is unclear when notice was provided to these third parties.

MR. EVANGELATOS: How does notice and when notice was provided to the third parties bear on the claims or defenses regarding the TLA obligations?

MR. BRALY: We are trying to figure out whether there was compliance with the protective order obligations.

MR. EVANGELATOS: So that doesn't relate to the claims and defenses of the parties. So how does compliance with the PO, how is that relevant and why are you policing that? Isn't that a third-party confidentiality problem?

MR. EMERICK: Jake, who are you saying violated the PO?

Page 49

MEET & CONFER

MR. BRALY: No one is alleging that you have. We are trying to figure out what is going on and why all of these agreements were not provided after a representation that production was complete.

MR. EMERICK: I just want a clear record then. You are not accusing anyone of violating the protective order?

MR. BRALY: No. We don't know --

MR. EVANGELATOS: So what is the relevance of the agreements, or, excuse me, of the notice letters? You just said they are relevant to the PO. What is the other relevance? If you are not alleging a PO violation, what is the relevance of the notice letters? I haven't heard anything, any reason to produce those.

MR. BRALY: We are trying to figure out when third parties were notified. There is a period of time

13 (Pages 46 - 49)

Veritext Legal Solutions

212-267-6868            www.veritext.com            516-608-2400

A0756

Page 54

MEET & CONFER

So I'm not sure -- beyond that we haven't filed a separate motion with respect to, you know, everything else that has happened, the timing of what happened and things like that. We have not yet filed anything on that.

MR. EVANGELATOS: Okay. So I will restate my question, and I don't want to talk past each other here, is there additional relief that you are asking for as it relates to the TLA agreements that we can hear you out on and take into consideration?

I mean, I understand you are reupping your request from before. We disagree with those and we responded to those at the hearing and we will respond to your letter. But is there something else that you are asking for that we should work out or talk about and we can at least take back and consider? If you want to tell us that, we are happy to hear you out on that. But I'm not hearing that, so please.

Page 55

MEET & CONFER

MS. YING: I don't know if we have run that to ground yet. I don't think, based upon what you have told us, we don't have all the agreements yet of the ones that you will be producing. Let's put the ones that are potentially the subject of a protective order dispute to a separate bucket. But we don't have the full universe of what, you know, you guys say we are getting. So I don't know if we can answer that question right now.

I'm happy to let Jake and his folks chime in as well. But I think we don't even know what the full universe looks like yet. So I don't know if I'm in a position to answer that at this time.

MR. EVANGELATOS: Well, I mean, unless anything further on that, Jake, I don't know if you have any questions, but I think we can move on to the third deposition issue, if not.

MR. BRALY: I think that is

Page 56

MEET & CONFER

everything.

MR. EMERICK: On the last deposition issue, look, with respect to Pradeep and the two other India witnesses, I know I put this in e-mail, but we told you what we intended to do with our dep hours as a courtesy and convenience to you guys so we are scheduling things efficiently and so that we're not bringing folks from India to the U.S. whose deps will get dropped if we got the time for Pradeep.

So the goal was to try to be helpful here. It is unfortunate that you guys have gone in a different direction with it. But I think maybe more fundamentally from sort of a where do we go from here in light of the parties' positions, the dates you guys proposed are within the really limited expert discovery window, and we have sent you guys expert dates that overlap with the proposed India-based fact witness depositions. We also don't

Page 57

MEET & CONFER

have your expert dep dates.

So I think to move this thing along, send us your expert dates as soon as you can and let us know on our expert dates as soon as we can so that we can make some progress on scheduling these two other folks.

MR. BRALY: Okay. I mean, we plan to send you our expert dates, I think we are just nailing them down, but we should be able to send them to you shortly.

I think you know our position on these two. We gave you dates and you waited a week and a half to respond. We can't have these people hanging out indefinitely. So you know our position on this.

MR. EMERICK: Then state clearly what your position is. Are you not going to give us new dates for them?

MR. BRALY: We are not going to have them hold out indefinitely. So

15 (Pages 54 - 57)

Page 58

MEET & CONFER

no, we are not providing new dates if you are rejecting the dates, which you have, for their deposition.

MR. EMERICK: I'm asking you to send us your expert dates and tell us your position on our expert dates because you have put these people smack dab in the middle of expert discovery.

So it is all one big puzzle as we did in the first fact witness deposition puzzle to put these things together. So send us your expert dates, let us know on our expert dates, so that we can schedule this, or just tell me straight up I'm not giving you any alternative date.

MR. BRALY: We will send you the dates. We don't plan on giving alternative dates. We can't have them hang out indefinitely.

MR. EMERICK: I'm not asking them to hang out indefinitely. I'm asking you if there are alternative dates that you can give in light of the

Page 59

MEET & CONFER

fact that you have proposed these fact witnesses for the tiny, tiny expert discovery window we have. If your position is I'm not giving you an alternative later date, just tell me now.

MR. BRALY: Yes, our position is you had the dates for a week and a half before you responded. You don't want them. We are not doing anything more. We are done with them.

MR. EMERICK: Okay. We will note your refusal to provide alternative dates. Understood. All right, I think that wraps it.

MR. BRALY: I think that is everything. Thank you everyone.

(Time noted: 4:55 p.m.)

Page 60

CERTIFICATION

I, TODD DeSIMONE, a Registered Professional Reporter and a Notary Public, do hereby certify that the foregoing is a true and accurate transcription of my stenographic notes.

I further certify that I am not employed by nor related to any party to this action.

*Todd DeSimone*

TODD DeSIMONE, RPR

16 (Pages 58 - 60)

# Exhibit 5

A0759

| From: | Nyarady, Catherine |
|---|---|
| To: | Janes, Adam; Braly, Jacob; Evangelatos, Peter |
| Cc: | #KE-ARM-Qualcomm; MoFo_Arm_QCOM; ycst_arm_qualcomm; GRP-QCvARM; Qualcommv Arm; Jack Blumenfeld; jying@morrisnichols.com |
| Subject: | RE: Qualcomm v. Arm - Meet and Confer |
| Date: | Friday, August 29, 2025 4:54:54 PM |

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

Adam,

The Qualcomm employees located in India who were working to secure their visas to come to the US for deposition have now completed that process. Tarang Agarwal will be available for a deposition on September 30 in San Diego. Sureshkumar A M will be available on October 1 in San Diego. Please confirm these dates as soon as possible.

Regards,

Catherine

**Catherine Nyarady** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3532 (Direct Phone) | +1 212 492 0532 (Direct Fax)
cnyarady@paulweiss.com | www.paulweiss.com

---

**From:** Janes, Adam <adam.janes@kirkland.com>
**Sent:** Thursday, August 7, 2025 12:27 PM
**To:** Braly, Jacob <jbraly@paulweiss.com>; Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Cc:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <MoFo_Arm_QCOM@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Jack Blumenfeld <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Counsel,

We are available today after 4pm ET or tomorrow between 10am to 3pm ET to continue our meet and confer. Please let us know which time works for you.

Regards,

**Adam Janes**

----------------------------------

**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza, Chicago, IL 60654
**T** +1 312 862 3971 **M** +1 773 530 6593
**F** +1 312 862 2200

----------------------------------

**A0760**



[adam.janes@kirkland.com](mailto:adam.janes@kirkland.com)



Peter,

Transcripts for both meet and confers are attached here.

Regards,

**Peter Evangelatos**

---------------------------------------------------------------

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900

---------------------------------------------------------------

peter.evangelatos@kirkland.com

---

Jake,

2-3PM ET tomorrow works for us. Please circulate a dial in when you have a chance.

Regards,

**Adam Janes**

----------------------------------------

**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza, Chicago, IL 60654
**T** +1 312 862 3971 **M** +1 773 530 6593
**F** +1 312 862 2200

----------------------------------------

adam.janes@kirkland.com

On Aug 4, 2025, at 9:38 AM, Braly, Jacob <jbraly@paulweiss.com> wrote:

Counsel,

We are not available at 11AM today.  We are available from 2-3PM ET or 5-6PM ET tomorrow.  Please let us know if either of those times work and we will send a dial-in.

Regards,

---

**Adam Janes**

---------------------------------------------------------

**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza, Chicago, IL 60654
**T** +1 312 862 3971 **M** +1 773 530 6593
**F** +1 312 862 2200

---------------------------------------------------------

adam.janes@kirkland.com

Peter,

We do not dispute that the parties are at an impasse on a deposition date for Pradeep Kanapathipillai.  However, your email to the Court improperly grouped Mr. Kanapathipillai with Sureshkumar A M and Tarang Agarwal.  We have no edits to your email.

Regards,



**Peter Evangelatos**

‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900

‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗

peter.evangelatos@kirkland.com

Peter,

We were surprised to see you email chambers yesterday regarding the issues raised in your July 30 letters just a couple of hours after we followed up with you on your promise to get back to us on a time to meet and confer on those letters. We were not available this afternoon, so please send us times on Monday and Tuesday that work for you.

Your email to the Court also was not accurate.  We are not at an impasse regarding Sureshkumar A M and Tarang Agarwal.  Qualcomm never refused to provide dates for those depositions.  As we have repeatedly explained, those witnesses need a visa to come to the United States for a deposition.  They have initiated this process.  As you know, we offered to bring them to the UK for a deposition, as we understand that visa process would have been quicker, but Arm did not agree.  On our last call, Jay said he would investigate whether there was anything relating to Anupa George's visa process that might be helpful to expedite the process and revert back.  We have heard nothing further.  We can discuss these depositions during the next meet and confer.

As you know, the parties have jointly prepared emails to the Court regarding issues for which there is agreement as to an impasse.  As always, we remain willing to review any proposed email going forward so that we can avoid this situation in the future.


Regards,



**Peter Evangelatos**

-------------------------------------------------------------

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900

-------------------------------------------------------------

peter.evangelatos@kirkland.com

e

**Peter Evangelatos**

------------------------------------------------------

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900

------------------------------------------------------

peter.evangelatos@kirkland.com



Peter,

We have not heard from you regarding a time to meet and confer concerning the two letters that you sent yesterday.  We trust that you will not include those issues in the submission you intend to send to the Special Master tomorrow.

Regards,



**A0767**

**Peter Evangelatos**

------------------------------------------------------------

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900

------------------------------------------------------------

peter.evangelatos@kirkland.com

Peter,

We are available from 10:30AM – 12:30PM ET tomorrow.  Please let us know if that works for you and we will send a dial-in.

