Originally Filed: February 20, 2026
Redacted Version Filed: February 27, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) ) | **REDACTED - PUBLIC VERSION** |
| Plaintiffs, | ) ) | C.A. No. 24-490 (MN) (CONSOLIDATED) |
| v. | ) ) ) | ██████████████████████ |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) | |
| Defendant. | ) ) | |

**APPENDIX TO PLAINTIFFS' PARTIAL OBJECTIONS TO THE SPECIAL MASTER'S FEBRUARY 6, 2026 ORDER (D.I. 626) DENYING PLAINTIFFS' MOTION TO COMPEL (D.I. 359) (Vol. 5: A1441-A1888)**

OF COUNSEL:

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

February 20, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

| Document | Page Range/D.I. # |
|---|---|
| Plaintiffs' Motion to Compel (Aug. 1, 2025) | D.I. 359 at 5-7 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A0001 – A0007 |
| Qualcomm Exhibit 1 – Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's First Set of Requests for Production (Nos. 1-52) (June 17, 2025) | A0008 – A0074 |
| Qualcomm Exhibit 2 – Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's Second Set of Requests for Production (Nos. 53-120) (June 17, 2025) | A0075 – A0146 |
| Qualcomm Exhibit 3 – Arm Holdings PLC's First Supplemental Objections and responses to Qualcomm's Third Set of Requests for Production (Nos. 121-156) (June 17, 2025) | A0147 – A0187 |
| Qualcomm Exhibit 4 – Arm Holdings PLC's Objections and Responses to Qualcomm's Fourth Set of Requests for Production (Nos. 157-168) (May 16, 2025) | A0188 – A0208 |
| Qualcomm Exhibit 5 – Defendant Arm Holdings PLC's Objections and Responses to Plaintiffs' Notice of 30(b)(6) Deposition (June 19, 2025) | A0209 – A0257 |
| Qualcomm Exhibit 6 – Arm's First Supplemental Responses to Qualcomm's Amended Interrogatory No. 3 (July 11, 2025) | A0258 – A0267 |
| Qualcomm Exhibit 7 – Arm's First Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11) (July 11, 2025) | A0268 – A0337 |
| Qualcomm Exhibit 8 – Qualcomm Technology License Agreement (TLA) (May 30, 2013) | A0338 – A0393 |
| Qualcomm Exhibit 9 – Deposition of Jeffrey M. Fonseca Excerpt (July 9, 2025) | A0394 – A0398 |

| | |
|---|---|
| Qualcomm Exhibit 10 – Deposition of Karthik Shivashankar Excerpt (June 20, 2025) | A0399 – A0402 |
| Qualcomm Exhibit 11 – Deposition of Ehab Youseff Excerpt (June 26, 2025) | A0403 – A0407 |
| Qualcomm Exhibit 12 – Letter from J. Emerick to C. Nyarady (July 24, 2025) | A0408 – A0416 |
| Qualcomm Exhibit 13 – Email from S. Balcof to J. Ying et al. re: Follow up from Thursday's call (July 31, 2025) | A0417 – A0422 |
| Qualcomm Exhibit 14 – Robert Triggs, *Google Tensor G4 explained: Everything you need to know about the Pixel 9 processor* (Aug. 22, 2024) | A0423 – A0432 |
| Qualcomm Exhibit 15 – Alif Semiconductor, *Ensemble E1 Series* (last visited July 31, 2025) | A0433 – A0439 |
| Qualcomm Exhibit 16 – STMicroelectronics, *Arm Cortex-M55 in a nutshell* (last visited July 31, 2025) | A0440 – A0443 |
| Qualcomm Exhibit 17 – ███████████████████████████ | A0444 – A0447 |
| Qualcomm Exhibit 18 – ███████████████████████████ | A0448 – A0451 |
| Qualcomm Exhibit 19 – ███████████████████████████ | A0452 – A0456 |
| Qualcomm Exhibit 20 – Deposition of Ziad Asghar Excerpt (July 7, 2025) | A0457 – A0460 |
| Qualcomm Exhibit 21 – Deposition of Ann Nathalie Cathcart Chaplin Excerpt (July 11, 2025) | A0461 – A0464 |
| Qualcomm Exhibit 22 – Arm Holdings PLC's First Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1-3) Excerpt (July 11, 2025) | A0465 – A0473 |
| Qualcomm Exhibit 23 – Qualcomm Amended and Restated Architecture License Agreement (ALA) (May 30, 2013) | A0474 – A0517 |

ii

| | |
|---|---|
| Qualcomm Exhibit 24 – Arm's First Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11) Excerpt (July 11, 2025) | A0518 – A0528 |
| Qualcomm Exhibit 25 – Third Supplemental Redaction Log for Arm ALAs (Jan. 5, 2024) | A0529 – A0535 |
| Qualcomm Exhibit 26 – Deposition of Jonathan Weiser Excerpt (July 11, 2025) | A0536 – A0539 |
| Qualcomm Exhibit 27 – Letter from A. Janes to C. Nyarady (June 23, 2025) | A0540 – A0542 |
| Qualcomm Exhibit 28 – Deposition of Paul Kranhold Excerpt (July 17, 2025) | A0543 – A0547 |
| Qualcomm Exhibit 29 – Arm Second Supplemental Initial Privilege Log (July 11, 2025) | A0548 – A555 |
| Qualcomm Exhibit 30 – ARMQC_02762874 (Oct. 21, 2024) | A0556 – A0558 |
| Qualcomm Exhibit 31 – ARMQC_02762876 (Oct. 22, 2024) | A0559 – A0561 |
| Qualcomm Exhibit 32 – ARMQC_02762878 (Oct. 21, 2024) | A0562 – A0563 |
| Qualcomm Exhibit 33 – ARMQC_02762879 (Oct. 22, 2024) | A0564 – A0565 |
| Qualcomm Exhibit 34 – Letter from A. Janes to C. Nyarady (June 30, 2025) | A0566 – A0568 |
| Qualcomm Exhibit 35 – Letter from N. Fung to C. Nyarady (Mar. 19, 2025) | A0569 – A574 |
| Qualcomm Exhibit 36 –Letter from N. Fung to C. Nyarady (May 7, 2025) | A0575 – A0578 |
| Qualcomm Exhibit 37 – Defendant Arm Holdings PLC's Objections and Responses to Plaintiffs' Notice of 30(b)(6) Deposition Excerpt (June 19, 2025) | A0579 – A0587 |
| Qualcomm Exhibit 38 – Arm Holdings PLC's First Supplemental Objections and Responses to Qualcomm's Third Set of Requests For Production (Nos. 121-156) Excerpt (June 17, 2025) | A0588 – A0597 |
| Qualcomm Exhibit 39 – Deposition of Martin Weidman Excerpt (June 20, 2025) | A0598 – A0602 |

| | |
|---|---|
| Qualcomm Exhibit 40 – Deposition of Anupa George Excerpt (July 30, 2025) | A0603 – A0605 |
| Qualcomm Exhibit 41 – Letter from N. Fung to C. Nyarady (May 2, 2025) | A0606 – A0609 |
| Qualcomm Exhibit 42 – Deposition of Richard Grisenthwaite Excerpt (July 2, 2025) | A0610 – A0612 |
| Qualcomm Exhibit 43 – Letter from N. Fung to C. Nyarady (July 5, 2025) | A0613 – A0617 |
| Qualcomm Exhibit 44 – Deposition of Rene Haas Excerpt (July 7, 2025) | A0618 – A0621 |
| Qualcomm Exhibit 45 – Deposition of Aparajita Bhattacharya Excerpt (July 7, 2025) | A0622 – A0625 |
| Qualcomm Exhibit 46 – ARMQC_02762949 (Oct. 24, 2024); ARMQC_02762912 (Oct. 23, 2024); ARMQC_02762979 (Oct. 29, 2024); FSG_0000389 (Oct. 22, 2024); ARMQC_02742823 (Oct. 24, 2024); ARMQC_02742769 (Oct. 24, 2024); ARMQC_02749685 (Oct. 24, 2024) | A0626 – A0650 |
| Qualcomm Exhibit 47 – Letter from J. Emerick to C. Nyarady (July 24, 2025) | A0651 – A0654 |
| Qualcomm Exhibit 48 – Letter from C. Nyarady to N. Fung (May 16, 2025) | A0655 – A0660 |
| Qualcomm Exhibit 49 – Letter from N. Fung to C. Nyarady (June 17, 2025) | A0661 – A0667 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7, 2025) | A0668 – A0675 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Declaration of Nicholas R. Fung in Support to Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7. 2025) | A0676 – A0682 |
| Arm Exhibit 1 – Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A0683 – A0690 |

| | |
|---|---|
| Arm Exhibit 2 – Second Amended Complaint (June 3, 2025) | A0691 – A0758 |
| Arm Exhibit 3 – Email from P. Evangelatos to J. Braly et al. re: Qualcomm v. Arm – RFPs Concerning TLA Agreements | A0759 – A0762 |
| Arm Exhibit 4 – Order Appointing Special Master (July 18, 2025) | A0763 – A0767 |
| Arm Exhibit 5 – Order Relating to Procedures for Resolving Disputes Before Special Master (July 31, 2025) | A0768 – A0771 |
| Arm Exhibit 6 – Deposition of Aparajita Bhattacharya (July 7, 2025) | A0772– A0855 |
| Arm Exhibit 7 – Arm Holdings PLC's First Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1-3) (July 11, 2025) | A0856 – A0885 |
| Arm Exhibit 8 – ARMQC_02770408 (Oct. 22, 2024) | A0886 – A0888 |
| Arm Exhibit 9 – ARMQC_02770392 (Oct. 24, 2024) | A0889 – A0891 |
| Arm Exhibit 10 – ARMQC_02762927 (Oct. 24, 2024) | A0892 – A0914 |
| Arm Exhibit 11 – ARMQC_02762980 (Oct. 23, 2024) | A0915 – A0917 |
| Arm Exhibit 12 – ARMQC_02762919 (Oct. 23, 2024) | A0918 – A0919 |
| Arm Exhibit 13 – ARMQC_02762920 (Oct. 23, 2024) | A0920 – A0921 |
| Arm Exhibit 14 – Stipulated Order for Discovery, Including Discovery of Electronically Stored Information ("ESI") (Mar. 21, 2025) | A0922 – A0939 |
| Arm Exhibit 15 – ARM_00132456 (May 17, 2022) | A0940 – A0941 |
| Arm Exhibit 16 – ARM_00036346 (May 18, 2022) | A0942 – A0946 |
| Arm Exhibit 17 – ARM_01238999 (May 18, 2022) | A0947 – A0952 |
| Arm Exhibit 18 – ARM_01215997 (May 19, 2022) | A0953 – A0958 |
| Arm Exhibit 19 – ARM_01216002 (May 19, 2022) | A0959 – A0964 |
| Arm Exhibit 20 – ARM_01230011 (May 19, 2022) | A0965 – A0971 |
| Arm Exhibit 21 – ARM_01230110 (May 19, 2022) | A0972 – A0976 |

| | |
|---|---|
| Arm Exhibit 22 – ARM_01230123 (May 19, 2022) | A0977 – A0982 |
| Arm Exhibit 23 – QCARM_3059661 (May 20, 2022) | A0983 – A0984 |
| Arm Exhibit 24 – Letter from S. Collins to A. Chaplin (Sept. 26, 2022) | A0985 – A0986 |
| Arm Exhibit 25 – Deposition of Richard Grisenthwaite (July 2, 2025) | A0987 – A1091 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Special Master Hearing (Aug. 14, 2025) | A1092 – A1187 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Special Master Hearing Excerpt (Aug. 22, 2025) | A1188 – A1191 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiff's Letter to Special Master Helena C. Rychlicki Regarding Newly-Learned Facts and Subsequent Events (Sept. 15, 2025) | A1192 – A1194 |
| Qualcomm Exhibit 1 – Special Master Hearing Excerpt (Aug. 14, 2025) | A1195 – A1197 |
| Qualcomm Exhibit 2 – Special Master Hearing Excerpt (Aug. 22, 2025) | A1198 – A1201 |
| Qualcomm Exhibit 3 – Email from A. Basner to P. Evangelatos et al. re: Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): RFPs (Sept. 14, 2025) | A1202 – A1211 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendant Arm Holdings PLC's Response to Qualcomm's September 15, 2025 Letter to Special Master Rychlicki (Sept. 19, 2025) | A1212 – A1217 |
| Qualcomm Exhibit 1 – Meet & Confer Excerpt (July 20, 2025) | A1218 – A1222 |
| Qualcomm Exhibit 2 – Plaintiff's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A1223 – A1230 |
| Qualcomm Exhibit 3 – Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7, 2025) | A1231 – A1239 |

| | |
|---|---|
| Qualcomm Exhibit 4 – Meet & Confer Excerpt (Sept. 15, 2025) | A1240 – A1247 |
| Qualcomm Exhibit 5 – Email from C. Nyarady to A. Janes et al. re: Qualcomm v. Arm – Meet and Confer (Aug. 29, 2025) | A1248 – A1263 |
| Qualcomm Exhibit 6 – Meet & Confer Excerpt (July 28, 2025) | A1264 – A1267 |
| Qualcomm Exhibit 7 – Email from J. Emerick to C. Nyarady et al. re: Qualcomm v. Arm – Meet and Confer (Sept. 10, 2025) | A1268 – A1284 |
| Qualcomm Exhibit 8 – Defendant Arm Holdings PLC's Support to Arm's Motion to Strike and Compel (D.I. 378) and Opposition to Qualcomm's August 11 Letter Brief to Special Master Rychlicki (Aug. 18, 2025) | A1285 – A1293 |
| Qualcomm Exhibit 9 – Defendant Arm Holdings PLC's Letter Brief to Special Master Rychlicki (Aug. 1, 2025) | A1294 – A1301 |
| Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holdings PLC., f/k/a Arm Ltd., C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Subsequent Events Relating to Their Motion to Compel Production of Third-Party Licenses and Related Agreements (Oct. 17, 2025) | A1302 – A1306 |
| Qualcomm Exhibit 1 – ARMQC_02798040 (Sept. 8, 2023) | A1308 – A1324 |
| Qualcomm Exhibit 2 – ARMQC_02789082 (Feb. 1, 2022) | A1325 – A1369 |
| Qualcomm Exhibit 3 – ARMQC_02797972 (July 1, 2024) | A1370 – A1381 |
| Qualcomm Exhibit 4 – Email from J. Hartley to P. Evangelatos re: Qualcomm v. Arm – Third Party Agreements (Oct. 16, 2025) | A1382 – A1388 |
| Qualcomm Exhibit 5 – ARMQC_02797778 (Dec. 16, 2021) | A1389 – A1554 |
| Qualcomm Exhibit 6 – Meet and Confer Transcript (Oct. 10, 2025) | A1555 – A1562 |
| Qualcomm Exhibit 7 – Email from A. Basner to P. Evangelatos et al. re: Qualcomm v. Arm, Case No. 1:24-cv-490 (Oct. 15, 2025) | A1563 – A1567 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Subsequent Events Relating to Their Motion to Compel Production of Arm's Analysis of Third-Party Licenses (Oct. 17, 2025) | A1568 – A1570 |

| | |
|---|---|
| Qualcomm Exhibit 1 – Plaintiff's' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A1571 – A1578 |
| Qualcomm Exhibit 2 – Deposition of Akshay Bhatnagar (July 10, 2025) Excerpt | A1579 – A1582 |
| Qualcomm Exhibit 3 – Letter from C. Nyarady to P. Evangelatos (July 11, 2025) | A1583 – A1585 |
| Qualcomm Exhibit 4 – Letter from C. Nyarady to J. Emerick (July 16, 2025) | A1586 – A1592 |
| Qualcomm Exhibit 5 – Letter from J. Emerick to C. Nyarady (July 24, 2025) | A1593 – A1601 |
| Qualcomm Exhibit 6 – Meet & Confer Excerpt (July 28, 2025) | A1602 – A1605 |
| Qualcomm Exhibit 7 – Special Master Hearing Excerpt (Aug. 14, 2025) | A1606 – A1610 |
| Qualcomm Exhibit 8 – Letter from P. Evangelatos to C. Nyarady (Oct. 16, 2025) | A1611 – A1615 |
| Qualcomm Exhibit 9 – Email from J. Hartley re: Qualcomm v. Arm – Production of Spreadsheet (Oct. 6, 2025) | A1616 – A1618 |
| Qualcomm Exhibit 10 – Meet & Confer Excerpt (Oct. 10, 2025) | A1619 – A1622 |
| Qualcomm Exhibit 11 – Plaintiff's Letter to Special Master Helena C. Rychlicki Regarding Subsequent Events relating to their Motion to Compel Production of Third-Party Arm Licenses and Related Agreements (Oct. 17, 2025) | A1623 – A1628 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendants Arm Holdings PLC's Response to Qualcomm's October 17, 2025 Letters (Nov. 7, 2025) | A1629 – A1634 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Peter Evangelatos in Support of Defendant Arm Holding PLC's Response to Qualcomm's October 17, 2025 (Nov. 7, 2025) | A1635 – A1638 |
| Arm Exhibit 1 – Letter from Anne Shea Gaza to Judge Sherry R. Fallon re: Qualcomm Inc., et al. v. Arm Holdings Plc., C.A. No. 24-490 (MN) (Mar. 13, 2025) | A1639 – A1726 |

| | |
|---|---|
| Arm Exhibit 2 – Qualcomm's Letter to Honorable Sherry R. Fallon in Response to Arm's Letter Regarding Discovery Dispute (D.I. 68) | A1727 – A1735 |
| Arm Exhibit 3 – Deposition of Akshay Bhatnagar Excerpt (July 10, 2025) | A1754 – A1758 |
| Arm Exhibit 4 – Deposition of Karthik Shivashankar Excerpt (June 20, 2025) | A1759 – A1766 |
| Arm Exhibit 5 – Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7, 2025) | A1767 – A1775 |
| Arm Exhibit 6 – Email from J. Hartley re: Qualcomm v. Arm – Third Party Agreements (Sept. 24, 2025) | A1776 – A1778 |
| Arm Exhibit 7 – Defendant Arm Holdings PLC's Response to Qualcomm's September 15, 2025 Letter to Special Master Rychlicki (Sept. 19, 2025) | A1779 – A1785 |
| Arm Exhibit 8 – Email from US Courts re: Activity in Case 1:24-cv-00490-MN Qualcomm Incorporated et al v. ARM Holdings PLC Oral Order (Mar. 17, 2025) | A1786 – A1789 |
| Arm Exhibit 9 – Stipulated Protective Order (Mar. 21, 2025) | A1790 – A1829 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Subsequent Events (Nov. 26, 2025) | A1832 – A1834 |
| Qualcomm Exhibit 1 – Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A1835 – A1842 |
| Qualcomm Exhibit 2 – Special Master Hearing (Aug. 14, 2025) | A1843 – A1848 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendant Arm Holding PLC;s Response to Qualcomm's November 26, 2025 Letter to Special Master Rychlicki (Dec. 3, 2025) | A1849 – A1852 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Jay Emerick in Support of Defendant Arm Holding PLC's Response | A1853 – A1857 |

| | |
|---|---|
| to Qualcomm's November 26, 2025 Letter to Special Master Rychlicki (Dec. 3, 2025) | |
| Arm Exhibit 1 – Deposition of Kenneth Siegel (July 4, 2025) Excerpt | A1858 – A1865 |
| Arm Exhibit 2 – Deposition of Paul Kranhold (July 17, 2025) Excerpt | A1866 – A1876 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Rychlicki Regarding Subsequent Events Relating to Motion to Compel Production of Arm's Architecture License Agreements (Dec. 16, 2025) | A1877 – A1879 |
| Qualcomm Exhibit 1 – Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A1880 – A1887 |
| Qualcomm Exhibit 2 – Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7, 2025) | A1888 – A1896 |
| Qualcomm Exhibit 3 – Special Master Hearing (Aug. 14, 2025) Excerpt | A1897 – A1900 |
| Qualcomm Exhibit 4 – Deposition of William Abbey (June 26, 2025) Excerpt | A1901 – A1903 |
| Qualcomm Exhibit 5 – Deposition of Rene Haas (July 7, 2025) Excerpt | A1904 – A1906 |
| Qualcomm Exhibit 6 – Letter from S. Collins to A. Chaplin (Dec. 10, 2025) | A1907 – A1938 |
| Qualcomm Exhibit 7 – Arm v. Qualcomm, C.A. No. 22-1146, Pretrial Conference (Nov. 20, 2024) Excerpt | A1939 – A1945 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendant Arm Holdings PLC's Response to Qualcomm's December 16, 2023 Letter to Special Master Rychlicki (Dec. 23, 2025) | A1946 – A1949 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Peter Evangelatos in Support of Arm Holding PLC's Response to | A1950 – A1953 |

| | |
|---|---|
| Qualcomm's December 16, 2025 Letter to Special Master Rychlicki (Dec. 23, 2025) | |
| Arm Exhibit 1 – Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A1956 – A1963 |
| Arm Exhibit 2 – Amended and Restated Architecture License Agreement (ALA) (May 31, 2013) | A1964 – A2007 |
| Arm Exhibit 3 – Plaintiff's Letter to Special Master Rychlicki Regarding Subsequent Events Relating to Motion to Compel Production of Arm's Architecture License Agreement (Dec. 16, 2025) | A2008 – A2011 |
| Arm Exhibit 4 - Letter from S. Collins to A. Chaplin (Dec. 10, 2025) | A2012 – A2043 |
| Arm Exhibit 5 – Deposition of William Abbey (June 26, 2025) Excerpt | A2044 – A2049 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Rychlicki Regarding Subsequent Events Relating to Arm's Architecture License Agreements (Dec. 26, 2025) | A2050 – A2051 |

# A1441 - A1554
# Redacted in Full

# EXHIBIT 6

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
------------------------------------x
QUALCOMM INCORPORATED, a Delaware
Corporation, QUALCOMM TECHNOLOGIES,
INC., a Delaware corporation,

                Plaintiffs,


        - against -


ARM HOLDINGS PLC, f/k/a, ARM LTD.
A U.K. corporation,

                Defendants.
------------------------------------x
                Zoom videoconference
                October 10, 2025
                11:05 a.m.


            MEET & CONFER


Transcribed by Dawn Matera, a Certified
Shorthand Reporter and Notary Public for
the State of New York.


            *    *    *

**Page 2**

A P P E A R A N C E S :

PAUL WEISS RIFKIND WHARTON & GARRISON LLP
   1285 Avenue of the Americas
   New York, New York 10019
  BY: CATHERINE NYARADY, ESQ.
  BY: JAKE BRALY, ESQ.
  BY: JACOB APKON, ESQ.
  BY: STEPHANIE CHIN, ESQ.
  BY: ADAM BASNER, ESQ.
  BY: JEN HARTLEY, ESQ.

MORRIS NICHOLS ARSHT & TUNNELL LLP
   1201 North Market Street
   16th Floor
   Wilmington, Delaware 19899

  BY: JENNIFER YING, ESQ.
  BY: TRAVIS J. MURRAY, ESQ.

KIRKLAND & ELLIS LLP
   333 West Wolf Point Plaza
   Chicago, Illinois 60654

  BY: JAY EMERICK, ESQ.
  BY: PETER EVANGELATOS, ESQ.

YOUNG CONAWAY STARGATT & TAYLOR LLP
   1000 North King Street
   Rodney Square
   Wilmington, Delaware 19801

  BY: DANIEL MACKRIDES, ESQ.

**Page 3**

A P P E A R A N C E S (Continued):

MORRISON & FOERSTER LLP
   425 Market Street
   San Francisco, California 94105

  BY: NICHOLAS FUNG, ESQ.

    *   *   *

**Page 4**

Meet and Confer

MR. BRALY: Hopefully, this won't take long. I think really we're just asking if you can produce the spreadsheet, I think it's been referred to in a number of depositions. I think you also had put in your letter to the Special Master that you would produce it, but there was information on the spreadsheet that pertains to some of the companies that have moved for protective orders.

So we're just asking if you produce the spreadsheet and you can redact the information that's relevant to the third parties that have moved for protective orders. You know, if you just sort of, I guess, if you leave the name of the company that you redact sort of all of the additional information, but to make that production.

And then pending resolution of the third-party motion of the Special Master, if she says, in fact, that, you know, those licenses and that information

**Page 5**

Meet and Confer

should be produced, you can then produce an updated copy of the spreadsheet and remove whatever redactions that you provide that were originally produced.

MR. EMERICK: Would producing a redacted version of the spreadsheet result in you dropping any of the disputes that are currently before the Special Master?

MR. BRALY: Which disputes, like the third-party disputes?

MR. EMERICK: Any dispute.

MR. BRALY: We would have to look at the spreadsheet. Without seeing it, I don't think so. It's hard to kind of make that promise without looking at the spreadsheet.

MR. EMERICK: Are you seeking to modify the protective order at all in this?

MR. BRALY: What do you mean?

MR. EMERICK: In connection with your request or otherwise, are you seeking to modify the protective order in

2 (Pages 2 - 5)

Page 6

Meet and Confer

this case at all?

MR. BRALY:  I guess I am not sure what you mean.

MR. EMERICK:  So do you know that we have a protective order?

MR. BRALY:  Of course.

MR. EMERICK:  And are you seeking to modify that protective order at all?

MR. BRALY:  Are you saying because we're asking for redactions, is that's why you're saying that?

MR. EMERICK:  I am asking if you are seeking to modify the protective order in this case?

MR. BRALY:  No, we are not seeking to modify the protective order. We are asking for a redacted version of the spreadsheet, because you withheld it, because you said there is information in the spreadsheet that you're not providing because of pending protective order motions.

MR. EMERICK:  Is it your

Page 7

Meet and Confer

position that the protective order allows Arm to produce documents with redactions for third-party confidential information?

MR. BRALY:  No.  We are saying we would like to work around the issue that is currently in front of the Court and we are trying to seek the spreadsheet that you have referenced previously in multiple depositions and, as I just said, pending resolution of the Special Master ruling on the protective order motions, potentially produce an unredacted version of the spreadsheet.

MS. NYARADY:  To be clear, Jay, this is not any kind of, you know, effort to amend the protective order and it's not any kind of indication on our part that we think you can produce redacted documents.

We have a scheduling issue, because things were brought to the Special Master late and now we're running up against summary judgment.  So it's got nothing to do with trying to revise the

Page 8

Meet and Confer

fact that parties should not be redacting, but the alternative is we're going to have to file for summary judgment without the chart and seek to have you precluded from relying on it in any way, so that's why we are asking for it.

MR. EMERICK:  Sorry, what's the preclusion issue?

MS. NYARADY:  If you won't give us the chart, we were going to ask to have it precluded, that you can't rely on it.

MR. EMERICK:  Understood.

MS. NYARADY:  And we are probably going to ask for an adverse inference that the chart is not helpful to you.  Because you mentioned the chart repeatedly in depositions and we have been unable to get access to any portion of it, including portions that are not in dispute.

MR. EVANGELATOS:  Counselor, what I am curious about is why -- why now

Page 9

Meet and Confer

should we suddenly produce it, when yes, we have had this dispute before the Special Master.  It's briefed.  It's on the Special Master's plate clearly with the third-party disputes.  I mean, why should we deviate from the PO obligation that you guys argued for now for one document and what is the basis for some sort of adverse inference based on the Special Master needing to take time to rule on the motions?

MS. NYARADY:  I already said it's because summary judgment is due in a couple of weeks.

MR. EVANGELATOS:  And summary judgement is due for us as well.  And I hear you on the scheduling problem, it's the same problem for us, but why should we deviate from the PO obligation that you argued for?

MS. NYARADY:  You don't have to.  And obviously it sounds like you're not going to.  And I just want to put you on notice of what we are going to argue.

3 (Pages 6 - 9)

Page 10

Meet and Confer

So you don't have to.  We made the request.  You've denied it.  I think it's a practical solution for a path forward. If you don't, that's fine.

MR. EMERICK:  If the Special Master orders you guys to produce something that you haven't produced, are you willing to agree to an adverse inference on that issue, because we haven't gotten the documents as of summary judgment?

MS. NYARADY:  That's not the same thing as what we are dealing with here.  The question is just whether you're going to produce it in whole or in part after the Special Master ruling.

MR. EMERICK:  So I take it it's a no?

MS. NYARADY:  I don't think there is anything pending before the Special Master that has the same factual predicate.  If you have something in mind, I'm happy to talk about it specifically, but I don't think there is

Page 11

Meet and Confer

anything.

MR. EVANGELATOS:  So by that logic, Catherine, are you saying that all these -- all the documents that are subject to the third-party disputes, we are not going to be able to rely on those, that you're going to seek an adverse inference on that too, or just the spreadsheet?

MS. NYARADY:  The only document that we asked for is the spreadsheet, so that's the one I am focused on.

MR. EVANGELATOS:  You've asked for the documents themselves, too, the contracts, have you not?  The ███████ ████████████████ all the others, have you not?

MS. NYARADY:  We haven't asked for that in redacted form.  I thought you meant what we are meeting and conferring on right now; the spreadsheet redactions. I thought you were referring to that conversation.

So the only thing that we've

Page 12

Meet and Confer

asked for in redacted form is the spreadsheet and that was just a workaround because of the briefing schedule.

Peter, let me just ask you one question, just to make sure we're not on different pages or talking past each other.  Your intention is to produce the spreadsheet in redacted form if you win the motion in front of the Special Master, right?  So...

MR. EMERICK:  We don't know what the Special Master is going to order on this and that's kind of the point, which is it's a pending dispute before the Special Master.  We're going to get some kind of order from the Special Master as to what we do with this.

MS. NYARADY:  Well, I don't think that's right.  I mean --

MR. EMERICK:  Well, I don't think that's right.

MS. NYARADY:  -- he's not deciding full on whether there is a

Page 13

Meet and Confer

production of the spreadsheet.  I thought it was just a question of whether certain information is going to be redacted, the third-party stuff that's been objected to, so this is helpful and this is new news for me.

Are you saying that there is a universe in which you plan on just not producing the spreadsheet in its entirety?

MR. EMERICK:  I don't know what the Special Master is going to order on this.  There is a pending Special Master dispute on it.  I don't know what the ruling is going to look like.  You seem to think you know what the ruling is going to look like.

MS. NYARADY:  I don't what the relief sought has been.  And so based on that my understanding was that at some point there is going to be a production of the spreadsheet and it just is a question of whether or not there will be redactions and the extent of those

4 (Pages 10 - 13)

Page 14

Meet and Confer

redactions.

It sounds like -- and this is very helpful for our briefing -- it sounds like --

MR. EMERICK: I don't know, because you guys asked for a protective order that says there shall not be these redactions by a party. And so I don't know -- I don't know what the interplay is going to look like with the Special Master's order and Judge Noreika's protective order on that. That is all I am saying. I just don't know what the outcome of that is going to look like.

MS. NYARADY: But you're envisioning a universe in which there is an outcome where you don't produce the spreadsheet in any form, it sounds like.

MR. EMERICK: I don't know.

MR. EVANGELATOS: Catherine you're saying that. I don't think we've taken a position either way.

I think we are saying to you very clearly, and thankfully there is a

Page 15

Meet and Confer

court reporter, that we don't know what's going to happen and we will address it when there is a ruling from the Special Master. We have not said anything about not producing the document at all. Those are your words.

MS. NYARADY: Right. And I am asking if you would take a position on it. I guess you're unable or unwilling to. And that's fine.

MR. EMERICK: Our position is we're going to comply with the Special Master's order and Judge Noreika's protective order.

MS. NYARADY: So if the Special Master says produce it but redact the third-party confidential information, what are you going to do, because those two comments you just made, Jay, seem to be in conflict.

MR. EMERICK: So, Catherine, we are going to comply with the orders and I say the Special Master's order, but that's of course subject to review, so

Page 16

Meet and Confer

just for clarification of that point on the record. We are not precommitting in case there is a review that goes on with respect to that.

But we're not getting into what the scenarios look like depending on if the Special Master's order has this particular language and what happens. The point is we don't know what is going to happen.

MS. NYARADY: Let me ask you one other question. Does Arm object to producing the spreadsheet other than with respect to third-party objections? Put it another way, but for the third-party objections, would Arm have produced the spreadsheet?

MR. EMERICK: So we'll take back your request on this. I understand you're seeking the adverse inference and/ or plan to seek an adverse inference on it. So we will take this back to the team and the client and we can move on to the next issue.

Page 17

Meet and Confer

MR. EVANGELATOS: And then I'll just note in there, as well, Catherine, I think we objected, at least in part, to if there is privileged information in the document. I think we said that to you before, that we have objected on both privilege and third-party grounds, and so, I'll just note that as well.

MS. NYARADY: Okay. And just to be clear, so other than privilege, though, do you have an objection to producing the spreadsheet but for the third-party objection? And I ask because I had not understood there to be an objection. I had understood that what was holding up the production of the spreadsheet is the third-party objections, putting aside, Peter, whether you intend to redact anything, you know, on privileged grounds.

MR. EVANGELATOS: Yeah, so I think that's right. So we've told you this, I think in letters, I think we told you -- I remember saying it myself on the

5 (Pages 14 - 17)

**Page 18**

Meet and Confer record during a deposition at some point. We intend to produce the document. I mean, we want to rely on it just as much as you want the document as well. And I think we said that in our, in our opposition to ▇▇▇▇▇ that the documents in the ▇▇▇▇ information is important, so I don't think there is any dispute on that piece.

MS. NYARADY: Okay. Jen Ying, anything else on your end?

MS. YING: No, I think we understand that -- please correct me if I am wrong if I didn't quite understand what you just said, Peter, which is that you guys, but for the third-party objections, would produce the spreadsheet subject to any privileged claims that you guys might have; is that correct?

MR. EVANGELATOS: Yeah, I think that's right. We've said that before, you know, we want to produce the document that these third-party issues are holding us up, subject to the privileged

**Page 19**

Meet and Confer redaction.

MS. YING: Okay. And would your privilege claim as to the document as a whole or is it as to portions of document?

MR. EVANGELATOS: I will have to go back and check on the specifics of that, it's been some time since I looked at that specific question. But we can take it back and look at it.

But, I mean, clearly if we're saying that the privilege -- we are objecting on privilege grounds, but we were going to produce the document, so I don't think it's for the entirety.

MS. YING: Okay, thank you.

MS. NYARADY: I think if I have this right, I think we're leaving this that you at least are on notice of our plans and you're going to take that back, and I assume we'll get some sort of a final answer on whether we can move forward with a production of any kind; is that fair?

**Page 20**

Meet and Confer

MR. EMERICK: Yeah, that's right.

MR. EVANGELATOS: Yeah, that's right. And obviously we disagree that any adverse inference is appropriate.

MS. NYARADY: I am shocked to hear that, Peter.

MR. EMERICK: Catherine, you weren't willing to trade on the adverse inference on your side?

MS. NYARADY: All right. I think there -- was there a second issue, I guess, on those other documents. I don't know who's going to speak to that on our side.

MR. BASNER: This is Adam from Paul Weiss. I can just ask Peter, I think you said you were going to follow up by e-mail with us yesterday. So is that something that we can expect to see today?

MR. EVANGELATOS: We are looking into it. I don't know I'll have an answer for you today.

**Page 21**

Meet and Confer

MR. BASNER: Okay. And same question, we understand that you've heard from ▇▇▇▇ and just wanted to see what the timeline would be on producing ▇▇▇▇ agreement?

MR. EVANGELATOS: I will have to check with the team on that. I know you guys have been handling with them for some time. I would have to check on the latest on that. And, you know, if there has been an agreement and redactions have been agreed to we will get that out promptly. I am just not sure off the top of my head.

MR. BASNER: Okay, thanks.

MR. EVANGELATOS: I think that's it, right, on the exchange? So if there is anything else, you know, let us know, but if not, I think we're done.

MS. NYARADY: Amazing. Have a great weekend everyone.

MR. EMERICK: Thanks everyone.

(Time noted: 11:20 a.m.)

6 (Pages 18 - 21)

Page 22

CERTIFICATION

I, Dawn Matera, a Certified Shorthand Reporter and a Notary Public, do hereby certify that the foregoing is a true and accurate transcription of my stenographic notes.

I further certify that I am not employed by nor related to any party in this action.

*Dawn Matera*

_____

Dawn Matera

*   *   *

7 (Page 22)

212-267-6868     **Veritext Legal Solutions**<br>www.veritext.com     516-608-2400

**A1562**

# EXHIBIT 7

 Outlook

---

## RE: Qualcomm v. Arm, Case No. 1:24-cv-490

---

**From** Basner, Adam L <abasner@paulweiss.com>

**Date** Wed 10/15/2025 9:16 PM

**To**   Evangelatos, Peter <peter.evangelatos@kirkland.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>

**Cc**   GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <QualcommvArm@dirllp.com>; jying@morrisnichols.com <jying@morrisnichols.com>

Peter,

As you may recall from the meet and confer five days ago, you represented that i ▮▮▮▮▮ and Qualcomm had reached an agreement on redactions, you would "get that out promptly." 2025.10.10 M&C Tr. 21:11-15. We understand that your position now is that you will not produce the redacted versions that ▮▮▮▮▮ has authorized you to produce unless and until the Special Master rules that Qualcomm's TLA claims relate only to ▮▮▮▮▮▮, and ▮▮▮▮ or grants a protective order motion from ▮▮▮▮▮ Please confirm.

Your email mischaracterizes the parties' dispute before Judge Fallon. The subject of the parties' March briefing to the Court was whether the *producing party* should be permitted to unilaterally redact information that is allegedly subject to a third-party confidentiality agreement or that a third party requests the producing party to redact, without the third party ever moving for a protective order. Arm advocated for such redactions, proposing that "the *producing party* may redact Designated Confidential Information (as defined in the ESI Order) that is subject to a confidentiality agreement with a Third Party for which a Third Party has requested redaction." D.I. 68 Ex. D ¶ 52 (emphasis added). Qualcomm made clear its objection that the decision to redact third party confidential information should not be left to Arm and the third party. D.I. 70 at 2 ("Arm should not be permitted to redact third-party information contained in responsive documents in the first instance, forcing Qualcomm to move to have the documents unredacted"); *Id.* at 4 ("If a dispute cannot be resolved by the parties, it should be left to the Court, and not to Arm and self-interested third parties"). And Qualcomm explained that its concern was motivated by two instances of Arm's inappropriate redactions in the prior litigation—one resulting in the Court precluding Arm from using certain evidence and advancing certain theories in light of its redactions of ALAs and refusal to produce unredacted versions, and another where the Court had to scold Arm that its redactions were "sloppy, inconsistent, wrong," "ridiculous," and "garbage," and that Arm "should be embarrassed" that Qualcomm had to bring them to the Court's attention. *Id.* at 2-3 (citing 2024.09.05 Hr'g Tr.). In rejecting Arm's Protective Order proposal, Judge Fallon also acknowledged that the scope of the dispute was over Arm's proposal to "permit a *producing party* to redact information that is subject to a confidentiality agreement with a third party." D.I. 74 (emphasis added).

Nothing in the March briefing, the Court's Order, or the Protective Order prevents the ordinary course whereby a third party may negotiate with the party seeking production of its documents to resolve the dispute without Court intervention. Qualcomm's brief to Judge Fallon made clear that remained an

option.  D.I. 70  at 4 ("The usual method for protecting information—party negotiation followed by a prompt protective order motion by the third party to resolve any disputes—is the appropriate procedure.").  Arm's apparent position to the contrary—that no redactions are ever permissible absent a motion for a protective order granted by the Court—is incorrect and invites an astonishing waste of resources for the parties, the third party, and the Court.

Consistent with the expectation in Delaware, Qualcomm engaged in a series of meet and confers with ████████ counsel, as noted in Qualcomm's letter to the Special Master.  2025.09.15 Letter to SM Rychlicki re: Newly-Learned Facts and Subsequent Events at 2 n.2.  In the interest of not burdening the Special Master with yet another (repetitive) motion for a protective order, Qualcomm an ████████ agreed tha ████████ would permit production of redacted versions of its agreements now, along with a corresponding redaction log, while the parties await the Special Master's rulings ████████ further agreed to abide by the Special Master's rulings as it relates to other third-party protective order motions, such tha ████████ would agree to produce a lesser redacted or unredacted version at a later date, consistent with the Special Master's rulings.

Please confirm by noon tomorrow, October 16, that Arm will promptly produce the material ████████ provided.  Otherwise, Qualcomm intends to raise this issue with the Special Master.

Regards,
**Adam L Basner** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
2001 K Street, NW | Washington, DC 20006-1047
+1 202 223 7367 (Direct Phone) | +1 202 478 0493 (Direct Fax)
abasner@paulweiss.com | www.paulweiss.com

---

**From:** Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Sent:** Tuesday, October 14, 2025 7:49 PM
**To:** Basner, Adam L <abasner@paulweiss.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm, Case No. 1:24-cv-490

Adam,

In March, the parties briefed competing Protective Order proposals for the treatment of third-party confidential information. In its briefing, Arm argued that "the Parties should be permitted to redact third-party confidential information in documents newly produced in this action." D.I. 68. Qualcomm argued that "Arm should not be permitted to redact third-party information contained in responsive documents," that "[a] third party wishing to protect confidential information has the burden of establishing good cause for doing so under Rule 26," and that "[a] third party wanting its information redacted must show why the requested redactions are appropriate." D.I. 70 at 1, 2.

The Court's ruling "reject[ed] Arm's proposals which would permit a producing party to redact information that is subject to a confidentiality agreement with a third party" and further stated that "neither the case authority cited by Arm nor the record in related Civil Action No. 22-1146-MN supports Arm's position that a provision permitting redactions of third-party confidential information should be included in the protective order and the ESI order." D.I. 74. The Court ordered that "a third party seeking further protections for its highly confidential information may follow the well-established procedure of moving for a protective order, which allows the court to balance the relevance of the information against the risk of inadvertent disclosure." *Id.*

**A1565**

As with any other third party confidential information, the proper procedure is for the third party, *i.e.* ███████, to file for a protective order. Has Qualcomm received ███████ redactions, does Qualcomm agree tha ███████ may redact that information, and is Qualcomm unopposed to such a motion? Assuming the Special Master rules in Arm's favor and finds that Qualcomm's only TLA claims are fo ███████████, an ███████ then Arm would not oppose the redactions we have received from ███████ Arm reserves all rights to revisit these redactions if the Special Master finds that cores other tha ███████████, an ███████ are in the case.

Best,
Peter

**Peter Evangelatos**
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3291 **T** +1 516 528 6348

**F** +1 212 446 4900

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

peter.evangelatos@kirkland.com

---

**From:** Basner, Adam L <abasner@paulweiss.com>
**Sent:** Monday, October 13, 2025 7:44 PM
**To:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; jying@morrisnichols.com
**Subject:** Qualcomm v. Arm, Case No. 1:24-cv-490

---

Counsel,

We understand that on Thursday ███████ provided Arm with redacted versions of its agreements that it is willing to have produced at this time. Please produce these agreements to us no later than tomorrow, October 14th.

Regards,
**Adam L Basner** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
2001 K Street, NW | Washington, DC 20006-1047
+1 202 223 7367 (Direct Phone) | +1 202 478 0493 (Direct Fax)
abasner@paulweiss.com | www.paulweiss.com

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have

received this communication in error, please notify us immediately by return email or by email to <u>postmaster@kirkland.com</u>, and destroy this communication and all copies thereof, including all attachments.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>　a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>　a Delaware corporation, | ) )<br>) )<br>) )<br>) | |
| Plaintiffs, | ) )<br>) | C.A. No. 24-490 (MN) |
| v. | ) )<br>) ) | ███████████████████████<br>███████████████████████ |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>　a U.K. corporation, | ) )<br>) )<br>) | |
| Defendant. | ) | |

**PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI
REGARDING SUBSEQUENT EVENTS RELATING TO THEIR MOTION TO COMPEL
PRODUCTION OF ARM'S ANALYSIS OF THIRD-PARTY LICENSES**

OF COUNSEL:

Catherine Nyarady
Jacob A. Braly
Jacob Apkon
PAUL, WEISS, RIFKIND,
　WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Adam Basner
PAUL, WEISS, RIFKIND,
　WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007
(202) 240-2900

October 17, 2025

Dear Special Master Rychlicki:

Pursuant to D. Del. LR 7.1.2, Plaintiffs write to advise Your Honor of newly-learned facts and subsequent events that have occurred since the August hearings that relate to Qualcomm's pending motion to compel production of documents related to Arm's analysis of Qualcomm's licensing requests. Ex. 1 at 4-5.

As Your Honor is aware, Arm's witness Akshay Bhatnagar testified at deposition that  Ex. 2 at 44:17-45:24. Qualcomm requested production of that on numerous occasions. *See, e.g.,* Ex. 3; Ex. 4 at 2. Arm said it is withholding the

*See, e.g.,* Ex. 5 at 2; Ex. 6 at 38:4-17; Ex. 7 at 245:12-246:8; Ex. 8.

Dispositive motions are due in this case on October 24. D.I. 44 ¶ 9. And, given that Arm did not otherwise object to producing this                                                              so that Qualcomm can address it in its upcoming summary judgment briefing. Ex. 9. Following the parties' October 10 meet and confer, Arm refused this request, claiming that Qualcomm's request is prohibited by the Protective Order ("PO") and untimely.[1] Arm is wrong.

**Protective Order.** Arm claims that the PO prohibits its ability to provide the because a third party has objected. This argument makes no sense because Qualcomm seeks only a redacted version of this

Arm also claims that the PO *prohibits* it from producing a redacted document in this case. While the producing party is not permitted to unilaterally redact documents for reasons other than privilege or other immunity, it is illogical to suggest that the PO *prohibits* the production of a document in redacted form if the parties agree. For the same reasons explained in Qualcomm's other October 17 letter, the parties' PO dispute in March before Judge Fallon has no bearing on the production of the                  in redacted form. Ex. 11 at 3.

**Timing.** Arm claims Qualcomm's request is untimely because Qualcomm did not request a redacted version of this                  earlier. As explained above, Qualcomm repeatedly requested production of the                 , including in the deposition where Qualcomm first learned of its existence. Ex. 2 at 44:17-21. Given the upcoming summary judgment deadline, Qualcomm now seeks a redacted version of the                  to reduce the prejudice to its summary judgment briefing.

Arm also suggests Qualcomm should have raised this issue with Your Honor in August. Ex. 8 at 3. But, at the time there was no dispute over production of a redacted version of the                 . In light of the upcoming summary judgment deadline and the current status of the parties' discovery disputes, Qualcomm made a reasonable, good faith request for a redacted version of the                 . Arm's refusal to provide those portions of the                  that it can

---

[1] To the extent Arm separately contends that any part of the spreadsheet is privileged, Ex. 10 at 17:2-9, the Protective Order permits such privilege redactions. Qualcomm reserves all rights to challenge any privilege designation.

1

at this time, based on an illogical reading of the protective order and meritless timing allegations, is improper and prejudices Qualcomm in the upcoming briefing.

Qualcomm respectfully requests that Arm be compelled to produce a redacted version of the ████████ pending resolution of the third-party protective order motions.

Respectfully submitted,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 589

Encls.

2

A1570

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>   a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>   a Delaware corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>   a U.K. corporation,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 24-490 (MN) |

## PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI REGARDING OUTSTANDING DISCOVERY DISPUTES

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

August 1, 2025

Dear Special Master Rychlicki:

In August 2022, Arm sued Qualcomm for developing unlicensed technology after Arm terminated agreements with Qualcomm subsidiary Nuvia. *Arm Ltd.* v. *Qualcomm Inc.*, C.A. 22-1146 (MN), D.I. 1 ¶ 78. Rather than waiting for resolution through litigation, Arm engaged in self-help, withholding licensed technology from Qualcomm, refusing to license other technology, and interfering with Qualcomm's customer relationships. D.I. 137 ("SAC"). Qualcomm filed this lawsuit. D.I. 2. In December 2024, the *Arm* v. *Qualcomm* jury found the Qualcomm CPUs licensed. C.A. 22-1146 (MN), D.I. 572 at 1.

## I.  Refusal to Produce Unredacted Third-Party Agreements

**TLAs.** Qualcomm needs Arm's TLAs and related agreements—and associated 30(b)(6) testimony (**RFPs 123, 140; Topics 2, 9**)[1]—to prove quotes Arm gave Qualcomm for Arm Cortex Implementation Cores (codenamed ███████████████████) violated the Qualcomm TLA, ███████████████████. SAC ¶¶ 104-105; Ex. 8 █████. Arm claims it based the October 2024 quote on █████ and █████ agreements. Ex. 9 at 23:1-24; Ex. 10 at 97:12-98:2; Ex. 11 at 65:24-72:9. Arm should produce all[2] agreements, so Qualcomm can test whether Arm █████ on the █████—and whether Arm's quotes for other IP violated the implied covenant of good faith and fair dealing. Arm should also produce a witness on the agreements' royalty rates.

Arm claims it "produced all third-party agreements" licensing the Implementation Cores "to which it has not received an objection or a motion for a Protective Order was not filed." Ex. 12 at 2.[3] Arm's withholding based on mere "objections" is improper under the Protective Order. D.I. 84 ¶ 51. Arm's representation also is inaccurate: it has not produced agreements for several entities licensing these products, including ██████████████████████ ████████████████. And Arm omitted Annexes for several agreements that contain pricing information. ██████████████████. Finally, Arm improperly limits production to TLAs licensing ██████████, but Qualcomm's claims allege Arm provided unreasonable quotes for other TLA IP. SAC ¶¶ 51, 102.

Arm also put these third-party agreements at issue by using the fact that Qualcomm has not seen third-party TLAs to cross-examine Qualcomm witnesses, asking whether they were aware of pricing of ██████████████ in third-party TLAs and whether the rates provided to Qualcomm were accepted by the industry. Ex. 20 at 106:6-107:22; Ex. 21 at 49:16-19, 53:8-22.

---

[1] "RFP" refers to Qualcomm's requests for production, Exhibits 1-4. "Topic" refers Qualcomm's Notice of Rule 30(b)(6) Deposition of Arm, Exhibit 5. "Interrogatory" refers to Qualcomm's interrogatories, Exhibits 6-7.

[2] With respect to ████'s agreements, Morris, Nichols, represents Qualcomm.

[3] ████ agreed to production of its TLA and related agreements, Ex. 13, yet Arm has not produced them.

Arm cannot challenge Qualcomm's knowledge of third-party pricing while simultaneously withholding it.

**ALAs.** Arm breached the Qualcomm ALA by withholding out-of-box packages ("OOBs") and Architecture Compliance Kit ("ACK") patches. SAC ¶¶ 173-180. Arm argues it was not obligated to deliver that technology, including because it is not ███████████ under the ALA. Ex. 22. Arm provided that technology to other licensees, Ex. 45 at 94:25-97:16, 126:8-127:4, thus, Qualcomm seeks to determine whether the definition of and obligation to deliver █████ ████████ is the same in those partners' ALAs.

Additionally, in May 2020, Qualcomm elected to extend the Qualcomm ALA to ████ ███████████████████████████," including Armv10. SAC ¶¶ 128-134, 184. ███████ ███████████████████, *id.* ¶ 65; Ex. 23, yet Arm failed to respond to Qualcomm's election for five years, violating the implied covenant of good faith and fair dealing. Arm denies a breach, claiming it engaged in good faith negotiation even though Qualcomm's election was improper and the ALA would not cover v10. Ex. 24. Qualcomm needs to review other ALAs to address Arm's defense.

In *Arm* v. *Qualcomm*, Arm produced limited heavily redacted ALAs, which are insufficient here. Qualcomm needs *all* unredacted ALAs and the annexes thereto (**RFP 27; Topics 2, 7**) to evaluate the scope of deliverables and rights of other licensees treated differently than Qualcomm. For example, the produced ALAs redact ██████████████████, Ex. 25 at 2, 4, 12, yet Arm argues it did not breach the Qualcomm ALA because the OOBs and ACK patches are "████" and not "████████," Ex. 22 at 6, 10. Arm also redacted all fee and royalty information, Ex. 25, and refused to produce ████████████████ (**RFP 162**), both necessary to test Arm's claim of good faith negotiation. At least ████ agreed to produce its ALA (with limited redactions that do not relate to the provisions at issue), Ex. 13, yet Arm has not produced that document.

As with the TLAs, Arm also questioned multiple Qualcomm witnesses regarding their knowledge of terms in third-party ALAs and whether those terms were comparatively advantageous to Qualcomm, while withholding the agreements that would allow Qualcomm to refute the implications of Arm's examinations. Ex. 20 at 57:2-18; Ex. 26 at 78:14-21, 80:12-21, 164:17-25. This is improper: Qualcomm must be allowed to probe Arm's defenses.

## II.    Improper Privilege Determinations

Arm withheld or redacted documents based on improper privilege assertions. The relevant documents should be produced and redactions should be lifted.

**Communications with FGS Global.** Qualcomm asserted claims arising from the leak by Arm's counsel (MoFo) and communications firm (FGS Global) to Bloomberg News of an October 22, 2024 letter Arm wrote to Qualcomm threatening to terminate Qualcomm's ALA. Arm and FGS Global assert communications about the leak are privileged (including "common interest") or work product. Exs. 29; 46 (FGS Emails). But generic "public relations services," including "[r]eviewing press coverage, making calls to various media to comment on developments in the litigation, and even 'finding friendly reporters,'" are not protected. *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 3140050, at *13-14 (D.N.J. July 22, 2021); *In re Riddell Concussion*

2

*Reduction Litig.*, 2016 WL 7108455, at *9 (D.N.J. Dec. 5, 2016), *aff'd in relevant part*, 2017 WL 11633446 (D.N.J. Jan. 5, 2017).  FGS was engaged by Arm, not its outside counsel.[4]  Ex. 28 at 24:2-27:20, 57:17-23.  And common interest privilege is merely "an extension of the attorney-client privilege or an exception to the waiver of that privilege." *10x Genomics, Inc.* v. *Celsee, Inc.*, 505 F. Supp. 3d 334, 337 (D. Del. 2020).

**Improper Date Cutoff.**  Arm failed to log documents dated after the original April 2024 Complaint.  The ESI Order required a privilege log of withheld documents generated prior to "the filing of the Complaint."  D.I. 85 ¶ 1(e)(ii).  The operative "Complaint" contemplated by the March 21, 2025 ESI Order was the December 16, 2024 First Amended Complaint.  D.I. 36.  Qualcomm's claims are partly based on post-April 2024 conduct, including Arm's October 22, 2024 letter.  While Arm eventually logged 27 entries for "documents relating to Arm's communications with Bloomberg regarding the notice" and related follow up communications, D.I. 162 at 4, it otherwise refused to log withheld documents dated from April 18 and December 16, 2024.  Ex. 29.

**Subject Lines Redactions.**  Arm redacted for privilege subject lines for four meetings with outside counsel regarding the leak.  Exs. 30-33.  Arm also clawed back metadata revealing subject lines for 18 documents.  Ex. 34.  In addition to the subject lines not being privileged, the ESI Order contemplates a party challenging a privilege claim may "request metadata for individual documents and emails," D.I. 85 ¶ 1(e)(v)(1), and such metadata will include "Email Subject," *id.* ¶ 2(p).

## III.    Failure to Provide Discovery

Arm refused to produce documents or provide 30(b)(6) testimony on entire categories of relevant information, prejudicing Qualcomm.

### A.    Breach of Qualcomm ALA

**Withheld Technology.**  In support of its ALA breach claim, Qualcomm requested documents regarding the technology and information Arm provided to other ALA licensees but not to Qualcomm, including, for example, versions of Arm's ACK from the relevant time period and any patches thereto (**RFP 6; Topic 14**); documents and communications regarding ACK patches (**RFPs 31, 67, 77, 139; Topic 14**) and OOBs (**RFPs 33, 67; Topic 14**).  SAC ¶ 175.

Arm would only produce lists of technology made centrally available for licensee download on an Arm platform and technical documents it claims are "sufficient to show" the OOB and ACK patch development and timeline.  Ex. 35 at 2, 7-8; Ex. 36 at 5; Ex. 37 at 18.  But ACK patches and OOBs are not available on the platform in question and Qualcomm found no

---

[4] Arm's cases, Ex. 27, show no privilege attaches where the client, not a law firm, retains the PR firm.  *In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 331 (S.D.N.Y. 2003) (no privilege for communications had client "hired Firm directly"); *Stardock*, *Sys., Inc.* v. *Reiche*, 2018 WL 6259536, at *3, *6 (N.D. Cal. Nov. 30, 2018).

A1576

documents in Arm's production showing the time and effort required to develop ACK patches and OOBs. Thus, Qualcomm cannot investigate what Arm withheld and the impact to Qualcomm.

**Arm's Decision-Making.** Qualcomm's **Topic 17** seeks testimony regarding Arm's decision to withhold deliverables from Qualcomm, and **Topic 41** and **RFP 156** seek information regarding Arm's decision to resume providing deliverables following the December 2024 jury verdict in *Arm* v. *Qualcomm*. Although Arm witnesses testified they ███████████ ██████████████████████████████████████████ Ex. 39 at 116:11-117:23, 125:6-127:12; Ex. 40 at 31:22-32:23, Arm has not produced those communications or provided a witness on its decision-making, limiting discovery to "Arm's provision of materials and support to Qualcomm" both before and after the verdict, and Arm's responses to Qualcomm's notices of breach. Ex. 37 at 41. Qualcomm knows what Arm delivered—it does not know the entirety of what Arm withheld, on what basis, and whether there is additional technology withheld today.

**Third Parties Deliveries.** Arm's delivery of technology to third parties is relevant, including because the Qualcomm ALA requires Arm to provide technology "█████" to ████████████████████████████████████████, and because communications with third parties may show Arm treated Qualcomm differently from others with the same or similar rights (**RFPs 28, 32, 68**). Arm refused to perform a search for documents or provide an accounting of ███████████████ or ██████ delivered to third parties but not to Qualcomm (**Interrogatories 1, 5**), instead producing only "documents sufficient to show the centralized distribution of documents, and such documents made available by such distributions, to all third-party ALA licensees." Ex. 35 at 7; Ex. 41 at 9. These limitations do not allow Qualcomm to determine when such technology became ████████████████ or who obtained the technology.

### B. Failure to Negotiate Armv10 License

Arm refuses to provide discovery into the versioning and development timeline of the Arm Architecture, its pricing strategy, or its ██████████████████, preventing Qualcomm from evaluating whether Arm negotiated a good faith offer for Armv10. According to Arm's Chief Architect, ██████████████████████. Ex. 42 at 130:21-23. Armv9's baseline is relevant to evaluating a fair offer for Armv10. Yet Arm refused to provide discovery into its versioning practices (**RFP 42**) pricing strategies (**Topic 26**), or efforts to encourage adoption of Armv9 (**RFP 102**). Arm also refused discovery into features included in Armv10 and associated value, when Arm began developing Armv10, and information about Arm's licensing of Armv10, including Arm's pricing strategy (**Interrogatory 3;**[5] **Topic 27**).

### C. Breach of Qualcomm TLA

Qualcomm sought discovery concerning discussions about licensing to Qualcomm under the TLA (**RFPs 40, 56, 57, 63; Interrogatory 6**) and Qualcomm's notices of breach of TLA

---

[5] For **RFP 144**, Arm agreed to produce documents "consistent with its response to Qualcomm's Interrogatory No. 3." Ex. 38 at 27-28.

█████████ (**RFPs 49, 50, 51**). Arm's production contains less than fifteen emails concerning Qualcomm's requests for licenses to ████████████████—all from the same three redacted email threads—and not one internal document concerning Arm's response to Qualcomm's breach notices. Arm also improperly withheld as privileged documents purportedly relevant to Arm's CPU ████████ and refused to produce 2020-2023 ████████████████████ ██████████. Ex. 47 at 1-2. Arm cannot defend against Qualcomm's TLA claim by asserting it undertook ████████████ but withhold the documents purportedly containing that analysis as privileged.

## IV.    Improper Responsiveness Determinations

Arm crafted underinclusive search terms and interpreted responsiveness so narrowly that it produced fewer than 5,000 emails and only 21 chats.[6] The size of Arm's document production does not match Qualcomm's claims, which allege years-long misconduct by Arm spanning multiple agreements, lines of business, and levels of Arm's organization.

In *Arm* v. *Qualcomm*, Arm produced over 18,000 emails and over 700 chats covering a similar span of time to the conduct at issue in this case. Arm's internal communications proved critical to probing Arm's claims, including, for example, a message from Arm's CEO expressing a desire to "hose" competitors through a shift in business model. C.A. 22-1146 (MN), D.I. 588 (Trial Tr.) at 342:18-343:11. In this case, Arm produced just 12 chats from its CEO, a search term custodian, despite testimony ████████████████████████████████████ ██████████████████████████████████████. Ex. 44 at 145:4-147:11.

Pursuant to Section 2(b)(i) of the ESI Order, D.I. 85, Qualcomm proposed ten additional search terms and modifications to Arm's terms. Arm deemed its production sufficient.[7] But even if Arm accepted Qualcomm's additional terms, Arm's narrow responsiveness determinations would exclude responsive documents. Qualcomm requests Arm be ordered to produce, without responsiveness review, all non-privileged documents hitting on (1) Arm's terms and (2) Qualcomm's proposed search terms yielding fewer than 15,000 hits, excluding families.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 2394

---

[6] Arm's production in the prior case, Ex. 43 at 1, does not excuse Arm from discovery in this case.

[7] Arm claims its search terms passed requirements in Paragraph 2(b)(i) of the ESI Order. Ex. 43 at 1. But Arm deemed less than 3.5% of the hits to its search terms responsive, Ex. 48 at 7-9; Ex. 49 at 3-4, meaning had it produced no documents at all, it still would have complied with the ESI Order, which requires additional search terms only where "more than 10% of the null set is responsive." D.I. 85 ¶ 2(b)(i).

5

# Exhibit 2

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,     §
A DELAWARE CORPORATION,    §
QUALCOMM TECHNOLOGIES,     §  C.A. NO. 24-490-MN
INC., A DELAWARE           §
CORPORATION,               §
                           §
   PLAINTIFFS,             §
                           §
- AGAINST -                §
                           §
ARM HOLDINGS PLC.,         §
F/K/A ARM LTD., A U.K.     §
CORPORATION,               §
                           §
   DEFENDANT.              §

ORAL AND VIDEOTAPED DEPOSITION OF AKSHAY BHATNAGAR
JULY 10, 2025

ORAL AND VIDEOTAPED DEPOSITION OF AKSHAY BHATNAGAR, produced as a witness at the instance of the Plaintiffs and duly sworn, was taken in the above styled and numbered cause on Thursday, July 10, 2025, from 9:22 a.m. to 12:39 p.m., before TAMARA CHAPMAN, CSR, RPR-CRR in and for the State of Texas, reported by computerized stenotype machine, at the offices of Kirkland & Ellis, LLP, 401 Congress Avenue, Austin, Texas, pursuant to the Federal Rules of Civil Procedure and any provisions stated on the record herein.

Job No. NY 7464214

A1581



A1582

# Exhibit 3

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

EXAL DIRECT DIAL:  +1 212 373 3532
EMAIL:  CNYARADY@PAULWEISS.COM

BRUSSELS          TOKYO
HONG KONG         TORONTO
LONDON            WASHINGTON, DC
LOS ANGELES       WILMINGTON
SAN FRANCISCO

July 11, 2025

**Via Email**                                          ███████████████████████

Peter Evangelatos
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

Re: *Qualcomm Inc.* v. *Arm Holdings Plc.*
C.A. No. 24-00490-MN

Dear Peter,

We write regarding the deposition of Akshay Bhatnagar on July 10, 2025.  During that deposition, Mr. Bhatnagar █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  When we asked Arm to produce this document, you responded that you would "take [that request] under advisement." *Id.* at 45:10-11.

Arm still has not produced that ███████, which is extraordinarily relevant to Qualcomm's claims that Arm f████████████████████████████████████████████████████████████████████████.  Arm's failure to produce this document has severely prejudiced Qualcomm's ability to prosecute its case, including by impeding its ability to depose Messrs. Shivashankar and Bhatnagar.  Please confirm that you will produce this ███████t, along with any drafts or other versions of the ████████ all documents used as inputs to the █████████, and any related emails or chats, by Monday, July 14.

Qualcomm reserves all rights.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

Sincerely,

*/s/ Catherine Nyarady*

Catherine Nyarady

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

# Exhibit 4

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

EXAL DIRECT DIAL: +1 212 373 3532
EMAIL: CNYARADY@PAULWEISS.COM

| | |
|---|---|
| BRUSSELS | TOKYO |
| HONG KONG | TORONTO |
| LONDON | WASHINGTON, DC |
| LOS ANGELES | WILMINGTON |
| SAN FRANCISCO | |

July 16, 2025

**Via Email**
Jay Emerick
Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654

Re: *Qualcomm Inc.* v. *Arm Holdings Plc.*
C.A. No. 24-00490-MN

Dear Jay,

We write regarding outstanding document requests made during or immediately after the depositions of Arm witnesses, including Martin Weidmann, Karthik Shivashankar, Akshay Bhatnagar, Will Abbey, Ehab Youssef, Jeff Fonseca, Vivek Agrawal, Andrew Howard, Jannik Nelson, and Christine Tran. Arm's deficient production and improper privilege assertions continue to severely prejudice Qualcomm's ability to prosecute its case, particularly now after the close of fact discovery. Arm must immediately produce the documents requested below. To the extent Arm continues to withhold responsive documents based on any claim of privilege, Arm must immediately supplement its privilege log to include the withheld documents.

**Documents Showing** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

On June 23, 2025, Qualcomm requested various unproduced documents based on the deposition testimony of Karthik Shivashankar, including documentation containing the ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* 6/23/25 Letter from C. Nyarady to J. Emerick. To date, Arm has not responded to our June 23 letter.

Qualcomm reiterated its request for production of documents ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ on July 8, 2025, based on additional deposition testimony from Ehab Youssef and Will Abbey. 7/8/25 Letter from C. Nyarady to Nick Fung. Qualcomm also noted that, ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Qualcomm requested that Arm immediately provide a supplemental privilege log to identify the entries corresponding to the

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

██████████████████████████████████████████. To date, Arm has not responded to our July 8 letter and has not provided the requested privilege log entries.

Qualcomm again reiterated its request for production of documents underlying the October 2024 TLA Offers on July 9, 2025, specifically requesting ██████████████████, based on Arm's request for an additional reminder during to the deposition of Jeff Fonseca. 7/9/25 Email from E. Westerhold to Brain Kramer. Arm responded on July 9, 2025, stating that ██████████████████████████████████████████████████████████████████████ 7/9/2025 Email from P. Evangelatos to E. Westerhold.

On July 11, 2025 Qualcomm requested additional documents relevant to the 2024 TLA Offers based on the deposition testimony of Akshay Bhatnagar. 7/11/2025 Letter from C. Nyarady to P. Evangelatos. Specifically, Mr. Bhatnagar testified that ███████████████████████████████████████████████████████████████████████ Bhatnagar Tr. 44:4-17. He also repeatedly described that █████████████████████████████████ *Id.* at 44:18-21, 44:25-45:7. To date, Arm has not responded to our July 11 letter or produced the requested spreadsheet.

Arm's has produced a single email chain and attachment regarding the 2024 TLA Offers. ARMQC_02784199; ARMQC_02784204. Qualcomm objects to the continued redaction of ARMQC_02784199 and ARMQC_02784204 for the reasons set forth in our July 8, 2025 Letter, and notes that Arm has refused to justify any continued privilege claim. In any event, a single email chain and attachment is obviously insufficient to fulfill Qualcomm's various requests noted above for ██████████████████████████, based on the testimony of five separate Arm witnesses.

Qualcomm hereby reiterates its various requests for production made above in full. Specifically, Qualcomm requests production of all documentation of the █████████████████████████████████████ including the ███████████████████████████████████████████ pending resolution of the protective order dispute.

### Documents Related to the "Discussion" with Bloomberg News Regarding Arm's Notice of Termination

On July 8, 2025, Qualcomm requested production of documents regarding Arm's communications with Bloomberg News based on the deposition testimony of Will Abbey. During his deposition, Mr. Abbey testified that ███████████████████████████████████ Abbey Depo Tr. at 160:5-15. On redirect, Arm elicited testimony from Mr. Abbey that ██████████████████████████████████████████████████ Abbey Depo Tr. at 165:13-21.

**A1588**



PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

3

█████████████████████████████ Abbey Depo Tr. at 173:18-174:2. Mr. Abbey further testified that ███████████████████████████████████████████████ Abbey Depo Tr. at 172:15-173:10, 174:3-175:14.

Arm has since provided its Second Supplemental Initial Privilege Log containing entries for some of these communications. However, Qualcomm maintains that privilege over these communications has been waived by Mr. Abbey's redirect testimony. ████████████████████████████████████████████████████████████████ Specifically, privilege has been waived for Mr. Abbey's ████████████████████████████████████████████████████████ As such, Arm must immediately produce all documentation of the "discussion" between Arm and Bloomberg News, whether that "discussion" was conducted through its counsel at Morrison & Forrester or through other agents.

### Documents Requested During the Deposition of Martin Weidmann

On June 23, 2025, Qualcomm requested documents showing an instruction from Arm management not to support Nuvia designs, and the rescinding of that instruction, both based on the testimony of Mr. Weidmann:

- Mr. Weidmann testified that ████████████████████████████████████████████████████████ Rough Tr. 115:5–116:19. Qualcomm requested production of these emails during Mr. Weidmann's deposition, and Counsel for Arm stated that ████████████████████████ Rough Tr. 116:16–117:10.

- Mr. Weidmann further testified that ████████████████████████████████████████████████████ Rough Tr. 124:11–125:11.

6/23/25 Letter from C. Nyarady to J. Emerick.

Hearing no response for weeks, Qualcomm again requested the production of the documents noted above on July 10, 2025. 7/10/25 Email from J. Apkon. In response, Arm stated that ██████████████████████████████████████████████████████████ 7/10/25 Email from A. Janes.

Qualcomm disagrees that Arm's production is sufficient in either regard. None of the documents cited in Mr. Janes' email contain the instruction from management not to support Nuvia

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

4

designs or the rescinding of that instruction. At most, the cited documents show ██████████ ██████████████████████████ But the instructions themselves remain absent from Arm's production. Arm must immediately produce the requested emails showing Arm management's instructions (1) not to support Nuvia designs and (2) to resume support for Nuvia designs.

**Other Documents Requested During the Deposition of Karthik Shivashankar**

On June 23, 2025, in addition to ████████████████████████████, Qualcomm requested several other categories of unproduced documents based on the deposition testimony of Karthik Shivashankar, including:



*See* 6/23/25 Letter from C. Nyarady to J. Emerick. To date, Arm has not responded to our June 23 letter.

Qualcomm hereby reiterates its various requests for production made above in full. Specifically, Arm must immediately produce the following documents:

**Documents Requested During the Deposition of Andrew Howard**

During his deposition, Andrew Howard testified that ████████████████████ ████████████████████████. Andrew Howard Depo Tr. at 182:10-20. He further testified that ████████████████████████████████████████████████████████████ ████████████████████████████████████████ Andrew Howard Depo Tr. at 187:4-12. Mr. Howard clarified that ████████████████████████████ ████████████████████████ Andrew Howard Depo Tr. at 187:13-24.

Qualcomm's counsel requested production of the ████████████████ on the record as unproduced document(s) used to by Mr. Howard for his 30(b)(6) testimony. Andrew Howard Depo Tr. at 188:5-13. Specifically, the requested documents were used to support Mr. Howards corporate testimony for Qualcomm's Rule 30(b)(6) Topic 31(a): "ARM's analyses of Qualcomm's CPUs and systems on chips, including discussions with third-parties regarding the same." To the extent Arm believes it has produced the competitive analysis chart referenced by Mr. Howard during his deposition, please provide such Bates number(s). Otherwise, Arm must immediately produce the requested document(s).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

5

**Documents Requested During the Deposition of Jannik Nelson**

During his deposition, Jannik Nelson gave corporate testimony regarding the ███████ ██████████ pursuant to Qualcomm's 30(b)(6) Topic 27. Jannik Nelson Depo Tr. at 71:17-23. As part of this corporate testimony, Mr. Nelson testified that ████████████████ ████████████████████████████████████ Jannik Nelson Depo Tr. at 90:15-25, 92:2-7. Qualcomm's counsel requested production of this ████████ ████████████████████ Jannik Nelson Depo Tr. at 92:17-23. Mr. Nelson further testified that ████████████████████████ Jannik Nelson Depo Tr. at 88:10-18. Arm has produced a limited number of price books from 2024 in response to Qualcomm's requests, but not for ███████ Qualcomm hereby requests production of ██████████.

To the extent Arm believes it has produced the message sent to Mr. Nelson containing ████████████████████████████ referenced by Mr. Nelson during his deposition, please provide such Bates numbers. Otherwise, Arm must immediately produce the requested documents.

**Documents Requested During the Deposition of Vivek Agrawal**

Exhibit QCX273 (ARMQC 02784227), introduced during Mr. Agrawal's deposition, is a ████████████████████████████████████ Vivek Agrawal Depo Tr. at 185:10-186:12. Mr. Agrawal testified that ██████ Vivek Agrawal Depo Tr. at 186:13-22. Qualcomm's counsel requested production of the ████████████████████████ Vivek Agrawal Depo Tr. at 186:23-187:1. Arm must immediately produce the requested confluence page in full, readable form.

Exhibit QCX274 (ARMQC_02784661) and QCX275 (ARMQC 02784664) both introduced during Mr. Agrawal's deposition, ar ████████████████████████ ████████████████████████ Vivek Agrawal Depo Tr. at 187:2-188:15. Arm has redacted various messages in both documents for privilege, from both Mr. Agrawal and from Copilot. Qualcomm's counsel requested production of unredacted copies of Exhibit QCX274 and QCX275 on the record. Vivek Agrawal Depo Tr. at 188:16-22. Copilot is an AI chatbot provided by Microsoft. Microsoft, a third-party, logs user queries to Copilot and Copilot's responses. *See* https://learn.microsoft.com/en-us/copilot/microsoft-365/microsoft-365-copilot-privacy?source=recommendations#data-stored-about-user-interactions-with-microsoft-365-copilot ("When a user interacts with Microsoft 365 Copilot… we store data about these interactions. The stored data includes the user's prompt and Copilot's response."). Arm cannot claim privilege over communications from Mr. Agrawal, or any other Arm employee, sent to Microsoft as part of a Copilot chat. Arm also cannot claim privilege over Copilot's responses, which are messages generated by a third-party AI chatbot. Arm must immediately produce unredacted versions of QCX274 and QCX275, as well as any other production documents containing Copilot chat messages, whether queries or responses, that Arm has redacted for privilege.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

6

**Documents Requested During the Deposition of Christine Tran**

Exhibit QCX258 (ARM_01426582), introduced during Ms. Tran's deposition, is an ███████████████████████████████████████████████████████████████. Christine Tran Depo Tr. at 110:9-111:21. QCX258 includes two redacted emails from Lynn Couillard on May 20, 2020 and June 5, 2020 that are unredacted in another version of the email chain which Arm has previously produced, QCX259 (ARM_00085567). Christine Tran Depo Tr. at 111:22-115:8. Qualcomm's counsel requested production of an unredacted copy of QCX258 on the record. Christine Tran Depo Tr. at 115:9-12. Arm must immediately produce a copy of QCX258 with appropriate privilege redactions, removing redactions at least for the duplicate messages that are shown unredacted in QCX259.

Qualcomm reserves all rights.

Sincerely,

*/s/ Catherine Nyarady*

Catherine Nyarady

# Exhibit 5

# KIRKLAND & ELLIS LLP

333 West Wolf Point Plaza
Chicago, IL 60654
United States

Jay Emerick
To Call Writer Directly:
+1 312 862 3772
jay.emerick@kirkland.com

+1 312 862 2000

Facsimile:
+1 312 862 2200

www.kirkland.com

July 24, 2025

**By E-mail**

██████████████████████████

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton &
  Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re: *Qualcomm Inc. v. Arm Holdings PLC*, C.A. No. 24-490 (D. Del.)

Dear Catherine:

We write in response to your letters regarding the production of certain documents.

### Documents Requested During the Deposition of Martin Weidmann

Qualcomm requests emails regarding Arm's provision of support to Qualcomm for Nuvia-based designs. As we previously informed you, Arm has already produced documents regarding Arm personnel allegedly receiving instruction from management not to support Nuvia-based designs during the period of the litigation. 7/10/25 Email from A. Janes (identifying ARM_01230110; ARM_01314327; ████████████████████████████). Arm has also produced documents showing Arm's resumption of support to Qualcomm. *Id.* (identifying ARMQC_02779076). Arm maintains that its production is complete.

### Documents Regarding Arm's ████████████████████████ to Qualcomm

Qualcomm seeks documents regarding Arm's ████████████████████ including documents allegedly referenced at the depositions of Karthik Shivashankar, Ehab Youssef, and Akshay Bhatnagar. As we have repeatedly explained through written correspondence and at depositions, and as Arm's witnesses have confirmed, Arm's ██████████████████████ third-party agreements for ███████████ that also involved legal counsel. *See* 6/19/25 P. Evangelatos Email to J. Braly; 7/9/25 P. Evangelatos Email to E. Westerhold ("As we have previously written, due to Arm's confidentiality obligations, Arm cannot produce third-party

# KIRKLAND & ELLIS LLP

Catherine Nyarady
July 24, 2025
Page 2

agreements for ███████████████████ without clearing that production beforehand with each third party…"). Arm has produced all third-party agreements to which it has not received an objection or a motion for a Protective Order was not filed. We also provided corrected versions of Exhibits 5 and 5.1 from Mr. Abbey's deposition. However, Arm will continue to withhold documents that include confidential information for ████████, and the other third parties pending resolution of their Protective Order disputes, including Arm's agreements with both companies and ████████████████████. We have investigated and no other non-privileged documents reflecting Arm's ██████ exist.

As to the other requests raised in your letters, Qualcomm seeks "all quarterly price books from Q1 2019 to the present." Your letter fails to explain why six years of quarterly price books is relevant or proportional to the needs of Qualcomm's allegations, which is based on Arm's ████████████ for ████████████ Arm produced to Qualcomm its price books for 2024, which is more than sufficient to understand Arm's ████████████ price book pricing as of Arm's ████████████. Qualcomm also seeks information regarding Qualcomm's 2019 Annex to the QC TLA, particularly, "████████████████████ ████████" in Qualcomm's 2019 Annex to the QC TLA. However, that agreement has already been produced and is not at issue in the SAC. Nor is Qualcomm's 2019 agreement relevant, ████████████████████████████████████████ ████████████████████████████████████████ Thus, to the extent any other responsive documents even exist, they are not relevant.

As to Qualcomm's other rhetoric, we disagree with your characterization of the testimony of Mr. Youssef and Arm's privilege instructions. ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████ We also disagree that Qualcomm has been "severely prejudiced." Arm has produced the documents not subject to a third-party confidentiality dispute, and Qualcomm deposed five witnesses knowledgeable about Arm's TLA offers. Any prejudice to Qualcomm by perceived discovery delays is a problem of its own making, as Qualcomm waited until March 2025 to raise its TLA allegations.

## Documents Related to the Discussion with Bloomberg News Regarding the Breach Letter

Qualcomm seeks documents related to a "discussion" with Bloomberg News regarding Arm's October 22, 2024 notice of material breach to Qualcomm. Yet Qualcomm incorrectly asserts that Mr. Abbey "waiv[ed] any claim of privilege to" "an alleged attorney-client communication" about Bloomberg News and demands that Arm "immediately produce all documentation of the 'discussion' between Arm and Bloomberg News regarding the breach letter." In fact, Arm has not claimed privilege over the "discussion" with Bloomberg News regarding Arm's October 22, 2024 notice of material breach to Qualcomm. ████████████████████

**KIRKLAND & ELLIS LLP**

Catherine Nyarady
July 24, 2025
Page 3



Arm did not assert privilege over FGS's discussions with Bloomberg.

Because Arm has not claimed privilege over the "discussion" with Bloomberg News, Arm waived no privilege in taking the redirect of Mr. Abbey during his deposition. ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ Arm trusts that the testimony of Messrs. Siegel and Kranhold resolves Qualcomm's concerns about this "discussion."

**Chat Messages Involving Mr. Haas**

Qualcomm demands that Arm "immediately supplement its production with at least Mr. Haas' chats responsive to Qualcomm's RFPs." However, the premise of this demand is mistaken. Contrary to the misrepresentations in your letter, Arm has already performed a reasonable search for responsive materials, including Teams chats, using search terms. And Arm has in fact produced at least 408 of Mr. Haas's Teams chats in the prior case and another 12 Teams chats in this case. *See* Haas Dep. at 146–147.[1] Arm has no further discovery obligations to search for additional Teams chats. Qualcomm speculates that more of Mr. Haas's Teams chats are responsive, but fails to identify any basis for why this is so. ▮▮▮▮▮▮▮▮

---

[1] Arm notes that Qualcomm's July 10 letter appears to cite to the rough transcript of Mr. Haas's deposition. Arm herein responds to Qualcomm's July 10 letter on Arm's understanding that all citations were to the rough transcript.

## KIRKLAND & ELLIS LLP

Catherine Nyarady
July 24, 2025
Page 4

████████████████████████████████████████████ Qualcomm has not identified with specificity any deficiency in Arm's production of Mr. Haas's chats, and merely appears to be fishing. Moreover, Qualcomm has refused to engage in reciprocal discovery, given Qualcomm's significant deficiencies in its own searches for responsive documents, as we have explained in previous discovery correspondence. Accordingly, Arm will not produce any more documents in response to this request.

**Outside Communication Firms**

Qualcomm seeks confirmation that "Brunswick was not involved in the October 22, 2024 leak or any other communications between Arm and third parties responsive to Qualcomm's RFPs." Qualcomm had the opportunity to ask Mr. Haas at his deposition whether Arm communicated with Brunswick regarding the October 22 notice of material breach. Qualcomm failed to do so. ██████████████████████████████████ Having failed to establish that Brunswick is relevant to the events surrounding October 22, Qualcomm may not now use this letter to import last-minute discovery requests. Nevertheless, for the avoidance of doubt, Arm confirms that no communications with Brunswick are responsive to the non-objectionable scope of Qualcomm's RFPs.

**Documents Related to the Financial Times Article**

Qualcomm demands that Arm "immediately produce documents responsive to" the Financial Times article titled "Arm to launch its own chip in move that could upend semiconductor industry." But Qualcomm fails to articulate how the Financial Times article (Haas Exhibit 8), or the cited testimony of Mr. Haas, is relevant to any party's claim or defense or is proportional to the needs of the case. Qualcomm also fails to explain how Mr. Haas's cited testimony in any way overcomes Arm's previous objections to the lack of relevance and proportionality for Qualcomm's RFP Nos. 104, 126, and 127. *See* D.I. 162, at 4. Arm maintains its objections to these RFPs. As your letter acknowledges, Qualcomm's motion to compel remains pending before the Court. Accordingly, Arm will not produce documents in response to this request absent Court order.

**Documents Requested During the Deposition of Andrew Howard**

Qualcomm requests production of Arm's "'competitive analysis' on Qualcomm's CPUs." Qualcomm, for its part, has refused on relevance and other grounds to produce documents "concerning any comparisons of any Arm-designed cores, CPUs, or products containing the same to any cores, CPUs, or products containing the same designed by Qualcomm, Nuvia, or any Third Party." *See* Qualcomm's R&Os to Arm's RFP No. 12. In any event, Arm has already

## KIRKLAND & ELLIS LLP

Catherine Nyarady
July 24, 2025
Page 5

produced (subject to its objections) documents concerning Arm's analyses of Qualcomm's CPUs and systems-on chips related to the Qualcomm ALA. ██████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ We trust this resolves Qualcomm's concerns.

**Documents Regarding** ██ **Pricing**

Qualcomm requests production of a ██████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ █████████████████████████████ Regarding the second request, Arm has investigated Qualcomm's request and confirmed that there is no price book that includes pricing for ██.

Relatedly, Qualcomm also seeks information regarding ██████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ █████████████████████████████████████████ Likewise, information about the license subscriptions of third parties is both irrelevant and subject to third-party confidentiality disputes. Whether companies such as ██████████████████ have access to ██ is irrelevant to Qualcomm's ██ allegations, which are based on Qualcomm's purported ████ to extend the ALA from May 2020.

**Documents Requested During the Deposition of Vivek Agrawal**

Your letter requests production of the "full [C]onfluence page in readable form" from ARMQC_02784227 and unredacted versions of ARMQC_02784661 and ARMQC_02784664 reflecting Mr. Agrawal's interactions with Copilot, as well as "any other production documents containing Copilot chat messages." While we disagree that ARMQC_02784227 is not "in readable form," Arm has produced many other versions of the same or similar Confluence page that are not truncated. *See, e.g.*, ARMQC_02773850, ARMQC_02773872, ARMQC_02773878, ARMQC_02773898, ARMQC_02773906, ARMQC_02773945, ARMQC_02774029, ARMQC_02774036, ARMQC_02774043, ARMQC_02774051, ARMQC_02774058, ARMQC_02774081, ARMQC_02774103, ARMQC_02774123, ARMQC_02774131,

# KIRKLAND & ELLIS LLP

Catherine Nyarady
July 24, 2025
Page 6


ARMQC_02774139,    ARMQC_02774147,    ARMQC_02774155,    ARMQC_02774163,
ARMQC_02774233,    ARMQC_02774312,    ARMQC_02774319,    ARMQC_02774326,
ARMQC_02774333,    ARMQC_02774355,    ARMQC_02774378,    ARMQC_02774385,
ARMQC_02774494,    ARMQC_02774515,    ARMQC_02774523,    ARMQC_02774531,
ARMQC_02774539.    Accordingly,  Arm  will  not  reproduce  the  content  reflected  in
ARMQC_02784227.

We also disagree with your contention that "Arm cannot claim privilege over" ARMQC_02784661 and ARMQC_02784664, and any related documents, because they allegedly include "communications . . . sent to Microsoft as part of a Copilot chat." Qualcomm's contention is both factually inaccurate and legally baseless. These documents contain privileged information and were generated at the request of or pursuant to legal advice, for the purposes of seeking legal advice, and/or contain or reflect attorney work product. Such correspondence is privileged, and Arm will not produce unredacted versions of QCX274 and QCX275, nor any other production documents containing similarly privileged information, to the extent such documents exist.

## Documents Requested During the Deposition of Christine Tran

Your letter requests production of a copy of ARM_01426582 "with appropriate privilege redactions, removing redactions at least for the duplicate messages that are shown unredacted in" ARM_00085567. We have reviewed ARM_01426582 and will re-produce that document to align the redactions with ARM_00085567. However, the other redactions in that document will remain as they are to privileged information for the purposes of seeking legal advice.

## RFPs Discussed At Meet And Confers

Qualcomm's July 7, 2025 letter seeks clarification from recent meet and confers regarding Arm's position on certain RFPs.

## RFP 37

We understand this Request to seek documents relating to licensing ▮ to Qualcomm. Your Letter asks "whether Arm would produce documents if 'there are discussions that concern licensing to Qualcomm that include pricing information.'" As discussed above, there are no non-privileged documents concerning pricing of ▮.

## RFPs 42 and 102

Your letter explains that this Request seeks "'documents where people at Arm are saying we should release a ▮, we believe that we have made developments or introduced features,

## KIRKLAND & ELLIS LLP

Catherine Nyarady
July 24, 2025
Page 7

whatever it is, sufficient to be ███ of the Arm architecture.'" Your letter also acknowledges that this request "may be 'capture[d] in what you are describing you'll be producing.'" Your letter asks "if Arm intends to produce any more documents responsive to this Request." After reviewing our production, Arm has already produced responsive documents to this Request.

### RFP 123

Your letter asks whether "Arm intends to produce any more documents responsive to this Request." As discussed above, Arm has already produced the third-party agreements for ██████ ███████████████ in effect as of ████████ that are not subject to a third-party confidentiality dispute, but will continue to withhold documents pending the Court's resolution of the Protective Order disputes that have been filed.

### RFPs 126, 127

These Requests seek documents related to the February 13, 2025 Financial Times article. As discussed above, Arm will not produce any more documents in response to this request pending the Court's resolution of Qualcomm's motion to compel.

### RFPs 134, 135–138

We have investigated Qualcomm's request and confirmed that Arm does not use any other CRMs. We fail to understand the relevance of what other discovery Qualcomm is seeking with these requests, as evidenced by Qualcomm's failure to ask Arm's 30(b)(6) designee on Arm's CRM systems any questions about that topic. Accordingly, Arm will not produce any more documents in response to these Requests.

### RFP 143

We understand this Request to seek documents concerning ██████████████, yet ███████ is not mentioned in the SAC nor has Qualcomm plead any allegations based on ████████. Accordingly, Arm will not produce any more documents in response to this Request.

### RFP 145(2)

Arm confirms that it is not withholding any documents on the basis of whether such documents constitute a "formal" or "informal" media statement, and that its production to date is complete as to this Request.

## KIRKLAND & ELLIS LLP

Catherine Nyarady
July 24, 2025
Page 8

### RFP 152

Arm understands that Qualcomm is seeking communications regarding any "decision" to provide ACK patches to Qualcomm.  As discussed above, Arm's production of documents responsive to this Request is complete.

### RFPs 159, 160, 163

We understand this Request to seek Arm's communications with third-party ALA licensees relating to certain materials and support that Qualcomm contends are "deliverables." Qualcomm's requests for these third-party communications have no relevance to whether Qualcomm received the materials to which it is entitled under the Qualcomm ALA. Accordingly, Arm will not produce any more documents in response to these Requests.

### RFP 166

Your letter explains that this Request seeks documents concerning competitive intelligence.  As noted in Arm's objections to this request, Qualcomm has repeatedly disclaimed, both orally and in writing, that it need prove or even identify a relevant market to support its claims. Until Qualcomm defines the relevant market(s), Arm is unable to discern for which market(s) Qualcomm seeks competitive intelligence information.  Because your letter fails to define any relevant market, Arm will not produce any more documents in response to this request.

Sincerely,

*/s/ Jay Emerick*

Jay Emerick

**A1601**

# Exhibit 6

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

_____

QUALCOMM INCORPORATED, a

Delaware Corporation,

QUALCOMM TECHNOLOGIES, INC., a

Delaware Corporation,

      Plaintiffs,

  v.                    C.A. No.

ARM HOLDINGS PLC, a U.K.        24-490-MN

Corporation,

      Defendant.

_____

TELEPHONIC MEET AND CONFER

DATE:       Monday, July 28, 2025

TIME:       5:33 p.m.

LOCATION:   Remote Proceeding

           New York, NY 10001

REPORTED BY:  Jessica Moy

JOB NO.:    7515398

Page 34

deliverables, the other about providing them following the termination or the end of the trial. And so that is what I had requested during that deposition. So that's what we're looking for, not just general back and forth with Qualcomm.

MR. JANES: So this is Adam from Kirkland. What we've identified for you is what responsive non-privileged documents we could locate. So I don't know if it's an impasse or if it -- like, we identified what we could find on this for you.

MS. NYARADY: This is Catherine. Can I just ask a question? Did you find documents such as what Jake is describing and you're just claiming privilege? Like, I'm trying to understand whether a full investigation has been done into the exact documents that Jake is seeking that somebody testified about.

MR. JANES: This is Adam from Kirkland. So maybe I'm just still confused about what types of documents you're looking for. But, I mean, what we've identified reflect what I understood you were asking for, which is, like, you know, some sort of instruction or email talking about stopping support and then one later in time talking about resuming support. So, I guess, what's missing from your end?

Page 35

What do you think is missing?

MR. BRALY: Well, the documents that you have identified are not -- certainly the one post 2025 or the documents post 2025, it's not an instruction from someone who's in management or senior telling people internally at ARM, "We need to start providing things to Qualcomm again." And that was the description of the communication that ███████████ ███████████ .

MR. JANES: This is Adam from Kirkland. So I read that deposition transcript. My understanding of his testimony was that ███████ ███████████████████ ███████████████ ███████████████████ And so, again, after we got your letter, we looked for documents that you were asking about and we identified what we thought you were asking for by Bates number.

MR. BRALY: I mean, I think we just disagree about what ███████████ testified to and the documents that we're looking for. And, specifically, you know, whether there are documents that indicate an instruction to begin providing deliverables to Qualcomm as well as the documents prior to halting the deliverables that gave the instruction to stop providing them.

Page 36

MR. EMERICK: So this is Jay from Kirkland. You have that document and you used it at the deposition. I don't understand the disconnect either here. Like, you've got a document that says that.

MR. BRALY: So is it your position that the document that was at the deposition is the document that ███████████ was referring to?

MR. EMERICK: You've got to ask him that.

MR. BRALY: Well, we requested production of those documents or for you to identify them.

MS. YING: This is Jen Ying from Morris Nichols. So I think one of our questions is, following his deposition, did you go back to the witness and ask him to provide to you guys the documents or the emails that he was referring to in his deposition?

MR. EMERICK: So this is Jay. We did an investigation. You have what you have on this, which we think also tracks with testimony.

MS. YING: Okay. But this is Jen again. Can you answer my question? Did you or did you not ask the witness to provide you the emails that

Page 37

he was referring to in his testimony?

MR. EMERICK: And I'm going to give you the same answer, which is we did an investigation. I'm not going to get into the specific details and specific attorney-client communication. We did an investigation on this, Jen.

MS. NYARADY: Okay. This is Catherine. I think we can move on. Look, we're going to move on this because maybe you'll tell the special master more about what you did and you don't want to tell us. That's fine. I think you should tell us what you've done. And if you really have run this to the ground, I don't think we should just have to take your word for it. We don't think we have the document. We'll raise it with the special master. She can ask you these questions.

So, Jake, let's keep going.

MR. BRALY: Okay. The next category of documents in the July 24th letter are documents regarding ARM's analysis regarding the October 2024 TLA proposal that it provided to Qualcomm. And we asked for a number of documents.

We asked for the quarterly ███████████ and we asked for other documents that were underlying any kind of ███████████ or analysis of a ███████

10 (Pages 34 - 37)

**A1604**



Page 38

██████ Is it correct that you do not plan to produce any additional documents related to ARM's analysis for the October 2024 licensing proposal?

MR. EVANGELATOS: This is Peter. So I think we told you in the letter that we are withholding certain documents obviously based on the number of third-party PO issues that are out there, including the ██████ that's referenced at Akshade's [ph] deposition. That document has third party confidential information in it.

So pending resolution of those disputes, you know, if the special master orders us to produce documents, overrule those objections, then we produce that document. So I don't agree with your characterization there. And obviously whatever other agreements are subject to those disputes as well would also be produced.

MR. BRALY: Okay. But just so we understand, apart from that you do not intend to produce other documents.

MR. EVANGELATOS: Well, what other documents are you looking for? We've given you what you've asked for.

MR. BRALY: And do you plan to produce additional ██████?

Page 39

MR. EVANGELATOS: Aside from the ██ that we produced? Actually, I think there's more than that out there. So we gave you all of 2024; right? Is there something else you're looking for?

MR. BRALY: Do you plan to produce ██████ from the intervening years between 2019 and 2024?

MR. EVANGELATOS: What is the relevance of that?

MR. BRALY: There are parties that could enter into TLA annexes in different years and it may be that calculation of royalty rates in some way related to the price book during those years.

MR. EVANGELATOS: Sorry. Could you say that again? I didn't quite hear the end of that.

MR. BRALY: There are parties that may have entered into annexes for the cores in question in other years, and it may be that the relationship between the ██████ and their royalty rates, there may be a connection between the ██████ and the royalty rates similar to what we've seen from 2024. And these could be parties that have lower royalty rates than, you know, the ██████ identified by ARM witnesses.

MR. EVANGELATOS: Okay. So you're

Page 40

saying you think the relevance of that is that you want to understand what the ██████ was as of, you know, certain times when other third party agreements were entered into for ██████████. Is that what you're saying?

MR. BRALY: Yeah. Yes.

MR. EVANGELATOS: All right. Well, with that explanation, let me take it back and take it under advisement and we'll get back to you on whether we can produce those. I appreciate the clarification.

MR. BRALY: Okay.

MR. EVANGELATOS: Was there anything else that you were looking for?

MR. BRALY: I think that's everything. I mean, I understand your representation that there are no other non-privileged documents that reflect the analysis.

MR. EVANGELATOS: Yeah, I think that's right. And just to be clear, I think we produced those couple of documents from ██████ deposition. Those, you know, obviously talked about the TLA offers that were made and we produced those to you. And, you know, our view is we've given you everything that's not privileged. So that's it.

MR. BRALY: Okay. And then we have

Page 41

documents related to the discussion with Bloomberg regarding the letter. And so I think for some of this, this relates to FGS Global and whether or not there are documents that you are withholding on the basis of privilege with FGS Global, which I think we've talked about.

And then also at the end of Mr. Abbey's deposition, I think he waived privilege regarding ██ ████████████████████████████ ████████████████████████ ██████ And so we're looking for any documents related to ██████████████ ████████████

MR. EMERICK: Yeah. So this is Jay, Kirkland. You know, we disagree that there was a privilege waiver that we waived, that Mr. Abbey waived. And you have what you have on -- I think the rest of this sounds like the same issue as the other privilege claims that we discussed earlier, but let me know if there's something different here.

MR. BRALY: I think that's right. The next topic are the chat messages involving Rene Haas. And this feeds into what we were talking about before. So the fact that there basically have been no chat messages that have been produced. Mr. Haas testified

11 (Pages 38 - 41)

# Exhibit 7



A1607

# Exhibit 8

# KIRKLAND & ELLIS LLP

601 Lexington Avenue
New York, NY 10022
United States

Peter Evangelatos
To Call Writer Directly:
+1 212 909 3291
peter.evangelatos@kirkland.com

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

October 16, 2025

**By E-mail**

███████████████████████████

Catherine Nyarady
Paul, Weiss, Rifkind, Wharton &
  Garrison LLP
1285 Avenue of the Americas
New York, New York 10019

Re:    *Qualcomm Inc. v. Arm Holdings PLC*, C.A. No. 24-490 (D. Del.)

Dear Catherine,

We write regarding Qualcomm's October 6, 2025 demand that Arm bypass and disregard the Court's procedures and orders for resolving third-party confidentiality disputes. Arm declines to do so, and will instead follow the Court's procedures and orders.

Qualcomm demands that Arm redact third-party confidential information subject to pending third-party motions from a spreadsheet that Arm created ████████████ ████████████████████████, and produce that redacted spreadsheet. *See* 10/6/25 J. Hartley Email re Production of Spreadsheet. In your correspondence on this issue and during the parties' meet and confer on October 10, 2025, Qualcomm threatened to "seek to preclude" Arm "from relying on" the spreadsheet and seek an adverse inference "that the chart is not helpful to you." *See* 10/10/25 Meet and Confer Tr. at 8. Qualcomm's request for redaction, and the relief it seeks for Arm's deference to proceedings before the Special Master, is baseless.

Arm has already agreed to produce this spreadsheet pending resolution of third-party motions for protective orders regarding this information, which are currently pending before the Special Master. The Court's orders make clear that those motions are the proper procedure for resolving this issue: Qualcomm successfully argued for a Protective Order that *prohibits* Arm from redacting third-party confidential information, and instead *requires* disputes to be resolved through third-parties filing motions for protective orders. Arm intends to comply with the Court's orders and procedures, and declines Qualcomm's demand that Arm disregard them.

Austin  Bay Area  Beijing  Boston  Brussels  Chicago  Dallas  Frankfurt  Hong Kong  Houston  London  Los Angeles  Miami  Munich  Paris  Philadelphia  Riyadh  Salt Lake City  Shanghai  Washington, D.C.

## KIRKLAND & ELLIS LLP

Catherine Nyarady
October 16, 2025
Page 2

**The Spreadsheet Is Subject To Pending Third-Party Confidentiality Disputes Before The Special Master, And Arm Agreed To Produce It Once Those Disputes Are Resolved.**

As we have informed you, Arm objects to production of the spreadsheet because it contains third-party confidential information subject to pending motions, and it has withheld the document on that basis. 7/24/25 Letter from J. Emerick to C. Nyarady at 2. We have explained that the spreadsheet contains confidential third-party information, including that of █████████████ and others. *Id.* Both █████████████████ have not just objected to disclosure of their confidential information to Qualcomm and its outside counsel, but also moved for protective orders. *See* D.I. 323 at 3 ("The Court should grant a protective order preventing disclosure of █████████ agreements with Arm…"); D.I. 329 ("The Court should grant a protective order preventing disclosure of ████████ unredacted agreements with ARM."). Indeed, █████████ specifically seeks to redact "the royalty rates that ████████ pays ARM and ████████ payment structure regarding the technology that ███████ licenses from ARM." D.I. 329 at 2. Those motions are fully briefed and were referred by the Court to the Special Master for consideration. D.I. 336.

Because the Special Master has not yet issued a ruling, Arm will continue to withhold the spreadsheet. When these issues are resolved by the Special Master and the Court, Arm will comply with the Court's directive (subject to any reconsideration and/or appeal). *See* 10/10/25 Meet and Confer Tr. at 14–16.

**The Court's Orders Prohibit Arm From Redacting Third-Party Confidential Information, Including Pending Resolution Of The Third-Party Confidentiality Disputes.**

The Protective Order and this Court's order, D.I. 74, prohibit Arm from redacting third-party confidential information. In March, the parties briefed competing Protective Order proposals for the treatment of third-party confidential information. In its briefing, Arm argued that "the Parties should be permitted to redact third-party confidential information in documents newly produced in this action." D.I. 68. Qualcomm opposed redactions, arguing that "Arm should not be permitted to redact third-party information contained in responsive documents," that "[a] third party wishing to protect confidential information has the burden of establishing good cause for doing so under Rule 26," and that "[a] third party wanting its information redacted must show why the requested redactions are appropriate." D.I. 70 at 1–2.

The Court's ruling "reject[ed] Arm's proposals which would permit a producing party to redact information that is subject to a confidentiality agreement with a third party" and further stated that "neither the case authority cited by Arm nor the record in related Civil Action No. 22-1146-MN supports Arm's position that a provision permitting redactions of third-party confidential information should be included in the protective order and the ESI order." D.I. 74. The Court ordered that "a third party seeking further protections for its highly confidential information may

**A1613**

## KIRKLAND & ELLIS LLP

Catherine Nyarady
October 16, 2025
Page 3

follow the well-established procedure of moving for a protective order, which allows the court to balance the relevance of the information against the risk of inadvertent disclosure." *Id.*

Consistent with the Court's instructions, Arm will continue to withhold the spreadsheet pending resolution of ███████████████ motions. During the meet and confer, we asked for Qualcomm's reasoning as to why Arm should produce a redacted spreadsheet despite the Court's directive to the contrary. The sole explanation you provide was "it's because summary judgment is due in a couple of weeks." *See* 10/10/25 Meet and Confer Tr. at 9. The Protective Order does not contain any exception permitting the parties to produce redacted versions of disputed documents, regardless of whether there are upcoming summary judgment deadlines.

**If Qualcomm's Request Was Permitted By The Court's Orders (It Is Not), Then It Is Untimely.**

Moreover, Qualcomm's request that Arm produce a redacted version of the spreadsheet is untimely. Qualcomm has been aware of the spreadsheet since the fact discovery period, yet waited months to seek production of a redacted version. Indeed, Qualcomm's October 6 email cites to Mr. Bhatnagar's July 10 deposition as well as correspondence on this issue from July. Qualcomm also questioned Karthik Shivashankar in June about whether a spreadsheet exists that reflects Arm's ██████████████████████████. *See, e.g.*, K. Shivashankar Dep. at 58, 83.

We have repeatedly informed you throughout discovery that Arm was withholding the spreadsheet on the grounds set forth here, including at Mr. Bhatnagar's deposition. *See* Bhatnagar Dep. at 39 ("██████ has objected to revealing their confidential information … we understand they're going to file something imminently. And so we can't reveal certain information based on that dispute."); *see also* 7/24/25 Letter from J. Emerick to C. Nyarady at 2 ("Arm will continue to withhold documents that include confidential information for ██████████, and the other third parties pending resolution of their Protective Order disputes, including Arm's agreements with both companies and the spreadsheet referenced during Mr. Bhatnagar's deposition.").

Accordingly, even if Qualcomm's request were consistent with the Court's orders (it is not), Qualcomm failed to timely raise the dispute or diligently pursue production of a redacted version and should have sought production of a redacted version months ago, including in accordance with the Court's deadlines for submitting disputes to the Special Master.

\*       \*       \*

Arm will comply with the Court's orders and procedures for the resolution of third-party confidentiality disputes, and declines Qualcomm's demand that Arm disregard them.

A1614

## KIRKLAND & ELLIS LLP

Catherine Nyarady
October 16, 2025
Page 4

Sincerely,

*/s/ Peter Evangelatos*

Peter Evangelatos

## KIRKLAND & ELLIS LLP

**A1615**

# Exhibit 9

**From:** Jenifer Hartley
**To:** #KE-ARM-Qualcomm; MoFo_Arm_QCOM; ycst_arm_qualcomm
**Cc:** Qualcommv Arm; GRP-QCvARM; jying@morrisnichols.com
**Subject:** Qualcomm v. Arm - Production of Spreadsheet
**Date:** Monday, October 6, 2025 7:18:19 PM
**Attachments:** Outlook-ppzpufzy.png

Counsel,

We write regarding the ▮▮▮▮▮▮ that Akshay Bhatnagar testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which Qualcomm has repeatedly requested that Arm produce. *See, e.g.,* 2025.07.10 Bhatnagar Tr. 44:17-45:24; 2025.07.11 Ltr. from C. Nyarady to J. Emerick; 2025.07.16 Ltr. from C. Nyarady to J. Emerick at 2.

Arm has represented that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.,* 2025.07.24 Ltr. from J. Emerick to C. Nyarady at 2; 2025.07.28 Meet and Confer Tr. 38:4-17; 2025.08.14 Special Master Hearing Tr. 245:12-246:8. Arm has withheld this document in its entirety, notwithstanding that it indisputably contains information not subject to any pending motion for a protective order (e.g., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

Given that the third-party motions remain pending less than three weeks before the parties' dispositive motions are due and that there is no need for Arm to withhold this document in its entirety to protect third-party confidentiality concerns, please produce a copy of this ▮▮▮▮▮▮ with narrow redactions for the confidential information of any third party that has a motion for a protective order pending. Of course, Qualcomm expects that Arm will produce an updated copy of this ▮▮▮▮▮▮ with redactions removed in accordance with the Special Master's order once the pending motions are resolved.

Please confirm by the close of business on October 7 that Arm will produce a redacted copy of this document this week or provide your availability to meet and confer on October 7 or 8.

Best,
Jen

**Jen Hartley | Associate**
**Dunn Isaacson Rhee LLP**
jhartley@dirllp.com
(202) 240-2922  (direct) | ▮▮▮▮▮▮▮▮
401 9th Street NW, Washington, DC 20004



Website | LinkedIn
*Admitted in New York only. Practice is supervised by D.C. Bar members.*

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance, or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

# Exhibit 10

**Page 1**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

------------------------------------x

QUALCOMM INCORPORATED, a Delaware

Corporation, QUALCOMM TECHNOLOGIES,

INC., a Delaware corporation,

                 Plaintiffs,

       - against -

ARM HOLDINGS PLC, f/k/a, ARM LTD.

A U.K. corporation,

                Defendants.

------------------------------------x

             Zoom videoconference

             October 10, 2025

             11:05 a.m.

          MEET & CONFER

Transcribed by Dawn Matera, a Certified

Shorthand Reporter and Notary Public for

the State of New York.

          *     *    *

**Page 14**

Meet and Confer

redactions.

It sounds like -- and this is very helpful for our briefing -- it sounds like --

MR. EMERICK: I don't know, because you guys asked for a protective order that says there shall not be these redactions by a party. And so I don't know -- I don't know what the interplay is going to look like with the Special Master's order and Judge Noreika's protective order on that. That is all I am saying. I just don't know what the outcome of that is going to look like.

MS. NYARADY: But you're envisioning a universe in which there is an outcome where you don't produce the spreadsheet in any form, it sounds like.

MR. EMERICK: I don't know.

MR. EVANGELATOS: Catherine you're saying that. I don't think we've taken a position either way.

I think we are saying to you very clearly, and thankfully there is a

**Page 15**

Meet and Confer

court reporter, that we don't know what's going to happen and we will address it when there is a ruling from the Special Master. We have not said anything about not producing the document at all. Those are your words.

MS. NYARADY: Right. And I am asking if you would take a position on it. I guess you're unable or unwilling to. And that's fine.

MR. EMERICK: Our position is we're going to comply with the Special Master's order and Judge Noreika's protective order.

MS. NYARADY: So if the Special Master says produce it but redact the third-party confidential information, what are you going to do, because those two comments you just made, Jay, seem to be in conflict.

MR. EMERICK: So, Catherine, we are going to comply with the orders and I say the Special Master's order, but that's of course subject to review, so

**Page 16**

Meet and Confer

just for clarification of that point on the record. We are not precommitting in case there is a review that goes on with respect to that.

But we're not getting into what the scenarios look like depending on if the Special Master's order has this particular language and what happens. The point is we don't know what is going to happen.

MS. NYARADY: Let me ask you one other question. Does Arm object to producing the spreadsheet other than with respect to third-party objections? Put it another way, but for the third-party objections, would Arm have produced the spreadsheet?

MR. EMERICK: So we'll take back your request on this. I understand you're seeking the adverse inference and/ or plan to seek an adverse inference on it. So we will take this back to the team and the client and we can move on to the next issue.

**Page 17**

Meet and Confer

MR. EVANGELATOS: And then I'll just note in there, as well, Catherine, I think we objected, at least in part, to if there is privileged information in the document. I think we said that to you before, that we have objected on both privilege and third-party grounds, and so, I'll just note that as well.

MS. NYARADY: Okay. And just to be clear, so other than privilege, though, do you have an objection to producing the spreadsheet but for the third-party objection? And I ask because I had not understood there to be an objection. I had understood that what was holding up the production of the spreadsheet is the third-party objections, putting aside, Peter, whether you intend to redact anything, you know, on privileged grounds.

MR. EVANGELATOS: Yeah, so I think that's right. So we've told you this, I think in letters, I think we told you -- I remember saying it myself on the

5 (Pages 14 - 17)

Veritext Legal Solutions

212-267-6868                 www.veritext.com                 516-608-2400

**A1621**

Page 18

Meet and Confer

record during a deposition at some point. We intend to produce the document. I mean, we want to rely on it just as much as you want the document as well. And I think we said that in our, in our opposition to ██████████, that the documents in the ██████ information is important, so I don't think there is any dispute on that piece.

MS. NYARADY: Okay. Jen Ying, anything else on your end?

MS. YING: No, I think we understand that -- please correct me if I am wrong if I didn't quite understand what you just said, Peter, which is that you guys, but for the third-party objections, would produce the spreadsheet subject to any privileged claims that you guys might have; is that correct?

MR. EVANGELATOS: Yeah, I think that's right. We've said that before, you know, we want to produce the document that these third-party issues are holding us up, subject to the privileged

Page 19

Meet and Confer

redaction.

MS. YING: Okay. And would your privilege claim as to the document as a whole or is it as to portions of document?

MR. EVANGELATOS: I will have to go back and check on the specifics of that, it's been some time since I looked at that specific question. But we can take it back and look at it.

But, I mean, clearly if we're saying that the privilege -- we are objecting on privilege grounds, but we were going to produce the document, so I don't think it's for the entirety.

MS. YING: Okay, thank you.

MS. NYARADY: I think if I have this right, I think we're leaving this that you at least are on notice of our plans and you're going to take that back, and I assume we'll get some sort of a final answer on whether we can move forward with a production of any kind; is that fair?

Page 20

Meet and Confer

MR. EMERICK: Yeah, that's right.

MR. EVANGELATOS: Yeah, that's right. And obviously we disagree that any adverse inference is appropriate.

MS. NYARADY: I am shocked to hear that, Peter.

MR. EMERICK: Catherine, you weren't willing to trade on the adverse inference on your side?

MS. NYARADY: All right. I think there -- was there a second issue, I guess, on those other documents. I don't know who's going to speak to that on our side.

MR. BASNER: This is Adam from Paul Weiss. I can just ask Peter, I think you said you were going to follow up by e-mail with us yesterday. So is that something that we can expect to see today?

MR. EVANGELATOS: We are looking into it. I don't know I'll have an answer for you today.

Page 21

Meet and Confer

MR. BASNER: Okay. And same question, we understand that you've heard from ██████, and just wanted to see what the timeline would be on producing ████████ agreement?

MR. EVANGELATOS: I will have to check with the team on that. I know you guys have been handling with them for some time. I would have to check on the latest on that. And, you know, if there has been an agreement and redactions have been agreed to we will get that out promptly. I am just not sure off the top of my head.

MR. BASNER: Okay, thanks.

MR. EVANGELATOS: I think that's it, right, on the exchange? So if there is anything else, you know, let us know, but if not, I think we're done.

MS. NYARADY: Amazing. Have a great weekend everyone.

MR. EMERICK: Thanks everyone.

(Time noted: 11:20 a.m.)

6 (Pages 18 - 21)

# Exhibit 11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 24-490 (MN) |
| v. | ) ) ) | ██████████████████████ |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI REGARDING SUBSEQUENT EVENTS RELATING TO THEIR MOTION TO COMPEL PRODUCTION OF THIRD-PARTY ARM LICENSES AND RELATED AGREEMENTS**

OF COUNSEL:

Catherine Nyarady
Jacob A. Braly
Jacob Apkon
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Adam Basner
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007
(202) 240-2900

October 17, 2025

**A1624**

Dear Special Master Rychlicki:

Pursuant to D. Del. LR 7.1.2, Plaintiffs write to advise Your Honor of newly-learned facts and subsequent events that have occurred since the August hearings on the parties' motions to compel and Qualcomm's September 15 letter that relate to Qualcomm's pending motion to compel production of third-party Arm licenses and related agreements. D.I. 359; 8/1/2025 Qualcomm Ltr. at 1–2.

As Your Honor is aware, Arm has repeatedly represented that it has "agreed to produce agreements with third parties for ███████████████ in effect at the time" of ████████ ████████████████████. 9/19/2025 Arm Ltr. to Special Master Rychlicki at 2; 8/7/2025 Arm Opp. to Qualcomm's Mot. to Compel at 1. But, as detailed in Qualcomm's September 15 letter, Arm produced only a fraction of those agreements during fact discovery, or even ahead of the hearings Your Honor held in August. Specifically, Arm produced ██ third parties' agreements in September and October,[1] as compared to █ agreements produced by August.[2]

As mentioned in Qualcomm's August 1 letter, even those few agreements produced as of August were incomplete, as they were missing attachments that form part of the agreements. 8/1/2025 Qualcomm Ltr. at 1; D.I. 359 (moving to compel production of documents pursuant to, among others, RFP No. 123, which sought "All agreements licensing ███████████ codenamed ██████████████, including TLAs and corresponding Annexes"). This problem of Arm producing incomplete agreements has only been exacerbated in Arm's later productions, with Arm continuing to omit at least the following documents that are part of the agreements Arm has with third parties:

- Annexes that the produced documents identify as containing pricing information, e.g., Ex. 1 at -047, ████████████████████████████████ ████;



_____

[1] These are the agreements for ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████. As Your Honor is aware, additional third parties' agreements have not yet been produced pending the resolution of their motions for protective orders.

[2] These were the agreements for ████████████████████████ ██████.

[3] Arm licenses packages of its IP to third parties under its Arm Total Access agreements ("ATAs"), whereas TLAs cover a more tailored set of IP that the relevant third party has specifically sought to license from Arm.

1

- Contract amendments, *e.g.*, Ex. 3 ████████████████████████████ *See also* Ex. 4 at 5–6 (correspondence between counsel including list of apparently omitted documents).

Given Arm's purported recognition of its need to produce third-party agreements for ██████████████████ and the direct relevance of these missing contract components to the analyses of Qualcomm's damages expert Dr. Patrick Kennedy, Qualcomm reached out to Arm on September 24 with a specific list of omitted parts of third-party agreements referenced in the documents Arm had produced. Ex. 4 at 5–6. Qualcomm asked that Arm produce these missing contract components or identify by Bates number where Arm believed it had already produced them. *Id.* at 5. Arm did not respond for more than two weeks. *Id.* at 3–4. After repeated follow up, Arm represented on October 9 that it was "investigating Qualcomm's request for these additional documents." *Id.* at 3. After additional follow up, Arm responded that it would not provide these parts of third-party agreements it has omitted because it believes "Qualcomm is seeking to relitigate pending a ruling" on its motion to compel. *Id.* at 2. Arm also faulted Qualcomm for not "timely rais[ing] the issue," *id.* at 3, notwithstanding that Arm produced the substantial majority of third-party agreements after the parties briefed their motions to compel and after Your Honor heard those motions.

Aside from repeating its opposition to producing the annexes for ████████████ ████ on the grounds that they purportedly do not relate to ██████████████ , Arm does not claim that these contract components are not relevant or discoverable. Nor could it. Under the California law that governs the breach claims in this case, "[t]he whole of a contract is to be taken together." Cal. Civ. Code § 1641. And some of the contract components that Arm has omitted are █████████████████████████████████████████████████████████



██████████████████████████████████████████ Without production of these documents, Qualcomm has no way to know if the terms it is reading in the produced ATAs even govern third parties' licenses for ██████ ████████████ . Qualcomm cannot fully evaluate Arm's claimed compliance with the parties' TLA term requiring ████████████████████████████████████████████ ████████████ if Arm will not produce the complete agreements that constitute those prior deals.[4]

Additionally, Arm has obstructed Qualcomm's efforts to mitigate the effects of Arm's failure to notify third parties of the need to produce their agreements before the end of fact discovery by refusing to produce a redacted version of a third-party agreement that Qualcomm and the third-party, ████████ , have agreed should be produced. As noted in Qualcomm's September 15 letter to Your Honor, Qualcomm has been engaging in meet and confers with late-notified licensee ████████ in an effort to reach an agreement regarding redactions without needing to burden Your Honor with yet another protective order motion. Qualcomm and ████████ reached

---

[4] In the continued investigation conducted in the weeks waiting for Arm to respond on this issue, Qualcomm was able to identify a single produced ██████████████████ document, appended as an exhibit to the ████████████ ATA. Ex. 5 at -842–942. This document confirms the relevance of these ████████████████ as it, among other information, ████████████████ ████████████████████████████████████████████████████████ .

2

an agreement whereby ▮▮▮▮▮ would allow Arm to produce redacted versions of its agreements now, along with a redaction log, subject to those agreements later being unredacted in whole or in part depending on how Your Honor resolves the pending third-party protective order motions.

On October 9, ▮▮▮▮▮'s counsel provided Arm with redacted versions of its agreements and gave Arm permission to produce them to Qualcomm. On October 10, counsel for Arm stated that he was not up to date on the status of Qualcomm's negotiations with ▮▮▮▮▮ but that "if there has been an agreement and redactions have been agreed to[,] we will get that out promptly." Ex. 6 at 21:2–15. On October 14, however, Arm reversed course, refusing to produce the redacted versions of ▮▮▮▮▮ agreements, claiming that it was not appropriate to do so unless ▮▮▮▮▮ filed a motion for a protective order or the Court resolved the pending dispute over the scope of Qualcomm's TLA-related claims. Ex. 7.

Arm's position—itself a change from its promise to produce the agreements "promptly" a few days earlier—is improper and would require a tremendous waste of resources by ▮▮▮▮▮, Qualcomm, and Your Honor. Arm claims that redactions are not permitted under the protective order in light of the dispute the parties litigated in March before Judge Fallon. *Id.* at 3–4. But that dispute addressed a specific provision that Arm was attempting to insert into the protective order and ESI order that would have allowed the "producing party" to redact confidential information "that is subject to a confidentiality agreement with a Third Party for which a Third Party has requested redaction." D.I. 68, Ex. D ¶ 52. *See also id.,* Ex. E ¶ 2(j). Qualcomm objected that Arm should not be permitted to unilaterally redact third-party information in the absence of the third party moving for, and the Court granting, a protective order. D.I. 70. Qualcomm also specifically noted that that the ordinary process of the non-producing party negotiating with the third party would remain available. D.I. 70 at 4 ("The usual method for protecting information—party negotiation followed by a prompt protective order motion by the third party to resolve any disputes—is the appropriate procedure."). Thus, nothing about the parties' March dispute displaces the commonsense practice of producing redacted versions of documents upon agreement between a third party and the party seeking the documents. Arm's refusal to produce ▮▮▮▮▮' agreements is improper, but consistent with Arm's other efforts to avoid compliance with its discovery obligations.

Qualcomm requests that Arm be required to abide by its commitment to produce its agreements with third parties for ▮▮▮▮▮ (subject to Your Honor's resolution of the parties' scope dispute). Despite its repeated representations to Your Honor that it has made this production, *e.g.*, 8/14/2025 Tr. 60:16-22; 8/22/2025 Tr. 277:18-278:13, 278:19-23, 279:17-18; 9/19/2025 Arm Ltr. to Special Master Rychlicki at 2 ("Arm's additional productions moot Qualcomm's motions to compel, which should be denied."), Arm's production remains incomplete, and Arm refuses to remedy its inadequacies absent a Court order. Qualcomm's motion to compel production of third-party Arm licenses and related agreements should be granted.

3

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 1637

Encls.

4

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
Delaware corporation,

      Plaintiffs,

      v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a
U.K. corporation,

      Defendant.

C.A. No. 24-490-MN



## DEFENDANT ARM HOLDINGS PLC'S
## RESPONSE TO QUALCOMM'S OCTOBER 17, 2025 LETTERS

Dated: November 7, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A1629**

Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

Dear Special Master Rychlicki:

We write in response to Qualcomm's October 17, 2025 letters.[1] Qualcomm seeks to relitigate disputes that were previously resolved by the Court or that are already pending before Your Honor, and to improperly inject new requests that it should have raised months ago. There are no "newly-learned facts," and the only "subsequent events" are Qualcomm's attempts to relitigate old disputes and to raise new and untimely ones. Qualcomm's requests should be denied.

## 1. The Court Already Resolved The Parties' Dispute About Whether The Parties May Produce Documents With Third-Party Confidentiality Redactions (They May Not).

Qualcomm demands that Arm redact third party information from certain documents and produce those documents to Qualcomm. Arm *wants* to produce the unredacted versions of those documents, which include a ███████████████████████████ ████████████████████████ at the heart of Qualcomm's TLA breach claims. Upon an order from the Court or the Special Master, Arm is ready and willing to provide the documents for *in camera* review so the Special Master can see their importance. But the parties already brought the dispute over what the parties are allowed to redact to the Court in March, and at Qualcomm's urging, the Court expressly prohibited the parties from producing documents with third-party confidentiality redactions and ordered that third parties must first seek relief from the Court. Ex. 8 (D.I. 74), Ex. 9 (D.I. 84); Ex. 1 (D.I. 68); Ex. 2 (D.I. 70).

In March, the parties negotiated a protective order, but could not reach agreement regarding whether they should be allowed to redact third-party confidential information from documents they produce, and submitted their dispute to the Court. Arm argued that "the parties should be permitted to redact third-party confidential information where the third party has requested such redactions." Ex. 1 (D.I. 68) at 1. Qualcomm opposed, arguing that "Arm should not be permitted to redact third-party information contained in responsive documents," that "[a] third party wishing to protect confidential information has the burden of establishing good cause for doing so under Rule 26," and "must show why the requested redactions are appropriate," and that there must be an "order from the Court authorizing those specific redactions." Ex. 2 (D.I. 70) at 1-2.

The Court agreed with Qualcomm. The Court's order "reject[ed] Arm's proposals which would permit a producing party to redact information that is subject to a confidentiality agreement with a third party." Ex. 8 (D.I. 74). The Court further stated that "a third party seeking further protections for its highly confidential information may follow the well-established procedure of moving for a protective order." *Id.* The Court then entered a Protective Order stating that for documents containing third-party confidential information, if a third party "timely seeks a protective order, the Third Party's confidential information responsive to the discovery request shall not be produced before a determination by the Court." Ex. 9 (D.I. 84) at 26.

Qualcomm's request to relitigate these orders should be denied. Qualcomm does not address the text of the orders themselves, and instead resorts to criticizing them as "illogical" and defying "commonsense." QC Letter re Spreadsheet Production at 1; QC Letter re 3P

---

[1]  Qualcomm submitted two letters on October 17, 2025.  Given the overlapping issues in Qualcomm's letters, Arm addresses them together in a single response.

1

Agreements Production at 3. Those criticisms are not a valid basis to demand that Arm disregard them or to relitigate them. Qualcomm further argues that the Court's orders should be limited to "unilateral" redactions, but has not sought to modify the Court's orders, which are broader and do not permit "a producing party to redact information that is subject to a confidentiality agreement with a third party." Ex. 8 (D.I. 74). Qualcomm's request further ignores that third parties must still demonstrate "good cause" to protect their highly confidential information. *Id.*

Qualcomm demands that Arm nonetheless violate the Court's orders and redact third-party confidential information from a ███████████████████████████████, and produce a redacted version of that ███████████. Arm has withheld the ███████ in accordance with the Protective Order because the ███████ contains confidential information subject to the pending protective order motions filed by ███████████████. While those motions remain pending, the Protective Order does not permit Arm to redact third-party confidential information from the spreadsheet and produce it. But Arm, to reiterate, believes the ███████ should be produced without redactions, that the importance of the ███████ outweighs any confidentiality concerns, and that the Protective Order provides the third parties with adequate protection.

Qualcomm's request for a redacted ███████ also fails because Qualcomm did not properly raise this dispute with Your Honor. Qualcomm demanded production of a redacted version of the ███████ for the first time on October 6, but never before moved to compel its production. Qualcomm attempts to shoehorn its request into its August 1 letter motion, but in that request, Qualcomm moved to compel documents Arm purportedly withheld as privileged, not redacted versions of documents withheld on the basis of pending third-party confidentiality disputes. QC Spreadsheet Letter Ex. 1 at 4–5.

As Arm has repeatedly told Qualcomm, Arm is withholding the ███████ due to the pending third-party disputes. *See* Ex. 3 (Bhatnagar Dep.) at 39 ("█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████."); *see also* QC Spreadsheet Letter Ex. 5 (7/24/25 Letter from J. Emerick to C. Nyarady) at 2 (███████████████████████████████████████████████████████████████████████████████████████████).

Qualcomm's request for a redacted ███████ should also be denied as untimely. Qualcomm has been aware of the ███████ since at least June 2025 through depositions of Arm witnesses. *See, e.g.*, Ex. 4 (K. Shivashankar Dep.) at 58, 83. Yet Qualcomm waited four months and candidly admits that it only "now seeks a redacted version" of the ███████ for its summary judgment briefing. QC Letter re Spreadsheet Production at 1. There is no exception in the Protective Order allowing Arm to redact third-party confidential information due to ongoing briefing. Because both ███████████████ have filed protective order motions that remain pending, the proper course is for the parties to await resolution of those motions, which will moot Qualcomm's duplicative dispute. Given the importance of the ███████ to the issues in this case, Arm respectfully submits that prompt resolution of the issues properly before the Special Master should take precedence, rather than the new and untimely disputes raised by Qualcomm.

2

A1632

For the ██████ agreements, Qualcomm's assertion that Arm is improperly withholding redacted agreements from third-party ██████ is simply wrong. Arm is willing to produce the documents, but ██████ must first file a motion regarding its proposed redactions. Arm does not oppose ██████ proposed redactions and would not oppose such a motion. Qualcomm argues that such a motion would be "a tremendous waste of resources," but Qualcomm is the one seeking to waste resources with serial motion practice on the issue because it is reserving the right to challenge ██████ redactions "in whole or in part depending on how Your Honor resolves the pending third-party protective order motions." QC Letter re 3P Agreements Production at 3. Any redaction disputes with ██████ should be raised in a single motion before the Special Master, not through multiple, serial motions as Qualcomm contemplates. Further, Qualcomm's unwarranted complaints about efficiency are not a basis to disregard the Court's order that "a third party seeking further protections for its highly confidential information may follow the well-established procedure of moving for a protective order." Ex. 8 (D.I. 74). Finally, Qualcomm's argument that Arm "reversed course" on producing the ██████ is based on a misreading of a meet-and-confer transcript in which Arm's counsel qualified his statement by adding that he was "just not sure off the top of [his] head" and "would have to check with the team on that." QC Spreadsheet Letter Ex. 10, 21:2-15.

## 2. Qualcomm's TLA Requests Should Be Denied.

Qualcomm seeks to relitigate the parties' dispute regarding TLA annexes, which was fully briefed and heard by Your Honor, and injects untimely requests for additional categories of documents for the first time. Qualcomm's requests should be denied.

Qualcomm seeks to re-litigate its request for TLA annexes, which was fully briefed in August. As part of Qualcomm's August 1 letter, Qualcomm argued that Arm "omitted Annexes for several agreements that contain pricing information." QC Spreadsheet Letter Ex. 1 at 1. Qualcomm recycles its arguments seeking annexes, which should be rejected for the same reasons Arm stated in its August 7 letter, including because annexes that do not cover ██████ ██████ are not relevant. Ex. 5 (Arm 8/7/2025 Resp. Letter) at 1–2.

Qualcomm's new request for additional categories of documents—what it calls ██████ and "amendments"—should likewise be denied. Qualcomm demanded these documents for the first time on September 24, more than two months after the close of fact discovery, and its request should be denied on that basis alone. Qualcomm's letter again fails to explain why Arm should produce other documents containing sensitive commercial information that are irrelevant to this case. Tellingly, Qualcomm seeks generic "pricing information," information regarding "the contents of the IP package the licensee is purchasing," and "contract amendments." QC Letter re 3P Agreements Production at 1-2. Yet Qualcomm fails to explain how any of this information concerns ██████. Indeed, in the parties' correspondence on this issue, Qualcomm requested agreements from over 20 years ago merely because they were "referenced" in what was already produced. Ex. 6 (J. Hartley 9/24/25 Email).

Finally, Qualcomm faults Arm for producing additional TLAs after the hearing before Your Honor, but as Arm stated in its August 7 letter to Your Honor, Arm was investigating Qualcomm's request for agreements for additional licensees that purportedly had a license to ██████ Ex. 5 (Arm 8/7/2025 Resp. Letter) at 1. Subsequently, Arm discovered certain agreements had been omitted from its document production, promptly

3

provided notice to those third parties, and thereafter completed production of those additional agreements. *See* Ex. 7 (Arm 9/19/25 Letter to Special Master) at 1-3.

*   *   *

Qualcomm's October 17 letters should be rejected as improper attempts to inject untimely and new requests in the guise of "updates" and to otherwise relitigate issues already resolved by the Court or fully briefed and pending before Your Honor.

Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

Word Count: 1775

4

A1634

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,

      Plaintiffs,

      v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,

      Defendant.

C.A. No. 24-490-MN



## DECLARATION OF PETER EVANGELATOS IN SUPPORT OF DEFENDANT ARM HOLDINGS PLC'S RESPONSE TO QUALCOMM'S OCTOBER 17, 2025 LETTERS

Dated: November 7, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

A1635

reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

2

I, Peter Evangelatos, declare as follows:

I am an attorney with the law firm of Kirkland & Ellis LLP, counsel for Arm Holdings PLC ("Arm") in the above referenced action. I submit this declaration in support of Arm's Response to Qualcomm's October 17, 2025 Letters.

1. Attached as Exhibit 1 is a true and correct copy of the D.I. 68 letter from Arm to the Honorable Judge Fallon, dated March 13, 2025. ████████████

2. Attached as Exhibit 2 is a true and correct copy of the D.I. 70 letter from Qualcomm to the Honorable Judge Fallon, dated March 14, 2025. ███████████

3. Attached as Exhibit 3 is a true and correct excerpted copy of the deposition transcript of Akshay Bhatnagar, dated July 10, 2025. ██████████████████████

4. Attached as Exhibit 4 is a true and correct excerpted copy of the deposition transcript of Karthik Shivashankar, dated June 20, 2025. █████████████████████████
████

5. Attached as Exhibit 5 is a true and correct copy of Arm's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes, dated August 7, 2025. ████
████████

6. Attached as Exhibit 6 is a true and correct copy of an email from Jenifer Hartley, dated September 24, 2025. ██████████████████████

7. Attached as Exhibit 7 is a true and correct copy of Arm's Response to Qualcomm's September 15, 2025 Letter to Special Master Rychlicki, dated September 19, 2025. ███████
████

8. Attached as Exhibit 8 is a true and correct copy of D.I. 74, the Court's Oral Order, dated March 17, 2025.

3

9.      Attached as Exhibit 9 is a true and correct copy of D.I. 84, the Parties' Stipulated Protective Order, SO ORDERED by Judge Noreika on March 21, 2025.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 7th day of November 2025 at New York, N.Y.


                                        */s/Peter Evangelatos*
                                        Peter Evangelatos

4

# Exhibit 1

████████████████████████████

**YOUNG CONAWAY**

**WILMINGTON**
**RODNEY SQUARE**

**Anne Shea Gaza**
P 302.571.6727
agaza@ycst.com

**BY E-FILE AND HAND DELIVERY**

The Honorable Sherry R. Fallon                    March 13, 2025
United States District Court
for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:    *Qualcomm Inc., et al. v. Arm Holdings Plc.*, C.A. No. 24-490 (MN)

Dear Judge Fallon:

Arm seeks the inclusion of provisions in the Protective Order and the Electronically Stored Information ("ESI") Order that would permit the parties to redact third-party confidential information in documents newly-produced in response to discovery requests in this matter. (Ex. D, ¶ 52; Ex. E, ¶ 2(j).)

**The Parties should be permitted to redact third-party confidential information in documents newly produced in this action.** For documents newly produced in this action (as opposed to those already produced in *Arm Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146-MN ("*Arm v. Qualcomm*")), which are subject to an agreement by the parties permitting their cross-use in this case), the parties should be permitted to redact third-party confidential information where the third party has requested such redactions. Arm and Qualcomm have each served discovery requests in this action that may implicate the confidential and proprietary information of third parties, including third parties that may be competitors of Arm or Qualcomm. Disclosure of this third-party information, even under a protective order, presents a significant risk of competitive harm.

Courts recognize that disclosure of third-party confidential information poses a substantial risk of harm to those third parties, and thus have prevented disclosure of such information. *See Trellian Pty, Ltd. v. adMarketplace, Inc.*, C.A. No. 19-5939 (JPC)(SLC), 2021 WL 363965, at *4 (S.D.N.Y. Feb. 3, 2021) (permitting redactions for third-party information where the third party and receiving party are competitors); *Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*, No. 3-11-MC-036-L-BD, 2011 WL 1348401, at *4 (N.D. Tex. Apr. 8, 2011) ("If any of this information is revealed . . . it likely would damage [the company's] ability to compete in the marketplace. Moreover, as a non-party [the company] is unable to protect its interests should any of the confidential information be disclosed, even if done so pursuant to a protective order.").

The inclusion of a "Highly Confidential – Attorneys' Eyes Only" designation in the Protective Order is insufficient to address the risk of harm to third parties from disclosure. As the court recognized in *Arm v. Qualcomm*, a provision limiting disclosure to outside counsel is insufficient to prevent harm where the same outside counsel may be adverse to the third party in a future transaction. (*See* Ex. A (3/7/2024 Hr'g Tr.) at 54:7-15 ("I don't know who at Paul Weiss

**Young Conaway Stargatt & Taylor, LLP**
Rodney Square | 1000 North King Street | Wilmington, DE 19801
P   302.571.6600    F   302.571.1253    YoungConaway.com

**A1640**

might be allowed to see outside counsel's information, but might also be negotiating in the future.").) An outside counsel-only designation is also insufficient where the disclosure is to the outside counsel of a competitor of the third party, based on the risk of inadvertent disclosure or disclosure at trial. *See Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 530-531 (D. Del. 2002) (quashing subpoena to third party due in part to the potential harm from disclosure, including disclosure at trial); *Trellian Pty, Ltd.*, 2021 WL 363965, at *4 (redactions appropriate where third party and receiving party are competitors); *see also JJ Plank Co. v. Bowman*, C.A. No. 18-00798, 2018 WL 3545319, at *5 (W.D. La. July 23, 2018) ("[T]he mere presence of a protective order does not automatically sanitize an overbroad discovery request, and does not alleviate all legitimate concerns associated with producing trade secrets . . . this conclusion is especially important as to a non-party to a competitor, and even if material may be designated 'for counsel's eyes only.'"); *c.f. Arconic Corp. v. Novelis Inc.*, C.A. No. 17-1434, 2021 WL 4479484, at *5 n.2 (W.D. Pa. Sept. 30, 2021) ("Even though there is a robust protective order in place, the court is reluctant to order unnecessary disclosures of sensitive corporate information between these fierce industry competitors.").

Redactions for third-party confidential information in documents newly produced in this action are necessary because Qualcomm's discovery requests implicate confidential business and competitive information of third parties to which Arm has contractual confidentiality obligations. Qualcomm's document requests in this action include requests directed to Arm's confidential license agreements with Arm's business partners and customers, many of whom are competitors of Qualcomm. (*See* Ex. B (RFP Nos. 9, 27, 34).) Arm's license agreements contain highly sensitive and proprietary third-party information, such as individually negotiated royalty rates and non-public product information. (*Arm v. Qualcomm*, D.I. 247 at 6; D.I. 101 at 2.) Redactions for this confidential third-party information from any agreements newly-produced in this case are necessary to prevent competitive harm to such third parties from disclosure to Qualcomm—third parties who not only rely on Arm to protect their confidential information in this case as it did in the *Arm v. Qualcomm* action, but have previously brought motions asserting their confidentiality rights requiring the expenditure of resources by the Court and the parties.

**Arm's proposed Protective Order and ESI Order are consistent with the court's prior rulings in *Arm v. Qualcomm*.** Arm's proposal is consistent with the ESI Order that the parties agreed to, as well as the court's prior rulings, in *Arm v. Qualcomm*.

In *Arm v. Qualcomm*, the parties agreed to, and the court entered, an ESI Order permitting redactions for third-party confidential information. (*Arm v. Qualcomm*, D.I. 39 at ¶ 2(j).) That ESI Order permitted each party to make such redactions without requiring the burdensome process of having each affected third party file separate protective motions and appear in court. (*Id.*, D.I. 39 at ¶ 2(j).) Consistent with this ESI Order, Arm produced documents in *Arm v. Qualcomm* that redacted third-party confidential information. Qualcomm similarly produced documents with redactions in *Arm v. Qualcomm*. (*See, e.g.*, QCARM_2417752; QC_ARM3390322; QCARM_3319065; QCARM_3319006.) Arm's proposed Protective Order and ESI Order are consistent with the prior ESI Order in *Arm v. Qualcomm* and would allow the parties to redact third-party information from newly produced documents in response to discovery requests in this action, just as they did in the prior lawsuit.

Arm's proposed Protective Order and ESI Order are also consistent with the court's rulings on discovery disputes in the prior *Arm v. Qualcomm* lawsuit. In that case, Arm produced versions of its architecture license agreements ("ALAs") that contained redactions for highly sensitive and confidential third-party information, such as individually negotiated royalty rates and non-public product information. Qualcomm sought three times to remove Arm's redactions

2

**A1641**

for third-party information in these ALAs in the prior lawsuit. (*Arm v. Qualcomm*, D.I. 89 at 1 (Qualcomm arguing that "ARM should not be permitted to redact any third-party ALAs"); *see also* D.I. 219 (objecting to Judge Hatcher's order to prevent production of a third party's ALA with Arm); D.I. 233 at 3 (Qualcomm contending that "Arm's refusal to unredact or produce ALAs is improper.").) Third parties Apple and Ampere also filed multiple separate motions for protective orders to protect their highly confidential, competitively sensitive information. (*Id.*, D.I. 101, D.I. 147 (Apple); D.I. 93, D.I. 240 (Ampere).) The court denied each of Qualcomm's requests to unredact third-party confidential information, and granted Apple's and Ampere's original motions to maintain redactions of their information. (*Id.*, D.I. 111 (Judge Hatcher granting Apple and Ampere's separate motions); D.I. 252 (Judge Hatcher denying Qualcomm's motion to remove redactions to ALAs); Ex. A at 62:10-15 (Judge Noreika overruling QC's objections to order denying motion to remove redactions to ALAs).)

In denying Qualcomm's motions, the court recognized the substantial competitive and business harm that would result from disclosure of third-party information, even on a Highly Confidential – Attorneys' Eyes Only designation. (*See* Ex. A at 62:23-63:1 (third parties have "valid concerns on the confidentiality aspects"), 53:25-54:2 ("There may be other counsel who sees the expert report and maybe those people could be negotiating with the company.").)

The court's prior rulings confirm that the more efficient course is to permit the parties to redact highly-sensitive third-party confidential information in documents newly produced in response to discovery requests in this action. In contrast, under Qualcomm's proposal, each and every affected third party—for example, each and every third-party licensee—must file a motion for a protective order to prevent disclosure of their confidential information in documents produced in response to a request in this action. Such a requirement would waste the resources of this Court and the parties via inefficient and wasteful motion practice, particularly where substantially the same issues, such as individualized royalty rates, may be at issue in each motion. That approach would also impose significant burdens on Arm customers who are not parties to this litigation.

The involvement of third parties Apple and Ampere in motions practice in *Arm v. Qualcomm* further underscore the inefficiencies and burden that Qualcomm's proposal would impose on this Court and third parties. In response to Qualcomm's discovery motions in *Arm v. Qualcomm*, Apple and Ampere filed motions for protective orders and made repeated appearances at hearings to protect their confidential and proprietary information. (*Arm v. Qualcomm*, D.I. 102 (Apple request to join teleconference); D.I. 95 (Ampere request to present argument at teleconference regarding its motion for protective order); D.I. 285 (Apple request to attend Mar. 7, 2024 hearing); D.I. 291 (Ampere request to attend Mar. 7, 2024 hearing); D.I. 104 (granting Apple's request to appear at teleconference); D.I. 97 (granting Ampere's request to present argument at teleconference).) Apple also submitted a letter to the Court on the eve of trial regarding its concern about potential disclosure of its confidential and proprietary information. (*Id.*, D.I. 563.) Qualcomm's Protective Order and ESI Order proposals would inevitably require third parties to make appearances and file separate motions for protective orders in this action.

Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

cc: All counsel of record (by email)
Enclosures (Exhibits A-E)

3

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ARM LTD.,                           )
a U.K. corporation,                 )
                                    )
            Plaintiff,              )
                                    ) C.A. No. 22-1146(MN)
v.                                  )
                                    )
QUALCOMM, INC.,                     )
a Delaware corporation,             )
et al.,                             )
                                    )
            Defendants.             )


                    Thursday, March 7, 2024
                    2:13 p.m.
                    Oral Argument


                    844 King Street
                    Wilmington, Delaware


BEFORE:   THE HONORABLE MARYELLEN NOREIKA
          United States District Court Judge



APPEARANCES:


               YOUNG CONAWAY STARGATT & TAYLOR
               BY:  ANNE SHEA GAZA, ESQ.
               BY:  ROBERT M. VRANA, ESQ.

               -and-

               MORRISON FOERSTER, LLP
               BY:  KYLE W.K. MOONEY, ESQ.
               BY:  NICHOLAS R. FUNG, ESQ.
               BY:  DANIEL MACKNIDES, ESQ.

                    Counsel for the Plaintiff


**A1644**

MR. SORRELS:  Thank you, Your Honor.  Brad Sorrels of Wilson Sonsini on behalf of Ampere.  We're a much smaller company relative to some of these other ALAs that are at issue.  I will focus on the burden --

THE COURT:  Are you a partial, a partial production or are you like the 2023 Apple, not produced at all?

MR. SORRELS:  Very much in the partial camp, Your Honor.  That was the first point I was going to start with, which is we went back and forth extensively with redactions with both ARM and Qualcomm to limit the redactions to the point where we really tried to just redact numbers, names, dates, and so large amounts of the provisions themselves in the ARM agreement are unredacted so that they can be seen.

And what we really tried to do, and this was consistent with what Judge Hatcher ordered, we went through a process of meeting and conferring, we focused in on the provisions that there would be clear harm to my client, Ampere, if that information were disclosed.

I wanted to note, Your Honor, we have a slightly unique procedural posture where we had a pending motion for protective order which was deemed moot because Judge Hatcher denied the motion to compel the information and so to the extent Judge Hatcher's decision is undone, I think we have a

pending motion for protective order, but I only mention that to say in our motion for protective order we describe in detail as to each of the provisions where we had very targeted redactions, why that information is very sensitive to our client, and why disclosure would be harmful.

To answer Your Honor's one question about the attorneys' eyes only designation, the reason that's not satisfactory for us is our client potentially may negotiate future agreements with Qualcomm and Qualcomm's counsel. And so if Qualcomm's counsel has access to, for example, our royalty rates or specific terms written in our agreement, we will be at a disadvantage in those future depositions.

From our perspective, putting aside the relevancy arguments, we have made every effort to try to really focus in on what is important to our client to ensure that is not disclosed in a way that might harm us.

THE COURT: Okay. Thank you.

MR. BLUMENFELD: Your Honor, I don't know if you want to hear more. I have a few response points. Let's start with that last point just to eliminate it. I'm not going to be negotiating any agreements with Ampere or any of these other companies.

THE COURT: No, but I think part of the issue is if the information is put into an expert report, you're not the only person who is going to see an expert report. There

may be other counsel who sees the expert report and maybe those people could be negotiating with the company.

MR. BLUMENFELD:  If the information in the expert reports is outside counsel only, we'll get redacted versions that go to other people, but only outside counsel --

THE COURT:  But that doesn't help his point with outside counsel.  I don't know who at Paul Weiss might be allowed to see outside counsel's information, but might also be negotiating in the future, that's just his point.  And if it's on Paul Weiss's computer, I don't know.  I'm not saying -- that seems to me to be an issue where I take your point that you're not going to be negotiating, I can't say that anyone who might see it might not be the person who is doing it.

Let me ask you this before you get to your next two points which I will let you do.  But this is a trademark case, right?

MR. BLUMENFELD:  This is a breach of contract case.  There is a trademark claim, but this is a breach of contract.

THE COURT:  I see, it was a trademark case for federal jurisdiction and it's a contract case.

Okay.  So how is it going to work, we have a jury trial for these issues, right?

MR. BLUMENFELD:  They have demanded a jury trial.  And, you know, they made some comments the other day that made us wonder if that's what they intended to do, but yes, they have demanded a jury trial.

THE COURT:  So maybe after today they will really want a jury trial.  So if it's a jury trial, then the first issue would be, or the issue for the jury would be whatever the trademark issue is plus breach of contract and your counterclaim.  And then we would get to the issue that they would have to bring in front of me if they prevail of an injunction.  Right?

MR. BLUMENFELD:  Injunction specific performance, whatever --

THE COURT:  Right.  And all of this goes to the injunction part?

MR. BLUMENFELD:  I'm not sure whether it does or doesn't.  And the reason I'm saying that is we went back and forth earlier, months ago with their counsel about if you can't prove irreparable harm, are you also going to put in a damages case.  So far we haven't seen that.  Their expert reports have been impossible to calculate damages, and so we get irreparable harm.  But we are not done with expert reports either and they have just identified a new expert. So I don't know what is going to happen, whether they are going to make a damages claim.  I suspect that we're going

Your Honor.

THE COURT:  Did you ever tell me that?  Is that in the scheduling order?

MR. BLUMENFELD:  No, they demanded a jury.

THE COURT:  Because I have a jury trial.  When did you tell me it was going to be a bench trial?

MR. MOONEY:  I have to look back, Your Honor.  I don't have that at my fingertips, I'm sorry.

THE COURT:  Do you think you ever did?

MR. MOONEY:  I'm taking a look, Your Honor.  I don't know the answer to that.  It could have been a delay in the products being released has caused --

THE COURT:  So the answer is no.  But you're going -- are you asking for a jury?

MR. BLUMENFELD:  I expect that we are going to ask for a jury on our counterclaims.  We always thought until about two days ago that this was going to be a jury trial and then ARM's lawyers said something before Judge Hatcher the other day suggesting that they didn't see it that way.

MR. MOONEY:  Our understanding, Your Honor, that the only claim in the case right now --

THE COURT:  I'm just looking at the scheduling order that you guys proposed to me which talks about a five-day jury trial.  So if you changed your mind, it would

have been nice to have a little bit of a notice, especially when you know we're talking about trial dates.

MR. BLUMENFELD:  And I'm not sure, Your Honor, that they're permitted to withdraw a jury demand without our consent at this point.  It's not something we've ever discussed.

MR. MOONEY:  I understand that the bench trial did come up before Judge Hatcher, Your Honor.  I don't know how long ago that was.

THE COURT:  That's really not relevant to me. So I am going to overrule the objections for right now.  I think we need to understand -- assuming this were to go to a jury trial, I think I could address -- I could allow you to raise this again once I understand the arguments being made as to irreparable harm.

If it's going to be a bench trial, then I need to think about it a little bit more.  And it may be that we just phase the bench trial so that I can understand what the arguments are.  Because my problem is right now I can see relevance, but I can't make a determination that the relevance is enough to overcome some valid -- I think Apple's 2023 agreement is not credible because saying you can't produce it at all is just not even trying.  But I can't say that they don't have valid concerns on the confidentiality aspects.  And I'm sorry, I forgot the other

company.

MR. SORRELS:  Ampere, Your Honor.

THE COURT:  Ampere, I think those concerns were -- at least they were specific concerns.

So I am not ready to argue -- I'm not ready to rule that the relevance, that Judge Hatcher got it clearly wrong when she weighed the relevance and the harm.

But I am also not clear that there is going to be arguments made where it would be unfair for the defendant to be able to defend itself.

So I am going to make that ruling without prejudice.  If it turns out that you make a specific showing of what you would need to respond to something or to make an argument, you can come back and just remind us.  And that it should not go to Judge Hatcher, that it should come to me.

MR. BLUMENFELD:  Thank you, Your Honor.

THE COURT:  Okay.  And you guys need to talk about the trial and can you guys do that and in the next two weeks get back to us on your positions as to jury, bench and whether they can withdraw it at this point?

Okay.  So now we have to talk about the trial schedule.  I don't remember when the trial was scheduled.  September.

MS. DUNN:  I believe September 23rd.

THE COURT:  There it is.  September 23rd.  Okay.

So when were you looking to have it moved to?

MS. DUNN:  Your Honor, the date that we proposed is a date that we believe was open on Your Honor's calendar, December 9th.  We did call the Court some time ago for that date, so we don't know if your calendar is still available.

THE COURT:  It's not.

MS. DUNN:  We certainly could do it any time after that.

THE COURT:  I have December 2nd, the week of December 2nd.

MS. DUNN:  That date I believe would work for us.  I don't know about my friends on the other side.

MR. MOONEY:  Your Honor, we do have availability the week of December 2nd if Your Honor decides to delay the trial.  Our position is that counsel has not shown good cause to extend the schedule or change the trial date, particularly in light of the ruling coming out Monday, and that the trial date should remain in September.

THE COURT:  I haven't decided if I am going to change it.

Actually I have a naturalization ceremony that week, so what about the week of the 16th of December?

MS. DUNN:  That works for Qualcomm.

MR. MOONEY:  Did Your Honor have availability before that date if Your Honor decides to delay the trial?

**A1652**

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 24-490 (MN) |
| v. | ) ) | ███████████ |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) | |
| Defendant. | ) | |

## QUALCOMM'S FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1–52)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (collectively, "Plaintiffs" or "Qualcomm") request that Defendant Arm Holdings PLC ("Arm") serve its written responses to these requests for production and produce copies of the Documents and tangible things requested below at the law offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 within thirty (30) days of service.

## INSTRUCTIONS

1.      Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests for Documents and things are continuing in nature.  If, after producing the requested Documents and things, Arm obtains or becomes aware of any further responsive Document or thing, Arm must produce to Qualcomm such additional Document or thing.

2.      If Arm withholds any Document or thing based upon a claim of privilege or any other claim of immunity from discovery, Arm shall state the specific basis for withholding the Document or thing and describe the facts and circumstances giving rise to such withholding in

A1654

**REQUEST FOR PRODUCTION NO. 4:**

All Documents and Communications concerning ████ to the ███████ or bug fixes, updates, corrections, or any other technical improvement or information licensed under the Qualcomm ALA that was, after June 1, 2022, delivered to any other Arm licensee but not to Qualcomm.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications since June 1, 2022 related to or concerning the Qualcomm's ACK or Qualcomm's OOB tests, and any patches thereto.

**REQUEST FOR PRODUCTION NO. 6:**

All versions of the ACK released after June 1, 2022, and any patches thereto.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications concerning Arm's position that ██████████, ███████, of the Qualcomm ALA governs delivery of ACK deliverables listed in ██████ of any of the Qualcomm ALA Annexes.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Communications concerning or interpreting ████████████ ██ of the Qualcomm ALA.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents and Communications concerning or interpreting the definition of ███████, and ████████████████████ ████████████ in any Third Party ALAs.

7

**<u>REQUEST FOR PRODUCTION NO. 22</u>**:

All Documents and Communications related to or concerning Arm's discussions with Third Parties regarding Qualcomm's relationship with Arm.

**<u>REQUEST FOR PRODUCTION NO. 23</u>:**

All Documents and Communications related to or concerning the projected or forecasted impact to Arm's revenue or profits if the Qualcomm ALA is terminated.

**<u>REQUEST FOR PRODUCTION NO. 24</u>:**

All Documents and Communications containing any analysis or evaluation of the projected or forecasted impact to Arm's revenue or profits if the Qualcomm ALA is terminated.

**<u>REQUEST FOR PRODUCTION NO. 25</u>:**

All Documents and Communications related to or concerning Arm's potential termination of the Qualcomm ALA.

**<u>REQUEST FOR PRODUCTION NO. 26</u>:**

All Documents and Communications concerning deliverables included as █████ ██████ licensed under the Qualcomm ALA, including the ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████ , that was, after June 1, 2022, delivered to any other Arm licensee but not to Qualcomm.



**<u>REQUEST FOR PRODUCTION NO. 27</u>:**

All ALAs and Annexes with Third Parties (*i.e.,* parties other than Qualcomm).

10

**REQUEST FOR PRODUCTION NO. 32:**

All Documents and Communications related to or concerning the delivery of ACK patches to any ALA partner other than Qualcomm.

**REQUEST FOR PRODUCTION NO. 33:**

All Documents and Communications concerning OOB tests, including the development process for OOB tests, the timeline to configure the ACK through the use of OOB tests, and any manuals or presentations describing the use of OOB tests with the ACK.

**REQUEST FOR PRODUCTION NO. 34:**

All Documents and Communications concerning any negotiations that Arm had with TLA licensees (including Third Parties) for , including but not limited to price quotes, license fees, licensing term limits, or other language to include in TLA Annexes.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents and Communications related to or concerning Arm's October 22, 2024 letter to Qualcomm.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents and Communications related to or concerning Arm's sharing of the October 22, 2024 letter with Third Parties, including but not limited to Arm's decision to share the letter with Third Parties.

12

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

NOVARTIS AG, NOVARTIS PHARMACEUTICALS    : CIVIL ACTION
CORPORATION, MITSUBISHI TANABE PHARMA    :
CORPORATION, and MITSUI SUGAR CO., LTD., :
                                         :
              Plaintiffs,                :
v                                        :
                                         :
ACTAVIS, INC., and ACTAVIS ELIZABETH, LLC,:
                                         : NO. 14-1487-LPS
              Defendants.                :
------------------------------------------
NOVARTIS AG, NOVARTIS PHARMACEUTICALS    : CIVIL ACTION
CORPORATION, MITSUBISHI TANABE PHARMA    :
CORPORATION, and MITSUI SUGAR CO., LTD., :
                                         :
              Plaintiffs,                :
v                                        :
                                         :
EZRA VENTURES, LLC,                      :
                                         : NO. 15-150-LPS
              Defendant.                 :
------------------------------------------
NOVARTIS AG, NOVARTIS PHARMACEUTICALS    : CIVIL ACTION
CORPORATION, MITSUBISHI TANABE PHARMA    :
CORPORATION, and MITSUI SUGAR CO., LTD., :
                                         :
              Plaintiffs,                :
v                                        :
                                         :
HEC PHARM CO., LTD., and HEC PHARMA USA, :
INC.,                                    : NO. 15-151-LPS
              Defendants.                :
                           - - -

                    Wilmington, Delaware
                  Friday, March 11, 2016
                    *Telephone Conference*

                           - - -

BEFORE:          HONORABLE **LEONARD P STARK**, Chief Judge

                           - - -

(Captions continued on page 2)

**A1659**

on in Switzerland, what went on in the relationship between the exchange of information between the parties. What is going on here, Your Honor, that they have so many privilege documents that it accounts for a quarter of their privilege documents?

And as much as I do appreciate the plaintiffs' suggestion that the defendants go back to plaintiffs and give them specific kinds of things that we're concerned about, and maybe they can expand their log and give us some more information, that sort of thing, but, frankly, Your Honor, that reverses the burden as far as we're concerned. It puts the burden on the defendants to determine what really should be in the privilege log as opposed to the plaintiffs.

I mean this is their burden to establish privilege, and it is ultimately their responsibility to do it. It's not for us to go and tell them, oh, why don't you go back and give us some more information or break these categories down further.

We think, Your Honor, that that approach is just an invitation to delay and extend out the litigation process to the point where it would add many, many additional months to the process of determining whether the privilege log is appropriate or not.

So, Your Honor, to the extent that you're

inclined to permit the plaintiffs permission to file a categorical privilege logs, we know we would prefer not to go through that process.  We think that they should have that -- if they do that, they should have one, basically one shot at privilege log, and then if we can get additional information, the Court should adopt the procedure that was adopted in the *Novartis* case that we cited to you, which is that if we need more information, they haven't met their prima facie burden to establish privilege, they simply waived the documents if the description wasn't adequate.

THE COURT:  All right.  Thank you.  So this is a new issue to me, so I'm not surprised that you didn't find any authority out of our court.  I'm not aware of any, and I'm certain I haven't seen it before.  And I think it presents a purely discretionary question for the Court. And I'm mindful not only that, of course, in all cases we're to try to manage them in a way that is efficient and helps resolve the case with the least necessary investment of resources and time, but this is, as we all know, a Hatch-Waxman case and there is an extra obligation on the parties and I think probably on the Court as well that everybody cooperate in a way that is most likely to lead to the expeditious resolution of the case, mindful of, among other things, the 30 month stay.

Under the circumstances here, it seems very

clear to me that both sides have reasonable positions, and so I can see why you have reached an impasse.  Of course, somebody has to make a decision.  And having reviewed the materials and heard the argument today, I find that in this case, I'm on the side of the plaintiffs.  I'm going to grant their request and do hereby grant their request to serve a categorical privilege log as opposed to having to log every document individually.

I'm persuaded that among the factors that make that the right exercise in my discretion here are the large number of documents that are potentially privileged running to many thousands at least, that most or all of those documents are in a foreign language, in Japanese.  And I'm persuaded that there will be a significant burden that is alleviated by allowing the plaintiffs to serve a categorical log instead taking the time with the attendant increased expense as was discussed of having to log each document individually.

I don't believe that the defendants are going to have any significantly greater difficulty meaningfully understanding the plaintiffs' basis for claiming privilege in reviewing a categorical log as opposed to an individual log.  Therefore, it seems to me that a categorical log is proportional to the needs of this case.

Now, all that said, I fully intend to hold, as

defendants should as well, the plaintiffs to their representations in their letter and today that they will endeavor to make this categorical log one that is very useful and one that is intended to fully meet the burden that is on any party asserting privilege to justify the basis for the privilege.  And if defendants believe once they see this log that there are deficiencies in it, then the parties should meet and confer and see if they can come to a resolution which might include the plaintiff having to do a further log, possibly up to, and including, individually logging documents in the end.  But I'm going to trust in the good faith efforts of the parties to see if they can resolve all privilege issues based on starting with a categorical log.

I do reject the defendants' position that if they find any deficiencies at all in this first log that the only option at that point will be for the Court to deem privilege to be waived and order production of the logged documents.

If it comes to deficiencies and after good faith meeting and conferring you can't resolve them, then we will be back here on a discovery dispute and all options will be on the table, but I'm not going to pre-decide that waiver is the only possible outcome of such a dispute.

In my view, my best estimate is that my decision

will help promote the efficient expeditious proceeding of this case.  It could turn out that that is a wrong prediction.  I understand the defendants' concern that I've gotten it wrong.  But my best guess is that this is the right exercise of discretion and will move the case forward.

Before we move forward to the other issues, are there any questions about that, Mr. Trenchard?

MR. TRENCHARD:  No, Your Honor.  Thank you.

THE COURT:  Mr. Gregory?

MR. GREGORY:  No, Your Honor.  Thank you.

THE COURT:  Okay.  Now let's move on to the various issues relating to the process for discovery relating to the Japanese law opinions and the status of defendants' motion to dismiss based on lack of standing and the three disputed depositions and where they should occur.

I want to hear about all of that at the same time, and we'll hear from the plaintiffs on that bundle of issues first, please.  Go ahead.

MR. TRENCHARD:  Yes.  Thank you, Your Honor.  Robert Trenchard again.

So these groupings of issues really arise out of a basic problem in the motion itself.  So the defendants' motion challenges the standing of the Novartis plaintiffs here.  There are two of them, on two grounds basically.

The first ground, the primary argument that

they make is that Novartis as a whole, picking all its affiliates together, did not acquire a license from both patent owners.  There were two patent owners.  As I said here, they were Mitsubishi and Mitsui, previously known as Yoshitomi and Taito.  Novartis has a license agreement with Yoshitomi, now Mitsubishi.

That license agreement on its face purports to grant a license on behalf of both Yoshitomi and Taito.  The defendants' argument is because Taito was not a party to that agreement, Novartis never actually acquired Taito's rights in the invention.

So this issue started to ripen back in the summer of last year.  In June of 2015, the defendants asked us, actually colleagues at our former firm, to provide evidence of standing.

After some back and forth, I think the first document that was produced was the primary license agreement; the one between Yoshitomi and Novartis's affiliate called Novartis Pharma AG or NPAG.

That agreement is Exhibit D to my declaration in opposition to the motion.  It is a long English language agreement going into great detail on the parties rights.  And most importantly for this discussion, Article 25, on page 42, is entitled, in all caps:  GOVERNING LAW.  And it says that Japanese law controls the parties relationship and

41

we're going to have argument, we'll get that on the calendar very soon.

All right.  Thank you all very much for your time.  Good-bye.

(Telephone conference ends at 11:00 a.m.)

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

                              /s/ Brian P. Gaffigan
                              Official Court Reporter
                              U.S. District Court

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>    a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>    a Delaware corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 24-490 (MN) |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>    a U.K. corporation, | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

**[PROPOSED] STIPULATED PROTECTIVE ORDER**

WHEREAS, Plaintiffs Qualcomm Inc., Qualcomm Technologies, Inc. (collectively "Qualcomm" or "Plaintiffs") and Defendant Arm Holdings PLC ("Arm" or "Defendant") expect discovery in the above-captioned action, including any appeals therefrom (this "Litigation"), to encompass certain information that may constitute proprietary, confidential, commercially sensitive, trade secret, and/or other confidential development, business, or commercial information. If such information is disclosed or disseminated in an unprotected manner, it may cause substantial harm to Plaintiffs, Defendant, and/or nonparties, including loss of competitive advantage, loss of existing business, and loss of business opportunities. Accordingly, the Parties, by and between their respective Outside Counsel, HEREBY STIPULATE AND AGREE, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and subject to the approval of the Court, that the following Stipulated Protective Order (the "Protective Order") shall govern the handling of Discovery Material in the Litigation. Accordingly, pursuant to Fed. R. Civ. P. 26(c), it is hereby ORDERED THAT:

A1668

## DEFINITIONS

1.      "Affiliate" means any Third Party that directly or indirectly through one or more intermediaries controls, or is controlled by, or is under common control with, a Party to this Litigation.

2.      "CONFIDENTIAL" means information that constitutes, contains, reveals, or reflects trade secrets or other confidential research, development, business, or commercial information within the meaning of Fed. R. Civ. P. 26(c)(l)(G), including but not limited to: (i) confidential, proprietary, or commercially sensitive information; (ii) any information which is not generally known and which the Producing Party would not normally reveal to Third Parties, would cause Third Parties to maintain in confidence; (iii) any information that the Producing Party believes in good faith is sensitive, or reasonably believes to be protected by a right to privacy under foreign, federal, or state law, a data protection law, or any other applicable privilege or right related to confidentiality or privacy; or (iv) confidential information of a Third Party that the Producing Party is bound by a separate confidentiality agreement or court order to maintain in confidence and that the Producing Party is permitted to produce in this Litigation.   CONFIDENTIAL information includes, but is not limited to, scientific and technical information; financial, budgeting and/or accounting information; information about existing and potential customers; marketing and other business strategies, decisions, or negotiations; personnel compensation, evaluations, and other employment information; and includes such confidential and proprietary information about a Third Party, including parents, subsidiaries, and/or other Affiliates. Provisions of this Protective Order relating to CONFIDENTIAL information shall be understood to encompass any information derived from, as well as testimony and oral conversation related to, CONFIDENTIAL information, and all copies, excerpts, and summaries thereof.

2

3.    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" means highly sensitive CONFIDENTIAL information, disclosure of which to another Party or Third Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

4.    "Source Code" means human-readable representations of software, firmware, and integrated circuits.  Source Code includes, but is not limited to, programming language text, symbolic representations of integrated circuits ("Chip-Level Schematics") or graphical depictions of physical configuration of semiconductor material within integrated circuit die or chip ("Integrated Circuit Layouts"), as well as register-transfer level abstraction files ("RTL Files") and transaction-level modeling files ("TLM Files").  Source Code includes, but is not limited to, programming language text in "C," "C++," BREW, Java ME, J2ME, assembler, digital signal processor ("DSP"), Hardware Design Language ("HDL"), VHDL, or Verilog programming languages.

5.    "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY" means highly sensitive CONFIDENTIAL information that includes Source Code.

6.    "CONFIDENTIAL Discovery Material" means Discovery Material a Designating Party designates as CONFIDENTIAL pursuant to the terms of this Protective Order.

7.    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material" means Discovery Material a Designating Party designates as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY pursuant to the terms of this Protective Order.

8.    "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material" means Discovery Material a Designating Party designates as HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY pursuant to the terms of this Protective Order.

3

9.      "Discovery Material" means all documents, testimony, pleadings, exhibits, and all other material or information produced or disclosed in this Litigation, including disclosures, contentions, responses to requests for production of documents and/or things, answers to interrogatories, responses to requests for admissions, documents and things made available for inspection, deposition testimony, expert testimony and reports, and all other disclosures made and discovery taken pursuant to the Federal Rules of Civil Procedure and any order of this Court, including Third Party discovery pursuant to Rule 45, matters in evidence and any other information hereafter furnished, directly or indirectly, by or on behalf of any Party, Third Party, or witness in connection with this Litigation.  This Protective Order and protections herein shall apply to all Discovery Material.

10.     "Expert" means a person with specialized knowledge or experience in a matter pertinent to this Litigation, including any associates or analysts working under the supervision of the Expert, with disclosure only to the extent necessary to perform such work, who has been retained by a Party or its Outside Counsel to serve as an expert witness or as a consultant in this Litigation who, at the time of retention: (1) is not an officer, director, or employee of a Party, Affiliate, or Competitor of a Party and (2) is not anticipated to become an officer, director, or employee of a Party, Affiliate, or Competitor of a Party.  Nothing in this Protective Order purports to alter in any way the requirements for offering testimony under Fed. R. Evid. 703, or to define the term "expert" for purposes other than those addressed in this Protective Order.

11.     "Competitor" means any entity or person that is involved in the development of any custom CPU or SoC for mobile or compute markets that would compete against Plaintiffs' custom Arm-based CPU(s) or SoC(s) for mobile, automotive, IoT, or compute markets.

4

12.   "Outside Counsel" means (i) any attorney from a law firm that has made a formal appearance as counsel of record for a Party in this Litigation and who is not an employee of a Party or of an Affiliate, and (ii) partners, principals, counsel, associates, employees, and contract attorneys of such Outside Counsel to whom it is reasonably necessary to disclose information for this litigation, including supporting personnel employed by the attorneys, such as paralegals, legal translators, legal secretaries, legal clerks, and shorthand reporters.

13.   "Party" means a party to this Litigation.

14.   "Challenging Party" means a Party or Third Party that challenges the designation of information or items under this Protective Order.

15.   "Designating Party" means any Party or Third Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY."

16.   "Producing Party" means any Party or any Third Party who produces or otherwise discloses, whether through formal or informal means, Discovery Material in this Litigation.

17.   "Professional Vendor" means a person or entity that provides litigation support services (e.g., photocopying, audio or video recording, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium; jury consulting including mock jurors, mock trial coordination) and their employees and subcontractors. Professional Vendors do not include Experts.

18.   "Protective Order" means this Stipulated Protective Order.

5

**A1672**

19.    "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY."

20.    "Receiving Party" means any Party that receives Discovery Material produced or otherwise disclosed by any Producing Party.

21.    "Third Party" means a person or entity that is not a Party.

**SCOPE**

22.    The protections conferred by this Protective Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.  However, the protections conferred by this Protective Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication that does not violate this Protective Order, including becoming part of the public record through trial or otherwise; or (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party.  To the extent there is any dispute regarding the use of Protected Material at trial, the parties shall submit the dispute to the Court for resolution.

**DURATION**

23.    Even after final disposition of this Litigation, the confidentiality obligations imposed by this Protective Order shall remain in effect until the Designating Party agrees

6

otherwise in writing or a court order otherwise directs.  Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this Litigation, with or without prejudice; or (2) final judgment after the completion and exhaustion of all appeals, re-hearings, remands, trials, or reviews of this Litigation, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

**DESIGNATION**

24.    Any Producing Party may designate Discovery Material as CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY in accordance with this Protective Order if such party in good faith believes that such Discovery Material contains CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY information.

25.    For information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), designation in conformity with this Protective Order requires that the Producing Party affix the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY" to each page that contains Protected Material, or, if not practicable, as otherwise agreed by the Parties.

26.    A Party or Third Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced.  During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Designating Party must determine which documents,

7

**A1674**

or portions thereof, qualify for protection under this Order.  Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY") to each page that contains Protected Material, or, if not practicable, as otherwise agreed by the Parties.  There will be no waiver of confidentiality, or any privilege or immunity, by the inspection of Discovery Material before it is copied and marked pursuant to this Order.  Inspection of Discovery Material by any Party shall be conducted by persons eligible under Paragraphs 41 and 42 below.

27.  For documents produced in native format, the Producing Party shall include the appropriate confidentiality designation in the filename, as well as on any slip sheet accompanying the production.  Any printed or PDFed copies of such designated documents shall be marked by the Receiving Party at the time of printing/PDFing with the appropriate confidentiality designation to ensure appropriate protection.

28.  Information revealed during a deposition upon oral or written examination under Fed. R. Civ. P. 30 shall be treated as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY for thirty (30) days (as calculated by Fed. R. Civ. P. 6) following receipt of the final transcript by Outside Counsel for the Designating Party, but not thereafter unless, before the thirty (30) day period has expired, Outside Counsel for the Producing Party notifies Outside Counsel for the Receiving Party in writing that the Discovery Material set forth in the transcript is CONFIDENTIAL, HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY.  Counsel for any Party or Third Party also may designate the transcript or portions thereof to be CONFIDENTIAL Discovery Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material, or

8

HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material during the deposition. The appropriate legend described in Paragraph 25 shall be placed on the front of any deposition transcript (and, if recorded, any copies of the recording) containing CONFIDENTIAL Discovery Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material. Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material. In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order. In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential or highly confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative protective orders in this matter or pursuant to written stipulation of the parties." Counsel for any Producing Party shall have the right to exclude from confidential portions of oral depositions (e.g., involving testimony regarding Protected Material, or the use of such material in the deposition), other than the deponent, deponent's counsel, and the reporter and videographer (if any), any person who is not authorized by the Protective Orders in this action to receive or access Protected Material based on the designation of such Protected Material.

29.    Any pleading, brief, declaration, affidavit, expert report, or other filing that contains, describes, or discusses Protected Material shall be filed under seal pursuant to the requirements of D. Del. LR 5.1.3 and the Court's CM/ECF procedures. The filing Party must

9

include on the cover page of the brief, or other filing, a descriptive legend in substantially the following format: "CONFIDENTIAL - FILED UNDER SEAL" or "HIGHLY CONFIDENTIAL (ATTORNEYS' EYES ONLY) - FILED UNDER SEAL." Outside Counsel for the Party filing papers containing, describing, or discussing Protected Material shall be responsible for providing appropriately redacted copies of the filed document to the Court in accordance with Paragraph (G)(l) of the United States District Court for the District of Delaware's Administrative Procedures Governing Filing and Service by Electronic Means, Revised January 2023.  If the filing contains the Protected Material of the Party who did not file the document, within three (3) days from the date of a filing made under seal, Outside Counsel for the filing Party or filing Third Party shall deliver to Outside Counsel for the non-filing Party or Parties a proposed public version of the under seal filing, which shall include the filing Party's proposed redactions of any Protected Material.  Within three (3) days after receipt of the proposed public version, Outside Counsel for the non-filing Party shall provide any additional redactions it believes appropriate.  Redacted versions of papers filed under seal may be made publicly available provided that (a) all Protected Material is redacted; and (b) such redacted versions are clearly marked "Public Version," and clearly identify each place where information or exhibits have been redacted or deleted.

## CHALLENGING CONFIDENTIALITY DESIGNATIONS

30.     Any Party may challenge a designation of confidentiality at any time.  Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the Litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

31.     The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge.  To

avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order.  The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring in-person or telephonically within seven (7) days of the date of service of notice of the challenge.  In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.  The Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

32.    If the Parties cannot resolve a challenge without court intervention, the Challenging Party may file and serve a motion, or otherwise invoke the Court's discovery dispute resolution process.

33.    The burden of persuasion in any such challenge proceeding shall be on the Designating Party.  Neither party shall make frivolous challenges or challenges for an improper purpose (*e.g.*, to harass or impose unnecessary expenses and burdens on other parties).  All Parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation until the court rules on the challenge.

### USE OF MATERIALS FROM PRIOR LITIGATION

34.    The provisions of this Order shall also be binding with respect to materials produced by and designated under the Protective Order (D.I. 38) therein by, any Party or Non-Party that produced documents in response to a subpoena in the prior litigation *Arm Ltd v.*

11

*Qualcomm et al.*, C.A. No. 22-1146 (D. Del.) (the "Prior Litigation"), excluding source code and documents produced from Qualcomm's database of quarantined materials.  For the convenience of the parties, and without conceding relevance to the claims or defenses here, the parties have agreed to treat all other materials produced in the Prior Litigation as if they had been produced in this Litigation.  This includes treating all such materials designated by any Party under the Protective Order in the Prior Litigation (D.I. 38) therein as if they were "Protected Material" produced with the same designation under this Order.

35.    In light of this agreement, the destruction obligations imposed by paragraphs 67–69 of the Protective Order (D.I. 38) in the Prior Litigation shall not apply to any materials within the scope of this section until the final disposition of this Litigation.

36.    The parties further agree that all depositions conducted in connection with the Prior Litigation can be used in this litigation and that use of those depositions do not count toward the deposition limits set forth in the Scheduling Order.  This paragraph shall not apply to portions of any deposition in which the witness discussed or reviewed source code that has not been produced in this litigation.  The Parties further agree that any briefing or related materials filed under seal in the Prior Litigation may be referenced in this Litigation without violating the Prior Litigation Protective Order (D.I. 38), but they are not evidence and are not deemed produced in this Litigation.

## ACCESS TO AND USE OF PROTECTED MATERIAL

37.    Protected Material produced by a Party or Third Party may be used by the Receiving Party only for purposes of this Litigation, and shall not be used in any other way, or for any other purpose.  Unless otherwise permitted in writing between Producing Party and Receiving Party, any individual who personally receives, other than on behalf of Producing Party, any

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material shall not participate in amending, drafting, or otherwise affecting the scope of patent specifications or claims before a Patent Office or agency (whether domestic or foreign) of any patent or patent application related to the information disclosed in the HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material, from the time of receipt of such material through one (1) year after the date the individual person(s) provides written notice to the Producing Party that said person ceases to have access to the HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material as well as any materials that contain or disclose such material, or if access does not cease, one (1) year after termination of this Litigation, as set forth above.  For avoidance of doubt, the foregoing provision applies to pending applications as well as post-grant proceedings.  Unless otherwise permitted in writing between Producing Party and Receiving Party, any Expert retained on behalf of Receiving Party who is to be given access to Producing Party's documents or Protected Material must agree in writing, using the form in Exhibit A, not to perform hardware or software development work or product development work directly or indirectly intended for commercial purposes related to the information disclosed in the HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material, which is not publicly known, from the time of first receipt of such material through one (1) year after the date the Expert provides written notice to the Producing Party that said expert consultant ceases to have access to any Protected Material, as well as any materials that contain or disclose Protected

13

Material or if access does not cease, one (1) year after termination of this Litigation, as set forth above.

38.    Nothing in this Protective Order precludes a Producing Party from using or disseminating its own Discovery Material, including Protected Material for purposes other than this Litigation.

39.    At the deposition of any fact witness, unless agreed to by the Designating Party, such witness may be shown Protected Material only if the witness is a current employee of the Designating Party, the Protected Material indicates that the witness authored the Protected Material, or the witness received or reviewed the Protected Material in the ordinary course of business and outside the context of this Litigation.

40.    At the deposition of any corporate representative designated pursuant to Fed. R. Civ. P. 30(b)(6) to testify on behalf of a Party on a particular topic or subject area, unless agreed to by the Designating Party, such witness may be shown Protected Material only if the Designating Party is the Party being deposed pursuant to Fed. R. Civ. P. 30(b)(6), the Protected Material indicates that an employee or agent of the Party being deposed pursuant to Fed. R. Civ. P. 30(b)(6) authored the Protected Material, or the witness received or reviewed the Protected Material in the ordinary course of business and outside the context of this Litigation.

41.    Third parties may designate as CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY deposition transcripts of their witnesses and any Discovery Material they produce, whether voluntarily or by subpoena, to the same extent and in the same manner as Parties and any such Protected Material shall be treated by the Parties in the same manner as the Protected Material produced by a Party.  Third Parties shall have the same rights

14

and obligations under this Protective Order as Parties and may move the Court to enforce the provisions of this Protective Order.

42.    The Parties acknowledge that Protected Material also may be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the U.S. government export control and economic sanctions laws, such as the Export Administration Regulations ("EAR", 15 CFR 730 et seq., http://www.bis.doc.gov/) administered by the Department of Commerce, Bureau of Industry and Security, and the Foreign Asset Control Regulations (31 CFR 500 et seq., http://www.treas.gov/offices/enforcement/ofac/) administered by the Department of Treasury, Office of Foreign Assets Control ("OFAC"). Receiving Parties will abide by U.S. law and applicable regulations governing the disclosure, export, re-export, transfer, or release of any export-controlled Protected Material ("Export Controlled Information") to any destination, person, entity, or end use prohibited or restricted under U.S. law, including obtaining prior U.S. government authorization to the extent required by regulation.  The U.S. government maintains embargoes and sanctions against the countries listed in Country Groups E:1/2 of the EAR (Supplement 1 to part 740).  Export Controlled Information disclosed in this action will be used only for the purposes of this action.  The Producing Party shall be responsible for identifying any Export Controlled Information, and the Receiving Party shall take measures necessary to ensure compliance.  This paragraph shall be interpreted consistent with applicable U.S. law and is not intended to contradict such law.

43.    Producing Party's Source Code:

(a)    To the extent that a Producing Party makes Source Code available for inspection by a Receiving Party:

15

i.  The Producing Party shall make all relevant and properly requested Source Code available electronically and in text searchable form at the offices of Counsel of Record for Producing Party or at a secure facility approved by Producing Party. The Producing Party shall make the Source Code available for inspection on a stand-alone, non-networked personal computer running a reasonably current version of the Microsoft Windows operating system ("Source Code Computer"). Alternatively, solely at the option of the Producing Party, the Producing Party may make such source code available on a Source Code Computer that is networked, in a configuration deemed secure by Producing Party. The Source Code Computer shall be configured to permit review of the Source Code through a password-protected account having read-only access. To facilitate review of the Source Code at the secure facility, the Receiving Party may use appropriate tool software on the Source Code Computer, which shall be installed by the Producing Party, including at least one text editor like Visual Slick Edit that is capable of printing out Source Code with page and/or line numbers, a source code comparison tool like Winmerge, and at least one multi-text file text search tool such as "grep." Should it be necessary, other mutually agreed upon tools may be used. Licensed copies of other mutually agreed upon tool software shall be installed on the Source Code

16

Computer by the Producing Party and paid for by the Receiving Party.

ii.   In the event a Producing Party makes Chip-Level Schematics or Integrated Circuit Layouts available for review, the Producing Party shall ensure that the Source Code Computers include software sufficient to allow a user to view such types of Source Code.

(b)   Any Source Code produced in discovery shall be made available for inspection, in its native form and native directory structure as organized and kept in the ordinary course of business allowing it to be reasonably reviewed and searched, during normal business hours (9:00 a.m. to 4:30 p.m. local time, Monday-Friday, excluding holidays) or at other mutually agreeable times, at a mutually agreed upon location.  Upon reasonable notice from the receiving party, which shall not be less than three (3) business days in advance, the supplier shall make reasonable efforts to accommodate the receiving party's request for access to the computer outside of normal business hours.  Following the end of expert discovery, a party is not obligated to make Source Code produced in discovery available for inspection.

(c)   The Source Code Computers shall be equipped to print PDF copies of the Source Code so that the Receiving Party can designate the Source Code for which it would like hard-copy printouts which shall be printed by the Producing Party on watermarked pre-Bates numbered paper after the review.  The Receiving Party may request a reasonable number of pages of Source Code to be printed.  A reasonable number of pages means no more than 500 pages of Source Code, on 8.5" x 11" paper with a font no smaller than Courier 12-point.  The parties agree to negotiate printing beyond these page limits in good faith, should the need arise.  Counsel for the Producing Party will keep the original printouts, and shall provide copies of such original printouts

17

to counsel for the Receiving Party within seven (7) days of (1) any request by the Receiving Party, or (2) otherwise being notified that such original printouts have been made or designated. Counsel of Record for the Receiving Party may request up to 5 copies of each original printout of Source Code. No more than 500 original printouts of Source Code for any software release or hardware product may be in printed form at any one time, without the express written consent of Producing Party, which shall not be unreasonably denied. All printed Source Code shall be logged by Receiving Party's Counsel of Record and/or other Personnel Retained by a Receiving Party in this action as noted in subparagraph (i) below. No additional electronic copies of the Source Code shall be provided by the Producing Party. Hard copies of the Source Code also may not be converted into an electronic document, and may not be scanned using optical character recognition ("OCR") technology. Only printouts of Source Code may be made, and such printouts, where made of programming language text, must include (1) directory path information and filenames from which the Source Code came and (2) line numbers. The Producing Party may refuse to provide copies of Source Code printouts that fail to comply with this section.

(d)    Authorized reviewer(s) in this action shall not print Source Code that has not been reviewed on the Source Code Computer, or in order to review the Source Code elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code electronically on the Source Code Computer, as the Parties acknowledge and agree that the purpose of the protections herein would be frustrated by such actions.

(e)    Authorized reviewer(s) are prohibited from bringing outside electronic devices, including but not limited to laptops, floppy drives, zip drives, or other hardware into the secure room, except as outlined in subparagraph (f). Nor shall any cellular telephones, personal digital assistants (PDAs), Blackberries, cameras, voice recorders, Dictaphones, external or

18

portable telephone jacks, or other outside electronic devices be permitted inside the secure room, except for medical devices, implants, or equipment reasonably necessary for any legitimate medical reason.

   (f)  If any authorized reviewer(s) reviewing Source Code seeks to take notes, all such notes will be taken on bound (spiral or other type of permanently bound) notebooks. No loose paper or other paper that can be used in a printer may be brought into the secure room. In addition to taking notes on bound notebooks, an authorized reviewer may also bring a USB memory device to the secure room, to be inserted into a separate notetaking laptop computer provided by the Producing Party or the Producing Party's vendor. The notetaking laptop computer shall be configured with Microsoft Word, such that the Reviewing Party can create or modify documents directly on the USB memory device plugged into the notetaking laptop computer. The Receiving Party shall encrypt any file on the USB memory device that contains confidential material subject to this Protective Order using Microsoft Word's "Encrypt with Password" functionality accessible through the File->Info->Protect Document menu in Microsoft Word. The Receiving Party's Outside Counsel and/or Experts may not copy the Source Code into the notes and may not take such notes electronically on the Source Code Computer itself. Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Order, the Receiving Party's Outside Counsel and/or Experts shall remove all notes, documents, USB memory devices, and all other materials from the Source Code Review Room. The Producing Party shall not be responsible for any items left in the room following each inspection session, and the Receiving Party shall have no expectation of confidentiality for any items left in the room following each inspection session without a prior agreement to that effect.

19

(g)    If Source Code is quoted or set forth in a confidential pleading or expert report, the Party including the Source Code will limit the amount of such Source Code to what is reasonably necessary for the party to make its point and will designate such documents as "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY." Absent the Producing Party's consent (which will not be unreasonably withheld), an excerpt of programming language text will not exceed five (5) continuous lines of code, and an excerpt of Chip-Level Schematics or Integrated Circuit Layouts will not exceed five (5) sequential pages of printouts of such material. Except as approved by the Producing Party in writing, longer excerpts shall not be copied for use in court documents but shall be referred to by citation to production page numbers and lines. A Receiving Party may not submit copies of Source Code as part of a Court document or exhibits thereto. Source Code must be submitted *in camera* only. Instead, a Receiving Party wishing to refer to Source Code in Court documents shall use pin cites to Source Code material submitted *in camera.* In the event copies of Source Code printouts are used as exhibits in a deposition or trial, printouts shall not be provided to the court reporter, and the further copies of the original Source Code printouts made for the deposition or trial shall be destroyed at the conclusion of the deposition or trial. The original copies of deposition exhibits designated "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY" will be maintained by the deposing party under the terms set forth in this Protective Order.

(h)    In addition to other reasonable steps to maintain the security and confidentiality of Source Code, printed copies of the Designated Source Code Material maintained by the Receiving Party must be kept in a locked storage container when not being actively reviewed or otherwise being transferred as permitted by this Protective Order.

20

(i)    The Receiving Party's Counsel of Record shall keep log(s) recording the identity of each individual to whom each hard copy of each Producing Party's Source Code is provided and when it was provided to that person in the first instance, and within thirty (30) days after the issuance of a final, non-appealable decision resolving all issues in this action, the Receiving Party must serve upon Producing Party the log.  In addition, any Expert of the Receiving Party to whom the paper copies of the Source Code were provided must certify in writing that all copies of the Source Code were destroyed or returned to the counsel who provided them the information and that they will make no use of the Source Code, or of any knowledge gained from the source code in any future endeavor.

## DISCLOSURE OF PROTECTED MATERIAL

44.    Unless otherwise directed by the Court or authorized in writing by the Designating Party, CONFIDENTIAL Discovery Material may be disclosed by the Receiving Party only to the following persons:

(a)    In-house counsel of the Receiving Party, including paralegals, eDiscovery teams, and secretarial staff, provided that they have signed the "Declaration to be Bound" attached as Exhibit A;

(b)    Any Outside Counsel;

(c)    Contract attorneys retained by a Party's Outside Counsel for the sole purpose of assisting with document review in this Litigation and who shall be subject to the same restrictions as Outside Counsel;

(d)    Any Expert who is expressly retained by any Outside Counsel to assist in this Litigation, including any associates or analysts working under the supervision of the Expert, with disclosure only to the extent necessary to perform such work, who have signed the

21

**A1688**

"Declaration to be Bound" attached as Exhibit A and as to whom the procedures set forth in Paragraph 44 have been followed;

(e)    Support personnel for Experts, such as secretaries and clerical staff, assisting with this Litigation under the supervision of the Expert;

(f)    Any interpreter, court reporter, or other shorthand reporter or typist who is translating, recording, or transcribing documents or testimony in connection with this Litigation;

(g)    Professional Vendors retained by a Party or Outside Counsel to whom disclosure is reasonably necessary for this action;

(h)    Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the Parties, and his or her staff;

(i)    Personnel of the Court and all appropriate courts of appellate jurisdiction; and

(j)    Any other person with the prior written consent of the Designating Party or by order of this Court.

45.    Unless otherwise directed by the Court or authorized in writing by the Designating Party, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material may be disclosed by the Receiving Party only to the following persons:

(a)    Any Outside Counsel;

(b)    Contract attorneys retained by a Party's Outside Counsel for the sole purpose of assisting with document review in this Litigation and who shall be subject to the same restrictions as Outside Counsel;

22

**A1689**

(c)    Any Expert who is expressly retained by any Outside Counsel to assist in this Litigation, including any associates or analysts working under the supervision of the Expert, with disclosure only to the extent necessary to perform such work, who have signed the "Declaration to be Bound" attached as Exhibit A and as to whom the procedures set forth in Paragraph 44 have been followed;

(d)    Support personnel for Experts, such as secretaries and clerical staff, assisting with this Litigation under the supervision of an Expert;

(e)    Any interpreter, court reporter, or other shorthand reporter or typist who is translating, recording, or transcribing documents or testimony in connection with this Litigation;

(f)    Professional Vendors retained by a Party or Outside Counsel to whom disclosure is reasonably necessary for this action;

(g)    Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the Parties, and his or her staff; who have, after the date of this Protective Order, signed the "Declaration to be Bound" attached as Exhibit A;

(h)    Personnel of the Court and all appropriate courts of appellate jurisdiction;

(i)    Any other person requested with the prior written consent of the Designating Party or by order of this Court who has signed the "Declaration to be Bound" attached as Exhibit A.

46.    CONFIDENTIAL Discovery Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material shall not be disclosed to persons described in Paragraph 41 (a), (d), (e), or (j) or 42 (c), (d), (g), or (i), unless and until such person has executed

23

the "Declaration to be Bound" attached as Exhibit A.  Outside Counsel must maintain a copy of the executed Exhibit A for each such person during the Litigation and for one (1) year thereafter.

47.     Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, before a Party can disclose to an Expert any Protected Material, Outside Counsel for the Receiving Party: (a) shall serve a notice on the Designating Party identifying such individual by name, business address, business profession, country of citizenship, and including an up-to-date curriculum vitae ("CV") or equivalent resume disclosing the individual's employment history, past or present relationship with any of the Parties and Affiliates, the individual's employment and consulting relationships for the past five (5) years with the dates of the consultancy or employment and a brief description of the subject matter of the consultancy or employment (to the extent such information is not disclosed on the individual's curriculum vitae), all cases in which the individual has testified in a deposition or a trial in the past six (6) years, an indication of whether Outside Counsel for the Receiving Party intends to show the individual CONFIDENTIAL Discovery Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material, and an executed copy of the "Declaration to be Bound" attached as Exhibit A from the individual to whom the disclosure is to be made; and (b) shall abide by the provisions of Paragraph 34.

48.     With respect to Experts that have not been previously disclosed to the Producing Party, the Designating Party shall have five (5) business days, starting from the first business day following the date upon which the Receiving Party provides the notice and all information regarding the Expert required by Paragraph 44 to the Designating Party, to object for good cause in writing to such disclosure via e-mail to all Outside Counsel.  After the expiration of the five (5) business days, if no objection for good cause has been asserted by the Designating Party, Protected

24

Material may be disclosed to the Expert pursuant to the terms of this Protective Order. Any objection by the Designating Party must be made for good cause, and must set forth in detail the grounds on which it is based. Should the Receiving Party disagree with the basis for the objection(s), the Receiving Party must first attempt to resolve the objection(s) with the Designating Party via a verbal meet and confer. If the meet and confer efforts do not resolve the dispute within five (5) business days from the date upon which Receiving Party was first notified of any objection for good cause by Designating Party, the parties shall raise the dispute with the Court using the discovery dispute procedures as set forth in the Scheduling Order within three (3) business days. The burden shall be on the objecting Party to demonstrate to the Court why such individual should not be permitted to receive Protected Material. Such Protected Material shall not be disclosed to such individual pending the Court's resolution of the dispute. If relief is not sought from the Court within that time, the objection shall be deemed withdrawn. The foregoing time periods may be extended or shortened by agreement of the Parties or by Order of the Court.

49.     The recipient of any Protected Material that is provided under this Protective Order (including any copies or excerpts made thereof) shall maintain such Protected Material in a secure and safe area and shall exercise reasonable and proper care with respect to the storage, custody, use, and/or dissemination of such Protected Material. The recipient of Protected Material produced in electronic form shall maintain such Protected Material on a secure, password-protected computer, drive, or server with access restricted to persons authorized under Paragraphs 41 and 42, respectively.

50.     Pre-trial proceedings shall be conducted in a manner, subject to the supervision of the Court, to protect from disclosure Protected Material to persons not authorized to have access to such Protected Material. Any Party intending to disclose or discuss Protected Material at pretrial

25

proceedings shall make reasonable efforts to give advance notice to the Producing Party, and shall otherwise treat such Protected Material consistent with the terms of this Protective Order.

## PRODUCING A THIRD PARTY'S PROTECTED MATERIALS

51.     In the event that a Party is required, by a valid discovery request, to produce a Third Party's confidential information in its possession, and the Party is subject to an agreement restricting the ability to produce the Third Party's confidential information, then the Party shall:

(a)     promptly notify in writing the requesting Party and the Third Party that some or all of the information requested is subject to a confidentiality agreement with a Third Party;

(b)     promptly provide the Third Party with a copy of the Protective Order and the relevant discovery request(s); and

(c)     promptly make the information requested available for inspection by the Third Party.

52.     If the Third Party fails to seek a protective order or other relief from this Court within twenty-one (21) days of receiving the notice and accompanying information, the Third Party's confidential information responsive to the discovery request shall be produced, with an appropriate confidentiality designation **[Arm's Proposal:** , except the producing party may redact Designated Confidential Information (as defined in the ESI Order) that is subject to a confidentiality agreement with a Third Party for which a Third Party has requested redaction, as permitted by Section 2.j of the ESI Order**]**.  If the Third Party timely seeks a protective order, the Third Party's confidential information responsive to the discovery request shall not be produced before a determination by the Court.  Absent a Court order to the contrary, the Third Party shall bear the burden and expense of seeking protection in this Court of its Protected Material.

26

## EXPERT DISCOVERY

53.     In accordance with Federal Rule of Civil Procedure 26(b), communications and exchanges between counsel and Experts (including testifying Experts), including those made in preparing drafts of expert reports and declarations, are not discoverable unless the Expert relies on any such communication to support his or her opinion.  In addition, draft expert reports and declarations are not discoverable.  Communications and exchanges between counsel and non-testifying Expert witnesses are not discoverable.  Notes made by Experts for purposes of this Litigation are not discoverable.  Neither Party shall seek discovery of non-discoverable Expert communications, exchanges, notes, or draft reports or declarations.

## NO WAIVER OF PRIVILEGE BY VIRTUE OF DISCLOSURE

54.     The disclosure or production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, or the failure to object to the use of such Privileged Information, whether inadvertent or otherwise, will not waive the applicable privilege and/or protection regardless of the circumstances of the disclosure or production, whether in this Litigation or in any other federal or state proceeding. This provision constitutes an Order under Federal Rule of Evidence 502(d), which shall be interpreted to provide the maximum protection allowed by Rule 502(d), and shall be interpreted consistent with applicable ethical guidelines.  Upon discovery of the production of Discovery Material over which a privilege or protection is claimed, a Producing Party may promptly request the return of such Discovery Material.  The Producing Party must produce a privilege log or amended privilege log for any such Discovery Material within three (3) days of its request for the return of such material.  If the Producing Party claims that only a portion of a Document contains privileged or protected material, the Producing Party shall also provide a new copy or copies of the Document(s) with the relevant material redacted concurrent with the notification, to the extent

27

reasonably practicable.  Upon a request from any Producing Party who has produced Discovery Material that it believes is privileged and/or protected (the "Identified Materials"):

(a)    the Receiving Party shall not, from that point onward, copy, distribute, or otherwise use in any manner the Identified Materials, unless the parties agree or the Court orders;

(b)    the Receiving Party shall instruct all persons to whom the Receiving Party has disseminated the Identified Materials that such information is subject to this Order and may not be copied, distributed, or otherwise used; and

(c)    the Receiving Party and all persons notified as set out in the preceding subparagraph shall, within ten (10) calendar days:

i.    return, destroy, delete, or sequester, all Identified Materials, and make a good faith effort to return, destroy, delete, or sequester all portions of all analyses, memoranda, or notes that were internally generated based upon the Identified Materials;

ii.    return, destroy, delete, or sequester, all copies of the Identified Materials in electronic format in databases, production media, or other locations used to store the documents.  For Identified Materials stored on production media, the Receiving Party may load the production, but shall exclude the Identified Materials (thus sequestering them on the production media), or immediately destroy, delete, or sequester them after loading the production.

55.    For purposes of this Order, Identified Materials that are not reasonably accessible under Federal Rule of Civil Procedure 26(b)(2)(B) because they are stored by the Receiving Party

28

**A1695**

on backup storage media are deemed to be sequestered. Should such data be retrieved, the Receiving Party must promptly take steps to delete the restored Identified Materials.

56.     The Receiving Party may make no use of the Identified Materials during any aspect of this matter or any other matter, including in depositions or at trial, unless the documents are later designated by a court of competent jurisdiction as not privileged or protected.

57.     If any Receiving Party has reason to believe that it is in receipt of Privileged Information from a Producing Party, the Receiving Party shall not copy, distribute, or otherwise use such Privileged Information in any manner and shall provide prompt notice to the Producing Party to afford an opportunity to request return of the materials in the manner set forth herein.

58.     Nothing in this Order overrides any ethical responsibilities to refrain from examining, disclosing, or using materials that an attorney knows or reasonably should know to be privileged and to inform the Producing Party that such materials have been produced.

59.     The contents of the Identified Materials shall not be disclosed to anyone who was not already aware of the contents before the notice was made.

60.     If the Receiving Party has any notes or other work product reflecting the contents of the Identified Materials, the Receiving Party will not review or use those materials unless a court of competent jurisdiction later designates the Identified Materials as not privileged or protected.

61.     If the Receiving Party returning the Identified Materials contests the Producing Party's claim of privilege or other applicable protection, the parties will promptly meet and confer in an attempt to resolve the dispute. If the parties are unable to resolve the dispute, the Receiving Party may move the Court for an order compelling production of some or all of the Identified Materials:

29

(a)    The basis for such a motion may not be the fact or circumstances of the production or disclosure or any of the factors listed in FRE 502(b).

(b)    The Producing Party retains the burden, upon the Receiving Party's challenge, of establishing the privileged or protected nature of Identified Materials.

(c)    Pending resolution of the motion, the Receiving Party must not use the contested information in any way, or disclose it to any person, other than those required by law to be served with a copy of the sealed motion.

62.    This Protective Order does not constitute a concession by any party that any documents are subject to protection by the attorney-client privilege, the work product doctrine or any other potentially applicable privilege or doctrine.  This agreement also is not intended to waive or limit in any way any party's right to contest any privilege claims that may be asserted with respect to any of the documents produced except to the extent stated in the agreement.

63.    Identified Materials under this Order shall not be used as grounds by any third party to argue that any waiver of privilege or protection has occurred by virtue of any production in this case.

64.    FRE 502(b) is inapplicable to the Identified Materials, which shall receive the maximum protection afforded by FRE 502(d).  Under FRE 502(d) and 28 U.S. Code § 1738, this Order shall be enforceable and granted full faith and credit in all other state and federal proceedings.  Any subsequent conflict of law analysis shall apply the law most protective of privilege and work product.

65.    Notwithstanding the provisions of this Order, Parties may redact from any document, whether Protected Material or not, any information containing privileged material,

30

**A1697**

attorney work product, or any other data protected from disclosure by State or Federal laws or regulations.

**FAILURE TO DESIGNATE**

66.    The failure by a Producing Party to designate Discovery Material as CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material shall not be a waiver of such designation provided that the Producing Party that fails to make such designation informs the Receiving Party that such Discovery Material is CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY promptly after the failure to designate first became known to the Producing Party.  The failure by a Producing Party to designate Discovery Material as CONFIDENTIAL, as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or as HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY shall not preclude a Party from seeking relief from the Court at a later date requesting imposition of such designation or challenging the propriety thereof.  The Producing Party shall reproduce the Discovery Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Party.  Upon receiving the Discovery Material with the correct confidentiality designation, the Receiving Party shall promptly return or securely destroy all Discovery Material that was not designated properly and certify compliance.

67.    In the event of disclosure of Protected Material to any person not authorized to such access under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately inform Outside Counsel for the Party whose Protected Material has been disclosed of all known relevant information concerning the nature and circumstances of the disclosure.  The Party responsible for improperly disclosing such Protected

31

Material shall also promptly take all reasonable measures to retrieve the improperly disclosed Protected Material, to ensure that no further or greater unauthorized disclosure and/or use thereof is made, to inform the person or persons to whom unauthorized disclosures were made of all the terms of this Protective Order, and to request such person or persons to execute the "Declaration to be Bound" attached as Exhibit A.  Nothing in these provisions should be construed as limiting any Producing Party's rights to seek remedies for a violation of this Protective Order.

68.    If the Receiving Party discovers that an unauthorized person or persons has accessed or obtained the Protected Material of another Party, the Receiving Party shall: (1) provide written notice to Producing Party of such breach within three (3) business days of Receiving Party's discovery of the breach; (2) investigate and remediate the effects of the breach, and provide Producing Party with assurance reasonably satisfactory to Producing Party that such breach shall not recur; and (3) provide sufficient information about the breach that the Producing Party can reasonably ascertain the size and scope of the breach including, but not limited to, the nature of the compromise, the timing of the compromise, the documents compromised, the nature of the unauthorized party, and the data security in place at the time of the compromise.  If required by any judicial or governmental request, requirement, or order to disclose such information, the Receiving Party shall take all reasonable steps to give the Producing Party sufficient prior notice in order to contest such request, requirement, or order through legal means.  The Receiving Party agrees to provide reasonable cooperation to the Producing Party or law enforcement in investigating any such security incident.  In any event, the Receiving Party shall promptly take all necessary and appropriate corrective action to terminate the unauthorized access as it deems appropriate in its good faith and reasonable judgment.  If the unauthorized access or disclosure of the Protected Material requires notice to individuals, organizations, or regulators under applicable

32

**A1699**

law, then the Receiving Party shall follow the reasonable instructions of the Producing Party regarding such notice at their own cost.

## DATA SECURITY

69.    Receiving Parties must take reasonable precautions to protect Protected Material from loss, misuse and unauthorized access, disclosure, alteration and destruction, including but not limited to: (a) material in electronic format shall be maintained in a secure litigation support site(s) that applies standard industry practices regarding data security, including but not limited to application of access control rights to those persons entitled to access Protected Material under this Order; (b) any Protected Material downloaded from the litigation support site(s) in electronic format shall be stored only on encrypted devise(s) (e.g., laptop, tablet, smartphone, thumb drive, portable hard drive) that are password protected with access limited to authorized users, if the user is unable to password protect and/or encrypt the device, then the Protected Material shall be password protected and/or encrypted at the file level; and (c) derivations of Protected Material, including any lists, memorandum, indices or compilations prepared or based on an examination of this material, that quote from or paraphrase such Designated material in a manner that enables it to be identified shall be accorded the same status of confidentiality as the underlying Protected Material.

## DESTRUCTION OF PROTECTED MATERIALS

70.    Unless otherwise ordered or agreed in writing by Producing Party, not later than sixty (60) days (as calculated by Fed. R. Civ. P. 6) after the final disposition of this Litigation, each Receiving Party, including Outside Counsel, will use commercially reasonable efforts to destroy all Protected Material produced by the other Parties in this action and destroy or redact any such Protected Material included in work product, pleadings, motion papers, legal memoranda,

33

**A1700**

correspondence, trial transcripts and trial exhibits admitted into evidence ("derivations") and all reasonably accessible copies thereof.

71.    With respect to any copy of Protected Material or derivation thereof that remains on back-up tapes and other disaster storage media of an authorized reviewer(s), the Receiving Party shall not be required to delete Protected Material to the extent the systems are overwritten in the normal course of business, are located in electronic files not reasonable accessible, or where located in archiving and back-up systems where deletion would require more than commercially reasonable efforts.  Neither the Receiving Party nor its consultants, experts, counsel or other party acting on its behalf shall make copies of any such information available to any person or otherwise retrieve, access, or use the material for any purpose other than backup or disaster recovery unless compelled by law and, in that event, only after thirty (30) days prior notice to Producing Party or such shorter period as required by court order, subpoena, or applicable law.

72.    Not later than sixty (60) days (as calculated by Fed. R. Civ. P. 6) after the final disposition of this Litigation, the Party receiving any Protected Material shall certify in writing that it, including its Outside Counsel, has complied with its obligations under this Paragraph.

## MISCELLANEOUS PROVISIONS

73.    This Protective Order is without prejudice to the right of any Party to seek further or additional protection of information for which the protection of this Protective Order is not believed by any Party to be adequate.  Nothing in this Protective Order shall be deemed to bar or preclude any Producing Party from seeking such additional protection, including, without limitation, an order that certain information may not be discovered at all.

74.    The entry of this Protective Order shall not be construed as a waiver of any right to object to the furnishing of information in response to discovery, and except as expressly provided, shall not relieve any party of the obligation of producing information in the course of discovery.

34

75.    If at any time Protected Material of a Producing Party is subpoenaed from a Receiving Party or is the subject of a discovery request directed to a Receiving Party in any proceeding before any court or arbitral, administrative, or legislative body, the person to whom the subpoena or other request is directed shall immediately give written and email notice pursuant to the provisions of Paragraph 75 and shall provide the Producing Party with an opportunity to object to the production of such materials. Such notification must include a copy of the subpoena or order. The Receiving Party also must immediately inform, in writing, the party who caused the subpoena or order to issue that some or all of the material covered by the subpoena or order is subject to this Protective Order. In addition, the Receiving Party must provide a copy of this Protective Order promptly to the party in the other action that caused the subpoena or order to issue. If the Producing Party does not seek a protective order within fifteen (15) days (as calculated by Fed. R. Civ. P. 6) of the date written notice is given, the Receiving Party to whom the subpoena or other request is directed may produce, on or after the date set for production in the subpoena or other request, but not prior to the end of the fifteen (15) day notice period, such material in response thereto, under a protective order with confidentiality provisions equal to or more restrictive than those of this Protective Order.

76.    Other Proceedings. By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated as CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY, pursuant to this Protective

35

Order shall promptly notify that party of the motion so that the party may have the opportunity to appear and be heard on whether that information should be disclosed.

77.    Outside Counsel shall have the right to exclude from depositions, other than the deponent and the reporter, any person who is not authorized under this Protective Order to receive Protected Material.  Such right of exclusion shall be applicable only during periods of examination or testimony directed to Protected Material.

78.    All notices during this Litigation required by this Protective Order are to be made by email to a Party's Outside Counsel (including, if available, to Outside Counsel's service distribution email address designated for this Litigation), and all notices subsequent to the termination of Litigation are to be made by email and U.S. mail to a Party's Outside Counsel and the office of the Party's general counsel, if known.  The date by which a Party receiving notice shall respond or otherwise take action shall be computed from the date of service as calculated by Fed. R. Civ. P. 6.  Any of the notice requirements herein may be waived in whole or in part, but only in writing signed by Outside Counsel for the Designating Party.

79.    Nothing in this Protective Order shall bar or otherwise restrict any Outside Counsel from rendering advice to his or her client with respect to this Litigation and, in the course thereof, relying in a general way upon his or her examination of Protected Material produced or exchanged in this Litigation: provided, however, that in rendering such advice and in otherwise communicating with a person not permitted access to Protected Material under this Protective Order, the Outside Counsel shall not disclose the contents of Protected Material produced by any other Party or Third Party.

80.    Execution of this Protective Order shall not constitute a waiver of the right of any Party to claim in this Litigation or otherwise that any document, communication, or any portion

36

thereof is privileged or otherwise non-discoverable, or is not admissible in evidence in this Litigation or any other proceeding.

81.    Each person who receives CONFIDENTIAL Discovery Material or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material agrees to be subject to the jurisdiction of this Court for the purpose of any proceedings relating to the performance under, compliance with, or violation of this Protective Order.

82.    This Order may be amended by the agreement of Outside Counsel for the Parties in the form of a written Stipulated Amended Protective Order signed by each Party's Outside Counsel and filed with the Court for approval.  The Court retains the right to allow disclosure of any subject or Protected Material covered by this Protective Order or to modify or vacate this Protective Order at any time in the interest of justice.

83.    Neither the final disposition of this Litigation nor the termination of employment of any person with access to any Protected Material shall relieve any individual from the obligation of maintaining the confidentiality of such information in accordance with this Protective Order. The Court shall retain jurisdiction to enforce the terms of the Protective Order after final disposition of this Litigation.

A1704

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ DRAFT
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis J. Murray
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
rjgarrett@paulweiss.com

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
cnyarady@paulweiss.com
ejmorgan@paulweiss.com
jbraly@paulweiss.com

*Attorneys for Plaintiffs*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ DRAFT

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302)   571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant*

38

**A1705**

SO ORDERED this ☐ day of
January 2025.

_____

**The Honorable Maryellen Noreika**
**United States District Judge**

39

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INCORPORATED,<br>    a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>    a Delaware corporation,<br><br>                 Plaintiffs,<br><br>    v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>    a U.K. corporation,<br><br>                 Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 24-490 (MN)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION TO BE BOUND BY PROTECTIVE ORDER

I, _____ [print or type full name], a citizen of

_____ [print or type country of citizenship], am a

_____[print or type present occupation or job description] of

_____ [print or type business name

and business address] and declare under penalty of perjury that I have read in its entirety and

understand the Protective Order that was issued by the United States District Court for the

District of Delaware on _____ [date] in the above-captioned Litigation.

I have received and carefully read the Protective Order in this Litigation and understand

its provisions.  Specifically, I understand that I am obligated, under order of the Court, to hold in

confidence and not to disclose the contents of anything provided to me in the above-captioned

case marked "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

ONLY" except as permitted by the Protective Order.  According to the restrictions of Paragraph

34 of the Protective Order, I will use Discovery Material, including CONFIDENTIAL Discovery

Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material, or

**A1707**

information derived therefrom solely for purposes relating to the above-captioned Litigation.  I will never use such Discovery Material or information derived therefrom, directly or indirectly, in competition with the Producing Party, including hardware or software development work or product development work intended for commercial purposes related to the information disclosed in the Protected Material, from the time of receipt of such material through and including the date that I cease to have access to any Protected Material, nor will I permit others to do so.

In addition to the foregoing, I understand that I must abide by all of the provisions of the Protective Order.  At the termination of this Litigation or any time requested by Outside Counsel for the Party by whom I am engaged, I will return or destroy all documents and other materials, including notes, computer data, summaries, abstracts, or any other materials containing or reflecting CONFIDENTIAL Discovery Material or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material that have come into my possession, and will return or destroy all documents or things I have prepared relating to or reflecting such information.

I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this Litigation.  I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Date:_____

Signature:_____

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>  a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>  a Delaware corporation, | ) <br> ) <br> ) <br> ) <br> ) | |
|          Plaintiffs, | ) <br> ) | |
|    v. | ) <br> ) | C.A. No. 24-490 (MN) |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>  a U.K. corporation, | ) <br> ) <br> ) | **JURY TRIAL DEMANDED** |
|          Defendant. | ) | |

**STIPULATED ORDER FOR DISCOVERY, INCLUDING
<u>DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI")</u>**

After conferring on these matters, the Parties hereby stipulate to the following protocol for electronic discovery and respectfully ask the Court to enter this Order.  Accordingly, and for good cause shown,

IT IS ORDERED that:

**1.      General Provisions**

a.      **Purpose**.  This Stipulated Order will govern discovery of electronically stored information ("ESI") in this case.  The term "ESI" carries its broadest meaning consistent with Fed. R. Civ. P. 26 and 34.  Without limitation, ESI includes word-processing documents, PowerPoint or other presentation documents, spreadsheets, electronic design files and flowcharts, PDF files, image files (*e.g.*, JPEG and TIFF), and e-mail.  Nothing in this Stipulated Order establishes any agreement as to either the temporal or subject matter scope of discovery.  Nothing in this Stipulated Order creates an obligation by any Party to produce ESI on back-up tapes or other long-term storage media that were created for use as a disaster recovery medium.  The Parties shall not be

obligated under this Stipulated Order to produce ESI that is no longer within their possession, custody, or control (*i.e.*, lost or deleted) as a result of the good-faith operation of an electronic information system or document retention policy.  This Stipulated Order may be modified for good cause.

        b.      **Cooperation**.  The Parties are aware of the importance the Court places on cooperation and hereby commit to cooperate in good faith throughout this matter consistent with this Court's Default Standard for Discovery and Fed. R. Civ. P. 26-36.  The parties expect to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36.  In the event that the parties are unable to agree on the parameters and/or timing of discovery, the following standards shall apply until further order of the Court, or the parties reach agreement.

        c.      **Proportionality**.  The Parties agree to use reasonable, good faith and proportional efforts to preserve, identify, and produce relevant information.[1]  This includes identifying appropriate limits to discovery, including limits on custodians, limits on discoverable data sources, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.  Requests for production and corresponding responses shall be reasonably targeted, clear, and as specific as practicable in compliance with Federal Rule of Civil Procedure 34(b)(1)(A).

        d.      **Preservation of Discoverable Information**.  A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control.

---

[1]   Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

2

**A1711**

(i)      Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to backup and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody, or control.

(ii)      Absent a showing of good cause by the requesting party, the categories of ESI identified in **Schedule A** attached hereto need not be preserved or searched for responsive information.

e.      **Privilege**.

(i)      The parties will continue to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements.  The privilege log should be provided within 30 days after substantial completion of production.

(ii)      With respect to information generated after the filing of the Complaint, parties are not required to include any such information in privilege logs.  Communications may be identified on a privilege log by category, rather than individually, if appropriate.

(iii)      Logging of Redactions for Privilege.  Partially privileged documents produced in redacted form may either be identified on a privilege log or the Producing Party shall provide a metadata field setting forth the nature of the privilege(s), as set forth herein.  A Receiving Party may request a log identifying information sufficient to justify the claim of privilege provided in the metadata.

(iv)      Contents of Privilege Log.  Consistent with Fed. R. Civ. P. 26(b)(5), the following information should be provided (as applicable) in the privilege log for each document or category of documents:

3

A1712

(1)     unique document identification numbers;

(2)     nature of privilege or protection claimed (e.g., Attorney-Client Privilege, Work-Product);

(3)     name of the authors (if known) – to the extent a document is an email or email chain, the name of the senders of the most recent email in the chain shall be identified;

(4)     date range of documents in each category (based on metadata, for electronic documents);

(5)     for emails, names of the recipient(s), including those in the TO, CC, and BCC fields;

(6)     general nature of the reasons for the privilege assertion that, without revealing the information itself that is privileged or protected, is sufficient to enable the requesting party to assess the validity of the privilege claim.

(v)     Challenges to Privilege Log.

(1)     The parties retain the right to request metadata for individual documents and emails, including lesser-included communications in email strings, if necessary to properly assess the privilege claim for any document included in a categorical privilege log.

(2)     If a requesting party believes in good faith that one or more items or categories in a producing party's privilege log should be produced and are inappropriately being withheld, then it shall raise the issue as to each log entry with the producing party in writing with

4

reasonably sufficient detail so that the producing party may understand the reasons for the requesting party's complaint.  Within 7 calendar days, the producing party shall respond in writing.  If the response does not satisfy the requesting party, then the parties shall meet and confer, and if the dispute as to the privileged nature of the material cannot be resolved, then the requesting party may seek relief from the Court as to the specific log entries raised with the producing party.  Nothing in this procedure to challenge a Party's privilege log modifies the producing party's burden to establish the privileged nature of the withheld document.

(vi)    Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

(vii)    The Parties have conferred on an appropriate non-waiver order under Fed. R. Evid. 502, as set forth in the proposed Protective Order.  Until a non-waiver order is entered, information that contains privileged matter or attorney work product shall be immediately returned if such information appears on its face to have been inadvertently produced or if notice is provided of inadvertent production.

(viii)    Nothing in this Order, including any production of documents under the ESI protocol set forth herein, shall constitute a waiver by any Party for any purpose.

**2.    Specific E-Discovery Issues**

a.    **On-site inspection of electronic media**.  Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

b.    **Search methodology**.

5

(i)    If the producing party elects to use search terms to locate potentially responsive ESI from a particular data source, it shall disclose the search terms so used and any exclusion criteria (including, but not limited to, date restrictions).  In analyzing possible search terms for use in locating potentially responsive ESI, the producing party may run test searches to analyze the suitability of possible search terms or exclusion criteria.  Absent a showing of good cause based on the size, complexity, and issues of this specific case, a requesting party may request no more than 10 additional search terms for testing by the producing party with respect to the ESI data source(s) on which the producing party elected to use search terms to locate potentially responsive ESI.  Within 14 days of receiving additional search terms from the requesting party, the producing party shall perform test searches for the requested search terms, disclose search terms results, and inform the requesting party whether it objects to any of the requested terms, including (but not limited to) search terms that return a disproportionate amount of non-responsive or immaterial ESI, or an unreasonably large number of results.  In such cases, the parties shall work together to modify or revise the search terms as appropriate.  If the parties cannot reach agreement regarding appropriate search terms, they shall submit their dispute to the Court in accordance with the Court's discovery dispute procedures.  Without waiting for a ruling on the disputed search terms, the producing party shall use the undisputed search terms, if any, to search ESI.  The identification of materials via agreed-upon searches shall not prevent the producing party from withholding such materials on the grounds that they are not responsive, or protected from disclosure by applicable privilege, immunity, or agreement between the parties.  Notwithstanding prior agreement on the search terms to be used for electronic searches, if a search term returns a disproportionate amount of non-responsive or immaterial ESI, or an unreasonably large number of results, the parties shall (at the producing party's request) meet and confer to discuss application

6

of negative search restrictions, and the party receiving production shall not unreasonably oppose further restrictions to filter a disproportionate amount of non-responsive or immaterial ESI, or an unreasonably large number of results.  After the parties come to agreement on reasonable terms, each producing party shall perform elusion testing of the ESI population that did not hit on search terms (the null set) by conducting a statistical sample (95% confidence level, +/- 2% margin of error) of the null set to confirm whether any responsive ESI was missed.  If a producing party finds that more than 10% of the null set is responsive, the producing party will add terms as necessary to identify responsive ESI found in the null set, then conduct additional null set sampling and adding of additional search terms until the proportion of missed responsive ESI is less than 10%, provided that the additional terms return a proportion of responsive or material documents greater than the non-responsive or immaterial documents also resulting from the additional terms (after calibrating the terms to get reasonable precision).

(ii)    Focused terms, rather than over-broad terms (*e.g.*, product and company names), shall be employed.  A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term.  A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word or are part of a conjunctive search term (*e.g.*, "computer" and "system" or "printer" or "mainframe").  Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the search.

(iii)    To the extent possible, the producing party shall locate potentially responsive ESI from (i) the non-custodial data sources identified in accordance with paragraph 3(b) of the Default Standard for Discovery; and (ii) the custodians identified in accordance with

7

paragraph 3(a) of the Default Standard for Discovery.  The Parties shall exchange lists of the custodians whose data will be searched, as well as the applicable date ranges.  The Parties agree to meet and confer on any additional data sources or custodians a requesting party identifies as having potentially relevant information.

      c.     **Technology Assisted Review (TAR)**.  No Party can compel another Party to use TAR or to produce documents without human review over the producing party's objection.  To the extent a producing party elects to use technology for prioritization or other workflows designed for review efficiency while still reviewing all of the documents within the review population, this use is not required to be disclosed to the requesting party.  On the other hand, a producing party that elects to use TAR to cull documents from the review population shall promptly inform the requesting party of its intent to do so.  The parties shall promptly meet and confer to agree on the information that must be disclosed regarding the producing party's proposed use of TAR, but at minimum, such disclosure shall set forth the tool it intends to employ, the validation methodology it intends to use, and exceptions to the application of TAR.

      d.     **Deduplication**.  The parties shall de-duplicate stand-alone documents or entire document families globally using MD5, or SHA-1 Hash value matching.  Deduplication shall not break apart families and shall be performed at a family level (for example, email attachments shall not be eliminated from the parent email).  Hard copy documents shall not be eliminated as duplicates of responsive ESI.  The producing party shall take reasonable steps to de-duplicate ESI on a family level globally (i.e., both within a particular custodian's files and across all custodians).[2] No Party shall be required to identify and/or eliminate electronic duplicates by manual review or

---

[2]    There may be non-custodial data sources that cannot be globally deduped or for which global deduplication is not appropriate.

some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above. In globally de-duped, incremental productions, there will be instances when production of documents from additional custodians will include documents previously produced. A Custodian Append overlay load file using the load file format described above shall be provided with updated AllCustodian and AllFilePaths fields; BegBates and EndBates fields may be used as the unique identifiers.

e. **Format**. ESI and non-ESI shall be produced to the requesting party as text searchable image files (e.g., TIFF). When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting; the metadata (as noted below); hidden comments, tracked changes, speaker notes, and columns, rows, and sheets; and, where applicable, the revision history. The parties shall produce their information in the following format: single-page TIFF greyscale format images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata and document breaks.

f. **Native files**. The only files that should be produced in native format are files not easily converted to image format, such as audio, video, and spreadsheet files (e.g., Excel). A party that receives a document produced in non-native format may make a reasonable request to receive the document in its native format. In lieu of a TIFF image version of each spreadsheet file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the native format version of each file. When redaction is necessary, a redacted TIFF image version shall be produced. Content that would otherwise be available in the native format, including hidden columns, rows, and sheets; comments; and "track changes" (and similar in-line editing) must be included in the

9

image version.  The parties reserve the right to request access to the native format versions of such files.

g.      **Databases and Structured Data Format**.  To the extent a response to discovery requires production of discoverable ESI contained in a database, the producing party may elect to produce the data in a report format if that format is reasonably usable or in a native format compatible with Microsoft Excel or Microsoft Access.

h.      **Paper Documents**.  In scanning paper documents, distinct documents should not be merged into a single record and single documents should not be split into multiple records.  If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes should be maintained as it existed when collected by the producing party and should be reflected in proper coding of the family fields set out in the metadata fields specified herein.  Parties may unitize their documents using either physical unitization (i.e., based on physical binding or organizational elements present with the original paper documents like staples, clips, and binder inserts) or logical unitization (i.e., a manual review of the paper to determine what logically constitutes a document like page numbers or headers).  If unitization cannot be reasonably maintained, the original unitization should be documented in the data load file or otherwise electronically tracked if reasonably possible.  The producing party should scan and produce folders, redwelds, binder-covers and other organizational structure.  Such materials should be produced as independent documents and be produced before the documents that were contained in these elements to the extent reasonably accomplishable by the above-addressed unitization, (e.g., the file folder should have a Production number immediately before the documents contained in the file folder).  The producing party will provide the name of the custodian who had possession of the document when it was collected.  A custodian can consist of

10

the name of an employee or other person, a department, or an archive storage location. The producing party will create and produce optical character recognition (OCR) of paper documents.

i.      **Color**. The parties will accommodate reasonable and proportional requests made in good faith for the production of specific color images originally produced in greyscale TIFF format to the extent available and where reasonably necessary to decipher the complete meaning, context, or content of the documents on a case by case basis.

j.      **Redactions**. The producing party may redact, from any TIFF image, metadata field, and/or native file, information that is protected from disclosure by **[Arm's Proposal:** any applicable privilege or immunity law or regulation, including but not limited to information protected by**]** the attorney-client privilege, work product doctrine, joint defense work product doctrine, individually identifiable health information, or personal identifying information. **[Arm's Proposal:** The producing party may also redact Designated Confidential Information that is subject to a confidentiality agreement with a Third Party (as defined in the Protective Order) and for which a Third Party has requested redaction or is subject to a motion for protective order.**]** Each redaction shall be clearly labeled and include the reason for the redaction, such as "Redacted-Privileged," "Redacted-Private," **[Arm's Proposal:** or "Redacted Third Party"**]** as appropriate. The producing party shall preserve an unredacted version of the document. Where a document contains both protected and non-protected responsive content, the producing party shall redact the protected material and produce the remainder of the document as redacted. The parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this paragraph. No party shall be required to produce a redaction log provided that the reason for the redaction appears on the redaction label (e.g., "Privileged," **[Arm's Proposal:** "Private"**]**). Redacted documents

11

may have certain metadata fields withheld from production.  The parties shall cooperate to create a list of metadata fields which may be produced for these documents.

k.      **Non-English language documents**.  Documents shall be produced in their original language.  Where a requested document exists in a foreign language and the producing party also has a reasonably available English-language version of the document that it prepared for non-litigation purposes prior to the filing of this lawsuit, the producing party shall produce both the original document and any such English-language versions.  In addition, if the producing party has a reasonably available certified translation of a foreign-language document that is being produced (whether or not the translation is prepared for purposes of litigation), the producing party shall produce both the original document and the certified translation.

l.      **Instant Messages**.  For instant message and chat application data stored in company enterprise systems, the Parties shall produce messages in a 24-hour period, as opposed to a custom time period or producing individual messages.  This does not limit the Parties from redacting information that is protected from disclosure within the 24-hour period.

m.      **Email threads**.  The parties are obligated to produce only the most inclusive part of an email thread (for example, only the last-in-time email in an email chain comprised of 15 emails), with the exception of any individual emails in an email thread with unique attachments, which should also be produced.

n.      **Document Family**.  All document family relationships shall be produced together and children files should follow parent files in sequential Bates number order.  This does not impose any requirement on parties to associate and produce together hyperlinked documents.

o.      **Embedded Files**.  The parties will not review or produce embedded images or documents outside the document in which the file is embedded (e.g., .vcf files embedded in emails,

12

**A1721**

.xlsx files embedded in PowerPoint presentations).  The parties will accommodate reasonable and proportional requests made in good faith for the production of embedded files (non-images), on a case by case basis.

p.      **Metadata fields**.  The parties are obligated to provide only the following metadata for all ESI produced, to the extent such metadata exists: All Custodian, File Path,[3] Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Date Accessed, Time Accessed, Meeting Start Date, Meeting Start Time, Meeting End Date, Meeting End Time, Message ID, Importance, Sensitivity, Filename, Author, Date Created, Time Created, Date Saved, Time Saved, MD5 Hash, File Size, Title, File Extension, File Size, Confidentiality Designation, Redacted (indicating whether document is redacted), Redaction Reason (nature of the privilege), Hidden Content, Text Path, Native Path, Bates Number Begin, Bates Number End, Attachment Count, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

q.      **Encrypted or Password Protected Files**.  The parties will make reasonable efforts to ensure that all Documents they produce are decrypted, and if possible, will decrypt any encrypted documents on the receiving party's request.

r.      **Production Media**.  The parties will make reasonable efforts to ensure that any productions made are free from malware.  Any media on which Documents are produced may be encrypted by the producing party.  In such cases, the producing party shall transmit the encryption key or password to the requesting party under separate cover upon service of the encrypted media.

---

[3]   File path metadata created in the course of collecting files for purposes of litigation is not required to be produced if such production would reveal privileged information.

13

**SCHEDULE A**

1.    Deleted, slack, fragmented, or other data only accessible by forensics.

2.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.    On-line access data such as temporary internet files, history, cache, cookies, and the like.

4.    Data in metadata fields that are frequently updated automatically, such as last opened dates.

5.    Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6.    Voice messages and voicemails.

7.    Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.  Instant messages that are retained on corporate servers dedicated to instant messaging are not included here.

8.    Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9.    Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10.    Text messages, instant messages, chat application data, and other data stored on mobile devices.

11.    Logs of calls made from mobile devices.

12.    Server, system, or network logs.

13.    Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

14.    Data remaining from systems no longer in use that is unintelligible on the systems in use.

15. Dynamic fields of databases or log files that are not retained in the usual course of business.

16. Automatically saved versions of documents and emails as temporary files.

17. Personal computers and personal e-mail not regularly used for business activities.

18. Social media sites.

19. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and disposition of computer equipment.

20. Files that do not store user-created content during ordinary use such as structural files, operating system files, application source code, configuration, and other similar application files.

21. Files included on the National Institute of Standards and Technology (NIST) List (https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl/nsrl-download).

22. Other forms of ESI the preservation of which requires extraordinary affirmative measures that are not utilized in the ordinary course of business. Data stored on photocopiers, scanners, and fax machines.

23. Data remaining from systems no longer in use that is unintelligible on the systems in use.

**A1724**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ DRAFT*
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis J. Murray
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
rjgarrett@paulweiss.com

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
cnyarady@paulweiss.com
ejmorgan@paulweiss.com
jbraly@paulweiss.com

*Attorneys for Plaintiffs*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ DRAFT*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302)  571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant*

**A1725**

SO ORDERED this ⬛ day of
January 2025.

_____

**The Honorable Maryellen Noreika**
**United States District Judge**

# Exhibit 2

████████████████████████████

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation; and
QUALCOMM TECHNOLOGIES, INC.,
  a Delaware corporation,

               Plaintiffs,

       v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
  a U.K. corporation,

               Defendant.

) 
) 
) 
) 
) 
)   C.A. No. 24-490 (MN) (SRF)
) 
) 
) 
) 
) 
) 
) 
) 

**QUALCOMM'S LETTER TO THE HONORABLE SHERRY R. FALLON IN
RESPONSE TO ARM'S LETTER REGARDING DISCOVERY DISPUTE (D.I. 68)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

March 14, 2025

**A1728**

Dear Judge Fallon:

Qualcomm objects to Arm's proposed inclusion in the ESI and Protective Orders (collectively, the "Orders," D.I. 68 Exs. D, E), of provisions permitting Arm to redact third-party information preemptively, absent a separate order from the Court authorizing those specific redactions. A third party wishing to protect confidential information has the burden of establishing good cause for doing so under Rule 26. Arm offers no compelling reason why the Court should deviate from this standard procedure and permit Arm to redact information purportedly for third parties who have not made the required showing. Moreover, given the importance of the third-party documents, the expedited case schedule, and Arm's conduct involving redactions in prior litigation between the parties, Arm's proposal would almost certainly result in delays while the parties litigate over these redactions.

## I.    Background

Arm develops and licenses technology for CPUs compatible with its instruction-set architecture ("ISA")—instructions that allow hardware to interact with Arm-compliant software. D.I. 36 ¶ 35. Arm's business model revolves around two types of licenses: Architecture License Agreements ("ALAs") and Technology License Agreements ("TLAs"). A TLA grants the licensee the right to use Arm-designed CPUs. *Id.* ¶ 40. An ALA grants the licensee a right to commercialize products with a custom CPU it designs. *Id.* ¶ 33. Qualcomm develops microprocessors and has both an ALA and a TLA. *Id.* ¶ 3. This case concerns Arm's breach of the ALA and related misconduct.[1]

In 2022, Arm sued Qualcomm and Nuvia—a company Qualcomm acquired that had its own ALA with Arm—alleging that Qualcomm and Nuvia breached the Nuvia ALA by not destroying certain technology after Arm terminated that ALA. *Arm Ltd. Inc.* v. *Qualcomm et al.*, C.A. No. 22-1146 (MN) (the "Prior Litigation"), D.I. 1.[2] In December 2024, a jury returned a verdict for Qualcomm, and also found that Qualcomm's CPUs are licensed under Qualcomm's ALA, but did not reach a verdict on Nuvia's liability. No. 22-1146, D.I. 572. Post-trial motions are pending.

In this case, Qualcomm asserts that Arm breached the Qualcomm ALA by failing to provide certain deliverables that Arm is required to give to Qualcomm. D.I. 36 ¶¶ 125–32. These include materials to configure and update Arm test kits Qualcomm uses to ensure that its custom CPUs are compliant with the Arm ISA. D.I. 36 ¶ 67. The deliverables that Arm failed to provide to Qualcomm are information that Arm provides to other Arm partners under their own respective ALAs. Qualcomm has asserted other claims based on this breach and other misconduct by Arm designed to hurt Qualcomm's business. *Id.* ¶¶ 133–59.

The parties are unable to agree on the Orders in this case. Arm seeks to unilaterally redact third-party information contained in responsive documents that Arm claims is subject to confidentiality agreements with third parties where the third party has either requested that Arm

---

[1] Qualcomm will move to add claims regarding Arm's breach of the Qualcomm TLA.

[2] Docket entries from the Prior Litigation are cited as "No. 22-1146, D.I. [x]."

redact or moved for a protective order.  D.I. 68, Ex. D ¶ 52; D.I. 68, Ex. E  ¶ 2(j).[3]  Qualcomm objects to these additions in the Orders.[4]

## II.     Arm should not be permitted to preemptively redact documents

A third party wanting its information redacted must show why the requested redactions are appropriate.  Arm should not be permitted to redact third-party information contained in responsive documents in the first instance, forcing Qualcomm to move to have the documents unredacted.

*First*, Arm should not be able to circumvent the well-established process for protection of third-party confidential information.  Absent agreement, a third party that wishes to avoid disclosure of its confidential information is free to ask the Court for a protective order.  Indeed, the parties have agreed on such a procedure.  D.I. 68, Ex. D ¶¶ 51–52.  To warrant a protective order, a third party must satisfy the Third Circuit's rigorous "good cause" standard.  Specifically, the third party must show "a particular need for protection" from a "significant" harm; "[b]road allegations of harm" that are not substantiated "by specific examples or articulated reasoning" will not suffice.  *Cipollone* v. *Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *Signode Indus. Grp, LLC v. PolyChem, LLC,* C.A. No. 22-519, D.I. 94 at 1-2 (D. Del. Aug. 10, 2022) (noting "specificity" requirement for granting protective order) (Ex. 4).  Given that the agreed-upon provisions of the Protective Order permit Arm to designate sensitive information as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," thus limiting access to outside counsel of record and experts while prohibiting access to anyone else (including in-house counsel), this is a high burden.  The Court should not underestimate the strength of this protection.  *See* Ex. 1 at 44:14–23 (Judge Noreika noting that it was "quite an accusation" to suggest that this designation wouldn't sufficiently protect sensitive information); *Procter & Gamble Co.* v. *Boyle-Midway, Inc.*, Civ. No. 82-671, 1983 WL 830080, at *1 (D. Del. Apr. 11, 1983) ("The Court simply will not indulge in the speculation that attorneys will violate a protective order issued by a court.").

Arm's suggestion that its proposal is necessary to avoid inadvertent disclosure of confidential third-party information is wrong and irrelevant.  D.I. 68 at 1–2.  First, Qualcomm's approach does nothing to undermine a third party's ability to seek protection of its confidential information by way of a protective order.  Each of the cases Arm cites is either consistent with Qualcomm's approach or inapposite.[5]  Second, even assuming that there is some risk of inadvertent disclosure, the Court will have to weigh whether this hypothetical risk of inadvertent disclosure outweighs Qualcomm's need for unredacted third-party documents (as described below).  In any event, Arm should not be permitted to circumvent a third party's burden to justify its need for confidentiality by preemptively redacting information merely because a third party has requested

---

[3] Arm's letter describes its proposal as limited to "documents newly-produced in response to discovery requests in this matter."  D.I. 68 at 1.  To be clear, as described below, Qualcomm has submitted RFPs seeking unredacted versions of documents produced in the Prior Litigation, and Arm's proposal on the Orders would apply to those documents.

[4] Qualcomm also objects to Arm's language permitting redaction of information protected by "any applicable privilege or immunity law or regulation."  D.I. 68, Ex. E  ¶ 2(j).  Arm has not identified what this language applies to beyond what is already covered by the parties' agreed upon language.

[5] *Trellian*, *Education Logistics*, and *Mannington Mills,* involved motions  brought by or against a third party.  *JJ Plank* and *Arconic* involved discovery requests that the court found overbroad.

it. *See Pansy* v. *Borough of Stroudsburg*, 23 F.3d 772, 786–87 (3d Cir. 1994) ("The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order."). Especially where Arm has offered only "[b]road allegations of harm, unsubstantiated by specific examples." *Cipollone*, 785 F.2d at 1121.

*Second*, given the distinct claims at issue in this case, Arm's proposal threatens to disrupt the highly expedited case schedule Judge Noreika has ordered.[6] The third-party information that Arm seeks to redact is likely to be at the center of this case. Qualcomm has requested documents regarding information (including the configuration and update materials for Arm verification test kits) and other information that Arm has improperly withheld from Qualcomm but that Qualcomm believes Arm provided to other Arm ALA licensees. Ex. 2 at RFP Nos. 4, 26, 28, 32, 34. In order to adequately prosecute its claims, Qualcomm will need to learn both what deliverables and information were provided to third parties and what the terms of the third-party ALAs were. For instance, to show that Arm improperly withheld deliverables from Qualcomm that it provided to another licensee, Qualcomm needs to know whether Arm's ALA with the other licensee included deliverables that are different from those Arm committed to providing Qualcomm. If Arm's ALAs with other licensees are instead materially similar to the Qualcomm ALA and Arm has nevertheless withheld materials from Qualcomm, that information goes to the heart of the complaint. In other words, production of third-party information is material to Qualcomm's claims. In light of the expedited schedule and the focus on third-party information in this case, it is essential that the parties conduct discovery expeditiously and minimize the number of disputes that will threaten the schedule.

Arm's conduct in the Prior Litigation shows that its preemptive-redaction proposal will interfere with the parties' ability to conduct discovery efficiently. There, Qualcomm sought production of Arm's ALAs with third parties, which Arm ultimately produced with substantial redactions of relevant information, and in some cases not at all. The parties then engaged in a drawn-out process to resolve a dispute over these ALAs, which Qualcomm is again seeking production of (in unredacted form) here. The parties engaged in several meet and confers to no avail, forcing Qualcomm to move to compel the redacted information. No. 22-1146, D.I. 80. Judge Hatcher ordered Arm to produce a redaction log and to meet and confer with Qualcomm to try to resolve the dispute. No. 22-1146, D.I. 89, 90, 124 at 49:22–51:9, 233 at 3. After *eight* meet and confers, Qualcomm was forced to move to un-redact a second time. No. 22-1146, D.I. 233. After Judge Hatcher denied Qualcomm's motion—because she could not evaluate the relevance of the ALAs—Qualcomm filed an objection that Judge Noreika overruled without prejudice, noting she was overruling the objection "for right now" because she could not "make a determination" as to relevance based on Arm's theories at the time, but stating that Qualcomm could raise the issue at a later date. Ex. 1 62:10–63:15.[7] A few months later, after it became crystal clear that these redacted ALAs were critical for Qualcomm to respond to theories Arm intended to

---

[6] Judge Noreika has ordered document production to be substantially complete by May 1, 2025 and fact discovery to be completed by July 11, 2025. D.I. 44 ¶ 7.

[7] Judge Noreika also indicated that she did not think one of the third parties (Apple) satisfied the Third Circuit's standard for a protective order. Ex. 1 47:21–48:7.

3

**A1731**

rely on, Judge Noreika *precluded* Arm from using certain evidence and advancing certain theories in light of its refusal to produce the unredacted ALAs.  No. 22-1146, D.I. 530 40:7–18.[8]

Moreover, separate from that ALA redaction dispute, Qualcomm also had to move the Court to compel additional information regarding hundreds of redactions Arm made to other documents, purportedly because they contained non-responsive material.  Upon review of those redactions, Judge Noreika stated that certain Arm redactions were "sloppy, inconsistent, [] wrong," "ridiculous," and "garbage," Ex. 3 at 26:23–27:19, 28:2–11, and told Arm that it "should be embarrassed" that Qualcomm had to bring the dispute to the Court's attention, *id*. at 28:18–19. Arm then produced unredacted versions of all but one document, which was the subject of a redaction request by a third party.  D.I. 487.  Allowing Arm to redact in this case at the mere request of a third party is likely to lead to the same over-redaction of information far beyond what a court would grant applying the Third Circuit legal standard.  Whether a disputed redaction should be permitted should be a decision reserved for the Court and only upon a showing by the requesting third party that it has met its burden to show that a redaction, as opposed to some other protective measure such as production on an outside-counsel-eyes only basis, is necessary.

Qualcomm's concern is not hypothetical.  Given the importance of third-party documents in this case, Qualcomm seeks production of third-party ALAs and TLAs in unredacted form. Adopting Arm's proposal will almost certainly invite lengthy disputes, as before.  Arm's suggestion that Qualcomm's proposal will require each third-party licensee to seek a protective order is belied by the Prior Litigation.  There, only two third parties moved for protective orders. D.I. 68 at 3.  And one of those (Ampere) only moved to maintain a small subset of the redactions Arm made initially. No. 22-1146, D.I. 93 at 3; No. 22-1146, D.I. 240 at 3.  Thus, contrary to Arm's speculation that the Court will be inundated with motions, third parties will reasonably weigh whether they need to seek a protective order or whether existing confidentiality protocols— including designations limiting access to outside counsel—are sufficient.  If any third parties are prepared to move for protective orders, Qualcomm will, of course, meet and confer in advance and, if necessary, respond to any such motions.  In any event, the hypothetical fear of a flood of motions for protective orders offers no basis to alleviate the third party's burden to establish that redactions are appropriate.  *See Cipollone*, 785 F.2d at 1121; *Pansy*, 23 F.3d at 786–87.

Finally, Arm's argument that its proposal is consistent with the Prior Litigation weighs in Qualcomm's favor.  First, the claims in this case are uniquely focused on third-party documents such that any confidentiality concerns will likely be substantially outweighed by the relevance of the third-party documents.  Second, the Court in the Prior Litigation ultimately agreed with Qualcomm, not Arm, that documents (including the ALAs) should not have been redacted.  Third, the case schedule is much faster here, with little time for lengthy disputes.

In sum, Arm's proposal should be rejected.  The usual method for protecting information— party negotiation followed by a prompt protective order motion by the third party to resolve any disputes—is the appropriate procedure.  If a dispute cannot be resolved by the parties, it should be left to the Court, and not to Arm and self-interested third parties.

---

[8] Arm's letter omits these latter details, improperly suggesting that Judge Noreika ultimately sided with Arm in this lengthy redaction dispute.  D.I. 68 at 2–3.  Not so.

4

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

JY:lo
Attachments
cc:    Clerk of the Court (via hand delivery w/ attachments)
       All Counsel of Record (via CM/ECF and e-mail w/ attachments)

5

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ARM LTD.,                        )
a U.K. corporation,              )
                                 )
            Plaintiff,           )
                                 ) C.A. No. 22-1146(MN)
    v.                           )
                                 )
QUALCOMM, INC.,                  )
a Delaware corporation,          )
et al.,                          )
                                 )
            Defendants.          )


                    Thursday, March 7, 2024
                    2:13 p.m.
                    Oral Argument


                    844 King Street
                    Wilmington, Delaware


BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge


APPEARANCES:

            YOUNG CONAWAY STARGATT & TAYLOR
            BY:  ANNE SHEA GAZA, ESQ.
            BY:  ROBERT M. VRANA, ESQ.

            -and-

            MORRISON FOERSTER, LLP
            BY:  KYLE W.K. MOONEY, ESQ.
            BY:  NICHOLAS R. FUNG, ESQ.
            BY:  DANIEL MACKNIDES, ESQ.

                    Counsel for the Plaintiff


APPEARANCES CONTINUED:

            MORRIS NICHOLS ARSHT & TUNNELL LLP
            BY:  JACK BLUMENFELD, ESQ.

            -and-

            PAUL WEISS
            BY:  KAREN L. DUNN, ESQ.
            BY:  ERIN MORGAN, ESQ.

                    Counsel for the Defendants

            FISH & RICHARDSON
            BY:  NITIKA GUPTA FIORELLA, ESQ.

            -and-

            WALKER STEVENS CANNOM, LLP
            BY:  HANNAH L. CANNOM, ESQ.

                    Counsel for Apple, Inc.


            WILSON SONSINI GOODRICH & ROSATI
            BY:  BRAD SORRELS, ESQ.

                    Counsel for Ampere Computing


            _ _ _ _ _ _ _ _ _ _ _ _


THE COURT:  All right.  Good afternoon everyone. Please be seated.

Ms. Gaza.

MS. GAZA:  Good afternoon, Your Honor.  Anne Gaza on behalf of plaintiff, ARM.  I'm joined today by Kyle Mooney and Nicholas Fung of Morrison & Foerster as well as my colleague, Robert Vrana and Daniel Macknides.

MR. BLUMENFELD:  Good afternoon, Your Honor. Jack Blumenfeld from Morris Nichols for the Qualcomm defendants.  And with me is Karen Dunn and Erin Morgan from Paul Weiss.

THE COURT:  Great.

MS. GAZA:  Your Honor, if I may, I'm sorry, I meant to mention also that third-party counsel for Ampere and Apple are in attendance as well if you would like their introduction.

THE COURT:  Sure.  You guys can give me your input if you need to.

All right.  Let's start with -- so we have a couple of objections and we have the trial date issue.  I saw there was another order from Judge Hatcher yesterday. Am I going to be getting objections for that, anyone?

MR. MOONEY:  No, Your Honor.

THE COURT:  I didn't get a yes or no.  And when you speak, could you stand.

MS. DUNN:  Not from us, Your Honor.

MR. MOONEY:  No, Your Honor.

THE COURT:  Okay.  Great.  All right.

Okay.  Let's start with Mr., is it Son or Son?

MS. DUNN:  Yes, Your Honor.  Karen Dunn for Qualcomm.

THE COURT:  So I need you to really focus me on the standard here because I'm not looking at this de novo, and so I need you to focus on why this was clearly erroneous or contrary to law.

MS. DUNN:  I'm happy to do that, Your Honor.  We have slides as to this argument that we can hand up if it pleases the Court.  Thank you.

THE COURT:  Let me ask you this before I start. Is there really a dispute as to whether he told Samsung or others that Qualcomm's license was going to expire?  Is that in dispute?

MS. DUNN:  There is a dispute about his statements.  We know he -- there is no dispute that he made statements.  I don't know, perhaps counsel for Arm can tell us whether they dispute that he said the license would expire.  I don't think that's in the record.

THE COURT:  Why don't you guys talk about that because I need to understand what there is a dispute about so I can decide if he has superior or unique knowledge.  If nobody disputes what you say he said, then I'm not sure I care as much.  Why don't you guys talk about it.  I can't believe you haven't done that already.

(Discussion off the record.)

MR. MOONEY:  Your Honor, Rene Haas, the current

41

change something, only the terms that are non-redacted.

MR. MOONEY: Yes, Your Honor is right that we as you pointed out to counsel at Qualcomm, having redacted that information we are not going to be able to rely what is beneath those redactions to make that argument, that's right.

THE COURT: You're not going to be able to argue that you're changing terms or that you will change terms that have been redacted in any way. So, if, for example, you can't say whatever is in appendix A, you can't say well -- annex A, we're not going to change what we do in annex A because you never disclosed what you did previously so you can't say how you're going to change it, right?

MR. MOONEY: I believe Your Honor would not let us get away with that. We would not be able to rely on any redacted information.

THE COURT: And your expert hasn't given any specifics so you can't come in later with some specifics, is that right?

MR. MOONEY: Well, the expert, yes, Your Honor, I didn't see in looking at Mr. Schoettelkotte's expert report, the passages that we were pointed to, any statements about changes being made to ALAs, any reliance on any redacted material, in fact, Mr. Schoettelkotte had the very same redacted documents that Qualcomm's experts had. I have

42

heard for the first time today a complaint that our expert spoke to some ARM employees. I have not heard that before in this case --

THE COURT: Well, I saw something in the papers saying they didn't give them the licenses or maybe they gave them redacted versions of licenses, but I did see something saying he's not opining based on the licenses, he's opining based on something else.

MR. MOONEY: Our expert, both Mr. Schoettelkotte and others did have conversations with some ARM employees in connection with preparing the report, just as Qualcomm's expert spoke to Qualcomm employees. I would like to say though, that, Your Honor just heard that Qualcomm did not have a chance to have conversations with the people that Mr. Schoettelkotte spoke to. They did. They deposed these people and I was present at those depositions.

THE COURT: And did this come before or after those depositions?

MR. MOONEY: This expert report was served a few weeks after the fact depositions.

THE COURT: So they didn't have a chance to ask because they didn't know that Mr. Abbey and Mr. Williamson had discussions with Mr. Schoettelkotte, right?

MR. MOONEY: I would not agree with that. They knew what -- they knew the sphere of responsibility that

43

those employees had, we had produced 1.5 million pages of documents --

THE COURT: They had no idea, when they took those depositions, they couldn't say, Mr. Abbey, what did you discuss with the expert?

MR. MOONEY: I agree with that, Your Honor.

THE COURT: Okay.

MR. MOONEY: But Your Honor, that's not unlike --

THE COURT: I think that's what Mr. Blumenfeld was getting at, he's saying I can't have the same discussions with these folks and ask, you know, have my expert ask them questions because fact discovery is over.

MR. MOONEY: It is true, Your Honor --

THE COURT: He can't ask about what they discussed with the expert.

MR. MOONEY: It is true that in this case Qualcomm's -- if I'm following this, Qualcomm's counsel was not able to depose ARM employees after ARM's expert put in reports, that's true. That's true in every case. What is also true in this case --

THE COURT: Yeah, but what's not true in every case is every -- my gosh, we have from footnote 196 through at least -- through at least footnote 219, there is nothing else other than discussion, or maybe a deposition.

44

MR. MOONEY: I agree with Your Honor that Mr. Schoettelkotte in particular had many discussions with our employees and this is a heavily footnoted report. Those are not the only sources Mr. Schoettelkotte relied on by any means.

THE COURT: It is the only source in what I have.

MR. MOONEY: It is the only source in the four pages that Your Honor has been handed from the report, Mr. Schoettelkotte has a schedule of information that was relied on that includes many thousands of documents in the case, many thousands of transcripts and exhibits in addition --

THE COURT: So let's say -- and I'll give the third parties a chance to weigh in on this, too, tell me about the confidentiality. We have a protective order, we have an outside counsel only provision. To say that this stuff is at risk of all of the comments were sort of generic saying this is going to give Qualcomm a competitive advantage. The way it gives Qualcomm a competitive advantage is if the information is given to outside counsel and outside counsel gives it to Qualcomm, which is quite an accusation.

So why is the protective order not sufficient?

MR. MOONEY: Well, as Your Honor knows, the law

A1736

45

is clear that the protective order isn't sufficient to require parties to produce information that's not relevant in the case.

THE COURT: Let's say I'm not convinced that it's not relevant.

MR. MOONEY: Your Honor is right, we are not suggesting that Qualcomm outside counsel is going to deliberately disclose this information to anybody, that's not the concern. The concern is that this is highly confidential competitive information that goes to the very core of our business and to the very core of our competitor's business and this is information that could be misused by our competitors and our customers. And that any risk that this information is inadvertently specifically or generally used or disclosed by any counsel or anyone else involved in the case who might have access to this information under the protective order, which certainly isn't just counsel sitting at the table is enough of a risk that we worked very carefully with our customers, Apple here, to remove as many --

THE COURT: You haven't worked at all with anyone on the 2023 Apple agreement, that's just a big fat no, right? You don't even have the first page of it that says agreement.

MR. MOONEY: It is true that the Apple agreement

46

2023 has not been produced and on that, I would let Apple speak further.

If you have any other further questions for me, I'm happy to address them.

THE COURT: All right. Apple.

MS. CANNOM: Thank you, Your Honor. Hannah Cannom on behalf of Apple, Inc. A couple of points that I think we need to look at. First of all, it's from Judge Hatcher's order where she says that balancing the minimal relevance when combined with the harm of disclosure --

THE COURT: I might think it's a little bit more relevant than she does.

MS. CANNOM: What she then goes on to say it will necessarily need to generate generalized information from the ARM clients. This is different than a source code situation where the source code is in a room and what we're worried about is inadvertent disclosure of large swaths of code. Here we have information that once it's heard --

THE COURT: Tell me what exactly that means, necessarily -- I don't know why that is, so why is it different than you have source code and you say we can't make out an infringement case because, you know, the source code doesn't have this, or we can make out an infringement case so that, therefore, they are, you know, confirming that the source code shows that something works. Why -- like,

47

why is that different from this? Why do you think that if someone, outside counsel for Qualcomm gets it, like what is -- give me an example, what necessarily would they have to disclose that's so -- that's so secret that it would be harmful.

MS. CANNOM: Right. So speaking generally about the termination provision, if they were entitled to see the termination provision, then they would have to tell their client whether the termination provision was similar or different and that's why that mattered to the specific issue here.

There are also other, you know, certain licensing terms --

THE COURT: Well, I mean the termination provision, that wasn't even something -- that was redacted in the ███████ one, so I'm not sure why I understand that's so secretive.

MS. CANNOM: And Apple's position is that everything that's within the 2023 ALA is very highly protected even within Apple.

THE COURT: That assumes a bit much to me. You're telling me the very first words that say this ALA between Apple and ARM, that's super secret. Come on, right then you're losing a little bit of credibility because you're not even -- I mean, that's not -- let's put it this

48

way. The Third Circuit test for confidentiality, you didn't meet it when you're telling me that. I'm supposed to go line by line in things according to the Third Circuit. So you just saying there is an agreement, but you can't even see who signed it tells me right then that you're being overly inclusive and you're not encouraging me to follow the Third Circuit's guidance on confidentiality.

MS. CANNOM: Understood, Your Honor. Your Honor, and if you were to order that Apple would have to produce a redacted version in line with the other ALAs, that would be certainly something we would do. Our concern here, however, is that the clearly defined serious injury that Apple has vis-a-vis its competitor and more broadly --

THE COURT: I'm still not getting it. You're telling me it's so harmful to you if the example you gave me, the termination provisions were disclosed, yet other competitors, termination provisions are disclosed, and maybe there is something super secret in Apple's termination provision, but the fact that it sort of undermines your argument when other competitors are like okay, you can't see how much we pay, but you can see what happens if we terminate or how we terminate.

MS. CANNOM: To be clear, there are multiple other ALAs that have been produced in redacted material here. What we're concerned is the most recent one which has

61

Your Honor.

THE COURT: Did you ever tell me that? Is that in the scheduling order?

MR. BLUMENFELD: No, they demanded a jury.

THE COURT: Because I have a jury trial. When did you tell me it was going to be a bench trial?

MR. MOONEY: I have to look back, Your Honor. I don't have that at my fingertips, I'm sorry.

THE COURT: Do you think you ever did?

MR. MOONEY: I'm taking a look, Your Honor. I don't know the answer to that. It could have been a delay in the products being released has caused --

THE COURT: So the answer is no. But you're going -- are you asking for a jury?

MR. BLUMENFELD: I expect that we are going to ask for a jury on our counterclaims. We always thought until about two days ago that this was going to be a jury trial and then ARM's lawyers said something before Judge Hatcher the other day suggesting that they didn't see it that way.

MR. MOONEY: Our understanding, Your Honor, that the only claim in the case right now --

THE COURT: I'm just looking at the scheduling order that you guys proposed to me which talks about a five-day jury trial. So if you changed your mind, it would

62

have been nice to have a little bit of a notice, especially when you know we're talking about trial dates.

MR. BLUMENFELD: And I'm not sure, Your Honor, that they're permitted to withdraw a jury demand without our consent at this point. It's not something we've ever discussed.

MR. MOONEY: I understand that the bench trial did come up before Judge Hatcher, Your Honor. I don't know how long ago that was.

THE COURT: That's really not relevant to me. So I am going to overrule the objections for right now. I think we need to understand -- assuming this were to go to a jury trial, I think I could address -- I could allow you to raise this again once I understand the arguments being made as to irreparable harm.

If it's going to be a bench trial, then I need to think about it a little bit more. And it may be that we just phase the bench trial so that I can understand what the arguments are. Because my problem is right now I can see relevance, but I can't make a determination that the relevance is enough to overcome some valid -- I think Apple's 2023 agreement is not credible because saying you can't produce it at all is just not even trying. But I can't say that they don't have valid concerns on the confidentiality aspects. And I'm sorry, I forgot the other

63

company.

MR. SORRELS: Ampere, Your Honor.

THE COURT: Ampere, I think those concerns were -- at least they were specific concerns.

So I am not ready to argue -- I'm not ready to rule that the relevance, that Judge Hatcher got it clearly wrong when she weighed the relevance and the harm.

But I am also not clear that there is going to be arguments made where it would be unfair for the defendant to be able to defend itself.

So I am going to make that ruling without prejudice. If it turns out that you make a specific showing of what you would need to respond to something or to make an argument, you can come back and just remind us. And that it should not go to Judge Hatcher, that it should come to me.

MR. BLUMENFELD: Thank you, Your Honor.

THE COURT: Okay. And you guys need to talk about the trial and can you guys do that and in the next two weeks get back to us on your positions as to jury, bench and whether they can withdraw it at this point?

Okay. So now we have to talk about the trial schedule. I don't remember when the trial was scheduled. September.

MS. DUNN: I believe September 23rd.

THE COURT: There it is. September 23rd. Okay.

64

So when were you looking to have it moved to?

MS. DUNN: Your Honor, the date that we proposed is a date that we believe was open on Your Honor's calendar, December 9th. We did call the Court some time ago for that date, so we don't know if your calendar is still available.

THE COURT: It's not.

MS. DUNN: We certainly could do it any time after that.

THE COURT: I have December 2nd, the week of December 2nd.

MS. DUNN: That date I believe would work for us. I don't know about my friends on the other side.

MR. MOONEY: Your Honor, we do have availability the week of December 2nd if Your Honor decides to delay the trial. Our position is that counsel has not shown good cause to extend the schedule or change the trial date, particularly in light of the ruling coming out Monday, and that the trial date should remain in September.

THE COURT: I haven't decided if I am going to change it.

Actually I have a naturalization ceremony that week, so what about the week of the 16th of December?

MS. DUNN: That works for Qualcomm.

MR. MOONEY: Did Your Honor have availability before that date if Your Honor decides to delay the trial?

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 24-490 (MN) |
| v. | ) ) | ██████████ |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) | |
| Defendant. | ) ) | |

## QUALCOMM'S FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1–52)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (collectively, "Plaintiffs" or "Qualcomm") request that Defendant Arm Holdings PLC ("Arm") serve its written responses to these requests for production and produce copies of the Documents and tangible things requested below at the law offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 within thirty (30) days of service.

### INSTRUCTIONS

1. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests for Documents and things are continuing in nature. If, after producing the requested Documents and things, Arm obtains or becomes aware of any further responsive Document or thing, Arm must produce to Qualcomm such additional Document or thing.

2. If Arm withholds any Document or thing based upon a claim of privilege or any other claim of immunity from discovery, Arm shall state the specific basis for withholding the Document or thing and describe the facts and circumstances giving rise to such withholding in

**REQUEST FOR PRODUCTION NO. 4:**

All Documents and Communications concerning ███████ to the ████████████████ or bug fixes, updates, corrections, or any other technical improvement or information licensed under the Qualcomm ALA that was, after June 1, 2022, delivered to any other Arm licensee but not to Qualcomm.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications since June 1, 2022 related to or concerning the Qualcomm's ACK or Qualcomm's OOB tests, and any patches thereto.

**REQUEST FOR PRODUCTION NO. 6:**

All versions of the ACK released after June 1, 2022, and any patches thereto.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications concerning Arm's position that ████████████████ ████████████ of the Qualcomm ALA governs delivery of ACK deliverables listed in ███████ of any of the Qualcomm ALA Annexes.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Communications concerning or interpreting ████████████████ ███ of the Qualcomm ALA.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents and Communications concerning or interpreting the definition of ████████, and ████████████████████████████████ ████████████████████ in any Third Party ALAs.

7

**REQUEST FOR PRODUCTION NO. 22**:

All Documents and Communications related to or concerning Arm's discussions with Third Parties regarding Qualcomm's relationship with Arm.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents and Communications related to or concerning the projected or forecasted impact to Arm's revenue or profits if the Qualcomm ALA is terminated.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents and Communications containing any analysis or evaluation of the projected or forecasted impact to Arm's revenue or profits if the Qualcomm ALA is terminated.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents and Communications related to or concerning Arm's potential termination of the Qualcomm ALA.

**REQUEST FOR PRODUCTION NO. 26:**



All Documents and Communications concerning deliverables included as ███████ ██████████ licensed under the Qualcomm ALA, including the ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████████████████████████ , that was, after June 1, 2022, delivered to any other Arm licensee but not to Qualcomm.

**REQUEST FOR PRODUCTION NO. 27:**

All ALAs and Annexes with Third Parties (*i.e.,* parties other than Qualcomm).

10

**A1742**

**REQUEST FOR PRODUCTION NO. 28:**

All Documents and Communications concerning delivery of ███████████████ or bug fixes, updates, corrections, or any other technical improvement licensed under ALAs to third parties (*i.e.,* parties other than Qualcomm), including documents sufficient to show the licensee, the date of delivery, and the terms of any such delivery for any delivery that was not provided to Qualcomm.

**REQUEST FOR PRODUCTION NO. 29:**

All Documents and Communications with Arm's Board of Directors and/or Masayoshi Son concerning the decision to withhold deliverables, including ██████████████████ or bug fixes, updates, corrections, or any other technical improvement or other information licensed under the Qualcomm ALA, from Qualcomm.

**REQUEST FOR PRODUCTION NO. 30:**

All Documents and Communications related to or concerning Arm's communications with Qualcomm regarding the delivery of ███████████ or other deliverables licensed under the Qualcomm ALA, including but not limited to communications from Arm to Qualcomm, informing Qualcomm that deliverables would be delayed or would need legal approval, and documents and communications regarding Arm's strategy or plans for communications with Qualcomm regarding the delivery of ███████████.

**REQUEST FOR PRODUCTION NO. 31:**

All Documents and Communications related to or concerning each ACK patch released since June 1, 2022, including documents related to the development process for each patch, the timeline for development, and each version of the Arm Architecture that the patch corresponds to.

11

**A1743**

**REQUEST FOR PRODUCTION NO. 32:**

All Documents and Communications related to or concerning the delivery of ACK patches to any ALA partner other than Qualcomm.

**REQUEST FOR PRODUCTION NO. 33:**

All Documents and Communications concerning OOB tests, including the development process for OOB tests, the timeline to configure the ACK through the use of OOB tests, and any manuals or presentations describing the use of OOB tests with the ACK.

**REQUEST FOR PRODUCTION NO. 34:**

All Documents and Communications concerning any negotiations that Arm had with TLA licensees (including Third Parties) for the



, including but not limited to price quotes, license fees, licensing term limits, or other language to include in TLA Annexes.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents and Communications related to or concerning Arm's October 22, 2024 letter to Qualcomm.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents and Communications related to or concerning Arm's sharing of the October 22, 2024 letter with Third Parties, including but not limited to Arm's decision to share the letter with Third Parties.

12

**A1744**

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ARM LTD.,                       )
a U.K. corporation,             )
                                )
            Plaintiff,          )
                                ) C.A. No. 22-1146(MN)
v.                              )
                                )
QUALCOMM, INC.,                 )
a Delaware corporation,         )
et al.,                         )
                                )
            Defendants.         )

Thursday, September 5, 2024
2:00 p.m.
Discovery Dispute Hearing

844 King Street
Wilmington, Delaware

BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge

APPEARANCES:

         YOUNG CONAWAY STARGATT & TAYLOR
         BY:  ANNE SHEA GAZA, ESQ.
         BY:  ROBERT M. VRANA, ESQ.

         -and-

         MORRISON FOERSTER, LLP
         BY:  ERIK J. OLSON, ESQ.
         BY:  KYLE W.K. MOONEY, ESQ.
         BY:  KYLE FRIEDLAND, ESQ.

                 Counsel for the Plaintiff

---

APPEARANCES CONTINUED:

         MORRIS NICHOLS ARSHT & TUNNELL LLP
         BY:  JACK BLUMENFELD, ESQ.
         BY:  JENNIFER YING, ESQ.

         -and-

         PAUL WEISS
         BY:  CATHERINE NYARADY, ESQ.
         BY:  ERIN MORGAN, ESQ.
         BY:  JACOB BRALY, ESQ.
         BY:  SAMANTHA MEHRING, ESQ.

                 Counsel for the Defendants

         FISH & RICHARDSON
         BY:  NITIKA GUPTA FIORELLA, ESQ.

         -and-

         WALKER STEVENS CANNOM, LLP
         BY:  HANNAH L. CANNOM, ESQ.
         BY:  TANYA MANNO, ESQ.

                 Counsel for Apple, Inc.

         WILSON SONSINI GOODRICH & ROSATI
         BY:  NORA CRAWFORD, ESQ.

                 Counsel for Ampere Computing

---

_ _ _ _ _ _ _ _ _ _ _ _ _

COURTROOM DEPUTY:  All rise.  The District Court in and for the District of Delaware is now in session.  The Honorable Maryellen Noreika presiding.

THE COURT:  All right.  Good afternoon, everyone.  Please be seated.  Let start with some brief introductions.

MR. VRANA:  Good afternoon, Your Honor.  Rob Vrana from Young Conaway for ARM.  With me this afternoon are Eric Olson, Kyle Mooney and Kyle Friedland from Morrison Foerster.  And in the back, Anne Gaza also from Young, Conaway.  And there are some counsel on behalf of third parties.  Your Honor had granted their orders earlier this week.

THE COURT:  Terrific.  All right.  Thank you.  Good afternoon to everyone.

Mr. Blumenfeld.

MR. BLUMENFELD:  Thank you, Your Honor.  Jack Blumenfeld from Morris Nichols for the Qualcomm defendants.  With me at counsel table is Catherine Nyarady, my partner, Jennifer Ying, behind me Jacob Braly from Paul Weiss, Samantha Mehring from Paul Weiss, and Kurt Kjelland, who is in-house at Qualcomm.  And Erin Morgan who is also at Paul

---

Weiss.

THE COURT:  Thank you.

Okay.  So we have the discovery disputes and I guess before we get into the specifics, I want to understand where we are.  So we have a related case that I am trying to figure out how that relates to anything, if at all here.  There was a footnote in the complaint that referenced this case, so I want to understand that.

And then when I see that fact discovery was completed back in May and then I already have summary judgment and *Daubert* motions, I'm trying to figure out where this request for discovery fits in.

So some of that I think falls to Qualcomm to answer first.  So let me hear from you all.

MS. NYARADY:  Thank you, Your Honor.  So with respect to the second case that's been filed, it does reference this case and I think that is because there was a motion in this pending case to amend our counterclaims, for Qualcomm to amend its counterclaims.  And that was granted in part.  That's actually a big part of some of the discovery disputes that we have today.  And it was denied in part.

THE COURT:  When was it granted?

MS. NYARADY:  March 6th.

THE COURT:  Okay.

MS. YING:  So the first one to look at is the one ending in 64395, it's a two-page document that has an attachment that says withheld as nonresponsive.

THE COURT:  Okay.

MS. YING:  And on there, you can see that the document that was supposed to be attached is the Qualcomm Royalties.XLXX Spreadsheet.  I don't understand how a document that's titled Qualcomm Royalties is not relevant here.

Similarly, if you go to 85275, that is an e-mail that starts from October 12th, 2019, and it has two attachments, Qualcomm Final Closed Position, PPTX, and 7/12/19 Qualcomm V9 proposal, PPTX.  Those two attachments were held as nonresponsive, and I don't understand how that can be when this case is about negotiations between these parties.  Right?

I don't know if you want me to go through the other examples that I handed up.  This is the idea that we have, we flagged all of these and said look, we don't think your redactions are proper.  They don't even want to engage with us.  We went to the July 12th meet and confer, we had these documents printed out, we were ready to talk to them, and they said given the volume of this, let's schedule another call for this.  We said fine, we'll do that.  We had a call on June 19th, Mr. Mooney was on the line, Ms. Nyarady

was on the line.  Mr. Mooney said you know what, we think you're too late.  We're not going to talk to you about them.

And then they said on October 9th -- this is documented in the correspondence that Your Honor has in DI 446, this is documented in Exhibit 51, their letter to us on August 4th.  Right?  And then in the August 9th letter, the joint letter when we said okay, look, we need to talk to the Court about this because we have discovery disputes from the July 12th hearing that have not been resolved.  They wrote in their position that they are willing to consider further unredactions, this is DI 429 at two.  And you know what, then they wrote back on August 16th, this is DI 446, Exhibit 54 at 8 and they say again, we're not going to look at the less than seventy documents that only 3,000 pages for responsiveness redactions, even though we already told them why we don't think these are appropriate.

What we're asking for isn't much.  All we're asking for, Your Honor, is they would produce those seventy that's on the list on Exhibit 25 and they can designate them highly confidential on the protective order.  This isn't a lot of work for them.  We just want the documents.  That's all.

THE COURT:  Okay.  These redactions seem sloppy, inconsistent, and wrong.  So what's the problem?  It seems like you took an awful lot of time and effort to redact

stuff that no one would care about or perhaps stuff that's relevant.

MR. MOONEY:  Yes, Your Honor.

THE COURT:  And I'm not going to go with the too late here given that I did see that that was requested beforehand and there was engagement on it.

MR. MOONEY:  I won't belabor it, Your Honor, but these do relate to I think the original claims.  These documents that were --

THE COURT:  Yes, but come on, come on, let's look at these.  I mean, this is ridiculous.  So I'll give you an option here.  You can, if you want, submit every one of these -- if you're not going to agree to unredact these in a meaningful way and not say, oh, too much, then what you're going to do is submit them to me in camera and for every document that there is a page that I say is improperly redacted, you lose one minute of trial time.  That's your option.  And one minute can sort of add up when you got 3,000 pages that you guys have sloppily redacted.

MR. MOONEY:  We'll do that, Your Honor.  That is, we'll take the burden.  We'll look through them again.

THE COURT:  And for any document that you maintain your redactions on, you submit those to me in camera, because I'm not going to deal with this.  This is just sloppy.  And when they came to you with it, you should

have fixed it and not said this is just too late.

And if there is third-party stuff in there, I got some third parties standing up, I appreciate you standing up.  If there is third-party stuff in there and you want them to maintain the redactions, they can submit them to me in camera before they produce them.  But I mean, I can tell you that some of the stuff on here is garbage and it's not going to meet the standard for, you know, the Third Circuit saying it's stuff that you don't need to present, but I will not order it to be produced without giving you all an opportunity to be heard.

MR. MOONEY:  Thank you, Your Honor.

THE COURT:  But I can't imagine there is that much of the third-party stuff in there.  If there is, you can talk with them about whether you can produce it and submit it to me.

MR. MOONEY:  Will do.

THE COURT:  You should be embarrassed that they brought that to me.  Okay?

And I will say having shut down the request for the financial information because I think that the defendants dropped the ball on that one, I should point out that you all came to us in April of 2024 seeking an extension of terms of the scheduling order.  So you clearly knew how to do it and you knew that scheduling was an issue

# Exhibit 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SIGNODE INDUSTRIAL GROUP LLC, )
                                            )
          Plaintiff,            )
                                            )
        v.                     )      Civil Action No. 22-519-VAC-CJB
                                            )
POLYCHEM, LLC,              )
                                            )
          Defendant.        )

## MEMORANDUM ORDER

Before the Court is Plaintiff Signode Industrial Group LLC's ("Signode" or "Plaintiff") motion for teleconference to resolve a discovery dispute (the "Motion"). (D.I. 44) The Court has reviewed the relevant briefing, (D.I. 49; D.I. 58; D.I. 69; D.I. 77; D.I. 79), and it heard argument during a teleconference held on July 25, 2022, (D.I. 89, hereinafter, "Tr."). For the reasons that follow, the Court hereby ORDERS that Plaintiff's Motion is DENIED.

With the Motion, Plaintiff seeks entry of a protective order: (a) prohibiting Defendant Polychem, LLC ("Polychem" or "Defendant") from eliciting, receiving or using any of Plaintiff's privileged information that Defendant obtained from Plaintiff's former employee, Flavio Finzo (an inventor on two of the patents-in-suit), and requiring Defendant and its counsel to disclose any such privileged information already obtained from Mr. Finzo; and (b) prohibiting Defendant from eliciting or receiving Plaintiff's confidential information from Mr. Finzo, or using such information (until produced in this case by Plaintiff). (D.I. 49 at 1)

A motion for a protective order is governed by Federal Rule of Civil Procedure 26(c), which provides that "for good cause," the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). Rule 26(c) places the burden of persuasion on the party seeking the protective order, who

**A1749**

must show good cause by demonstrating, with specificity, a particular need for protection and that absent the protective order, that the movant will suffer a "clearly defined and serious injury." *See In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (internal quotation marks and citations omitted); *see also AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, Civil NO. 17-1065-MSG, 2018 WL 2337133, at *1 (D. Del. May 23, 2018).

First, with regard to Plaintiff's request as it relates to *privileged* information, no good cause has been shown. On the current record, there is no evidence that Defendant has actually received any privileged information from Mr. Finzo or that it is likely that this will happen in the future. (Tr. at 7) To the contrary, Defendant's counsel has stated that: (a) they have advised Mr. Finzo not to reveal any such privileged information to them; (b) they have not received any privileged information from Mr. Finzo; and (c) it would be improper for them to attempt to solicit such privileged information, and so they certainly will not be doing so in the future. (D.I. 58 at 1; Tr. at 6, 40-41) In light of all of this, and in light of the fact that there are rules of professional conduct that would already seem to prohibit Defendant's counsel from attempting to obtain this type of information, the Court does not currently see a need to issue a protective order regarding Plaintiff's privileged information. *Cf. LaPoint v. AmerisourceBergen Corp.*, No. Civ.A. 327-N, 2006 WL 2105862, at *2 (Del. Ch. July 18, 2006); *Postorivo v. AG Paintball Holdings, Inc.*, Civil Action Nos. 2991-VCP, 3111-VCP, 2008 WL 3876199, at *21 (Del. Ch. Aug. 20, 2008).

Second, with regard to Plaintiff's request as it relates to other *confidential* information, again, the Court concludes that Plaintiff has not demonstrated good cause. It is not unusual that a party might wish to—and be permitted to—speak with a former employee of its litigation

2

adversary, especially if that former employee has important non-privileged information bearing on the case (even information that is "confidential"). *See Valassis v. Samelson*, 143 F.R.D. 118, 119-26 & n.8 (E.D. Mich. 1992); *PPG Indus., Inc. v. BASF Corp.*, 134 F.R.D. 118, 119-20, 123-24 (W.D. Pa. 1990). While it does not appear disputed that Defendant's counsel has spoken to Mr. Finzo in the past about the matters at issue in this case, Plaintiff was only able to identify one piece of assertedly confidential information that Mr. Finzo is said to have provided to Defendant's counsel (involving Plaintiff's actions in disassembling a prior art device many years ago). (D.I. 49 at 2; D.I. 58 at 2-3; Tr. at 9-10) And even if Mr. Finzo may have (or might in the future) share certain of Plaintiff's confidential information with Defendant's counsel, Plaintiff has failed to explain how, were the Court not to issue a new protective order, this would cause Plaintiff a "clearly defined and serious injury." After all, there is a protective order already in effect in this case. (D.I. 26) And Defendant agrees that any information that is has or will obtain from Mr. Finzo: (a) will be treated as "highly confidential" pursuant to that order; (b) will not be shared with Defendant's employees or any third parties; and (c) if it is to be used in a filing in this case, it will be contained in a document that is at least initially filed under seal. (Tr. at 32-35) So there seems little to no chance that any such information will later become public in a way that will harm Plaintiff. (Tr. at 14) And if Plaintiff wants to know what facts Mr. Finzo actually did share with Defendant's counsel, its attorneys can at least ask Mr. Finzo this during his deposition (to the extent that Defendant will object to such questions and assert the "common interest privilege," the Court takes no position now on whether such an assertion would be meritorious). (D.I. 49 at 1; Tr. at 15-17, 35)

Third, the Court's decision is not impacted (at least for now) by Plaintiff's surprising, post-argument disclosure that a Swiss Court recently granted a temporary restraining order

3

("TRO") against Mr. Finzo that prohibits him from "sharing any trade/or manufacturing secrets of [Plaintiff], including disclosing any facts in connection with the Asserted Patents, the underlying technologies or the evaluation, testing, development, and commercialization thereof to [Defendant or its counsel]." (D.I. 69 at 1; *see also id.*, 69-2 at 5)[1]  For one thing, the existence of this order does not help Plaintiff overcome its above-referenced failure to demonstrate how it would suffer a clearly defined and serious injury were a new protective order not now entered. Moreover, it is worth noting that "[i]t is well settled that [foreign law, such as foreign blocking statutes, do not necessarily] deprive an American court of the power to order a party subject to its jurisdiction to produce evidence[,] even though the act of production may violate that [law]." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987); *see also Cadence Pharms., Inc. v. Paddock Labs Inc.*, No. 11-733 (LPS), D.I. 104 at 25-29 (D. Del. Mar. 22, 2012); *Ney v. Owens-Illinois, Inc.,* CIVIL ACTION NO. 16-2408, 2016 WL 7116015, at *3-4 (E.D. Pa. Dec. 6, 2016).  And the Court (at least absent further briefing on the issue in the future) is not inclined to alter discovery procedures in this case in light of the Swiss Court's issuance of the TRO.  Indeed, the Court is having a hard time seeing how this litigation could reasonably press forward were Mr. Finzo in fact prohibited from "disclosing any facts in connection with the Asserted Patents"; as an inventor on two of the patents-in-suit, his testimony about such facts is likely to be very important in this case.

For these reasons, the Motion is DENIED.

---

[1]      Plaintiff's counsel did not mention that Plaintiff was seeking such an order during the July 25 teleconference, so news of the order's issuance was a surprise to the Court.  (D.I. 79 at 2)

4

Dated:  August 10, 2022

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

5

# Exhibit 3

███████████████████████████

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,      §
A DELAWARE CORPORATION,     §
QUALCOMM TECHNOLOGIES,      §   C.A. NO. 24-490-MN
INC., A DELAWARE            §
CORPORATION,                §
                            §
   PLAINTIFFS,              §
                            §
– AGAINST –                 §
                            §
ARM HOLDINGS PLC.,          §
F/K/A ARM LTD., A U.K.      §
CORPORATION,                §
                            §
   DEFENDANT.               §

ORAL AND VIDEOTAPED DEPOSITION OF AKSHAY BHATNAGAR
JULY 10, 2025

ORAL AND VIDEOTAPED DEPOSITION OF AKSHAY BHATNAGAR, produced as a witness at the instance of the Plaintiffs and duly sworn, was taken in the above styled and numbered cause on Thursday, July 10, 2025, from 9:22 a.m. to 12:39 p.m., before TAMARA CHAPMAN, CSR, RPR-CRR in and for the State of Texas, reported by computerized stenotype machine, at the offices of Kirkland & Ellis, LLP, 401 Congress Avenue, Austin, Texas, pursuant to the Federal Rules of Civil Procedure and any provisions stated on the record herein.

Job No. NY 7464214

# Exhibit 4

████████████████████████

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED, a
Delaware corporation,
QUALCOMM TECHNOLOGIES, INC.,
a Delaware corporation,

     Plaintiffs,

        vs.            C.A. No. 24-490 (MN)

ARM HOLDINGS PLC., f/k/a
ARM LTD., a U.K.
corporation,

     Defendant.

_____

▮▮▮▮▮▮▮▮▮▮▮▮

VIDEO DEPOSITION OF ARM HOLDINGS PLC's 30(b)(6) and
   30(b)(1) REPRESENTATIVE - ▮▮▮▮▮▮▮▮▮▮▮▮
          Palo Alto, California
         Friday, June 20, 2025
            Volume 1

STENOGRAPHICALLY REPORTED BY:
REBECCA L. ROMANO, RPR, CSR, CCR
California CSR No. 12546
Nevada CCR No. 827
Oregon CSR No. 20-0466
Washington CCR No. 3491
JOB NO. 7428915
PAGES 1 - 189

# Exhibit 5

███████████████████████

# Exhibit 6

█████████████████████████

| From: | Jenifer Hartley |
| To: | #KE-ARM-Qualcomm; MoFo_Arm_QCOM; ycst_arm_qualcomm |
| Cc: | Qualcommv Arm; GRP-QCvARM; Ying, Jennifer; Blumenfeld, Jack |
| Subject: | Qualcomm v. Arm - Third Party Agreements |
| Date: | Wednesday, September 24, 2025 7:37:58 PM |
| Attachments: | Outlook-uqgwiocb.png |

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

Counsel,

As mentioned in Dr. Kennedy's reply report, Arm appears to have omitted from its productions documents that are part of third parties' license agreements for ███████████████ *See, e.g.,* 2025.09.19 Kennedy Reply Report ¶ 89, Schedule 9.1.  We list below the types of documents that appear to have been omitted, along with the Bates number of the produced document that references each apparently omitted document.  Please produce these apparently omitted documents by Wednesday, October 1 or identify the Bates numbers at which they have already been produced.  Qualcomm reserves all rights.

Best,
Jen



A1778



**Jen Hartley | Associate**
**Dunn Isaacson Rhee LLP**
jhartley@dirllp.com
(202) 240-2922  (direct) | (301) 233-9558 (cell)
401 9th Street NW, Washington, DC 20004
Website | LinkedIn
*Admitted in New York only. Practice is supervised by D.C.*
*Bar members.*

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance, or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

**A1778**

# Exhibit 7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware
corporation, QUALCOMM
TECHNOLOGIES, INC., a Delaware
corporation,

        Plaintiffs,

        v.

ARM HOLDINGS PLC, f/k/a ARM LTD.,
a U.K. corporation,

        Defendant.

C.A. No. 24-490-MN



### DEFENDANT ARM HOLDINGS PLC'S
### RESPONSE TO QUALCOMM'S SEPTEMBER 15, 2025 LETTER
### TO SPECIAL MASTER RYCHLICKI

Dated: September 19, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com
adam.janes@kirkland.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A1780**

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

**A1781**

Dear Special Master Rychlicki:

We write in response to Qualcomm's September 15, 2025, letter regarding Arm's production of Technology License Agreements ("TLA") between Arm and third parties for the ███████████████ cores, and to advise Your Honor of events that have occurred since the August 14 and 22 hearings relating to Arm's pending motion to compel the deposition of Pradeep Kanapathipillai.

## 1. Qualcomm's Motions To Compel Documents Arm Has Already Produced Should Be Denied.

Qualcomm's letter feigns surprise at Arm's recent production of additional TLAs, claiming it is "in the dark" as to why Arm is now producing them. Yet Qualcomm omits that it knows precisely why Arm was producing these additional TLAs: Arm made this production *at Qualcomm's request* and to resolve an outstanding discovery dispute before Your Honor. Arm's production of these additional TLAs—which will soon be complete—moots Qualcomm's request for these documents, and its motions to compel should thus be denied.[1]

Qualcomm knows precisely why Arm is producing these TLAs. On a July 30 meet and confer, Qualcomm alleged that Arm's production during fact discovery of TLAs for ███████ ██████████ was incomplete, stating that unspecified "public reporting" suggested there were certain other TLAs that had not yet been produced. Ex. 1 (7/30/25 M&C Tr.) at 49:22-50:9. Arm immediately responded on that meet-and-confer that "[w]e're happy to investigate those further and see what the story is" and "whether we left them out, whether there are any others." *Id.* at 50:17-20. From the very beginning, Arm was open with Qualcomm that it would investigate Qualcomm's request.

Notwithstanding Arm's immediate agreement to investigate, two days later Qualcomm moved to compel on this issue in its August 1 letter brief to Your Honor. Ex. 2 (8/1/2025 Ltr.) at 1. Arm responded again to Qualcomm—and the Special Master—that it was investigating this issue:

> Qualcomm's request for additional licenses to those cores should be denied as premature. Qualcomm raised this issue for the first time on July 30, two days before its opening brief, and *Arm agreed to investigate the existence and production of additional licenses that may cover* ███████████████ (subject to any third-party intervention). The parties are therefore not at an impasse, and Qualcomm never submitted it to the Court as required by the Court's and Special Master's orders. (Ex. 4, Ex. 5.)

Ex. 3 (8/7/2025 Arm's Responsive Ltr.) at 1. Qualcomm argued in its August 1 letter and suggests again in its September 15 letter that Arm made incorrect representations to Qualcomm and the Special Master regarding the status of its TLA production, but Arm has been fully open that while it believed its production of TLAs was complete, it would investigate whether its production omitted other TLAs for ██████████████████.

---

[1]   *See* QC Aug. 1, 2025 Letter, Part I ("TLAs"); QC Aug. 11, 2025 Letter, Part IV (Interrogatory Nos. 6, 11).

1

Just as Arm said it would, it promptly investigated Qualcomm's allegations and confirmed that certain third-party ███████████████ agreements were inadvertently omitted from Arm's production. Arm then promptly provided notice to each additional third party that it would produce their ████████████████ n agreements. As the notice periods expired, Arm produced the additional ████████████████ agreements to Qualcomm on a rolling basis, including on September 4, 11, 15, 16, and 19. Arm's production of the TLAs that were omitted from its previous production is nearly complete: Arm expects to produce agreements from ██████ imminently, and Arm understands that Qualcomm is negotiating with ██████ regarding production of its agreements. That resolves the issue other than for two of the additional third parties, Annapurna and Analog Devices, who have objected to disclosure of their agreements and filed protective order motions with the Court and Your Honor. D.I. 386, 390.

Arm's additional productions moot Qualcomm's motions to compel, which should be denied. As Arm stated in its August 7 letter brief, Arm agreed to produce agreements with third parties for ███████████████ in effect at the time. Ex. 3 at 1. Arm also already agreed to supplement its response to Interrogatory No. 6, and will promptly do so once it completes production. QC Ex. 3 at 5, 7. Qualcomm appears to also be seeking additional deposition time with an Arm 30(b)(6) witness "prepared to testify on relevant terms of third-party agreements." As Arm explained at the August 22 hearing, Qualcomm already had the opportunity to depose five witnesses about Arm's agreements, and chose to spend only 2 hours with Arm's 30(b)(6) witness, Ehab Youssef, on the October 2024 offer. Nonetheless, Arm agrees to make Mr. Youssef available for an additional 2 hours of deposition time on Qualcomm's Topics 20 and 29 (subject to Arm's previously-served objections) after Arm completes its production and the third-party TLA licensee protective order motions are resolved. Thus, Qualcomm already has the relief it seeks, its motions to compel as they relate to ███████████████ discovery are moot, and its September 15 letter only highlights that its motion should be denied.

Once again—as Qualcomm has now repeatedly done—Qualcomm served Your Honor with its letter before even attempting to resolve this issue with Arm. The parties were scheduled to meet and confer on this issue at 4 PM on September 15, and Qualcomm served its letter at 1:41 PM. Had Qualcomm waited another two hours for the parties to meet and confer, it would not have needed to raise this dispute with Your Honor. At the meet-and-confer, Arm answered Qualcomm's questions regarding the additional TLA production, as it sought to do in correspondence leading up to that call. QC Ex. 3.

Qualcomm's September 15 letter further seeks information regarding "*why* Arm did not produce these agreements within the fact discovery period." QC Ltr. at 2 (emphasis added). This request is also moot; Arm has already provided this information to Qualcomm. As explained above, the inadvertent omission in Arm's production was discovered because of a request from Qualcomm in a July 30 meet-and-confer, which Arm has repeatedly told Qualcomm. QC Ex. 3 at 7; Ex. 4 (9/15/25 Tr.) at 39-47. To the extent Qualcomm is seeking information about Arm's in-house counsel's and outside counsel's document collection, review, and production, and communications regarding the same, that information is privileged.

Qualcomm states that it "may seek additional relief" on this issue, and in a September 14 email suggested that Arm should be precluded "from contending that it complied with ██████ of the TLA." QC Ltr. Br. at 2 n.3; QC Ex. 3 at 2. Any such relief should be denied, and there is no basis for a discovery sanction, let alone one that awards Qualcomm with what

2

is effectively summary judgment of breach on the TLA, for which Qualcomm seeks a ███ ██████████.

Finally, while Qualcomm's letter broadly asks that "Your Honor grant its motions to compel," Qualcomm omits that subsumed within that request are other issues completely unrelated to the ████████████████ agreements or any other issue related to the SAC. More specifically, Qualcomm also seeks discovery on numerous other TLA products, including "████████████," ████████████████████, among others, that are entirely absent from the SAC. For the reasons set forth in Arm's August 18 letter and supplemental brief, Qualcomm is not entitled to that discovery. Ex. 8 (8/18/2025 Arm's Responsive Ltr.) at 1–2.

Qualcomm's motions to compel should be denied.

### 2. Qualcomm's Continued Refusal To Offer Mr. Kanapathipillai For Deposition While Offering New Witnesses Is Improper.

Qualcomm continues to improperly refuse to offer a deposition date for Pradeep Kanapathipillai. Arm properly noticed him. He is not an *Apex* witness. And Qualcomm's own Senior Director of Engineering, Gerard Williams, testified that ███████████ ████████████████████████████████████████████████ ████████████████████████ Ex. 9 at 3. Qualcomm's recent conduct confirms as much.

On August 29, Qualcomm offered deposition dates for two *different* noticed witnesses, Tarang Agarwal and Sureshkumar AM. Ex. 5 (8/29/2025 C. Nyarady Email). They are both based in India and would fly to California for their depositions. Arm was surprised by Qualcomm's offer of these dates not only because Qualcomm still has not offered a deposition date for Mr. Kanapathipillai, who lives in California, but also because Qualcomm had represented to Arm a month earlier that "there's not going to be a deposition" of Mr. Agarwal and Mr. AM because their visas "can take, you know, like 18 months." Ex. 6 (7/28/2025 M&C Tr.) at 76:3-77:20. Arm responded to Qualcomm, stating that "[a]s you know, we currently have a dispute pending with the Special Master in which we've sought the deposition of Pradeep Kanapathipillai. If our motion is granted, we intend to use our remaining deposition time with Mr. Kanapathipillai and would not depose Tarang Agarwal or Sureshkumar AM. If our motion is denied, we can revisit the depositions of Tarang Agarwal or Sureshkumar AM at that time." Ex. 7 (9/10/2025 J. Emerick Email). Qualcomm refused to do so, and refused to provide alternative dates for Tarang Agarwal and Sureshkumar AM.[2] Ex. 4 at 56:3–59:16.

Qualcomm's offering of deposition dates for these two witnesses more than one month after the close of fact discovery illustrates that its objections to Arm's purported "delay" with respect to Mr. Kanapathipillai are meritless. Qualcomm's offer also illustrates the lengths it is willing to go to avoid Mr. Kanapathipillai's deposition: the parties have a deposition-hours limit in this case, and Qualcomm is willing to fly *two* witnesses from *India* to California to expend Arm's remaining deposition time to avoid one deposition of Mr. Kanapathipillai, who

---

[2]    Arm reserves all rights with respect to Tarang Agarwal and Sureshkumar AM's deposition in the event the Special Master denies Arm's motion to compel Mr. Kanapathipillai's deposition.

lives in California.  There is no prejudice to Qualcomm in making Mr. Kanapathipillai, a California-based employee, available for deposition.

Respectfully,

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)

Word Count: 1673

Enclosures: Exhibits 1–9

4

# EXHIBIT 8

| From: | ded_nefreply@ded.uscourts.gov |
|---|---|
| To: | ded_ecf@ded.uscourts.gov |
| Subject: | Activity in Case 1:24-cv-00490-MN Qualcomm Incorporated et al v. ARM Holdings PLC Oral Order |
| Date: | Monday, March 17, 2025 12:32:42 PM |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered on 3/17/2025 at 12:31 PM EDT and filed on 3/17/2025

**Case Name:** Qualcomm Incorporated et al v. ARM Holdings PLC

**Case Number:** 1:24-cv-00490-MN

**Filer:**

**Document Number:** 74(No document attached)

**Docket Text:**

**ORAL ORDER re [54] Joint MOTION for Teleconference to Resolve Discovery Dispute. Having reviewed the parties' discovery dispute letter submissions, (D.I. 68, D.I. 70), IT IS ORDERED that Arm's proposed provisions at paragraph 52 of the proposed protective order and paragraph 2(j) of the proposed ESI order are ADOPTED-IN-PART. (D.I. 68, Ex. D at ¶ 52; Ex. E at ¶ 2(j)) For the reasons which follow, the court rejects Arm's proposals which would permit a producing party to redact information that is subject to a confidentiality agreement with a third party. (*Id.*) Arm contends that these redactions are needed to prevent competitive harm caused by the disclosure of confidential third-party information to outside counsel who might negotiate future agreements with a party. (*Id.* at 2; Ex. A at 53:6-54:15) Arm argues that permitting redactions of third-party confidential information under the terms of the protective order and ESI order will reduce the burden on the court to consider piecemeal motions for a protective order from third parties. (*Id.* at 3) However, neither the case authority cited by Arm nor the record in related Civil Action No. 22-1146-MN supports Arm's position that a provision permitting redactions of third-party confidential information should be included in the protective order and the ESI order. *See, e.g., Trellian Pty. Ltd. v. adMarketplace Inc.*, 2021 WL 363965, at \*4 (S.D.N.Y. Feb. 3, 2021) (addressing a motion to compel a third party's production of unredacted documents in response to a subpoena); *Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*, 2011 WL 1348401, at \*4**

**(N.D. Tex. Apr. 8, 2011) (same). Instead, a third party seeking further protections for its highly confidential information may follow the well-established procedure of moving for a protective order, which allows the court to balance the relevance of the information against the risk of inadvertent disclosure. *See* Fed. R. Civ. P. 26(c) (requiring a showing of good cause to issue a protective order). In *Arm Ltd. v. Qualcomm Inc.*, C.A. No. 22-1146-MN, the court carefully assessed third-party requests for redaction, noting its obligation "to go line by line in things according to the Third Circuit" and rejecting the wholesale redaction of an entire agreement. (D.I. 70, Ex. 1 at 48:2-7) Consequently, Arm's proposal at paragraph 52 of the proposed protective order is REJECTED, and the proposal at paragraph 2(j) of the proposed ESI order is ADOPTED-IN-PART. Arm makes four proposals within paragraph 2(j) of the proposed ESI order. The first and fourth proposals are consistent with the language used in the ESI order in related Civil Action No. 22-1146-MN and are therefore ADOPTED. (C.A. No. 22-1146-MN, D.I. 39 at ¶ 2(j)) The second and third proposals at paragraph 2(j) of the proposed ESI order are inconsistent with the corresponding paragraph in Civil Action No. 22-1146-MN and the rulings made in this Oral Order, and those proposals are therefore REJECTED. (*Id.*) On or before March 21, 2025, Arm shall docket a proposed protective order and ESI order that conform with this ruling for the court's signature. IT IS FURTHER ORDERED that the discovery dispute teleconference set for March 20, 2025 at 2:00 p.m. is CANCELLED. Signed by Judge Sherry R. Fallon on 3/17/2025. (Polito, Rebecca)**

**1:24-cv-00490-MN Notice has been electronically mailed to:**

Jack B. Blumenfeld    Jbbefiling@mnat.com, jblumenfeld@mnat.com, mnat_IP_eFiling@morrisnichols.com

Anne Shea Gaza    agaza@ycst.com, corpcal@ycst.com, corporate@ycst.com

Kyle W.K. Mooney    kmooney@mofo.com, kyle.mooney-8250@ecf.pacerpro.com

Catherine Nyarady    cnyarady@paulweiss.com

Jennifer Ying    jying@mnat.com, jyefiling@mnat.com, mnat_IP_eFiling@morrisnichols.com

Robert M. Vrana    rvrana@ycst.com, corpcal@ycst.com, corporate@ycst.com

Gregg F. LoCascio    gregg.locascio@kirkland.com, kenymanagingclerk@kirkland.com

Samantha G. Wilson    swilson@ycst.com, corpcal@ycst.com, corporate@ycst.com

Scott F. Llewellyn    sllewellyn@mofo.com, kvieyra@mofo.com

Jay Emerick    jay.emerick@kirkland.com, sbrongiel@kirkland.com

William A. Isaacson    wisaacson@paulweiss.com, jholdip@paulweiss.com

**A1788**

Karen L. Dunn     kdunn@paulweiss.com, mao_fednational@paulweiss.com

Kyle D. Friedland     kfriedland@mofo.com

Nicholas R. Fung     nfung@mofo.com, nicholas-fung-4542@ecf.pacerpro.com

Travis J Murray     tmurray@morrisnichols.com

Melissa F. Zappala     mzappala@paulweiss.com, slee@paulweiss.com

Henry Huttinger     hhuttinger@mofo.com

Jacob A. Braly     jbraly@paulweiss.com

Ruby J. Garrett     rjgarrett@paulweiss.com

Erin J. Morgan     ejmorgan@paulweiss.com

**1:24-cv-00490-MN Filer will deliver document by other means to:**

**A1789**

# EXHIBIT 9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>    a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>    a Delaware corporation,<br><br>                    Plaintiffs,<br><br>        v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>    a U.K. corporation,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br><br><br>C.A. No. 24-490 (MN)<br><br>**JURY TRIAL DEMANDED** |

## STIPULATED PROTECTIVE ORDER

WHEREAS, Plaintiffs Qualcomm Inc., Qualcomm Technologies, Inc. (collectively "Qualcomm" or "Plaintiffs") and Defendant Arm Holdings PLC ("Arm" or "Defendant") expect discovery in the above-captioned action, including any appeals therefrom (this "Litigation"), to encompass certain information that may constitute proprietary, confidential, commercially sensitive, trade secret, and/or other confidential development, business, or commercial information.  If such information is disclosed or disseminated in an unprotected manner, it may cause substantial harm to Plaintiffs, Defendant, and/or nonparties, including loss of competitive advantage, loss of existing business, and loss of business opportunities.  Accordingly, the Parties, by and between their respective Outside Counsel, HEREBY STIPULATE AND AGREE, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and subject to the approval of the Court, that the following Stipulated Protective Order (the "Protective Order") shall govern the handling of Discovery Material in the Litigation.  Accordingly, pursuant to Fed. R. Civ. P. 26(c), it is hereby ORDERED THAT:

**A1791**

## DEFINITIONS

1.    "Affiliate" means any Third Party that directly or indirectly through one or more intermediaries controls, or is controlled by, or is under common control with, a Party to this Litigation.

2.    "CONFIDENTIAL" means information that constitutes, contains, reveals, or reflects trade secrets or other confidential research, development, business, or commercial information within the meaning of Fed. R. Civ. P. 26(c)(l)(G), including but not limited to: (i) confidential, proprietary, or commercially sensitive information; (ii) any information which is not generally known and which the Producing Party would not normally reveal to Third Parties, would cause Third Parties to maintain in confidence; (iii) any information that the Producing Party believes in good faith is sensitive, or reasonably believes to be protected by a right to privacy under foreign, federal, or state law, a data protection law, or any other applicable privilege or right related to confidentiality or privacy; or (iv) confidential information of a Third Party that the Producing Party is bound by a separate confidentiality agreement or court order to maintain in confidence and that the Producing Party is permitted to produce in this Litigation.    CONFIDENTIAL information includes, but is not limited to, scientific and technical information; financial, budgeting and/or accounting information; information about existing and potential customers; marketing and other business strategies, decisions, or negotiations; personnel compensation, evaluations, and other employment information; and includes such confidential and proprietary information about a Third Party, including parents, subsidiaries, and/or other Affiliates. Provisions of this Protective Order relating to CONFIDENTIAL information shall be understood to encompass any information derived from, as well as testimony and oral conversation related to, CONFIDENTIAL information, and all copies, excerpts, and summaries thereof.

2

**A1792**

3.      "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" means highly sensitive CONFIDENTIAL information, disclosure of which to another Party or Third Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

4.      "Source Code" means human-readable representations of software, firmware, and integrated circuits.  Source Code includes, but is not limited to, programming language text, symbolic representations of integrated circuits ("Chip-Level Schematics") or graphical depictions of physical configuration of semiconductor material within integrated circuit die or chip ("Integrated Circuit Layouts"), as well as register-transfer level abstraction files ("RTL Files") and transaction-level modeling files ("TLM Files").  Source Code includes, but is not limited to, programming language text in "C," "C++," BREW, Java ME, J2ME, assembler, digital signal processor ("DSP"), Hardware Design Language ("HDL"), VHDL, or Verilog programming languages.

5.      "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY" means highly sensitive CONFIDENTIAL information that includes Source Code.

6.      "CONFIDENTIAL Discovery Material" means Discovery Material a Designating Party designates as CONFIDENTIAL pursuant to the terms of this Protective Order.

7.      "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material" means Discovery Material a Designating Party designates as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY pursuant to the terms of this Protective Order.

8.      "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material" means Discovery Material a Designating Party designates as HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY pursuant to the terms of this Protective Order.

3

9.      "Discovery Material" means all documents, testimony, pleadings, exhibits, and all other material or information produced or disclosed in this Litigation, including disclosures, contentions, responses to requests for production of documents and/or things, answers to interrogatories, responses to requests for admissions, documents and things made available for inspection, deposition testimony, expert testimony and reports, and all other disclosures made and discovery taken pursuant to the Federal Rules of Civil Procedure and any order of this Court, including Third Party discovery pursuant to Rule 45, matters in evidence and any other information hereafter furnished, directly or indirectly, by or on behalf of any Party, Third Party, or witness in connection with this Litigation.  This Protective Order and protections herein shall apply to all Discovery Material.

10.      "Expert" means a person with specialized knowledge or experience in a matter pertinent to this Litigation, including any associates or analysts working under the supervision of the Expert, with disclosure only to the extent necessary to perform such work, who has been retained by a Party or its Outside Counsel to serve as an expert witness or as a consultant in this Litigation who, at the time of retention: (1) is not an officer, director, or employee of a Party, Affiliate, or Competitor of a Party and (2) is not anticipated to become an officer, director, or employee of a Party, Affiliate, or Competitor of a Party.  Nothing in this Protective Order purports to alter in any way the requirements for offering testimony under Fed. R. Evid. 703, or to define the term "expert" for purposes other than those addressed in this Protective Order.

11.      "Competitor" means any entity or person that is involved in the development of any custom CPU or SoC for mobile or compute markets that would compete against Plaintiffs' custom Arm-based CPU(s) or SoC(s) for mobile, automotive, IoT, or compute markets.

4

**A1794**

12. "Outside Counsel" means (i) any attorney from a law firm that has made a formal appearance as counsel of record for a Party in this Litigation and who is not an employee of a Party or of an Affiliate, and (ii) partners, principals, counsel, associates, employees, and contract attorneys of such Outside Counsel to whom it is reasonably necessary to disclose information for this litigation, including supporting personnel employed by the attorneys, such as paralegals, legal translators, legal secretaries, legal clerks, and shorthand reporters.

13. "Party" means a party to this Litigation.

14. "Challenging Party" means a Party or Third Party that challenges the designation of information or items under this Protective Order.

15. "Designating Party" means any Party or Third Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY."

16. "Producing Party" means any Party or any Third Party who produces or otherwise discloses, whether through formal or informal means, Discovery Material in this Litigation.

17. "Professional Vendor" means a person or entity that provides litigation support services (e.g., photocopying, audio or video recording, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium; jury consulting including mock jurors, mock trial coordination) and their employees and subcontractors. Professional Vendors do not include Experts.

18. "Protective Order" means this Stipulated Protective Order.

5

A1795

19.     "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY."

20.     "Receiving Party" means any Party that receives Discovery Material produced or otherwise disclosed by any Producing Party.

21.     "Third Party" means a person or entity that is not a Party.

**SCOPE**

22.     The protections conferred by this Protective Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.  However, the protections conferred by this Protective Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication that does not violate this Protective Order, including becoming part of the public record through trial or otherwise; or (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party.  To the extent there is any dispute regarding the use of Protected Material at trial, the parties shall submit the dispute to the Court for resolution.

**DURATION**

23.     Even after final disposition of this Litigation, the confidentiality obligations imposed by this Protective Order shall remain in effect until the Designating Party agrees

6

otherwise in writing or a court order otherwise directs.  Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this Litigation, with or without prejudice; or (2) final judgment after the completion and exhaustion of all appeals, re-hearings, remands, trials, or reviews of this Litigation, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

## **DESIGNATION**

24.     Any Producing Party may designate Discovery Material as CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY in accordance with this Protective Order if such party in good faith believes that such Discovery Material contains CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY information.

25.     For information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), designation in conformity with this Protective Order requires that the Producing Party affix the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY" to each page that contains Protected Material, or, if not practicable, as otherwise agreed by the Parties.

26.     A Party or Third Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced.  During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Designating Party must determine which documents,

7

or portions thereof, qualify for protection under this Order.  Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY") to each page that contains Protected Material, or, if not practicable, as otherwise agreed by the Parties.  There will be no waiver of confidentiality, or any privilege or immunity, by the inspection of Discovery Material before it is copied and marked pursuant to this Order.  Inspection of Discovery Material by any Party shall be conducted by persons eligible under Paragraphs 41 and 42 below.

27.    For documents produced in native format, the Producing Party shall include the appropriate confidentiality designation in the filename, as well as on any slip sheet accompanying the production.  Any printed or PDFed copies of such designated documents shall be marked by the Receiving Party at the time of printing/PDFing with the appropriate confidentiality designation to ensure appropriate protection.

28.    Information revealed during a deposition upon oral or written examination under Fed. R. Civ. P. 30 shall be treated as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY for thirty (30) days (as calculated by Fed. R. Civ. P. 6) following receipt of the final transcript by Outside Counsel for the Designating Party, but not thereafter unless, before the thirty (30) day period has expired, Outside Counsel for the Producing Party notifies Outside Counsel for the Receiving Party in writing that the Discovery Material set forth in the transcript is CONFIDENTIAL, HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY.  Counsel for any Party or Third Party also may designate the transcript or portions thereof to be CONFIDENTIAL Discovery Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material, or

8

HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material during the deposition.  The appropriate legend described in Paragraph 25 shall be placed on the front of any deposition transcript (and, if recorded, any copies of the recording) containing CONFIDENTIAL Discovery Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material.  Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material.  In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order.  In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential or highly confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative protective orders in this matter or pursuant to written stipulation of the parties." Counsel for any Producing Party shall have the right to exclude from confidential portions of oral depositions (e.g., involving testimony regarding Protected Material, or the use of such material in the deposition), other than the deponent, deponent's counsel, and the reporter and videographer (if any), any person who is not authorized by the Protective Orders in this action to receive or access Protected Material based on the designation of such Protected Material.

29.    Any pleading, brief, declaration, affidavit, expert report, or other filing that contains, describes, or discusses Protected Material shall be filed under seal pursuant to the requirements of D. Del. LR 5.1.3 and the Court's CM/ECF procedures.  The filing Party must

9

include on the cover page of the brief, or other filing, a descriptive legend in substantially the following format: "CONFIDENTIAL - FILED UNDER SEAL" or "HIGHLY CONFIDENTIAL (ATTORNEYS' EYES ONLY) - FILED UNDER SEAL." Outside Counsel for the Party filing papers containing, describing, or discussing Protected Material shall be responsible for providing appropriately redacted copies of the filed document to the Court in accordance with Paragraph (G)(l) of the United States District Court for the District of Delaware's Administrative Procedures Governing Filing and Service by Electronic Means, Revised January 2023.  If the filing contains the Protected Material of the Party who did not file the document, within three (3) days from the date of a filing made under seal, Outside Counsel for the filing Party or filing Third Party shall deliver to Outside Counsel for the non-filing Party or Parties a proposed public version of the under seal filing, which shall include the filing Party's proposed redactions of any Protected Material.  Within three (3) days after receipt of the proposed public version, Outside Counsel for the non-filing Party shall provide any additional redactions it believes appropriate.  Redacted versions of papers filed under seal may be made publicly available provided that (a) all Protected Material is redacted; and (b) such redacted versions are clearly marked "Public Version," and clearly identify each place where information or exhibits have been redacted or deleted.

## CHALLENGING CONFIDENTIALITY DESIGNATIONS

30.    Any Party may challenge a designation of confidentiality at any time.  Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the Litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

31.    The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge.  To

10

**A1800**

avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring in-person or telephonically within seven (7) days of the date of service of notice of the challenge. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. The Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

32.    If the Parties cannot resolve a challenge without court intervention, the Challenging Party may file and serve a motion, or otherwise invoke the Court's discovery dispute resolution process.

33.    The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Neither party shall make frivolous challenges or challenges for an improper purpose (*e.g.*, to harass or impose unnecessary expenses and burdens on other parties). All Parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation until the court rules on the challenge.

**USE OF MATERIALS FROM PRIOR LITIGATION**

34.    The provisions of this Order shall also be binding with respect to materials produced by and designated under the Protective Order (D.I. 38) therein by, any Party or Non-Party that produced documents in response to a subpoena in the prior litigation *Arm Ltd v.*

11

*Qualcomm et al.*, C.A. No. 22-1146 (D. Del.) (the "Prior Litigation"), excluding source code and documents produced from Qualcomm's database of quarantined materials.  For the convenience of the parties, and without conceding relevance to the claims or defenses here, the parties have agreed to treat all other materials produced in the Prior Litigation as if they had been produced in this Litigation.  This includes treating all such materials designated by any Party under the Protective Order in the Prior Litigation (D.I. 38) therein as if they were "Protected Material" produced with the same designation under this Order.

35.    In light of this agreement, the destruction obligations imposed by paragraphs 67–69 of the Protective Order (D.I. 38) in the Prior Litigation shall not apply to any materials within the scope of this section until the final disposition of this Litigation.

36.    The parties further agree that all depositions conducted in connection with the Prior Litigation can be used in this litigation and that use of those depositions do not count toward the deposition limits set forth in the Scheduling Order.  This paragraph shall not apply to portions of any deposition in which the witness discussed or reviewed source code that has not been produced in this litigation.  The Parties further agree that any briefing or related materials filed under seal in the Prior Litigation may be referenced in this Litigation without violating the Prior Litigation Protective Order (D.I. 38), but they are not evidence and are not deemed produced in this Litigation.

### ACCESS TO AND USE OF PROTECTED MATERIAL

37.    Protected Material produced by a Party or Third Party may be used by the Receiving Party only for purposes of this Litigation, and shall not be used in any other way, or for any other purpose.  Unless otherwise permitted in writing between Producing Party and Receiving Party, any individual who personally receives, other than on behalf of Producing Party, any

12

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material shall not participate in amending, drafting, or otherwise affecting the scope of patent specifications or claims before a Patent Office or agency (whether domestic or foreign) of any patent or patent application related to the information disclosed in the HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material, from the time of receipt of such material through one (1) year after the date the individual person(s) provides written notice to the Producing Party that said person ceases to have access to the HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material as well as any materials that contain or disclose such material, or if access does not cease, one (1) year after termination of this Litigation, as set forth above.  For avoidance of doubt, the foregoing provision applies to pending applications as well as post-grant proceedings.  Unless otherwise permitted in writing between Producing Party and Receiving Party, any Expert retained on behalf of Receiving Party who is to be given access to Producing Party's documents or Protected Material must agree in writing, using the form in Exhibit A, not to perform hardware or software development work or product development work directly or indirectly intended for commercial purposes related to the information disclosed in the HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material, which is not publicly known, from the time of first receipt of such material through one (1) year after the date the Expert provides written notice to the Producing Party that said expert consultant ceases to have access to any Protected Material, as well as any materials that contain or disclose Protected

13

A1803

Material or if access does not cease, one (1) year after termination of this Litigation, as set forth above.

38.     Nothing in this Protective Order precludes a Producing Party from using or disseminating its own Discovery Material, including Protected Material for purposes other than this Litigation.

39.     At the deposition of any fact witness, unless agreed to by the Designating Party, such witness may be shown Protected Material only if the witness is a current employee of the Designating Party, the Protected Material indicates that the witness authored the Protected Material, or the witness received or reviewed the Protected Material in the ordinary course of business and outside the context of this Litigation.

40.     At the deposition of any corporate representative designated pursuant to Fed. R. Civ. P. 30(b)(6) to testify on behalf of a Party on a particular topic or subject area, unless agreed to by the Designating Party, such witness may be shown Protected Material only if the Designating Party is the Party being deposed pursuant to Fed. R. Civ. P. 30(b)(6), the Protected Material indicates that an employee or agent of the Party being deposed pursuant to Fed. R. Civ. P. 30(b)(6) authored the Protected Material, or the witness received or reviewed the Protected Material in the ordinary course of business and outside the context of this Litigation.

41.     Third parties may designate as CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY deposition transcripts of their witnesses and any Discovery Material they produce, whether voluntarily or by subpoena, to the same extent and in the same manner as Parties and any such Protected Material shall be treated by the Parties in the same manner as the Protected Material produced by a Party.  Third Parties shall have the same rights

14

and obligations under this Protective Order as Parties and may move the Court to enforce the provisions of this Protective Order.

42.    The Parties acknowledge that Protected Material also may be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the U.S. government export control and economic sanctions laws, such as the Export Administration Regulations ("EAR", 15 CFR 730 et seq., http://www.bis.doc.gov/) administered by the Department of Commerce, Bureau of Industry and Security, and the Foreign Asset Control Regulations (31 CFR 500 et seq., http://www.treas.gov/offices/enforcement/ofac/) administered by the Department of Treasury, Office of Foreign Assets Control ("OFAC"). Receiving Parties will abide by U.S. law and applicable regulations governing the disclosure, export, re-export, transfer, or release of any export-controlled Protected Material ("Export Controlled Information") to any destination, person, entity, or end use prohibited or restricted under U.S. law, including obtaining prior U.S. government authorization to the extent required by regulation. The U.S. government maintains embargoes and sanctions against the countries listed in Country Groups E:1/2 of the EAR (Supplement 1 to part 740). Export Controlled Information disclosed in this action will be used only for the purposes of this action. The Producing Party shall be responsible for identifying any Export Controlled Information, and the Receiving Party shall take measures necessary to ensure compliance. This paragraph shall be interpreted consistent with applicable U.S. law and is not intended to contradict such law.

43.    Producing Party's Source Code:

(a)    To the extent that a Producing Party makes Source Code available for inspection by a Receiving Party:

15

i.  The Producing Party shall make all relevant and properly requested Source Code available electronically and in text searchable form at the offices of Counsel of Record for Producing Party or at a secure facility approved by Producing Party.  The Producing Party shall make the Source Code available for inspection on a stand-alone, non-networked personal computer running a reasonably current version of the Microsoft Windows operating system ("Source Code Computer").  Alternatively, solely at the option of the Producing Party, the Producing Party may make such source code available on a Source Code Computer that is networked, in a configuration deemed secure by Producing Party.  The Source Code Computer shall be configured to permit review of the Source Code through a password-protected account having read-only access.  To facilitate review of the Source Code at the secure facility, the Receiving Party may use appropriate tool software on the Source Code Computer, which shall be installed by the Producing Party, including at least one text editor like Visual Slick Edit that is capable of printing out Source Code with page and/or line numbers, a source code comparison tool like Winmerge, and at least one multi-text file text search tool such as "grep."  Should it be necessary, other mutually agreed upon tools may be used.  Licensed copies of other mutually agreed upon tool software shall be installed on the Source Code

16

Computer by the Producing Party and paid for by the Receiving Party.

ii.    In the event a Producing Party makes Chip-Level Schematics or Integrated Circuit Layouts available for review, the Producing Party shall ensure that the Source Code Computers include software sufficient to allow a user to view such types of Source Code.

(b)    Any Source Code produced in discovery shall be made available for inspection, in its native form and native directory structure as organized and kept in the ordinary course of business allowing it to be reasonably reviewed and searched, during normal business hours (9:00 a.m. to 4:30 p.m. local time, Monday-Friday, excluding holidays) or at other mutually agreeable times, at a mutually agreed upon location.  Upon reasonable notice from the receiving party, which shall not be less than three (3) business days in advance, the supplier shall make reasonable efforts to accommodate the receiving party's request for access to the computer outside of normal business hours.  Following the end of expert discovery, a party is not obligated to make Source Code produced in discovery available for inspection.

(c)    The Source Code Computers shall be equipped to print PDF copies of the Source Code so that the Receiving Party can designate the Source Code for which it would like hard-copy printouts which shall be printed by the Producing Party on watermarked pre-Bates numbered paper after the review.  The Receiving Party may request a reasonable number of pages of Source Code to be printed.  A reasonable number of pages means no more than 500 pages of Source Code, on 8.5" x 11" paper with a font no smaller than Courier 12-point.  The parties agree to negotiate printing beyond these page limits in good faith, should the need arise.  Counsel for the Producing Party will keep the original printouts, and shall provide copies of such original printouts

17

to counsel for the Receiving Party within seven (7) days of (1) any request by the Receiving Party, or (2) otherwise being notified that such original printouts have been made or designated. Counsel of Record for the Receiving Party may request up to 5 copies of each original printout of Source Code. No more than 500 original printouts of Source Code for any software release or hardware product may be in printed form at any one time, without the express written consent of Producing Party, which shall not be unreasonably denied. All printed Source Code shall be logged by Receiving Party's Counsel of Record and/or other Personnel Retained by a Receiving Party in this action as noted in subparagraph (i) below. No additional electronic copies of the Source Code shall be provided by the Producing Party. Hard copies of the Source Code also may not be converted into an electronic document, and may not be scanned using optical character recognition ("OCR") technology. Only printouts of Source Code may be made, and such printouts, where made of programming language text, must include (1) directory path information and filenames from which the Source Code came and (2) line numbers. The Producing Party may refuse to provide copies of Source Code printouts that fail to comply with this section.

(d)     Authorized reviewer(s) in this action shall not print Source Code that has not been reviewed on the Source Code Computer, or in order to review the Source Code elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code electronically on the Source Code Computer, as the Parties acknowledge and agree that the purpose of the protections herein would be frustrated by such actions.

(e)     Authorized reviewer(s) are prohibited from bringing outside electronic devices, including but not limited to laptops, floppy drives, zip drives, or other hardware into the secure room, except as outlined in subparagraph (f). Nor shall any cellular telephones, personal digital assistants (PDAs), Blackberries, cameras, voice recorders, Dictaphones, external or

18

portable telephone jacks, or other outside electronic devices be permitted inside the secure room, except for medical devices, implants, or equipment reasonably necessary for any legitimate medical reason.

(f)    If any authorized reviewer(s) reviewing Source Code seeks to take notes, all such notes will be taken on bound (spiral or other type of permanently bound) notebooks.  No loose paper or other paper that can be used in a printer may be brought into the secure room.  In addition to taking notes on bound notebooks, an authorized reviewer may also bring a USB memory device to the secure room, to be inserted into a separate notetaking laptop computer provided by the Producing Party or the Producing Party's vendor.  The notetaking laptop computer shall be configured with Microsoft Word, such that the Reviewing Party can create or modify documents directly on the USB memory device plugged into the notetaking laptop computer.  The Receiving Party shall encrypt any file on the USB memory device that contains confidential material subject to this Protective Order using Microsoft Word's "Encrypt with Password" functionality accessible through the File->Info->Protect Document menu in Microsoft Word.  The Receiving Party's Outside Counsel and/or Experts may not copy the Source Code into the notes and may not take such notes electronically on the Source Code Computer itself.  Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Order, the Receiving Party's Outside Counsel and/or Experts shall remove all notes, documents, USB memory devices, and all other materials from the Source Code Review Room. The Producing Party shall not be responsible for any items left in the room following each inspection session, and the Receiving Party shall have no expectation of confidentiality for any items left in the room following each inspection session without a prior agreement to that effect.

19

(g)    If Source Code is quoted or set forth in a confidential pleading or expert report, the Party including the Source Code will limit the amount of such Source Code to what is reasonably necessary for the party to make its point and will designate such documents as "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY." Absent the Producing Party's consent (which will not be unreasonably withheld), an excerpt of programming language text will not exceed five (5) continuous lines of code, and an excerpt of Chip-Level Schematics or Integrated Circuit Layouts will not exceed five (5) sequential pages of printouts of such material.  Except as approved by the Producing Party in writing, longer excerpts shall not be copied for use in court documents but shall be referred to by citation to production page numbers and lines.  A Receiving Party may not submit copies of Source Code as part of a Court document or exhibits thereto.  Source Code must be submitted *in camera* only.  Instead, a Receiving Party wishing to refer to Source Code in Court documents shall use pin cites to Source Code material submitted *in camera.*  In the event copies of Source Code printouts are used as exhibits in a deposition or trial, printouts shall not be provided to the court reporter, and the further copies of the original Source Code printouts made for the deposition or trial shall be destroyed at the conclusion of the deposition or trial.  The original copies of deposition exhibits designated "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY" will be maintained by the deposing party under the terms set forth in this Protective Order.

(h)    In addition to other reasonable steps to maintain the security and confidentiality of Source Code, printed copies of the Designated Source Code Material maintained by the Receiving Party must be kept in a locked storage container when not being actively reviewed or otherwise being transferred as permitted by this Protective Order.

20

(i)    The Receiving Party's Counsel of Record shall keep log(s) recording the identity of each individual to whom each hard copy of each Producing Party's Source Code is provided and when it was provided to that person in the first instance, and within thirty (30) days after the issuance of a final, non-appealable decision resolving all issues in this action, the Receiving Party must serve upon Producing Party the log.  In addition, any Expert of the Receiving Party to whom the paper copies of the Source Code were provided must certify in writing that all copies of the Source Code were destroyed or returned to the counsel who provided them the information and that they will make no use of the Source Code, or of any knowledge gained from the source code in any future endeavor.

## DISCLOSURE OF PROTECTED MATERIAL

44.    Unless otherwise directed by the Court or authorized in writing by the Designating Party, CONFIDENTIAL Discovery Material may be disclosed by the Receiving Party only to the following persons:

(a)    In-house counsel of the Receiving Party, including paralegals, eDiscovery teams, and secretarial staff, provided that they have signed the "Declaration to be Bound" attached as Exhibit A;

(b)    Any Outside Counsel;

(c)    Contract attorneys retained by a Party's Outside Counsel for the sole purpose of assisting with document review in this Litigation and who shall be subject to the same restrictions as Outside Counsel;

(d)    Any Expert who is expressly retained by any Outside Counsel to assist in this Litigation, including any associates or analysts working under the supervision of the Expert, with disclosure only to the extent necessary to perform such work, who have signed the

21

"Declaration to be Bound" attached as Exhibit A and as to whom the procedures set forth in Paragraph 44 have been followed;

(e)    Support personnel for Experts, such as secretaries and clerical staff, assisting with this Litigation under the supervision of the Expert;

(f)    Any interpreter, court reporter, or other shorthand reporter or typist who is translating, recording, or transcribing documents or testimony in connection with this Litigation;

(g)    Professional Vendors retained by a Party or Outside Counsel to whom disclosure is reasonably necessary for this action;

(h)    Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the Parties, and his or her staff;

(i)    Personnel of the Court and all appropriate courts of appellate jurisdiction; and

(j)    Any other person with the prior written consent of the Designating Party or by order of this Court.

45.    Unless otherwise directed by the Court or authorized in writing by the Designating Party, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material may be disclosed by the Receiving Party only to the following persons:

(a)    Any Outside Counsel;

(b)    Contract attorneys retained by a Party's Outside Counsel for the sole purpose of assisting with document review in this Litigation and who shall be subject to the same restrictions as Outside Counsel;

22

**A1812**

(c)     Any Expert who is expressly retained by any Outside Counsel to assist in this Litigation, including any associates or analysts working under the supervision of the Expert, with disclosure only to the extent necessary to perform such work, who have signed the "Declaration to be Bound" attached as Exhibit A and as to whom the procedures set forth in Paragraph 44 have been followed;

(d)     Support personnel for Experts, such as secretaries and clerical staff, assisting with this Litigation under the supervision of an Expert;

(e)     Any interpreter, court reporter, or other shorthand reporter or typist who is translating, recording, or transcribing documents or testimony in connection with this Litigation;

(f)     Professional Vendors retained by a Party or Outside Counsel to whom disclosure is reasonably necessary for this action;

(g)     Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the Parties, and his or her staff; who have, after the date of this Protective Order, signed the "Declaration to be Bound" attached as Exhibit A;

(h)     Personnel of the Court and all appropriate courts of appellate jurisdiction;

(i)     Any other person requested with the prior written consent of the Designating Party or by order of this Court who has signed the "Declaration to be Bound" attached as Exhibit A.

46.    CONFIDENTIAL Discovery Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material shall not be disclosed to persons described in Paragraph 41 (a), (d), (e), or (j) or 42 (c), (d), (g), or (i), unless and until such person has executed

23

the "Declaration to be Bound" attached as Exhibit A. Outside Counsel must maintain a copy of the executed Exhibit A for each such person during the Litigation and for one (1) year thereafter.

47.    Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, before a Party can disclose to an Expert any Protected Material, Outside Counsel for the Receiving Party: (a) shall serve a notice on the Designating Party identifying such individual by name, business address, business profession, country of citizenship, and including an up-to-date curriculum vitae ("CV") or equivalent resume disclosing the individual's employment history, past or present relationship with any of the Parties and Affiliates, the individual's employment and consulting relationships for the past five (5) years with the dates of the consultancy or employment and a brief description of the subject matter of the consultancy or employment (to the extent such information is not disclosed on the individual's curriculum vitae), all cases in which the individual has testified in a deposition or a trial in the past six (6) years, an indication of whether Outside Counsel for the Receiving Party intends to show the individual CONFIDENTIAL Discovery Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material, and an executed copy of the "Declaration to be Bound" attached as Exhibit A from the individual to whom the disclosure is to be made; and (b) shall abide by the provisions of Paragraph 34.

48.    With respect to Experts that have not been previously disclosed to the Producing Party, the Designating Party shall have five (5) business days, starting from the first business day following the date upon which the Receiving Party provides the notice and all information regarding the Expert required by Paragraph 44 to the Designating Party, to object for good cause in writing to such disclosure via e-mail to all Outside Counsel. After the expiration of the five (5) business days, if no objection for good cause has been asserted by the Designating Party, Protected

24

Material may be disclosed to the Expert pursuant to the terms of this Protective Order.  Any objection by the Designating Party must be made for good cause, and must set forth in detail the grounds on which it is based.  Should the Receiving Party disagree with the basis for the objection(s), the Receiving Party must first attempt to resolve the objection(s) with the Designating Party via a verbal meet and confer.  If the meet and confer efforts do not resolve the dispute within five (5) business days from the date upon which Receiving Party was first notified of any objection for good cause by Designating Party, the parties shall raise the dispute with the Court using the discovery dispute procedures as set forth in the Scheduling Order within three (3) business days.  The burden shall be on the objecting Party to demonstrate to the Court why such individual should not be permitted to receive Protected Material.  Such Protected Material shall not be disclosed to such individual pending the Court's resolution of the dispute.  If relief is not sought from the Court within that time, the objection shall be deemed withdrawn.  The foregoing time periods may be extended or shortened by agreement of the Parties or by Order of the Court.

49.     The recipient of any Protected Material that is provided under this Protective Order (including any copies or excerpts made thereof) shall maintain such Protected Material in a secure and safe area and shall exercise reasonable and proper care with respect to the storage, custody, use, and/or dissemination of such Protected Material.  The recipient of Protected Material produced in electronic form shall maintain such Protected Material on a secure, password-protected computer, drive, or server with access restricted to persons authorized under Paragraphs 41 and 42, respectively.

50.     Pre-trial proceedings shall be conducted in a manner, subject to the supervision of the Court, to protect from disclosure Protected Material to persons not authorized to have access to such Protected Material.  Any Party intending to disclose or discuss Protected Material at pretrial

25

proceedings shall make reasonable efforts to give advance notice to the Producing Party, and shall otherwise treat such Protected Material consistent with the terms of this Protective Order.

### PRODUCING A THIRD PARTY'S PROTECTED MATERIALS

51.     In the event that a Party is required, by a valid discovery request, to produce a Third Party's confidential information in its possession, and the Party is subject to an agreement restricting the ability to produce the Third Party's confidential information, then the Party shall:

(a)     promptly notify in writing the requesting Party and the Third Party that some or all of the information requested is subject to a confidentiality agreement with a Third Party;

(b)     promptly provide the Third Party with a copy of the Protective Order and the relevant discovery request(s); and

(c)     promptly make the information requested available for inspection by the Third Party.

52.     If the Third Party fails to seek a protective order or other relief from this Court within twenty-one (21) days of receiving the notice and accompanying information, the Third Party's confidential information responsive to the discovery request shall be produced, with an appropriate confidentiality designation.  If the Third Party timely seeks a protective order, the Third Party's confidential information responsive to the discovery request shall not be produced before a determination by the Court.  Absent a Court order to the contrary, the Third Party shall bear the burden and expense of seeking protection in this Court of its Protected Material.

### EXPERT DISCOVERY

53.     In accordance with Federal Rule of Civil Procedure 26(b), communications and exchanges between counsel and Experts (including testifying Experts), including those made in preparing drafts of expert reports and declarations, are not discoverable unless the Expert relies on

any such communication to support his or her opinion. In addition, draft expert reports and declarations are not discoverable. Communications and exchanges between counsel and non-testifying Expert witnesses are not discoverable. Notes made by Experts for purposes of this Litigation are not discoverable. Neither Party shall seek discovery of non-discoverable Expert communications, exchanges, notes, or draft reports or declarations.

## NO WAIVER OF PRIVILEGE BY VIRTUE OF DISCLOSURE

54.    The disclosure or production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, or the failure to object to the use of such Privileged Information, whether inadvertent or otherwise, will not waive the applicable privilege and/or protection regardless of the circumstances of the disclosure or production, whether in this Litigation or in any other federal or state proceeding. This provision constitutes an Order under Federal Rule of Evidence 502(d), which shall be interpreted to provide the maximum protection allowed by Rule 502(d), and shall be interpreted consistent with applicable ethical guidelines. Upon discovery of the production of Discovery Material over which a privilege or protection is claimed, a Producing Party may promptly request the return of such Discovery Material. The Producing Party must produce a privilege log or amended privilege log for any such Discovery Material within three (3) days of its request for the return of such material. If the Producing Party claims that only a portion of a Document contains privileged or protected material, the Producing Party shall also provide a new copy or copies of the Document(s) with the relevant material redacted concurrent with the notification, to the extent reasonably practicable. Upon a request from any Producing Party who has produced Discovery Material that it believes is privileged and/or protected (the "Identified Materials"):

(a)    the Receiving Party shall not, from that point onward, copy, distribute, or otherwise use in any manner the Identified Materials, unless the parties agree or the Court orders;

27

**A1817**

(b)      the Receiving Party shall instruct all persons to whom the Receiving Party has disseminated the Identified Materials that such information is subject to this Order and may not be copied, distributed, or otherwise used; and

(c)      the Receiving Party and all persons notified as set out in the preceding subparagraph shall, within ten (10) calendar days:

     i.      return, destroy, delete, or sequester, all Identified Materials, and make a good faith effort to return, destroy, delete, or sequester all portions of all analyses, memoranda, or notes that were internally generated based upon the Identified Materials;

     ii.      return, destroy, delete, or sequester, all copies of the Identified Materials in electronic format in databases, production media, or other locations used to store the documents.  For Identified Materials stored on production media, the Receiving Party may load the production, but shall exclude the Identified Materials (thus sequestering them on the production media), or immediately destroy, delete, or sequester them after loading the production.

55.      For purposes of this Order, Identified Materials that are not reasonably accessible under Federal Rule of Civil Procedure 26(b)(2)(B) because they are stored by the Receiving Party on backup storage media are deemed to be sequestered.  Should such data be retrieved, the Receiving Party must promptly take steps to delete the restored Identified Materials.

56.      The Receiving Party may make no use of the Identified Materials during any aspect of this matter or any other matter, including in depositions or at trial, unless the documents are later designated by a court of competent jurisdiction as not privileged or protected.

28

57.     If any Receiving Party has reason to believe that it is in receipt of Privileged Information from a Producing Party, the Receiving Party shall not copy, distribute, or otherwise use such Privileged Information in any manner and shall provide prompt notice to the Producing Party to afford an opportunity to request return of the materials in the manner set forth herein.

58.     Nothing in this Order overrides any ethical responsibilities to refrain from examining, disclosing, or using materials that an attorney knows or reasonably should know to be privileged and to inform the Producing Party that such materials have been produced.

59.     The contents of the Identified Materials shall not be disclosed to anyone who was not already aware of the contents before the notice was made.

60.     If the Receiving Party has any notes or other work product reflecting the contents of the Identified Materials, the Receiving Party will not review or use those materials unless a court of competent jurisdiction later designates the Identified Materials as not privileged or protected.

61.     If the Receiving Party returning the Identified Materials contests the Producing Party's claim of privilege or other applicable protection, the parties will promptly meet and confer in an attempt to resolve the dispute.  If the parties are unable to resolve the dispute, the Receiving Party may move the Court for an order compelling production of some or all of the Identified Materials:

(a)     The basis for such a motion may not be the fact or circumstances of the production or disclosure or any of the factors listed in FRE 502(b).

(b)     The Producing Party retains the burden, upon the Receiving Party's challenge, of establishing the privileged or protected nature of Identified Materials.

29

(c)    Pending resolution of the motion, the Receiving Party must not use the contested information in any way, or disclose it to any person, other than those required by law to be served with a copy of the sealed motion.

62.    This Protective Order does not constitute a concession by any party that any documents are subject to protection by the attorney-client privilege, the work product doctrine or any other potentially applicable privilege or doctrine.  This agreement also is not intended to waive or limit in any way any party's right to contest any privilege claims that may be asserted with respect to any of the documents produced except to the extent stated in the agreement.

63.    Identified Materials under this Order shall not be used as grounds by any third party to argue that any waiver of privilege or protection has occurred by virtue of any production in this case.

64.    FRE 502(b) is inapplicable to the Identified Materials, which shall receive the maximum protection afforded by FRE 502(d).  Under FRE 502(d) and 28 U.S. Code § 1738, this Order shall be enforceable and granted full faith and credit in all other state and federal proceedings.  Any subsequent conflict of law analysis shall apply the law most protective of privilege and work product.

65.    Notwithstanding the provisions of this Order, Parties may redact from any document, whether Protected Material or not, any information containing privileged material, attorney work product, or any other data protected from disclosure by State or Federal laws or regulations.

## FAILURE TO DESIGNATE

66.    The failure by a Producing Party to designate Discovery Material as CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material shall not

be a waiver of such designation provided that the Producing Party that fails to make such designation informs the Receiving Party that such Discovery Material is CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY promptly after the failure to designate first became known to the Producing Party. The failure by a Producing Party to designate Discovery Material as CONFIDENTIAL, as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or as HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY shall not preclude a Party from seeking relief from the Court at a later date requesting imposition of such designation or challenging the propriety thereof. The Producing Party shall reproduce the Discovery Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Party. Upon receiving the Discovery Material with the correct confidentiality designation, the Receiving Party shall promptly return or securely destroy all Discovery Material that was not designated properly and certify compliance.

67. In the event of disclosure of Protected Material to any person not authorized to such access under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately inform Outside Counsel for the Party whose Protected Material has been disclosed of all known relevant information concerning the nature and circumstances of the disclosure. The Party responsible for improperly disclosing such Protected Material shall also promptly take all reasonable measures to retrieve the improperly disclosed Protected Material, to ensure that no further or greater unauthorized disclosure and/or use thereof is made, to inform the person or persons to whom unauthorized disclosures were made of all the terms of this Protective Order, and to request such person or persons to execute the "Declaration

31

to be Bound" attached as Exhibit A.  Nothing in these provisions should be construed as limiting any Producing Party's rights to seek remedies for a violation of this Protective Order.

68.     If the Receiving Party discovers that an unauthorized person or persons has accessed or obtained the Protected Material of another Party, the Receiving Party shall: (1) provide written notice to Producing Party of such breach within three (3) business days of Receiving Party's discovery of the breach; (2) investigate and remediate the effects of the breach, and provide Producing Party with assurance reasonably satisfactory to Producing Party that such breach shall not recur; and (3) provide sufficient information about the breach that the Producing Party can reasonably ascertain the size and scope of the breach including, but not limited to, the nature of the compromise, the timing of the compromise, the documents compromised, the nature of the unauthorized party, and the data security in place at the time of the compromise.  If required by any judicial or governmental request, requirement, or order to disclose such information, the Receiving Party shall take all reasonable steps to give the Producing Party sufficient prior notice in order to contest such request, requirement, or order through legal means.  The Receiving Party agrees to provide reasonable cooperation to the Producing Party or law enforcement in investigating any such security incident.  In any event, the Receiving Party shall promptly take all necessary and appropriate corrective action to terminate the unauthorized access as it deems appropriate in its good faith and reasonable judgment.  If the unauthorized access or disclosure of the Protected Material requires notice to individuals, organizations, or regulators under applicable law, then the Receiving Party shall follow the reasonable instructions of the Producing Party regarding such notice at their own cost.

## DATA SECURITY

69.     Receiving Parties must take reasonable precautions to protect Protected Material from loss, misuse and unauthorized access, disclosure, alteration and destruction, including but

32

**A1822**

not limited to: (a) material in electronic format shall be maintained in a secure litigation support site(s) that applies standard industry practices regarding data security, including but not limited to application of access control rights to those persons entitled to access Protected Material under this Order; (b) any Protected Material downloaded from the litigation support site(s) in electronic format shall be stored only on encrypted devise(s) (e.g., laptop, tablet, smartphone, thumb drive, portable hard drive) that are password protected with access limited to authorized users, if the user is unable to password protect and/or encrypt the device, then the Protected Material shall be password protected and/or encrypted at the file level; and (c) derivations of Protected Material, including any lists, memorandum, indices or compilations prepared or based on an examination of this material, that quote from or paraphrase such Designated material in a manner that enables it to be identified shall be accorded the same status of confidentiality as the underlying Protected Material.

## **DESTRUCTION OF PROTECTED MATERIALS**

70.    Unless otherwise ordered or agreed in writing by Producing Party, not later than sixty (60) days (as calculated by Fed. R. Civ. P. 6) after the final disposition of this Litigation, each Receiving Party, including Outside Counsel, will use commercially reasonable efforts to destroy all Protected Material produced by the other Parties in this action and destroy or redact any such Protected Material included in work product, pleadings, motion papers, legal memoranda, correspondence, trial transcripts and trial exhibits admitted into evidence ("derivations") and all reasonably accessible copies thereof.

71.    With respect to any copy of Protected Material or derivation thereof that remains on back-up tapes and other disaster storage media of an authorized reviewer(s), the Receiving Party shall not be required to delete Protected Material to the extent the systems are overwritten in the normal course of business, are located in electronic files not reasonable accessible, or where

33

located in archiving and back-up systems where deletion would require more than commercially reasonable efforts.  Neither the Receiving Party nor its consultants, experts, counsel or other party acting on its behalf shall make copies of any such information available to any person or otherwise retrieve, access, or use the material for any purpose other than backup or disaster recovery unless compelled by law and, in that event, only after thirty (30) days prior notice to Producing Party or such shorter period as required by court order, subpoena, or applicable law.

72.     Not later than sixty (60) days (as calculated by Fed. R. Civ. P. 6) after the final disposition of this Litigation, the Party receiving any Protected Material shall certify in writing that it, including its Outside Counsel, has complied with its obligations under this Paragraph.

## MISCELLANEOUS PROVISIONS

73.     This Protective Order is without prejudice to the right of any Party to seek further or additional protection of information for which the protection of this Protective Order is not believed by any Party to be adequate.  Nothing in this Protective Order shall be deemed to bar or preclude any Producing Party from seeking such additional protection, including, without limitation, an order that certain information may not be discovered at all.

74.     The entry of this Protective Order shall not be construed as a waiver of any right to object to the furnishing of information in response to discovery, and except as expressly provided, shall not relieve any party of the obligation of producing information in the course of discovery.

75.     If at any time Protected Material of a Producing Party is subpoenaed from a Receiving Party or is the subject of a discovery request directed to a Receiving Party in any proceeding before any court or arbitral, administrative, or legislative body, the person to whom the subpoena or other request is directed shall immediately give written and email notice pursuant to the provisions of Paragraph 75 and shall provide the Producing Party with an opportunity to object to the production of such materials.  Such notification must include a copy of the subpoena

34

or order.  The Receiving Party also must immediately inform, in writing, the party who caused the subpoena or order to issue that some or all of the material covered by the subpoena or order is subject to this Protective Order.  In addition, the Receiving Party must provide a copy of this Protective Order promptly to the party in the other action that caused the subpoena or order to issue.  If the Producing Party does not seek a protective order within fifteen (15) days (as calculated by Fed. R. Civ. P. 6) of the date written notice is given, the Receiving Party to whom the subpoena or other request is directed may produce, on or after the date set for production in the subpoena or other request, but not prior to the end of the fifteen (15) day notice period, such material in response thereto, under a protective order with confidentiality provisions equal to or more restrictive than those of this Protective Order.

76.    Other Proceedings.  By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated as CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY, pursuant to this Protective Order shall promptly notify that party of the motion so that the party may have the opportunity to appear and be heard on whether that information should be disclosed.

77.    Outside Counsel shall have the right to exclude from depositions, other than the deponent and the reporter, any person who is not authorized under this Protective Order to receive Protected Material.  Such right of exclusion shall be applicable only during periods of examination or testimony directed to Protected Material.

78.     All notices during this Litigation required by this Protective Order are to be made by email to a Party's Outside Counsel (including, if available, to Outside Counsel's service distribution email address designated for this Litigation), and all notices subsequent to the termination of Litigation are to be made by email and U.S. mail to a Party's Outside Counsel and the office of the Party's general counsel, if known.  The date by which a Party receiving notice shall respond or otherwise take action shall be computed from the date of service as calculated by Fed. R. Civ. P. 6.  Any of the notice requirements herein may be waived in whole or in part, but only in writing signed by Outside Counsel for the Designating Party.

79.     Nothing in this Protective Order shall bar or otherwise restrict any Outside Counsel from rendering advice to his or her client with respect to this Litigation and, in the course thereof, relying in a general way upon his or her examination of Protected Material produced or exchanged in this Litigation: provided, however, that in rendering such advice and in otherwise communicating with a person not permitted access to Protected Material under this Protective Order, the Outside Counsel shall not disclose the contents of Protected Material produced by any other Party or Third Party.

80.     Execution of this Protective Order shall not constitute a waiver of the right of any Party to claim in this Litigation or otherwise that any document, communication, or any portion thereof is privileged or otherwise non-discoverable, or is not admissible in evidence in this Litigation or any other proceeding.

81.     Each person who receives CONFIDENTIAL Discovery Material or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material agrees to be subject to the jurisdiction of this Court for the purpose of any proceedings relating to the performance under, compliance with, or violation of this Protective Order.

36

A1826

82.    This Order may be amended by the agreement of Outside Counsel for the Parties in the form of a written Stipulated Amended Protective Order signed by each Party's Outside Counsel and filed with the Court for approval.  The Court retains the right to allow disclosure of any subject or Protected Material covered by this Protective Order or to modify or vacate this Protective Order at any time in the interest of justice.

83.    Neither the final disposition of this Litigation nor the termination of employment of any person with access to any Protected Material shall relieve any individual from the obligation of maintaining the confidentiality of such information in accordance with this Protective Order. The Court shall retain jurisdiction to enforce the terms of the Protective Order after final disposition of this Litigation.

37

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis J. Murray
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
rjgarrett@paulweiss.com

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
cnyarady@paulweiss.com
ejmorgan@paulweiss.com
jbraly@paulweiss.com

*Attorneys for Plaintiffs*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302)   571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
shaelyndawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

38

**A1828**

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

*Attorneys for Defendant*

**SO ORDERED this 21st day of March 2025.**


**The Honorable Maryellen Noreika**
**United States District Judge**

39

A1829

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,                    )
   a Delaware corporation; and            )
QUALCOMM TECHNOLOGIES, INC.,               )
   a Delaware corporation,                )
                                )
                Plaintiffs,            )
                                )
     v.                                   )    C.A. No. 24-490 (MN)
                                )
ARM HOLDINGS PLC., f/k/a ARM LTD.,         )
   a U.K. corporation,                    )
                                )
               Defendant.             )

## DECLARATION TO BE BOUND BY PROTECTIVE ORDER

I, _____ [print or type full name], a citizen of

_____ [print or type country of citizenship], am a

_____[print or type present occupation or job description] of

_____ [print or type business name

and business address] and declare under penalty of perjury that I have read in its entirety and

understand the Protective Order that was issued by the United States District Court for the

District of Delaware on _____ [date] in the above-captioned Litigation.

I have received and carefully read the Protective Order in this Litigation and understand

its provisions.  Specifically, I understand that I am obligated, under order of the Court, to hold in

confidence and not to disclose the contents of anything provided to me in the above-captioned

case marked "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

ONLY" except as permitted by the Protective Order.  According to the restrictions of Paragraph

34 of the Protective Order, I will use Discovery Material, including CONFIDENTIAL Discovery

Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material, or

A1830

information derived therefrom solely for purposes relating to the above-captioned Litigation.  I will never use such Discovery Material or information derived therefrom, directly or indirectly, in competition with the Producing Party, including hardware or software development work or product development work intended for commercial purposes related to the information disclosed in the Protected Material, from the time of receipt of such material through and including the date that I cease to have access to any Protected Material, nor will I permit others to do so.

In addition to the foregoing, I understand that I must abide by all of the provisions of the Protective Order.  At the termination of this Litigation or any time requested by Outside Counsel for the Party by whom I am engaged, I will return or destroy all documents and other materials, including notes, computer data, summaries, abstracts, or any other materials containing or reflecting CONFIDENTIAL Discovery Material or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material that have come into my possession, and will return or destroy all documents or things I have prepared relating to or reflecting such information.

I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this Litigation.  I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Date:_____

Signature:_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED, )
   a Delaware corporation; and )
QUALCOMM TECHNOLOGIES, INC., )
   a Delaware corporation, )
                             )    C.A. No. 24-490 (MN)
            Plaintiffs, )

v. )

ARM HOLDINGS PLC., f/k/a ARM LTD., )
   a U.K. corporation, )
            Defendant. )

## PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI REGARDING SUBSEQUENT EVENTS

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

November 26, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
Ben Yenerall (#7132)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com
byenerall@morrisnichols.com

*Attorneys for Plaintiffs*

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
Jenifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

**A1832**

Dear Special Master Rychlicki,

Pursuant to D. Del. LR 7.1.2, Plaintiffs write to advise Your Honor of subsequent events that have occurred since the August hearings that relate to Qualcomm's pending motions to compel production of documents Arm withheld or redacted based on improper privilege assertions. Ex. 1 at 2-3.

On August 1, Qualcomm moved to compel production of communications between Arm and FGS Global, Arm's PR firm, which Arm improperly had withheld or redacted as privileged. Ex. 1 at 2-3. At the August 14 hearing, Arm represented that "of course there are going to be communications, including with Mr. Collins, our chief legal officer who while he had involvement in some non-privileged activity is our chief legal officer and he also had involvement in some privilege activity as you might expect with respect to a letter that relates to litigation and giving someone a notification that they're in breach of a contract." Ex. 2 at 193:19-194:9; *see also id.* at 193:2-10 ("the redactions that we have are for communications exchanged for the purpose of giving or receiving legal advice."), 195:16-198:23 (representing that ███████████████████ ███████████████████████████████████████████████████ ), 201:5-12 (observing "involvement from Mr. Collins" in communications with FGS Global).

The parties completed summary judgment and *Daubert* briefing on November 14, 2025. Arm's summary judgment motion further confirms that communications with FGS Global that it withheld or redacted are not privileged. In its motion, Arm concedes that its "public relations firm showed Mr. King [at Bloomberg] an image of the letter via Zoom call" (D.I. 486 ¶ 11), and defends its decision to leak the letter to Bloomberg as being "indistinguishable" from issuing a press release.[1] D.I. 438 at 21-22; *see also* D.I. 488 at 13 ("Qualcomm makes no meaningful distinction for *Noerr-Pennington* purposes between showing the Breach Letter to a reporter or its PR firm and issuing a press release"). Given this description, there can be no serious argument that communications between Arm and FGS Global are privileged. *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 3140050, at *13-14 (D.N.J. July 22, 2021) (finding "communications concerning what would generally be described as public relations work" not privileged). They are not, and should be produced in full.

Qualcomm respectfully requests that Your Honor grant its motions to compel. Counsel is available should Your Honor have any questions.

---

[1] By noting that Arm has taken the position that the leak of the October 2024 letter is akin to a press release (and is therefore not privileged), Qualcomm does not waive its challenge to Arm's characterization that its actions are "akin to 'press releases' intended to publicize Arm's 'litigating position' and 'provid[e] [Arm's] view of the case to . . . customers.'" *See* D.I. 464 at 28.

1

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

Words: 500

Encls.

2

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,                     )
   a Delaware corporation; and             )
QUALCOMM TECHNOLOGIES, INC.,                )
   a Delaware corporation,                 )
                               )
             Plaintiffs,                  )      C.A. No. 24-490 (MN)
                               )
     v.                                      )
                               )
ARM HOLDINGS PLC., f/k/a ARM LTD.,          )
   a U.K. corporation,                     )
                               )
             Defendant.                   )

## PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI REGARDING OUTSTANDING DISCOVERY DISPUTES

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

A1836

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

August 1, 2025

Dear Special Master Rychlicki:

In August 2022, Arm sued Qualcomm for developing unlicensed technology after Arm terminated agreements with Qualcomm subsidiary Nuvia. *Arm Ltd.* v. *Qualcomm Inc.*, C.A. 22-1146 (MN), D.I. 1 ¶ 78. Rather than waiting for resolution through litigation, Arm engaged in self-help, withholding licensed technology from Qualcomm, refusing to license other technology, and interfering with Qualcomm's customer relationships. D.I. 137 ("SAC"). Qualcomm filed this lawsuit. D.I. 2. In December 2024, the *Arm* v. *Qualcomm* jury found the Qualcomm CPUs licensed. C.A. 22-1146 (MN), D.I. 572 at 1.

## I.    Refusal to Produce Unredacted Third-Party Agreements

**TLAs.** Qualcomm needs Arm's TLAs and related agreements—and associated 30(b)(6) testimony (**RFPs 123, 140; Topics 2, 9**)[1]—to prove quotes Arm gave Qualcomm for Arm Cortex Implementation Cores (codenamed ███████████████████) violated the Qualcomm TLA, ██████████████████████████████████. SAC ¶¶ 104-105; Ex. 8 ██████████. Arm claims it based the October 2024 quote on ████████████████████. Ex. 9 at 23:1-24; Ex. 10 at 97:12-98:2; Ex. 11 at 65:24-72:9. Arm should produce all[2] agreements, so Qualcomm can test whether Arm based its ████████ ████████████████████—and whether Arm's quotes for other IP violated the implied covenant of good faith and fair dealing. Arm should also produce a witness on the agreements' royalty rates.

Arm claims it "produced all third-party agreements" licensing the Implementation Cores "to which it has not received an objection or a motion for a Protective Order was not filed." Ex. 12 at 2.[3] Arm's withholding based on mere "objections" is improper under the Protective Order. D.I. 84 ¶ 51. Arm's representation also is inaccurate: it has not produced agreements for several entities licensing these products, including ███████████████████████████ ██████████████████████. And Arm omitted Annexes for several agreements that contain pricing information. ████████████████████████████████. Finally, Arm improperly limits production to TLAs licensing ███████████████, but Qualcomm's claims allege Arm provided unreasonable quotes for other TLA IP. SAC ¶¶ 51, 102.

Arm also put these third-party agreements at issue by using the fact that Qualcomm has not seen third-party TLAs to cross-examine Qualcomm witnesses, asking whether they were aware of pricing of ███████████████ in third-party TLAs and whether the rates provided to Qualcomm were accepted by the industry. Ex. 20 at 106:6-107:22; Ex. 21 at 49:16-19, 53:8-22.

---

[1] "RFP" refers to Qualcomm's requests for production, Exhibits 1-4. "Topic" refers Qualcomm's Notice of Rule 30(b)(6) Deposition of Arm, Exhibit 5. "Interrogatory" refers to Qualcomm's interrogatories, Exhibits 6-7.

[2] With respect to ████'s agreements, Morris, Nichols, represents Qualcomm.

[3] ████ agreed to production of its TLA and related agreements, Ex. 13, yet Arm has not produced them.

Arm cannot challenge Qualcomm's knowledge of third-party pricing while simultaneously withholding it.

**ALAs.** Arm breached the Qualcomm ALA by withholding out-of-box packages ("OOBs") and Architecture Compliance Kit ("ACK") patches. SAC ¶¶ 173-180. Arm argues it was not obligated to deliver that technology, including because it is not ███████████ under the ALA. Ex. 22. Arm provided that technology to other licensees, Ex. 45 at 94:25-97:16, 126:8-127:4, thus, Qualcomm seeks to determine whether the definition of and obligation to deliver ██████ ██████████ is the same in those partners' ALAs.

Additionally, in May 2020, Qualcomm elected to extend the Qualcomm ALA to ███████ ██████████████████████ including Armv10. SAC ¶¶ 128-134, 184. ████████ █████████████████████████ *id.* ¶ 65; Ex. 23, yet Arm failed to respond to Qualcomm's election for five years, violating the implied covenant of good faith and fair dealing. Arm denies a breach, claiming it engaged in good faith negotiation even though Qualcomm's election was improper and the ALA would not cover v10. Ex. 24. Qualcomm needs to review other ALAs to address Arm's defense.

In *Arm* v. *Qualcomm*, Arm produced limited heavily redacted ALAs, which are insufficient here. Qualcomm needs *all* unredacted ALAs and the annexes thereto (**RFP 27; Topics 2, 7**) to evaluate the scope of deliverables and rights of other licensees treated differently than Qualcomm. For example, the produced ALAs redact ██████████████ terms, Ex. 25 at 2, 4, 12, yet Arm argues it did not breach the Qualcomm ALA because the OOBs and ACK patches are "████████ and not "█████████████," Ex. 22 at 6, 10. Arm also redacted all fee and royalty information, Ex. 25, and refused to produce ███████████████ (**RFP 162**), both necessary to test Arm's claim of good faith negotiation. At least ██████ agreed to produce its ALA (with limited redactions that do not relate to the provisions at issue), Ex. 13, yet Arm has not produced that document.

As with the TLAs, Arm also questioned multiple Qualcomm witnesses regarding their knowledge of terms in third-party ALAs and whether those terms were comparatively advantageous to Qualcomm, while withholding the agreements that would allow Qualcomm to refute the implications of Arm's examinations. Ex. 20 at 57:2-18; Ex. 26 at 78:14-21, 80:12-21, 164:17-25. This is improper: Qualcomm must be allowed to probe Arm's defenses.

## II.    Improper Privilege Determinations

Arm withheld or redacted documents based on improper privilege assertions. The relevant documents should be produced and redactions should be lifted.

**Communications with FGS Global.** Qualcomm asserted claims arising from the leak by Arm's counsel (MoFo) and communications firm (FGS Global) to Bloomberg News of an October 22, 2024 letter Arm wrote to Qualcomm threatening to terminate Qualcomm's ALA. Arm and FGS Global assert communications about the leak are privileged (including "common interest") or work product. Exs. 29; 46 (FGS Emails). But generic "public relations services," including "[r]eviewing press coverage, making calls to various media to comment on developments in the litigation, and even 'finding friendly reporters,'" are not protected. *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 3140050, at *13-14 (D.N.J. July 22, 2021); *In re Riddell Concussion*

2

*Reduction Litig.*, 2016 WL 7108455, at *9 (D.N.J. Dec. 5, 2016), *aff'd in relevant part*, 2017 WL 11633446 (D.N.J. Jan. 5, 2017).  FGS was engaged by Arm, not its outside counsel.[4]  Ex. 28 at 24:2-27:20, 57:17-23.  And common interest privilege is merely "an extension of the attorney-client privilege or an exception to the waiver of that privilege."  *10x Genomics, Inc.* v. *Celsee, Inc.*, 505 F. Supp. 3d 334, 337 (D. Del. 2020).

**Improper Date Cutoff.**  Arm failed to log documents dated after the original April 2024 Complaint.  The ESI Order required a privilege log of withheld documents generated prior to "the filing of the Complaint." D.I. 85 ¶ 1(e)(ii).  The operative "Complaint" contemplated by the March 21, 2025 ESI Order was the December 16, 2024 First Amended Complaint.  D.I. 36.  Qualcomm's claims are partly based on post-April 2024 conduct, including Arm's October 22, 2024 letter.  While Arm eventually logged 27 entries for "documents relating to Arm's communications with Bloomberg regarding the notice" and related follow up communications, D.I. 162 at 4, it otherwise refused to log withheld documents dated from April 18 and December 16, 2024.  Ex. 29.

**Subject Lines Redactions.**  Arm redacted for privilege subject lines for four meetings with outside counsel regarding the leak.  Exs. 30-33.  Arm also clawed back metadata revealing subject lines for 18 documents.  Ex. 34.  In addition to the subject lines not being privileged, the ESI Order contemplates a party challenging a privilege claim may "request metadata for individual documents and emails," D.I. 85 ¶ 1(e)(v)(1), and such metadata will include "Email Subject," *id.* ¶ 2(p).

## III.    Failure to Provide Discovery

Arm refused to produce documents or provide 30(b)(6) testimony on entire categories of relevant information, prejudicing Qualcomm.

### A.    Breach of Qualcomm ALA

**Withheld Technology.**  In support of its ALA breach claim, Qualcomm requested documents regarding the technology and information Arm provided to other ALA licensees but not to Qualcomm, including, for example, versions of Arm's ACK from the relevant time period and any patches thereto (**RFP 6; Topic 14**); documents and communications regarding ACK patches (**RFPs 31, 67, 77, 139; Topic 14**) and OOBs (**RFPs 33, 67; Topic 14**).  SAC ¶ 175.

Arm would only produce lists of technology made centrally available for licensee download on an Arm platform and technical documents it claims are "sufficient to show" the OOB and ACK patch development and timeline.  Ex. 35 at 2, 7-8; Ex. 36 at 5; Ex. 37 at 18.  But ACK patches and OOBs are not available on the platform in question and Qualcomm found no

---

[4] Arm's cases, Ex. 27, show no privilege attaches where the client, not a law firm, retains the PR firm.  *In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 331 (S.D.N.Y. 2003) (no privilege for communications had client "hired Firm directly"); *Stardock*, *Sys., Inc.* v. *Reiche*, 2018 WL 6259536, at *3, *6 (N.D. Cal. Nov. 30, 2018).

3

documents in Arm's production showing the time and effort required to develop ACK patches and OOBs. Thus, Qualcomm cannot investigate what Arm withheld and the impact to Qualcomm.

**Arm's Decision-Making.** Qualcomm's **Topic 17** seeks testimony regarding Arm's decision to withhold deliverables from Qualcomm, and **Topic 41** and **RFP 156** seek information regarding Arm's decision to resume providing deliverables following the December 2024 jury verdict in *Arm* v. *Qualcomm*. Although Arm witnesses testified they were ███████████ ████████████████████████████████████████ Ex. 39 at 116:11-117:23, 125:6-127:12; Ex. 40 at 31:22-32:23, Arm has not produced those communications or provided a witness on its decision-making, limiting discovery to "Arm's provision of materials and support to Qualcomm" both before and after the verdict, and Arm's responses to Qualcomm's notices of breach. Ex. 37 at 41. Qualcomm knows what Arm delivered—it does not know the entirety of what Arm withheld, on what basis, and whether there is additional technology withheld today.

**Third Parties Deliveries.** Arm's delivery of technology to third parties is relevant, including because the Qualcomm ALA requires Arm to provide technology "█████ to ███████████████████████████████████ and because communications with third parties may show Arm treated Qualcomm differently from others with the same or similar rights (**RFPs 28, 32, 68**). Arm refused to perform a search for documents or provide an accounting of ████████████ or ██████ delivered to third parties but not to Qualcomm (**Interrogatories 1, 5**), instead producing only "documents sufficient to show the centralized distribution of documents, and such documents made available by such distributions, to all third-party ALA licensees." Ex. 35 at 7; Ex. 41 at 9. These limitations do not allow Qualcomm to determine when such technology became █████████████ or who obtained the technology.

## B.    Failure to Negotiate Armv10 License

Arm refuses to provide discovery into the versioning and development timeline of the Arm Architecture, its pricing strategy, or its ████████████████, preventing Qualcomm from evaluating whether Arm negotiated a good faith offer for Armv10. According to Arm's Chief Architect, ██████████████████████. Ex. 42 at 130:21-23. Armv9's baseline is relevant to evaluating a fair offer for Armv10. Yet Arm refused to provide discovery into its versioning practices (**RFP 42**) pricing strategies (**Topic 26**), or efforts to encourage adoption of Armv9 (**RFP 102**). Arm also refused discovery into features included in Armv10 and associated value, when Arm began developing Armv10, and information about Arm's licensing of Armv10, including Arm's pricing strategy (**Interrogatory 3;**[5] **Topic 27**).

## C.    Breach of Qualcomm TLA

Qualcomm sought discovery concerning discussions about licensing to Qualcomm under the TLA (**RFPs 40, 56, 57, 63; Interrogatory 6**) and Qualcomm's notices of breach of TLA

---

[5] For **RFP 144**, Arm agreed to produce documents "consistent with its response to Qualcomm's Interrogatory No. 3." Ex. 38 at 27-28.

████████ (**RFPs 49, 50, 51**).  Arm's production contains less than fifteen emails concerning Qualcomm's requests for licenses to ██████████████████—all from the same three redacted email threads—and not one internal document concerning Arm's response to Qualcomm's breach notices.  Arm also improperly withheld as privileged documents purportedly relevant to Arm's CPU pricing analysis and refused to produce 2020-2023 ████████████████████████████████ ██████████████.  Ex. 47 at 1-2.  Arm cannot defend against Qualcomm's TLA claim by asserting it undertook ████████████ but withhold the documents purportedly containing that analysis as privileged.

## IV. Improper Responsiveness Determinations

Arm crafted underinclusive search terms and interpreted responsiveness so narrowly that it produced fewer than 5,000 emails and only 21 chats.[6]  The size of Arm's document production does not match Qualcomm's claims, which allege years-long misconduct by Arm spanning multiple agreements, lines of business, and levels of Arm's organization.

In *Arm* v. *Qualcomm*, Arm produced over 18,000 emails and over 700 chats covering a similar span of time to the conduct at issue in this case.  Arm's internal communications proved critical to probing Arm's claims, including, for example, a message from Arm's CEO expressing a desire to "hose" competitors through a shift in business model.  C.A. 22-1146 (MN), D.I. 588 (Trial Tr.) at 342:18-343:11.  In this case, Arm produced just 12 chats from its CEO, a search term custodian, despite testimony ████████████████████████████████████ ████████████████████████████████████████████████.  Ex. 44 at 145:4-147:11.

Pursuant to Section 2(b)(i) of the ESI Order, D.I. 85, Qualcomm proposed ten additional search terms and modifications to Arm's terms.  Arm deemed its production sufficient.[7]  But even if Arm accepted Qualcomm's additional terms, Arm's narrow responsiveness determinations would exclude responsive documents.  Qualcomm requests Arm be ordered to produce, without responsiveness review, all non-privileged documents hitting on (1) Arm's terms and (2) Qualcomm's proposed search terms yielding fewer than 15,000 hits, excluding families.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 2394

---

[6] Arm's production in the prior case, Ex. 43 at 1, does not excuse Arm from discovery in this case.

[7] Arm claims its search terms passed requirements in Paragraph 2(b)(i) of the ESI Order.  Ex. 43 at 1.  But Arm deemed less than 3.5% of the hits to its search terms responsive, Ex. 48 at 7-9; Ex. 49 at 3-4, meaning had it produced no documents at all, it still would have complied with the ESI Order, which requires additional search terms only where "more than 10% of the null set is responsive."  D.I. 85 ¶ 2(b)(i).

# Exhibit 2



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,

      Plaintiffs,

      v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,

      Defendant.

C.A. No. 24-490-MN



## DEFENDANT ARM HOLDINGS PLC'S RESPONSE TO QUALCOMM'S NOVEMBER 26, 2025 LETTER TO SPECIAL MASTER RYCHLICKI

Dated: December 3, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A1849**

adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

**A1850**

Dear Special Master Rychlicki:

We write in response to Qualcomm's November 26, 2025 letter. Qualcomm seeks to triple its briefing on its pending motion under the guise of what it calls "subsequent events." Those events contain no new information and illustrate why Qualcomm's motion should be denied.

Qualcomm's August 1 letter to Your Honor contained just a single paragraph seeking to compel production of privileged communications among Spencer Collins (Arm's General Counsel), Arm's in-house media team, and FGS Global ("FGS") about Mr. Collins' October 22, 2024 letter to Qualcomm. As Arm previously explained, those communications include legal advice concerning litigation strategy in the pending litigation with Qualcomm. Qualcomm continues to arbitrarily lump together all "communications between Arm and FGS Global, Arm's PR firm," asserting that Arm has claimed privilege over its "public relations work." But, as Arm explained in its previous letter and at the August 14 hearing, that is plainly false. 8/7/25 Arm Opp. Ltr. to Qualcomm's Motion to Compel at 3–4. The redacted communications that are the subject of Qualcomm's motions to compel are properly withheld for privilege: all involve coordination among Mr. Collins, Arm's in-house media team, and FGS about Mr. Collins' October 22, 2024 letter to Qualcomm, and include providing legal advice concerning litigation strategy in the pending litigation with Qualcomm. Contrary to Qualcomm's allegations, Arm has not claimed privilege over generic "public relations work," Arm has produced such communications, and Qualcomm took numerous depositions on those communications. *See, e.g.*, *id.* at Exs. 8–13.

The "subsequent events" Qualcomm cites in its letter contain no new information and only illustrate why Qualcomm's motion should be denied. Qualcomm spends one paragraph quoting Arm's arguments from the August 14 hearing before Your Honor, but that is of course not new information. And those arguments are precisely why Qualcomm's motion should be denied: Arm's chief legal officer Mr. Collins has both privileged and non-privileged communications, Arm has produced his non-privileged communications, and Qualcomm questioned him extensively about those communications at his deposition and with others.

Qualcomm next points out that Arm stated in its summary judgement briefing that an individual at FGS "showed Mr. King [at Bloomberg] an image of the letter via Zoom call." But that fact is also not new, and Arm has never claimed privilege over that communication. Qualcomm took discovery of this fact—which Arm never claimed privilege over—weeks before it filed its letter brief on August 1. For example, on July 4, Qualcomm took the deposition of Morrison and Foerster attorney Kenneth Siegel, who testified that ███████████████████████████ ██████████████████████████ Ex. 1 at 48:20–56:10. On July 17, Qualcomm took the deposition of FGS employee Paul Kranhold, who testified that his ████████████████████ ████████████████████████████ " Ex. 2 at 62:6–63:2, 64:11–68:14, 89:1–3. Qualcomm took fulsome discovery of this non-privileged communication weeks before its August 1 letter to Your Honor. There is nothing new here.

Arm's arguments in its summary judgment briefing comparing FGS's communications with Bloomberg reporter Mr. King to issuing a press release (which is protected by *Noerr-Pennington*) are not new information either: Arm has asserted since its January 2025 motion to dismiss that Qualcomm's "allegations based on the October 22, 2024 letter are barred by *Noerr-Pennington*

1

and related doctrines." D.I. 48 at 18. Qualcomm claims that Arm's argument is somehow a concession that no communications with FGS can be privileged. But that is plainly incorrect: the existence of non-privileged communications between FGS and Bloomberg that are akin to a press release does not destroy privilege over communications giving or receiving legal advice among Arm's General Counsel, Arm's in-house media team, and FGS. At bottom, Qualcomm's letter is yet another attempt to conflate non-privileged communications that it has received fulsome discovery on—such as those between FGS and Bloomberg—with privileged communications giving or receiving legal advice, including regarding the October 22, 2024 letter Arm sent to Qualcomm during ongoing litigation between the parties.

Arm respectfully requests that Your Honor deny Qualcomm's motion to compel.

Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

Words: 712

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,

Plaintiffs,

v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,

Defendant.

C.A. No. 24-490-MN



### DECLARATION OF JAY EMERICK IN SUPPORT OF DEFENDANT ARM HOLDINGS PLC'S RESPONSE TO QUALCOMM'S NOVEMBER 26, 2025 LETTER TO SPECIAL MASTER RYCHLICKI

Dated: December 3, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

**A1854**

I, Jay Emerick, declare as follows:

I am an attorney with the law firm of Kirkland & Ellis LLP, counsel for Arm Holdings PLC ("Arm") in the above referenced action. I submit this declaration in support of Arm's Response to Qualcomm's November 26, 2025 Letter to Special Master Rychlicki.

1.    Attached as Exhibit 1 is a true and correct excerpted copy of the July 4, 2025 deposition transcript of Kenneth Siegel. ▮▮▮▮▮▮▮▮▮▮

2.    Attached as Exhibit 2 is a true and correct excerpted copy of the July 17, 2025 deposition transcript of Paul Kranhold. ▮▮▮▮▮▮▮▮▮▮▮▮

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 3rd day of December 2025 at Chicago, Illinois.

*/s/ Jay Emerick*
Jay Emerick

1

**A1855**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 3, 2025, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com
John Poulos
NORTON ROSE FULBRIGHT US LLP

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A1856**

1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A1857**

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

C.A. No. 24-490-MN

----------------------------------------x

QUALCOMM INCORPORATED, a Delaware

corporation, QUALCOMM TECHNOLOGIES, INC.,

a Delaware corporation,

                    Plaintiffs,

- against -

ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K.

corporation

                    Defendant.

----------------------------------------x

                    July 4, 2025

                      1:18 p.m.


                 ███████████████

                    VIDEOTAPED DEPOSITION of

KENNETH SIEGEL, held at the offices of PAUL

WEISS RIFKIND WHARTON & GARRISON, LLP, located

at 1285 Avenue of the Americas, New York, New

York 10019, before Danielle Grant, a Certified

Realtime Reporter and a Notary Public of the

State ofNew York.

# Exhibit 2

███████████████████████████

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED a Delaware corporation, ) Case No.

QUALCOMM TECHNOLOGIES, INC., a Delaware        ) 24-490-MN

corporation,                                   )

                                               )

     Plaintiffs,                               )

                                               )

   vs.                                         )

                                               )

ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K.       )

corporation,                                   )

                                               )

     Defendant.                                )

_____)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ VIDEOTAPED 30(b)(6) and

30(b)(1) DEPOSITION OF PAUL KRANHOLD

San Francisco, California

Thursday, July 17, 2025


REPORTED BY: Derek L. Hoagland

CSR No. 13445

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,    )
  a Delaware corporation; and    )
QUALCOMM TECHNOLOGIES, INC.,    )
  a Delaware corporation,    )
                    )   C.A. No. 24-490 (MN)
       Plaintiffs,    )
                    )
      v.    )
                    )
ARM HOLDINGS PLC., f/k/a ARM LTD.,    )
  a U.K. corporation,    )
                    )
       Defendant.    )

**PLAINTIFFS' LETTER TO SPECIAL MASTER RYCHLICKI
REGARDING SUBSEQUENT EVENTS RELATING TO MOTION TO COMPEL
<u>PRODUCTION OF ARM'S ARCHITECTURE LICENSE AGREEMENTS</u>**

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

December 16, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
Ben Yenerall (#7132)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com
byenerall@morrisnichols.com

*Attorneys for Plaintiffs*

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
Jenifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,                    )
   a Delaware corporation; and            )
QUALCOMM TECHNOLOGIES, INC.,               )
   a Delaware corporation,                )
                                    )
              Plaintiffs,            )    C.A. No. 24-490 (MN)
                                     )
       v.            )
                                     )
ARM HOLDINGS PLC., f/k/a ARM LTD.,         )
   a U.K. corporation,                    )
                                     )
              Defendant.            )

### PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI REGARDING OUTSTANDING DISCOVERY DISPUTES

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

**A1881**

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

August 1, 2025

Dear Special Master Rychlicki:

In August 2022, Arm sued Qualcomm for developing unlicensed technology after Arm terminated agreements with Qualcomm subsidiary Nuvia.  *Arm Ltd.* v. *Qualcomm Inc.*, C.A. 22-1146 (MN), D.I. 1 ¶ 78.  Rather than waiting for resolution through litigation, Arm engaged in self-help, withholding licensed technology from Qualcomm, refusing to license other technology, and interfering with Qualcomm's customer relationships.  D.I. 137 ("SAC").  Qualcomm filed this lawsuit.  D.I. 2.  In December 2024, the *Arm* v. *Qualcomm* jury found the Qualcomm CPUs licensed.  C.A. 22-1146 (MN), D.I. 572 at 1.

## I.    Refusal to Produce Unredacted Third-Party Agreements

**TLAs.**  Qualcomm needs Arm's TLAs and related agreements—and associated 30(b)(6) testimony (**RFPs 123, 140; Topics 2, 9**)[1]—to prove quotes Arm gave Qualcomm for Arm Cortex Implementation Cores (codenamed ███████████████████) violated the Qualcomm TLA, ██████████████████████████████████████████████████████████ ████████████████ SAC ¶¶ 104-105; Ex. 8 █████████  Arm claims it based the October 2024 quote on ████████████████ agreements.  Ex. 9 at 23:1-24; Ex. 10 at 97:12-98:2; Ex. 11 at 65:24-72:9.  Arm should produce all[2] agreements, so Qualcomm can test whether Arm based its ████████ ███████████████████████—and whether Arm's quotes for other IP violated the implied covenant of good faith and fair dealing.  Arm should also produce a witness on the agreements' royalty rates.

Arm claims it "produced all third-party agreements" licensing the Implementation Cores "to which it has not received an objection or a motion for a Protective Order was not filed."  Ex. 12 at 2.[3]  Arm's withholding based on mere "objections" is improper under the Protective Order.  D.I. 84 ¶ 51.  Arm's representation also is inaccurate: it has not produced agreements for several entities licensing these products, including ████████████████████████████████ ████████████████████  And Arm omitted Annexes for several agreements that contain pricing information. ██████████████████████████████████  Finally, Arm improperly limits production to TLAs licensing ████████████████, but Qualcomm's claims allege Arm provided unreasonable quotes for other TLA IP.  SAC ¶¶ 51, 102.

Arm also put these third-party agreements at issue by using the fact that Qualcomm has not seen third-party TLAs to cross-examine Qualcomm witnesses, asking whether they were aware of pricing of ████████████████ in third-party TLAs and whether the rates provided to Qualcomm were accepted by the industry.  Ex. 20 at 106:6-107:22; Ex. 21 at 49:16-19, 53:8-22.

---

[1] "RFP" refers to Qualcomm's requests for production, Exhibits 1-4.  "Topic" refers Qualcomm's Notice of Rule 30(b)(6) Deposition of Arm, Exhibit 5.  "Interrogatory" refers to Qualcomm's interrogatories, Exhibits 6-7.

[2] With respect to ██████s agreements, Morris, Nichols, represents Qualcomm.

[3] ████ agreed to production of its TLA and related agreements, Ex. 13, yet Arm has not produced them.

Arm cannot challenge Qualcomm's knowledge of third-party pricing while simultaneously withholding it.

**ALAs.**  Arm breached the Qualcomm ALA by withholding out-of-box packages ("OOBs") and Architecture Compliance Kit ("ACK") patches.  SAC ¶¶ 173-180.  Arm argues it was not obligated to deliver that technology, including because it is not █████████████ under the ALA. Ex. 22.  Arm provided that technology to other licensees, Ex. 45 at 94:25-97:16, 126:8-127:4, thus, Qualcomm seeks to determine whether the definition of and obligation to deliver ████ ████████ is the same in those partners' ALAs.



Additionally, in May 2020, Qualcomm elected to extend the Qualcomm ALA to █████ ████████████████████████████████████ including Armv10.  SAC ¶¶ 128-134, 184.  ██████ ██████████████████████████████████████████ *id.* ¶ 65; Ex. 23, yet Arm failed to respond to Qualcomm's election for five years, violating the implied covenant of good faith and fair dealing.  Arm denies a breach, claiming it engaged in good faith negotiation even though Qualcomm's election was improper and the ALA would not cover v10.  Ex. 24. Qualcomm needs to review other ALAs to address Arm's defense.



In *Arm* v. *Qualcomm*, Arm produced limited heavily redacted ALAs, which are insufficient here.  Qualcomm needs ***all*** unredacted ALAs and the annexes thereto (**RFP 27; Topics 2, 7**) to evaluate the scope of deliverables and rights of other licensees treated differently than Qualcomm. For example, the produced ALAs redact █████████████ terms, Ex. 25 at 2, 4, 12, yet Arm argues it did not breach the Qualcomm ALA because the OOBs and ACK patches are "███████" and not "██████████████," Ex. 22 at 6, 10.  Arm also redacted all fee and royalty information, Ex. 25, and refused to produce ██████████████ (**RFP 162**), both necessary to test Arm's claim of good faith negotiation.  At least █████ agreed to produce its ALA (with limited redactions that do not relate to the provisions at issue), Ex. 13, yet Arm has not produced that document.

As with the TLAs, Arm also questioned multiple Qualcomm witnesses regarding their knowledge of terms in third-party ALAs and whether those terms were comparatively advantageous to Qualcomm, while withholding the agreements that would allow Qualcomm to refute the implications of Arm's examinations.  Ex. 20 at 57:2-18; Ex. 26 at 78:14-21, 80:12-21, 164:17-25.  This is improper: Qualcomm must be allowed to probe Arm's defenses.

## II.    Improper Privilege Determinations

Arm withheld or redacted documents based on improper privilege assertions.  The relevant documents should be produced and redactions should be lifted.

**Communications with FGS Global.**  Qualcomm asserted claims arising from the leak by Arm's counsel (MoFo) and communications firm (FGS Global) to Bloomberg News of an October 22, 2024 letter Arm wrote to Qualcomm threatening to terminate Qualcomm's ALA.  Arm and FGS Global assert communications about the leak are privileged (including "common interest") or work product.  Exs. 29; 46 (FGS Emails).  But generic "public relations services," including "[r]eviewing press coverage, making calls to various media to comment on developments in the litigation, and even 'finding friendly reporters,'" are not protected.  *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 3140050, at *13-14 (D.N.J. July 22, 2021); *In re Riddell Concussion*

2

**A1884**

*Reduction Litig.*, 2016 WL 7108455, at \*9 (D.N.J. Dec. 5, 2016), *aff'd in relevant part*, 2017 WL 11633446 (D.N.J. Jan. 5, 2017).  FGS was engaged by Arm, not its outside counsel.[4]  Ex. 28 at 24:2-27:20, 57:17-23.  And common interest privilege is merely "an extension of the attorney-client privilege or an exception to the waiver of that privilege."  *10x Genomics, Inc.* v. *Celsee, Inc.*, 505 F. Supp. 3d 334, 337 (D. Del. 2020).

**Improper Date Cutoff.**  Arm failed to log documents dated after the original April 2024 Complaint.  The ESI Order required a privilege log of withheld documents generated prior to "the filing of the Complaint."  D.I. 85 ¶ 1(e)(ii).  The operative "Complaint" contemplated by the March 21, 2025 ESI Order was the December 16, 2024 First Amended Complaint.  D.I. 36.  Qualcomm's claims are partly based on post-April 2024 conduct, including Arm's October 22, 2024 letter.  While Arm eventually logged 27 entries for "documents relating to Arm's communications with Bloomberg regarding the notice" and related follow up communications, D.I. 162 at 4, it otherwise refused to log withheld documents dated from April 18 and December 16, 2024.  Ex. 29.

**Subject Lines Redactions.**  Arm redacted for privilege subject lines for four meetings with outside counsel regarding the leak.  Exs. 30-33.  Arm also clawed back metadata revealing subject lines for 18 documents.  Ex. 34.  In addition to the subject lines not being privileged, the ESI Order contemplates a party challenging a privilege claim may "request metadata for individual documents and emails," D.I. 85 ¶ 1(e)(v)(1), and such metadata will include "Email Subject," *id.* ¶ 2(p).

## III.    Failure to Provide Discovery

Arm refused to produce documents or provide 30(b)(6) testimony on entire categories of relevant information, prejudicing Qualcomm.

### A.    Breach of Qualcomm ALA

**Withheld Technology.**  In support of its ALA breach claim, Qualcomm requested documents regarding the technology and information Arm provided to other ALA licensees but not to Qualcomm, including, for example, versions of Arm's ACK from the relevant time period and any patches thereto (**RFP 6; Topic 14**); documents and communications regarding ACK patches (**RFPs 31, 67, 77, 139; Topic 14**) and OOBs (**RFPs 33, 67; Topic 14**).  SAC ¶ 175.

Arm would only produce lists of technology made centrally available for licensee download on an Arm platform and technical documents it claims are "sufficient to show" the OOB and ACK patch development and timeline.  Ex. 35 at 2, 7-8; Ex. 36 at 5; Ex. 37 at 18.  But ACK patches and OOBs are not available on the platform in question and Qualcomm found no

---

[4] Arm's cases, Ex. 27, show no privilege attaches where the client, not a law firm, retains the PR firm.  *In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 331 (S.D.N.Y. 2003) (no privilege for communications had client "hired Firm directly"); *Stardock, Sys., Inc.* v. *Reiche*, 2018 WL 6259536, at \*3, \*6 (N.D. Cal. Nov. 30, 2018).

3

**A1885**

documents in Arm's production showing the time and effort required to develop ACK patches and OOBs. Thus, Qualcomm cannot investigate what Arm withheld and the impact to Qualcomm.

**Arm's Decision-Making.** Qualcomm's **Topic 17** seeks testimony regarding Arm's decision to withhold deliverables from Qualcomm, and **Topic 41** and **RFP 156** seek information regarding Arm's decision to resume providing deliverables following the December 2024 jury verdict in *Arm* v. *Qualcomm*. Although Arm witnesses testified they were ███████████ ██████████████████████, Ex. 39 at 116:11-117:23, 125:6-127:12; Ex. 40 at 31:22-32:23, Arm has not produced those communications or provided a witness on its decision-making, limiting discovery to "Arm's provision of materials and support to Qualcomm" both before and after the verdict, and Arm's responses to Qualcomm's notices of breach. Ex. 37 at 41. Qualcomm knows what Arm delivered—it does not know the entirety of what Arm withheld, on what basis, and whether there is additional technology withheld today.

**Third Parties Deliveries.** Arm's delivery of technology to third parties is relevant, including because the Qualcomm ALA requires Arm to provide technology ███████ to ████████████████████████████████ and because communications with third parties may show Arm treated Qualcomm differently from others with the same or similar rights (**RFPs 28, 32, 68**). Arm refused to perform a search for documents or provide an accounting of ██████████████ or ███████ delivered to third parties but not to Qualcomm (**Interrogatories 1, 5**), instead producing only "documents sufficient to show the centralized distribution of documents, and such documents made available by such distributions, to all third-party ALA licensees." Ex. 35 at 7; Ex. 41 at 9. These limitations do not allow Qualcomm to determine when such technology became ████████████████ or who obtained the technology.

### B. Failure to Negotiate Armv10 License

Arm refuses to provide discovery into the versioning and development timeline of the Arm Architecture, its pricing strategy, or ███████████████████████, preventing Qualcomm from evaluating whether Arm negotiated a good faith offer for Armv10. According to Arm's Chief Architect, ████████████████████████. Ex. 42 at 130:21-23. Armv9's baseline is relevant to evaluating a fair offer for Armv10. Yet Arm refused to provide discovery into its versioning practices (**RFP 42**) pricing strategies (**Topic 26**), or efforts to encourage adoption of Armv9 (**RFP 102**). Arm also refused discovery into features included in Armv10 and associated value, when Arm began developing Armv10, and information about Arm's licensing of Armv10, including Arm's pricing strategy (**Interrogatory 3;**[5] **Topic 27**).

### C. Breach of Qualcomm TLA

Qualcomm sought discovery concerning discussions about licensing to Qualcomm under the TLA (**RFPs 40, 56, 57, 63; Interrogatory 6**) and Qualcomm's notices of breach of TLA

---

[5] For **RFP 144**, Arm agreed to produce documents "consistent with its response to Qualcomm's Interrogatory No. 3." Ex. 38 at 27-28.

██████ (**RFPs 49, 50, 51**).  Arm's production contains less than fifteen emails concerning Qualcomm's requests for licenses to ██████████████████—all from the same three redacted email threads—and not one internal document concerning Arm's response to Qualcomm's breach notices.  Arm also improperly withheld as privileged documents purportedly relevant to Arm's CPU pricing analysis and refused to produce 2020-2023 ██████████████████████ ██████████.  Ex. 47 at 1-2.  Arm cannot defend against Qualcomm's TLA claim by asserting it undertook ████████████ but withhold the documents purportedly containing that analysis as privileged.

## IV.    Improper Responsiveness Determinations

Arm crafted underinclusive search terms and interpreted responsiveness so narrowly that it produced fewer than 5,000 emails and only 21 chats.[6]  The size of Arm's document production does not match Qualcomm's claims, which allege years-long misconduct by Arm spanning multiple agreements, lines of business, and levels of Arm's organization.

In *Arm* v. *Qualcomm*, Arm produced over 18,000 emails and over 700 chats covering a similar span of time to the conduct at issue in this case.  Arm's internal communications proved critical to probing Arm's claims, including, for example, a message from Arm's CEO expressing a desire to "hose" competitors through a shift in business model.  C.A. 22-1146 (MN), D.I. 588 (Trial Tr.) at 342:18-343:11.  In this case, Arm produced just 12 chats from its CEO, a search term custodian, despite testimony ████████████████████████████████ ████████████████████████████████████  Ex. 44 at 145:4-147:11.

Pursuant to Section 2(b)(i) of the ESI Order, D.I. 85, Qualcomm proposed ten additional search terms and modifications to Arm's terms.  Arm deemed its production sufficient.[7]  But even if Arm accepted Qualcomm's additional terms, Arm's narrow responsiveness determinations would exclude responsive documents.  Qualcomm requests Arm be ordered to produce, without responsiveness review, all non-privileged documents hitting on (1) Arm's terms and (2) Qualcomm's proposed search terms yielding fewer than 15,000 hits, excluding families.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 2394

---

[6] Arm's production in the prior case, Ex. 43 at 1, does not excuse Arm from discovery in this case.

[7] Arm claims its search terms passed requirements in Paragraph 2(b)(i) of the ESI Order.  Ex. 43 at 1.  But Arm deemed less than 3.5% of the hits to its search terms responsive, Ex. 48 at 7-9; Ex. 49 at 3-4, meaning had it produced no documents at all, it still would have complied with the ESI Order, which requires additional search terms only where "more than 10% of the null set is responsive."  D.I. 85 ¶ 2(b)(i).

5

# EXHIBIT 2

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 20, 2026, upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Daniel G. Mackrides, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO  80202<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Sydney D. Gaskins, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd., Suite 6000<br>Los Angeles, CA  90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Alexandra Corrinne Hottenrott, Esquire<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, NY  10019<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Daralyn J. Durie, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA  94105<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

Lydia B. Cash, Esquire
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Jay Emerick, Esquire
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Peter Evangelatos, Esquire
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 27, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                          *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                      *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Sydney D. Gaskins, Esquire                                       *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Alexandra Corrinne Hottenrott, Esquire                           *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                                        *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                                           *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                          *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                            *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                                     *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*


                                        */s/ Jennifer Ying*
                                        _____
                                        Jennifer Ying (#5550)