IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) | REDACTED - PUBLIC VERSION |
| Plaintiffs, | ) ) ) | C.A. No. 24-490 (MN) (CONSOLIDATED) |
| v. | ) ) ) | ▮▮▮▮▮▮▮▮ |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) | |
| Defendant. | ) ) | |

**APPENDIX TO PLAINTIFFS' PARTIAL OBJECTIONS TO THE SPECIAL MASTER'S FEBRUARY 6, 2026 ORDER (D.I. 626) DENYING PLAINTIFFS' MOTION TO COMPEL (D.I. 359) (Vol. 6: A1889-A2051)**

OF COUNSEL:

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

February 20, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

| Document | Page Range/D.I. # |
|---|---|
| Plaintiffs' Motion to Compel (Aug. 1, 2025) | D.I. 359 at 5-7 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A0001 – A0007 |
| Qualcomm Exhibit 1 – Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's First Set of Requests for Production (Nos. 1-52) (June 17, 2025) | A0008 – A0074 |
| Qualcomm Exhibit 2 – Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's Second Set of Requests for Production (Nos. 53-120) (June 17, 2025) | A0075 – A0146 |
| Qualcomm Exhibit 3 – Arm Holdings PLC's First Supplemental Objections and responses to Qualcomm's Third Set of Requests for Production (Nos. 121-156) (June 17, 2025) | A0147 – A0187 |
| Qualcomm Exhibit 4 – Arm Holdings PLC's Objections and Responses to Qualcomm's Fourth Set of Requests for Production (Nos. 157-168) (May 16, 2025) | A0188 – A0208 |
| Qualcomm Exhibit 5 – Defendant Arm Holdings PLC's Objections and Responses to Plaintiffs' Notice of 30(b)(6) Deposition (June 19, 2025) | A0209 – A0257 |
| Qualcomm Exhibit 6 – Arm's First Supplemental Responses to Qualcomm's Amended Interrogatory No. 3 (July 11, 2025) | A0258 – A0267 |
| Qualcomm Exhibit 7 – Arm's First Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11) (July 11, 2025) | A0268 – A0337 |
| Qualcomm Exhibit 8 – Qualcomm Technology License Agreement (TLA) (May 30, 2013) | A0338 – A0393 |
| Qualcomm Exhibit 9 – Deposition of Jeffrey M. Fonseca Excerpt (July 9, 2025) | A0394 – A0398 |

| | |
|---|---|
| Qualcomm Exhibit 10 – Deposition of Karthik Shivashankar Excerpt (June 20, 2025) | A0399 – A0402 |
| Qualcomm Exhibit 11 – Deposition of Ehab Youseff Excerpt (June 26, 2025) | A0403 – A0407 |
| Qualcomm Exhibit 12 – Letter from J. Emerick to C. Nyarady (July 24, 2025) | A0408 – A0416 |
| Qualcomm Exhibit 13 – Email from S. Balcof to J. Ying et al. re: Follow up from Thursday's call (July 31, 2025) | A0417 – A0422 |
| Qualcomm Exhibit 14 – Robert Triggs, *Google Tensor G4 explained: Everything you need to know about the Pixel 9 processor* (Aug. 22, 2024) | A0423 – A0432 |
| Qualcomm Exhibit 15 – Alif Semiconductor, *Ensemble E1 Series* (last visited July 31, 2025) | A0433 – A0439 |
| Qualcomm Exhibit 16 – STMicroelectronics, *Arm Cortex-M55 in a nutshell* (last visited July 31, 2025) | A0440 – A0443 |
| Qualcomm Exhibit 17 – ███████████████ | A0444 – A0447 |
| Qualcomm Exhibit 18 – ███████████████ | A0448 – A0451 |
| Qualcomm Exhibit 19 – ███████████████ | A0452 – A0456 |
| Qualcomm Exhibit 20 – Deposition of Ziad Asghar Excerpt (July 7, 2025) | A0457 – A0460 |
| Qualcomm Exhibit 21 – Deposition of Ann Nathalie Cathcart Chaplin Excerpt (July 11, 2025) | A0461 – A0464 |
| Qualcomm Exhibit 22 – Arm Holdings PLC's First Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1-3) Excerpt (July 11, 2025) | A0465 – A0473 |
| Qualcomm Exhibit 23 – Qualcomm Amended and Restated Architecture License Agreement (ALA) (May 30, 2013) | A0474 – A0517 |

| | |
|---|---|
| Qualcomm Exhibit 24 – Arm's First Supplemental Objections and Responses to Qualcomm's Second Set of Interrogatories (Nos. 4-11) Excerpt (July 11, 2025) | A0518 – A0528 |
| Qualcomm Exhibit 25 – Third Supplemental Redaction Log for Arm ALAs (Jan. 5, 2024) | A0529 – A0535 |
| Qualcomm Exhibit 26 – Deposition of Jonathan Weiser Excerpt (July 11, 2025) | A0536 – A0539 |
| Qualcomm Exhibit 27 – Letter from A. Janes to C. Nyarady (June 23, 2025) | A0540 – A0542 |
| Qualcomm Exhibit 28 – Deposition of Paul Kranhold Excerpt (July 17, 2025) | A0543 – A0547 |
| Qualcomm Exhibit 29 – Arm Second Supplemental Initial Privilege Log (July 11, 2025) | A0548 – A555 |
| Qualcomm Exhibit 30 – ARMQC_02762874 (Oct. 21, 2024) | A0556 – A0558 |
| Qualcomm Exhibit 31 – ARMQC_02762876 (Oct. 22, 2024) | A0559 – A0561 |
| Qualcomm Exhibit 32 – ARMQC_02762878 (Oct. 21, 2024) | A0562 – A0563 |
| Qualcomm Exhibit 33 – ARMQC_02762879 (Oct. 22, 2024) | A0564 – A0565 |
| Qualcomm Exhibit 34 – Letter from A. Janes to C. Nyarady (June 30, 2025) | A0566 – A0568 |
| Qualcomm Exhibit 35 – Letter from N. Fung to C. Nyarady (Mar. 19, 2025) | A0569 – A574 |
| Qualcomm Exhibit 36 –Letter from N. Fung to C. Nyarady (May 7, 2025) | A0575 – A0578 |
| Qualcomm Exhibit 37 – Defendant Arm Holdings PLC's Objections and Responses to Plaintiffs' Notice of 30(b)(6) Deposition Excerpt (June 19, 2025) | A0579 – A0587 |
| Qualcomm Exhibit 38 – Arm Holdings PLC's First Supplemental Objections and Responses to Qualcomm's Third Set of Requests For Production (Nos. 121-156) Excerpt (June 17, 2025) | A0588 – A0597 |
| Qualcomm Exhibit 39 – Deposition of Martin Weidman Excerpt (June 20, 2025) | A0598 – A0602 |

| | |
|---|---|
| Qualcomm Exhibit 40 – Deposition of Anupa George Excerpt (July 30, 2025) | A0603 – A0605 |
| Qualcomm Exhibit 41 – Letter from N. Fung to C. Nyarady (May 2, 2025) | A0606 – A0609 |
| Qualcomm Exhibit 42 – Deposition of Richard Grisenthwaite Excerpt (July 2, 2025) | A0610 – A0612 |
| Qualcomm Exhibit 43 – Letter from N. Fung to C. Nyarady (July 5, 2025) | A0613 – A0617 |
| Qualcomm Exhibit 44 – Deposition of Rene Haas Excerpt (July 7, 2025) | A0618 – A0621 |
| Qualcomm Exhibit 45 – Deposition of Aparajita Bhattacharya Excerpt (July 7, 2025) | A0622 – A0625 |
| Qualcomm Exhibit 46 – ARMQC_02762949 (Oct. 24, 2024); ARMQC_02762912 (Oct. 23, 2024); ARMQC_02762979 (Oct. 29, 2024); FSG_0000389 (Oct. 22, 2024); ARMQC_02742823 (Oct. 24, 2024); ARMQC_02742769 (Oct. 24, 2024); ARMQC_02749685 (Oct. 24, 2024) | A0626 – A0650 |
| Qualcomm Exhibit 47 – Letter from J. Emerick to C. Nyarady (July 24, 2025) | A0651 – A0654 |
| Qualcomm Exhibit 48 – Letter from C. Nyarady to N. Fung (May 16, 2025) | A0655 – A0660 |
| Qualcomm Exhibit 49 – Letter from N. Fung to C. Nyarady (June 17, 2025) | A0661 – A0667 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7, 2025) | A0668 – A0675 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.,* C.A. No. 24-490-MN, Declaration of Nicholas R. Fung in Support to Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7. 2025) | A0676 – A0682 |
| Arm Exhibit 1 – Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A0683 – A0690 |

