## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,<br><br>Defendant. | **REDACTED - PUBLIC VERSION**<br>(Filed March 4, 2026)<br><br><br>C.A. No. 24-490-MN<br>(CONSOLIDATED)<br><br> |

### DEFENDANT ARM HOLDINGS PLC'S RESPONSE TO PLAINTIFFS' PARTIAL OBJECTIONS TO THE SPECIAL MASTER'S FEBRUARY 6, 2026 ORDER (D.I. 626) DENYING PLAINTIFFS' MOTION TO COMPEL (D.I. 359)

<pre>Dated: February 27, 2026

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Kasdin Mitchell, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
kasdin.mitchell@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com</pre>

<pre>YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

Attorneys for Defendant Arm Holdings plc</pre>

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................... 1

II.   ARGUMENT.............................................................................................................. 1

     A.    The Special Master Correctly Denied Additional TLA Discovery ........................ 1

     B.    The Special Master Correctly Concluded Third-Party ALAs Are Irrelevant ......... 3

     C.    The Special Master Correctly Upheld Arm's Privilege Assertions ....................... 5

     D.    The Special Master Correctly Rejected Qualcomm's Requests For
          Documents Concerning Arm's Alleged Withholding Of ALA Deliverables ......... 7

     E.    The Special Master Correctly Denied Qualcomm's Motion To Compel
          Privileged Documents About Qualcomm's TLA License Renewal
          Requests ............................................................................................................. 9

     F.    The Special Master Correctly Rejected Qualcomm's Request For
          Documents Concerning Arm's v10 Pricing And Development ........................... 9

III.  CONCLUSION .......................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apex Fin. Options, LLC v. Gilbertson*,
  2021 WL 5206104 (D. Del. Nov. 9, 2021) ................................................................................1

*In re Copper Mkt. Antitrust Litig.*,
  200 F.R.D. 213 (S.D.N.Y. 2001) ..............................................................................................6

*In re Grand Jury Subpoenas*,
  265 F.Supp.2d 321 (S.D.N.Y. 2003)......................................................................................5, 6

*Kickflip, Inc. v. Facebook, Inc.*,
  2015 WL 13446263 (D. Del. Jan. 21, 2015)............................................................................8

*Kurtz v. Westfield Ins.*,
  610 F. Supp. 3d 703 (E.D. Pa. 2022) .......................................................................................2

*Stardock Sys., Inc. v. Reiche*,
  2018 WL 6259536 (N.D. Cal. Nov. 30, 2018) .........................................................................6

*Upsher-Smith Lab'ys, LLC v. Zydus Pharms. (USA) Inc.*,
  2024 WL 3487935 (D. Del. July 18, 2024) ..............................................................................8

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
  2021 WL 3140050 (D.N.J. July 22, 2021)................................................................................5

*Warner Theatre Assocs. Ltd. P'Ship v. Metro. Life Ins. Co.*,
  1997 WL 685334 (S.D.N.Y. Nov. 4, 1997), *aff'd*, 149 F.3d 134 (2d Cir. 1998) .....................3

## I.      PRELIMINARY STATEMENT

On August 1, 2025, Qualcomm moved to compel production of documents and 30(b)(6) testimony allegedly withheld by Arm. D.I. 359; A0001-07. Arm opposed. A0668-75. The Special Master heard argument on Qualcomm's motion on August 14, 2025, and denied each request on February 6, 2026. D.I. 626. Qualcomm now objects to nearly the entire Order, moving on nine different issues. D.I. 672. The Special Master correctly denied Qualcomm's motion, which seeks irrelevant and burdensome information untethered to the claims or defenses in this case. The Court should reject Qualcomm's unfounded objections.

## II.     ARGUMENT

### A.      The Special Master Correctly Denied Additional TLA Discovery

Qualcomm alleges that Arm breached the parties' TLA because Arm's offer to renew Qualcomm's license to three Arm Implementation Cores (⬛⬛⬛⬛⬛⬛⬛⬛⬛) did not comply with Sections ⬛⬛ and ⬛⬛ of the TLA. D.I. 137 ¶¶ 104-105, 214-220. Arm produced licenses for third parties who have a license to those cores unless a third party objected. D.I. 676 at A1234. Recognizing that, the Special Master correctly denied further discovery.

