IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>a U.K. corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 24-490 (MN)<br>(CONSOLIDATED)<br><br>████████████<br><br>**REDACTED**<br>**PUBLIC VERSION** |

**PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S ORDERS GRANTING
MOTIONS FOR PROTECTIVE ORDERS FILED BY THIRD PARTIES AMPERE
COMPUTING LLC (D.I. 615) AND APPLE, INC. (D.I. 616)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com
*Attorneys for Plaintiffs as to Motions Brought
By All Movants*

Original Filing Date:  February 20, 2026
Redacted Filing Date: March 4, 2026

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   FACTUAL BACKGROUND............................................................................. 2

III.  ARGUMENT..................................................................................................... 5

    A.    The Special Master Erroneously Concluded That Third-Party TLAs and
        Related Correspondence Are Not Relevant To Qualcomm's Claims..................... 6

    B.    The Special Master Erroneously Concluded That Third-Party ALAs and
        Related Correspondence Are Not Relevant To Qualcomm's Claims..................... 7

    C.    The Special Master Misapplied Governing Law On Protective Order
        Motions. .......................................................................................................... 8

IV.   CONCLUSION................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Cipollone* v. *Liggett Grp., Inc.*,
  785 F.2d 1108 (3d Cir. 1986)..........................................................................................6, 8, 10

*Finjan, Inc.* v. *Rapid7, Inc.*,
  C.A. No. 18-1519, D.I. 173 (D. Del. Aug. 7, 2020) ...................................................................9

*Harmony Biosciences, LLC* v. *Lupin Ltd.*,
  C.A. 23-1286, D.I. 202 (D. Del. Feb. 19, 2025) .......................................................................7

*Hart* v. *Nationwide Mutual Fire Ins. Co.*,
  270 F.R.D. 166 (D. Del. 2010) ...................................................................................................8

*Kennedy* v. *PEI-Genesis*,
  2023 WL 3898893 (E.D. Pa. June 8, 2023)............................................................................6, 7

*Mannington Mills, Inc.* v. *Armstrong World Industries, Inc.*,
  206 F.R.D. 525 (D. Del. 2002) .................................................................................................10

*Minerva Surgical, Inc.* v. *Hologic, Inc.*,
  C.A. No. 18-217, D.I. 191 (D. Del. Oct. 11, 2019) ...................................................................9

*Procter & Gamble Co.* v. *BoyleMidway, Inc.*,
  1983 WL 830080 (D. Del. Apr. 11, 1983)..................................................................................9

**Rules and Statutes**

California's Unfair Competition Law.......................................................................2, 3, 5, 7, 10

Fed. R. Civ. P. 26(b)(1)................................................................................................................5

Fed. R. Civ. P. 26(c) ...............................................................................................................5, 6

Fed. R. Civ. P. 53.....................................................................................................................5, 6

## I.    PRELIMINARY STATEMENT

In early 2025, Qualcomm served requests for production seeking Arm's third-party license agreements for at-issue, off-the-shelf cores and peripheral IP (including Technology License Agreements ("TLAs"), Arm Total Access Agreements ("ATAs"), and Royalty Pricing Agreements ("RPAs")); Arm's third-party Architecture License Agreements ("ALAs"); and correspondence relating to these agreements.  Third parties Ampere Computing LLC ("Ampere") and Apple, Inc. ("Apple") (collectively, "Movants"), moved to stop Arm from producing their TLAs, ATAs, or RPAs (the "TLA-related documents"), and ALAs and correspondence on grounds that their agreements are not relevant to Qualcomm's claims and that the disclosure of confidential terms of such agreements to competitors or the public could harm their businesses.

As with the other third parties who moved for protective orders (*see* D.I. 648), the Special Master accepted Ampere and Apple's arguments, holding that the documents sought were irrelevant or only "marginally relevant" and crediting the claim that disclosure could cause harm. Those two decisions, which are nearly identical to the other third-party orders (*compare* D.I. 615, 616 *with* D.I. 609, 614, 617, 625, 628), uniformly misunderstand factual and legal issues central to this case, impede the just adjudication of this matter by withholding evidence that is critical to Qualcomm's claims, and disregard significant protections provided to highly confidential documents produced in this litigation.

As to the requested TLA-related documents, Qualcomm has taken objections to the Special Master's decisions granting those other third-party motions (*see* D.I. 648), and objects to the Special Master's near-identical Orders for granting Ampere and Apple's motions with respect to the TLA-related documents for the same reasons.

