IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>  a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>  a Delaware corporation, | )<br>)<br>)<br>) | C.A. No. 24-490 (MN) |
| | ) | |
| Plaintiffs, | ) | ██████████████████ |
| | ) | |
| v. | ) | |
| | ) | |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>  a U.K. corporation, | )<br>) | **REDACTED**<br>**PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

**APPENDIX TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S ORDERS GRANTING MOTIONS FOR PROTECTIVE ORDERS FILED BY THIRD PARTIES AMPERE COMPUTING LLC (D.I. 615) AND APPLE, INC. (D.I. 616) (Vol. 1: A1-A339)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs as to Motions Brought
By All Movants*

Original Filing Date:  February 20, 2026
Redacted Filing Date: March 4, 2026

# TABLE OF CONTENTS

| Docket Entries for Motions Referred to the Special Master | |
| --- | --- |
| **Document** | **Page Range/D.I. #** |
| Nonparty Ampere Computing LLC's Motion for Protective Order (Aug. 11, 2025) | D.I. 374 |
| [Proposed] Order Granting Nonparty Ampere Computing LLC's Motion for Protective Order (Aug. 11, 2025) | D.I. 374-1 |
| Non-Party Apple Inc.'s Motion for Protective Order (Aug. 11, 2025) | D.I. 377 |
| [Proposed] Order (Aug. 11, 2025) | D.I. 377-1 |
| **Appendix Entries for Briefing & Proceedings Before the Special Master** | |
| Letter from Nora M. Crawford to Special Master Helena C. Rychlicki re: *Qualcomm Inc., et al. v. ARM Holdings PLC*, C.A. No. 24-490 (MN) (Aug. 11, 2025) | A001 – A006 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Jeff Wittich in Support of Nonparty Ampere Computing LLC's Motion for Protective Order (Aug.11, 2025) | A007 – A012 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter Brief in Opposition to Ampere's Motion for a Protective Order (Aug. 18, 2025) | A013 – A019 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Catherine Nyarady in Support of Plaintiffs' Opposition to Non-Party Ampere's Motion for a Protective Order (Aug. 18, 2025) | A020 – A021 |
| Qualcomm Exhibit 1 – Qualcomm's First Set of Requests for Production (Nos. 1-36) Excerpt (Dec. 20, 2022) | A022 – A026 |
| Qualcomm Exhibit 2 – Qualcomm's Fifth Set of Requests for Production (Nos. 71-124) Excerpt (Oct. 18, 2023) | A027 – A033 |
| Qualcomm Exhibit 3 – *Arm* v. *Qualcomm*, Telephonic Oral Argument Excerpt (Jan. 12, 2024) | A034 – A037 |

| | |
|---|---|
| Qualcomm Exhibit 4 – *Arm* v. *Qualcomm*, Oral Argument Excerpt (Mar. 7, 2024) | A038 – A042 |
| Qualcomm Exhibit 5 – Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's First Set of Requests for Production (Nos. 1-52) Excerpt (June 17, 2025) | A043 – A057 |
| Qualcomm Exhibit 6 – Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's Second Set of Requests for Production (Nos. 53-120) Excerpt (June 17, 2025) | A058 – A065 |
| Qualcomm Exhibit 7 – Arm Holdings PLC's First Supplemental Objections and Responses to Qualcomm's Third Set of Requests for Production (Nos. 121-156) Excerpt (June 17, 2025) | A066 – A073 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Letter Brief of Non-Party Apple Inc. in Support of its Motion for Protective Order (Aug. 11, 2025) | A074 – A079 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Hannah L. Cannom in Support of Non-Party Apple Inc.'s Motion for Protective Order (Aug. 11, 2025) | A080 – A082 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Timothy A. Kirby in Support of Non-Party Apple Inc.'s Motion for Protective Order (Aug. 8, 2025) | A083 – A084 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter in Opposition to Non-Party Apple's Motion for a Protective Order (Aug. 18, 2025) | A085 – A091 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Jennifer Ying in Support of Plaintiffs' Opposition to Non-Party Apple's Motion for Protective Order (Aug. 18, 2025) | A092 – A112 |
| Qualcomm Exhibit 1 – *Arm* v. *Qualcomm*, Oral Argument Excerpt (Mar. 7, 2024) | A113 – A127 |
| Qualcomm Exhibit 2 – Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's First Set of Requests for Production (Nos. 1-52) Excerpt (June 17, 2025) | A128 – A137 |

| | |
|---|---|
| Qualcomm Exhibit 3 – Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's Second Set of Requests for Production (Nos. 53-120) Excerpt (June 17, 2025) | A138 – A152 |
| Qualcomm Exhibit 4 – Arm Holdings PLC's First Supplemental Objections and Responses to Qualcomm's Third Set of Requests for Production (Nos. 121-156) Excerpt (June 17, 2025) | A153 – A162 |
| Qualcomm Exhibit 5 – Arm Holdings PLC's Objections and Responses to Qualcomm's Seventh Set of Requests for Production (Nos. 192-195) Excerpt (July 9, 2025) | A163 – A168 |
| Qualcomm Exhibit 6 – Deposition of Christine Cong Tran Excerpt (July 10, 2025) | A169 – A174 |
| Qualcomm Exhibit 7 – Deposition of Martin Weidmann Excerpt (June 20, 2025) | A175 – A179 |
| Qualcomm Exhibit 8 – Deposition of Rene Haas Excerpt (July 7, 2025) | A180 – A187 |
| Qualcomm Exhibit 9 – *Finjan, Inc.* v. *Rapid7, Inc.*, C.A. No. 18-1519-MN, Memorandum Opinion and Special Master Order #2 (Aug. 7, 2020) | A188 – A195 |
| Qualcomm Exhibit 10 – *Minerva Surgical, Inc.* v. *Hologic, Inc. and Cytyc Surgical Products, LLC*, C.A. No. 18-217-JFB-SRF, Memorandum & Order (Oct. 11, 2019) | A196 – A202 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Rychlicki Regarding Subsequent Events Relating to Motion to Compel Production of Arm's Architecture License Agreements (Dec. 16, 2025) | A203 – A205 |
| Qualcomm Exhibit 1 – Plaintiff's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A206 – A213 |
| Qualcomm Exhibit 2 – Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7, 2025) | A214 – A222 |
| Qualcomm Exhibit 3 – Special Discovery Master Hearing Excerpt  (Aug. 14, 2025) | A223 – A226 |

| | |
|---|---|
| Qualcomm Exhibit 4 – Deposition of William Abbey Excerpt (June 26, 2025) | A227 – A229 |
| Qualcomm Exhibit 5 – Deposition of Rene Haas Excerpt (July 7, 2025) | A230 – A232 |
| Qualcomm Exhibit 6 – Letter from S. Collins to A. Chaplin (Dec. 10, 2025) | A233 – A264 |
| Qualcomm Exhibit 7 – *Arm* v. *Qualcomm*, Pretrial Conference Excerpt (Nov. 20, 2024) | A265 – A271 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Subsequent Events Relating to Their Motion to Compel Production of Third-Party Arm Licenses and Related Agreements (Oct. 17, 2025) | A272 – A276 |
| ██████████████████████████ | A277 – A294 |
| ██████████████████████████ | A295 – A339 |
| ██████████████████████████ | A340 – A351 |
| Qualcomm Exhibit 4 – Email from J. Hartley to P. Evangelatos et al. re: Qualcomm v. Arm – Third Party Agreements (Oct. 16, 2025) | A352 – A358 |
| ██████████████████████████ | A359 – A524 |
| Qualcomm Exhibit 6 – Meet & Confer Transcript Excerpt (Oct. 10, 2025) | A525 – A532 |
| Qualcomm Exhibit 7 – Email from A. Basner to P. Evangelatos et al. re: Qualcomm v. Arm, Case No. 1:24-cv-490 (Oct. 15, 2025) | A533 – A537 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendant Arm Holdings PLC's Response to Qualcomm's December 16, 2025 Letter to Special Master Rychlicki (Dec. 23, 2025) | A538 – A541 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Peter Evangelatos in Support of Arm Holding PLC's Response to | A542 – A545 |

4

| | |
|---|---|
| Qualcomm's December 16, 2025 Letter to Special Master Rychlicki (Dec. 23, 2025) | |
| Arm Exhibit 1 – Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A548 – A555 |
| Arm Exhibit 2 – Qualcomm Amended and Restated Architecture License Agreement (ALA) (May 30, 2013) | A556 – A599 |
| Arm Exhibit 3 – Plaintiff's Letter to Special Master Rychlicki Regarding Subsequent Events Relating to Motion to Compel Production of Arm's Architecture License Agreements (Dec. 16, 2025) | A600 – A603 |
| Arm Exhibit 4 – Letter from S. Collins to A. Chaplin (Dec. 10, 2025) | A604 – A635 |
| Arm Exhibit 5 – Deposition of William Abbey Excerpt (June 26, 2025) | A636 – A641 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Rychlicki Regarding Subsequent Events Relating to Arm's Architecture License Agreements (Dec. 26, 2025) | A642 – A643 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Special Discovery Master Hearing Excerpt (Aug. 14, 2025) | A644 – A646 |

# WILSON SONSINI

NORA M. CRAWFORD
ncrawford@wsgr.com
Direct Dial: (302) 304-7634

Wilson Sonsini Goodrich & Rosati
Professional Corporation

222 Delaware Avenue
Suite 800
Wilmington, Delaware 19801-1600

O: 302.304.7600
F: 866.974.7329

August 11, 2025

*Via Email*

Special Master Helena C. Rychlicki
Pinckney, Weidinger, Urban & Joyce LLC
2 Mill Road, Suite 204
Wilmington, DE 19806
HRychlicki@pwujlaw.com

**Re:**      ***Qualcomm Inc., et al. v. ARM Holdings PLC*,**
**C.A. No. 24-490 (MN)**

Dear Special Master,

Pursuant to Federal Rule of Civil Procedure 26 and Paragraphs 51-52 of the Stipulated Protective Order (D.I. 84, the "Protective Order"), nonparty Ampere Computing LLC ("Ampere") has moved for a protective order to maintain its highly sensitive commercial information.

This issue is well-trodden. The Court considered almost identical issues in a prior action between these parties, captioned *Arm Ltd. v. Qualcomm Inc.*, C.A. No. 22-1146 (MN) (LDH) (the "Prior Action"). There, Ampere twice moved for a protective order to prevent the disclosure of highly sensitive terms carefully redacted from Ampere's architecture license agreement ("ALA") with Defendant Arm Holdings PLC., f/k/a Arm Ltd. ("Arm") and related agreements. The Court agreed with Ampere and granted a protective order guarding that information from disclosure.

Despite the Court's prior rulings, Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (together, "Qualcomm") seek discovery of *unredacted* copies of Ampere's ALA and technology license agreement with Arm ("TLA") and maintain broad and vague requests for documents and communications concerning Arm's performance under those agreements that would get at similar information.

These requests should be rejected, as the same reasons supporting the Court's decision in the Prior Action apply here—with even greater force. *First*, the information Qualcomm seeks is irrelevant. Qualcomm has sued Arm for breach of Qualcomm's contracts with Arm; Ampere's contracts with Arm have no bearing on this dispute. *Second*, even if Qualcomm could articulate some tangential relevance of Ampere's information, that relevance is far outweighed by the risk of harm to Ampere. Accordingly, Ampere requests its proposed protective order preventing the disclosure of Ampere's highly sensitive confidential information be granted.

AUSTIN    BEIJING    BOSTON    BOULDER    BRUSSELS    HONG KONG    LONDON    LOS ANGELES    NEW YORK    PALO ALTO
SALT LAKE CITY    SAN DIEGO    SAN FRANCISCO    SEATTLE    SHANGHAI    WASHINGTON, DC    WILMINGTON, DE

**WILSON SONSINI**

Special Master Helena C. Rychlicki
August 11, 2025
Page 2

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Founded in September 2017, Ampere is an inventor and innovator in the semiconductor industry.  Declaration of Jeff Wittich ("Wittich Decl.") ¶ 3.  It competes with larger and more established public companies with market capitalizations exceeding $150 billion dollars, including Qualcomm.  *Id.*  In connection with its business, Ampere has entered into contracts with Arm pursuant to which Ampere licenses certain Arm technology for use in the design and manufacture of Ampere's microprocessors.  *Id.* ¶ 4.  Ampere's ALA and TLA were heavily negotiated and contain several critically sensitive commercial terms, including ███████████████████ ███████████████████  *Id.* ¶ 8.

In the Prior Action, Ampere was forced to twice move to prevent the disclosure of narrow highly sensitive terms in the Ampere ALA, despite consenting to the production of the ALA with only minimal redactions that were carefully negotiated between the parties.  *See* Prior Action, D.I. 93 (Ampere Motion for Protective Order); D.I. 240 (Ampere Second Motion for Protective Order).  The Court granted Ampere's request for a protective order and overruled Qualcomm's objections to the same, agreeing with Ampere that its highly sensitive information should remain protected.  D.I. 111 (granting Ampere Motion for Protective Order); D.I. 252 (denying as moot Ampere Second Motion for Protective Order); D.I. 256 (Qualcomm objections); D.I. 265 (Ampere letter regarding Qualcomm objections); Oral Arg. Tr. at 62:10-63:15 (Mar. 7, 2024) (overruling Qualcomm objections at that time).[1]

Notwithstanding the Court's rulings in the Prior Action, on April 23, 2025, Arm notified Ampere that Qualcomm was seeking even broader discovery in this action concerning Arm's business relationship with Ampere (and other licensees), including unredacted copies of Ampere's ALA and TLA.  Arm confirmed, however, it had not and would not agree to produce Ampere-related information in response to Qualcomm's requests.

On June 3, 2025, Judge Noreika directed "that the parties may each submit a letter of no more than four pages . . . outlining all outstanding discovery disputes by June 4, 2025.  A responsive letter of no more than four pages . . . may be filed by June 5, 2025.  The Court will then determine whether any further argument or action is needed."  D.I. 134.  At the time, Ampere requested a redacted copy of Qualcomm's opening submission to understand if and to what extent Qualcomm was pressing its discovery requests implicating nonparty information, including Ampere's.  D.I. 164 at 1.  Qualcomm refused.  *Id.*  After repeated pressing, Qualcomm's counsel acknowledged it was seeking Ampere's unredacted ALA and TLA, as well as "communications

---

[1] In the Prior Action, Qualcomm did not push for production of the Ampere TLA, nor did it assert the kind of broad requests for communications related to Arm's performance under its agreements with non-parties that it maintains here.

WILSON
SONSINI

Special Master Helena C. Rychlicki
August 11, 2025
Page 3

that Arm had with third parties regarding certain technology that Arm provides to third party licensees as well as communications that Arm had regarding potential or actual license offers for technology" and documents "regarding Arm's shift in business strategy and Arm's communications with third parties (including Ampere) regarding Qualcomm." *Id.* at 1-2; *see also* D.I. 211 at 6 (explaining Qualcomm is seeking "communications and materials related to Arm's delivery of ALA deliverables to other ALA licensees"). Ampere did not and still does not know the scope of Ampere confidential information that may be implicated by Qualcomm's latter amorphous request for communications.

Under the Protective Order, "[i]n the event that a Party *is required*," to produce third party confidential information, the third party may seek a protective order or other relief preventing such production. D.I. 84 ¶¶ 51-52 (emphasis added). Arm had assured Ampere that it would not voluntarily produce Ampere's confidential information, and no Court order existed requiring Arm to do so. Nonetheless, given Qualcomm's explanation of the information it was seeking, and consistent with the process ordered by Judge Noreika on June 3, Ampere timely submitted a letter objecting to the production of Ampere's confidential information. D.I. 164. In that letter, Ampere explained why Qualcomm's requests were improper and should be rejected. *See id.*

Ampere has at all times acted with care and diligence to maintain its most sensitive confidential information from disclosure. Ampere brings this motion out of an abundance of caution to ensure its objection to the production of such information in this action is heard—a caution necessitated by Ampere's understanding that the parties failed to even alert the Special Master to Ampere's June 5 letter objecting to Qualcomm's discovery requests.

## II.    ARGUMENT

Discovery must be "relevant to a[] party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The party seeking discovery bears the burden of demonstrating relevance. *Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, 2017 WL 4310221, at *4 (M.D. Pa. Sept. 28, 2017). A protective order "is not a substitute for establishing relevance or need[;]" rather, its purpose is to "prevent harm by limiting disclosure of *relevant* and *necessary* information." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990). "[T]he mere presence of a protective order does not automatically sanitize an overbroad discovery request . . . . [T]his conclusion is especially important as to a non-party to a competitor, and even if material may be designated 'for counsel's eyes only.'" *JJ Plank Co. v. Bowman*, 2018 WL 3545319, at *5 (W.D. La. July 23, 2018).

WILSON
SONSINI

Special Master Helena C. Rychlicki
August 11, 2025
Page 4

### A. THE INFORMATION SOUGHT IS IRRELEVANT TO QUALCOMM'S CLAIMS.

Qualcomm cannot show that Ampere-related discovery is relevant to this Action. Qualcomm asserts breach of contract claims against Arm, claiming Arm breached the Qualcomm ALA and TLA. Put simply, those claims have nothing to do with Ampere's contracts or the details of Arm's performance under them.

To Arm's best understanding, Qualcomm's position is that because it is asserting Arm breached *Qualcomm*'s contracts by failing to provide certain deliverables to Qualcomm and not offering certain pricing for its Qualcomm licenses, Arm's performance under other contracts with *non-parties*—contracts that were entered into years ago, in the case of Ampere—is somehow relevant. That notion is not supported by common sense or the law. *See CIGNEX Datamatics, Inc. v. Lam Rsch. Corp.*, 2020 WL 2063924, at *13 (D. Del. Apr. 29, 2020) ("In any event, a bad faith breach of contract claim is still a contract claim."), *aff'd*, 2021 WL 4430400 (3d Cir. Sept. 27, 2021); *see also AdTrader, Inc. v. Google LLC*, 2021 WL 937559, at *2 (N.D. Cal. Mar. 12, 2021) (finding defendant's performance under agreement with non-party irrelevant to whether defendant breached contract with plaintiff). Indeed, Ampere is aware of no authority supporting the novel proposition that conduct with nonparties bears on basic breach of contract claims—if that were so, straightforward breach of contract cases would beget sprawling third-party discovery—nor has Qualcomm provided any. *See* D.I. 211 at 7-9 (failing to provide any authority to support relevance arguments); D.I. 354 at 3-4 (same); D.I. 356 at 3-4 (same). This alone is fatal to Qualcomm's requests.

### B. DISCLOSURE OF THE INFORMATION SOUGHT RISKS SIGNIFCANT COMPETITIVE HARM TO AMPERE.

Even if Qualcomm could articulate some tangential relevance of Ampere-related information, that relevance is far outweighed by the risk of harm to Ampere from disclosure. "[E]ven if the information sought is relevant, discovery is not allowed . . . where the potential harm caused by production outweighs the benefit." *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002). Such is the case here.

As Ampere previously explained to the Court, Ampere is a relatively small company in the semiconductor space, making it essential to maintain the confidentiality of its competitive information. D.I. 93 at 2; D.I. 240 at 2; Wittich Decl. ¶ 6. These concerns recently became even more acute: In May 2025, Qualcomm announced it is entering the data center CPU market, where Ampere operates. Wittich Decl. ¶ 7. Qualcomm wanting access to Ampere's CPU market license terms and the details of Arm's performance under those contracts is alarming, to say the least. *Id.*

As for the Ampere ALA, Ampere understands that the discovery in the Prior Action has

**WILSON SONSINI**

Special Master Helena C. Rychlicki
August 11, 2025
Page 5

been cross-designated in this action, such that the Ampere ALA already has been produced to Qualcomm in minimally redacted form.  The sole redacted text consists of bespoke and highly sensitive economic terms, including ████████████████████████████████████—the disclosure of which would cause serious competitive harm to Ampere.  *Id.* ¶ 8.  As Ampere has explained, disclosure of this information could allow Qualcomm to, among other things,



████████████████████  Wittich Decl. ¶¶ 16-22; *see also* Prior Action, D.I. 240 at 5-6 (explaining specific harm from disclosure); D.I. 241 (Declaration of Jeff Wittich).

Like its ALA, Ampere's TLA similarly contains highly sensitive competitive information concerning Ampere's ███████████████████████████████████.  Disclosure of such information could allow Qualcomm to ████████████████████████████████████████████████████████.  Wittich Decl. ¶¶ 16, 19.  These are precisely the circumstances warranting issuance of a protective order.  *See Allergan, Inc. v. Revance Therapeutics, Inc.*, C.A. No. 21-cv-1411-RGA-JLH (D. Del. July 7, 2023) (ORDER) (Hall, M.J.) (granting protective order where disclosure of nonparty's sensitive commercial information in license agreement would cause competitive harm).

As for communications about Arm's performance under Ampere's ALA and TLA, Ampere does not know what Ampere confidential information may be implicated by these requests.  Such requests, however, could very easily give Qualcomm insight into Ampere's most sensitive data, including the very terms and operation under the agreements described above.  Wittich Decl. ¶ 24.  Particularly given the irrelevance of Ampere's information to this action, such vague requests with such high stakes for nonparties should not be countenanced.

As the Court recognized in the Prior action, producing Ampere's confidential information on an Attorneys'-Eyes-Only basis does not solve the problem.  Prior Action, D.I. 207 (recognizing "the harm of disclosure given that Qualcomm's outside counsel will necessarily need to communicate generalized information about the ALA to its client, all of which remains true even given the Protective Order in this case").  Even with the best intentions, the fact remains that Qualcomm's outside counsel cannot unlearn the information once disclosed, and that knowledge could ultimately impact Qualcomm's dealings with Ampere—to say nothing of Qualcomm's use of that information at trial, given the purported relevance Qualcomm claims the *specific* terms of nonparties' agreements have for its claims.  Especially given Ampere's position as a nonparty who cannot control the use of its information once disclosed, these risks cannot be minimized or overlooked—a reality unfortunately confirmed by the fact that neither party alerted the Special Master to Ampere's objection to the production of its highly sensitive information.  *See*

**WILSON SONSINI**

Special Master Helena C. Rychlicki
August 11, 2025
Page 6

*Mannington Mills*, 206 F.R.D. at 530-31 ("[I]t would be divorced from reality to believe that either party here would serve as the champion of its competitor . . . to maintain the confidentiality designation or to limit public disclosure . . . during trial." (second and third alterations in original) (quoting *Micro Motion*, 894 F.2d at 1325)); *see also Amgen Inc. v. Samsung Bioepis Co.*, 2025 WL 1207594, at *6 (D.N.J. Apr. 24, 2025) (similar); *Arconic Corp. v. Novelis Inc.*, 2021 WL 4479484, at *5 n.2 (W.D. Pa. Sept. 30, 2021) (despite "robust protective order" in action, "the court is reluctant to order unnecessary disclosures of sensitive corporate information between these fierce industry competitors"); *Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*, 2011 WL 1348401, at *4 (N.D. Tex. Apr. 8, 2011) ("[A]s a non-party to the [litigation], [the company] is unable to protect its interests should any of the confidential information be disclosed, even if done so pursuant to a protective order.").

\* \* \*

Ampere respectfully requests that Qualcomm's requests for Ampere's highly sensitive information be denied and that Ampere's proposed protective order be granted. We are available should you have any questions.

Respectfully,

WILSON SONSINI GOODRICH
& ROSATI, P.C.

*/s/ Nora M. Crawford*

Brad D. Sorrels (Del. Bar No. 5233)
Nora M. Crawford (Del. Bar No. 6399)
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600
bsorrels@wsgr.com
ncrawford@wsgr.com

*Attorneys for Nonparty Ampere Computing LLC*

Dated: August 11, 2025                    Words: 2,310 of 2,400

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>    Plaintiffs,<br><br> v.<br><br>ARM HOLDING PLC., f/k/a ARM LTD., a U.K. corporation,<br><br>    Defendant. | C.A. No. 24-490 (MN) |

**DECLARATION OF JEFF WITTICH IN SUPPORT OF**
**NONPARTY AMPERE COMPUTING LLC'S MOTION FOR PROTECTIVE ORDER**

I, Jeff Wittich, declare as follows:

1. I am the Chief Product Officer of Ampere Computing LLC ("Ampere").  In that capacity, I am familiar with the facts contained herein.

2. I submit this declaration in support of Ampere's Motion for Protective Order to prevent the disclosure of Ampere's competitively sensitive commercial information (the "Motion").

3. Founded in September 2017, Ampere is an inventor and innovator in the semiconductor industry.  It designs and sells microprocessors tailored for the demands of cloud services and cloud services providers.  Ampere competes with larger and more established public companies with market capitalizations exceeding $150 billion dollars, including Qualcomm.

