IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br> a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br> a Delaware corporation, | ) ) ) ) ) | |
| | ) | C.A. No. 24-490 (MN) |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br> a U.K. corporation, | ) ) ) | **REDACTED**<br>**PUBLIC VERSION** |
| Defendant. | ) ) | |

**APPENDIX TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S ORDERS GRANTING MOTIONS FOR PROTECTIVE ORDERS FILED BY THIRD PARTIES AMPERE COMPUTING LLC (D.I. 615) AND APPLE, INC. (D.I. 616)**
<u>**(Vol. 3: A525 – A646)**</u>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs as to Motions Brought
By All Movants*

Original Filing Date:  February 20, 2026
Redacted Filing Date: March 4, 2026

# TABLE OF CONTENTS

| Docket Entries for Motions Referred to the Special Master | |
|---|---|
| **Document** | **Page Range/D.I. #** |
| Nonparty Ampere Computing LLC's Motion for Protective Order (Aug. 11, 2025) | D.I. 374 |
| [Proposed] Order Granting Nonparty Ampere Computing LLC's Motion for Protective Order (Aug. 11, 2025) | D.I. 374-1 |
| Non-Party Apple Inc.'s Motion for Protective Order (Aug. 11, 2025) | D.I. 377 |
| [Proposed] Order (Aug. 11, 2025) | D.I. 377-1 |
| **Appendix Entries for Briefing & Proceedings Before the Special Master** | |
| Letter from Nora M. Crawford to Special Master Helena C. Rychlicki re: *Qualcomm Inc., et al. v. ARM Holdings PLC*, C.A. No. 24-490 (MN) (Aug. 11, 2025) | A001 – A006 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Jeff Wittich in Support of Nonparty Ampere Computing LLC's Motion for Protective Order (Aug.11, 2025) | A007 – A012 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter Brief in Opposition to Ampere's Motion for a Protective Order (Aug. 18, 2025) | A013 – A019 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Catherine Nyarady in Support of Plaintiffs' Opposition to Non-Party Ampere's Motion for a Protective Order (Aug. 18, 2025) | A020 – A021 |
| Qualcomm Exhibit 1 – Qualcomm's First Set of Requests for Production (Nos. 1-36) Excerpt (Dec. 20, 2022) | A022 – A026 |
| Qualcomm Exhibit 2 – Qualcomm's Fifth Set of Requests for Production (Nos. 71-124) Excerpt (Oct. 18, 2023) | A027 – A033 |
| Qualcomm Exhibit 3 – *Arm* v. *Qualcomm*, Telephonic Oral Argument Excerpt (Jan. 12, 2024) | A034 – A037 |

| | |
|---|---|
| Qualcomm Exhibit 4 – *Arm* v. *Qualcomm*, Oral Argument Excerpt (Mar. 7, 2024) | A038 – A042 |
| Qualcomm Exhibit 5 – Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's First Set of Requests for Production (Nos. 1-52) Excerpt (June 17, 2025) | A043 – A057 |
| Qualcomm Exhibit 6 – Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's Second Set of Requests for Production (Nos. 53-120) Excerpt (June 17, 2025) | A058 – A065 |
| Qualcomm Exhibit 7 – Arm Holdings PLC's First Supplemental Objections and Responses to Qualcomm's Third Set of Requests for Production (Nos. 121-156) Excerpt (June 17, 2025) | A066 – A073 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Letter Brief of Non-Party Apple Inc. in Support of its Motion for Protective Order (Aug. 11, 2025) | A074 – A079 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Hannah L. Cannom in Support of Non-Party Apple Inc.'s Motion for Protective Order (Aug. 11, 2025) | A080 – A082 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Timothy A. Kirby in Support of Non-Party Apple Inc.'s Motion for Protective Order (Aug. 8, 2025) | A083 – A084 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter in Opposition to Non-Party Apple's Motion for a Protective Order (Aug. 18, 2025) | A085 – A091 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Jennifer Ying in Support of Plaintiffs' Opposition to Non-Party Apple's Motion for Protective Order (Aug. 18, 2025) | A092 – A112 |
| Qualcomm Exhibit 1 – *Arm* v. *Qualcomm*, Oral Argument Excerpt (Mar. 7, 2024) | A113 – A127 |
| Qualcomm Exhibit 2 – Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's First Set of Requests for Production (Nos. 1-52) Excerpt (June 17, 2025) | A128 – A137 |

| | |
|---|---|
| Qualcomm Exhibit 3 – Arm Ltd.'s First Supplemental Objections and Responses to Qualcomm's Second Set of Requests for Production (Nos. 53-120) Excerpt (June 17, 2025) | A138 – A152 |
| Qualcomm Exhibit 4 – Arm Holdings PLC's First Supplemental Objections and Responses to Qualcomm's Third Set of Requests for Production (Nos. 121-156) Excerpt (June 17, 2025) | A153 – A162 |
| Qualcomm Exhibit 5 – Arm Holdings PLC's Objections and Responses to Qualcomm's Seventh Set of Requests for Production (Nos. 192-195) Excerpt (July 9, 2025) | A163 – A168 |
| Qualcomm Exhibit 6 – Deposition of Christine Cong Tran Excerpt (July 10, 2025) | A169 – A174 |
| Qualcomm Exhibit 7 – Deposition of Martin Weidmann Excerpt (June 20, 2025) | A175 – A179 |
| Qualcomm Exhibit 8 – Deposition of Rene Haas Excerpt (July 7, 2025) | A180 – A187 |
| Qualcomm Exhibit 9 – *Finjan, Inc.* v. *Rapid7, Inc.*, C.A. No. 18-1519-MN, Memorandum Opinion and Special Master Order #2 (Aug. 7, 2020) | A188 – A195 |
| Qualcomm Exhibit 10 – *Minerva Surgical, Inc.* v. *Hologic, Inc. and Cytyc Surgical Products, LLC*, C.A. No. 18-217-JFB-SRF, Memorandum & Order (Oct. 11, 2019) | A196 – A202 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Rychlicki Regarding Subsequent Events Relating to Motion to Compel Production of Arm's Architecture License Agreements (Dec. 16, 2025) | A203 – A205 |
| Qualcomm Exhibit 1 – Plaintiff's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A206 – A213 |
| Qualcomm Exhibit 2 – Defendant's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 7, 2025) | A214 – A222 |
| Qualcomm Exhibit 3 – Special Discovery Master Hearing Excerpt  (Aug. 14, 2025) | A223 – A226 |

