IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED and QUALCOMM TECHNOLOGIES, INC., | ) ) ) | **REDACTED PUBLIC VERSION** |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 24-490-MN |
| ARM HOLDINGS PLC f/k/a ARM LTD., | ) ) | |
| Defendant. | ) ) | |

**NON-PARTY ANNAPURNA'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S ORDER GRANTING ANNAPURNA LABS (U.S.) INC.'S MOTION FOR A PROTECTIVE ORDER (D.I. 628)**

*Of Counsel:*

Adam Greenfield
Ashley N. Finger
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
(202) 637-2200
adam.greenfield@lw.com
ashley.finger@lw.com

Dated:  February 27, 2026

Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
amayo@ashbygeddes.com

*Attorneys for Non-party Annapurna Labs (U.S.) Inc.*

## I.    INTRODUCTION

Qualcomm seeks highly confidential agreements and related correspondence between Arm and non-party Annapurna Labs (U.S.) Inc. ("Annapurna"). *E.g.*, D.I. 648 ("Objections") at 1.[1] Because these highly sensitive agreements have minimal relevance (if any) to Qualcomm's claims, Annapurna moved for a protective order. D.I. 286. Special Master Rychlicki granted Annapurna's motion because: (1) Qualcomm's requests are overbroad, (2) Qualcomm failed to demonstrate relevance, (3) the documents sought constitute and include trade secrets, and (4) even inadvertent disclosure would "cause great harm" to Annapurna because Qualcomm and Annapurna are direct competitors. D.I. 628 at 5-6. For those same reasons, the Court should overrule Qualcomm's Objections.

After Annapurna filed its motion, Qualcomm provided additional information regarding why it believes third-party agreements are relevant. Qualcomm's opposition to Annapurna's motion (A045-A049, "Opp.") and latest Objections (D.I. 648) revealed to Annapurna for the first time its claim that Arm ███████████████████████████████████ ███████████████████ Objections at 2-3; Opp. at A046. But Annapurna's agreements with Arm are not directed to ███████████████████████████████ ███████ Objections at 4 (citing D.I. 630 and listing cores); Finger Decl. ¶¶ 3-7. And, as Special Master Rychlicki noted, there is no indication that Annapurna's agreements with Arm are "directly implicated." D.I. 286 at 6. This weighs in favor of maintaining the protective order.

---

[1] Qualcomm provided to counsel for Annapurna an outside attorneys' eyes only copy with the confidential information of other third parties redacted.

[2] Neither party provided Annapurna or its counsel with information relating to the ██████████ ██████████ or Qualcomm's allegations arising therefrom before Annapurna moved for a protective order despite Annapurna's requests for a high-level explanation of Qualcomm's claims. *See* A006.

Qualcomm previously argued entitlement to third-party agreements based on its allegations that Arm (1) improperly withheld deliverables and (2) failed to offer commercially reasonable prices. *See* D.I. 211 at 5-6, 8. But Annapurna's separate agreements with Arm have no bearing on allegations that Arm failed to deliver under its own contract with Qualcomm. And Annapurna's separate agreements with Arm reflect a highly-negotiated and unique collaboration arrangement that does not inform whether a separate license under different circumstances is commercially reasonable. A010-A013 ("Bshara Decl.") ¶ 8. Further, any purported relevance is even more tenuous for *other* documents and communications related to these agreements.

At the same time, the risk of harm to Annapurna is great. The documents and information sought are highly sensitive trade secrets, including pricing, payment structures, and forward-looking details. So much so that access to these materials is extremely limited even within Annapurna and Amazon Web Services, Inc. ("AWS").[3] Bshara Decl. ¶ 9. And Qualcomm—the party seeking this information—is a direct competitor that has made clear it intends to imminently enter the space to which the requested documents and information relate. A014-A020; A021-A038. Under these circumstances, the production of these materials on a "Highly Confidential" basis would be insufficient.

Accordingly, the risk of harm to Annapurna far outweighs any potential relevance and Qualcomm's Objections should be overruled and the protective order upheld.

