Originally Filed:  February 27, 2026
Redacted Version Filed:  March 6, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED, <br> a Delaware corporation; and <br> QUALCOMM TECHNOLOGIES, INC., <br> a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> ARM HOLDINGS PLC., f/k/a ARM LTD., <br> a U.K. corporation, <br><br> Defendant. | REDACTED - PUBLIC VERSION <br><br> C.A. No. 24-490 (MN) <br> (CONSOLIDATED) |

**QUALCOMM'S RESPONSE IN OPPOSITION TO ARM'S OBJECTIONS (D.I. 664) TO THE SPECIAL MASTER'S FEBRUARY 6, 2026 ORDER (D.I. 630) DENYING DEFENDANTS' MOTION TO STRIKE AND TO COMPEL (D.I. 378)**

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007
(202) 240-2900

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

February 27, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND BACKGROUND ................................................................... 1

II. ARGUMENT ................................................................................................................ 3

    A. Qualcomm Properly Disclosed Its Challenged Claims And Theories. .................. 3

        1. Qualcomm's Theories Were Timely And Should Not Be Stricken. ........... 3

        2. Arm Cannot Satisfy The Pennypack Factors. ............................................ 7

    B. Qualcomm Properly Withheld Privileged Communications. ................................ 8

III. CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Integra Lifesciences* v. *Hyperbranch Medical Technology, Inc.*,
  2017 WL 11558096 (D. Del. Dec. 11, 2017)..........................................................................6, 7

*Oasis Tooling, Inc.* v. *GlobalFoundries U.S. Inc.*,
  C.A. No. 22-312-CJB, D.I. 428 (D. Del. Mar. 4, 2024) .............................................................7

*Onyx Therapeutics, Inc.* v. *Cipla Ltd.*,
  2019 WL 668846 (D. Del. Feb. 15, 2019) ..................................................................................9

*In re Paoli R.R. Yard PCB Litig*,
  35 F.3d 717 (3d Cir. 1994).........................................................................................................3

*Shire Dev. Inc.* v. *Cadila Healthcare Ltd.*,
  2012 WL 5247315 (D. Del. June 15, 2012) ...............................................................................9

*Wachtel* v. *Health Net, Inc.*,
  482 F.3d 225 (3d Cir. 2007)........................................................................................................9

**Rules**

Fed. R. Civ. P. 33(b)(2)...................................................................................................................2, 4

Fed. R. Civ. P. 34(b)(2).......................................................................................................................2

I.      INTRODUCTION AND BACKGROUND

Under the guise of a discovery dispute about the timeliness of interrogatory responses, Arm seeks a wide-ranging ruling striking multiple of Qualcomm's "claims or theories." Even though Arm had ample notice of these allegations through Qualcomm's operative Second Amended Complaint ("SAC") and discovery, Arm asks the Court to preclude Qualcomm from pursuing them. Arm's improper attempt to bring a dispositive motion by way of a discovery dispute should be rejected, and its objections to allegedly late discovery should be overruled. As relevant here, the SAC asserts that:

- Arm breached the Qualcomm TLA's implied covenant of good faith and fair dealing in licensing negotiations for Arm IP, including Arm cores (specifically, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓) and peripheral IP products (D.I. 137 ¶¶ 102, 181-188);

- Arm breached the Qualcomm ALA's implied covenant by failing to provide ALA deliverables (*Id.* ¶ 184; *see also id.* ¶¶ 181-183, 185-188); and

- Arm tortiously interfered with Qualcomm's customer relationships by leaking the October 22, 2024 letter threatening to terminate Qualcomm's ALA and discussing confidential terms of that contract with the press, and by making misleading and threatening statements about Qualcomm to its customers (*Id.* ¶¶ 190, 198-201).

Qualcomm sought discovery from Arm to support each of these claims. *E.g.*, A2175[1] (RFPs concerning peripheral IP products and ▓▓▓▓▓▓▓, and Arm's sharing of the October 22 letter with third parties); A2182, A2184-87 (RFPs concerning ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ A2184-85 (RFPs concerning ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓ under the ALA); A2192 (RFP concerning peripheral IP products); A2199 (interrogatory asking about licensing terms for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Unlike Qualcomm, Arm chose not to serve discovery requests about Qualcomm's TLA claims (or about the ALA implied

---

[1] Unless otherwise indicated, A____ cites refer to the appendices (D.I. 665–671) to Arm's objections, D.I. 664.

