Originally Filed:  February 27, 2026
Redacted Version Filed:  March 6, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED,<br>a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>a U.K. corporation,<br><br>Defendant. | REDACTED - PUBLIC VERSION<br><br>C.A. No. 24-490 (MN)<br>(CONSOLIDATED) |

**QUALCOMM'S RESPONSE IN OPPOSITION TO ARM'S OBJECTIONS (D.I. 655) TO THE SPECIAL MASTER'S FEBRUARY 6, 2026 ORDER (D.I. 627) DENYING DEFENDANT'S MOTION TO COMPEL (D.I. 361)**

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007
(202) 240-2900

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

February 27, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ............................................................................................. 1

II. BACKGROUND ..................................................................................................................... 2

    A. Qualcomm's Tortious Interference And UCL Claims............................................ 2

    B. Arm's Discovery Requests Relating To Unrelated Litigations............................... 3

III. ARGUMENT........................................................................................................................... 4

    A. Arm Should Not Be Granted Additional Discovery Of Qualcomm's Media Communications. ..................................................................................................... 4

        1. The "Media Communications" Arm Seeks Are Not Relevant To Qualcomm's UCL And Tortious Interference Claims............................... 4

        2. The Discovery Arm Seeks Is Not Relevant To Arm's Unclean Hands Defense. .................................................................................................... 6

        3. Arm Has Obtained Discovery Into Qualcomm's Media Communications. 7

    B. Arm's Requests For Documents From Unrelated Prior Litigations Are Not Relevant Or Proportional. ........................................................................................ 7

IV. CONCLUSION...................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Apple Inc.* v. *Qualcomm Inc.*,
  C.A. No. 17-108-GPC-MDD (S.D. Cal.) ...........................................................................3, 4, 9

*Desert Healthcare Dist.* v. *PacifiCare FHP, Inc.*,
  94 Cal. App. 4th 781 (2001) .................................................................................................9

*Emco, Inc.* v. *Obst*,
  2004 WL 1737355 (C.D. Cal. May 7, 2004) .......................................................................6

*Epic Games, Inc.* v. *Apple, Inc.*,
  67 F.4th 946 (9th Cir. 2023) .................................................................................................3

*FTC* v. *Qualcomm Inc.*,
  C.A. No. 17-220-LHK (N.D. Cal.) ...................................................................................3, 8

*FTC* v. *Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ................................................................................................4

*Haagen-Dazs, Inc.* v. *Frusen Gladje Ltd.*,
  493 F. Supp. 73 (S.D.N.Y. 1980) .........................................................................................6

*Holt* v. *Dep't of Food & Agric.*,
  218 Cal. Rptr. 1 (Ct. App. 1985) ..........................................................................................5

*Howard* v. *Omni Hotels Mgmt. Corp.*,
  136 Cal. Rptr. 3d 739 (Ct. App. 2012) .................................................................................5

*In re Qualcomm Antitrust Litig.*,
  M.D.L. No. 17-2773-JSC (N.D. Cal.) ..............................................................................4, 8

*In re Qualcomm Inc. Sec. Litig.*,
  C.A. No. 17-121-JO-MSB (S.D. Cal.) ............................................................................3, 4, 9

*Inventio AG* v. *ThyssenKrupp Elevator Ams. Corp.*,
  662 F. Supp. 2d 375 (D. Del. 2009) ...................................................................................10

*Key* v. *Qualcomm Inc.*,
  129 F.4th 1129 (9th Cir. 2025) .............................................................................................4

*Metricolor LLC* v. *L'oréal S.A.*,
  2020 WL 3802942 (C.D. Cal. July 7, 2020) ........................................................................3

*Qorvo, Inc.* v. *Akoustis Technologies, Inc.*,
  2023 WL 12014819 (D. Del. May 26, 2023)..................................................................9

*Roten* v. *McDonald*,
  2009 WL 2242388 (D. Del. July 23, 2009) .................................................................10

*Salas* v. *Sierra Chemical Co.*,
  327 P.3d 797 (Cal. 2014) ..............................................................................................6

