**IN THE UNITED STATED DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD., a<br>U.K. corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 24-490 (MN)<br><br>[redacted] |

**NONPARTY AMPERE COMPUTING LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S ORDER GRANTING MOTION FOR PROTECTIVE ORDER FILED BY AMPERE COMPUTING LLC (D.I. 615)**

WILSON SONSINI GOODRICH
& ROSATI, P.C.
Brad D. Sorrels (#5233)
Kaitlin E. Maloney (#6304)
Nora M. Crawford (#6399)
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600
bsorrels@wsgr.com
kmaloney@wsgr.com
ncrawford@wsgr.com

*Attorneys for Nonparty*
*Ampere Computing LLC*

Dated: March 2, 2026

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

FACTUAL AND PROCEDURAL BACKGROUND........ 1

ARGUMENT ........ 3

A. The Special Master Correctly Concluded That Ampere's Highly Sensitive Information Is Not Relevant to Qualcomm's Claims........ 4

B. The Special Master Correctly Determined That Disclosure of the Information Sought Risks Significant Competitive Harm to Ampere........ 6

CONCLUSION........ 9

## TABLE OF AUTHORITIES

### CASES

*AdTrader, Inc. v. Google LLC*,
2021 WL 937559 (N.D. Cal. Mar. 12, 2021)....................5

*Allergan, Inc. v. Revance Therapeutics, Inc.*,
C.A. No. 21-cv-1411-RGA-JLH (D. Del. July 7, 2023) (ORDER) ....................7

*Amgen Inc. v. Samsung Bioepis Co.*,
2025 WL 1207594 (D.N.J. Apr. 24, 2025) ....................8

*Arconic Corp. v. Novelis Inc.*,
2021 WL 4479484 (W.D. Pa. Sept. 30, 2021)....................8

*Arconic Inc. v. Novelis Inc.*,
2019 WL 5802365 (W.D. Pa. Sept. 6, 2019)....................6

*Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*,
2011 WL 1348401 (N.D. Tex. Apr. 8, 2011) ....................8

*Finjan, Inc. v. Rapid7, Inc.*,
C.A. No. 18-1519-MN (D. Del. Aug. 7, 2020) (ORDER)....................9

*JJ Plank Co. v. Bowman*,
2018 WL 3545319 (W.D. La. July 23, 2018) ....................3

*Kennedy v. PEI-Genesis*,
2023 WL 3898893 (E.D. Pa. June 8, 2023)....................5

*Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*,
26 F.3d 375 (3d Cir. 1994)....................6

*Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*,
2017 WL 4310221 (M.D. Pa. Sept. 28, 2017)....................3

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.*,
206 F.R.D. 525 (D. Del. 2002) ....................3, 7, 8

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
894 F.2d 1318 (Fed. Cir. 1990)....................3, 5

*Minerva Surgical, Inc. v. Hologic, Inc.*,
C.A. No. 18-217-JFB-SRF (D. Del. Oct. 11, 2019) (ORDER) ....................9

*Procter & Gamble Co. v. Boyle-Midway, Inc.*,
1983 WL 830080 (D. Del. Apr. 11, 1983)....................9

*Syngenta Crop Protection, LLC v. Willowood, LLC*,
2016 WL 4925099 (D. Del. Sept. 14, 2016)....................3

## RULES

Fed. R. Civ. P. 26(b)(1)....................................................................................................................3

Fed. R. Civ. P. 53(f)(3)-(4) ..............................................................................................................3

## PRELIMINARY STATEMENT

The Court is well-versed in the issue presented by Plaintiffs' Objections to the Special Master's Order Granting Motions for Protective Orders Filed by Third Parties Ampere Computing LLC and Apple, Inc. (the "Objections," D.I. 657). The Objections are yet another attempt by Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (together, "Qualcomm") to access the highly sensitive commercial information of its direct competitor, nonparty Ampere Computing LLC ("Ampere"). Specifically, Qualcomm seeks discovery of unredacted copies of Ampere's architecture license agreement ("ALA") and technology license agreement ("TLA") with Defendant Arm Holdings PLC., f/k/a Arm Ltd. ("Arm"), as well as related documents and communications concerning Arm's performance under those agreements. As the Special Master properly determined, Qualcomm has not shown the information it seeks is relevant and, even if Ampere's information were marginally relevant, such relevance is far outweighed by the harm Ampere would suffer if its highly sensitive commercial information were disclosed. D.I. 615 (the "Order") at 4-6. The Objections should be overruled, and the Order should be sustained.

