# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED,<br>  a Delaware corporation, and<br>QUALCOMM TECHNOLOGIES, INC.,<br>  a Delaware corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>  a U.K. corporation,<br><br>        Defendant. | C.A. No. 24-490-MN<br><br><br>**PUBLIC VERSION**<br>**FILED MARCH 9, 2026** |

## APPENDIX TO NON-PARTY AMLOGIC HOLDINGS LTD.'S RESPONSE TO QUALCOMM'S OBJECTIONS TO SPECIAL MASTER'S ORDER AS TO AMLOGIC

*Of Counsel*:

Andrew S. Ong (pro hac vice)
**GOODWIN PROCTOR LLP**
525 Market Street, 32nd Floor
San Francisco, CA 94105
(415) 733-6000
aong@goodwinlaw.com

Brett M. McCartney (No. 5208)
Elizabeth A. Powers (No. 5522)
Emily L. Skaug (No. 6921)
**BAYARD, P.A.**
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
bmccartney@bayardlaw.com
epowers@bayardlaw.com
eskaug@bayardlaw.com

*Attorneys for Non-Party
Amlogic Holdings Ltd.*

Dated: March 2, 2026

# TABLE OF CONTENTS

| Document | D.I. No. | Page Nos. |
|---|---|---|
| Motion of Amlogic Holdings Ltd. for Protective Order to Redact Competitively Sensitive Commercial Information (July 11, 2025) | D.I. 329 | A001-A071 |
| Reply Brief in Support of Amlogic Holdings Ltd.'s Motion for Protective Order to Redact Competitively Sensitive Commercial Information filed by Amlogic Holdings Ltd. (Aug. 1, 2025) | D.I. 351 | A072-A080 |
| Special Master's Memorandum Order Resolving Non-Party Amlogic's Motion for Protective Order (Feb. 2, 2026) | D.I. 614 | A081-A087 |
| Objections of Qualcomm Incorporated and Qualcomm Technologies, Inc. to Special Master Orders (Feb. 18, 2026) | D.I. 648 | A088-A103 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

QUALCOMM INCORPORATED,
  a Delaware corporation, and
QUALCOMM TECHNOLOGIES, INC.,
  a Delaware corporation,

　　　　　　Plaintiffs,

v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
  a U.K. corporation,

　　　　　　Defendant.

C.A. No. 24-490-MN

**NON-PARTY AMLOGIC HOLDINGS LTD.'S**
**MOTION FOR A PROTECTIVE ORDER TO REDACT**
**COMPETITIVELY SENSITIVE COMMERCIAL INFORMATION**

Pursuant to Federal Rule of Civil Procedure 26 and paragraphs 51-52 of the Stipulated Protective Order in this Action (D.I. 84), non-party Amlogic Holdings Ltd. ("Amlogic") hereby moves for a protective order preventing Defendant ARM Holdings PLC, f/k/a ARM Ltd. ("ARM") from producing to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (together "Qualcomm") competitively sensitive terms of agreements between ARM and Amlogic that have no relevance to this Action.

The small amount of information that Amlogic seeks to redact is not relevant to the parties' claims and defenses and includes information that is extremely competitively sensitive to Amlogic. If that information is disclosed to Qualcomm or its outside counsel and support staff, Amlogic will face a substantial risk of harm. That risk is particularly grave for Amlogic given its position as a merchant silicon vendor in a market segment that Qualcomm has attempted to enter and its small size relative to many potential competitors, like Qualcomm. Amlogic therefore respectfully

**A001**

requests that the Court enter a protective order for the limited redaction of highly sensitive information, in accordance with Exhibit 4.

Qualcomm is one of Amlogic's direct competitors, with both companies operating in many of the same markets in the semiconductor space, including WiFi/Bluetooth digital radios, Audio SoCs and IP Camera products. Both Qualcomm and Amlogic have licensing arrangements with ARM, but Amlogic is not a party to this litigation. Qualcomm has sued ARM for alleged breach of *its* licensing agreement with ARM. Notably, Qualcomm has redacted substantial portions of its pleading that reveal the terms of its licensing agreement with ARM and has refused to provide an unredacted copy to outside counsel for Broadcom Inc., another third party seeking to redact its own information. *See* D.I. 213 at 1-2. Yet Qualcomm seeks disclosure of similar information in Amlogic's agreement, even though that information has no connection to ARM's performance of its duties to Qualcomm under Qualcomm's agreement.

Qualcomm seeks discovery of Amlogic's Technology Licensing Agreement ("TLA") and ARM Total Access agreement ("ATA"), as well as supplements and amendments thereto, and order forms. These documents contain trade secrets of Amlogic. Specifically, the information that Amlogic seeks to redact includes the royalty rates that Amlogic pays ARM and Amlogic's payment structure regarding the technology that Amlogic licenses from ARM.

The Court should grant a protective order preventing disclosure of Amlogic's unredacted agreements with ARM. Anticipating that sensitive information and trade secrets of third parties might be sought in discovery in this Action, the Court approved a specific procedure for third parties like Amlogic to seek relief under the Stipulated Protective Order. Amlogic invokes that procedure to prevent its competitor from accessing its trade secrets and other information that would harm's Amlogic's competitive position. As this Court held in the related action between ARM and Qualcomm, "[a] court may issue an order under Rule 26(c) to protect information from

disclosure for good cause, which requires a movant to show that, absent the protective order, it will suffer a clearly defined and serious injury … balancing relevance, need, confidentiality, and harm." *ARM Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146 (MN), D.I. 207 (D. Del. Nov. 27, 2023). Amlogic has shown good cause here.

*First*, the documents and information Qualcomm seeks are not relevant and are not discoverable at all. Qualcomm has filed breach of contract claims against ARM, alleging that ARM breached *Qualcomm's* licensing agreement. The terms of ARM's separate licensing agreements with third parties, including Amlogic's, have no bearing on Qualcomm's claims.

*Second*, even if the documents and information Qualcomm seeks were marginally relevant, that is far outweighed by the harm to Amlogic in disclosing trade secrets and highly sensitive information to its direct competitor. Qualcomm could use the pricing information from Amlogic's TLA, ATA, and related documents to reverse engineer other details about Amlogic's business, such as how much Amlogic must charge its customers to remain profitable.

Amlogic does not have access to *Qualcomm*'s pricing terms with ARM, presumably because Qualcomm agrees that knowledge of those terms would give Amlogic a competitive edge. Turning one-sided information over to Qualcomm simply because Qualcomm has sued ARM would create information asymmetry severely impairing Amlogic's ability to compete.

Having demonstrated good cause, Amlogic requests that the Court enter its proposed protective order, filed herewith, maintaining the proposed redactions of Exhibit 4.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   Amlogic's Agreement With ARM

Amlogic is a fabless semiconductor company specializing in system-on-chip ("SoC") solutions for consumer electronics and commercial applications. *See* Declaration of Richard Swope ("Swope Decl."), filed herewith as Exhibit 1, ¶ 3. Key to its business, Amlogic has several

long-standing agreements with ARM to license technology that ARM develops. These agreements are highly negotiated and contain terms that are unique to Amlogic and that reveal sensitive information about Amlogic's business model. *Id.*¶ 5. Qualcomm, a major direct competitor of Amlogic in the semiconductor space (*id.* ¶ 3), also contracts with ARM for technology that Qualcomm then integrates into its products. *See, e.g.*, D.I. 6 ¶ 5.

Amlogic's TLA, ATA, and related documentation contain highly confidential and commercially sensitive terms, including royalty rates and payment terms regarding the technology that Amlogic licenses from ARM. Swope Decl. ¶ 5. The terms of the TLA, ATA, and supplements and amendments thereto were negotiated under highly confidential conditions. *Id.* Amlogic does not distribute information regarding the technology that it licenses from ARM or the pricing structure for its license outside of Amlogic. *Id.* ¶ 8. Even within Amlogic, access to the TLA and ATA, including supplements and amendments thereto, is proscribed. *Id.*

The TLA itself defines "Confidential Information" to include, among other things, "the terms and conditions of th[e] TLA." Swope Decl. ¶ 6. And Section 3.1 of the TLA prevents disclosure of Confidential Information:

> **Restricted Disclosure**
>
> Except as expressly provided by Clauses 3.2, 3.3, 3.4, 3.5, 3.6 and 3.7, each party shall maintain in confidence the Confidential Information disclosed by the other party and apply security measures no less stringent than the measures that such party applies to its own like information, but not less than a reasonable degree of care, to prevent unauthorised disclosure and use of the Confidential Information. The period of confidentiality shall be indefinite with respect to each party's Confidential Information.

*Id.* Section 3.6 of the TLA further provides that any party required to make disclosure of Confidential Information pursuant to a court order must "promptly notif[y] the other party" and "give[] the other party a reasonable opportunity to contest or limit the scope of such required disclosure (including but not limited to making an application for a protective order)[.]" *Id.* ¶ _.

**B.**     **ARM Produces Redacted Third-Party Agreements to Qualcomm in Related Litigation, and the Court Issues Protective Orders.**

Recognizing the sensitivity of the terms of its agreements with third parties, when Qualcomm sought production of such agreements in related litigation between Qualcomm and ARM—*ARM Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146 (MN) (D. Del.) (the "*NUVIA* Litigation")—ARM produced the agreements in redacted form.  Qualcomm sought to compel unredacted versions of these third-party licensing agreements with ARM.  The Court rejected those arguments and granted a protective order to other third-party ARM licensees that sought to maintain redaction of the royalty terms in their agreements with ARM.  Regarding Apple, the Court ruled in its favor because "Qualcomm … could obtain unfair competitive advantages by accessing information contained in the 2023 Apple ALA" even if that information were provided only to Qualcomm's outside counsel, and not Qualcomm itself.  *NUVIA* Litigation, D.I. 207; *see also NUVIA* Litigation, D.I. 252 (denying Qualcomm's motion to compel unredacted licensing agreements between ARM and other third parties); *NUVIA* Litigation, D.I. 178, Exh. A (Tr. of Mot. Hearing, Sept. 29, 2023, at 48:18-49:4) (rejecting argument that "robust" protective order mitigates concerns of producing unredacted "highly sensitive" information.").

**C.**     **The Court Establishes a Procedure for Addressing Third-Party Objections to Discovery in This Action.**

When Qualcomm filed this Action against ARM, the parties understood that the same confidentiality concerns over third party information could arise as they did in the *NUVIA* Litigation.  Therefore, Qualcomm and ARM stipulated to a procedure for resolving such disputes. The Stipulated Protective Order (which the Court entered) permits nonparties whose competitively sensitive information is being sought in discovery to move the Court to protect that information from disclosure.  *See* D.I. 84 ¶¶51-52.  Under the Stipulated Protective Order, when a party is required to produce a third party's confidential information that is subject to a confidentiality agreement, it must promptly notify the requesting party and the third party in writing, provide the

third party with a copy of the discovery requests, and make the requested information available for the third party's inspection. *Id.* ¶ 51. The third party then has 21 days to file a motion for a protective order. *Id.* ¶ 52.

**D.    ARM Notifies Amlogic That Qualcomm Is Seeking Amlogic's Confidential Information.**

On June 25, 2025, ARM sent Amlogic a letter notifying Amlogic that Qualcomm is seeking discovery in this Action that could include the highly sensitive pricing terms in Amlogic's "TLA, ATA, RPA, and amendment/annex thereto" as well as other documents related to Amlogic's and ARM's licensing arrangement. *See* Exhibit 2. The letter further stated that ARM intends to produce such documentation in unredacted form. *Id.* On or around July 1, 2025, counsel for ARM informed Amlogic that it intended to make this production by the close of fact discovery on July 11, 2025, in accordance with the Scheduling Order in this case. *See* Swope Decl. ¶ 4; D.I. 44 at 10. On July 11, 2025, undersigned counsel for Amlogic emailed counsel for ARM and Qualcomm requesting that the Parties agree withhold production of the Amlogic's confidential documentation to allow Amlogic to meet and confer with the Parties to try to reach an agreement, especially in light of the fact that Amlogic's time period under Paragraph 52 of the Stipulated Protective Order does not expire until July 16, 2025. *See* Ex. 2. Only counsel ARM responded to counsel's email and ARM's counsel only confirmed that ARM understands that Amlogic intends to file a protective order. *See* Exhibit 3. Having received no relief from the Parties , Amlogic is forced to file the instant Motion to prevent its highly sensitive information from reaching a direct competitor.[1]

---

[1] Amlogic does not believe that given the procedure set forth in Paragraphs 51-52 of the Stipulated Protective Order  that it is necessary for Amlogic to formally intervene in this litigation to protect its rights. Amlogic is prepared to file a motion to intervene should this Court find that it is necessary.

## **ARGUMENT**

Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery of any non-privileged information that is relevant to a claim or defense and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  The party seeking discovery bears the burden of demonstrating relevance.  *See Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, 2017 WL 4310221, at *4 (M.D. Pa. Sept. 28, 2017).  The existence of a protective order in an action "is not a substitute for establishing relevance or need[;]" rather, a protective order's purpose is to "prevent harm by limiting disclosure of *relevant* and *necessary* information."  *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990).

Rule 26 limits the scope of discovery by providing that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(G).  "[G]ood cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure."  *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984). "[I]t is clear that a court may issue a protective order restricting disclosure of discovery materials to protect a party from being put at a competitive disadvantage." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 890 (E.D. Pa. 1981); *see also United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 158-62 (D. Del. 1999) (granting protective order shielding nonparty's confidential information from discovery by competitor's in-house attorney to mitigate risk of harm).  In determining whether good cause exists to preclude discovery, the Court considers whether the movant has "show[n] that, absent the protective order, it will suffer a clearly defined and serious injury … balancing relevance, need, confidentiality, and harm." *NUVIA* Litigation, D.I. 207.  Indeed, "even if the information sought is relevant, discovery is not

7

allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (cited in *NUVIA* Litigation, D.I. 207).

This Court has applied this same standard to competitively sensitive information of other third parties who license technology from ARM. *See NUVIA* Litigation D.I. 207. For similar reasons, the Court should enter Amlogic's proposed protective order preventing production of its competitively sensitive information regarding its licensing arrangements with ARM because: (1) the information Qualcomm seeks is not relevant to its claims at all; and (2) even if the information were relevant, any need for that information is far outweighed by the harm Amlogic would incur in having its confidential information disclosed to its direct competitor. As explained below, Amlogic's motion for protective order should be granted.

## A.    The Information Qualcomm Seeks Is Irrelevant to Its Claims in This Action.

As an initial matter, the Court should grant Amlogic's motion because the information Qualcomm seeks is completely irrelevant and will not lead to the discovery of admissible evidence. Qualcomm has sued ARM for breach of *Qualcomm's* licensing agreement with ARM, alleging that ARM failed to deliver certain technology it owed to *Qualcomm* under *Qualcomm's* agreement. *See generally* Compl. The proposed redactions to Amlogic's TLA and related documentation regarding the payment structure, royalties and subsidiary lists[2] will not lead to the discovery of admissible evidence that ARM breached its delivery obligations under *Qualcomm's* licensing agreement.

---

[2] Qualcomm seems to concede that the identity of customers and suppliers of similarly situated third parties as Amlogic have no relevance. *See* D.I. 211 at 13 ("Qualcomm has no need for such information and will agree that Arm can produce a version of the TLA and annexes with narrow redactions covering the identities of any such customers or suppliers."). Similarly, Qualcomm has "no need" for the identity of Amlogic's subsidiaries.

Although Qualcomm argued relevance in the *NUVIA* Litigation, that argument does not apply here. There, Qualcomm argued that the pricing terms in other licensing agreements were "directly relevant" to its defense to *ARM's* claim for specific performance because those terms could help demonstrate that monetary damages would be sufficient to compensate *ARM* for *its* alleged harm. *See NUVIA* Litigation, D.I. 201 & 243. The Court expressed skepticism as to that argument in the *NUVIA* Litigation and ultimately did not require production of the pricing terms. *See NUVIA* Litigation D.I. 207 & 252. Qualcomm cannot even assert that argument here because ARM has not alleged any claims against Qualcomm in this Action.

At least one federal district court has noted that a defendant's performance under an agreement with a third party is irrelevant to claims that the defendant breached its duties under a similar, separate agreement with the plaintiff. *See AdTrader, Inc. v. Google LLC*, 2021 WL 937559, at *2 (N.D. Cal. Mar. 12, 2021) (holding that Google's policies toward nonparty AdX advertisers were not discoverable because they revealed nothing about its performance or compliance with contractual obligations owed to AdWords advertisers under a separate agreement, making that information irrelevant). So, too, here.

