IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED and QUALCOMM TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ARM HOLDINGS PLC, f/k/a ARM LTD., <br><br> Defendants. | C.A. No. 24-490 (MN) <br><br>  |

### NON-PARTY APPLE INC.'S RESPONSE TO PLAINTIFFS' SEALED OBJECTIONS TO THE SPECIAL MASTER'S ORDERS GRANTING MOTIONS FOR PROTECTIVE ORDERS (D.I. 615 AND D.I. 616)

Dated: March 2, 2026

FISH & RICHARDSON P.C.
Nitika Gupta Fiorella (No. 5898)
Susan E. Morrison (No. 4690)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
morrison@fr.com
fiorella@fr.com

Hannah Cannom (*pro hac vice*)
Bethany Stevens (*pro hac vice*)
WALKER STEVENS CANNOM LLP
500 Molino Street, Suite 118
Los Angeles, California 90013
213-712-9145
hcannom@wscllp.com
bstevens@wscllp.com

*Attorneys for Non-Party Apple Inc.*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. RELEVANT FACTUAL BACKGROUND..................................................................... 2

III. ARGUMENT ..................................................................................................................... 5

   A. Qualcomm Has Not Shown that the Arm-Apple Agreements Are Relevant...................... 6

   B. Apple Has Shown a Concrete and Particularized Harm ....................................................... 7

   C. Qualcomm's Refusal to Engage with Apple Shows that Qualcomm Demands these Documents for an Improper Purpose ....................................................................................... 10

IV. CONCLUSION............................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AdTrader, Inc. v. Google LLC*,
　2021 WL 937559 (N.D. Cal. Mar. 12, 2021) ............................................................................7

*Arconic Corp. v. Novelis Inc.*,
　Case No. 17-1434, 2021 WL 4479484 (W.D. Pa. Sept. 30, 2021) ...........................................8

*Arm Ltd. v. Qualcomm Inc.*,
　Case No. 1:22-cv-01146 ......................................................................................................3, 8

*Finjan, Inc. v. Rapid7, Inc.*,
　C.A. No. 18-1519, D.I. 173 (D. Del. Aug. 7, 2020) ................................................................9

*Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*,
　2017 WL 4310221 (M.D. Pa. Sept. 28, 2017) .........................................................................5

*Mannington Mills, Inc. v. Armstrong World Industries, Inc.*,
　206 F.R.D. 525 (D. Del. 2002) ................................................................................................8

*Procter & Gamble Co. v. BoyleMidway, Inc.*,
　1983 WL 830080 (D. Del. Apr. 11, 1983) ...............................................................................9

*Realtime Data, LLC v. MetroPCS Texas, LLC*,
　Case No. 12-cv-1048-BTM MDD, 2012 WL 1905080 (S.D. Cal. May 25,
　2012) ........................................................................................................................................8

Pursuant to Federal Rule of Civil Procedure 53(f), Non-Party Apple Inc. ("Apple") hereby responds to Plaintiffs' Sealed Objections to the Special Master's Orders D.I. 615 and D.I. 616, which granted Ampere Computing LLC's and Apple's Motions for Protective Orders, respectively, under Rules 26(c) and 45(d). With regard to Apple, the Special Master's Order at D.I. 616 (the "Apple Order") properly precludes the compelled production of certain confidential license agreements, including the production of any Architecture License Agreement ("ALA"), any Technology License Agreement ("TLA," and together with the ALA, the "Arm-Apple Agreements"), and/or any other confidential agreements or communications between Apple and Defendant Arm Holdings PLC ("Arm").

I.    INTRODUCTION

In the simplest terms, Qualcomm and Arm are really engaged in a licensing dispute. The various litigations between these two parties are attempts by each at leverage in negotiating a new deal. A global resolution is likely to result in some form of new license (or new terms) for Qualcomm to access Arm technology, and Qualcomm's litigation counsel here will advise, negotiate, and draft the terms of that resolution. For *years*, Qualcomm has sought through discovery what it cannot get through commercial negotiations—access to highly confidential and trade secret terms between Arm and Apple (and many other third-party licensees of Arm)—attempting to negotiate for itself the most favorable terms possible only after it has access to all of Arm's other licensee information. Qualcomm should not get access to a competitor's most sensitive trade secrets under any circumstance, and especially not because of protracted litigation where the competitor is not a party.

