**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation,<br><br>Defendant. | C.A. No. 24-490-MN<br><br>[redacted] |

**NONPARTY MEDIATEK INC.'S RESPONSE TO OBJECTIONS (D.I. 648, 662)**
**TO SPECIAL MASTER'S ORDER GRANTING PROTECTIVE ORDER (D.I. 625)**

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 4

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 3

A. MediaTek's Agreement With ARM ..... 3

B. Pre-Motion History ..... 4

C. The Special Master Grants the Protective Order. ..... 4

D. Prior, Similar Motions Have Been Granted By The Court. ..... 5

III. ARGUMENT ..... 5

A. Disclosure Poses a Substantial Risk of Competitive Harm to MediaTek. ..... 6

B. Dubious Relevance Claims Do Not Warrant Disclosure. ..... 8

C. ARM's Redaction Solution Fails to Mitigate the Harm. ..... 9

IV. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**


**Cases**

*Am. Totalisator Co. v. Autotote Ltd.*,
1983 WL 21374 (Del. Ch. Aug. 18, 1983) ....................7

*Amgen Inc. v. Samsung Bioepis Co.*,
2025 WL 1207594 (D.N.J. Apr. 24, 2025) ....................9

*ARM Ltd. v. Qualcomm Inc., et al.*,
C.A. No. 22-1146 (MN) (D. Del.) .................... *passim*

*Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*,
2017 WL 4310221 (M.D. Pa. Sept. 28, 2017) ....................5

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.*,
206 F.R.D. 525 (D. Del. 2002) ....................6, 8

*Micro Motion, Inc. v. Kane Steel Co.*,
894 F.2d 1318 (Fed. Cir. 1990)....................5

*Publicker Indus., Inc. v. Cohen*,
733 F.2d 1059 (3d Cir. 1984)....................6

*Realtime Data, LLC v. MetroPCS Texas, LLC*,
2012 WL 1905080 (S.D. Cal. May 25, 2012)....................8

*SI Handling Sys., Inc. v. Heisley*,
753 F.2d 1244 (3d Cir. 1985)....................7

*Syngenta Crop Prot., LLC v. Willowood, LLC*,
2016 WL 4925099 (D. Del. Sept. 14, 2016)....................6, 7

**Court Rules**

Fed. R. Civ. P. 26(b)(1)....................5

Fed. R. Civ. P. 26(c)(1)(G) ....................5

**Other Authorities**

*MediaTek, Qualcomm Push into AI Markets Beyond Mobile*, Nasdaq (May 20, 2025), https://www.nasdaq.com/articles/mediatek-qualcomm-push-ai-markets-beyond-mobile ....................1

Peckham, James, *New Qualcomm, MediaTek Chips Could Power Some of 2025's Best New Phones*, PCMag (May 15, 2025), https://www.pcmag.com/news/new-qualcomm-mediatek-chips-could-power-some-of-2025s-best-new-phones....................1

Sag, Anshel, *Next-Gen 5G Modems From MediaTek And Qualcomm Debut At MWC 2025*, Forbes (March 31, 2025), https://www.forbes.com/sites/moorinsights/2025/03/31/next-gen-5g-modems-from-mediatek-and-qualcomm-debut-at-mwc-2025/ ....................1

## I. INTRODUCTION

Nonparty MediaTek Inc. ("MediaTek") asks the Court to affirm the Special Master's entry of a protective order preventing Defendant Arm Holdings plc, f/k/a ARM Ltd. ("ARM") from producing agreements between ARM and MediaTek to Plaintiffs Qualcomm Incorporated and Qualcomm Technologies, Inc. ("Qualcomm").

MediaTek and Qualcomm are "direct competitors . . . operating in many of the same markets in the semiconductor space." D.I. 625 at 2 (Special Master's Order).[1] Qualcomm and MediaTek are both leaders in producing smartphone systems on chips ("SoCs") for use with the Android operating system, where both MediaTek and Qualcomm incorporate ARM-licensed central processing unit technology into their SoCs. D.I. 323-1 ¶ 3. Competition between the two is fierce. As ARM admits, MediaTek and Qualcomm are each other's "closest competitors." D.I. 662 at 1. MediaTek and Qualcomm also compete in laptop SoCs, automotive SoCs and AI products, many of which incorporate licensed ARM technology.[2] Sharing MediaTek's

---

[1] *See, e.g.*, James Peckham, *New Qualcomm, MediaTek Chips Could Power Some of 2025's Best New Phones*, PCMag, (May 15, 2025), https://www.pcmag.com/news/new-qualcomm-mediatek-chips-could-power-some-of-2025s-best-new-phones ("Qualcomm and MediaTek keep most of our mobile gadgets running, and each has a new chipset that will power midrange to high-end Android phones.").

