# Exhibit 3



CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

June 12, 2026

_Via e-mail_

Karen L. Dunn
Dunn Isaacson Rhee
kdunn@dirllp.com

Re:     _Qualcomm Inc. v. Arm Ltd._, Case No. 1:24-cv-490 (MN) (D. Del.)

Dear Karen,

I write in response to your June 11, 2026 letter. In short, your letter does not address Apple's concerns regarding Qualcomm's compliance with either the Protective Order (D.I. 84) or the Apple Protective Order, and we would like to proceed with a meet-and-confer in anticipation of raising this matter with the Court. Please confirm your and your local counsel's availability either this afternoon, June 12, or Monday, June 15, and we will make ourselves available.

In the meantime, and without addressing each statement in your letter with which I disagree, I note the following responses to certain issues you raised.

As a preliminary matter, Apple takes no position on whether the Spreadsheet contains Arm's privileged information; regardless, the Spreadsheet contains, at a minimum, information that is protected by the Apple Protective Order. I appreciate your confirmation that Qualcomm has complied with its obligations under the Protective Order to sequester the Spreadsheet pending resolution of the dispute. I am unclear, however, what you mean when you say

June 12, 2026
Page 2 of 3

Qualcomm has sequestered "the expert analysis of the Spreadsheet." My understanding is that Qualcomm has not withdrawn the expert report that included discussion of the Spreadsheet and that Qualcomm has refused to serve an amended expert report that omits such discussion. Apple's position is that Qualcomm's continued possession and use of the expert report, and not just the Spreadsheet, violates the Apple Protective Order, and I therefore reiterate the demands of my June 8, 2026 letter.

More fundamentally, Apple strenuously disagrees with Qualcomm's apparent position that the Apple Protective Order prohibited only Qualcomm's possession and use of the Apple-Arm ALAs and TLAs themselves, and not the substance of those documents. At the time that Apple filed its motion for a protective order, Apple, as a non-party, understood that Qualcomm sought Arm's production of the Apple-Arm ALAs and TLAs. The Special Master, appreciating the sensitivity of the terms of those agreements, issued an order that applied not only to the agreements themselves, but also to any documents that "could include the highly sensitive pricing terms in Apple's agreements with Arm as well as the other requested documents and communications." (D.I. 616, Special Master Order at 3.) When Qualcomm filed its objections to that order, it acknowledged that Apple's motion concerned more than just the Arm-Apple agreements themselves, noting that Apple "moved to stop Arm from producing … ALAs and correspondence." (D.I. 657 at 1.) The Court overruled that objection. (3/10 Hearing Tr. 94:10-12.) Your statement now that "Qualcomm does not understand other documents to be covered by [the Special Master's] order" is plainly contrary to the language of the Apple Protective Order and Qualcomm's prior representations to the Court.

Your argument that Apple's conduct has confirmed Qualcomm's errant understanding of the scope of the Apple Protective Order is similarly specious. As you know, the 2023 Arm-Apple ALA was not produced in the previous litigation, nor—to Apple's knowledge—was any information regarding the rates or terms of that Agreement or otherwise "similar to that in the Spreadsheet" as indicated in your letter. That Apple has been aware that Arm produced other, completely unrelated information about Apple or earlier Arm-Apple agreements in the previous litigation is entirely beside the point.

In the present litigation, Apple consented to the production of limited documents *before* it filed its motion for a protective order in an attempt to avoid or narrow the scope of the dispute before the Special Master. Similarly, Apple proposed certain compromises to Qualcomm during the course of the meet and confer process—again, before the Apple Protective Order was entered—to narrow or moot the dispute (all of which Qualcomm summarily rejected). But Apple *never* consented to the production of rates from the Apple-Arm 2023 ALA or any other agreement, and did not offer such information to Qualcomm in any meet-and-confer discussion. It is thus nonsensical to suggest that Apple's prior consent and/or proposals regarding limited information not related to that reflected in the Spreadsheet justifies Qualcomm's disregard for the plain language of the Apple Protective Order. Moreover, Qualcomm's suggestion that Apple's conduct made clear it did not seek to protect "every fact pertaining to" the Arm-Apple agreements is disingenuous. Qualcomm cannot cherry-pick what facts from the Arm-Apple 2023 ALA would be subject to the Apple Protective Order, nor can

June 12, 2026
Page 3 of 3

you credibly argue that Apple was anything but crystal clear, both before and during the motion practice regarding the Apple Protective Order, that the pricing and rate information in the Apple-Arm 2023 ALA was key and critical information to be protected from disclosure to Qualcomm. (D.I. 377 at 3 ("Qualcomm fails to explain why it needs the *entirety of all versions* of these agreements, including pricing.").) Indeed, at the March 10, 2026 hearing, the bulk of Qualcomm's argument regarding its need for the Apple-Arm 2023 ALA was Qualcomm's professed need for the market rates. (*See generally,* 3/10 Hearing Tr. at pp. 76-100.) The Court disagreed, overruled Qualcomm's objections, and entered the Apple Protective Order. (*Id.* at 94:10-12.)

Finally, Apple strongly disputes your statement that lawyers from Paul, Weiss and Dunn Isaacson Rhee are not in violation of an agreement with Apple. You agreed, on behalf of yourself and other lawyers, that as part of your current representation of Qualcomm you would "not litigate or advocate regarding the existence or substance of any Apple agreement with Arm." You have now personally served a letter in which you are advocating for Qualcomm's continued possession and reliance on the substance of Apple's agreement with Arm. Please be prepared to explain on our meet-and-confer how you square the positions set forth in your letter with the broad obligations you undertook with respect to Apple.

Sincerely,

/s/ *Hannah L. Cannom*

Hannah L. Cannom