# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation; and
QUALCOMM TECHNOLOGIES, INC.,
  a Delaware corporation,

        Plaintiffs,

    v.

ARM HOLDINGS PLC., f/k/a ARM LTD.,
  a U.K. corporation,

        Defendant.

**REDACTED - PUBLIC VERSION**
(Filed July 7, 2026)

C.A. No. 24-490-MN
(CONSOLIDATED)

# LETTER TO
# THE HONORABLE MARYELLEN NOREIKA FROM ANNE SHEA GAZA

Dated: June 29, 2026

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Kasdin M. Mitchell, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com
kasdin.mitchell@kirkland.com

Jay Emerick
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants Arm Holdings plc
and Arm Ltd.*

370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

Dear Judge Noreika:

The Court should deny Qualcomm's motion to compel a spreadsheet Arm Ltd. created at █████████████████████████████████ The spreadsheet is ***both*** privileged ***and*** protected work product. But even if it were not, Qualcomm cannot use the ████████████████████ in the spreadsheet. ████████████████████████████████████

The privileged spreadsheet stems from the suit that Arm filed against Qualcomm: *Arm v. Qualcomm*, No. 22-1146 (D. Del.). ████████████████████████ D.I. 795-1 Ex. 2 at 499–517. ███████████████████████ *Id.* ███████████████████████████████ Ex. 1 ¶¶ 3–4; Ex. 2 ¶ 2. █████████ Ex. 1 ¶ 5; Ex. 2 ¶¶ 3–4. ███████████████████ Ex. 1 ¶ 5; Ex. 2 ¶¶ 3–4. Ex. 2 ¶ 3.

Arm inadvertently produced the spreadsheet during a week in which it produced 300,000 documents in a multi-part production. Arm learned of its inadvertent production on May 15, 2026, when Qualcomm served an expert report extensively discussing the spreadsheet and its third-party ███ information. After confirming the spreadsheet is privileged, Arm clawed it back on May 20. Ex. 3 at 2–4. Qualcomm claims it complied with the clawback, but its expert retains unrestricted access to his unredacted report containing the information, and Qualcomm discusses the spreadsheet's clawed-back contents in its opening letter brief in violation of the protective order. Ex. 4 at 175:6–176:8; D.I. 84 ¶¶ 54, 56, 61(c).

**The Spreadsheet Is Protected Work Product**. The spreadsheet is work product protected by Rule 26(b)(3)(A). ████████████████████████████ Ex. 2 ¶¶ 2–6. Courts "have consistently held that … the processes and analyses used by a party to arrive at [a] settlement are protected by the work product doctrine." *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, 2008 WL 11348223, at *5 (D. Minn. Nov. 3, 2008). This includes ████████████████████████████████████████ . *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 6122012, at *3–4 (E.D. Va. July 16, 2019) (financial spreadsheets to assist settlement evaluation are opinion work product); *Int'l Marine Carriers, Inc. v. United States*, 1997 WL 160371, *2 (S.D.N.Y. Apr. 4, 1997) (settlement-related documents are work product); *Design with Friends, Inc. v. Target Corp.*, No. 21-1376-SB, 2024 WL 4333114, at *2 (D. Del. Sept. 27, 2024) (same).

**The Spreadsheet Is Privileged**. The spreadsheet is also protected by attorney-client privilege. A spreadsheet "summarizing information for a potential settlement structure … would, by its terms, almost necessarily relate to legal advice." *TP ST Acquisition, LLC v. Lindsey*, 2022 WL 252001, at *7 (D. Kan. Jan. 26, 2022); *In re Zetia*, 2019 WL 6122012, at *3–4; *FTC v. Boehringer Ingelheim Pharms., Inc.*, 180 F. Supp. 3d 1, 31–33 (D.D.C. 2016). That is the case here: ████████████████████████████████████████████ Ex. 1 ¶¶ 3–6; Ex. 2 ¶¶ 2–6.

1

**Qualcomm's Meritless Counterarguments**. That ███████████ ██████████ is of no moment: ██████████████████████████ *air Isaac*, 2008 WL 11348223, at *5; *Marine Carriers*, 1997 WL 160371, at *2 ("[T]he fact that the document was authored by a non-attorney is inconsequential."). Nor does the spreadsheet contain ████████████ D.I. 795 at 1. ████████████████████████████ *In re Appeal of Hughes*, 633 F.2d 282, 290 (3d Cir. 1980); *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 386 (E.D. Pa. 2006).

Whether Arm characterized the ██████████████████████████ ████████████████████████████████████████ A document ████████████████████ does not lose its protections simply ██████████████. *Fair Isaac*, 2008 WL 11348223, at *4–5. What matters is that Mr. Shivashankar would not have ████████████████████ ██████ Ex. 2 ¶¶ 5–6; *see In re Zetia*, 2019 WL 6122012, at *3–4. That distinguishes Qualcomm's cases, which involved documents prepared in the ordinary course of business.

Qualcomm is wrong that the spreadsheet ████████ ████ D.I. 795 at 2. The document's title is ████████████████ *see* Ex. 2 ¶ 3, belying Qualcomm's claim it is "not possible" ████ D.I. 795 at 1. Although Qualcomm had "not yet brought its v10 claims," its own exhibits ████████████████ *Arm v. Qualcomm*. D.I. 795-1 Ex. 2 at 499–517. Qualcomm cannot rewrite history.

Finally, Arm did not waive privilege by producing a ████████ ██████████████████████████████████████ Ex. 1 ¶ 7; Ex. 2 ¶¶ 7–8. Arm's expert spoke with Messrs. Shivashankar and Youssef only about that ████████. Ex. 6 at 180:11–182:16. Nor did the December 2025 ████████ ████████████ D.I. 795 at 2. Arm included ████████████████████████████████████████████ here is no sword/shield problem.

**Qualcomm Cannot Use The Third-Party ████ Information**. In addition to privilege and work-product protections, ████████████████ ██████████████" (D.I. 616 at 1), which ████ represented—and the Court agreed—are among its Ex. 7 at 74:20–25, 84:23–85:3; D.I. 761. ████████. Likewise, the Special Master denied Qualcomm's motion to compel production of any third party's (including ████ ALA terms (D.I. 626), and the Court overruled Qualcomm's objections. Ex. 7 at 93:25–94:14; D.I. 761. Despite this clear guidance, Qualcomm deliberately used the ████ ████████████████████ with Arm, ████ or the Court, and its expert retains unrestricted access to it. That is a clear-cut violation of this Court's orders.

