IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,
  a Delaware corporation; and
QUALCOMM TECHNOLOGIES, INC.,
  a Delaware corporation,

        Plaintiffs,

    v.

ARM HOLDINGS PLC, f/k/a ARM LTD.,
  a U.K. corporation,

        Defendant.

**REDACTED - PUBLIC VERSION**
(Filed July 10, 2026)

C.A. No. 24-490-MN
(CONSOLIDATED)

██████████████████

**DECLARATION OF ADAM JANES IN SUPPORT OF ARM LTD.'S
CONCISE STATEMENT OF FACTS IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT ON ITS DEFENSES OF
STATUTE OF LIMITATIONS, CLAIM PRECLUSION, AND CLAIM SPLITTING**

I, Adam Janes, declare as follows:

I am an attorney with the law firm of Kirkland & Ellis LLP, counsel for Arm Holdings plc and Arm Ltd. in the above referenced action. I submit this declaration in support of Arm Ltd.'s Concise Statement of Facts in Support of its Motion for Summary Judgment on its Defenses of Statute of Limitations, Claim Preclusion, and Claim Splitting.

1.     Attached as **Exhibit 1** is a true and correct excerpted copy of the September 13, 2023 Arm Holdings plc Prospectus, bearing Bates stamp ARM_01429134.

2.     Attached as **Exhibit 2** is a true and correct excerpted copy of a U.S. Securities and Exchange Commission Form 20-F for Arm Holdings plc for the fiscal year ended March 31, 2024, bearing Bates stamp ARMQC_02720456.

3.      Attached as **Exhibit 3** is a true and correct excerpted copy of Plaintiffs' Fifth Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1, 2, 5– 9), dated May 15, 2026. [███████████████]

4.      Attached as **Exhibit 4** is a true and correct excerpted copy of the July 9, 2025 deposition transcript of Jignesh Trivedi. [███████████████]

5.      Attached as **Exhibit 5** is a true and correct excerpted copy of the August 8, 2025 Expert Report of Patrick F. Kennedy, Ph.D. [███████████████]

6.      Attached as **Exhibit 6** is a true and correct excerpted copy of the September 5, 2025 Rebuttal Expert Report of Michael C. Brogioli, Ph.D. [███████████████]

7.      Attached as **Exhibit 7** is a true and correct excerpted copy of the June 20, 2025 deposition transcript of Martin Weidmann. [███████████████]

8.      Attached as **Exhibit 8** is a true and correct excerpted copy of the July 7, 2025 deposition transcript of Aparajita Bhattacharya. [███████████████]

9.      Attached as **Exhibit 9** is a true and correct excerpted copy of the June 25, 2025 deposition transcript of Gerard Williams. [███████████████]

10.     Attached as **Exhibit 10** is a true and correct copy of the May 30, 2013 Architecture License Agreement between Arm Ltd. and Qualcomm, bearing Bates stamp ARM_00055357. [███████████████]

11.     Attached as **Exhibit 11** is a true and correct copy of a May 20, 2022 email chain between Vivek Agrawal and Jignesh Trivedi, bearing Bates stamp QCARM_3059661. [███████████████]

12.     Attached as **Exhibit 12** is a true and correct excerpted copy of the October 25, 2023 deposition transcript of Jignesh Trivedi in C.A. No. 22-1146. [███████████████]

13.     Attached as **Exhibit 13** is a true and correct copy of a September 26, 2022 letter from Spencer Collins to Ann Chaplin, bearing Bates stamp ARM_01241472. [█████████ ████ ]

14.     Attached as **Exhibit 14** is a true and correct copy of an October 12, 2022 email chain between Vivek Agrawal and Jignesh Trivedi, bearing Bates stamp ARM_01020193. [███████████████ ]

15.     Attached as **Exhibit 15** is a true and correct copy of an October 10, 2022 letter from Ann Chaplin to Spencer Collins, bearing Bates stamp QCARM_7484465. [█████████ ████ ]

16.     Attached as **Exhibit 16** is a true and correct excerpted copy of the July 11, 2025 deposition transcript of Ann Chaplin. [███████████ ]

17.     Attached as **Exhibit 17** is a true and correct excerpted copy of the April 30, 2026 deposition transcript of Ann Chaplin. [███████████ ]

18.     Attached as **Exhibit 18** is a true and correct copy of an October 13, 2022 email chain between Vivek Agrawal and Jignesh Trivedi, bearing Bates stamp QCARM_7473826. [███████████ ]

19.     Attached as **Exhibit 19** is a true and correct excerpted copy of the March 5, 2024 Motion to Amend Hearing Transcript in C.A. No. 22-1146. [███████████ ]

20.     Attached as **Exhibit 20** is a true and correct copy of a December 5, 2022 letter from Ann Chaplin to Spencer Collins attaching a November 3, 2022 letter from Ann Chaplin to Spencer Collins, bearing Bates stamp ARM_00025401. [███████████ ]

21.     Attached as **Exhibit 21** is a true and correct copy of a December 6, 2022 letter from Spencer Collins to Ann Chaplin, bearing Bates stamp ARM_01241565. [███████████ ]

22.    Attached as **Exhibit 22** is a true and correct copy of a January 3, 2023 letter from Ann Chaplin to Spencer Collins, bearing Bates stamp ARM_01231614. [███████████████]

23.    Attached as **Exhibit 23** is a true and correct excerpted copy of the March 10, 2026 Motion Hearing Transcript. [███████████]

24.    Attached as **Exhibit 24** is a true and correct excerpted copy of the January 22, 2026 Status Conference Hearing Transcript. [███████████]

25.    Attached as **Exhibit 25** is a true and correct excerpted copy of the March 12, 2026 Motion Hearing Transcript. [███████████]

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 1st day of July 2026 at Chicago, Illinois

/s/ Adam Janes
Adam Janes

# Exhibit 1

424B4 1 d550931d424b4.htm 424B4

Table of Contents

Filed Pursuant to Rule 424(b)(4)
Registration No. 333-274120

# 95,500,000 American Depositary Shares
# (Representing 95,500,000 Ordinary Shares)



This is an initial offering of American depositary shares ("ADSs") representing ordinary shares of Arm Holdings plc.

All of the ADSs to be sold in this offering are currently held by the selling shareholder identified in this prospectus. We are not selling any of the ADSs in this offering and will not receive any proceeds from the sale of the ADSs by the selling shareholder in this offering. Each ADS represents the right to receive one ordinary share, nominal value £0.001 per share, and may be evidenced by American depositary receipts ("ADRs").

Prior to this offering, there has been no public market for the ADSs or our ordinary shares. The initial public offering price per ADS is $51.00. Our ADSs have been approved for listing on the Nasdaq Global Select Market ("Nasdaq") under the symbol "ARM".

We are a "foreign private issuer" as defined under the U.S. federal securities laws and, as such, will be subject to reduced public company reporting and stock exchange governance requirements. See "Management and Executive Remuneration—Foreign Private Issuer Exemption" for additional information.

SoftBank Group Corp. ("SoftBank Group") is expected to beneficially own approximately 90.6% of our outstanding ordinary shares following the completion of this offering (or approximately 89.9% if the underwriters exercise in full their option to purchase additional ADSs from the selling shareholder). As a result of SoftBank Group's ownership, after the completion of this offering, we will be a "controlled company" within the meaning of Nasdaq rules. See "Management and Executive Remuneration—Controlled Company Status."

Advanced Micro Devices, Inc., Apple Inc., Cadence Design Systems, Inc., Google International LLC, Intel Corporation, MediaTek Inc.'s affiliated entities, NVIDIA Corporation, Samsung Electronics Co., Ltd., Synopsys, Inc. and TSMC Partners, Ltd. (collectively, the "Cornerstone Investors") have, severally and not jointly, indicated an interest in purchasing up to an aggregate of $735 million of the ADSs offered in this offering at the initial public offering price and on the same terms and conditions as the other purchasers in this offering. Because these indications of interest are not binding agreements or commitments to purchase, any of the Cornerstone Investors may determine to purchase more, fewer, or no ADSs in this offering, or the underwriters may determine to sell more, fewer, or no ADSs to any of the Cornerstone Investors. The underwriters will receive the same underwriting discount on any ADSs purchased by the Cornerstone Investors as they will from the other ADSs sold to the public in this offering.

**Investing in our ADSs involves a high degree of risk. Before buying any ADSs, you should carefully read the discussion of material risks of investing in our ADSs in "Risk Factors" beginning on page 21 of this prospectus.**

|  | PER ADS | TOTAL |
|---|---|---|
| Initial public offering price | $ 51.00 | $4,870,500,000 |
| Underwriting discounts and commissions | 1.02 | 97,410,000 |
| Proceeds, before expenses, to the selling shareholder | 49.98 | 4,773,090,000 |

The underwriters may also exercise their option to purchase up to an additional 7,000,000 ADSs from the selling shareholder at the initial public offering price, less the underwriting discounts and commissions, for 30 days after the date of the final prospectus. We will not receive any proceeds from the sale of such additional ADSs by the selling shareholder.

Raine Securities LLC is acting as our financial advisor in connection with this offering.

The underwriters expect to deliver the ADSs against payment in U.S. dollars to purchasers on or about September 18, 2023.

**Neither the Securities and Exchange Commission nor any U.S. state securities commission has approved or disapproved of these securities or passed upon the accuracy or adequacy of this prospectus. Any representation to the contrary is a criminal offense.**

| **Barclays** | **Goldman Sachs & Co. LLC** | **J.P. Morgan** | **Mizuho** |
|---|---|---|---|

*(in alphabetical order)*

| **BofA Securities** | **Citigroup** | **Deutsche Bank Securities** | **Jefferies** |
|---|---|---|---|
| **BNP PARIBAS** | **Credit Agricole CIB** | **MUFG** | **Natixis** | **Santander** | **SMBC Nikko** |

| BMO Capital Markets | Daiwa Capital Markets America | Guggenheim Securities | HSBC | IMI - Intesa Sanpaolo | Independence Point Securities |
|---|---|---|---|---|---|
| KeyBanc Capital Markets | Loop Capital Markets | Ramirez & Co., Inc.    Rosenblatt | SOCIETE GENERALE | TD Cowen | Wolfe | Nomura Alliance |

The date of this prospectus is September 13, 2023.

ARM_01429134

Table of Contents

**Neither we, the selling shareholder nor the underwriters have authorized anyone to provide you with information that is different from that contained in this prospectus or in any free writing prospectus we may authorize to be delivered or made available to you. Neither we, the selling shareholder nor the underwriters take any responsibility for, or provide any assurance as to the reliability of, any other information that others may give you. We, the selling shareholder and the underwriters are offering to sell ADSs and seeking offers to purchase ADSs only in the U.S. and certain other jurisdictions where offers and sales are permitted. The information contained in this prospectus is accurate only as of the date on the cover page of this prospectus, regardless of the time of delivery of this prospectus or any sale of ADSs.**

For investors outside the U.S.: Neither we, the selling shareholder nor any of the underwriters have taken any action to permit this offering or possession or distribution of this prospectus in any jurisdiction where action for that purpose is required, other than in the U.S. You are required to inform yourselves about and to observe any restrictions relating to this offering and the distribution of this prospectus.

We are incorporated under the laws of England and Wales and a majority of our outstanding securities is owned by non-U.S. residents. Under the rules of the U.S. Securities and Exchange Commission (the "SEC"), we are eligible for treatment as a "foreign private issuer." As a foreign private issuer, we will not be required to file periodic reports and financial statements with the SEC as frequently or as promptly as domestic registrants whose securities are registered under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

## ABOUT THIS PROSPECTUS

Prior to the completion of this offering, we underwent a corporate reorganization described under the section titled "Corporate Reorganization," pursuant to which Arm Limited became a wholly owned subsidiary of Arm Holdings Limited, a holding company with nominal assets and no liabilities, contingencies or commitments, which has not conducted any operations prior to this offering other than acquiring the entire issued share capital of Arm Limited. On September 1, 2023, Arm Holdings Limited re-registered as a public limited company and changed its name from Arm Holdings Limited to Arm Holdings plc.

Unless otherwise indicated or the context otherwise requires, in this prospectus, "Arm," the "Company," "we," "us" and "our" refer to (i) Arm Limited and its consolidated subsidiaries prior to the completion of our corporate reorganization, (ii) Arm Holdings Limited and its consolidated subsidiaries after the completion of our corporate reorganization and prior to the re-registration of Arm Holdings Limited as a public limited company and (iii) Arm Holdings plc and its consolidated subsidiaries after the re-registration of Arm Holdings Limited as a public limited company. See "Corporate Reorganization" and "Description of Share Capital and Articles of Association."

## NOTE REGARDING TRADEMARKS, TRADENAMES AND SERVICE MARKS

This prospectus includes trademarks, tradenames and service marks, certain of which belong to us and others that are the property of other organizations. Solely for convenience, trademarks, tradenames and service marks referred to in this prospectus appear without the ®, TM and SM symbols, but the absence of those symbols is not intended to indicate, in any way, that we will not assert our rights or that the applicable owner will not assert its rights to these trademarks, tradenames and service marks to the fullest extent under applicable law. We do not intend our use or display of other parties' trademarks, tradenames or service marks to imply, and such use or display should not be construed to imply, a relationship with, or endorsement or sponsorship of us by, these other parties.

ii

ARM_01429139

Table of Contents

**Corporate Information**

Arm Holdings plc was incorporated as a private limited company with the legal name Arm Holdings Limited under the laws of England and Wales on April 9, 2018, with the company number 11299879. Arm Holdings Limited re-registered as a public limited company under the laws of England and Wales on September 1, 2023 and changed its name to Arm Holdings plc.

Arm Limited was incorporated as a private limited company with the legal name Widelogic Limited under the laws of England and Wales on November 12, 1990 with the company number 02557590. On December 3, 1990, Widelogic Limited changed its company name to Advanced RISC Machines Limited, and, on May 21, 1998, it changed its company name to Arm Limited (at which time it was a wholly owned subsidiary of Arm Holdings plc with the company number 02548782). Our business was initially operated through Arm Holdings plc with the company number 02548782, which was previously an independent publicly traded corporation until its acquisition in September 2016 by SoftBank Group. On March 19, 2018, as a part of a reorganization, Arm Holdings plc with the company number 02548782 re-registered as a private limited company and was renamed SVF HoldCo (UK) Limited, which became a subsidiary of SoftBank Vision Fund L.P. ("SoftBank Vision Fund"), which retained an approximate 25% interest in our company with the remainder beneficially held by SoftBank Group. In August 2023, a subsidiary of SoftBank Group acquired substantially all of SoftBank Vision Fund's interest in Arm Limited at a purchase price of approximately $16.1 billion, with the associated payments to be made in installments over a two-year period. The purchase price was established by reference to the terms of a prior contractual arrangement between the parties. Accordingly, prior to this offering, SoftBank Group beneficially owns substantially all of our outstanding shares. Our registered office is 110 Fulbourn Road, Cambridge, Cambridgeshire, CB1 9NJ, U.K., and the telephone number at that office is +44 (1223) 400 400.

The principal office for Arm Inc., our U.S. subsidiary, is located at 120 Rose Orchard Way, San Jose, CA 95134, and our telephone number at that office is +1 (408) 576-1500.

Our website address is www.arm.com. We have included our website address in this prospectus solely as an inactive textual reference. Information contained on, or that can be accessed through, our website is not incorporated by reference into this prospectus, and you should not consider information on our website to be part of this prospectus. Our agent for service of process in the United States is Arm, Inc.

**Corporate Reorganization**

Prior to the completion of this offering, we undertook a corporate reorganization pursuant to which Arm Holdings Limited acquired all the issued ordinary shares of Arm Limited. In connection with the corporate reorganization, the shareholders of Arm Limited exchanged each of the ordinary shares held by them in Arm Limited for newly issued ordinary shares of Arm Holdings Limited of the same class and in the same proportions as their previous shareholdings in Arm Limited. As a result, Arm Limited became a wholly-owned subsidiary of Arm Holdings Limited. On September 1, 2023, Arm Holdings Limited re-registered as a public limited company under the laws of England and Wales and changed its name from Arm Holdings Limited to Arm Holdings plc. The consolidated financial statements included in this prospectus do not show the effect of the corporate reorganization. See "Corporate Reorganization" for more information.

**Risk Factors Summary**

Our business is subject to a number of risks of which you should be aware before making an investment decision. You should carefully consider all of the information set forth in this prospectus and, in particular, should evaluate the specific factors set forth in the section titled "Risk Factors" before deciding whether to invest in our ADSs. Among these important risks are the following:

*Risks Relating to Our Business and Industry*

- Demand for our products and services primarily depends on trends in the semiconductor and electronics industries and the demand for the products of our customers and our customers' customers.

12

Table of Contents

## CORPORATE REORGANIZATION

On April 9, 2018, Arm Holdings Limited was incorporated as a wholly-owned subsidiary of Arm Limited under the laws of England and Wales with nominal assets and liabilities, contingencies and commitments. After consummating the corporate reorganization described herein, including the re-registration of Arm Holdings Limited as a public limited company, Arm Holdings plc became the ultimate holding company for Arm Limited. Arm Limited in turn was incorporated as a private company with limited liability under the laws of England and Wales on November 12, 1990.

Arm Holdings plc is a holding company which, since formation, has not conducted any operations other than activities incidental to the maintenance of its legal existence, the corporate reorganization and this offering. Investors in this offering will only acquire, and this prospectus only describes the offering of, ADSs representing ordinary shares of Arm Holdings plc. Ordinary shares of Arm Holdings plc will not be offered to investors as part of this offering.

The corporate reorganization took place in several steps, all of which were completed prior to the completion of this offering. We refer to these steps, which are discussed below, as our "corporate reorganization."

### Amendment of the Articles of Association of, and First Reorganization of Share Capital of, Arm Holdings Limited

On August 20, 2023, Arm Holdings Limited amended its articles of association to permit its merger reserve to legally be used to pay up the shares allotted as a bonus issue, and to allow the creation of a new class of deferred shares (which carry no or extremely limited voting rights, and no right to share in the income or capital of Arm Holdings Limited). On August 21, 2023, Arm Holdings Limited undertook a reorganization of its share capital to sub-divide its share capital of 100 ordinary shares of £1.00 each into 100,000 ordinary shares of £0.001 each.

