IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED,<br>　a Delaware corporation; and<br>QUALCOMM TECHNOLOGIES, INC.,<br>　a Delaware corporation,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ARM HOLDINGS PLC., f/k/a ARM LTD.,<br>　a U.K. corporation,<br><br>　　　　　Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 24-490 (MN)<br>(CONSOLIDATED)<br><br>████████████<br><br>████████<br><br>REDACTED - PUBLIC VERSION |

### PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO ARM'S MOTION FOR SUMMARY JUDGMENT ON QUALCOMM'S <u>V10-RELATED CLAIMS</u>

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
Jenifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
PAUL WEISS, RIFKIND, WHARTON
　& GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

William T. Marks
Adam L. Basner
PAUL WEISS, RIFKIND, WHARTON
　& GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

July 15, 2026

ORIGINAL FILING DATE: JULY 15, 2026
REDACTED FILING DATE: JULY 22, 2026

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................ 1

SUMMARY OF ARGUMENT .................................................................................................... 2

FACTUAL BACKGROUND AND NATURE AND STAGE OF THE PROCEEDINGS ........... 3

LEGAL STANDARD .................................................................................................................. 8

ARGUMENT ............................................................................................................................... 9

I.    QUALCOMM'S V10-RELATED CLAIM FOR BREACH OF THE IMPLIED
COVENANT IS WELL GROUNDED IN GOVERNING LAW. ................................................ 9

II.    EQUITABLE RELIEF IS AVAILABLE FOR QUALCOMM'S EXPRESS BREACH
OF CONTRACT CLAIM. .......................................................................................................... 12

III.    QUALCOMM'S V10 CLAIMS ARE NOT TIME BARRED. ....................................... 13

CONCLUSION .......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*AMG & Assocs., LLC* v. *AmeriPride Servs., Inc.*,
   2016 WL 9275402 (C.D. Cal. 2016)..................................................................................12

*Avidity Partners, LLC* v. *California*,
   165 Cal. Rptr. 3d 299 (Cal. Ct. App. 2013)........................................................................9

*Bertola* v. *Fisher-Price, Inc.*,
   2025 WL 1166431 (Del. Super. Ct. 2025)...........................................................................14

*Boerger* v. *Heiman*,
   965 A.2d 671 (Del. 2009) .........................................................................................13, 14

*Copeland* v. *Baskin Robbins U.S.A.*,
   117 Cal. Rptr. 2d 875 (Ct. App. 2002) .............................................................................10, 13

*Genesis 1 Oil Servs., LLC* v. *Wismann Grp., LLC*,
   2023 WL 8125773 (C.D. Cal. 2023)..................................................................................12

*Guidiville Rancheria of Cal.* v. *United States*,
   704 F. App'x 655 (9th Cir. 2017) ....................................................................................10

*Hewlett-Packard Co.* v. *Oracle Corp.*,
   280 Cal. Rptr. 3d 21 (Ct. App. 2021) ...............................................................................10

*In re Sony Gaming Networks & Customer Data Sec.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014)................................................................................12

*Le Pape* v. *Lower Merion Sch. Dist.*,
   103 F.4th 966 (3d Cir. 2024) ...........................................................................................9

*LGM Holdings, LLC* v. *Schurder*,
   340 A.3d 1134 (Del. 2025) .............................................................................................14

*Moore* v. *Wells Fargo Bank N.A.*,
   251 Cal. Rptr. 3d 779 (Ct. App. 2019) ............................................................................9, 10

*Naidong Chen* v. *Fleetcor Techs., Inc.*,
   2017 WL 1092342 (N.D. Cal. 2017) ................................................................................10

*Neurvana Med., LLC* v. *Balt USA, LLC*,
   2020 WL 949917 (Del. Ch. 2020) ................................................................................14, 15

*Oakland Bulk & Oversized Terminal, LLC* v. *City of Oakland*,
   334 Cal. Rptr. 3d 488 (Ct. App. 2025) ........................................................................9, 10, 11, 12

ii

*Pasadena Live* v. *City of Pasadena*,
8 Cal. Rptr. 3d 233 (Ct. App. 2004) ........................................................................9

