IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation, Plaintiffs, | ) | C.A. No. 24-490 (MN) (CONSOLIDATED) |
| v. | ) | |
| ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation, Defendant. | ) | |

**[PROPOSED] FINAL JURY INSTRUCTIONS**

**TABLE OF CONTENTS**


1. GENERAL INSTRUCTIONS .......... 3
   1.1. Introduction .......... 3
   1.2. Jurors' Duties .......... 4
2. THE PARTIES AND THEIR CONTENTIONS .......... 5
   2.1. The Parties .......... 5
   2.2. (Disputed) The Parties' Contentions .......... 6
3. TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS .......... 7
4. EVIDENCE .......... 8
5. DIRECT AND CIRCUMSTANTIAL EVIDENCE .......... 10
6. BURDENS OF PROOF .......... 11
7. CONSIDERATION OF EVIDENCE .......... 13
8. CREDIBILITY OF WITNESSES .......... 14
9. BREACH OF CONTRACT .......... 16
   9.1. (Disputed) Introduction—Qualcomm ALA .......... 16
   9.2. (Disputed) Introduction—Qualcomm TLA .......... 18
   9.3. (Disputed) [Arm's Proposal: Contract Formation—Essential Factual Elements .......... 20
   9.4. (Disputed) [Arm's Proposal: Corporate Structure .......... 21
   9.5. (Disputed) Express Breach of Contract—Essential Factual Elements .......... 22
   9.7. Qualcomm TLA Occurrence of Agreed Condition Precedent .......... 24
   9.8. (Disputed) [Arm Proposal: Qualcomm TLA Occurrence of Agreed Condition Precedent 25
   9.9. Breach of Implied Covenant of Good Faith and Fair Dealing – Essential Factual Elements .......... 26
   9.10. (Disputed) [Arm's Proposal: Breach of the Implied Covenant of Good Faith and Fair Dealing – Relationship to Express Terms .......... 27
   9.11. Contract Interpretation—Disputed Words .......... 28
   9.12. Interpretation—Meaning of Ordinary Words .......... 29
   9.13. Interpretation—Meaning of Technical Words .......... 30
   9.14. Interpretation—Construction of Contract as a Whole .......... 31
   9.15. Interpretation—Construction by Conduct .......... 32
   9.16. Introduction to Contract Damages .......... 33
   9.17. (Disputed) [Qualcomm Proposal: Nominal Damages .......... 35

9.18. Mitigation of Damages ........ 36

10. ECONOMIC INTERFERENCE ........ 37

10.1. (Disputed) Intentional Interference With Prospective Economic Relations – Essential Factual Elements ........ 37

10.2. (Disputed) Negligent Interference With Prospective Economic Relations – Essential Factual Elements ........ 39

10.3. Wrongful Conduct Defined ........ 41

10.4. (Disputed) [Arm's Proposal: Unfair Competition ........ 43

10.5. (Disputed) [Arm's Proposal: Harm to Competition Required ........ 45

10.6. (Disputed) [Arm's Proposal: Lawsuits Are Not Wrongful ........ 48

10.7. Basic Standard of Care ........ 49

10.8. Causation: Substantial Factor ........ 50

10.9. Damages for Tortious Interference ........ 51

10.10. (Disputed) [Arm's Proposal: Lost Profits ........ 52

11. DELIBERATION AND VERDICT ........ 53

11.1. Introduction ........ 53

11.2. Unanimous Verdict ........ 54

11.3. Duty to Deliberate ........ 55

11.4. Social Media ........ 56

11.5. Court Has No Opinion ........ 57

11.6. Redactions, Confidentiality Stamps, and Sealing the Courtroom ........ 58

# 1. GENERAL INSTRUCTIONS

## 1.1. Introduction

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Please listen carefully to everything I say. You must follow all of my instructions, as well as the ones I gave you at the start of the case and any I have given during trial. Do not single out some and ignore others. They are all important.

You will have a written copy of these instructions, along with the preliminary instructions I gave you, with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

Authority: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 1.1.

### 1.2. Jurors' Duties

Let me remind you that you have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions given before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

Authority: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 1.2.

## 2. THE PARTIES AND THEIR CONTENTIONS

### 2.1. The Parties

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

As you have heard during trial, Plaintiffs are Qualcomm Incorporated and Qualcomm Technologies, Inc. For ease of reference, I will refer to Qualcomm Incorporated and Qualcomm Technologies, Inc., collectively as "Qualcomm." The Defendants are Arm Holdings plc and Arm Ltd.

Authority: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 2.1 (modified).

### 2.2. (Disputed) The Parties' Contentions

As I explained to you before the first day of trial, this is a civil case for breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference. I will summarize the parties' contentions.

Qualcomm contends that Arm Holdings and Arm Ltd. each breached the Qualcomm Architecture License Agreement, also referred to as the Qualcomm ALA, as well as the Qualcomm Technology License Agreement, also referred to as the Qualcomm TLA. Qualcomm also contends that Arm Holdings and Arm Ltd. separately breached the implied covenant of good faith and fair dealing under the Qualcomm TLA. And Qualcomm contends that Arm Holdings and Arm Ltd. tortiously interfered with Qualcomm's relationship with Meta. **[Arm's Proposal:** There is no claim in this case that Arm Holdings or Arm Ltd. breached the Qualcomm ALA or the Qualcomm TLA by sharing any information about the contracts.][1]

Arm Holdings and Arm Ltd. deny that they breached the Qualcomm ALA or the Qualcomm TLA or that they intentionally or negligently tortiously interfered with Qualcomm's relationship with Meta. Arm Holdings and Arm Ltd. further contend that Qualcomm's failed to mitigate their damages.

Authority: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 2.2 (modified).

---

1 **Arm's Position:** Arm requests the Court include this instruction to resolve any potential juror confusion resulting from testimony Qualcomm elicited from Arm's witness and in its deposition designations.

**Qualcomm's Position:** Qualcomm objects to this proposal as unnecessary and likely to create juror confusion rather than eliminate it.

**3. TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS**

You should decide the case as to each party separately. Unless otherwise stated, the instructions apply to all parties.

Authority: Manual of Model Civil Jury Instructions, Ninth Cir. Jury Instructions Comm. at Model Jury Instruction 1.8 (2025).

## 4. EVIDENCE

The evidence from which you are to find the facts consists of the following:

1. The testimony of the witnesses;
2. Documents and other things received as exhibits;

The following things are not evidence:

1. Statements, arguments, and questions of the lawyers for the parties in this case, including opening and closing statements;
2. Objections by lawyers;
3. Demonstratives and visual aids that are not offered or received into evidence;
4. Any testimony that I told you to disregard; and
5. Anything you saw or heard about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.

If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that the judge make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made. Objections to questions are not evidence. Lawyers

have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard that evidence. Do not consider any testimony or other evidence that gets struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.

