IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUALCOMM INCORPORATED and QUALCOMM TECHNOLOGIES, INC., Plaintiffs, v. ARM HOLDINGS PLC., f/k/a ARM LTD., Defendant. | ) | C.A. No. 24-490 (MN) (CONSOLIDATED) |
| QUALCOMM INCORPORATED and QUALCOMM TECHNOLOGIES, INC., Plaintiffs, v. ARM LTD., Defendant. | ) | C.A. No. 26-20 (MN) (CONSOLIDATED) |

**FINAL JURY INSTRUCTIONS**

# TABLE OF CONTENTS

1. GENERAL INSTRUCTIONS ..... 1
1.1. Introduction ..... 1
1.2. Jurors' Duties ..... 2
2. THE PARTIES AND THEIR CONTENTIONS ..... 3
2.1. The Parties ..... 3
2.2. The Parties' Contentions ..... 4
3. TWO OR MORE PARTIES – DIFFERENT LEGAL RIGHTS ..... 5
4. EVIDENCE ..... 6
5. DIRECT AND CIRCUMSTANTIAL EVIDENCE ..... 7
6. BURDEN OF PROOF ..... 8
7. REDACTIONS, CONFIDENTIALITY STAMPS AND SEALING THE COURTROOM ..... 9
8. BREACH OF CONTRACT ..... 10
8.1. Introduction – ALA ..... 10
8.2. Introduction – TLA ..... 11
8.3. Express Breach of Contract – Essential Factual Elements ..... 12
8.4. Qualcomm TLA Occurrence of Agreed Condition Precedent ..... 13
8.5. Breach of Implied Covenant of Good Faith and Fair Dealing – Essential Factual Elements ..... 14
8.6. Contract Interpretation—Disputed Words ..... 15
8.7. Introduction to Contract Damages ..... 16
8.8. Nominal Damages ..... 17
8.9. Mitigation of Damages ..... 18
9. INTERFERENCE ..... 19
9.1. Intentional Interference With Prospective Economic Relations – Essential Factual Elements ..... 19
9.2. Negligent Interference With Prospective Economic Relations – Essential Factual Elements ..... 20
10. UNFAIR COMPETITION ..... 21
10.1. Factual Elements ..... 21
10.2. Consumer-Supplier Relationship ..... 22
10.3. Competitor Relationship ..... 23

10.4. Basic Standard of Care ........ 24
10.5. Causation: Substantial Factor ........ 25
10.6. Damages for Tortious Interference ........ 26
11. DELIBERATION AND VERDICT ........ 27
11.1. Introduction ........ 27
11.2. Unanimous Verdict ........ 28
11.3. Duty to Deliberate ........ 29
11.4. Social Media ........ 30
11.5. Court Has No Opinion ........ 31

# 1. GENERAL INSTRUCTIONS

## 1.1. Introduction

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Please listen carefully to everything I say. You must follow all my instructions, as well as the preliminary instructions I gave you at the start of the case and any I have given during trial. Do not single out some and ignore others. They are all important.

You will have a written copy of these instructions, along with the preliminary instructions in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

### 1.2. Jurors' Duties

Let me remind you that you have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions given before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

## 2. THE PARTIES AND THEIR CONTENTIONS

### 2.1. The Parties

As you have heard during trial, Plaintiffs are Qualcomm Incorporated and Qualcomm Technologies, Inc., and have been collectively referred to as "Qualcomm." The Defendants are Arm Holdings plc and Arm Ltd.

### 2.2. The Parties' Contentions

This is a civil case for breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference.

Qualcomm contends that Arm Holdings and Arm Ltd. each breached the Qualcomm Architecture License Agreement, also referred to as the "ALA," as well as the Qualcomm Technology License Agreement, also referred to as the "TLA." Qualcomm also contends that Arm Holdings and Arm Ltd. separately breached the implied covenant of good faith and fair dealing under the TLA. And Qualcomm contends that Arm Holdings and Arm Ltd. intentionally and negligently tortiously interfered with Qualcomm Technology, Inc.'s business relationship with Meta.

Arm Holdings and Arm Ltd. deny that they breached the ALA or the TLA and that they intentionally or negligently tortiously interfered with Qualcomm Technologies, Inc.'s relationship with Meta. Arm Holdings and Arm Ltd. further contend that Qualcomm failed to mitigate their damages.

## 3. TWO OR MORE PARTIES – DIFFERENT LEGAL RIGHTS

You should decide the case as to each party separately. Unless otherwise stated, the instructions apply to all parties.

