**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

QUALCOMM INCORPORATED,
a Delaware corporation; and
QUALCOMM TECHNOLOGIES, INC.,
a Delaware corporation,

Plaintiffs,

v.

ARM HOLDINGS PLC, f/k/a ARM LTD.,
a U.K. corporation,

Defendant.

C.A. No. 24-490-MN (CONSOLIDATED)

**REDACTED - PUBLIC VERSION**
(Filed October 16, 2026)

**DEFENDANTS ARM HOLDINGS PLC AND ARM LTD.'S OPENING BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW**

# TABLE OF CONTENTS

**Page**


LEGAL STANDARD .......... 1

ARGUMENT .......... 1

I. QUALCOMM'S ALA § 5.1 CLAIMS FAIL. .......... 1

A. OOBs and ACK Patches Are Not Subject to § 5.1 as a Matter of Law. .......... 1

B. Qualcomm Has Not Presented Any Evidence of Any Breach. .......... 2

C. Qualcomm Have Not Presented Any Evidence of Harm or Damages. .......... 3

D. Delaware's Statute of Limitations Bars the Original Alleged Breach. .......... 4

E. No Evidence Shows Qualcomm Complied with the ALA's Notice Provision. .......... 5

II. QUALCOMM'S TLA § 8.1B CLAIM FAILS. .......... 6

III. QUALCOMM'S TLA § 8.1D CLAIM FAILS .......... 8

IV. QUALCOMM'S TLA CLAIMS FAIL FOR FAILURE TO PROVIDE NOTICE. .......... 10

V. QUALCOMM'S IMPLIED COVENANT CLAIM FAILS. .......... 10

VI. THERE WAS NO TORTIOUS INTERFERENCE. .......... 11

A. *Noerr-Pennington* Immunity Bars the Tortious Interference Claims. .......... 11

B. Arm's Conduct Was Not Independently Wrongful. .......... 12

1. Qualcomm Has Failed to Satisfy the Tethering Test. .......... 13

2. Qualcomm Has Failed to Satisfy the Balancing Test. .......... 14

C. There Is No Evidence That Arm Knew of Any Economic Relationship. .......... 14

D. Arm's Conduct Did Not Cause Qualcomm Any Injury or Damages. .......... 15

1. Qualcomm Is Not the Entity That Suffered the Claimed Injury. .......... 15

2. Arm's Conduct Did Not Disrupt Qualcomm's Negotiations with Meta. .......... 16

E. Arm's Conduct Was Neither Intentional Nor Negligent. .......... 17

VII. QUALCOMM'S CLAIMS ARE BARRED BY THE LIMITATION ON LIABILITY. .......... 17

VIII. ARM HOLDINGS IS NOT LIABLE FOR ANY OF QUALCOMM'S CLAIMS. .......... 18

A. Arm Holdings Cannot Be Liable for Breach of the ALA or TLA. .......... 18

B. Arm Holdings Is Not Liable for Tortious Interference. .......... 19

IX. COLLATERAL ESTOPPEL BARS THE CLAIMS AGAINST ARM LTD. .......... 19

CONCLUSION .......... 20

***NOTE***: All emphasis added and quotations and citations omitted unless otherwise indicated.

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Gaudin*,
2017 WL 4685548 (W.D. Pa. Oct. 18, 2017) ....................19

*Acumed LLC v. Advanced Surgical Servs., Inc.*,
561 F.3d 199 (3d Cir. 2009) ....................1

*Axtria, Inc. v. OKS Grp. LLC*,
702 F. Supp. 3d 299 (E.D. Pa. 2023) ....................18

*Brookfield Prop. Grp. v. Liberty Mut. Fire Ins.*,
679 F. Supp. 3d 971 (C.D. Cal. 2023) ....................18

*Cap. Health Sys. v. Veznedaroglu*,
2017 WL 751855 (D.N.J. Feb. 27, 2017) ....................12

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
973 P.2d 527 (Cal. 1999) ....................13, 14

*Daugherty v. Dondero*,
2023 WL 461112 (Del. Ch. Jan. 27, 2023) ....................20

*Della Penna v. Toyota Motor Sales, U.S.A. Inc.*,
11 Cal. 4th 376 (1995) ....................12

*In re Dex Media*,
595 B.R. 19 (D. Del. 2018) ....................19

*Dollar Tree Stores Inc. v. Toyama Partners LLC*,
875 F. Supp. 2d 1058 (N.D. Cal. 2012) ....................5

*Drum v. San Fernando Valley Bar Assoc.*,
182 Cal. App. 4th 247 (Cal. App. 2010) ....................14

*EEOC v. U.S. Steel*,
921 F.2d 489 (3d Cir. 1990) ....................19

*Erie Indem. Co. v. Stephenson*,
157 F.4th 265 (3d Cir. 2025) ....................19

*Est. of Lieberman v. Playa Dulce Via*,
2022 WL 2945247 (E.D. Pa. July 26, 2022) ....................11, 16

*Est. of Moore v. Roman*,
2021 WL 3163992 (D.N.J. July 27, 2021)....................20

*FTC v. Qualcomm, Inc.*,
969 F.3d 974 (9th Cir. 2020)....................14

*Gavin v. Club Holdings*,
2016 WL 1298964 (D. Del. Mar. 31, 2016)....................5

*Guz v. Bechtel Nat'l, Inc.*,
24 Cal. 4th 317 (2000)....................10

*Haley v. Casa Del Rey Homeowners Ass'n*,
63 Cal. Rptr. 3d 514 (Ct. App. 2007)....................4

*Hall v. Hall*,
584 U.S. 59 (2018)....................20

*Hydrogen Master v. Weston*,
228 F. Supp. 3d 320 (D. Del. 2017)....................5

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (Cal. 2003)....................15, 17, 19

*Leonhardi-Smith, Inc. v. Cameron*,
108 Cal. App. 3d 42 (Cal. App. 1980)....................9

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014)....................13

*Lightning Lube, Inc. v. Witco Corp.*,
4 F.3d 1153 (3d Cir. 1993)....................1

*Lubrizol v. Exxon*,
929 F.2d 960 (3d Cir. 1991)....................19

*Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*,
2011 WL 678707 (D. Del. Feb. 18, 2011)....................12

*McKenna v. City of Phila.*,
304 F. App'x 89 (3d Cir. 2008)....................20

*Milliner v. Mut. Sec., Inc.*,
2021 WL 2645793 (N.D. Cal. June 28, 2021)....................18

*Multimedia Pat. Tr. v. LG Elecs., Inc.*,
2013 WL 12073800 (S.D. Cal. Aug. 1, 2013)....................12

*Navellier v. Sletten*,
106 Cal. App. 4th 763 (Cal. App. 2003) ....................3, 4

*Northridge Hosp. Foundation v. Pic 'N' Save No. 9 Inc.*,
187 Cal. App. 3d 1088 (Cal. App. 1986) ....................17

