IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,

Plaintiff,

v.

ARM HOLDINGS PLC., f/k/a ARM LTD., a U.K. corporation,

Defendants.

C.A. No. 24-490 (MN)
(CONSOLIDATED)

[redacted]

REDACTED - PUBLIC VERSION

**NON-PARTY META PLATFORMS, INC.'S UNOPPOSED MOTION TO SEAL OCTOBER 7 AND 8, 2026 JURY TRIAL TRANSCRIPTS, OCTOBER 9 BENCH TRIAL TRANSCRIPT, AND CERTAIN TRIAL EXHIBITS**

OF COUNSEL:

Kathryn Bi
PATTERSON BELKNAP WEBB & TYLER LLP
113 Avenue of the Americas
New York, NY 10036
(212) 336-2320
kbi@pbwt.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Non-Party Meta Platforms, Inc.*

October 16, 2026

ORIGINAL FILING DATE: OCTOBER 16, 2026
REDACTED FILING DATE: OCTOBER 23, 2026

Non-party Meta Platforms, Inc. ("Meta") respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 5.2, Local Rule of Civil Practice and Procedure 5.1.3, and the Pretrial Order (D.I. 951), for entry of an order sealing limited portions of the October 7 and 8, 2026 jury trial and October 9, 2026 bench trial transcripts that was elicited while the courtroom was sealed, and certain admitted trial exhibits that disclose Meta's highly confidential, non-public commercial and technical information. Meta seeks targeted redactions limited to the specific testimony and exhibit content that would cause Meta concrete competitive harm if publicly disclosed. A copy of the October 7, 2026 jury trial transcript with the highlighted proposed redactions is attached as Ex. A and a public version is attached as Ex. B. A copy of the October 8, 2026 jury trial transcript with the highlighted proposed redactions is attached as Ex. C and a public version is attached as Ex. D.[1] A copy of the October 9, 2026 bench trial transcript with the highlighted proposed redactions is attached as Ex. E and a public version is attached as Ex. F.

Pursuant to D. Del. LR .1.1, Meta has conferred with counsel for Arm and for Qualcomm and neither opposes this motion.

## I. LEGAL STANDARD

Although the public has a common law right of access to judicial proceedings and records, that right is "not absolute." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (citation omitted). The presumption of access may be rebutted where the movant shows "that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* (quoting

[1] Meta's proposed redactions in Exs. A and C are highlighted in [[blue]]. and Arm's proposed redactions are highlighted in [[yellow]]. In Arm's motion to seal the October 7 and 8 jury trial transcripts (D.I. 1036), Arm attaches the same public versions that Meta attached as Exs. B and D, which include all proposed redactions to these transcripts.

*Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)). "In delineating the injury to be prevented, specificity is essential," and "[b]road allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Goldstein v. Forbes* (*In re Cendant Corp.*), 260 F.3d 183, 194 (3d Cir. 2001). The showing must rest on "current evidence to show how public dissemination of the pertinent materials now would cause the competitive harm." *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991). Courts may permissibly seal judicial records "where they are sources of business information that might harm a litigant's competitive standing." *Id.* at 662; *see also Littlejohn v. Bic Corp*, 851 F.2d 673, 678 (3d Cir. 1988). Courts in this District have permitted limited redactions to trial transcripts to protect confidential business material. *See*, *e.g.*, *TRUSTID, Inc. v. Next Caller Inc.*, C.A. No. 18-172-MN (D. Del. July 20, 2021) (Granting motion to seal and redact limited portions of the trial transcript).

## II. FACTUAL BACKGROUND

Prior to trial, Meta submitted the Declaration of Steven Roberts in support of its request to seal the courtroom and the corresponding portions of the trial transcripts and admitted exhibits. (D.I. 986, Ex. A ("Roberts Decl.") ¶¶ 1-2.) Mr. Roberts is Meta's Vice President of Infrastructure Supply Chain and Engineering. (*Id.* ¶ 1.) In that role, he is responsible for negotiating and managing Meta's relationships with the companies that supply chips and other components for Meta's data centers, and he is familiar with how Meta negotiates with suppliers for components for its Reality Labs products, how Meta protects information about those agreements, and how suppliers and competitors could use that information if it became public. (*Id.* ¶ 3.) Meta also filed a second letter on October 6, 2026 outlining why additional, specific trial exhibits that were anticipated to be used at trial on October 7, October 8, and/or October 9 warranted sealing of those trial exhibits and related testimony. D.I. 996.

