**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUALCOMM INCORPORATED, a Delaware corporation; and QUALCOMM TECHNOLOGIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ARM HOLDINGS PLC, f/k/a ARM LTD., a U.K. corporation,<br><br>Defendant. | C.A. No. 24-490-MN<br>(CONSOLIDATED) |

# DEFENDANTS ARM HOLDINGS PLC AND ARM LTD.'S OPENING BRIEF IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL

Dated: November 10, 2026

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Meghan Kelly, P.C.
KIRKLAND & ELLIS LLP
2005 Market St., Ste. 1000
Philadelphia, PA 19103

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants Arm Ltd. and Arm Holdings plc*

(215) 268-5000
meghan.kelly@kirkland.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

# TABLE OF CONTENTS

**Page**


INTRODUCTION AND SUMMARY OF THE ARGUMENT ........ 1

STATEMENT OF FACTS & NATURE AND STAGE OF THE PROCEEDINGS ........ 2

ARGUMENT ........ 4

I. THE COURT SHOULD GRANT ARM JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL ON THE ALA § 5.1 CLAIM. ........ 4

A. Patches and OOBs Are Not ALA § 5.1 Deliverables. ........ 4

B. Arm Holdings And Arm Ltd. Are Not Liable For Other Reasons ........ 8

1. Arm Holdings Is Not A Party To The ALA ........ 8

2. The Statute Of Limitations And Contractual Notice Requirements Bar Qualcomm's Claim Against Arm Ltd. ........ 9

C. The Court Should At Minimum Grant Arm A New Trial. ........ 11

II. ARM IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE TORTIOUS INTERFERENCE CLAIMS. ........ 12

A. Qualcomm Suffered No Harm From The Alleged Tortious Interference ........ 13

B. Arm's Conduct Was Not Independently Wrongful. ........ 15

1. California's Tethering Test Applies Here. ........ 15

2. Qualcomm Did Not Establish A Tethering Test Violation. ........ 17

C. *Noerr-Pennington* Immunity Bars the Tortious Interference Claims. ........ 18

III. CLAIM PRECLUSION BARS THE CLAIMS AGAINST ARM LTD. ........ 19

CONCLUSION ........ 20


**** All emphasis added and quotations and citations omitted unless otherwise indicated.***

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 2022 Cellular Telephone Coordinated P'ship Litig.*,
2026 WL 2211249 (Del. Ch. July 31, 2026) ..... 10

*Acosta v. Gaudin*,
2017 WL 4685548 (W.D. Pa. Oct. 18, 2017) ..... 20

*Acumed LLC v. Advanced Surgical Servs., Inc.*,
561 F.3d 199 (3d Cir. 2009) ..... 4

*Angles v. Dollar Tree Stores, Inc.*,
494 F. App'x 326 (4th Cir. 2012) ..... 11

*Berkley Rsch. Grp., LLC v. S. Advanced Materials, LLC*,
2026 WL 1847512 (Del. Ch. June 26, 2026) ..... 11

*Brookfield Prop. Grp., LLC v. Liberty Mut. Fire Ins. Co.*,
679 F. Supp. 3d 971 (C.D. Cal. 2023) ..... 8

*Cap. Health Sys. v. Veznedaroglu*,
2017 WL 751855 (D.N.J. Feb. 27, 2017) ..... 19

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ..... 15, 16, 17, 18

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
43 Cal. 4th 375 (2008) ..... 6

*Consol. World Invs., Inc. v. Lido Preferred Ltd.*,
9 Cal. App. 4th 373 (1992) ..... 6

*Del. River Port Auth. v. Fraternal Order of Police*,
290 F.3d 567 (3d Cir. 2002) ..... 12

*Della Penna v. Toyota Motor Sales, U.S.A.*,
11 Cal. 4th 376 (1995) ..... 15

*In re Dex Media*,
595 B.R. 19 (D. Del. 2018) ..... 20

*Dollar Tree Stores Inc. v. Toyama Partners*,
875 F. Supp. 2d 1058 (N.D. Cal. 2012) ..... 11

*Drum v. San Fernando Valley Bar Ass'n*,
182 Cal. App. 4th 247 (2010) ....................18

*EEOC v. U.S. Steel*,
921 F.2d 489 (3d Cir. 1990)....................19

*Erie Indem. Co. v. Stephenson*,
157 F.4th 265 (3d Cir. 2025) ....................19

*Est. of Moore v. Roman*,
2021 WL 3163992 (D.N.J. July 27, 2021)....................20

*Fioto v. Manhattan Woods Golf Enters., LLC*,
304 F. Supp. 2d 541 (S.D.N.Y. 2004)....................12

*Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*,
55 Cal. App. 5th 381 (2020) ....................18

*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*,
109 Cal. App. 4th 944 (2003) ....................7

*FTC v. Qualcomm*,
969 F.3d 974 (9th Cir. 2020) ....................18

*Gold v. Gibbons*,
178 Cal. App. 2d 517 (1960) ....................8

*Hydrogen Master Rts., Ltd. v. Weston*,
228 F. Supp. 3d 320 (D. Del. 2017)....................10

*Kahn v. Seaboard Corp.*,
625 A.2d 269 (Del. Ch. 1993)....................10

*Lebanon Cnty. Emps.' Ret. Fund v. Collis*,
287 A.3d 1160 (Del. Ch. 2022)....................10

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014) ....................16

*Lightning Lube, Inc. v. Witco Corp.*,
4 F.3d 1153 (3d Cir. 1993)....................8

*Lubrizol v. Exxon*,
929 F.2d 960 (3d Cir. 1991)....................20

*Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*,
2011 WL 678707 (D. Del. Feb. 18, 2011)....................18

*Multimedia Pat. Tr. v. LG Elecs., Inc.*,
2013 WL 12073800 (S.D. Cal. Aug. 1, 2013) ........19

*Nationwide Biweekly Admin., Inc. v. Super. Ct.*,
9 Cal. 5th 279 (2020) ........16

*Nelson v. Anderson*,
72 Cal. App. 4th 111 (1999) ........14

*NICOR, Inc. v. SourceBlue, LLC*,
2023 WL 6866329 (C.D. Cal. Aug. 30, 2023)........14

*Norman v. Elkin*,
849 F. Supp. 2d 418 (D. Del. 2012)........8

*Ohio v. Am. Express Co.*,
585 U.S. 529 (2018)........17

*People's Choice Wireless, Inc. v. Verizon Wireless*,
131 Cal. App. 4th 656 (2005) ........18

*Petersen v. Arch Ins. Co.*,
2015 WL 3968590 (C.D. Cal. June 30, 2015) ........11

*Phila. Indem. Ins. Co. v. SMG Holdings, Inc.*,
44 Cal. App. 5th 834 (2019) ........9

*Phila. Taxi Ass'n, Inc. v. Uber Techs., Inc.*,
886 F.3d 332 (3d Cir. 2018)........18

*Pivotal Payments Direct Corp. v. Planet Payment, Inc.*,
2015 WL 11120934 (Del. Super. Ct. Dec. 29, 2015) ........9