We have not yet received the rough from the reporter but will send it when it comes in.

Regards,



**A0768**



**Peter Evangelatos**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900

peter.evangelatos@kirkland.com

e

**Peter Evangelatos**

--------------------------------------------------

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900

--------------------------------------------------

peter.evangelatos@kirkland.com

Peter,

Are you available tomorrow from 2-5PT/5-8ET?

Regards,

**Peter Evangelatos**

------------------------------------------------------------

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900

------------------------------------------------------------

peter.evangelatos@kirkland.com



Peter,

We are not available from 12-2PM ET on Tuesday but can do 9-11AM ET.  If that time works, we can circulate a dial-in.

Regards,



**Peter Evangelatos**

---------------------------------------------------------------

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900

---------------------------------------------------------------

peter.evangelatos@kirkland.com

---

Counsel,

As we discussed on Tuesday, we would like to schedule a meet and confer regarding outstanding issues.  We are available from 10AM – 12PM ET tomorrow.

We would like to meet and confer concerning the following:

1. Arm's R&Os to Qualcomm's 30(b)(6) Notice.  6/27/2025 Letter from C. Nyarady
   1. Arm's refusal to designate a witness on Topics 7 and 16
   2. Arm's restriction of scope to Topics 2, 17, 24, 26, 27, 32, and 41
2. Arm's privilege log
   1. Arm's failure to supplement its privilege log to include entries through December 16, 2024
   2. Common interest privilege with ████
   3. Work product concerning draft press releases
   4. Withholding communications with FGS
3. Arm's redactions to documents.  6/23/2025 Letter from C. Nyarady
   1. Redactions to the subject lines of meetings with Morrison Foerster
   2. Redactions to Arm/FGS communications
4. Arm's search terms
   1. Arm's refusal to run Qualcomm's proposed modifications to its ten

**A0772**

proposed additional search terms

5. Documents demanded during depositions. 6/16/2025 Letter from C. Nyarady; 7/24/2025 Letter from J. Emerick.

6. Arm's R&Os to Qualcomm's Fifth, Sixth, and Seventh Set of RFPs
   1. Fifth Set: 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186
   2. Sixth Set: 187, 188, 189, 190
   3. Seventh Set: 192, 193, 194, 195

7. Arm's R&Os to Qualcomm's Interrogatories
   1. Rog 2, Rog 5, Rog 6, Rog 7

Regards,



This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to

postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

**A0774**

# Exhibit 6

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

———————————————————

QUALCOMM INCORPORATED, a

Delaware Corporation,

QUALCOMM TECHNOLOGIES, INC., a

Delaware Corporation,

      Plaintiffs,

  v.                      C.A. No.

ARM HOLDINGS PLC, a U.K.         24-490-MN

Corporation,

      Defendant.

———————————————————

TELEPHONIC MEET AND CONFER

DATE:        Monday, July 28, 2025

TIME:        5:33 p.m.

LOCATION:    Remote Proceeding

            New York, NY 10001

REPORTED BY:  Jessica Moy

JOB NO.:     7515398

Page 2

APPEARANCES

ON BEHALF OF PLAINTIFFS QUALCOMM INCORPORATED AND

QUALCOMM TECHNOLOGIES, INC.:

JENNIFER YING, ESQUIRE

Morris Nichols Arsht & Tunnell LLP

1201 North Market Street, 16th Floor

Wilmington, DE 19899

jying@morrisnichols.com

(302) 658-9200


JACOB BRALY, ESQUIRE

CATHERINE NYARADY, ESQUIRE

Paul Weiss Rifkind Wharton & Garrison, LLP

1285 Avenue of the Americas

New York, NY 10019

jbraly@paulweiss.com

cnyarady@paulweiss.com

(212) 373-3726

(212) 373-3532

Page 3

APPEARANCES (Cont'd)

ON BEHALF OF PLAINTIFFS QUALCOMM INCORPORATED AND

QUALCOMM TECHNOLOGIES, INC.:

ADAM BASNER, ESQUIRE

JACOB APKON, ESQUIRE

Paul Weiss Rifkind Wharton & Garrison, LLP

2001 K Street Northwest

Washington, DC 20006

abasner@paulweiss.com

japkon@paulweiss.com

(202) 223-7312

(202) 223-7300


ERIN MORGAN, ESQUIRE

Dunn Isaacson Rhee LLP

401 9th Street Northwest

Washington, DC 20004

emorgan@dirllp.com

(202) 240-2900

Page 4

APPEARANCES (Cont'd)

ON BEHALF OF DEFENDANT ARM HOLDINGS PLC:

ANNE SHEA GAZA, ESQUIRE

Young Conaway Stargatt & Taylor LLP

Rodney Square - 1000 North King Street

Wilmington, DE 19801

agaza@ycst.com

(302) 571-6600


ADAM JANES, ESQUIRE

JAY EMERICK, ESQUIRE

Kirkland & Ellis LLP

333 West Wolf Point Plaza

Chicago, IL 60654

adam.janes@kirkland.com

jay.emerick@kirkland.com

(312) 862-3971

(312) 862-3772


PETER EVANGELATOS, ESQUIRE

Kirkland & Ellis LLP

601 Lexington Avenue, 50th Floor

New York, NY 10022

peter.evangelatos@kirkland.com

(212) 909-3291

Page 5

APPEARANCES (Cont'd)

ON BEHALF OF DEFENDANT ARM HOLDINGS PLC:

MEREDITH POHL, ESQUIRE

Kirkland & Ellis LLP

1301 Pennsylvania Ave Northwest

Washington, DC 20004

meredith.pohl@kirkland.com

(202) 389-3185


W. HENRY HUTTINGER, ESQUIRE

Morrison & Foerster LLP

707 Wilshire Blvd, 60th Floor

Los Angeles, CA 90017

hhuttinger@mofo.com

(213) 892-5647


CATHARINA MCWILLIAMS, ESQUIRE

Morrison & Foerster LLP

755 Page Mill Road

Palo Alto, CA 94304

cmcwilliams@mofo.com

(213) 892-5603

2 (Pages 2 - 5)

Page 74

matter, that doesn't seem like it's privileged from our view. So we're challenging your claw back of those documents as privileged.

MR. BRALY: Yeah, this is Jake. I mean, the documents that we clawed back, we reviewed them, we identified that they contained privileged information. I mean, they were marked as such. We identified attorney names. The information that was there was was from communications with counsel, which is why we clawed all of those back. I mean, we went through, we looked at them, we did an investigation, determined that those were privileged documents.

MR. JANES: This is Adam from Kirkland. So hold on. I apologize. There's a announcement in our building. This is Adam. I apologize. There's a shelter in place currently taking place in New York in our building.

Yeah, we disagree. Certainly several or, I think, all of the documents that I attempted to use with Mr. Meacham at his deposition were not marked privileged, did not have any indicia that they were privileged. There is handwritten notes about naming conventions for products. So that doesn't seem like something that's privileged. We understand you disagree. Seems like we're at an impasse.

Page 75

MR. BRALY: Yeah. And I would just note, I mean, I know you're talking about one specific document, but other documents, I mean, there was marking on the document, there were notes on the document, it indicated that the document was privileged.

Again, as I said, there were names of attorneys on the document. And for the document in question that you're referring to, we took a break, we spoke with the witness, we conducted an investigation, and we determined that the information was in fact privileged.

MR. JANES: This is Adam from Kirkland. Sounds like we're at an impasse. The next item on our list is we still have not gotten dep dates for three of the witnesses that we've identified: Shilpa Thakral, Sureshkumar A.M. And for the court reporter, Sureshkumar is spelled S-U-R-E-S-H-K-U-M-A-R. And then just the letters A-M. And finally Tarang Agarwal.

And then Qualcomm has now refused to provide a deposition date for Pradeep. So is Qualcomm still refusing to provide a dep date for Pradeep? And can we get an update on when we expect dep dates for the remaining three? You know, as it concerns visa

Page 76

issues, we had a witness who had a visa issue and we've been able to overcome that.

MS. NYARADY: So this is Catherine. You know, I think your recitation is a little off. You know, we said from the beginning that we had visa issues for the people that are in India. My understanding is that your person who had a visa issue was from Europe and has managed to secure a visa and we're going to be deposing. But, you know, ours have not.

I raised this with you all during discovery and I offered to bring the witnesses elsewhere, which could be done much quicker and you all never responded. I offered to bring them all to London. I had investigated. I had found out that visas could be a lot quicker if they were trying to go to the U.K. and you all never got back to me on it. So, you know, we tried to make it happen.

I'm not done yet. They don't have visas yet. They haven't even been interviewed for a visa yet. So I suspect there's not going to be a deposition, but they did apply, and that's kind of all we can do at this point.

With respect to one of those witnesses though, and I'm not going to put this on the record,

Page 77

but I'm happy to talk to you afterwards. And I know I sent you all an email, but it's a personal thing. So one of them we said we're not putting up for a deposition. So you have that email, too, that, you know, I sent during the discovery period.

MR. EMERICK: Hey Catherine, Jay from Kirkland. Just to clarify, they've applied for visas to enter the United States?

MS. NYARADY: They have. My understanding is that it can take, you know, like, 18 months or something, which I told you when we spoke during discovery. And that's why I asked whether you would prefer that I have them apply for a visa to the U.K., which I had understood would take a matter of, you know, possibly a month or two. And you never got back to me on that offer. So we had them just apply to the U.S. --

MR. EMERICK: So I --

MS. NYARADY: We had them just apply on the U.S. and they're in the process.

MR. EMERICK: Okay. So I disagree with that. But the U.S. visa, so Anupa is living in Germany, but my understanding is she is an Indian citizen. And so the process she goes through, at least my understanding of the visa process, was it's

20 (Pages 74 - 77)

# Exhibit 7

A0779

| From: | Emerick, Jay |
|---|---|
| To: | Nyarady, Catherine; Janes, Adam; Braly, Jacob; Evangelatos, Peter |
| Cc: | #KE-ARM-Qualcomm; MoFo_Arm_QCOM; ycst_arm_qualcomm; GRP-QCvARM; Qualcommv Arm; Jack Blumenfeld; jying@morrisnichols.com |
| Subject: | RE: Qualcomm v. Arm - Meet and Confer |
| Date: | Wednesday, September 10, 2025 10:55:50 PM |

Catherine,

We were surprised by your statement to the Special Master regarding visa approval for these two witnesses and your offering of dates for them, because you previously told us at the 7/28 meet and confer that "there's not going to be a deposition" of these witnesses because their visas "can take, you know, like, 18 months."  7/28/2025 Meet and Confer Tr. at 76:3-77:20.