| Arm Exhibit 2 – Second Amended Complaint (June 3, 2025) | A0691 – A0758 |
|---|---|
| Arm Exhibit 3 – Email from P. Evangelatos to J. Braly et al. re: Qualcomm v. Arm – RFPs Concerning TLA Agreements | A0759 – A0762 |
| Arm Exhibit 4 – Order Appointing Special Master (July 18, 2025) | A0763 – A0767 |
| Arm Exhibit 5 – Order Relating to Procedures for Resolving Disputes Before Special Master (July 31, 2025) | A0768 – A0771 |
| Arm Exhibit 6 – Deposition of Aparajita Bhattacharya (July 7, 2025) | A0772– A0855 |
| Arm Exhibit 7 – Arm Holdings PLC's First Supplemental Objections and Responses to Qualcomm's First Set of Interrogatories (Nos. 1-3) (July 11, 2025) | A0856 – A0885 |
| Arm Exhibit 8 – ARMQC_02770408 (Oct. 22, 2024) | A0886 – A0888 |
| Arm Exhibit 9 – ARMQC_02770392 (Oct. 24, 2024) | A0889 – A0891 |
| Arm Exhibit 10 – ARMQC_02762927 (Oct. 24, 2024) | A0892 – A0914 |
| Arm Exhibit 11 – ARMQC_02762980 (Oct. 23, 2024) | A0915 – A0917 |
| Arm Exhibit 12 – ARMQC_02762919 (Oct. 23, 2024) | A0918 – A0919 |
| Arm Exhibit 13 – ARMQC_02762920 (Oct. 23, 2024) | A0920 – A0921 |
| Arm Exhibit 14 – Stipulated Order for Discovery, Including Discovery of Electronically Stored Information ("ESI") (Mar. 21, 2025) | A0922 – A0939 |
| Arm Exhibit 15 – ARM_00132456 (May 17, 2022) | A0940 – A0941 |
| Arm Exhibit 16 – ARM_00036346 (May 18, 2022) | A0942 – A0946 |
| Arm Exhibit 17 – ARM_01238999 (May 18, 2022) | A0947 – A0952 |
| Arm Exhibit 18 – ARM_01215997 (May 19, 2022) | A0953 – A0958 |
| Arm Exhibit 19 – ARM_01216002 (May 19, 2022) | A0959 – A0964 |
| Arm Exhibit 20 – ARM_01230011 (May 19, 2022) | A0965 – A0971 |
| Arm Exhibit 21 – ARM_01230110 (May 19, 2022) | A0972 – A0976 |

| | |
|---|---|
| Arm Exhibit 22 – ARM_01230123 (May 19, 2022) | A0977 – A0982 |
| Arm Exhibit 23 – QCARM_3059661 (May 20, 2022) | A0983 – A0984 |
| Arm Exhibit 24 – Letter from S. Collins to A. Chaplin (Sept. 26, 2022) | A0985 – A0986 |
| Arm Exhibit 25 – Deposition of Richard Grisenthwaite (July 2, 2025) | A0987 – A1091 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Special Master Hearing (Aug. 14, 2025) | A1092 – A1187 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Special Master Hearing Excerpt (Aug. 22, 2025) | A1188 – A1191 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiff's Letter to Special Master Helena C. Rychlicki Regarding Newly-Learned Facts and Subsequent Events (Sept. 15, 2025) | A1192 – A1194 |
| Qualcomm Exhibit 1 – Special Master Hearing Excerpt (Aug. 14, 2025) | A1195 – A1197 |
| Qualcomm Exhibit 2 – Special Master Hearing Excerpt (Aug. 22, 2025) | A1198 – A1201 |
| Qualcomm Exhibit 3 – Email from A. Basner to P. Evangelatos et al. re: Qualcomm Inc. v. Arm Holdings PLC.; Case No. 1:24-cv-490 (MN): RFPs (Sept. 14, 2025) | A1202 – A1211 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendant Arm Holdings PLC's Response to Qualcomm's September 15, 2025 Letter to Special Master Rychlicki (Sept. 19, 2025) | A1212 – A1217 |
| Qualcomm Exhibit 1 – Meet & Confer Excerpt (July 20, 2025) | A1218 – A1222 |
| Qualcomm Exhibit 2 – Plaintiff's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A1223 – A1230 |
| Qualcomm Exhibit 3 – Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7, 2025) | A1231 – A1239 |

| | |
|---|---|
| Qualcomm Exhibit 4 – Meet & Confer Excerpt (Sept. 15, 2025) | A1240 – A1247 |
| Qualcomm Exhibit 5 – Email from C. Nyarady to A. Janes et al. re: Qualcomm v. Arm – Meet and Confer (Aug. 29, 2025) | A1248 – A1263 |
| Qualcomm Exhibit 6 – Meet & Confer Excerpt (July 28, 2025) | A1264 – A1267 |
| Qualcomm Exhibit 7 – Email from J. Emerick to C. Nyarady et al. re: Qualcomm v. Arm – Meet and Confer (Sept. 10, 2025) | A1268 – A1284 |
| Qualcomm Exhibit 8 – Defendant Arm Holdings PLC's Support to Arm's Motion to Strike and Compel (D.I. 378) and Opposition to Qualcomm's August 11 Letter Brief to Special Master Rychlicki (Aug. 18, 2025) | A1285 – A1293 |
| Qualcomm Exhibit 9 – Defendant Arm Holdings PLC's Letter Brief to Special Master Rychlicki (Aug. 1, 2025) | A1294 – A1301 |
| Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holdings PLC., f/k/a Arm Ltd., C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Subsequent Events Relating to Their Motion to Compel Production of Third-Party Licenses and Related Agreements (Oct. 17, 2025) | A1302 – A1306 |
| Qualcomm Exhibit 1 – ARMQC_02798040 (Sept. 8, 2023) | A1308 – A1324 |
| Qualcomm Exhibit 2 – ARMQC_02789082 (Feb. 1, 2022) | A1325 – A1369 |
| Qualcomm Exhibit 3 – ARMQC_02797972 (July 1, 2024) | A1370 – A1381 |
| Qualcomm Exhibit 4 – Email from J. Hartley to P. Evangelatos re: Qualcomm v. Arm – Third Party Agreements (Oct. 16, 2025) | A1382 – A1388 |
| Qualcomm Exhibit 5 – ARMQC_02797778 (Dec. 16, 2021) | A1389 – A1554 |
| Qualcomm Exhibit 6 – Meet and Confer Transcript (Oct. 10, 2025) | A1555 – A1562 |
| Qualcomm Exhibit 7 – Email from A. Basner to P. Evangelatos et al. re: Qualcomm v. Arm, Case No. 1:24-cv-490 (Oct. 15, 2025) | A1563 – A1567 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Subsequent Events Relating to Their Motion to Compel Production of Arm's Analysis of Third-Party Licenses (Oct. 17, 2025) | A1568 – A1570 |

| | |
|---|---|
| Qualcomm Exhibit 1 – Plaintiff's' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A1571 – A1578 |
| Qualcomm Exhibit 2 – Deposition of Akshay Bhatnagar (July 10, 2025) Excerpt | A1579 – A1582 |
| Qualcomm Exhibit 3 – Letter from C. Nyarady to P. Evangelatos (July 11, 2025) | A1583 – A1585 |
| Qualcomm Exhibit 4 – Letter from C. Nyarady to J. Emerick (July 16, 2025) | A1586 – A1592 |
| Qualcomm Exhibit 5 – Letter from J. Emerick to C. Nyarady (July 24, 2025) | A1593 – A1601 |
| Qualcomm Exhibit 6 – Meet & Confer Excerpt (July 28, 2025) | A1602 – A1605 |
| Qualcomm Exhibit 7 – Special Master Hearing Excerpt (Aug. 14, 2025) | A1606 – A1610 |
| Qualcomm Exhibit 8 – Letter from P. Evangelatos to C. Nyarady (Oct. 16, 2025) | A1611 – A1615 |
| Qualcomm Exhibit 9 – Email from J. Hartley re: Qualcomm v. Arm – Production of Spreadsheet (Oct. 6, 2025) | A1616 – A1618 |
| Qualcomm Exhibit 10 – Meet & Confer Excerpt (Oct. 10, 2025) | A1619 – A1622 |
| Qualcomm Exhibit 11 – Plaintiff's Letter to Special Master Helena C. Rychlicki Regarding Subsequent Events relating to their Motion to Compel Production of Third-Party Arm Licenses and Related Agreements (Oct. 17, 2025) | A1623 – A1628 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendants Arm Holdings PLC's Response to Qualcomm's October 17, 2025 Letters (Nov. 7, 2025) | A1629 – A1634 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Peter Evangelatos in Support of Defendant Arm Holding PLC's Response to Qualcomm's October 17, 2025 (Nov. 7, 2025) | A1635 – A1638 |
| Arm Exhibit 1 – Letter from Anne Shea Gaza to Judge Sherry R. Fallon re: Qualcomm Inc., et al. v. Arm Holdings Plc., C.A. No. 24-490 (MN) (Mar. 13, 2025) | A1639 – A1726 |