Qualcomm nonetheless seeks TLAs from parties that do not license ⬛⬛⬛⬛⬛⬛⬛⬛, and unrelated annexes and exhibits, that it contends are "relevant" merely because they are "referenced" in or purportedly "part of" the agreements Arm produced. D.I. 672 at 3. Those additional documents are irrelevant. *Apex Fin. Options, LLC v. Gilbertson*, 2021 WL 5206104, at *2 (D. Del. Nov. 9, 2021). Arm has hundreds of TLAs that do not license ⬛⬛⬛⬛⬛⬛⬛⬛, and Arm has executed hundreds of licenses for products other than ⬛⬛⬛⬛⬛⬛⬛⬛. Those licensing terms (reflected in annexes and exhibits Qualcomm seeks) are not relevant to this dispute. Qualcomm even asked for agreements from nearly 20 years ago, which have no bearing on Arm's October 2024 offer. A1386-87. Qualcomm is not entitled to a free-for-

all into Arm's licensing of products that are not at issue here, and ordering such production would only serve to burden Arm, its customers, and the Court with an avalanche of additional disputes once those customers object and file motions for protective orders.

Qualcomm's document request for "peripheral IP products and other cores" should be denied because those are also irrelevant. As Arm explained elsewhere, Qualcomm failed to plead any claim based on TLA products other than ███████████████ and did not mention peripheral IP in its contention interrogatory responses until four hours after fact discovery closed. *See* D.I. 664. The SAC cites only a threadbare allegation that Qualcomm "expects discovery to show" ███████████████████████ in unspecified licensing negotiations. D.I. 137 ¶ 102. The Special Master correctly held that a plaintiff "is entitled to discovery only when they have made factual allegations that support a cognizable claim; discovery is not for determining whether there is a factual basis for a claim not yet made." D.I. 629 at 3 (quoting *Kurtz v. Westfield Ins.*, 610 F. Supp. 3d 703, 711 (E.D. Pa. 2022)). ███████████████

███████████████████████████████████████

███████████████████████████ D.I. 233 Ex. 1 (TLA) ███████

As to the ███████ documents, Arm is willing to produce the ███████ agreements and does not oppose the proposed redactions, but understands the Protective Order prevents Arm from doing so without a Court order.[1] Qualcomm successfully convinced the Court last year that "Arm should not be permitted to redact third-party information contained in responsive documents," that a "third party wishing to protect confidential information has the burden of establishing good cause for doing so under Rule 26," "must show why the requested redactions are appropriate," and that there must be an "order from the Court authorizing those specific

---

[1] Qualcomm's footnote refers to production of ███████ TLA agreements, *see* D.I. 672 at 3 n.4, yet those documents are also irrelevant as ████ is not a ██████████ licensee.

redactions." D.I. 70 at 1-2; *see also* D.I. 74; D.I. 84. Arm would not oppose such an order, which

███████ and Qualcomm so far have not requested. The fact that Qualcomm would like these

documents is not an excuse to defy the very provisions that Qualcomm argued for.

### B.    The Special Master Correctly Concluded Third-Party ALAs Are Irrelevant

Qualcomm seeks unredacted copies of all third-party ALAs and annexes. D.I. 672 at 2. Arm's ALAs with third parties are not relevant to whether Arm breached its ALA with Qualcomm. And, as the Special Master referenced in denying Qualcomm's motion to compel, "Arm has produced the requested third-party agreements with several of its licensees other than Qualcomm," with redactions in *Arm v. Qualcomm*, and those can be used here. D.I. 626 at 2.

Those redactions, which were both limited and logged, primarily relate to licensing and royalty rates, and show that none of this information is relevant to the claims and defenses here. Qualcomm seeks to multiply the burden on Arm and its customers by seeking their most competitively sensitive royalty information. But as the Special Master found in granting several of Arm's licensees' protective orders, "Qualcomm's requests [are] overbroad and … the agreements, even if marginally relevant, contain[] trade secrets and highly confidential information that would be harmful to those licensees if publicly disclosed." D.I. 626 at 2.