With respect to the requested ALA documents, the Special Master is incorrect that these

1

documents are irrelevant.  Qualcomm alleges that Arm has breached the implied covenant of good faith and fair dealing inherent in Qualcomm's ALA and violated California's Unfair Competition Law ("UCL") by refusing to negotiate with Qualcomm in good faith for a license to v10 of Arm's architecture.  In correspondence to Qualcomm, Arm admits that it intends to rely on some of its third-party v10 agreements to defend this claim, effectively conceding the relevance of the ALAs.  Third-party ALA annexes that cover v8 and v9 of the Arm architecture will additionally establish, among other things, whether the ███████████████ Arm seeks from Qualcomm for v10 actually reflect, as Arm has suggested, ███████████████.  There is no other way to understand the terms of these agreements but the agreements themselves.  And, Qualcomm has alleged that Arm breached the ALA by deliberately withholding certain deliverables (OOBs and ACK patches) it was contractually required to provide to Qualcomm, while still providing them to other ALA partners under their own respective ALAs with similar (or identical) delivery requirements.

And, with respect to Movants' confidentiality concerns, the protective order already limits disclosure of sensitive documents to outside counsel, the parties' retained experts, and the Court. Qualcomm's outside counsel has adhered to these "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" protections in this and the prior case for years and will continue to do so.  Movants offer nothing more than unfounded speculation premised on Qualcomm's counsel violating the protective order.   Qualcomm's objections should be sustained under *de novo* review and production of these agreements should be ordered.

## II.    FACTUAL BACKGROUND

### A.  Qualcomm's TLA-Related Claims and the Relevant Document Requests

Qualcomm alleges that Arm has breached its TLA by failing to fulfill its obligations under



. That provision requires ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ D.I. 233, Ex. 1 ██████; *e.g.*, D.I. 137 ¶¶ 104-105, 214-220.

Qualcomm's claim thus necessarily requires evaluation of the royalty ████████████████████

██████████████████████████████

Qualcomm further alleges that Arm breached the implied covenant of good faith and fair dealing inherent in the TLA by pricing licensing offers for certain peripheral IP and cores so high as to effectively prevent Qualcomm from receiving the benefits of its TLA. D.I. 137 ¶¶ 51, 102, 181-188; *see also* D.I. 464 at 23-25. Qualcomm accordingly requested Arm's third-party agreements for the relevant cores and related correspondence. *See* A049 (RFP 34), A052 (RFP 40), A060 (RFP 58), A068-069 (RFP 123, 124). After Arm provided notice of its intent to produce their agreements months after Qualcomm first sought them, Movants sought to prevent the production of their TLAs, ATAs, and/or RPAs. D.I. 374, 377.

**B. Qualcomm's ALA-Related Claims and the Relevant Document Requests**

Qualcomm asserts claims for breach of the implied covenant of good faith and fair dealing inherent in its ALA and violation of the UCL based on Arm's refusal to negotiate in good faith an extension of the Qualcomm ALA or a license to future versions of Arm technology, including v10. D.I. 137 ¶¶ 128-134, 181-188, 204-212. Arm claims ████████████████████████████████,

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████. A203-A205; A234-A238. And several Arm witnesses have

confirmed that ███████████████████████████████████████████.

*See* A172-A173 at 25:15-17; 26:25-27:4; A178 at 67:15-68:1; A183-A186 at 156:23-157:1; 254:6-11. Qualcomm also asserts that Arm breached its ALA by not providing certain deliverables (OOBs and ACK patches) it was required to give Qualcomm. D.I. 137 ¶¶ 12-19, 78-94. Qualcomm believes that Arm provided these deliverables to other Arm partners under their own ALAs with similar or the same delivery requirements, but denied them to Qualcomm. To test Arm's defenses and support its ALA claims, Qualcomm has requested production of third-party ALAs and related correspondence. *See, e.g.,* A027 (RFP 27); A045 (RFPs 26-28, 32); D.I. 191, Ex. 9 at RFP 162.[1] Apple and Ampere[2] have challenged production of their respective ALAs.