4. Ampere has entered into contracts with Defendant Arm Holdings PLC., f/k/a Arm Ltd. ("Arm") pursuant to which Ampere licenses certain Arm technology for use in the design and manufacture of Ampere's microprocessors.  Those contracts include Ampere's Architecture License Agreement ("ALA") and Technology License Agreement ("TLA") with Arm.

Docusign Envelope ID: 8A4868DF-C33D-4CBF-99D9-CB17DDDF702E

5.      I understand that Ampere's ALA has been produced by Arm in minimally redacted form to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (together, "Qualcomm") in a related action between the parties, captioned *Arm Ltd. v. Qualcomm Inc.*, C.A. No. 22-1146 (MN) (LDH).

6.      Ampere is a relatively small and young company compared to other major industry players, including Qualcomm, which is orders of magnitude larger than Ampere.  It is therefore essential for Ampere to keep the terms of its ALA, TLA, and related agreements with ARM out of competitors' hands.

7.      In May 2025, Qualcomm announced that it is entering the data center CPU market, where Ampere operates.  Qualcomm wanting access to Ampere's CPU market license terms and the details of Arm's performance under those contracts is alarming.

8.      The ALA and TLA and related documents are heavily negotiated and contain several highly sensitive commercial terms.  Those terms include ███████████████

████████████████████████████████████████████████

████████████████████

9.      Due to the sensitivity of this information, the ALA and TLA contain detailed confidentiality provisions.

10.     The ALA defines ████████████████████████████████████

████████████████████████████████████████

11.     ████████ of the ALA states:



- 2 -



12.        █████████ of the ALA states in relevant part:

13.    The TLA defines █████████████████████████████████

14.        █████████ of the TLA states:

**Restricted Disclosure.** Except as expressly provided by Clauses 3.2, 3.3,

15.        █████████ of the TLA states in relevant part:

16.    An explanation of the risk of harm to Ampere from disclosure of the highly confidential terms of its agreements with Arm are below.

- 3 -

Docusign Envelope ID: 8A4868DE-C33D-4CBE-99D9-CB17DDDE702E

17. ██████████████████████████████████████████

███████   ████████████████████████████████████

█████████████████████████████   ███████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████

18. ██████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

19. ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████.

20. ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

- 4 -

- 5 -

23.    Confidentiality of the terms discussed above are critically important in this industry.  If the terms of these agreements were to inadvertently leak into the hands of Qualcomm, other competitors, or even common customers and potential customers (i.e., cloud service providers like Amazon, Microsoft, and Google), Ampere would be irreparably harmed because competitors could use that information to, among other things, ███████████████

24.     I understand that Qualcomm is also seeking communications reflecting Arm's performance under its agreements with Ampere. While Ampere does not know the full scope of information implicated by such communications, it is easily conceivable that communications concerning Ampere's agreements and Arm's performance thereunder could divulge the very terms described above and thus pose the same risks of harm to Ampere.

25.     These risks are significant even if the redacted information is disclosed only to Qualcomm's outside counsel pursuant to the Stipulated Protective Order. For example, Qualcomm's counsel's possession of the above-described information could severely impair Ampere's ability to negotiate with Qualcomm, or with other competitors represented by the same counsel in any future transactions, because counsel could use its knowledge of the terms of the Ampere/Arm Agreements to exert leverage in negotiations.

I hereby declare the foregoing is true and correct.

Dated: August 11, 2025

DocuSigned by:

Jeff Wittich
0B5EA69E32AD4AC...

Jeff Wittich
Chief Product Officer
Ampere Computing LLC

- 6 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>  a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>  a Delaware corporation, | )<br>)<br>)<br>)<br>) | |
|              Plaintiffs, | )<br>) | C.A. No. 24-490 (MN) |
| v. | )<br>) | **SUBMITTED UNDER SEAL –** |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>  a U.K. corporation, | )<br>)<br>)<br>) | **HIGHLY CONFIDENTIAL –**<br>**ATTORNEYS' EYES ONLY** |
|              Defendant. | ) | |

## PLAINTIFFS' LETTER BRIEF IN OPPOSITION TO AMPERE'S MOTION FOR A PROTECTIVE ORDER

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

August 18, 2025

Dear Special Master Rychlicki:

Qualcomm submits this letter in opposition to Ampere's Motion for a Protective Order. D.I. 374.

## I.        Factual Background

For background on Qualcomm and Arm, Qualcomm directs Your Honor to Qualcomm's briefs in opposition to other third-party motions.  D.I. 180, 344, 346 (redacted at 211, 354, 356, respectively).

In the prior litigation, Arm alleged that Qualcomm and Nuvia breached the Nuvia ALA by not destroying certain technology after Arm terminated the Nuvia ALA.  *Arm Ltd. Inc.* v. *Qualcomm Inc.*, C.A. No. 22-1146 (MN) (the "Prior Litigation"), D.I. 1.  To test whether Arm suffered any harm, Qualcomm sought production of Arm's ALAs and TLAs with third parties.  Ex. 1, RFP 27; Ex. 2, RFP 71.  Despite initial rulings declining to compel production, the Court ultimately found the materials to be relevant and precluded Arm from relying on them at trial in light of Arm's refusal to produce the unredacted versions.  For instance, Judge Hatcher granted Ampere's first motion for a protective order and maintained that ruling at a later hearing because she was unable to evaluate the relevance of third party ALAs.  Ex. 3, 58:11–25.  Judge Noreika overruled Qualcomm's objections without prejudice, but stated that she thought the ALAs were "a little bit more relevant than" Judge Hatcher suggested.  Ex. 4, 46:6–12.  She overruled the objections "for right now" because she could not "make a determination" as to relevance, but invited Qualcomm to raise the issue again once she understood Arm's theories of harm.  *Id.* 62:10–23.  Once it became clear to Judge Noreika that third-party ALAs were relevant to the dispute, she precluded Arm from using certain evidence and advancing certain theories in light of its refusal to produce unredacted ALAs.  Prior Litigation, D.I. 578 at 26:20–40:22; *see also* Prior Litigation, D.I. 588 at 98:16–101:24.[1]

This litigation arises from Arm's conduct under the Qualcomm ALA and TLA and Arm's tortious interference and unfair competition.  Qualcomm asserts that Arm breached the Qualcomm ALA by failing to provide certain deliverables that Arm is required to give to Qualcomm (the "ALA Deliverables").  D.I. 137 ¶¶ 12–19, 78–94.  Qualcomm believes that Arm provides these ALA Deliverables to other Arm partners under their own respective ALAs, yet denied them to Qualcomm.  Qualcomm also asserts claims for breach of the implied covenant of good faith and fair dealing and violation of the California UCL based on Arm's refusal to negotiate an extension of the Qualcomm ALA or a license to future versions of Arm technology in good faith.  *Id.* ¶¶ 128–134, 181–188, 204–212.  Qualcomm also alleges that Arm breached the Qualcomm TLA and the implied covenant of good faith by providing licensing quotes for certain Arm CPUs and peripherals at prices that are either inconsistent with the ███████████████████ in the

---

[1] Ampere's motion relies on rulings from Judge Hatcher and a tentative ruling from Judge Noreika while completely ignoring Judge Noreika's ultimate resolution of this dispute.  That Ampere does so despite Qualcomm's explanation of the full history of the dispute in response to three other third-party motions, D.I. 211, 354, 356, while generously borrowing arguments from those motions, is telling.

Qualcomm TLA or are otherwise not commercially reasonable. *Id.* ¶¶ 20–28, 102–120, 181–188, 213–226.

Since January, Qualcomm has sought production of third-party agreements and communications relevant to these claims. *E.g.*, Ex. 5 RFPs 26, 27, 28, 32, 34, 40. *See also*, *e.g.*, Ex. 6 RFP 58; Ex. 7 RFP 123. Nearly four months later, on April 23, Arm notified Ampere that it received discovery requests "related to Arm's business relationship with Ampere, including requests for unredacted copies of Ampere's architecture license agreements [] and technology license agreements [] with Arm." D.I. 164 at 1; Mot. at 2.[2] More than six weeks after that—three weeks after the Protective Order's twenty-one day period lapsed, D.I. 84 ¶ 52—Ampere wrote to Judge Noreika requesting that she deny any requests to produce Ampere's confidential information, D.I. 164. On July 14, Judge Noreika referred discovery disputes to this proceeding. D.I. 332. On August 11—three and a half months after receiving Arm's notice—Ampere moved for a protective order. D.I. 374.[3]

## II.    Legal Standard

A court may issue a protective order only upon a showing of good cause. Fed. R. Civ. P. 26(c). The non-party seeking a protective order must "show good cause by demonstrating a particular need for protection." *Cipollone* v. *Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* (citing *United States* v. *Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); *see also Signode Indus. Grp, LLC* v. *Polychem, LLC*, C.A. No. 22-519, 2022 WL 3226319 (D. Del. Aug. 10, 2022), D.I. 94 at 1–2 (noting "specificity" requirement for granting protective order).

## III.    The Materials That Qualcomm Seeks are Relevant.

Ampere contends that discovery related to Ampere is irrelevant because contracts of non-parties are not relevant to Qualcomm's claims. Mot. at 4.[4] But questions of relevance are

---

[2] Ampere has not attached a copy of Arm's notice, and its motion implies that Arm has not provided Ampere with a copy of the relevant discovery requests or documents to be produced as required. D.I. 84 ¶ 51(b)–(c). Any uncertainty as to the "scope of Ampere confidential information that may be implicated," Mot. at 3, is thus attributable to Arm. As between Arm, Ampere, and Qualcomm, Qualcomm is in the worst position to understand the scope of responsive documents, all of which are in the possession, custody, and control of Arm and Ampere.

[3] Because Ampere had not moved for a protective order, Qualcomm declined to share its confidential briefing materials, which only partially concerned production of third-party agreements. Qualcomm did not make any arguments specifically related to Ampere and nevertheless sets out substantially similar arguments in this brief.

[4] *AdTrader, Inc.* v. *Google LLC*, 2021 WL 937559, at *2 (N.D. Cal. Mar. 12, 2021), is inapposite. There, the court "d[id] not understand" how production of one agreement was relevant to breach of another agreement. *Id.* Here, Ampere's documents are plainly relevant to Arm's breach of the

2

necessarily context-specific. *Ameritas Life Ins. Corp.* v. *Wilmington Sav. Fund Soc'y*, 2024 WL 4417096, at *1 (D. Del. Oct. 4, 2024) ("Relevance is broadly construed and determined in relation to the facts and circumstances of each case." (quoting *Ingram* v. *Home Depot, U.S.A., Inc.*, 1999 WL 88939, at *1-2 (E.D. Pa. Feb. 19, 1999)).  And Ampere's motion overlooks that the nature of Qualcomm's claims make Ampere's ALA, TLA, and related agreements and communications relevant.

### A. Ampere's TLA, Annexes, and Related Communications are Relevant.

Ampere's TLA and annexes with Arm, as well as communications regarding its TLA licensing offers, are relevant to Qualcomm's claims that Arm breached the Qualcomm TLA and the covenant of good faith and fair dealing in connection with quotes Arm gave to Qualcomm. D.I. 137 ¶¶ 102–108, 116–120, 181–188, 213–220.  The Qualcomm TLA includes a ███████████ ████████████████████████████████████████████████████████████████ *Id.* ¶¶ 104–105. ████████████████████████████ ███████████████████████ *Id.*  Given the nature of the ██████████████████████████████, which ████████ █████, Qualcomm cannot prove Arm breached the TLA without access to third-party TLAs and annexes, including financial terms.  Similarly, Arm's agreements governing peripheral IP are relevant to Qualcomm's claim that Arm's quote to Qualcomm for peripheral IP was not commercially reasonable.  Thus, production of Arm's agreements with pricing information for Arm-designed CPUs and peripheral IP is necessary for Qualcomm to prove its claims.  So too, Arm's communications with Ampere about these prices are relevant to understanding the value of the agreement  and whether Ampere's pricing bears on the market value of these products or is due to some special arrangement.

### B. Ampere's ALA and Related Communications are Relevant.

Several of Qualcomm's claims are premised on Arm's improper withholding of the ALA Deliverables.   D.I. 137  ¶¶  167–168,  173–180,  181–188,  204–212.   Ampere's ALA and communications with Arm about providing ALA deliverables are thus relevant to showing whether Arm has provided these deliverables to other ALA licensees, but not Qualcomm.  Ampere's unredacted materials are further relevant to Qualcomm's claim that Arm breached the covenant of good faith and fair dealing by failing to negotiate with Qualcomm regarding a license to v10 of the Arm Architecture, to the extent Ampere has engaged in such negotiations.

Ampere identifies categories of information in its ALA it contends should remain redacted. Wittich Decl.  If Arm represents that none of the redacted provisions relate to Arm's provision of the ALA Deliverables, support for the ETE Checker, extensions of the ALA, v10 or other future architectures, and agrees not to make any arguments based on the redacted information or Qualcomm's inability to see the redacted information, Qualcomm agrees to Ampere maintaining those redactions except as set forth below:

---

Qualcomm ALA and TLA, as described below. *CIGNEX Datamatics, Inc.* v. *Lam Rsch. Corp.*, 2020 WL 2063924, at *13 (D. Del. Apr. 29, 2020), is also inapposite here, where Qualcomm is asserting separate claims for breach of contract and breach of the implied covenant.

3

- ALA ███████████ – Ampere has redacted terms ███████████ ███████████. That information is relevant to understanding whether Arm had a reason for providing the ALA deliverables to Ampere but not Qualcomm. In any event, Ampere's declaration does not address this redaction and thus waives any objection to its production.

- ALA ███████████ – Ampere represents that this ███████████ ███████████ Wittich Decl. ¶ 18. That information is relevant to Qualcomm's UCL claim and should be produced.

- ALA ███████████ – This section is so heavily redacted that Qualcomm cannot discern what it covers. If Arm makes the representations outlined above, Qualcomm will agree to maintain the redaction.

- ALA ███████████ – This section governs ███████████ ███████████ This provision is relevant to Qualcomm's UCL claim and should be produced.

- ALA ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████

Ampere also seeks to maintain redactions on sections of the Ampere TLA governing ███████████ (*id.* ¶ 17) and ███████████ (*id.* ¶ 19). Ampere has not provided a redacted version of its TLA, preventing Qualcomm from meaningfully considering these redactions. But the ███████████ are relevant to Qualcomm's claims, as described above. Moreover, to the extent the ███████████ associate prices with TLA products, those provisions are relevant as they bear on the commercial value of each product.

## C. Ampere Has Not Demonstrated Specific Risks of Harm.

Ampere cannot establish good cause for a protective because it lacks a "particular need for protection." *See Cipollone*, 785 F.2d at 1121.

Ampere contends that production of its unredacted agreements "*could* allow Qualcomm" to engage in a laundry list of activities that would be harmful to Ampere. Mot. 4–5 (emphasis

---

[5] Qualcomm has no objection to redacting the ███████████, so long as Arm represents that it will not rely on them as outlined above.

added).  But these hypothetical actions assume that Qualcomm's outside counsel will violate the Protective Order, which permits Arm to designate sensitive information as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," thus limiting access to outside counsel of record and experts while prohibiting access to anyone at Qualcomm (including Qualcomm in-house counsel).  D.I. 84 ¶¶ 45–46.  This designation provides strong protection from disclosure of Ampere's confidential information to Qualcomm. *See* Ex. 4 (noting that it was "quite an accusation" to suggest that this designation wouldn't sufficiently protect sensitive information); *Procter & Gamble Co.* v. *Boyle-Midway, Inc.*, C.A. No. 82-671, 1983 WL 830080, at *1 (D. Del. Apr. 11, 1983) ("The Court simply will not indulge in the speculation that attorneys will violate a protective order issued by a court[.]").

Ampere speculates that the Protective Order is insufficient.  First, it suggests that outside counsel will "necessarily need to communicate generalized information" to Qualcomm.  Mot. at 5 (quoting Prior Litigation, D.I. 207).  But Ampere never explains *why* Qualcomm's counsel would need to do so.  Next, Ampere cites a handful of cases to suggest that confidentiality designations are not sufficient.  But those cases stand, at most, for the proposition that designating materials as highly confidential does not justify production where the materials sought are not sufficiently relevant.  *Mannington Mills Inc.* v. *Armstrong World Industries, Inc.*, 206 F.R.D. 525, 532 (D. Del. 2002) (relying on Federal Circuit precedent to quash a third-party subpoena primarily because the materials sought were irrelevant); *Amgen Inc.* v. *Samsung Bioepis Co.*, 2025 WL 1207594, at *5 (D.N.J. Apr. 24, 2025) (moving party did not establish "that the information [was] being sought for a proper purpose"); *Arconic Corp.* v. *Novelis Inc.*, 2021 WL 4479484, at *5 (W.D. Pa. Sept. 30, 2021) (denying discovery that was "not relevant or proportional to the needs of the case"); *Educ. Logistics, Inc.* v. *Laidlaw Transit, Inc.*, 2011 WL 1348401, at *5 (N.D. Tex. Apr. 8, 2011) (moving party did not establish that the materials were relevant).  Here, by contrast, the materials are relevant, and Ampere offers no non-speculative reason for why the confidentiality designation is insufficient.  Nor could it, as Qualcomm's outside counsel has had possession of Ampere's redacted ALA and annex for approximately two years without any disclosure to Qualcomm.  Ampere does not contend Qualcomm's outside counsel has misused these agreements nor offer any suggestion that outside counsel would treat the unredacted versions with any less caution.

## IV.     Conclusion

Ampere's motion should be denied.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

Words: 2395

Encls.

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br> a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br> a Delaware corporation, | )<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | C.A. No. 24-490 (MN) |
| v. | )<br>) | **CONFIDENTIAL – ATTORNEYS' EYES ONLY** |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br> a U.K. corporation, | )<br>)<br>) | |
| Defendant. | ) | |

**DECLARATION OF CATHERINE NYARADY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO NON-PARTY AMPERE'S MOTION FOR A PROTECTIVE ORDER**

I, Catherine Nyarady, hereby declare, under penalty of perjury as follows:

1.      I am an attorney at Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel of record for Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm" or "Plaintiffs") in the above-captioned matter.  I am a member in good standing of the State Bar of New York and have been admitted *pro hac vice* in this case.  I am competent to testify to the matters stated herein, have personal knowledge of the facts and statements in this declaration, and each of the facts and statements is true and correct.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of an excerpt from Qualcomm's First set of RFPs in the case styled *Arm Ltd v. Qualcomm Technologies, Inc. et al.*, C.A. No. 22-1146 (D. Del.).

3.      Attached hereto as **Exhibit 2** is a true and correct copy of an excerpt from Qualcomm's Fifth set of RFPs in the case styled *Arm Ltd v. Qualcomm Technologies, Inc. et al.*, C.A. No. 22-1146 (D. Del.).

4.      Attached hereto as **Exhibit 3** is a true and correct copy of an excerpt from the transcript of the January 12, 2024 telephonic hearing before Judge Hatcher in the case styled *Arm Ltd v. Qualcomm Technologies, Inc. et al.*, C.A. No. 22-1146 (D. Del.).

5.      Attached hereto as **Exhibit 4** is a true and correct copy of an excerpt from the transcript of the March 7, 2024 hearing before Judge Noreika in the case styled *Arm Ltd v. Qualcomm Technologies, Inc. et al.*, C.A. No. 22-1146 (D. Del.).

6.      Attached hereto as **Exhibit 5** is a true and correct copy of an excerpt from Arm's Responses and Objections to Qualcomm's First set of RFPs in this litigation.

7.      Attached hereto as **Exhibit 6** is a true and correct copy of an excerpt from Arm's Responses and Objections to Qualcomm's Second set of RFPs in this litigation.

8.      Attached hereto as **Exhibit 7** is a true and correct copy of an excerpt from Qualcomm's Third set of RFPs in this litigation.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my present knowledge and belief.

Dated:  August 18, 2025                    */s/ Catherine Nyarady*
                                            Catherine Nyarady

2

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARM LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1146 (MN) |
| | ) | |
| QUALCOMM INC., QUALCOMM TECHNOLOGIES, INC. and NUVIA, INC., | ) ) | ▉▉▉▉▉▉▉▉ |
| | ) | |
| Defendants. | ) | |

## QUALCOMM'S FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1–36)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Defendants Qualcomm Inc., Qualcomm Technologies, Inc., and Nuvia, Inc ("NUVIA") (collectively, "Defendants" or "Qualcomm") request that Plaintiff ARM Ltd. ("ARM") serve Qualcomm with its written responses to these requests for production and produce copies of the Documents and things requested below at the law offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 within thirty (30) days of service.

## INSTRUCTIONS

1. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests for Documents and things are continuing in nature. If, after producing the requested Documents and things, ARM obtains or becomes aware of any further responsive Document or thing, ARM must produce to Qualcomm such additional Document or thing.

2. If ARM withholds any Document or thing based upon a claim of privilege or any other claim of immunity from discovery, ARM shall state the specific basis for withholding the Document or thing and describe the facts and circumstances giving rise to such withholding in

technology are not readily ascertainable or calculable, given the resulting future impact on ARM's relationships with existing and prospective customers" (D.I. 1, ¶ 56).

**REQUEST FOR PRODUCTION NO. 26:**

All Documents and Communications concerning the acquisition of any ARM licensee by another licensee, including but not limited to Documents and Communications about the acquisition process, negotiations related to the acquisition(s), and the outcome of those negotiations, including any related agreements.

**REQUEST FOR PRODUCTION NO. 27:**

All ALAs ARM has entered into with any party.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents and Communications concerning any circumstances in which ARM has demanded destruction of an architected core or related technology.

**REQUEST FOR PRODUCTION NO. 29:**

All Documents and Communications concerning the acquisition of any ARM licensee by another licensee, including whether assignment of any license agreement occurred, ARM's position on assignment, and any novation agreement that was executed.

**REQUEST FOR PRODUCTION NO. 30:**

All Documents and Communications concerning ARM's market share, including but not limited to its market share in the compute, server, and mobile markets.

**REQUEST FOR PRODUCTION NO. 31:**

All Documents and Communications concerning any ARM architecture set the public domain, including but not limited to the ARMv8-A Architecture Documentation set and all relevant versions.

12

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

Erin J. Morgan
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

December 20, 2022

*Attorneys for Defendants*

14

A025

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2022, copies of the foregoing were caused to be served upon the following in the manner indicated:

Anne Shea Gaza, Esquire                              *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Samantha G. Wilson, Esquire
YOUNG, CONAWAY, STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Michael A. Jacobs, Esquire                           *VIA ELECTRONIC MAIL*
Joyce Liou, Esquire
Diek Van Nort, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Plaintiff*

Erik J. Olson, Esquire                               *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Plaintiff*

Scott F. Llewellyn, Esquire                          *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202-5638
*Attorneys for Plaintiff*

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

15

A026

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARM LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1146 (MN) |
| | ) | |
| QUALCOMM INC., QUALCOMM | ) | █████████████████████ |
| TECHNOLOGIES, INC. and NUVIA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**QUALCOMM'S FIFTH SET OF REQUESTS FOR PRODUCTION (NOS. 71 - 124)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, Defendants Qualcomm Inc., Qualcomm Technologies, Inc., and Nuvia, Inc ("NUVIA") (collectively, "Defendants" or "Qualcomm") request that Plaintiff ARM Ltd. ("ARM") serve Qualcomm with its written responses to these requests for production and produce copies of the Documents and things requested below at the law offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 within thirty (30) days of service.

**INSTRUCTIONS**

1.      Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests for Documents and things are continuing in nature.  If, after producing the requested Documents and things, ARM obtains or becomes aware of any further responsive Document or thing, ARM must produce to Qualcomm such additional Document or thing.

2.      If ARM withholds any Document or thing based upon a claim of privilege or any other claim of immunity from discovery, ARM shall state the specific basis for withholding the Document or thing and describe the facts and circumstances giving rise to such withholding in

████████████████████████████████████

well as any index, table of contents, list, or summaries that serve to organize, identify, or reference the Document.

8.      "IPO" means the initial public offering of ARM Ltd.

9.      "Plaintiff," "ARM," "you," and "your" mean Plaintiff ARM Ltd. and its predecessors, successors, affiliates, subsidiaries, parents, assignees, joint venturers, partners, principals, employees, representatives, agents, officers, trustees, directors, attorneys, and all other Persons or entities acting or purporting to act on their behalf.

10.      "TLA" means Technology License Agreement, including all amendments and annexes to any such agreement.

11.      As used in these requests, the singular shall include the plural, and the past tense shall include the present tense, and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the word "all" shall mean "any and all"; the word "including" shall mean "including, without limitation," so as to be most inclusive.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 71:**

All TLAs ARM has entered into with any party.