| | |
|---|---|
| Qualcomm Exhibit 4 – Deposition of William Abbey Excerpt (June 26, 2025) | A227 – A229 |
| Qualcomm Exhibit 5 – Deposition of Rene Haas Excerpt (July 7, 2025) | A230 – A232 |
| Qualcomm Exhibit 6 – Letter from S. Collins to A. Chaplin (Dec. 10, 2025) | A233 – A264 |
| Qualcomm Exhibit 7 – *Arm* v. *Qualcomm*, Pretrial Conference Excerpt (Nov. 20, 2024) | A265 – A271 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Subsequent Events Relating to Their Motion to Compel Production of Third-Party Arm Licenses and Related Agreements (Oct. 17, 2025) | A272 – A276 |
| Qualcomm Exhibit 1 – ███████████████ | A277 – A294 |
| Qualcomm Exhibit 2 – ███████████████ | A295 – A339 |
| Qualcomm Exhibit 3 – ███████████████ | A340 – A351 |
| Qualcomm Exhibit 4 – Email from J. Hartley to P. Evangelatos et al. re: Qualcomm v. Arm – Third Party Agreements (Oct. 16, 2025) | A352 – A358 |
| Qualcomm Exhibit 5 – ███████████████ | A359 – A524 |
| Qualcomm Exhibit 6 – Meet & Confer Transcript Excerpt (Oct. 10, 2025) | A525 – A532 |
| Qualcomm Exhibit 7 – Email from A. Basner to P. Evangelatos et al. re: Qualcomm v. Arm, Case No. 1:24-cv-490 (Oct. 15, 2025) | A533 – A537 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Defendant Arm Holdings PLC's Response to Qualcomm's December 16, 2025 Letter to Special Master Rychlicki (Dec. 23, 2025) | A538 – A541 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Declaration of Peter Evangelatos in Support of Arm Holding PLC's Response to | A542 – A545 |

| | |
|---|---|
| Qualcomm's December 16, 2025 Letter to Special Master Rychlicki (Dec. 23, 2025) | |
| Arm Exhibit 1 – Plaintiffs' Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discovery Disputes (Aug. 1, 2025) | A548 – A555 |
| Arm Exhibit 2 – Qualcomm Amended and Restated Architecture License Agreement (ALA) (May 30, 2013) | A556 – A599 |
| Arm Exhibit 3 – Plaintiff's Letter to Special Master Rychlicki Regarding Subsequent Events Relating to Motion to Compel Production of Arm's Architecture License Agreements (Dec. 16, 2025) | A600 – A603 |
| Arm Exhibit 4 – Letter from S. Collins to A. Chaplin (Dec. 10, 2025) | A604 – A635 |
| Arm Exhibit 5 – Deposition of William Abbey Excerpt (June 26, 2025) | A636 – A641 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Plaintiffs' Letter to Special Master Rychlicki Regarding Subsequent Events Relating to Arm's Architecture License Agreements (Dec. 26, 2025) | A642 – A643 |
| *Qualcomm Inc. and Qualcomm Techs., Inc.* v. *Arm Holdings PLC., f/k/a Arm Ltd.*, C.A. No. 24-490-MN, Special Discovery Master Hearing Excerpt (Aug. 14, 2025) | A644 – A646 |

5

A525

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
------------------------------------x
QUALCOMM INCORPORATED, a Delaware
Corporation, QUALCOMM TECHNOLOGIES,
INC., a Delaware corporation,

                    Plaintiffs,


               - against -


ARM HOLDINGS PLC, f/k/a, ARM LTD.
A U.K. corporation,

                    Defendants.
------------------------------------x
                    Zoom videoconference
                    October 10, 2025
                    11:05 a.m.


               MEET & CONFER


Transcribed by Dawn Matera, a Certified
Shorthand Reporter and Notary Public for
the State of New York.


               *     *     *

Page 2

APPEARANCES:

PAUL WEISS RIFKIND WHARTON & GARRISON LLP
    1285 Avenue of the Americas
    New York, New York 10019
BY: CATHERINE NYARADY, ESQ.
BY: JAKE BRALY, ESQ.
BY: JACOB APKON, ESQ.
BY: STEPHANIE CHIN, ESQ.
BY: ADAM BASNER, ESQ.
BY: JEN HARTLEY, ESQ.

MORRIS NICHOLS ARSHT & TUNNELL LLP
    1201 North Market Street
    16th Floor
    Wilmington, Delaware 19899

BY: JENNIFER YING, ESQ.
BY: TRAVIS J. MURRAY, ESQ.

KIRKLAND & ELLIS LLP
    333 West Wolf Point Plaza
    Chicago, Illinois 60654

BY: JAY EMERICK, ESQ.
BY: PETER EVANGELATOS, ESQ.

YOUNG CONAWAY STARGATT & TAYLOR LLP
    1000 North King Street
    Rodney Square
    Wilmington, Delaware 19801

BY: DANIEL MACKRIDES, ESQ.

Page 3

APPEARANCES (Continued):

MORRISON & FOERSTER LLP
    425 Market Street
    San Francisco, California 94105

BY: NICHOLAS FUNG, ESQ.

    *   *   *

Page 4

    Meet and Confer

MR. BRALY:  Hopefully, this won't take long.  I think really we're just asking if you can produce the spreadsheet, I think it's been referred to in a number of depositions.  I think you also had put in your letter to the Special Master that you would produce it, but there was information on the spreadsheet that pertains to some of the companies that have moved for protective orders.

So we're just asking if you produce the spreadsheet and you can redact the information that's relevant to the third parties that have moved for protective orders.  You know, if you just sort of, I guess, if you leave the name of the company that you redact sort of all of the additional information, but to make that production.

And then pending resolution of the third-party motion of the Special Master, if she says, in fact, that, you know, those licenses and that information

Page 5

    Meet and Confer

should be produced, you can then produce an updated copy of the spreadsheet and remove whatever redactions that you provide that were originally produced.

MR. EMERICK:  Would producing a redacted version of the spreadsheet result in you dropping any of the disputes that are currently before the Special Master?

MR. BRALY:  Which disputes, like the third-party disputes?

MR. EMERICK:  Any dispute.

MR. BRALY:  We would have to look at the spreadsheet.  Without seeing it, I don't think so.  It's hard to kind of make that promise without looking at the spreadsheet.

MR. EMERICK:  Are you seeking to modify the protective order at all in this?

MR. BRALY:  What do you mean?

MR. EMERICK:  In connection with your request or otherwise, are you seeking to modify the protective order in

2 (Pages 2 - 5)

Page 6

Meet and Confer

this case at all?

MR. BRALY: I guess I am not sure what you mean.

MR. EMERICK: So do you know that we have a protective order?

MR. BRALY: Of course.

MR. EMERICK: And are you seeking to modify that protective order at all?

MR. BRALY: Are you saying because we're asking for redactions, is that's why you're saying that?

MR. EMERICK: I am asking if you are seeking to modify the protective order in this case?

MR. BRALY: No, we are not seeking to modify the protective order. We are asking for a redacted version of the spreadsheet, because you withheld it, because you said there is information in the spreadsheet that you're not providing because of pending protective order motions.