## II. FACTUAL BACKGROUND

Annapurna is a leader in semiconductor chip and software development for data center and cloud computing applications. Annapurna has agreements with Arm to license Arm's technology for incorporation into chip designs. Bshara Decl. ¶¶ 4-5. Qualcomm seeks, and Arm stated it

---

[3] Annapurna is an organization within AWS. Bshara Decl. ¶ 1.

intended to produce, the Technology License Agreement ("TLA"), Arm Total Access Agreement ("ATA"), and Royalty Pricing Agreement ("RPA").  *See* D.I. 628 at 1; Bshara Decl. ¶ 3.  These agreements contain confidentiality clauses, require protective measures, and, in the event of necessary disclosure, advance notice by the disclosing party.  Bshara Decl. ¶ 10.

These agreements are highly negotiated, contain terms unique to Annapurna, and reveal pricing details, payment structures, and forward-looking information.  *Id.* ¶¶ 7-12.  These terms also relate primarily to cores not identified in Qualcomm's document requests or determined to be within the proper scope of discovery.  Finger Decl. ¶¶ 3-7; Objections at 4.  Moreover, these agreements provide sufficient financial details that recipients could ascertain other information about Annapurna's business, including costs that inform Annapurna's strategic pricing decisions.

The terms are so highly confidential and commercially sensitive that these agreements are not externally distributed and internal access is particularly limited.  Bshara Decl. ¶ 9.  Participation in negotiations is limited to a few specific, high-level members of Annapurna, Arm, and AWS.  *Id.* ¶ 7.  Annapurna maintains the agreements internally on a recordkeeping platform with limited access for only employees who have a need to know as part of their role and responsibilities.  *Id.* ¶ 9.  Access is controlled by security measures, such as user authentication and review by the legal department.  *Id.*

## III.    LEGAL STANDARDS

Rule 26 provides that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense" by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(G).  "[G]ood cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure."  *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984).  "[I]t is

clear that a court may issue a protective order restricting disclosure of discovery materials to protect a party from being put at a competitive disadvantage." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 890 (E.D. Pa. 1981). In determining whether good cause exists to preclude discovery, the court considers whether the movant has "show[n] that, absent the protective order, it will suffer a clearly defined and serious injury … balancing relevance, need, confidentiality, and harm." *Arm Ltd. v. Qualcomm Inc.*, No. 22-cv-1146 (D. Del.) ("NUVIA Litigation"), D.I. 207. Indeed, "even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002).

The party seeking discovery (here, Qualcomm) bears the burden of demonstrating relevance. *See Invensas Corp. v. Renesas Elecs. Corp.*, 2013 WL 12156531, at *2 (D. Del. May 8, 2013); *Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, 2017 WL 4310221, at *4 (M.D. Pa. Sept. 28, 2017). The existence of a stipulated protective order "is not a substitute for establishing relevance or need." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990). Rather, a protective order's purpose is to "prevent harm by limiting disclosure of relevant and necessary information." *Id.*

## IV.    ARGUMENT

The broad set of documents and information Qualcomm seeks is minimally relevant (at best), highly confidential, and carries a high risk of commercial harm if disclosed. This is the exact situation where a protective order preventing disclosure is appropriate. Indeed, in a prior litigation between Qualcomm and Arm, the court granted a protective order preventing the production of competitively sensitive non-party licenses with Arm. NUVIA Litigation, D.I. 207 (issuing protective order preventing production of non-party license because of the sensitivity of

the information, the agreement's minimal relevance, and the harm of disclosure "given that Qualcomm's outside counsel will necessarily need to communicate generalized information about the [agreement] to its client"). Qualcomm's Objections do not distinguish the order in the NUVIA Litigation relied on in Annapurna's motion.

### A. The Information Qualcomm Seeks Is Minimally Relevant to Its Claims in this Action

Annapurna's agreements are minimally relevant to Qualcomm's claims of ▮▮▮ based on Arm's alleged (i) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, (ii) withholding of certain deliverables, and (iii) failure to offer commercially reasonable terms to Qualcomm. Any correspondence or other documents related to the agreements are even less relevant than the agreements themselves.

*First*, as Special Master Rychlicki noted, Qualcomm seeks Annapurna's complete agreements as well as "[a]ll" related documents and communications, without limitation and without redactions. Order at 2-3; *see also* A054, A056, A059, A065, A068-A069, A075, A077 (requests cited by Qualcomm); Objections at 1.[4] Qualcomm has not explained how peripheral documents and communications relate to any of its claims—either before the Special Master or now—and Annapurna is unaware of any proposed narrowing or potential redactions. *See generally* Objections; Opp.