1

covenant claim covering the ETE Checker) until June 2025. A2205-10 (RFPs served June 11, 2025); A2225-26, A2229 (30(b)(6) notice served June 12, 2025); A0079, A0091 (interrogatories inquiring about TLA claims and ALA implied covenant claim served June 11, 2025). The date for Qualcomm's response to those requests, including interrogatories at issue in Arm's objection, coincided with the July 11 end of fact discovery. Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2).

On August 11, 2025, Arm moved to strike Qualcomm's "claims for products other than ███████████████" (three ███████████████ discussed at length in the SAC), tortious interference allegations for "Qualcomm's relationships" beyond ███████████████ ███████████████ and allegations regarding the "ETE Checker," claiming that the information Qualcomm provided about these topics was disclosed too late. A0003-04; D.I. 378.[2] On August 14, 2025, the parties' dispute about the scope of products arose in connection with argument about which third-party contracts were relevant to the case. During that discussion, the Special Master requested supplemental briefing on whether and how these topics had been developed in discovery. A2293-94 at 169:8-170:12. Before the Special Master, Qualcomm explained that each of these topics was timely and properly disclosed, first in the SAC and then in discovery. A2158-59; *see also* A0459-61. After argument on Arm's motion, the Special Master denied Arm's request to strike, finding that "Arm suffered no surprise or prejudice, Qualcomm acted in good faith, and [] the claims and theories at issue here are very important." D.I. 630 at 4.

Also on August 11, Arm moved to compel Qualcomm to produce "documents and information pertaining to Qualcomm's business strategy behind its TLA licensing renewal requests," claiming that Qualcomm improperly claimed privilege. A0005; D.I. 378. Qualcomm

---

[2] For quoted material, unless stated otherwise, brackets, ellipses, footnote call numbers, internal quotations, and citations are omitted for readability. Emphasis is added unless otherwise indicated.

explained to the Special Master that it had redacted only communications containing legal advice, while producing the remainder of the discussion about the business strategy itself without redactions. A0461-62; A2390-93 at 174:12-187:12. The Special Master denied Arm's request, finding that Qualcomm had "properly withheld privileged communications." D.I. 630 at 4.

## II.    ARGUMENT

Arm's motions to strike what it characterized as "new and untimely claims" (D.I. 664 at 1) and to compel production of privileged materials related to Qualcomm's request for a new license were properly denied. The claims and theories Arm raises were timely disclosed and, even if they were not, Arm cannot show prejudice (*In re Paoli R.R. Yard PCB Litig*, 35 F.3d 717, 791–92 (3d Cir. 1994)) and is not entitled to have claims in this case stricken based on discovery issues. Finally, the material Qualcomm redacted as privileged was legal advice, which was properly distinguished from business strategy.

### A. Qualcomm Properly Disclosed Its Challenged Claims And Theories.

#### 1. *Qualcomm's Theories Were Timely And Should Not Be Stricken.*

Arm asks the Court to strike "belated claims" purportedly disclosed at the end of fact discovery.[3] D.I. 664 at 4. But each of the theories and claims Arm describes as "new" or "belated" was timely disclosed, including in the SAC and during discovery.

**Peripheral IP.**  The SAC states that "Qualcomm expects discovery to show that Arm violated the good faith and fair dealing provisions of the QC TLA *in its licensing negotiations*

---

[3] Arm claims that Qualcomm's service of interrogatory responses approximately four hours after 5:00 p.m. on July 11 "alone" justifies striking the information. D.I. 664 at 4. Putting aside that the information in question had already been disclosed, Qualcomm's interrogatory responses were due at the close of fact discovery, and therefore would not have impacted depositions. Regardless, the law does not support the draconian rule Arm asserts, and Arm ignores that it also served discovery responses after 5:00 p.m. on July 11 (presumably because there were six depositions held on that day). A0465.

*involving peripheral TLA IP*." D.I. 137 ¶ 102; *see also id.* ¶ 51. In January and February 2025, Qualcomm served RFPs related to peripheral IP products at issue: the GIC-700, MMU-700, and ELA-600. A0701-02. Arm refused to engage in discovery concerning the TLA claims, including regarding peripheral IP, until the SAC was filed. A0729.