*Scripps Clinic & Rsch. Found.* v. *Baxter Travenol Laby's, Inc.*,
  1988 WL 70013 (D. Del. June 21, 1988)................................................................9, 10

*United States* v. *Abbott Laby's*,
  2016 WL 4247429 (E.D. Pa. Aug. 11, 2016) .............................................................10

*USM Corp.* v. *Arthur D. Little Sys., Inc.*,
  546 N.E. 2d 888 (Mass. Ct. App. 1989) .......................................................................9

I.  **PRELIMINARY STATEMENT**

This case concerns Arm's multi-year campaign to disrupt Qualcomm's business, in breach of the parties' contracts, tort law, and California's Unfair Competition Law ("UCL"). Arm hopes to distract from its own wrongful conduct by fishing for anything Qualcomm may have done that Arm can claim is similar—regardless of the relevance to Qualcomm's claims or Arm's defenses.

*First*, Arm seeks discovery on Qualcomm's "media communications" beyond the documents and testimony it has received. Arm argues from the faulty premise that its general media communications—as opposed to its specific, intentional leak of a confidential letter threatening to terminate Qualcomm's ALA—form the basis for Qualcomm's claims. On that basis, Arm asserts that it needs broad discovery on Qualcomm's supposed media communications to defend itself by showing that Qualcomm has engaged in the same conduct as Arm. But Qualcomm has engaged in no analogous leak threatening to shut down Arm's business (nor could it, as Qualcomm is not Arm's supplier), and additional discovery on Qualcomm's media communications is not relevant to Arm's defenses.

*Second*, Arm asks for all testimony from four unrelated cases filed against Qualcomm by third parties. Arm speculates that, because Qualcomm employees presumably defended Qualcomm's patent licensing business at issue in those cases, they may have said something that Arm could use to argue that Qualcomm cannot challenge Arm's CPU licensing practices. This makes no sense. Those documents are not relevant to the specific contract, tort, and UCL claims Qualcomm asserts, and Arm's speculation about them is insufficient to require Qualcomm to undertake the extensive burden of reviewing and redacting lengthy confidential documents and testimony about Qualcomm's unrelated licensing of standardized cellular technologies.

Arm's objections should be overruled.

1

## II. BACKGROUND

### A. Qualcomm's Tortious Interference And UCL Claims

Qualcomm alleges that Arm tortiously interfered with certain of Qualcomm's customer relationships by leaking its October 22, 2024 letter threatening to terminate Qualcomm's ALA, discussing confidential terms of that contract with the press, and making misleading and threatening statements about Qualcomm to its customers. D.I. 137 ¶¶ 192, 199. None of Qualcomm's claims are based on Arm communicating with the press generally about Qualcomm or about the parties' disputes. *See* D.I. 610 at 15:17-16:7. Yet Arm hopes to defend against Qualcomm's negligent tortious interference claim by establishing that "Qualcomm engages in similar behavior" to Arm, claiming that Qualcomm was involved in originating two stories about Arm published in 2025. D.I. 655 at 2, 6.[1] Arm thus seeks documents and Rule 30(b)(6) testimony regarding Qualcomm's communications with journalists and other third parties concerning "licensing or competition between Arm and Qualcomm or the subject matter of the claims at issue in this Litigation, in any regulatory proceeding against or sought against Arm, or in *Arm Ltd.* v. *Qualcomm Inc.*" A0136;[2] *see also* A0132-35, A0137, A0144-145, A0485, A0488.[3]

Qualcomm also alleges that Arm violated the UCL by engaging in a years' long campaign of conduct to harm or threaten to harm competition for CPU designs, including by: withholding deliverables Arm was required to provide Qualcomm under the ALA and TLA; refusing to

---

[1] For quoted material, unless stated otherwise, brackets, ellipses, footnote call numbers, internal quotations, and citations are omitted for readability. Emphasis is added unless otherwise indicated.
[2] Unless otherwise indicated, A____ cites refer to the appendices (D.I. 656, 658) to Arm's objections, D.I. 655.
[3] Arm objects to the Special Master's decision regarding "media communications," but seeks to compel production in response to RFPs that have nothing to do with media communications. *See* D.I. 655 at 7. For example, RFP 126 asks about "Qualcomm's communications with Qualcomm customers, potential customers, or licensees" (A0134), and RFP 142 asks about submissions to regulatory bodies (A0144). Arm's objections provide no argument for the relevance of these requests, and Qualcomm accordingly assumes that Arm included them in error.