## FACTUAL AND PROCEDURAL BACKGROUND

Ampere is an inventor and innovator in the semiconductor space that competes with larger and more established public companies, like Qualcomm. A007-8 (Declaration of Jeff Wittich ("Wittich Decl.") ¶¶ 3, 6).[1] Ampere has entered into contracts with Arm pursuant to which Ampere licenses certain Arm technology for use in the design and manufacture of Ampere's

[1] Citations to A00x refer to the Appendix to the Objections (Vol. 1). D.I. 659.

microprocessors.[2] A007 (Wittich Decl. ¶ 4). Ampere's ALA and TLA were heavily negotiated and contain several critically sensitive commercial terms, including [redacted]. A008, A010-11 (Wittich Decl. ¶¶ 8, 17-22). Indeed, [redacted]. Order at 4. Because Ampere is a relatively small and young company compared to other major industry players, including Qualcomm, it is imperative for Ampere to keep the terms of its ALA, TLA, and related agreements out of competitors' hands. A008 (Wittich Decl. ¶ 6). In May 2025, Qualcomm announced it was entering the data center CPU market, where Ampere operates. *Id.* (Wittich Decl. ¶ 7). Disclosure to a direct competitor like Qualcomm would cause Ampere irreparable harm. A011 (Wittich Decl. ¶ 23).

Accordingly, in a prior action between these parties, captioned *Arm Ltd. v. Qualcomm Inc.*, C.A. No. 22-1146 (MN) (LDH) ("Prior Action"), Ampere twice moved for a protective order to prevent the disclosure of highly sensitive commercial terms in the Ampere ALA, despite consenting to production of the ALA with minimal redactions. *See* A002. The Court agreed with Ampere that its highly sensitive information should remain protected, granted its protective order, and overruled Qualcomm's objections. *See id.* The minimally redacted ALA produced in the Prior Action has been produced to Qualcomm in this action. A005.

Notwithstanding the rulings in the Prior Action, Qualcomm propounded on Arm broad discovery requests in this action concerning Arm's business relationship with Ampere (and other licensees), including unredacted copies of Ampere's ALA and TLA, as well as related documents

---

[2] Although Arm and Ampere now have a common majority owner (Obj. at 4 n.2), the two companies remain independently operated and the contractual arrangements between them are unchanged.

and correspondence. *See* Order at 2-3 (listing Qualcomm's document requests). On August 11, 2025, Ampere filed a Motion for a Protective Order (D.I. 374, the "Motion"), A0001-6, which Qualcomm opposed ("Opp."), A007-12. On January 30, 2026, the Special Master issued a Memorandum Order Resolving Non-Party Ampere's Motion for Protective Order granting the Motion. D.I. 615. On February 20, 2026, Qualcomm filed the Objections. D.I. 657 ("Obj.").

**ARGUMENT**

Discovery must be "relevant to a[] party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The party seeking discovery bears the burden of demonstrating relevance. *Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, 2017 WL 4310221, at *4 (M.D. Pa. Sept. 28, 2017). "[R]equested information is not relevant . . . if the inquiry is based on the on the party's mere suspicion or speculation." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990) (citations omitted). Where a nonparty is involved, the Court applies "the balancing standards—relevance, need, confidentiality and harm. And even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002).