**B.    Disclosure of Amlogic's Proprietary Information Poses a Substantial Risk of Competitive Harm to Amlogic.**

Even if the information Qualcomm seeks were relevant, there is good cause to prevent disclosure because the harm to Amlogic far outweighs any marginal benefit to Qualcomm. *See Mannington Mills*, 206 F.R.D. at 529 ("[E]ven if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit").

Indeed, Qualcomm itself redacted similar information from its own complaint in this Action regarding what it pays to license technology from ARM (*see* Compl. ¶ 40), recognizing that such information is sensitive and should not be disclosed. Amlogic is seeking to prevent

Qualcomm from accessing the same type of information, which is also the same type of information that the Court protected in the *NUVIA* Litigation.

The pricing structure, royalties, and and related terms sought to be redacted from Amlogic's agreements and related documentation are trade secrets. A trade secret is information that both "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and is subject to reasonable efforts "to maintain its secrecy.'" *Syngenta Crop Prot., LLC v. Willowood, LLC*, 2016 WL 4925099, at *3 (D. Del. Sept. 14, 2016) (quoting 6 *Del. C.* § 2001(4)(a)-(b)). Information revealing a company's particular cost factors has also been held to constitute a trade secret. *See, e.g.*, *Am. Totalisator Co. v. Autotote Ltd.*, 1983 WL 21374, at *3 (Del. Ch. Aug. 18, 1983) (stating that "information on prices and costs" was considered a trade secret). However, even if these terms were not trade secrets, they are still highly sensitive confidential information. Amlogic has submitted evidence that the agreements and the specific terms to be redacted are not disclosed publicly and access is even restricted internally at Amlogic. *See* Swope Decl. ¶ 8.

Amlogic has also demonstrated risk of serious injury if its trade secrets and confidential communications were to be disclosed to Qualcomm, its direct competitor. Indeed, if Qualcomm were permitted to access information regarding the royalties Amlogic pays to license ARM technology, Qualcomm could use that to reverse engineer pricing levels that Amlogic must achieve from its own products to remain profitable. *See* Swope Decl. ¶ 9. As explained above, Amlogic does not have access to similar information about Qualcomm. Thus, disclosure of Amlogic's information would create an asymmetry and hurt Amlogic's ability to effectively compete with Qualcomm.

This competitive harm to Amlogic cannot be remedied through a confidentiality agreement that designates the TLA and amendments/annexes thereto as "attorneys' eyes only." In the *NUVIA* Litigation, this Court recognized "the harm of disclosure given that Qualcomm's outside counsel will necessarily need to communicate generalized information about the ALA to its client, all of which remains true even given the Protective Order in this case." *NUVIA* Litigation, D.I. 207 (citation omitted)). The same concerns exist here; Qualcomm's outside counsel will need to communicate to some extent with Qualcomm about the information and documents it receives. *See also Mannington Mills*, 206 F.R.D. at 530-32 (rejecting party's argument that attorney's-eyes-only clause in protective order prevented nonparty competitor from showing that disclosure of its confidential information would be harmful and ultimately quashing subpoena on relevance grounds).

Moreover, the competitive harm facing Amlogic from disclosure is not outweighed by any need for the information and documents Qualcomm is seeking about Amlogic's relationship with ARM. As explained above, the proposed terms to be redacted are not even relevant, much less necessary, to prove Qualcomm's claims. Qualcomm is seeking relief because of supposed breaches of ARM's obligations to Qualcomm under Qualcomm's licensing agreement. There is no reason Qualcomm could not discover all of the facts it needs to prove those claims from its own communications with ARM or from ARM's internal communications. Thus, there are less restrictive means for Qualcomm to obtain the discovery it needs without harming Amlogic. *See Amgen Inc. v. Samsung Bioepis Co.*, 2025 WL 1207594, at *6 (D.N.J. Apr. 25, 2025) (granting protective order to nonparty competitor, in part, because attorney's-eyes-only provision was not "less restrictive means" to adequately protect nonparty's interests).

**A011**

Because disclosure of the proposed information to be redacted in Amlogic's TLA, and supplements and amendments thereto with ARM would cause serious risk of competitive harm, and that harm is not outweighed by any substantial need, the Court should enter a protective order.

## **CONCLUSION**

For all of the foregoing reasons, Amlogic respectfully requests that the Court issue a protective order prohibiting ARM from producing or otherwise disclosing to Qualcomm versions of Amlogic's TLA or ATA, or supplements and amendments thereto, that are not redacted in accordance with Exhibit 4.

Dated: July 11, 2025

OF COUNSEL:

Andrew S. Ong
Craig Lytle
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
TEL: (650) 752-3100
AOng@goodwinlaw.com
CLytle@goodwinlaw.com

**BAYARD, P.A.**

/s/ Brett M. McCartney
Brett M. McCartney (No. 5208)
Emily L. Skaug (No. 6921)
600 N. King St., Suite 400
Wilmington, DE 19801
(302) 655-5000
bmccartney@bayardlaw.com
eskaug@bayardlaw.com

*Attorneys for Non-Party Amlogic Holdings Ltd.*

**A012**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

QUALCOMM INCORPORATED,
  a Delaware corporation, and
QUALCOMM TECHNOLOGIES, INC.,
  a Delaware corporation,

        Plaintiffs,

v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
  a U.K. corporation,

        Defendant.

C.A. No. 24-490-MN

**[PROPOSED] ORDER GRANTING NON-PARTY AMLOGIC HOLDINGS LTD.'S
MOTION FOR A PROTECTIVE ORDER
<u>UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(c)</u>**

WHEREAS, having considered Non-party Amlogic Holdings Ltd.'s ("Amlogic") Motion

for a Protective Order Under Federal Rule of Civil Procedure 26(c) (the "Motion");

**IT IS HEREBY ORDERED** that:

1. Amlogic's Motion for a Protective Order under Federal Rule of Civil Procedure
   26(c) is **GRANTED**;

2. Defendant ARM Holdings PLC ("ARM") is prohibited from producing or
   otherwise disclosing to Plaintiffs Qualcomm Incorporated and Qualcomm
   Technologies, Inc. any version of the Technology Licensing Agreement or ARM
   Total Access agreement between Amlogic and ARM, and supplements and
   amendments thereto, that do not redact the information identified in Ex. 4 to
   Amlogic's Motion.

Dated: _____

_____
UNITED STATES DISTRICT COURT JUDGE

**A013**

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

QUALCOMM INCORPORATED,
  a Delaware corporation,
QUALCOMM TECHNOLOGIES, INC.,
  a Delaware corporation,,

        Plaintiffs,

v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
  a U.K. corporation,

        Defendant.

C.A. No. 24-490 (UNA)

**DECLARATION OF RICHARD SWOPE IN SUPPORT OF NON-PARTY AMLOGIC HOLDINGS LTD. MOTION FOR A PROTECTIVE ORDER TO REDACT <u>COMPETITIVELY SENSITIVE COMMERCIAL INFORMATION</u>**

I, Richard Swope, declare as follows:

1. I am over the age of 18 and am the General Counsel of Amlogic (USA) Ltd, whose ultimate parent is Amlogic Holdings Ltd. ("Amlogic"), where I maintain the legal aspects of the relationship between Amlogic and its EDA (electronic data automation) and third party IP suppliers, including ARM Ltd. ("ARM"). My responsibilities include both negotiation and ongoing execution and management of all agreements with these suppliers. I have been employed by Amlogic since January, 2021. If called as a witness, I could and would testify to the information set forth in this Declaration.

2. I make this Declaration in support of Non-Party Amlogic Holding's Ltd. Motion for a Protective Order. I am familiar with and have reviewed Amlogic's Technology Licensing Agreement ("TLA") and ARM Total Access agreement ("ATA") with defendant ARM as well as amendments and supplements thereto, and order forms. I am also familiar with

**A015**

the negotiation of these agreements and ARM's delivery of specific technology to Amlogic under the TLA and ATA.

3.  Amlogic is a fabless semiconductor company specializing in system-on-chip ("SoC") solutions for consumer electronics and commercial applications. Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. (together "Qualcomm") directly compete with Amlogic in the semiconductor space, including WiFi/Bluetooth digital radios, Audio SoCs and IP Camera products. Both Amlogic and Qualcomm have entered agreements with ARM to license certain technology to use in the chips they design and market.

4.  I understand that Qualcomm has served discovery requests seeking disclosure of Amlogic's TLA, ATA, amendments and supplements thereto, and order forms. I also understand that in order to comply with its discovery obligations and the Stipulated Protective Order in this case, ARM intends to produce these documents, unredacted, on July 11, 2025. In particular, on or around July 1, 2025, I was informed by counsel for ARM that the production would be made before the close of fact discovery on July 11, 2025.

5.  Amlogic's TLA, ATA, amendments and supplements thereto, and order forms contain trade secrets, including pricing terms, royalty rates, and related negotiated terms regarding the technology that Amlogic licenses from ARM. The royalty rates, payment structure, and related terms in the TLA, ATA, and amendments and supplements thereto, and order forms are unique to Amlogic and were negotiated under competitive and highly confidential conditions. They are not generally known and are not readily ascertainable by Amlogic's competitors.

6.  Because of the sensitivity of the information contained in the TLA and ATA, including amendments and supplements thereto, the information is governed by detailed confidentiality provisions. The TLA defines "Confidential Information" to include ,

A016

among other things , "the terms and conditions of th[e] TLA." Section 3.1 of the TLA states:

> **Restricted Disclosure**
>
> Except as expressly provided by Clauses 3.2, 3.3, 3.4, 3.5, 3.6 and 3.7, each party shall maintain in confidence the Confidential Information disclosed by the other party and apply security measures no less stringent than the measures that such party applies to its own like information, but not less than a reasonable degree of care, to prevent unauthorised disclosure and use of the Confidential Information. The period of confidentiality shall be indefinite with respect to each party's Confidential Information.

7. Section 3.6 of the TLA states in relevant part:

> **Other Permitted Disclosures**
>
> Either party may disclose Confidential Information received from the other party in the following circumstances: (i) disclosure to third parties to the extent that the Confidential Information is required to be disclosed pursuant to a court order or as otherwise required by law, provided that the party required to make the disclosure promptly notifies the other party upon learning of such requirement and has given the other party a reasonable opportunity to contest or limit the scope of such required disclosure (including but not limited to making an application for a protective order)[.]

8. Amlogic treats information relating to the commercial terms covering the technology that it licenses from ARM and the pricing structure for its license with utmost sensitivity. This information is not distributed outside of Amlogic, and even within Amlogic, access to the TLA and ATA, including supplements and amendments thereto, is distributed only to limited personnel who have a specific business need to know its contents. The TLA and ATA, including supplements and amendments thereto, are among the most commercially sensitive documents maintained by Amlogic and are subject to stringent confidentiality obligations to protect the information contained therein.

9. Amlogic would suffer significant competitive injury if the unredacted TLA, ATA, or supplements or amendments thereto, were produced to Qualcomm. Learning when and how much Amlogic pays ARM to license its technology would give Qualcomm

- 3 -

**A017**

significant insight into Amlogic's own pricing decisions for products that compete with Qualcomm's.

10. Finally, Amlogic does not have access to Qualcomm's licensing agreements with ARM. It is my understanding that Qualcomm has redacted the same information it now seeks to obtain from Amlogic, conceding the competitively sensitive nature of such information.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 11th day of July, 2025, in Santa Clara, California.

_____
Richard Swope
Amlogic Holdings Ltd.

- 4 -

**A018**

# Exhibit 2

ORIGIN ID:RHVA    (408) 576-1500
PHILLIP PRICE
ARM INC.
120 ROSE ORCHARD WAY

SAN JOSE, CA 95134
UNITED STATES US

SHIP DATE: 24JUN25
ACTWGT: 1.00 LB
CAD: 100018179/INET4535

BILL SENDER

TO  **ATTN: LEGAL DEPT.**
**AMLOGIC**
**1413 GRANT ROAD**

**MOUNTAIN VIEW CA 94040**

(000) 000-0000         REF: PHILLIP PRICE - 100442
INV:
PO:                    DEPT:

58GJ/I0F5G9P2




FedEx
Express

REL#
3785346

**WED - 25 JUN 10:30A**
**PRIORITY OVERNIGHT**

TRK#
0201      **8822 7810 6576**

**WA NUQA**           **94040**
              CA-US    **SJC**



After printing this label:
**CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH**
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

A020

# arm

24 June 2025

Amlogic
1413 Grant Road
Mountain View, CA 94040
Attn: Legal Dept.

**Arm Ltd**
5707 Southwest Pkwy
Bld 1 Suite 100
Austin, TX 78735

T +1 (973) 896-8902
arm.com

Dear Amlogic Legal Department recipient:

I write on behalf of Arm Ltd. ("Arm") regarding discovery requests from Qualcomm seeking confidential information relating to the Technology License Agreement ("TLA"), ARM Total Access Agreement ("ATA"), and Royalty Pricing Agreement ("RPA") between Amlogic Holdings and Arm.

Arm has received discovery requests in *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holdings plc.*, Case No. 24-490 (MN) (D. Del.), directed to Arm's business relationships with Amlogic Holdings, including requests for unredacted copies of Arm's TLA, ATA, and RPA with Amlogic Holdings.

Arm hereby provides notice under the relevant TLA, ATA, and/or RPA that it intends to produce to Qualcomm confidential information relating to Arm's relationship with Amlogic Holdings, including copies of the unredacted TLA, ATA, and RPA between Arm and Amlogic Holdings, and amendments, exhibits, and annexes thereto, in responding to discovery from Qualcomm, consistent with Arm's discovery obligations under the Court's Scheduling Order, applicable Local Rules, and relevant federal law.

Arm's production of any TLA, ATA, RPA, and amendment/annex thereto will be designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the protective order entered in the Litigation, a copy of which is attached. Plaintiffs in this matter are represented by the law firms of Paul, Weiss, Rifkind, Wharton & Garrison LLP, Morris, Nichols, Arsht & Tunnell LLP, and potentially other firms that may enter appearances at a later date.

Please note that the protective order and ESI order entered in *Qualcomm Inc. and Qualcomm Techs., Inc. v. Arm Holdings plc* do not contain provisions allowing Arm to redact third party information absent court order. Please let us know by July 3, 2025 whether Amlogic Holdings intends to seek a protective order or other relief from the court. Should Amlogic Holdings not notify Arm of its intent to seek a protective order or other relief from the court by July 3, 2025, Arm intends to produce to Qualcomm confidential information relating to Arm's relationship with Amlogic Holdings, including copies of the unredacted TLA, ATA, and RPA between Arm and Amlogic Holdings, and amendments, exhibits, and annexes thereto in an unredacted form. Arm will work with Amlogic Holdings should Amlogic Holdings need more time to consider, or to contest, the production of the TLA, ATA, and RPA, and related information in an unredacted form.

Please contact me at phillip.price@arm.com or (973) 896-8902 if you have any questions.

Sincerely,

Phillip Price
Senior Director and Head of Litigation

**A021**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>  a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>  a Delaware corporation, | )<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | C.A. No. 24-490 (MN) |
| ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>  a U.K. corporation, | )<br>)<br>) | **JURY TRIAL DEMANDED** |
| Defendant. | )<br>) | |

## STIPULATED PROTECTIVE ORDER

WHEREAS, Plaintiffs Qualcomm Inc., Qualcomm Technologies, Inc. (collectively "Qualcomm" or "Plaintiffs") and Defendant Arm Holdings PLC ("Arm" or "Defendant") expect discovery in the above-captioned action, including any appeals therefrom (this "Litigation"), to encompass certain information that may constitute proprietary, confidential, commercially sensitive, trade secret, and/or other confidential development, business, or commercial information.  If such information is disclosed or disseminated in an unprotected manner, it may cause substantial harm to Plaintiffs, Defendant, and/or nonparties, including loss of competitive advantage, loss of existing business, and loss of business opportunities.  Accordingly, the Parties, by and between their respective Outside Counsel, HEREBY STIPULATE AND AGREE, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and subject to the approval of the Court, that the following Stipulated Protective Order (the "Protective Order") shall govern the handling of Discovery Material in the Litigation.  Accordingly, pursuant to Fed. R. Civ. P. 26(c), it is hereby ORDERED THAT:

**A022**

## DEFINITIONS

1.      "Affiliate" means any Third Party that directly or indirectly through one or more intermediaries controls, or is controlled by, or is under common control with, a Party to this Litigation.