Qualcomm has provided multiple attenuated justifications for why Apple's entire agreements with Arm—and all correspondence related thereto— are relevant to this case (and

the previous one), but these are just pretextual, and none has withstood scrutiny. Moreover, this is not the typical case where a protective order is sufficient to protect the terms of confidential documents produced in litigation. Apple is not merely concerned with keeping its agreements away from the public; it is imperative that these agreements be kept away from its competitors that partner with Arm, including Qualcomm. The harm caused from Qualcomm's outside counsel learning the terms of these agreements is the same as Qualcomm itself learning the relevant terms and such harm cannot be overstated. To date, the agreements have not been produced; there is no reason to change course at this late stage of this case.

## II.     RELEVANT FACTUAL BACKGROUND

### (a)     The Arm-Apple ALA and TLA

For more than thirty years, Apple has licensed technology from Arm that Apple integrates into Apple products; today, that technology is integrated into Apple iPhones, iPads, and Mac computers. As part of their longstanding relationship, ███████████████ ████████████████████████████████████████. These agreements are the ████████████████████████████████████████████████████. D.I. 659 at A084, Kirby Decl. ¶¶ 4, 5. ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████. This agreement includes bespoke commercial, financial, and technical terms, including ████████████████████████████████ ████████████. As such, the Arm-Apple Agreements are among the most commercially sensitive documents at Apple and are subject to the most stringent confidentiality obligations even within Apple. *Id.* ¶ 6.



(b)     The *Nuvia* Litigation

In the related litigation between Qualcomm, Arm, and Nuvia, Qualcomm sought to compel unredacted versions of the Arm-Apple ALAs, including a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Case No. *Arm Ltd. v. Qualcomm Inc.*, Case No. 1:22-cv-01146 (the "*Nuvia* Litigation") at D.I. 101. Apple moved for, and the magistrate judge granted, a protective order denying Qualcomm's request for unredacted versions of the Arm-Apple ALAs including the ▮▮▮▮▮▮▮▮▮▮. *Id.* Apple's motion for protective order was based, at least in part, on the competitive harm that would result to Apple from disclosing the Arm-Apple ALAs to Qualcomm. *Id.* Magistrate Judge Hatcher agreed with Apple's position, and found that "Qualcomm, as an indirect competitor and customer, could obtain unfair competitive advantages by accessing information contained in the ▮▮▮▮▮▮▮▮" even if the document was produced on an Attorneys' Eyes-Only basis pursuant to the operative Protective Order. *Id.* D.I. 207; *see also* D.I. 111.

Trial testimony from the *Nuvia* Litigation validated the concerns underlying Apple's motion to protect its Arm-Apple ALAs, as witnesses from both Arm and Qualcomm made clear that Qualcomm views Apple as a main commercial and technical competitor. *See e.g., Nuvia Litigation*, D.I. 588 at 204:14-23 (Arm CCO testifying that Qualcomm constantly asked Arm "how we can close the gap with Apple … [because Qualcomm] was falling farther and farther behind the quality of the Apple product"); D.I. 590 at 633:2 – 634:14 (ARM VP of sales wrote in an email that "[Qualcomm] want[s] 20 percent plus generation on generation for ELP to keep up with Apple;" Qualcomm's "narrative to ARM [was that] their competitor was outperforming them"), 750:15-17 (Qualcomm CEO testifying that "[Qualcomm] could not compete with the Apple iPhone and the CPU that Apple started doing themselves with their ALA"), 751:5-19 (Qualcomm CEO testifying that Qualcomm was "clearly [] falling behind Apple").

    **(c)**     **The Present Litigation**

Since Qualcomm's renewed demand for the Arm-Apple Agreements in April 2025, Apple has sought to understand what information Qualcomm believes it needs to support its claims and to explore ways to provide that information short of producing the Arm-Apple Agreements in their entirety. For example, on June 15, June 16, and July 1, 2025, at Apple's initiation, counsel for Apple spoke with counsel for Qualcomm to (1) request Qualcomm's position as to what, if any, Apple CBI it was requesting from Arm, and the relevance of that Apple CBI to the case; and (2) see if Qualcomm would accept a more targeted, less sensitive universe of discovery to confirm (or refute) certain information Qualcomm's counsel claimed was relevant to Qualcomm's claims and defenses. D.I. 659 at A081, Cannom Decl. ¶ 6. But to date, Qualcomm has refused to engage regarding any resolution other than production of the entire unredacted Arm-Apple Agreements on an outside attorneys' eyes-only basis.[1] *Id.* ¶ 7.