[2] *See, e.g.*, *MediaTek, Qualcomm Push into AI Markets Beyond Mobile*, Nasdaq, (May 20, 2025), https://www.nasdaq.com/articles/mediatek-qualcomm-push-ai-markets-beyond-mobile ("MediaTek and Qualcomm are increasingly battling in the PC market, particularly for laptops."); Anshel Sag, *Next-Gen 5G Modems From MediaTek And Qualcomm Debut At MWC 2025*, Forbes, (Mar. 31, 2025), https://www.forbes.com/sites/moorinsights/2025/03/31/next-gen-5g-modems-from-mediatek-and-qualcomm-debut-at-mwc-2025/ ("[T]he two biggest providers of 5G modems, MediaTek and Qualcomm[,] have been shipping 5G modems across multiple generations for years.").

competitively sensitive information with Qualcomm risks unacceptable harm to MediaTek.

Both MediaTek and Qualcomm license and integrate intellectual property from ARM into their respective final products. D.I. 323-1 ¶ 3. MediaTek's agreement with ARM contains critical commercially sensitive information. *Id.* ¶ 4. Specifically, [redacted] *Id.* The Special Master found that this information would be exceptionally useful to Qualcomm for business reasons (including for use in commercial negotiations with ARM and head-to-head competition against MediaTek), but is "only marginally relevant to Qualcomm's claims or Arm's defenses." D.I. 625 at 7.

[redacted] But even ARM concedes that Qualcomm's demand "go[es] too far" and "needlessly expose[s] highly sensitive commercial terms that have no relevance," including by demanding [redacted] D.I. 662 at 2.

There is good cause for an order preventing production. As this Court held in the prior, related action between ARM and Qualcomm, "[a] court may issue an order under Rule 26(c)

to protect information from disclosure for good cause, which requires a movant to show that, absent the protective order, it will suffer a clearly defined and serious injury … balancing relevance, need, confidentiality, and harm." *See ARM Ltd. v. Qualcomm Inc.*, *et al.*, C.A. No. 22-1146 (MN) (D. Del.) (D.I. 207) (the "*NUVIA Litigation*").

Here, Qualcomm's expansive request for competitive intelligence of dubious relevance warrants affirming the Special Master's protective order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. MediaTek's Agreement With ARM

MediaTek is an innovator in semiconductors, including for mobile devices, home appliances, entertainment, connectivity, and automotive applications. MediaTek has several long-standing agreements with ARM to license important technology that ARM develops. D.I. 323-1 ¶ 3. These agreements are highly negotiated, [redacted], and reveal [redacted] *Id.* ¶¶ 6–7. These are among MediaTek's most important commercial agreements; MediaTek relies on licensed ARM intellectual property for computation in many of its finished products. *Id.* ¶ 3. Qualcomm, a direct competitor of MediaTek in semiconductors, also contracts with ARM for technology that Qualcomm integrates into its products. *Id.* MediaTek's agreements contain [redacted] *Id.* ¶¶ 4, 6.

[redacted]

[redacted]

[redacted]

**B. Pre-Motion History**

Per the Stipulated Protective Order's procedure for disclosure of a nonparty's confidential information, *see* D.I. 84, on June 24, 2025, ARM sent MediaTek a letter notifying MediaTek that Qualcomm was seeking ARM's agreements with MediaTek, including requests for copies of [redacted] MediaTek made a timely motion for a protective order, D.I. 322, to prevent the production under the Court's Stipulated Protective Order, D.I. 84, ¶ 52.