Qualcomm's motion to compel should be denied.



2

Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

# Exhibit 1

( ██████████████████ )

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,<br><br>Defendants. | C.A. No. 24-490-MN (CONSOLIDATED)<br><br>███████████████<br>███████████████<br><br>███████████████<br>███████████████<br>███████████████ |

## DECLARATION OF EHAB YOUSSEF IN SUPPORT OF ARM'S RESPONSE TO QUALCOMM'S CHALLENGE TO ARM'S CLAWBACK OF ARMQC_02732276

I, Ehab Youssef, submit this declaration in support of Arm Limited and Arm Holdings plc's (collectively, "Arm") response to Qualcomm Incorporated and Qualcomm Technologies, Inc.'s (collectively, "Qualcomm") challenge to Arm's clawback of the document Bates-numbered ARMQC_02732276 (the "document"), and declare as follows:

1.      I am over the age of 18 and am the Vice President and Deputy General Counsel of Licensing and Trade Compliance on behalf of Arm Ltd. I am an attorney and a member in good standing of the California bar.

2.      At all times relevant to this Declaration, I served as in-house legal counsel to Arm Ltd., and the actions I describe below were undertaken in my capacity as a lawyer providing legal advice to Arm Ltd.

3.      In November 2024, Arm Ltd. was engaged in litigation against Qualcomm, captioned *Arm Ltd. v. Qualcomm Inc., et al.*, C.A. No. 22-1146 (MN) (LDH) (the "22-1146

Litigation"). ████████████████████████████████████████

████████████████████████. ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

    4.    ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████

    5.    ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

    6.    ████████████████████████████████████████

████████████████████████████████████████████████████████



8.    The matters set forth in this Declaration are based on my personal knowledge and if called as a witness, I could and would testify competently to them.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of June 2026, at Los Gatos.

_____
Ehab Youssef

# Exhibit 2

( ███████████████ )

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED, a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,

        Plaintiffs,

v.

ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,

        Defendants.

C.A. No. 24-490-MN (CONSOLIDATED)

█████████████████████████
█████████████████████████

█████████████████████████
█████████████████████████

## DECLARATION OF KARTHIK SHIVASHANKAR IN SUPPORT OF ARM'S RESPONSE TO QUALCOMM'S CHALLENGE TO ARM'S CLAWBACK OF ARMQC_02732276

I, Karthik Shivashankar, submit this declaration in support of Arm Limited and Arm Holdings plc's (collectively, "Arm") response to Qualcomm Incorporated and Qualcomm Technologies, Inc.'s (collectively, "Qualcomm") challenge to Arm's clawback of the document Bates-numbered ARMQC_02732276 (the "document"), and declare as follows:

1. I am over the age of 18. At the times relevant to this Declaration, I was Senior Director, Commercial Licensing on behalf of Arm Ltd. I currently am Senior Director, Segment Marketing on behalf of Arm Ltd.

2. ████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█ ████████████████████    █████████████████

█████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

4.      ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████

5.      ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

6.      ███████████████████████████████████████████

█████████████████████████████     █████████████████████████

███████████████████████████

7.      ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████



9.      The matters set forth in this Declaration are based on my personal knowledge, and if called as a witness, I could and would testify competently to them.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29 day of JUNE 2026, at __SAN JOSE, CA__

_____
Karthik Shivashankar

# Exhibit 3

( █████████████ )

| | |
|---|---|
| **From:** | Evangelatos, Peter |
| **To:** | QualcommvArm@dirllp.com; GRP-QCvARM; jying@morrisnichols.com; Murray, Travis |
| **Cc:** | #KE-ARM-Qualcomm; ycst_arm_qualcomm |
| **Subject:** | RE: QC/Arm - Document Produced At ARMQC_02732276 |
| **Date:** | Monday, June 1, 2026 3:40:00 PM |

Counsel,

As agreed at last Wednesday's meet and confer, we write to share the authority supporting Arm's position that ARMQC_02732276 is protected by privilege and contains third-party licensing terms that are protected from disclosure to Qualcomm. It is also more than 10 days since Arm sent the claw back notice under the Protective Order, and we have not received written confirmation of Qualcomm's compliance. Please confirm today that Qualcomm, its experts, and anyone else who received ARMQC_02732276 destroyed the document and documents referencing its contents, and provide a redacted version of Mr. Kennedy's supplemental report.



As to privilege, ARMQC_02732276 was created by ███████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████ Arm's May 20 privilege log also confirms as much, including that the title of the document is ███████████ ██ ████████████████████████████████████████████████████ ██████████████████████████████

Several courts have held that spreadsheets and other financial information created in similar circumstances are protected by the work product doctrine. *See, e.g.*, *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 6122012, at *3–4 (E.D. Va. July 16, 2019) (holding financial spreadsheets created by company employees at the request of in-house counsel to assist in evaluation of potential settlements are opinion work product); *Fair Isaac Corp. & myFICO Consumer Services, Inc., v. Experian Information Solutions Inc., et al.*, 2008 WL 11348223, at *5 (D. Minn. Nov. 3, 2008) ("[C]ourts have consistently held that . . . the processes and analyses used by a party to arrive at the settlement are protected by the work product doctrine, and it does not matter whether the analyses was performed by an attorney or an employee or agent of the party."); *Int'l Marine Carriers v. United States*, 1997 WL 160371, *2 (S.D.N.Y. Apr. 4, 1997) (documents related to settlement offers are work product and "the fact the document was authored by a non-attorney is inconsequential since it was created to assist in preparing for or avoiding impending litigation."); *Design with Friends, Inc. v. Target Corp.*, 2024 WL 4333114, at *2 (D. Del. Sept. 27, 2024) (documents created to support litigation finance decision are work product).

Courts have likewise recognized that financial spreadsheets created in similar circumstances fall within the protections of the attorney-client privilege. *See, e.g.*, *TP ST Acquisition, LLC v. Lindsey*, 2022 WL 252001, *7 (D. Kan. Jan. 26, 2022) (spreadsheet "summarizing information for a potential settlement structure … would, by its terms, almost necessarily relate to legal advice."); *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 6122012, at *3–4 (E.D. Va. July 16, 2019) (similar).