### Distribution of Ordinary Shares of Arm Holdings Limited by Arm Limited

On August 21, 2023, Arm Limited distributed 100,000 ordinary shares of £0.001 each in the capital of Arm Holdings Limited (such number of shares together constituting 100% of the ordinary shares of Arm Holdings Limited) to Kronos II LLC, Arm Limited's majority shareholder immediately prior to the distribution. We refer to the shares of Arm Holdings Limited distributed to Kronos II LLC as the "Dividend Shares."

### Exchange of Ordinary Shares of Arm Limited for Shares of Arm Holdings Limited

Following the completion of the distribution of the Dividend Shares, on August 21, 2023, Kronos II LLC transferred its entire shareholding in the capital of Arm Limited, being 1,025,233,999 ordinary shares of £0.001 each, to Arm Holdings Limited in exchange for receiving 1,025,133,999 newly issued ordinary shares of £0.001 each in the capital of Arm Holdings Limited, and SVF HoldCo (UK) Limited transferred its entire shareholding in the capital of Arm Limited, being one ordinary share of £0.001, to Arm Holdings Limited in exchange for receiving one newly issued ordinary share of £0.001 in the capital of Arm Holdings Limited. We refer to this as the "Share Exchange." Following the Share Exchange, the former holders of shares in Arm Limited held shares in Arm Holdings Limited of the same class and in the same proportions as their previous shareholdings in Arm Limited. Arm Limited became a wholly-owned subsidiary of Arm Holdings Limited as a result of the Share Exchange. As a result of the Share Exchange, an English company law merger reserve in Arm Holdings Limited was created.

### First Bonus Issue of Arm Holdings Limited

Following the completion of the Share Exchange, on August 25, 2023, Arm Holdings Limited capitalized a portion of the amount standing to the credit of its merger reserve and applied such sums in paying up in full new

82

ARM_01429224

Table of Contents

# 95,500,000 American Depositary Shares
## (Representing 95,500,000 Ordinary Shares)



---

**PROSPECTUS**

---

| **Barclays** | **Goldman Sachs & Co. LLC** | | **J.P. Morgan** | **Mizuho** |

*(in alphabetical order)*

---

| **BofA Securities** | | **Citigroup** | **Deutsche Bank Securities** | | **Jefferies** |
| **BNP PARIBAS** | **Credit Agricole CIB** | **MUFG** | **Natixis** | **Santander** | **SMBC Nikko** |

---

| BMO Capital Markets | Daiwa Capital Markets America | Guggenheim Securities | HSBC | IMI - Intesa Sanpaolo | Independence Point Securities |
| KeyBanc Capital Markets | Loop Capital Markets | Ramirez & Co., Inc.  Rosenblatt | SOCIETE GENERALE | TD Cowen | Wolfe | Nomura Alliance |

**September 13, 2023**

Through and including October 8, 2023 (the 25th day after the date of this prospectus), all the dealers effecting transactions in the ADSs whether or not participating in this offering, may be required to deliver a prospectus. This delivery requirement is in addition to a dealer's obligation to deliver a prospectus when acting as an underwriter and with respect to an unsold allotment or subscription.

---

ARM_01429466

# Exhibit 2

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM 20-F

(Mark One)

☐ REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR (g) OF THE SECURITIES EXCHANGE ACT OF 1934

OR

☒ ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended March 31, 2024

OR

☐ TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

OR

☐ SHELL COMPANY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

Date of event requiring this shell company report _____

For the transition period from _____ to _____

Commission File Number: 001-41800

# Arm Holdings plc

(Exact name of registrant as specified in its charter)

**England and Wales**

(Jurisdiction of incorporation or organization)

**110 Fulbourn Road**
**Cambridge CB1 9NJ**
**United Kingdom**
**Tel: 44 (1223) 400 400**

(Address of principal executive offices)

**Spencer Collins**
**Arm Holdings plc**
**110 Fulbourn Road**
**Cambridge CB1 9NJ**
**United Kingdom**
**Tel: 44 (1223) 400 400**

(Name, Telephone, E-mail and/or Facsimile number and Address of Company Contact Person)

**Securities registered or to be registered pursuant to Section 12(b) of the Act:**

ARMQC_02720456

We also benefit from the U.K.'s "patent box" regime, which allows certain profits attributable to revenues from patented products (and other qualifying income) to be taxed at an effective corporation tax rate of 10%.

If, however, there are unexpected adverse changes to the RDEC or the "patent box" regime, or for any reason we are unable to qualify for such tax incentives, then our business, results of operations and financial condition may be adversely affected.

### Item 4. Information on the Company

**A.** *History and development of the company*

**Corporate Information**

The Company is a global leader in the semiconductor industry. The Company's principal operations are the licensing, marketing, research and development of microprocessors, systems IP, graphics processing units, physical IP and associated systems IP, software, tools and other related services.

Arm Holdings plc was incorporated as a private limited company with the legal name Arm Holdings Limited under the laws of England and Wales on April 9, 2018, with the company number 11299879. Arm Holdings Limited re-registered as a public limited company under the laws of England and Wales on September 1, 2023 and changed its name to Arm Holdings plc.

Arm Limited was incorporated as a private limited company with the legal name Widelogic Limited under the laws of England and Wales on November 12, 1990 with the company number 02557590. On December 3, 1990, Widelogic Limited changed its company name to Advanced RISC Machines Limited, and, on May 21, 1998, it changed its company name to Arm Limited (at which time it was a wholly owned subsidiary of Arm Holdings plc with the company number 02548782). Our business was initially operated through Arm Holdings plc with the company number 02548782, which was previously an independent publicly traded corporation until its acquisition in September 2016 by SoftBank Group. On March 19, 2018, as a part of a reorganization, Arm Holdings plc with the company number 02548782 re-registered as a private limited company and was renamed SVF HoldCo (UK) Limited, which became a subsidiary of SoftBank Vision Fund L.P. ("SoftBank Vision Fund"), which retained an approximate 25% interest in our company with the remainder beneficially held by SoftBank Group. In August 2023, a subsidiary of SoftBank Group acquired substantially all of SoftBank Vision Fund's interest in Arm Limited at a purchase price of approximately $16.1 billion, with the associated payments to be made in installments over a two-year period. The purchase price was established by reference to the terms of a prior contractual arrangement between the parties. Accordingly, prior to Arm's initial public offering, SoftBank Group beneficially owned substantially all of our outstanding shares.

Our registered office is 110 Fulbourn Road, Cambridge, Cambridgeshire, CB1 9NJ, U.K., and the telephone number at that office is +44 (1223) 400 400. The principal office for Arm Inc., our U.S. subsidiary, is located at 120 Rose Orchard Way, San Jose, CA 95134, and our telephone number at that office is +1 (408) 576-1500. Our website address is www.arm.com. We have included our website address in this Annual Report solely as an inactive textual reference. Information contained on, or that can be accessed through, our website is not incorporated by reference into this Annual Report, and you should not consider information on our website to be part of this Annual Report. Our agent for service of process in the United States is Arm, Inc.

For a discussion of our principal capital expenditures, refer to "*Item 5. Operating and Financial Review and Prospects-B. Liquidity and Capital Resources*", "*Item 4. Information on the Company-D. Property and Equipment*", "*Item 8. Financial Information-Note 8 - Property and Equipment, Net*" and "*Item 8. Financial Information-Note 9 - Leases*" in the Notes to the Consolidated Financial Statements included in this Annual Report.

The SEC maintains an Internet site that contains reports, proxy and information statements, and other information regarding issuers that file electronically with the SEC at www.sec.gov.

**Corporate Reorganization**

In September 2023, we completed a board approved corporate reorganization which involved (1) the shareholders of Arm Limited exchanging each of the ordinary shares held by them in Arm Limited for newly issued ordinary shares of Arm Holdings Limited; and (2) the re-registration of Arm Holdings Limited as a public limited company under the laws of

ARMQC_02720509

England and Wales at which time its name was changed to Arm Holdings plc. This corporate reorganization was solely for the purpose of reorganizing our corporate structure, in which Arm Limited became a wholly owned subsidiary of the holding company, Arm Holdings plc. This transfer of equity resulted in the issuance of ordinary shares of Arm Holdings plc to shareholders in the same class and the same number of ordinary shares as their previous shareholding in Arm Limited. As a result of the corporate reorganization between entities under common control, our historical consolidated financial statements were retrospectively adjusted for the change in reporting entity. Therefore, the historical consolidated financial statements of Arm Limited became the historical consolidated financial statements of Arm Holdings plc as of the date of the corporate reorganization.

**Initial Public Offering**

The registration statement on Form F-1 relating to the IPO was declared effective on September 13, 2023 and our ADSs began trading on the Nasdaq Global Select Market under the ticker symbol "ARM" on September 14, 2023. On September 18, 2023, we completed the closing of the IPO. One of our shareholders sold an aggregate of 102,500,000 ADSs at a price of $51 per share, including the underwriters' full exercise of their option to purchase up to an additional 7,000,000 ADSs to cover over-allotments. We did not receive any proceeds from the sale of the ADSs in the IPO.

**B. *Business Overview***

**Industry Background**

Semiconductors are indispensable to everyday life. In today's technology-driven world, semiconductors are the enablers of the devices and infrastructure that facilitate virtually everything people do. As almost all of the products and services people use every day rely on semiconductors. Manufacturing, logistics, city infrastructure, and building management also increasingly build their processes and services around semiconductor-enabled devices. As consumers and enterprises continue to demand more from their devices, we expect the pervasiveness of high-performance and energy-efficient semiconductors to continue to expand.

The world is becoming increasingly digital with the proliferation of smart, connected devices, such as smartphones, wearables, personal computers ("PCs"), tablets, and other electronic devices. Even everyday products like washing machines, thermostats, and utility meters are becoming more advanced. The market trend to make nearly all products smart and connected is not just limited to consumer electronics, but is also driving a wave of innovation across a broad range of end markets and use cases. For example, vehicles are effectively transforming into computers on wheels, factory floors are becoming increasingly automated with robotics, and retail shopping is evolving with the help of cashier-less checkout technology.

The massive expansion of data, advanced software applications, and AI are driving the need for high-performance compute capabilities. To address increasingly complex workloads, a key approach has been to increase the speed of a CPU and expand the number of processor cores per chip. Solely running an existing chip faster may deliver more compute performance, but increasing performance in this way results in higher energy costs, and may cause thermal limits to be exceeded. For example, individual servers are limited by their ability to dissipate heat energy, while whole data centers are limited by how much electricity is available to them. Mobile devices are limited by the energy stored in their batteries, while their instantaneous power is limited by thermal constraints. Furthermore, the transition to electric vehicles is increasing pressure on automakers to consider the power consumption and thermal management of vehicle electronics. In addition, enterprises are increasingly mindful of environmental sustainability, which is driving a need for more efficient alternatives to offset the continued growth in data centers and other compute deployments. Collectively, these considerations result in the need for innovation in chip design to address market demands for an optimal balance of performance, efficiency, size, and cost across end markets.

Further, the resources required to develop leading-edge products are significant and continue to increase exponentially as manufacturing process nodes shrink. Design partners play an increasingly valuable role in the chip design process by providing specialized capabilities and expertise that enable semiconductor suppliers to focus on their core product differentiation, while keeping pace with market innovation. Design partners facilitate innovation and enhance customers' competitive positioning by reducing the complexity, risk, and cost of a significant part of the development cycle. In addition, design partners, like Arm, that can demonstrate a deep understanding of their customers' workloads are better positioned to integrate themselves into their customers' workflows, further expanding their value proposition over time.

55

ARMQC_02720510

**SIGNATURE**

The registrant hereby certifies that it meets all of the requirements for filing on Form 20-F and that it has duly caused and authorized the undersigned to sign this annual report on its behalf.

**ARM HOLDINGS PLC**

Date: May 29, 2024

By:

/s/ Laura Bartels

Name:    Laura Bartels

Title:    Chief Accounting Officer
(Principal Accounting Officer)

201

ARMQC_02720656

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED,            )
  a Delaware corporation, and         )
QUALCOMM TECHNOLOGIES, INC.,      )
  a Delaware corporation,              )
                                  )    C.A. No. 24-490-MN
           Plaintiffs,               )    (CONSOLIDATED)
                                    )
       v.                            )
                                    )
ARM HOLDINGS PLC., f/k/a ARM LTD.,)
  a U.K. corporation,                 )
                                    )
          Defendant.                )

**PLAINTIFFS' FIFTH SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES (NOS. 1, 2, 5-9)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, plaintiffs Qualcomm Inc. and Qualcomm Technologies, Inc. (collectively "Qualcomm" or "Plaintiffs") by and through their attorneys, hereby respond and object to defendant Arm Holdings PLC's ("Defendant" or "Arm") Interrogatories to Plaintiffs dated February 7, 2025, as follows:

**GENERAL OBJECTIONS**

1.      Plaintiffs object to each Interrogatory to the extent that it seeks to impose greater or different obligations on Plaintiffs than those provided for by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any discovery orders entered into this case, any other applicable Court orders, or agreements reached by the parties.

2.      Plaintiffs object to each Interrogatory to the extent that it seeks documents, things, or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Nothing contained in these Responses and Objections is intended to be, nor shall in any way be, construed as a waiver of any such privilege, immunity, or

████████████████████████████████

13.    Plaintiffs object to Instruction No. 6 as overbroad, unduly burdensome, and on the ground that it purports to impose requirements inconsistent with or more burdensome than those imposed by the Federal Rules, local rules, and applicable law.

14.    Plaintiffs object to Instruction No. 7 to the extent it purports to require Plaintiffs to respond to Interrogatories that are not reasonably limited in time, including on subjects other than those for which such discovery is permitted under the Delaware Default Standard for Discovery or as agreed upon in the parties' anticipated agreement regarding electronic discovery.  Plaintiffs will agree to respond from June 1, 2022 forward, unless otherwise specified.

Subject to and without limiting the foregoing, Plaintiffs specifically object and respond as follows:

<b><u>SUPPLEMENTAL RESPONSES</u></b>

**<u>INTERROGATORY NO. 1:</u>**

Describe with specificity the complete legal and factual basis for Your contention that Arm's conduct as alleged in the Complaint has harmed Qualcomm, including an identification of each specific alleged harm to Qualcomm and the complete legal and factual basis for each alleged harm, including the specific Qualcomm personnel, work, and expenditures necessary or appropriate to address or respond to each specific alleged harm.

**<u>RESPONSE TO INTERROGATORY NO. 1:</u>**

Plaintiffs incorporate their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to Interrogatory No. 1 as premature at this stage of the litigation, given that (i) it involves an opinion or contention that relates to fact or the application of law to fact, and (ii) discovery, including, without limitation, document production and depositions, has not been completed.  As a result of the Interrogatory's prematurity, Plaintiffs are not yet aware of the full scope of deliverables Arm improperly withheld or the full scope of customers or prospective customers Arm interfered with.  Plaintiffs further object to the Interrogatory as

7

*HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY*

improperly compound.  Plaintiffs further object to the Interrogatory as overly broad and unduly burdensome to the extent that it seeks "the complete legal and factual basis for each alleged harm" incurred by Qualcomm.  Plaintiffs further object to the terms "necessary," "appropriate," "address," and "respond" as vague and ambiguous.  Plaintiffs further object to the Interrogatory to the extent that Arm is seeking information subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine that makes such information non-discoverable.

Subject to and without waiving the foregoing objections, Plaintiffs refer Defendant to paragraphs 85-86 and 113-116 of the First Amended Complaint (D.I. 36) and incorporate them by reference as if fully set forth herein.  Due to Arm's failure to deliver the OOB and patches to the ACK, Plaintiffs were forced to (1) expend extra time and resources, including Qualcomm engineers, to run ACK tests to verify compliance with the Arm ISA, and (2) use their own engineers to address issues that would have been addressed by Arm's patches.  In addition, because Arm is the sole supplier of the ACK and its OOB and patches, Arm's breach of Qualcomm's negotiated-for supply assurances left Qualcomm without any ability to obtain the full ACK and therefore at a competitive disadvantage as compared to other Arm-based CPU designers, including Arm itself.

Further, Arm's leak of its October 22, 2024 breach letter impaired Plaintiffs' relationships with current and prospective customers and interfered with Plaintiffs' future business opportunities.

8

███████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████ .

Pursuant to Rule 33(d), Plaintiffs will produce documents from which additional information responsive to this Interrogatory may be ascertained.

Discovery is ongoing, and Plaintiffs reserve the right to supplement or amend their response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in its initial response to this Interrogatory.

Subject to and without waiving any of its objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their initial response to this Interrogatory. Plaintiffs further respond that information responsive to this Interrogatory may be obtained from documents that Plaintiffs have produced or will produce in this litigation, and the burden of ascertaining the answer to this Interrogatory from those documents is substantially the same for Plaintiff as it is for Plaintiffs. *See* Fed. R. Civ. P. 33(d). In particular, Plaintiffs direct Defendant's attention to, *e.g.*:

ARM_01230076, QCVARM_0000218, QCVARM_0626590, QCVARM_0626603, QCVARM_0626519, ARM_01314327, ARM_01238384, QCVARM_0688932, QCVARM_0708107, QCVARM_0689117, QCVARM_0687479, QCVARM_0595815, QCVARM_0691526, QCVARM_0692665, QCVARM_0699278, QCVARM_0691853, QCVARM_0685578, QCVARM_0699176, QCVARM_0523837, QCVARM_0599801, QCVARM_0600098, QCVARM_0602404, QCVARM_0618712, QCVARM_0575613, QCVARM_0575611, QCVARM_0618420, QCVARM_0616871, QCVARM_0600101,

*HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY*

QCVARM_0707732,     QCVARM_0707997,     QCVARM_0708118,     QCVARM_0602198,

QCVARM_1022267,     QCVARM_1022268,     QCVARM_0607060,     ARMQC_00027166,

ARM_01249519,     ARM_01231394,     ARMQC_02731051,     ARMQC_02732393,

QCVARM_0616912,     QCVARM_0616916,     QCVARM_1030813,     QCVARM_1014307,

ARM_00086164,     QCVARM_0713513,     QCVARM_0713840,     QCVARM_0713652,

QCVARM_0713665,     QCVARM_0713516,     QCVARM_0617730,     QCVARM_0713528,

QCVARM_0713532,     QCVARM_0713535,     QCVARM_0713538,     QCVARM_0713530,

ARMQC_02600838,     ARMQC_02601067,     ARMQC_02742804,     ARMQC_02741466,

ARMQC_02742861,     QCVARM_0864277,     QCVARM_1029911,     QCVARM_0865370,

QCVARM_0866177,     QCVARM_0863435,     QCVARM_1029757,     QCVARM_1030509,

QCVARM_0864924,     QCVARM_1068512,     QCVARM_1068516,     QCVARM_1068521,

QCVARM_1068525,     QCVARM_1068666,     QCVARM_1069941,     QCVARM_1069949,

QCVARM_1118481,     QCVARM_1069945,     QCVARM_1068388,     QCVARM_1068603,

QCVARM_1068222,     QCVARM_1068612,     QCVARM_1118510,     QCVARM_1118515,

QCVARM_1118518,     QCVARM_1118524,     QCVARM_1118528,     QCVARM_1118531,

QCVARM_1118534,     QCVARM_1118538,     QCVARM_1118543,     QCVARM_1118546,

QCVARM_1118549,     QCVARM_1118552,     QCVARM_1118555,     QCVARM_1118559,

QCVARM_1118565, QCVARM_0717757.