*Pivotal Payments Direct Corp.* v. *Planet Payment, Inc.*,
2020 WL 7028597 (Del. Super. Ct. 2020) ..............................................................15

*Porter* v. *Delmarva Power & Light Co.*,
1991 WL 218605 (Del. Super. Ct. 1991) ................................................................15

*Taylor* v. *Johnston*,
539 P.2d 425 (Cal. 1975) (en banc) ......................................................................15

*Zenith Energy Terminals Joliet Holdings LLC* v. *CenterPoint Props. Tr.*,
2023 WL 615997 (Del. Super. Ct. 2023).........................................................14, 15

**Statutes**

10 Del. C. § 8106 ..........................................................................................................14

## INTRODUCTION

Arm is obstructing Qualcomm's access to version 10 (v10) of the Arm architecture in defiance of both implied and express obligations under Qualcomm's ALA, including by delaying negotiations with Qualcomm for a v10 license and subsequently refusing to negotiate ███████████. These breaches are deliberate and intended to harm Qualcomm. Qualcomm currently licenses ███ ███████ of the Arm architecture for its market-leading products. ████████████████████ ████████████████████████████████████████████████ ████████████████████████ Accordingly, prompt access to v10 is critical. Yet Arm maintains that Qualcomm cannot enforce either the implied or express contractual obligations that Arm continues to breach. Arm's efforts to avoid adjudication of Qualcomm's v10 claims—so it can continue to engage unfettered in efforts to prevent Qualcomm from competing, including with Arm's new chip making business—should be rejected.

Because Arm has the discretion to declare a new "version" of the architecture at any point, the parties ████████████████████████████████████████████ ███████████ including in ████████████ That provision allows Qualcomm to ████████ ████████████████████████████████████████████████ ████████████████████████████████. In ████████, Qualcomm ████████████████ ████████ Arm did not object. ████████████████████████████████████ ████████████████████ But because Arm appeared to accept Qualcomm's ████████, Qualcomm believed that its rights would be honored.

It was not until 2024, when ████████████████████████████████████████████████ that Qualcomm realized Arm was frustrating its right to negotiate for v10. Qualcomm promptly responded by bringing a claim for breach of the implied covenant of good faith and fair dealing. It was not until at least mid-2025, when Arm told Qualcomm ████████████████████████████

1

████████ that Qualcomm realized Arm did not consider itself bound by its express contractual obligations. It did not become clear that Arm had no intention of negotiating ████████—notwithstanding its assurance it would do so—until even later. Once again, Qualcomm timely sought relief, this time for express breach of ████████.

Arm asserts it is entitled to summary judgment on both of Qualcomm's claims—not on their merits, but on the theory that they cannot proceed at all. Arm effectively maintains that its ongoing and increasingly harmful v10-related conduct is beyond the reach of this or any court. But Arm's legal arguments are meritless. Qualcomm's implied covenant claim is both legally and factually distinct from breach of ████████. It arises from obstruction through which Arm frustrated the timely pursuit of v10 negotiations, ████████████████, including by ████ ████████████████████████████████████████ ████████████████; hiding development of v10 until 2024; and hiding for more than five years its apparent position that Qualcomm ████████████████████████ ██. Qualcomm's express breach claim, on the other hand, arises from Arm's outright repudiation of its ████████ obligations and ████████████████████████ ████████████████████████████████████████. The relief Qualcomm seeks—an order requiring Arm to negotiate ████████—is legally permissible. And both claims are timely, given that Qualcomm brought each within three years of discovering the underlying conduct.

Arm's motion should be denied and its conduct adjudicated on the merits.

## SUMMARY OF ARGUMENT

I.    Qualcomm's v10-related claim for breach of the implied covenant is well grounded in governing law. By telling Qualcomm no one was working on v10 then concealing critical

information from Qualcomm to delay the v10 negotiations ████████████ Arm[1] engaged in conduct that frustrated the purpose of the ALA.  The conduct giving rise to Qualcomm's express breach claim—Arm's subsequent repudiation of and abject failure to comply with ███████— is distinct.  Qualcomm's claim also does not seek to impose obligations beyond those to which Arm agreed; it seeks redress for actions Arm took to undermine its existing contractual obligation.