Authority: Preliminary Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 562 (D. Del. Dec. 13, 2024) at § III.

**5. <u>DIRECT AND CIRCUMSTANTIAL EVIDENCE</u>**

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of direct evidence is when a witness testifies about something that the witness knows through his own senses—something the witness has seen, felt, touched, heard, or did. For instance, if a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is "circumstantial evidence." Circumstantial evidence is proof of one or more facts from which you could find another fact. For example, if someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

<u>Authority:</u> Gen. Instructions for Civil Cases, Comm. on Model Civil Jury Instructions Within the Third Circuit at Model Jury Instruction 1.6 (2026).

## 6. BURDENS OF PROOF

In any legal action, facts must be proven by the required standard of evidence, known as the burden of proof. This is a civil case. Qualcomm is the party that brought this lawsuit. Arm Holdings and Arm Ltd. are the parties against which the lawsuit was filed. Qualcomm has the burden of proving its case by what is called the preponderance of the evidence. That means Qualcomm must prove to you, in light of all the evidence, that what it claims is more likely true than not. To put it differently: if you were to put the evidence favorable to Qualcomm and the evidence favorable to each of Arm Holdings and/or Arm Ltd. on opposite sides of a scale, the evidence supporting Qualcomm's claims for relief would need to make the scales tip somewhat on its side. If Qualcomm fails to meet this burden, the verdict must be for Arm Holdings and/or Arm Ltd., respectively.

On certain issues, called affirmative defenses, Arm Holdings and Arm Ltd. have the burden of proving the elements of the defense by a preponderance of the evidence. Judge Noreika will instruct you on the facts that will be necessary for you to find on Qualcomm's claims and Arm Holdings and Arm Ltd.'s affirmative mitigation defense.

In determining whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. You should put it out of your mind.

Authority: Preliminary Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 562 (D. Del. Dec. 13, 2024) at § V (modified); Gen. Instructions for Civil Cases, Comm. on Model Civil Jury Instructions Within the Third Circuit at Model Jury Instruction 1.10 (2026) (modified).

**7. <u>CONSIDERATION OF EVIDENCE</u>**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Authority: Preliminary Jury Instructions, *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 18-cv-462-MN, D.I. 141 at Instr. 1.5 (D. Del. May 3, 2019); Preliminary Jury Instructions, *AgroFresh Inc. v. Essentiv LLC*, No. 16-cv-662-MN, D.I. 575 at Instr. I.E (D. Del. Oct. 11, 2019).

**8. <u>CREDIBILITY OF WITNESSES</u>**

It will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject. You should consider each witness's means of knowledge; strength of memory; opportunity and ability to observe the things testified to; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interest in the outcome of the case; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

<u>Authority:</u> Gen. Instructions for Civil Cases, Comm. on Model Civil Jury Instructions Within the Third Circuit at Model Jury Instruction 1.7 (2026); Preliminary Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 562 (D. Del. Dec. 13, 2024) at § VI; Preliminary Jury Instructions, *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 18-cv-462-MN, D.I. 141

at Instr. 1.7 (D. Del. May 3, 2019); Preliminary Jury Instructions, *AgroFresh Inc. v. Essentiv LLC*, No. 16-cv-662-MN, D.I. 575 at Instr. I.G (D. Del. Oct. 11, 2019).

## 9. BREACH OF CONTRACT

### 9.1. (Disputed) Introduction—Qualcomm ALA

A contract is a legally binding agreement between two or more parties. Qualcomm claims that it entered into a contract, the Qualcomm ALA, **[Arm's proposal:** with Arm Ltd. and Arm Holdings**]**[2] to license an instruction set architecture and sell Arm-compliant chips.

Qualcomm claims that Arm Holdings and Arm Ltd. breached this contract by failing to provide Qualcomm with items known as OOBs and ACK Patches.[3]

Qualcomm also claims that Arm Holdings' and Arm Ltd.'s breach of this contract caused harm to Qualcomm.

The parties do not dispute that the Qualcomm ALA is a legally binding contract between Arm Ltd. and Qualcomm.

---

2 **Arm's position:** Arm's proposed language tracks the model instruction and clearly explains the claim in this case.

**Qualcomm's position:** Arm's proposed language will confuse the jury because Qualcomm is not claiming that Arm Holdings is a party to the Qualcomm ALA. Instead, Qualcomm contends that Arm Holdings constitutes a "Controlling Party" within the meaning of that contract and thus can be held liable for its breach. *See* JTX-1, § 1.1, 8.1; n.13, *infra*.

3 **Arm's position:** Arm objects to Qualcomm's theory that Arm separately breached the Qualcomm ALA each time the parties communicated about the OOBs and ACK patches to which Qualcomm claims entitlement. Qualcomm has not introduced evidence sufficient to support this theory nor have they proposed a verdict form that asks the jury to make the necessary factual determinations to support such a claim.

**Qualcomm's position:** The resolution of Qualcomm's separate accrual theory for Arm's breach of the Qualcomm ALA is an issue to be heard by the Court, rather than the jury. Accordingly, there is no need for a jury instruction on this issue. To the extent that the Court permits Arm to revise these instructions to include a condition-precedent instruction regarding notice, Qualcomm reserves the right to revise these instructions, including by adding an instruction explaining that it was futile for Qualcomm to send additional breach notices to Arm after receiving Arm's categorical refusal to cure.

Arm Holdings disputes that it **[Qualcomm's proposal:** is legally bound by**]** **[Arm's proposal:** entered into**]**[4] the Qualcomm ALA with Qualcomm.

Arm Holdings and Arm Ltd. deny that they breached the Qualcomm ALA.

Authority: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 3.1 (modified); Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 300 (modified).

---

[4] **Arm's position:** Arm's proposal tracks the model jury instruction and avoids an unnecessarily confusing formulation. To the extent Qualcomm's proposal is an attempt to adapt the instruction to be consistent with its new Arm Holdings theory of liability, that theory is forfeited as discussed *infra* fn. 13.

**Qualcomm's position:** Qualcomm's proposed language is necessary to make clear to the jury that Qualcomm is not claiming that Arm Holdings is a party to the Qualcomm ALA. Instead, Qualcomm contends that Arm Holdings constitutes a "Controlling Party" within the meaning of the ALA and thus can be held liable for its breach. *See* JTX-1, § 1.1, 8.1. Qualcomm has not forfeited that argument. *See* n.13, *infra*.

### 9.2. (Disputed) Introduction—Qualcomm TLA

Qualcomm also claims that it entered into a different contract, the Qualcomm TLA **[Arm's proposal:** with Arm Ltd. and Arm Holdings**]**[5] to license Arm-designed CPUs and other Arm-designed technology.