## 4. EVIDENCE

In the Preliminary Instructions, I instructed you what evidence is. Let me briefly remind you. Evidence consists of the testimony of witnesses and the documents received as exhibits. Statements, arguments, objections and questions of lawyers are not evidence. Demonstrative charts and visual aids that were not admitted into evidence are not evidence. Neither are answers to questions I struck from the record or testimony I told you to disregard.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way. Use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves.

## 5. DIRECT AND CIRCUMSTANTIAL EVIDENCE

As I told you at the beginning of trial, there are two types of evidence that you may use in reaching your verdict, direct evidence and circumstantial evidence. Direct evidence is when a witness testifies about something that the witness knows through his own senses or an exhibit where the fact to be proved is its existence or current condition. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

**6. <u>BURDEN OF PROOF</u>**

In any legal action, facts must be proven by the required standard of evidence, known as the burden of proof. This is a civil case. Qualcomm is the party that brought this lawsuit. Arm Holdings and Arm Ltd. are the parties against which the lawsuit was filed. Qualcomm has the burden of proving its case by what is called the preponderance of the evidence. That means Qualcomm must prove to you, in light of all the evidence, that what it claims is more likely true than not. To put it differently: if you were to put the evidence favorable to Qualcomm and the evidence favorable to Arm Holdings and Arm Ltd. on opposite sides of a scale, the evidence supporting Qualcomm's claims for relief would need to make the scales tip somewhat on its side. If Qualcomm fails to meet this burden, the verdict must be for Arm Holdings and/or Arm Ltd., respectively.

On certain issues, called affirmative defenses, Arm Holdings and Arm Ltd. have the burden of proving the elements of the defense by a preponderance of the evidence.

In determining whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a higher standard of proof, and it applies only to criminal cases, not civil cases such as this. You should put it out of your mind.

## 7. REDACTIONS, CONFIDENTIALITY STAMPS AND SEALING THE COURTROOM

During the trial, you have seen documents containing redactions or black boxes over portions of the text. This was done based on my legal rulings. You shouldn't draw any conclusion adverse to either party simply because a document contains redactions and you shouldn't speculate about what the document might have included if there had been no redactions. You have also seen documents that are stamped confidential. It is perfectly proper for a party to mark a document as confidential, and you shouldn't draw any conclusion adverse to either party simply because a document bears a confidentiality stamp.

Similarly, I sealed the courtroom at certain points. You shouldn't draw any conclusion adverse to either party simply because I sealed the courtroom.

Confine your deliberations to the testimony you have heard and the parts of the documents in evidence.

## 8. BREACH OF CONTRACT

### 8.1. Introduction – ALA

A contract is a legally binding agreement between two or more parties. Qualcomm claims that it entered into a contract, the ALA, to license an instruction set architecture and sell Arm-compliant chips.

Qualcomm claims that Arm Holdings and Arm Ltd. breached the ALA by failing to provide Qualcomm with items known as OOBs and ACK Patches.

Qualcomm also claims that Arm Holdings' and Arm Ltd.'s breach of the ALA caused harm to Qualcomm.

The parties do not dispute that the ALA is a legally binding contract between Arm Ltd. and Qualcomm.

Arm Holdings disputes that it entered into and is legally bound by the ALA with Qualcomm.

Both Arm Holdings and Arm Ltd. deny that they breached the ALA.

### 8.2. Introduction – TLA

Qualcomm also claims that it entered into a different contract, the TLA, to license Arm-designed CPUs and other Arm-designed technology.

Qualcomm claims that Arm Holdings and Arm Ltd. breached this contract in three ways: first, by failing, in good faith, to investigate and determine the Previous Best Deal for each of the Hunter, Hayes, and/or Yamin implementation cores; second, by failing, in good faith, to provide an offer for a new license for each of the Hunter, Hayes, and/or Yamin implementation cores that was within 10% of the Previous Best Deal; and third, by excluding support and maintenance from the October 2024 offer for Hunter, Hayes, and Yamin.

Qualcomm also claims that Arm Holdings' and Arm Ltd.'s breach of this contract caused harm to Qualcomm.

The parties do not dispute that the TLA is a legally binding contract between Arm Ltd. and Qualcomm.

Arm Holdings disputes that it entered into and is legally bound by the TLA with Qualcomm.

Arm Holdings and Arm Ltd. deny that they breached the TLA.

**8.3. Express Breach of Contract – Essential Factual Elements**

To establish a breach of either the ALA or the TLA, Qualcomm must prove all the following:

1. That Arm Holdings and/or Arm Ltd. entered into or are legally bound by a contract with Qualcomm. The parties do not dispute that Arm Ltd. entered into the ALA and TLA with Qualcomm;
2. That Qualcomm did all, or substantially all, of the significant things that the contract required it to do;
3. That Arm Holdings and/or Arm Ltd. failed to do something that the contract required one or both to do;
4. That Qualcomm suffered harm; and
5. That the breach of the contract by Arm Holdings and/or Arm Ltd. was a substantial factor in causing Qualcomm's harm.