*Ohio v. Am. Express Co.*,
585 U.S. 529 (2018) ....................13

*Olson v. World Fin. Grp. Ins. Agency*,
2024 WL 3498572 (N.D. Cal. July 19, 2024) ....................15

*Petersen v. Arch Ins.*,
2015 WL 3968590 (C.D. Cal. June 30, 2015) ....................5

*Phila. Taxi Ass'n, Inc. v. Uber Techs., Inc.*,
886 F.3d 332 (3d Cir. 2018) ....................14

*Pivotal Payments Direct Corp. v. Planet Payment*,
2015 WL 11120934 (Del. Super. Ct. Dec. 29, 2015) ....................4

*Prewitt v. Walgreens*,
2013 WL 6284166 (E.D. Pa. Dec. 2, 2013) ....................20

*Progressive W. Ins. v. Super. Ct.*,
135 Cal. App. 4th 263 (Cal. App. 2005) ....................14

*In re Qualcomm Litig.*,
2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) ....................13, 14

*R.N.R. Oils, Inc. v. BP W. Coast Prods.*,
2011 WL 37962 (Cal. App. 2011) ....................14

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
732 F. Supp. 3d 1101 (N.D. Cal. 2024) ....................12

*Santa Fe Properties v. Source Bioscience*,
2021 WL 6104156 (C.D. Cal. Feb. 10, 2021) ....................17

*Shagrow Telecom Tech Co. v. Gentec Enters., Inc.*,
2014 WL 12688419 (C.D. Cal. Feb. 28, 2014) ....................10

*Silva v. City of New Bedford, Mass.*,
677 F. Supp. 2d 367 (D. Mass. 2009) ....................9

*Silverado Modjeska Recreation & Park Dist. v. Cnty. of Orange*,
197 Cal. App. 4th 282 (2011) ....................5

*Singman v. NBA Props., Inc.*,
2014 WL 7892049 (C.D. Cal. Jan. 17, 2014) ....................17

*Soares v. Discover Bank*,
2021 WL 10351907 (C.D. Cal Dec. 1, 2021) ....................19

*Stephens v. Clash*,
796 F.3d 281 (3d Cir. 2015)....................4

*Sun Microsystems, Inc. v. Microsoft Corp.*,
87 F. Supp. 2d 992 (N.D. Cal. 2000) ....................14

*Sunrise Pharm. v. Vision Pharma.*,
2018 WL 11476075 (D.N.J. June 20, 2018) ....................12

*Surf Boards by Donald Takayama v. Surf Technician*,
2026 WL 296453 (S.D. Cal. Feb. 4, 2026) ....................5

*Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*,
655 F. App'x 103 (3d Cir. 2016) ....................11

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
546 F.3d 991 (9th Cir. 2008) ....................12

*Thorpe v. Pittsburgh Theological Seminary*,
2025 WL 1707912 (W.D. Pa. June 18, 2025)....................20

*Trs. Of Univ. of Pa. v. St. Jude Child.'s Rsch. Hosp.*,
940 F. Supp. 2d 233 (E.D. Pa. 2013) ....................11

*Tullett Prebon, PLC v. BGC Partners*,
2010 WL 2545178 (D.N.J. June 18, 2010) ....................16

*U.S. v. Gilead Sci.*,
722 F. Supp. 3d 458 (D. Del. 2024)....................1

*UMG Recordings v. Glob. Eagle Ent.*,
117 F. Supp. 3d 1092 (C.D. Cal. 2015) ....................12

*Vasinda v. State Farm Mut. Auto. Ins.*,
2022 WL 17684807 (M.D. Pa. Sept. 22, 2022) ....................3

*Warner Theatre Assocs. Ltd. P'Ship v. Metro Life Ins. Co.*,
1997 WL 685334 (S.D.N.Y. Nov. 4, 1997)....................10

*Wolf v. Walt Disney Pictures & Television*,
162 Cal. App. 4th 1107 (Cal. App. 2008)....................2

**Statutes**

10 Del. C. § 8106 ....................................................................................................................5

28 U.S.C. § 2072(b) ..............................................................................................................20

**Rules**

Fed. R. Civ. P. 50(a)(1)..........................................................................................................1

Arm Holdings and Arm Ltd. respectfully move for judgment as a matter of law.

## LEGAL STANDARD

Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party." Fed. R. Civ. P. 50(a)(1). To defeat a motion for judgment as a matter of law, Qualcomm must present substantial evidence supporting a finding in its favor. *U.S. v. Gilead Sci.*, 722 F. Supp. 3d 458, 466 (D. Del. 2024). "[A] scintilla of evidence is not enough"; "[s]ubstantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the finding." *Id.*; *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). The Court may also grant judgment "on a purely legal basis." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009).

## ARGUMENT

### I. QUALCOMM'S ALA § 5.1 CLAIMS FAIL.

No reasonable jury could find that either Arm Ltd. or Arm Holdings breached ALA § 5.1 by withholding OOBs and ACK patches. Until July of 2026, Qualcomm maintained that Arm Holdings' actions constituted a single breach that accrued in January 2023. In July, however, Qualcomm argued for the first time that Arm Ltd. had violated the ALA each time it purportedly failed to provide an OOB or ACK patch through January of 2025—and each failure reset the limitations period. D.I. 851 at 14-15. Both theories fail.

#### A. OOBs and ACK Patches Are Not Subject to § 5.1 as a Matter of Law.

The § 5.1 claims fail as a matter of law because § 5.1 does not require Arm to deliver OOBs or ACK patches. As relevant here, Section 5.1 requires Arm to deliver "ARM Technology." JTX-1. (Qualcomm does not argue "Updates" under § 5.1 are at issue anymore. D.I. 976 at 1-3.) "ARM Technology" is defined as "the technology identified in each Annex 1 and any Extensions and Updates thereto . . . ." *Id.* § 1.3. The v8 and v9 Annex 1s identify the ARM Technologies by

"Part Number." JTX-3 § 1; JTX-4 § 1. None of those listed ARM Technologies in the v8 and v9 Annex 1s are OOBs or ACK patches, which makes sense. *Id.*; Tr. (Grisenthwaite) 491:11-24, 495:24-496:7. The ARM Technology is standardized and delivered to all ALA licensees, but OOBs and ACK patches are customer specific. Tr. (Grisenthwaite) 476:9-18, 478:21-479:1, 489:23-490:16, 496:8-14. The ACK itself, by contrast, is listed by Part Number in the v8 and v9 Annex 1s, and it is undisputed that Arm delivered every quarterly ACK release to Qualcomm. *Id.* 479:7-480:18, 481:17-482:4; Tr. (Trivedi) at 569:9-12; DTX-1675; DTX-1679.