As Mr. Roberts explained, Meta does not publicly disclose the pricing, incentives, [redacted], development funding, product schedules, or technical requirements in its agreements with chip suppliers; it restricts internal access to that information to employees with a need to know; and it requires its suppliers to keep that information confidential. (*Id.* ¶¶ 9-11.) The Roberts Declaration sets out, category by category, the clearly defined and serious injury Meta would suffer if such information were disclosed. Executed on October 4, 2026, the Roberts Declaration is precisely the type of current, specific evidence *Avandia* requires. *See* 924 F.3d at 672-73, 678. The material Meta now seeks to seal falls squarely within the categories the Roberts Declaration addresses:

- *Pricing and incentives.* Mr. Roberts explained that disclosure of the per-unit prices and incentive terms in Meta's supplier agreements would allow every other supplier with which Meta negotiates, including Arm, to know exactly what Meta agreed to pay and what discounts it accepted. Those suppliers would use those figures as a starting point rather than offering their best price, and Meta would lose the ability to negotiate each deal on its own merits. Because Meta buys these components in large quantities, even a small increase in per-unit price would cause Meta serious financial harm. (Roberts Decl. ¶ 13); *see Avandia*, 924 F.3d at 672, 679.

- *Development funding.* Mr. Roberts explained that disclosure of the amount of development funding Meta was willing to pay to bring on a new CPU supplier, and the conditions under which it would and would not provide that funding, would lead other suppliers to treat those terms as a baseline and to demand similar funding on similar terms in their own negotiations with Meta. That would directly increase Meta's development costs. (Roberts Decl. ¶ 14.)

- [redacted]. Mr. Roberts explained that disclosure of the [redacted] Those suppliers could then set their bids based on Meta's [redacted] rather than on competitive pricing, weakening Meta's negotiating position with each of them. The [redacted] would also reveal the approximate scale of Meta's planned data-center build-out, which competing technology companies could use to estimate Meta's non-public infrastructure investments. (Roberts Decl. ¶ 15.)

- *Product plans, schedules and unannounced products.* Mr. Roberts explained that disclosure of code names and target dates for future, unannounced chips, and the target timing for mass production of server CPUs, would reveal what new XR products and data-

center hardware Meta is developing and when it expects to bring them into use. Companies that compete with Meta in selling XR devices would learn what Meta is working on before Meta announces them, and those companies could plan their own products and launches to get ahead of Meta. (Roberts Decl. ¶ 16.)

- *Performance criteria.* Mr. Roberts explained that Meta developed, over several years, the benchmarks and ranking methods it uses to measure competing CPUs and to decide how close to the top-performing product a supplier must be to qualify. Disclosure would allow other companies that operate large data centers and compete with Meta to appropriate those criteria for their own hardware purchasing and to understand how Meta is building its data centers. (Roberts Decl. ¶ 17.)

- *Technical specifications and timing requirements.* Mr. Roberts explained that the CPU specifications and the performance and power targets in Meta's development schedule reflect what Meta has decided its next generation of data-center hardware needs, requirements Meta spent substantial internal effort developing. Disclosure would allow other companies that build large data centers and compete with Meta to use those requirements in planning their own hardware. (Roberts Decl. ¶ 22.)

- *Supplier evaluation methodology.* Mr. Roberts explained that Meta's step-by-step process for working with and evaluating CPU suppliers—from roughly [redacted] before production through deployment, including what information Meta requests, when it gives suppliers feedback on how they compare to alternatives, and when it decides how much business each supplier will receive—is proprietary to Meta. Disclosure would allow competitors to adopt Meta's process for their own supplier selection. (Roberts Decl. ¶ 23.)

- *Negotiated terms.* Mr. Roberts explained that negotiated terms in its supplier agreements, such as liability limits, early-termination provisions, and [redacted] terms in Meta's agreements with Qualcomm, reflect concessions Meta made in that particular negotiation in exchange for other terms. If other suppliers learned of those concessions, they would demand the same terms in their own agreements, and Meta would lose the ability to decide case by case which terms it is willing to accept. (Roberts Decl. ¶¶ 18-19.)

- *Disclosures about Meta's data-center computing platform.* Disclosure of any description of Meta's future computing platforms would reveal how Meta is designing its future data centers, which competitors could use to understand Meta's infrastructure strategy. (Roberts Decl. ¶¶ 18-19.)

- *Supply terms.* Mr. Roberts explained that supply terms, such as supply buffers, lead times, warranty, and payment terms, are competitively sensitive because they show what Meta has been willing to accept from one past supplier. Future suppliers would treat as the most Meta can expect, weakening Meta's position in every future negotiation for similar products. (Roberts Decl. ¶¶ 20-21.)