*Prewitt v. Walgreens Co.*,
2013 WL 6284166 (E.D. Pa. Dec. 2, 2013)........20

*Progressive W. Ins. v. Super. Ct.*,
135 Cal. App. 4th 263 (2005) ........16

*In re Qualcomm Litig.*,
2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) ........16

*Rajan v. Crawford*,
2022 WL 16646690 (3d Cir. Nov. 3, 2022)........12

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
732 F. Supp. 3d 1101 (N.D. Cal. 2024) ........19

*Reigelsperger v. Siller*,
40 Cal. 4th 574 (2007) ....................7

*Roland Corp. v. inMusic Brands, Inc.*,
2025 WL 926703 (Fed. Cir. Mar. 27, 2025) ....................14

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*,
2 Cal. 5th 505 (2017) ....................13

*Samsung Elecs. Co. v. Imperium IP Holdings (Cayman), Ltd.*,
2020 WL 999448 (D. Del. Mar. 2, 2020) ....................12

*Schach v. Ford Motor Co.*,
210 F.R.D. 522 (M.D. Pa. 2002) ....................11

*Scheenstra v. Cal. Dairies, Inc.*,
213 Cal. App. 4th 370 (2013) ....................4

*Schiano v. HomEq Servicing Corp. & HomeEq Servicing*,
832 F. App'x 116 (3d Cir. 2020) ....................11

*Silverado Modjeska Recreation & Parks Dist. v. Cnty. of Orange*,
197 Cal. App. 4th 282 (2011) ....................11

*Soares v. Discover Bank*,
2021 WL 10351907 (C.D. Cal Dec. 1, 2021) ....................20

*Sole Energy Co. v. Petrominerals Corp.*,
128 Cal. App. 4th 212 (2005) ....................14

*State v. Cont'l Ins. Co.*,
55 Cal. 4th 186 (2012) ....................6

*Stephens v. Clash*,
796 F.3d 281 (3d Cir. 2015) ....................9

*Sun Microsystems v. Microsoft*,
87 F. Supp. 2d 992 (N.D. Cal. 2000) ....................16, 18

*Sun v. Cheung*,
2025 WL 1446378 (E.D. Cal. May 20, 2025) ....................8

*Sunrise Pharm. v. Vision Pharma.*,
2018 WL 11476075 (D.N.J. June 20, 2018) ....................19

*Surf Boards by Donald Takayama, LLC v. Surf Technicians, LLC*,
2026 WL 296453 (S.D. Cal. Feb. 4, 2026) ....................11

*Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*,
655 F. App'x 103 (3d Cir. 2016) ....................18, 19

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
546 F.3d 991 (9th Cir. 2008) ....................19

*Tiffany Builders, LLC v. Delrahim*,
97 Cal. App. 5th 536 (2023) ....................13

*Trs. of Univ. of Pa. v. St. Jude Child.'s Rsch. Hosp.*,
940 F. Supp. 2d 23 (E.D. Pa. 2013) ....................18

*Tullett Prebon, PLC v. BGC Partners, Inc.*,
2010 WL 2545178 (D.N.J. June 18, 2010) ....................13

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
117 F. Supp. 3d 1092 (C.D. Cal. 2015) ....................18

*United States v. W. Indies Transp.*,
127 F.3d 299 (3d Cir. 1997) ....................9

*VFLA Eventco, LLC v. William Morris Endeavor Enter. LLC*,
100 Cal. App. 5th 287 (2024) ....................7

*Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*,
178 F. Supp. 2d 1099 (C.D. Cal. 2001) ....................16

*Wolf v. Walt Disney Pictures & Television*,
162 Cal. App. 4th 1107 (2008) ....................4, 6, 7

*Worldwide Commerce, Inc. v. Fruehauf Corp.*,
84 Cal. App. 3d 803 (1978) ....................13, 14

**Statutes**

10 Del. C. § 8106 ....................9

**Rules**

Fed. R. Civ. P. 50(a) ....................4

Fed. R. Civ. P. 59 ....................8

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Qualcomm has little to show for the sweeping claims it pursued. Qualcomm dropped several claims before trial; the Court granted summary judgment in Arm's favor on others; and the jury rejected four of the six claims Qualcomm advanced at trial. As to Qualcomm's ALA § 5.1 breach and tortious interference claims, the jury found liability but awarded only $2 in nominal damages despite Qualcomm requesting more than $200 million. Those two claims have their own significant legal and factual defects that foreclose any finding of liability as a matter of law, so the Court should enter judgment in Arm's favor on those claims as well.

*First*, there can be no liability under ALA § 5.1. Qualcomm argues that Arm Holdings and Arm Ltd. (collectively, "Arm") breached by not providing certain patches or certain customer-specific lists known as OOBs that identify which of the previously provided compliance tests a customer should run to verify its specific CPU core design. But the unambiguous language of the ALA does not require the delivery of either patches or OOBs. The legal flaws with Qualcomm's § 5.1 breach claim do not end there. Arm Holdings cannot be liable when Qualcomm offered no evidence that Arm Holdings was a party to, or otherwise had obligations under, the ALA. And any breach claim against Arm Ltd. is barred by the statute of limitations and the ALA's notice-and-cure requirements. What's more, Qualcomm's theory assumes that the requested patches and OOBs were for licensed custom core designs, which is an issue currently before the Third Circuit in the *Arm v. Qualcomm* appeal. If the Third Circuit reverses or vacates, that will at minimum require a new trial where Arm can present its defense that the cores were in fact unlicensed.

*Second*, Qualcomm's tortious interference claims fail several times over. Qualcomm is seeking to recover from the wrong defendant on behalf of the wrong plaintiff. Qualcomm is the wrong plaintiff because a different Qualcomm entity signed the relevant agreement with Meta and that entity is responsible for paying the incentive payments that are Qualcomm's only alleged

harm; Arm Holdings is the wrong defendant because Qualcomm's claims are based exclusively on conduct by Arm Ltd. Even setting all that aside, Qualcomm did not establish the "independently wrongful" element by proving that Arm violated California's Unfair Competition Law ("UCL"); among other flaws, Qualcomm offered no evidence Arm's conduct harmed anyone other than Qualcomm, let alone that the conduct undermined the competitive process itself, as the UCL requires. And if that were not enough, the *Noerr-Pennington* doctrine protects the supposedly interfering conduct.

*Third*, Qualcomm's claims against Arm Ltd. are precluded by its parallel case against Arm Holdings and the denial of its motion to add Arm Ltd. The parallel cases against Arm Holdings and Arm Ltd. are a classic example of claim splitting. Claim splitting aside, moreover, the "denial of a motion to amend a [pleading] in one action is a final judgment on the merits barring the same complaint in a later action." *McKenna v. City of Phila.*, 304 F. App'x 89, 93 (3d Cir. 2008). Either way, the judgment against Arm Ltd. must be set aside.