As you know, we currently have a dispute pending with the Special Master in which we've sought the deposition of Pradeep Kanapathipillai.  If our motion is granted, we intend to use our remaining deposition time with Mr. Kanapathipillai and would not depose Tarang Agarwal or Sureshkumar AM. If our motion is denied, we can revisit the depositions of Tarang Agarwal or Sureshkumar AM at that time.

Regards,

**Jay Emerick**

-------------------------------------------------

**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza, Chicago, IL 60654
**T** +1 312 862 3772  **M** +1 773 383 3571
**F** +1 312 862 2200

-------------------------------------------------

jay.emerick@kirkland.com

---

**From:** Nyarady, Catherine <cnyarady@paulweiss.com>
**Sent:** Friday, August 29, 2025 3:55 PM
**To:** Janes, Adam <adam.janes@kirkland.com>; Braly, Jacob <jbraly@paulweiss.com>; Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Cc:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <MoFo_Arm_QCOM@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Jack Blumenfeld <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

---

**This message is from an EXTERNAL SENDER**

Be cautious, particularly with links and attachments.

---

Adam,
The Qualcomm employees located in India who were working to secure their visas to come to

**A0780**

the US for deposition have now completed that process.  Tarang Agarwal will be available for a deposition on September 30 in San Diego.  Sureshkumar A M will be available on October 1 in San Diego.  Please confirm these dates as soon as possible.

Regards,

Catherine

**Catherine Nyarady** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3532 (Direct Phone) | +1 212 492 0532 (Direct Fax)
cnyarady@paulweiss.com | www.paulweiss.com

---

**From:** Janes, Adam <adam.janes@kirkland.com>
**Sent:** Thursday, August 7, 2025 12:27 PM
**To:** Braly, Jacob <jbraly@paulweiss.com>; Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Cc:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <MoFo_Arm_QCOM@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Jack Blumenfeld <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Counsel,

We are available today after 4pm ET or tomorrow between 10am to 3pm ET to continue our meet and confer.  Please let us know which time works for you.

Regards,

**Adam Janes**
----------------------------------------
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza, Chicago, IL 60654
**T** +1 312 862 3971 **M** +1 773 530 6593
**F** +1 312 862 2200
----------------------------------------
adam.janes@kirkland.com

---

**From:** Braly, Jacob <jbraly@paulweiss.com>
**Sent:** Tuesday, August 5, 2025 10:30 AM
**To:** Evangelatos, Peter <peter.evangelatos@kirkland.com>; Janes, Adam <adam.janes@kirkland.com>
**Cc:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <MoFo_Arm_QCOM@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Jack Blumenfeld <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Peter,

Transcripts for both meet and confers are attached here.

Regards,

**Jake Braly** | Associate

**Paul, Weiss, Rifkind, Wharton & Garrison LLP**

1285 Avenue of the Americas | New York, NY 10019-6064

+1 212 373 3726 (Direct Phone) | +1 212 492 0726 (Direct Fax)

jbraly@paulweiss.com | www.paulweiss.com

---

**From:** Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Sent:** Tuesday, August 5, 2025 10:27 AM
**To:** Janes, Adam <adam.janes@kirkland.com>; Braly, Jacob <jbraly@paulweiss.com>
**Cc:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <MoFo_Arm_QCOM@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Jack Blumenfeld <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Jake,

Please provide us with a copy of the rough transcript from last Wednesday's meet and confer, or finals from both calls if you have them.

Best,
Peter

**Peter Evangelatos**

-----------------------------------------------------

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3291 **T** +1 516 528 6348

**F** +1 212 446 4900

-----------------------------------------------------

peter.evangelatos@kirkland.com

---

**From:** Janes, Adam <adam.janes@kirkland.com>
**Sent:** Monday, August 4, 2025 11:31 PM
**To:** Jacob Braly <jbraly@paulweiss.com>
**Cc:** Evangelatos, Peter <peter.evangelatos@kirkland.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <MoFo_Arm_QCOM@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Jack Blumenfeld <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** Re: Qualcomm v. Arm - Meet and Confer

**A0782**

Jake,

2-3PM ET tomorrow works for us. Please circulate a dial in when you have a chance.

Regards,

**Adam Janes**

-------------------------------------------

**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza, Chicago, IL 60654
**T** +1 312 862 3971 **M** +1 773 530 6593
**F** +1 312 862 2200

-------------------------------------------

adam.janes@kirkland.com

On Aug 4, 2025, at 9:38 AM, Braly, Jacob <jbraly@paulweiss.com> wrote:

Counsel,

We are not available at 11AM today.  We are available from 2-3PM ET or 5-6PM ET tomorrow.  Please let us know if either of those times work and we will send a dial-in.

Regards,
**Jake Braly** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3726 (Direct Phone) | +1 212 492 0726 (Direct Fax)
jbraly@paulweiss.com | www.paulweiss.com

---

**From:** Janes, Adam <adam.janes@kirkland.com>
**Sent:** Sunday, August 3, 2025 8:26 PM
**To:** Braly, Jacob <jbraly@paulweiss.com>; Evangelatos, Peter <peter.evangelatos@kirkland.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Counsel,

We are available at 11AM ET tomorrow to continue our meet and confer.  Please let us know if that time works for you and we will send a dial-in.

Regards,

**Adam Janes**

--------------------------------------------

**KIRKLAND & ELLIS LLP**

333 West Wolf Point Plaza, Chicago, IL 60654

**T** +1 312 862 3971 **M** +1 773 530 6593

**F** +1 312 862 2200

--------------------------------------------

adam.janes@kirkland.com

---

**From:** Braly, Jacob <jbraly@paulweiss.com>
**Sent:** Friday, August 1, 2025 3:45 PM
**To:** Evangelatos, Peter <peter.evangelatos@kirkland.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Peter,

We do not dispute that the parties are at an impasse on a deposition date for Pradeep Kanapathipillai.  However, your email to the Court improperly grouped Mr. Kanapathipillai with Sureshkumar A M and Tarang Agarwal.  We have no edits to your email.

Regards,
**Jake Braly** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3726 (Direct Phone) | +1 212 492 0726 (Direct Fax)
jbraly@paulweiss.com | www.paulweiss.com

---

**From:** Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Sent:** Friday, August 1, 2025 3:56 PM
**To:** Braly, Jacob <jbraly@paulweiss.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Jacob,

We disagree with the mischaracterizations in your email. You also do not dispute we

**A0784**

are at an impasse on the deposition date for Pradeep Kanapathipillai. Below is a message to Chambers confirming the parties agree we are at an impasse on that issue. Please confirm by 4:15 ET you have no edits.

—

To the Chambers of the Honorable Judge Noreika:

In response to the Court's guidance this morning, I write to confirm that the parties agree they are at an impasse on a deposition for Pradeep Kanapathipillai.

—

Best,
Peter

**Peter Evangelatos**

--------------------------------------------------------

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900

--------------------------------------------------------

peter.evangelatos@kirkland.com

---

**From:** Braly, Jacob <jbraly@paulweiss.com>
**Sent:** Friday, August 1, 2025 3:42 PM
**To:** Evangelatos, Peter <peter.evangelatos@kirkland.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Peter,

We were surprised to see you email chambers yesterday regarding the issues raised in your July 30 letters just a couple of hours after we followed up with you on your promise to get back to us on a time to meet and confer on those letters. We were not available this afternoon, so please send us times on Monday and Tuesday that work for you.

Your email to the Court also was not accurate.  We are not at an impasse regarding Sureshkumar A M and Tarang Agarwal.  Qualcomm never refused to provide dates for those depositions.  As we have repeatedly explained, those witnesses need a visa to come to the United States for a deposition.  They have initiated this process.  As you know, we offered to bring them to the UK for a

deposition, as we understand that visa process would have been quicker, but Arm did not agree. On our last call, Jay said he would investigate whether there was anything relating to Anupa George's visa process that might be helpful to expedite the process and revert back. We have heard nothing further. We can discuss these depositions during the next meet and confer.

As you know, the parties have jointly prepared emails to the Court regarding issues for which there is agreement as to an impasse. As always, we remain willing to review any proposed email going forward so that we can avoid this situation in the future.

Regards,
**Jake Braly** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3726 (Direct Phone) | +1 212 492 0726 (Direct Fax)
jbraly@paulweiss.com | www.paulweiss.com

---

**From:** Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Sent:** Friday, August 1, 2025 3:30 PM
**To:** Braly, Jacob <jbraly@paulweiss.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Counsel,

We have not received a response to our email this morning pointing out misstatements in Qualcomm's message to Chambers last night, nor have you corrected those misstatements. If Qualcomm does not correct those misstatements immediately, Arm reserves the right to bring this issue to the Court and seek appropriate relief.

Best,
Peter

**Peter Evangelatos**
---------------------------------------------------------
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900
---------------------------------------------------------
peter.evangelatos@kirkland.com

---

**A0786**

**From:** Evangelatos, Peter
**Sent:** Friday, August 1, 2025 9:45 AM
**To:** 'Braly, Jacob' <jbraly@paulweiss.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Jake,

We write regarding your email to chambers last night. We are disappointed Qualcomm misrepresented to the Court the parties are not yet at an impasse on deposition dates for Pradeep Kanapathipillai, Sureshkumar A M, and Tarang Agarwal. As you know, the parties had a meet-and-confer about Mr. Kanapathipillai's deposition on July 28. Qualcomm stood by its position that it would not make Mr. Kanapathipillai available. *See* 7/28/25 M&C Tr. (Rough) at 77-83. There is nothing further to discuss, and Mr. Kanapathipillai's deposition is not mentioned in the recent letters Arm sent.

Arm's recent letters likewise do not mention deposition scheduling for Sureshkumar A M or Tarang Agarwal. On the 7/28 meet-and-confer, Qualcomm represented that these witnesses are having visa issues. We pointed out that cannot be right given Anupa George's ability to obtain a visa within weeks. *See* 7/28/25 M&C Tr. (Rough) at 79. The recent letters again do not provide Qualcomm an excuse to delay Arm seeking relief for these delayed depositions.

Please confirm Qualcomm will immediately inform chambers that its email was incorrect and the parties are at an impasse on these issues. Regarding the other issues, we disagree the parties are not at an impasse or that they were not discussed, but we are nonetheless available at 2 pm ET this afternoon to further confer.