viii

| | |
|---|---|
| Arm Exhibit 2 – Qualcomm's Letter to Honorable Sherry R. Fallon in Response to Arm's Letter Regarding Discovery Dispute (D.I. 68) | A1727 – A1735 |
| Arm Exhibit 3 – Deposition of Akshay Bhatnagar Excerpt (July 10, 2025) | A1754 – A1758 |
| Arm Exhibit 4 – Deposition of Karthik Shivashankar Excerpt (June 20, 2025) | A1759 – A1766 |
| Arm Exhibit 5 – Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7, 2025) | A1767 – A1775 |
| Arm Exhibit 6 – Email from J. Hartley re: Qualcomm v. Arm – Third Party Agreements (Sept. 24, 2025) | A1776 – A1778 |
| Arm Exhibit 7 – Defendant Arm Holdings PLC's Response to Qualcomm's September 15, 2025 Letter to Special Master Rychlicki (Sept. 19, 2025) | A1779 – A1785 |
| Arm Exhibit 8 – Email from US Courts re: Activity in Case 1:24-cv-00490-MN Qualcomm Incorporated et al v. ARM Holdings PLC Oral Order (Mar. 17, 2025) | A1786 – A1789 |
| Arm Exhibit 9 – Stipulated Protective Order (Mar. 21, 2025) | A1790 – A1829 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Subsequent Events (Nov. 26, 2025) | A1832 – A1834 |
| Qualcomm Exhibit 1 – Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A1835 – A1842 |
| Qualcomm Exhibit 2 – Special Master Hearing (Aug. 14, 2025) | A1843 – A1848 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendant Arm Holding PLC;s Response to Qualcomm's November 26, 2025 Letter to Special Master Rychlicki (Dec. 3, 2025) | A1849 – A1852 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Jay Emerick in Support of Defendant Arm Holding PLC's Response | A1853 – A1857 |

| | |
|---|---|
| to Qualcomm's November 26, 2025 Letter to Special Master Rychlicki (Dec. 3, 2025) | |
| Arm Exhibit 1 – Deposition of Kenneth Siegel (July 4, 2025) Excerpt | A1858 – A1865 |
| Arm Exhibit 2 – Deposition of Paul Kranhold (July 17, 2025) Excerpt | A1866 – A1876 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Rychlicki Regarding Subsequent Events Relating to Motion to Compel Production of Arm's Architecture License Agreements (Dec. 16, 2025) | A1877 – A1879 |
| Qualcomm Exhibit 1 – Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A1880 – A1887 |
| Qualcomm Exhibit 2 – Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7, 2025) | A1888 – A1896 |
| Qualcomm Exhibit 3 – Special Master Hearing (Aug. 14, 2025) Excerpt | A1897 – A1900 |
| Qualcomm Exhibit 4 – Deposition of William Abbey (June 26, 2025) Excerpt | A1901 – A1903 |
| Qualcomm Exhibit 5 – Deposition of Rene Haas (July 7, 2025) Excerpt | A1904 – A1906 |
| Qualcomm Exhibit 6 – Letter from S. Collins to A. Chaplin (Dec. 10, 2025) | A1907 – A1938 |
| Qualcomm Exhibit 7 – Arm v. Qualcomm, C.A. No. 22-1146, Pretrial Conference (Nov. 20, 2024) Excerpt | A1939 – A1945 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendant Arm Holdings PLC's Response to Qualcomm's December 16, 2023 Letter to Special Master Rychlicki (Dec. 23, 2025) | A1946 – A1949 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Peter Evangelatos in Support of Arm Holding PLC's Response to | A1950 – A1953 |

| | |
|---|---|
| Qualcomm's December 16, 2025 Letter to Special Master Rychlicki (Dec. 23, 2025) | |
| Arm Exhibit 1 – Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A1956 – A1963 |
| Arm Exhibit 2 – Amended and Restated Architecture License Agreement (ALA) (May 31, 2013) | A1964 – A2007 |
| Arm Exhibit 3 – Plaintiff's Letter to Special Master Rychlicki Regarding Subsequent Events Relating to Motion to Compel Production of Arm's Architecture License Agreement (Dec. 16, 2025) | A2008 – A2011 |
| Arm Exhibit 4 - Letter from S. Collins to A. Chaplin (Dec. 10, 2025) | A2012 – A2043 |
| Arm Exhibit 5 – Deposition of William Abbey (June 26, 2025) Excerpt | A2044 – A2049 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Rychlicki Regarding Subsequent Events Relating to Arm's Architecture License Agreements (Dec. 26, 2025) | A2050 – A2051 |

# A1889 - A1938
# Redacted in Full

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ARM LTD.,                          )
a U.K. corporation,                )
                                   )
        Plaintiff,                 )
                                   ) C.A. No. 22-1146(MN)
v.                                 )
                                   )
QUALCOMM, INC.,                    )
a Delaware corporation,            )
et al.,                            )
                                   )
        Defendants.                )


                   Wednesday, November 20, 2024
                   2:00 p.m.
                   Pretrial Conference


                   844 King Street
                   Wilmington, Delaware


BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge


APPEARANCES:

         YOUNG CONAWAY STARGATT & TAYLOR
         BY:  ANNE SHEA GAZA, ESQ.
         BY:  ROBERT M. VRANA, ESQ.
         BY:  DANIEL MACKRIDES, ESQ.

         -and-

APPEARANCES (Cont'd):

         MORRISON FOERSTER, LLP
         BY:  DARALYN DURIE, ESQ.
         BY:  ERIK OLSON, ESQ.
         BY:  DANIEL MUINO, ESQ.
         BY:  SHAELYN DAWSON, ESQ.
         BY:  NICHOLAS FUNG, ESQ.
         BY:  HENRY HUTTINGER, ESQ.
         BY:  LAURA GILBERT REMUS, ESQ.

              Counsel for the Plaintiff


         MORRIS NICHOLS ARSHT & TUNNELL LLP
         BY:  JACK BLUMENFELD, ESQ.
         BY:  JENNIFER YING, ESQ.

         -and-

         PAUL WEISS
         BY:  KAREN L. DUNN, ESQ.
         BY:  CATHERINE NYARDY, ESQ.
         BY:  JACOB BRALY, ESQ.
         BY:  RUBY GARRETT, ESQ.
         BY:  ERIN MORGAN, ESQ.
         BY:  ANNA LIPIN, ESQ.
         BY:  FLINT PATTERSON, ESQ.

              Counsel for the Defendants


                   _ _ _ _ _ _ _ _ _ _ _ _


COURTROOM DEPUTY:  All rise.  The United States District Court for the District of Delaware is now in session.  The Honorable Maryellen Noreika presiding.

THE COURT:  All right.  Good afternoon, everyone.  Please be seated.

All right.  Ms. Gaza.

MS. GAZA:  Good afternoon, Your Honor.  Anne Gaza from Young, Conaway on behalf of plaintiff, ARM.  I'm joined today by Daralyn Durie, Erik Olson, Shaelyn Dawson, Nicholas Fung, Daniel Muino, Henry Huttinger, Laura Gilbert Remus all from Morrison Foerster as well as my colleagues, Rehoboth Vrana and Daniel Mackrides.

THE COURT:  All right.  Good afternoon everyone.