Arm's third-party ALAs are irrelevant to evaluating whether Arm negotiated a v10 license in good faith. The Qualcomm ALA does not include ███████████████

███████████████████████████████ Whether Arm negotiated in good faith instead turns primarily on the parties' conduct, not on ██████████████████████████████. "Nothing in the duty of good faith requires that parties to a negotiation propose only such terms as the other party is happy with" ████████████████████. *Warner Theatre Assocs. Ltd. P'Ship v. Metro. Life Ins. Co.*, 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997), *aff'd*, 149 F.3d

134 (2d Cir. 1998).



Because Arm ███████████████████████████ ███████████████████████, ██████████████████████ ███████████ A1948. ███████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████ A1908-09. █████████ ████████████████████████████ ████████████████████████████ ████████████████████████ They are not.

Arm's third-party ALAs are also irrelevant to Qualcomm's claim that Arm breached its ALA by failing to provide Qualcomm two types of support materials: (1) patches to the Arm Compliance Kit ("ACK"), a set of verification tests Arm makes available to partners, including Qualcomm; and (2) the "OOB," a list identifying which ACK tests a partner's particular CPU design should pass. D.I. 137 ¶¶ 78, 175. Whether Arm sent partner-specific OOBs or ACK patches to another partner with a different ALA is irrelevant to whether Arm had a contractual obligation to deliver OOBs or ACK patches to Qualcomm under Qualcomm's ALA. Arm's ALAs are separately negotiated and tailored to the specific circumstances and needs of each licensee. Its support materials are also partner-specific. Arm's delivery of different, partner-specific materials to third parties under different contracts is irrelevant to Qualcomm's claims.

---

[2] ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

4

### C.       The Special Master Correctly Upheld Arm's Privilege Assertions

Nothing about Arm's privilege claims is improper, and Qualcomm's objections should be rejected. Qualcomm incorrectly characterizes the communications as pertaining to "generic 'public relations services'" to try and fit it under its case law, D.I. 672 at 6 (citing *In re Valeant Pharms. Int'l, Inc. Sec. Litig.,* 2021 WL 3140050, at *13-14 (D.N.J. July 22, 2021)), but as Arm has made clear each withheld communication concerns legal advice, which is protected from discovery. Qualcomm deposed three Arm witnesses and three third parties, including Ken Siegel (an attorney at Morrison & Foerster), related to the interactions between Arm and FGS Global ("FGS"). Arm and FGS each produced dozens of documents related to the October 22, 2024 Notice of Breach Letter. Arm has upheld its discovery obligations on this issue.

**Communications Between Arm's Counsel and FGS.** Arm properly redacted and withheld communications for privilege that are the subject of Qualcomm's objection. Indeed, the premise of Qualcomm's objection is that the Special Master "assumes that the emails in question were privileged and that the only issue is whether FGS … broke that privilege." D.I. 672 at 5. Not so. The Special Master affirmatively found that the emails were privileged. D.I. 626 at 4 ("Arm produced non-privileged communications between Arm and its communications firm and only withheld those that were indeed privileged."). Each of these communications involve coordination between Spencer Collins (Arm's Chief Legal Officer), Arm's in-house media team, and FGS about Mr. Collins' October 22, 2024 letter to Qualcomm, and include providing legal advice concerning litigation strategy in the pending litigation with Qualcomm. *In re Grand Jury Subpoenas*, 265 F.Supp.2d 321, 330-32 (S.D.N.Y. 2003). None of these withheld communications concern generic "public relations services" such as "reviewing press coverage," reaching out "to various media to comment on developments in the litigation," or "finding friendly reporters" as Qualcomm alleges. Communications on those non-privileged topics have

been produced. A0886-0921.

That Arm rather than outside counsel retained FGS Global does not eliminate Arm's privilege. "[T]here is no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice," and privilege is not waived. *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001).[3] None of Qualcomm's cases hold otherwise and its arguments should be rejected.

**Subject Lines.** The ESI Order's negotiated procedure for challenging privilege log entries does not require either party to reveal privileged information. The redacted email subject lines reflect legal advice sought from or provided by Arm's in-house and outside counsel at Morrison & Foerster, including the subjects of meetings involving solely Arm's attorneys. Qualcomm's characterization of the Special Master's statements here is inaccurate. D.I. 672 at 6. The Special Master asked Arm's counsel to give an "example of how you are either requesting or providing attorney-client privileged information in eight or less words." A1144 at 202:24-203:5. Arm's counsel stated as one possible example "should we assert a breach claim?" A1145 at 206:14-15. The Special Master correctly found that "[p]rivileged communications are not waived simply because they were made in an email's subject line rather than the body." D.I. 626 at 4.