## C. The Special Master's Decisions

On January 30, 2026, the Special Master issued nearly identical orders granting Ampere and Apple's motions (the "Orders"). D.I. 615, 616.[3] In her Orders, the Special Master first deemed Qualcomm's requests to be "fishing expedition[s]" irrelevant to Qualcomm's claims. D.I. 615 at 6; D.I. 617 at 6. She then concluded that even if the documents were "marginally relevant," disclosure "would result in great harm" to Movants because Qualcomm could purportedly "████ ██████████████████████████ or glean "information about [Movants'] strategic use of Arm technology" from ALA deliverables. D.I. 615 at 6; D.I. 616 at 7.

---

[1] *See* A210. RFP 162 was before the Special Master as part of Qualcomm's motion to compel production of ALAs.

[2] Since Ampere filed its motion, it has subsequently been acquired by Arm's controlling shareholder SoftBank Group. A205 at n.3.

[3] The Special Master's Ampere and Apple Orders are nearly identical to the orders issued granting the other third-party protective order motions to which Qualcomm has objected. *See* D.I. 648.

The Special Master only addressed Qualcomm's claim regarding v10 in the Apple Order. Without any citations to the record, the Apple Order doubted whether Apple had access to and has a license for v10, even though ███████████████████████████████████████████ ███████ D.I. 616 at 6. The Apple Order also suggested that because Arm shared basic information about the v10 architecture with Qualcomm, that somehow meant that Qualcomm would not need any other documents to support its claim. *Id*. Neither conclusion makes any sense. The proper way to resolve Arm's conflicting statements about v10 licenses is to order production—not to allow Arm's inconsistencies to shield it from discovery. And the argument that basic architecture information for v10 was shared with Qualcomm has nothing to do with whether Arm has negotiated a license to v10 with Qualcomm in good faith—much less whether third-party ALAs are relevant to any of Qualcomm's ALA breach or UCL claims.

The Special Master's Orders also ignore the protective order entered in this action, and are premised on the flawed assumption that Qualcomm in-house would somehow have access to any produced agreements, even though such agreements would be produced with "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" protections, and thus would only be seen by outside counsel, retained experts, and Court personnel. D.I. 84 ¶ 45. Nor have there been any allegations that Qualcomm's outside counsel has failed to abide by the protections of the protective order, and in any event, any such allegations would be pure speculation. Qualcomm objects to the Orders pursuant to the Court's procedures (D.I. 336 ¶ 6) and Rule 53.

## III.    ARGUMENT

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," unless such discovery is otherwise limited by Court order. Fed. R. Civ. P. 26(b)(1). A court may issue a protective order

5

upon a showing of good cause. Fed. R. Civ. P. 26(c). The burden is on the non-party seeking a protective order to "show good cause by demonstrating a particular need for protection." *Cipollone* v. *Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* The Special Master erred in this inquiry—first by deeming even documents the parties agree are necessary to the case irrelevant, and then by granting protective orders on nothing more than speculation about harm that could be caused by unprecedented violations of the protective order. This Court reviews the Special Master's findings of fact and conclusions of law *de novo*. Fed. R. Civ. P. 53(f)(3)-(4).

### A. The Special Master Erroneously Concluded That Third-Party TLAs and Related Correspondence Are Not Relevant To Qualcomm's Claims.



Arm does not dispute that licenses to ███████████████ are relevant. A646 at 58:20-59:22. Nor is it disputed that Arm's ████████████ obligations require ███████████ ███████. In reaching the contrary conclusion, the Special Master stated that Qualcomm did not "ha[ve] any information that [most Movants'] agreements with Arm are directly implicated regarding licensing offers to Qualcomm" (*e.g.*, D.I. 615 at 6), but that conclusion does not make sense. The contract ██████████████████████████████████████████ ████████████████████████████████████. *See* D.I. 233, Ex. 1 § 8.1B; *see also e.g.,* A013–A019, A086-A089. And Arm's Chief Commercial Officer confirmed ███ ████████████████████████████████████ D.I. 442 at 15.

To the extent that the Orders can be read to mean that the Special Master found that Arm should only have to produce whatever agreement Arm is currently claiming is ███████████ ███ that conclusion is unsupported by the law and facts. First, Qualcomm "isn't required to take [its] opponent's word for ████████████████████████████]. Any relevant, non-privileged

6

documents . . . that might aid the discovery of truth are fair game." *Kennedy* v. *PEI-Genesis*, 2023 WL 3898893, at *4 (E.D. Pa. June 8, 2023); *see also Harmony Biosciences, LLC* v. *Lupin Ltd*., C.A. No. 23-1286, D.I. 202 (D. Del. Feb. 19, 2025) (discovery sought was relevant because "Plaintiffs should be permitted to test [defendant's] representation"). Second, as Qualcomm's expert explained, there are several licensees for which Arm produced its agreements late, and those licensees (not mentioned by Arm's witnesses) have ███████████████ than the agreement Arm claims is the ████████████. A272–A276; *see also* D.I. 442 at 7. Movants, too, may very well ██████████, given their favorable relationship with Arm. Qualcomm should be permitted to review these undisputably relevant agreements, including ██████████████████████ ██████████.