**REQUEST FOR PRODUCTION NO. 72:**

ARM's audit committee meeting minutes for 2020, 2021, 2022, and 2023.

**REQUEST FOR PRODUCTION NO. 73:**

ARM's board of directors meeting minutes for 2020, 2021, 2022, and 2023.

**REQUEST FOR PRODUCTION NO. 74:**

ARM's board of directors meeting materials for 2020, 2021, 2022, and 2023.

5

**A029**

████████████████████████████████████████

**REQUEST FOR PRODUCTION NO. 121:**

All Documents showing any incremental or variable costs, including any compensation paid to sales representatives on sales made in the United States related to the ██████████ .

**REQUEST FOR PRODUCTION NO. 122:**

All Documents and Communications concerning ARM's advertising, marketing, and sales efforts for licensing ██████████ , including marketing or sales plans, marketing and advertising budgets and expenses, and any and all internal and external communications regarding ARM's advertising, marketing, and sales efforts.

**REQUEST FOR PRODUCTION NO. 123:**

All Documents and Communications concerning ARM's communications with actual and/or prospective customers regarding actual or contemplated future licenses, benefits of the ██████████ , and/or competing products.

**REQUEST FOR PRODUCTION NO. 124:**

All Documents and Communications concerning ARM's weighted average cost of capital ("WACC") or discount rate.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

14

████████████████████████████████████████

Catherine Nyarady
Erin J. Morgan
Anna R. Gressel
Madalyn G. Vaughn
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Andrea L. D'Ambra
Susana Medeiros
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY  10019
(212) 318-3000

Kira Latham
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX  75201
(214) 855-8000

October 18, 2023

████████████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2023, copies of the foregoing were caused to be served upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Samantha G. Wilson, Esquire<br>YOUNG, CONAWAY, STARGATT & TAYLOR LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Michael A. Jacobs, Esquire<br>Joyce Liou, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Erik J. Olson, Esquire<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, CA 94304<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO 80202-5638<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Ruohan (Jack) Li, Esquire<br>Daniel P. Muino, Esquire<br>Fahd Hussein Patel, Esquire<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW, Suite 900<br>Washington, D.C. 20037<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

16

A032

████████████████████████████████████

Nicholas Rylan Fung, Esquire                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
*Attorneys for Plaintiff*

Kyle W.K. Mooney, Esquire                       *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Plaintiff*

/s/ Jennifer Ying

Jennifer Ying (#5550)

17

**A033**

# A034 - A042
# Redacted in Full

# Exhibit 5

A043

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
Delaware corporation,

Plaintiffs,

v.

ARM LTD., a U.K. corporation,

Defendant.

C.A. No. 24-490-MN

███████████████

## ARM LTD.'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-52)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure; the District's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("Default Standard"), and Stipulation and Order governing ESI in this case (together with the Default Standard, the "ESI Order"); any Protective Order entered in this case (the "Protective Order"), the District of Delaware Local Civil Rules (together with the ESI Order and the Protective Order, the "Local Rules"), and any agreements by the parties or orders by the Court, Arm Ltd. ("Arm") submits the following responses and objections to Qualcomm Inc. and Qualcomm Technologies, Inc.'s (together "Qualcomm") First Set of Requests for Production of Documents and Things to Arm Ltd. (Nos. 1-52), dated January 21, 2025 (each a "Request" and collectively the "Requests").

## PRELIMINARY STATEMENT

1.     Arm's responses to the Requests ("Responses") are made in accordance with the Federal Rules of Civil Procedure and based upon information currently available to Arm.

1

**A044**

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians related to or concerning Arm's October 22, 2024 letter.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

**REQUEST FOR PRODUCTION NO. 26:**

All Documents and Communications concerning deliverables included as  licensed under the Qualcomm ALA, including the ▮▮▮▮▮, that was, after June 1, 2022, delivered to any other Arm licensee but not to Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as third party licenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

**REQUEST FOR PRODUCTION NO. 27:**

All ALAs and Annexes with Third Parties (*i.e.*, parties other than Qualcomm).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as third party licenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and

32

will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents and Communications concerning delivery of  or any other technical improvement licensed under ALAs to third parties (*i.e.*, parties other than Qualcomm), including documents sufficient to show the licensee, the date of delivery, and the terms of any such delivery for any delivery that was not provided to Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as third party licenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the

privilege or immunity. Arm objects to this Request because the phrases "development process" and "timeline for development" are vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 32:**

All Documents and Communications related to or concerning the delivery of ACK patches to any ALA partner other than Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as delivery of ACK patches to third parties. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

37

**REQUEST FOR PRODUCTION NO. 34:**

All Documents and Communications concerning any negotiations that Arm had with TLA licensees (including Third Parties) for the ███████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████████ █████████████████████ including but not limited to price quotes, license fees, licensing term limits, or other language to include in TLA Annexes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as documents concerning negotiations with third party licensees. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable

39

privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive regarding negotiation between ARM and TLA licensees. Arm objects to this Request because the phrases "TLA licensees" and "other language to include in the TLA Annexes" are vague, ambiguous, and undefined.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show the identity of Arm's licensees for the ███████████████████████ cores.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as documents concerning negotiations with third party licensees. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client

privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive regarding negotiation between ARM and TLA licensees. Arm objects to this Request because the phrases "TLA licensees" and "other language to include in the TLA Annexes" are vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents and Communications related to or concerning Arm's October 22, 2024 letter to Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians related to or concerning Arm's October 22, 2024 letter.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other

41

**REQUEST FOR PRODUCTION NO. 40:**

All Documents and Communications concerning Arm's discussions with Qualcomm regarding licensing of the ██████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ including discussions regarding potentially withholding any of the listed items, pricing of the items, and any potential restrictions related to the use of the items in Qualcomm's products, including in any chips that contained designs or source code that originated at Nuvia.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client

privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search through the use of search terms and custodians concerning Arm's discussions with Qualcomm regarding licensing of the ▮▮▮▮▮▮▮ ▮▮▮▮ cores.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other

47

applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

**REQUEST FOR PRODUCTION NO. 41:**

All Documents and Communications concerning the decision not to provide Qualcomm with information or documents related to the configuration or enablement of the █████████████████████████████████, including but not limited to communications regarding Qualcomm's requests for delivery of the ████████████████████████████ ████████.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians concerning the decision not to provide Qualcomm with information or documents related to the configuration or enablement of the ██████████████████████ ███████████.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from

48

Dated: June 17, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

64

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 17, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

<u>BY EMAIL</u>

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
ejmorgan@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

# Exhibit 6

A058

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
  Delaware corporation

      Plaintiffs,

    v.

ARM HOLDINGS PLC, f/k/a, ARM LTD.
  a U.K. corporation

      Defendant.

C.A. No. 24-490-MN

███████████

## ARM LTD.'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S SECOND SET OF REQUESTS FOR PRODUCTION (NOS. 53-120)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure; the District's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("Default Standard"), and Stipulation and Order governing ESI in this case (together with the Default Standard, the "ESI Order"); any Protective Order entered in this case (the "Protective Order"), the District of Delaware Local Civil Rules (together with the ESI Order and the Protective Order, the "Local Rules"), and any agreements by the parties or orders by the Court, Arm Ltd. ("Arm") submits the following responses and objections to Qualcomm Inc. and Qualcomm Technologies, Inc.'s (together "Qualcomm") Second Set of Requests for Production of Documents and Things to Arm Ltd. (Nos. 53-120), dated February 21, 2025 (each a "Request" and collectively the "Requests").

## PRELIMINARY STATEMENT

1.     Arm's responses to the Requests ("Responses") are made in accordance with the

Arm objects to this Request because the term "withholding" is vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request No. 40.

**REQUEST FOR PRODUCTION NO. 58:**

All Documents and Communications relating to or concerning any negotiations that Arm had with TLA licensees (including Third Parties) for the CoreLink ADB-400 AMBA Domain Bridge and and Cortex-A720 codenamed " ," Cortex-A520 codenamed " " Cortex M55 codenamed " ," Cortex-X925 codenamed " ," the CPU codenamed " ," Cortex-A720AE codenamed " ", Cortex-A730 codenamed " ", and Cortex-A725 codenamed " ", including but not limited to price quotes, license fees, licensing term limits, or other language to include in TLA Annexes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request, if any, and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses, including licenses not at issue. Arm objects to this Request as unduly burdensome and not proportional to the needs of the case to the extent it seeks production of all third-party TLAs and TLA Annexes. Arm objects to this Request to the extent it seeks

11

information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request because the term "negotiations" is vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request No. 34.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show the identity of Arm's licensees for the ▮▮▮▮▮▮▮ ▮▮▮▮▮▮ cores.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses, including licenses not at issue. Arm objects to this Request as unduly burdensome and not proportional to the needs of the case to the extent it seeks production of all

12

third-party TLAs and TLA Annexes. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request because the term "negotiations" is vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request No. 34.

**REQUEST FOR PRODUCTION NO. 59:**

All Documents and Communications relating to or concerning the withholding of software test libraries (STL) files or releases from Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request, if any, and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses, such as licenses not at issue. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract

Dated: June 17, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

69

**A063**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 17, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
ejmorgan@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

# Exhibit 7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
Delaware corporation,

      Plaintiffs,

    v.

ARM HOLDINGS PLC, a U.K. corporation,

      Defendant.

C.A. No. 24-490-MN

███████████

## ARM HOLDINGS PLC'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S THIRD SET OF REQUESTS FOR PRODUCTION <u>(NOS. 121-156)</u>

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure; the District's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("Default Standard"), and Stipulation and Order governing ESI in this case (together with the Default Standard, the "ESI Order"); any Protective Order entered in this case (the "Protective Order"), the District of Delaware Local Civil Rules (together with the ESI Order and the Protective Order, the "Local Rules"), and any agreements by the parties or orders by the Court, Arm Holdings plc ("Arm") submits the following responses and objections to Qualcomm Inc. and Qualcomm Technologies, Inc.'s (together "Qualcomm") Third Set of Requests for Production of Documents and Things to Arm Holdings plc (Nos. 121-156), dated April 2, 2025 (each a "Request" and collectively the "Requests").

### <u>PRELIMINARY STATEMENT</u>

1.     Arm's responses to the Requests ("Responses") are made in accordance with the

1

**RESPONSE TO REQUEST FOR PRODUCTION NO. 122:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show Arm's knowledge since January 1, 2022 that any Third Party with whom Qualcomm alleges interference is or has been a customer for Qualcomm CPUs or other products.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work- product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order.

**REQUEST FOR PRODUCTION NO. 123:**

All agreements licensing Arm Implementation Cores codenamed ▮▮▮▮▮▮ ▮▮▮▮ including TLAs and corresponding Annexes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 123:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

7

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll agreements" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents related to Plaintiff's pending Motion for Leave to Amend the First Amended Complaint. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work- product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as duplicative of Request Nos. 34, 58, and 140.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 123:**

Subject to its General Objections and any specific objections set forth below, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show the identity of Arm's licensees for the ████████████████████ cores.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll agreements" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to

8

this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work- product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as duplicative of Request Nos. 34, 58, and 140.

**REQUEST FOR PRODUCTION NO. 124:**

All licensing fee and royalty information for licenses offered by Arm for Arm Implementation Cores codenamed ████████████████

**RESPONSE TO REQUEST FOR PRODUCTION NO. 124:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll agreements" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents related to Plaintiff's pending Motion for Leave to Amend the First Amended Complaint. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request as seeking

9

Dated: June 17, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

38

A071

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 17, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
ejmorgan@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

A073

**OUTSIDE ATTORNEY'S EYES ONLY**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INCORPORATED and QUALCOMM TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ARM HOLDINGS PLC, f/k/a ARM LTD., <br><br> Defendants. | C.A. No. 24-490 (MN) |

**LETTER BRIEF OF NON-PARTY APPLE INC. IN SUPPORT OF ITS
<u>MOTION FOR PROTECTIVE ORDER</u>**

Dated: August 11, 2025

Susan E. Morrison (No. 4690)
Nitika Gupta Fiorella (No. 5898)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
morrison@fr.com
fiorella@fr.com

Hannah Cannom (*pro hac vice*)
Bethany Stevens (*pro hac vice*)
WALKER STEVENS CANNOM LLP
500 Molino Street, Suite 118
Los Angeles, California 90013
213-712-9145
hcannom@wscllp.com
bstevens@wscllp.com

*Attorneys for Non-Party Apple Inc.*

██████████████████████████

Dear Special Master Rychlicki,

Pursuant to Federal Rule of Civil Procedure 26 and Paragraphs 51-52 of the Stipulated Protective Order (D.I. 84), non-party Apple Inc. ("Apple") hereby moves for a protective order to prevent production of any ██████████████████████████ between Apple and Defendant Arm Holdings PLC ("Arm").

This case involves allegations that Arm breached its licensing agreements with Plaintiffs Qualcomm Incorporated and Qualcomm Technologies Inc. (together "Qualcomm"). Though Apple does not have full insight into the allegations or discovery disputes given the redactions to the publicly-available Second Amended Complaint and discovery briefing, Apple understands that Qualcomm is seeking from Arm all of its agreements with third parties, including one or more █████████████.

Apple strongly objects to Qualcomm's demands. First, the ██████████████ are simply not relevant. Qualcomm's allegations have nothing to do with Arm's agreements with non-party Apple. Second, Qualcomm is an Apple supplier, a supplier to Apple competitors, and a competitor of Apple. ██████████████████████████████. The harm to Apple of producing such agreements to Qualcomm cannot be overstated, and cannot be justified given their scant (if any) relevance. Finally, given the narrow issues in this case, there are other ways that Apple could provide targeted, responsive information to Qualcomm that would not require wholesale production of Apple's ██████████████████████. To date, Qualcomm has been unwilling to engage with Apple on any less harmful means of discovery.

Good cause exists for the Court to enter the proposed protective order filed herewith.

**Factual Background**

1.    **The** ██████████████

██████████████████████████████
██████████████████████████████
██████████████. (Declaration of T. Kirby ("Kirby Decl.") ¶¶ 3-6.) As part of their longstanding working relationship, ██████████████████████████
██████████████ (*Id.*)
██████. (*Id.*)
██████████ (*Id.* ¶ 7.)

2.    **Qualcomm's Previous Demands for Unredacted** ██████████████

In the related litigation between Qualcomm, Arm, and Nuvia, Apple consented to Arm's production of redacted copies of certain versions of the ██████████. *Arm Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146 (MN) (D. Del.) (the "*Nuvia* Litigation"). Qualcomm sought to compel unredacted versions of these agreements. *Id*. D.I. 101. Apple moved for, and the magistrate judge granted, a protective order holding that "Qualcomm, as an indirect competitor and customer,

1

could obtain unfair competitive advantages by accessing information contained in the ▮ ▮" even if produced as Attorneys' Eyes Only. *Id.* D.I. 207; *see also* D.I. 111. Judge Hatcher also denied Qualcomm's motion to compel unredacted licensing information. *Id.* D.I. 252.

### 3.    The Present Litigation

On April 23, 2025, Arm notified Apple that it may be required to produce certain information to Qualcomm including certain Apple agreements. (Declaration of H. Cannom "Cannom Decl." ¶ 3.)) On May 5, 2025, Apple asked for a list of the documents that Arm intended to produce, copies of any documents, and a copy of the relevant discovery requests, and conveyed its understanding that Apple's time to seek a PO would not start until it received that information. (*Id*. ¶ 4.)) To date, ▮▮▮ (D.I. 84, ¶ 51(c), Cannom Decl. ¶ 5.)

Nevertheless, since then, Apple has worked with the parties to avoid motion practice. For example, on June 15, June 16, and July 1, at Apple's initiation, Apple requested identification of what, if any, Apple CBI Qualcomm was requesting from Arm, and the relevance of that information; and sought to explore whether Qualcomm would accept more targeted, less sensitive discovery to confirm (or refute) its allegations. (*Id.* ¶ 6.) Qualcomm was unwilling to share any specifics due to the redactions on the public docket, and did not engage on a resolution other than production of the unredacted Apple agreements. (*Id.* ¶ 7.) On these calls, Qualcomm also refused to provide Apple with *any* information about the provisions of the Arm-Qualcomm agreements at issue in the litigation that would aid Apple in identifying less sensitive, potentially responsive materials. (*Id.* ¶ 8.) As such, Apple has been unable to meaningfully engage on the scope and relevance of the Apple CBI at issue, or to propose an acceptable compromise.

On June 5, 2025, Apple sent a letter (D.I. 160) alerting the Court that, despite its best efforts, Apple did not know what Apple CBI was at issue, and flagging Apple's request to be heard in the event the Court was weighing production of any Apple CBI.

On June 23, 2025, Arm notified Apple that it intended to produce certain Arm technical documents containing Apple CBI, and Apple consented to production on July 3, 2025. (Cannom Decl. ¶ 9.) To date, Apple has received no further notifications by Arm of other Apple CBI it intends to produce. (*Id.* ¶ 10.)

On July 22, 2025, Apple requested that Arm provide Apple with notice if the Special Master set a discovery hearing. (Cannom Decl. ¶ 11.) Arm provided Apple that notice on July 30, 2025, and on August 1, 2025, Apple requested clarification of whether the parties' briefing implicated Apple materials and copies of that briefing. (*Id.* ¶ 12.) Apple again requested copies of the unredacted discovery briefing during a call to Qualcomm counsel on August 5, 2025. (*Id.* ¶ 13.) Qualcomm refused, and stated its objection to any participation by Apple in the Special Master hearing. (*Id.* ¶ 14.) The next day, Arm informed Apple that "Qualcomm's counsel at Paul Weiss is refusing to agree to Arm's redactions to Qualcomm's brief and is not proposing any

2

█████████████████████████████████

alternative redactions that would allow [Arm] to share Qualcomm's brief with [Apple]."[1] (Cannom Decl. ¶ 15.)

As a result, while Apple's timeline to seek a PO has not yet been triggered, Apple moves for a PO out of an abundance of caution and to ensure it has an opportunity to be heard alongside the Special Master's consideration of any request by Qualcomm to order production of Apple CBI. (*See* D.I. 84 at ¶¶ 51(c), 52.)

## Argument

Good cause exists for the Court to grant a protective order preventing the disclosure of the Apple agreements. Fed. R. Civ. P. 26(c); *Nuvia* Litigation D.I. 207, 252; *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1071 (3d Cir. 1984).

The party seeking discovery bears the burden of demonstrating the relevance of the information sought. *See Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, 2017 WL 4310221, at *4 (M.D. Pa. Sept. 28, 2017). Once that party has met the burden of showing relevance sufficient to justify discovery, the burden shifts to the party seeking the protective order to show why discovery should not be had.

1.    The ████████████████████████████████.

Qualcomm cannot meet its burden of showing that the Apple agreements are relevant to, or will lead to the discovery of admissible evidence in, this case. Qualcomm's relevance arguments were viewed skeptically in the *Nuvia* Litigation and are even more misplaced here. *See Nuvia* Litigation*,* D.I. 207, 252. Here, "[t]he issues involved in this contract dispute are not overly complex." (D.I. 134.) Qualcomm simply cannot credibly claim that it ████████████ ████████████████ to determine if Arm breached the Qualcomm-Arm ALA (*see, e.g.*, D.I. 211 at 6). *See, e.g. AdTrader, Inc. v. Google LLC,* 2021 WL 937559, at *2 (N.D. Cal. Mar. 12, 2021) (defendant's policies toward nonparty advertisers were irrelevant and not discoverable because they revealed nothing about defendant's compliance with contractual obligations owed to plaintiff under separate agreements).[2] Moreover, even if Qualcomm could identify some limited, relevant information in Arm's agreements with non-parties, Qualcomm fails to explain why it needs the *entirety* of *all versions* of these agreements, including pricing.[3] For example, based on publicly available allegations in the redacted Second Amended Complaint, Qualcomm

---

[1] ████████████████████████████████████████████████████
████████████████████████████

[2] To the extent that Qualcomm attempts to distinguish this case by citing to a heavily redacted paragraph in the Second Amended Complaint (*see* D.I. 211 at 11 citing D.I. 137 ¶ 76), Qualcomm's refusal to identify less burdensome means of obtaining this information is fatal to its demand for ████████████████████.

[3] Apple asked Qualcomm to accept information it seeks in another format, such as production of other documents or deposition. But Qualcomm refused. For example, during a July 1, 2025, call, Qualcomm maintained that it needs the entirety of the outgoing obligations in the ███████ ███████, which are the vast majority of the agreements and the most sensitive information therein. (Cannom Decl. ¶ 8.)

3

alleges Arm breached the Arm-Qualcomm ALA at least by failing to deliver the Arm Compliance Kit (ACK) tests and OOB configuration for which Arm would expect to see verification data, and certain ARM "patches" used in connection with verification. (*See e.g.*, Redacted FAC, D.I. 39 at ¶¶ 67, 69, 70, 74, 127.) Whether Arm failed to provide to Qualcomm any required deliverables does not necessitate delving into the entirety of the non-party agreements. Moreover, Qualcomm's demands ignores the substantial related discovery that Qualcomm already has from the *Nuvia* Litigation, and ignores that information about Apple's receipt of deliverables could be shared by much less intrusive means. (D.I. 39 at ¶¶ 78-83.)

In addition, the ███████████████████████████████████████████ ███████████████████████ (Kirby Decl. ¶ 6); *see also Nuvia Litigation*, D.I. 207. Comparison with ██████████ would not be instructive for Qualcomm on any issue, because ████████ ███████████████████████

Moreover, none of the arguments that Qualcomm has made in response to the other non-parties' protective order motions are availing. (*See* D.I. 211, 354, 356.) For example, Qualcomm fails to substantiate its assertion that the entire ███████████ must be produced and/or that less invasive discovery may be insufficient. Indeed, while Qualcomm seeks documents that show "whether such deliverables exist" (D.I. 211 at 9), "Arm's conduct in isolating [Qualcomm] from delivery" (*id.* at 10), or the "licensing offers" provided by Arm (*id.*), there are myriad less sensitive ways to provide such information.

**2.    Production of the ███████████████████████████████████████ ███████████████████████**

Even if the ███████████████ were of some marginal relevance to the present litigation (they are not), the risk of injury to Apple if they were produced is real, dire, and cannot be ignored. *See United States v. Dentsply Int'l, Inc.,* 187 F.R.D. 152, 160 n.7. ██████████ ███████████████████████████████████████. (Kirby Decl. ¶ 7.) Qualcomm cannot reasonably dispute this given that it will not even provide Apple's outside counsel unredacted access to documents related to the scope of the Arm-Qualcomm ALA. Indeed, the terms of the ███████████████████████████████████ ████████████████████████████████████████████████ (*Id.* ¶ 6.) Moreover, the ████████████████████████████████████████████████████████ █████████████████████████████████████████. (*Id.* ¶ 9.) ████████████████████████████████████████████████████████ ████████████████████████████████████ (*Id.* ¶ 10.) ███ ███████████████████████. *See American Standard Inc. v. Pfizer, Inc.,* 828 F.2d 734, 743 (Fed. Cir. 1987) ("Where proof of either relevance *or* need is not established, discovery is properly denied.") (emphasis in original).

Further, the ███████████████████████████████████████████ ████████████████████████████████████. This risk, especially to a non-party in a highly contentious litigation among its suppliers, cannot be overstated. *See Arconic Corp. v. Novelis Inc.,* Case No. 17-1434, 2021 WL 4479484, at *5 n.2 (W.D. Pa. Sept. 30, 2021). Inadvertent disclosure to Qualcomm of the trade secrets contained ████████████████████

4

[black redaction box]

[black redaction box]

. (Kirby Decl. ¶ 8.) The status quo is that Qualcomm should not have access to Apple's confidential information when negotiating its own contracts with ARM. It should not gain such access through litigation.

Finally, the protective order in this case cannot eliminate these substantial risks to Apple. Protective orders can be and are knowingly or inadvertently violated , and the harm from any violation here could not be remedied given the nature of the commercial terms and trade secrets at issue. *See Nuvia Litigation,* D.I. 207 [black redaction box]

[black redaction box]

"); *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 530 (D. Del. 2002) (recognizing potential harm to non-party of production notwithstanding outside counsel only provision of PO). Moreover, a protective order cannot protect against the valid security concerns that Apple has with the technical limitations of data security. In the past two years, Apple has been alerted to multiple instances of opposing outside law firms being hacked and Apple confidential information being compromised. The extreme sensitivity of these agreements—especially given their scant relevance—cautions against production here.

## Conclusion

Apple respectfully requests that the Court grant Apple's motion for a protective order.

Dated:  August 11, 2025

FISH & RICHARDSON P.C.