MR. EMERICK: Is it your

Page 7

Meet and Confer

position that the protective order allows Arm to produce documents with redactions for third-party confidential information?

MR. BRALY: No. We are saying we would like to work around the issue that is currently in front of the Court and we are trying to seek the spreadsheet that you have referenced previously in multiple depositions and, as I just said, pending resolution of the Special Master ruling on the protective order motions, potentially produce an unredacted version of the spreadsheet.

MS. NYARADY: To be clear, Jay, this is not any kind of, you know, effort to amend the protective order and it's not any kind of indication on our part that we think you can produce redacted documents.

We have a scheduling issue, because things were brought to the Special Master late and now we're running up against summary judgment. So it's got nothing to do with trying to revise the

Page 8

Meet and Confer

fact that parties should not be redacting, but the alternative is we're going to have to file for summary judgment without the chart and seek to have you precluded from relying on it in any way, so that's why we are asking for it.

MR. EMERICK: Sorry, what's the preclusion issue?

MS. NYARADY: If you won't give us the chart, we were going to ask to have it precluded, that you can't rely on it.

MR. EMERICK: Understood.

MS. NYARADY: And we are probably going to ask for an adverse inference that the chart is not helpful to you. Because you mentioned the chart repeatedly in depositions and we have been unable to get access to any portion of it, including portions that are not in dispute.

MR. EVANGELATOS: Counselor, what I am curious about is why -- why now

Page 9

Meet and Confer

should we suddenly produce it, when yes, we have had this dispute before the Special Master. It's briefed. It's on the Special Master's plate clearly with the third-party disputes. I mean, why should we deviate from the PO obligation that you guys argued for now for one document and what is the basis for some sort of adverse inference based on the Special Master needing to take time to rule on the motions?

MS. NYARADY: I already said it's because summary judgment is due in a couple of weeks.

MR. EVANGELATOS: And summary judgement is due for us as well. And I hear you on the scheduling problem, it's the same problem for us, but why should we deviate from the PO obligation that you argued for?

MS. NYARADY: You don't have to. And obviously it sounds like you're not going to. And I just want to put you on notice of what we are going to argue.

3 (Pages 6 - 9)

Page 10

Meet and Confer

So you don't have to. We made the request. You've denied it. I think it's a practical solution for a path forward. If you don't, that's fine.

MR. EMERICK: If the Special Master orders you guys to produce something that you haven't produced, are you willing to agree to an adverse inference on that issue, because we haven't gotten the documents as of summary judgment?

MS. NYARADY: That's not the same thing as what we are dealing with here. The question is just whether you're going to produce it in whole or in part after the Special Master ruling.

MR. EMERICK: So I take it it's a no?

MS. NYARADY: I don't think there is anything pending before the Special Master that has the same factual predicate. If you have something in mind, I'm happy to talk about it specifically, but I don't think there is

Page 11

Meet and Confer

anything.

MR. EVANGELATOS: So by that logic, Catherine, are you saying that all these -- all the documents that are subject to the third-party disputes, we are not going to be able to rely on those, that you're going to seek an adverse inference on that too, or just the spreadsheet?

MS. NYARADY: The only document that we asked for is the spreadsheet, so that's the one I am focused on.

MR. EVANGELATOS: You've asked for the documents themselves, too, the contracts, have you not? The ███████ ███████████████████ all the others, have you not?

MS. NYARADY: We haven't asked for that in redacted form. I thought you meant what we are meeting and conferring on right now; the spreadsheet redactions. I thought you were referring to that conversation.

So the only thing that we've

Page 12

Meet and Confer

asked for in redacted form is the spreadsheet and that was just a workaround because of the briefing schedule.

Peter, let me just ask you one question, just to make sure we're not on different pages or talking past each other. Your intention is to produce the spreadsheet in redacted form if you win the motion in front of the Special Master, right? So...

MR. EMERICK: We don't know what the Special Master is going to order on this and that's kind of the point, which is it's a pending dispute before the Special Master. We're going to get some kind of order from the Special Master as to what we do with this.

MS. NYARADY: Well, I don't think that's right. I mean --

MR. EMERICK: Well, I don't think that's right.

MS. NYARADY: -- he's not deciding full on whether there is a

Page 13

Meet and Confer

production of the spreadsheet. I thought it was just a question of whether certain information is going to be redacted, the third-party stuff that's been objected to, so this is helpful and this is new news for me.

Are you saying that there is a universe in which you plan on just not producing the spreadsheet in its entirety?

MR. EMERICK: I don't know what the Special Master is going to order on this. There is a pending Special Master dispute on it. I don't know what the ruling is going to look like. You seem to think you know what the ruling is going to look like.

MS. NYARADY: I don't what the relief sought has been. And so based on that my understanding was that at some point there is going to be a production of the spreadsheet and it just is a question of whether or not there will be redactions and the extent of those

4 (Pages 10 - 13)

Page 14

Meet and Confer

redactions.

It sounds like -- and this is very helpful for our briefing -- it sounds like --

MR. EMERICK: I don't know, because you guys asked for a protective order that says there shall not be these redactions by a party. And so I don't know -- I don't know what the interplay is going to look like with the Special Master's order and Judge Noreika's protective order on that. That is all I am saying. I just don't know what the outcome of that is going to look like.

MS. NYARADY: But you're envisioning a universe in which there is an outcome where you don't produce the spreadsheet in any form, it sounds like.

MR. EMERICK: I don't know.

MR. EVANGELATOS: Catherine you're saying that. I don't think we've taken a position either way.

I think we are saying to you very clearly, and thankfully there is a

Page 15

Meet and Confer

court reporter, that we don't know what's going to happen and we will address it when there is a ruling from the Special Master. We have not said anything about not producing the document at all. Those are your words.

MS. NYARADY: Right. And I am asking if you would take a position on it. I guess you're unable or unwilling to. And that's fine.

MR. EMERICK: Our position is we're going to comply with the Special Master's order and Judge Noreika's protective order.

MS. NYARADY: So if the Special Master says produce it but redact the third-party confidential information, what are you going to do, because those two comments you just made, Jay, seem to be in conflict.

MR. EMERICK: So, Catherine, we are going to comply with the orders and I say the Special Master's order, but that's of course subject to review, so

Page 16

Meet and Confer

just for clarification of that point on the record. We are not precommitting in case there is a review that goes on with respect to that.

But we're not getting into what the scenarios look like depending on if the Special Master's order has this particular language and what happens. The point is we don't know what is going to happen.

MS. NYARADY: Let me ask you one other question. Does Arm object to producing the spreadsheet other than with respect to third-party objections? Put it another way, but for the third-party objections, would Arm have produced the spreadsheet?