*Second*, in its Objections, Qualcomm contends Annapurna's agreements are relevant to its claim that Arm ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ Objections at 2-3. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ *Id.* at 2 (emphasis added). Qualcomm's Objections further explain that Qualcomm and

---

[4] To the extent the Special Master recited different requests for production than those cited by Qualcomm, the point still stands: Qualcomm seeks, throughout its many requests, "[a]ll" documents and communications relating to highly confidential third-party information.

Arm ██████████████████████████, ultimately resulting in Special Master Rychlicki

permitting ████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* at 4

(citing D.I. 630).  Annapurna's agreements with Arm, however, are not ██████████

████████████████████████████████████████████████████████████

██████████████████████████████. Finger Decl. ¶¶ 3-7.

    *Third*, Annapurna's entirely separate agreements with Arm have no bearing on Qualcomm's claims that Arm failed to fulfill its obligations to deliver certain technology to Qualcomm.  *See generally* D.I. 181; *see also* D.I. 386 at 6 ("Nor has Qualcomm demonstrated it has any information that Annapurna has specifically been provided deliverables that were not provided to Qualcomm.").  That claim cannot, therefore, provide the basis for discovery.  *See AdTrader, Inc. v. Google LLC*, 2021 WL 937559, at *2 (N.D. Cal. Mar. 12, 2021) (holding that policies toward non-party advertisers were not discoverable because they revealed nothing about performance of contractual obligations owed to plaintiff under a separate agreement).  Qualcomm's Objections do not argue otherwise.

    *Fourth*, in response to motions for protective orders by other non-party Arm licensees, Qualcomm has argued that the requested agreements are relevant as the "claims necessarily involve comparing licensing offers provided to Qualcomm to those provided to third parties" and that "[t]he pricing at which Arm licensed these cores and peripherals" to non-parties will "provide relevant evidence of the commercially reasonable value of these materials."  D.I. 211 at 8.  But none of Qualcomm's claims in the operative complaint, to the extent disclosed publicly and thus to Annapurna, appear to turn on whether certain prices are commercially reasonable.  *See generally* D.I. 181.  And, Annapurna's agreements do not relate to circumstances and applications

comparable to those covered by Qualcomm's agreements. The terms of the agreements between Annapurna and Arm represent a unique collaboration arrangement where Annapurna serves as a pioneer of Arm-based data center CPUs and provides Arm with valuable technical feedback. Bshara Decl. ¶ 8. Annapurna's agreements are not necessary or sufficient to demonstrate general commercial reasonableness, particularly in view of their highly customized nature. Qualcomm's claims regarding commercially reasonable terms therefore do not warrant production of entire highly confidential Annapurna agreements, much less any related correspondence.

In the NUVIA Litigation, the court granted a protective order under similar circumstances. *See* NUVIA Litigation, D.I. 207. There, in a breach of contract action brought by Arm, Qualcomm argued that pricing terms in non-party licensing agreements were "directly relevant" to its defense to Arm's claim for specific performance because (Qualcomm argued) those terms could demonstrate that monetary damages would be sufficient compensation. *See* NUVIA Litigation, D.I. 201, D.I. 243. The court disagreed, and granted non-party Apple's motion for a protective order, finding that the "highly bespoke" and "highly confidential" agreement between Apple and Arm was of "marginal relevance." *See* NUVIA Litigation D.I. 207, D.I. 252. The same reasoning applies here.

Thus the relevance of Annapurna's agreements is minimal at best and does not outweigh the risk of harm to Annapurna. *See* D.I. 286 at 6. That is true even more so for any correspondence or other documents related to the agreements.

**B.**    **Disclosure Poses Substantial Risk of Competitive Harm to Annapurna**

The risk of significant harm to Annapurna far outweighs any marginal relevance of the agreements to this action. *See Mannington Mills*, 206 F.R.D. at 529. The licensing terms and pricing information sought are highly confidential, protected, customized, and valuable. *See* 6 Del. C. § 2001(4)(a)-(b); *Am. Totalisator Co. v. Autotote Ltd.*, 1983 WL 21374, at *3 (Del. Ch.