On June 11, 2025, Arm served (1) 12 RFPs covering specific peripheral IP (including the GIC-700, MMU-700, and ELA-600), A0750-53, and (2) Interrogatories 14 and 15 regarding the scope of Qualcomm's TLA claims, A0765-66. On June 12, Arm also requested 30(b)(6) testimony on numerous issues related to peripheral IP under the TLA. A2221-29 (Topics 25, 26, 32, 34, 36, 37). Qualcomm produced witnesses on those topics in June and July; Arm questioned those witnesses and others about licensing of peripheral IP. A2240 (Arm asking about Qualcomm's requests regarding peripheral IP), A2243-44 (Arm asking broadly which products Qualcomm tried to license and for which Arm delayed; Chaplin listing peripheral IP, including GIC, MMU, ELA), A2247 (Arm asking about Qualcomm's license for peripheral IP). It is impossible that Arm first learned peripheral IP was at issue at the close of fact discovery in July, yet took discovery about the specific peripheral IP at issue weeks earlier.

In accordance with Rule 33(b)(2), Qualcomm served its responses to Arm's discovery requests on July 11, 30 days after the requests were served (and the day fact discovery closed).

**TLA Cores.** The SAC alleges that Arm breached the implied covenant of good faith and fair dealing by "failing to provide licensing proposals for Arm Implementation Cores to Qualcomm ███████████████████████████████," (D.I. 137 ¶ 184), and that Arm actions "frustrated the essential purpose of the QC [] TLA," including ███████████████████████████ ███████ (*id*. ¶ 186). It makes clear that ███████████████ are only examples of ███ ███████████████████████████████████████████████ *Id*. ¶ 109 ("***For example***,

4

Qualcomm sought to renew licenses to certain ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮"); *see also id.* ¶¶ 215, 223.

Qualcomm issued 13 RFPs in January and February 2025 regarding Arm CPUs for which Qualcomm had requested licensing proposals, such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. A0701-02, A0713-15, A0717-19, A0721-22. Arm waited to serve discovery on these topics until June 11, when it served 10 RFPs covering TLA cores beyond ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and Interrogatories 14 and 15 regarding the scope of Qualcomm's TLA claims. A0750-53, A0765-66. Qualcomm timely served its responses to Arm's discovery requests on July 11, 30 days after the requests were served. Arm also requested (and Qualcomm provided) 30(b)(6) testimony regarding the TLA allegations broadly, and Arm questioned Qualcomm witnesses on cores beyond ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ A2219-29, A2236-37 (asking about prices or fees for technology licensed in QC TLA Annex 1 without limitation); A2243-44 (asking which products Qualcomm tried to license and for which Arm delayed; witness listing ▮▮▮▮▮▮▮▮▮▮▮), A2250 (Arm asking about Qualcomm's need to license ▮▮▮▮).

**Tortious Interference Relationship.** Arm contends Qualcomm only timely claimed that "Arm tortiously interfered with two customer relationships: ▮▮▮▮▮▮▮▮▮▮," and waited until the last day of fact discovery to "inject these new theories" regarding harm to other "business opportunities with ▮▮, and that Qualcomm had to address client concerns with ▮▮▮▮▮▮▮▮ and other major companies." D.I. 664 at 2-5. The SAC is clear that ▮▮▮▮▮▮▮▮▮▮ were two examples of relationships Arm interfered with (D.I. 137 ¶¶ 158, 190, 198), Qualcomm's June Interrogatory responses list communications between Qualcomm and several other customers, including ▮▮ (A0489-90, A0496), and Arm questioned Qualcomm's witnesses about other customer relationships. Qualcomm deponents provided lengthy testimony on that topic, including

5

about impact to Qualcomm's relationships with ▮▮▮▮▮▮▮▮▮▮ A0529-30, A0589-90, A0618-22, A0624-26. Qualcomm supplemented its interrogatory responses in July to reflect this evidence that had been developed through discovery. Moreover, Qualcomm is not making a damages claim concerning its relationship with ▮▮▮▮▮▮▮▮▮▮.[4]