2

negotiate license terms in good faith; interfering with Qualcomm's customer relationships as described above; and attempting to cut off Qualcomm's access to Arm's ubiquitous instruction set architecture. *E.g.*, D.I. 137 ¶¶ 206-10. Qualcomm does not, as Arm contends, assert in its UCL claim that ***all*** Arm discussions with the media about Qualcomm were "'immoral, unethical, oppressive, [or] unscrupulous' acts that violate the California UCL." D.I. 655 at 6 (quoting D.I. 137 ¶¶ 208-09). And as Qualcomm has told Arm repeatedly (including during the Special Master's hearing on Arm's motion), Qualcomm is not pursuing a monopolization claim or any other kind of antitrust claim. A1211 at 310:17-311:5; *see also, e.g.*, D.I. 583 at 2. Qualcomm does not need to prove an antitrust claim to prove that Arm violated the UCL. *Epic Games, Inc.* v. *Apple, Inc.*, 67 F.4th 946, 1002 (9th Cir. 2023); *Metricolor LLC* v. *L'oréal S.A.*, 2020 WL 3802942, at *17 (C.D. Cal. July 7, 2020). Rather, Qualcomm can prove its claim by establishing that: (1) Arm's conduct significantly threatens or harms competition, (2) the harm caused to Qualcomm outweighs the utility of Arm's challenged conduct, or (3) Arm's conduct was independently unlawful as required by the UCL. *See* D.I. 464 at 30-31, 36. Each of these fact-bound inquiries turns on Arm's conduct and its effects—not Qualcomm's independent business.

### B. Arm's Discovery Requests Relating To Unrelated Litigations

Arms seeks to defend against Qualcomm's UCL claim by arguing that Qualcomm's defense of unrelated antitrust-related claims filed against Qualcomm "likely" contradict Qualcomm's assertions about Arm's unfair conduct in this case. D.I. 655 at 7-8. To support this argument, Arm seeks all prior testimony[4] from four cases filed against Qualcomm over the last nine years: *In re Qualcomm Inc. Sec. Litig.*, C.A. No. 17-121-JO-MSB (S.D. Cal.), *FTC* v. *Qualcomm Inc.*, C.A. No. 17-220-LHK (N.D. Cal.); *Apple Inc.* v. *Qualcomm Inc.*, C.A. No. 17-

---

[4] Arm has only identified ***three*** witnesses who testified both in this case and in any of these prior litigations. D.I. 655 at 7. Qualcomm has not identified any others.

108-GPC-MDD (S.D. Cal.), and *In re Qualcomm Antitrust Litig.*, M.D.L. No. 17-2773-JSC (N.D. Cal.). *See, e.g.*, A0092. These were multi-year complex cases with many depositions. Arm was not a party to any of these cases, which involve various challenges relating to Qualcomm's licensing of its standardized patents for cellular technology. Unlike Arm, Qualcomm does not license CPUs, so, naturally, none of these cases concerned the licensing of CPUs. A1211 at 310:14-21. Each of these cases resolved without any finding of unlawful conduct by Qualcomm. *See FTC* v. *Qualcomm Inc.*, 969 F.3d 974, 1005 (9th Cir. 2020); *In re Qualcomm Inc. Sec. Litig.*, C.A. No. 17-121-JO-MSB (S.D. Cal. Sept. 27, 2024), D.I. 451 at 6-7; *Apple Inc.* v. *Qualcomm Inc.*, C.A. No. 17-108-GPC-MDD (S.D. Cal. Apr. 24, 2019), D.I. 1187; *Key* v. *Qualcomm Inc.*, 129 F.4th 1129, 1147 (9th Cir. 2025).