A protective order "is not a substitute for establishing relevance or need." *Micro Motion*, 894 F.2d at 1325. "[T]he mere presence of a protective order does not automatically sanitize an overbroad discovery request . . . . [T]his conclusion is especially important as to a non-party to a competitor, and even if material may be designated 'for counsel's eyes only.'" *JJ Plank Co. v. Bowman*, 2018 WL 3545319, at *5 (W.D. La. July 23, 2018). Indeed, "[d]isclosure to a competitor is presumed more harmful than disclosure to a non-competitor." *Syngenta Crop Protection, LLC*

*v. Willowood, LLC*, 2016 WL 4925099, at *2 (D. Del. Sept. 14, 2016). The Special Master's application of these principles is reviewed *de novo*. Fed. R. Civ. P. 53(f)(3)-(4).

### A. The Special Master Correctly Concluded That Ampere's Highly Sensitive Information Is Not Relevant to Qualcomm's Claims.

The Special Master correctly concluded that Qualcomm failed to demonstrate that the documents and information it seeks from Ampere are relevant, determining that Qualcomm's requests are nothing more than a "fishing expedition." Order at 6. According to Qualcomm, the Special Master erred because Arm has apparently asserted that certain of its defenses in this action may require consideration of Arm's dealings with certain other third parties and that, as a result, Qualcomm is necessarily "entitled to examine all" third-party agreements and related documents and correspondence, Obj. at 6-7,[3] which agreements were entered into *years* ago, in the case of Ampere. A004.

As with the Opposition, the Objections contain no factual, nonspeculative basis to conclude that Ampere's ALA, TLA, or related documents and correspondence are probative of the claims or defenses in this action, which involve entirely different parties and contracts. *See* Order at 6. For example, Qualcomm provides no basis that Ampere's TLA provides the appropriate standard against which to measure Arm's compliance with the [redacted] in the Qualcomm TLA at issue.[4] *See* Obj. at 6-7. Nor does Qualcomm provide any basis that Arm

---

[3] Ampere is unable to fully address the alleged basis for Qualcomm's position because Qualcomm relies, in part, on redacted deposition testimony that has not been made available to Ampere. *See* Obj. at 6-8. But in any event, Qualcomm has failed to establish the information sought is relevant under applicable caselaw.

[4] Qualcomm has also taken objection to the Special Master's decisions granting other third-party motions regarding TLA-related documents and objects to the Order "with respect to the TLA-related documents for the same reasons." *See* Obj. at 1 (citing D.I. 648). Because Ampere does

provided Ampere deliverables that it otherwise failed to provide Qualcomm under the Qualcomm ALA at issue. *See id.* at 7-8. Indeed, Qualcomm acknowledges that Arm has not identified Ampere as one of the third-party ALAs it intends to rely on for Arm's defense.[5] *Id.* at 7.

Moreover, in both the Opposition and the Objections, Qualcomm fails to meaningfully engage with the case law cited by Ampere (and considered by the Special Master)[6] supporting that Qualcomm's requests are irrelevant. For example, Qualcomm does not contend with *Micro Motion*, in which the court denied a party's broad discovery directed at nonparty competitors' confidential commercial information based on the assertion that the discovery *might* bear on the party's damages theories. 894 F.2d at 1323, 1326-28 (Fed. Cir. 1990). Nor does Qualcomm contend with *AdTrader, Inc. v. Google LLC*, where the court found that the defendant's performance under an agreement with a non-party was irrelevant to whether the defendant breached the contract with plaintiff. 2021 WL 937559, at *2-3 (N.D. Cal. Mar. 12, 2021). Ampere is aware of no authority supporting the novel proposition that conduct with nonparties bears on

---

not have access to Qualcomm's filing at D.I. 648, it cannot assess or respond to Qualcomm's position as to the relevance of TLA-related documents set forth therein.

[5] Qualcomm contends that it need not "take [Arm's] word for which ALAs are relevant and which are not," Obj. at 7, but Qualcomm could have used other methods of discovery, such as propounding requests for admission to Arm, to get at the facts necessary to determine exactly that. To Ampere's knowledge, Qualcomm has not done so. Indeed, Qualcomm appears to have questioned witnesses along these lines during depositions, *see id.* at 6, but because such deposition testimony has been redacted, Ampere is unable to assess the contents of that testimony.