2.      "CONFIDENTIAL" means information that constitutes, contains, reveals, or reflects trade secrets or other confidential research, development, business, or commercial information within the meaning of Fed. R. Civ. P. 26(c)(l)(G), including but not limited to: (i) confidential, proprietary, or commercially sensitive information; (ii) any information which is not generally known and which the Producing Party would not normally reveal to Third Parties, would cause Third Parties to maintain in confidence; (iii) any information that the Producing Party believes in good faith is sensitive, or reasonably believes to be protected by a right to privacy under foreign, federal, or state law, a data protection law, or any other applicable privilege or right related to confidentiality or privacy; or (iv) confidential information of a Third Party that the Producing Party is bound by a separate confidentiality agreement or court order to maintain in confidence and that the Producing Party is permitted to produce in this Litigation.  CONFIDENTIAL information includes, but is not limited to, scientific and technical information; financial, budgeting and/or accounting information; information about existing and potential customers; marketing and other business strategies, decisions, or negotiations; personnel compensation, evaluations, and other employment information; and includes such confidential and proprietary information about a Third Party, including parents, subsidiaries, and/or other Affiliates.  Provisions of this Protective Order relating to CONFIDENTIAL information shall be understood to encompass any information derived from, as well as testimony and oral conversation related to, CONFIDENTIAL information, and all copies, excerpts, and summaries thereof.

2

3.     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" means highly sensitive CONFIDENTIAL information, disclosure of which to another Party or Third Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

4.     "Source Code" means human-readable representations of software, firmware, and integrated circuits.  Source Code includes, but is not limited to, programming language text, symbolic representations of integrated circuits ("Chip-Level Schematics") or graphical depictions of physical configuration of semiconductor material within integrated circuit die or chip ("Integrated Circuit Layouts"), as well as register-transfer level abstraction files ("RTL Files") and transaction-level modeling files ("TLM Files").  Source Code includes, but is not limited to, programming language text in "C," "C++," BREW, Java ME, J2ME, assembler, digital signal processor ("DSP"), Hardware Design Language ("HDL"), VHDL, or Verilog programming languages.

5.     "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY" means highly sensitive CONFIDENTIAL information that includes Source Code.

6.     "CONFIDENTIAL Discovery Material" means Discovery Material a Designating Party designates as CONFIDENTIAL pursuant to the terms of this Protective Order.

7.     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material" means Discovery Material a Designating Party designates as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY pursuant to the terms of this Protective Order.

8.     "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material" means Discovery Material a Designating Party designates as HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY pursuant to the terms of this Protective Order.

3

**A024**

9.      "Discovery Material" means all documents, testimony, pleadings, exhibits, and all other material or information produced or disclosed in this Litigation, including disclosures, contentions, responses to requests for production of documents and/or things, answers to interrogatories, responses to requests for admissions, documents and things made available for inspection, deposition testimony, expert testimony and reports, and all other disclosures made and discovery taken pursuant to the Federal Rules of Civil Procedure and any order of this Court, including Third Party discovery pursuant to Rule 45, matters in evidence and any other information hereafter furnished, directly or indirectly, by or on behalf of any Party, Third Party, or witness in connection with this Litigation.  This Protective Order and protections herein shall apply to all Discovery Material.

10.      "Expert" means a person with specialized knowledge or experience in a matter pertinent to this Litigation, including any associates or analysts working under the supervision of the Expert, with disclosure only to the extent necessary to perform such work, who has been retained by a Party or its Outside Counsel to serve as an expert witness or as a consultant in this Litigation who, at the time of retention: (1) is not an officer, director, or employee of a Party, Affiliate, or Competitor of a Party and (2) is not anticipated to become an officer, director, or employee of a Party, Affiliate, or Competitor of a Party.  Nothing in this Protective Order purports to alter in any way the requirements for offering testimony under Fed. R. Evid. 703, or to define the term "expert" for purposes other than those addressed in this Protective Order.

11.      "Competitor" means any entity or person that is involved in the development of any custom CPU or SoC for mobile or compute markets that would compete against Plaintiffs' custom Arm-based CPU(s) or SoC(s) for mobile, automotive, IoT, or compute markets.

4

**A025**

12.     "Outside Counsel" means (i) any attorney from a law firm that has made a formal appearance as counsel of record for a Party in this Litigation and who is not an employee of a Party or of an Affiliate, and (ii) partners, principals, counsel, associates, employees, and contract attorneys of such Outside Counsel to whom it is reasonably necessary to disclose information for this litigation, including supporting personnel employed by the attorneys, such as paralegals, legal translators, legal secretaries, legal clerks, and shorthand reporters.

13.     "Party" means a party to this Litigation.

14.     "Challenging Party" means a Party or Third Party that challenges the designation of information or items under this Protective Order.

15.     "Designating Party" means any Party or Third Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY."

16.     "Producing Party" means any Party or any Third Party who produces or otherwise discloses, whether through formal or informal means, Discovery Material in this Litigation.

17.     "Professional Vendor" means a person or entity that provides litigation support services (e.g., photocopying, audio or video recording, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium; jury consulting including mock jurors, mock trial coordination) and their employees and subcontractors. Professional Vendors do not include Experts.

18.     "Protective Order" means this Stipulated Protective Order.

19.     "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY."

20.     "Receiving Party" means any Party that receives Discovery Material produced or otherwise disclosed by any Producing Party.

21.     "Third Party" means a person or entity that is not a Party.

## SCOPE

22.     The protections conferred by this Protective Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.  However, the protections conferred by this Protective Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication that does not violate this Protective Order, including becoming part of the public record through trial or otherwise; or (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party.  To the extent there is any dispute regarding the use of Protected Material at trial, the parties shall submit the dispute to the Court for resolution.

## DURATION

23.     Even after final disposition of this Litigation, the confidentiality obligations imposed by this Protective Order shall remain in effect until the Designating Party agrees

6

**A027**

otherwise in writing or a court order otherwise directs.  Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this Litigation, with or without prejudice; or (2) final judgment after the completion and exhaustion of all appeals, re-hearings, remands, trials, or reviews of this Litigation, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

## **DESIGNATION**

24.    Any Producing Party may designate Discovery Material as CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY in accordance with this Protective Order if such party in good faith believes that such Discovery Material contains CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY information.

25.    For information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), designation in conformity with this Protective Order requires that the Producing Party affix the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY" to each page that contains Protected Material, or, if not practicable, as otherwise agreed by the Parties.

26.    A Party or Third Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced.  During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Designating Party must determine which documents,

7

or portions thereof, qualify for protection under this Order.  Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY") to each page that contains Protected Material, or, if not practicable, as otherwise agreed by the Parties.  There will be no waiver of confidentiality, or any privilege or immunity, by the inspection of Discovery Material before it is copied and marked pursuant to this Order.  Inspection of Discovery Material by any Party shall be conducted by persons eligible under Paragraphs 41 and 42 below.

27.     For documents produced in native format, the Producing Party shall include the appropriate confidentiality designation in the filename, as well as on any slip sheet accompanying the production.  Any printed or PDFed copies of such designated documents shall be marked by the Receiving Party at the time of printing/PDFing with the appropriate confidentiality designation to ensure appropriate protection.

28.     Information revealed during a deposition upon oral or written examination under Fed. R. Civ. P. 30 shall be treated as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY for thirty (30) days (as calculated by Fed. R. Civ. P. 6) following receipt of the final transcript by Outside Counsel for the Designating Party, but not thereafter unless, before the thirty (30) day period has expired, Outside Counsel for the Producing Party notifies Outside Counsel for the Receiving Party in writing that the Discovery Material set forth in the transcript is CONFIDENTIAL, HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY.  Counsel for any Party or Third Party also may designate the transcript or portions thereof to be CONFIDENTIAL Discovery Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material, or

8

HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material during the deposition. The appropriate legend described in Paragraph 25 shall be placed on the front of any deposition transcript (and, if recorded, any copies of the recording) containing CONFIDENTIAL Discovery Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material. Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material. In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order. In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential or highly confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative protective orders in this matter or pursuant to written stipulation of the parties." Counsel for any Producing Party shall have the right to exclude from confidential portions of oral depositions (e.g., involving testimony regarding Protected Material, or the use of such material in the deposition), other than the deponent, deponent's counsel, and the reporter and videographer (if any), any person who is not authorized by the Protective Orders in this action to receive or access Protected Material based on the designation of such Protected Material.

29. Any pleading, brief, declaration, affidavit, expert report, or other filing that contains, describes, or discusses Protected Material shall be filed under seal pursuant to the requirements of D. Del. LR 5.1.3 and the Court's CM/ECF procedures. The filing Party must

include on the cover page of the brief, or other filing, a descriptive legend in substantially the following format: "CONFIDENTIAL - FILED UNDER SEAL" or "HIGHLY CONFIDENTIAL (ATTORNEYS' EYES ONLY) - FILED UNDER SEAL." Outside Counsel for the Party filing papers containing, describing, or discussing Protected Material shall be responsible for providing appropriately redacted copies of the filed document to the Court in accordance with Paragraph (G)(l) of the United States District Court for the District of Delaware's Administrative Procedures Governing Filing and Service by Electronic Means, Revised January 2023. If the filing contains the Protected Material of the Party who did not file the document, within three (3) days from the date of a filing made under seal, Outside Counsel for the filing Party or filing Third Party shall deliver to Outside Counsel for the non-filing Party or Parties a proposed public version of the under seal filing, which shall include the filing Party's proposed redactions of any Protected Material. Within three (3) days after receipt of the proposed public version, Outside Counsel for the non-filing Party shall provide any additional redactions it believes appropriate. Redacted versions of papers filed under seal may be made publicly available provided that (a) all Protected Material is redacted; and (b) such redacted versions are clearly marked "Public Version," and clearly identify each place where information or exhibits have been redacted or deleted.

## CHALLENGING CONFIDENTIALITY DESIGNATIONS

30. Any Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the Litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

31. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To

avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order.  The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring in-person or telephonically within seven (7) days of the date of service of notice of the challenge.  In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.  The Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

32.     If the Parties cannot resolve a challenge without court intervention, the Challenging Party may file and serve a motion, or otherwise invoke the Court's discovery dispute resolution process.

33.     The burden of persuasion in any such challenge proceeding shall be on the Designating Party.  Neither party shall make frivolous challenges or challenges for an improper purpose (*e.g.*, to harass or impose unnecessary expenses and burdens on other parties).  All Parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation until the court rules on the challenge.

## USE OF MATERIALS FROM PRIOR LITIGATION

34.     The provisions of this Order shall also be binding with respect to materials produced by and designated under the Protective Order (D.I. 38) therein by, any Party or Non-Party that produced documents in response to a subpoena in the prior litigation *Arm Ltd v.*

*Qualcomm et al.*, C.A. No. 22-1146 (D. Del.) (the "Prior Litigation"), excluding source code and documents produced from Qualcomm's database of quarantined materials. For the convenience of the parties, and without conceding relevance to the claims or defenses here, the parties have agreed to treat all other materials produced in the Prior Litigation as if they had been produced in this Litigation. This includes treating all such materials designated by any Party under the Protective Order in the Prior Litigation (D.I. 38) therein as if they were "Protected Material" produced with the same designation under this Order.

35.    In light of this agreement, the destruction obligations imposed by paragraphs 67–69 of the Protective Order (D.I. 38) in the Prior Litigation shall not apply to any materials within the scope of this section until the final disposition of this Litigation.

36.    The parties further agree that all depositions conducted in connection with the Prior Litigation can be used in this litigation and that use of those depositions do not count toward the deposition limits set forth in the Scheduling Order. This paragraph shall not apply to portions of any deposition in which the witness discussed or reviewed source code that has not been produced in this litigation. The Parties further agree that any briefing or related materials filed under seal in the Prior Litigation may be referenced in this Litigation without violating the Prior Litigation Protective Order (D.I. 38), but they are not evidence and are not deemed produced in this Litigation.

## ACCESS TO AND USE OF PROTECTED MATERIAL

37.    Protected Material produced by a Party or Third Party may be used by the Receiving Party only for purposes of this Litigation, and shall not be used in any other way, or for any other purpose. Unless otherwise permitted in writing between Producing Party and Receiving Party, any individual who personally receives, other than on behalf of Producing Party, any

12

**A033**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material shall not participate in amending, drafting, or otherwise affecting the scope of patent specifications or claims before a Patent Office or agency (whether domestic or foreign) of any patent or patent application related to the information disclosed in the HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material, from the time of receipt of such material through one (1) year after the date the individual person(s) provides written notice to the Producing Party that said person ceases to have access to the HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material as well as any materials that contain or disclose such material, or if access does not cease, one (1) year after termination of this Litigation, as set forth above.  For avoidance of doubt, the foregoing provision applies to pending applications as well as post-grant proceedings.  Unless otherwise permitted in writing between Producing Party and Receiving Party, any Expert retained on behalf of Receiving Party who is to be given access to Producing Party's documents or Protected Material must agree in writing, using the form in Exhibit A, not to perform hardware or software development work or product development work directly or indirectly intended for commercial purposes related to the information disclosed in the HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material, which is not publicly known, from the time of first receipt of such material through one (1) year after the date the Expert provides written notice to the Producing Party that said expert consultant ceases to have access to any Protected Material, as well any materials that contain or disclose Protected

13

A034

Material or if access does not cease, one (1) year after termination of this Litigation, as set forth above.

38.     Nothing in this Protective Order precludes a Producing Party from using or disseminating its own Discovery Material, including Protected Material for purposes other than this Litigation.

39.     At the deposition of any fact witness, unless agreed to by the Designating Party, such witness may be shown Protected Material only if the witness is a current employee of the Designating Party, the Protected Material indicates that the witness authored the Protected Material, or the witness received or reviewed the Protected Material in the ordinary course of business and outside the context of this Litigation.

40.     At the deposition of any corporate representative designated pursuant to Fed. R. Civ. P. 30(b)(6) to testify on behalf of a Party on a particular topic or subject area, unless agreed to by the Designating Party, such witness may be shown Protected Material only if the Designating Party is the Party being deposed pursuant to Fed. R. Civ. P. 30(b)(6), the Protected Material indicates that an employee or agent of the Party being deposed pursuant to Fed. R. Civ. P. 30(b)(6) authored the Protected Material, or the witness received or reviewed the Protected Material in the ordinary course of business and outside the context of this Litigation.

41.     Third parties may designate as CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY deposition transcripts of their witnesses and any Discovery Material they produce, whether voluntarily or by subpoena, to the same extent and in the same manner as Parties and any such Protected Material shall be treated by the Parties in the same manner as the Protected Material produced by a Party.  Third Parties shall have the same rights

14

and obligations under this Protective Order as Parties and may move the Court to enforce the provisions of this Protective Order.

42.    The Parties acknowledge that Protected Material also may be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the U.S. government export control and economic sanctions laws, such as the Export Administration Regulations ("EAR", 15 CFR 730 et seq., http://www.bis.doc.gov/) administered by the Department of Commerce, Bureau of Industry and Security, and the Foreign Asset Control Regulations (31 CFR 500 et seq., http://www.treas.gov/offices/enforcement/ofac/) administered by the Department of Treasury, Office of Foreign Assets Control ("OFAC"). Receiving Parties will abide by U.S. law and applicable regulations governing the disclosure, export, re-export, transfer, or release of any export-controlled Protected Material ("Export Controlled Information") to any destination, person, entity, or end use prohibited or restricted under U.S. law, including obtaining prior U.S. government authorization to the extent required by regulation.  The U.S. government maintains embargoes and sanctions against the countries listed in Country Groups E:1/2 of the EAR (Supplement 1 to part 740).  Export Controlled Information disclosed in this action will be used only for the purposes of this action.  The Producing Party shall be responsible for identifying any Export Controlled Information, and the Receiving Party shall take measures necessary to ensure compliance.  This paragraph shall be interpreted consistent with applicable U.S. law and is not intended to contradict such law.