Meanwhile, Qualcomm has also been unwilling to share specifics of its relevance positions due to redactions on the public docket, including without limitation any information regarding the provisions of the Arm-Qualcomm agreements at issue that would aid Apple in identifying less sensitive, potentially responsive materials. For example, Qualcomm refused to share unredacted versions of the operative Complaint. As a result, Apple has been unable to meaningfully engage on the relevance of the Apple CBI at issue, or to propose a compromise that may satisfy Qualcomm's requests. For its part, Qualcomm has refused to discuss receiving anything other than the full, unredacted versions of all Arm-Apple Agreements.

---

[1] Not only is the demand for the entire unredacted agreement overly broad, but the "Outside Attorneys' Eyes Only" designation is insufficient because it is Qualcomm's outside attorneys who will be responsible for negotiating Qualcomm's license with Arm.

**(d)    The Special Master's Decision**

On January 30, 2026, the Special Master issued the Apple Order granting Apple's Motion for a Protective Order. D.I. 616. In so doing, the Special Master correctly balanced the potential harm to Apple in production of this most sensitive information against any benefit to Qualcomm. Calling Qualcomm's requests a "fishing expedition," the Special Master correctly noted that "Qualcomm fail[ed] to explain why it needs the entirety of all versions of [the Arm-Apple] agreements." D.I. 616 at 5, 6.

## III.    ARGUMENT

As the Special Master properly noted, "because a nonparty is involved, 'this court is required to apply the balancing standards—relevance, need, confidentiality and harm. And even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit.'" D.I. 616 at 4 (citing *Mannington Mills, Inc. v. Armstrong World Industries, Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (citation omitted)). The party seeking discovery bears the burden of demonstrating the relevance of the information sought. *See Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, 2017 WL 4310221, at *4 (M.D. Pa. Sept. 28, 2017). Once that party has met the burden of showing relevance sufficient to justify discovery, the burden shifts to the party seeking the protective order to show why discovery should not be had.

Good cause exists to grant a protective order here in view of the scant relevance of the Arm-Apple Agreements versus the particularized harm that would result to Apple if the highly confidential, bespoke agreements and communications related thereto were produced to Qualcomm. Qualcomm's objections to the Special Master's order should be overruled.[2]

---

[2] The Court reviews the Special Master's findings of fact and conclusions of law *de novo* pursuant to Fed. R. Civ. P. 53.

### A. Qualcomm Has Not Shown that the Arm-Apple Agreements Are Relevant

Qualcomm asserts generally that Arm's third-party agreements are relevant to Qualcomm's allegations that Arm violated the ▉▉▉▉▉ of, or otherwise breached, the Arm-Qualcomm agreements. D.I. 657 at 6. As an initial matter, Qualcomm's claimed need to compare the Arm-Apple Agreements to the Arm-Qualcomm agreement does not make sense. Apple and Qualcomm are positioned differently vis-à-vis Arm, and the comparison of the two sets of agreements would be apples to oranges. For example, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉y.[3] By contrast, Qualcomm designs hardware that uses Android software. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Further, beyond its general demand for the Apple agreements, Qualcomm has refused to provide Apple with any more specifics of its claimed relevance, pointing to redacted argument and documents filed under seal; Apple has not received an unredacted version of its Objections to the Special Master's Order. It is entirely inconsistent that Qualcomm claims the protective order is sufficient to protect Apple's agreements but will not provide Apple's counsel with unredacted pleadings containing Qualcomm's confidential information. Qualcomm simply cannot credibly claim that it needs *all* Arm ALAs and TLAs with *all* third parties, and it has made no effort to explain its demand for, or the relevance of, the entirety of every version of the Arm-Apple Agreements.

Moreover, Qualcomm could have requested targeted discovery regarding the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. In reality, Qualcomm demands the

---

[3] ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

6

Arm-Apple Agreements and Arm's other third-party agreements so that it can have unfettered access to its non-party competitors' commercial terms with Arm. Such access would allow Qualcomm to attempt to craft an argument in this litigation that Arm violated the ███████ ███ terms of the Arm-Qualcomm agreements (*see. e.g,* Obj. at 7 ("█████████████ █████████) and negotiate better terms for itself in any new agreement resulting from the resolution of this case. This is precisely the type of fishing expedition the Special Master spied.