**C. The Special Master Grants the Protective Order.**

On February 2, 2026, the Special Master granted the Protective Order, finding that Qualcomm's request was "overbroad and unduly burdensome" and that the requested information constituted "trade secrets" whose disclosure (even if inadvertent) would cause "great harm." D.I. 625 at 7. The Special Master further explained that [redacted]

[redacted]

[redacted]

[redacted]

Ultimately, the Special Master concluded that MediaTek's documents "are only marginally relevant to Qualcomm's claims or Arm's defenses." *Id.* at 7. The Special Master also found that the requested information would allow competitors to [redacted] *Id.* at 7. Taken together, these findings showed that "the potential harm caused by production outweighs the benefit." *Id.* at 3. Qualcomm and ARM timely objected.

**D. Prior, Similar Motions Have Been Granted By The Court.**

This is not the first dispute between Qualcomm and ARM involving third parties concerned about production of highly sensitive information. In the *NUVIA Litigation*, this Court applied the standard applicable here to prevent production of competitively sensitive third-party information related to licensing ARM technology. *See NUVIA Litigation*, at D.I. 207 (issuing protective order preventing production of Architecture License Agreement ("ALA") between Apple Inc. and ARM based on "the 2023 Apple ALA's minimal relevance when combined with the harm of disclosure given that Qualcomm's outside counsel will necessarily need to communicate generalized information about the ALA to its client, all of which remains true even given the Protective Order in this case").

## III. ARGUMENT

Parties may obtain discovery of non-privileged information relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The party seeking discovery bears the burden of demonstrating relevance. *See Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, 2017 WL 4310221, at *4 (M.D. Pa. Sept. 28, 2017). The presence of a protective order in an action "is not a substitute for establishing relevance or need[;]" rather, a protective order may limit harm "by limiting disclosure of *relevant* and *necessary* information."

*Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990) (emphasis in original).

Rule 26 limits discovery by providing that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense" by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). "[G]ood cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984). "Even if the information sought is relevant, discovery is not allowed where no need is shown … or where the potential harm caused by production outweighs the benefit." *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (cited in *NUVIA Litigation*, at D.I. 207).

Consistent with Apple's motion in the *NUVIA Litigation*, the Court should affirm the Special Master's protective order preventing production of MediaTek's competitively sensitive information because: (1) the information is minimally relevant (if at all) to Qualcomm's claims; and (2) any need for that information is far outweighed by the harm MediaTek would incur in having its confidential information disclosed to its direct competitor.

**A. Disclosure Poses a Substantial Risk of Competitive Harm to MediaTek.**

The Special Master's Order should be affirmed because the harm to MediaTek of disclosure far outweighs any marginal benefit to Qualcomm or ARM. Qualcomm redacted similar information from its own complaint in this Action [redacted] (*see* Second Am. Compl. ¶ 181), as such information is sensitive and should not be disclosed to competitors. MediaTek seeks to prevent Qualcomm from accessing the same type of information that the Court protected for nonparties in the *NUVIA Litigation*, namely "the structure and terms

of its licensing deals [with ARM]" which "contain[] highly customized commercial terms." *NUVIA Litigation*, at D.I. 207.

The [redacted] information in MediaTek's agreements with ARM here are trade secrets because they derive "independent economic value … from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from [their] disclosure or use" and are subject to reasonable efforts "to maintain … secrecy." *Syngenta Crop Prot., LLC v. Willowood, LLC*, 2016 WL 4925099, at *3 (D. Del. Sept. 14, 2016) (quoting 6 Del. C. § 2001 (4)(a)-(b)); D.I. 323-1, ¶ 4. ARM implies that [redacted] cannot be MediaTek's trade secret. D.I. 662 at 9. But ARM admits that this information includes [redacted], *id.* at 6, and information revealing a company's cost factors has been held to constitute a trade secret. *See, e.g.*, *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1260 (3d Cir. 1985) (stating that data used in "costing" and "pricing," including information regarding materials, labor, overhead, and profit margin, qualifies for trade secret protection); *Am. Totalisator Co. v. Autotote Ltd.*, 1983 WL 21374, at *3 (Del. Ch. Aug. 18, 1983) (stating that "information on prices and costs" was considered a trade secret). However, even if not trade secrets, these are still highly sensitive commercial terms of use to a close competitor.