In addition to work-product and privilege protections, ████████████████████████

contained in ARMQC_02732276 are protected from disclosure to Qualcomm by both [REDACTED] third-party Protective Order (D.I. 616, 761) and denial of Qualcomm's motion to compel third-party Architecture License Agreement ("ALA") terms (D.I. 626, 761). As Qualcomm knows, it is the sensitive licensing information contained in [REDACTED] to Qualcomm, not merely the documents themselves. Accordingly, [REDACTED] Protective Order bars production or use of "competitively sensitive communications **and** [REDACTED]" (D.I. 616 at 1), which [REDACTED] represented—and the Court agreed—are among its [REDACTED] *See* 3/10/2026 Hr'g Tr. at 74:23–25, 84:24–25; D.I. 761. The Special Master likewise denied Qualcomm's motion to compel the third-party ALA terms, including [REDACTED] terms (D.I. 626), and the Court overruled Qualcomm's objections, thus denying Qualcomm access to that information. *See* D.I. 761; 3/10/2026 Hr'g Tr. at 94:7–11.

Despite this clear precedent and the Court's prior rulings, Arm will consider any authorities Qualcomm contends support its position, along with any documents Qualcomm contends bear on waiver and specific representations Qualcomm claims are inconsistent with Arm's privilege position. Please also send us the Bates numbers for the documents other than ARMQC_02732276 that Qualcomm believes also [REDACTED] You stated during Wednesday's meet-and-confer that Qualcomm had identified others.

Best,
Peter

**Peter Evangelatos**
════════════════════════════════════════

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900
════════════════════════════════════════

peter.evangelatos@kirkland.com

---

**From:** Evangelatos, Peter
**Sent:** Wednesday, May 20, 2026 9:08 PM
**To:** QualcommvArm@dirllp.com; GRP-QCvARM <GRP-QCvARM@paulweiss.com>; jying@morrisnichols.com; Murray, Travis <tmurray@morrisnichols.com>
**Cc:** #KE-ARM-Qualcomm <KE-ARM-Qualcomm@kirkland.com>; ycst_arm_qualcomm <ycst_arm_qualcomm@ycst.com>
**Subject:** QC/Arm - Document Produced At ARMQC_02732276

Counsel,

Pursuant to Paragraph 54 of the Protective Order (D.I. 84), Arm hereby notifies Qualcomm that the document beginning with Bates number ARMQC_02732276 was inadvertently produced. As reflected in the attached privilege log, ARMQC_02732276 is a [REDACTED] that is protected by attorney-client privilege and work-product protections. [REDACTED], shortly before the

trial in *Arm v. Qualcomm*.

ARMQC_02732276 is also protected from disclosure or production by ██████ protective order (D.I. 616) and the denial of Qualcomm's motion to compel the production of the ALA licensing terms for ████████ and others (D.I. 626). ██████ protective order bars the production of use of "competitively sensitive communications and ████████████████████████████████" D.I. 616. ████ told the Special Master and the Court that ██████████████████████████████████ ████████████████████████████ and specifically objected to Qualcomm having access to the "pricing," "commercial terms," and "licensing" terms in those agreements. 8/11/2025 ████ Ltr. Brief. ████████████████████████ fall squarely within all three categories of highly sensitive information ████ sought to protect. As Qualcomm is aware, the Special Master found that disclosure of ████ sensitive information, even if inadvertent, would result in great harm to ████ *see* D.I. 616, and the Court overruled in relevant part Qualcomm's objections to the Special Master's Order. D.I. 761; *see also* 3/10/2026 Hearing Tr. at 93:25-94:11. The Special Master also denied Qualcomm's motion to compel the production of all of Arm's third-party ALAs (D.I. 626), which Arm objected to in large part to protect its highly sensitive commercial terms with ██████ and other ALA licensees. The Court again overruled Qualcomm's objections. D.I. 761; *see also* 3/10/2026 Hearing Tr. at 93:25-94:11.

Under Paragraph 54 of the Protective Order, Qualcomm must accordingly destroy all copies of ARMQC_02732276, and any other documents reflecting the information contained in ARMQC_02732276, in the possession of Qualcomm, Qualcomm's counsel or its experts (and all individuals supporting such experts). As the parties have done in the past, please confirm when Qualcomm has completed that process. Please also provide a new version of Dr. Kennedy's supplemental report removing all references to ARMQC_02732276 and opinions based on that document.

We are disappointed and concerned by Qualcomm's cavalier decision to use the ALA licensing information in ARMQC_02732276 despite the ████ protective order and the denial of Qualcomm's motion to compel ██████ ALA terms. The use of that information not only violated those orders, but further raises concerns that Qualcomm disseminated and plans to use that information in a manner inconsistent with the enhanced protections the parties just recently ████████████ ████████████████████████████████████ D.I. 785. Arm would have insisted on similar protections for the ████████████████████████ if it had known Qualcomm would have access to, much less intended to use, those terms. Please confirm immediately that no one at Qualcomm has had access to ARMQC_02732276 or the third-party licensing terms in that document and that none of Qualcomm's outside counsel, its experts, or consultants shared that information with Qualcomm orally, via a screen share, or in writing.

The information Qualcomm located in ARMQC_02732276 and then used in Dr. Kennedy's report is some of Arm's most sensitive financial information, especially given the ████████████████ ████████████████████████████████. Please answer the questions below so that Arm can assess the potential harm caused by Qualcomm's conduct:

- Who (by name and by title) has seen or been briefed about the ████████████████████ in

ARMQC_02732276, regardless of the level of detail revealed?

- Who (by name and by title) has Qualcomm or its outside counsel shared the ███████ █████████ in ARMQC_02732276 with, regardless of the level of detail revealed?
- When did Qualcomm or its outside counsel first learn that ARMQC_02732276 included ███ ██████████████████?
- When did Qualcomm or its outside counsel decide to use the ██████████████ information in ARMQC_02732276 without first alerting████████████?
- Did Qualcomm or its outside counsel inform Dr. Kennedy of the █████ protective order and the motion to compel rulings at any point before Dr. Kennedy served his reports?