Plaintiffs reserve the right to further respond or object to, or supplement or amend, this Interrogatory to the extent required and in accordance with Federal Rules of Civil Procedure 26 and 33 and the applicable Local Rules at an appropriate time.

████████████████████████████████████████

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in its initial response to this Interrogatory.

Subject to and without waiving the foregoing objections, Plaintiffs refer Defendant to paragraphs 96-97 and 156-159 of the Second Amended Complaint and incorporate them by reference as if fully set forth herein. Qualcomm also refers to and incorporates by reference its response to Interrogatory Nos. 14-16 as relevant here.

Subject to and without waiving any of its objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their initial response to this Interrogatory. Plaintiffs further respond that information responsive to this Interrogatory may be obtained from deposition testimony, related exhibits, and documents produced in this litigation, and the burden of ascertaining the answer to this Interrogatory from those documents is substantially the same for Defendant as it is for Plaintiffs. *See* Fed. R. Civ. P. 33(d). In particular, Plaintiffs direct Defendant's attention to, *e.g.*: Deposition of Gerard Williams; Deposition of Martin Weidmann; Deposition of Cristiano Amon; Deposition of Manju Varma; Deposition of Jeff Golden; Deposition of Jignesh Trivedi; Deposition of Ziad Asghar; Deposition of Peter Greenhalgh; Deposition of Aparjita Bhattacharya; Deposition of Richard Grisenthwaite; Deposition of Pavan Mulabagal; QCVARM_0717757; QCVARM_0717359.

In November 2021, Arm provided an initial quote for its ████ CPU. ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ *See* ████████████████████

11



Qualcomm promptly requested information and pricing for ███████ Yet Arm delayed providing a quote for months and then provided ██████████████████████. As a result, Qualcomm ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████.

Qualcomm also sought to use Arm's █████ core in its automotive SoC, Nordshleife. Despite Qualcomm's existing license to █████ and Arm's past practices of licensing the ████████████████████████████████████████████████████████████████████,

Arm ████████████████████████████████████████████████████████████

█████████. But Arm's offers for this product were unreasonable. Qualcomm was forced to ████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████.

Arm's failure to provide commercially reasonable terms for ██████████████████ has caused harm to Qualcomm. Qualcomm was forced to proceed in SoC development without knowing what CPUs would be available to Qualcomm to utilize.  For example, because Qualcomm will not have access to the █████ and █████ cores after October 2026, Qualcomm will not be able to integrate these cores into its value tier products.  Accordingly, Qualcomm has had to devote resources to developing custom CPUs that can be integrated into its value tier/mass tier products after the █████ and █████ licenses expire, as Qualcomm will not have the option to utilize Arm implementation cores in these products. Because Qualcomm has had to focus resources on developing custom CPUs on a tight timeline, Qualcomm has had to shift resources away from

████████████████████████████████████

other projects.  Qualcomm has also had to incur the business risk that it ███████████████████████ ██████████████████████████ before the expiration of its licenses to ██████ and ██████ the business risk of █████████████████████████████████████████████, and the business risk of delaying product releases.  Arm's failure to provide a license to ██████ and ██████ caused Qualcomm many challenges in planning for the roadmap in the value/mass tier.

With respect to ██████ Arm's ██████████████████████████████████ is forcing Qualcomm to devote employee time to considering and implementing replacements for that microcontroller within its products.

Because of Arm's failure to provide Qualcomm with ████████████████████ offers, Qualcomm has also been forced to overpay for access to ████████████.  *See* QCVARM_1121930; QCVARM_1121931.

Qualcomm has also made repeated requests to Arm for assistance in configuring the ██████ ██████ and was not provided with any support, *see* QCVARM_0618712, requiring Qualcomm to expend additional engineering effort to verify its custom cores.

Additionally, ███████████████████████████████████████████████ ██████████████████████████████████████████████████████████ █████████████████████████████████████.  After this meeting, ███████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ██████████████████████ Arm has had additional misleading communications with Qualcomm's customers about Qualcomm's purported contractual obligations, including in Will Abbey's May 3, 2023 letter, and Qualcomm has had expend resources to address all of its customers concerns regarding the confusion and distrust that Arm's misconduct has sowed.

13

████████████████████████████████

On October 22, 2024, Arm sent to Qualcomm and leaked to the media a notice of cancellation for the Qualcomm ALA.  The notice unsettled Qualcomm's customers by perpetuating a narrative that Qualcomm will not be able to sell SoCs compliant with the Arm architecture or that include the newest features or are using the newest architecture.  This has hampered Qualcomm's ability to negotiate business opportunities, ████████████████ ████████ and maintain strong relationships with its customers and investors.  Qualcomm employees have had to devote time and resources to addressing Arm's improper leak of this notice of cancellation, which is a cost to Qualcomm.  *E.g*., QCVARM_1070271; QCVARM_1028388; QCVARM_1121338;    QCVARM_1121341;    QCVARM_1121346;    QCVARM_1121350; QCVARM_1121359.  And even with this devotion of resources, Qualcomm has not been able to achieve as favorable of terms in its business deals as it obtained before Arm's wrongful conduct.

Moreover, after Arm leaked the notice of cancellation, ████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████

Plaintiffs incorporate the testimony provided and exhibits relied upon in the depositions of individuals identified as knowledgeable pertaining the subject matter of this interrogatory, including testimony from witnesses deposed during the week of July 7–11, 2025 and any additional testimony obtained after July 11, 2025. Plaintiffs reserve the right to supplement or amend their response based on testimony provided by these witnesses.

14

███████████████████████████████

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in Plaintiffs' initial response to this Interrogatory.

Subject to and without waiving any of their objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their previous responses to this Interrogatory. Plaintiffs also incorporate their responses to Interrogatories Nos. 2, 3, 6, 7, 9, 12, and 14-16; and the Expert Report of Patrick F. Kennedy, Ph.D. (dated August 8, 2025), along with its accompanying schedules. Plaintiffs further respond that information responsive to this Interrogatory may be obtained from deposition testimony, related exhibits, and documents produced in this litigation, and the burden of ascertaining the answer to this Interrogatory from those documents is substantially the same for Defendant as it is for Plaintiffs. *See* Fed. R. Civ. P. 33(d). In particular, Plaintiffs additionally direct Defendant's attention to, e.g.: Deposition of James Jeon; Deposition of Larissa Cochron; Deposition of Ann Chaplin; QCVARM_1120024; QCVARM_1151573; QCVARM_1066278; QCVARM_1067284; QCVARM_1067283; QCVARM_1071194; QCVARM_1071193; QCVARM_1071192; ARMQC_02783619; QCVARM_1070271; QCVARM_1118081; QCVARM_1118085; QCVARM_1121930; QCVARM_1121931; ARM_00062474; ARM_00062441; QCARM_0027985; ARMQC_02784204; ARMQC_02747567; QCVARM_0600038; QCVARM_1117866; QCVARM_0600065; QCVARM_1117873; QCVARM_0600041; QCVARM_1117901; QCVARM_0600073; QCVARM_1117891; QCVARM_0600044; QCVARM_1117938; QCVARM_0600082; QCVARM_1117934; QCVARM_0600047; QCVARM_1117977; QCVARM_0600092; QCVARM_1117981; QCVARM_0600039; QCVARM_1118012; QCVARM_0600067;

15

███████████████████

QCVARM_1118024;    QCVARM_0600042;    QCVARM_1118029;    QCVARM_0600075;

QCVARM_1118043;    QCVARM_0600045;    QCVARM_1118067;    QCVARM_0600084;

QCVARM_1118059;    QCVARM_0600048;    QCVARM_1118089;    QCVARM_0600094;

QCVARM_1117942;    QCVARM_1122733;    QCVARM_1151603;    QCVARM_1151597;

QCVARM_1151965;    QCVARM_1151966;    QCVARM_1151964;    QCVARM_1151620;

QCVARM_0865490; QCVARM_0577503.

Arm's campaign of conduct directed at creating uncertainty among Qualcomm's customers about Qualcomm's continued ability to supply them with products, including its letters directed to Qualcomm's customers, its direct conversations with those customers about Qualcomm, and its leak of the October 22, 2024 notice letter, has forced Qualcomm employees to spend significant time addressing customer concerns. *See, e.g.*, Deposition of Cristiano Amon ("Amon Dep.") 41:9-42:10, 43:4-12; Deposition of Ann Chaplin ("Chaplin Dep.") 108:17-109:3; Deposition of James Jeon ("Jeon Dep.") 14:1-15:8, 16:19-23, 20:21-21:21, 22:11-23:1, 52:9-15, 53:3-56:14, 69:22-70:21, 72:1-21, 86:18-89:3, 98:24-100:9 (testifying regarding customer concerns with Qualcomm's business triggered by Arm's conduct, including concerns expressed by ████

████████████████████

████ ); 28:19-30:5 (████████████████

████████████████████ ); Deposition of Rene Haas ("Haas Dep.") 17:20-18:13, 27:20-28:4, 46:18-21, 47:17-48:19; Deposition of Paul Williamson ("Williamson Dep.") 162:14-163:6. ████████████████████

████████████████████ , *see, e.g.*, Amon Dep. 21:10-22:21, 45:9-18, 53:23-55:14, 107:1-15, 108:14-19, 119:13-21, 120:1-15, 157:23-158:4, 238:11-239:5, 271:8-272:8, 287:4-8, 294:8-295:14; Chaplin Dep. 57:14-58:5, 58:7-25, 60:9-14, Haas Dep.

16

████████████████████████████████████████████████████

82:4-83:6 (describing ████████████████████████████████████████

██████████████████████████████████████████); Jeon Dep. 50:5-51:4; Deposition of Pavan

Mulabagal ("Mulabagal Dep.") 17:11-16, 39:21-40:7, 42:13-43:19, 54:7-56:4; 57:5-58:3, 111:9-

113:21, 114:2-21; Deposition of Chris Patrick ("Patrick Dep.") 73:12-74:13, 75:25-76:8, 79:20-

80:22, 81:7-83:10, 91:13-92:6, 110:10-20, 112:3-114:3; and its ability to maintain strong

relationships with its customers and investors, *see also, e.g.*, Amon Dep. 17:13-18:17, 172:5-

173:5, 67:7-71:6 (████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ Chaplin Dep. 63:12-64:19, 65:12-18 ████████

████████████████████████████████████████████████████ Jeon

Dep. 47:8-48:1.

Arm's failure to deliver the OOB and patches to the ACK has required Qualcomm to

expend extra time and resources to verify compliance with the Arm ISA and address issues that

would have been addressed by Arm's ACK patches, and, even with that extra effort expended,

████████████████████████████████████████████████████

████████. *See, e.g.*, Deposition of Jeff Golden ("Golden Dep.") 28:18-29:14, 30:10-31:16,

32:15-33:3, 33:14-19, 36:21-37:23, 43:3-18, 83:8-84:9, 91:16-93:8, 99:13-20, 100:20-101:5,

102:16-19, 104:6-24; Deposition of Gerard Williams ("G. Williams Dep.") 61:19-62:3, 68:17-

71:15, 72:1-9; Chaplin Dep. 66:2-17; Deposition of Jignesh Trivedi ("Trivedi Dep.") 18:15-23:3,

31:19-34:6, 77:17-78:11, 93:18-98:13, 98:14-103:16, 125:3-130:11, 136:7-137:8, 137:9-139:3,

139:7-142:3, 146:18-152:1, 156:2-165:22, 168:13-170:22, 172:1-177:12, 179:21-182:8, 196:5-14,

197:12-24, 210:8-212:9, 220:17-222:14, 253:3-14; Deposition of Martin Weidmann ("Weidmann

17

██████████████████████████

Dep.") 116:12-117:23, 118:23-119:5, 125:6-127:12.  Arm's failure to provide Qualcomm with OOB packages for its CPUs resulted in Qualcomm's verification team not having clarity from Arm as to the specific set of ACK tests that Arm believed should be run on each Qualcomm custom CPU.  Trivedi Dep. 98:14-103:16, 220:17-222:3.  Additionally, each OOB package contains a failure analysis that Qualcomm did not have access to that provides information related to ACK test failures as determined by Arm.  Without that information, Qualcomm was forced to expend additional time and resources in order to determine whether a test failure was the result of a design defect in one of the Qualcomm custom CPUs or a test defect in the ACK tests themselves.  Trivedi Dep. 126:6-130:11, 137:21-139:3, 173:11-174:5.  Arm's failure to provide ACK patches also forced Qualcomm to expend additional engineering time to determine whether defects in ACK testing were CPU defects or testing defects and ███████████████████████

████████████████████████.  Trivedi Dep. 157:19-158:17, 158:5-161:18, 165:12-22, 168:13-170:22, 175:8-177:2; Golden Dep. 83:8-84:9, 99:13-20, 100:20-101:5, 102:16-19, 104:6-24.  Qualcomm additionally expended extra engineering time attempting to make the ETE checker functional while Arm refused to engage.  Golden Dep. 49:23-50:11; Trivedi Dep. 142:14-143:18.

Qualcomm has additionally been harmed by Arm's failure to provide reasonable, ████, ████, and, as applicable, TLA Section █-compliant offers for products licensed under the parties' TLA, including ████████████████████████.  *See, e.g.*, Chaplin Dep. 48:18-49:13; Deposition of Kurt Wolf ("Wolf Dep.") 46:20-47:5, 132:4-133:3, 134:1-135:7; Deposition of Akshay Bhatnagar ("Bhatnagar Dep.") 15:18, 42:24-23:4; ARMQC_02784199 (████

████████████████████████████████████

████████████████████████████████████

████████████████).  Because of Arm's conduct, Qualcomm has had to hire and reallocate

███████████████████████████████████████

engineering resources to ensure that its custom cores, ███████████████████████████████,

are completed as close to the product's scheduled timeline as possible in the absence of a viable

back-up core option from Arm.  *See, e.g.*, Deposition of Manju Varma ("Varma Dep.") 50:4-22,

81:16-83:7, 99:23-100:2, 100:20-101:2, 1103:11-21, 103:25-104:2; *see also* Amon Dep. 25:3-

26:22 (discussing difficulty accessing ███████████ from Arm), 129:1-130:9, 145:19-146:12;

Chaplin Dep. 40:12-41:2, 41:20-20 (discussing ████████████████████████████████

██████████████████████); 54:5-20; Wolf Tr. 51:9-56:9, 57:24-59:23 (also discussing ████

██████████████████████).  Without the ability to license Arm's implementation cores

or with Arm refusing to provide support for implementation cores that it offers for license,

including ████ █████ and █████ Qualcomm is unable to retain optionality for its projects

post-2026 and has been forced to devote additional engineering resources to ensure that custom

CPUs can be used in SoCs that otherwise would have used ████ █████ or █████ Cochron

Dep.  109:14-110:1,  110:14-111:4,  114:8-13,  116:15-120:20,  223:8-226:21,  154:17-156:14;

Varma Dep. 142:6-20.  Also because of Arm's conduct, Qualcomm has been forced to try to plan

its roadmap for several years in advance without knowledge of what Arm IP it will have available,

*see, e.g.*, Varma Dep. 46:6-48:10, 56:2-57:2, 147:6-147:12; Wolf Dep. 28:5-29:25, 30:11-17,

31:25-33:7, 35:9-25, 39:24-42:12. Qualcomm has additionally had to allocate additional resources

to attempt to develop alternatives to Arm.  *See, e.g.*, Deposition of Karl Whealton ("Whealton

Dep.") 73:2-17.  And Qualcomm has been required to overpay Arm for access to peripheral TLA

IP.  *See, e.g.*, QCVARM_0527544; QCVARM_0573056; Cochron Dep. 134:9-135:11.

Furthermore, Qualcomm has been harmed by Arm's unfair and unlawful business

practices, including Arm's disadvantaging of Qualcomm in terms of access to Arm IP and v10 of

the Arm ISA, Arm's disregard for its confidentiality obligations to Qualcomm, and Arm's baseless

undermining of customer and investor confidence in Qualcomm's business. *See infra* Plaintiffs' Responses to Interrogatory No. 7; *e.g.*, Amon Dep. 64:22-65:5, 102:17-104:17, 297:18-298:15; Chaplin Dep. 28:24-30:20, 54:22-56:7, 63:12-64:19, 99:7-16, 120:3-15, 129:20-131:24, 167:13-22; Haas Dep. 52:17-53:10, 94:20-95:7, 98:14-19, 99:18-100:1, 120:12-121:5, 128:2-10, 207:20-208:7; Varma Dep. 150:23-151:22, 243:22-244:20; Deposition of Christine Tran ("Tran Dep.") 26:18-27:4, 49:14-21, 92:17-94:20, 95:14-18; ARM_01235323; Deposition of Sudeep Holla ("Holla Dep.") 37:20-38:8.

**FOURTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in Plaintiffs' initial response to this Interrogatory.

Subject to and without waiving any of their objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their previous responses to this Interrogatory as well as their supplemental responses to Interrogatory Nos. 6, 7, 12, and 14-16.  Arm's extended delay for more than a year in responding to Qualcomm's requests for licenses to the ████████████ ██████ forced Qualcomm to ultimately overpay for licenses in February 2025 because Qualcomm could not plan its roadmap without access to this critical IP, despite the IP being ███ ████████████████. *See, e.g.* Varma 5/5/2026 Rough Tr. 140:10-24, 146:13-147:3, 149:17-21.

**FIFTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in Plaintiffs' initial response to this Interrogatory.

20

████████████████████████████████████

Subject to and without waiving any of their objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their previous responses to this Interrogatory. Plaintiffs also incorporate the Supplemental Expert Report of Patrick F. Kennedy, Ph.D. (dated May 15, 2026). Plaintiffs also incorporate the Expert Report of Murali Annavaram (dated May 15, 2026). Plaintiffs also incorporate by reference the Supplemental Expert Report of Eric A. Posner (dated May 15, 2026).

**INTERROGATORY NO. 2:**

Describe with specificity the complete legal and factual basis for Your contention that Arm failed to meet any of its obligations under the Qualcomm ALA, including (1) the complete legal and factual basis for Your identification of each alleged delivery obligation, (2) the complete legal and factual basis for Your contention regarding which Section of the Qualcomm ALA such alleged delivery obligations are allegedly required under, (3) the complete legal and factual basis for Your contention that You are entitled to delivery obligations, including verification and support rights, for Nuvia-based technology, including but not limited to OOB and ACK tests, and (4) all interactions, communications, or correspondence between Qualcomm and Arm regarding the relevant obligations.

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiffs incorporate their General Objections and Objections to Definitions and Instructions. Plaintiffs object to Interrogatory No. 2 as premature at this stage of the litigation, given that (i) it involves an opinion or contention that relates to fact or the application of law to fact, and (ii) discovery, including, without limitation, document production and depositions, has not been completed. Plaintiffs further object to the Interrogatory as improperly compound. Plaintiffs further object to the Interrogatory on the ground that the term "Nuvia-based technology" is vague and ambiguous. Plaintiffs further object to the Interrogatory as overly broad and unduly burdensome to the extent that it calls for the disclosure of information that was articulated in the First Amended Complaint and in Qualcomm's November 3, 2022 and December 5, 2022 letters, is readily within the possession of Defendant, or that is more easily available to it. Plaintiffs further

21



object to the Interrogatory to the extent it calls for a legal conclusion.  Plaintiffs further object to the Interrogatory to the extent that that the information sought is subject to the attorney-client privilege, the attorney work-product, or any other applicable privilege or doctrine that makes such information non-discoverable.

Subject to and without waiving the foregoing objections, Plaintiffs refer Defendant to paragraphs 11-18 and 63-90 of the First Amended Complaint (D.I. 36) and incorporate them by reference as if fully set forth herein, and to the November 3, 2022 and December 5, 2022 letters referred to in paragraphs 70, 71, and 89 of the First Amended Complaint for Plaintiffs' position.

Plaintiffs state that Section █ of the Qualcomm ALA governs ███████████ ████████████████. Section ███████████████████████ ████████████████████████████████████████████ ███████████████ And Sections ████████████████████████

Arm breached the Qualcomm ALA when it failed to deliver (1) patches to the ACK and (2) the OOB used to configure the ACK, thereby failing to deliver the ACK and ███████████.

By letters dated November 3, 2022, and December 5, 2022, Plaintiffs notified Arm that it was in breach of Section █ of the Qualcomm ALA due to its failure to deliver the ACK and ███████, including because Arm failed to deliver patches to the ACK and the OOB.  In its December

22

██████████████████████████████████████

6, 2022 response letter, Arm did not dispute that it failed to deliver patches to the ACK or the OOB, and instead contended that Qualcomm had neither "verification, delivery, or support rights under its ALA applicable to Nuvia-based technology" nor "right to the OOB" because Qualcomm's custom CPUs purportedly used "unlicensed technology, developed under the now-terminated Nuvia ALA, rather than under the Qualcomm ALA."  However, Arm had already ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████.  Further, Arm's position was expressly rejected when, on December 20, 2024, the jury in *Arm Ltd.* v. *Qualcomm Inc.* found that Qualcomm CPUs that include designs acquired in the Nuvia acquisition are licensed under the Qualcomm ALA.  C.A. No. 22-1146, D.I. 572 at 1.

Discovery is ongoing, and Plaintiffs reserve the right to supplement or amend their response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in its initial response to this Interrogatory.

Subject to and without waiving any of its objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their initial response to this Interrogatory. Plaintiffs further respond that information responsive to this Interrogatory may be obtained from documents that Plaintiffs have produced or will produce in this litigation, and the burden of ascertaining the answer to this Interrogatory from those documents is substantially the same for Defendant as it is for Plaintiffs. *See* Fed. R. Civ. P. 33(d). In particular, Plaintiffs direct Defendant's attention to, *e.g.*:

23

████████████████████

ARM_01241585,      ARM_00056571,      ARM_01230076,      QCVARM_0000218,

QCVARM_0626590,      QCVARM_0626603,      QCVARM_0626519,      ARM_01314327,

ARM_01238384,      QCVARM_0688932,      QCVARM_0708107,      QCVARM_0689117,

QCVARM_0687479,      QCVARM_0595815,      QCVARM_0691526,      QCVARM_0692665,

QCVARM_0699278,      QCVARM_0691853,      QCVARM_0685578,      QCVARM_0699176,

QCVARM_0523837,      QCVARM_0599801,      QCVARM_0600098,      QCVARM_0602404,

QCVARM_0618712,      QCVARM_0575613,      QCVARM_0575611,      QCVARM_0618420,

QCVARM_0616871,      QCVARM_0600101,      QCVARM_0707732,      QCVARM_0707997,

QCVARM_0708118,      QCVARM_0602198,      QCVARM_1022267,      QCVARM_1022268,

QCVARM_0607060.

Plaintiffs reserve the right to further respond or object to, or supplement or amend, this Interrogatory to the extent required and in accordance with Federal Rules of Civil Procedure 26 and 33 and the applicable Local Rules at an appropriate time.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in its initial response to this Interrogatory.

Subject to and without waiving the foregoing objections, Plaintiffs refer Defendant to paragraphs 12-19 and 74-101 of the Second Amended Complaint and incorporate them by reference as if fully set forth herein, and to the November 3, 2022 and December 5, 2022 letters referred to in paragraphs 81, 82, and 100 of the Second Amended Complaint for Plaintiffs' position.  Qualcomm also refers to and incorporates by reference its response to Interrogatory No. 6 as relevant here.

24

Subject to and without waiving any of its objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their initial response to this Interrogatory. Plaintiffs further respond that information responsive to this Interrogatory may be obtained from deposition testimony, related exhibits, and documents produced in this litigation, and the burden of ascertaining the answer to this Interrogatory from those documents is substantially the same for Defendant as it is for Plaintiffs. *See* Fed. R. Civ. P. 33(d). In particular, Plaintiffs direct Defendant's attention to, *e.g.*: Deposition of Richard Grisenthwaite; Deposition of Martin Weidmann; Deposition of Jignesh Trivedi; Deposition of Jeff Golden; Deposition of Aparajita Bhattacharya; QCARM_0343120; QCARM_0343954; QCARM_0338573.

Plaintiffs incorporate the testimony provided and exhibits relied upon in the depositions of individuals identified as knowledgeable pertaining the subject matter of this interrogatory, including testimony from witnesses deposed during the week of July 7–11, 2025 and any additional testimony obtained after July 11, 2025. Plaintiffs reserve the right to supplement or amend their response based on testimony provided by these witnesses.

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in Plaintiffs' initial response to this Interrogatory.

Subject to and without waiving any of their objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their previous responses to this Interrogatory. Plaintiffs also incorporate their responses to Interrogatory No. 6 and to Interrogatory No. 16, which discusses the basis for Plaintiffs' claim that Arm breached the implied covenant of good faith and fair dealing of the Qualcomm ALA.  Plaintiffs additionally identify that Arm withheld deliverables to

25

Qualcomm—the OOB and ACK patches—at least between October 2022 and January 2025. Plaintiffs further respond that information responsive to this Interrogatory may be obtained from deposition testimony, related exhibits, and documents produced in this litigation, and the burden of ascertaining the answer to this Interrogatory from those documents is substantially the same for Defendant as it is for Plaintiffs. *See* Fed. R. Civ. P. 33(d).  In particular, Plaintiffs additionally direct Defendant's attention to, e.g.: Deposition of Jonathan Weiser ("Weiser Dep.") 123:24-151:23; Deposition of Vivek Agrawal ("Agrawal Dep.") 24:14-40:17, 51:19-60:22, 62:6-74:6, 100:12-111:23; Deposition of Ami Badani ("Badani Dep.") 43:13-44:7, 44:25-46:4; Golden Dep. 28:18-29:14, 30:10-31:16, 32:15-33:3, 33:14-19, 36:21-37:23, 43:3-18, 49:23-50:11, 83:8-84:9, 99:13-20, 100:20-101:5, 102:16-19, 104:6-24; G. Williams Dep. 61:19-62:3, 68:17-71:15, 72:1-9; Amon Dep. 57:19-58:23; Haas Dep. 120:12-121:5; Deposition of Aparajita Bhattacharya ("Bhattacharya Dep.") 57:8-58:3, 74:9-76:16, 67:16-68:25, 83:13-88:5, 89:21-24, 94:5-12, 100:10-137:1; Trivedi Dep. 18:15-23:3, 31:19-34:6, 77:17-78:11, 93:18-98:13, 98:14-103:16, 125:3-130:11, 136:7-137:8, 137:9-139:3, 139:7-142:3, 146:18-152:1, 156:2-165:22, 168:13-170:22, 172:1-177:12, 179:21-182:8, 196:5-14, 197:12-24, 210:8-212:9, 220:17-222:14, 253:3-14; Weidmann Dep. 116:12-117:23, 118:23-119:5, 125:6-127:12, 144:24-146:5, 146:9-160:2, 151:6-152:14, 164:10-171:2; Deposition of Anupa George ("George Dep.") 25:13-27:22; QCX 221-228; ARM_00001067; ARMQC_02770599; ARMQC_02602472; ARMQC_02602466; ARMQC_02602462; ARMQC_02756246; ARMQC_02773656; ARMQC_02783473; ARMQC_02774378; ARMQC_02756208; ARMQC_02745725; ARMQC_02774029;

ARMQC_02774642;       ARMQC_02774539;       ARMQC_02784227;       ARM_01230110;

ARM_00036346.

**FOURTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in Plaintiffs' initial response to this Interrogatory.

Subject to and without waiving any of their objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their previous responses to this Interrogatory. Plaintiffs also incorporate the Expert Report of Murali Annavaram (dated May 15, 2026).

**INTERROGATORY NO. 3:**

Describe with specificity the complete legal and factual basis for Your contention that any of Arm's actions have impaired, interfered, or harmed any of Qualcomm's relationships with its existing or prospective customers, including the complete legal and factual basis for Your contention that the "release of the Breach Letter has caused Qualcomm harm, by impairing its relationships with current and prospective customers and interfering with its future business opportunities" as set forth in paragraphs 114, 115, and 116 of Your Complaint, including the identities of all such customers and prospective customers and a detailed description of each specific current, prospective, or future business opportunities You allegedly lost.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiffs incorporate their General Objections and Objections to Definitions and Instructions. Plaintiffs object to Interrogatory No. 3 as premature at this stage of the litigation, given that (i) it involves an opinion or contention that relates to fact or the application of law to fact, and (ii) discovery, including, without limitation, document production and depositions, has not been completed. As a result of the Interrogatory's prematurity, Plaintiffs are not yet aware of the full scope of customers or prospective customers Arm interfered with. Plaintiffs further object to the Interrogatory as overly broad and unduly burdensome to the extent that it calls for the

27

███████████████████████████

QCVARM_1160578;   QCVARM_1160595;   QCVARM_1160697;   QCVARM_1160765;

QCVARM_1160773.

**FOURTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in Plaintiffs' initial response to this Interrogatory.

Subject to and without waiving any of their objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their previous responses to this Interrogatory as well as their supplemental responses to Interrogatory Nos. 1, 6, and 7.  Plaintiffs also incorporate by reference the Supplemental Expert Report of Eric A. Posner (dated May 15, 2026).

**INTERROGATORY NO. 6:**

Describe with specificity the complete legal and factual basis for each act You allege is or was a breach of the Qualcomm ALA, including Your contention in paragraph 155 of Your Complaint that Arm's alleged "withholding of deliverables and deliberate decision not to cure the issue within the time prescribed by the contract is a material breach of the QC ALA."

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiffs incorporate their General Objections and Objections to Definitions and Instructions.  Plaintiffs object to Interrogatory No. 6 as premature at this stage of the litigation, given that (i) it involves an opinion or contention that relates to fact or the application of law to fact, and (ii) discovery, including, without limitation, document production and depositions, has not been completed.  Plaintiffs further object to the Interrogatory as duplicative of Interrogatory No. 2.  Plaintiffs further object to the Interrogatory as vague and ambiguous because paragraph 155 of the First Amended Complaint does not refer to Arm's "withholding of deliverables and deliberate decision not to cure the issue within the time prescribed by the contract."  Plaintiffs further object to the Interrogatory as overly broad and unduly burdensome to the extent it seeks

47

disclosure of information that was articulated in the First Amended Complaint, in Qualcomm's November 3, 2022, and December 5, 2022 letters, is readily within the possession of Defendant, or that is more easily available to it. Plaintiffs further object to the Interrogatory to the extent it calls for a legal conclusion. Plaintiffs further object to the Interrogatory to the extent that Arm is seeking information subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine that makes such information non-discoverable.

Subject to and without waiving the foregoing objections, Plaintiffs refer Defendant to paragraphs 11-18 and 63-90 of the First Amended Complaint (D.I. 36) and incorporate them by reference as if fully set forth herein, and to the November 3, 2022, and December 5, 2022 letters referred to in paragraphs 70, 71, and 89 of the First Amended Complaint for Plaintiffs' position.

By way of further response, Plaintiffs state that Section █ of the Qualcomm ALA █████████ ████████████████████████████████████ Section ████████████

48

Discovery is ongoing, and Plaintiffs reserve the right to supplement or amend their response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in its initial response to this Interrogatory. Plaintiffs further object to the Interrogatory as overly broad and unduly burdensome to the extent it seeks disclosure of information that was articulated in the Second Amended Complaint, in Qualcomm's November 3, 2022, and December 5, 2022 letters, is readily within the possession of Defendant, or that is more easily available to it.

Subject to and without waiving the foregoing objections, Plaintiffs refer Defendant to paragraphs 12-19, 33-37, 63-101, 131-34, and 153-54 of the Second Amended Complaint and incorporate them by reference as if fully set forth herein, and to the November 3, 2022 and December 5, 2022 letters referred to in paragraphs 81, 82, and 100 of the Second Amended Complaint for Plaintiffs' position. Plaintiffs refer to and incorporate by reference their response to Interrogatory No. 16 as relevant here.

Plaintiffs further respond that information responsive to this Interrogatory may be obtained from deposition testimony and related exhibits in this litigation, and the burden of ascertaining the answer to this Interrogatory from those depositions is substantially the same for Defendant as it is for Plaintiffs. *See* Fed. R. Civ. P. 33(d). In particular, Plaintiffs direct Defendant's attention to, *e.g.*: Deposition of Jignesh Trivedi; Deposition of Jeff Golden; Deposition of Martin Weidmann; Deposition of Richard Grisenthwaite; Deposition of Aparajita Bhattacharya.

Plaintiffs also state that Arm has repeatedly breached the implied covenant of good faith and fair dealing contained in the ALA. Arm committed one of these breaches on October 22, 2024

49



when it asserted, without a valid basis, that Qualcomm was in material breach of its ALA and publicized Arm's notice of termination of the ALA to the media where it served to unsettle Qualcomm's customers. Arm also breached the implied covenant and good faith and fair dealing by reaching out to Qualcomm's customers directly about the status of Qualcomm's license, including in August 2022 and May 2023.

Additionally, Qualcomm made repeated requests to Arm for assistance in configuring the ████████████ and was not provided with any support—in further breach of the implied covenant of good faith and fair dealing.

Furthermore, Plaintiffs state that Section ████ of the Qualcomm ALA ████████. Arm has refused to negotiate an extension of v10 with Qualcomm, again, in violation of the implied covenant of good faith and fair dealing.

Plaintiffs incorporate the testimony provided and exhibits relied upon in the depositions of individuals identified as knowledgeable pertaining the subject matter of this interrogatory, including testimony from witnesses deposed during the week of July 7–11, 2025 and any additional testimony obtained after July 11, 2025. Plaintiffs reserve the right to supplement or amend their response based on testimony provided by these witnesses.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in Plaintiffs' initial response to this Interrogatory.