II.     California law confirms that Qualcomm may seek equitable relief for Arm's breach of its obligation ██████████████.  The single case Arm cites concerns only what damages are available for such claims, not the availability of equitable relief.

III.    The statute of limitations does not bar Qualcomm's v10 claims.  Neither claim accrued in 2020 when Qualcomm ████████████████, as Arm did nothing at that time to put Qualcomm on notice of any intention not to negotiate █████████.  Qualcomm did not know until 2024 that Arm had been working on v10, while simultaneously maintaining that v10 was not available to be licensed, so the statute of limitations did not begin to run on Qualcomm's implied covenant claim until then.  And it did not begin to run on Qualcomm's express breach claim until (at the earliest) 2025, when Arm asserted that Qualcomm had ███████████ ██████.  These claims were thus each brought within Delaware's three-year limitations period.

**FACTUAL BACKGROUND AND NATURE AND STAGE OF THE PROCEEDINGS**

Under ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

---

[1] "Arm" refers to both Arm Holdings plc and Arm Ltd. unless one is specified.  D.I. 815 at 1.

██████.”[2] D.I. 817 Ex. 1 § ██████. Arm was clear when negotiating the ALA that it ███████████████████████████████████████████████ ████████████████████████████ Ex. 2 at -34. Qualcomm in-house counsel, Jonathan Weiser, confirmed that ██████████████████████████ ████████████████████████████████████████ (Ex. 3 at 98:12-99:3 (Weiser)) and to address Qualcomm's ████████████████████ ██████████████ Ex. 4 at -181; Ex. 3 at 56:3-18, 78:23-79:4 (Weiser).

Qualcomm had to ████████████████████████████████████. D.I. 817 Ex. 1 § ████████. ████████████████████████████████ CSOF ¶ 1. █████████████████████████████ *Id.* Nonetheless, on ██████████, Qualcomm told Arm that it would "go ahead and move forward" per ██████████████████ ████████████████████████████████████ *Id.* ██████████████ ████████████████████████████████████████ *Id.*; CSOF ¶ 2.

Arm did not reject ████████████ or otherwise respond to it. CSOF ¶ 3. This did not raise concerns with Qualcomm because Arm had told it that ████████████████ and therefore Arm could not yet negotiate terms for Qualcomm's v10 access. Ex. 5 at -570. Qualcomm continued to meet with Arm, including about its licenses, and to engage in discussions with Arm about the architecture. CSOF ¶ 5. During these discussions from 2020 through 2023, Arm never gave Qualcomm any indication that it was working on or negotiating licenses for v10. CSOF ¶ 6.

In 2024, Qualcomm learned for the first time that ██████████████████████ ██████████ Ex. 10 at 29:8-30:4 (Williams 30(b)(6)). ████████████████████████ ██████████████████ CSOF ¶ 4. In October 2024, Arm told Qualcomm it was ██████████



---

[2] Unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability. All emphasis is added unless otherwise indicated.

███████████████████████████████████████████████████

██████████ CSOF ¶ 6.

In late 2024, the parties discussed ████████████████████

███████████████████████████████████████████████████

█████████████████████████ CSOF ¶ 8.

Though Arm had not yet disavowed its obligation ████████████████████, and Qualcomm remained hopeful that Arm would honor its obligation, it was clear Arm had frustrated the timely pursuit of those negotiations, ██████████████████ So, prior to the March 2025 deadline to move to amend in the Arm Holdings case (D.I. 44 ¶ 2), Qualcomm moved to add a claim for breach of the implied covenant of good faith and fair dealing based on Arm's failure to ████████████████████, which concealed Arm's avoidance of its obligation, its development of v10, and the availability of v10 for licensing. D.I. 137 ¶¶ 131-34, 184-86.