Qualcomm claims that Arm Holdings and Arm Ltd. breached this contract in three ways: first, by failing, in good faith, to investigate and determine the Previous Best Deal for each of the Hunter, Hayes, and/or Yamin implementation cores; second, by failing, in good faith, to provide an offer for a new license for each of the Hunter, Hayes, and/or Yamin implementation cores that was within 10% of the Previous Best Deal [**Arm's Proposal:** accounting for Total Financial Considerations][6]; and third, by excluding support and maintenance from the October 2024 offer for Hunter, Hayes, and Yamin.

Qualcomm also claims that Arm Holdings' and Arm Ltd.'s breach of this contract caused harm to Qualcomm.

The parties do not dispute that the Qualcomm TLA is a legally binding contract between Arm Ltd. and Qualcomm.

---

[5] **Arm's position:** Arm's proposed language tracks the model instruction and clearly explains the claim in this case.

**Qualcomm's position:** Arm's proposed language will confuse the jury because Qualcomm is not claiming that Arm Holdings is a party to the Qualcomm TLA. Instead, Qualcomm contends that Arm Holdings constitutes a "Controlling Party" within the meaning of that contract and thus can be held liable for its breach. *See* JTX-5, at § 1.1, 8.5; n.13, *infra*.

[6] **Qualcomm's position:** Qualcomm objects to this language because it incorrectly suggests that "Total Financial Considerations" are relevant when determining what was the Previous Best Deal, when only royalty rates are relevant. *See* PTX-5, at § 8.1B.

Arm Holdings disputes that it **[Qualcomm's proposal:** is legally bound by**]** **[Arm's proposal:** entered into**]**[7] the Qualcomm TLA with Qualcomm.

Arm Holdings and Arm Ltd. deny that they breached the Qualcomm TLA.

Authority: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 3.1 (modified); Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 300 (modified).

[7] **Arm's position:** Arm's proposal tracks the model jury instruction and avoids an unnecessarily confusing formulation. To the extent Qualcomm's proposal is an attempt to adapt the instruction to be consistent with its new Arm Holdings theory of liability, that theory is forfeited as discussed *infra* fn. 13.

**Qualcomm's position:** Qualcomm's proposed language is necessary to make clear to the jury that Qualcomm is not claiming that Arm Holdings is a party to the Qualcomm TLA. Instead, Qualcomm contends that Arm Holdings constitutes a "Controlling Party" within the meaning of the TLA and thus can be held liable for its breach. *See* JTX-5, at § 1.1, 8.5. Qualcomm has not forfeited that argument. *See* n.13, *infra*.

### 9.3. (Disputed) [Arm's Proposal: Contract Formation—Essential Factual Elements[8]

Qualcomm claims that it entered into two contracts, the Qualcomm ALA and the Qualcomm TLA, with Arm Holdings. To prove that each contract was created, Qualcomm must prove all of the following:

1. That the contract's terms were clear enough that Qualcomm and Arm Holdings could understand what each was required to do;

2. That Qualcomm and Arm Holdings agreed to give each other something of value; and

3. That Qualcomm and Arm Holdings agreed to the terms of the contract.

If Qualcomm did not prove all of the above, then a contract was not created.

Authority: Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 302 (modified).**]**

---

[8] **Qualcomm's position**: Qualcomm objects to this proposed instruction because Qualcomm is not claiming that Arm Holdings is a party to the Qualcomm ALA or TLA. Instead, Qualcomm contends that Arm Holdings constitutes a "Controlling Party" within the meaning of the ALA and the TLA and thus can be held liable for their breach. *See* JTX-1, § 1.1, 8.1; JTX-5, at § 1.1, 8.5; n.13, *infra*.

**Arm's position:** Arm's proposed instruction accurately states the law and tracks the model jury instruction. Arm Holdings did not sign either the Qualcomm ALA or the Qualcomm TLA. Qualcomm must therefore offer other evidence to prove that Arm Holdings formed a contract with Qualcomm. It would be error to allow the jury to consider whether Arm Holdings breached the Qualcomm ALA or the Qualcomm TLA without first determining whether Arm Holdings was a party to those contracts.

### 9.4. (Disputed) [Arm's Proposal: Corporate Structure

A parent company and its subsidiary are distinct legal entities and a parent corporation cannot be held liable for the performance or non-performance of a contract by a wholly owned subsidiary.[9]

Authority: *Santa Clarita Org. for Plan. & Ev't v. Castaic Lake Water Agency*, 1 Cal. App. 5th 1084, 1104-1107 (2016); *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 537-40 (2000); *In re Aearo Techs., LLC*, 346 A.3d 584, 596 & n.77 (Del. 2025); *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *5 (Del. Ch. Nov. 13, 2018); *O'Leary v. Telecom Resources Services, LLC*, 2011 WL 379300 (Del. Super. Jan. 14, 2011).

[9] **Qualcomm's position:** Qualcomm objects to this instruction as inconsistent with Qualcomm's theory of the case and with the Qualcomm ALA and TLA. *See* JTX-1, § 1.1, 8.1; JTX-5, at § 1.1, 8.5.

**9.5. (Disputed) Express Breach of Contract—Essential Factual Elements**

To establish a breach of either the Qualcomm ALA or the Qualcomm TLA, Qualcomm must prove all of the following:

**9.6.** That Arm Holdings and/or Arm Ltd. entered into [**Qualcomm proposal:** or is legally bound by] a contract with Qualcomm. The parties do not dispute that Arm Ltd. entered into the Qualcomm ALA and TLA with Qualcomm.[10]

1. That Qualcomm did all, or substantially all, of the significant things that the contract required it to do;
2. That Arm Holdings and/or Arm Ltd. failed to do something that the contract required one or both to do;
3. That Qualcomm suffered harm; and
4. That the breach of the contract by Arm Holdings and/or Arm Ltd. was a substantial factor in causing Qualcomm's harm.

---

[10] **Qualcomm's position:** Qualcomm's proposed language is necessary to make clear to the jury that Qualcomm is not claiming that Arm Holdings is a party to the Qualcomm TLA. Instead, Qualcomm contends that Arm Holdings constitutes a "Controlling Party" within the meaning of the TLA and thus can be held liable for its breach. *See* JTX-1, § 1.1, 8.1; JTX-5, at § 1.1, 8.5. .

**Arm's position:** Qualcomm's edits are inconsistent with the model jury instruction. There is no reason to confuse the jury with incorrect statements of law. It is also unclear what legal theory Qualcomm relies on for its proposed instruction, which ignores that a parent company and its subsidiary are distinct legal entities and which does not accurately state the law regarding veil-piercing principles. *See, e.g.*, *Santa Clarita Org. for Plan. & Ev't v. Castaic Lake Water Agency*, 1 Cal. App. 5th 1084, 1104-1107 (2016); *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 537-40 (2000); *In re Aearo Techs., LLC*, 346 A.3d 584, 596 & n.77 (Del. 2025); *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *5 (Del. Ch. Nov. 13, 2018).