### 8.4. Qualcomm TLA Occurrence of Agreed Condition Precedent

The Qualcomm TLA includes an agreement that any Arm entity that entered into or is legally bound by the contract would have to, in good faith, provide an offer to Qualcomm for licenses to the Hunter, Hayes, and/or Yamin cores only if Qualcomm made an "Initial Request" or a "Subsequent Request" within the meaning of the TLA. Arm Holdings and Arm Ltd. contend that this condition did not occur and that they did not have to, in good faith, offer licenses for those cores. To overcome this contention, Qualcomm must prove that it made an "Initial Request" or a "Subsequent Request" within the meaning of the TLA for the Hunter, Hayes, and/or Yamin cores. If Qualcomm does not prove that it made an "Initial Request" or a "Subsequent Request" for those cores within the meaning of the TLA, then Arm Holdings and Arm Ltd. were not required to, in good faith, offer licenses for those cores.

### 8.5. Breach of Implied Covenant of Good Faith and Fair Dealing – Essential Factual Elements

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another. Generally, it means being faithful to one's duty or obligation. However, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

Qualcomm claims that Arm Holdings and/or Arm Ltd. violated the duty to act fairly and in good faith when it provided Qualcomm with an offer for GIC-700, MMU-700, and ELA-600, also referred to as Peripheral IP. To prove this claim, Qualcomm must prove all the following:

1. That Qualcomm entered into a contract with Arm Holdings and/or Arm Ltd. The parties do not dispute that Qualcomm entered into the ALA and TLA with Arm Ltd;
2. That Qualcomm did all, or substantially all, of the significant things that the contract required it to do;
3. That Arm Holdings and/or Arm Ltd. failed to act fairly and in good faith with respect to the financial terms offered to Qualcomm in January 2025 for licenses to GIC-700, MMU-700, and/or ELA-600, also referred to as Peripheral IP; and
4. That Qualcomm was harmed by Arm Holdings' and/or Arm Ltd.'s conduct.

### 8.6. Contract Interpretation—Disputed Words

Qualcomm and Arm dispute the meaning of the words "ARM Technology" in the ALA and "Initial Request" in the TLA. In deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created. You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.

The following instructions may also help you interpret the words of the contract:

1. You should assume that the parties intended the words in their contract to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.
2. You should consider the whole contract, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.
3. You may consider how the parties acted after the contract was created but before any disagreement between the parties arose.

### 8.7. Introduction to Contract Damages

If you decide that Qualcomm has proven its claims against Arm Holdings and/or Arm Ltd. for breach of the ALA or the TLA, you also must decide how much money will reasonably compensate Qualcomm for the harm caused by that breach. This compensation is called "damages." The purpose of damages is to put Qualcomm in as good a position as it would have been if Arm Holdings and/or Arm Ltd. had performed as promised.

To recover damages for any harm, Qualcomm must prove that when the contract was made, all parties to the contract knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events because of the breach of the contract.

Qualcomm also must prove the amount of its damages according to the following instructions. It does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

### 8.8. Nominal Damages

If you decide that Arm breached the TLA and/or the ALA but also that Qualcomm was not able to estimate its quantifiable damages, you may still award Qualcomm nominal damages such as one dollar.

### 8.9. Mitigation of Damages

If Arm Holdings and/or Arm Ltd. breached the TLA and/or the ALA and the breach caused harm, Qualcomm is not entitled to recover damages for harm that Arm Holdings and Arm Ltd. prove Qualcomm could have avoided with reasonable efforts or expenditures. You should consider the reasonableness of Qualcomm's efforts in light of the circumstances facing them at the time, including their ability to make the efforts or expenditures without undue risk or hardship.

If Qualcomm made reasonable efforts to avoid harm, then your award should include reasonable amounts that it spent for this purpose.

## 9. INTERFERENCE

### 9.1. Intentional Interference With Prospective Economic Relations – Essential Factual Elements

Qualcomm Technologies, Inc. ("QTI") claims that Arm Holdings and/or Arm Ltd. each intentionally interfered with an economic relationship between QTI and Meta that probably would have resulted in an economic benefit to QTI. To prove this claim, QTI must prove all the following:

1. That QTI was in an economic relationship with Meta that probably would have resulted in an economic benefit to QTI;
2. That Arm Holdings and/or Arm Ltd. knew of the relationship;
3. That Arm Holdings and/or Arm Ltd. engaged in unfair conduct in violation of the California Unfair Competition Law, which I will instruct you on shortly;
4. That by engaging in this conduct, Arm Holdings and/or Arm Ltd. intended to disrupt the relationship or knew that disruption of the relationship was certain or substantially certain to occur;
5. That the relationship was disrupted;
6. That QTI was harmed; and
7. That Arm Holdings and/or Arm Ltd.'s conduct was a substantial factor in causing QTI's harm.