Qualcomm claims parol evidence shows that "ARM Technology" includes OOBs and ACK patches, but offers no interpretation of that term. D.I. 976 at 1-3. Regardless, any evidence that Arm Ltd. previously provided OOBs and ACK patches to Qualcomm or to other licensees does not speak to whether Qualcomm and Arm Ltd., at the time they executed the ALA, intended to include OOBs and ACK patches as "ARM Technology." *E.g.*, *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1134-37 (Cal. App. 2008). No reasonable juror could find, based on this extrinsic evidence, that customer-specific OOBs and ACK patches, which have no Part Number and are not listed in the v8 and v9 Annex 1s, are "ARM Technology."

### B. Qualcomm Has Not Presented Any Evidence of Any Breach.

To prove a § 5.1 breach, Plaintiff must show that Arm did not "use reasonable efforts to deliver the ARM Technology on or before the delivery dates set out in Section 1 of the relevant Annex 1" or "deliver Updates to LICENSEE as soon as reasonably possible after such Update is made generally available by ARM." JTX-1. But Qualcomm failed to make any such showing. The extent of Qualcomm's evidence for OOBs is testimony showing that Arm did not provide them between fall 2022 through January 2025. Tr. (Grisenthwaite) 503:19-20; Tr. (Trivedi) 523:9-12. For ACK patches, all Qualcomm has done is show the jury compliance reports reporting potential ACK test issues, PTX-895, -1793, -2655, -1253, -1263, -1715, -1716; Tr. (Trivedi)

539:15-547:1, and Mr. Trivedi's testimony that Qualcomm did not receive ACK patches between November 2022 and February 2025, Tr. (Trivedi) 547:20-548:14. But Qualcomm offered no evidence of, and Mr. Trivedi did not testify to, any specific OOB or ACK patch that Qualcomm contends it was entitled to receive but did not receive, or when Arm was supposed to have delivered it.

### C. Qualcomm Have Not Presented Any Evidence of Harm or Damages.

All of Qualcomm's ALA § 5.1 claims also fail because Qualcomm offered no evidence of harm or damages, both of which are prerequisites for its claim. *Navellier v. Sletten*, 106 Cal. App. 4th 763, 775 (Cal. App. 2003); *Vasinda v. State Farm Mut. Auto. Ins.*, 2022 WL 17684807, at *13 (M.D. Pa. Sept. 22, 2022). Qualcomm pursued its claim in the hope of a windfall remedy under § 8.3. They did not disclose any alternative harm or damages theories through their expert, Mr. Kennedy, or in any other form—presumably because any such evidence would show just how disproportionate their requested § 8.3 remedy was. Having made that choice, Qualcomm must now accept the consequences. Tr. (Kennedy) 993:23-994:3.

Moreover, the evidence shows that Qualcomm suffered no actual harm at all. Qualcomm's CEO, Mr. Amon, admitted this under oath. When asked if it was "true" that "there has been no injury or harm to Qualcomm from a chip going out to market that had a problem with its verification," Mr. Amon responded, "***True***." Tr. (Amon) 201:21-25; *id.* 201:10-16 ("Q. [Y]ou readily admitted that that has never happened, correct? A. It did not happen."). Qualcomm tried to fix this problem with testimony from Mr. Trivedi, who said Qualcomm had to "do extra work" ("an hour" to "roughly a week"). Tr. (Trivedi) 549:12-17, 550:9-11, 560:9-18. But Mr. Trivedi admitted that he was not "able to quantify" that purported harm; nor did he or his team document the time spent doing "extra work." *Id.* at 555:4-23. In fact, Mr. Trivedi subsequently disclaimed this testimony—when pressed if there was "no actual harm," he responded that, "[f]or these test

issues, the failure analysis, ***yes***," thereby admitting Qualcomm suffered no harm. *Id.* 562:21-563:2; *id.* 558:20-559:12 ("Q. You did not do any significant extra work or spend any significant extra time as a result of Arm not providing OOB to Qualcomm? A. You could summarize it that way, yes."). No other witness tried to quantify Qualcomm's alleged harm.

What is more, Arm never stopped fixing ACK test issues reported by Qualcomm and included those fixes in quarterly ACK releases, which Qualcomm indisputably received. Tr. (Grisenthwaite) 480:15-24, 496:15-17; Tr. (Trivedi) 569:9-12, 570:2-571:7; DTX-1675; DTX-1679. Indeed, Mr. Trivedi knew immediately in September 2022 that Qualcomm would not be "blocked" from verifying its cores, which is exactly what happened—Qualcomm successfully used the ACK to verify all its cores without any delay or customer complaints and submitted compliance reports for each one. Tr. (Trivedi) 568:1-7, 564:3-566:10; DTX-4. And Qualcomm has always had access to the "val_report" tool, which it could (and did) use to generate the same OOB test list that Arm supposedly withheld. *Id.* 553:5-555:3; Tr. (Grisenthwaite) 492:15-19, 493:6-495:3.

The Court should enter judgment as a matter of law as Qualcomm failed to adduce evidence of harm or damages. *Navellier*, 106 Cal. App. 4th at 775. Qualcomm cannot substitute nominal damages to rescue its claims; it never disclosed any such theory. D.I. 868 Ex. 1, Qualcomm's 5th Supp. Response to Interrogatory No. 9 (disclosing only actual damages, refund, and § 8.3); *see also Haley v. Casa Del Rey Homeowners Ass'n*, 63 Cal. Rptr. 3d 514, 521-22 (Ct. App. 2007).

**D. Delaware's Statute of Limitations Bars the Original Alleged Breach.**

Delaware's choice-of-law rules govern this diversity case. *Stephens v. Clash*, 796 F.3d 281, 289 (3d Cir. 2015). The ALA's choice-of-law provision, JTX-1 § 16.15, does not apply, because it does "not expressly include the statute of limitations in the choice of law provision." *Pivotal Payments Direct Corp. v. Planet Payment*, 2015 WL 11120934, at *3 (Del. Super. Ct. Dec. 29, 2015). Under Delaware choice-of-law rules, the law of the forum determines whether an action

is barred by the statute of limitations, so Delaware's three-year period applies to this action. 10 Del. C. § 8106; *Gavin v. Club Holdings*, 2016 WL 1298964, at *4 (D. Del. Mar. 31, 2016).

Qualcomm did not file any § 5.1 claim against Arm Ltd. until January 8, 2026, No. 26-20 D.I. 2, so claims that accrued before January 7, 2023 are time-barred. Qualcomm claims that Arm Ltd. failed to deliver OOBs and ACK patches in September 2022, a claim that accrued January 4, 2023 at the latest, when the notice-and-cure period expired. Tr. (Trivedi) 522:19-24; JTX-1 § 8.3; *Hydrogen Master v. Weston*, 228 F. Supp. 3d 320, 330 (D. Del. 2017). That claim is time-barred.