At trial, the Court granted Meta's sealing requests and sealed the courtroom for portions of the testimony of Pavan Mulabagal. Tr. at 783:25-784:22; 806:3-9). The courtroom was also sealed

for the testimony of Dr. Patrick Kennedy, Qualcomm's damages expert. Tr. at 966:14-967:4; *see also* Bench Tr. at 213:12-20; 214:8. The portions of the testimony that Meta now seeks to maintain under seal come from testimony elicited while the courtroom was sealed.

## III. REQUEST TO MAINTAIN UNDER SEAL

The October 7-8 jury and October 9 bench trial transcripts in this case, along with several of the trial exhibits, include the types of competitively sensitive business information described in the Roberts declaration and should remain sealed. The following tables identify such information, with reference to the portions of the Roberts declaration that support maintaining that information under seal.

### A. Trial Testimony to Maintain Under Seal

Meta requests that the following portions of the jury trial testimony from October 7 and 8, 2026, and the bench trial testimony from October 9, 2026 which was elicited while the courtroom was sealed, remain sealed.

| Trial Testimony to Maintain Under Seal | Subject Matter and Support for Maintaining Under Seal |
|---|---|
| Oct. 7, 2026 Jury-Trial Transcript<br>809:6<br>809:8-11<br>810:16-17<br>810:20<br>811:12-14 | [redacted] Roberts Decl. ¶ 15) |
| Oct. 7, 2026 Jury-Trial Transcript<br>813:7-8<br>813:14-17 | Incentive terms (Roberts Decl. ¶ 13)<br>[redacted] (Roberts Decl. ¶ 15) |
| Oct. 7, 2026 Jury-Trial Transcript<br>814:2-3 | Incentive terms (Roberts Decl. ¶ 13) |
| Oct. 7, 2026 Jury-Trial Transcript<br>822:1<br>822:6-7<br>822:11-12 | Incentive terms (Roberts Decl. ¶ 13)<br>Product schedules and unannounced products (Roberts Decl. ¶ 16) |
| Oct. 7, 2026 Jury-Trial Transcript | Pricing information (Roberts Decl. ¶¶ 13, 21) |

| Trial Testimony to Maintain Under Seal | Subject Matter and Support for Maintaining Under Seal |
| --- | --- |
| 822:19-20<br>822:23-24 | Incentive terms (Roberts Decl. ¶ 13) |
| Oct. 7, 2026 Jury-Trial Transcript<br>823:2-5 | Incentive terms (Roberts Decl. ¶ 13)<br>Product plans, schedules and unannounced products (Roberts Decl. ¶ 16) |
| Oct. 7, 2026 Jury-Trial Transcript<br>823:13-15 | Development-funding terms (Roberts Decl. ¶ 14) |
| Oct. 7, 2026 Jury-Trial Transcript<br>825:13-14<br>825:18-21 | Pricing information (Roberts Decl. ¶¶ 13, 21) |
| Oct. 7, 2026 Jury-Trial Transcript<br>829:1-3 | Incentive terms (Roberts Decl. ¶ 13) |
| Oct. 7, 2026 Jury-Trial Transcript<br>829:24-25 | [redacted] (Roberts Decl. ¶ 15) |
| Oct. 7, 2026 Jury-Trial Transcript<br>833:11-12,<br>833:21-24<br>834:1-4<br>834:7-8<br>834:11-12<br>834:17-18 | Product plans, schedules, and unannounced products (Roberts Decl. ¶ 16) |
| Oct. 7, 2026 Jury-Trial Transcript<br>836:25-837:1 | Incentive terms (Roberts Decl. ¶ 13) |
| Oct. 7, 2026 Jury-Trial Transcript<br>837:4-7<br>837:12-13 | Product plans, schedules, and unannounced products (Roberts Decl. ¶ 16) |
| Oct. 7, 2026 Jury-Trial Transcript<br>839:15-16 | [redacted] (Roberts Decl. ¶ 15) |
| Oct. 7, 2026 Jury-Trial Transcript<br>846:7-8<br>846:11-12<br>846:14 | Incentive terms (Roberts Decl. ¶ 13) |
| Oct. 7, 2026 Jury-Trial Transcript<br>847:13 | [redacted] (Roberts Decl. ¶ 15) |
| Oct. 7, 2026 Jury-Trial Transcript<br>851:13-16<br>851:18-19<br>853:5-6<br>856:22-25<br>857:2-4 | Incentive terms (Roberts Decl. ¶ 13) |
| Oct. 8, 2026 Jury-Trial Transcript<br>984:17-20<br>985:2-4<br>985:6-9 | Incentive terms (Roberts Decl. ¶ 13) |