**<u>STATEMENT OF FACTS & NATURE AND STAGE OF THE PROCEEDINGS</u>**

Qualcomm licenses Arm's instruction set architecture under an Architecture License Agreement ("ALA"). *See* JTX-1. Section 5.1 of that ALA requires that Arm provide Qualcomm with certain deliverables, which are standardized materials developed by Arm's product team. Tr. (Grisenthwaite) 475:4-478:6, 490:4-22; JTX-3 § 1; JTX-4 § 1; DTX-2816; DTX-952. They include the Architecture Reference Manual ("ARM"), which describes the architecture, and the Architecture Compliance Kit ("ACK"), which contains tests licensees use to verify if their custom core complies with the architecture. Tr. (Grisenthwaite) 476:19-477:20.

In August 2022, Arm sued Qualcomm and its then-newly acquired subsidiary, Nuvia, for breaching the termination provisions of Nuvia's separate ALA. No. 22-1146, D.I. 1; Tr. (Arm Op.) 154:24-155:16. Throughout that litigation, Arm continued to give Qualcomm full access to its v8

and v9 architectures and the ACK. Tr. (Grisenthwaite) 473:17-19. But Arm temporarily stopped providing Qualcomm with customized support materials called OOBs and ACK patches that help licensees verify that their cores comply with Arm's architecture. *Id.* 504:8-14; Tr. (Haas) 439:5-24; Tr. (Trivedi) 523:1-6. OOBs are customer-specific lists that identify which ACK tests should be run on a licensee's particular design. Tr. (Grisenthwaite) 491:17-492:16. Patches are sometimes provided to a particular licensee to temporarily fix a broken test before Arm incorporates that fix into the next quarterly ACK release sent to all licensees. *Id.* 495:15-496:20. Arm resumed providing those materials in January 2025, after the jury in the Nuvia case found for Qualcomm. Tr. (Collins) 762:16-763:16; PTX-1718. Qualcomm claims Arm breached ALA § 5.1 by not providing OOBs and patches between September 2022 and January 2025.

While the Nuvia litigation was pending, Qualcomm began negotiating a deal with Meta to supply chips for its extended reality ("XR") and "Infra" (or data center) businesses. Tr. (Mulabagal) 801:4-11; 806:20-23; 812:21-25. Qualcomm proposed a term sheet on October 31, 2024, and the parties executed the Meta XR/Infra Agreement about ten months later. *Id.* 817:4-17, 837:10-25; PTX-1624. Critically, neither of the Qualcomm plaintiffs is a party to that Agreement, which is between Meta and Qualcomm CDMA Technologies Asia-Pacific Pte. Ltd. ("QCTAP"), a Singaporean subsidiary of Qualcomm Technologies, Inc. ("QTI"). PTX-2170.

Qualcomm claims that Arm Holdings and Arm Ltd. intentionally and negligently tortiously interfered with the Meta Agreement because Arm competes with Qualcomm in the sale of data center chips. Under the final agreement, QCTAP must make certain incentive payments to Meta if Meta succeeds in selling products with Qualcomm's chips. *Id.* at 1, 3; Tr. (Mulabagal) 856:9-13. Qualcomm claims that Arm caused Meta to seek different incentive payment terms (that increased the total incentive payments) by sharing with the media an October 22, 2024 letter from

Arm Ltd. informing Qualcomm it was in material breach of the ALA. *See* DTX-55.

The Court held a five-day trial in October 2026. At the end of the trial, the jury found in Arm's favor on four separate breach claims brought by Qualcomm related to the parties' separate Technology License Agreement. D.I. 1024 at 3-6. The jury found in Qualcomm's favor on its ALA § 5.1 breach and tortious interference claims. *Id.* at 2, 7-8. Although Qualcomm requested over $200 million in damages, the jury awarded Qualcomm only $1 for each claim. *Id.* at 1, 9.

## ARGUMENT

The Court should grant JMOL in Arm's favor on the ALA breach and tortious interference claims. JMOL is appropriate if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," Fed. R. Civ. P. 50(a), or if Qualcomm's claims are deficient "on a purely legal basis," *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009). Here, there is no legally sufficient basis for a jury to find that (1) Arm breached ALA § 5.1 by not providing patches or OOBs, or that (2) Arm tortiously interfered with the Meta relationship. In addition, claim preclusion forecloses Qualcomm's claims against Arm Ltd. If the Court does not grant JMOL, it should at least order a new trial on the ALA breach claim.

### I. THE COURT SHOULD GRANT ARM JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL ON THE ALA § 5.1 CLAIM.

#### A. Patches and OOBs Are Not ALA § 5.1 Deliverables.

No reasonable jury could find that patches and OOBs are deliverables under § 5.1 of the Qualcomm ALA, which is governed by California law. JTX-1 § 16.15. The interpretation of an unambiguous contract is a question of law for the Court. *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1126 (2008); *Scheenstra v. Cal. Dairies, Inc.*, 213 Cal. App. 4th 370, 390 (2013). The Qualcomm ALA is an integrated agreement, JTX-1 § 16.10, and its terms unambiguously identify the required § 5.1 deliverables. Patches and OOBs did not make the list.

Start with the language of § 5.1. Under § 5.1, Arm Ltd. must "use reasonable efforts to deliver the ARM Technology on or before the delivery dates set out in Section 1 of the relevant Annex 1" and must "deliver Updates to [Qualcomm] as soon as reasonably possible after such Update is made generally available." JTX-1 § 5.1(i)-(ii). A patch or an OOB is thus a § 5.1 deliverable only if it is ARM Technology or an Update, as the ALA defines those terms.

Neither patches nor OOBs are ARM Technology. Qualcomm and Arm Ltd. agreed "ARM Technology" is limited to "the technology identified in each Annex 1 and any Extensions and Updates thereto." *Id.* § 1.3. The v8 and v9 Annex 1s identify ARM Technologies by "Part Number." JTX-3 § 1; JTX-4 § 1. Patches and OOBs are not listed ARM Technologies, which makes sense. *Id.*; Tr. (Grisenthwaite) 491:17-492:16, 495:15-496:20. Each ARM Technology is a standardized deliverable that Arm Ltd. provides to all ALA licensees, like the ARM (architecture reference manual). *Id.* 475:18-478:6, 482:11-484:13, 485:20-487:17, 489:15-490:11; JTX-3 § 1; JTX-4 § 1; DTX-2816; DTX-954; DTX-952. The ACK itself is similarly listed by Part Number in the v8 and v9 Annex 1s, and it is undisputed that Arm delivered every quarterly ACK release to Qualcomm. Tr. (Grisenthwaite) 475:18-482:10, 495:8-9, 499:23-500:5; Tr. (Trivedi) 569:11-14; DTX-1675; DTX-1679; JTX-3 § 1, Pt. B (identifying the "Architecture Valid Suite Kit" as Part Number "AR100-VA-01001"); JTX-4 § 1, Pt. E (identifying the "Architecture Compliance Suite" as Part Number "AR215-VA-01001"). Patches and OOBs, by contrast, do not have part numbers and are customer specific. Tr. (Grisenthwaite) 491:17-492:16, 495:15-496:20.