Best,
Peter

**Peter Evangelatos**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━
peter.evangelatos@kirkland.com

---

**From:** Braly, Jacob <jbraly@paulweiss.com>
**Sent:** Thursday, July 31, 2025 2:48 PM
**To:** Evangelatos, Peter <peter.evangelatos@kirkland.com>; #KE-ARM-Qualcomm <KE-

ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Peter,

We have not heard from you regarding a time to meet and confer concerning the two letters that you sent yesterday.  We trust that you will not include those issues in the submission you intend to send to the Special Master tomorrow.

Regards,
**Jake Braly** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3726 (Direct Phone) | +1 212 492 0726 (Direct Fax)
jbraly@paulweiss.com | www.paulweiss.com

---

**From:** Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Sent:** Tuesday, July 29, 2025 6:40 PM
**To:** Braly, Jacob <jbraly@paulweiss.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Jake,

That time works for us. Please send another invite.

Best,
Peter

**Peter Evangelatos**
--------------------------------------------------------
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900
--------------------------------------------------------
peter.evangelatos@kirkland.com

---

**From:** Braly, Jacob <jbraly@paulweiss.com>

**A0788**

**Sent:** Tuesday, July 29, 2025 11:08 AM
**To:** Evangelatos, Peter <peter.evangelatos@kirkland.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Peter,

We are available from 10:30AM – 12:30PM ET tomorrow.  Please let us know if that works for you and we will send a dial-in.

We have not yet received the rough from the reporter but will send it when it comes in.

Regards,
**Jake Braly** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3726 (Direct Phone) | +1 212 492 0726 (Direct Fax)
jbraly@paulweiss.com | www.paulweiss.com

---

**From:** Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Sent:** Tuesday, July 29, 2025 10:57 AM
**To:** Braly, Jacob <jbraly@paulweiss.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Jake,

Please provide a time to finish our meet and confer. Please also send us the rough from yesterday's call.

Best,
Peter

**Peter Evangelatos**
-----------------------------------------------------------
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022

**A0789**

**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

peter.evangelatos@kirkland.com

---

**From:** Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Sent:** Monday, July 28, 2025 12:16 PM
**To:** Braly, Jacob <jbraly@paulweiss.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Jake,

We are available from 5:30 – 7:30 ET today. Please send a dial-in.

We would also like to meet and confer about the topics below. We will split the call time with Qualcomm as we have done previously.

1. Qualcomm's refusal to provide a witness on certain 30(b)(6) topics, *see* 7/25 letter
2. Documents Qualcomm clawed back during and after the Richard Meacham deposition
3. Qualcomm's new theories disclosed for the first time in its 7/11 interrogatory responses, including regarding new TLA products and ETE checker
4. Qualcomm's refusal to provide deposition dates for Pradeep Kanapathipillai, Shilpa Thakral, Sureshkumar A M, or Tarang Agarwal
5. Qualcomm's failure to provide fulsome responses to Arm's interrogatories
6. Qualcomm's improper responses to Arm's RFAs

Best,
Peter

**Peter Evangelatos**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

peter.evangelatos@kirkland.com

---

**From:** Braly, Jacob <jbraly@paulweiss.com>
**Sent:** Sunday, July 27, 2025 2:47 PM
**To:** Evangelatos, Peter <peter.evangelatos@kirkland.com>; #KE-ARM-Qualcomm <KE-

**A0790**

ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Peter,

Are you available tomorrow from 2-5PT/5-8ET?

Regards,
**Jake Braly** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3726 (Direct Phone) | +1 212 492 0726 (Direct Fax)
jbraly@paulweiss.com | www.paulweiss.com

---

**From:** Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Sent:** Friday, July 25, 2025 4:48 PM
**To:** Braly, Jacob <jbraly@paulweiss.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Jake,

Since several members of our team will be joining the call from the west coast, please provide a time that is later in the day.

Thanks,
Peter

**Peter Evangelatos**
--------------------------------------------------------

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900
--------------------------------------------------------
peter.evangelatos@kirkland.com

---

**From:** Braly, Jacob <jbraly@paulweiss.com>
**Sent:** Friday, July 25, 2025 4:39 PM

**A0791**

**To:** Evangelatos, Peter <peter.evangelatos@kirkland.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Peter,

We are not available from 12-2PM ET on Tuesday but can do 9-11AM ET.  If that time works, we can circulate a dial-in.

Regards,
**Jake Braly** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3726 (Direct Phone) | +1 212 492 0726 (Direct Fax)
jbraly@paulweiss.com | www.paulweiss.com

**From:** Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Sent:** Friday, July 25, 2025 1:57 PM
**To:** Braly, Jacob <jbraly@paulweiss.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm - Meet and Confer

Jake,

We are not available today, but can meet and confer between 12-2 ET on Tuesday. Please send a dial-in if that works for Qualcomm.

Best,
Peter

**Peter Evangelatos**
––––––––––––––––––––––––––––––––––––––
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900
––––––––––––––––––––––––––––––––––––––
peter.evangelatos@kirkland.com

**A0792**

**From:** Braly, Jacob <jbraly@paulweiss.com>
**Sent:** Thursday, July 24, 2025 10:59 AM
**To:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; Blumenfeld, Jack <jblumenfeld@morrisnichols.com>; jying@morrisnichols.com
**Subject:** Qualcomm v. Arm - Meet and Confer

Counsel,

As we discussed on Tuesday, we would like to schedule a meet and confer regarding outstanding issues.  We are available from 10AM – 12PM ET tomorrow.

We would like to meet and confer concerning the following:

1. Arm's R&Os to Qualcomm's 30(b)(6) Notice.  *See* 6/27/2025 Letter from C. Nyarady
    1. Arm's refusal to designate a witness on Topics 7 and 16
    2. Arm's restriction of scope to Topics 2, 17, 24, 26, 27, 32, and 41
2. Arm's privilege log
    1. Arm's failure to supplement its privilege log to include entries through December 16, 2024
    2. Common interest privilege with ▮▮▮
    3. Work product concerning draft press releases
    4. Withholding communications with FGS
3. Arm's redactions to documents. *See* 6/23/2025 Letter from C. Nyarady
    1. Redactions to the subject lines of meetings with Morrison Foerster
    2. Redactions to Arm/FGS communications
4. Arm's search terms
    1. Arm's refusal to run Qualcomm's proposed modifications to its ten proposed additional search terms
5. Documents demanded during depositions. *See* 7/16/2025 Letter from C. Nyarady; 7/24/2025 Letter from J. Emerick.
6. Arm's R&Os to Qualcomm's Fifth, Sixth, and Seventh Set of RFPs
    1. Fifth Set: 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186
    2. Sixth Set: 187, 188, 189, 190
    3. Seventh Set: 192, 193, 194, 195
7. Arm's R&Os to Qualcomm's Interrogatories
    1. Rog 2, Rog 5, Rog 6, Rog 7

**A0793**

Regards,

**Jake Braly** | Associate

**Paul, Weiss, Rifkind, Wharton & Garrison LLP**

1285 Avenue of the Americas | New York, NY 10019-6064

+1 212 373 3726 (Direct Phone) | +1 212 492 0726 (Direct Fax)

jbraly@paulweiss.com | www.paulweiss.com

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to

**A0794**

postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

**A0795**

# Exhibit 8

A0796

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,<br><br>        Defendant. | C.A. No. 24-490-MN<br><br> |

## DEFENDANT ARM HOLDINGS PLC'S SUPPLEMENT TO ARM'S MOTION TO STRIKE AND COMPEL (D.I. 378) AND OPPOSITION TO QUALCOMM'S AUGUST 11 LETTER BRIEF TO SPECIAL MASTER RYCHLICKI

Dated: August 18, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A0797**

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

**A0798**

Dear Special Master Rychlicki:

Qualcomm's requests for additional discovery should be denied.

## 1.    TLA and ALA-Related Requests

*After* the close of fact discovery, Qualcomm injected new claims that Arm committed multiple additional breaches of the TLA.  They should be stricken, and discovery on them denied.



*New TLA Breach Claims: Peripheral IP* ████████████████ ████████████████████████████████████ *And Implementation Cores* (████ ████████████████████████████████ ).  Qualcomm's request for discovery on new breach claims for *13 new products* should be denied, and those theories stricken from the case.  The SAC focuses exclusively on three products: ████████ ████.    Count VII alleges breach based on Arm's pricing for ████████████.  Ex. 2 ¶¶ 213-220.  Likewise, Count VIII alleges that Arm "████████████████" by "excluding support and maintenance" from its ████████████ offer.  Ex. 2 ¶¶ 221-226.  Qualcomm only pleads facts regarding ████████████.  Ex. 2 ¶¶ 109-127.  There is not a single mention of any other Arm implementation cores in the SAC and only a vague statement that Qualcomm "expects discovery to show that Arm violated the good faith" provisions in "negotiations involving" unidentified "peripheral TLA IP."  Ex. 2 ¶ 102.

Qualcomm's attempt to make an end run around its failure to plead a claim for any product other than ████████████ should be rejected.  "Rule 8 simply 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'"  *Robinson v. Family Dollar Inc.*, 679 F. App'x 126, 133 (3d Cir. 2017).  "A plaintiff is entitled to discovery only when they have made factual allegations that support a cognizable claim; discovery is not for determining whether there is a factual basis for a claim not yet made."  *Kurtz v. Westfield Ins.*, 610 F. Supp. 3d 703, 711 (E.D. Pa. 2022).  Qualcomm argues that because it vaguely claimed it "expects discovery to show" other TLA violations based on peripheral IP, that Arm "may" have breached the TLA, or used the word "including" in the SAC, that it is entitled to discovery.  That is not the law—Qualcomm's vague allegations are conclusory and hoping discovery will uncover a claim does not state one.  *See Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006); *GlaxoSmithKline LLC v. Glenmark Pharms., Inc., USA*, 2017 WL 11685418, at *6 (D. Del. Jan. 20, 2017); *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 621-22 (D. Del. 2015).  Ruling on whether the SAC plausibly alleges a claim tied to peripheral IP would also, in any event, prejudge issues in Arm's MTD currently pending before Judge Noreika.  *See* Ex. 3 at 10; Ex. 4 at 20.