MR. BLUMENFELD:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

MR. BLUMENFELD:  Jack Blumenfeld from Morris Nichols for Qualcomm and NuVia.  With me at counsel table are Karen Dunn, Catherine Nyrady and Jacob Braly from Paul Weiss.  Behind them, Jennifer Ying from Morris Nichols, Erin Morgan from Paul Weiss, and behind them, Flint Patterson, Ruby Garrett and, Chris Longman from Qualcomm.

THE COURT:  All right.  Welcome to all of you and good afternoon.

Okay.  All right.  Let me just get my document ready here.

So I appreciate the letter that we received last night from the defendants on simplifying the case.  I think it's dropping the counterclaims.  How are we going to resolve those?

MS. DUNN:  Your Honor, they're out of the case, so we are dropping them as claims.

THE COURT:  So I always run into this problem and then I get like after the case are they dismissed, are they dismissed with prejudice, did you fail to put in evidence on them, so I'm granting judgment, what are we doing with them?  You can't just say we're dropping them.  They're in the case.  How do I get them out of it?

MS. DUNN:  We can file a voluntary withdraw of the claims if that is what Your Honor would like.

THE COURT:  I want to know what you guys have agreed to do.  So have you talked with the other side?

MS. DUNN:  We talked to the other side and agreed that we would drop the claims so they're aware.  I don't think we've talked mechanically how we would do that.  We're happy to do that and make a submission to the Court.

THE COURT:  That would be very helpful.

MS. DUNN:  Okay.

THE COURT:  And I don't mean to suggest that I don't appreciate that you're dropping them, it's just that I have gotten myself into trouble before when I don't figure out what that means.

MS. DUNN:  Understood, Your Honor.  Plaintiff's

A1940

25

the founders received compensation in the acquisition, or to the fact that there is a bonus structure laid out and a term sheet that was signed as part of the acquisition. All of the reasons that ARM provides in their response are satisfied without disclosing the actual proceeds that were made by the NuVia founders who are nonparties to this action. And including that information and introducing that evidence into this case would only seek to inflame the jury.

To also address one of the issues that's raised in ARM's response, they question whether a particular milestone -- I think the last pending milestone payment was paid out based on --

THE COURT: How much money are we talking about?

MR. BRALY: It is approximately 80 to $100 million, Your Honor. Mr. Gulati in Exhibit 1A to our opening brief provides a breakdown of the amount on pages 137 to 138, and describes both the stock transfer as well as a cash payment and then, of course, there are milestone payments as well.

THE COURT: Okay. Let me hear from the plaintiff.

MS. DURIE: Thank you, Your Honor. Daralyn Durie for ARM.

Evidence of the amount of money that the founders stood to make by virtue of the acquisition is

26

highly relevant to their motivation for disregarding their contractual obligations. And closing that transaction notwithstanding the consent requirement and failing to get consent, and then using the ARM technology that had been developed at NuVia in order to speed product development at Qualcomm and get the milestone payments that had been promised to them. And I think the case law is quite clear that evidence of the amount of money that a party stands to gain is evidence of bias. And it shows their motivation for engaging in the specific conduct that is at issue in this case.

THE COURT: All right. I think I have heard enough.

MS. DURIE: Thank you.

THE COURT: I am going to deny the motion. If defendants -- I've already permitted defendants to use the royalty rate to show motive and bias from plaintiff's part, then plaintiff can also use Qualcomm's buyout figures to show motive or bias of the NuVia folks.

Okay. Qualcomm's motion in limine number 2, defendants seek to preclude ARM from making arguments about its ALA program, ALAs generally unless it produces all of its third-party ALAs without redactions. We had a little bit of a discussion about this at the last hearing. I'm not sure if I screwed that up. So I do need to understand

27

what's going on because plaintiff now seems to be saying look, we're not going to use those, which I appreciate because you didn't produce them, you shouldn't be able to use them.

But what I'm not sure happens is instead it seems like you're saying we're just going to have people testify. Well, what are you going to have them testify? Are you going to have them testify about things that they need those documents to cross-examine them on, or are you going to testify about stuff that you've already produced discovery on? So that is what I need some help on.

MS. DURIE: Thank you. And the answer, Your Honor, is the latter. So we will have witnesses describe at a high level the ALA program, and that there are ALA's with a number of different companies. That I think is not a contested fact. We do not intend to put in any evidence about the specific terms of specific agreements that would implicate in any way any information that was redacted from those agreements.

The only -- the reason that this evidence is relevant is to show -- in part to show harm. Obviously the details of that harm are for the remedies phase for a specific performance, but Qualcomm has taken the position that we need to show as an element of the breach of contract claim harm from the breach.

28

THE COURT: And I agree with that.

MS. DURIE: Right. And so we intend to have testimony both that ARM is harmed by the unlicensed use of our technology by Qualcomm and not being compensated for that use in the way that they believe they should have been, and that there is harm generally to ARM from the unlicensed use of its technology, this is not the only ALA.

THE COURT: But I need to know specifically what you suggest someone is going to testify about because if that person is going to say well, gosh, it affects our ability to negotiate good prices on other ALA's, that seems like something you should have produced.

MS. DURIE: I understand. We are not going to have witness testimony that there has been any past impairment in our ability to negotiate specific ALA terms including rates. We do think that to the extent that Qualcomm's conduct was blessed here and that Qualcomm was ultimately permitted to use unlicensed technology, that that would have negative consequences going forward, but we're not going to put in any testimony --

THE COURT: How is that showing damages? That's showing speculative stuff for the future. How is that showing that you have been damaged by the breach?

MS. DURIE: I think there is exigent harm to the licensing ecosystem, but I think for purposes of showing

29

harm as an element of the breach of contract claim, the fact that our technology is being used in an unlicensed fashion without compensation, without in our view adequate compensation --

THE COURT: That one I understood. I understood that one. I don't understand you saying and now we're going to put someone up and he's not going to say we've already been harmed because we couldn't negotiate better deals or people were like you let Qualcomm get away with it, so we can get away with paying less or something, you're not going to do that and instead you want him to say well, it may happen in the future, that doesn't seem like harm for a breach of contract. That seems kind of speculative and future.

MS. DURIE: I don't disagree that it is about the future. It is about why this lawsuit is important to ARM, it is about why ARM made the decision which was as I understand it literally unprecedented to sue one of its licensees for the unlicensed use of its technology.

I agree that is not what we will be relying on, it is the predicate for a determination of harm as an element of a breach of contract claim, I believe that is the harm that will be specific from the unlicensed use of this technology.

THE COURT: Let me ask you a question because it

30

sort of your explanation kind of raised this which is let's say you go before the jury and the jury says there was a breach, and the damage, there was damage and loss of reputation, something like that. Okay? Something that's damages, but that is sufficient to show damages for purposes of making out a breach of contract claim. And then you come to me and you've already just said part of your damage may be that you're not compensated adequately for the breach, for the use of our technology, so it's using your technology but not compensating you adequately.

So let's just say after I hear you out on that I say it doesn't seem to me that there is no adequate monetary relief. What happens because there has been no request for damages, and if I don't give you specific performance but there is a breach, where are we?

MS. DURIE: So the Court has the power in equity to make awards incidental to an equitable request for specific performance.

THE COURT: Did you ask for that in the pretrial order?

MS. DURIE: We asked for that in the pleadings and I believe it is in the pretrial order as well.

I do want to make clear that what I have been talking about is harm as an element of a breach of contract claim as distinct from damages.

31

THE COURT: I understand. But if you're going to convince me -- if you want to tell the jury that our harm is that we haven't been adequately compensated, I can't pretend that I didn't hear that. Compensation sounds money-ish.

MS. DURIE: I understand, and that is an element of harm and I understand Your Honor's point. So the answer to your question I think is remedies that are incidental to specific performance.

THE COURT: All right.

MS. DURIE: Thank you.

THE COURT: Mr. Blumenfeld, did we help with some of that? So they're not going to put in ALA's, they're not going to testify that anything -- that there was anything in the past where they -- their negotiations or their ALA's were somehow impacted, and that's damages. I'm not sure I'm going to let them put in something speculative about the future, while maybe this will happen, maybe it won't. So that leaves us with an argument that they're not being adequately compensated for their -- for the alleged breach. That seems like it's outside of this motion in limine. So what is left of the motion in limine that I need to address?