**Privilege Log.** The ESI order states "[w]ith respect to information generated after the

---

[3] Qualcomm's other cited cases, which are also not from the Third Circuit (*see* D.I. 672 at 5), support Arm, not Qualcomm. In *In re Grand Jury*, the court found that "communications among Target, her lawyers and Firm, or some combination thereof, for the purpose of giving or receiving legal advice" are privileged. 265 F.Supp.2d at 332. So too here. The court's statement that "Target would not have enjoyed any privilege for her own communications with Firm if she had hired Firm directly" simply refers to the uncontroversial scenario where no lawyers are involved and a non-attorney's communications with a PR firm they hire are non-privileged. *Id.* at 331. That is not the case here, where Arm's in-house counsel, Spencer Collins, was coordinating with FGS Global. *Stardock Sys., Inc. v. Reiche*, supports Arm, and not Qualcomm, for the same reasons. 2018 WL 6259536, at *3, *6 (N.D. Cal. Nov. 30, 2018).

6

filing of the Complaint, parties are not required to include any such information in privilege logs." A0925 ¶ 1(e)(ii). Here, the parties agreed not to log privileged materials after Qualcomm filed its Complaint, which is routinely done in civil litigations for efficiency given the volume of privileged communications once litigation commences. Qualcomm essentially reads this limitation out which defeats the entire purpose. The parties negotiated and the Court entered the ESI Order at a time when Qualcomm knew its claims and Arm's defenses would involve post-filing conduct by both parties, and Qualcomm should not be permitted to backtrack now in an effort to manufacture more meritless privilege disputes.

**D.** **The Special Master Correctly Rejected Qualcomm's Requests For Documents Concerning Arm's Alleged Withholding Of ALA Deliverables**

**Arm Provided Full Discovery On Its Decision To Pause Support.** The Special Master correctly rejected Qualcomm's motion for more discovery on Arm's pause of support (OOBs and ACK patches) for Nuvia cores because Arm fully produced documents and testimony on this subject. D.I. 626 at 6. While Qualcomm's briefing to the Special Master generically referenced Arm's "decision-making," its objections now fault Arm for not providing discovery on "why" Arm paused support. A0006; D.I. 672 at 8. Arm produced documents that show both Arm's decision-making and the directive not to support the Nuvia cores. For example, Arm produced and identified by Bates number a May 17, 2022 email from Mr. Grisenthwaite to Arm engineers saying ██████████████████████████████████████████████████ ████████████████████████████████████ A0941. And Arm produced documents where Mr. Grisenthwaite says ████████████████████████████ ████████████████████████ A0943; A0948-52; A0954-58; A0960-64; A0966-71; A0973-76; A0978-82; A0984. Arm's internal documents made clear that the reason it was not providing support, including OOBs, was because the technology came from Nuvia. Def-A2056

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████). Arm likewise produced letters from Arm to Qualcomm in which Arm told Qualcomm that "████████████████████████████████████" for Nuvia-based designs, and after receiving the jury verdict, that it "████████████████████████████████████████" because "███████████████████████████." A0986; Def-A2052. Qualcomm also deposed numerous witnesses on this topic, including Spencer Collins, Richard Grisenthwaite, Vivek Agrawal, Martin Weidmann, Aparajita Bhattacharya, and Anupa George.

In another argument that it did not brief to the Special Master, Qualcomm argues that Arm has not "confirm[ed] or den[ied] whether it is claiming privilege over the directive email or related documents." D.I. 672 at 8. As shown above, Arm has produced numerous "directive" emails, and Qualcomm does not challenge any of Arm's log entries from around the same time. Qualcomm's other new argument that Arm "cannot claim privilege over documents" regarding Arm's "good faith belief that it had no contractual obligation" to support the Nuvia-based cores (D.I. 672 at 8, n.10) ignores that Arm produced, in addition to the documents cited above, letters to Qualcomm explaining that good-faith belief, and Mr. Collins testified about the contents of these letters at his deposition. Qualcomm's sword-shield privilege cases are thus inapposite.[4]