**B. The Special Master Erroneously Concluded That Third-Party ALAs and Related Correspondence Are Not Relevant To Qualcomm's Claims.**

Recent correspondence from Arm confirms that Arm also now agrees that some of its ALAs are relevant to its ability to defend against Qualcomm's breach of the implied covenant and UCL claims.[4] In particular, Arm wants to argue that it has made ██████████████ to Qualcomm for v10. A541. Arm does not include Ampere or Apple in the list of cherrypicked ALAs it would like to rely on, but identifies two other ALA licensees. A540 (dropping objection to production of ██████████████ v10 ALAs and annexes because "[t]hose are the agreements Arm used as a benchmark when preparing its December 10, 2025 offer to Qualcomm"); A643. But, Qualcomm "isn't required to take [Arm's] word" for which ALAs are relevant and which are not, and is entitled to examine all of them if Arm intends to invoke the terms of any of them as a defense. *See Kennedy*, 2023 WL 3898893, at *4. Moreover, testing Arm's claim that it needs to

---

[4] Neither Arm's December 23, 2025 letter nor Qualcomm's December 26, 2025 letter was mentioned in any of the Special Master's Orders that issued over a month later. *See* D.I. 615, 616.

raise rates for v10 many multiples above what Qualcomm pays for v9 to "████████████ ████████ with the ████████████ (A236) requires examination of the price increases Arm imposed on other licensees between prior versions of its architecture and v10 to reflect the ██████ of ████████ Just like in the prior litigation, Arm should not be permitted to make arguments at trial if it does not produce the documents necessary to allow Qualcomm to test those arguments during discovery. *See* C.A. No. 22-1146, D.I. 578 at 26:20-40:22 (precluding Arm from introducing witness testimony about purported harm to ALA program based on failure to produce unredacted ALAs).[5]

Nevertheless, the Orders ignore Arm's concessions as to relevance and conclude that Qualcomm has not "demonstrated it has any information that [Ampere/Apple] has specifically been provided deliverables that were not provided to Qualcomm." D.I. 615 at 6; D.I. 616 at 6. It is not clear what specific information the Special Master expected Qualcomm to have when Ampere has objected to discovery showing what Arm delivered to Ampere, nor is it clear why Qualcomm would have any of that information (and thus, the reason for the discovery request). The same is true for Apple. Moreover, the Special Master ignored the v10 claim in deciding Ampere's motion, and thus deemed the ALAs irrelevant without understanding how they provide proof of Qualcomm's claims. *See* A017.

**C. The Special Master Misapplied Governing Law On Protective Order Motions.**

To establish good cause for a protective order, Movants must show a "particular need for protection" rather than merely "[b]road allegations of harm, unsubstantiated by specific examples

---

[5] Despite this ultimate outcome, Movants misplace reliance on Judge Hatcher's decisions granting protective orders for Ampere's and Apple's ALAs in the prior case, and the Court's overruling of Qualcomm's objections without prejudice before it could determine the relevance of third-party ALAs in that litigation Arm had brought. *See, e.g.*, A015-A016; *see also* A086 at n.1. Here again, the agreements are ultimately relevant and must be produced in their entirety before Arm can make arguments implicating them.

or articulated reasoning." *Cipollone*, 785 F.2d at 1121; *Hart* v. *Nationwide Mutual Fire Ins. Co.*, 270 F.R.D. 166, 170 (D. Del. 2010) (denying protective order where movant "has not demonstrated that it will suffer a clearly defined and serious injury if a protective order is not entered"). Neither Ampere nor Apple met this burden, and the Special Master erred by granting their motions.