*/s/ Nitika Gupta Fiorella*
Susan E. Morrison (No. 4690)
Nitika Gupta Fiorella (No. 5898)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
morrison@fr.com
fiorella@fr.com

Hannah Cannom (*pro hac vice*)
Bethany Stevens (*pro hac vice*)
WALKER STEVENS CANNOM LLP
500 Molino Street, Suite 118
Los Angeles, California 90013
213-712-9145
hcannom@wscllp.com
bstevens@wscllp.com

*Attorneys for Non-Party Apple Inc.*

5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED, ET AL.,     ) | |
| ) | |
| Plaintiffs,     ) | |
| ) | |
| v.     ) | C.A. No. 1:24-cv-00490-MN |
| ) | |
| ARM HOLDINGS PLC,     ) | |
| ) | |
| Defendant.     ) | |
| ) | |

## DECLARATION OF HANNAH L. CANNOM IN SUPPORT OF
## NON-PARTY APPLE INC.'S MOTION FOR PROTECTIVE ORDER

I, Hannah L. Cannom, declare as follows:

1.      I am over the age of 18, and am a partner at Walker Stevens Cannom LLP, representing non-party Apple Inc. in this matter. If called as a witness, I could and would testify competently to the information set forth in this Declaration.

2.      I make this declaration in support of Non-Party Apple Inc.'s Motion for a Protective Order.

3.      On April 23, 2025, Arm notified Apple that it may be required to produce certain information to Qualcomm including certain Apple agreements.

4.      On May 5, 2025, Apple asked for a list of the documents that Arm intended to produce, copies of any documents, and a copy of the relevant discovery requests. Apple further conveyed its understanding that Apple's time to seek a PO would not start until it received that information.

5.      To date, in multiple telephone conversations and email communications, Arm has reiterated that it does not intend to produce the ███████████ .

6.      On June 15, June 16, and July 1, I initiated calls with Jennifer Ying, local counsel for Qualcomm. On those calls, I requested identification of what, if any, Apple CBI Qualcomm was requesting from Arm, and asked that Qualcomm provide the relevance of that information. I also asked Ms. Ying if Qualcomm would accept more targeted, less sensitive discovery to confirm (or refute) its allegations.

7.      Ms. Ying indicated that Qualcomm was unwilling to share any specifics due to the redactions on the public docket, and stated that she did not think that there was any resolution other than production of the unredacted Apple agreements.

8.      On these calls, Ms. Ying also refused to provide any information about the provisions of the Arm-Qualcomm agreements at issue in the litigation that would aid Apple in identifying less sensitive materials. For example, Apple asked Qualcomm to accept information it seeks in another format, such as production of other documents or deposition. But Qualcomm refused. For example, during our July 1, 2025, Ms. Ying maintained that Qualcomm needs the entirety of the outgoing obligations in the ██████████ .

9.      On June 23, 2025, counsel for Arm notified me that it intended to produce certain Arm technical documents containing Apple CBI. On behalf of Apple, I consented to production on July 3, 2025.

10.     To date, Apple has not received no further notifications by Arm.

11.     On July 22, 2025, I requested that counsel for Arm provide me with notice if the Special Master set a discovery hearing.

12.     Arm provided me with that notice on July 30, 2025, and on August 1, 2025, I requested clarification of whether the parties' briefing implicated Apple materials and copies of any briefing demanding Apple CBI.

13.     I reiterated that request for unredacted discovery briefing during a call with Ms. Ying on August 5, 2025.

14.     Ms. Ying refused, and stated Qualcomm's objection to any participation by Apple in the hearing before the Special Master.

2

15.     On August 6, 2025, counsel for Arm sent me an email that stated that "Qualcomm's counsel at Paul Weiss is refusing to agree to Arm's redactions to Qualcomm's brief and is not proposing any alternative redactions that would allow [Arm] to share Qualcomm's brief with [Apple]."

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 11th of August, 2025, at Los Angeles, California.

_____

Hannah L. Cannom
Walker Stevens Cannom LLP

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 24-490 (MN) |
| v. | ) ) | ███████████████ |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' LETTER IN OPPOSITION
TO NON-PARTY APPLE'S MOTION FOR A PROTECTIVE ORDER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

August 18, 2025

Dear Special Master Rychlicki,

Qualcomm submits this opposition to non-party Apple, Inc.'s ("Apple") Motion for a protective order (D.I. 377, "Motion").

## I.    Relevant Factual Background

Arm develops and licenses technology for CPUs compatible with its instruction-set architecture—instructions that allow hardware to interface with Arm-compliant software. D.I. 137 ¶43. Arm's business model revolves around two types of licenses: Architecture License Agreements ("ALAs") and Technology License Agreements ("TLAs"). A TLA grants the licensee the ability to purchase directly from Arm the Arm-designed "off-the-shelf" CPUs or other Arm-designed IP that the licensee can then incorporate into its own chips. *Id.* ¶51. On the other hand, an ALA grants the licensee the right to design custom CPUs that are compatible with the Arm instruction-set architecture and commercialize those CPUs in products that the licensee designs itself. *Id.* ¶¶44–50. Qualcomm has both an ALA and a TLA. *Id.* ¶3.

In the prior litigation, Arm alleged that Qualcomm and Nuvia breached the Nuvia ALA by not destroying certain Nuvia technology after Arm terminated the Nuvia ALA. C.A. No. 22-1146-MN ("Prior Litigation"), D.I. 1. To test whether Arm suffered any harm from this alleged breach, Qualcomm sought production of the ALAs and TLAs that Arm has with third parties. Prior Litigation, D.I. 27, 154 (RFPs. No. 27, 71). The Court found the materials to be directly relevant to Qualcomm's ability to test whether Arm had, in fact, suffered any harm from Qualcomm and Nuvia's conduct. Prior Litigation, D.I. 578 at 26:20–40:18.[1] But, because Arm refused to produce unredacted versions of the agreements, thereby preventing Qualcomm from being able to test Arm's theories of harm, the Court precluded Arm from presenting those theories at trial. *Id., see also* Prior Litigation, D.I. 588 at 98:16-101:24.

This litigation arises from Arm's conduct, including conduct that arose while the Prior Litigation was pending, under the Qualcomm ALA and TLA and including Arm's related tortious misconduct and unfair competition. Qualcomm asserts that Arm breached the Qualcomm ALA by failing to provide certain technology that Arm is required to give to Qualcomm. D.I. 137 ¶¶12–19, 78–94. These include materials to configure and update Arm test kits Qualcomm uses to ensure that its custom CPUs are compliant with the Arm ISA (the "ALA Deliverables"). *Id.* ¶78. Qualcomm believes that Arm provides these ALA Deliverables to other Arm partners (such as Apple) under their own respective ALAs, yet denied them to Qualcomm. These allegations relate

---

[1] Judge Hatcher initially granted Apple's first motion for a protective order because she believed the unredacted versions of ███████████ were of "marginal relevance." Prior Litigation, D.I. 207 at 1. Qualcomm objected, and Judge Noreika overruled them without prejudice. Critically, Judge Noreika stated that ███████████████████████████████████████ ████████████████████████████████ Mar. 7, 2024 Tr. at 46:6–12 (Ex. 1). She overruled the objections "for right now" because she could not "make a determination" as to relevance, but stated that Qualcomm could raise the issue at a later date once she understood Arm's theories of harm. *Id.* at 62:10–15. Once it became evident that ███████████ were relevant to test Arm's theories of harm, Judge Noreika precluded Arm from advancing certain theories at trial in light of its refusal to produce unredacted ALAs. Prior Litigation, D.I. 578 at 26:20–40:18.

1

to Qualcomm's claims, including breach of the ALA.  *Id.* ¶¶74-101, 167–168, 173–180. Qualcomm also asserts claims for breach of the covenant of good faith and fair dealing and Arm's violation of the California UCL based on Arm's refusal to negotiate in good faith regarding an extension of the Qualcomm ALA or for a license to future versions of the Arm Architecture. *Id.* ¶¶128–134, 181– 188, 204–212. ███████████████████████████████████████ ███████████████████████████████████████████. Qualcomm also alleges that Arm breached the Qualcomm TLA and the covenant of good faith and fair dealing by providing licensing quotes for certain Arm CPUs and peripherals at prices that are either inconsistent with ████████████████████████ in the Qualcomm TLA or are otherwise not commercially reasonable. *Id.* ¶¶20–28, 102–120, 181–188, 213–226.

Since January, Qualcomm has sought production of certain third-party agreements and communications relevant to these claims. Exs. 2-5.  Arm, however, did not notify Apple until April 23 "that it may be required to produce certain information to Qualcomm including certain Apple agreements." Mot. at 2.[2]  Apple reached out on April 24 and counsel conferred on April 28. Ying Decl., ¶¶2-3.  On that call, Qualcomm counsel explained that Qualcomm had requested unredacted ████████████████████████████████████████████████████. *Id.*, ¶3.  Thus, by at least April 28, Apple was aware that Qualcomm had served RFPs on Arm seeking these agreements.  Yet, Qualcomm never heard back until June 3, more than five weeks later.[3]  Then on June 5—more than three weeks after the Protective Order's twenty-one-day period had lapsed, *see* D.I. 84 ¶ 52—Apple wrote to Judge Noreika requesting that the Court deny any requests to produce Apple's confidential information (D.I. 160), but did not move for a protective order.  On July 14, Judge Noreika referred all discovery disputes to the Special Master. D.I. 332. It was not until August 11—three and a half months after receiving Arm's notice and after several other third parties filed motions—that Apple finally moved for a protective order.  D.I. 377.

Apple does not explain why it failed to move for a protective order earlier, despite being told by April 28 that █████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████ *See* Ying Decl., ¶6.  But even assuming Apple's motion is timely, it should be denied because the documents being sought are highly

---

[2] Apple did not include Arm's notice with its motion, and does not indicate what information Arm provided it.  Any uncertainty as to the "scope and relevance" of Apple confidential information that may be implicated is thus attributable to Arm.  Mot. at 2.  As between Arm, Apple, and Qualcomm, Qualcomm is in the worst position to understand the scope of responsive documents, all of which are in the sole possession, custody, and control of Arm and Apple.

[3] As noted in Qualcomm's email of June 11, counsel left various voicemails for each other between June 3 and June 4 but did not speak again until June 13.  Ying Decl., ¶¶4-5.  Contrary to counsel's characterizations of the conversations (*see* Mot. at 2), Qualcomm explained that the ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████ *Id.*, ¶6.  Ultimately, the parties could not reach agreement because ██████████████████████████████████████████████████ ████████████████████████████████████ *Id.*

2

relevant to Qualcomm's claims, and the "ATTORNEYS' EYES ONLY" designation is sufficient to protect Apple's confidential information.

## II.   Legal Standard

A court may issue a protective order only upon a showing of good cause. Fed. R. Civ. P. 26(c). The burden is on the non-party seeking a protective order to "show good cause by demonstrating a particular need for protection." *Cipollone* v. *Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* (citation omitted); *see also Signode Indus. Grp, LLC* v. *Polychem, LLC*, C.A. No. 22-519, D.I. 94 at 1-2 (D. Del. Aug. 10, 2022) (noting "specificity" requirement for granting protective order).

## III.   The Materials That Qualcomm Seeks are Relevant to Qualcomm's Claims

Apple contends that discovery related to Apple is irrelevant because contracts of non-parties are not relevant to Qualcomm's claims. *See* Mot. at 3 ("Qualcomm simply cannot credibly claim that it needs the ███████████████████████████████████████ ███████████. Apple is wrong. Indeed, questions of relevance are "broadly construed" and necessarily context specific. *Ameritas Life Ins. Corp.* v. *Wilmington Sav. Fund Soc'y*, 2024 WL 4417096, at *1 (D. Del. Oct. 4, 2024) ("Relevance is broadly construed and determined in relation to the facts and circumstances of each case."). And Apple's motion entirely overlooks the nature of Qualcomm's claims that ████████████████████████████████████████ ██████.[4]



**A.** ██████████████████████████████████████ **are Relevant.**

███████████████████████████ ██████████████ are relevant to Qualcomm's claims that Arm breached the Qualcomm TLA and the covenant of good faith and fair dealing in connection with quotes Arm gave to Qualcomm for certain Arm-designed CPUs and peripheral IP. D.I. 137 ¶¶102-127, 181-188. The Qualcomm TLA ███████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ █████████████████████████ Similarly, Arm's agreements governing peripheral IP are relevant to Qualcomm's claim that Arm's quote to Qualcomm for peripheral IP was not commercially reasonable. In other words, production of Arm's agreements with pricing information for Arm-designed CPUs and peripheral IP is necessary for Qualcomm to prove its claims. █████ ████████████████████████████████████████ ████████████████████████████████████████

---

[4] In addition to the ████████████████████████ ███████████████████████████████ (Ex. 5 (RFP 192)), ████████████████████████████████████████ ████████████████████████████████████████ █████████████████████

3

███████████████████████████████████████████    *See supra,* n.3.

**B.** ████████████████████████████    **are Relevant**

Several of Qualcomm's claims are premised on Arm withholding ALA Deliverables that Arm is required to provide to Qualcomm under its ALA. D.I. 137 ¶¶74-101, 167–168, 173–180, 181– 188, 204–212. ████████████████████████ ████████ are thus relevant to showing whether Arm has provided these deliverables to other ALA licensees but not Qualcomm. Based on redacted agreements produced in the Prior Litigation, Qualcomm understands that Arm's ALAs with other licensees often contain identical or similar language to that of the Qualcomm ALA, including the requirement that Arm provide the ALA Deliverables. Therefore, Arm's provision of ALA Deliverables to other ALA licensees such as Apple (one of Qualcomm's biggest competitors), but not Qualcomm, despite materially similar contractual language is relevant to proving that Arm's withholding breached the Qualcomm ALA and caused damages.

████████████████████ are also relevant to Qualcomm's breach of good faith and fair dealing and UCL claims. ████



**C. Apple Has Not Demonstrated Any Specific Risk of Harm**

To establish good cause for a protective order, Apple must show a "particular need for

█████████████████████████████████████████████████████████████

protection" rather than merely "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Cipollone*, 785 F.2d at 1121.  It cannot do so.

███████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████. *See Finjan, Inc. v. Rapid7, Inc.*, C.A. No. 18-1519, D.I. 173, at 5 (D. Del. Aug. 7, 2020) ("As to commercially sensitive information allegedly in the [Third-Party] Documents, the case Protective Order fully addresses [the Third Party]'s concerns. That Protective Order provides for the production of documents on an outside counsel eyes' only basis.") (Ex. 9); *Del. Display Grp. LLC v. Lenovo Grp. Ltd.,* 2016 WL 720977, at *6 (D. Del. Feb. 23, 2016) ("The sensitive information is protected from further disclosure by the Protective Order."); *Minerva Surgical, Inc. v. Hologic, Inc.*, C.A. No. 18-217, D.I. 191, 5 (D. Del. Oct. 11, 2019) ("Hologic's concerns regarding the 'sensitivity' of the documents are readily addressed by a proper designation pursuant to the Protective Order in this case.") (Ex. 10).

Apple does not dispute that the Protective Order allows for "Attorneys' Eyes Only" (D.I. 84 ¶¶45–46), but presupposes that Qualcomm's outside counsel will violate the Protective Order. This designation provides strong protection from disclosure of Apple's confidential information to Qualcomm. Despite Apple's assertion that "[p]rotective orders can be and are knowingly or inadvertently violated" (Mot. at 5), Apple provides no basis or evidence to support such unfounded speculation with respect to any hypothetical violations in this case.[6] *See* Ex. 1 (Prior Litigation, Mar. 7, 2024 Hr'g Tr.) at 44:14–23 (noting that it was "quite an accusation" to suggest that this designation wouldn't sufficiently protect sensitive information); *Procter & Gamble Co. v. Boyle-Midway, Inc.*, C.A. No. 82-671, 1983 WL 830080, at *1 (D. Del. Apr. 11, 1983) ("The Court simply will not indulge in the speculation that attorneys will violate a protective order issued by a court[.]").

Although Apple cites a handful of cases to suggest that confidentiality designations are not sufficient, those cases stand, at most, for the uncontroversial proposition that designating materials as highly confidential does not justify production where the Court is not convinced that the materials sought are relevant.[7] *Mannington Mills Inc.* v. *Armstrong World Industries, Inc.*, 206 F.R.D. 525, 532 (D. Del. 2002) (indicating materials were not relevant); *Arconic Corp. v. Novelis Inc.*, 2021 WL 4479484, at *5 n.2 (W.D. Pa. Sept. 30, 2021) (denying discovery "not relevant or proportional to the needs of the case"). Here, by contrast, the materials are plainly relevant, and Apple offers no non-speculative reason for why the confidentiality designation is insufficient.  Nor could it, as Qualcomm's outside counsel has had possession of ████████████████

---

[6] Apple says "[i]n the past two years, Apple has been alerted to multiple instances of opposing outside law firms being hacked and Apple confidential information being compromised[,]" (Mot. at 5) but that has nothing to do with Qualcomm counsel.

[7] Apple also cites Judge Hatcher's Order in the Prior Litigation granting its motion for a protective order (D.I. 207), but as stated *supra*, n. 1, Judge Noreika later acknowledged the relevance of such third-party agreements.

5

████████████████████████████████████. Apple does not contend that Qualcomm's outside counsel would treat the unredacted versions of Apple's agreements with any less caution.

Accordingly, Apple's motion should be denied, and its ████████████████ ████████████████████████████████.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

Word Count: 2398

Encls.

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,　　　　　)
　a Delaware corporation; and　　　　　)
QUALCOMM TECHNOLOGIES, INC.,　　)
　a Delaware corporation,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　　)　　C.A. No. 24-490 (MN)
　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
ARM HOLDINGS PLC., f/k/a ARM LTD.,　)
　a U.K. corporation,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　　　)

**DECLARATION OF JENNIFER YING IN SUPPORT OF PLAINTIFFS' OPPOSITION
TO NON-PARTY APPLE'S MOTION FOR A PROTECTIVE ORDER**

I, Jennifer Ying, state as follows:

1.　　　I am an attorney at MORRIS, NICHOLS, ARSHT & TUNNELL LLP, counsel for

Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Qualcomm"

or "Plaintiffs") in the above-captioned matter.  I am duly licensed to practice in the State of

Delaware.  I make this declaration based on my personal knowledge, except where otherwise

stated, and if compelled to testify, I could and would competently testify to the matters herein.

2.　　　On April 24, 2025, I received an email from Hannah Cannom in which Ms. Cannom

stated that Apple understood that Qualcomm "may seek the production of Apple CBI including

potentially the Apple ALAs in this case" and sought to meet and confer.  Ex. A at 5-6 (April 24,

2025 email from H. Cannom).

3.　　　I responded to Ms. Cannom on April 25, and I spoke with Ms. Cannom on April

28, 2025.  Ex. A at 5.  On the April 28, 2025 call with Ms. Cannom, I explained that Qualcomm

served discovery requests on Arm back in January 2025 seeking production of ███████████

██████████████████████████  To determine whether Apple had any such relevant

**A092**

agreements, I asked Ms. Cannom to confirm whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ Ms. Cannom stated that she would consult with her client to see if she could answer those questions and would get back to me.

4.      I received a voicemail from Ms. Cannom on June 3, 2025 and a second voicemail on June 4, 2025.  I attempted to call Ms. Cannom back, and left a voice message for Ms. Cannom on June 4, 2025 at 5:03 p.m. Eastern Time.  *See* Ex. A at 3-4 (June 11, 2025 emails).

5.      I did not hear further from Ms. Cannom until June 11, 2025.  *See* Ex. A at 4-5 (June 11 emails).  I attempted to speak with Ms. Cannom on June 11 in response to her email.  I left another voice message and sent a follow up email.  *See* Ex. A at 3 (June 11, 2025 email).

6.      Ms. Cannom and I spoke again on June 13 and on June 16.  *See* Ex. B at 1-2.  In those conversations, I explained to Ms. Cannom that her offer of producing redacted TLAs and ALAs that redacted pricing information would not be sufficient because of the nature of Qualcomm's claims in this case.  Ms. Cannom and I spoke again on June 23 and July 1 (*see* Ex. A at 1), but no agreement was reached and Apple did not provide any further proposal.

7.      Ms. Cannom and I spoke again on August 4 and 5.  Ex. C.  In those conversations, I explained that Qualcomm could not share its August 1, 2025 submission to the Special Master without consent, including consent from Arm.

8.      My colleague, Travis Murray, spoke with Ms. Cannom on August 11, 2025 on three separate occasions.  In the first conversation at 1:30 p.m. Eastern Time, Ms. Cannom raised the idea of a potential deposition and/or production of other, unspecified, documents.  In the second conversation at 2:10 p.m. Eastern Time, Ms. Cannom further clarified that she was suggesting a deposition of Apple, but stated that she had not received authority from Apple to confirm this offer.

2

Mr. Murray then had a third conversation with Ms. Cannom at 4:15 p.m. Eastern Time and confirmed that Qualcomm would oppose Apple's motion for a protective order.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my present knowledge and belief.

Dated:  August 18, 2025               /s/ Jennifer Ying
                                      Jennifer Ying (#5550)

3

# EXHIBIT A

| | |
|---|---|
| **From:** | Ying, Jennifer |
| **To:** | Hannah Cannom; Blumenfeld, Jack |
| **Cc:** | Nitika Fiorella; Bethany Stevens |
| **Subject:** | Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple |
| **Date:** | Monday, June 30, 2025 4:01:52 PM |

Hi Hannah

Let's do 8:30am PT / 11:30am ET tomorrow morning. I'm at 302 351 9243.


Thanks
Jen

---

**From:** Hannah Cannom <hcannom@wscllp.com>
**Sent:** Monday, June 30, 2025 3:56 PM
**To:** Ying, Jennifer <jying@morrisnichols.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>; Bethany Stevens <bstevens@wscllp.com>
**Subject:** [EXT] Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple


I could do either 8:30am or 10:30am PT tomorrow if either works for you?

---

**From:** Ying, Jennifer <jying@morrisnichols.com>

**Date:** Monday, June 30, 2025 at 12:54 PM

**To:** Hannah Cannom <hcannom@wscllp.com>, Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>

**Cc:** Nitika Fiorella <fiorella@fr.com>, Bethany Stevens <bstevens@wscllp.com>

**Subject:** Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Hi Hannah

What time does your deposition start? It might be easier to talk in the morning before the depo tomorrow.


Jen

---

**From:** Hannah Cannom <hcannom@wscllp.com>
**Sent:** Monday, June 30, 2025 3:53 PM
**To:** Ying, Jennifer <jying@morrisnichols.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>; Bethany Stevens <bstevens@wscllp.com>
**Subject:** [EXT] Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple


Jennifer, I'm in a deposition tomorrow afternoon but I think it will wrap by 4pm PT—is that too late for you?

---

**From:** Ying, Jennifer <jying@morrisnichols.com>
**Date:** Monday, June 30, 2025 at 12:02 PM
**To:** Hannah Cannom <hcannom@wscllp.com>, Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>, Bethany Stevens <bstevens@wscllp.com>
**Subject:** RE: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

HI Hannah

I can be available tomorrow afternoon – what time works for you?

Jen

---

**From:** Hannah Cannom <hcannom@wscllp.com>
**Sent:** Monday, June 30, 2025 11:11 AM
**To:** Ying, Jennifer <jying@morrisnichols.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>; Bethany Stevens <bstevens@wscllp.com>
**Subject:** [EXT] Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Jennifer, do you have a few minutes tomorrow or Wednesday to connect by phone?

Thanks,
Hannah

---

**From:** Hannah Cannom <hcannom@wscllp.com>
**Date:** Friday, June 13, 2025 at 4:33 PM
**To:** Ying, Jennifer <jying@morrisnichols.com>, Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>, Bethany Stevens <bstevens@wscllp.com>
**Subject:** Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Jennifer, I just lost you again. Let's connect Monday morning when you've got better reception. Can we speak at 8am PT?

Thanks,
Hannah

---

**From:** Ying, Jennifer <jying@morrisnichols.com>
**Date:** Friday, June 13, 2025 at 4:18 PM
**To:** Hannah Cannom <hcannom@wscllp.com>, Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>, Bethany Stevens <bstevens@wscllp.com>

**Subject:** Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Hi Hannah

I just left you a voice message. Give me a ring when you have some time.

Thanks
Jennifer

---

**From:** Hannah Cannom <hcannom@wscllp.com>
**Sent:** Thursday, June 12, 2025 3:38:07 PM
**To:** Ying, Jennifer <jying@morrisnichols.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>; Bethany Stevens <bstevens@wscllp.com>
**Subject:** [EXT] Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Jennifer, thanks. I received your voicemail from last night, but didn't receive one from you on 6/4/25.