MR. EMERICK: So we'll take back your request on this. I understand you're seeking the adverse inference and/ or plan to seek an adverse inference on it. So we will take this back to the team and the client and we can move on to the next issue.

Page 17

Meet and Confer

MR. EVANGELATOS: And then I'll just note in there, as well, Catherine, I think we objected, at least in part, to if there is privileged information in the document. I think we said that to you before, that we have objected on both privilege and third-party grounds, and so, I'll just note that as well.

MS. NYARADY: Okay. And just to be clear, so other than privilege, though, do you have an objection to producing the spreadsheet but for the third-party objection? And I ask because I had not understood there to be an objection. I had understood that what was holding up the production of the spreadsheet is the third-party objections, putting aside, Peter, whether you intend to redact anything, you know, on privileged grounds.

MR. EVANGELATOS: Yeah, so I think that's right. So we've told you this, I think in letters, I think we told you -- I remember saying it myself on the

5 (Pages 14 - 17)

Page 18

Meet and Confer
record during a deposition at some point. We intend to produce the document. I mean, we want to rely on it just as much as you want the document as well. And I think we said that in our, in our opposition to ████████ that the documents in the ████████ information is important, so I don't think there is any dispute on that piece.

MS. NYARADY: Okay. Jen Ying, anything else on your end?

MS. YING: No, I think we understand that -- please correct me if I am wrong if I didn't quite understand what you just said, Peter, which is that you guys, but for the third-party objections, would produce the spreadsheet subject to any privileged claims that you guys might have; is that correct?

MR. EVANGELATOS: Yeah, I think that's right. We've said that before, you know, we want to produce the document that these third-party issues are holding us up, subject to the privileged

Page 19

Meet and Confer
redaction.

MS. YING: Okay. And would your privilege claim as to the document as a whole or is it as to portions of document?

MR. EVANGELATOS: I will have to go back and check on the specifics of that, it's been some time since I looked at that specific question. But we can take it back and look at it.

But, I mean, clearly if we're saying that the privilege -- we are objecting on privilege grounds, but we were going to produce the document, so I don't think it's for the entirety.

MS. YING: Okay, thank you.

MS. NYARADY: I think if I have this right, I think we're leaving this that you at least are on notice of our plans and you're going to take that back, and I assume we'll get some sort of a final answer on whether we can move forward with a production of any kind; is that fair?

Page 20

Meet and Confer
MR. EMERICK: Yeah, that's right.

MR. EVANGELATOS: Yeah, that's right. And obviously we disagree that any adverse inference is appropriate.

MS. NYARADY: I am shocked to hear that, Peter.

MR. EMERICK: Catherine, you weren't willing to trade on the adverse inference on your side?

MS. NYARADY: All right. I think there -- was there a second issue, I guess, on those other documents. I don't know who's going to speak to that on our side.

MR. BASNER: This is Adam from Paul Weiss. I can just ask Peter, I think you said you were going to follow up by e-mail with us yesterday. So is that something that we can expect to see today?

MR. EVANGELATOS: We are looking into it. I don't know I'll have an answer for you today.

Page 21

Meet and Confer
MR. BASNER: Okay. And same question, we understand that you've heard from ████████ and just wanted to see what the timeline would be on producing ████████ agreement?

MR. EVANGELATOS: I will have to check with the team on that. I know you guys have been handling with them for some time. I would have to check on the latest on that. And, you know, if there has been an agreement and redactions have been agreed to we will get that out promptly. I am just not sure off the top of my head.

MR. BASNER: Okay, thanks.

MR. EVANGELATOS: I think that's it, right, on the exchange? So if there is anything else, you know, let us know, but if not, I think we're done.

MS. NYARADY: Amazing. Have a great weekend everyone.

MR. EMERICK: Thanks everyone.

(Time noted: 11:20 a.m.)

6 (Pages 18 - 21)

Page 22

CERTIFICATION

I, Dawn Matera, a Certified Shorthand Reporter and a Notary Public, do hereby certify that the foregoing is a true and accurate transcription of my stenographic notes.

I further certify that I am not employed by nor related to any party in this action.

_Dawn Matera_

_____
Dawn Matera

\*   \*   \*

7 (Page 22)

# EXHIBIT 7

 Outlook

---

## RE: Qualcomm v. Arm, Case No. 1:24-cv-490

---

**From** Basner, Adam L <abasner@paulweiss.com>

**Date** Wed 10/15/2025 9:16 PM

**To**    Evangelatos, Peter <peter.evangelatos@kirkland.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>

**Cc**    GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <QualcommvArm@dirllp.com>; jying@morrisnichols.com <jying@morrisnichols.com>

Peter,

As you may recall from the meet and confer five days ago, you represented that if ▮▮▮▮▮ and Qualcomm had reached an agreement on redactions, you would "get that out promptly." 2025.10.10 M&C Tr. 21:11-15.  We understand that your position now is that you will not produce the redacted versions that ▮▮▮▮ has authorized you to produce unless and until the Special Master rules that Qualcomm's TLA claims relate only to ▮▮▮▮▮▮▮▮▮ or grants a protective order motion from ▮▮▮▮  Please confirm.

Your email mischaracterizes the parties' dispute before Judge Fallon. The subject of the parties' March briefing to the Court was whether the *producing party* should be permitted to unilaterally redact information that is allegedly subject to a third-party confidentiality agreement or that a third party requests the producing party to redact, without the third party ever moving for a protective order.  Arm advocated for such redactions, proposing that "the *producing party* may redact Designated Confidential Information (as defined in the ESI Order) that is subject to a confidentiality agreement with a Third Party for which a Third Party has requested redaction." D.I. 68 Ex. D ¶ 52 (emphasis added).  Qualcomm made clear its objection that the decision to redact third party confidential information should not be left to Arm and the third party.  D.I. 70 at 2 ("Arm should not be permitted to redact third-party information contained in responsive documents in the first instance, forcing Qualcomm to move to have the documents unredacted"); *Id.* at 4 ("If a dispute cannot be resolved by the parties, it should be left to the Court, and not to Arm and self-interested third parties").  And Qualcomm explained that its concern was motivated by two instances of Arm's inappropriate redactions in the prior litigation—one resulting in the Court precluding Arm from using certain evidence and advancing certain theories in light of its redactions of ALAs and refusal to produce unredacted versions, and another where the Court had to scold Arm that its redactions were "sloppy, inconsistent, wrong," "ridiculous," and "garbage," and that Arm "should be embarrassed" that Qualcomm had to bring them to the Court's attention.  *Id.* at 2-3 (citing 2024.09.05 Hr'g Tr.).  In rejecting Arm's Protective Order proposal, Judge Fallon also acknowledged that the scope of the dispute was over Arm's proposal to "permit a *producing party* to redact information that is subject to a confidentiality agreement with a third party." D.I. 74 (emphasis added).