{02209663;v1 }                                    7

Aug. 18, 1983) (confirming that "information on prices and costs can be trade secret); D.I. 286 at 6 ("I further find that Annapurna has demonstrated that the information requested by Qualcomm … constitutes trade secrets."). As discussed above, Qualcomm has made clear it intends to imminently enter the space to which the requested agreement terms and pricing relate. Bshara Decl. ¶ 6. At this critical time, if the requested agreements are produced, Qualcomm will gain insight into the highly sensitive commercial arrangements of a primary competitor, Annapurna. *See also* D.I. 286 at 6 ("direct competitors like Qualcomm could reverse engineer pricing levels that Annapurna must achieve from its own products to remain profitable" and "details about what technology and when it was delivered by Arm to Annapurna would reveal information about Annapurna's strategic use of Arm technology in its products").

This competitive harm cannot be remedied by designating the information as viewable by outside counsel pursuant to the existing protective order. As courts in this District have recognized, "the harm of disclosure given that Qualcomm's outside counsel will necessarily need to communicate generalized information about the [agreement] to its client, all of which remains true even given the Protective Order in this case." NUVIA Litigation, D.I. 207; *see also Mannington Mills*, 206 F.R.D. at 530-32 (rejecting argument that attorneys'-eyes-only designation would be sufficient). The same concern exists here. For example, if Qualcomm's counsel intends to use Annapurna's agreements with Arm to assess whether Arm ███████████████████ ██████████████████████████████████, discussions about the details of Annapurna's agreement are inevitable. Even a simple statement that Annapurna's agreements support or refute Qualcomm's claims, e.g., ████████████████ necessarily communicates to Qualcomm the nature of Annapurna's highly confidential agreements. And, "even inadvertent disclosure of Annapurna's trade secrets would cause great harm." D.I. 286 at 6.

The risk to Annapurna is high and far outweighs the minimal relevance of Annapurna's agreements ███████████████████████████████████████████████. Good cause, therefore, exists, for a protective order preventing the disclosure of Annapurna's agreements with Arm and any related documents and communications.

## V.    CONCLUSION

Because the potential harm resulting from disclosure outweighs any relevance, the Court should overrule Qualcomm's objections to the Special Master's Order granting Annapurna's Motion for a Protective Order.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

*Of Counsel:*

Adam Greenfield
Ashley N. Finger
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
(202) 637-2200
adam.greenfield@lw.com
ashley.finger@lw.com

Dated:  February 27, 2026

Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
amayo@ashbygeddes.com

*Attorneys for Non-party Annapurna Labs (U.S.) Inc.*

{02209663;v1 }                                                        9

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February, 2026, the attached **NON-PARTY**

**ANNAPURNA'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL**

**MASTER'S ORDER GRANTING ANNAPURNA LABS (U.S.) INC.'S MOTION FOR A**

**PROTECTIVE ORDER (D.I. 628)** was served upon the below-named counsel of record at the

address and in the manner indicated:

| | |
|---|---|
| Jennifer Ying, Esquire<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899 | VIA ELECTRONIC MAIL |
| Alan R. Silverstein, Esquire<br>CONNOLLY GALLAGHER LLP<br>1201 North Market Street, 20th Floor<br>Wilmington, DE 19801<br>(302) 252-3645 | VIA ELECTRONIC MAIL |
| Karen L. Dunn, Esquire<br>DUNN ISAACSON RHEE LLP<br>401 Ninth Street NW<br>Washington, DC 20004 | VIA ELECTRONIC MAIL |
| Catherine Nyarady, Esquire<br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>1285 Avenue of the Americas<br>New York, NY 10019-6064 | VIA ELECTRONIC MAIL |
| Adam L. Basner, Esquire<br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>2001 K Street, NW<br>Washington, DC 20006-1047<br>(202) 223-7300 | VIA ELECTRONIC MAIL |
| Gregg Stephenson, Esquire<br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>535 Mission Street, 25th Floor<br>San Francisco, CA 94105 | VIA ELECTRONIC MAIL |

Anne Shea Gaza, Esquire                          VIA ELECTRONIC MAIL
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801

Gregg F. LoCascio, Esquire                       VIA ELECTRONIC MAIL
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Jay Emerick, Esquire                             VIA ELECTRONIC MAIL
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654

Peter Evangelatos, Esquire                       VIA ELECTRONIC MAIL
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022

Daralyn J. Durie, Esquire                        VIA ELECTRONIC MAIL
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105

Scott F. Llewellyn, Esquire                      VIA ELECTRONIC MAIL
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202

*/s/ Andrew C. Mayo*

Andrew C. Mayo

{02209663;v1 }                    2