**ETE Checker.** Arm argues that Qualcomm "added an alleged breach of the implied covenant" based on Arm "withholding support for a tool known as the ETE Checker." D.I. 664 at 3. That is incorrect. Qualcomm served discovery regarding the ETE Checker as early as January 2025, Arm responded to those requests, and drafted search terms to find responsive documents. A0699, A0702, A0717-18, A0773-74, A0781-82, A0789-90. Qualcomm disclosed in May in response to an interrogatory asking about Qualcomm's CPU verification efforts that "Arm violated the terms of the Qualcomm ALA by failing to . . . provide support for the ETE Checker." D.I. 665, A0004, A0338-39. And in June and July, Arm served over a dozen of its own RFPs on the ETE Checker (A0878-88, A0893-94), included ETE Checker related topics in its Rule 30(B)(6) notice (A0542-47, A0555-59), and asked multiple Qualcomm witnesses about the ETE Checker (A0910, A0912, A0916-21). Though Arm has long been aware of Qualcomm's allegations regarding the ETE Checker, Qualcomm is not making a damages claim regarding Arm's withholding of support for it, and Arm's motion is thus, again, misdirected.

*     *     *

Each of these topics was timely and properly disclosed, such that Arm had the opportunity to take discovery (which it did). None of the cases Arm cites suggests Qualcomm's disclosures were improper. In *Integra Lifesciences Corp.* v. *Hyperbranch Medical Technology, Inc.*, the court

---

[4] To the extent that Arm seeks to assert that these other customer relationships cannot be raised at trial, that argument is premature and not properly raised in a discovery motion.

struck portions of an expert report related to a damages assertion never disclosed in fact discovery; the claims and interrogatory responses were not stricken. 2017 WL 11558096, at *7-13 (D. Del. Dec. 11, 2017). In *Oasis Tooling, Inc.* v. *GlobalFoundries U.S. Inc.*, the court struck damages theories made for the first time in a sixth supplemental interrogatory response because they were disclosed "many, many months late" without "good reason for doing so," the disclosure was prejudicial, and the theories were not "all that important to [the] case." C.A. No. 22-312-CJB, D.I. 428 (D. Del. Mar. 4, 2024). Here, Qualcomm described its claims in the SAC, both parties served discovery requests covering the claims in question, Qualcomm provided the discovery Arm requested, and Arm questioned Qualcomm witnesses regarding each of the theories or claims.

### 2. *Arm Cannot Satisfy the Pennypack Factors.*

Arm argues for the first time in its objection that "the *Pennypack* factors favor exclusion." D.I. 664 at 6-7. Arm waived that argument by failing to raise it before the Special Master.[5] But even if the argument is not waived, the factors weigh strongly against Arm, as Arm was aware of Qualcomm's theories in advance of the fact discovery deadline and has suffered no prejudice.

Regarding **factors one and two**, Arm argues that it was "surprised" and "prejudiced" by Qualcomm's purportedly late disclosure. D.I. 664 at 7. But Arm was aware of Qualcomm's contentions regarding "additional licensing offers," "withholding of the ETE Checker," and Qualcomm's "tortious interference theories." *Id.* Arm confirmed its knowledge by requesting and taking discovery on those issues. *Supra* pp. 4-6.

Regarding **factor three**, Arm generally argues that Qualcomm's contentions will "disrupt the order and efficiency of trial" because the theories purportedly remain "evolving and

---

[5] Arm contends, in a footnote, that it "addressed facts relevant to each factor," but Arm's motion did not address the *Pennypack* analysis and cannot do so now. D.I. 664 at 7.

7

underdeveloped." *Id.* But, for Qualcomm's tortious interference claims, as Arm acknowledges, Qualcomm's damages expert calculated damages arising from Arm's interference with ▮ (*id.*), and Qualcomm is not seeking damages for Arm's interference with Qualcomm's relationships with ▮▮▮▮▮. Regarding Qualcomm's claim for breach of the ALA's implied covenant, Qualcomm similarly is not seeking damages for Arm's failure to deliver the ETE Checker. Regarding Qualcomm's TLA claims, Qualcomm's damages expert calculated in his opening report damages arising from Arm's failure to provide a good faith offer for the peripheral IP Qualcomm requested. D.I. 444 Ex. 26 at 46-67. Arm has withheld third-party agreements for the other Arm Implementation Cores, so Qualcomm cannot yet assess damages attributable to those theories of breach of the implied covenant. D.I. 648, 672. Qualcomm intends to include any applicable damages calculation in the supplemental expert reports contemplated by the parties' revised case schedule. Thus, Arm will ***not*** "learn what damages Qualcomm seeks or the factual basis for those damages for the first time at trial." D.I. 644 at 7.