### III. ARGUMENT

#### A. Arm Should Not Be Granted Additional Discovery Of Qualcomm's Media Communications.

Qualcomm's communications with the media are not relevant to any claims or defenses in the case. And Arm fails to inform the Court that (1) to the extent responsive media communications were located in discovery, Qualcomm produced them, and (2) Arm ***already took discovery*** on the March 2025 article it references.[5] Arm needs nothing further.

##### 1. The "Media Communications" Arm Seeks Are Not Relevant To Qualcomm's UCL And Tortious Interference Claims.

Arm argues, in defense to Qualcomm's UCL and tortious interference claims, that its communications with Bloomberg in October 2024 were not improper or unfair because Qualcomm might have "engaged in its own campaign of placing stories with the media concerning its legal disputes with Arm." D.I. 655 at 6. Arm's argument misconstrues Qualcomm's claims.

---

[5] The second article, dated November 19, 2025 (*see* D.I. 655 at 2), was not published until after the close of fact discovery.

None of Qualcomm's claims arose from the fact that Arm communicates with the media generally. Rather, Qualcomm alleges that specific communications between Arm, Arm's outside counsel (Morrison & Foerster), Arm's PR firm (FGS Global), and Bloomberg News violated the UCL because, in a premeditated effort to destroy Qualcomm's CPU business by disrupting Qualcomm's customer relationships—and to distract from Qualcomm's annual Snapdragon Summit (where Qualcomm launches new products that compete with Arm's)—Arm (1) wrote Qualcomm a letter (the "October 22 Letter") baselessly alleging breach of the Qualcomm ALA and including both highly confidential terms of that ALA and a 60-day countdown to Arm's ability to terminate that coincided with the end of trial in *Arm* v. *Qualcomm*, then (2) purposefully leaked that letter to Bloomberg News, in violation of the Qualcomm ALA, ███████████ ███████████████████████████████ *See* D.I. 137 ¶¶ 144-55.

Arm did not—and cannot—allege that Qualcomm engaged in the same type of conduct. Whether Qualcomm ever engaged in general "media outreach" (D.I. 655 at 6) has no bearing on whether Arm's conduct surrounding leaking the October 22 Letter was "immoral, unethical, oppressive, or unscrupulous."

Arm provides no authority for the proposition that Qualcomm's media communications are relevant to Qualcomm's negligent interference claim and whether Arm "failed to act with reasonable care" when it impacted Qualcomm customer relationships by leaking the October 22 Letter to Bloomberg. D.I. 655 at 6. Instead, Arm cites two immaterial cases for the basic proposition that compliance with industry custom can, in some circumstances, be relevant to negligence. *Id.*; *see Howard* v. *Omni Hotels Mgmt. Corp.*, 136 Cal. Rptr. 3d 739, 752 (Ct. App. 2012) (in negligence and due care products liability cases, "compliance with regulations, directives or trade custom" provides "evidence for jury consideration"); *Holt* v. *Dep't of Food & Agric.*, 218

Cal. Rptr. 1, 6-7 (Ct. App. 1985) (rejecting claim that conformity with industry custom excused negligent acts and noting "conformity with the general practice or custom will not excuse conduct that is not consistent with due care").  Neither suggests that Qualcomm's general media communications are "similar behavior" (D.I. 655 at 6) to the conduct underlying Qualcomm's tortious interference claims—Arm's calculated leaking of confidential contractual terms and its baseless threat to terminate the Qualcomm ALA—or sheds light on whether similar types of leaks are customary in the industry.  *Infra* p. 9 (mere party conduct cannot establish "industry" norm).

### 2. *The Discovery Arm Seeks Is Not Relevant To Arm's Unclean Hands Defense.*

Arm next argues Qualcomm's media communications "bear on Arm's unclean hands defense."  D.I. 655 at 6.  But under California Law, the "misconduct which brings the clean hands doctrine into operation must ***relate directly*** to the transaction concerning which the complaint is made, i.e., it must pertain to the ***very subject matter*** involved and affect the equitable relations between the litigants."  *Salas* v. *Sierra Chemical Co.*, 327 P.3d 797, 812 (Cal. 2014).[6]  As explained in Qualcomm's motion for summary judgment, Qualcomm's claims arise from Arm's "leaking information in Arm's October 2024 letter in violation of the confidentiality provisions of the ALA during Qualcomm's annual Snapdragon Summit in an effort to harm Qualcomm's business relationships," while the articles Arm now seeks discovery into involve "***unrelated*** information about regulatory proceedings against Arm in other countries."  D.I. 442 at 25; *see also* A1136-38.  Arm has made no showing that the communications it seeks relate to the specific conduct underlying Qualcomm's claim.