[6] The Special Master considered the cases cited in the Motion. *See* Order at 7 ("If I have not discussed certain assertions made or case law cited by the parties that does not mean that I did not consider them.").

basic breach of contract claims, nor has Qualcomm provided any. A004 (collecting citations to Qualcomm's failures to provide any authority to support relevance arguments).[7]

In sum, the Special Master correctly concluded that Ampere's TLA, ALA and Annexes thereto, as well as related documents and correspondence are not relevant.[8] The Order should be sustained, and the Objections should be overruled.

**B. The Special Master Correctly Determined That Disclosure of the Information Sought Risks Significant Competitive Harm to Ampere.**

The Special Master also correctly determined based on the Motion and supporting declaration that, even if the information Qualcomm seeks were "marginally relevant," even inadvertent disclosure of such "highly sensitive commercial terms . . . would result in great harm to Ampere." Order at 6. Rather than engage with those findings, Qualcomm handwaves any harm as "purely speculative" and claims that Ampere "assumes that Qualcomm's outside counsel will violate the Protective Order" allowing for an Attorneys'-Eyes-Only production. Obj. 8-9.

Not so. As explained in detail in its Motion and supporting declaration, Ampere has a particular need to protect the terms of its ALA and TLA with Arm, as well as related documents

---

[7] Qualcomm's reliance on *Kennedy v. PEI-Genesis* is inapposite. Obj. 6-8. *Kennedy* did not involve a request to protect competitively sensitive information of a nonparty from disclosure to direct competitors; instead, it involved the plaintiff's unsubstantiated request to shield discovery of his own medical records for privacy reasons despite putting his mental health into play. 2023 WL 3898893, at *2-4 (E.D. Pa. June 8, 2023).

[8] The Special Master also properly found that Qualcomm's requests for "[a]ll Documents and Communications concerning . . ." is overbroad and unduly burdensome because "Arm would be required to locate all the documents and communications and Ampere, a nonparty, would be required to review them." Order at 5. Because Qualcomm does not address this finding of the Special Master, any objection thereto is deemed waived. *See Arconic Inc. v. Novelis Inc.*, 2019 WL 5802365, at *5 (W.D. Pa. Sept. 6, 2019) ("A party waives an argument if they fail to raise it in their opening brief." (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).

and correspondence that divulge such terms. *See* A004-06 (Motion), A008-12 (Wittich Decl. ¶¶ 6, 16-24). Ampere is a relatively small company in the semiconductor space, making it essential to maintain the confidentiality of its competitive information. A008 (Wittich Decl. ¶ 6). Such concerns recently became even more acute when Qualcomm announced in May 2025 that it is entering the data center CPU market, where Ampere operates. *Id.* (Wittich Decl. ¶ 7).

Disclosure of the minimally redacted information from the Ampere ALA, consisting of bespoke and highly sensitive economic terms, including [redacted], would cause serious competitive harm to Ampere. *Id.* (Wittich Decl. ¶ 8). As Ampere explained in detail in its Motion and supporting declaration, disclosure of this information could allow Qualcomm to, among other things, [redacted]. *See* A004-05 (Motion), A009-16 (Wittich Decl. ¶¶ 16-22). The Ampere TLA likewise contains highly sensitive competitive information concerning Ampere's [redacted]. A008-11 (Wittich Decl. ¶¶ 9, 16-22). Any correspondence about Arm's performance under Ampere's ALA and TLA could similarly give Qualcomm insight into these very terms. A012 (Wittich Decl. ¶ 24).

These are precisely the type of specific and substantiated examples of harm that underscore Ampere's particular need for protection here. *See Allergan, Inc. v. Revance Therapeutics, Inc.*,

C.A. No. 21-cv-1411-RGA-JLH, D.I. 177 (D. Del. July 7, 2023) (ORDER) (granting protective order where disclosure of nonparty's sensitive commercial information in license agreement would cause competitive harm). The Special Master properly considered these facts when determining that even inadvertent disclosure of Ampere's highly sensitive commercial information would result in "great harm" to Ampere. *See* Order at 4-7.[9]