43.    Producing Party's Source Code:

(a)    To the extent that a Producing Party makes Source Code available for inspection by a Receiving Party:

15

i. The Producing Party shall make all relevant and properly requested Source Code available electronically and in text searchable form at the offices of Counsel of Record for Producing Party or at a secure facility approved by Producing Party. The Producing Party shall make the Source Code available for inspection on a stand-alone, non-networked personal computer running a reasonably current version of the Microsoft Windows operating system ("Source Code Computer"). Alternatively, solely at the option of the Producing Party, the Producing Party may make such source code available on a Source Code Computer that is networked, in a configuration deemed secure by Producing Party. The Source Code Computer shall be configured to permit review of the Source Code through a password-protected account having read-only access. To facilitate review of the Source Code at the secure facility, the Receiving Party may use appropriate tool software on the Source Code Computer, which shall be installed by the Producing Party, including at least one text editor like Visual Slick Edit that is capable of printing out Source Code with page and/or line numbers, a source code comparison tool like Winmerge, and at least one multi-text file text search tool such as "grep." Should it be necessary, other mutually agreed upon tools may be used. Licensed copies of other mutually agreed upon tool software shall be installed on the Source Code

16

> > Computer by the Producing Party and paid for by the Receiving Party.

> > ii.    In the event a Producing Party makes Chip-Level Schematics or Integrated Circuit Layouts available for review, the Producing Party shall ensure that the Source Code Computers include software sufficient to allow a user to view such types of Source Code.

> (b)    Any Source Code produced in discovery shall be made available for inspection, in its native form and native directory structure as organized and kept in the ordinary course of business allowing it to be reasonably reviewed and searched, during normal business hours (9:00 a.m. to 4:30 p.m. local time, Monday-Friday, excluding holidays) or at other mutually agreeable times, at a mutually agreed upon location.  Upon reasonable notice from the receiving party, which shall not be less than three (3) business days in advance, the supplier shall make reasonable efforts to accommodate the receiving party's request for access to the computer outside of normal business hours.  Following the end of expert discovery, a party is not obligated to make Source Code produced in discovery available for inspection.

> (c)    The Source Code Computers shall be equipped to print PDF copies of the Source Code so that the Receiving Party can designate the Source Code for which it would like hard-copy printouts which shall be printed by the Producing Party on watermarked pre-Bates numbered paper after the review.  The Receiving Party may request a reasonable number of pages of Source Code to be printed.  A reasonable number of pages means no more than 500 pages of Source Code, on 8.5" x 11" paper with a font no smaller than Courier 12-point.  The parties agree to negotiate printing beyond these page limits in good faith, should the need arise.  Counsel for the Producing Party will keep the original printouts, and shall provide copies of such original printouts

17

to counsel for the Receiving Party within seven (7) days of (1) any request by the Receiving Party, or (2) otherwise being notified that such original printouts have been made or designated. Counsel of Record for the Receiving Party may request up to 5 copies of each original printout of Source Code. No more than 500 original printouts of Source Code for any software release or hardware product may be in printed form at any one time, without the express written consent of Producing Party, which shall not be unreasonably denied. All printed Source Code shall be logged by Receiving Party's Counsel of Record and/or other Personnel Retained by a Receiving Party in this action as noted in subparagraph (i) below. No additional electronic copies of the Source Code shall be provided by the Producing Party. Hard copies of the Source Code also may not be converted into an electronic document, and may not be scanned using optical character recognition ("OCR") technology. Only printouts of Source Code may be made, and such printouts, where made of programming language text, must include (1) directory path information and filenames from which the Source Code came and (2) line numbers. The Producing Party may refuse to provide copies of Source Code printouts that fail to comply with this section.

(d)     Authorized reviewer(s) in this action shall not print Source Code that has not been reviewed on the Source Code Computer, or in order to review the Source Code elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code electronically on the Source Code Computer, as the Parties acknowledge and agree that the purpose of the protections herein would be frustrated by such actions.

(e)     Authorized reviewer(s) are prohibited from bringing outside electronic devices, including but not limited to laptops, floppy drives, zip drives, or other hardware into the secure room, except as outlined in subparagraph (f). Nor shall any cellular telephones, personal digital assistants (PDAs), Blackberries, cameras, voice recorders, Dictaphones, external or

A039

portable telephone jacks, or other outside electronic devices be permitted inside the secure room, except for medical devices, implants, or equipment reasonably necessary for any legitimate medical reason.

(f)     If any authorized reviewer(s) reviewing Source Code seeks to take notes, all such notes will be taken on bound (spiral or other type of permanently bound) notebooks.  No loose paper or other paper that can be used in a printer may be brought into the secure room.  In addition to taking notes on bound notebooks, an authorized reviewer may also bring a USB memory device to the secure room, to be inserted into a separate notetaking laptop computer provided by the Producing Party or the Producing Party's vendor.  The notetaking laptop computer shall be configured with Microsoft Word, such that the Reviewing Party can create or modify documents directly on the USB memory device plugged into the notetaking laptop computer.  The Receiving Party shall encrypt any file on the USB memory device that contains confidential material subject to this Protective Order using Microsoft Word's "Encrypt with Password" functionality accessible through the File->Info->Protect Document menu in Microsoft Word.  The Receiving Party's Outside Counsel and/or Experts may not copy the Source Code into the notes and may not take such notes electronically on the Source Code Computer itself.  Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Order, the Receiving Party's Outside Counsel and/or Experts shall remove all notes, documents, USB memory devices, and all other materials from the Source Code Review Room.  The Producing Party shall not be responsible for any items left in the room following each inspection session, and the Receiving Party shall have no expectation of confidentiality for any items left in the room following each inspection session without a prior agreement to that effect.

(g)     If Source Code is quoted or set forth in a confidential pleading or expert report, the Party including the Source Code will limit the amount of such Source Code to what is reasonably necessary for the party to make its point and will designate such documents as "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY." Absent the Producing Party's consent (which will not be unreasonably withheld), an excerpt of programming language text will not exceed five (5) continuous lines of code, and an excerpt of Chip-Level Schematics or Integrated Circuit Layouts will not exceed five (5) sequential pages of printouts of such material.  Except as approved by the Producing Party in writing, longer excerpts shall not be copied for use in court documents but shall be referred to by citation to production page numbers and lines.  A Receiving Party may not submit copies of Source Code as part of a Court document or exhibits thereto.  Source Code must be submitted *in camera* only.  Instead, a Receiving Party wishing to refer to Source Code in Court documents shall use pin cites to Source Code material submitted *in camera.*  In the event copies of Source Code printouts are used as exhibits in a deposition or trial, printouts shall not be provided to the court reporter, and the further copies of the original Source Code printouts made for the deposition or trial shall be destroyed at the conclusion of the deposition or trial.  The original copies of deposition exhibits designated "HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY" will be maintained by the deposing party under the terms set forth in this Protective Order.

(h)     In addition to other reasonable steps to maintain the security and confidentiality of Source Code, printed copies of the Designated Source Code Material maintained by the Receiving Party must be kept in a locked storage container when not being actively reviewed or otherwise being transferred as permitted by this Protective Order.

A041

(i)     The Receiving Party's Counsel of Record shall keep log(s) recording the identity of each individual to whom each hard copy of each Producing Party's Source Code is provided and when it was provided to that person in the first instance, and within thirty (30) days after the issuance of a final, non-appealable decision resolving all issues in this action, the Receiving Party must serve upon Producing Party the log.  In addition, any Expert of the Receiving Party to whom the paper copies of the Source Code were provided must certify in writing that all copies of the Source Code were destroyed or returned to the counsel who provided them the information and that they will make no use of the Source Code, or of any knowledge gained from the source code in any future endeavor.

## **DISCLOSURE OF PROTECTED MATERIAL**

44.     Unless otherwise directed by the Court or authorized in writing by the Designating Party, CONFIDENTIAL Discovery Material may be disclosed by the Receiving Party only to the following persons:

(a)     In-house counsel of the Receiving Party, including paralegals, eDiscovery teams, and secretarial staff, provided that they have signed the "Declaration to be Bound" attached as Exhibit A;

(b)     Any Outside Counsel;

(c)     Contract attorneys retained by a Party's Outside Counsel for the sole purpose of assisting with document review in this Litigation and who shall be subject to the same restrictions as Outside Counsel;

(d)     Any Expert who is expressly retained by any Outside Counsel to assist in this Litigation, including any associates or analysts working under the supervision of the Expert, with disclosure only to the extent necessary to perform such work, who have signed the

A042

"Declaration to be Bound" attached as Exhibit A and as to whom the procedures set forth in Paragraph 44 have been followed;

(e)     Support personnel for Experts, such as secretaries and clerical staff, assisting with this Litigation under the supervision of the Expert;

(f)     Any interpreter, court reporter, or other shorthand reporter or typist who is translating, recording, or transcribing documents or testimony in connection with this Litigation;

(g)     Professional Vendors retained by a Party or Outside Counsel to whom disclosure is reasonably necessary for this action;

(h)     Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the Parties, and his or her staff;

(i)     Personnel of the Court and all appropriate courts of appellate jurisdiction; and

(j)     Any other person with the prior written consent of the Designating Party or by order of this Court.

45.     Unless otherwise directed by the Court or authorized in writing by the Designating Party, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material may be disclosed by the Receiving Party only to the following persons:

(a)     Any Outside Counsel;

(b)     Contract attorneys retained by a Party's Outside Counsel for the sole purpose of assisting with document review in this Litigation and who shall be subject to the same restrictions as Outside Counsel;

(c)     Any Expert who is expressly retained by any Outside Counsel to assist in this Litigation, including any associates or analysts working under the supervision of the Expert, with disclosure only to the extent necessary to perform such work, who have signed the "Declaration to be Bound" attached as Exhibit A and as to whom the procedures set forth in Paragraph 44 have been followed;

(d)     Support personnel for Experts, such as secretaries and clerical staff, assisting with this Litigation under the supervision of an Expert;

(e)     Any interpreter, court reporter, or other shorthand reporter or typist who is translating, recording, or transcribing documents or testimony in connection with this Litigation;

(f)     Professional Vendors retained by a Party or Outside Counsel to whom disclosure is reasonably necessary for this action;

(g)     Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the Parties, and his or her staff; who have, after the date of this Protective Order, signed the "Declaration to be Bound" attached as Exhibit A;

(h)     Personnel of the Court and all appropriate courts of appellate jurisdiction;

(i)     Any other person requested with the prior written consent of the Designating Party or by order of this Court who has signed the "Declaration to be Bound" attached as Exhibit A.

46.     CONFIDENTIAL Discovery Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material shall not be disclosed to persons described in Paragraph 41 (a), (d), (e), or (j) or 42 (c), (d), (g), or (i), unless and until such person has executed

23

**A044**

the "Declaration to be Bound" attached as Exhibit A. Outside Counsel must maintain a copy of the executed Exhibit A for each such person during the Litigation and for one (1) year thereafter.

47.    Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, before a Party can disclose to an Expert any Protected Material, Outside Counsel for the Receiving Party: (a) shall serve a notice on the Designating Party identifying such individual by name, business address, business profession, country of citizenship, and including an up-to-date curriculum vitae ("CV") or equivalent resume disclosing the individual's employment history, past or present relationship with any of the Parties and Affiliates, the individual's employment and consulting relationships for the past five (5) years with the dates of the consultancy or employment and a brief description of the subject matter of the consultancy or employment (to the extent such information is not disclosed on the individual's curriculum vitae), all cases in which the individual has testified in a deposition or a trial in the past six (6) years, an indication of whether Outside Counsel for the Receiving Party intends to show the individual CONFIDENTIAL Discovery Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material, and an executed copy of the "Declaration to be Bound" attached as Exhibit A from the individual to whom the disclosure is to be made; and (b) shall abide by the provisions of Paragraph 34.

48.    With respect to Experts that have not been previously disclosed to the Producing Party, the Designating Party shall have five (5) business days, starting from the first business day following the date upon which the Receiving Party provides the notice and all information regarding the Expert required by Paragraph 44 to the Designating Party, to object for good cause in writing to such disclosure via e-mail to all Outside Counsel. After the expiration of the five (5) business days, if no objection for good cause has been asserted by the Designating Party, Protected

24

Material may be disclosed to the Expert pursuant to the terms of this Protective Order. Any objection by the Designating Party must be made for good cause, and must set forth in detail the grounds on which it is based. Should the Receiving Party disagree with the basis for the objection(s), the Receiving Party must first attempt to resolve the objection(s) with the Designating Party via a verbal meet and confer. If the meet and confer efforts do not resolve the dispute within five (5) business days from the date upon which Receiving Party was first notified of any objection for good cause by Designating Party, the parties shall raise the dispute with the Court using the discovery dispute procedures as set forth in the Scheduling Order within three (3) business days. The burden shall be on the objecting Party to demonstrate to the Court why such individual should not be permitted to receive Protected Material. Such Protected Material shall not be disclosed to such individual pending the Court's resolution of the dispute. If relief is not sought from the Court within that time, the objection shall be deemed withdrawn. The foregoing time periods may be extended or shortened by agreement of the Parties or by Order of the Court.

49. The recipient of any Protected Material that is provided under this Protective Order (including any copies or excerpts made thereof) shall maintain such Protected Material in a secure and safe area and shall exercise reasonable and proper care with respect to the storage, custody, use, and/or dissemination of such Protected Material. The recipient of Protected Material produced in electronic form shall maintain such Protected Material on a secure, password-protected computer, drive, or server with access restricted to persons authorized under Paragraphs 41 and 42, respectively.

50. Pre-trial proceedings shall be conducted in a manner, subject to the supervision of the Court, to protect from disclosure Protected Material to persons not authorized to have access to such Protected Material. Any Party intending to disclose or discuss Protected Material at pretrial

A046

proceedings shall make reasonable efforts to give advance notice to the Producing Party, and shall otherwise treat such Protected Material consistent with the terms of this Protective Order.

## PRODUCING A THIRD PARTY'S PROTECTED MATERIALS

51.     In the event that a Party is required, by a valid discovery request, to produce a Third Party's confidential information in its possession, and the Party is subject to an agreement restricting the ability to produce the Third Party's confidential information, then the Party shall:

(a)     promptly notify in writing the requesting Party and the Third Party that some or all of the information requested is subject to a confidentiality agreement with a Third Party;

(b)     promptly provide the Third Party with a copy of the Protective Order and the relevant discovery request(s); and

(c)     promptly make the information requested available for inspection by the Third Party.

52.     If the Third Party fails to seek a protective order or other relief from this Court within twenty-one (21) days of receiving the notice and accompanying information, the Third Party's confidential information responsive to the discovery request shall be produced, with an appropriate confidentiality designation.  If the Third Party timely seeks a protective order, the Third Party's confidential information responsive to the discovery request shall not be produced before a determination by the Court.  Absent a Court order to the contrary, the Third Party shall bear the burden and expense of seeking protection in this Court of its Protected Material.

## EXPERT DISCOVERY

53.     In accordance with Federal Rule of Civil Procedure 26(b), communications and exchanges between counsel and Experts (including testifying Experts), including those made in preparing drafts of expert reports and declarations, are not discoverable unless the Expert relies on

26

any such communication to support his or her opinion.  In addition, draft expert reports and declarations are not discoverable.  Communications and exchanges between counsel and non-testifying Expert witnesses are not discoverable.  Notes made by Experts for purposes of this Litigation are not discoverable.  Neither Party shall seek discovery of non-discoverable Expert communications, exchanges, notes, or draft reports or declarations.