The cases Qualcomm cites do not lead to a different conclusion. Indeed, neither *Kennedy v. PEI-Genesis* nor *Harmony Biosciences, LLC v. Lupin Ltd.* address the issue of an objection to production by a non-party. In *Kennedy*, it is the plaintiff who sought to block production of his medical records in a litigation where he put his mental health at issue. 2023 WL 3898893, at *4 (E.D. Pa. June 8, 2023). In *Harmony Biosciences, LLC*, there is no evidence that a third-party was objecting to the production of documents or that there were other ways to "test" the defendants' representation. Here, a non-party competitor objects to production of its most sensitive agreements in a litigation over which it has no control—Apple cannot force a settlement, nor can it walk away from the dispute. *See, e.g. AdTrader, Inc. v. Google LLC,* 2021 WL 937559, at *2 (N.D. Cal. Mar. 12, 2021) (holding that the defendant's policies toward nonparty advertisers were irrelevant and therefore not discoverable because they revealed nothing about defendant's performance or compliance with contractual obligations owed to plaintiff under separate agreements).[4] The cases cited by Qualcomm are therefore inapposite.

**B.     Apple Has Shown a Concrete and Particularized Harm**

---

[4] To the extent that Qualcomm attempts to distinguish this case by citing to a heavily redacted paragraph in the Second Amended Complaint to which the non-parties including Apple do not have access (*see* D.I. 211 at 11 citing D.I. 137 ¶ 76), Apple is unable to fairly respond and is prejudiced. Moreover, Qualcomm's refusal to engage on identifying less burdensome means of obtaining this information is fatal to its demand for all third-party agreements.

Apple has shown, through its original Motion for a Protective Order and the Declaration of Timothy Kirby in support thereof that it would suffer a real and particularized harm if the Arm-Apple Agreements were produced to Qualcomm. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. A083 at ¶ 6-8. Producing such agreements to Qualcomm—who views ▇▇▇▇▇▇▇▇▇▇ and views itself as falling behind Apple in performance and efficiency—would allow Qualcomm to unfairly compete with Apple. *See Nuvia Litigation*, D.I. 588 at p. 204:14-23; D.I. 590 at 633:2 – 634:14, 750:15-17, 751:5-19.

Not only would inadvertent disclosure significantly harm Apple, but it is clear that Qualcomm's goal throughout its litigations with Arm is to obtain Arm agreements with Qualcomm's competitors so that its counsel can use those terms to negotiate favorable terms in a new Arm-Qualcomm agreement. But Qualcomm should not be allowed to obtain in litigation what it cannot get through commercial negotiations—namely, access to highly confidential and trade secret terms between Arm and Apple (and other non-party Arm licensees).

Notably, Qualcomm does not dispute that once the licensing terms are disclosed to Qualcomm's counsel those terms cannot be unlearned by them. This risk, especially to a non-party in a highly contentious litigation among its suppliers, cannot be overstated. *See Arconic Corp. v. Novelis Inc.,* Case No. 17-1434, 2021 WL 4479484, at *5 n.2 (W.D. Pa. Sept. 30, 2021) ("Even though there is a robust protective order in place, the court is reluctant to order unnecessary disclosures of sensitive corporate information between these fierce industry competitors."); *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 530 (D. Del. 2002) (recognizing potential harm to non-party of producing commercially sensitive information notwithstanding outside counsel only provision of protective order); *Realtime Data, LLC v. MetroPCS Texas, LLC*, Case No. 12-cv-1048-BTM MDD, 2012 WL 1905080, at *3

(S.D. Cal. May 25, 2012) (denying motion to compel, noting a non-party's "concerns regarding the security of its [produced information], despite the protective order, cannot be ignored"). And the risk is not mitigated by the Protective Order where the counsel who will receive the documents in the litigation will be responsible for negotiating any settlement of this case on Qualcomm's behalf, including, inevitably, a new Arm-Qualcomm license or license terms. The terms of Apple's agreements would necessarily infect the whole negotiation.