While Qualcomm argues that the risk of injury to MediaTek is merely "speculative," D.I. 648 at 8, in fact Qualcomm aims to and would inevitably learn about [redacted], which is highly competitively sensitive information for MediaTek. D.I. 648 at 6. Qualcomm would also learn competitively sensitive information about [redacted]

This competitive harm to MediaTek cannot be remedied by designating the agreements

as "attorneys' eyes only." Qualcomm claims that "[t]here is no reason to believe that Qualcomm's outside counsel will violate the protective order." D.I. 648 at 9. But, in the *NUVIA Litigation*, this Court recognized "that Qualcomm's outside counsel will necessarily need to communicate generalized information about the [redacted] to its client, all of which remains true even given the Protective Order in this case." *NUVIA Litigation*, at D.I. 207. Here, too, Qualcomm's counsel will inevitably discuss with Qualcomm whether MediaTek's ARM terms, [redacted], are superior, equivalent, or worse than Qualcomm's, especially given the technical complexity of the licenses. *See Mannington Mills*, 206 F.R.D. at 530–32 (rejecting argument that attorney's-eyes-only clause prevented nonparty competitor from showing that disclosure of confidential information would be harmful, quashing subpoena on relevance grounds); *Realtime Data, LLC v. MetroPCS Texas, LLC*, 2012 WL 1905080, at *3 (S.D. Cal. May 25, 2012) (denying motion to compel, noting a nonparty's "concerns regarding the security of its [produced information], despite the protective order, cannot be ignored").

**B. Dubious Relevance Claims Do Not Warrant Disclosure.**

The harm described above is particularly unwarranted, as the terms of [redacted] will not determine whether ARM breached its agreement with Qualcomm. [redacted] D.I. 648 at 6. Yet, ARM concedes that [redacted] the lowest rates. ARM's witnesses disagree as to whether MediaTek's agreement was even part of the [redacted] for ARM's

offer to Qualcomm. D.I. 616 at 6.

ARM argues that MediaTek's rates for the [redacted] are "probative" as to one of its defenses. D.I. 662 at 2, 5 (citing D.I. 137). But Qualcomm and ARM make no clear allegation that MediaTek's confidential information is necessary for this purpose. The Special Master found that MediaTek's materials at issue "are only marginally relevant to … Arm's defenses in this case." D.I. 625 at 7. And the Special Master found that this marginal relevance was likewise easily outweighed by the importance of protecting MediaTek's commercially sensitive information from its direct competitor, particularly when other less restrictive alternatives, including [redacted], could suffice to support ARM's defense. *Amgen Inc. v. Samsung Bioepis Co.*, 2025 WL 1207594, at *2 (D.N.J. Apr. 24, 2025) (granting protective order to nonparty competitor, in part, because attorney's-eyes-only provision was not "less restrictive means" to adequately protect nonparty's interests).

In the *NUVIA Litigation*, the Court granted a protective order for similar nonparty licensing agreements. *See NUVIA Litigation*, at D.I. 207. There, the "marginal relevance" of the nonparty licensing agreements to establishing the sufficiency of monetary damage relief could not justify the production of the nonparty's "highly bespoke" agreement containing "trade secrets." *Id*. Even though Qualcomm argued that the pricing terms in nonparty licensing agreements were "directly relevant" to the claims and defenses at issue, *see id.* at D.I. 201 & 243, the Court disagreed, and granted a protective order against production of the terms. *See id.* at D.I. 207.

**C. ARM's Redaction Solution Fails to Mitigate the Harm.**

The Special Master found ARM's proposal here that the agreements be produced with redactions was not persuasive because ARM "acknowledge[d] that production would needlessly expose [MediaTek's] highly sensitive commercial terms" which "would cause great harm." D.I.

625 at 6–7. This Special Master was correct: ARM proposes the unredacted production of [redacted] D.I. 648 at 3; D.I. 662 at 6–7. [redacted] are not only irrelevant for the reasons noted above [redacted] they are highly sensitive and would reveal MediaTek's [redacted]

## IV. CONCLUSION

For all of the foregoing reasons, MediaTek respectfully requests that the Court affirm the Special Master's protective order prohibiting ARM from producing or otherwise disclosing to Qualcomm the [redacted]

DATED: March 2, 2026

By: */s/ Geoffrey G. Grivner*

Geoffrey G. Grivner (#4711)
Buchanan Ingersoll & Rooney PC
500 Delaware Avenue, Suite 720
Wilmington, DE 19801-7047
302-552-4200
geoffrey.grivner@bipc.com

*Attorney for Nonparty MediaTek Inc.*