Best,
Peter

**Peter Evangelatos**

------------------------------------

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3291 **T** +1 516 528 6348
**F** +1 212 446 4900

------------------------------------

peter.evangelatos@kirkland.com

# Exhibit 4

( ██████████████████ )

REDACTED IN ITS ENTIRETY

# Exhibit 5

( █████████████████████ )

**From:** LoCascio, Gregg F.
**Sent:** Friday, June 5, 2026 11:44 AM
**To:** 'Nyarady, Catherine' <cnyarady@paulweiss.com>; Wilcox, Jason M. <jason.wilcox@kirkland.com>
**Cc:** Pronin, Michael <michael.pronin@kirkland.com>; *agaza@ycst.com <agaza@ycst.com>; jying@morrisnichols.com; kdunn@dirllp.com; emorgan@dirllp.com; Braly, Jacob <jbraly@paulweiss.com>; JHartley@dirllp.com
**Subject:** RE: Arm's claw back of ARMQC_02732276

Catherine,

Thank you for your email further explaining Qualcomm's position.  After considering your position and the documents you identified, Arm maintains its privilege claim for ARMQC_02732276.  As we have explained, ARMQC_02732276 was ███████████████████ ████████████████████████████████████████████████████████ ████████████████ ████████████████████████████████████████ █████████████████████████████████████████████████████████ ██████████████████ That ██████████████████████████████ is of no moment, as the cases I identified in my email on Monday make clear, and the contents of the document are intertwined with the █████████████████████████████████ If you have authority that contradicts those cases, please provide them.

I am not sure how Qualcomm can dispute ████████████████████ ███████████████████████████████████████████████████████. ██ ███████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ████████████████████████████ As you know, ███████████████████ ███████████████████████████████████████████ ██████ Whether Arm has characterized the █████████████████████████████ or acknowledged that ████████████████████████████████████████ █████████████████████████████████████████████████████████████ ███████████████████████████████████.

Neither of the cases you cite suggest that ARMQC_02732276 is not privileged and/or work product. Nor do those cases suggest that Arm must produce at least the potentially factual portions of those documents. *United States* v. *Dentsply Int'l, Inc.* concerned an interrogatory seeking facts that formed the basis of antitrust claims, and the court held that the responding party's attorney memoranda remained protected and only the facts—obtainable through proper discovery devices—had to be disclosed. 187 F.R.D. 152, 155 (D. Del. 1999). Here, the Court has consistently rejected Qualcomm's efforts to compel disclosure of the type of factual information contained in ARMQC_02732276, including granting ██████ a protective order against the disclosure of ██████ ██████████ in both the *Arm v. Qualcomm* litigation and in this case. In *Arconic Inc. v. Novelis Inc.*, the court confirmed the producing party's right to claw back inadvertently produced documents. 2019 WL 911417, at *1 (W.D. Pa. Feb. 26, 2019). *Arconic*'s observation that underlying facts may be discoverable applies where facts can be redacted and separated. The information in ARMQC_02732276 cannot be segregated from the ███████████████████████████████ ████████████████████████████████████ And, of course, the Court has already granted multiple protective orders and denied motions to compel the type of factual information that ARMQC_02732276 contains.

Arm also disagrees that it waived privilege. Arm's production of █████████████████ ███████████ ████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████ ██████ ARMQC_02732276 does not "contradict[] the story [Arm] now hopes to tell" or any statements that Arm made to the Court. Arm's statements to the Court accurately reflect how Arm put together and █████████████████████████████████████████ ████████████████████████████ in ARMQC_02732276 for a different purpose (a purpose that is protected by both attorney-client privilege and work product protections), and Qualcomm's theory ignores that Arm ████████████████████████ during the █████████████ ██████████ There is no inconsistency or sword/shield problem here, unlike in *Princeton Digital Image Corp. v. Office Depot, Inc.*, 2017 WL 3264068 (D. Del. Aug. 1, 2017) and *Synalloy Corp. v. Gray*, 142 F.R.D. 266 (D. Del. 1992).

Finally, Qualcomm is taking an unduly narrow view of at least the ██████ protective orders in this case and in *Arm v. Qualcomm*. ██████ protective order in this case bars production or use of "competitively sensitive communications ***and*** ████████████████████████████████████" (D.I. 616 at 1), which ██████ represented—and the Court agreed—are among its ████████████████ ██████ *See* 3/10/2026 Hr'g Tr. At 74:23-25, 84:24-25; D.I. 761. Those terms necessarily include ██████████████████████████████████████████████████ ███████████ please explain the basis for your position. ██████ likewise obtained a protective order against the production of any portion of its ████████ *See* No. 22-1146, D.I. 207. I also understand that when Qualcomm disclosed during trial in the *Arm v.* Qualcomm litigation that it intended to use one of the documents you identified, ARM_01426109, ██████ counsel appeared in court prepared to object before the issue was mooted by the Court not holding a remedial-phase trial. Regardless, none of the documents you identified in your letter disclosed information from █████████████ which is the information now seeks to use. Most, if not all, of the documents you identified predate

that ALA.

We also disagree with Qualcomm's incorrect and narrow interpretation of the PO dispute raised by ████ and Court's Orders. The Special Master entered a Protective Order barring the production or use of █████████████████████████████ D.I. 616 at 1. The Court also denied Qualcomm's motion to compel other third-party licensing information. We also disagree that Arm has produced ███████████████, as none of the documents Qualcomm cites include that specific information.

Best regards, Gregg

**Gregg LoCascio, P.C.**

**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W., Washington, D.C. 20004
T +1 202 389 5290  M +1 202 957 0590

gregg.locascio@kirkland.com

**From:** Nyarady, Catherine <cnyarady@paulweiss.com>
**Sent:** Monday, June 1, 2026 6:01 PM
**To:** LoCascio, Gregg F. <glocascio@kirkland.com>; Wilcox, Jason M. <jason.wilcox@kirkland.com>
**Cc:** Pronin, Michael <michael.pronin@kirkland.com>; *agaza@ycst.com <agaza@ycst.com>; jying@morrisnichols.com; kdunn@dirllp.com; emorgan@dirllp.com; Braly, Jacob <jbraly@paulweiss.com>; JHartley@dirllp.com
**Subject:** Arm's claw back of ARMQC_02732276

> **This message is from an EXTERNAL SENDER**
> Be cautious, particularly with links and attachments.

Gregg and Jason,

Thank you for meeting and conferring about Arm's claw back of ARMQC_02732276 on Wednesday.

You told us that Arm asserts this document is protectable as an attorney-client communication and work product, and identified ████████████████████████████ ████████████████████████████ As discussed, we do not see any basis for either asserted protection: ████████████ ████████████████████████████████████ ████████████████████████████████ ████████████████████████████ ███████████████████████████ ███████ In particular, Arm's Chief Legal Officer Spencer Collins has characterized the ████████████████████████████ and Arm has

asserted that the ██████████████ ██ discussed at that time was a ██████████ ████████████████████████████████████████████████████ ████████████████████████ QCVARM_1159525 at -527; QCVARM_1159488 at -489.