Subject to and without waiving any of their objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their previous responses to this Interrogatory. Plaintiffs also incorporate their responses to Interrogatory No. 2 and to Interrogatory No. 16, which discusses the basis for Plaintiffs' claim that Arm breached the implied covenant of good faith and fair dealing of the Qualcomm ALA. Plaintiffs additionally identify that Arm withheld deliverables to Qualcomm—the OOB and ACK patches—at least between October 2022 and January 2025. Plaintiffs further respond that information responsive to this Interrogatory may be obtained from deposition testimony, related exhibits, and documents produced in this litigation, and the burden of ascertaining the answer to this Interrogatory from those documents is substantially the same for Defendant as it is for Plaintiffs. *See* Fed. R. Civ. P. 33(d). In particular, Plaintiffs additionally direct Defendant's attention to, e.g.: Weiser Dep. 123:24-151:23; Agrawal Dep. 24:14-40:17, 51:19-60:22, 62:6-74:6, 100:12-111:23; Amon Dep. 57:19-58:23; Golden Dep. 28:18-29:14, 30:10-31:16, 32:15-33:3, 33:14-19, 36:21-37:23, 43:3-18, 83:8-84:9, 99:13-20, 100:20-101:5, 102:16-19, 104:6-24; G. Williams Dep. 61:19-62:3, 68:17-71:15, 72:1-9; Chaplin Dep. 66:2-17, 129:20-131:24; Trivedi Dep. 18:15-23:3, 31:19-34:6, 77:17-78:11, 93:18-98:13, 98:14-103:16, 125:3-130:11, 136:7-137:8, 137:9-139:3, 139:7-142:3, 146:18-152:1, 156:2-165:22, 168:13-170:22, 172:1-177:12, 179:21-182:8, 196:5-14, 197:12-24, 210:8-212:9, 220:17-222:14, 253:3-14; Bhattacharya Dep. 57:8-58:3, 74:9-76:16, 67:16-68:25, 83:13-88:5, 89:21-24, 94:5-12, 100:10-137:1; Weidmann Dep. 116:12-117:23, 118:23-119:5, 125:6-127:12, 144:24-146:5, 146:9-

51

160:2, 151:6-152:14, 164:10-171:2; George Dep. 25:13-27:22; ARM_1235323; QCX 221-228; ARM00001067; ARMQC_02770599; ARMQC_02602472; ARMQC_02602466; ARMQC_02602462; ARMQC_02756246; ARMQC_02773656; ARMQC_02783473; ARMQC_02774378; ARMQC_02756208; ARMQC_02745725; ARMQC_02774029; ARMQC_02774642; ARMQC_02774539; ARMQC_02784227; QCVARM_1122742; QCVARM_1122745; QCVARM_1126209; QCVARM_1129673; QCVARM_1129695; QCVARM_1129711; QCVARM_1130170; QCVARM_1133205; QCVARM_1133211; QCVARM_1133216; QCVARM_1133757; QCVARM_1137360; QCVARM_1140735; QCVARM_1140739; QCVARM_1140742; QCVARM_1141284; QCVARM_1146697; QCVARM_1149389; QCVARM_1149435; QCVARM_1149528; ARM_01230110; ARM_00036346; ARM_01314327.

Furthermore, Arm's witnesses have now confirmed that █████████████ ████████████████████████████████████████████████████ ███████████████████████████████ *See, e.g.*, Badani Dep. 43:13-44:44:7, 44:25-46:4; Kranhold Dep. 34:17-24, 71:6-14, 72:18-73:1, 78:8-79:23, 87:16-22.

## THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in Plaintiffs' initial response to this Interrogatory.

Subject to and without waiving any of their objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their previous responses to this Interrogatory as well as their supplemental response to Interrogatory 16. When Qualcomm confronted Arm in November and December 2022 about its refusal to deliver ████████ required under Section █ the ALA,



Arm's General Counsel Spencer Collins insisted that ███████████████████ ███████████████████████████████████████ *See* ARM_00056571; ARM_01241565. Qualcomm was not required to continue to notify Arm that Qualcomm believed it was breaching the ALA (███████████████████████████████ ██████████████████████████)[2] by refusing to deliver ██████████ when Arm continued to do so throughout 2023 and 2024 in response to both pending and new requests from Qualcomm after Arm denied that any such breach of Section █ had occurred because any further notice would have been futile, particularly in light of the ongoing litigation between the parties.

**<mark>FOURTH</mark> SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

Plaintiffs incorporate by reference, as though fully set forth herein, each of their General Objections and Objections to Definitions and Instructions as well as the objections set forth in Plaintiffs' initial response to this Interrogatory.

Subject to and without waiving any of their objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their previous responses to this Interrogatory. Plaintiffs also incorporate the Expert Report of Murali Annavaram (dated May 15, 2026).

**INTERROGATORY NO. 7:**

Describe with specificity each alleged "unlawful and unfair business acts and practices" for which You seek monetary or injunctive relief, including: (i) a detailed description of each specific allegedly unlawful or unfair business act or practice attributable to Arm; (ii) the complete facts, circumstances, and legal basis that allegedly render the business act or practice "unlawful"; (iii) the complete facts, circumstances, and legal basis that allegedly render the business act or practice "unfair"; (iv) the dates on or during which each alleged act or practice occurred; (v) whether You contend Arm engaged in such alleged act or practice to leverage its alleged monopoly power and how such alleged act or practice helped Arm leverage its alleged monopoly power; (vi) why You

---

[2] Multiple individuals involved in the conduct at issue are officers of both Arm Holdings plc and Arm Ltd., including at least Rene Haas, Spencer Collins, and Richard Grisenthwaite.

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
Jenifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
PAUL WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Adam L. Basner
PAUL WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

May 15, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

82

███████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2026, copies of the foregoing were caused to be served upon the following in the manner indicated:

Anne Shea Gaza, Esquire                              *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendants*

Scott F. Llewellyn, Esquire                          *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendants*

Sydney D. Gaskins, Esquire                           *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendants*

Alexandra Corrinne Hottenrott, Esquire               *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendants*

Daralyn J. Durie, Esquire                            *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendants*

Lydia B. Cash, Esquire                               *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendants*

███████████████████████████

Gregg F. LoCascio, P.C.                                    *VIA ELECTRONIC MAIL*
Jason M. Wilcox, P.C.
Meredith Pohl, Esquire
Matthew J. McIntee, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendants*

Jay Emerick, Esquire                                       *VIA ELECTRONIC MAIL*
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendants*

Peter Evangelatos, Esquire                                 *VIA ELECTRONIC MAIL*
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*


                                        */s/ Jennifer Ying*

                                        _____
                                        Jennifer Ying (#5550)

84

# Exhibit 4

( ██████████████████ )

# Exhibit 5

( ██████████████████████ )

# Exhibit 6

( █████████████████ )

███████████████████████████████

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALCOMM INC., a Delaware corporation, and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,<br><br>    Defendant. | C.A. No. 24-490-MN<br><br>████████████████ |

## REBUTTAL EXPERT REPORT OF MICHAEL C. BROGIOLI, PH.D.

███████████████████████████████████████

basis for alleging that it was harmed as a result of Arm's alleged withholding, Qualcomm has not identified any specific OOBs it contends it was entitled to receive, but that Arm did not provide. *See* SAC; Qualcomm's 3rd Suppl. R&O's to Arm's 1st Set of ROGs; Qualcomm's 2nd Suppl. R&O's to Arm's 2nd Set of ROGs; Qualcomm's 1st Suppl. R&O's to Arm's 3rd Set of ROGs.  Mr. Trivedi testified that ████████████████████████████████████████

████████████████████████████████████ Trivedi Dep. Tr. at 136:14–137:8.

174.    I understand that Arm did not provide OOB packages for ███████████

████████████████ because Arm believed that they incorporated unlicensed code developed by Nuvia prior to the Qualcomm acquisition.  *See* Arm's 1st Supp. Resp. to Qualcomm's 1st Set of Interrogs. (Nos. 1–3) (July 11, 2025) at 9–10 (No. 1); *see also* ARM_01314327.  As I explain in Section XIII below, the evidence supports Arm's determination that these CPUs are Nuvia-based.  *See* § XIII.

### 1.    Contents Of An OOB Package

175.    An OOB package is a partner-specific and CPU core design-specific support material that, upon request, Arm may generate for an ALA partner during the CPU verification process. *See, e.g.*, Arm's 1st Suppl. R&O's to Qualcomm's 1st Set of ROGs at 13; Weidmann Dep. Tr. at 86:23–87:13; Bhattacharya Dep. Tr. at 150:14–18; Trivedi Dep. Tr. at 101:23–102:6.  I have reviewed an exemplary OOB package, which contains ████████████████████

████████████████████████████████████████████████

████████████████████████████ [89] Trivedi Dep. Tr. at 99:3–100:7; Grisenthwaite Dep.

---

[89] ████████████████████████████████████████ Weidmann Dep. Tr. at 150:2–4. Qualcomm does not contend that Arm withheld the AEM.

██████████████████████████████████████

Tr. at 135:9–22; QCVARM_0717964; QCVARM_1042776; QCVARM_1042773; QCVARM_1042780; QCVARM_1042777.

176.   As noted above, the ACK ████████████████████████████

██████████████████████████████. *See* § X.A.  However, custom CPU cores

do not necessarily implement every feature that the Arm architecture enables. █████████

██████████████████████████████████████

██████████████████████████████ Weidmann Dep. Tr. at 81:10–

15; Grisenthwaite Dep. Tr. at 137:19–138:7. █████████████████████████

█████████████████████████ Trivedi Dep. Tr. at 32:15–33:14, 99:17–21. █████

██████████████████████████████████████

████████ *Id.* ████████████████████████████

██████████████████████████ Grisenthwaite Dep. Tr. at 146:11–16; *see also*

Agrawal Dep. Tr. at 51:1–3 ████████████████████ ████████████

██████████████████████████████████████

██████████████ ████████████████████████

177.   As I explain in more detail below, ALA partners, like Qualcomm, can similarly

create their own reference list. ████████████████████████

██████████████████████████████████████

██████████████████ *E.g.*, Trivedi Dep. Tr. at 101:4–22.

178.   The second main component of the OOB package is ████████████████

██████████████████████████████████████

---

[90]   Conversation with Vivek Agrawal.

[91]   *Id.*

███████████████████████████████████████████

████████████████ Grisenthwaite Dep. Tr. at 135:9–22. ██████████████

█████████████████████████████████████ Grisenthwaite Dep. Tr. at 135:4–8. ████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████ *See* § X.A. ██████

███████████████████████████████████████████

██████ Trivedi Dep. Tr. at 99:3–13; QCVARM_1042777; QCVARM_1042780. ██████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████

179. ████████████████████████████████████████

███████████████████████████████████████████

██████ QCVARM_0717964.  Along with the OOB package, ███████████████

███████████████████████████████████████████

███████████████████████████████████████████

Agrawal  Dep.  Tr.  at  30:20–37:20.   For  example,  Arm  may  ████████████████

█████████████████████████████████ QCVARM_0717964. ████

████████████████████████████ QCVARM_0717964; QCVARM_1042776.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

QCVARM_1042773.

74



Tr. at 139:14–140:2.  However, Mr. Trivedi ██████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████; *see also id*. at 148:2–149:24, 150:18–

151:2, 151:22–152:1.  However, Mr. Trivedi ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████  *Id*. at 176:15–177:24.[97]

205.    I understand that Arm did not provide interim ACK patches for ████████

████████████████████████████████  because Arm determined that they are derived

from what Arm believed to be unlicensed Nuvia developments.  *See* Arm's 1st Supp. Resp. to

Qualcomm's 1st Set of Interrogs. (Nos. 1–3) (July 11, 2025) at 9–10 (No. 1); *see also*

ARM_01314327.  However, as I explain further below in this Report, Arm *did* ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████.

As I explain in Section XIII below, the evidence supports Arm's determination that these CPUs

are Nuvia-based.  *See* § XIII.

### 1.    ACK Patches Generally

206.    As I previously explained, the ACK ██████████████████████████

████████████████████████████████████████████████.  *See* § X.A.

Occasionally, issues arise with one or more ACK tests that should be fixed.  Arm's practice is to

████████████████████████████████████████████████████████████████

---

[97]    As I discuss in Section XII.A.2, below.  I have seen evidence suggesting this figure likely overestimates the number of actual ACK test issues that occurred during this time.

85



████████████ Weidmann Dep. Tr. at 90:6–17; Bhattacharya Dep. Tr. at 50:13–18.

████████ Weidmann Dep. Tr. at 122:8–123:2.

207.    I have seen evidence that, during the relevant period,[98] Qualcomm had access to the v8 and v9 ACK, including ████████████████

████████████ I am not aware of Qualcomm contending otherwise.

208.    ████████████████

████████ Weidmann Dep. Tr. at 90:18–91:5, 123:10–14, 171:14–172:6; 207:11–208:11; 210:19–211:7. ████████

---

[98]    I understand that Qualcomm contends that the alleged withholding period is from May 2022, when Qualcomm contends Arm allegedly began withholding materials from Qualcomm, through January 8, 2025, which is the date that Arm sent a letter to Qualcomm stating that "Arm intends to provide support for the Nuvia CPUs, including support and verification services" pending certain litigation between the parties. *See* Qualcomm's Second Supplemental Responses and Objections to Arm's Second Set of Interrogatories (Nos. 10-13), July 11, 2025 at 22 (Qualcomm Response to Interrogatory No. 13); Arm's First Supplemental Reponses and Objections to Qualcomm's First Set of Interrogatories (Nos. 1-3), July 11, 2025 at 10–11 (Arm Response to Interrogatory No. 1).

[99]    ████████████ Weidmann Dep. Tr. at 20:11–21:13.

[100]    Product code ████ corresponds to the v8 ACK.  ARM_00063298 at -299; Weidmann Dep. Tr. at 169:8–20.

[101]    Product code ████ corresponds to the v8 ACK.  Weidmann Dep. Tr. at 169:8–20.

[102]    Product code ████ corresponds to the v9 ACK.  QCARM_0343954 at -956; Weidmann Dep. Tr. at 166:8–13.

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████ [103]  Weidmann Dep.

Tr. at 90:6–17.  The materials listed in Section █ of the █ (ARM_00063298 at -299–300) and █

(QCARM_0343954 at -955–957) █████████████████████████████████████

████  Weidmann Dep. Tr. at 19:16–20:10.  Unlike those materials, ████████████████

██████████████████████████████████████. [104]  Weidmann Dep.

Tr. at 90:18–91:5; Trivedi Dep. Tr. at 112:3–6.  The materials ██████████████████

██████████████████████████████████████████████  Weidmann

Dep. Tr. at 18:11–19:6.  ████████████████████████████████████

██████████████████████████  Agrawal Dep. Tr. at 11:7–11, 158:18–159:14;

12/14/2023 Agrawal Dep. Tr. at 14:16-15:4; QCARM_3216178.

209.    In my opinion, ACK patches are not new or additional ACK tests.  Instead, they are interim corrections to existing tests.  Bhattacharya Dep. Tr. at 46:4–9.  But they do not create new tests.  This is consistent with my understanding.  At a number of points in my career I have worked with various types of unit tests and compliance tests.  Oftentimes, when creating a new test for a new piece of functionality, an existing test was copied and altered to support the functionally.  This then allowed the newly copied test to be quickly integrated with the test harness and environment, outputting results in a manner identical to similar existing tests (such as self-testing), with a minimal amount of software engineering effort.  Creating a new test for new functionality, however, is different from correcting an error in an existing verification test.  ACK patches are not new or additional tests; they are corrections to errors in existing tests, and as I explained above,

---

[103]    PDH was formerly known as "Arm Connect."  Weidmann Dep. Tr. at 20:11–21:13.

[104]    Causeway was formerly known as "DropZone."  Weidmann Dep. Tr. at 158:13–20

████████████████████████████████████████

Arm includes these corrections in ████████████████████████████

████████

### 2. ACK Patches Are Support Materials And Are Not Necessary For The Architecture Verification Process

210. In my opinion, and from a technical perspective, ACK patches are support materials and not required for a partner to verify that their design complies with the Arm architecture as a technical matter. Instead, ACK patches, ███████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████

211. As noted above, Arm ████████████████████████████

██████████████████████████████. Weidmann Dep. Tr. at 90:6–17; Bhattacharya Dep. Tr. at 50:13–18. During the period of Arm's alleged withholding, ██████████

██████████████████████████████████████████

████



Weidmann Dep. Tr. at 122:8–123:2.

212. Further, Qualcomm had access to each quarterly ACK release, which Qualcomm does not dispute. *Id.*; ARMQC_02604616; ARMQC_02779171; ARMQC_02779176; ARMQC_02779181. Accordingly, in my opinion, ████████████████████████████

**RESERVATION OF RIGHTS**

This expert report reflects my opinions given in good faith with respect to the information available to me as of the date I executed it. I respectfully reserve the right to supplement or amend my opinions in response to opinions expressed by Qualcomm's experts, or in light of any additional evidence, testimony, or other information that may be provided to me after the date of this expert report, including at trial. In addition, I expect that I may be asked to testify in rebuttal as to issues that may be raised in the expert reports of Qualcomm's experts, or to issues that may be raised by Qualcomm's fact witnesses and experts at trial.

Should additional information be produced that may require me to amend or supplement my opinions, I reserve the right to do so.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: September 5, 2025

By: _____

Michael C. Brogioli, Ph.D.

177

# Exhibit 7

( █████████████████ )

# Exhibit 8

( ██████████████████ )

# Exhibit 9

( ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ )

# Exhibit 10

(██████████████████)

Case 1:24-cv-00490-MN   Document 835   Filed 07/10/26   Page 113 of 208 PageID #: 55872

Case 1:24-cv-00490-MN   Document 835   Filed 07/10/26   Page 114 of 208 PageID #: 55873

CONFIDENTIAL

ARM_00055582

CONFIDENTIAL

ARM_00055383

CONFIDENTIAL

# Exhibit 11

( ██████████████████████ )

# Exhibit 12

( ███████████████ )

# Exhibit 13

(██████████████████████)



Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated
5775 Morehouse Drive
San Diego, CA 92121

26 September 2022

Dear Ann,

As you know from the complaint in *Arm Ltd. v. Qualcomm Inc.*, No. 1:22-cv-01146-UNA (D. Del. Aug. 31, 2022) and our prior correspondence, Qualcomm must stop using and destroy technology Nuvia developed under now-terminated agreements with Arm.

In a recent meeting with Arm's validation team, however, Qualcomm personnel sought support in connection with a compliance sign-off for a v8.7 design, which Qualcomm apparently intends to seek in December 2022. Given the anticipated timing of the sign-off and the configuration details Qualcomm shared, Qualcomm appears to be continuing with development of Nuvia technology subject to discontinuance and destruction, including the Phoenix design for which Nuvia sought verification earlier this year and the Hamoa design derived from it.

Qualcomm is not entitled to the requested support or any related sign-off for a core built off designs that had to be destroyed and can no longer be used.  Absent express certification by a responsible Qualcomm executive following diligent investigation that the relevant v8.7 design is not derivative of, based on, or an embodiment of technology Nuvia developed under now-terminated agreements, Arm cannot proceed as requested.

If Qualcomm has litigation counsel to whom you believe this should instead be directed, please let us know.