In April 2025, after the filing of Qualcomm's implied covenant claim, Qualcomm contacted Arm again, stating ████████████████████ ████████████████ and ██████████████████████ CSOF ¶ 9. ████████████████████████████████████ Id. Qualcomm did not understand

Arm finally responded on June 4, 2025. In that letter, Arm's Chief Commercial Officer, Will Abbey, informed Qualcomm for the first time that Arm thinks that "███████████████ ███████████████████████████████████████████████████ ████████████████" CSOF ¶ 10. ██████████████████ ████████████████████████████ Id. Qualcomm did not understand Arm's position ██████████████ so, on June 9, 2025, it followed up. CSOF ¶ 11. On June 13, 2025, Arm's Chief Legal Officer Spencer Collins wrote back, stating that "█████████

5

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ CSOF ¶ 12.  He nevertheless stated that

█████████████████████████████████████████ while disclaiming any obligation to do so (*id*.),

making it unclear whether Arm's rejection of ████████████ would cause Qualcomm harm

beyond the existing delay in contracting for v10.

On August 8, 2025, █████████████████████████████████████████████████

████████████████████ CSOF ¶ 13.  Arm replied on August 29, ████████████████████

████████████████████████████████████████ CSOF ¶ 14.  Qualcomm ██████████████

on September 22.  CSOF ¶ 15.  Qualcomm did not hear anything back from Arm about v10, so it

sent a follow-up letter on December 1, 2025.  CSOF ¶ 16.

On December 10, 2025, Arm finally wrote back, but it ████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████. CSOF ¶ 17.  ████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ Ex. 17 at

¶ 105.  ██████████████████████████████████████████████████████████████████

█████████████████████████████████████████████. *Id.* at Fig. 30.

Qualcomm  responded  on  January  5,  2026,  explaining  that  ██████████████████

████████████████████████████████████████████████████████████████████████

████████████████ CSOF ¶ 18.  ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

6

wants to change. CSOF ¶ 19. At the parties' meeting, ████████████████████ *Id.*

Following the meeting, ████████████████████████████████████

████████████████████████████████████████CSOF ¶ 20.

On March 19, 2026, ████████████████████████████████

██████████ CSOF ¶ 21. ████████████████████████

████████████████████████████████████████

████████████████████████████ D.I. 817 Ex. 15 at -874. The ████

███████ remained commercially unreasonable. Ex. 22 at -917. ████████████

████████████████████████████████████████

████████████████████████████████████████

████████. Ex. 17 at Fig. 32. In the mobile phone sector, based on publicly available

information about Apple's ████ rates, the rates Arm proposed to Qualcomm ████████████

████████████████████████████████████████.

*Id.*; Ex. 24 at -209. This discrepancy is a blatant attempt to prevent Qualcomm from competing,

as Apple is, by Apple's own admission, Qualcomm's competitor. Ex. 25 at 1.

Across its proposals, Arm seeks to increase Qualcomm's ████████████████

████████████████ Ex. 17 at Fig. 42. ████████████████

████████████████. Ex. 19 at -22; D.I. 817 Ex. 15. Arm's March 19, 2026

proposal that again contained commercially unreasonable terms confirmed to Qualcomm that the

████████████████ offered in Mr. Collins' June 2025 letter were not forthcoming. Arm also

filed its Answer to the original Arm Ltd. complaint on March 18, 2026, stating its intention to

defend against the implied covenant claim by asserting it *has negotiated* ████████, including

by making its December 2025 proposal. D.I. 757 at 47. With Arm's conduct continuing to confirm

7

its breach and the parties' negotiation history already at issue, on March 30, 2026, Qualcomm amended its complaint against Arm Ltd. to plead express breach of ███████████ D.I. 765 ¶¶ 144-166, 274-78.  Qualcomm has nonetheless continued its own ███████████ efforts.