Authority: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 3.3 (modified); Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 303 (modified).

### 9.7. Qualcomm TLA Occurrence of Agreed Condition Precedent

The Qualcomm TLA includes an agreement that any Arm entity that entered into **[Qualcomm Proposal:** or is legally bound by] the contract would have to, in good faith, provide an offer to Qualcomm for licenses to the Hunter, Hayes, and/or Yamin cores only if Qualcomm made an "Initial Request" or a "Subsequent Request" within the meaning of the TLA. Arm Holdings and Arm Ltd. contend that this condition did not occur and that they did not have to, in good faith, offer licenses for those cores. To overcome this contention, Qualcomm must prove that it made an "Initial Request" or a "Subsequent Request" within the meaning of the TLA for the Hunter, Hayes, and/or Yamin cores. If Qualcomm does not prove that it made an "Initial Request" or a "Subsequent Request" for those cores within the meaning of the TLA, then Arm Holdings and Arm Ltd. were not required to, in good faith, offer licenses for those cores.

Authority: Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 322 (modified).**]**

**9.8. (Disputed) [Arm Proposal: Qualcomm TLA Occurrence of Agreed Condition Precedent**[11]

The Qualcomm TLA also includes an agreement that any Arm entity that entered into the contract would only have to offer licenses to implementation cores without changing any material non-financial terms if Qualcomm sought to license a new implementation core. Arm Holdings and Arm Ltd. contend that this condition did not occur because Qualcomm did not seek to license a new implementation core when it sought licenses for the Hunter, Hayes, and Yamin implementation cores. To overcome this contention, Qualcomm must prove that its requests for licenses for the Hunter, Hayes, and/or Yamin cores were for new implementation cores. If Qualcomm does not prove that, then Arm Holdings and Arm Ltd. were not required to offer licenses for those cores without changing any material non-financial terms.

Authority: Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 322 (modified).**]**

---

[11] **Qualcomm's position:** Qualcomm disagrees that Section 8.1D applies only to a "new implementation core." In any event, any such requirement would not be a condition precedent because it does not independently require Qualcomm to take any action before Arm's duty under Section 8.1D arises. *See* Cal. Civ. Code § 1436; *Helzel* v. *Superior Ct.*, 176 Cal. Rptr. 740, 745 (Ct. App. 1981). This instruction is thus inappropriate.

**Arm's position:** Arm's proposal is based on the language of the California model jury instruction. *See* Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 322. "[M]odel instructions are generally presumed reasonable unless a party establishes they inaccurately state the law." *Borden v. Mainline Conveyor Systems, Inc.*, 2026 WL 2271802, at *7 (M.D. Pa. Aug. 6, 2026) (collecting citations); *see also United States v. Wilson-Garcia*, 2012 WL 226032, at *4 (W.D. Pa. Jan. 25, 2012) ("It is axiomatic that trial judges should use the model jury instructions when applicable." (quotation omitted)). Qualcomm has not provided any reason why these instructions "inaccurately state the law." *Borden*, 2026 WL 2271802, at *7. Arm therefore respectfully submits that the model instruction should be used to avoid jury confusion.

### 9.9. Breach of Implied Covenant of Good Faith and Fair Dealing – Essential Factual Elements

In every contract or agreement there is an implied promise of good faith and fair dealing. This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another. Generally speaking, it means being faithful to one's duty or obligation. However, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

Qualcomm claims that Arm Holdings and/or Arm Ltd. violated the duty to act fairly and in good faith when it provided Qualcomm with an offer for GIC-700, MMU-700, and ELA-600, also referred to as Peripheral IP. To establish this claim, Qualcomm must prove all of the following:

1. That Qualcomm entered into a contract with Arm Holdings and/or Arm Ltd. The parties do not dispute that Qualcomm entered into the Qualcomm ALA and TLA with Arm Ltd.
2. That Qualcomm did all, or substantially all, of the significant things that the contract required it to do;
3. That Arm Holdings and/or Arm Ltd. failed to act fairly and in good faith with respect to the financial terms offered to Qualcomm in January 2025 for licenses to GIC-700, MMU-700, and/or ELA-600, also referred to as Peripheral IP; and
4. That Qualcomm was harmed by Arm Holdings' and/or Arm Ltd.'s conduct.

Authority: Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 325 (modified).

**9.10. (Disputed) [Arm's Proposal: Breach of the Implied Covenant of Good Faith and Fair Dealing – Relationship to Express Terms**[12]

In a business negotiation, each side usually tries to get the best deal that it can. For that reason, when a contract requires that the parties engage in future negotiations, a party does not act in bad faith by pursuing its self-interest in those negotiations. During those negotiations, however, a party may not unreasonably insist on a condition outside the scope of the parties' contract and may not refuse to negotiate.

Authority: *Auerbach v. Great W. Bank*, 74 Cal. App. 4th 1172, 1191 (1999); *Rambus Inc. v. Hynix Semiconductor Inc.*, 629 F. Supp. 2d 979, 1016 (N.D. Cal. 2009); *All. Atlantis Releasing Ltd. v. Bob Yari Prods.*, 2010 WL 1525687, at *12 (C.D. Cal. Apr. 12, 2010); *Warner Theatre Assocs. Ltd. P'ship v. Metropolitan Life Ins.*, 1997 WL 685334 (S.D.N.Y. Nov. 4, 1997) (Sotomayor, D.J.); *A/S Apothekernes Laboratorium v. I.M.C. Chem.*, 873 F.2d 155, 159 (7th Cir. 1989).**]**

---

[12] **Qualcomm's position:** Qualcomm objects to this instruction. The instruction has no model source and instead relies on Arm's characterization of caselaw as authority. It is also unnecessary, as jurors need not be instructed on matters within their common knowledge and everyday experience.

**Arm's position:** This instruction accurately states the law and is necessary to avoid juror confusion over the meaning of "good faith and fair dealing." This instruction is particularly important here given the number of claims and the risk that the jury will make findings for Qualcomm based on a general concern about Arm's conduct instead of the specifics of each claim. *Cf. Bermudez v. Progressive Ins. Co.*, 2021 WL 3033757, at *5 (E.D. Pa. July 19, 2021) ("[T]o mitigate any potential concerns [from trying multiple claims together], the Court could provide curative instructions and/or implement a staged verdict sheet.").

### 9.11. Contract Interpretation—Disputed Words

Qualcomm and Arm dispute the meaning of the following words in their contract: "Arm Technology" and "Initial Request".

Qualcomm claims that "Arm Technology" includes OOBs and ACK patches[13], and Arm claims it means the technology listed in Section 1 of the ALA Annex 1. Qualcomm further claims that "Initial Request" means a request to enter a new license or a new term for an expiring license, and Arm claims it means the first time a party makes a request to license an implementation core.

In deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created. You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.

The following instructions may also help you interpret the words of the contract:

Authority: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 3.4 (modified); Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 314 (modified).]

[13] **Arm's Position:** Qualcomm's proposed definition of "Arm Technology" is not a definition to which the phrase "Arm Technology" is reasonably susceptible. It is not a definition at all, but instead is an improper attempt to have the Court to determine the merits of Qualcomm's claims via jury instructions.

### 9.12. Interpretation—Meaning of Ordinary Words

You should assume that the parties intended the words in their contract to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.

Authority: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 3.5; Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 315.]

### 9.13. Interpretation—Meaning of Technical Words

You should assume that the parties intended technical words in the contract to have the meaning that is usually given to them by people who work in that technical field, unless you decide that the parties clearly used the words in a different sense.

Authority: Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 316

### 9.14. Interpretation—Construction of Contract as a Whole

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.

Authority: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 3.6; Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 317.]

### 9.15. Interpretation—Construction by Conduct

In deciding what the words in a contract meant to the parties, you may consider how the parties acted after the contract was created but before any disagreement between the parties arose.

Authority: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 3.6; Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 318.]

### 9.16. Introduction to Contract Damages[14]

If you decide that Qualcomm has proven its claims against Arm Holdings and/or Arm Ltd. for breach of the Qualcomm ALA or the Qualcomm TLA, you also must decide how much money will reasonably compensate Qualcomm for the harm caused by that breach. This compensation is called "damages." The purpose of such damages is to put Qualcomm in as good a position as it would have been if Arm Holdings and/or Arm Ltd. had performed as promised.

To recover damages for any harm, Qualcomm must prove that when the contract was made, all parties to the contract knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of the contract.

Qualcomm also must prove the amount of its damages according to the following instructions. It does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

Qualcomm claims damages for (1) the failure to provide Qualcomm with items known as OOBs and ACK Patches; (2) the failure to investigate and determine the Previous Best Deal for each of the Hunter, Hayes, and/or Yamin implementation cores; (3) the exclusion of support and maintenance from Arm's October 2024 offer for Hunter, Hayes, and/or Yamin; (4) the failure to provide, in good faith, an offer for each of the Hunter, Hayes, and/or Yamin implementation cores

[14] **Qualcomm's position:** Qualcomm agrees to this instruction on the understanding that the Court has determined that the contractual remedy under Section 8.3 of the Qualcomm ALA and TLA is unenforceable. *See* Pretrial Confr. Tr. 25:18-23 (Court: "What I will say is that you should assume 98 percent, leaving myself a little bit of wiggle room should I read something in a case that I have not yet appreciated, but 98 percent that liquidated damages are not going to be part of this case and that I'm not going to find that that provision is enforceable"); Trial Tr. 117:3-4 (Court stating to counsel for Arm with respect to Section 8.3, "You're not talking about that provision."). If the Court were to determine that the Section 8.3 remedy is enforceable, that remedy would be the appropriate one for Qualcomm's contract claims other than Arm's failure to provide a good faith offer within 10% of the Previous Best Deal and Arm's failure to provide a good faith licensing offer for Peripheral IP.

that was within 10% of the Previous Best Deal [**Arm's Proposal:** accounting for Total Financial Considerations][15]; and (5) the failure to act fairly and in good faith when offering licenses for GIC-700, MMU-700, and ELA-600, also referred to as Peripheral IP.

Authority: Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 350 (modified).**]**

---

15 **Qualcomm's position:** Qualcomm objects to this language because it incorrectly suggests that "Total Financial Considerations" are relevant when determining what was the Previous Best Deal, when only royalty rates are relevant. *See* PTX-5, at § 8.1B.

**9.17. (Disputed) [Qualcomm Proposal: Nominal Damages[16]**

If you decide that Arm breached Section 8.1B(ii)(b) but also that Qualcomm was not able to estimate its quantifiable damages, you may still award Qualcomm nominal damages such as one dollar.

Authority: Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 360 (modified).**]**

---

[16] **Qualcomm's position:** Qualcomm's Second Amended Complaint against Arm Holdings plc and First Amended Complaint against Arm Ltd. both include a request for damages and other relief available at law. D.I. 137 at 65; D.I. 765 at 77. "A request for damages in a complaint sufficiently preserves a plaintiff's ability to seek nominal damages at trial." *D.H. Pace Co., Inc.* v. *Aaron Overhead Door Atlanta LLC*, No. 17-cv-3430, 2021 WL 2819778, at *4 (N.D. Ga. May 24, 2021); *see SiteLock LLC* v. *GoDaddy.com LLC*, 562 F. Supp. 3d 283, 298 (D. Ariz. 2022) (stating that the court "has not found any authority suggesting that a party must explicitly disclose its intention to seek nominal damages" and explaining that "nominal damages are damages in name only and by nature minimal in amount"); *Ross* v. *Chopra*, No. 19-cv-92, 2021 WL 6197418, at *12 (D. Md. Dec. 30, 2021) ("I conclude that Ms. Ross was not required to include nominal damages either in her Damages Disclosure or her answers to interrogatories, and that she may recover nominal damages for Dr. Chopra's alleged assault and battery."); *GeoMetWatch Corp.* v. *Hall*, No. 14-cv-60, 2018 WL 6240991, at *16 (D. Utah Nov. 27, 2018) ("But the Hall Defendants do not cite, and the court has been unable to find, any authority suggesting that a party is precluded from seeking nominal or statutory damages for failing to include a "computation" of such damages in its initial disclosures."). Qualcomm disclosed its intention to seek nominal damages in its pretrial filings. *See* D.I. 951-1, Ex. 3, ¶ 42 (Qualcomm's pretrial statement of issues of law to be litigated, citing Cal. Civ. Code § 3360); D.I. 956, at 25 (Qualcomm's proposed final jury instructions).

**Arm's position:** Arm objects to the inclusion of any nominal-damages instruction because Qualcomm failed to assert a claim for nominal damages during discovery. *See Dunkin' Donuts Inc. v. Dough Boy Mgmt., Inc.*, 2006 WL 20521, at *9 (D.N.J. Jan. 3, 2006) ("Defendants are precluded from resorting to nominal damages when, all throughout discovery, Defendants only alleged actual and consequential damages."). Nor does Arm agree that it ever suggested Qualcomm may pursue undisclosed damages theories at trial. As a matter of law, where a liquidated-damages provision is held unenforceable, courts permit parties to seek actual damages. That legal principle does not mean that a party can pursue new damages theories at trial.

**9.18. Mitigation of Damages**

If Arm Holdings and/or Arm Ltd. breached the Qualcomm TLA and/or the Qualcomm ALA and the breach caused harm, Qualcomm is not entitled to recover damages for harm that Arm Holdings and Arm Ltd. prove Qualcomm could have avoided with reasonable efforts or expenditures. You should consider the reasonableness of Qualcomm's efforts in light of the circumstances facing them at the time, including their ability to make the efforts or expenditures without undue risk or hardship.