### 9.2. Negligent Interference With Prospective Economic Relations – Essential Factual Elements

QTI claims that Arm Holdings and/or Arm Ltd. negligently interfered with a relationship between QTI and Meta that probably would have resulted in an economic benefit to QTI. To prove this claim, QTI must prove all the following:

1. That QTI was in an economic relationship with Meta that probably would have resulted in a future economic benefit to QTI;
2. That Arm Holdings and/or Arm Ltd. knew or should have known of this relationship;
3. That Arm Holdings and/or Arm Ltd. knew or should have known that this relationship would be disrupted if Arm Holdings and/or Arm Ltd. failed to act with reasonable care;
4. That Arm Holdings and/or Arm Ltd. failed to act with reasonable care;
5. That Arm Holdings and/or Arm Ltd. engaged in unfair conduct in violation of the California Unfair Competition Law, which I will instruct you on;
6. That the relationship was disrupted;
7. That QTI was harmed; and
8. That Arm Holdings' and/or Arm Ltd.'s conduct was a substantial factor in causing QTI's harm.

## 10. UNFAIR COMPETITION

### 10.1. Factual Elements

In connection with the intentional and negligent interference claims, I told you that one of the elements you must find is that Arm Holdings and/or Arm Ltd. engaged in unfair competition under California's Unfair Competition Law.

To establish this element, QTI must prove by a preponderance of the evidence that the alleged conduct is unfair. You can look at this in the context of a consumer-supplier relationship or in the context of a competitor relationship.

QTI claims that Arm committed acts of unfair competition by sharing the contents of Arm's October 22, 2024 Letter with the media and sending Meta a letter in August 2022 in an effort to obstruct QTI's ability to produce and sell custom cores.

**10.2. Consumer-Supplier Relationship**

In the context of a consumer-supplier relationship, "unfair competition" includes conduct that causes harm to the consumer that is not offset by the reasons, justifications and motives of the alleged wrongdoer.

### 10.3. Competitor Relationship

In the context of direct competition between competitors, "unfair competition" is defined as conduct that significantly threatens or harms competition. The determination of whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.

QTI must prove that Arm Holdings' and/or Arm Ltd.'s sharing the contents of Arm's October 22, 2024 Letter with the media and sending Meta a letter in August 2022 is likely to result in substantial harm to competition. Although it may be relevant to the inquiry, harm that occurs merely to the individual business of QTI is not sufficient, by itself, to demonstrate harm to competition generally. That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, or higher product quality.

### 10.4. Basic Standard of Care

Negligence is the failure to use reasonable care to prevent harm. An entity can be negligent by failing to use reasonable care by acting or failing to act. An entity is negligent if it does something that a reasonably careful entity would not do in the same situation or fails to do something that a reasonably careful entity would do in the same situation.

You must decide how a reasonably careful entity would have acted in Arm Holdings' and/or Arm Ltd.'s situation.

**10.5. Causation: Substantial Factor**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

### 10.6. Damages for Tortious Interference

If you decide that QTI has proven its claims that Arm Holdings and/or Arm Ltd. interfered with QTI's relationship with Meta, you also must decide how much money will reasonably compensate QTI for the harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by Arm Holdings' and/or Arm Ltd.'s wrongful conduct, even if the particular harm could not have been anticipated.

QTI does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

## 11. DELIBERATION AND VERDICT

### 11.1. Introduction

I have concluded my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4–4, or 6–2, or whatever your vote happens to be. That should stay secret until you are finished.

### 11.2. Unanimous Verdict

Your verdict must represent the considered judgment of each juror. For you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience. Always remember that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom, and my deputy will read aloud your verdict.

### 11.3. Duty to Deliberate

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So, you should all feel free to speak your minds. Listen carefully to what the other jurors have to say and then decide for yourself.

### 11.4. Social Media

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, BlackBerry, tablet or computer, the internet, any internet service, any text or instant messaging service, or any internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat, TikTok, or X (formerly Twitter) to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or communicate with anyone electronically with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information, and it must not influence your decision in this case.

Additionally, you may have heard of online betting markets, prediction markets, or similar platforms where people can place bets or wagers on the outcome of events, including the outcome of court cases and trials. You must not visit, consult, or participate in any such betting or prediction market relating to this case, at any time before or during your deliberations.

### 11.5. Court Has No Opinion

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.