**E. No Evidence Shows Qualcomm Complied with the ALA's Notice Provision.**

ALA § 8.3 requires Qualcomm to "send a first written notice of non-compliance via email and via registered mail" to Arm, and absent response, a "second written notice of non-compliance" via the same. JTX-1 § 8.3. Arm then has thirty days to cure. *Id.* This notice-and-cure requirement remains valid in the event the Court finds the § 8.3 remedy is unenforceable. JTX-1 § 16.9 (if a provision deemed unenforceable "would be legal, valid, or enforceable if some part of the provision were deleted, the provision in question will apply with such modification"); *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1075 (N.D. Cal. 2012).

There is no record evidence that Qualcomm complied with this notice-and-cure provision, for ***any*** asserted breach that occurred after November 3, 2022. *Silverado Modjeska Recreation & Park Dist. v. Cnty. of Orange*, 197 Cal. App. 4th 282, 312 (2011) (breach is "the failure to cure an alleged breach after receipt of proper notice of the alleged breach, and CCRC failed to give the District proper notice of breach"). Nor is there evidence that it would have been futile for Qualcomm to provide notice and an opportunity to cure. *Surf Boards by Donald Takayama v. Surf Technician*, 2026 WL 296453, at *6 (S.D. Cal. Feb. 4, 2026) (futility means the breach "is incurable within the contracted cure period"); *Petersen v. Arch Ins.*, 2015 WL 3968590, at *4 (C.D. Cal. June 30, 2015). And although Qualcomm has gestured at California's idle act rule, it does

not apply to contractual notice requirements. If Qualcomm is right that the separate accrual doctrine applies, then Qualcomm's failure to offer evidence of notice-and-cure forecloses liability for any separately accruing breaches after November 3, 2022.

## II. QUALCOMM'S TLA § 8.1B CLAIM FAILS.

Judgment as a matter of law is appropriate on the TLA § 8.1B claim for three reasons.

***First***, Arm had no obligation under § 8.1B to offer a license proposal in response to Qualcomm's 2024 requests to renew the Hunter, Hayes, and Yamin ("HHY") cores. The TLA expressly states that Arm's § 8.1B obligations trigger only "upon receipt of [Qualcomm's] initial written request (***the 'Initial Request'***) to license . . . an implementation of an ARM Implementation Core and again upon receipt of [Qualcomm's] subsequent one-time written request at any time up to the twelve (12) month anniversary of such Initial Request (the 'Subsequent Request')." JTX-5 § 8.1B. Qualcomm made the Initial Request to license HHY in 2019. Tr. (Shivashankar) 699:22-700:6. Arm responded by offering a seven-year license to those cores, which Qualcomm accepted in October 2019. DTX-906. Qualcomm requested a renewal license for HHY in April and August 2024. Tr. (Collins) 755:7-17. But the 2024 requests were not "the Initial Request"; that occurred back in 2019. Tr. (Shivashankar) 699:22-700:6. Nor did the 2024 requests constitute the "Subsequent Request" to the 2019 request. JTX-5 § 8.1B. Arm had no § 8.1B obligations.

Qualcomm's only response is that § 8.1B is ambiguous and applies both on the Initial Request (in 2019), as well as any subsequent request to renew the license. D.I. 1002, at 28. But the contract language is unambiguous, and even if it were not, the evidence compels Arm's interpretation. In the TLA negotiations, Qualcomm told Arm all it wanted was confirmation the license "is still 'fair' at the first anniversary" and "competitive within the first year of license," and it acknowledged that it had "dropped requests to confirm for additional periods." PTX-90. The testimony of Qualcomm's own witnesses shows that § 8.1B applies only to the Initial Request and

the Subsequent Request, not to later renewal requests. Tr. (Weiser) 887:3-6, 890:16-19, 892:4-12, 897:2-7. Indeed, that would lead to absurd results—Qualcomm could request repeat one-year licenses, subjecting Arm to § 8.1B the entire time. *Id.* 900:2-14, 901:1-902:4. TLA § 8.1B is not susceptible to Qualcomm's interpretation.

***Second***, even if Qualcomm's 2024 requests were "the Initial Request," Qualcomm has offered no evidence that Arm breached § 8.1B. That provision requires Arm Ltd. to "in good faith . . . investigate and determine the ARM license agreement with a third party for the same ARM Implementation Core, in effect on the date of the applicable [Qualcomm] request, with the lowest royalty rate previously agreed (the 'Previous Best Deal')." JTX-5 § 8.1B(i). Arm investigated and determined that Samsung's license was the Previous Best Deal. PTX-1423; Tr. (Shivashankar) 666:21-24. Qualcomm's expert agreed that Samsung's license was the Previous Best Deal for Hunter and Hayes. Tr. (Kennedy) 1006:12-1007:20. As for Yamin, the Samsung license provided a higher standalone rate for Yamin than another license, but Samsung's license allowed it to pay "zero" royalty when used in combination with certain cores, including Hunter and Hayes. Tr. (Shivashankar) 718:6-10, 729:17-20; Tr. (Kennedy) 1010:11-15. When used in combination, the license provided that "the highest single Royalty [of the cores used in combination] shall apply." PTX-1057. Hunter and Hayes have higher royalties than Yamin, so those rates prevail as the "highest single Royalty" if the HHY cores were used in combination. Tr. (Shivashankar) 718:6-10, 21-25. That is how Qualcomm stated it would use the Yamin core and that is the common practice in the market. Tr. (Shivashankar) 720:20-721:12. Arm thus made a good faith investigation, satisfying § 8.1B(i). Qualcomm also offered no evidence that it actually used Yamin as a standalone core, so the Samsung license was, in fact, the Previous Best Deal for Yamin too.

After determining the Previous Best Deal, § 8.1B(ii)(a) requires Arm Ltd. to "in good faith"

"(a) offer [Qualcomm] a license to the same ARM Implementation Core" and "(b) such an offer shall be for license fees and royalty rates that ***ARM reasonably determines***, based on ***ARM's comparison*** of all financial considerations and license rights, without limitation (e.g., indemnities, limitation of liability, scope and term of license . . .), no more than ten percent (10%) higher than the Previous Best Deal." JTX-5. Arm Ltd. offered Qualcomm a license to HHY on October 24, 2024. PTX-1535. In making that proposal, Arm considered all financial considerations of Samsung's license—including Samsung's significantly higher license fee and the scope, length, and terms of that license—and formulated its October 2024 proposal to be within 10% of that license after taking those considerations into account. Tr. (Shivashankar) 627:14-20, 666:19 ("It was all based on Samsung."); *id.* 722:16-723:5. That determination of the financial considerations is entirely within Arm's discretion; all that § 8.1B(ii)(b) requires is a "good faith", reasonable determination. JTX-5. Qualcomm has failed to rebut Mr. Shivashankar's testimony about the financial considerations relevant to Qualcomm's and Samsung's licenses, and it has failed to present sufficient evidence that Arm's October 2024 proposal was, in fact, more than 10% higher than Samsung's license, considering all financial considerations. For example, Samsung's license fee was substantially higher than the October 2024 proposal's license fee, and Samsung's license was a subscription license that was broader in scope. PTX-1423; Tr. (Shivashankar) 696:2-17.