| Trial Testimony to Maintain Under Seal | Subject Matter and Support for Maintaining Under Seal |
|---|---|
| 985:17-25 | |
| Oct. 8, 2026 Jury-Trial Transcript<br>986:5-10 | Incentive terms (Roberts Decl. ¶ 13)<br>Product plans, schedules, and unannounced products (Roberts Decl. ¶ 16) |
| Oct. 8, 2026 Jury-Trial Transcript<br>1049:8<br>1049:11-12<br>1049:15<br>1049: 19-21<br>1049: 23<br>1050:1<br>1050:4<br>1050:8-9<br>1050:11-12<br>1050:14<br>1050:18-19<br>1050:22<br>1051:9<br>1051:11-3 | Incentive terms (Roberts Decl. ¶ 13) |
| Oct. 9, 2026 Bench-Trial Transcript<br>217:1<br>217:4-5<br>218:9<br>218:11-12<br>218:14-15 | Pricing information (Roberts Decl. ¶¶ 13, 21)<br>Disclosures about Meta's data-center computing platform (Roberts Decl. ¶¶ 18-19) |

### B. Trial Exhibits To Maintain Under Seal

Meta also requests that the Court maintain under seal the following trial exhibits that were used while the courtroom was sealed. For trial exhibits that were used while the courtroom was not sealed, Meta requests only that the below-identified, limited portions of those trial exhibits, which were not shown in open court, be sealed (or redacted).

| Trial Exhibit and portion to remain sealed (if applicable) | Subject Matter and Support for Maintaining Under Seal |
|---|---|
| DTX-78 – seal five bullet points on page DTX-78.0001 | The 5 bullet points relate to the Qualcomm-Meta deal terms (Roberts Decl. ¶¶ 13, 15, 18, 19 21) |
| DTX-80 – seal third bullet under the headline "Realty Labs Position" on page DTX-80.0001 | [redacted] (Roberts Decl. ¶ 15) |

| **Trial Exhibit and portion to remain sealed (if applicable)** | **Subject Matter and Support for Maintaining Under Seal** |
|---|---|
| DTX-81 - seal pages DTX-81.0004-0007 | Pricing and incentive terms (Roberts Decl. ¶¶ 13, 21)<br>Development funding terms (Roberts Decl. ¶ 14)<br>[redacted] (Roberts Decl. ¶ 15)<br>Product plans, schedules, and unannounced products (Roberts Decl. ¶ 16)<br>Technical specifications and timing requirements (Roberts Decl. ¶ 22)<br>Supply terms (Roberts Decl. ¶¶ 20-21) |
| DTX-346 –Seal entire document | Incentive terms (Roberts Decl. ¶ 13)<br>Development funding terms (Roberts Decl. ¶ 14)<br>[redacted] (Roberts Decl. ¶ 15)<br>Product plans, schedules, and unannounced products (Roberts Decl. ¶ 16)<br>Performance criteria (Roberts Decl. ¶ 17)<br>Technical specifications and timing requirements (Roberts Decl. ¶ 22)<br>Supplier evaluation methodology (Roberts Decl. ¶ 23)<br>Negotiated terms (Roberts Decl. ¶¶ 18-19)<br>Supply terms (Roberts Decl. ¶¶ 20-21) |
| DTX-449 - Seal pages DTX-449.0002-0005 | Pricing and incentive terms (Roberts Decl. ¶¶ 13, 21)<br>Development funding terms (Roberts Decl. ¶ 14)<br>[redacted] (Roberts Decl. ¶ 15)<br>Product plans, schedules, and unannounced products (Roberts Decl. ¶ 16)<br>Performance criteria (Roberts Decl. ¶ 17)<br>Technical specifications and timing requirements (Roberts Decl. ¶ 22)<br>Supplier evaluation methodology (Roberts Decl. ¶ 23)<br>Negotiated terms (Roberts Decl. ¶¶ 18-19) |
| DTX-452 – seal first line of second bullet on page DTX-042.0001 (beginning with "RL side…") | Product plans, schedules, and unannounced products (Roberts Decl. ¶ 16) |