The customer-specific nature of patches and OOBs also takes them outside the definition of Updates. The ALA defines "Updates" as "error corrections, updates, Extensions, modifications, maintenance releases and enhancements to [the v8 and v9] architectures." JTX-1 § 1.28. But the "Updates" definition expressly excludes "Customizations," which the ALA defines as "***customer-***

***specific*** updates, extensions, modifications, maintenance releases, enhancements, features and architectures." *Id.* § 1.8. A patch is an inherently customer-specific tweak to a test sent to one customer (before a fix is made universally available in the next ACK quarterly release), as is an OOB that lists the specific subset of tests a customer should run to validate its custom CPU core design. Tr. (Grisenthwaite) 491:17-492:16, 495:15-496:20. That is why Qualcomm did not argue at trial that these items were "Updates" and it cannot change its mind now. D.I. 976 at 1-3.

The ALA's "clear and explicit" definitions govern what qualifies as a § 5.1 deliverable, and those definitions exclude customized patches and OOBs. *State v. Cont'l Ins. Co.*, 55 Cal. 4th 186, 195 (2012). There is thus no need to resort to extrinsic evidence before granting judgment in Arm's favor. Even if the ALA were ambiguous, however, its interpretation remains "a question of law" for the court "when there is no conflict in the extrinsic evidence, or when a determination was made based on incompetent evidence." *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 395 (2008). That is so "even when conflicting inferences may be drawn from the undisputed extrinsic evidence[.]" *Wolf*, 162 Cal. App. 4th at 1126-27. Contractual interpretation becomes a jury question only when there is a "factual conflict" in the extrinsic evidence requiring a "credibility determination." *Id.* at 1127. None of Qualcomm's extrinsic evidence requires that, so there are no jury findings to defer to.

Qualcomm's extrinsic evidence does not support its interpretation. Qualcomm cannot use "[p]arol evidence" to "flatly contradict the express terms of the agreement." *Consol. World Invs., Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 379 (1992). No amount of extrinsic evidence can add patches and OOBs to the ARM Technology list or change that patches and OOBs are customer specific. Most of Qualcomm's extrinsic evidence simply shows Arm Ltd. gave other ALA licensees patches and OOBs (PTX-1650) and Arm Ltd. gave patches and OOBs to Qualcomm

before suing in August 2022 and after the Nuvia jury's December 2024 verdict. PTX-2260; PTX-2271. But extrinsic evidence is relevant only if it clarifies the contracting parties' objective intent "as it existed at the time the contract was executed." *Wolf*, 162 Cal. App. 4th at 1126; *VFLA Eventco, LLC v. William Morris Endeavor Enter. LLC*, 100 Cal. App. 5th 287, 302 (2024). Evidence that Arm Ltd. provided patches and OOBs to Qualcomm or to other licensees does not speak to whether Qualcomm and Arm Ltd., when they executed the ALA, intended to treat patches and OOBs as ARM Technology or Updates. It is equally plausible that Arm Ltd. provided those materials to Qualcomm and others as a courtesy or as part of its support obligations under ALA § 7—a provision Qualcomm did not assert Arm breached, likely because it wanted the unenforceable penalty that accompanies a breach of § 5, but not § 7. *See* JTX-1 § 8.3.

Qualcomm's other extrinsic evidence is an internal Arm support summary quoting a product manager's view that another licensee's contract covers OOBs. PTX-1650 at 2. But there is no evidence those discussions were ever communicated to Qualcomm. Such "uncommunicated subjective intent is irrelevant" to discerning the parties' *mutual* intent, *Reigelsperger v. Siller*, 40 Cal. 4th 574, 579 (2007), because "[c]onversations between" employees of one party "do not reflect" that party's "objective intent, disclosed to" the other contracting party. *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 960 (2003). That rule applies with special force here, where none of the discussions involved lawyers or anyone involved in the 2013 ALA negotiations. *See* PTX-1650; PTX-2260; PTX-2271.

If anything, the extrinsic evidence here shows the parties mutually viewed OOBs and patches as support, not deliverables. When Qualcomm engineer Jignesh Trivedi communicated with Arm about patches and OOBs, he did so by emailing "AACK-***support***@arm.com" and Vivek Agrawal, who is an Arm support engineer "responsible for ***supporting***" Qualcomm with

Qualcomm-specific patches and OOBs through a Qualcomm-specific "ACK Support" database. DTX-2645 at 1-2; DTX-1711 at 1, 7; PTX-738; PTX-948; Tr. (Trivedi) 571:24-574:24.

That leaves Mr. Trivedi's testimony that patches and OOBs are part of the ACK itself. Tr. (Trivedi) 519:3-521:3, 522:24-25. No reasonable jury could accept that conclusory assertion, for which Mr. Trivedi offered no explanation, much less any tie to the contract's language. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). He elsewhere admitted that the ACK is a "generic release" that Arm Ltd. makes available to all licensees, while the patches Qualcomm wanted "are specific for the partner" and "the OOB is particular to a [licensee's] design." Tr. (Trivedi) 552:4-553:21. That is consistent with the testimony of Arm's Chief Architect, Mr. Grisenthwaite, who confirmed patches and OOBs are customer-specific support materials distinct from the ACK itself. Tr. (Grisenthwaite) 475:4-478:6, 490:4-22, 491:17-492:16, 495:15-496:20. In short, Mr. Trivedi's testimony cannot change that patches and OOBs are not § 5.1 deliverables as a matter of law. At a minimum, however, a new trial is warranted because the jury's verdict is against the great weight of the evidence and was rendered without any guidance from the Court on § 5.1's meaning. *See* Fed. R. Civ. P. 59; *Norman v. Elkin*, 849 F. Supp. 2d 418, 424 (D. Del. 2012).

## B. Arm Holdings And Arm Ltd. Are Not Liable For Other Reasons

### 1. Arm Holdings Is Not A Party To The ALA

Arm Holdings also cannot be liable under § 5.1 for an even simpler reason: It is not a party to the ALA. The ALA is instead an agreement between Arm Ltd. and Qualcomm Global Trading PTE, Ltd. JTX-1 at 1, 30. It is black-letter law that "a non-party, or nonsignatory, to a contract is not liable for a breach of that contract." *Brookfield Prop. Grp., LLC v. Liberty Mut. Fire Ins. Co.*, 679 F. Supp. 3d 971, 982 (C.D. Cal. 2023); *Sun v. Cheung*, 2025 WL 1446378, at *5 (E.D. Cal. May 20, 2025); *Gold v. Gibbons*, 178 Cal. App. 2d 517, 519 (1960). There are rare exceptions,

such as where a third party assumed the contract or is a beneficiary, or where corporate veil-piercing or agency theories apply. *See Phila. Indem. Ins. Co. v. SMG Holdings, Inc.*, 44 Cal. App. 5th 834, 840-41 (2019). But Qualcomm did not press any such exception at trial, and there is no evidence that would justify one. Thus, no reasonable jury could find Arm Holdings bound by the ALA. *United States v. W. Indies Transp.*, 127 F.3d 299, 311 (3d Cir. 1997).