Qualcomm looks outside its pleading and exhibits to argue that because "the *October 2024* quote referenced in the SAC included prices" for peripheral IP (████████████████ ), it adequately pled such claims.  Ex. 1 at 1.  But simply referencing a business document does not adequately plead a claim, and only underscores that Qualcomm knew about but chose *not* to plead a claim for peripheral IP.  Indeed, TLA ████████████ ████████████ but it is absent from the SAC.  ████████████    As to non-cores, Qualcomm's theories are based on different offers Arm made years before the ████████████ allegations described in the SAC.  As Qualcomm's untimely interrogatory responses state, Arm's "proposal for ████████" from "*August and November 2022*" and its "proposal for '████████'" from "*March 2023*" each "breached ████████████ Ex. 6 at 11-12.  Permitting these new, unpled claims would also push the period for which

1

██████████████████████████████████ based on Arm's alleged breaches tied to ███████████████████ which may also impact Arm's statute of limitations defenses. Ex. 2 ¶ 219; Ex. 5 ██████ Qualcomm has not pled a claim for the 13 new products on which it seeks to compel discovery.

Qualcomm also points to its implied covenant claim in Count III. Ex. 2 ¶¶ 181-188. But the only allegation about the TLA in that Count is that Arm allegedly "failed to provide licensing proposals for *Arm Implementation Cores* to Qualcomm in violation of provisions of the QC TLA," not peripheral IP. Ex. 2 ¶ 184. Qualcomm's theory for peripheral IP, in any event, is that Arm's offer was not "commercially reasonable," not that Arm failed to provide a proposal. Ex. 1 at 1. Nor does paragraph 184 put Arm on notice of any ████████████████████████████████████████████ allegations, as Qualcomm admits Arm *did* provide offers, it just didn't like them. Qualcomm asserts that serving discovery requests "discloses" a theory—yet that notion eviscerates the purpose of pleadings as well as Rules 12, 15, and 16. Discovery requests are not a recognized way to amend a complaint, evade the deadline for doing so under the scheduling order, or avoid a MTD or other challenge to the new claims. Likewise, the Arm RFPs Qualcomm points to either name only █████████████████ or were served shortly before discovery closed and after Qualcomm filed its original motion to compel (D.I. 158) merely to ensure that, in the event the Court ruled in Qualcomm's favor on this brewing dispute, Arm would receive reciprocal discovery. *See* Ex. 7 (RFPs 249-258). Arm never conceded Qualcomm's unpled claims were in the case.

Allowing Qualcomm to pursue these new claims would add even more complexity to this already massive case, which is just two months from summary judgment and should be narrowed, not expanded. Litigating whether Arm's proposals for each of these 13 new products breached the TLA would require significant new discovery, likely requiring Arm to notify and produce third party licenses for those products (of which there may be numerous) and which will inevitably spawn new third-party confidentiality disputes. Arm would also need to take new discovery of Qualcomm's witnesses regarding its supposed "harm." Indeed, Qualcomm claims that due to Arm's alleged "refusal to license ████████████," Qualcomm had to ████████████████████████████████████████████████████████████ Ex. 6 at 19. Yet Qualcomm's interrogatory response does not cite a document to back that claim, only the conclusory testimony of a single employee. *Id.* Further, both parties would likely need to conduct expert discovery into any remedy Qualcomm may seek. None of this additional discovery is appropriate at this late stage.

*New ALA Breach Claim: ETE Checker*. Qualcomm's request for discovery on its new ALA breach claim based on the ETE Checker should be denied, and that theory stricken. As with Qualcomm's new TLA claims, Qualcomm disclosed its ETE Checker claim after the close of fact discovery on July 11. Ex. 8 (QC Resp. to ROG Nos. 1, 6); Ex. 35 (QC Resp. to ROG No. 16. Discovery should be denied for the same reasons.

Further, as Arm's August 7 letter brief explained, Arm's production already includes documents that bear on Arm's decision to stop supporting Qualcomm's use of unlicensed Nuvia technology and ETE Checker support, which Qualcomm recently used at depositions. Ex. 9 at 4; Ex. 10; Ex. 11; Ex. 12. Qualcomm also questioned multiple Arm witnesses about the ETE Checker issue. *See, e.g.*, Ex. 13 at 125:5-156:18; Ex. 14 at 114:4-117:7; Ex. 15 at 180:9-15; Ex. 16 at 24:20-24, 172:18-173:4. Whether Arm provided other companies with support materials (such as ETE Checker support) has no bearing on whether Arm had an obligation to provide such support to Qualcomm.

2

### 2.    Tortious Interference-Related Requests[1]

Qualcomm's request for additional discovery should be denied. Arm has produced numerous documents—and Arm's witnesses have provided testimony—concerning the October 22 letter and related media. Qualcomm deposed five people—Messrs. Collins, Kranhold, Hughes, Siegel, and Ms. Badani—almost exclusively about these topics, and asked several other Arm witnesses about them. Qualcomm argues Arm withheld discovery on its decision to write, share, and withdraw the letter, but that is plainly incorrect. The October 2024 letter not only speaks for itself, but Mr. Collins testified that ███████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████ Ex. 17 at 71:5-88:19. And the reason for withdrawing the letter is stated in Arm's withdrawal letter itself. Ex. 18. Arm agreed to, and did, produce documents responsive to RFP Nos. 16, 17, 38, 145-147, and 149 (*see* Exs. 19 (2/20/25 Arm Resps. to QC 1st RFPs (Nos. 1-52)), 20 (5/2/25 Arm Resps. to QC 3rd RFPs (Nos. 121-156))), and Arm logged an additional 27 documents about the October 22 letter. *See* Ex. 21 (7/11/25 2d Suppl. Privilege Log). Additionally, FGS produced another 183 documents. Arm confirms its production of documents responsive to these Requests is complete.

Regarding Topic No. 32, Arm designated witnesses to testify regarding letters to Qualcomm customers, and as well as on subparts (a), (b), (c), (d), and (i), despite Qualcomm's refusal to engage in reciprocal discovery and designate a witness on Qualcomm's media communications. Ex. 22 at 32-33. The remaining subparts ((f), (g), (h), and (j)), which concern and include communications with third parties other than ███ and ███████ are not relevant or proportional. Nevertheless, multiple fact witnesses provided testimony, including for subpart (f) (*see, e.g.,* Ex. 23 at 54:1-67:12, Ex. 24 at 64:8-70:4, Ex. 25 at 107:22-137:25) and for subpart (g) Mr. Siegel, as Morrison & Foerster's designated witness, testified; for subpart (h), *see, e.g.*, Ex. 23 at 36:23-40:7, Ex. 26 at 40:11-45:23, 48:10-52:5, Ex. 25 at 46:17-85:4, 99:22-103:19; and for subpart (j), *see, e.g.*, Ex. 23 at 54:1-67:12, Ex. 24 at Dep. 64:8-70:4, Ex. 26 at 40:11-45:23, 48:10-52:5, Ex. 25 at 107:22-137:25.

Qualcomm again incorrectly asserts that Arm claimed privilege over its "public relations strategy," but as Arm stated in its prior letter to the Special Master and at the August 14 hearing, and as the above-cited testimony shows, that is incorrect. Ex. 9 at 3-4.

Qualcomm argues that Arm waived privilege over any document relating to its October 2024 letter or media regarding the same. Arm did not. ████████████████████████



---

[1]    Qualcomm argues there are ████████████████████████████████████████████ ████████████████████████████████████████████ but makes no such breach of contract allegations. Ex. 1 at 2.

3

██████████████████████.[2] Ex. 29 at 160:5-17.  On redirect, ███████████████

███████ *Id.* at 164:16-165:21.  That is not a basis to invade any privileged deposition preparation (or other attorney-client communication) in which Mr. Abbey gained an understanding of Arm's interrogatory response, much less a broader waiver.  Qualcomm seeks discovery about how Mr. Abbey gained an understanding of the contents of Arm's interrogatory response, but Arm is not claiming privilege over the content of its interrogatory response, which Qualcomm has.  Further, Arm is not using Mr. Abbey's testimony as a "sword": the contents of interrogatory responses speak for themselves, and Mr. Abbey or another witness's understanding of what is or is not contained in them is irrelevant.  Finally, Qualcomm's assertions of "waiver" aside, Arm is not claiming privilege over how Bloomberg was briefed about the contents of the letter, and Qualcomm received testimony about the conversations with Ian King.  *See, e.g.*, Ex. 26 at 48:20-51:5; Ex. 25 at 62:6-63:2; 64:11-68:14.  This other discovery confirms there are no other documents from this purported "discussion with Bloomberg."  *See, e.g.*, Ex. 26 at 62:6-64:9.

### 3.    Competition-Related Requests

Qualcomm's requests for irrelevant and overbroad discovery on its UCL claim should be denied.

**RFPs 103-110, 117-119, 121, 143.**  RFPs seeking documents about Arm's supposed vertical integration are irrelevant.  Qualcomm's UCL count does not mention its new theory that Arm's business model shifted towards building and licensing chips or that Arm became "vertically integrated."  The UCL count only alleges that Arm acted to prevent Qualcomm from developing *custom CPUs* to avoid competition with Arm's "off-the-shelf *CPU* designs."  *See, e.g.*, Ex. 2 ¶¶ 207-208.  Only two sentences in the SAC—both in the background—even hint at the type of vertical integration in these RFPs.  Ex. 2 ¶ 70.  The conclusion of that discussion returns, once again, to Qualcomm's claim that Arm is "pressuring customers . . . to purchase Arm's off-the-shelf CPUs," (Ex. 2 ¶ 72)—the same theory in its UCL count.  Setting aside Qualcomm's position that Arm is not entitled to discovery regarding allegations exclusively appearing in the background section of the SAC, *see* Ex. 30 at 4, Ex. 31 at 3, two never-again-referenced, atmospheric sentences in the background section of a 226-paragraph complaint are not sufficient to form a material part of Qualcomm's UCL claim and put Arm on notice that Qualcomm is advancing such a theory.

Similarly, none of Qualcomm's interrogatory responses meaningfully explain this theory—even after Arm served an interrogatory specifically targeting it.  Qualcomm raised the concept of "vertical integra[tion] and gaining market share as a chip designer" for the first time in its June 4 letter brief.  As that language appears nowhere in the complaint, after Qualcomm's letter brief Arm served Interrogatory No. 19 seeking the bases for that argument, and once again—as Arm has explained elsewhere—Qualcomm recycled ***the same 6 paragraphs of text*** it uses in response to every interrogatory related to competition issues focused almost exclusively on Arm's conduct with respect to "off-the-shelf CPU designs."  Qualcomm added a single short paragraph describing witness testimony related to Arm's "business model," but did not explain in any detail any UCL violation under any test.  Qualcomm cannot seek to

---

[2]    Qualcomm's assertion in its letter brief that "Arm admitted it leaked the letter to Bloomberg News" in Arm's "response to Interrogatory 2" is incorrect.  Arm did not "leak" the letter to Bloomberg, and its response does not admit to such.  *See* Ex. 28 at 17-23.