MR. BLUMENFELD: So a couple of things, Your Honor, and I want to swing back to the damages issue that

32

you raised with Ms. Durie. I don't think it's correct that all they intend to do is call some executives and say oh, there may be some harm to us in the future which Your Honor has said you haven't decided whether you will let them do that or not. This came up a little bit during summary judgment where they put in a declaration from two of the executives. In fact, if you read their MIL response it specifically says --

THE COURT: That caught my attention in the MIL, we're going to have somebody testify and I'm like okay, about what.

MR. BLUMENFELD: It says about royalties that have been decreased. That doesn't sound like the future, that sounds like --

THE COURT: I understand, but we've now had a representation that suggest that's not going to happen, unless the royalties that have been decreased means that they're not being paid, they're Qualcomm or NuVia royalties that they're not getting paid.

MR. BLUMENFELD: Right. If I could hand up one of the declarations they put in, this is a big part of our concern. It's from Williamson. It came in in August, we objected to it as part of the summary judgment proceedings because it is speculative, and also because it does disclose things or argues things that we didn't get discovery of

33

because we didn't get the ALA's in for other reasons. But if you look at Mr. Williamson's declaration, and he is listed as a trial witness, so he's senior vice-president and general manager, and he says in paragraph 6 that the unlicensed use of ARM's technology has caused multiple harms to ARM. And then he goes on to explain that, and in paragraph 7, he says based on my experience at ARM and marketing and business roles since 2015, the industry's perception of ARM's reputation and its ability to protect its intellectual property impacts ARM's contracts with its licensees, for example, it affects the terms that ARM's licensees are willing to accept, their proposals during negotiations, their willingness to comply with those issues. Terms that may be impacted include that products are licensed financial terms, scope of license technology, I don't know how I'm supposed to be able to cross-examine him on these things happen when I'm talking to our licensees, by the way, you don't have the licenses so you can't use them to cross-examine me --

THE COURT: Hold on. Let me ask. Ms. Durie, I would have thought based on our representations you weren't planning to have him do that because I kind of agree, Mr. Blumenfeld can't just say --

MS. DURIE: That is correct, we are not going to say that there have been any such impacts to date.

34

THE COURT: But you want him to say but there will be.

MS. DURIE: I would like for him to be able to say that one of the reasons that ARM brought this case is because its licensee ecosystem is extremely important to it and it is very important to ARM as an IP licensing entity that its licensees respect its intellectual property. And that in ARM's view, if Qualcomm were able to use ARM technology in an unlicensed fashion, that could have very severe downstream consequences for ARM. I don't expect anyone to spend a long time belaboring the point.

I think at that high level, they are -- Qualcomm has said that they are going to try to suggest that ARM's reasons for refusing to consent and bringing the case was because it wanted to get rid of the Qualcomm ALA. Our response to that is to say no, that is not true, the reason that we are here is not because we want to get rid of the Qualcomm ALA, the reason that we are here is because Qualcomm is using our technology in an unlicensed fashion and that is important to us.

But we don't intend to belabor the point and we do not intend to make any argument that there has been any specific effect in any specific license agreement that would give rise to the need to cross-examine on that.

THE COURT: So with that --

35

MR. BLUMENFELD: Your Honor, if you go on to -- I want to respond also to her point about motivation, how it is their motivation. The suit gets in after, what Mr. Olson said, after our motivation.

THE COURT: I know. Well, you are going to talk about their motivation to sue, that's all I heard over here is they're suing us because they want more money so I can sort of see why they get to respond and say no, we're not suing them because we want more money, we're suing them because this is harmful to our business model.

MR. BLUMENFELD: Well, we will get to that undoubtedly when things come up at trial, but on the specific things that Ms. Durie said about what they're going to do, if you turn to paragraph 11 and then paragraph 13 of Mr. Williamson's declaration, he says he --

THE COURT: Yeah, let's just check before you tell me, are you going -- this seems like past stuff, since June people have contacted me and I have been damaged. So we need -- you're not going to put this in.

MS. DURIE: That's correct, Your Honor.

THE COURT: Okay. So that was paragraph 11.

MS. DURIE: Paragraph 11, that's right.

THE COURT: And then --

MS. DURIE: I want to be clear, we're talking about the phase in front of the jury, obviously specific

36

performance is a separate question and we'll address that at a separate time in front of Your Honor.

THE COURT: We can do that, I'm just saying the extent that you want him to say I have been contacted by people and our agreements are suffering, I would have expected that all of that underlying stuff be produced, and that you're not just going to have him get up there and say it and leave Mr. Blumenfeld to say I don't know if that's true or not. So you can ask again to put it in if there is a bench trial phase, but I still in a bench trial require you to disclose stuff during discovery.

All right. What about paragraph 12, did you have a problem with paragraph 12, Mr. Blumenfeld? This is -- that's different, that's Qualcomm's position as to what's licensed.

MR. BLUMENFELD: It's 13, that's the other issue. But on this entire subject, I don't -- so they put in a declaration saying I have talked to our partners, I have talked to our licensees, here is what I have learned from them. They say that in the declaration. They're not going to do that at trial. I don't know how he can get on the stand and just say but this is going to happen.

THE COURT: And I haven't quite gotten through that. I understand that concern. I understand that concern. And I'm not -- but I guess what I'm thinking is I

37

need to understand more of what he's going to say, right? Like, why can't he get up there and say this is our whole business model, our business model is we licensed technology, and you know, if you're going to be out there -- and we think we have great technology. But it's important to us that people respect our licenses because if people don't respect our licenses, our business model is not worth the paper that it's written on. Right?

MS. DURIE: Right.

THE COURT: And then he can say and our perception is that Qualcomm or NuVia, or I know there is two different parties, I don't know who I'm talking about at this moment, but you don't have to tell me there is two different parties, whoever is not respecting our licenses, probably both, right, neither of them respected the license according to the plaintiff. So that seems okay to me and that's not speculative damages, that's saying it's important to us that people respect it, and it's important to our business model that people respect it, and they're not respecting it. And you can say well, you don't have any evidence that it actually had an impact, but why can't he get up there and say, come on, we're a licensing company, all we do is enter agreements and if we say everybody can just kind of pooh pooh our agreements, you know, it doesn't -- the jury can look at that and be like well, that sounds

38

bad.

MR. BLUMENFELD: So here is the problem with that, and it goes to the question Your Honor raised with Ms. Durie. How do I cross-examine him? Because, for example, we know that they've entered into other licenses since the termination of the NuVia license. We all know about Apple and there are others they've entered into since then. We don't have them, or we have them in redacted forms that we don't know what the terms are. We went through that back in March with the Google licenses where the terms are totally redacted. So if he gets on the stand and says this is going to affect our licensing program, it's going to affect our ability to collect royalties, it's going to affect people's willingness to take a license and all I can say is well, people took licenses, right, and I don't have those licenses and I can't cross-examine him on whether the harm is real or whether it's just something he's making up for the jury.

THE COURT: Let me ask Ms. Durie on that specific point because that one seems --

MS. DURIE: So we're not arguing that there has been any affect on any exigent license agreements because the harm hasn't happened yet --

THE COURT: Hold on, hold on. If he's going to get up there and say well, it's going to harm us in the

39

future and Mr. Blumenfeld could if he had the agreement say good of you to say, but by the way, since this all happened, you have entered into 89 license agreements and, in fact, you got better terms than you ever had before, that's a pretty good cross of him saying oh, it's going to now hurt us.

MS. DURIE: So I disagree --

THE COURT: Well, I don't --

MS. DURIE: But the distinction, I want to draw the distinction between what will happen as a consequence of Qualcomm being allowed to use technology in an unlicensed way without consequences --

THE COURT: Yes. According to you -- hold on.

MS. DURIE: Yes.

THE COURT: According to you, Qualcomm has been allowed to do this.

MS. DURIE: Not yet. We're in court litigating over that very issue. They have not gotten away with it. They make -- if they were to get away with it, if this were to not have a consequence, we would be harmed. But we are not saying -- there has been no --

THE COURT: Now you're getting super speculative. So the jury has to now assume that the damage is that they find that there is a breach, but they can't find that there is a breach unless there is damage. So I

40

can't -- that seemed wrong to me.

MS. DURIE: So let me be clear. The allegation of harm for purposes of whether there was a breach is that they are using our unlicensed technology and they are not paying for it. That is harm. And that suffices to show harm for purposes of a breach.