**Arm's Provision of Support Materials To Third Parties Is Irrelevant.** Qualcomm seeks discovery on Arm's "actual delivery" of OOBs and ACK patches to third-party ALA licensees and communications with those third parties regarding the same. D.I. 672 at 9. But as Arm described above in Section II.B, whether Arm sent partner-specific OOBs or ACK patches to another partner having a different ALA is irrelevant to whether Arm had a contractual

---

[4] *Upsher-Smith Lab'ys, LLC v. Zydus Pharms. (USA) Inc.*, 2024 WL 3487935 (D. Del. July 18, 2024); *Kickflip, Inc. v. Facebook, Inc.*, 2015 WL 13446263 (D. Del. Jan. 21, 2015).

obligation to deliver OOBs or ACK patches to Qualcomm under Qualcomm's ALA. The Special Master correctly recognized that the partner-specific support materials "that Arm provided to other Arm licensees [are] not relevant to whether Arm breached its agreements with Qualcomm." D.I. 626 at 6. But those partner-specific materials do contain highly sensitive information that potentially reveal non-public details about a customer's CPU design.

Qualcomm next claims that it needs third-party OOBs and ACK patches "to assess the importance" of OOBs and ACK patches. It does not. Support materials sent to third parties have no bearing on the "importance" of support materials to Qualcomm. As Qualcomm's documents show and as its 30(b)(1) and 30(b)(6) witnesses testified, Arm's pause of OOBs and ACK patches was ███████ to Qualcomm. Qualcomm ███████████████████ ██████████████████████████████████████████ ███████████████████████████ D.I. 426 ¶¶ 12-16. No information from any third party would change these facts, nor would it be relevant.

### E. The Special Master Correctly Denied Qualcomm's Motion To Compel Privileged Documents About Qualcomm's TLA License Renewal Requests

Qualcomm appears to have narrowed its objections to only the production of Arm's spreadsheet reflecting its ████████████████████████████████████ and preparation of its October 2024 offer. D.I. 672 at 9. There is no need for relief, however, as Arm *wants* to produce that spreadsheet (*see* D.I. 453 at 16-19) and has agreed to pending resolution of the PO motions filed by MediaTek and Amlogic, since their confidential information is reflected in the spreadsheet. D.I. 614, 625. Any redactions, if necessary, can be addressed at that time.

### F. The Special Master Correctly Rejected Qualcomm's Request For Documents Concerning Arm's v10 Pricing And Development

Qualcomm's request for further discovery regarding Arm's "licensing strategy and pricing strategy for v10" and "v10 development timeline" should be denied. D.I. 672 at 10. As

9

the Special Master correctly found, Arm "adequately provided discovery regarding a new version of Arm Architecture," *i.e.*, v10. D.I. 626 at 7. Qualcomm merely re-hashes the same requests raised below while turning a blind eye to the record and discovery it already received.

As to Arm's alleged "licensing strategy and pricing strategy for v10," Arm already confirmed "there are no price books reflecting v10 'pricing strategy.'" A0673. To the extent Qualcomm seeks information regarding █████████████████████████████████████████████████████████████████████████████. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Likewise, as to v10 development information, Qualcomm already received this discovery. Arm's response provides detailed information regarding v10 and its development and cites documents (which Arm produced) that describe Arm's v10 development timeline. A0261-63. ██████████ ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Further, Qualcomm questioned multiple Arm witnesses, including Richard Grisenthwaite (Arm's chief v10 architect), Jannik Nelson, and Martin Weidmann, about v10's development. A1019 at 125:5-10. Qualcomm does not explain why this discovery is inadequate.

## III.    CONCLUSION

Qualcomm's objections should be overruled, and Qualcomm's motion should be denied.

---

[5] Qualcomm previously sought this information in its underlying briefing, *see* A0006, but now only vaguely refers to "pricing strategy" documents.

Dated: February 27, 2026

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Kasdin Mitchell, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
kasdin.mitchell@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP


_/s/ Anne Shea Gaza_
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

11

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on February 27, 2026, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

<u>**BY EMAIL**</u>

Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com
John Poulos
NORTON ROSE FULBRIGHT US LLP

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

/s/ Anne Shea Gaza
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2