The Orders are premised on the "find[ing] that disclosure of that information, even if inadvertent, would result in great harm to" Movants. *E.g.*, D.I. 615 at 7. But this concern that sensitive information will be disclosed is purely speculative and assumes that Qualcomm's outside counsel will violate the Protective Order, which permits Arm (or a third party) to designate such information as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," thus limiting access to outside counsel, experts, and Court personnel while prohibiting access to anyone at Qualcomm (including Qualcomm in-house counsel). D.I. 84 ¶¶ 45-46. The existing protective order is in place precisely to address concerns like Movants', but the Orders entirely ignore it. *See Finjan, Inc.* v. *Rapid7, Inc.*, C.A. No. 18-1519, D.I. 173, at 5 (D. Del. Aug. 7, 2020) ("As to commercially sensitive information allegedly in the [third-party] Documents, the case Protective Order fully addresses [the third party]'s concerns" given its "outside counsel eyes' only" provision); *see also Minerva Surgical, Inc.* v. *Hologic, Inc.*, C.A. No. 18-217, D.I. 191 at 5 (D. Del. Oct. 11, 2019). Putting aside that the Orders do not even address why the protective order would not be sufficient to protect Ampere or Apple's confidentiality concerns (*see* A018-A019, A089-A091), there is simply no basis to believe that Qualcomm's outside counsel will violate the protective order. *See* D.I. 345, Ex. 2 at 44:14-23 (this Court noting that it was "quite an accusation" to suggest that attorneys' eyes only designation wouldn't sufficiently protect sensitive information); *Procter & Gamble Co.* v. *BoyleMidway, Inc.*, 1983 WL 830080, at *1 (D. Del. Apr. 11, 1983) ("The Court simply will not indulge in the speculation that attorneys will violate a

9

protective order issued by a court[.]"). Qualcomm's counsel has had redacted copies of third-party agreements for years now (from the prior case) and unredacted copies of agreements for more than six months. There has been no disclosure of these agreements or harm to third parties, and Movants offer nothing but bare speculation that the future will be any different.

The Orders cite to *Mannington Mills, Inc.* v. *Armstrong World Industries, Inc.*, 206 F.R.D. 525 (D. Del. 2002), but that case is inapposite. First, *Mannington Mills* involved a subpoena to a third party for information that plaintiff did not need from that party, but would be able to "access" in a similar form "from its opponents during discovery." *Id.* at 532. Here, Qualcomm has already sought information from its opponent (Arm) and there is no reasonable alternative to production of the agreements themselves. Indeed, Qualcomm would be significantly prejudiced if Arm were permitted to rely on cherry-picked ALAs as a defense to Qualcomm's breach of the implied covenant of good faith and fair dealing and violations of California's UCL claims, but Qualcomm were not permitted to test that defense with Arm's other ALAs. Second, the *Mannington Mills* court was concerned that the protective order in that case would allow the parties to unilaterally override the confidentiality protections provided to third parties. *Id.* at 530. Movants have identified no similar concerns here, and Arm shares their goal of protecting the confidentiality of its own agreements. And, finally, *Mannington Mills* (and the other two cases the Orders cite) is decided under Federal Circuit law—not the Third Circuit's standard. The Order's omission of Third Circuit law is telling, as Movants have not satisfied the Third Circuit's requirement that they show a "particular need for protection." *Cipollone*, 785 F.2d at 1121.

## IV.   CONCLUSION

Qualcomm's objections to the Special Master's Orders should be sustained.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs as to Motions Brought
By All Movants*

February 20, 2026

11

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 4, 2026, upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Daniel G. Mackrides, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO 80202<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Sydney D. Gaskins, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd., Suite 6000<br>Los Angeles, CA 90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Daralyn J. Durie, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

Lydia B. Cash, Esquire
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Kasdin M. Mitchell, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Jay Emerick, Esquire
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Peter Evangelatos, Esquire
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Brad D. Sorrels, Esquire
Kaitlin E. Maloney, Esquire
Nora M. Crawford, Esquire
WILSON SONSINI GOODRICH & ROSATI, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE  19801
*Attorneys for Non-Party Ampere Computing LLC*

*VIA ELECTRONIC MAIL*

Susan E. Morrison, Esquire
Nitika Gupta Fiorella, Esquire
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19899
*Attorneys for Non-Party Apple Inc.*

*VIA ELECTRONIC MAIL*

13

Hannah Cannom, Esquire                                      *VIA ELECTRONIC MAIL*
Bethany Stevens, Esquire
WALKER STEVENS CANNOM LLP
500 Molino Street, Suite 118
Los Angeles, CA  90013
*Attorneys for Non-Party Apple Inc.*


                                          */s/ Travis Murray*

                                          _____

                                           Travis Murray (#6882)