Let's please find time on Friday. I'll be in my office on and off calls tomorrow, so you're welcome to give me a call at your convenience at 213-337-9972, or we can schedule a time to talk if that's easier for you. Let me know what works best, and I'll make myself available.

Best,
Hannah

---

**From:** Ying, Jennifer <jying@morrisnichols.com>
**Date:** Wednesday, June 11, 2025 at 5:50 PM
**To:** Hannah Cannom <hcannom@wscllp.com>, Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>, Bethany Stevens <bstevens@wscllp.com>
**Subject:** Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Hannah, I just left another voice mail on your cell phone this evening.  If we can arrange for a time to chat, that would be great. I will be in trial all day tomorrow but will have time on Friday  while the jury is deliberating.

Thanks
Jennifer

---

**From:** Ying, Jennifer <jying@morrisnichols.com>
**Sent:** Wednesday, June 11, 2025 8:47 PM
**To:** Hannah Cannom <hcannom@wscllp.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>; Bethany Stevens <bstevens@wscllp.com>

**Subject:** Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Hi Hannah

I left the voice mail for you at 310 339 2127 on June 4 at 5:03pm Eastern time.

We just got out of our charge conference and I will give you a ring in just a minute.

Best
Jennifer

---

**From:** Hannah Cannom <hcannom@wscllp.com>
**Sent:** Wednesday, June 11, 2025 1:17 PM
**To:** Ying, Jennifer <jying@morrisnichols.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>; Bethany Stevens <bstevens@wscllp.com>
**Subject:** [EXT] Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Jennifer, thanks for getting back to me. I have no record of receiving a voicemail from you on my work or cell on 6/4—do you know on what number you left the VM?

In any event, I'm on my cell this afternoon—310-339-2127. I'll look for your call this afternoon.

Best,
Hannah

---

**From:** Ying, Jennifer <jying@morrisnichols.com>
**Date:** Wednesday, June 11, 2025 at 10:05 AM
**To:** Hannah Cannom <hcannom@wscllp.com>, Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>, Bethany Stevens <bstevens@wscllp.com>
**Subject:** Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Hannah

I am in trial this week and I will give you a call as soon as I get out of my trial day.

For the record, I also left you a voicemail on June 4 in response to your June 3 and June 4 voicemails and did not hear back until today.

Thank you
Jennifer

---

**From:** Hannah Cannom <hcannom@wscllp.com>
**Sent:** Wednesday, June 11, 2025 12:59 PM
**To:** Ying, Jennifer <jying@morrisnichols.com>; Blumenfeld, Jack

<[JBlumenfeld@morrisnichols.com](mailto:JBlumenfeld@morrisnichols.com)>
**Cc:** Nitika Fiorella <[fiorella@fr.com](mailto:fiorella@fr.com)>; Bethany Stevens <[bstevens@wscllp.com](mailto:bstevens@wscllp.com)>
**Subject:** [EXT] Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Jennifer,

I write in furtherance of my voicemails from 6/3, 6/4, and today offering to discuss the demand in party discovery for documents containing Apple CBI so that we can look for a resolution here.

Please let me know your availability to discuss.

Best,
Hannah
**Hannah Cannom**
**WSC LLP**
(213) 337-9972 | [hcannom@wscllp.com](mailto:hcannom@wscllp.com)


**From:** Ying, Jennifer <[jying@morrisnichols.com](mailto:jying@morrisnichols.com)>
**Date:** Thursday, April 24, 2025 at 2:17 PM
**To:** Hannah Cannom <[hcannom@wscllp.com](mailto:hcannom@wscllp.com)>, Blumenfeld, Jack <[JBlumenfeld@morrisnichols.com](mailto:JBlumenfeld@morrisnichols.com)>
**Cc:** Nitika Fiorella <[fiorella@fr.com](mailto:fiorella@fr.com)>, Bethany Stevens <[bstevens@wscllp.com](mailto:bstevens@wscllp.com)>
**Subject:** RE: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Hannah,

We disagree that Qualcomm is obligated to notify Apple of any discovery disputes it has with Arm. To the extent the disputes relate to Arm's production of documents containing Apple confidential information, that is an issue between Arm and Apple.

In any event, we can be available on Monday, April 28 at 4pm ET / 1pm PT.  Please send a dial-in.

Thank you,
Jennifer

**From:** Hannah Cannom <[hcannom@wscllp.com](mailto:hcannom@wscllp.com)>
**Sent:** Thursday, April 24, 2025 12:02 PM
**To:** Ying, Jennifer <[jying@morrisnichols.com](mailto:jying@morrisnichols.com)>; Blumenfeld, Jack <[JBlumenfeld@morrisnichols.com](mailto:JBlumenfeld@morrisnichols.com)>
**Cc:** Nitika Fiorella <[fiorella@fr.com](mailto:fiorella@fr.com)>; Bethany Stevens <[bstevens@wscllp.com](mailto:bstevens@wscllp.com)>
**Subject:** [EXT] 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Jennifer, Jack,

We understand that your letter to the Court requesting a briefing schedule and hearing on a forthcoming motion to compel (Dkt. No. 105) may seek the production of Apple CBI including potentially ▮▮▮▮▮▮▮▮▮▮▮▮. Can you please confirm whether Qualcomm is seeking the

███████  as part of its forthcoming motion to compel?

If so, please let us know your availability to meet and confer here. We can be available on Friday, April 25 any time or Monday, April 28 any time except between 11am and 1pm PT. In the meantime, Apple objects to the production of any Apple CBI including ████████████████ ████ and we are disappointed that the parties have not engaged with us as a non-party to notify us of the dispute.

Thank you,
Hannah
**Hannah Cannom**
**WSC LLP**
(213) 337-9972 | hcannom@wscllp.com

---

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

# EXHIBIT B

| From: | Ying, Jennifer |
|---|---|
| To: | Hannah Cannom; Blumenfeld, Jack |
| Cc: | Nitika Fiorella; Bethany Stevens |
| Subject: | Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple |
| Date: | Friday, June 13, 2025 8:02:36 PM |

Hi Hannah. Yes 11am ET/8am PT should work. Please call me at 302 351 9243 and we can continue our conversation. Thank you and have a nice weekend!

---

**From:** Hannah Cannom <hcannom@wscllp.com>

**Sent:** Friday, June 13, 2025 7:33:26 PM

**To:** Ying, Jennifer <jying@morrisnichols.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>

**Cc:** Nitika Fiorella <fiorella@fr.com>; Bethany Stevens <bstevens@wscllp.com>

**Subject:** [EXT] Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Jennifer, I just lost you again. Let's connect Monday morning when you've got better reception. Can we speak at 8am PT?

Thanks,
Hannah

---

**From:** Ying, Jennifer <jying@morrisnichols.com>

**Date:** Friday, June 13, 2025 at 4:18 PM

**To:** Hannah Cannom <hcannom@wscllp.com>, Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>

**Cc:** Nitika Fiorella <fiorella@fr.com>, Bethany Stevens <bstevens@wscllp.com>

**Subject:** Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Hi Hannah

I just left you a voice message. Give me a ring when you have some time.

Thanks
Jennifer

---

**From:** Hannah Cannom <hcannom@wscllp.com>

**Sent:** Thursday, June 12, 2025 3:38:07 PM

**To:** Ying, Jennifer <jying@morrisnichols.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>

**Cc:** Nitika Fiorella <fiorella@fr.com>; Bethany Stevens <bstevens@wscllp.com>

**Subject:** [EXT] Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Jennifer, thanks. I received your voicemail from last night, but didn't receive one from you on 6/4/25.

Let's please find time on Friday. I'll be in my office on and off calls tomorrow, so you're welcome to give me a call at your convenience at 213-337-9972, or we can schedule a time to talk if that's easier for you. Let me know what works best, and I'll make myself available.

Best,
Hannah

**From:** Ying, Jennifer <jying@morrisnichols.com>
**Date:** Wednesday, June 11, 2025 at 5:50 PM
**To:** Hannah Cannom <hcannom@wscllp.com>, Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>, Bethany Stevens <bstevens@wscllp.com>
**Subject:** Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Hannah, I just left another voice mail on your cell phone this evening.  If we can arrange for a time to chat, that would be great. I will be in trial all day tomorrow but will have time on Friday  while the jury is deliberating.

Thanks
Jennifer

---

**From:** Ying, Jennifer <jying@morrisnichols.com>
**Sent:** Wednesday, June 11, 2025 8:47 PM
**To:** Hannah Cannom <hcannom@wscllp.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>; Bethany Stevens <bstevens@wscllp.com>
**Subject:** Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Hi Hannah

I left the voice mail for you at 310 339 2127 on June 4 at 5:03pm Eastern time.

We just got out of our charge conference and I will give you a ring in just a minute.

Best
Jennifer

---

**From:** Hannah Cannom <hcannom@wscllp.com>
**Sent:** Wednesday, June 11, 2025 1:17 PM
**To:** Ying, Jennifer <jying@morrisnichols.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>; Bethany Stevens <bstevens@wscllp.com>
**Subject:** [EXT] Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

2
**A104**

Jennifer, thanks for getting back to me. I have no record of receiving a voicemail from you on my work or cell on 6/4—do you know on what number you left the VM?

In any event, I'm on my cell this afternoon—310-339-2127. I'll look for your call this afternoon.

Best,

Hannah

---

**From:** Ying, Jennifer <jying@morrisnichols.com>
**Date:** Wednesday, June 11, 2025 at 10:05 AM
**To:** Hannah Cannom <hcannom@wscllp.com>, Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>, Bethany Stevens <bstevens@wscllp.com>
**Subject:** Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Hannah

I am in trial this week and I will give you a call as soon as I get out of my trial day.

For the record, I also left you a voicemail on June 4 in response to your June 3 and June 4 voicemails and did not hear back until today.

Thank you

Jennifer

---

**From:** Hannah Cannom <hcannom@wscllp.com>
**Sent:** Wednesday, June 11, 2025 12:59 PM
**To:** Ying, Jennifer <jying@morrisnichols.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>; Bethany Stevens <bstevens@wscllp.com>
**Subject:** [EXT] Re: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party

Apple

Jennifer,

I write in furtherance of my voicemails from 6/3, 6/4, and today offering to discuss the demand in party discovery for documents containing Apple CBI so that we can look for a resolution here.

Please let me know your availability to discuss.

Best,

Hannah

**Hannah Cannom**

**WSC LLP**

(213) 337-9972 | hcannom@wscllp.com

**From:** Ying, Jennifer <jying@morrisnichols.com>
**Date:** Thursday, April 24, 2025 at 2:17 PM
**To:** Hannah Cannom <hcannom@wscllp.com>, Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>, Bethany Stevens <bstevens@wscllp.com>
**Subject:** RE: 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Hannah,

We disagree that Qualcomm is obligated to notify Apple of any discovery disputes it has with Arm. To the extent the disputes relate to Arm's production of documents containing Apple confidential information, that is an issue between Arm and Apple.

In any event, we can be available on Monday, April 28 at 4pm ET / 1pm PT.  Please send a dial-in.

Thank you,

Jennifer

**From:** Hannah Cannom <hcannom@wscllp.com>
**Sent:** Thursday, April 24, 2025 12:02 PM
**To:** Ying, Jennifer <jying@morrisnichols.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Nitika Fiorella <fiorella@fr.com>; Bethany Stevens <bstevens@wscllp.com>
**Subject:** [EXT] 1:24-cv-00490-MN - Qualcomm v. Arm - Request to M&C with non-party Apple

Jennifer, Jack,

We understand that your letter to the Court requesting a briefing schedule and hearing on a forthcoming motion to compel (Dkt. No. 105) may seek the production of Apple CBI including potentially the █████████████████. Can you please confirm whether Qualcomm is seeking the ████████ as part of its forthcoming motion to compel?

If so, please let us know your availability to meet and confer here. We can be available on Friday, April 25 any time or Monday, April 28 any time except between 11am and 1pm PT. In the meantime, Apple objects to the production of any Apple CBI including ██████████████ █████ and we are disappointed that the parties have not engaged with us as a non-party to notify us of the dispute.

Thank you,

Hannah

**Hannah Cannom**

**WSC LLP**

(213) 337-9972 | hcannom@wscllp.com

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended

recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

# EXHIBIT C

| | |
|---|---|
| **From:** | Hannah Cannom |
| **To:** | Ying, Jennifer; Bethany Stevens |
| **Subject:** | Re: [EXT] Voice Message Attached from HANNAH CANNOM +13103392127 |
| **Date:** | Tuesday, August 5, 2025 12:06:46 PM |

Jennifer, my call dropped. Can we join a zoom:

Join Zoom Meeting

https://us02web.zoom.us/j/81047888495?pwd=R3NdSRYWfxTxzKuPBwac7ENIwbew56.1

Meeting ID:  810 4788 8495

Passcode: 011261

---

One tap mobile
+16699006833,,81047888495#,,,,*011261# US (San Jose)
+16694449171,,81047888495#,,,,*011261# US

---

Dial by your location
- +1 669 900 6833 US (San Jose)
- +1 669 444 9171 US
- +1 253 215 8782 US (Tacoma)
- +1 346 248 7799 US (Houston)
- +1 719 359 4580 US
- +1 253 205 0468 US
- +1 689 278 1000 US
- +1 929 205 6099 US (New York)
- +1 301 715 8592 US (Washington DC)
- +1 305 224 1968 US
- +1 309 205 3325 US
- +1 312 626 6799 US (Chicago)
- +1 360 209 5623 US
- +1 386 347 5053 US
- +1 507 473 4847 US
- +1 564 217 2000 US
- +1 646 931 3860 US

Meeting ID:  810 4788 8495

Passcode: 011261

Find your local number: https://us02web.zoom.us/u/kdAeCDwEM

**From:** Ying, Jennifer <jying@morrisnichols.com>

**Date:** Monday, August 4, 2025 at 5:38 PM

**To:** Hannah Cannom <hcannom@wscllp.com>, Bethany Stevens <bstevens@wscllp.com>

**Subject:** Re: [EXT] Voice Message Attached from HANNAH CANNOM +13103392127

Hi Hannah

9am PT/12pm ET should work tomorrow.

Thanks

Jen

---

**From:** Hannah Cannom <hcannom@wscllp.com>

**Sent:** Monday, August 4, 2025 7:52:09 PM

**To:** Ying, Jennifer <jying@morrisnichols.com>; Bethany Stevens <bstevens@wscllp.com>

**Subject:** Re: [EXT] Voice Message Attached from HANNAH CANNOM +13103392127

Hi Jennifer, just tried you back. Can we find some time tomorrow morning to connect? How's 9am PT?

---

**From:** Ying, Jennifer <jying@morrisnichols.com>

**Date:** Monday, August 4, 2025 at 3:08 PM

**To:** Hannah Cannom <hcannom@wscllp.com>

**Subject:** Re: [EXT] Voice Message Attached from HANNAH CANNOM +13103392127

Hi Hannah

I just tried to call you back and received your voicemail. You can try reaching me at 302 351 9243.

Jen

---

**From:** webex_comm@webex.com <postmaster@vmail01-us.bcld.webex.com>

**Sent:** Monday, August 4, 2025 4:42:21 PM

**To:** Ying, Jennifer <jying@morrisnichols.com>

**Subject:** [EXT] Voice Message Attached from HANNAH CANNOM +13103392127



# You have a new voicemail

**Time:**          Monday, August 04, 2025 04:41 PM Eastern Daylight Time

**From:**          HANNAH CANNOM +13103392127

**To:**            Jennifer Ying 9243

**Duration:**      00:13

**Voice message transcription**

Hi Jennifer. This is Hannah Cannam calling regarding the Qualcomm matter. If you wouldn't mind giving me a call back, I would appreciate it. 310-339-2127. Thanks so much. Bye.

To listen to this message, open the attachment.

The Webex Team
Please do not reply to this email, as it is sent from an unmonitored address and responses will not be read.
Need help? **Go to Help center**

© 2024 Cisco and/or its affiliates. All rights reserved.     **Privacy Statement** | **Terms of Service**

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

# A113 - A127
# Redacted in Full

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
Delaware corporation,

      Plaintiffs,

   v.

ARM LTD., a U.K. corporation,

      Defendant.

C.A. No. 24-490-MN

████████████████

## ARM LTD.'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-52)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure; the District's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("Default Standard"), and Stipulation and Order governing ESI in this case (together with the Default Standard, the "ESI Order"); any Protective Order entered in this case (the "Protective Order"), the District of Delaware Local Civil Rules (together with the ESI Order and the Protective Order, the "Local Rules"), and any agreements by the parties or orders by the Court, Arm Ltd. ("Arm") submits the following responses and objections to Qualcomm Inc. and Qualcomm Technologies, Inc.'s (together "Qualcomm") First Set of Requests for Production of Documents and Things to Arm Ltd. (Nos. 1-52), dated January 21, 2025 (each a "Request" and collectively the "Requests").

## PRELIMINARY STATEMENT

1.    Arm's responses to the Requests ("Responses") are made in accordance with the Federal Rules of Civil Procedure and based upon information currently available to Arm.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as third party licenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

**REQUEST FOR PRODUCTION NO. 27:**

All ALAs and Annexes with Third Parties (*i.e.*, parties other than Qualcomm).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as third party licenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and

will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents and Communications concerning delivery of ███████████ ███████████████████████████, or any other technical improvement licensed under ALAs to third parties (*i.e.*, parties other than Qualcomm), including documents sufficient to show the licensee, the date of delivery, and the terms of any such delivery for any delivery that was not provided to Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as third party licenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the

**REQUEST FOR PRODUCTION NO. 34:**

All Documents and Communications concerning any negotiations that Arm had with TLA licensees (including Third Parties) for the ███████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████ , including but not limited to price quotes, license fees, licensing term limits, or other language to include in TLA Annexes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as documents concerning negotiations with third party licensees. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable

39

privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive regarding negotiation between ARM and TLA licensees. Arm objects to this Request because the phrases "TLA licensees" and "other language to include in the TLA Annexes" are vague, ambiguous, and undefined.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show the identity of Arm's licensees for the ██████████████████████ cores.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to either Party's claims or defenses, such as documents concerning negotiations with third party licensees. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client

40

privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive regarding negotiation between ARM and TLA licensees. Arm objects to this Request because the phrases "TLA licensees" and "other language to include in the TLA Annexes" are vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents and Communications related to or concerning Arm's October 22, 2024 letter to Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search through the use of agreed-upon search terms with agreed-upon custodians related to or concerning Arm's October 22, 2024 letter.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other

41

Dated: June 17, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


_/s/ Robert M. Vrana_
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 17, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
ejmorgan@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
  Delaware corporation

      Plaintiffs,

      v.

ARM HOLDINGS PLC, f/k/a, ARM LTD.
  a U.K. corporation

      Defendant.

C.A. No. 24-490-MN

███████████████

**ARM LTD.'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO
QUALCOMM'S SECOND SET OF REQUESTS FOR PRODUCTION (NOS. 53-120)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure; the District's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("Default Standard"), and Stipulation and Order governing ESI in this case (together with the Default Standard, the "ESI Order"); any Protective Order entered in this case (the "Protective Order"), the District of Delaware Local Civil Rules (together with the ESI Order and the Protective Order, the "Local Rules"), and any agreements by the parties or orders by the Court, Arm Ltd. ("Arm") submits the following responses and objections to Qualcomm Inc. and Qualcomm Technologies, Inc.'s (together "Qualcomm") Second Set of Requests for Production of Documents and Things to Arm Ltd. (Nos. 53-120), dated February 21, 2025 (each a "Request" and collectively the "Requests").

### PRELIMINARY STATEMENT

1.    Arm's responses to the Requests ("Responses") are made in accordance with the

**REQUEST FOR PRODUCTION NO. 57:**

All Documents and Communications relating to or concerning Arm's discussions with Qualcomm regarding licensing of the CoreLink ADB-400 AMBA Domain Bridge and and Cortex-A720 codenamed "▮▮▮▮," Cortex-A520 codenamed "▮▮▮▮" Cortex M55 codenamed "▮▮▮," Cortex-X925 codenamed "▮▮▮▮▮," the CPU codenamed "▮▮▮," Cortex-A720AE codenamed "▮▮▮▮▮", Cortex-A730 codenamed "▮▮▮", and Cortex-A725 codenamed "▮▮▮▮▮", including discussions regarding Arm potentially withholding the listed items, pricing of the items, term of the licenses, and any potential restrictions related to the use of the Arm products in Qualcomm's products, including in any chips that contained designs or source code that originated at Nuvia.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request, if any, and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses, such as licenses not at issue. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable

privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request because the term "withholding" is vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request No. 40.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show Arm's licensing offers to Qualcomm regarding the ███████████████████ cores.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses, such as licenses not at issue. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

10

Arm objects to this Request because the term "withholding" is vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request No. 40.

**REQUEST FOR PRODUCTION NO. 58:**

All Documents and Communications relating to or concerning any negotiations that Arm had with TLA licensees (including Third Parties) for the CoreLink ADB-400 AMBA Domain Bridge and and Cortex-A720 codenamed " █████ " Cortex-A520 codenamed " ████ ," Cortex M55 codenamed " █████ ," Cortex-X925 codenamed " ███████ " the CPU codenamed " ████ ," Cortex-A720AE codenamed " ██████ ", Cortex-A730 codenamed " ████ ", and Cortex-A725 codenamed " ██████ ", including but not limited to price quotes, license fees, licensing term limits, or other language to include in TLA Annexes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request, if any, and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses, including licenses not at issue. Arm objects to this Request as unduly burdensome and not proportional to the needs of the case to the extent it seeks production of all third-party TLAs and TLA Annexes. Arm objects to this Request to the extent it seeks

11

information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request because the term "negotiations" is vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request No. 34.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in Arm's possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show the identity of Arm's licensees for the ███████████ ████████ cores.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses, including licenses not at issue. Arm objects to this Request as unduly burdensome and not proportional to the needs of the case to the extent it seeks production of all

12

third-party TLAs and TLA Annexes. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request because the term "negotiations" is vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request No. 34.

**REQUEST FOR PRODUCTION NO. 59:**

All Documents and Communications relating to or concerning the withholding of software test libraries (STL) files or releases from Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request, if any, and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses, such as licenses not at issue. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract

13

**A144**

party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request because the phrase "architecture errata" is vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request No. 28.

**REQUEST FOR PRODUCTION NO. 71:**

All internal strategy documents relating to or concerning Arm's licensing plans for Safety Packages, as that term is used in Arm's TLA Annexes, or software test libraries for the Cortex A78AE and Cortex A55 cores, CoreLink ADB-400 AMBA Domain Bridge, and Cortex-A720 codenamed "████," Cortex-A520 codenamed "████," Cortex M55 codenamed "████" Cortex-X925 codenamed "████████" the CPU codenamed "████" Cortex-A720AE codenamed "██████", Cortex-A730 codenamed "████", and Cortex-A725 codenamed "██████", including but not limited to pricing strategy, license fees, licensing term limits, or other language to include in TLA Annexes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request, if any, and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll internal strategy documents" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses, such as licenses not at issue. Arm objects to this Request as unduly burdensome and not proportional to the needs of the case to the

24

extent it seeks production of all third-party TLAs and TLA Annexes. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request because the terms "strategy documents" and "licensing plans" are vague, ambiguous, and undefined.

**REQUEST FOR PRODUCTION NO. 72:**

All Documents and Communications relating to or concerning any Advanced Microcontroller Bus Architecture (AMBA) protocol information provided to other Arm licensees but not to Qualcomm.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request, if any, and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" concerning protocol information provided to "other Arm licensees" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses, such as licenses not at issue. Arm objects to this Request as unduly burdensome and not proportional to the needs of the case to the extent it seeks production of all third-party TLAs and TLA Annexes. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents

**REQUEST FOR PRODUCTION NO. 85:**

All Documents and Communications relating to or concerning Qualcomm's request for an evaluation license for the CPU codenamed "███████", including discussions of licensing fees, royalty pricing, licensing term limits, and proposed restrictions on Qualcomm's CPU engineering team's access to information concerning "██████".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request, if any, and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent that it calls for documents equally available to Qualcomm, in Qualcomm's possession, in the public domain, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive. Arm objects to this Request as duplicative of Request No. 40.

agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity.

**REQUEST FOR PRODUCTION NO. 100:**

All Documents and Communications related to or concerning the differences, improvements, enhancements, modifications, changes, or lack thereof between the Arm CPU codenamed " ███ " and the Cortex-X925 codenamed " ██████ ".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request, if any, and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses.

**REQUEST FOR PRODUCTION NO. 101:**

All Documents and Communications related to or concerning the marketing, sales, and promotion of the Arm v9 ISA, including marketing materials, Technology Advisory Board materials, internal communications concerning sales pitches to Arm partners, sales

materials, promotional materials, and sales or marketing PowerPoint decks used with partners.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 101:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request, if any, and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications . . . used with partners" regarding the requested subject matter. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses.