Nothing in the March briefing, the Court's Order, or the Protective Order prevents the ordinary course whereby a third party may negotiate with the party seeking production of its documents to resolve the dispute without Court intervention.  Qualcomm's brief to Judge Fallon made clear that remained an

option.  D.I. 70 at 4 ("The usual method for protecting information—party negotiation followed by a prompt protective order motion by the third party to resolve any disputes—is the appropriate procedure.").  Arm's apparent position to the contrary—that no redactions are ever permissible absent a motion for a protective order granted by the Court—is incorrect and invites an astonishing waste of resources for the parties, the third party, and the Court.

Consistent with the expectation in Delaware, Qualcomm engaged in a series of meet and confers with ▉▉▉▉▉▉ counsel, as noted in Qualcomm's letter to the Special Master.  2025.09.15 Letter to SM Rychlicki re: Newly-Learned Facts and Subsequent Events at 2 n.2.  In the interest of not burdening the Special Master with yet another (repetitive) motion for a protective order, Qualcomm and ▉▉▉▉▉▉ agreed that ▉▉▉▉▉▉ would permit production of redacted versions of its agreements now, along with a corresponding redaction log, while the parties await the Special Master's rulings. ▉▉▉▉▉▉ further agreed to abide by the Special Master's rulings as it relates to other third-party protective order motions, such that ▉▉▉▉▉▉ would agree to produce a lesser redacted or unredacted version at a later date, consistent with the Special Master's rulings.

Please confirm by noon tomorrow, October 16, that Arm will promptly produce the materials ▉▉▉▉▉▉ provided.  Otherwise, Qualcomm intends to raise this issue with the Special Master.

Regards,
**Adam L Basner** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
2001 K Street, NW | Washington, DC 20006-1047
+1 202 223 7367 (Direct Phone) | +1 202 478 0493 (Direct Fax)
abasner@paulweiss.com | www.paulweiss.com

---

**From:** Evangelatos, Peter <peter.evangelatos@kirkland.com>
**Sent:** Tuesday, October 14, 2025 7:49 PM
**To:** Basner, Adam L <abasner@paulweiss.com>; #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; jying@morrisnichols.com
**Subject:** RE: Qualcomm v. Arm, Case No. 1:24-cv-490

Adam,

In March, the parties briefed competing Protective Order proposals for the treatment of third-party confidential information. In its briefing, Arm argued that "the Parties should be permitted to redact third-party confidential information in documents newly produced in this action." D.I. 68. Qualcomm argued that "Arm should not be permitted to redact third-party information contained in responsive documents," that "[a] third party wishing to protect confidential information has the burden of establishing good cause for doing so under Rule 26," and that "[a] third party wanting its information redacted must show why the requested redactions are appropriate." D.I. 70 at 1, 2.

The Court's ruling "reject[ed] Arm's proposals which would permit a producing party to redact information that is subject to a confidentiality agreement with a third party" and further stated that "neither the case authority cited by Arm nor the record in related Civil Action No. 22-1146-MN supports Arm's position that a provision permitting redactions of third-party confidential information should be included in the protective order and the ESI order." D.I. 74. The Court ordered that "a third party seeking further protections for its highly confidential information may follow the well-established procedure of moving for a protective order, which allows the court to balance the relevance of the information against the risk of inadvertent disclosure." *Id.*

As with any other third party confidential information, the proper procedure is for the third party, *i.e.,* ███████ to file for a protective order. Has Qualcomm received ████████ redactions, does Qualcomm agree that ████████ may redact that information, and is Qualcomm unopposed to such a motion? Assuming the Special Master rules in Arm's favor and finds that Qualcomm's only TLA claims are for ████████████████ then Arm would not oppose the redactions we have received from ████████ Arm reserves all rights to revisit these redactions if the Special Master finds that cores other than ████████████████ are in the case.

Best,
Peter

**Peter Evangelatos**
_____

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3291 **T** +1 516 528 6348

**F** +1 212 446 4900
_____

peter.evangelatos@kirkland.com

---

**From:** Basner, Adam L <abasner@paulweiss.com>
**Sent:** Monday, October 13, 2025 7:44 PM
**To:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; MoFo_Arm_QCOM <mofo_arm_qcom@mofo.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Cc:** GRP-QCvARM <GRP-QCvARM@paulweiss.com>; Qualcommv Arm <qualcommvarm@dirllp.com>; jying@morrisnichols.com
**Subject:** Qualcomm v. Arm, Case No. 1:24-cv-490

---

Counsel,

We understand that on Thursday, ████████ provided Arm with redacted versions of its agreements that it is willing to have produced at this time. Please produce these agreements to us no later than tomorrow, October 14th.

Regards,
**Adam L Basner** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
2001 K Street, NW | Washington, DC 20006-1047
+1 202 223 7367 (Direct Phone) | +1 202 478 0493 (Direct Fax)
abasner@paulweiss.com | www.paulweiss.com

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have

received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this

communication and all copies thereof, including all attachments.

A537

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation,
and QUALCOMM TECHNOLOGIES, INC.,
a Delaware corporation,

        Plaintiffs,

    v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a
U.K. corporation,

        Defendant.

C.A. No. 24-490-MN



## DEFENDANT ARM HOLDINGS PLC'S RESPONSE TO QUALCOMM'S DECEMBER 16, 2025 LETTER TO SPECIAL MASTER RYCHLICKI

Dated: December 23, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com
reid.mcellrath@kirkland.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

Dear Special Master Rychlicki:

We write in response to Qualcomm's December 16, 2025 letter regarding its motion to compel the production of Architecture License Agreements ("ALAs") between Arm and third parties. Arm does not object to the production of ████████████████████████ ALAs and Annexes, subject to the protections discussed below. ████████████████████████████████ ████████████████████████████████████████████████████████████

████████████████████████████████ For example, when Arm referenced ███████████████████ ████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Whether Arm negotiated in good faith instead turns primarily on the parties' conduct, not on whether another licensee has different terms that Qualcomm finds more attractive. "Nothing in the duty of good faith requires that parties to a negotiation propose only such terms as the other party is happy with" or that match the terms of another agreement. *Warner Theatre Assocs. Ltd. P'Ship. v. Metro. Life Ins. Co.*, 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997), *aff'd*, 149 F.3d 134 (2d Cir. 1998).

If the Court does order production of any ███ ALAs or Annexes, those productions should come with enhanced protections. No outside counsel for Qualcomm or any other advisor involved in ████████ negotiations should have access to those materials. To the extent outside counsel who have entered an appearance in this case are advising on those negotiations, they should provide written confirmation that they will not use those materials to in any way influence the advice they provide Qualcomm, consistent with their obligation under the Protective Order to use highly confidential information "only for purposes of this Litigation" and "not … in any other way, or for any other purpose." D.I. 84 ¶ 37. Qualcomm would not have access to other ALA licensees' terms in the ordinary course of business and should not be permitted to use this litigation to gain a commercial advantage by leveraging its outside counsel's knowledge of those agreements to assist in its commercial negotiations. Given the complexity of the situation, Arm will immediately work with Qualcomm to reach an agreement on appropriate confidentiality procedures for the ████████████████ materials.