Regarding **factor four**, Arm contends that Qualcomm "showed bad faith" because it purportedly delayed in disclosing "new claims." D.I. 644 at 8. Qualcomm timely disclosed all of the theories at issue, it openly sought discovery on all of the topics Arm claims were concealed, and provided discovery on these topics without obstruction. *Supra* pp. 4-6. And regarding **factor five**, Arm claims that Qualcomm's contentions cannot be "very important" because Qualcomm allegedly did not include them "in three complaints or interrogatory responses served earlier," (D.I. 644 at 8), which again is incorrect. *Supra* pp. 4-6. The conduct Arm seeks to strike underlies and supports Qualcomm's claims for breach of the implied covenant of good faith and fair dealing, tortious interference, and violation of the UCL.

### B. Qualcomm Properly Withheld Privileged Communications.

Arm's request to overrule the Special Master's finding that Qualcomm properly withheld

8

communications regarding business strategy as privileged has no basis and should be denied. The fact that the one document Arm cites discusses a "business strategy" does not mean that the limited redacted portions of the communication do not contain legal advice. Nor was Arm prevented from asking about the nonprivileged portions of the document or underlying strategy during depositions.

Where "business and legal advice" are "inextricably interwoven," "courts look to the communications' primary purposes to determine whether attorney-client privilege applies." *Onyx Therapeutics, Inc.* v. *Cipla Ltd.*, 2019 WL 668846, at *1 (D. Del. Feb. 15, 2019). "Privileged communications may be shared by non-attorney employees" "so that the corporation is properly informed of legal advice." *Shire Dev. Inc.* v. *Cadila Healthcare Ltd.*, 2012 WL 5247315, at *3-5 (D. Del. June 15, 2012) (privileged documents "reflect[ed] legal advice and communications regarding potential strategies"). Neither case Arm cites suggests that legal advice about business strategy is not privileged: one merely provides a legal standard, *Wachtel* v. *Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007), and the other finds—unsurprisingly—that the primary purpose of a communication was not legal, so no privilege applied, where it consisted of "factual information about licensing/royalty rates" and was not "for the purpose of providing legal advice." *Immersion Corp.* v. *HTC Corp.*, 2014 WL 3948021, at *2 (D. Del. Aug. 7, 2014).

Qualcomm's privilege review properly distinguished business strategy from legal advice, and Qualcomm's limited redactions to QCVARM_0605055 confirm that Qualcomm did not, as Arm contends, apply redactions based on the "mere fact" that Larissa Cochron, an attorney and Qualcomm's Senior Director of Contracts, "was copied" on the correspondence. D.I. 664 at 10. Qualcomm redacted only the first email on this multi-page thread[6] because that email contains

---

[6] Arm has no basis to assert that the redactions comprise more than a single email. *See* D.I. 664 at 10. They do not. And the length of redactions is immaterial to whether the content is privileged.

9

legal advice Mr. Wolf received in a "discussion [he] had w Larissa" Cochron. A0348. That Mr. Wolf may have come up with a licensing business strategy "on his own," (D.I. 664 at 10), does not negate the fact that legal advice he sought and received regarding licensing is privileged. The remainder of the thread—which, while copying Ms. Cochron, discusses "business strategy" and not the legal advice she provided—is unredacted.

Similarly, Qualcomm did not "block questioning," (*see* D.I. 664 at 9), about this document or business strategy. Mr. Wolf testified at length about both, throughout and beyond Arm's cited excerpts. A0924-30 at 68:10-90:8. One of the same responses cited by Arm as purported evidence that the "blocked testimony" related to Mr. Wolf's own strategy goes on to explain that strategy for nearly two pages. A0926 at 75:9-77:9. Arm's request for "additional time to question Qualcomm's witnesses about this subject matter" is therefore unfounded.