---

[6] Arm's cases are not to the contrary.  *See Emco, Inc.* v. *Obst*, 2004 WL 1737355, at *4 (C.D. Cal. May 7, 2004) (under the Lanham Act, unclean hands requires, *inter alia*, "that the conduct relates to the subject matter of [plaintiff's] clams"); *Haagen-Dazs, Inc.* v. *Frusen Gladje Ltd.*, 493 F. Supp. 73, 76 (S.D.N.Y. 1980) (similar).

### 3. *Arm Has Obtained Discovery Into Qualcomm's Media Communications.*

Qualcomm has not, as Arm suggests, used its "refusal to provide discovery as a sword to defeat Arm's defense." D.I. 655 at 7. As Qualcomm already told Arm, it did "not withhold[]" communications with the media from its document production. A1177-78 at 53:20-55:4; *see also* A1214 at 340:3-341:9 (telling Special Master the same). Included in Qualcomm's production were communications with "third parties concerning the subject matter of the claims at issue in this litigation, including . . . Arm's anticompetitive or unfair behavior." A1169-70; A1214 at 340:9-341:1. The media are "third parties," so to the extent "media communications" were located using discovery search terms, Qualcomm did not exclude those documents from its production.

Arm also took deposition testimony on this topic. Arm deposed Qualcomm's CEO; a Qualcomm Senior Vice President; and Qualcomm's General Counsel, who was designated as a 30(b)(6) witness on the March 2025 Bloomberg article on which Arm is focused. Arm questioned each of them about their knowledge of communications Qualcomm may have had with the media about Arm. *See* A1137-38 (citing deposition transcripts attached at A1186-A1205). Qualcomm's General Counsel stated ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████[7]

### B. Arm's Requests For Documents From Unrelated Prior Litigations Are Not Relevant Or Proportional.

Arm's requests for *all* testimony from four prior cases in which Arm did not participate, and which do not relate to the licensing or technology in this case should be rejected. Testimony from enormous cases involving different parties, different claims, and different conduct are not

---

[7] Qualcomm's General Counsel stated ███████████████████████████ ███████████████████████████████████████████████████

relevant to Qualcomm's UCL claim or Arm's defense of its own conduct.[8] Nor are Arm's requests limited to Qualcomm witnesses—they cover third-party testimony and filings in unrelated cases.[9]

Moreover, Qualcomm's employees' belief in, or third-party opinion regarding, the propriety of Qualcomm's patent licensing practices involving wireless technologies with no relation to CPUs, ISAs, or Arm is legally unrelated to the issue of whether Arm's sustained campaign to drive Qualcomm from the CPU market violates the UCL. A1211 at 310:12-311:23. The Qualcomm Technology Licensing ("QTL") business unit is separate from Qualcomm's chip-making business, and these cases involved QTL's practice of licensing standard-essential *patents* to phone makers (not chip companies), under FRAND terms. *Id*.; D.I. 681, A0641 at 50:9-24. The four cases Arm identifies in its RFPs all relate to this *patent* licensing business, unrelated to this case. *See FTC* v. *Qualcomm Inc.*, C.A. No. 17-220-LHK (N.D. Cal.) (FTC suit alleging Qualcomm's patent licensing practices were inconsistent with its FRAND commitments and violated the Sherman Act and FTC Act); *In re Qualcomm Antitrust Litig.*, M.D.L. No. 17-2773-JSC (N.D. Cal.) (consumer class action follow-on to FTC suit premised on same factual allegations); *Apple Inc*. v. *Qualcomm Inc.*, C.A. No. 17-108-GPC-MDD (S.D. Cal.) (antitrust case plus requests for declarations of FRAND royalties, invalidity, and noninfringement for numerous Qualcomm's patents); *In re Qualcomm Inc. Sec. Litig.*, C.A. No. 17-121-JO-MSB (S.D. Cal.) (securities class action alleging Qualcomm misrepresented its patent licensing business and investors harmed by Qualcomm's stock price drop due to FTC suit and Apple's suit). There is no

---

[8] To the extent Arm intends to use these transcripts at trial, there is also significant risk of prejudice as the jury will not understand that the testimony occurred in separate and distinct litigation.