The Special Master's determination was correct even considering the Attorneys'-Eyes-Only designation in the Protective Order because, as explained in the Motion and acknowledged by the Court in the Prior Action, producing Ampere's confidential information on that basis does not solve the problem. A005 (Motion citing transcript in Prior Action). Even with the best of intentions, it is a human reality that Qualcomm's outside counsel cannot unlearn the information once disclosed, and that knowledge could ultimately negatively impact Qualcomm's dealings with Ampere—to say nothing of Qualcomm's use of that information at trial, particularly in light of Qualcomm's acknowledgement that specific terms of nonparties' agreements will be used at trial. Obj. at 6-8. As a nonparty, Ampere has no control over the use of its confidential information once disclosed. *See Mannington Mills*, 206 F.R.D. at 530-31 ("[I]t would be divorced from reality to believe that either party here would serve as the champion of its competitor . . . to maintain the confidentiality designation or to limit public disclosure . . . during trial."); *see also Amgen Inc. v.*

[9] Contrary to Qualcomm's contentions, the Special Master's citation to *Mannington Mills* does not mean its conclusions were wrong. Obj. at 10. That *Mannington Mills* involved a subpoena is a distinction without a difference. *See Mannington Mills*, 206 F.R.D. at 529 ("A nonparty moving to quash a subpoena, in essence, is the same as moving for a protective order that such discovery not be allowed."). That the Special Master did not cite a case requiring Ampere to show a "particular need for protection" does not matter because, as discussed above, Ampere has demonstrated a "particular need" to keep its information protected. And it is no answer to assert that "Arm shares [Ampere's] goal of protecting the confidentiality of its own agreements," Obj. at 10, because, as explained herein, it is out of nonparty Ampere's control how its confidential information is used once disclosed.

*Samsung Bioepis Co.*, 2025 WL 1207594, at *6 (D.N.J. Apr. 24, 2025) (similar); *Arconic Corp. v. Novelis Inc.*, 2021 WL 4479484, at *5 n.2 (W.D. Pa. Sept. 30, 2021) (denying objections to report and recommendation rejecting discovery requests, noting a "reluctan[ce] to order unnecessary disclosures of sensitive corporate information between these fierce industry competitors" even with a "robust protective order" in place); *Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*, 2011 WL 1348401, at *4 (N.D. Tex. Apr. 8, 2011) (nonparties are "unable to protect [their] interests should any of the confidential information be disclosed, even if done so pursuant to a protective order").[10] Again, Qualcomm does not contend with any of this caselaw.

In sum, the Special Master correctly concluded that disclosure of the information sought would result in great harm to Ampere. The Order should be sustained, and the Objections should be overruled.

## CONCLUSION

Plaintiffs' Objections to the Order should be overruled and the Order should be sustained.

---

[10] Qualcomm's cited authorities do not establish otherwise. Obj. at 10. Two of Qualcomm's cases did not involve disclosure of a nonparty's confidential information, but rather the disclosure of a party's confidential information. *See Minerva Surgical, Inc. v. Hologic, Inc.*, C.A. No. 18-217-JFB-SRF, D.I. 191, at 5 (D. Del. Oct. 11, 2019) (ORDER); *Procter & Gamble Co. v. Boyle-Midway, Inc.*, 1983 WL 830080, at *1 (D. Del. Apr. 11, 1983). And while the special master in *Finjan* overruled a nonparty's objection to an order requiring disclosure of its confidential information, the decision emphasized "the fact that [the defendant] does not appear to be a direct competitor of [the nonparty] further reduces any potential for harm to [the nonparty]." *Finjan, Inc. v. Rapid7, Inc.*, C.A. No. 18-1519-MN, D.I. 173, at 5 (D. Del. Aug. 7, 2020) (ORDER). Not so here.

WILSON SONSINI GOODRICH
& ROSATI, P.C.

*/s/ Kaitlin E. Maloney*
Brad D. Sorrels (#5233)
Kaitlin E. Maloney (#6304)
Nora M. Crawford (#6399)
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600
bsorrels@wsgr.com
kmaloney@wsgr.com
ncrawford@wsgr.com

*Attorneys for Nonparty*
*Ampere Computing LLC*

Dated: March 2, 2026