## NO WAIVER OF PRIVILEGE BY VIRTUE OF DISCLOSURE

54.     The disclosure or production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, or the failure to object to the use of such Privileged Information, whether inadvertent or otherwise, will not waive the applicable privilege and/or protection regardless of the circumstances of the disclosure or production, whether in this Litigation or in any other federal or state proceeding. This provision constitutes an Order under Federal Rule of Evidence 502(d), which shall be interpreted to provide the maximum protection allowed by Rule 502(d), and shall be interpreted consistent with applicable ethical guidelines.  Upon discovery of the production of Discovery Material over which a privilege or protection is claimed, a Producing Party may promptly request the return of such Discovery Material.  The Producing Party must produce a privilege log or amended privilege log for any such Discovery Material within three (3) days of its request for the return of such material.  If the Producing Party claims that only a portion of a Document contains privileged or protected material, the Producing Party shall also provide a new copy or copies of the Document(s) with the relevant material redacted concurrent with the notification, to the extent reasonably practicable.  Upon a request from any Producing Party who has produced Discovery Material that it believes is privileged and/or protected (the "Identified Materials"):

(a)     the Receiving Party shall not, from that point onward, copy, distribute, or otherwise use in any manner the Identified Materials, unless the parties agree or the Court orders;

27

**A048**

       (b)    the Receiving Party shall instruct all persons to whom the Receiving Party has disseminated the Identified Materials that such information is subject to this Order and may not be copied, distributed, or otherwise used; and

       (c)    the Receiving Party and all persons notified as set out in the preceding subparagraph shall, within ten (10) calendar days:

      i.    return, destroy, delete, or sequester, all Identified Materials, and make a good faith effort to return, destroy, delete, or sequester all portions of all analyses, memoranda, or notes that were internally generated based upon the Identified Materials;

      ii.    return, destroy, delete, or sequester, all copies of the Identified Materials in electronic format in databases, production media, or other locations used to store the documents. For Identified Materials stored on production media, the Receiving Party may load the production, but shall exclude the Identified Materials (thus sequestering them on the production media), or immediately destroy, delete, or sequester them after loading the production.

55.    For purposes of this Order, Identified Materials that are not reasonably accessible under Federal Rule of Civil Procedure 26(b)(2)(B) because they are stored by the Receiving Party on backup storage media are deemed to be sequestered. Should such data be retrieved, the Receiving Party must promptly take steps to delete the restored Identified Materials.

56.    The Receiving Party may make no use of the Identified Materials during any aspect of this matter or any other matter, including in depositions or at trial, unless the documents are later designated by a court of competent jurisdiction as not privileged or protected.

A049

57.     If any Receiving Party has reason to believe that it is in receipt of Privileged Information from a Producing Party, the Receiving Party shall not copy, distribute, or otherwise use such Privileged Information in any manner and shall provide prompt notice to the Producing Party to afford an opportunity to request return of the materials in the manner set forth herein.

58.     Nothing in this Order overrides any ethical responsibilities to refrain from examining, disclosing, or using materials that an attorney knows or reasonably should know to be privileged and to inform the Producing Party that such materials have been produced.

59.     The contents of the Identified Materials shall not be disclosed to anyone who was not already aware of the contents before the notice was made.

60.     If the Receiving Party has any notes or other work product reflecting the contents of the Identified Materials, the Receiving Party will not review or use those materials unless a court of competent jurisdiction later designates the Identified Materials as not privileged or protected.

61.     If the Receiving Party returning the Identified Materials contests the Producing Party's claim of privilege or other applicable protection, the parties will promptly meet and confer in an attempt to resolve the dispute.  If the parties are unable to resolve the dispute, the Receiving Party may move the Court for an order compelling production of some or all of the Identified Materials:

(a)     The basis for such a motion may not be the fact or circumstances of the production or disclosure or any of the factors listed in FRE 502(b).

(b)     The Producing Party retains the burden, upon the Receiving Party's challenge, of establishing the privileged or protected nature of Identified Materials.

A050

(c)     Pending resolution of the motion, the Receiving Party must not use the contested information in any way, or disclose it to any person, other than those required by law to be served with a copy of the sealed motion.

62.     This Protective Order does not constitute a concession by any party that any documents are subject to protection by the attorney-client privilege, the work product doctrine or any other potentially applicable privilege or doctrine.  This agreement also is not intended to waive or limit in any way any party's right to contest any privilege claims that may be asserted with respect to any of the documents produced except to the extent stated in the agreement.

63.     Identified Materials under this Order shall not be used as grounds by any third party to argue that any waiver of privilege or protection has occurred by virtue of any production in this case.

64.     FRE 502(b) is inapplicable to the Identified Materials, which shall receive the maximum protection afforded by FRE 502(d).  Under FRE 502(d) and 28 U.S. Code § 1738, this Order shall be enforceable and granted full faith and credit in all other state and federal proceedings.  Any subsequent conflict of law analysis shall apply the law most protective of privilege and work product.

65.     Notwithstanding the provisions of this Order, Parties may redact from any document, whether Protected Material or not, any information containing privileged material, attorney work product, or any other data protected from disclosure by State or Federal laws or regulations.

**FAILURE TO DESIGNATE**

66.     The failure by a Producing Party to designate Discovery Material as CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY Discovery Material shall not

be a waiver of such designation provided that the Producing Party that fails to make such designation informs the Receiving Party that such Discovery Material is CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY promptly after the failure to designate first became known to the Producing Party.  The failure by a Producing Party to designate Discovery Material as CONFIDENTIAL, as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or as HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY shall not preclude a Party from seeking relief from the Court at a later date requesting imposition of such designation or challenging the propriety thereof.  The Producing Party shall reproduce the Discovery Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Party.  Upon receiving the Discovery Material with the correct confidentiality designation, the Receiving Party shall promptly return or securely destroy all Discovery Material that was not designated properly and certify compliance.

67.     In the event of disclosure of Protected Material to any person not authorized to such access under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately inform Outside Counsel for the Party whose Protected Material has been disclosed of all known relevant information concerning the nature and circumstances of the disclosure.  The Party responsible for improperly disclosing such Protected Material shall also promptly take all reasonable measures to retrieve the improperly disclosed Protected Material, to ensure that no further or greater unauthorized disclosure and/or use thereof is made, to inform the person or persons to whom unauthorized disclosures were made of all the terms of this Protective Order, and to request such person or persons to execute the "Declaration

A052

to be Bound" attached as Exhibit A. Nothing in these provisions should be construed as limiting any Producing Party's rights to seek remedies for a violation of this Protective Order.

68. If the Receiving Party discovers that an unauthorized person or persons has accessed or obtained the Protected Material of another Party, the Receiving Party shall: (1) provide written notice to Producing Party of such breach within three (3) business days of Receiving Party's discovery of the breach; (2) investigate and remediate the effects of the breach, and provide Producing Party with assurance reasonably satisfactory to Producing Party that such breach shall not recur; and (3) provide sufficient information about the breach that the Producing Party can reasonably ascertain the size and scope of the breach including, but not limited to, the nature of the compromise, the timing of the compromise, the documents compromised, the nature of the unauthorized party, and the data security in place at the time of the compromise. If required by any judicial or governmental request, requirement, or order to disclose such information, the Receiving Party shall take all reasonable steps to give the Producing Party sufficient prior notice in order to contest such request, requirement, or order through legal means. The Receiving Party agrees to provide reasonable cooperation to the Producing Party or law enforcement in investigating any such security incident. In any event, the Receiving Party shall promptly take all necessary and appropriate corrective action to terminate the unauthorized access as it deems appropriate in its good faith and reasonable judgment. If the unauthorized access or disclosure of the Protected Material requires notice to individuals, organizations, or regulators under applicable law, then the Receiving Party shall follow the reasonable instructions of the Producing Party regarding such notice at their own cost.

## DATA SECURITY

69. Receiving Parties must take reasonable precautions to protect Protected Material from loss, misuse and unauthorized access, disclosure, alteration and destruction, including but

A053

not limited to: (a) material in electronic format shall be maintained in a secure litigation support site(s) that applies standard industry practices regarding data security, including but not limited to application of access control rights to those persons entitled to access Protected Material under this Order; (b) any Protected Material downloaded from the litigation support site(s) in electronic format shall be stored only on encrypted devise(s) (e.g., laptop, tablet, smartphone, thumb drive, portable hard drive) that are password protected with access limited to authorized users, if the user is unable to password protect and/or encrypt the device, then the Protected Material shall be password protected and/or encrypted at the file level; and (c) derivations of Protected Material, including any lists, memorandum, indices or compilations prepared or based on an examination of this material, that quote from or paraphrase such Designated material in a manner that enables it to be identified shall be accorded the same status of confidentiality as the underlying Protected Material.

## DESTRUCTION OF PROTECTED MATERIALS

70.    Unless otherwise ordered or agreed in writing by Producing Party, not later than sixty (60) days (as calculated by Fed. R. Civ. P. 6) after the final disposition of this Litigation, each Receiving Party, including Outside Counsel, will use commercially reasonable efforts to destroy all Protected Material produced by the other Parties in this action and destroy or redact any such Protected Material included in work product, pleadings, motion papers, legal memoranda, correspondence, trial transcripts and trial exhibits admitted into evidence ("derivations") and all reasonably accessible copies thereof.

71.    With respect to any copy of Protected Material or derivation thereof that remains on back-up tapes and other disaster storage media of an authorized reviewer(s), the Receiving Party shall not be required to delete Protected Material to the extent the systems are overwritten in the normal course of business, are located in electronic files not reasonable accessible, or where

A054

located in archiving and back-up systems where deletion would require more than commercially reasonable efforts. Neither the Receiving Party nor its consultants, experts, counsel or other party acting on its behalf shall make copies of any such information available to any person or otherwise retrieve, access, or use the material for any purpose other than backup or disaster recovery unless compelled by law and, in that event, only after thirty (30) days prior notice to Producing Party or such shorter period as required by court order, subpoena, or applicable law.

72.     Not later than sixty (60) days (as calculated by Fed. R. Civ. P. 6) after the final disposition of this Litigation, the Party receiving any Protected Material shall certify in writing that it, including its Outside Counsel, has complied with its obligations under this Paragraph.

## MISCELLANEOUS PROVISIONS

73.     This Protective Order is without prejudice to the right of any Party to seek further or additional protection of information for which the protection of this Protective Order is not believed by any Party to be adequate. Nothing in this Protective Order shall be deemed to bar or preclude any Producing Party from seeking such additional protection, including, without limitation, an order that certain information may not be discovered at all.

74.     The entry of this Protective Order shall not be construed as a waiver of any right to object to the furnishing of information in response to discovery, and except as expressly provided, shall not relieve any party of the obligation of producing information in the course of discovery.

75.     If at any time Protected Material of a Producing Party is subpoenaed from a Receiving Party or is the subject of a discovery request directed to a Receiving Party in any proceeding before any court or arbitral, administrative, or legislative body, the person to whom the subpoena or other request is directed shall immediately give written and email notice pursuant to the provisions of Paragraph 75 and shall provide the Producing Party with an opportunity to object to the production of such materials. Such notification must include a copy of the subpoena

34

**A055**

or order.  The Receiving Party also must immediately inform, in writing, the party who caused the subpoena or order to issue that some or all of the material covered by the subpoena or order is subject to this Protective Order.  In addition, the Receiving Party must provide a copy of this Protective Order promptly to the party in the other action that caused the subpoena or order to issue.  If the Producing Party does not seek a protective order within fifteen (15) days (as calculated by Fed. R. Civ. P. 6) of the date written notice is given, the Receiving Party to whom the subpoena or other request is directed may produce, on or after the date set for production in the subpoena or other request, but not prior to the end of the fifteen (15) day notice period, such material in response thereto, under a protective order with confidentiality provisions equal to or more restrictive than those of this Protective Order.

76.     Other Proceedings.   By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated as CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE-ATTORNEYS' EYES ONLY, pursuant to this Protective Order shall promptly notify that party of the motion so that the party may have the opportunity to appear and be heard on whether that information should be disclosed.

77.     Outside Counsel shall have the right to exclude from depositions, other than the deponent and the reporter, any person who is not authorized under this Protective Order to receive Protected Material.  Such right of exclusion shall be applicable only during periods of examination or testimony directed to Protected Material.

78.     All notices during this Litigation required by this Protective Order are to be made by email to a Party's Outside Counsel (including, if available, to Outside Counsel's service distribution email address designated for this Litigation), and all notices subsequent to the termination of Litigation are to be made by email and U.S. mail to a Party's Outside Counsel and the office of the Party's general counsel, if known.  The date by which a Party receiving notice shall respond or otherwise take action shall be computed from the date of service as calculated by Fed. R. Civ. P. 6.  Any of the notice requirements herein may be waived in whole or in part, but only in writing signed by Outside Counsel for the Designating Party.

79.     Nothing in this Protective Order shall bar or otherwise restrict any Outside Counsel from rendering advice to his or her client with respect to this Litigation and, in the course thereof, relying in a general way upon his or her examination of Protected Material produced or exchanged in this Litigation: provided, however, that in rendering such advice and in otherwise communicating with a person not permitted access to Protected Material under this Protective Order, the Outside Counsel shall not disclose the contents of Protected Material produced by any other Party or Third Party.

80.     Execution of this Protective Order shall not constitute a waiver of the right of any Party to claim in this Litigation or otherwise that any document, communication, or any portion thereof is privileged or otherwise non-discoverable, or is not admissible in evidence in this Litigation or any other proceeding.

81.     Each person who receives CONFIDENTIAL Discovery Material or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material agrees to be subject to the jurisdiction of this Court for the purpose of any proceedings relating to the performance under, compliance with, or violation of this Protective Order.

82.     This Order may be amended by the agreement of Outside Counsel for the Parties in the form of a written Stipulated Amended Protective Order signed by each Party's Outside Counsel and filed with the Court for approval.  The Court retains the right to allow disclosure of any subject or Protected Material covered by this Protective Order or to modify or vacate this Protective Order at any time in the interest of justice.

83.     Neither the final disposition of this Litigation nor the termination of employment of any person with access to any Protected Material shall relieve any individual from the obligation of maintaining the confidentiality of such information in accordance with this Protective Order. The Court shall retain jurisdiction to enforce the terms of the Protective Order after final disposition of this Litigation.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis J. Murray
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300
kdunn@paulweiss.com
wisaacson@paulweiss.com
mzappala@paulweiss.com
rjgarrett@paulweiss.com

Catherine Nyarady
Erin J. Morgan
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
cnyarady@paulweiss.com
ejmorgan@paulweiss.com
jbraly@paulweiss.com

*Attorneys for Plaintiffs*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302)  571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Daralyn J. Durie
Shaelyn Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
ddurie@mofo.com
shaelyndawson@mofo.com

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
ejolson@mofo.com

A059

Kyle W.K. Mooney
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
(212) 336-4092
kmooney@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
(303) 592-2204
sllewellyn@mofo.com

Nicholas Rylan Fung
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5348
nfung@mofo.com

*Attorneys for Defendant*

**SO ORDERED this 21st day of March 2025.**

**The Honorable Maryellen Noreika**
**United States District Judge**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,　　　　　)
　a Delaware corporation; and　　　　　)
QUALCOMM TECHNOLOGIES, INC.,　　)
　a Delaware corporation,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　)　　C.A. No. 24-490 (MN)
　　　　　　　　　　　　　　　　　　)
ARM HOLDINGS PLC., f/k/a ARM LTD.,　)
　a U.K. corporation,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　　　)

## DECLARATION TO BE BOUND BY PROTECTIVE ORDER

I, _____ [print or type full name], a citizen of

_____ [print or type country of citizenship], am a

_____[print or type present occupation or job description] of

_____ [print or type business name

and business address] and declare under penalty of perjury that I have read in its entirety and

understand the Protective Order that was issued by the United States District Court for the

District of Delaware on _____ [date] in the above-captioned Litigation.

I have received and carefully read the Protective Order in this Litigation and understand

its provisions.  Specifically, I understand that I am obligated, under order of the Court, to hold in

confidence and not to disclose the contents of anything provided to me in the above-captioned

case marked "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

ONLY" except as permitted by the Protective Order.  According to the restrictions of Paragraph

34 of the Protective Order, I will use Discovery Material, including CONFIDENTIAL Discovery

Material, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material, or

information derived therefrom solely for purposes relating to the above-captioned Litigation.  I will never use such Discovery Material or information derived therefrom, directly or indirectly, in competition with the Producing Party, including hardware or software development work or product development work intended for commercial purposes related to the information disclosed in the Protected Material, from the time of receipt of such material through and including the date that I cease to have access to any Protected Material, nor will I permit others to do so.

In addition to the foregoing, I understand that I must abide by all of the provisions of the Protective Order.  At the termination of this Litigation or any time requested by Outside Counsel for the Party by whom I am engaged, I will return or destroy all documents and other materials, including notes, computer data, summaries, abstracts, or any other materials containing or reflecting CONFIDENTIAL Discovery Material or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Discovery Material that have come into my possession, and will return or destroy all documents or things I have prepared relating to or reflecting such information.

I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this Litigation.  I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.