      The cases cited by Qualcomm are inapposite for this reason. For example, in *Finjan,* the Special Master found the protective order sufficient to protect non-party IBM's documents where IBM conceded it was sufficient and the defendant was not a competitor of IBM, which "further reduce[d] any potential for harm to IBM." *Finjan, Inc. v. Rapid7, Inc.*, C.A. No. 18-1519, D.I. 173, at 5 (D. Del. Aug. 7, 2020). The *Procter & Gamble Co.* case is even further afield. Qualcomm cites to this opinion for the statement that "the Court simply will not indulge in the speculation that attorneys will violate a protective order." *Procter & Gamble Co. v. BoyleMidway, Inc.*, 1983 WL 830080 at *1 (D. Del. Apr. 11, 1983). But the *Procter* case—an unpublished case from more than thirty years ago and before the advent of electronic discovery—contains no discussion regarding the production of third-party documents over that non-party's objection. It is not that Apple is concerned that Qualcomm's counsel *might* violate the Protective Order if it receives the Arm-Apple Agreements; Apple is concerned because Qualcomm's counsel *couldn't not* violate the Protective Order in negotiating a resolution to the present litigation. Because Apple has shown a concrete and particularized harm, the Court should overrule Qualcomm's objection.

### C. Qualcomm's Refusal to Engage with Apple Shows that Qualcomm Demands these Documents for an Improper Purpose

The Court should overrule this objection because Qualcomm's refusal to meaningfully engage with Apple regarding less intrusive ways to provide Qualcomm with the information it really needs shows that Qualcomm seeks this information for an improper purpose. Over the course of several months, Apple worked to explore whether Qualcomm would accept more targeted, less sensitive discovery to confirm (or refute) its allegations against Arm. D.I. 659 at A081, Cannom Decl. ¶ 6. During these communications, Qualcomm was unwilling to share *any* specifics due to redactions on the public docket, and it did not engage on a resolution other than production of the unredacted Apple agreements. (*Id*. ¶ 7.) On these calls, Qualcomm also refused to provide Apple with *any* information about the provisions of the Arm-Qualcomm agreements at issue in the litigation that would aid Apple in identifying less sensitive, potentially responsive materials. (*Id*. ¶ 8.) As such, Apple has no insight into what an acceptable compromise would be. Qualcomm, for its part, has refused to provide any compromise other than the unfettered production of all of the Arm-Apple Agreements. Qualcomm's actions show that it demands this non-party discovery for an improper purpose and the information should not be produced.

## IV. CONCLUSION

In view of the foregoing, Apple respectfully requests that the Court overrule Qualcomm's Objections to the Special Master's Order (D.I. 616).

| | |
|---|---|
| Dated: March 2, 2026 | FISH & RICHARDSON P.C.<br><br>By: /s/ *Nitika Gupta Fiorella*<br>Nitika Gupta Fiorella (No. 5898)<br>Susan E. Morrison (No. 4690)<br>222 Delaware Avenue, 17th Floor<br>Wilmington, DE 19899<br>Tel: (302) 652-5070<br>morrison@fr.com<br>fiorella@fr.com<br><br>Hannah Cannom (*pro hac vice*)<br>Bethany Stevens (*pro hac vice*)<br>WALKER STEVENS CANNOM LLP<br>500 Molino Street, Suite 118<br>Los Angeles, California 90013<br>213-712-9145<br>hcannom@wscllp.com<br>bstevens@wscllp.com<br><br>*Attorneys for Non-Party Apple Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 2, 2026, upon the following in the manner indicated:

Catherine Nyarady
Anish Desai
Jacob A. Braly
S. Conrad
Scott Jacob
Apkon Flint
A. Patterson
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

Adam L. Basner
Eric C. Westerhold
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300
Gregg Stephenson
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105 (628) 432-5100

Anne Shea Gaza, Esquire
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801

Scott F. Llewellyn, Esquire
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202

Sydney D. Gaskins, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017
Daralyn J. Durie, Esquire
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105
Jennifer Ying (#5550)
Travis Murray (#6882)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

12

|  |  |
|---|---|
| Dated: March 2, 2026 | **FISH & RICHARDSON P.C.**<br><br>By: /s/ Nitika Gupta Fiorella<br>Nitika Gupta Fiorella (No. 5898)<br>Susan E. Morrison (No. 4690)<br>222 Delaware Avenue, 17th Floor<br>Wilmington, DE 19899<br>Tel: (302) 652-5070<br>morrison@fr.com<br>fiorella@fr.com<br><br>Hannah Cannom (*pro hac vice*)<br>Bethany Stevens (*pro hac vice*)<br>WALKER STEVENS CANNOM LLP<br>500 Molino Street, Suite 118<br>Los Angeles, California 90013<br>213-712-9145<br>hcannom@wscllp.com<br>bstevens@wscllp.com<br><br>*Attorneys for Non-Party Apple Inc.* |