These facts do not support application of attorney-client privilege or work product protection. To the extent that Arm continues to disagree, please provide any additional caselaw or documents, beyond those already disclosed, that you intend to rely on.

Additionally, even if Arm could claim privilege over part of this document, the underlying facts of ██████████████████████████████████████████████ ████████████████████████████ cannot be privileged.  *See, e.g.*, *United States* v. *Dentsply Int'l, Inc.*, 187 F.R.D. 152, 156 (D. Del. 1999); *Arconic Inc.* v. *Novelis Inc.*, 2019 WL 911417, at *2 (W.D. Pa. Feb. 26, 2019).

This document provides ██████████████████████████████ █████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████ ███ *See* 2026.03.10 Hr'g Tr. at 88:1-3; D.I. 695 at 4; 2025.12.23 Ltr. from Arm to SM Rychlicki at 1; QCVARM_1159594 at -596; QCVARM_1159525 at -525-526; QCVARM_1159570 at -572; QCVARM_1159488 at -489.

██████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████████ ███████████ (ARMQC_02800008)—Arm cannot claim privilege over another ████████ that contradicts the story it now hopes to tell.  *See, e.g.*, *Princeton Digital Image Corp.* v. *Office Depot, Inc.*, 2017 WL 3264068, at *2 (D. Del. Aug. 1, 2017); *Synalloy Corp.* v. *Gray*, 142 F.R.D. 266, 270 (D. Del. 1992).  If ARMQC_02732276 ever was privileged, Arm has waived that privilege.

Additionally, there is no basis to claw the document back on confidentiality grounds.  ████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████ D.I. 377.  In both this litigation and the last, Arm has produced documents that include information about its relationships with ████████████████ despite not having to produce their agreements, including ██████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████ on its exhibit list for the *Arm* v. *Qualcomm* trial.  *See* ARM_01426109 (which was PTX-211, DTX-263, included among the materials considered by Arm's expert Mr. Schoettelkotte, and used as an exhibit at his deposition).  Arm did so notwithstanding that

██████ had won protective orders in that case preventing production of unredacted versions of its agreements themselves.  C.A. 22-1146 at D.I. 111, D.I. 207.  We also direct Arm's attention to the following documents produced in the prior litigation and this one: ARM_01232580; ARM_01256327; ARM_01256323; ARM_01256309; ARM_01255849; ARM_01255887; ARM_01256318; ARM_01311262; ARM_01304756; ARM_01304824; ARM_01256432; ARM_01256436; ARM_00064512; ARM_00064536; ARM_00064579; ARM_00085309; ARM_00085311; ARMQC_02602472; ARMQC_02602466; ARMQC_02602462; ARMQC_02602458; ARMQC_02602454; ARMQC_02602450; ARMQC_02602445; ARMQC_02724027; ARMQC_02724378; and ARMQC_02600803.

Again, we do not believe that the facts here, including Arm's own prior conduct, provide any basis for Arm's claw back.  Please let us know by Wednesday whether Arm will drop this claw back.  Otherwise, Qualcomm intends to move to compel re-production of ARMQC_02732276.

In the interim, we confirm that we have sequestered the document per paragraph 54(c) of the Protective Order.

Regards,
Catherine
**Catherine Nyarady** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3532 (Direct Phone) | +1 917 584 7388 (Cell)
cnyarady@paulweiss.com | www.paulweiss.com

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

# Exhibit 6

( ██████████████████ )

# REDACTED IN ITS ENTIRETY

# Exhibit 7

( █████████████████████ )

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., and          ) SEALED
QUALCOMM TECHNOLOGIES, INC.,)
                            )
            Plaintiffs,     )
                            ) C.A. No. 24-490(MN)
v.                          )
                            )
ARM HOLDINGS PLC,           )
                            )
            Defendant.      )


                Tuesday, March 10, 2026
                2:00 p.m.
                Motion Hearing


                844 King Street
                Wilmington, Delaware


BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge


APPEARANCES:

        MORRIS NICHOLS ARSHT & TUNNELL LLP
        BY:  JENNIFER YING, ESQ.

        -and-

        DUNN ISAACSON RHEE LLP
        BY:  KAREN DUNN, ESQ.
        BY:  WILLIAM ISAACSON, ESQ.
        BY:  ERIN J. MORGAN, ESQ.
        BY:  JENIFER N. HARTLEY, ESQ.

---

APPEARANCES (Cont'd):

        -and-

        PAUL WEISS
        BY:  CATHERINE NYARADY, ESQ.
        BY:  JACOB A. BRALY, ESQ.
        BY:  ADAM BASNER, ESQ.

            Counsel for the Plaintiffs


        YOUNG CONAWAY STARGATT & TAYLOR LLP
        BY:  ANNE SHEA GAZA, ESQ.
        BY:  DANIEL MACKRIDES, ESQ.

        -and-

        KIRKLAND & ELLIS LLP
        BY:  GREGG F. LoCASCIO, ESQ.
        BY:  JASON M. WILCOX, ESQ.
        BY:  JAY EMERICK, ESQ.
        BY:  KASDIN MITCHELL, ESQ.
        BY:  MEREDITH POHL, ESQ.
        BY:  MICHAEL PRONIN, ESQ.

            Counsel for the Defendant


        WALKER STEVENS CANNOM LLP
        BY:  HANNAH CANNOM, ESQ.

            Counsel for Apple


        WILSON SONSINI
        BY:  BRADLEY D. SORRELS, ESQ.

            Counsel for Ampere

---

APPEARANCES (Cont'd):

        SKADDEN ARPS SLATE MEAGHER & FLOM LLP
        BY:  JENNESS PARKER, ESQ.

            Counsel for Broadcom


        CONNOLLY GALLAGHER LLP
        BY:  SARA BARRY, ESQ.

            Conflicts Counsel


        _ _ _ _ _ _ _ _ _ _ _ _ _


            COURTROOM DEPUTY:  All rise.  The United States District Court for the District of Delaware is now in session.  The Honorable Maryellen Noreika presiding.

            THE COURT:  All right.  Good afternoon.  Please be seated.  Let's start with some brief introductions.