Sincerely,

Spencer Collins
EVP, Chief Legal Officer
Arm Limited
110 Fulbourn Road
Cambridge, CB1 9NJ
United Kingdom

CONFIDENTIAL

ARM_01241472

# Exhibit 14

( █████████████████████ )

# Exhibit 15

(██████████████████)



Qualcomm Incorporated
5775 Morehouse Drive, San Diego, CA 92121
www.qualcomm.com

VIA ELECTRONIC MAIL                                                October 10, 2022

Spencer Collins
Executive Vice President and Chief Legal Officer
Arm Limited
110 Fulbourn Road
Cambridge, CB1 9NJ, United Kingdom

Dear Spencer,

I am in receipt of your letters dated September 15, 2022 and September 26, 2022.

Based on Arm's recently filed complaint, we are aware of Arm's overbroad interpretation of ▮▮▮▮ of the now-terminated Arm-NUVIA ALA. But Arm's position, as we outlined in Qualcomm's answer and counterclaims, is without merit, and we have every right to develop CPU products, including products containing technology we acquired from NUVIA, both under the terms of Qualcomm's agreements with Arm, and under a plain reading of the Arm-NUVIA ALA. The allegation from your September 26th correspondence claiming that "Qualcomm must stop using and destroy technology Nuvia developed" is telling about the lack of merit in Arm's position. Given the actual language of the Arm-NUVIA ALA and the Qualcomm-Arm ALA, Arm has no good faith basis to have filed or to pursue its lawsuit.

Like numerous journalists who have stated publicly that they do not understand why Arm is taking the baseless positions that it has chosen to assert against us, we too do not understand. We have had a long relationship with Arm as one of its largest licensees and deserve an explanation. I would appreciate receiving the explanation this week.

On the specifics of your letter, I remind you that Arm has certain obligations under Sections ▮▮▮ of the Qualcomm-Arm ALA related to the very support and deliverables requested. Qualcomm will continue to operate under the provisions of the agreement, including by providing ▮▮▮▮ or other standard requests to effectuate the compliance process.

Your attempt to deflect away from Arm's obligations under the Qualcomm-Arm ALA by requesting an "express certification" is misplaced. First, no such certification is required under the Qualcomm-Arm ALA, which grants Qualcomm broad rights to develop CPU technology at all stages of implementation. Second, you will also recall that NUVIA has already provided a certification that it has complied with its obligations under ▮▮▮▮ with respect to ▮▮▮▮ obtained under the NUVIA-Arm agreement. Nothing else is required of Qualcomm or NUVIA, and Arm has no right to claim otherwise.

Accordingly, there is no basis for your letter's suggestion that Arm may refuse to provide validation support as Qualcomm works through the ACS test protocols. Further, our engineering team reports that Arm's management has directed its engineering team to not provide requested ACS support and deliverables to Qualcomm, including the delivery of Arm's reference list of compliance tests for Qualcomm's configuration (the "OOB"), which is a standard initial step in the ACS process. Arm is obligated to provide this support and deliverables per the ALA. If Arm chooses not to provide such support and associated ▮▮▮▮ such as the OOB) as required by the ALA, it does so at its own peril, including but not limited to, Qualcomm's rights under Sections ▮▮▮.

CONFIDENTIAL                                                QCARM_7484465

# Qualcomm

We request that you confirm, within seven days, that Arm will cease its delay in providing contractually obligated support and deliverables in connection with Qualcomm's architected cores, and instruct your engineering team to engage with Qualcomm's team in good faith in the ACS compliance process. In the event you do not provide this confirmation, we will consider Arm in breach of its obligations in light of the statements in your letter and Arm's actions.

Finally, with respect to your attempt to articulate a "no waiver" position when Arm provides delivery and support under its obligations owed to Qualcomm under any Qualcomm-Arm contract, we understand that is your position though we express no agreement with it; the court will find what it finds, and we consider any of Arm's conduct and performance (or lack thereof) to be relevant to any defense or claim we have asserted or may assert.

We expect Arm to live up to its contractual obligations.

Best Regards,

Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated

QCARM_7484466

# Exhibit 16

(████████████████)

# Exhibit 17

(██████████████████)

# Exhibit 18

( █████████████████████ )

# Exhibit 19

(████████████████)

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

ARM LTD.,                        )
                                 )
--------------------Plaintiff,   )
                                 ) Case No.
    vs.                          ) 22-CV-1146-MN-LDH
                                 )
QUALCOM INC.,                    )
                                 )
--------------------Defendant.   )

TRANSCRIPT OF MOTION TO AMEND

MOTION TO AMEND had before the Honorable Laura D. Hatcher, U.S.M.J., in Courtroom 2B on the 5th of March, 2024.

APPEARANCES

YOUNG, CONAWAY, STARGATT & TAYLOR
    BY:  ANNE GAZA, ESQ.
         ROBERT VRANA, ESQ.
         DANIEL MACKRIDES, ESQ.

        -and-

MORRISON FOERSTER LLP
    BY:  ERIK OLSON, ESQ.

                Counsel for Plaintiff

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
    BY:  JACK BLUMENFELD, ESQ.

        -and-

PAUL WEISS RIFKIND WHARTON & GARRISON LLP
    BY:  KAREN DUNN, ESQ.
         JACOB BRALY, ESQ.

                Counsel for Defendant

---

THE COURT:  Let's start with some introductions.

MS. GAZA:  Good afternoon, Your Honor Anne Gaza on behalf of Plaintiff ARM.  Your Honor, I'm joined today by Eric Olson of Morrison & Foerster as well as my colleague Rob Vrana.  And for his second court appearance, Daniel Mackrides.

THE COURT:  Welcome.

MR. BLUMENFELD:  Good afternoon, Your Honor.  Jack Blumenfeld from Morris Nichols for Qualcom and the other defendants.  With me at counsel table are Karen Dunn and Jacob Braly from Paul Weiss.

THE COURT:  Good afternoon.  Okay.  Let's go ahead and jump right in.

MS. DUNN:  Thank you, Your Honor.

We are here on a motion to amend our counterclaims.  We seek to bring three amended counterclaims, one for a breach of the Nuvia ALA, one for breech of the Nuvia TLA.  Both are the same section, █████, and then separately, a breach of the ███ of the Qualcom ALA.

I'd like to go through for the Court the factual basis for each of the counterclaims because they're different, and I will say that we'll go through the timeline of when we had the information first come to us that underlie the counterclaims.

With regard to ███, ███ is the subsection that

---

provides for the destruction and quarantine of Nuvia confidential information within 30 days of termination of the Nuvia agreement, and in our claim is that it has been revealed through depositions and through documents late last year in November and December that ARM has been commercializing, not just failing to destroy or quarantine, but commercializing Nuvia's confidential IP, including providing it to other customers.

So I'd like to walk the Court through all of that.

THE COURT:  Let me ask you this, if I may.  Section ██████ is it fair to -- does it impose, essentially, three kind of obligations to return or destroy not to use and so certify?  Are they three independent obligations?  Is that the appropriate way of looking at it?

MS. DUNN:  I think you could look at it that way.

THE COURT:  Okay.  Go ahead.

MS. DUNN:  First, Your Honor, in April of 2022, Qualcom received a letter from ARM's general counsel saying ARM would not use and quarantine.  That's 2022.  We did put a few things for the Court on paper, and with the Court's permission, may I hand them up?

THE COURT:  Yes.

MS. DUNN:  I have two things that relate to

---

█████, and I'll save the one that relates to ████

So in August of 2022, ARM filed its complaint in this case.  Paragraph 60 of ARM's complaint says that ARM complied and fulfilled all relevant duties, covenants, and obligations under the Nuvia ALA, including ceasing use of confidential information.  In its presentation -- I don't have it on the slide, but in its answer in paragraph 233 in its answer to our counterclaims, it doubles down on this and references specifically the Nuvia ALA and the TLA.

The second slide that I've handed Your Honor is the first time that Qualcom learned that what ARM was doing was actively commercializing Nuvia's confidential information.  On December 7, 2023, we deposed Mark Werkheiser.  I'll also note for the Court that we noticed this deposition within the fact discovery period, and I can walk through later, if you wish, the timeline of how these things got set, but we did notice Mr. Werkheiser on time.  He was the lead engineer in charge of the coherent mesh network design team.  The coherent mesh network is the fabric that allows different components of an SOC to communicate with one another.

And in the period of 2019 to 2020, Nuvia had provided confidential information and documents marked confidential information proprietary IP from Nuvia so that ARM could work on the CNM fabric that would go into the

That's just if you find a bug, you might issue a patch, and the patches are not issued on any particular timetable, and so you don't know that they exist unless and until you receive them.

Now here, again, we relied on ARM's representations. On December 6th of 2022, the ARM general counsel wrote to the Qualcom general counsel, who had written raising the question of the OOB, not the patches, that no failure of delivery has occurred and said that Qualcom has the OOB from its receipt of the original architecture compliance kit, which is sometimes called the ACK. So that's our understanding as of December 6, 2022.

On November 2, 2023 -- and this is two and a half months after the deadline for substantial completion -- ARM produced this e-mail that I handed to the Court, which showed that ARM was intentionally withholding not just the OOB but also the patches.

And I would direct the Court's attention to the first page, which is an e-mail from Mr. Agrawal to Mr. Grisenthwaite and others. Mr. Grisenthwaite is Mr. Agrawal's superior. What he's saying is, "I understand that we're withholding some things from Qualcom," and he wants to make it clear what's being withheld and what isn't. And even to Mr. Agrawal at this time, October 2022, he says, "It might be challenging to determine what requests can be supported and which ones require legal approval." In other words, which ones were being withheld.

On page two of this e-mail, which was produced to us on November 2nd of 2023, there's a chart. And if Your Honor looks at the chart, you will see that this is the chart that Mr. Agrawal produced to sort of clear up his own confusion and make sure there was alignment internally. And the things at the top half of the chart are things that say "continue support as earlier" and things on the bottom of the chart, which includes the OOB and also the patches, say "no support unless legal approves." So those are the things that are being withheld.

So if you -- what's -- the parts -- what was very surprising to us about this document when we received it is that this is not a blanket "we're not supporting you." They're supporting certain things. For example, if they want to align with us or have synch calls or get information from us and align on roadmaps. But they are not providing support that is owed under the contract for other things including --

I will say, we did notice we didn't get the OOB. That's -- we wrote about that. But the patches are a different story. Patches come up with there's a problem. One partner might notice a problem that causes ARM to issue a patch and ARM might issue that patch to other partners.

You would never know that those exist -- you know patches might exist in the abstract, but you don't know any particular patch exists.

What this shows us is that ARM is withholding certain deliverables, and in particular deliverables that we would not have even known existed at this time. And actually still today, Qualcom cannot tell you what patches have been withheld. They're just being withheld, and we don't know what they are, what we're not getting.

THE COURT: Wasn't Qualcom put on notice on that same day from the e-mail from Mr. Agrawal where he said, "I'll be able to share OOB and patches after management has given their approval" and then sort of put Qualcom on ice and ghosted?

MS. DUNN: I actually think this makes it worse.

THE COURT: There's notice that OOB and patches that are not being provided to you at all.

MS. DUNN: I think it makes the notice issue worse.

What they have primarily argued -- I appreciate the question. What they have primarily argued is "We sent you a letter saying we're not giving you anything. We're not giving you support, we're not giving you verification." But then their own engineers were telling our engineers "You are still eligible for these things, maybe, if the legal people say that's okay." And then internally, they're not telling us any of this. They have put each of these things in a category, and they're not communicating this.

THE COURT: If Qualcom thinks it's a requirement under the contract to be given the OOB and patches and you're put on notice that somebody somewhere has decided that maybe you don't get them, why isn't that sufficient to trigger some understanding that you would have a claim for breach of contract?

MS. DUNN: It might be, but we didn't receive this e-mail until November 2nd of 2023.

THE COURT: Someone at Qualcom received the e-mail October 10th of 2022. I'm referring just for clarification for the record to the 4/2 ARM letter submission.

MS. DUNN: So you're saying that when -- the question is, then, when Vivek Agrawal e-mails the Qualcom engineer and says, "We might get this stuff to you, we might not, have to check with legal," that we're on notice with respect to --

THE COURT: When you don't get and then you claim you should have got it because the contract is clear, then yes.

MS. DUNN: Your Honor, I would say I confess I look at this in the exact opposite way, which is that

45

And I don't, you know, this regards our contract, the Qualcom ALA, not the Nuvia ALA that had been terminated. So the idea that before we saw that document with the chart saying they were intentionally withholding things under our own ALA and before we had the deposition testimony from Mr. Agrawal under oath saying he intentionally withheld that, the idea that somehow we would have brought claim under our own ALA, which is what we're doing now, before we had that document which I would argue is explosive, just like in the Third Circuit case, and the deposition testimony which is equally explosive, I think that claim would not have been taken seriously.

So we appreciate your time this morning, Your Honor, and if you have any other questions.

THE COURT: I don't. Thank you very much.

Here's what we're going to aim to do. This is not a promise. It is a hope. We're going to take the matter under advisement, and we'll hope to get you something before your hearing with Judge Noreika on Thursday. That is the hope. Thanks so much for the argument today. I appreciate it. You folks have a nice day.

C E R T I F I C A T E

I, Deanna L. Warner, a Certified Shorthand Reporter, do hereby certify that as such Certified Shorthand Reporter, I was present at and reported in Stenotype shorthand the

46

above and foregoing proceedings.

_____
Deanna L. Warner, RPR, CSR,
Official Court Reporter
U.S. Federal Court

# Exhibit 20

( █████████████████ )



**Qualcomm Incorporated**

5775 Morehouse Drive, San Diego, CA 92121

www.qualcomm.com

<u>**VIA ELECTRONIC AND REGISTERED MAIL**</u>                                     December 5, 2022

Spencer Collins
EVP, Chief Legal Officer
ARM Limited
110 Fulbourn Road
Cambridge, CB1 9NJ
United Kingdom

Dear Spencer,

We have not received confirmation of your receipt of my November 3, 2022 letter, a copy of which is attached hereto. That letter served as Qualcomm's written notice to ARM of ARM's non-compliance with ████████ of Qualcomm's Architecture License Agreement (ALA).

This letter is Qualcomm's second written notice of non-compliance in accordance with the notice process set forth in ████████ of the ALA. ARM must cure this non-compliance per the time and procedures set forth therein, or Qualcomm intends to exercise its remedies under ████████

Best regards,

Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated

cc: Dawn Hill, Account Manager, dawn.hill@arm.com (via electronic and registered mail)
    Jason Child, EVP and Chief Financial Officer, jason.child@arm.com (via electronic and registered mail)
    Rene Haas, Chief Executive Officer, Rene.Haas@arm.com (via electronic and registered mail)
    Chief Operating Officer (via registered mail; no name or address to send via electronic mail)

CONFIDENTIAL                                                                    ARM_00025401



<u>Letter to ARM dated November 3, 2022</u>

CONFIDENTIAL                                                                                                                    ARM_00025402



Qualcomm Incorporated

5775 Morehouse Drive, San Diego, CA 92121

www.qualcomm.com

VIA ELECTRONIC & REGISTERED MAIL                                November 3, 2022

Spencer Collins
EVP, Chief Legal Officer
Arm Limited
110 Fulbourn Road
Cambridge, CB1 9NJ
United Kingdom

Dear Spencer,

I write to respond to your October 16, 2022 letter. With respect to your interpretation of the NUVIA and Qualcomm ALAs, there is no further need to address that here. Suffice to say we disagree in every respect with ARM's interpretation of these agreements. We refer you to Qualcomm's pleadings.

That said with respect to ARM's failure to engage in its support obligations, we want to make clear that Qualcomm is invoking its remedies under ███████████ Under ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ breach of ██████████ Please construe this letter as Qualcomm's required notice under ██████████ that ARM is not in compliance with its obligations under ██████████ and that ARM must cure this breach in accordance with the time and procedures set forth therein.

We also note that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Finally, I also respond to your email dated October 12, 2022. As I am sure you are aware, there is a weekly sync meeting between engineers at Qualcomm and ARM to discuss various technical issues that arise during the verification test process. We trust that you have no issues with these meetings proceeding.

Best Regards,

Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated

cc: Dawn Hill (via registered mail)
    Inder Singh (via registered mail)

CONFIDENTIAL                                                    ARM_00025403

# Exhibit 21

(█████████████████)



Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated
5775 Morehouse Drive
San Diego, CA 92121

6 December 2022

Dear Ann,

I write in response to your 3 November letter and the 5 December, 2022 second written notice. Qualcomm and Nuvia continue to breach their obligations under their agreements with Arm. Moreover, Qualcomm has acted improperly and maliciously by wrongfully invoking Section █ to further its prior breaches of Arm's rights.

I note with concern your decision "to make clear that Qualcomm is invoking its remedies under Section █" Section █ is a unique remedy that is meant to address the very limited circumstances in which Arm willfully refuses to deliver specific items (defined individually in Section █ and █████ to Qualcomm. By invoking this narrow provision, Qualcomm threatens to withhold ██████████████████████████ ██████████████ ████████████████████Notably, an improper threat ████████████████████ reflects serious misconduct and an improper effort to use economic leverage to achieve illegitimate aims.

The sole basis stated in your 3 November, 2022 letter to justify this threat is the following: "Under █████ ██████████ includes ████████████████████████ ████ ██████████████████ ██ of the ██████████████████ of the ALA."

Arm strongly disagrees with Qualcomm's claim that Section █ is at issue or that provision of the OOB implicates Section █ As stated above, the ██████████ in Section █ is limited to █████████ under Section █ of the ALA. No failure of delivery has occurred. Arm provided Qualcomm with the ████ ████████████████████ long ago and has delivered updates to that kit. The OOB is not a listed deliverable under the ALA. Rather, the OOB is a subset of the tests Arm has already delivered to Qualcomm in the Architecture Valid Suite Kit. No additional delivery is required. No breach of Section █ has occurred.

Moreover, Qualcomm's excuses for invoking Section █ expressly focus on ████████████ ████████████████████████ neither of which falls within Section █ To the contrary, matters related to verification are governed by Section █ (entitled ████████) and matters related to support are governed by Section █ (entitled ██████████████). Indeed, your letter refers to breaches of Section █ support obligations and proposes to exercise rights reflected in Sections ██████████, making clear the OOB is not a deliverable subject to Section ██. The error reports from Qualcomm and the upload to which you refer in alleging breaches of Section █ are directly connected to the OOB that you improperly attempt to frame as a deliverable. Further, Section █ specifically limits Qualcomm's remedies associated with a failure to provide support to the terms stated in Section ████ through ██ – not Section ██.