In May 2026, through discovery, Qualcomm learned that, ███████████

███████████████████████████████████████████████

███████████████████████ CSOF ¶ 7; D.I. 817 Ex. 9.  On ███████████

███████████████████ CSOF ¶ 22.  ███████████████████████

███████████████████████████████ *Id.*  The parties most recently met to discuss v10 on June 16, 2026.  At that meeting, ███████████

███████████████████████████████████████████████

███████████████ Ex. 28 at 5.  In light of this, ███████████

███████████████████████████████████████████████

███████████. CSOF ¶ 23.  In other words, ███████████████████████

███████████ but is trying to ensure that it can still compete with Arm's more favored licensees and Arm itself.  ███████████████████████

███████████████████████████████████████ *Id.*

Other Arm licensees ███████████████████████████████

███████████████████ E.g., Ex. 29 at -985; Ex. 26; Ex. 30 at 156:23-157:1 (Haas).  Meanwhile, Qualcomm is still waiting for Arm to present a commercially reasonable and complete offer.  Arm's misrepresentation, obfuscation, delay, and refusal to act in good faith has harmed ███████████████████████. Ex. 31 at 64:22-65:5 (Amon); *see also* Ex. 32 at 73:16-25 (Asghar).



## LEGAL STANDARD

Summary judgment is only appropriate where there is "no genuine issue as to any material

fact and the movant is entitled to a judgment as a matter of law," when viewing the evidence "in the light most favorable to the non-moving party." *Le Pape* v. *Lower Merion Sch. Dist.*, 103 F.4th 966, 977 (3d Cir. 2024).

## ARGUMENT

### I.    QUALCOMM'S V10-RELATED CLAIM FOR BREACH OF THE IMPLIED COVENANT IS WELL GROUNDED IN GOVERNING LAW.

Arm argues that it is entitled to summary judgment on Qualcomm's claim for breach of the implied covenant, either because Qualcomm cannot "forgo a claim for breach of an express covenant to pursue an implied covenant claim for the same promise" or because the claim seeks "to impose obligations beyond those" in the ALA.  D.I. 815 at 7, 9.  Both arguments are wrong.  As Arm acknowledges, the implied covenant of good faith and fair dealing prevents a party from engaging in conduct that "frustrates the other party's rights to the benefits of the contract."  D.I. 815 at 7-8 (citing *Avidity Partners, LLC* v. *California*, 165 Cal. Rptr. 3d 299, 320 (Cal. Ct. App. 2013)).  That "promise" is distinct, and it is precisely what Qualcomm alleges Arm has violated, by intentionally delaying Qualcomm's ability to obtain access to v10.  E.g., D.I. 765 ¶¶ 68, 229-30; D.I. 137 ¶¶ 131-34.  At the same time, because Qualcomm's claim seeks only to address conduct that frustrates an existing contractual obligation in the ALA, the claim does not seek to impose obligations beyond those in the ALA. *Oakland Bulk & Oversized Terminal, LLC* v. *City of Oakland*, 334 Cal. Rptr. 3d 488, 522 (Ct. App. 2025).

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Moore* v. *Wells Fargo Bank N.A.*, 251 Cal. Rptr. 3d 779, 788 (Ct. App. 2019).  The duty requires a party "to do everything that the contract presupposes that he will do to accomplish its purpose." *Pasadena Live* v. *City of Pasadena*, 8 Cal. Rptr. 3d 233, 236 (Ct. App. 2004); *Oakland Bulk*, 334 Cal. Rptr. 3d at 522.  It is particularly applicable where one

party has discretionary power affecting rights of another. *Moore*, 251 Cal. Rptr. 3d at 788; *Hewlett-Packard Co.* v. *Oracle Corp.*, 280 Cal. Rptr. 3d 21, 30-38, 63 (Ct. App. 2021) (implied covenant breached by using discretion to not make available certain technology and thus frustrating a contractual right to delivery of same).

Courts have found that a defendant can be liable for breaches of both the implied covenant and an express contract provision, including a provision █████████,[3] when the implied covenant claim arises from (a) conduct not fully captured by an express breach claim, or (b) obstruction that may not constitute an express breach. *Guidiville Rancheria of Cal.* v. *United States*, 704 F. App'x 655, 657-60 (9th Cir. 2017) (plaintiff could pursue both implied covenant claim and claim for express breach of a duty to negotiate in good faith when implied claim arose from defendant's efforts to prevent approvals that were conditions precedent to negotiation obligation, while express breach arose from failure to negotiate in good faith); *Naidong Chen* v. *Fleetcor Techs., Inc.*, 2017 WL 1092342, at *11-12 (N.D. Cal. 2017) (plaintiff could go to trial on express breach and implied covenant claims concerning failure to negotiate performance criteria).