If Qualcomm made reasonable efforts to avoid harm, then your award should include reasonable amounts that it spent for this purpose.

Authority: Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 314 (modified).

## 10. ECONOMIC INTERFERENCE

### 10.1. (Disputed) Intentional Interference With Prospective Economic Relations – Essential Factual Elements

Qualcomm Technologies and Qualcomm Incorporated claim that Arm Holdings and/or Arm Ltd. each intentionally interfered with an economic relationship between Qualcomm and Meta that probably would have resulted in an economic benefit to Qualcomm. To establish this claim, Qualcomm must prove all of the following:

1. That Qualcomm was in an economic relationship with Meta that probably would have resulted in an economic benefit to Qualcomm;
2. That Arm Holdings and/or Arm Ltd. knew of the relationship;
3. That Arm Holdings and/or Arm Ltd. engaged in wrongful conduct **[Arm Proposal:** in violation of the Unfair Competition Law by sharing the contents of Arm's October 22, 2024 Letter with the media and sending Meta a letter in August 2022 concerning the Nuvia litigation**]**[17];
4. That by engaging in this conduct, Arm Holdings and/or Arm Ltd. intended to disrupt the relationship or knew that disruption of the relationship was certain or substantially certain to occur];
5. That the relationship was disrupted;
6. That Qualcomm was harmed; and

[17] **Qualcomm's Position:** Arm's language improperly seeks to limit its conduct to "sharing the contents of the October 22, 2024 Notice of Breach with the media," when the evidence shows that Arm did not merely share the termination notice but instead engaged in a coordinated media campaign to broadly publicize its intent to cancel Qualcomm's ALA. *See*, *e.g.*, Trial Tr. 607:24-617:22 (Kranhold); *id.* at 595:9-601:24 (Badani).

7. That Arm Holdings and/or Arm Ltd.'s conduct was a substantial factor in causing Qualcomm's harm.

Authority: Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 2202 (modified).

### 10.2. (Disputed) Negligent Interference With Prospective Economic Relations – Essential Factual Elements

Qualcomm Technologies and Qualcomm Incorporated claim that Arm Holdings and/or Arm Ltd. negligently interfered with a relationship between Qualcomm and Meta that probably would have resulted in an economic benefit to Qualcomm. To establish this claim, Qualcomm must prove all of the following:

1. That Qualcomm was in an economic relationship with Meta that probably would have resulted in a future economic benefit to Qualcomm;
2. That Arm Holdings and/or Arm Ltd. knew or should have known of this relationship;
3. That Arm Holdings and/or Arm Ltd. knew or should have known that this relationship would be disrupted if Arm Holdings and/or Arm Ltd. failed to act with reasonable care;
4. That Arm Holdings and/or Arm Ltd. failed to act with reasonable care;
5. [**Qualcomm's Proposal:** That Arm Holdings' and/or Arm Ltd.'s conduct was wrongful] [**Arm's Proposal:** That Arm Holdings and/or Arm Ltd. engaged in wrongful conduct in violation of the Unfair Competition Law by sharing the contents of Arm's October 22, 2024 with the media and sending Meta a letter in August 2022 concerning the Nuvia litigation;][18]
6. That the relationship was disrupted;
7. That Qualcomm was harmed; and

---

[18] **Qualcomm's Position:** *See* n.16, *supra*.

8. That Arm Holdings' and/or Arm Ltd.'s conduct was a substantial factor in causing Qualcomm's harm.

Authority: Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 2204 (modified).

### 10.3. Wrongful Conduct Defined[19]

[**Qualcomm's proposal:** To show that Arm's conduct was "wrongful" for purposes of Qualcomm's claim for intentional interference with prospective economic relations claim, as well as Qualcomm's claim for negligent interference with prospective economic relations, Qualcomm must prove that Arm's interference with Qualcomm's relationship with Meta was unfair.

---

[19] **Arm's Position:** The Court should not, as Qualcomm proposes, instruct the jury on both UCL tests. Here, California's tethering test for competitors applies because Qualcomm is a sophisticated business and a direct competitor of Arm. *See In re Qualcomm Litig.*, 2017 WL 5985598, at *7 (S.D. Cal. Nov. 8, 2017) (applying the tethering test to Qualcomm and Apple because they were "sophisticated corporations" in an "ongoing" and "vertical business relationship"); *Sun Microsystems, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 992, 999 (N.D. Cal. 2000) (applying the tethering test where Sun Microsystems' and Microsoft's relationship had a vertical relationship and Microsoft distributed Java Technology supplied by Sun). Indeed, the tethering test applies even where the parties are not "direct competitors." *In re Qualcomm Litig.*, 2017 WL 5985598, at *7; *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136 (9th Cir. 2014) (holding that the tethering test applied in "business-competitor" suit brought by "business owners" who were not direct competitors but nonetheless asserted that the challenged conduct "unfairly injures their economic interests").

Qualcomm contends that California's balancing test for consumers applies. That is incorrect. The California Supreme Court has expressly held that the balancing test is not the standard in suits between "competitor[s]" because it is "too amorphous and provide[s] too little guidance to courts and businesses." *Id.* at 543, 544; *see also Nationwide Biweekly Admin., Inc. v. Superior Ct.*, 9 Cal. 5th 279, 302 & n.10 (2020) (distinguishing cases applying the tethering test in the competitor context and discussing the split in authority as to the test that applies in "actions under the UCL brought on behalf of consumers rather than competitors").

To the extent that the Court does instruct the jury on both tests, Arm requests that the jury be asked to identify the test(s) under which they found Arm's conduct to be wrongful.

**Qualcomm's Position:** Instructing the jury on both UCL tests is appropriate here. The two tests "are not mutually exclusive." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023). Here, Qualcomm and Arm are in a consumer-supplier relationship because Arm licenses its architecture to Qualcomm, but they also compete to sell chips. Qualcomm alleges that Arm used its power over Qualcomm as Qualcomm's licensor to improve its competitive standing against Qualcomm for chip sales. In *Epic Games*—a hybrid case similar to this one involving two sophisticated parties with both a consumer and competitor relationship—the district court applied both tests. *See id.* Arm's reliance on *Cel-Tech Commc'ns, Inc.* v. *L.A. Cell. Tel. Co.*, 973 P.2d 527 (Cal. 1999), is misplaced: the court there did not address a case where the parties were in a hybrid relationship like this one.

Arm's interference was unfair if the gravity of the harm to Qualcomm outweighed the benefit of Arm's conduct, taking into account Arm's reasons, justifications, and motives, such that Arm's conduct was immoral, unethical, oppressive, unscrupulous, or substantially injurious to Qualcomm. Arm's interference was also unfair if it significantly threatened or harmed competition.