***Third***, Qualcomm has offered no evidence of any injury or damages from the § 8.1B claim. Tr. (Varma) 955:19-21 (Qualcomm continues to have HHY license), 943:14-16 (unable to say that Qualcomm had ever been overcharged for HHY); Tr. (Kennedy) 1011:19-1012:15.

## III. QUALCOMM'S TLA § 8.1D CLAIM FAILS.

TLA § 8.1D states that "ARM may modify the material non-financial terms and conditions under which it offers to license [Qualcomm] a new ARM Implementation Core upon providing a

three (3) years minimum written notice." JTX-5. Qualcomm argues that Arm's October 2024 proposal for HHY breached § 8.1D because it did not include support and maintenance. Not so.

***First***, § 8.1(D) applies only to "offers to license [Qualcomm] a ***new*** Arm Implementation Core." JTX-5 § 8.1D. HHY were released years before Qualcomm's 2024 requests, and it first licensed those cores in 2019. Tr. (Shivashankar) 699:22-700:6. Qualcomm has failed to offer sufficient evidence that HHY were new cores in October 2024. *See Leonhardi-Smith, Inc. v. Cameron*, 108 Cal. App. 3d 42, 47 (Cal. App. 1980) ("A renewal of a lease is not a new lease.").

***Second***, there is no evidence that the October 2024 proposal "modif[ied]" any non-financial terms, as Qualcomm would still have received support and maintenance if it accepted the October 2024 proposal. Qualcomm and Arm Ltd. have a separate Support and Maintenance Agreement ("SMA") that covers support and maintenance for every core that Qualcomm licenses under the TLA, including HHY. DTX-33; Tr. (Shivashankar) 685:24-686:2. Arm did not exclude support and maintenance in the October 2024 proposal; it considered the SMA and tried to make clear that it was not "double charg[ing]" Qualcomm for services it already paid for under the SMA. Tr. (Shivashankar) 731:13-22, 732:13-17. That agreement runs through December 2027, has been renewed several times, and Qualcomm has offered no evidence that the SMA will not be renewed beyond 2027. *Id.* 686:14-18. Nothing about support or maintenance was "modified" by the October 2024 proposal.

***Third***, because it is undisputed that Qualcomm would still receive support and maintenance under the SMA, no reasonable juror could find that Qualcomm suffered harm or damages. No Qualcomm witness even testified about this purported § 8.1D claim, let alone about harm.

## IV. QUALCOMM'S TLA CLAIMS FAIL FOR FAILURE TO PROVIDE NOTICE.

The TLA, like the ALA, *see supra*, contains a notice provision in § 8.3 that applies to alleged breaches of § 8. JTX-5. Qualcomm claims breach of § 8.1B and § 8.1D, but has not put evidence in to show that it gave notice to Arm and provided an opportunity to cure.

## V. QUALCOMM'S IMPLIED COVENANT CLAIM FAILS.

Arm Ltd.'s October 2024 proposal included an offer for peripheral IP licenses (GIC-700, MMU 700, and ELA-600), an offer that Arm Ltd. revised in January 2025. DTX-29; DTX-2402. Qualcomm claims that these peripheral IP offers breached the TLA's implied covenant of good faith and fair dealing because the proposed price was too high. This is wrong as a matter of law.

***First***, the implied covenant can only "fill gaps that the agreement does not address." *Shagrow Telecom Tech Co. v. Gentec Enters., Inc.*, 2014 WL 12688419, at *3 (C.D. Cal. Feb. 28, 2014). Section 8.1F provides that, "to the extent that ARM makes generally available for licensing to third parties, software development and debug tools and peripherals relevant to the utilization of any ARM Technology licensed under this TLA, it will offer to license such software development and debug tools and ***peripherals*** to LICENSEE." JTX-5. Section 8.1F expressly addressed peripheral IP, yet does not impose any limit on the license fees or royalty rates that may be charged for that peripheral IP. Qualcomm's claim that the price of the peripheral license fee breached the implied covenant thus improperly "impose[s] substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-50 (2000); *Warner Theatre Assocs. Ltd. P'Ship v. Metro Life Ins. Co.*, 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997) ("Nothing in the duty of good faith requires that parties to a negotiation propose only such terms as the other party is happy with.").

***Second***, Qualcomm has not offered any evidence that Arm Ltd.'s peripheral IP license fees were made in bad faith. True, Arm increased the fees in the January 2025 offer, as compared to

the October 2024 offer. But that was reasonable as Qualcomm sought to license only the peripheral IP, not HHY *and* the peripheral IP, and "it's a general practice when a customer is committing for less number of IP, they get a lesser discount." Tr. (Shivashankar) 730:9-10. Qualcomm has presented no rebuttal testimony, and although Qualcomm now claims the fees were too high, Qualcomm accepted both the October 2024 peripheral IP offer, and the January 2025 offer. Tr. (Varma) 950:10-951:19 That proves not even Qualcomm believed Arm acted in bad faith.

***Third***, Qualcomm's expert's damages opinion is unreliable and speculative, and fails to account for the facts, which show among other things that Qualcomm agreed to the fees—market evidence that they were reasonable. Tr. (Kennedy) 1043:13-144:7. No reasonable juror could award damages on this record. *Est. of Lieberman v. Playa Dulce Via*, 2022 WL 2945247, at *8 (E.D. Pa. July 26, 2022).

## VI. THERE WAS NO TORTIOUS INTERFERENCE.

Qualcomm's tortious interference claims are premised on Arm's August 2022 communication with Meta about the first lawsuit, PTX-587, -2676, the October 22, 2024 Notice Letter, DTX-55, and the sharing of that letter with the media. Judgment as a matter of law is appropriate for multiple reasons.

### A. *Noerr-Pennington* Immunity Bars the Tortious Interference Claims.

The *Noerr-Pennington* doctrine protects "parties who petition governments for redress from claims arising in response to that petitioning" and has been "extended . . . to include protection for citizens who petition for relief through the courts." *Trs. Of Univ. of Pa. v. St. Jude Child.'s Rsch. Hosp.*, 940 F. Supp. 2d 233, 239-40 (E.D. Pa. 2013). The doctrine bars numerous types of claims arising from litigation activity, including state-law tort claims. *Id.* *Noerr-Pennington* protects not just litigation conduct, but also conduct "incidental" to protected litigation. *Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 655 F. App'x 103, 110–11 (3d Cir. 2016).