| **Trial Exhibit and portion to remain sealed (if applicable)** | **Subject Matter and Support for Maintaining Under Seal** |
|---|---|
| DTX-916 - seal entire document | Pricing and incentive terms (Roberts Decl. ¶¶ 13, 21)<br>Development funding terms (Roberts Decl. ¶ 14)<br>[redacted] (Roberts Decl. ¶ 15)<br>Product plans, schedules, and unannounced products (Roberts Decl. ¶ 16)<br>Performance criteria (Roberts Decl. ¶ 17)<br>Supplier evaluation methodology (Roberts Decl. ¶ 23)<br>Technical specifications and timing requirements (Roberts Decl. ¶ 22)<br>Disclosures about Meta's data-center computing platform (Roberts Decl. ¶¶ 18-19) |
| DTX-2267 – seal specific financial terms on page DTX-2267.0001 and body of emails on page DTX-2267.0002 | Pricing and incentive terms (Roberts Decl. ¶¶ 13, 21)<br>[redacted] (Roberts Decl. ¶ 15)<br>Product plans, schedules and unannounced products (Roberts Decl. ¶ 16) |
| PTX-1441 – seal pages DTX-1441.0004-0007 | Pricing and incentive terms (Roberts Decl. ¶¶ 13, 21)<br>Development funding terms (Roberts Decl. ¶ 14)<br>[redacted] (Roberts Decl. ¶ 15)<br>Product plans, schedules, and unannounced products (Roberts Decl. ¶ 16)<br>Technical specifications and timing requirements (Roberts Decl. ¶ 22)<br>Supply terms (Roberts Decl. ¶¶ 20-21) |
| PTX-1596 – seal content of email listed below "Meta-QC strategic collaboration framework" on page PTX-1596.0001 | Product plans, schedules and unannounced products (Roberts Decl. ¶ 16)<br>Pricing and incentive terms (Roberts Decl. ¶¶ 13, 21)<br>[redacted] (Roberts Decl. ¶ 15)<br>Performance criteria (Roberts Decl. ¶ 17)<br>Negotiated terms (Roberts Decl. ¶¶ 18-19) |
| PTX-1605 – seal final bullet on page PTX-1605.0002, first bullet on 1605.0003, and body of email listed below "Meta-QC | Product plans, schedules and unannounced products (Roberts Decl. ¶ 16) |

| **Trial Exhibit and portion to remain sealed (if applicable)** | **Subject Matter and Support for Maintaining Under Seal** |
|---|---|
| strategic collaboration framework" on page PTX-1605.0005 | Pricing and incentive terms (Roberts Decl. ¶¶ 13, 21)<br>[redacted] (Roberts Decl. ¶ 15)<br>Performance criteria (Roberts Decl. ¶ 17)<br>Negotiated terms (Roberts Decl. ¶¶ 18-19) |
| PTX-1624 - seal pages PTX-1624.0002-0005 | Pricing and incentive terms (Roberts Decl. ¶¶ 13, 21)<br>Development funding terms (Roberts Decl. ¶ 14)<br>[redacted] (Roberts Decl. ¶ 15)<br>Product plans, schedules, and unannounced products (Roberts Decl. ¶ 16)<br>Performance criteria (Roberts Decl. ¶ 17)<br>Technical specifications and timing requirements (Roberts Decl. ¶ 22)<br>Supplier evaluation methodology (Roberts Decl. ¶ 23)<br>Negotiated terms (Roberts Decl. ¶¶ 18-19) |
| PTX-1626 – seal pages PTX-1626.0002-0005 | Pricing and incentive terms (Roberts Decl. ¶¶ 13, 21)<br>Development funding terms (Roberts Decl. ¶ 14)<br>[redacted] (Roberts Decl. ¶ 15)<br>Product plans, schedules, and unannounced products (Roberts Decl. ¶ 16)<br>Performance criteria (Roberts Decl. ¶ 17)<br>Technical specifications and timing requirements (Roberts Decl. ¶ 22)<br>Supplier evaluation methodology (Roberts Decl. ¶ 23)<br>Negotiated terms (Roberts Decl. ¶¶ 18-19) |
| PTX-1636 – seal pages PTX-1636.0001, 1636.0008-9 | Product plans, schedules and unannounced products (Roberts Decl. ¶ 16)<br>Development funding terms (Roberts Decl. ¶ 14)<br>Pricing and incentive terms (Roberts Decl. ¶¶ 13, 21)<br>[redacted] (Roberts Decl. ¶ 15)<br>Performance criteria (Roberts Decl. ¶ 17) |