It makes no difference that the ALA purports to impose obligations on a Controlling Party that acquires power to control Arm Ltd. JTX-1 §§ 1.1, 8.3. Section 5.1 does not impose any delivery obligations on a Controlling Party, and Arm Holdings is not a Controlling Party for the uncontested reasons that Arm's Chief Legal Officer explained at trial. *See* Tr. (Collins) 764:3-765:11. Nor is there evidence Qualcomm or Arm Ltd. had authority to bind Arm Holdings to the ALA without its consent and without Arm Holdings assuming the contract.

### 2. The Statute Of Limitations And Contractual Notice Requirements Bar Qualcomm's Claim Against Arm Ltd.

Qualcomm asserted two incompatible theories of when its breach claim accrued. Until July 2026, Qualcomm asserted a single breach that accrued on January 4, 2023. In July, it argued for the first time that each time it purportedly failed to receive an OOB or patch through January 2025 was a separate breach subject to its own limitations period. Regardless of the theory, the breach claim against Arm Ltd. cannot succeed because the claim is untimely and Qualcomm offered no evidence that it complied with the ALA's notice-and-cure requirement after January 2023.

The statute of limitations bars the § 5.1 claim. Delaware's three-year statute of limitations, 10 Del. C. § 8106, controls because the ALA does "not expressly include the statute of limitations in [its] choice of law provision." *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2015 WL 11120934, at *3 (Del. Super. Ct. Dec. 29, 2015); *Stephens v. Clash*, 796 F.3d 281, 289 (3d Cir. 2015). Under Qualcomm's original theory, Arm Ltd. failed to provide OOBs and patches

beginning September 2022, and the claim accrued no later than January 4, 2023, when Arm failed to cure. Tr. (Trivedi) 523:1-6; JTX-1 § 8.3; *Hydrogen Master Rts., Ltd. v. Weston*, 228 F. Supp. 3d 320, 330 (D. Del. 2017). But Qualcomm filed its § 5.1 claim against Arm Ltd. on January 8, 2026, No. 26-20, D.I. 2, so claims accruing before January 7, 2023, are time-barred (which requires vacating the jury's verdict for Question 1B, D.I. 1024 at 2) and the entire § 5.1 claim against Arm Ltd. is time-barred unless the separate accrual doctrine applies.

It does not. That doctrine lets a plaintiff "recover damages for any portion of the wrongful conduct where the statute of limitations has not yet run, but not for wrongful conduct that occurred earlier." *Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 287 A.3d 1160, 1179, 1199-1200 (Del. Ch. 2022). But that is only one of "three methods" Delaware courts use "to determine when a claim accrues," and it applies only where there is "a series of interconnected, recurring acts" that do not all flow from the same original wrongful conduct. *In re 2022 Cellular Telephone Coordinated P'ship Litig.*, 2026 WL 2211249, at *11 (Del. Ch. July 31, 2026). The "vast majority of cases" apply the "discrete act" test, *Lebanon*, 287 A.3d at 1178, which applies whenever "a party suffers injury starting at a distinct point in time and the wrong is effectively complete as of that date, even if it has ongoing effects or implications," *In re 2022 Cellular*, 2026 WL 2211249, at *10; *see Kahn v. Seaboard Corp.*, 625 A.2d 269, 270-71 (Del. Ch. 1993). That test governs here because there was a singular alleged wrong—Arm's September 2022 decision not to provide OOBs or patches for the Nuvia-based designs, Tr. (Grisenthwaite) 456:18-23—and the disputed conduct merely constitutes ongoing effects or implications of that decision. Thus, the limitations period for Qualcomm's entire ALA § 5.1 breach claim started when Arm made that decision more than three years before Qualcomm sued Arm Ltd. *See In re 2022 Cellular*, 2026 WL 2211249, at *10.

Qualcomm's post-January 2023 claims would come up short as a matter of law even if the

separate accrual doctrine applied. The ALA requires Qualcomm to "send a first written notice of non-compliance via email and via registered mail," and absent response, a "second." JTX-1 § 8.3. Arm then has thirty days to cure. *Id.* This notice-and-cure requirement is valid even if the § 8.3 remedy is held unenforceable. *Id.* § 16.9; *Dollar Tree Stores Inc. v. Toyama Partners*, 875 F. Supp. 2d 1058, 1075 (N.D. Cal. 2012). No record evidence shows Qualcomm complied with this provision, which is a necessary prerequisite to its breach claim. *Silverado Modjeska Recreation & Parks Dist. v. Cnty. of Orange*, 197 Cal. App. 4th 282, 312 (2011). And though Qualcomm previously suggested notice would have been futile, there is no evidence of that either. *Surf Boards by Donald Takayama, LLC v. Surf Technicians, LLC*, 2026 WL 296453, at *6 (S.D. Cal. Feb. 4, 2026); *Petersen v. Arch Ins. Co.*, 2015 WL 3968590, at *4 (C.D. Cal. June 30, 2015).

Qualcomm also cannot rely on equitable tolling to salvage its claim. Qualcomm contends its ***unsuccessful*** motion to amend should equitably toll the statute of limitations. But an unsuccessful motion to amend does not toll anything. *See, e.g.*, *Angles v. Dollar Tree Stores, Inc.*, 494 F. App'x 326, 329, 332-33 (4th Cir. 2012); *Schach v. Ford Motor Co.*, 210 F.R.D. 522, 523 (M.D. Pa. 2002). "Courts reserve tolling for litigants pursuing their rights 'diligently,' where 'some extraordinary circumstance … prevented timely filing.'" *Schiano v. HomEq Servicing Corp. & HomeEq Servicing*, 832 F. App'x 116, 119 (3d Cir. 2020); *Berkley Rsch. Grp., LLC v. S. Advanced Materials, LLC*, 2026 WL 1847512, at *5-6 (Del. Ch. June 26, 2026). The Special Master denied Qualcomm's motion (and this Court affirmed) because Qualcomm was *not* diligent in pursuing its claims. D.I. 585 at 3. Qualcomm cannot now relitigate that decision or use equity to circumvent it.

### C. The Court Should At Minimum Grant Arm A New Trial.

If the Court does not enter JMOL, it should grant a new trial. One of Arm's defenses is that Qualcomm sought patches and OOBs for unlicensed cores developed using Nuvia technology. D.I. 757 at 44-45. Under the ALA, Arm has no obligation to provide § 5.1 deliverables or offer support

for unlicensed cores. JTX-1 §§ 1.3, 5.1. The Court's September 30, 2025 judgment in the *Arm v. Qualcomm* case precluded Arm from presenting that defense at trial. No. 22-1146 (D. Del.), D.I. 634; *see Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 572 (3d Cir. 2002) ("[I]ssue preclusion prevents relitigation of the same issues in a later case.").