4

compel discovery on irrelevant statements buried in the SAC or theories not fully disclosed in its interrogatory responses. *See, e.g.*, Exs. 6, 32, 33 (QC's R&Os to ROGs 5, 7, 8, 18, 19).

**RFP 122**. Arm properly limited its production to include only the third parties with whom Qualcomm alleges interference. Qualcomm is not entitled to broad and unduly burdensome discovery into all documents that implicate Arm's "knowledge" of Qualcomm's many customers, especially those with whom Qualcomm has ***not*** alleged interference— especially where Qualcomm has elsewhere taken the position that its other non-pled customers are irrelevant for purposes of its own discovery obligations. *See, e.g.*, Ex. 19 (RFP 13); Ex. 34 (RFP 63); Ex. 20 (RFP 126). In any event, Qualcomm is not entitled to engage in a fishing expedition in the hopes of discovering additional unpled claims—particularly given that Qualcomm's tortious interference claims hinge on business "disruption[s]" that only Qualcomm would be aware of and presumably would know without the aid of discovery. *See, e.g.*, Ex. 2 ¶ 194; *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 279 (D. Del. 2012) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable ***without discovery***, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request.") (original emphasis); *In re ML-Lee Acquisition Fund II, L.P.*, 151 F.R.D. 37, 41 (D. Del. 1993).

**RFPs 187-189**. Arm has made clear that it has already produced all non-privileged documents responsive to these requests in *Arm v. Qualcomm* and/or this litigation, including through its productions responsive to other RFPs. *See, e.g.*, Ex. 19 (Resp to QC RFPs 10, 23-24, 29, 39-40); Ex. 34 (Resp. to QC RFPs 57, 81). In any event, the parties are not at an impasse and any dispute is not ripe because at a recent meet-and-confer Arm agreed it would investigate whether it had any other non-privileged documents in its possession responsive to RFPs 188 and 189 and that investigation is ongoing.

**RFPs 192-195.** Arm's agreements and licenses with ███████████ are irrelevant. Neither the SAC nor Qualcomm's interrogatory responses include any allegations about Arm's agreements with ███████████████████████████████ let alone whether such agreements include "favorable terms," which is irrelevant. Nor is it relevant that ███



Qualcomm does not explain how a four-year-old complaint about a failed acquisition is relevant to evaluating the fairness, legality, or impact of Arm's present non-merger-related conduct. Ex. 6 (QC Resp. to ROGs 20-21).

**RFPs 169-186**. RFPs about ██████ are irrelevant, overbroad, unduly burdensome, and not proportional to the case. The SAC contains no allegations related to ██████, including as one of the allegedly "unfair" or "unlawful" acts underlying Qualcomm's UCL claim. Nor does Qualcomm include this theory in any interrogatory response, including its original or supplemental responses to Arm's interrogatories requesting the bases for Qualcomm's UCL claim. Ex. 8 (QC Resp. to ROGs 5, 7, 8); Ex. 6 (QC Resp. to ROGs 18, 19, 20, 21).

## 4.    Interrogatories

***Interrogatory No. 6***. Qualcomm's interrogatory seeks licensing terms for ████████████████ There is no basis to order Arm to supplement its response because that

5

is precisely what Arm provided—pursuant to Fed. R. Civ. P. 33(d), Arm identified the license agreements themselves for ███████████, which contain the requested license terms.

Qualcomm moves to compel Arm not for any additional facts or any legal contention, but to make characterizations about the license terms it produced, which are not even called for by the Interrogatory. There is no basis for that, including Arm's alleged "knowledge" of them, and the license terms speak for themselves. Qualcomm is more than capable of reviewing those agreements to identify their terms, as it has done for the ALA and TLA. Qualcomm's additional request for "additional third-party agreements that cover all of the TLA IP" should be denied because products other than ███████████ are not at issue in this case, as discussed above and in Arm's other letter briefing.

*Interrogatory No. 11*. Qualcomm failed to raise any issue with Arm's response to this interrogatory in advance of filing its letter. Nonetheless, Arm's response includes a lengthy discussion of how Arm prepared its October 2024 offer for a ███████████ renewal license. That response includes references to the testimony of multiple Arm witnesses that Qualcomm deposed as well as the documents considered in that analysis. Qualcomm's complaint appears to be that Arm should "identify relevant information about the ATA and provide a 30(b)(6) witness to address it." Ex. 1 at 4-5. Arm produced ██████ agreements and Qualcomm's expert was able to analyze and opine about them in his opening report, served on August 8. Qualcomm also deposed several witnesses involved in preparing Arm's offer after the ██████ agreement was produced. ████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████ Qualcomm has the documents and had the opportunity to ask about them. That Qualcomm did not get the answers it wanted is not a basis for additional discovery.

*Interrogatory No. 2*. Qualcomm failed to identify any purported deficiency in Arm's Interrogatory No. 2 response during the parties' meet-and-confer process, so this issue is at best not ripe. Arm disagrees that its response is deficient but is willing to moot this issue by citing to deposition testimony from Ms. Badani and Mr. Kranhold.

Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

Words: 3419

6

**A0804**

# Exhibit 9

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| QUALCOMM INC., a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>      Plaintiffs,<br><br>      v.<br><br>ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,<br><br>      Defendant. | C.A. No. 24-490-MN<br><br> |

## DEFENDANT ARM HOLDINGS PLC'S
## LETTER BRIEF TO SPECIAL MASTER RYCHLICKI

<table>
<tr><td>Dated: August 1, 2025</td><td>YOUNG CONAWAY STARGATT &amp; TAYLOR, LLP</td></tr>
<tr><td>OF COUNSEL:</td><td>Anne Shea Gaza (No. 4093)<br>Robert M. Vrana (No. 5666)</td></tr>
<tr><td>Gregg F. LoCascio, P.C.<br>Jason M. Wilcox, P.C.<br>Meredith Pohl<br>Matthew J. McIntee<br>KIRKLAND &amp; ELLIS LLP<br>1301 Pennsylvania Ave., NW<br>Washington, DC 20004<br>(202) 389-5000<br>glocascio@kirkland.com<br>jason.wilcox@kirkland.com<br>meredith.pohl@kirkland.com<br>matt.mcintee@kirkland.com</td><td>Samantha G. Wilson (No. 5816)<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>agaza@ycst.com<br>rvrana@ycst.com<br>swilson@ycst.com<br><br><i>Attorneys for Defendant Arm Holdings plc</i></td></tr>
<tr><td>Jay Emerick<br>Reid McEllrath<br>Adam M. Janes<br>KIRKLAND &amp; ELLIS LLP<br>333 West Wolf Point Plaza<br>Chicago, IL 60654<br>(312) 862-2000<br>jay.emerick@kirkland.com<br>reid.mcellrath@kirkland.com<br>adam.janes@kirkland.com</td><td></td></tr>
</table>

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

2

Dear Special Master Rychlicki:

Qualcomm alleges across eight counts that Arm breached two contracts, tortiously interfered with Qualcomm's customer relationships, and engaged in unfair competition in violation of the California UCL. Yet Qualcomm still has not disclosed the basic contours of its claims against Arm, beyond what it alleges in its Complaint, let alone provided the discovery Arm needs to defend itself. Qualcomm's interrogatory responses largely recycle the Complaint (Exs. 14-15), and it refuses to produce witnesses on important 30(b)(6) topics (Ex. 12). It refuses to produce documents responsive to more than **80 RFPs** (Exs. 1-3);[1] for the requests where it has agreed to produce documents, it searched for ESI using overly limited terms with the wrong custodians. In keeping with the Scheduling Order's directive that "the more detail a party provides, the more detail a party shall receive," D.I. 44 at 4, Arm submitted detailed responses to Qualcomm's interrogatories. Exs. 4-7. Arm should get the same from Qualcomm and have the opportunity to conduct additional depositions once Qualcomm provides fulsome responses.

**Qualcomm's Refusal to Provide Deposition Dates**: Qualcomm refuses to provide a deposition date for Pradeep Kanapathipillai. This witness is relevant to Qualcomm's claim that Arm's alleged withholding of certain materials (OOB and ACK patches) harmed Qualcomm, including whether it had to "expend[] extra time and resources." Ex. 8, ¶ 96; Ex. 9 at 13:16-21; 68:13-70:13, 87:16-88:9 (Qualcomm's Senior Director of Engineering testifying Mr. Kanapathipillai is responsible for verification of Qualcomm's CPU cores).

Arm noticed Mr. Kanapathipillai's deposition on June 12. On June 27, Qualcomm offered Mr. Kanapathipillai for July 16 (five days after fact discovery closed). On June 30, Arm requested a date that was before the close of fact discovery. Qualcomm refused, and on July 11, it unilaterally cancelled the July 16 date and refused to provide new dates. In contrast, Arm provided deposition dates for every witness Qualcomm has noticed—even when Qualcomm served one of those notices, for Mohamed Awad, after the deadline the local rules impose. *See* D. Del. LR 30.1; D.I. 289; Ex. 10 at 4; Ex. 11. Qualcomm should make Mr. Kanapathipillai available for a deposition.

**Qualcomm's Refusal to Provide Witnesses on Certain 30(b)(6) Topics**: Qualcomm refuses to provide witnesses on, and unduly narrowed the scope of, several 30(b)(6) Topics.[2] For example, Topic 81 seeks testimony on Qualcomm's market power, influence, or position with respect to CPUs, which is relevant to whether Arm's conduct can "harm or threaten to harm competition for CPU … designs" or "pressure [Qualcomm's customers] not to acquire products from Qualcomm." Ex. 8, ¶ 207. Qualcomm improperly changed this Topic to "Qualcomm's competitive intelligence analysis regarding Arm." Ex. 12. Qualcomm refuses to produce a witness on Topic 59, which concerns Qualcomm's decision to disclose the Notice of Breach Letter in its November 6, 2024, Form 10-K. Whether and when Qualcomm would have disclosed the letter on its own, absent the *Bloomberg* article regarding the letter, is relevant to Qualcomm's tortious interference claims and

---

[1] RFPs 6, 8, 10, 12-13, 26, 28, 30, 34, 37, 52-53, 56-57, 59-63, 66, 74-75, 78-81, 83-84, 87-88, 90, 93, 105, 108-109, 111-113, 116, 120, 124-127, 129, 131-136, 141-160, 165-168, 171, 173.