THE COURT: You know what, that's all I'm going to let him say at trial. He cannot say -- no, he cannot say and in the future, this is going to cause us problems if the jury finds that there was a breach and this can all go and they are allow to get away with it. He cannot say it. Okay? He cannot say it. You can stop arguing it because you did not produce -- you did not produce information that would allow the defendants to fairly cross-examine your witnesses because I get it, you're saying well, they didn't get away with it until the jury finds they got away with it. The fact is they're doing it now. There is no -- no, he can't -- and so one, no, you didn't produce the documents. Two, no, it seems awfully speculative to say we think that at some point if the jury finds that there wasn't -- I don't even know if the jury finds there was a breach or there wasn't a breach that we're going to be harmed.

MS. DURIE: It's not the jury verdict. Let me very be very clear, it's why we brought the lawsuit. If we had allowed this conduct to go unchallenged, if we had

allowed Qualcomm to use our IP in an unlicensed fashion and not take an action, that would have threatened our ecosystem, the reason we brought --

THE COURT: There is a difference between saying it will threaten our ecosystem and saying, and what that means is we are going to be harmed in the future by people, you know, everybody -- no one is going to respect our licenses. It's one thing if he gets up there and says this is our business model, we need people to respect our licenses, they're not respecting our licenses, okay, I don't know exactly what that establishes, but the jury I suppose could fairly draw an inference from that. It's a very different thing for him to say and by the way, we will be harmed in the future, or we may be harmed in the future if this is allowed.

MS. DURIE: May I just say in response to the attack on our motive for bringing the lawsuit, which Qualcomm intends to put at issue by saying we refused to consent to try to get out from under the Qualcomm ALA, we would like our witness to be able to say that's not why we're here, the reason why we're here, why we brought the lawsuit and why we are insisting on our rights is because we are a licensing shop. If our technology is used in an unlicensed fashion, that threatens our entire business model and we're very concerned about what the consequences of that

would be. We're not saying we're harmed by that --

THE COURT: Yes, but the problem I have is -- and you can say that I'm talking about something different, but I still think it's fair within the scope of cross-examination, if your witness gets up there and says all hell is going to break loose if people don't respect our licenses, our business model is not worth the paper it's written on, and Mr. Blumenfeld or Ms. Dunn or Ms. Nyrady or whoever can't get up and say well, wait a second, everybody knows that according to you, Qualcomm has not been respecting our technology and has just been using it as you say in an unlicensed manner and the sky has not fallen in, in fact all of this other stuff has happened, the problem is he can't say that or they can't say that because you didn't produce the documents.

MS. DURIE: I would think, Your Honor, we could arrive at a stipulation to solve that problem because that is not the argument that we are making. We are saying if we had not enforced our rights and just sat on the sidelines and didn't take action to protect our intellectual property and allowed the unlicensed use of our IP without consequence, that is what would threaten our entire model, not being here pursuing this litigation, but sitting on the sidelines and not taking action.

If Qualcomm wants to cross-examine our witnesses

--

THE COURT: How are they supposed to say we don't believe you, that's not true?

MS. DURIE: I think we could work out a stipulation. If their goal is to be able to establish that we are not contending there has been any such harm with respect to the terms of license agreements that we were able to negotiate in view of the fact that we did file a lawsuit, we have no problem with that, and I think we could work out a stipulation to that effect.

THE COURT: All right. This is what I am going to do. You can't use the ALA. It sounds like you don't want to use the ALA. And you can't use anything that's happened to date, and it doesn't sound like you want to use anything that's happened to date. So that I will rule on. Whatever happens, see if you can come up with a stipulation that will allow you to deal with it. If not, you can use some of your trial time to argue the rest of this, whatever is left of this motion to me.

MS. DURIE: Understood. Thank you, Your Honor.

THE COURT: But I understood the motion to be that defendants seek to preclude ARM from making argument about its ALA product program and so I guess to the extent that we're talking about not specific agreements but the program, then I -- let me know what's left of that motion.

MR. BLUMENFELD: I'm not sure, Your Honor, that there is anything left that we need to deal with today. We may well get into the issue of them putting Mr. Williamson, Mr. Abby, Mr. Haas, their witnesses on to talk about -- to create an impression that there is a parade of horribles that are going to happen and if that does --

THE COURT: I understand. I understand. And I'm not in any way precluding you from objecting to that, or from raising that before the witnesses get on the stand and asking for a proffer on what they're going to say on that so we can address it.

MR. BLUMENFELD: Thank you.

If I can respond to the colloquy that you had on damages, this is kind of an interesting issue for us. Back when we were before you in March, you asked them whether they were asserting a damages claim and they said no. They left themselves open to possibly doing it later. They've never given us a damages expert report. They've never given us a disclosure of a damages theory. They haven't put --

THE COURT: How scary it must be that they want me to figure it out.

MR. BLUMENFELD: But if you go to the pretrial order, I don't know if you have it in front of you.

THE COURT: I can pull it up. Give me a second.

MR. BLUMENFELD: It's Exhibit 13 to the pretrial

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>    Plaintiffs,<br><br>  v.<br><br>ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,<br><br>    Defendant. | C.A. No. 24-490-MN<br><br> |

### DEFENDANT ARM HOLDINGS PLC'S RESPONSE TO QUALCOMM'S DECEMBER 16, 2025 LETTER TO SPECIAL MASTER RYCHLICKI

Dated: December 23, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A1946**

adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

**A1947**

Dear Special Master Rychlicki:

We write in response to Qualcomm's December 16, 2025 letter regarding its motion to compel the production of Architecture License Agreements ("ALAs") between Arm and third parties. Arm does not object to the production of ███████████████ ALAs and Annexes, subject to the protections discussed below.



Whether Arm negotiated in good faith instead turns primarily on the parties' conduct, not on whether another licensee has different terms that Qualcomm finds more attractive. "Nothing in the duty of good faith requires that parties to a negotiation propose only such terms as the other party is happy with" or that match the terms of another agreement. *Warner Theatre Assocs. Ltd. P'Ship. v. Metro. Life Ins. Co.*, 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997), *aff'd*, 149 F.3d 134 (2d Cir. 1998).

If the Court does order production of any ██ ALAs or Annexes, those productions should come with enhanced protections. No outside counsel for Qualcomm or any other advisor involved in ███████ negotiations should have access to those materials. To the extent outside counsel who have entered an appearance in this case are advising on those negotiations, they should provide written confirmation that they will not use those materials to in any way influence the advice they provide Qualcomm, consistent with their obligation under the Protective Order to use highly confidential information "only for purposes of this Litigation" and "not … in any other way, or for any other purpose." D.I. 84 ¶ 37. Qualcomm would not have access to other ALA licensees' terms in the ordinary course of business and should not be permitted to use this litigation to gain a commercial advantage by leveraging its outside counsel's knowledge of those agreements to assist in its commercial negotiations. Given the complexity of the situation, Arm will immediately work with Qualcomm to reach an agreement on appropriate confidentiality procedures for the ███████████ materials.

---

[1]    Qualcomm incorrectly asserts "███████████████████████████████ ███████████████████████████" in a letter that was not even served on Ampere, despite Ampere having a pending motion for a protective order. Ex. 3 at 2 n.3. Although Arm and Ampere now have a common majority owner, Ampere remains an independent third party. Arm has no ownership or control over Ampere.

A1948



Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

Words: 1017

---

2   The ALAs and annexes still have no bearing on Qualcomm's claim for breach of ▮▮▮▮ of the ALA for the reasons discussed in Arm's August 7, 2025 letter.

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,

        Plaintiffs,

        v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,

        Defendant.

C.A. No. 24-490-MN



## DECLARATION OF PETER EVANGELATOS IN SUPPORT OF DEFENDANT ARM HOLDINGS PLC'S RESPONSE TO QUALCOMM'S DECEMBER 16, 2025 LETTER TO SPECIAL MASTER RYCHLICKI

Dated: December 23, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

**A1950**

reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

**A1951**

I, Peter Evangelatos, declare as follows:

I am an attorney with the law firm of Kirkland & Ellis LLP, counsel for Arm Holdings PLC ("Arm") in the above referenced action. I submit this declaration in support of Arm's Response to Qualcomm's December 16, 2025 Letter to Special Master Rychlicki.