**REQUEST FOR PRODUCTION NO. 102:**

All Documents and Communications related to or concerning Arm's strategy and planning to encourage adoption by Arm partners and the Arm ecosystem of the Arm v9 ISA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 102:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request, if any, and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" concerning strategy and planning to encourage adoption by "Arm partners" regarding the requested subject

Dated: June 17, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

69

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 17, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
ejmorgan@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

**A151**

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC., a
Delaware corporation,

      Plaintiffs,

      v.

ARM HOLDINGS PLC, a U.K. corporation,

      Defendant.

C.A. No. 24-490-MN

█████████████

## ARM HOLDINGS PLC'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO QUALCOMM'S THIRD SET OF REQUESTS FOR PRODUCTION <u>(NOS. 121-156)</u>

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure; the District's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("Default Standard"), and Stipulation and Order governing ESI in this case (together with the Default Standard, the "ESI Order"); any Protective Order entered in this case (the "Protective Order"), the District of Delaware Local Civil Rules (together with the ESI Order and the Protective Order, the "Local Rules"), and any agreements by the parties or orders by the Court, Arm Holdings plc ("Arm") submits the following responses and objections to Qualcomm Inc. and Qualcomm Technologies, Inc.'s (together "Qualcomm") Third Set of Requests for Production of Documents and Things to Arm Holdings plc (Nos. 121-156), dated April 2, 2025 (each a "Request" and collectively the "Requests").

## PRELIMINARY STATEMENT

1.      Arm's responses to the Requests ("Responses") are made in accordance with the

**RESPONSE TO REQUEST FOR PRODUCTION NO. 122:**

Subject to its General Objections, any specific objections set forth below, and in accordance with the ESI Order, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show Arm's knowledge since January 1, 2022 that any Third Party with whom Qualcomm alleges interference is or has been a customer for Qualcomm CPUs or other products.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work- product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order.

**REQUEST FOR PRODUCTION NO. 123:**

All agreements licensing Arm Implementation Cores codenamed ███████████ ██████ including TLAs and corresponding Annexes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 123:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

7

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll agreements" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents related to Plaintiff's pending Motion for Leave to Amend the First Amended Complaint. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work- product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as duplicative of Request Nos. 34, 58, and 140.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 123:**

Subject to its General Objections and any specific objections set forth below, Arm will produce non-privileged and non-work product documents in its possession, custody, or control located through a reasonable, proportional, and targeted search sufficient to show the identity of Arm's licensees for the ██████████████████████ cores.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll agreements" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to

8

this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work- product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as duplicative of Request Nos. 34, 58, and 140.

**REQUEST FOR PRODUCTION NO. 124:**

All licensing fee and royalty information for licenses offered by Arm for Arm Implementation Cores codenamed ███████████████

**RESPONSE TO REQUEST FOR PRODUCTION NO. 124:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll agreements" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents related to Plaintiff's pending Motion for Leave to Amend the First Amended Complaint. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request as seeking

9

**REQUEST FOR PRODUCTION NO. 139:**

All Documents and Communications relating to or concerning the resources, including time allocation and funds spent, required for Arm to create ACK patches, in whole or in part, since January 1, 2022.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 139:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll Documents and Communications" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work- product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request because the term "resources" is vague, ambiguous, and undefined. Arm objects to this Request as duplicative of Request Nos. 31, 67, and 77.

**REQUEST FOR PRODUCTION NO. 140:**

All TLAs and corresponding Annexes entered into since January 1, 2019.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 140:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request and a relevant, reasonable time period applicable to the Request.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ll TLAs and corresponding Annexes" regarding the requested subject matter. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in that it is not limited to a relevant, reasonable time period. Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents related to Plaintiff's pending Motion for Leave to Amend the First Amended Complaint. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity. Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request as duplicative of Request No. 27.

**REQUEST FOR PRODUCTION NO. 141:**

All Documents and Communications sufficient to show deliverables that Arm claims it provided to Qualcomm, including ███████████████████████, but that Qualcomm alleges it did not receive pursuant to the Qualcomm ALA.

Dated: June 17, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

38

A160

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 17, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com

Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
mzappala@dirllp.com

Ruby J. Garrett
Erin J. Morgan
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
ejmorgan@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

# EXHIBIT 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>       Plaintiffs,<br><br>       v.<br><br>ARM HOLDINGS PLC, a U.K. corporation,<br><br>       Defendant. | C.A. No. 24-490-MN<br><br>███████████ |

### ARM HOLDINGS PLC'S OBJECTIONS AND RESPONSES TO QUALCOMM'S SEVENTH SET OF REQUESTS FOR PRODUCTION (NOS. 192-195)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure; the District's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("Default Standard"), and Stipulation and Order governing ESI in this case (together with the Default Standard, the "ESI Order"); any Protective Order entered in this case (the "Protective Order"), the District of Delaware Local Civil Rules (together with the ESI Order and the Protective Order, the "Local Rules"), and any agreements by the parties or orders by the Court, Arm Holdings plc ("Arm") submits the following responses and objections to Qualcomm Inc. and Qualcomm Technologies, Inc.'s (together "Qualcomm") Seventh Set of Requests for Production of Documents and Things to Arm Holdings plc (Nos. 192-195), dated June 9, 2025 (each a "Request" and collectively the "Requests").

### PRELIMINARY STATEMENT

1.     Arm's responses to the Requests ("Responses") are made in accordance with the Federal Rules of Civil Procedure and based upon information currently available to Arm.

1

## SPECIFIC RESPONSES AND OBJECTIONS TO REQUESTS

**REQUEST FOR PRODUCTION NO. 192:**

Any agreements or licenses between Arm and Apple resulting from the dissolution of the Arm Joint Venture with Apple, and all communications and documents relating to the negotiations and execution of any such agreement or license.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 192:**

Subject to its General Objections and any specific objections set forth below, Arm is willing to meet and confer with Qualcomm regarding the relevant scope of this Request, if any, and a relevant, reasonable time period applicable to the Request, if any.

Arm objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ny agreements or licenses" and "all communications and documents" regarding the requested subject matter. Arm objects to this Request to the extent it seeks production of documents not relevant to any Party's claims or defenses. Arm objects to this Request as seeking information that is protected by the attorney-client privilege, the work- product doctrine, the common interest privilege, or any other applicable privilege or immunity.  Arm objects to this Request to the extent it seeks information that Arm is restricted by law or contract from disclosing, such as information subject to a confidentiality agreement with a third party, and will not produce any such documents absent agreement of the third party(ies) or Court Order. Arm objects to this Request because the phrase "negotiations and execution" is vague, ambiguous, and undefined. Arm objects to this Request to the extent it seeks documents not in Arm's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 193:**

All agreements or licenses between Arm and Apple beyond the Technology License Agreement(s) and/or Architecture License Agreement(s) between Arm and Apple.

6

information subject to a confidentiality agreement with a third party, and will not produce any

such documents absent agreement of the third party(ies) or Court Order.


Dated:  June 9, 2025

OF COUNSEL:

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP


 */s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings PLC*

9

**A166**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 9, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Jack B. Blumenfeld
Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

# A169 - A187
# Redacted in Full

# EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| FINJAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1519-MN |
| | ) | |
| RAPID7, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND SPECIAL MASTER ORDER #2**</u>

Defendants Rapid7, Inc. and Rapid7 LLC (Rapid7) move to compel Plaintiff Finjan, Inc. (Finjan) to produce documents "regarding the relationship and patent acquisition and development agreement between Finjan's wholly owned subsidiary, Finjan Blue, Inc., and IBM ('IBM Documents')." D.I. 170 at 1. Using Judge Noreika's discovery dispute procedure, the parties filed letter briefing on this motion. D.I. 160 and 163. On July 8, 2020, the Court appointed this Special Master. D.I. 167; *see also* D.I. 164. The Special Master requested a letter brief from non-party IBM because IBM had asserted confidentiality objections to Finjan's production of the IBM Documents. D.I. 169. The Special Master also allowed Rapid7 to file a two-page reply. After receiving those letter briefs, the Special Master held a hearing on July 27, 2020 via WebEx videoconference, with a court reporter present.

For the reasons explained below, the Special Master grants Rapid7's motion to compel production of the IBM Documents from Finjan.

**BACKGROUND**

In August 2017, Finjan's subsidiary, Finjan Blue, Inc., announced a patent acquisition and development agreement with IBM. D.I. 161 at Ex. B. Finjan has introduced its relationship with

IBM and the Finjan Blue-IBM agreement at trials in prior lawsuits.[1]  Transcript at 20-21. According to Finjan, the relationship typically comes up at trial when Finjan lists licensees to Finjan's patents.[2]  *Id.*

Finjan produced to Rapid7 the final written agreement between Finjan Blue and IBM. But Rapid7 wanted more information about the agreement and the Finjan-IBM relationship to rebut any representations Finjan might make at trial about its relationship with IBM— representations that Finjan has made in past trials and apparently intends to make here.  Indeed, Finjan confirmed at the hearing that it will not agree to refrain from mentioning IBM at trial. Transcript at 21.

To get the documents it wanted, Rapid7 issued ESI requests to Finjan in January 2020. D.I. 160 at Ex. J.  Rapid7 and Finjan agreed on search terms that aim to return emails related to the Finjan-IBM relationship and the Finjan Blue-IBM agreement.  Transcript at 6-7.  Finjan ran these terms and has assembled the resulting documents for production.  The parties refer to these as the "IBM Documents."  Finjan does not object to producing the IBM Documents based on relevancy, burden, or any other basis.  D.I. 163 at 1.  In fact, Finjan at one point stated that it "intends to produce the IBM Documents, and has started the process to do so."  D.I. 160 at Ex. K.

Before producing the IBM Documents, however, Finjan needed IBM's permission or a court order.  D.I. 163 at 1.  Finjan sent a copy of all the IBM Documents to IBM in April 2020 and requested IBM's consent to produce them.  Transcript at 22-23.  IBM admits that it has had a copy of the IBM Documents since April, but IBM has not reviewed the documents in detail.  Transcript

---

[1] Neither side was able to point the Special Master to the earlier trials where Finjan mentioned its relationship with IBM.  Presumably, these earlier trials involved allegations of patent infringement.
[2] While none of the patents asserted in this case were acquired by Finjan from IBM, IBM has a license from Finjan for some of the asserted patents.  Transcript at 15-16.  Neither side noted which of the asserted patents have been licensed to IBM.

2

at 24-25. Based on its limited review, IBM believes that the requested documents "reflect IBM's negotiations with Finjan leading up to execution of the Patent Assignment and Support Agreement…and, as such, contain IBM information that is commercially sensitive and confidential to IBM." IBM's July 20, 2020 Letter Brief at 2. According to IBM, this information is "very sensitive to IBM's business of selling and assigning its patents and disclosure of this type of information to other entities risks irreparable harm to non-party IBM's ability to negotiate similar patent assignment transactions with others on fair and un-tainted terms." *Id*. IBM also argues that the discovery Rapid7 requested from Finjan is overbroad. IBM seeks to limit the production to documents dated after the execution of the Finjan Blue-IBM agreement. *Id*. at 3. Further, IBM asserts that the IBM documents are "ancillary and not important to resolving the issues in this case." *Id*.

Based on its objections, IBM instructed Finjan not to produce the IBM Documents. Transcript at 27-28. Finjan's only reason for not producing the IBM Documents is IBM's instruction not to produce them. Transcript at 18.

In two prior patent litigations, other defendants have requested the same or similar documents as Rapid7 seeks here. In *Finjan, Inc. v. Cisco Systems, Inc.*, C.A. No. 5:17-cv-72-BLF-SVK (N.D. Cal.), the court ordered Finjan to either produce the IBM Documents or refrain from referencing IBM at trial. D.I. 161 at Ex. D. Finjan elected to refrain from referencing IBM. D.I. 161 at Ex. E. In *Finjan v. SonicWall, Inc.*, C.A. No. 5:17-cv-4467-BLF-VDK (N.D. Cal.), the parties, along with IBM, negotiated a compromise whereby IBM would allow a focused deposition and declaration from IBM in lieu of Finjan's production of the IBM documents. IBM and Rapid7

3

agreed to the same compromise here, but Finjan objected because the fact discovery deadline had

expired on March 13, 2020 (D.I. 112).[3]

## DISCUSSION

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case, considering the importance of the issues at stake in the action,

the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit. Information within

this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P.

26(b)(1). Relevance is liberally construed to "encompass any matter that bears on, or that

reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the

case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

IBM asserts that the IBM Documents are not relevant. As an initial matter, IBM's standing

to make this objection is unclear. IBM has not cited any authority for the proposition that IBM

has such standing, particularly where, as here, the parties to the action do not dispute that the

requests seek relevant information and are not overbroad.

---

[3] At the hearing and in its letter brief, IBM stated its willingness to proceed with this negotiated compromise. Rapid7 also indicated it was willing to proceed with this compromise. Rapid7 filed a Proposed Order (D.I. 170-1), however, that did not mention this form of relief and requested only production of the IBM Documents or an order that Finjan was forbidden from referencing its relationship with IBM at trial. Further, Rapid7 has not served a deposition subpoena on IBM. Therefore, the Special Master is not in a position to order the parties to proceed with a deposition of IBM at this time.

4

But even if IBM had standing, the arguments made in IBM's letter brief would not carry the day. Finjan has agreed not to assert the patents-in-suit against IBM.[4] D.I. 160 at Ex. C, Section 3.0. Finjan plans to introduce this fact and its relationship with IBM at trial in this matter. The Court here could allow Finjan to introduce this relationship at trial in this case.[5] At least two courts let it in at past trials involving Finjan. Under these specific facts, the IBM documents, whether or not they are "ancillary," are within the liberal scope of discovery allowed by Rule 26.

As to commercially sensitive information allegedly in the IBM Documents, the case Protective Order fully addresses IBM's concerns. That Protective Order provides for the production of documents on an outside counsel eyes' only basis. D.I. 33 at ¶ 4. Rapid7 has agreed that Finjan can mark the IBM Documents "Confidential—Outside Counsel Only." Rapid7's July 23, 2020 Letter Brief at 2. When asked at the hearing, IBM's counsel essentially agreed that producing the IBM Documents "Confidential—Outside Counsel Only" would address IBM's concerns. Transcript at 32-33. The fact that Rapid7 does not appear to be a direct competitor of IBM further reduces any potential for harm to IBM.

IBM also argues that production of the IBM Documents in this case could result in production of these same documents in future litigations, which would let "the horse out of the barn so to speak." Transcript at 33. But no one knows what future actions may be brought, whether Finjan will inject its relationship with IBM into those actions, or whether defendants in those actions will seek the IBM Documents produced here. So IBM's concern seems somewhat

---

[4] During the hearing, Rapid7's counsel referred to this arrangement as a "cross license." Transcript at 15. Rapid7's letter brief labelled it a "covenant." D.I. 160 at 1.

[5] This is a decision on a motion to compel and not a decision on a motion in limine or an objection made at trial. The Special Master takes no position on whether statements made by Finjan about its relationship with IBM would be admissible or proper at trial.

5

speculative. And, even if IBM's concern comes to pass, Finjan has committed to seeking IBM's permission before producing the IBM Documents in any future litigation. Transcript at 34.

In any event, IBM should have foreseen when it entered into a patent acquisition and license agreement with Finjan that documents concerning that agreement and IBM's relationship with Finjan could be requested and produced in future patent litigations, especially a litigation such as this one involving the very patents that are a subject of the agreement. That is, IBM never should have expected this horse to stay in the barn.

Finally, complaints by either Finjan or IBM about the timing of Rapid7's requests are not compelling given the progress of this case to date. Rapid7 served its ESI requests on January 23, 2020, before the fact discovery deadline. Finjan initially agreed to produce the IBM Documents. Finjan does not object to producing the IBM Documents, even now. Finjan produced other emails and documents in response to Rapid7's ESI requests on May 13, 2020, well after the March 13, 2020 fact discovery deadline. Transcript at 23. Under these facts, Rapid7's requests were timely.

Consistent with the Memorandum Opinion above, the Special Master orders as follows:

(1) Rapid7's motion to compel is GRANTED insofar as it requests that Finjan produce the IBM Documents, and is otherwise DENIED WITHOUT PREJUDICE;

(2) Finjan shall produce the IBM Documents to Rapid7 on or before 6 p.m. Eastern on August 13, 2020; and

(3) To the extent Finjan withholds any of the IBM Documents on the basis of the attorney-client privilege, attorney work product, or any other privilege or protection, Finjan shall produce a log of the withheld documents, consistent with the requirements of Rule 26, on or before August 18, 2020.

6

**A194**

IT IS SO ORDERED.


Dated: August 6, 2020                    _____
                                         Special Master Chad S.C. Stover

**A195**

# EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MINERVA SURGICAL, INC.<br><br>      Plaintiff/Counterdefendant,<br><br>    vs.<br><br>HOLOGIC, INC. and CYTYC SURGICAL PRODUCTS, LLC,<br><br><br>      Defendants/counterclaimants. | **C.A. No. 18-00217-JFB-SRF**<br><br><br>**MEMORANDUM & ORDER** |

Defendants Hologic, Inc., and Cytyc Surgical Products, LLC (collectively, "Hologic") object to the Magistrate Judge's May 20, 2019, oral order (D.I. 152-2) denying Hologic's motion for a protective order as to certain 30(b)(6) deposition topics, requests for production of documents, and depositions of Hologic's employees. (D.I. 145). This is an action for patent infringement under 35 U.S.C. § 101, *et seq*.

I.     BACKGROUND

This is the second case between these parties relating to endometrial ablation technologies. The first case, *Hologic, Inc., et al. v. Minerva Surgical, Inc.*, C.A. No. 15-1031-JFB-SRF ("Minerva I"), involved Hologic's NovaSure CLASSIC device, and alleged infringement of U.S. Patent Nos. 6,872,183 ("the '183 Patent") and 9,095,348 ("the '348 Patent"). The Court granted Hologic's motion for summary judgment on the issue of infringement and the action proceeded to trial by a jury on the issue of Hologic's patent infringement damages and Minerva's Lanham Act and breach of contract claims (*Minerva I*, D.I. 407, 408 and 498). At trial, Hologic prevailed on the merits of Minerva's

1

Lanham Act false advertising and unfair competition claims.  *Id.*, D.I. 498.  In the present action, Minerva alleges infringement of U.S. Patent No. 9,186,208 ("the '208 patent") by Hologic's NovaSure ADVANCED device.

The discovery dispute between the parties involves testimony and discovery about communications with the Food and Drug Administration ("FDA") on efficiency rates and changes to Hologic's website regarding efficacy data.  Specifically, the dispute centers on Topics 14 and 23 of Hologic's motion for a protective order.[1]  D.I. 145.  Hologic moved for a protective order, arguing the topics of post-approval FDA communications and subsequent changes to Hologic's website had been found to be irrelevant in *Minerva I*, which involved broader issues than the patent infringement action asserted in this case.  In *Minerva I*, Minerva sought discovery on those topics in connection with the deceptive practices claim, which is not at issue in this case.

The Magistrate Judge found the requested discovery relevant to Minerva's burden of proof with respect to lost profits damages, impliedly adopting Minerva's argument that the efficacy rates and marketing were relevant to the nature of the market and competition in the market for determination of lost profits damages.  *Id*. at 20-23, 28.  The Magistrate Judge states:

> I agree that exploring the why in relation to the change in efficacy rates following communications with the FDA occurred.  Whether or not any of this information will ultimately be admissible at trial is another matter for another day, but I believe based on what I've read in the papers and what I've heard in this oral argument, that is relevant to Minerva's obligation to and burden of proof with respect to lost profits[.]

(*Id*. at 23)

---

[1] Also, at issue are Topic Nos. 15-17 and 19-20, Request for Production No. 28, and Third-Party Document Request Nos. 13-14.  Hologic conceded at the hearing that the resolution of Topics 14 and 23 would be dispositive of the remaining 30(b)(6) deposition topics and document requests at issue in Hologic's Objections. D.I. 152-2 at 23-24, 29-30.

2

Hologic objects to the Magistrate Judge's finding, arguing that the finding is clearly erroneous. It contends the efficacy data pertains to Hologic's prior art CLASSIC product (and earlier generations) and not specifically to the ADVANCED product at issue in this case and argues that the "[t]he Magistrate Judge appears to have overlooked the fact that the efficacy data Minerva seeks has nothing to do with any design differences between the prior art CLASSIC and the accused ADVANCED product." D.I. 152 at 7. It disputes Minerva's assertions that the discovery relates to lost profits, arguing that the request for discovery is a reformulation of its failed theories from *Minerva I*. It argues the efficiency data has nothing to do specifically with the accused product and, therefore, cannot possibly be relevant to a patent damages analysis, especially since none of the asserted claims of the '208 patent contain limitations about efficiency. It also challenges Minerva's assertion that the discovery is relevant to the issue of injunctive relief. Further, it contends that responding to the discovery requests would be unduly burdensome because the information is extremely sensitive and must be protected from inadvertent misuse.[2]

I.      LAW

The standard of review is governed by 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b). The Supreme Court has construed the statutory grant of authority conferred on magistrate judges under 28 U.S.C. § 636 to mean that nondispositive pretrial matters are governed by § 636(b)(1)(A) and dispositive matters

---

[2] Hologic's Objections also request a protective order with respect to "depositions of Hologic's employees," (D.I. 152 at 1, 5, 10). That issue was not raised at the May 20, 2019 discovery dispute hearing and will not be addressed by the court. *See Smith Int'l, Inc. v. Baker Hughes Corp.,* 2016 WL 6122927, at *2 (D. Del Oct. 19, 2016) (declining to consider evidence and materials not presented to the Magistrate Judge).

3

are covered by § 636(b)(1)(B).  *Gomez v. United States*, 490 U.S. 858, 873-74 (1989); *see also* Fed. R. Civ. P. 72(a).

"A district court may refer a nondispositive motion to a magistrate judge 'to hear and determine,'" under subparagraph (A) of § 636(b)(1).  *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (quoting 28 U.S.C. § 636(b)(1)(A)).  Following a magistrate judge's issuance of an order on a nondispositive matter, the parties may serve and file objections to the order within 14 days of being served with a copy of the order.  *Id.*; see Fed. R. Civ. P. 72(a).  "If a party objects to a magistrate judge's order regarding a nondispositive matter, the district court 'must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.'" *EEOC*, 866 F.3d at 99 (quoting 28 U.S.C. § 636(b)(1)(A)).  "This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo."  *Id*.

A Magistrate Judge's order is contrary to law when the magistrate judge has misinterpreted or misapplied the applicable law.  *See Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011).  A finding of fact can be set aside as clearly erroneous when the reviewing court is "left with the definite and firm conviction that a mistake has been committed."  *Green v. Fornario*, 486 F.3d 100, 104 (3d Cir. 2007).  The district court must accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.  *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).

4

III.    CONCLUSION

The Court finds the Magistrate Judge's decision is not clearly erroneous or contrary to law.  Based on her familiarity with this case, the Magistrate Judge committed no error in determining that the disputed discovery may be relevant to issues in the case or may lead to the discovery of relevant evidence.  The Court finds that Hologic confuses discoverability with admissibility.  For purposes of discovery, relevancy is broadly construed.  *See Pacitti v. Macy's*, 193 F.3d 766, 777–78 (3d Cir. 1999) (stating "[i]t is well recognized that the federal rules allow broad and liberal discovery").  Whether the information is admissible is a separate question.  Information within the scope of discovery as set forth in Federal Rule of Civil Procedure 26 "need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

The discovery materials appear tangentially relevant to Minerva's burden to prove lost profits in the context of market conditions and competitive relationships.  If the probative value of the evidence does not outweigh the danger of prejudice or possibility of confusion, the evidence will not be admitted at trial.  *Id*. (noting that the parties resisting discovery were "getting ahead of themselves" and that "[w]e are currently dealing with discovery, not the admission or weight of any evidence[.]").  Hologic's concerns regarding the "sensitivity" of the documents are readily addressed by a proper designation pursuant to the Protective Order in this case.  Accordingly,

IT IS ORDERED:

1.    The Magistrate Judge's oral order (D.I. 152-2) is affirmed.

2.    The defendants' objections (D.I. 152) are denied.

5

**A201**

3.    The Magistrate Judge's oral order is adopted in all respects.

DATED this 11th day of October, 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>   a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>   a Delaware corporation,<br><br>                    Plaintiffs,<br><br>        v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>   a U.K. corporation,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 24-490 (MN)<br><br>███████████████████ |

**PLAINTIFFS' LETTER TO SPECIAL MASTER RYCHLICKI
REGARDING SUBSEQUENT EVENTS RELATING TO MOTION TO COMPEL
PRODUCTION OF ARM'S ARCHITECTURE LICENSE AGREEMENTS**

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300


December 16, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
Ben Yenerall (#7132)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com
byenerall@morrisnichols.com

*Attorneys for Plaintiffs*

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
Jenifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 24-490 (MN) |
| v. | ) ) | ██████████████████ |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, | ) ) ) | ██████████████████ |
| Defendant. | ) ) | |

**PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI
REGARDING OUTSTANDING DISCOVERY DISPUTES**

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

**A207**

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

August 1, 2025

Dear Special Master Rychlicki:

In August 2022, Arm sued Qualcomm for developing unlicensed technology after Arm terminated agreements with Qualcomm subsidiary Nuvia. *Arm Ltd.* v. *Qualcomm Inc.*, C.A. 22-1146 (MN), D.I. 1 ¶ 78. Rather than waiting for resolution through litigation, Arm engaged in self-help, withholding licensed technology from Qualcomm, refusing to license other technology, and interfering with Qualcomm's customer relationships. D.I. 137 ("SAC"). Qualcomm filed this lawsuit. D.I. 2. In December 2024, the *Arm* v. *Qualcomm* jury found the Qualcomm CPUs licensed. C.A. 22-1146 (MN), D.I. 572 at 1.