---

[1]    Qualcomm incorrectly asserts ████████████████████████████████████████████████ ████████████████████████████████ in a letter that was not even served on Ampere, despite Ampere having a pending motion for a protective order. Ex. 3 at 2 n.3. Although Arm and Ampere now have a common majority owner, Ampere remains an independent third party. Arm has no ownership or control over Ampere.

1



Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

Words: 1017

---

2   The ALAs and annexes still have no bearing on Qualcomm's claim for breach of ████ of the ALA for the reasons discussed in Arm's August 7, 2025 letter.

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,

Plaintiffs,

v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,

Defendant.

C.A. No. 24-490-MN



## DECLARATION OF PETER EVANGELATOS IN SUPPORT OF DEFENDANT ARM HOLDINGS PLC'S RESPONSE TO QUALCOMM'S DECEMBER 16, 2025 LETTER TO SPECIAL MASTER RYCHLICKI

Dated: December 23, 2025

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Meredith Pohl
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
meredith.pohl@kirkland.com
matt.mcintee@kirkland.com

Jay Emerick
Reid McEllrath
Adam M. Janes
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

A542

reid.mcellrath@kirkland.com
adam.janes@kirkland.com

Nathaniel Louis DeLucia
Peter Evangelatos
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
nathaniel.delucia@kirkland.com
peter.evangelatos@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
sdawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5348
nfung@mofo.com

I, Peter Evangelatos, declare as follows:

I am an attorney with the law firm of Kirkland & Ellis LLP, counsel for Arm Holdings PLC ("Arm") in the above referenced action. I submit this declaration in support of Arm's Response to Qualcomm's December 16, 2025 Letter to Special Master Rychlicki.

1. Attached as Exhibit 1 is a true and correct copy of Plaintiff's Letter to Special Master Helena C. Rychlicki Regarding Outstanding Discover Disputes, dated August 1, 2025. █████████████████████

2. Attached as Exhibit 2 is a true and correct copy of the May 31, 2013 Amended and Restated Architecture License Agreement between Arm and Qualcomm, bearing Bates stamp ARM_00055357. ██████

3. Attached as Exhibit 3 is a true and correct copy of Plaintiff's Letter to Special Master Rychlicki Regarding Subsequent Events Relating to Motion to Compel Production of Arm's Architecture License Agreements, dated December 16, 2025. ████████████ ███████

4. Attached as Exhibit 4 is a true and correct copy of a December 10, 2025 letter from S. Collins to A. Chaplin. ████████

5. Attached as Exhibit 5 is a true and correct excerpted copy of the June 26, 2025 deposition transcript of William Abbey. ████████

1

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 23rd day of December 2025 at New York, N.Y.

/s/ Peter Evangelatos
Peter Evangelatos

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 23, 2025, a copy of the

foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jennifer Ying
Travis Murray
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com
John Poulos
NORTON ROSE FULBRIGHT US LLP

Ruby J. Garrett
Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
ewesterhold@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Anish Desai
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com
adesai@paulweiss.com

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
gstephenson@paulweiss.com

grp-qcvarm@paulweiss.com

1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2

A547

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,                )
   a Delaware corporation; and        )
QUALCOMM TECHNOLOGIES, INC.,          )
   a Delaware corporation,            )
                                )
               Plaintiffs,             )   C.A. No. 24-490 (MN)
                                  )
      v.                             )
                                  )
ARM HOLDINGS PLC., f/k/a ARM LTD.,    )
   a U.K. corporation,                )
                                  )
              Defendant.              )

## PLAINTIFFS' LETTER TO SPECIAL MASTER HELENA C. RYCHLICKI REGARDING OUTSTANDING DISCOVERY DISPUTES

OF COUNSEL:

Catherine Nyarady
Anish Desai
S. Conrad Scott
Jacob A. Braly
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric C. Westerhold
Adam Basner
Gregg Stephenson
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
DUNN, ISAACSON, RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

August 1, 2025

A550

Dear Special Master Rychlicki:

In August 2022, Arm sued Qualcomm for developing unlicensed technology after Arm terminated agreements with Qualcomm subsidiary Nuvia. *Arm Ltd.* v. *Qualcomm Inc.*, C.A. 22-1146 (MN), D.I. 1 ¶ 78. Rather than waiting for resolution through litigation, Arm engaged in self-help, withholding licensed technology from Qualcomm, refusing to license other technology, and interfering with Qualcomm's customer relationships. D.I. 137 ("SAC"). Qualcomm filed this lawsuit. D.I. 2. In December 2024, the *Arm* v. *Qualcomm* jury found the Qualcomm CPUs licensed. C.A. 22-1146 (MN), D.I. 572 at 1.

## I.  Refusal to Produce Unredacted Third-Party Agreements

**TLAs.** Qualcomm needs Arm's TLAs and related agreements—and associated 30(b)(6) testimony (**RFPs 123, 140; Topics 2, 9**)[1]—to prove quotes Arm gave Qualcomm for Arm Cortex Implementation Cores (codenamed ███████████████████) violated the Qualcomm TLA, which ████████████████████████████████████████████████████ SAC ¶¶ 104-105; Ex. 8 ████████ Arm claims it based the October 2024 quote on ███████████████████ Ex. 9 at 23:1-24; Ex. 10 at 97:12-98:2; Ex. 11 at 65:24-72:9. Arm should produce all[2] agreements, so Qualcomm can test whether Arm based its ███████ ████████████████████—and whether Arm's quotes for other IP violated the implied covenant of good faith and fair dealing. Arm should also produce a witness on the agreements' royalty rates.

Arm claims it "produced all third-party agreements" licensing the Implementation Cores "to which it has not received an objection or a motion for a Protective Order was not filed." Ex. 12 at 2.[3] Arm's withholding based on mere "objections" is improper under the Protective Order. D.I. 84 ¶ 51. Arm's representation also is inaccurate: it has not produced agreements for several entities licensing these products, including ████████████████████████████████████ ███████████████████████ And Arm omitted Annexes for several agreements that contain pricing information. ████████████████████████████████ Finally, Arm improperly limits production to TLAs licensing ████████████████ but Qualcomm's claims allege Arm provided unreasonable quotes for other TLA IP. SAC ¶¶ 51, 102.

Arm also put these third-party agreements at issue by using the fact that Qualcomm has not seen third-party TLAs to cross-examine Qualcomm witnesses, asking whether they were aware of pricing of ████████████████ in third-party TLAs and whether the rates provided to Qualcomm were accepted by the industry. Ex. 20 at 106:6-107:22; Ex. 21 at 49:16-19, 53:8-22.