Finally, it is unclear what, if any, documents beside QCVARM_0605055 Arm has in mind when it references "documents withheld on this basis." DI 664 at 10. Not only does Arm fail to identify any such documents with the level of detail required by the ESI order, (D.I. 85 ¶ 1(e)(v)(2)), but Arm's guesses about the existence and contents of such documents are incorrect. The documents that Arm speculatively identified based on "timeframe" and "same witnesses" to the Special Master—but which Arm, notably, does not describe here—are either versions of the same email chain that duplicate the content at issue in QCVARM_0605055 or were wholly unrelated to Qualcomm's purportedly pretextual licensing requests. *See* A0005. Arm's request for production of such documents without redactions should therefore be denied.

### III. CONCLUSION

Arm's objections to the Special Master's Order should be overruled.

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
| OF COUNSEL: | */s/ Jennifer Ying* |
| Karen L. Dunn | Jennifer Ying (#5550) |
| William A. Isaacson | Travis Murray (#6882) |
| Erin J. Morgan | 1201 North Market Street |
| Melissa F. Zappala | P.O. Box 1347 |
| Jenifer N. Hartley | Wilmington, DE 19899 |
| DUNN ISAACSON RHEE LLP | (302) 658-9200 |
| 401 Ninth Street NW | jying@morrisnichols.com |
| Washington, DC 20004 | tmurray@morrisnichols.com |
| (202) 240-2900 | |
| | *Attorneys for Plaintiffs* |
| Catherine Nyarady | |
| Anish Desai | |
| Jacob A. Braly | |
| S. Conrad Scott | |
| Jacob Apkon | |
| Flint A. Patterson | |
| PAUL, WEISS, RIFKIND, WHARTON | |
|    & GARRISON LLP | |
| 1285 Avenue of the Americas | |
| New York, NY 10019-6064 | |
| (212) 373-3000 | |

Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
(628) 432-5100

Februrary 27, 2026

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 27, 2026, upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Daniel G. Mackrides, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO  80202<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Sydney D. Gaskins, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd., Suite 6000<br>Los Angeles, CA  90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Alexandra Corrinne Hottenrott, Esquire<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, NY  10019<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Daralyn J. Durie, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA  94105<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

| | |
|---|---|
| Lydia B. Cash, Esquire<br>MORRISON & FOERSTER LLP<br>300 Colorado Street, Suite 1800<br>Austin, TX  78701<br>*Attorneys for Defendant* | VIA ELECTRONIC MAIL |
| Gregg F. LoCascio, P.C.<br>Jason M. Wilcox, P.C.<br>Meredith Pohl, Esquire<br>Matthew J. McIntee, Esquire<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20004<br>*Attorneys for Defendant* | VIA ELECTRONIC MAIL |
| Jay Emerick, Esquire<br>Adam M. Janes, Esquire<br>Reid McEllrath, Esquire<br>KIRKLAND & ELLIS LLP<br>333 West Wolf Point Plaza<br>Chicago, IL  60654<br>*Attorneys for Defendant* | VIA ELECTRONIC MAIL |
| Peter Evangelatos, Esquire<br>Nathaniel Louis DeLucia, Esquire<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY  10022<br>*Attorneys for Defendant* | VIA ELECTRONIC MAIL |

                                            */s/ Jennifer Ying*

                                            Jennifer Ying (#5550)

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 6, 2026, upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Daniel G. Mackrides, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO  80202<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Sydney D. Gaskins, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd., Suite 6000<br>Los Angeles, CA  90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Alexandra Corrinne Hottenrott, Esquire<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, NY  10019<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Daralyn J. Durie, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA  94105<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

| | |
|---|---|
| Lydia B. Cash, Esquire<br>MORRISON & FOERSTER LLP<br>300 Colorado Street, Suite 1800<br>Austin, TX  78701<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Gregg F. LoCascio, P.C.<br>Jason M. Wilcox, P.C.<br>Meredith Pohl, Esquire<br>Matthew J. McIntee, Esquire<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20004<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Jay Emerick, Esquire<br>Adam M. Janes, Esquire<br>Reid McEllrath, Esquire<br>KIRKLAND & ELLIS LLP<br>333 West Wolf Point Plaza<br>Chicago, IL  60654<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Peter Evangelatos, Esquire<br>Nathaniel Louis DeLucia, Esquire<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY  10022<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

*/s/ Travis J. Murray*

Travis J. Murray (#6882)