[9] Arm's RFP 83 seeks in relevant part "All . . . deposition transcripts, trial transcripts, . . . and expert reports," without limitation to Qualcomm testimony, related to Qualcomm's licensing business in four separate lawsuits. A0092. Arm's RFP 151 seeks "All Documents, Communications, and Things, including confidential filings, submitted by [Qualcomm] *or Third Parties* to the Federal Trade Commission" related to Qualcomm's licensing. A0150.

overlap with the claims or defenses in this case. Arm should not be permitted to fish for "impeachment material" (D.I. 655 at 8) and new deponents from countless transcripts that do not address the conduct at issue in this case.

*Qorvo, Inc.* v. *Akoustis Technologies, Inc.* is instructive: in that case, the defendant sought production of documents regarding the plaintiff's business practices to defend against an unfair competition claim by showing that "such [business] practices are common in the industry and do not constitute unfair [business] practices." 2023 WL 12014819, at *1 (D. Del. May 26, 2023); *see* D.I. 655 at 8. The court denied the motion, finding that it sought "discovery that is both disproportional and not relevant to the issues in this case" because the defendant had "not raised a counterclaim or otherwise alleged that [the plaintiff] has engaged in unfair or deceptive trade practices," and the plaintiff's practices accordingly had "no relevance to the propriety or legality" of the defendant's conduct. *Qorvo, Inc.*, 2023 WL 12014819, at *2. The court also explained that documents concerning only the plaintiff's practices could not establish an industry-wide standard, and to the extent the defendant wanted to develop such evidence to defend its conduct, it should do so through expert testimony or stipulations.[10] *Id.*

None of Arm's cases are to the contrary. *Scripps Clinic and Research Foundation* v. *Baxter Travenol Laboratories, Inc.* allowed a limited request for certain transcripts from cases involving alleged infringement of the same patent, not different technologies altogether. 1988 WL 70013, at *3 (D. Del. June 21, 1988). Because of significant overlapping issues, the court noted

---

[10] Neither case Arm cites for the proposition that it needs this discovery to establish "industry norm" says that such evidence alone is a defense to an unfair competition claim—much less that documents from one company suffice to show such a norm. *Desert Healthcare Dist.* v. *PacifiCare FHP, Inc.*, 94 Cal. App. 4th 781, 793 (2001) (practice alleged to violate UCL was specifically approved under state law); *USM Corp.* v. *Arthur D. Little Sys., Inc.*, 546 N.E. 2d 888, 898 (Mass. Ct. App. 1989) (company did not violate MA deceptive practices law where information it allegedly failed to disclose was not true, disclosures made were proper, and plaintiff not deceived).

this limited production might shorten depositions in the pending case. *Id.* Here, Arm claims no such benefits. *Inventio AG* v. *ThyssenKrupp Elevator Americas Corp.*, another patent case, concerned requests for testimony again involving related patents with the same inventor and assignee. 662 F. Supp. 2d 375, 381 (D. Del. 2009). Even with this overlap, the court required "a particularized showing as to the exact relationship between the subject matter of" the requested transcripts and the pending case, and only found testimony on subjects at issue in the pending case to be relevant. *Id.* at 383; *see also United States* v. *Abbott Lab'ys*, 2016 WL 4247429, at *5 (E.D. Pa. Aug. 11, 2016) (applying *Inventio AG* to reject a request for all transcripts from other litigation based on speculation that deponents would have been asked about issues relevant to the pending case and limiting production to a few specific transcripts). Arm cites no authority supporting its request for testimony from other cases or sanctioning use of unrelated prior testimony to search for new deponents,[11] and it has failed to make any "particularized showing" of relevance even though many materials from these cases are already publicly available.