Date:_____

Signature:_____

# Exhibit 3

A063

**Brett M. McCartney**

| | |
|---|---|
| **From:** | Gaza, Anne Shea <agaza@ycst.com> |
| **Sent:** | Friday, July 11, 2025 2:33 PM |
| **To:** | Brett M. McCartney; Blumenfeld, Jack; jying@morrisnichols.com; tmurray@morrisnichols.com; Vrana, Robert; Wilson, Samantha |
| **Cc:** | Emily Skaug; Ong, Andrew; Lytle, Craig; #ARM-Client-KE; MoFo_Arm_QCOM; Gaza, Anne Shea |
| **Subject:** | RE: Qualcomm Incorporated v. ARM Holdings PLC, Del. Dist. Ct. C.A. No. 24-490 (MN) |

<mark>CAUTION EXTERNAL</mark>

Brett,

We are in receipt of your email. Arm understands that Amlogic objects to production of Amlogic's confidential information to Qualcomm and that Amlogic intends to file for a protective order. Arm will therefore continue to withhold Amlogic's confidential information, but we do not believe this is something we will be able to resolve today. We also note that the PO in this case does not provide for production with redactions, but we will consider any proposal you may have.

We are available to meet and confer next week. Please propose a time.

Best, Anne

**Anne Shea Gaza**
Young Conaway Stargatt & Taylor, LLP
P: 302.571.6727 | M: 610.764.7228

---

**From:** Brett M. McCartney <BMcCartney@bayardlaw.com>
**Sent:** Friday, July 11, 2025 12:16 PM
**To:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>; jying@morrisnichols.com; tmurray@morrisnichols.com; Gaza, Anne Shea <agaza@ycst.com>; Vrana, Robert <RVrana@ycst.com>; Wilson, Samantha <SWilson@ycst.com>
**Cc:** Emily Skaug <eskaug@bayardlaw.com>; Ong, Andrew <aong@goodwinlaw.com>; Lytle, Craig <clytle@goodwinlaw.com>
**Subject:** Qualcomm Incorporated v. ARM Holdings PLC, Del. Dist. Ct. C.A. No. 24-490 (MN)

Counsel,

My firm is in the process of being retained by Amlogic Holdings, Ltd. in connection with the above-referenced litigation (the "Litigation"). On June 25, 2025, Amlogic received notice from ARM Ltd. that certain confidential information relating to Amlogic had been requested by Qualcomm and was going to be produced in the Litigation. Amlogic understands that, despite the twenty-one (21) day period set forth in paragraph 52 of the Stipulated Protective Order for third parties to move for a protective order not expiring until July 16, ARM intends to produce the aforementioned confidential information to Qualcomm today. Amlogic requests that the parties agree to withhold production of the subject confidential information to allow Amlogic to meet and confer with the parties to determine if an agreement can be reached on appropriate redactions and treatment of the confidential information in this Litigation. If the parties do not agree to this reasonable request, Amlogic will be forced to seek a protective order from the Court before the close of business today. Please advise as promptly as possible regarding your client's position on this request.

Best regards,

A064

Brett


**Brett M. McCartney**
Director | [BMcCartney@bayardlaw.com](mailto:BMcCartney@bayardlaw.com)


  

**Bayard, P.A.**
600 North King Street, Suite 400
Wilmington, DE 19801
Direct: +1 302-429-4218  | Fax: +1 302-658-6395

. .
Bayard P.A. places the highest priority on the security and privacy of our Clients.
Therefore, we have put our efforts into ensuring that this message is free of errors and
viruses. Despite our efforts, you should always scan all emails for any threats with
proper software, as the sender does not accept liability for any damage inflicted by
viewing the content of this email.
. . . .

# Exhibit 4

**ARM Total Access Agreement**, with an effective date of September 15, 2023

Pg. 19, Section 14.2 (i) – (iii) – percentage terms

Pg. 19, Section 14.3 (A) – amount terms

Pg. 19, Section 14.4 (A) – amount terms

Pg. 19-20, Section 14.5 – amount terms

Pg. 20, Section 15.1 – length of time terms

Pg. 33, Schedule Part B:

    Table 1 -- pricing terms and time terms

    Table 2 – percentage terms

Pg. 33-34, Schedule Part B

    Table 3 – concurrent project terms

Pg. 34. Schedule Part B

    Table 4 – concurrent project terms

    Table 5 – pricing and percentage terms

    Table 6A and 6B – pricing terms

    Table 7 – pricing terms


**Technology License Agreement**, with an effective date of September 15, 2023

Pg. 1, Section 1.4 – the section of the definition for ASP beginning with the word "Notwithstanding" through the end of the definition.

Pg. 2, Section 1.16 – entire paragraph

Pg. 2, Section 1.18 – the section of the definition for Subsidiary beginning with the word "Notwithstanding" through the end of the definition.

Pg. 3, Section 1.24 – entire paragraph

Pg. 9, Section 6.4 – length of time terms

Pg. 13, Section 13.2 – pricing and percentage terms

Pg. 18, Schedule 1 – underlined title and entity terms

Pg. 19, Schedule 2 -- underlined title and entity terms

Pg. 20-22, Attachment 1 – underlined title, product code terms, and product name terms


**Royalty Pricing Agreement**, with an effective date of September 15, 2023

Pg. 2, Table A1 and A2 – percentage terms

Pg. 2-8, Table B – Base Royalty terms and Base Floor terms

Pg. 8, Table C-1 – pricing terms

Pg. 8-9, Table C-2 – number terms and percentage terms

Pg. 9, Table C-3 and C-4 – pricing terms

Pg. 9, Table C-5 – number terms and percentage terms

Pg. 9, Table C-6 and C-7 – pricing terms

Pg. 10, Table C-8 – number terms and percentage terms


**Package Order Form**, with an effective date of September 15, 2023

Pg. 1 --- pricing terms and time terms

Pg. 2 – pricing terms and time terms


**Package Order Form Amendment**, dated September 24, 2024

Pg. 1 --- pricing terms and time terms

Pg. 2 – pricing terms and time terms


**ARM Total Access Agreement Amendment 2**, with an effective date of September 24, 2024

Pg. 1, Section 2 – time terms

Pg. 1-2, Table 1 -- pricing terms and time terms

**A068**

## Motions

<u>1:24-cv-00490-MN Qualcomm Incorporated et al v. ARM Holdings PLC</u>

**U.S. District Court**

**District of Delaware**

## Notice of Electronic Filing

The following transaction was entered by McCartney, Brett on 7/11/2025 at 6:11 PM EDT and filed on 7/11/2025

| | |
|---|---|
| **Case Name:** | Qualcomm Incorporated et al v. ARM Holdings PLC |
| **Case Number:** | <u>1:24-cv-00490-MN</u> |
| **Filer:** | Amlogic Holdings Ltd. |
| **Document Number:** | <u>329</u> |

**Docket Text:**
**MOTION for Protective Order *to Redact Competitively Sensitive Commercial Information* - filed by Amlogic Holdings Ltd.. (Attachments: # (1) [Proposed] Order, # (2) Exhibit 1, # (3) Exhibit 2, # (4) Exhibit 3, # (5) Exhibit 4)(McCartney, Brett)**

**1:24-cv-00490-MN Notice has been electronically mailed to:**

Adam M. Janes    adam.janes@kirkland.com

Anne Shea Gaza    agaza@ycst.com, corpcal@ycst.com, corporate@ycst.com

Bethany Stevens    bstevens@wscllp.com

Bradley D. Sorrels    bsorrels@wsgr.com, rfinnimorepierce@wsgr.com

Brett M. McCartney    bmccartney@bayardlaw.com, lfracek@bayardlaw.com

Brian M. Kramer    bmkramer@mofo.com, brian-kramer-6846@ecf.pacerpro.com

Catherine Nyarady    cnyarady@paulweiss.com

Daniel P. Muino    DMuino@mofo.com

Elisa M.C. Klein    elisa.klein@skadden.com, Brian.Keating@skadden.com, Christine.Renshaw@skadden.com, cintia.costa@skadden.com, Douglas.Nemec@skadden.com, ecf-c134f1fcbbf7@ecf.pacerpro.com, lauren.rosanello@skadden.com, Leslie.Demers@skadden.com, wendy.cathers@skadden.com

Emily L. Skaug    ESkaug@bayardlaw.com

Erik J. Olson    ejolson@mofo.com, erik-olson-6459@ecf.pacerpro.com

Erin J. Morgan    ejmorgan@paulweiss.com

Geoffrey Graham Grivner    geoffrey.grivner@bipc.com, donna.curcio@bipc.com, eservice@bipc.com, reeny.kelly@bipc.com, sherry.fornwalt@bipc.com

Gregg F. LoCascio    gregg.locascio@kirkland.com, kenymanagingclerk@kirkland.com

Hannah Cannom    hcannom@wscllp.com, bstevens@wscllp.com

Henry Huttinger    hhuttinger@mofo.com

Jack B. Blumenfeld    Jbbefiling@mnat.com, jblumenfeld@mnat.com, mnat_IP_eFiling@morrisnichols.com

Jacob A. Braly    jbraly@paulweiss.com

Jay Emerick    jay.emerick@kirkland.com, sbrongiel@kirkland.com

Jenness Elizabeth Parker    jenness.parker@skadden.com, christopher.heaney@skadden.com, ecf-cb8dae48e66a@ecf.pacerpro.com, hunter.hopkins@skadden.com, wendy.cathers@skadden.com

Jennifer Ying    jying@mnat.com, jyefiling@mnat.com, mnat_IP_eFiling@morrisnichols.com

Karen Elizabeth Keller    kkeller@shawkeller.com, cal@shawkeller.com

Karen L. Dunn    kdunn@dirllp.com, karen-dunn-0140@ecf.pacerpro.com

Kyle W.K. Mooney    kmooney@mofo.com, kyle.mooney-8250@ecf.pacerpro.com

Matthew J. McIntee    matt.mcintee@kirkland.com

Melissa F. Zappala    mzappala@dirllp.com, slee@paulweiss.com

Meredith Pohl    meredith.pohl@kirkland.com

Nicholas R. Fung    nfung@mofo.com, nicholas-fung-4542@ecf.pacerpro.com

Nitika Gupta Fiorella    ngupta@fr.com, kilby@fr.com, Levan@fr.com, litigationdocketing@fr.com, mking@fr.com, rivituso@fr.com, SFL@fr.com

Nora McDonough Crawford    ncrawford@wsgr.com, rfinnimorepierce@wsgr.com

Peter Evangelatos    peter.evangelatos@kirkland.com

Robert M. Vrana    rvrana@ycst.com, corpcal@ycst.com, corporate@ycst.com

Ruby J. Garrett    rjgarrett@paulweiss.com

Samantha G. Wilson    swilson@ycst.com, corpcal@ycst.com, corporate@ycst.com

Scott F. Llewellyn    sllewellyn@mofo.com, kvieyra@mofo.com

Shaelyn K. Dawson    shaelyndawson@mofo.com, ggerrish@mofo.com

Susan E. Morrison    morrison@fr.com, kxk@fr.com, litigationdocketing@fr.com, MIL@fr.com, mking@fr.com, rivituso@fr.com, SFL@fr.com

Travis J Murray    tmurray@morrisnichols.com

William Frentzen    wfrentzen@mofo.com

William A. Isaacson    wisaacson@dirllp.com

**A070**

**1:24-cv-00490-MN Filer will deliver document by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/11/2025] [FileNumber=5918314-0
] [18f79526ac2b8d9d6c44927c846fbef1a5b93b68b5f435c0342bf9e6a4169bc1ace
417ea34a1b0237b9990b439dc5bda0403f39fbcbdb4fe492f4856e7ba5717]]
**Document description:** [Proposed] Order
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/11/2025] [FileNumber=5918314-1
] [3eb2fa8998110e5e01cbe87bbc46726fd19f8b3f060cda0343fb11eafd3a6642b30
373dca934614f6acaa439bdaecedfedac2f5715003f02363c42a37fd3ed7a]]
**Document description:**Exhibit 1
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/11/2025] [FileNumber=5918314-2
] [7b434b920c7732a7e5aa5caa8f4e1da8fed238d0dfa1c5dc186b23f6bd14ad9343f
ce7cace16cca42d9f1d729c471e3471d4369510347c7584d1f22556d86542]]
**Document description:**Exhibit 2
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/11/2025] [FileNumber=5918314-3
] [c298ce47828ce46076a281d17e0391fdc3b371e3c93802980f0f554bb8fd0a35334
773a8d13de63084b45f8834253545dd21e70483e5414af7dcdf70aefa1d43]]
**Document description:**Exhibit 3
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/11/2025] [FileNumber=5918314-4
] [9dec961bc5cd2cb5f2e3b801f13df1560f156ac8c2c4d981dff2f7f98ad320e1a1f
85dca350892df4e829f7a451e4020cbe1e7b92b9d30f74069d8aa1ad18526]]
**Document description:**Exhibit 4
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/11/2025] [FileNumber=5918314-5
] [d5cccca4f9a097e2607dd6aecc8b04088e784f5d88dccf86ebc635839af5d98bb70
729425dcc48a4ee359dfabf0b4d675157487d2d3d56e65051dbbf56ef1b81]]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation, and
QUALCOMM TECHNOLOGIES, INC.,
  a Delaware corporation,

        Plaintiffs,

v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
  a U.K. corporation,

        Defendant.

**C.A. No. 24-490-MN**

---

## NON-PARTY AMLOGIC HOLDINGS LTD.'S
### REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER TO REDACT COMPETITIVELY SENSITIVE COMMERCIAL INFORMATION

Qualcomm continues to grasp at straws as to why third-party agreements are relevant to Qualcomm's claims against ARM in this case.[1] Qualcomm initially argued that the TLA for another third party—Broadcom—was relevant because Qualcomm asserts claims in its Second Amended Complaint ("SAC") that ARM breached Qualcomm's TLA by "refusing to provide licensing offers at commercially reasonable prices." D.I. 211 at 5. Broadcom explained that its agreements were not necessary to prove this claim because "Qualcomm does not need to tie specific prices to specific third parties to test whether the prices it pays are commercially reasonable." D.I. 213 at 6. Apparently conceding that fact, Qualcomm now switches tack and argues that it is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in Amlogic Holdings Ltd.'s Motion for a Protective Order to Redact Competitively Sensitive Commercial Information (the "Motion"). D.I. 329.

████████. Opp. at 4. Yet, Qualcomm fails to cite any authority in support. Nor could it. Qualcomm's SAC only asserts that ARM breached **Qualcomm's TLA** with respect to **three specific products**. Therefore, agreements governing licenses to other parties for completely different products offered by ARM would plainly not be relevant. The Court should put an end to Qualcomm's fishing expedition and enter a protective order to protect Amlogic's information in its agreements with ARM, which Qualcomm does not dispute include confidential and trade secret information.

## ARGUMENT

### I.   QUALCOMM HAS NOT SHOWN RELEVANCE AND NEED FOR AMLOGIC'S CONFIDENTIAL INFORMATION AND TRADE SECRETS.

Qualcomm's primary basis for why Amlogic's agreements are relevant to Qualcomm's claims is the fact that Qualcomm's TLA with ARM allegedly includes ██████ ████

████████████████████████████████████████████

████████████████████████████ ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ Two, Qualcomm's apparent position is that agreements related to **all** "Arm-designed CPUs" are relevant to Qualcomm's claims. But this is plainly not true—Qualcomm identifies only three products in its SAC that form the basis for its

---

[2] In its Opposition, Qualcomm concedes the identities of Amlogic's subsidiaries are not relevant to its claims against ARM. Opp. at 5 n.3. The identities of Amlogic's subsidiaries are located in at least the schedules on pages 18 and 19 of Amlogic's TLA with ARM, which is identified in Amlogic's Exhibit 4. At a minimum, the Court should order that information to be redacted.

claims of breach of the Qualcomm TLA. *See* D.I. 137 ¶¶ 21-22 (identifying Coretex-A720, Cortex-A520, and Cortex-M55 as "off-the-shelf" cores that Qualcomm requested a license for).

Therefore, according to Qualcomm's reasoning, a license for a completely different product would still be relevant to Qualcomm's claims. This is nonsense and an example of how Qualcomm's overly broad discovery requests should not be rewarded. For example, Amlogic's RPA contains royalty terms for dozens and dozens of products. But Qualcomm seeks an unredacted agreement, which would potentially expose Amlogic's confidential and trade secret information concerning products wholly unrelated to Qualcomm's case against ARM. The Court should reject Qualcomm's complete disregard for Amlogic's confidential and trade secret information.