            MS. YING:  Good afternoon Your Honor, Jennifer Ying from Morris Nichols Arsht & Tunnell on behalf of the plaintiffs.  I'm also joined by Travis Murray from Morris Nichols and then at counsel table from Dunn Isaacson & Reed, we have Karen Dunn, Bill Isaacson, Erin Morgan, as well as Jennifer Hartley.  And then from Paul Weiss we have Kathy Nyardy, Jacob Braley and Adam Basner.  And we also have

---

conflicts counsel from Connolly Gallagher, Sara Barry.

            THE COURT:  Okay.

            MS. GAZA:  Good afternoon, Your Honor.  Anne Gaza from Young, Conaway on behalf of Arm.  I'm joined by a colleague, Daniel Mackrides, as well as Kirkland & Ellis, Gregg LoCascio, Jason Wilcox, Jay Emerick, Kasdin Mitchell, Meredith Pohl, and Michael Pronin.

            Thank you.

            THE COURT:  Okay.  Thank you.

            All right.  So we have your papers and let me just get this out of the way so hopefully it doesn't come out later when I get tired from the arguments, but you all submitted 11,000 pages on objections for discovery.  That isn't all that you gave me for summary judgment and Daubert and that is excessive, 11,000 pages for discovery objections.  And you're not even objecting to absolutely everything the Special Master did.  And what that tells me is that nobody is seriously thinking about making decisions based on what's reasonable and what's necessary.  And you're lucky that your client is willing to pay for a bunch of stuff that seems unnecessary and disproportionate, but you're not lucky that I am now teetering on forming the impression that you have no respect for my time and you're not litigating in good faith.

            Now, so you guys can be reasonable going forward

73

MS. DUNN: In any event, the parties have agreed, the third parties have agreed that if they remain in the case that the -- those will be unredacted and then just to put on the record, and I don't think this will run afoul of the conflicts counsel because I'm just reporting out what was told to be reported to the Court, Apple is here just for ALAs, not TLAs, so that's separate. And they're still confirming with their client, but that is our current working belief.

THE COURT: Okay. So whoever is representing

74

Apple, do you need more time, is that what you were suggesting? You can come up.

MS. CANNOM: Thank you, Your Honor.

THE COURT: I just didn't want you to come up before because I didn't want to interfere with yelling at these people. I didn't want you in the crossfire. I appreciate the agreement that has come up, so no yelling.

MS. CANNOM: Good afternoon, Your Honor. Hannah Cannom on behalf of Apple.

I think we can confirm at this point that we are in similar situation to ▮▮▮▮▮. We have gone through the list with Qualcomm's counsel of what they're looking for in the TLAs and we can confirm that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ So as to the TLAs, I think that there is no need for our agreements and I think that Qualcomm will agree with that.

We still have an issue with the ALA which I don't know if you would like to deal with now or deal with separately, but I'm happy to be heard on that.

THE COURT: Isn't that the same thing?

MS. CANNOM: No, because the ALA doesn't contain and list provisions, so they're using it for the implied good faith and fair dealing clause. So things like our rates and our entire ALA which are our ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ --

75

THE COURT: They claim that they've already said you don't license.

MS. CANNOM: Correct.

THE COURT: But I am going to allow summary judgment on it. Okay. You can tell me whatever you want to say.

MS. CANNOM: Thank you. So for the -- I think we have heard you say this afternoon that that claim is likely baseless and that it doesn't really --

THE COURT: I didn't go that far.

MS. CANNOM: Perhaps baseless. And here what they're trying to do is they're trying to read a ▮▮▮ ▮▮▮▮▮▮▮▮▮▮ into that implied good faith and fair dealing where they're trying to get discovery on all of the ALAs which are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ They have a thirty-year relationship behind it for Apple in terms of negotiating these agreements.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ right, so it's really not an apples to apples comparison here. And so it isn't the type of thing that they should be able to get discovery into all these different agreements because of this implied good faith and fair dealing clause.

THE COURT: Okay.

76

MS. CANNOM: Lastly I would say to the extent that there is anything that they're looking for in the ALAs, it sounds like what they are looking for are the rates and that is -- you know, ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ and so there shouldn't really be any discovery into the entirety of the agreement. We have been offering different things to them in terms of, you know, interrogatories or anything to provide to them instead of producing the entire agreement and we haven't gotten any real traction with them on that. And it seems to be there has to be a way that we can give them something that they want to the extent it is relevant, which I think the Special Master correctly concluded it is not, while protecting what we believe to be our most sensitive agreement. And to give that agreement to Qualcomm when the outcome of this case would be the likelihood of a new negotiation with them would be likely harmful for us. And I don't think that point can be overstated, especially with a protective order.

MS. YING: Your Honor, I don't know if you need the other third parties in here for that. I don't know, but to the extent that the stuff implicates the stuff that Arm thought was sensitive, I don't know if they're okay with everyone else in the room hearing it, that's all. I wanted to raise that as a confidentiality concern first.

81

THE COURT: I think he should be able to stay so he can understand what the arguments are in case I rule against him. So I think that's fine. And I will just ask you to not -- go slowly in what you're saying so that if there is an objection on confidentiality somebody can make it.

MS. CANNOM: Wonderful. Thank you, Your Honor.

MS. YING: Your Honor, thank you for that.

So on the ALAs, I think two points that I want to make first of all. Which is I think as we said in our objections, Arm has put the ALAs for ▮ directly at issue because they want to defend against the claims that we have on the breach of good faith and fair dealing as well as the UCL claim that they have -- what they have offered us are market rates. And this was in our objections. We put in the letter that they submitted to us, and if Your Honor has the appendix, this is at A-541 is the letter. And so they want to argue --

THE COURT: I got -- it's broken up here, I have to figure out which one to open up.

MS. YING: I believe it's in Volume I. I could be wrong. I'm sorry, no, it's in Volume III.

THE COURT: You said 541?

MS. YING: 541, yes.

THE COURT: Okay.

82

MS. YING: Let me grab that.

THE COURT: I think you're right, it's Volume III.

MS. YING: So they want to argue that they've put forward a good faith offer, that's the quote from their letter at 541. And on page 540 in their letter, they talk about two other entities, company A and company B who have ALAs that they do not object to the production of.

THE COURT: So are we going to mark this portion of the transcript right now. We'll mark this portion under seal and then what I would ask you to do is go through line by line to remove the redactions for anything that is more generic.

MS. YING: Appreciated, Your Honor.

THE COURT: So now if you don't want to say A and B.

MS. YING: I'm not sure that the other people in this room can hear that including Apple's counsel.

THE COURT: Okay. Stick with A and B.