Qualcomm's letter is a transparent and malicious effort to transform a debate about Arm's support obligations under Section █ into a weapon of economic duress through its improper invocation of Section ██. That effort is inconsistent with the language, spirit, and purpose of the ALA and its ████████ provisions.

CONFIDENTIAL

ARM_01241565

Qualcomm's misconduct is magnified by the fact that your efforts are intended to benefit from Qualcomm's and Nuvia's breach of the termination provisions that require the discontinuance and destruction of the Nuvia designs generated under the now-terminated Nuvia ALA. Misuse of Section ██ to obtain leverage to pursue unlicensed designs subject to discontinuance and destruction not only reflects Qualcomm's continued breach of the Nuvia ALA termination provisions, but also a new, material breach of the Qualcomm ALA.

Qualcomm does not have verification, delivery, or support rights under its ALA applicable to Nuvia-based technology like the design for which Qualcomm improperly seeks provision of the OOB. Qualcomm simply ignores that its Nuvia-based design is unlicensed technology, developed under the now-terminated Nuvia ALA, rather than under the Qualcomm ALA. That material is subject to discontinuance and destruction pursuant to an independent obligation under the Nuvia ALA that the Qualcomm ALA does not modify or supersede. The Qualcomm ALA's license is limited to specific, defined "████████████" delivered by Arm to Qualcomm under the Qualcomm ALA, and, contrary to Qualcomm's assertions, does not extend to ████ ████████ delivered by Arm to Nuvia under the now-terminated Nuvia ALA. Arm has already made its position on this clear in its court filings. Qualcomm's rights under the Qualcomm ALA do not extend to unlicensed embodiments or derivatives of ████████████ developed under a different ALA. Qualcomm thus has no right to the OOB for those designs.

Qualcomm's current conduct is a material breach of its ALA. Withholding ████████ under Section ██ would reflect a further material breach of the ALA and of Qualcomm's TLA. To cure Qualcomm's material breaches, Qualcomm must (1) stop its requests for verification, delivery, and support for Nuvia-based designs; and (2) withdraw its threats against Arm for purported breach of delivery obligations and related ████████ under Section ██.

To the extent that Qualcomm ████████████████ based on its wrongful invocation of Section ██, Arm will not hesitate to terminate the relevant licenses. Arm will also separately address, and will rely on the good sense of the Court and jury to remedy, Qualcomm's extortionate behavior. Qualcomm would do well to respect and use that forum, rather than the wrongful invocation of Section ██, to address the parties' legal disputes.

Sincerely,

Spencer Collins
EVP, Chief Legal Officer
Arm Limited
110 Fulbourn Road
Cambridge, CB1 9NJ
United Kingdom

ARM_01241566

# Exhibit 22

( ██████████████████ )

# Qualcomm

5775 Morehouse Drive, San Diego, CA 92121
www.qualcomm.com

VIA ELECTRONIC & REGISTERED MAIL

January 3, 2023

Spencer Collins
EVP, Chief Legal Officer
ARM Limited
110 Fulbourn Road
Cambridge, CB1 9NJ
United Kingdom

Dear Spencer,

I write to respond to your December 6, 2022 letter. It is not productive for ARM to make specious claims that Qualcomm has breached its agreements with ARM. Nor is it productive for ARM to make claims that Qualcomm has acted "improperly and maliciously" when we bring good faith performance disputes to ARM's attention, as was the case with our November 3 letter. Qualcomm is in compliance with its agreements with ARM, and ARM knows this.

In terms of the OOB, you have now set forth ARM's view that the OOB is not a "listed deliverable" and is only a "subset of the tests included within the Architecture Valid Suite Kit." We disagree, but given that Qualcomm is early in its verification process, at this point we will continue to reserve all rights to take further action and protect our rights in the event ARM asserts that delivery of the OOB, or more particularly, agreement on the AVS tests to run is somehow a necessary component of verification. ARM cannot have it both ways.

We further note our disagreement with your statement that "Qualcomm does not have verification, delivery, or support rights under its ALA applicable to Nuvia-based technology like the design for which Qualcomm improperly seeks provision of the OOB." This position simply reiterates ARM's litigation position, ignores Qualcomm's contractual rights, and simply assumes that ARM will prevail, a point upon which we fundamentally disagree. As before, we direct you to the litigation pleadings for the reasons why ARM's position is wrong. Second, while you repeatedly accuse Qualcomm of "malicious" behavior and various material breaches, we note that it is ARM that refuses to abide by its support obligations, instead, choosing to try and hold-up Qualcomm's delivery to the market of new, innovative core designs. While ARM's denial tactics will ultimately not be successful, your letter just reaffirms which party is trying to impart "extortionate" commercial pressure in this dispute.

Best regards,

Ann Chaplin
General Counsel and Corporate Secretary
Qualcomm Incorporated

CONFIDENTIAL

# Exhibit 23

(██████████████)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., and          ) SEALED
QUALCOMM TECHNOLOGIES, INC.,)
                            )
          Plaintiffs,       )
                            ) C.A. No. 24-490(MN)
     v.                     )
                            )
ARM HOLDINGS PLC,           )
                            )
          Defendant.        )


                 Tuesday, March 10, 2026
                 2:00 p.m.
                 Motion Hearing


                 844 King Street
                 Wilmington, Delaware


BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge


APPEARANCES:

         MORRIS NICHOLS ARSHT & TUNNELL LLP
         BY:  JENNIFER YING, ESQ.

         -and-

         DUNN ISAACSON RHEE LLP
         BY:  KAREN DUNN, ESQ.
         BY:  WILLIAM ISAACSON, ESQ.
         BY:  ERIN J. MORGAN, ESQ.
         BY:  JENIFER N. HARTLEY, ESQ.

---

APPEARANCES (Cont'd):

         -and-

         PAUL WEISS
         BY:  CATHERINE NYARADY, ESQ.
         BY:  JACOB A. BRALY, ESQ.
         BY:  ADAM BASNER, ESQ.

              Counsel for the Plaintiffs


         YOUNG CONAWAY STARGATT & TAYLOR LLP
         BY:  ANNE SHEA GAZA, ESQ.
         BY:  DANIEL MACKRIDES, ESQ.

         -and-

         KIRKLAND & ELLIS LLP
         BY:  GREGG F. LoCASCIO, ESQ.
         BY:  JASON M. WILCOX, ESQ.
         BY:  JAY EMERICK, ESQ.
         BY:  KASDIN MITCHELL, ESQ.
         BY:  MEREDITH POHL, ESQ.
         BY:  MICHAEL PRONIN, ESQ.

              Counsel for the Defendant


         WALKER STEVENS CANNOM LLP
         BY:  HANNAH CANNOM, ESQ.

              Counsel for Apple


         WILSON SONSINI
         BY:  BRADLEY D. SORRELS, ESQ.

              Counsel for Ampere

---

APPEARANCES (Cont'd):


         SKADDEN ARPS SLATE MEAGHER & FLOM LLP
         BY:  JENNESS PARKER, ESQ.

              Counsel for Broadcom


         CONNOLLY GALLAGHER LLP
         BY:  SARA BARRY, ESQ.

              Conflicts Counsel


         _ _ _ _ _ _ _ _ _ _ _ _ _


          COURTROOM DEPUTY:  All rise.  The United States District Court for the District of Delaware is now in session.  The Honorable Maryellen Noreika presiding.

          THE COURT:  All right.  Good afternoon.  Please be seated.  Let's start with some brief introductions.

          MS. YING:  Good afternoon Your Honor, Jennifer Ying from Morris Nichols Arsht & Tunnell on behalf of the plaintiffs.  I'm also joined by Travis Murray from Morris Nichols and then at counsel table from Dunn Isaacson & Reed, we have Karen Dunn, Bill Isaacson, Erin Morgan, as well as Jennifer Hartley.  And then from Paul Weiss we have Kathy Nyardy, Jacob Braley and Adam Basner.  And we also have

---

conflicts counsel from Connolly Gallagher, Sara Barry.

          THE COURT:  Okay.

          MS. GAZA:  Good afternoon, Your Honor.  Anne Gaza from Young, Conaway on behalf of Arm.  I'm joined by a colleague, Daniel Mackrides, as well as Kirkland & Ellis, Gregg LoCascio, Jason Wilcox, Jay Emerick, Kasdin Mitchell, Meredith Pohl, and Michael Pronin.

          Thank you.

          THE COURT:  Okay.  Thank you.

          All right.  So we have your papers and let me just get this out of the way so hopefully it doesn't come out later when I get tired from the arguments, but you all submitted 11,000 pages on objections for discovery.  That isn't all that you gave me for summary judgment and Daubert and that is excessive, 11,000 pages for discovery objections.  And you're not even objecting to absolutely everything the Special Master did.  And what that tells me is that nobody is seriously thinking about making decisions based on what's reasonable and what's necessary.  And you're lucky that your client is willing to pay for a bunch of stuff that seems unnecessary and disproportionate, but you're not lucky that I am now teetering on forming the impression that you have no respect for my time and you're not litigating in good faith.

          Now, so you guys can be reasonable going forward

21

inordinate amount of time from this Court. It is nuts. And that tells me that you two, who are the lead counsel, do not have control over what's going on. You don't. And if I have to say you yourself have to sit here every Friday for five hours minimum, and you're not allowed to bill your clients for it, I will do that. Okay? And you just have to sit here and waste your time. Because this is insane that you don't have a better feel for this.

So anyway, okay, you want to amend. It's all part of one case and the only reason you care about amending is because of the statute of limitations issue. And I guess my question is, on that, do you agree that if it is a consolidated case, two consolidated cases as opposed to an amendment that the statute of limitations bars your claim.

MS. DUNN: No.

THE COURT: So of course you don't, because why would you agree. Now you're saying, Judge, you have to -- rather than me, Judge, arguing that the statute of limitations doesn't apply, now lucky me, I get to decide not only an issue that is really, nobody cares about except for the statute of limitations, and then I get to decide the other issue as well. I mean, come on.

MS. DUNN: I think in this instance --

THE COURT: If you think your argument is so strong that the statute of limitations doesn't apply, why am

22

I dealing with this?

MS. DUNN: Your Honor, I don't know. I literally think --

THE COURT: This is all for an implied duty of good faith. I mean, you have arguments that if there are explicit provisions in here that are breached, and you're like hanging on to this implied duty of good faith and fair dealing as if your case goes away without it.

MS. DUNN: That part is not right. This is about the contract claim that we tried to introduce into this case at this point years ago. And, Your Honor, I am taking on board everything you're saying, but I think in this case we are trying to give the Court the option --

THE COURT: You're not.

MS. DUNN: Okay.

THE COURT: You're not.

MS. DUNN: I understand --

THE COURT: You just won't drop anything. You don't have enough confidence in your arguments to say I am going to go with that this statute of limitations is garbage, or I'm going to say, jury, look, here is a provision that says they had to do this thing, they had to go back and do an investigation or whatever it is you say they had to do on the best deals that they had and give us ten percent. No, you have to say, and then they got mad at

23

us and they wouldn't negotiate in good faith. I mean, okay. But I mean, these -- it starts to sound kind of like petty and puny at some point. Why don't you just stick -- again, I don't understand why you can't stick with your good argument. Like what is it that makes you say I have to say these people are bad and they breached the contract twenty-eight ways as opposed to hey, jury, we have a limited time and we're going to tell you this was really bad and they breached it in these two ways. You're not going to have eight weeks, ten weeks.

MS. DUNN: That is very much understood.

THE COURT: And yet you can't drop anything. It's like they breached this way and this way and this way and this way, and by the way, we're not asserting this way that they breached, but we're going to go over and say they were mean people. It's just nuts. And I mean, okay, maybe you don't think a jury is going to think that it's nuts, but I think that they are. I have more faith in juries than that, and they're going to be like you got to be kidding, how did somebody -- at some point you overdo it. They just hate each other and so we don't -- I mean, they're not going to even focus on the language in the claim, in the contract.

So I am going to overrule your objections on the motion to amend. I have done plenty to let you get that case in and those allegations in, and if they're not -- if

24

they're subject to a statute of limitations, I guess that's just your problem.

Okay. Now, next was bifurcation. And on bifurcation, as I read it, nobody is disputing that the unfair competition that's the subject of the motion is an equitable issue under California law. What I seem to understand that plaintiff is saying is look, a bunch of this evidence, not all of it, but a lot of this evidence is already going to come in, and so why would we have two trials to deal with overlapping evidence?

My thought and the way I usually deal with these things is whatever is relevant to the claims that go before the jury goes before the jury, and anything else that doesn't go before the jury comes before me and we have a trial after the jury leaves in the evenings. For every day of the trial, or two or three of the days of trial you just stay here for a couple of hours after the jury leaves and we try the issues and I hear the evidence come in that doesn't go in front of the jury. So that's what I was thinking.

I don't understand -- we're not having two separate trials where I get to get up to speed twice. But I'm also not going to make an evidentiary decision right now on what evidence comes in and what evidence is relevant to whatever claims are remaining at the time of trial.

So I don't understand. If everybody agrees it's

25

kind of an equitable issue, why is there a dispute?

MR. LoCASCIO:  So until we filed the motion and got their opposition, we didn't know what their position was because we said can we agree UCL is not going in front of a jury and we didn't get a yes to that question because their view is it still does, even in their slide deck they say we found one case where there were jury instructions given to a jury where I guess the parties didn't care, didn't argue it and it snuck through, there is no dispute it's a bench issue.

THE COURT:  Yes.  All I'm saw them saying is -- I mean, in some ways it's smart argument given how crabby I'm being, you don't want two trials, judge, and I'm like well, sure I don't, but I don't have two separate trials, so it's not -- that's not as effective as it normally would be.

MR. LoCASCIO:  From our perspective the question is whether it's sort of right before, simultaneous, as you suggested, or right after, and on that, we don't have to decide that issue today.

THE COURT:  I can tell you what it's probably going to be because that's the way I always do it.

MR. LoCASCIO:  Okay.  The entire argument we get back then in this opposition from Qualcomm is it's entirely overlapping with the wrongful independent act requirement for tortious and negligent interference because they say

26

okay, the jury has still got to decide whether there is a wrongful act, so all of this UCL evidence they want to put in, which essentially is a separate expert, they say we're a monopolist, we're anticompetitive, we do bad stuff, to your point they don't like us very much, whatever it is, which they have under this gestalt claim that it's unlawful, it's unfair, and they put a lot of weight on unfair.  And they want to trot out any fact they want to say we're bad guys and it goes to a jury and --

THE COURT:  I guess the way I'm thinking of it, though, let me understand if there is something I'm missing in your motion before I ask the plaintiff.  To me there very well may be overlapping evidence, there very well may be nonoverlapping evidence, I have no idea at this point because I don't know what all the evidence is.  Okay?  But if there is overlapping evidence and there is evidence that is actually, you know, comes within the rules, it's relevant, and not, you know, more prejudicial than relevant and whatever, then it would come in.  Right?

MR. LoCASCIO:  If the evidence is relevant to something that's in front of the jury, I agree with you, it comes in.

THE COURT:  And if it's only relevant to this, and I understand there can be disputes on this because we all know there is going to be, then if it's only relevant to

27

the unfair competition claim, then it doesn't.  And it would only come before me.

MR. LoCASCIO:  Correct.  But I want to put a finer point on this, which can you just go two slides for me to slide 5.  They put all their weight in their brief that yeah, there is overlap because of this wrongful act element in the interference claims, except that question is also a question for Your Honor.  Whether the act that is the basis for the interference is wrongful is also not a jury question, but a bench issue.  And so the bulk of their brief that says this whole thing is so intertwined is predicated on legal inaccuracy which --

THE COURT:  I'm sorry, but what is the -- so what is the jury issue then?

MR. LoCASCIO:  So the jury issue would be the other elements of tortious interference, meaning that did they have a prospective business, was there actual harm to them.  There is really not a dispute, the thing they say was unfair and unlawful, did we do it.  There is a question that says the jury is asked for the thing that the Court finds is unlawful, in their own slides on this, Your Honor, they point out that okay, in California, there is an instruction to the jury on the interference claims, except that specific instruction says conduct determined by the Court to be wrongful, that's the CACI 2202.  And then in the

28

instructions to that it says whether the conduct alleged qualifies as wrongful is proven or falls within the privilege of unfair competition is resolved by the court as a matter of law.  If the court let's the case go to trial, the jury's role is not to determine wrongfulness, but simply whether or not the defendant engaged in that.  This issue will present itself in some ways.

THE COURT:  I have no idea by the way what that means.  If the jury doesn't decide wrongfulness, it decides whether the defendant engaged in that, so what, I'm just sitting here saying gosh, if you pop someone in the face, that's wrongful, but I'm not deciding if you popped them in that face.  What does that even mean?

MR. LoCASCIO:  I think that provision would be a scenario where you had an agent in a corporate arrangement and the act was performed by a person and then the company took the position saying it wasn't us, Your Honor, which isn't germane here at all.

But to come back on this, the UCL claim and the tortious interference and negligent interference claims, are essentially, Your Honor --

THE COURT:  I have never had a tortious interference with business relationship or whatever not go to a jury.  Is that because we got some weird California law?  But I can tell you those always go to a jury.

133

a nice job between the rog and 30(b)(6) objection to never be pinned down as to the actual universe of these communications because they want to say their CEO says I didn't do it. I'm sure you didn't. I suspect a lawyer or a media person or somebody else did it.

MS. DUNN: For clarity, that is not accurate on the 30(b)(6). But one thing for the Court because this might help, our claim is based on the termination letter. And I think the reason Mr. Isaacson talked about it being confidential is normally the termination letter would be sent to a party. We're not saying we need your press about Qualcomm or about this case because I'm sure they do tons of press about Qualcomm and about this case. That's fine. The issue is they specifically wanted the customers and the public to know that termination was sixty days out. And by the way, that's not even a remedy they could have gotten in that trial. I just want to level set that we have been targeted at that --

THE COURT: I know, but you know what, at some point, you guys ask for so much, I can't make these fine tuning. When I said everybody can have everything, you said that sounds great to me, so I'm going with you, sounds great to me, you can produce stuff, they can produce stuff, and I can go get something to drink, just some water. I'm a little tired.