For example, in *Oakland Bulk*, the city of Oakland entered an agreement allowing the plaintiff to develop a cargo shipping terminal. When it no longer found the contract desirable, the city terminated the agreement on grounds that the plaintiff failed to meet a particular milestone date. But the city itself had taken actions to prevent the plaintiff from meeting that milestone, including failing to substantively respond to communications, rejecting communications without any real basis, creating delay, seeking unnecessary concessions in negotiations, and failing to address obstacles. The court of appeal affirmed that the city breached both (a) an express provision

---

[3] The implied covenant does not apply to negotiations *unless* there is a provision requiring negotiation. *Copeland* v. *Baskin Robbins U.S.A.*, 117 Cal. Rptr. 2d 875, 883 (Ct. App. 2002). ("Only when the parties are under a contractual compulsion to negotiate does the covenant of good faith and fair dealing attach, as it does in every contract.").

in the agreement, by terminating the agreement after plaintiff failed to meet the milestone when the city's conduct constituted force majeure that triggered a contractual right to an extension of time to reach the milestone, and (b) the implied covenant, because the city's obstruction frustrated the purpose of the agreement. 334 Cal. Rptr. 3d at 503, 509, 513-23.

That is precisely the situation here. Even before it ultimately breached its express contractual obligation to ███████████████, Arm violated the implied covenant by frustrating Qualcomm's ability to timely enter into negotiations for v10 in the first place, by: (a) ███████ ████████████████████████████████████████████████████████████████ when in reality ████████████████████████████████████ around the same time; (b) hiding during regular Qualcomm interactions from 2020 until 2024 that ████████████████ ████████████; and (c) not informing Qualcomm for more than five years of its apparent position that Qualcomm ███████████████████████████████████.[4] CSOF ¶¶ 4-7, 10-12. This concealment and obstruction frustrated the purpose of Qualcomm's contract by delaying v10 negotiations ████████████████████ and ultimately delaying Qualcomm's access to v10, thus undermining the business continuity for which Qualcomm had negotiated.

By contrast, the express breach claim did not arise at least until ████████████ ████████████████████████, asserting that it was under no contractual obligation to ████████████████████████████████. D.I. 817 Exs. 8-9. That was not just a matter of delay; it was a claim that Arm did not need to abide by the ALA. And while Arm continued to try to frustrate Qualcomm's ability to seek legal recourse by representing that it████████████ ████████████████, Arm then failed to do so. *Supra* pp. 6-8; CSOF ¶¶ 13-23.

---

[4] Arm defends against Qualcomm's implied covenant claim by asserting that it ████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

11

In short, the conduct underlying Qualcomm's claims for breach of the implied covenant and breach of ███████ is distinct:  while the former is focused on Arm's efforts to delay access to v10, the latter is focused on Arm's ultimate refusal of, and failure to ████████ ████████.  Qualcomm's implied covenant claim does not require the Court to impose obligations beyond the terms of the contract because it seeks only to address conduct that undermined the existing contractual obligation ███████████.  *Oakland Bulk*, 334 Cal. Rptr. 3d at 522-23.  Qualcomm's implied breach claim thus fits comfortably within governing law.

## II.   EQUITABLE RELIEF IS AVAILABLE FOR QUALCOMM'S EXPRESS BREACH OF CONTRACT CLAIM.

Arm argues that it is entitled to summary judgment on Qualcomm's claim for express breach of ███████ because California law purportedly "does not allow" equitable relief for the breach of ████████████.  But California courts routinely allow parties to seek specific performance and comparable equitable remedies for breach of contract claims alleging ████████████.  *Genesis 1 Oil Servs., LLC* v. *Wismann Grp., LLC*, 2023 WL 8125773, at *3 (C.D. Cal. 2023) (denying summary judgment on claim alleging breach of "agreement to use best efforts to negotiate in good faith" that sought specific performance); *AMG & Assocs., LLC* v. *AmeriPride Servs., Inc.*, 2016 WL 9275402, at *5 (C.D. Cal. 2016) (denying motion to dismiss contract claim premised on "refusing to continue negotiations" in bad faith that sought specific performance); *In re Sony Gaming Networks & Customer Data Sec.*, 996 F. Supp. 2d 942, 1013 (S.D. Cal. 2014) (same where plaintiffs sought specific performance of the contract based on fact that defendant failed to negotiate or "negotiated with Plaintiffs in bad faith"); *see also Oakland Bulk*, 334 Cal. Rptr. 3d at 502, 511-12 (affirming award of equitable relief in case involving repudiation of contract and "failing to negotiate in good faith").  This relief is also readily available under the parties' contract.  D.I. 817 Ex. 1 § ███