Authority: *Pai Corp.* v. *Integrated Sci. Sols., Inc.*, Civ. No. 06-5349 (N.D. Cal. Oct. 27, 2008), Jury Instruction No. 69 (modified); Cal. Bus. and Prof. Code § 17200; *Capito* v. *San Jose Healthcare Sys., LP*, 561 P.3d 380, 386-87 (Cal. 2024); *Cel-Tech Commc'ns, Inc.* v. *L.A. Cell. Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999); *Epic Games, Inc.* v. *Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023); *Ticconi* v. *Blue Shield of Cal. Life & Health Ins. Co.*, 72 Cal. Rptr. 3d 888, 895-96 (Ct. App. 2008); *Korea Kumho Petrochemical* v. *Flexsys Am. LP*, Civ. No. 07-1057, 2008 WL 686834, at *9 (N.D. Cal. Mar. 11, 2008).]

### 10.4. (Disputed) [Arm's Proposal: Unfair Competition[20]

Qualcomm Technologies and Qualcomm Incorporated allege that Arm Holdings and Arm Ltd. engaged in unfair competition under California's Unfair Competition Law.

Qualcomm Technologies and Qualcomm Incorporated claim that Arm Holdings and Arm Ltd. committed acts of unfair competition by sharing the contents of Arm's October 22, 2024 Letter with the media and sending Meta a letter in August 2022 concerning the Nuvia litigation . To establish this claim, Qualcomm must prove one of the following:

1. That sharing the contents of Arm's October 22, 2024 Letter with the media and sending Meta a letter in August 2022 concerning the Nuvia litigation threatens an incipient violation of an antitrust law;
2. That sharing the contents of Arm's October 22, 2024 Letter with the media and sending Meta a letter in August 2022 concerning the Nuvia litigation violates the policy or spirit of an antitrust law because its effects are comparable to or the same as a violation of the law; or
3. That sharing the contents of Arm's October 22, 2024 Letter with the media and sending Meta a letter in August 2022 concerning the Nuvia litigation otherwise significantly threatens or harms competition.**]**

---

[20] **Arm's position:** Arm maintains that a jury instruction on Qualcomm's UCL claim is unnecessary. If the Court disagrees, the jury must decide only whether the specific act underlying the tortious interference claims violated the UCL. The jury does not need to decide whether other acts also violated the UCL. *See Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.*, 71 Cal. App. 5th 528, 537-38 (2021) (referring to the same "conduct" underlying the other tortious interference elements when stating the "independently wrongful" element). *See Stevenson Real Est. Servs., Inc. v. CB Richard Ellis Real Est. Servs., Inc.*, 138 Cal. App. 4th 1215, 1224 (2006) ("A plaintiff need not allege the interference and a second act independent of the interference. Instead, a plaintiff must plead and prove that the conduct alleged to constitute the interference was independently wrongful, i.e., unlawful for reasons other than that it interfered with a prospective economic advantage.").

Authority: *Pai Corp.* v. *Integrated Sci. Sols., Inc*., No. C-06-5349 JCS (N.D. Cal. Oct. 27, 2008), Jury Instruction No. 69 (modified); Cal. Bus. and Prof. Code § 17200; *Capito* v. *San Jose Healthcare Sys., LP*, 561 P.3d 380, 386-87 (Cal. 2024); *Cel-Tech Commc'ns, Inc.* v. *L.A. Cell. Tel. Co*., 973 P.2d 527 (Cal. 1999); *Epic Games, Inc.* v. *Apple, Inc*., 67 F.4th 946, 1000 (9th Cir. 2023); *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 996 (9th Cir. 2020).

### 10.5. (Disputed) [Arm's Proposal: Harm to Competition Required[21]

Under any of those theories, Qualcomm Technologies and Qualcomm Incorporated must prove that Arm Holdings' and/or Arm Ltd.'s sharing the contents of Arm's October 22, 2024 Letter with the media and sending Meta a letter in August 2022 concerning the Nuvia litigation is likely to result in substantial harm to competition. Although it may be relevant to the inquiry, harm that occurs merely to the individual business of Qualcomm Technologies and Qualcomm Incorporated is not sufficient, by itself, to demonstrate harm to competition generally. That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

Furthermore, Qualcomm Technologies and Qualcomm Incorporated must show that the harm to competition occurred in an identified market, known as a relevant market. There are two aspects to a relevant market. The first aspect is known as the relevant product market. The second aspect is known as the relevant geographic market. It is Qualcomm Technologies' and Qualcomm Incorporated's burden to prove the existence of a relevant market.

---

[21] **Qualcomm position:** Qualcomm objects to this instruction. As Qualcomm has repeatedly stated, Qualcomm's unfair competition claim is distinct from an antitrust claim, and California law does not require UCL plaintiffs to plead or prove a market or market power. *Epic Games, Inc.* v. *Apple, Inc.*, 67 F.4th 946, 1002 (9th Cir. 2023); *Metricolor LLC* v. *L'oréal S.A.,* 2020 WL 2802942, at *17 (C.D. Cal. July 7, 2020); D.I. 451 at 3; D.I. 464 at 33-34; D.I. 583 at 2; D.I. 698 at 3.

**Arm's position:** If the Court instructs the jury on Qualcomm's UCL claim, this instruction is necessary to allow the jurors to understand Qualcomm's burden. Qualcomm must identify anticompetitive harm, and "the anticompetitive harm identified must be to *competition itself*, not merely to competitors" or the plaintiff itself. *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 996 (9th Cir. 2020); *see also Cel-Tech Commc'ns, Inc.* v. *L.A. Cell. Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999); *Drum v. San Fernando Valley Bar Assn.*, 182 Cal. App. 4th 247, 252–53, 257 (2010) (requiring substantial injury to consumers beyond the plaintiff).

If you find that Qualcomm Technologies and Qualcomm Incorporated have proven the existence of a relevant market, then you must determine whether Qualcomm Technologies and Qualcomm Incorporated also have proven that Arm Holdings' and/or Arm Ltd.'s sharing the contents of Arm's October 22, 2024 Letter with the media and sending Meta a letter in August 2022 concerning the Nuvia litigation is likely to have a substantial harmful effect on competition in that market. A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, or higher product quality. If Arm Holdings' and/or Arm Ltd.'s sharing the contents of Arm's October 22, 2024 Letter with the media and sending Meta a letter in August 2022 concerning the Nuvia litigation is not likely to result in higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm.

In determining whether Arm Holdings' and/or Arm Ltd.'s sharing the contents of Arm's October 22, 2024 Letter with the media and sending Meta a letter in August 2022 concerning the Nuvia litigation is likely to produce competitive harm, you may look at the following factors:

- the effect on prices, output, product quality, and service;
- the purpose and nature of Arm Holdings' and/or Arm Ltd.'s sharing the contents of Arm's October 22, 2024 Letter with the media and sending Meta a letter in August 2022 concerning the Nuvia litigation;
- the nature and structure of the relevant market;
- the number of competitors in the relevant market and the level of competition among them, both before and after the October 22, 2024 Notice of Breach was shared; and
- whether Arm Holdings and/or Arm Ltd. possesses market power.