The Notice Letter, which informed Qualcomm that it "is in material breach of the Qualcomm ALA" and stated, "[u]nless Qualcomm cures its material breach within 60 days, Arm shall be entitled to immediately terminate the ALA," DTX-55, is indistinguishable from the demand letters, cease-and-desist letters, and threats of suit courts routinely protect as incidental litigation-related conduct. *E.g.*, *UMG Recordings v. Glob. Eagle Ent.*, 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015); *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, 2011 WL 678707, at *2 (D. Del. Feb. 18, 2011). Thus, Arm's Notice Letter cannot be the basis for a tortious interference claim. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008); *Multimedia Pat. Tr. v. LG Elecs., Inc.*, 2013 WL 12073800, at *3 (S.D. Cal. Aug. 1, 2013).

Likewise, Arm's August 2022 communication with Meta when the first lawsuit was filed, PTX-587, -2676, and the October 2024 sharing of the Notice Letter with the media, during the trial in that case, are both protected. Attaching liability to the publication of legitimate legal claims risks chilling litigation conduct, so courts extend *Noerr-Pennington* immunity to press releases about pending litigation. *Sunrise Pharm. v. Vision Pharma.*, 2018 WL 11476075, at *3 (D.N.J. June 20, 2018); *Cap. Health Sys. v. Veznedaroglu*, 2017 WL 751855, at *13 (D.N.J. Feb. 27, 2017). Litigation adversaries are not liable for tortious interference merely for providing their view of a case to the other party's customers. *E.g.*, *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1113 (N.D. Cal. 2024) (dismissing claims premised on communications to plaintiff's customers).

**B. Arm's Conduct Was Not Independently Wrongful.**

For both the intentional and negligent interference claims, Qualcomm must prove that Arm's conduct was "independently wrongful"—*i.e.*, "wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A. Inc.*, 11 Cal. 4th 376, 393 (1995). Qualcomm has tried to prove "independently wrongfulness" under the "unfair" prong

of California's UCL. California courts use two tests to determine whether conduct is "unfair." First, "[w]hen a plaintiff [] claims to have suffered injury from a direct competitor's 'unfair' act or practice[s]," courts use the "tethering test." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 544 & n.12 (Cal. 1999). Courts apply the tethering test even where the companies are not "direct competitors," and they have extended it to disputes between "sophisticated corporations." *In re Qualcomm Litig.*, 2017 WL 5985598, at *7 (S.D. Cal. Nov. 8, 2017) (applying tethering test to Qualcomm and Apple, two "sophisticated corporations" in an "ongoing" and "vertical business relationship"); *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136 (9th Cir. 2014). Second, in suits brought by consumers, some California courts apply a "balancing test." *Cel-Tech*, 973 P.2d at 543. The balancing test does not apply in suits between competitors or sophisticated businesses. *Id.*; *Qualcomm*, 2017 WL 5985598, at *7.

The tethering test applies here because Qualcomm and Arm are sophisticated corporations and direct competitors. Tr. (Amon) 195:4, 207:7-12; *Qualcomm*, 2017 WL 5985598, at *7.

1. Qualcomm Has Failed to Satisfy the Tethering Test.

Under the tethering test, a plaintiff must prove the defendant's conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 973 P.2d at 544 & n.12. Qualcomm has identified no antitrust law, let alone evidence that Arm violated the letter or spirit of any antitrust law.

Nor could any reasonable juror conclude that Arm's conduct otherwise threatened or harmed competition. Qualcomm has not identified any antitrust market, and "[w]ithout a definition of [the] market there is no way to measure [defendant's] ability to lessen or destroy competition." *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018). In addition, Qualcomm has not even attempted to show injury to anyone other than itself, and "[i]njury to a competitor is not

equivalent to an injury to competition." *Cel-Tech*, 973 P.2d at 544; *Phila. Taxi Ass'n, Inc. v. Uber Techs., Inc.*, 886 F.3d 332, 338 (3d Cir. 2018); *Sun Microsystems, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 992, 1001 (N.D. Cal. 2000); *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 996 (9th Cir. 2020); *Drum v. San Fernando Valley Bar Assoc.*, 182 Cal. App. 4th 247, 257 (Cal. App. 2010).

2. Qualcomm Has Failed to Satisfy the Balancing Test.

The balancing test asks whether the challenged conduct is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" by "weigh[ing] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Cel-Tech*, 973 P.2d at 543. The balancing test does not apply here. *Qualcomm*, 2017 WL 5985598, at *7. California adopted a balancing test for consumers (rather than the tethering test) because "consumers are more vulnerable to unfair business practices than businesses and without the necessary resources to protect themselves from sharp practices"—that is a class of persons that certainly does not include Qualcomm. *Progressive W. Ins. v. Super. Ct.*, 135 Cal. App. 4th 263, 286 (Cal. App. 2005).

Even if the balancing test applied, Qualcomm has failed to prove that Arm's conduct was "immoral . . . or substantially injurious to consumers." Mr. Amon testified that Qualcomm speaks to the media often, engages with the media before and after articles are published, and talks to reporters to publicize stories. Tr. (Amon) 226:2-20. Indeed, Mr. Amon said that "all sorts of companies do it," and from Qualcomm's perspective, that conduct is not wrongful. *Id.* 226:21-24. There can be no doubt that engaging with the media is not "immoral." In any event, under the balancing test, Qualcomm must still prove that Arm's alleged interference with Qualcomm's Meta relationship harmed a consumer or person besides itself. *R.N.R. Oils, Inc. v. BP W. Coast Prods.*, 2011 WL 37962, at *8 (Cal. App. 2011); *Drum*, 182 Cal. App. 4th at 257. It has not done so.

**C. There Is No Evidence That Arm Knew of Any Economic Relationship.**

Qualcomm must prove "(1) an economic relationship between the plaintiff and some third

party, with the probability of future economic benefit to the plaintiff;" and "(2) the defendant's knowledge of the relationship." *Korea Supply*, 63 P.3d at 953.

No Economic Relationship. Qualcomm has insufficient evidence of a probability of future economic benefit with Meta's Reality Labs or Infra group at the time of Arm's conduct in 2022 and October 2024; the parties had not even exchanged term sheets. *Olson v. World Fin. Grp. Ins. Agency*, 2024 WL 3498572, at *4 (N.D. Cal. July 19, 2024). Qualcomm also left the infrastructure market in 2018; it never even delivered a single server chip. Tr. (Amon) 221:24-222:5, 250:7-22.