| Trial Exhibit and portion to remain sealed (if applicable) | Subject Matter and Support for Maintaining Under Seal |
|---|---|
| | Negotiated terms (Roberts Decl. ¶¶ 18-19) |
| PTX-2170 - seal entire document | Pricing and incentive terms (Roberts Decl. ¶¶ 13, 21)<br>Product plans, schedules, and unannounced products (Roberts Decl. ¶ 16)<br>Technical specifications and timing requirements (Roberts Decl. ¶ 22)<br>Negotiated terms (Roberts Decl. ¶¶ 18-19) |
| PTX 2173 - seal entire document | Pricing and incentive terms (Roberts Decl. ¶¶ 13, 21)<br>Product plans, schedules, and unannounced products (Roberts Decl. ¶ 16)<br>Technical specifications and timing requirements (Roberts Decl. ¶ 22)<br>Negotiated terms (Roberts Decl. ¶¶ 18-19)<br>Supply terms (Roberts Decl. ¶¶ 20-21) |
| PTX 2680 – seal amount of payment | Incentive terms (Roberts Decl. ¶ 13) |

The confidential information Meta proposes to maintain under seal is not necessary for the public to understand the substance of the parties' arguments. Courts in this District have repeatedly found good cause to seal or redact sensitive commercial information of this nature. *See, e.g.*, *SmartSky Networks, LLC v. Gogo Bus. Aviation, LLC*, C.A. No. 22-266-JDW, D.I. 487, at 3 (D. Del. Mar. 11, 2025) (Ex. G) (granting motion to seal because "[t]he market is small and highly competitive, so competitors would likely exploit and benefit from this sort of technical information. The Parties have articulated a specific harm that would come from making this information public, they have supported the request with Declarations rather than just arguments of counsel, and their request is narrowly tailored to the information that would work such a competitive harm."); *Arbutus Biopharma Corp. v. Moderna, Inc.*, C.A. No. 22-252-JDW, D.I. 739, at 4 (D. Del. Feb. 13, 2026) (Ex. H) (granting motion to seal "confidential commercial information" because "competitors could use this information to develop commercial plans and prices to compete against [movant] in offering similar products.").

Meta will comply with all applicable local rules governing sealed filings, including the requirement to file redacted versions of this motion, within seven (7) days of the applicable filing deadlines.

## IV. CONCLUSION

For these reasons, Meta requests that the Court enter the proposed order permitting the limited redactions and sealing outlined above.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Travis Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs and Non-Party Meta Platforms, Inc.*

OF COUNSEL:

Kathryn Bi
PATTERSON BELKNAP WEBB & TYLER LLP
113 Avenue of the Americas
New York, NY 10036
(212) 336-2320

October 16, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 16, 2026, upon the following in the manner indicated:

Karen L. Dunn
William A. Isaacson
Erin J. Morgan
Melissa F. Zappala
Jenifer N. Hartley
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

Catherine Nyarady
Jacob A. Braly
Jacob Apkon
Stephanie L. Chin
PAUL WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

William T. Marks
Adam L. Basner
PAUL WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

Anne Shea Gaza, Esquire
Robert M. Vrana, Esquire
Daniel G. Mackrides, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
*Attorneys for Defendants*

*VIA ELECTRONIC MAIL*

Scott F. Llewellyn, Esquire
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
*Attorneys for Defendants*

*VIA ELECTRONIC MAIL*

Sydney D. Gaskins, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017
*Attorneys for Defendants*

*VIA ELECTRONIC MAIL*

Alexandra Corrinne Hottenrott, Esquire
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
*Attorneys for Defendants*

*VIA ELECTRONIC MAIL*

Daralyn J. Durie, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
*Attorneys for Defendants*

*VIA ELECTRONIC MAIL*

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
Matthew J. McIntee, Esquire
Megan McGlynn Butler, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
*Attorneys for Defendants*

*VIA ELECTRONIC MAIL*

Jay Emerick, Esquire
Adam M. Janes, Esquire
Reid McEllrath, Esquire
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
*Attorneys for Defendants*

*VIA ELECTRONIC MAIL*

Peter Evangelatos, Esquire
Nathaniel Louis DeLucia, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
*Attorneys for Defendants*

*VIA ELECTRONIC MAIL*

Meghan Kelly, P.C.
KIRKLAND & ELLIS LLP
2005 Market Street
Suite 1000
Philadelphia, PA 19103
*Attorney for Defendants*

*VIA ELECTRONIC MAIL*

*/s/ Jennifer Ying*

Jennifer Ying (#5550)