Arm appealed that judgment, and the Third Circuit heard oral argument on October 21, 2026. No. 25-02923 (3d Cir.), D.I. 83. If that judgment is vacated or reversed, it will lose "all conclusive effect, both as res judicata and as collateral estoppel," and a new trial would be necessary for Arm to have the opportunity to present this defense to a jury. *Samsung Elecs. Co. v. Imperium IP Holdings (Cayman), Ltd.*, 2020 WL 999448, at *2 (D. Del. Mar. 2, 2020); *Rajan v. Crawford*, 2022 WL 16646690, at *2 (3d Cir. Nov. 3, 2022). The Court should thus grant a new trial on Arm's unlicensed-cores defense if the Third Circuit vacates or reverses the prior judgment before the Court resolves this motion or, if this Court rules first, grant a conditional new trial subject to the outcome of the appeal. *See Fioto v. Manhattan Woods Golf Enters., LLC*, 304 F. Supp. 2d 541, 548 (S.D.N.Y. 2004) (conditionally granting new trial pending appellate review).

## II. ARM IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE TORTIOUS INTERFERENCE CLAIMS.

The Court should separately grant JMOL in Arm's favor on Qualcomm's intentional and negligent tortious interference claims. Both claims are premised on Arm Ltd.'s August 2022 communication with Meta about the first lawsuit, PTX-587; Arm Ltd.'s October 22, 2024 Notice Letter, DTX-55; and the sharing of that letter with the media. Based on this evidence, the jury found that Arm Holdings and Arm Ltd. interfered with QTI's relationship with Meta. D.I. 1024, at 7-8. But Qualcomm's tortious interference claims are foreclosed as a matter of law for three independent reasons: (1) Qualcomm did not suffer any economic harm from the alleged interference; (2) Arm's alleged conduct was not independently wrongful because it did not violate

the California UCL; and (3) Arm's conduct is protected by the *Noerr-Pennington* doctrine.

**A. Qualcomm Suffered No Harm From The Alleged Tortious Interference.**

Qualcomm's interference claims are barred first and foremost because neither Qualcomm plaintiff (QTI and Qualcomm Inc.) entered into the Meta Agreement. They thus cannot establish standing, "an economic relationship" between the plaintiff and some third party, with "the probability of future economic benefit to the plaintiff," or "economic harm proximately caused by the defendant[]." *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017).

The claimed future economic benefit was lower incentive payments under the Meta Agreement. Tr. (QC Closing) 1246:4-7. But only non-party QCTAP signed the Agreement and stood to gain that economic benefit. PTX-2170 at 1, 3; Tr. (Amon) 199:10-12, 248:20-249:1; Tr. (Mulabagal) 855:7-20, 856:9-13 ("Q. So [QCTAP] is the one that is offering Meta these incentives, correct? A. That is correct, and pretty much every single contract I have negotiated on Qualcomm's behalf with Meta are all QC-TAP."). In fact, the Agreement states "QCTAP" is the entity "offering the [] incentives to Meta," PTX-2170 at 3—not QTI or Qualcomm Inc. *See* Tr. (Mulabagal) 858:4-7. And the only incentive payment in the record is a payment from QCTAP to Meta. PTX-2680. No evidence shows any other Qualcomm entity paying Meta as part of the collaboration.

That is fatal. Qualcomm cannot bring tortious interference claims unless it stands to receive the claimed economic benefit. *Tiffany Builders, LLC v. Delrahim*, 97 Cal. App. 5th 536, 540, 549-50 (2023) (no interference because plaintiff "eventually would assign [its] rights in the deal to [a non-party]"); *Worldwide Commerce, Inc. v. Fruehauf Corp.*, 84 Cal. App. 3d 803, 808 (1978) (parent could not bring interference claim based on defendant's interference against subsidiary). And for similar reasons, Qualcomm did not establish standing or the economic-harm element of its claims. *Tullett Prebon, PLC v. BGC Partners, Inc.*, 2010 WL 2545178, at *4 (D.N.J. June 18, 2010) ("Wrongdoing to a subsidiary does not confer standing upon the parent company.").

Qualcomm tried to remedy these defects with testimony that QCTAP is a wholly owned QTI subsidiary, so higher QCTAP incentive payments mean less QCTAP revenue and, the argument goes, less money for QTI. When asked "what impact is there on QTI if QC-TAP has to make higher payments to Meta?" Qualcomm's CEO responded, "***It's the same, you know, it's a subsidiary***, QC-TAP presenting higher payments to Meta, means to QTI revenue or availability of resources will be less." Tr. (Amon) 199:13-17. Qualcomm offered no evidence that QTI made transfers to QCTAP to cover the incentive payments or that QTI was deprived of revenue by virtue of anything other than being the corporate parent of QCTAP.

It is black-letter law, however, that a parent may not assert the claims of a subsidiary simply because of that relationship. *Worldwide Commerce*, 84 Cal. App. 3d at 809 (parent could not claim interference against subsidiary "based on its status as the sole shareholder"). Qualcomm cannot circumvent that rule with conclusory testimony that QCTAP's profits are passed on to QTI. *Id.* at 806, 811 (rejecting parent's argument that "the earnings and losses of [its subsidiary] were incorporated in [its] profit and loss statements," and holding that interference was "not tortious as to [parent]"); *Roland Corp. v. inMusic Brands*, *Inc.*, 2025 WL 926703, at *12 (Fed. Cir. Mar. 27, 2025) ("conclusory testimony" that "the profit [subsidiary] made will be returned to [parent]" "provided no basis for the jury to find that [subsidiary]'s profits inherently flowed to [parent] … other than the fact that [subsidiary] is a wholly owned subsidiary"); *NICOR, Inc. v. SourceBlue, LLC*, 2023 WL 6866329, at *6 (C.D. Cal. Aug. 30, 2023). QTI has no right to QCTAP's revenue or any benefits QCTAP would have received under the Meta Agreement. *Nelson v. Anderson*, 72 Cal. App. 4th 111, 126 (1999) (no interference claim because "[stockholder] had no ownership interest in the profits of [the company] and cannot have been deprived of them"); *Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 229 (2005). That is dispositive.

The absence of any prospective economic benefit or any actual harm to Qualcomm Inc. is even more obvious. Qualcomm offered no evidence that Qualcomm Inc. expected to benefit from the Meta partnership or that the increased incentive payments in any way reduced Qualcomm Inc.'s revenues or available resources. Recognizing its complete lack of evidence, Qualcomm did not even ask the jury to decide whether Arm interfered with any of Qualcomm Inc.'s economic relationships. D.I. 1024 at 7-8; *compare* D.I. 1009 at 19-20, *with* D.I. 1002 at 37-39 (dropping Qualcomm Inc.'s interference claims). That makes JMOL against Qualcomm Inc. straightforward.

JMOL in favor of Arm Holdings is equally straightforward. Arm Holdings did not perform any of the allegedly wrongful acts; Arm Ltd. did. Arm Ltd. sent the August 2022 letter and the Notice Letter, and it shared the Notice Letter with the media. Tr. (Collins) 763:15-764:2, 771:25-772:7; PTX-587; DTX-55. Qualcomm offered no evidence that these actions were taken by Arm Holdings, which makes sense because it is a holding company with no operations.