[2] Ex. 12, Topic Nos. 38, 52, 55, 59-61, 63, 76-77, 80-82, 84-85; Ex. 13, 7/25/2025 Ltr. from J. Emerick.

3

Arm's defenses. *See* Ex. 14; *see e.g.*, Ex. 8, ¶¶ 29, 33-34, 151-161; 181-203. Also, Qualcomm narrowed Topics 60 and 61, which concern Qualcomm's claims regarding disclosures or communications with third parties about the ALA breach allegations. Qualcomm cannot allege a claim and seek Arm's 30(b)(6) testimony on Arm's communications with the media yet refuse to provide testimony on topics seeking Qualcomm's disclosures to the same sources. Qualcomm should provide 30(b)(6) witnesses for the topics it has improperly withheld testimony.

**Qualcomm's Improper "Relevance" Objections**: Many disputes over Arm's discovery requests concern Qualcomm's erroneous view that only Arm's conduct is relevant, but Qualcomm's conduct is not—even where it bears directly on Qualcomm's own allegations and Arm's defenses. *Keel v. Del. State Univ. Bd. of Trustees*, 2021 WL 9649436, at *2 (D. Del. Mar. 30, 2021). Qualcomm objected to requests that quote its own Complaint. *See, e.g.*, Ex. 1, RFP 6 (Qualcomm's efforts to reduce its reliance on Arm); RFP 8 (alleged harms to Qualcomm's customer relationships); RFP 37 (Qualcomm's entitlement to deliverables under the ALA for its Nuvia-based technology); RFP 57 (potential termination of the ALA); Ex. 14, ROG 2 (Arm's alleged breach of the ALA); ROG 4 (Arm's knowledge of Qualcomm's existing or prospective business relationships); ROG 6 ("required" deliverables under the ALA); Ex. 8, ¶¶ 12-19, 52, 66, 150, 156-161. When asked, Qualcomm contended that discovery into the bases of those quotes is irrelevant because they come from the Complaint's background section, not the counts. But those counts "incorporate by reference all allegations set forth in the preceding paragraphs as though fully set forth" therein, *E.g.*, Ex. 8, ¶ 167, and Qualcomm relies on those allegations to oppose Arm's pending motion to dismiss.

These are the most blatant examples. Qualcomm also labels Arm's licensing practices "unfair," yet refuses to produce information about its own licensing arrangements and agreements, even for products that use Arm's ISA, on the same basis. *See, e.g.*, Ex. 2, RFPs 108-109, 116. Qualcomm's treatment of its licensees, Qualcomm's previous testimony regarding licensing practice in UCL litigation, and its own conduct is relevant to whether Arm's licensing conduct is "unfair," unscrupulous, or "harms competition." *See Bardell v. Banyan Del.,* 2024 WL 3273498, at *1 (D. Del. July 2, 2024). Qualcomm should provide discovery on the requests it is improperly claiming lack of relevance.

**Qualcomm's Breach Claim Deficiencies**: Qualcomm refuses to provide discovery necessary for Arm to assess Qualcomm's claim that Arm breached its ALA by not providing OOBs and ACK patches. In response to Arm's ROG 6 seeking Qualcomm's bases for alleging breach, Qualcomm provides no specificity; it simply refers to the Complaint and quotes portions of the ALA. Other than identifying high level material types (OOB and ACK patches), Qualcomm provides no detail on which OOB or ACK patches were allegedly withheld, or for which designs. Despite alleging that it had to "expend[] extra time and resources," Qualcomm refuses to describe the circumstances of that expenditure. Ex. 8, ¶ 96. For example, Qualcomm has largely refused to produce information about its "efforts to verify compliance" with Arm's ISA, RFP 149, or documents related to "validation" of compliant cores, RFP 160. Qualcomm's interrogatory responses similarly do not describe its verification efforts for any particular core or identify or describe any difference between Qualcomm's previous verification efforts and any allegedly increased verification efforts that Qualcomm contends resulted from Arm's alleged breach. *See* Ex. 14, ROG 13. Qualcomm should be precluded from going beyond its these responses. *Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, No. CV 15-819-LPS-CJB, 2017 WL 11558096 at *7-13

4

(D. Del. Dec. 11, 2017) (concluding that "Plaintiffs did not timely supplement their discovery responses" and granting Defendants motion to strike Plaintiffs' new damages theory).

**Qualcomm's Tortious Interference Claim Deficiencies**: Qualcomm has not provided meaningful discovery related to its tortious interference claims. Qualcomm has alleged that Arm interfered with Qualcomm's relationships with two companies (Smartphone Company and AI and Ecosystem Company) based on a notice of material breach letter that Arm served on Qualcomm, and that press outlets publicly reported. Qualcomm has prevented Arm from developing its defenses to these allegations by sealing the customers' names and refusing to share the identities with Arm's in-house counsel. And Qualcomm has refused to produce its own communications with the media or customers about its rights under the Qualcomm ALA despite alleging that Arm's statements about the same damaged Qualcomm's customer relationships. *See* Ex. 3, RFPs 124-127, 129, 131, 142. Indeed, three of Qualcomm's claims center on Arm's supposedly wrongful, tortious, and unscrupulous "leaking" of a letter "to the media," *e.g.*, Ex. 8, ¶ 206, but Qualcomm refuses to produce discovery on its publication of the letter in its SEC filings, just days later, and refuses to produce documents concerning its own "leaking," including for a story about confidential competition complaints by the same reporter at the same news outlet Arm communicated with. *See* Ex. 3, RFPs 145-147, 157-159. Qualcomm should have to provide information on its own communications with the media, and it should unseal the identities of the companies.[3]

**Qualcomm's Competition-Related Deficiencies**: Arm served interrogatories seeking the bases of Qualcomm's UCL claim. *See* Exs. 14-15, ROGs 5, 7-8. Qualcomm refused to meaningfully answer; instead, its responses are comprised of (a) nearly identical paragraphs distinguished by trivial changes; (b) generalized statements devoid of explanation or detail; and/or (c) bare references to other documents. *See* Exs. 14. Those responses are unacceptable. *See In re Wilmington Tr. Secs. Litig.*, 2017 WL 2457456, at *2 (D. Del. June 6, 2017). And although Qualcomm later purported to supplement its responses—and setting aside that Arm has independent gripes with those supplements on which the parties continue to meet and confer—those supplements did not remediate the substantive deficiencies Arm identified and briefed in June. *See* Ex. 14, ROGs 7-8.

Qualcomm says it "reserves the right to prove that Arm's business acts and practices were 'unfair' under *any tests* California courts apply." Ex. 17 at 2 (emphasis added). One of those tests, which applies in disputes between sophisticated corporations, requires proof that Arm's conduct "[1] threatens an incipient violation of an antitrust law, or [2] violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [3] otherwise significantly threatens or harms competition." *Cel-Tech Comm'cns, Inc. v. L.A. Cell. Tel. Co.*, 20 Cal. 4th 163, 187 (1999). But Qualcomm refuses to identify the antitrust laws supposedly implicated by Arm's conduct. *See* Ex. 14, ROGs 5, 7-8; *see also Gregory v. Albertson's Inc.*, 104 Cal. App. 4th 845, 856 (2002). Without this basic information, Arm cannot develop its legal or

---

[3] Arm intends to identify additional issues with Qualcomm's interrogatory responses in its next brief.

5

factual defenses to show its conduct does not threaten an incipient antitrust violation or violate the spirit of those laws.

Qualcomm's refusal to identify relevant market(s) with respect to its UCL claim has prejudiced Arm's ability to obtain discovery. *See Novanta Corp. v. Iradion Laser*, 2016 WL 4987110, at \*7 (D. Del. Sept. 16, 2016). Here, the relevant market could be any number of things ranging from an all-CPU and/or SoC market, specific market segments (mobile, data center, automotive), or the market for instruction set architectures themselves. It is impossible to say how "competition" is harmed in the absence of a market or identification of any alternative products. *See Gamboa v. Apple*, 2025 WL 660190, at \*6 (N.D. Cal. Feb. 28, 2025) ("Without a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy competition."); *Racek v. Rady Children's Hosp. of San Diego*, 2012 WL 2947881, at \*6 (Cal. App. July 20, 2012) (similar); *Sun Microsystems v. Microsoft*, 87 F. Supp. 2d 992, 1001-02 (N.D. Cal. 2000) (similar); *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018).

No court has adopted Qualcomm's *sui generis* position that under the UCL it need not even ***identify*** a relevant market. Qualcomm cited *PeopleBrowsr v. Twitter*, 2013 WL 843032 (N.D. Cal. Mar. 6, 2013) in its interrogatory responses, but the issue there concerned federal subject matter jurisdiction—the court did not hold that parties could plead UCL claims without identifying any relevant market. In *Epic Games v. Apple*, there was extensive discovery (expert and otherwise) into the relevant market, but the holding was simply that, even if a party does not ***prove*** a market to Sherman Act certainty under the federal balancing test, a plaintiff can still satisfy the UCL. 67 F.4th 946, 1001 (9th Cir. 2023). It did not hold that a party need not identify a relevant market, competitors within that market, or substitutable products at issue. Nor has Qualcomm ever argued that its UCL claim raises the kind of "quick look" legal question related to price fixing in which "a precise market-definition is not needed." *Id.* at 1002. Qualcomm is obligated to explain the theory on which it plans to litigate its UCL claim, including in what market competition was harmed, what competitors were harmed, how so, what products were affected, and what effect that had on consumers in that market. Qualcomm must actually answer Arm's competition-related interrogatories, as the limited information provided so far has significantly hampered Arm's defense.