1.    Attached as Exhibit 1 is a true and correct copy of Plaintiff's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discover Disputes, dated August 1, 2025. ███████████████████████████

2.    Attached as Exhibit 2 is a true and correct copy of the May 31, 2013 Amended and Restated Architecture License Agreement between Arm and Qualcomm, bearing Bates stamp ARM_00055357. ███████

3.    Attached as Exhibit 3 is a true and correct copy of Plaintiff's Letter to Special Master Rychlicki Regarding Subsequent Events Relating to Motion to Compel Production of Arm's Architecture License Agreements, dated December 16, 2025. ███████████ ███████████

4.    Attached as Exhibit 4 is a true and correct copy of a December 10, 2025 letter from S. Collins to A. Chaplin. ████████

5.    Attached as Exhibit 5 is a true and correct excerpted copy of the June 26, 2025 deposition transcript of William Abbey, ████████████

1

A1952

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 23rd day of December 2025 at New York, N.Y.

/s/ Peter Evangelatos
Peter Evangelatos

2

**A1953**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 23, 2025, a copy of the

foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com
John Poulos
NORTON ROSE FULBRIGHT US LLP

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

**A1955**

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 24-490 (MN) |
| v. | ) ) ) | ██████████████████ |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI REGARDING OUTSTANDING DISCOVERY DISPUTES

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

**A1957**

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

August 1, 2025

Dear Special Master Rychlicki:

In August 2022, Arm sued Qualcomm for developing unlicensed technology after Arm terminated agreements with Qualcomm subsidiary Nuvia. *Arm Ltd.* v. *Qualcomm Inc.*, C.A. 22-1146 (MN), D.I. 1 ¶ 78. Rather than waiting for resolution through litigation, Arm engaged in self-help, withholding licensed technology from Qualcomm, refusing to license other technology, and interfering with Qualcomm's customer relationships. D.I. 137 ("SAC"). Qualcomm filed this lawsuit. D.I. 2. In December 2024, the *Arm* v. *Qualcomm* jury found the Qualcomm CPUs licensed. C.A. 22-1146 (MN), D.I. 572 at 1.

## I.    Refusal to Produce Unredacted Third-Party Agreements

**TLAs.** Qualcomm needs Arm's TLAs and related agreements—and associated 30(b)(6) testimony (**RFPs 123, 140; Topics 2, 9**)[1]—to prove quotes Arm gave Qualcomm for Arm Cortex Implementation Cores (codenamed ▮▮▮▮▮▮▮▮▮▮▮) violated the Qualcomm TLA, which ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ SAC ¶¶ 104-105; Ex. 8 ▮▮▮▮ Arm claims it based the October 2024 quote on ▮▮▮▮▮▮▮ agreements. Ex. 9 at 23:1-24; Ex. 10 at 97:12-98:2; Ex. 11 at 65:24-72:9. Arm should produce all[2] agreements, so Qualcomm can test whether Arm based its ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮—and whether Arm's quotes for other IP violated the implied covenant of good faith and fair dealing. Arm should also produce a witness on the agreements' royalty rates.

Arm claims it "produced all third-party agreements" licensing the Implementation Cores "to which it has not received an objection or a motion for a Protective Order was not filed." Ex. 12 at 2.[3] Arm's withholding based on mere "objections" is improper under the Protective Order. D.I. 84 ¶ 51. Arm's representation also is inaccurate: it has not produced agreements for several entities licensing these products, including ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ And Arm omitted Annexes for several agreements that contain pricing information. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Finally, Arm improperly limits production to TLAs licensing ▮▮▮▮▮▮▮▮, but Qualcomm's claims allege Arm provided unreasonable quotes for other TLA IP. SAC ¶¶ 51, 102.

Arm also put these third-party agreements at issue by using the fact that Qualcomm has not seen third-party TLAs to cross-examine Qualcomm witnesses, asking whether they were aware of pricing of ▮▮▮▮▮▮▮▮ in third-party TLAs and whether the rates provided to Qualcomm were accepted by the industry. Ex. 20 at 106:6-107:22; Ex. 21 at 49:16-19, 53:8-22.

---

[1] "RFP" refers to Qualcomm's requests for production, Exhibits 1-4. "Topic" refers Qualcomm's Notice of Rule 30(b)(6) Deposition of Arm, Exhibit 5. "Interrogatory" refers to Qualcomm's interrogatories, Exhibits 6-7.

[2] With respect to ▮▮▮'s agreements, Morris, Nichols, represents Qualcomm.

[3] ▮▮▮ agreed to production of its TLA and related agreements, Ex. 13, yet Arm has not produced them.

Arm cannot challenge Qualcomm's knowledge of third-party pricing while simultaneously withholding it.

**ALAs.** Arm breached the Qualcomm ALA by withholding out-of-box packages ("OOBs") and Architecture Compliance Kit ("ACK") patches. SAC ¶¶ 173-180. Arm argues it was not obligated to deliver that technology, including because it is not ████████████ under the ALA. Ex. 22. Arm provided that technology to other licensees, Ex. 45 at 94:25-97:16, 126:8-127:4, thus, Qualcomm seeks to determine whether the definition of and obligation to deliver ████ ████████ is the same in those partners' ALAs.

Additionally, in May 2020, Qualcomm elected to extend the Qualcomm ALA to ████ ██████████████████████████████ including Armv10. SAC ¶¶ 128-134, 184. ██████ ██████████████████████████████████, *id.* ¶ 65; Ex. 23, yet Arm failed to respond to Qualcomm's election for five years, violating the implied covenant of good faith and fair dealing. Arm denies a breach, claiming it engaged in good faith negotiation even though Qualcomm's election was improper and the ALA would not cover v10. Ex. 24. Qualcomm needs to review other ALAs to address Arm's defense.

In *Arm* v. *Qualcomm*, Arm produced limited heavily redacted ALAs, which are insufficient here. Qualcomm needs *all* unredacted ALAs and the annexes thereto (**RFP 27; Topics 2, 7**) to evaluate the scope of deliverables and rights of other licensees treated differently than Qualcomm. For example, the produced ALAs redact ██████████████ terms, Ex. 25 at 2, 4, 12, yet Arm argues it did not breach the Qualcomm ALA because the OOBs and ACK patches are ████████ and not "██████████████," Ex. 22 at 6, 10. Arm also redacted all fee and royalty information, Ex. 25, and refused to produce ████████████████ (**RFP 162**), both necessary to test Arm's claim of good faith negotiation. At least ████ agreed to produce its ALA (with limited redactions that do not relate to the provisions at issue), Ex. 13, yet Arm has not produced that document.

As with the TLAs, Arm also questioned multiple Qualcomm witnesses regarding their knowledge of terms in third-party ALAs and whether those terms were comparatively advantageous to Qualcomm, while withholding the agreements that would allow Qualcomm to refute the implications of Arm's examinations. Ex. 20 at 57:2-18; Ex. 26 at 78:14-21, 80:12-21, 164:17-25. This is improper: Qualcomm must be allowed to probe Arm's defenses.

## II.    Improper Privilege Determinations

Arm withheld or redacted documents based on improper privilege assertions. The relevant documents should be produced and redactions should be lifted.

**Communications with FGS Global.** Qualcomm asserted claims arising from the leak by Arm's counsel (MoFo) and communications firm (FGS Global) to Bloomberg News of an October 22, 2024 letter Arm wrote to Qualcomm threatening to terminate Qualcomm's ALA. Arm and FGS Global assert communications about the leak are privileged (including "common interest") or work product. Exs. 29; 46 (FGS Emails). But generic "public relations services," including "[r]eviewing press coverage, making calls to various media to comment on developments in the litigation, and even 'finding friendly reporters,'" are not protected. *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 3140050, at *13-14 (D.N.J. July 22, 2021); *In re Riddell Concussion*

2

*Reduction Litig.*, 2016 WL 7108455, at \*9 (D.N.J. Dec. 5, 2016), *aff'd in relevant part*, 2017 WL 11633446 (D.N.J. Jan. 5, 2017).  FGS was engaged by Arm, not its outside counsel.[4]  Ex. 28 at 24:2-27:20, 57:17-23.  And common interest privilege is merely "an extension of the attorney-client privilege or an exception to the waiver of that privilege."  *10x Genomics, Inc.* v. *Celsee, Inc.*, 505 F. Supp. 3d 334, 337 (D. Del. 2020).

**Improper Date Cutoff.**  Arm failed to log documents dated after the original April 2024 Complaint.  The ESI Order required a privilege log of withheld documents generated prior to "the filing of the Complaint."  D.I. 85 ¶ 1(e)(ii).  The operative "Complaint" contemplated by the March 21, 2025 ESI Order was the December 16, 2024 First Amended Complaint.  D.I. 36.  Qualcomm's claims are partly based on post-April 2024 conduct, including Arm's October 22, 2024 letter.  While Arm eventually logged 27 entries for "documents relating to Arm's communications with Bloomberg regarding the notice" and related follow up communications, D.I. 162 at 4, it otherwise refused to log withheld documents dated from April 18 and December 16, 2024.  Ex. 29.