## I.    Refusal to Produce Unredacted Third-Party Agreements



**TLAs.** Qualcomm needs Arm's TLAs and related agreements—and associated 30(b)(6) testimony (**RFPs 123, 140; Topics 2, 9**)[1]—to prove quotes Arm gave Qualcomm for Arm Cortex Implementation Cores (codenamed ██████████████████) violated the Qualcomm TLA, ██████████████████████████████████████. SAC ¶¶ 104-105; Ex. 8 ████████. Arm claims it based the October 2024 quote on ████████████ agreements. Ex. 9 at 23:1-24; Ex. 10 at 97:12-98:2; Ex. 11 at 65:24-72:9. Arm should produce all[2] agreements, so Qualcomm can test whether Arm based its ████████ ████ ██████████████████—and whether Arm's quotes for other IP violated the implied covenant of good faith and fair dealing. Arm should also produce a witness on the agreements' royalty rates.

████████████████████████████████████████████████ Ex. 12 at 2.[3] Arm's withholding based on mere "objections" is improper under the Protective Order. D.I. 84 ¶ 51. Arm's representation also is inaccurate: it has not produced agreements for several entities licensing these products, including ████████████████████████ ████████████████ ████████████████████). Finally, Arm improperly limits production to TLAs licensing ████████████████, but Qualcomm's claims allege Arm provided unreasonable quotes for other TLA IP. SAC ¶¶ 51, 102.

Arm also put these third-party agreements at issue by using the fact that Qualcomm has not seen third-party TLAs to cross-examine Qualcomm witnesses, asking whether they were aware of pricing of ████████████████ in third-party TLAs and whether the rates provided to Qualcomm were accepted by the industry. Ex. 20 at 106:6-107:22; Ex. 21 at 49:16-19, 53:8-22.

---

[1] "RFP" refers to Qualcomm's requests for production, Exhibits 1-4. "Topic" refers Qualcomm's Notice of Rule 30(b)(6) Deposition of Arm, Exhibit 5. "Interrogatory" refers to Qualcomm's interrogatories, Exhibits 6-7.

[2] With respect to ████'s agreements, Morris, Nichols, represents Qualcomm.

[3] ████████████████████████████████████████████████████ ████

Arm cannot challenge Qualcomm's knowledge of third-party pricing while simultaneously withholding it.

**ALAs.** Arm breached the Qualcomm ALA by withholding out-of-box packages ("OOBs") and Architecture Compliance Kit ("ACK") patches. SAC ¶¶ 173-180. Arm argues it was not obligated to deliver that technology, including because it is not ███████████ under the ALA. Ex. 22. Arm provided that technology to other licensees, Ex. 45 at 94:25-97:16, 126:8-127:4, thus, Qualcomm seeks to determine whether the definition of and obligation to deliver ████ ████████ is the same in those partners' ALAs.

Additionally, in May 2020, Qualcomm elected to extend the Qualcomm ALA to ████ ████████████████████████████████████████████████████. ████ ████████████████████████, *id.* ¶ 65; Ex. 23, yet Arm failed to respond to Qualcomm's election for five years, violating the implied covenant of good faith and fair dealing. Arm denies a breach, claiming it engaged in good faith negotiation even though Qualcomm's election was improper and ████████████████████████. Ex. 24. Qualcomm needs to review other ALAs to address Arm's defense.

In *Arm* v. *Qualcomm*, Arm produced limited heavily redacted ALAs, which are insufficient here. Qualcomm needs ***all*** unredacted ALAs and the annexes thereto (**RFP 27; Topics 2, 7**) to evaluate the scope of deliverables and rights of other licensees treated differently than Qualcomm. For example, the produced ALAs redact ████████████████████, Ex. 25 at 2, 4, 12, yet Arm argues it did not breach the Qualcomm ALA because the OOBs and ACK patches are ████████ ████████████████████ Ex. 22 at 6, 10. Arm also redacted all fee and royalty information, Ex. 25, and refused to produce ████████████████ (**RFP 162**), both necessary to test Arm's claim of good faith negotiation. At least ████████████████████████████████████ ████████████████████████████████████████████████.



As with the TLAs, Arm also questioned multiple Qualcomm witnesses regarding their knowledge of terms in third-party ALAs and whether those terms were comparatively advantageous to Qualcomm, while withholding the agreements that would allow Qualcomm to refute the implications of Arm's examinations. Ex. 20 at 57:2-18; Ex. 26 at 78:14-21, 80:12-21, 164:17-25. This is improper: Qualcomm must be allowed to probe Arm's defenses.

## II.    Improper Privilege Determinations

Arm withheld or redacted documents based on improper privilege assertions. The relevant documents should be produced and redactions should be lifted.

**Communications with FGS Global.** Qualcomm asserted claims arising from the leak by Arm's counsel (MoFo) and communications firm (FGS Global) to Bloomberg News of an October 22, 2024 letter Arm wrote to Qualcomm threatening to terminate Qualcomm's ALA. Arm and FGS Global assert communications about the leak are privileged (including "common interest") or work product. Exs. 29; 46 (FGS Emails). But generic "public relations services," including "[r]eviewing press coverage, making calls to various media to comment on developments in the litigation, and even 'finding friendly reporters,'" are not protected. *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 3140050, at *13-14 (D.N.J. July 22, 2021); *In re Riddell Concussion*

*Reduction Litig.*, 2016 WL 7108455, at \*9 (D.N.J. Dec. 5, 2016), *aff'd in relevant part*, 2017 WL 11633446 (D.N.J. Jan. 5, 2017). FGS was engaged by Arm, not its outside counsel.[4] Ex. 28 at 24:2-27:20, 57:17-23. And common interest privilege is merely "an extension of the attorney-client privilege or an exception to the waiver of that privilege." *10x Genomics, Inc.* v. *Celsee, Inc.*, 505 F. Supp. 3d 334, 337 (D. Del. 2020).

**Improper Date Cutoff.** Arm failed to log documents dated after the original April 2024 Complaint. The ESI Order required a privilege log of withheld documents generated prior to "the filing of the Complaint." D.I. 85 ¶ 1(e)(ii). The operative "Complaint" contemplated by the March 21, 2025 ESI Order was the December 16, 2024 First Amended Complaint. D.I. 36. Qualcomm's claims are partly based on post-April 2024 conduct, including Arm's October 22, 2024 letter. While Arm eventually logged 27 entries for "documents relating to Arm's communications with Bloomberg regarding the notice" and related follow up communications, D.I. 162 at 4, it otherwise refused to log withheld documents dated from April 18 and December 16, 2024. Ex. 29.

**Subject Lines Redactions.** Arm redacted for privilege subject lines for four meetings with outside counsel regarding the leak. Exs. 30-33. Arm also clawed back metadata revealing subject lines for 18 documents. Ex. 34. In addition to the subject lines not being privileged, the ESI Order contemplates a party challenging a privilege claim may "request metadata for individual documents and emails," D.I. 85 ¶ 1(e)(v)(1), and such metadata will include "Email Subject," *id.* ¶ 2(p).

## III.    Failure to Provide Discovery

Arm refused to produce documents or provide 30(b)(6) testimony on entire categories of relevant information, prejudicing Qualcomm.

### A.    Breach of Qualcomm ALA

**Withheld Technology.** In support of its ALA breach claim, Qualcomm requested documents regarding the technology and information Arm provided to other ALA licensees but not to Qualcomm, including, for example, versions of Arm's ACK from the relevant time period and any patches thereto (**RFP 6; Topic 14**); documents and communications regarding ACK patches (**RFPs 31, 67, 77, 139; Topic 14**) and OOBs (**RFPs 33, 67; Topic 14**). SAC ¶ 175.

Arm would only produce lists of technology made centrally available for licensee download on an Arm platform and technical documents it claims are "sufficient to show" the OOB and ACK patch development and timeline. Ex. 35 at 2, 7-8; Ex. 36 at 5; Ex. 37 at 18. But ACK patches and OOBs are not available on the platform in question and Qualcomm found no

---

[4] Arm's cases, Ex. 27, show no privilege attaches where the client, not a law firm, retains the PR firm. *In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 331 (S.D.N.Y. 2003) (no privilege for communications had client "hired Firm directly"); *Stardock*, *Sys., Inc.* v. *Reiche*, 2018 WL 6259536, at \*3, \*6 (N.D. Cal. Nov. 30, 2018).

3

documents in Arm's production showing the time and effort required to develop ACK patches and OOBs.  Thus, Qualcomm cannot investigate what Arm withheld and the impact to Qualcomm.

**Arm's Decision-Making.**  Qualcomm's **Topic 17** seeks testimony regarding Arm's decision to withhold deliverables from Qualcomm, and **Topic 41** and **RFP 156** seek information regarding Arm's decision to resume providing deliverables following the December 2024 jury verdict in *Arm* v. *Qualcomm*.  Although Arm witnesses testified they were ███████████ ██████████████████████ ████████████████████ Ex. 39 at 116:11-117:23, 125:6-127:12; Ex. 40 at 31:22-32:23, Arm has not produced those communications or provided a witness on its decision-making, limiting discovery to "Arm's provision of materials and support to Qualcomm" both before and after the verdict, and Arm's responses to Qualcomm's notices of breach. Ex. 37 at 41.  Qualcomm knows what Arm delivered—it does not know the entirety of what Arm withheld, on what basis, and whether there is additional technology withheld today.

**Third Parties Deliveries.**  Arm's delivery of technology to third parties is relevant, including because the Qualcomm ALA requires Arm to provide technology ████████████ ████████████████████████████████████████, and because communications with third parties may show Arm treated Qualcomm differently from others with the same or similar rights (**RFPs 28, 32, 68**).  Arm refused to perform a search for documents or provide an accounting of ████████████████████ delivered to third parties but not to Qualcomm (**Interrogatories 1, 5**), instead producing only "documents sufficient to show the centralized distribution of documents, and such documents made available by such distributions, to all third-party ALA licensees."  Ex. 35 at 7; Ex. 41 at 9.  These limitations do not allow Qualcomm to determine when such technology became "████████████" or who obtained the technology.

### B.    Failure to Negotiate Armv10 License

Arm refuses to provide discovery into the versioning and development timeline of the Arm Architecture, its pricing strategy, or its ████████████████████, preventing Qualcomm from evaluating whether Arm negotiated a good faith offer for Armv10.  According to Arm's Chief Architect, ████████████████████. Ex. 42 at 130:21-23.  Armv9's baseline is relevant to evaluating a fair offer for Armv10.  Yet Arm refused to provide discovery into its versioning practices (**RFP 42**) pricing strategies (**Topic 26**), or efforts to encourage adoption of Armv9 (**RFP 102**).  Arm also refused discovery into features included in Armv10 and associated value, when Arm began developing Armv10, and information about Arm's licensing of Armv10, including Arm's pricing strategy (**Interrogatory 3;**[5] **Topic 27**).

### C.    Breach of Qualcomm TLA

Qualcomm sought discovery concerning discussions about licensing to Qualcomm under the TLA (**RFPs 40, 56, 57, 63; Interrogatory 6**) and Qualcomm's notices of breach of TLA

---

[5] For **RFP 144**, Arm agreed to produce documents "consistent with its response to Qualcomm's Interrogatory No. 3." Ex. 38 at 27-28.

4

█████████**RFPs 49, 50, 51**).  Arm's production contains less than fifteen emails concerning Qualcomm's requests for licenses to ███████████████—all from the same three redacted email threads—and not one internal document concerning Arm's response to Qualcomm's breach notices.  Arm also improperly withheld as privileged documents purportedly relevant to Arm's CPU pricing analysis and refused to produce 2020-2023 pricebooks containing fees and royalty ███████████.  Ex. 47 at 1-2.  Arm cannot defend against Qualcomm's TLA claim by asserting it undertook █████████ but withhold the documents purportedly containing that analysis as privileged.

## IV.    Improper Responsiveness Determinations

Arm crafted underinclusive search terms and interpreted responsiveness so narrowly that it produced fewer than 5,000 emails and only 21 chats.[6]  The size of Arm's document production does not match Qualcomm's claims, which allege years-long misconduct by Arm spanning multiple agreements, lines of business, and levels of Arm's organization.

In *Arm* v. *Qualcomm*, Arm produced over 18,000 emails and over 700 chats covering a similar span of time to the conduct at issue in this case.  Arm's internal communications proved critical to probing Arm's claims, including, for example, a message from Arm's CEO expressing a desire to "hose" competitors through a shift in business model.  C.A. 22-1146 (MN), D.I. 588 (Trial Tr.) at 342:18-343:11.  In this case, Arm produced just 12 chats from its CEO, a search term custodian, despite testimony ████████████████████████ ████████████████████████████████.  Ex. 44 at 145:4-147:11.

Pursuant to Section 2(b)(i) of the ESI Order, D.I. 85, Qualcomm proposed ten additional search terms and modifications to Arm's terms.  Arm deemed its production sufficient.[7]  But even if Arm accepted Qualcomm's additional terms, Arm's narrow responsiveness determinations would exclude responsive documents.  Qualcomm requests Arm be ordered to produce, without responsiveness review, all non-privileged documents hitting on (1) Arm's terms and (2) Qualcomm's proposed search terms yielding fewer than 15,000 hits, excluding families.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 2394

---

[6] Arm's production in the prior case, Ex. 43 at 1, does not excuse Arm from discovery in this case.

[7] Arm claims its search terms passed requirements in Paragraph 2(b)(i) of the ESI Order.  Ex. 43 at 1.  But Arm deemed less than 3.5% of the hits to its search terms responsive, Ex. 48 at 7-9; Ex. 49 at 3-4, meaning had it produced no documents at all, it still would have complied with the ESI Order, which requires additional search terms only where "more than 10% of the null set is responsive."  D.I. 85 ¶ 2(b)(i).

5

# A214 - A264
# Redacted in Full

# EXHIBIT 7

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ARM LTD.,                        )
a U.K. corporation,              )
                                 )
            Plaintiff,           )
                                 ) C.A. No. 22-1146(MN)
v.                               )
                                 )
QUALCOMM, INC.,                  )
a Delaware corporation,          )
et al.,                          )
                                 )
            Defendants.          )

Wednesday, November 20, 2024
2:00 p.m.
Pretrial Conference

844 King Street
Wilmington, Delaware

BEFORE:   THE HONORABLE MARYELLEN NOREIKA
          United States District Court Judge

APPEARANCES:

            YOUNG CONAWAY STARGATT & TAYLOR
            BY:  ANNE SHEA GAZA, ESQ.
            BY:  ROBERT M. VRANA, ESQ.
            BY:  DANIEL MACKRIDES, ESQ.

            -and-

2

APPEARANCES (Cont'd):

            MORRISON FOERSTER, LLP
            BY: DARALYN DURIE, ESQ.
            BY: ERIK OLSON, ESQ.
            BY: DANIEL MUINO, ESQ.
            BY: SHAELYN DAWSON, ESQ.
            BY: NICHOLAS FUNG, ESQ.
            BY: HENRY HUTTINGER, ESQ.
            BY: LAURA GILBERT REMUS, ESQ.

            Counsel for the Plaintiff

            MORRIS NICHOLS ARSHT & TUNNELL LLP
            BY: JACK BLUMENFELD, ESQ.
            BY: JENNIFER YING, ESQ.

            -and-

            PAUL WEISS
            BY: KAREN L. DUNN, ESQ.
            BY: CATHERINE NYARDY, ESQ.
            BY: JACOB BRALY, ESQ.
            BY: RUBY GARRETT, ESQ.
            BY: ERIN MORGAN, ESQ.
            BY: ANNA LIPIN, ESQ.
            BY: FLINT PATTERSON, ESQ.

            Counsel for the Defendants

- - - - - - - - - - - -

COURTROOM DEPUTY: All rise. The United States District Court for the District of Delaware is now in

3

session. The Honorable Maryellen Noreika presiding.

THE COURT: All right. Good afternoon, everyone. Please be seated.

All right. Ms. Gaza.

MS. GAZA: Good afternoon, Your Honor. Anne Gaza from Young, Conaway on behalf of plaintiff, ARM. I'm joined today by Daralyn Durie, Erik Olson, Shaelyn Dawson, Nicholas Fung, Daniel Muino, Henry Huttinger, Laura Gilbert Remus all from Morrison Foerster as well as my colleagues, Rehoboth Vrana and Daniel Mackrides.

THE COURT: All right. Good afternoon everyone.

MR. BLUMENFELD: Good afternoon, Your Honor.

THE COURT: Good afternoon.

MR. BLUMENFELD: Jack Blumenfeld from Morris Nichols for Qualcomm and NuVia. With me at counsel table are Karen Dunn, Catherine Nyrady and Jacob Braly from Paul Weiss. Behind them, Jennifer Ying from Morris Nichols, Erin Morgan from Paul Weiss, and behind them, Flint Patterson, Ruby Garrett and, Chris Longman from Qualcomm.

THE COURT: All right. Welcome to all of you and good afternoon.

Okay. All right. Let me just get my document ready here.

So I appreciate the letter that we received last night from the defendants on simplifying the case. I think

4

it's dropping the counterclaims. How are we going to resolve those?

MS. DUNN: Your Honor, they're out of the case, so we are dropping them as claims.

THE COURT: So I always run into this problem and then I get like after the case are they dismissed, are they dismissed with prejudice, did you fail to put in evidence on them, so I'm granting judgment, what are we doing with them? You can't just say we're dropping them. They're in the case. How do I get them out of it?

MS. DUNN: We can file a voluntary withdraw of the claims if that is what Your Honor would like.

THE COURT: I want to know what you guys have agreed to do. So have you talked with the other side?

MS. DUNN: We talked to the other side and agreed that we would drop the claims so they're aware. I don't think we've talked mechanically how we would do that. We're happy to do that and make a submission to the Court.

THE COURT: That would be very helpful.

MS. DUNN: Okay.

THE COURT: And I don't mean to suggest that I don't appreciate that you're dropping them, it's just that I have gotten myself into trouble before when I don't figure out what that means.

MS. DUNN: Understood, Your Honor. Plaintiff's

25

the founders received compensation in the acquisition, or to the fact that there is a bonus structure laid out and a term sheet that was signed as part of the acquisition. All of the reasons that ARM provides in their response are satisfied without disclosing the actual proceeds that were made by the NuVia founders who are nonparties to this action. And including that information and introducing that evidence into this case would only seek to inflame the jury.

To also address one of the issues that's raised in ARM's response, they question whether a particular milestone -- I think the last pending milestone payment was paid out based on --

THE COURT: How much money are we talking about?

MR. BRALY: It is approximately 80 to $100 million, Your Honor. Mr. Gulati in Exhibit 1A to our opening brief provides a breakdown of the amount on pages 137 to 138, and describes both the stock transfer as well as a cash payment and then, of course, there are milestone payments as well.

THE COURT: Okay. Let me hear from the plaintiff.

MS. DURIE: Thank you, Your Honor. Daralyn Durie for ARM.

Evidence of the amount of money that the founders stood to make by virtue of the acquisition is

26

highly relevant to their motivation for disregarding their contractual obligations. And closing that transaction notwithstanding the consent requirement and failing to get consent, and then using the ARM technology that had been developed at NuVia in order to speed product development at Qualcomm and get the milestone payments that had been promised to them. And I think the case law is quite clear that evidence of the amount of money that a party stands to gain is evidence of bias. And it shows their motivation for engaging in the specific conduct that is at issue in this case.

THE COURT: All right. I think I have heard enough.

MS. DURIE: Thank you.

THE COURT: I am going to deny the motion. If defendants -- I've already permitted defendants to use the royalty rate to show motive and bias from plaintiff's part, then plaintiff can also use Qualcomm's buyout figures to show motive or bias of the NuVia folks.

Okay. Qualcomm's motion in limine number 2, defendants seek to preclude ARM from making arguments about its ALA program, ALAs generally unless it produces all of its third-party ALAs without redactions. We had a little bit of a discussion about this at the last hearing. I'm not sure if I screwed that up. So I do need to understand

27

what's going on because plaintiff now seems to be saying look, we're not going to use those, which I appreciate because you didn't produce them, you shouldn't be able to use them.

But what I'm not sure happens is instead it seems like you're saying we're just going to have people testify. Well, what are you going to have them testify? Are you going to have them testify about things that they need those documents to cross-examine them on, or are you going to testify about stuff that you've already produced discovery on? So that is what I need some help on.

MS. DURIE: Thank you. And the answer, Your Honor, is the latter. So we will have witnesses describe at a high level the ALA program, and that there are ALA's with a number of different companies. That I think is not a contested fact. We do not intend to put in any evidence about the specific terms of specific agreements that would implicate in any way any information that was redacted from those agreements.

The only -- the reason that this evidence is relevant is to show -- in part to show harm. Obviously the details of that harm are for the remedies phase for a specific performance, but Qualcomm has taken the position that we need to show as an element of the breach of contract claim harm from the breach.

28

THE COURT: And I agree with that.

MS. DURIE: Right. And so we intend to have testimony both that ARM is harmed by the unlicensed use of our technology by Qualcomm and not being compensated for that use in the way that they believe they should have been, and that there is harm generally to ARM from the unlicensed use of its technology, this is not the only ALA.

THE COURT: But I need to know specifically what you suggest someone is going to testify about because if that person is going to say well, gosh, it affects our ability to negotiate good prices on other ALA's, that seems like something you should have produced.

MS. DURIE: I understand. We are not going to have witness testimony that there has been any past impairment in our ability to negotiate specific ALA terms including rates. We do think that to the extent that Qualcomm's conduct was blessed here and that Qualcomm was ultimately permitted to use unlicensed technology, that that would have negative consequences going forward, but we're not going to put in any testimony --

THE COURT: How is that showing damages? That's showing speculative stuff for the future. How is that showing that you have been damaged by the breach?

MS. DURIE: I think there is exigent harm to the licensing ecosystem, but I think for purposes of showing

29

harm as an element of the breach of contract claim, the fact that our technology is being used in an unlicensed fashion without compensation, without in our view adequate compensation --

THE COURT: That one I understood. I understood that one. I don't understand you saying and now we're going to put someone up and he's not going to say we've already been harmed because we couldn't negotiate better deals or people were like you let Qualcomm get away with it, so we can get away with paying less or something, you're not going to do that and instead you want him to say well, it may happen in the future, that doesn't seem like harm for a breach of contract. That seems kind of speculative and future.

MS. DURIE: I don't disagree that it is about the future. It is about why this lawsuit is important to ARM, it is about why ARM made the decision which was as I understand it literally unprecedented to sue one of its licensees for the unlicensed use of its technology.

I agree that is not what we will be relying on, it is the predicate for a determination of harm as an element of a breach of contract claim, I believe that is the harm that will be specific from the unlicensed use of this technology.

THE COURT: Let me ask you a question because it

30

sort of your explanation kind of raised this which is let's say you go before the jury and the jury says there was a breach, and the damage, there was damage and loss of reputation, something like that. Okay? Something that's damages, but that is sufficient to show damages for purposes of making out a breach of contract claim. And then you come to me and you've already just said part of your damage may be that you're not compensated adequately for the breach, for the use of our technology, so it's using your technology but not compensating you adequately.

So let's just say after I hear you out on that I say it doesn't seem to me that there is no adequate monetary relief. What happens because there has been no request for damages, and if I don't give you specific performance but there is a breach, where are we?

MS. DURIE: So the Court has the power in equity to make awards incidental to an equitable request for specific performance.