---

[1] "RFP" refers to Qualcomm's requests for production, Exhibits 1-4. "Topic" refers Qualcomm's Notice of Rule 30(b)(6) Deposition of Arm, Exhibit 5. "Interrogatory" refers to Qualcomm's interrogatories, Exhibits 6-7.

[2] With respect to ██████ agreements, Morris, Nichols, represents Qualcomm.

[3] ██████ agreed to production of its TLA and related agreements, Ex. 13, yet Arm has not produced them.

Arm cannot challenge Qualcomm's knowledge of third-party pricing while simultaneously withholding it.

**ALAs.** Arm breached the Qualcomm ALA by withholding out-of-box packages ("OOBs") and Architecture Compliance Kit ("ACK") patches. SAC ¶¶ 173-180. Arm argues it was not obligated to deliver that technology, including because it is not ██████████under the ALA. Ex. 22. Arm provided that technology to other licensees, Ex. 45 at 94:25-97:16, 126:8-127:4, thus, Qualcomm seeks to determine whether the definition of and obligation to deliver ████ ████████ is the same in those partners' ALAs.

Additionally, in May 2020, Qualcomm elected to extend the Qualcomm ALA to ████ ████████████████████████████ including Armv10. SAC ¶¶ 128-134, 184. ████ ███████████████████████████████████ *id.* ¶ 65; Ex. 23, yet Arm failed to respond to Qualcomm's election for five years, violating the implied covenant of good faith and fair dealing. Arm denies a breach, claiming it engaged in good faith negotiation even though Qualcomm's election was improper and the ALA would not cover v10. Ex. 24. Qualcomm needs to review other ALAs to address Arm's defense.

In *Arm* v. *Qualcomm*, Arm produced limited heavily redacted ALAs, which are insufficient here. Qualcomm needs *all* unredacted ALAs and the annexes thereto (**RFP 27; Topics 2, 7**) to evaluate the scope of deliverables and rights of other licensees treated differently than Qualcomm. For example, the produced ALAs redact ██████████████████terms, Ex. 25 at 2, 4, 12, yet Arm argues it did not breach the Qualcomm ALA because the OOBs and ACK patches are ████████ and not ███████████████ Ex. 22 at 6, 10. Arm also redacted all fee and royalty information, Ex. 25, and refused to produce ██████████████(**RFP 162**), both necessary to test Arm's claim of good faith negotiation. At least ██████ agreed to produce its ALA (with limited redactions that do not relate to the provisions at issue), Ex. 13, yet Arm has not produced that document.

As with the TLAs, Arm also questioned multiple Qualcomm witnesses regarding their knowledge of terms in third-party ALAs and whether those terms were comparatively advantageous to Qualcomm, while withholding the agreements that would allow Qualcomm to refute the implications of Arm's examinations. Ex. 20 at 57:2-18; Ex. 26 at 78:14-21, 80:12-21, 164:17-25. This is improper: Qualcomm must be allowed to probe Arm's defenses.

## II.    Improper Privilege Determinations

Arm withheld or redacted documents based on improper privilege assertions. The relevant documents should be produced and redactions should be lifted.

**Communications with FGS Global.** Qualcomm asserted claims arising from the leak by Arm's counsel (MoFo) and communications firm (FGS Global) to Bloomberg News of an October 22, 2024 letter Arm wrote to Qualcomm threatening to terminate Qualcomm's ALA. Arm and FGS Global assert communications about the leak are privileged (including "common interest") or work product. Exs. 29; 46 (FGS Emails). But generic "public relations services," including "[r]eviewing press coverage, making calls to various media to comment on developments in the litigation, and even 'finding friendly reporters,'" are not protected. *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 3140050, at *13-14 (D.N.J. July 22, 2021); *In re Riddell Concussion*

2

A552

*Reduction Litig.*, 2016 WL 7108455, at \*9 (D.N.J. Dec. 5, 2016), *aff'd in relevant part*, 2017 WL 11633446 (D.N.J. Jan. 5, 2017). FGS was engaged by Arm, not its outside counsel.[4] Ex. 28 at 24:2-27:20, 57:17-23. And common interest privilege is merely "an extension of the attorney-client privilege or an exception to the waiver of that privilege." *10x Genomics, Inc.* v. *Celsee, Inc.*, 505 F. Supp. 3d 334, 337 (D. Del. 2020).

**Improper Date Cutoff.** Arm failed to log documents dated after the original April 2024 Complaint. The ESI Order required a privilege log of withheld documents generated prior to "the filing of the Complaint." D.I. 85 ¶ 1(e)(ii). The operative "Complaint" contemplated by the March 21, 2025 ESI Order was the December 16, 2024 First Amended Complaint. D.I. 36. Qualcomm's claims are partly based on post-April 2024 conduct, including Arm's October 22, 2024 letter. While Arm eventually logged 27 entries for "documents relating to Arm's communications with Bloomberg regarding the notice" and related follow up communications, D.I. 162 at 4, it otherwise refused to log withheld documents dated from April 18 and December 16, 2024. Ex. 29.

**Subject Lines Redactions.** Arm redacted for privilege subject lines for four meetings with outside counsel regarding the leak. Exs. 30-33. Arm also clawed back metadata revealing subject lines for 18 documents. Ex. 34. In addition to the subject lines not being privileged, the ESI Order contemplates a party challenging a privilege claim may "request metadata for individual documents and emails," D.I. 85 ¶ 1(e)(v)(1), and such metadata will include "Email Subject," *id.* ¶ 2(p).

## III.    Failure to Provide Discovery

Arm refused to produce documents or provide 30(b)(6) testimony on entire categories of relevant information, prejudicing Qualcomm.

### A.    Breach of Qualcomm ALA

**Withheld Technology.** In support of its ALA breach claim, Qualcomm requested documents regarding the technology and information Arm provided to other ALA licensees but not to Qualcomm, including, for example, versions of Arm's ACK from the relevant time period and any patches thereto (**RFP 6; Topic 14**); documents and communications regarding ACK patches (**RFPs 31, 67, 77, 139; Topic 14**) and OOBs (**RFPs 33, 67; Topic 14**). SAC ¶ 175.

Arm would only produce lists of technology made centrally available for licensee download on an Arm platform and technical documents it claims are "sufficient to show" the OOB and ACK patch development and timeline. Ex. 35 at 2, 7-8; Ex. 36 at 5; Ex. 37 at 18. But ACK patches and OOBs are not available on the platform in question and Qualcomm found no

---

[4] Arm's cases, Ex. 27, show no privilege attaches where the client, not a law firm, retains the PR firm. *In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 331 (S.D.N.Y. 2003) (no privilege for communications had client "hired Firm directly"); *Stardock, Sys., Inc.* v. *Reiche*, 2018 WL 6259536, at \*3, \*6 (N.D. Cal. Nov. 30, 2018).