Finally, the documents that Arm seeks are governed by protective orders. If the Court sustains Arm's objections, Qualcomm would have to review each transcript—thousands of pages of testimony—to apply redactions for confidential information that cannot be disclosed to Arm pursuant to prior court orders. *See Scripps*, 1988 WL 70013, at *3. Any arguable minimal relevance is outweighed by the burden and expense of production. *See Roten* v. *McDonald*, 2009 WL 2242388, at *1 (D. Del. July 23, 2009). This burden, too, warrants denial of Arm's requests.

## IV.   CONCLUSION

Arm's objections to the Special Master's Order should be overruled.

---

[11] Arm has not agreed to limit additional depositions to those sought by the parties' motions to compel (*see* D.I. 643 at 2 n.2) and seemingly now seeks free reign to depose as many of Qualcomm's employees as testified in these other litigations as it wants.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Karen L. Dunn<br>William A. Isaacson<br>Erin J. Morgan<br>Melissa F. Zappala<br>Jenifer N. Hartley<br>DUNN ISAACSON RHEE LLP<br>401 Ninth Street NW<br>Washington, DC  20004<br>(202) 240-2900<br><br>Catherine Nyarady<br>Anish Desai<br>Jacob A. Braly<br>S. Conrad Scott<br>Jacob Apkon<br>Flint A. Patterson<br>PAUL, WEISS, RIFKIND, WHARTON<br>   & GARRISON LLP<br>1285 Avenue of the Americas<br>New York, NY  10019-6064<br>(212) 373-3000<br><br>Adam L. Basner<br>Eric C. Westerhold<br>PAUL, WEISS, RIFKIND, WHARTON<br>   & GARRISON LLP<br>2001 K Street, NW<br>Washington, DC  20006-1047<br>(202) 223-7300<br><br>Gregg Stephenson<br>PAUL, WEISS, RIFKIND, WHARTON<br>   & GARRISON LLP<br>535 Mission Street, 25th Floor<br>San Francisco, CA  94105<br>(628) 432-5100<br><br>Februrary 27, 2026 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jennifer Ying*<br><br>Jennifer Ying (#5550)<br>Travis Murray (#6882)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jying@morrisnichols.com<br>tmurray@morrisnichols.com<br><br>*Attorneys for Plaintiffs* |

11

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 27, 2026, upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Daniel G. Mackrides, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO  80202<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Sydney D. Gaskins, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd., Suite 6000<br>Los Angeles, CA  90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Alexandra Corrinne Hottenrott, Esquire<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, NY  10019<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Daralyn J. Durie, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA  94105<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

Lydia B. Cash, Esquire            *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX 78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.            *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
*Attorneys for Defendant*

Jay Emerick, Esquire            *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire            *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
*Attorneys for Defendant*

           */s/ Jennifer Ying*

           Jennifer Ying (#5550)

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 6, 2026, upon the following in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Robert M. Vrana, Esquire<br>Daniel G. Mackrides, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Scott F. Llewellyn, Esquire<br>MORRISON & FOERSTER LLP<br>4200 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO  80202<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Sydney D. Gaskins, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd., Suite 6000<br>Los Angeles, CA  90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Alexandra Corrinne Hottenrott, Esquire<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, NY  10019<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Daralyn J. Durie, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA  94105<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

| | |
|---|---|
| Lydia B. Cash, Esquire<br>MORRISON & FOERSTER LLP<br>300 Colorado Street, Suite 1800<br>Austin, TX  78701<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Gregg F. LoCascio, P.C.<br>Jason M. Wilcox, P.C.<br>Meredith Pohl, Esquire<br>Matthew J. McIntee, Esquire<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20004<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Jay Emerick, Esquire<br>Adam M. Janes, Esquire<br>Reid McEllrath, Esquire<br>KIRKLAND & ELLIS LLP<br>333 West Wolf Point Plaza<br>Chicago, IL  60654<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Peter Evangelatos, Esquire<br>Nathaniel Louis DeLucia, Esquire<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY  10022<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

          */s/ Travis J. Murray*
          ―――――――――――――――――
          Travis J. Murray (#6882)