Moreover, Qualcomm's SAC is so heavily redacted that Amlogic cannot even confirm that the SAC ███████████████████████████████. And Qualcomm has already indicated that it will not provide unredacted versions of the SAC to outside counsel of third parties. *See* D.I. 213 at 1-2. Regardless, Qualcomm fails to cite a single case requiring a third party to produce an agreement as relevant to an alleged breach of ██████████. The burden is on Qualcomm to show relevance and it has failed to meet it. *See Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, 2017 WL 4310221, at *4 (M.D. Pa. Sept. 28, 2017).

## II.    PERMITTING DISCLOSURE WILL CREATE A SERIOUS RISK OF HARM FOR AMLOGIC.

In support of its Motion, Amlogic submitted a detailed declaration explaining why its agreements with ARM contain confidential and trade secret information and how Amlogic would be harmed if a competitor, like Qualcomm, obtained the information. D.I. 329-2 ¶¶ 5, 8, 9. Qualcomm concedes the confidential and trade secret nature of this information, but argues that

3

any potential harm is "purely hypothetical" because it assumes that Qualcomm's outside counsel will violate the Protective Order already entered in this case. Opp. at 6.

The potential disclosure of Amlogic's confidential and trade secret information is not purely hypothetical. Qualcomm alleges that ARM violated its TLA with Qualcomm ███████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████ Therefore, if Amlogic were forced to produce unredacted copies of its agreements, Qualcomm's outside counsel would necessarily have to communicate to its client to some degree the terms that Amlogic was offered. Indeed, the Court recognized this type of inevitable disclosure in the *NUVIA* Litigation. *NUVIA* Litigation, D.I. 207 ("Qualcomm's outside counsel will necessarily need to communicate generalized information about the ALA to its client."). Therefore, the protection of the existing protective order entered in this case is insufficient to protect Amlogic's undisputed confidential and trade secret information. *See Realtime Data, LLC v. MetroPCS Texas, LLC*, No. 12CV1048-BTM MDD, 2012 WL 1905080, at *3 (S.D. Cal. May 25, 2012) (denying motion to compel, noting a nonparty's "concerns regarding the security of its [produced information], despite the protective order, cannot be ignored").

Accordingly, any marginal relevance of Amlogic's agreements does not outweigh the serious risk of harm of disclosure especially given the fact that only a fraction of the products covered by Amlogic's agreements have any potential relevance to Qualcomm's claims. The Court should enter a protective order to avoid that risk.

## **CONCLUSION**

For all of the foregoing reasons and those set forth in Amlogic's Motion, the Court should issue a protective order prohibiting ARM from producing or otherwise disclosing to Qualcomm

4

A075

versions of Amlogic's TLA or ATA, or supplements and amendments thereto, that are not redacted

in accordance with Exhibit 4 to Amlogic's Motion.


Dated: August 1, 2025

|  | **BAYARD, P.A.** |
|---|---|
| OF COUNSEL: | |
| | _/s/ Elizabeth A. Powers_ |
| Andrew S. Ong | Brett M. McCartney (No. 5208) |
| Craig Lytle | Elizabeth A. Powers (No. 5522) |
| **GOODWIN PROCTER LLP** | Emily L. Skaug (No. 6921) |
| 601 Marshall Street | 600 N. King Street, Suite 400 |
| Redwood City, CA 94063 | Wilmington, DE 19801 |
| (650) 752-3100 | (302) 655-5000 |
| AOng@goodwinlaw.com | bmccartney@bayardlaw.com |
| CLytle@goodwinlaw.com | epowers@bayardlaw.com |
| | eskaug@bayardlaw.com |
| | |
| | _Attorneys for Non-Party Amlogic Holdings Ltd._ |

**A076**

## <u>CERTIFICATE OF SERVICE</u>

I certify that counsel of record is being served on August 1, 2025, with a copy of this document via email.

<u>/s/ Elizabeth A. Powers</u>
Elizabeth A. Powers (#5522)

**Briefs, Responses and Replies**

<u>1:24-cv-00490-MN Qualcomm
Incorporated et al v. ARM
Holdings PLC</u>

SPECIALMASTER

**U.S. District Court**

**District of Delaware**

**Notice of Electronic Filing**

The following transaction was entered by Powers, Elizabeth on 8/1/2025 at 1:39 PM EDT and filed on 8/1/2025
**Case Name:**          Qualcomm Incorporated et al v. ARM Holdings PLC
**Case Number:**      <u>1:24-cv-00490-MN</u>
**Filer:**                   Amlogic Holdings Ltd.
**Document Number:** <u>351</u>

**Docket Text:**
**[SEALED] REPLY BRIEF re [329] MOTION for Protective Order to Redact Competitively Sensitive Commercial Information filed by Amlogic Holdings Ltd.. (Attachments: # (1) Certificate of Service) (Powers, Elizabeth)**


**1:24-cv-00490-MN Notice has been electronically mailed to:**

Adam M. Janes      adam.janes@kirkland.com

Anne Shea Gaza      agaza@ycst.com, corpcal@ycst.com, corporate@ycst.com

Bethany Stevens      bstevens@wscllp.com

Bradley D. Sorrels      bsorrels@wsgr.com, rfinnimorepierce@wsgr.com

Brett M. McCartney      bmccartney@bayardlaw.com, lfracek@bayardlaw.com, ntalarowski@bayardlaw.com

Brian M. Kramer      bmkramer@mofo.com, brian-kramer-6846@ecf.pacerpro.com

Catherine Nyarady      cnyarady@paulweiss.com

Daniel P. Muino      DMuino@mofo.com

Elisa M.C. Klein      elisa.klein@skadden.com, Brian.Keating@skadden.com, Christine.Renshaw@skadden.com, cintia.costa@skadden.com, Douglas.Nemec@skadden.com, ecf-c134f1fcbbf7@ecf.pacerpro.com, lauren.rosanello@skadden.com, Leslie.Demers@skadden.com, wendy.cathers@skadden.com

Elizabeth Ann Powers      epowers@bayardlaw.com, lfracek@bayardlaw.com, ntalarowski@bayardlaw.com

Emily L. Skaug      ESkaug@bayardlaw.com, lfracek@bayardlaw.com, ntalarowski@bayardlaw.com

Erik J. Olson      ejolson@mofo.com, erik-olson-6459@ecf.pacerpro.com

**A078**

Erin J. Morgan    ejmorgan@paulweiss.com

Geoffrey Graham Grivner    geoffrey.grivner@bipc.com, donna.curcio@bipc.com, eservice@bipc.com, reeny.kelly@bipc.com, sherry.fornwalt@bipc.com

Gregg F. LoCascio    gregg.locascio@kirkland.com, kenymanagingclerk@kirkland.com

Hannah Cannom    hcannom@wscllp.com, bstevens@wscllp.com

Henry Huttinger    hhuttinger@mofo.com

Jack B. Blumenfeld    Jbbefiling@mnat.com, jblumenfeld@mnat.com, mnat_IP_eFiling@morrisnichols.com

Jacob A. Braly    jbraly@paulweiss.com

Jason M. Wilcox    jason.wilcox@kirkland.com, cmoo-penn@kirkland.com

Jay Emerick    jay.emerick@kirkland.com, sbrongiel@kirkland.com

Jenness Elizabeth Parker    jenness.parker@skadden.com, christopher.heaney@skadden.com, DLMLCWILRQ@skadden.com, ecf-cb8dae48e66a@ecf.pacerpro.com, hunter.hopkins@skadden.com, wendy.cathers@skadden.com

Jennifer Ying    jying@mnat.com, jyefiling@mnat.com, mnat_IP_eFiling@morrisnichols.com

Karen Elizabeth Keller    kkeller@shawkeller.com, 6088193420@filings.docketbird.com, cal@shawkeller.com

Karen L. Dunn    kdunn@dirllp.com, karen-dunn-0140@ecf.pacerpro.com

Kyle W.K. Mooney    kmooney@mofo.com, kyle.mooney-8250@ecf.pacerpro.com

Matthew J. McIntee    matt.mcintee@kirkland.com

Melissa F. Zappala    mzappala@dirllp.com, slee@paulweiss.com

Meredith Pohl    meredith.pohl@kirkland.com

Nicholas R. Fung    nfung@mofo.com, nicholas-fung-4542@ecf.pacerpro.com

Nitika Gupta Fiorella    ngupta@fr.com, kilby@fr.com, Levan@fr.com, litigationdocketing@fr.com, mking@fr.com, rivituso@fr.com, SFL@fr.com

Nora McDonough Crawford    ncrawford@wsgr.com, rfinnimorepierce@wsgr.com

Peter Evangelatos    peter.evangelatos@kirkland.com

Robert M. Vrana    rvrana@ycst.com, corpcal@ycst.com, corporate@ycst.com

Ruby J. Garrett    rjgarrett@paulweiss.com

Samantha G. Wilson    swilson@ycst.com, corpcal@ycst.com, corporate@ycst.com

Scott F. Llewellyn    sllewellyn@mofo.com, kvieyra@mofo.com

**A079**

Shaelyn K. Dawson    shaelyndawson@mofo.com, ggerrish@mofo.com

Susan E. Morrison    morrison@fr.com, kxk@fr.com, litigationdocketing@fr.com, MIL@fr.com, mking@fr.com, rivituso@fr.com, SFL@fr.com

Travis J Murray    tmurray@morrisnichols.com

William Frentzen    wfrentzen@mofo.com

William A. Isaacson    wisaacson@dirllp.com

**1:24-cv-00490-MN Filer will deliver document by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=8/1/2025] [FileNumber=5937127-0]
[4603d247f3b2faf3002b0ca2d597d54abf2a5e915581af1b26d650466672599a6176
2a17c2c60b94b17db98a178a8ae2491fca248c686ef52775fbe34e07d373]]
**Document description:**Certificate of Service
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=8/1/2025] [FileNumber=5937127-1]
[da64af664dea0d572b9b5fd99f151ab15f625042350c68805715948092a3ae220f9d
533101cbf6a1f3b29fcb34fa6691764eca122356bb5ad9b7ab43ab9ab4c1]]

A081

A082

A083

A084

A086

A087

Originally Filed: February 18, 2026
Redacted Version Filed: February 27, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
   a Delaware corporation; and
QUALCOMM TECHNOLOGIES, INC.,
   a Delaware corporation,

         Plaintiffs,

      v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
   a U.K. corporation,

         Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 24-490 (MN)

REDACTED - PUBLIC VERSION

**PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S ORDERS MOTIONS FOR PROTECTIVE ORDERS FILED BY THIRD PARTIES BROADCOM INC. (D.I. 609), AMLOGIC HOLDINGS LTD. (D.I. 614), ANALOG DEVICES INC. (D.I. 617), MEDIATEK INC. (D.I. 625) & ANNAPURNA LABS (U.S.) INC. (D.I. 628)**

Karen L. Dunn
William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004

Erin J. Morgan
DUNN, ISAACSON, RHEE LLP
11 Park Place
New York, NY 10007

Catherine Nyarady
Jacob A. Braly
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064

*Of Counsel for Plaintiffs as to Motions
Brought By All Movants Except for
Annapurna Labs (U.S.), Inc.*

February 18, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com
*Attorneys for Plaintiffs as to Motions Brought By All
Movants Except for Annapurna Labs (U.S.), Inc.*

CONNOLLY GALLAGHER LLP
Alan R. Silverstein (#5066)
Sara A. Barry (#6703)
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 252-3645
asilverstein@connollygallagher.com
sbarry@connollygallagher.com
*Attorneys for Plaintiffs as to Motion Brought By
Annapurna Labs (U.S.), Inc.*

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.    FACTUAL BACKGROUND ........................................................................... 2

      A.    Qualcomm's TLA-Related Claims and the Relevant Document Requests ........... 2

      B.    Proceedings Before The Special Master ................................................... 3

III.    ARGUMENT ............................................................................................... 5

      A.    The Special Master Erroneously Concluded That Third-Party TLAs and Related Correspondence Are Not Relevant To Qualcomm's Claims.................... 6

      B.    The Special Master Misapplied Governing Law On Protective Order Motions .... 8

IV.    CONCLUSION ............................................................................................ 9

A089

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Cipollone* v. *Liggett Grp., Inc.*,
   785 F.2d 1108 (3d Cir. 1986) .................................................................5, 8

*Finjan, Inc.* v. *Rapid7, Inc.*,
   C.A. No. 18-1519, D.I. 173 (D. Del. Aug. 7, 2020) ................................8

*Harmony Biosciences, LLC* v. *Lupin Ltd.*,
   C.A. 23-1286, D.I. 202 (D. Del. Feb. 19, 2025) ....................................6

*Hart* v. *Nationwide Mutual Fire Ins. Co.*,
   270 F.R.D. 166 (D. Del. 2010) ................................................................8

*Kennedy* v. *PEI-Genesis*,
   2023 WL 3898893 (E.D. Pa. June 8, 2023) ...........................................6

*Mannington Mills, Inc.* v. *Armstrong World Industries, Inc.*,
   206 F.R.D. 525 (D. Del. 2002) ................................................................9

*Micro Motion, Inc.* v. *Kane Steel Co., Inc.*,
   894 F.2d 1318 (Fed. Cir. 1990) ..............................................................7

*Minerva Surgical, Inc.* v. *Hologic, Inc.*,
   C.A. No. 18-217, D.I. 191 (D. Del. Oct. 11, 2019) ................................8

*Procter & Gamble Co.* v. *Boyle-Midway, Inc.*,
   1983 WL 830080 (D. Del. Apr. 11, 1983) ..............................................9

**Rules**

Fed. R. Civ. P. 26(b)(1) ..................................................................................5

Fed. R. Civ. P. 26(c) ......................................................................................5

Fed. R. Civ. P. 53 ........................................................................................5, 6

Fed. R. Civ. P. 56(d) ......................................................................................6

A090

## I.   PRELIMINARY STATEMENT

Under the Qualcomm-Arm Technology License Agreement ("TLA"), 

Qualcomm claims that Arm has breached that requirement and further that Arm breached the implied covenant of good faith and fair dealing by pricing licensing offers for peripheral IP products and cores so high as to effectively prevent Qualcomm from receiving the benefits of its TLA.  There is no way to determine if Arm has complied with ████████ or priced licensing offers in good faith without review of Arm's prior licenses for its cores and peripheral IP.

In early 2025, Qualcomm accordingly served requests for production seeking Arm's third-party license agreements for at-issue, off-the-shelf cores and peripheral IP (including TLAs, Arm Total Access Agreements ("ATAs"), and Royalty Pricing Agreements ("RPAs")), and correspondence relating to these agreements.  Third parties Broadcom, Amlogic, Analog Devices, MediaTek, and Annapurna (together, "Movants"),[1] moved to stop Arm from producing their TLAs, ATAs, or RPAs, and related correspondence on grounds that their agreements are not relevant to Qualcomm's claims and that the disclosure of confidential terms of such agreements to competitors or the public could harm their businesses.[2]  Qualcomm opposed all the motions.  Arm opposed MediaTek's motion.

---

[1] As to Annapurna's agreements, Connolly Gallagher represents Qualcomm.
[2] Third parties ████████████████████ also moved to prevent production of their TLAs, ATAs, or RPAs, and their Architecture License Agreements ("ALAs").  Qualcomm will object to the Special Master's decisions granting those motions under separate cover.

1

A091

The Special Master accepted Movants' arguments, holding that the documents sought were irrelevant or only "marginally relevant" and crediting Movants' claims that disclosure could cause harm. Those five decisions impede the just adjudication of this matter by withholding evidence that is critical to Qualcomm's claims and disregard significant protective order protections provided to highly confidential documents produced in this litigation.

The Special Master is incorrect that the requested documents are irrelevant. As Arm agrees, ███████████████████████████████████████████████████████████. And, with respect to Movants' confidentiality concerns, the existing protective order limits disclosure of sensitive documents to outside counsel, the parties' retained experts, and the Court. Qualcomm's outside counsel has adhered to these "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" protections in this and the prior case for years and will continue to do so. Movants' musings to the contrary are nothing more than speculation, and indulging such speculation is an unjustified affront to the Court's order. Qualcomm's objections should be sustained on the Court's *de novo* review and production of these agreements should be ordered.