MS. YING: So A and B, and that's referenced on page 540 on line 3, so Arm has said that they don't object to the production of those.

THE COURT: I'm sorry, 540 to me is just a page that says Exhibit 27.

MS. YING: I'm sorry, A540 in Volume III should

83

be --

THE COURT: A540 is just the exhibit page. Is it Exhibit A541?

MS. YING: No, this is DI-661.

THE COURT: It must be one of the other appendices.

MS. YING: One of the other Volume III appendices.

THE COURT: What motion is this?

MS. YING: This is our objections to the Special Master's --

THE COURT: Yeah, but everything I have in my file says objection to the order on third parties. Objection to the motion to compel. I have no idea. So give me the DI number.

MS. YING: The DI number for the appendix is 661.

THE COURT: The DI number for the objection?

MS. YING: 657.

THE COURT: Okay. 540.

MS. YING: It starts with Dear Special Master Rychlicki on that page. So if you look to the third line of that letter, Arm says that they do not object to production of company A and company B's ALAs subject to the protections below. And the reason why they want to do that is because

84

they want to argue that they have made a good faith offer and that the offer that they have given represents the current market rates.

The problem with that is we know that there are more entities with lead time licenses than just company A and company B that they're willing to produce. Again, this goes back to the same argument that we had with the TLAs is you can't cherry pick which ones you want to rely on for your benchmark, we need to be able to see all of them.

And we know from the deposition testimony of many of Arm witnesses that ▮▮▮▮▮▮ ▮▮▮▮▮▮ and so that is what makes their ALA relevant.

I think we heard for the first time from Ms. Cannom that we were willing to perhaps answer an interrogatory or something like that. Obviously these are not things that we had heard or discussed with Apple before, so to the extent that, you know, that is something that we can work out with them, we're happy to talk to them about that, but the relevance is because Arm has directly made it the case that they want to argue that what they have offered to Qualcomm is a current market rate and there is no way for us to test that.

THE COURT: What is it -- I mean, I think Apple made -- Apple's counsel made a compelling argument that these agreements are ▮▮▮▮▮▮ and include very

85

specific confidential information. So do you need the whole -- I'm not even saying I would give you any of this, but if I were to entertain it, you want the whole agreement?

MS. YING: Well, I don't know in this context what ███████████████████ could just mean we have negotiated specific provisions, for example, for the length or, you know, for the scope or for the limitations on liability --

THE COURT: It seems like what I understand these are, ██████ in terms of the technology, too, like this core and we're going to use it for something. You know, I can certainly see why Apple might not be so keen on giving that over if they're working on a particular technology using a particular core, they're like we really don't feel like giving that over to our competitors.

MS. YING: So let me clarify, the ALA allows the licensee to make their own core, it's not licensing a core from Arm. To the extent --

THE COURT: That's even worse, then, Apple gets to make its own core and tell people and have it disclosed.

MS. YING: Well, I think it's public that ████ ████████████ I think that's public information. There has been news articles about that.

THE COURT: What do you need? You want the whole long agreement?

86

MS. YING: No, I think when we need is to know how to test current market rates so whether that means --

THE COURT: You got to tell me what you want because I can't just say in a vacuum sure, you can have -- I'm not going to say you can have an entire hundred page agreement because I don't think that there has been any showing that that would be, you know, appropriate or, you know, reasonable.

MS. YING: Understood.

THE COURT: But I have -- like part of the problem I have here is you all want me to rule on things. I don't even know what I'm ruling on. No one has handed me a document and said look, this is forty pages and these are the things we need.

Now I totally appreciate that you guys all agreed to some of that stuff with the TLA and the third parties, but what do you want? You have other ALAs, you have your own ALA, what is it that you think you need from Apple?

MS. YING: So I think we would need the pricing as well as anything else that bears on market rates.

THE COURT: Pricing for what?

MS. YING: So pricing for what they would be paying to -- so as I understand the way that ALA works is you ████████████████████████████

87

██████████ So whatever the ████████████ ████████████████████, and anything else that bears on market rates for that pricing, so whether it means that they get, for example, ████████ █████████████████████████████ ████████████████████████████ ██████ so that's what I would say.

THE COURT: Okay. Let me hear from defendant first and then I'll let you.

MR. EMERICK: Good afternoon, Your Honor. Jay Emerick for Arm. This relates to the good faith claim to set the stage. That's why they're seeking these ████ ███████████████████████████ ██

THE COURT: I got that. I think Apples' counsel told me that and she was quite clear. I got it.

MR. EMERICK: So what is the claim that they're making that they want the ALA for? They sent us a letter, they say royalty rates, these are not commercially viable. Okay. You do not need all of our ████████ to show or prove your claim that you think are rates aren't commercially viable. If it were true that our rates weren't commercially viable, they could show, they could say hey, it would cost us X dollars to make a chip under these rates and here is why that wouldn't be competitive with what other folks have

88

on the market. They can't do that because what we proposed was commercially viable and it's because we based -- we benchmarked an offer for them off of two companies --

THE COURT: And, in fact, some company, some poor chump company could accept super high rates and they would be commercially viable if someone took them.

MR. EMERICK: And maybe they think that company A and B are chumps, but we gave them benchmark rates off of A and B, so they're obviously commercially viable.

The concern that we have on the Arm side with respect to this information being disclosed is that as we see, we are ██████████████████████████████ And so we are concerned about Qualcomm having ██████████ █████████████████████ by having access to everyone else's rates. ████████████████████████

And then with respect to the company A and B licenses, because we benchmarked off of them, we have agreed to produce those, but we want some enhanced protections that the outside counsel that gets those isn't the same outside counsel that's ████████████████████████ ██████████ So that's what we think is a reasonable offer for dealing with, much like the sort of sequestration that Ms. Dunn talked about with respect to TLAs.

THE COURT: Have you talked with -- and you're saying that that would only be if I were to allow the ALAs

89

to be produced?

MR. EMERICK: Correct.

THE COURT: Okay.

MS. CANNOM: Thank you, Your Honor. Just a few additional points. I think at one point it became clear in the last trial was just how strongly Qualcomm views Apple as competition here because of the speed of our processors and what we can do with them. We're differently situated than Qualcomm in that we use both hardware and software to create our cores and our hardware and software is intertwined, right, whereas they're creating the hardware for an Android platform or an Apple platform or whatever it is. It's not an apples to apples comparison here in looking at --

THE COURT: Apples to Qualcomm.