134

MS. DUNN: That sounds great, Your Honor.

THE COURT: That's it. Thank you.

COURTROOM DEPUTY: All rise. Court is in recess.

(Court recessed at 5:48 p.m.)

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.


/s/ Dale C. Hawkins
Official Court Reporter
U.S. District Court

# Exhibit 24

( ██████████████████ )

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., and            )
QUALCOMM TECHNOLOGIES, INC.,  )
                              )
          Plaintiffs,         )
                              ) C.A. No. 24-490(MN)
     v.                       )
                              )
ARM HOLDINGS PLC,             )
                              )
          Defendant.          )


                    Thursday, January 22, 2026
                    10:00 a.m.
                    Status Conference


                    844 King Street
                    Wilmington, Delaware


BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge


APPEARANCES:

          MORRIS NICHOLS ARSHT & TUNNELL LLP
          BY:  JENNIFER YING, ESQ.

          -and-

          DUNN ISAACSON RHEE LLP
          BY:  KAREN DUNN, ESQ.
          BY:  ERIN J. MORGAN, ESQ.
          BY:  JENIFER N. HARTLEY, ESQ.

          -and-

APPEARANCES (Cont'd):


          PAUL WEISS
          BY:  CATHERINE NYARADY, ESQ.
          BY:  JACOB A. BRALY, ESQ.


               Counsel for the Plaintiffs


          YOUNG CONAWAY STARGATT & TAYLOR LLP
          BY:  ANNE SHEA GAZA, ESQ.

          -and-

          KIRKLAND & ELLIS LLP
          BY:  GREGG F. LoCASCIO, ESQ.
          BY:  JASON M. WILCOX, ESQ.
          BY:  MARY BARNETT, ESQ.

               Counsel for the Defendant


          _ _ _ _ _ _ _ _ _ _ _ _ _

          COURTROOM DEPUTY:  All rise.  The United States District Court for the District of Delaware is now in session.  The Honorable Maryellen Noreika presiding.

          THE COURT:  Good morning, everyone.  Oh, gosh, everybody is backwards.  Okay.  All right.  Let's start with some introductions.

          MS. YING:  Good morning, Your Honor.  Jennifer Ying from Morris Nichols Arsht & Tunnell on behalf of the Plaintiffs.  I have with me here at counsel table today Karen Dunn, Erin Morgan and Jen Hartley from Dunn Isaacson Rhee.  And we also have Catherine Nyardy and Jake Braly from Paul Weiss.

          THE COURT:  All right.  Thank you.

          MS. GAZA:  Good morning, Your Honor.

          THE COURT:  I recognize some of the people at that table.

          MS. GAZA:  Good morning, Your Honor.  Anne Gaza from Young, Conaway on behalf of Arm.  I am joined today from Kirkland & Ellis by Gregg LoCascio, Jason Wilcox, and Mary Barnett.

          THE COURT:  All right.  Good morning to all of you.

          Okay.  So you broke the special master and we need to adjust the schedule.  Is that where we are?

          MS. DUNN:  I don't know that we would say broke, but --

          THE COURT:  I have a list of all the motions that you all filed in front of her.  And when I sent the case to the special master, I didn't intend to -- that would be just a free-for-all for you not to agree to things, but in any event, you did follow the rules and file the motions and they have not been decided.  So I'm not sure what you need.

          MS. DUNN:  Thank you, Your Honor.  Primarily we're here because I think both parties would agree the March 9th date is impractical.  And we would like to talk to the Court about a schedule and a process that we could put in place where the discovery motions that have been brought will get ruled upon.

          Obviously there is also the separate issue of the objections we filed to the special master's decision with regard to the case name.  So we could talk about that as well.  But these things will take time.

          THE COURT:  That one, though, I mean, is that sort of mooted if we consolidate the new case?

          MS. DUNN:  I would say --

          THE COURT:  Because I haven't really looked at it because I thought you were just filing a new case and then wanted to talk about whether that would be brought into this one.

          MS. DUNN:  We filed the new case as a protective matter.

          THE COURT:  Right.

          MS. DUNN:  And we believe the special master's ruling is in error for reasons I would be happy to explain.  But there are benefits to proceeding with the old case and not the new case.  And I can enumerate those.

5

One is that we would have to redo quite a lot of process that has already occurred in the old case and there is nothing different about the new case other than adding a name to the case caption. It's substantively identical.

THE COURT: When you say adding process, help me with what that means.

MS. DUNN: So, for example, a new motion to dismiss from the other side, even though Your Honor has discouraged a motion to dismiss in this case previously.

THE COURT: Nobody takes a hint in this case. You don't take a hint, they don't take a hint, that's fine, I can deal with it.

MS. DUNN: A statute of limitations argument that they have indicated that they would like to make even though the reason for the statute of limitations problem is that it ran during the seven months that the special master had our motion, so there is going to be issues with that. There has already been issues with service in this case where we asked if they would accept service in the new case and they said well, you're asking for a waiver of service so we get ninety days to respond to an identical complaint with the exact same substance. They refused to accept service for the motion to consolidate.

So the reason I say all of this is I can explain to Your Honor why the special master's ruling is in error,

6

and I believe that those reasons are so compelling that the easier thing to do and the right thing to do would be just to allow the amendment and then get the discovery motions resolved and ruled upon so we can go to trial in a timely way as opposed to redoing all of this work.

THE COURT: Okay. I will let you do that. You can tell me -- you can make your argument. I don't know that I will rule on the discovery motions because as I said, I haven't really prioritized those because I wasn't sure it was something I was going to have to deal with.

I get the gist of it which is you had gone forward with one particular defendant thinking that was the correct defendant, and then when they finally answered after the date for amending and after maybe discovery was over, they said oh, by the way, you got the wrong defendant and you're like, how are we supposed to know that if no one ever told us. And now you won't let us amend to put the right defendant in. That's the gist of your argument.

MS. DUNN: That is the gist. And I will say there is a few things that I find extremely compelling in favor of amendment that I want to call to the Court's attention.

First of all, as soon as they raised that this was a legal issue of the wrong party, which was six days after the deadline to serve discovery, they raised it on

7

June 17th. The deposition of the chief legal officer for both entities was scheduled for June 30th. So we took all the discovery we could by asking Mr. Collins, the CLO, a couple on-point questions. One of the questions he was asked is who was the party that has any responsibility or obligations with respect to the Qualcomm ALA or TLA? Because just saying that's not our name is not the same as saying this is the liable party. So we asked him the $25,000 question. And he said, "I would have to look at the contract."

And so what he's saying when he says that is that the things that Arm points to and that the special master relied upon, the SEC prospectus, were not sufficient enough even for the CLO of the company to know who was the party that had the liabilities.

So to be honest, Your Honor, I think that is dispositive because what Arm is essentially saying is even their CLO did not know and even though for their CLO their SEC prospectus which he undoubtedly approved was not sufficient, that somehow Qualcomm should have been able to divine that.

He also was expressly asked who was the party who should be sued. And he said he did not know. So they are holding us to a standard that even their CLO having knowledge of all these corporate restructures could not have

8

known.

The second thing I would say is that for over a year now, Arm has litigated this case on behalf of both parties. And I made a list of all the things that they did. So they accepted service under Arm Holdings formally known as Arm LTD. They filed three motions to dismiss, none of which raised this issue. They executed six stipulations on behalf of Arm Holdings, formally known as Arm LTD. They produced 300,000 document for Arm LTD which required them to send production letters under Arm LTD formally known as, they served nine sets of written discovery, they served three privileged logs with that same name on it and obviously responded to rogs where they never offered this defense and they also never amended for this defense. And then finally four motions for summary judgment where they never raised this.

So it seems incredibly inequitable to say that they were allowed to file things with the Court and proceed in this fashion but somehow we were not diligent in doing that. And we were diligent because the second that we -- that they told us after all the deadlines, we immediately took discovery through their chief legal officer.

We then approached them and said will you consent to an amendment. They ignored us at first. We followed up twice. They refused. And then obviously as

41

left. And the third parties were told at some future date there will be a hearing.

MR. LoCASCIO: Some of these where we land collectively on this, after we see the special master's ruling on scope, the universe of third-party protective order motions may narrow, it may not, but those are still open issues. And that will dictate or drive some of the discovery and the special master has not heard those parties on that.

So why I'm raising this is just for one, awareness, but two, I don't want to add to Your Honor's docket on the day in March that we pick. But if that issue is still open, I think it will at the latest need to be tackled around that same window so the parties can actually effect the discovery, maybe even before, and query whether that should remain with the special master or if Your Honor would say at no later, we can -- I don't think the briefing needs to be updated at all --

THE COURT: Let's put it this way, I'm not going to take it away from the special master because I'm not going to get it right. I'm going to wind up taking something I shouldn't take away and then leaving something I should. But if the special master doesn't rule on it, I will deal with it in March. If the special master rules on it, even though you don't think that she's addressed it,

42

don't file objections, just bring it to me *de novo* in March.

MS. DUNN: Understood.

THE COURT: And if the third parties want to be heard, you can let me just see -- why don't you talk to the third-party counsel, tell them what I did today, that they can be heard on that if they want to be that week in March, and just find out before we set a date, go back and talk with them about if they have a preference and you guys have a preference if there is a date that seems to work for everybody in that week. The only day that is problematic for me is the 11th, Wednesday, but if you can set it for some time that week, I will hear it.

MR. LoCASCIO: The last item I had on my list is the second, we'll call it the Arm -- I'll call it the Arm Limited complaint, the new complaint. Our motion to dismiss would also fall, the deadline to do it, would fall in this window. On the 9th, 10th, whatever day we're picking that week, Your Honor will hear the issue of objections to the amendments, whether there is an amendment and consolidation, and the parts --

THE COURT: Your time to move to dismiss, to answer, move, or otherwise respond is extended until after the March 9th hearing.

MR. LoCASCIO: Thank you.

THE COURT: Put it on your list of things to

43

discuss that issue and we'll set a date for that.

MR. LoCASCIO: Thank you.

And given the other aspects we will ask you to deal with, if we do the motion to dismiss and the other motion it may ultimately be mooted and a nonissue. So thank you.

THE COURT: Good.

MS. DUNN: Good. Thank you, Your Honor.

THE COURT: Okay.

COURT CLERK: All rise. Court is adjourned.

(Court adjourned at 11:01 a.m.)

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.


/s/ Dale C. Hawkins
Official Court Reporter
U.S. District Court

# Exhibit 25

(███████████████████)



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

QUALCOMM INC., and                  )
QUALCOMM TECHNOLOGIES, INC.,)
                                    )
            Plaintiffs,             )
                                    ) C.A. No. 24-490(MN)
    v.                              )
                                    )
ARM HOLDINGS PLC,                   )
                                    )
            Defendant.              )

                    Thursday, March 12, 2026
                    10:14 a.m.
                    Motion Hearing

                    844 King Street
                    Wilmington, Delaware

BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge

APPEARANCES:

            MORRIS NICHOLS ARSHT & TUNNELL LLP
            BY:  JENNIFER YING, ESQ.

            -and-

            DUNN ISAACSON RHEE LLP
            BY:  KAREN DUNN, ESQ.

---

APPEARANCES (Cont'd):

            -and-

            PAUL WEISS
            BY:  CATHERINE NYARADY, ESQ.
            BY:  JACOB A. BRALY, ESQ.

                Counsel for the Plaintiffs


            YOUNG CONAWAY STARGATT & TAYLOR LLP
            BY:  ANNA SHEA GAZA, ESQ.
            BY:  ROBERT VRANA, ESQ.
            BY:  DANIEL MACKRIDES, ESQ.

                Counsel for the Defendant


            K&L GATES
            BY:  MATTHEW GOELLER, ESQ.

                Counsel for ADI


            _ _ _ _ _ _ _ _ _ _ _ _ _


            COURTROOM DEPUTY:  All rise.  The United States District Court for the District of Delaware is now in session.  The Honorable Maryellen Noreika presiding.

            THE COURT:  All right.  Good morning.  Please be seated.

---

So I know that you all told me you had an agreement in principle, but I didn't know what the agreement was so I wanted you to put it on the record.  And I also wanted to talk to the parties about the schedule.

            MS. DUNN:  Good morning, Your Honor.

            THE COURT:  Good morning.

            MS. DUNN:  Karen Dunn for Qualcomm.  The agreement is the same as the agreement with the other third parties that we put on the record the other day.  Mr. Braly is pulling up the e-mail if you would like us to read that into the record.

            THE COURT:  Yes, I want something on the record and I want the third party to confirm that that's the agreement.

            MS. DUNN:  Will do.

61

THE COURT: I guess I would like to know what that would be because I don't think -- I mean, what worries me a little bit on that one is saying, you know, now it's kind of a do over where Arm Ltd puts in stuff that otherwise should have been before.

MS. GAZA: Completely understand.

THE COURT: So if it's an issue that applies to Arm Ltd, okay, but if it's not, if it's like a general issue, then I think you need to seek relief.

MS. GAZA: Completely understand. Thank you, Your Honor.

THE COURT: Okay.

MS. DUNN: Your Honor, can I just -- I think maybe a tough one, instead of applies to Arm Ltd. maybe goes to the issue of corporate structure, because all these issues apply to Arm Ltd and Arm Holdings.

THE COURT: I was thinking apply specifically to Arm Ltd, and perhaps not the other ones.

MS. DUNN: As an issue of corporate structure.

THE COURT: Maybe what you're saying is right. I don't know if it's right. If I say corporate structure, my problem is as soon as I adopt something that someone says, I don't know what the ramifications are and then I get someone saying well, you just said corporate structure and that's not what this is. You may think it means one thing

62

and I may think it means something else.

What I am trying to say is if there is an issue that is related to Arm Ltd specifically and not the others, any other corporate entity, that can certainly be addressed. If it is something that relates to Arm Ltd and the other parties and it could have been raised before by the other parties, that's not appropriate supplementation.

What I'm trying to do is give Arm Ltd, who is now a party in this case, a fair opportunity to raise issues that it needs to raise but not -- but given that Arm Ltd is related to these other companies, not a do over of everything that its related companies previously did.

MS. DUNN: Understood. And the only reason I raise it is because Arm has litigated on behalf of Arm Ltd for a long time and for the substantive issues have all been addressed, the issue here is party identity which is my understanding of what they're trying to get at, but I hear you.

THE COURT: I get it, but I'm also sure that they would disagree with you about how they have been litigating on behalf of Arm Ltd. The fact is Arm Ltd is now a party, Arm Ltd wasn't a party before, so I do think it's important that we give Arm Ltd a fair shot at some of this stuff. That being said, I'm not blind to the reality that it is the same lawyers and, you know, a company that is

63

related to the other companies that are here. So we're not using the new party to open up discovery on everything that should have been litigated before. But certainly if there are issues, like the statute of limitations that seems to apply, or perhaps apply to Arm Ltd but didn't apply to the others, then I am not going to preclude them from raising it. But I'm not going to say that's the only issue because I don't know enough about the case. Okay?

MS. NYARDY: Your Honor, in light of --

THE COURT: There is always more clarification.

MS. NYARDY: In light of the statement that there may be other things that these experts are going to do related to other defenses that are unique to Arm Ltd, I just would ask if we could get one contention interrogatory on the new defenses because otherwise we're going into expert discovery, presumably, probably even in rebuttal getting reports and the defenses that we're going to have no discovery on.

THE COURT: Are you saying you only want that to the extent that it is a defense that is unique to Arm Ltd?

MS. NYARDY: Yes, correct.

THE COURT: So the only defense that is unique to Arm Ltd, statute of limitations, that's all you would be asking for in a contention interrogatory?

MS. NYARDY: That is correct, Your Honor.

64

THE COURT: Ms. Gaza, thoughts?

MS. GAZA: We have no objection, Your Honor.

THE COURT: Okay. So that's fine.

Summary judgment, like I said, I just -- so Arm Ltd is allowed to file on the good faith and fair dealing issue as I mentioned the other day. If there is a summary judgment motion on the statute of limitations, that can be filed. Anything other than that cannot be filed without leave of the Court.

MS. GAZA: Thank you, Your Honor. With respect to the statute of limitations summary judgment, would that also be limited to fifteen pages?

THE COURT: Yes.

MS. GAZA: Thank you, Your Honor.

THE COURT: Okay. So nobody else can do anything on summary judgment unless you receive leave of the Court.

I am not going to set a date for a hearing because I don't know when I'll be able to turn to this stuff, but if we need a hearing on those things, we'll set something.

Any other things we have to talk about on the schedule?

MS. GAZA: In terms of timing, Your Honor, for when these things happen, I believe we still need to decide

which dates apply, and just --

THE COURT:  I thought you guys could go back and agree.

MS. GAZA:  Thank you, Your Honor.

MS. NYARDY:  Nothing further from Qualcomm, Your Honor.

MS. GAZA:  Nothing further from Arm, Your Honor.

THE COURT:  All right.  Thank you, everyone. Have a good rest of the day.

MS. NYARDY:  Your Honor, one more thing before we get off the record.  I did find the interrogatory numbers that I could not remember previously.  So for the OoB and the patches, the delivery to third parties, it's Interrogatory No. 1.

Thank you.

THE COURT:  Okay.  Thank you all.

COURTROOM DEPUTY:  All rise.  Court is adjourned.

(Court adjourned at 11:53 a.m.)

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.


                    /s/ Dale C. Hawkins
                    Official Court Reporter
                    U.S. District Court

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 1, 2026, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jennifer Ying
Travis Murray
Morris, Nichols, Arsht
& Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
Connolly Gallagher LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
Dunn Isaacson Rhee LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
richard.zembek@nortonrosefulbright.com

Ruby J. Garrett
Adam L. Basner
William T. Marks
Paul, Weiss, Rifkind,
Wharton & Garrison LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweiss.com
abasner@paulweiss.com
wmarks@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Flint A. Patterson
Paul, Weiss, Rifkind,
Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
fpatterson@paulweiss.com

grp-qcvarm@paulweiss.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607
john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants*

2