12

The lone case Arm cites in support of its contrary argument, *Copeland* v. *Baskin Robbin*s, had nothing to do with the availability of equitable remedies.  That case examined the kind of *damages* available for breach of an obligation to negotiate, holding that "*damages for the injured party's lost expectations* under the prospective contract" are not available, "but *damages caused by the injured party's reliance* on the agreement" are.  117 Cal. Rptr. 2d at 883.  Qualcomm is not seeking damages on its express breach claim.  D.I. 815 at 11.  Qualcomm instead seeks only "an Order requiring Arm to comply with all of its obligations under the QC ALA," including "by ███████████████████████████████████████████████████████, without discrimination or retaliation."  D.I. 765, Prayer for Relief ¶ B; *see also id.* ¶ 278.

### III.    QUALCOMM'S V10 CLAIMS ARE NOT TIME BARRED.

Arm argues that Qualcomm's v10 implied covenant claim and express breach claim are untimely because Qualcomm first contacted Arm about licensing v10 in ███ and did not pursue its claims until early 2025 and 2026.  D.I. 815 at 12-15.  But the question is not when Qualcomm ████████████████████████; rather it is when Qualcomm learned that Arm was frustrating Qualcomm's efforts to enter into negotiations regarding the terms and conditions of ███████████████████████████████████████.  Qualcomm did not obtain that critical information until several years later.

*First*, as to the implied covenant claim, Qualcomm alleges Arm breached by hiding for years (a) ████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████ and (b) its position that Qualcomm █████████████████████████████████████ *Supra* pp. 4-5.  The relevant question for timeliness purposes is when Qualcomm was on sufficient notice of Arm's concealment.  *Boerger* v. *Heiman*, 965 A.2d 671, 674 (Del. 2009) (summary judgment is improper where there is a dispute about when a reasonable person "would have been alerted").

13

As discussed *supra*, Qualcomm was not on notice that Arm was not doing "everything that the contract presupposes" it "will do to accomplish its purpose" under 2024. CSOF ¶¶ 1-6; *see supra* pp. 9-12. That is well within the three-year statute of limitations. 10 Del. C. § 8106. And Qualcomm did not learn that ██████████████████████████████████████████████ ███████████ CSOF ¶ 7. Because Qualcomm was "blamelessly ignorant" of Arm's breaching conduct, the statute of limitations did not begin to run until Qualcomm discovered facts sufficient to put it on notice of that conduct—which was less than three years before Qualcomm brought its implied claim. *Boerger*, 965 A.2d at 674. At the very least, there is a genuine dispute of material fact as to whether Arm's "partial disclosure of facts" about ██████████████████████████ "in a misleading or incomplete way" tolled the statute of limitations until Qualcomm learned that Arm was frustrating the parties' agreement. *LGM Holdings, LLC* v. *Schurder*, 340 A.3d 1134, 1148 (Del. 2025); *Bertola* v. *Fisher-Price, Inc.*, 2025 WL 1166431, at *4-6 (Del. Super. Ct. 2025).