The last factor mentioned, market power, has been defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market. A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power. An important factor in determining whether Arm Holdings and/or Arm Ltd. possesses market power is its market share, that is, its percentage of the products or services sold in the relevant market by all competitors. If Arm Holdings and/or Arm Ltd. does not possess a substantial market share, it is less likely that Arm Holdings and/or Arm Ltd. possesses market power. If Arm Holdings and/or Arm Ltd. does not possess market power, it is less likely that sharing the contents of Arm's October 22, 2024 Letter with the media and sending Meta a letter in August 2022 concerning the Nuvia litigation will result in a substantial harmful effect on competition in the market.

Authority: ABA Model Jury Instructions in Civil Antitrust Cases at Instruction 3B, ABA Section of Antitrust Law (2016) (modified); *Cel-Tech Commc'ns, Inc.* v. *L.A. Cell. Tel. Co.*, 973 P.2d 527 (Cal. 1999); *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 996 (9th Cir. 2020).**]**

**10.6. (Disputed) [Arm's Proposal: Lawsuits Are Not Wrongful[22]**

It is not wrongful to file a lawsuit or to send a notice letter in anticipation of a potential lawsuit.

Authority: *Sweet St. Desserts v. Chudleigh's*, 655 F. Appx 103, 110 (3d Cir. 2016); Florsck v. Unstoppable Domains Inc., 2024 WL 492384 (D. Del. Feb. 8, 2024)

[22] **Arm's Position:** This is instruction is necessary because the *Noerr Pennington* doctrine prevents Qualcomm from making certain arguments about First Amendment-protected conduct as described in the Proposed Pretrial Order. D.I. 951 ¶ 95.

**Qualcomm's Position:** This instruction is inappropriate for two reasons. First, Qualcomm is not arguing that Arm is subject to liability because it filed a lawsuit. Second, Arm's termination notice was not in anticipation of litigation. Arm invoked a purely contractual remedy, and it sent the letter as a "PR play" without any genuine intent to petition the courts for redress. *See* PTX-1794; *Montway LLC* v. *Navi Transp. Servs. LLC*, 826 F. Supp. 3d 532, 539 (D. Del. 2026).

**10.7. Basic Standard of Care**

Negligence is the failure to use reasonable care to prevent harm. An entity can be negligent by failing to use reasonable care by acting or failing to act. An entity is negligent if it does something that a reasonably careful entity would not do in the same situation or fails to do something that a reasonably careful entity would do in the same situation.

You must decide how a reasonably careful entity would have acted in Arm Holdings' and/or Arm Ltd.'s situation.

Authority: Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 401 (modified).

**10.8. Causation: Substantial Factor**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

Authority: Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 430 (modified).

### 10.9. Damages for Tortious Interference

If you decide that Qualcomm has proven its claims that Arm Holdings and/or Arm Ltd. interfered with Qualcomm's relationship with Meta, you also must decide how much money will reasonably compensate Qualcomm for the harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by Arm Holdings' and/or Arm Ltd.'s wrongful conduct, even if the particular harm could not have been anticipated.

Qualcomm does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Qualcomm: changes to the timing and category of incentive payments from Qualcomm to Meta, causing Qualcomm to make increased payments earlier.

Authority: Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 3900 (modified).

**10.10. (Disputed) [Arm's Proposal: Lost Profits[23]**

To recover damages for lost profits, Qualcomm Technologies and/or Qualcomm Incorporated must prove it is reasonably certain Qualcomm Technologies and/or Qualcomm Incorporated would have earned profits but for Arm Holdings' and/or Arm Ltd.'s conduct.

To decide the amount of damages for lost profits, you must determine the amount Qualcomm Technologies and/or Qualcomm Incorporated would have received but for Arm Holdings' and/or Arm Ltd.'s conduct.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

Authority: Judicial Council of California Civil Jury Instructions (2026 Ed.) at § 430 (modified).**]**

---

[23] **Arm's position:** Qualcomm is seeking lost profits, the model instructions provide for an instruction on lost profits, and the jury must be instructed on how to evaluate and award lost profits to avoid confusion.

**Qualcomm's position:** Qualcomm is not seeking lost profits.

## 11. <u>DELIBERATION AND VERDICT</u>

### 11.1. Introduction

I have concluded the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4–4, or 6–2, or whatever your vote happens to be. That should stay secret until you are finished.

<u>Authority</u>: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 4.1; *see also* Model Civil Jury Instructions for the District Courts of the Third Circuit (2026 Ed.) at § 3.1.

### 11.2. Unanimous Verdict

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom and my deputy will read aloud your verdict.

Authority: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 4.2; Model Civil Jury Instructions for the District Courts of the Third Circuit (2026 Ed.) at § 3.1 (modified).

### 11.3. Duty to Deliberate

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So, you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

Authority: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 4.3.

### 11.4. Social Media

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, BlackBerry, tablet or computer, the internet, any internet service, any text or instant messaging service, or any internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat, TikTok, or X (formerly Twitter) to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

Additionally, you may have heard of online betting markets, prediction markets, or similar platforms where people can place bets or wagers on the outcome of events, including the outcome of court cases and trials. You must not visit, consult, or participate in any such betting or prediction market relating to this case, at any time before or during your deliberations.

Authority: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 4.4 (as modified); *see also* Model Civil Jury Instructions for the District Courts of the Third Circuit (2026 Ed.) at § 3.1.

### 11.5. Court Has No Opinion

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

Authority: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 4.5.

### 11.6. Redactions, Confidentiality Stamps, and Sealing the Courtroom

During the trial, you have seen documents containing redactions or black boxes over portions of the text. This was done based on my legal rulings. You shouldn't draw any conclusion adverse to either party simply because a document contains redactions and you shouldn't speculate about what the document might have included if there had been no redactions. You have also seen documents that are stamped confidential. It is perfectly proper for a party to mark a document as confidential and you shouldn't draw any conclusion adverse to either party simply because a document bears a confidentiality stamp.

[Similarly, I sealed the courtroom at certain points. Again, you shouldn't draw any conclusion adverse to either party simply because I sealed the courtroom. Nor should you speculate on why I sealed the courtroom.]

Confine your deliberations to the testimony you have heard and the parts of the documents in evidence.

<u>Authority</u>: Final Jury Instructions, *Arm LTD v. Qualcomm Inc.*, No. 22-1146 (MN), D.I. 568 (D. Del. Dec. 19, 2024) at § 1.4; Del. P.J.I. Civ. § 23.16 (2000) (modified).