No Knowledge of That Relationship. Qualcomm cannot, and did not, show any evidence that Arm knew of its relationship with Meta regarding Infra products. Arm's 2022 and October 2024 conduct related to Qualcomm's ALA breach of the ALA, so it could only impact Meta's Infra products, not its Reality Labs products (which used TLA cores). Tr. (Mulabagal) 831:10-13. Yet Mr. Amon testified that Qualcomm's relationship with Meta for Infra products was not public until ***after*** the October 2024 Notice Letter and Bloomberg article. Tr. (Amon) 253:11-20 ("A. It was confidential. It was not made public until 26. Q. And so you and Meta did your best to not have Arm know you had a potential even server relationship until 2026, correct? A. Yes.").

**D. Arm's Conduct Did Not Cause Qualcomm Any Injury or Damages.**

Qualcomm must also prove "actual disruption" of its relationship with Meta and "economic harm proximately caused by Arm's conduct." *Korea Supply*, 63 P.3d at 950.

1. Qualcomm Is Not the Entity That Suffered the Claimed Injury.

Qualcomm is not the entity that signed the Meta XR/Infra agreement. Tr. (Amon) 248:7-249:19. The alleged harm was borne by a different entity, Qualcomm CDMA Technologies Asia-Pacific ("QC-TAP"). *Id.* 199:12. Qualcomm attempted to elicit testimony that QC-TAP is a subsidiary of one of the plaintiffs (QTI), and the less revenue QC-TAP has, the less QTI receives. *Id.* 199:17-200:1. But QTI's position as the parent of QC-TAP is insufficient to establish injury.

*Tullett Prebon, PLC v. BGC Partners*, 2010 WL 2545178, at *4 (D.N.J. June 18, 2010) ("Wrongdoing to a subsidiary does not confer standing upon the parent company.").

2. Arm's Conduct Did Not Disrupt Qualcomm's Negotiations with Meta.

There is no evidence that sharing the October 22, 2024 Notice Letter with the media—let alone sending the years-earlier 2022 letter to Meta—had any impact on Qualcomm's negotiations with Meta to use its chips in Meta's Reality Labs/Infra products. Qualcomm first proposed a term sheet on October 31, 2024, Meta responded November 8, and more than 8 months later, the parties executed a final term sheet. Tr. (Mulabagal) 817:4-17, 37-10-25; PTX-1624, PTX-2170. Dr. Kennedy, Qualcomm's expert, testified to damages based on differences between the October term sheet and the final terms—specifically, the [redacted]. Tr. (Kennedy) 983:17-986:13; Tr. (Mulabagal) 833:15-20.

But Arm's conduct all concerned the ALA, and the incentive terms only covered products (VR and AR) that used TLA cores, so Arm's conduct could not have caused the change in terms. *Supra*. Rather, the record shows that the change in [redacted] was attributable to changes in Meta's business. DTX 452 ("[redacted]"); Tr. (Mulabagal) 832:1-4, 833:21-834:22. There is no evidence whatsoever attributing that change in Meta's business, or its request to [redacted], to Arm's conduct or negotiation delays caused by Arm's conduct. Tr. (Mulabagal) 835:18-21, 838:17-19; Tr. (Amon) 198:21-25, 275:5-281:14. And Qualcomm itself publicized the content of the Notice Letter in its 10-K filed on November 6, 2024, less than two weeks after the Bloomberg article. DTX-2212; Tr. (Amon) 246:4-9. No reasonable jury could find causation here. And Dr. Kennedy's damages testimony is speculative, unreliable, and insufficient to support the asserted damages. *Lieberman*, 2022 WL 2945247, at *8. Arm's conduct all occurred before the October term sheet; comparing term sheets after the conduct does not measure the effect of that conduct.

Tr. (Amon) 257:25-275:14.

**E. Arm's Conduct Was Neither Intentional Nor Negligent.**

The intentional interference claim requires "intentional acts on the part of the defendant designed to disrupt the relationship." *Korea Supply*, 63 P.3d at 953. But the evidence shows only that Arm intended the 2022 letters to ensure Meta knew "there will be no disruptions to [its] partnership with Arm," PTX-587, and the Bloomberg article to get ahead of Qualcomm or third-party mischaracterizations of the Arm-Qualcomm dispute, Tr. (Kranhold) 611:22-612:17. There is no document, and no testimony, that shows Arm intended to interfere with Qualcomm's Meta negotiations, or that its conduct was "designed" to do so. *Northridge Hosp. Foundation v. Pic 'N' Save No. 9 Inc.*, 187 Cal. App. 3d 1088, 1103 (Cal. App. 1986) ("liability usually will turn upon the ultimate purpose or object which the defendant is seeking to advance").

Negligent interference requires proof that defendant "failed to act with reasonable care" and knew "the relationship would be disrupted if the defendant failed to act with reasonable care." *Santa Fe Properties v. Source Bioscience*, 2021 WL 6104156, at *2 (C.D. Cal. Feb. 10, 2021). "There is no duty of care between competitors under California law," and Qualcomm and Arm are competitors. *Singman v. NBA Props., Inc.*, 2014 WL 7892049, at *5 (C.D. Cal. Jan. 17, 2014). Nor has Qualcomm offered evidence that Arm acted unreasonably or violated any duty of care.

**VII. QUALCOMM'S CLAIMS ARE BARRED BY THE LIMITATION ON LIABILITY.**

Finally, the ALA and TLA both provide that, except in certain situations not relevant here, "in no event shall Arm or licensee be liable for any indirect, special, incidental, or consequential damages whether such damages are alleged as a result of tortious conduct or breach of contract or otherwise." JTX-1 § 13.1; JTX-5 § 13.1. These limitations on liability preclude Qualcomm's contract and negligent interference claims as Qualcomm seeks consequential damages for all claims and the limitations provisions extend to "tortious conduct." *Id.*

## VIII. ARM HOLDINGS IS NOT LIABLE FOR ANY OF QUALCOMM'S CLAIMS.

### A. Arm Holdings Cannot Be Liable for Breach of the ALA or TLA.

Arm Holdings cannot be liable for breaches of contracts it never signed. Arm Ltd. is an operations entity, and Arm Holdings is the U.S. holding company created to hold Arm Ltd. so that it can be publicly listed on the NASDAQ. Tr. (Collins) 763:22-764:7. Only Arm Ltd. signed the ALA and TLA, and both contracts impose obligations on "Arm" alone (defined as "Arm Ltd."). JTX-1 § 5.1; JTX-5 § 8.1. It follows that Arm Holdings, a non-party, cannot be liable under either contract. *Brookfield Prop. Grp. v. Liberty Mut. Fire Ins.*, 679 F. Supp. 3d 971, 982 (C.D. Cal. 2023); *Axtria, Inc. v. OKS Grp. LLC*, 702 F. Supp. 3d 299, 317 (E.D. Pa. 2023).