**B. Arm's Conduct Was Not Independently Wrongful.**

The tortious interference claims also fail because Qualcomm did not prove that Arm's conduct was "independently wrongful"—*i.e.*, "wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A.*, 11 Cal. 4th 376, 393 (1995). Qualcomm relied on the UCL's "unfair" prong, which California courts assess based on two tests. First, "[w]hen a plaintiff [] claims to have suffered injury from a direct competitor's 'unfair' act or practice[s]," courts use the "tethering test." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 & n.12 (1999). Second, in suits brought by consumers, some California courts apply a "balancing test." *Id.* at 185. The Court instructed the jury on both tests, but only the tethering test applies, and Qualcomm did not establish a UCL violation under that test.

**1. California's Tethering Test Applies Here.**

As a matter of law, only one test—the tethering test—applies here. The tethering test

applies where the parties have a "competitor relationship" and even where the parties are not "direct competitors" but are still "sophisticated corporations." *In re Qualcomm Litig.*, 2017 WL 5985598, at *7 (S.D. Cal. Nov. 8, 2017) (applying tethering test to Qualcomm and Apple, two "sophisticated corporations" in an "ongoing" and "vertical business relationship"); *see Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136 (9th Cir. 2014); *Sun Microsystems v. Microsoft*, 87 F. Supp. 2d 992, 999 (N.D. Cal. 2000). Qualcomm and Arm Ltd. are both sophisticated and direct competitors. D.I. 1024 at 7-8; Tr. (Amon) 195:4-21, 207:3-12; *Qualcomm*, 2017 WL 5985598, at *7.

The California Supreme Court adopted the tethering test specifically to displace the balancing test for lawsuits involving competitors. *Cel-Tech*, 20 Cal. 4th at 185 (the balancing test is "too amorphous and provide[s] too little guidance to courts and businesses"); *Nationwide Biweekly Admin., Inc. v. Super. Ct.*, 9 Cal. 5th 279, 303 n.10 (2020) ("the *Cel-Tech* court declined to adopt [the balancing test] in the competitor context"). Courts have thus applied only the tethering test to disputes between competitors and sophisticated businesses, including where there is a vertical supply relationship, *i.e.*, the type of "Consumer-Supplier Relationship" the jury found here. D.I. 1024 at 7-8; *see Qualcomm*, 2017 WL 5985598, at *7; *Levitt*, 765 F.3d at 1136; *Sun Microsystems*, 87 F. Supp. 2d at 999; *Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1117-18 (C.D. Cal. 2001). Any other outcome would defeat *Cel-Tech*'s purpose and permit sophisticated plaintiffs to rely on the "amorphous" balancing test to sidestep the strictures of the tethering test. Indeed, California adopted the balancing test only because "consumers are more vulnerable to unfair business practices than businesses and without the necessary resources to protect themselves from sharp practices." *Progressive W. Ins. v. Super. Ct.*, 135 Cal. App. 4th 263, 286 (2005). Qualcomm is not "vulnerable" or "without the necessary resources to protect [itself]." *Id.*; *see Qualcomm*, 2017 WL 5985598, at *7.

Moreover, Qualcomm alleged harm only as a result of its competitor relationship with Arm, not any supplier relationship. Qualcomm told the jury that "***Arm and Qualcomm were competitors for the business. For the data center chip.***" Tr. (QC Closing) 1247:7-9; *see* Tr. (Amon) 190:18-23 ("Arm was our competition."). There was no direct evidence that Arm knew of Qualcomm's deal with Meta for data center chips, which Qualcomm "freely admit[ted]" to the jury. Tr. (QC Closing) 1247:10-11. Instead, Qualcomm asked the jury to "infer that … [Arm] likely knew that [Qualcomm] w[as] their competitor" for data center chips, *id.* 1247:13-15, and thus that Arm also knew of and intended to derail Qualcomm's deal with Meta. *Id.* 1248:9-12. Qualcomm's alleged harm is therefore one of harm to a competitor, not a consumer. For that reason alone, the jury's verdict based on a "Consumer-Supplier Relationship" under the balancing test must be set aside.

**2. Qualcomm Did Not Establish A Tethering Test Violation.**

Under the tethering test, Qualcomm must prove Arm's conduct "threaten[ed] an incipient violation of an antitrust law, or violate[d] the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threaten[ed] or harm[ed] competition." *Cel-Tech*, 20 Cal. 4th at 187 & n.12. Qualcomm's evidence of "unfairness" concerned only Arm Ltd.'s August 2022 letter to Meta, the Notice Letter, and the sharing of that letter with Bloomberg. PTX-587; DTX-55; Tr. (Kranhold) 608:3-609:10. Qualcomm did not identify—and it affirmatively disclaimed any theory based on—an antitrust law or the letter or spirit of an antitrust law. Tr. 1113:11-21.

Nor was there evidence that Arm's conduct otherwise threatened or harmed competition. Qualcomm identified no antitrust market, and "[w]ithout a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy competition." *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018). And there is no evidence that Arm's conduct allegedly injured anyone other than Qualcomm. At most, Qualcomm argued to the jury that Arm's August 2022 and

October 2024 conduct harmed Qualcomm's competitive position for data center chips. Tr. (QC Closing) 1248:9-12; *see* Tr. (Amon) 194:21-195:3. But "[i]njury to a competitor is not equivalent to an injury to competition." *Cel-Tech*, 20 Cal. 4th at 186; *Phila. Taxi Ass'n, Inc. v. Uber Techs., Inc.*, 886 F.3d 332, 338 (3d Cir. 2018); *Sun Microsystems*, 87 F. Supp. 2d at 1001; *FTC v. Qualcomm*, 969 F.3d 974, 996 (9th Cir. 2020); *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010); *People's Choice Wireless, Inc. v. Verizon Wireless*, 131 Cal. App. 4th 656, 668 (2005); *see Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*, 55 Cal. App. 5th 381, 420 (2020) ("elimination of a single competitor, standing alone, does not prove anticompetitive effect"). Without evidence of ***any*** harm to competition, Qualcomm's claims fail.

### C. *Noerr-Pennington* Immunity Bars the Tortious Interference Claims.

The final problem with Qualcomm's tortious interference claims is that they run afoul of the *Noerr-Pennington* doctrine. That doctrine protects "parties who petition governments for redress from claims arising in response to that petitioning" and has been "extended [] to include protection for citizens who petition for relief through the courts." *Trs. of Univ. of Pa. v. St. Jude Child.'s Rsch. Hosp.*, 940 F. Supp. 2d 233, 239-40 (E.D. Pa. 2013). The doctrine bars numerous types of claims arising from litigation activity, including state-law tort claims. *Id.* And it protects not just litigation conduct, but also conduct "incidental" to protected litigation. *Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 655 F. App'x 103, 110 (3d Cir. 2016).