**<u>Qualcomm's ESI Search Terms and Custodians Are Deficient</u>**: Qualcomm's ESI search terms are inadequate. *See* Ex. 24. Qualcomm provided its first and only list of search terms on March 17 in response to Arm's first set of RFPs, even though Arm subsequently served additional RFPs (on March 14, April 1, June 9, and June 11) covering additional issues. Exs. 18-22. Further, Qualcomm was permitted to amend its complaint, *see* D.I. 137, which added new claims regarding Arm's alleged breach of the TLA and licensing of v10. Yet Qualcomm has refused to supplement or broaden its terms or custodians. *See* Exs. 18, 25-26. *McGovern v. Amazon Web Servs.*, No. 1:20-cv-01399-SB, D.I. 114 (D. Del. Dec. 11, 2023); *id.* D.I. 118 (D. Del. Dec. 22, 2023). Further, Qualcomm's March 17 terms are unduly narrow, containing overly limiting conjunctions and including only portions of relevant terms without root expanders (*e.g.*, "RISC," without a root expander, instead of "RISC\*" or "RISC-V," the proper name). *See Frontier Commc'ns v. Google*, 2014 WL 12606321, at \*4-5 (D. Del. Feb. 3, 2014) (ordering party to "revise [a] proposed string search … to include the plaintiff's name and additional variations of the term"). For core issues like unfair competition and Arm's alleged withholding of OOB and ACK patches, Qualcomm has only a ***single*** search term. Qualcomm has only three narrow search terms on TLA and v10 that do

6

not adequately cover those issues.  Moreover, Qualcomm refuses to run its terms against witnesses it has identified as knowledgeable about the key issues and has refused to supplement its search term custodians to include witnesses who testified they are knowledgeable about key case issues. Exs. 25-26.  Qualcomm cannot withhold relevant discovery by shirking its ESI obligations.

Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

Words: 2,376

7

**A0812**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 24-490 (MN) |
| v. | ) ) | ██████████████████ |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI REGARDING SUBSEQUENT EVENTS RELATING TO THEIR MOTION TO COMPEL PRODUCTION OF THIRD-PARTY ARM LICENSES AND RELATED AGREEMENTS**

OF COUNSEL:

Catherine Nyarady
Jacob A. Braly
Jacob Apkon
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Adam Basner
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007
(202) 240-2900

October 17, 2025

**A0813**

Dear Special Master Rychlicki:

Pursuant to D. Del. LR 7.1.2, Plaintiffs write to advise Your Honor of newly-learned facts and subsequent events that have occurred since the August hearings on the parties' motions to compel and Qualcomm's September 15 letter that relate to Qualcomm's pending motion to compel production of third-party Arm licenses and related agreements.  D.I. 359; 8/1/2025 Qualcomm Ltr. at 1–2.

As Your Honor is aware, Arm has repeatedly represented that it has "agreed to produce agreements with third parties for ███████████████ in effect at the time" of ████████ ████████████████████ 9/19/2025 Arm Ltr. to Special Master Rychlicki at 2; 8/7/2025 Arm Opp. to Qualcomm's Mot. to Compel at 1.  But, as detailed in Qualcomm's September 15 letter, Arm produced only a fraction of those agreements during fact discovery, or even ahead of the hearings Your Honor held in August.  Specifically, Arm produced ██ third parties' agreements in September and October,[1] as compared to █ agreements produced by August.[2]

As mentioned in Qualcomm's August 1 letter, even those few agreements produced as of August were incomplete, as they were missing attachments that form part of the agreements. 8/1/2025 Qualcomm Ltr. at 1; D.I. 359 (moving to compel production of documents pursuant to, among others, RFP No. 123, which sought "All agreements licensing ████████████████ codenamed ████████████, including TLAs and corresponding Annexes").  This problem of Arm producing incomplete agreements has only been exacerbated in Arm's later productions, with Arm continuing to omit at least the following documents that are part of the agreements Arm has with third parties:

- Annexes that the produced documents identify as containing pricing information, *e.g.*, Ex. 1 at -047, ████████████████████████████



---

[1] These are the agreements for ████████████████████████████████████████████████████████████████████████████ As Your Honor is aware, additional third parties' agreements have not yet been produced pending the resolution of their motions for protective orders.

[2] These were the agreements for ████████████████████████

[3] Arm licenses packages of its IP to third parties under its Arm Total Access agreements ("ATAs"), whereas TLAs cover a more tailored set of IP that the relevant third party has specifically sought to license from Arm.

1

- Contract amendments, *e.g.*, Ex. 3 ███████████████████████████████████████ ███████████████████████████████████████ *See also* Ex. 4 at 5–6 (correspondence between counsel including list of apparently omitted documents).

Given Arm's purported recognition of its need to produce third-party agreements for ████████████████ and the direct relevance of these missing contract components to the analyses of Qualcomm's damages expert Dr. Patrick Kennedy, Qualcomm reached out to Arm on September 24 with a specific list of omitted parts of third-party agreements referenced in the documents Arm had produced. Ex. 4 at 5–6. Qualcomm asked that Arm produce these missing contract components or identify by Bates number where Arm believed it had already produced them. *Id.* at 5. Arm did not respond for more than two weeks. *Id.* at 3–4. After repeated follow up, Arm represented on October 9 that it was "investigating Qualcomm's request for these additional documents." *Id.* at 3. After additional follow up, Arm responded that it would not provide these parts of third-party agreements it has omitted because it believes "Qualcomm is seeking to relitigate pending a ruling" on its motion to compel. *Id.* at 2. Arm also faulted Qualcomm for not "timely rais[ing] the issue," *id.* at 3, notwithstanding that Arm produced the substantial majority of third-party agreements after the parties briefed their motions to compel and after Your Honor heard those motions.

Aside from repeating its opposition to producing the annexes for ████████████████ ████ on the grounds that they purportedly do not relate to ████████████████████, Arm does not claim that these contract components are not relevant or discoverable. Nor could it. Under the California law that governs the breach claims in this case, "[t]he whole of a contract is to be taken together." Cal. Civ. Code § 1641. And some of the contract components that Arm has omitted are

Without production of these documents, Qualcomm has no way to know if the terms it is reading in the produced ATAs even govern third parties' licenses for ██████ ████████████ Qualcomm cannot fully evaluate Arm's claimed compliance with the parties' TLA term requiring ██████████████████████████████████████████ ████████████████████████████████ if Arm will not produce the complete agreements that constitute those prior deals.[4]

Additionally, Arm has obstructed Qualcomm's efforts to mitigate the effects of Arm's failure to notify third parties of the need to produce their agreements before the end of fact discovery by refusing to produce a redacted version of a third-party agreement that Qualcomm and the third-party, ████████, have agreed should be produced. As noted in Qualcomm's September 15 letter to Your Honor, Qualcomm has been engaging in meet and confers with late-notified licensee ████████ in an effort to reach an agreement regarding redactions without needing to burden Your Honor with yet another protective order motion. Qualcomm and ████████ reached

---

[4] In the continued investigation conducted in the weeks waiting for Arm to respond on this issue, Qualcomm was able to identify a single produced ████████████████ document, appended as an exhibit to the ████████████ ATA. Ex. 5 at -842–942. This document confirms the relevance of these ████████████████████ as it, among other information, ████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████

2

an agreement whereby ▮▮▮▮ would allow Arm to produce redacted versions of its agreements now, along with a redaction log, subject to those agreements later being unredacted in whole or in part depending on how Your Honor resolves the pending third-party protective order motions.

On October 9, ▮▮▮▮'s counsel provided Arm with redacted versions of its agreements and gave Arm permission to produce them to Qualcomm. On October 10, counsel for Arm stated that he was not up to date on the status of Qualcomm's negotiations with ▮▮▮▮ but that "if there has been an agreement and redactions have been agreed to[,] we will get that out promptly." Ex. 6 at 21:2–15. On October 14, however, Arm reversed course, refusing to produce the redacted versions of ▮▮▮▮ agreements, claiming that it was not appropriate to do so unless ▮▮▮▮ filed a motion for a protective order or the Court resolved the pending dispute over the scope of Qualcomm's TLA-related claims. Ex. 7.

Arm's position—itself a change from its promise to produce the agreements "promptly" a few days earlier—is improper and would require a tremendous waste of resources by ▮▮▮▮, Qualcomm, and Your Honor. Arm claims that redactions are not permitted under the protective order in light of the dispute the parties litigated in March before Judge Fallon. *Id.* at 3–4. But that dispute addressed a specific provision that Arm was attempting to insert into the protective order and ESI order that would have allowed the "producing party" to redact confidential information "that is subject to a confidentiality agreement with a Third Party for which a Third Party has requested redaction." D.I. 68, Ex. D ¶ 52. *See also id.,* Ex. E ¶ 2(j). Qualcomm objected that Arm should not be permitted to unilaterally redact third-party information in the absence of the third party moving for, and the Court granting, a protective order. D.I. 70. Qualcomm also specifically noted that that the ordinary process of the non-producing party negotiating with the third party would remain available. D.I. 70 at 4 ("The usual method for protecting information—party negotiation followed by a prompt protective order motion by the third party to resolve any disputes—is the appropriate procedure."). Thus, nothing about the parties' March dispute displaces the commonsense practice of producing redacted versions of documents upon agreement between a third party and the party seeking the documents. Arm's refusal to produce ▮▮▮▮ agreements is improper, but consistent with Arm's other efforts to avoid compliance with its discovery obligations.

Qualcomm requests that Arm be required to abide by its commitment to produce its agreements with third parties for ▮▮▮▮ (subject to Your Honor's resolution of the parties' scope dispute). Despite its repeated representations to Your Honor that it has made this production, *e.g.*, 8/14/2025 Tr. 60:16-22; 8/22/2025 Tr. 277:18-278:13, 278:19-23, 279:17-18; 9/19/2025 Arm Ltr. to Special Master Rychlicki at 2 ("Arm's additional productions moot Qualcomm's motions to compel, which should be denied."), Arm's production remains incomplete, and Arm refuses to remedy its inadequacies absent a Court order. Qualcomm's motion to compel production of third-party Arm licenses and related agreements should be granted.

3

**A0816**

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 1637

Encls.

4

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 20, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                           *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                       *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Sydney D. Gaskins, Esquire                        *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Alexandra Corrinne Hottenrott, Esquire            *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                         *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*


Gregg F. LoCascio, P.C.                                    *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*


Jay Emerick, Esquire                                      *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*


Peter Evangelatos, Esquire                                *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*




                                    */s/ Jennifer Ying*
                        _____
                        Jennifer Ying (#5550)

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 27, 2026, upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Daniel G. Mackrides, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO 80202<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Sydney D. Gaskins, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd., Suite 6000<br>Los Angeles, CA 90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Alexandra Corrinne Hottenrott, Esquire<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, NY 10019<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Daralyn J. Durie, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

Lydia B. Cash, Esquire                          *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                          *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                             *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                       *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*


                                    */s/ Jennifer Ying*
                                    _____
                                    Jennifer Ying (#5550)

2