**Subject Lines Redactions.**  Arm redacted for privilege subject lines for four meetings with outside counsel regarding the leak.  Exs. 30-33.  Arm also clawed back metadata revealing subject lines for 18 documents.  Ex. 34.  In addition to the subject lines not being privileged, the ESI Order contemplates a party challenging a privilege claim may "request metadata for individual documents and emails," D.I. 85 ¶ 1(e)(v)(1), and such metadata will include "Email Subject," *id.* ¶ 2(p).

## III.    Failure to Provide Discovery

Arm refused to produce documents or provide 30(b)(6) testimony on entire categories of relevant information, prejudicing Qualcomm.

### A.    Breach of Qualcomm ALA

**Withheld Technology.**  In support of its ALA breach claim, Qualcomm requested documents regarding the technology and information Arm provided to other ALA licensees but not to Qualcomm, including, for example, versions of Arm's ACK from the relevant time period and any patches thereto (**RFP 6; Topic 14**); documents and communications regarding ACK patches (**RFPs 31, 67, 77, 139; Topic 14**) and OOBs (**RFPs 33, 67; Topic 14**).  SAC ¶ 175.

Arm would only produce lists of technology made centrally available for licensee download on an Arm platform and technical documents it claims are "sufficient to show" the OOB and ACK patch development and timeline.  Ex. 35 at 2, 7-8; Ex. 36 at 5; Ex. 37 at 18.  But ACK patches and OOBs are not available on the platform in question and Qualcomm found no

---

[4] Arm's cases, Ex. 27, show no privilege attaches where the client, not a law firm, retains the PR firm.  *In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 331 (S.D.N.Y. 2003) (no privilege for communications had client "hired Firm directly"); *Stardock*, *Sys., Inc.* v. *Reiche*, 2018 WL 6259536, at \*3, \*6 (N.D. Cal. Nov. 30, 2018).

3

documents in Arm's production showing the time and effort required to develop ACK patches and OOBs. Thus, Qualcomm cannot investigate what Arm withheld and the impact to Qualcomm.

**Arm's Decision-Making.** Qualcomm's **Topic 17** seeks testimony regarding Arm's decision to withhold deliverables from Qualcomm, and **Topic 41** and **RFP 156** seek information regarding Arm's decision to resume providing deliverables following the December 2024 jury verdict in *Arm* v. *Qualcomm*. Although Arm witnesses testified ███████████████████ ██████████████████████████████████████ Ex. 39 at 116:11-117:23, 125:6-127:12; Ex. 40 at 31:22-32:23, Arm has not produced those communications or provided a witness on its decision-making, limiting discovery to "Arm's provision of materials and support to Qualcomm" both before and after the verdict, and Arm's responses to Qualcomm's notices of breach. Ex. 37 at 41. Qualcomm knows what Arm delivered—it does not know the entirety of what Arm withheld, on what basis, and whether there is additional technology withheld today.

**Third Parties Deliveries.** Arm's delivery of technology to third parties is relevant, including because the Qualcomm ALA requires ████████████████████████ ████████████████████████████████████████ and because communications with third parties may show Arm treated Qualcomm differently from others with the same or similar rights (**RFPs 28, 32, 68**). Arm refused to perform a search for documents or provide an accounting of ████████████████ or ████████ delivered to third parties but not to Qualcomm (**Interrogatories 1, 5**), instead producing only "documents sufficient to show the centralized distribution of documents, and such documents made available by such distributions, to all third-party ALA licensees." Ex. 35 at 7; Ex. 41 at 9. These limitations do not allow Qualcomm to determine when such technology became "████████████████ or who obtained the technology.

### B.    Failure to Negotiate Armv10 License

Arm refuses to provide discovery into the versioning and development timeline of the Arm Architecture, its pricing strategy, or its ████████████████████, preventing Qualcomm from evaluating whether Arm negotiated a good faith offer for Armv10. According to Arm's Chief Architect, ████████████████████████ Ex. 42 at 130:21-23. Armv9's baseline is relevant to evaluating a fair offer for Armv10. Yet Arm refused to provide discovery into its versioning practices (**RFP 42**) pricing strategies (**Topic 26**), or efforts to encourage adoption of Armv9 (**RFP 102**). Arm also refused discovery into features included in Armv10 and associated value, when Arm began developing Armv10, and information about Arm's licensing of Armv10, including Arm's pricing strategy (**Interrogatory 3;**[5] **Topic 27**).

### C.    Breach of Qualcomm TLA

Qualcomm sought discovery concerning discussions about licensing to Qualcomm under the TLA (**RFPs 40, 56, 57, 63; Interrogatory 6**) and Qualcomm's notices of breach of TLA

---

[5] For **RFP 144**, Arm agreed to produce documents "consistent with its response to Qualcomm's Interrogatory No. 3." Ex. 38 at 27-28.

██████ (**RFPs 49, 50, 51**).  Arm's production contains less than fifteen emails concerning Qualcomm's requests for licenses to ██████████████—all from the same three redacted email threads—and not one internal document concerning Arm's response to Qualcomm's breach notices.  Arm also improperly withheld as privileged documents purportedly relevant to Arm's CPU pricing analysis and refused to produce 2020-2023 ███████████████████ ██████████.  Ex. 47 at 1-2.  Arm cannot defend against Qualcomm's TLA claim by asserting it undertook ███████████ but withhold the documents purportedly containing that analysis as privileged.

## IV.   Improper Responsiveness Determinations

Arm crafted underinclusive search terms and interpreted responsiveness so narrowly that it produced fewer than 5,000 emails and only 21 chats.[6]  The size of Arm's document production does not match Qualcomm's claims, which allege years-long misconduct by Arm spanning multiple agreements, lines of business, and levels of Arm's organization.

In *Arm* v. *Qualcomm*, Arm produced over 18,000 emails and over 700 chats covering a similar span of time to the conduct at issue in this case.  Arm's internal communications proved critical to probing Arm's claims, including, for example, a message from Arm's CEO expressing a desire to "hose" competitors through a shift in business model.  C.A. 22-1146 (MN), D.I. 588 (Trial Tr.) at 342:18-343:11.  In this case, Arm produced just 12 chats from its CEO, a search term custodian, despite testimony he ████████████████████████ ██████████████████████████████████.  Ex. 44 at 145:4-147:11.

Pursuant to Section 2(b)(i) of the ESI Order, D.I. 85, Qualcomm proposed ten additional search terms and modifications to Arm's terms.  Arm deemed its production sufficient.[7]  But even if Arm accepted Qualcomm's additional terms, Arm's narrow responsiveness determinations would exclude responsive documents.  Qualcomm requests Arm be ordered to produce, without responsiveness review, all non-privileged documents hitting on (1) Arm's terms and (2) Qualcomm's proposed search terms yielding fewer than 15,000 hits, excluding families.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 2394

---

[6] Arm's production in the prior case, Ex. 43 at 1, does not excuse Arm from discovery in this case.

[7] Arm claims its search terms passed requirements in Paragraph 2(b)(i) of the ESI Order.  Ex. 43 at 1.  But Arm deemed less than 3.5% of the hits to its search terms responsive, Ex. 48 at 7-9; Ex. 49 at 3-4, meaning had it produced no documents at all, it still would have complied with the ESI Order, which requires additional search terms only where "more than 10% of the null set is responsive."  D.I. 85 ¶ 2(b)(i).

# Exhibit 2

████████████████████████████

# A1965 - A2051
# Redacted in Full

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 20, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                          *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                      *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Sydney D. Gaskins, Esquire                                       *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Alexandra Corrinne Hottenrott, Esquire                           *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                                        *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                   *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                      *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                               *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*


                                    */s/ Jennifer Ying*
                                    _____
                                    Jennifer Ying (#5550)

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 27, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Sydney D. Gaskins, Esquire                                 *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Alexandra Corrinne Hottenrott, Esquire                     *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

2

Lydia B. Cash, Esquire                                      *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                     *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                        *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                                  *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*


                                            */s/ Jennifer Ying*
                                            _____
                                            Jennifer Ying (#5550)