THE COURT: Did you ask for that in the pretrial order?

MS. DURIE: We asked for that in the pleadings and I believe it is in the pretrial order as well.

I do want to make clear that what I have been talking about is harm as an element of a breach of contract claim as distinct from damages.

31

THE COURT: I understand. But if you're going to convince me -- if you want to tell the jury that our harm is that we haven't been adequately compensated, I can't pretend that I didn't hear that. Compensation sounds money-ish.

MS. DURIE: I understand, and that is an element of harm and I understand Your Honor's point. So the answer to your question I think is remedies that are incidental to specific performance.

THE COURT: All right.

MS. DURIE: Thank you.

THE COURT: Mr. Blumenfeld, did we help with some of that? So they're not going to put in ALA's, they're not going to testify that anything -- that there was anything in the past where they -- their negotiations or their ALA's were somehow impacted, and that's damages. I'm not sure I'm going to let them put in something speculative about the future, while maybe this will happen, maybe it won't. So that leaves us with an argument that they're not being adequately compensated for their -- for the alleged breach. That seems like it's outside of this motion in limine. So what is left of the motion in limine that I need to address?

MR. BLUMENFELD: So a couple of things, Your Honor, and I want to swing back to the damages issue that

32

you raised with Ms. Durie. I don't think it's correct that all they intend to do is call some executives and say oh, there may be some harm to us in the future which Your Honor has said you haven't decided whether you will let them do that or not. This came up a little bit during summary judgment where they put in a declaration from two of the executives. In fact, if you read their MIL response it specifically says --

THE COURT: That caught my attention in the MIL, we're going to have somebody testify and I'm like okay, about what.

MR. BLUMENFELD: It says about royalties that have been decreased. That doesn't sound like the future, that sounds like --

THE COURT: I understand, but we've now had a representation that suggest that's not going to happen, unless the royalties that have been decreased means that they're not being paid, they're Qualcomm or NuVia royalties that they're not getting paid.

MR. BLUMENFELD: Right. If I could hand up one of the declarations they put in, this is a big part of our concern. It's from Williamson. It came in in August, we objected to it as part of the summary judgment proceedings because it is speculative, and also because it does disclose things or argues things that we didn't get discovery of

33

because we didn't get the ALA's in for other reasons. But if you look at Mr. Williamson's declaration, and he is listed as a trial witness, so he's senior vice-president and general manager, and he says in paragraph 6 that the unlicensed use of ARM's technology has caused multiple harms to ARM. And then he goes on to explain that, and in paragraph 7, he says based on my experience at ARM and marketing and business roles since 2015, the industry's perception of ARM's reputation and its ability to protect its intellectual property impacts ARM's contracts with its licensees, for example, it affects the terms that ARM's licensees are willing to accept, their proposals during negotiations, their willingness to comply with those issues. Terms that may be impacted include that products are licensed financial terms, scope of license technology, I don't know how I'm supposed to be able to cross-examine him on these things happen when I'm talking to our licensees, by the way, you don't have the licenses so you can't use them to cross-examine me --

THE COURT: Hold on. Let me ask. Ms. Durie, I would have thought based on our representations you weren't planning to have him do that because I kind of agree, Mr. Blumenfeld can't just say --

MS. DURIE: That is correct, we are not going to say that there have been any such impacts to date.

34

THE COURT: But you want him to say but there will be.

MS. DURIE: I would like for him to be able to say that one of the reasons that ARM brought this case is because its licensee ecosystem is extremely important to it and it is very important to ARM as an IP licensing entity that its licensees respect its intellectual property. And that in ARM's view, if Qualcomm were able to use ARM technology in an unlicensed fashion, that could have very severe downstream consequences for ARM. I don't expect anyone to spend a long time belaboring the point.

I think at that high level, they are -- Qualcomm has said that they are going to try to suggest that ARM's reasons for refusing to consent and bringing the case was because it wanted to get rid of the Qualcomm ALA. Our response to that is to say no, that is not true, the reason that we are here is not because we want to get rid of the Qualcomm ALA, the reason that we are here is because Qualcomm is using our technology in an unlicensed fashion and that is important to us.

But we don't intend to belabor the point and we do not intend to make any argument that there has been any specific effect in any specific license agreement that would give rise to the need to cross-examine on that.

THE COURT: So with that --

35

MR. BLUMENFELD: Your Honor, if you go on to -- I want to respond also to her point about motivation, how it is their motivation. The suit gets in after, what Mr. Olson said, after our motivation.

THE COURT: I know. Well, you are going to talk about their motivation to sue, that's all I heard over here is they're suing us because they want more money so I can sort of see why they get to respond and say no, we're not suing them because we want more money, we're suing them because this is harmful to our business model.

MR. BLUMENFELD: Well, we will get to that undoubtedly when things come up at trial, but on the specific things that Ms. Durie said about what they're going to do, if you turn to paragraph 11 and then paragraph 13 of Mr. Williamson's declaration, he says he --

THE COURT: Yeah, let's just check before you tell me, are you going -- this seems like past stuff, since June people have contacted me and I have been damaged. So we need -- you're not going to put this in.

MS. DURIE: That's correct, Your Honor.

THE COURT: Okay. So that was paragraph 11.

MS. DURIE: Paragraph 11, that's right.

THE COURT: And then --

MS. DURIE: I want to be clear, we're talking about the phase in front of the jury, obviously specific

36

performance is a separate question and we'll address that at a separate time in front of Your Honor.

THE COURT: We can do that, I'm just saying the extent that you want him to say I have been contacted by people and our agreements are suffering, I would have expected that all of that underlying stuff be produced, and that you're not just going to have him get up there and say it and leave Mr. Blumenfeld to say I don't know if that's true or not. So you can ask again to put it in if there is a bench trial phase, but I still in a bench trial require you to disclose stuff during discovery.

All right. What about paragraph 12, did you have a problem with paragraph 12, Mr. Blumenfeld? This is -- that's different, that's Qualcomm's position as to what's licensed.

MR. BLUMENFELD: It's 13, that's the other issue. But on this entire subject, I don't -- so they put in a declaration saying I have talked to our partners, I have talked to our licensees, here is what I have learned from them. They say that in the declaration. They're not going to do that at trial. I don't know how he can get on the stand and just say but this is going to happen.

THE COURT: And I haven't quite gotten through that. I understand that concern. I understand that concern. And I'm not -- but I guess what I'm thinking is I

37

need to understand more of what he's going to say, right? Like, why can't he get up there and say this is our whole business model, our business model is we licensed technology, and you know, if you're going to be out there -- and we think we have great technology. But it's important to us that people respect our licenses because if people don't respect our licenses, our business model is not worth the paper that it's written on. Right?

MS. DURIE: Right.

THE COURT: And then he can say and our perception is that Qualcomm or NuVia, or I know there is two different parties, I don't know who I'm talking about at this moment, but you don't have to tell me there is two different parties, whoever is not respecting our licenses, probably both, right, neither of them respected the license according to the plaintiff. So that seems okay to me and that's not speculative damages, that's saying it's important to us that people respect it, and it's important to our business model that people respect it, and they're not respecting it. And you can say well, you don't have any evidence that it actually had an impact, but why can't he get up there and say, come on, we're a licensing company, all we do is enter agreements and if we say everybody can just kind of pooh pooh our agreements, you know, it doesn't -- the jury can look at that and be like well, that sounds

38

bad.

MR. BLUMENFELD: So here is the problem with that, and it goes to the question Your Honor raised with Ms. Durie. How do I cross-examine him? Because, for example, we know that they've entered into other licenses since the termination of the NuVia license. We all know about Apple and there are others they've entered into since then. We don't have them, or we have them in redacted forms that we don't know what the terms are. We went through that back in March with the Google licenses where the terms are totally redacted. So if he gets on the stand and says this is going to affect our licensing program, it's going to affect our ability to collect royalties, it's going to affect people's willingness to take a license and all I can say is well, people took licenses, right, and I don't have those licenses and I can't cross-examine him on whether the harm is real or whether it's just something he's making up for the jury.

THE COURT: Let me ask Ms. Durie on that specific point because that one seems --

MS. DURIE: So we're not arguing that there has been any affect on any exigent license agreements because the harm hasn't happened yet --

THE COURT: Hold on, hold on. If he's going to get up there and say well, it's going to harm us in the

39

future and Mr. Blumenfeld could if he had the agreement say good of you to say, but by the way, since this all happened, you have entered into 89 license agreements and, in fact, you got better terms than you ever had before, that's a pretty good cross of him saying oh, it's going to now hurt us.

MS. DURIE: So I disagree --

THE COURT: Well, I don't --

MS. DURIE: But the distinction, I want to draw the distinction between what will happen as a consequence of Qualcomm being allowed to use technology in an unlicensed way without consequences --

THE COURT: Yes. According to you -- hold on.

MS. DURIE: Yes.

THE COURT: According to you, Qualcomm has been allowed to do this.

MS. DURIE: Not yet. We're in court litigating over that very issue. They have not gotten away with it. They make -- if they were to get away with it, if this were to not have a consequence, we would be harmed. But we are not saying -- there has been no --

THE COURT: Now you're getting super speculative. So the jury has to now assume that the damage is that they find that there is a breach, but they can't find that there is a breach unless there is damage. So I

40

can't -- that seemed wrong to me.

MS. DURIE: So let me be clear. The allegation of harm for purposes of whether there was a breach is that they are using our unlicensed technology and they are not paying for it. That is harm. And that suffices to show harm for purposes of a breach.

THE COURT: You know what, that's all I'm going to let him say at trial. He cannot say -- no, he cannot say and in the future, this is going to cause us problems if the jury finds that there was a breach and this can all go and they are allow to get away with it. He cannot say it. Okay? He cannot say it. You can stop arguing it because you did not produce -- you did not produce information that would allow the defendants to fairly cross-examine your witnesses because I get it, you're saying well, they didn't get away with it until the jury finds they got away with it. The fact is they're doing it now. There is no -- no, he can't -- and so one, no, you didn't produce the documents. Two, no, it seems awfully speculative to say we think that at some point if the jury finds that there wasn't -- I don't even know if the jury finds there was a breach or there wasn't a breach that we're going to be harmed.

MS. DURIE: It's not the jury verdict. Let me very be very clear, it's why we brought the lawsuit. If we had allowed this conduct to go unchallenged, if we had

41

allowed Qualcomm to use our IP in an unlicensed fashion and not take an action, that would have threatened our ecosystem, the reason we brought --

THE COURT: There is a difference between saying it will threaten our ecosystem and saying, and what that means is we are going to be harmed in the future by people, you know, everybody -- no one is going to respect our licenses. It's one thing if he gets up there and says this is our business model, we need people to respect our licenses, they're not respecting our licenses, okay, I don't know exactly what that establishes, but the jury I suppose could fairly draw an inference from that. It's a very different thing for him to say and by the way, we will be harmed in the future, or we may be harmed in the future if this is allowed.

MS. DURIE: May I just say in response to the attack on our motive for bringing the lawsuit, which Qualcomm intends to put at issue by saying we refused to consent to try to get out from under the Qualcomm ALA, we would like our witness to be able to say that's not why we're here, the reason why we're here, why we brought the lawsuit and why we are insisting on our rights is because we are a licensing shop. If our technology is used in an unlicensed fashion, that threatens our entire business model and we're very concerned about what the consequences of that

42

would be. We're not saying we're harmed by that --

THE COURT: Yes, but the problem I have is -- and you can say that I'm talking about something different, but I still think it's fair within the scope of cross-examination, if your witness gets up there and says all hell is going to break loose if people don't respect our licenses, our business model is not worth the paper it's written on, and Mr. Blumenfeld or Ms. Dunn or Ms. Nyrady or whoever can't get up and say well, wait a second, everybody knows that according to you, Qualcomm has not been respecting our technology and has just been using it as you say in an unlicensed manner and the sky has not fallen in, in fact all of this other stuff has happened, the problem is he can't say that or they can't say that because you didn't produce the documents.

MS. DURIE: I would think, Your Honor, we could arrive at a stipulation to solve that problem because that is not the argument that we are making. We are saying if we had not enforced our rights and just sat on the sidelines and didn't take action to protect our intellectual property and allowed the unlicensed use of our IP without consequence, that is what would threaten our entire model, not being here pursuing this litigation, but sitting on the sidelines and not taking action.

If Qualcomm wants to cross-examine our witnesses

43

--

THE COURT: How are they supposed to say we don't believe you, that's not true?

MS. DURIE: I think we could work out a stipulation. If their goal is to be able to establish that we are not contending there has been any such harm with respect to the terms of license agreements that we were able to negotiate in view of the fact that we did file a lawsuit, we have no problem with that, and I think we could work out a stipulation to that effect.

THE COURT: All right. This is what I am going to do. You can't use the ALA. It sounds like you don't want to use the ALA. And you can't use anything that's happened to date, and it doesn't sound like you want to use anything that's happened to date. So that I will rule on. Whatever happens, see if you can come up with a stipulation that will allow you to deal with it. If not, you can use some of your trial time to argue the rest of this, whatever is left of this motion to me.

MS. DURIE: Understood. Thank you, Your Honor.

THE COURT: But I understood the motion to be that defendants seek to preclude ARM from making argument about its ALA product program and so I guess to the extent that we're talking about not specific agreements but the program, then I -- let me know what's left of that motion.

44

MR. BLUMENFELD: I'm not sure, Your Honor, that there is anything left that we need to deal with today. We may well get into the issue of them putting Mr. Williamson, Mr. Abby, Mr. Haas, their witnesses on to talk about -- to create an impression that there is a parade of horribles that are going to happen and if that does --

THE COURT: I understand. I understand. And I'm not in any way precluding you from objecting to that, or from raising that before the witnesses get on the stand and asking for a proffer on what they're going to say on that so we can address it.

MR. BLUMENFELD: Thank you.

If I can respond to the colloquy that you had on damages, this is kind of an interesting issue for us. Back when we were before you in March, you asked them whether they were asserting a damages claim and they said no. They left themselves open to possibly doing it later. They've never given us a damages expert report. They've never given us a disclosure of a damages theory. They haven't put --

THE COURT: How scary it must be that they want me to figure it out.

MR. BLUMENFELD: But if you go to the pretrial order, I don't know if you have it in front of you.

THE COURT: I can pull it up. Give me a second.

MR. BLUMENFELD: It's Exhibit 13 to the pretrial

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,  )
  a Delaware corporation; and  )
QUALCOMM TECHNOLOGIES, INC.,  )
  a Delaware corporation,  )
                      )
         Plaintiffs,  )  C.A. No. 24-490 (MN)
                      )
     v.  )
                      )
ARM HOLDINGS PLC., f/k/a ARM LTD.,  )
  a U.K. corporation,  )
                      )
        Defendant.  )

**PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI REGARDING SUBSEQUENT EVENTS RELATING TO THEIR MOTION TO COMPEL PRODUCTION OF THIRD-PARTY ARM LICENSES AND RELATED AGREEMENTS**

OF COUNSEL:

Catherine Nyarady
Jacob A. Braly
Jacob Apkon
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Adam Basner
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007
(202) 240-2900

October 17, 2025

Dear Special Master Rychlicki:

Pursuant to D. Del. LR 7.1.2, Plaintiffs write to advise Your Honor of newly-learned facts and subsequent events that have occurred since the August hearings on the parties' motions to compel and Qualcomm's September 15 letter that relate to Qualcomm's pending motion to compel production of third-party Arm licenses and related agreements. D.I. 359; 8/1/2025 Qualcomm Ltr. at 1–2.

As Your Honor is aware, Arm has repeatedly represented that it has "agreed to produce agreements with third parties for ██████████████ in effect at the time" of ████████ ██████████████ 9/19/2025 Arm Ltr. to Special Master Rychlicki at 2; 8/7/2025 Arm Opp. to Qualcomm's Mot. to Compel at 1. But, as detailed in Qualcomm's September 15 letter, Arm produced only a fraction of those agreements during fact discovery, or even ahead of the hearings Your Honor held in August. Specifically, Arm produced █ third parties' agreements in September and October,[1] as compared to █ agreements produced by August.[2]

As mentioned in Qualcomm's August 1 letter, even those few agreements produced as of August were incomplete, as they were missing attachments that form part of the agreements. 8/1/2025 Qualcomm Ltr. at 1; D.I. 359 (moving to compel production of documents pursuant to, among others, RFP No. 123, which sought "All agreements licensing ██████████████ codenamed ████████████, including TLAs and corresponding Annexes"). This problem of Arm producing incomplete agreements has only been exacerbated in Arm's later productions, with Arm continuing to omit at least the following documents that are part of the agreements Arm has with third parties:

- Annexes that the produced documents identify as containing pricing information, *e.g.*, Ex. 1 at -047, ██████████████████



---

[1] These are the agreements for ████████████████████████████████████████████████████████████████████████ As Your Honor is aware, additional third parties' agreements have not yet been produced pending the resolution of their motions for protective orders.

[2] These were the agreements for ████████████████████████████

[3] Arm licenses packages of its IP to third parties under its Arm Total Access agreements ("ATAs"), whereas TLAs cover a more tailored set of IP that the relevant third party has specifically sought to license from Arm.

- Contract amendments, *e.g.*, Ex. 3 ███████████████████████ ███████████████████████████████████████ *See also* Ex. 4 at 5–6 (correspondence between counsel including list of apparently omitted documents).

Given Arm's purported recognition of its need to produce third-party agreements for ████████████████ and the direct relevance of these missing contract components to the analyses of Qualcomm's damages expert Dr. Patrick Kennedy, Qualcomm reached out to Arm on September 24 with a specific list of omitted parts of third-party agreements referenced in the documents Arm had produced. Ex. 4 at 5–6. Qualcomm asked that Arm produce these missing contract components or identify by Bates number where Arm believed it had already produced them. *Id.* at 5. Arm did not respond for more than two weeks. *Id.* at 3–4. After repeated follow up, Arm represented on October 9 that it was "investigating Qualcomm's request for these additional documents." *Id.* at 3. After additional follow up, Arm responded that it would not provide these parts of third-party agreements it has omitted because it believes "Qualcomm is seeking to relitigate pending a ruling" on its motion to compel. *Id.* at 2. Arm also faulted Qualcomm for not "timely rais[ing] the issue," *id.* at 3, notwithstanding that Arm produced the substantial majority of third-party agreements after the parties briefed their motions to compel and after Your Honor heard those motions.

Aside from repeating its opposition to producing the annexes for ████████████ ████ on the grounds that they purportedly do not relate to ████████████████, Arm does not claim that these contract components are not relevant or discoverable. Nor could it. Under the California law that governs the breach claims in this case, "[t]he whole of a contract is to be taken together." Cal. Civ. Code § 1641. And some of the contract components that Arm has omitted are



Without production of these documents, Qualcomm has no way to know if the terms it is reading in the produced ATAs even govern third parties' licenses for ██████ ██████████████ Qualcomm cannot fully evaluate Arm's claimed compliance with the parties' TLA term requiring █████████████████████████████████████████████████████████ ██████████████████████ if Arm will not produce the complete agreements that constitute those prior deals.[4]

Additionally, Arm has obstructed Qualcomm's efforts to mitigate the effects of Arm's failure to notify third parties of the need to produce their agreements before the end of fact discovery by refusing to produce a redacted version of a third-party agreement that Qualcomm and the third-party, ███████, have agreed should be produced. As noted in Qualcomm's September 15 letter to Your Honor, Qualcomm has been engaging in meet and confers with late-notified licensee ███████ in an effort to reach an agreement regarding redactions without needing to burden Your Honor with yet another protective order motion. Qualcomm and ███████ reached

---

[4] In the continued investigation conducted in the weeks waiting for Arm to respond on this issue, Qualcomm was able to identify a single produced ███████████████ document, appended as an exhibit to the █████████████ ATA. Ex. 5 at -842–942. This document confirms the relevance of these ███████████████████ as it, among other information, ███████████████ ████████████████████████████████████████████████████████████████████████

2

an agreement whereby ███████ would allow Arm to produce redacted versions of its agreements now, along with a redaction log, subject to those agreements later being unredacted in whole or in part depending on how Your Honor resolves the pending third-party protective order motions.

On October 9, ███████ counsel provided Arm with redacted versions of its agreements and gave Arm permission to produce them to Qualcomm. On October 10, counsel for Arm stated that he was not up to date on the status of Qualcomm's negotiations with ███████ but that "if there has been an agreement and redactions have been agreed to[,] we will get that out promptly." Ex. 6 at 21:2–15. On October 14, however, Arm reversed course, refusing to produce the redacted versions of ███████ agreements, claiming that it was not appropriate to do so unless ███████ filed a motion for a protective order or the Court resolved the pending dispute over the scope of Qualcomm's TLA-related claims. Ex. 7.

Arm's position—itself a change from its promise to produce the agreements "promptly" a few days earlier—is improper and would require a tremendous waste of resources by ███████ Qualcomm, and Your Honor. Arm claims that redactions are not permitted under the protective order in light of the dispute the parties litigated in March before Judge Fallon. *Id.* at 3–4. But that dispute addressed a specific provision that Arm was attempting to insert into the protective order and ESI order that would have allowed the "producing party" to redact confidential information "that is subject to a confidentiality agreement with a Third Party for which a Third Party has requested redaction." D.I. 68, Ex. D ¶ 52. *See also id.,* Ex. E ¶ 2(j). Qualcomm objected that Arm should not be permitted to unilaterally redact third-party information in the absence of the third party moving for, and the Court granting, a protective order. D.I. 70. Qualcomm also specifically noted that that the ordinary process of the non-producing party negotiating with the third party would remain available. D.I. 70 at 4 ("The usual method for protecting information—party negotiation followed by a prompt protective order motion by the third party to resolve any disputes—is the appropriate procedure."). Thus, nothing about the parties' March dispute displaces the commonsense practice of producing redacted versions of documents upon agreement between a third party and the party seeking the documents. Arm's refusal to produce ███████' agreements is improper, but consistent with Arm's other efforts to avoid compliance with its discovery obligations.

Qualcomm requests that Arm be required to abide by its commitment to produce its agreements with third parties for ███████ (subject to Your Honor's resolution of the parties' scope dispute). Despite its repeated representations to Your Honor that it has made this production, *e.g.*, 8/14/2025 Tr. 60:16-22; 8/22/2025 Tr. 277:18-278:13, 278:19-23, 279:17-18; 9/19/2025 Arm Ltr. to Special Master Rychlicki at 2 ("Arm's additional productions moot Qualcomm's motions to compel, which should be denied."), Arm's production remains incomplete, and Arm refuses to remedy its inadequacies absent a Court order. Qualcomm's motion to compel production of third-party Arm licenses and related agreements should be granted.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 1637

Encls.

4

# A277 - A339
# Redacted in Full

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 20, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 20, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Sydney D. Gaskins, Esquire                                 *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                   *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Kasdin M. Mitchell, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                      *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                                *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*

Brad D. Sorrels, Esquire                                  *VIA ELECTRONIC MAIL*
Kaitlin E. Maloney, Esquire
Nora M. Crawford, Esquire
WILSON SONSINI GOODRICH & ROSATI, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE  19801
*Attorneys for Non-Party Ampere Computing LLC*

Susan E. Morrison, Esquire                                *VIA ELECTRONIC MAIL*
Nitika Gupta Fiorella, Esquire
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19899
*Attorneys for Non-Party Apple Inc.*

Hannah Cannom, Esquire                                    *VIA ELECTRONIC MAIL*
Bethany Stevens, Esquire
WALKER STEVENS CANNOM LLP
500 Molino Street, Suite 118
Los Angeles, CA  90013
*Attorneys for Non-Party Apple Inc.*


                                        */s/ Jennifer Ying*
                                        _____
                                        Jennifer Ying (#5550)

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 4, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Sydney D. Gaskins, Esquire                 *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Kasdin M. Mitchell, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Jay Emerick, Esquire
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Peter Evangelatos, Esquire
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Brad D. Sorrels, Esquire
Kaitlin E. Maloney, Esquire
Nora M. Crawford, Esquire
WILSON SONSINI GOODRICH & ROSATI, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE  19801
*Attorneys for Non-Party Ampere Computing LLC*

*VIA ELECTRONIC MAIL*

Susan E. Morrison, Esquire
Nitika Gupta Fiorella, Esquire
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19899
*Attorneys for Non-Party Apple Inc.*

*VIA ELECTRONIC MAIL*

Hannah Cannom, Esquire                                    *VIA ELECTRONIC MAIL*
Bethany Stevens, Esquire
WALKER STEVENS CANNOM LLP
500 Molino Street, Suite 118
Los Angeles, CA  90013
*Attorneys for Non-Party Apple Inc.*


                                                   */s/ Travis Murray*
                                          _____
                                           Travis Murray (#6882)