3

documents in Arm's production showing the time and effort required to develop ACK patches and OOBs. Thus, Qualcomm cannot investigate what Arm withheld and the impact to Qualcomm.

**Arm's Decision-Making.** Qualcomm's **Topic 17** seeks testimony regarding Arm's decision to withhold deliverables from Qualcomm, and **Topic 41** and **RFP 156** seek information regarding Arm's decision to resume providing deliverables following the December 2024 jury verdict in *Arm* v. *Qualcomm*. Although Arm witnesses ████████████████████ ██████████████████████████████████████ Ex. 39 at 116:11-117:23, 125:6-127:12; Ex. 40 at 31:22-32:23, Arm has not produced those communications or provided a witness on its decision-making, limiting discovery to "Arm's provision of materials and support to Qualcomm" both before and after the verdict, and Arm's responses to Qualcomm's notices of breach. Ex. 37 at 41. Qualcomm knows what Arm delivered—it does not know the entirety of what Arm withheld, on what basis, and whether there is additional technology withheld today.

**Third Parties Deliveries.** Arm's delivery of technology to third parties is relevant, including because the Qualcomm ALA requires ███████████████████████ ███████████████████████████████████ and because communications with third parties may show Arm treated Qualcomm differently from others with the same or similar rights (**RFPs 28, 32, 68**). Arm refused to perform a search for documents or provide an accounting of ███████████ or ██████ delivered to third parties but not to Qualcomm (**Interrogatories 1, 5**), instead producing only "documents sufficient to show the centralized distribution of documents, and such documents made available by such distributions, to all third-party ALA licensees." Ex. 35 at 7; Ex. 41 at 9. These limitations do not allow Qualcomm to determine when such technology became ████████████ or who obtained the technology.

## B.    Failure to Negotiate Armv10 License

Arm refuses to provide discovery into the versioning and development timeline of the Arm Architecture, its pricing strategy, or its ███████████████ preventing Qualcomm from evaluating whether Arm negotiated a good faith offer for Armv10. According to Arm's Chief Architect, ███████████████████ Ex. 42 at 130:21-23. Armv9's baseline is relevant to evaluating a fair offer for Armv10. Yet Arm refused to provide discovery into its versioning practices (**RFP 42**) pricing strategies (**Topic 26**), or efforts to encourage adoption of Armv9 (**RFP 102**). Arm also refused discovery into features included in Armv10 and associated value, when Arm began developing Armv10, and information about Arm's licensing of Armv10, including Arm's pricing strategy (**Interrogatory 3;**[5] **Topic 27**).

## C.    Breach of Qualcomm TLA

Qualcomm sought discovery concerning discussions about licensing to Qualcomm under the TLA (**RFPs 40, 56, 57, 63; Interrogatory 6**) and Qualcomm's notices of breach of TLA

---

[5] For **RFP 144**, Arm agreed to produce documents "consistent with its response to Qualcomm's Interrogatory No. 3." Ex. 38 at 27-28.

4

████████ (**RFPs 49, 50, 51**). Arm's production contains less than fifteen emails concerning Qualcomm's requests for licenses to ███████████████████—all from the same three redacted email threads—and not one internal document concerning Arm's response to Qualcomm's breach notices. Arm also improperly withheld as privileged documents purportedly relevant to Arm's CPU pricing analysis and refused to produce 2020-2023 ███████████████████████ ████████████████ Ex. 47 at 1-2. Arm cannot defend against Qualcomm's TLA claim by asserting it undertook ███████████████ but withhold the documents purportedly containing that analysis as privileged.

## IV.    Improper Responsiveness Determinations

Arm crafted underinclusive search terms and interpreted responsiveness so narrowly that it produced fewer than 5,000 emails and only 21 chats.[6] The size of Arm's document production does not match Qualcomm's claims, which allege years-long misconduct by Arm spanning multiple agreements, lines of business, and levels of Arm's organization.

In *Arm* v. *Qualcomm*, Arm produced over 18,000 emails and over 700 chats covering a similar span of time to the conduct at issue in this case. Arm's internal communications proved critical to probing Arm's claims, including, for example, a message from Arm's CEO expressing a desire to "hose" competitors through a shift in business model. C.A. 22-1146 (MN), D.I. 588 (Trial Tr.) at 342:18-343:11. In this case, Arm produced just 12 chats from its CEO, a search term custodian, despite testimony he ███████████████████████████ ███████████████████████████████████ Ex. 44 at 145:4-147:11.

Pursuant to Section 2(b)(i) of the ESI Order, D.I. 85, Qualcomm proposed ten additional search terms and modifications to Arm's terms. Arm deemed its production sufficient.[7] But even if Arm accepted Qualcomm's additional terms, Arm's narrow responsiveness determinations would exclude responsive documents. Qualcomm requests Arm be ordered to produce, without responsiveness review, all non-privileged documents hitting on (1) Arm's terms and (2) Qualcomm's proposed search terms yielding fewer than 15,000 hits, excluding families.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Words: 2394

---

[6] Arm's production in the prior case, Ex. 43 at 1, does not excuse Arm from discovery in this case.

[7] Arm claims its search terms passed requirements in Paragraph 2(b)(i) of the ESI Order. Ex. 43 at 1. But Arm deemed less than 3.5% of the hits to its search terms responsive, Ex. 48 at 7-9; Ex. 49 at 3-4, meaning had it produced no documents at all, it still would have complied with the ESI Order, which requires additional search terms only where "more than 10% of the null set is responsive." D.I. 85 ¶ 2(b)(i).

5

# A556 - A646
# Redacted in Full

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 4, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Sydney D. Gaskins, Esquire                                 *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                                          *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                         *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Kasdin M. Mitchell, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                           *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                                     *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*

Brad D. Sorrels, Esquire                                       *VIA ELECTRONIC MAIL*
Kaitlin E. Maloney, Esquire
Nora M. Crawford, Esquire
WILSON SONSINI GOODRICH & ROSATI, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE  19801
*Attorneys for Non-Party Ampere Computing LLC*

Susan E. Morrison, Esquire                                     *VIA ELECTRONIC MAIL*
Nitika Gupta Fiorella, Esquire
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19899
*Attorneys for Non-Party Apple Inc.*

Hannah Cannom, Esquire                                    *VIA ELECTRONIC MAIL*
Bethany Stevens, Esquire
WALKER STEVENS CANNOM LLP
500 Molino Street, Suite 118
Los Angeles, CA  90013
*Attorneys for Non-Party Apple Inc.*


                                        */s/ Travis Murray*

                                        _____
                                         Travis Murray (#6882)