## II.   FACTUAL BACKGROUND

### A. Qualcomm's TLA-Related Claims and the Relevant Document Requests

In Count VII, Qualcomm alleges that Arm breached its TLA by failing to fulfill its obligations under ███████████ for cores code-named ███████████████. That ███████████ provision requires Arm to:

1.   ████████████████████████████████████████████████
████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████

██████████████████████████████████

D.I. 233, Ex. 1 ████; *e.g.*, D.I. 137 ¶¶ 104-105, 214-220.[3]  Qualcomm's claim necessarily requires

evaluation of the ███████████████████████████████████████████.

In Count III, Qualcomm further alleges that Arm breached the implied covenant of good faith and

fair dealing inherent in the TLA by pricing licensing offers for certain peripheral IP products and

cores so high as to effectively prevent Qualcomm from receiving the benefits of its TLA.  D.I. 137

¶¶ 51, 102, 181-188; *see also* D.I. 464 at 23-25.  The rates and terms offered to other licensees are

relevant to whether the terms offered to Qualcomm were made in good faith.

Naturally, Qualcomm requested Arm's third-party agreements for the relevant products

(all of which may be licensed separately or in combination with each other and other Arm IPs) and

related correspondence.  *See* A134-35, A140, A145.  After Arm waited to provide notice of its

intent to produce their agreements—months after Qualcomm first sought them[4]—all Movants

sought to prevent the production of their TLAs, ATAs, and/or RPAs.

**B. Proceedings Before The Special Master**

The Special Master started to hear a single motion for a protective order—Broadcom's—

on August 14, 2025.  At this partial hearing (and in its opposition brief, (D.I. 180 at 13[5])),

Qualcomm made clear that it did not object to narrow redactions for the identities of Broadcom's

---

[3] For quoted material, unless stated otherwise, brackets, ellipses, footnote call numbers, internal quotations, and citations are omitted for readability. Emphasis is added unless otherwise indicated.
[4] Arm did not provide notice to Analog Devices or Annapurna until after the close of fact discovery. *See* D.I. 491 ¶ 9; A125.  Qualcomm first requested those documents in January 2025.
[5] Broadcom, MediaTek, and Amlogic's motions were briefed on the docket and then referred to the Special Master. D.I. 336. That briefing is accordingly cited by its D.I. numbers. Other relevant briefing submitted only to the Special Master is included in the Appendix.

(or other Movants') customers or suppliers,[6] but that the financial terms of the TLA were relevant to whether Arm breached the Qualcomm-Arm TLA. A162 at 24:18-25:6, A163-64 at 27:19-32:9. Arm agreed that ████████████████████████████████████████████████████ ████████████████████████████████████████████ A171 at 58:20-59:22.

Arm did argue that the only products forming the basis of Qualcomm's TLA claim are the ███████████████████ cores—and therefore that only contracts licensing those cores should be produced. A170 at 57:15-22. Qualcomm contends that additional products form part of the basis of Qualcomm's implied covenant claims under its TLA, including ██████████████████ ███████████████████████████████████████████████████████— and therefore that licenses covering those products should also be produced. A166-67 at 39:14-43:13, A172 at 63:9-64:15. The Special Master determined she would decide this scope dispute before ruling on the third parties' motions because resolution of the scope issue would provide greater clarity on which agreements were relevant. A172-73 at 64:16-66:11. The scope dispute was ultimately decided in Qualcomm's favor: Arm's motion to strike Qualcomm's theories of breach relating to the ████████████████████████████████████████ was denied. D.I. 630 at 3-4.

Even though Arm conceded that third-party agreements licensing ████████████████ ██████ are relevant and the Special Master found that Qualcomm can proceed with its TLA implied covenant claims related to the peripheral IP products and other cores, the Special Master issued nearly identical orders granting the third parties' motions between January 28 and February 6, 2026 (the "Orders"). D.I. 609, 614, 617, 625, 628. In all Orders but MediaTek's, the Special Master first deemed Qualcomm's requests to be "fishing expedition[s]" irrelevant to Qualcomm's

---

[6] Qualcomm additionally assented to certain other reasonable, limited redactions of information not pertinent to its claims in opposition. *See* D.I. 344 at 5 n.3.

claims.  D.I. 609 at 6; D.I. 614 at 6; D.I. 617 at 6; D.I. 628 at 6.  She then concluded that even if

the documents were "marginally relevant," disclosure "would result in great harm" to Movants

because Qualcomm could purportedly "reverse engineer pricing levels" from royalty information.

D.I. 609 at 7; D.I. 614 at 6; D.I. 617 at 6; D.I. 628 at 6.[7]  In deciding MediaTek's motion, which

both parties opposed, the Special Master found the documents to be "marginally relevant," but

reached the same conclusions regarding purported harm.  D.I. 625 at 7.

 The Special Master's Orders are premised on the flawed assumption that Qualcomm

personnel would have access to any produced agreements and use the information in them to harm

Movants (*e.g.*, D.I. 609 at 7); they ignore that the agreements would be produced with "HIGHLY

CONFIDENTIAL – ATTORNEYS' EYES ONLY" protections, and thus would only be seen by

outside counsel, retained experts, and Court personnel.  D.I. 84 ¶ 45.  Qualcomm objects to the

Orders pursuant to the Court's procedures (D.I. 336 ¶ 6) and Rule 53.

## III. ARGUMENT

 "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case," unless such discovery is

otherwise limited by Court order.  Fed. R. Civ. P. 26(b)(1).  The burden is on the movant seeking

a protective order under Rule 26(c) to "show good cause by demonstrating a particular need for

protection."  *Cipollone* v. *Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).  "Broad

allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy

the Rule 26(c) test."  *Id.*  The Special Master twice erred in this inquiry—first by deeming even

documents the parties agree are necessary to the case as irrelevant or only marginally relevant, and

---

[7] The Special Master also posited that Qualcomm could gain information about Movants' strategy
from ALA deliverables data, (*e.g.*, D.I. 609 at 7; D.I. 614 at 6; D.I. 617 at 6; D.I. 625 at 7; D.I. 628
at 6), but this argument is irrelevant to these Movants who do not have ALAs.

then by granting protective orders on nothing more than speculation about harm that could be caused by unprecedented violations of the case's existing protective order. This Court reviews the Special Master's findings of fact and conclusions of law *de novo*. Fed. R. Civ. P. 53(f)(3)-(4).

### A. The Special Master Erroneously Concluded That Third-Party TLAs and Related Correspondence Are Not Relevant To Qualcomm's Claims.

Arm's agreements with third parties are plainly relevant to Qualcomm's TLA claims. The



Arm-Qualcomm TLA ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████.[8] D.I. 233, Ex. 1 ████ ; *see also, e.g.*, A127-29.

Arm's Chief Commercial Officer confirmed under oath ████████████████████████

████████████████████████████. D.I. 442 at 15.

Qualcomm, too, is entitled to consider all such agreements ████████████████

████████████████████████████████████████████

████████████████████████, and to determine whether Arm priced its other

licensing offers in good faith. Qualcomm "isn't required to take [its] opponent's word for [the

████████████████████████████████████. Any relevant, non-privileged

documents . . . that might aid the discovery of truth are fair game." *Kennedy* v. *PEI-Genesis*, 2023

WL 3898893, at *4 (E.D. Pa. June 8, 2023); *see also Harmony Biosciences, LLC* v. *Lupin Ltd.*,

C.A. 23-1286, D.I. 202, at ¶ 12 (D. Del. Feb. 19, 2025) (discovery sought was relevant because

"Plaintiffs should be permitted to test [defendant's] representation"). Arm does not contest this;

---

[8] Arm even filed a Rule 56(d) declaration arguing that it could not present facts necessary to oppose Qualcomm's MSJ ████████████████████████████████████████████ ████████████████████████████████ D.I. 454 at ¶¶ 9-10, 13-15. Given Arm's non-opposition to Amlogic's motion to prevent production of that information, delay in notifying third party licensees, and refusal to produce a redacted version of this ████████ it is not clear that Arm actually wants to present this evidence. *See* D.I. 491 ¶¶ 3-14. But, in any event, the parties agree it is relevant.

its counsel has agreed that all of Arm's agreements that license ███████████ are

relevant.[9]  A171 at 58:20-59:22.

The Special Master ignored the parties' contract and this law in finding the requested

documents irrelevant on the basis that Qualcomm did not "ha[ve] any information that [most

Movants'] agreements with Arm are directly implicated regarding licensing offers to Qualcomm."

*E.g.*, D.I. 614 at 6.[10]  Arm's decision not to mention certain licensees as part of its ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

A127; *see also* D.I. 442 at 7.  Movants, too, may very well have ██████████.  Without these

documents, Qualcomm has no way to discover and test what was ███████████████████████,

the very point of the claim.

Moreover, the proposed "direct implication" test for irrelevance is irreconcilable with the

Special Master's granting of MediaTek's motion. ██████████████████████████

---

[9] To Qualcomm's knowledge, Broadcom is the only Movant that Arm has said does not license at
least one of ████████████████.  It is not clear why Arm notified Broadcom of an intent to
produce its agreement given Arm's narrow view of its production obligations, but, as discussed
*supra* at 4, the Special Master rejected Arm's attempt to limit the scope of Qualcomm's TLA
claims to the ██████████████████ and Broadcom's agreement should be produced if
it licenses any of the products at issue.

[10] The Special Master cited *Micro Motion, Inc.* v. *Kane Steel Co., Inc.*, 894 F.2d 1318 (Fed. Cir.
1990), in her legal standard sections without analysis.  That case is not analogous.  *Micro Motion*
involved a subpoena seeking financial and customer information from a third party, purportedly
to establish damages in a case against a separate defendant based on competing theories of
relevance that the third party's products might be "infringements" or "non-infringing substitutes."
*Id.* at 1327.  Because there was admittedly no evidence that the third party had infringed, or that
plaintiff had tried to determine whether the third party had infringed, the Federal Circuit found the
subpoena did not pertain to issues in the case.  *Id.* at 1326-27.  Here, Qualcomm seeks documents
from Arm to test Arm's breach of contract—not to evaluate suspicions about any Movant.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████ did not change the Special Master's analysis.  The Special Master

concluded without explanation that the MediaTek documents were "only marginally relevant."

D.I. 625 at 7.  The Special Master's conclusions were in error.

**B.  The Special Master Misapplied Governing Law On Protective Order Motions.**

To establish good cause for a protective order, Movants must show a "particular need for

protection" rather than merely "broad allegations of harm, unsubstantiated by specific examples

or articulated reasoning."  *Cipollone*, 785 F.2d at 1121; *Hart* v. *Nationwide Mutual Fire Ins. Co.*,

270 F.R.D. 166, 170 (D. Del. 2010) (denying protective order where movant "has not demonstrated

that it will suffer a clearly defined and serious injury if a protective order is not entered").  None

met their burden, and the Special Master erred by granting their motions anyway.

The Orders are premised on the "find[ing] that disclosure of that information, even if

inadvertent, would result in great harm to" Movants.  D.I. 609 at 7.  But any concern that sensitive

information will be disclosed is speculative and assumes that Qualcomm's outside counsel will

violate the Protective Order, which permits Arm to designate such information as "HIGHLY

CONFIDENTIAL – ATTORNEYS' EYES ONLY," thus limiting access to outside counsel,

experts, and Court personnel while prohibiting access to anyone at Qualcomm (including

Qualcomm in-house counsel).  D.I. 84 ¶¶ 45-46.  The protective order is in place to address

concerns like Movants', but the Orders ignore it.  *See Finjan, Inc.* v. *Rapid7, Inc.*, C.A. No. 18-

1519, D.I. 173, at 5 (D. Del. Aug. 7, 2020) ("As to commercially sensitive information allegedly

in the [third-party] Documents, the case Protective Order fully addresses [the third party]'s

concerns" given its "outside counsel eyes' only" provision); *see also Minerva Surgical, Inc.* v.

8

A098

*Hologic, Inc.*, C.A. No. 18-217, D.I. 191 at 5 (D. Del. Oct. 11, 2019). There is no reason to believe that Qualcomm's outside counsel will violate the protective order, and Movants offer none. *See* D.I. 345 Ex. 2 at 44:14-23 (this Court noting that it was "quite an accusation" to suggest that attorneys' eyes only designation wouldn't sufficiently protect sensitive information); *Procter & Gamble Co.* v. *Boyle-Midway, Inc.*, 1983 WL 830080, at *1 (D. Del. Apr. 11, 1983) ("The Court simply will not indulge in the speculation that attorneys will violate a protective order issued by a court"). Qualcomm's counsel has had redacted copies of third-party agreements for years now (from the prior case) and unredacted copies of agreements for more than six months. There has been no disclosure of these agreements nor harm to third parties, and Movants offer nothing but bare speculation that the future will be any different.

The Orders cite to *Mannington Mills, Inc.* v. *Armstrong World Industries, Inc.*, 206 F.R.D. 525 (D. Del. 2002), but that case is inapposite. *Mannington Mills* involved a subpoena to a third party for information that plaintiff did not need from that party, but would be able to "access" in a similar form "from its opponents during discovery." *Id.* at 532. Additionally, that court was concerned that the protective order in that case would allow the parties (both of whom were the third party's competitors) to stipulate between themselves to broader disclosure of the third party's information once it was produced to them. *Id.* at 530. Movants have identified no similar concerns here, and Arm shares their goal of protecting the confidentiality of its own agreements. And, finally, *Mannington Mills* (and the other two cases the Orders cite) is decided under Federal Circuit law—not the Third Circuit's standard. The Order's omission of Third Circuit law is telling, as Movants have not satisfied the Third Circuit's requirement that they show a "particular need for protection." Speculation falls far short of particular need.

## IV.    CONCLUSION

Qualcomm's objections to the Special Master's Orders should be sustained.

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
Jenifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
(202) 240-2900

Catherine Nyarady
Anish Desai
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
(628) 432-5100

*Of Counsel for Plaintiffs as to Motions Brought
By All Movants Except for Annapurna Labs
(U.S.), Inc.*

February 18, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs as to Motions Brought
By All Movants Except for Annapurna Labs
(U.S.), Inc.*

CONNOLLY GALLAGHER LLP

*/s/ Sara A. Barry*

Alan R. Silverstein (#5066)
Sara A. Barry (#6703)
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 252-3645
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

*Attorneys for Plaintiffs as to Motion Brought
By Annapurna Labs (U.S.), Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 18, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                               *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                           *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendant*

Sydney D. Gaskins, Esquire                                            *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                                             *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Lydia B. Cash, Esquire                                      *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendant*

Gregg F. LoCascio, P.C.                                     *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Kasdin M. Mitchell, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendant*

Jay Emerick, Esquire                                        *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendant*

Peter Evangelatos, Esquire                                 *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendant*

Jenness E. Parker, Esquire                                 *VIA ELECTRONIC MAIL*
Elisa M.C. Klein, Esquire
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Non-Party Broadcom Inc.*

Geoffrey G. Grivner, Esquire                               *VIA ELECTRONIC MAIL*
BUCHANAN INGERSOLL & ROONEY PC
500 Delaware Avenue, Suite 720
Wilmington, DE  19801
*Attorneys for Non-Party MediaTek Inc.*

**A102**

Brett M. McCartney, Esquire       *VIA ELECTRONIC MAIL*
Elizabeth A. Powers, Esquire
Emily L. Skaug, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE 19801
*Attorneys for Non-Party Amlogic Holdings Ltd.*

Andrew S. Ong, Esquire       *VIA ELECTRONIC MAIL*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
*Attorneys for Non-Party Amlogic Holdings Ltd.*

Neel Chatterjee, Esquire       *VIA ELECTRONIC MAIL*
Theresa Sutton, Esquire
KING & SPALDING LLP
245 Lytton Avenue, Suite 150
Palto Alto, CA 94301
*Attorneys for Non-Party Amlogic Holdings Ltd.*

Matthew B. Goeller, Esquire       *VIA ELECTRONIC MAIL*
K & L GATES LLP
600 N. King Street, Suite 901
Wilmington, DE 19801
*Attorneys for Non-Party Analog Devices, Inc.*

Michael R. Creta, Esquire       *VIA ELECTRONIC MAIL*
K & L GATES LLP
One Congress Street, Suite 2900
Boston, MA 02114
*Attorneys for Non-Party Analog Devices, Inc.*

*/s/ Jennifer Ying*

_____

Jennifer Ying (#5550)

**A103**