MS. CANNOM: It's an Apple to Qualcomm agreement, they're very different. And our agreements are very different overall. Even what they're asking for here just doesn't -- it just isn't going to be useful and it's so proprietary to us that any barely marginal relevance that it might have is overtaken by the concern we have by giving this to them especially when they're negotiating a new deal as Arm just said with Arm as a resolution of this case. I also say that I think, you know, we have been fighting about this a long time. We have offered a lot of different things. I don't know if I ever said an interrogatory to

90

Ms. Ying, but I did say a lot of different things that we have been trying to do to get something to them.

Discovery has closed a long time ago. I don't think that producing this right now would benefit the Court or anyone else likely given that they have said that they have information that they need to present their summary judgment motions for these matters already.

You know, this is very proprietary information even within Apple. It is information that we keep very closely guarded and I just don't see the basis here to demand an agreement in a case where ███████████████. They're just trying to say it wasn't good faith because they were ████ something for something very different to begin with.

THE COURT: Thank you.

You get the last word.

MS. YING: I think we can possibly simplify all this which is if Arm agrees that they're not going to make the argument that what they are offering for ███ is quote unquote fair market rates --

THE COURT: The problem I have with your argument is I totally understand your argument if you're saying there is a ███████████████, I get it, that makes sense because how are you supposed to know if you're getting ███████████████ It's very different to say you're giving me

91

something that's not commercially viable, and they say okay, here is two people that took it and they think it's commercially viable. That's very different. And I do think that he was correct -- I'm sorry, I can't remember your name.

MR. EMERICK: I'm sorry, Your Honor. Mr. Emerick.

THE COURT: You were persuasive, but when he said look, all I have to do is say I think it's -- I thought it was commercially viable, other people think it's commercially viable, you don't need to know that somebody got a better deal, like let's say Apple got a deal that was, you know, 75 percent of whatever these other people did or 50 percent of what was offered to you, that doesn't make it not commercially viable. So it's different to me saying I need the universe of things for this issue versus the other.

MS. YING: To that point, Your Honor, I would say that company A and company B that are listed on page A-540, they are not the same kind of companies that Qualcomm is. As far as we are aware, they do not make hardware, they do not make chips, that's what makes them different from us. And Apple does make hardware and chips, so we would say that is more comparable in that regard.

THE COURT: What was the basis for bringing this claim because you obviously didn't know what rates had been

92

offered to anyone before you brought the claim, so what was your basis for saying it was commercially unreasonable or whatever?

MS. YING: Well, I don't think at the time we brought the complaint we made the statement about commercial viability, that was I think in part of the December 2025 discussions between the parties.

THE COURT: What was the basis of that?

MS. YING: I'm sorry?

THE COURT: What's the basis of that?

MS. YING: The December 10th statement?

THE COURT: Yeah.

MS. YING: I'm going to have to refer to Ms. Nyardy on that one if that's okay with the Court.

THE COURT: I guess what I'm saying is you can certainly make your case without knowing what every single competitor out there was offered or received as a license.

MS. YING: Right. But I think the other part to keep in mind, Your Honor, is that this is a very limited universe. As far as we understand, there are ███████████ ███████████████████████ based upon the testimony that we have received, so what we're talking about is ███ ███████████ This is not a big sort of thing that we're asking about. I mean, the number of data points is very small so I think that factors heavily into what, quote

93

unquote, current market rates are.

But as I said before, if Arm doesn't make that argument, then I don't think we're in this position, ▮▮▮

THE COURT: We have got to wrap this up. It's almost five o'clock and they still have more issues.

MS. YING: On the issue of counsel advising Qualcomm on ▮▮▮ we have not been involved in that. We have not been advising that, so I don't think that is a concern, but to the extent we need a more limited universe of people, we're happy to discuss that as an issue if that's a concern, you know, of the third party.

THE COURT: Okay.

MS. YING: Let me ask Ms. Morgan to answer your question.

THE COURT: That's okay. That was actually -- I understood the arguments on all sides of that more than I understood many of them. So thank you all for that. But I'm going to overrule the objections.

▮▮▮

THE COURT: I'm going to overrule the objections

94

to the ALA. I think that that is a different issue than the TLAs with respect to needing to have the universe of all of the agreements. If the argument is it wasn't commercially reasonable, I think there is plenty of ways that plaintiff could try to prove that, and you know, some of it might be with just explaining why you didn't view it as commercially reasonable for the plaintiff. I don't think having what other people got is necessarily going to be relevant or useful.

So those are overruled. The protective order is granted. I don't remember what the status is. But is that okay for Apple and ▮▮▮, anything else you all have?

MS. CANNOM: Nothing more, Your Honor.

MR. SORREL: Nothing more, Your Honor.

THE COURT: Then you are excused. Thank you.

Okay. So what's left in the objections here?

95

96



133

a nice job between the rog and 30(b)(6) objection to never be pinned down as to the actual universe of these communications because they want to say their CEO says I didn't do it. I'm sure you didn't. I suspect a lawyer or a media person or somebody else did it.

MS. DUNN: For clarity, that is not accurate on the 30(b)(6). But one thing for the Court because this might help, our claim is based on the termination letter. And I think the reason Mr. Isaacson talked about it being confidential is normally the termination letter would be sent to a party. We're not saying we need your press about Qualcomm or about this case because I'm sure they do tons of press about Qualcomm and about this case. That's fine. The issue is they specifically wanted the customers and the public to know that termination was sixty days out. And by the way, that's not even a remedy they could have gotten in that trial. I just want to level set that we have been targeted at that --

THE COURT: I know, but you know what, at some point, you guys ask for so much, I can't make these fine tuning. When I said everybody can have everything, you said that sounds great to me, so I'm going with you, sounds great to me, you can produce stuff, they can produce stuff, and I can go get something to drink, just some water. I'm a little tired.

134

MS. DUNN: That sounds great, Your Honor.

THE COURT: That's it. Thank you.

COURTROOM DEPUTY: All rise. Court is in recess.

(Court recessed at 5:48 p.m.)

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Dale C. Hawkins
Official Court Reporter
U.S. District Court

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 29, 2026, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jennifer Ying
Travis Murray
Morris, Nichols, Arsht
& Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
Connolly Gallagher LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
Dunn Isaacson Rhee LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
William T. Marks
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
wmarks@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Paul, Weiss, Rifkind,
Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com

grp-qcvarm@paulweiss.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendant Arm Holdings plc*

2