*Second*, as to the express breach claim, that claim did not accrue (at the earliest) until Arm's "outright refusal" to perform its obligations under ██████████████ in June 2025. *Neurvana Med., LLC* v. *Balt USA, LLC*, 2020 WL 949917, at *21 (Del. Ch. 2020); *Zenith Energy Terminals Joliet Holdings LLC* v. *CenterPoint Props. Tr.*, 2023 WL 615997, at *8 (Del. Super. Ct. 2023); CSOF ¶¶ 10-12. Arm's conduct before then delayed negotiations far beyond when they should have begun. But it was not until that express disavowal that Qualcomm was on notice of Arm's position that, notwithstanding the contract, it does not have any obligation to ███████████████████ ████████. Even then, ███████████████████████████████████████████ D.I. 817 Ex. 9. Then, as described, Arm did not negotiate ██████████████ at all. CSOF ¶¶ 13-23.

Arm claims that Qualcomm's express breach claim accrued all the way back in 2020 at the time of Qualcomm's ████████ D.I. 815 at 12. But Qualcomm could not plausibly have alleged

14

that Arm had no intention of ever ███████████████████████████████████

███████████████████████████████████████████.  *See, e.g.*, *Neurvana Med.,*

*LLC*, 2020 WL 949917, at *21; *Taylor* v. *Johnston*, 539 P.2d 425, 430, 432 (Cal. 1975) (en banc)

(postponing performance was not anticipatory breach).  Arm does not even allege that it was

required to do so.  *Pivotal Payments Direct Corp.* v. *Planet Payment, Inc.*, 2020 WL 7028597, at

*8 (Del. Super. Ct. 2020) (denying summary judgment because of genuine dispute over when time

for performance ran).  Had Qualcomm tried to sue Arm for breach of ██████████ before its

disavowal of any obligations under that provision—and before Arm even made a proposal for

v10—Arm undoubtedly would have said Qualcomm had no claim then, and that Arm intended to

negotiate ██████████ in due course.  *Zenith Energy*, 2023 WL 615997, at *8-9 (rejecting that

breach claim accrued before defendant "refused to take further measures").

Even if the conduct underlying Qualcomm's implied covenant claim provided a basis for

alleging express breach earlier, Qualcomm did not discover that conduct until 2024.  *Supra* pp. 4-

5.  Moreover, "it is not in keeping with the concept of statute of limitations to bar a claim based

on ongoing conduct."  *Porter* v. *Delmarva Power & Light Co.*, 1991 WL 218605, at *2 (Del.

Super. Ct. 1991).  At the least, there are again factual disputes that preclude summary judgment.[5]

## CONCLUSION

Arm's motion for summary judgment as to Qualcomm's v10-related claims for breach of

the implied covenant of the ALA and breach of ██████████ of the ALA should be denied.

---

[5] Perhaps recognizing that the ongoing nature of its conduct is harmful to its statute of limitations argument, Arm claims that "any reasonable juror would agree that Arm has not just complied with, but exceeded, its sole obligation in ██████████████" D.I. 815 at 15.  But Arm has not moved for summary judgment on the grounds that there is no genuine dispute of material fact as to whether it has engaged in ████████ negotiations—and for good reason.  *See supra* pp. 5-8.

15

OF COUNSEL:

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
Jenifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC  20004
(202) 240-2900

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
PAUL WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

William T. Marks
Adam L. Basner
PAUL WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
(202) 223-7300

July 15, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

16

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 15, 2026, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                                                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendants*

Scott F. Llewellyn, Esquire                                                *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202
*Attorneys for Defendants*

Sydney D. Gaskins, Esquire                                                 *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017
*Attorneys for Defendants*

Alexandra Corrinne Hottenrott, Esquire                                     *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
*Attorneys for Defendants*

Daralyn J. Durie, Esquire                                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendants*

17

Lydia B. Cash, Esquire
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX  78701
*Attorneys for Defendants*

*VIA ELECTRONIC MAIL*

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Matthew J. McIntee, Esquire
Megan McGlynn Butler, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Attorneys for Defendants*

*VIA ELECTRONIC MAIL*

Jay Emerick, Esquire
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
*Attorneys for Defendants*

*VIA ELECTRONIC MAIL*

Peter Evangelatos, Esquire
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*

*VIA ELECTRONIC MAIL*

Meghan Kelly, P.C.
KIRKLAND & ELLIS LLP
2005 Market Street
Suite 1000
Philadelphia, PA 19103
*Attorney for Defendants*

*VIA ELECTRONIC MAIL*

*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)