Qualcomm argues Arm Holdings can be liable because the contracts define "Acquisition of Arm" to be "any transaction or series of transactions whereby a third party ('Controlling Party') acquires direct or indirect power to control" Arm Ltd.'s "assets related to any ARM Technology," "personnel necessary to provide the support [under the ALA]," or "management or policies." JTX-1, § 1.1; JTX-5, § 1.1. But Mr. Collins gave uncontroverted testimony that Arm Holdings is not a "third party" to Arm Ltd.; they are part of the same corporate family. Tr. (Collins) 765:12-16. Qualcomm suggests that Arm Holdings, by virtue of being the parent, is also a "Controlling Party," but that is insufficient—Arm Holdings did not acquire Arm Ltd., and there is no evidence that Arm Holdings specifically acquired "power to control" Arm Ltd.'s "ARM Technology," "personnel," or "management or policies," as required to meet the ALA's definition of "Controlling Party." *Id.* 764:21-22 (Q. Do you believe that Arm Holdings acquired Arm Ltd.? A. No, it did not.").

In any event, Arm Ltd. and Qualcomm, the parties to the ALA and TLA, could not have bound Arm Holdings, a non-party, without its consent. After all, "a party cannot bind another to a contract simply by so reciting in a piece of paper." *Milliner v. Mut. Sec., Inc.*, 2021 WL 2645793, at *4-5 (N.D. Cal. June 28, 2021). "[T]he party to be bound must first accept the obligation." *Id.*

### B. Arm Holdings Is Not Liable for Tortious Interference.

Arm Holdings could not commit any tortious interference either. Those claims are premised on conduct by Arm Ltd., specifically, Arm Ltd.'s August 2022 letter to Meta, October 2024 Notice Letter, and the alleged sharing of Arm Ltd.'s Notice Letter with the media. Qualcomm offered no evidence that any actions were taken by employees of Arm Holdings, or on behalf of Arm Holdings. Tr. (Collins) 763:20-764:7, 767:6-9; *see Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (Cal. 2003) (requiring "acts on the part of the defendant").

## IX. COLLATERAL ESTOPPEL BARS THE CLAIMS AGAINST ARM LTD.

Qualcomm's claims against Arm Ltd. are precluded by its parallel case against Arm Holdings (No. 24-490) and the denial of its motion to add Arm Ltd. Qualcomm sued only Arm Holdings in No. 24-490. Well after the deadline to amend, Qualcomm moved to add claims against Arm Ltd. The Special Master denied the motion, and this Court affirmed. No. 24-490 D.I. 360, 585, 761. Claim preclusion applies when there is: "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." *EEOC v. U.S. Steel*, 921 F.2d 489, 493 (3d Cir. 1990). The "same claim" element includes "claims that could have been brought in the prior suit." *Erie Indem. Co. v. Stephenson*, 157 F.4th 265, 277 (3d Cir. 2025).

***First***, Qualcomm has alleged the same claims against Arm Holdings and Arm Ltd., and the parties are in privity because a parent and subsidiary are in privity for purposes of defensive claim preclusion. *Lubrizol v. Exxon*, 929 F.2d 960, 966 (3d Cir. 1991); *In re Dex Media*, 595 B.R. 19, 36 (D. Del. 2018); *Soares v. Discover Bank*, 2021 WL 10351907, at *2 (C.D. Cal Dec. 1, 2021).

It makes no difference that there is not yet a final judgment in No. 24-490. The claim-splitting doctrine prevents a plaintiff from maintaining two actions at the same time, involving the same subject matter and the same defendant (or its privy). *Acosta v. Gaudin*, 2017 WL 4685548, at *2 (W.D. Pa. Oct. 18, 2017). Claim splitting "[v]ery often . . . applies to bar a plaintiff from

filing a new lawsuit after the court in an earlier action denied leave to amend the complaint to add those claims." *Prewitt v. Walgreens*, 2013 WL 6284166, at *5 (E.D. Pa. Dec. 2, 2013). That perfectly captures Qualcomm's lawsuit against Arm Ltd.

Qualcomm argues there is no claim-splitting because the Arm Holdings and Arm Ltd. cases were consolidated. But consolidation does not cure claim splitting. 28 U.S.C. § 2072(b) (FRCP rules "shall not abridge, enlarge or modify any substantive right"); *Daugherty v. Dondero*, 2023 WL 461112, at *7 (Del. Ch. Jan. 27, 2023). And Arm Ltd. did not consent to Qualcomm's claim splitting simply by choosing not to oppose consolidation. D.I. 613 at 2 (Arm Holdings and Arm Ltd. expressly stating they did "not intend to forfeit or waive any other procedural or substantive arguments or defenses"); *Hall v. Hall*, 584 U.S. 59, 75-76 (2018) (consolidation does not "deprive any party of any substantial rights"); *Thorpe v. Pittsburgh Theological Seminary*, 2025 WL 1707912, at *5 (W.D. Pa. June 18, 2025) (consolidation motion was not consent to claim splitting).

***Second***, the "denial of a motion to amend a [pleading] in one action is a final judgment on the merits barring the same complaint in a later action." *McKenna v. City of Phila.*, 304 F. App'x 89, 93 (3d Cir. 2008); *Est. of Moore v. Roman*, 2021 WL 3163992, at *5 (D.N.J. July 27, 2021); *Prewitt*, 2013 WL 6284166, at *4. Moreover, "res judicata applies regardless of whether or not the denial of leave to amend" was "on the merits." *Roman*, 2021 WL 3163992, at *5. Qualcomm's proposed (and rejected) amendment in No. 24-490 and its complaint in No. 26-20 assert the same claims against the same party (Arm Ltd.). No. 24-490 D.I. 360; No. 26-20 D.I. 2. Claim preclusion exists precisely to prevent parties like Qualcomm from evading a court ruling by simply filing a new complaint. *McKenna*, 304 F. App'x at 93; *Prewitt*, 2013 WL 6284166, at *4. If Qualcomm's claims against Arm Ltd. are not estopped, then no denial of amendment would ever be binding.

## CONCLUSION

The Court should grant judgment as a matter of law.

Dated: October 9, 2026

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants Arm Holdings plc and Arm Ltd.*

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Meghan Kelly, P.C.
KIRKLAND & ELLIS LLP
2005 Market Street
Suite 1000
Philadelphia, PA 19103
meghan.kelly@kirkland.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 9, 2026, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jennifer Ying
Travis Murray
Morris, Nichols, Arsht
& Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
Connolly Gallagher LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
Erica Spevack
Leah Hibbler
Dunn Isaacson Rhee LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com
espevack@dirllp.com
lhibbler@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000

Ruby J. Garrett
Adam L. Basner
William T. Marks
Paul, Weiss, Rifkind,
Wharton & Garrison LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
wmarks@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Stephanie L. Chin
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
schin@paulweiss.com

grp-qcvarm@paulweiss.com

Erin E. Murphy
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314
erin.murphy@clementmurphy.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607

Houston, TX 77010
richard.zembek@nortonrosefulbright.com

john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants Arm Holdings plc and Arm Ltd.*