The Notice Letter, which informed Qualcomm that it "is in material breach of the Qualcomm ALA" and stated, "[u]nless Qualcomm cures its material breach within 60 days, Arm shall be entitled to immediately terminate the ALA," DTX-55, is indistinguishable from the demand letters, cease-and-desist letters, and threats of suit courts routinely protect as incidental litigation-related conduct. *E.g.*, *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015); *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, 2011 WL

678707, at *2 (D. Del. Feb. 18, 2011). The Notice Letter thus cannot be the basis for a tortious interference claim. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008); *Multimedia Pat. Tr. v. LG Elecs., Inc.*, 2013 WL 12073800, at *3 (S.D. Cal. Aug. 1, 2013).

Arm's communication with Meta about the first lawsuit, PTX-587, PTX-2676, and the sharing of the Notice Letter with Bloomberg are likewise protected as conduct "incidental" to litigation. *Sweet St. Desserts, Inc.*, 655 F. App'x at 110. Courts recognize that attaching liability to the publication of legitimate legal claims risks chilling the same litigation conduct *Noerr-Pennington* immunity exists to protect. *Sunrise Pharm. v. Vision Pharma.*, 2018 WL 11476075, at *3 (D.N.J. June 20, 2018) ("Courts have generally applied the *Noerr-Pennington* Doctrine to press releases unless the original petitioning conduct was baseless."); *Cap. Health Sys. v. Veznedaroglu*, 2017 WL 751855, at *13 (D.N.J. Feb. 27, 2017). Litigation adversaries are not liable for tortious interference merely for providing their view of a case to the other party's customers. *E.g.*, *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1113 (N.D. Cal. 2024) (dismissing claims premised on communications to plaintiff's customers). This Court should therefore hold that the *Noerr-Pennington* doctrine completely bars Qualcomm's tortious interference claims.

## III. CLAIM PRECLUSION BARS THE CLAIMS AGAINST ARM LTD.

Finally, Qualcomm's claims against Arm Ltd. are precluded by its parallel case against Arm Holdings (No. 24-490) and the denial of its motion to add Arm Ltd. Qualcomm sued only Arm Holdings in No. 24-490. Well after the deadline to amend, Qualcomm moved to add claims against Arm Ltd. The Special Master denied the motion, and this Court affirmed. D.I. 360; D.I. 585; D.I. 761. Claim preclusion applies when there is: "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." *EEOC v. U.S. Steel*, 921 F.2d 489, 493 (3d Cir. 1990). The "same claim" element includes "claims that could have been brought in the prior suit." *Erie Indem. Co. v. Stephenson*, 157 F.4th 265, 277 (3d Cir. 2025).

*First*, Qualcomm has alleged the same claims against Arm Holdings and Arm Ltd., and the parties are in privity because a parent and subsidiary are in privity for purposes of defensive claim preclusion. *Lubrizol v. Exxon*, 929 F.2d 960, 966 (3d Cir. 1991); *In re Dex Media*, 595 B.R. 19, 36 (D. Del. 2018); *Soares v. Discover Bank*, 2021 WL 10351907, at *2 (C.D. Cal Dec. 1, 2021).

It makes no difference that there is not yet a final judgment in No. 24-490. There will be once the Court resolves the post-trial motions, and in any event, the claim-splitting doctrine prevents a plaintiff from maintaining two actions at the same time, involving the same subject matter and the same defendant (or its privy). *Acosta v. Gaudin*, 2017 WL 4685548, at *2 (W.D. Pa. Oct. 18, 2017). Claim splitting "[v]ery often … applies to bar a plaintiff from filing a new lawsuit after the court in an earlier action denied leave to amend the complaint to add those claims." *Prewitt v. Walgreens Co.*, 2013 WL 6284166, at *5 (E.D. Pa. Dec. 2, 2013). That perfectly captures Qualcomm's lawsuit against Arm Ltd.

*Second*, the "denial of a motion to amend a [pleading] in one action is a final judgment on the merits barring the same complaint in a later action." *McKenna*, 304 F. App'x at 93; *Est. of Moore v. Roman*, 2021 WL 3163992, at *5 (D.N.J. July 27, 2021); *Prewitt*, 2013 WL 6284166, at *4. Moreover, claim preclusion "applies regardless of whether or not the denial of leave to amend" was "on the merits." *Roman*, 2021 WL 3163992, at *5. Qualcomm's proposed (and rejected) amendment in No. 24-490 and its complaint in No. 26-20 assert the same claims against the same party (Arm Ltd.). No. 24-490 D.I. 360; No. 26-20 D.I. 2. Claim preclusion exists precisely to prevent parties like Qualcomm from evading a court ruling by simply filing a new complaint. *McKenna*, 304 F. App'x at 93; *Prewitt*, 2013 WL 6284166, at *4. If Qualcomm's claims against Arm Ltd. are not estopped, then no denial of amendment could ever be binding.

## **CONCLUSION**

The Court should grant judgment as a matter of law or, in the alternative, a new trial.

Dated: November 10, 2026

OF COUNSEL:

Gregg F. LoCascio, P.C.
Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
glocascio@kirkland.com
jason.wilcox@kirkland.com

Jay Emerick, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
jay.emerick@kirkland.com

Meghan Kelly, P.C.
KIRKLAND & ELLIS LLP
2005 Market Street
Suite 1000
Philadelphia, PA 19103
meghan.kelly@kirkland.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants Arm Holdings plc and Arm Ltd.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 10, 2026, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jennifer Ying
Travis Murray
Morris, Nichols, Arsht
& Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jying@morrisnichols.com
tmurray@morrisnichols.com

Alan R. Silverstein
Sara Barry
Connolly Gallagher LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
asilverstein@connollygallagher.com
sbarry@connollygallagher.com

Karen L. Dunn
William A. Isaacson
Melissa F. Zappala
Erin J. Morgan
Jennifer N. Hartley
Erica Spevack
Leah Hibbler
Dunn Isaacson Rhee LLP
401 Ninth Street NW
Washington, DC 20004
kdunn@dirllp.com
wisaacson@dirllp.com
mzappala@dirllp.com
emorgan@dirllp.com
jhartley@dirllp.com
espevack@dirllp.com
lhibbler@dirllp.com

Richard S. Zembek
Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000

Ruby J. Garrett
Adam L. Basner
William T. Marks
Paul, Weiss, Rifkind,
Wharton & Garrison LLP
2001 K Street, NW
Washington, DC 20006
rjgarrett@paulweis.com
abasner@paulweiss.com
wmarks@paulweiss.com

Catherine Nyarady
Jacob A. Braly
S. Conrad Scott
Jacob Apkon
Stephanie L. Chin
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
cnyarady@paulweiss.com
jbraly@paulweiss.com
scscott@paulweiss.com
japkon@paulweiss.com
schin@paulweiss.com

grp-qcvarm@paulweiss.com

Erin E. Murphy
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314
erin.murphy@clementmurphy.com

John Poulos
Norton Rose Fulbright US LLP
1045 W. Fulton Market
Suite 1200
Chicago, IL 60607

Houston, TX 77010
richard.zembek@nortonrosefulbright.com

john.poulos@nortonrosefulbright.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants Arm Holdings plc and Arm Ltd.*